# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL      MDL No. 02047
        PRODUCTS LIABILITY LITIGATION        SECTION L

                                         JUDGE FALLON
                                         MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:

SEAN and BETH PAYTON, *et al*. v.
KNAUF GIPS KG, *et al*.,
Case No. 2:09-cv-07628-EEF-JCW

_____/

## DEFENDANT HAMMER CONSTRUCTION SERVICES, LTD., CROSS CLAIM AND THIRD PARTY CLAIM[1]

       COMES NOW Defendant/Cross-Claimant and Third-Party-Plaintiff, Hammer

Construction Services, LTD., ("**Hammer**"), by and through its undersigned counsel, and alleges

for its Cross-Claim against Defendants/Cross-Defendants Knauf Gips KG ("**Knauf Gips**"),

Knauf Plasterboard (Tianjin) Co. Ltd. ("**Knauf Tianjin**"), Knauf Plasterboard (Wuhu) Co. Ltd.

("**Knauf Wuhu**"), Knauf Insulation GmbH a/k/a Knauf Insulation USA ("**Knauf USA**")[2],

---

[1]      Plaintiffs commenced this action on December 9, 2009 by filing an Omnibus Class Action Complaint in this cause, which was subsequently amended and also expanded by way of intervention (after all modifications, referred to herein as the "Complaint"). In response, Hammer has moved to dismiss the Complaint. These Cross-Claims and Third Party Claims are therefore being brought to the extent all claims against Hammer are not dismissed in their entirety with prejudice. In the event all of Plaintiffs' claims against Hammer are not dismissed with prejudice, Hammer also expressly reserves the right to raise any and all available defenses and to respond to the Complaint accordingly.

[2]      Plaintiffs did not name Knauf USA as a defendant until July 9. 2010, when intervening plaintiffs, Phillip Kennedy and Lyzet Machado-Kennedy, filed a motion to intervene asking the Court to grant their Omnibus Class Action Complaint In intervention (I(A)) (the "First Intervention Complaint"), which alleged claims against Knauf USA for the first time. This Court granted their motion at the September 16, 2010 Status Conference. On October 5, 2010, intervening plaintiffs, Benjamin and Jennifer Abt, filed a motion to intervene asking the Court to grant their Omnibus Class Action Complaint In intervention (I(B)) (the "Second Intervention Complaint"), which also alleged claims against Knauf USA. This Court has not yet ruled on the Abt's motion.

Guangdong Knauf New Building Products Co., Ltd.  ("**Knauf Guangdong**")[3] (collectively, the "**Knauf Cross-Claim Defendants**"), La Suprema Trading, Inc. ("**La Suprema Trading**" or "**LS Trading**"), La Suprema Enterprise, Inc. ("**La Suprema Enterprise**" or "**LS Enterprise**"), and Cape Cement and Supply, Inc. ("**Cape**") and alleges for it Third-Party Claims against Sweet Interiors, Inc. ("**Sweet**"), as follows:

**CROSS-CLAIMS AGAINST THE KNAUF CROSS-CLAIM DEFENDANTS,
LA SUPREMA TRADING, LA SUPREMA ENTERPRISE,
<u>AND CAPE</u>**

**<u>The Parties, Jurisdiction and Venue</u>**

1.      This is an action for damages within the monetary jurisdiction of this Court.

2.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Hammer.

3.      Hammer was and is a Florida corporation doing business in Lee County, Florida, where this cause of action arose.  At all material times, Hammer was a builder of residential homes in Lee County.

4.      Hammer has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Hammer in the construction of their homes was defective and caused damages to Plaintiffs.

5.      Hammer denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.      The Knauf Cross-Claim Defendants, LS Trading, LS Enterprise, and Cape (collectively, the "**Cross-Claim Defendants**") have also been named as defendants in the above

---

[3]      The Complaint originally named "Knauf Plasterboard (Dongguan) Co. Ltd." and not "Guangdong Knauf New Building Products Co., Ltd." as a defendant.  Plaintiffs subsequently filed a motion for judicial assistance asking the Court to deem the Complaint amended to replace "Guangdong Knauf New Building Products Co., Ltd." in all instances where "Knauf Plasterboard (Dongguan) Co. Ltd." appears. This Court granted Plaintiffs' motion by order dated March 12, 2010.

{FT724314;4}

styled action.  Hammer adopts and incorporates, as if fully set forth herein, paragraphs 2074-2079[4], 2085, 2087, 2094, 2126-2127, 2623, and 2625 of the Complaint and paragraphs 1-2 of the Complaints in Intervention[5]  identifying each of the Cross-Claim Defendants and describing the nature of their business activities.

7.     Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs.

8.     Moreover, this Cross-Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and over the instant Cross-Claim Defendants.

### General Allegations

9.     As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Hammer is liable for damages to Plaintiffs.[6]

10.     Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances and Plaintiffs' personal property (the "**Other Property**").

---

[4]     The allegations in paragraph 2079 relating to Knauf Plasterboard (Dongguan) Co., Ltd. now apply to Knauf Guangdong.

[5]     *See* note 2, *infra*.

[6]     The named class Plaintiffs and other members of the putative class have asserted claims against Hammer in this Action, as well as other actions in the state and federal courts.  The damages sought by Hammer in this Cross-Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

{FT724314;4}

11.     Plaintiffs further allege that the drywall contained in their Homes was manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of the Cross-Claim Defendants.

12.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.     In connection with the construction of certain homes in Lee County, Hammer purchased drywall that was installed in the Homes, which was purchased from and supplied by Cape.

14.     At all material times, Cape knew that the drywall purchased for the Homes was going to be used in construction of residential homes.  Cape knew that Hammer was a foreseeable user of the drywall and that Hammer required and expected the drywall to be fit for the ordinary purpose for which it was intended.

15.     Upon information and belief, Cape procured drywall that was installed in the Homes from an import-export specialist, LS Trading and/or LS Enterprise (together, "**La Suprema**").  At all material times, La Suprema knew that such drywall was going to be used in construction of residential homes.

16.     Upon information and belief, Cape also procured drywall that was installed in the Homes from the Knauf Cross-Claim Defendants. At all material times, the Knauf Cross-Claim Defendants knew that such drywall was going to be used in the construction of residential homes.

17.     Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips, Knauf Tianjin, and La Suprema knew that customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

4

advertised, distributed, sold, and/or placed into the stream of commerce by Knauf Tianjin emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

18.    Knauf Tianjin consulted with Knauf Gips about the drywall complaints.

19.    Hans-Ulrich Hummel, head of research and development for Knauf Gips in Germany was aware of the "big problems" with Knauf boards from China, and investigated complaints of noxious odors being emitted by the drywall.

20.    Upon information and belief, Knauf Tianjin and/or Knauf Gips conducted their own tests of the drywall and advised their customer that the drywall was "smelly."

21.    Upon information and belief, Knauf Tianjin and Knauf Gips did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

22.    Upon information and belief, Knauf Gips and Knauf Tianjin were concerned about the potential fallout if the problems with the drywall product became widely known. In a concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Knauf Tianjin entered into a confidential settlement agreement with one of its customers in January of 2007 (the "**Secret Agreement**").

23.    The Secret Agreement stipulated that Knauf Tianjin would take back all of this one customer's unsold drywall, pay for storing it, and replace the customer's inventory of Chinese drywall with thousands of pieces of drywall made by U.S. manufacturers.  In return, the customer promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

{FT724314;4}

24.     While Knauf Tianjin recalled the drywall product for this one customer, it did not recall or take back the product from its other customers, nor did it warn them of the defective nature of the drywall.

25.     Upon information and belief, Knauf Tianjin entered into the Secret Agreement to buy the silence of its customer and conceal defects in the drywall from consumers.  The Secret Agreement purposefully kept consumers, such as Hammer and other builders, contractors and installers, in the dark about the problems with the drywall.  The Secret Agreement acknowledged that if the customer broke its promise to remain silent, Knauf Tianjin could be irreparably harmed.

26.     Hammer did not know and was not made aware of the problems with the drywall. The drywall manufactured, exported, imported, distributed and/or sold by Cape, La Suprema, and/or the Knauf Cross-Claim Defendants for use in the construction of the Homes was not altered and/or otherwise substantively changed by Hammer.

27.     For the purpose of this Cross-Claim only, and not constituting an admission of the allegations or liability by Hammer, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

28.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all

6

material times, the Cross-Claim Defendants had greater knowledge, and/or stood in a better position than Hammer to know, of the drywall's applications, performance, and dangers.

29.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Cross-Claim Defendants' acts and omissions in manufacturing, exporting, importing, distributing and/or selling the defective drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages to Plaintiffs.

30.     Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the gypsum drywall product purchased by Hammer for installation in the Homes.

31.     Moreover, Hammer did not know and was never informed by any of the Cross-Claim Defendants that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

32.     Consequently, the Cross-Claim Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Hammer in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

33.     Additionally, the Cross-Claim Defendants' wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

{FT724314;4}

34.     All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

## COUNT 1 – VICARIOUS LIABILITY
### (Against Knauf Gips)

35.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

36.     This is an action for vicarious liability against Knauf Gips for the negligence and other wrongful acts of its actual and/or apparent agents, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong.

37.     Among other things, Knauf Tianjin, Knauf Wuhu, Knauf USA and Knauf Guangdong are involved in the manufacturing and sale of gypsum drywall.  Upon information and belief, they are actual agents and/or apparent agents of Knauf Gips.

38.     Upon information and belief, at all material times, Knauf Gips was a family-owned German company extensively involved in the plasterboard market in Germany, the United Kingdom, France, China, and the United States, among others.  Indeed, the Court of European Justice of the European Union in an action between Knauf Gips and the European Commission has found that Knauf Gips and other subsidiaries dealing in gypsum products owned by the Knauf family (the "Knauf Group") constitute one "economic unit" in the area of competition law, and that Knauf Gips should be responsible for all activities of the Knauf Group.

39.     Upon information and belief, at all material times, Knauf Gips had an apparent or actual partnership with, or an ownership interest in, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong.

40.     Upon information and belief, Knauf Gips supervised, monitored, and/or otherwise exercised control and/or had a right to exercise control over the operations of Knauf Tianjin,

8

Knauf Wuhu, Knauf USA, Knauf Guangdong, and their agents, apparent agents, and employees, including the manufacturing, distribution, marketing, and/or sale of their drywall products. Moreover, upon information and belief, Knauf Gips is responsible for establishing, implementing, supervising, and maintaining the quality control mechanisms utilized by Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong.

41.     Upon information and belief, at all material times, Knauf Gips was closely involved in the management of Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, and their agents, apparent agents, and employees – overseeing quality control, finding raw materials and dealing with rising concerns over defective drywall.

42.     By way of its apparent or actual partnership and/or exercise of control over the conduct and operations of Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong, Knauf Gips acknowledged that Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong would act on its behalf as its actual and/or apparent agent(s).

43.     Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong accepted the undertaking to act on Knauf Gips' behalf.

44.     As such, Knauf Gips is vicariously liable for all of the damages caused by the negligent and/or other wrongful conduct of its actual and/or apparent agents, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong, as further alleged herein.

45.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Gips, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong's wrongful conduct directly and proximately caused and/or exposed Hammer to

substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 2 – COMMON LAW INDEMNITY
**(Against Knauf Tianjin and Knauf Gips)**

46.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

47.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

48.     Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

49.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

{FT724314;4}

50.     Hammer is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

51.     Hammer is entirely without fault for the injuries alleged by Plaintiffs.

52.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Tianjin and/or Knauf Gips.

53.     A special relationship existed between Knauf Tianjin and/or Knauf Gips and Hammer such that any liability imposed upon Hammer in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Tianjin and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips was defective, Knauf Tianjin and Knauf Gips are wholly to blame for Plaintiffs' injuries.

54.     As a result of the claims that have been filed against Hammer, Hammer has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Tianjin and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

55.     If Hammer is found to be liable to Plaintiffs, Knauf Tianjin and/or Knauf Gips is liable to Hammer for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Hammer in

11

this action and/or any other action brought by Plaintiffs against Hammer, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Hammer demands judgment for indemnity in its favor against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

## COUNT 3 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against Knauf Tianjin and Knauf Gips)**

56.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

57.     This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

58.     Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

59.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

12

60.     Plaintiffs, in the Complaint, allege various claims against Hammer for damages caused by defects in the drywall contained in the Homes.

61.     Without admitting any liability or damages to Plaintiffs, should Hammer be found liable, Knauf Tianjin and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

62.     Hammer has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

63.     To the extent that any common liability is found with respect to Hammer, Hammer hereby asserts its right of contribution against Knauf Tianjin and/or Knauf Gips for its/their pro rata share of the liability.

64.     Knauf Tianjin and/or Knauf Gips should be required to repay Hammer for any loss, damages, costs, and expenses, including attorneys' fees, Hammer is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Hammer, in excess of its pro rata share of any common liability.

**WHEREFORE**, Hammer demands that judgment be entered against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Hammer in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

{FT724314;4}

<u>COUNT 4 – EQUITABLE SUBROGATION</u>
**(Against Knauf Tianjin and Knauf Gips)**

65.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

66.     This is an action, stated in the alternative, for equitable subrogation.

67.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

68.     Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

69.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

70.     Hammer is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

71.     Without admitting any liability or damages to Plaintiffs, Hammer is not primarily liable for any liability to the Plaintiffs.

72.     To the extent that Hammer is required to pay damages for any fault of Knauf Tianjin and/or Knauf Gips to protect its own interests, and not as a volunteer, Hammer would be

14

entitled to reimbursement from Knauf Tianjin and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

73.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Hammer demands judgment in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 5 – NEGLIGENCE
**(Against Knauf Tianjin and Knauf Gips)**

74.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

75.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

76.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

15

{FT724314;4}

77.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

78.     Hammer was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Tianjin and/or Knauf Gips.

79.     Knauf Tianjin and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Tianjin and/or Knauf Gips owed Hammer a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Hammer's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

80.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

16

the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

81.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips breached the duty of care owed to Hammer by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or and ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

82.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Tianjin's and/or Knauf Gips' duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

83.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in

17

manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Hammer to substantial liability and damages.  If Knauf Tianjin and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Hammer would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

84.    Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf Tianjin's and/or Knauf Gips' breaches of the duty of care owed to Hammer, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 6 – NEGLIGENT FAILURE TO WARN</u>
**(Against Knauf Tianjin and Knauf Gips)**

85.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

86.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

87.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  the gypsum drywall that was installed in the Homes.

88.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

89.     Hammer was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

90.     Knauf Tianjin and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Tianjin and/or Knauf Gips owed Hammer a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Hammer about any dangers inherent in the drywall, and/or

(iii) warn foreseeable consumers such as Hammer about any problems or dangers in using the drywall for residential construction.

91.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

92.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that unless it warned Hammer of the risk of using the drywall, Hammer would suffer harm. However, Knauf Tianjin and/or Knauf Gips failed to provide an adequate warning of such danger.

93.     Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as alleged by Plaintiffs.  Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

94.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips breached the duty of

{FT724314;4}

care owed to Hammer by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Hammer about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Hammer about any problems or dangers in using the drywall for residential construction, about which Knauf Tianjin and/or Knauf Gips knew or reasonably should have known.

95.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Tianjin's and/or Knauf Gips' duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

96.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Hammer to substantial liability and damages. If Knauf Tianjin and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Tianjin and/or Knauf Gips would or could have foreseen that damages to Hammer would ensue as a result of failing to disclose and/or warn of drywall defects.

97.     Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf Tianjin's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or

21

any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Tianjin and Knauf Gips)

98.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

99.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

100.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

101.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

102.    Hammer was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

103.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Tianjin's and/or Knauf Gips' control and/or was sold to Hammer, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

104.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Tianjin and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Tianjin and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

105.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with

23

the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

106.    Consumers, such as Hammer, to whom a warning might have been provided, could have been identified by Knauf Tianjin and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

107.    A warning could have been effectively communicated to consumers such as Hammer and acted on by them.

108.    At all material times, Knauf Tianjin and/or Knauf Gips stood in a better position than Hammer to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Hammer was unaware of potential dangers and/or risk of harm associated with the use of Knauf Tianjin's and/or Knauf Gips' drywall product in residential construction.

109.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in Knauf Tianjin's and/or Knauf Gips' position would have provided a post-sale warning.

110.    Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf Tianjin's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against

24

these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 8 – STRICT PRODUCTS LIABILITY
### (Against Knauf Tianjin and Knauf Gips)

111.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

112.    Upon information and belief, at all material times, Knauf Tianjin and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

113.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

114.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in distributing, placing into the stream of commerce and/or selling gypsum drywall.

115.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips, Knauf Tianjin and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

116.    Knauf Tianjin and/or Knauf Gips expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective

{FT724314;4}

gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

117.   Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

118.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.   Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Tianjin and Knauf Gips)

{FT724314;4}

119.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

120.    Upon information and belief, at all material times. Knauf Tianjin and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

121.    Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

122.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

123.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips, Knauf Tianjin and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

124.    Knauf Tianjin and/or Knauf Gips expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

125.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

27

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

126.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Tianjin and/or Knauf Gips was required to provide a warning. However, Knauf Tianjin and/or Knauf Gips failed to provide an adequate warning of such danger.

127.    Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

128.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Tianjin and/or Knauf Gips failed to warn Hammer of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

129.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not

28

limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 10
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf Tianjin and Knauf Gips)

130.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

131.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

132.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

133.    At all material times, Hammer was a person and a consumer of drywall as defined under FDUTPA.

134.    At all material times, Knauf Tianjin engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Hammer.

{FT724314;4}

135.   Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the gypsum drywall that was installed in the Homes.

136.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such gypsum drywall.

137.   At the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, Knauf Tianjin and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

138.   Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

139.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes,

30

Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

140.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Tianjin's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

141.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 26 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

142.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

31

as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall was unfit,  was likely to deceive and/or mislead a consumer such as Hammer acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

143.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Hammer.

144.    To the extent Plaintiffs are successful in proving their claims, Hammer did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Tianjin's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not

32

limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

## COUNT 11 – UNJUST ENRICHMENT
### (Against Knauf Tianjin and Knauf Gips)

145.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

146.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

147.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

148.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

{FT724314;4}

149. Knauf Tianjin and/or Knauf Gips received money from Hammer as payment for the defective drywall installed in the Home.

150. In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Hammer conferred a benefit, *i.e.*, funds and profit, to Knauf Tianjin and/or Knauf Gips, which had knowledge thereof.

151. Knauf Tianjin and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Hammer.

152. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.

153. The circumstances described herein under which Knauf Tianjin and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Tianjin and/or Knauf Gips to retain those funds and profits.

154. Hammer has no adequate remedy at law.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 12 – FRAUDULENT CONCEALMENT
### (Against Knauf Tianjin and Knauf Gips)

155.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

156.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

157.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

158.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

159.    As such, Knauf Tianjin and/or Knauf Gips had a duty to reveal any such knowledge.

{FT724314;4}

160.     Upon information and belief, Knauf Tianjin and/or Knauf Gips failed to disclose and actively concealed drywall defects for the purpose of inducing consumers such as Hammer to purchase and use the drywall product and/or to prevent such consumers from demanding that drywall already purchased and/or installed in residential homes be replaced at Knauf Tianjin's and/or Knauf Gips' expense.

161.     Knauf Tianjin and/or Knauf Gips had superior knowledge not readily available to Hammer that the drywall was defective and/or not fit for use in the construction of a residential home, which could not have been discovered by Hammer by way of ordinary observation.

162.     Knauf Tianjin and/or Knauf Gips having superior knowledge of the defective nature of the drywall knowingly, deliberately and/or intentionally failed to disclose and actively concealed the drywall's defective nature and used artifice to sell the drywall product.

163.     Knauf Tianjin employed artifice to sell the drywall product by entering into the Secret Agreement with one of its customers to conceal "perceived or actual smell or health risks" related to the drywall from Hammer.

164.     Hammer and/or its installer purchased drywall for Hammer from Cape for the construction of the Homes. By entering into the Secret Agreement, Knauf Tianjin suppressed information that caused Hammer to remain ignorant about any perceived or actual defects and to believe that it had all available information necessary to use the drywall product sold by Cape and Knauf Tianjin in the construction of the Homes.

165.     Hammer relied on Knauf Tianjin and/or Knauf Gips as the manufacturer of the drywall to disclose any facts indicating the drywall was not fit for the ordinary purpose for which it was intended.  The terms of the Secret Agreement foreclosed Hammer from having an equal

36

opportunity to become reasonably informed of the fact that such defects were associated with the drywall.

166.   By failing to disclose and actively concealing that the drywall Knauf Tianjin and/or Knauf Gips manufactured, designed, distributed, and/or sold emitted foul or noxious odors and/or gases, and/or was not fit for the ordinary purpose for which it was intended, Knauf Tianjin and/or Knauf Gips conveyed the misleading impression that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of a residential home.

167.   Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

168.   If Hammer had known about the matters concealed by Knauf Tianjin and/or Knauf Gips, Hammer would not have purchased and used the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips for installation in residential homes and/or Hammer would have demanded replacement of the drywall at Knauf Tianjin's expense.

169.   Knauf Tianjin and/or Knauf Gips engaged in the foregoing conduct with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[7]

170.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

---

[7]   Hammer reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for fraudulent concealment.

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' fraudulent concealment of the defective nature of the drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 13
### COMMON LAW AIDING AND ABETTING FRAUDULENT CONCEALMENT
#### (Against Knauf Gips)

171.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 156, 158 through 169 above as if fully set forth herein.

172.    This is an action, stated in the alternative, for common law aiding and abetting fraudulent concealment against Knauf Gips.

173.    Knauf Gips was generally and specifically aware that Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects breached a duty to foreseeable consumers, such as Hammer, to reveal such knowledge.

174.   Knauf Gips was generally and specifically aware of the nature of the harm that would be incurred by consumers such as Hammer by virtue of Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects.

175.   Knauf Gips knowingly and substantially aided, abetted, advised or encouraged Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects.

176.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Gips' aiding and abetting a fraudulent concealment directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips' wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

177.   Knauf Gips engaged in the acts described above with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[8]

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

---

[8]   Hammer reserves its right to claim exemplary and/or punitive damages against Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for common law aiding and abetting.

{FT724314;4}

## COUNT 14
## CIVIL CONSPIRACY TO FRAUDULENTLY CONCEAL A DEFECTIVE PRODUCT
### (Against Knauf Gips and Knauf Tianjin)

178.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

179.    This is an action, stated in the alternative, for civil conspiracy to fraudulently conceal a defective product.

180.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

181.    Hammer was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin.

182.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, upon information and belief, Knauf Tianjin failed to disclose and actively concealed actual and/or potential and/or perceived drywall defects for the purpose of inducing consumers such as Hammer to continue to purchase and use the drywall product and/or to prevent such consumers from demanding that drywall already purchased and/or installed in residential homes be replaced at Knauf Tianjin's expense.

183.    Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips and Knauf Tianjin knew that customers had complained that the drywall manufactured, mined, designed,

{FT724314;4}

produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin emitted a very bad sulfurous odor.

184.    Upon information and belief, Knauf Tianjin and Knauf Gips engaged in and/or agreed to a scheme to conceal defects in the drywall from consumers, such as Hammer (the "Concealment Scheme").

185.    Upon information and belief, Knauf Gips and/or Knauf Tianjin investigated the complaints of odors and tested the drywall.

186.    In furtherance of the Concealment Scheme, after conducting tests of the drywall, Knauf Tianjin and/or Knauf Gips advised customers that the drywall was safe and met regulatory standards.

187.    In furtherance of the Concealment Scheme, Knauf Tianjin employed artifice to sell its drywall product by entering into the Secret Agreement to conceal "perceived or actual smell or health risks" related to the drywall from Hammer and other customers.

188.    By entering into the Secret Agreement, Knauf Tianjin suppressed information that caused Hammer to remain ignorant about any perceived or actual defects and to believe that it had all available information necessary to purchase and/or use the drywall product in the construction of the Homes.

189.    Hammer relied on Knauf Tianjin as the manufacturer of the drywall to disclose any facts indicating the drywall was not fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of a residential home.  The terms of the Secret Agreement foreclosed Hammer from having an equal opportunity to become reasonably informed of the fact that such defects were associated with the drywall.

190.     By failing to disclose and actively concealing that the drywall emitted foul or noxious odors and/or gases, and/or was defective, Knauf Tianjin conveyed the misleading impression that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of a residential home.

191.     Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or was not safe and fit for use in the construction of a residential home.

192.     If Hammer had known about the matters concealed by Knauf Tianjin and Knauf Gips, Hammer would not have purchased and/or used the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin for installation in residential homes and/or Hammer would have demanded replacement of the drywall at Knauf Tianjin's expense.

193.     Knauf Gips and Knauf Tianjin engaged in the Concealment Scheme with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[9]

194.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Concealment Scheme directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by

---

[9]     Hammer reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for civil conspiracy to fraudulently conceal a defective product.

Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 15
### CIVIL CONSPIRACY: WILLFUL FAILURE TO WARN
### (Against Knauf Gips and Knauf Tianjin)

195.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

196.    This is an action, stated in the alternative, for civil conspiracy premised on a willful failure to issue a post-sale warning.

197.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

198.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, marketed, sold, distributed, and/or supplied the gypsum drywall that was installed in the Homes.

199.    Hammer was a foreseeable user of the gypsum drywall being manufactured, mined, designed, produced, made, marketed, sold, distributed and/or supplied by Knauf Tianjin.

{FT724314;4}

200.    Knauf Tianjin, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.

201.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, marketed, sold, supplied, and/or delivered by Knauf Tianjin was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Tianjin's control and/or was sold to Hammer, Knauf Tianjin knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

202.    Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips and Knauf Tianjin knew that customers had complained that the drywall manufactured by Knauf Tianjin emitted a very bad sulfurous odor.

203.    Upon information and belief, Knauf Tianjin and Knauf Gips engaged in and/or agreed to an intentional and willful scheme not to warn consumers who had already purchased Knauf Tianjin's drywall product about actual or perceived defects in the drywall product (the "Scheme Not to Warn").

204.    Upon information and belief, Knauf Tianjin and/or Knauf Gips investigated the complaints of odors and tested the drywall.

205.    Upon information and belief, and in furtherance of the Scheme Not to Warn, Knauf Tianjin and/or Knauf Gips did not properly investigate potential dangers and/or risk of

harm associated with the use of Knauf Tianjin's drywall product and thereby breached the duty owed to Hammer to properly investigate the drywall's potential dangers and risks.

206.    Upon information and belief, after Knauf Tianjin and/or Knauf Gips conducted tests of the drywall, and to further the Scheme Not to Warn, Knauf Tianjin entered into the Secret Agreement to conceal "perceived or actual smell or health risks" related to the drywall from Hammer and other customers.

207.    Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or was not safe and fit for use in the construction of a residential home, and therefore Knauf Tianjin was in breach of the duty to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall in residential construction.

208.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

209.    Consumers, such as Hammer, to whom a warning might have been provided could have been identified by Knauf Tianjin and could reasonably be assumed to be unaware of the risk of harm.

210.    A warning could have been effectively communicated to consumers such as Hammer and acted on by them.

211.    At all material times, Knauf Tianjin stood in a better position than Hammer to know of such drywall's applications, performance, risks and dangers and it could reasonably be

assumed that Hammer was unaware of potential dangers and/or risk of harm associated with the use of Knauf Tianjin's drywall product in residential construction.

212.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, distributor, seller and/or supplier in Knauf Tianjin's position would have provided a post-sale warning.

213.     Knauf Gips' and Knauf Tianjin's individual and collective failure to warn as set forth above was wanton, grossly negligent, reckless and demonstrated a complete disregard and reckless indifference to consumers of the drywall product, such as Hammer. Knauf Gips and Knauf Tianjin engaged in the Scheme Not to Warn with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[10]

214.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Scheme Not to Warn directly and proximately caused and/or exposed Hammer to substantial liability and damages to Plaintiffs, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs. Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

---

[10]     Hammer reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for civil conspiracy premised on a willful failure to issue a post-sale warning.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 16 – COMMON LAW INDEMNITY
### (Against Knauf Wuhu and Knauf Gips)

215.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

216.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

217.    Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

218.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

219.    Hammer is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

220.    Hammer is entirely without fault for the injuries alleged by Plaintiffs.

{FT724314;4}

221.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Wuhu and/or Knauf Gips.

222.    A special relationship existed between Knauf Wuhu and/or Knauf Gips and Hammer such that any liability imposed upon Hammer in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Wuhu and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims as more fully alleged in the Complaint, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

223.    As a result of the claims that have been filed against Hammer, Hammer has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Wuhu and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

224.    If Hammer is found to be liable to Plaintiffs, Knauf Wuhu and/or Knauf Gips is liable to Hammer for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.  Knauf Gips' and Knauf Wuhu's

48

wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for indemnity in its favor against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 17 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Wuhu and Knauf Gips)

225.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

226.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

227.    Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

228.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

229.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defects in the drywall contained in the Homes.

230.    Without admitting any liability or damages to Plaintiffs, should Hammer be found liable, Knauf Wuhu and/or Knauf Gips would also share in the liability to the extent

49

its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

231.    Hammer has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

232.    To the extent that any common liability is found with respect to Hammer, Hammer hereby asserts its right of contribution against Knauf Wuhu and/or Knauf Gips for its/their pro rata share of the liability.

233.    Knauf Wuhu and/or Knauf Gips should be required to repay Hammer for any loss, damages, costs, and expenses, including attorneys' fees, Hammer is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Hammer, in excess of its pro rata share of any common liability.

**WHEREFORE**, Hammer demands that judgment be entered against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Hammer in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 18 – EQUITABLE SUBROGATION
### (Against Knauf Wuhu and Knauf Gips)

234.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

235.    This is an action, stated in the alternative, for equitable subrogation.

236.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

50

237.   Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

238.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

239.   Hammer is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

240.   Without admitting any liability or damages to Plaintiffs, Hammer is not primarily liable for any liability to the Plaintiffs.

241.   To the extent that Hammer is required to pay damages for any fault of Knauf Wuhu and/or Knauf Gips to protect its own interests, and not as a volunteer, Hammer would be entitled to reimbursement from Knauf Wuhu and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, as well as

{FT724314;4}

reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

242.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Hammer demands judgment in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 19 – NEGLIGENCE
### (Against Knauf Wuhu and Knauf Gips)

243.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

244.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

245.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

246.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

247.    Hammer was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Wuhu and/or Knauf Gips.

{FT724314;4}

248.   Knauf Wuhu and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Wuhu and/or Knauf Gips owed Hammer a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Hammer's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

249.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

250.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips breached the duty of care owed to Hammer by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the

53

properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

251. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Wuhu's and/or Knauf Gips' duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

252. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Hammer to substantial liability and damages. If Knauf Wuhu and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Hammer would ensue as a result of improperly

{FT724314;4}

manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

253.      Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf Wuhu's and/or Knauf Gips' breaches of the duty of care owed to Hammer, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 20 – NEGLIGENT FAILURE TO WARN
#### (Against Knauf Wuhu and Knauf Gips)

254.      Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

255.      Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{FT724314;4}

256.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

257.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

258.    Hammer was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

259.    Knauf Wuhu and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Wuhu and/or Knauf Gips owed Hammer a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Hammer about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Hammer about any problems or dangers in using the drywall for residential construction.

260.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall

was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

261.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that unless it warned Hammer of the risk of using the drywall, Hammer would suffer harm. However, Knauf Wuhu and/or Knauf Gips failed to provide an adequate warning of such danger.

262.    Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

263.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips breached the duty of care owed to Hammer by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Hammer about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as Hammer about any problems or dangers in using the drywall for residential construction, about which Knauf Wuhu and/or Knauf Gips knew or reasonably should have known.

264.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Wuhu's and/or Knauf Gips' duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

265.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Hammer to substantial liability and damages. If Knauf Wuhu and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Wuhu and/or Knauf Gips would or could have foreseen that damages to Hammer would ensue as a result of failing to disclose and/or warn of drywall defects.

266.    Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf Wuhu's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

COUNT 21 – BREACH OF POST-SALE DUTY TO WARN
(Against Knauf Wuhu and Knauf Gips)

267.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

268.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

269.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

270.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

271.    Hammer was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

272.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips was

59

defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Wuhu's and/or Knauf Gips' control and/or was sold to Hammer, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

273.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Wuhu and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

274.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

275.    Consumers, such as Hammer, to whom a warning might have been provided, could have been identified by Knauf Wuhu and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

276.   A warning could have been effectively communicated to consumers such as Hammer and acted on by them.

277.   At all material times, Knauf Wuhu and/or Knauf Gips stood in a better position than Hammer to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Hammer was unaware of potential dangers and/or risk of harm associated with the use of Knauf Wuhu's and/or Knauf Gips' drywall product in residential construction.

278.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Wuhu's and/or Knauf Gips' position would have provided a post-sale warning.

279.   Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf Wuhu's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.   Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

61

## COUNT 22 – STRICT PRODUCTS LIABILITY
### (Against Knauf Wuhu and Knauf Gips)

280.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

281.    Upon information and belief, at all material times, Knauf Wuhu and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

282.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

283.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in distributing, placing into the stream of commerce and/or selling gypsum drywall.

284.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips, Knauf Wuhu and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

285.    Knauf Wuhu and/or Knauf Gips expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

286.    Plaintiffs, in the Complaint, allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

287.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 23 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Wuhu and Knauf Gips)

288.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

289.    Upon information and belief, at all material times, Knauf Wuhu and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing,

{FT724314;4}

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

290.    Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

291.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

292.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips, Knauf Wuhu and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

293.    Knauf Wuhu and/or Knauf Gips expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

294.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

295.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Wuhu and/or Knauf Gips was required to provide a warning. However, Knauf Wuhu and/or Knauf Gips failed to provide an adequate warning of such danger.

296.   Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

297.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Wuhu and/or Knauf Gips failed to warn Hammer of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

298.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips'

and Knauf Wuhu's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 24
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
#### (Against Knauf Wuhu and Knauf Gips)

299.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

300.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

301.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

302.    At all material times, Hammer was a person and a consumer of drywall as defined under FDUTPA.

303.    At all material times, Knauf Wuhu engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Hammer.

304.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the gypsum drywall that was installed in the Homes.

66

305.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such gypsum drywall.

306.    At the time Knauf Wuhu and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, Knauf Wuhu and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

307.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

308.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Wuhu and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

309.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

{FT724314;4}

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Wuhu's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

310.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall, was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 – 26 herein  constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

311.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall was

68

unfit, was likely to deceive and/or mislead a consumer such as Hammer acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

312. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Hammer.

313. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Hammer did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Wuhu's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer,

and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.   Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 25 – UNJUST ENRICHMENT
**(Against Knauf Wuhu and Knauf Gips)**

314.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

315.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

316.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

317.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

318.    Knauf Wuhu and/or Knauf Gips received money from Hammer as payment for the defective drywall installed in the Home.

{FT724314;4}

319.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Hammer conferred a benefit, *i.e.*, funds and profit, to Knauf Wuhu and/or Knauf Gips, which had knowledge thereof.

320.    Knauf Wuhu and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Hammer.

321.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.

322.    The circumstances described herein under which Knauf Wuhu and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Wuhu and/or Knauf Gips to retain those funds and profits.

323.    Hammer has no adequate remedy at law.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 26 – COMMON LAW INDEMNITY**
**(Against Knauf USA and Knauf Gips)**

324.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

325.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

326.    Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

327.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

328.    Hammer is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

329.    Hammer is entirely without fault for the injuries alleged by Plaintiffs.

{FT724314;4}

330.   Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf USA and/or Knauf Gips.

331.   A special relationship existed between Knauf USA and/or Knauf Gips and Hammer such that any liability imposed upon Hammer in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf USA and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

332.   As a result of the claims that have been filed against Hammer, Hammer has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf USA and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

333.   If Hammer is found to be liable to Plaintiffs, Knauf USA and/or Knauf Gips is liable to Hammer for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.  Knauf Gips' and Knauf  USA's

73

wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for indemnity in its favor against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 27 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf USA and Knauf Gips)

334.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

335.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

336.    Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

337.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

338.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defects in the drywall contained in the Homes.

339.    Without admitting any liability or damages to Plaintiffs, should Hammer be found liable, Knauf USA and/or Knauf Gips would also share in the liability to the extent

its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

340.    Hammer has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

341.    To the extent that any common liability is found with respect to Hammer, Hammer hereby asserts its right of contribution against Knauf USA and/or Knauf Gips for its/their pro rata share of the liability.

342.    Knauf USA and/or Knauf Gips should be required to repay Hammer for any loss, damages, costs, and expenses, including attorneys' fees, Hammer is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Hammer, in excess of its pro rata share of any common liability.

**WHEREFORE**, Hammer demands that judgment be entered against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Hammer in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 28– EQUITABLE SUBROGATION
### (Against Knauf USA and Knauf Gips)

343.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

344.    This is an action, stated in the alternative, for equitable subrogation.

345.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

346.    Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

347.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

348.    Hammer is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

349.    Without admitting any liability or damages to Plaintiffs, Hammer is not primarily liable for any liability to the Plaintiffs.

350.    To the extent that Hammer is required to pay damages for any fault of Knauf USA and/or Knauf Gips to protect its own interests, and not as a volunteer, Hammer would be entitled to reimbursement from Knauf USA and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer and/or amounts paid in settlement in this

action and/or any other action brought by Plaintiffs against Hammer, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

351.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Hammer demands judgment in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

**COUNT 29 – NEGLIGENCE**
**(Against Knauf USA and Knauf Gips)**

352.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

353.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

354.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

355.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

{FT724314;4}

356.    Hammer was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf USA and/or Knauf Gips.

357.    Knauf USA and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf USA and/or Knauf Gips owed Hammer a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Hammer's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

358.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

359.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips breached the duty of care owed to Hammer by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

360.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf USA's and/or Knauf Gips' duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

361.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Hammer to substantial liability and damages. If Knauf USA and/or Knauf Gips had exercised that degree of care that a prudent or

reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Hammer would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

362.   Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf USA's and/or Knauf Gips' breaches of the duty of care owed to Hammer, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 30 – NEGLIGENT FAILURE TO WARN
### (Against Knauf USA and Knauf Gips)

363.   Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

{FT724314;4}

364.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

365.     Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

366.     Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

367.     Hammer was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

368.     Knauf USA and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf USA and/or Knauf Gips owed Hammer a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Hammer about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Hammer about any problems or dangers in using the drywall for residential construction.

{FT724314;4}

369.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

370.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that unless it warned Hammer of the risk of using the drywall, Hammer would suffer harm. However, Knauf USA and/or Knauf Gips failed to provide an adequate warning of such danger.

371.   Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

372.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips breached the duty of care owed to Hammer by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers

and/or users such as Hammer about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Hammer about any problems or dangers in using the drywall for residential construction, about which Knauf USA and/or Knauf Gips knew or reasonably should have known.

373.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf USA's and/or Knauf Gips' duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

374.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Hammer to substantial liability and damages.  If Knauf USA and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf USA and/or Knauf Gips would or could have foreseen that damages to Hammer would ensue as a result of failing to disclose and/or warn of drywall defects.

375.   Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf USA's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs'

claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf Gips' and Knauf USA's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 31 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf USA and Knauf Gips)

376.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

377.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

378.     Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

379.     Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

380.    Hammer was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

381.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf USA's and/or Knauf Gips' control and/or was sold to Hammer, Knauf USA and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

382.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf USA and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

383.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with

{FT724314;4}

the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

384.    Consumers, such as Hammer, to whom a warning might have been provided, could have been identified by Knauf USA and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

385.    A warning could have been effectively communicated to consumers such as Hammer and acted on by them.

386.    At all material times, Knauf USA and/or Knauf Gips stood in a better position than Hammer to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Hammer was unaware of potential dangers and/or risk of harm associated with the use of Knauf USA's and/or Knauf Gips' drywall product in residential construction.

387.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf USA's and/or Knauf Gips' position would have provided a post-sale warning.

388.    Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf USA's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against

{FT724314;4}

these claims.   Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 32 – STRICT PRODUCTS LIABILITY
**(Against Knauf USA and Knauf Gips)**

389.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

390.    Upon information and belief, at all material times. Knauf USA and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

391.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

392.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in distributing, placing into the stream of commerce and/or selling gypsum drywall.

393.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips, Knauf USA and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

{FT724314;4}

394.   Knauf USA and/or Knauf Gips expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

395.   Plaintiffs, in the Complaint, allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

396.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be

determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 33 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
**(Against Knauf USA and Knauf Gips)**

397.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

398.    Upon information and belief, at all material times. Knauf USA and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

399.    Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

400.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

401.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips, Knauf USA and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

402.    Knauf USA and/or Knauf Gips expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective

gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

403.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

404.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf USA and/or Knauf Gips was required to provide a warning. However, Knauf USA and/or Knauf Gips failed to provide an adequate warning of such danger.

405.    Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

406.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf USA and/or Knauf Gips failed to warn Hammer of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

407.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**C**OUNT **34**
**V**IOLATIONS OF THE **F**LORIDA **D**ECEPTIVE AND **U**NFAIR
**T**RADE **P**RACTICES **A**CT, **F**LA. **S**TAT. §§ 501.201, ET SEQ.
**(Against Knauf USA and Knauf Gips)**

408.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

409.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

410.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable,

deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

411.    At all material times, Hammer was a person and a consumer of drywall as defined under FDUTPA.

412.    At all material times, Knauf USA engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Hammer.

413.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the gypsum drywall that was installed in the Homes.

414.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such gypsum drywall.

415.     At the time Knauf USA and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, Knauf USA and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

416.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{FT724314;4}

417.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf USA and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf USA and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

418.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf USA's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

419.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall, was unreasonably

dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 – 26 herein  constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

420.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Hammer acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

421.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that that the drywall was defective,

unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Hammer.

422.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Hammer did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf USA's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 35 – UNJUST ENRICHMENT
### (Against Knauf USA and Knauf Gips)

423.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

424.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

{FT724314;4}

425.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

426.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

427.    Knauf USA and/or Knauf Gips received money from Hammer as payment for the defective drywall installed in the Home.

428.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Hammer conferred a benefit, *i.e.*, funds and profit, to Knauf USA and/or Knauf Gips, which had knowledge thereof.

429.    Knauf USA and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Hammer.

430.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement

of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.

431.   The circumstances described herein under which Knauf USA and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf USA and/or Knauf Gips to retain those funds and profits.

432.   Hammer has no adequate remedy at law.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 36 – COMMON LAW INDEMNITY
### (Against Knauf Guangdong and Knauf Gips)

433.   Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

434.   Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

435.   Upon information and belief, Knauf Guangdong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

436.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing,

{FT724314;4}

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

437.    Hammer is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

438.    Hammer is entirely without fault for the injuries alleged by Plaintiffs.

439.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Guangdong and/or Knauf Gips.

440.    A special relationship existed between Knauf Guangdong and/or Knauf Gips and Hammer such that any liability imposed upon Hammer in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Guangdong and/or Knauf Gips. To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

441.    As a result of the claims that have been filed against Hammer, Hammer has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Guangdong and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

442.     If Hammer is found to be liable to Plaintiffs, Knauf Guangdong and/or Knauf Gips is liable to Hammer for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Hammer demands judgment for indemnity in its favor against Knauf Guangdong and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 37 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Guangdong and Knauf Gips)

443.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

444.     This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

445.     Upon information and belief, Knauf Guangdong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

446.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing,

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

447.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defects in the drywall contained in the Homes.

448.    Without admitting any liability or damages to Plaintiffs, should Hammer be found liable, Knauf Guangdong and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

449.    Hammer has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

450.    To the extent that any common liability is found with respect to Hammer, Hammer hereby asserts its right of contribution against Knauf Guangdong and/or Knauf Gips for its/their pro rata share of the liability.

451.    Knauf Guangdong and/or Knauf Gips should be required to repay Hammer for any loss, damages, costs, and expenses, including attorneys' fees, Hammer is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Hammer, in excess of its pro rata share of any common liability.

**WHEREFORE**, Hammer demands that judgment be entered against Knauf Guangdong and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Hammer in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## <u>COUNT 38 – EQUITABLE SUBROGATION</u>
### (Against Knauf Guangdong and Knauf Gips)

452.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

453.    This is an action, stated in the alternative, for equitable subrogation.

454.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

455.    Upon information and belief, Knauf Guangdong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

456.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

457.    Hammer is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

458.    Without admitting any liability or damages to Plaintiffs, Hammer is not primarily liable for any liability to the Plaintiffs.

459.    To the extent that Hammer is required to pay damages for any fault of Knauf Guangdong and/or Knauf Gips to protect its own interests, and not as a volunteer, Hammer

{FT724314;4}

would be entitled to reimbursement from Knauf Guangdong and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

460.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Hammer demands judgment in its favor and against Knauf Guangdong and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

**COUNT 39 – NEGLIGENCE**
**(Against Knauf Guangdong and Knauf Gips)**

461.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

462.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

463.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

{FT724314;4}

464. Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

465. Hammer was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Guangdong and/or Knauf Gips.

466. Knauf Guangdong and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property. As such, Knauf Guangdong and/or Knauf Gips owed Hammer a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Hammer's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

467. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

468.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips breached the duty of care owed to Hammer by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

469.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Guangdong's and/or Knauf Gips' duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

470.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known

104

that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Hammer to substantial liability and damages. If Knauf Guangdong and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Hammer would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

471.     Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf Guangdong's and/or Knauf Gips' breaches of the duty of care owed to Hammer, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 40 – NEGLIGENT FAILURE TO WARN
**(Against Knauf Guangdong and Knauf Gips)**

{FT724314;4}

472.   Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

473.   Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

474.   Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  the gypsum drywall that was installed in the Homes.

475.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

476.   Hammer was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

477.   Knauf Guangdong and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Guangdong and/or Knauf Gips owed Hammer a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Hammer about any dangers inherent in the drywall,

{FT724314;4}

and/or (iii) warn foreseeable consumers such as Hammer about any problems or dangers in using the drywall for residential construction.

478.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

479.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that unless it warned Hammer of the risk of using the drywall, Hammer would suffer harm. However, Knauf Guangdong and/or Knauf Gips failed to provide an adequate warning of such danger.

480.    Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

481.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips breached the duty

{FT724314;4}

of care owed to Hammer by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Hammer about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Hammer about any problems or dangers in using the drywall for residential construction, about which Knauf Guangdong and/or Knauf Gips knew or reasonably should have known.

482.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Guangdong's and/or Knauf Gips' duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

483.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Hammer to substantial liability and damages. If Knauf Guangdong and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Guangdong and/or Knauf Gips would or could have foreseen that damages to Hammer would ensue as a result of failing to disclose and/or warn of drywall defects.

484.     Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf Guangdong's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of

{FT724314;4}

Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 41 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Guangdong and Knauf Gips)

485.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

486.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

487.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

488.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

489.   Hammer was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

490.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Guangdong's and/or Knauf Gips' control and/or was sold to Hammer, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

491.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Knauf Guangdong and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

492.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with

110

the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

493.    Consumers, such as Hammer, to whom a warning might have been provided, could have been identified by Knauf Guangdong and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

494.    A warning could have been effectively communicated to consumers such as Hammer and acted on by them.

495.    At all material times, Knauf Guangdong and/or Knauf Gips stood in a better position than Hammer to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Hammer was unaware of potential dangers and/or risk of harm associated with the use of Knauf Guangdong's and/or Knauf Gips' drywall product in residential construction.

496.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended uses more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Guangdong's and/or Knauf Gips' position would have provided a post-sale warning.

497.    Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf Guangdong's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in

defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 42 – STRICT PRODUCTS LIABILITY
### (Against Knauf Guangdong and Knauf Gips)

498.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

499.    Upon information and belief, at all material times. Knauf Guangdong and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

500.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

501.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in distributing, placing into the stream of commerce and/or selling gypsum drywall.

502.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips, Knauf Guangdong and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

{FT724314;4}

503.    Knauf Guangdong and/or Knauf Gips expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

504.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

505.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{FT724314;4}

## COUNT 43 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Guangdong and Knauf Gips)

506.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

507.    Upon information and belief, at all material times. Knauf Guangdong and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

508.    Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

509.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

510.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips, Knauf Guangdong and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

511.    Knauf Guangdong and/or Knauf Gips expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

{FT724314;4}

512.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

513.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Guangdong and/or Knauf Gips was required to provide a warning. However, Knauf Guangdong and/or Knauf Gips failed to provide an adequate warning of such danger.

514.     Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

515.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Guangdong and/or Knauf Gips failed to warn Hammer of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

516.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' failure to

115

adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 44</u>
<u>VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR</u>
<u>TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.</u>
(Against Knauf Guangdong and Knauf Gips)

517.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

518.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

519.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

520.    At all material times, Hammer was a person and a consumer of drywall as defined under FDUTPA.

116

521.   At all material times, Knauf Guangdong engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Hammer.

522.   Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the gypsum drywall that was installed in the Homes.

523.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such gypsum drywall.

524.   At the time Knauf Guangdong and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, Knauf Guangdong and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

525.   Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

526.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Guangdong and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed,

117

placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

527.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Guangdong's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

528.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 26 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

529.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Hammer acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

530.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Hammer.

531.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

119

as more fully alleged in the Complaint, Hammer did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Guangdong's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.   Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 45 – UNJUST ENRICHMENT
### (Against Knauf Guangdong and Knauf Gips)

532.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 and 37 through 44 above as if fully set forth herein.

533.    Plaintiffs, in the Complaint, allege various claims against Hammer for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

534.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

535.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing,

{FT724314;4}

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

536.    Knauf Guangdong and/or Knauf Gips received money from Hammer as payment for the defective drywall installed in the Home.

537.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Hammer conferred a benefit, *i.e.*, funds and profit, to Knauf Guangdong and/or Knauf Gips, which had knowledge thereof.

538.    Knauf Guangdong and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Hammer.

539.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.

540.    The circumstances described herein under which Knauf Guangdong and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling

defective drywall make it inequitable for Knauf Guangdong and/or Knauf Gips to retain those funds and profits.

541.    Hammer has no adequate remedy at law.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 46 – COMMON LAW INDEMNITY
### (Against Cape)

542.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

543.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

544.    Hammer is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Cape.  Hammer justifiably relied on Cape to supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

545.    Hammer is entirely without fault for the injuries alleged by Plaintiffs.

546.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Cape.

547.    A special relationship existed between Cape and Hammer such that any liability imposed upon Hammer in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Cape. Hammer purchased drywall from Cape to be installed in the Homes.  Moreover, to the extent that Plaintiffs are successful in proving their claims, the drywall

distributed, sold and/or supplied by Cape was defective and wholly to blame for Plaintiffs' injuries.

548.   As a result of the claims that have been filed against Hammer, Hammer has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Cape to distribute, supply and/or sell drywall fit for its intended purpose.

549.   If Hammer is found to be liable to Plaintiffs, Cape is liable to Hammer for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Hammer demands judgment for indemnity in its favor against Cross-Claim Defendant, Cape Cement and Supply, Inc., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 47 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Cape)

550.   Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

551.   This is an action, stated in the alternative, against Cape for contribution pursuant to Section 768.31, Florida Statutes.

552.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defects in the drywall contained in the Homes.

553.     Without admitting any liability or damages to Plaintiffs, should Hammer be found liable, Cape would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

554.     Hammer has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

555.     To the extent that any common liability is found with respect to Hammer, Hammer hereby asserts its right of contribution against Cape for its pro rata share of the liability.

556.     Cape should be required to repay Hammer for any loss, damages, costs, and expenses, including attorneys' fees, Hammer is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Hammer, in excess of its pro rata share of any common liability.

**WHEREFORE**, Hammer demands that judgment be entered against Cross-Claim Defendant, Cape Cement and Supply, Inc., for its pro rata share of the liability, if any, found against Hammer in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 48 – EQUITABLE SUBROGATION
### (Against Cape)

557.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

558.     This is an action, stated in the alternative, against Cape for equitable subrogation.

559.   Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

560.   Hammer is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Cape.  Hammer justifiably relied on Cape to distribute, sell and/or supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe  and fit for use in the construction of residential homes.

561.   Without admitting any liability or damages to Plaintiffs, Hammer is not primarily liable for any liability to the Plaintiffs.

562.   To the extent that Hammer is required to pay damages for any fault of Cape to protect its own interests, and not as a volunteer, Hammer would be entitled to reimbursement from Cape under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

563.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Hammer demands judgment in its favor and against Cross-Claim Defendant, Cape Cement and Supply, Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

## COUNT 49 – NEGLIGENCE
### (Against Cape)

564. Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

565. Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

566. Cape distributed, supplied and/or sold to Hammer the gypsum drywall that was installed in the Homes.

567. Hammer was a foreseeable user of the gypsum drywall distributed supplied, and/or sold by Cape.

568. As such, Cape owed Hammer a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Hammer's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

569. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Cape knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

126

570.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Cape breached its duty of care to Hammer by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Cape sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Hammer with drywall that complied with all applicable building and industry standards.

571.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Cape's duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

572.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Cape knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose Hammer to substantial liability and damages. If Cape had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert,

{FT724314;4}

it would or could have foreseen that the drywall was defective and that damages to Hammer would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

573. Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Cape's breaches of its duties of care, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Cape's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, Cape Cement and Supply, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 50 – NEGLIGENT FAILURE TO WARN
### (Against Cape)

574. Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

575. Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

576. Cape distributed, supplied and/or sold to Hammer the gypsum drywall that was installed in the Homes.

128

577.   Hammer was a foreseeable user of the gypsum drywall distributed supplied, and/or sold by Cape.

578.   As such, Cape owed Hammer a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Hammer about any dangers inherent in the drywall, and/or (iii) warn Hammer about any problems or dangers in using the drywall for residential construction.

579.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Cape knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

580.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Cape knew or should have known that unless it warned Hammer of the risk of using the drywall it distributed, sold, and/or supplied, Hammer would suffer harm. However, Cape failed to provide an adequate warning of such danger.

581.   Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

{FT724314;4}

582.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Cape breached its duty of care to Hammer by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Hammer about any dangers inherent in the drywall, and/or (iii) failing to warn Hammer about any problems or dangers in using the drywall for residential construction, about which Cape knew or reasonably should have known.

583.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Cape's duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

584.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Cape knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Hammer to substantial liability and damages. If Cape had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Hammer would ensue as a result of failing to disclose and/or warn of drywall defects.

585.   Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Cape's breaches of its duties of care, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments

made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Cape's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, Cape Cement and Supply, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 51 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against Cape)

586. Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

587. Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

588. Cape distributed, sold and/or supplied to Hammer the gypsum drywall that was installed in the Homes.

589. Hammer was a foreseeable user of the gypsum drywall distributed supplied, and/or sold by Cape.

590. To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Cape was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left

Cape's control and/or was sold to Hammer, Cape knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

591.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Cape as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Cape breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

592.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

593.    Consumers, such as Hammer, to whom a warning might have been provided could have been identified by Cape.

594.    A warning could have been effectively communicated to consumers such as Hammer and acted on by them.

595.    At all material times, Cape stood in a better position than Hammer to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Hammer was unaware of potential dangers and/or risk of harm associated with the use of Cape's drywall product in residential construction.

{FT724314;4}

596.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Cape's position would have provided a post-sale warning.

597.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Hammer was damaged by Cape's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Cape's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, Cape Cement and Supply, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 52 – STRICT PRODUCTS LIABILITY
### (Against Cape)

598.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

599.    At all material times, Cape was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

{FT724314;4}

600. At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Cape to Hammer.

601. At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Cape. Cape intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

602. Cape expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

603. Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

604. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Cape directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Cape's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

{FT724314;4}

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, Cape Cement and Supply, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 53 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Cape)

605.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

606.    At all material times, Cape was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

607.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Cape to Hammer.

608.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Cape, Cape intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

609.    Cape expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

610.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

611.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential

{FT724314;4}

construction involved a danger of which Cape was required to provide a warning. However, Cape failed to provide an adequate warning of such danger.

612.    Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

613.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Cape failed to warn Hammer of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

614.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Cape's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Cape's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, Cape Cement and Supply, Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 54– UNJUST ENRICHMENT
### (Against Cape)

615.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

616.    This is an action, stated in the alternative, against Cape for unjust enrichment.

617.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

618.    Cape distributed, sold and/or supplied to Hammer the gypsum drywall that was installed in the Homes.

619.    Hammer paid Cape for supplying the drywall for the Homes.

620.    Cape received money from Hammer as a result of Hammer's purchases of defective drywall installed in the Homes.

621.    In delivering such payment, monies and/or funds to Cape, Hammer conferred a benefit, *i.e.*, funds and profit, to Cape, which had knowledge thereof.

622.    Cape voluntarily accepted and retained the benefit conferred upon it by Hammer.

623.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Cape's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment

137

entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.

624.    The circumstances described herein under which Cape profited from selling and/or supplying drywall make it inequitable for Cape to retain those funds and profits.

625.    Hammer has no adequate remedy at law.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant Cape Cement and Supply, Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 55 – COMMON LAW INDEMNITY
### (Against La Suprema Trading Inc.)

626.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

627.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

628.    Hammer is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

629.    Hammer is entirely without fault for the injuries alleged by Plaintiffs.

630.    Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Trading.

631.    A special relationship existed between LS Trading and Hammer such that any liability imposed upon Hammer in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Trading. To the extent that Plaintiffs are successful in

{FT724314;4}

proving their claims, the drywall imported, distributed, sold and/or supplied by LS Trading was defective and wholly to blame for Plaintiffs' injuries.

632.    As a result of the claims that have been filed against Hammer, Hammer has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Trading to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

633.    If Hammer is found to be liable to Plaintiffs, LS Trading is liable to Hammer for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Hammer demands judgment for indemnity in its favor against Cross-Claim Defendant, La Suprema Trading Inc., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 56 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against La Suprema Trading, Inc.)

634.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

635.    This is an action, stated in the alternative, against LS Trading for contribution pursuant to Section 768.31, Florida Statutes.

{FT724314;4}

636.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defects in the drywall contained in the Homes.

637.     Without admitting any liability or damages to Plaintiffs, should Hammer be found liable, LS Trading would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

638.     Hammer has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

639.     To the extent that any common liability is found with respect to Hammer, Hammer hereby asserts its right of contribution against LS Trading for its pro rata share of the liability.

640.     LS Trading should be required to repay Hammer for any loss, damages, costs, and expenses, including attorneys' fees, Hammer is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Hammer, in excess of its pro rata share of any common liability.

**WHEREFORE**, Hammer demands that judgment be entered against Cross-Claim Defendant, La Suprema Trading Inc., for its pro rata share of the liability, if any, found against Hammer in this action, along with interest and costs, and such other and further relief as this Court deems just and proper.

### COUNT 57 – EQUITABLE SUBROGATION
### (Against La Suprema Trading Inc.)

641.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

{FT724314;4}

642.     This is an action, stated in the alternative, against LS Trading for equitable subrogation.

643.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

644.     Hammer is not and was not in the business of manufacturing, distributing, or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

645.     Without admitting any liability or damages to Plaintiffs, Hammer is not primarily liable for any liability to the Plaintiffs.

646.     To the extent that Hammer is required to pay damages for any fault of LS Trading to protect its own interests, and not as a volunteer, Hammer would be entitled to reimbursement from LS Trading under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

647.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Hammer demands judgment in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

{FT724314;4}

## COUNT 58 – NEGLIGENCE
### (Against La Suprema Trading Inc.)

648.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

649.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

650.    Upon information and belief, LS Trading imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

651.    Hammer was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Trading.

652.    As such, LS Trading owed Hammer a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Hammer's customers;  and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

653.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

{FT724314;4}

654.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to Hammer by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

655.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

656.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, LS Trading knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Hammer to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Hammer would

{FT724314;4}

ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

657.    Without admitting any liability or damages to Plaintiffs, Hammer was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  LS Trading's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 59 – NEGLIGENT FAILURE TO WARN
### (Against La Suprema Trading Inc.)

658.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

659.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

660.    Upon information and belief, LS Trading imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

144

{FT724314;4}

661.   Hammer was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Trading.

662.   As such, LS Trading owed Hammer a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Hammer about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Hammer about any problems or dangers in using the drywall for residential construction.

663.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

664.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that unless it warned foreseeable consumers such as Hammer of the risk of using the drywall it distributed, sold, and/or supplied, Hammer would suffer harm. However, LS Trading failed to provide an adequate warning of such danger.

665.   Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had

145

every reason to expect that the product could be safely used in a residential home in the ordinary manner.

666.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to Hammer by: (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as Hammer about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Hammer about any problems or dangers in using the drywall for residential construction, about which LS Trading knew or reasonably should have known.

667.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

668.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Hammer to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Hammer would ensue as a result of failing to disclose and/or warn of drywall defects.

{FT724314;4}

669.    Without admitting any liability or damages to Plaintiffs, Hammer was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  LS Trading's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 60– BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Trading Inc.)

670.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

671.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

672.    Upon information and belief, LS Trading imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

673.    Hammer was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Trading.

147

674.    To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Trading was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Trading's control and/or was sold to Hammer, LS Trading knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

675.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  LS Trading breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

676.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

677.    Consumers, such as Hammer, to whom a warning might have been provided, could have been identified by LS Trading.

678.    A warning could have been effectively communicated to consumers such as Hammer and acted on by them.

679.    At all material times, LS Trading stood in a better position than Hammer to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Hammer was unaware of potential dangers and/or risk of harm associated with the use of LS Trading's drywall product in residential construction.

680.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable importer, distributor, seller and/or supplier in LS Trading's position would have provided a post-sale warning.

681.    Without admitting any liability or damages to Plaintiffs, Hammer was damaged by LS Trading's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  LS Trading's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 61 – STRICT PRODUCTS LIABILITY
### (Against La Suprema Trading Inc.)

682.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

{FT724314;4}

683.     At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

684.     Upon information and belief, the gypsum drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading.

685.     At the time said drywall was placed into the stream of commerce, imported distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

686.     LS Trading expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

687.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

688.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Trading directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against

these claims.  LS Trading's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 62 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Trading Inc.)

689.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

690.    At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

691.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Trading.

692.    At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

693.    LS Trading expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

694.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

151

695.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which LS Trading was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

696.     Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

697.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Trading failed to warn Hammer of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

698.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and

{FT724314;4}

attorneys' fees incurred by Hammer in defending against these claims.  LS Trading's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 63**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against La Suprema Trading Inc.)**

699.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

700.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

701.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

702.    At all material times, Hammer was a person and a consumer of drywall as defined under FDUTPA.

703.    At all material times, LS Trading engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Hammer.

704.     LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

153

705.    At the time LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Trading represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

706.    Plaintiffs, in the Complaint, allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

707.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time LS Trading imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Trading knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

708.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from LS Trading's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

709.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the  Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17-26 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

710.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Hammer acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

711.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not

{FT724314;4}

reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Hammer.

712.    To the extent Plaintiffs are successful in that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Hammer did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Trading's violations of FDUTPA directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  LS Trading's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 64 – UNJUST ENRICHMENT
### (Against La Suprema Trading, Inc.)

713.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

714.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

715.    LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

716.    LS Trading received money from Hammer as payment for the alleged defective drywall installed in the Homes.

717.    In delivering such payment, monies and/or funds to pay for the drywall that was installed in the Homes, Hammer conferred a benefit, *i.e.*, funds and profit, to LS Trading, which had knowledge thereof.

718.    LS Trading voluntarily accepted and retained the benefit conferred upon it by Hammer.

719.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.

720.    The circumstances described herein under which LS Trading profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Trading to retain those funds and profits.

721.    Hammer has no adequate remedy at law.

{FT724314;4}

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**C<small>OUNT</small> 65 – C<small>OMMON</small> L<small>AW</small> I<small>NDEMNITY</small>**
**(Against La Suprema Enterprise Inc.)**

722.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

723.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

724.    Hammer is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

725.    Hammer is entirely without fault for the injuries alleged by Plaintiffs.

726.    Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Enterprise.

727.    A special relationship existed between LS Enterprise and Hammer such that any liability imposed upon Hammer in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Enterprise. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Enterprise was defective and wholly to blame for Plaintiffs' injuries.

728.    As a result of the claims that have been filed against Hammer, Hammer has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Enterprise to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

158

729.     If Hammer is found to be liable to Plaintiffs, LS Enterprise is liable to Hammer for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Hammer demands judgment for indemnity in its favor against Cross-Claim Defendant La Suprema Enterprise Inc. for damages plus attorneys' fees, interest and costs and for such other relief as the Court deems just and proper.

### COUNT 66 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against La Suprema Enterprise, Inc.)

730.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

731.     This is an action, stated in the alternative, against LS Enterprise for contribution pursuant to Section 768.31, Florida Statutes.

732.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defects in the drywall contained in the Homes.

733.     Without admitting any liability or damages to Plaintiffs, should Hammer be found liable, LS Enterprise would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

159

734.    Hammer has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

735.    To the extent that any common liability is found with respect to Hammer, Hammer hereby asserts its right of contribution against LS Enterprise for its pro rata share of the liability.

736.    LS Enterprise should be required to repay Hammer for any loss, damages, costs, and expenses, including attorneys' fees, Hammer is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Hammer, in excess of its pro rata share of any common liability.

**WHEREFORE**, Hammer demands that judgment be entered against Cross-Claim Defendant, La Suprema Enterprise Inc., for its pro rata share of the liability, if any, found against Hammer in this action, along with interest and costs, together with such other and further relief as this Court deems just and proper.

### COUNT 67 – EQUITABLE SUBROGATION
### (Against La Suprema Enterprise Inc.)

737.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

738.    This is an action, stated in the alternative, against LS Enterprise for equitable subrogation.

739.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

740.     Hammer is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

741.     Without admitting any liability or damages to Plaintiffs, Hammer is not primarily liable for any liability to the Plaintiffs.

742.     To the extent that Hammer is required to pay damages for any fault of LS Enterprise to protect its own interests, and not as a volunteer, Hammer would be entitled to reimbursement from LS Enterprise under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

743.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Hammer demands judgment in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 68 – NEGLIGENCE
**(Against La Suprema Enterprise Inc.)**

744.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

745.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

161

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

746.    Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

747.    Hammer was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Enterprise.

748.    As such, LS Enterprise owed Hammer a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Hammer's customers;  and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

749.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

750.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Hammer by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all

applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Hammer with drywall that complied with all applicable building and industry standards.

751.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

752.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Hammer to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Hammer would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

753.    Without admitting any liability or damages to Plaintiffs, Hammer was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the

163

amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 69 – NEGLIGENT FAILURE TO WARN
### (Against La Suprema Enterprise Inc.)

754.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

755.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

756.    Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

757.    Hammer was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Enterprise.

758.    As such, LS Enterprise owed Hammer a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Hammer about any dangers inherent in the drywall, and/or (iii) warn

{FT724314;4}

foreseeable consumers such as Hammer about any problems or dangers in using the drywall for residential construction.

759.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

760.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that unless it warned foreseeable consumers such as Hammer of the risk of using the drywall it distributed, sold, and/or supplied, Hammer would suffer harm. However, LS Enterprise failed to provide an adequate warning of such danger.

761.    Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

762.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Hammer by: (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably

should have known about; (ii) failing to warn foreseeable consumers such as Hammer about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Hammer about any problems or dangers in using the drywall for residential construction, about which LS Enterprise knew or reasonably should have known.

763.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

764.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Hammer to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Hammer would ensue as a result of failing to disclose and/or warn of drywall defects.

765.   Without admitting any liability or damages to Plaintiffs, Hammer was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  LS Enterprise's

{FT724314;4}

wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 70 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Enterprise Inc.)

766.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

767.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

768.    Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

769.    Hammer was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Enterprise.

770.    To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Enterprise was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Enterprise's control and/or was sold to Hammer, LS Enterprise knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

{FT724314;4}

771.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  LS Enterprise breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

772.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

773.    Consumers, such as Hammer, to whom a warning might have been provided, could have been identified by LS Enterprise.

774.    A warning could have been effectively communicated to consumers such as Hammer and acted on by them.

775.    At all material times, LS Enterprise stood in a better position than Hammer to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Hammer was unaware of potential dangers and/or risk of harm associated with the use of LS Enterprise's drywall product in residential construction.

776.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{FT724314;4}

the Complaint, a reasonable importer, distributor, seller and/or supplier in LS Enterprise's position would have provided a post-sale warning.

777.    Without admitting any liability or damages to Plaintiffs, Hammer was damaged by LS Enterprise's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 71 – STRICT PRODUCTS LIABILITY
### (Against La Suprema Enterprise)

778.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

779.    At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

780.    Upon information and belief, the gypsum drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise.

781.   At the time said drywall was placed into the stream of commerce, imported distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

782.   LS Enterprise expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

783.   Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

784.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Enterprise directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 72 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
#### (Against La Suprema Enterprise)

785.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

786.    At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

787.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Enterprise.

788.    At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

789.    LS Enterprise expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

790.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

791.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential

171

construction involved a danger of which LS Enterprise was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

792.    Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

793.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Enterprise failed to warn Hammer of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

794.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

172

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 73
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
**(Against La Suprema Enterprise Inc.)**

795.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

796.     This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

797.     The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

798.     At all material times, Hammer was a person and a consumer of drywall as defined under FDUTPA.

799.     At all material times, LS Enterprise engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Hammer.

800.      LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

801.     At the time LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Enterprise represented that the drywall was fit for the

ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

802.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

803.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time LS Enterprise imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Enterprise knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

804.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from LS Enterprise's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

805.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the   Complaint, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective

drywall, and/or its failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 16 - 26 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

806.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Hammer acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

807.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint. LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Hammer.

808.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Hammer did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Enterprise's violations of FDUTPA directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. LS Enterprise's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 74 – UNJUST ENRICHMENT
### (Against La Suprema Enterprise Inc.)

809.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

810.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

811.     LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

176

812.    LS Enterprise received money from Hammer as payment for drywall installed in the Homes.

813.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, Hammer conferred a benefit, *i.e.*, funds and profit, to LS Enterprise, which had knowledge thereof.

814.    LS Enterprise voluntarily accepted and retained the benefit conferred upon it by Hammer.

815.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.

816.    The circumstances described herein under which LS Enterprise profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Enterprise to retain those funds and profits.

817.    Hammer has no adequate remedy at law.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{FT724314;4}

## THIRD-PARTY CLAIM AGAINST SWEET

### The Parties, Jurisdiction and Venue

1.      This is an action for damages within the monetary jurisdiction of this Court.

2.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Hammer.

3.      Hammer was and is a Florida corporation doing business in Lee County, Florida, where this cause of action arose.  At all material times, Hammer was a builder of residential homes in Lee County.

4.      Hammer has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used in the construction of their homes (the "**Homes**") was defective and caused damages to Plaintiffs.

5.      Hammer denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.      Third-Party Defendant, Sweet, is a Florida corporation having its principal place of business in Lee County, Florida, where this cause of action arose. At all material times, Sweet supplied and installed allegedly defective drywall in the Homes.

7.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs.

8.      Moreover, this Third-Party Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Third-Party Claim and over the instant Third-Party Defendant.

{FT724314;4}

## General Allegations

9.     As set forth in more detail in the Complaint, Plaintiffs allege that the Homes were built using defective drywall designed, manufactured and processed in China, and that Hammer is liable for damages to Plaintiffs.[11]

10.     Plaintiffs allege that the drywall installed in the Homes has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances and Plaintiffs' personal property (the "**Other Property**").

11.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

12.     In connection with the construction of homes in Lee County, Hammer hired Sweet to furnish, supply, and/or install gypsum drywall in the Homes. The drywall furnished, supplied, sold and/or installed by Sweet for use in the construction of the Homes was not altered and/or otherwise substantively changed by Hammer.

13.     Sweet knew that Hammer required and expected the drywall it furnished, supplied and/or installed in the Homes to be fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

14.     At all material times, Sweet furnished, supplied and/or installed the drywall that was installed in the Homes.

15.     The drywall furnished, supplied and/or installed by Sweet for use in the construction of the Homes was not altered and/or otherwise substantively changed by Hammer.

---

[11]     The named class Plaintiffs and other members of the putative class have asserted claims against Hammer in this Action, as well as other actions in the state and federal courts.  The damages sought by Hammer in this Third-party Complaint against Sweet include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

{FT724314;4}

16.     For the purpose of this Third-Party Complaint only, and not constituting an admission of the allegations or liability by Hammer, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

17.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, Sweet had greater knowledge, and/or stood in a better position than Hammer to know, of the drywall's applications, performance, and dangers.

18.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Sweet's acts and/or omissions in furnishing, supplying and/or installing the defective drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages to Plaintiffs.

19.     Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the <u>gypsum</u> drywall product installed by Sweet in the Homes.

20.     Moreover, Hammer did not know and was never informed by Sweet that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

21.     Consequently, Sweet is liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Hammer in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.  Additionally, Sweet's wrongful conduct also caused damages to Hammer including but not limited to Hammer's loss of reputation, goodwill and lost profits.

22.     Hammer has hired the undersigned counsel and has agreed to pay a reasonable fee for its services.

23.     All conditions precedent to the filing of this Third-Party Complaint have been performed, excused, or otherwise waived.

**COUNT 1 – COMMON LAW INDEMNITY**
**(Against Sweet)**

24.     Hammer reasserts and realleges the allegations in paragraphs 1 through 23 above as if fully set forth herein.

25.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

26.     Hammer is not and was not in the business of installing, furnishing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall installed, supplied, furnished and/or sold by Sweet.  Hammer justifiably relied on Sweet to install, supply, furnish and/or sell drywall that was fit for the ordinary purpose for which it was intended, *i.e*., safe and fit for use in the construction of residential homes.

181

27.     Hammer is entirely without fault for the injuries alleged by Plaintiffs.

28.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Sweet, and not Hammer.

29.     A special relationship existed between Sweet and Hammer such that any liability imposed upon Hammer in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Sweet.   Hammer hired Sweet to install drywall in the Homes. Moreover, to the extent that Plaintiffs are successful in proving their claims that the drywall was defective, said drywall was installed, supplied, furnished and/or sold by Sweet, and thus, Sweet is wholly to blame for Plaintiffs' injuries.

30.     As a result of the claims that have been filed against Hammer, Hammer has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Sweet to install and/or furnish drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

31.     If Hammer is found to be liable to Plaintiffs, Sweet is liable to Hammer for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

WHEREFORE, Hammer demands judgment for indemnity in its favor against Third-Party Defendant, Sweet Interiors, Inc., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 2 -  CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Sweet)

32.     Hammer reasserts and realleges the allegations in paragraphs 1 through 23 above as if fully set forth herein.

33.     This is an action, stated in the alternative, against Sweet for contribution pursuant to Fla Stat. § 768.31.

34.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defects in the drywall contained in the Homes.

35.     Without admitting any liability or damages to Plaintiffs, should Hammer be found liable, Sweet would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

36.     Hammer has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

37.     To the extent that any common liability is found with respect to Hammer, Hammer hereby asserts its right of contribution against Sweet for its pro rata share of the liability.

38.     Sweet should be required to repay Hammer for any loss, damages, costs, and expenses, including attorneys' fees, Hammer is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims in this action

and/or any other action brought by Plaintiffs against Hammer, in excess of its pro rata share of any common liability.

**WHEREFORE**, Hammer demands that judgment be entered against Third-Party Defendant, Sweet Interiors, Inc., for its pro rata share of the liability, if any, found against Hammer in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 3 – EQUITABLE SUBROGATION
### (Against Sweet)

39.     Hammer reasserts and realleges the allegations in paragraphs 1 through 23 above as if fully set forth herein.

40.     This is an action, stated in the alternative, against Sweet for equitable subrogation.

41.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

42.     Hammer is not and was not in the business of installing, furnishing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall installed, furnished, supplied and/or sold by Sweet.  Hammer justifiably relied on Sweet to install, furnish, supply and/or sell drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

43.     Without admitting any liability or damages to Plaintiffs, Hammer is not primarily liable for any liability to the Plaintiffs, resulting from a judgment obtained by Plaintiffs.

44.     To the extent that Hammer is required to pay damages for any fault of Sweet to protect its own interests, and not as a volunteer, Hammer would be entitled to reimbursement from Sweet under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against

{FT724314;4}

Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

45.     Such subrogation will not work any injustice to the rights of others.

WHEREFORE, Hammer demands judgment against in its favor and against Third-Party Defendant, Sweet Interiors, Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 4 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY UNDER COMMON LAW AND/OR FLORIDA STATUTE, SECTION 672.314
### (Against Sweet)

46.     Hammer reasserts and realleges the allegations in paragraphs 1 through 23 above as if fully set forth herein.

47.     This is an action against Sweet for breach of the implied warranty of merchantability under the common law and/or Florida Statutes § 672.314.

48.     Hammer hired Sweet to furnish and/or install gypsum drywall in the Homes. Sweet knew that Hammer required and expected the drywall it furnished, supplied, sold and/or installed in the Homes to be fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes, and Hammer justifiably relied on Sweet's skill and judgment to provide and install such drywall in the Homes.

49.     Sweet, as the installer and/or seller of the drywall, warranted to Hammer that the drywall was reasonably fit for its ordinary use. Pursuant to the relationship between the parties,

Sweet is deemed to have provided Hammer with an implied warranty of merchantability as to the drywall materials installed, furnished, supplied and/or sold by Sweet.

50.     The drywall furnished by Sweet for use in the construction of the Homes was not altered and/or otherwise substantively changed by Hammer.

51.     Pursuant to Florida Statutes Section 672.314 and/or common law, Sweet warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.

52.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.  Hammer denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Hammer is found liable to Plaintiffs for the defective drywall in the Homes, Sweet breached the implied warranty of merchantability by installing, furnishing, supplying and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

53.     As a result of the claims that have been filed against Hammer, Hammer has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Sweet to furnish, install, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Sweet's wrongful conduct

also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

54.     Hammer timely notified Sweet of the defective gypsum drywall, but Sweet has failed to repair or replace the defective gypsum drywall.

**WHEREFORE,** Hammer demands judgment for damages against   Third-Party Defendant, Sweet Interiors, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**C<small>OUNT</small>  5 – B<small>REACH OF THE</small> I<small>MPLIED</small> W<small>ARRANTY OF</small> F<small>ITNESS</small>**
**(Against Sweet)**

55.     Hammer reasserts and realleges the allegations in paragraphs 1 through 23 above as if fully set forth herein.

56.     This is an action against Sweet for breach of the implied warranty of fitness.

57.     Hammer hired Sweet to furnish and/or install gypsum drywall in the Homes. Sweet knew that Hammer required and expected the drywall Sweet furnished, supplied, sold and/or installed in the Homes to be safe and fit for use in the construction of residential homes.

58.     Hammer justifiably relied on Sweet's skill and judgment to furnish, supply, sell and/or install drywall fit for the particular purpose of constructing residential homes.

59.     Pursuant to the relationship between the parties, Sweet is deemed to have provided Hammer with an implied warranty of fitness as to the work performed and drywall materials furnished, supplied, sold and/or installed by Sweet.

60.     The drywall furnished, supplied and/or sold by Sweet for use in the construction of the Homes was not altered and/or otherwise substantively changed by Hammer.

61.     Sweet impliedly warranted that the drywall was safe and fit for use in the construction of residential homes.

187

62.     Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Hammer denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Hammer is found liable to Plaintiffs, Sweet breached the implied warranty of fitness by furnishing, supplying and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

63.     As a result of the claims that have been filed against Hammer, Hammer has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Sweet to distribute and/or sell drywall fit for its intended purpose, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Sweet's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

64.     Hammer timely notified Sweet of the defective gypsum drywall, but Sweet has failed to repair or replace the defective gypsum drywall it furnished, supplied, sold and/or and installed in the Homes.

**WHEREFORE,** Hammer demands judgment for damages against Third-party Defendant, Sweet Interiors, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

{FT724314;4}

<u>**COUNT 6 – STRICT PRODUCTS LIABILITY**</u>
**(Against Sweet)**

65.     Hammer reasserts and realleges the allegations in paragraphs 1 through 23 above as if fully set forth herein.

66.     Hammer hired Sweet to furnish and/or install gypsum drywall in the Homes. Sweet furnished, supplied, sold and/or installed the gypsum drywall in the Homes

67.     At all material times, Sweet was in the business of furnishing, supplying, installing, and/or selling gypsum drywall of the type contained in the Homes.

68.     At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, furnished, supplied, installed and/or sold by Sweet in the regular course of business to Hammer.

69.     At the time said drywall was placed into the stream of commerce, furnished, supplied, installed and/or sold by Sweet, Sweet intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

70.     Sweet expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

71.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

72.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into

189

the stream of commerce, supplied and/or sold by Sweet directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.   Sweet's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

      **WHEREFORE**, Hammer demands judgment for damages in its favor and against Third-Party Defendant, Sweet Interiors, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Sweet)

73.    Hammer reasserts and realleges the allegations in paragraphs 1 through 23 above as if fully set forth herein.

74.    Hammer hired Sweet to furnish and/or install gypsum drywall in the Homes. Sweet furnished, supplied, sold and/or installed the gypsum drywall in the Homes.

75.    At all material times, Sweet was in the business of furnishing, supplying, installing, and/or selling gypsum drywall of the type contained in the Homes.

76.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, furnished, supplied, installed and/or sold by Sweet in the regular course of business to Hammer.

77.     At the time said drywall was placed into the stream of commerce, furnished, supplied, installed and/or sold by Sweet, Sweet intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

78.     Sweet expected the gypsum drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

79.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

80.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Sweet was required to provide a warning. However, Sweet failed to provide an adequate warning of such danger.

81.     Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

82.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Sweet failed to warn Hammer of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Hammer had no way of anticipating that the drywall could harm

191

persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

83.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Sweet's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Sweet's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Third-Party Defendant, Sweet Interiors, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 8 – BREACH OF CONTRACT
**(Against Sweet)**

84.     Hammer reasserts and realleges the allegations in paragraphs 1 through 23,  above as if fully set forth herein.

85.     Upon information and belief, in connection with the construction of residential homes in Lee County, Hammer entered into an agreement with Sweet wherein Sweet agreed to (i) furnish labor, drywall materials, supervision and other things necessary to efficiently perform and timely complete drywall work in the Homes, (ii) perform its duties in a workmanlike

{FT724314;4}

manner; and, (iii) correct and/or reimburse Hammer for defective work not in compliance with the plans and specifications.

86.     In accordance with their agreement, Sweet knew that Hammer required and expected the drywall Sweet furnished, supplied and/or installed in the Homes to be safe and fit for use in the construction of residential homes.

87.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

88.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Sweet breached the material obligations of the parties' agreement by, among other things, furnishing and/or installing deficient and/or defective drywall.

89.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Sweet's acts and omissions in furnishing and/or installing defective drywall in the Homes directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Sweet's wrongful

{FT724314;4}

conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

WHEREFORE, Hammer demands judgment for damages in its favor and against Third-Party Defendant, Sweet Interiors, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9 – UNJUST ENRICHMENT
### (Against Sweet)

90.     Hammer reasserts and realleges the allegations in paragraphs 1 through 23,  above as if fully set forth herein.

91.     This is an action, stated in the alternative, against Sweet for unjust enrichment.

92.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

93.     Sweet furnished, supplied, sold and/or installed the gypsum drywall that was installed in the Homes.

94.     Hammer paid Sweet for furnishing supplying, selling, and/or installing the drywall for the Homes.

95.     Sweet received money from Hammer as a result of Hammer's purchases of defective drywall installed in the Homes.

96.     In delivering such payment, monies and/or funds to Sweet, Hammer conferred a benefit, *i.e.*, funds and profit, to Sweet, which had knowledge thereof.

97.     Sweet voluntarily accepted and retained the benefit conferred upon it by Hammer.

98.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Sweet's acts and omissions in distributing, supplying

and/or selling defective drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.

99.     The circumstances described herein under which Sweet profited from selling and/or supplying drywall make it inequitable for Sweet to retain those funds and profits.

100.     Hammer has no adequate remedy at law.

WHEREFORE, Hammer demands judgment for damages in its favor and against Third-Party Defendant, Sweet Interiors, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

**COMES NOW** Defendant/Cross and Third-Party Plaintiff, Hammer Construction Services, Ltd, and hereby demands a trial by jury as to all issues so triable as a matter of right.

{FT724314;4}

Respectfully submitted this 7th day of December, 2010.

**AKERMAN SENTERFITT**

BY:   /s/      Stacy Bercun Bohm
      Stacy Bercun Bohm, Esq. (Fla. Bar No. 022462)
      Valerie B. Greenberg, Esq. (Fla. Bar No. 26514)
      Leslie Miller Tomczak, Esq. (Fla. Bar No. 126489)
      Las Olas Centre II, Suite 1600
      350 East Las Olas Boulevard
      Fort Lauderdale, Florida 33301-2229
      Telephone: (954) 463-2700
      Telecopier: (954) 463-2224
      Email:  stacy.bohm@akerman.com
              valerie.greenberg@akerman.com
              leslie.tomczak@akerman.com

      *Lead Counsel for Hammer Construction Services, LTD.*

*Co-Counsel for Hammer Construction Services, LTD.*

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
        Susie.morgan@phelps.com
        Skylar.rosenbloom@phelps.com

{FT724314;4}

## CERTIFICATE OF SERVICE

I hereby certify that *Defendant Hammer Construction Services, LTD.'s Cross Claim and Third-Party Claim* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA  70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA  70163 (kmiller@frilot.com), by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 7th day of December, 2010.

/s/      Leslie Miller Tomczak