003578.00801M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL No.: 09-2047** |
| | **SECTION: L** |
| **THIS DOCUMENT RELATES TO:** | **Honorable Eldon E. Fallon** |
| **ALL CASES** | **MAG: JUDGE WILKINSON** |

_____/

## DEFENDANTS' MOTION TO COMPEL ARBITRATION AND FOR A STAY OF PROCEEDINGS PURSUANT TO FLORIDA STATUTES §682.02 – §682.03 and PURSUANT TO 9 U.S.C. §1

Defendants, Antilles Vero Beach, LLC ("Antilles") and Ironwood Properties, Inc. ("Ironwood"), move this court for an order compelling Plaintiff to submit their claims in this action to arbitration in accordance with and pursuant to the Home Buyers Warranty VI ("HBW") registered warranty program ("Limited Warranty"), as described below, and for an order staying the instant proceedings pursuant to the Florida Arbitration Code, Fla. Statutes §682.02 and §682.03, the Federal Arbitration Act (9 U.S.C. § 1, *et seq.*) (hereinafter the "FAA"), pending the outcome of the arbitration, and as grounds state:

### I.        FACTUAL BACKGROUND

1.        On or about September 6, 2008, Plaintiffs, James A. Hernandez as POA for Peter Blanchard, and Antilles, entered into a written Purchase and Sale Agreement (the "Purchase Agreement") whereby Antilles, agreed to sell and Plaintiffs agreed to purchase Lot 187 (the "Lot") of The Antilles Subdivision, together with a home dwelling (the "Home") to be constructed on the Lot, as more particularly described in the Purchase Agreement. (The Purchase Agreement is attached hereto as **Exhibit "A."**)

2.      Additionally, the Seller agreed and under that pursuant to paragraph 8 of the Purchase

Agreement, the Builder would use the new or equivalent materials available at the time of the

construction of the home.

> **8. CONSTRUCTION OF THE PROPERTY**. Subject to other terms of this Agreement, Seller shall commence construction of the Property as soon as it is reasonably possible following the issuance of all required building permits, and shall proceed with reasonable diligence throughout the term of construction. Seller agrees that all construction shall utilize new materials (or equivalent quality) and that all such materials shall be in accordance with applicable governmental rules, regulations, and building codes, and that all work shall be done in a good and workmanlike manner. Seller shall be responsible for all building permits, impact fees, water and sewer hook-up fees, excluding deposits for utility services, which shall be reimbursed by Buyer at Closing.

> **Exhibit "A."**

3.      Section 19 of the Purchase Agreement is set forth in full below:

> 19.  **SELLER'S LIMITED WARRANTY; DISCLAIMER OF IMPLIED WARRANTIES. Seller** agrees, at Seller's expense, to register the Property, at Closing, with Home Buyers Warranty Corporation (2-10 HBW) **("HBW"),** and to further furnish Buyer, at Closing, with, appropriate evidence of such registration in accordance with HBW's 2-10 HBW registered warranty program **("Limited Warranty").** Specimen copies of the Limited Warranty may be reviewed in Seller's sales office. **BUYER UNDERSTANDS THAT THE ABOVE-DESCRIBED LIMITED WARRANTY TO BE DELIVERED TO BUYER AT CLOSING IS THE ONLY WARRANTY MADE BY SELLER WITH REGARD TO THE PROPERTY OR THE PROJECT, AND, TO THE MAXIMUM LAWFUL EXTENT AND UNLESS CLEARLY AND ABSOLUTELY PROHIBITED BY LAW, ALL IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY AND HABITABILITY, ANY WARRANTIES IMPOSED BY STATUTE, AND ALL OTHER EXPRESS AND/OR IMPLIED WARRANTIES OF ANY KIND OR CHARACTER ARE SPECIFICALLY DISCLAIMED, AND SELLER HAS NOT GIVEN AND BUYER HAS NOT RELIED ON OR BARGAINED FOR ANY SUCH WARRANTIES. AS TO ANY IMPLIED WARRANTY THAT CANNOT BE DISCLAIMED ENTIRELY, ALL SECONDARY, INCIDENTAL AND CONSEQUENTIAL DAMAGES ARE SPECIFICALLY EXCLUDED, WAIVED AND DISCLAIMED (CLAIMS FOR SUCH SECONDARY, INCIDENTAL AND CONSEQUENTIAL DAMAGES BEING CLEARLY UNAVAILABLE IN THE CASE OF IMPLIED WARRANTIES WHICH ARE DISCLAIMED ENTIRELY ABOVE). BUYER UNDERSTANDS AND HEREBY AGREES TO THE TERMS AND CONDITIONS OF THE LIMITED WARRANTY.** Without limiting the generality of the foregoing, if but only if, Seller is prohibited from disclaiming entirely certain implied warranties by reason of the provisions of the "Magnuson-Moss Warranty Act" (15 U.S.C. §§2301-2312) (the **"Warranty Act"),** if applicable, Seller HEREBY LIMITS THOSE IMPLIED WARRANTIES, IF ANY, AS FOLLOWS: (i) IN SCOPE TO THOSE, IF ANY, GIVEN ON "CONSUMER PRODUCTS," IF ANY, AS DEFINED IN THE WARRANTY ACT, IF APPLICABLE) WHICH ARE ACTUALLY COVERED BY THE LIMITED WARRANTY, AND (ii) IN DURATION TO THE ONE YEAR PERIOD OF SELLER'S LIMITED WARRANTY, AND ALL THOSE IMPLIED WARRANTIES, IF ANY, ARE HEREBY

**DISCLAIMED ABSOLUTELY THEREAFTER.** Seller will deliver to Buyer, at Closing, any and all manufacturers' warranties, which will be passed through to Buyer at Closing, none of which manufacturers' warranties are expressly warranted in any way by Seller. The provisions of this Section 19 will survive Closing.

**Exhibit "A."**

4.      Following the completion of construction of the Home, Plaintiff, and Antilles closed on the purchase and sale of the Home in accordance with the Purchase Agreement.

5.      In accordance with Section 19 of the Purchase Agreement, Defendants, the Home was registered with Home Buyers Warranty Corporation ("HBW®") warranty program in accordance with an Application for Home Enrollment executed by Plaintiff at closing. (Application for Home Enrollment executed by Plaintiff is attached hereto as **Exhibit "B."**)

6.      Further, the Buyer acknowledge the terms, conditions, limitations duties, responsibilities, obligations and scope of the Home Buyers Warranty Corporation ("HBW") warranty program by executing the application.

7.      The application clearly states:

**BUYER'S ACKNOWLEDGEMENT AND CONSENT**

**Your Builder is applying to enroll your home in the 2-10 HBW® New Horne Warranty program. By-signing below, you acknowledge that you have read a sample copy of the Warranty Booklet, and CONSENT TO THE TERMS OF THESE DOCUMENTS INCLUDING THE BINDING ARBITRATION PROVISION contained therein. You further understand that when the warranty is issued on your new home, it is an Express Limited Warranty and that all claims and liabilities are limited to and by the terms and conditions of the Express Limited Warranty as stated in the 2-10 HBW® Booklet. IF YOU, THE BUYER(S), HAVE NOT RECEIVED A CERTIFICATE OF WARRANTY COVERAGE AND WARRANTY BOOKLET FROM 2-10 HBW® WITHIN THIRTY (30) DAYS AFTER CLOSING, THEN THERE IS NO COVERAGE BY THE BUILDER'S WARRANTY INSURER, YOU SHOULD CONTACT YOUR BUILDER.**

**Exhibit "B."**

8.      The Builder Application for Home Enrollment and the HBW Corporation Limited Warranty Booklet constitute the "Limited Warranty" under the Purchase Agreement.

9.      Section 24 of the Purchase Agreement includes the following choice of law provision:

> 24. **FLORIDA LAW; SEVERABILITY**.  This Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Florida, and any disputes in connection with this Agreement will be settled according to Florida law.

> **Exhibit "A."**

10.     Section 27 of the Purchase Agreement includes the following venue provision:

> 27. **LITIGATION.** In the event of any dispute arising out of this Agreement, the prevailing party shall be entitle to recover all costs incurred, including, without limitation, reasonable attorneys' fees and costs through all appellate level and all bankruptcy and administrative proceedings. The venue of any litigation or other dispute resolution arising out of this Agreement shall be Palm Beach County, Florida. This provision shall survive the Closing or earlier termination hereof.

> **Exhibit "A."**

Further, pursuant to the section 38 of the Purchase Agreement, the Plaintiff affirmatively waived

a trial by jury.

> **38. JURY TRIAL WAIVER**. **SELLER AND BUYER KNOWLINGLY INTENTIONALLY AND VOLUNTARILY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING IN CONNECTION WITH THIS AGREEMENT OR THE COURSE OF DEALINGS OT CONDUCT OF THE PARTIES TO THIS AGREEMENT**.

> **Exhibit "A."**

11.     Consummating the acceptance of the enrollment of the Plaintiffs' home, HWB issued its

"Certificate of Warranty Coverage" pursuant to the terms of the agreement, and provided the

Buyer with a copy Home Buyers Warranty Booklet. (The HBW Corporation Limited Warranty

Booklet is attached hereto as **Exhibit "C",** and The "Certificate of Warranty Coverage" pursuant

to the terms of the agreement is attached hereto as **Exhibit "D"**)

12.     Also, pursuant to Section VII of the HBW Corporation Limited Warranty Booklet

contains the following waiver of implied warranties provision.

> **WAIVER OF IMPLIED WARRANTIES. You have accepted the express Limited Warranty provided in this Warranty Booklet, and all other express or implied warranties, including any oral or written statements or representations made by Your Builder/Seller or any implied warranty of habitability, merchantability or fitness, are hereby disclaimed by Your Builder/Seller and are hereby waived by You to the extent possible under the laws of Your state.**

Exhibit "C"

13.    Section VII of the HBW Corporation Limited Warranty Booklet contains the following

arbitration provision (the "Arbitration Provision"):

> **ARBITRATION. Any and all claims, disputes and controversies by or between the owner, the Builder/Seller, the Warranty Insurer and/or HBW®, or any combination of the foregoing, arising from or related to this Agreement, the Warranty, the Home Warranty Insurance Policy, the subject Home, or the 2-10 HBW® Program shall be settled by binding arbitration. Agreeing to arbitration means you are giving up your right to a jury trial. Any person hi contractual privity with the Builder/Seller whom the Home owner contends is responsible for any construction defect in the Home shall be entitled to enforce this arbitration agreement. Any party shall be entitled to recover reasonable attorney's fees and costs incurred in enforcing this arbitration agreement. The decision of the arbitrator shall be final and binding and may be entered as a judgment in any State or Federal court of competent jurisdiction.**
>
> **The arbitration shall be conducted by the American Arbitration Association pursuant to its Horne Construction Arbitration Rules and Mediation Procedures; or by Construction Arbitration Services, Inc., or by DeMars & Associates, Ltd. The choice of arbitration service shall be that of the Home owner if the Home owner is a claimant and if not the choice shall be that of the Builder/Seller or the Warranty Insurer, if applicable. The arbitration shall be conducted pursuant to the applicable rules of the arbitration service selected unless noted otherwise. All administrative fees of the arbitration service and fees of the arbitrator shall be allocated to the parties as provided in the rules of the arbitration service, subject to the discretion of the arbitrator to reallocate such fees in the interests of justice. If for any reason this method of selecting an arbitration service cannot be followed, the parties to the arbitration shall mutually select an arbitration service.**
>
> **The parties expressly agree that this Warranty and this arbitration agreement involve and concern interstate commerce and are governed by the provisions of the Federal Arbitration Act (9 U.S.C. § 1, et seq.) now in effect and as the same may from time to time be amended, to the exclusion of any different or inconsistent state or local law, ordinance or judicial rule.**

Exhibit "C"

14.    Pursuant to the Application for Home Enrollment, Plaintiffs acknowledged his consent to

the Arbitration Provision.   Furthermore, in the Application for Home Enrollment, Plaintiffs

acknowledged that no person or entity shall have any liability whatsoever, by implication or

otherwise, for claims which are not expressly covered by the Limited Warranty.

15.    Section 16 of the Purchase Agreement provides that if Seller defaults under the Purchase

Agreement, Buyer will give Seller ten (10) days notice of it and if Seller has not cured the

default within such period, Buyer will have such rights as may be available in law or in equity.

Section 21 of the Purchase Agreement provides that where Buyer is required or desires to give notice to Seller, the notice must be in writing.

16.     Plaintiffs failed to provide written notice of Defendants' alleged default under the Purchase Agreement, as specifically required by Purchase Agreement.

17.     In accordance with the Limited Warranty under Purchase Agreement, Plaintiff's claim against Defendants pertaining to for the alleged installation of Chinese gypsum drywall boards in the Home should have been brought through a Notice of Claim filed with the HBW Warranty Administration Office for arbitration in accordance with the Arbitration Provision and pursuant to the rules of Construction Arbitration Services, Inc., not by the various omnibus complaints filed against Defendants in the United States District Court for the Eastern District of Louisiana.

18.     The "HBW Program" (hereinafter "HBW Program") is an insurance-backed, ten-year new home warranty program created and administered by Home Buyers Warranty Corporation (hereinafter "HBW") which provides builders and homeowners nationwide with protection against certain construction defects. Only builders with a proven reputation for quality are permitted to join the HBW Program. Member builders issue the Warranty to new home buyers at the close of escrow at no cost to the home buyer. The Warranty is transferrable to each subsequent purchaser for the duration of the ten-year Warranty term.

19.     The obligations of the builder under the HBW Warranty are insured by National Home Insurance Company (a Risk Retention Group) ("NHIC"). NHIC is a Risk Retention Group created and transacting business pursuant to the authority of the Federal Risk Retention Act (15 U.S.C. § 3901). Builders participating in the asset program are also provided with a Commercial General Liability Policy with completed operations hazard coverage underwritten by a major insurance company.

20.     Defendants are the developer of The Antilles Subdivision in Vero Beach, Florida and a Florida-licensed general contracting company that served as the general contractor for Antilles for the construction of the Home and other homes in The Antilles Subdivision. Plaintiffs, signed

a Builder Application for Home Enrollment on March 28, 2007. The Warranty contains a waiver and disclaimer of all other express or implied warranties of habitability, merchantability or fitness of the home, together with a waiver of the right to seek damages or other remedies from Defendants, its subcontractors, suppliers and design professionals under any common law or statutory theory of liability, including but not limited to negligence and strict liability. (Exh. C.)

21.     During the first year of the ten-year warranty term, the home is warranted to "be free from defects in materials and workmanship as defined in the Construction Quality Standards" found on pages 11 through 27 of the Warranty. (Exh. C.) During the second year, the home is warranted to "be free from defects in the electrical, plumbing, and mechanical systems," as set forth in pages 27 to 28 of the Warranty. (*Id.*) Finally, throughout the ten-year warranty period, the home is warranted to be free from "Structural Defects" which first occur during the ten-year warranty term. A "Structural Defect" is defined, *inter alia*, as actual physical damage to certain designated load-bearing elements of the home caused by failure of such load-bearing elements, which render the home unsafe, unsanitary, or otherwise unlivable. (Exh. C.).The Warranty obligates the builder to "repair, replace, or pay the reasonable cost of repair of any covered Defect or Structural Defect." (Exh. C.)

22.     The arbitration agreement specifies Construction Arbitration Services, Inc. (hereinafter "CAS") as the arbitration service to conduct any arbitrations under the Warranty. (Exh. C.) CAS is a nationwide arbitration service with more than 1,200 arbitrators, each of whom has more than ten years' experience in construction defect dispute resolution. CAS is the nation's largest arbitration service specializing in the resolution of construction defect disputes. (The current edition of the CAS Rules for the Arbitration of Home Warranty Disputes is attached hereto as **Exhibit E)**

23.     A true and correct copy of the Omnibus Complaints have been filed by Plaintiff. The Complaints allege in relevant part:

Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiff by failing to warn about the defective nature of the drywall. For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

The Defendants' defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use.

Defendants utilized, supplied, inspected, and/or sold this drywall for use in structures owned by Plaintiff, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiff for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required to be installed in structures owned by Plaintiff as a building material due to the defects.

Defendants who are subject to this claim installed, utilized, supplied, inspected, and/or sold drywall for use in the Plaintiff's home, the builders knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiff's home for use as a building material, and warranted the product be fit and merchantable for that use. The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by the builders; to wit, the installation of the drywall in the Plaintiff's home for use as a building material, because it contained defects as set forth herein.

Defendants who are subject to this claim breached the implied warranty of merchantability and fitness because the drywall was not fit to be installed in the Plaintiff's home as a building material due to the defects set forth herein. The drywall that the Defendants installed in the home of the Plaintiff was placed into the stream of commerce by the Defendants in a defective condition and was expected to, and did, reach users, handlers, and persons coming into contact with said drywall product without substantial change in the condition in which it was sold.

Defendants breached the implied warranty of habitability because the defective drywall causes the Plaintiff home does not meet ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality due to the defects. As part of the agreements to purchase real properties from the Defendants, for which the Plaintiff paid valuable consideration, the Defendants contracted with the Plaintiff to construct his home in that it would be free of defects.

The Defendants materially breached their contracts by providing the Plaintiff with defective a home; to wit, the home contained drywall that is inherently defective because it emits various sulfide and other noxious gases through off-gassing that causes harm and damage as described herein.

In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to emit or off-gas Sulfur compounds and/or other potentially harmful, irritating and/or corrosive substances renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiff would not have

purchased the drywall had they known of the defect or defects.

Defendants' interference has impaired the rights of Plaintiff's health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

## II.    <u>ARGUMENT</u>

This Motion is made pursuant to a written arbitration agreement contained in a Builder's Limited Warranty issued by Defendants to Plaintiff when Plaintiffs purchased the Home. In his Complaint, Plaintiffs seeks recovery for a variety of alleged construction defects under diverse theories of recovery: breach of the implied warranty of habitability, negligence, strict liability, and fraud. The Limited Warranty provides that it is the exclusive remedy available to Plaintiffs for resolving any disputes relating to construction defects in the Home. The Arbitration Provision is even broader, and encompasses all claims asserted by Plaintiff in his Complaint.  Arbitration in accordance with the Arbitration Provision will resolve all claims alleged by Plaintiff in his Complaint, leaving nothing for this Court to determine.

When ruling on a motion to compel arbitration, this Court must determine (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. *Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999)*.

The Application for Home Enrollment executed by Plaintiffs and the Arbitration Provision contained in the HBW Corporation Limited Warranty Booklet unambiguously sets forth the manner in which any and all claims or disputes concerning the Home, including, without limitation, claims concerning Chinese gypsum drywall boards allegedly installed in the Home are to be resolved.

An arbitrable issue clearly exists (or may have existed). To make this determination the court must apply the "contractual nexus" test and consider the "existence of some nexus between the dispute and the contract containing the arbitration clause." *Seifert*, 750 So. 2d at 638; *see also Hirshenson v. Spaccio*, 800 So. 2d 670, 675 (Fla. 5th DCA 2001). A dispute arises from the contract if it at least raises an issue that requires reference to or construction of some portion of

the contract for resolution. *Seifert*, 750 So.2d at 639. Consequently, arbitrability depends on the relationship between the claim and the agreement, not the legal label attached to the dispute. *Stacy David, Inc. v. Consuegra,* 845 So. 2d 303, 306 (Fla. 2d DCA 2003) (holding that where arbitration agreement provides for arbitration of disputes relating to contract, "Most claims based on duties that are dependent upon the existence of the contractual relationship between the parties are normally arbitrable."). *See generally Beaver Coaches, Inc. v. Revels Nationwide R.V. Sales, Inc.,* 543 So. 2d 359 (Fla. 1st DCA 1989).

Plaintiffs' claims concern alleged damage as a result of the installation of Chinese gypsum drywall boards in the Home.  Plaintiffs' claims are directly and unambiguously addressed in the Limited Warranty. The broad scope of the Arbitration Provision clearly encompasses Plaintiff's claims based on its plain language which covers "[a]ny and all claims, disputes and controversies arising under or relating to this Agreement, including without limitation, any claim of breach of contract, negligent or intentional misrepresentation or nondisclosure in the inducement, execution or performance of any contract...." Plaintiffs' claims in this action are based on "duties that are dependent upon the existence of the contractual relationship between the parties," *Stacy David, Inc.,* 845 So. 2d at 306, and "raise[s] some issue, the resolution of which, requires reference to or construction of some portion of the contract itself," *Seifert*, 750 So. 2d at 638.

Defendants have not waived their right to compel Plaintiffs' compliance with the Limited Warranty and the Arbitration Provision. Defendants have not engaged in any conduct that constitutes a waiver of its right to compel compliance with the Limited Warranty, including the Arbitration Provision. By this motion, Defendants, have promptly asserted it right to compel compliance with the Limited Warranty, including, the Arbitration Provision, and stay the proceedings in this court after service of process. Furthermore, Defendants has not participated in the litigation process, such as filing a pleading or engaging in discovery, to support a claim of waiver. Therefore, the court should find that Defendants have not waived its right to compel

Plaintiffs' compliance with the Limited Warranty, including the Arbitration Provision, and should enter an order compelling Plaintiff to abide by his contractual obligation to pursue his claims, if any, in accordance with the Limited Warranty as set forth in the Purchase Agreement.

When a party to a written arbitration agreement, such as Plaintiffs, attempts to bring a court action that is subject to arbitration, the Florida Arbitration Code requires the court to stay the action pending resolution of the arbitration. Florida Statutes, §682.03 provides:

> (1) A party to an agreement or provision for arbitration subject to this law claiming the neglect or refusal of another party thereto to comply therewith may make application to the court for an order directing the parties to proceed with arbitration in accordance with the terms thereof. If the court is satisfied that no substantial issue exists as to the making of the agreement or provision, it shall grant the application. If the court shall find that a substantial issue is raised as to the making of the agreement or provision, it shall summarily hear and determine the issue and, according to its determination, shall grant or deny the application.
>
> (2) If an issue referable to arbitration under an agreement or provision for arbitration subject to this law becomes involved in an action or proceeding pending in a court having jurisdiction to hear an application under subsection (1), such application shall be made in said court. Otherwise and subject to §682.19, such application may be made in any court of competent jurisdiction.
>
> (3) Any action or proceeding involving an issue subject to arbitration under this law shall be stayed if an order for arbitration or an application therefore has been made under this section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.
>
> (4) On application the court may stay an arbitration proceeding commenced or about to be commenced, if it shall find that no agreement or provision for arbitration subject to this law exists between the party making the application and the party causing the arbitration to be had. The court shall summarily hear and determine the issue of the making of the agreement or provision and, according to its determination, shall grant or deny the application.
>
> (5) An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown.

Plaintiffs' claims must be submitted through a Notice of Claim filed with the HBW Warranty Administration Office in accordance with the Limited Warranty, including the Arbitration Provision, and pursuant to the rules of Construction Arbitration Services, Inc. The Limited Warranty, including the Arbitration Provision, should be enforced, and Defendants respectfully request that the Court enter an order (i) compelling Plaintiffs to proceed through a

Notice of Claim and arbitration in accordance with the Limited Warranty, (ii) staying this matter pending the outcome of thereof, and (iii) granting such other relief as the Court deems just and proper.

Defendants specifically reserve the right to serve an appropriate response to the complaint, including motions to dismiss the complaint and/or strike portions thereof, based on such grounds for dismissal and/or to strike apparent from the complaint and exhibits attached thereto, in the event this motion to compel arbitration and to stay this action is denied, and reserves the right to seek recovery of their respective attorney's fees from Plaintiff in accordance with the Purchase Agreement and the Arbitration Provision.

### III.        FLORIDA ARBITRATION CODE

a.    **This Arbitration Agreement Is Enforceable under the Florida Arbitration Code, Which Embodies a Strong Public Policy Favoring the Enforcement of Arbitration Agreements.**

Under Florida law, the Arbitration Provision in the Limited Warranty should be enforced as the Florida Arbitration Code supports arbitration under the Federal Arbitration Act ("FAA") when the contract involves interstate commerce.  "The Federal Arbitration Act applies by its terms to an arbitration clause in a contract involving interstate commerce . . . 'With respect to these contracts, federal law supersedes the Florida Arbitration Code, and the Florida Arbitration Code is applied in such cases only to the extent it is not consistent with federal law.'"  *Della Penna v. Zabawa*, 931 So. 2d 155, 160 (Fla. 5th DCA 2006) (quoting *Qubty v. Nagda*, 817 So. 2d 952 (Fla. 5th DCA 2002) (when determining whether an arbitration award was properly vacated, the court looked to the FAA because the brokerage contracts at issue involved interstate commerce).  Similarly, here, where building and construction are intertwined with interstate commerce, it is appropriate that the FAA applies when determining the outcome of disputes arising under the Warranty.

Furthermore, Florida courts have upheld the application of the FAA to an arbitration agreement where the arbitration provision expressly states that the FAA governs because the

transaction involves interstate commerce. *Buckeye Check Cashing, Inc. v. Cardegna*, 824 So. 2d 228, 232 (Fla. 4th DCA 2002). In *Buckeye*, borrowers filed a claim that a lender had made illegal usurious loans, alleging that their arbitration agreement was unconscionable and should not be enforced because it was contained in an illegal contract and was therefore void. *Id.* at 229. The arbitration provision stated that the "agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act." *Id.* The court held that the federal law controls enforcement of the arbitration agreement because the agreement expressly provided that the agreement was subject to the FAA. *Id.* at 230. Here, where the language of the Limited Warranty arbitration provision is nearly identical to that in *Buckeye*, Federal law should be applied.

Section 2 of the Federal Arbitration Act (9 U.S.C. § 1-16, hereinafter the "FAA") provides in pertinent part:

> "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In enacting § 2 of the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The substantive law of arbitrability created by the FAA is applicable in both state and Federal court. *Id.*; *Rosenthal v. Great Western Financial Securities Corp.*, 14 Cal.4th 394, 405-410 (1996)

The reach of the FAA was dramatically expanded by the U.S. Supreme Court in *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 130 L.Ed.2d 753, 115 S.Ct. 834 (1995). The Court therein held that the FAA governs all contracts, which are within the reach of the Commerce Clause of the United States Constitution, i.e., all contracts which are within the power of Congress to regulate. *Id.*, 115 S.Ct. at 840, 843. *Allied-Bruce Terminix* effectively extended the scope of the FAA to virtually every commercial contract in the United States. *See, e.g., Maye*

*v. Smith Barney, Inc.,* 897 F. Supp. 100, 105 (S.D.N.Y. 1997) (FAA held to apply to arbitration agreement contained in employment contract because employees "were required to use and did use various instrumentalities of interstate commerce, including the mail, telephones and various telecommunications systems[.]"); *Reliance Nat. Ins. Co. v. Seismic Risk Ins. Services,* 962 F.Supp. 385, 388 (S.D.N.Y. 1997) (same).

The Federal Courts have long regarded virtually any activity related to building and construction as affecting interstate commerce. *See*, *e.g.*, *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 783-784, 44 L.Ed.2d 572, 95 S.Ct. 2004 (1975) (Supreme Court, in holding that minimum title search fee charged by Virginia attorneys violated Sherman Antitrust Act, stated that the legal services were inseparable "from the interstate aspects of real estate transactions[.]"); *N.L.R.B. v. International Union of Operating Engineers, L. 571,* 317 F.2d 638, 642-643 (8th Cir. 1963) (enjoining the local activities of a labor union, Eighth Circuit adopted view that "the building and construction industry is 'an industry affecting commerce[.]'"); *United States v. Patterson,* 792 F.2d 531, 534-535 (5th Cir. 1986) (affirming conviction under statute requiring "interstate commerce," Court followed Eighth and Ninth Circuit view that "[h]ousing development is certainly a commercial activity" and that "any construction work (for business purposes), regardless of the size or duration of the project, is likely to have an effect on interstate commerce' through the 'flow of men, money, and materials across state lines.")

Section 3 of the Federal Arbitration Act (9 U.S.C. § 1-16, hereinafter the "FAA") provides:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Section 3 of the FAA applies to Florida state courts. *Merrill Lynch Pierce Fenner & Smith, Inc. v. Melamed*, 405 So. 2d 790, 793 (Fla. 4th DCA 1981). In *Merrill Lynch*, the court

interpreted the expression "courts of the United States" in Section 3 to include Florida courts in order to protect the rights created by the Federal Arbitration Act. *Id.* The proceedings should therefore be stayed and arbitration compelled in compliance with the Arbitration Provision pursuant to Section 3 of FAA.

Under the FAA, "Florida courts are required to enforce choice of law provisions in contracts [unless the choice of law forum] contravenes the strong public policy of Florida or is unjust or unreasonable." *Default Proof Credit Card Systems, Inc. v. Friedland*, 992 So. 2d 442, 444 (Fla. 3rd DCA 2008). *See Mazzoni Farms Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306 (Fla. 2000) (holding that contractual choice-of-law provisions are presumptively valid and enforceable in Florida unless the law of the chosen forum contravenes strong public policy). In *Default*, the court explained that while it does "not have the authority to require arbitration where the arbitration agreement requires the application of the law of another state. . . .[w]here the FAA applies to the agreement, the arbitration provision is enforceable by Florida courts." *Id.* The choice of law provision in the Limited Warranty should be treated with a presumption of validity and enforced by the court as it falls within the scope of the FAA, not only because of its relation to interstate commerce, but also because the Warranty expressly provides that the FAA applies.

In accordance with federal policy favoring arbitration, Florida similarly has a strong public policy favoring the enforcement of agreements to arbitrate. *The Hillier Group, Inc. v. Torcon, Inc.*, 932 So. 2d 449, 453 (Fla. 2nd DCA 2006). *See Murphy v. Courtesy Ford, L.L.C.*, 944 So. 2d 1131, 1133 (Fla. 3rd DCA 2006) ("Florida public policy favors resolving disputes through arbitration when the parties have agreed to arbitrate."); *Orkin Exterminating Co. v. Petsch,* 872 So.2d 259, 263 (Fla. 2d DCA 2004). Additionally, "[a]ll doubts regarding the scope of an arbitration agreement must be resolved in favor of arbitration." *Id. See Qubty v. Nagda,* 817 So.2d 952, 956 (Fla. 5th DCA 2002). In construing whether or not an agreement falls within the scope of the FAA, "'due regard must be given to the federal policy favoring arbitration, and

ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Coastal Health Care Group v. Schlosser*, 673 So. 2d 62, 65 (Fla. 4th DCA 1996) (quoting *Volt Info. Sciences, Inc., v. Stanford Univ.* 489 US. 468, 475-76)) (where stock sellers brought suit against a corporation and buyers seeking to stay arbitration of disputes arising out of the sale, the court held that because the arbitration clause contained in the sale contract involved a transaction for interstate commerce, the FAA applied so as to compel arbitration).  In conformity with both federal and state policy, the Arbitration Provision is enforceable under the FAA.

The Florida Arbitration Code provides that arbitration agreements shall be "valid, enforceable, and irrevocable."  Fla. Stat. §682.02.  Furthermore, the "'court *must* compel arbitration where an arbitration agreement and an arbitrable issue exists, and the right to arbitrate has not been waived.'"  *Miller & Solomon General Contractors, Inc. v. Brennan's Glass Co.*, 824 So. 2d 288, 290 (Fla. 4th DCA 2002) (quoting *Gale Group v. Westinghouse Elec. Corp.*, 638 So. 2d 661, 663 (Fla. 5th DCA 1996)) (emphasis added).  "'Any action of proceeding involving an issue subject to arbitration should be stayed' if an application thereof has been made."  *Id.* (quoting *Passalacqua Builders, Inc. v. Mayfair House Ass'n*, 395 So. 2d 1171, 1173 (Fla. 4th DCA 1981).  *See also United Healthcare of Florida, Inc., v.* brown, 984 So. 2d 583 (Fla. 4th DCA 2008).  The arbitration agreement contained in the Limited Warranty and the existence of a dispute falling within the scope of that agreement renders it necessary that the Court compels arbitration and grants a stay of proceedings.

**b.** **The Agreement of the Parties That this Arbitration Agreement Shall Be Governed by the Federal Arbitration Act Is Enforceable.**

The subject arbitration agreement provides that it shall be "governed by the . . . [FAA] . . . to the exclusion of any different or inconsistent state . . . law . . ." This contractual agreement renders it unnecessary for this Court to determine whether in fact, in the absence of such a recitation, the arbitration agreement would be subject to the FAA.  The U.S. Supreme Court has recognized the enforceability of a choice of law provision in an arbitration agreement.  *Volt*

*Information Sciences, Inc. v. Stanford Univ.,* 489 U.S. 468, 479 (1989) (California choice of law superseded otherwise applicable provision of FAA).  In *Primerica Financial Services, Inc. v. Wise,* 217 Ga.App. 36, 456 S.E.2d 631 (1995), the Georgia Court of Appeal held that the parties intended their arbitration agreement to be governed by the FAA by providing in the arbitration agreement that the "Parties . . . shall have the right to enforce all provisions of this [arbitration agreement] . . . under the United States Arbitration Code, 9 U.S.C. § 1 ." *Id.*, 456 S.E.2d at p. 633. Plaintiff should not now be permitted to attempt to evade its contractual agreement by disputing that this arbitration agreement is governed by FAA.

c.     **The Federal Arbitration Act Supersedes All State Statutes, Regulations, and Case Law Which Interfere with the Ability of Contracting Parties to Freely Enter into Enforceable Arbitration Agreements.**

The Courts have "consistently . . . invalidate[d] statue statutes, regulations and case law that threatened to interfere with the ability of contracting parties to freely enter into arbitration agreements . . ." *Securities Industry Association v. Lewis,* 751 F.Supp. 205, 207 (S.D. Fla. 1990) (invalidating Florida statute regulating contents of arbitration agreements between securities brokers and the customers). The Supremacy Clause (Article VI) of the U.S. Constitution prevents states from enacting statutes or regulations, which create an obstacle to the achievement of the full purpose of a Congressional enactment. *California Coastal Commission v. Granite Rock Company,* 480 U.S. 572 (1987). The cases are legion holding that state statutes or regulations forbidding the enforcement of arbitration agreements with respect to particular types of disputes are violative of § 2 of the FAA and therefore of the Supremacy Clause. *E.g., Perry v. Thomas,* 482 U.S. 483 (1987) (California statute forbidding arbitration clause in franchise agreements); *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681 (1996) (invalidating Minnesota statute requiring arbitration clauses to be on first page of contract and in large print); *Lopez, supra* (Alabama anti-arbitration statute); *Kelly, supra* (Nebraska anti-arbitration statute). In *Doctor's Associates, Inc., supra*, the U.S. Supreme Court declared:

"Courts may not, however, invalidate arbitration agreements, under state laws applicable *only* to arbitration provisions. *See Allied-Bruce [Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265[; *Perry* [*v. Thomas* (1987) 482 U.S. 483]. By enacting § 2, we have several times said, Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed "upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.* (1974) 417 U.S. 506, 511, 41 L.Ed.2d 270, 94 S. Ct. 2449 (internal quotation marks omitted). Montana's § 27-5- 114(4) directly conflicts with § 2 of the FAA because the State's law conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. The FAA thus displaces the Montana statute with respect to arbitration agreements covered by the Act. See 2 I. Macneil R. Speidel, T. Stipanowich, & G. Shell, Federal Arbitration Law § 19.1.1, pp. 19:4- 19:5 (1995) (under *Southland* and *Perry*, "state legislation requiring greater information or choice in the making of agreements to arbitrate than in other contracts is preempted")." *Doctor's Associates, Inc., supra*, 517 U.S. at p. 687, 134 L.Ed.2d at p. 909. (fn. omitted; emphasis in original).

Defendants are unaware of any Florida statute, regulation, or judicial decision, which might impede the enforcement of its arbitration agreement. However, should the Plaintiff discern the existence of any such statute, regulation or judicial decision, this Court should reject its argument, for it is not within the power of the Florida legislature or judiciary to carve out an exception to the strong Federal policy favoring the enforcement of this arbitration agreement which is embodied in the FAA. This Motion does not present a question of Florida law; it presents a question of Federal law, presented to a state court, which should give due deference to the Federal authorities which have previously considered it. Any arguments in opposition to the enforcement of this arbitration agreement must perforce be derived from the Federal substantive law of arbitrability derived from the FAA. All such arguments have been repeatedly rejected by the Federal courts.

**d.**      **An Order to Arbitrate a Particular Dispute Should Not Be Denied Unless it May Be Said with Positive Assurance That the Arbitration Clause Is Not Susceptible of an Interpretation That Covers the Dispute.**

As the U.S. Supreme Court has stated, in construing the Federal policy underlying the Federal Arbitration Act, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960) (emphasis added).

In *Mosses H. Cone Mem. Hospital v. Mercury Constr. Co.,* 460 U.S. 1 (1983), the Supreme Court, in reversing a District Court's order staying an arbitration pending the resolution of a state court suit on the same issues, stated:

> "Section 2 [of the FAA] is a Congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act . ... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay or a like defense to arbitrability. [fn. omitted.]" *Id.*, 460 U.S. at pp. 24-25.

The Federal policy favoring arbitrability overrides the general rule that ambiguities be resolved against the drafter of the contract – indeed, ambiguities are to be resolved in *favor* of arbitration. In *McKee, supra*, the Fifth Circuit Court of Appeals, construing an arbitration clause in an insured home warranty, stated:

> "The [homeowners] contend that if we construe the warranty according to Louisiana law, the federal policy favoring arbitration would not apply and that a state policy requiring that ambiguities in a document be resolved against the sophisticated drafter would control. * * * [T]he FAA 'create(s) a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act,' *Mosses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), and that body of federal law requires that, '. . . due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.' *Volt Information Sciences, Inc. v. Stanford University*, 489 U.S. 468, 475-76, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989)." *McKee, supra*, 45 F.3d at 984.

Under the FAA, a contractual arbitration agreement will be broadly interpreted to include not merely disputes regarding the performance of the contract, but "every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *J. J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 321 (4th Cir. 1988) (ordering arbitration of claims for unfair trade practices, defamation, abuse of process and other torts). The "touchstone of arbitrability" is whether the claims have their "genesis" in the contractual agreement. *Sweet Dreams Unlimited v. Dial-A-Mattress International, Ltd.,* 1 F.3d

639, 643 (7th Cir. 1993). In a recent decision by the Fourth District Court of Appeal, a medical insurance policy required arbitration of any dispute "regarding the decision of" the insurer. *Held*, this language was broad enough to require arbitration of Plaintiff' claims of fraud, breach of covenant of good faith and fair dealing, and violation of the Unruh Civil Rights Act and other statutes. *Wolitarsky v. Blue Cross of California,* 53 Cal.App.4th 338, 348 (1997).

The arbitration agreement in the HBW Warranty is as broad an arbitration agreement as can be drafted: it is intended to cover *any dispute* between the builder and the homebuyer. Its ambit is not confined to claims made under the Warranty; it is intended to cover as well claims alleged *outside* the Warranty, even though such claims are specifically waived and disclaimed in the Warranty. (Exh. C.) The enforceability of that waiver is itself arbitrable; and each of the four common law theories of recovery pleaded in Plaintiff's Complaint is arbitrable pursuant to the first paragraph of the arbitration agreement because the Courts have repeatedly recognized that arbitration agreements which require arbitration of all disputes "arising" from or under or "relating to" the subject contract evince "the broadest language the parties could reasonably use to subject their disputes to that form of settlement [arbitration], including collateral disputes that relate to the agreement containing the clause." *Fleet Tire Service v. Oliver Rubber*, 118 F.3d 619, 621 (8th Cir. 1977). The Second Circuit Court of Appeals has described such language as "the paradigm of a broad clause." *Collins & Aikman Products Company v. Building Systems, Inc.*, 58 F.3d 16, 20 (2nd Cir. 1995); *see also, Tracer Research Corporation v. National Environmental Services Company*, 42 F.3d 1292, 1295 (9th Cir. 1995) (inclusion of words "relate to the contract" in arbitration clause broadens scope of clause beyond "arising from" to include even claims which do not involve breach of or require interpretation of contract).

There is simply no way Plaintiff, or any other homebuyers can "plead around" this arbitration agreement; otherwise, the agreement would soon become ineffectual. In any event, it is insufficient for Plaintiff to argue merely that the arbitration agreement is ambiguous as to its scope; their burden is to demonstrate with "positive assurance" that the agreement is *not*

susceptible of an interpretation that covers their claims. *United Steelworkers, supra*. This they cannot do.

**e.    The Provision in the Arbitration Agreement Requiring the Arbitrator to Decide Which Issues Should Be Submitted to Arbitration Is Enforceable**

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649, 89 L.Ed.2d 648, 106 S. Ct. 1415 (1986). As the U.S. Supreme Court stated in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 131 L.Ed.2d 985, 115 S. Ct. 1920 (1995):

> "Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about *that* matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate. . . . That is to say, the court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *Id.*, 514 U.S. at p. 943 (emphasis in original; citing authorities, including *AT&T Technologies, Inc., supra*.)

It has repeatedly been held "that the power to determine arbitrability may be granted through the use of a broad arbitration clause." *Southern Calif. Dist. Council of Laborers v. Berry Constr., Inc.,* 984 F.2d 340, 344 (9th Cir. 1992) (arbitrator empowered to determine arbitrability where contract required arbitration of all disputes "over the interpretation or application of the terms" of the contract); *Brotherhood of Teamsters v. Interstate Distributor Co.,* 832 F.2d 507 (9th Cir. 1987) (same where arbitration agreement applied to "any grievance or controversy affecting the mutual relations" of the parties).

The arbitration agreement before this Court provides in relevant part:

> "Any disputes concerning the interpretation or the enforceability of this arbitration agreement, including without limitation, its revocability, or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel, or laches, shall be decided by the arbitrator. (Exh. B., §VIII.)

Defendants would not go so far as to suggest that a dispute concerning the very *existence* of an arbitration agreement between the parties is arbitrable. However, once this Court

determines that an arbitration agreement exists, it is for the *arbitrator*, and not the Court, to determine which of Plaintiff's claims is to be decided by the arbitrator.

**f.**     <u>**The Federal Arbitration Act Requires Enforcement of the Method for Selecting the Arbitrator Set Forth in the Arbitration Agreement**</u>

Section 5 of the FAA provides in relevant part:

> "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or umpire, such method shall be followed . . .." 9 U.S.C. § 5.

A court does not have authority to disregard, modify, or supplement the method of selecting an arbitrator set forth in the arbitration agreement. *ATSA of California, Inc. v. Continental Ins. Co.,* 702 F.2d 172, 175-176 (9th Cir. 1983); *Dryer v. Los Angeles Rams*, 40 Cal.3d 406, 414 (1985); *Westinghouse Electric Corp. v. New York City Transit Authority*, 82 N.Y.2d 47, 623 N.E.2d 531, 532 (1993) (arbitration agreement requiring appointment of partisan arbitrator did not offend public policy and was enforceable).

The arbitration agreement in the present case requires that the arbitration "shall be submitted to arbitration by and pursuant to the rules of Construction Arbitration Services, Inc. (hereinafter 'CAS') . . ." (Exh. B §VII.) Defendants request that this arbitration be conducted by CAS, the nation's largest dispute resolution service specializing in construction defect disputes. CAS is a nationwide arbitration service with more than 1,200 arbitrators, each of whom has at least 10 years' experience in dispute resolution and construction defect disputes.

It should be emphasized that the arbitration agreement does not grant Defendants the right to select the *arbitrator*. It merely grants HBW the right to select the arbitration *service*, CAS, which in turn, selects the arbitrator. The arbitration agreement therefore provides "a *method* of naming or appointing an arbitrator" within the meaning of Section 5 of the FAA which this Court must respect, while at the same time assuring that a neutral, independent arbitration service selects the actual arbitrator.

9 U.S.C. § 4 requires that the court, "upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." The arbitration agreement requires the arbitration to be conducted "pursuant to the rules of [CAS] . . . in effect at the time of the request for arbitration." (Exh. B, §VII.) A copy of the CAS Rules for the Arbitration of Home Warranty Disputes in effect at this time is submitted herewith as **Exhibit E**. These are the applicable arbitration rules under which any arbitration between Plaintiff and Defendants should proceed. Defendants are confident that this Court will find that such rules provide fair and neutral procedures for resolving the claims of Plaintiff.

## IV.      CONCLUSION

For each of the foregoing reasons, this Court is respectfully urged to grant this Motion to Compel Arbitration and Stay Action.

Respectfully submitted,

Dated: December 14, 2010

/s/ Raul R. Loredo
Raul R. Loredo, Esquire
MINTZER SAROWITZ ZERIS
LEDVA & MEYERS, LLP
The Waterford at Blue Lagoon
1000 NW 57th Court, Suite 300
Miami, FL  33126
Tel:  305-774-9966
Fax:  305-774-7743
rloredo@defensecounsel.com

/s/ Addison J. Meyers
Addison J. Meyers, Esquire
MINTZER SAROWITZ ZERIS
LEDVA & MEYERS, LLP
The Waterford at Blue Lagoon
1000 NW 57th Court, Suite 300
Miami, FL  33126
Tel:  305-774-9966
Fax:  305-774-7743
ameyers@defensecounsel.com

## CERTIFICATE OF SERVICE

I, hereby certify that the above and forgoing has been served on Plaintiff's Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by United States Mail and email or hand delivery and email and upon all parties electronically uploading same to Lexis Nexis File and Serve® in accordance with Pre-Trial Order No.: 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with procedures established in MDL 2047 on this 14th day of December, 2010.

<u>/s/ Raul R. Loredo</u>
Raul R. Loredo