```
 1                    UNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF LOUISIANA

 3   IN RE: CHINESE-MANUFACTURED )
     DRYWALL PRODUCTS            )
 4   LIABILITY                   )
     LITIGATION                  )
 5                               ) CIVIL DOCKET NO. 09-MD-2047-EEF-JCW
                                 ) SECTION "L"
 6                               ) NEW ORLEANS, LOUISIANA
                                 ) THURSDAY, DECEMBER 2, 2010
 7                               ) 9:00 A.M.
     THIS DOCUMENT RELATES TO:   )
 8                               )
     ROBERT C. PATE, AS TRUSTEE  )
 9   FOR THE CHINESE DRYWALL     )
     TRUST                       )
10                               )
     vs.                         )
11                               )
     AMERICAN INTERNATIONAL      )
12   SPECIALTY LINES INSURANCE   )
     COMPANY, FCCI COMMERCIAL    )
13   INSURANCE COMPANY, FCCI     )
     INSURANCE COMPANY, ET AL    )
14                               )
     2:09-CV-07791 (E.D. LA.)    )
15   ****************************

16

17          TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

18         HEARD BEFORE THE HONORABLE ELDON E. FALLON

19                 UNITED STATES DISTRICT JUDGE

20

21
     APPEARANCES:
22
     FOR THE PLAINTIFFS'
23   STEERING COMMITTEE:          HERMAN HERMAN KATZ & COTLAR
                                   BY:  RUSS HERMAN, ESQUIRE
24                                 820 O'KEEFE AVENUE
                                   NEW ORLEANS, LA 70113
25
```

```
1    APPEARANCES CONTINUED:

2                                    LEVIN, FISHBEIN, SEDRAN & BERMAN
                                     BY:  ARNOLD LEVIN, ESQUIRE
3                                    510 WALNUT STREET, SUITE 500
                                     PHILADELPHIA, PA 19106
4
     DEFENDANT:                      Frilot, LLC
5                                    BY:  KERRY J. MILLER, ESQUIRE
                                     ENERGY CENTRE
6                                    1100 POYDRAS STREET
                                     SUITE 3700
7                                    NEW ORLEANS, LA 70163

8
                                     FRANK TONY
9

10   LOUISIANA PLAINTIFFS:           DANIEL BECNEL, ESQUIRE
                                     425 W. AIRLINE HIGHWAY
11                                   SUITE B
                                     LAPLACE, LA 70086
12
     FOR THE STATE/FEDERAL
13   COORDINATION COMMITTEE:         BARRIOS, KINGSDORF & CASTEIX
                                     BY:  DAWN BARRIOS, ESQUIRE
14                                   701 POYDRAS STREET, SUITE 3600
                                     NEW ORLEANS, LA 70139
15

16   KNAUF:                          STEVE GLICKSTEINE

17
     OFFICIAL COURT REPORTER:        SUSAN A. ZIELIE, RPR, FCRR
18                                   UNITED STATES DISTRICT COURT
                                     EASTERN DISTRICT OF LOUISIANA
19                                   500 POYDRAS STREET, ROOM B406
                                     NEW ORLEANS, LA 70130
20                                   susan_zielie@laed.uscourts.gov
                                     504.589.7781
21

22   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER AIDED TRANSCRIPTION.v
23

24

25
```

1          NEW ORLEANS, LOUISIANA; THURSDAY, DECEMBER 2, 2010

2                          9:00 A.M.

3                   (COURT CALLED TO ORDER)

4

5          THE COURT:  Good morning, ladies and gentlemen.

6          THE CLERK:  MDL 2047, in re:  Chinese Drywall.

7          THE COURT:  Counsel make their appearance for the

8     record.

9          MR. HERMAN:  May it please the Court, Russ Herman for

10    the plaintiffs.

11         MR. MILLER:  Good morning, Your Honor, Kerry Miller on

12    behalf of the defense steering committee.

13         THE COURT:  Okay.  We're here today for our monthly

14    status conference.  I have a full house here, and we have several

15    hundred on the phone, a number of judges who are also

16    participating.  I appreciate their presence and have profited

17    from working with them on these matters.

18         The first item on the agenda is pretrial orders.

19         MR. HERMAN:  Morning, Judge Fallon.  May it please the

20    Court, our pretrial orders are listed on the status conference

21    report, and there are now 24 pretrial orders.  There's a new

22    pretrial order entered regarding the PSE's notice of completion

23    of Omni complaints.  That was October 22nd, 1H.

24         Also, Status Reports Filings, they may be accessed by

25    those wishing to access them at www.laed.uscourts.gov.  There is

1   a tab that links to, quote, Drywall MDL, end quote.  And, again,

2   www.laed.uscourts.gov.

3           THE COURT:  That's important for everybody to recognize,

4   both here and on the phone, I post everything on the website.

5   And hopefully, even with frequently asked questions, I'm

6   continually tweaking that, depending upon the questions that we

7   get, as well as the pretrial orders.  I have to change them

8   because circumstances change.  And so we have to add, we're at 1H

9   already.  So we have to do that.  So keep in touch with the

10  pretrial orders.

11          Property Inspections.

12          MR. HERMAN:  Your Honor, there's nothing new to offer.

13  Crawford & Company, which was originally appointed by the Court,

14  which formed the basis for later negotiations with a pilot

15  program and basis with respect to the Hernandez and Germano

16  trials which Your Honor conducted.

17          THE COURT:  Next item is Plaintiff and Defendant Profile

18  Forms.

19          MR. HERMAN:  Nothing new on those, Your Honor.

20          THE COURT:  Preservation Order.

21          MR. HERMAN:  Nothing new on that, Your Honor.

22          THE COURT:  What about state and federal?

23          MR. HERMAN:  Ms. Barrios is here.

24          MS. BARRIOS:  Good morning, Judge Fallon.  Dawn Barrios

25  for the Federal State Committee.

1    I'm going to supply your law clerk and both parties with

2    copies of all the state cases through CTO No. 20.  I'd like to

3    take this opportunity to particularly thank Judge Scott Vowell in

4    the state of Alabama.  I've been in touch with him.  He is

5    spearheading efforts to coordinate all the state judges in

6    Alabama.  I have forwarded him yesterday by Federal Express

7    copies of all your relevant orders, copies of the pilot program

8    agreement as well as other orders that the jurists in Alabama may

9    be interested in.  And Judge Vowell deserves that commendation

10   because he is leading that effort.

11       THE COURT:  I do appreciate his efforts.  He and I have

12   talked frequently on the matter and exchanged some views.

13       I also appreciate Judge Farina, who is doing likewise in

14   Florida, and Judge Hall who is doing likewise in Virginia.  We

15   have a number of other judges who are coming on board, and I

16   appreciate all of their help.

17       MS. BARRIOS:  Your Honor, regarding the state of

18   Virginia, Mr. Serpe has advised that he has requested that Judge

19   Hall and Judge Davis in the Eastern District of Virginia have a

20   joint hearing on the issue of the pollution exclusion, much like

21   your joint hearing with Judge Farina.  And he wanted me to advise

22   the Court that Taishan has been third-partied into those Virginia

23   cases.  They have not accepted service so they're going through

24   service in the Hague.

25       In addition to Judge Vowell's activity in Alabama, I've

1    been advised that there is a small builder in Alabama who is

2    offering small settlements to homes in the Mobile County area,

3    and Mr. Herman is aware of that.  And I'm keeping the PSE

4    informed of those developments.

5            THE COURT:  Yeah.  I think that's important.  I'd like

6    to keep a handle on this so that it all goes through the same

7    program that we're doing in the MDL.  I think that, if we get out

8    of kilter on different programs, it's going to make matters

9    difficult.  And also there's costs and fees that are associated

10   with all of these things.  So I'd like it all to go through with

11   the same program that we have with the MDL program here.  So

12   everybody has to be aware of that.

13           MS. BARRIOS:  Yes, Your Honor.

14           And the last issue regards cross noticing of

15   depositions.  That I believe Mr. Miller cross-noticed some of the

16   foreign depositions in the state cases almost at the eleventh

17   hour, maybe two or three days before the depositions were to

18   occur.  My phones lit up with state counsel complaining that they

19   didn't have adequate notice.  And I believe Mr. Miller had

20   agreed, at least according to one counsel, to pull that down for

21   his case.  So he did have to file a lot of motions to quash.

22           THE COURT:  Yeah.  One of the things that's done with

23   coordination is that, rather than have the litigants take

24   depositions two and three and four and five times, depending upon

25   the states and federal, I'd like to just have them taken one time

1   for all purposes and so everybody will have to be noticed, and

2   the states can participate to the extent that they need to

3   participate.  But we don't have to take them over again.  And my

4   agreement with the judges there is that they will not order that

5   they be taken again, because they have already been taken.  So

6   let's be aware of that, everybody.

7   MS. BARRIOS:  And, Your Honor, the complaint isn't about

8   the cross-noticing, it's just about the timing.  If Mr. Miller

9   could send it out earlier, we'd appreciate it.

10  Thank you, Your Honor.

11  THE COURT:  Thank you.

12  MR. MILLER:  Your Honor, on those points, a couple of

13  things.  First of all, in Alabama, I know that Judge Vowell was

14  mentioned by Ms. Barrios and by Your Honor.  A settlement was

15  reached, Your Honor, earlier this week involving the Pritchard

16  Housing Authority claim in Alabama that involved Knauf and

17  interior and exterior supplier Mitchell Homes, a builder in

18  Alabama.  We met in a mediation with John Perry and Rick Henry

19  two or three weeks ago and then had some follow-up calls.  We

20  were a bit delayed by the Thanksgiving holidays, but ultimately

21  resolved it on Monday.  So that's good news.  And we are trying

22  to resolve some additional Alabama cases there.

23  In terms of coordination, I know that there is a status

24  conference tomorrow with Judge Farina in Florida.  And we spoke

25  with liaison counsel in chambers with Your Honor about the

1     importance of coordination, particularly now that there are

2     competing class certification motions both in federal court and

3     in state court.  And also, Your Honor, because of Knauf, Knauf's

4     willingness to try to settle as many of the claims involving

5     Knauf T&J properties as possible, we want to make sure that the

6     coordination is really keyed up.  It's going to be very important

7     because we're going to try resolve a number of different parties,

8     plaintiffs and defendants.  So coordination is going to be key.

9     I know that we are going to meet with the Plaintiffs' Steering

10    Committee and are going to be presenting to Your Honor a class

11    certification coordination submission before Christmastime.  So

12    that's going to be very important, Your Honor.

13          THE COURT:  Right.  We have competing class actions,

14    both in state and federal.  My thinking on is that the parties

15    ought to get together and get to me the scope of all of the class

16    actions and tell me which ones are competing state class actions.

17    I'll then discuss it with the state judges, and hopefully we'll

18    be able to try those class actions at the same time.  That is to

19    say, the state judge can either monitor or participate here with

20    me on the bench, and we'll do it both state and federal at the

21    same time.  There's no sense in doing it multiple times, so -- if

22    that can be avoided.  And we'll try to do that.

23          With regard to Knauf's situation, they have reached a

24    settlement proposal with the pilot program, which is hopefully

25    now going to be expanded rapidly with regard to the condition of

```
 1   the drywall as well as the remediation as well as other factors.
 2   So hopefully that part of the cases can be put on ice.  And the
 3   discovery, to the extent that jurisdictional and alterego and
 4   things of that sort can continue.  But, the trial aspect of
 5   Knauf, most of that has been resolved with Knauf's participating
 6   with the PSE.  So I would hope we don't have trials involving
 7   those issues that have already been resolved, and I'll deal with
 8   that shortly.
 9              Motion in the MDLs.
10              MR. HERMAN:  May it please the Court, there are a series
11   of motions that have been filed.
12              THE COURT:  I have eight motions.  I'll take those up
13   after our conference here today.
14              Discovery Issues.
15              MR. HERMAN:  Yes.  I'll be very brief.  First of all, I
16   want to commend Ms. Barrios, because she's done an extraordinary
17   job.  This case requires a great deal in keeping in touch with
18   the states and the problems, and she's done it on a daily basis.
19              Secondly, there have been several hundred thousands of
20   documents reviewed by a committee in connection with the
21   depositions, and I want to mention Lynn Davis, Fred Logger, Jeff
22   Grant, Mr. Erapeno, Jeff Kiser, Chris Seeger and Ervin Gonzales,
23   who literally over the last two months have reviewed hundreds of
24   thousands of documents.
25              Various Knauf depositions have been taken.  The last two
```

1    were taken in Hong Kong and in London.  And we've extended

2    professional courtesy to Knauf with respect to extensions on

3    getting in their confidentiality designations.

4           Next week in Germany, Isabel Knauf and Martin Grundke

5    will be deposed in Frankfort.

6           With respect, we only expect, after those depositions,

7    from the plaintiff's standpoint, to take two more 30(b)(6)

8    depositions of Knauf entity fiduciaries, and we'll designate

9    those at the end of next week.

10          With regard to lawsuits against Taishan, we have had

11   agreements with Taishan, they'll begin producing documents;

12   depositions that were set have been postponed and continued

13   without dates until the documents are produced and reviewed.

14          With respect to depositions that were set for December

15   22nd with the USG Corporation, Seacoast and RW Supply, we agreed

16   last week with counsel for L&W Supply that those depositions

17   would be continued.  There's some ongoing discussions.

18          And, Your Honor, that would bring us to page 12, which

19   relates to Banner's production requests and a records deposition

20   with regard to certain chemical or inspections of premises that

21   Seatech provided.  Banner's counsel may want to speak to that.

22          ATTYD:  Good morning, Your Honor, Nick --

23          THE COURT:  Why don't you go to the microphone so they

24   can hear you on the phones.

25          ATTYD:  Good morning, nick FIEM Tom on behalf of certain

```
 1    Banner entities.
 2            We had served a subpoena on Seatech, and we got
 3    responses that were insufficient.  We have followed-up with a
 4    motion to compel before this Court.  And we've got agreement with
 5    Seatech's counsel for them to file a response to that motion by
 6    the end of this week.  And then we have a hearing early next
 7    week, assuming the Court can accommodate us.
 8            THE COURT:  I can.  We'll set it up on either Monday or
 9    Tuesday.  I start a trial on Monday, so Tuesday probably is best.
10    But I'll work out something.
11            You all want to come in here, or you want to do it on
12    the phone?  What's your pleasure?  Either way, I can do it.
13            NICK:  I would prefer to do it here.  And, if certain
14    counsel would rather be by telephone, that's fine, we can
15    accommodate that function.
16            THE COURT:  Great.  We can work that out.  Thank you.
17            MR. HERMAN:  Your Honor, may it please the Court, we
18    assume that our standing request on behalf of plaintiffs are that
19    any documents that are produced to or from any other parties be
20    provided to plaintiffs, and of course any documents that are
21    produced by plaintiffs will be provided to the other parties.
22            THE COURT:  Yes.  That's my understanding with all
23    sides, right.
24            MR. HERMAN:  Your Honor, on page 13, item No. IX,
25    Freedom of Information Act, nothing new.
```

1          THE COURT:  Trial settings in federal court.  I have

2     stepped back for the last several months, pushing everybody

3     toward this settlement program, this pilot program, which it

4     looks likes it's working and is now being expanded.  But at this

5     stage we have to go forward with the trials and deal with those.

6     There's a pilot program that's rapidly expanding, it's a

7     settlement program, so hopefully will be a settlement program to

8     resolve at least one of the defendants, if not more.  But there

9     are other defendants who either are not interested or not able at

10    this time to participate, so I want to move on those aspects of

11    the case and we'll tee them up for trial.  So I've instructed the

12    parties to get together and give me some list of trials that are

13    ready and cases that we can deal with with regards to class

14    certification issues.  We're going to need a short period of

15    discovery because the defendants have to discover the

16    representatives and there are some issues that are peculiar to

17    the class actions that may require some additional discovery.

18    But, the other cases, we ought to be able to tee those up and get

19    some trials started in the first part of next year.  February or

20    March, I'm looking at to begin the trials again so that we can

21    work that through.

22          Presently, Taishan is not able or willing to look at

23    this from a global standpoint.  So I'd like to focus and see if

24    we can get all of the defendants who are interested in trying

25    their cases or resolving their cases, and we'll get everybody out

1    of the case except Taishan.  And then all of the other defendants

2    ought to file the necessary pleadings to get with the plaintiffs

3    and they can then -- everybody can look towards Taishan for

4    either their contribution or their shifting of the responsibility

5    so that we have it easier that way.  It would be plaintiffs with

6    everybody, and the defendant Taishan.  And we'll then decide how

7    to deal with both sides.

8         With regard, while I'm talking about Taishan, I

9    suggested to counsel that this might be an opportunity to, with

10   the pilot program, there are some cases that involved mixed

11   drywall, mixed with Knauf and Taishan, and it might be helpful to

12   Taishan to take a very small area of those cases and conduct

13   their own pilot program.  Come into it and have a look-see at how

14   this pilot program works from their standpoint, reserving all of

15   their rights, and given the comfort of not having appeared,

16   whatever requirements that they may have.  But this is an

17   opportunity that they may have that I'd like to see them take

18   advantage of if they're interested in doing so.

19        The next item on the agenda is filings.

20        MR. HERMAN:  In the MDL, Your Honor, XI, nothing new,

21   Your Honor.

22        No. XII, Notice of Appearance of Default Judgments,

23   nothing new, Your Honor.

24        THE COURT:  Okay.  The insurance issues I have before

25   me, they've had a number of hearings.  I've heard the matter, and

1    hopefully I'll be able to get my opinion out this coming week on

2    those issues.   The homeowners, I'll be focusing on primarily.

3          MR. HERMAN:   Your Honor, with regard to item XIV,

4    Service of Pleadings Electronically, at page 18, nothing new.

5          With regard to item No. XV, Master Complaints, and item

6    XVI, Class Action Complaints Indeterminate Defendant, lead

7    counsel Mr. Levin will address that.

8          THE COURT:   Also on omnibus on all of these class action

9    complaints.

10          MR. LEVIN:   Your Honor, the case is getting ahead of the

11   master complaint.   The Omni complaints are still in the process

12   of being served.   We have a stipulation now from the Knauf

13   entities that they will accept service.   That will be filed

14   shortly, and that will make life easier.   It's one letter to

15   Kerry Miller.   And I'm afraid that the case is so advanced that

16   the master complaint probably will wait on just Taishan.

17          THE COURT:   Okay.   What about special master, anything

18   on that?

19          MR. HERMAN:   Your Honor, with regard to special master,

20   there are some ancillary issues which have been resolved,

21   particularly as regards the pilot program.   Brown Greer has

22   entered a contract with Knauf to oversee the pilot program and

23   the various additional documents and process.   The Court will be

24   provided with a copy of that.

25          They've also reached an agreement with US Bank on an

1  escrow agreement.  Your Honor's well aware one of the things that

2  moved the VIOXX case so well was the fact that Brown Greer and US

3  Bank were ancillary.

4       With regards to mediations, there have been a number of

5  successful mediations that are ongoing.  There's one tomorrow,

6  December 3rd; there's one in New York December 6th; there's one

7  set I believe December 17th now.  And they'll be ongoing

8  throughout December in an attempt to resolve issues that would

9  lead to more -- a greater expansion of the pilot program.

10      With regard to Knauf Gyps personal jurisdiction, those

11 matters haven't been set yet.  Neither have alterego.  All

12 depositions, as I indicated, should be completed as to Knauf's

13 entities and those particular issues in the month of January.

14 Although, those dates have not been -- the last two dates have

15 not been set yet, nor the locations.

16      Item 20, Database Management Expert, that of course is

17 Brown Greer, and Your Honor will be receiving that agreement.

18      Frequently Asked Questions, there's really nothing new.

19 The matter's set for hearing following the current status

20 conference.

21      XXII, Your Honor has indicated that you'll address some

22 motions.

23      There is pending, and we're going to supplement it in a

24 motion to establish the plaintiff's litigation expense fund.  We

25 expect to have those motions completed, the briefing completed

```
 1    and a request for a hearing date, probably the next hearing date
 2    Your Honor schedules in January.
 3            Nothing new on members of the plaintiffs' steering
 4    committee.
 5            Item XXV, Mediation, Your Honor's been advised of and I
 6    believe that Mr. Miller reports a successful mediation in
 7    Alabama.  And he had another engagement, he had to leave early.
 8    But there was a successful mediation involving what we
 9    generically term Taylor matters in Alabama.  John Perry is the
10    mediator in those matters.
11            Class certification motions, Your Honor has indicated
12    Your Honor will address in terms of process and scheduling.
13            THE COURT:  With the Lowe's issue, there was a case that
14    was set in --
15            MR. HERMAN:  I see counsel for Lowe's.  He is in the
16    courtroom.  And --
17            THE COURT:  Is there a report on that?  I heard from the
18    judge in Georgia -- is it?
19            MR. HERMAN:  Yes, Your Honor.
20            THE COURT:  And he and I have conferred a lot on those
21    cases, and I understand that he has continued some of them and
22    will have a status conference in January or February.
23            MR. TONY:  Actually, Judge, we had a -- Frank Tony
24    representing Lowe's.  We had a status conference with Judge Bobby
25    Peters of Muscogee County, Columbus, Georgia on November 19th.
```

1    Before that status conference, he had signed an order continuing

2    the fairness hearing which was scheduled for that date.  He

3    wanted to consider the pending joint motion to amend the

4    settlement to add the enhanced benefits group which Your Honor

5    and BLC is well aware of.  We've had numerous discussions about

6    that.

7          And, at the conference on November 19th, two weeks ago,

8    the judge has an order before him.  He's agreed to extend the

9    opt-out deadline already -- there's an order to that effect -- at

10   least 90 days from the previous deadline of November 9th.

11         In the meantime, the claims process is moving along.

12   There's over 18,000 claims on file.  And we expect that, when

13   Judge Peters is ready, he will continue this process moving

14   along.

15         THE COURT:  Yes.  And, again, I have been talking on

16   those issues.  I appreciate his cooperation on this matter, and I

17   certainly will work closely with him.

18         MR. TONY:  That settlement involves only Lowe's.  The

19   claimants in that case reserve all rights against all the other

20   parties.  So it's simply a Lowe's settlement.

21         THE COURT:  Right.  The issue that he's concerned with

22   or that I'm concerned with is whether or not there are any

23   Chinese drywall involved with Lowe's.  Because it was at least

24   reported initially that it was his understanding that this was a

25   non-Chinese drywall that was involved in this particular matter,

```
 1    and I'm concerned -- and hopefully he will focus on it a little
 2    bit -- is whether there's Chinese drywall in Lowe's.  If that's
 3    the situation, then that complicates the matter.
 4           MR. HERMAN:  Your Honor, at this time, during this 90
 5    day period, we're unearthing what appears to be Lowe's sales of
 6    the Chinese drywall.  But we can't confirm anything yet.  But we
 7    do know of some of it.
 8           MR. TONY:  Your Honor, we'll be prepared at any time to
 9    meet with Your Honor and with Judge Peters jointly or separately
10    to address any issues.
11           THE COURT:  I will be in touch with Judge Peters also.
12    Thank you very much.
13           Yell yell:  Your Honor, Steve Glicksteine for Knauf.  On
14    the special master friend, Brown Greer, in addition to having a
15    settlement role, and this is part and parcel of the stipulation
16    by which Knauf entities agreed to accept service through Mr.
17    Miller, we're going to be using Brown Greer also as an initial
18    matter as a special master to determine whether there is adequate
19    proof that a homeowner has Knauf board, so that homeowners who
20    don't have a claim against Knauf can at least dismiss their
21    claims against Knauf.  And we're very close to submitting a
22    stipulation in that regard to Your Honor.
23           Finally, I believe Mr. Herman said something was due --
24    there was something happening on the 17th; but, I confess, I
25    didn't hear it.  So what was it?
```

```
 1            MR. HERMAN:  I just took a note that someone indicated

 2  on December 17th -- I'm sorry -- I misspoke.  December 13th,

 3  there's a mediation requested by Dirky with Banner and Knauf.

 4  Will attend.

 5            MR. GLICKSTEIN:  And hopefully you will.

 6            MR. TONY:  Not me personally, but someone from our side

 7  (that was yellow)

 8            THE COURT:  There's an issue also that has cropped up on

 9  various individuals who remediated their own homes, and they have

10  a claim for reimbursement.  So those claims ought to be able to

11  be resolved.  And I talked to the parties earlier.

12            MR. HERMAN:  May I address that, Your Honor?

13            THE COURT:  Yes.

14            MR. HERMAN:  Mr. Gonzales -- there he is.

15            THE COURT:  You want to discuss that?

16            MR. HERMAN:  Well, in chambers, Knauf stated that if the

17  criterion were the same as in the remediation program, the pilot

18  program, they would entertain looking at and attempting to

19  resolve the cases where remediation has already occurred at the

20  expense of the owners.  In that regard, Ervin Gonzales will be

21  the Plaintiffs' Steering Committee's point person in Florida.  So

22  that anybody who has a case in Florida that they believe meets

23  those criteria will contact Ervin, and then Ervin will make

24  arrangements to the Knauf people to discuss it with them, with

25  Ervin and the PSE present.
```

```
 1            THE COURT:  Right.  And the same way, I understand, with

 2   Dan.  I understand you've got one in Louisiana.

 3            MR. BECNEL:  I've got Shawn Peyton's $1.4 million

 4   renovation.

 5            MR. TONY:  To put it more strongly than Mr. Levin did,

 6   we'll do more than entertain those proposals.  We recognize that

 7   homeowners who remediated their own home have a claim that ought

 8   to be settled.  And, if in fact they can prove that it is Knauf

 9   board, and the price is reasonable, if it is mostly or all of our

10   product, we'll resolve it.  If it's not mostly all of our

11   product, then we'll have to address how to handle that situation.

12            THE COURT:  All right.  Well, those ought to be able to

13   be resolved.  Ervin, get with all of your people in Florida, and

14   my thinking is that get your hands around how many you're dealing

15   with and then see if you can group them, and then take one from

16   each group, and then just cookie-cut that out so we can resolve

17   it.  It ought not take long for that.

18            MR. GONZALES:  Yes, Your Honor.  We'll be able to report

19   back at the next status conference on our results on that.  And I

20   do believe that we'll successfully have that data and begin

21   discussing it with Knauf.

22            THE COURT:  From Louisiana, Danny, get with somebody

23   from Knauf and see if we can work that out.

24            MR. HERMAN:  Immediately following Your Honor's status

25   conference, the plaintiff's steering committee has a conference
```

1    and on our agenda are remediated homes that have been reported to

2    us in Louisiana, Mississippi, Alabama and now Southern Texas.

3    And we will be combining those and getting to Knauf a database of

4    those folks whose homes have been remediated so that they can

5    proceed as the Florida homeowners proceed.

6            THE COURT:  I think it's important to note that we've

7    had this case now about a year, a little over a year, and we've

8    resolved ten cases either by trial or in some method,

9    contradictory method, either by taking defaults and proving up

10   the defaults or by contested trials.  And then the parties were

11   able to take a look at this globally and at least work out a

12   substantial number of these cases.  Hopefully, we'll get most if

13   not all of the defendants out of this case, and we can focus on

14   whatever defendant or defendants remain, and we'll be able to

15   hopefully resolve this litigation shortly.

16           I think you all have done a great job thus far in moving

17   this case.  This was one that was supposedly going to take

18   decades to resolve.  And hopefully, through your efforts, you

19   were able to do it within a year.  So that's very helpful.

20           MR. HERMAN:  Your Honor, with respect to the next items,

21   pretrial item 1H is fully described in the status report.  No

22   further comments on that.

23           Item 29, the pilot program, I'm going to give a brief

24   report.

25           It's proceeding very well.  We are in the second phase

1  of inspections and work orders.  For the most part, both

2  attorneys and their clients have reported that they are well

3  satisfied with the way Moss has gone about its work.  We are

4  awaiting the inspection reports and work orders from Knauf.  I'm

5  advised by Kerry Miller that we'll be receiving those in the next

6  week and in serotinum afterwards.

7       We look forward to the program expanding.  Numerous

8  attorneys representing several hundreds of plaintiffs have

9  requested that they be included in the pilot program, and one of

10 the matters we'll take up at our PSE meeting this afternoon is

11 how we organize that and get the material to Knauf in a usable

12 fashion so that the pilot program may be rapidly expanding.

13      Mr. Miller on behalf of Knauf has indicated that it is

14 Knauf's intention and willingness to expand the program as

15 quickly and as broadly as possible, and we will be working

16 towards that end.

17      There have been approximately, to date, 80 homes that

18 have been fully inspected where they've signed off on Exhibit C.

19 Many that are awaiting work orders which have to be signed off.

20 And I was advised that actual construction or reconstruction

21 could begin hopefully before Christmas.  And we're monitoring

22 that on a daily basis.

23      We want to thank Knauf and Moss, US Bank and Brown Greer

24 for their cooperation, and we look forward to hundreds or more of

25 remediations and inspections in the next few weeks.

 1          THE COURT:  Thank you.

 2          Next status conference is January 20th.  January 20th is

 3     the next status conference.  I'll meet with the attorneys at

 4     8:30.

 5          MR. HERMAN:  I did want to indicate for the record

 6     again, we've had a lengthy status conference report today which I

 7     think reasonably brings everyone up-to-date, and it is posted at

 8     www.laed.uscourts.gov with a link to, quote, Drywall MDL, end

 9     quote.  Thank you, Your Honor.

10          THE COURT:  All right.  Anything more?  And then I'll

11     come back in ten minutes with the motions.

12          MR. MILLER:  The motions should be very short because we

13     basically did the class certification.

14          THE COURT:  Okay, then let's do the motions now then.

15          I have eight motions with the 1, 2 and 3 and 4 being

16     class certification motions in the Vickers, Peyton, Silva and

17     Germano.

18          MR. MILLER:  Your Honor, those motions will be the

19     subject of a joint stipulation with regard to discovery which

20     you'll have before Christmas.

21          THE COURT:  Okay.  And omnibus motion for preliminary

22     default judgment in Gross.

23          MR. HERMAN:  We agreed to put that off for a month.

24          THE COURT:  And motion to intervene, Peyton, Omni I.

25          MR. MILLER:  That's a motion to lift the stay so that we

 1    can make service.

 2              THE COURT:  I'll do that.

 3              The motion to intervene Wiltz, Omni II.

 4              MR. MILLER:  Same, Your Honor.

 5              THE COURT:  And then the motion to intervene, Rogers

 6    III.

 7              MR. MILLER:  Exactly.

 8              THE COURT:  I'll lift those stays for that purpose.

 9              Anything else?

10              MR. MILLER:  Yes.  It wasn't just the good work of

11    everybody that led to where we are in KWAUNT.  It also was Russ's

12    and my age.

13              THE COURT:  All right.  And, in case I don't see

14    anybody, you have a good Christmas and a good year, gentlemen.

15              MR. MILLER:  Same to you, Your Honor.

16              THE COURT:  Court stands in recess.

17              (10:05 a.m., Proceedings Concluded.)

18

19                          CERTIFICATE

20

21         I, Susan A. Zielie, Official Court Reporter, do hereby
      certify that the foregoing transcript is correct.

22

23

                              /S/ SUSAN A. ZIELIE, RPR, FCRR
24                          _____
                                Susan A. Zielie, RPR, FCRR
25