UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL | ) MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | ) |
| ――――――――――――――――――――――――――――――――――― | ) SECTION: L |
| | ) |
| THIS DOCUMENT RELATES TO: | ) |
| | ) |
| ALL CASES | ) JUDGE FALLON |
| | ) MAG. JUDGE WILKINSON |
| ――――――――――――――――――――――――――――――――――― | ) |

THE PLAINTIFFS' STEERING COMMITTEE'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN
ORDER REQUIRING AN ACCOUNTING AND OTHER RELIEF

## I.    INTRODUCTION

On July 26, 2010, the Plaintiffs' Steering Committee ("PSC") filed a motion to establish a

plaintiffs' litigation expense fund to compensate and reimburse attorneys for services performed and

expenses incurred for MDL administration and common benefit ("common benefit motion").  Rec.

Doc. No. 4603.  The adjudication of that motion was stayed by the Court on August 12, 2010.  Rec.

Doc. No. 5207.

Due to certain recent events related to the common benefit motion, described below, the PSC

is moving this Court for an Order requiring:  (1) an accounting to the PSC and the Court of all

payments made which wholly or partially resolve or settle Chinese drywall claims within this

Court's jurisdiction and claims asserted in various omnibus complaints and interventions; (2) that

all attorneys' fees earned on resolutions or settlements among parties to these MDL proceedings be

placed in escrow, pending a determination by this Court as to any hold back for appropriate costs

and common benefit fee percentage; (3) that all payments made to builder-defendants by

manufacturer-defendants and/or their insurers to settle or otherwise resolve Chinese drywall claims

be sequestered, pending a determination by this Court as to an appropriate common benefit fee percentage; (4) that all plans, protocols or agreements to remediate homes with Chinese drywall be filed with the Court, including any costs associated therewith; and (5) that defendants be enjoined from contacting plaintiffs directly without notice to and the presence or permission of their counsel.

The PSC has learned that certain builder-defendants and/or insurers are attempting to persuade plaintiffs to accept offers to remediate their homes, and in so doing these builders are unfairly denigrating the services provided by plaintiffs' counsel. These defendants claim to be "the victim of the defective drywall" and they boast that they are "simply trying to 'do the right thing.'" The PSC supports all remediation efforts; however, these builders are making false statements that accuse plaintiffs' counsel of perpetrating "an unfortunate misunderstanding" because they care only about "substantial hourly and/or contingency fees." Unfortunately, many of the builder settlement offers do not measure up to the standards set forth by the Court for the proper scope of remediation. Some of the builders/insurers are contacting plaintiffs directly without notice to or the presence or permission of plaintiffs' counsel, in violation of the Court's order that "the parties [are expected] to advise property owners that they have the right to consult with counsel. Henceforth, property owners should be advised of the multi-district litigation and website address."[1] And, the builders are asking for assignments of plaintiffs' Chinese drywall claims with the intention that the builders will go after the manufacturers to recover costs to remediate plaintiffs' homes and other expenses and damages. The PSC appointed by the Court to oversee thousands of cases brought to resolve Chinese drywall claims has an equitable common benefit lien on those payments to builders in an

---

[1] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, Minute Entry (E.D. La. Sept. 24, 2009) (Rec. Doc. No. 278).

amount to be determined by the Court at an appropriate juncture.

This MDL Court has authority to issue orders necessary to protect the integrity of its proceedings and to ensure that the Court's fiduciary responsibility to all parties is met. The builder-defendants' efforts to settle plaintiffs' cases outside the purview of the Court and without notice to the PSC or even the Builders' Liaison Counsel must be enjoined. The structure of this litigation established by the Court is designed to ensure fairness to all parties. By engaging in a campaign to settle Chinese drywall claims outside of that structure, these defendants are violating common benefit principles of law as well as disciplinary rules designed to protect litigants. For these reasons, the PSC's instant motion should be granted.

## II.      STATEMENT OF FACTS AND PROCEDURAL HISTORY

The PSC's common benefit motion sets forth in detail the tremendous efforts made by the court-appointed management committee for the common benefit of all Chinese drywall plaintiffs. In addition to the common benefit services summarized in that motion, since July, 2010, the PSC reached an agreement with defendant Knauf Plasterboard (Tianjin) Co. Ltd. ("KPT") and other Knauf entities for the remediation of homes with drywall manufactured by the company.[2]  Pursuant to the KPT pilot program, the remediation of 300 homes with KPT Chinese drywall has begun in conformance with this Court's rulings set forth in *Hernandez v. Knauf Gips, KG, et al.*, case no. 09-6050, Rec. Doc. No. 2713 (Findings of Fact). *See* Transcript of Proceedings, 10/14/10, at p. 4:16-20. The parties expect these 300 homes to be made whole within three months. *Id*. at p. 6:25-7:1. In addition to the KPT entities, a number of suppliers, their insurers and other defendants are

---

[2]  This agreement has been posted to the Court's website at
http://www.laed.uscourts.gov/Drywall/DemonstrationRemediationAgreement.pdf.

participating in this settlement.  *Id.* at p. 5:3-5.  If the program works, it is expected "that possibly 2,000 to 3,000 homes ... could be eligible" for the remediation program.  *Id.* at p. 7:1-3.

Besides creating the KPT settlement, the PSC has pursued since its appointment by the Court and is continuing to pursue actively litigation on behalf of more than 5,000 plaintiff property owners in the MDL.  Intervention "Omni" complaints have been or are in the process of being filed for more than 1,500 additional plaintiffs suing more than 500 Chinese drywall manufacturers, importers, builders, suppliers and other defendants.[3]  The PSC is currently undergoing the time-consuming and expensive process of serving these intervention complaints upon hundreds of foreign defendants, including, but not limited to, Taishan Gypsum Co., Ltd, f/k/a Shandong Taihe Dongxin Co. Ltd.[4] ("Taishan"), BNBM and related entities, China National Building Materials Co., Ltd. and related entities, and KPT and its related entities, pursuant to the Hague Convention.  Many of these complaints have been translated and are in various stages of being submitted to the central authorities in China responsible for serving the defendants.[5]

The PSC is also presently engaged in widespread jurisdictional discovery of those foreign

---

[3]  *See, e.g.*, *Payton, et al. v. Knauf GIPS KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.) (Omnibus I, I(A), I(B), and I(C)) (involving claims against the Knauf defendants); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Case No. 2:10-cv-00361 (E.D. La.) (Omnibus II, II(A), II(B), and II(C)) (involving claims against non-Knauf manufacturers such as Taishan and BNBM); *Gross, et al. v. Knauf GIPS KG, et al.*, Case No. 2:09-cv-6690 (E.D. La.) (original complaint, Omnibus III and III(A)) (asserting alternative liability theory against all known manufacturers for drywall that cannot be traced to a particular manufacturer); *Rogers, et al. v. Knauf GIPS KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.) (Omnibus IV, IV(A), IV(B), and IV(C)) (involving claims against the Knauf defendants); *Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D. La.) (Omnibus V); *Hernandez, et al. v. AAA Insurance, et al.*, Case No. 2:10-cv-3070 (E.D. La.) (Omnibus VI).

[4]  On September 10, 2007, Shandong Taihe Dongxin Co., Ltd., which was a subsidiary company controlled by Beijing New Building Material Co., Ltd. ("BNBM"), changed its name to Taishan Gypsum Co., Ltd.

[5]  *See* Statement from APS International, Ltd., dated 12/14/2010, attached hereto as Exhibit "A."

4

defendants that have challenged this Court's power to adjudicate claims against them resulting from the Chinese drywall they produced, promoted, imported, marketed, distributed and/or sold in this country.  Substantive discovery is ongoing with respect to the foreign defendants as well as other defendants, including, but not limited to, Banner Supply Co., Interior/Exterior Building Supply, L.P. and L&W Supply Corporation, d/b/a Seacoast Supply Corporation.  The PSC has served extensive written discovery on all of the defendants, reviewed tens of thousands of documents, taken depositions of myriad officers of the Knauf companies in Hong Kong, Germany, the United Kingdom and elsewhere.  The PSC has also taken discovery of other defendants in various cities throughout the United States.

As a result of these painstaking efforts, the PSC has established liability and jurisdiction over these defendants.  In addition, the PSC has resolved ten bellwether cases in Virginia and Louisiana,[6] which were intended to serve as a useful tool for all plaintiffs and defendants, as well as the Court.[7] As a result of those trials, the Court made numerous findings of fact regarding the appropriate scope of remediation of plaintiffs' homes.  *E.g.*, *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2010 WL 1445684 (E.D. La. Apr. 8, 2010).  The Court's findings in *Hernandez v. Knauf Gips KG,*

---

[6]   *See Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 09-6687 (E.D. Va.) (7 cases), Default Judgment (May 11, 2010) (Rec. Doc. No. 3013); *Hernandez v. Knauf Gips KG, et al.*, CA 09-6050 (E.D. La.) (1 case), Judgment (May 11, 2010) (Rec. Doc. No. 3).  Two additional bellwether cases, *Campbell v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.), were settled on the eve of trial on June 18, 2010.

[7]   *See* Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict Litigation," 82 TUL. L. REV. 2323 (Jun. 2008) (concluding that the use of a bellwether trial is "one of the most innovative and useful techniques for the resolution of complex cases"); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar....  The reasons for acceptance by bench and bar are apparent.  If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts.").

*et al.*, CA 09-6050 (E.D. La.) (Rec. Doc. No. 2713) served as a basis for the KPT pilot remediation settlement reached this fall.

Recently, it has come to the attention of the PSC that some of the builder-defendants and their insurers in this litigation have been contacting individual plaintiff homeowners directly, in many instances without notice to or the presence or permission of their counsel, and offering them remediation settlements, outside the confines and purview of this MDL Court.  The PSC supports all efforts to remediate plaintiffs' homes; however, many of these settlement offers provide less adequate benefits than those specified by the Court for proper remediation.  Also, the builders are asking for an assignment of plaintiffs' claims in order to collect monies from the manufacturers, without paying any common benefit fees.

In one instance, defendant-builder Meritage Homes Corp. approached homeowners living in Moody River Estates in Fort Myers, Florida, seeking a release and assignment of the plaintiffs' Chinese drywall claims in the MDL in exchange for some form of remediation of the Chinese drywall problems in their homes and temporary relocation expenses.[8]  The Meritage settlement provides far fewer benefits to the plaintiffs than what the Court specified in *Hernandez* constitutes the proper scope of remediation of homes affected by Chinese drywall.[9]  In consideration of these

---

[8]  Meritage's offer includes demolition of *all* drywall, insulation, interior electrical wiring, soft flooring, carpet and carpet padding, smoke and carbon monoxide detectors, kitchen appliances, kitchen and bathroom cabinetry, and interior doors and trim, but only *selected* components of the HVAC system, *selected* interior electric boxes/panels, *selected* plumbing fixtures, and *selected* mirrors and medicine cabinets.  Moreover, Meritage expressly reserves the right, "in its discretion," to retain for storage and later reinstallation any components not listed above, including, but not limited to, "countertops, hard floor surfaces such as wood or tile, sinks, toilets, shower enclosures, bathtubs and stair railing."  Further, this settlement provides for an "air-out" period of 10 days, HEPA vacuuming, but no pressure washing or wipe-down of surfaces with a damp cloth.  A sample letter from Meritage and proposed agreement and release are attached hereto as Exhibit "B."

[9]  *See* Chart comparing and contrasting Meritage remediation program to *Hernandez* Findings of Fact, attached hereto as Exhibit "C."

remediation benefits, temporary relocation expenses, and an "additional warranty" of one year for defects in material and/or workmanship for services performed by Meritage to remediate the home, Meritage requires the homeowners to: (1) agree to binding arbitration for any disagreements related to the settlement; (2) provide a "limited" release of all claims and potential claims against the builder; and (3) assign the homeowners' rights to the builder so that Meritage can pursue the drywall manufacturer.

It is troubling that this company pursued a settlement with the plaintiffs without notice to or the presence or permission of their counsel and outside the purview of this Court and the structure of the MDL.  Moreover, in an attempt to persuade reluctant homeowners to sign on to Meritage's remediation offer, the company made false and disparaging statements about the plaintiffs' attorneys.  Meritage alludes to an alleged campaign by certain plaintiffs' attorneys to instill "fear" in the homeowners and perpetrate an "unfortunate misunderstanding" because these attorneys "are far more concerned with their own interests than yours."[10]   Incredibly, Meritage tells the homeowners that the attorneys:

> simply do not want you to agree to have your home repaired by Meritage because, if you do, they lose the opportunity to collect substantial hourly and/or contingency fees in suing the manufacturer for the cost of such repairs; the same repairs which Meritage is already offering to complete for you right now at no cost and without months or even years of legal delay.[11]

Meritage fails to inform the plaintiffs that they will not be getting the "same repairs" under the Meritage settlement that they would receive under the KPT pilot program or through the MDL, but instead will be receiving fewer and less adequate benefits and will forfeit their rights to litigate

---

[10]  Meritage Letter, Exhibit "B."

[11]  *Id.*

any disputes arising from the settlement.  Meritage also fails to acknowledge that the efforts of the PSC created the opportunity for this settlement to exist in the first place.  By reaching this settlement outside the structure provided by the MDL Court, this defendant attempts to collect monies from the manufacturers and avoid paying any common benefit fee to the attorneys who created these benefits.

At great burden and expense, the court-appointed management committee prepared, filed, translated and served Omni complaints against hundreds of foreign manufacturers under the Hague Convention and other related entities, bringing all interested parties, including insurance carriers and financiers, into the litigation and aggregating them in one forum.  The PSC engaged in vigorous and time-consuming discovery that has required travel to many parts of the United States and to international destinations as far away as Hong Kong, Germany and the United Kingdom.  The court-appointed management committee has participated in motion practice that has included numerous *Daubert* motions and *in limine* motions on germane scientific issues affecting all plaintiffs, assembled a team of experts and has tried several bellwether cases that resulted in detailed findings of fact and conclusions of law, which serve as a basis for other parties seeking to properly remediate the plaintiffs' homes.  The PSC has managed thousands of individual cases in the MDL and coordinated state litigation.  Finally, the PSC is responsible for creating the KPT remediation settlement as a model for all settlements to make plaintiff homeowners whole.

Meritage is seeking an assignment of the plaintiffs' claims as a precursor to litigation against the manufacturers for indemnification, contribution and/or collection on assignment of the costs of remediation and other expenses and damages.  The builder's ability to collect funds from the Chinese drywall manufacturers was made possible solely through the efforts of the PSC in these MDL proceedings.  Unless this Court sequesters all payments made by the manufacturers and/or

8

their insurers to the builders to settle or otherwise resolve Chinese drywall claims, the PSC will not be able to receive compensation for the myriad common benefit services it provided to these builder-defendants.

Other builder-defendants have been using similar tactics to pressure plaintiffs, often without their attorneys, to accept remediation offers and assign their claims to the builder. These defendants also fail to consider the need to pay an appropriate common benefit fee to those who created the opportunity for recovery from the drywall manufacturers. *See*, *e.g.*, sample proposed Standard Pacific settlement with plaintiffs and letters ("By working with us, you may be able to avoid the need to pay for legal fees") (attached hereto as Exhibit "D") and Chart comparing and contrasting the settlement offer to standards set forth by the Court for the proper scope of remediation (attached hereto as Exhibit "E").

Further, some defendants and/or their insurers have offered lump sum cash payments to plaintiffs, without providing for any contribution to the payment of common benefit fees. *E.g.*, LLJ Construction, Inc. release and settlement with Omni I plaintiff Michael Lundy[12] for a lump sum cash payment of $40,000 (counsel has since agreed to place the fee in escrow pending a determination by the Court as to an appropriate common benefit percentage) (attached hereto as Exhibit "F"); alternate version of a Standard Pacific settlement including a $5,000 payment for a release of bodily injury claims (attached hereto as Exhibit "G").

Absent the common benefit bestowed upon the plaintiffs and others through the provision of these Omni class action complaints, few plaintiffs or builders would have paid to perfect service of process under the Hague Convention on the foreign manufacturers. These valuable services

---

[12] *Lundy v. LLJ Construction, et al.*, Case 2:09-cv-07628 (E.D. La.).

performed by the PSC aggregated the "mass" in this mass tort, which has contributed to the initial resolution of certain aspects of this litigation and to the various builder-settlements of MDL plaintiffs' claims occurring outside the purview of this Court.  It would not be equitable for parties in this MDL to receive those benefits without properly compensating the court-appointed committee for their efforts.

Under these circumstances, it is appropriate to order an accounting of all settlements reached in this litigation, to place in escrow all attorneys' fees earned or owing on cash settlements of Chinese drywall claims, and to sequester all payments made by manufacturers and/or their insurers to builder-defendants to settle or otherwise resolve Chinese drywall claims, pending the Court's determination of an appropriate common benefit fee percentage.  In addition, the PSC seeks an Order requiring that all plans, protocols and agreements to remediate plaintiffs' homes be filed of record, including any costs associated therewith.  Finally, the PSC seeks an injunction barring defendants from contacting the plaintiffs directly without notice to and the presence or permission of their attorneys.  This is necessary to stop the tortious interference of builders such as Meritage and Standard Pacific with the proper prosecution of plaintiffs' claims in this MDL and the intentional avoidance of paying a proper common benefit fee to those who created the opportunities for the settlements in the first place.

III.   **ARGUMENT**

    A.   **Equity Demands That the Court Escrow Attorneys' Fees Earned on All Cash Settlements of Chinese Drywall Claims and Sequester All Payments Made by Manufacturers and/or Their Insurers to Builder-Defendants to Settle or Otherwise Resolve Chinese Drywall Claims, for Purposes of Preserving <u>Those Funds for a Common Benefit Fee Award</u>**

American jurisprudence provides, generally, that each party must bear his or her own costs of attorneys' fees.  *E.g.*, *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718-19 (1967) ("attorney's fees are not ordinarily recoverable").  Courts have created a number of exceptions to this rule, including the common benefit and common fund doctrines that apply to situations where a large number of cases are consolidated.  Courts supervising mass disaster litigation consistently intervene "by specially compensating those who work for the collective good" and thereby create a common fund and/or benefit, in order to avoid "a serious free-rider problem" and prevent "unjust enrichment of persons who benefit from a lawsuit without shouldering its costs."  *See, e.g.*, *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992); *In re Diet Drugs*, 582 F.3d 524, 546 (3rd Cir. 2009) (approving district court's apportionment of settlement funds among class counsel in MDL pursuant to common benefit doctrine); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1018-19 (5th Cir. 1977) (holding that district court properly exercised its authority to award fees to MDL lead counsel committee paid by other plaintiffs' counsel pursuant to common benefit doctrine); *Smiley v. Sincoff*, 958 F.2d 498, 501 (2nd Cir. 1992) (holding that district court did not abuse its discretion in establishing fee structure whereby non-committee member attorneys placed percentage of their fees in escrow for pro rata distribution among committee members).

The purpose of this equitable common fund doctrine is to allow "a person preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including counsel fees, from the fund itself, or alternatively, from the other beneficiaries." *Id*.; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Sprague v. Ticonic National Bank*, 307 U.S. 161, 166 (1939); *Trustees v. Greenough*, 105 U.S. 527, 534-36 (1881); *Strong v. Bell South Telecommunications, Inc.*, 137 F.3d 844, 850 (5th Cir. 1998); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 531 (E.D. Pa. 1990). In recognition of this purpose, the beneficiaries of the fund need not be members of a class and the benefit need not have been conferred in the context of a class action because the common fund principle is a long-standing principle of equity which predates modern class actions. *See Trustees v. Greenough*; *Sprague*, 307 U.S. at 166 ("That the party ... neither purported to sue for a class nor formally established by litigation a fund available to the class, does not seem to be a differentiating factor so far as it affects the source of the recognized power of equity to grant reimbursements.").

As the court stated in *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977):

> The common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees. The doctrine is "employed to realize the broadly defined purpose of recapturing unjust enrichment." [John P. Dawson, *Lawyers and Involuntary Clients: Attorney Fees From Funds*, 87 HARV.L.REV. 1597, 1597 (June, 1974)]. That is, the doctrine is designed to spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and the "stranger" beneficiaries do not receive their benefits at no cost to themselves.

*Id.* at 769. *See also Florida Everglades*, 549 F.2d at 1019 (in awarding plaintiffs' attorneys to pay

common benefit fee to managing committee, Fifth Circuit acknowledged that "[i]t would [be] unfeasible and irrational, and demeaning to the authority of the [court] appointing [the management committee], to remit the Committee to appearing all over the country in each of the numerous probate and like courts under whose authority administration of settlement monies would be handled, to present prayers for compensation."); *City of Klawock v. Gustafson*, 585 F.2d 428, 431 (9th Cir. 1978) (holding that where city's action to acquire title to vacant lots resulted in a policy change benefitting native townsites throughout Alaska, city's attorneys had equitable claim to a reasonable fee from the other unintended beneficiaries); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 525 (D. Nev. 1987) (awarding additional attorneys' fees where management committee produced for plaintiffs "vast additional funds above the agreed global settlement figure").

Circumstances justifying a common benefit fee vary greatly and can emerge "as a byproduct" of litigation or even "almost by accident." *See* Dawson, 87 HARV.L.REV. at 1616, *citing State Mineral Board v. Abadie*, 164 So. 2d 159, 168, 170 (La. Ct. App. 1964) (awarding fees to attorney whose sole efforts created legislation that benefitted numerous other co-owners of subject property). In *Appeal of Harris*, 323 Pa. 124, 186 A. 92 (1936), for example, the court recognized an equitable lien in favor of a property owner's attorney with respect to compensation for services that produced proceeds from the owner's condemned property, in which a mortgagee bank had a prior secured lien interest. Even though the proceeds from the condemnation were insufficient to satisfy the mortgage, the court recognized that "[i]t would be manifestly unjust to permit the mortgagee to reap all the benefits of the attorney's endeavors and to 'get out from under' even the smallest share of the burden which produced the benefits." Accordingly, the court chose to "impose on the fund the payment of the reasonable costs of its creation." *Id.*, 323 Pa. at 135, 186 A. at 97. *Cf. United Services Auto.*

*Ass'n v. Hills*, 172 Neb. 128, 133, 109 N.W.2d 174, 177 (1961) (awarding counsel fees to insured's attorney out of subrogation proceeds recovered by the insured's insurer as part of a settlement with the tortfeasor's insurer and holding that "where the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees.").

As one commentator points out, "[t]here can be subgroups of beneficiaries within a larger group and minifunds within [common benefit] funds; it is not necessary that the interested group of beneficiaries be lined up in an unbroken phalanx." *Id*. at 1615, *citing*, *Nolte v. Hudson Navigation Co.*, 47 F.2d 166 (2nd Cir. 1931); *Leeds & Lippincott Co. v. Nevius*, 30 N.J. 281, 153 A.2d 45 (1959); *Cintas v. American Car & Foundry Co.*, 133 N.J. Eq. 301, 32 A.2d 90 (1943). Nor is it necessary that the lawsuit "actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses." *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970).

The Fifth Circuit has recognized that:

> the Court's "reach or 'control,' though vital, can take many forms. The control can be remote or indirect, it can work through intermediaries who are obedient to instructions or who in the last resort can be coerced. Central, of course, is authority to adjudicate the rights and duties of interested parties. The tests of control must be expansive because of the variety and complexity of the tasks involved. For the declared object is to redistribute the costs of litigation in fair proportion to the benefits to strangers that it produces. What is important is the sufficiency of the means, not the form they take.

*Florida Everglades*, 549 F.2d at 1018 n.16, *quoting*, Dawson, 87 HARV.L.REV. at 1618.

As set forth in detail in the PSC's common benefit motion, in these consolidated MDL proceedings the court-appointed plaintiffs' management committee is entitled to receive

14

reimbursement for expenses incurred and compensation for services provided for the benefit of all plaintiffs with Chinese drywall claims.  *See Florida Everglades*, 549 F.2d at 1016, 1019-21; *Nineteen Appeals*, 982 F.2d at 606-07; *Smiley*, 958 F.2d at 501; *In re Vioxx Prod. Liab. Litig.*, MDL No. 1657, PTO No. 19 (E.D. La. Aug. 4, 2005) (attached hereto as Exhibit "H"); *In re Propulsid Prod. Liab. Litig.*, MDL No. 1355, PTO No. 16 (E.D. La. Dec. 26, 2001) (attached hereto as Exhibit "I"); *Turner v. Murphy Oil*, 422 F. Supp. 2d 676, 683 (E.D. La. 2006); *In re Diet Drugs Prod. Liab. Litig.*, 1999 WL 124414 (E.D. Pa. Feb. 10, 1999); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 1996 WL 900349 (E.D. Pa. June 17, 1996); *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1296, 1317 (E.D.N.Y. 1985), *aff'd in part, rev'd in part*, 818 F.2d 226 (2nd Cir. 1987).  The same principles justifying a common benefit fee under those circumstances warrant a similar fee for the benefits created, as it turns out, for certain builder-defendants that receive an assignment of plaintiffs' claims and thereafter recover from the manufacturers for their losses.

In order to preserve the right of common benefit attorneys to receive a fee and reimbursement of expenses from the proceeds of the litigation in which they have diligently worked on behalf of plaintiffs and also to the unintended benefit of other parties, courts have consistently ruled that it is appropriate to direct that all or part of the counsel fees which may become payable in each action which was the subject of coordinated or consolidated proceedings be deposited in an escrow account for later allocation by the Court in accordance with appropriate legal standards.  *See id.*; *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 300 (1st Cir. 1995); *Smiley*, 958 F.2d at 499; *In re Silicone Gel Breast Implant Prod. Liab. Litig.*, Pretrial Order Nos. 13 & 23 (N.D. Ala. July 23, 1993 and July 28, 1995).

Accordingly, this Court has the inherent and equitable authority to secure the fees earned on

the resolution of cases on the Court's docket and within the Court's jurisdiction by parties to the litigation, even if the settlement of those cases is reached outside the purview of the Court.  *See Mills*, 396 U.S. at 392, *quoting*, *Sprague*, 307 U.S. at 167 (although beneficiaries "were not parties before the court, they could be forced to contribute to the costs of the suit by an order reimbursing the plaintiff from the defendant's assets out of which their recoveries later would have to come."); *Florida Everglades*, 549 F.2d at 1018 (affirming order forbidding "defendants from paying proceeds of any settlement without court approval, which would be forthcoming only when it was shown that the recipient had paid lead counsel."); *cf. Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell v. Guardianship of Runco*, 741 So.2d 1219, 1220 (Fla. 4th DCA 1999) ("While we do not discourage litigants from settling their controversies out of court, 'any such settlement without the knowledge of or notice to counsel, and the payment of their fees is a fraud on them whether there was an intent to do so or not.'").

Due to the myriad of settlements occurring with respect to Chinese drywall claims, the Court should properly escrow all attorneys' fees earned or owing on cash settlements reached with plaintiffs in the MDL and the Court should order sequestration of all payments made by manufacturers and/or their insurers to settle or otherwise resolve Chinese drywall claims, even if those claims have been assigned to other parties like builder-defendants.

**B.     The Court Should Enjoin Defendants from Contacting the Plaintiffs Directly Without Notice to and the Presence or Permission of Their Counsel**

In a number of cases, builder-defendants have been contacting the plaintiffs directly with offers of settlement (*e.g.*, Exhibit "B"), but without notice to or the presence or permission of their counsel and without the knowledge of the PSC.  In some cases, Meritage, *e.g.*, the builder-defendant

not only fails to advise plaintiffs of their right to consult with an attorney, but the builder discourages plaintiffs from following the attorney's advice.  In order to protect the integrity of this process and the rights of Omni class plaintiffs, the PSC is seeking an injunction barring these defendants from interfering with our representation of these litigants.

The Fifth Circuit has recognized "nearly unanimous agreement on the fundamental princip[le] that a complex case must be managed by a judge with a firm hand." *Florida Everglades*, 549 F.2d at 1013.  That managerial power "is especially strong and flexible in matters of consolidation." *Id.*  Mass tort multidistrict litigation is analogous to a class action and often referred to as a quasi class, and as such "the primary goal of the court is to 'ensure that similarly situated individuals receive equal fairness protections regardless of how the courts aggregated the litigation.'" *See In re Zyprexa Prod. Liab. Litig.*, 433 F. Supp. 2d 268, 272 (E.D.N.Y. 2006), *quoting*, L. Elizabeth Chamblee, *Unsettling Efficiency: When Non-Class Aggregation of Mass Torts Creates Second-Class Settlements*, 65 LA.L.REV. 157, 241 (2004) (arguing that "[d]ue to the similarities between class action settlements and settlements after non-class aggregation, the multidistricting process should also permit judicial approval of settlements.").

In accordance with multidistrict jurisprudence, this Court tried several bellwether cases intended to serve as models for the benefit of all parties.[13]  After considering the testimony of experts in the fields of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, and failure analysis with regard to Chinese drywall, this Court made numerous findings of fact regarding the appropriate scope of remediation of plaintiffs' homes.  *E.g.*, *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2010 WL 1445684 (E.D. La. Apr. 8, 2010).  The Court's

---

[13] *See* fn. 6, *supra*.

findings then served as a basis for the KPT pilot remediation settlement.

In contrast to the Court's rulings on remediation, various builder-defendants have offered to repair plaintiffs' homes, but with far less adequate standards than those put in place by this Court. *See* Charts, Exhibits "C" & "E" hereto.  Moreover, by approaching plaintiffs directly, outside the presence of counsel and outside the purview of this MDL Court, and by maligning plaintiffs' counsel and making false statements about "substantial hourly and/or contingency fees" in order to intimidate these litigants into accepting their settlement, the defendants have abused the system.  In fact, their "actions [are] obstruct[ing] the district court in the discharge of its duty to 'protect both the absent class and the integrity of the judicial process by monitoring the actions before it.'" *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985), *quoting*, *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 331 (1980); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) ("district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."); *Turner v. Murphy Oil USA, Inc.*, 2006 WL 286009 (E.D. La. Feb. 6, 2006); Fed.R.Civ.P. 23(d)(1)(B)(i) ("In conducting an action under this rule, the court may issue orders that:  ... require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of ... any step in the action"); MANUAL FOR COMPLEX LITIGATION FOURTH, §21.12 ("Defendants ... may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3).").

Under these circumstances, it is appropriate to enjoin defendants from communicating directly with plaintiffs without permission from their counsel.  It is also appropriate to require

18

defendants to file with the Court all plans and agreements to remediate plaintiffs' homes. Without this intervention and oversight from the Court, there is no way to ensure that the rights of plaintiffs are protected. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, Minute Entry (E.D. La. Sept. 24, 2009) (Rec. Doc. No. 278) ("The Court expects the parties to advise property owners that they have the right to consult with counsel. Henceforth, property owners should be advised of the multi-district litigation and website address."); *Culliton v. Taylor Morrison Svcs., Inc.*, Case No. 8:09-cv-598 (M.D. Fla. May 12, 2009), Transcript of Proceedings, (Rec. Doc. No. 249-1 at 78-79) (requiring Chinese drywall settlement proposal to include suggestion that plaintiff "consult a lawyer" before signing any agreement, because settlement "is a significant matter that involves legal rights"); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985) ("The damage from misstatements could well be irreparable."); *Robertson v. Cartinhour*, 691 F.Supp.2d 65, 72 (D.D.C. 2010) (enjoining litigant from contacting his opponent without prior written agreement or the presence of his counsel); *see also* Rule 4.2 of the Model Rules of Professional Conduct ("a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer."); Fed.R.Civ.P. 23(d).

By requiring that all plans to remediate plaintiffs' homes be filed of record and by issuing an injunction against the interference by defendants and their counsel in the prosecution of plaintiffs' claims and thereby limiting defendants' communications with plaintiffs so that plaintiffs' counsel can participate in settlement talks, the Court can preserve the integrity of these proceedings.

## IV.    CONCLUSION

For the foregoing reasons, the PSC requests that its Motion be granted and the proposed

Order entered by the Court.

Respectfully submitted,

Dated: December 16, 2010

/s/ Russ M. Herman
Russ M. Herman, Esquire (LA Bar No. 6819)
Leonard A. Davis, Esquire (LA Bar No. 14190)
Stephen J. Herman, Esquire (LA Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
  MATTHEWS, MARTINEZ, GONZALEZ,
  KALBAC & KANE
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
  ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
  & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
SEEGER WEISS, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

### OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.WSuite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
LEWIS & ROBERTS
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
ALTERS, BOLDT, BROWN, RASH & CULMO,
P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard J. Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing The Plaintiffs' Steering Committee's Motion for an Order Requiring an Accounting and Other Relief has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 16th day of December, 2010.

/s/  Leonard A. Davis
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
Plaintiffs' Liaison Counsel
MDL 2047