# EXHIBIT G

Property Address: _____   Owner: _____

## SETTLEMENT AND RELEASE AGREEMENT

This SETTLEMENT AND RELEASE AGREEMENT ("**Agreement**") is entered between Standard Pacific of South Florida, a Florida general partnership ("**SP**") and _____ _____ ("**Homeowner(s)**") on the following date: _____/_____/_____.

1.    **Property.** Homeowner(s) own the residence located at _____ _____ (the "**Property**").

2.    **Chinese Drywall Claim.** Homeowner(s) have notified SP that they have claims for damages resulting from the installation of allegedly defective drywall at the Property (the "**Chinese Drywall Claims**"). These claims include, but are not limited to, claims for the costs associated with removing, inspecting and replacing damaged components of the Property (including, without limitation, corroded copper and other metal items beneath drywall), impacts from offensive odors, inconvenience and loss of use of the Property, and personal and/or bodily injuries

3.    **Investigation and Repair.** SP will investigate and repair damage arising out of or related to the Chinese Drywall Claims pursuant to the **Inspection and Repair Protocol** attached as Exhibit 1. Homeowner(s) represent and warrant that they have carefully read the attached Inspection and Repair Protocol and agree and accept that SP will repair the Property as described in the protocol.

4.    **Expense Reimbursement Protocol.** SP will reimburse Homeowner(s) as described in the **Expense Reimbursement Protocol** attached as Exhibit 2. Homeowner(s) represent and warrant that they have carefully read the attached Expense Reimbursement Protocol and agree to accept the amounts paid to them by SP in accordance with the protocol in lieu of any and all actual costs and expenses incurred by the Homeowner(s) associated with SP's repair of the Property.

5.    **Settlement Payment.** Homeowner(s) shall receive the payment of the sum of Five Thousand Dollars ($5,000) in consideration of the release and other terms and conditions described herein.

6.    **Confidentiality.** This Agreement is confidential. The parties are only permitted to share it with legal counsel, agents and/or consultants on the condition that these attorneys, agents or consultants first agree not to share it with anyone else. Besides this, the Homeowner(s) will not show, give a copy to, or discuss the contents of, this Agreement with anyone else. Notwithstanding this requirement regarding confidentiality, Homeowner(s) are permitted and encouraged to share this agreement with any actual or prospective purchaser or occupant of the Property.

7.    **No Admission/Other Responsible Parties.** SP believes that others such as the manufacturers, importers and installers of drywall at the Property should be responsible for the Chinese Drywall Claims. These other parties have not yet accepted full responsibility. Despite this, SP is agreeing to make repairs (as described in Exhibit 1) and provide expense reimbursements (as described in Exhibit 2). The parties agree that by SP entering this Agreement and undertaking these obligations SP is not admitting liability. Homeowner(s) agree that they will not use this Agreement or the fact SP is making repairs and providing reimbursements to attempt to prove liability against SP.

8.    **Release.** Homeowner(s) agree to fully release SP for all Chinese Drywall Claims, including bodily and personal injury claims. Specifically, Homeowner(s), on behalf of themselves, their heirs, assigns, representatives, agents, family members, beneficiaries, lien holders, creditors, executors, administrators, insurers, attorneys, privies, and financial custodians agree to fully release, discharge and acquit SP, and its predecessors, successors, affiliated companies, corporations, subsidiaries, partnerships, business entities, parent companies, representatives, successors, insurers, attorneys, privies, assigns, past, present, and future officers, directors, shareholders, employees, partners, trustees, insurers, trade partners, subcontractors, installers, and attorneys from any and all claims, demands, actions, damages, claims of defect, both patent and latent, expenses, costs, liabilities and/or other rights, known and unknown, which have accrued or may accrue to Homeowner(s)' benefit on account of or in any way growing out of the Chinese Drywall Claims.

1

**Homeowner(s) acknowledge and agree that this Agreement fully and finally settles all differences and disputes, known and unknown, that have arisen or could arise between SP and Homeowner(s) from the Chinese Drywall Claims, including claims for bodily and/or personal injury.**

9.      **Subrogation and Liens.**  Homeowner(s) represent that Homeowner(s) are not eligible for Medicare benefits and has not applied for Medicare benefits; are not 65 years of age or older, have not received Social Security Disability Income benefits for 24 months or more, and are not suffering from end-stage renal disease.  Homeowner(s) represent that no other person or entity, including, without limitation, attorneys and/or health care providers, heirs, financial custodians, and/or insurance companies, the Federal and/or state government, Medicare, Medicaid, Social Security, or any other related or affiliated person or entity of any type, have a claim or lien against, or right or interest in, the proceeds of the Settlement Payment.  To the extent any subrogation rights, charging liens, claims, liens, rights or interests exist, Homeowner(s) agree to be fully responsible for same.

10.      **Dismissal of Pending Litigation.**  Homeowner(s) will cause their attorneys to dismiss with prejudice all legal claims brought on Homeowner(s) behalf against any SP Released Parties.

11.      **Assignment of Claims.**  Homeowner(s) represent and warrant that they have not assigned any claim arising from or related to the subject of this Agreement to any person or entity other than SP.  Homeowner(s) hereby assign to SP any and all claims assignable under law arising from, or related to, the Chinese Drywall Claims, except (i) any bodily injury claims, (ii) claims for Homeowner(s)' attorneys fees by Homeowner(s)' counsel, (iii) claims for consequential damages such as loss of use/enjoyment, inconvenience and the like, and (iv) claims for items that SP does not inspect and repair or replace.  This assignment includes, for example, a right for SP to recover for itself any claim Homeowner(s) may have had to recover from third parties such as the suppliers, installers and manufacturers, or any insurers or government programs providing assistance for the repair of Chinese drywall, but this assignment does not include claims for replacement or repair of those items not repaired and/or not replaced by SP, such as the stove/oven, televisions, computers, and washers/dryers to the extent any such claims exist, or Homeowner(s)' own attorneys' fees and costs and for Homeowner(s)' individual consequential damages.  Homeowner(s) agree to cooperate with and assist SP in pursuing its claims.

12.      **Entire Agreement.**  This Agreement, along with the Exhibits hereto, represents the entire agreement between the Homeowner(s) and SP with regard to its subject matter, and no modification of any term shall be effective unless it is in writing and signed by all parties.  Homeowner(s) are not relying on any other documents, oral or written statements, representations, understandings or promises by SP or anyone else other than what is contained in this Agreement. However, nothing in this Agreement waives, releases, or discharges any right or obligation contained in the real estate sales contract or applicable warranty provided in connection with your purchase of the Property.

The parties have entered this Agreement voluntarily, of their own free will, without undue influence, or duress, and with the opportunity to consult with counsel of their choice.

Standard Pacific of South Florida, a Florida general partnership

_____ Date:_____       By:  Standard Pacific of South Florida GP, Inc.
Homeowner(s)                                     Its:  General Partner

_____ Date:_____       By: _____
Homeowner(s)                                     Name: _____
                                                 Its: _____

2

## INSPECTION AND REPAIR PROTOCOL
### (Exhibit 1 to Settlement and Release Agreement)

This Inspection and Repair Protocol describes the process that will be followed to inspect and repair your Property. All capitalized terms used in this protocol that are not defined in this protocol have the meaning assigned to them in the Settlement Agreement.

1.     **Removal of Personal Property.**  Homeowner(s) will remove or have someone else remove all personal items (including all furniture, clothing, equipment and any other items that have not been permanently built into the home) from the Property on or before _____ ("**Personal Property Removal Date**").

2.     **Pre-Investigation Inspection and Delivery of House-Keys.**  After the Personal Property Removal Date, Homeowner(s) will meet with **Standard Pacific's** representatives at the Property. Standard Pacific or its agents will inspect the Property with the Homeowner(s) to document installed products (cabinets, countertops, crown molding, chair rails, built-ins, etc.) and the condition (cracked tiles, damaged countertops/cabinets, etc.) of the Property ("**Pre-Investigation Inspection**"). At the Pre-Investigation Inspection, Homeowner(s) will provide Standard Pacific with keys to the residence. Standard Pacific will not start work until the Pre-Investigation Inspection is completed and Standard Pacific has received the keys.

3.     **Access to Property; Authorization to Investigate and Repair.**  Homeowner(s) hereby authorize Standard Pacific and its agents to enter the Property at any time from the date of the Pre-Investigation Inspection until the Return Date, when Homeowner(s) receive their keys back as provided below, in Paragraph 11.

4.     **Mortgage and Utility Payments.**  Homeowner(s) will pay the mortgage and utility bills during the investigation and repair process, and they authorize Standard Pacific and its agents to use all utilities such as water, gas and electricity, free of charge.

5.     **Permits; Notice of Commencement.**  Homeowner(s) acknowledge(s) that the local municipality in which the Property is located may require various permit applications during the inspection and repair process and that a notice of commencement of construction (or other statutory or code based document) will be recorded against the Property. Homeowner(s) will sign any such permit applications, notice of commencement of construction, or other documents within two (2) days of Standard Pacific's request.

6.     **Investigation.**  Standard Pacific will investigate damage arising out of the Chinese Drywall Claims. This investigation will include the removal of installed products and of all drywall (except for the board behind bathroom tile which will be inspected to confirm that it was not manufactured in China but will not be removed unless it is confirmed to be Chinese drywall) so that Standard Pacific can access and investigate components of the Property installed underneath the products and drywall. Standard Pacific will not remove tile, stone or hardwood flooring (but will install protection so that this flooring does not get damaged during the investigation and repair process).

7.     **Repair.**  Standard Pacific will repair damage arising out of the Chinese Drywall Claims (including the replacement of electrical wiring, insulation, and certain interior components of the air handlers in HVAC units), HEPA vacuum the home, install new drywall (except for the board behind bathroom tile which will not be replaced unless it is confirmed to be Chinese drywall), and re-install products removed during the inspection process.


__/__ Homeowner(s)' Initials

8.      **Replacement Products.** Certain items in your home will need to be replaced with new materials because the originals are damaged or impractical to re-install. In these cases, Standard Pacific will use reasonable efforts to select and install replacement products that reasonably match the originals in terms of quality, color and type. Due to circumstances such as fading, changes in availability and variations between batches of materials, exact matches cannot be guaranteed. Homeowner(s) agree(s) to accept substantially similar products and/or materials that reasonably match the existing or original materials, even if there are slight variations. Homeowner(s) will be able to provide input concerning the selection of replacement items such as carpeting and paint at the Pre-Investigation Inspection. Where practical, Standard Pacific will endeavor to obtain Homeowner(s) input regarding other items that need to be replaced. However, except for items agreed to in writing at the Pre-Investigation Inspection, Homeowner(s) agree and accept that Standard Pacific can use reasonable efforts to select replacement items, according to its own discretion. The replacement items that Standard Pacific may select without Homeowner(s) input may include, for example, such things as the refrigerator, microwave, tile, stone, wood, granite, toilets, fixtures, doors, railings and wainscoting.

9.      **Pre-Drywall Installation Inspection and Construction Site Release of Liability.** Following completion of the investigation and the repair of items located within walls, but prior to the installation of new drywall, Standard Pacific will notify Homeowner(s) (via email to the following email address: _____) of their opportunity to view and inspect repairs made to items within the walls. Homeowner(s) will have two days after the email is sent to inspect the Property before Standard Pacific begins installing new drywall (the **"Pre-Drywall Inspection"**). Homeowner(s) acknowledge that visiting a construction site such as the Property in the middle of the inspection and repair process is a dangerous activity. Homeowner(s) may request photographs of the Property in lieu of a personal visit. Homeowner(s) hereby release Standard Pacific and its agents, and waive any claim against any of them, arising from or relating to any visit by any Homeowner(s) to a property in any stage of demolition or repair related to the inspection and repair process for Chinese drywall.

10.     **Substantial Completion Inspection.** Promptly following the date scheduled for the Pre-Drywall Inspection (even if Homeowner(s) chooses not to attend the inspection), Standard Pacific will install new drywall, re-install previously removed products or similar replacement products, and repaint the new drywall in similar colors to those documented in the initial inspection (but will not repaint with any custom paintings or murals). Once this process is complete, Standard Pacific will provide Homeowner(s) with two days notice (via email to the following email address: _____) of their opportunity to view and inspect these final repairs (the **"Substantial Completion Inspection"**).

11.     **Return of Property to Homeowner(s).** Promptly following the date scheduled for the Substantial Completion Inspection (even if Homeowner(s) chooses not to attend the inspection), the completion of any follow-up items agreed to between Standard Pacific and the Homeowner(s), and any final sign-off required by the local municipality, Standard Pacific will return the keys to the Property to the Homeowner(s) and Homeowner(s) shall be free to move back in to the Property (the **"Return Date"**).

12.     **One Year Workmanship Warranty.** Standard Pacific may hire a general contractor to conduct the inspection and repair, and such general contractor will agree to provide a one-year limited warranty on the items repaired in the Property (the **"Warranty"**). If Standard Pacific hires a general contractor, a copy of the Warranty is or will be attached to this Exhibit 1. Homeowner(s) acknowledge and agree that this Warranty applies only to items repaired by such general contractor and <u>does not</u> apply to components of the home that are not repaired by such general contractor. Homeowner(s) agree to accept this Warranty in lieu of any warranty provided by Standard Pacific for such items. Standard Pacific disclaims any other warranty for these items, actual or implied.


__/__ Homeowner(s)' Initials

**EXPENSE REIMBURSEMENT PROTOCOL**
**(Exhibit 2 to Settlement and Release Agreement)**

This Expense Reimbursement protocol describes the process that will be followed to compensate you for certain costs associated with the inspection and repair of your Property. All capitalized terms used in this protocol that are not defined in this protocol have the meaning assigned to them in the Settlement and Release Agreement or the Inspection and Repair Protocol.

1. **Moving Expense Payment.**

    a. *Amount.* Homeowner(s) shall receive a total of $3,400 (the "**Moving Expense Payment**") as compensation in full for the expense associated with (i) Homeowner(s) removal of all personal items from the Property prior to the Personal Property Removal Date, (ii) the storage of such personal items during the period between the Personal Property Removal Date and the Return Date, and (ii) the return of such items to the Property following the Return Date.

    b. *Timing of Payment.* One-half of the Moving Expense Payment ($1,700) shall be paid to Homeowner(s) promptly following Homeowner(s) execution of this Settlement and Release Agreement and one-half ($1,700) shall be paid to Homeowner(s) on the Return Date.

2. **Relocation Provisions (Homeowner(s) and Standard Pacific to Check Option A or Option B)**

    ___ **Option A—Relocation Payment.** Standard Pacific anticipates that completion of the Inspection and Repair Protocol will take approximately twelve (12) weeks.

    i. *Amount.* Homeowner(s) shall receive a total of $7,600 (the "**Relocation Payment**" as compensation in full for all expenses associated with Homeowner(s)' inability to utilize the Property between the Personal Property Removal Date and Return Date.

    ii. *Timing of Payment.* $4,000 shall be paid to Homeowner(s) promptly following Homeowner(s) execution of this Settlement and Release Agreement and $3,600 shall be paid to Homeowner(s) promptly following completion of the Pre-Investigation Inspection.

    iii. *Extra Payment for Timely Removal of Personal Property/ Moving Expense Payments Reduced for Delay.* Being able to start each home on schedule is critical to Standard Pacific's goal of limiting the impact on all homeowners and making efficient repairs. Therefore, if Homeowner(s)' personal items (including all furniture, clothing, equipment and any other items that have not been permanently built into the home) are **completely** removed from the Property on or before the Personal Property Removal Date, then Homeowner(s) shall receive an extra payment of $300 promptly following completion of the Pre-Investigation Inspection. Homeowner(s)' $3,400 Moving Expense Payment will be reduced $50 for each day of delay in moving out their personal items.

    iv. *Per Diem Payment.* If Homeowner(s) have timely complied with all of the obligations described in the Inspection and Repair Protocol (i.e., removal of all personal items from the Property no later than the Personal Property Removal Date; provision of keys to the Property to Standard Pacific on the date of the Pre-Investigation Inspection; timely execution of all permit applications, the notice of commencement of construction and other related documents, etc.) and the Return Date is more than 12 weeks from the Personal Property Removal Date, then Homeowner(s) shall be entitled to receive a Per Diem Payment of $85 per day ("**Per Diem Payment**") for each day that the Return Date exceeds the date that is 12 weeks from the Personal Property Removal Date. Homeowner(s) shall be paid Per Diem Payments weekly.

__/__ Homeowner(s)' Initials

v. *Acknowledgment.* Homeowner(s) acknowledge and agree that if they fail to timely comply with all of the obligations described in the Inspection and Repair Protocol then they shall not be entitled to Per Diem Payments and Standard Pacific shall have no liability to Homeowner(s) if Standard Pacific fails to cause the Return Date to occur within 12 weeks of the Personal Property Removal Date.

____    **Option B—Standard Pacific Arranged Apartment Housing**

i. *Alternative Living.* Standard Pacific will pay for a 2 bedroom apartment at a nearby community that it has identified, and that Homeowners are free to visit in advance of their decision. Standard Pacific will pay for the rent, electric, water, sewer, trash, basic cable and internet. If the apartment complex provides a security system, Homeowner(s) may elect to utilize it, but all costs of any phone or security system requirements shall be at Homeowner(s)' expense.

ii. *Extra Payment for Timely Removal of Personal Property/ Moving Expense Payments Reduced for Delay.* Being able to start each home on schedule is critical to Standard Pacific's goal of limiting the impact on all homeowners and making efficient repairs. Therefore, if Homeowner(s)' personal items (including all furniture, clothing, equipment and any other items that have not been permanently built into the home) are **completely** removed from the Property on or before the Personal Property Removal Date, then Homeowner(s) shall receive an extra payment of $300 promptly following completion of the Pre-Investigation Inspection. Homeowner(s)' $3,400 Moving Expense Payment will be reduced $50 for each day of delay in moving out their personal items.

iii. *Deposit.* A rental deposit ("Deposit") is required by the apartment complex. Standard Pacific will pay the Deposit to the apartment complex. If the apartment complex refunds the full amount of the Deposit due to the clean and tidy condition of the apartment at the end of the rental term, and if the Homeowner(s) vacate on or before the Rental Termination Date (as defined below), then Homeowner(s) will be paid the Deposit. In the event that the amount of the Deposit is not sufficient to pay for any cleaning or repair required after Homeowner(s) vacate the apartment, Homeowner(s) shall be liable for and hereby agree to pay all such amounts in excess of the Deposit.

iv. *Rental Term.* Standard Pacific will notify Homeowner(s) of the commencement date for the rental term before the Personal Property Removal Date. The rental term will end two days after the Substantial Completion Inspection described in Paragraph 10 of the Inspection and Repair Protocol. Standard Pacific will send an email to Homeowners that gives at least two days' notice of the date when their house will be completed and ready for inspection. Homeowner(s) agree to vacate no later than this date ("**Rental Termination Date**"). If Homeowner(s) remain longer, they will pay the cost for rent and all other expenses and fees incurred thereafter.

v. *Apartment Application, Rules and Availability.* The apartment management requires all tenants to satisfactorily complete a standard application, which Homeowner(s) agree to complete. They also promulgate rules (including but not limited to pet acceptability and criminal background verifications), which Homeowner(s) must agree to accept and follow. Although Standard Pacific has agreed to pay for the Deposit, rent and other costs, if the apartment management declines the Homeowner(s) application, or if no apartments are available, or if Homeowner(s) are forced by the management to vacate, Homeowner(s) will proceed according to Option A, above, by securing alternate housing on their own. To the extent less than twelve week's time is required to complete their home, Homeowner(s) shall only be entitled to the Per Diem Payment until the Return Date.

__/__ Homeowner(s)' Initials