## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE MANUFACTURED | * | |
| DRYWALL PRODUCTS LIABILITY | * | MDL No. 2047 |
| LITIGATION | * | |
| | * | |
| | * | SECTON "L" |
| THIS DOCUMENT RELATES TO: | * | |
| | * | |
| Kenneth and Barbara Wiltz, et al. | * | JUDGE FALLON |
| vs. | * | |
| Beijing New Building | * | |
| Materials Public Limited Co., et al. | * | MAG. JUDGE WILKINSON |
| | * | |
| CASE NO.: 2:10-CV-00361-EEF-JCW | * | |

**************************************

### MEMORNADUM IN SUPPORT OF
### BASS HOMES, INC.'S RULE 12(B) MOTION TO DISMISS OR,
### ALTERNATIVELY, TO STAY PENDING ARBITRATION

Defendant Bass Homes, Inc. ("**Bass**"), files this Memorandum in Support of its Rule 12(b) Motion to Dismiss the claims brought against it in the *Wiltz* Plaintiffs' Omnibus Class Action Complaint (II) ("**Omni II**") or, alternatively, to stay this litigation pending arbitration. Bass is named in Omni II by Braxton and Kerrie Collins, Jason and Cassie Herrington, and Greg and Sherry Wiggins (collectively, the "**Plaintiffs**").  The Plaintiffs are owners of homes built by Bass in Mississippi (Collins; Herrington) and Alabama (Wiggins).

Bass is a family-owned and operated general contractor of single-family homes.  Through decades of hard work, Bass has built a reputation for building quality homes and providing exceptional service to its customers.  Bass has never manufactured, imported, distributed, or marketed drywall.  Bass purchased the drywall from suppliers and hired sub-contractors to install the drywall in the homes made subject of this case.  Bass had absolutely no knowledge of any drywall defects.  The drywall manufacturers, importers, suppliers, and installers knew or should

1

have known about any defects that did exist.  In short, Bass does not belong in Plaintiffs' "catch all" complaint.  Alternatively, this action against Bass should be stayed pending arbitration pursuant to the Plaintiffs' respective contracts with Bass, which each require arbitration of all disputes resulting from Bass' construction of the Plaintiffs' homes.

## Table of Contents

I.      SUMMARY OF ARGUMENT....................................................................................3

II.     BACKGROUND ....................................................................................................4

III.    CHOICE OF LAW ANALYSIS...............................................................................6

IV.     THE PLAINTIFFS' CLAIMS AGAINST BASS SHOULD BE DISMISSED ............7

   A.   Plaintiffs waive all claims related to building materials in their Building Agreements
        and Completion Certificates with Bass; Plaintiffs also contractually waive
        their warranty claims (Counts IV and VI ). ............................................................7

   B.   Plaintiffs fail to state a claim for negligence (Counts I and XII). .....................11

   C.   Plaintiffs do not state a claim for negligence per se (Count II).........................13

   D.   Plaintiffs' strict liability claim (Count III) fails under Alabama law. ...............14

   E.   Plaintiffs' tort claims (Counts I, II, III, XI, XII, XIII, and XV) are barred
        in whole or in part by the Economic Loss Rule. ...............................................16

   F.   Plaintiffs do not explain how Bass breached its contract; their claim for
        breach of contract (Count VII) must be dismissed............................................16

   G.   Plaintiffs' unjust enrichment claim (Count XIII) fails because Plaintiffs
        do not explain how Bass' conduct rises to the requisite level of fraud. ...........17

   H.   Plaintiffs' claim against Bass for private nuisance (Count XI) should be dismissed
        because Bass lacks the requisite possession over the allegedly-nuisance property..........18

   I.   In Count XIV, Plaintiffs fail to plead specific facts concerning Bass'
        allegedly-deceptive acts..................................................................................19

   J.   Plaintiffs are entitled to neither injunctive relief nor medical monitoring (Count XV)....20

V.      ALTERNATIVELY, THE CLAIMS AGAINST BASS SHOULD BE STAYED
        PENDING ARBITRATION. .................................................................................22

VI.     CONCLUSION ....................................................................................................23

## I.   SUMMARY OF ARGUMENT

Plaintiffs' overbroad Complaint fails to state a cause of action.  This Court should dismiss Bass from this case for the following non-exclusive reasons:

➢ Plaintiffs' respective contracts with Bass explicitly bar their warranty claims.

➢ The negligence claims against Bass fail as a matter of law.  Bass owed the Plaintiffs a duty to neither inspect nor warn.  It is not foreseeable that drywall would cause the damages alleged by the Plaintiffs.  Bass did not know of any defective conditions in the drywall it purchased from suppliers and had installed by third-party contractors.

➢ Plaintiffs' claim for negligence per se is predicated on Bass' alleged breach of state building codes.  Plaintiffs do not identify the codes that Bass violated, much less how such codes exists to prevent their injuries.

➢ Plaintiffs' strict liability claim fails because Bass is not a drywall manufacturer.  The Alabama Extended Manufacturer's Liability Doctrine, which governs Plaintiffs' claim, neither applies to Bass nor imposes "no-fault" strict liability.

➢ Plaintiffs' tort claims are barred by the Economic Loss Rule.  This rule prevents a contractual party from seeking damages in tort for economic losses.

➢ Plaintiffs fail to show how Bass breached its contracts with them.

➢ Plaintiffs' claim for private nuisance is without merit because Bass did not have possession over the respective properties.

➢ The overly-broad allegation that Bass violated "various consumer Protection Acts" is a claim for fraud that requires specific pleading, which the Plaintiffs do not offer.

➢ Plaintiffs do not explain how their remedies at law are insufficient as to permit injunctive relief.  Also, medical monitoring is not permitted under Alabama law.

> ➤ The Plaintiffs do not meet all pleadings requirements for an unjust enrichment claim, insofar as they do not explain how Bass committed fraud to enrich itself.

Alternatively, this Court should stay the proceedings against Bass pending arbitration. Each Plaintiff entered into building Contracts with Bass in 2008. Those Contracts expressly required the Plaintiffs to arbitrate all disputes arising out of Bass' construction of their homes, prior to instigating litigation. The Plaintiffs failed to request arbitration before joining this Multidistrict Litigation. Plaintiffs' claims against Bass should be stayed while the court compels arbitration.

## II.   BACKGROUND

Plaintiffs' filed their *Wiltz* Omnibus Class Action Complaint (II) ("**Omni II**") on February 10, 2010. *See* Case 2:10-cv-00361 Docs. 1 and 1-1 (filed in two parts due to its length). Omni II identifies Bass Homes, Inc., as a Defendant in the "Developer/Builder" subclass. *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 806. Bass is named in Omni II by the following Plaintiffs:

> ➤ Braxton and Kerrie Collins,
>
> ➤ Jason and Cassie Herrington, and
>
> ➤ Greg and Sherry Wiggins.

*See* Case 2:10-cv-00361 Doc. 1-9 at p. 9. Bass built each of the Plaintiffs' homes in 2008. It constructed a home for the Collins[1] and Herrington[2] plaintiffs in Mississippi and for the Wiggins[3] plaintiffs in Alabama.

Bass is named in this litigation alongside many purported manufacturers, importers, suppliers, and installers of Chinese Drywall. But Bass had <u>nothing</u> to do with the manufacture,

---

[1] *See* Bass' August 22, 2008, Building Contract with Braxton and Kerrie Collins, attached as Exhibit "A."
[2] *See* Bass' July 15, 2008, Building Contract with Jason and Cassie Herrington, attached as Exhibit "B."
[3] *See* Bass' December 9, 2008, Building Contract with Greg Wiggins, attached as Exhibit "C."

marketing, distribution, or installation of that drywall. The Plaintiffs admit that Bass did not sell drywall. In fact, Plaintiffs name Bass as a "Developer/Builder." *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 806. Plaintiffs' Complaint offers a laundry list of generic theories of liability without fully distinguishing between, *inter alia*, homebuilders and other defendants. Table 1, below, lists the Plaintiffs' fifteen counts to highlight the "catch-all" nature of Plaintiffs' Complaint.

| Table 1: Plaintiffs' Omnibus Class Action Complaint ("Omni II") [4] | | |
|---|---|---|
| (highlighted Counts do not apply to Bass) | | |
| Plaintiffs' Count Number | Defendants against which Count is purportedly directed | Plaintiffs' Claim |
| I | All Defendants | Negligence |
| II | All Defendants | Negligence Per Se |
| III | All Defendants | Strict Liability |
| IV | All Defendants | Breach of Express and/or Implied Warranties |
| V [5] | Builders Only (on behalf of Plaintiffs who own condominiums in the state of Florida) | Breach of the Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes Section 718.203 |
| VI | Builders Only | Breach of the Implied Warranty of Habitability |
| VII | Builders Only | Breach of Contract |
| VIII [6] | Louisiana Builders Only | Violation of the Louisiana New Home Warranty Act (on Behalf of Plaintiffs who own Homes in the State of LA) |
| IX [7] | Louisiana Plaintiffs against all Defendants | Redhibition |
| X [8] | Manufacturing Defendants (Pleaded in the Alternative against Distributor Defendants) | Louisiana Products Liability Act |
| XI | All Defendants | Private Nuisance |
| XII | All Defendants | Negligent Discharge of a Corrosive Substance |
| XIII | All Defendants | Unjust Enrichment |
| XIV | All Defendants | Violation of Consumer Protection Act |
| XV | All Defendants | Equitable and Injunctive Relief and Medical Monitoring |

[4] *See* Case 2:10-cv-00361 Docs. 1 and 1-1.
[5] Count V does not apply to Bass because Plaintiffs do not own Florida condominiums.
[6] Count VIII does not apply to Bass because Bass is not a Louisiana builder.
[7] Count IX does not apply to Bass because Bass is not a Louisiana builder.
[8] Count X does not apply to Bass because Plaintiffs identify Bass in neither the manufacturing nor distributor classes.

Of Plaintiffs' fifteen counts, four do not apply to Bass (V, VIII, IX, and X); seven are tort-based claims (I, II, III, XI, XII, XIII, XV); three are contract claims (IV, VI, and VII); and one is statutory (XIV). None of the claims applicable to Bass states a claim for which relief can be granted. Every one of Plaintiffs' claims against Bass should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

## III.    CHOICE OF LAW ANALYSIS

Bass is an Alabama corporation with its principal place of business in Stapleton, Alabama. The Plaintiffs are owners of homes built by Bass in Mississippi (Collins; Herrington) and Alabama (Wiggins). The Collins and Herrington Plaintiffs are citizens of Mississippi. *See* Case 2:10-cv-00361 Doc. 1 at ¶¶ 203 and 218. The Wiggins Plaintiffs are citizens of Alabama. *See* Case 2:10-cv-00361 Doc. 1 at ¶ 251. Bass built the Plaintiffs' homes in 2008 pursuant to the Plaintiffs' respective contracts with Bass. Each of the three contracts was executed in Alabama.

This court sitting in Louisiana should apply Louisiana choice of law rules to determine what substantive laws govern the claims against Bass. *See Long Island Trust Company v. Dicken*, 659 F.2d 641, 645 n. 6 (5th Cir. 1981). Under the Louisiana choice of law analysis, Alabama clearly has the most contact with this dispute. *See* La. Civ. Code Art. 3537 (applying such factors as "place of negotiation, formation, performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties…"). *See also Vishal Hospitality, LLC v. Choice Hotels Int'l, Inc.*, 907 So.2d 89 (La. App. 1 Cir. 2005), *writ granted*, cause remanded on other grounds, 918 So.2d 1020 (La. 2006) (applying Article 3537 analysis to an arbitration dispute.).

The Plaintiffs' contracts with Bass were all negotiated, formed, and executed in Alabama. Bass is incorporated and principally located in Alabama. The parties agreed that all disputes

6

arising under the contract, "shall be settled by arbitration in the sate of Alabama." *See* Exhibits "A," "B," and "C," respectively, at Section (5). More specifically, "[t]he venue for arbitration shall be in Baldwin County, Alabama." *Id.* Alabama law would be most seriously impaired if its law were not applied to Bass' contracts with the Plaintiffs. *See In re Sunnyside Timber, LLC,* 2008 Bankr. LEXIS 3930 (Bankr. W.D. La. June 26, 2008) (applying Louisiana law to the disposition of a debtors' Utah property because the crucial phases of the negotiations over the property occurred in Louisiana, where many key parties were located.). Alabama substantive law governs the Plaintiffs' claims against Bass.

## IV.   THE PLAINTIFFS' CLAIMS AGAINST BASS SHOULD BE DISMISSED

### A.   Plaintiffs waive <u>all</u> claims related to building materials in their Building Agreements and Completion Certificates with Bass; Plaintiffs also contractually waive their warranty claims (Counts IV and VI ).

When they bargained with Bass for construction of their homes, and when they accepted occupancy of their homes, the Plaintiffs agreed that they would bring claims related to materials used in their homes exclusively against manufacturers. Specifically, the Plaintiffs stipulated in their building contracts that, "all claims related to the materials used in construction shall be pursued by customers ONLY against the manufacturers of any materials provided to the Contractor." *See* "Limited One-Year Warranty," affixed to each Bass contract at Exhibits "A," "B," and "C." It is undisputed that Bass is not a manufacturer of the drywall installed by a third-party in the Plaintiffs' homes. The Plaintiffs identify Bass as a "Developer/Builder." *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 806. This plain contractual language precludes <u>all</u> of the Plaintiffs' claims against Bass.

Furthermore, in Counts IV and VI, Plaintiffs assert claims of breach of express and implied warranties. The Plaintiffs' Complaint does not identify the source of these purported

warranties or how Bass might have breached them.  The claims in Counts IV and VI should be dismissed because the Plaintiffs' contracts with Bass provided for a one-year warranty, "in lieu of any and all other warranties, either expressed or implied, including any implied warranty of merchantability […]."  *See* "Limited One-Year Warranty," affixed to each Bass contract at Exhibits "A," "B," and "C."

In short: (1) all of the Plaintiffs' claims against Bass should be dismissed because the Plaintiffs disavowed their claims against Bass for defective materials, and (2) the Plaintiffs contractually waived all implied warranties.

Bass entered into the same building contract with each of the Collins, Herrington, and Wiggins Plaintiffs.  Each Building Contract states that:

> Seller promises to furnish Buyer at closing a one-year limited warranty on the dwelling, a copy of which is attached here as [an Exhibit].

*See* Exhibits "A," "B," and "C," respectively.  The "Limited One-Year Warranty" provides that:

> 2.  Contractor did not manufacture any materials used in the construction of this home; that the Contractor does not warrant any of the said materials against any defects in QUALITY, FITNESS or MERCHANTABILITY; that the Contractor will make good only on the workmanship of the actual construction of home; and that any and all claims related to the materials used in construction shall be pursued by customers ONLY against the manufacturers of any materials provided to the Contractor.

> 3.  Contractor hereby gives a limited warranty on the home […] for a period of one (1) year following closing or occupancy by the Buyer(s), whichever event occurs first.

> 4.  Contractor warrants the home to be free from latent defects for a period of one (1) year following closing or occupancy, whichever event occurs first.

> 5.  **THIS WARRANTY IS GIVEN IN LIEU OF ANY AND ALL OTHER WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY AND/OR WORKMANSHIP.**

8

> 6.   Contractor shall not be liable under the parties' contract or this warranty unless written notice of the latent defect(s) shall be given by Buyer(s) to the Contractor within the (1) year warranty. […].

*See* "Limited One-Year Warranty," affixed to each Bass contract at Exhibits "A," "B," and "C."[9]

The court should dismiss <u>each and every</u> claim against Bass because the Plaintiffs expressly agreed that, "all claims related to the materials used in construction shall be pursued by customers ONLY against the manufacturers of any materials provided to the Contractor." *See* "Limited One-Year Warranty," affixed to each Bass contract at Exhibits "A," "B," and "C" at Section (2). The Plaintiffs' allegations that the drywall supplied and installed in their homes by third-parties, and over which Bass had no control, are precisely the kind of claims concerning materials that the Plaintiffs agreed to bring only against the manufacturers.

Not only did the Plaintiffs use their Building Contracts to waive implied warranties and all claims for defective materials in their homes, but they reiterated this waiver in their Completion Certificates:

> The Foregoing Warranty and Manufacturers' Warranties Are Expressly In Lieu of All Other Warranties, Express Or Implied By Law Or Otherwise, And No Warranty Of MERCHANTABILITY, HABITABILITY, Or FITNESS for any particular purpose Of Any Fixtures, Equipment Appliances, Personal Property, Or Real Property And Improvements Thereon Is Made By Contractor. The Liability Of The Contractor And Its Assigns Shall Be Strictly Limited To The Express Warranty Terms, And Neither the Contractor Nor Its Assigns Shall Be Liable For Any Incidental or Consequential Damages.

*See* Exhibits "D," "E," and "F." Notably, the Plaintiffs agreed that, "the liability of [Bass …] shall  be strictly limited to the express warranty terms […]." *Id.* This contractual limitation of liability is valid: "the clear public policy in Alabama is to allow a seller to limit the remedies available to a buyer." *Southland Farms, Inc. v. Ciba-Geigy Corp.*, 575 So.2d 1077, 1080 (Ala.

---

[9] The Collins plaintiffs accepted occupancy of their home on February 5, 2009, with a twelve-month warranty beginning on that date. *See* the Collins' Completion Certificate and Owner's [sic] Acceptance, attached as Exhibit "D." The Herrington plaintiffs accepted occupancy of their home on March 13, 2009, with a twelve-month warranty beginning on March 16, 2009. *See* the Herringtons' Completion Certificate and Owner's [sic] Acceptance, attached as Exhibit "E." Plaintiff Greg E. Wiggins accepted occupancy of his home on April 22, 2009, with a twelve-month warranty beginning on that date. *See* Mr. Wiggins' Completion Certificate and Owner's Acceptance, attached as Exhibit "F."

1991) (quoting *Puckett, Taul & Underwood v. Schreiber Corp.*, 551 So.2d 979, 983 (Ala. 1989)). The Plaintiffs still have a remedy against the drywall manufacturers. But because the Plaintiffs limited their remedies to their express warranties and agreed to bring claims related to drywall against the manufacturers only, <u>all</u> of Plaintiffs claims against Bass must be dismissed. The Plaintiffs expressly limited their liability by executing their Building Agreements and Completion Certificates.

Additionally, exclusions of implied warranties like those agreed upon in Bass' contracts with the Plaintiffs are valid and enforceable under Alabama law. It is well-settled that, "contracting parties have a right to express the limitations under which they will be bound, and such clearly manifested limitations will be recognized by the courts." *Stewart v. Bardley*, 15 So.3d 533, 542 (Ala. Civ. App. 2008) (quoting *Campbell v. Southern Roof Deck Applicators, Inc.*, 406 So.2d 910, 913 (Ala. 1981)). *See also McDonald v. Schwartz*, 706 So.2d 1230, 1232 (Ala. Civ. App. 1997) ("where the parties have set out in a written contract the warranties agreed upon and have provided a remedy in case of a breach of warranty, the remedy thus provided is exclusive.").

The Plaintiffs contracted with Bass for an express one year warranty. This remedy is exclusive. The Plaintiffs waived all implied warranties, including the warranty of habitability alleged in Omni II. Alabama law specifically provides that, "the principle of freedom of contract permits a party to effectively disclaim the implied warranty of habitability." *Turner v. Westhampton Court, LLC*, 903 So.2d 82, 93 (Ala. 2004). In *Turner*, home buyers sued their general contractor for breach of express and implied warranties after experiencing problems with their home's exterior finish. *Id.* at 85. The parties' contract required the homeowners to give notice of the defect to the builder within one year of the commencement of the warranty. *Id.* at

91.  Upholding summary judgment in favor of the builder, the Alabama Supreme Court found that the express warranty was enforceable, even though the buyers alleged that they did not discover the defect until five years after the purchase.  *Id.* at 91-92.  Therefore, it matters not that the Plaintiffs allege that their drywall defects were only recently discovered.

The Plaintiffs each agreed to limit Bass' liability to an express warranty.  This warranty included an agreement that the Plaintiffs would bring claims related to the materials used in construction against the manufacturers of those materials, not against Bass.  This stipulation was agreed to by all of the Plaintiffs when each executed their Building Contracts and Completion Certificates.  The heart of this suit is that Bass is somehow liable for alleged defects in drywall that it neither manufactured nor installed.  This is the exact type of claim that the Plaintiffs waived and agreed to bring only against the drywall manufacturers, who are the liable parties.  This action against Bass should be dismissed.  Additionally, the Plaintiffs' implied warranty claims should be dismissed because they were waived in their contracts with Bass.

## B.  Plaintiffs fail to state a claim for negligence (Counts I and XII).

Plaintiffs' negligence claims highlight the "shotgun" approach they take in this litigation.  Omni II alleges that Bass owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question.  *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 820.  The Complaint further alleges that Bass had a duty to provide Plaintiffs with certain warnings about the drywall.  *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 823.

But Bass simply did not design, manufacture, export, import, distribute, deliver, supply, inspect, market, or sell drywall to the Plaintiffs.  Even the Plaintiffs identify Bass as a "Developer/Builder," Subclass #63.  *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 806.  Bass built the

11

Plaintiffs' homes pursuant to its contracts with the Plaintiffs and had no duty to warn the Plaintiffs about alleged latent defects in the drywall. Therefore, the negligence claims against Bass should be dismissed because, by the Plaintiffs' own admission, they do not apply to Bass.

Furthermore, Bass owed no duty to the Plaintiffs. To prove a claim for negligence under Alabama law, a plaintiff must establish all four elements of the action:

> (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury.

*Crowne Invs. v. Bryant*, 638 So.2d 873, 878 (Ala. 1994) (citing *Albert v. Hsu*, 602 So.2d 895, 897 (Ala. 1992)). The requirement of foreseeability is imposed to preclude a finding of liability when the defendant's conduct was part of the causal chain of events leading to the injury but the resulting injury could not have been reasonably anticipated by the defendant. *Ex parte Wild Wild W. Soc. Club, Inc.*, 806 So.2d 1235, 1240 (Ala. 2001). Bass had no knowledge of any defective drywall when it built the Plaintiffs' homes. Bass purchased the drywall from suppliers and then contracted the drywall installation to a third-party. The Plaintiff's alleged injuries could not have been reasonably anticipated by Bass.

Specifically, "'foreseeability must be based on the probability that harm will occur, rather than the bare possibility.'" *Ala. Power Co. v. Moore*, 899 So.2d 975, 979 (Ala. 2004) (quoting *Ex parte Wild Wild W. Soc. Club, Inc.*, 806 So.2d at 1241)). Drywall is historically a harmless building product. In Alabama, "[w]hen a seller knows or should know that its product is imminently or inherently dangerous when used in its customary manner, the seller is under a duty to use due care to acquaint the user with the danger." *Rivers v. Stihl, Inc.*, 434 So. 2d 766, 773 (Ala. 1983). But drywall is not the kind of "inherently dangerous" product that carries a duty to inspect or warn. As a matter of Alabama law, Bass owed no duty to the Plaintiffs for the drywall that Bass did not, itself, manufacture, supply, market, or install.

Plaintiffs' negligence claims fail as a matter of law.  The self-serving and unsupported assertion that Bass "knew or should have known" that the drywall would "harm" Plaintiffs (*see* *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 821) does not suffice to state a claim under negligence, and Plaintiffs' Counts I and XII should be dismissed.

### C.  Plaintiffs do not state a claim for negligence per se (Count II).

Plaintiffs fail to set forth the essential elements of a negligence per se claim.  In Alabama, like most states, "the doctrine of negligence per se or negligence as a matter of law arises from the premise that the legislature may enact a statute that replaces the common-law standard of the reasonably prudent person with an absolute, required standard of care." *Parker Bldg. Servs. Co. v. Lightsey*, 925 So.2d 927, 930-31 (Ala. 2005).  Plaintiffs do not identify a statute that Bass allegedly violated, much less explain how that violation occurred.  Instead, the Plaintiffs assert that "Defendants," as an undifferentiated group, violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes." *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 830.  Once again, this self-serving, conclusory statement is devoid of factual support.  Such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, "[t]he Alabama Supreme Court has explained that to prevail on a claim of negligence per se, a plaintiff must show that the statute allegedly violated protects <u>a class of persons</u> which is narrower than the <u>general public</u>." *Winberry v. United Collection Bureau, Inc.*, 697 F. Supp. 2d 1279, 1293 (M.D. Ala. 2010) (recognizing that, because the stated purpose of a building code is to protect the general public, negligence per se is inapplicable.).  Simply put, the

Plaintiffs fail to explain how the "State and local Building Codes" that Bass allegedly violated are designed to protect a particular class of individuals, rather than the general public.

Plaintiffs do not identify the alleged code violations or explain how the codes exist to protect Plaintiffs from their alleged injuries.   Plaintiffs' negligence per se claim should be dismissed.

### D. Plaintiffs' strict liability claim (Count III) fails under Alabama law.

There are two independent bases for dismissal of Plaintiffs' strict liability claim.  First, this claim is premised on the inaccurate assumption that Bass manufactured or distributed drywall, which it did not. *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 806 (where Plaintiffs name Bass as a "Developer/Builder").   Second, the claim is governed by Alabama products liability law, which neither applies to homebuilders like Bass nor imposes strict liability for latent defects.

Plaintiffs' strict liability claim (Count III) alleges that Bass was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 835.  But even the Plaintiffs identify Bass as a "Developer/Builder." *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 806.  Bass never distributed, delivered, supplied, inspected, marketed, or sold drywall.  For this reason, alone, the Plaintiffs' claim is facially flawed and should be dismissed.

Additionally, the Plaintiffs' claim that "[t]he Defendants' drywall was defectively manufactured [...]" (*See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 842) is governed by Alabama's products liability law, which resides in the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD").  The AEMLD applies to product manufacturers and distributors only; it does not apply to homebuilders like Bass.

To establish liability under the AEMLD, a plaintiff must show:

he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

    (a) the seller is engaged in the business of selling such a product, and;

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

*Casrell v. Altec Indus.*, 335 So.2d 128, 132-133 (Ala. 1976). Again, the Plaintiffs admit that Bass did not sell drywall—they name Bass as a "Developer/Builder." *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 806. Therefore, the AEMLD is inapplicable to Bass.

Even if the AEMLD applies to Bass, which it does not, the AEMLD does not impose "no-fault" strict liability. *Pitts v. Dow Chem. Co.*, 859 F.Supp. 543, 550 (M.D. Ala. 1994). A key affirmative defense to an AEMLD claim is that, "there is no causal relation in fact between [a defendant's] activities in connection with handling the product and its defective condition." *Atkins v. American Motors Corp.*, 335 So.2d 134, 143 (Ala. 1976). This "no causal connection" defense bars a products liability claim against Bass because Bass received the drywall already in an allegedly defective condition, Bass did not contribute to its defective condition, and Bass had neither knowledge of the defective condition nor an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer. *Id.* at 143. The "superior opportunity" to inspect the product must be a meaningful one. When the defect in the product is latent and could not have been discovered by either the consumer or seller after a reasonable inspection, neither will be said to have had a "superior opportunity" to inspect. *Consolidated Pipe & Supply Co. v. Stockham Valves & Fittings, Inc.*, 365 So.2d 968, 970-71 (Ala. 1978).

Because Bass is a builder that never manufactured or distributed the Plaintiffs' drywall, and because Alabama products liability law neither applies to Bass nor imposes "no-fault" strict liability, the Plaintiffs' strict liability claim against Bass must be dismissed.

### E. Plaintiffs' tort claims (Counts I, II, III, XI, XII, XIII, and XV) are barred in whole or in part by the Economic Loss Rule.

The Economic Loss Rule ("**ELR**"), "prevents tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself." *Public Bldg. Auth. v. St. Paul Fire & Marine Ins. Co.*, 2010 Ala. LEXIS 198 (Ala. Oct. 8, 2010) (quoting *Vesta Fire Ins. Corp. v. Milam & Co. Constr.*, 901 So.2d 84, 106-07 (Ala. 2004)).

Alabama courts have defined economic loss in contexts such as this one as, "an action for damages for 'inadequate value, costs of repair, and replacement of defective goods or consequent loss of profits.'" *Rhodes v. General Motors Corp., Chevrolet Div.*, 621 So.2d 945, 947 n3 (Ala. 1993) (*quoting* James J. White and Robert S. Summers, Uniform Commercial Code: Practitioner's Edition, § 11-4 at 534 (3d ed. 1988)).  The Plaintiffs seek purely economic damages in tort.  These claims are protected by contract law, rather than tort law.  Under the ELR, "when a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." *Harris Moran Seed Co. v. Phillips*, 949 So.2d 916, 932 (Ala. Civ. App. 2006) (quoting *East River Steamship Corporation v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986)).  The Plaintiffs' economic claims should be dismissed.

### F. Plaintiffs do not explain how Bass breached its contract; their claim for breach of contract (Count VII) must be dismissed.

The Plaintiffs do not allege a viable breach of contract claim.  Omni II states only that Bass, "contracted with the [Plaintiffs] to construct homes that would be free of defects." *See See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 880.  This assertion is insufficient on its face, because it fails to identify the contractual source of Bass' alleged duty to construct a home "free of defects."  To

support a breach of contract claim, "the claimant must prove: (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Southern Medical Health Sys. v. Vaughn*, 669 So.2d 98, 99 (Ala. 1995). The Plaintiffs do not explain how Bass allegedly failed to perform under the parties' building agreements. This omission, alone, warrants Bass' dismissal.

Furthermore, although the Plaintiffs may point out the "Omnibus" nature of the Complaint, the Plaintiffs' decisions to join a large multidistrict litigation do not excuse them from satisfying basic pleading standards. If Bass must defend a claim for breach of contract, due process entitles Bass to know the basis for the Plaintiffs' claim. Plaintiffs' breach of contract claim does not satisfy Alabama pleading standards and should be dismissed.

### G. Plaintiffs' unjust enrichment claim (Count XIII) fails because Plaintiffs do not explain how Bass' conduct rises to the requisite level of fraud.

In Count XIII, the Plaintiffs bring an unjust enrichment claim against all defendants in all states. But one, "federal court recently emphasized differences in the law regarding unjust enrichment among various states, including Alabama." *Wyeth, Inc. v. Blue Cross & Blue Shield of Ala.*, 42 So.3d 1216, 1225 (Ala. 2010) (quoting *Thompson v. Bayer Corp.* (No. 4:07cv00017, 2009 U.S. Dist. LEXIS 15190, Feb. 12, 2009) (E.D. Ark. 2009)). In Alabama, courts require a high standard for the defendant's conduct to qualify: "Alabama courts require unconscionable conduct on the part of the defendant in order to make a claim for unjust enrichment." *Id.* Specifically:

> the recipient of a benefit [must have] engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of [...] wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been *unjustly* enriched.

*Id.* (quoting *Mantiply v. Mantiply*, 951 So.2d 638, 654-55 (Ala. 2006) (emphasis in original)).

17

The Plaintiffs do not specify Bass' allegedly fraudulent conduct in their claim for unjust enrichment, despite Fed. R. Civ. Pro. 9(b), which requires that, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Indeed, Bass committed no fraud or "unconscionable conduct." The Plaintiffs cannot support their unjust enrichment claim without this requisite element. Therefore, Plaintiffs' claim for unjust enrichment fails.

### H. Plaintiffs' claim against Bass for private nuisance (Count XI) should be dismissed because Bass lacks the requisite possession over the allegedly-nuisance property.

An action for private nuisance requires the claimant to establish an injury to his own property in connection with the use of the real property of someone else. *See Union Cemetery Co. v. Harrison*, 101 So. 517, 518 (Ala. Civ. App. 1924). Indeed, "the wrongful act of so using one's own property as to work injury to another is the gravamen of [a private nuisance] action." *Beam v. Birmingham Slag Co.*, 10 So.2d 162, 165 (Ala. 1942) (emphasis added). The "control" issue that is the cornerstone of a nuisance claim was further explained in *Baldwin v. McClendon*, 288 So.2d 761, 764 (Ala. 1974) (trial court correctly found odors and gases emanating from hog parlors and lagoons constituted a nuisance): "anything constructed on a person's premises which, of itself, or by its intended use, directly injures a neighbor in the proper use and enjoyment of his property, is a nuisance."

The Plaintiffs' Complaint does not allege that Bass had ownership or possession of property that injured the Plaintiffs. On the contrary, the nuisance claim is predicated entirely on the allegation that "structures owned by Plaintiffs" are to blame. *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 915. That allegation does not state a claim for private nuisance. Obviously, Bass had neither ownership nor possession of the Plaintiffs properties. Because the Plaintiffs admit that

they, themselves, own the homes in question, their claim for private nuisance must be dismissed under Alabama law.

### I.   In Count XIV, Plaintiffs fail to plead specific facts concerning Bass' allegedly-deceptive acts.

Plaintiffs broadly allege violations of "various consumer Protection Acts," including "Ala. Code 1975 § 8-19-1, *et seq*. (Alabama Deceptive Trade Practices Act)." *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 933. Paragraph 27 of the Alabama Deceptive Trade Practices Act ("**ADTPA**") "makes unlawful 'engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.'" *Sam v. Beaird*, 685 So.2d 742, 744 (Ala. Civ. App. 1996) (citing *Strickland v. Kafko Mfg., Inc.*, 512 So.2d 714 (Ala. 1987)).

Courts examining ADTPA claims have interpreted the law to "require knowledge of wrongdoing." *Id*. As with their claim for unjust enrichment, the Plaintiffs do not plead with particularity the basis for their deceptive trade practices allegations. Bass had absolutely no knowledge of any defective drywall condition when the drywall was installed in Plaintiffs' homes by third-party contractors. Plaintiffs support their claim under the ADPTA only with a self-serving assertion that all Defendants knowingly misrepresented or failed to disclose the quality of the drywall. *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 934. This Court should reject such boilerplate allegations, recognize that the Plaintiffs do not meet the pleading standards of the ADTPA, and dismiss Plaintiffs' claim for deceptive trade practices. The Court should also award attorney's fees to Bass for defeating this claim pursuant to Ala. Code 1975 § 8-19-10(a)(3) (providing that if, "an action […] under this section was frivolous or brought in bad faith […], the court shall award the defendant (or counterclaim-defendant) reasonable attorney's fees and costs.").

### J.  Plaintiffs are entitled to neither injunctive relief nor medical monitoring (Count XV).

Plaintiffs' final claim for "Equitable and Injunctive Relief and Medical Monitoring" (Count XV) is a catchall claim that seeks, among other things, an order that Bass "buy back and rescind" its contracts and "create, fund, and support a medical monitoring program." *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 940.  This claim should be dismissed.

First, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based.  Each of Plaintiffs' substantive claims is due for dismissal.  Therefore, this derivative claim for injunctive relief also fails.  *See, e.g., Wootten v. Ivey*, 887 So.2d 585, 589 (Ala. 2003) (the jury's factual determining that a nuisance did not exist foreclosed the trial court's ability to grant injunctive relief based on the plaintiffs' nuisance claim.).

Second, even if one of Plaintiffs' substantive claims survives dismissal, the Court should dismiss the injunctive claim because Plaintiffs fail to allege an inadequate legal remedy or irreparable harm.  Injunctions under both federal and Alabama law require these elements.  *Ormco Corp. v. Johns*, 869 So.2d 1109, 1113 (Ala. 2004).  To state a cause of action for injunctive relief, a plaintiff must allege ultimate facts which, if true, would establish:

> (1) that without the injunction the plaintiff would suffer <u>immediate and irreparable injury</u>; (2) that the plaintiff has <u>no adequate remedy at law</u>; (3) that the plaintiff has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the defendant by the injunction would not unreasonably outweigh the benefit accruing to the plaintiff.

*Id.* (quoting *Perley v. Tapscan, Inc.*, 646 So.2d 585, 587 (Ala. 1994)) (emphasis added). Plaintiffs do not explain how the legal remedies sought elsewhere in their Complaint are inadequate or why Plaintiffs are entitled to the extraordinary remedy of an injunction. *See, e.g.,*

*Perley*, 646 So.2d at 587 (Ala. 1994) ("'irreparable injury' is an injury that is not redressable in a court of law through an award of money damages.").

Third, Plaintiffs' request for "medical monitoring" is not permitted under Alabama law. Alabama law firmly rejects any claim for medical monitoring of plaintiffs who have not suffered physical injuries but merely fear injuries. For example, in *Hinton v. Monsanto Co.*, 813 So.2d 827, 828 (Ala. 2001), the plaintiff did not allege a present injury. Rather, he sought to recover the costs of monitoring his health to detect whether he develops an illness or an injury in the future as a result of exposure to a hazardous substance. *Id.* In denying the plaintiff's request for medical monitoring, the court held that, "Alabama law has long required a manifest, present injury before a plaintiff may recover in tort." *Id.* at 829. *See also: Houston County Health Care Auth. v. Williams*, 961 So.2d 795, 811 (Ala. 2006) ("A person exposed to a known hazardous substance but not claiming a present physical injury or illness as a result may not recover as damages the costs of medical monitoring.").

The Plaintiffs do not allege the requisite elements of a medical monitoring claim. Instead, Plaintiffs set forth a series of legal conclusions without factual detail. *See, e.g., See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 944 ("Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct."). Plaintiffs fail to identify any medical condition supposedly caused by their drywall; nor do they identify a monitoring procedure for that supposed condition. Plaintiffs do not even claim to be ill.

Again, legal conclusions do not suffice to support Plaintiffs' cause of action. *See Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadabare recitals" of the elements of a claim inadequate). This Court, like others, should dismiss Plaintiffs' claim for medical monitoring as deficient on the pleadings.

## V.   ALTERNATIVELY, THE CLAIMS AGAINST BASS SHOULD BE STAYED PENDING ARBITRATION.

Federal and Alabama arbitration laws require enforcement of the arbitration clauses stipulated by the parties in their respective building contracts. Each Plaintiff had an Arbitration Agreement with Bass providing, in part, that:

> Any dispute, controversy or claim arising out of or relating to this agreement, or the breach thereof, or arising out of any prior dealings between seller or arising out of any future dealings between seller and buyer, shall be settled by arbitration in the state of Alabama in accordance with the commercial arbitration rules of the American Arbitration Association [...].

*See* Exhibits "A," "B," and "C," respectively, at Section (5). This provision goes on to state that, "the venue for arbitration shall be in Baldwin County, Alabama." *Id.*

The Federal Arbitration Act ("**FAA**") provides that:

> A written provision in [...] a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction [...] shall be valid, irrevocable, and enforceable,

9 U.S.C. § 2. Under the FAA, the Plaintiffs' Arbitration Agreements with Bass are enforceable, and this court should stay this proceeding against Bass pending arbitration. As the U.S. Supreme Court recognizes, the FAA, "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 2-4). The U.S. Fifth Circuit Court of Appeals has, likewise, held that, "individuals seeking to avoid the enforcement of an arbitration agreement face a high bar." *Carter v. Country Wide Loans, Inc.,* 362 F.3d 294, 297 (5th Cir. 2004).

Furthermore, Alabama law acknowledges that pre-dispute arbitration provisions are enforceable so long as the party moving to compel arbitration proves, "the existence of a contract calling for arbitration and [...] that that contract evidences a transaction involving interstate

commerce." *Title Max of Birmingham, Inc. v. Edwards*, 973 So.2d 1050, 1052 (Ala. 2007) (citing *Polaris Sales, Inc. v. Heritage Imports, Inc.*, 879 So.2d 1129, 1132 (Ala. 2003). It's indisputable that Bass has contracts with each of the Plaintiffs. *See* Exhibits "A," "B," and "C." With regard to the Mississippi plaintiffs (Collins; Herrington), the contracts obviously involve interstate commerce because they require an Alabama-based business to build homes in Mississippi. With regard to all Plaintiffs, building homes necessarily involves interstate commerce, considering the sources of the various components used in the building of homes. *See, e.g.*: *Benchmark Homes, Inc. v. Aleman*, 786 So.2d 1101 (Ala. 2000) (holding that a contract to purchase land and build a house in Alabama affected interstate commerce because some of the components used to build the house came from other states). Because the language used in the Plaintiffs' Arbitration Agreements with Bass covers the claims asserted against Bass in this litigation, this court should stay the instant proceedings and compel arbitration in Baldwin County, Alabama.

## VI. CONCLUSION

Table 2, below, provides a summary of why this Court should dismiss each claim against Bass Homes, Inc., in Plaintiffs' *Wiltz* Class Action Complaint ("Omni II").

| Table 2: Summary of Bass' Bases for Dismissal from Omni II (highlighted Counts do not apply to Bass) | | | |
|---|---|---|---|
| **Plaintiffs' Count Number** | **Defendants against which Count is purportedly directed** | **Plaintiffs' Claim** | **Reason(s) why Plaintiffs' Claim Fails** |
| I | All Defendants | Negligence | Bass owes no duty to Plaintiffs; Economic Loss Rule ("ELR"). |
| II | All Defendants | Negligence Per Se | Statutes impose no duty on Bass; ELR. |
| III | All Defendants | Strict Liability | Bass, as a homebuilder, cannot be held strictly liable under Alabama law; ELR. |
| IV | All Defendants | Breach of Express and/or Implied Warranties | Plaintiffs' contracts with Bass exclude these warranties. |

| V | Builders Only (on behalf of Plaintiffs who own condominiums in the state of Florida) | Breach of the Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes Section 718.203 | Not applicable. |
|---|---|---|---|
| VI | Builders Only | Breach of the Implied Warranty of Habitability | Plaintiffs' contracts with Bass exclude these warranties. |
| VII | Builders Only | Breach of Contract | Plaintiffs do not identify the contractual provisions that Bass allegedly breached. |
| VIII | Louisiana Builders Only | Violation of the Louisiana New Home Warranty Act (on Behalf of Plaintiffs who own Homes in the State of LA) | Not applicable. |
| IX | Louisiana Plaintiffs against all Defendants | Redhibition | Not applicable. |
| X | Manufacturing Defendants (Pleaded in the Alternative against Distributor Defendants) | Louisiana Products Liability Act | Not applicable. |
| XI | All Defendants | Private Nuisance | Bass did not possess the allegedly-nuisance property; ELR. |
| XII | All Defendants | Negligent Discharge of a Corrosive Substance | Bass owes no duty to Plaintiffs; ELR. |
| XIII | All Defendants | Unjust Enrichment | Plaintiffs do not explain how Bass' conduct meets the heightened culpability standard to characterize Bass as "unjustly enriched;" ELR |
| XIV | All Defendants | Violation of Consumer Protection Act | Plaintiffs fail to plead specific facts. |
| XV | All Defendants | Equitable and Injunctive Relief and Medical Monitoring | Claim fails along with substantive ones; no evidence of inadequate remedy at law; medical monitoring not permitted under Alabama law; ELR. |

Plaintiffs' "shotgun" approach to pleading diverse causes of action against many different types of defendants must be rejected.   Bass had nothing to do with the manufacture, marking,

distribution, or installation of Plaintiffs' drywall.  Bass does not belong in this litigation.

Because each of Plaintiffs' claims is fatally defective, this Court should dismiss Bass Homes,

Inc., under Fed. R. Civ. Pro. 12(b)(6).

Alternatively, the court should stay the proceeding against Bass pending arbitration.  The

Plaintiffs' respective contracts with Bass each mandate arbitration of all disputes arising from

Bass' construction.  These Arbitration Agreements are enforceable under the Federal Arbitration

Act and Alabama law.

Respectfully submitted,

**ADAMS AND REESE LLP**

s/Christopher A. D'Amour
CHRISTOPHER A. D'AMOUR (La. Bar # 26252)
MEGAN HAGGERTY GUY (La. Bar # 26316)
DAVID C. COONS (La. Bar # 32403)
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
*Attorneys for Defendant Bass Homes, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison

Counsel, Russ Herman, and Defendants' Liaison counsel, Kerry Miller, by U.S. Mail and e-mail

and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in

accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the

Clerk of Court of the United States District Court for the Eastern District of Louisiana by using

the CM/ECF System, which will send a notice of electronic filing in accordance with the

procedures established in MDL 2047, on this 21st day of December, 2010.

s/ David C. Coons