## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE MANUFACTURED | * | |
| DRYWALL PRODUCTS LIABILITY | * | MDL No. 2047 |
| LITIGATION | * | |
| | * | |
| | * | SECTON "L" |
| THIS DOCUMENT RELATES TO: | * | |
| | * | |
| Mary Anne Benes, et al. | * | JUDGE FALLON |
| vs. | * | |
| Knauf Gips KG., et al. | * | |
| | * | MAG. JUDGE WILKINSON |
| | * | |
| CASE NO.: 2:09-CV-6690-EEF-JCW | * | |

**************************************

### DEFENDANT BASS HOMES, INC.'S THIRD-PARTY COMPLAINT AGAINST ACE HARDWARE CORPORATION AND CROSS-CLAIM AGAINST ACE HOME CENTER, INC., D/B/A "ROBERTSDALE ACE HOME CENTER"

COMES NOW Defendant/ Cross-Claimant/ Third-Party-Plaintiff, **Bass Homes, Inc.** ("**Bass**"), by and through its undersigned counsel, and alleges for its Third-Party Complaint against Third-Party Defendant, Ace Hardware Corporation ("**Ace**"), and Cross-Claim against Defendant/Cross-Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center" ("**Robertsdale Ace**"), as follows:

### The Parties, Jurisdiction, and Venue

1.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Bass

2.      The *Benes* Intervention Complaint[1] ("Plaintiffs' Omnibus Class Action Complaint in Intervention (III)") "incorporate[s] and adopt[s] the allegations of the *Gross* complaint[2] […] by reference."[3]

---

[1] *See* Documents 1777 and 1777-1.

3.      The *Gross/Benes* Class Action Complaint ("**Omni III**") identifies Bass as a Defendant in the Builder/Developer Subclass.[4]

4.      Bass is named in Omni III by plaintiffs William and Betty Branning and Joseph and Charlotte Kostelecky.[5]

5.      Defendant/ Cross-Claimant/ Third-Party Plaintiff Bass was and is an Alabama corporation doing business principally in Stapleton, Alabama, where this cause of action arose. At all material times, Bass was a builder of residential homes in Alabama and Mississippi.

6.      Bass built a home for William and Betty Branning in Alabama.

7.      Bass built a home for Joseph and Charlotte Kostelecky in Alabama.

8.      The Plaintiffs allege that drywall used in Bass-constructed homes was defective and caused damages to the Plaintiffs.

9.      Bass denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

10.     Plaintiffs also name Defendant/ Cross-Defendant Ace Home Center, Inc., as a member of the Distributor/ Supplier/ Importer/ Exporter/ Broker subclass.[6]   Bass adopts and incorporates, as if fully set forth herein, paragraph 1073 of Omni III identifying Ace Home Center, Inc., and describing the nature of its business activities.[7]

11.     Upon information and belief, Defendant/ Cross-Defendant Ace Home Center, Inc does business as "Robertsdale Ace Home Center."

---

[2] *See* Doc. 366.
[3] *See* Doc. 1777 at p. 2.
[4] *See* Doc. 1777-3 at p. 15.
[5] *See* Doc. 1777-3 at p. 23.
[6] *See* Doc. 1777-1 at ¶ 1073.
[7] *Id.* ("Defendant, Ace Home Center, Inc. is an entity or individual with a principal place of business at 21090 Highway 59 South, Robertsdale, Alabama 36567.  Defendant is organized under the laws of Alabama.  Defendant is an importer, exporter, distributor, supplier or broker of drywall and related building products […].")

12.     Upon information and belief, Third-Party Defendant, Ace Hardware Corporation is an entity organized under Delaware law.

13.     Robertsdale Ace is part of the Ace network of stores selling, *inter alia*, drywall and related building products

14.     Bass brings this Cross-Claim pursuant to Federal Rule of Civil Procedure 13(g).

15.     Bass brings this Third-Party Complaint pursuant to Federal Rule of Civil Procedure 14.

16.     Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. § 1367 insofar as Bass' Cross-Claim and Third-Party Complaint arise from the same transactions or occurrences as Plaintiffs' action.  Venue in this district for coordinated or consolidated pretrial proceedings is consistent with the Transfer Order of the Judicial Panel on Multidistrict Litigation (JPML).  *See In re: Chinese-Manufactured Drywall Products Liability Litigation*, 629 F.Supp.2d 1346 (J.P.M.L. Jun. 15, 2009).  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and Third-Party Complaint.

### General Allegations

17.     As set forth in more detail in Omni III, Plaintiffs allege that their homes were built using defective drywall designed, manufactured, and processed in China, and that Bass (as builder) is liable for damages to Plaintiffs.

18.     Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances, and Plaintiffs' personal property (the "**Other Property**").

19.     Plaintiffs further allege that the drywall contained in their Homes was processed, distributed, marketed, and/or sold, by either or both of the Cross-Claim/ Third-Party Complaint Defendants.

20.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

21.     Bass purchased the drywall for each of the Plaintiffs' homes from Robertsdale Ace.

22.     At all material times, Robertsdale Ace and Ace knew that the drywall in question was going to be used in construction of residential homes.  Robertsdale Ace and Ace knew that Bass required and expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

23.     Bass did not know, could not have known, and was not made aware of any problem with the drywall.  The drywall processed, distributed, marketed, and/or sold, by Robertsdale Ace and Ace for use in the construction of the Homes was not altered and/or otherwise substantively changed by Bass.

24.     For the purpose of this Cross-Claim and Third-Party Complaint only, and not constituting an admission of Plaintiffs' allegations or liability for Bass, and without in any way adopting the Plaintiffs' allegations as true, the allegations set forth in the Plaintiffs' Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by allegedly-defective drywall in the Homes.

25.     Without admitting any liability of damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Plaintiffs' Complaint, at all material times, Robertsdale Ace and Ace knew or should have known of the drywall's applications, performance, and dangers.

26.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Plaintiffs' Complaint, Robertsdale Ace's and Ace's acts and omissions in processing, distributing, selling, and/or installing the defective drywall directly and proximately caused and/or exposed Bass to substantial liability and damages to Plaintiffs.

27.     Bass did not know, could not have known, and was never informed by Robertsdale Ace or Ace that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

28.     Consequently, Robertsdale Ace and Ace are liable for any tort or other fault with respect to the use of the allegedly-defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages.

29.     Robertsdale Ace and Ace are further liable to Bass for damages in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.  Additionally, Robertsdale Ace's and Ace's wrongful conduct also caused damages to Bass, including but not limited to Bass' loss of reputation, goodwill, lost profits, and attorneys' fees.

30.     All conditions precedent to the filing of this Cross-Claim and Third-Party Demand have been performed, excused, or otherwise waived.

## Count 1- Negligence
### (Against Robertsdale Ace and Ace)

31.     Bass reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

32.     Plaintiffs in the Complaint allege various claims against Bass for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

33.     Robertsdale Ace and Ace distributed, supplied, and/or sold the drywall that was installed in the homes.

34.     As such, Robertsdale Ace and Ace owed Bass a duty to, among other things, exercise reasonable care to (i) investigated and/or inspect, market, distribute, supply, and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of Bass' customers; and, (ii) market, distribute, supply, and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

35.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Robertsdale Ace and Ace knew or should have known that the drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

36.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint,

Robertsdale Ace and Ace breached their duty of care to Bass by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold, and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Robertsdale Ace and Ace sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywll which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Bass with drywall that complied with all applicable building and industry standards.

37.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such breaches in Robertsdale Ace's and Ace's duty of care were the direct and proximate cause of Bass' injuries, losses, and damages.

38.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, Robertsdale Ace and Ace knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying, and/or selling defective drywall would expose Bass to substantial liability and damages.  If Robertsdale Ace and Ace had exercised that degree of care that prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Bass would ensure as a result of marketing, distributing, supplying, and/or selling defective drywall.

39.     Without admitting any liability or damages to Plaintiffs, Bass was damaged by Robertsdale Ace's and Ace' breaches of its duties of care, which directly and proximately caused and/or exposed Bass to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Bass to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Bass in this action and/or any other action brought by Plaintiffs against Bass, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Bass in defending against these claims.  Robertsdale Ace's and Ace's wrongful conduct also caused damages to Bass, including but not limited to Bass' loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Bass demands judgment for damages in its favor and against Cross-Claim Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center," and Third-Party Defendant, Ace Hardware Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 2- Common Law Indemnity
**(Against Robertsdale Ace and Ace)**

40.     Bass reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

41.     Plaintiffs in the Complaint allege various claims against Bass for damages caused by defective drywall contained in the Homes.

42.     Bass is not and was not in the business of distributing, supplying, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied, and/or sold by Robertsdale Ace and Ace.  Bass justifiably relied on Robertsdale Ace and Ace to supply drywall that was fit for the ordinary purpose for which it was

intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

43.     Bass is entirely without fault for the injuries alleged by Plaintiffs.

44.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Robertsdale Ace and Ace.

45.     A special relationship existed between Robertsdale Ace/Ace and Bass such that any liability imposed upon Bass in this matter will be secondary, passive, solely vicarious, constructive, derivative, or technical to Robertsdale Ace and Ace.  Robertsdale Ace and Ace supplied drywall to be installed in the homes.  Moreover, to the extent that plaintiffs are successful in proving their claims, the drywall distributed, sold, and/or supplied by Robertsdale Ace and Ace was defective and wholly to blame for Plaintiffs' injuries.

46.     As a result of the claims that have been filed against Bass, Bass has incurred losses, damages, costs, attorneys' fees, and expenses due to the alleged failure of Robertsdale Ace and Ace to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

47.     If Bass is found to be liable to Plaintiffs, Robertsdale Ace and Ace is liable to Bass for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Bass in this action and/or any other action brought by Plaintiffs against Bass, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Bass, including, without limitation, payments made or to be made on behalf of Bass to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Bass, and/or the settlement of Plaintiffs' claims, as well

as reasonable costs and attorneys' fees incurred by Bass in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Bass demands judgment for damages in its favor and against Cross-Claim Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center," and Third-Party Defendant, Ace Hardware Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

**Count 3- Equitable Subrogation**
**(Against Robertsdale Ace and Ace)**

48.     Bass reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

49.     This is an action, stated in the alternative, against Robertsdale Ace and Ace for equitable subrogation.

50.     Plaintiffs in the Complaint allege various claims against Bass for damages caused by defects in the drywall contained in the Homes.

51.     Bass is not and was not in the business of distributing, supplying, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied, and/or sold by Robertsdale Ace and Ace.   Bass justifiably relied on Robertsdale Ace and Ace to supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

52.     Without admitting any liability or damages to Plaintiffs, Bass is not primarily liable for any liability to the Plaintiffs.

53.     To the extent that Bass is required to pay damages for any fault of Robertsdale Ace and Ace to protect its own interests, and not as a volunteer, Bass would be entitled to

10

reimbursement from Robertsdale Ace and Ace under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Bass, including, without limitation, payments made or to be made on behalf of Bass to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Bass and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Bass, as well as reasonable costs and attorneys' fees incurred by Bass in defending against the claims brought by Plaintiffs.

54.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Bass demands judgment in its favor and against Cross-Claim Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center," and Third-Party Defendant, Ace Hardware Corporation, for equitable subrogation, as well as attorneys' fees, costs, and interest, together with any such other relief as this Court deems just and proper.

### <u>Count 4- Breach of the Implied Warranty of Merchantability under Common Law</u>
**(Against Robertsdale Ace and Ace)**

55.     Bass reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

56.     This is an action against Robertsdale Ace and Ace for breach of the implied warranty of merchantability under the common law.

57.     Bass purchased drywall from Robertsdale Ace and Ace to be installed in the Homes.   Robertsdale Ace and Ace knew that Bass required and expected that drywall it distributed, supplied, and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and Bass justifiably relied on Robertsdale Ace's and Ace's skill and judgment to supply such drywall for the construction of residential homes.

11

58.     Pursuant to the relationship between the parties, Robertsdale Ace and Ace are deemed to have provided Bass with an implied warranty of merchantability as to the drywall materials distributed and/or sold by Robertsdale Ace and Ace.

59.     The drywall distributed, supplied, and/or sold by Robertsdale Ace and Ace for use in the construction of the Homes was not altered and/or otherwise substantively changed by Bass.

60.     Pursuant to common law, Robertsdale Ace and Ace warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

61.     Plaintiffs in the Complaint allege various claims against Bass for damages caused by defective drywall contained in the Homes.  Bass denies it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Bass is found liable to Plaintiffs, Robertsdale Ace and Ace breached the implied warranty of merchantability by distributing, supplied, and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

62.     As a result of the claims that have been filed against Bass, Bass has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Robertsdale Ace and Ace to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Bass to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Bass in this action and/or any other action brought by Plaintiffs against Bass, and/or the

settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Bass in defending these Claims.  Robertsdale Ace's and Ace's wrongful conduct also caused damages to Bass, including but not limited to Bass' loss of reputation, goodwill, and lost profits.

63.     Robertsdale Ace and Ace are aware of the alleged defective gypsum drywall, but Robertsdale Ace and Ace have failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, Bass demands judgment for damages in its favor and against Cross-Claim Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center," and Third-Party Defendant, Ace Hardware Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 5- Breach of the Implied Warranty of Merchantability under Alabama Code 7-2-314
**(Against Robertsdale Ace and Ace)**

64.     Bass reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

65.     This is an action against Robertsdale Ace and Ace for breach of the implied warranty of merchantability under Alabama Code 7-2-314.

66.     Bass purchased drywall from Robertsdale Ace and Ace to be installed in the Homes.  Robertsdale Ace and Ace knew that Bass required and expected that drywall it distributed, supplied, and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and Bass justifiably relied on Robertsdale Ace's and Ace's skill and judgment to supply such drywall for the construction of residential homes.

67.     Pursuant to the relationship between the parties, Robertsdale Ace and Ace are deemed to have provided Bass with an implied warranty of merchantability as to the drywall materials distributed and/or sold by Robertsdale Ace and Ace.

68.     The drywall distributed, supplied, and/or sold by Robertsdale Ace and Ace for use in the construction of the homes was not altered and/or otherwise substantively changed by Bass.

69.     Pursuant to Alabama Code 7-2-314, Robertsdale Ace and Ace warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

70.     Plaintiffs in the Complaint allege various claims against Bass for damages caused by defective drywall contained in the Homes.  Bass denies it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Bass is found liable to Plaintiffs, Robertsdale Ace and Ace breached the implied warranty of merchantability by distributing, supplied, and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

71.     As a result of the claims that have been filed against Bass, Bass has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Robertsdale Ace and Ace to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Bass to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Bass in this action and/or any other action brought by Plaintiffs against Bass, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Bass

in defending these Claims.  Robertsdale Ace's and Ace's wrongful conduct also caused damages to Bass, including but not limited to Bass' loss of reputation, goodwill, and lost profits.

72.     Robertsdale Ace and Ace are aware of the alleged defective gypsum drywall, but Robertsdale Ace and Ace have failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, Bass demands judgment for damages in its favor and against Cross-Claim Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center," and Third-Party Defendant, Ace Hardware Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

## Count 6- Breach of the Implied Warranty of Fitness
### (Against Robertsdale Ace and Ace)

73.     Bass reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

74.     This is an action against Robertsdale Ace and Ace for breach of the implied warranty of fitness.

75.     Bass purchased drywall from Robertsdale Ace and Ace to be installed in the Homes.

76.     Robertsdale Ace and Ace knew that Bass required and expected the drywall it distributed, supplied, and/or sold to be safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

77.     Bass justifiably relied on Robertsdale Ace's and Ace's skill and judgment to sell drywall fit for the particular purpose of constructing residential homes.

78.     Pursuant to the relationship between the parties, Robertsdale Ace and Ace are deemed to have provided Bass with an implied warranty of fitness as to the drywall materials distributed, supplied, and/or sold by Robertsdale Ace and Ace.

79.     The drywall distributed, supplied, and/or sold by Robertsdale Ace and Ace for use in the construction of the Homes was not altered and/or otherwise substantively changed by Bass.

80.     Robertsdale Ace and Ace impliedly warranted that the drywall was safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

81.     Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Bass denies that it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in providing that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Bass is found liable to Plaintiffs, Robertsdale Ace and Ace breached the implied warranty of fitness by distributing, supplying, and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

82.     As a result of the claims that have been filed against Bass, Bass has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Robertsdale Ace and Ace to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Bass to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Bass in this action and/or any other action brought by Plaintiffs against Bass, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Bass in defending these Claims.  Robertsdale Ace's and Ace's wrongful conduct also caused damages to Bass, including but not limited to Bass' loss of reputation, goodwill, and lost profits.

83.     Robertsdale Ace and Ace are aware of the alleged defective gypsum drywall, but Robertsdale Ace and Ace have failed to repair or replace the drywall.

**WHEREFORE**, Bass demands judgment for damages in its favor and against Cross-Claim Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center," and Third-Party Defendant, Ace Hardware Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

<u>**Count 7- Negligent Failure to Warn**</u>
**(Against Robertsdale Ace and Ace)**

84.     Bass reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

85.     Plaintiffs in the Complaint allege various claims against Bass for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

86.     Robertsdale Ace and Ace distributed, supplied, and/or sold the gypsum drywall to Bass that was installed in the Homes built by Bass.

87.     Robertsdale Ace and Ace owed Bass a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Bass about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn Bass about any problems or dangers in using the drywall for residential construction.

88.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in the Complaint,

Robertsdale Ace and Ace knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

89.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Robertsdale Ace and Ace knew or should have known that unless it warned Bass of the risk of using the drywall it distributed, sold, and/or supplied, Bass would suffer harm.  However, Robertsdale Ace and Ace failed to provide an adequate warning of such danger.

90.     Bass did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, Bass had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

91.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Robertsdale Ace and Ace breached their duty of care to Bass by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Bass about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn Bass about any problems or dangers in using the drywall for residential construction, about which Robertsdale Ace and Ace knew or reasonably should have known.

92.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Robertsdale Ace's and Ace's of care were the direct and proximate cause of Bass' injuries, losses, and damages.

93.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Robertsdale Ace and Ace knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Bass to substantial liability and damages.   If Robertsdale Ace and Ace had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Bass would ensue as a result of failing to disclose and/or warn of drywall defects.

94.     Without admitting any liability or damages to Plaintiffs, Bass was damaged by Robertsdale Ace's and Ace's breaches of its duties of care, which directly and proximately caused and/or exposed Bass to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Bass to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Bass in this action and/or any other action brought by Plaintiffs against Bass, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Bass in defending against these claims.   Robertsdale Ace's and Ace's wrongful conduct also caused damages to Bass, including but not limited to Bass' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Bass demands judgment for damages in its favor and against Cross-Claim Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center," and Third-

Party Defendant, Ace Hardware Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**Count 8- Breach of the Post-Sale Duty to Warn**
**(Against Robertsdale Ace and Ace)**

95.     Bass reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

96.     Plaintiffs in the Complaint allege various claims against Bass for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

97.     Robertsdale Ace and Ace distributed, supplied, and/or sold the gypsum drywall to Bass that was installed in the Homes built by Bass.

98.     To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Robertsdale Ace and Ace was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the time such drywall left Robertsdale Ace's and Ace's control, Robertsdale Ace and Ace knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

99.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Robertsdale Ace and Ace, as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Robertsdale Ace and Ace breached that duty by failing to properly investigate

20

and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

100.     To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

101.     Consumers, such as Bass, to whom a warning might have been provided could have been identified by Robertsdale Ace and Ace.

102.     A warning could have been effectively communicated to consumers such as Bass and acted on by them.

103.     At all material times, Robertsdale Ace and Ace knew or should have known of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Bass was unaware of potential dangers and/or risk of harm associated with the use of Robertsdale Ace's and Ace's drywall product in residential construction.

104.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable distributor, seller and/or supplier in Robertsdale Ace's and Ace's position would have provided a post-sale warning.

105.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Bass was damaged by Robertsdale Ace's and Ace's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Bass to substantial liability and damages, including but not

limited to any payments made or to be made on behalf of Bass to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Bass in this action and/or any other action brought by Plaintiffs against Bass, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Bass in defending against these claims. Robertsdale Ace's and Ace's wrongful conduct also caused damages to Bass, including but not limited to Bass' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Bass demands judgment for damages in its favor and against Cross-Claim Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center," and Third-Party Defendant, Ace Hardware Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>**Count 9- Strict Products Liability**</u>
**(Against Robertsdale Ace and Ace)**

106.     Bass reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

107.     This is an action, stated in the alternative, against Robertsdale Ace and Ace for strict products liability.

108.     At all material times, Robertsdale Ace and Ace were in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

109.     At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commence, distributed, supplied and/or sold by Robertsdale Ace and Ace to Bass.

110.     At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Robertsdale Ace and Ace, Robertsdale Ace and Ace intended that the drywall reach consumers and/or ultimate users of the drywall, such as Bass.

111.    Robertsdale Ace and Ace expected the gypsum drywall to reach Bass and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did, in fact, reach Bass and/or the Homes without substantial change affecting that condition.

112.    Plaintiffs in the Complaint allege various claims against Bass for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

113.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Robertsdale Ace and Ace directly and proximately caused and/or exposed Bass to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Bass to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Bass in this section and/or any other action brought by Plaintiffs against Bass, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Bass in defending against these claims.  Robertsdale Ace's and Ace's wrongful conduct also caused damages to Bass, including but not limited to Bass' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Bass demands judgment for damages in its favor and against Cross-Claim Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center," and Third-Party Defendant, Ace Hardware Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## Count 10- Strict Products Liability Failure to Warn
### (Against Robertsdale Ace and Ace)

114.    Bass reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

115.    This is an action, stated in the alternative, against Robertsdale Ace and Ace for strict products liability failure to warn.

116.    At all material times, Robertsdale Ace and Ace were in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

117.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Robertsdale Ace and Ace to Bass.

118.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Robertsdale Ace and Ace, Robertsdale Ace and Ace intended that the drywall reach consumers and/or ultimate users of the drywall, such as Bass.

119.    Robertsdale Ace and Ace expected the gypsum drywall to reach Bass and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Bass and/or the Homes without substantial change affecting that condition.

120.    Plaintiffs in the Complaint allege various claims against Bass for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

121.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction

involved a danger of which Robertsdale Ace and Ace were required to provide a warning. However, Robertsdale Ace and Ace failed to provide an adequate warning of such danger.

122.    Bass did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

123.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Robertsdale Ace and Ace failed to warn Bass of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Bass had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

124.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Robertsdale Ace's and Ace's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and  proximately caused and/or exposed Bass to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Bass to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Bass in this action and/or any other action brought by Plaintiffs against Bass, and/or settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Bass in defending against these claims.

Robertsdale Ace's and Ace's wrongful conduct also caused damages to Bass, including but not limited to Bass' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Bass demands judgment for damages in its favor and against Cross-Claim Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center," and Third-Party Defendant, Ace Hardware Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 11- Violations of the Alabama Deceptive Trade Practices Act, Alabama Code 8-19-1, et seq.
**(Against Robertsdale Ace and Ace)**

125.     Bass reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

126.     This is an action for violation of the Alabama Deceptive Trade Practices Act ("ADTPA" or the "Act"), Alabama Code 8-19-1, *et seq*.

127.     The purpose of ADTPA is "to protect the interest of both the consuming public and the legitimate businessperson."  Alabama Code 8-19-2.

128.     At all material times, Robertsdale Ace and Ace engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers such as Bass.

129.     Robertsdale Ace and Ace advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

130.     At the time Robertsdale Ace and Ace advertised, solicited, offered, distributed, supplied and/or sold the drywall, Robertsdale Ace and Ace represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

131.    Plaintiffs in the Complaint allege various claims against Bass for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property including but not limited to the Other Property in the Homes.

132.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Robertsdale Ace and Ace sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Robertsdale Ace and Ace knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

133.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged  in the Complaint, Plaintiffs' claims arise from Robertsdale Ace's and Ace's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

134.    To the extent Plaintiffs are successful in proving their claims, Robertsdale Ace's and Ace's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of ADPTA.

135.    Robertsdale Ace's and Ace's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall and/or its failure to disclose that the drywall unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as Bass acting reasonably in the same circumstances, to the consumer's detriment.  A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

136.    Robertsdale Ace's and Ace's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Bass.

137.    To the extent Plaintiffs are successful in proving their claims, Bass did not get what is bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Robertsdale Ace's and Ace's violations of ADTPA directly and proximately caused and/or exposed Bass to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Bass to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Bass in this action and/or any other action brought by Plaintiffs against Bass, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and

attorneys' fees incurred by Bass in defending against these claims.  Robertsdale Ace's and Ace's wrongful conduct also caused damages to Bass, including but not limited to Bass' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Bass demands judgment for damages in its favor and against Cross-Claim Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center," and Third-Party Defendant, Ace Hardware Corporation, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### Count 12- Breach of Contract
### (Against Robertsdale Ace and Ace

138.    Bass reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

139.    Plaintiffs in the Complaint allege various claims against Bass for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

140.    Pursuant to its oral contract with Bass, Robertsdale Ace and Ace supplied the drywall that was installed in the Homes.

141.    Pursuant to its oral contract with Bass, Robertsdale Ace and Ace owed Bass a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect and supply drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of Bass' customers; and, (ii) supply drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

142.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Robertsdale Ace and Ace knew or should have known that the drywall it supplied for the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

143.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Robertsdale Ace and Ace breached its contract with Bass by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the supplier of the drywall Robertsdale Ace and Ace supplied; (iii) supplying drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

144.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such contractual breaches were the direct and proximate cause of Bass' injuries, losses, and damages.

145.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, Robertsdale Ace and Ace knew or reasonably should have known that its acts and omissions in supplying drywall would expose Bass to substantial liability and damages.

146.    Without admitting any liability or damages to Plaintiffs, Bass was damaged by Robertsdale Ace's and Ace's breaches of its contract, which directly and proximately caused and/or exposed Bass to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Bass to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Bass in this action and/or any other action brought by Plaintiffs against Bass, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Bass in defending against these claims.  Robertsdale Ace's and Ace's contractual breach also caused damages to Bass, including but not limited to Bass' loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Bass demands judgment for damages in its favor and Cross-Claim Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center," and Third-Party Defendant, Ace Hardware Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 13- Unjust Enrichment
**(Against Robertsdale Ace and Ace)**

147.    Bass reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

148.    This is an action, stated in the alternative, against Robertsdale Ace and Ace for unjust enrichment.

149.    Plaintiffs in the Complaint allege various claims against Bass for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

150.    Robertsdale Ace and Ace distributed, supplied, and/or sold the gypsum drywall to Bass that was installed in the Homes built by Bass.

31

151.    Bass paid Robertsdale Ace and Ace for supplying the drywall for the Homes built by Bass.

152.    In delivering such payment, monies and/or funds to Robertsdale Ace and Ace, Bass conferred a benefit, *i.e.*, funds and profit, to Robertsdale Ace and Ace, which had knowledge thereof.

153.    Robertsdale Ace and Ace voluntarily accepted and retained the benefit conferred upon it by Bass.

154.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Robertsdale Ace's and Ace's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Bass to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Bass to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Bass in this action and/or any other action brought by Plaintiffs against Bass, and/or the Bass of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Bass in defending against these claims.

155.    The circumstances described herein under which Robertsdale Ace and Ace profited from selling and/or supplying drywall make it inequitable for Robertsdale Ace and Ace to retain those funds and profits.

156.    Bass has no adequate remedy at law.

**WHEREFORE**, Bass demands judgment for damages in its favor and Cross-Claim Defendant, Ace Home Center, Inc., d/b/a "Robertsdale Ace Home Center," and Third-Party

Defendant, Ace Hardware Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## BASS HOMES, INC.'S, JURY DEMAND

Bass also hereby demands a trial by jury.

Respectfully submitted,

**ADAMS AND REESE LLP**

s/Christopher A. D'Amour
CHRISTOPHER A. D'AMOUR (La. Bar # 26252)
MEGAN HAGGERTY GUY (La. Bar # 26316)
DAVID C. COONS (La. Bar # 32403)
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
*Attorneys for Defendant Bass Homes, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 21st day of December, 2010.

s/ David C. Coons