UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE MANUFACTURED | * | |
| DRYWALL PRODUCTS LIABILITY | * | MDL No. 2047 |
| LITIGATION | * | |
| | * | |
| | * | SECTON "L" |
| THIS DOCUMENT RELATES TO: | * | |
| | * | |
| Mary Anne Benes, et al. | * | JUDGE FALLON |
| vs. | * | |
| Knauf Gips KG., et al. | * | |
| | * | MAG. JUDGE WILKINSON |
| | * | |
| CASE NO.: 2:09-CV-6690-EEF-JCW | * | |

**************************************

DEFENDANT STEVEN R. CARTER, INC.'S
THIRD-PARTY COMPLAINT AGAINST TALMADGE DRYWALL, INC.,
AND CROSS-CLAIM AGAINST BLACK BEAR GYPSUM SUPPLY, INC.

COMES NOW Defendant/ Cross-Claimant/ Third-Party-Plaintiff, **Steven R. Carter, Inc.** ("**SRC**"), by and through its undersigned counsel, and alleges for its Third-Party Complaint against Third-Party Defendant, Talmadge Drywall, Inc. ("**Talmadge**"), and Cross-Claim against Defendant/Cross-Defendant, Black Bear Gypsum Supply, Inc. ("**Black Bear**"), as follows:

### The Parties, Jurisdiction, and Venue

1.    The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against SRC.

2.    The *Benes* Intervention Complaint[1] ("Plaintiffs' Omnibus Class Action Complaint in Intervention (III)") "incorporate[s] and adopt[s] the allegations of the *Gross* complaint[2] […] by reference."[3]

---

[1] *See* Documents 1777 and 1777-1.
[2] *See* Doc. 366.
[3] *See* Doc. 1777 at p. 2.

3.      The *Gross/Benes* Class Action Complaint ("**Omni III**") identifies SRC as a Defendant in the Builder/Developer Subclass.[4]

4.      SRC is named in Omni III by plaintiffs Roger Bowers, Michelle and Curtis Hubbard, and Isaac and Shanon Peltier.[5]

5.      Defendant/ Cross-Claimant/ Third-Party Plaintiff SRC was and is a Florida corporation doing business in Tampa, Florida, where this cause of action arose.  At all material times, SRC was a builder of residential homes in Florida.

6.      SRC constructed single-family residential homes for certain investors who ultimately sold the homes to the Bowers, Hubbard, and Peltier plaintiffs.

7.      The Plaintiffs allege that drywall used in SRC-constructed homes was defective and caused damages to the Plaintiffs.

8.      SRC denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

9.      Plaintiffs also name Defendant/ Cross-Defendant Black Bear as a member of the Distributor/ Supplier/ Importer/ Exporter/ Broker subclass.[6]  SRC adopts and incorporates, as if fully set forth herein, paragraph 1081 of Omni III identifying Black Bear and describing the nature of its business activities.[7]

10.     Upon information and belief, Third-Party Defendant Talmadge is an entity organized under Florida law with its principal place of business in Florida.  Talmadge is an installer of drywall and related building products

---

[4] *See* Doc. 1777-3 at p. 19.
[5] *See* Doc. 1777-3 at p. 38.
[6] *See* Doc. 1777-3 at p. 1.
[7] *See* Doc. 1777-1 at ¶ 1081 ("[Black Bear] is an entity or individual with a principal place of business at 2050 Tall Pines Drive, Suite B, Largo, Florida 33771.")

11.     Talmadge installed the drywall in each of the Bowers, Hubbard, and Peltier plaintiffs' homes.

12.     SRC brings this Cross-Claim pursuant to Federal Rule of Civil Procedure 13(g).

13.     SRC brings this Third-Party Complaint pursuant to Federal Rule of Civil Procedure 14.

14.     Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. § 1367 insofar as SRC's Cross-Claim and Third-Party Complaint arise from the same transactions or occurrences as Plaintiffs' action.  Venue in this district for coordinated or consolidated pretrial proceedings is consistent with the Transfer Order of the Judicial Panel on Multidistrict Litigation (JPML).  *See In re: Chinese-Manufactured Drywall Products Liability Litigation*, 629 F.Supp.2d 1346 (J.P.M.L. Jun. 15, 2009).  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and Third-Party Complaint.

## General Allegations

15.     As set forth in more detail in Omni III, Plaintiffs allege that their homes were built using defective drywall designed, manufactured, and processed in China, and that SRC (as builder) is liable for damages to Plaintiffs.

16.     Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances, and Plaintiffs' personal property (the "**Other Property**").

17.     Plaintiffs further allege that the drywall contained in their Homes was processed, distributed, sold, and/or installed by either or both of the Cross-Claim/ Third-Party Complaint Defendants.

18.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.[8]

19.     As a general contractor, SRC hired installer and Third-Party Defendant Talmadge to install drywall in certain Plaintiffs' homes.

20.     Upon information and belief, Talmadge procured drywall that was installed in the Homes from supplier and Cross-Claim Defendant Black Bear.

21.     At all material times, Talmadge and Black Bear knew that the drywall in question was going to be used in construction of residential homes.  Talmadge and Black Bear knew that SRC required and expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

22.     SRC did not know, could not have known, and was not made aware of any problem with the drywall.   The drywall processed, distributed, sold, and/or installed by Talmadge and Black Bear for use in the construction of the Homes was not altered and/or otherwise substantively changed by SRC.

23.     For the purpose of this Cross-Claim and Third-Party Complaint only, and not constituting an admission of Plaintiffs' allegations or liability for SRC, and without in any way adopting the Plaintiffs' allegations as true, the allegations set forth in the Plaintiffs' Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes

---

[8] N.B.: plaintiffs Isaac and Shanon Peltier do not allege personal injuries.

of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by allegedly-defective drywall in the Homes.

24.     Without admitting any liability of damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Plaintiffs' Complaint, at all material times, Talmadge and Black Bear knew or should have known of the drywall's applications, performance, and dangers.

25.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Plaintiffs' Complaint, Talmadge's and Black Bear's acts and omissions in processing, distributing, selling, and/or installing the defective drywall directly and proximately caused and/or exposed SRC to substantial liability and damages to Plaintiffs.

26.     SRC did not know, could not have known, and was never informed by Talmadge or Black Bear that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

27.     Consequently, Talmadge and Black Bear are liable for any tort or other fault with respect to the use of the allegedly-defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages.

28.     Talmadge and Black Bear are further liable to SRC for damages in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.  Additionally, Talmadge's and Black Bear's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill, lost profits, and attorneys' fees.

29.     All conditions precedent to the filing of this Cross-Claim and Third-Party Demand have been performed, excused, or otherwise waived.

### Defendant Steven R. Carter, Inc.'s Third-Party Complaint against Talmadge Drywall, Inc. (Counts 1-15)

### Count 1- Negligence
### (Against Talmadge Drywall, Inc.)

30.     SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

31.     Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

32.     Talmadge installed the drywall in the Homes.

33.     As such, Talmadge owed SRC a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect and install drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of SRC's customers; and, (ii) install drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

34.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Talmadge knew or should have known that the drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

35. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Talmadge breached its duty of care to SRC by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it installed in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Talmadge installed; (iii) acquiring, procuring, marketing, distributing, wholesaling installing, and/or selling drywll which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to install drywall that complied with all applicable building and industry standards.

36. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such breaches in Talmadge's duty of care were the direct and proximate cause of SRC's injuries, losses, and damages.

37. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, Talmadge knew or reasonably should have known that its acts and omissions in marketing and installing defective drywall would expose SRC to substantial liability and damages.  If Talmadge had exercised that degree of care that  prudent or reasonably cautious installer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to SRC would ensure as a result of marketing, installing defective drywall.

38.     Without admitting any liability or damages to Plaintiffs, SRC was damaged by Talmadge's breaches of its duties of care, which directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims.  Talmadge's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Talmadge Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 2- Common Law Indemnity
### (Against Talmadge Drywall, Inc.)

39.     SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

40.     Plaintiffs in the Complaint allege various claims against SRC for damages caused by defective drywall contained in the Homes.

41.     SRC is not and was not in the business of installing drywall and had no reason to know or to suspect that there were problems with the drywall installed by Talmadge.  SRC justifiably relied on Talmadge to install drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

42.     SRC is entirely without fault for the injuries alleged by Plaintiffs.

43.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Talmadge.

44.     A special relationship existed between Talmadge and SRC such that any liability imposed upon SRC in this matter will be secondary, passive, solely vicarious, constructive, derivative, or technical to Talmadge.  Talmadge installed drywall in the Homes.  Moreover, to the extent that plaintiffs are successful in proving their claims, the drywall installed by Talmadge was defective and wholly to blame for Plaintiffs' injuries.

45.     As a result of the claims that have been filed against SRC, SRC has incurred losses, damages, costs, attorneys' fees, and expenses due to the alleged failure of Talmadge to install drywall fit for its intended purpose, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

46.     If SRC is found to be liable to Plaintiffs, Talmadge is liable to SRC for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against SRC, including, without limitation, payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payments for the amount of any judgment entered against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against the claims brought by Plaintiffs.

**WHEREFORE**, SRC demands judgment for indemnity in its favor against Cross-Claim Defendant, Talmadge Drywall, Inc., for compensatory damages plus attorneys' fees, interest, and costs as damages, and for such other relief as the Court deems just and proper.

## Count 3- Contribution Pursuant to Florida Statute 768.31
### (Against Talmadge Drywall, Inc.)

47.     SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

48.     This is an action, stated in the alternative, against Talmadge for contribution pursuant to Section 768.31, Florida Statutes.

49.     Plaintiffs in the Complaint allege various claims against SRC for damages caused by defects in the drywall contained in the Homes.

50.     Without admitting any liability or damages to Plaintiffs, should SRC be found liable, Talmadge would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

51.     SRC has not caused or contributed to the damages alleged by the Plaintiffs in this action.

52.     To the extent that any common liability is found with respect to SRC, SRC hereby asserts its right of contribution against Talmadge for its pro rata share of the liability.

53.     Talmadge should be required to repay SRC for any loss, damages, costs, and expenses, including attorneys' fees, SRC is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against SRC, in excess of its pro rata share of any common liability.

**WHEREFORE**, SRC demands that judgment be entered against Cross-Claim Defendant, Talmadge Drywall, Inc., for its pro rata share of the liability, if any, found against SRC in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## Count 4- Equitable Subrogation
### (Against Talmadge Drywall, Inc.)

54.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

55.    This is an action, stated in the alternative, against Talmadge for equitable subrogation.

56.    Plaintiffs in the Complaint allege various claims against SRC for damages caused by defects in the drywall contained in the Homes.

57.    SRC is not and was not in the business of installing drywall and had no reason to know or to suspect that there were problems with the drywall installed by Talmadge.  SRC justifiably relied on Talmadge to install drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

58.    Without admitting any liability or damages to Plaintiffs, SRC is not primarily liable for any liability to the Plaintiffs.

59.    To the extent that SRC is required to pay damages for any fault of Talmadge to protect its own interests, and not as a volunteer, SRC would be entitled to reimbursement from Talmadge under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against SRC, including, without limitation, payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payments for the amount of any judgment entered against SRC and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against SRC, as well as reasonable costs and attorneys' fees incurred by SRC in defending against the claims brought by Plaintiffs.

60.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, SRC demands judgment in its favor and against Cross-Claim Defendant, Talmadge Drywall, Inc., for equitable subrogation, as well as attorneys' fees, costs, and interest, together with any such other relief as this Court deems just and proper.

### Count 5- Breach of the Implied Warranty of Merchantability under Common Law
#### (Against Talmadge Drywall, Inc.)

61.     SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

62.     This is an action against Talmadge for breach of the implied warranty of merchantability under the common law.

63.     Talmadge installed drywall in the Homes.  Talmadge knew that SRC required and expected that drywall it installed to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and SRC justifiably relied on Talmadge's skill and judgment to install such drywall for the construction of residential homes.

64.     Pursuant to the relationship between the parties, Talmadge is deemed to have provided SRC with an implied warranty of merchantability as to the drywall materials installed by Talmadge.

65.     The drywall installed by Talmadge for use in the construction of the homes was not altered and/or otherwise substantively changed by SRC.

66.     Pursuant to common law, Talmadge warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

67.     Plaintiffs in the Complaint allege various claims against SRC for damages caused by defective drywall contained in the Homes.  SRC denies it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and SRC is found liable to Plaintiffs, Talmadge breached the implied warranty of merchantability by installing drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

68.     As a result of the claims that have been filed against SRC, SRC has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Talmadge to install drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending these Claims. Talmadge's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill, and lost profits.

69.     Talmadge is aware of the alleged defective gypsum drywall, but Talmadge has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Talmadge Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

**Count 6- Breach of the Implied Warranty of Merchantability**
**under Florida Statute 672.314**
**(Against Talmadge Drywall, Inc.)**

70.     SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

71.     This is an action against Talmadge for breach of the implied warranty of merchantability under Section 672.314, Florida Statutes.

72.     Talmadge installed drywall in the Homes.  Talmadge knew that SRC required and expected that drywall it installed to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and SRC justifiably relied on Talmadge's skill and judgment to install such drywall for the construction of residential homes.

73.     Pursuant to the relationship between the parties, Talmadge is deemed to have provided SRC with an implied warranty of merchantability as to the drywall materials installed by Talmadge.

74.     The drywall installed by Talmadge for use in the construction of the homes was not altered and/or otherwise substantively changed by SRC.

75.     Pursuant to Florida Statute 672.314, Talmadge warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

76.     Plaintiffs in the Complaint allege various claims against SRC for damages caused by defective drywall contained in the Homes.  SRC denies it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is

defective and not merchantable and SRC is found liable to Plaintiffs, Talmadge breached the implied warranty of merchantability by installing drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

77.     As a result of the claims that have been filed against SRC, SRC has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Talmadge to install drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending these Claims. Talmadge's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill, and lost profits.

78.     Talmadge is aware of the alleged defective gypsum drywall, but Talmadge has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Talmadge Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 7- Breach of the Implied Warranty of Fitness
#### (Against Talmadge Drywall, Inc.)

79.     SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

80.     This is an action against Talmadge for breach of the implied warranty of fitness.

81.     Talmadge installed drywall in the Homes.

82.     Talmadge knew that SRC required and expected the drywall it installed to be safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

83.     SRC justifiably relied on Talmadge's skill and judgment to install drywall fit for the particular purpose of constructing residential homes.

84.     Pursuant to the relationship between the parties, Talmadge is deemed to have provided SRC with an implied warranty of fitness as to the drywall materials installed by Talmadge.

85.     The drywall installed by Talmadge for use in the construction of the Homes was not altered and/or otherwise substantively changed by SRC.

86.     Talmadge impliedly warranted that the drywall was safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

87.     Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  SRC denies that it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in providing that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and SRC is found liable to Plaintiffs, Talmadge breached the implied warranty of fitness by installing drywall that was defective and not reasonably fit for use in the construction of residential homes.

88.     As a result of the claims that have been filed against SRC, SRC has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Talmadge to install drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or

any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending these Claims. Talmadge's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill, and lost profits.

89.     Talmadge is aware of the alleged defective gypsum drywall, but Talmadge has failed to repair or replace the drywall.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Talmadge Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

<u>**Count 8- Negligent Failure to Warn**</u>
**(Against Talmadge Drywall, Inc.)**

90.     SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

91.     Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

92.     Talmadge installed the gypsum drywall in the Homes built by SRC.

93.     As such, Talmadge owed SRC a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it installed or disclose any adverse affects associated with the drywall; (ii) warn SRC about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn SRC about any problems or dangers in using the drywall for residential construction.

94.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Talmadge knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

95.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Talmadge knew or should have known that unless it warned SRC of the risk of using the drywall it installed, SRC would suffer harm.  However, Talmadge failed to provide an adequate warning of such danger.

96.     SRC did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, SRC had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

97.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Talmadge breached its duty of care to SRC by (i) failing to disclose any defects in the drywall materials it installed which it knew or reasonably should have known about; (ii) failing to warn SRC about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn SRC about any problems or

dangers in using the drywall for residential construction, about which Talmadge knew or reasonably should have known.

98. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Talmadge's duty of care were the direct and proximate cause of SRC's injuries, losses, and damages.

99. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Talmadge knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose SRC to substantial liability and damages. If Talmadge had exercised that degree of care that a prudent or reasonably cautious installer acting under the same circumstances would exert, it would or could have foreseen that damages to SRC would ensue as a result of failing to disclose and/or warn of drywall defects.

100. Without admitting any liability or damages to Plaintiffs, SRC was damaged by Talmadge's breaches of its duties of care, which directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims. Talmadge's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Talmadge Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 9- Breach of the Post-Sale Duty to Warn
**(Against Talmadge Drywall, Inc.)**

101.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

102.    Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

103.    Talmadge installed the gypsum drywall in the Homes built by SRC.

104.    To the extent Plaintiffs are successful in proving that drywall installed by Talmadge was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the time such drywall left Talmadge's control, Talmadge knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

105.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Talmadge, as the installer of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Talmadge breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

106.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

107.    Consumers, such as SRC, to whom a warning might have been provided could have been identified by Talmadge

108.    A warning could have been effectively communicated to consumers such as SRC and acted on by them.

109.    At all material times, Talmadge knew or should have known of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that SRC was unaware of potential dangers and/or risk of harm associated with the use of Talmadge's drywall product in residential construction.

110.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable installer in Talmadge's position would have provided a post-sale warning.

111.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, SRC was damaged by Talmadge's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and

attorneys' fees incurred by SRC in defending against these claims.   Talmadge's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Talmadge Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**Count 10- Strict Products Liability**
**(Against Talmadge Drywall, Inc.)**

112.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

113.    This is an action, stated in the alternative, against Talmadge for strict products liability.

114.    At all material times, Talmadge was in the business of installing gypsum drywall of the type contained in the Homes.

115.    At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commence and/or installed by Talmadge.

116.    At the time said drywall was placed into the stream of commerce and/or installed by Talmadge, Talmadge intended that the drywall reach consumers and/or ultimate users of the drywall, such as SRC.

117.    Talmadge expected the gypsum drywall to reach SRC and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did, in fact, reach SRC and/or the Homes without substantial change affecting that condition.

118.    Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

22

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

119.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall installed by Talmadge directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this section and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims. Talmadge's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Talmadge Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 11- Strict Products Liability Failure to Warn
**(Against Talmadge Drywall, Inc.)**

120.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

121.    This is an action, stated in the alternative, against Talmadge for strict products liability failure to warn.

122.    At all material times, Talmadge was in the business of installing gypsum drywall of the type contained in the Homes.

123.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce and/or installed by Talmadge.

124.    At the time said drywall was placed into the stream of commerce and/or installed by Talmadge, Talmadge intended that the drywall reach consumers and/or ultimate users of the drywall, such as SRC.

125.    Talmadge expected the gypsum drywall to reach SRC and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach SRC and/or the Homes without substantial change affecting that condition.

126.    Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

127.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Talmadge was required to provide a warning.  However, Talmadge failed to provide an adequate warning of such danger.

128.    SRC did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

129.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Talmadge failed to warn SRC of the unduly

hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.  Without a warning, SRC had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

130.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Talmadge's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims. Talmadge's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Talmadge Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 12- Violations of the Florida Deceptive and Unfair Trade Practices Act, Florida Statute 501.201, et seq.
### (Against Talmadge Drywall, Inc.)

131.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

132.     This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

133.     The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

134.     At all material times, SRC was a person and a consumer of drywall as defined under FDUTPA.

135.     At all material times, Talmadge engaged in trade or commerce by installing drywall for consumers, such as SRC.

136.     Talmadge installed the gypsum drywall in the Homes built by SRC.

137.     At the time Talmadge installed drywall, Talmadge represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

138.     Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property including but not limited to the Other Property in the Homes.

139.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Talmadge installed the drywall in the Homes, Talmadge knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

140.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged  in the Complaint, Plaintiffs' claims arise from Talmadge's unfair and deceptive conduct in installing defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

141.    To the extent Plaintiffs are successful in proving their claims, Talmadge's unfair and deceptive conduct in installing defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

142.    Talmadge's unfair and deceptive conduct in installing defective gypsum drywall and/or its failure to disclose that the drywall unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as SRC acting reasonably in the same circumstances, to the consumer's detriment.   A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.   A reasonable consumer would also presume that the installer of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

143.    Talmadge's unfair and deceptive conduct in installing defective drywall and/or its failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably

safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as SRC.

144.    To the extent Plaintiffs are successful in proving their claims, SRC did not get what is bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Talmadge's violations of FDUTPA directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims.  Talmadge's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Talmadge Drywall, Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

## Count 13- Unjust Enrichment
### (Against Talmadge Drywall, Inc.)

145.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

146.    This is an action, stated in the alternative, against Talmadge for unjust enrichment.

147.    Plaintiffs in the Complaint allege various claims against SRC for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

148.    Talmadge installed the gypsum drywall in the Homes built by SRC.

149.   Talmadge received money from SRC for installing the drywall in the Homes.

150.   In delivering such payment, monies and/or funds to Talmadge, SRC conferred a benefit, *i.e.*, funds and profit, to Talmadge, which had knowledge thereof.

151.   Talmadge voluntarily accepted and retained the benefit conferred upon it by SRC through Talmadge.

152.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Talmadge's acts and omissions in distributing, installing and/or selling defective drywall directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims.

153.   The circumstances described herein under which Talmadge profited from selling and/or installing drywall make it inequitable for Talmadge to retain those funds and profits.

154.   SRC has no adequate remedy at law.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Talmadge Drywall, Inc , in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 14- Breach of Contract
**(Against Talmadge Drywall, Inc.)**

155.   SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

156.    Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

157.    Pursuant to its oral contract with SRC, Talmadge installed the drywall that was installed in the Homes.

158.    Pursuant to its oral contract with SRC, Talmadge owed SRC a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect and install drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of SRC's customers; and, (ii) install drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

159.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Talmadge knew or should have known that the drywall it installed in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

160.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Talmadge breached its contract with SRC by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it installed in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling,

inspecting, investigating, and/or auditing the supplier of the drywall Talmadge installed; (iii) installing drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to install drywall that complied with all applicable building and industry standards.

161.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such contractual breaches were the direct and proximate cause of SRC's injuries, losses, and damages.

162.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, Talmadge knew or reasonably should have known that its acts and omissions in installing drywall would expose SRC to substantial liability and damages.

163.    Without admitting any liability or damages to Plaintiffs, SRC was damaged by Talmadge's breaches of its contract, which directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims.  Talmadge's contractual breach also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Talmadge Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

<u>**Count 15- Violations of Florida Building Code**</u>
**(Against Talmadge Drywall, Inc.)**

164.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

165.    Pursuant to Section 553.84, Florida Statutes, Talmadge is liable to SRC for violations of the Florida Building Code ("Code").

166.    Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

167.    Talmadge installed the drywall that was installed in the Homes.

168.    Plaintiffs may prove that the design and construction of Plaintiffs' homes do not comply with the Florida Building Code's requirements.

169.    Talmadge owed SRC a duty to comply with all applicable Florida Building Codes.

170.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Talmadge knew or should have known that the drywall it installed in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use in violation of the Florida Building Code

171.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint,

Talmadge violated the Florida Building Code by (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it installed in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the supplier of the drywall Talmadge installed; (iii) installing drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to install drywall that complied with all applicable building and industry standards.

172.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such Talmadge's actions are the direct and proximate cause of SRC's injuries, losses, and damages.

173.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, Talmadge knew or reasonably should have known that its acts and omissions in installing drywall would expose SRC to substantial liability and damages.

174.   Without admitting any liability or damages to Plaintiffs, SRC was damaged by Talmadge's violations of the Florida Building Code, which directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims.  Talmadge's contractual breach also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Talmadge Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Defendant Steven R. Carter, Inc.'s Cross-Claim against Black Bear Gypsum Supply, Inc. (Counts 16-28)

### Count 16- Negligence
### (Against Black Bear Gypsum Supply, Inc.)

175.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

176.    Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

177.    Black Bear distributed, supplied, and/or sold the drywall that was installed in the homes.

178.    As such, Black Bear owed SRC a duty to, among other things, exercise reasonable care to (i) investigated and/or inspect, market, distribute, supply, and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of SRC's customers; and, (ii) market, distribute, supply, and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

179.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint,

Black Bear knew or should have known that the drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

180.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Black Bear breached its duty of care to SRC by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold, and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Black Bear sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywll which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply SRC with drywall that complied with all applicable building and industry standards.

181.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such breaches in Black Bear's duty of care were the direct and proximate cause of SRC's injuries, losses, and damages.

182.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, Black Bear knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying, and/or selling defective drywall would expose SRC to substantial liability and damages.  If Black Bear had exercised that degree of care that  prudent or reasonably cautious distributor and/or

supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to SRC would ensure as a result of marketing, distributing, supplying, and/or selling defective drywall.

183.    Without admitting any liability or damages to Plaintiffs, SRC was damaged by Black Bear's breaches of its duties of care, which directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims.   Black Bear's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Black Bear Gypsum Supply, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 17- Common Law Indemnity
### (Against Black Bear Gypsum Supply, Inc.)

184.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

185.    Plaintiffs in the Complaint allege various claims against SRC for damages caused by defective drywall contained in the Homes.

186.    SRC is not and was not in the business of distributing, supplying, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied, and/or sold by Black Bear.   SRC justifiably relied on Black Bear to supply

drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

187.    SRC is entirely without fault for the injuries alleged by Plaintiffs.

188.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Black Bear.

189.    A special relationship existed between Black Bear and SRC such that any liability imposed upon SRC in this matter will be secondary, passive, solely vicarious, constructive, derivative, or technical to Black Bear.  Black Bear supplied drywall to be installed in the homes. Moreover, to the extent that plaintiffs are successful in proving their claims, the drywall distributed, sold, and/or supplied by Black Bear was defective and wholly to blame for Plaintiffs' injuries.

190.    As a result of the claims that have been filed against SRC, SRC has incurred losses, damages, costs, attorneys' fees, and expenses due to the alleged failure of Black Bear to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

191.    If SRC is found to be liable to Plaintiffs, Black Bear is liable to SRC for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against SRC, including, without limitation, payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payments for the amount of any judgment entered against SRC, and/or the settlement of Plaintiffs' claims, as well

as reasonable costs and attorneys' fees incurred by SRC in defending against the claims brought by Plaintiffs.

WHEREFORE, SRC demands judgment for indemnity in its favor against Cross-Claim Defendant, Black Bear Gypsum Supply, Inc., for compensatory damages plus attorneys' fees, interest, and costs as damages, and for such other relief as the Court deems just and proper.

### Count 18- Contribution Pursuant to Florida Statute 768.31
### (Against Black Bear Gypsum Supply, Inc.)

192.   SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

193.   This is an action, stated in the alternative, against Black Bear for contribution pursuant to Section 768.31, Florida Statutes.

194.   Plaintiffs in the Complaint allege various claims against SRC for damages caused by defects in the drywall contained in the Homes.

195.   Without admitting any liability or damages to Plaintiffs, should SRC be found liable, Black Bear would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

196.   SRC has not caused or contributed to the damages alleged by the Plaintiffs in this action.

197.   To the extent that any common liability is found with respect to SRC, SRC hereby asserts its right of contribution against Black Bear for its pro rata share of the liability.

198.   Black Bear should be required to repay SRC for any loss, damages, costs, and expenses, including attorneys' fees, SRC is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against SRC in this action and/or any other action brought by

Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against SRC, in excess of its pro rata share of any common liability.

**WHEREFORE**, SRC demands that judgment be entered against Cross-Claim Defendant, Black Bear Gypsum Supply, Inc., for its pro rata share of the liability, if any, found against SRC in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### Count 19- Equitable Subrogation
### (Against Black Bear Gypsum Supply, Inc.)

199.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

200.    This is an action, stated in the alternative, against Black Bear for equitable subrogation.

201.    Plaintiffs in the Complaint allege various claims against SRC for damages caused by defects in the drywall contained in the Homes.

202.    SRC is not and was not in the business of distributing, supplying, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied, and/or sold by Black Bear.  SRC justifiably relied on Black Bear to supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

203.    Without admitting any liability or damages to Plaintiffs, SRC is not primarily liable for any liability to the Plaintiffs.

204.    To the extent that SRC is required to pay damages for any fault of Black Bear to protect its own interests, and not as a volunteer, SRC would be entitled to reimbursement from Black Bear under equitable principles for any damages which are attributable to it related to the

claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against SRC, including, without limitation, payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payments for the amount of any judgment entered against SRC and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against SRC, as well as reasonable costs and attorneys' fees incurred by SRC in defending against the claims brought by Plaintiffs.

205.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, SRC demands judgment in its favor and against Cross-Claim Defendant, Black Bear Gypsum Supply, Inc., for equitable subrogation, as well as attorneys' fees, costs, and interest, together with any such other relief as this Court deems just and proper.

### Count 20- Breach of the Implied Warranty of Merchantability under Common Law
**(Against Black Bear Gypsum Supply, Inc.)**

206.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

207.    This is an action against Black Bear for breach of the implied warranty of merchantability under the common law.

208.    Talmadge purchased drywall from Black Bear to be installed in the Homes. Black Bear knew that SRC required and expected that drywall it distributed, supplied, and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and SRC justifiably relied on Black Bear's skill and judgment to supply such drywall for the construction of residential homes.

209.   Pursuant to the relationship between the parties, Black Bear is deemed to have provided SRC with an implied warranty of merchantability as to the drywall materials distributed and/or sold by Black Bear.

210.   The drywall distributed, supplied, and/or sold by Black Bear for use in the construction of the homes was not altered and/or otherwise substantively changed by SRC.

211.   Pursuant to common law, Black Bear warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

212.   Plaintiffs in the Complaint allege various claims against SRC for damages caused by defective drywall contained in the Homes.   SRC denies it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and SRC is found liable to Plaintiffs, Black Bear breached the implied warranty of merchantability by distributing, supplied, and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

213.   As a result of the claims that have been filed against SRC, SRC has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Black Bear to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending

these Claims.  Black Bear's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill, and lost profits.

214.    Black Bear is aware of the alleged defective gypsum drywall, but Black Bear has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Black Bear Gypsum Supply, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 21- Breach of the Implied Warranty of Merchantability under Florida Statute 672.314
**(Against Black Bear Gypsum Supply, Inc.)**

215.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

216.    This is an action against Black Bear for breach of the implied warranty of merchantability under Florida Statute 672.314.

217.    Talmadge purchased drywall from Black Bear to be installed in the Homes. Black Bear knew that SRC required and expected that drywall it distributed, supplied, and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and SRC justifiably relied on Black Bear's skill and judgment to supply such drywall for the construction of residential homes.

218.    Pursuant to the relationship between the parties, Black Bear is deemed to have provided SRC with an implied warranty of merchantability as to the drywall materials distributed and/or sold by Black Bear.

219.    The drywall distributed, supplied, and/or sold by Black Bear for use in the construction of the homes was not altered and/or otherwise substantively changed by SRC.

220.    Pursuant to Florida Statute 672.314, Black Bear warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

221.    Plaintiffs in the Complaint allege various claims against SRC for damages caused by defective drywall contained in the Homes.   SRC denies it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and SRC is found liable to Plaintiffs, Black Bear breached the implied warranty of merchantability by distributing, supplied, and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

222.    As a result of the claims that have been filed against SRC, SRC has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Black Bear to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending these Claims.   Black Bear's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill, and lost profits.

223.    Black Bear is aware of the alleged defective gypsum drywall, but Black Bear has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Black Bear Gypsum Supply, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 22- Breach of the Implied Warranty of Fitness
**(Against Black Bear Gypsum Supply, Inc.)**

224.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

225.    This is an action against Black Bear for breach of the implied warranty of fitness.

226.    Talmadge purchased drywall from Black Bear to be installed in the Homes.

227.    Black Bear knew that SRC required and expected the drywall it distributed, supplied, and/or sold to be safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

228.    SRC justifiably relied on Black Bear's skill and judgment to sell drywall fit for the particular purpose of constructing residential homes.

229.    Pursuant to the relationship between the parties, Black Bear is deemed to have provided SRC with an implied warranty of fitness as to the drywall materials distributed, supplied, and/or sold by Black Bear.

230.    The drywall distributed, supplied, and/or sold by Black Bear for use in the construction of the Homes was not altered and/or otherwise substantively changed by SRC.

231.    Black Bear impliedly warranted that the drywall was safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

232.    Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  SRC denies that it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in providing that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and SRC is found liable to Plaintiffs, Black Bear breached the implied warranty of fitness by distributing, supplying, and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

233.    As a result of the claims that have been filed against SRC, SRC has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Black Bear to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending these Claims.  Black Bear's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill, and lost profits.

234.    Black Bear is aware of the alleged defective gypsum drywall, but Black Bear has failed to repair or replace the drywall.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Black Bear Gypsum Supply, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

## Count 23- Negligent Failure to Warn
### (Against Black Bear Gypsum Supply, Inc.)

235.     SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

236.     Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

237.     Black Bear distributed, supplied, and/or sold the gypsum drywall to Talmadge that was installed in the Homes built by SRC.

238.     Black Bear owed SRC a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn SRC about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn SRC about any problems or dangers in using the drywall for residential construction.

239.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Black Bear knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

240.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Black Bear knew or should have known that unless it warned

SRC of the risk of using the drywall it distributed, sold, and/or supplied, SRC would suffer harm. However, Black Bear failed to provide an adequate warning of such danger.

241.    SRC did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, SRC had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

242.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Black Bear breached its duty of care to SRC by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn SRC about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn SRC about any problems or dangers in using the drywall for residential construction, about which Black Bear knew or reasonably should have known.

243.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Black Bear's duty of care were the direct and proximate cause of SRC's injuries, losses, and damages.

244.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Black Bear knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose SRC to substantial liability and damages.  If Black Bear had

exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to SRC would ensue as a result of failing to disclose and/or warn of drywall defects.

245.   Without admitting any liability or damages to Plaintiffs, SRC was damaged by Black Bear's breaches of its duties of care, which directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims.   Black Bear's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Black Bear Gypsum Supply, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 24- Breach of the Post-Sale Duty to Warn
**(Against Black Bear Gypsum Supply, Inc.)**

246.   SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

247.   Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

248.    Pursuant to Talmadge's contract with SRC, Black Bear distributed, supplied, and/or sold the gypsum drywall to Talmadge that was installed in the Homes built by SRC.

249.    To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Black Bear was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the time such drywall left Black Bear's control, Black Bear knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

250.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Black Bear, as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction. Black Bear breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

251.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

252.    Consumers, such as SRC, to whom a warning might have been provided could have been identified by Black Bear

253.    A warning could have been effectively communicated to consumers such as SRC and acted on by them.

254.    At all material times, Black Bear knew or should have known of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that SRC was unaware of potential dangers and/or risk of harm associated with the use of Black Bear's drywall product in residential construction.

255.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable distributor, seller and/or supplier in Black Bear's position would have provided a post-sale warning.

256.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, SRC was damaged by Black Bear's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims.  Black Bear's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Black Bear Gypsum Supply, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 25- Strict Products Liability
### (Against Black Bear Gypsum Supply, Inc.)

257.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

258.    This is an action, stated in the alternative, against Black Bear for strict products liability.

259.    At all material times, Black Bear was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

260.    At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commence, distributed, supplied and/or sold by Black Bear to Talmadge pursuant to Talmadge's contract with SRC.

261.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Black Bear, Black Bear intended that the drywall reach consumers and/or ultimate users of the drywall, such as SRC.

262.    Black Bear expected the gypsum drywall to reach SRC and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did, in fact, reach SRC and/or the Homes without substantial change affecting that condition.

263.    Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

264.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream

of commerce, supplied and/or sold by Black Bear directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this section and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims.  Black Bear's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Black Bear Gypsum Supply, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 26- Strict Products Liability Failure to Warn
### (Against Black Bear Gypsum Supply, Inc.)

265.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

266.    This is an action, stated in the alternative, against Black Bear for strict products liability failure to warn.

267.    At all material times, Black Bear was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

268.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Black Bear to Talmadge pursuant to Talmadge's contract with SRC.

269.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Black Bear, Black Bear intended that the drywall reach consumers and/or ultimate users of the drywall, such as SRC.

270.    Black Bear expected the gypsum drywall to reach SRC and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach SRC and/or the Homes without substantial change affecting that condition.

271.    Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

272.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Black Bear was required to provide a warning.  However, Black Bear failed to provide an adequate warning of such danger.

273.    SRC did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

274.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Black Bear failed to warn SRC of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.  Without a

warning, SRC had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

275.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Black Bear's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims.  Black Bear's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Black Bear Gypsum Supply, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 27- Violations of the Florida Deceptive and Unfair Trade Practices Act, Florida Statute 501.201, et seq.
**(Against Black Bear Gypsum Supply, Inc.)**

276.     SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

277.     This is an action for violation of  §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

278.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

279.    At all material times, SRC was a person and a consumer of drywall as defined under FDUTPA.

280.    At all material times, Black Bear engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as SRC.

281.    Black Bear advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

282.    At the time Black Bear advertised, solicited, offered, distributed, supplied and/or sold the drywall, Black Bear represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

283.    Plaintiffs in the Complaint allege various claims against SRC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property including but not limited to the Other Property in the Homes.

284.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Black Bear sold, advertised, solicited, offered, distributed and/or supplied the drywall that was

installed in the Homes, Black Bear knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

285.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged  in the Complaint, Plaintiffs' claims arise from Black Bear's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

286.    To the extent Plaintiffs are successful in proving their claims, Black Bear's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

287.    Black Bear's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall and/or its failure to disclose that the drywall unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as SRC acting reasonably in the same circumstances, to the consumer's detriment.  A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the distributor or supplier of such

gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

288.    Black Bear's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as SRC.

289.    To the extent Plaintiffs are successful in proving their claims, SRC did not get what is bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Black Bear's violations of FDUTPA directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims.  Black Bear's wrongful conduct also caused damages to SRC, including but not limited to SRC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Black Bear Gypsum Supply, Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

## Count 28- Unjust Enrichment
### (Against Black Bear Gypsum Supply, Inc.)

290.    SRC reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

291.    This is an action, stated in the alternative, against Black Bear for unjust enrichment.

292.    Plaintiffs in the Complaint allege various claims against SRC for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

293.    Pursuant to Talmadge's contract with SRC, Black Bear distributed, supplied, and/or sold the gypsum drywall to Talmadge that was installed in the Homes built by SRC.

294.    Pursuant to Talmadge's contract with SRC, Talmadge paid Black Bear for supplying the drywall for the Homes built by SRC.

295.    Black Bear received money from SRC through Talmadge as a result of SRC's purchases of defective drywall installed in the Homes.

296.    In delivering such payment, monies and/or funds to Black Bear, SRC (through Talmadge) conferred a benefit, *i.e.*, funds and profit, to Black Bear, which had knowledge thereof.

297.    Black Bear voluntarily accepted and retained the benefit conferred upon it by SRC through Talmadge.

298.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Black Bear's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed SRC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of

SRC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against SRC in this action and/or any other action brought by Plaintiffs against SRC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by SRC in defending against these claims.

299.    The circumstances described herein under which Black Bear profited from selling and/or supplying drywall make it inequitable for Black Bear to retain those funds and profits.

300.    SRC has no adequate remedy at law.

**WHEREFORE**, SRC demands judgment for damages in its favor and against Cross-Claim Defendant, Black Bear Gypsum Supply, Inc , in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>**STEVEN R. CARTER, INC.'S, JURY DEMAND**</u>

SRC also hereby demands a trial by jury.

Respectfully submitted,

**ADAMS AND REESE LLP**

<u>s/Christopher A. D'Amour</u>
CHRISTOPHER A. D'AMOUR (La. Bar # 26252)
MEGAN HAGGERTY GUY (La. Bar # 26316)
DAVID C. COONS (La. Bar # 32403)
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
***Attorneys for Defendant Steven R. Carter, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 23rd day of December, 2010.

s/ David C. Coons_____