UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| THIS DOCUMENT RELATES TO: | * * * | SECTON "L" |
| Mary Anne Benes, et al.<br>vs.<br>Knauf Gips KG., et al. | * * * * | JUDGE FALLON |
| | * * | MAG. JUDGE WILKINSON |
| CASE NO.: 2:09-CV-6690-EEF-JCW | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORNADUM IN SUPPORT OF
### STEVEN R. CARTER, INC.'S RULE 12(B) MOTION TO DISMISS

Defendant Steven R. Carter, Inc. ("**SRC**"), files this Memorandum in Support of its Rule 12(b) Motion to Dismiss the claims brought against it in the *Gross/Benes* Class Action Complaint ("**Omni III**"). SRC is named in Omni III by Roger Bowers, Michelle and Curtis Hubbard, and Isaac and Shanon Peltier (collectively, the "**Plaintiffs**").

SRC is a family-owned and operated general contractor of single-family homes in Florida. SRC has never manufactured, imported, distributed, or marketed drywall. SRC hired sub-contractors to purchase and install drywall for the homes subject to this case. SRC built the Plaintiffs' homes for investors who, in turn, sold the properties to the Plaintiffs. SRC had absolutely no knowledge of any alleged drywall defects. If any entities knew or should have known of such defects, they are the drywall manufacturers, importers, suppliers, and installers. In short, SRC does not belong in Plaintiffs' "catch all" complaint and should be dismissed.

I.  **SUMMARY OF ARGUMENT**

Plaintiffs' pleading fails to state a cause of action. This Court should dismiss SRC from this case for the following non-exclusive reasons:

- The negligence claims against SRC fail as a matter of law. SRC sold each of the Plaintiffs' homes to investors who later sold the properties to the Plaintiffs. SRC owed the Plaintiffs no duty.

- Plaintiffs' claim for negligence per se is predicated on SRC's alleged breach of state building codes. Under Florida law, violations of state building codes cannot establish per se negligence. Furthermore, Plaintiffs do not even identify the codes that SRC violated.

- Plaintiffs' strict liability claim fails because SRC is not a drywall manufacturer, nor is drywall a "product" under state law.

- Plaintiffs' tort claims are barred by the Economic Loss Rule. This rule prevents a contractual party from seeking damages in tort. Although the Plaintiffs are second owners of the homes built by SRC, they are still barred from bringing tort claims against SRC for economic losses.

- Plaintiffs lack the requisite contractual privy with SRC to raise warranty claims.

- Plaintiffs' claim for private nuisance is without merit because SRC did not have possession over the property.

- The overly-broad allegation that SRC violated "various consumer Protection Acts" is a claim for fraud that requires specific pleading, which the Plaintiffs do not offer.

- Plaintiffs do not explain how their remedies at law are insufficient as to permit injunctive relief and medical monitoring. Furthermore, medical monitoring is not permitted under Florida law.
- Plaintiffs did not "confer a benefit" on SRC, foreclosing their unjust enrichment claim.

## II. BACKGROUND

The *Benes* Intervention Complaint[1] ("Plaintiffs' Omnibus Class Action Complaint in Intervention (III)") "incorporate[s] and adopt[s] the allegations of the *Gross* complaint [...] by reference."[2] The *Gross/Benes* Class Action Complaint ("**Omni III**") identifies SRC as a Defendant in the Builder/Developer Subclass.[3] SRC is named in Omni III by the following Plaintiffs:

- Roger Bowers,
- Michelle and Curtis Hubbard, and
- Isaac and Shanon Peltier.[4]

SRC built each of the Plaintiffs' homes for investors ("first owners") who purchased the homes from SRC and then sold them to the second owner Plaintiffs.

The general claim by Plaintiffs is that SRC built homes containing defective drywall about which SRC knew or should have known. In reality, SRC had absolutely no knowledge that the drywall was defective. SRC is named in this litigation alongside many purported manufacturers, importers, suppliers, and installers of Chinese Drywall. But SRC had nothing to do with the manufacture, marketing, distribution, or installation of that drywall. Plaintiffs'

---

[1] *See* Documents 1777 and 1777-1.
[2] *See* Doc. 1777 at p. 2. (N.B.: the *Gross* Complaint is found at Doc. 366).
[3] *See* Doc. 1777-3 at p. 19.
[4] *See* Doc. 1777-3 at p. 38.

Complaint offers a laundry list of generic theories of liability without fully distinguishing between, *inter alia*, homebuilders and other defendants or first and second owner plaintiffs.

The Complaint also fails to distinguish between Plaintiffs who claim personal injuries and those who do not. Of the Plaintiffs bringing claims against SRC, Roger Bowers claims personal injuries to himself and Gail Bowers;[5] Curtis and Michelle Hubbard claim personal injuries to themselves and their two children.[6] But Isaac and Shanon Peltier do not allege personal injuries.[7] In its "Plaintiff Profile Form- Residential Properties," to be completed by all Plaintiffs, the Court instructs that, "Personal injuries include claims for mental anguish and medical monitoring."[8] Yet the Plaintiffs bring complaints such as medical monitoring without clarifying that these personal injury claims are not raised by all Plaintiffs.

Table 1, below, lists the Plaintiffs' fifteen counts to illustrate the "catch-all" nature of Plaintiffs' Complaint.

| Table 1: Plaintiffs' *Gross/Benes* Class Action Complaint ("Omni III")[9] (highlighted Counts do not apply to SRC) | | |
|---|---|---|
| **Plaintiffs' Count Number** | **Defendants against which Count is purportedly directed** | **Plaintiffs' Claim** |
| I | All Defendants | Negligence |
| II | All Defendants | Negligence Per Se |
| III | All Defendants | Strict Liability |
| IV | All Defendants | Breach of Express and/or Implied Warranties |
| V[10] | Builders Only (on behalf of Plaintiffs who own condominiums in the state of Florida) | Breach of the Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes Section 718.203 |
| VI | Builders Only | Breach of the Implied Warranty of Habitability |
| VII | Builders Only | Breach of Contract |
| VIII[11] | Louisiana Builders | Violation of the Louisiana New Home Warranty Act (on |

---

[5] *See* the Bowers' Plaintiff Profile Form at p. 1, attached as Exhibit "A."
[6] *See* the Hubbards' Plaintiff Profile Form at p. 1, attached as Exhibit "B."
[7] *See* the Peltiers' Plaintiff Profile Form at p. 1, attached as Exhibit "C."
[8] *Id.*
[9] *See* Documents 1777 and 1777-1.
[10] Count V does not apply to SRC because Plaintiffs do not own Florida condominiums.
[11] Count VIII does not apply to SRC because SRC is not a Louisiana builder. SRC built Plaintiffs' homes in Florida.

4

|  | Only | Behalf of Plaintiffs who own Homes in the State of LA) |
|---|---|---|
| IX[12] | Louisiana Plaintiffs against all Defendants | Redhibition |
| X[13] | Manufacturing Defendants (Pleaded in the Alternative against Distributor Defendants) | Louisiana Products Liability Act |
| XI | All Defendants | Private Nuisance |
| XII | All Defendants | Negligent Discharge of a Corrosive Substance |
| XIII | All Defendants | Unjust Enrichment |
| XIV | All Defendants | Violation of Consumer Protection Act |
| XV | All Defendants | Equitable and Injunctive Relief and Medical Monitoring |

Of Plaintiffs' fifteen counts, four do not apply to SRC (V, VIII, IX, and X); seven are tort-based claims (I, II, III, XI, XII, XIII, XV); three are contract claims (IV, VI, and VII); and one is statutory (XIV). None of the claims applicable to SRC states a claim for which relief can be granted. Every one of Plaintiffs' claims against SRC should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

## III.  ARGUMENT

### A. Plaintiffs fail to state a claim for negligence (Counts I and XII).

Plaintiffs' negligence claims highlight the "shotgun" approach they take in this litigation. Omni III alleges that SRC owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question. *See* Doc. 1777-1 at ¶ 1461. The Complaint further alleges that SRC had a duty to provide Plaintiffs with certain warnings about the drywall. *See* Doc. 1771-1 at ¶ 1464.

SRC simply did not design, manufacture, export, import, distribute, deliver, supply, inspect, market, or sell drywall to the Plaintiffs. Even the Plaintiffs identify SRC as a

---

[12] Count IX does not apply to SRC because SRC is not a Louisiana builder. SRC built Plaintiffs' homes in Florida.
[13] Count X does not apply to SRC because Plaintiffs identify SRC in neither the manufacturing nor distributor classes.

5

"Developer/Builder." *See* Doc. 1777-3 at p. 19. SRC hired an installer to purchase and install the drywall. SRC built the Plaintiffs' homes pursuant to its contracts with the respective original owners.

It is a bedrock principle of tort law that a negligence claim requires the plaintiff to prove, *inter alia*, that the defendant owed a <u>duty</u> to the plaintiff, and that the duty was <u>breached</u>. *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (explaining that, under Florida law, "failure to establish any one of these elements is fatal to the plaintiff's case."). Plaintiffs cannot prove these prerequisites to a negligence claim. SRC owed no duty of care to the Plaintiffs concerning their drywall. SRC had no relationship with the second owner Plaintiffs. SRC sold each of Plaintiffs' homes to investors who later sold the properties to the Plaintiffs.

Additionally, drywall is not the kind of "inherently dangerous" product that carries a duty to inspect or warn. Under Florida law, manufacturers, retailers, and distributors have a duty to inspect or warn <u>only</u> when the product is considered "inherently dangerous." *See O'Connor v. Kawasaki Motors Corp.*, 699 F.Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F.Supp. 481, 483-84 (S.D. Fla. 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous."). SRC is <u>not</u> a manufacturer, retailer, or distributor of drywall. SRC owed no duty to inspect the drywall or warn second owners of possible defects unknown to SRC because SRC is not a manufacturer, retailer, or distributor of drywall and drywall is not inherently dangerous.

SRC had no knowledge of any defective drywall conditions. The drywall in question entered the Plaintiffs' homes through installers that purchased the drywall from suppliers. SRC cannot be held liable for latent defects absent actual or implied knowledge of those defects. *See*

*Carter v. Hector Supply Co.*, 128 So.2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action… only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer Chem. Co.*, 515 So.2d 324, 326 (Fla. 3d DCA 1987).

Absent an "inherently dangerous" product or actual/implied knowledge—neither of which exists in this case—Plaintiffs' negligence claims fail as a matter of law. The self-serving and unsupported assertion that SRC "knew or should have known" that the drywall would "harm" Plaintiffs (*see* Doc. 1777-1 at ¶ 1461) does not suffice to state a claim under negligence, and Plaintiffs' Counts I and XII should be dismissed.

### B. Plaintiffs do not state a claim for negligence per se (Count II).

Plaintiffs fail to set forth the essential elements of a negligence per se claim. Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a particular class of persons from a particular type of injury." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So.2d 198, 201 (Fla. 1973). Plaintiffs do not identify a statute that SRC allegedly violated, much less explain how that violation occurred. Instead, the Plaintiffs assert that "Defendants," as an undifferentiated group, violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes." *See* Doc. 1777-1 at ¶ 1471. Once again, this self-serving, conclusory statement does not identify a specific statute establishing a duty to protect a particular class of persons. Such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Additionally, the "State and local Building Codes" that Plaintiffs claim SRC violated are "designed to protect the general public rather than a particular class of individuals." *Russ v. Wollheim*, 915 So.2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). Violations of a building code cannot establish per se negligence. *See Russ v. Wollheim*, 915 So. 2d 1285, 1286, n1 (Fla. 2d DCA 2005) (citing *Grand Union Co. v. Rocker*, 454 So. 2d 14 (Fla. 3d DCA 1984)) ("A building code is designed to protect the general public rather than a particular class of individuals, and therefore, violation of a building code is merely evidence of negligence.") Plaintiffs do not identify the alleged code violations or explain how the codes exist to protect Plaintiffs from their alleged injuries. Plaintiffs' negligence per se claim should be dismissed.

### C. Plaintiffs' strict liability claim (Count III) fails under Florida law.

Plaintiffs' strict liability claim is premised on the false assumption that SRC manufactured or distributed drywall, which it did not. Count III alleges that SRC was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." *See* Doc. 1777-1 at ¶ 1476. But even the Plaintiffs identify SRC as a "Developer/Builder." *See* Doc. 1777-3 at p. 19. SRC never distributed, delivered, supplied, inspected, marketed, or sold drywall.

Strict products liability is reserved for product manufacturers and distributors; it does not apply to a homebuilder like SRC.[14] *See Ugaz v. American Airlines, Inc.*, 576 F.Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claims "are the manufacturers and perhaps other persons in the chain of distribution."); *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between

---

[14] Furthermore, drywall is not a "product" for purposes of this tort. Under Florida strict liability law, drywall is considered a "structural improvement," as it was an integral part of Plaintiffs' homes. *See Plaza v. Fisher Dev., Inc.*, 971 So.2d 918, 922-24 (Fla. 3d DCA 2007). "Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc.* No. 07-80767-CIV, 2008 WL 5111260, p. 4 (S.D. Fla. 2008).

8

manufacturer and installer of allegedly-defective product for purposes of strict liability). Because SRC is a builder that never manufactured or distributed the Plaintiffs' drywall, the Plaintiffs' strict liability claim against SRC must be dismissed.

### D. Plaintiffs' tort claims (Counts I, II, III, XI, XII, XIII, and XV) are barred in whole or in part by the Economic Loss Rule.

The Economic Loss Rule ("**ELR**") bars plaintiffs from circumventing their contractual arrangements through allegations in tort. *See Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 536 & n. 1 (Fla. 2004). Florida law applies the ELR in two contexts:

> (1) The contractual privity ELR where two parties are in privity of contract, and
> (2) the products liability ELR where a defective product causes damage, but only to itself.

*See* this Court's January 13, 2010, "Order & Reasons," at p. 22, which applies by its terms to all drywall MDL cases.

Florida courts have defined economic loss in contexts such as this one as "damages for inadequate value, costs of repair and replacement of the defective product," and "disappointed economic expectations." *See, e.g., Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1246 (Fla. 1993). Some Plaintiffs, like the *Casa Clara* homeowners, seek purely economic damages, which are, "protected by contract law, rather than tort law."

Although the Plaintiffs are second owners of the homes built by SRC, they are still barred from bringing tort claims against SRC for economic losses. In *Casa Clara*, the Florida Supreme Court affirmed the dismissal of homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties. *Id.* at 1248. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. *Id.* at 1247. Because the

9

plaintiffs were seeking only economic damages, the ELR barred their tort claims against the supplier. *Id.* at 1246-48.

The claims of plaintiffs Isaac and Shanon Peltier, who do not allege personal injuries, should be dismissed because their claims are purely economic. The other plaintiffs' economic claims should be dismissed as well.

### E. Plaintiffs' warranty claims (Counts IV and VI) and breach of contract claim (Count VII) against SRC should be dismissed because Plaintiffs are second owners of their homes and lack contractual privity with SRC.

In Counts IV and VI, Plaintiffs assert claims of breach of express and implied warranties. The Plaintiffs' Complaint does not identify the source of these purported warranties or how SRC might have breached them. Plaintiffs also allege breach of contract in Count VII without specifying SRC's contractual duty. The claims in Counts IV, VI, and VII should be dismissed because SRC did not have a contract with the Plaintiffs.

A plaintiff suing in warranty, "must be in privity of contract with the defendant." *Weiss v. Johansen*, 898 So.2d 1009, 1012 (Fla. 4th DCA 2005); *Cruz v. Mylan, Inc.*, No. 8:09-CV-1106-T17-EAJ, 2010 WL 598688, p. 2 (M.D. Fla. 2010). The Plaintiffs never contracted with SRC. Plaintiffs purchased their homes from third parties. Without a showing of contractual privity with SRC, the Plaintiffs' express and implied warranty claims cannot survive. *See, e.g., Borchardt v. Mako Marine Intern., Inc.*, No. 08-61199-CIV, 2009 WL 3856678, p. 4 (S.D. Fla. 2009) (dismissing warranty claims where there was "no allegation... to establish that there [was] privity of contract."). Additionally, Plaintiffs' breach of contract claim fails because, "it is elementary that a person not a party to nor in privy with a contract does not have the right to sue for its breach." *Cibran Enters. Inc. v. BP Prods. N.A., Inc.*, 365 F.Supp. 2d 1241, 1251 (S.S. Fla.

2009). Because no contract existed between SRC and the Plaintiffs, SRC owed Plaintiffs no contractual obligations. Plaintiffs' warranty and breach of contract claims against SRC fail.

### F. Plaintiffs' unjust enrichment claim (Count XIII) fails because Plaintiffs are second owners who have no contractual privity with SRC.

As second owners of their homes, the Plaintiffs cannot maintain an unjust enrichment claim against SRC. The elements of unjust enrichment are that

> (1) <u>the plaintiff has conferred a benefit on the defendant;</u> (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that <u>it would be inequitable for the defendant to retain the benefit</u> without paying fair value for it.

*Commerce Partnership 8098 Ltd. v. Equity Contracting Co.*, 695 So.2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So.2d 1222, 1227 (Fla. 1st DCA 2005).

The Plaintiffs cannot meet the first or fourth elements of an unjust enrichment claim. As second owners, the Plaintiffs cannot show that they "conferred a benefit" on SRC. Indeed, the Plaintiffs did not pay SRC anything to build their homes, which SRC constructed for third parties. Under Florida law, "the plaintiffs must show they directly conferred a benefit on the [defendant]" to sustain a claim for unjust enrichment. *Am. Safety Ins. Serv. v. Griggs*, 959 So.2d 322, 331 (Fla. 5th DCA 2007) (citing *Peoples National Bank of Commerce v. First Union National Bank of Florida*, 667 So.2d 876, 879 (Fla. 3d DCA 1996) (affirming the dismissal of a claim for unjust enrichment brought by a participating lender in development project against a co-participating lender with which the plaintiff had no relationship)). The Plaintiffs did not "enrich" SRC in any sense.

Additionally, there is nothing inequitable or unjust about permitting SRC to retain whatever benefit it received for building the homes in which Plaintiffs now live. After all, SRC paid a third party to install the subject drywall. One Florida court explains that,

> [t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit.

*Maloney v. Therm Alum Industries Corp.*, 636 So.2d 767, 770 (Fla. 4th DCA 1994), *overruled on other grounds by Commerce Partnership*, 695 So.2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred").

Because the Plaintiffs did not "enrich" SRC and whatever compensation SRC received from the original owners was not retained "unjustly," Plaintiffs' claim for unjust enrichment fails and should be dismissed.

### G. Plaintiffs claim against SRC for private nuisance (Count XI) should be dismissed because SRC lacks the requisite possession over the allegedly-nuisance property.

An action for private nuisance requires the claimant to establish an injury to his own property in connection with the use of the real property of someone else. *See Jones v. J.B. Trawick*, 75 So.2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").

The Plaintiffs' Complaint does not allege that SRC had ownership or possession of property that injured the Plaintiffs. On the contrary, the nuisance claim is predicated entirely on the allegation that "structures owned by Plaintiffs" are to blame. *See* Doc. 1777-1 at ¶ 1556. That allegation does not state a claim for private nuisance. *See, e.g.: Morgan v. W.R. Grace & Co.*, 779 So.2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim

12

"based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *see also Weaver v. United States*, 809 F.Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]"). Because SRC did not possess the property in question, Plaintiffs' nuisance claim has no merit.

### H. In Count XIV, Plaintiffs fail to plead specific facts concerning SRC's allegedly-deceptive acts.

Plaintiffs broadly allege violations of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("**FDUTPA**"). *See* Doc. 1777-1 at ¶ 1574. A FDUTPA claim comprises three distinct elements: (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages." *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, p. 5 (S.D. Fla. 2007).

Courts examining FDUTPA claims apply the heightened pleading standards of Fed. R. Civ. Pro. 9(b), which requires that, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Specifically, "claims arising under the FDUTPA must be plead with particularity." *Wrestlerunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, p. 3 (M.D. Fla. 2008). *See also, Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, p. 2 (M.D. Fla. 2009) ("Like fraud, a claim pursuant to the FDUTPA... [must] meet the heightened pleading standard under Rule 9(b)[.]").

At a minimum, Rule 9(b) requires a claimant to allege:

(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the

13

content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth the same basic requirements).

The Plaintiffs' Complaint fails this heightened pleading standard for a FDUTPA claim. Indeed, Plaintiffs fail to allege a single specific fact in support of a claim against SRC. Additionally, because SRC had no contractual relationship or any other dealings with the Plaintiffs, it never made any representations to the Plaintiffs. For failing to satisfy this basic element of a FDUTPA cause of action, the Plaintiffs' claim should be dismissed.

Plaintiffs' claims for personal injury are also expressly precluded by the FDUTPA. The FDUPTA states that it does not apply to, "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F.Supp. 842, 851 (N.D. Fla. 1995). Count XIV must be dismissed for this reason as well. The Court should award attorney's fees to SRC for defeating this claim pursuant to Florida Statute 501.2105(1) (providing that the prevailing party in an action under the FDUPTA, "may receive his or her reasonable attorney's fees and costs from the nonprevailing party.").

## I. Plaintiffs are entitled to neither injunctive relief nor medical monitoring (Count XV).

Plaintiffs' final claim for "Equitable and Injunctive Relief and Medical Monitoring" (Count XV) is a catchall claim that seeks, among other things, an order that SRC "buy back and rescind" its contracts and "create, fund, and support a medical monitoring program." *See* Doc. 1777-1 at ¶ 1581. This claim should be dismissed.

First, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based. Each of Plaintiffs' substantive claims is due for dismissal. Therefore, this derivative claim for injunctive relief also fails. *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. Pro. 12(b) (failure to state a claim).").

Second, even if one of Plaintiffs' substantive claims survives dismissal, the Court should dismiss the injunctive claim because Plaintiffs fail to allege an inadequate legal remedy or irreparable harm. Injunctions under both federal and Florida law require these elements. *Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, p. 6 (M.D. Fla. 2007) requires that, to state a cause of action for injunctive relief, a plaintiff must allege ultimate facts which, if true, would establish:

> (1) irreparable injury [...], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.

Plaintiffs do not explain how the legal remedies sought elsewhere in their Complaint are inadequate or why Plaintiffs are entitled to the extraordinary remedy of an injunction. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.").

Third, Plaintiffs' request for "medical monitoring" is not permitted under Florida law. The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical

monitoring. In the Third District, seven elements must be adequately alleged to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substances; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Petito v. A.H. Robins Co.*, 750 So.2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm. *Id.*

The Plaintiffs do not allege the requisite elements of a medical monitoring claim. Instead, Plaintiffs set forth a series of legal conclusions without factual detail. *See, e.g.*, Doc. 1777-1 at ¶ 1585 ("Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct."). Plaintiffs do not identify any medical condition supposedly caused by their drywall; nor do they identify a monitoring procedure for that supposed condition. Plaintiffs do not even claim to be ill. In fact, the Peltier plaintiffs do not even allege personal injuries.

Again, legal conclusions do not suffice to support Plaintiffs' cause of action. *See Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadabare recitals" of the elements of a claim inadequate). This Court, like others, should dismiss Plaintiffs' claim for medical monitoring as deficient on the pleadings. *See Jacobs v. Osmoses, Inc.*, No. 01-944-CIV, 2002 WL 34241682, p. 3 (S.D. Fla. 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see also Wyeth, Inc. v. Gottlieb*, 930 So.2d 635, 642 (Fla. 3d DCA 2006) (rejecting

class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program").

## IV. CONCLUSION

Table 2, below, provides an summary of why this Court should dismiss each claim against Steven R. Carter, Inc., in Plaintiffs' *Gross/Benes* Class Action Complaint ("Omni III").

| Table 2: Summary of SRC's Bases for Dismissal from Omni III (highlighted Counts do not apply to SRC) | | | |
|---|---|---|---|
| **Plaintiffs' Count Number** | **Defendants against which Count is purportedly directed** | **Plaintiffs' Claim** | **Reason(s) why Plaintiffs' Claim Fails** |
| I | All Defendants | Negligence | SRC owes no duty to Plaintiffs; Economic Loss Rule ("ELR"); |
| II | All Defendants | Negligence Per Se | Statutes impose no duty on SRC; ELR |
| III | All Defendants | Strict Liability | SRC, as a homebuilder, cannot be held strictly liable under Florida law; ELR |
| IV | All Defendants | Breach of Express and/or Implied Warranties | Plaintiffs lack contractual privity with SRC. |
| V | Builders Only (on behalf of Plaintiffs who own condominiums in the state of Florida) | Breach of the Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes Section 718.203 | Not applicable. |
| VI | Builders Only | Breach of the Implied Warranty of Habitability | Plaintiffs lack contractual privity with SRC. |
| VII | Builders Only | Breach of Contract | Plaintiffs lack contractual privity with SRC. |
| VIII | Louisiana Builders Only | Violation of the Louisiana New Home Warranty Act (on Behalf of Plaintiffs who own Homes in the State of LA) | Not applicable. |
| IX | Louisiana Plaintiffs against all Defendants | Redhibition | Not applicable. |
| X | Manufacturing Defendants (Pleaded in the Alternative against Distributor Defendants) | Louisiana Products Liability Act | Not applicable. |

| XI | All Defendants | Private Nuisance | SRC did not possess the allegedly-nuisance property; ELR |
| XII | All Defendants | Negligent Discharge of a Corrosive Substance | SRC owes no duty to Plaintiffs; ELR |
| XIII | All Defendants | Unjust Enrichment | Plaintiffs lack contractual privity with SRC; ELR |
| XIV | All Defendants | Violation of Consumer Protection Act | Plaintiffs fail to plead specific facts; SRC made no representations to Plaintiffs. |
| XV | All Defendants | Equitable and Injunctive Relief and Medical Monitoring | Claim fails along with substantive ones; no evidence of inadequate remedy at law; Pelteir plaintiffs do not even claim personal injuries; medical monitoring not permitted under Florida law; ELR. |

Plaintiffs' "shotgun" approach to pleading diverse causes of action against many different types of defendants must be rejected. SRC had nothing to do with the manufacture, marking, distribution, or installation of Plaintiffs' drywall. SRC built homes for third parties who, in turn, sold their properties to the respective Plaintiffs. SRC does not belong in this litigation. Because each of Plaintiffs' claims is fatally defective, this Court should dismiss Steven R. Carter, Inc., under Fed. R. Civ. Pro. 12(b)(6).

Respectfully submitted,

**ADAMS AND REESE LLP**

s/Christopher A. D'Amour
CHRISTOPHER A. D'AMOUR (La. Bar # 26252)
MEGAN HAGGERTY GUY (La. Bar # 26316)
DAVID C. COONS (La. Bar # 32403)
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
***Attorneys for Defendant Steven R. Carter, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 23rd day of December, 2010.

s/ David C. Coons