**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  CHINESE MANUFACTURED | * | |
| DRYWALL PRODUCTS LIABILITY | * | MDL No. 2047 |
| LITIGATION | * | |
| | * | |
| | * | SECTON "L" |
| THIS DOCUMENT RELATES TO: | * | |
| | * | |
| Mary Anne Benes, et al. | * | JUDGE FALLON |
| vs. | * | |
| Knauf Gips KG., et al. | * | |
| | * | MAG. JUDGE WILKINSON |
| | * | |
| CASE NO.: 2:09-CV-6690-EEF-JCW | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### DEFENDANT DAVE WALKER CONSTRUCTION, INC.'S
### THIRD-PARTY COMPLAINT AGAINST CHARLES COSBY PLASTERING

COMES NOW Defendant/ Third-Party-Plaintiff, **Dave Walker Construction, Inc.** ("**DWC**"), by and through its undersigned counsel, and alleges for its Third-Party Complaint against Third-Party Defendant, Charles Cosby Plastering ("**Cosby**"), as follows:

### The Parties, Jurisdiction, and Venue

1.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against DWC.

2.      The *Benes* Intervention Complaint[1] ("Plaintiffs' Omnibus Class Action Complaint in Intervention (III)") "incorporate[s] and adopt[s] the allegations of the *Gross* complaint […] by reference."[2]

3.      The *Gross/Benes* Class Action Complaint ("**Omni III**") identifies DWC as a Defendant in the Builder/Developer Subclass.[3]

---

[1] *See* Documents 1777 and 1777-1.
[2] *See* Doc. 1777 at p. 2. (N.B.: the *Gross* complaint is found at Doc. 366).
[3] *See* Doc. 1777-3 at p. 16.

4.      DWC is named in Omni III by plaintiff Monika Howard.[4]

5.      Defendant/ Third-Party Plaintiff DWC was and is a Florida corporation doing business in Collier County, Florida, where this cause of action arose.  At all material times, DWC was a builder of residential homes in Florida.

6.      DWC constructed a single-family residential home for plaintiff Monika Howard in 2001.

7.      The Plaintiffs allege that drywall used in the DWC-constructed home was defective and caused damages to the Plaintiffs.

8.      DWC denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

9.      Upon information and belief, Third-Party Defendant Cosby is an entity organized under Florida law with its principal place of business in Florida.  Cosby is a supplier and installer of drywall and related building products

10.     Cosby supplied and installed the drywall in plaintiff Howard's home.

11.     DWC brings this Third-Party Complaint pursuant to Federal Rule of Civil Procedure 14.

12.     Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. § 1367 insofar as DWC's Third-Party Complaint arises from the same transactions or occurrences as Plaintiffs' action.  Venue in this district for coordinated or consolidated pretrial proceedings is consistent with the Transfer Order of the Judicial Panel on Multidistrict Litigation (JPML).  *See In re: Chinese-Manufactured Drywall Products Liability Litigation*, 629 F.Supp.2d 1346 (J.P.M.L. Jun. 15, 2009).  Accordingly, should this Court determine that it has jurisdiction and

---

[4] *See* Doc. 1777-3 at p. 26.

proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Third-Party Complaint.

**General Allegations**

13.     As set forth in more detail in Omni III, Plaintiffs allege that their homes were built using defective drywall designed, manufactured, and processed in China, and that DWC (as builder) is liable for damages to Plaintiffs.

14.     Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances, and Plaintiffs' personal property (the "**Other Property**").

15.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

16.     As a general contractor, DWC arranged for Third-Party Defendant Cosby to supply and install drywall in the Howard plaintiff's home.

17.     At all material times, Cosby knew that the drywall in question was going to be used in construction of residential homes.  Cosby knew that DWC required and expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

18.     DWC did not know, could not have known, and was not made aware of any problem with the drywall.  The drywall processed, distributed, sold, and/or installed by Cosby for use in the construction of the Homes was not altered and/or otherwise substantively changed by DWC.

19.     For the purpose of this Third-Party Complaint only, and not constituting an admission of Plaintiffs' allegations or liability for DWC, and without in any way adopting the Plaintiffs' allegations as true, the allegations set forth in the Plaintiffs' Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by allegedly-defective drywall in the Homes.

20.     Without admitting any liability of damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Plaintiffs' Complaint, at all material times, Cosby knew or should have known of the drywall's applications, performance, and dangers.

21.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Plaintiffs' Complaint, Cosby's acts and omissions in processing, distributing, selling, and/or installing the defective drywall directly and proximately caused and/or exposed DWC to substantial liability and damages to Plaintiffs.

22.     DWC did not know, could not have known, and was never informed by Cosby that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

23.     Consequently, Cosby is liable for any tort or other fault with respect to the use of the allegedly-defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages.

24.     Cosby is further liable to DWC for damages in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.  Additionally, Cosby's wrongful conduct also caused damages to DWC, including but not limited to DWC's loss of reputation, goodwill, lost profits, and attorneys' fees.

25.     All conditions precedent to the filing of this Third-Party Demand have been performed, excused, or otherwise waived.

### Count 1- Negligence

26.     DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

27.     Plaintiffs in the Complaint allege various claims against DWC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

28.     Cosby supplied and installed the drywall in the Homes.

29.     As such, Cosby owed DWC a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect and install drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of DWC's customers; and, (ii) install drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

30.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Cosby knew or should have known that the drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

31.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Cosby breached its duty of care to DWC by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it installed in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Cosby installed; (iii) acquiring, procuring, marketing, distributing, wholesaling installing, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to install drywall that complied with all applicable building and industry standards.

32.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such breaches in Cosby's duty of care were the direct and proximate cause of DWC's injuries, losses, and damages.

33.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, Cosby knew or

reasonably should have known that its acts and omissions in marketing and installing defective drywall would expose DWC to substantial liability and damages.  If Cosby had exercised that degree of care that  prudent or reasonably cautious installer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to DWC would ensure as a result of marketing, installing defective drywall.

34.     Without admitting any liability or damages to Plaintiffs, DWC was damaged by Cosby's breaches of its duties of care, which directly and proximately caused and/or exposed DWC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against DWC in this action and/or any other action brought by Plaintiffs against DWC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by DWC in defending against these claims.  Cosby's wrongful conduct also caused damages to DWC, including but not limited to DWC's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, DWC demands judgment for damages in its favor and against Third-Party Defendant, Charles Cosby Plastering, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

<u>**Count 2- Common Law Indemnity**</u>

35.     DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

36.     Plaintiffs in the Complaint allege various claims against DWC for damages caused by defective drywall contained in the Homes.

37.     DWC is not and was not in the business of supplying or installing drywall and had no reason to know or to suspect that there were problems with the drywall supplied/installed by Cosby.  DWC justifiably relied on Cosby to supply/install drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

38.     DWC is entirely without fault for the injuries alleged by Plaintiffs.

39.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Cosby.

40.     A special relationship existed between Cosby and DWC such that any liability imposed upon DWC in this matter will be secondary, passive, solely vicarious, constructive, derivative, or technical to Cosby.  Cosby supplied/installed drywall in the Homes.  Moreover, to the extent that plaintiffs are successful in proving their claims, the drywall installed by Cosby was defective and wholly to blame for Plaintiffs' injuries.

41.     As a result of the claims that have been filed against DWC, DWC has incurred losses, damages, costs, attorneys' fees, and expenses due to the alleged failure of Cosby to install drywall fit for its intended purpose, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

42.     If DWC is found to be liable to Plaintiffs, Cosby is liable to DWC for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against DWC in this action and/or any other action brought by Plaintiffs against DWC, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against DWC, including, without limitation, payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payments for the amount of any judgment entered against DWC, and/or the settlement of Plaintiffs' claims, as

well as reasonable costs and attorneys' fees incurred by DWC in defending against the claims brought by Plaintiffs.

   **WHEREFORE**, DWC demands judgment for indemnity in its favor against Third-Party Defendant, Charles Cosby Plastering, for compensatory damages plus attorneys' fees, interest, and costs as damages, and for such other relief as the Court deems just and proper.

<u>**Count 3- Contribution Pursuant to Florida Statute 768.31**</u>

   43.   DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

   44.   This is an action, stated in the alternative, against Cosby for contribution pursuant to Section 768.31, Florida Statutes.

   45.   Plaintiffs in the Complaint allege various claims against DWC for damages caused by defects in the drywall contained in the Homes.

   46.   Without admitting any liability or damages to Plaintiffs, should DWC be found liable, Cosby would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

   47.   DWC has not caused or contributed to the damages alleged by the Plaintiffs in this action.

   48.   To the extent that any common liability is found with respect to DWC, DWC hereby asserts its right of contribution against Cosby for its pro rata share of the liability.

   49.   Cosby should be required to repay DWC for any loss, damages, costs, and expenses, including attorneys' fees, DWC is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against DWC in this action and/or any other action brought by

Plaintiffs against DWC, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against DWC, in excess of its pro rata share of any common liability.

**WHEREFORE**, DWC demands that judgment be entered against Third-Party Defendant, Charles Cosby Plastering, for its pro rata share of the liability, if any, found against DWC in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

<u>**Count 4- Equitable Subrogation**</u>

50.     DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

51.     This is an action, stated in the alternative, against Cosby for equitable subrogation.

52.     Plaintiffs in the Complaint allege various claims against DWC for damages caused by defects in the drywall contained in the Homes.

53.     DWC is not and was not in the business of supplying/installing drywall and had no reason to know or to suspect that there were problems with the drywall supplied/installed by Cosby.  DWC justifiably relied on Cosby to supply/install drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

54.     Without admitting any liability or damages to Plaintiffs, DWC is not primarily liable for any liability to the Plaintiffs.

55.     To the extent that DWC is required to pay damages for any fault of Cosby to protect its own interests, and not as a volunteer, DWC would be entitled to reimbursement from Cosby under equitable principles for any damages which are attributable to it related to the

claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against DWC, including, without limitation, payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payments for the amount of any judgment entered against DWC and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against DWC, as well as reasonable costs and attorneys' fees incurred by DWC in defending against the claims brought by Plaintiffs.

56.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, DWC demands judgment in its favor and against Third-Party Defendant, Charles Cosby Plastering, for equitable subrogation, as well as attorneys' fees, costs, and interest, together with any such other relief as this Court deems just and proper.

### Count 5- Breach of the Implied Warranty of Merchantability under Common Law

57.     DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

58.     This is an action against Cosby for breach of the implied warranty of merchantability under the common law.

59.     Cosby supplied and installed drywall in the Homes.  Cosby knew that DWC required and expected that drywall it supplied/installed to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and DWC justifiably relied on Cosby's skill and judgment to install such drywall for the construction of residential homes.

60.     Pursuant to the relationship between the parties, Cosby is deemed to have provided DWC with an implied warranty of merchantability as to the drywall materials supplied/installed by Cosby.

61.     The drywall installed by Cosby for use in the construction of the homes was not altered and/or otherwise substantively changed by DWC.

62.     Pursuant to common law, Cosby warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

63.     Plaintiffs in the Complaint allege various claims against DWC for damages caused by defective drywall contained in the Homes.   DWC denies it has any liability to Plaintiffs.   However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and DWC is found liable to Plaintiffs, Cosby breached the implied warranty of merchantability by supplying/installing drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

64.     As a result of the claims that have been filed against DWC, DWC has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Cosby to install drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against DWC in this action and/or any other action brought by Plaintiffs against DWC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by DWC in defending these Claims. Cosby's wrongful conduct also caused damages to DWC, including but not limited to DWC's loss of reputation, goodwill, and lost profits.

65.     Cosby is aware of the alleged defective gypsum drywall, but Cosby has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, DWC demands judgment for damages in its favor and against Third-Party Defendant, Charles Cosby Plastering, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 6- Breach of the Implied Warranty of Merchantability under Florida Statute 672.314

66.     DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

67.     This is an action against Cosby for breach of the implied warranty of merchantability under Section 672.314, Florida Statutes.

68.     Cosby supplied and installed drywall in the Homes.  Cosby knew that DWC required and expected that drywall it supplied/installed to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and DWC justifiably relied on Cosby's skill and judgment to supply and install such drywall for the construction of residential homes.

69.     Pursuant to the relationship between the parties, Cosby is deemed to have provided DWC with an implied warranty of merchantability as to the drywall materials supplied and installed by Cosby.

70.     The drywall supplied and installed by Cosby for use in the construction of the homes was not altered and/or otherwise substantively changed by DWC.

71.     Pursuant to Florida Statute 672.314, Cosby warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in

residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

72.     Plaintiffs in the Complaint allege various claims against DWC for damages caused by defective drywall contained in the Homes.  DWC denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and DWC is found liable to Plaintiffs, Cosby breached the implied warranty of merchantability by supplying/installing drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

73.     As a result of the claims that have been filed against DWC, DWC has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Cosby to install drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against DWC in this action and/or any other action brought by Plaintiffs against DWC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by DWC in defending these Claims. Cosby's wrongful conduct also caused damages to DWC, including but not limited to DWC's loss of reputation, goodwill, and lost profits.

74.     Cosby is aware of the alleged defective gypsum drywall, but Cosby has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, DWC demands judgment for damages in its favor and against Third-Party Defendant, Charles Cosby Plastering, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

14

## Count 7- Breach of the Implied Warranty of Fitness

75.     DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

76.     This is an action against Cosby for breach of the implied warranty of fitness.

77.     Cosby supplied and installed drywall in the Homes.

78.     Cosby knew that DWC required and expected the drywall it installed to be safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

79.     DWC justifiably relied on Cosby's skill and judgment to supply and install drywall fit for the particular purpose of constructing residential homes.

80.     Pursuant to the relationship between the parties, Cosby is deemed to have provided DWC with an implied warranty of fitness as to the drywall materials supplied and installed by Cosby.

81.     The drywall supplied and installed by Cosby for use in the construction of the Homes was not altered and/or otherwise substantively changed by DWC.

82.     Cosby impliedly warranted that the drywall was safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

83.     Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  DWC denies that it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in providing that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and DWC is found liable to Plaintiffs, Cosby breached the implied warranty of fitness by supplying and installing drywall that was defective and not reasonably fit for use in the construction of residential homes.

84.     As a result of the claims that have been filed against DWC, DWC has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Cosby to install drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against DWC in this action and/or any other action brought by Plaintiffs against DWC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by DWC in defending these Claims. Cosby's wrongful conduct also caused damages to DWC, including but not limited to DWC's loss of reputation, goodwill, and lost profits.

85.     Cosby is aware of the alleged defective gypsum drywall, but Cosby has failed to repair or replace the drywall.

**WHEREFORE**, DWC demands judgment for damages in its favor and against Third-Party Defendant, Charles Cosby Plastering, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 8- Negligent Failure to Warn

86.     DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

87.     Plaintiffs in the Complaint allege various claims against DWC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

88.     Cosby supplied and installed the gypsum drywall in the Homes built by DWC.

89.     As such, Cosby owed DWC a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it installed or disclose any adverse affects associated with the drywall; (ii) warn DWC about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn DWC about any problems or dangers in using the drywall for residential construction.

90.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Cosby knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

91.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Cosby knew or should have known that unless it warned DWC of the risk of using the drywall it installed, DWC would suffer harm.  However, Cosby failed to provide an adequate warning of such danger.

92.     DWC did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, DWC had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

93.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more

fully alleged in the Complaint, Cosby breached its duty of care to DWC by (i) failing to disclose any defects in the drywall materials it supplied/installed which it knew or reasonably should have known about; (ii) failing to warn DWC about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn DWC about any problems or dangers in using the drywall for residential construction, about which Cosby knew or reasonably should have known.

94.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Cosby's duty of care were the direct and proximate cause of DWC's injuries, losses, and damages.

95.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Cosby knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose DWC to substantial liability and damages.  If Cosby had exercised the degree of care that a prudent or reasonably cautious supplier/installer acting under the same circumstances would exert, it would or could have foreseen that damages to DWC would ensue as a result of failing to disclose and/or warn of drywall defects.

96.    Without admitting any liability or damages to Plaintiffs, DWC was damaged by Cosby's breaches of its duties of care, which directly and proximately caused and/or exposed DWC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against DWC in this action and/or any other action brought by Plaintiffs against DWC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by DWC in defending against these claims.  Cosby's wrongful conduct

also caused damages to DWC, including but not limited to DWC's loss of reputation, goodwill and lost profits.

      **WHEREFORE**, DWC demands judgment for damages in its favor and against Third-Party Defendant, Charles Cosby Plastering, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**Count 9- Breach of the Post-Sale Duty to Warn**

      97.    DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

      98.    Plaintiffs in the Complaint allege various claims against DWC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

      99.    Cosby supplied and installed the gypsum drywall in the Homes built by DWC.

      100.    To the extent Plaintiffs are successful in proving that drywall supplied/installed by Cosby was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the time such drywall left Cosby's control, Cosby knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

      101.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Cosby, as the supplier and installer of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Cosby breached that

duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

102.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

103.    Consumers, such as DWC, to whom a warning might have been provided could have been identified by Cosby

104.    A warning could have been effectively communicated to consumers such as DWC and acted on by them.

105.    At all material times, Cosby knew or should have known of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that DWC was unaware of potential dangers and/or risk of harm associated with the use of Cosby's drywall product in residential construction.

106.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable installer in Cosby's position would have provided a post-sale warning.

107.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, DWC was damaged by Cosby's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed DWC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payment for the

amount of any judgment entered against DWC in this action and/or any other action brought by Plaintiffs against DWC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by DWC in defending against these claims.  Cosby's wrongful conduct also caused damages to DWC, including but not limited to DWC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, DWC demands judgment for damages in its favor and against Third-Party Defendant, Charles Cosby Plastering, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 10- Strict Products Liability

108.    DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

109.    This is an action, stated in the alternative, against Cosby for strict products liability.

110.    At all material times, Cosby was in the business of supplying and installing gypsum drywall of the type contained in the Homes.

111.    At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commence and/or installed by Cosby.

112.    At the time said drywall was placed into the stream of commerce and/or supplied and installed by Cosby, Cosby intended that the drywall reach consumers and/or ultimate users of the drywall, such as DWC.

113.    Cosby expected the gypsum drywall to reach DWC and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did, in fact, reach DWC and/or the Homes without substantial change affecting that condition.

114.    Plaintiffs in the Complaint allege various claims against DWC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

115.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall installed by Cosby directly and proximately caused and/or exposed DWC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against DWC in this section and/or any other action brought by Plaintiffs against DWC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by DWC in defending against these claims. Cosby's wrongful conduct also caused damages to DWC, including but not limited to DWC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, DWC demands judgment for damages in its favor and against Third-Party Defendant, Charles Cosby Plastering,  in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 11- Strict Products Liability Failure to Warn

116.    DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

117.    This is an action, stated in the alternative, against Cosby for strict products liability failure to warn.

118.    At all material times, Cosby was in the business of supplying and installing gypsum drywall of the type contained in the Homes.

119.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce and/or installed by Cosby.

120.    At the time said drywall was placed into the stream of commerce and/or installed by Cosby, Cosby intended that the drywall reach consumers and/or ultimate users of the drywall, such as DWC.

121.    Cosby expected the gypsum drywall to reach DWC and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach DWC and/or the Homes without substantial change affecting that condition.

122.    Plaintiffs in the Complaint allege various claims against DWC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

123.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Cosby was required to provide a warning.  However, Cosby failed to provide an adequate warning of such danger.

124.    DWC did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

125.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Cosby failed to warn DWC of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.  Without a warning, DWC had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

126.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Cosby's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and  proximately caused and/or exposed DWC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against DWC in this action and/or any other action brought by Plaintiffs against DWC, and/or settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by DWC in defending against these claims.  Cosby's wrongful conduct also caused damages to DWC, including but not limited to DWC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, DWC demands judgment for damages in its favor and against Third-Party Defendant, Charles Cosby Plastering, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**Count 12- Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**Florida Statute 501.201, et seq.**

127.   DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

128.   This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

129.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

130.   At all material times, DWC was a person and a consumer of drywall as defined under FDUTPA.

131.   At all material times, Cosby engaged in trade or commerce by supplying and installing drywall for consumers, such as DWC.

132.   Cosby supplied and installed the gypsum drywall in the Homes built by DWC.

133.   At the time Cosby supplied/installed drywall, Cosby represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

134.   Plaintiffs in the Complaint allege various claims against DWC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property including but not limited to the Other Property in the Homes.

135.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous

and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Cosby supplied/installed the drywall in the Homes, Cosby knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

136.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged  in the Complaint, Plaintiffs' claims arise from Cosby's unfair and deceptive conduct in installing defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

137.   To the extent Plaintiffs are successful in proving their claims, Cosby's unfair and deceptive conduct in supplying/installing defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

138.   Cosby's unfair and deceptive conduct in supplying/installing defective gypsum drywall and/or its failure to disclose that the drywall unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as DWC acting reasonably in the same circumstances, to the consumer's detriment.  A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the installer of such gypsum drywall product would disclose and/or issue a warning to consumers

after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

139.    Cosby's unfair and deceptive conduct in supplying/installing defective drywall and/or its failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as DWC.

140.    To the extent Plaintiffs are successful in proving their claims, DWC did not get what is bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Cosby's violations of FDUTPA directly and proximately caused and/or exposed DWC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against DWC in this action and/or any other action brought by Plaintiffs against DWC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by DWC in defending against these claims.  Cosby's wrongful conduct also caused damages to DWC, including but not limited to DWC's loss of reputation, goodwill and lost profits.

**WHEREFORE**, DWC demands judgment for damages in its favor and against Third-Party Defendant, Charles Cosby Plastering, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### Count 13- Unjust Enrichment

141.    DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

142.    This is an action, stated in the alternative, against Cosby for unjust enrichment.

143.    Plaintiffs in the Complaint allege various claims against DWC for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

144.    Cosby supplied and installed the gypsum drywall in the Homes built by DWC.

145.    Cosby received money for installing the drywall in the Homes.

146.    In delivering such payment, monies and/or funds to Cosby, the Plaintiffs and/or DWC conferred a benefit, *i.e.*, funds and profit, to Cosby, which had knowledge thereof.

147.    Cosby voluntarily accepted and retained the benefit conferred upon it by the Plaintiffs and/or DWC.

148.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Cosby's acts and omissions in distributing, installing and/or selling defective drywall directly and proximately caused and/or exposed DWC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against DWC in this action and/or any other action brought by Plaintiffs against DWC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by DWC in defending against these claims.

149.    The circumstances described herein under which Cosby profited from selling and/or installing drywall make it inequitable for Cosby to retain those funds and profits.

150.    DWC has no adequate remedy at law.

**WHEREFORE**, DWC demands judgment for damages in its favor and against Third-Party Defendant, Charles Cosby Plastering, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## **Count 14- Breach of Contract**

151.    DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

152.    Plaintiffs in the Complaint allege various claims against DWC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

153.    Pursuant to its oral contract with DWC, Cosby supplied and installed the drywall that was installed in the Homes.

154.    Pursuant to its oral contract with DWC, Cosby owed DWC a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect and install drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of DWC's customers; and, (ii) install drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

155.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Cosby knew or should have known that the drywall it installed in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

156.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Cosby breached its contract with DWC by among other things, (i) failing to exercise reasonable

care in investigating and/or inspecting the properties of the drywall it installed in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the ultimate supplier of the drywall Cosby installed; (iii) installing drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to install drywall that complied with all applicable building and industry standards.

157.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such contractual breaches were the direct and proximate cause of DWC's injuries, losses, and damages.

158.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, Cosby knew or reasonably should have known that its acts and omissions in supplying/installing drywall would expose DWC to substantial liability and damages.

159.    Without admitting any liability or damages to Plaintiffs, DWC was damaged by Cosby's breaches of its contract, which directly and proximately caused and/or exposed DWC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against DWC in this action and/or any other action brought by Plaintiffs against DWC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by DWC in defending against these claims.  Cosby's contractual breach also caused damages to DWC, including but not limited to DWC's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, DWC demands judgment for damages in its favor and against Third-Party Defendant, Charles Cosby Plastering, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 15- Violations of Florida Building Code

160.    DWC reasserts and realleges the allegations in paragraphs 1 through 25 above as if fully set forth herein.

161.    Pursuant to Section 553.84, Florida Statutes, Cosby is liable to DWC for violations of the Florida Building Code ("Code").

162.    Plaintiffs in the Complaint allege various claims against DWC for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

163.    Cosby supplied and installed the drywall in the Homes.

164.    Plaintiffs may prove that the design and construction of Plaintiffs' homes do not comply with the Florida Building Code's requirements.

165.    Cosby owed DWC a duty to comply with all applicable Florida Building Codes.

166.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Cosby knew or should have known that the drywall it installed in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use in violation of the Florida Building Code

167.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Cosby violated the Florida Building Code by (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it installed in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the supplier of the drywall Cosby installed; (iii) installing drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to install drywall that complied with all applicable building and industry standards.

168.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such Cosby's actions are the direct and proximate cause of DWC's injuries, losses, and damages.

169.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, Cosby knew or reasonably should have known that its acts and omissions in supplying/installing drywall would expose DWC to substantial liability and damages.

170.    Without admitting any liability or damages to Plaintiffs, DWC was damaged by Cosby's violations of the Florida Building Code, which directly and proximately caused and/or exposed DWC to substantial liability and damages, including but not limited to any payments made or to be made on behalf of DWC to or on behalf of Plaintiffs, payment for the amount of any judgment entered against DWC in this action and/or any other action brought by Plaintiffs against DWC, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and

attorneys' fees incurred by DWC in defending against these claims.  Cosby's contractual breach also caused damages to DWC, including but not limited to DWC's loss of reputation, goodwill, and lost profits.

WHEREFORE, DWC demands judgment for damages in its favor and against Third-Party Defendant, Charles Cosby Plastering, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

## DAVE WALKER CONSTRUCTION, INC.'S, JURY DEMAND

DWC also hereby demands a trial by jury.

Respectfully submitted,

**ADAMS AND REESE LLP**

s/Christopher A. D'Amour
CHRISTOPHER A. D'AMOUR (La. Bar # 26252)
MEGAN HAGGERTY GUY (La. Bar # 26316)
DAVID C. COONS (La. Bar # 32403)
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
*Attorneys for Dave Walker Construction, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 23rd day of December, 2010.

s/ David C. Coons_____