UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| | * | SECTON "L" |
| THIS DOCUMENT RELATES TO: | * * | |
| Mary Anne Benes, et al. vs. Knauf Gips KG., et al. | * * * | JUDGE FALLON |
| | * * | MAG. JUDGE WILKINSON |
| CASE NO.: 2:09-CV-6690-EEF-JCW | * | |

*******************************

## MEMORNADUM IN SUPPORT OF
## DAVE WALKER CONSTRUCTION, INC.'S RULE 12(B) MOTION TO DISMISS

Defendant Dave Walker Construction, Inc. ("**DWC**"), files this Memorandum in Support of its Rule 12(b) Motion to Dismiss the claims brought against it in the *Gross/Benes* Class Action Complaint ("**Omni III**"). DWC is named in Omni III by plaintiff Monika Howard.

DWC is a family-owned and operated general contractor of single-family homes in Florida. DWC has never manufactured, imported, distributed, or marketed drywall. Under its "cost-plus" contract with the plaintiff, DWC helped plaintiff hire a sub-contractor to purchase and install drywall for the Plaintiff's home. DWC had absolutely no knowledge of any alleged drywall defects. If any entities knew or should have known of such defects, they are the drywall manufacturers, importers, suppliers, and installers. In short, DWC does not belong in Plaintiffs' "catch all" complaint and should be dismissed.

### I. SUMMARY OF ARGUMENT

Plaintiffs' pleading fails to state a cause of action. This Court should dismiss DWC from this case for the following non-exclusive reasons:

1

- The negligence claims against DWC fail as a matter of law. DWC owed the Plaintiffs a duty to neither inspect nor warn because drywall is not an "inherently dangerous" product. Also, DWC did not know nor could have known of any defective conditions in the drywall that was purchased and installed by a third-party contractor.

- Plaintiffs' claim for negligence per se is predicated on DWC's alleged breach of state building codes. Under Florida law, violations of state building codes cannot establish per se negligence. Furthermore, Plaintiffs do not even identify the codes that DWC violated.

- Plaintiffs' strict liability claim fails because DWC is not a drywall manufacturer, nor is drywall a "product" under state law.

- Plaintiffs' tort claims are barred by the Economic Loss Rule. This rule prevents a contractual party from seeking damages in tort.

- Monika Howard's construction contract with DWC bars her warranty claims. Additionally, the implied warranty of merchantability does not apply to the services provided by DWC.

- Plaintiffs fail to show how DWC breached its contract with Monika Howard.

- Plaintiffs' claim for private nuisance is without merit because DWC did not have possession over the property.

- The overly-broad allegation that DWC violated "various consumer Protection Acts" is a claim for fraud that requires specific pleading, which the Plaintiffs do not offer.

- Plaintiffs do not explain how their remedies at law are insufficient as to permit injunctive relief and medical monitoring. Furthermore, medical monitoring is not permitted under Florida law.

> ➤ Unjust enrichment is a quasi-contractual theory of recovery available only when there is no adequate legal remedy. This claim is precluded here because Ms. Howard had a contract with DWC.

## II.  BACKGROUND

The *Benes* Intervention Complaint[1] ("Plaintiffs' Omnibus Class Action Complaint in Intervention (III)") "incorporate[s] and adopt[s] the allegations of the *Gross* complaint [...] by reference."[2] The *Gross/Benes* Class Action Complaint ("**Omni III**") identifies DWC as a Defendant in the Builder/Developer Subclass.[3] DWC is named in Omni III by plaintiff Monika Howard.[4]

On October 16, 2000, DWC entered into a contract to build a home for Edward and Monika Howard in Naples, Florida.[5] Upon DWC's completion of the home, the Collier County, Florida, Board of County Commissioners issued a Certificate of Occupancy to the Howards on February 8, 2002.[6]

Monika Howard's general claim in Omni III is that DWC built a home for the Howards containing defective drywall about which DWC knew or should have known. In reality, DWC had absolutely no knowledge that the drywall was allegedly defective. DWC is named in this litigation alongside many purported manufacturers, importers, suppliers, and installers of Chinese Drywall. But DWC had nothing to do with the manufacture, marketing, distribution, or installation of that drywall. Plaintiffs' Complaint offers a laundry list of generic theories of liability without fully distinguishing between, *inter alia*, homebuilders and other defendants.

---

[1] *See* Documents 1777 and 1777-1.
[2] *See* Doc. 1777 at p. 2. (N.B.: the *Gross* Complaint is found at Doc. 366).
[3] *See* Doc. Doc. 1777-1 at ¶ 1172.
[4] *See* Doc. 1777-3 at p. 26.
[5] *See* Howard/ Dave Walker Construction, Inc., Agreement, attached as Exhibit "A."
[6] *See* Certificate of Occupancy, attached as Exhibit "B."

3

Table 1, below, lists the Plaintiffs' fifteen counts to illustrate the "catch-all" nature of Plaintiffs' Complaint.

|  | Table 1: Plaintiffs' *Gross/Benes* Class Action Complaint ("Omni III")[7] (highlighted Counts do not apply to DWC) |
|---|---|---|
| **Plaintiffs' Count Number** | **Defendants against which Count is purportedly directed** | **Plaintiffs' Claim** |
| I | All Defendants | Negligence |
| II | All Defendants | Negligence Per Se |
| III | All Defendants | Strict Liability |
| IV | All Defendants | Breach of Express and/or Implied Warranties |
| V[8] | Builders Only (on behalf of Plaintiffs who own condominiums in the state of Florida) | Breach of the Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes Section 718.203 |
| VI | Builders Only | Breach of the Implied Warranty of Habitability |
| VII | Builders Only | Breach of Contract |
| VIII[9] | Louisiana Builders Only | Violation of the Louisiana New Home Warranty Act (on Behalf of Plaintiffs who own Homes in the State of LA) |
| IX[10] | Louisiana Plaintiffs against all Defendants | Redhibition |
| X[11] | Manufacturing Defendants (Pleaded in the Alternative against Distributor Defendants) | Louisiana Products Liability Act |
| XI | All Defendants | Private Nuisance |
| XII | All Defendants | Negligent Discharge of a Corrosive Substance |
| XIII | All Defendants | Unjust Enrichment |
| XIV | All Defendants | Violation of Consumer Protection Act |
| XV | All Defendants | Equitable and Injunctive Relief and Medical Monitoring |

Of Plaintiffs' fifteen counts, four do not apply to DWC (V, VIII, IX, and X); seven are tort-based claims (I, II, III, XI, XII, XIII, XV); three are contract claims (IV, VI, and VII); and one is statutory (XIV). None of the claims applicable to DWC states a claim for which relief can

---

[7] *See* Documents 1777 and 1777-1.

[8] Count V does not apply to DWC because Monika Howard does not own a Florida condominium.

[9] Count VIII does not apply to DWC because DWC is not a Louisiana builder. DWC built Ms. Howard's home in Florida.

[10] Count IX does not apply to DWC because DWC is not a Louisiana builder. DWC built Ms. Howard's home in Florida.

[11] Count X does not apply to DWC because Plaintiffs identify DWC in neither the manufacturing nor distributor classes.

be granted. Every one of Plaintiffs' claims against DWC should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

### III. ARGUMENT

#### A. Plaintiffs fail to state a claim for negligence (Counts I and XII).

Plaintiffs' negligence claims highlight the "shotgun" approach they take in this litigation. Omni III alleges that DWC owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question. *See* Doc. 1777-1 at ¶ 1461. The Complaint further alleges that DWC had a duty to provide Ms. Howard with certain warnings about the drywall. *See* Doc. 1771-1 at ¶ 1464.

DWC simply did not design, manufacture, export, import, distribute, deliver, supply, inspect, market, or sell drywall to the Plaintiffs. Even the Plaintiffs identify DWC as a "Developer/Builder." *See* Doc. Doc. 1777-1 at ¶ 1172. DWC relied on an installer to purchase and install the drywall. DWC built the Howards' homes pursuant to the parties' 2000 contract.

It is a bedrock principle of tort law that a negligence claim requires the plaintiff to prove, *inter alia*, that the defendant owed a <u>duty</u> to the plaintiff, and that the duty was <u>breached</u>. *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (explaining that, under Florida law, "failure to establish any one of these elements is fatal to the plaintiff's case."). Plaintiffs cannot prove these prerequisites to a negligence claim.

First, DWC owed no duty of care to inspect the plaintiff's drywall. Drywall is not the kind of "inherently dangerous" product that carries a duty to inspect or warn. Under Florida law, manufacturers, retailers, and distributors have a duty to inspect or warn <u>only</u> when the product is considered "inherently dangerous." *See O'Connor v. Kawasaki Motors Corp.*, 699 F.Supp.

5

1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F.Supp. 481, 483-84 (S.D. Fla. 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous."). DWC is not a manufacturer, retailer, or distributor of drywall. DWC owed no duty to inspect the drywall or warn the Howards of possible defects unknown to DWC because DWC is not a manufacturer, retailer, or distributor of drywall and drywall is not inherently dangerous.

Second, DWC did not know nor could have known of any defective drywall conditions. The drywall in question entered the Howards' home through an installer that purchased the drywall from a third-party. DWC cannot be held liable for latent defects absent actual or implied knowledge of those defects. *See Carter v. Hector Supply Co.*, 128 So.2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action… only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer Chem. Co.*, 515 So.2d 324, 326 (Fla. 3d DCA 1987).

Absent an "inherently dangerous" product or actual/implied knowledge—neither of which exists in this case—Plaintiffs' negligence claims fail as a matter of law. The self-serving and unsupported assertion that DWC "knew or should have known" that the drywall would "harm" Plaintiffs (*see* Doc. 1777-1 at ¶ 1461) does not suffice to state a claim under negligence, and Plaintiffs' Counts I and XII should be dismissed.

### B. Plaintiffs do not state a claim for negligence per se (Count II).

Plaintiffs fail to set forth the essential elements of a negligence per se claim. Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a particular class of persons from a particular type of injury." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So.2d 198, 201 (Fla. 1973). Plaintiffs do not identify a statute that DWC allegedly

6

violated, much less explain how that violation occurred. Instead, the Plaintiffs assert that "Defendants," as an undifferentiated group, violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes." *See* Doc. 1777-1 at ¶ 1471. Once again, this self-serving, conclusory statement does not identify a specific statute establishing a duty to protect a particular class of persons. Such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Additionally, the "State and local Building Codes" that Plaintiffs claim DWC violated are "designed to protect the <u>general public</u> rather than a particular class of individuals." *Russ v. Wollheim*, 915 So.2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). Violations of a building code cannot establish per se negligence. *See Russ v. Wollheim*, 915 So. 2d 1285, 1286, n1 (Fla. 2d DCA 2005) (citing *Grand Union Co. v. Rocker*, 454 So. 2d 14 (Fla. 3d DCA 1984)) ("A building code is designed to protect the general public rather than a particular class of individuals, and therefore, violation of a building code is merely evidence of negligence.") Plaintiffs neither identify the alleged code violations nor explain how the codes exist to protect Plaintiffs from their alleged injuries. Plaintiffs' negligence per se claim should be dismissed.

### C. Plaintiffs' strict liability claim (Count III) fails under Florida law.

Plaintiffs' strict liability claim is premised on the inaccurate assumption that DWC manufactured or distributed drywall, which it did not. Count III alleges that DWC was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." *See* Doc. 1777-1 at ¶ 1476. But even the Plaintiffs identify DWC as

7

a "Developer/Builder." *See* Doc. Doc. 1777-1 at ¶ 1172. DWC never distributed, delivered, supplied, inspected, marketed, or sold drywall.

Strict products liability is reserved for product manufacturers and distributors; it does not apply to a homebuilder like DWC. *See Ugaz v. American Airlines, Inc.*, 576 F.Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claims "are the manufacturers and perhaps other persons in the chain of distribution."); *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly-defective product for purposes of strict liability).[12] Because DWC is a builder that never manufactured or distributed the Plaintiffs' drywall, the Plaintiffs' strict liability claim against DWC must be dismissed.

### D. Plaintiffs' tort claims (Counts I, II, III, XI, XII, XIII, and XV) are barred in whole or in part by the Economic Loss Rule.

The Economic Loss Rule ("ELR") bars plaintiffs from circumventing their contractual arrangements through allegations in tort. *See Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 536 & n. 1 (Fla. 2004). Florida law applies the ELR in two contexts:

> (1) The contractual privity ELR where two parties are in privity of contract, and
> (2) the products liability ELR where a defective product causes damage, but only to itself.

*See* this Court's January 13, 2010, "Order & Reasons," at p. 22, which applies by its terms to all drywall MDL cases. This Court also held that, "under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs." *Id.* at 30. Florida courts have defined economic loss in contexts such as this one as "damages for inadequate value,

---

[12] Furthermore, drywall is not a "product" for purposes of this tort. Under Florida strict liability law, drywall is considered a "structural improvement," as it was an integral part of Plaintiffs' homes. *See Plaza v. Fisher Dev., Inc.*, 971 So.2d 918, 922-24 (Fla. 3d DCA 2007). "Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc.* No. 07-80767-CIV, 2008 WL 5111260, p. 4 (S.D. Fla. 2008).

8

costs of repair and replacement of the defective product," and "disappointed economic expectations." *See, e.g., Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1246 (Fla. 1993).

In *Casa Clara*, the Florida Supreme Court affirmed the dismissal of homeowners' negligence claims against a concrete supplier after the homeowners' sidewalks proved defective. *Id.* at 1248. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. *Id.* at 1247. Because the plaintiffs were seeking only economic damages, the ELR barred their tort claims against the supplier. *Id.* at 1246-48.

Ms. Howard, like the *Casa Clara* homeowners, seeks many purely economic damages. These alleged damages are, "protected by contract law, rather than tort law." *Id.* at 1246. Ms. Howard was in contractual privity with DWC. Her causes of action spring from her construction contract with DWC and not an independent tort. Therefore, her economic damages against DWC are barred by the economic loss rule. Ms. Howard's tort claims should be dismissed.

### E. Monika Howard's warranty claims (Counts IV and VI) are barred by her contract with DWC.

Ms. Howard's implied and express warranty claims against DWC are barred by the parties' 2000 contract which provides that,

> occupancy of a structure constitutes acceptance thereof, and that all work is to be considered accepted by the customer unless notified immediately to the contrary in writing.[13]

The Howards took occupancy of the property on February 8, 2002.[14] Not until February 22, 2010, did Monika Howard provide notice of her claim to DWC through her attorney.[15] This

---

[13] *See* Howard/Dave Walker Construction, Inc., Agreement, attached as Exhibit "A," at Article 14.4.
[14] *See* Certificate of Occupancy, attached as Exhibit "B."
[15] *See* correspondence of Ervin A. Gonzalez to Dave Walker Construction, Inc., attached as Exhibit "C."

9

is hardly the kind of "immediate" notice required by the parties' contract. Ms. Howard accepted her home through her occupancy of it.

Florida law recognizes that Ms. Howard waived any warranty on her home by occupying it without notifying DWC of any defects. It matters not that Ms. Howard alleges not to have experienced a defect until years after moving into the home: "case law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects-defects that may exist before, but typically are not discovered until after, the expiration of the warranty period." *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (3d Cir. 1992) (citing numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period but did not manifest until warranty period had expired). *See also Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 616-617 (3d Cir. 1995) ("[L]atent defects discovered after the term of the warranty are not actionable." (citation omitted)); *Brisson v. Ford Motor Co.*, 349 Fed. App. 433, 434 (11th Cir. 2009) (affirming dismissal, under Florida law, of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period").

Additionally, the implied warranty of merchantability does not apply to the work performed by DWC. Fla. Stat § 672.314 (2010) provides a cause of action for an implied warranty of merchantability for goods sold by a <u>merchant</u>. The implied warranties in the Uniform Commercial Code, "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant." *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So.2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

In *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1292 (Fla. 5th DCA 1986), the court found that an implied warranty did not attach to a contract to repair an owner's private road. The contract was essentially one for services and the contractor was not a "merchant" of the allegedly-defective coating that made the road dangerous. *Id.* DWC is not bound by any implied warranties because it is not a <u>merchant</u> under Florida warranty law. DWC contracted with Ms. Howard to provide a <u>service</u>: home construction. The inclusion of drywall in Ms. Howard's home by a third-party installer was incidental to the construction service provided by DWC. Furthermore, Florida law holds that, "although construction contracts [...] typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant."). *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999). Because Ms. Howard waived all warranties by occupying her home without notifying DWC of any defects, and because implied warranties do not attach to DWC's contract to build, Plaintiffs' warranty claims must be dismissed.

### F. Monika Howard does not explain how DWC breached its contract; her claim for breach of contract (Count VII) must be dismissed.

Monika Howard does not allege a viable breach of contract claim. Omni III states only that DWC, "contracted with the [Plaintiffs] to construct homes that would be free of defects." *See* Doc. 1777-1 at ¶ 1521. This assertion is insufficient on its face, because it fails to identify the source of DWC's alleged duty to construct a home "free of defects." To support a contract claim, Ms. Howard must, "identify the relevant portion of the contract breached." *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co.*, No. 8:07-cv-788-T-27EAJ, 2008 WL 4853635, p. 4 (M.D. Fla. 2008). *See also Insurance Concepts & Design, Inc. v. Healthplan Serv., Inc.*, 785 So.2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached."). Although the Plaintiffs may point out the

11

"Omnibus" nature of the Complaint, Ms. Howard's decision to join this litigation does not excuse her from satisfying basic pleading standards. If DWC must defend a claim for breach of contract, Florida law and due process entitles DWC to know the basis for Ms. Howard's claim.

### G. Plaintiffs' unjust enrichment claim (Count XIII) fails because Plaintiffs are second owners who have no contractual privity with DWC.

Ms. Howard has no basis to raise a claim for unjust enrichment. This is a quasi-contractual theory of recovery. As one Federal Court explains, "[i]t is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available when there is an adequate legal remedy." *American Honda Motor Co. v. Motorcycle Info. Network*, 390 F.Supp. 2d 1170, 1178 (M.D. Fla. 2005). Ms. Howard admits to having a contract with DWC for the construction of her home.[16] When a contract between the parties exists, "claims arising out of that contractual relationship will not support a claim for unjust enrichment." *Moynet v. Courtois*, 8 So.3d 377, 379 (Fla. 3d DCA 2009). *See also: Validsa, Inc. v. PDVSA Serv., Inc.*, 632 F.Supp. 2d 1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties "admitted to the existence of express contracts."). Ms. Howard's breach of contract and unjust enrichment claims are mutually exclusive. Because Ms. Howard had a contract with DWC, her unjust enrichment argument fails.

### H. Plaintiffs claim against DWC for private nuisance (Count XI) should be dismissed because DWC lacks the requisite possession over the allegedly-nuisance property.

An action for private nuisance requires the claimant to establish an injury to his own property in connection with the use of the real property of someone else. *See Jones v. J.B. Trawick*, 75 So.2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the

---

[16] *See* Howard/Dave Walker Construction, Inc., Agreement, attached as Exhibit "A."

12

fundamental rule that every person should so use his own property as not to injure that of another.").

The Plaintiffs' Complaint does not allege that DWC had ownership or possession of property that injured Ms. Howard. On the contrary, the nuisance claim is predicated entirely on the allegation that "structures owned by Plaintiffs" are to blame. *See* Doc. 1777-1 at ¶ 1556. That allegation does not state a claim for private nuisance. *See, e.g.: Morgan v. W.R. Grace & Co.*, 779 So.2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *see also Weaver v. United States*, 809 F.Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]"). Because DWC did not possess the property in question, Plaintiffs' nuisance claim has no merit.

### I. In Count XIV, Plaintiffs fail to plead specific facts concerning DWC's allegedly-deceptive acts.

Plaintiffs broadly allege violations of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("**FDUTPA**"). *See* Doc. 1777-1 at ¶ 1574. A FDUTPA claim comprises three distinct elements: (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages." *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, p. 5 (S.D. Fla. 2007).

Courts examining FDUTPA claims apply the heightened pleading standards of Fed. R. Civ. Pro. 9(b), which requires that, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Specifically, "claims arising under the FDUTPA must be plead with particularity." *Wrestlerunion, LLC v. Live Nation TV*

*Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, p. 3 (M.D. Fla. 2008). *See also, Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, p. 2 (M.D. Fla. 2009) ("Like fraud, a claim pursuant to the FDUTPA… [must] meet the heightened pleading standard under Rule 9(b)[.]").

> At a minimum, Rule 9(b) requires a claimant to allege:
>
> (1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth the same basic requirements).

The Plaintiffs' Complaint fails this heightened pleading standard for a FDUTPA claim. Indeed, Plaintiffs fail to allege a single specific fact in support of a claim against DWC. For failing to satisfy this basic element of a FDUTPA cause of action, the Plaintiffs' claim should be dismissed.

Ms. Howard's claims for personal injury are also expressly precluded by the FDUTPA. The FDUPTA states that it does not apply to, "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F.Supp. 842, 851 (N.D. Fla. 1995). Count XIV must be dismissed for this reason as well. The Court should award attorney's fees to DWC for defeating this claim pursuant to Fla. Stat § 501.2105(1) (providing that the prevailing party in an action under the FDUPTA, "may receive his or her reasonable attorney's fees and costs from the nonprevailing party.").

### J. Plaintiffs are entitled to neither injunctive relief nor medical monitoring (Count XV).

Plaintiffs' final claim for "Equitable and Injunctive Relief and Medical Monitoring" (Count XV) is a catchall claim that seeks, among other things, an order that DWC "buy back and rescind" its contracts and "create, fund, and support a medical monitoring program." *See* Doc. 1777-1 at ¶ 1581. This claim should be dismissed.

First, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based. Each of Plaintiffs' substantive claims is due for dismissal. Therefore, this derivative claim for injunctive relief also fails. *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. Pro. 12(b) (failure to state a claim).").

Second, even if one of Plaintiffs' substantive claims survives dismissal, the Court should dismiss the injunctive claim because Plaintiffs fail to allege an inadequate legal remedy or irreparable harm. Injunctions under both federal and Florida law require these elements. *Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, p. 6 (M.D. Fla. 2007) requires that, to state a cause of action for injunctive relief, a plaintiff must allege ultimate facts which, if true, would establish:

> (1) irreparable injury [...], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.

Plaintiffs do not explain how the legal remedies sought elsewhere in their Complaint are inadequate or why Plaintiffs are entitled to the extraordinary remedy of an injunction. *See, e.g.*,

15

*Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.").

Third, Plaintiffs' request for "medical monitoring" is not permitted under Florida law. The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring. In the Third District, seven elements must be adequately alleged to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substances; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Petito v. A.H. Robins Co.*, 750 So.2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm. *Id.*

The Plaintiffs do not allege the requisite elements of a medical monitoring claim. Instead, Plaintiffs set forth a series of legal conclusions without factual detail. *See, e.g.*, Doc. 1777-1 at ¶ 1585 ("Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct."). Plaintiffs fail to identify any medical condition supposedly caused by their drywall; nor do they identify a monitoring procedure for that supposed condition. Plaintiffs do not even claim to be ill.

Again, legal conclusions do not suffice to support Plaintiffs' cause of action. *See Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadabare recitals" of the elements of a claim inadequate). This Court, like others, should dismiss Plaintiffs' claim for medical monitoring as

deficient on the pleadings. *See Jacobs v. Osmoses, Inc.*, No. 01-944-CIV, 2002 WL 34241682, p. 3 (S.D. Fla. 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see also Wyeth, Inc. v. Gottlieb*, 930 So.2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program").

## IV. CONCLUSION

Table 2, below, provides a summary of why this Court should dismiss each claim against Dave Walker Construction, Inc., in Plaintiffs' *Gross/Benes* Class Action Complaint ("Omni III").

| Table 2: Summary of DWC's Bases for Dismissal from Omni III (highlighted Counts do not apply to DWC) ||||
|---|---|---|---|
| Plaintiffs' Count Number | Defendants against which Count is purportedly directed | Plaintiffs' Claim | Reason(s) why Plaintiffs' Claim Fails |
| I | All Defendants | Negligence | DWC owes no duty to Plaintiffs; Economic Loss Rule ("ELR"); |
| II | All Defendants | Negligence Per Se | Statutes impose no duty on DWC; ELR |
| III | All Defendants | Strict Liability | DWC, as a homebuilder, cannot be held strictly liable under Florida law; ELR |
| IV | All Defendants | Breach of Express and/or Implied Warranties | Barred by contract; implied warranty of merchantability does not apply to DWC's contract for services. |
| V | Builders Only (on behalf of Plaintiffs who own condominiums in the state of Florida) | Breach of the Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes Section 718.203 | Not applicable. |
| VI | Builders Only | Breach of the Implied Warranty of Habitability | Barred by contract. |
| VII | Builders Only | Breach of Contract | Ms. Howard fails to explain how DWC breached its contract. |

17

| | | | |
|---|---|---|---|
| VIII | Louisiana Builders Only | Violation of the Louisiana New Home Warranty Act (on Behalf of Plaintiffs who own Homes in the State of LA) | Not applicable. |
| IX | Louisiana Plaintiffs against all Defendants | Redhibition | Not applicable. |
| X | Manufacturing Defendants (Pleaded in the Alternative against Distributor Defendants) | Louisiana Products Liability Act | Not applicable. |
| XI | All Defendants | Private Nuisance | DWC did not possess the allegedly-nuisance property; ELR |
| XII | All Defendants | Negligent Discharge of a Corrosive Substance | DWC owes no duty to Plaintiffs; ELR |
| XIII | All Defendants | Unjust Enrichment | Only available in the absence of an adequate legal remedy—barred by contract; ELR |
| XIV | All Defendants | Violation of Consumer Protection Act | Plaintiffs fail to plead specific facts |
| XV | All Defendants | Equitable and Injunctive Relief and Medical Monitoring | Claim fails along with substantive ones; no evidence of inadequate remedy at law; medical monitoring not permitted under Florida law; ELR. |

Plaintiffs' "shotgun" approach to pleading diverse causes of action against many different types of defendants must be rejected. DWC built a home for plaintiff Monika Howard without knowing of any defective conditions. DWC had nothing to do with the manufacture, marketing, distribution, or installation of Plaintiffs' drywall. DWC does not belong in this litigation. Because each of Plaintiffs' claims is fatally defective, this Court should dismiss Dave Walker Construction, Inc., under Fed. R. Civ. Pro. 12(b)(6).

[signature on next page]

Respectfully submitted,

**ADAMS AND REESE LLP**

s/Christopher A. D'Amour
CHRISTOPHER A. D'AMOUR (La. Bar # 26252)
MEGAN HAGGERTY GUY (La. Bar # 26316)
DAVID C. COONS (La. Bar # 32403)
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
***Attorneys for Dave Walker Construction, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 23rd day of December, 2010.

s/ David C. Coons