007028.000004

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CASE NO.: 2047 |
| | SECTION: L |
| | Honorable Eldon E. Fallon |
| THIS DOCUMENT RELATES TO: WILTZ, ET. AL. V. BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED CO., ET. AL.  CASE No.  2:10-cv-00361 (E.D.LA.) | MAG: JUDGE WILKINSON |

**MEMORANDUM OF LAW IN SUPPORT OF TAG-ALONG DEFENDANT'S, COASTAL CONSTRUCTION OF SOUTH FLORIDA, INC'S, MOTION TO DISMISS OR IN THE ALTERNATIVE REMAND THE TAG-ALONG CASE CLAIMS TO THE COURT OF ORIGIN**

Tag-Along Defendant, Coastal Construction of South Florida, Inc. ("Coastal"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(2), hereby files this Memorandum of Law in Support of its Motion to Dismiss, with Prejudice or in the Alternative to Remand the Tag-Along Case (Case Number:10-1113) to the United States District Court for the Southern District of Florida, for lack of personal jurisdiction and for the claims asserted against it by the Plaintiff, Wendy Hobbie ("Hobbie"), as a class representative in case (Tag-Along Case Number:10-1113) from the Untied States District Court for the Southern District of Florida (Case Number 10-80320) tagged to the Wiltz Omnibus Class Action Complaint (II). In support, Coastal states as follows:

## MEMORANDUM OF LAW

Coastal, a Florida builder, that constructed the Plaintiffs' (as members of class pled in Omnibus Complaint (II) and as members of the class pled in Tag-Along complaint (case number:10-1113), (herein collectively "Plaintiffs") respective[1], even though there is no evidence, and indeed no allegation, that the construction of their homes was in any way deficient. Plaintiffs want compensation for their drywall, yet it is beyond dispute that Coastal had nothing to do with the manufacture, marketing or distribution of that drywall. Coastal, in other words, does not belong in either litigation, but particularity in the United States District Court for the Eastern District of Louisiana.

The futility of the claims asserted against Coastal underscores this point. In a shotgun pleading, in both the Tag-Along and the Wiltz cases, that makes no effort to distinguish between Coastal and the entities actually responsible for the drywall, Plaintiffs have offered a laundry list of generic common law and statutory theories. However, every one of the claims asserted against Coastal should be dismissed as fatally defective pursuant to Rule 12(b)(6), and therefore should be dismissed or in the alternative remanded to the Untied States District Court for the Southern District of Florida.

## I.      BACKGROUND

A.     **Plaintiffs' Allegations Against Coastal**

The Omnibus Complaint needlessly lumps together thousands of parties over hundreds of pages of truly boilerplate allegations. This is also true as to the allegations pled in Tag-Along Complaint. To the extent that Plaintiffs in the Tag-Along case allege identical counts. Therefore,

---

[1] This Memorandum cites to the Wiltz Amended Omnibus Complaint as "Cmplt.¶___" which Plaintiffs have adopted by reference

Coastal will simplify its arguments through reference of the allegations contained in the Omnibus Complaint (II). Plaintiffs have alleged the following twelve claims[2] against Coastal: Negligence (Count 1, ¶¶ 782-789); Negligence Per Se (Count II, ¶¶ 790-796); Strict Liability (Count III, ¶¶ 797-814); Breach of Express and/or Implied Warranties (Count IV, ¶¶ 815-822); Breach of Implied Warranty of Habitability (Count VI, ¶¶ 835-841); Breach of Warranty under Florida's Condominium Code) (Count V ¶¶ 823-834) Breach of Contract (Count VII, ¶¶ 842-845); Private Nuisance (Count XI, ¶¶ 877-883); Negligent Discharge of Corrosive Substance (Count XII, ¶¶ 884-890); Unjust Enrichment (Count XIII, ¶¶ 891-894); Violation of Florida's Deceptive and Unfair Trade Practices Act (Count XIV, ¶¶ 895-899); and Equitable and Injunctive Relief and Medical Monitoring (Count XV, ¶¶ 900-912). Each of these claims is governed by and arises under the law of Florida.[3]

## B.  The Governing Legal Standard

A motion to dismiss under Rule 12(b)(2) should be granted for there is no evidence to support that the Court has personal jurisdiction of a non-resident defendant. This case is one of a multitude of cases which have been consolidated into a Multi-District Litigation ("MDL") located in this Court. Nevertheless, each case in the MDL maintains its individual standing and each defendant must be subject to the personal jurisdiction of the court in which the case is brought. That is, because this case was initiated and is pending in the Eastern District of Louisiana, the defendants, including Coastal by and through the tag-along case (Case

---

[2] There are sixteen Counts in the Omnibus Complaint, but only twelve of them arguably apply to Coastal. The three remaining Counts do not, Specifically, Intervention Cmplt., p. 12. Count VIII applies to "Louisiana Home Builders Only," and no one disputes that Coastal resides in Florida. Id. ¶¶ 846-852. Count IX ("Redhibition - by Louisiana Plaintiffs") does not apply because Plaintiffs are allegedly residents of Florida, not Louisiana. Id. ¶¶ 853-862; Intervention Cmplt., p. 12. Finally, Count X (Louisiana Products Liability Act) applies solely to "Manufacturing" or "Distributor" Defendants, whereas the Omnibus Complaint identifies Coastal as a "Developer/Builder" Defendant. ¶¶ 823-834.

[3] Florida has, by far, the most significant relationship with the dispute. Plaintiffs' alleged drywall injuries occurred in Florida, the subject properties are located in Florida, and Coastal resides in Florida.

Number:10-1113), if that is who Plaintiffs meant to sue by naming Coastal must be subject to the personal jurisdiction of this Court. The case must be dismissed as to any defendant, such as Coastal, over which the Court does not have personal jurisdiction. Class certification or attempted class certification does not obviate the need for personal jurisdiction or alter the jurisdictional analysis that the Court must conduct to assess whether a defendant is subject to personal jurisdiction in this Court. In re: Train Derailment Near  Amite, Louisiana on October 12, 2002, 2004 WL 224573 (E.D.La. 02/03/2004).

A motion to dismiss under Rule 12(b)(6) should be granted if the allegations in the Complaint, even if proven true, would not entitle the plaintiff to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & 570 (2007); Fed. R. Civ, P. 12. Plaintiffs' obligation "to provide the 'grounds' of [their] 'entitlement to relief requires more than labels and conclusions." Id. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Jabal, 129 S. Ct. 1937, 1949 (2009).

Therefore, the Tag-Along should be dismissed or in the alternative remand to the United States District Court for the Southern District of Florida.

## II.      ARGUMENT

This Court does not have jurisdiction over Coastal pursuant to Fed. R. Civ. Pro. 12(b)(2). Coastal does not and does not intend to subject itself to the jurisdiction of this Court for any reason other than to contest this Court's purported jurisdiction over it.

In addition, each of the causes of action asserted against Coastal should be dismissed pursuant to Civil Rule I 2(b)(6) because none of them state a claim for relief or alternatively remanded to the court of origin. This Memorandum addresses the incurable defects in each of Plaintiffs' twelve claims against Coastal, and the Court lack of personal jurisdiction.

**A.** **The Complaint Should Be Dismissed For Lack of Personal Jurisdiction or remanded to the court of origin**

The plaintiffs have the burden to show that personal jurisdiction may be properly exercised. Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006); Familia De Boom v. Arosa Mercantil, S.A., 629 F.2d 1134, 1138 (5th Cir. 1980). A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant only if two (2) requirements are satisfied: first, the forum state's long-arm statute confers personal jurisdiction; and second, the exercise of jurisdiction does not exceed the boundaries of constitutional due process. Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 270 (5th Cir. 2006).

The Due Process clause limits a Court's power to assert personal jurisdiction over a non-resident defendant. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 413-14 (1994). The necessary Due Process inquiry consists of two steps. First, the Court must establish whether the non-resident defendant has the requisite minimum contacts with the forum state (here, Louisiana). See Luv N' Care, 438 F.3d at 469 (citing Int'l Shoe Co. V. Washington, 326 U.S. 310 (1945)). Second, the Court must determine whether exercising personal jurisdiction over the non-resident defendant would violate "traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316. As applied in this case, the Due Process inquiry demonstrates that the Court lacks the power to assert personal jurisdiction over Coastal.

The minimum contacts analysis can take two forms and the constitutional limits on the exercise of personal jurisdiction differ depending on whether the Court seeks to exercise general or specific jurisdiction over the non-resident defendant. See e.g., World-wide Volkswagen Corp. v. Woodsen, 444 U.S. 286 (1980); Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408 (1984). In this case, because Coastal has no contacts with Louisiana, the Court unequivocally lacks the power to exercise either general or specific jurisdiction over Coastal.

The Court may exercise specific jurisdiction over a non-resident defendant "in a suit arising out of or related to the defendant's contacts with the forum." Seiferth, 472 F.3d at 271 (citing Helicopteros Nacionales, 466 U.S. at 414-15). The Fifth Circuit in Seiferth articulated the following three part analysis related to whether personal jurisdiction is properly exercised over a non-resident defendant: (1) whether the defendant has minimum contacts with the forum state so that it could be said that the defendant purposefully directed its' activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. Seiferth, 472 F.3d at 271 (citing Burger King Corp. V. Rudzewicz, 471 U.S. 462, 474 (1985); Nuovo Pignone, Spa v. Storman Asia M/V, 310 F.3d 374, 378 (5th Cir. 2002). The first prong of this analysis requires that Plaintiffs establish that Coastal, if that is who the Plaintiffs meant to sue Coastal by and through the tag-along case (Case Number 10-80320), purposefully availed itself of the privilege of conducting activities in Louisiana, thus invoking the benefits and protections of Louisiana's laws. Jones v. Petty-Ray Geophysical, 954 F.2d 1061, 1068 (5th Cir. 1992) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)). This prong is the constitutional touchstone for the exercise of personal jurisdiction. See Asahi Metal  Indus. Co., Ltd. v. Superior Court of Calif., Solano County, 480 U.S. 102, 108-09 (1987).

### i.        Plaintiffs have not and cannot establish the first prong of this analysis

Louisiana's long arm statute, La. R.S. 13:3201(B), provides that a court "may exercise personal jurisdiction over a non-resident on any basis consistent with ... the Constitution of the United States." Because the limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, the inquiry becomes simply whether this Court's exercise of personal jurisdiction over Coastal would offend due process. Luv  N' Care, Ltd. v. Insta-Mix,

Inc., 438 F.3d 465, 469 (5th Cir. 2006); see also <u>Electrosource, Inc. v. Horizon Battery</u> <u>Technologies, Ltd.</u>, 176 F.3d 867, 871 (5th Cir. 1999).

Coastal is not registered to do business in Louisiana. Coastal does not have any office or employees in Louisiana. Coastal does not own any property in Louisiana. Moreover, as reflected on the face of the Complaint, the only claim raised against Coastal, if that is in fact who the Plaintiffs meant to sue, does not relate in any way whatsoever to Louisiana. In fact, Plaintiffs have affirmatively alleged that a corporation named Coastal performed work for plaintiffs located was located in Florida, not Louisiana. Plaintiffs have failed to establish that Coastal, if that is in fact who Plaintiffs meant to sue, purposefully availed itself of the privilege of conducting business in Louisiana; and therefore, the Court cannot exercise specific jurisdiction over Coastal and the Tag-Along case should be remanded to the court of origin.

**ii.**        **Plaintiffs have not and cannot establish the second prong of this analysis**

To satisfy the second prong of the analysis, Plaintiffs' causes of action must arise out of or relate to Coastal's forum-related contacts. Plaintiffs, however, have not and cannot establish that any of the causes of action asserted against Coastal, that arise out of or relate to any conduct in Louisiana. Coastal simply has no contact with Louisiana on which to base personal jurisdiction.

The underlying basis for this class-action lawsuit is allegedly defective Chinese Drywall used in the construction of certain residences. Yet, as reflected on the face of the Complaint, the only residence allegedly involving Coastal, which is not located in Louisiana. Moreover, Coastal is not registered to do business in Louisiana. Coastal does not have any offices or employees in Louisiana, nor does it own property in Louisiana. As Coastal has no contacts whatsoever with Louisiana, none of the Plaintiffs' tort-based causes of action arise out of or relate to Coastal's forum-related contact. That is, Louisiana contacts are non-existent.

### iii.        Plaintiffs have not and cannot establish the final prong of this analysis

Finally, the exercise of personal jurisdiction over a non-resident defendant must be fair and reasonable. Plaintiffs have not and cannot establish this third prong of the personal jurisdiction analysis because exercising personal jurisdiction over Coastal is anything but fair and reasonable. Under the reasonableness prong, the exercise of personal jurisdiction is only reasonable if it does not offend "traditional notions of fair play and substantial justice." Latshaw v. Johnson, 167 F.3d 208, 211 (5th Cir. 1999). The Court must also consider the burden placed on Coastal, as a non-resident defendant, by requiring it to litigate in this forum. See e.g., World-wide Volkswagen  Corp. v. Woodson, 444 U.S. 286 (1980). Coastal, in being hailed into a court located far from its place of business and where it has no minimum contacts, would be subjected to an undue and improper burden. In addition, most (if not all) of the critical witnesses, along with all of the physical evidence and related documents, necessary to proceed with the purported claims against Coastal are located in Florida. In light of the foregoing it would be unreasonable and unfair to force Coastal to defend this matter in Louisiana.

The sole focus of a general jurisdiction inquiry is whether there are continuous and systematic contacts between Coastal and Louisiana as would give rise to personal jurisdiction. See Dickson Marine, 179 F.3d at 339. The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum. In the absence of any contacts whatsoever with Louisiana, an exercise of general jurisdiction over Coastal would offend due process. On the facts of this case (i.e., Coastal is a Florida corporation with its principal place of business in Florida; Coastal is not licensed or registered to do business in Louisiana, has no offices, employees, property, bank accounts, or other resources in Louisiana, has never worked on a residence in Louisiana, and has not had any contracts or subcontracts with

companies located in Louisiana.), Coastal lacks the "continuous and systematic" contacts required for general jurisdiction.

For the foregoing reasons, adjudicating this dispute against Coastal in Louisiana would violate the minimum contacts required to fulfill due process and impede any notion of "fair play and substantial justice." As such, Plaintiffs' Complaint must be dismissed against Coastal for lack of personal jurisdiction and therefore, the tag-along case should be remanded back to the court of origin.

B.  **Plaintiffs' tort claims (Counts I, II, III, XI, XII, XIII and XV) are barred in whole or in part by the Economic Loss Rule[4]**

The Plaintiffs are both indisputably in privity of contract with Coastal with regard to the construction of their properties. The homes owned by the Wendy Hobbie and the class of Plaintiffs are located at 1660 and 1690 Renaissance Commons Blvd, Boynton Beach, Florida 33426, in both the Omnibus Complaint (II) and tag-along Complaint. A copy of the tag-along complaint is attached hereto. In addition to being members of the tag-along case, several members have joined as Wiltz' class members, including Wendy Hobbie, ¶219; Lawerance Cohen ¶34; Ronald and Jacqueline Reckseit ¶76; Peter and Robin Bast ¶198; Frank and Carolyn Bragoli ¶199; Philip Brice ¶200; Roger Casalengo and Betty Ann Kramer ¶201; Jay and Shari Cohen ¶202; Patrick Conlin ¶204; Arish Peter and Alpa Dalal ¶205; Angelo and Deborah D'Ambrosio ¶206; Marta DeNaeva ¶208; Martha Lisa DeNavea ¶209; Marlon Ditianquin ¶211; Vincent Ercolino ¶212; Sean Flaherty ¶214; Jacques and Rose Gani ¶216; Timothy and Karen Irvin ¶220; Perry and Alice Jioia ¶221; Alan and Iilana Kellner ¶222; John and Susanna Kolich ¶

---

[4] Incorporated into its argument in support of its motion, is paraphrased ruling of Judge G. Kelley, Circuit Court Judge for the Circuit Court of Palm Beach County, Florida, granting: 1)Homebuilders Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Tort Claim Under the Economic Loss Rule and Claims for Private Nuisance; 2) Banner Supply Company's Omnibus Opening Brief on Economic Loss Rule and Nuisance; 30 Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Strict Liability Claims in *Bennett v. Centerline Homes Inc., et. al (Case No: 50-2009-CA-014458)*

223; Arthur and Martha Kovens ¶224; Leneva Jean Kropf ¶225; Mark and Diana Lemberg ¶226; Michael Leone ¶227; Barty Litwin and Mel Litwin (A/K/A Melvin Litwin) as Trustee of the Mel Litwin (A/K/A Melvin Litwin) Declaration Trust ¶228;George and Adrienne Luntz ¶229; Danielle Lee Maness ¶231; Carlos and Margarita Molina ¶233; Paul and Lois Murray ¶234; Rhoda and Aly Okaily ¶236; Joel Perecca ¶237; Nicholas and Adrienne Renzetti ¶238; Martin Riback, as Trustee of the Martin Riback Revocable Trust Agreement dated April 4, 1997 ¶239; Steven and Marsha Richman ¶240; RMM Investments, LLC ¶241; Keith Santillo ¶242; Stephen Schour and Susan Mitchell ¶243; Sandra Siegel ¶246; Stacey Ann Tilmann and Kimberly Noah ¶247; Tuller Investments, LLC ¶248; Odilio Vargas ¶249; Frances Verderame ¶250; Yefin Zagalsky and Yelena Alekseyeva ¶253; and Sheldon Zitner ¶254 all of which are Florida residents or property owners.

Because the Plaintiffs were in privity of contract with Coastal, the Economic Loss Rule (or "ELR") bars Plaintiffs from circumventing their contractual arrangements through allegations in tort. See Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc., 891 So. 2d 532, 536 & n.1 (Fla. 2004). Florida law applies the ELR in two contexts: "(1) the contractual privity ELR where two parties are in privity of contract, and (2) the products liability ELR where a defective product causes damage, but only to itself." In re Chinese Manufactured Drywall Products Liability Litig., 680 F. Supp. 2d 780, 794 (E.D. La. 2010). This Court has explained how the contractual privity ELR applies to homebuilders like Coastal:

> The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contractor breach, and in other limited circumstances. The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall. Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs.

Id. at 799 (citation omitted) (emphasis added).

Underlying the contractual privity ELR is the common-sense notion that "contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement." Indemnity Ins. Co., 891 So. 2d at 536-37.

The Plaintiffs assert numerous tort claims in the Omnibus Complaint and the tag-along Complaint, including Negligence (Count I), Negligence Per Se (Count II), Strict Liability (Count III), Private Nuisance (Count XI), Negligent Discharge of a Corrosive Substance (Count XII), Unjust Enrichment (Count XIII) and Medical Monitoring (Count XV). The ELR intercepts each of these claims, however, because "the alleged duty breached is derived from the contractual relationship" between the parties. Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co., 208 F. Supp. 2d 1310, 1315 (SD. Fla. 2002) (internal marks omitted). The central conceit of every one of the Plaintiffs' tort claims is that Coastal built homes with defective Chinese-manufactured drywall. E.g., Cmplt. ¶ 844. Because that alleged wrong is derived from the parties' contractual relationship, it cannot give rise to a tort claim.

Furthermore, and aside from the question of privity, the Plaintiffs cannot sue in tort for economic losses. Florida courts have defined economic loss in this context as "disappointed economic expectations" where the product "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain." In re Chinese Drywall, 680 F. Supp. 2d at 790 (internal marks and citation omitted). in Casa Clara Condominium

Association v. Charley Toppino & Sons, Inc., 620 So. 2d 1244, 1248 (Fla. 1993), the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. Id. at 1247. Because the plaintiffs were seeking only economic damages, the economic loss rule barred their tort claims against the supplier. Id. at 1246- 48.

The same reasoning applies here. Regardless of whether they are in privity with Coastal, the Plaintiffs cannot sue Coastal in tort for purely economic losses. As a matter of law, the economic loss rule limits them to recovering noneconomic losses (e.g., for personal injury) and damages to property other than the houses themselves.[5] See Casa Clara, 620 So. 2d at 1247-48. Plaintiffs must therefore replead their tort claims to seek only non-economic losses. Cf. Cmplt. ¶ 2647 (seeking general "damages" on negligence count).

The Court has under consideration the following omnibus motions: 1) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Tort Claims Under the Economic Loss Rule and Claims for Private Nuisance; 2) Banner Supply Company's Omnibus Opening Brief On Economic Loss Rule and Nuisance; 3) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Strict Liability Claims. The omnibus motions now before the Court have been fully briefed, and were argued at scheduled case management conferences. Having reviewed the submissions of the parties, and having heard the argument of counsel, the Court makes the following findings.

---

[5] Plaintiffs also cannot recover economic losses because they have <u>suffered</u> no such losses. The Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed." *In re Chinese Drywall,* 680 F. Supp. 2d at 792.

## <u>Economic Loss Rule</u>

The first issue or consideration is the application of Florida's economic loss rule to the tort claims asserted by the homeowner plaintiffs. The Florida Supreme Court discussed at length the origins and application of the economic loss rule in Indemnity Insurance Company of North America v. American Aviation, Inc., 891 So.2d 532 (Fla. 2004).

The economic loss rule is a limitation on tort claims where the damages suffered are economic losses. Economic losses are defined as damages for inadequate value, costs of repair and replacement of defective products, or loss of profits. Id, at 536; see also, Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc., 620 Sold 1244 (Fla. 1993). These damages are also described as the loss of the "benefit of the bargain" or "disappointed economic expectations." Indemnity Insurance, id at 536.

That the economic loss rule would not bar a claim for personal injury caused by defective Chinese manufactured drywall. Therefore, to the extent that the plaintiff homeowners are suing in tort for personal injury, the economic loss rule does not apply and such claims are not subject to dismissal. The issue is whether- and to what extent - the economic loss rule bars the recovery of economic damages in the pending Chinese drywall cases.

The Florida Supreme Court made clear in Indemnity Insurance that the economic loss rule applies in two distinct circumstances. First, the rule applies to parties in contractual privity for matters arising out of the contract. Second, the rule applies to liability for a defective product that causes damage to the product, but causes no personal injury or damage to other property.

1.    **Contractual Privity Economic Loss Rule**[6]

The Florida Supreme Court in Indemnity Insurance explained the rational for application of the contractual privity economic loss rule as follows:

> A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. Indemnity Insurance, id at 536-537.

The plaintiffs' tort claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Florida Supreme Court.

There are recognized exceptions to application of the contractual privity economic loss rule. Independent torts such as fraud in the inducement are not barred by the economic loss rule. HTP, Ltd. v. Lineas Aereas Costarricenses, SA., 685 So.2d 1238 (Fla. 1996). Claims for negligence in rendering professional services are not barred. Moransais v. Heathman, 744 So.2d 973 (Fla. 1999). Likewise, statutory claims are not barred by the economic loss rule. Comptech Intern, Inc. v. Milan Commerce Park, Ltd., 753 So.2d 1219 (Fla. 1999).None of the recognized exceptions apply here.[7]

---

[6] *Id.* Footnote 4.

[7] It is clear that homeowners are not exempt from the application of the economic loss rule on public policy grounds. *Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.,* 620 So.2d 1244, 1247 (Fla. 1993) (refusing to exempt homeowners from the economic loss rule despite their status as "an appealing, sympathetic class"). Moreover, the Court will not create an exception to the contractual privity economic loss rule based on an assertion that the drywall is an unreasonably dangerous product.

2.    **Products Liability Economic Loss Rule**[8]

The products liability economic loss rule applies in limited circumstances notwithstanding the absence of privity. The rule applies' when the product causes damage to itself, but causes no personal injury or damage to other property. The issue here is whether the plaintiff homeowners' tort claims against the defendant suppliers and installers who are not in privity with the plaintiffs are barred by the economic loss rule. Thus far, the courts in Florida have held that such claims are not barred.

The Florida Supreme Court's discussion in Indemnity Insurance has placed limits on the application of the products liability economic loss rule. That is to say, the Supreme Court made clear that the products liability economic loss rule should not be extended beyond its intended purpose, and the rule must only be applied in those limited circumstance where all elements necessary for its application have been satisfied.

This Court has already conducted a well-reasoned analysis of the economic loss rule as it applies to non-privity defendants in the multi-district Chinese drywall litigation. In Re Chinese Manufactured Drywall Products Liability Litigation, 680 F.Supp.2d 780 (N.D. Louisiana 2010). In the recent ruling by Kelley, in Bennett v. Centerline Homes Inc., et. al (Case No: 50-2009-CA-014458), the Court relied on this Court analysis.

This Court essentially concluded that the Chinese drywall that does implicate the products liability economic loss rule. The factual distinction lies in the nature of the alleged defect and its impact, or lack thereof, on the product itself.

---

[8] *Id.* Footnote 4.

In cases like Casa Clara, the defect in the product damaged the product itself. The defect in the concrete caused the concrete to fail and, presumably, to damage other components of the home. Here, the alleged defect does not damage or affect the product.

In defining the application of the products liability economic loss rule, the Florida Supreme Court has stated that the rule is implicated where "there is a defect in a product that causes damage to the product, but causes no personal injury or damage to other property." Indemnity Insurance, id. 536 [emphasis added]. The Chinese drywall alleged defect causes no damage to itself, and may at best cause personal injury or damage to other property. Therefore, the products liability economic loss rule does not apply to the personal injury or damage to other property claims.

## C.     Plaintiffs' negligence allegations (Count I) are false and improperly pleaded

Plaintiffs' negligence claim (Count I) really illustrates why Coastal does not belong in this lawsuit. The Omnibus Complaint and the Tag-Along Complaints allege that Coastal somehow owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question. Cmplt. ¶783. The Complaint further alleges that Coastal had a duty to provide Plaintiffs with certain warnings about the drywall. Id. ¶ 786.

Besides being intercepted by the economic loss rule (see discussion, supra), these allegations are indisputably false. Coastal, for example, did not "design," "manufacture," or "import" any drywall. Yet even assuming the truth of Plaintiffs' specious allegations, they do not state a claim for relief. Under Florida law, a negligence claim requires the plaintiff to plead and prove (among other things) that the defendant owed a duty to the plaintiff, and that the duty was breached. See Hansenfus v, Secord, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (Florida law)

("Failure to establish any one of these elements is fatal to the plaintiff's case."). Plaintiffs can allege neither prerequisite.

To begin with, Coastal owed no duty of care with respect to Plaintiffs' drywall. Under Florida law, even manufacturers, retailers and distributors - all of whom arguably bear a greater responsibility toward their products than a contractor like Coastal - have a duty to inspect or warn <u>only</u> when the product is considered "inherently dangerous." See O'Connor v. Kawasaki Motors Corp., 699 F. Supp. 1538, 1542-43 (S.D. Ha. 1988) (dismissing negligence claim because manufacturer had no duty to warn); Mendez v. Honda Motor Co., 738 F. Supp. 481, 483-84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous."). Drywall obviously does not fit into the narrow "inherently dangerous" category, and the Omnibus Complaint does not allege otherwise.[9]

In the same vein, Coastal cannot be held liable in negligence for latent defects absent actual or implied knowledge of those defects.. See Carter v. Hector Supply Co., 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action ... only if the retailer could be charged with actual or implied knowledge of the defect."); Ryan v. Atlantic Fertilizer & Chem. Co., 515 So. 2d 324, 326 (Ha. 3d DCA 1987) (same); see also Mendez v. Honda Motor Co., 738 F. Supp. 481, 483-84 (S.D. Ha. 1991). The alleged defects in the drywall are plainly "latent" Cmplt. ¶785), and Plaintiffs have not alleged actual or implied knowledge by Coastal.

---

[9]  "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category. They include highly toxic materials, second hand guns and drugs.... In other words ... a commodity burdened with a latent danger which derives from the very nature of the article itself." *O'Connor v. Kawasaki Motors Corp., U.S.A.,* 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted). By way of illustration, Florida courts have ruled that jet skis (id. at 1543), motorcycles (*Byrnes v. Honda Motor Co..,* 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (id.) are <u>not</u> "inherently dangerous." Drywall would certainly not be an "inherently dangerous" product under Florida law.

The result is that these Plaintiffs cannot parlay their allegedly defective drywall into a negligence claim against Coastal. Absent an "inherently dangerous" product or actual or implied knowledge neither of which Plaintiffs can allege in good faith - the first Count fails as a matter of law. The boilerplate, and wholly unsupported assertion that Coastal "knew or should have known" that the drywall would "harm" Plaintiffs (id. ¶ 788) is really a legal conclusion. That conclusory allegation cannot possibly salvage a negligence claim, particularly one that flies in the face of such basic principles of Florida law.

**C.   Plaintiffs have not stated a claim for negligence per se (Count II)**

Besides being barred by the economic loss rule, Plaintiffs' negligence per se claim (Count II) is poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort. Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons from a particular type of injury.</u>" DeJesus v. Seaboard Coast Line R.R. Co., 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se for two reasons. First, they have not identified a statute that Coastal allegedly violated, much less explained how that violation occurred, Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "statutory duties," including "those imposed under the International Building Code (IBC') and other State and local Building Codes.' Cmplt. ¶ 793. Plainly, such vague and conclusory recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. Ashcroft, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and Local Building Codes" that Coastal allegedly violated are "designed to protect the <u>general public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se.

Russ v. Wollheim, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). In other words, Plaintiffs' negligence per se claim appears to be nothing more than repackaged negligence claim.[10] It should be summarily dismissed for that reason as well.

**D.      Plaintiffs cannot sue Coastal in strict liability (Count III)**

Plaintiffs' strict liability claim (Count III) is premised on the sweeping and patently false assertion that Coastal was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." Cmplt. ¶ 798. This theory is foreclosed by the economic loss rule (supra. at Section II.A) and by at least two established principles of Florida law.

First and foremost, Coastal cannot be sued in strict liability because it did not manufacture or distribute the allegedly defective drywall. The Plaintiffs identify Coastal as a "Developer/ Builder." Strict products liability, however, is reserved for product manufactures and distributors; it does not apply to a homebuilder like Coastal. See Ugaz v. American Airlines, Inc., 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); Jackson v. L.A.W. Contracting Corp., 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Furthermore, even if Plaintiffs could sue a contractor in strict liability (and they cannot), the allegedly defective drywall is not a "product" for purposes of this particular tort. Rather,

---

[10] Plaintiffs' claim for "Negligent Discharge of a Corrosive Substance" (Count XII) is similarly duplicative of their garden-variety negligence claim. Regardless, Florida law does not appear to recognize an independent cause of action for Negligent Discharge.

under Florida strict liability law the drywall is considered a "structural improvement," as it was an integral part of Plaintiffs' homes. See Plaza v. Fisher Dev., Inc., 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007). "Florida courts have expressly <u>declined</u> to extend the principle of strict liability to structural improvements to real estate." Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc. No. 07- 80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added); see Plaza, 971 So. 2d at 924 (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); Neumann v. Davis Water and Waste, Inc., 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

In Florida it is well settled that strict liability does not apply to improvements to real property as improvements to real property are not considered products. [11] Plaza v. Fisher Development, Inc., 971 So.2d 918 (Fla. 3rd DCA 2007); Neumann v. Davis Water & Waste, Inc,, 433 So. 2d 559 ( Fla. 2d DCA 1983) see Easterday v. Masiello, 518 So.2d 260, 261 (Fla.1988) (it has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate."); Jackson v. L.A.W. Contracting Corp., 481 So.2d 1290, 1291 (Fla. 5th DCA 1986).

Although Plaintiffs in Florida have argued that an exception exists with respect to improvements to real property "where the injuries result not from the real property as improved by the alleged defective product but directly from a defective product manufactured by defendant, which product may have itself been incorporated into the improvement of the realty before the injury from the product occurred." Jackson v. L.A.W. Contracting Corp., 481 So.2d

---

[11] *Id.* Footnote 4.

1290, 1292 (Fla. 5th DCA 1986); Craft v. Wet 'N Wild, Inc., 489 So.2d 1221, 1222 (Fla. 5th DCA 1986).[12]

Whether the exception exists or not, it does not appear that the exception would apply to the defendant homebuilders. The exception appears to apply to the manufacturer of an allegedly defective product which happens to be incorporated into the real property. For a fact, Coastal did not manufacture the drywall at issue.

Coastal asserts that only manufacturers, and those in the distributive chain of a product, can be held strictly liable. Coastal is not the manufacturers and they are not within the distribution chain of the drywall.

**E.      Plaintiffs cannot maintain a warranty claim (Counts IV & VI)**

In Counts IV (Breach of Express Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiffs allege causes of action based on various express and implied warranties.[13] Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties - let alone explain how Coastal might have breached them - these improvised warranty claims should be dismissed for several independently sufficient reasons.

**a.      The Plaintiff's's express and implied warranty claims are foreclosed by the plain language of their Construction Agreements.**

The Plaintiffs' express warranty claim should be dismissed as a matter of law because their contracts with Coastal expressly limited the duration of any express warranties to, at most, one (1) year from the date of the Certificates of Occupancy. None of the Class Plaintiffs have alleged that they' experienced defects within the limited warranty period. Their express warranty

---

[12] *Id.* Footnote 4.

[13] The Omnibus Complaint also includes a claim for "redhibition" on behalf of "Louisiana Plaintiffs" (Count IX), but the Plaintiffs do not reside in Louisiana. See Cmplt. 1 462, 481 & 427. Besides, redhibition requires a showing that the allegedly defective product - here, drywall - failed for its intended purpose. *See Benoit v. Ryan Chevrolet,* 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). This showing is unavailable in light of the Court's determination that the drywall is "serving its intended structural purpose." Order & Reasons at 23.

claims are barred by the terms of the warranties themselves. "[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects-defects that may exist before, but typically are not discovered until after, the expiration of the warranty period." Canal Elec. Co. v. Westinghouse Elec. Co., 973 F.2d 988, 993 (3d Cir. 1992) (citing numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period but did not manifest until after warranty period had expired); see Duquesne Light Co. v. Westinghouse Elec. Co., 66 F.3d 604, 616-617 (3d Cir. 1995) ("[L]atent defects discovered. after the term of the warranty are not actionable." (citation omitted)); see also Brisson v. Ford Motor Co., 349 Fed. Appx. 433, 434 (11th Cir. 2009) (affirming dismissal of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period") (Florida law); accord McKissic v. Country Coach, Inc., No. 8:07-cv-1488-T-17EAJ, 2009 WL 500502, at *12 (M.D. Ha. Feb. 27, 2009) (holding that statute of limitations for warranty claim "cannot begin to run later than the expiration of the warranty as the warrantor did not expressly agree to provide warranty coverage beyond this date"); and Deana v. Ford Motor Co., 992 So. 2d 319, 324 (Fla. 3d DCA 2008) ("[T]here can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms.").

> **b.    Plaintiff also cannot maintain a claim for breach of warranty of merchantability or of fitness for a particular purpose.**

Plaintiffs' implied warranty claims must also be dismissed. In Florida, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by Coastal. That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of

services, not a merchant." Lonnie D. Adams Building Contractor, Inc. v. O'Connor, 714 So. 2d
1178, 1179 (Ha. 2d DCA 1998); In re Sunshine-Jr. Stores, Inc., 240 B.R. 788, 794 (Bkrtcy. M.D.
Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

Coastal is not bound by any implied warranties because it is not considered a merchant
under Florida warranty law. Coastal contracts with its clients to provide a service: "home
construction." Because the inclusion of drywall in Plaintiffs' homes was incidental to the
construction services that Coastal rendered, the implied warranties of merchantability and of
fitness for a particular purpose do not apply in these circumstances. See In re Sunshine-Jr., 240
B.R. at 794 ("[A]lthough construction contracts typically involve materials that qualify as goods
(such as concrete or roofing tiles, for example), the services element of such contracts is usually
held to be dominant.") (internal marks omitted) (citing BMC Indus., Inc. v. Barth Indus., Inc.,
160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); Jackson, 481 So. 2d at 1291 (finding warranty
claims unavailable against contractor who used allegedly defective product in road work).

Finally, the claim for implied warranty of fitness for a particular purpose (Cmplt. ¶ 820)
cannot survive because Plaintiffs have not - and indeed cannot - allege that the drywall in their
homes was unfit for a particular or unusual purpose different from that for which drywall is
ordinarily used. The Court has already determined that "[t]he Chinese drywall stands just as any
other functioning drywall, <u>serving its intended structural purpose.</u>" In re Chinese Drywall, 680 F.
Supp. 2d at 792 (emphasis added) ("Rifle Chinese drywall in the instant matter is operating as
intended[.]"). This adjudicated fact is, by itself, fatal to the claim for breach of the implied
warranty of fitness for a particular purpose.[14]

---

[14] *See Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.,* 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding
dismissal of particular purpose warranty claim where plaintiff did not "allege a particular or unusual use different from the
purpose for which the item sold was ordinarily used"); *McGraw v. Fleetwood Enters., Inc.,* No. 6:07-cv-234-0r1-28DAB, 2007
WL 2225976, *2 (M.D. Ha. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

**F.      Plaintiffs' breach of contract claim (Count VII) must be dismissed**

The Omnibus Complaint and the Tag-Along Complaint state that Coastal "contracted with the [Plaintiffs] to construct homes that would be free from defects." Cmplt. ¶ 843. This assertion is insufficient on its face, because it fails to identify the source of Coastal's alleged duty to construct a home "free from defects." If the Plaintiffs hope to salvage their contract claims, they must, at the very least, "identify the relevant portion of the contract[s] breached." 14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co., No. 8:-07-cv-788-T-27EAJ, 2008 WE 4853635, *4 (M.D. Fla. Nov. 6, 2008); see Insurance Concepts & Design, Inc. v. Healthplan, Serv., Inc., 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached").

While Plaintiffs will undoubtedly try to justify their skeletal allegations by pointing to the "Omnibus" nature of the Complaint, the decision to join this litigation does not excuse Plaintiffs from satisfying basic pleading standards. It does not cloak them with immunity from the requirements of due process. The concern is not merely academic, either. Contrary to the boilerplate allegation in the Omnibus Complaint, Coastal did not agree to build a home "free from defects." Cmplt. ¶843.

Coastal agreed to "construct a building in accordance with the plans and specifications and pursuant to the applicable building and zoning codes for Palm Beach County, Florida. Further, Coastal agreed all materials and perform all work on the construction provided for in the plans and specifications in a good and workmanlike manner.

Whatever the meaning of this language - and there is good authority that it absolves Coastal from liability for the allegedly defective drywall[15] it certainly does not mean a home "free from defects." See Lonnie D. Adams, 714 So. 2d at 1179 (holding that although contractor had a duty to perform contract in a "workmanlike" manner, there was no implied duty to deliver defect-free windows to the homeowner-plaintiffs). To put it another way, Plaintiffs must base their breach of contract claims on actual contracts between the parties. Unless and until they do that, their breach of contract claims cannot survive.

### G.   Plaintiffs cannot state a claim for private nuisance (Count XI)

Plaintiffs' private nuisance claim (Count XI) would fail even if it were not barred by the economic loss rule. See supra. at Section II.A. An action for private nuisance requires the claimant to establish an injury to his or her own property in connection with the use of the real property of someone else. See Jones v. J.B. Trawick, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").

The Omnibus and Tag-Along Complaints does not allege that Plaintiffs' purported injuries resulted from real property owned by Coastal. On the contrary, the nuisance claim is predicated entirely on the allegation that "structures owned by Plaintiffs"' are to blame. Cmplt. ¶ 878. That allegation simply does not state a claim for private nuisance. See, e.g., Morgan v. W.R. Grace & Co., 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiffs] own property, which existed at the

---

[15] Indeed, regardless of whether they can ever allege the elements of a breach of contract claim, Plaintiffs will be hard-pressed to show that Coastal did not construct their homes in a workmanlike manner. The Court has determined that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed." In re: *Cihinese Drywall,* 680 F. Supp. 2d at 792.

time she purchased the land"); accord Weaver v. United States, 809 F. Supp. 527, 534 (ED. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

Florida law essentially defines nuisance as:[16]

> using one's property as to injure the land or some incorporeal right of one's neighbor... The law of nuisance plays between two antithetical extremes: The principle that every person is entitled to use his property for any purpose that he sees fit, and the opposing principle that everyone is bound to use his property in such a manner as not to injure the property or rights of his neighbor... The law of private nuisance is a law of degree; it generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances.

Beckman v. Marshall, 85 So. 2d 552, 554-55 (Fla, 1956) (approving and adopting the language of Antonik v. Chamberlain, 78 N.E.2d 752 (Ohio Ct. App., 1947).

Plaintiffs assert that there is no exhaustive definition of what constitutes a nuisance citing Windward Marina, L.L,C. v. City of Destin, 743 So. 2d 635 (Fla. 1st DCA 1999). Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. Jones v. Trawick, 75 So. 2d 785, 787 (Fla. 1954) ("This court recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another") (citing Reaver v. Martin Theatres of Florida, Inc., 52 So, 2d 682 (Fla. 1951). It seems clear that the underlying policy of private nuisance jurisprudence does not support the plaintiffs' application of the doctrine of private nuisance in Chinese drywall litigation.[17]

---

[16] *Id.* Footnote 4.

[17] *Id.* Footnote 4.

Many Plaintiffs in Florida have relied rely on a four-part test for establishing the existence of a private nuisance purportedly established by the Court in Beckman. According to the plaintiffs, none of the four components makes any mention of a requirement that a private nuisance must involve two landowners. However, such a roadmap for establishing a private nuisance is neither expressed nor implied by the Court in Beckman.[18]

In fact, much of the instructive language in Beckman seems to contradict the plaintiffs' position that nuisance actions do not necessarily involve contemporaneous and proximate private land owners. Beckman, id at 555 ("no one has absolute freedom in the use of his property, because he must be restrained in his use by the existence of equal rights of his neighbor to the use of his property."). Id[19].

Further, none of the cases plaintiffs rely on directly support the contention that a nuisance may exist absent a defendant's exercise of its property rights. See, e.g., Davey Compressor Co. v. City of Delray Beach, 639 So. 2d 595 (Fla. 1994) (holding that a defendant who illegally disposed of a highly toxic solvent by dumping it onto the grounds at the rear of its facility created a nuisance because it contaminated plaintiff's water supply); Kotcher v. Santaniello, 438 So. 2d 440, 441 (Fla. 1983) (declining to reverse an injunctive order which was "principally predicated upon a determination that the appellants' conduct in keeping and training dogs for attack and security purposes constituted a nuisance in the residential neighborhood where all of the parties resided").[20]

The only case which arguably supports plaintiffs' position, Putnam v. Roudebush, 352 So. 2d 908 (Fla. 2d DCA 1977), held that a noisy air conditioner was a "continuing nuisance" that

---

[18] *Id.* Footnote 4.

[19] *Id.* Footnote 4.
[20] *Id.* Footnote 4.

constituted a "permanent defect in the realty." However, private nuisance was not even a claim

in the Putnam case. The Court's reference to the air conditioning being a nuisance was merely a

descriptive reference, and not a statement of a legal claim. Taken together, neither the case law

nor the policy underpinnings of the nuisance doctrine support such a cause of action for private

nuisance in this case.[21]

**H.      Plaintiffs cannot bring a claim for unjust enrichment (Count XIII)**

Plaintiffs' unjust enrichment claim (Count XIII) fails for multiple reasons. For one, the

structural expectations of the Plaintiffs with regard to the drywall are not disappointed." In re:

Chinese Drywall, 680 F. Supp. 2d at 792. Construction Agreements between Coastal and the

Plaintiffs foreclose a quasi-contractual theory. "It is well-settled in Florida that unjust enrichment

is an equitable remedy and is, therefore, not available where there is an adequate legal remedy."

American Honda Motor Co. v. Motorcycle Info. Network, 390 F. Supp. 2d 1170, 1178 (M.D.

Fla. 2005). Where (as here) the plaintiff admits to the existence of a contract, "claims arising out

of that contractual relationship will not support a claim for unjust enrichment." Moynet v.

Courtois, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); Validsa, Inc. v. PDVSA Serv., Inc., 632 F.

Supp. 2d 1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties "admitted to the

existence of express contracts").[22]

Even absent the foregoing, Plaintiffs still cannot maintain their unjust enrichment claims

as a matter of law. The elements of unjust enrichment are that "(1) the plaintiff has conferred a

benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has

accepted or retained the benefit conferred and (4) the circumstances are such that <u>it would be</u>

<u>inequitable for the defendant to retain the benefit</u> without paying fair value for it." Commerce

---

[21] *Id.* Footnote 4.
[22] Even if the existence of an express contract did not bar the Plaintiffs' unjust enrichment claim against Coastal. The economic
loss rule would. *Supra.* At Section II.A.)

Partnership 8098 Ltd. v. Equity Contracting Co., 695 So. 2d 383, 386 ..(Fla. 4th DCA 1997) (emphasis added); Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

The Plaintiffs' unjust enrichment claim stumbles on the fourth of these elements. There is nothing inequitable or unjust about permitting Coastal to retain whatever benefit it received for constructing the Plaintiffs' homes because it cannot be disputed that Coastal paid a third party (i.e., a subcontractor or distributor) for the drywall in question. As the Florida appellate court explained in Maloney v. Therm Alum industries, Corp., [t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, if the (defendant:  has given any consideration to any  person for the improvements. it would not be unjust for [the defendant] to retain the benefit." 636 So. 2d 767, 770 (Fla. 4th DCA 1994), overruled on other grounds by, Commerce Partnership, 695 So, 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities). Thus, not only is the Plaintiffs' unjust enrichment claim is barred because whatever compensation Coastal received for the drywall was not retained "unjustly."

## I.   The Omnibus Complaint fails to state a claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIV)

In the overbroad style that is the hallmark of the Omnibus and Tag-Along Complaints, Plaintiffs also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201 et seq. ("FDUTPA"). Cmplt. ¶ 896. A FDUTPA claim comprises three distinct elements: (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) actual damages. See Lydia Security Monitoring, Inc. v. Alarm One, Inc., No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b). See Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). "In light of this trend, claims arising under the FDUTPA must be pled with particularity." Wrestlereunion, LLC v. Live Nation TV Holdings, Inc., No. 8:07-cv-2093-JDW-MSS, 2008 WL 3.048.859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); see Sunoptic Technologies, LLC v. Integra Luxtec, Inc., No. 3:08-ev-878-.1-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA ... [must] meet the heightened pleading standard under Rule 9(b)(b)) (citing authorities). At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Ziemba v. Cascade Intl, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001); Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard. Indeed, it alleges no specific facts in support of Plaintiffs' FDUTPA claim. See Cmplt. ¶ 897. It does not identify a single instance in which Coastal - by its words or conduct - deceived Plaintiffs or treated them unfairly. Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(h). See Florida Digital Network, Inc. v. Northern Telecom, Inc., No. 6:06-cv-889-0r1-31-.100, 2006 WI, 2523163, *5 (M.D. Fla. Aug.

30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); Sunoptic, 2009 WL 722320, at *2 (same).[23]

Plaintiffs' failure, however, is not merely one of pleading. Their FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to them. See Rollins v. Butland, 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); Barrow v. Bristol-Myers Squibb Co., No. 96-689-CIV-ORL-19B, 1998 WL. 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury). Because Coastal provided services - namely, the construction of a condominium project - Plaintiffs can establish "actual damages" only by showing a difference between the "market value" of the services that Coastal actually provided and the services that Coastal was required to provide.[24] See Collins v. Daimler-Chrysler Corp., 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties" (citations omitted)).

As a matter of law, Plaintiffs cannot make this showing. There is zero evidence - and Plaintiffs do not appear to suggest - that the manner in which Coastal constructed the homes was in any way responsible for the allegedly defective drywall. The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as

---

[23] Plaintiffs' FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply. A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly'" and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc.,* No. 07-80690-CIV,, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

[24] The same would hold true if Coastal had delivered a "product" - i.e., a completed home – rather than providing a "service." To recover under FDUTPA, Plaintiffs would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered. *See Collins,* 894 So. 2d at 990.

intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." In re: Chinese Drywall, 680 F. Supp. 2d at 792.

So even if Plaintiffs could conceivably replead their FDUTPA claim with the particularity demanded by Rule 9(b), they have no hope of establishing the "actual damages" component of that claim. Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); see TWM v. American Med. Systems, Inc., 886 F. Supp. 842, 851 (N.D. FL 1995). Count XIV must be dismissed for this reason as well.

**J.     Plaintiffs' claim for equitable relief and medical monitoring (Count XV) cannot go forward against Coastal**

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XV). This hybrid, catchall-type claim seeks, among other things, an order that Coastal "buy back or rescind" its contracts and "create, fund, and support a medical monitoring program." Cmplt. ¶ 903. This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that binges on the substantive claims upon which it is based. Since each of Plaintiffs' substantive claims is due for dismissal, so too is their derivative claim for injunctive relief. See, e.g., Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that [t]here is no such thing as a suit for a traditional injunction . in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim)."

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support to an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiffs have failed to allege an inadequate legal remedy or irreparable harm. Injunctions under both federal and Florida law require these elements. See, e.g., Tucker v. Citigroup Global Mkts. Inc., No. 2:06-cv-585-FtM-34DNF, 2007 W1, 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury, (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted). Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint including, most notably, for "compensatory and statutory damages" are inadequate and entitle them to the extraordinary remedy of an injunction. See, e.g., Cate v. Oldham, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); accord City of Meridian v. Algernon Blair, Inc., 721 F.2d 525. 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," it is unclear whether Florida law permits this cause of action. The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring. It is hardly clear, then, that these Plaintiffs can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus and the Tag-Along Complaints do not state an actionable claim. At the very least, and as articulated by the Third District Court of Appeal in Petito v. A.H. Robins Co, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a
> proven hazardous substance; (3) caused by the defendant's
> negligence; (4) as a proximate result of the exposure, plaintiff has a
> significantly increased risk of contracting a serious latent disease;
> (5) a monitoring procedure exists that makes the early detection of
> the disease possible; (6) the prescribed monitoring regime is
> different from that normally recommended in the absence of the
> exposure; and (7) the prescribed monitoring regime is reasonably
> necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is

defined as the costs of periodic medical examinations necessary to detect the onset of physical

harm. Id.

The Omnibus and Tag-Along Complaints do not even attempt to properly allege these

elements. Instead, Count XV sets for a series of legal conclusions - e.g., "Plaintiffs' and Class

Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct" -

without a shred of factual detail. Plaintiffs fail to identify, for example, any medical condition

(latent or otherwise) supposedly caused by their drywall; nor do they identify a monitoring

procedure for that supposed condition. <u>Plaintiffs do not even claim to be ill</u>. They would have

this Court speculate about their imaginary ailments and the means for monitoring them.

The Complaints, in other words, does not actually state a claim for medical monitoring. It

states a series of legal conclusions, and those "do not suffice." Ashcroft, 129 S.Ct. at 1949

(deeming "[t]hreadbare recitals" of the elements of a claim inadequate). The glaring deficiencies

highlighted above make the final Count subject to dismissal now, on the pleadings. See .Jacobs

v. Osmose, Inc., No. 01-944-C1V, 2002 WI, 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing

claim for medical monitoring for failure to allege essential elements); see generally Perez v.

Metabolite Intern., Inc., 218 F.R.D. 262, 271 (SD. Fla. 2003) [M]edical monitoring ... is a

separate cause of action with seven specific elements the plaintiffs must establish ..., including

three that expressly require proof of a monitoring program that meets particular standards.")

(citing Hoyte v. Stauffer Chem. Co., No. 98-3024-C1-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); see also Wyeth, inc. v. Gottlieb, 930 So. 2d 635, 642:(Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); Rink v. Cheminova, Inc., 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

Finally, the Plaintiffs' claims for medical monitoring are intercepted by the economic loss rule, as they were in direct privity with Coastal. The allegedly hazardous "exposure" upon which the Plaintiffs' medical monitoring claims are based was caused, according to the Omnibus and Tag-Along Complaints, by Coastal's "negligent and otherwise tortious conduct." Cmplt. ¶ 907. But the contractual privity ELR precludes them from circumventing their contract through allegations in tort. See supra. at Section II.A.

### III.       CONCLUSION

For all of the foregoing reasons, Defendant Coastal Construction of South Florida, Inc. respectfully requests an order dismissing the Amended Omnibus Class Action Complaint and the Tag-Along Complaint with prejudice, and awarding Coastal its fees incurred in defending against Plaintiffs' claims pursuant to Florida's Unfair and Deceptive Trade Practices Act and for lack of person jurisdiction or in the alternative remand the Tag-Along case to the United States District Court for the Southern District of Florida.

Respectfully submitted,

Dated: December 1, 2010

/s/ Raul R. Loredo
Raul R. Loredo, Esquire
MINTZER SAROWITZ ZERIS
LEDVA & MEYERS, LLP
The Waterford at Blue Lagoon
1000 NW 57th Court, Suite 300
Miami, FL  33126
Tel:  305-774-9966
Fax:  305-774-7743
rloredo@defensecounsel.com


/s/ Addison J. Meyers
Addison J. Meyers, Esquire
MINTZER SAROWITZ ZERIS
LEDVA & MEYERS, LLP
The Waterford at Blue Lagoon
1000 NW 57th Court, Suite 300
Miami, FL  33126
Tel:   305-774-9966
Fax:  305-774-7743
ameyers@defensecounsel.com

CERTIFICATE OF SERVICE

I, hereby certify that the above and forgoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by United States Mail and email or hand delivery and email and upon all parties electronically uploading same to Lexis Nexis File and Serve® in accordance with Pre-Trial Order No.: 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with procedures established in MDL 2047 on December 1, 2010.


/s/ Raul R. Loredo
Raul R. Loredo