### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL MDL NO. 09-2047
PRODUCTS LIABILITY LITIGATION

                                                  **SECTION L**
                                                  **JUDGE FALLON**
                                                  **MG. JUDGE WILKINSON**

THIS DOCUMENT RELATES TO:
*Joyce W. Rogers v. Knauf GIPS KG, et al.*
*Case No. 10-362*
_____/

### DEFENDANT'S, ALBANESE-POPKIN THE OAKS DEVELOPMENT GROUP, L.P., MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS INTERVENER PLAINTIFFS', ALAN GODDARD AND ANNETTE GODDARD, INTERVENER COMPLAINT [D.E. 3100]

Defendant, Albanese-Popkin The Oaks Development Group, L.P. (hereinafter "Albanese"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(2) and, alternatively, pursuant to Fed. R. Civ. P. 12(b)(3) and/or Fed. R. Civ. P. 12(b)(6), hereby files its Memorandum of Law in Support of its Motion to Dismiss Intervener Plaintiffs', Alan Goddard and Annette Goddard, Intervener Complaint.  For the reasons set forth in this Memorandum, the Court should grant Defendant's Motion.

### INTRODUCTION

On or about May 7, 2010, Intervener Plaintiffs, Alan Goddard and Annette Goddard (hereinafter "Goddards" and/or "Intervener Plaintiffs"), filed their Motion for Leave for Permissive Intervention [D.E. 3100][1].  On or about June 1, 2010, the Court granted Intervener Plaintiffs', Goddards, Motion and deemed their Intervener Complaint as filed [D.E. 3452].   Such Complaint

_____

[1] On or about May 7, 2010, the instant Intervener Plaintiffs filed the same Motion for Leave for Permissive Intervention with the identical intervener complaint in the case styled *Kenneth and Barbara Wiltz v. Knauf GIPS KG, et al., Case No. 10-361*, pending in the United States District Court for the Eastern District of Louisiana [D.E. 3099]. On or about June 1, 2010, the Court granted the Intervener Plaintiffs' Motion [D.E. 3451]. Because the allegations of the Intervener Complaint filed in *Wiltz* are identical to the allegations filed in the Intervener Complaint, the Court should not allow the Intervener Plaintiffs to maintain the same claims against Defendant, Albanese, in two different lawsuits.  The Court should require that Intervener Plaintiffs elect a case in which to proceed against the Defendant, Albanese.

titled "Second Amended Complaint" purports to be class action complaint against Defendant, Albanese, and other defendants. The instant class action lawsuit[2] generally arises from the alleged use of Chinese manufactured drywall in the Intervener Plaintiffs' home. The Goddards have attempted to assert claims against Albanese, a Florida home builder, and other entities which allegedly designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective Chinese drywall. The instant Intervener Complaint purportedly directs the following causes of action against Defendant, Albanese[3]: Negligence (Count II); Breach of Implied Warranty (Count III); Breach of Contract (Count IV); and Breach of Contract/Breach of Express Warranty (Count V). However, Intervener Plaintiffs' Complaint must be dismissed as this Court does not have personal jurisdiction over Defendant, Albanese. Alternatively, the forum selection clause requires that any dispute between the parties be brought in Palm Beach County, Florida. Further, Intervener Plaintiffs' claims are defective, not supported by Florida law and must be dismissed as a matter of law.

## MEMORANDUM OF LAW

**I.    PURSUANT TO FED. R. CIV. P 12(b)(2), THE COURT SHOULD DISMISS THIS ACTION AS IT LACKS PERSONAL JURISDICTION OVER THE DEFENDANT ALBANESE**

### 1.    Legal Standard

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, it is the plaintiffs' burden to establish that in personam jurisdiction exists. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert denied*, 513 U.S. 930 (1994). "The court may resolve a jurisdictional issue

---

[2] Should the Court not grant its Motion to Dismiss, Defendant, Albanese, reserves the right to assert all defenses to class certification once the Intervener Plaintiffs file their motion for class certification.

[3] There are other counts to the subject Intervener Complaint, but Counts I, VI and VII are not directed at Defendant, Albanese.

by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof." *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992). The allegations of a complaint are taken as true except as controverted by the defendant's affidavits. *Asacro, Inc. v. Glenara, LTD*, 912 F.2d 784, 785 (5th Cir. 1990).

      **2.**     **Intervener Plaintiffs Cannot Meet Their Burden to Establish Personal Jurisdiction Over Albanese.**

As Goddards allege in their Intervener Complaint, Defendant, Albanese, is a limited partnership organized under the laws of the State of Florida and having a principle address in Boca Raton, Florida. *Compl.* at ¶ 6. However, as the Affidavit attached hereto as Exhibit A shows, Defendant's, Albanese, only place of business is the State of Florida. Albanese has never been licensed or registered to do business in State of Louisiana, nor has it ever had any offices or employees in Louisiana. *See*. Ex. A. Albanese does not have an agent for service of process in Louisiana. *See*. Ex. A. Albanese does not have any bank accounts in Louisiana or own property in Louisiana. *See*. Ex. A. Albanese does not solicit business in Louisiana and has never transacted business in Louisiana. *See*. Ex. A. Albanese has never constructed any houses or other properties in Louisiana. *See*. Ex. A. Albanese has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana. *See*. Ex. A. Albanese does not maintain and has never maintained and/or operated an office, store, headquarters, factories, warehouses or any other facility in the State of Louisiana. *See*. Ex. A. Albanese has never advertised in Louisiana. *See*. Ex. A. Albanese has never marketed or promoted sales of any products or properties in Louisiana. *See*. Ex. A. Albanese has never received any business from any contacts in Louisiana, whether individual customers or business customers. *See*. Ex. A. The Intervener Plaintiffs making allegations against Albanese reside in the State of Florida. *See*. Ex. A. Consequently, Albanese never anticipated it would be brought into court

in Louisiana.

Generally, "[p]ersonal jurisdiction over a nonresident defendant attaches only when a defendant is amenable to service of process under the forum state's long-arm statute and the exercise of jurisdiction comports with the due process clause of the fourteenth amendment." *Asacro, Inc. v. Glenara, LTD*, 912 F.2d at 786. However, because Louisiana's long-arm statute, La. R.S. 13:3201, allows jurisdiction over a nonresident to the fullest limits provided by the Constitution, these two inquires merge into one and "the sole inquiry into jurisdiction is a one-step analysis of the constitutional due process requirements." *Ruppert v. George Kellett & Son, Inc.*, 996 So.2d 501, 505-506 (La. App. 5th Cir. 2008)(*quoting Superior Supply Co. v. Assoc. Pipe and Supply Co.*, 515 So.2d 790, 792 (La. 1987); *Asacro, Inc. v. Glenara, LTD*, 912 F.2d at 786. The due process clause limits the courts' power to assert personal jurisdiction over nonresident defendants to situations in which the defendants engage in "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990)(*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). However, even if the minium contacts exist, courts will also consider whether requiring the defendant to litigate in the forum state would be unfair. *Dalton v. R&W Marine, Inc.*, 897 F.2d at 1361; *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 (1987).

The mere fact that an action may be brought as a class action has little or no bearing on the Court's jurisdictional analysis. *In Re: Train Derailment Near Amite, La.,* 2004 WL 224573 (E.D. La. 2/3/2004)("[The personal jurisdiction determination depends solely on [the defendant's] conduct and contacts with the forum state.").

### 3.     Defendant, Albanese, Does Not Have the Required Minimum Contacts.

Courts have further refined the minimum contacts analysis to contacts giving rise to specific jurisdiction or general jurisdiction. *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602 (5th Cir. 2008).

-4-

When a cause of action arises out of a defendant's purposeful contacts with the forum, minimum contacts are found to exist and the court may exercise specific jurisdiction. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980). However, where a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum, due process requires that the defendant have engaged in "continuous and systematic contacts" in the forum to support exercise of general jurisdiction over a defendant. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). In the instant case, Albanese has no contacts with Louisiana such that it could be subjected to either specific or general jurisdiction.

### a.      Specific Jurisdiction

The Fifth Circuit Court of Appeals has articulated the following three-step analysis to determine specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (2006); *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002).

The first prong of the test considers whether the "defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Ruppert v. Kellett & Sons, Inc.*, 966 So.2d 501, 506 (La. 2008)(citations omitted). "Purposeful availment ensures that the moving party will not be haled into a jurisdiction as a result of random, fortuitous or attenuated contact, or by unilateral activity of another party or third person." *Id*. Based upon the facts presented in Exhibit A, and as set forth above, Albanese has not committed any act such that it reasonably anticipated or could have anticipated being brought into court in Louisiana,

a forum in which it has no contacts.

With regard to the second prong, at this juncture, it is impossible for Intervener Plaintiffs' claims to arise out of or result from Defendant's forum-related contacts.  As previously set forth above and in Exhibit A, Defendant, Albanese, is a homebuilder in the State of Florida which has never built a residence in the State of Louisiana.   All of the homes at issue which were built by Defendant, Albanese, are located in the State of Florida. Further, Albanese has never received any business from any contacts in Louisiana, whether individual customers or business customers. Intervener Plaintiffs have no information or evidence to show that this litigation relates to any contact with Louisiana by Albanese.  Intervener Plaintiffs do not even allege that Albanese distributed drywall in Louisiana or constructed any residences or buildings in Louisiana.  Accordingly, none of Intervener Plaintiffs' claims could arise out of or result from Defendant's forum-related contacts as no contacts exists.

With respect to the third prong, in determining whether exercising personal jurisdiction comports with traditional notions of fair play and justice, courts may look to (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interests in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of several states in furthering substantive social policies. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. at 113; *see also World-Wide Volkswagen v. Woodsen*, 444 U.S. at 292.

An examination of all of the factors can only lead to the conclusion that notions of fair play and justice would be violated with an exercise of jurisdiction over this Defendant.  First, the burden on the Defendant is heavy as it is based in Florida and has no offices, headquarters, accounts, property, post office address, telephone number, or employees in Louisiana.  *See* Ex. A.  Moreover, Defendant will incur a heavy financial burden to defend this lawsuit over Florida claims in the State of Louisiana. Second, the State of Louisiana has little or no interest in adjudicating a dispute between a Florida limited partnership and certain plaintiffs regarding claims that arose in Florida and where the witnesses

and evidence are located in Florida. Litigating this matter in Louisiana will only cause great expense and inconvenience to the parties. Third, Intervener Plaintiffs may secure relief in a proper forum other than the Eastern District of Louisiana.  Fourth, having a Louisiana court decide issues between Florida companies and Florida residents does little to further social policies especially in light of the fact that Albanese has never directed any activity to the citizens of Louisiana. Lastly, shared interests of several states would be furthered by adhering to the long held requirements that a defendant maintain minimum contacts with a forum prior to being subject to the jurisdiction of that forum's courts.

For the reasons set forth above, the Intervener Plaintiffs have not satisfied their burden of proof in justifying the Court's exercise of specific jurisdiction over Albanese.

### b.        General Jurisdiction

As previously set forth, in order for a court to exercise general jurisdiction, a defendant would have to engage in "continuous and systematic contacts" in the forum. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. at 415.  Recently, a Louisiana federal court concluded that "[t]he continuous and systematic contacts tests is a difficult one to meet, requiring extensive contacts between a defendant and forum." *Ollagues v. Kausharian*, 557 F. Supp. 2d 731, 738 (E.D. La. 5/27/2008). Again, and as previously discussed, Albanese has no contacts with the State of Louisiana, let alone continuous and systematic contacts, to justify the Court exercising its general jurisdiction.

### 4.        Alternatively, Defendant Requests that the Court Transfer the Case to the United States District Court for the Southern District of Florida.

Should the Court not dismiss this matter for lack of personal jurisdiction over the Defendant, Albanese, requests that the Court transfer this case to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1404 and/or 28 U.S.C. §1406(a).  Both statutes provide the Court the authority to dismiss and/or transfer an action to another district or division for the convenience of the parties and the interests of justice.  The Defendant, subject Intervener Plaintiffs,

subject properties, potential witnesses and potential evidence are all located in the division of the Southern District of Florida. The Southern District of Florida is a more appropriate venue and the Intervener Plaintiffs could have brought their claims there. Therefore, the Court should transfer the case there.

## II.   ALTERNATIVELY, THE COURT SHOULD DISMISS THE INTERVENER COMPLAINT PURSUANT TO FED. R. CIV. 12(b)(3)

In the instant case, the Agreement between the Goddards and the Defendant, Albanese, contains a forum selection clause. The Agreement specifically states:

> 21.   <u>Litigation</u>. In any suit or other proceeding brought by either the Buyer or Seller, the prevailing party will be entitled to recover reasonable attorneys' fees, reasonable costs and expenses actually incurred by the prevailing party in such suit or proceeding or in any appeal and **Buyer and Seller agree that venue for such litigation shall be in Palm Beach County, Florida**.

A true and correct copy of the Agreement for Purchase and Sale is attached hereto as Exhibit B[4].

In *Lim v. Offshore Specialty Fabricators, Inc*., 404 F.3d 898, 902 (5th Cir. 2005), the Fifth Circuit Court of Appeals determined that a Rule 12(b)(3) motion is the proper procedural vehicle to request dismissal based on a forum selection clause. The Fifth Circuit has further held that the enforceability of a forum selection clause is a question of federal law. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 & nn. 10 & 11 (5th Cir.1997). Federal law applies "whether jurisdiction be based on

---

[4] Defendant, Albanese, has attached to this Memorandum, as Exhibit B, the written Agreement for Purchase and Sale, between Albanese and the Intervener Plaintiffs, Goddards (hereinafter "Agreement"). Although Intervener Plaintiffs failed to attach said Agreement to their Intervention Complaint, federal courts have held that a document that a defendant attaches as an exhibit to a motion to dismiss may be considered by the court if a plaintiff's claims are based upon such document. *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d. Cir. 1993); *see also Cortec Industries v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d. Cir. 1991) (where a plaintiff fails to attach to a complaint a document which it relies on and which is integral to the complaint, the defendant may produce such document when attacking the complaint. In the instant case, Intervener Plaintiffs are suing Defendant for breach of contract and breach of warranty and, therefore, the contract is material and should be considered by the Court.

diversity, a federal question, or some combination of the two. *Id.* Such forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) ("*The Bremen")*; *Int'l Software Systems, Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (5th Cir. 1996)(confirming that *The Bremen* applies in non-admiralty law cases).

In the instant case, the Goddards and Defendant, Albanese, agreed that any lawsuit between them **shall** be brought in Palm Beach County, Florida. *See e.g.  In re Fireman's Fund Insurance Companies*, 588 F.2d 93, 94-95 (5th Cir. 1979)( holding that form selection clause which stated that "the venue of such suit or action shall be laid in the County of Essex and State of New Jersey" was properly enforced and district court properly transferred action).   Accordingly, such clause should be considered mandatory and should be enforced. *Dorsey v. Northern Life Ins. Co.,* 2004 WL 2496214 at *3 (E.D. La. 11/5/04)("Where venue is specified in a forum selection clause with mandatory or obligatory language, the clause will be enforced").    Further, clauses containing the term "shall" indicate the clause is mandatory.  *See e.g. Camsoft Data Systems, Inc. v. Southern Electronics Supply, Inc.*, 2010 WL 3199949 (M.D. La. 8/12/10) (use of the term "shall" demonstrates a clear intent to limit claims); *Dorsey*, 2004 WL 2496214 at *3 (finding that the phrase "venue shall be laid King County, Washington" was mandatory).

By entering into a contract with this forum selection clause, Intervener Plaintiffs waived their right to file any suit or matter in any court outside of Palm Beach County, Florida.  *See e.g. City of New Orleans v. Municipal Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004)("A party may waive its rights . . . by establishing an exclusive venue within the contract").   Accordingly, the Court should enforce the form selection clause and dismiss this action according to Fed. R. Civ. P. 12(b)(3).

### III.   ALTERNATIVELY, THE COURT SHOULD DISMISS THE INTERVENER COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

#### 1.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 540, 550 (2007)).  A pleading that offers "labels" and conclusions" or a "formalistic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted).  Nor does a complaint suffice if it tenders "'naked assertion[s]' devoid of further factual enhancement." *Id.* (internal citations omitted).

#### 2.    The "Colorado River Doctrine" Warrants Abstention and/or Dismissal

Pursuant to the *Colorado River* abstention doctrine, a district court may stay or dismiss federal suit when there is a parallel suit in state court.  *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976).  The principles of this doctrine "rest on considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817.  The *Colorado River* abstention doctrine is based upon principles of federalism, comity and conversation of judicial resources. *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1189 (5th Cir. 1988).

A federal and a state lawsuit are parallel when they have the same parties and the same issues. *RepublicBank Dallas Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987).  The Goddards' Intervener Complaint is identical to the Second Amended Complaint they filed which is styled *Alan Goddard and Annette Goddard v. Albanese-Popkin The Oaks Development Group, LP, Ocean Coast Drywall, Inc., Banner Supply Company Pompano, LLC, Cemex Construction Materials Florida, LLC*

*and L&W Supply d/b/a Sea Coast Supply*, Case No. 50 2009 CA 020475 XXXX MB AA (hereinafter "Florida state case"), and which is currently pending in the Circuit Court for the Fifteenth Judicial Circuit, in and for, Palm Beach County, Florida.  A true and correct copy of the Second Amended Complaint is attached hereto as Exhibit C.  A review of the Florida state case and the Intervener Complaint reveals that both contain the same defendants and causes of action, all of which arise out of the installation of allegedly faulty Chinese manufactured drywall in the Goddards' home.

Under *Colorado River*, a district court may abstain from a case only under "exceptional circumstances." *Colorado* River, 424 U.S. at 813.   To determine whether such "exceptional circumstances" exist, the district court examines the following six factors: (1)assumption by either court over a *res*; (2) relative inconvenience of the forums; (3) avoidance of piecemeal litigation ; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the right of the party invoking federal jurisdiction.  *Kelly Investment, Inc. v. Continental Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2003). Further, while the weight of each factor varies on a case by case basis, one factor alone can be the sole motivating reason for abstention. *See Moses H. Cone Memorial Hospital v. Mercury Const. Co.*, 460 U.S. 1 (1983). Consideration of the factors counsels in favor of abstention.

a.      <u>Assumption Over a Res and Relative Inconvenience of the Forms</u>

The first factor, assumption over a res, is neutral because neither court has assumed control over real property.  However, the second factor, inconvenience of the forums, weighs strongly in favor of abstention.

The Fifth Circuit Court of Appeals has noted that this second factor, the inconvenience factor, "primarily involves the physical proximity of the federal forum to the evidence and witnesses," and whether the "federal forum is any less convenient to the parties than the state forum." *Evanston Ins.*

*Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191-92 (5th Cir. 1988)(citations omitted); *see also BP America Production Co. v. R.D. Briscoe, Inc.*, 2010 WL 4674523 (W.D. La. 11/9/10) ("[t]his factor is primarily concerned with the inconvenience and costs that parties incur when the state and federal actions are litigated in locations that are geographically disparate"). In the instant case, the Goddards are Florida residents and defendants which they have sued are all Florida created entities. Specifically, Defendant, Albanese, is a Florida limited partnership and has a principle place of business in Palm Beach County, Florida. Further, because the Goddards' home is located in Palm Beach County, Florida, all of the material evidence and witnesses are located in Palm Beach County, Florida. Moreover, because the federal court sitting in New Orleans, Louisiana is approximately 700 miles from potential witnesses located in Palm Beach County, Florida, compulsory process would not be available for all witnesses. Most importantly, there is absolutely no connection to the State of Louisiana with the facts of this case, the Intervener Plaintiffs and/or the Defendant, Albanese. Accordingly, because the federal forum is much less convenient than the state forum, Court should conclude that this second factor counsels in favor of abstention.

b.      Avoidance of Piecemeal Litigation

"The real concern at the heart of the third *Colorado River* factor is the avoidance of piecemeal litigation, and the concomitant danger of inconsistent rulings." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650-51 (5th Cir. 2000). In the instant case, there is a distinct danger of piecemeal litigation and inconsistent rulings if the Goddards' Intervener Complaint and the Florida state case are permitted to proceed simultaneously. The claims which the Goddards now seek to assert in this case including negligence, breach of implied warranty, breach of contract and breach of contract/breach of express warranty, are already at issue in the Florida state case and such case will be determinative on these issues. All of the evidence, arguments, and testimony surrounding the alleged defects in the Chinese drywall, and the resulting damage to the Goddards are presently before the trial court in the

Florida state case. Accepting jurisdiction of Goddards' Intervener Complaint will not bode well for judicial economy because this Court will contemporaneously evaluate the same issues of fact presented in the Florida state case based upon the same evidence, arguments, and testimony.  There exists a strong likelihood that this Court will possibly reach different factual-and consequently legal-conclusions on the same exact set of facts.  Given the foregoing, there is a high probability that the state court and federal court will reach different rulings or inconsistent verdicts. Therefore, this factor would also weigh in favor of federal court abstention.

   c. <u>Order in which Jurisdiction was Obtained by the Concurrent Forums</u>

  Under this factor, the inquiry is to "how much progress has been made in the two actions." The Goddards filed the Florida state court action in June 2009, almost one year before they sought to assert claims against Defendant, Albanese in federal court.  Additionally, the state court action is at a more advanced stage in that Albanese has a  pending motion to dismiss the Second Amended Complaint. Additionally, the state court judge presiding over all consolidated cases arising out of the use of Chinese manufactured drywall, the Honorable Glenn Kelley, has already began to make certain pretrial rulings on an omnibus basis regarding claims against homebuilder defendants and is seeking to set bellwether cases for  trial.  In fact, in November 2010, Judge Kelley issued his Order on All Pending Motions specifically finding that the plaintiffs' tort claims, private nuisance claims, and strict liability claims against the homebuilder defendants were limited and/or barred. A true and correct copy of the November 5, 2010 Order on All Pending Motions is attached hereto as Exhibit C.  On the other hand, in the instant federal action Defendant, Albanese, has not consented to this Court's jurisdiction and is contesting same by virtue of this Motion.  Further, the federal action is in its relative infancy, there has been no case specific discovery, and this Court has made no case specific nor omnibus rulings regarding claims affecting the homebuilder defendants.  Accordingly, this factor would counsel in favor of this Court's abstention in favor of the pending Florida state case.

       d.    <u>What Extent Federal Law Provides the Rules of Decision on the Merits</u>

All of the claims asserted in the Goddards' Intervener Complaint, including the contract claims and the tort claims, will all be decided according to Florida law, not federal law.  *See O'Dell v. Doychak*, 2006 WL 4509634 at *9 (M. D. Fla. Oct. 20, 2006)("Although the state law is settled, questions of Florida property and tort law are better suited for Florida state court").  In fact, the contract at issue even provide that Florida law governs.  Accordingly, this factor suggests dismissal and/or abstention.

       e.    <u>Whether The State Court Will Adequately Protect The Rights Of All Parties</u>

The Fifth Circuit Court of Appeal has determined that this factor "can only be a neutral factor, or one that weighs against, not for, abstention.  *Evanston Ins. Co.*, 844 So.2d at 1193.  The Florida state court is in the best position to protect the rights of the parties.  However, given the position of the Fifth Circuit, this factors remains neutral.

Because the second, third, fourth and fifth factors would weigh in favor of abstention of the Goddards' federal action, the Court should abstain and/or dismiss such action in favor of the action currently pending in Florida.

    **3.    Intervener Plaintiffs' Intervener Complaint is in Essence a Shotgun Pleading and Should be Dismissed.**

Goddards' Intervener Complaint contains eight counts made up of over 135 separate paragraphs and each count begins with the allegation that "Plaintiffs repeat and reallege the allegations of Paragraphs 1-64 as if fully set forth herein."  Federal courts define a shotgun pleading as one that "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation whether most of the counts (i.e. all but the first) contain irrelevant factual allegations and legal conclusions." *Kelso v. Big Lots Stores, Inc.*, 2009 WL 3200654 at *2 (M.D. Fla. Sept. 30, 2009)(*quoting Strategic Income Fund, L.L.C. v. Spear, Leads & Kellog Corp.*, 305 F.3d

1293, 1295 (11th Cir. 2002).  Courts have historically viewed this type of pleading in a negative light and have not tolerated it. *Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir.2001) (Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice.); *Anderson v. District Bd. of Trs. of Central Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir.1996) (Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice).  This is exactly the situation presented with the instant Intervener Complaint, as each count, although not directed to all defendants, technically contains the general allegations and irrelevant legal conclusions pertaining to all defendants which were set forth in paragraphs 1-64.  Accordingly, the Court should dismiss the Intervener Complaint and require Intervener Plaintiffs to properly plead their Complaint.

> **4.     Count II of the Intervener Complaint Fails to State Claim For Negligence and/or Vicarious Liability and Such Cause of Action is Barred by the Economic Loss Rule**.

Intervener Plaintiffs have failed to state a claim for negligence and/or vicarious liability.  A prima facie case of negligence requires that the plaintiff prove that the defendant had a legal duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury and the plaintiff incurred damages as a result of the defendant's breach, *Gibbs v. Hernandez*, 810 So.2d 1034 (Fla. 4th DCA 2002), and failure to establish one of these elements is fatal. *Hansenfus v. Secord*, 962 F.2d 1566 (11th Cir. 1992).  Further, it is well settled in Florida that a cause of action for vicarious liability under the respondeat superior doctrine "applies only when the alleged master has the ability to direct and control the pertinent acts of the employee." *Vasquez v. United Enterprises of Southwest Florida, Inc.*, 811 So.2d 759, 760 (Fla. 3d DCA 2002).  Thus, "absent control, there is no vicarious liability for the act of another." *Id.* at 761; *see also Special Olympics Florida, Inc.  v. Showalter*, 6 So.2d 662 (Fla. 5th DCA 2009) (holding that in order to impose vicarious liability under an agency theory of negligence,

it must be shown that a party was an agent of the principal and was acting within the scope of his status as agent when he committed the wrongdoing).

Herein, the Goddards' Intervener Complaint fails to allege facts such that there was a master/servant or principal/agent relationship between Defendant, Albanese, and Ocean Coast Drywall, Inc. (hereinafter "OCD") wherein Albanese was in direct control of OCD's actions at the time the alleged Chinese drywall was installed in the Goddards' home.  Instead, Goddards make the sweeping allegation that Albanese is vicariously liable for the conduct "of any other Defendant whom Albanese hired and delegated responsibility to, for purposes of performing work in connection" with the home. Compl. at ¶ 77.   Intervener Plaintiffs' allegations are mere legal conclusions that do not contain sufficient allegations of ultimate facts to establish any duty or breach thereof by Defendant, Albanese, which proximately resulted in damages to the Intervener Plaintiffs. *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (2009)(A pleading that offers "labels" and "conclusions" or a "formalistic recitation of the elements of a cause of action will not do.").

Further, even if the Intervener Plaintiffs could set forth a factual predicate to support a claim of negligence and/or vicarious liability, such claims would be barred or limited by the economic loss rule.  In Count II, Intervener Plaintiffs attempt to state a cause of action in tort for economic damages against Defendant, Albanese, despite the existence of a written contract between Albanese and Goddards.  However, as pled, such claims should be barred fully or limited by the Court to those damages for bodily injury or "other property" which the Intervener Plaintiffs can allege with specificity. In Florida, there is a general prohibition against tort actions to recover purely economic damages for those parties in contractual privity and where a defendant has not committed a breach of duty apart from an alleged breach of contract. *See e.g. Indemnity Ins. Co. of N. America v. American Aviation, Inc.*, 891 So.2d 532, 536-37 (Fla. 2004).  "[W]hen the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the

-16-

parties have, or could have, addressed though their contractual agreement." *Id.*   In its January 13, 2009 Order & Reasons (D.E. 741), this Court has already concluded as follows:

> [i]n their capacity as defendants, whether the Homebuilders will be susceptible to Plaintiffs' tort claims for economic loss is determined by the contractual privity ELR established by the Florida Supreme Court in *Indemnity Insurance Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004) . . . The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall.  Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to the Plaintiffs.

*In re: Chinese Manufactured Drywall Litigation*, 680 F. Supp. 2d 780, 799 (E.D. La. 2010).

More recently, on November 5, 2010, the Honorable Glenn D. Kelley, in an Omnibus Order on Pending Motions to Dismiss in the Palm Beach County consolidated Chinese Drywall cases, held that the contractual privity economic loss rule precluded plaintiffs homeowners' tort claims against the defendant homebuilders seeking economic losses.  *See* Exhibit C.  The court further held that "plaintiff's tort claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the [Florida] Supreme Court [in <u>Indemnity Ins. Co. of N. America</u>]," that "none of the recognized exceptions [to the economic loss rule] applied" and that "[t]raditional contract damages must be applied to the economic losses suffered by the plaintiffs."  *See* Exhibit C,  page 3.  As such, the court dismissed plaintiffs' homeowners tort claims brought against the homebuilder defendants.

In addition to the reasoning found in this Court's and Judge Kelley's Orders, Intervener Plaintiffs' tort claim in Count II is barred as the Goddards have not alleged any conduct and/or tort on the part of the Defendant, Albanese, which would be separate and apart of the parties' contractual agreement.  The basis for Intervener Plaintiffs' tort claim is that the Defendant, Albanese, allegedly sold them a complete house, but which had "negligent and/or inappropriate installation of Chinese drywall and related construction and/or components which was defective, hazardous, and not suitable

-17-

for its intended purpose."  Compl. at ¶80(a).  However, Intervener Plaintiffs have reincorporated

paragraph 9 of the Intervener Complaint, which contains the parties' Agreement, into Count II, and

therefore, have not pled a separate tort against the Defendant. Accordingly, such tort claim is barred.

*Premix-Marblelite Manufacturing Corp. v. SKW Chemicals, Inc*., 145 F. Supp. 2d 1348, 1359 (S.D.

Fla. 2001)("when the actions complained of relate directly to the subject matter of the parties'

agreement, or are interwoven with the agreement, no independent tort exists and the economic loss rule

applies"); *John Brown Automotive, Inc. v. Lewis J. Nobles*, 537 So.2d 614 (Fla. 2d DCA 1988) (tort

claims that were inherent and inextricable from the events constituting breach of contract should have

been dismissed); *see also* See  *W.T. Powell v. Mactown, Inc.*, 707 So.2d 825 (Fla. 3d DCA

1998)(holding that the economic loss rule does not permit tort causes of action for economic damages

"where the claims are clearly contractual in nature and the cause of action is inseparably connected to

the breaching party's performance under the agreement"); *Ginsberg v. Lennar Florida Holdings, Inc.*,

645 So.2d 490, 494 (Fla. 3d DCA 1994)("Where damages sought in tort are the same as those for

breach of contract, a plaintiff may not circumvent the contractual relationship by bringing an action

for tort").  Therefore, the Court should dismiss Count II.

Further, in Count II, Intervener Plaintiffs seek the following economic damages: damage to

Plaintiffs' home and damages to Plaintiffs' personal property including, but not limited to, the cost of

fully repairing the home which includes removing and replacing the defective gypsum drywall, storage

of the Plaintiffs' belongings, relocation of the Plaintiffs to suitable housing during such repairs,

removal and replacement of metal, plumbing, HVAC and electrical systems, re-installation or re-

application of wall coverings such as wall paper, plastering and/or paint, removal, storage and

replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities,

toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or replacement of air-

conditioning units and condensers, as well as damages for stigmatization of the home. Compl. at ¶ 83.

All of these alleged damages are barred by the economic loss rule because they are purported damages flowing from an alleged breach of contract.

In defining economic loss, the Florida Supreme Court has concluded that the following types of damages would be barred by the economic loss rule: inadequate value, costs of repair and replacement of the defective product, or consequential loss of profits, and diminution in value of the product. *Casa Clara Condominium Association, Inc. v. Charley Toppino and Sons, Inc.*, 620 So.2d 1244, 1246 (Fla. 1993) ("Casa Clara*")*.  Accordingly, as set forth under Florida law, the Court should dismiss the Intervener Plaintiffs' claims for economic damages under Count II sounding in tort.

Moreover, even if Intervener Plaintiffs could allege a tort independent of the parties' contract, Plaintiffs could, at most, potentially recover only non-economic damages to other property and for bodily  injury. *See generally Casa Clara*, *supra* (recognizing that the economic loss rule barred a tort action where there was no personal injury or damage to other property other than the product itself). However, at this juncture, Intervener Plaintiffs cannot support their claim for damages to "other property."  The Defendant delivered a completed home to the Plaintiff which included, but was not limited to, a roof, cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, air-conditioning units and condensers, plumbing, electrical systems, and metal surfaces.  In discussing the concept of "other property," the Florida Supreme Court in *Casa Clara*, *supra*, 620 So.2d at 1246 held:

> [t]he character of the loss determines the appropriate remedies, and, to determine the character of a loss, one must look to the product purchased by the plaintiff, not the product sold by the defendant. *King v. Hilton-Davis*, 855 F.2d 1047 (3d Cir. 1988) Generally, house buyers have little or no interest in how or where the individual components of a house are obtained.  They are content to let the builder produce the finished product, i.e. a house.  The homeowners bought finished products-dwellings-not the individual components of those dwellings. They bargained for the finished products, not their various components.

-19-

The court in *Casa Clara* concluded that the concrete at issue became an integral part of the finished product, the house, and, therefore, there was no damage to other property to preclude the application of the economic loss rule. The same can be said in the instant case, as the drywall is an integral part of the ultimate product purchased by the Intervener Plaintiffs, their house.  Intervener Plaintiffs have made no separate allegations supporting "other property" damages.  Intervener Plaintiffs refer to damages in paragraph 83 of the Complaint relating to "metal, plumbing, HVAC and electrical systems, wall coverings such as wall paper, plastering and/or paint, cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or replacement of air-conditioning units and condensers," but there is no allegation that such items were acquired independently from the purchase of the subject home. To the contrary, as set forth in the Complaint, these items were included in the home which was sold by the Defendant to Intervener Plaintiffs. *See also Fishman v. Bolt*, 666 So.2d 273 (Fla. 4th DCA 1996)(finding that product purchased by appellants was a home, with all component parts, including the seawall, pool, and patio, and, therefore, pool, patio and home were not other property to exclude application of economic loss rule.).  Accordingly, at this point,  the Intervener Plaintiffs cannot maintain their claims for damage to "other property."

Eleven years after *Casa Clara*, the Florida Supreme Court in *Indemnity Ins. Co. of N. America*, *supra*, emphasized the limitations to the exception carved out for personal injury and damage to other property.  After analysis of the history of the economic loss rule, the Florida Supreme Court noted that "in expanding the tort liability of manufacturers of defective products which cause personal injury, [it] expressly  limited tort liability with respect to defective products to injury caused to persons or damage caused to property other than the defective product itself." 891 So.2d 532, 541 (Fla. 2004). Thus, even if the Intervener Plaintiffs can support a tort claim based in personal injury and/or damage to other property, the economic loss rule precludes Intervener Plaintiffs from recovering all of their

alleged property damages set forth in Count II of the Intervener Complaint.

In light of the foregoing, because the parties are in privity of contract and the allegations set forth in the Intervener Complaint do not support a tort sounding in negligence, the Court either should bar such tort claim wholly, or limit recoverable damages to personal injury and/or damage to other property only if the Intervener Plaintiffs can specifically articulate other property, aside from the product, the home, purchased from this Defendant.

### 5.   Count III of the Intervener Complaint Fails to State a Claim for Breach of Implied Warranty

Count III attempts to state a claim against Defendant, Albanese, for breach of implied warranties of merchantability and breach of implied warranty of fitness.  However, the Agreement between Albanese and Intervener Plaintiffs, disclaims all implied warranties. The parties' Agreement attached hereto as Exhibit B contains the following language:

> **WARRANTY; DISCLAIMER OF IMPLIED WARRANTIES**
> Seller makes no other warranties with respect to the **fitness, merchantability, habitability**, intended use, workmanship, construction, or physical condition or either the Home, any fixtures or items of personal property sold pursuant to this Agreement or any other real or personal property conveyed hereby . . .
>
> This limited warranty is expressly in lieu of any other warranties, express or implied, except for the limited warranty, **Seller disclaims any and all implied warranties or merchantability and fitness as to the home, and all fixtures or items of personal property whatsoever conveyed hereby, whether arising from custom, usage of trade, course of dealing, case law or otherwise**.

*See* Ex. B, ¶ 39 [Emphasis Added].  Further, exhibits control over inconsistencies in a complaint, and in the instant case, render such allegations a nullity. *Crenshaw v. Lister*, 225 F.3d 1283, 1292 (11th Cir. 2009)("It is the law in this Circuit that when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.")(internal quotations and citations omitted).

Florida courts routinely enforce contractual provisions disclaiming warranties. *Ocana v. Ford*

*Motor* Co., 992 So.2d 319 (Fla. 3d DCA 2008); *Belle Plaza Condominium Association, Inc. v. B.C.E. Dev., Inc.*, 543 So.2d 239, 240 (Fla. 3d DCA 1989("clear that [defendant] properly disclaimed by a bold and conspicuous disclaimer any and all express or implied warranties"); *Makers, Inc. v. American Airlines, Inc.*, 513 So.2d 700 (Fla. 3d DCA 1987); *Xenographic Supplies Corp. v. Hertz Commercial Leasing Corp.*, 386 So.2d 299 (Fla. 3d DCA 1980). Further, it is a basic tenet of Florida law under the Uniform Commercial Code that a "seller may disclaim warranties as long as the buyer reasonably understands this is being done." *Rose v. ADT Security Services, Inc.*, 989 So.2d 1244 (Fla. 1st DCA 2008) (*citing Knipp v. Weinbaum*, 351 So.2d 1091, 1084-85 (Fla. 3d DCA 1977)). Additionally, Florida courts maintain that one who signs a document is presumed to know, and cannot deny, its contents. *Nationwide Property and Cas. Ins. Co. v. Marchesano*, 482 So. 2d 422 (Fla. 2d DCA 1985). The disclaimer above, which is contained the Agreement executed by the Intervener Plaintiffs and Defendant, fully complies with the law governing warranty disclaimers and the Court should enforce such provision.

Further, concerning any alleged breach of implied warranty of fitness for particular purpose or use, Florida law requires that a plaintiff allege a particular or unusual use different from the purpose for which the item sold is generally used. *Fred's Excavating & Crane Service, Inc. v. Continental Ins. Co.*, 340 So.2d 1220 (Fla. 4th DCA 1976). The instant Intervener Plaintiffs cannot meet this pleading requirement. In fact, the Court has already acknowledged that the "[t]he Chinese drywall is not structurally inferior drywall, nor does it fail to serve its intended structural purpose, " 680 F. Supp. 2d 796, the Plaintiffs cannot show that the drywall was not fit for its intended use. Therefore, the Intervener Plaintiffs cannot maintain an action against Defendant for a breach of an implied warranty of merchantability for a particular purpose or use. Accordingly, the Court should dismiss Count III of the Intervener Complaint with prejudice.

**6.     Count IV of the Intervener Complaint Does Not State a Claim For Breach of Contract**.

In order to recover for a breach of contract, a plaintiff must allege the existence of a valid contract, breach of that contract and resulting damages caused by such breach. *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So.2d 1048, 1049 (Fla. 4th DCA 2003); *Indus. Med. Pub. Co. v. Colonial Press of Miami, Inc.*, 181 So.2d 19, 20 (Fla. 3d DCA 1966)(*holding* that in contract actions, "the complaint must allege the execution of the contract, the obligation thereby assumed, and the breach").

In Count IV of the Intervener Complaint, Goddards contend that Defendant, Albanese, breached the parties' contract, specifically paragraph 5, by allegedly substituting defective Chinese drywall which was not of equal or better quality to American produced drywall. Compl. at ¶¶ 102-103. However, the language in paragraph 5 that Intervener Plaintiffs rely upon is misplaced and is therefore tantamount to an impermissible rewriting of the contract's terms. *See Tiny Treasures Academy & Get Well Center, Inc. v. Stirling Place, Inc.*, 916 So.2d 991, 993 (Fla. 4th DCA 2005)(*citing Dickerson Fla., Inc. v. McPeek*, 651 So.2d 186, 187 (Fla. 4th DCA 1995)("[i]t is axiomatic that where the language of a contract is clear and unambiguous, a trial court is not at liberty to modify the agreement and therefore must give effect to its express provisions"). Paragraph 5 of the Agreement provides in pertinent part:

> **MATERIALS AND COLOR SELECTIONS**: Buyer agrees and acknowledges that certain wall coverings, decorations and furnishings in any model displayed to Buyer are not included as part of this Agreement
> . . .
> If circumstances arise which warrant changes of suppliers, manufacturers, brand names or other items, Seller may substitute equipment, material, appliances, etc. which are of equal or better quality to that designated on Seller's Plans and Specifications . . .

*See* Ex. B. By its own title and verbiage, paragraph 5 refers to the interior decorations and "finishing items" of the home, not the drywall installation. Thus, Intervener Plaintiffs' allegations do not

factually plead the existence of applicable terms to constitute breach of the parties' contract. *See e.g. Ins. Concepts & Design, Inc. v. Healthplan Serv. Inc.*, 785 So.2d 1232, 1236 (Fla. 4th DCA 2001)(dismissing claim that failed to identify any specific provision of the contract that was breached). Accordingly, the Court should dismiss Count IV of the Intervener Complaint.

> **7.** **Count V of the Intervener Complaint Fails to State a Claim for Breach of Contract/Breach of Express Warranty.**

In Count V, Intervener Plaintiffs' contend that paragraph 39 of the parties' Agreement provided a limited warranty intended to survive closing. Compl. at ¶ 112. Additionally, Goddards contend that the installation of Chinese drywall and resultant defects constitute a breach of warranty. Compl. at ¶ 112. However, Intervener Plaintiffs fail to acknowledge Addendum "2" to the Agreement which amended paragraph 39 allegedly breached by Defendant, Albanese. *See* Ex. B, Addendum "2" at ¶ 4. Specifically, Addendum "2" provides that "for a period of **<u>one year</u>** following the date of closing, Seller shall correct any deficiencies in labor or materials affecting the subject residence." *See* Ex. B, Addendum "2" at ¶ 4. This is the warranty that Defendant, Albanese, offered to Intervener Plaintiffs and such Plaintiffs accepted.

Given the express language of the Agreement, the warranty was limited to one year from closing, which expired on or about October 2007, and Intervener Plaintiffs have not alleged that they experienced a defect within the applicable limited warranty period. "[C]ase law almost uniformly holds that time-limited warranties do no protect buyers against hidden defects - defects that may exist before, but typically are not discovered until after, the expiration of the warranty period." *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (3d Cir. 1992)(*citing* numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period, but which did not manifest until after warranty period had expired); *see also Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 616-617 (3d Cir. 1995)("[L]atent defects discovered after the term of the warranty are not actionable."(citation omitted); *see also Brisson v.*

*Ford Motor Co*, 349 Fed. Appx. 433, 434 (11th Cir. 2009)(affirming dismissal of express warranty claim where plaintiff "fail[ed] to allege that they experienced a defect within the warranty period").

Further, pursuant to the expressed terms of Addendum "2," such addendum to the Agreement controls in the event of a conflict between it and the provisions of the Agreement.  *See* Ex. B, Addendum "2" at ¶ 5; *see also Terranova Corporation v. 1550 Biscayne Associates, Corp*. 847 So. 2d 529, 533 (Fla. 3rd DCA 2003)(holding that in construing an agreement, the more specific provision must supercede and govern the more general provision).  Accordingly, the terms of paragraph 4 of the Addendum supercede and control any express warranty referenced in paragraph 39 of the Agreement. Additionally, because the exhibit attached to the Intervener Complaint controls in the face of contradictory allegations, the Court must dismiss Count V of the Plaintiffs' Intervener Complaint with prejudice. *See Crenshaw*, 225 F.3d at 1292 ("It is the law in this Circuit that when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern").

## IV.   <u>CONCLUSION</u>

Wherefore, in light of the foregoing, the Defendant, Albanese-Popkin The Oaks Development Group, L.P., respectfully requests that the Court grant its motion to dismiss pursuant to Fed. R. Civ. P 12(b)(2) and/or transfer the case to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404 and 28 U.S.C. §1406(a).  Alternatively, the Defendant requests that the Court grant its motion pursuant to Fed. R. 12(b)(3).

In the alternative, Defendant requests that the Court grant its motion pursuant to Fed. R. Civ. P. 12(b)(6) and

a.      dismiss Counts II, III and V with prejudice; and

b.      dismiss Counts IV; and

c.      and award Defendant, Albanese its attorneys' fees for defending this cause

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that the above and foregoing has been served on Plaintiffs' Liaison

Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u>

by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis

File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed

with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by

using the CM/ECF System, which will send a notice of electronic filing in accordance with the

procedures established in MDL 2047, on this 29th day of December, 2010.

> SACHS SAX CAPLAN
> Attorneys for Defendant, Albanese-Popkin The Oaks
> Development Group, L.P.
> 6111 Broken Sound Parkway NW, Suite 200
> Boca Raton, Florida 33487
> Tele:   (561) 994-4499
> Fax:    (561) 994-4985
>
> By: ___/s/ Brett A. Duker_____
>         Lysa M. Friedlieb
>         Florida Bar No. 898538
>         lfriedlieb@ssclawfirm.com
>         Brett A. Duker
>         Florida Bar No. 0021609
>         bduker@ssclawfirm.com