# EXHIBIT C



Nov 10 2010 3:14PM

IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARLENE BENNETT,

    Plaintiff,

vs.

CENTERLINE HOMES INC., et al.,

    Defendants.

_____/

CASE NO. 50 2009 CA 014458
Civil Division "AA" Chinese Drywall

## OMNIBUS ORDER ON PENDING MOTIONS TO DISMISS

The Court has under consideration the following omnibus motions: 1) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Tort Claims Under the Economic Loss Rule and Claims for Private Nuisance (joined by the Albanese-Popkin defendants); 2) Banner Supply Company's Omnibus Opening Brief On Economic Loss Rule and Nuisance (joined by certain installer defendants); 3) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Strict Liability Claims. The omnibus motions now before the Court have been fully briefed, and were argued at scheduled case management conferences. Having reviewed the submissions of the parties, and having heard the argument of counsel, the Court makes the following findings.

### Economic Loss Rule

The first issue for consideration is the application of Florida's economic loss rule to the tort claims asserted by the homeowner plaintiffs. The Supreme Court discussed at length the origins and application of the economic loss rule in *Indemnity Insurance Company of North America v. American Aviation, Inc.*, 891 So.2d 532 (Fla. 2004).

The economic loss rule is a limitation on tort claims where the damages suffered are economic losses. Economic losses are defined as damages for inadequate value, costs of repair and replacement of defective products, or loss of profits. *Id.* at 536; *see also, Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244 (Fla. 1993). These damages are also described as the loss of the "benefit of the bargain" or "disappointed economic expectations." *Indemnity Insurance, id* at 536.

All of the parties here acknowledge that the economic loss rule would not bar a claim for personal injury caused by defective Chinese manufactured drywall. Therefore, to the extent that the plaintiff homeowners are suing in tort for personal injury, the economic loss rule does not apply and such claims are not subject to dismissal. The issue is whether- and to what extent - the economic loss rule bars the recovery of economic damages in the pending Chinese drywall cases.

The Supreme Court made clear in *Indemnity Insurance* that the economic loss rule applies in two distinct circumstances. First, the rule applies to parties in contractual privity for matters arising out of the contract. Second, the rule applies to liability for a defective product that causes damage to the product, but causes no personal injury or damage to other property. Both applications of the rule must be examined here.

1. <u>Contractual Privity Economic Loss Rule</u>

The defendant homebuilders assert that the plaintiff homeowners are barred from asserting tort claims for their economic losses based on the application of the contractual privity economic loss rule. The Court agrees.

The Supreme Court in *Indemnity Insurance* explained the rational for application of the contractual privity economic loss rule as follows:

2

A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. *Indemnity Insurance, id* at 536-537.

The plaintiffs' tort claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Supreme Court.

There are recognized exceptions to application of the contractual privity economic loss rule. Independent torts such as fraud in the inducement are not barred by the economic loss rule. *HTP, Ltd. v. Lineas Aereas Costarrricenses, S.A.*, 685 So.2d 1238 (Fla. 1996). Claims for negligence in rendering professional services are not barred. *Moransais v. Heathman*, 744 So.2d 973 (Fla. 1999). Likewise, statutory claims are not barred by the economic loss rule. *Comptech Intern, Inc. v. Milan Commerce Park, Ltd.*, 753 So.2d 1219 (Fla. 1999).

None of the recognized exceptions apply here.[1] The damages sought by the plaintiff homeowners arise out of the contracts they entered with the defendant homebuilders. Traditional contract damages must be applied to the economic losses suffered by the plaintiffs.

---

[1] It is clear that homeowners are not exempt from the application of the economic loss rule on public policy grounds. *Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1247 (Fla. 1993) (refusing to exempt homeowners from the economic loss rule despite their status as "an appealing, sympathetic class"). Moreover, the Court will not create an exception to the contractual privity economic loss rule based on an assertion that the drywall is an unreasonably dangerous product.

3

### 2. Products Liability Economic Loss Rule

The products liability economic loss rule applies in limited circumstances notwithstanding the absence of privity. The rule applies when the product causes damage to itself, but causes no personal injury or damage to other property. The issue here is whether the plaintiff homeowners' tort claims against the defendant suppliers and installers – who are not in privity with the plaintiffs - are barred by the economic loss rule. The Court holds that such claims are not barred.

It appears clear from the Supreme Court's discussion in *Indemnity Insurance* that application of the products liability economic loss rule is limited. That is to say, the Supreme Court made clear that the products liability economic loss rule should not be extended beyond its intended purpose, and the rule must only be applied in those limited circumstance where all elements necessary for its application have been satisfied.

The Court has considered the well-reasoned discussion of the economic loss rule in Judge Fallon's order in *In Re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780 (N.D. Louisiana 2010). Judge Fallon traces the origins and history of the rule in Florida (and elsewhere) and discusses the application of the economic loss rule to non-privity defendants in the multi-district Chinese drywall litigation.

It is not necessary to repeat here the analysis of Judge Fallon in considering the application of the economic loss rule to non-privity defendants. However, the Court will briefly address Judge Fallon's conclusion – a conclusion which this Court adopts.

Judge Fallon essentially concludes that the Chinese drywall at issue here presents a unique factual scenario that does implicate the products liability economic loss rule at

4

all. The factual distinction lies in the nature of the alleged defect and its impact, or lack thereof, on the product itself.

In cases like *Casa Clara*, the defect in the product damaged the product itself. The defect in the concrete caused the concrete to fail and, presumably, to damage other components of the home. Here, the alleged defect does not damage or affect the product (Chinese manufactured drywall) at all.

In defining the application of the products liability economic loss rule, the Supreme Court has stated that the rule is implicated where "there is a defect in a product that *causes damage to the product*, but causes no personal injury or damage to other property." *Indemnity Insurance, id.* 536 [emphasis added]. Here the alleged defect causes *no damage to the product* and causes *only* personal injury or damage to other property. Under such unique circumstances, the Court agrees that the products liability economic loss rule does not apply.

### Private Nuisance

The Court will next consider whether plaintiff can state a claim for private nuisance based on the allegation that the Chinese manufactured drywall is off-gassing causing a nuisance within the effected homes. All defendants assert that the claim for private nuisance under such circumstances cannot be asserted. The Court agrees with the defendants.

> Florida law essentially defines nuisance as:
>
> using one's property as to injure the land or some incorporeal right of one's neighbor... The law of nuisance plays between two antithetical extremes: The principle that every person is entitled to use his property for any purpose that he sees fit, and the opposing principle that everyone is bound to use his property in such a manner as not to injure the property or rights of his neighbor... The law of private nuisance is a law of degree; it

5

generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances.

*Beckman v. Marshall*, 85 So. 2d 552, 554-55 (Fla. 1956) (approving and adopting the language of *Antonik v. Chamberlain*, 78 N.E.2d 752 (Ohio Ct. App., 1947).

Plaintiffs assert that there is no exhaustive definition of what constitutes a nuisance citing *Windward Marina, L.L.C. v. City of Destin*, 743 So. 2d 635 (Fla. 1st DCA 1999). While this may be true, Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("This court recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another") (citing *Reaver v. Martin Theatres of Florida, Inc.*, 52 So. 2d 682 (Fla. 1951). It seems clear that the underlying policy of private nuisance jurisprudence does not support the plaintiffs' application of the doctrine of private nuisance in this case.

Plaintiffs rely heavily on the four-part test for proving the existence of a private nuisance purportedly established by the Court in *Beckman*. According to the plaintiffs, none of the four components makes any mention of a requirement that a private nuisance must involve two landowners. However, such a roadmap for establishing a private nuisance is neither expressed nor implied by the Court in *Beckman*.

In fact, much of the instructive language in *Beckman* seems to contradict the plaintiffs' position that nuisance actions do not necessarily involve contemporaneous and proximate private land owners. *Beckman, id* at 555 ("no one has absolute freedom in the

use of his property, because he must be restrained in his use by the existence of equal rights of his neighbor to the use of his property."). *Id.*

Further, none of the cases plaintiffs rely on directly support the contention that a nuisance may exist absent a defendant's exercise of its property rights. *See, e.g., Davey Compressor Co. v. City of Delray Beach*, 639 So. 2d 595 (Fla. 1994) (holding that a defendant who illegally disposed of a highly toxic solvent by dumping it onto the grounds at the rear of its facility created a nuisance because it contaminated plaintiff's water supply); *Kotcher v. Santaniello*, 438 So. 2d 440, 441 (Fla. 1983) (declining to reverse an injunctive order which was "principally predicated upon a determination that the appellants' conduct in keeping and training dogs for attack and security purposes constituted a nuisance in the residential neighborhood where all of the parties resided").

The only case which arguably supports plaintiffs' position, *Putnam v. Roudebush*, 352 So. 2d 908 (Fla. 2d DCA 1977), held that a noisy air conditioner was a "continuing nuisance" that constituted a "permanent defect in the realty." However, private nuisance was not even a claim in the *Putnam* case. The Court's reference to the air conditioning being a nuisance was merely a descriptive reference, and not a statement of a legal claim.

Taken together, neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case. The Court concludes that plaintiffs' claims for private nuisance must be dismissed.

### Strict Liability

The defendant homebuilders have moved to dismiss the plaintiffs' strict liability claims. The homebuilders advance two grounds for dismissal. First, the homebuilder defendants assert that only manufacturers of the product and those in the chain of

7

distribution can be held strictly liable and they are neither. Second, the defendant homebuilders assert that strict liability does not apply to improvements to real property. The Court will begin with the homebuilders' second argument.

The law in Florida appears to be well settled that strict liability does not apply to improvements to real property as improvements to real property are not considered products. *Plaza v. Fisher Development, Inc.*, 971 So.2d 918 (Fla. 3rd DCA 2007); *Neumann v. Davis Water & Waste, Inc.*, 433 So. 2d 559 ( Fla. 2d DCA 1983) *see Easterday v. Masiello*, 518 So.2d 260, 261 (Fla.1988) ("[I]t has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate."); *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1291 (Fla. 5th DCA 1986).

Plaintiffs argue that an exception exists with respect to improvements to real property "where the injuries result not from the real property as improved by the alleged defective product but directly from a defective product manufactured by defendant, which product may have itself been incorporated into the improvement of the realty before the injury from the product occurred." *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1292 (Fla. 5th DCA 1986); *Craft v. Wet 'N Wild, Inc.*, 489 So.2d 1221, 1222 (Fla. 5th DCA 1986). Plaintiffs conceded at oral argument that this exception has never been applied in a reported Florida case. Indeed, the exception appears to be *dicta* in the cases that mention it.

Whether the exception advanced by the plaintiffs exists or not, it does not appear that the exception would apply to the defendant homebuilders in this case. The exception appears to apply to the manufacturer of an allegedly defective product which

8

happens to be incorporated into the real property. The defendant homebuilders did not manufacture the drywall at issue.

The defendant homebuilders also argue that only manufacturers, and those in the distributive chain of a product, can be held strictly liable. Defendant homebuilders assert that they are not manufacturers and they are not within the distribution chain of the drywall at issue. While the plaintiffs argue otherwise, the Court finds that the defendant homeowners' position has merit.

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that the plaintiff homeowners' tort claims against the defendant homeowners seeking economic losses are dismissed based on the privity economic loss rule. The request of the defendant suppliers and installers (who lack privity with the plaintiffs) to dismiss the plaintiffs' tort claims based on the products liability economic loss rule is denied. The plaintiffs' claim for private nuisance against all defendants is dismissed. Likewise, the plaintiffs' claims for strict liability against the homebuilder defendants are dismissed.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida this 5th day of November, 2010.

_____
JUDGE GLENN D. KELLEY
CIRCUIT COURT JUDGE

Copies furnished to:

Plaintiffs' Liaison Counsel, C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134; Defendants' Liaison Counsel, Todd R. Ehrenreich, Esq. and Michael A. Sexton, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, FL 33133; and for distribution to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with the Electronic Service Order entered in this case.