003578.01401M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No.: 09-2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: | Honorable Eldon E. Fallon |
| ALL CASES | MAG: JUDGE WILKINSON |

**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND FOR A STAY OF PROCEEDINGS PURSUANT TO FLORIDA STATUTES §682.02 – §682.03 and PURSUANT TO 9 U.S.C. §1**

Defendant, Princeton Homes, Inc. ("Princeton"), moves this court for an order compelling Plaintiffs to submit their claims in this action to arbitration in accordance with and pursuant to the Home Buyers Warranty VI ("HBW") registered warranty program ("Limited Warranty"), as described below, and for an order staying the instant proceedings pursuant to the Florida Arbitration Code, Fla. Statutes §682.02 and §682.03, the Federal Arbitration Act (9 U.S.C. § 1, *et seq.*) (hereinafter the "FAA"), pending the outcome of the arbitration, and as grounds states:

I.   FACTUAL BACKGROUND

1.   On or about December 8, 2008, Plaintiff, John J. Lonergan Sr., and Princeton, entered into a written Purchase and Sale Agreement (the "Purchase Agreement") whereby Princeton, agreed to sell and Plaintiffs agreed to purchase Lot 82 (the "Lot") of St. James Golf Club Pod D, together with a home dwelling (the "Home") to be constructed on the Lot, as more particularly described in the Purchase Agreement. (The Purchase Agreement is attached hereto as **Exhibit "A."**)

2.     Additionally, the Seller agreed and under that pursuant to paragraph 8 of the Purchase Agreement, the Builder would use the new or equivalent materials available at the time of the construction of the home.

> **8. CONSTRUCTION OF THE PROPERTY**. Subject to other terms of this Agreement, Seller shall commence construction of the Property as soon as it is reasonably possible following the issuance of all required building permits, and shall proceed with reasonable diligence throughout the term of construction. Seller agrees that all construction shall utilize new materials (or equivalent quality) and that all such materials shall be in accordance with applicable governmental rules, regulations, and building codes, and that all work shall be done in a good and workmanlike manner. Seller shall be responsible for all building permits, impact fees, water and sewer hook-up fees, excluding deposits for utility services, which shall be reimbursed by Buyer at Closing.
>
> **Exhibit "A."**

3.     Section 19 of the Purchase Agreement is set forth in full below:

> 19. **SELLER'S LIMITED WARRANTY; DISCLAIMER OF IMPLIED WARRANTIES. Seller** agrees, at Seller's expense, to register the Property, at Closing, with Home Buyers Warranty Corporation (2-10 HBW) **("HBM"),** and to further furnish Buyer, at Closing, with, appropriate evidence of such registration in accordance with HBW's 2-10 HBW registered warranty program **("Limited Warranty").** Specimen copies of the Limited Warranty may be reviewed in Seller's sales office. **BUYER UNDERSTANDS THAT THE ABOVE-DESCRIBED LIMITED WARRANTY TO BE DELIVERED TO BUYER AT CLOSING IS THE ONLY WARRANTY MADE BY SELLER WITH REGARD TO THE PROPERTY OR THE PROJECT, AND, TO THE MAXIMUM LAWFUL EXTENT AND UNLESS CLEARLY AND ABSOLUTELY PROHIBITED BY LAW, ALL IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY AND HABITABILITY, ANY WARRANTIES IMPOSED BY STATUTE, AND ALL OTHER EXPRESS AND/OR IMPLIED WARRANTIES OF ANY KIND OR CHARACTER ARE SPECIFICALLY DISCLAIMED, AND SELLER HAS NOT GIVEN AND BUYER HAS NOT RELIED ON OR BARGAINED FOR ANY SUCH WARRANTIES. AS TO ANY IMPLIED WARRANTY THAT CANNOT BE DISCLAIMED ENTIRELY, ALL SECONDARY, INCIDENTAL AND CONSEQUENTIAL DAMAGES ARE SPECIFICALLY EXCLUDED, WAIVED AND DISCLAIMED (CLAIMS FOR SUCH SECONDARY, INCIDENTAL AND CONSEQUENTIAL DAMAGES BEING CLEARLY UNAVAILABLE IN THE CASE OF IMPLIED WARRANTIES WHICH ARE DISCLAIMED ENTIRELY ABOVE). BUYER UNDERSTANDS AND HEREBY AGREES TO THE TERMS AND CONDITIONS OF THE LIMITED WARRANTY.** Without limiting the generality of the foregoing, if but only if, Seller is prohibited from disclaiming entirely certain implied warranties by reason of the provisions of the "Magnuson-Moss Warranty Act" (15 U.S.C. §§2301-2312) (the **"Warranty Act"), if applicable, Seller HEREBY LIMITS THOSE IMPLIED WARRANTIES, IF ANY, AS FOLLOWS: (i) IN SCOPE TO THOSE, IF ANY, GIVEN ON "CONSUMER PRODUCTS," IF ANY, AS DEFINED IN THE WARRANTY ACT, IF APPLICABLE) WHICH ARE ACTUALLY COVERED BY THE LIMITED WARRANTY, AND (ii) IN DURATION TO THE ONE YEAR PERIOD OF SELLER'S LIMITED WARRANTY, AND ALL THOSE IMPLIED WARRANTIES, IF ANY, ARE HEREBY**

**DISCLAIMED ABSOLUTELY THEREAFTER.** Seller will deliver to Buyer, at Closing, any and all manufacturers' warranties, which will be passed through to Buyer at Closing, none of which manufacturers' warranties are expressly warranted in any way by Seller. The provisions of this Section 19 will survive Closing.

**Exhibit "A."**

4. Following the completion of construction of the Home, Plaintiff, and Antilles closed on the purchase and sale of the Home in accordance with the Purchase Agreement.

5. In accordance with Section 19 of the Purchase Agreement, Defendants, the Home was registered with Home Buyers Warranty Corporation ("HBW®") warranty program in accordance with an Application for Home Enrollment. (Exemplar of the Application for Home Enrollment is attached hereto as **Exhibit "B."**)

6. Further, the Buyer acknowledge the terms, conditions, limitations duties, responsibilities, obligations and scope of the Home Buyers Warranty Corporation ("HBW") warranty program by executing the application.

7. The application clearly states:

> **BUYER'S ACKNOWLEDGEMENT AND CONSENT**
>
> **Your Builder is applying to enroll your home in the 2-10 HBW® New Horne Warranty program. By-signing below, you acknowledge that you have read a sample copy of the Warranty Booklet, and CONSENT TO THE TERMS OF THESE DOCUMENTS INCLUDING THE BINDING ARBITRATION PROVISION contained therein. You further understand that when the warranty is issued on your new home, it is an Express Limited Warranty and that all claims and liabilities are limited to and by the terms and conditions of the Express Limited Warranty as stated in the 2-10 HBW® Booklet. IF YOU, THE BUYER(S), HAVE NOT RECEIVED A CERTIFICATE OF WARRANTY COVERAGE AND WARRANTY BOOKLET FROM 2-10 HBW® WITHIN THIRTY (30) DAYS AFTER CLOSING, THEN THERE IS NO COVERAGE BY THE BUILDER'S WARRANTY INSURER, YOU SHOULD CONTACT YOUR BUILDER.**

**Exhibit "B."**

8. The Builder Application for Home Enrollment and the HBW Corporation Limited Warranty Booklet constitute the "Limited Warranty" under the Purchase Agreement.

9.    Section 24 of the Purchase Agreement includes the following choice of law provision:

> 24. **FLORIDA LAW; SEVERABILITY**. This Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Florida, and any disputes in connection with this Agreement will be settled according to Florida law.

**Exhibit "A."**

10.    Section 27 of the Purchase Agreement includes the following venue provision:

> 27. **LITIGATION.** In the event of any dispute arising out of this Agreement, the prevailing party shall be entitle to recover all costs incurred, including, without limitation, reasonable attorneys' fees and costs through all appellate level and all bankruptcy and administrative proceedings. The venue of any litigation or other dispute resolution arising out of this Agreement shall be Palm Beach County, Florida. This provision shall survive the Closing or earlier termination hereof.

**Exhibit "A."**

Further, pursuant to the section 38 of the Purchase Agreement, the Plaintiff affirmatively waived a trial by jury.

> **38. JURY TRIAL WAIVER. SELLER AND BUYER KNOWINGLY INTENTIONALLY AND VOLUNTARILY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING IN CONNECTION WITH THIS AGREEMENT OR THE COURSE OF DEALINGS OT CONDUCT OF THE PARTIES TO THIS AGREEMENT.**

**Exhibit "A."**

11.    Consummating the acceptance of the enrollment of the Plaintiffs' home, HWB issued its "Certificate of Warranty Coverage" pursuant to the terms of the agreement, and provided the Buyer with a copy Home Buyers Warranty Booklet. (The HBW Corporation Limited Warranty Booklet is attached hereto as **Exhibit "C",** and The "Certificate of Warranty Coverage" pursuant to the terms of the agreement is attached hereto as **Exhibit "D"**)

12.    Also, pursuant to Section VII of the HBW Corporation Limited Warranty Booklet contains the following waiver of implied warranties provision.

> **WAIVER OF IMPLIED WARRANTIES. You have accepted the express Limited Warranty provided in this Warranty Booklet, and all other express or implied warranties, including any oral or written statements or representations made by Your Builder/Seller or any implied warranty of habitability, merchantability or fitness, are hereby disclaimed by Your Builder/Seller and are hereby waived by You to the extent possible under the laws of Your state.**

**Exhibit "C"**

13. Section VII of the HBW Corporation Limited Warranty Booklet contains the following arbitration provision (the "Arbitration Provision"):

> **ARBITRATION. Any and all claims, disputes and controversies by or between the owner, the Builder/Seller, the Warranty Insurer and/or HBW®, or any combination of the foregoing, arising from or related to this Agreement, the Warranty, the Home Warranty Insurance Policy, the subject Home, or the 2-10 HBW® Program shall be settled by binding arbitration. Agreeing to arbitration means you are giving up your right to a jury trial. Any person hi contractual privity with the Builder/Seller whom the Home owner contends is responsible for any construction defect in the Home shall be entitled to enforce this arbitration agreement. Any party shall be entitled to recover reasonable attorney's fees and costs incurred in enforcing this arbitration agreement. The decision of the arbitrator shall be final and binding and may be entered as a judgment in any State or Federal court of competent jurisdiction.**
>
> **The arbitration shall be conducted by the American Arbitration Association pursuant to its Horne Construction Arbitration Rules and Mediation Procedures; or by Construction Arbitration Services, Inc., or by DeMars & Associates, Ltd. The choice of arbitration service shall be that of the Home owner if the Home owner is a claimant and if not the choice shall be that of the Builder/Seller or the Warranty Insurer, if applicable. The arbitration shall be conducted pursuant to the applicable rules of the arbitration service selected unless noted otherwise. All administrative fees of the arbitration service and fees of the arbitrator shall be allocated to the parties as provided in the rules of the arbitration service, subject to the discretion of the arbitrator to reallocate such fees in the interests of justice. If for any reason this method of selecting an arbitration service cannot be followed, the parties to the arbitration shall mutually select an arbitration service.**
>
> **The parties expressly agree that this Warranty and this arbitration agreement involve and concern interstate commerce and are governed by the provisions of the Federal Arbitration Act (9 U.S.C. § 1, et seq.) now in effect and as the same may from time to time be amended, to the exclusion of any different or inconsistent state or local law, ordinance or judicial rule.**

**Exhibit "C"**

14. Pursuant to the Application for Home Enrollment, Plaintiffs acknowledged his consent to the Arbitration Provision. Furthermore, in the Application for Home Enrollment, Plaintiffs acknowledged that no person or entity shall have any liability whatsoever, by implication or otherwise, for claims which are not expressly covered by the Limited Warranty.

15. Section 16 of the Purchase Agreement provides that if Seller defaults under the Purchase Agreement, Buyer will give Seller ten (10) days notice of it and if Seller has not cured the default within such period, Buyer will have such rights as may be available in law or in equity.

Section 21 of the Purchase Agreement provides that where Buyer is required or desires to give notice to Seller, the notice must be in writing.

16. Plaintiffs failed to provide written notice of Defendants' alleged default under the Purchase Agreement, as specifically required by Purchase Agreement.

17. In accordance with the Limited Warranty under Purchase Agreement, Plaintiff's claim against Defendants pertaining to for the alleged installation of Chinese gypsum drywall boards in the Home should have been brought through a Notice of Claim filed with the HBW Warranty Administration Office for arbitration in accordance with the Arbitration Provision and pursuant to the rules of Construction Arbitration Services, Inc., not by the various omnibus complaints filed against Defendants in the United States District Court for the Eastern District of Louisiana.

18. The "HBW Program" (hereinafter "HBW Program") is an insurance-backed, ten-year new home warranty program created and administered by Home Buyers Warranty Corporation (hereinafter "HBW") which provides builders and homeowners nationwide with protection against certain construction defects. Only builders with a proven reputation for quality are permitted to join the HBW Program. Member builders issue the Warranty to new home buyers at the close of escrow at no cost to the home buyer. The Warranty is transferrable to each subsequent purchaser for the duration of the ten-year Warranty term.

19. The obligations of the builder under the HBW Warranty are insured by National Home Insurance Company (a Risk Retention Group) ("NHIC"). NHIC is a Risk Retention Group created and transacting business pursuant to the authority of the Federal Risk Retention Act (15 U.S.C. § 3901). Builders participating in the asset program are also provided with a Commercial General Liability Policy with completed operations hazard coverage underwritten by a major insurance company.

20. Defendants are the developer of St. James Golf Club in Port St. Lucie, Florida and a Florida-licensed general contracting company that served as the general contractor for Princeton for the construction of the Home and other homes in St. James Golf Club. Plaintiffs, signed a

Builder Application for Home Enrollment on <Date>. The Warranty contains a waiver and disclaimer of all other express or implied warranties of habitability, merchantability or fitness of the home, together with a waiver of the right to seek damages or other remedies from Defendants, its subcontractors, suppliers and design professionals under any common law or statutory theory of liability, including but not limited to negligence and strict liability. (Exh. C.)

21.     During the first year of the ten-year warranty term, the home is warranted to "be free from defects in materials and workmanship as defined in the Construction Quality Standards" found on pages 11 through 27 of the Warranty. (Exh. C.) During the second year, the home is warranted to "be free from defects in the electrical, plumbing, and mechanical systems," as set forth in pages 27 to 28 of the Warranty. (*Id.*) Finally, throughout the ten-year warranty period, the home is warranted to be free from "Structural Defects" which first occur during the ten-year warranty term. A "Structural Defect" is defined, *inter alia*, as actual physical damage to certain designated load-bearing elements of the home caused by failure of such load-bearing elements, which render the home unsafe, unsanitary, or otherwise unlivable. (Exh. C.).The Warranty obligates the builder to "repair, replace, or pay the reasonable cost of repair of any covered Defect or Structural Defect." (Exh. C.)

22.     The arbitration agreement specifies Construction Arbitration Services, Inc. (hereinafter "CAS") as the arbitration service to conduct any arbitrations under the Warranty. (Exh. C.) CAS is a nationwide arbitration service with more than 1,200 arbitrators, each of whom has more than ten years' experience in construction defect dispute resolution. CAS is the nation's largest arbitration service specializing in the resolution of construction defect disputes. (The current edition of the CAS Rules for the Arbitration of Home Warranty Disputes is attached hereto as **Exhibit E)**

23.     A true and correct copy of the Omnibus Complaints have been filed by Plaintiff. The Complaints allege in relevant part:

Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiff by failing to warn about the defective nature of the drywall. For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

The Defendants' defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use.

Defendants utilized, supplied, inspected, and/or sold this drywall for use in structures owned by Plaintiff, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiff for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required to be installed in structures owned by Plaintiff as a building material due to the defects.

Defendants who are subject to this claim installed, utilized, supplied, inspected, and/or sold drywall for use in the Plaintiff's home, the builders knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiff's home for use as a building material, and warranted the product be fit and merchantable for that use. The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by the builders; to wit, the installation of the drywall in the Plaintiff's home for use as a building material, because it contained defects as set forth herein.

Defendants who are subject to this claim breached the implied warranty of merchantability and fitness because the drywall was not fit to be installed in the Plaintiff's home as a building material due to the defects set forth herein. The drywall that the Defendants installed in the home of the Plaintiff was placed into the stream of commerce by the Defendants in a defective condition and was expected to, and did, reach users, handlers, and persons coming into contact with said drywall product without substantial change in the condition in which it was sold.

Defendants breached the implied warranty of habitability because the defective drywall causes the Plaintiff home does not be meet ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality due to the defects. As part of the agreements to purchase real properties from the Defendants, for which the Plaintiff paid valuable consideration, the Defendants contracted with the Plaintiff to construct his home in that it would be free of defects.

The Defendants materially breached their contracts by providing the Plaintiff with defective a home; to wit, the home contained drywall that is inherently defective because it emits various sulfide and other noxious gases through off-gassing that causes harm and damage as described herein.

In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to emit or off-gas Sulfur compounds and/or other potentially harmful, irritating and/or corrosive substances renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiff would not have

purchased the drywall had they known of the defect or defects.

Defendants' interference has impaired the rights of Plaintiff's health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

WHEREFORE, for each of the foregoing reasons, this Court is respectfully urged to grant this Motion to Compel Arbitration and Stay Action.

Respectfully submitted,

Dated: December 29, 2010

/s/ Raul R. Loredo
Raul R. Loredo, Esquire
MINTZER SAROWITZ ZERIS
LEDVA & MEYERS, LLP
The Waterford at Blue Lagoon
1000 NW 57th Court, Suite 300
Miami, FL 33126
Tel: 305-774-9966
Fax: 305-774-7743
rloredo@defensecounsel.com

/s/ Addison J. Meyers
Addison J. Meyers, Esquire
MINTZER SAROWITZ ZERIS
LEDVA & MEYERS, LLP
The Waterford at Blue Lagoon
1000 NW 57th Court, Suite 300
Miami, FL 33126
Tel: 305-774-9966
Fax: 305-774-7743
ameyers@defensecounsel.com

MDL No. 09-2047
Page 10 of 10

**CERTIFICATE OF SERVICE**

I, hereby certify that the above and forgoing has been served on Plaintiff's Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by United States Mail and email or hand delivery and email and upon all parties electronically uploading same to Lexis Nexis File and Serve® in accordance with Pre-Trial Order No.: 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with procedures established in MDL 2047 on this 29th day of December, 2010.

/s/ Raul R. Loredo
Raul R. Loredo