**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE MANUFACTURED DRYWALL MDL NO. 09-2047
PRODUCTS LIABILITY LITIGATION

                                     **SECTION L**
                                     **JUDGE FALLON**
                                     **MG. JUDGE WILKINSON**

THIS DOCUMENT RELATES TO:
*David Gross v. Knauf GIPS KG, et al.*
*Case No. 09-6690*
_____/

**DEFENDANT'S, ALBANESE-POPKIN THE OAKS DEVELOPMENT**
**GROUP, L.P., MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS' SUBSTITUTED AND AMENDED OMNIBUS**
**CLASS ACTION COMPLAINT IN INTERVENTION (III)**
**AND MOTION TO STRIKE DEMAND FOR ATTORNEYS' FEES**

Defendant, Albanese-Popkin The Oaks Development Group, L.P. (hereinafter "Albanese"),

by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(2) and, alternatively,

pursuant to Fed. R. Civ. P. 12(b)(6), hereby files its Memorandum of Law in Support of its Motion

to Dismiss Plaintiffs' Substituted and Amended Omnibus Class Action Complaint in Intervention (III)

and Motion to Strike Demand for Attorneys' Fees.  For the reasons set forth in this Memorandum, the

Court should grant Defendant's Motion.

**INTRODUCTION**

On or about April 2010, the Plaintiffs, who own homes across many states, including Florida,

Louisiana, Alabama, Virginia, and Mississippi, filed the instant Amended Class Action Complaint

(hereinafter "Amended Complaint" or "*Am. Compl.*") in Intervention in the United States District

Court for the Eastern District of Louisiana, invoking diversity jurisdiction pursuant to 28 U.S.C.

§1332(d)(2) and 28 U.S.C. §1711, *et. seq.* (Class Action Fairness Act).  The instant class action

lawsuit[1] generally arises from the alleged use of Chinese manufactured drywall in the Plaintiffs' homes. Intervening Plaintiffs have attempted to assert claims against Albanese, a Florida home builder, and many other entities which allegedly "designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold" the defective Chinese drywall. *See Am. Compl.* Specifically, two sets of the Intervening Plaintiffs, Sergei and Natalia Golovkine (*Am. Compl.* at ¶ 92) and Marc and Jennifer Wites (*Am. Compl.* at 295), neither of which purchased a home directly from Albanese, have now directed the following causes of action against Defendant, Albanese[2]: Negligence (Count I); Negligence Per Se (Count II); Strict Liability (Count III); Breach of Express and/or Implied Warranties (Count IV); Breach of Implied Warranty of Habitability (Count VI); Breach of Contract (Count VII); Private Nuisance (Count XI); Negligent Discharge of a Corrosive Substance (Count XII); Unjust Enrichment (Count XIII); Violation of Consumer Protection Acts (Count XIV); and Equitable and Injunctive Relief and Medical Monitoring (Count XV). However, Plaintiffs' Amended Complaint must be dismissed as this Court does not have personal jurisdiction over Defendant, Albanese. Further, Plaintiffs' claims are defective, not supported by Florida law and must be dismissed as a matter of law.

## MEMORANDUM OF LAW

### I. PURSUANT TO FED. R. CIV. P 12(b)(2), THE COURT SHOULD DISMISS THIS ACTION AS IT LACKS PERSONAL JURISDICTION OVER THE DEFENDANT ALBANESE

#### 1. Legal Standard

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction,

---

[1] Should the Court not grant its Motion to Dismiss, Defendant, Albanese, reserves the right to assert all defenses to class certification once the Plaintiffs file their motion for class certification.

[2] There are actually fifteen counts in the Amended Omnibus Complaint, but only the eleven set forth above apply to Albanese. The four remaining counts do not.

it is the plaintiffs' burden to establish that in personam jurisdiction exists. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert denied*, 513 U.S. 930 (1994). "The court may resolve a jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof." *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992).  The allegations of a complaint are taken as true except as controverted by the defendant's affidavits. *Asacro, Inc. v. Glenara, LTD*, 912 F.2d 784, 785 (5th Cir. 1990).

2.      **Plaintiffs Cannot Meet Their Burden to Establish Personal Jurisdiction Over Albanese.**

As Plaintiffs allege in their Amended Complaint, Defendant, Albanese, is a limited partnership organized under the laws of the State of Florida and having a principle address in Boca Raton, Florida. *Am. Compl.* at ¶ 1127.  However, as the Affidavit attached hereto as Exhibit A shows, Defendant's, Albanese, only place of business is the State of Florida.  Albanese has never been licensed or registered to do business in State of Louisiana, nor has it ever had any offices or employees in Louisiana. *See.* Ex. A. Albanese does not have an agent for service of process in Louisiana. *See.* Ex. A.  Albanese does not have any bank accounts in Louisiana or own property in Louisiana. *See.* Ex. A. Albanese does not solicit business in Louisiana and has never transacted business in Louisiana. *See.* Ex. A.  Albanese has never constructed any houses or other properties in Louisiana. *See.* Ex. A. Albanese has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana. *See.* Ex. A.  Albanese does not maintain and has never maintained and/or operated an office, store, headquarters, factories, warehouses or any other facility in the State of Louisiana. *See.* Ex. A. Albanese has never advertised in Louisiana. *See.* Ex. A.  Albanese has never marketed or promoted sales of any products or properties in Louisiana. *See.* Ex. A.  Albanese has never received any business from any contacts in Louisiana, whether individual customers or business customers. *See.*

Ex. A.  All Plaintiffs making allegations against Albanese reside in the State of Florida. *See*. Ex. A. Consequently, Albanese never anticipated it would be brought into court in Louisiana.

Generally, "[p]ersonal jurisdiction over a nonresident defendant attaches only when a defendant is amenable to service of process under the forum state's long-arm statute and the exercise of jurisdiction comports with the due process clause of the fourteenth amendment." *Asacro, Inc. v. Glenara, LTD*, 912 F.2d at 786.   However, because Louisiana's long-arm statute, La. R.S. 13:3201, allows jurisdiction over a nonresident to the fullest limits provided by the Constitution, these two inquires merge into one and "the sole inquiry into jurisdiction is a one-step analysis of the constitutional due process requirements." *Ruppert v. George Kellett & Son, Inc.*, 996 So.2d 501, 505-506 (La. App. 5th Cir. 2008)(*quoting Superior Supply Co. v. Assoc. Pipe and Supply Co.*, 515 So.2d 790, 792 (La. 1987); *Asacro, Inc. v. Glenara, LTD*, 912 F.2d at 786.  The due process clause limits the courts' power to assert personal jurisdiction over nonresident defendants to situations in which the defendants engage in "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990)(*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  However, even if the minium contacts exist, courts will also consider whether requiring the defendant to litigate in the forum state would be unfair.  *Dalton v. R&W Marine, Inc.*, 897 F.2d at 1361; *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 (1987).

The mere fact that an action may be brought as a class action has little or no bearing on the Court's jurisdictional analysis. *In Re: Train Derailment Near Amite, La.,* 2004 WL 224573 (E.D. La. 2/3/2004)("[The personal jurisdiction determination depends solely on [the defendant's] conduct and contacts with the forum state.").

### 3.      Defendant, Albanese, Does Not Have the Required Minimum Contacts.

Courts have further refined the minimum contacts analysis to contacts giving rise to specific jurisdiction or general jurisdiction. *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602 (5th Cir. 2008). When a cause of action arises out of a defendant's purposeful contacts with the forum, minimum contacts are found to exist and the court may exercise specific jurisdiction.  *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980).  However, where a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum, due process requires that the defendant have engaged in "continuous and systematic contacts" in the forum to support exercise of general jurisdiction over a defendant. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).  In the instant case, Albanese has no contacts with Louisiana such that it could be subjected to either specific or general jurisdiction.

#### a.      Specific Jurisdiction

The Fifth Circuit Court of Appeals has articulated the following three-step analysis to determine specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (2006); *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002).

The first prong of the test considers whether the "defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Ruppert v. Kellett & Sons, Inc.*, 966 So.2d 501, 506 (La. 2008)(citations omitted). "Purposeful availment ensures that the moving party will not be haled into a jurisdiction as a result of

-5-

random, fortuitous or attenuated contact, or by unilateral activity of another party or third person." *Id*. Based upon the facts presented in Exhibit A, and as set forth above, Albanese has not committed any act such that it reasonably anticipated or could have anticipated being brought into court in Louisiana, a forum in which it has no contacts.

With regard to the second prong, at this juncture, it is impossible for Plaintiffs' claims to arise out of or result from Defendant's forum-related contacts. As previously set forth above and in Exhibit A, Defendant, Albanese, is a homebuilder in the State of Florida which has never built a residence in the State of Louisiana. All of the homes at issue which were built by Defendant, Albanese, are located in the State of Florida. Further, Albanese has never received any business from any contacts in Louisiana, whether individual customers or business customers. Plaintiffs have no information or evidence to show that this litigation relates to any contact with Louisiana by Albanese. Plaintiffs do not even allege that Albanese distributed drywall in Louisiana or constructed any residences or buildings in Louisiana. Accordingly, none of Plaintiffs' claims could arise out of or result from Defendant's forum-related contacts as no contacts exist.

With respect to the third prong, in determining whether exercising personal jurisdiction comports with traditional notions of fair play and justice, courts may look to (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interests in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of several states in furthering substantive social policies. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. at 113; *see also World-Wide Volkswagen v. Woodsen*, 444 U.S. at 292.

An examination of all of the factors can only lead to the conclusion that notions of fair play and justice would be violated with an exercise of jurisdiction over this Defendant. First, the burden on the Defendant is heavy as it is based in Florida and has no offices, headquarters, accounts, property, post

-6-

office address, telephone number, or employees in Louisiana.  *See* Ex. A.  Moreover, Defendant will incur a heavy financial burden to defend this lawsuit over Florida claims in the State of Louisiana. Second, the State of Louisiana has little or no interest in adjudicating a dispute between a Florida limited partnership and certain plaintiffs regarding claims that arose in Florida and where the witnesses and evidence are located in Florida. Litigating this matter in Louisiana will only cause great expense and inconvenience to the parties. Third, Plaintiffs may secure relief in a proper forum other than the Eastern District of Louisiana.  Fourth, having a Louisiana court decide issues between Florida companies and Florida residents does little to further social policies especially in light of the fact that Albanese has never directed any activity to the citizens of Louisiana. Lastly, shared interests of several states would be furthered by adhering to the long held requirements that a defendant maintain minimum contacts with a forum prior to being subject to the jurisdiction of that forum's courts.

For the reasons set forth above, the Plaintiffs have not satisfied their burden of proof in justifying the Court's exercise of specific jurisdiction over Albanese.

#### b.      General Jurisdiction

As previously set forth, in order for a court to exercise general jurisdiction, a defendant would have to engage in "continuous and systematic contacts" in the forum. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. at 415.  Recently, a Louisiana federal court concluded that "[t]he continuous and systematic contacts tests is a difficult one to meet, requiring extensive contacts between a defendant and forum." *Ollagues v. Kausharian*, 557 F. Supp. 2d 731, 738 (E.D. La. 5/27/2008). Again, and as previously discussed, Albanese has no contacts with the State of Louisiana, let alone continuous and systematic contacts, to justify the Court exercising its general jurisdiction.

#### 4.      Alternatively, Defendant Requests that the Court Transfer the Case to the United States District Court for the Southern District of Florida.

Should the Court not dismiss this matter for lack of personal jurisdiction over the Defendant,

-7-

Albanese, requests that the Court transfer this case to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1404 and/or 28 U.S.C. §1406(a).  Both statutes provide the Court the authority to dismiss and/or transfer an action to another district or division for the convenience of the parties and the interests of justice.  The Defendant, subject plaintiffs, subject properties, potential witnesses and potential evidence are all located in the division of the Southern District of Florida.  The Southern District of Florida is a more appropriate venue and the Plaintiffs could have brought their claims there.  Therefore, the Court should transfer the case there.

## II.   ALTERNATIVELY, THE COURT SHOULD DISMISS THE AMENDED COMPLAINT IN INTERVENTION PURSUANT TO FED. R. CIV. P. 12(b)(6)

### 1.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 540, 550 (2007)).  A pleading that offers "labels" and conclusions" or a "formalistic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted).  Nor does a complaint suffice if it tenders "'naked assertion[s]' devoid of further factual enhancement." *Id.* (internal citations omitted).

### 2.   In Violation of Fed. R. Civ. P. 8, the Amended Complaint Does Not Distinguish Between the Conduct of Separate Defendants.

Fed. R. Civ. P. 8(a) requires that a pleading provide "a short plain statement of the claim showing that the pleader is entitled to relief."  Throughout the entire Amended Complaint, Plaintiffs refer to all of the defendants collectively as "Defendants" and have failed to provide a factual basis to differentiate the conduct of Defendant, Albanese, with any other defendants named.  By framing their

pleading in this manner, the Plaintiffs have failed to provide each defendant with adequate notice as to what it did wrong. *See Lane v. Capital Acquisitions and Management Co.*, 2006 WL 4590705 (S.D. Fla. April 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the . . . Complaint fails to satisfy the minium standard of Rule 8"); *Vanzandt v. Oklahoma Dept. of Human Services*, 276 Fed. Appx. 843, 849 (10th Cir. 2008)("This Court, however, does not need to speculate as to the identity of the Defendants these allegations are levied against as 'the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants'")(citations omitted).   Federal courts have routinely determined that dismissal is an appropriate remedy for violation of Rule 8. *See e.g. Pro Image Installers, Inc. v. Dillon*, 2009 WL 112953 (N.D. Fla. Jan. 15, 2009).   At this juncture and without more factual allegations, the Defendant, Albanese, cannot respond to the Amended Complaint.   Accordingly, the Court should dismiss the Amended Complaint.

> ### 3.     Plaintiffs' Amended Complaint is in Essence a Shotgun Pleading and Should be Dismissed

Plaintiffs' Amended Complaint contains fifteen counts made up of over 1,500 separate paragraphs and each count begins with the allegation that "Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein."   Federal courts define a shotgun pleading as one that "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation whether most of the counts (i.e. all but the first) contain irrelevant factual allegations and legal conclusions." *Kelso v. Big Lots Stores, Inc.*, 2009 WL 3200654 at *2 (M.D. Fla. Sept. 30, 2009)(*quoting Strategic Income Fund, L.L.C. v. Spear, Leads & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).   Courts have historically viewed this type of pleading in a negative light and have not tolerated it. *Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir.2001) (Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice.); *Anderson v. District Bd. of Trs. of*

*Central Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir.1996) (Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice).  This is exactly the situation presented with the instant Amended Complaint, as each count technically contains the general allegations as well as irrelevant legal conclusions from the preceding counts.  Accordingly, the Court should dismiss the Amended Complaint and require Plaintiffs to properly plead its Complaint.

        **4.**        **The Plaintiffs' Tort Claims for Economic Damages Are Barred by the Economic Loss Rule**.

Count I (negligence), Count II (negligence per se), Count III (strict liability), Count XI (private nuisance and Count XII (negligent discharge of a corrosive substance) each attempt to state a cause of action in tort for economic damages against Defendant, Albanese.  However, as pled, such claims should be barred fully or limited by the Court to those damages for bodily injury or "other property" which the Plaintiffs can allege with specificity. In Florida, "the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is barred if the only damages suffered are economic losses.  *Indemnity Ins. Co. of N. America v. American Aviation, Inc.*, 891 So.2d 532, 536 (Fla. 2004).  Under this rule, Florida courts have limited tort liability with respect to defective products to injury caused to persons or damage caused to other property other than the defective product itself.  *Indemnity Ins. Co. of N. America*, 891 So.2d at 541 (Fla. 2004).

    In the Amended Complaint, Plaintiffs continually seek economic damages for "costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other [personal] property that has been impacted; lost value or devaluation of their home, residences or structures and property as a direct result of damage caused to other property and indirect damage resulting from perceived defects to the property, including stigma damages; loss of use and enjoyment

of their home and property." *Am. Compl.* at ¶ 1432.  All of these alleged damages are barred by the

economic loss rule.  In defining economic loss, the Florida Supreme Court has concluded that the

following types of damages would be barred by the economic loss rule: inadequate value, costs of

repair and replacement of the defective product, or consequential loss of profits, and diminution in

value of the product. *Casa Clara Condominium Association, Inc. v. Charley Toppino and Sons, Inc.*,

620 So.2d 1244, 1246 (Fla. 1993) ("*Casa Clara").*       Accordingly, Plaintiffs could, at most, potentially

recover only non-economic damages to other property and for personal injury. *See generally Casa*

*Clara*, *supra* (recognizing that economic loss rule barred tort action where there was no personal injury

or damage to other property other than the product itself). However, at this juncture, Plaintiffs cannot

support their claim for damages to other property.  In discussing the concept of "other property," the

Florida Supreme Court in *Casa Clara*, supra, 620 So.2d at 1246 held:

> [t]he character of the loss determines the appropriate remedies, and, to
> determine the character of a loss, one must look to the product
> purchased by the plaintiff, not the product sold by the defendant. *King
> v. Hilton-Davis*, 855 F.2d 1047 (3d Cir. 1988) Generally, house buyers
> have little or no interest in how or where the individual components of
> a house are obtained.  They are content to let the builder produce the
> finished product, i.e. a house.  The homeowners bought finished
> products-dwellings-not the individual components of those dwellings.
> They bargained for the finished products, not their various
> components.

The court in *Casa Clara* concluded that the concrete at issue became an integral part of the

finished product, the house, and, therefore, there was no damage to other property to exclude

application of the economic loss rule. The same can be said in the instant case, as the drywall is an

integral part of the ultimate product purchased by the Plaintiffs, their house.  Plaintiffs have made no

allegations that the "other property," which is generally referred to in paragraph 1425 of the Amended

Complaint ("air conditioning and refrigerator coils, faucets, electrical wiring, copper, electric

appliances and other metal surfaces"), was acquired independently from the purchase of the subject

home. *See also Fishman v. Bolt*, 666 So.2d 273 (Fla. 4th DCA 1996)(finding that product purchased by appellants was a home, with all component parts, including the seawall, pool, and patio, and, therefore, pool, patio and home were not other property to exclude application of economic loss rule.). Accordingly, at this point,  the Plaintiffs cannot maintain their claims for damage to other property.

In light of the foregoing, the Court either should bar such tort claims wholly, or limit recoverable damages to personal injury and/or damage to other property only if the Plaintiffs can specifically articulate such other property than the home.

5.      **Count I of the Amended Complaint Fails to State a Claim for Negligence.**

Additional grounds for dismissal of Count I of the Complaint exist as Plaintiffs have failed to state a claim for negligence.  A prima facie case of negligence requires that the plaintiff prove that the defendant had a legal duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury and the plaintiff incurred damages as a result of the defendant's breach,  *Gibbs v. Hernandez*, 810 So.2d 1034 (Fla. 4th DCA 2002), and failure to establish one of these elements is fatal. *Hansenfus v. Secord*, 962 F.2d 1566 (11th Cir. 1992).   Plaintiffs' general allegation that "Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing and/or k) selling this drywall, including a duty to adequately warn of their failure to do so the same" is insufficiently pled. *See Am. Compl.* at ¶ 1461.  Plaintiffs' allegations are mere legal conclusions that do not contain sufficient allegations of ultimate facts to establish any duty or breach thereof by Defendant, Albanese, which proximately resulted in damages to the Plaintiffs. *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (2009)(A pleading that offers "labels" and "conclusions" or a "formalistic recitation of the elements of a cause of action will not do").

Further grounds for dismissal of this Count exist in that Defendant, Albanese had no duty to

-12-

warn the Plaintiff, as the product at issue, drywall, is not inherently dangerous. See *O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542 (S.D. Fla. 1988)(dismissing negligence count after finding that duty to warn exists only when the product is inherently dangerous and jet ski was not included in small group of products (highly toxic materials, second hand guns, and drugs) which were considered in this category). While Plaintiffs do not even allege that drywall is inherently dangerous, given that drywall does not fall within the limited types of products previously found to be inherently dangerous, the Court should conclude that Defendant, Albanese owed no duty to warn.

Because the Plaintiffs have not set forth the proper factual predicate for a claim sounding in negligence against Defendant, Albanese, nor can they maintain their position that the Defendant had a duty to warn, Count I of the Amended Complaint must be dismissed.

**6.    Count II of the Amended Complaint Does Not State a Claim for Negligence Per Se.**

Albanese further moves to dismiss Count II as Plaintiffs have failed to state a claim sounding in negligence per se. In Florida, "negligence per se is a violation of any other statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury." *DeJesus v. Seaboard Coast Line Railroad Co.*, 281 So.2d 198, 201 (Fla. 1973). Further, "it must be established by a plaintiff that he is of the class the statute was intended to protect, that he suffered injury of the type the statute was designed to prevent, and that the violation of the statute was the proximate cause of his injury." *Id.* In Count II of the Amended Complaint, Plaintiffs have failed to plead any of the required foregoing elements, and their general reference to the "International Building Code and other State and local Building Codes," *Am. Compl.* at ¶ 1471, is insufficient to support a claim for negligence per se. Plaintiffs have not set forth any specific facts to suggest that Defendant, Albanese, violated a particular statute or code, or that any alleged violation by Defendant, Albanese, of such nondescript statute/code would have proximately caused Plaintiffs' damages.

-13-

Further, in Florida, courts have held that because a building code is designed to protect the general public rather than a particular class of individuals, a violation of a building code cannot establish a claim for negligence per se. *Russ v. Wollhheim*, 915 So.2d 1285, 1286 n.1 (Fla. 2d DCA 2005). Therefore, the Court should dismiss Count II of the Amended Complaint with prejudice.

7. **Count III of the Amended Complaint Fails to State a Claim for Strict Liability.**

In order to establish a cause of action for strict liability, a plaintiff must allege and prove (1) the manufacturer's relationship to the product in question; (2) facts identifying a particular defect; (3) an unreasonably dangerous condition in that the product and the existence of the product ultimately caused the user's injuries; and (4) facts to establish that the product was expected to and did reach the ultimate user or consumer without substantial change in the condition in which it was sold. *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla. 1976).

Herein, Plaintiffs have failed to allege facts specific to the case at bar, opting instead to make the general sweeping allegation that "Defendants were in the business of distributing, delivering, inspecting, marketing, and/or selling drywall for sale to the general public" and the "drywall, including that installed in the homes of Class Members was by Defendants in the stream of commerce." *Am. Compl.* at ¶¶ 1476-1477.  Plaintiffs have only alleged that Albanese is a builder of homes in the State of Florida, and, as such, strict liability is not a claim available against Defendant, Albanese, because Albanese was merely the builder of certain of the homes and not the manufacturer, distributor, seller or any part of the chain of distribution of the drywall product at issue. *See Ugaz v. American Airlines, Inc.*, 576 F. Supp.2d 1354, 1374 (S.D. Fla. 2008)(explaining that in Florida proper defendants to a strict liability claim are manufacturers, retailers, wholesalers, and distributors); *Plaza v. Fisher Development, Inc.*, 971 So.2d 918 (Fla. 3d DCA 2007)(applying the doctrine of strict liability to retailers, wholesalers, and distributors); *Cintron v. Osmose Wood Preserving, Inc.*, 681 So.2d 859 (Fla.

-14-

5th DCA 1996); *Visnoski v. JC Penny Company*, 477  So.2d 29 (Fla. 2d DCA 1985)(doctrine of strict liability applies to retailer, distributor, and seller). Again, the product sold by the Defendant was a home, and not the individual component parts or individual pieces of drywall, and accordingly, the Court should dismiss such strict liability claims with prejudice.

 Further, even if Plaintiffs could allege a claim for strict liability, such a claim is barred and improper as Florida has mandated that strict liability is inapplicable to structural improvements to real estate. *See Neuman v. Davis*, 433 So.2d 559 (Fla. 2d DCA 1983); *see also Plaza v. Fisher Development*, 971 So.2d at 918.   In determining whether something is a product or a structural improvement to real property, Florida courts have looked to several factors including, but not limited to, whether a structure can be disassembled and resold, *Pamprin v. Interlake Companies, Inc.*, 634 So.2d 1137 (Fla. 1st DCA 1994); whether it adds value to property or ameliorates its condition, whether it is intended to enhance its value, beauty or utility, *Plaza v. Fisher Development, Inc.*, *supra*, 971 So.2d 918; and whether it is available for purchase in the sense that it is offered in the stream of commerce, *Easterday v. Masiello*, 518 So.2d 260 (Fla. 1988).  Considering the factors, the drywall is clearly a structural improvement to the subject homes at issue and, therefore, a claim for strict liability cannot lie against Defendant, Albanese.   Accordingly, the Court should dismiss Count III of the Amended Complaint with prejudice.

On November 5, 2010, the Honorable Glenn D. Kelley, in an Omnibus Order on Pending Motions to Dismiss in the Palm Beach County consolidated Chinese Drywall cases, agreed with Defendant's position and dismissed plaintiffs homeowners' strict liability claims against the homebuilder defendants.  A true and correct copy of the November 5, 2010 Order is attached hereto as Exhibit B; *See* Exhibit B, pgs 8-9. The Court concluded that homebuilder defendants were not manufacturers nor within the chain of distribution of drywall at issue and were not liable under a strict

liability theory. *See* Exhibit B, pgs 8-9.  Accordingly, the Court should follow Judge Kelley's well reasoned opinion and dismiss Count III with prejudice.

        **8.**       **Counts IV and VI of the Amended Complaint Fail to State Claims for Breaches of Warranties**

       Count IV and Count VI attempt to state claims against Defendant, Albanese, for breach of express/implied warranties and breach of implied warranty of habitability despite that fact that neither of the subject Plaintiffs are in privity of contract. Neither Plaintiff who has alleged claims against Albanese actually directly purchased the homes at issue from Albanese. Additionally, in Count IV, it appears that Plaintiffs are asserting claims regarding alleged breaches of warranties of fitness for a particular purpose and/or use in addition to a breach of express warranty.

       First and foremost, Plaintiffs may not maintain an action against Defendant, Albanese, for breach of any express warranty and/or breach of any implied warranty as they are not in privity of contract with Defendant. *See Weiss v. Johansen*, 898 So.2d 1009 (Fla. 4th DCA 2005)(Florida law requires that in order to maintain a cause of action for breach of warranty, express or implied, the parties must be in privity of contract); *Intergraph Corp. v. Stearman*, 555 So.2d 1282, 1283 (Fla. 2d DCA 1990)("Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties"); *Elizabeth N. v. Riverside Group, Inc.*, 585 So.2d 376, 378 (Fla. 1st DCA 1991) ("A warranty, whether express or implied, is fundamentally a contract.  A contract cause of action requires privity").  While  Plaintiffs falsely allege that they are in privity of contract with the Defendant, *Am. Compl*. at ¶ 1494, this unsubstantiated legal conclusion without more facts is wholly improper. *Iqbal*, 129 S. Ct.  at 1949 (2009).  However, because the subject Plaintiffs will not be able to offer any evidence to suggest they were privity of contract with the Defendant, Albanese, the Court should dismiss these claims.

       Second, Plaintiffs specious allegation that "Plaintiff and Class Members were foreseeable third

-16-

party beneficiaries of any warranty," *Am. Compl.* at ¶ 1494, without more, is insufficient to support such a claim.  The Florida Supreme Court has held that in order to establish an action for breach of a third party beneficiary contract, a party must allege and prove the following four elements: "(1) existence of the contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by the contracting party; and (4) damages to the third party resulting from the breach." *Foundation Health v. Westside EKG Associates*, 944 So.2d 188 (Fla. 2006)(internal quotations and citations omitted). The Amended Complaint in Intervention is devoid of allegations required by *Foundation Health*, but must notably Plaintiffs do not even allege that it was the clear or manifest intent of the contracting parties that such contracts primarily and directly benefit any third parties such as the subject Plaintiffs.  Accordingly, Plaintiffs can not maintain their contention that they are third party beneficiaries of any warranty.

Thirdly, concerning any alleged express warranty, Plaintiffs have failed to identify the specific express warranty that was allegedly provided by and allegedly violated by Defendant, Albanese. Without more facts, Defendant cannot adequately  respond to the allegations, nor have Plaintiffs adequately pled such claim.

Lastly, concerning any alleged breach of implied warranty of fitness for particular purpose or use, Florida law requires that a plaintiff allege a particular or unusual use different from the purpose for which the item sold is generally used.  *Fred's Excavating & Crane Service, Inc. v. Continental Ins. Co.*, 340 So.2d 1220 (Fla. 4th DCA 1976).   The instant Plaintiffs cannot meet this pleading requirement.  In fact, the Plaintiffs acknowledge in the Amended Complaint that drywall was to be used as a building material. *Am. Compl.* at ¶¶ 743 and 745. This is not a particular or unusual use different from the purpose for which drywall is ordinarily used. Further, because the Court has already acknowledged that the "[t]he Chinese drywall is not structurally inferior drywall, nor does it fail to

serve its intended structural purpose, " *In re: Chinese Manufactured Drywall Litigation*, 680 F. Supp. 2d 780, 796 (E.D. La. 2010), the Plaintiffs cannot show that the drywall was not fit for its intended use. Therefore, the subject Plaintiffs cannot maintain an action against Defendant, Albanese, for a breach of an implied warranty of merchantability for a particular purpose or use. Accordingly, the Court should dismiss Counts IV and VI of the Amended Complaint with prejudice.

> **9.     Count VII of the Amended Complaint Does Not State a Claim For Breach of Contract**.

In order to recover for a breach of contract, a plaintiff must allege the existence of a valid contract, breach of that contract and resulting damages caused by such breach. *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So.2d 1048, 1049 (Fla. 4th DCA 2003); *Indus. Med. Pub. Co. v. Colonial Press of Miami, Inc.*, 181 So.2d 19, 20 (Fla. 3d DCA 1966)(*holding* that in contract actions, "the complaint must allege the execution of the contract, the obligation thereby assumed, and the breach").  While the Plaintiffs generally allege that "Builder Defendants contracted with Subclass Members to construct homes that would be free of defects," *Am. Compl*. at ¶ 769,  Plaintiffs do not factually plead the existence of applicable terms of a contract, what terms were breached and how same was the cause of the alleged damages, nor do they attach the contracts they are traveling under.  This is wholly improper.  *See e.g. Ins. Concepts & Design, Inc. v. Healthplan Serv. Inc.*, 785 So.2d 1232, 1236 (Fla. 4th DCA 2001)(dismissing claim that failed to identify any specific provision of the contract that was breached).

More importantly, the subject Plaintiffs, Golovkines and Wites, did not contract with Defendant, Albanese, for their homes as they purchased same from third parties.  Accordingly, their only contractual remedy lies with the third parties who sold the Plaintiffs the respective homes.  Under Florida law, "[i]t is elementary that a person not a party to nor in privity with a contract does not have the right to sue for its breach." *Cibran Enterprises, Inc. v. BP Prods. N.A., Inc.*, 365 F. Supp. 2d.

1241, 1251 (S.D. Fla. 2009) (internal quotations and citations omitted); *see also Banco Ficohsa v. Aseguradora Hondorena, S. A.*, 937 So.2d 161, 164-65 (Fla. 3d DCA 2006). Accordingly, because the Plaintiffs never contracted with Albanese, they cannot sue Albanese for breach, and accordingly, the Court should dismiss Count VII of the Amended Complaint.

      **10.**    **Count XI of the Amended Complaint Fails to State a Claim for Private Nuisance.**

      Florida has long established the law of nuisance whereby it is wrongful to use one's property to "injure the land or some incorporeal right of one's neighbor." *Beckman v. Marshall*, 85 So.2d 552 (Fla. 1956); *see also Durance v. Sanders*, 329 So.2d 26 (Fla. 1st DCA 1976)("nuisance may rest on an intentional invasion of a person's property rights, on negligence, or on conduct abnormal and out of place in its surroundings"). In the case at bar, Plaintiffs allege that Defendant's actions have created a nuisance which has interfered with Plaintiffs' use and enjoyment of **_their_** properties, not that of their neighbors. *Am. Compl.* at ¶ 1556. Unfortunately, Plaintiffs misconstrue the inherent purpose of a cause of action for private nuisance. Simply put, a cause of action for private nuisance is based upon the use of property in such a manner that it constitutes a nuisance to **one's neighbor and/or occupants in the same community**. [Emphasis added]. *See Beckman*, *supra*; *see also Ferreira v. D'Asaro*, 152 So.2d 736 (Fla. 3d DCA 1963). A cause of action sounding in private nuisance is not a vehicle for Plaintiffs to obtain relief from the Defendant because their own homes are an alleged nuisance to themselves.

      It is only the neighbor who is injured, and not the owner of the home, who can claim the nuisance to their home, and has a right to bring a cause of action sounding in "private nuisance." Because the Plaintiffs have misappropriated the term "nuisance" and, essentially, are the incorrect parties to bring such claim, there is no legal remedy available for such a cause of action as per the facts alleged in Plaintiffs' Amended Complaint, and Count XI should be dismissed with prejudice.

      In his November 5, 2010 Order on Pending Motions to Dismiss, Judge Kelley agreed with

-19-

Defendant's position and dismissed the plaintiffs homeowners claims for private nuisance. *See* Exhibit B, pgs 5-7. The Court concluded that because the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another, the underlying policy of private nuisance jurisprudence does not support the plaintiffs' application of private nuisance. *See* Exhibit B, pg. 6. Accordingly, the Court should adopt this well reasoned opinion and dismiss Plaintiffs' claims for private nuisance with prejudice.

### 11. Count XIII of the Amended Complaint Fails to State a Claim for Unjust Enrichment

Under Florida law, in order to maintain an action for unjust enrichment, a plaintiff must allege "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Potiker v. Gasiunasen Galley*, 2010 WL 2949943 at *2, n.3 (S.D. Fla. July 26, 2010)(*quoting Della Ratta v. Della Ratta*, 927 So.2d 1055, 1059 (Fla. 4th DCA 2006)). Plaintiffs' claims must fail because they cannot show that they conferred a benefit on Albanese. As previously set forth above, the subject Plaintiffs did not purchase their homes from Albanese and accordingly, such Plaintiffs never paid Albanese any money. Any consideration and/or benefit which came from the Plaintiffs could only have been conferred on the third parties from whom the Plaintiffs purchased their homes. Further, any benefit that Defendant received from the original construction of the subject home would not be considered unjust as it paid a subcontractor in full for the drywall at issue. *See Maloney v. Therm Alum Industries Corp.*, 636 So.2d 767, 770 (Fla. 4th DCA 1994)("[t]he most significant requirement for a recovery on a quasi contract is that the enrichment of the defendant must be unjust. Consequently, if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for the [defendant] to retain the benefit"). Because Defendant did not retain any benefit unjustly, the

-20-

Court should dismiss Count XIII of the Amended Complaint.

        **12.**    **Count XIV of the Amended Complaint Fails to State a Claim for Violation of Consumer Protection Acts**.

As a Florida homebuilder defendant, Albanese, would have to presumably abide by Florida's Deceptive and Unfair Trade Practices Act (FDUPTA), § 501.201, Fla. Stat. However, in order to state a cause of action under FDUPTA, a plaintiff must allege "(1) a deceptive or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006). Allegations supporting these allegations "must rise above the speculative level." *Sundance Apartments I, Inc. v. General Electric Capital Corp.*, 581 F. Supp. 2d 1215, 1221 (S.D. Fla. 2008). Further, a practice is unfair under the FDUTPA if it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Suris v. Gilmore Liquidating, Inc.*, 651 So.2d 1282, 1283 (Fla. 3d DCA 1995). In their Amended Complaint, Plaintiffs generally aver that "Defendants' acts and omission as well as their failure to use reasonable care . . . including but not limited to, the knowing representation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violations" of the respective consumer protection statutes. *Am. Compl*. at ¶ 1575. Plaintiffs do not specifically identify any deceptive or unfair conduct on the part of Albanese, nor do they identify how this conduct may have constituted a deceptive or unfair act. Again, Plaintiffs have impermissibly pled conclusions of law without any allegations of ultimate facts to support such conclusions and the Court should dismiss this Count. *Infinity Golbal, LLC v. Resort at Singer Island, Inc.*, 2008 WL 1711535 at *4 (S.D. Fla. April 10, 2008)(finding that Plaintiff failed to state a claim under FDTUPA and that to state a cause of action, a plaintiff "must do more than allege in conclusory fashion that a defendant's actions constituted an unfair or deceptive act or that the defendant acted wrongfully, unreasonably and unjustly and for a deceptive and improper purpose.")(internal citations and quotations omitted); *Stires v.*

*Carnival Corp.*, 243 F. Supp.2d 1313, 1322 (M.D. Fla. 2002)(dismissing FDUPTA claim finding that complaint's vague and conclusory allegations insufficient to a support the claim).

Additionally, Plaintiffs seek damages which are impermissible under FDUPTA. Pursuant to §501, 212(2), Fla. Stat., a claimant under FDUPTA may only recover actual damages. Florida courts have determined that actual damages are "the difference in market value of the product or service in the condition which it was delivered and its market value in the condition in which it should have been delivered." *Rollins, Inc. v. Butland*, 951 So.2d at 869 (citations omitted). Although, Plaintiffs claim to have suffered actual damages, *Am. Compl.* at ¶ 1576, their incorporation of the preceding paragraphs of the Amended Complaint suggests that they are seeking damages for "costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their home, residences or structures and property as a direct result of damage caused to other property and indirect damage resulting from perceived defects to the property, including stigma damages; loss of use and enjoyment of their home and property," all of which are not considered actual damages and may not be recovered under FDUPTA. *See Rollins, Inc. v. Butland*, 951 So.2d at 869-70 (recovery of costs to repair a building and diminution in value or stigma damages are not recoverable under FDUPTA). Further §501.212 (3), Fla. Stat. specifically excludes claims for personal injury or claims for damage to property other than the property that is the subject of the consumer transaction. Accordingly, Plaintiffs' attempts to recover for damages resulting from personal injury or damage to other property would be barred by the statute.

Because Plaintiffs have failed to plead facts to support the existence of an unfair or deceptive act committed by Defendant, Albanese, have not set forth facts to support causation and actual damages and have requested relief beyond the scope of FDUPTA, the Court should dismiss Count XIV of the Amended Complaint and/or limit recoverable damages as per such statute.

**13.    Plaintiffs Have Failed to State Causes of Action for Equitable and Injunctive Relief and Medical Monitoring in Count XV of the Amended Complaint.**

In Count XV of the Amended Complaint, Plaintiffs have improperly co-mingled two separate and distinct causes of action, that of equitable relief, i.e. medical monitoring, and that of injunctive relief.  However, Plaintiffs have failed to state causes of action for either and the Court should dismiss Count XV of the Amended Complaint.

Medical monitoring is an equitable remedy that is available in only limited circumstances. *Petito v. A.H. Robins Co., Inc.*, 750 So.2d 103 (Fla. 3d DCA 1999).  A trial court may use its equitable powers to create and supervise a fund for medical monitoring if the plaintiff proves the following seven (7) elements:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the Defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Id.* at 106-107; *Wyeth, Inc. v. Gottlieb*, 930 So.2d 635, 640 (Fla. 3d DCA 2006).  In Count XIV, Plaintiffs have simply pled the elements set forth and have provided no facts to support these legal conclusions.  Without allegations of ultimate facts, Plaintiffs cannot maintain this equitable claim for medical monitoring and the Court should dismiss same. *See Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (2009) ("labels" and conclusions" or a "formalistic recitation of the elements of a cause of action will not do").

As to the Plaintiffs' request for injunctive relief, "[a]n injunction is a drastic remedy which should be granted cautiously and sparingly and the essential requisites for an injunction are lack of a

full, complete remedy at law and prevention of irreparable injury." *Fredericks v. A.H. Blake*, 382 So.2d 368 (Fla. 3d DCA 1980).  Further, to obtain a permanent injunction, "a plaintiff must establish a clear legal right, an inadequate remedy at law and that irreparable harm will arise absent injunctive relief." *K.W. Brown and Co. d/b/a K.W. Brown Investments v. McCutchen*, 819 So.2d 977, 979 (Fla. 4th DCA 2002).  Plaintiffs' blanket allegations that they are "without adequate remedy at law" and "Plaintiffs will suffer irreparable injury," without more facts, are not enough to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (2009) ("labels" and conclusions" or a "formalistic recitation of the elements of a cause of action will not do");  *Ocala Loan Company v. Smith*, 155 So.2d 711 (Fla. 1st DCA 1963)("Mere legal conclusions are fatally defective unless substantiated by sufficient allegations of ultimate fact; and every fact essential to the cause of action must be pleaded distinctly, definitely, and clearly").  Plaintiffs have set forth no allegations of ultimate facts to support their claim for injunctive relief.  Moreover, the other claims pled by Plaintiffs against Albanese demonstrate the other remedies at law available to them.  Therefore, Court should either require that Plaintiffs provide a more definite statement, or dismiss Count XV of the Amended Complaint with prejudice.

### 14.   Plaintiffs' Demand for Attorneys' Fees Must Be Stricken

Plaintiffs have demanded attorneys' fees in this action. *Am. Compl.* at pg. 327.  However, Plaintiffs' demand for attorneys' fees is improper and should be stricken.  Florida adheres to the "American Rule" which stands for the proposition that attorneys' fees are only awardable pursuant to an entitling statute or contract between the parties.  *Attorneys' Title Ins. Fund, Inc. v. Landa-Posada*, 984 So.2d 641, 643 (Fla. 3d DCA 2008).  The American Rule has been reaffirmed by the United States Supreme Court and, therefore, applies to this action.  *See Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975).  Plaintiffs have set forth no statute and/or contract which would provide them a right to an award of their attorneys' fees.  Accordingly, there can be no award of attorneys' fees

and such claim must be stricken.

### III.   <u>CONCLUSION</u>

Wherefore, in light of the foregoing, the Defendant, Albanese-Popkin The Oaks Development Group, L.P., respectfully requests that the Court grant its motion to dismiss pursuant to Fed. R. Civ. P 12(b)(2) and/or transfer the case to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404 and 28 U.S.C. §1406(a).

In the alternative, Defendant requests that the Court grant its motion pursuant to Fed. R. Civ. P. 12(b)(6) and

a.      dismiss Counts II, III, IV, VI, VII, XI, XIII and XV with prejudice;

b.      dismiss Counts I, XII and XIV;

c.      strike Plaintiffs' demand for attorneys' fees;

d.      and award Defendant, Albanese its attorneys' fees for defending this cause.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that the above and foregoing has been served on Plaintiffs' Liaison

Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u>

by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis

File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed

with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by

using the CM/ECF System, which will send a notice of electronic filing in accordance with the

procedures established in MDL 2047, on this 29th day of December, 2010.

SACHS SAX CAPLAN
Attorneys for Defendant, Albanese-Popkin The Oaks
Development Group, L.P.
6111 Broken Sound Parkway NW, Suite 200
Boca Raton, Florida 33487
Tele:   (561) 994-4499
Fax:    (561) 994-4985

By:   */s/ Brett A. Duker*
     Lysa M. Friedlieb
     Florida Bar No. 898538
     lfriedlieb@ssclawfirm.com
     Brett A. Duker
     Florida Bar No. 0021609
     bduker@ssclawfirm.com