**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE MANUFACTURED DRYWALL        MDL NO. 09-2047
PRODUCTS LIABILITY LITIGATION

                                                            **SECTION L**
                                                            **JUDGE FALLON**
                                                            **MG. JUDGE WILKINSON**

THIS DOCUMENT RELATES TO:
*Joyce W. Rogers v. Kanuf GIPS KG, et al.*
*Case No. 10-362*
_____/

### DEFENDANT'S, ALBANESE-POPKIN THE OAKS DEVELOPMENT GROUP, L.P., MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED OMNIBUS CLASS ACTION COMPLAINT (IV) AND MOTION TO STRIKE DEMAND FOR JURY TRIAL

Defendant, Albanese-Popkin The Oaks Development Group, L.P. (hereinafter "Albanese"),

by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(2) and, alternatively,

pursuant to Fed. R. Civ. P. 12(b)(3) and/or Fed. R. Civ. P. 12(b)(6), hereby files its Memorandum

of Law in Support of its Motion to Dismiss Plaintiffs' Amended Omnibus Class Action Complaint

and Motion to Strike Demand for Jury Trial. For the reasons set forth in this Memorandum, the Court

should grant Defendant's Motion.

### INTRODUCTION

On or about March 15, 2010, the Plaintiffs, who own homes across many states, including

Florida, Louisiana, Alabama, Virginia, and Mississippi, filed the instant class action in the United

States District Court for the Eastern District of Louisiana, invoking diversity jurisdiction pursuant

to 28 U.S.C. §1332(d)(2) and 28 U.S.C. §1711, *et. seq.* (Class Action Fairness Act).  The instant

class action lawsuit[1] generally arises from the alleged use of Chinese manufactured drywall in the

_____

[1] Should the Court not grant its Motion to Dismiss, Defendant, Albanese, reserves the right to
assert all defenses to class certification once the Plaintiffs file their motion for class certification.

Plaintiffs' homes. Plaintiffs have attempted to assert claims against Albanese, a Florida home builder, and many other entities which allegedly "designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold" the defective Chinese drywall. *See Am. Compl.* Specifically, three Plaintiffs, Robert Andreoli (*Am. Compl.* at ¶ 304), Dorene Brown (*Am. Compl.* at ¶ 318) and Roger Clarke (*Am. Compl.* at 336), have directed the following causes of action against Defendant, Albanese[2]: Negligence (Count I); Negligence Per Se (Count II); Strict Liability (Count III); Breach of Express and/or Implied Warranties (Count IV); Breach of Implied Warranty of Habitability (Count VI); Breach of Contract (Count VII); Private Nuisance (Count XI); Negligent Discharge of a Corrosive Substance (Count XII); Unjust Enrichment (Count XIII); Violation of Consumer Protection Acts (Count XIV); and Equitable and Injunctive Relief and Medical Monitoring (Count XV). However, Plaintiffs' Amended Complaint must be dismissed as this Court does not have personal jurisdiction over Defendant, Albanese. Alternatively, the forum selection clause requires that any dispute between the parties be brought in Palm Beach County, Florida. Further, Plaintiffs' claims are defective, not supported by Florida law and must be dismissed as a matter of law.

## **MEMORANDUM OF LAW**

### **I.   PURSUANT TO FED. R. CIV. P 12(b)(2), THE COURT SHOULD DISMISS THIS ACTION AS IT LACKS PERSONAL JURISDICTION OVER THE DEFENDANT ALBANESE**

#### **1.   Legal Standard**

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction,

---

[2] There are actually fifteen counts in the Amended Omnibus Complaint, but only the eleven set forth above apply to Albanese. The four remaining counts do not.

it is the plaintiffs' burden to establish that in personam jurisdiction exists. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert denied*, 513 U.S. 930 (1994). "The court may resolve a jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof." *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992). The allegations of a complaint are taken as true except as controverted by the defendant's affidavits. *Asacro, Inc. v. Glenara, LTD*, 912 F.2d 784, 785 (5th Cir. 1990).

### 2. Plaintiffs Cannot Meet Their Burden to Establish Personal Jurisdiction Over Albanese.

As Plaintiffs allege in their Amended Complaint, Defendant, Albanese, is a limited partnership organized under the laws of the State of Florida and having a principle address in Boca Raton, Florida. *Am. Compl.* at ¶ 552. However, as the Affidavit attached hereto as Exhibit A shows, Defendant's, Albanese, only place of business is the State of Florida. Albanese has never been licensed or registered to do business in State of Louisiana, nor has it ever had any offices or employees in Louisiana. *See*. Ex. A. Albanese does not have an agent for service of process in Louisiana. *See*. Ex. A. Albanese does not have any bank accounts in Louisiana or own property in Louisiana. *See*. Ex. A. Albanese does not solicit business in Louisiana and has never transacted business in Louisiana. *See*. Ex. A. Albanese has never constructed any houses or other properties in Louisiana. *See*. Ex. A. Albanese has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana. *See*. Ex. A. Albanese does not maintain and has never maintained and/or operated an office, store, headquarters, factories, warehouses or any other facility in the State of Louisiana. *See*. Ex. A. Albanese has never advertised in Louisiana. *See*. Ex.

-3-

A.  Albanese has never marketed or promoted sales of any products or properties in Louisiana. *See*. Ex. A.  Albanese has never received any business from any contacts in Louisiana, whether individual customers or business customers. *See*. Ex. A.  All Plaintiffs making allegations against Albanese reside in the State of Florida. *See*. Ex. A.  Consequently, Albanese never anticipated it would be brought into court in Louisiana.

Generally, "[p]ersonal jurisdiction over a nonresident defendant attaches only when a defendant is amenable to service of process under the forum state's long-arm statute and the exercise of jurisdiction comports with the due process clause of the fourteenth amendment." *Asacro, Inc. v. Glenara, LTD*, 912 F.2d at 786.  However, because Louisiana's long-arm statute, La. R.S. 13:3201, allows jurisdiction over a nonresident to the fullest limits provided by the Constitution, these two inquires merge into one and "the sole inquiry into jurisdiction is a one-step analysis of the constitutional due process requirements." *Ruppert v. George Kellett & Son, Inc.*, 996 So.2d 501, 505-506 (La. App. 5th Cir. 2008)(*quoting Superior Supply Co. v. Assoc. Pipe and Supply Co.*, 515 So.2d 790, 792 (La. 1987); *Asacro, Inc. v. Glenara, LTD*, 912 F.2d at 786.  The due process clause limits the courts' power to assert personal jurisdiction over nonresident defendants to situations in which the defendants engage in "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990)(*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  However, even if the minium contacts exist, courts will also consider whether requiring the defendant to litigate in the forum state would be unfair.  *Dalton v. R&W Marine, Inc.*, 897 F.2d at 1361; *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 (1987).

The mere fact that an action may be brought as a class action has little or no bearing on the Court's jurisdictional analysis. *In Re: Train Derailment Near Amite, La.,* 2004 WL 224573 (E.D. La. 2/3/2004)("[The personal jurisdiction determination depends solely on [the defendant's] conduct and contacts with the forum state.").

### 3.     Defendant, Albanese, Does Not Have the Required Minimum Contacts.

Courts have further refined the minimum contacts analysis to contacts giving rise to specific jurisdiction or general jurisdiction. *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602 (5th Cir. 2008). When a cause of action arises out of a defendant's purposeful contacts with the forum, minimum contacts are found to exist and the court may exercise specific jurisdiction. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980). However, where a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum, due process requires that the defendant have engaged in "continuous and systematic contacts" in the forum to support exercise of general jurisdiction over a defendant. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). In the instant case, Albanese has no contacts with Louisiana such that it could be subjected to either specific or general jurisdiction.

### a.     Specific Jurisdiction

The Fifth Circuit Court of Appeals has articulated the following three-step analysis to determine specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (2006); *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002).

The first prong of the test considers whether the "defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Ruppert v. Kellett & Sons, Inc.*, 966 So.2d 501, 506 (La. 2008)(citations omitted). "Purposeful availment ensures that the moving party will not be haled into a jurisdiction as a result of random, fortuitous or attenuated contact, or by unilateral activity of another party or third person." *Id*. Based upon the facts presented in Exhibit A, and as set forth above, Albanese has not committed any act such that it reasonably anticipated or could have anticipated being brought into court in Louisiana, a forum in which it has no contacts.

With regard to the second prong, at this juncture, it is impossible for Plaintiffs' claims to arise out of or result from Defendant's forum-related contacts. As previously set forth above and in Exhibit A, Defendant, Albanese, is a homebuilder in the State of Florida which has never built a residence in the State of Louisiana. All of the homes at issue which were built by Defendant, Albanese, are located in the State of Florida. Further, Albanese has never received any business from any contacts in Louisiana, whether individual customers or business customers. Plaintiffs have no information or evidence to show that this litigation relates to any contact with Louisiana by Albanese. Plaintiffs do not even allege that Albanese distributed drywall in Louisiana or constructed any residences or buildings in Louisiana. Accordingly, none of Plaintiffs' claims could arise out of or result from Defendant's forum-related contacts as no contacts exist.

With respect to the third prong, in determining whether exercising personal jurisdiction comports with traditional notions of fair play and justice, courts may look to (1) the burden on the

defendant; (2) the interests of the forum state; (3) the plaintiff's interests in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of several states in furthering substantive social policies. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. at 113; *see also World-Wide Volkswagen v. Woodsen*, 444 U.S. at 292.    An examination of all of the factors can only lead to the conclusion that notions of fair play and justice would be violated with an exercise of jurisdiction over this Defendant.  First, the burden on the Defendant is heavy as it is based in Florida and has no offices, headquarters, accounts, property, post office address, telephone number, or employees in Louisiana.  *See* Ex. A. Moreover, Defendant will incur a heavy financial burden to defend this lawsuit over Florida claims in the State of Louisiana.  Second, the State of Louisiana has little or no interest in adjudicating a dispute between a Florida limited partnership and certain plaintiffs regarding claims that arose in Florida and where the witnesses and evidence are located in Florida. Litigating this matter in Louisiana will only cause great expense and inconvenience to the parties. Third, Plaintiffs may secure relief in a proper forum other than the Eastern District of Louisiana.  Fourth, having a Louisiana court decide issues between Florida companies and Florida residents does little to further social policies especially in light of the fact that Albanese has never directed any activity to the citizens of Louisiana. Lastly, shared interests of several states would be furthered by adhering to the long held requirements that a defendant maintain minimum contacts with a forum prior to being subject to the jurisdiction of that forum's courts.

For the reasons set forth above, the Plaintiffs have not satisfied their burden of proof in justifying the Court's exercise of specific jurisdiction over Albanese.

### b.       General Jurisdiction

As previously set forth, in order for a court to exercise general jurisdiction, a defendant would have to engage in "continuous and systematic contacts" in the forum. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. at 415.  Recently, a Louisiana federal court concluded that "[t]he continuous and systematic contacts tests is a difficult one to meet, requiring extensive contacts between a defendant and forum." *Ollagues v. Kausharian*, 557 F. Supp. 2d 731, 738 (E.D. La. 5/27/2008).  Again, and as previously discussed, Albanese has no contacts with the State of Louisiana, let alone continuous and systematic contacts, to justify the Court exercising its general jurisdiction.

### 4.       Alternatively, Defendant Requests that the Court Transfer the Case to the United States District Court for the Southern District of Florida.

Should the Court not dismiss this matter for lack of personal jurisdiction over the Defendant, Albanese, requests that the Court transfer this case to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1404 and/or 28 U.S.C. §1406(a).  Both statutes provide the Court the authority to dismiss and/or transfer an action to another district or division for the convenience of the parties and the interests of justice.  The Defendant, subject plaintiffs, subject properties, potential witnesses and potential evidence are all located in the division of the Southern District of Florida.  The Southern District of Florida is a more appropriate venue and the Plaintiffs could have brought their claims there.  Therefore, the Court should transfer the case there.

## II.       ALTERNATIVELY, THE COURT SHOULD DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. 12(b)(3)

In the instant case, the Agreements between the aforementioned Plaintiffs and the Defendant, Albanese, contain a forum selection clause.  The respective Agreements specifically state:

> Litigation.  In any suit or other proceeding brought by either the Buyer or Seller, the prevailing party will be entitled to recover reasonable attorneys' fees, reasonable costs and expenses actually incurred by the prevailing party in such suit or proceeding or in any appeal and **Buyer and Seller agree that venue for such litigation shall be in Palm Beach County, Florida**.

*See* Agreements for Purchase and Sale attached hereto as Exhibits B, ¶ 20; C, ¶ 21 and D, ¶21[3].

In *Lim v. Offshore Specialty Fabricators, Inc*., 404 F.3d 898, 902 (5th Cir. 2005), the Fifth Circuit Court of Appeals determined that a Rule 12(b)(3) motion is the proper procedural vehicle to request dismissal based on a forum selection clause. The Fifth Circuit has further held that the enforceability of a forum selection clause is a question of federal law.  *Haynsworth v. The Corp.*, 121 F.3d 956, 962 & nn. 10 & 11 (5th Cir.1997).   Federal law applies "whether jurisdiction be based on diversity, a federal question, or some combination of the two. *Id*. Such forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) ("*The Bremen")*; *Int'l Software Systems, Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (5th Cir. 1996)(confirming that *The Bremen* applies in non-admiralty law cases).

In the instant case, the aforementioned Plaintiffs and Defendant, Albanese, agreed that any lawsuit(s) between them **<u>shall</u>** be brought in Palm Beach County, Florida. *See e.g.  In re Fireman's*

---

[3] Defendant, Albanese, has attached to this Memorandum, as Exhibits B, C and D, the written Agreements for Purchase and Sale, between Albanese and certain Plaintiffs/class representatives (hereinafter "Agreement"). Although such Plaintiffs failed to attach said Agreements to their Amended Complaint, federal courts have held that a document that a defendant attaches as an exhibit to a motion to dismiss may be considered by the court if a plaintiff's claims are based upon such document.  *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d. Cir. 1993); *see also Cortec Industries v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d. Cir. 1991) (where a plaintiff fails to attach to a complaint a document which it relies on and which is integral to the complaint, the defendant may produce such document when attacking the complaint.   In the instant case, Plaintiffs are suing Defendant for breach of contract and breach of warranty and, therefore, the contract is material and should be considered by the Court.

*Fund Insurance Companies*, 588 F.2d 93, 94-95 (5th Cir. 1979)( holding that form selection clause which stated that "the venue of such suit or action shall be laid in the County of Essex and State of New Jersey" was properly enforced and district court properly transferred action).   Accordingly, such clause should be considered mandatory and should be enforced. *Dorsey v. Northern Life Ins. Co.,* 2004 WL 2496214 at \*3 (E.D. La. 11/5/04)("Where venue is specified in a forum selection clause with mandatory or obligatory language, the clause will be enforced").   Further, clauses containing the term "shall" indicate the clause is mandatory.  *See e.g. Camsoft Data Systems, Inc. v. Southern Electronics Supply, Inc.*, 2010 WL 3199949 (M.D. La. 8/12/10) (use of the term "shall" demonstrates a clear intent to limit claims); *Dorsey*, 2004 WL 2496214 at \*3 (finding that the phrase "venue shall be laid King County, Washington" was mandatory).

By entering into a contract with this forum selection clause, said Plaintiffs waived their right to file any suit or matter in any court outside of Palm Beach County, Florida.  *See e.g. City of New Orleans v. Municipal Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004)("A party may waive its rights . . . by establishing an exclusive venue within the contract").   Accordingly, the Court should enforce the form selection clause and dismiss this action according to Fed. R. Civ. P. 12(b)(3).

## III.   ALTERNATIVELY, THE COURT SHOULD DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

### 1.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(*quoting*

-10-

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 540, 550 (2007)).  A pleading that offers "labels" and conclusions" or a "formalistic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted).  Nor does a complaint suffice if it tenders "'naked assertion[s]' devoid of further factual enhancement." *Id.* (internal citations omitted).

    **2.**    **In Violation of Fed. R. Civ. P. 8, the Amended Complaint Does Not Distinguish Between the Conduct of Separate Defendants**.

Fed. R. Civ. P. 8(a) requires that a pleading provide "a short plain statement of the claim showing that the pleader is entitled to relief."  Throughout the entire Amended Complaint, Plaintiffs refer to all of the defendants collectively as "Defendants" and have failed to provide a factual basis to differentiate the conduct of Defendant, Albanese, with any other defendants named.  By framing their pleading in this manner, the Plaintiffs have failed to provide each defendant with adequate notice as to what it did wrong. *See Lane v. Capital Acquisitions and Management Co.*, 2006 WL 4590705 (S.D. Fla. April 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the . . . Complaint fails to satisfy the minium standard of Rule 8"); *Vanzandt v. Oklahoma Dept. of Human Services*, 276 Fed. Appx. 843, 849 (10th Cir. 2008)("This Court, however, does not need to speculate as to the identity of the Defendants these allegations are levied against as 'the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants'")(citations omitted). Federal courts have routinely determined that dismissal is an appropriate remedy for violation of Rule 8. *See e.g. Pro Image Installers, Inc. v. Dillon*, 2009 WL 112953 (N.D. Fla. Jan. 15, 2009).  At this juncture and without more factual allegations, the Defendant, Albanese, cannot respond to the Amended Complaint.  Accordingly, the Court should dismiss the Amended Complaint.

### 3. Plaintiffs' Amended Complaint is in Essence a Shotgun Pleading and Should be Dismissed

Plaintiffs' Amended Complaint contains fifteen counts made up of over 800 separate paragraphs and each count begins with the allegation that "Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein." Federal courts define a shotgun pleading as one that "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation whether most of the counts (i.e. all but the first) contain irrelevant factual allegations and legal conclusions." *Kelso v. Big Lots Stores, Inc.*, 2009 WL 3200654 at *2 (M.D. Fla. Sept. 30, 2009)(*quoting Strategic Income Fund, L.L.C. v. Spear, Leads & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). Courts have historically viewed this type of pleading in a negative light and have not tolerated it. *Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir.2001) (Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice.); *Anderson v. District Bd. of Trs. of Central Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir.1996) (Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice). This is exactly the situation presented with the instant Amended Complaint, as each count technically contains the general allegations as well as irrelevant legal conclusions from the preceding counts. Accordingly, the Court should dismiss the Amended Complaint and require Plaintiffs to properly plead its Complaint.

### 4. The Plaintiffs' Tort Claims for Economic Damages Are Barred by the Economic Loss Rule.

Count I (negligence), Count II (negligence per se), Count III (strict liability), Count XI (private nuisance and Count XII (negligent discharge of a corrosive substance) each attempt to state

a cause of action in tort for economic damages against Defendant, Albanese, despite the existence

of a written contract between the parties.  However, as pled, such claims should be barred fully or

limited by the Court to those damages for bodily injury or "other property" which the Plaintiffs can

allege with specificity. In Florida, there is a general prohibition against tort actions to recover purely

economic damages for those parties in contractual privity and where a defendant has not committed

a breach of duty apart from an alleged breach of contract. *See e.g. Indemnity Ins. Co. of N. America*

*v. American Aviation, Inc.*, 891 So.2d 532, 536-37 (Fla. 2004).  "[W]hen the parties are in privity,

contract principles are generally more appropriate for determining remedies for consequential

damages that the parties have, or could have, addressed though their contractual agreement."  *Id.*

In its January 13, 2009 Order & Reasons (D.E. 741), this Court has already concluded as follows:

> [i]n their capacity as defendants, whether the Homebuilders will be
> susceptible to Plaintiffs' tort claims for economic loss is determined
> by the contractual privity ELR established by the Florida Supreme
> Court in *Indemnity Insurance Co. of North America v. American
> Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004) . . . The Homebuilders and
> Plaintiffs are in privity of contract because they entered into contracts
> for the sale of the homes containing the Chinese drywall.
> Accordingly, under the contractual privity ELR, the terms of those
> contracts will generally determine the remedies available to the
> Plaintiffs.

*In re: Chinese Manufactured Drywall Litigation*, 680 F. Supp. 2d 780, 799 (E.D. La. 2010).

More recently, on November 5, 2010, the Honorable Glenn D. Kelley, in an Omnibus Order

on Pending Motions to Dismiss in the Palm Beach County consolidated Chinese Drywall cases, held

that the contractual privity economic loss rule precluded plaintiffs homeowners' tort claims against

the defendant homebuilders seeking economic losses.  A true and correct copy of the November 5,

2010 Order is attached hereto as Exhibit E.  The court further held that "plaintiff's tort claims for

economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the [Florida] Supreme Court [in <u>Indemnity Ins. Co. of N. America</u>]," that "none of the recognized exceptions [to the economic loss rule] applied" and that "[t]raditional contract damages must be applied to the economic losses suffered by the plaintiffs." *See* Exhibit E, page 3.  As such, the court dismissed plaintiffs' homeowners tort claims brought against the homebuilder defendants.

    In addition to the reasoning found in this Court's and Judge Kelley's Orders,  Plaintiffs' tort claims in Counts I,  II, III, XI, and XII are barred as the Plaintiffs have not alleged any conduct and/or tort on the part of the Defendant, Albanese, which would be separate and apart of the parties' contractual agreement(s).  *Premix-Marbletite Manufacturing Corp. v. SKW Chemicals, Inc.*, 145 F. Supp. 2d 1348, 1359 (S.D. Fla. 2001)("when the actions complained of relate directly to the subject matter of the parties' agreement, or are interwoven with the agreement, no independent tort exists and the economic loss rule applies").  The same factual allegations are incorporated in the tort claims, the breach of contract and breach of warranty claims.  Therefore, there is no separate tort pled against Albanese. *See John Brown Automotive, Inc. v. Lewis J. Nobles*, 537 So.2d 614 (Fla. 2d DCA 1988) (tort claims that were inherent and inextricable from the events constituting breach of contract should have been dismissed); *see also* See  *W.T. Powell v. Mactown, Inc.*, 707 So.2d 825 (Fla. 3d DCA 1998)(holding that the economic loss rule does not permit tort causes of action for economic damages "where the claims are clearly contractual in nature and the cause of action is inseparably connected to the breaching party's performance under the agreement"); *Ginsberg v. Lennar Florida Holdings, Inc.*, 645 So.2d 490, 494 (Fla. 3d DCA 1994)("Where damages sought in tort are the same as those for breach of contract, a plaintiff may not circumvent the contractual relationship by

-14-

bringing an action for tort").

Second, Plaintiffs seek economic damages for "costs of inspection, costs and expenses necessary to remedy, replace and remove the defective drywall and other [personal] property that has been impacted; lost value or devaluation of their home, residences or structures and property as a direct result of damage caused to other property and indirect damage resulting from perceived defects to the property, including stigma damages; loss of use and enjoyment of their home and property." *Am. Compl.* at ¶ 689. All of these alleged damages are barred by the economic loss rule. In defining economic loss, the Florida Supreme Court has concluded that the following types of damages would be barred by the economic loss rule: inadequate value, costs of repair and replacement of the defective product, or consequential loss of profits, and diminution in value of the product. *Casa Clara Condominium Association, Inc. v. Charley Toppino and Sons, Inc.*, 620 So.2d 1244, 1246 (Fla. 1993) ("*Casa Clara")*. Accordingly, as set forth under Florida law, the Court should bar the Plaintiffs' claims for economic damages under the foregoing counts sounding in tort.

Thirdly, even if Plaintiffs could allege a tort independent of the parties' contract, Plaintiffs could, at most, potentially recover only non-economic damages to other property and for bodily injury. *See generally Casa Clara*, *supra* (recognizing that economic loss rule barred tort action where there was no personal injury or damage to other property other than the product itself). However, at this juncture, Plaintiffs cannot support their claim for damages to other property. The Defendant delivered completed homes to the Plaintiffs which included, but were not limited to, a roof, cabinets, counter-tops, air conditioning and refrigerator coils, faucets, electrical wiring, copper, electric appliances and other metal surfaces. In discussing the concept of "other property," the Florida Supreme Court in *Casa Clara*, *supra,* 620 So.2d at 1246 held:

-15-

> [t]he character of the loss determines the appropriate remedies, and, to determine the character of a loss, one must look to the product purchased by the plaintiff, not the product sold by the defendant. *King v. Hilton-Davis*, 855 F.2d 1047 (3d Cir. 1988)  Generally, house buyers have little or no interest in how or where the individual components of a house are obtained.  They are content to let the builder produce the finished product, i.e. a house.  The homeowners bought finished products-dwellings-not the individual components of those dwellings.  They bargained for the finished products, not their various components.

The court in *Casa Clara* concluded that the concrete at issue became an integral part of the finished product, the house, and, therefore, there was no damage to other property to exclude application of the economic loss rule. The same can be said in the instant case, as the drywall is an integral part of the ultimate product purchased by the Plaintiffs, their houses.  Plaintiffs have made no allegations that the "other property," which is generally referred to in paragraph 682 of the Amended Complaint ("air conditioning and refrigerator coils, faucets, electrical wiring, copper, electric appliances and other metal surfaces"), was acquired independently from the purchase of the subject homes. To the contrary, as set forth in the parties' contract, these items were included in the homes which were sold by the Defendant to subject Plaintiffs. *See also Fishman v. Bolt*, 666 So.2d 273 (Fla. 4th DCA 1996)(finding that product purchased by appellants was a home, with all component parts, including the seawall, pool, and patio, and, therefore, pool, patio and home were not other property to exclude application of economic loss rule.).  Accordingly, at this point,  the Plaintiffs cannot maintain their claims for damage to other property.

Eleven years after *Casa Clara*, the Florida Supreme Court in *Indemnity Ins. Co. of N. America*, *supra*, emphasized the limitations to the exception carved out for personal injury and damage to other property.  After analysis of the history of the economic loss rule, the Florida

Supreme Court noted that "in expanding the tort liability of manufacturers of defective products which cause personal injury, [it] expressly limited tort liability with respect to defective products to injury caused to persons or damage caused to property other than the defective product itself." 891 So.2d 532, 541 (Fla. 2004). Thus, even if the Plaintiffs can support a tort claim based in personal injury and/or damage to other property, the economic loss rule precludes Plaintiffs from recovering all of their alleged property damages set forth in Amended Complaint under a tort claim.

In light of the foregoing, because the subject parties are in privity of contract and the allegations set forth in the Amended Complaint do not support an independent tort, the Court either should bar such tort claims wholly, or limit recoverable damages to personal injury and/or damage to other property only if the Plaintiffs can specifically articulate other property, aside from the product, the home, purchased from this Defendant builder.

**5.      Count I of the Amended Complaint fails to State a Claim for Negligence.**

Additional grounds for dismissal of Count I of the Complaint exist as Plaintiffs have failed to state a claim for negligence. A prima facie case of negligence requires that the plaintiff prove that the defendant had a legal duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury and the plaintiff incurred damages as a result of the defendant's breach. *Gibbs v. Hernandez*, 810 So.2d 1034 (Fla. 4th DCA 2002). Plaintiffs' general allegation that "Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing and/or k) selling this drywall, including a duty to adequately warn of their failure to do so the same" is insufficiently pled. Plaintiffs' allegations are mere legal conclusions that do not contain sufficient allegations of ultimate facts to establish any duty or breach thereof by

Defendant, Albanese, which proximately resulted in damages to the Plaintiffs. *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (2009)(A pleading that offers "labels" and "conclusions" or a "formalistic recitation of the elements of a cause of action will not do").

Further grounds for dismissal of this Count exist in that Defendant, Albanese had no duty to warn the Plaintiff, as the product at issue, drywall, is not inherently dangerous. See *O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542 (S.D. Fla. 1988)(dismissing negligence count after finding that duty to warn exists only when the product is inherently dangerous and jet ski was not included in small group of products (highly toxic materials, second hand guns, and drugs) which were considered in this category). While Plaintiffs do not even allege that drywall is inherently dangerous, given that drywall does not fall within the limited types of products previously found to be inherently dangerous, the Court should conclude that Defendant, Albanese owed no duty to warn.

Because the Plaintiffs have not set forth the proper factual predicate for a claim sounding in negligence against Defendant, Albanese, nor can they maintain their position that the Defendant had a duty to warn, Count I of the Amended Complaint must be dismissed.

### 6.   Count II of the Amended Complaint Does Not State a Claim for Negligence Per Se.

Albanese further moves to dismiss Count II as Plaintiffs have failed to state a claim sounding in negligence per se. In Florida, "negligence per se is a violation of any other statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury." *DeJesus v. Seaboard Coast Line Railroad Co.*, 281 So.2d 198, 201 (Fla. 1973). Further, "it must be established by a plaintiff that he is of the class the statute was intended to protect, that he suffered injury of the type the statute was designed to prevent, and that the violation

-18-

of the statute was the proximate cause of his injury." *Id.*  In Count II of the Amended Complaint, Plaintiffs have failed to plead any of the required foregoing elements, and their general reference to the "International Building Code and other State and local Building Codes," *Am. Compl.* at ¶ 719, is insufficient to support a claim for negligence per se.  Plaintiffs have not set forth any specific facts to suggest that Defendant, Albanese, violated a particular statute or code, or that any alleged violation by Defendant, Albanese, of such nondescript statute/code would have proximately caused Plaintiffs' damages. Further, in Florida, courts have held that because a building code is designed to protect the general public rather than a particular class of individuals, a violation of a building code cannot establish a claim for negligence per se.  *Russ v. Wollheim*, 915 So.2d 1285, 1286 n.1 (Fla. 2d DCA 2005).  Therefore, the Court should dismiss Count II of the Amended Complaint with prejudice.

### 7.   Count III of the Amended Complaint Fails to State a Claim for Strict Liability.

In order to establish a cause of action for strict liability, a plaintiff must allege and prove (1) the manufacturer's relationship to the product in question; (2) facts identifying a particular defect; (3) an unreasonably dangerous condition in that the product and the existence of the product ultimately caused the user's injuries; and (4) facts to establish that the product was expected to and did reach the ultimate user or consumer without substantial change in the condition in which it was sold.  *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla. 1976).

Herein, Plaintiffs have failed to allege facts specific to the case at bar, opting instead to make the general sweeping allegation that "Defendants were in the business of distributing, delivering, inspecting, marketing, and/or selling drywall for sale to the general public" and the "drywall,

including that installed in the homes of Class Members was by Defendants in the stream of commerce." *Am. Compl.* at ¶¶ 724-725.   Plaintiffs have only alleged that Albanese is a builder of homes in the State of Florida, and, as such, strict liability is not a claim available against Defendant, Albanese, because Albanese was merely the builder of certain of the homes and not the manufacturer, distributor, seller or any part of the chain of distribution of the drywall product at issue.  *See Ugaz v. American Airlines, Inc.*, 576 F. Supp.2d 1354, 1374 (S.D. Fla. 2008)(explaining that in Florida proper defendants to a strict liability claim are manufacturers, retailers, wholesalers, and distributors); *Plaza v. Fisher Development, Inc.*, 971 So.2d 918 (Fla. 3d DCA 2007)(applying the doctrine of strict liability to retailers, wholesalers, and distributors); *Cintron v. Osmose Wood Preserving, Inc.*, 681 So.2d 859 (Fla. 5th DCA 1996); *Visnoski v. JC Penny Company*, 477 So.2d 29 (Fla. 2d DCA 1985)(doctrine of strict liability applies to retailer, distributor, and seller). Such is also confirmed by the Agreements attached hereto as Exhibits B, C and D.  Again, the product sold to the Plaintiffs was a home, and not the individual component parts or individual pieces of drywall, and accordingly, the Court should dismiss such strict liability claims with prejudice.  The respective contracts executed by the Plaintiffs and the Defendant, Albanese, affirms that the Plaintiffs purchased complete homes from the Defendant, not drywall.

Further, even if Plaintiffs could allege a claim for strict liability, such a claim is barred and improper as Florida has mandated that strict liability is inapplicable to structural improvements to real estate. *See Neuman v. Davis*, 433 So.2d 559 (Fla. 2d DCA 1983); *see also Plaza v. Fisher Development*, 971 So.2d at 918.  In determining whether something is a product or a structural improvement to real property, Florida courts have looked to several factors including, but not limited to, whether a structure can be disassembled and resold, *Pamprin v. Interlake Companies, Inc.*, 634

-20-

So.2d 1137 (Fla. 1st DCA 1994); whether it adds value to property or ameliorates its condition, whether it is intended to enhance its value, beauty or utility, *Plaza v. Fisher Development, Inc.*, *supra*, 971 So.2d 918; and whether it is available for purchase in the sense that it is offered in the stream of commerce, *Easterday v. Masiello*, 518 So.2d 260 (Fla. 1988). Considering the factors, the drywall is clearly a structural improvement to the subject homes at issue and, therefore, a claim for strict liability cannot lie against Defendant, Albanese. Accordingly, the Court should dismiss Count III of the Amended Complaint with prejudice.

In his November 5, 2010 Order on Pending Motions to Dismiss, Judge Kelley agreed with Defendant's position and dismissed plaintiffs homeowners' strict liability claims against the homebuilder defendants. *See* Exhibit E, pgs 8-9. The Court concluded that homebuilder defendants were not manufacturers nor within the chain of distribution of drywall at issue and were not liable under a strict liability theory. *See* Exhibit E, pgs 8-9.

> **8.    Counts IV and VI of the Amended Complaint Fail to State Claims for Breaches of Warranties and Such Claims Are Barred by the Terms of the Parties' Contracts**.

Count IV and Count VI attempt to state claims against Defendant, Albanese, for breach of express/implied warranties and breach of implied warranty of habitability. In Count IV, it appears that Plaintiffs are asserting claims regarding alleged breaches of warranties of fitness for a particular purpose and/or use in addition to a breach of express warranty. However, the contracts between Albanese and subject Plaintiffs disclaim all express and implied warranties. Each of the contracts attached hereto contain the following language:

**<u>WARRANTY; DISCLAIMER OF IMPLIED WARRANTIES</u>**

Seller makes no other warranties with respect to the **<u>fitness,</u>**

-21-

> **merchantability, habitability**, intended use, workmanship, construction, or physical condition or either the Home, any fixtures or items of personal property sold pursuant to this Agreement or any other real or personal property conveyed hereby . . .
>
> This limited warranty is expressly in lieu of any other warranties, express or implied, except for the limited warranty, **Seller disclaims any and all implied warranties or merchantability and fitness as to the home, and all fixtures or items of personal property whatsoever conveyed hereby, whether arising from custom, usage of trade, course of dealing, case law or otherwise**.

*See* Ex. B, ¶ 38; Ex. C., ¶ 38; Ex. D, ¶ 38  [Emphasis Added].  Further, exhibits control over inconsistencies in a complaint, and in the instant case, render such allegations a nullity. *Crenshaw v. Lister*, 225 F.3d 1283, 1292 (11th Cir. 2009)("It is the law in this Circuit that when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.")(internal quotations and citations omitted).

Florida courts routinely enforce contractual provisions disclaiming warranties. *Ocana v. Ford Motor* Co., 992 So.2d 319 (Fla. 3d DCA 2008); *Belle Plaza Condominium Association, Inc. v. B.C.E. Dev., Inc.*, 543 So.2d 239, 240 (Fla. 3d DCA 1989("clear that [defendant] properly disclaimed by a bold and conspicuous disclaimer any and all express or implied warranties"); *Makers, Inc. v. American Airlines, Inc.*, 513 So.2d 700 (Fla. 3d DCA 1987); *Xenographic Supplies Corp. v. Hertz Commercial Leasing Corp.*, 386 So.2d 299 (Fla. 3d DCA 1980).  Further, it is a basic tenet of Florida law under the Uniform Commercial Code that a "seller may disclaim warranties as long as the buyer reasonably understands this is being done." *Rose v. ADT Security Services, Inc.*, 989 So.2d 1244 (Fla. 1st DCA 2008) (*citing Knipp v. Weinbaum*, 351 So.2d 1091, 1084-85 (Fla. 3d DCA 1977)).  Additionally, Florida courts maintain that one who signs a document is presumed to know, and cannot deny, its contents.  *Nationwide Property and Cas. Ins. Co. v. Marchesano*, 482 So. 2d

422 (Fla. 2d DCA 1985). The disclaimer above, which is contained in the each of the contracts executed by the Plaintiffs and Defendant, fully complies with the law governing warranty disclaimers and the Court should enforce such provision.

Additionally, in Count IV, Plaintiffs have failed to identify the specific express warranty that was allegedly violated by Defendant, Albanese. Without more facts, Defendant cannot adequately respond to the allegations, nor have Plaintiffs adequately pled such claim.

Further, concerning any alleged breach of implied warranty of fitness for particular purpose or use, Florida law requires that a plaintiff allege a particular or unusual use different from the purpose for which the item sold is generally used. *Fred's Excavating & Crane Service, Inc. v. Continental Ins. Co.*, 340 So.2d 1220 (Fla. 4th DCA 1976). The instant Plaintiffs cannot meet this pleading requirement. In fact, the Plaintiffs acknowledge in the Amended Complaint that drywall was to be used as a building material. *Am. Compl.* at ¶¶ 743 and 745. This is not a particular or unusual use different from the purpose for which drywall is ordinarily used. Further, because the Court has already acknowledged that the "[t]he Chinese drywall is not structurally inferior drywall, nor does it fail to serve its intended structural purpose, " 680 F. Supp. 2d at 796, the Plaintiffs cannot show that the drywall was not fit for its intended use. Therefore, the Plaintiffs cannot maintain an action against Defendant, Albanese, for a breach of an implied warranty of merchantability for a particular purpose or use. Accordingly, the Court should dismiss Counts IV and VI of the Amended Complaint with prejudice.

9.    **Count VII of the Amended Complaint Does Not State a Claim For Breach of Contract**.

In order to recover for a breach of contract, a plaintiff must allege the existence of a valid

-23-

contract, breach of that contract and resulting damages caused by such breach. *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So.2d 1048, 1049 (Fla. 4th DCA 2003); *Indus. Med. Pub. Co. v. Colonial Press of Miami, Inc.*, 181 So.2d 19, 20 (Fla. 3d DCA 1966)(*holding* that in contract actions, "the complaint must allege the execution of the contract, the obligation thereby assumed, and the breach").  While the Plaintiffs generally allege that "Builder Defendants contracted with Subclass Members to construct homes that would be free of defects," *Am. Compl.* at ¶ 769,  Plaintiffs do not factually plead the existence of applicable terms of a contract, what terms were breached and how same was the cause of the alleged damages, nor do they attach the contracts they are traveling under. Instead, Plaintiffs vaguely allude to a contract's terms and make legal conclusions regarding the contract's terms and the promises exchanged between Plaintiffs and Defendant, Albanese. *See e.g. Ins. Concepts & Design, Inc. v. Healthplan Serv. Inc.*, 785 So.2d 1232, 1236 (Fla. 4th DCA 2001)(dismissing claim that failed to identify any specific provision of the contract that was breached).  Accordingly, the Court should dismiss Count VII of the Amended Complaint.

**10.    Count XI of the Amended Complaint Fails to State a Claim for Private Nuisance.**

Florida has long established the law of nuisance whereby it is wrongful to use one's property to "injure the land or some incorporeal right of one's neighbor." *Beckman v. Marshall*, 85 So.2d 552 (Fla. 1956); *see also Durance v. Sanders*, 329 So.2d 26 (Fla. 1st DCA 1976)("nuisance may rest on an intentional invasion of a person's property rights, on negligence, or on conduct abnormal and out of place in its surroundings").  In the case at bar, Plaintiffs allege that Defendant's actions have created a nuisance which has interfered with Plaintiffs' use and enjoyment of **their** properties, not that of their neighbors. *Am. Compl.* at ¶ 804. Unfortunately, Plaintiffs misconstrue the inherent

purpose of a cause of action for private nuisance. Simply put, a cause of action for private nuisance is based upon the use of property in such a manner that it constitutes a nuisance to **one's neighbor and/or occupants in the same community**. [Emphasis added]. *See Beckman*, *supra*; *see also Ferreira v. D'Asaro*, 152 So.2d 736 (Fla. 3d DCA 1963).  A cause of action sounding in private nuisance is not a vehicle for Plaintiffs to obtain relief from the Defendant because their own homes are an alleged nuisance to themselves.

It is only the neighbor who is injured, and not the owner of the home, who can claim the nuisance to their home, and has a right to bring a cause of action sounding in "private nuisance." Because the Plaintiffs have misappropriated the term "nuisance" and, essentially, are the incorrect parties to bring such claim,  there is no legal remedy available for such a cause of action as per the facts alleged in Plaintiffs' Amended Complaint, and Count XI should be dismissed with prejudice.

In his November 5, 2010 Order on Pending Motions to Dismiss, Judge Kelley agreed with Defendant's position and dismissed the plaintiffs homeowners claims for private nuisance. *See* Exhibit E, pgs 5-7.  The Court concluded that because the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another, the underlying policy of private nuisance jurisprudence does not support the plaintiffs' application of private nuisance. *See* Exhibit E, pg. 6.  Accordingly, the Court should adopt this well reasoned opinion and dismiss Plaintiffs' claims for private nuisance with prejudice.

> **11.    Count XIII for Unjust Enrichment Must Be Dismissed Because Plaintiffs Allege They Are in Contractual Privity and Plaintiffs Have Adequate Remedies at Law.**

It is well established under Florida law, that a party cannot pursue an equitable theory, such

as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists.

See *Ocean Communications, Inc. v. Bubeck*, 956 So.2d 1222 (Fla. 4th DCA 2007).    In *Ocean*

*Communications, Inc.*, 956 So.2d at 1224, the Court held:

> Defendants correctly state that a plaintiff cannot pursue an equitable
> theory, such as unjust enrichment or quantum meruit, to prove
> entitlement to relief if an express contract exists.  *See, e.g., Kovtan v.*
> *Frederiksen*, 449 So.2d 1, 1 (Fla. 2d DCA 1984) ("It is well settled
> that the law will not imply a contract where an express contract exists
> concerning the same subject matter."); *In re Estate of Lonstein*, 433
> So.2d 672, 674 (Fla. 4th DCA 1983).

In the instant case, there are written contracts between the subject Plaintiffs and Defendant.

Additionally, the Plaintiffs have an adequate remedy at law and have exercised such remedy in other

counts of the Amended Complaint, i.e. breach of contract. Moreover, Plaintiffs continually seek

duplicative recovery for the same economic damages in all counts of the Complaint.  Therefore,

Plaintiffs may not maintain their claim as a matter of law and the Court should dismiss Count XIII.

### 12.    Count XIV of the Amended Complaint Fails to State a Claim for Violation of Consumer Protection Acts.

As a Florida homebuilder defendant, Albanese, would have to presumably abide by Florida's

Deceptive and Unfair Trade Practices Act (FDUPTA), § 501.201, Fla. Stat.  However, in order to

state a cause of action under FDUPTA, a plaintiff must allege "(1) a deceptive or unfair practice; (2)

causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006).

Allegations supporting these allegations "must rise above the speculative level."   *Sundance*

*Apartments I, Inc. v. General Electric Capital Corp.*, 581 F. Supp. 2d 1215, 1221 (S.D. Fla. 2008).

Further, a practice is unfair under the FDUTPA if it offends established public policy, is immoral,

unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Suris v. Gilmore*

*Liquidating, Inc.*, 651 So.2d 1282, 1283 (Fla. 3d DCA 1995). In their Amended Complaint, Plaintiffs

generally aver that "Defendants' acts and omission as well as their failure to use reasonable care . . . including but not limited to, the knowing representation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violations" of the respective consumer protection statutes. *Am. Compl*. at ¶ 823.  Plaintiffs do not specifically identify any deceptive or unfair conduct on the part of Albanese, nor do they identify how this conduct may have constituted a deceptive or unfair act. Again, Plaintiffs have impermissibly pled conclusions of law without any allegations of ultimate facts to support such conclusions and the Court should dismiss this Count.  *Infinity Golbal, LLC v. Resort at Singer Island, Inc.*, 2008 WL 1711535 at *4 (S.D. Fla. April 10, 2008)(finding that Plaintiff failed to state a claim under FDTUPA and that to state a cause of action, a plaintiff "must do more than allege in conclusory fashion that a defendant's actions constituted an unfair or deceptive act or that the defendant acted wrongfully, unreasonably and unjustly and for a deceptive and improper purpose.")(internal citations and quotations omitted); *Stires v. Carnival Corp.*, 243 F. Supp.2d 1313, 1322 (M.D. Fla. 2002)(dismissing FDUPTA claim finding that complaint's vague and conclusory allegations insufficient to a support the claim).

Additionally, Plaintiffs seek damages which are impermissible under FDUPTA. Pursuant to §501, 212(2), Fla. Stat., a claimant under FDUPTA may only recover actual damages.  Florida courts have determined that actual damages are "the difference in market value of the product or service in the condition which it was delivered and its market value in the condition in which it should have been delivered." *Rollins, Inc. v. Butland*, 951 So.2d at 869 (citations omitted).  Although, Plaintiffs claim to have suffered actual damages, *Am. Compl*. at ¶ 824, their incorporation of the preceding paragraphs of the Amended Complaint suggests that they are seeking damages for "costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and

other property that has been impacted; lost value or devaluation of their home, residences or structures and property as a direct result of damage caused to other property and indirect damage resulting from perceived defects to the property, including stigma damages; loss of use and enjoyment of their home and property," all of which are not considered actual damages and may not be recovered under FDUPTA. *See Rollins, Inc. v. Butland*, 951 So.2d at 869-70 (recovery of costs to repair a building and diminution in value or stigma damages are not recoverable under FDUPTA). Further §501.212 (3), Fla. Stat. specifically excludes claims for personal injury or claims for damage to property other than the property that is the subject of the consumer transaction. Accordingly, Plaintiffs' attempts to recover for damages resulting from personal injury or damage to other property would be barred by the statute.

Because Plaintiffs have failed to plead facts to support the existence of an unfair or deceptive act committed by Defendant, Albanese, have not set forth facts to support causation and actual damages and have requested relief beyond the scope of FDUPTA, the Court should dismiss Count XIV of the Amended Complaint and/or limit recoverable damages as per such statute.

### 13.     Plaintiffs Have Failed to State Causes of Action for Equitable and Injunctive Relief and Medical Monitoring in Count XV of the Amended Complaint.

In Count XV of the Amended Complaint, Plaintiffs have improperly co-mingled two separate and distinct causes of action, that of equitable relief, i.e. medical monitoring, and that of injunctive relief. However, Plaintiffs have failed to state causes of action for either and the Court should dismiss Count XV of the Amended Complaint.

Medical monitoring is an equitable remedy that is available in only limited circumstances. *Petito v. A.H. Robins Co., Inc.*, 750 So.2d 103 (Fla. 3d DCA 1999). A trial court may use its equitable powers to create and supervise a fund for medical monitoring if the plaintiff proves the

following seven (7) elements:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the Defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Id*. at 106-107; *Wyeth, Inc. v. Gottlieb*, 930 So.2d 635, 640 (Fla. 3d DCA 2006).  In Count XIV, Plaintiffs have simply pled the elements set forth and have provided no facts to support these legal conclusions.  Without allegations of ultimate facts, Plaintiffs cannot maintain this equitable claim for medical monitoring and the Court should dismiss same. *See Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (2009) ("labels" and conclusions" or a "formalistic recitation of the elements of a cause of action will not do").

As to the Plaintiffs' request for injunctive relief, "[a]n injunction is a drastic remedy which should be granted cautiously and sparingly and the essential requisites for an injunction are lack of a full, complete remedy at law and prevention of irreparable injury." *Fredericks v. A.H. Blake*, 382 So.2d 368 (Fla. 3d DCA 1980).  Further, to obtain a permanent injunction, "a plaintiff must establish a clear legal right, an inadequate remedy at law and that irreparable harm will arise absent injunctive relief." *K.W. Brown and Co. d/b/a K.W. Brown Investments v. McCutchen*, 819 So.2d 977, 979 (Fla. 4th DCA 2002).  Plaintiffs' blanket allegations that they are "without adequate remedy at law" and "Plaintiffs will suffer irreparable injury," without more facts, are not enough to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (2009) ("labels" and conclusions" or a "formalistic recitation of the elements of a cause of action will not do");  *Ocala Loan Company v. Smith*, 155 So.2d 711 (Fla. 1st DCA 1963)("Mere legal conclusions are fatally defective unless substantiated

by sufficient allegations of ultimate fact; and every fact essential to the cause of action must be pleaded distinctly, definitely, and clearly"). Plaintiffs have set forth no allegations of ultimate facts to support their claim for injunctive relief. Moreover, the other claims pled by Plaintiffs against Albanese demonstrate the other remedies at law available to them. Therefore, Court should either require that Plaintiffs provide a more definite statement, or dismiss Count XV of the Amended Complaint with prejudice.

### 14. The Court Should Strike Plaintiffs' Demand for Jury Trial.

In their Amended Complaint, Plaintiffs have demanded a jury trial on all issues so triable. However, the contracts attached hereto as Exhibits B, C and D, all contain the same waiver of jury trial:

> Each party hereby knowingly, voluntarily and intentionally waives the right to a trial by jury with respect to any litigation between the parties, including but not limited to any and all cause or causes of action, defenses, counter-claims, cross-claims, third party claims and intervenor's claims, whether now or existing or hereafter arising and whether sounding in contract, tort, equity or otherwise, regardless of the cause or causes of action, defenses or counterclaims alleged or the relief sought by any party and regardless of whether such causes or action, defenses or counterclaims alleged or the relief sought by any party, and regardless of whether such causes of action, defenses or counterclaims are based on, or arise out of, or in connection with this agreement or its subject matter, out of any alleged conduct or course of conduct, dealing or course of dealing, statements (whether verbal or written), or otherwise. **Any party may file a copy of this agreement with any court as conclusive evidence of the consent of the parties hereto to the waiver of any right they may have to a trial by jury.**

[Emphasis Added]

Florida courts have routinely ruled that a trial court commits reversible error when it chooses to ignore the parties' contractual waiver of jury trial. *Vista Centre Venture v. Unlike Anything, Inc.*, 603 So.2d 576 (Fla. 5th DCA 1992). The parties' waiver of a right to a trial by jury is

constitutionally permissible and should be upheld by this Court.  *Palomares v. Ocean Bank of Miami,* 574 So.2d 1156 (Fla. 3dDCA 1991), review denied 587 So.2d 1328 (Fla. 1991).  The instant parties signed and executed a contract waiving the parties' right to a jury trial. Florida courts maintain that one who signs a document is presumed to know, and cannot deny, its contents. *Nationwide Property and Cas. Ins. Co. v. Marchesano*, 482 So. 2d 422.   The contract is clear and unambiguously waives each party's right to a trial by jury and the Court should strike the Plaintiffs' demand for jury trial.

### IV.    <u>CONCLUSION</u>

Wherefore, in light of the foregoing, the Defendant, Albanese-Popkin The Oaks Development Group, L.P., respectfully requests that the Court grant its motion to dismiss pursuant to Fed. R. Civ. P 12(b)(2) and/or transfer the case to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404 and 28 U.S.C. §1406(a).  Alternatively, the Defendant requests that the Court grant its motion pursuant to Fed. R. 12(b)(3).

In the alternative, Defendant requests that the Court grant its motion pursuant to Fed. R. Civ. P. 12(b)(6) and

a.    dismiss Counts II, III, IV, VI, XI, XII, XIII and XV with prejudice;

b.    dismiss Counts I, VII and XIV;

c.    strike Plaintiffs' demand for jury trial;

d.    and award Defendant, Albanese its attorneys' fees for defending this cause.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 29th day of December, 2010.

SACHS SAX CAPLAN
Attorneys for Defendant, Albanese-Popkin The Oaks
Development Group, L.P.
6111 Broken Sound Parkway NW, Suite 200
Boca Raton, Florida 33487
Tele:   (561) 994-4499
Fax:    (561) 994-4985

By:   */s/ Brett A. Duker*
      Lysa M. Friedlieb
      Florida Bar No. 898538
      lfriedlieb@ssclawfirm.com
      Brett A. Duker
      Florida Bar No. 0021609
      bduker@ssclawfirm.com