### b.   Determination of Class-Wide Damages is a Predominant Issue

Similarly, the plaintiffs' demonstrated ability to determine class-wide damages meets the

predominance requirement at the certification stage. *See, e.g., Monumental Life Insurance Co. v.*

*National Life,* 365 F.3d 408, 419 (5th Cir. 2004) ("The policy variables are identifiable on a

class-wide basis and, when sorted, are capable of determining damages for individual

policyowners; none of these variables is unique to particular Plaintiffs.  The prevalence of

variables common to the class makes damages computation 'virtually a mechanical task.'").

As the Eleventh Circuit noted in *Klay v. Humana*:

> In assessing whether to certify a class, the court's inquiry is limited
> to whether or not the proposed methods for computing damages are
> so insubstantial as to amount to no method at all . . . . Plaintiffs
> need only come forward with plausible statistical or economic
> methodologies to demonstrate impact on a class-wide basis.
> Particularly where damages can be computed according to some
> formula, statistical analysis, or other easy or essentially mechanical
> methods, the fact that damages must be calculated on an individual
> basis is no impediment to class certification.

382 F.3d at 1259-60 (internal brackets, quotations and footnotes omitted).[7]  As such, damages

can be proven on a class-wide basis and allocation and claims processing issues will not defeat

class certification.  *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 699 (S.D. Fla. 2004)

("Assuming the jury renders an aggregate judgment, allocation will become an intra-class matter

accomplished pursuant to a court-approved plan of allocation, and such individual damages

---

[7] Courts routinely have used class-wide, formula-based techniques to calculate individual damages in various types of class actions. *See, e.g., Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977) (approving aggregate damages judgment), *aff'd*, 444 U.S. 472 (1980); *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003) (approving of the use of objective data extracted from the Defendant's computer system and analyzed through a "mechanical process" in a case involving charging customers for incoming cellular telephone calls.); *see also* 3 Newberg on Class Actions § 10:8.

allocation issues are insufficient to defeat class certification."); *In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. at 525 (S.D.N.Y. 1996) ("Aggregate computation of class monetary relief is lawful and proper.").

Even if some individual damages issues may exist, it is well settled that their presence does not defeat predominance. *See Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004) ("[N]umerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate."); *Murphy*, 234 F.R.D. at 605, 607 (same). Any individualized damage issues, for example, determining individual personal property damage, can be dealt with "pursuant to a court-approved plan of allocation," or mini-trials. *Terazosin*, 220 F.R.D. at 699; *see also Turner v. Murphy*, No. 05-4206, Order and Reasons (March 3, 2006), slip op. at 3 (Comp. Ex. 15) ("Fifth Circuit has approved of bifurcated trial plans in which common issues of liability, negligence, and certain defenses are tried commonly, with causation actual damages, and … comparative fault tried individually.") (Citations omitted).

###### i.   **Formulaic Method to Determine Class-Wide Property Damages**

Alternatively, damages can be formulaic in nature and amenable to class treatment. Ronald Wright, Plaintiffs' expert, is a Civil Engineer who specializes in the assessment of repair and remediation for home construction. Mr. Wright has inspected many CDW homes, and developed a methodology to estimate damages for the remediation of CDW homes and the replacement of damaged components including appliances, flooring, cabinetry and other items. Wright Dec. at ¶¶5-6. He has considered national databases that estimate such costs including

RS Means. More specifically, he has reviewed the real world repair bids of local construction companies to perform the necessary remediation in several homes in different states. *Id.* For example, based on his work in Virginia and available Virginia data, Mr. Wright offered the expert opinion in the *Germano* proceeding that the cost of repair for a fair cross-section of Virginia homes would be on average $86 per square foot, which was accepted by the Court. *Germano* FOFCOL at 57-60. Based on similar data for Florida, available statistical databases in the housing and construction industry, and Florida CDW distribution data Mr. Wright will be able to estimate: (1) the number of homes in Florida likely to contain defective CDW distributed by Banner requiring remediation, and (2) the total square footage of these homes. With these estimates, combined with the average price of repair per square foot in the state; Dr. Wright can then determine class-wide remediation damages. Wright Dec. at ¶¶5-7; *see also Germano* FOFCOL at 57-59, 64-69.

Additional forms of property damage, including alternative living costs, property diminution, loss of use and enjoyment, and personal property losses are also amenable to determination on a class-wide basis. For example, in the case of alternative living costs, the damage amount established in *Hernandez* was $2376.81/month. *Hernandez* FOFCOL at 42. Real property diminution also can be determined in a formulaic manner. *Murphy,* 234 F.R.D. at 607 and n.5 (Court notes that real estate expert "opined that the properties at issue would be properly subject to mass appraisal to determine their present value."); *Sher v. Raytheon Co.,* 261 F.R.D. 651, 2009 WL 31931 52, *19 (M.D. Fla. 2009) (in environmental pollution toxic tort case, court found at class certification that plaintiffs provided a "viable model for calculating

22

property damages on a class-wide basis").

Loss of use and enjoyment and personal property damages could also be assessed for the class based on a survey of representative homeowners. *In re Chevron U.S.A., Inc.,* 109 F.3d 1016, 1019-20 (5th Cir. 1997) (permitting the use of statistics to draw inferences about the claims of 3,000 plaintiffs and intervenors who claimed wrongful death, personal injury, and property contamination from defendant's storage of hazardous substances which had leaked from crude oil waste pits and migrated into the plaintiffs' drinking water supply.); *see Watson v. Shell Oil Co.,* 979 F.2d 1014, 1018 (5th Cir. 1992) (approving trial court's proposal to determine punitive damages in a mass-tort class-action suit by fully trying 20 sample claims on *compensatory* damages to the jury and then asking the jury to "establish the ratio of punitive damages to compensatory damages for each class member"); *Hilao v. Estate of Marcos,* 103 F.3d 767, 782087 (9th Cir. 1996). The Ninth Circuit Court of Appeals allowed the use of aggregation and statistical analysis to determine compensatory damages where a statistics expert relied on a random sample of claims to calculate damages for the entire class.); *see also,* Newberg on Class Actions at §10:3 (4th ed.) (citing *Long v. Trans World Airlines, Inc.,* 761 F.Supp. 1320, 1324-1326 (N.D. Ill. 1991) (approving use of a sample of class members' damages in labor dispute as a basis to determine class-wide damages.).

Thus, class-wide property damages can be established by a formulaic method or by a combination of a formulaic method and a claims proceeding or mini-trials. This meets the Rule 23(b)(3) predominance requirement. *Monumental,* 365 F.3d at 419. In addition, the FOFCOL from *Germano* and *Hernandez,* as well as the jury verdict in *Seifart,* demonstrate benchmark

damage awards for the cost of remediation, the alternative living costs, property diminution, loss

of use and enjoyment and private property damage, that may be used by the court as standards of

comparison to review the reasonableness of an expert opinion on these damages or an award of

class-wide property damages.

**c.    All of the Class Claims are Governed by Florida Substantive
Law**

Variation of state law and choice of law are also significant concerns for manageability.

*Mullen*, 186 F.3d at 627.  Here, these matters are easily managed because there is only one state

law to consider, Florida.  *See Manual for Complex Litigation,* Fourth § 22.634, p. 634; §§22.753-

54, p. 652.

Federal courts sitting in diversity must apply the choice of law rules of the forum state.

*Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941);

*In re Vioxx Products Liability Litigation*, 239 F.R.D. 450, 454 (E.D. La. 2006).  This case,

having been filed initially in Florida, requires the application of Florida choice of law rules.  *In re*

*Vioxx Prods. Liab. Litig.,* 478 F. Supp. 2d 897, 903 (E.D. La. 2007)("[T]he MDL court must

apply the law of the transferor forum, that is, the law of the state in which the action was filed,

including the transferor forum's choice of law rules.").[8]  Florida choice of law rules require the

court to determine what state has the "most significant relationship" to, and interest in, the claim

and to determine whose policies would be most seriously impaired if its law were not applied to

---

[8] The *Vickers* case was filed in Florida and then transferred to the MDL and the *Payton* case was filed in Louisiana.
To the extent Louisiana choice of rules apply, Louisiana also applies the "most significant relationship" test, La. Civ.
Code Ann. Art. 3515, 3539, and 3542; *Commerical Union Insurance Group v. The Upjohn Company*, 409 F.Supp
453 (W.D. La. 1976); *Skansi Marine, LLC v. Ameron Intern. Corp.*, 2003 WL 22852221 (E.D. La. 2003).  Thus, the
choice of law determination would be the same under either state's choice of law rules.

24

that issue. *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla. 1980); *Harris v. Berkowitz,* 433 So.2d 613, 615 (Fla. App. 1983) (holding when all parties are permanent residents of Florida, it is impossible to ascertain any policy Maine may have in limiting the parties' rights which would outweigh Florida's interest).

Based on the above-referenced law, it is clear that substantive Florida law would apply to a Florida resident's property damage claim for a residence that is located in Florida. For the Florida class representatives and the Florida class, Florida is the state where the injury occurred and where the damaged home is located. Florida's substantive law makes clear that Florida court's policy is to protect its own residents and its own properties from injury and to provide fair compensation to its residents when such injuries occur. *See Bishop,* 389 So.2d at 1001 (1980) (explaining that "the state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law ... [o]ther factors may combine to outweigh the place of injury as a controlling consideration"); *Harris* 433 So. 2d at 615. Thus, the substantive law of Florida would apply to the class claim.

As stated above, the factual determination of class-wide liability and property damages are the predominant common issues to be resolved in this case. These types of issue are recognized as pivotal class issues. *Mullen,* 186 F.3d at 626; *Monumental,* 365 F.3d at 419; *Murphy,* 234 F.R.D. at 606; *McQuilken,* 576 F.Supp. at 1031. The types of issues that are often seen as obstacles to class certification: those that require extensive individualized proof like where class members seeking personal injury damages are exposed to different products, at different times and suffer different injuries; are not present in this case. *Mullen,* 186 F.3d at 626;

25

*Turner v. Murphy Oil,* No. 05-4206, Order and Reasons, slip op at 13-14 (January 30, 2006)

(Comp. Ex. 16). Similarly, complex choice of law issues are not involved here. *Mullen,* 186

F.3d at 627. In contrast to those cases that have not allowed certification, this case presents class

claims where each class member has suffered the same type of injury, during the same time

period, caused by the conduct of the same defendant, a paradigm for class certification:

> In the present case the plaintiffs are an extremely compact and
> discrete geographical group, readily identifiable. There are no
> choice of law problems. All claim to have suffered the same type
> of harm, during the same time period, caused by the same conduct
> of the defendant.  This case is thus similar to those cited above in
> which class certification has been granted. It also differs from
> those "mass tort" cases in which certification has been denied
> because the harm to various class members took place at different
> times and under different circumstances, or because individual
> defenses or choice of law problems existed.

*McQuilken,* 576 F.Supp. at 1031; *see also Mullen,* 186 F.3d at 626-627.

In sum, the substantive property damage law applicable to CDW claims in Florida has

been established. *Seifart* Orders and Verdict Sheet (Comp. Exs. 1-4). There is no variation in

the law to be applied to members of each class. Class-wide liability and class-wide damages can

be established on a common basis. The trial of this case on these predominant issues is

manageable as demonstrated by the Proposed Trial Plan (filed simultaneously herewith). The

requirements of Rule 23(b)(3) predominance are readily established.

### 6.   Superiority – Rule 23(b)(3)

Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the

class action format is superior to other methods of adjudication:  (1) the class members' interest

in individually controlling their separate actions, (2) the extent and nature of existing litigation by

26

class members concerning the same claims, (3) the desirability of concentrating the litigation in the particular form, and, (4) the likely difficulties in class management.  Fed. R. Civ. P. 23; *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 304 (5th Cir. 2009).[9]

A class proceeding is the superior method to adjudicate a major subset of claims in the MDL, the property damage claims against Banner in Florida.  The exhaustive record of the relevant factual evidence already reviewed by and ruled on by this Court and the *Seifart* Court greatly enhances the manageability of this matter.  A class proceeding will facilitate an expeditious and streamlined resolution for the largest subset of affected homeowners and potentially establish a road map to resolve the remaining claims in the MDL.  This streamlined proceeding is desirable and necessary because the property damage caused by CDW obtained through Banner has forced many homeowners to abandon their homes and has placed several homeowners under financial pressure including the need to pay two mortgages, loss of credit rating, and foreclosure.  Further, there are no unmanageable obstacles in the trial of these claims. *See* Proposed Trial Plan.  For all the reasons stated above, as well as the procedural advantages of avoiding duplicate proceedings on identical issues, class adjudication is the superior method to resolve the property damage claims of Florida homeowners against Banner.

## IV. CONCLUSION

In sum, the Plaintiffs can readily establish that the proposed class meets the Rule 23 requirements of numerosity, commonality, typicality, adequacy, predominance and superiority. Plaintiffs respectfully request that the class described herein be certified.

---

[9] This Court has recognized that these defective drywall claims against Knauf are meritorious. *Hernandez* FOFCOL at 44-47.

## PROPOSED CLASS COUNSEL

Dated: September 20, 2010                    Respectfully submitted,


/s/ Arnold Levin
Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*


Ervin A. Gonzalez
Patrick Montoya
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzalez,
  Kalbac & Kane
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com


Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com


28

### PROPOSED OF COUNSEL TO CLASS,
### PLAINTIFFS' STEERING COMMITTEE

Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR,
LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs Liaison Counsel*

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com


Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vRoberts@podhurst.com


Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Patrick Montoya
Colson, Hicks, Eidson, Colson
   Matthews, Martinez, Gonzales,
   Kalbac & Kane
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
   & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

31

# EXHIBIT B

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL  CIRCUIT  IN  AND  FOR
BROWARD COUNTY, FLORIDA
CASE NO.: 10-28090 (12)

IN RE: CHINESE DRYWALL LITIGATION

DARIO ORLANDO et al,

       *Plaintiffs,*

vs.

BANNER SUPPLY CO.,  et al,

      *Defendants.*

---

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
## AND INCORPORATED MEMORANDUM OF LAW

    Plaintiffs DARIO ORLANDO; STEPHEN SINES; DAVID AND JOAN GLICKMAN;

THOMAS WOJCIECHOWSKI; OCEANPARK ESTATES ASSOCIATION, INC.; and DOCKSIDE

LOFTS CONDOMINIUM ASSOCIATION, INC., individually and as representatives of others

similarly situated, by and through undersigned counsel, file this Motion for Class Certification in

their action against Defendants Banner Supply Co. and Banner Supply Company Pompano LLC[1]

The motion should be granted because Plaintiffs meet all the requirements of Fla.R.Civ.P. 1.220.[2]

---

[1] On October 13, 2010, Plaintiffs filed a First Amended Complaint adding the following Defendants:
Banner Supply Co., Banner Supply Company Fort Myers, LLC, Banner Supply Company Port St.
Lucie, LLC and  Banner Supply Company Tampa, LLC.  As of this filing, Banner Supply Co. and
Banner Supply Company Pompano, LLC have answered the First Amended Complaint.  The
remaining Banner Defendants have been served and are expected to file responsive pleadings in the
coming days.  A supplemental motion joining the remaining Banner Defendants will be filed upon
receipt of the respective answers.

[2] Plaintiffs note that Defendant Banner Supply Co. has already been subjected to a class
certification Order entered by the Honorable Judge Joseph P. Farina, Circuit Court Judge in and
for the Eleventh Judicial Circuit. See Exhibit 1.

## MEMORANDUM OF LAW

### I.     INTRODUCTION.

Defendant Banner Supply Co., in concert with other Banner-related entities, (hereinafter referred to as "BANNER"), supplied defective drywall to contractors and builders for installation in thousands of homes throughout the State of Florida.   According to Plaintiffs' First Amended Complaint, filed October 13, 2010, Defendant supplied this drywall which

> was and is defective because it contains and emits toxins, including sulphur and sulphur compounds such as carbon disulfide, carbonyl sulfide and hydrogen sulfide, which damage homes, fixtures attached thereto, and personal property contained therein, in many ways, including, but not limited to: (a) eroding, corroding and/or tarnishing various metals within residences, including plumbing and interior electrical wiring; (b) disrupting and/or interfering with the operation of electric and electronic equipment and appliances within said residences, including but not limited to microwaves, computers, air conditioning and refrigerator coils; and (c) creating a noxious rotten egg-like odor that renders the homes uninhabitable. The defect in the drywall was latent and existed at the time of manufacture, supply, installation and sale of the defective drywall. The defect exists irrespective of the manner in which the drywall was installed, maintained, or painted. The defect cannot be repaired.

*See Plaintiffs' Complaint, paragraph 20.*

### A.     Causes of Action.

Plaintiffs have sued on their own behalf and on the behalf of others similarly situated.   They have alleged five (5) causes of action: (a) a strict products liability claim; (b) a negligence claim; and (c) violation of Florida Deceptive and Unfair Trade Practice Act; (d) Private Nuisance and (e) Equitable and Injunctive Relief. These claims arise out of the Defendant's supply of defective drywall in homes and structures, all within the State of Florida, to Plaintiffs and members of the proposed class, more than two-thirds of whom are residents of the State of Florida.

### B.     Class Definition.

2

Plaintiffs seek to bring this action on behalf of themselves, individually, and on behalf of all persons who own real property which has had defective drywall installed in their homes or buildings as being supplied by Defendant Banner Supply Co and Banner-related entities. The class Plaintiffs propose to represent is defined as follows:

> All natural persons and business entities residing in the State of Florida who purchased homes between January 2004 and the present and whose homes contain the defective drywall supplied by Banner Supply Co. or Banner-related companies.

The class consists of Homeowner Plaintiffs, Townhome Plaintiffs, Condominium Unit Owner Plaintiffs, and Condominium Association Plaintiffs. Categories of persons expressly excluded from the class are: (1) all persons whose claims have been reduced to judgment or settled as of the date the class is certified; (2) all Plaintiffs covered by an existing class certification against Banner Supply Co. (3) Defendants' officers, directors, subsidiaries or any other person related to, affiliated with or employed by Defendants and members of their immediate families.; and (4) Court's spouse or partner, if applicable, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.

### C.   Elements of Class Action.

Plaintiffs move for certification of this class pursuant to Fla.R.Civ.P. 1.220. The four prerequisites to class certification are contained in Rule 1.220(a). It provides:

> **(a) Prerequisites to Class Representation.** Before any claim or defense may be maintained on behalf of a class by one party or more suing or being sued as the representative of all the members of a class, the court shall first conclude that (1) the members of the class are so numerous that separate joinder of each member is

3

> impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class.

If these prerequisites are met, then class certification is proper if the plaintiffs meet one of the three alternative standards set out in Rule 1.220(b).

The purpose of the class action is to provide litigants who share common questions of law and fact with an economically viable means of addressing their needs in court. *Johnson v. Plantation Gen. Hosp. Limited Partnership*, 641 So.2d 58, 60 (Fla. 1994). At the class certification stage, the court only determines whether the requirements of Rule 1.220 have been met. The substantive merits of the plaintiffs' case is not an issue. *See Oce Printing Systems USA, Inc. v. Mailers Data Serv., Inc.*, 760 So.2d 1037, 1045 (Fla. 2d DCA 2000); *Samples v. Hernando Taxpayers Assn*, 682 So.2d 184, 185 (Fla. 5th DCA 1996). Moreover, because Rule 1.220 is patterned after Fed.R.Civ.P. 23, Florida courts may look to federal precedents addressing the federal rule where appropriate. *Concerned Class Members v. Sailfish Point, Inc.*, 704 So.2d 200, 201 (Fla. 4th DCA 1998); *Broin v. Philip Morris Co.*, 641 So.2d 888, 889 (Fla. 3d DCA 1994); *Powell v. River Ranch Prop. Owners Ass'n*, 522 So.2d 69, 70 (Fla. 2d DCA 1988).

## II.   PLAINTIFFS' PROPOSED CLASS SATISFIES THE RULE 1.220(a) PREREQUISITES TO CLASS CERTIFICATION.

Rule 1.220(a) establishes four prerequisites to class certification: (1) numerosity; (2)

4

commonality; (3) typicality; and (4) adequate representation. Fla.R.Civ.P. 1.220(a); *Union American Ins. Co. v. Rodriguez*, 696 So.2d 1248 (Fla. 3d DCA 1997); *Samples*, 682 So.2d at 185. Each is met here.

## A.     Numerosity.

The first prerequisite to class certification is that "the members of the class are so numerous that separate joinder of each member is impracticable." Fla.R.Civ.P. 1.220(a)(1).  The precise number of persons needed to satisfy this element is fluid.  Generally, the numerosity requirement is met when the class exceeds 100 members. *Kromnick v. State Farm Ins. Co.*, 112 F.R.D. 124, 126 (E.D. Pa. 1986).  However, classes with as few as 25 members have been certified. *See Estate of Bobinger v. Deltona Corp.*, 563 So.2d 739, 743 (Fla. 2d DCA 1990).  As one court discussed:

> Because of the particularized nature of Rule 23(a)(1) inquiry, no definitive pattern has emerged in terms of the number of purported class members.  Although the numerosity requirement is generally satisfied where the class exceeds 100 members, . . .  classes numbering less than one hundred have been certified as well. . . .  Indeed, classes with as few as 25 to 30 members have been certified by some courts. . . .  A leading treatise has concluded, based on prevailing precedent, that the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable, and "the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone." 1 NEWBERG Section 3.05, at 3-25.

*Feret v. Corestates Financial Corp.*, 1998 WL 512933, at *6 (E.D. Pa. Aug. 18, 1998)(internal quotation marks, brackets and citations omitted).   Florida courts have certified classes of homeowners or renters numbering as few as 100. *See Smith v. Glen Cove Apts. Condos. Master Ass'n,* 847 So. 2d 1107, *1109-10* (Fla. 4th DCA 2003); *Wittington Condo. Apts., Inc. v. Braernar*

*Corp., 313* So. 2d 463, 468 *(Fla. 4th DCA* 1974); *cf. Estate of Bobinger v. Deltona Corp.,* 563 So. 2d 739, 743 (Fla. 2d DCA 1990) ("We note that classes as small as 25 have fulfilled the numerosity requirement.").

In this case, the number of class members far exceeds 40; indeed, it far exceeds 100. The class may include more than a thousand or more persons. Precise numbers are not yet available. Given these numbers, separate joinder of each of the class members is impracticable. The alternative to class treatment is at least hundreds of separate lawsuits and perhaps even a thousand or more separate suits. As a result, the numerosity requirement of Rule 1.220(a)(1) has been met. *See Maner Prop., Inc. v. Siksay,* 489 So.2d 842 (Fla. 4th DCA 1986)(over 350 potential class members); *Kromnick,* 112 F.R.D. 124 (over 800 members).

### B.    Commonality.

The second prerequisite is that "the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class." Fla.R.Civ.P. 1.220(a)(2). This "commonality" requirement is not onerous. It simply asks whether there is a benefit to be derived from combined treatment of the class members' claims. *Broin v. Philip Morris Companies, Inc.,* 641 So.2d 888, 890 (Fla. 3d DCA 1994). As a result, commonality exists if the resolution of the common issues affect all or a substantial number of the class members. *Broin,* 641 So.2d at 890. The Fourth District explained this requirement in *Imperial Towers Condominium, Inc. v. Brown,* 338 So.2d 1081 (Fla. 4th DCA 1976):

> A class suit is maintainable where the subject of the action presents a question of common or general interest, and where all members of the class have a similar interest in *obtaining the relief sought.* The

6

> common or general interest must be the *object* of the action, in the *result sought* to be accomplished in the proceedings, or in the *question* involved in the action. There must be a common right of recovery based on the same essential facts.

338 So.2d at 1084 (emphasis by court)(quoting *Port Royal, Inc. v. Conboy*, 154 So.2d 734 (Fla. 2d DCA 1963)). *See Arvida/JMB Partners v. Council of Villages, Inc.*, 733 So.2d 1026, 1030 (Fla. 4th DCA 1998).

In *McFadden v. Staley*, 687 So.2d 357 (Fla. 4th DCA 1997), the Fourth District was presented with an appeal from an order granting class certification. The class members were restaurant patrons who became ill from consuming adulterated food at the defendant restaurant. The court affirmed the class certification. In addressing the commonality requirement, it wrote:

> Claims which arise out of the same course of conduct by a defendant but in differing factual contexts may be pled as a class action if they present a question of common interest. In *Powell v. River Ranch Property Owners Ass'n, Inc.*, 522 So.2d 69 (Fla. 2d DCA) . . . , the court recognized that the primary concern in considering the typicality and commonality of claims should be whether the representative's claim arises from the same course of conduct that gave rise to the other claims and whether the claims are based on the same legal theory. In *Broin v. Philip Morris Companies, Inc.*, 641 So.2d 888, 890 (Fla. 3d DCA 1994), . . . the court quoted from *Jenkins v. Raymark Indus., Inc.*, 782 So.2d 468, 473 (5th Cir. 1986), stating: "[T]he threshold of 'commonality' is not high. Aimed in part at 'determining whether there is a need for combined treatment and a benefit to be derived therefrom,' the rule requires only that resolution of the common questions affect all or a substantial number of the class members.

687 So.2d at 359. Having established the appropriate standard, the court applied that standard to the claims before it. The court continued:

> The class members share a common interest in obtaining the relief

> sought. The common issues raised by the causes of action alleged include breach of implied warranty of fitness, violation of the Florida Food Act, negligence, and strict liability. All members of the class ate at the restaurant within the same period and each became ill. The allegations also indicate that the defendant acted towards each of them in a similar manner by serving food adulterated by using unsanitary and unhealthy food handling practices.

*Id.* Very simply, a common course of conduct generally yields common questions sufficient to meet the requirements of Rule 1.220(a)(2). *See generally Muth v. Dechert, Price & Rhoads*, 70 F.R.D. 602, 607 (E.D. Pa. 1976).

Here, the commonality threshold is clearly met. The Defendants' reprehensible conduct in supplying defective drywall as a fungible item to homeowners and Association is the common focus in the case. The class members share a common interest in obtaining the relief sought by the complaint. Factually, the claims are based on the same practice or course of conduct by Defendants. As a result, Plaintiffs' complaint raises issues common to all members of the class. These include:

1.  Whether the drywall was defective;

2.  Whether the defective drywall was supplied by BANNER;

3.  Whether the defective drywall was negligently supplied by BANNER;

4.  Whether the defective drywall was installed in homes of Plaintiffs and members of the putative class;

5.  Whether BANNER breached its duties of care to Plaintiffs and members of the class by supplying defective drywall that was in violation of applicable laws, codes, regulations and standards applicable to its industry and intended to protect Plaintiffs and members of the putative class;

8

6.      Whether defendant failed to disclose that the drywall was defective; and

7.      Whether the defective drywall caused damages to the homes, fixtures attached thereto, and personal property contained therein belonging to Plaintiffs and members of the Class.

The resolution of these common issues affect all of the class members.  Because Plaintiffs claims involve a latent defect common to all of the homes and buildings, the manner in which it was installed is irrelevant.   Questions of maintenance and post-installation care is also irrelevant. *Id.; Thomas v. Louisiana-Pacific Corp.,* 246 F.R.D. 505, 516 (D.S.C. 2007) (rejecting defendants' argument that maintenance and installation issues would create individualized questions because Plaintiffs' theory was that the wood exterior trim at issue was "completely unsuitable" for use on a home from the outset); *cf. Engle v. Liggett Group, Inc., 945 So.* 2d 1246, 1268 (Fla. 2006) (affirming rule 1.220(b)(3) plaintiffs' class treatment of general causation, product defect, strict liability, negligence and breach of implied warranty claims in case involving defective cigarettes used in different amounts and capacities by the various class members).

As a result, the commonality requirement is met.

### C.      Typicality.

The third prerequisite is that "the claim or defense of the representative party is typical of the claim or defense of each member of the class."  Fla.R.Civ.P. 1.220(a)(3).   Commonality and typicality "tend to be similar, focusing on the common interests of the class and the similarity of the named plaintiffs' interests with those of the proposed class members." *Kromnick,* 112 F.R.D. at 127. Although the two overlap, typicality focuses on whether there is sufficient similarity between the

9

claims brought by the named plaintiffs and those of the class members, as opposed to commonality's focus on the nature of the proposed class. *Bunnion v. Consolidated Rail Corp.*, 1998 WL 372644, at *4 (E.D. Pa. May 14, 1998).

In other words, typicality "addresses the relationship of the class representatives' claim to the claims of the class members." *Broin*, 641 So.2d at 892; *W.S. Badcock Corp. v. Myers*, 696 So.2d 776 (Fla. 1st DCA 1996). It prevents situations in which the named plaintiffs have interests or legal theories which are antagonistic to or markedly different from those of the other class members. *See Bunnion*, 1998 WL 372644, at *4. Where the complaint relies on the same legal theories, seeks the same remedies, and is based on the same course of conduct by the defendant, typicality is satisfied. *Broin*, 641 So.2d at 892. *See W.S. Badcock Corp.*, 696 So.2d at 780; *McFadden*, 687 So.2d at 359.

That is the situation here. The legal theories asserted by Plaintiffs on their own behalf are the same as those they assert on behalf of the class members. The remedies sought by Plaintiffs are the same as those they seek for the class members. Defendant's alleged course of conduct is the same. Typicality is satisfied.

### D.  Adequate Representation.

The fourth prerequisite is that "the representative party can fairly and adequately protect and represent the interests of each member of the class." Fla.R.Civ.P. 1.220(a)(4). The scope of this requirement was addressed in *Arvida/JMB Partners*, 733 So.2d at 1030:

> The requirement of adequacy of representation is met where the named representatives have interests in common with the proposed class members and the representatives and their counsel will properly prosecute the class action.

Here, as explained above, the named representatives have interests in common with the proposed class members. All are affected by Defendants' conduct in supplying the defective drywall, all are affected by Defendants' conduct in failing to disclose the defective nature of the drywall, and all are affected by Defendants' conduct in failing to remediate these homes. All seek the same remedies and pursue the same legal theories based on this conduct.

The second element of this prerequisite is also met. The common interests shared by Plaintiffs with the class members assure that Plaintiffs will properly prosecute this action. As *Broin* explained when discussing this requirement:

> Defendants have not established that representatives will inadequately prosecute the class action, and because the representatives seek the same relief for themselves as they seek for all class members, *Pottinger,* 720 F.Supp. at 959; *Raymark Indus.*, 782 F.2d at 473, they are not likely to neglect their obligations to the class.

641 So.2d at 892.

As to the adequacy of counsel, it is unquestionable and unchallengeable that Plaintiffs' current counsel is qualified to handle such a class action.

In sum, the four prerequisites to class certification are met. The large number of class members establishes the numerosity requirement; the significant common issues of law and fact arising out of Defendants' improper practices establish commonality; typicality exists because the claims asserted by the named Plaintiffs are identical to the claims asserted on behalf of the class members; and finally, Plaintiffs and their counsel will properly prosecute the lawsuit. Rule 1.220(a) is satisfied.

### III.   PLAINTIFFS' CLASS COMPLAINT MEETS THE CERTIFICATION REQUIREMENTS OF RULE 1.220(b).

11

Rule 1.220(b) provides three standards for certifying a class. Class certification is appropriate where any of the three is met. However, a complaint may satisfy more than one.

> At the outset, there is an unavoidable overlap among the three categories of Rule 23(b). An action certifiable under (b)(1) and (b)(2) is considered to qualify for (b)(3) treatment as well, *Van Gemert v. Boeing Co.*, 259 F.Supp. 125, 130 (S.D.N.Y. 1966), although a (b)(3) action will not necessarily satisfy the requisites of the other two categories.

*Cullen v. New York State Civil Serv. Comn*, 435 F.Supp. 546, 561 (E.D.N.Y. 1977).

Although there is little case law discussing the contours of Rule 1.220(b)(1) versus (b)(2) versus (b)(3), federal courts have grappled with those difference under Fed.R.Civ.P. 23(b). Under federal precedents, (b)(1) applies where the complaint seeks declaratory, injunctive, or equitable relief; it focuses on the prejudice to the opposing party or the absent class members if class certification is not granted. Section (b)(2) also applies where the complaint seeks declaratory or injunctive remedies; it focuses on whether the defendant engaged in a common course of conduct towards all the class members. Finally, (b)(3) allows for class certification when neither (b)(1) nor (b)(2) apply but common issues predominate and class treatment would be superior to individual suits; this situation arises where substantial money damages are sought. *See Cullen*, 435 F.Supp. at 561; *Robertson v. National Basketball Ass'n*, 389 F.Supp. 867, 900-902 (S.D.N.Y. 1975), *aff'd*, 556 F.2d 682 (2d Cir. 1977). Of course, a class may be certified under more than one section. A court may certify injunctive claims under (b)(1) or (b)(2) and claims for money damages under (b)(3). *See Biechele v. Norfolk & Western Railway Co.*, 309 F.Supp. 354 (N.D. Ohio 1969). There is no practical difference between using (b)(1) or (b)(2) in certifying a class seeking injunctive relief

12

because neither contains an opt-out provision.

Here, Plaintiffs seek money damages and equitable relief. Plaintiffs' equitable claims are also entitled to class certification under both (b)(1) and (b)(2). Similarly, Plaintiffs' claims for money damages are entitled to class certification under (b)(3).

>   **A.     The class should be certified under Fla.R.Civ.P. 1.220(b)(1) to the extent it seeks equitable relief: Inconsistency, incompatible standards, and impairment of rights of class members.**

Rule 1.220(b)(1) provides that a class may be certified where

>   the prosecution of separate claims or defenses by or against individual members of the class would create a risk of either:
>
>   (A) inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
>
>   (B) adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the class not parties to the adjudications to protect their interests.

The purpose of Rule 1.220(b)(1) is to prevent the prejudice to parties which might arise if there are multiple suits involving the same subject matter. As the court explained in *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 396 (E.D. Pa. 2001), when discussing the comparable federal rule:

>   Rule 23(b)(1) defines two related types of class actions, both designed to prevent prejudice to the parties arising from multiple potential suits involving the same subject matter. Rule 23(b)(1)(A) is designed to prevent prejudice to the party opposing the class, and Rule 23(b)(1)(B) is designed to prevent prejudice to potential members of the class.

13

Rule 1.220(b)(1)(A) addresses the effect on the defendant. Certification under (b)(1)(A) is appropriate where the plaintiffs seek to regulate the defendant's conduct. *See Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 600 n.5 (S.D.N.Y. 1982).

On the other hand, (b)(1)(B) addresses prejudice to the absent class members. It covers situations where an injunction against the defendant will affect the absent class members. *Id.* As to this subsection, one court explained:

> Since the purpose of this provision is to protect the interests of all class members against any determination that would have an adverse effect on them, *if only one action (the one instituted by the representatives) could impair the rights of other members of the potential class, then an action under Rule 23(b)(1)(B) would be appropriate.*

7A C. Wright, A. Miller, & M. Kane, *Federal Practice & Procedure: Civil* Section 1774 at 437 (2d ed. 1986).

In *Robertson*, 389 F.Supp. 867, the plaintiffs moved to certify a class consisting of professional basketball players. The complaint alleged that the NBA conspired to restrain competition through devices such as the college draft, certain clauses in the Uniform Player Contract, and various boycott and blacklisting techniques. The court discussed the possibility of incompatible rulings if the class was not certified.

> That separate actions could establish incompatible standards of conduct for the NBA is well within the realm of possibility. For example, if this action were allowed to continue only for the benefit of the named plaintiffs, it is conceivable that other members of the proposed class would file similar complaints in other courts. The court might grant injunctive relief, another court might refuse, and a third may give relief which differs in material respects from the first. Differing results in the individual actions would impair the NBA's

14

> ability to "pursue a uniform continuing course of conduct" where pragmatic considerations require that the defendants act in the same manner to all members of the class.

389 F.Supp. at 900-01 (footnote omitted).  As a result, the court found that certification under (b)(1) was proper.

Similarly, in *Thomas*, 201 F.R.D. 386, the court was asked to certify a class of employees who claimed that the defendants had violated ERISA.

> "Certifications under both [Rule 23(b)(1)(A) and 23(b)(1)(B)] are common in labor relations cases because defendants often provide unitary treatment to all members of a putative class in this area and thus the rights of absent 'class members are often implicated by litigation brought by other class members.'" *Feret*, 1998 WL 512933, at *13 (quoting James Wm. Moore, 5 Moore's Federal Practice Section 23.41[4], 23.42[3][c] (3d ed. 1998)).

201 F.R.D. at 396-97 (internal brackets and ellipses omitted).  The court then found that certification was proper under both (b)(1)(A) and (b)(1)(B).  It wrote:

> The court concludes that plaintiffs' claims are appropriate for certification under Rule 23(b)(1)(A).  As noted above, plaintiffs seek broad declaratory and injunctive relief related to defendants' conduct and the terms of the plan.  If this relief were granted in some actions but denied in others, the conflicting declaratory and injunctive relief could make compliance impossible for defendants.  *Cf. In re Ikon*, 191 F.R.D. at 466; *Bunnion*, 1998 WL 372644, at *13.  Therefore I will certify the class pursuant to Rule 23(b)(1)(A).
>
> \*   \*   \*
>
> The court concludes that plaintiffs claims are appropriate for certification under Rule 23(b)(1)(B).  As noted above, the plaintiffs claim that the defendants have breached their fiduciary duties under ERISA.  Any decision regarding whether the defendants breached their fiduciary duties would necessarily affect the interests of other participants.  Therefore I will certify the class pursuant to Rule 23(b)(1)(B).

201 F.R.D. at 97.

In *Cullen*, 435 F.Supp. 546, the plaintiffs brought a civil rights action against public officials in government units in Nassau County.  The crux of their claim was that persons seeking an appointment or promotion in county government were required to contribute at least 1% of their salary to the Nassau County Republican Party.  The court held that the class could be certified under (b)(1).

> There is a substantial risk that if the question of what is permissible political activity in Nassau County is litigated in several forums, inconsistent adjudications would result.  One court might find a violation of the civil rights statutes while another might not.  Two courts might find that the civil rights of the plaintiffs had been violated, but differ on whether injunctive relief was appropriate. *See Robertson v. National Basketball Ass'n*, 389 F.Supp. 867, 901 (S.D.N.Y. 1975), *aff'd*, 556 F.2d 682 (2d Cir. 1977).

435 F.Supp. at 561.  The court concluded that (b)(1) provided a basis for class certification:[1]

> In this case, the plaintiffs do not seek merely a declaration of liability for past acts.  Rather, they seek to alter, by injunctive and monetary compensation, an alleged on-going course of conduct.  The alleged conduct is either legal, or it is illegal, as to all members of the class, and the defendants must act or be allowed to act in the same way as to all members of the class. *See Zachary v. Chase Manhattan Bank*, 52 F.R.D. 532 (S.D.N.Y. 1971).  Viewed in this light, multiple litigation creates a very real risk that the defendants will be held to incompatible standards of conduct, and therefore this action is entitled to class certification under 23(b)(1)(A).

435 F.Supp. at 562.

Here, the risks addressed by (b)(1) clearly exist.  The claims of the class members are overlapping.  Multiple individual suits create a substantial risk of inconsistencies in rulings which would create incompatible standards of conduct vis-a-vis the defendant.  For instance, two courts

16

might differ on whether the rights of the Plaintiffs have been violated.  Two courts might find that the rights of the plaintiffs had been violated, but differ on whether injunctive relief was appropriate.  Or, two courts might differ on the extent or nature of the injunctive relief, making compliance by the Defendants with multiple injunctions impossible.  That is just the situation that (b)(1)(A) was intended to address.

It is impossible to determine the rights of one class member without impacting or impairing the rights and remedies of other class members.  That is just the situation that (b)(1)(B) was intended to address.  *See* 7A C. Wright, A. Miller, & M. Kane, *Federal Practice & Procedure: Civil* 1774 at 437 (2d ed. 1986).

As a result, this Court should certify the requested class under Rule 1.220(b)(1).  All the prerequisites of (a)(1) through (a)(4) are met.  In addition, the standard required in (b)(1)(A) and (b)(1)(B) are satisfied.  Either provides the necessary foundation for class certification under (b)(1) to address Plaintiffs' equitable and legal claims and remedies.

> **B.    The class should be certified under Fla.R.Civ.P. 1.220(b)(2) to the extent it seeks equitable relief: Conduct by the defendant which is generally applicable to all members of the class.**

The second alternative is set out in Rule 1.220(b)(2).  It permits class treatment if

> the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate.

Thus, actions which seek declaratory, injunctive, or other equitable relief are appropriate under (b)(2) when the defendant has acted in a consistent manner towards all class members.  In other words,

17

(b)(2) certification of class claims for equitable or injunctive relief is proper when a defendant has adopted a consistent practice or pattern of behavior which the plaintiffs seek to alter. As the court wrote in *Ellis v. O'Hara*, 105 F.R.D. 556 (E.D. Mo. 1985):

> Courts have held that the (b)(2) requirement is met when the party opposing the class has acted in a consistent manner towards members of the class so the actions may be viewed as part of a pattern of activity. 7 C. Wright & A. Miller *Federal Practice and Procedure: Civil*, ¶ 1775 at 19 (1972). In *Jones v. Blinziner*, 536 F.Supp. 1181, 1190 (N.D.Ind. 1982), the court held that the requirements of Rule 23(b)(2) were met when plaintiffs alleged the adoption of general policies by governmental defendants were applied to the plaintiffs in general. This Court deems plaintiffs' challenge to the Missouri statutes, coupled with the alleged pattern of harassment and bad faith enforcement of said statutes to meet the (b)(2) requirements.

105 F.R.D. at 563.

This standard applies to Plaintiffs' class claims for injunctive and equitable relief here. Plaintiffs' allegations, as well as the evidence which Plaintiffs will introduce if an evidentiary hearing is necessary, demonstrate that Defendants had engaged in a course of conduct which is generally applicable to all members of the class. Defendants adopted a pattern of activity in which it has consistently supplied defective drywall for final installation in the putative class' buildings. Defendants' own documents establish and confirm that all drywall was treated as a fungible item amongst the various buildings and Defendants treated all defective drywall similarly.

In sum, Defendants' actions have created substantial uncertainty as to the location of particular defective drywall; this uncertainty applies equally to all class members. Their request for class treatment of their claims for declaratory, injunctive, and equitable relief is cognizable and appropriate under Rule 1.220(b)(2).

C.   **The class should be certified under Fla.R.Civ.P. 1.220(b)(3) to the extent it seeks money damages: Predominance of common issues and superiority of class treatment.**

Rule 1.220(b)(3) is a catch-all provision under which claims for money damages are allowed. *See Hessen v. Metropolitan Dade County*, 513 So.2d 1330 (Fla. 3d DCA 1987). This provision allows class treatment when certification under (b)(1) or (b)(2) is inappropriate. Thus, Rule 1.220(b)(3) approves class treatment if

> the claim or defense is not maintainable under either subdivision (b)(1) or (b)(2), but the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any questions of law or fact affecting only individual members of the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy. The conclusions may be derived from consideration of all relevant facts and circumstances, including (A) the respective interests of each member of the class in individually controlling the prosecution of separate claims or defenses, (B) the nature and extent of any pending litigation to which any member of the class is a party and in which any question of law or fact controverted in the subject action is to be adjudicated, (C) the desirability or undesirability of concentrating the litigation in the forum where the subject action is instituted, and (D) the difficulties likely to be encountered in the management of the claim or defense on behalf of a class.

This provision establishes two criteria: (1) the predominance of common issues; and (2) superiority of class treatment. Subsections (A) through (D) are simply factors to consider in determining whether these two criteria have been established. One commentator explained:

> Rule 23(b)(3) authorizes a class action when the justification for doing so is the presence of common questions of law or fact and a determination that the class action is superior to other available methods for resolving the dispute fairly and efficiently. In general, therefore, a Rule 23(b)(3) action is appropriate whenever the actual

interests of the parties can be served best by settling their differences in a single action. As was stated by one court: "The fundamental question to decide is whether the group aspiring to class status is seeking to remedy a common legal grievance." Indeed, that usually is the only bond among the members of a Rule 23(b)(3) class.

7A C. Wright, A. Miller, & M. Kane, *Federal Practice & Procedure: Civil* Section 1777 at 516-17 (2d ed. 1986)(footnotes omitted). Here, that fundamental bond is present: the group aspiring to class status is seeking to remedy a common legal grievance.

There is no question but that common issues predominate over individual issues in this case. As discussed previously, common issues include:

1. Whether the drywall was defective;

2. Whether the defective drywall was supplied by BANNER;

3. Whether the defective drywall was negligently supplied by BANNER;

4. Whether the defective drywall was installed in homes of Plaintiffs and members of the putative class;

5. Whether BANNER breached its duties of care to Plaintiffs and members of the class by supplying defective drywall that was in violation of applicable laws, codes, regulations and standards applicable to its industry and intended to protect Plaintiffs and members of the putative class;

6. Whether defendant failed to disclose that the drywall was defective; and

7. Whether the defective drywall caused damages to the homes, fixtures attached thereto, and personal property contained therein belonging to Plaintiffs and members of the Class.

20

EXHIBIT "B" Part 2

These issues affect all of the class members. Indeed, they may be dispositive of Defendants' liability. These issues predominate over individual issues. The fact that each class member's individual damages may vary does not change that result. The focus at the certification stage is on liability, not the damages sustained by individual class members. As the Second District noted:

> Kaplan also expressed his opinion that certain End Users, ISOs, and Brokers did not suffer any actual injury based on their individual circumstances. Based on this testimony, the Defendants assert that the trial court erred in certifying the class. This assertion is incorrect . . . [T]he primary focus of the trial court's inquiry at the class certification stage is liability, not damages. *See In re Carbon Dioxide*, 149 F.R.D. at 234. The issue of individual damages will not defeat an otherwise valid class certification.

*Oce Printing Systems*, 760 So.2d at 1043.

The Fourth District made the same point in *McFadden*, 687 So.2d 357. There, it rejected the argument that the existence of individual issues concerning the amount of damages defeated class certification. It held that certification was proper because "[t]he court found that the issue of liability would be the same for all class members. The court also found that the issue of damages was the same, notwithstanding that the extent of individual damages may differ." 687 So.2d at 359. *See also W.S. Badcock*, 696 So.2d at 780 ("Entitlement to different amounts of damages, or the possibility of different defenses as to individual members of a class, is not fatal to a class action.").

Moreover, class certification is superior to individual lawsuits. Rule 1.220(b)(3) suggests that the court consider the respective interests of each member of the class in individually controlling the prosecution of the claims, and the nature and extent of any pending litigation to which any member of the class is a party, in determining whether class certification should be granted. Here,

21

those factors counsel in favor of a class action. The claims in the class action are the same for all class members. Thus, the named plaintiffs have the same interest in pursuing the issues and claims as would the individual class members.

Similarly, Rule 1.220(b)(3) suggests that the court consider the desirability or undesirability of concentrating the litigation in the forum where the subject action is instituted, and the difficulties likely to be encountered in the management of the claim on behalf of the class. Here, the sheer number of prospective plaintiffs would clog the court system if individual lawsuits were initiated. Thus, the alternative to class certification is hundreds of individual lawsuits in which the same issues will be litigated and relitigated. Moreover, the overlapping rights of each of the potential plaintiffs would make any remedy in an individual case problematic. Nor is a different forum for resolution of these cases more desirable. Litigation in this Court is appropriate because of the large number of affected plaintiffs within close geographic proximity to this Court.

Significantly, claims similar to those raised by Plaintiffs here have been found suitable for class treatment by Florida courts under Rule 1.220(b)(3). *See, e.g., Lanca Homeowners, Inc. v. Lantana Cascade of Palm Beach, Ltd.*, 541 So.2d 1121 (Fla. 1988)(unconscionable rent increases and statutory violations); *Frankel v. City of Miami Beach*, 340 So.2d 463 (Fla. 1976); *Autonation USA Corp. v. Miranda*, 789 So.2d 1188 (Fla. 4th DCA 2001)(improprieties by used car dealer in sales to consumers; violations of consumer statutes); *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699 (Fla. 3d DCA 2000)(violations of Florida Deceptive and Unfair Trade Practices Act). What was true in those cases is equally true here.

It is well settled that common construction-related product defects creating generalized

proof issues across a housing development are appropriate for class treatment. *See, e.g., Southwin, Inc, v. Verde, 709 So.* 2d 578 (Fla. 3d DCA 1998) (affirming order certifying class of sixty-seven homeowners); *Auto Owners Ins. Co. v. Trippe Constr., Inc., 737 So.* 2d 600, 601 (Fla. 3d DCA 1999)(declaratory judgment action arising out of class action by homeowners involving defective construction of roofs); *Marcuse v. Del Webb Communities, Inc.,* 163 P.3d 462, 464 (Nev. 2007) (latent defect copper plumbing lines); *Payne v. Goodyear Tire &Rubber Co.,* 216 F.R.D. 21(D.Mass. 2003) (defective radiant heating systems); *Blumenthal v. Medina Supply Co.,* 743 N.E ; 2d 923 (Ohio Ct. App. 2000) (concrete used to build residential driveways).

The uniform nature of the defect in the drywall Banner entities supplied and the fact that Plaintiffs seek to certify a class *only* against Banner entities distinguishes the instant case from other product-defect cases in which individual issues were held to predominate. In the case at bar, the defect alleged concerns the physical characteristics and composition of a *static product,* something that is unaffected by outside variables like the way the product is used. *McFadden v. Staley, 687 So.* 2d *357,* 359 (Fla. 4ta DCA 1997) (certifying class of restaurant patrons alleging injury from food poisoning under negligence, strict liability and breach of implied warranty claims).

Defendants opposing class certification often argue that the element of causation in the plaintiffs' causes of action will involve individualized determinations. Should Defendants make that argument here, we note in advance that this case does not involve the kinds of causation issues that have given courts pause concerning predominance. It will be a matter of common scientific proof in this case that the drywall installed in Plaintiffs' homes is defective, with its particular physical composition, emits gasses that corrode metals found in standard household fixtures, such as copper

piping, copper electrical wiring and the coils in air conditioners and refrigerators. Thus, the proximate causation equation contains two constants that are present in all of the class members' houses: the same source of the sulfur-containing gasses (the drywall), a common method of causation (the emission of sulfur-based gases), and the same receptors which manifest the damage (copper wiring, silver surfaces, air conditioner coils, etc.).

This case is, therefore, very different from cases in which class certification might be denied because of highly individualized variables dominating the causation inquiry. *Compare Kia Motors,* 985 So. 2d at 114-41 (causation element in proposed class action, alleging defective design of brake system which causes premature wear, implicated considerations of individual class members' "driving habits," "environmental factors, such as weather or road conditions" and the presence of foreign objects in the braking system); *Wyeth, 930 So.* 2d at 640 (causation element in proposed class action alleging negligent manufacture and sale of drug involved "a highly individualistic determination that depends on the individual characteristics of a putative class member, the duration of the [drug] ingestion, and whether that member was taking other medication"); *Volkswagen of Am., Inc. v. Sugarman,* 909 So. 2d 923, 924 (Fla. 3d DCA 2005) (causation element in proposed class of car owners for defective design of low front bumper which causes it to snag on parking-space curbs would require, "[a]s to each parking accident," considerations of individualized detail such as "tire pressure, cargo and passenger load of the vehicle, and the condition, location and height of the wheel stop or curb").

None of these kinds of "individual use issues," *Kia Motors,* 985 So. 2d at 1142, or "human factor" variables come into play in the claims in the instant case, which involves ***property damage***

*claims only,* resulting from the off-gassing of chemicals from *a common product passively located inside the class members' homes.*

Finally, with respect to damages, while there will naturally be differences in the value of the property losses suffered by class members, "[e]ntitlement to different amounts of damages is not fatal to a class action." *Broin,* 641 So. 2d at 891; *Engle,* 945 So. 2d at 1268. Numerous courts "have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Freedom Life Ins. Co. of Am. v. Wallant,* 891 So. 2d 1109, 1119 (Fla. 4th DCA 2004) *(quoting Allapattah Se's., Inc. v. Exxon Corp.,* 333 F.3d 1248, 1261(11th Cir. 2003)).

In *Broin,* the court reversed a trial court order which denied class certification. It explained the policy reasons guiding its ruling:

> "The very purpose of a class suit is to save a multiplicity of suits, to reduce the expense of litigation, to make legal processes more effective and expeditious, and to make available a remedy that would not otherwise exist." *Tenney v. City of Miami Beach,* 11 So.2d 188, 189 (Fla. 1942). Here, as in *Tenney,* if we were to construe the rule to require each person to file a separate lawsuit, the result would be overwhelming and financially prohibitive. Although defendants would not lack the financial resources to defend each separate lawsuit, the vast majority of class members, in less advantageous financial positions, would be deprived of a remedy. We decline to promote such a result.

*Broin,* 641 So.2d at 891-92.

For all of these reasons, the proposed class satisfies the predominance requirement of rule

1.220(b)(3). This Court should reach the same conclusion.[3] The class at issue here is entitled to certification under Rule 1.220(b)(3).

### IV.   CONCLUSION

In sum, Plaintiffs have satisfied all the prerequisites for class certification under Rule 1.220(a). They are within the parameters set out in the alternative standards of Rule 1.220(b). Plaintiffs are entitled to have their equitable claims certified under either Rule 1.220(b)(1) or (b)(2) and to have their claims for money damages certified under Rule 1.220(b)(3).

WHEREFORE Plaintiffs request this Court to grant their motion for class certification. Plaintiffs further request that the Court appoint Michael J. Ryan and Ervin A. Gonzalez and their respective law firms as co-lead counsel for the class; that it appoint Plaintiffs DARIO ORLANDO; STEPHEN SINES; DAVID AND JOAN GLICKMAN; THOMAS WOJCIECHOWSKI; OCEANPARK ESTATES ASSOCIATION, INC.; and DOCKSIDE LOFTS CONDOMINIUM

---

[3] To the extent Defendants employed materially different contracts in different developments, any distinctions between sub-groups of the class could be managed by division of the class into subclasses, as necessary. *See Broin,* 641 So. 2d at 891 ("Should it become appropriate, the court may divide the class into subclasses . . ."); *Lanca Homeowners, Inc. v. Lantana Cascade of Palm Beach, Ltd.,* 541 So. 2d 1121, 1124 n." (Fla. 1998) (a court is "always at liberty to designate subclasses"); *Imperial Towers Condo v. Brown,* 338 So. 2d 1081 (Fla. DCA 1976). Also, should it become necessary, differences in damage issues among class members can be dealt with at a later juncture, through the creation of "subclasses, or other innovative solutions." *Wallant,* 891 So. 2d at 1119. Moreover, the initial class certification order could take into consideration individual damage issues and, if necessary "certify class treatment for only limited liability issues." Engle v. Liggett Group, Inc. 945 So.2d 1246, 1268 (Fla 2006)("a trial court can properly separate liability and damage issues, certifying class treatment of liability while leaving damages to be determined on an individual basis").

*CASE NO. 10-28090 (12)*

ASSOCIATION, INC., as class representatives; that it require notice to all potential class members

of the pendency of this claim; and that it order Defendants to refrain from directly contacting any of

the class members about the matters related to this litigation.

Respectfully submitted,

MICHAEL J. RYAN, ESQ.
Florida Bar No. 975990
KRUPNICK, CAMPBELL, MALONE, BUSER, SLAMA
HANCOCK, LIBERMAN & McKEE, P.A.
Attorneys for Plaintiffs
12 Southeast 7 Street, Suite 801
Fort Lauderdale, FL 33301
Ph: 954-763-8181
Fax: 954-763-8292

ERVIN GONZALEZ, ESQ.
Florida Bar No.: 500720
PATRICK MONTOYA, ESQ.
Florida Bar No.: 52441
COLSON HICKS EIDSON
Attorneys for Plaintiffs
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Ph: 305-476-7400
Fax: 305-476-7444

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the date set forth below, the foregoing Plaintiffs' Motion for Class Certification has been electronically uploaded and successfully transmitted the foregoing document to LexisNexis file & Serve, which will generate and transmit Notices of Electronic Filing for service on all parties in the manner authorized for each registered user in accordance with the Electronic Service Order entered in this action and that a copy of the foregoing document has been e-mailed to Defendant's Liaison Counsel, Matthew Kotzen (mkotzen@makslaw.com). I further certify that on the date set forth below, the original signed document was mailed to the Court this

_3_ day of November, 2010.

MICHAEL J. RYAN, ESQ.
Florida Bar No. 975990
KRUPNICK, CAMPBELL, MALONE,
BUSER, SLAMA, HANCOCK,
LIBERMAN & McKEE, P.A.
Attorneys for Plaintiffs
Suite 801 – Legacy Bank Building
12 Southeast Seventh Street
Fort Lauderdale, Florida 33301
Ph: 954-763-8181; Fax: 954-763-8292

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA
CASE NO.: 10-28090 (12)

IN RE: CHINESE DRYWALL LITIGATION

DARIO ORLANDO et al,

       *Plaintiffs,*

vs.

BANNER SUPPLY CO.,  et al,

       *Defendants.*

---

## PLAINTIFFS' SUPPLEMENTAL MOTION FOR CLASS CERTIFICATION

On November 3, 2010, the Plaintiffs DARIO ORLANDO; STEPHEN SINES; DAVID AND JOAN GLICKMAN; THOMAS WOJCIECHOWSKI; OCEANPARK ESTATES ASSOCIATION, INC.; and DOCKSIDE LOFTS CONDOMINIUM ASSOCIATION, INC., individually and as representatives of others similarly situated, by and through undersigned counsel, filed a Motion for Class Certification and Incorporated Memorandum of Law.  At that time, Defendants, Banner Supply Co. and Banner Supply Company Pompano LLC were included in the Motion for Class Certification.  Additional Banner Defendants were pending a responsive pleading to the First Amended Complaint.  Since then, Defendants Banner Supply Company Tampa LLC and Banner Supply Company Ft. Myers LLC have answered the First Amended Class Action Complaint.

Accordingly, Plaintiffs adopt the previously filed Motion for Class Certification and incorporate as if fully restated herein fully all arguments and legal grounds for class certification as it pertains to Defendants Banner Supply Company Tampa LLC and Banner Supply Company Ft. Myers LLC.

WHEREFORE Plaintiffs request this Court to grant their supplemental motion for class

certification.    Plaintiffs further request that the Court appoint Michael J. Ryan and Ervin A.

Gonzalez and their respective law firms as co-lead counsel for the class; that it appoint Plaintiffs

DARIO ORLANDO; STEPHEN SINES; DAVID AND JOAN GLICKMAN; THOMAS

WOJCIECHOWSKI; OCEANPARK ESTATES ASSOCIATION, INC.; and DOCKSIDE LOFTS

CONDOMINIUM ASSOCIATION, INC.,  as class representatives; that it require notice to all

potential class members of the pendency of this claim; and that it order Defendants to refrain from

directly contacting any of the class members about the matters related to this litigation.

Respectfully submitted,

/s Michael J. Ryan_____
MICHAEL J. RYAN, ESQ.
Florida Bar No. 975990
KRUPNICK CAMPBELL MALONE BUSER
SLAMA HANCOCK LIBERMAN & McKEE P.A.
Attorneys for Plaintiffs
12 Southeast 7 Street, Suite 801
Fort Lauderdale, FL 33301
Ph: 954-763-8181;  Fax: 954-763-8292

ERVIN GONZALEZ, ESQ.
Florida Bar No.:  500720
PATRICK MONTOYA, ESQ.
Florida Bar No.:  52441
COLSON HICKS EIDSON
Attorneys for Plaintiffs
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Ph:  305-476-7400;  Fax: 305-476-7444

2

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the date set forth below, the foregoing Plaintiffs'

Supplemental Motion for Class Certification has been electronically uploaded and successfully

transmitted the foregoing document to LexisNexis file & Serve, which will generate and transmit

Notices of Electronic Filing for service on all parties in the manner authorized for each registered

user in accordance with the Electronic Service Order entered in this action and that a copy of the

foregoing document has been   e-mailed to Defendant's Liaison Counsel, Matthew Kotzen

(mkotzen@makslaw.com).  I further certify that on the date set forth below, the original signed

document was mailed to the Court this   11   day of November, 2010.


　　　　　　　　　　　　　　/s Michael J. Ryan
　　　　　　　　　　　　　MICHAEL J. RYAN, ESQ.
　　　　　　　　　　　　　Florida Bar No. 975990
　　　　　　　　　　　　　KRUPNICK CAMPBELL MALONE
　　　　　　　　　　　　　BUSER SLAMA HANCOCK
　　　　　　　　　　　　　LIBERMAN & McKEE, P.A.
　　　　　　　　　　　　　Attorneys for Plaintiffs
　　　　　　　　　　　　　Suite 801 – Legacy Bank Building
　　　　　　　　　　　　　12 Southeast Seventh Street
　　　　　　　　　　　　　Fort Lauderdale, Florida  33301
　　　　　　　　　　　　　Ph: 954-763-8181;  Fax: 954-763-8292

3