**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED       MDL DOCKET: 2047
DRYWALL PRODUCTS LIABILITY         SECTION: L
LITIGATION

                                          JUDGE FALLON
THIS DOCUMENT RELATES TO        MAG. JUDGE WILKINSON
ALL CASES
_____/

## CERTAIN BANNER ENTITIES' AMENDED MEMORANDUM OF LAW IN SUPPORT OF ITS EMERGENCY MOTION TO ENJOIN CONFLICTING STATE PROCEEDINGS

Defendants Banner Supply Company, Banner Supply Company Fort Myers, LLC, Banner Supply Company Pompano, LLC, Banner Supply Company Port St. Lucie, and Banner Supply Company Tampa, LLC, (collectively "Banner"), file this Amended Memorandum of Law in Support of their Emergency Motion to Enjoin Conflicting State-Court Proceedings pursuant to 28 U.S.C. § 1651(a) in accordance with Local Rule 7.4.

I.      **Summary of the Argument**

Banner brings this motion to stop a state court from proceeding with a class certification hearing on January 18, 2011. The class overlaps with the putative class in this Multi District

Litigation (MDL) and imperils this Court's ability to administer the resolution of these serious class issues.

This complex MDL arose when numerous federal cases involving claims for property impacted by defective drywall manufactured in China were consolidated into one action to coordinate discovery efforts and consolidate all pretrial proceedings.  *See In re Chinese-Manufactured Drywall Products Liability Litigation*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009). While the MDL proceeds in federal court, however, there are several ongoing individual state court actions, many of which involve the same plaintiffs as those involved in the MDL.  At last count, there were roughly 304 individuals with claims against Banner entities, of which approximately 122 claims are duplicates.

Of particular importance to this motion is a recently-filed case styled *In re: Chinese Drywall Litigation Dario Orlando, et al. v. Banner Supply Co., et al.*, case number 10-28090(12), currently pending in Broward County, Florida, Circuit Court (the "State Action" or "Broward Action").

The Broward Action was filed little more than five months ago (on July 9, 2010), yet the plaintiffs in that case have already filed a motion for certification of a class composed of all purchasers of homes in Florida since 2004 whose homes contain defective drywall supplied by Banner.[1]  The proposed class in the Broward Action is substantially similar to the proposed class sought by the PSC in this case.  And, surprisingly, the Broward Court has scheduled a certification hearing on January 18, 2011.  If the Broward Court certifies the proposed class, it will not only completely divest this Court of all homeowners' claims against Banner — which the PSC has previously moved to certify as a class — but it will also jeopardize the ongoing pilot project, which is an attempt to resolve all or substantially all of the Chinese-drywall cases.

---

[1] A copy of the Broward Action motion is attached as Exhibit A.

Because of the grave risk the Broward Action poses to the effectiveness of this MDL proceeding, the overlapping requests for certification, and the possibility that it could destroy the effectiveness of the pilot project, Banner moved to stay the Broward Action pending resolution of this case.  And despite a wealth of contrary authority, the court in the Broward Action denied the motion on January 4, 2011.  The PSC, during the December 21, 2010 status conference, represented to this Court and Banner that the MDL court was the proper forum for the class certification issues; however, the PSC now has not responded to Banner's inquiries asking for help in stopping the conflicting state court case and, one of its members has taken the position that he has no control over the state action, in spite of being counsel of record for all the state court Plaintiffs.  Accordingly, Banner is left with not choice but to move this Court to enjoin the Broward Action from proceeding with class certification until such time as the pilot project is concluded, and this Court has an opportunity to resolve the PSC's pending motion for certification.

## II.   Factual Background

The PSC filed a similar Motion to Enjoin Conflicting State Court Proceedings in this Court (Doc. 5011-1) regarding a class action in Georgia, and the following history is taken verbatim from that motion:

> In the aftermath of Hurricanes Katrina and Rita in 2005, this country faced a critical shortage of drywall for the reconstruction of homes and other structures. As a result, drywall manufactured in China ("CDW" or "Chinese Drywall") was imported to the United States. "Sometime after installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses and the corrosion of appliances and certain other components of their homes.  Some homeowners also began to complain of headaches, nosebleeds, difficulty breathing and other physical afflictions believed to be caused by the Chinese drywall.
>
> On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from defective Chinese Drywall to the United

States District Court for the Eastern District of Louisiana for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See In re Chinese-Manufactured Drywall Products Liability Litigation*, 626 F.Supp.2d 1346 (J.P.M.L. 2009) (Rec. Doc. No. 1). For more than a year, this MDL Court has worked tirelessly to manage this nationwide litigation and coordinate and oversee pretrial discovery for several class actions and thousands of individual cases. In addition, the Court, through the vehicle of "Omni" complaints, has assisted the parties in bringing all interested and affected entities into the MDL litigation in a consistent and fair manner. During this time, the Court has resolved ten bellwether cases in Virginia and Louisiana, which were intended to serve as a useful tool for all plaintiffs and defendants, as well as the Court.

To accomplish these achievements, the Court appointed a Plaintiffs' Liaison Counsel and a Plaintiffs' Steering Committee ("PSC") to prepare and respond to pleadings and motions, engage in discovery, pretrial preparation and settlement, manage the docket, establish and administer a document repository, communicate with individual plaintiffs and their counsel, liaison with defendants and attend court appearances. The Court also appointed a Defendants' Liaison Counsel and a Homebuilders and Installers Liaison Counsel to assist in these efforts. In November 2009, the Court appointed a Special Master "to explore opportunities for an ultimate resolution of the instant matter as to any and all interested parties," recognizing that "[i]t is apparent that some or all parties are interested in exploring a global resolution of the matter as it affects them at this stage of the proceeding." In March, 2010, the Court appointed State and Federal Coordination Committees "to assist the Court, litigants and judicial system to facilitate coordination between this MDL and the various state court cases." And, the Court appointed an Insurer Steering Committee as well as Co-Lead Counsel for the First-Party Insurer Subcommittee.

Since the inception of the MDL, the Court has held monthly status conferences, attended by hundreds of counsel, and it has entered 24 Pretrial Orders and scores of other orders and minute entries. To date there have been [more than 6,000] record entries in this matter.

(Doc. 5011-1, pp. 1-3) (internal citations omitted).

The plaintiffs in the *Vickers* (09-04117) matter filed a class-action complaint against Banner and others on June 22, 2009, and the plaintiffs in the *Payton* (09-07628) case filed a similar class complaint on December 9, 2009. (Doc. 5564-1, p.6). Banner distributed Chinese drywall that was used to construct homes in Florida for several years. Banner did not distribute

Chinese drywall in any other states, so all homeowner claims against Banner are brought by Florida homeowners located in multiple federal districts.

More than a year after the aforementioned MDL cases were filed, on July 9, 2010, five homeowners (and two other entities) filed the Broward Action against Banner claiming that Banner supplied them defective Knauf drywall. Ervin A. Gonzalez, Esq., a member of the PSC, filed the Broward Action Complaint, and four of the plaintiffs in the Broward Action are also plaintiffs in the *Payton* case.

On September 16, 2010, the PSC announced in open court its intention to file a motion for class certification against Banner. Four days later, on September 20, 2010, the PSC filed its Motion for Certification of a Florida Homeowner Class or Claims Against Banner Supply Co. in the *Payton* and *Vickers* actions. (Doc. 5564). In that motion, the PSC argued that "the MDL claimants will best be served by a class action proceeding on behalf of a Florida homeowner class against Banner seeking an award of class-wide property damage for all similarly-situated residents." (Doc. 5564-1, p.2). The PSC's proposed Florida class consists of:

> All owners of residential real properties in the State of Florida containing Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by Banner Supply Co. , from January 1, 2005 to December 31, 2008, who have not released or assigned their property damage claims to a third party.

(*Id.* at p. 2 n.1). The PSC argued that certification of the proposed classes "will efficiently advance the resolution of a large set of Florida claims" and could potentially resolve a large subset of claims in the MDL and establish a roadmap for the resolution of remaining claims." (*Id.* at pp. 2-3). This proposed class includes every homeowner that filed a claim against Banner related to Knauf drywall. Mr. Gonzalez is one of the attorneys that filed the Motion for Class Certification against Banner in the MDL. (Doc. 5564, p. 28).

In connection with the PSC's request for class certification, several of the defendants notified the Court of the extensive class discovery that was required. (Doc. 5650; 5747)  Banner and Knauf explained that proceeding with class certification discovery and hearing did not make sense in light of the parties' focus on a proposed pilot program.  *Id.*  This Court addressed the PSC's Motion for Class Certification against Banner at a hearing on October 14, 2010, immediately after the Court announced a major breakthrough in the form of an agreement on the pilot settlement program.  (October 14, 2010 Hearing Transcript, p. 3) ("And we've got the first step [as many as 300 homes repaired at no cost to homeowners] in that global resolution [that the parties are working toward] reporting today.").  The Court continued:

> I have in addition several motions before me, the motions to enjoin the state court in Georgia from proceeding further. *The case has taken a different turn now*. Under the law that's developed, until there is some . . . rees [sic] or program, settlement program, it's very difficult for federal courts to enjoin any state court from proceeding.  *The situation has changed now, I am involved in a rees [sic], it is a settlement program, a pilot program, but it is a settlement program*. And so I am very conscious of protecting that particular program. So I really do now have to take a look at whether or not it is appropriate for the federal court to act on that to protect its jurisdiction and protect its program.
>
> So I am going to set the motion within ten days to determine whether or not to enjoin the state court in Muskogee County. I'll take briefs on that particular. I'll check my calendar and set it sometime within the next ten days alerting all of the parties.
>
> *The other motions for class certification of the Florida homeowners class for claims against Banner and claims against other Florida homeowners against Knauf, it seems to me that both of those should be delayed. I am going to delay moving on those for at least 30 days and I will talk with you all about that at the next conference.*
>
> *I really want everybody to put their attention and all of their resources into making this pilot program work*. I think everybody is looking at this pilot program. If it works then this may be an avenue to resolve this whole matter globally, and it's going to take a lot of effort to get this matter off the ground and *I don't want to distract the parties with other matters.*

(*Id.* at pp. 24-25) (emphasis added).

This Court decided on October 14 that it would address the motion for class certification and any requisite class discovery in due course, but obviously not on an expedited schedule while the pilot program was progressing.

Taking this Court's suggestion that the parties focus their resources into making this pilot program work, Banner went to work. As the Court is already aware, additional homes have been added to the pilot program as part of the continued joint efforts by Banner, Knauf and certain Plaintiffs. Moreover, in December 2010, the Court implemented an expeditious class certification schedule, albeit not as fast as the PSC requested.

Apparently unsatisfied with this Court's schedule and instruction to "delay moving" on the class certification questions, and despite having filed the original MDL motion for certification against Banner, Mr. Gonzalez filed another motion for class certification in the Broward Action of a virtually-identical class (on November 3, 2010) described as:

> All natural persons and business entities residing in the State of Florida who purchased homes between January 2004 and the present and whose homes contain the defective drywall supplied by Banner Supply Co. or Banner-related companies.

(Ex. A, p.3). In response to the Broward plaintiffs' early November prayers for a different class schedule than the initial one this Court ordered in mid-October, the Florida state court set an extremely accelerated discovery schedule and has set a hearing on the motion for class certification on January 18, 2011 — less than three months (including the December holidays) after the filing of the state motion for class certification. Put bluntly, the state court's scheduling order circumvents this Court's scheduling and runs contrary to its instructions.

At this Court's recent scheduling conference, the Court explicitly noted its concern for competing federal and state actions:

> Right. We have competing class actions, both in state and federal. My thinking on is that the parties ought to get together and get to me the scope of all of the class actions and tell me which ones are competing state class actions. I'll then discuss it with the state judges, and hopefully we'll be able to try those class actions at the same time. That is to say, the state judge can either monitor or participate here with me on the bench, and we'll do it both state and federal at the same time. *There's no sense in doing it multiple times, so--if that can be avoided. And we'll try to do that.*

(December 2, 2010 Hearing Transcript, p. 8) (emphasis added).

The certification of the proposed class in the Broward Action threatens to derail the pilot project and this Court's efforts to reach a global resolution in this MDL. In addition, such a certification will effectively thwart this Court's jurisdiction over the class Florida homeowners proposed by the PSC. Recognizing the gravity of this issue, Banner filed a motion to stay the Broward Action pending resolution of the identical federal actions based on well-established Florida law. Despite this Court's admonition about competing federal and state cases, at the hearing on the motion to stay, Plaintiffs' counsel told the court that a stay was inappropriate because the MDL cases were not proceeding as quickly as he would like, and he felt that the state court would do a better job pushing the case. Apparently accepting that argument, the Broward Court denied the motion to stay on December 16, 2010.[2] On December 21, 2010, during a status conference with the Court, the PSC, including Mr. Gonzalez, expressly agreed that the MDL forum was the appropriate one on the certification issue. It is unclear whether this position has changed or whether the PSC will argue that it has no control over a case brought by one of its members and for which case the PSC seeks to extract a financial bounty. Nevertheless, and as argued below, the Court should enjoin the Broward Action from proceeding with a certification determination.

### III.     Argument and Citation of Authority

---

[2] A copy of Banner's motion in the Broward Action is attached as Exhibit B.

### A.   This Court has the authority to enjoin the Broward Action.

Under the All Writs Act, a district court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act must be construed in conjunction with the Federal Anti-Injunction Act, which provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except where authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "Together the All Writs Act and the Anti-Injunction Act govern whether a district court can properly enjoin state court litigation pending at the time injunctive relief is requested." *Newby v. Enron Corp.*, 338 F.3d 467, 474 (5th Cir. 2003).

The Supreme Court has explained that state courts may be enjoined under the "in aid of its jurisdiction" exception to the Anti-Injunction Act when "necessary to prevent a state court from so interfering with a federal court's consideration of disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic C.L.R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747 (1970). This includes the ability of an MDL court to enjoin state court actions that interfere with the administration of the MDL case. *Newby*, 338 F.3d at 474; *see also In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332 (5th Cir. 1981); *In re Baldwin-United Corp.*, 770 F.2d 328, 337-38 (2d Cir. 1985). As the Third Circuit Court of Appeals noted:

> We have recognized another category of federal cases for which state court actions present a special threat to the jurisdiction of the federal court. Under an appropriate set of facts, a federal court entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represent a consolidation of cases from multiple districts, may appropriately enjoin state court proceedings in order to protect its jurisdiction.

*In re Diet Drugs*, 282 F.3d 220, 234 (3d Cir. 2002); *see also Winkler v. Eli Lily & Co.*, 101 F.3d 1196, 1203 (7th Cir. 1996) ("we hold that the Anti-Injunction Act does not bar courts with jurisdiction over complex multidistrict litigation from issuing injunctions . . . to prevent specific abuses which threaten the court's ability to manage the litigation effectively and responsibly.").

This is precisely the situation facing this Court: a complex MDL case involving hundreds of parties, spread over multiple districts in Florida, thousands of docket entries, pending motions for class certification, and a pilot program designed to reach a global settlement.  And because the Broward Action threatens to derail the Court's efforts thus far by a rush to class certification, this Court not only has the authority to enjoin the Broward Action, but must do so to protect its ability to effectively manage and resolve the MDL claims.

**B.    The motion for certification of a Florida class of homeowners duplicates the PSC's motion previously filed in this Court and must be enjoined.**

The plaintiffs in the Broward Action filed a motion for certification of a class of Florida homeowners that would completely subsume the proposed class sought by the PSC in this case, and the duplicative motions create the risk of confusion or inconsistent rulings by this Court and the Florida court.  As such, an injunction is warranted.

A similar situation occurred in *In re Columbia/HCA Healthcare Corp.*, 93 F. Supp. 2d 876 (M.D. Tenn. 2000).  In that case, the district court was overseeing an MDL concerning illegal billing practices when a substantially-similar case was filed in Texas state court.  *Id.* at 877.  The state-court plaintiffs looked to the MDL plaintiffs for discovery based on the district court's order that the MDL plaintiffs were to coordinate discovery with the state plaintiffs.  *Id.* The plaintiffs in both cases eventually filed identical motions to compel certain documents from the defendant healthcare provider, and the defendant in the MDL court filed a motion for preliminary injunction enjoining the state court from ruling on the motion to compel because it

was the province of the MDL to handle discovery matters. *Id.* at 878. The district court granted the motion based on its determination that the state court "could frustrate this Court's case management order by granting the [state] plaintiffs' motion to compel. Accordingly, it is appropriate under the Anti-Injunction Act to enjoin the Texas state court from ruling on the plaintiff's motion to compel." *Id.* at 880.

In another MDL case, the Fifth Circuit Court of Appeals affirmed an injunction against plaintiffs who were pursuing the same claims in both federal and state court. *Newby, supra*. The district court in *Newby* was assigned a mulit-district litigation for all Enron-related cases. 338 F.3d at 469. While the MDL was progressing, thirteen individual plaintiffs filed a complaint in state court against many, but not all, of the MDL defendants. The state court allowed immediate discovery to commence; rejected a request by the defendants to coordinate discovery with the MDL case; and set a schedule that would have resulted in trial before the MDL case was tried. The state plaintiffs also requested a temporary injunction freezing the defendants' assets. In response, the defendants sought an injunction from the MDL court staying all discovery in the state case, ordering the state plaintiffs to withdraw their motion for temporary injunction and prohibiting any further attempts at obtaining a temporary injunction in state court. The district court granted the defendant's motion and entered the requested injunction, and the state plaintiffs appealed. *Id.* at 470.

On appeal, the Fifth Circuit affirmed the district court's injunction and held that it was necessary because: (1) the state court motion for temporary injunction against Arthur Anderson to prohibit the destruction of records sought relief that had previously been awarded by the MDL court; (2) the state motion for temporary injunction requesting an asset freeze against Arthur Anderson was virtually identical to the relief sought in one of the MDL cases; and (3) the state

motion for temporary injunction against various individual defendants requesting an asset freeze duplicated motions pending before the MDL court. *Id.* at 475. Consequently:

> This case fits within the exception for injunctions necessary in aid of the district court's jurisdiction as defined by the above decisions. This multi-district case centralizes in one district court fifty-four Enron-related federal civil cases. Forty or more cases have been designated as tag along cases also subject to conditional transfer orders. The district court amply demonstrated how the injunctions sought in state court threatened to interfere with the federal court's orderly handling of the massive federal litigation . . . .

*Id.* at 474; *see also In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332 (5th Cir. 1981) (affirming injunction against plaintiffs in an MDL class action that prevented them from pursuing similar state court actions); *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, 397 F. Supp. 2d 957 (N.D. Ill. 2005) (enjoining MDL counsel and clients from pursuing parallel state actions).

This Court, like the courts in *In re Columbia/HCA Healthcare Corp.* and *Newby*, is faced with substantially similar motions pending in the MDL court and the Broward Action. The motion for certification filed in the Broward Action is duplicative of the motion for certification filed by the PSC in the MDL. Significantly, the MDL certification motion was filed long before the motion in the Broward Action, and the Broward Plaintiffs' lawyer also represents clients in the MDL. This Court has set an expedited schedule for class certification and has taken into account in its deliberations the fact that the pilot program is of utmost importance. In addition, the state court's scheduling order directly contradicts this Court's class certification schedule. And based on the arguments made at the hearing in the Broward Action, it is now clear that the motion in the Broward Action is a direct attempt to obtain certification of a class before this Court has an opportunity to address the PSC's previously-filed motion. Moreover, if the Florida court certifies the proposed class against Banner, this Court will be divested of a substantial

number of cases pending in the MDL and all the homeowners' claims against Banner Supply. Finally, as another district court determined, allowing multiple class certifications against the same defendant would likely cause serious confusion and chaos.  *See In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 927 (8th Cir. 2005). Incredibly, plaintiffs' counsel in the Broward Action previously argued to this Court that:

> In order to bring all interested parties into this litigation in a fair and consistent manner, the PSC has undertaken an enormous burden and concomitant expense of preparing, filing, translating and serving the various Omni and related complaints in intervention to attract and aggregate thousands of plaintiffs and their associated defendants and insurers into this MDL. Absent the Omni complaint, few plaintiffs, if any, would have paid to perfect service of process on their foreign manufacturers under the Hague Convention.  These pleadings were intended to close the circle of liability by engaging the insurers and other financiers of the defendants directly in this litigation.  These efforts aggregated the "mass" in this mass tort which is contributing to resolve this litigation.

(Doc. 5011-1, p. 7).  Allowing the Broward Action certification to proceed jeopardizes all that this Court, the DSC, and PLC have worked for.  Accordingly, the Court should enjoin the Broward Action from hearing the plaintiffs' motion for certification to allow the settlement discussions on the pilot project to proceed and for this Court's orders regarding class discovery to remain unimpeded.

### C.      Certification in the Broward Action would undermine the pilot project.

Many of the cases in which a federal court has enjoined a state-court action involved a situation where the state court's action threatened potential MDL settlements.  *See In re Diet Drugs*, 282 F.3d at 236 (and cases cited therein).   For example, in *In re Baldwin-United Corp.*, the Second Circuit Court of Appeals affirmed an injunction issued by an MDL court that prohibited the commencement of any action against any MDL defendant that could "in any way" affect the rights of any MDL plaintiffs.  770 F.2d at 333-34.  The court reasoned that the injunction was necessary to allow the district court to resolve the MDL class actions through

various settlements — a number of which had already been provisionally approved by the court when the injunction was issued. *Id.* at 336. As the court explained, "[i]f states or others could derivatively assert the same claims on behalf of the same class or members of it, there could be no certainty about the finality of any federal settlement," which could "destroy the utility of the multidistrict forum otherwise ideally suited to resolving such broad claims." *Id.* at 337; *see also Carlough v. Anchem Products, Inc.*, 10 F.3d 189 (3d Cir. 1993) (affirming injunction against state actions where the prospect of settlement was "imminent," and the plaintiffs in state cases were challenging propriety of settlement).

Here, a number of the key parties to the MDL have established a pilot project under which as many as 300 homes will be repaired at no cost to the homeowners. As the Court is aware, the pilot project is an attempt to establish a program that could eventually resolve all of the pending claims in the MDL. If the Florida court certifies a class in the Broward Action, however, it will jeopardize the effectiveness of the pilot project since a large damage award in that case would deplete funds that could otherwise be used for the pilot project or, eventually, a similar project on a larger scale. Accordingly, this Court should enjoin the Florida court from certifying the proposed class in the Broward Action to prevent interference with this Court's oversight of the pilot project and avoid undermining the potential success of that project.

## IV. <u>Conclusion</u>

This Court should enjoin the Broward Action from proceeding with a class certification determination because a duplicate motion is currently pending in this court (and was filed before the motion in the Broward Action) and the potential certification of a class in the Broward Action would jeopardize the pilot project and this Court's ability to effectively and efficiently manage this MDL. The PSC previously filed a motion to enjoin a more limited Georgia class

action on the basis that the Georgia State Court action trampled on this Court's jurisdiction. Banner invites the PSC to join it in this Motion based on the PSC's prior representations to this Court.

WHEREFORE, Banner respectfully requests that this Court grant this motion, enjoin the Broward Action from proceeding with a determination of the motion for class certification, and award such other relief as this Court deems appropriate.

Respectfully submitted, this 6th day of January, 2011.

**WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC**

*/s/ Nicholas P. Panayotopoulos*
**NICHOLAS P. PANAYOTOPOULOS, ESQUIRE**
Georgia Bar Number: 560679
3344 Peachtree Road, Suite 2400
Atlanta, GA  30326
Telephone (404)876-2700
npanayo@wwhgd.com
*Counsel for Banner Supply Company, Banner Supply Company Fort Myers, LLC, Banner Supply Company Pompano, LLC, and Banner Supply Company Tampa, LLC*

PETERSON & ESPINO, PA

*/s/ Michael P. Peterson*
**MICHAEL P. PETERSON, ESQUIRE**
Florida Bar Number 982040
10631 Southwest 88th Street, Suite 220
Miami, Florida 33176
Telephone: (305) 270-3773
Facsimile:  (305) 275-7410
*Counsel For Defendant Banner Supply Company Port St. Lucie, LLC*

## CERTIFICATE OF SERVICE

     I hereby certify that the above and foregoing Certain Banner Entities' Amended Memorandum of Law in Support of its Motion to Enjoin Conflicting State-Court Proceedings has been served on Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was previously electronically filed with the Clerk of Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF System, in accordance with the procedures established in MDL 2047, on this 6th day of January, 2011.

     WEINBERG, WHEELER, HUDGINS,
     GUNN & DIAL, LLC

     /s/ Nicholas P. Panayotopoulos
     **NICHOLAS P. PANAYOTOPOULOS, ESQUIRE**

993531