IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA
CASE NO. 10 28090 (12)
**CLASS REPRESENTATION**
**JURY TRIAL DEMANDED**

CHINESE DRYWALL LITIGATION

DARIO ORLANDO; STEPHEN SINES;
DAVID AND JOAN GLICKMAN;
THOMAS WOJCIECHOWSKI;
OCEANPARK ESTATES ASSOCIATION,
INC.; and DOCKSIDE LOFTS CONDOMINIUM
ASSOCIATION, INC., individually and as
Representatives of others similarly situated,

    Plaintiffs,

v.

BANNER SUPPLY CO., a Florida corporation;
BANNER SUPPLY COMPANY FORT MYERS,
LLC, a Florida corporation; BANNER SUPPLY
COMPANY POMPANO, LLC, a Florida
Corporation; BANNER SUPPLY COMPANY
PORT ST. LUCIE, a Florida corporation;
BANNER SUPPLY COMPANY TAMPA, LLC,
a Florida corporation,

    Defendants.

                                        /

## DEFENDANT BANNER ENTITIES' MOTION TO STAY
## CASE PENDING RESOLUTION OF FIRST-FILED ACTION

    Defendants, Banner Supply Company, Banner Supply Company Fort Myers, LLC,

Banner Supply Company Pompano, LLC, Banner Supply Company Port St. Lucie, and Banner

Supply Company Tampa, LLC, (collectively "Banner"), file this motion to stay a previously-

filed action and in support thereof states:

## I.     Summary of the Argument

This case is based on allegedly-defective drywall installed in various homes throughout the state of Florida.  Four of the seven named Plaintiffs in this class action are also plaintiffs in a consolidated multi-district case currently pending in Louisiana federal court based on the same issues raised by the Plaintiffs in this case - and which was initiated more than a year before this case was filed.[1]  On September 20, 2010, the plaintiffs in one of the multi-district cases filed a motion to certify a class consisting of all Florida property owners whose properties contain the allegedly-defective drywall.[2]  Just over six weeks later, the Plaintiffs in this case filed an almost-identical motion for certification of a broad class of Florida homeowners whose homes contain drywall distributed by Banner since 2004.  Because the federal case was filed long before this case and involves substantially the same—if not the same—issues, this Court should stay this case pending the resolution of the federal case.

## II.     Factual Background

On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from defective chinese drywall to the United States District Court for the Eastern District of Louisiana for coordinated or consolidated pretrial proceedings.  *See In re Chinese-Manufactured Drywall Products Liability Litigation*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009).  On June 22, 2009, a group of plaintiffs sued Banner and others in federal court for damages caused by allegedly defective drywall and later amended their complaint to plead a national class on December 9, 2009 (the "Federal Action").  (Ex. A, p. 6).  On September 20, 2010, the PSC filed a motion for certification of a class of Florida homeowners in the Federal Action.  The PSC's proposed Florida class consists of:

---

[1] One of the Plaintiffs' lawyers in this case, Ervin Gonzalez, is also on the Plaintiff's Steering Committee ("PSC") in the multi-district case in federal court.
[2] A copy of the PSC's motion is attached as Exhibit "A."

> All owners of residential real properties in the State of Florida containing Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by Banner Supply Co., from January 1, 2005 to December 31, 2008, who have not released or assigned their property damage claims to a third party.

(Ex. A, p.2 n.1). In addition, the parties in the multi-district litigation established a pilot program under which as many as 300 homeowners in various states whose homes contained defective drywall will have their homes repaired at no cost to them. If successful, as many as 3,000 homes could be repaired in an attempt to achieve a global settlement of all Chinese drywall claims.

The plaintiffs in this case filed their complaint against Banner Supply Company on July 9, 2010, and later filed an amendment adding the other Banner entities on October 13, 2010. Plaintiffs filed a motion to certify a substantially-similar class to the one sought in the federal case on November 3, 2010 against Banner Supply Company and amended it on November 11, 2010 to include the other Banner entities. The class is described as:

> All natural persons and business entities residing in the State of Florida who purchased homes between January 2004 and the present and whose homes contain the defective drywall supplied by Banner Supply Co. or Banner-related companies.

(Plaintiff's Motion for Class Certification and Incorporated Memorandum of Law, p. 3, a copy of which is attached hereto as Exhibit "B"). The Plaintiffs' motion was filed almost a year after the motion for class certification in the Federal Action. This Court has scheduled a hearing on the motion for certification on January 18, 2011.

The issues at heart of this case and the Federal Action are identical: whether defective Chinese drywall supplied by Banner was installed in the plaintiffs' homes, and if so, whether and to what extent that drywall has damaged the plaintiffs' property. And because the Federal Action (and most of the cases in the multi-district litigation) was filed long before this case, this Court must yield to the Federal Action under established Florida law.

III.   <u>**Argument**</u>

    A.    **The Court should stay this action pending the outcome of the previously-filed federal case.**

"It is well-settled that when a previously filed federal action is pending between substantially the same parties on substantially the same issues, a subsequently filed state court action should be stayed pending the disposition of the federal action." *Beckford v. General Motors Corp.*, 919 So. 2d 612, 613 (Fla. 3d DCA 2006); *Robinson v. Royal Bank of Canada*, 462 So.2d 101, 102 (Fla. 4th DCA 1985) ("A grant of stay is appropriate where two actions are pending simultaneously which involve the same parties and substantially the same causes of action."); *Florida Crushed Stone Co. v. Travelers Indem. Co*, 632 So. 2d 217, 220 (Fla. 5th DCA 1994). As the Florida Supreme Court stated more than 80 years ago, "the usual practice is for the court in which the second action is brought not to dismiss such action, but to suspend proceedings therein until the first action is tried and determined." *Wade v. Clower*, 114 So. 548, 551 (Fla. 1927). This case is no different: a previously filed federal case involves substantially the same parties and claims; therefore, the Court should stay this action pending resolution of the federal case.

The Fourth District addressed a similar issue in *Ricigliano v. Peat, Marwick, Main & Co.*, 585 So.2d 387 (Fla. 4th DCA 1991). In that case, the defendant was a party in several consolidated federal cases alleging fraudulent misrepresentations surrounding the sale of stock. *Id*. The state case was filed after the federal action against the defendant and several individuals related to the same stock sale. The trial court stayed the case in favor of the federal action, and the plaintiffs appealed arguing that the cases were not similar enough to warrant a stay *Id*. at 387. The Fourth District disagreed and affirmed the stay, explaining: "While there is a disparity in the parties to the two actions, both suits seek to certify an almost identical class of plaintiffs.

Further, the basis for the two actions are the same, the alleged false and fraudulent financial representations regarding [the company]." *Id.* at 387.   As such, the stay was warranted.   *Id.* at 388.

In another similar case, the Third District Court of Appeal quashed an order denying a motion to stay a subsequently-filed class action in favor of a similar class action filed in New York state court. *Polaris Public Income Funds v. Einhorn*, 625 So.2d 128 (Fla. 3d DCA 1993). There, a class of plaintiffs filed a securities class action in New York and sought to certify a nationwide class of purchasers of certain securities.   Approximately three months later, a subset of the proposed class in the New York action filed a similar class action in Dade County, Florida and several of the New York defendants moved to stay the Florida case.   The trial court denied the motion to stay the case, and one of the defendants sought a writ of certiorari to review the order.   The Third District granted the petition for certiorari, quashed the trial court's order, and remanded the case with instruction to grant the stay.   The court explained that a stay was warranted because: (1) the Florida parties were represented in the New York putative class action; (2) the cases involved substantially the same issues; and (3) the New York case would dispose of all the issues raised in the Florida complaint.   Thus, the Florida case was "essentially subsumed within the New York action." *Id.* at 129.

The same issue arose once again in *Beckford, supra,* in which the Third District Court of Appeal denied a petition for certiorari seeking review of a trial court's order staying a state class action because of a previously-filed federal case.   919 So.2d at 613.   The federal case was filed on behalf of a nationwide class, while the Florida case was limited to Florida residents, but the court did not find that distinction persuasive.   Instead, the court explained that the parties and subject matter of the cases were substantially the same, and the state case was essentially

subsumed by the federal case *Id.* As the Florida plaintiffs could have asserted their claims in the federal case but decided to file in Florida state court instead, their "unilateral decision should not modify the long-standing principle that a subsequently filed state action should be stayed pending resolution of the federal action." *Id.* at 613-14. Accordingly, the trial court correctly denied the plaintiffs' motion to lift the stay. *Id.* at 614.

The Fourth District's decision in *Ricigliano* is controlling and mandates that this case be stayed. Here, as in *Ricigliano*, this case was filed after a substantially-similar federal case, and in both cases, the plaintiffs seek to certify an almost identical class of Florida homeowners. Furthermore, the central issues in both cases are identical: whether the plaintiffs' homes contain defective drywall supplied by Banner, and if so, the extent of the damage caused by that drywall, if any. Thus, "[a]lthough a trial court has broad discretion to order or refuse a stay of an action pending before it, it is nonetheless an abuse of discretion to refuse to stay a subsequently filed state court action in favor of previously filed federal action which involves the same parties and the same or substantially similar issues." *Florida Crushed Stone Co.*, 632 So. 2d at 220; *Fedorov v. Citizens State Bank*, 24 So.3d 1227, 1229 (Fla. 3d DCA 2009) (same). In accordance with well-established Florida law, this Court must stay this case pending resolution of the Federal Action.

## IV.    <u>Conclusion</u>

This Court must stay this case pending the outcome of the previously-filed federal action because the parties and issues are substantially similar.

WHEREFORE, Banner respectfully requests that this Court grant this motion, stay this case, and award such other relief as the Court deems appropriate.

Respectfully submitted this 24th day of November, 2010.

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC

MICHAEL A. SEXTON, ESQUIRE
Florida Bar Number: 031520
PETER K. SPILLIS, ESQUIRE
Florida Bar Number: 0897167
2601 South Bayshore Drive, Suite 850
Coconut Grove, Florida 33133
Telephone (305) 455-9500
Facsimile   (305) 455-9501
**COUNSEL FOR DEFENDANT BANNER SUPPLY
COMPANY, BANNER SUPPLY COMPANY FORT
MYERS, LLC, BANNER SUPPLY COMPANY
POMPANO, LLC, BANNER SUPPLY COMPANY
TAMPA, LLC.**


PETERSON & ESPINO, PA

*by MAS
(w/ permission)*

MICHAEL P. PETERSON, ESQUIRE
Florida Bar Number 982040
10631 Southwest 88th Street, Suite 220
Miami, Florida 33176
Telephone: (305) 270-3773
Facsimile:  (305) 275-7410
**COUNSEL FOR DEFENDANT BANNER SUPPLY
COMPANY PORT ST. LUCIE, LLC**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the date set forth below, Defendant Banner Entities'
Motion to Stay Case Pending Resolution of First-Filed Action has been electronically uploaded
and successfully transmitted the foregoing document to LexisNexis File & Serve, which will
generate and transmit Notices of Electronic Filing for service on all parties in the manner
authorized for each registered user in accordance with the Electronic Service Order entered in
this action and that a copy of the foregoing document has been e-mailed to Plaintiffs' Liaison
Counsel Michael J. Ryan at mryan@krupnicklaw.com and Defendants' Liaison Counsel,
Matthew Kotzen at Mkotzen@makslaw.com. I further certify that on the date set forth below,
the original signed document was mailed to the Court this 24th day of November, 2010.

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC

MICHAEL A. SEXTON, ESQUIRE
Florida Bar Number: 131520
2601 South Bayshore Drive, Suite 850
Coconut Grove, Florida 33133
Telephone (305) 455-9500
Facsimile  (305) 455-9501
**COUNSEL FOR DEFENDANT BANNER SUPPLY
COMPANY, BANNER SUPPLY COMPANY FORT
MYERS, LLC, BANNER SUPPLY COMPANY
POMPANO, LLC, BANNER SUPPLY COMPANY
TAMPA, LLC.**

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO. 2047
SECTION: L

THIS DOCUMENT RELATES TO

JUDGE FALLON
MAG. JUDGE WILKINSON

Vickers et al v. Knauf Gips KG et al
EDLA 09-04117
AND
Payton et al v. Knauf Gips KG et al
EDLA 09-07628

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR CERTIFICATION OF A FLORIDA HOMEOWNER CLASS FOR
CLAIMS AGAINST BANNER SUPPLY CO.

## TABLE OF CONTENTS

I.    **INTRODUCTION** ............................................................................................ 1

    A.    **Numerosity** ...................................................................................... 4

    B.    **Commonality** .................................................................................. 4

    C.    **Typicality** ....................................................................................... 4

    D.    **Adequacy of Representation** .......................................................... 5

    E.    **Predominance** ................................................................................ 5

    F.    **Superiority** ..................................................................................... 6

II.    **FACTUAL STATEMENT AND PROCEDURAL HISTORY** ........................... 6

    A.    **Distribution of Chinese Manufactured Drywall through Banner Supply Co. in Florida** ....................................................................................... 6

    B.    **General Background on CDW Damage to Homes** ........................... 7

    C.    **CDW Related Damages Suffered by Ms. Karin Vickers and Dr. Steven Roberts** ......................................................................................... 11

III.    **ARGUMENT** ............................................................................................ 12

    A.    **Standard of Review** ...................................................................... 12

    B.    **Elements of Rule 23** ..................................................................... 12

        1.    **Numerosity – Rule 23(a)(1)** ............................................... 12

        2.    **Commonality – Rule 23(a)(2)** ............................................. 13

        3.    **Typicality – Rule 23(a)(3)** .................................................. 14

        4.    **Adequacy of Representation – Rule 23(a)(4)** ...................... 15

            a.    **Ascertainability** ....................................................... 16

        5.    **Predominance – Rule 23(b)(3)** ........................................... 17

            a.    **Defendant Banner's Course of Conduct is a Common Liability Issue** ............... 19

            b.    **Determination of Class-Wide Damages is a Predominant Issue** .......... 20

                i.    **Formulaic Method to Determine Class-Wide Property Damages** .......... 21

            c.    **All of the Class Claims are Governed by Florida Substantive Law** .......... 24

        6.    **Superiority – Rule 23(b)(3)** ............................................... 26

IV.    **CONCLUSION** ....................................................................................... 27

## TABLE OF AUTHORITIES

Page(s)

Cases

*Allapattah Servs. v. Exxon Corp.,*
    333 F.3d 1248 (11th Cir. 2003) ...................................................................20

*Berger v. Compaq Computer Corp.,*
    257 F.3d 475 (5th Cir. 2001) .............................................................11, 15

*Bishop v. Florida Specialty Paint Co.,*
    389 So.2d 999 (Fla. 1980)..........................................................................24

*Castano v. Am. Tobacco Co.,*
    84 F.3d 734 (5th Cir. 1996) .......................................................................17

*Cole v. Gen. Motors Corp.,*
    484 F.3d 717 (5th Cir. 2007) ..............................................................11, 12

*DeBremaecker v. Short,*
    433 F.2d 733 (5th Cir. 1970) .....................................................................16

*Harris v. Berkowitz,*
    433 So.2d 613 (Fla. App. 1983).................................................................24

*Hilao v. Estate of Marcos,*
    103 F.3d 767 (9th Cir. 1996) .....................................................................22

*In re A.H. Robins Co., Inc.,*
    880 F.2d 709 (4th Cir. 1989) .....................................................................16

*In re Chevron U.S.A., Inc.,*
    109 F.3d 1016 (5th Cir. 1997) ...................................................................22

*In re NASDAQ Market-Makers Antitrust Litigation,*
    169 F.R.D. at 525 (S.D.N.Y. 1996) ...........................................................20

*In re Terazosin Hydrochloride,*
    220 F.R.D. 672 (S.D. Fla. 2004).................................................................20

*In re Vioxx Prods. Liab. Litig.,*
    478 F. Supp. 2d 897 (E.D. La. 2007)..........................................................23

*In re Vioxx Products Liability Litigation,*
   239 F.R.D. 450 (E.D. La. 2006)..................................................................23

*James v. City of Dallas,*
   254 F.3d 551 (5th Cir. 2001) ...........................................................13, 14

*John v. Nat'l Security Fire & Cas. Co.,*
   501 F.3d 443 (5th Cir. 2007) .................................................................16

*Klaxon Co. v. Stenor Elec. Mfg. Co.,*
   313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)..........................23

*McQuilken v. A&R Development,*
   576 F.Supp. 1023 (E.D. Pa. 1983) .............................................18, 24, 25

*Mims v. Stewart Title Guar. Co.,*
   590 F.3d 298 (5th Cir. 2009) .................................................................25

*Monumental Life Insurance Co. v. National Life,*
   365 F.3d 408 (5th Cir. 2004) .........................................................19, 23, 24

*Mullen v. Treasure Chest Casino LLC,*
   186 F.3d 620 (5th Cir. 1999) ..................................................... passim

*Pederson v. La. State Univ.,*
   213 F.3d 858 (5th Cir. 2000) .................................................................12

*Sher v. Raytheon Co.,*
   261 F.R.D. 651, 2009 WL 31931 ..........................................................22

*Simer v. Rios,*
   661 F.2d 655 (7th Cir. 1981) .................................................................16

*Turner v. Murphy,*
   No. 05-4206, Order...........................................................................20, 24

*Turner v. Murphy Oil USA Inc.,*
   234 F.R.D. 597 (E.D. La. 2006)................................................ passim

*Vizena v. Union Pac. R.R. Co.,*
   360 F.3d 496 (5th Cir. 2004) ...........................................................11, 12

*Watson v. Shell Oil Co.,*
   979 F.2d 1014 (5th Cir. 1992) ...............................................................22

iii

Other Authorities

Fed. R. Civ. P. 23(a)(1-4) ...............................................................................3

Fed. R. Civ. P. 23(b)(3).......................................................................... passim

Fed. R. Civ. P. 23(g) ....................................................................................15

Fed. R. Civ. P. 30(b)(6)...................................................................................7

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO. 2047
SECTION: L

THIS DOCUMENT RELATES TO

JUDGE FALLON
MAG. JUDGE WILKINSON

Vickers et al v. Knauf Gips KG et al
EDLA 09-04117
AND
Payton et al v. Knauf Gips KG et al
EDLA 09-07628

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR CERTIFICATION OF A FLORIDA HOMEOWNER CLASS FOR
CLAIMS AGAINST BANNER SUPPLY CO.

I.      INTRODUCTION

This matter involves the claims of thousands of homeowners who have suffered property

damages from the use of Chinese-manufactured drywall ("CDW") obtained through Banner

Supply Co. and other Banner entities ("Banner"), in their homes.  The Florida class

representatives, Ms. Karin Vickers who owns a home at 2259 S.E. 19th Avenue, Homestead, FL

33035 and Dr. Steven Roberts who owns a home at 10013 Cobblestone Creek Drive, Boynton

Beach, FL 33472, hereby move for class certification on behalf of themselves and all similarly

situated persons pursuant to Fed. R. Civ. P. 23(b)(3).  Plaintiffs seek certification of a class of all

owners of residential real properties containing CDW obtained through Banner, on their claims

for remediation and property damages.[1]

All claims of homeowners who obtained CDW through Banner are claims brought by Florida homeowners. Proposed class counsel and the PSC submit that the MDL claimants will best be served by a class action proceeding on behalf of a Florida homeowner class against Banner seeking an award of class-wide property damages for all similarly situated residents. Certification of these claims will efficiently advance the resolution of a large set of Florida claims. The conservation of resources for the Court and the parties of resolving liability on a class-wide basis is substantial, and is available *even if* the Court later determines that some damages issues must be resolved through individualized adjudications.

These claims are ripe for class certification for several reasons:

- First, this court has already overseen extensive CDW-related discovery, expert testimony, and issued judicial Findings of Fact and Conclusions of Law ("FOFCOL");[2] and the Miami-Dade County state court in Florida has already presided over a jury trial with a verdict for damages caused by the Knauf CDW, which was distributed by Banner.[3]

---

[1] The class definition is: "All owners of residential real properties in the State of Florida containing Chinese manufactured drywall sold, distributed, supplied, marketed, inspected, imported or delivered by Banner Supply Co., from January 1, 2005 to December 31, 2008, who have not released or assigned their property damage claims to a third party."

[2] *See In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, *Hernandez v. Knauf Gips KG, et al.*, Case No. 09-6050 (hereinafter "*Hernandez*") FOFCOL (Docket #2713); *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, *Campbell-Clement/Schexnaydre v. Knauf Plasterboard (Tianjin) Co., Ltd., et al*, Case No. 09-7628 (hereinafter "*Campbell/Clement*"); *see also Germano et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 2:09-cv-6687 (hereinafter "*Germano*") FOFCOL (Docket #2380).

[3] *See In re Chinese Manufactured Drywall Products Litigation, Seifart v. Knauf GIPS KG et al*, Case No. 09-38887 CA 01 (42) (Circuit Court of the 11th Judicial District, Miami-Dade County, Florida) (hereinafter "*Seifart*") Order Denying Defendant Banner Supply Co.'s Motion for Judgment in Accordance with Prior Motion for Directed Verdict or, in the Alternative, for New Trial (July 26, 2010) (*See* Compendium of Exhibits in Support of Plaintiffs'

- Second, the Florida law as it relates to CDW property damage claims has been established in the *Seifart* trial in state court in Florida.

- Third, this class action is limited to property damage and does not include personal injury.

- Fourth, the proposed class representatives from Florida have completed their Plaintiff Profile Forms ("PPF") and provided their product identification information to Banner.

The pivotal issues underlying the Florida homeowners' claims against Banner have been thoroughly litigated and provide sufficient maturity to this mass tort to facilitate a determination of class-wide property damages. Since Florida homeowners with CDW obtained through Banner make up a significant portion of the MDL claims; a class action, brought under Fed. R. Civ. P. 23(b)(3), can potentially resolve a large subset of claims in the MDL and establish a roadmap for the resolution of remaining claims. Here, Plaintiffs limit their request for certification to the property damage claims of Florida homeowners who obtained CDW through Banner. Any class member seeking personal injury (or medical monitoring) relief would need to do so on an individual basis, not through this class action. Furthermore, although the underlying *Vickers* Complaint alleges a national class against all Defendants, this motion only seeks to certify a subset of that class, to wit the claims against Banner for Florida homeowners. All Banner sales of CDW occurred in Florida.

---

Motion for Certification of a Florida Homeowner Class for claims against Banner ("Comp.") Exhibit ("Ex.") 1); Order Denying Defendants Certain Homes and Mandy Drywall Motions to Dismiss Plaintiffs' Second Amended Complaint (March 30, 2010) (Comp. Ex. 2); Order Denying Defendant Banner Supply Co. and all Similarly Situated Defendants' Motions to Stay, or Alternatively, Motions to Dismiss Plaintiffs' Amended Complaints and Strike

The Florida class claims against Banner readily meet the Fed. R. Civ. P. 23(a)(1-4) requirements of numerosity, commonality, typicality, and adequacy, as well as the predominance and superiority requirements of Rule 23(b)(3).

### A.    Numerosity

As to numerosity, available sales and distribution records and the Omnibus Complaints indicate that the number of Florida homeowners who own homes containing CDW (homes that are either all Chinese drywall or "mixed" Chinese and other drywall) obtained through Banner, and who could qualify as members of the class is estimated to be more than 1000. This evidence establishes numerosity.

### B.    Commonality

Commonality is also easily established. With the benefit of the availability of the pretrial and trial rulings from *Seifart*, Plaintiffs will be able to readily demonstrate that the relevant factual and legal property damage determinations already made, including Banner's liability and damages to homeowners caused by CDW distributed by Banner, are common questions. In addition, the need to quantify damages for the class is a common question. Thus, the commonality requirement will be satisfied.

### C.    Typicality

The claims of the class representatives are also typical of the class. Ms. Vickers and Dr. Roberts, like each class member, are homeowners seeking to recover for damages caused by defective CDW distributed by Banner utilizing the same causes of action. Similarly, the class representatives' claims, like the claims of all class members, are governed by the substantive law

---

Demands for Attorneys' Fees (December 18, 2009) (Comp. Ex. 3); Verdict Form (June 18, 2010) (Comp. Ex. 4).

of Florida - the law of Plaintiffs' state. The class representatives possess the same interest and have suffered the same type of injury as class members. Thus, typicality can be readily established.

### D.   Adequacy of Representation

Similarly, Ms. Vickers and Dr. Roberts will fairly and adequately protect the interests of the class. Each has already undergone a screening inspection of his or her home to verify the presence of defective Knauf CDW distributed by Banner and corrosion damage. Each has completed the court-mandated PPF and provided product identification photographs. In addition, proposed class counsel (Arnold Levin of Levin, Fishbein, Sedran & Berman; Ervin Gonzalez, of Colson Hicks Eidson; and Richard Lewis, of Hausfeld LLP) are experienced and competent counsel, as amply demonstrated by their participation in the *Germano, Hernandez,* and *Campbell/Clement* proceedings before this court, and the *Seifart* trial in Florida state court.

### E.   Predominance

As to predominance, the primary remaining unresolved issue that predominates over any individual issues that may be present in this case is the issue of the amount of class-wide damages. Plaintiffs will establish herein that the class-wide liability and damages can be determined on a common basis. Banner's course of conduct which caused the property damages to the Plaintiffs and the class impacted all class members in a similar way. Plaintiffs and class members suffered the same type of property damages. There will be no difficulty in managing multiple states' laws because the substantive law of only one state, Florida, will govern all claims. Plaintiffs have submitted a trial plan for the determination of liability and class-wide damages. (*See* "Proposed Trial Plan," filed simultaneously herewith).

5

### F.    Superiority

Plaintiffs will show that the class action mechanism is a superior mechanism to resolve these claims compared to individual proceedings.  The applicable law and the type of recoverable damages are uniform across class members.  It would be grossly inefficient and a waste of judicial economy for different courts to resolve these identical issues on an individual basis, and it would unnecessarily create a risk of inconsistent adjudications.  In sum, if the class is certified, the Court can resolve the issues of class-wide liability and the amount of class-wide damages. These are common and predominating issues that are thoroughly within the expertise and competence of the MDL Court, particularly after the Court has presided as the finder of fact in the *Hernandez* remediation and property damages trial and presided over other CDW trials.

## II.    FACTUAL STATEMENT AND PROCEDURAL HISTORY

### A.    Distribution of Chinese Manufactured Drywall through Banner Supply Co. in Florida

The present matters commenced when Plaintiff Vickers, on behalf of herself and all other similarly situated owners brought a class action against Defendant Banner Supply Co. and others on June 22, 2009.  Since then the Complaint has been amended to plead a national class.  *Vickers v. Knauf et al,* Third Amended Complaint – Class Action (*Vickers* Complaint).  The Payton Omni Complaint which includes Dr. Roberts was filed on December 9, 2009 (*Payton* Docket #1) (*Payton* Complaint).  The *Vickers* and *Payton* Complaints assert claims against Banner under numerous theories including negligence, negligence *per se*, strict liability, breach of express and/or implied warranties, breach of contract, private nuisance, unjust enrichment, violation of the Consumer Protection Acts, and for equitable injunctive relief and medical monitoring.

6

Banner sold defective CDW that was purchased and built into homes in Florida from at least 2005 to 2008. According to the Banner Distributor Profile Forms, Banner purchased for sale in Florida over 1.3 million pieces of CDW from La Suprema and over 33,000 pieces of CDW from Shandong and distributed nearly all of this product. Banner Distributor Profile Forms, (Comp. Ex. 5). Confidential Settlement Agreement and Release *Seifart*, Plaintiff Ex. 70, Banner-MDL-7393 thru 7401 (January 29, 2007) ("Confidential Agreement") (Comp. Ex. 6); Summary of La Suprema invoices to Banner Supply Co. (2006), *Seifart* Plaintiff Ex. 349 (Comp. Ex. 7); Fed. R. Civ. P. 30(b)(6) Deposition of La Suprema, Salomon H. Adabi (October 19, 2009) at 104(22) – 105(13), 108(20) – 109(17), 199(19) – 200(24) (Comp. Ex. 8); Declaration of Ronald E. Wright, P.E. ("Wright Dec.") at ¶ 3 (filed simultaneously herewith). Banner failed to adequately test and monitor the CDW it sold. Banner failed to warn Plaintiffs and class members of the smelly defective drywall when it was clear they had a record of each and every location to which they delivered CDW. Moreover, Banner withheld information from the Plaintiffs and class members that would have enabled them to prevent or mitigate damage from the defective drywall.[4] The class representatives' homes contain defective Knauf CDW which was distributed by Banner. Confidential Agreement (Comp. Ex. 6); Banner Invoices (Comp. Ex. 9).

### B.  General Background on CDW Damage to Homes

The Court's FOFCOL in *Hernandez* and the factual record in *Seifart* establish and set forth the majority of the facts (supported by record evidence) relevant to this class motion including facts relevant to Banner's conduct, the defect in the drywall, and the damage it causes. Hernandez Docket #2713; and Confidential Agreement (Comp. Ex. 6). This Factual Statement

---

[4] Confidential Settlement Agreement (Comp. Ex. 6) at ¶ 77

incorporates the *Hernandez* FOFCOL and the *Seifart* record citations in this brief by reference and will only highlight those facts most relevant to class certification.

From 2004 through 2006, the housing boom and rebuilding efforts necessitated by various hurricanes lead to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast states including Virginia. After the installation of the CDW, homeowners began to complain of: emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the failure of appliances and electrical devices in their homes. Many of these homeowners also began to complain of respiratory irritation, headaches and fatigue. *Hernandez* FOFCOL at 3-19; Confidential Agreement (Comp. Ex. 6).

The Consumer Product Safety Commission ("CPSC") and this Court established that CDW, including Knauf drywall, releases reduced sulfur gases. *Hernandez* FOFCOL at 15-21. The three main gases released from Knauf CDW are hydrogen sulfide ($H_2S$), carbonyl sulfide (COS), and carbon disulfide ($CS_2$). *Id.* The CPSC and plaintiffs' experts have detected sulfur gas emissions by conducting laboratory tests on samples of this drywall. *Id.* These emissions are often associated with strong odors. *Id.* The fact that Knauf CDW emits sulfur gases has been reported by the CPSC, the Florida Department of Health, and other investigatory agencies and firms. *Id.* The sulfur gases released by Knauf drywall cause respiratory, eye, throat and skin irritation,[5] and cause offending odors in homes, making them hard if not impossible to live in,

---

[5] While personal injury claims are not a part of this class action, the reported symptoms are relevant in so far as they establish that the CDW is defective, must be replaced, causes class-wide effects, and that residents experienced loss

8

and are corrosive to metals, particularly copper and silver. *Id* at 8-19.

The corrosion of metals, particularly copper and silver, caused by the sulfur gases emitted by Chinese drywall leads to premature failure of electrical and mechanical devices. *Id.* at 15-31. Laboratory analysis of the copper and silver components from the homes identified the sulfur induced corrosion as the cause of HVAC coil failure and the cause of the severe deposits at the operative connections in the appliances and in consumer electronics. *Id.* Mechanical, electrical, and electronic failures have occurred prematurely due to the severe industrial corrosive environments in these Knauf drywall homes. *Id. at* 15-31. Evaluation of comparable HVAC systems, appliances, and electronics in *control* homes (e.g., similar homes without Chinese drywall or other defective CDW) do not show premature failures of HVAC systems, appliances, and electronics, and the wires do not have corrosion product thicknesses that would predict premature failures based on corrosivity standards. *Id.* at 15-31. The corrosion on metals caused by the sulfur gases emitted by Knauf drywall also poses a fire risk. *Id.* at 25-26. The level of corrosive sulfur gases emitted by the drywall in the class representatives' homes exceed the safe level established by recognized standards, peer reviewed literature, and expert opinions; and caused a corrosive environment in their homes that has a significant impact on the exposed property. *Id.* at 15-31.

The scientific evidence has demonstrated that corrosion has damaged many components in the home. *Id.* at 15-33. The Court ordered Crawford inspection reports also confirmed widespread corrosion damage. Wright Dec. at ¶4. Consequently, in these homes *all* drywall

---

of use and enjoyment and dislocation expenses due to the CDW.

needs to be removed and replaced.  Removal of all drywall in a home that contains only Chinese drywall as well as a "mixed" home is efficient and cost effective.  All electrical wires also need to be replaced because the insulation jackets on electrical wires do not adequately protect them from corrosive attack.  *Id.* at 21-33.  It is not feasible to clean the wires of corrosion product to render them free of risk of future failure.  *Id.* at 25.  In addition, the following items will also have to be replaced: copper pipes, HVAC units, certain electrical devices and appliances, carpet, and vinyl flooring, cabinets, countertops, trim, crown molding, baseboards, bathroom fixtures and insulation.  *Id.* at 29-35, *Seifart* Verdict Form (Comp. Ex. 4).

In sum, the evidence supports the conclusion that the appropriate remediation for homes containing Chinese drywall includes the removal of all drywall, all electrical wiring, the entire HVAC system, and many other items such as appliances, carpet, cabinetry, trim work and flooring.  *Id.* at 27-35.  The scope of this remediation is supported by both the scientific evidence and the evidence of pragmatic concerns relevant to efficient remediation.  *Id. at* 27-36.  As part of the remediation, homes will need to be cleaned with a HEPA vacuum, wet-wiped or power-washed, and allowed to air-out after remediation.  After remediation, an independent, qualified engineering company should inspect and certify that the homes are safe for occupation.  *Id.* at 34.  This remediation scope of work is consistent with Chinese drywall remediation being performed by national homebuilders and recommended by the CPSC.  *Id.* at 34-35; *Germano* FOFCOL at 54-55, *Seifart* Verdict Form (Comp. Ex. 4).

The evidence reviewed by this Court indicates that the removal of all drywall in those homes in which there is a substantial mixture, as opposed to selective removal of CDW on a

board-by-board basis is the better and more realistic approach. (This point was not contested by the defendant in *Seifart*.) This is necessary in order to remove and replace wires, pipes, and insulation, and to adequately clean the home. Furthermore, the evidence indicates that it is virtually impossible to detect, in a nondestructive manner with reasonable accuracy, which drywall is and is not CDW. *Hernandez* FOFCOL at 32. To accomplish this type of remediation, homeowners will be out of their home for 4-6 months during remediation. *Id. at* 41; *Seifart* Verdict Form (Comp. Ex. 4).

### C.   CDW Related Damages Suffered by Ms. Karin Vickers and Dr. Steven Roberts

The need for this sort of repair and remediation is fully applicable to the class representatives, Ms. Vickers and Dr. Roberts, and absent class members. Wright Dec. at ¶6. Ms. Vickers and Dr. Roberts have subjected their homes to a screening inspection which determined product identification of CDW and corrosion of metal surfaces in the home, characteristic of CDW. Wright Dec. at ¶¶3-5. In addition, Ms. Vickers and Dr. Roberts have completed the PPF and provided product identification information, as required by court order. Declaration of Arnold Levin ("Levin Dec.") (filed simultaneously herewith) at ¶¶2-5. Ms. Vickers and Dr. Roberts have suffered property damage caused by the defective CDW. Vickers PPF, (Comp. Ex. 10), Roberts PPF (Comp. Ex. 11), Wright Dec. at ¶5. Damages suffered by Ms. Vickers, Dr. Roberts, and class members include the cost of the needed remediation, alternate living costs, property diminution, loss of use and enjoyment damages, and personal property damages. *Vickers* Complaint; *Payton* Complaint.

11

### III.   ARGUMENT

#### A.   Standard of Review

The proponents of the class bear the burden of demonstrating that the case is appropriate for class treatment. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001). Class certification is soundly within the district court's discretion, and this decision is essentially a factual inquiry. *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502-03 (5th Cir. 2004). The class certification decision should not reach the merits of the Plaintiffs' claims. *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724, (5th Cir. 2007) (*quoting Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)). However, in some cases it is necessary for a district court to go beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in order to make a meaningful certification decision. *Id.* The district court must make specific findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Vizena*, F.3d at 503.

#### B.   Elements of Rule 23

##### 1.   Numerosity – Rule 23(a)(1)

To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through "some evidence or reasonable estimate of the number of purposed class members." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000). "Although the number of members of any proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has generally set the threshold of 100 to 150 people as satisfying the numerosity requirement. *Mullen v. Treasure Chest Casino LLC,* 186 F.3d 620, 624 (5th Cir. 1999).

Analysis of available records, including the Omnibus Complaints, Banner Distributor

Profile Forms and sales records, and third party sales records, indicates that the best estimate of the number of Florida homeowners with CDW obtained through Banner who would qualify as a class member is in excess of 1000. Levin Dec. at ¶5. According to Banner, it sold over 1.3 million pieces of CDW in Florida in the 2005-2008 timeframe. *See* Comp. Ex. 5. Furthermore, the invoice and Profile Form records of Banner, La Suprema, and Knauf indicate widespread sales of CDW by Banner in Florida. *See* Comp. Exs. 5, 7, 12, 13, 15. Wright Dec. at ¶3 (showing that if the average CDW home in Florida with CDW from Banner contained 200 pieces of CDW, then Banner sold enough CDW for thousands of Florida homes). Therefore, the number of homeowners with CDW obtained through Banner in Florida likely exceeds 1000. The class representatives and absent members of the class all seek remediation and property damages for their homes as the primary form of relief in their claims. Joinder of this many class members is impracticable and would lead to a squandering of judicial economy and the resources of the parties. *Turner v. Murphy Oil USA Inc.*, 234 F.R.D. 597, 604 (E.D. La. 2006). Thus, the proposed class meets the numerosity requirement.

## 2.    Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires that there be issues of law or fact common to the class. The commonality requirement is satisfied if resolution of at least one issue will affect all or a significant number of class members. *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001); *Mullen*, 186 F.3d at 620, 625. There is a low threshold for commonality, and the fact that some class members have different claims or require individualized analysis does not defeat commonality. *James*, 254 F.3d at 570.

The proposed class representatives and the proposed class have numerous factual and legal issues in common, including but not limited to:

- whether CDW obtained through Banner is defective and needs to be replaced;

- whether additional items in the home need to be repaired or replaced;

- the determination of Banner's liability as the distributor or seller, of CDW;

- the determination of the fact of damages to the class representatives and members of the class; and

- the availability and amount of class-wide damages.

Thus, the commonality requirement is also satisfied.

### 3.      Typicality – Rule 23(a)(3).

Rule 23(a)(3) requires that the claims of the class representatives are typical of the class's claims or defenses.  Again, the threshold for typicality is low:  class representatives must show similarity between their legal and remedial theories and the theories of the rest of the class. *Mullen,* 186 F.3d at 625.  Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics – a similar course of conduct, or the same legal theory. *James,* 254 F.3d at 571 (*quoting* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)).

The property damage claims of the class representatives are the same as those of the absent class members.  The determination of these damages depends on the same factual predicate as to the manufacturer of the defective product, product identification, the mechanism of damage occurring in the class members' homes, the need for remediation, and the square

14

footage costs of accomplishing the remediation. *Murphy,* 234 F.R.D. at 605 (theories of liability of property owners damaged by oil are alike, and support a finding of typicality); *see* Wright Dec. at ¶¶6-7. Further, the establishment of damages is governed by the identical home state law, Florida, for all class members. Thus, the typicality requirement is readily met.

### 4.    Adequacy of Representation – Rule 23(a)(4)

Rule 23(a)(4) demands that the named class representatives fairly and adequately represent the claims of the other class members. There can be differences between the class representatives and other class members so long as these differences do not "create conflicts between the named Plaintiffs' interests and the class members' interests." *Mullen,* 186 F.3d at 626. A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members. *Id. (citing Jenkins v. Raymark Indus.,* 782 F.2d 468, 472 (5th Cir. 1971)). In addition, the district court should inquire into the zeal and competence of the class representatives' counsel and into the class representatives' willingness to take an active role in the litigation and to protect the interests of absentees. *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir. 2001).

Under Rule Fed. R. Civ. P. 23(g), a district court must appoint class counsel at the time the class is certified, unless otherwise provided by statute. The class counsel must fairly and adequately represent the interests of the class, and the court must review the counsel's work in investigating claims, experience in handling class action litigation, knowledge of the applicable law, and the resources counsel will commit to representing the class. Rule 23(g)(1)(B),(C).

The proposed class representatives, Ms. Karin Vickers and Dr. Steven Roberts, have the same interest as absent subclass members in obtaining property damage relief from Banner. They also all share the same interest in the enforcement of a class judgment and the collection of that judgment against Banner. The class representatives have demonstrated their commitment to the litigation by subjecting their residences to screening inspections to establish product identification and the fact of corrosion damage. Further, Ms. Vickers and Dr. Roberts have timely completed the court ordered PPF and provided her product identification information. Levin Dec. at ¶2. Finally, each has agreed to make themselves available for deposition and cooperate with requests to assist this Court and counsel as needed. Levin Dec. at ¶7.

The proposed class counsel are experienced in class action practice, well respected, and competent lawyers. Levin Dec. at ¶8 (attaching Curriculum Vitae of proposed class counsel). This Court has already had the opportunity to work extensively with each of the proposed class counsel and their firms in prior proceedings in this case. Thus, the Court should find that the proposed class representatives, Ms. Karin Vickers and Dr. Steven Roberts, as well as the proposed class counsel; (Arnold Levin of Levin, Fishbein, Sedran & Berman; Ervin Gonzalez, of Colson Hicks Eidson; and Richard Lewis, of Hausfeld LLP for Florida) are adequate.

### a.   Ascertainability

It should be noted that various courts consider *ascertainability* to be a requirement under Rule 23. Ascertainability pertains to the ability of the Court based on record evidence to utilize objective criteria to determine who is a subclass member (and who is not). The Fifth Circuit has referred to ascertainability as an "implied prerequisite of Rule 23." *John v. Nat'l Security Fire &*

*Cas. Co.,* 501 F.3d 443, 445 (5th Cir. 2007); *see also DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."), *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 728 (4th Cir. 1989); *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir. 1981); 5 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[1], at 23-47 (Matthew Bender 3d ed. 1997) ("It is axiomatic that in order for a class action to be certified, a class must exist."). Here, the class is ascertainable.  Membership in the class is based on two key objective criteria: (1) ownership of a residence in Florida; and (2) the identification of CDW obtained through Banner in that residence.  The determination of CDW in a residence is established through visual identification of known markings. *See* PTO #10 (Docket #171); Wright Dec. at ¶5. The determination that Banner was the distributor of the CDW in question can be made based on Banner invoices and other documentation linking Banner's distribution of Knauf and Shandong CDW to construction of residences in Florida.  Banner Invoices (Comp. Ex. 9); Banner Supply Sales Records (Comp. Ex. 13); Banner Distributor Profile Forms (Comp. Ex. 5); La Suprema Distributor Profile Form (Comp. Ex. 12); La Suprema Invoices to Banner Supply (Comp. Ex. 7), and Knauf Manufacturers' Profile Forms (Comp. Ex. 14).  Thus, the proposed class meets the ascertainability requirement.

### 5.      Predominance – Rule 23(b)(3)

Rule 23(b)(3) requires that the class share common issues of law or fact that predominate over the questions affecting individual class members.  In general, in order to predominate, common issues must form a significant part of the individual cases. *Mullen,* 186 F.3d at 626.

Specifically, a district court should consider how the cases would proceed to trial, that is, whether any cases would require individual trials on particular issues. *See Castano,* 84 F.3d at 744-45 (finding that certification was inappropriate where individual trials would be necessary to determine an element of the Plaintiffs' fraud claims).

The dual demands of Rule 23(b)(3) are that common issues are significant and will resolve substantial aspects of the case, and that the case will be manageable for trial purposes. *Id.* The issue of Banner's liability for the distribution of defective CDW is a significant issue that will resolve a substantial aspect of the many claims pending against Banner. Furthermore the determination that property damages can be determined on a class-wide basis using a formulaic approach to determine damages such as the one outlined by Plaintiff's expert, Ronald Wright, Wright Dec. at ¶¶6-7. The ultimate determination of the class-wide damages is also a significant issue that will resolve major aspects of this case and is manageable for trial purposes. This Court, and the *Seifart* Court in prior proceedings have already found sufficient facts to establish the fact of property damage associated with defective CDW and have determined the law applicable to the liability and damages aspects of the case. Thus, class-wide liability and damages can be established in an efficient manner and these issues predominate over any individual issues.[6] Moreover, there are no individual issues associated with any personal injury claims as those claims are excluded from the class.

---

[6] There will be a need during claims processing for each claimant to prove up basic facts to establish property damages: (1) product identification; (2) homeownership; and (3) square footage of owned home, to recover on a remediation claim.

18

a.   **Defendant Banner's Course of Conduct is a Common Liability Issue**

Here, there can be no dispute that Defendant Banner's conduct in distributing and selling defective CDW to the Florida home construction market has a common property damage impact on the class member homeowners. Liability is commonly recognized as a predominant issue in the class setting. *Mullen,* 186 F.3d at 626 ("the common issues in this case, especially negligence and seaworthiness, are not only significant but pivotal … If the [Defendant] prevails on these two issues, they will prevail in the case."); *Murphy,* 243 F.R.D. at 606 (Plaintiffs' property damage claims "share large areas of fact in common."); *McQuilken v. A&R Development,* 576 F.Supp. 1023, 1031 (E.D. Pa. 1983) (Involving damage to homeowners' properties caused by construction activity, defendants' conduct is viewed as a common and predominant issue supporting certification).

The issue of Banner's liability to the class is highly amenable to class treatment because the evidence of the actual defect, Banner's knowledge of it and conduct related to it, and the type of corrosion damage associated with the product will be the same for all class members. Thus, a finding of liability for the class would allow an estimated 1000 plus claimants to proceed directly to the damages phase. The conservation of resources for the Court and the parties of resolving liability on a class-wide basis is substantial, and is available *even if* the Court later determines that some damages issues must be resolved through individualized adjudications. *Murphy,* 234 F.R.D. at 605, 607 (individualized damage issues do not prevent a finding of predominance).

19