# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO.:  2047 |
| **This Document Relates to:** | **JUDGE FALLON** |
| ***Amato, et al. v. Liberty Mut. Ins. Co.***, et al. Case No. 10-932 | **MAGISTRATE JUDGE WILKINSON** |

**PLAINTIFF STEERING COMMITTEE'S BRIEF IN SUPPORT OF ITS *EMERGENCY* MOTIONFOR AN ORDER PREVENTING THE PAYMENT OR TRANSFER OF CERTAIN MONEYS OR, IN THE ALTERNATIVE, FOR COURT ORDERED MEDIATION AND TEMPORARY STAY OF ALL OUTSIDE SETTLEMENT ACTIVITIES**

**TO THE JUDGE OF THIS HONORABLE COURT**:

The Plaintiffs' Steering Committee, on behalf of lead plaintiffs and absent class members (together, "Plaintiffs"), respectfully moves this Court to enter an order preventing the defendants before this Court from consummating and/or executing settlements or judgments with co-parties absent class members or non-parties without giving sufficient notice to Plaintiffs or without Plaintiffs involvement.  The PSC recognizes that the law favors settlements, however, to maximize the potential of these MDL proceedings the PSC submits that a comprehensive approach to all settlements best accommodates the public's interest in resolving litigation.

Plaintiffs represent potentially thousands of claims in this litigation, and have made remarkable headway and are engaged in a pilot program and expansion of the same with the largest defendant in the case.  But enough uncertainty is being generated by private-ordered resolutions, settlements among insurers and direct action defendants,

insurers' attempts at favorable side-deals with absent class members threatening an opt-out contingent, and by the continued insistence of certain defendants to "wait and see" how others settle before they will.

Plaintiffs are also concerned by the progressive dissipation of assets that otherwise would be available to satisfy Plaintiffs' claims. Moneys and insurance proceeds related to claims resolved outside this forum risk being removed further and further from Plaintiffs' reach. It is not only unjust for similarly situated claimants to receive different recoveries, it runs directly contrary to the purpose and spirit of Congress's and the JPML's consolidating this case here. Otherwise, why are we all here?

These have had the – perhaps intended – consequence of chilling global settlement discussions with the PSC. One set of discussions has been thwarted, and another threatens to be likewise impeded.

Accordingly, Plaintiffs respectfully request that this Court enter an order preventing Defendants – Insurer Defendants and Direct Defendants alike – from settling and/or paying, transferring, or otherwise do anything with funds or moneys available to them to resolve one or more claims in this litigation, which would last until resolution of the litigation involving the enjoined party. In addition, or in the alternative, Plaintiffs respectfully request that the Court order all parties before it to mediation within thirty (30) days before the parties' selected mediator, John Perry, and in the interim stay all settlements, payments of settlement, and/or disbursement of funds in resolution of claims pending the mediation. Either order would be authorized under the Court's inherent power to control the litigation and the litigants before it, under the Court's equitable

jurisdiction to issue interim injunctive relief, as well as by the Court's power to issue orders "in aid of its jurisdiction" under the All Writs Act.

Plaintiffs have attached proposed Orders for the Court's convenience granting either or both forms of relief requested.

## BACKGROUND

The groundwork is set forth in *Plaintiffs' Amended Omnibus Class Action Complaint (V)*, Case No. 2:09-md-02047 (E.D. La.), Document No. 3132, filed May 11, 2010 ("Omni V Complaint" and the "Lawsuit").[1]   Therein, over 200 named Plaintiffs, also standing as lead plaintiffs on behalf of absent class members with claims against the Direct Defendants, seek remediation of their homes, restitution of their out of pocket expenses and the diminished value of their homes, and restitution for medical monitoring. Thus, at issue are *thousands* of claims regarding homes outfitted with Chinese manufactured drywall and the corrosive effects of its chemical composition.   These claims, in turn, may be satisfied by funds from insurance policies in the hands of the Insurer Defendants.  Plaintiffs filed this Lawsuit in particular to *ensure* that the remedies they seek could be satisfied if not by the Direct Defendants, then by their insurers.

Despite Plaintiffs' best efforts, which have brought them to the precipice of settlement with one of the largest defendants in the case, the spectre of piecemeal resolution threatens to undermine global resolution of those claims as well as others. This is not the first time this issue has come up: Plaintiffs filed their *Emergency Motion To Lift Stay And To Permit Motion To Protect Class Members And Fairly Conduct The*

---

[1] The "Insurer Defendants" are those insurance companies listed as defendants in the Omni V Complaint ¶¶ 428–527.  The "Direct Defendants" are those parties listed on the Omni V Complaint ¶¶ 528-548 (importers/distributors/brokers), ¶¶ 549-609 (builders), ¶¶ 610- 621 (installers) (together with the Insurer Defendants, the "Defendants").

*Action*, Case No. 2:09-md-02047 (E.D. La.), September 9, 2009, requesting that notice be given to absent class members of their rights in this litigation.  Plaintiffs also recently filed *Motion for An Order Requiring An Accounting And Other Relief*, 09-md-02047 (E.D. La.), Document No. 6669, December 16, 2010, requesting sequestration of settlement funds and that a lien be imposed attorneys' fees earned and disbursed in settlements in favor of the Plaintiffs.  Plaintiffs were – and continue to be – alarmed at the multitude of settlement offers being made without the involvement of the Plaintiffs Steering Committee to both coordinate and ensure that the rights of other litigants were protected.

In addition to Plaintiffs' concerns about the risk that compensation for some will deprive others of any, it has also come to light that funds from the Insurer Defendants named in this Lawsuit are being sought by Direct Defendants and other potential entities either to pay the above-noted piecemeal settlements, or even worse, to be used for things that have nothing to do with Plaintiffs' restitution; such funds are necessary to compensating *all* Plaintiffs, not just the few who sign on the dotted line under duress.

Indeed, Plaintiffs have direct evidence that funds are being dissipated in disputes among co-defendants in the Chinese Drywall litigation.  For example, Dragas Management Corporation obtained a $4.9 million arbitration award against Insurer Defendant Hanover Insurance Co. for coverage from Porter-Blaine who installed Chinese Drywall in some of Dragas's housing units. (*See* Exhibit A. Arbitration Award).  Dragas recently moved to enforce the award in federal court. (*See* Exhibit B, Motion to Enforce Arbitration Award).  Although Dragos is not a defendant in this case, both Hanover Insurance and Porter-Blaine are. *See* Omni V Complaint ¶¶ 477 and 617, respectively.

What is going to happen to that $4.9 million?  The Hanover proceeds are sought by innumerable Plaintiffs who *also* have claims against Porter-Blaine, as described in the Omni V Complaint.  To the extent that that award exhausts Porter-Blaine's coverage, it risks leaving nothing to compensate named and absent class members alike.

The above dynamics have also chilled Defendants' willingness to come to global resolution.  Either because there are too many moving variables, or because they see an opportunity for strategic behavior to settle out a few plaintiffs at the expense of the larger group.  Either scenario is unacceptable.  Mindful that one of the benefits and purposes of MDL consolidation is the ability to reach a comprehensive resolution, Plaintiffs request that this Court take appropriate action.

Hence this Motion.

## ARGUMENTS & AUTHORITIES

As a general predicate, this Court has the inherent authority in a class action to issue orders both to regulate the cases before it and to control the conduct of the parties. In *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981), the U.S. Supreme Court explained these plenary powers:

> [A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.

Plaintiffs submit that this Court's inherent authority justifies the orders sought. This authority is buttressed by two other sources, as discussed more fully below.

# I.    THE ORDERS SHOULD ISSUE UNDER THE COURT'S EQUITABLE JURISDICTION TO PRESERVE PLAINTIFFS' EQUITABLE REMEDIES

This Court has authority to issue provisional interim orders enjoining the use of certain assets by Defendants – whether in the form of moneys, or liquidated or non-liquidated insurance policies – to protect plaintiff's' equitable remedies.  The purpose of the order is consistent with the historical purpose of such injunctions: to maintain the status quo, and "to prevent the judicial process from being rendered futile by defendants' actions or refusal to act" during litigation.  *See* C.A. Wright, A. Miller, and M. Kane, FEDERAL PRACTICE AND PROCEDURE (2d ed. 1995) ("Wright & Miller") § 2947 pp 121. 123.  The fact that the order may reach defendants over whom Plaintiffs have yet to perfect service, or who are third parties to the MDL is irrelevant at this juncture.  "Courts do not need personal jurisdiction over every party that might be affected—even indirectly—by an injunction." *Iantosca v. Step Plan Servs.*, 604 F.3d 24, 32 (1st Cir. 2010); *accord Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1135-36 (9th Cir. 2005).

## A.    The Case Law Holds That This Court Has The Authority Under Its Equitable Jurisdiction To Provisionally Restrain Dissipation Of Certain Assets Necessary To Satisfy Plaintiffs' Equitable Remedies

The cases addressing this issue have *all* held that, where, as here, Plaintiffs' seek restitution, disgorgement, and other equitable relief, a court may exercise its equitable authority to sequester certain assets, even money, tied to the equitable relief – i.e., here, the moneys that Direct Defendants obtained from and should be restored to Plaintiffs, and the insurance proceeds from policies covering claims against those Defendants.

The Supreme Court, in *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940), affirmed the district court's preliminary injunction freezing defendant's assets

pending trial to satisfy a potential judgment. *Id.* at 289-91. The defendant had allegedly committed fraud when it sold plaintiffs some bond certificates, and plaintiffs were seeking to rescind the sale and get their money back. *Id.* at 284. The fact that Plaintiffs' claim was not yet liquidated was not problematic; it was the *type* of remedy that mattered. The district court concluded that plaintiffs were in substance seeking restitution and disgorgement, both equitable remedies. *Id.* at 289. Because there was no other adequate remedy were the funds to become dissipated, such an event when constitute irreparable harm; thus it was proper to sequester those funds necessary to satisfy the potential judgment. *Id.* at 290. The Supreme Court affirmed, noting that the "granting of a temporary injunction. . . is within the sound discretion of the trial court [.]" *Id.* (quoting *Prendergast v. N.Y. Tel. Co.*, 262 U.S. 43, 50 (1923)).[2] Plaintiffs likewise seek the provisional remedy authorized by the U.S. Supreme Court in this highly instructive case.

_____

[2] This Court should not be led astray by the Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). That decision has been misconstrued as prohibiting *all* injunctions of the kind sought herein. In fact, it held that, for *actions at law* (i.e., not equity) district courts lack the equitable powers to enjoin the use or disposition of assets to support a potential judgment. It expressly preserved *Deckert*'s authorization of injunctions in aid of equitable recoveries. *See id.* at 324-25 and 336 n.3.

As discussed, Plaintiffs in this action seek equitable as well as legal remedies – a "mixed case" as it were. Mixed cases have always followed *Deckert*, not *Grupo Mexicano* – and they further reinforce the propriety of granting the equitable relief sought herein. *See Animale Group Inc. v. Sunny's Perfume Inc.,* 256 Fed. App'x 707, 708-09 (2007) (holding that *Grupo Mexicano* is limited to cases where no equitable relief is sought); *accord Iantosca,* 604 F.3d at 34 ("a court may, consistent with *Grupo Mexicano*, 'issue[] asset freezing injunctions in 'mixed' cases . . . where both equitable and legal remedies are sought.'") (citations omitted); *SEC v. ETS Payphones,* 408 F.3d at 734 ("*Grupo Mexicano* does not control the outcome of this case because the SEC seeks equitable relief (disgorgement), not just money damages"); *In re Focus Media Inc.,* 387 F.3d 1077, 1085 (9th Cir. 2004) ("when equitable claims are at issue, as opposed to solely legal damages claims, the rule barring issuance of a preliminary injunction freezing assets is inapplicable[.] . . .*Grupo Mexicano* thus exempts from its proscription against preliminary injunctions freezing assets  ... cases in which equitable relief is sought."); *CSC Holdings v. Redisi,* 309 F.3d at, 996 (affirming asset freeze injunction where plaintiff "had the option of seeking either statutory damages, actual damages, or an accounting and profits remedy."  "This last remedy, sought by Cablevision in the alternative in its initial complaint, is equitable in nature and imposes a constructive trust on the defendant."); *Oncology Assocs.,* 198 F.3d at 496-97 (upholding injunction where in addition to legal claims, plaintiffs sought unjust enrichment and construct trust).

Following *Deckert*, the Fifth Circuit, in *Animale Group*, approved of the district court's issuance of a TRO and then preliminary injunction restraining defendants' use or disposition of a *specific sum of money or liquidatable property* in order to protect plaintiff's right to restitution of unpaid royalties.  *See Animale Group Inc. v. Sunny's Perfume Inc.,* 256 Fed. App'x 707, 709 (2007).  Defendants were selling perfumes with plaintiff's trademark on them, and plaintiff alleged "six counts … against defendants for violations of the Lanham Act [lost royalties] and various state torts."  *Id.* at 708.  The court summarized the proceedings as:

> On the same day, Plaintiffs moved for a temporary restraining order freezing Defendants' assets. The district court granted the application, pending a February 6, 2007, hearing on Plaintiffs' motion for preliminary injunction.  During the hearing, the district court granted the motion for a preliminary injunction, and enjoined Defendants from transferring approximately $600,000 in real property and cash.  The district court stated that it had authority to enter the injunction because Plaintiffs' suit sought equitable relief, and a freeze was necessary to prevent Defendants from dissipating their assets.

*Id*.  It noted that plaintiffs had an equitable interest in sufficient assets to satisfy a potential judgment.  *Id.*  The Fifth Circuit affirmed finding no abuse of discretion, concluding that "[b]ecause Defendants seek equitable relief, the district court was authorized to preserve the status quo by entering a limited asset freeze." *Id*.

Similarly – and analogous to the present case – is the First Circuit's opinion in *Iantosca v. Step Plan Servs.,* 604 F.3d 24 (1st Cir. 2010).  There, the First Circuit addressed the propriety of an injunction "to freeze *pendente lite* certain funds, now in the hands of third parties [] due to one or more of the other defendants who owe, or alleged to owe, *money judgments* to the plaintiffs."  *Id.* at 27.  In fact, the "funds" were from

insurance carriers. In particular, plaintiffs had an unsatisfied money judgment from several defendants, one of whom, in turn, was a plaintiff who won a settlement in a different lawsuit and was owed money from insurers of the settling defendants in that latter suit. *Id.* The district court enjoined the insurers in the second suit from paying or transferring the money while the court figured out how much of those moneys should go to plaintiffs in the first suit to satisfy their judgment. *Id.* The First Circuit upheld the injunction, noting its importance to thwarting a fraudulent conveyance and protecting plaintiffs' right to a recovery, since those funds could "properly belong to one or more of the named defendants who are liable to the [plaintiffs]". *Id.* at 33.

In addition to *Deckert*, *Animale*, and *Iantosca*, a superabundance of case law supports entering a provisional interim order preventing a defendant from using, transferring or disposing of assets in order to help satisfy a potential judgment in plaintiffs' favor. *See Johnson v. Couturier*, 572 F.3d 1067, 1082 (9th Cir. 2009) (affirming preliminary injunction preventing insurer from advancing directors defense fees and costs, despite arbitration awarding directors same, in order to preserve funds for potential judgment); *SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 734 (11th Cir. 2005) ("the asset freeze is justified as a means of preserving funds for the equitable remedy of disgorgement"); *CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 996 (7th Cir. 2002) ("Since the assets in question here were profits the Redisis made by unlawfully stealing Cablevision's services, the freeze was appropriate and may remain in place pending final disposition of the case."); *United States ex rel Rahman v. Oncology Assocs., P.C.,* 198 F.3d 489, 496-97 (4th Cir. 1999) ("a court may in the interim invoke equity to preserve the *status quo* pending judgment where the legal remedy might prove inadequate and the

preliminary relief furthers the court's ability to grant the final relief requested"); *Gerardi v. Pelullo*, 16 F.3d 1363, 1373-74 (3d Cir. 1994) ("the injunction is reasonably necessary to preserve the status quo, and thus to ensure the satisfaction of a potential future judgment ordering the transfer of money from defendants to plaintiffs."); *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94 (6th Cir. 1982) (affirming injunction freezing defendant's assets in order to protect rights of plaintiff shareholders' seeking damages for directors' breaches of fiduciary duties); *Seide v. Crest Color, Inc.*, 835 F.Supp. 732 (S.D.N.Y. 1993) (enjoining fund's use or removal of assets which were needed to satisfy potential judgment to plaintiffs); *Cattle Fin. Co. v. Boedery, Inc.*, 795 F.Supp. 362 (D.Kan. 1992) (preliminary injunction issued to prevent disposition of sale proceeds pending litigation outcome to ensure plaintiffs' potential judgment would be satisfied); *TLX Acquisition Corp. v. Telex Corp.*, 679 F. Supp. 1022 (E.D. Okl. 1987) (ordering injunction to prevent dissipation of $1.5 million in cash to satisfy plaintiffs' claims).

Furthermore, to the extent that Defendants have already settled claims or breached the terms of the injunction, such settlements should be set aside and a constructive trust asserted over the moneys paid. *See Doubleclick Inc. v. Paikin*, 402 F.Supp.2d 1251, 1255 (D.C. Colo. 2005) (authorizing injunction undoing defendants' agreements in order to restore the status quo); *accord Cohen v. Brown Univ.*, 991 F.3d 888 (1st Cir. 1993).

## B. The Remedies Plaintiffs Seek Are Equitable In Nature, Thus Justifying Issuance Of The Orders

Here, Plaintiffs have alleged equitable causes of action: redhibition, nuisance, unjust enrichment, and injunctive relief. *See* Omni V Complaint, at ¶¶ 718-725 (Redhibition), ¶¶ 738-744 (Private Nuisance); ¶¶ 752-755 (Unjust Enrichment); ¶¶ 761-773 (Injunctive Relief). Notably, redhibition – unique to Louisiana law – is tantamount

to the equitable common law claims of rescission and restitution. *See National Iranian Gas Co. v. Basco Industries, Inc.,* 507 F. Supp. 563, 565 (E.D. La. 1981) ("plaintiff's claim can be regarded only as one for a rescission of the sale and restitution of [sic] purchase price.   Such an action is founded in redhibition[.]"); La. Rev. Stat. § 9:2800.53(5) (defining "damages" to include economic loss *except* for amounts recoverable as "redhibition").

Moreover, courts have consistently construed claims for the *types* of remedies Plaintiffs seek – remediation, compensation for diminution of value, out of pocket expenses, nuisance abatement, and medical monitoring – however styled, as being restitutionary in nature, and are therefore equitable.   *See, e.g., Apex Oil Co., Inc. v. United States,* 208 F.Supp.2d 642, 653 (E.D. La. 2002) ("Courts recognize that CERCLA actions for recovery of response costs and RCRA actions for recovery of abatement costs are actions for equitable relief (equitable claims for restitution/reimbursement of funds expended to respond to health and environmental danger posed by hazardous substances)."); *U.S. v. Viking Resources, Inc.,* 607 F. Supp.2d 808, 829 (S.D. Tex. 2009) ("The court concludes that the recovery of removal costs under [Oil Pollution Act] constitutes an equitable remedy" … "removal costs and damages" are "essentially a form of restitution, which is an equitable remedy.") (internal citations and quotations omitted); *United States v. Ne. Pharm. & Chem. Co.,* 810 F.2d 726, 749 (8th Cir. 1986) (order of remediation and reimbursement of out of pocket expenses are equitable remedies).

Therefore, there can be no doubt that what Plaintiffs seek is equitable relief, entitling them to invoke this Court's equitable authority to compel Defendants to preserve certain assets: moneys obtained from Plaintiffs directly or indirectly related to Chinese

Manufactured Drywall, or funds under insurance policies covering Plaintiffs claims against Direct Defendants.

### C. The Order Is Not Burdensome On Defendants – And Is Outweighed By The Risk Of Irreparable Harm To Plaintiffs

This order should not be defeated by Defendants' mere contrition, or pleas that it is unfairly burdensome on any one Defendant who has not acted detrimentally *yet*. Plaintiffs are not required to rest on mere promises, the breach of which would be impossible to remedy if discovered only after the irreparable harm comes to pass. *See, cf. United States v. Oregon State Med. Soc.*, 343 U.S. 326 (1952) (advising lower courts "to beware of [defendant's] efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption.").

The order Plaintiffs seek can hardly be called "burdensome" on any Defendant under any circumstance. Ultimately, nothing in the injunction unreasonably prohibits any Defendant from otherwise investing, utilizing, or benefiting from those funds *unless* a Defendant approaches insolvency or files for bankruptcy, in which case the necessity for such an injunction would become alarmingly critical. *See cf. In re Delorean Motor Co.*, 755 F.2d at 1228 (orders enjoining dissipation of assets pending insolvency to safeguard potential creditors upheld as necessary to the functioning of the bankruptcy scheme).

### D. Plaintiffs Have A Demonstrated Likelihood of Success After The Trials in *Germano* and *Hernandez*

To the extent what Plaintiffs seek is injunctive relief, Plaintiffs can and have demonstrated a "reasonable probability of success" on the underlying merits. Wright &

Miller § 2948.3, p.187-88 (for injunctive relief, "plaintiff must present a prima facie case but need not show that he is certain to win.") (citations omitted).

As discussed above, Plaintiffs seek restitution for remediation of their homes, diminution of their homes' value, and their out of pocket expenses, among other things. Plaintiffs have alleged strict liability and strict products liability, unjust enrichment, and redhibition as bases for their claims against the Direct Defendants. These remedies are supported by strict liability claims, including strict products liability, redhibition, and unjust enrichment.

The Restatement (2d) of Torts § 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>
> (b) the user or consumer has not bought the product from nor entered into any contractual relationship with the seller.

Thus, strict liability attaches upon proof that the defendant, who regularly engages in the business of selling the product in question, sold the defective product directly or indirectly through the chain of distribution to the plaintiff.

Redhibition in Louisiana likewise imposes strict liability, without the need for evidence of defendant's intent or knowledge. *See Gomez v. St. Jude Medical Daig Division Inc*., 442 F.3d 919, 931 (5th Cir. 2006) (describing redhibition as "Louisiana's

equivalent to a breach of implied warranty" the breach of which is sufficient to rescind the sale); *Nelson Radiology Associates, LLC v. Integrity Medical Systems, Inc.*, 16 So.3d 1197, 1209 (La. App. 2009) (manufacturer of product with redhibitory defects is "conclusively presumed to have knowledge of defects in the object it produces," and is "deemed to be in bad faith in selling a defective product").  There is also no requirement of direct privity in redhibition.  *See Aucoin v. Southern Quality Homes, LLC*, 984 So.2d 685, 692 (La. 2008) ("Louisiana has aligned itself with the consumer-protection rule, by allowing a consumer without privity to recover" from "any seller in the chain of sales back to the primary manufacturer[.]")  (internal quotations and citations omitted).

Thus, for strict liability under any of these features, Plaintiffs need only show that one or more Defendants lay somewhere up the distribution chain, and "sold" the defective Chinese manufactured drywall that ended up in their homes.

Here, Plaintiffs have named Direct Defendants – drywall producers, distributors, suppliers, homebuilders, or installers – each of whom is within the supply chain of Chinese manufactured drywall that ended up in Plaintiffs' homes. *See* FN 1 above. Therefore, each defendant "sold" the drywall to each Plaintiff or class member "directly or indirectly."    And Plaintiffs, as the end consumers of the Chinese manufactured drywall, were the foreseeable users and suffered injury because the drywall was inherently dangerous to Plaintiffs and to Plaintiffs' property.  And there can be little doubt that the drywall was effectively useless when delivered to Plaintiffs and were therefore "redhibitory," entitling Plaintiffs to restitution.  La. Civ. Code. Ann. art. 2520.

The proof of Plaintiffs' right to their remedies was born out in the evidence presented in the bellwether trials in *Germano* and *Hernandez.  See* Findings of Fact &

Conclusions of Law, *Germano v. Taishan Gypsum Co.*, 2:90-md-02047 (E.D. La.), Case No. 09-6687, Document No. 2380, April 8, 2010 ("Germano"); *and* Findings of Fact & Conclusions of Law, *Hernandez v. Knauf Gips KG et al.*, 2:90-md-02047 (E.D. La.), Case No. 09-6050, Document No. 2713, April 27, 2010 ("Hernandez").  These trials were intended by the court to be representative, involved eight (8) affected homes, and the Court's findings of fact filled some 150 filed pages.  In each case this Court consistently found that Plaintiffs were entitled to remediation, restitution of out-of-pocket losses for things like rent, repairs that were paid for, and lost personal property, among other things. *See Germano* at pp. 69-104; *Hernandez* at pp. 36-43.

Moreover, Plaintiffs' threatened irreparable harm *prima facie* compared to the lack of any prejudice to Defendants, means that Plaintiffs' showing of probable success is sufficient.  "Although a showing that plaintiff will be more severely prejudiced by a denial of the injunction than defendant would be by its grant does not remove the need to show some probability of winning on the merits, it does lower the standard that must be met." Wright & Miller § 2948.3 p.197.

Accordingly, Plaintiffs' requested order should be granted.  The moneys held by Defendants – or by Defendants' insurers – should be set aside in order to satisfy a potential judgment in Plaintiffs' favor granting them remediation of their homes, for their out-of-pocket expenses, for the lost value of their homes as well as moneys sufficient to pay for medical monitoring for those who may need it.

II.   **THIS COURT SHOULD ISSUE THE ORDER UNDER THE ALL WRITS ACT IN AID OF ITS JURISDICTION IN ORDER TO PREVENT THE FURTHER FRACTURING OF THE LITIGATION**

Put simply, Defendants threaten to complicate this case even further by attempting piecemeal settlements with claimants.  This not only reduces the available funds to satisfy the rest of the claims in this case, it also creates the conditions for strategic behavior by defendants and plaintiffs alike who seek to negotiate for their own interests, if nothing else, out of fear.  Both of these manifestly undermine this Court's control and jurisdiction over it to the point where total resolution is made even more difficult.

This Court can put an end to that under the All Writs Act, 28 U.S.C. § 1651(a). The Act vests courts with the authority "to issue all writs necessary or appropriate in aid of their respective jurisdictions[.]" *Id.* The All Writs Act "provides courts with a procedural tool to enforce jurisdiction they have already derived from another source." *Brittingham v. Commissioner*, 451 F.2d 315, 317 (5th Cir.1971).

This Court's jurisdiction over the MDL proceedings is independently derived, at least in part, from Congress's and the JPML's desire to have "just and efficient conduct of [the] actions," to avoid piecemeal litigation, and to avoid inconsistent results.  *See* 28 U.S.C. § 1407(a) and (b) ("Such coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned by the judicial panel on multidistrict litigation.").  Indeed, such orders in aid of a court's MDL authority have been upheld to prevent precisely what is beginning to occur here.

For example, the Fifth Circuit upheld an MDL court's injunction preventing litigants from straying from the MDL forum – in that case, running to state court to evade

the MDL proceedings. In *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1335 (5th Cir. 1981) the Fifth Circuit rightly observed that complex MDL actions require district courts to be "flexible" in approaching resolution, and held that actions taken that "threaten[ed] the court's exercise of its proper jurisdiction and the effectuation of its judgments" could be enjoined.  The circuit court then agreed with the trial court that appellants' running to other jurisdiction to resolve their own actions interfered with the MDL court's exercise of jurisdiction. *Id.*

The principle was further expounded in *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220 (3d Cir. 2002).  The court held that "a federal court entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts, may appropriately enjoin state court proceedings in order to protect its jurisdiction."  *Id.* at 235.  When addressing the problem with resolving massive multidistrict complex cases, the court observed that

> It is in the nature of complex litigation that the parties often seek complicated, comprehensive settlements to resolve as many claims as possible in one proceeding. These cases are especially vulnerable to parallel state actions that may "frustrate the district court's efforts to craft a settlement in the multi-district litigation before it," thereby destroying the ability to achieve the benefits of consolidation.

*Id.* at 236.  The Court held that where the other actions threaten the ability of the court to resolve the MDL actions on a global scale, then an injunction is appropriate.

Although timing-wise, the courts in *Diet Drugs* and *Corrugated Container* did not issue their orders until there was a provisional class certification and partial settlement plan, given the stage at which this Case has progressed, the fact that that has not

happened yet in this case is immaterial to whether this Court has the *authority to issue the order*. It doubtlessly does.

MDL courts have issued orders reaching well-beyond their own proceedings in order to create the conditions where "everyone comes to the table at once" in aid of their jurisdiction over the "res" of the MDL proceedings and underlying actions. "[T]he jurisdiction of a multidistrict court is 'analogous to that of a court in an *in rem* action or in a school desegregation case, where it is intolerable to have conflicting" proceedings and outcomes." *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985). In *Baldwin-United* the class action proceeding was "so far advanced that it was the virtual equivalent of a res over which the district judge required full control." *Id.* The Second Circuit noted that injunctions would be authorized to prevent other proceedings that "frustrate the district court's efforts to craft a settlement". *Id.* The Eleventh Circuit has likewise held in *Battle v. Liberty National Life Ins. Co.,* 877 F.2d 877, 882 (11th Cir. 1989) that it "makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered." *See also In re Corrugated.*, 659 F.2d at 1335 (sustaining injunction in "complicated multidistrict class action" noting that it "has required a great deal of the district court's time and has necessitate it maintain a flexible approach in resolving the various claims of the many parties"); *Standard Microsystems Corp. v. Texas Instruments Inc.,* 916 F.2d 58, 60 (2d Cir. 1990) ("in aid of jurisdiction" exception would also authorize a stay when the "federal court's jurisdiction is *in rem* and the state court action may effectively deprive the federal court of the opportunity to adjudicate as to the *res* . . . .").

Plaintiffs requested relief falls within the core of this Court's authority.  Notably, Congress recognized that a federal court's injunctive power over state court proceedings under the All Writs Act came dangerously close to thwarting the federalist ideal undergirding our legal system.  It enacted the Anti-injunction act, 28 U.S.C. § 2283, which limited the All Writs Act's authority to enjoin a state court proceedings unless necessary to enforce the court's judgment or protect its jurisdiction.   Thus, Plaintiffs here are not invoking the full reach of this Court's authority.  Indeed, Plaintiffs ask this court for something far *less* dramatic than its injunctive powers over state court proceedings. *Accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ("The Anti-Injunction Act does not bar courts with jurisdiction over complex multidistrict litigation from issuing injunctions to protect the integrity of their rulings.").

As already discussed, there are thousands of litigants seeking restitution, the case has progressed for years costing millions of dollars, tens of thousands of man-hours by the parties' counsel and the Court.  Two matters have already progressed to trial with decisions uniformly favorable to the Plaintiffs.  Nearly 3500 docket entries have posted in this Lawsuit alone, in addition to the 6500 or so that have posted in the larger MDL.  Thus, this Court undoubtedly has jurisdiction over the "Res" of these proceedings. *Cf. In re Corrugated.*, 659 F.2d at 1335 (sustaining injunction in "complicated multidistrict class action" noting that it "has required a great deal of the district court's time and has necessitate it maintain a flexible approach in resolving the various claims of the many parties").

Yet a comprehensive settlement has been made difficult to forge given the fracturing that has already occurred. Allowing it to continue further undermines the

process of resolving these claims comprehensively.    Plaintiffs are attempting to expand the pilot program with the largest Direct Defendant, and were at one point very close to settlement with another.  Yet, the piecemeal nature of the actions complicates resolution; one settlement is already victim to the strategic behavior.  Plaintiffs are loathe to see a second one succumb as well.

Moreover, the dissipation of funds creates potential limited-fund scenarios, where multiple claims both within and without these MDL proceedings will be competing, this creating a similar situation to interpleader.  That threatens to prolong litigation by necessitating ever widening concentric circles of parties to be brought in.  It also threatens to prolong these proceedings needlessly.  Should this court wait until it gets even worse?  Plaintiffs respectfully posit that the Court should act now.

Accordingly, the orders should issue.

## III.   THE ORDER PREVENTING COMMUNICATIONS WITH ABSENT CLASS MEMBERS IS JUSTIFIED UNDER RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Plaintiffs' requested orders in part prohibit communications between Defendants and their counsel on the one hand, and absent class members on the other, a measure wholly supported by the jurisprudence underlying the court's Rule 23 authority.

Because of the potential for abuse, the Supreme Court has advised courts that any order regulating communications with putative class members should be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101.   In seeking an order limiting defendants' communications with putative Class Members, plaintiffs must show that a restricting order would guard against the likelihood of serious

abuses.  *Gulf Oil*, 452 U.S. at 104.  Plaintiffs do not have to show *actual* harm.  *See Jennifer v. Delaware Sold Waste Authority*, 1999 WL 117762 (D. Del. Feb. 25, 1999). Showing that the "interests embodied in Rule 23 might be hindered is a sufficient finding upon which to base an order limiting contacts."  *See Hampton Hardware, Inc. v. Cotter & Co., Inc*., 156 F.R.D. 630, 633 (N.D. Tex. 1994).

In such situations, courts, almost uniformly order limitations on such communications, if not curtailing the communications altogether, within constitutional parameters.  *In re School Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988); *In re Community Bank of Northern Virginia*,  418 F.3d 277 (3d Cir. 2005); *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478 (E.D. PA. 1995); *Haffer v. Temple University*, 115 F.R.D. 506, 512 (E.D. PA. 1987); *See Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985); *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 845 (2d Cir. 1980); *Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F.Supp. 720, 722-24 (W.D. Ky. ) *appeal dis'd w/o opinion*, 659 F.2d 1081 (6th Cir. 1981); *Tedesco v. Mishkin*, 629 F.Supp. 1474, 1484 (S.D.N.Y. 1986); *Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 376-377 (N.D. Ill. 1982); *Bower v. Bunker Hill Co.*, 689 F.Supp. 1032, 1033-34 (E.D. Wash. 1985).  This Court should do likewise.

Of particular concern here are communications by defendants with putative class members that are misleading as the status of pending class action and settlement potential there, as to their rights in the proposed settlement, or that induce class members to opt-out or not cooperate with class counsel.  *In re School Asbestos Litigation*, 842 F.2d at 682, *In re Community Bank of Northern Virginia*, 418 F.3d at 311-312; *Georgine*, 160 F.R.D. at 490; *Haffer*, 115 F.R.D. at 512-513; *Kleiner*, 751 F.2d at 1202; *Ralph*

*Oldsmobile,* 2001 WL 1035132 at *4-6; *Jennifer*, 1999 WL 117762 at *2; *Hampton Hardware*, 156 F.R.D. at 633, *Impervious Paint*, 508 F. Supp. at 721-723.

In *Impervious Paint Industries*, an antitrust class action where one defendant improperly contacted absent class members, the court noted that plaintiffs' counsel's relation to the absent class members is unusual during the period between the filing of the class action complaint and the opt-out period.  508 F.Supp. at 722.  The court found that both *class counsel* as well as *defense counsel* must treat absent class members as lead counsel's clients to avoid wrongfully "compromising the rights of the class members," and that "defendants' counsel must treat plaintiff class members as represented by counsel, and must conduct themselves in accordance with both sections" of the disciplinary rules.  *Id*. at 723 (emphasis added).   Thus, even before the class is certified, defense counsel are obligated to treat absent class members as represented by class counsel in accordance with the ethical restraints of the rules of the rules of professional conduct.  *Id.*

But it would not end with an order merely directing defense *counsel* not to act; that would be insufficient.  Plaintiffs are wary of *technical* compliance, but *substantive* abuse.  In *Kleiner*, the court order – issued to counsel as officers of the court, prohibited communications with absent class members to solicit opt-outs of the class in exchange for consideration, a process which could tend to be harassing and prejudicial to both the absent class members as well as to the plaintiffs. 751 F.2d at 1201.  The Eleventh circuit observed that under Rule 23(d)(2),

> Findings of fact and technical precision are unnecessary for such direction to be valid; rather the direction must only be (a) within the Court's power and (b) specific enough so that counsel may understand what conduct or action is required.

*Id.* When counsel disobeyed the order, they were disqualified by the district court, which was upheld by the circuit court. Plaintiffs submit that not only should defense's outside counsel be compelled to abstain from contacting class members, that directive should likewise apply to Defendants' in-house counsel, as well as to anyone working under the direct supervision of inside or outside counsel *Defendants should not be allowed to do indirectly what they are not allowed to directly do.*

And while Defendants will surely invoke the right of a party to settle directly with another party, such a blunt statement of the rule lacks the qualifications and conditionals applicable in this context. For example, in *Jennifer*, plaintiffs sought to enjoin defendants from communicating with putative class members where defendants were attempting to coerce putative class members not to participate in litigation and/or settle their claims by executing a release. 1999 WL 117762 at *2. The court held that there was potential that certain members of the putative class would be completely unaware of the litigation and by signing a release would waive their right to participate in the class action. *Id.* at *7. The court stated in pertinent part:

> While the defendant may seek to settle individual claims prior to certification, *the putative class member should know the essence of the claim they would be giving up in response to the solicitation* of DSWA. Those who sign the DSWA three-year contract may be completely unaware of this litigation and by signing the contract would waive their right to participate in the class action. Some potential plaintiffs may wish to participate in the action and, therefore, should be given the necessary information and opportunity to choose between signing the contract and participating in the differential pricing program or not participating, but have the right to ship waste out of the state.

<u>Id</u>. at *7. The same concerns apply in this litigation.

Accordingly, an Order protecting Class Members and otherwise protecting the integrity of the class action process is therefore appropriate.

## IV.   THIS COULD SHOULD ORDER A STAY OF ALL SETTLEMENTS AND PAYMENTS PENDING THE OUTCOME OF A COURT-ORDERED MEDIATION TO ALLOW THE PARTIES TO COLLABERATIVELY RESOLVE THE MATTERS RAISED HEREIN

In addition to the above, or in the alternative, Plaintiffs respectfully submit that the Court should order all parties to mediation within thirty (30) days with the court-appointed mediator, John Perry.  In the meantime, and as an incentive and inducement to all parties to timely participate and do so in good faith with an eye towards resolving the issues raised herein, the Court should freeze all settlement activity regarding any claims related to Chinese drywall – regardless of whether it is in its incipiency or about to be consummated, liquidated or paid.

Such an order would create the opportunity for all parties "to come to the table at once" to collectively resolve the organizational issues at once, thus preventing the inevitable logjam that is occurring, thwarting certain parties' attempts at strategic behavior to undermine the MDL and Plaintiffs' collective efforts, and perhaps even to permit the development of a comprehensive framework for global resolution.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the requested orders be issued at the Court's earliest possible convenience.

**Respectfully submitted**,

**Dated**: January 11, 2011.

/s/ Leonard A. Davis
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Matthew C. Gaughan (on the brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler (on the brief)
Mazin A. Sbaiti (on the brief)
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com
Msbaiti@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seith Parker
Parker, Waichman, Alonso LLP
27399 Riverview Center Blvd.
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@alterslaw.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 11th day of January, 2011.

/s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA 70113
PH: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhkc.com