UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------------x
IN RE: CHINESE MANUFACTURED          :   MDL No. 2047
DRYWALL PRODUCTS LIABILITY           :
LITIGATION                           :   SECTION: L
---------------------------------------------------------------x
THIS DOCUMENT RELATES TO:            :   JUDGE FALLON
                                     :
ALL CASES                            :   MAG. JUDGE WILKINSON
---------------------------------------------------------------x

**OPPOSITION OF THE KNAUF DEFENDANTS TO THE PSC'S MOTION TO STRIKE CONFIDENTIALITY DESIGNATIONS OF VARIOUS KNAUF ENTITIES**

The Knauf Defendants submit this opposition to the PSC's motion to strike the confidentiality designations of various Knauf entities.

**INTRODUCTION**

Pursuant to PTO 16, the Knauf Defendants have designated select portions of the deposition transcripts as "Confidential Information." The Knauf Defendants have refrained from blanket designations and have endeavored to ensure that their selection was consistent, appropriate, and in accord with Fed. R. Civ. P. 26(c) and governing case law. On October 20, 2010, in violation of PTO 16, which requires the PSC to specify the "specific material" whose confidentiality it seeks to challenge, the PSC issued a blanket objection to all of the confidentiality designations. When reminded that PTO 16 provides for objections to "specific material," the PSC identified a single excerpt of testimony which it believed had been wrongly designated. Although this designation was promptly reevaluated and withdrawn by the Knauf Defendants, the PSC nevertheless persisted in its blanket objection and declined to provide any more specific objections. By filing the motion before providing any other specific examples, the PSC violated the meet and confer procedure in PTO 16.

32082047.DOCX

Notwithstanding the PSC's failure to provide objections to specific designations, the Knauf Defendants -- long *before* the PSC's motion was filed -- undertook to review and resubmit all of the confidentiality designations submitted to date. Concomitantly, the Knauf Defendants defined a set of confidentiality standards to facilitate the resolution of future disputes and to ensure that confidentiality designations would henceforward be applied uniformly by multiple reviewers. This was the situation until January 5, 2011, when the PSC filed the instant motion to strike in which, for the first time (and without prior discussion), the PSC cited ten additional excerpts of deposition testimony (from thousands of pages of testimony) which it alleged to be wrongly designated as confidential.

As we demonstrate below, the PSC's motion is baseless, not only because the blanket objections issued by the PSC violate PTO 16, but also because the specific objections raised in the PSC's motion to strike are individually without merit. Moreover, the Knauf Defendants' confidentiality designations are consistent with the standards enunciated by the U.S. Supreme Court in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), which distinguishes between pretrial discovery materials, which are presumptively private, and trial records, which are traditionally available to the public.

## BACKGROUND

On September 25, 2009, this Court issued PTO 16, a protective order intended, among other things, to "expedite the flow of discovery material," "facilitate prompt resolution of disputes over confidentiality," and "protect material entitled to be kept confidential." *See* Pretrial Order 16 (attached as Exhibit "A"). To this end, PTO 16 provides that "[i]nformation disclosed at a deposition ... may be designated by the Producing Party as Confidential Information or Highly Confidential-Restricted Information by designating the portions of the

transcript in a letter to be served on the court reporter and all counsel..." *See* Pretrial Order 16, ¶ 12. PTO 16 further authorizes any party to "object to the propriety of the designation ... of *specific material* as Confidential or Highly Confidential-Restricted by serving a written objection upon the Producing Party's counsel." *See* Pretrial Order 16, ¶ 28 (emphasis added).

Under PTO 16, "Confidential Information" consists of "any information that the Producing Party believes in good faith constitutes, reflects, discloses, or contains information subject to protection under Fed. R. Civ. P. 26(c) or other applicable law." *See* Pretrial Order 16, ¶ 6. Fed. R. Civ. P. 26(c)(1)(G) protects not only "trade secret[s]" but also "other confidential research, development, or commercial information."

Pursuant to PTO 16, the Knauf Defendants designated specific, selected portions of the deposition transcripts of Oliver Froehlich, Jeffrey R. Brisley, Robert Claxton, Martin Stuermer, Mark Norris, Michael Anthony Robson, Isabel Knauf and Manfred Grundke as "Confidential Information." The Knauf Defendants made these confidentiality designations in good faith.

By email dated October 20, 2010 (attached as Exhibit "B"), the PSC objected in blanket fashion to all of the confidentiality designations submitted by the Knauf Defendants. In its written objection, the PSC failed to cite even a single specific confidentiality designation which it deemed objectionable.

By email dated October 28, 2010, Steven Glickstein, counsel for the Knauf defendants, responded to the PSC, explaining that the Knauf Defendants had designated deposition testimony as confidential based on their good faith determination that the designated testimony implicated confidential commercial information. Mr. Glickstein further reminded the PSC of its obligation under PTO 16 to identify the "specific material" to which it objected. Despite the PSC's failure to identify any such "specific material" in its written objection of October 20, 2010, the Knauf

Defendants committed to undertake a full review of the confidentiality designations submitted as of that date to ensure their propriety.

The PSC responded on October 29, 2010. In its response, the PSC contended that its blanket objection was sufficiently specific under PTO 16 (despite having failed to cite a single line of testimony) because, rather than objecting to "all depos or all documents," the PSC had instead objected to each deposition individually. Nevertheless, the PSC offered one specific example of testimony which it believed had been improperly designated, a 14-line excerpt from the deposition testimony of Oliver Froehlich.[1] This was -- and would remain -- the sole confidentiality designation to which the PSC objected with any specificity prior to the January 5, 2011 filing of this motion.

Notwithstanding the lack of specificity in the PSC's objections, in November 2010, the Knauf Defendants subjected all of their previously submitted confidentiality designations to thorough reevaluation. Mr. Glickstein personally reviewed the confidentiality designations for the depositions of Oliver Froehlich and Jeffrey R. Brisley and in the process developed a set of confidentiality guidelines to ensure that confidentiality designations would be applied to the deposition transcripts of various witnesses in a consistent and appropriate manner by multiple reviewers. The table below illustrates some of the non-exhaustive criteria used by the Knauf Defendants in designating confidential deposition testimony:

---

[1] This testimony, Froehlich Depo. 47:20-48:9, was not designated Confidential in the revised designations submitted by the Knauf Defendants to the PSC on November 24, 2010.

| Confidential | Not Confidential |
|---|---|
| Substance of internal company communications | Substance of public communications |
| Substance of non-public communications with customers and homebuilders | Substance of publicly filed declarations |
|  | Testimony regarding public court filings, affidavits, etc. |
| Substance of interactions / communications with government investigators | Existence of government investigation |
| Existence of communications on specific, sensitive matters | Existence of communications on general topics |
|  | General practices regarding communications |
| Specific business & marketing strategies | General business and financial practices |
| Details of finances and financial processes | Location / ownership of facilities |
| Details of manufacturing, design and quality control processes |  |
| Details of training programs and practices |  |
| Details of complaint processing procedures |  |
| Corporate organization & positions only if non-public | Corporate organization & positions if public |
|  | General job responsibilities of Knauf personnel |
|  | Identity of departmental managers |
|  | Identity of personnel responsible for setting business & marketing strategy |
| Testimony regarding the substance of confidential documents | To / From / Date of confidential documents |
|  | General descriptions of confidential documents |
|  | Testimony regarding whether a witness has seen a confidential document |

Applying the above guidelines, on November 24, 2010, at the conclusion of the review, the Knauf Defendants served revised confidentiality designations for the deposition testimony of Oliver Froehlich, Jeffrey R. Brisley, Robert Claxton and Martin Stuermer, and since that time have additionally served confidentiality designations for the depositions of Mark Norris, Michael Anthony Robson, Isabel Knauf and Manfred Grundke. At no time prior to this motion did the PSC offer any *specific* objections to the Knauf Defendants' confidentiality designations, as required by PTO 16.

The key issue on this motion is whether these guidelines are reasonable. If so, the PSC should be required to identify specific instances (if any) which they contend do not meet the guidelines. If not, the Court should provide guidance as to the appropriate guidelines and the Knauf Defendants will re-do their designations under the Court's guidelines.

## ARGUMENT

### I. CONFIDENTIAL DEPOSITION TESTIMONY IS ENTITLED TO PROTECTION UNDER PTO 16 AND RULE 26(C)

In its landmark ruling in *Seattle Times Co. v. Rhinehart*, 467 U.S. at 33, 36-37, the Supreme Court, noting the "unique character of the discovery process," drew a sharp distinction between pretrial discovery materials, over which the courts have "substantial latitude to fashion protective orders," and the more "public components of a civil trial." Acknowledging the "liberality of pretrial discovery" and its often "extensive intrusion into the affairs of both litigants and third parties," the Supreme Court in *Rhinehart* concluded that it was essential that the trial court enjoy "broad discretion ... to decide when a protective order is appropriate and what degree of protection is required." *Id.* at 30, 34, 36 (1984). Or, as the Fifth Circuit has stated, "[t]he results of pretrial discovery may be restricted from the public." *In re Gannett News Serv., Inc.*, 772 F.2d 113, 116 (5th Cir. 1985).

Following *Rhinehart*, courts have recognized that pretrial discovery materials -- even those filed with the court prior to trial --are subject to substantially greater protection from public disclosure than trial materials. *See U.S. v. $9,041,598.68*, 976 F.Supp.654, 658 (S.D.Tex. 1997) (distinguishing discovery materials from judicial records "to which the press may more easily gain access."); *Gannett*, 772 F.2d at 116 (distinguishing pretrial disclosures from disclosure of material that has been admitted into or offered into evidence). Such heightened protection against public disclosure is particularly appropriate to prevent the release of pretrial deposition

testimony, which is normally not a matter of public record. As the Supreme Court explained in *Seattle Times Co. v. Rhinehart*, "pretrial depositions and interrogatories are not public components of a civil trial." *Rhinehart*, 467 U.S. at 33. *Accord U.S. v. $9,041,598.68*, 976 F. Supp. 654, 657 (S.D.Tex. 1997) ("[A] deposition is not a proceeding that historically has been open to the public."); *U.S. v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery ... is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private.").

The fact that the public may be interested in the defendants' business activities is not a sufficient basis to make discovery materials public. As the Supreme Court has observed, even though there may be "public interest in knowing more" about a litigation, such public interest does not translate into an "unrestrained right to disseminate information that has been obtained through pretrial discovery." *Rhinehart*, 467 U.S. at 31. Indeed, restraints on disclosure are essential because pretrial discovery "has a significant potential for abuse" and "may seriously implicate privacy interests of litigants and third parties." *Id.* at 34-35. *See also In re Alexander Grant & Co.*, 820 F.2d 352, 355 (11th Cir. 1987) ("Although information exchanged in pretrial discovery would often generate public interest if publicly disseminated, private litigants [and third-party witnesses] have protectable privacy interests in confidential information disclosed through discovery."); *In re Zyprexa Injunction*, 474 F.Supp.2d 385, 414 (E.D.N.Y. 2007) ("Protective orders serve essential functions in civil adjudications, including the protection of the parties' privacy and property rights."), *aff'd*, 617 F.3d 186 (2d Cir. 2010). Accordingly, there is a substantial interest in preventing the release of pretrial discovery materials, for if "discovery information and discovery orders were readily available to the public and the press, the

consequences to the smooth functioning of the discovery process would be severe." *Anderson*, 799 F.2d at 1441. *See also Rhinehart*, 467 U.S. at 35.

The risk of public disclosure of pretrial discovery materials in this litigation is by no means hypothetical. Multiple internal documents and email communications obtained through pretrial discovery from the Knauf Defendants have already made their way into press and have been widely disseminated by such advocacy organizations as ProPublica.[2] Plaintiffs should try their case in the courtroom, not in the press through selective disclosure of non-public confidential business records.

Preventing the release to the press and to the public of confidential pretrial discovery material will in no way prejudice PSC's trial preparation efforts. Indeed, discovery under the federal rules is provided not for the purposes of public information, but "for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Rhinehart*, 467 U.S. at 34. *See also U.S. v. $9,041,598.68*, 976 F. Supp. 654, 658 (S.D.Tex. 1997) ("[P]ublic access to the discovery process does not play a significant role in the administration of justice."). This Court's protective order already amply accommodates the legitimate goals of pretrial discovery by identifying an expansive array of parties to whom confidential discovery materials may be disclosed in preparation for trial and/or settlement. *See* Pretrial Order 16, ¶ 13. Of course, a different standard may apply when and if there is a public trial and documents are entered into evidence. But we are not at that point now.

---

[2] *See, e.g.*, Joaquin Sapien & Aaron Kessler, *Tainted Chinese Drywall Concerns Went Unreported for Two Years*, ProPublica, May 29, 2010, http://www.propublica.org/article/tainted-chinese-drywall-concerns-went-unreported-for-two-years; Christian Salewski, *Der China-Kracher*, Capital, Jan. 2011, at 78-86. The Knauf Defendants are not suggesting that the particular documents cited in these publications were obtained through improper means; the Knauf Defendants inadvertently failed to designate

## II. THE KNAUF DEFENDANTS' CONFIDENTIALITY DESIGNATIONS ARE CONSISTENT WITH PTO 16, RULE 26(C), AND APPLICABLE CASE LAW

As set forth above, pursuant to PTO 16, the Knauf Defendants developed a set of confidentiality guidelines -- set forth at pp. 4-5 above -- to ensure that their confidentiality designations would be applied appropriately and uniformly by multiple reviewers. The Knauf Defendants applied these confidentiality criteria in good faith, and these criteria are fully consistent with PTO 16, Fed. R. Civ. P. 26(c), and relevant case law. In particular, the guidelines used by the Knauf Defendants are in accord with rulings within the Fifth Circuit and beyond which hold that commercial or business-related discovery material may constitute confidential information subject to protection, including financial data, training materials, internal communications, non-public customer communications, and company policies and procedures. *See, e.g., May v. FedEx Freight Se., Inc.*, Civil Action No. 07-660-B-M2, 2009 WL 1605211, at *3 (M.D.La. June 8, 2009) (holding that "confidential" information covered under a protective order should include "(A) Any proprietary, commercial or business information; (B) Any documents or information regarding investigations or records of any employee complaints and/or investigations; (C) Any proprietary employee training materials, documents and/or information; (D) Any proprietary written policies or procedures; and (E) Any documents and/or information concerning [the defendant's] (or a related entity's) current or former employees)"; *Clemons v. Dollar Gen. Corp.*, Civil Action No. 2:09-CV-64, 2010 WL 1994809, at *7-8 (N.D.Miss. May 18, 2010) (holding that defendant's internal communications -- including job descriptions, training manuals, policies, job specifications and requirements -- were confidential information subject to protective order); *In re Zyprexa Injunction*, 474 F.Supp.2d at 404 (noting

---

certain documents as confidential. However, this article and others like it illustrate the real risk of a trial in the media should there be a mass de-designation of confidential materials.

that "trade secrets, confidential preliminary research, development ideas, commercial information, product planning, and employee training techniques" are among the materials "protectable under Rule 26(c)"), *aff'd*, 617 F.3d 186 (2d Cir. 2010); *Vesta Corset Co., Inc. v. Carmen Founds., Inc.*, No. 97 CIV. 5139 (WHP), 1999 WL 13257 (S.D.N.Y. Jan. 13, 1999) (granting protective order limiting dissemination of information regarding "pricing, profits, costs, overhead, manufacturing specifications, customer lists, price structure, and dealings with a common customer"); *Rhinehart*, 467 U.S. at 27 (affirming protective order barring the dissemination of information pertaining to the "financial affairs of the various plaintiffs").

The volume of confidentiality designations to date is a function of the nature of the deposition questioning, which has dwelt heavily on internal company communications, customer interactions, business dealings and financial transactions. The designation of such testimony as confidential is not, as the PSC contends, overbroad. Indeed, this court has endorsed far more sweeping confidentiality designations than the line-by-line designations at issue here. *See In re Application of Time, Inc.*, No. MISC.A 99-2916, 1999 WL 1059744, at *1 (E.D.La. Nov. 22, 1999) (Wilkinson, Mag. J.) (issuing protective order which proactively designated "*all* information obtained" at deposition as confidential, "without the necessity of confidentiality designations by any party") (emphasis added).

Moreover, the specific confidentiality designations cited as objectionable by the PSC in its motion to strike do not in any way suggest that the Knauf Defendants have been applying their confidentiality standards in bad faith. Of the ten excerpts of testimony which the PSC alleges were improperly designated, five were culled from testimony reflecting or reciting the contents of internal company communications which were themselves marked

"CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER."[3] Governing case law affirms the confidentiality of internal company communications as a general matter. *See Clemons*, 2010 WL 1994809, at *7-8. A fortiori, testimony implicating the substance of internal company communications is properly designated confidential where the internal communications themselves have been so designated.

The PSC further objects to the designation of a sixth excerpt of testimony[4] -- a discussion of internal efforts to provide assistance to a customer of Knauf Insulation GmbH -- on the specious grounds that the testimony was elicited by counsel for the Knauf Defendants. *See* Memorandum in Support of Motion to Strike Confidentiality Designations of Various Knauf Entities at 9 [Rec. Doc. No. 6813] (hereinafter, "Motion to Strike"). The PSC offers no support -- either from PTO 16 or from applicable case law -- in support of the novel conclusion that the Knauf Defendants may not elicit and rely upon confidential information in their own defense.

The remaining four excerpts of testimony cited by the PSC relate to internal discussions by the Knauf Defendants and/or to the Knauf Defendants' internal business policies or practices.[5]

---

[3] *See* Claxton 230:7-231:14 (testimony regarding Knauf Insulation Ex. 49, a confidential internal email from Baldwin Knauf to Tony Robson); Brisley 327:7-23 (testimony regarding Knauf Insulation Ex. 33, a confidential internal email communication between Jeffrey R. Brisley and Kurt Heider of Knauf Insulation GmbH); Stuermer 118:13-119:4 (testimony regarding Stuermer Ex. 10, an internal sales training document entitled "How to Sell Knauf Products," mischaracterized by the PSC as Knauf "promotional literature"); Froehlich 148:23-150:5 (testimony regarding Stuermer Ex. 16, a confidential internal memorandum from Barry Topple); Claxton 271:21-273:12 (testimony regarding the details of Knauf Insulation Ex. 46C, a commercial general liability policy held by Knauf Insulation GmbH).

[4] *See* Brisley 507:18-509:4 (testimony regarding Knauf Insulation Ex. 23, a communication regarding rendering of assistance to a customer of Knauf Insulation GmbH).

[5] *See* Claxton 162:9-21 (testimony regarding the drafting of a Knauf Insulation GmbH press release); Froehlich 198:20-199:1 (testimony regarding sales meetings to discuss the Chinese drywall claims); Froehlich 186:15-19 (testimony regarding the employment agreement of Oliver Froehlich); Stuermer 696:20-24 (testimony regarding personnel involved in the investigation of the Chinese drywall claims).

All of this testimony falls broadly within the categories of information that have been held confidential by courts both within and without the Fifth Circuit. *See*, *May*, 2009 WL 1605211, at *3; *Clemons*, 2010 WL 1994809, at *7-8. Thus, the PSC's own selection of disputed designations, gathered from thousands of pages of deposition testimony, provide no support for the PSC's motion to strike nor for its allegation that the Knauf Defendants' confidentiality designations were overbroad or made in bad faith.

The PSC's objection to the designation of "attorney colloquy and objections" by the Knauf Defendants is likewise without merit and relies on partial excerpts taken out of context from larger passages of designated testimony. *See* Motion to Strike, pp.3-5. Where attorney colloquy and objections occurred within a sequence of otherwise confidential deposition testimony, the Knauf Defendants properly designated the full passage of testimony as confidential. The two excerpts of testimony cited by the PSC -- Claxton 162:9-21 and Claxton 230:7-231:14 -- actually illustrate this point, for both of these excerpts were drawn from larger passages of appropriately designated testimony: Claxton 162:9-21 is the conclusion of a section of confidential testimony regarding the drafting of a Knauf Insulation GmbH press release (Claxton 161:7-162:21), while Claxton 230:7-231:14 is embedded within a passage of continuous testimony regarding the substance of a confidential internal communication. (Claxton 228:23-232:17). It would be nothing but make-work to require the colloquy to be segregated from the confidential testimony in which it occurs.

In any event, the propriety of the Knauf Defendants' confidentiality designations will ultimately hinge on the overall propriety of the Knauf Defendants' confidentiality guidelines. If these guidelines are approved by the Court, then the remaining disputes over the specific application of these guidelines will be best resolved through the meet and confer process

envisaged by PTO 16, using the guidelines as a baseline for discussion. If, on the other hand, the guidelines are not acceptable to the Court, then a thorough review and resubmission of the existing confidentiality designations may become necessary, making adjudication of specific designations at this stage premature. For these reasons, the Knauf Defendants submit that the principal issue presented to the Court by the PSC's motion to strike is the resolution of the PSC's objections (if any) to the Knauf Defendants' confidentiality designation guidelines.

### III. THE PSC'S BLANKET OBJECTION IS IN VIOLATION OF THIS COURT'S PROTECTIVE ORDER

As indicated above, PTO 16 does not contemplate the sort of blanket objection submitted by the PSC. To the contrary, Paragraph 28 of PTO 16 expressly authorizes objections only to the "propriety of the designation (or re-designation) of *specific material* as Confidential or Highly Confidential-Restricted." (Emphasis added). Nevertheless, in its written objection dated October 20, 2010, the PSC failed to identify even a single instance of "specific material" that it believed had been improperly designated.

In the months between October 20, 2010 (when the PSC submitted its first written objection) and January 5, 2011 (when the PSC served its motion to strike), the PSC identified only a single, 14-line excerpt of deposition testimony to the designation of which it specifically objected. Significantly, when this disputed confidentiality designation was brought to the attention of the Knauf Defendants, it was promptly reviewed, reevaluated and withdrawn.

The PSC's motion adverts to "multiple meet and confers" at which the "PSC and counsel for Knauf have attempted to resolve these confidentiality designation issues." *See* Motion to Strike at 12, n.6. However, on not one of these occasions did the PSC make any specific objections to additional confidentiality designations, nor did it direct the Knauf Defendants' attention to *any* of the confidentiality designations which it cites as objectionable in its motion.

Clearly, the "meet and confer" process contemplated by PTO 16 cannot operate effectively where, as here, the Objecting Party keeps its specific objections secret until they are revealed within the body of a motion to strike.

Given the PSC's persistent failure to specify the confidentiality designations which it deemed objectionable, the PSC's current insistence that the Knauf Defendants should have provided individual justifications for every one of their confidentiality designations is not well taken. As the Middle District of Louisiana has noted, "[i]t is unnecessary and would be overly burdensome to require the production of a written explanation each time a document or other information is claimed to be confidential." *May v. FedEx Se., Inc.*, Civil Action No. 07-660-B-M2, 2009 WL 1605211, at *3 (M.D.La. 2009). Such an unnecessary burden would be the inevitable result if the PSC were able, by the simple expedient of challenging the Knauf Defendants' confidentiality designations *en masse*, to oblige the Knauf Defendants to provide an individual explanation for every confidentiality designation made to date.

The PSC's tactics threaten to undermine one of the principal stated purposes of this Court's PTO 16, which is to "expedite the flow of discovery material" and "facilitate prompt resolution of disputes over confidentiality." Protective orders such as PTO 16 are intended to expedite litigation by preempting document-by-document (or line-by-line) disputes over the confidentiality of discovery materials. *See, e.g., In re Alexander Grant & Co.*, 820 F.2d 352, 356 (11th Cir. 1987) (Protective orders are "designed to encourage and simplify the exchanging of large numbers of documents, volumes of records and extensive files without concern of improper disclosure."). *See also* Manual for Complex Litig., § 11.432 (4th ed.) (endorsing the use of "umbrella" protective orders in order to "expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication" in litigations where the "volume of

potentially protected materials is large."). The PSC's practice of issuing non-specific, blanket objections to the Knauf Defendants' confidentiality designations -- while at the same time demanding that the Knauf Defendants furnish individual explanations for every designation -- can only serve to frustrate and prolong an already protracted discovery process.

The Knauf Defendants remain committed to addressing and resolving specific disputes over confidentiality through the meet and confer process contemplated by PTO 16. The PSC, however, has consistently failed to specify its objections. Because the PSC has failed to provide the specific objections required under PTO 16, ¶ 28, and because the meet and confer efforts contemplated by the protective order have not been given a fair chance of success, the PSC's motion to strike is premature and should be denied on these grounds alone.

## CONCLUSION

For the reasons set forth above, this Court should deny the PSC's motion to strike the confidentiality designations of various Knauf entities.

Dated: January 13, 2011         Respectfully submitted,

<div style="margin-left: 3em;">

By: /s/ Kyle A. Spaulding
STEVEN GLICKSTEIN (NY Bar No. 1038157)
JAY P. MAYESH (NY Bar No. 1081603)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8485
Facsimile: (212) 836-6485
Email: sglickstein@kayescholer.com

- AND -

MILES P. CLEMENTS (#4184)
PETER E. SPERLING (#17812)
KERRY J. MILLER (#24562)
KYLE A. SPAULDING (#29000)
PAUL C. THIBODEAUX (#29446)
FRILOT L.L.C.
1100 Poydras Street
Suite 3700
New Orleans, LA 70163
Telephone: (504) 599-8194
Facsimile: (504) 599-8145
Email: kmiller@frilot.com

Counsel for Defendants Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Materials Products Co., Ltd and Knauf Gips KG

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition of the Knauf Defendants to the PSC's Motion to Strike Confidentiality Designations of Various Knauf Entities has been served upon Plaintiffs' Liaison Counsel by email and by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, on this 13th day of January, 2011.

/s/ Kyle A. Spaulding

32082047.DOCX