UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | * | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JOSEPH C. WILKINSON, JR. |
| | * | |

* * * * * * * * * * * * * * ** * * * * * ** * * * * * ** * * *

**THIS DOCUMENT RELATES TO ALL CASES**

**MEMORANDUM IN SUPPORT OF DEFENDANTS TAISHAN GYPSUM CO. LTD
AND TAIAN TAISHAN PLASTERBOARD CO., LTD'S
<u>MOTION FOR A PROTECTIVE ORDER</u>**

Defendants Taishan Gypsum Co. Ltd. ("TG") and Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively, the "Defendants"), through undersigned counsel, submit this memorandum of law in support of their motion pursuant to Rule 26(c) of the Federal Rules of Civil Procedure: (1) limiting the scope of Rule 30(b)(6) depositions of TG and TTP to matters that directly relate to whether they have the requisite minimum contacts for this Court to exercise jurisdiction over them, and protecting them from unnecessary and burdensome discovery related to "alter ego" and "veil piercing" issues and (2) setting the dates of the Rule 30(b)(6) depositions of TG and TTP for April 5 and 6, 2011, respectively.

<u>Introduction</u>

As the Court is aware, TG has moved to dismiss the *Germano* and *Mitchell* actions on the ground of lack of personal jurisdiction. At the Court's direction, the parties are engaged in discovery related to the question of personal jurisdiction over TG, prior to the completion of briefing on the motions. With regard to personal jurisdiction, Plaintiffs allege in substance that

Defendants are subject to jurisdiction because they manufactured or sold drywall that eventually was installed in their homes.  Accordingly, jurisdictional discovery should be centered around the nature and extent of Defendants' contacts with the U.S. in connection with their manufacture or sale of drywall.  TG and TTP are willingly providing broad jurisdictional discovery.  There should be no doubt that TG and TTP are producing all of the information and documents they have concerning their sales and potential sales of drywall made to U.S. dimensions.  This includes all documents reflecting their communications with U.S. companies or their representatives in China or to Chinese trading companies with respect to such sales or potential sales.  Defendants have also proposed reasonable dates in early April 2011 for their depositions that will allow all interested parties in cases where Defendants have been named and served to participate in the depositions.

Plaintiffs, without justification, are attempting to expand the proper scope of jurisdictional discovery.  Plaintiffs have not alleged "alter ego" or "piercing the veil" as a basis for jurisdiction over TG or TTP or any facts which could sustain such theories.  They nevertheless seek to engage in a "fishing expedition" concerning Defendants' relationship with the Chinese government and some forty other entities.  The other entities about which Plaintiffs seek discovery include TG's parent and upstream affiliates as well as numerous TG subsidiaries that never manufactured or sold any drywall for export to the U.S. and had no contacts with the U.S. whatsoever.  The Court should not permit this abusive and unnecessary discovery which has nothing to do with TG's motions to dismiss.

Accordingly, for the reasons explained in detail below, Defendants respectfully request that the Court grant their motion for a protective order quashing Plaintiffs Rule 30(b)(6) notices

of the depositions of TG and TTP regarding the topics listed in Exhibit A to their motion and setting the dates of the depositions of TG and TTP for April 5 and 6, 2011, respectively.

## PROCEDURAL HISTORY

### A.     The Complaints

TG has been served with the summons and complaint in five actions that are pending before this Court as part of the pending multidistrict litigation: *Gross et al. v. Knauf Gips KG et al.*, No. 09-6690 and No. 09-MD-2047 (E.D. La.) ("*Gross*"); *Germano et al. v. Taishan Gypsum Co., Ltd. et al.*, No. 09-CV-6687 (E.D. Va.) and No. 09-MD-2047 (E.D. La.) ("*Germano*")[1]; *The Mitchell Co., Inc. et al. v. Knauf Gips KG et al.*, No. 09-CV-89 (N.D. Fla.) and No. 09-CV-4115 and No. 09-MD-2047 (E.D. La.) ("*Mitchell*");[2] *Steiner, et al. v. Beijing New Building Material, PLC, et al.*, No. 09-CV-81259 (S.D. Fla.) ("*Steiner*"); and *State of Louisiana ex rel. Caldwell v. Knauf Gips KG*, No. 10-392 (Civ. Ct. La.) ("*Caldwell*").[3]  TTP has been named as a defendant and served in only one action—*Gross*—that is before this Court.  Rec. Doc. No. 366.

### B.     TG's Jurisdictional Motions

This motion has its genesis in TG's assertion that it is not subject to personal jurisdiction in the *Germano* and *Mitchell* actions and for that reason, among others, this Court should vacate the defaults entered in those actions and dismiss the actions for lack of personal jurisdiction.  Rec.

---

[1] The *Germano* Plaintiffs filed a Second Amended Complaint on November 18, 2009 but did not serve it on TG. Rec. Doc. No. 470.  Nevertheless, a default judgment against TG was entered in favor of certain intervening Plaintiffs in *Germano* on May 11, 2010.  Rec. Doc. No. 3013.

[2] On July 7, 2009, the *Mitchell* Plaintiffs filed an Amended Complaint but did not serve it on TG Rec. Doc. No. 42. ("Amended Complaint" or "Am. Compl.").  A preliminary default was entered against TG in *Mitchell* on September 23, 2009.  Rec. Doc. No. 277.

[3] Although TG was served in *Steiner* and *Caldwell*, this motion will not discuss the jurisdictional allegations in those complaints.  *Steiner* has asserted a claim in the matter of *Wiltz et al. v. Beijing New Building Materials Public Limited Co., et al.*, No. 10-CV-361 and 09-MD-2047 (E.D. La. filed Feb. 10, 2010) ("*Wiltz*"), and thus their complaint is no longer operative.  The *Caldwell* action was removed to this court, but a motion to remand is now pending.  In any case, the jurisdictional allegations in those complaints are similar to those asserted in *Germano*, except that they deal with drywall allegedly sold to Florida in the case of *Steiner* (Steiner Complaint at ¶¶ 14, 15) and Louisiana in the case of *Caldwell* Petition at ¶¶ 24-26*.*

Doc. Nos. 5515 and 5583.  TG has also moved to dismiss the complaints and/or vacate the default judgment in three state court actions in which it had been served, *Alexander*, *Lennar* and *Southern Homes*.[4]

### C.    Plaintiffs' Request for Discovery from TG and TTP

On September 24, 2010, Plaintiffs served Interrogatories and Document Requests on the Defendants.  On October 6, 2010, Plaintiffs filed and served the Notices of 30(b)(6) Depositions upon TG and TTP for December 1 and 2, 2010 respectively.[5]

On October 14, 2010, both TG and TTP served their Manufacturer's Profile Forms ("MPF's").  On that same day, at the monthly status conference, the Court ruled that Plaintiffs could obtain discovery related to the issue of whether the Court had jurisdiction over Defendants, expressly noting that "I think the plaintiffs ought to have a right to discover whether or not they have jurisdiction over [TG]."  Spano Dec. ¶ 4, Exh. C at 24:4-24:5 ("Transcript of Oct. 14, 2010 Status Conf.").

On October 25, 2010, Defendants and the PSC agreed to postpone further briefing in relation to TG's motion to vacate the Default Judgment entered in *Germano* and dismiss the action on the grounds of lack of personal jurisdiction until the parties were able to complete the jurisdictional discovery authorized by the Court, with the exception of Plaintiffs' opposition in the *Germano* action, which was to be filed on October 28, 2010.  Spano Dec. ¶ 5, Exh. D.  On October 28, 2010, Plaintiffs in *Germano* filed "PSC's Response in Opposition to Taishan's Motion Pursuant to Rules 12(B)(2), 55(C), 60(B) and 62.1 to Vacate the Default Judgment,

---

[4]      *See Alexander, et al. v. Taishan Gypsum Co., Ltd., et al.*, No. 09-CV-900356 (Ala. Cir. Ct.) ("*Alexander*"); *Lennar, et al. v. Knauf Gips KG, et al.*, No. 09-CV-7901 (11th Cir. Fla.) ("*Lennar*"); *Southern Homes, LLC, et al. v. Interior/Exterior Bldg. Supply, LP, et al.*, No. 2009-6564 (Civ. Dist. Ct. La.) ("*Southern Homes*").

[5]      The deposition notices are attached as Exhibits A and B to the accompanying Declaration of Frank T. Spano ("Spano Dec."), ¶¶ 2-3.

Dismiss This Action and to Seek Remand from the Court of Appeals."  Rec. Doc. No. 6245.

On November 5, 2010, Defendants and the PSC held a telephone "meet and confer." Spano Dec. ¶ 6, Exh. E.  During that conference, counsel agreed that TG and TTP would begin a rolling production of documents in response to Plaintiffs' document requests in mid-December that would be substantially completed by the end of January 2011.  *Id.*  The parties also agreed that the depositions would be held in Hong Kong, and tentatively agreed that the Rule 30(b)(6) depositions would begin no earlier than the end of February or early March 2011.  *Id.*  Finally, during the November 5, 2010 conference PSC counsel assured TG and TTP that it would coordinate deposition scheduling with plaintiffs' counsel in the state court actions to avoid duplication.  *Id.* ¶ 7, Exh. E.

Consistent with the parties' agreement, on December 17, 2010, TG and TTP each served their "Objections and Responses to Plaintiffs' First Set of Interrogatories Concerning Jurisdictional Issues" and "Objections and Responses to Plaintiff's First Request for Production of Documents Concerning Jurisdictional Issues" (collectively, "Discovery Responses") along with the first tranche of documents in accordance with the production schedule.[6]  *Id.* ¶¶ 8-12, Exhs. F, G, H, I and J.  In their Discovery Responses, TG and TTP agreed to provide broad jurisdictional discovery.  *Id.*  TG and TTP are producing all available documents concerning their sales or potential sales of drywall made to U.S. dimensions.  *Id.* ¶ 13.  This includes all documents related to their communications with U.S. companies or their representatives in China or to Chinese trading companies with respect to such sales or potential sales.  *Id.*  As of January

---

[6] On that same day, TG served objections and responses to discovery propounded in two state actions.  In *Alexander*, TG served "Responses and Objections to Plaintiffs' Interrogatories and Request for Production" and in *Lennar*, TG served Objections and Responses to Plaintiffs' First Set of Interrogatories regarding Personal Jurisdiction" and Objections and Responses to Plaintiffs' First Request for Production of Documents Regarding Personal Jurisdiction. Counsel for *Southern Homes* has agreed to accept the discovery provided in these MDL proceedings in lieu of other discovery.  Plaintiffs in all state actions in which TG has been served have agreed to depose TG only in the context of jurisdictional discovery in those actions, and will participate in the PSC depositions accordingly.

14, 2011, TG and TTP have produced almost 20,000 pages of responsive documents.  *Id.* ¶ 14.

In their Discovery Responses, TG and TTP objected to Plaintiffs' interrogatories and document requests insofar as they sought discovery concerning their relationship with their upstream affiliates, the Chinese government, or numerous TG subsidiaries that did not manufacture or sell drywall for export to the U.S.  *Id.* ¶¶ 8-12, Exhs. F-J.

By letter dated December 27, 2010, Plaintiffs raised questions concerning certain of TG and TTP's objections to their document requests.  *Id.* ¶ 15, Exh. K.  On January 4, 2011, the parties met and conferred for a second time to discuss the scope of jurisdictional discovery and the deposition schedule.  *Id.* ¶ 16.  Counsel for plaintiffs in the *Lennar* Florida state court action participated in the conference.  No other plaintiffs' counsel to the state court actions participated in the conference.  *Id.*

During the call, the PSC demanded that the Rule 30(b)(6) depositions of TG and TTP proceed on February 14, 2011, the first day of business following the Chinese New Year's holiday.[7]  *Id.* ¶ 17, Exh. L.  Defendants informed the PSC that holding their depositions on those dates would be impractical and prejudicial.  *Id.*  Defendants explained that their document production would not be completed until the end of January and if the depositions proceeded immediately after the Chinese New Year, counsel would not have sufficient time to meet with deponents.  *Id.* ¶ 18.  Defendants also informed the PSC that defense counsel would be unavailable to prepare for and defend the depositions in March 2011 due to other professional and personal commitments.  *Id.* ¶ 19.

The parties also discussed TG and TTP's continuing objections to certain interrogatories and document requests that Plaintiffs had served seeking discovery concerning their relationship

---

[7] Various travel and informational websites agree that travel during the Chinese New Year (beginning on February 3, 2011 and lasting until mid-February) is expensive and extremely difficult.  *See* Spano Dec. ¶ 17, Exh. L.

with the Chinese government and forty other entities.  *Id.* ¶ 20.  The PSC stated that Plaintiffs "agreed to disagree" regarding that discovery.  *Id.*  The PSC further indicated that Plaintiffs would not move to compel answers to the disputed interrogatories and document requests, and but would proceed to take Defendants' depositions without resolving the dispute over the scope of discovery and without receiving any documents that Defendants deemed to be outside the proper scope of jurisdictional discovery.  *Id.* ¶ 21.  The PSC further indicated that it would not agree to limit the Rule 30(b)(6) deposition topics to matters directly related to Defendants' jurisdictional contacts with the U.S.  *Id.* ¶ 22.

On January 7, 2011, TG and TTP wrote to counsel in all of the state and federal actions in which they have been served.  *Id.* ¶ 23, Exh. M.  TG and TTP proposed scheduling their Rule 30(b)(6) depositions all during the week of April 4, 2011 in Hong Kong, provided that Defendants' dispute with the PSC regarding the scope of jurisdictional discovery is resolved.  *Id.* ¶ 24, Exh. M.  To date, no party in other actions in which TG or TTP have been named and properly served has communicated an objection to the proposed week of April 4, 2011 deposition period.  *Id.* ¶ 25.

On January 12, 2011, the PSC moved to compel Defendants' depositions in February, to compel further answers to interrogatories and additional document production requests.  Rec. Doc. No. 6964.  TG and TTP will respond separately to that motion, which seeks the same unnecessary and overbroad discovery that Defendants seek protection against in this motion. Spano Dec. ¶ 26.

## PLAINTIFFS' ALLEGATIONS

### A.    Allegations That Defendants Are Subject to Personal Jurisdiction

As shown below, Plaintiffs' pleadings allege that Defendants are subject to jurisdiction in certain U.S. states because Defendants inserted drywall into the stream of commerce, and

ultimately caused damage to Plaintiffs' homes.  None of their pleadings allege that Defendants

are subject to jurisdiction because the activities of upstream affiliates, the Chinese government,

or TG's subsidiaries should be imputed to Defendants for jurisdictional purposes.  Moreover,

there are no facts alleged which provide a basis for imputing the jurisdictional contacts of any

other entity to TG or TTP.  Plaintiffs make the following allegations relevant to personal

jurisdiction in *Germano*, *Mitchell*, and *Gross*:

### i. *Germano*

In the Germano Complaint the only allegations relevant to personal jurisdiction are:

Defendant Taishan is a Chinese corporation doing business in the Commonwealth of Virginia with a principal place of business located at Dawenkou, Daiyue District, Tai'an City, Shandong Province, China 271026.  Rec. Doc. No. 1-1 at ¶ 9; and

Defendant Taishan designed, manufactured, exported, distributed, delivered, supplied, inspected, marketed and/or sold defective drywall at issue in this case. *Id.* at ¶ 10.

As a direct and proximate result of Defendants'[8] actions and omissions, Plaintiffs and the Class Members' homes, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of . . . Defendants' drywall.  *Id.* at ¶ 26.

Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, sold and/or installed defective drywall as a direct and proximate result of Defendants' actions and omissions, Plaintiffs and the Class Members' homes, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of . . . Defendants' drywall.  *Id.* at ¶ 27.[9]

---

[8] The named Defendants in *Germano* do <u>not</u> include any of the TG affiliates about whom Plaintiffs seek discovery.

[9] Plaintiffs subsequently filed an attorney affidavit in *Germano* that described the two isolated sales of drywall that TG made to Venture Supply in 2005 and 2006, respectively.  Affidavit of Russ M. Herman in Support of the PSC's Evidentiary Presentation Regarding Taishan Gypsum Co., Ltd, Rec. Doc. No. 6245-1 ¶¶ 5-14 (the "Herman Aff.").[9] Additionally, in their opposition brief to TG's motion to dismiss the *Germano* action, Plaintiffs further alleged, "Plainly, Taishan placed its drywall into the United States stream of commerce and sold its drywall to a company in Norfolk, Virginia for distribution there." Rec. Doc. No. 6245 at 25-26.

### ii. *Mitchell*

In *Mitchell,* Plaintiffs allege that TG is subject to jurisdiction based on its activities in the

State of Florida:

> Defendant Taishan is a Chinese corporation doing business in the State of Florida.
> Taishan is involved in the manufacturing and sale of gypsum drywall.   Upon
> information and belief, Taishan manufactured, sold, distributed, marketed and
> placed within the stream of commerce gypsum drywall with the expectation that
> the drywall would be purchased by thousands of consumers, if not more, within
> the States of Alabama, Mississippi, Louisiana, Georgia, and Florida.  Taishan has
> continuously and systematically distributed and sold drywall to numerous
> purchasers in the State of Florida and Taishan's drywall is installed in numerous
> homes in Florida.  As discussed more fully below, and upon information and
> belief, Taishan manufactured and sold to certain suppliers in the States of
> Alabama, Mississippi, Louisiana, Georgia, and Florida, defective gypsum drywall
> that was installed in homes being built by Mitchell and Class members, thereby
> causing substantial damage.  Taishan purposefully availed itself of the jurisdiction
> of this Court by selling and shipping substantial quantities of drywall into the
> State of Florida. Rec. Doc. No. 1 at ¶ 8.

> This Court has personal jurisdiction over Defendants because they are engaged
> in substantial and not isolated activity within this state.  Additionally, Plaintiffs
> causes of action arise from Defendants personally or through their agents, causing
> injury to property within the State of Florida arising out of acts or omissions of
> Defendants outside the State of Florida, and at the time of the injury, products,
> materials, or things manufactured by Knauf Gips, Knauf Tianjin, and Taishan were
> used and consumed within the State of Florida in the ordinary course of commerce,
> trade, or use. *Id.* at ¶ 11.

### iii. *Gross*

In *Gross*, Plaintiffs allege:

> Defendant Taishan is a foreign corporation **doing business** [emphasis supplied] in several
> States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas,
> North Carolina, and Virginia. Taishan is involved in the manufacturing and sale of
> gypsum drywall. Upon information and belief, **Taishan manufactured, sold, distributed,**
> **marketed and placed within the stream of commerce gypsum drywall with the**
> **expectation that the drywall would be purchased by thousands of consumers, if not**
> **more, within various States, including but not limited to, Louisiana, Alabama, Florida,**
> **Mississippi, Texas, North Carolina, and Virginia.** [emphasis supplied].  Taishan has
> continuously and systematically distributed and sold drywall to numerous purchasers in
> the United States and their drywall is installed in numerous structures in the United
> States. Upon information and belief, Taishan manufactured and sold to certain suppliers
> in the United States.  Rec. Doc. No. 366 ¶ 37.

9

The *Gross* complaint makes only a single allegation that relates to whether TTP is subject to jurisdiction anywhere in the US:

> Defendant Tai'an Taishan Gypsum Board Co. Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed, and/or sold.  Rec. Doc. No. 366 ¶ 85.[10]

**B.    References in Plaintiffs' Pleadings That Defendants Are Related to the Chinese Government or Other Chinese Entities.**

In addition to their jurisdictional allegations, Plaintiffs plead a number of wholly conclusory allegations that Defendants are related to or owned by other Chinese entities involved in the sale of drywall and perhaps even to the Chinese government itself.  These vague and unsubstantiated allegations are irrelevant to the issue of personal jurisdiction, since they have nothing to do with the question of whether Defendants' contacts with the U.S. alleged in their complaints provide sufficient contacts for jurisdiction.  At best, Plaintiffs' allegations relate to their claim that "to the extent" Defendants may be sovereign entities entitled to immunity from prosecution, they may be sued in this action pursuant to certain exceptions to suit set forth in the Foreign Sovereign Immunities Act (the "FSIA").  28 U.S.C. § 1604 (1976).  Defendants' status under the FSIA, however, is not at issue in TG's jurisdictional motions and is therefore beyond the appropriate scope of jurisdictional discovery at this point in the proceedings.

### i.  *Germano*

For example, in the *Germano* complaint, the Plaintiffs allege, without any factual support that:

---

[10] The Herman Aff., filed in the *Germano* action in which TTP has not been named, alleges that "Taishan Plasterboard Co., Ltd. shipped 76 shipments of plasterboard to the U.S. between March 2006 and August 2007 to four U.S. ports."  (citation omitted).  Rec. Doc. No. 6245-1 at ¶ 25.

Upon information and belief, Taishan is controlled by Beijing New Building Materials Public Limited Co., which is a state-owned entity and respectively controlled by the Chinese government." Rec. Doc. No. 1-1 at ¶ 11.

To the extent Taishan is deemed a foreign sovereign entity, Plaintiffs bring claims against Taishan pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortuous [sic] act exception.  Plaintiffs allege that the claim is based upon Taishan's commercial activities carried on in the United States.  The claim also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of this office or employment.  *Id.* at ¶ 12.

## ii.  *Gross*[11]

In *Gross*, Plaintiffs make similar conclusory allegations regarding control of TG's affiliates by the Chinese government, and exceptions to suit in the FSIA may apply to the extent TG is deemed to be a "sovereign entity:"

Upon information and belief, defendant Taishan is owned and/or controlled by defendant Beijing New Building Materials Public Limited Co. ("BNBM"), which is a state-owned entity and respectively controlled by the Chinese government. BNBM is traded on the Shenzhen Stock Exchange.  Rec. Doc. No. 366 at ¶ 38.

Defendant China National Building Material Co., Ltd. is a partially owned subsidiary of BNBM Group. *Id.* at ¶ 40.

Defendant, China National Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold. *Id.* at ¶ 41.

Upon information and belief, defendant BNBM is owned and/or controlled by defendant Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"), which is a state owned entity and respectively controlled by the Chinese government.  *Id.* at ¶ 42.

Upon information and belief, BNBM Group is owned and/or controlled by China National Building Materials Group Co. ("CNBM Group"), which is a state owned entity and respectively controlled by the Chinese government. CNBM Group is traded on the Hong Kong stock exchange. *Id.* at ¶ 44.

To the extent Taishan, BNBM, China National Building Material Co., Ltd., BNBM Group and CNBM Group are deemed to be foreign sovereign entities, Plaintiffs bring

---

[11] The *Mitchell* complaint does not make allegations relevant to the corporate separateness of the entities.

their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception. Plaintiffs allege that the claims against Taishan, BNBM, China National Building Material Co., Ltd., BNBM Group and CNBM Group are based upon commercial activities carried on in the United States. The claims also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment. *Id.* at ¶ 48.

There are no allegations of any sort that the corporate veil between these other entities and TG or TTP should be pierced for the purpose of establishing personal jurisdiction over Defendants.

### iii.  *The Germano Opposition*

In their opposition to TG's motion to dismiss for lack of personal jurisdiction, the *Germano* Plaintiffs make further conclusory allegations concerning the connection between the Chinese government, TG's upstream affiliates and TG, but still do not allege that any of those entities is an "alter ego" of TG for purposes of imputing the jurisdictional contacts of that entity to TG.

- "In China, the State-owned Assets Supervision and Administration Commission ("SASAC") of the State Counsel of the People's Republic of China controls the "plasterboard" manufacturing, exportation and certification industry and oversees and manages the state-owned assets of companies involved in drywall production, including Taishan.  SASAC assumes the responsibility as the investor on behalf of the state; it supervises and manages the state-owned assets and enterprise [SOEs]; controls the value preservation and increment of the state-owned assets; guides and pushes forward the reform and restructuring of SOEs; appoints and removes top executives of SOEs; is responsible for organizing SOEs to turn gains over to the state; is responsible for urging SOEs to carry out laws and regulations for safety production; directs and supervises the management work of local state-owned assets; and undertakes other tasks assigned by the State Council."  Rec. Doc. No. 6248[12] at 14.

- "Furthermore, SASAC oversees and controls 150 large central state-owned enterprises (SOEs) including China National Building Material Group Corporation ("CNBM Group")."  *Id.* at 14.

---

[12] Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss for Lack of Jurisdiction in *Germano* was filed with the Court under seal on October 28, 2010.  Rec. Doc. No. 6248.

- "Moreover, though the complex and prolix chain of holding companies, China-owned companies and subsidiary companies related to or owning or controlling Taishan, specifically, CNBM Group having a presence in the United States through CNBM USA and having a majority interest in Taishan through BNBM, it was announced that their "mission [was] to provide all kinds of building materials and services in the [U.S.] national market." And indeed this was accomplished. The drywall business production of CNBM's wholly owned subsidiary, Taishan Gypsum Co., at December 31, 2008 was 262.3 million yuan. Taishan's revenue for 2006 was 773 million yuan. ***Plainly, Taishan placed its drywall into the United States stream of commerce and sold its drywall to a company in Norfolk, Virginia for distribution there [emphasis supplied].***" *Id.* at 25-26.[13]

Except for the preceding sentence regarding Taishan placing drywall into the stream of commerce in the U.S., the other quoted allegations are clearly irrelevant to the question of whether TG itself has the requisite contacts for personal jurisdiction.

## SCOPE OF THE DEPOSITIONS NOTICED BY PLAINTIFFS ON THE DEFENDANTS

Plaintiffs seek to depose the Defendants on an extensive list of topics that have no legitimate connection to jurisdictional discovery. *See* Exhibit A. Plaintiffs demand Rule 30(b)(6) deposition testimony related to TG and TTP's relationships with the Chinese government and no less than forty different companies, including American companies, Mexican companies, unrelated Chinese companies, upstream affiliates of TG, and subsidiaries of TG that never made or sold drywall for export to the U.S. (and had no contacts with the U.S. whatsoever). In making these broad requests, Plaintiffs appear undaunted by the fact they have made little more than a few passing references in their pleadings to the majority of these entities (or even to the Chinese

---

[13] The Herman Aff. makes a number of unsupported claims regarding the Chinese government's control over TG and a number of other Chinese entities. For example, "The degree of control SASAC (Government of China) exerts and influences is extensive and includes: performs the responsibility as the investor on behalf of the state; supervises and manages the state-owned assets and enterprises; supervises the value preservation and increment of the state-owned assets; guides and pushes forward the reform and restructuring of SOEs; appoints and removes top executives of SOEs; is responsible for organizing SOEs to turn gains over to the state; is responsible for urging SOEs to carry out laws and regulations for safety production; directs and supervises the management work of local state-owned assets; and undertakes other tasks assigned by the State Council." Rec. Doc. No. 6245-1 at ¶ 20 (citation omitted). The Herman Aff. further suggests that SASAC has an ownership interest in TG, claiming the SASAC owns 100% of CNBM Group, which allegedly owns 75% of BNBM, which in turn allegedly owns 65% of TG. *Id.* 6245-1 at ¶¶ 14-18.

government), much less provided any indication as to how this discovery will lead to information relevant to whether this Court has jurisdiction over the Defendants.[14]  The Court should deny discovery on these topics because they do not concern the question of whether TG has the requisite minimum contacts with relevant forum states for the court to exercise personal jurisdiction consistent with Due Process.[15]

## ARGUMENT

## I.   THERE IS NO BASIS TO PERMIT A FISHING EXPEDITION INTO TG OR TTP'S RELATIONSHIP WITH OTHER ENTITIES

### A.   Discovery Concerning Other Entities Is Not Relevant to the Issue of Personal Jurisdiction.

Under the Federal Rules, discovery is only permissible where relevant to a claim or defense.  Fed. R. Civ. P. 26(b)(1) (2010).  The Rule further provides that "[f]or good cause, the court may order the discovery of any matter relevant to the subject matter of the action.  Relevant information need not be admissible if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Thus, the threshold requirement for <u>any</u> discovery request under Rule 26 is that the request be relevant to a claim or defense, although relevant discoverable information does not necessarily have to be admissible.  In addition, <u>all</u> discovery requests are subject to the proportionality, burden and cost limitations set forth in Rule 26(b)(2)(C).  Consequently, since the Court has permitted jurisdictional discovery only, Plaintiffs' discovery requests must be relevant to the issue of personal jurisdiction.  *See* Transcript of Oct. 14, 2010

---

[14] In fact, of the forty entities, eleven are not even mentioned in Plaintiffs' pleadings, including Prowall Drywall, Inc. a/k/a Prowall, International Materials Trading, Ltd., International Materials Trading IMT Plasterboard, International Materials Trading (IMT) Gypsum, panel Rey a/k/a Panel de Yeso Panel, Shamrock Gold, Gridmarx a/k/a Gridmarx, Grid Marx, Gypsum Board, USB and Pabco.

[15] At the October 14, 2010 status conference, Russ Herman amplified the conclusory allegations of control for rhetorical purposes by asserting, ". . . we have claimed that the People's Republic of China actually and BNBM which we understand was served yesterday, and CNBM are actually the puppets of an alter ego.  We want discovery."  Transcript of Oct. 14, 2010 Status Conf. at 17:23-18:1.

Status Conf. at 24:4-24:5.

In keeping with the requirement of proportionality, courts are also authorized to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c) (2010). In that regard, the Supreme Court has instructed district courts to exercise this discretion to limit discovery against foreign corporations in particular. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 546 (1987) ("American courts, in supervising pretrial proceedings involving foreign nationals, should exercise special vigilance to protect foreign litigants from the danger that unnecessary or unduly burdensome discovery . . ., and judicial supervision of discovery should always seek to minimize its cost and inconvenience and to prevent improper uses of discovery request."). *See also Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (affirming denial of jurisdictional discovery against Canadian companies for failure to show a colorable claim for personal jurisdiction, noting "foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists.")

The party seeking discovery bears the burden of showing its necessity. *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009). The burden can only be met by alleging specific facts that demonstrate a need for discovery and cannot be satisfied by "vague assertions that additional discovery will produce needed, but unspecified facts." *Id.* at 341-42 (citation omitted). This burden is particularly high where, like here, a party makes claims that implicate the activities of a foreign nation. *See generally Arriba v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992) (where jurisdiction of foreign sovereigns are concerned "discovery should be ordered circumspectly *and only to verify allegations of specific facts* crucial to an immunity

15

determination.").   The burden is equally high where a party claims that otherwise distinct corporations are abusing the corporate form.  *See generally Administrator's of Tulane Educ. Fund v. Biomeasure, Inc.*, 687 F. Supp. 2d 620, 624 (E.D. La. 2009) (discussing presumption that even related corporations are institutionally independent in determining whether jurisdictional contacts can be attributed from one to another) (citing *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999)).

Here, Plaintiffs' Rule 30(b)(6) deposition topics concerning other entities are not relevant to jurisdiction and should not be permitted.  There is no claim in any of the pleadings in these cases, or in any of the written submissions, that the corporate veil separating Defendants from their upstream affiliates or their subsidiaries should be pierced for purposes of personal jurisdiction.  Nor could there be, since Plaintiffs do not allege facts which could establish that any of the companies are alter egos of each other.  Likewise, any contention that the Chinese government controlled TG's sales of drywall to the United States is not relevant to the personal jurisdiction issue or to any claim that the FSIA applies to TG or TTP.  *See Kelly v. Syria Shell Petroleum Develop.,* 213 F.3d 841, 856 (5th Cir. 1999) (evidence of corporate affiliation insufficient to establish requisite control for purposes of jurisdiction under the FSIA).  Plaintiffs have not met the high burden to obtain discovery relating to Defendants' relationship with their affiliates, with unrelated corporations, and with a foreign sovereign.  Moreover, Plaintiffs seek discovery concerning twenty subsidiaries of TG, only one of which, Taishan Gypsum (Weifang) Co. Ltd. f/k/a Weifang Aotai Gypsum Co., Ltd., ever manufactured or sold drywall for export to the U.S.[16]  Spano Dec. ¶ 27.  Plaintiffs cannot show "good cause" to obtain discovery concerning other entities because the requested information is irrelevant.  *See Thibault v. Bellsouth*

---

[16] TTP is providing discovery concerning the single overflow order that Weifang manufactured on behalf of TTP.

*Telecom., Inc.*, No. 07-200, 2008 WL 4808893, *3-4 (E.D. La. Oct. 30, 2008) ("the court *may order* discovery of any matter relevant to the *subject matter* involved in the action *only* if the party seeking such discovery makes a *showing of good cause*.") (citing Fed. R. Civ. P. (26(b)(1)).

### B.    There Is No Basis To Impute Other Companies' Jurisdictional Contacts, If Any, To TG Or TTP.

Even if it could be argued that Plaintiffs' unsubstantiated allegations of amorphous "control" relate to the allegations that this Court has personal jurisdiction over TG and TTP, although they clearly do not, these allegations are insufficient to allow for veil piercing/alter ego discovery.   There is a presumption in the law that separate corporations are juridically independent.   *Kelly,* 213 F.3d at 856 ("typically, the corporate independence of companies defeats the assertion of jurisdiction over one by using contacts with the other.") (citation omitted). The Fifth Circuit has spelled out the factors that need to be proven in order to exercise jurisdiction under an alter ego theory. "[Fifth Circuit] cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes . . . . The degree of control exercised by the parent must be greater than that normally associated with the common ownership and directorship."   *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) (allegations of 100% ownership and control over subsidiaries' overall policy insufficient to impute subsidiaries jurisdictional contacts to parent).   In fact, the Supreme Court has held that even complete commercial and financial domination of another corporation is insufficient alone to pierce the corporate veil for jurisdictional purposes.  *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336 (1925) (refusing to attribute subsidiary's jurisdictional contacts to parent where subsidiary accounted for transactions with parent as if two entities were completely independent).   Subsequent to

*Hargrave*, the Fifth Circuit has stated that the following factors are relevant when considering whether to pierce the corporate veil for the purpose of personal jurisdiction: (1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations. *Dickson Marine, Inc. v. Panalpina, Inc.* 179 F.3d 331, 339 (5ᵗʰ Cir. 1999) (citation omitted).[17] Plaintiffs' vague and ambiguous allegations of "control," even if proven, would not meet the Fifth Circuit standard for establishing alter ego jurisdiction.

The presumption of corporate separateness can only be overcome by specific well-pleaded, non-conclusory allegations that could establish the relevant factors. *See Kelly*, 213 F.3d at 857. *See also Cent. States, Se & Sw. Areas Pension Fund v. Reimer Express World Cup*, 230 F.3d 934, 946-47 (7th Cir. 2000) (affirming denial of jurisdictional discovery from foreign defendant because plaintiffs alleged only that the entities were affiliates, not that the parents exercised an "unusually high degree of control over the subsidiary"). The requirement for pleading specific facts is stringently applied to discovery delving into the internal operations of foreign corporations. Thus, in *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998), the Second Circuit denied jurisdictional discovery and dismissed the complaint when plaintiff only pleaded conclusory allegations that defendant was the agent of its parent and that it was "wholly controlled" by its parent such that jurisdiction could be asserted under an alter ego theory. The *Jazini* court required the pleading to contain specific factual allegations, writing

---

[17] Although the issue is not fully briefed herein, the Court will likely look at the law of the state of incorporation (in this case, China) to determine whether it is appropriate to pierce the veil of corporations for purposes of imputing jurisdictional contacts. *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 647 (5th Cir. 2002). *See generally* Company Law of the People's Republic of China, Art. 20 (showing of a clear abuse of the corporate form is generally required for party to pierce corporate veil).

"'we are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Jazini*, *supra*, 148 F.3d at 185, *quoting Papason v Allain*, 478 U.S. 265, 286 (1986).  *See Quantum Loyalty Systems, Inc. v TPG Rewards, Inc,* , No. 09-22, 2009 WL 5184350 (D. Del. Dec. 23, 2009) (Although the Third Circuit allows jurisdictional discovery unless claims are "clearly frivolous," complaint alleging jurisdiction by reason of agency and alter ego dismissed without discovery when pleadings failed to allege specific facts to support the claims).  As the Supreme Court held in *Ashcroft v Iqbal*, 129 S. Ct. 1937, 1949 (2009), "'A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . .' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft* 129 S. Ct. at 1949 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

In this litigation, Plaintiffs do not allege any facts which could overcome the presumption of corporate separateness between TG and TTP and their upstream affiliates or TG's subsidiaries, and allow those other entities jurisdictional contacts, if any, to be imputed to TG or TTP.  *See Kelly*, 213 F.3d at 855 (denying jurisdictional discovery because no amount of fact-finding would create basis for jurisdiction pursuant to plaintiff's claims).  With regard to most of the forty corporations about whom discovery is sought, Plaintiffs have only made sparse, conclusory allegations as to these corporations' connections with the U.S.  On that basis alone, these discovery requests are abusive and should be denied outright.  Plaintiffs cannot leave it to the readers' imagination how discovery into the Defendants' relationship with these entities—the majority of which appear to be Chinese entities—could reveal facts relevant to jurisdiction, and be entitled to discovery on the issue.

Furthermore, the balance of Plaintiffs' allegations ostensibly relevant to veil piercing are

archetypically conclusory allegations of ownership or control by upstream affiliates that should be disregarded as such. Even if taken at face value, they are insufficient to warrant discovery into the inner workings of forty different corporations. Plaintiffs' allegations are not only conclusory, but far short of pleading—even in conclusory fashion—the abuse of corporate form or the level of day-to-day control necessary to pierce a corporate veil and impute the alleged jurisdictional contacts of one company to another. *See Kelly*, 213 F.3d at 857; *Cent. States,* 230 F.3d at 945 (evidence of corporate affiliation insufficient to establish requisite control for purposes of finding alter ego).

Discovery concerning the Defendants' relationship with other entities should also be denied because Plaintiffs cannot demonstrate how such discovery would advance any theory of jurisdiction they have asserted against either TG or TTP. *See Mohamed v. Erinys Intern'l Ltd.*, No. 09-3362, 2010 WL 3359518, at *4 (S.D. Tex. Aug. 23, 2010) (denying jurisdictional discovery into questions of corporate alter ego where plaintiffs could not specify how additional evidence would support claim for personal jurisdiction).

**C.     The Court Should Not Permit Discovery into the Sovereign Affairs of China In Connection With TG's Jurisdictional Motions.**

Plaintiffs cannot justify burdensome and intrusive discovery into Defendants' relationship with the Chinese government or the relationship of affiliates of Defendants with the Chinese government. *First*, Plaintiffs do not show, and cannot show, how discovery into China's affairs would be relevant to whether the Court has personal jurisdiction over the Defendants as required under Fed. R. Civ. P. 26(b)(1).

As discussed above, Plaintiffs' pleadings regarding the alleged involvement of the Chinese government in the drywall business of TG are clearly related to claims that the Court may exercise subject matter jurisdiction over Defendants under the FSIA and <u>not</u> to any claims

that the contacts of Defendants' affiliates or any governmental entities should be attributed to them for the purpose of exercising personal jurisdiction.  None of the sections of Plaintiffs' pleadings entitled "Jurisdiction" make any reference to the FSIA or to the government of China. Instead, Plaintiffs allege that SASAC exercises control over Defendants and their corporate parent, grandparent, and certain affiliates and thereby "[t]o the extent Taishan, BNBM, China National Building Material Co., Ltd., BNBM Group and CNBM Group are deemed to be foreign sovereign entities, Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception."  Plaintiffs assertions in *Germano* are to the same effect: "through the complex and prolix chain of holding companies, China-owned companies and subsidiary companies related to or owning or controlling Taishan, specifically, CNBM Group having a presence in the United States through CNBM USA and having a majority interest in Taishan through BNBM, it was announced that their "mission [was] to provide all kinds of building materials and services in the [U.S.] national market."  Rec. Doc. No. 6245 at 25-26.  These types of assertions are not only conclusory but even if supported by well-pleaded facts, have nothing to do with whether TG or TTP have the requisite minimum contacts for personal jurisdiction.  *Freeman*, 556 F.3d at 342 ("[A] party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a [motion to dismiss.]").

*Second*, to the extent that Plaintiffs argue for discovery concerning Other Entities to assert claims against the Defendants under the FSIA, Plaintiffs have not adequately pled a claim under the FSIA to warrant discovery under the Act.  *See Kelly* 213 F.3d at 849 ("[W]hen FSIA immunity has been claimed, unlimited jurisdictional discovery is *not* permitted as a matter of

course.  Instead, it should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination") (emphasis in original) (citation omitted).  At least one court in the Fifth Circuit has expressly held that bare pleadings like those of Plaintiffs, to the effect that "the commercial activity exceptions of [the FSIA] apply" are insufficient to merit discovery on FSIA-related issues.  *Evans v. Pemex et al.*, 390 F. Supp. 2d 587, 590 (S.D. Tex. 2005) (dismissing action alleging FSIA for lack of personal jurisdiction).

Finally, discovery should be denied because Plaintiffs' claims that "Taishan is owned and/or controlled by [BNBM] which is a state-owned entity and respectively controlled by the Chinese government," (Rec. Doc. No. 366 at ¶ 38) do not implicate the FSIA.[18]  A foreign state or political subdivision thereof must have a direct majority ownership interest in an entity for the FSIA to apply to that entity on the basis of state ownership.  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) (discussing 28 U.S.C. § 1603(b)).[19]  Furthermore, even if Plaintiffs attempted to circumvent the direct state ownership requirement by alleging that Defendants are subject to the exceptions in the FSIA because they are alter egos of SASAC, their pleading would still be insufficient because under the FSIA, alter ego liability can only be asserted if the governmental entity controlled the day-to-day activities of its subsidiary or if the corporate form was used to promote fraud.  *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629 (1983) (denying alter ego claim where entity was not "extensively controlled by its owner . . ." and no fraud or injustice would result from upholding the corporate veil). *Accord*, *Patrickson*, 538 U.S. at 475 ("The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances . . . .")

---

[18] TTP, a wholly owned subsidiary of TG, is even further removed from the Chinese government.

[19] Plaintiffs make no allegations that the Defendants are "organs" under the FSIA.  *See, e.g. Board of Regents of Univ. of Tex. System v. Nippon Telephone and Telegraph Corp.,*  478 F.3d 274, 279 (5th Cir. 2007) (citation omitted) (listing factors relevant to determining whether entity is an organ of a foreign government for purposes of the FSIA).

In summary, none of Plaintiffs' pleadings or arguments, even when read most liberally, are sufficient to merit inquiry into the activities of the Chinese government, or into TG's relationship with entities such as BNBM, CNBM BNBM Group or CNBM Group allegedly owned by the Chinese government.

## II.   SCHEDULING THE DEPOSITIONS FOR A DATE PRIOR TO APRIL 4, 2011 WOULD PLACE UNDUE BURDEN ON THE DEFENDANTS AND OTHER PARTIES

The Court should order the Defendants' depositions to proceed on April 5 and 6, 2011, in order to provide the parties time to coordinate among the parties in the various pending state and federal matters in which Defendants have been served and for the deponents to obtain the permission and documentation necessary for them to travel to Hong Kong.  As the Court stated in December, "I'd like to just have [depositions] taken one time for all purposes and so everybody will have to be noticed, and the states can participate to the extent that they need to participate.  But we don't have to take them over again." Transcript of the Status Conference Proceedings before Hon. Eldon E. Fallon, *In re: Chinese-Manufactured Drywall Products Liability Litigation*, No. 09-MD-2047 (Dec. 2, 2010) at 6:22-7:6.  Spano Dec. ¶28, Exh. N.

TG and TTP have made a good faith attempt to coordinate the deposition dates of all necessary parties through counsel's letter proposing depositions during the week of April 4, 2011.  Coordinating the actions in April 2011 would make it easier for the parties to participate in jurisdictional depositions of the Defendants just one time for the benefit of all involved, and in a way consistent with the Court's guidance.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants TG and TTP respectfully request that the Court grant Defendants' Motion for A Protective Order limiting the scope of the depositions of

the Defendants and scheduling the depositions of TG and TTP for April 5 and 6, 2011, respectively.

Respectfully submitted,

/s/  Thomas P. Owen Jr.
Joe Cyr
Frank T. Spano
Eric Statman
Matthew J. Galvin
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Email: Joe.cyr@hoganlovells.com
Frank.spano@hoganlovells.com
Eric.statman@hoganlovells.com
matthew.galvin@hoganlovells.com
Telephone: 212-918-3000
Facsimile: 212-918-3100

Richard C. Stanley (La. Bar No. 8487)
Thomas P. Owen, Jr. (La. Bar No. 28181)
STANLEY, REUTER, ROSS, THORNTON
& ALFORD, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: 504-523-1580
Facsimile: 504-524-0069
E-mail: rcs@stanleyreuter.com
tpo@stanleyreuter.com

**Attorneys for Taishan Gypsum Co. Ltd.
and Taian Taishan Plasterboard Co., Ltd.**

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co., Ltd. conferred via teleconference with Plaintiffs' counsel regarding the relief requested in this motion.  Plaintiffs' counsel stated that they are opposed to the relief requested herein.

/s/  Thomas P. Owen Jr.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum of Law of Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co., Ltd. in Support of Its Motion for a Protective Order has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 14th day of January, 2011.

/s/  Thomas P. Owen Jr.
