UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL NO. 2047 |
| | ) | SECTION: L |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) ) | |
| | ) | |
| *Amato, et al. v. Liberty Mut. Ins. Co., et al.* Case No. 10-932 | ) ) | JUDGE FALLON MAG. JUDGE WILKINSON |
| | ) | |
| All Cases | ) ) | |
| | ) | |

## MEMORANDUM IN OPPOSITION TO THE PLAINTIFFS' STEERING COMMITTEE'S ENERGENCY MOTION FOR AN ORDER PREVENTING THE PAYMENT OR TRANSFER OF CERTAIN MONEYS OR, IN THE ALTERNATIVE, FOR COURT-ORDERED MEDIATION AND TEMPORARY STAY OF ALL OUTSIDE SETTLEMENT ACTIVITIES

### INTRODUCTION

The Plaintiffs' Steering Committee ("PSC") seeks an Order enjoining any actual or potential Chinese drywall defendant and any insurer of any such actual or potential defendant, from settling any claim with any Chinese drywall claimant--anywhere--until the PSC reaches a "global settlement" of this action. This is far beyond the scope of this Court's injunction power. It is also an unlawful and unwarranted intrusion into the rights of litigants, both those whose actions are before this Court and those whose actions are venued elsewhere. The PSC's Emergency Motion must be denied in its entirety.[1]

### STATEMENT OF FACTS

While the PSC frames its request for relief in reference to the *Plaintiffs' Amended Omnibus Class Action Complaint (V)* ("*Omni V*"), the relief that it requests is simple.

---

[1] The Opposing Plaintiffs submit this Opposition and appear in this proceeding for the sole purpose of opposing the Emergency Motion of the PSC.

The PSC seeks an injunction preventing any further settlement of *any* Chinese drywall claims--including those which are before this Court, those which are venued elsewhere, and any which have yet to be filed.

A.   ***Plaintiffs' Amended Omnibus Class Action Complaint (V) Is Based on a Proposed Class Consisting of All Chinese Drywall Plaintiffs Nationwide***

*Omni V* names several hundred class representatives whom, it says, bring this action "on behalf of themselves and all other similarly situated owners and residents of real property containing Chinese manufactured drywall that was designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold by the Insured Defendants, as defined herein." *Omni V* at 1. *Omni V* then lists each of the class representatives and (in most cases) the location of the subject property owned by each named plaintiff. *Omni V* at 3-81, paras. 6-426.

*Omni V* defines the class of persons whom these class representatives purport to represent. It states:

> All Plaintiffs bring this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class comprised of:
>
> All owners and residents (past or present) of real property located in the United States containing Chinese drywall designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold by an Insured Defendant.

*Omni V* at 128, para. 644.

*Omni V* refers to class members who are not named plaintiffs as "absent class members." *Omni V* at 2, para. 3. Later, *Omni V* states that the Class does not include "all Persons who make a timely election to be excluded from the proposed Class." *Omni V* at 134, para. 648.

*Omni V* internally defines the term "Insured Defendant." It states, "Each of the following Insurance Company Defendants issued policies of general liability, excess, and/or umbrella insurance under which an Insured Defendant is a named or additional insured as set forth in Schedule 2 that provide coverage for the Underlying Claims asserted by Plaintiffs against the Insured Defendant." *Omni V* at 81, para. 429. It then sets forth the 98 named Insurance Company Defendants. *Omni V* at 82-97, paras. 430-527.

Schedule 2 attached to *Omni V* is a 58-page list of each of the Distributor/ Supplier/Importer/Exporter/Broker Defendants, Developer/Builder Defendants, and Contractor/Installer Defendants that are individually named in *Omni V*. See *Omni V* at 97-103, paras. 528-548; at 103-120, paras. 549-609; and at 120-124, paras. 610-622, respectively. For each such Insured Defendant, Schedule 2 lists the Insurance Company Defendant(s) who provided it coverage, and during what time period. *Omni V*, Schedule 2.

*Omni V* defines the term "Direct Action Defendants" to mean all of the Insurance Company Defendants plus all of the Insured Defendants. *Omni V* at 128, para. 645. Against these Direct Action Defendants, *Omni V* states causes of action for Negligence, Negligence Per Se, Strict Liability, Redhibition, Private Nuisance, Negligent Discharge of a Corrosive Substance, Unjust Enrichment, and Violation of Louisiana Unfair Trade Practices and Consumer Protection Law.[2]

Based on these causes of action, *Omni V* seeks various forms of relief, including a declaratory judgment against the Insurance Company Defendants relating to coverage of claims against the Insured Defendants, and, as to all defendants, "compensatory and

---

[2] In this last cause of action, *Omni V* alleges not only a violation of the Louisiana law but also the "Consumer Protection Acts of the Relevant States." *Omni V* at 151, para. 758.

statutory damages; . . . punitive damages as allowed by law; . . . [and] injunctive relief."
*Omni V* at 154, Prayer for Relief.

> **B.      The PSC Asks this Court to Enjoin All Settlements of Chinese Drywall**
> **Claims Involving Any Member of an Uncertified Putative Class and**
> **Any Named or Unnamed Chinese Drywall Defendant or Insurer**

The PSC asks this Court for alternative forms of relief, which differ from one another only in that one requires the parties to submit to mediation within 30 days.  See PSC's Notice of Emergency Motion and alternative Proposed Orders.  Fundamentally, the relief sought by the PSC remains the same in both of its Proposed Orders--it seeks to enjoin settlement of or payment of any settlement of any Chinese drywall claim, whether before this Court, before a different court, or before no court at all.

In its Notice of Motion and the first of its two Proposed Orders, the PSC frames the relief it seeks in four parts.  The Proposed Order states the following injunction, to remain in place until this entire action is resolved:

1)      Insurer Defendants cannot settle with or pay any settlement to any Direct Defendant *or unnamed third party* under a liability policy that covers the claims made by the named plaintiffs *or absent class members*;

2)      Insurer Defendants cannot pay any money to any *absent class member* under a policy that covers any Direct Defendant *or any presently unnamed third party* for the claims made by the named plaintiffs on behalf of themselves or the absent class members;

3)      Direct Defendants cannot seek funds under any policy that covers claims made by the named plaintiffs on behalf of themselves or absent class members, regardless

of whether the policy was issued by an Insurer Defendant *or an unnamed insurer or guarantor*; and

    4)    Direct Defendants cannot pay any money to any *absent class members* to settle (even in part) claims made by the named plaintiffs on behalf of absent class members without giving the PSC 60 days' notice of intent to make a settlement offer. (See PSC Notice of Emergency Motion and First Proposed Order. Emphasis added.)

    The injunction sought by the PSC may be distilled into the following prohibitory statement: No insurer, whether named in this lawsuit or not, and no entity against whom a claim has been brought involving Chinese drywall, whether in this lawsuit or elsewhere, may settle any such claim involving Chinese drywall, whether the claim is brought by a named plaintiff to this litigation *or* by some other past or present owner of real property in the United States who has no connection whatsoever to this lawsuit.

    *Alternatively*, in its Notice of Motion and Second Proposed Order, the PSC seeks an order requiring the parties to commence mediation within 30 days, and enjoining all settlements or payment of money in full or partial satisfaction of any settlement, of any claim "related to the subject matter of this litigation." See PSC Notice of Emergency Motion at 2, and Second Proposed Order.

    Given that the subject matter of this litigation, as defined in *Omni V*, is all claims related to Chinese drywall brought by any past or present property owner nationwide, the injunction sought in the alternative proposed order is much the same as the one sought in the first. The only difference is that in the second of the PSC's two proposed orders, the parties to this action are also ordered into mediation.

## LEGAL DISCUSSION

The PSC contends that the Court has authority to enter this injunction under its equitable jurisdiction, and under the All Writs Act at 28 U.S.C. sec. 1651(a). The PSC furthermore contends that the injunction it seeks is warranted by the PSC's fear that, absent court intervention, settlement proceeds will dissipate and a "global" resolution will not be possible. The PSC is wrong on both counts. The injunction it seeks is utterly unlawful, and well beyond the power of this Court. Furthermore, even if it were lawful, the injunction sought by the PSC is an unwarranted and highly undesirable intrusion into the rights of private litigants to settle their disputes.

**A.      The Injunction Sought by the PSC Is Beyond the Scope of the Court's Equitable Jurisdiction**

The PSC seeks a preliminary injunction prohibiting the settlement (or payment pursuant to a settlement) of any Chinese drywall action in this or any forum, nationwide. As the PSC concedes in its moving papers, this is an equitable remedy, and it must necessarily be based on an equitable interest on the part of the PSC's *uncertified putative nationwide class* in the money that is being used to settle individual Chinese drywall actions. See PSC Emergency Mtn at 6-15. The problem is that no such equitable interest exists. There is no basis whatsoever for the exercise of the Court's equitable jurisdiction over any and all funds which could be used in order to settle Chinese drywall claims.

**1.      An Order Enjoining the Use of Funds Can Issue Only Where the Enjoined Funds Are the Subject of the Action**

Federal courts have on many occasions confronted the issue of whether it is permissible for a court to enter a preliminary injunction sequestering funds belonging to

the defendant. Courts of Appeal have consistently held that where the assets sought to be enjoined are simply assets belonging to the defendant, as opposed to specific assets that are the subject of the dispute, the plaintiff has no equitable interest in the funds, and no injunction may issue.

### *De Beers Consolidated Mines, Ltd. v. United States*

Many such appellate court cases cite in support of this rule to the seminal decision of *De Beers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212 (1945). In *De Beers*, the United States sought equitable relief from foreign defendants, consisting of causes of action for violation of the Sherman Act and Wilson Tariff Act. *Id*. at 215. The U.S. sought and was granted an injunction restraining the defendants from withdrawing property that they owned which was located in the United States, based on the U.S.'s contention that this property would be needed to satisfy any judgment obtained against the defendants. *Id*. at 215. The Court vacated the injunction, stating, "A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally. The injunction in question is not of this character. It is not an injunction in the cause, and it deals with a matter lying wholly outside the issues in the suit. It deals with property which in no circumstances can be dealt with in any final injunction that may be entered." *Id*. at 220.

Extending this reasoning, the Court found that while the matter there at issue was *equitable*, there was no reason why, if the injunction were allowed, that a similar injunction could not be obtained in an action at law. *De Beers* at 222-223. The Court stated:

> Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much

of his funds or property as the court deems necessary for security or compliance with its possible decree. And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence.

*Id.* at 222-223.

### The *De Beers* Rule Remains Binding Upon All Courts

In *ITT Community Development Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978), the plaintiff sought to recover kickbacks allegedly paid to the defendant, its former employee. *Id.* at 1353. The court issued an order requiring persons indebted to the defendant to turn over funds in their possession which could be used to satisfy a judgment against the defendant. *ITT* at 1353-1354, and 1360-1361. These persons appealed and, overturning the injunction, the court cited to *De Beers*, stating, "Although the suit in *De Beers* sought equitable relief, we think that the [quoted] passage indicates that its teaching is clearly apposite to actions at law." *Id.* at 1361

More recently, in *In re Fredeman Litigation*, 843 F.2d 821 (5th Cir. 1988), the court, again citing at length to *De Beers*, stated, "The general rule of federal equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *Id.* at 824. *In re Fredeman* involved civil RICO claims, based on the allegation that the defendants had systematically overcharged for fuel deliveries. *Id.* at 822. During the pendency of the action, the government obtained an order restraining the defendants from disposing of their assets. *Id.* at 822-823. The Court overturned the injunction, stating:

> *The plaintiffs do not ultimately seek return of any particular asset or fund that the interim injunction might secure or that has been used to*

*violate the statute*, nor do they seek to enjoin future illegal conduct. . . . [A]s in *De Beers*, the injunction deals with matters different from those in the underlying cause.

*Id.* at 825.  Emphasis added.

However, in cases where it is found that the plaintiff has an equitable claim to the precise funds which are the subject of the injunction, then the injunction is found to be permissible under *De Beers*.  For example, in *Federal Savings & Loan Corp. v. Dixon*, 835 F.2d 554 (5th Cir. 1987), the court found that *De Beers* permitted an injunction that was based on findings by the court that the defendant had participated in a fraudulent scheme and embezzled money from a savings and loan, and was aimed at preserving the money that the defendants had embezzled for recovery via equitable actions for constructive trust and restitution. *Id.* at 557, 561-562.

More recently, in *FDIC v. Faulkner*, 991 F.2d 262 (5th Cir. 1993), the court addressed facts similar to those in *Dixon*, and found that the district court's injunction, which froze all of the defendant's assets, was impermissibly broad and could apply only to "assets . . . traceable to [defendant's] alleged fraudulent activities."[3] *Id.* at 264, 268.

This requirement--that the frozen assets must be the subject of the action--was best set forth in *State of New York v. Panex Industries, Inc.*, 860 F.Supp. 977 (WD NY 1994).  Citing to *De Beers* and to *In re Fredemen*, the *Panex* court stated:

The intermediate relief sought--freezing the defendants' assets--is not 'of the same character as that which may be granted finally' because

---

[3] The *Faulkner* court further explained that the rule that an injunction is limited to equitable recovery is based on the requirement of irreparable injury.  The court stated, "The general rule limiting injunctions to those cases where an equitable, rather than legal remedy is sought to be protected, necessarily flows from the traditional requirement that an applicant for an injunction show irreparable injury.  Because the availability of a legal remedy often indicates that an applicant's injury is not irreparable, courts generally do not issue injunctions to protect legal remedies." *Faulkner* at 265.

the ultimate relief is not equitable--i.e., they do not seek to enjoin future conduct or to freeze permanently the assets--but legal--i.e., a money judgment. . . . Further, the plaintiffs are not seeking to preserve a specific fund or *res* whose ownership is contested and which would be 'the subject of the provisions of any final decree in the cause.' Rather, the defendants' assets are unrelated to their CERCLA liability in the sense that the plaintiffs in no way premise their claims on the existence of the assets or the manner in which they came to be. That is, the assets were neither a cause nor an effect of the alleged illegality, and thus *De Beers* bars relief.

*Id.* at 980-981.

### *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*

Not long ago, the Supreme Court addressed this issue again in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, et al.*, 527 U.S. 308 (1999). In *Grupo Mexicano*, the trial court issued an injunction preventing the nearly insolvent defendant from dissipating its assets located in the U.S., pending the very likely outcome of a judgment in favor of the plaintiff. *Id.* at 312-313. The Court struck down the injunction, finding that there existed no power in equity to "restrict a debtor's use of his unencumbered property before judgment." *Id.* at 322.

The plaintiff cited to *Deckert v. Independence Shares Corp.*, 311 U.S. 282, in support of the injunction issued by the district court. The *Grupo* Court distinguished *Deckert* on the ground that the suit in that matter was equitable, and quoted the following language from *Deckert*: "'The *principal objects* of the suit are rescission of the Savings Plan contracts and restitution of consideration paid . . . That a suit to rescind a contract induced by fraud and to recover the consideration paid may be maintained in equity, *at least where there are circumstances making the legal remedy inadequate*, is well established.'" *Grupo Mexicano* at 325, quoting *Deckert* at 289. Emphasis added.

Finally, the Court observed that to permit the injunction remedy in instances where legal remedies *are* adequate would provide an end-run around standard creditor remedies. The Court stated, "The remedy sought here could render Federal Rule of Civil Procedure 64, which authorizes use of state prejudgment remedies, a virtual irrelevance. Why go through the trouble of complying with local attachment and garnishment statutes when this all-purpose pre-judgment injunction is available?" *Id.* at 330-331.

### *Required Nexus to Equitable Relief*

In recent years, courts have begun to apply the rule allowing an asset-freezing injunction in cases where equitable relief is sought *only if* there is a sufficiently close nexus between the injunction and the equitable relief the plaintiff seeks.

*United States ex rel Rahman v. Oncology Associates, P.C.*, 198 F.3d 489 (4th Cir. 1999), decided shortly after *Grupo Mexicano*, concerned fraudulent billing schemes perpetrated by the defendant medical professionals. *Id.* at 493. The government stated claims under the False Claims Act, and for unjust enrichment and fraud. *Ibid.* The district court entered a temporary restraining order prohibiting the defendants from selling their assets outside the ordinary course of business. *Id.* at 494.

Following the language from *Deckert* quoted in *Grupo Mexicano*, the Fourth Circuit stated the following rule:

> [W]hen the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the *status quo* pending judgment where the legal remedy might prove inadequate *and* the preliminary relief furthers the court's ability to grant the final relief requested. This nexus between assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of the district court in equity to enter a preliminary injunction freezing assets.

11

*Id.* at 496-497.

The *Rahman* court found that a sufficiently strong nexus did exist. It stated, "[T]o the extent that the United States has alleged claims seeking to impose a constructive trust on assets as 'equitable property' of the United States and to void fraudulent transfers of assets and have them transferred to the United States, the United States claims an equitable interest in the assets of the defendants. The nexus between the cognizable claims in suit and the assets of the defendant is thus alleged." *Rahman* at 498.

The court in *Travelers Casualty & Surety Company of America v. Beck*, 95 F.Supp.2d 549 (ED Va 2000), reached the opposite conclusion, finding that the plaintiff therein had not met the "nexus" test and therefore was not entitled to an injunction freezing the defendants' funds. *Id.* at 552-555. In *Beck*, the plaintiff alleged that the defendant failed to honor an indemnity agreement, and the plaintiff sought an injunction freezing the proceeds of a life insurance policy that paid out to the defendant's wife, which the plaintiff contended were necessary in order to satisfy a judgment which could be obtained based on the breach of the indemnity agreement. The plaintiff stated equitable causes of action for an accounting and specific performance. *Id.* at 551-552.

The court found that the plaintiff had failed to show that she had an equitable interest in the proceeds of the life insurance policy. *Beck* at 554. The court's finding was based on the plaintiff's failure to show that the defendant had come to possess the disputed property through fraud or misconduct, and the plaintiff did not show that she had any direct interest in the disputed property, which was unrelated to the losses she suffered as a result of the breach of indemnity agreement. *Ibid.*

Other courts have similarly employed the *Rahman* "nexus" test. See *JSC Foreign Economic Association Technostroyexpert v. International Development and Trade Services, Inc.*, 295 F.Supp.2d 366, 388-389 (SDNY 2003) [court finds that the plaintiff's action was "primarily for a money judgment against the defendants" notwithstanding plaintiffs' contingent claim for equitable relief]; and *Fairview Machine & Tool Co. v. Oakbrook International, Inc.*, 77 F.Supp.2d 199, 205 [sufficient nexus found where plaintiff transferred goods and was not paid, and sought to recover in quantum meruit].

### 2.   *Omni V* Does Not State an Equitable Interest by the Plaintiffs in the Settlement Funds that the PSC Seeks to Enjoin

Needless to say, the facts before this Court differ drastically from those at issue in any single one of the authorities discussed above or by the PSC in its brief. Nearly all of the reported authorities concerning the permissibility of a preliminary injunction freezing a defendant's assets deal with cases in which assets were obtained through fraud or breach of fiduciary duty. Not a single case has been cited by the PSC in which the equitable claim upon which the request for an injunction is based consists of nothing more than the negligent causation of property damage or bodily injury to the plaintiffs.

The reason for this is clear. Actions like the one before this Court are fundamentally actions at law. Even if a claim is stated under an equitable theory such as unjust enrichment, the supposed "restitution" sought through such a cause of action is likely to be small in amount, and inferior to the claim at law. In view of the negligible amount of equitable relief claimed in *Omni V*, there is simply no "nexus" between the supposed equitable causes of action and the funds that the PSC seeks to enjoin. The PSC's Emergency Motion therefore fails and must be denied.

### *The Equitable Relief Sought in* **Omni V** *Is Unrelated to the Requested Injunction*

The PSC claims that there are four causes of action in *Omni V* for equitable relief--redhibition, nuisance, unjust enrichment, and injunctive relief. However, the relief sought in these causes of action is generally *not* equitable, and there is no *nexus* between the small amount of equitable relief sought in *Omni V* and the funds in defendants' possession that will be enjoined if the Court grants the PSC's Emergency Motion.

First, the injunctive relief sought in *Omni V* consists of medical monitoring, the initiation of a public awareness campaign, the cessation of misrepresentations concerning the safety of Chinese drywall, and the forced buy-back or repair of the plaintiffs' homes or other structures. *Omni V* at 152-153, paras. 761-773.

Clearly, only one part of this cause of action could have any possible nexus with the funds that the PSC presently asks this Court to enjoin--namely, the forced buy-back of the plaintiffs' homes or other structures. However, this would apply only to the builders from whom the plaintiffs purchased their homes. It would not be possible, for example, for a drywall-supplier to "buy back" the drywall installed in plaintiffs' homes. So, this part of the injunction applies to a select few defendants--it does not apply to any insurance companies, or to any installers, contractors, or brokers, because none of these defendants sold any of the plaintiffs a completed house. And even as to the builders from whom the plaintiffs purchased their homes, it is unlikely that many (if any) homeowners will actually pursue this remedy instead of seeking instead a far simpler and more easily-obtained claim for damages for the same injury.

This is particularly true in view of the fact that *Omni V* is a putative class action. It is inconceivable that rescission of home sales could be awarded on a class basis. The

PSC's present Emergency Motion is based on the idea that it wishes to arrive at a global resolution of the MDL based on a nationwide class. If this is true, then few if any of the class members could obtain rescission of their home purchase. The plaintiffs' equitable interest in defendants' funds based on the buy-back claim in *Omni V*'s injunction cause of action is therefore negligible.

Since no *final* relief can be given based on this provision, the assets in defendants' possession specified by this remedy cannot be the subject of an injunction. *Federal Savings & Loan Ins. Corp. v. Dixon, supra*, 835 F.2d at 561 ["Because the authority to issue a preliminary injunction rests upon the authority to give final relief, the authority to freeze assets by a preliminary injunction must rest upon the authority to give a form of final relief to which the asset freeze is an appropriate provisional remedy" (quoting *FTC v. HN Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982).)]

Second, the cause of action for private nuisance simply is not equitable in nature. *Omni V* at 148-149, paras. 738-744. It is an action for damages. *Omni V* itself states, "As a direct and proximate result of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein." *Omni V* at 149, para. 744.

Third, the cause of action in *Omni V* for unjust enrichment likewise applies to very few of the defendants. It seeks to recover the benefit wrongfully obtained by the persons who sold the class members Chinese drywall or structures containing Chinese drywall. *Omni V* at 150-151, paras. 752-755.

Not only does this cause of action not apply to the insurer defendants, or the contractor or installer or broker defendants, but it too is unlikely to be pursued in this

action. This is not simply an instance of the legal remedy being adequate. Without question, the legal remedy is far superior. See *FDIC v. Faulkner, supra,* 991 F.2d at 265. Rather than obtain recovery of the very small profit that the builder or supplier defendants made on the sale of the Chinese drywall to a given plaintiff, it is far more advantageous to pursue the legal remedy of damages arising from the harm-causing drywall. Accordingly, if (as the PSC claims) *Omni V* will settle as a nationwide class action, then the overall liability of a given builder or supplier will be based on a measure of *damages*, not unjust enrichment. As with the buy-back provision discussed above, this claim for relief is likely to mean nothing in the event of a class-wide disposition of *Omni V*. Accordingly, the amount of funds that the plaintiffs can likely recover via their cause of action for unjust enrichment is a tiny fraction of the huge amount of settlement money that will be enjoined if the Court grants the PSC's Emergency Motion.

Finally, the cause of action for "redhibition" which the PSC states is "tantamount to the equitable common law claims of rescission and restitution," is not really equitable at all. In addition to a refund of the purchase price for the Chinese drywall, *Omni V* seeks *damages and reimbursement of expenses* in its cause of action for redhibition. *Omni V* at 146, para. 724. There is no nexus whatsoever between *these amounts* and funds which are in the possession of any defendant. And, to the extent that redhibition does seek equitable relief (apparently consisting only of the refund of the purchase price), it fails as a basis for the requested injunction for the same reason as does unjust enrichment, except that it applies to an even smaller slice of the plaintiffs. The redhibition cause of action applies only to Louisiana plaintiffs, and to only the builder and supplier defendants--no one else. Here again, the equitable relief sought is de minimis in comparison to the

massive amount of funds to which the PSC's proposed injunction would apply.  The injunction that the PSC now seeks applies to every dollar that an insurer or direct defendant would otherwise pay out in settlement of *any* Chinese drywall claim, anywhere.  Meanwhile, the equitable relief sought in *Omni V*--all told--consists of an amount of money which is negligible and which applies to very few of the defendants.

In view of this massive disparity between the funds the PSC seeks to enjoin and the small amount of equitable relief claimed in *Omni V*, there is simply no legitimate basis to find that there exists a "nexus" between them within the meaning of the *Rahman* and *Beck* cases cited above.

### *The Injunction Sought by the PSC Is Outside the Court's Equitable Authority*

The granting of an asset-freezing injunction as to all potential settlements of Chinese drywall actions is outside of the Court's equitable authority.  It would violate the rule in *De Beers* and *In re Fredeman* that there can be no injunction preventing the transfer of funds unless the plaintiffs have an *equitable interest* in the funds that they seek to enjoin.  As shown above, *Omni V* does not state claims which allege any such equitable interest in the vast majority of funds to which the injunction sought by the PSC would apply.  At most, there exists an equitable interest in a small fraction of the funds belonging to certain defendants.  The granting of the relief requested by the PSC would enable precisely the kind of end-run around normal debt enforcement mechanisms that the Supreme Court warned about in *Grupo Mexicano*.

Additionally, the injunction sought by the PSC does not serve the public interest. See *FSLIC v. Dixon*, *supra*, 835 F.2d at 562 ["The general flexibility of equitable powers is enhanced where . . . the public interest is at stake"].  In this case, the public interest is

in the continued ability to obtain compensation for injuries and property damage due from Chinese drywall. It benefits neither the public nor the individual claimants for the settlement of all such claims to be enjoined indefinitely in the hopes that this will enable the PSC to work out their settlement. This is particularly true given that in the many state court Chinese drywall actions, the litigants have trial dates, discovery deadlines, and ongoing expenses related to investigation and trial preparation. Many of the claimants in these actions need settlement proceeds *now*, and cannot wait for the day far in the future when they may or may not benefit in some manner by a settlement reached by the PSC in an action they are not now a part of.

### B.    The Injunction Sought by the PSC is Unwarranted and Unlawful

The concerns discussed above in regards to the scope of the Court's equitable power are only a threshold matter to the issuance of the injunction sought by the PSC. "*De Beers*, *Dixon*, and *ITT Community Development* concern the *threshold* question of whether the district court has power to enter an injunction even if the plaintiffs can satisfy the four traditional standards for obtaining such relief, including showing a sufficient probability of success on the merits." *In re Fredeman Litigation, supra*, 843 F.2d at 826.

For the reasons stated above, this threshold question should be determined against the PSC. However, in the event that it is not, the injunction sought by the PSC is unlawful under the test applicable to requests for preliminary injunctions.

> A preliminary injunction is an extraordinary equitable remedy that may be granted only if the [movant] establishes four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest.

*Strouse Greenberg Properties VI LP v. CW Capital Asset Management LLC*, 442 F.Supp.2d 313, 315 (ED LA 2006)

Based on these criteria, this Court must deny issuance of the settlement-freezing injunction sought in the PSC's Emergency Motion.

### *The Injunction Sought by the PSC Is Contrary to the Public Interest*

As discussed above, it plainly would not serve the public interest for the Court to grant the PSC's Emergency Motion. What it would do is bring a halt to the normal functioning of the judicial process in regards to nationwide Chinese drywall claims. This would have a devastating effect on litigants who cannot wait for months as their claims remain in limbo and it becomes uneconomical for them to continue to pursue their actions in court. The main consequence will be that when these plaintiffs finally do settle, it will likely be for considerably less than what they may have received if not for the injunction sought by the PSC.

Also, as explained above, the funds in which *Omni V* alleges an equitable interest are possessed by at most a small portion of the defendants and unnamed third parties to whom the PSC's injunction would apply. As a result, the Order sought by the PSC violates the rule that "injunctions must be narrowly drawn and precise." *Test Masters Educational Svcs v. Singh*, 428 F.3d 559, 578 (5th Cir. 2005). More specifically, it fails the second prong of the two-part test stated in *Rahman* and *Beck*. These cases state that, if an asset-freezing injunction *is* proper based on the movant's claims for equitable relief, "the court should then proceed to the second step and determine whether the interim relief 'is a reasonable measure to preserve the status quo in aid of the ultimate relief claimed.'" *Travelers Cas. & Sur. Co. of America v. Beck, supra*, 95 F.Supp.2d at 553, quoting *United States ex rel. Rahman v. Oncology Assoc., P.C., supra*, 198 F.3d at 497.

Clearly, this standard is far, far exceeded in the present case, based on what is needed to preserve the status quo, in regards to the collectability of the likely amount of any recovery on the equitable claims in *Omni V*. And, it is largely due to this overbreadth that the injunction sought by the PSC will be so disadvantageous to the public. If the PSC had sought an injunction that really was narrowly tailored to the amount of equitable relief that is legitimately at stake in *Omni V*--as opposed to shutting down all settlement activity in all Chinese drywall claims everywhere--then unquestionably the injunction would be less harmful to Chinese drywall claimants nationwide. Of course, the true *purpose* of the injunction the PSC seeks does not have anything to do with equitable relief. It simply has to do with the PSC clearing the field of other actions not under the jurisdiction of this court so that the PSC can try for a really large settlement. The relief sought by the PSC squarely contravenes the public interest. It must be denied.

### *Legal Remedies Are Sufficient.  An Injunction Is Unnecessary.*

As discussed above, the prohibition on asset-freezing injunctions in legal actions is based on the rule that where there exists a legal remedy, equitable relief is not necessary to prevent irreparable harm to the plaintiff. *FDIC v. Faulkner*, *supra*, 991 F.2d at 265. Here, the legal remedies overwhelm the equitable ones. There is no res or any sum of money that is the subject of any equitable cause of action in *Omni V*, much less is there any equitable recovery that is unavailable through the legal remedies claimed therein. The only supposed injury consists of the fact that the PSC believes that individual settlements of Chinese drywall actions are dissipating the resources of the defendants and their insurers, and it worries that this will prevent it from garnering a larger settlement in its matter.

The problem is that this is not cognizable as "irreparable injury." While the cases discussed above clearly stand for the idea that equity should prevent a defendant from wrongfully disposing of a res or fraudulently-obtained money that rightfully belongs to the plaintiff, the PSC has not cited to any case stating that equity should prevent some plaintiffs from settling their legitimate claims so that a larger group of plaintiffs may recover more in their matter. This is not the purpose of equity. The PSC has thus failed to show that any plaintiffs will suffer irreparable injury if it is not granted the injunction it seeks. Its motion must be denied.

**C.    The Anti Injunction Act Prohibits the Relief Requested by the PSC**

The PSC also asserts the All Writs Act as a basis for the injunction it seeks. The All Writs Act allows courts to issue injunctions which are "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." However, under the Anti-Injunction Act, a federal court may not stay proceedings in a state court unless it is "necessary in aid of its jurisdiction." *In re Diet Drugs*, 282 F.3d 220, 233 (3rd Cir. 2001).[4]

Under this exception to the Anti-Injunction Act, a federal court may enjoin a state court action only "'to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Sandpiper Village Condominium Association, Inc. v. Louisiana Pacific Corp.*, 428 F.3d 831, 843, quoting *Atlantic Coast Line R.R. Co. v.*

---

[4] This is consistent with the rule that an MDL court has no jurisdiction to issue orders affecting litigants in state court actions who are not parties to the MDL. See *In re Showa Denko*, 953 F.2d 162, 166 (4th Cir. 1992); *Manual for Complex Litigation Fourth*, at section 20.31, page 230 ["Unless the defendant files for bankruptcy, no legal basis exists for exercising exclusive federal control over state litigation"].

*Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970). The state court action must "'threaten[] to "render the exercise of the federal court's jurisdiction nugatory."'" *Id.* at 844, quoting *Bennett v. Medtronic*, 285 F.3d 801, 806 (9th Cir. 2002).

The injunction sought by the PSC does not fit within this exception. For one thing, it would not merely enjoin *a* state court action. It would enjoin the litigants in *every* state court Chinese drywall action from coming to a settlement. Needless to say, this would wreak havoc upon the state courts' ability to manage the litigation before them. The practical effect would be complete confusion and chaos over the notion of a federal court injunction over proceedings in state court. The PSC proposes to do this to every single state court Chinese drywall action, nationwide. The Anti-Injunction Act does not allow this.

Notably, the authorities cited by the PSC relate to the staying of a *single* action. See *In re Diet Drugs* and other cases cited by PSC. It does not point to *any* authority permitting a federal court to in effect enjoin an unknown--but certainly very large--number of state court actions. Also, the authorities cited by the PSC authorize an order staying a state court action or invalidating a state court order only when the order constitutes an *attack* on the jurisdiction of the federal court. In *Diet Drugs*, the Court upheld an order nullifying a state court order that certified an opt-out class *to the* class that the federal court had certified, thereby directly undermining the court's jurisdiction. *Diet Drugs* at 238-239.

This case is vastly distinguishable from *Diet Drugs*. In the matter before this Court, there is no global settlement, and nothing to indicate that one is on the horizon other than the PSC's unsupported allegation that it is on "the precipice of settlement with one of the largest defendants in the case." Emergency Motion at 3. There also is no class

certification order.  Nor is there any evidence in support of the PSC's allegation that a global settlement will not take place unless all other Chinese drywall actions are stayed. Nor is there any support of any kind for the notion that the continued settlement of individual actions in state court or in the MDL somehow interferes with the jurisdiction of this Court.  There is simply no basis whatsoever for finding the aid-of-jurisdiction exception to the Anti-Injunctions Act to be applicable in the present case.

The injunction sought by the PSC is simply an unlawful, unauthorized overreach into state court litigation.  It must be denied.

**D.     The Injunction Sought by the PSC Applies to Persons Not Before the Court, and Is Thus Beyond the Scope of the Court's Jurisdiction**

In substance, the Order sought by the PSC enjoins persons and entities who are not parties to this action.  For this reason, the PSC's Emergency Motion must be denied. A court cannot issue an injunction that is binding upon persons over whom it has no personal jurisdiction. *In re Matter of Hipp*, 5 F.3d 109, 113-114 (5th Cir. 1993); *Parker v. Ryan*, 960 F.2d 543, 546 (5th Cir. 1992).  A court cannot assert personal jurisdiction over a defendant who has not been served with process.  *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 214, f.n. 15 (5th Cir. 2005); *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999).  Finally, a court does not acquire personal jurisdiction over absent plaintiffs' class members until they are given notice. *Richard v. Hoechst Celanse Chem Corp.*, 355 F.3d 345, 351 (5th Cir. 2003).

In the present case, the injunction sought by the PSC is carefully worded in such a manner that it does not *command* nonparties to this action to do or refrain from doing

anything.   However, the order plainly exercises jurisdiction over these persons by targeting Chinese drywall claims that exist outside of the MDL.

As a practical matter, the PSC asks this Court to exercise jurisdiction over absent class members who have been given no notice, and unnamed defendants and insurers who have yet to be served with process.[5]  If the Order sought by the PSC goes into effect, *none* of these persons will have the power to settle any Chinese drywall claim, anywhere in the U.S.  To say that jurisdiction has not been exercised over these persons in the event that the Court signs the Order sought by the PSC is to exalt form over substance.  Under the law, this injunction should be recognized for what it is--strictly binding upon persons who are not before this Court.   See *Police Association of New Orleans through Cantanella v. City of New Orleans*, 100 F.3d 1159, 1166 (5th Cir. 1996) [court orders had "the practical effect of an injunction"].

Also, the failure to give notice to absent parties is a significant breach of their due process rights.  The PSC does not identify with any particularity any non-party it seeks to enjoin and does not provide any notice to any particular interested party of the pending motion.  It also says nothing about how it might provide notice of such an injunction were it to be granted.  Given the scope of the parties and non-parties the PSC seeks to enjoin and the impossibility of providing notice to all such parties, such an order would not only violate the due process rights of the parties sought to be enjoined, but would be inconsistently applied, and would have the fundamentally unfair and unjust result of enjoining some, but not all Chinese drywall actions from proceeding to their resolution.

---

[5] In fact, it appears that not all of the *named* defendants have been served.  See PSC Status Report Pursuant to PTO 1H, filed by the PSC on December 30, 2010, page 6.

Finally, if the Court enters the Order sought by the PSC, then it is certain that many non-parties will have their ability to protect their interests in the subject matter of the Order impaired.   These people are thus required parties under FRCP 19(a)(1)(B)(i), and this Court must first obtain jurisdiction over them before it can issue the injunction sought by the PSC.

## CONCLUSION

Based on the foregoing, it is hereby respectfully requested that the Court deny the PSC's Emergency Motion for an Order Enjoining All Settlement Activity.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that this document has been served on Plaintiffs' Liaison Counsel, Russ Herman, Esq., at drywall@hhkc.com, Defendants' Liaison Counsel, Kerry Miller, Esq., at kmiller@frilot.com and Homebuilder Steering Committees' Liaison Counsel, Phillip A. Wittman, Esq., at pwittmann@stonepigman.com, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this *18* day of January, 2011.

Respectfully submitted,

C. David Durkee, Esq.
ROBERTS & DURKEE, P.A.
Alhambra Towers
Penthouse 1 – Suite 1603
121 Alhambra Plaza
Coral Gables, FL  33134
Phone:  (305) 442-1700
Fax:  (305) 442-2559
durkee@rdlawnet.com
*Counsel for Individual Plaintiffs*

Mark Milstein, Esq.
Paul D. Stevens, Esq.
Allison R. Willett, Esq.
MILSTEIN ADELMAN, LLP
2800 Donald Douglas Loop North
Santa Monica, CA  90405
Phone:  (310) 396-9600
Fax:  (310) 396-9635
mmilstein@milstenadelman.com
*Counsel for Individual Plaintiffs*