UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) | CASE NO. 2:09-MD-02047 SECTION L JUDGE FALLON |
| (Relates to *Amato v. Liberty Mutual Ins.*, No. 2:10-cv-00932) | | MAG. JUDGE WILKINSON |

**CERTAIN INSURANCE DEFENDANTS' OPPOSITION TO THE
PLAINTIFFS STEERING COMMITTEE'S MOTIONS TO LIFT STAY
WITH REGARD TO THE MOTION FOR AN ACCOUNTING AND OTHER RELIEF
AND EMERGENCY MOTION FOR AN ORDER PREVENTING THE PAYMENTS
OR TRANSFER OF CERTAIN MONEYS OR, IN THE ALTERNATIVE,
FOR COURT ORDERED MEDIATION AND
<u>TEMPORARY STAY OF ALL OUTSIDE SETTLEMENT ACTIVITIES</u>**

<u>INTRODUCTION</u>

The Insurer Defendants[1] hereby oppose the motions to lift stay with respect to the PSC's Motions for Injunctive Relief.[2] As a threshold matter, there is no reason to lift the stay because the PSC has completely failed to satisfy the prerequisites for any preliminary injunctive relief,

---

[1] The "Insurer Defendants" are Defendants The Travelers Indemnity Company of Connecticut, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois, St. Paul Fire & Marine Insurance Company, and The Standard Fire Insurance Company.

[2] The Plaintiffs Steering Committee ("PSC") has filed a Motion to Lift Stay (ECF No. 6672) with regard to the PSC's Motion for an Accounting and Other Relief ("Motion for Accounting") (ECF No. 6669), and a Motion to Lift Stay (ECF No. 6954) with regard to the PSC's *Emergency* Motion for an Order Preventing the Payment or Transfer of Certain Moneys or, in the Alternative, for Court Ordered Mediation and Temporary Stay of All Outside Settlement Activities ("Emergency Motion to Freeze Assets and Enjoin Settlements") (ECF No. 6947) (collectively "Motions for Injunctive Relief").

1

much less the extraordinary (and unprecedented) relief sought.  This alone dooms the PSC's Motions for Injunctive Relief.

Moreover, the Motions for Injunctive Relief are premature given that they are directed at defendants that have not even been afforded an opportunity to present threshold Rule 12 defenses, including for lack of personal jurisdiction (and potentially subject matter jurisdiction in some cases in the MDL).  *See Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*¸ 762 F.2d 464, 470-72 (5th Cir. 1985) (holding the district court abused its discretion in entering preliminary injunction order without first "determining whether it had jurisdiction over the party enjoined").  Further, the resolution of those Rule 12 defenses will likely have a significant impact on the scope of claims and the parties involved in this litigation and, indeed, might well terminate the insurers' involvement in this litigation.  (*See* ECF No. 6670 (holding claims against homeowners insurers were barred as a matter of law on the pleadings, which ultimately will result in dismissal with prejudice of all claims in these proceedings against such insurers); ECF No. 6330 (granting motions to dismiss for lack of personal jurisdiction as to some insurers).)  It would be highly prejudicial and a waste of judicial resources to lift the stay to entertain the PSC's Motions for Injunctive Relief before these threshold defenses are resolved.

Additionally, and without waiving the right to fully brief these issues and present additional evidence should the stay be lifted,[3] there is no reason to lift the stay given that the Motions for Injunctive Relief lack any merit whatsoever. The PSC has completely failed to meet

---

[3] The Insurer Defendants incorporate and assert all the arguments made by all the responses in opposition to the PSC's Motion to Establish a Litigation Fund (ECF No. 4603) as if set forth in full herein. The Insurer Defendants expressly preserve all such arguments, and the arguments herein, for appellate purposes should this Court ultimately grant any of the relief sought in the Motion for Accounting or the Emergency Motion to Freeze Assets and Enjoin Settlements.

its burden of establishing the requisites for the extraordinary injunctive relief sought, including showing a likelihood of success on the merits or irreparable harm.  As noted above, given the prior insurer-related rulings, it seems much more likely that the Insurer Defendants will prevail than the PSC, and in any event, the PSC fails to even address this factor with regard to claims against the insurers.  Moreover, given that all the PSC seeks is monetary relief (primarily its own attorneys' fees), there is no irreparable harm as a matter of law as this Court has recognized.  *In re Vioxx Prods. Liab. Litig.*, MDL 1657, 2008 U.S. Dist. LEXIS 60269, at *55-56 (E.D. La. Aug. 7, 2008) (holding that "[m]ere injuries, however substantial, in terms of money . . . are not enough" to establish irreparable harm) (quoting *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975)).  Even setting aside those threshold and dispositive flaws, the PSC's Motions for Injunctive Relief also fail because they have not met the United States Supreme Court-mandated prerequisites to obtaining relief under the doctrines of "common fund benefit," "substantial benefit," or for the extraordinary equitable remedy of prejudgment asset freeze.

Accordingly, the Insurer Defendants respectfully submit that the PSC's motions to lift stay should be denied, and no motions should be considered until after *all* threshold Rule 12 Motions are resolved.[4]  While the Court has broad discretion to manage its docket, forcing defendants who have meritorious threshold defenses, such as lack of personal jurisdiction, to respond to these Motions for Injunctive Relief (much less to be subject to the baseless injunctive relief purportedly sought in these motions) would not be an appropriate exercise of that discretion.  This is especially so given that any injunctive relief entered would be subject to

---

[4] To the extent, however, that this Court does lift the stay as to the Motions for Injunctive Relief, due process requires that all Defendants have a fair opportunity to be heard in writing, including to present evidence, as to the substance of those Motions.  *See, infra,* Section III.

immediate appeal, and would simply serve to delay these proceedings further by triggering collateral appellate proceedings.  28 U.S.C. § 1292(a)(1).

## PROCEDURAL HISTORY AND BACKGROUND

On August 20, 2009, this Court indicated it was its intention "to stay all motions." (ECF No. 169.)  The Stay Order was given effect by Pretrial Order 1, and its various iterations.  Under Pretrial Order 1G, entered on May 27, 2010, a stay of all motion practice was reinstituted, and this Court held all cases in the MDL "in abeyance until such time as the suspension described in this Order is terminated."  (*See* Pretrial Order 1G at 1-2.)

On March 19, 2010, the PSC filed a putative class action complaint entitled *Amato v. Liberty Mutual Ins. Co.*, Case No. 10-932, which is sometimes referred to as the "Omnibus V" Action.  The clerk's office subsequently consolidated that action into this MDL case number. The PSC filed an Amended Complaint in *Amato* on May 11, 2010.  (ECF No. 3132.)  The Amended Complaint asserts claims against dozens of Defendants, some of which are alleged to be a distributor, supplier, importer, exporter, or manufacturer of Chinese Drywall, or a builder or developer that allegedly used defective Chinese Drywall, as well as *98 different insurers* who are alleged to be insurers of the other defendants.  No attempts at service of the Complaint (or the Amended Complaint) were attempted until on or about July 19, 2010 (more than 120 days after the Complaint was filed), when many of the insurers were served through the Louisiana Secretary of State's office.  Thus, at the time *Amato* was served, the cases already were all being held in abeyance under Pretrial Order 1G.

On July 26, 2010, the PSC filed a Motion to Establish a Litigation Expense Fund ("Motion for Expense Fund").  (ECF No. 4603.)  Although no motion to lift stay was filed, on August 4, 2010, this Court entered an order setting that Motion for Expense Fund for hearing on August 12, 2010, and required responses to be filed by August 6, 2010, two days after the date of

4

the order.  (ECF No. 4814.)  In response to several requests to extend this briefing schedule, the Court extended the response date by a few days to August 10, 2010.  (ECF No. 4923.)  Even under this extremely expedited briefing schedule, numerous oppositions were filed to the Motion for Expense Fund.  (*See, e.g.,* ECF Nos. 4958, 5021, 5038, 5040, 5042, 5045, 5055, 5064, and 5068.)  The day before the hearing on the Motion for Expense Fund, the PSC filed a Motion for Leave to file a Reply Brief, clearly demonstrating that the PSC continued to seek a ruling on its Motion.  (ECF No. 5083.)  However, the next day this Court announced that the PSC had reversed course and wanted to "pass" the Motion for Expense Fund.  (ECF No. 5207.)

## ARGUMENT

I.   **There Is No Reason To Lift The Stay To Hear The Motions for Injunctive Relief Because They Are Premature, Particularly Given That Threshold Rule 12 Motions Have Not Been Filed Or Heard.**

This Court's authority to stay proceedings and lift such stays derives from its discretion to manage its docket.  *See generally Alcala v. Texas Webb County*, 625 F. Supp. 2d 391, 396 (S.D. Tex. 2009) ("A district court's discretionary authority to stay proceedings stems from its inherent authority to control the disposition of the cases on its own docket 'with economy of time and effort for itself, for counsel, and for litigants.'") (quoting *Landis v. North American Co.*, 299 U.S. 248 (1936)); *see also McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982) (noting courts have the "general discretionary power to stay proceedings before it in control of its docket and in the interest of justice.").  This discretion should be exercised by weighing competing interests and maintaining an even balance, with the goal of promoting judicial economy.  *Cajun Offshore Charters, LLC v. BP, PLC*, No. 10-1341, 2010 U.S. Dist. LEXIS 111742, at *5 (E.D. La. May 25, 2010) (citing *Landis*); *see also Amini Innovation Corp. v. Classic World Imports, Inc.*, No. 3:04-CV-1219-B, 2005 U.S. Dist. LEXIS 406, at *2 (N.D. Tex. Jan. 12, 2005) ("In

5

deciding whether to exercise the discretion to stay litigation, the Court should consider the interests of each party, as well as the conservation of judicial resources.") (citing *Landis*).

Here, these factors weigh heavily against lifting the stay in order to address the Motions for Injunctive Relief. As noted above, the Motions for Injunctive Relief seek a series of broad affirmative injunctions that are geared solely toward the PSC attorneys' ultimate goal of recovering their personal attorneys' fees and costs. The purported legal basis for this ultimate relief is the "common fund" or "substantial benefit" doctrine, as well as the extraordinary equitable remedy of prejudgment asset freeze. As discussed below, however, those doctrines only apply once the PSC has obtained some success in the relevant litigation or has established it can successfully assert equitable claims against the Insurer Defendants (which it cannot).

These proceedings have been held in abeyance since before the Omnibus V *Amato* action was even filed. Accordingly, the insurers have not had an opportunity to present threshold defenses, including lack of jurisdiction, which likely (if not certainly) will be successful in at least some instances. (*See* ECF No. 6330 (granting motions to dismiss for lack of personal jurisdiction as to some insurers, denying similar motions as to others).) Simply put, it would be completely inequitable and prejudicial to impose the injunctive relief set forth above onto parties over which this Court lacks jurisdiction in the first place, and would also be inconsistent with controlling Fifth Circuit precedent. *Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana¸* 762 F.2d 464, 470 (5th Cir. 1985) ("The district court has no power to grant an interlocutory or final injunction against a party over whom it has not acquired valid jurisdiction, and an order granting an interlocutory injunction in these circumstances is erroneous as a matter of law," "[w]here a challenge to jurisdiction is interposed on an application for a preliminary injunction the plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the

6

merits.") (internal quotations omitted).  Here, Plaintiffs have not made such a heightened showing and, indeed, for many of the defendants, cannot.

Similarly, the Insurer Defendants have many other strong and meritorious Rule 12 defenses available to them.  In the homeowners insurance context, for example, this Court recently ruled that claims against homeowners insurers failed as a matter of law on the pleadings.  (ECF No. 6670.)  This Court might issue a similar ruling with regard to the CGL insurers, which if so, would moot any relief from the Motions for Injunctive Relief, resulting in a huge waste of judicial and litigant resources.

Thus, lifting the stay to allow the Motions for Injunctive Relief to be heard would undermine both undermine judicial economy and fail to properly balance the interests of the parties.  As such, the motions to lift stay should be denied with regard to the Motions for Injunctive Relief.

**II.    There Is Also No Reason To Lift The Stay To Consider The PSC's Motions For Injunctive Relief Because They Are Fatally Flawed.**

**A.    The PSC does not, and cannot, meet the standards for preliminary injunctive relief as to the Insurer Defendants.**

As a threshold matter, the PSC cannot meet the rigid standards necessary to obtain *any* preliminary injunctive relief, much less the extraordinary (and unprecedented) relief it is seeking. *Winter v. NRDC, Inc.*, 555 U.S. 7, 24-25 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").  "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*, 555 U.S. at 31 (citations omitted).

7

1. **The PSC has not demonstrated any possibility of success on the merits against the Insurer Defendants, much less a "substantial likelihood of success."**

The PSC's Motions for Injunctive Relief fail to even mention any ruling or claim against any insurer by which the PSC has achieved success. (Mem. to Emergency Motion at 12-15.) Nor could it given that the only insurance-related rulings in this litigation have favored insurers (and, in turn, been resounding failures for the PSC). (ECF No. 6670 (holding that claims against homeowners insurers were barred as a matter of law on the pleadings); ECF No. 6330 (granting motions to dismiss for lack of personal jurisdiction as to some insurers, denying similar motions as to others).) The Insurer Defendants have similar arguments that they will present when they are finally given an opportunity to pursue their numerous threshold Rule 12 defenses. In any event, the PSC's Motion and Memorandum of Law completely fails to even address this issue with regard to the Insurer Defendants, which fact alone establishes that the PSC has failed to meet its heavy burden. *See generally In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, at **49-50 (denying motion to enjoin distribution of funds, holding the plaintiffs had failed to demonstrate a likelihood of success on the merits for myriad reasons including because "the AvMed Plaintiffs seek to enjoin distribution of settlement funds to approximately 35,000 plaintiffs against whom they have no claim whatsoever, let alone a substantial likelihood of success on the merits.").

2. **Nor can the PSC establish irreparable harm when all it is seeking is monetary damages.**

To obtain *any* preliminary injunctive relief, the movant must also establish that it is "likely" to suffer irreparable harm. *Winter*, 555 U.S. at 27-28 (collecting cases). Here, the PSC is merely seeking monetary relief, which establishes there is no likelihood it will suffer irreparable harm as a matter of law. *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, at *55-56 (holding that "[m]ere injuries, however substantial, in terms of money . . . are

not enough" to establish irreparable harm) (quoting *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975)); *see also Enter. Int'l Inc.*, 762 F.2d at 472 (holding that it is well settled that an "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies"); *Metal Mgmt. Miss. v. Barbour*, No. 3:08-CV-00431, 2008 U.S. Dist. LEXIS 107165, at *38 (S.D. Miss. Aug. 13, 2008) ("Injuries adequately remedied by monetary damages are not irreparable.") (citation omitted); *Johnson Controls, Inc. v. Guidry*, No. 6:10-0080, 2010 U.S. Dist. LEXIS 69083, at *15 (W.D. La. July 12, 2010) (same, further stating that a party must show that monetary damages are inadequate to meet the irreparable harm requirement).

### 3. Balance of equities weighs heavily against granting the injunction.

For similar reasons, the PSC cannot show that the balance of equities tips in its favor because, ultimately, all it seeks is monetary relief and there is no reason to conclude any of the Insurer Defendants will become insolvent or unable to pay any judgment. If the injunction is granted, however, it would pose enormous and unnecessary economic and administrative burdens on the insurers to attempt to comply with the overbroad and vague order sought.

### 4. The public interest would not be served by the injunction.

Nor would the public interest be served by the injunction. As the PSC itself recognizes, the relief sought would preclude, for example, homebuilders from entering into agreements with their customers to remediate their homes to remove the Chinese drywall -- the very relief the homeowners have been seeking for years. Such a result is contrary to the public interest. *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1164 (5th Cir. 1985) ("[P]ublic policy favors voluntary settlements which obviate the need for expensive and time-consuming litigation"); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) ("Settlement agreements are

'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits'").[5]

### B. The PSC's Motions for Injunctive Relief also fail to meet the requirements articulated by the United States Supreme Court to establish "common fund," "substantial benefit," or entitlement to a prejudgment equitable asset freeze.

As explained in more detail in response to the PSC's Motion to Establish a Litigation Expense Fund (ECF No. 5042),[6] in order to establish that the "common fund" or "substantial benefit" doctrines apply in the first instance, the PSC must demonstrate that it has actually created a common benefit and prevailed on some significant issue in this litigation, and it must also meet the following three requirements -- as mandated by the United States Supreme Court -- before costs may be shifted: (1) The classes of persons benefited by the lawsuits are small in number and easily identifiable; (2) The benefits must be traceable with reasonable accuracy; and (3) The Court must be confident that the costs of litigation can be shifted with exactitude to those benefiting. *Boeing v. Van Gemert*, 444 U.S. 472, 478-79, 100 S. Ct. 745, 749, 2 L. Ed. 2d 676 (1980) (noting these strict limitations on the common fund doctrine, and that because of these restrictions, the common-fund doctrine does not alter the American Rule "against taxing the losing party with the victor's attorney's fees," because under the common-fund doctrine the defendant no longer has any interest in the fund); *see also Morganroth & Morganroth v.*

---

[5] Additionally, Rule 65 of the Federal Rules of Civil Procedure *requires* the posting of security in an amount that "the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010) ("Although the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary. While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory.") (quotation omitted). Here, given the extraordinary scope and nature of the requested relief, the amount of security required would be substantial, and would represent a needless waste of resources that further weighs against the requested relief.

[6] The arguments and points made in that Response Brief, as well as the others identified above, are expressly incorporated in full herein.

10

*DeLorean*, 213 F.3d 1301, 1319 (10th Cir. 2000) ("[T]he common fund doctrine requires identifiable beneficiaries and circumstances that permit proportionate sharing among the beneficiaries with some exactitude.") (internal citations omitted). Simply put, the PSC has not, and cannot, demonstrate that each of these factors is met here.

Additionally, the PSC's Motions for Injunctive Relief cannot rely on the "common fund" doctrine because the PSC has not established any "common fund" through a successful litigation or settlement. *See, e.g., Morganroth & Morganroth*, 213 F.3d at 1319 ("[T]he dispositive fact is that this action did not result in the creation of a fund from which others would benefit. Thus, we find no legal basis on which the award of attorney's fees can be sustained."); *Holbrook v. Pitt*, 748 F.2d 1168, 1176 (7th Cir. 1984) (litigation requiring HUD to make subsidy payments to individual landlords did not create a "fund" from which fees could be recovered). Nor has the PSC demonstrated that it has successfully conferred *any* benefit on the plaintiffs, much less a "substantial" one. To recover fees under the "substantial benefit" or "common fund" doctrine, an attorney must show that his or her efforts (1) were successful, *and* (2) conferred a substantial benefit on others. In the words of the Fifth Circuit, "[a]ttorney's fees may . . . be awarded to a *successful litigant* whose success confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Rogers v. Air Line Pilots Ass'n., Int'l*, 988 F.2d 607, 616 (5th Cir. 1993) (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-94, 90 S. Ct. 616, 626, 24 L. Ed. 2d 593 (1970)) (emphasis added).

Here, the PSC has not even survived the pleadings stage in *Amato*, and accordingly, there is absolutely no basis to assert that the PSC somehow has met these requirements.

### C. The Asset-Freeze Injunction Sought By The PSC Is Also Barred By Binding Law.

The PSC also seeks the extraordinary remedy of a prejudgment asset freeze. (Mem in Support of Emergency Motion to Freeze Assets and Enjoin Settlements at 6-10.) That request, however, is barred by controlling precedent for several reasons.

First, as the PSC's own brief recognizes, the United States Supreme Court has expressly held that such relief is barred in claims arising "at law." (Mem. at 6-10 (citing, *e.g.*, *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) (holding that such injunctions are improper in actions at law).) Here, although the PSC attempts to distinguish *Grupo* by arguing that this is a case in equity, the only claims that can be asserted against the Insurer Defendants are purely claims at law based on the insurance policies at issue seeking "money damages." *Grupo Mexicano*, 527 U.S. at 339-40 ("Because such a remedy was historically unavailable from a court of equity, we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages"). The PSC notes that it has attempted to plead numerous other causes of action against other defendants, (Mem. at 10-11 (citing ECF No. 3132, *Amato* Am. Compl.)), but none of those causes of actions can properly be asserted against the Insurer Defendants. Indeed, resolving this issue would of course first require this Court to address Rule 12 issues, such as whether there is any basis in law or fact for asserting direct action claims against insurers relating to insurance policies and claims that have no connection to Louisiana -- which there is not. *See Bolls v. Middendorf's, Inc.*, 729 F. Supp. 1583, 1584 (S.D. Miss. 1990) (dismissing action and imposing Rule 11 sanctions against plaintiff's attorney for improperly seeking to join liability insurer in action that was outside the scope of Louisiana's direct action statute). Thus, this simply bolsters the conclusion that the stay should not be lifted to address these issues until after Rule 12 motions are resolved.

Second, as the Fifth Circuit has made clear, even when equitable claims are at issue (which they are not as to the Insurer Defendants): "The general federal rule of equity is that a court may *not* reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy potential money judgment." *In re Fredeman Litigation*, 843 F.2d 821, 827 (5th Cir. 1988) (stating that assets may not be encumbered by a preliminary injunction in anticipation of a judgment unless "the assets frozen [are] in some way the subject of the litigation"). Yet, that is precisely what the PSC seeks to do here -- attach assets that, although they might be used to satisfy a final judgment, are not the "subject of the dispute." *Id.* Simply put, this is not a case where money was allegedly wrongfully appropriated as a result of some fraud or ponzi scheme, or where a prejudgment asset freeze over the alleged tortfeasor's accounts might be authorized such as at issue in the cases upon which the PSC relies. Here, the only potential claims against the Insurer Defendants are typical coverage action claims as to whether or not coverage exists. Thus, there is simply no basis to seek an equitable prejudgment freeze in such circumstances.

### D. The PSC's back-handed attempt to reargue this Court's repeated denial of the PSC's Motions to Restrict Communications with Putative Class Members is also without merit.

The "other relief" in the PSC's Motion for Accounting is in fact the PSC's *third* motion to restrict communications with putative class members. (Mem. to Mot. for Accounting at 16-19.) This Court has previously (and correctly) rejected virtually identical motions on at least two occasions. (ECF Nos. 278 and 5207 (denying virtually identical requested relief).) The Motion for Accounting still fails for these same reasons.

## III. If This Court Lifts The Stay, It Should Set A Reasonable Period For Briefs, Discovery, And Potentially An Evidentiary Hearing.

To the extent that this Court exercises its discretion to lift the stay and hear the PSC's Motions for Injunctive Relief, the Insurer Defendants respectfully request a fair opportunity to

13

fully brief these issues, take any discovery they deem necessary of the PSC, and present evidence. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-67 (1980) (noting that the inherent powers of the judiciary are subject to the limitations of the Due Process Clause, which requires fair notice and an opportunity for a hearing on the record); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70*, 415 U.S. 423, 434 n.7 (1974) (before preliminary injunction may issue, defendant must be given fair opportunity to oppose application and to prepare for such opportunity); *Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991) (vacating preliminary injunction because the district court failed to provide adequate hearing to the parties affected by its actions); *see also generally* 13-65 Moore's Federal Practice - Civil § 65.21 (collecting cases on this point).

## **CONCLUSION**

For all the foregoing reasons, Defendants The Travelers Indemnity Company of Connecticut, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois, St. Paul Fire & Marine Insurance Company, and The Standard Fire Insurance Company, respectfully request that this Court deny Plaintiffs' Steering Committee's Motion to Lift Stay (ECF No. 6672) with regard to the PSC's Motion for an Accounting and Other Relief (ECF No. 6669), and also deny the PSC's Motion to Lift Stay (ECF No. 6954) with regard to the PSC's *Emergency* Motion for an Order Preventing the Payment or Transfer of Certain Moneys or, in the Alternative, for Court Ordered Mediation and Temporary Stay of All Outside Settlement Activities (ECF No. 6947); and grant such other relief this Court deems necessary and proper.

Respectfully submitted by,

/s/ *Seth A. Schmeeckle*
Ralph S. Hubbard III, T.A., La. Bar 7040
Seth A. Schmeeckle, La. Bar 27076
LUGENBUHL, WHEATON, PECK, RANKIN
& HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Phone:  (504) 568-1990
Fax:  (504) 310-9195
Email: rhubbard@lawla.com
         sschmeeckle@lawla.com

And

Donna J. Vobornik
Daniel E. Feinberg
Anthony T. Eliseuson
SNR DENTON US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6404
Phone: (312) 876-8000
Fax:  (312) 876-7934
donna.vobornik@snrdenton.com
daniel.feinberg@snrdenton.com
anthony.eliseuson@snrdenton.com

*Attorneys for Defendants The Travelers Indemnity Company of Connecticut, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois, St. Paul Fire & Marine Insurance Company, and The Standard Fire Insurance Company*