UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) | MDL NO. 2047<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO ALL CASES**

**DEFENDANT TAISHAN GYPSUM CO. LTD. AND TAIAN TAISHAN PLASTERBOARD CO., LTD.'S OPPOSITION TO THE PSC'S MOTION CHALLENGING THE ADEQUACY AND COMPLETENESS OF THEIR DISCOVERY RESPONSES AND TO COMPEL DISCOVERY <u>AND JURISDICTIONAL DEPOSITIONS TO BEGIN IN FEBRUARY 2011</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

PROCEDURAL HISTORY...........................................................................................................3

    A.    Plaintiffs' Request for Discovery from TG and TTP.........................................................3

    B.    The Second Meet and Confer ............................................................................................4

ARGUMENT..................................................................................................................................5

    A.    Defendants objected to the over-breadth of the definitions of "You," "Your," and "Your Company," in their responses to the Interrogatories and Document Requests............................6

    B.    Defendants Objected to Document Requests that Seek Documents More Appropriately Sought from Third parties or are Publicly Available................................................................8

    C.    Defendant's objections to the PSC's Instruction regarding the time frame for Production of Documents (General objection 11) ..............................................................................................8

    D.    Objection to producing documents in violation of Chinese law (General objection 13)....8

    E.    Defendants' responses to requests for production numbered 5-7, 14-20, 24-25, 30-31 and interrogatories numbered 6, and 15-16 that it will produce documents that "can be reasonably located." ....................................................................................................................................9

    F.    Defendants limited their responses to requests for producing documents "concerning [Defendants'] sales of drywall made to dimensions commonly used in the U.S. ..." in requests for production 14-15 and 18-20. Rec. Doc. No. 6964-3. .......................................................10

    G.    Request No. 23 Contains an Assumption of an Incorrect Factual Predicate .....................10

    H.    Defendants Objected to a Request for Information regarding their involvement in a "Cartel" (Request No. 34). Rec. Doc. No. 6964-3................................................................10

    I.    Defendants objected to a request for documents concerning their relationship with the People's Republic of China (Request No. 35) ..........................................................................11

    J.    Defendants Objected to a Request for Production of Documents concerning "Any Other Entity" (Request No. 36) and to Providing Documents Concerning the Organizational Structure of Other Entities (Request No. 37). Rec. Doc. No. 6964-3. .....................................................13

    K.    Defendants' general objection to Requests that were "overbroad," "unreasonably burdensome," and "harassing"..................................................................................................14

    L.    Defendants have agreed to produce a privilege log by the end of January 2011...............14

M. Defendants objected to Depositions in February 2011 and have moved to have them Conducted in April 2011........................................................................................................15

Defendants, Taishan Gypsum Co. Ltd. ("TG") and Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively the "Defendants,"), oppose the Motion by the Plaintiff's Steering Committee (the "PSC") "Challenging the Adequacy and Completeness of [Defendants'] Discovery Responses and to Compel Discovery and Jurisdictional Depositions" ("Motion to Compel"). As is set forth herein and in the memorandum in support of TG's and TTP's Motion for a Protective Order filed with the Court on January 14, 2011 (Rec. Doc. No. 7003-1) ("Protective Order Memorandum"), which is incorporated herein as if set forth in full, Defendants have responded properly to all appropriate requests for jurisdictional discovery and are producing all responsive non-privileged documents they have located through diligent searches. The Court should deny the PSC's Motion to Compel.[1]

## INTRODUCTION

As the Court is aware, TG has moved to vacate the defaults entered in the *Germano* and *Mitchell* actions and to dismiss those actions on the ground, *inter alia*, of lack of personal jurisdiction. At the Court's direction, the parties are engaged in discovery related to the question of personal jurisdiction over Defendants, prior to the completion of briefing on the motions. With regard to personal jurisdiction, Plaintiffs allege in substance that Defendants are subject to jurisdiction because they manufactured or sold drywall that eventually was installed in their homes. Accordingly, jurisdictional discovery should be centered on the nature and extent of Defendants' contacts with the U.S. in connection with their manufacture or sale of drywall. TG and TTP are producing all of the information and documents they have concerning their sales and potential

---

[1] Because the PSC opted in the Motion to Compel to treat TG's and TTP's separate responses to the Document Requests and Interrogatories as one, for the convenience of the Court TG and TTP will do so as well because their arguments are substantially similar.

\\\NY - 037476/000001 - 2304237 v1                1

sales of drywall made to U.S. dimensions. They are also producing all documents reflecting their contacts or communications with U.S. companies, or their representatives in China or Chinese trading companies related to such sales or potential sales. Defendants have also proposed reasonable dates in early April 2011 for their Rule 30(b)(6) depositions concerning jurisdictional issues that will allow all interested parties in cases where Defendants have been named and served to participate in the depositions.

This dispute concerns aspects of Plaintiffs' requests for discovery that grossly exceed the proper limits of jurisdictional discovery.[2] Plaintiffs seek to engage in a "fishing expedition" concerning Defendants' relationship with the Chinese government and some forty other entities, even though they have not alleged "alter ego" or "piercing the veil" as a basis for jurisdiction over TG or TTP or any facts which could sustain such theories. Plaintiffs' requests also encompass TG's parent, various entities that have a direct or indirect interest in TG, and numerous TG subsidiaries located throughout China. Plaintiffs persist in seeking discovery of TG's subsidiaries despite the fact that they have never been involved in the manufacture or sale of drywall for export to the U.S. and have had zero contact with the U.S. This discovery would not be relevant to determining TG or TTP's jurisdictional contacts with the relevant forums and is, therefore, not a legitimate area of jurisdictional discovery. In addition to being irrelevant and unnecessary for the determination of the jurisdictional issue, searching for and collecting documents from subsidiaries in the far-flung reaches of China, some of them over 1700 miles from TG's headquarters in Taian would likely cause months of delay. *See* Declaration of Frank T. Spano submitted herewith, dated January 18, 2011 ("Spano Dec.") ¶ 10. This would impose an extremely unreasonable burden on

---

[2] Plaintiffs' First Set of Interrogatories Concerning Jurisdictional Issues (the "Interrogatories"), Plaintiffs' First Request for Production of Documents Concerning Jurisdictional Issues (the "Document Requests,)" and the objections and responses thereto filed by TG and TTP are attached to the Motion to Compel as Exhibits A-F, respectively. Rec. Doc. Nos. 6964-2 through 6964-7.

TG and TTP, and unfairly delay the Court's determination of the question of personal jurisdiction for no good reason.

Accordingly, Defendants respectfully request that the Court deny the PSC's Motion to Compel.

## PROCEDURAL HISTORY

The procedural history of the proceedings is set forth in the Protective Order Memorandum and will not be repeated at length here. However, a brief overview of some key events in the case is warranted.

### A.   Plaintiffs' Request for Discovery from TG and TTP

On September 24, 2010, without prior Court authorization, Plaintiffs served the Interrogatories and Document Requests on the Defendants. On October 14, 2010, at the monthly status conference, the Court ruled that Plaintiffs could obtain discovery related to the issue of whether the Court had jurisdiction over Defendants. Spano Dec. ¶ 2, Exh. A at 24:4-24:5.

The parties agreed on the scheduling of responses to the discovery demands and production of documents during a November 5, 2010 "meet and confer." Spano Dec. ¶¶ 3, 4, Exh. B. During that conference, counsel agreed that TG and TTP would begin a rolling production of documents in response to Plaintiffs' document requests in mid-December that would be substantially completed by the end of January 2011. *Id.* ¶ 4.

Consistent with the parties' agreement, on December 17, 2010, TG and TTP served their Objections and Responses to the Interrogatories and Document Requests. *Id.* ¶ 5; Rec. Doc. Nos. 6964-4 through 6964-7. Defendants also produced a first tranche of documents in accordance with the production schedule. *Id.* In their Discovery Responses, TG and TTP agreed to produce all available documents relating to the manufacture or sale of drywall to the U.S. by them or by the only other TG subsidiary besides TTP that manufactured drywall for export to the U.S. Taishan

Gypsum (Weifang) Co. Ltd. *Id.* ¶ 6. This includes all documents related to their communications with U.S. companies or their representatives in China or to Chinese trading companies with respect to such sales or potential sales. *Id.*; Rec. Doc. Nos. 6964-4 through 6964-7.

### B. The Second Meet and Confer

By letter dated December 27, 2010, Plaintiffs raised questions concerning certain of TG and TTP's objections to Plaintiffs' document requests. Spano Dec. ¶ 7; Rec. Doc. No. 6964-8. On January 4, 2011, the parties met and conferred for a second time to discuss the scope of jurisdictional discovery and the deposition schedule. *Id.* ¶ 8. During the January 4, 2011 conference, the parties discussed each point raised in the December 27, 2010 letter and the reason for each of TG and TTP's objections to certain interrogatories and document requests. *Id.* By the end of the conference, it was clear that Defendants had responded fully to all of the discovery demands with one exception: Defendants continued to object to discovery that Plaintiffs had served seeking information concerning Defendants' relationship with entities that have a direct or indirect interest in TG, as well as, downstream affiliates, the Chinese government and numerous related and unrelated entities. *Id.* ¶ 9. Defendants explained at the conference that they had provided all information concerning any subsidiary that may have manufactured drywall that could have been exported for use in the U.S., but that discovery into entities which did not manufacture such drywall was improper and irrelevant to the question of whether TG and TTP had sufficient contacts with any relevant forum in the U.S. to subject them to the jurisdiction of the court. *Id.* Accordingly, Defendants had not collected documents related to these entities, which are located scattershot throughout China, in the course of Defendants' extensive fact investigation in China. *Id.* The PSC stated that the parties "agreed to disagree" regarding that discovery. *Id.*

It cannot be stressed enough that Defendants have provided complete discovery regarding their own activities and those of its subsidiaries that could have had a connection to sales of

drywall imported to the U.S.  They have fully answered each and every Interrogatory as relates to them.  Moreover, to date, TG and TTP have produced nearly 20,000 pages of documents in response to the Document Requests.  *Id*. ¶ 20.  TG and TTP are in the process of reviewing thousands more pages of documents, many of which are in Chinese, and are on schedule to complete the production of documents properly within the scope of the Document Requests in the timeframe agreed to with the PSC.  *Id*. ¶ 21.[3]

Nevertheless, on January 12, 2011, the PSC moved to compel further answers to the Interrogatories and Document Requests and to compel Defendants' depositions in February.  Rec. Doc. No. 6964.

## ARGUMENT

Plaintiffs seek to discover information and documents that are not relevant to determining whether TG or TTP is subject to the Court's jurisdiction, and which would substantially delay the completion of jurisdictional discovery.

Plaintiffs mischaracterize the scope of discovery under Fed. R. Civ. P. 34(a)(1) as "whether the request is 'reasonably calculated to lead to the discovery of admissible evidence.'"  They omit the overreaching requirement under Fed. R. Civ. P. 26(b)(1) that discovery must be relevant to a claim or defense or "for good cause" discovery may be extended to matters relevant to the subject matter involved in the action.  In addition, Plaintiffs ignore that even relevant discovery requests are subject to the proportionality, burden and cost limitations set forth in Rule 26(b)(2)(C).

At this stage, where the Court has not yet determined whether Defendants are subject to its jurisdiction, Plaintiffs' discovery requests must be relevant to the claims of personal jurisdiction in these cases and seek relevant information that is reasonable and proportionate to the costs of

---

[3] TG and TTP have not yet designated any documents in the production as protected under attorney client privilege. Spano Dec. ¶ 22.

obtaining it. *See* Spano Dec. 2, Exh. A at 24:4-24:5. TG and TTP have produced nearly 20,000 pages of documents in the course of this litigation and are primed to produce thousands more. Spano Dec. ¶¶ 20, 21. Nevertheless, Plaintiffs seek to compel additional burdensome and irrelevant discovery, even before having had the opportunity to review the vast majority of what TG and TTP have produced.

To facilitate review by the Court, TG and TTP will respond to each of the PSC's responses in the order raised them in the PSC's Motion.

### A. Defendants objected to the over-breadth of the definitions of "You," "Your," and "Your Company," in their responses to the Interrogatories and Document Requests[4]

Plaintiffs' definition of "You" is too broad for purposes of jurisdictional discovery. None of the complaints in these cases allege that the contacts of any other entities should be attributed to Defendants in order for the Court to exercise personal jurisdiction. The only allegations concerning Defendants' contacts with affiliated entities arises in connection with claims that "to the extent that Defendants are sovereign entities" claims may be brought against them pursuant to certain exceptions to the Foreign Sovereign Immunities Act ("FSIA"). Plaintiffs' allegations that a Chinese governmental entity, SASAC, controlled Defendants and certain related entities, are not sufficient to plead that personal jurisdiction be exercised under a veil piercing, alter ego or agency theory. Similarly, the allegations do not state claims under the FSIA, but, in any case, claims under the FSIA are irrelevant to the question of personal jurisdiction over Defendants. Further, Plaintiffs' inclusion of "departments, divisions, and including, without limitation, any organization or entity which it manages or controls, together with all present and former directors, officers . . ." is irrelevant, duplicative, ambiguous, and overbroad. Instead, TG and TTP

---

[4] The definitions of "You," "your," or "your company," are the same in the PSC's interrogatories and requests for production. Rec. Doc. No. 6964-2, 6964-3.

reasonably interpreted "You" to mean TG or TTP, as well as their predecessors in interest, agents, employees, representatives or other persons purporting to act for or on their behalf. *See* Objections to Definitions, Rec. Doc. No. 6964-4 through 6964-7 at ¶ 11.

At the meet and confer, Defendants further explained that notwithstanding their objection they would provide discovery relating to the manufacture or sale by TG, TTP or their subsidiaries of any drywall for export to the U.S. Taishan Gypsum (Weifang) Co Ltd. is the only TG subsidiary besides TTP that ever manufactured drywall for export to the U.S.[5] Spano Dec. ¶ 6. The activities of TG and TTP's other subsidiaries or related entities are simply not relevant to the question of whether TG or TTP have the minimum contacts necessary for personal jurisdiction.

The PSC also mistakenly argues that its expansive definition of "You" is necessary to obtain proper interrogatory answers or document production concerning any "Related Entity" in the U.S. *See* Interrogatories 1-3 and Requests 1-8, 14, 21, 23-25. Rec. Doc. Nos. 6964-2, 6964-3.[6] As the responses to Interrogatories 1-3 clearly state, neither TG nor TTP had an ownership interest in a company in the U.S., agents in the U.S., nor employees in the U.S. Rec. Doc. Nos. 6964-4,

---

[5] Notwithstanding that none of the 18 TG subsidiaries besides TTP and Taishan Gypsum (Weifang) Co. Ltd. named as defendants in the *Gross* action had anything to do with the manufacture of drywall that could have been used in the U.S., the PSC not only continues to seek discovery regarding these subsidiaries, it also seeks default judgments against them. The PSC continues to ignore the directive of the Court that it provide a good faith basis for alleging claims against entities although it has no reason to believe that these entities had anything to do with this litigation. The Court stated,

> I think counsel for Taishan makes a point about he's interested in why some of this individual companies or why the individual "subsidiaries" are brought into the litigation, I think he has a right to discover that and pursue that with the plaintiffs. He should know why. Spano Dec. 2, Exh. A at 23:23 – 24:3.

Despite the Court's Order and counsel's repeated entreaties, the PSC has refused to provide any information about its basis for implicating these corporations in this litigation, dismiss the TG subsidiaries, or even withdraw its motion for a preliminary default.

[6] The term "Related Entity" is defined by Defendants' answers to interrogatories 1 and 2 as:

(1) Any corporation or business in which you "possessed an ownership interest in . . . that is located in the United States," as well as "any subsidiaries, affiliates or agents of that corporation which are also located in the United States . . . ." (Interrogatory No. 1); or
(2) "Any company located in the United States" that "served as an agent, affiliate or representative for You with regard to sales of Your Chinese drywall to United States purchasers . . ." or any parents, subsidiaries, affiliates or agents of the company." (Interrogatory No. 2). Rec. Doc. No. 6964-2.

6964-5. Thus, Defendants have no "Related Entities" as that term is defined in the discovery demands. Spano Dec. ¶ 11.

Consequently, TG and TTP have properly responded to Interrogatories 1-3 and to Document Requests 1-8, 14, 21, 23-25 and should not be compelled to respond further.

**B.     Defendants Objected to Document Requests that Seek Documents More Appropriately Sought from Third parties or are Publicly Available**

Rule 26(b)(2)(C)(i) expressly provides that courts <u>must</u> place limits on discovery that "can be obtained from some other source that is more convenient, less burdensome or less expensive." Accordingly, TG and TTP appropriately objected to discovery requests seeking documents that can be more easily obtained from third parties, which the Plaintiffs already have, or which are publicly available. General Objections 7 and 8, Rec. Doc. Nos. 6964-6 and 6964-7 at 4. In any event, the PSC's contentions are moot, because no responsive documents were withheld based on these objections.

**C.     Defendant's objections to the PSC's Instruction regarding the time frame for Production of Documents (General objection 11)**

During the parties' meet and confer, TG and TTP explained that they utilized the PSC's definition of "relevant time period" in responding to the discovery requests and did not withhold any discovery. Spano Decl. ¶ 12. Thus, the PSC's motion is moot. In addition, TG and TTP withdraw their objection.

**D.     Objection to producing documents in violation of Chinese law  (General objection 13)**

Defendants are entities organized under Chinese law with their principal places of business in China. Accordingly, TG and TTP object to the Document Requests to the extent that they may require production of documents or disclosure information prohibited by the laws of the People's Republic of China and any political subdivisions therein. During the parties' meet and confer TG

and TTP explained that thus far they had not withheld any discovery based on this objection, Spano Dec. ¶ 13, but reserved the right to do so in the event broader discovery is required.

The PSC now argues that to the extent TG or TTP are prohibited from producing responsive documents under Chinese law, they should provide a "privilege log" containing the applicable Chinese law. TG or TTP agree in principle that if in the future they determine it would be appropriate to withhold any item or category of discovery based on Chinese law, they should promptly and specifically inform the PSC of that determination and explain the basis for their objection. Defendants do not believe, however, that a "privilege log" is the appropriate mechanism for doing so under the Federal Rules.

### E.  Defendants' responses to requests for production numbered 5-7, 14-20, 24-25, 30-31 and interrogatories numbered 6, and 15-16 that it will produce documents that "can be reasonably located."

Defendants properly responded to requests for production by stating that they will produce all responsive, non-privileged documents that "can be reasonably located."

While a party must produce the responsive documents that are in its "possession, custody, or control" a party is not required to search everywhere or produce *every* responsive document regardless of cost, burden, or duplicativeness. For example, Fed. R. Civ. P. 26(b)(2)(B) provides that a party need not produce electronically stored information ("ESI") that is not reasonably accessible due to undue burden or cost. Similarly, Fed. R. Civ. P. 26(b)(2)(C) embodies the concept of proportionality. The frequency or extent of discovery may be limited for a number of reasons, including if discovery requests are: (i) unreasonably cumulative or duplicative or can be obtained from another source that is less burdensome or expensive, or (ii) if the burden or expense of the proposed discovery outweighs its likely benefit, considering a number of factors such as the needs of the case, the issues at stake, and the importance of the requested discovery in resolving those issues. *See* Fed. R. Civ. P. 26(b)(2)(C). *See, e.g. Thibault v. Bellsouth Telecom., Inc.*,

07-Civ-200, 2008 WL 4808893, at *4 (E.D. La. Oct. 30, 2008) (noting that Rule 26(b)(2)(B) provides that party make seek protection for redundant or disproportionate discovery).

In this case, TG and TTP have diligently complied with their discovery obligations. As Defendants stated at the meet and confer, Defendants' U.S. attorneys have spent several weeks in China gathering the facts and searching for relevant documents. This work included looking in the hard copy files of the relevant departments and employees, and applying comprehensive search terms to ESI. Spano Dec. ¶ 18. The law does not require more.

**F.     Defendants limited their responses to requests for producing documents "concerning [Defendants'] sales of drywall made to dimensions commonly used in the U.S. ..." in requests for production 14-15 and 18-20. Rec. Doc. No. 6964-3.**

At the meet and confer, Defendants reiterated what their Manufacturer's Profile Forms explicitly stated: TG and TTP only manufactured drywall for export to the U.S. on a made-to-order OEM basis, and sold the drywall to entities in China. The purchasers then arranged to ship the drywall to the U.S. Defendants are responding in broad fashion to the interrogatories and document requests seeking sales and shipping information by incorporating by reference their MPFs and producing all the underlying documents. Spano Dec. ¶ 14. Indeed, Defendants' responses are broader than the PSC's request, and the PSC has no cause for complaint. Thus, Defendants are providing all available information regarding shipments of drywall to the U.S.

**G.     Request No. 23 Contains an Assumption of an Incorrect Factual Predicate**

Document Request 23 seeks documents concerning communications with any "Related Entity." As was set forth above, neither TG nor TTP has ever had any ownership interest in any corporations in the U.S., any agents in the U.S. for the sale of U.S. drywall, or any employees in the U.S. Because the Document Request incorrectly assumes the existence of a "Related Entity," no further response is possible.

**H.     Defendants Objected to a Request for Information regarding their involvement in a**

"Cartel" (**Request No. 34**). **Rec. Doc. No. 6964-3.**

Defendants objected to a request that they provide information regarding legal proceedings "involving a cartel and/or plasterboard" that they were involved in on the grounds that the request was vague, ambiguous and incomprehensible. The request makes no grammatical sense and is thus objectionable on the stated grounds; Defendants are not required to guess at what a request means. Thus, at the meet and confer, Defendants asked the PSC to provide a basis for its inquiry into whether Defendants belonged to a "cartel," the PSC provided an ambiguous and evasive response. Spano Dec. ¶ 15. Now, although the PSC provides a dictionary definition of the word "cartel," it continues to evade providing a basis for the inquiry, and instead claims that the basis for the inquiry is protected work-product. Rec. Doc. No. 6964-1 at 8.

Further, the PSC has articulated no basis for how involvement in "a combination of independent commercial or industrial enterprises designed to limit competition or fix prices" – as it belatedly defines the term cartel, is relevant to the jurisdictional inquiry.

Notwithstanding the above, at the meet and confer Defendants informed the PSC that TG and TTP are not aware of any legal proceedings involving allegations that TG or TTP were or are involved in a cartel. Spano Dec. ¶ 15. The only legal proceedings that they are involved in regarding plasterboard are these MDL proceedings and the state court actions in which they had been served, which Defendants have identified through their response to Interrogatory No. 5. Rec. Doc. Nos. 6964-4, 6964-5 at 9. Thus, Defendants have produced responsive documents, and the PSC's motion in this regard is moot. Furthermore, since the PSC cannot show any factual basis for an inquiry into Defendants' involvement in a "cartel," the PSC should not be permitted to request any further document or deposition discovery on this non-issue.

**I.    Defendants objected to a request for documents concerning their relationship with the People's Republic of China (Request No. 35)**

Defendants properly objected to the request for documents concerning their relationship with the People's Republic of China. This inquiry is irrelevant to the legitimate scope of jurisdictional discovery based on the pleadings and arguments of the parties in this litigation and, as noted above, relevance *is* the proper measure of the scope of discovery. *See* Protective Order Memorandum, Rec. Doc. No. 7003-1 at 19-28.

The PSC hypothesizes that Defendants' relationship to the government of China *could* be relevant under certain circumstances: "for example, if the agents of the People's Republic of China conducted trade missions directed to the United States . . . targeting the drywall market in the United States and the People's Republic of China had an ownership interest in Defendants, then there may be a question of agency/alter ego from those activities . . . ." Rec. Doc. No. 6964-1 at 9. But under the law, hypotheticals cannot stand in for well-pleaded factual obligations as a basis for discovery. *See* Protective Order Memorandum, Rec. Doc. No. 7003-1 at 19-28.

Moreover, the PSC's hypothetical is untethered from the law. A fundamental element of an agency relationship is that the principal controls the agent. Restatement (Third) of Agency § 1:01 (2006). It is inconceivable that Defendants controlled the Chinese government. In fact, the PSC alleges that the Chinese government controlled Defendants. Thus, as a matter of law, no activities of the Chinese government could have been done by "agents" of Defendants.

Further, the PSC's unsupported and conclusory claims of control are insufficient to allege any form of alter ego relationship between Defendants and any other entity. The PSC alleges no facts whatsoever that the Chinese government or any entity that has direct or indirect interest in TG served as an agent at TG's direct. The PSC should not be permitted to burden TG and TTP with wasteful, time-consuming and expensive discovery concerning a hypothetical relationship with the Chinese government not relevant to the jurisdictional issue before the Court.

**J.      Defendants Objected to a Request for Production of Documents concerning "Any Other Entity" (Request No. 36) and to Providing Documents Concerning the Organizational Structure of Other Entities (Request No. 37).  Rec. Doc. No. 6964-3.**

Because Defendants' objections to Responses 36 and 37 involve overlapping issues, Defendants will address these objections together.  Defendants objected to the request for documents concerning their ownership interest in or affiliation with any "Other Entity," as irrelevant.  Defendants also objected to providing documents concerning the organizational structure of any other entity.  The PSC defined "Other Entity" as "any subsidiary, affiliate, or agent of" multiple known manufacturers or distributors of Chinese drywall. Rec. Doc. No. 6964-3 at 2. The PSC's term Other Entities[7] includes forty corporations, about half of whom are TG subsidiaries that the PSC named as defendants in the *Gross* action without any grounds for doing so.  The other half are unrelated foreign corporations located throughout China and a number of other countries, including Mexico.

Defendants asked the PSC, at the meet and confer to articulate a reason why Defendants should provide any information concerning completely unrelated entities.  Spano Dec. ¶ 16. Defendants also stated that they had no such information.  *Id.*  Nonetheless, the PSC has persisted in seeking this information.  *Id.*  According to the PSC, it is seeking information as to whether Defendants "have an ownership interest in or affiliation with other entities (Request number 36) or share personnel and may have had any communications with other entities that may have directed,

---

[7] "**Other Entities**" means, collectively, any subsidiary, affiliate or agent of Pingyi Baier Building Materials Co., Ltd., Taishan, Beijing New Building Materials Public Limited Co. ("BNBM"), China National Building Material Co., Ltd., Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"), China National Building Materials Group Co. ("CNBM Group"), CNBM USA Corp., Chenxiang, Sinkiang Tianshan Building Material and Gypsum Product Co., Ltd., Taishan Gypsum Co., Ltd., Lucheng Branch, Ynan Taishan Gypsum and Building Material Co., Ltd., Tai'an Jindin Building Material Co., Ltd., Taishan Gypsum (Xiangtan) Co., Ltd., Taishan Gypsum (Pingshan) Co., Ltd., Taishan Gypsum (Hengshui) Co., Ltd., Taishan Gypsum (Henan) Co., Ltd., Hubei Taishan Building Material Co., Ltd., Taishan Gypsum (Tongling) Co., Ltd., Weifang Aotai Gypsum Co., Ltd., Taishan Gypsum (Pizhou) Co., Ltd., Fuxin Taishan Gypsum and Building Material Co., Ltd., Taishan Gypsum (Wenzhou) Co., Ltd., Taishan Gypsum (Chongqing) Co., Ltd., Taishan Gypsum (Jaingyin) Co., Ltd., Qinhuangdao Taishan Building Material Co., Ltd. a/k/a Qinhuang Dao Taishan Building Materials Co., Ltd., Tai'an Tiashan Gypsum Board Co., Ltd., Taishan Gypsum (Baotou) Co., Ltd., Shaanxi Taishan Gypsum Co., Ltd., Pingyi Zhongxing Paper-Faced Plasterboard Co., Ltd. f/k/a Chenxiang Building Materials Co., Ltd., Shanghai Yu Yuan Imp & Exp Co., Ltd.

facilitated, or conducted sales of Defendants' products into the United States" (Request number 37).  It is obvious that rather than provide a reason for the request, the PSC has instead provided a tautology: according to the PSC, requests seeking information about control by or over other entities are relevant because they may lead to evidence of Defendants' control over other entities or agency relationships with other entities.

Again, the Protective Order Memorandum explains why discovery concerning TG or TTP's relationships with Other Entities is not appropriate for the jurisdictional issue before the Court.  There are no allegations of any sort that the corporate veil between any "Other Entity" and Defendants should be pierced for the purpose of establishing personal jurisdiction over Defendants.  Furthermore, Plaintiffs' amorphous, unsubstantiated allegations that other entities controlled Defendants do not state claims to assert personal jurisdiction under any veil piercing, alter ego or agency theory.  Exercising one's rights as a controlling shareholder is simply insufficient to pierce the veil for jurisdictional purposes or warrant jurisdictional discovery on the issue.  *See* Protective Order Memorandum, Rec. Doc. No. 7003-1 at 22.

**K.     Defendants' general objection to Requests that were "overbroad," "unreasonably burdensome," and "harassing"**

Defendants have objected generally to responding to discovery requests that are "overbroad," "unreasonably burdensome," and "harassing."  At the meet and confer, Defendants explained that they had not withheld any discovery on the basis of these general objections, except when stated in response to a particular request.  Spano Dec. ¶ 17.  Thus, TG and TTP continue to object on this basis to the disputed discovery requests concerning subsidiaries that had nothing to do with the manufacture or sale of drywall to the U.S., the Chinese government, or other entities.

**L.     Defendants have agreed to produce a privilege log by the end of January 2011**

The PSC complains that Defendants have not produced a privilege log in accordance with

the PTO 15.  As the production is ongoing, (as agreed by the parties), Defendants have not made any final determinations as to privilege, so no privilege log is due and owing.  When the production is concluded, Defendants will produce a privilege log in accordance with PTO 15.

**M.    Defendants objected to Depositions in February 2011 and have moved to have them Conducted in April 2011**

The PSC continues to press for a precipitous deposition schedule, claiming that the Rule 30(b)(6) depositions of Defendants should be conducted in February 2011.  The PSC has made this request without even seeing the great majority of the documents to be produced by Defendants, and indicated at the meet and confer that it would conduct these depositions even if the parties had not agreed as to the proper scope of the depositions or the Court had not ruled on that issue.  Spano Dec. ¶ 19.  This demonstrates that the PSC is prepared to engage in a waste of time and resources merely to obtain what they must conceive of as a litigation advantage.  The Protective Order Memorandum shows in detail why these depositions should not occur until April 2011.  Rec. Doc. No. 7003-1 at 27.

WHEREFORE, Defendants TG and TTP respectfully request that this Honorable Court deny the PSC's motion in all respects.

Respectfully submitted,

*/s/* Thomas P. Owen
Joe Cyr
Frank T. Spano
Eric Statman
Matthew J. Galvin
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Email: Joe.cyr@hoganlovells.com
Frank.spano@hoganlovells.com
Eric.statman@hoganlovells.com
matthew.galvin@hoganlovells.com

Telephone: 212-918-3000
Facsimile: 212-918-3100

Richard C. Stanley (La. Bar No. 8487)
Thomas P. Owen, Jr. (La. Bar No. 28181)
STANLEY, REUTER, ROSS, THORNTON
& ALFORD, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: 504-523-1580
Facsimile: 504-524-0069
E-mail: rcs@stanleyreuter.com
tpo@stanleyreuter.em

**Attorneys for Taishan Gypsum Co. Ltd.**

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Memorandum of Law of Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co., Ltd. in Opposition to the PSC's Motion Challenging the Adequacy and Completeness of Defendants' Discovery Responses and to Compel Jurisdictional Depositions to Begin in February 2011 has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 18th day of January, 2011.

                                                                                          */s/*  Thomas P. Owen Jr.