UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | *  MDL No. 2047<br>*<br>*  SECTION L<br>*<br>*  JUDGE ELDON E. FALLON<br>*<br>*  MAGISTRATE JUDGE<br>*  JOSEPH C. WILKINSON, JR.<br>* |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

THIS DOCUMENT RELATES TO ALL CASES

### DECLARATION OF FRANK T. SPANO IN SUPPORT OF DEFENDANT TAISHAN GYPSUM CO. LTD. AND TAIAN TAISHAN PLASTERBOARD CO., LTD.'S OPPOSITION TO THE PSC'S CHALLENGING THE ADEQUACY AND COMPLETENESS OF THEIR DISCOVERY RESPONSES AND TO COMPEL DISCOVERY AND JURISDICTIONAL DEPOSITIONS TO BEGIN IN FEBRUARY 2011

I, Frank T. Spano, declare, under penalty of perjury, that the following statements are true and correct:

1. I am a partner of the firm of Hogan Lovells US LLP, counsel for Defendants Taishan Gypsum Co. Ltd. ("TG") and Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively, "Defendants"). I am fully familiar with the facts set forth herein. I affirm that I am not a party to the action. I respectfully submit this declaration in support of Defendants' Opposition to the PSC's Motion Challenging the Adequacy and Completeness of their Discovery Responses and to Compel Discovery and Jurisdictional Depositions to Begin in February 2011.

2. Attached hereto as Exhibit A is a true and correct copy of the Transcript of the Status Conference Proceedings before Hon. Eldon E. Fallon on October 14, 2010, *In re Chinese-*

*Manufactured Drywall Products Liability Litigation*, No. 09-MD-2047, wherein Judge Fallon ruled that Plaintiffs could obtain jurisdictional discovery.

3. On November 5, 2010, Defendants and the PSC held a telephone "meet and confer," wherein the parties agreed on the scheduling of responses to Plaintiffs' discovery demands and production of documents served by Plaintiffs on September 24, 2010.

4. During the "meet and confer," counsel agreed that TG and TTP would begin a rolling production of documents in response to Plaintiffs' document requests in mid-December, that would be substantially completed by the end of January 2011. Attached hereto as Exhibit B is a true and correct copy of an e-mail from L. Davis, of the PSC, to R. Stanley, counsel for Defendants (Nov. 5, 2010: 4:14PM EST) describing the November 5, 2010 meeting between the PSC and counsel for Defendants on the scope of discovery and the scheduling of depositions.

5. Consistent with the parties' November 5, 2010 agreement, on December 17, 2010, TG and TTP served their discovery responses ("Discovery Responses"), along with the first tranche of documents in accordance with the production schedule.

6. In their Discovery Responses, TG and TTP agreed to produce all available documents relating to the manufacture or sale of drywall to the U.S. by them or by the only other TG subsidiary besides TTP that manufactured drywall for export to the United States: Taishan Gypsum (Weifang) Co. Ltd. This includes all documents related to their communications with U.S. companies or their representatives in China or to Chinese trading companies with respect to such sales or potential sales.

7. By letter dated December 27, 2010, Plaintiffs questioned certain of TG and TTP's objections to Plaintiffs' document requests.

8. On January 4, 2011, the parties met and conferred for a second time to discuss the scope of jurisdictional discovery and the deposition schedule. During this conference, the parties discussed each point raised in the December 27, 2010 letter and the reason for each of TG and TTP's objections to certain interrogatories and document requests.

9. I explained at the January 4, 2011 conference that Defendants were providing all accessible information and documents, which concern any subsidiary that may have manufactured drywall that could have been exported for use in the United States. I reiterated Defendants' previous explanation that discovery into entities which did not manufacture such drywall was improper and irrelevant to the question of whether TG and TTP had sufficient contacts with any relevant forum in the United States to subject them to the jurisdiction of the court. Accordingly, I explained that Defendants had not searched for or collected documents related to these entities, which are located scattershot throughout China, in the course of Defendants' extensive fact investigation in China. The PSC stated that the parties "agreed to disagree" regarding that discovery.

10. Requiring the defendants to provide Discovery from every TG subsidiary named in the *Gross* complaint, the Chinese government, and numerous entities that have direct and indirect ownership interests in TG, is irrelevant and unnecessary for determining whether jurisdiction exists over TG and TTP. Further, searching for and collecting potentially responsive documents could cause months of delay, as some of these subsidiaries are located over 1700 miles from TG.

11. In relation to Defendants' general objection the over-breadth of the definitions of "You," "Your," and "Your Company," I explained during the meet and confer that regardless of

3

the definition of "You," Defendants has no "Related Entities" as that term is defined in the discovery demands.

12. In relation to Defendants' General Objection No. 11 to Plaintiffs' Document Requests regarding time frame, during the parties' meet and confer on January 4, 2011, I explained that TG and TTP had used the PSC's definition of "relevant time period" in compiling their responses to Plaintiffs' discovery requests, and had not withheld any responsive documents based on the date or time period of the documents. Furthermore, Defendants hereby withdraw General Objection No. 11.

13. In relation to Defendants' General Objection No. 13 regarding Chinese law, I explained that while TG and TTP were not reserving all rights to raise an objection under Chinese law in the future, TG and TTP have not withheld any documents pursuant to Chinese law. In addition, I explained that if in the future we determine it would be appropriate to object to any particular item of discovery based on Chinese law, we will promptly and specifically inform the PSC of the objection and the basis for it.

14. In relation to Defendants' limiting their responses to requests for producing documents "concerning [Defendants'] sales of drywall made to dimensions commonly used in the U.S. ..." in requests for production 14-15 and 18-20, during the January 4, 2011 meet and confer, Defendants stated to the PSC that their Manufacturer's Profile Forms contained a summary of all the available information on the subject of their sales of drywall that was shipped to the U.S., and that Defendants were producing all of the underlying documents. In substance, Defendants are producing more information than the Requests for Production actually sought.

15. In relation to Defendants' objections to Plaintiffs' Document Request No. 34 regarding documents related "to any legal proceedings involving a cartel", during the January 4,

2011 meet and confer, when I asked for PSC's basis for its inquiry, the PSC only provided an ambiguous and evasive response to the question that did not provide any meaningful information. TG and TTP are not aware of any legal proceedings involving allegations that TG or TTP were or are involved in a cartel.

16. In relation to Defendants' objections to Document Requests 36 concerning "Any Other Entity" and 37 concerning the "Organizational Structure of Other Entities," during the January 4, 2011 meet and confer, Defendants asked the PSC to articulate a reason why Defendants should provide any information concerning completely unrelated entities. Defendants also stated that they had no such information. Nonetheless, the PSC has persisted in seeking this information.

17. In relation to Defendants' boilerplate objections that Plaintiffs' requests were "overbroad," "unreasonably burdensome," and "harassing", Defendants informed the PSC at the January 4, 2011 meet and confer that no discovery was being withheld on the basis of these general objections. Defendants do, however, continue to object on this basis to discovery concerning subsidiaries that had nothing to do with the manufacture or sale of drywall shipped to the U.S., their upstream affiliates, the Chinese government, or other unrelated entities.

18. Throughout the January 4, 2011 meet and confer, I informed the PSC that Defendants responded properly to all of the appropriate requests for jurisdictional discovery and are producing all responsive non-privileged documents they have located through diligent searches. I explained that I, and various other attorneys from my firm, spent several weeks in China gathering the facts and searching for relevant documents. This work included looking in the hard copy files of the relevant departments and employees, and applying comprehensive search terms to electronic storage information.

19. Regarding the scheduling of depositions, the PSC continues to press for a precipitous deposition schedule, claiming that the Rule 30(b)(6) depositions of Defendants should be conducted in February 2011. The PSC has made this request without even seeing the great majority of the documents to be produced by Defendants, and indicated at the meet and confer on January 4, 2011 that it would conduct these depositions even without resolution of the proper scope of the depositions by the Court or by stipulation.

20. To date, TG and TTP have produced nearly 20,000 pages of documents in response to the Document Requests.

21. TG and TTP are in the process of reviewing thousands more pages of documents, many of which are in Chinese, and are on schedule to complete the production of documents properly within the scope of the Document Requests in the timeframe agreed to with the PSC.

22. TG and TTP have not yet designated any documents in the production as protected under attorney-client privilege.

New York, New York
Date: January 18, 2011

_____
Frank T. Spano