# EXHIBIT A

**AFFIDAVIT OF C. DAVID DURKEE IN SUPPORT OF OPPOSITION TO THE
PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR AN ACCOUNTING**

I, C. David Durkee, declare as follows:

1.      I am attorney at law, licensed to practice before all the courts of the State of Florida. I am counsel of record for plaintiffs in member actions in this multi-district litigation, including *Peterson v. Treasure Coast Homes, LLC*, E.D. La. Case No. 2:09-cv-04319-EEF-JCW, and *Kent v. Lowe's Home Centers, Inc.*, E.D. La. Case No. 2:10-cv-01110-EEF-JCW. I have personal knowledge of the following facts, and can and will testify to their accuracy if called upon to do so.

2.      I also represent individual plaintiffs in well over 100 Chinese drywall actions currently pending in Florida state courts. **Exhibit B** is a copy of a list of such currently-pending Florida actions.

3.      In each of these state court actions, the plaintiff(s) seek to recover not from the foreign manufacturer of the Chinese drywall, but from domestic--typically Florida-based--builders, installers, suppliers, and other entities responsible in some way for the harm caused to the plaintiffs by the Chinese drywall.

4.      These cases were filed in 2009 and 2010, and are at various stages of discovery. However, in none of these cases has it been necessary, or even possible, for the plaintiffs to make use of any of the international discovery or service-of-process performed by the PSC in this multi-district litigation. The foreign depositions taken by the PSC in this litigation are similarly irrelevant to the Florida state actions, as are the related discovery and other documents maintained in the document depository in this litigation.

5.  **Exhibits C, D, E,** and **F,** are copies of pleadings filed by this office is the following Florida state court actions: *Acosta v. Hansen Homes of South Florida, Inc.*, Lee County Circuit Court Case No. 10-CA-001851 (Complaint attached as **Exhibit C**); *Albano v. Centerline Homes Construction, Inc.*, Broward County Circuit Court Case No. 09-46262 CACE 09 (Second Amended Complaint attached as **Exhibit D**); *Ammons v. Florida Style Services, Inc.*, Lee County Circuit Court Case No. 10-CA-002388 (First Amended Complaint attached as **Exhibit E**); and *Arbelo v. Midwest Construction and Development, Inc.*, St. Lucie County Circuit Court Case No. 562009CA010254 (Complaint attached as **Exhibit F**).

I declare under penalty of perjury under the laws of the State of Louisiana that the foregoing is true and correct. Executed this 7th day of January, 2011.

FURTHER AFFIANT SAYETH NOT.

_____
C. David Durkee, Esq.

SWORN TO AND SUBSCRIBED before me this ___7___ day of __January__, 2011.

☑  Personally Known
☐  Produced Identification
☐  Type of Identification Produced _____

_____
Signature of Notary State of Florida

*Paloma R Stewart*
_____
Printed Name of Notary Public

My Commission Expires:

PALOMA STEWART
Comm# DD0632125
Expires 10/19/2012
Florida Notary Assn., Inc

2

# *EXHIBIT B*

| Client/Case Info. |
| --- |
| Jose L. & Sofia Acosta v. Hansen Homes of South Florida, Inc. |
| Lee County Case No.: 10-CA-001851 |
| Carol Albano, et al v. Centerline Homes Construction, Inc, et al. |
| Broward County Case No.: 09-46262 |
| Dana and Rick Ammons, et al. v. Florida Style Services, Inc. |
| Lee County Case No.: 10-CA-002388 |
| Luis and Fatima Arbelo, et al v. Midwest Construction and Development Inc. |
| St. Lucie County Case No.: 56 2009 CA 010254 |
| Evelyn Arias v. D.R. Horton, Inc. |
| Lee County Case No.: 10-CA-001186 |
| Daniel Avello, et al v. North Palm Estates Homes, Inc., et al. |
| Miami-Dade County Case No.: 09-81831CA25 |
| Gary and Kristi Bailey et al. v. Karr Drywall, Inc. |
| Lee County Case No.: 10-CA-002390 |
| Georgia and William Bailey v. Hansen Homes of South Florida, Inc. |
| Lee County Case No.: 10-CA-001852 |
| Jeremy and Carla Banks, et al. v. United Farmers, Inc. |
| Lee County Case No.: 10-CA-002399 |
| Aurora Barcia v. Chabot Enterprises, Inc., et al. |
| St. Lucie County Case No.: 56-2009-CA-009336 |
| Fernando and Barbara Barragan, et al. v. Pride Homes of Lakes By the Bay - Parcell H LLC, et al. |
| Miami-Dade County Case No.: 10-3357 CA 01 |
| Jean Beauvilet v. Westminister Builders |
| St. Lucie County Case No.:56 2010 CA 5602 |
| Gerald and Helen Bell v. Banner Supply Co., et al. |
| Broward County Case No.: 1011668 |
| Suresh and Oma Bissoon v. Centerline Homes Construction, Inc., et al. |
| St. Lucie County Case No.: 56 2010 CA 001463 |
| David and Kathleen Borgardt v. Hansen Homes of South Florida, Inc., et al. |
| Lee County Case No.: 09-CA-005144 |
| Russell and Carol Brumbaugh v. Oyster Bay Homes Inc. |
| Lee County Case No.: 09-CA-005611 |
| Jeannette Calvo and Tyrone Martinez v. Banner Supply Co., et al. |
| Miami-Dade County Case No.: 10-03371 CA 01 (42) |
| Shanno Cambric, et al. v. G. Drywalls Corp. |
| Lee County Case No.: 10-CA-002400 |
| Raulin Carlo, et al. v. Pride Homes of Lakes by the Bay - Parcell J LLC, et al. |
| Miami-Dade County Case No.: 10-14513CA42 |
| Lily Carranza v. Adams Homes of Northwest Florida, Inc., et al. |
| Lee County Case No.: 10-CA-000058 |

| |
|---|
| Carlos Carvajalino, et al. v. Vincent Montalto Construction, Inc.<br>St. Lucie County Case No.: 562010CA002781 |
| Jack Rizzo, et al v. Centerline Homes Construction, Inc., et al.<br>Palm Beach County Case No.: 502009 CA 039293 MB |
| John and Sandra Conroy v. Aranda Homes, Inc., et al.<br>Lee County Case No.: 09-CA-005760 |
| Armando and Ileana Costoya v. Banner Supply Co, et al.<br>Miami-Dade County Case No.: 10-03364-CA 01 |
| Bill and Jill Craig, et al. v. Harrell's Drywall Inc., et al.<br>Pasco County Case No.: 2010CA266185B |
| Prabhakara and Ramathilakam Cuddapah v. Aranda Homes, Inc.<br>Lee County Case No.: 10-CA-001191 |
| Anika Curbelo, et al. v. Centerline Homes Construction Inc., et al.<br>Broward County Case No.: 10016551 |
| Ricardo Dabalsa, et al. v. Banner Supply Co., et al.<br>Miami-Dade County Case No.: 09-55898 CA 42 |
| William De Leon, et al. v. Banner Supply Co., et al.<br>Miami-Dade County Case No.: 10-59146 CA 42 |
| Rosibel and Brian De Los Santos v. Centerline Homes Construction Inc., et al.<br>St. Lucie County Case No.: 56 2009 CA 007181 |
| Decambre v. Majestic Homes<br>St. Lucie County Case No.: 56-2009 CA 00694 |
| Decambre & Bell v. Banner Supply Co., et al.<br>St. Lucie County Case No.: 56 2010 CA 5663 |
| Dolinsky & Wainstein v. BBS Builders<br>Broward County Case No.:10-35835 08 |
| Norma Edwards, et al. v. Centerline Homes Cosntruction Inc., et al.<br>St. Lucie County Case No.: 56 2010 CA 001465 |
| Nathan and Patricia Efries v. Hansen Homes of South Florida, Inc.<br>Lee County Case No.: 09-CA-005608 |
| Johnny Elmurr v. Groff Construction, Inc.<br>Lee County Case No.: 10-CA-001187 |
| Ronnie & Roidella Ervin v. Banner Supply Co., et al.<br>St. Lucie County Case No.: 562010CA05665 |
| James Fallmann, et al. v. Sterling Communities Inc., et al.<br>Palm Beach County Case No.: 50 2009 CA 027145 XXXX MB |
| Jose and Lisette Fernandez v. North Palm Estates Homes, Inc., et al.<br>Miami-Dade County Case No.: 09-81830CA15 |
| Dirk & Svetlana Fischer v. Arizen Homes, Inc., et al.<br>Lee County Case No.: 10-CA-004607 |
| David Flores and Monica Vasquez v. Pride Homes of Lakes by the Bay - Parcell H LLC, et al.<br>Miami-Dade County Case No.: 10-3353 CA 01 |

| |
|---|
| William Ford, et al. v. Wilson Heights Development, Inc., et al. |
| Broward County Case No.: 09043767 |
| Diana Gay, et al. v. Bradco Supply Corporation |
| Lake County Case No.: 10CA2327 |
| Vincent and Joan Geraci v. Aranda Homes, Inc., et al. |
| Lee County Case No.: 09-CA-003646 |
| Alberto Gonzalez & Yarenis Diaz v. Banner Supply Co., et al. |
| Miami-Dade County Case No.:10 51516 CA 42 |
| Luis Gonzalez v. Caribe Central, LLC, et al. |
| Miami-Dade County Case No.: 10-30775 CA 42 |
| Victor Gonzalez, et al. v. North Palm Estates Homes, Inc., et al. |
| Miami-Dade County Case No.: 09-81832CA10 |
| Wayne Graham, et al. v. Centerline Homes Construction Inc., et al. |
| Broward County Case No.: 10016601 |
| Richard and Olga Griffith v. Majestic Homes & Realty SW LLC, et al. |
| St. Lucie County Case No.: 562010CA002780 |
| Tamarra Grunstead v. Stanton Mobile Home Sales, Inc. |
| Lee County Case No.: 10-CA-001185 |
| Gulf Reflections Condominium Association Inc., et al. v. JWR Construction Services, Inc. |
| Lee County Case No.: 10-CA-000371 |
| Richard Hamburg, et al. v. Sixty Fifth and One LLC, et al. |
| Broward County Case No.: 10-11665 (110 |
| Hanzel v. E.H. Building Corp. |
| Lee County Case No.: 10--CA-004439 |
| Timothy and Maria Helmick v. Pride Homes of Lakes by the Bay - Parcel H, LLC |
| Miami-Dade County Case No.: 10-3361 CA 01 |
| Michael and Joanne Henry v. Bella Builders, Inc., et al. |
| Lee County Case No.: 10-CA-004601 |
| Nicolbe Hernandez, et al. v. KB Home Treasure Coast, LLC, et al. |
| St. Lucie County Case No.: 562010CA002782 |
| Michael A. Honas II, et al. v. Baywood Construction |
| Lee County Case No.: 10CA3659 |
| James and Maria Ivory v. KB Home Fort Myers, LLC, et al. |
| Charlotte County Case No.: 09-3274-CA |
| John and Katherine Kallas v. K. Hovnanian First Homes, LLC, et al. |
| Lee County Case No.: 09-CA-005168 |
| Coral Lakes v. Tousa Homes Inc., et al. |
| Lee County Case No.: 09-CA-001158 |
| T. Jack Kent, et al. v. Lowe's Home Centers Inc. |
| Brevard County Case No.: 10CA007572 |
| Zulfiqar and Hasmita Khandwalla v. Centerline Homes Construction Inc., et al. |
| Broward County Case No.: 10-24508 |

| |
|---|
| Anke Kondek, et al. v. G. Drywalls Corporation<br>Lee County Case No.: 10-CA-002389 |
| Kosakowski v. Fortis Construction<br>Port St. Lucie County Case No.: 09-CA-005356 |
| Helene and Christina Kranz, et al. v. Delacruz Drywall Plastering, et al.<br>Lee County Case No.:10-CA-4809 |
| Nelly Larssen-Ping, et al v. Brightwater Community #1, LLC, et al.<br>Pinellas County Case No.: 10-16735 CI 20 |
| Alejandro Larrazabal and Miguel & Ahlan Valentin v. EB Developers, Inc., et al.<br>Miami-Dade County Case No.:10 56535 CA 25 |
| Lev Levitan & Rosaliya Makarchuk v. Intercoastal Construction Co.<br>Flagler County Case No.: 2010-CA-001789 |
| Rodney and Suze Litus v. Meiben Home Builders LLC, et al.<br>St. Lucie County Case No.: 562010CA002783 |
| Juan Macario, et al. v. LPR Builders, Inc., et al.<br>Miami-Dade County Case No.: 10-15985 CA 42 |
| Arlene and Charles Mackoff v. Upjohn-Delray, et al.<br>Palm Beach County Case No.: 50 2009 CA 039290 XXXX MB |
| Bryan Masmela v. E.B. Developers Inc.<br>Miami-Dade County Case No.: 10-86822CA42 |
| McCallister v. Majestic Homes<br>St. Lucie County Case No.:56 2010 CA 5664 |
| Kinelmi LLC, Partner Time McGee v. Shelby Building Corp, et al.<br>Lee County Case No.: 09-CA-003181 |
| Diane Medlen v. Adams Homes of Northwest Florida, Inc., et al.<br>Marion County Case No.:  10-4102-CA-B |
| George Mihelich, et al. v. United Homes, Inc., et al.<br>Broward County Case No.: 0966810 |
| Raphael M. Miller & Jeannette F. Miller v. Upjohn-Delray Limited Partnership, et al.<br>Palm Beach County Case No.: 50 2010 CA 024351 XXXX MB |
| Jetson and Lee Morgan v. American Dream Builders, Inc.<br>Collier County Case No.: 10-2976-CA |
| Thomas and Kathleen Mullen v. American Gallery Development Group LLC, et al.<br>Lee County Case No.: 09-CA-004035 |
| Vincent Mulligan, et al. v. Centerline Homes Construction Inc., et al.<br>Broward County Case No.: 10016607 |
| David and Andrea Osterberg v. Steven R. Carter, Inc., et al.<br>Hillsborough County Case No.: 10 8014 |
| John and Susan Pelland, et al. v. Meritage Homes of Florida, Inc. et al.<br>Lee County Case No.: 09-CA-003029 |
| Adelky Pena v. Banner Supply Co.<br>Miami-Dade County Case No.: 10-05092CA42 |

| |
|---|
| Jorge and Rosa Perez v. North Palm Estates Homes Inc, et al. |
| Miami-Dade County Case No.: 09-81828-CA-24 |
| Narayan and Durpattie Persaud v. Bannery Supply Co. Port St. Lucie, LLC, et al. |
| St. Luice County Case No.: 562010CA005666 |
| Derrick and Robin Peterson v. Stuart South Group L.C. dba Treasure Coast Homes, et al. |
| Martin County Case No.: 09-3641-CA |
| Lindeerth Powell, et al. v. Pride Homes of Lakes by the Bay - Parcel H LLC, et al. |
| Miami-Dade County Case No.: 10-3349 CA 01 |
| Charles and Sandra Puckett v. Grove Hammocks Investments LLC, et al. |
| Miami-Dade County Case No.: 10-26625CA42 |
| Socorro Restrepo, et al. v. Pride Homes of Lakes by the Bay - Parcell H LLC, et al. |
| Miami-Dade County Case No.: 10-3343 CA 01 |
| Ramon Rivas Hernandez, et al. v. Intervest Construction, Inc., et al. |
| Osceola County Case No.: 09-CA-12818 PL |
| Erwin Rottau, et al. v. Aranda Homes, Inc., et al. |
| Lee County Case No.: 09-CA-005757 |
| Thomas and Mary Sue Rucki v. Aranda Homes, Inc., et al. |
| Lee County Case No.: 10-CA-000060 |
| Sieglinde Saeks v. Aranda Homes, Inc., et al. |
| Lee County Case No.: 10-CA-001189 |
| Perry and Stephanie Scarlett v. KB Home Treasure Coast LLC, et al. |
| St. Lucie County Case No.: 56-2009-CA-010256 |
| Michael and Verena Schneider-Christians v. Coral Lakes Landbank LLC, et al. |
| Lee County Case No.: 09-CA-005169 |
| John and Barbara Shaw v. Aranda Homes, Inc., et al. |
| Lee County Case No.: 09 CA 005759 |
| Hassan and Frauke Siddiqui v. Rivercrest LLC |
| Hillsborough County Case No.: 10 010182 |
| Silvestri v. United Home Builders |
| Lee County Case No.: 10-CA-004443 |
| Singleton v. Steven R. Carter, et al. |
| Hillsborough County Case No.: 10 18146 |
| Michael and Tatiana Smith v. K. Hovanian First Homes, LLC, et al. |
| Lee County Case No.: 10-CA-000056 |
| Randa St. Cyr, et al v. Centerline Homes Construction Inc., et al. |
| Broward County Case No.: 10017029 |
| Humberto Suarez v. Emerald Isle Homes, Inc. |
| Lee County Case No.: 10-CA-001034 |
| Fred Surman, et al. v. Lucky Strike M.K. Inc., et al. |
| Collier County Case No.: 10-2373-CA |
| Fred Surman, et al. v. Lucky Strike M.K. Inc., et al. |
| Collier County Case No.: 10-0569-CA |

| |
|---|
| Joseph Talerico, et al. v. Hansen Homes of South Florida, Inc. <br> Lee County Case No.: 10-CA-002391 |
| Charles Taylor, et al. v. Centerline Homes Construction Inc., et al. <br> Broward County Case No.: 10017028 |
| Randy Teegarden, et al. v. McCar Homes - Tampa LLC <br> Pasco County Case No.: 51-2010 CA 001483ES |
| Thomas & Nelson v. JD Custom Homes <br> Lee County Case No.: 09-CA-003950 |
| Torres and Rodriguez v. R Fry Builders <br> County Case No.: 10-CA-004348 |
| Jarl and Janice Tucker v. Aranda Homes, Inc. <br> Lee County Case No.: 10-CA-001190 |
| Barry and Barbara Tutin v. Upjohn-Delray, et al. <br> Palm Beach County Case No.: 50-2009-CA-039288 |
| Vrchota v. Suntree Homes <br> Palm Beach County Case No.: 50 2010 CA 028862 |
| Patrick Watson, et al. v. Centerline Homes Construction Inc., et al. <br> St. Lucie County Case No.: 56 2010 CA 001470 |
| Webster v. Constructo Building Services <br> County Case No.: Not issued yet |
| Udo Werner v. Comfort Home Builders, Inc. <br> Lee County Case No.: 10-CA-001415 |
| Tyler Whidden v. Judson Construction Group, LLC <br> Lee County Case No.: 09-CA-003961 |
| Margaret Williams, et al. v. Centerline Homes Construction Inc., et al. <br> St. Lucie County Case No.: 56 2010 Ca 001468 |
| Victor and Lyudmila Zheltkov v. Intercoastal Construction Co. <br> Flagler County Case No.: 2010CA986 |

# EXHIBIT C

**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT**
**IN AND FOR LEE COUNTY, FLORIDA**

10-CA-001851
Judge: Fuller, Joseph C

JOSE L. & SOFIA B. ACOSTA,                           CASE NO.:

              Plaintiffs,

     vs.                                             **COMPLAINT FOR DAMAGES:**
                                                     1. STRICT PRODUCTS LIABILITY
HANSEN HOMES OF SOUTH FLORIDA INC.,                  2. NEGLIGENCE AND NEGLIGENCE
a Florida Corporation,                                  PER SE
                                                     3. BREACH OF EXPRESS WARRANTY
              Defendant.                             4. BREACH OF IMPLIED WARRANTY


                                                     **DEMAND FOR JURY TRIAL**

———————————————————

        Plaintiffs, JOSE L. and SOFIA B. ACOSTA, bring this action as defined below against

Defendant, HANSEN HOMES OF SOUTH FLORIDA INC., and for their complaint allege,

upon information and belief and based on the investigation to date of counsel, as follows:

                            **INTRODUCTION**

     1.     PLAINTIFFS bring this action as owners of a home in Lehigh Acres, Florida, that

was built using defective drywall.

     2.     The drywall used to build PLAINTIFFS' home is defective and causes corrosion

of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, and

other household items, as well as creates noxious, "rotten egg-like" odors.  The drywall was

inherently defective and not suitable for its intended use.

     3.     This defect is latent and existed in DEFENDANT'S drywall at the time of

installation regardless of the way the product was installed, maintained, and/or painted.

     4.     As a result of DEFENDANT'S conduct as alleged herein, PLAINTIFFS have

ROBERTS & DURKEE, P.A.
Alhambra Towers, Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 38134 [305] 442-1700• FAX: (305) 442-2559

suffered economic losses in that the defective drywall has caused damage to their home and other personal property within the home.

5.      PLAINTIFFS have incurred or will incur tens of thousands of dollars in damages including, but not limited to: repair/replacement of the drywall itself, ceiling materials, insulations, wiring, electrical boxes, plumbing, and other properties, and any materials contaminated or corroded as a result of the defective drywall; incidental and consequential damages; clean up of the drywall dust, additional living expenses, loss of use, and diminution of value of their home.

6.      DEFENDANT has been placed or soon will be placed on Notice of Fla. Stat. 558, and all pre-suit notice provisions have been completed or will be timely completed.

## JURISDICTION AND VENUE

7.      This action is for damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00) exclusive of interest and costs and is founded upon Florida state law including, but not limited to, common law violations, which are subject to the jurisdiction of this court.

8.      Venue is proper in that Defendant HANSEN HOMES OF SOUTH FLORIDA INC is authorized to conduct and does conduct significant amounts of business in Lee County as well as throughout the State of Florida.  In particular, Defendant maintains offices in Cape Coral and a substantial part of the events and omissions giving rise to PLAINTIFFS' claims occurred in Lee County, Florida.

9.      Plaintiffs JOSE L. and SOFIA B. ACOSTA are and at all relevant times have been the owners of real property located in Lee County.

## PARTIES

10.     PLAINTIFFS are the owners of real property located in the County of Lee, State

-2-

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

of Florida.

11.     The subject of this action are the lands with single family dwellings and other improvements thereon, owned by PLAINTIFFS respectively, (hereinafter collectively referred to as the "PROPERTY") located in the County of Lee, State of Florida, described as follows:

**JOSE L. and SOFIA B. ACOSTA    319 Broward Ave, Lehigh Acres, FL 33974**

12.     PLAINTIFFS are informed and believe and based thereon allege that at all times herein mentioned and material hereto that HANSEN HOMES OF SOUTH FLORIDA INC was and is a corporation authorized to conduct business in Florida and engaged in business in the County of Lee and was the *general contractor* and/or the *developer* of the PROPERTY and the project within which the PROPERTY is located.

## GENERAL ALLEGATIONS

13.     DEFENDANT negligently designed, constructed, manufactured, delivered, inspected and/or sold the subject PROPERTY with defective drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion to air-conditioning and refrigerator units, electrical wires and copper tubes.

14.     The defective drywall used in the PROPERTY was made with material that is not suitable for use as drywall.

15.     As a result of DEFENDANT'S conduct as alleged herein, PLAINTIFFS have suffered economic losses in that the defective drywall has caused damage to their home and other personal property within the home.

16.     PLAINTIFFS have incurred or will incur tens of thousands of dollars in damages including, but not limited to: repair/replacement of the drywall itself, ceiling materials, insulations, wiring, electrical boxes, plumbing, and other properties, and any materials

contaminated or corroded as a result of the defective drywall; incidental and consequential damages; clean up of the drywall dust, additional living expenses, loss of use, and diminution of value of their home.

## EQUITABLE TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

17.    The running of any statute of limitations has been tolled by reason of DEFENDANT'S concealment.  DEFENDANT, through failing to disclose a known defect to PLAINTIFFS, and misrepresenting the PROPERTY as safe for its intended use, actively concealed from PLAINTIFFS the true risks associated with their home containing the defective drywall.

18.    As a result of DEFENDANT'S actions, PLAINTIFFS could not reasonably know how or have learned through reasonable diligence of the defects with the drywall within their home and that PLAINTIFFS had been exposed to the risks alleged herein and that those risks were a direct and proximate result of DEFENDANT'S acts and omissions.

19.    Furthermore, DEFENDANT is estopped from relying on any statute of limitations because of their concealment of the defective nature of the drywall used in the PROPERTY. DEFENDANT was under a duty to disclose the true character, quality, and nature of the PROPERTY and the defective drywall used therein because this was non-public information over which DEFENDANT had, and continues to have, exclusive control, and because DEFENDANT knew that this information was not available to PLAINTIFFS.  In addition, DEFENDANT is estopped from relying on any statute of limitations because of their concealment of these facts.

20.    PLAINTIFFS had no knowledge that DEFENDANT was engaged in the wrongdoing alleged herein.  Because of the wrongdoing by DEFENDANT, PLAINTIFFS could

not have reasonably discovered the wrongdoing at any time.

## FIRST CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY

21.   PLAINTIFFS repeat and reallege paragraphs 1-20 inclusive, and incorporate the same as if set forth herein at length.

22.   DEFENDANT, at all times herein mentioned, built and/or sold the home described herein and/or otherwise participated in the stream of commerce for sale of this home.

23.   At all times herein mentioned and material hereto, DEFENDANT knew and intended that the PROPERTY would be purchased by members of the public at large, and used by them without further inspection for defects.

24.   PLAINTIFFS purchased the PROPERTY from the DEFENDANT.

25.   At the time of the purchase by PLAINTIFFS, the PROPERTY was defective and unfit for its intended purpose because Defendant did not construct the PROPERTY in a workmanlike manner as manifested by, but not limited to, numerous drywall defects which have resulted in damage to the home, their component parts, and other property.

26.   The drywall used in the PROPERTY was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to the home and, in particular, PLAINTIFFS' PROPERTY.

27.   The drywall was so defective in design or formulation or manufacture that when it left the hands of the manufacturer and/or suppliers and was used by DEFENDANT, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of the drywall.

28.   At all times herein mentioned, the drywall used by DEFENDANT was in a

defective condition and unsafe, and DEFENDANT knew, had reason to know, or should have known that the drywall was defective and unsafe, especially when used in the form and manner in the PROPERTY.

29.   DEFENDANT knew, or should have known, that at all times herein mentioned the drywall used by DEFENDNANT was/is inherently dangerous and unsafe.

30.   Plaintiffs utilized the drywall for the purposes and manner normally intended.

31.   Defendant had a duty to utilize a product that was not unreasonably dangerous for its normal, intended use.

32.   The drywall utilized by DEFENDANT was designed, constructed, manufactured, delivered, inspected and/or sold in a defective condition and was unreasonably dangerous to its intended users, including Plaintiffs.

33.   Defendant manufactured, processed, distributed, delivered, supplied, inspected and/or sold the defective PROPERTY which created an unreasonable risk to the Plaintiffs' home. Defendant is, therefore, strictly liable for the injuries sustained by Plaintiffs.

34.   PLAINTIFFS, acting as a reasonably prudent person, could not discover that the drywall utilized by DEFENDANT was defective as herein mentioned or perceive its danger.

35.   The defects in the drywall utilized by DEFENDANT were a substantial factor in causing Plaintiffs' injuries and/or placing Plaintiffs at increased risk of damage and/or harm.

36.   As a direct and proximate result of the defective condition of the drywall used by DEFENDANT in the PROPERTY, PLAINTIFFS suffered, and will continue to suffer, damages.

37.   By reason of the foregoing, Plaintiffs have incurred financial damage and injury.

38.   The defects alleged herein above are defects that were not apparent by reasonable inspection of the PROPERTY at the time of the purchase. The defects thereafter manifested.

39.   Because of the acts of the Defendant as alleged, PLAINTIFFS have been specifically damaged in the following ways:

A)   The Plaintiffs will be forced to incur expenses for the removal and the replacement of the defective drywall.

B)   The Plaintiffs will be forced to repair and/or replace other components of the home that have been damaged by the drywall, including, but not limited to, the air conditioning, the insulation, the ceiling materials, the wiring of the home, affected plumbing, other appliances, etc.

C)   The Plaintiffs have also sustained damage in the form of the diminished value of the property.

D)   The Plaintiffs have incurred or will incur damages in the form of additional living expenses.

E)   The Plaintiffs have incurred or will incur damages in the form of loss of use.

F)   The Plaintiffs have been forced to incur damages in the form of retaining expert consultants to analyze and determine the method of repairing the aforementioned defects and damage.

G)   The Plaintiffs have incurred or will incur damages in the form of moving and storage expenses.

40.   DEFENDANT, as developers and/or builders and sellers and/or otherwise within the stream of commerce are strictly liable and responsible to PLAINTIFFS for all damage suffered as a result of the above described damage, defects and deficiencies in the PROPERTY.

41.   WHEREFORE, Plaintiffs demand judgment against the Defendant as follows:

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

a.  Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

b.  Pre-judgment and post-judgment interest at the maximum rate allowable at law;

c.  The costs and disbursements incurred by PLAINTIFFS in connection with this action;

d.  All statutory damages;

e.  Disgorgement of DEFENDANT'S profits from the sale of the PROPERTY;

f.  Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be entitled;

g.  Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## SECOND CAUSE OF ACTION
## NEGLIGENCE AND NEGLIGENCE PER SE

42.  PLAINTIFFS repeat and reallege paragraphs 1-20 inclusive, and incorporate the same as if set forth herein at length.

43.  DEFENDANT had a duty to exercise reasonable care in designing, constructing, manufacturing, delivering, inspecting and/or selling the PROPERTY before being placed into the stream of commerce, including a duty to assure that the PROPERTY and drywall would perform

as intended and would not cause and did not cause damage as described herein.

44.     DEFENDANT breached their duty by failing to exercise ordinary care in the designing, constructing, manufacturing, delivering, inspecting and/or selling the PROPERTY with defective drywall in that DEFENDANT knew or should have known that the PROPERTY was defective with the drywall used therein, because the drywall did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to air-conditioning and refrigerator units, wires, tubes and pipes.

45.     The negligence of the DEFENDANT, their agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

a.      negligently failing to adequately and correctly warn PLAINTIFFS and the public of the dangers of the drywall used by DEFENDANT in the PROPERTY;

b.      negligently failing to recall or otherwise notify users at the earliest date that it became known that the drywall in the PROPERTY was, in fact, dangerous and defective;

c.      negligently representing that the drywall was safe for its intended purpose when, in fact, its safety is questionable;

d.      negligently distributing the drywall in a manner which was dangerous to its users;

e.      negligently delivering the drywall in a manner which was dangerous to its users;

f.      concealing information concerning reports of adverse effects of the drywall used in the PROPERTY while knowing that the drywall was

unsafe, dangerous and non-conforming with accepted industry standards; and

g.   improperly concealing and/or misrepresenting information from PLAINTIFFS and/or the public, concerning the severity of risks and dangers to Defendant's drywall and/or the manufacturing defect.

46.   DEFENDANT was negligent in the design, construction, manufacture, delivery, inspection and/or sale of the subject PROPERTY with defective drywall in that they:

a.   failed to use due care in constructing the PROPERTY with adequate drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;

b.   failed to conduct adequate testing to determine the safety of the drywall; and

c.   failed to warn PLAINTIFFS prior to the sale of the PROPERTY, either directly or indirectly, orally or in writing, about the defective nature of the drywall used therein; and was otherwise negligent.

47.   Upon information and belief, despite the fact that DEFENDANT knew or should have known that the drywall used in the PROPERTY caused unreasonably dangerous side effects due to its manufacturing defect, DEFENDANT continued to design, construct, manufacture, deliver, inspect and/or sell the subject PROPERTY to PLAINTIFFS and/or the consuming public.

48.   DEFENDANT knew or should have known that consumers such as PLAINTIFFS would foreseeably suffer damage and injury and/or be at an increased risk of suffering damage and injury as a result of DEFENDANT'S failure to exercise ordinary care, as well as

use.

F)    The Plaintiffs have been forced to incur damages in the form of retaining expert consultants to analyze and determine the method of repairing the aforementioned defects and damage.

G)    The Plaintiffs have incurred or will incur damages in the form of moving and storage expenses.

54.    DEFENDANT, as developers and/or builders and sellers and/or otherwise within the stream of commerce are strictly liable and responsible to PLAINTIFFS for all damage suffered as a result of the above described damage, defects and deficiencies in the PROPERTY.

55.    WHEREFORE, Plaintiffs demand judgment against the Defendant as follows:

a.    Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

b.    Pre-judgment and post-judgment interest at the maximum rate allowable at law;

c.    The costs and disbursements incurred by PLAINTIFFS in connection with this action;

d.    All statutory damages;

e.    Disgorgement of DEFENDANT'S profits from the sale of the PROPERTY;

f.    Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2599

DEFENDANT'S negligent use of defective drywall, as set forth herein.

49.   DEFENDANT'S actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitute negligence per se.

50.   As a direct and proximate result of the actions of the DEFENDANT as alleged herein, PLAINTIFFS suffered, and will continue to suffer, damages.

51.   By reason of the foregoing, PLAINTIFFS experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

52.   The defects alleged herein above are defects that were not apparent by reasonable inspection of the PROPERTY at the time of the purchase.  The defects thereafter manifested.

53.   Because of the acts of the Defendant as alleged, PLAINTIFFS have been specifically damaged in the following ways:

A)   The Plaintiffs will be forced to incur expenses for the removal and the replacement of the defective drywall.

B)   The Plaintiffs will be forced to repair and/or replace other components of the home that have been damaged by the drywall, including, but not limited to, the air conditioning, the insulation, the ceiling materials, the wiring of the home, affected plumbing, other appliances, etc.

C)   The Plaintiffs have also sustained damage in the form of the diminished value of the property.

D)   The Plaintiffs have incurred or will incur damages in the form of additional living expenses.

E)   The Plaintiffs have incurred or will incur damages in the form of loss of

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

to which PLAINTIFFS may be entitled;

g.      Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY

56.    PLAINTIFFS repeat and reallege paragraphs 1-20 inclusive, and incorporate the same as if set forth herein at length.

57.    Based upon information and belief, and, in part, upon written representations in the possession at DEFENDANT and to be obtained in the discovery process, DEFENDANT expressly warranted that DEFENDANT'S PROPERTY was safe and of acceptable quality and standards.  DEFENDANT also expressly warranted that PLAINTIFFS' home would "be free from substantial construction defects and from defects in materials and workmanship".

58.    DEFENDANT'S PROPERTY did not conform to these express representations because the drywall used in the PROPERTY was defective and unsafe, and is associated with numerous side effects.  As a direct and proximate result of the breach of said warranties, PLAINTIFFS suffered, and/or will continue to suffer, and/or at an increased risk to suffer, extensive damage, economic loss, and/or other harm.

59.    PLAINTIFFS did rely on the express warranties of the DEFENDANT herein.

60.    The DEFENDANT herein breached the aforesaid express warranties, as DEFENDANT'S used defective drywall.

61.    DEFENDANT expressly represented to PLAINTIFFS that the PROPERTY was safe, efficacious, and fit for use for the purposes intended, that the drywall used in the PROPERTY was of merchantable quality, did not produce any dangerous side effects, and was

adequately tested and fit for its intended use.

62.     DEFENDANT knew or should have known that the aforesaid representations and warranties were false, misleading and untrue in that the PROPERTY, with the defective drywall used therein, was not fit for the use intended and, in fact, produced severe and extensive damage to PLAINTIFFS' home because defective drywall was negligently used therein.

63.     Because of the acts of the Defendant as alleged, PLAINTIFFS have been specifically damaged in the following ways:

A)     The Plaintiffs will be forced to incur expenses for the removal and the replacement of the defective drywall.

B)     The Plaintiffs will be forced to repair and/or replace other components of the home that have been damaged by the drywall, including, but not limited to, the air conditioning, the insulation, the ceiling materials, the wiring of the home, affected plumbing, other appliances, etc.

C)     The Plaintiffs have also sustained damage in the form of the diminished value of the property.

D)     The Plaintiffs have incurred or will incur damages in the form of additional living expenses.

E)     The Plaintiffs have incurred or will incur damages in the form of loss of use.

F)     The Plaintiffs have been forced to incur damages in the form of retaining expert consultants to analyze and determine the method of repairing the aforementioned defects and damage.

G)     The Plaintiffs have incurred or will incur damages in the form of moving

and storage expenses.

64.     DEFENDANT, as developers and/or builders and sellers and/or otherwise within the stream of commerce are strictly liable and responsible to PLAINTIFFS for all damage suffered as a result of the above described damage, defects and deficiencies in the PROPERTY.

65.     WHEREFORE, Plaintiffs demand judgment against the Defendant as follows:

a.     Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

b.     Pre-judgment and post-judgment interest at the maximum rate allowable at law;

c.     The costs and disbursements incurred by PLAINTIFFS in connection with this action;

d.     All statutory damages;

e.     Disgorgement of DEFENDANT'S profits from the sale of the PROPERTY;

f.     Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be entitled;

g.     Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## FOURTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

drywall used in the PROPERTY was not fit for its intended purposes and uses.

75.   Because of the acts of the Defendant as  alleged, PLAINTIFFS have been specifically damaged in the following ways:

A)   The Plaintiffs will be forced to incur expenses for the removal and the replacement of the defective drywall.

B)   The Plaintiffs will be forced to repair and/or replace other components of the home that have been damaged by the drywall, including, but not limited to, the air conditioning, the insulation, the ceiling materials, the wiring of the home, affected plumbing, other appliances, etc.

C)   The Plaintiffs have also sustained damage in the form of the diminished value of the property.

D)   The Plaintiffs have incurred or will incur damages in the form of additional living expenses.

E)   The Plaintiffs have incurred or will incur damages in the form of loss of use.

F)   The Plaintiffs have been forced to incur damages in the form of retaining expert consultants to analyze and determine the method of repairing the aforementioned defects and damage.

G)   The Plaintiffs have incurred or will incur damages in the form of moving and storage expenses.

76.   DEFENDANT, as developers and/or builders and sellers and/or otherwise within the stream of commerce are strictly liable and responsible to PLAINTIFFS for all damage suffered as a result of the above described damage, defects and deficiencies in the PROPERTY.

66.     PLAINTIFFS repeats and realleges paragraphs 1-20 inclusive, and incorporate the same as if set forth herein at length.

67.     At all times herein, DEFENDANT designed, constructed, manufactured, delivered, inspected and/or sold the subject PROPERTY with defective drywall.

68.     DEFENDANT utilized defective drywall for use in the construction of PLAINTIFFS' home and DEFENDANT knew of the use for which the drywall was intended and impliedly warranted the product to be of merchantable quality and fit for such use.

69.     DEFENDANT impliedly represented and warranted to PLAINTIFFS that the drywall used in the PROPERTY was safe and of merchantable quality and fit for the ordinary use for which said product was to be used.

70.     Said representations and warranties aforementioned are false, misleading, and inaccurate in that the drywall used in the PROPERTY was unsafe, unreasonably dangerous, improper, not merchantable quality, and defective and cause damage and injury to PLAINTIFFS.

71.     PLAINTIFFS relied on said implied warranty of merchantability and fitness for a particular use and purpose.

72.     PLAINTIFFS reasonably relied upon the skill and judgment of DEFENDANT as to whether the drywall used in the PROPERTY was of merchantable quality and safe and fit for its intended use.

73.     The defective drywall used in the PROPERTY was placed into the stream of commerce by DEFENDANT in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which they were sold.

74.     The DEFENDANT herein breached the aforesaid implied warranties, as the

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

77.    WHEREFORE, Plaintiffs demand judgment against the Defendant as follows:

a.    Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

b.    Pre-judgment and post-judgment interest at the maximum rate allowable at law;

c.    The costs and disbursements incurred by PLAINTIFFS in connection with this action;

d.    All statutory damages;

e.    Disgorgement of DEFENDANT'S profits from the sale of the PROPERTY;

f.    Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be entitled;

g.    Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## GENERAL PRAYER FOR RELIEF

78.    WHEREFORE, Plaintiffs demand judgment against the Defendant as follows:

a.    Equitable, injunctive, and declaratory relief;

b.    Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

c.    Pre-judgment and post-judgment interest at the maximum rate allowable at

law;

d.   The costs and disbursements incurred by PLAINTIFFS in connection with

this action;

e.   All statutory damages;

f.   Disgorgement of DEFENDANT'S profits from the sale of the

PROPERTY;

g.   Reimbursement for all costs and expenses incurred in the repair of any

purchase price paid, including, but not limited to, insurance co-payments,

interest on these amounts from the date of purchase, attorneys' fees and

costs, non-pecuniary damages, as well as any other legal or equitable relief

to which PLAINTIFFS may be entitled;

h.   Such other and further relief under all applicable state and federal law and

any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs JOSE L. and SOFIA B. ACOSTA hereby demand a trial by jury as to all issues

so triable.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was served by process server on the Defendants this _4_ day of ~~April~~ May, 2010.

ROBERTS & DURKEE, P.A.
**Attorneys for Plaintiffs**
Alhambra Towers, Penthouse I
121 Alhambra Plaza, Suite 1603
Coral Gables, Florida 33134
Tel: (305) 442-1700

BY: _____
C. DAVID DURKEE
Florida Bar No.: 998435

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

JOSE L. AND SOFIA B. ACOSTA;

        Plaintiffs,

  vs.

HANSEN HOMES OF SOUTH FLORIDA,
INC., a Florida Corporation,

        Defendants.

_____

**CHINESE DRYWALL**

CASE NO.:

**10 – CA – 001851**
Judge: Fuller, Joseph C

**CIVIL ACTION SUMMONS**

**THE STATE OF FLORIDA:**

**To Each Sheriff of Said State:**

    **YOU ARE HEREBY COMMANDED** to serve this summons and a copy of the Complaint &

Demand for Jury Trial, Interrogatories, Request for Admission and Request for Production in this

action.

        By Serving -    HANSEN HOMES OF SOUTH FLORIDA, INC.
                    **By and through their Registered Agent**
                    DUANE M. DAVIS
                    1436 SB 16th Place
                    Cape Coral, Florida 33990

Each Defendant is required to serve written defenses to the Complaint or Petition on Plaintiff's attorney, to wit:

**C. DAVID DURKEE, ESQUIRE
ROBERTS & DURKEE, P.A.
Alhambra Towers, Penthouse I
121 Alhambra Plaza, Suite 1603
Coral Gables, Florida 33134
Tel: (305) 442-1700**

within twenty (20) days after service of this summons on that Defendant, exclusive of the day of service, and to file the original of the defense with the clerk of this court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

DATED ON _____ MAY 0 6 2010 _____.

CHARLIE GREEN
as Clerk of said Court

By _____
As Deputy Clerk
(Court Seal)

# *EXHIBIT D*

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CAROL ALBANO; SUELY AUERBACH;
JUDITH BRAITHWAITE; JANELLE JAMES;
MARVIN REID; and MONIQUE CRAWFORD
& ELAINE SHAND;

                Plaintiffs,

vs.

CENTERLINE HOMES CONSTRUCTION
INC., a Florida Corporation; CENTERLINE
HOMES AT GEORGETOWN LLC, a Florida
Limited Liability Company, and UNITED
FRAMERS INC., a Florida Corporation

                Defendants.

"Chinese Drywall Litigation"

CASE NO.: 09-46262 CACE 09

Florida Bar No.: 998435

---

## PLAINTIFFS' SECOND AMENDED COMPLAINT

The Plaintiffs, CAROL ALBANO, SUELY AUERBACH, JUDITH BRAITHWAITE,

JANELLE JAMES, MARVIN REID, and MONIQUE CRAWFORD & ELAINE SHAND

("Plaintiffs"), by and through undersigned counsel, hereby sue the Defendants, CENTERLINE

HOMES CONSTRUCTION INC, CENTERLINE HOMES AT GEORGETOWN LLC, and

UNITED FRAMERS INC, and in support thereof, state as follows:

### NATURE OF THE ACTION

    1.    This is an action for damages arising from the installation of Chinese

drywall in single family homes located in the Georgetown Community in Lauderhill, Florida,

brought against the developer of the homes, Centerline Homes at Georgetown LLC, the builder

of the homes, Centerline Homes Construction Inc, and its drywall subcontractor, United Framers Inc.

2.      As a result of the Defendants' conduct, the Plaintiffs' homes have endured systemic property damage.

3.      Plaintiffs bring this action to remedy the damage to the homes and their belongings caused and created by the conduct of the Defendants.

## PARTIES, JURISDICTION & VENUE

4.      This is an action for monetary damages in excess of $15,000.00, exclusive of interest, costs and attorney's fees, and this Court otherwise has jurisdiction over the subject matter hereof.

5.      Plaintiffs are residents of Broward County, Florida, and are otherwise *sui juris*.

6.      Plaintiff Carol Albano is the owner of a single family home located at 1401 NW 36th Way, Lauderhill, Florida 33311 ("the Buildings").

7.      Plaintiff Suely Auerbach is the owner of a single family home located at 3598 NW 14th Court, Lauderhill, Florida 33311 ("the Buildings").

8.      Plaintiff Judith Braithwaite is the owner of a single family home located at 3513 NW 14th Court, Lauderhill, Florida 33311 ("the Buildings").

9.      Plaintiff Janelle James is the owner of a single family home located at 3606 NW 14th Court, Lauderhill, Florida 33311 ("the Buildings").

10.     Plaintiff Marvin Reid is the owner of a single family home located at 3605 NW 14th Court, Lauderhill, Florida 33311 ("the Buildings").

11.     Plaintiffs Monique Crawford & Elaine Shand are the owners of a single

-2-

family home located at 3609 NW 14th Court, Lauderhill, Florida 33311("the Buildings").

12.    Defendant Centerline Homes at Georgetown LLC (hereinafter "Centerline Georgetown") is a for profit limited liability company, organized under the laws of the State of Florida, whose principal place of business is located in Broward County, Florida with an address of 825 Coral Ridge Drive, Coral Springs, FL 33071.

13.    At all times mentioned herein, Centerline Georgetown was, and remains today, engaged in the business of developing, designing and constructing buildings sites, mass production of lots and attendant improvements and the sale of finished single-family homes and attendant improvements.

14.    Centerline Georgetown developed, designed and constructed buildings sites, engaged in mass production of lots and attendant improvements, and sold finished single-family homes and attendant improvements within the development known as "Georgetown" in Lauderhill, Florida.

15.    Plaintiffs and Centerline Georgetown entered into "Purchase and Sale Agreements" (the "Agreement") for the construction and sale of the Buildings.  A copy of one f the Plaintiff's contract is annexed hereto as **"Exhibit 1"**

16.    Defendant Centerline Homes Construction (hereinafter "Centerline Construction") is a for profit corporation, organized under the laws of the State of Florida, whose principal place of business is located in Broward County, Florida with an address of 825 Coral Ridge Drive, Coral Springs, FL 33071.

17.    At all times mentioned herein, Centerline Construction was, and remains today, engaged in the business of designing and constructing buildings sites, mass production of lots and attendant improvements and the sale of finished single-family homes and attendant

-3-

improvements.

18.     Centerline Construction constructed buildings sites, and engaged in mass production of lots and attendant improvements within the development known as "Georgetown" in Lauderhill, Florida.

19.     Defendant, United Framers Inc (hereinafter "United Framers"), is a for-profit corporation, organized under the laws of the State of Florida, whose principal place of business is located in Broward County, Florida with an address of 11900 Loxahatchee Road, Parkland, FL 33076.

20.     At all times mentioned herein, Defendant United Framers was, and, upon information and belief, remains today, engaged in the business of performing drywall installation and related construction.

21.     Centerline Construction entered into a contract with United Framers, pursuant to which United Framers was responsible for the installation and related construction of drywall within all single family homes in the development known as Georgetown.

22.     Pursuant to its contract with Centerline Construction, United Framers installed the drywall and performed related construction at the Buildings.

23.     At all times mentioned herein and material hereto, Defendant United Framers, in performing such work as it did in connection with the Buildings, knew and intended that Plaintiffs' homes and attendant fixtures and/or improvements would be utilized as a primary residences.

24.     Venue is proper in Broward County, Florida since Broward County is: (a) the domicile of the Plaintiffs and (b) the situs of the real properties at issue and the location of the Defendants' negligent conduct.

-4-

25.     All conditions precedent to the filing of this Action have occurred or have

otherwise been waived.

## FACTUAL ALLEGATIONS COMMON
## TO ALL CAUSES OF ACTION

### The Defects at the Buildings

26.     In 2006, the Plaintiffs moved into their newly-constructed homes in the

Centerline Georgetown development known as "Georgetown" in Lauderhill, Florida.

27.     United Framers performed all the drywall installation in the Buildings.

28.     United Framers installed what is commonly referred to as Chinese drywall

in the Buildings.

29.     Chinese drywall is universally regarded as being defective, either by its

composition, manufacturing process, or both.

30.     United Framers purchased, directly and/or indirectly, Chinese drywall that

was manufactured in China.

31.     After United Framers purchased the Chinese drywall, it was in possession

of such product until it installed same in the Buildings.

32.     Property damage was sustained to and within the Buildings and caused by

the release of gases, fumes, and/or vapors from the Chinese drywall brought into the Buildings in

connection with operations being performed on behalf of Centerline Georgetown by its

contractors, Centerline Construction and United Framers.

33.     Specifically, United Framers brought Chinese drywall into the Buildings

in connection with its operations as the installer of the drywall on behalf of Centerline

Construction.

34.     In reaction to the humidity indigenous to the South Florida climate,

-5-

sulfuric compounds contained within the Chinese drywall (including one or more of hydrogen sulfide, carbonyl sulfide, and carbon disulfide) released gases, fumes, and/or vapors from the Chinese drywall into the indoor air of the Buildings.

35.     This resulted in a sulfur odor, which could be smelled by the occupants variously throughout the Buildings and eventually permeated the Buildings.

36.     The release of gases, fumes, and/or vapors from the Chinese drywall brought into the Buildings in connection with operations being performed on behalf of Centerline Georgetown by its contractors, Centerline Construction & United Framers, caused and created property damage and/or structure damage to the Buildings including corrosion on outlet boxes, air conditioning coils, electrical wiring, metals, plumbing fixtures, and the aforementioned sulfur odor which permeated the Buildings.

37.     Plaintiffs initially discovered damage to the air conditioning coils of the air handling units ("AHUs") in the Buildings and first began to notice a periodic sulfur odor in the Buildings as early as April 2009. The periodic sulfur odor continued unabated.

38.     Plaintiffs discovered the damage to electrical wiring, metals, and plumbing fixtures sometime during the summer of 2009.

39.     Since then, the sulfur odor in the Buildings became dramatically more pronounced. So much so that, from that point forward, it permeated the Buildings on an ongoing basis and could be smelled on clothing and skin after leaving the Buildings.

40.     Beginning in May 2009 Centerline Georgetown was first notified of the property damage to the Buildings, including the failure of all AHUs, the damage to electrical wiring, metals, and plumbing fixtures, and the sulfur odor that permeated the Buildings.

41.     The Chinese drywall installed in the Buildings was in a condition not

-6-

intended or expected by Centerline Georgetown, Centerline Construction, United Framers, or the Plaintiffs, and was defective and unreasonably dangerous to the Plaintiffs and to the Plaintiffs' property.

42.   The release of gases, fumes and/or vapors from the Chinese drywall brought into the Buildings in connection with operations being performed on behalf of Centerline Georgetown by its contractors, Centerline Construction and United Framers, has been a continuous occurrence and/or repeated exposure to substantially the same generally harmful conditions since such drywall was brought into the Buildings and/or installed.

### The Consequent Property Damage and
### Consequences Endured by Plaintiffs

43.   The extent of the Chinese drywall in Plaintiffs' homes has caused property damage and/or structure damage to the homes including corrosion on outlet boxes, air conditioning coils, electrical wiring, metals, plumbing fixtures, and a sulfur odor that permeated the Buildings on an ongoing basis and could be smelled on clothing and skin after leaving the Buildings, and damage to certain of Plaintiffs' personal property.

44.   The property damage cannot be remedied simply by removing and repairing the Chinese drywall in light of the additional damage it has caused to other parts of the Buildings such as outlet boxes, air conditioning coils, electrical wiring, metals, and plumbing fixtures.   Moreover, the sulfur odor cannot be rectified by repairing or replacing the Chinese Drywall, and requires wholesale remediation and indoor air quality measures to eliminate the odor from the Buildings.

45.   Upon information and belief, the cost of completely removing, replacing

ROBERTS & DURKEE, P.A.
Alhambra Towers, Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700• FAX: (305) 442-2559

and remediating the foregoing property damage is, at minimum, in the hundreds of thousands of dollars.

46.     As a direct and proximate result of the conduct set forth above, Plaintiffs' homes are defective, damaged, and not reasonably fit for continued habitation.

47.     As a proximate result of the defects and conduct set forth above, Plaintiffs have been damaged in other ways which include, but are not limited to, destruction, in whole or in material part, of the Buildings, the loss of use of said properties, and personal injury to the occupants.

48.     As a further and proximate result of the above, Plaintiffs have been and will be required to employ engineers, contractors, and environmental specialists in an effort to repair, maintain, remediate and/or replace the defects in the homes and, as a further and proximate result of the above, Plaintiffs may also be required to employ medical and microbiological experts in the testing, clean-up and replacement of the Chinese Drywall in the Buildings and the HVAC, elimination of the sulfur odor, electrical and plumbing materials it has damaged, therein requiring the evacuation and relocation of all of its occupants, replacement and/or proper microbial cleaning of all of the occupants' personal property, including furniture, clothing, books, papers, moving and storage of the occupants' personal property, temporary housing for the occupants and sale and salvage expenses of the Buildings if the replacement and repair process can not be safely completed.

49.     In the alternative, should it not be possible to salvage the Buildings using conventional replacement methods, or should the cost of such replacement be too expensive to be worthwhile, the proximate result of the Defendants' conduct will be the cost of employing engineers, contractors and/or architects to destroy and then rebuild Plaintiffs' homes.

-8-

50.     As a result of the Defendants' conduct, Plaintiffs have been required to retain the services of the undersigned counsel to represent their interests in this action and are obligated to pay a reasonable fee for such services.

### The need for Medical Monitoring
### For the health effects of sulfur emitting drywall

51.     Dangerous chemicals have been found to be released from the defective drywall, some of which is considered a broad-spectrum poison, meaning that it can poison several different systems in the body.

52.     The toxicity of many of these harmful chemicals is comparable with that of hydrogen cyanide and may form a complex bond with iron in the mitochondrial cytochrome enzymes, thereby blocking oxygen from binding and stopping cellular respiration.

53.     Exposure to lower concentrations of these dangerous chemicals can result in eye irritation, a sore throat and cough, nausea, shortness of breath, and fluid in the lungs.

54.     Long-term, low-level exposure to these dangerous chemicals has been associated with fatigue, loss of appetite, headaches, irritability, poor memory, and dizziness. Chronic exposure to low levels of these dangerous chemicals has also been implicated in increases in miscarriages and reproductive health issues.

55.     As a direct and proximate result of the Defendant's actions and omissions, the Plaintiffs homes and bodies have been exposed to the defective drywall and the corrosive and harmful effects of the sulfide gases and other chemicals being released from these proven hazardous substances.

56.     As a direct and proximate result of the Defendant's use of defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from

-9-

these products, the Plaintiffs have suffered, and continue to suffer damages for injuries from medical ailments, including but not limited to respiratory problems, sinus problems, eye irritations and nosebleeds, in addition to the creation of noxious odors, which smell like "rotten eggs."

**COUNT I.**

**NEGLIGENCE**
**(Against Defendants Centerline Construction & United Framers)**

57.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-56 as if fully set forth herein.

58.     Defendants owed to Plaintiffs the duty to use due care, and to perform in a competent and workmanlike manner all of the work and activity which they agreed to, were required to, and undertook to perform.

59.     Defendants breached their duty of due care to the Plaintiffs by performing their work in a faulty and negligent manner; by performing such work in a manner which fell below accepted standards in their area of practice; by performing work which was inadequate and inappropriate for the purposes for which it was intended; causing and/or contributing to damage to the property of the Plaintiffs and/or personal injury to the occupants thereof; and that such breaches contributed to and/or caused the defects and damages described herein.

60.     At the time Plaintiffs took possession of their homes, they were negligently constructed, defective and otherwise incomplete and/or not reasonably fit for their intended purpose.

61.     Plaintiffs' homes were not erected in a workmanlike manner and were and/or otherwise became defective in that, among other things, the following defects existed:

-10-

ROBERTS & DURKEE, P.A.
Alhambra Towers, Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 • FAX: (305) 442-2559

(a)     negligent and/or inappropriate installation of Chinese drywall and related construction and/or components which was defective, hazardous, and not suitable for its intended purposes.

62.     All the defects and conditions were latent and in existence at the time of completion of the homes.  Said damages are continuous and progressive over time.

63.     The above recital is not exhaustive. Plaintiffs are continuing their investigation.  Additional defects may exist and Plaintiffs will amend this Complaint at such time as additional defects become known.

64.     As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' homes, personal injury to the Plaintiffs, and damages to the Plaintiffs' personal property including, but not limited to, the cost of fully repairing the Buildings which includes removing and replacing the defective gypsum drywall,  storage of the Plaintiffs' belongings, relocation of the Plaintiffs to suitable housing during such repairs; removal and replacement of metal, plumbing, HVAC, and electrical systems, re-installation or re-application of wall coverings such as wallpaper, plastering, and/or paint, removal, storage, and replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or replacement of air conditioning units and/or condensers, as well as damages for stigmatization of the Buildings.

65.     Also, as a result of the defendant's conduct as alleged herein, the Plaintiffs and their minor children have suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability

-11-

to earn money. The loss and injuries are either permanent or continuing and the Plaintiffs will suffer these losses in the future.

66.     The foregoing breaches of duty were both the legal and factual cause of the aforementioned damages.

67.     No contractual limitation exists which, under the terms of any contract or under the economic loss rule, would preclude the assertion of the foregoing claim with respect to Plaintiffs' homes.

68.     To the extent any contractual limitation purported to limit, or preclude altogether, Plaintiffs' ability to assert the foregoing claim, any such limitation would be voidable for failing to leave the Plaintiffs with a cognizable remedy pursuant to Article I, Section 21 of the Florida Constitution and governing common law.

**WHEREFORE,** Plaintiffs respectfully request that this honorable Court enter a judgment against Defendant Centerline Homes Construction Inc and United Framers Inc for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

## COUNT II.

### NEGLIGENCE
**(Against Centerline Georgetown)**
**(Vicarious Liability for the Conduct of Centerline Construction & United Framers)**

69.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-56 as if fully set forth herein.

70.     Centerline Georgetown is vicariously liable under principles of respondeat superior for the conduct of any other Defendant whom Centerline Georgetown hired, and delegated responsibility to, for purposes of performing work in connection with the Buildings (a

-12-

"Subcontractor Defendant") and Centerline Georgetown is therefore responsible for the breach by any Subcontractor Defendant of its duties of due care to the Plaintiffs.

71.     By virtue of the conduct set forth in Paragraphs 1-56 above, Centerline Georgetown is liable to the Plaintiffs under principles of respondeat superior for Centerline Construction & United Framers' breach of their duty of due care to the Plaintiffs by: performing their work in a faulty and negligent manner; performing such work in a manner which fell below accepted construction standards in their area of practice; performing work which was inadequate and inappropriate for the purposes for which it was intended; causing and/or contributing to damage to the property of the Plaintiffs and/or personal injury to the occupants thereof; and that such breaches contributed to and/or caused the defects and damages described herein.

72.     At the time Plaintiffs took possession of their homes, they were negligently designed, constructed, defective and otherwise incomplete and/or not reasonably fit for continued habitation or for their intended purpose.

73.     Plaintiffs' homes were not erected in a workmanlike manner and was and/or otherwise became defective in that, among other things, the following defects existed:

(a)     negligent and/or inappropriate installation of Chinese drywall and related construction and/or components which was defective, hazardous, and not suitable for its intended purposes.

74.     All the defects and conditions were latent and in existence at the time of completion of the homes.  Said damages are continuous and progressive over time.

75.     The above recital is not exhaustive.  Plaintiffs are continuing their investigation.  Additional defects may exist and Plaintiffs will amend this Complaint at such time as additional defects become known.

76.     As a result of the foregoing, Plaintiffs have been damaged in an amount to

-13-

be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' homes, personal injury to the Plaintiffs, and damages to the Plaintiffs' personal property including, but not limited to, the cost of fully repairing the Buildings which includes removing and replacing the defective gypsum drywall, storage of the Plaintiffs' belongings, relocation of the Plaintiffs to suitable housing during such repairs, removal and replacement of metal, plumbing, HVAC, and electrical systems, re-installation or re-application of wall coverings such as wallpaper, plastering, and/or paint, removal, storage, and replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or replacement of air conditioning units and/or condensers, as well as damages for stigmatization of the Buildings.

77.     Also, as a result of the defendant's conduct as alleged herein, the Plaintiffs have suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiffs will suffer these losses in the future.

78.     The foregoing breaches of duty were both the legal and factual cause of the aforementioned damages.

79.     No contractual limitation exists which, under the terms of any contract or under the economic loss rule, would preclude the assertion of the foregoing claim with respect to Plaintiffs' homes.

80.     To the extent any contractual limitation purported to limit, or preclude

-14-

altogether, Plaintiffs' ability to assert the foregoing claim, any such limitation would be voidable for failing to leave the Plaintiffs with a cognizable remedy pursuant to Article I, Section 21 of the Florida Constitution and governing common law.

WHEREFORE, Plaintiffs respectfully request that this honorable Court enter a judgment against Defendant Centerline Homes at Georgetown LLC for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

## COUNT III.

### BREACH OF IMPLIED WARRANTY
### (Against Centerline Georgetown)

81.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-56 as if fully set forth herein.

82.     There exists an implied warranty of merchantability and implied warranty of fitness with respect to the Plaintiffs' homes.

83.     This warranty cannot be waived by Centerline Georgetown as a matter of law.

84.     The implied warranty associated with the work performed by Centerline Georgetown's contractors was expressly assigned to the Plaintiffs under the terms of the purchase and sale Agreement between Plaintiffs and Centerline Georgetown.

85.     By virtue of the foregoing recitation of facts, Plaintiffs' homes did not meet ordinary standards reasonably to be expected of homes of comparable kind and quality.

86.     No contractual limitation exists which, under the terms of any contract or under the economic loss rule, would preclude the assertion of the foregoing claim with respect to Plaintiffs' homes.

-15-

87.    To the extent any contractual limitation purported to limit, or preclude altogether, Plaintiffs' ability to assert the foregoing claim, any such limitation would be voidable for failing to leave the Plaintiff with a cognizable remedy pursuant to Article I, Section 21 of the Florida Constitution and governing common law.

88.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' homes, personal injury to the Plaintiffs, and damages to the Plaintiffs' personal property.

89.    Also, as a result of the defendant's conduct as alleged herein, the Plaintiffs have suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiffs will suffer these losses in the future.

90.    The foregoing breaches were both the legal and factual cause of the aforementioned damages.

WHEREFORE, Plaintiffs respectfully request that this honorable Court enter a judgment against Centerline Homes at Georgetown LLC for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

## COUNT IV.

### BREACH OF CONTRACT
### (Against Centerline Georgetown)

91.    Plaintiffs repeat and reallege the allegations of Paragraphs 1-56 as if fully

-16-

set forth herein.

92.     Plaintiffs and Centerline Georgetown, entered into Purchase and Sale Agreements (the "Agreement") for the construction and sale of the subject homes.

93.     Pursuant to Paragraph 6.1 of the Agreement entitled "Description of Residence", Centerline Georgetown expressly provided that "[b]ecause the Residence contains many structural elements, materials, and equipment, shortages in materials or supplies or substantial increases in the costs of same may occur which, in the discretion of the Seller, may require substitution of materials or supplies.  In the event of substitution, Seller agrees, wherever reasonably possible, to use materials or supplies of equal or better quality; but in no event shall any materials or supplies be of lesser quality than the quality required by the applicable building codes."

94.     The Chinese drywall installed at the Buildings constituted substitute equipment, material, appliances, etc. yet was not of equal or better quality to the American-produced drywall customarily used by Centerline Georgetown in connection with its residential construction and set forth in its plans and specifications.

95.     Accordingly, Centerline Georgetown breached Paragraph 6.1 of the Agreement.

96.     As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' homes, personal injury to the Plaintiffs, and damages to the Plaintiffs' personal property including, but not limited to, the cost of fully repairing the Buildings which includes removing and replacing the defective gypsum drywall,  storage of the Plaintiffs' belongings, relocation of the Plaintiffs to suitable housing during such repairs, removal and replacement of metal,

-17-

plumbing, HVAC, and electrical systems, re-installation or re-application of wall coverings such as wallpaper, plastering, and/or paint, removal, storage, and replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or replacement of air conditioning units and/or condensers, as well as damages for stigmatization of the Buildings.

97. Also, as a result of the defendant's conduct as alleged herein, the Plaintiffs have suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiffs will suffer these losses in the future.

98. The foregoing breach of contract was both the legal and factual cause of the aforementioned damages.

99. To the extent any contractual limitation purported to limit, or preclude altogether, Plaintiffs' ability to assert the foregoing claim, any such limitation would be voidable for failing to leave the Plaintiffs with a cognizable remedy pursuant to Article I, Section 21 of the Florida Constitution and governing common law.

**WHEREFORE,** Plaintiffs respectfully request that this honorable Court enter a judgment against Centerline Georgetown for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

## COUNT V.

## BREACH OF CONTRACT/EXPRESS WARRANTY

-18-

### (Against Centerline Georgetown)

100.    Plaintiffs repeat and reallege the allegations of Paragraphs 1-56 as if fully set forth herein.

101.    Plaintiffs and Centerline Georgetown, entered into Purchase and Sale Agreements (the "Agreement") for the construction and sale of the subject homes.

102.    Pursuant to Paragraph 12 of the Agreement, Centerline Georgetown expressly provided to the Plaintiffs a Limited Warranty intended to survive closing (the "Warranty").

103.    This Warranty was prepared by Centerline Homes. A copy of one of the plaintiff's warranty is annexed hereto as **"Exhibit 2"**.

104.    The construction defect existed at the time the Warranty contract was in effect.

105.    The Plaintiffs were unaware of the defect until after the warranty period expired; therefore, the Plaintiffs had no ability to enforce the express terms of the warranty.

106.    Upon information and belief, the installation of Chinese drywall and the resultant defects and damages set forth above constitute a breach of the Warranty.

107.    Accordingly, Centerline Georgetown breached the aforementioned Warranty and the contract within which the Warranty is contained.

108.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' homes, personal injury to the Plaintiffs, and damages to the Plaintiffs' personal property including, but not limited to, the cost of fully repairing the Buildings which includes removing and replacing the defective gypsum drywall,  storage of the Plaintiffs' belongings, relocation of

-19-

the Plaintiffs to suitable housing during such repairs, removal and replacement of metal, plumbing, HVAC, and electrical systems, re-installation or re-application of wall coverings such as wallpaper, plastering, and/or paint, removal, storage, and replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or replacement of air conditioning units and/or condensers, as well as damages for stigmatization of the Buildings.

109.   Also, as a result of the Defendants' conduct as alleged herein, the Plaintiffs have suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiffs will suffer these losses in the future.

110.   The foregoing breach of contract was both the legal and factual cause of the aforementioned damages.

111.   To the extent any contractual limitation purported to limit, or preclude altogether, Plaintiffs' ability to assert the foregoing claim, any such limitation would be voidable for failing to leave the Plaintiffs with a cognizable remedy pursuant to Article I, Section 21 of the Florida Constitution and governing common law.

WHEREFORE, Plaintiffs respectfully request that this honorable Court enter a judgment against Centerline Homes at Georgetown LLC for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

## COUNT VI.

-20-

## EQUITABLE RELIEF AND MEDICAL MONITORING
### (Against Centerline Georgetown, Centerline Construction, and United Framers)

112.   Plaintiffs repeat and reallege the allegations of Paragraphs 1-56 as if fully set forth herein.

113.   Because no adequate remedy exists for the conduct of Centerline Georgetown, Centerline Construction, and United Framers, equitable and injunctive relief is appropriate.

114.   Plaintiffs will suffer irreparable injury if the Court does not order injunctive relief and medical monitoring.

115.   Plaintiffs demand that Centerline Georgetown, Centerline Construction, and United Framers initiate and pay for a medical monitoring program under Florida law.

116.   Medical monitoring is a necessary component of the relief the Court should order because some of the sulfur components and other organic compounds being emitted from the defective drywall are very hazardous.  For example, many of the compounds found in the drywall are considered a broad-spectrum poison -- meaning it can attack more than one system of the body simultaneously.

117.   As a direct consequence of the wrongful and/or tortious acts and/or omissions of Centerline Georgetown, Centerline Construction, and United Framers, Plaintiffs have been exposed to sulfur and other dangerous compounds in quantities sufficient to harm them.

118.   Until it has been conclusively established that all defective drywall has been removed and that air quality is safe, Centerline Georgetown, Centerline Construction, and United Framers should bare the expense of air and environmental monitoring in the Plaintiffs' homes.

119.   As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs'

-21-

homes, personal injury to the Plaintiffs, and damages to the Plaintiffs' personal property including, but not limited to, the cost of fully repairing the Buildings which includes removing and replacing the defective gypsum drywall, storage of the Plaintiffs' belongings, relocation of the Plaintiffs to suitable housing during such repairs, removal and replacement of metal, plumbing, HVAC, and electrical systems, re-installation or re-application of wall coverings such as wallpaper, plastering, and/or paint, removal, storage, and replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or replacement of air conditioning units and/or condensers, as well as damages for stigmatization of the Building.

120.   Also, as a result of Defendants' conduct as alleged herein, Plaintiffs have suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiffs will suffer these losses in the future.

**WHEREFORE**, Plaintiffs, respectfully request that this honorable Court enter a judgment against Defendant Centerline Homes at Georgetown LLC, Centerline Homes Construction Inc., and United Framers Inc for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs CAROL ALBANO, SUELY AUERBACH, JUDITH BRAITHWAITE,

-22-

JANELLE JAMES, MARVIN REID, and MONIQUE CRAWFORD & ELAINE SHAND

hereby demand a trial by jury as to all issues so triable.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was sent

by U.S. Mail this _____ day of June, 2010 to: **Vanessa M. Serrano, Esq.,** Broad &

Cassel, Attorneys for Defendants, CENTERLINE HOMES CONSTRUCTION INC., and

CENTERLINE HOMES AT GEORGETOWN LLC, One Financial Plaza, Suite 2700, Fort

Lauderdale, Florida 33394 and **via Process Server** upon the Defendant, UNITED

FRAMERS, INC.

ROBERTS & DURKEE, P.A.
**Attorneys for Plaintiffs**
Alhambra Towers, Penthouse I
121 Alhambra Plaza, Suite 1603
Coral Gables, Florida 33134
Tel: (305) 442-1700

BY: _____
C. DAVID DURKEE

-23-