# EXHIBIT E

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

DANA AND RICK AMMONS; RYAN AND KELLI
CHRUSZ; PETER AND MARY ANN CRISPINO;
ALBERT AND FRANCINE FERRI; ERIC AND
SVETLANA GRASSEL; MELVIN AND SHIRLEY
GUMPERT; STEPHEN AND GRACIELA
JACKSON; RICHARD AND JEWELSTINE
LAUDERMILK; MICHAEL AND LILLIAN
MARCINKIEWICZ; OSCAR AND DONNA
NAUSTDAL; SUKI AND MICHAEL PACKARD;
DONNA SICA; AND MICHAEL ZAMORA;

       Plaintiffs,

vs.

FLORIDA STYLE SERVICES, INC., a Florida
Corporation

       Defendant.

10 - CA - 002388
Judge: Rosman, Jay B

Florida Bar No.: 998435



FILED

JUN 0 9 2010

CHARLIE GREEN, CLERK
CIRCUIT/COUNTY COURTS
BY_____ D.C.

## PLAINTIFFS' FIRST COMPLAINT FOR DAMAGES

The Plaintiffs, Dana and Rick Ammons, Ryan and Kelli Chrusz, Peter and Mary Ann

Crispino, Albert and Francine Ferri, Eric and Svetlana Grassel, Melvin and Shirley Gumpert,

Stephen and Graciela Jackson, Richard and Jewelstine Laudermilk, Michael and Lillian

Marcinkiewicz, Oscar and Donna Naustdal, Suki and Michael Packard, Donna Sica, and Michael

Zamora ("Plaintiffs"), by and through undersigned counsel, hereby sue the Defendant,

FLORIDA STYLE SERVICES, INC., and in support thereof, state as follows:

## NATURE OF THE ACTION

1.     This is an action for damages arising from the installation of Chinese

drywall in single family homes located in the Coral Lakes Community in Cape Coral, Florida, brought against the drywall subcontractor, Florida Style Services, Inc.

2.     As a result of the Defendant's conduct, the Plaintiffs' homes have endured systemic property damage.

3.     Plaintiffs bring this action to remedy the damage to the homes and their belongings caused and created by the conduct of the Defendant.

## PARTIES, JURISDICTION & VENUE

4.     This is an action for monetary damages in excess of $15,000.00, exclusive of interest, costs and attorney's fees, and this Court otherwise has jurisdiction over the subject matter hereof.

5.     Plaintiffs are residents of Lee County, Florida, and are otherwise *sui juris*.

6.     Plaintiffs Dana and Rick Ammons are the owners of a single family home located at 2581 Sawgrass Lake Court, Cape Coral, FL 33909 ("the Buildings").

7.     Plaintiffs Ryan and Kelli Chrusz are the owners of a single family home located at 3035 Lake Manatee Court, Cape Coral, FL 33909 ("the Buildings").

8.     Plaintiffs Peter and Mary Ann Crispino are the owners of a single family home located at 3024 Lake Manatee Court, Cape Coral, FL 33909 ("the Buildings").

9.     Plaintiffs Albert and Francine Ferri are the owners of a single family home located at 2555 Sawgrass Lake Court, Cape Coral, FL 33909 ("the Buildings").

10.     Plaintiffs Eric and Svetlana Grassel are the owners of a single family home located at 3033 Lake Manatee Court, Cape Coral, FL 33909 ("the Buildings").

11.     Plaintiffs Melvin and Shirley Gumpert are the owners of a single family home located at 2592 Sawgrass Lake Court, Cape Coral, FL 33909 ("the Buildings").

ROBERTS & DURKEE, P.A.
Alhambra Towers, Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700• FAX: (305) 442-2559

12.     Plaintiffs Stephen and Graciela Jackson are the owners of a single family home located at 2577 Sawgrass Lake Court, Cape Coral, FL 33909 ("the Buildings").

13.     Plaintiffs Rick and Jewelstine Laudermilk are the owners of a single family home located at 2520 Sawgrass Lake Court, Cape Coral, FL 33909 ("the Buildings").

14.     Plaintiffs Michael and Lillian Marcinkiewicz are the owners of a single family home located at 2528 Sawgrass Lake Court, Cape Coral, FL 33909 ("the Buildings").

15.     Plaintiffs Oscar and Donna Naustdal are the owners of a single family home located at 2576 Keystone Lake Drive, Cape Coral, FL 33909 ("the Buildings").

16.     Plaintiffs Suki and Michael Packard are the owners of a single family home located at 3028 Lake Manatee Court, Cape Coral, FL 33909 ("the Buildings").

17.     Plaintiff Donna Sica is the owner of a single family home located at 2569 Sawgrass Lake Court, Cape Coral, FL 33909 ("the Buildings").

18.     Plaintiff Michael Zamora is the owner of a single family home located at 3044 Lake Manatee Drive, Cape Coral, FL 33909 ("the Buildings").

19.     Plaintiffs and Tousa Homes/Engle Homes and its affiliate companies (hereinafter "Tousa/Engle") entered into Purchase and Sale Agreements for the construction and sale of the Buildings.

20.     Tousa/Engle and its affiliate companies are currently involved in a chapter 11 re-organization pending in the Southern District of Florida. All litigation has been stayed pursuant to same.

21.     Defendant, Florida Style Services, Inc. (hereinafter "Florida Style"), is a for-profit corporation, organized under the laws of the State of Florida, whose principal place of business is located in Charlotte County, Florida with an address of 26475 Eagle Boulevard,

ROBERTS & DURKEE, P.A.
Alhambra Towers, Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700▪ FAX: (305) 442-2559

Punta Gorda, FL 33950.

22.   At all times mentioned herein, Defendant Florida Style was, and, upon information and belief, remains today, engaged in the business of performing drywall installation and related construction.

23.   Tousa/Engle entered into a contract with Florida Style, pursuant to which Florida Style was responsible for the installation and related construction of drywall within all single family homes in the development known as Coral Lakes.

24.   Pursuant to its contract with Tousa/Engle, Florida Style installed the drywall and performed related construction at the Buildings.

25.   At all times mentioned herein and material hereto, Defendant Florida Style, in performing such work as it did in connection with the Buildings, knew and intended that Plaintiffs' homes and attendant fixtures and/or improvements would be utilized as a primary residences.

26.   Venue is proper in Lee County, Florida since Lee County is: (a) the domicile of the Plaintiffs and (b) the situs of the real properties at issue and the location of the Defendant's negligent conduct.

27.   All conditions precedent to the filing of this Action have occurred or have otherwise been waived.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### The Defects at the Buildings

28.   In the year 2006, the Plaintiffs moved into their newly-constructed homes in the Tousa/Engle development known as "Coral Lakes" in Cape Coral, Florida.

29.   Florida Style performed all the drywall installation in the Buildings.

-4-

30.   Florida Style installed what is commonly referred to as Chinese drywall in the Buildings.

31.   Chinese drywall is universally regarded as being defective, either by its composition, manufacturing process, or both.

32.   Florida Style purchased, directly and/or indirectly, Chinese drywall that was manufactured in China.

33.   After Florida Style purchased the Chinese drywall, it was in possession of such product until it installed same in the Buildings.

34.   Property damage was sustained to and within the Buildings and caused by the release of gases, fumes, and/or vapors from the Chinese drywall brought into the Buildings in connection with operations being performed on behalf of Tousa/Engle by its contractors, Tousa/Engle and Florida Style.

35.   Specifically, Florida Style brought Chinese drywall into the Buildings in connection with its operations as the installer of the drywall on behalf of Tousa/Engle.

36.   In reaction to the humidity indigenous to the South Florida climate, sulfuric compounds contained within the Chinese drywall (including one or more of hydrogen sulfide, carbonyl sulfide, and carbon disulfide) released gases, fumes, and/or vapors from the Chinese drywall into the indoor air of the Buildings.

37.   This resulted in a sulfur odor, which could be smelled by the occupants variously throughout the Buildings and eventually permeated the Buildings.

38.   The release of gases, fumes, and/or vapors from the Chinese drywall brought into the Buildings in connection with operations being performed on behalf of Tousa/Engle by its contractors, caused and created property damage and/or structure damage to

-5-

the Buildings including corrosion on outlet boxes, air conditioning coils, electrical wiring, metals, plumbing fixtures, and the aforementioned sulfur odor which permeated the Buildings.

39.    Plaintiffs initially discovered damage to the air conditioning coils of the air handling units ("AHUs") in the Buildings and first began to notice a periodic sulfur odor in the Buildings as early as March 2009. The periodic sulfur odor continued unabated.

40.    Plaintiffs discovered the damage to electrical wiring, metals, and plumbing fixtures sometime during the summer of 2009.

41.    Since then, the sulfur odor in the Buildings became dramatically more pronounced. So much so that, from that point forward, it permeated the Buildings on an ongoing basis and could be smelled on clothing and skin after leaving the Buildings.

42.    Beginning in April 2009 Tousa/Engle was first notified of the property damage to the Buildings, including the failure of all AHUs, the damage to electrical wiring, metals, and plumbing fixtures, and the sulfur odor that permeated the Buildings.

43.    The Chinese drywall installed in the Buildings was in a condition not intended or expected by Tousa/Engle, Florida Style, or the Plaintiffs, and was defective and unreasonably dangerous to the Plaintiffs and to the Plaintiffs' property.

44.    The release of gases, fumes and/or vapors from the Chinese drywall brought into the Buildings in connection with operations being performed on behalf of Tousa/Engle by its subcontractor, Florida Style, has been a continuous occurrence and/or repeated exposure to substantially the same generally harmful conditions since such drywall was brought into the Buildings and/or installed.

-6-

### The Consequent Property Damage and
### Consequences Endured by Plaintiffs

45.     The extent of the Chinese drywall in Plaintiffs' homes has caused property damage and/or structure damage to the homes including corrosion on outlet boxes, air conditioning coils, electrical wiring, metals, plumbing fixtures, and a sulfur odor that permeated the Buildings on an ongoing basis and could be smelled on clothing and skin after leaving the Buildings, and damage to certain of Plaintiffs' personal property.

46.     The property damage cannot be remedied simply by removing and repairing the Chinese drywall in light of the additional damage it has caused to other parts of the Buildings such as outlet boxes, air conditioning coils, electrical wiring, metals, and plumbing fixtures.  Moreover, the sulfur odor cannot be rectified by repairing or replacing the Chinese Drywall, and requires wholesale remediation and indoor air quality measures to eliminate the odor from the Buildings.

47.     Upon information and belief, the cost of completely removing, replacing and remediating the foregoing property damage is, at minimum, in the hundreds of thousands of dollars.

48.     As a direct and proximate result of the conduct set forth above, Plaintiffs' homes are defective, damaged, and not reasonably fit for continued habitation.

49.     As a proximate result of the defects and conduct set forth above, Plaintiffs have been damaged in other ways which include, but are not limited to, destruction, in whole or in material part, of the Buildings, and the loss of use of said properties.

50.     As a further and proximate result of the above, Plaintiffs have been and will be required to employ engineers, contractors, and environmental specialists in an effort to repair, maintain, remediate and/or replace the defects in the homes and, as a further and

ROBERTS & DURKEE, P.A.
Alhambra Towers, Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 • FAX: (305) 442-2559

proximate result of the above, Plaintiffs may also be required to employ medical and microbiological experts in the testing, clean-up and replacement of the Chinese Drywall in the Buildings and the HVAC, elimination of the sulfur odor, electrical and plumbing materials it has damaged, therein requiring the evacuation and relocation of all of its occupants, replacement and/or proper microbial cleaning of all of the occupants' personal property, including furniture, clothing, books, papers, moving and storage of the occupants' personal property, temporary housing for the occupants and sale and salvage expenses of the Buildings if the replacement and repair process cannot be safely completed.

51. In the alternative, should it not be possible to salvage the Buildings using conventional replacement methods, or should the cost of such replacement be too expensive to be worthwhile, the proximate result of the Defendant's conduct will be the cost of employing engineers, contractors and/or architects to destroy and then rebuild Plaintiffs' homes.

52. As a result of the Defendant's conduct, Plaintiffs have been required to retain the services of the undersigned counsel to represent their interests in this action and are obligated to pay a reasonable fee for such services.

**COUNT I.**

**NEGLIGENCE**
**(Against Florida Style)**

53. Plaintiffs repeat and reallege the allegations of Paragraphs 1-52 as if fully set forth herein.

54. Defendant owed to Plaintiffs the duty to use due care, and to perform in a competent and workmanlike manner all of the work and activity which they agreed to, were required to, and undertook to perform.

55. Defendant breached their duty of due care to the Plaintiffs by performing



ROBERTS & DURKEE, P.A.
Alhambra Towers, Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 • FAX: (305) 442-2559

their work in a faulty and negligent manner; by performing such work in a manner which fell below accepted standards in their area of practice; by performing work which was inadequate and inappropriate for the purposes for which it was intended; causing and/or contributing to damage to the property of the Plaintiffs; and that such breaches contributed to and/or caused the defects and damages described herein.

56.   At the time Plaintiffs took possession of their homes, they were negligently constructed, defective and otherwise incomplete and/or not reasonably fit for their intended purpose.

57.   Plaintiffs' homes were not erected in a workmanlike manner and were and/or otherwise became defective in that, among other things, the following defects existed:

(a)   Negligent and/or inappropriate installation of Chinese drywall and related construction and/or components which was defective, hazardous, and not suitable for its intended purposes.

58.   All the defects and conditions were latent and in existence at the time of completion of the homes. Said damages are continuous and progressive over time.

59.   The above recital is not exhaustive. Plaintiffs are continuing their investigation. Additional defects may exist and Plaintiffs will amend this Complaint at such time as additional defects become known.

60.   As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' homes, and damages to the Plaintiffs' personal property including, but not limited to, the cost of fully repairing the Buildings which includes removing and replacing the defective gypsum drywall, storage of the Plaintiffs' belongings, relocation of the Plaintiffs to suitable housing during such repairs, removal and replacement of metal, plumbing, HVAC, and electrical

-9-

systems, re-installation or re-application of wall coverings such as wallpaper, plastering, and/or paint, removal, storage, and replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or replacement of air conditioning units and/or condensers, as well as damages for stigmatization of the Buildings.

61.    The foregoing breaches of duty were both the legal and factual cause of the aforementioned damages.

62.    No contractual limitation exists which, under the terms of any contract or under the economic loss rule, would preclude the assertion of the foregoing claim with respect to Plaintiffs' homes.

63.    To the extent any contractual limitation purported to limit, or preclude altogether, Plaintiffs' ability to assert the foregoing claim, any such limitation would be voidable for failing to leave the Plaintiffs with a cognizable remedy pursuant to Article I, Section 21 of the Florida Constitution and governing common law.

**WHEREFORE**, Plaintiffs respectfully request that this honorable Court enter a judgment against Defendant Florida Style Services, Inc for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

## COUNT II.

### STRICT PRODUCTS LIABILITY
### (Against Florida Style)

64.    Plaintiffs repeat and reallege the allegations of Paragraphs 1-52 as if fully set forth herein.

65.    Florida Style is engaged in the business of performing drywall installation

-10-

and related construction.

66.    The Chinese drywall installed in the Building was purchased and installed by Florida Style.

67.    The defects causing the damages set forth above existed within the Chinese drywall both at the time of installation of such drywall and while such drywall was within the possession of Florida Style.

68.    The Defendant Florida Style expected the Chinese drywall to reach the Building without substantial change affecting its condition, and the Chinese drywall did, in fact, reach the Building without substantial change affecting its condition.

69.    The Chinese drywall installed in the Building was and remains unreasonably dangerous to the Plaintiffs.

70.    The Chinese drywall installed in the Building remains unreasonably defective because it has caused damage to other property in the Building.

71.    The damages set forth above caused by the Chinese drywall occurred as a result of normal usage of the drywall.

72.    The Chinese drywall installed in the Building by the Defendant directly and proximately caused damage to other property in the Building including, but not limited to, HVAC system/coils, electrical and plumbing components, metal surfaces/hardware, and other items.

73.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' home, and damages to the Plaintiffs' personal property including, but not limited to, the cost of fully repairing the Building which includes removing and replacing the defective gypsum

ROBERTS & DURKEE, P.A.
Alhambra Towers, Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 • FAX (305) 442-2559

drywall, storage of the Plaintiffs' belongings, relocation of the Plaintiffs to suitable housing during such repairs, removal and replacement of metal, plumbing, HVAC, and electrical systems, re-installation or re-application of wall coverings such as wallpaper, plastering, and/or paint, removal, storage, and replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or replacement of air conditioning units and/or condensers, as well as damages for stigmatization of the Building.

WHEREFORE, Plaintiffs respectfully request that this honorable Court enter a judgment against Florida Style Services, Inc for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

## COUNT III.

## BREACH OF IMPLIED WARRANTY
## (Against Florida Style)

74.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-52 as if fully set forth herein.

75.     There exists an implied warranty of merchantability and implied warranty of fitness with respect to the Plaintiffs' homes.

76.     This warranty cannot be waived as a matter of law.

77.     The implied warranty associated with the work performed by Tousa/Engle's contractors was expressly assigned to the Plaintiffs under the terms of the purchase and sale Agreement between Plaintiffs and Tousa/Engle.

78.     By virtue of the foregoing recitation of facts, Plaintiffs' homes did not meet ordinary standards reasonably to be expected of homes of comparable kind and quality.

ROBERTS & DURKEE, P.A.
Alhambra Towers, Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700• FAX (305) 442-2559

79.   No contractual limitation exists which, under the terms of any contract or under the economic loss rule, would preclude the assertion of the foregoing claim with respect to Plaintiffs' homes.

80.   To the extent any contractual limitation purported to limit, or preclude altogether, Plaintiffs' ability to assert the foregoing claim, any such limitation would be voidable for failing to leave the Plaintiff with a cognizable remedy pursuant to Article I, Section 21 of the Florida Constitution and governing common law.

81.   As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' homes, and damages to the Plaintiffs' personal property.

82.   The foregoing breaches were both the legal and factual cause of the aforementioned damages.

**WHEREFORE**, Plaintiffs respectfully request that this honorable Court enter a judgment against Florida Style Services, Inc for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs DANA AND RICK AMMONS, RYAN AND KELLI CHRUSZ, PETER AND MARY ANN CRISPINO, ALBERT AND FRANCINE FERRI, ERIC AND SVETLANA GRASSEL, MELVIN AND SHIRLEY GUMPERT, STEPHEN AND GRACIELA JACKSON, RICHARD AND JEWELSTINE LAUDERMILK, MICHAEL AND LILLIAN MARCINKIEWICZ, OSCAR AND DONNA NAUSTDAL, SUKI AND MICHAEL PACKARD, DONNA SICA, and MICHAEL ZAMORA, hereby demand a trial by jury as to all issues so triable.

-13-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served by process server on the Defendant.

ROBERTS & DURKEE, P.A.
**Attorneys for Plaintiffs**
Alhambra Towers, Penthouse I
121 Alhambra Plaza, Suite 1603
Coral Gables, Florida 33134
Tel: (305) 442-1700

BY: _____
C. DAVID DURKEE

Dated: June _2_, 2010

-14-

# *EXHIBIT F*

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR ST. LUCIE COUNTY, FLORIDA

LUIS AND FATIMA ARBELO;
individually and as natural parents and
guardians of VALENTINO, DOMINIC,
NIXA, and LUNA ARBELO, minor
children;

    Plaintiffs,

  vs.

MIDWEST CONSTRUCTION AND
DEVELOPMENT INC., a Florida
Corporation; AND DOES 1-10,
INCLUSIVE

   Defendants.

CASE NO.:

**COMPLAINT FOR DAMAGES:**
1. STRICT PRODUCTS LIABILITY
2. NEGLIGENCE AND NEGLIGENCE
 PER SE
3. BREACH OF EXPRESS WARRANTY
4. BREACH OF IMPLIED WARRANTY
5. VIOLATION OF THE FLORIDA
 DECEPTIVE AND UNFAIR TRADE
 PRACTICES ACT
6. EQUITABLE RELIEF, INJUNCTIVE
 RELIEF AND MEDICAL MONITORING

  DEMAND FOR **JURY TRIAL**

**562009CA010254**

**JUDGE CONNER**

  Plaintiffs, LUIS AND FATIMA ARBELO, individually and as natural parents and

guardians of VALENTINO, DOMINIC, NIXA, and LUNA ARBELO, minor children;

(collectively "PLAINTIFFS"), bring this action as defined below against Defendants,

MIDWEST CONSTRUCTION AND DEVELOPMENT INC., (collectively

"DEFENDANTS") and for their complaint allege, upon information and belief and based

on the investigation to date of their counsel, as follows:

## INTRODUCTION

 1. PLAINTIFFS bring this action as owners of a home in Port St. Lucie,

Florida that was built using defective drywall.

2.     The drywall used to build PLAINTIFFS' home is defective and emits levels of sulfur, methane and/or other volatile organic compounds that cause corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items, as well as creates noxious, "rotten egg-like" odors. The drywall was inherently defective and not suitable for its intended use. The compounds emitted by the drywall at issue are also capable of, among other things, harming the health of individuals subjected to prolonged exposure. These chemical compounds cause and have caused dangerous health consequences including, among other things, respiratory problems, sinus problems, eye irritation and nose bleeds.

3.     This defect is latent and existed in DEFENDANTS' drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted.

4.     As a result of DEFENDANTS' conduct as alleged herein, PLAINTIFFS have suffered economic losses by owning a home built by DEFENDANTS with defective drywall that has caused damage to their home, health, and other property.

5.     PLAINTIFFS have incurred or will incur tens of thousands of dollars in damages including, but not limited to: repair/replacement of their home, other property, and any materials contaminated or corroded by the drywall as a result of "off-gassing;" incidental and consequential damages; and diminution of value of their home.

6.     PLAINTIFFS and their minor children, have suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life,

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiffs will suffer these losses in the future.

7.     Further, as a result of DEFENDANTS' conduct as alleged herein, PLAINTIFFS and their minor children, have suffered harm and/or been exposed to an increased risk of harm and thus have need for injunctive and/or equitable relief in the form of emergency notice, environmental monitoring, and medical monitoring.

## JURISDICTION AND VENUE

8.     This action is for damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00) exclusive of interest and costs and is founded upon Florida state law including, but not limited to, common law violations, which are subject to the jurisdiction of this court.

9.     Venue is proper in that Defendants MIDWEST CONSTRUCTION AND DEVELOPMENT INC are authorized to conduct and do conduct significant amounts of business in St. Lucie County as well as throughout the State of Florida. In particular, Defendants maintain offices in Jupiter, Florida and a substantial part of the events and omissions giving rise to PLAINTIFFS' claims occurred in St. Lucie County, Florida.

10.     Plaintiffs LUIS AND FATIMA ARBELO, are and at all relevant times have been residents of St. Lucie County, Florida, and are a married couple. Further, they are the natural born parents and guardians for VALENTINO, DOMINIC, NIXA, and LUNA ARBELO, Minor children.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

## PARTIES

11.    PLAINTIFFS are individuals residing in the County of St. Lucie, State of Florida.

12.    The subject of this action are the lands with single family dwellings and other improvements thereon, owned by PLAINTIFFS respectively, (hereinafter collectively referred to as the "PROPERTY") located in the County of St. Lucie, State of Florida, described as follows:

**Luis & Fatima Arbelo      107 S.W. Sea Lion Road, Port St. Lucie, FL 34953**

13.    PLAINTIFFS' home was built using defective Chinese Drywall. PLAINTIFFS have had substantial problems with their home, including but not limited to the corrosive effects of sulfur and/or compounds in the drywall, have suffered adverse medical effects and personal injury, and have suffered injury to personal, real, and other property as a result of DEFENDANTS' conduct as further described herein.

14.    PLAINTIFFS are informed and believe and based thereon allege that at all times herein mentioned and material hereto that MIDWEST CONSTRUCTION AND DEVELOPMENT INC., was and is a corporation authorized to conduct business in Florida and engaged in business in the County of St. Lucie and were the *developers* and/or *general contractors* of the PROPERTY and the project within which the PROPERTY is located.

15.    The names and capacities, whether individual, corporate, associate or otherwise of certain *developers, builders, general contractors, subcontractors* and/or their alter egos sued herein as DOES 1 through 10 inclusive, are presently unknown, and

PLAINTIFFS will amend the Complaint to insert the same when ascertained. PLAINTIFFS are informed and believe and based thereon allege that each of these Defendants was a resident of said County and State and/or have principal offices or were doing business in said County and State and were and are responsible in some way for the happenings and damages alleged in this complaint. Said Defendants, along with the Defendants named above, will hereinafter be referred to as "DEFENDANTS".

16.    In order to build and construct said PROPERTY and project(s), DEFENDANTS hired, retained, employed, or contracted for the services of certain persons or entities to *plan, design, and prepare* drawings and specifications for the building of the PROPERTY and project(s). The identities of said persons or entities, whether individual, corporate or otherwise, sued herein as Does 1 through 3 are presently unknown to PLAINTIFFS who therefore sue such persons by their fictitious names. PLAINTIFFS are informed and believe and thereon allege that said persons or entities are wholly or in some part responsible for the occurrences set forth in the complaint. Said Defendants, along with the Defendants named above, will hereinafter be referred to as "DEFENDANTS".

17.    In order to build and construct said project, DEFENDANTS hired, retained, employed, or contracted with persons or entities to *provide for labor and materials* in the construction of the PROPERTY and project(s). The identities of said persons or entities, whether individual, corporate, or otherwise, sued herein as Does 4 through 7 are presently unknown to PLAINTIFFS who therefore sue such persons by their fictitious names. PLAINTIFFS are informed and believe and thereon allege that said persons or entities are

-5-

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

wholly or in some part responsible for the occurrences set for in the Complaint in accordance with their individual scope of work. Said Defendants, along with the Defendants named above, will hereinafter be referred to as "DEFENDANTS".

18.    PLAINTIFFS are informed and believe and based thereon allege that there were other persons and entities involved in the *planning, design, construction, maintenance, repairs, and sale* of the PROPERTY and project(s). The identities of said persons or entities, whether individual, corporate, or otherwise, sued herein as Does 8 through 10 are presently unknown to PLAINTIFFS who therefore sue such persons by their fictitious names. PLAINTIFFS are informed and believe and thereon allege that said persons or entities are wholly or in some part responsible for the occurrences set forth in the complaint. PLAINTIFFS are informed and believe and based thereon allege that at all times herein mentioned Defendants and each of them were the agents, servants, employees, assistants and consultants of their co-Defendants and were as such acting within the course and scope of their agency and authority of such agency and employment. Said Defendants, along with the Defendants named above, will hereinafter be referred to as "DEFENDANTS".

## GENERAL ALLEGATIONS

19.    DEFENDANTS negligently designed, constructed, manufactured, delivered, inspected and/or sold the subject PROPERTY with defective drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion to air-conditioning and refrigerator units, electrical wires and copper tubes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, and other

health concerns.

20.    The defective drywall used in the PROPERTY was made with material that is not suitable for use as drywall.

21.    When combined with moisture in the air, these sulfur compounds create sulfuric acid, among other compounds.  Sulfuric acid has been known to dissolve solder joints, corrode coils and copper tubing – creating leaks, blackening coils and causing air conditioners and refrigerators to fail.  Sulfuric acid has also been shown to corrode copper electrical wiring.  Not only does it blacken and corrode coils, it can harm metals such as chrome, brass and silver.

22.    The defective drywall can not only affect air conditioners and refrigerators, but can affect and require replacement of household items, including but not limited to microwaves, lighting fixtures, faucets and silverware.

23.    In addition, the defective drywall has a noxious odor, akin to the smell of rotten eggs.

24.    In addition, the defective drywall can cause a variety of medical problems, including, but not limited to, respiratory problems, runny nose, sinus infection, bloody nose, burning eyes, and other serious conditions.

25.    DEFENDANTS' actions will require PLAINTIFFS to remedy all defective drywall, performing extensive remedial repairs to the PROPERTY, and then repair the damaged property made visible during the performance of these repairs.

26.    As a result of DEFENDANTS' conduct as alleged herein, PLAINTIFFS have suffered economic losses by owning home built by DEFENDANTS with defective

drywall that has caused damage to their home, health, and other property.

27.    PLAINTIFFS have incurred or will incur tens of thousands of dollars in damages including, but not limited to: repair/replacement of their home, other property, and any materials contaminated or corroded by the drywall as a result of "off-gassing;" incidental and consequential damages; and diminution of value of their home.

28.    PLAINTIFFS, and their minor children, suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiff will suffer these losses in the future.

## THE NEED FOR MEDICAL MONITORING
## FOR THE HEALTH EFFECTS OF SULFUR EMITTING DRYWALL

29.    Dangerous chemicals have been found to be released from the defective drywall, some of which is considered a broad-spectrum poison, meaning that it can poison several different systems in the body.

30.    The toxicity of many of these harmful chemicals is comparable with that of hydrogen cyanide and may form a complex bond with iron in the mitochondrial cytochrome enzymes, thereby blocking oxygen from binding and stopping cellular respiration.

31.    Exposure to lower concentrations of these dangerous chemicals can result

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

in eye irritation, a sore throat and cough, nausea, shortness of breath, and fluid in the lungs.

32.    Long-term, low-level exposure to these dangerous chemicals has been associated with fatigue, loss of appetite, headaches, irritability, poor memory, and dizziness.  Chronic exposure to low levels of these dangerous chemicals has also been implicated in increases in miscarriages and reproductive health issues.

33.    DEFENDANTS' tortious acts and omissions have significantly increased the risk of PLAINTIFFS contracting a serious latent disease.

## THE SULFUR EMITTING DRYWALL INJURES THE HEALTH OF AFFECTED HOMEOWNERS

34.    As a direct and proximate result of DEFENDANTS' actions and omissions, PLAINTIFFS' home and bodies have been exposed to the defective drywall and the corrosive and harmful effects of the sulfide gases and other chemicals being released from these proven hazardous substances.

35.    As a direct and proximate result of DEFENDANTS' use of defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, the PLAINTIFFS and their minor children, have suffered, and continue to suffer damages for injuries from medical ailments, including but not limited to respiratory problems, sinus problems, eye irritations and nosebleeds, in addition to the creation of noxious odors, which smell like "rotten eggs."

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

## THE MERE EXISTENCE OF
## CHINESE DRYWALL HAS DIMINISHED HOME VALUES

36.    Because neither the long term effects of Chinese drywall, nor the triggers of

the adverse chemical processes within the Chinese Drywall are yet fully understood, the

mere existence of Chinese manufactured drywall in a particular home causes automatic

and substantial diminution of value to a home.   All home found or disclosed to have

Chinese drywall are tainted by the mere existences of the drywall in the home, even if it

is ultimately determined that some drywall manufactured in China is not defective.

While the PLAINTIFFS are certain that their home contain defective Chinese drywall, if

it is ultimately determined that the drywall in PLAINTIFFS' home is not defective, even

though it was manufactured in China, PLAINTIFFS have still sustained a diminution of

value of their home and are entitled to recover damages for that diminution of value.

## EQUITABLE TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

37.    The running of any statute of limitations has been tolled by reason of

DEFENDANTS' concealment.   DEFENDANTS, through failing to disclose a known

defect to PLAINTIFFS, and misrepresenting the PROPERTY as safe for its intended use,

actively concealed from PLAINTIFFS the true risks associated with their home

containing the defective drywall.

38.    As a result of DEFENDANTS' actions, PLAINTIFFS could not reasonably

know how or have learned through reasonable diligence of the defects with the drywall

within their home and that PLAINTIFFS had been exposed to the risks alleged herein and that those risks were a direct and proximate result of DEFENDANTS' acts and omissions.

39.   Furthermore, DEFENDANTS are estopped from relying on any statute of limitations because of their concealment of the defective nature of the drywall used in the PROPERTY. DEFENDANTS were under a duty to disclose the true character, quality, and nature of the PROPERTY and the defective drywall used therein because this was non-public information over which DEFENDANTS had, and continue to have, exclusive control, and because DEFENDANTS knew that this information was not available to PLAINTIFFS. In addition, DEFENDANTS are estopped from relying on any statute of limitations because of their concealment of these facts.

40.   PLAINTIFFS had no knowledge that DEFENDANTS were engaged in the wrongdoing alleged herein.   Because of the wrongdoing by DEFENDANTS, PLAINTIFFS could not have reasonably discovered the wrongdoing at any time.

## FIRST CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY

41.   PLAINTIFFS repeat and reallege the foregoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

42.   DEFENDANTS, at all times herein mentioned, were in the business of developing and mass producing home in and within the County where this PROPERTY is located, and selling them to members of the public at large.

43.   DEFENDANTS developed and mass produced the PROPERTY and/or

otherwise participated in the stream of commerce for sale of the PROPERTY in the project where the PROPERTY are located.

44. At all times herein mentioned and material hereto, DEFENDANTS knew and intended that the PROPERTY would be purchased by members of the public at large, and used by them without further inspection for defects.

45. PLAINTIFFS purchased the PROPERTY from the DEFENDANTS and moved into the home.

46. At the time of the purchase by PLAINTIFFS, the PROPERTY were defective and unfit for their intended purposes because Defendants did not construct the PROPERTY in a workmanlike manner as manifested by, but not limited to, numerous drywall defects which have resulted in damage to the home, their component parts, and other property.

47. The drywall used in the PROPERTY was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to the home and, in particular, PLAINTIFFS' PROPERTY.

48. The drywall was so defective in design or formulation or manufacture that when it left the hands of the manufacturer and/or suppliers and was used by DEFENDANTS, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of the drywall.

49. At all times herein mentioned, the drywall used by DEFENDANTS was in a defective condition and unsafe, and DEFENDANTS knew, had reason to know, or should have known that the drywall was defective and unsafe, especially when used in

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

the form and manner in the PROPERTY.

50.    DEFENDANTS knew, or should have known, that at all times herein mentioned the drywall used by DEFENDNANTS was/is inherently dangerous and unsafe.

51.    Plaintiffs utilized the drywall for the purposes and manner normally intended.

52.    Defendants had a duty to utilize a product that was not unreasonably dangerous for its normal, intended use.

53.    The drywall utilized by DEFENDANTS was designed, constructed, manufactured, delivered, inspected and/or sold in a defective condition and was unreasonably dangerous to its intended users, including Plaintiffs.

54.    Defendants manufactured, processed, distributed, delivered, supplied, inspected and/or sold the defective PROPERTY which created an unreasonable risk to the Plaintiffs' home as well as to the health of the Plaintiffs. Defendants are, therefore, strictly liable for the injuries sustained by Plaintiffs.

55.    PLAINTIFFS, acting as a reasonably prudent person, could not discover that the drywall utilized by DEFENDANTS was defective as herein mentioned or perceive its danger.

56.    The defects in the drywall utilized by DEFENDANTS were a substantial factor in causing Plaintiffs' injuries and/or placing Plaintiffs at increased risk of damage and/or harm.

57.    As a direct and proximate result of the defective condition of the drywall

used by DEFENDANTS in the PROPERTY, PLAINTIFFS suffered, and will continue to suffer, damages.

58.    By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

59.    The defects alleged herein above are defects that were not apparent by reasonable inspection of the PROPERTY at the time of the purchase. The defects thereafter manifested.

60.    Because of the defective conditions of the PROPERTY as herein above alleged, PLAINTIFFS have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:

      A)    PLAINTIFFS will be forced to incur expenses for the restoration and repairs of the PROPERTY to cure the damage, defects and/or deficiencies.  The exact amount of the damages is presently unknown, except that the costs will exceed tens of thousands of dollars per home.

      B)    PLAINTIFFS have been damaged through the diminution in value of the PROPERTY.  PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

      C)    PLAINTIFFS have been forced to retain expert consultants to analyze and determine the method of repairing the aforementioned defects and damage.  PLAINTIFFS are unaware of the precise

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

amount of such damage but will establish such amount at time of trial.

D)   That as a direct and proximate result of the negligence of the Defendant, the Plaintiffs, LUIS AND FATIMA ARBELO, and their minor children VALENTINO, DOMINIC, NIXA, and LUNA ARBELO, have suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiffs will suffer these losses in the future.

E)   As a result of the injuries sustained by the Plaintiff Luis Arbelo, FATIMA ARBELO, has lost the consort, companionship, society, affection, services and support of her husband. As a result, under Florida law Fatima Arbelo is entitled to a claim for loss of consortium. Further, as a result of the injuries sustained by the Plaintiff Fatima Arbelo, LUIS ARBELO has lost the consort, companionship, society, affection, services and support of his wife. As a result, under Florida law Luis Arbelo is entitled to a claim for loss of consortium.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

61.     DEFENDANTS, as developers, mass producers, builders and sellers and/or otherwise within the stream of commerce are strictly liable and responsible to PLAINTIFFS for all damage suffered as a result of the above described damage, defects and deficiencies in the PROPERTY.

62.     WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a.      Equitable, injunctive, and declaratory relief;

b.      Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

c.      Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.      The costs and disbursements incurred by PLAINTIFFS in connection with this action, including reasonable attorneys' fees;

e.      All statutory damages;

f.      Disgorgement of DEFENDANTS' profits from the sale of the PROPERTY;

g.      Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be entitled;

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

h.     Such other and further relief under all applicable state and federal

law and any other relief the Court deems just and appropriate.

## SECOND CAUSE OF ACTION
## NEGLIGENCE AND NEGLIGENCE PER SE

63.     PLAINTIFFS repeat and reallege the foregoing paragraphs, inclusive, and

incorporates the same as if set forth herein at length.

64.     DEFENDANTS had a duty to exercise reasonable care in designing,

constructing, manufacturing, delivering, inspecting and/or selling the PROPERTY before

being placed into the stream of commerce, including a duty to assure that the

PROPERTY and drywall would perform as intended and would not cause and did not

cause damage as described herein.

65.     DEFENDANTS breached their duty by failing to exercise ordinary care in

the designing, constructing, manufacturing, delivering, inspecting and/or selling the

PROPERTY with defective drywall in that DEFENDANTS knew or should have known

that the PROPERTY was defective with the drywall used therein, because the drywall did

not function as intended and/or created a high risk of unreasonable, dangerous side

effects, including, but not limited to, corrosion to air-conditioning and refrigerator units,

wires, tubes and pipes, and caused allergic reactions, sinus and throat infection, eye

irritation, breathing hazards, and other health concerns.

66.  ·  The negligence of the DEFENDANTS, their agents, servants, and/or

employees, included, but was not limited to, the following acts and/or omissions:

a.     negligently failing to adequately and correctly warn PLAINTIFFS

and the public of the dangers of the drywall used by DEFENDANTS in the PROPERTY;

b.    negligently failing to recall or otherwise notify users at the earliest date that it became known that the drywall in the PROPERTY was, in fact, dangerous and defective;

c.    negligently representing that the drywall was safe for its intended purpose when, in fact, its safety is questionable;

d.    negligently distributing the drywall in a manner which was dangerous to its users;

e.    negligently delivering the drywall in a manner which was dangerous to its users;

f.    concealing information concerning reports of adverse effects of the drywall used in the PROPERTY while knowing that the drywall was unsafe, dangerous and non-conforming with accepted industry standards; and

g.    improperly concealing and/or misrepresenting information from PLAINTIFFS and/or the public, concerning the severity of risks and dangers to Defendants' drywall and/or the manufacturing defect.

67.    DEFENDANTS were negligent in the design, construction, manufacture, delivery, inspection and/or sale of the subject PROPERTY with defective drywall in that they:

a.    failed to use due care in constructing the PROPERTY with adequate

drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;

b.    failed to conduct adequate testing to determine the safety of the drywall; and

c.    failed to warn PLAINTIFFS prior to the sale of the PROPERTY, either directly or indirectly, orally or in writing, about the defective nature of the drywall used therein; and were otherwise negligent.

68.    Upon information and belief, despite the fact that DEFENDANTS knew or should have known that the drywall used in the PROPERTY caused unreasonably dangerous side effects due to its manufacturing defect, DEFENDANTS continued to design, construct, manufacture, deliver, inspect and/or sell the subject PROPERTY to PLAINTIFFS and/or the consuming public.

69.    DEFENDANTS knew or should have known that consumers such as PLAINTIFFS   and their Minor Children would foreseeably suffer damage and injury, both physical and economic, and/or be at an increased risk of suffering damage and injury as a result of DEFENDANTS' failure to exercise ordinary care, as well as DEFENDANTS' negligent use of defective drywall, as set forth herein.

70.    DEFENDANTS' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitutes negligence per se.

71.    As a direct and proximate result of the actions of the DEFENDANTS as alleged herein, PLAINTIFFS and their Minor Children suffered, and will continue to

suffer, damages.

72.   By reason of the foregoing, PLAINTIFFS and their Minor Children experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

73.   The defects alleged herein above are defects that were not apparent by reasonable inspection of the PROPERTY at the time of the purchase.   The defects thereafter manifested.

74.   Because of the defective conditions of the PROPERTY as herein above alleged, PLAINTIFFS have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:

A)   PLAINTIFFS will be forced to incur expenses for the restoration and repairs of the PROPERTY to cure the damage, defects and/or deficiencies.   The exact amount of the damages is presently unknown, except that the costs will exceed tens of thousands of dollars per home.

B)   PLAINTIFFS have been damaged through the diminution in value of the PROPERTY.   PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

C)   PLAINTIFFS have been forced to retain expert consultants to analyze and determine the method of repairing the aforementioned defects and damage.   PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of

trial.

D)   That as a direct and proximate result of the negligence of the Defendant, the Plaintiffs, LUIS AND FATIMA ARBELO, and their minor children VALENTINO, DOMINIC, NIXA, and LUNA ARBELO, have suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiffs will suffer these losses in the future.

E)   As a result of the injuries sustained by the Plaintiff Luis Arbelo, FATIMA ARBELO, has lost the consort, companionship, society, affection, services and support of her husband. As a result, under Florida law Fatima Arbelo is entitled to a claim for loss of consortium. Further, as a result of the injuries sustained by the Plaintiff Fatima Arbelo, LUIS ARBELO has lost the consort, companionship, society, affection, services and support of his wife. As a result, under Florida law Luis Arbelo is entitled to a claim for loss of consortium.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

75.    WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

    a.    Equitable, injunctive, and declaratory relief;

    b.    Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

    c.    Pre-judgment and post-judgment interest at the maximum rate allowable at law;

    d.    The costs and disbursements incurred by PLAINTIFFS in connection with this action, including reasonable attorneys' fees;

    e.    All statutory damages;

    f.    Disgorgement of DEFENDANTS' profits from the sale of the PROPERTY;

    g.    Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be entitled;

    h.    Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

## THIRD CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

76.     PLAINTIFFS repeat and reallege the foregoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

77.     Based upon information and belief, and, in part, upon written representations in the possession at DEFENDANTS and to be obtained in the discovery process, DEFENDANTS expressly warranted that DEFENDANTS' PROPERTY was safe and of acceptable quality and standards.  DEFENDANTS also expressly warranted that PLAINTIFFS' home would "be free from substantial construction defects and from defects in materials and workmanship".

78.     DEFENDANTS' PROPERTY did not conform to these express representations because the drywall used in the PROPERTY was defective and unsafe, and is associated with numerous side effects.  As a direct and proximate result of the breach of said warranties, PLAINTIFFS and their Minor children suffered, and/or will continue to suffer, and/or at an increased risk to suffer, extensive damage, economic loss, personal injuries and/or other harm.

79.     PLAINTIFFS did rely on the express warranties of the DEFENDANTS herein.

80.     The DEFENDANTS herein breached the aforesaid express warranties, as DEFENDANTS' used defective drywall.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

81.    DEFENDANTS expressly represented to PLAINTIFFS that the PROPERTY was safe, efficacious, and fit for use for the purposes intended, that the drywall used in the PROPERTY was of merchantable quality, did not produce any dangerous side effects, and was adequately tested and fit for its intended use.

82.    DEFENDANTS knew or should have known that the aforesaid representations and warranties were false, misleading and untrue in that the PROPERTY, with the defective drywall used therein, was not fit for the use intended and, in fact, produced severe and extensive damage to PLAINTIFFS' home because defective drywall was negligently used therein.

83.    As a result of the foregoing acts and omissions, PLAINTIFFS require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. PLAINTIFFS are informed and believe, and further allege, that PLAINTIFFS will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

84.    Because of the defective conditions of the PROPERTY as herein above alleged, PLAINTIFFS have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:

    A)    PLAINTIFFS will be forced to incur expenses for the restoration and repairs of the PROPERTY to cure the damage, defects and/or deficiencies. The exact amount of the damages is presently

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33131 (305) 442-1700 FAX: (305) 442-2559

unknown, except that the costs will exceed tens of thousands of dollars per home.

B)    PLAINTIFFS have been damaged through the diminution in value of the PROPERTY. PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

C)    PLAINTIFFS have been forced to retain expert consultants to analyze and determine the method of repairing the aforementioned defects and damage. PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

D)    That as a direct and proximate result of the negligence of the Defendant, the Plaintiffs, LUIS AND FATIMA ARBELO, and their minor children VALENTINO, DOMINIC, NIXA, and LUNA ARBELO, have suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiffs will suffer these losses in the future.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

E)      As a result of the injuries sustained by the Plaintiff Luis Arbelo,
FATIMA ARBELO, has lost the consort, companionship, society,
affection, services and support of her husband.  As a result, under
Florida law Fatima Arbelo is entitled to a claim for loss of
consortium.  Further, as a result of the injuries sustained by the
Plaintiff Fatima Arbelo, LUIS ARBELO has lost the consort,
companionship, society, affection, services and support of his wife.
As a result, under Florida law Luis Arbelo is entitled to a claim for
loss of consortium.

85.     WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly
and severally, as follows:

a.      Equitable, injunctive, and declaratory relief;

b.      Damages in an amount to be determined at trial, but in an amount
exceeding fifteen thousand dollars;

c.      Pre-judgment and post-judgment interest at the maximum rate
allowable at law;

d.      The costs and disbursements incurred by PLAINTIFFS in
connection with this action, including reasonable attorneys' fees;

e.      All statutory damages;

f.      Disgorgement of DEFENDANTS' profits from the sale of the
PROPERTY;

g.   Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be entitled;

h.   Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## FOURTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

86.   PLAINTIFFS repeat and reallege the foregoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

87.   At all times herein, DEFENDANTS designed, constructed, manufactured, delivered, inspected and/or sold the subject PROPERTY with defective drywall.

88.   DEFENDANTS utilized defective drywall for use in the construction of PLAINTIFFS' home and DEFENDANTS knew of the use for which the drywall was intended and impliedly warranted the product to be of merchantable quality and fit for such use.

89.   DEFENDANTS impliedly represented and warranted to PLAINTIFFS that the drywall used in the PROPERTY was safe and of merchantable quality and fit for the ordinary use for which said product was to be used.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

90.    Said representations and warranties aforementioned are false, misleading, and inaccurate in that the drywall used in the PROPERTY was unsafe, unreasonably dangerous, improper, not merchantable quality, and defective and cause damage and injury to PLAINTIFFS.

91.    PLAINTIFFS relied on said implied warranty of merchantability and fitness for a particular use and purpose.

92.    PLAINTIFFS reasonably relied upon the skill and judgment of DEFENDANTS as to whether the drywall used in the PROPERTY was of merchantable quality and safe and fit for its intended use.

93.    The defective drywall used in the PROPERTY was placed into the stream of commerce by DEFENDANTS in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which they were sold.

94.    The DEFENDANTS herein breached the aforesaid implied warranties, as the drywall used in the PROPERTY was not fit for its intended purposes and uses.

95.    As a direct and proximate result of the breach of said warranties, PLAINTIFFS and their Minor Children suffered, and/or will continue to suffer, and/or are at an increased risk to suffer, extensive damage, economic loss, personal injuries and/or other harm.

96.    As a result of the foregoing acts and omissions, PLAINTIFFS require

and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. PLAINTIFFS are informed and believe, and further allege, that PLAINTIFFS will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

97.     Because of the defective conditions of the PROPERTY as herein above alleged, PLAINTIFFS have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:

       A)    PLAINTIFFS will be forced to incur expenses for the restoration and repairs of the PROPERTY to cure the damage, defects and/or deficiencies.   The exact amount of the damages is presently unknown, except that the costs will exceed tens of thousands of dollars per home.

       B)    PLAINTIFFS have been damaged through the diminution in value of the PROPERTY.  PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

       C)    PLAINTIFFS have been forced to retain expert consultants to analyze and determine the method of repairing the aforementioned defects and damage.   PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

D)      That as a direct and proximate result of the negligence of the Defendant, the Plaintiffs, LUIS AND FATIMA ARBELO, and their minor children VALENTINO, DOMINIC, NIXA, and LUNA ARBELO, have suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiffs will suffer these losses in the future.

E)      As a result of the injuries sustained by the Plaintiff Luis Arbelo, FATIMA ARBELO, has lost the consort, companionship, society, affection, services and support of her husband. As a result, under Florida law Fatima Arbelo is entitled to a claim for loss of consortium. Further, as a result of the injuries sustained by the Plaintiff Fatima Arbelo, LUIS ARBELO has lost the consort, companionship, society, affection, services and support of his wife. As a result, under Florida law Luis Arbelo is entitled to a claim for loss of consortium.

98.     WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a.      Equitable, injunctive, and declaratory relief;

b.      Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

c.      Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.      The costs and disbursements incurred by PLAINTIFFS in connection with this action, including reasonable attorneys' fees;

e.      All statutory damages;

f.      Disgorgement of DEFENDANTS' profits from the sale of the PROPERTY;

g.      Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be entitled;

h.      Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

## FIFTH CAUSE OF ACTION
## VIOLATION OF THE FLORIDA DECEPTIVE
## AND UNFAIR TRADE PRACTICES ACT

99.    PLAINTIFFS repeat and reallege the foregoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

100.    This action is brought to secure redress for the unlawful, deceptive and unfair trade practices, perpetrated by DEFENDANTS.

101.    PLAINTIFFS are "consumers" and the subject transactions are "trade or commerce" as defined by Florida Statute §501.203(8).

102.    DEFENDANTS' actions and/or omissions as described herein violate Florida Statutes, §501.201, *et seq.*, which was enacted to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

103.    Specifically, DEFENDANTS misrepresented and omitted material information regarding Defendants' use of defective drywall in the PROPERTY and by failing to disclose known risks.

104.    DEFENDANTS' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendants' home in violation of Florida Statutes,

§501.201, *et seq.*

105. DEFENDANTS violated Florida Statutes, §501.201, *et seq.*, by knowingly and falsely representing that the PROPERTY and drywall used therein was fit to be used for the purpose for which they were intended, when DEFENDANTS knew it was deceptive, dangerous, ineffective, unsafe and by other acts alleged herein.

106. DEFENDANTS engaged in the deceptive acts and practices alleged herein in order to sell more home to the public, including PLAINTIFFS.

107. Said acts and practices on the part of DEFENDANTS were and are illegal and unlawful pursuant to Florida Statute §501.204.

108. As a direct and proximate result of DEFENDANTS' violations of Florida Statutes, §501.201, *et seq.*, PLAINTIFFS have suffered damages. PLAINTIFFS are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

109. Because of the defective conditions of the PROPERTY as herein above alleged, PLAINTIFFS have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:

> A) PLAINTIFFS will be forced to incur expenses for the restoration and repairs of the PROPERTY to cure the damage, defects and/or deficiencies. The exact amount of the damages is presently unknown, except that the costs will exceed tens of thousands of dollars per home.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

B)   PLAINTIFFS have been damaged through the diminution in value of the PROPERTY.  PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

C)   PLAINTIFFS have been forced to retain expert consultants to analyze and determine the method of repairing the aforementioned defects and damage.  PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

D)   That as a direct and proximate result of the negligence of the Defendant, the Plaintiffs, LUIS AND FATIMA ARBELO, and their minor children VALENTINO, DOMINIC, NIXA, and LUNA ARBELO, have suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money.  The loss and injuries are either permanent or continuing and the Plaintiffs will suffer these losses in the future.

E)   As a result of the injuries sustained by the Plaintiff Luis Arbelo, FATIMA ARBELO, has lost the consort, companionship, society,

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

affection, services and support of her husband.  As a result, under Florida law Fatima Arbelo is entitled to a claim for loss of consortium.  Further, as a result of the injuries sustained by the Plaintiff Fatima Arbelo, LUIS ARBELO has lost the consort, companionship, society, affection, services and support of his wife. As a result, under Florida law Luis Arbelo is entitled to a claim for loss of consortium.

110.   WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a.   Equitable, injunctive, and declaratory relief;

b.   Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

c.   Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.   The costs and disbursements incurred by PLAINTIFFS in connection with this action, including reasonable attorneys' fees;

e.   All statutory damages;

f.   Disgorgement of DEFENDANTS' profits from the sale of the PROPERTY;

g.   Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse 1, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be entitled;

h.      Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## SIXTH CAUSE OF ACTION
## EQUITABLE RELIEF, INJUNCTIVE RELIEF AND MEDICAL MONITORING

111.  PLAINTIFFS repeat and reallege the forgoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

112.  Because no adequate remedy exists for the conduct of DEFENDANTS, equitable and injunctive relief is appropriate.

113.  PLAINTIFFS and their Minor Children will suffer irreparable injury if the Court does not order injunctive relief and medical monitoring.

114.  PLAINTIFFS demand that DEFENDANTS: (A) recall, repurchase and/or repair PLAINTIFFS' home; (B) initiate and pay for a medical monitoring program under Florida law; (C) identify, at their own expense, each and every home with the defective drywall, if necessary, testing every home in which the defective drywall may potentially be found.

115.  Medical monitoring is a necessary component of the relief the Court should

order because some of the sulfur components and other organic compounds being emitted from the defective drywall are very hazardous.  For example, many of the compounds found in the drywall are considered a broad-spectrum poison – meaning it can attack more than one system of the body simultaneously.

116.   As a direct consequence of the wrongful and/or tortious acts and/or omissions of DEFENDANTS' conduct, PLAINTIFFS and their Minor Children have been exposed to sulfur and other dangerous compounds in quantities sufficient to harm them.

117.   Until it has been conclusively established that all defective drywall has been removed and that air quality is safe, DEFENDANTS should bare the expense of air and environmental monitoring in PLAINTIFFS' home.

118.   Because of the defective conditions of the PROPERTY as herein above alleged, PLAINTIFFS have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:

A)   PLAINTIFFS will be forced to incur expenses for the restoration and repairs of the PROPERTY to cure the damage, defects and/or deficiencies.   The exact amount of the damages is presently unknown, except that the costs will exceed tens of thousands of dollars per home.

B)   PLAINTIFFS have been damaged through the diminution in value of the PROPERTY.  PLAINTIFFS are unaware of the precise amount

-37-

of such damage but will establish such amount at time of trial.

C)    PLAINTIFFS have been forced to retain expert consultants to analyze and determine the method of repairing the aforementioned defects and damage.   PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

D)    That as a direct and proximate result of the negligence of the Defendant, the Plaintiffs, LUIS AND FATIMA ARBELO, and their minor children VALENTINO, DOMINIC, NIXA, and LUNA ARBELO, have suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiffs will suffer these losses in the future.

E)    As a result of the injuries sustained by the Plaintiff Luis Arbelo, FATIMA ARBELO, has lost the consort, companionship, society, affection, services and support of her husband.   As a result, under Florida law Fatima Arbelo is entitled to a claim for loss of

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

consortium.  Further, as a result of the injuries sustained by the Plaintiff Fatima Arbelo, LUIS .ARBELO has lost the consort, companionship, society, affection, services and support of his wife. As a result, under Florida law Luis Arbelo is entitled to a claim for loss of consortium.

119.   WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a.   Equitable, injunctive, and declaratory relief;

b.   Damages in an amount to be determined at trial, but in an amount. exceeding fifteen thousand dollars;

c.   Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.   The costs and disbursements incurred by PLAINTIFFS in connection with this action, including reasonable attorneys' fees;

e.   All statutory damages;

f.   Disgorgement of DEFENDANTS' profits from the sale of the PROPERTY;

g.   Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

other legal or equitable relief to which PLAINTIFFS may be entitled;

h.      Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

### GENERAL PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a.      Equitable, injunctive, and declaratory relief;

b.      Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

c.      Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.      The costs and disbursements incurred by PLAINTIFFS in connection with this action, including reasonable attorneys' fees;

e.      All statutory damages;

f.      Disgorgement of DEFENDANTS' profits from the sale of the PROPERTY;

g.      Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

other legal or equitable relief to which PLAINTIFFS may be entitled;

h.      Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, LUIS AND FATIMA ARBELO, individually and as natural parents and guardians of VALENTINO, DOMINIC, NIXA, and LUNA ARBELO, Minor Children, hereby demand a trial by jury as to all issues so triable.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambro Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served by process server on the Defendant.

ROBERTS & DURKEE, P.A.
**Attorneys for Plaintiffs**
Alhambra Towers, Penthouse I
121 Alhambra Plaza, Suite 1603
Coral Gables, Florida 33134
Tel: (305) 442-1700

BY: _____
C. DAVID DURKEE
Florida Bar No.: 998435

MILSTEIN, ADELMAN & KREGER, LLP
**Attorneys for Plaintiffs**
2800 Donald Douglas Loop North
Santa Monica, CA 90405
Tel: (310) 396-9600

By: _____
WAYNE S. KREGER
ISRAEL E. GARCIA
JASON J. RUDOLPH

Dated: December _10_, 2009.