UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| | * | SECTON "L" |
| THIS DOCUMENT RELATES TO: | * * | |
| Mary Anne Benes, et al. vs. Knauf Gips KG., et al. | * * * * | JUDGE FALLON MAG. JUDGE WILKINSON |
| CASE NO.: 2:09-CV-6690-EEF-JCW | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORNADUM IN SUPPORT OF
## DIAMOND COURT CONSTRUCTION COMPANY'S
## RULE 12(B) MOTION TO DISMISS

Defendant Diamond Court Construction Company ("**Diamond Court**") files this Memorandum in Support of its Rule 12(b) Motion to Dismiss the claims brought against it in the *Gross/Benes* Class Action Complaint ("**Omni III**"). Diamond Court is named in Omni III by Plaintiff Andrew Williams.

Diamond Court is a family-owned and operated general contractor of single-family homes in Florida. Diamond Court has never manufactured, imported, distributed, or marketed drywall. Pursuant to its 2005 Building Agreement with the Plaintiff, Diamond Court agreed to build a home for Andrew Williams in Saint Lucie County, Florida. Diamond Court contracted with a third-party sub-contractor to supply and install drywall for the Plaintiff's home. Diamond Court had absolutely no knowledge of any alleged drywall defects. If any entities knew or should have known of such defects, they are the drywall manufacturers, importers, suppliers, and installers. When the Plaintiff took possession of his property in August, 2006, Diamond Court

issued a One Year Performance Guaranty for defective work or materials made or supplied by third-parties.  Plaintiff did not serve Diamond Court with this suit until May, 2010, however, well outside the express one-year warranty period.  Furthermore, in October, 2006, Andrew Williams released <u>all</u> claims against Diamond Court in a Release that Mr. Williams, himself, requested to ensure that each party owed no further obligations to the other.  In short, Diamond Court does not belong in Plaintiffs' "catch all" complaint and should be dismissed.

## I.    SUMMARY OF ARGUMENT

Plaintiffs' pleading fails to state a cause of action.  This Court should dismiss Diamond Court from this case for the following non-exclusive reasons:

> **Andrew Williams discharged all potential claims against Diamond Court in a Release signed on October 18, 2006.**

> **Andrew Williams' Building Agreement and One Year Performance Guaranty with Diamond Court provide his exclusive remedy and bar relief today.**

> The implied warranty of merchantability does not apply to the services provided by Diamond Court.

> The negligence claims against Diamond Court fail as a matter of law.  Diamond Court owed the Plaintiffs a duty to neither inspect nor warn because drywall is not an "inherently dangerous" product.  Also, Diamond Court did not know nor could have known of any defective conditions in the drywall that was purchased and installed by a third-party contractor.

> Plaintiffs' claim for negligence per se is predicated on Diamond Court's alleged breach of state building codes.  Under Florida law, violations of state building codes

cannot establish per se negligence. Furthermore, Plaintiffs do not even identify the codes that Diamond Court violated.

➢ Plaintiffs' strict liability claim fails because Diamond Court is not a drywall manufacturer, nor is drywall a "product" under state law.

➢ Plaintiffs' tort claims are barred by the Economic Loss Rule. This rule prevents a contractual party from seeking damages in tort.

➢ Plaintiffs fail to show how Diamond Court breached its contract with Andrew Williams.

➢ Plaintiffs' claim for private nuisance is without merit because Diamond Court did not have possession over the property.

➢ The overly-broad allegation that Diamond Court violated "various consumer Protection Acts" is a claim for fraud that requires specific pleading, which the Plaintiffs do not offer.

➢ Plaintiffs do not explain how their remedies at law are insufficient as to permit injunctive relief and medical monitoring. Furthermore, medical monitoring is not permitted under Florida law.

➢ Unjust enrichment is a quasi-contractual theory of recovery available only when there is no adequate legal remedy. This claim is precluded here because Andrew Williams had a contract with Diamond Court.

## II.   BACKGROUND

The *Benes* Intervention Complaint[1] ("Plaintiffs' Omnibus Class Action Complaint in Intervention (III)") "incorporate[s] and adopt[s] the allegations of the *Gross* complaint [...] by

---

[1] *See* Documents 1777 and 1777-1.

reference."[2]  The *Gross/Benes* Class Action Complaint ("**Omni III**") identifies Diamond Court as a Defendant in the Builder/Developer Subclass.[3]  Diamond Court is named in Omni III by plaintiff Andrew Williams.[4]

On May 14, 2005, Diamond Court entered into a contract to build a home for Andrew Williams in Saint Lucie County, Florida.[5]  Upon its completion of the home, Diamond Court issued a Notice of Completion to Mr. Williams on August 9, 2006.[6]  With this Notice, Diamond Court concurrently issued a One Year Performance Guaranty to Andrew Williams.[7]  Soon thereafter, on October 18, 2006, Mr. Williams discharged all potential claims against Diamond Court to settle all fees owed on the project.[8]

Andrew Williams' general claim in Omni III is that Diamond Court built a home for him containing defective drywall about which Diamond Court knew or should have known.  In reality, Diamond Court had absolutely no knowledge that the drywall was allegedly defective.  Diamond Court is named in this litigation alongside many purported manufacturers, importers, suppliers, and installers of Chinese Drywall.  But Diamond Court had <u>nothing</u> to do with the manufacture, marketing, distribution, or installation of that drywall.  Plaintiffs' Complaint offers a laundry list of generic theories of liability without fully distinguishing between, *inter alia*, homebuilders and other defendants.

Table 1, below, lists the  Plaintiffs' fifteen counts to illustrate the "catch-all" nature of Plaintiffs' Complaint.

---

[2] *See* Doc. 1777 at p. 2. (N.B.: the *Gross* Complaint is found at Doc. 366).
[3] *See* Doc. Doc. 1777-1 at ¶ 1174.
[4] *See* Doc. 1777-3 at p. 27.
[5] *See* Building Agreement, attached as Exhibit "A."
[6] *See* Notice of Completion, attached as Exhibit "B."
[7] *See* One Year Performance Guarantee, attached as Exhibit "C."
[8] *See* Release, attached as Exhibit "D."

| Table 1: Plaintiffs' *Gross/Benes* Class Action Complaint ("Omni III") [9] (highlighted Counts do not apply to Diamond Court) | | |
|---|---|---|
| **Plaintiffs' Count Number** | **Defendants against which Count is purportedly directed** | **Plaintiffs' Claim** |
| I | All Defendants | Negligence |
| II | All Defendants | Negligence Per Se |
| III | All Defendants | Strict Liability |
| IV | All Defendants | Breach of Express and/or Implied Warranties |
| V [10] | Builders Only (on behalf of Plaintiffs who own condominiums in the state of Florida) | Breach of the Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes Section 718.203 |
| VI | Builders Only | Breach of the Implied Warranty of Habitability |
| VII | Builders Only | Breach of Contract |
| VIII [11] | Louisiana Builders Only | Violation of the Louisiana New Home Warranty Act (on Behalf of Plaintiffs who own Homes in the State of LA) |
| IX [12] | Louisiana Plaintiffs against all Defendants | Redhibition |
| X [13] | Manufacturing Defendants (Pleaded in the Alternative against Distributor Defendants) | Louisiana Products Liability Act |
| XI | All Defendants | Private Nuisance |
| XII | All Defendants | Negligent Discharge of a Corrosive Substance |
| XIII | All Defendants | Unjust Enrichment |
| XIV | All Defendants | Violation of Consumer Protection Act |
| XV | All Defendants | Equitable and Injunctive Relief and Medical Monitoring |

Of Plaintiffs' fifteen counts, four do not apply to Diamond Court (V, VIII, IX, and X); seven are tort-based claims (I, II, III, XI, XII, XIII, XV); three are contract claims (IV, VI, and VII); and one is statutory (XIV). None of the claims applicable to Diamond Court states a claim for which relief can be granted. Every one of Plaintiffs' claims against Diamond Court should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

---

[9] *See* Documents 1777 and 1777-1.
[10] Count V does not apply to Diamond Court because Andrew Williams does not own a Florida condominium.
[11] Count VIII does not apply to Diamond Court because Diamond Court is not a Louisiana builder. Diamond Court built Andrew Williams' home in Florida.
[12] Count IX does not apply to Diamond Court because Diamond Court is not a Louisiana builder. Diamond Court built Andrew Williams' home in Florida.
[13] Count X does not apply to Diamond Court because Plaintiffs identify Diamond Court in neither the manufacturing nor distributor classes.

## III.   ARGUMENT

### A. Andrew Williams' claim against Diamond Court is barred by the parties' 2006 Release

In 2006, after Diamond Court finished constructing Andrew Williams' home, the Plaintiff asked for a release from Diamond Court to ensure that the parties owed no other obligations to one another. Per the Plaintiff's request, Diamond Court entered into a release with Andrew Williams.[14] In the 2006 Release, Andrew Williams agrees that he:

> do[es] hereby completely, release, discharge, acquit and forgive from all claims, contracts, actions, suits, demands, agreements, liabilities, and proceedings of every nature and description both at law and in equity that [he] has or may have against Diamond Court Construction Co. arising [from] the beginning of time to the date of these presence and continuing to endure [...].[15]

The 2006 Release is couched in all-encompassing terms. Florida courts have enforced such agreements. The Florida Supreme Court has observed that, "Florida courts enforce general releases to further the policy of encouraging settlements. Many Florida cases have upheld general releases, even when the releasing party was unaware of the defect at the time the agreement was executed."[16]

In *Bd. of Trustees of Fla. Atl. University v. Bowman*, the court confronted nearly identical language in a Proposal for Settlement and General Release.[17] There, the court granted attorney fees to a university when students rejected a Proposal for Settlement, lost at trial, and later claimed that the Proposal it rejected was invalid as overbroad. The *Bowman* court noted that, "the General Release required Plaintiffs to release all claims against Defendant from any and all actions or claims that Plaintiffs had or could have had as of the date of execution of the Proposal

---

[14] *See* Release, attached as Exhibit "D."
[15] *Id.*
[16] *Mazzoni Farms, Inc. v. DuPont De Nemours & Co.*, 761 So.2d 306, 315 (Fla. 2000) (citations omitted); *see also Cerniglia v. Cerniglia*, 679 So.2d 1160, 1164 (Fla. 1996) ("Where the language of [a] release is clear and unambiguous, [a] court cannot entertain evidence contrary to its plain meaning.").
[17] 853 So.2d 507 (Fla. 4th DCA 2003).

for Settlement [...]."[18]   The court recognized that, "these factors are typical of a 'general release'

and do not invalidate the Proposals for Settlement."[19]   Ultimately, the *Bowman* court held that:

> [t]he fact that Plaintiffs are required to release Defendant for all claims which had
> accrued as of the date of the Proposal for Settlement does not invalidate the
> Proposal for Settlement.   The Florida Supreme Court has held that general
> releases contained in proposals for settlement are enforceable to further the policy
> of encouraging settlements.[20]

Andrew Williams' suit against Diamond Court should be dismissed.   The Plaintiff's

instant claims had already accrued at the time the parties entered into the 2006 Release.   Any

defects allegedly attributable to Diamond Court must have existed at the time of the 2006

Release because Diamond Court has not performed any work on Mr. Williams' home since that

time.   More specifically, the Plaintiff's cause of action accrued when his drywall was installed,

even if all of his alleged damages were not yet known.   This is consistent with *Mazzoni Farms*,

where a releasing party was not aware of the defect at the time he entered into a release.   Because

of the 2006 Release, alone, the Plaintiff's claims against Diamond Court fail as a matter of law.

### B.  Plaintiffs fail to state a claim for negligence (Counts I and XII).

Plaintiffs' negligence claims highlight the "shotgun" approach they take in this litigation.

Omni III alleges that Diamond Court owed Plaintiffs a duty to exercise reasonable care in "a)

designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g)

supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question.   *See* Doc. 1777-

1 at ¶ 1461.   The Complaint further alleges that Diamond Court had a duty to provide Andrew

Williams with certain warnings about the drywall.   *See* Doc. 1771-1 at ¶ 1464.

Diamond Court simply did not design, manufacture, export, import, distribute, deliver,

supply, inspect, market, or sell drywall to the Plaintiffs.   Even the Plaintiffs identify Diamond

---

[18] *Id.* at 509.
[19] *Id.* (citing *Hold v. Manzini*, 736 So.2d 138, 141 (Fla. 3d DCA 1999)).
[20] *Id.* (citing *Maxxoni Farms*, supra).

Court as a "Developer/Builder." *See* Doc. 1777-1 at ¶ 1174. Diamond Court relied on a sub-contractor to purchase and install the drywall. Diamond Court built Mr. Williams' home pursuant to the parties' 2005 Building Agreement.

It is a bedrock principle of tort law that a negligence claim requires the plaintiff to prove, *inter alia*, that the defendant owed a <u>duty</u> to the plaintiff, and that the duty was <u>breached</u>. *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (explaining that, under Florida law, "failure to establish any one of these elements is fatal to the plaintiff's case."). Plaintiffs cannot prove these prerequisites to a negligence claim.

First, Diamond Court owed no duty of care to inspect the plaintiff's drywall. Drywall is not the kind of "inherently dangerous" product that carries a duty to inspect or warn. Under Florida law, manufacturers, retailers, and distributors have a duty to inspect or warn <u>only</u> when the product is considered "inherently dangerous." *See O'Connor v. Kawasaki Motors Corp.*, 699 F.Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F.Supp. 481, 483-84 (S.D. Fla. 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous."). Diamond Court is <u>not</u> a manufacturer, retailer, or distributor of drywall. Diamond Court owed no duty to inspect the drywall or warn Andrew Williams of possible defects unknown to Diamond Court because Diamond Court is not a manufacturer, retailer, or distributor of drywall and drywall is not inherently dangerous.

Second, Diamond Court did not know nor could have known of any defective drywall conditions. The drywall in question entered Mr. Williams' home through an installer that purchased the drywall from a third-party. Diamond Court cannot be held liable for latent defects absent actual or implied knowledge of those defects. *See Carter v. Hector Supply Co.*, 128 So.2d

390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action…
only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v.
Atlantic Fertilizer Chem. Co.*, 515 So.2d 324, 326 (Fla. 3d DCA 1987).

    Absent an "inherently dangerous" product or actual/implied knowledge—neither of
which exists in this case—Plaintiffs' negligence claims fail as a matter of law.  The self-serving
and unsupported assertion that Diamond Court "knew or should have known" that the drywall
would "harm" Plaintiffs (*see* Doc. 1777-1 at ¶ 1461) does not suffice to state a claim under
negligence, and Plaintiffs' Counts I and XII should be dismissed.

### C.  Plaintiffs do not state a claim for negligence per se (Count II).

    Plaintiffs fail to set forth the essential elements of a negligence per se claim.  Negligence
per se results from a violation of a "statute which establishes a duty to take precautions to protect
a particular class of persons from a particular type of injury."  *DeJesus v. Seaboard Coast Line
R.R. Co.*, 281 So.2d 198, 201 (Fla. 1973).  Plaintiffs do not identify a statute that Diamond Court
allegedly violated, much less explain how that violation occurred.  Instead, the Plaintiffs assert
that "Defendants," as an undifferentiated group, violated "statutory duties," including "those
imposed under the International Building Code ('IBC') and other State and local Building
Codes."  *See* Doc. 1777-1 at ¶ 1471.  Once again, this self-serving, conclusory statement does
not identify a specific statute establishing a duty to protect a particular class of persons.  Such
vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice," even at the initial pleading stage.  *Ashcroft v. Iqbal*, 129
S.Ct. 1937, 1949 (2009).

    Additionally, the "State and local Building Codes" that Plaintiffs claim Diamond Court
violated are "designed to protect the general public rather than a particular class of individuals."

*Russ v. Wollheim*, 915 So.2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). Violations of a building code cannot establish per se negligence. *See Russ v. Wollheim*, 915 So. 2d 1285, 1286, n1 (Fla. 2d DCA 2005) (citing *Grand Union Co. v. Rocker*, 454 So. 2d 14 (Fla. 3d DCA 1984)) ("A building code is designed to protect the general public rather than a particular class of individuals, and therefore, violation of a building code is merely evidence of negligence.") Plaintiffs neither identify the alleged code violations nor explain how the codes exist to protect Plaintiffs from their alleged injuries. Plaintiffs' negligence per se claim should be dismissed.

### D. Plaintiffs' strict liability claim (Count III) fails under Florida law.

Plaintiffs' strict liability claim is premised on the inaccurate assumption that Diamond Court manufactured or distributed drywall, which it did not. Count III alleges that Diamond Court was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." *See* Doc. 1777-1 at ¶ 1476. But even the Plaintiffs identify Diamond Court as a "Developer/Builder." *See* Doc. Doc. 1777-1 at ¶ 1174. Diamond Court never distributed, delivered, supplied, inspected, marketed, or sold drywall.

Strict products liability is reserved for product manufacturers and distributors; it does not apply to a homebuilder like Diamond Court. *See Ugaz v. American Airlines, Inc.*, 576 F.Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claims "are the manufacturers and perhaps other persons in the chain of distribution."); *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly-defective product for purposes of strict liability).[21]

---

[21] Furthermore, drywall is not a "product" for purposes of this tort. Under Florida strict liability law, drywall is considered a "structural improvement," as it was an integral part of Plaintiffs' homes. *See Plaza v. Fisher Dev., Inc.*, 971 So.2d 918, 922-24 (Fla. 3d DCA 2007). "Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc.* No. 07-80767-CIV, 2008 WL 5111260, p. 4 (S.D. Fla. 2008).

Because Diamond Court is a builder that never manufactured or distributed the Plaintiffs' drywall, the Plaintiffs' strict liability claim against Diamond Court must be dismissed.

### E. Plaintiffs' tort claims (Counts I, II, III, XI, XII, XIII, and XV) are barred in whole or in part by the Economic Loss Rule.

The Economic Loss Rule ("**ELR**") bars plaintiffs from circumventing their contractual arrangements through allegations in tort. *See Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 536 & n. 1 (Fla. 2004). Florida law applies the ELR in two contexts:

> (1) The contractual privity ELR where two parties are in privity of contract, and (2) the products liability ELR where a defective product causes damage, but only to itself.

*See* this Court's January 13, 2010, "Order & Reasons," at p. 22, which applies by its terms to all drywall MDL cases. This Court also held that, "under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs." *Id.* at 30. Florida courts have defined economic loss in contexts such as this one as "damages for inadequate value, costs of repair and replacement of the defective product," and "disappointed economic expectations." *See, e.g., Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1246 (Fla. 1993).

In *Casa Clara*, the Florida Supreme Court affirmed the dismissal of homeowners' negligence claims against a concrete supplier after the homeowners' sidewalks proved defective. *Id.* at 1248. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. *Id.* at 1247. Because the plaintiffs were seeking only economic damages, the ELR barred their tort claims against the supplier. *Id.* at 1246-48.

Andrew Williams, like the *Casa Clara* homeowners, seeks many purely economic damages. These alleged damages are, "protected by contract law, rather than tort law." *Id.* at

1246. Andrew Williams was in contractual privity with Diamond Court. His causes of action spring from his Building Agreement with Diamond Court and not an independent tort. Therefore, his economic damages against Diamond Court are barred by the economic loss rule. Mr. Williams' tort claims should be dismissed.

### F. Andrew Williams' warranty claims (Counts IV and VI ) are barred by his contract with Diamond Court.

Mr. Williams' implied and express warranty claims against Diamond Court are barred by the parties' 2005 Building Agreement which provides that,

> no other representation [...] shall create any additional express or implied warranties or guaranties beyond those contained in the 'Performance Warranty.'[22]

Upon completion of the home, Diamond Court issued Andrew Williams a One Year Performance Guaranty on August 9, 2006.[23] This written warranty expressly states that:

> Builder certifies that the above home is guaranteed thru subcontractors and suppliers against defects in the original material and workmanship for one year from the date hereof.[24]

By not joining this lawsuit until 2009, Mr. Williams clearly brings his claim outside the one year warranty period provided by Diamond Court.

Florida law recognizes that Andrew Williams waived any warranty on his home by occupying it without notifying Diamond Court of any defects within one year. It matters not that Mr. Williams alleges not to have experienced a defect until years after moving into the home: "case law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects-defects that may exist before, but typically are not discovered until after, the expiration of the warranty period." *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988,

---

[22] *See* Building Agreement, attached as Exhibit "A," at Section VI (N.B.: Mr. Williams initialed each page of his contract with Diamond Court—including Page 4 containing the Delivery & Warranty clause— signaling his consent to each provision of the Building Agreement).
[23] *See* One Year Performance Guaranty, attached as Exhibit "C."
[24] *Id.*

993 (3d Cir. 1992) (citing numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period but did not manifest until warranty period had expired). *See also Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 616-617 (3d Cir. 1995) ("[L]atent defects discovered after the term of the warranty are not actionable." (citation omitted)); *Brisson v. Ford Motor Co.*, 349 Fed. App. 433, 434 (11th Cir. 2009) (affirming dismissal, under Florida law, of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period").

Additionally, the implied warranty of merchantability does not apply to the work performed by Diamond Court. Andrew Williams' contract with Diamond Court clearly stated that:

> THE BUILDER DOES NOT EXPRESSLY WARRANT OR GUARANTY, ANY TYPE OF FITNESS AND MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.[25]

Under Florida law, Fla. Stat § 672.314 (2010) provides a cause of action for an implied warranty of merchantability for goods sold by a <u>merchant</u>. The implied warranties in the Uniform Commercial Code, "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant." *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So.2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

In *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1292 (Fla. 5th DCA 1986), the court found that an implied warranty did not attach to a contract to repair an owner's private road. The contract was essentially one for services and the contractor was not a "merchant" of

---

[25] *See* Building Agreement, attached as Exhibit "A," at Section VI (noting also that, "BUYER EXPRESSLY ASSUMES THE RISK OF ANY AND ALL LOSS OR DAMAGE TO THE SUBJECT PROPERTY.").

the allegedly-defective coating that made the road dangerous. *Id*. Diamond Court is not bound by any implied warranties because it is not a <u>merchant</u> under Florida warranty law. Diamond Court contracted with Andrew Williams to provide a <u>service</u>: home construction. The inclusion of drywall in Mr. Williams' home by a third-party installer was incidental to the construction service provided by Diamond Court. Furthermore, Florida law holds that, "although construction contracts […] typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant."). *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999). Because Mr. Williams waived all warranties by occupying his home without notifying Diamond Court of any defects within the one year written warranty period, and because implied warranties do not attach to Diamond Court's contract to build, Plaintiffs' warranty claims must be dismissed.

### G. Andrew Williams does not explain how Diamond Court breached its contract; his claim for breach of contract (Count VII) must be dismissed.

Andrew Williams does not allege a viable breach of contract claim. Omni III states only that Diamond Court, "contracted with the [Plaintiffs] to construct homes that would be free of defects." *See* Doc. 1777-1 at ¶ 1521. This assertion is insufficient on its face, because it fails to identify the source of Diamond Court's alleged duty to construct a home "free of defects." To support a contract claim, Mr. Williams must, "identify the relevant portion of the contract breached." *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co.*, No. 8:07-cv-788-T-27EAJ, 2008 WL 4853635, p. 4 (M.D. Fla. 2008). *See also Insurance Concepts & Design, Inc. v. Healthplan Serv., Inc.*, 785 So.2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached."). Although the Plaintiffs may point out the "Omnibus" nature of the Complaint, Mr. Williams' decision to join

14

this litigation does not excuse him from satisfying basic pleading standards. If Diamond Court must defend a claim for breach of contract, Florida law and due process entitle Diamond Court to know the basis for Mr. Williams' claim.

### H. Andrew Williams' unjust enrichment claim (Count XIII), which is rooted in equity, fails because Mr. Williams has a contractual relationship with Diamond Court.

Mr. Williams has no basis to raise a claim for unjust enrichment. This is a quasi-contractual theory of recovery. As one Federal Court explains, "[i]t is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available when there is an adequate legal remedy." *American Honda Motor Co. v. Motorcycle Info. Network*, 390 F.Supp. 2d 1170, 1178 (M.D. Fla. 2005). Mr. Williams clearly had a contract with Diamond Court for the construction of his home.[26] When a contract between the parties exists, "claims arising out of that contractual relationship will not support a claim for unjust enrichment." *Moynet v. Courtois*, 8 So.3d 377, 379 (Fla. 3d DCA 2009). *See also: Validsa, Inc. v. PDVSA Serv., Inc.*, 632 F.Supp. 2d 1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties "admitted to the existence of express contracts."). Mr. Williams' breach of contract and unjust enrichment claims are mutually exclusive. Because Mr. Williams had a contract with Diamond Court, his unjust enrichment argument fails.

### I. Plaintiffs' claim against Diamond Court for private nuisance (Count XI) should be dismissed because Diamond Court lacks the requisite possession over the allegedly-nuisance property.

An action for private nuisance requires the claimant to establish an injury to his own property in connection with the use of the real property of someone else. *See Jones v. J.B. Trawick*, 75 So.2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the

---

[26] *See* Building Agreement, attached as Exhibit "A."

fundamental rule that every person should so use his own property as not to injure that of another.").

The Plaintiffs' Complaint does not allege that Diamond Court had ownership or possession of property that injured Mr. Williams.  On the contrary, the nuisance claim is predicated entirely on the allegation that "structures owned by Plaintiffs" are to blame. *See* Doc. 1777-1 at ¶ 1556.  That allegation does not state a claim for private nuisance. *See, e.g.: Morgan v. W.R. Grace & Co.*, 779 So.2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *see also Weaver v. United States*, 809 F.Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").  Because Diamond Court did not possess the property in question, Plaintiffs' nuisance claim has no merit.

### J.   In Count XIV, Plaintiffs fail to plead specific facts concerning Diamond Court's allegedly-deceptive acts.

Plaintiffs broadly allege violations of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("**FDUTPA**"). *See* Doc. 1777-1 at ¶ 1574.  A FDUTPA claim comprises three distinct elements: (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages." *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, p. 5 (S.D. Fla. 2007).

Courts examining FDUTPA claims apply the heightened pleading standards of Fed. R. Civ. Pro. 9(b), which requires that, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Specifically, "claims arising under the FDUTPA must be plead with particularity." *Wrestlerunion, LLC v. Live Nation TV*

*Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, p. 3 (M.D. Fla. 2008). *See also, Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, p. 2 (M.D. Fla. 2009) ("Like fraud, a claim pursuant to the FDUTPA… [must] meet the heightened pleading standard under Rule 9(b)[.]").

> At a minimum, Rule 9(b) requires a claimant to allege:
>
> (1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth the same basic requirements).

The Plaintiffs' Complaint fails this heightened pleading standard for a FDUTPA claim. Indeed, Plaintiffs do not allege a single specific fact in support of a claim against Diamond Court. For failing to satisfy this basic element of a FDUTPA cause of action, the Plaintiffs' claim should be dismissed.

Mr. Williams' claims for personal injury are also expressly precluded by the FDUTPA. The FDUPTA states that it does not apply to, "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F.Supp. 842, 851 (N.D. Fla. 1995). Count XIV must be dismissed for this reason as well. The Court should award attorney's fees to Diamond Court for defeating this claim pursuant to Fla. Stat § 501.2105(1) (providing that the prevailing party in an action under the FDUPTA, "may receive his or her reasonable attorney's fees and costs from the nonprevailing party.").

### K. Plaintiffs are entitled to neither injunctive relief nor medical monitoring (Count XV).

Plaintiffs' final claim for "Equitable and Injunctive Relief and Medical Monitoring" (Count XV) is a catchall claim that seeks, among other things, an order that Diamond Court "buy back and rescind" its contracts and "create, fund, and support a medical monitoring program." *See* Doc. 1777-1 at ¶ 1581.  This claim should be dismissed.

First, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based.  Each of Plaintiffs' substantive claims is due for dismissal.  Therefore, this derivative claim for injunctive relief also fails.  *See, e.g., Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. Pro. 12(b) (failure to state a claim).").

Second, even if one of Plaintiffs' substantive claims survives dismissal, the Court should dismiss the injunctive claim because Plaintiffs do not allege an inadequate legal remedy or irreparable harm.  Injunctions under both federal and Florida law require these elements.  *Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, p. 6 (M.D. Fla. 2007) requires that, to state a cause of action for injunctive relief, a plaintiff must allege ultimate facts which, if true, would establish:

> (1) irreparable injury [...], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.

Plaintiffs do not explain how the legal remedies sought elsewhere in their Complaint are inadequate or why Plaintiffs are entitled to the extraordinary remedy of an injunction.  *See, e.g.,*

*Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.").

Third, Plaintiffs' request for "medical monitoring" is not permitted under Florida law. The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring. In the Third District, seven elements must be adequately alleged to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substances; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Petito v. A.H. Robins Co.*, 750 So.2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm. *Id.*

The Plaintiffs do not allege the requisite elements of a medical monitoring claim. Instead, Plaintiffs set forth a series of legal conclusions without factual detail. *See, e.g.*, Doc. 1777-1 at ¶ 1585 ("Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct."). Plaintiffs fail to identify any medical condition supposedly caused by their drywall; nor do they identify a monitoring procedure for that supposed condition. Plaintiffs do not even claim to be ill.

Again, legal conclusions do not suffice to support Plaintiffs' cause of action. *See Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadabare recitals" of the elements of a claim inadequate). This Court, like others, should dismiss Plaintiffs' claim for medical monitoring as

19

deficient on the pleadings. *See Jacobs v. Osmoses, Inc.*, No. 01-944-CIV, 2002 WL 34241682, p. 3 (S.D. Fla. 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see also Wyeth, Inc. v. Gottlieb*, 930 So.2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program").

## IV.    CONCLUSION

Table 2, below, provides a summary of why this Court should dismiss each claim against Diamond Court Construction Company in Plaintiffs' *Gross/Benes* Class Action Complaint ("Omni III").

| Table 2: Summary of Diamond Court's Bases for Dismissal from Omni III (highlighted Counts do not apply to Diamond Court) | | | |
|---|---|---|---|
| **Plaintiffs' Count Number** | **Defendants against which Count is purportedly directed** | **Plaintiffs' Claim** | **Reason(s) why Plaintiffs' Claim Fails** |
| I | All Defendants | Negligence | Barred by 2006 Release; Diamond Court owes no duty to Plaintiffs; Economic Loss Rule ("**ELR**"); |
| II | All Defendants | Negligence Per Se | Barred by 2006 Release; Statutes impose no duty on Diamond Court; ELR |
| III | All Defendants | Strict Liability | Barred by 2006 Release; Diamond Court, as a homebuilder, cannot be held strictly liable under Florida law; ELR |
| IV | All Defendants | Breach of Express and/or Implied Warranties | Barred by 2006 Release; Barred by contract; implied warranty of merchantability does not apply to Diamond Court's contract for services. |
| V | Builders Only (on behalf of Plaintiffs who own condominiums in the state of Florida) | Breach of the Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes Section 718.203 | Not applicable. |

| VI | Builders Only | Breach of the Implied Warranty of Habitability | Barred by 2006 Release; Barred by contract. |
|----|---------------|------------------------------------------------|----------------------------------------------|
| VII | Builders Only | Breach of Contract | Barred by 2006 Release; Mr. Williams fails to explain how Diamond Court breached its contract. |
| VIII | Louisiana Builders Only | Violation of the Louisiana New Home Warranty Act (on Behalf of Plaintiffs who own Homes in the State of LA) | Not applicable. |
| IX | Louisiana Plaintiffs against all Defendants | Redhibition | Not applicable. |
| X | Manufacturing Defendants (Pleaded in the Alternative against Distributor Defendants) | Louisiana Products Liability Act | Not applicable. |
| XI | All Defendants | Private Nuisance | Barred by 2006 Release; Diamond Court did not possess the allegedly-nuisance property; ELR |
| XII | All Defendants | Negligent Discharge of a Corrosive Substance | Barred by 2006 Release; Diamond Court owes no duty to Plaintiffs; ELR |
| XIII | All Defendants | Unjust Enrichment | Barred by 2006 Release; Only available in the absence of an adequate legal remedy; Barred by contract; ELR |
| XIV | All Defendants | Violation of Consumer Protection Act | Barred by 2006 Release; Plaintiffs fail to plead specific facts |
| XV | All Defendants | Equitable and Injunctive Relief and Medical Monitoring | Barred by 2006 Release; Claim fails along with substantive ones; no evidence of inadequate remedy at law; medical monitoring not permitted under Florida law; ELR. |

Plaintiffs' "shotgun" approach to pleading diverse causes of action against many different types of defendants must be rejected. Diamond Court built a home for plaintiff Andrew Williams without knowing of any defective conditions. Diamond Court had nothing to do with the

manufacture, marketing, distribution, or installation of Plaintiffs' drywall.   Mr. Williams discharged all potential claims against Diamond Court.   Diamond Court does not belong in this litigation.   Because each of Plaintiffs' claims is fatally defective, this Court should dismiss Diamond Court Construction Company under Fed. R. Civ. Pro. 12(b)(6).

<div style="margin-left: 40%;">

Respectfully submitted,

**ADAMS AND REESE LLP**

s/Christopher A. D'Amour
CHRISTOPHER A. D'AMOUR (La. Bar # 26252)
MEGAN HAGGERTY GUY (La. Bar # 26316)
DAVID C. COONS (La. Bar # 32403)
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
***Attorneys for Diamond Court Construction Company***

</div>

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of January, 2011.

<div style="margin-left: 40%;">

s/ David C. Coons

</div>