UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) | MDL NO. 2047 |
| | ) | |
| | ) | SECTION: L |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| ALL CASES | ) | JUDGE FALLON |
| | ) | MAG. JUDGE WILKINSON |
| | ) | |

**THE PLAINTIFFS' STEERING COMMITTEE'S REPLY
TO DURKEE'S RESPONSE TO THE PLAINTIFFS' STEERING
COMMITTEE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN
ORDER REQUIRING AN ACCOUNTING AND OTHER RELIEF**

**I.     INTRODUCTION**

To date, only one response to the PSC's motion for an accounting and other relief has been served upon the PSC. Roberts & Durkee, PA ("Durkee") alone lodged an opposition to the motion on behalf of "certain individual plaintiffs" who, according to Durkee, have Chinese-drywall actions pending in Florida state court. *See* Durkee Opp. at 4-5 & Exhibit "B" thereto.[1] Durkee contends that none of these 118 plaintiffs has sued a foreign manufacturer of drywall, but, rather, each of Durkee's plaintiffs seeks to recover from domestic "(usually Florida-based) entities" only. Durkee Opp. at 5. Unfortunately and conveniently, Durkee fails to mention that more than 88% of these plaintiffs are also plaintiffs in one of the Omnibus actions filed in this MDL. *See* Exhibit "A," attached hereto.     As the Court is aware, the PSC has brought into the litigation through the various Omni complaints more than 500 defendants including the foreign manufacturers, importers,

---

[1] Durkee's response was served on January 7, 2011, but does not appear to be filed on the docket.

suppliers, builders and insurers of Chinese drywall.[2] Durkee, through its representation of more than 100 Florida plaintiffs in the MDL, certainly has access to the PSC's work product and thereby reaps the benefit of the committee's efforts to prosecute Chinese drywall claims on behalf of all homeowners and property owners faced with this serious problem. Moreover, many of the Florida judiciary are overseeing the Chinese drywall litigation in coordination with this Honorable Court.[3] The fact that the value of the PSC's work product has not yet been quantitatively adjudicated by the Court in no way diminishes its benefit to the plaintiffs nor does it constitute a valid opposition to the PSC's motion seeking an accounting, sequestration and preservation of settlement funds over which this Court has jurisdiction.

There is persuasive evidence that any settlements reached with builder- and supplier-defendants (including Florida-based entities) have been made possible and have come to fruition precisely because the PSC has expended hundreds of thousands of dollars to bring all interested and related parties – and specifically the foreign manufacturers – into the litigation. As shown in the opening motion, the settling builder-defendants have made clear their intention to recover from the Chinese drywall manufacturers all expenses associated with the remediation of plaintiffs' homes. *E.g.*, Meritage Settlement, attached as Exhibit "B" to the PSC Motion for an Accounting. The

---

[2] *See*, *e.g.*, *Payton, et al. v. Knauf GIPS KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.) (Omnibus I, I(A), I(B), and I(C)) (involving claims against the Knauf defendants); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Case No. 2:10-cv-00361 (E.D. La.) (Omnibus II, II(A), II(B), and II(C)) (involving claims against non-Knauf manufacturers such as Taishan and BNBM); *Gross, et al. v. Knauf GIPS KG, et al.*, Case No. 2:09-cv-6690 (E.D. La.) (original complaint, Omnibus III and III(A)) (asserting alternative liability theory against all known manufacturers for drywall that cannot be traced to a particular manufacturer); *Rogers, et al. v. Knauf GIPS KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.) (Omnibus IV, IV(A), IV(B), and IV(C)) (involving claims against the Knauf defendants); *Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D. La.) (Omnibus V); *Hernandez, et al. v. AAA Insurance, et al.*, Case No. 2:10-cv-3070 (E.D. La.) (Omnibus VI).

[3] *See* Letter from Todd Ehrenreich to Hon. Eldon E. Fallon, dated January 12, 2011, attached hereto as Exhibit "B."

builder settlement agreements expressly require the cooperation of the homeowners and an assignment of plaintiffs' rights in order for the builders to pursue any and all claims for recovery against the manufacturers including for indemnification and/or contribution. *Id.* Without the presence of the manufacturers and their insurers in this litigation, subject to the jurisdiction of the Court, these builder settlements would not be possible.

Durkee's desire to avoid having to pay an appropriate percentage amount for the opportunities and common benefits provided by the PSC should be seen for what it is and rejected by the Court.

## II.   ARGUMENT

### A.   The PSC's Efforts in this Litigation Provide Inherent Benefits to All Plaintiffs Asserting Chinese-manufactured Drywall Claims, Including the Florida Plaintiffs Represented by Durkee

Durkee's arguments in opposition to the PSC's motion for an accounting and sequestration of settlement funds are based on an artificial portrayal of his plaintiffs' lawsuits. Durkee suggests that because his plaintiffs have pending claims against their homebuilders and others in the "distribution chain" in Florida state court, the PSC's work product related to the foreign manufacturing defendants is "irrelevant to the Florida state actions." Durkee Opp. at 5. Most of these same plaintiffs (Exhibit "A" hereto), however, also have lawsuits pending in this MDL against all related defendants including the foreign manufacturers of Chinese drywall and their insurers. The PSC was appointed and ordered by the Court to perform numerous, specific pretrial tasks on behalf of those plaintiffs, as detailed below and set forth in Pretrial Order No. 8, and, as such, the PSC owes a fiduciary duty to those plaintiffs. It is specious, therefore, to suggest that the Florida plaintiffs do not benefit from the PSC's document depository or "any of the international discovery

3

or service-of-process performed by the PSC in this multi-district litigation." *Id*. Durkee's contention in this regard not only is contrary to fact but it runs counter to common benefit jurisprudential principles, *i.e.*, the PSC's work product benefits all Chinese drywall plaintiffs regardless of whether they affirmatively use it.

Generally, MDL consolidation and coordination provide inherent benefits for all plaintiffs in the litigation. Indeed, this Court has "pointed to the many economies of scale that benefit[] attorneys across the board" in an MDL case, including the avoidance of "pursuing individual discovery, filing individual motions, engaging in individual settlement negotiations, or preparing individual trial plans." *See In re Vioxx Prods. Liab. Litig.*, 650 F. Supp. 2d 549, 555 (E.D. La. 2009) (citation omitted). The *Genetically Modified Rice* MDL provides a good example of this benefit. There, the court readily recognized that:

> [T]he leadership group's work in discovery, motion practice, and the bellwether trials has provided a foundation for all of the cases involved in the litigation. Evidence about what [the defendant] did in developing and distributing the genetically modified rice is central to the proof on all the claims in this litigation. This evidence was exclusively within [the defendant]'s control, and the only realistic way for the evidence to be developed was through the type of centralized discovery that the leadership group conducted. It would not have been possible for thousands of plaintiffs to separately obtain discovery from [the defendant], and that, of course, is part of the reason the cases were combined in this MDL. In addition to coordinating and conducting all the discovery against [the defendant], the leadership lawyers have conducted two bellwether trials. Those trials essentially provided a preview for all other plaintiffs of the trial testimony they might expect from the [defendant] witnesses and the types of cross-examination that their witnesses and clients might expect at trial from [the defendant]'s counsel. The trial preview, when combined with the discovery, is a great benefit for all plaintiffs....

*In re Genetically Modified Rice Litig.*, MDL 1811, 2010 WL 716190, *5 (E.D. Mo. Feb. 24, 2010);

4

*see also In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2008 WL 3896006, *6 (D. Minn. Aug. 21, 2008) ("Claimants' attorneys generally benefit from economies of scale related to coordinated discovery, motion practice, and global settlement negotiations because they are not required to do certain work that they would otherwise do in an individual case.").

Courts have held uniformly that "Plaintiffs are substantially benefitted by 'the mere availability' of relevant discovery, even if an objecting plaintiff chooses not [to] use it." *Genetically Modified Rice*, 2010 WL 716190 at *5-*6 ("[s]ubstantial benefit should be determined with respect to the plaintiffs as a whole, not with respect to individual plaintiffs."); *see also In re Clearsky Shipping Corp.*, 2003 WL 1563820, at *1-*4 (E.D. La. Feb. 26, 2003); *In re Diet Drugs*, 582 F.3d 524, 548 (3rd Cir. 2009); *In re Diet Drugs Prods. Liab. Litig.*, Pretrial Order No. 1492 at 5 (E.D. Pa. Nov. 8, 2000) ("even if Plaintiffs' attorneys did not choose to use common benefit work product in the prosecution of Plaintiffs' case and its ultimate settlement, Plaintiffs clearly benefitted from the efforts of the [steering committee]") (attached hereto as Exhibit "C").

The Third Circuit's decision in the *Diet Drugs* litigation is instructive on this point. In that MDL, there were "hundreds of thousands of class members spread all across the United States." *Diet Drugs*, 582 F.3d at 547, *citing In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1012 (5th Cir. 1977). During the fee adjudication process, some of the fee objectors argued that their initial opt-out and PPH "clients [who did not participate in the global settlement] did not enjoy a substantial benefit from the PMC's services." *Id*. at 547. These objectors reasoned that "because those clients were not parties to the Settlement Agreement, they did not receive any of the benefits – such as medical testing or claims preservation – for which the PMC bargained." *Id*. In overruling the objections, the Court held that: the "PMC bestowed numerous benefits on initial opt-out and

5

PPH claimants, even if their attorneys did not use the discovery that the PMC marshaled and retained. The mere availability of the discovery ... substantially influenced [the defendant's] evaluation of *every* plaintiff[']s case."[4] *Id*. In addition, the Court ruled that "the PMC had, to the benefit of every claimant, helped to administer the MDL by tracking individual cases, distributing court orders, and serving as a repository of information concerning the litigation and settlement." *Id*. at 548. Moreover, the PMC "obtained a number of favorable discovery and evidentiary rulings that applied on a litigation-wide basis, and it enforced a uniform procedure for the production of documents, deposition testimony, and expert disclosures that governed every MDL case." *Id*.

As pointed out in *Diet Drugs*, if MDL participants can avoid the payment of common benefit fees simply by arguing that they did not benefit from the use of the management committee's work product, this "would provide an incentive for lawyers who represent individual clients in an MDL to ignore the work product generated by Class Counsel in favor of generating duplicative discovery, and [this] would thereby undermine the efficiency gains that the judicial system realizes from MDLs." *Id*. at 548 n.45.

For these reasons, Durkee's contention that the Florida state plaintiffs (who also have cases in this MDL) should not be subject to any order requiring an accounting and sequestration of settlement monies has no merit.

### B. The PSC Has Provided and Continues to Provide Significant Common Benefit Services to All Plaintiffs in this Litigation

Recently, the Court summarized in a detailed 28-page Minute Entry the status of many issues

---

[4] *See* William B. Rubenstein, Alba Conte, Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS, §14:9 (4th ed. Jun. 2010) ("even if the settling lawyers used none of the PMC's work product, the defendant itself might have assessed the value of the settling parties' case based on what had happened during the PMC's discovery process.").

6

that have been resolved to date or are pending in this massive litigation as a result of the successful common benefit efforts of the PMC. Rec. Doc. No. 6525 (Dec. 2, 2010) (hereinafter "12/2/2009 Minute Entry"). For example, since the initiation of this MDL the Court has entered 24 pretrial orders, some with multiple subparts, governing these proceedings, including the appointment of the Plaintiffs' Steering Committee, Plaintiffs' Liaison Counsel, Russ Herman, and Lead Counsel, Arnold Levin. PTO 8 (Rec. Doc. No. 144-1). The Court has tasked the PSC with specific fiduciary duties on behalf of all MDL plaintiffs, as follows:

(a) initiating, coordinating and conducting in a consolidated manner all pretrial discovery for all plaintiffs and creating the schedules for said discovery;

(b) issuing all necessary document requests and subpoenas for witnesses in order to adequately prepare for the adjudication of pretrial issues;

(c) initiating and preparing briefs pertinent to pretrial proceedings;

(d) calling meetings of plaintiffs' counsel;

(e) examining witnesses and introducing evidence at hearings on behalf of plaintiffs;

(f) acting as spokespersons for all plaintiffs at pretrial conferences;

(g) submitting and arguing motions on behalf of plaintiffs and opposing motions that are involve matters withing the sphere of responsibility of the PSC;

(h) negotiating and entering into stipulations with defendants;

(i) exploring, developing and pursuing settlement opportunities "pertaining to any claim or portion thereof of any case filed in litigation"; and

(j) establishing and maintaining a document and exhibit depository and making those records available to all plaintiffs' attorneys.

PTO 8 at 3-4.

In addition, the Court ordered the PSC to collect, maintain and present to the Court and the inspection company photographic samples of Chinese drywall from the plaintiffs' homes. PTO 10 (Rec. Doc. No. 171). The PSC thereafter observed, videotaped and otherwise monitored the inspection program.

Various members of the PSC were also ordered to participate on a State/Federal Coordination Committee to "work together jointly to assist the Court, the litigants and the judicial system to facilitate coordination between this MDL and the various state court cases." PTO 19 at 3 (Rec. Doc. No. 1871). PSC member Dawn Barrios is the chair of that committee and has provided reports to the Court as to the status of state matters, including trials, discovery motions, dispositive motions and federal/state coordination issues. 12/2/2009 Minute Entry at 6.

Further, in compliance with Court order, the PSC prepared plaintiff profile forms and negotiated the content of all defendant manufacturer, supplier, importer, builder and insurance profile forms. The PSC has analyzed all profile forms submitted. *See id*. at 4-5.

As set forth in the opening motion for an accounting, the PSC has been the architect of the various Omni complaints designed to bring all interested parties into the litigation, *id*. at 19-22, and the PSC is in the process of preparing a master complaint, *id*. at 18. The overwhelming majority of Durkee's Florida clients have taken advantage of those Omni complaints and signed on as named representatives therein. *See* Exhibit "A" hereto.

In addition, the PSC has created and maintains a master database with an index of pending motions to assist the Court and the parties with the coordination of this litigation. *Id*. at 7-8. The PSC in conjunction with other parties organizes, groups and schedules the motions in the database

in a sensible manner for adjudication by the Court. *Id*. at 7-8. The PSC in engaged in motion practice on a variety of issues including class certification motions for Florida and Louisiana Homeowners classes for damages and declaratory relief, a motion for class certification in *Germano*, several motions to intervene, motions for default judgment, and a motion to establish a plaintiffs' litigation expense fund. *Id*. at 23-25.

The PSC has propounded several sets of discovery requests and requests for admission on the various defendants and has participated in numerous negotiation sessions with regard to discovery issues in dispute. *Id*. at 9-11. In addition, the PSC has conducted dozens of depositions of defendants and their key employees. For example, the PSC has deposed La Suprema entities, Venture Supply and Porter Blaine entities, Mazer Super Discount Store, Interior/Exterior Building Supply, LP, Black Bear Gypsum Supply, and the Lennar entities. The PSC also has deposed Knauf Gips relating to jurisdiction, alter ego and agency issues, Knauf Insulation GmbH, and various Knauf employees in Hong Kong, London and Germany. The PSC has served jurisdictional interrogatory requests on various Knauf entities. In August, 2010, the PSC filed a motion for sanctions and to compel discovery of Knauf, which was granted in part. *Id.* at 10. The PSC is presently engaged in discovery of Taian Taishan Plasterboard Co., Ltd., Taishan Gypsum Co., Ltd., L&W Supply Corp. and USG Corporation. *Id*. at 9-11.

The PSC has issued a number of Freedom of Information Act requests and is analyzing all information produced. *Id*. at 13. Overall, the PSC has analyzed tens of thousands of documents produced by defendants and third parties including the Center for Toxicology and Environmental Health, LLC. *Id*. at 12. On the other side of the equation, the PSC has responded to discovery propounded by Knauf. *Id*. at 12. The PSC has also responded to Knauf's identification of plaintiffs

9

who allegedly have not provided indicia of Knauf drywall in their homes. *Id.*

Aside from discovery, the PSC prepared and tried ten Bellwether cases as to property damage only in Virginia and Louisiana. *See id.* at 13-16 (referencing *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 09-6687 (E.D. Va.) (7 cases), Default Judgment (May 11, 2010) (Rec. Doc. No. 3013); *Hernandez v. Knauf Gips KG, et al.*, CA 09-6050 (E.D. La.) (1 case), Judgment (May 11, 2010) (Rec. Doc. No. 3); *Campbell v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.), Settlement on the eve of trial on June 18, 2010). The Bellwether trials produced findings of fact and conclusions of law that serve to assist the Court and the parties resolve additional Chinese drywall cases.

The PSC has been engaged in mediation sessions with the Knauf defendants, Interior/Exterior Building Supply, QBE Insurance, State Farm, and the Louisiana Homebuilders Association General Liability Trust. *Id.* at 25. On October 14, 2010, the parties announced a 300 home pilot remediation settlement program with Knauf. That remediation program is currently underway, and the parties are hopeful that it will be expanded. *Id.* at 28.

Thus, as is evident from the Court's December 2, 2010 Minute Entry and the Court's docket sheets, the PSC has provided and continues to provide in conformance with its duties numerous common benefit services to all plaintiffs in this litigation.

> C. **The PSC Is Not Asking the Court to Act Outside Its Jurisdiction Nor is the PSC Seeking the Full Amount of Attorneys' Fees Earned by Individual Counsel**

For purposes of clarification, the PSC is not asking the Court to act outside of its jurisdiction. The PSC is seeking an appropriate Order from the Court governing only the actions and the parties subject to the MDL Court's jurisdiction. The large majority of Durkee's plaintiffs (104 out of 118)

voluntarily subjected themselves to this Court's jurisdiction, having filed lawsuits as named representatives in the Omni class action complaints.  Exhibit "A" hereto. Therefore, Durkee's complaint that neither the firm nor its clients should be subject to any sequestration order here because these plaintiffs have claims pending in the Florida state court system lacks merit.

Also, contrary to Durkee's contention (Durkee Opp. at 11), the PSC has not requested that the "*full amount* of attorneys fees" be "handed over to Liaison Counsel, for later distribution to the PSC."  Nor has the PSC asked that individual plaintiff attorneys contribute their entire fee to the PSC's efforts.  Rather, the PSC is asking that said fees be escrowed "pending a determination by the Court at an appropriate juncture as to a fair and reasonable common benefit fee percentage." Proposed Order at 2-3.  Currently, the PSC's motion to establish a plaintiffs' litigation expense fund has been stayed by the Court.  12/2/2010 Minute Entry at 24.  It would be appropriate, therefore, to preserve the resources available to compensate the PSC at an appropriate juncture for the common benefit services it has provided to all plaintiffs in this litigation.

### III.  CONCLUSION

For the reasons set forth in the opening motion and in this reply, the PSC requests that its Motion for an Order Requiring an Accounting and Other Relief be granted and the proposed Order entered by the Court.

Respectfully submitted,

Dated: January 18, 2011

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Matthew C. Gaughan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

| | |
|---|---|
| Jerrold Seth Parker<br>Parker, Waichman, Alonso LLP<br>3301 Bonita Beach Road<br>Bonita Springs, FL 34134<br>Phone: (239) 390-1000<br>Fax: (239) 390-0055<br>Jerry@yourlawyer.com | Christopher Seeger<br>Seeger Weiss, LLP<br>One William Street<br>New York, NY 10004<br>Phone: (212) 584-0700<br>Fax: (212) 584-0799<br>cseeger@seegerweiss.com |
| Scott Wm. Weinstein<br>Morgan & Morgan<br>12800 University Drive, Suite 600<br>Ft. Meyers, FL 33907<br>Phone: (239) 433-6880<br>Fax: (239) 433-6836<br>sweinstein@forthepeople.com | Daniel K. Bryson<br>Lewis & Roberts<br>3700 Glenwood Avenue, Suite 410<br>Raleigh, NC 27612<br>Phone: (919) 981-0191<br>Fax: (919) 981-0431<br>dkb@lewis-roberts.com |
| James Robert Reeves<br>Lumpkin & Reeves<br>160 Main Street<br>Biloxi, MS 39530<br>Phone: (228) 374-5151<br>Fax: (228) 374-6630<br>jrr@lumpkinreeves.com | Richard J. Serpe, Esquire<br>Law Offices of Richard J. Serpe<br>Crown Center, Ste. 310<br>580 East Main Street<br>Norfolk, VA 23510-2322<br>rserpe@serpefirm.com |

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Richard S. Lewis<br>HAUSFELD LLP<br>1700 K Street, N.W<br>Suite 650<br>Washington, DC 20006<br>Phone: (202) 540-7200<br>Fax: (202) 540-7201<br>rlewis@hausfeldllp.com | Jeremy W. Alters<br>Alters Law Firm<br>4141 N.E. 2nd Avenue<br>Suite 201<br>Miami, FL 33137<br>Phone: (305) 571-8550<br>Fax: (305) 571-8559<br>jeremy@alterslaw.com |

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing The Plaintiffs' Steering Committee's Reply to Durkee's Response to the Plaintiffs' Steering Committee's Memorandum in Support of the PSC's Motion for an Order Requiring an Accounting and Other Relief has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 18th day of January, 2011.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
Plaintiffs' Liaison Counsel
MDL 2047