UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: 2047 |
| | SECTION:  L |
| THIS DOCUMENT RELATES TO | JUDGE FALLON |
| CASE NO. 2:10-cv-932 | |
| Dean and Dawn Amato, et al v. Liberty Mutual Insurance Company, et al. | MAGISTRATE JUDGE WILKINSON |

_____/

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE POLLUTION EXCLUSION BY THE TAYLOR MORRISON DEFENDANTS/CROSS CLAIMANTS AGAINST DEFENDANT/ CROSS-DEFENDANT CHARTIS SPECIALTY INSURANCE COMPANY**

Developer/Builder Defendants and Cross-Claimants Taylor Morrison, Inc., f/k/a Taylor Woodrow, Inc., Taylor Morrison Services, Inc., f/k/a Morrison Homes, Inc., Taylor Woodrow Communities at Vasari, L.L.C., and Taylor Morrison of Florida, Inc., (collectively, "Taylor Morrison") file this memorandum in support of their Motion for Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, against Insurance Company Defendant Chartis Specialty Insurance Company, f/k/a American International Specialty Lines Insurance Company ("Chartis"), for a ruling that the underlying Chinese drywall claims against Taylor Morrison are not subject to the pollution exclusions contained in the insurance policies issued by Chartis to Taylor Morrison.

## Introduction

In its Cross-Claims against Defendant/Cross-Defendant Chartis, Taylor Morrison seeks declaratory relief as to the obligations of Chartis to pay those sums that Taylor Morrison has or

may become legally obligated to pay as damages by reason of liability imposed by law because of property damage and bodily injury, allegedly resulting from the importation and use of allegedly defective Chinese drywall products at multiple residential construction projects developed by Taylor Morrison.  On this Motion for Partial Summary Judgment, Taylor Morrison seeks a ruling that the underlying Chinese drywall claims against Taylor Morrison are not subject to the pollution exclusions contained in the Chartis policies.

Whether or not the pollution exclusions apply to Taylor Morrison's Chinese drywall claims will most likely depend on which state's law governs that question.  The four involved states are Louisiana, New York, Arizona and Florida.  If Louisiana, New York or Arizona law governs then the pollution exclusions will not apply.[1]  If Florida law governs then the pollution exclusion in three of the four policies in issue may well apply.[2]  Taylor Morrison's position is that either New York law or, in the alternative, Arizona law should apply because New York and Arizona are the states "whose interests would be most seriously impaired if [their] law were not applied."  Louisiana Civil Code Article 3515.  Florida cannot be the state whose interests would be the most seriously impaired because in this case, the effect of applying Florida law on the pollution exclusion will be to 1) *injure the two Florida residents*[3] who are making this Motion, by (potentially) denying them coverage, while 2) *not benefiting any resident of Florida* because Chartis, as the insurance carrier who would otherwise benefit by a denial of coverage for Chinese drywall claims, is not (and never was) incorporated in Florida (it is incorporated in Illinois) and does not (and never did) have its principal place of business in Florida (that is in New York).  In

---

[1]   *Doerr v. Mobil Oil Corp.,* 774 So.2d 119 (La. 2000), *corrected on rehrg.,* 782 So.2d 573 (La. 2001); *Belt Painting Corp. v. TIG Ins. Co.,* 100 N.Y. 2d 377 (2003); *Keggi v. Northbrook Prop. & Cas. Ins. Co.,* 199 Ariz. 43 (2000).

[2]   *Deni Associates of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.,* 711 So.2d 1135 (Fl. 1998).

[3]   Taylor Woodrow Communities at Vasari, LLC and Taylor Morrison of Florida, Inc. are both incorporated in and have their principal places of business in Florida.  *See* the accompanying Affidavit of Darrell C. Sherman ("Sherman Aff."), ¶¶ 5 and 6.

fact, because the application of Florida law would only serve to injure residents and benefit a non-resident, Florida does not have a relevant interest on this Motion.

The potential application of the pollution exclusions to Taylor Morrison's Chinese drywall claims is easily the most significant issue in the coverage dispute between Taylor Morrison and Chartis.  An early resolution of this issue will provide a strong indication as to whether Taylor Morrison is going to have to stand alone in resolving the claims of the plaintiff homeowners, or whether it can look to its insurance carrier for help in defending and (potentially) indemnifying those claims.

## I.    STATEMENT OF FACTS

### A.    The Parties To This Motion

Defendant/Cross-Claimant Taylor Morrison, Inc. is a Delaware corporation with its corporate office and principal place of business in Scottsdale, Arizona.  Taylor Morrison, Inc., through its wholly-owned subsidiaries, is a real estate developer and builder with operations in Arizona, California, Colorado, Florida, Nevada and Texas.[4]

Defendant/Cross-Claimant Taylor Morrison Services, Inc., is also a Delaware corporation with its principal place of business in Scottsdale, Arizona.  Taylor Morrison Services, Inc. is currently a licensed general contractor in California, where it has 25 offices.  Taylor Morrison Services, Inc. was formerly known as Morrison Homes, Inc.  Previously, it acted as a real estate developer and builder in other states, including Florida, but it no longer builds or sells homes in those other states.[5]

Defendant/Cross-Claimant Taylor Woodrow Communities at Vasari, LLC ("Vasari") is a Florida limited liability company with its principal place of business in Florida.  Vasari is a real

---

[4]    Sherman Aff., ¶ 3.
[5]    Sherman Aff., ¶ 4.

estate developer and builder with operations in Florida.[6]

Defendant/Cross-Claimant Taylor Morrison of Florida, Inc. is a Florida corporation with its principal place of business in Florida.  Taylor Morrison of Florida, Inc. is a real estate developer and builder with operations in Florida.[7]

Defendant/Cross-Defendant Chartis is an Illinois corporation with its principal place of business in New York.[8]  It has its principal underwriting operations in New York and claims offices in (at least) New York, California and Arizona with nationwide claims oversight being conducted from New York.[9]  Chartis has substantial operations in the State of Louisiana.  In 2009, Chartis had gross premiums of $36,276,119 in Louisiana.[10]

**B.**     **The Chinese Drywall Claims**

The owners of certain homes developed by Taylor Morrison ("Homeowners") have made claims against Taylor Morrison, alleging that the Chinese drywall installed in their homes by subcontractors on behalf of Taylor Morrison is defective and has resulted in alleged property damage to their homes and bodily injury.

The Chinese Drywall Claims include claims by the following homeowner Plaintiffs in this action, all of whom are identified as members of Subclass 1 in Schedule 1 to the Amato Class Action Complaint: Dinitto, Patrik and Hevanilson Magalhaes; Dodge, Dale and Beverly; Knight, Christopher and Rosemary; Mottolo, Gene; Burke, Richard and Rebecca; Lee, Kevin; Hay. Robert and Maria; Herbert, Jason and Shanique; Reid, Grant and Kathryn; Akers, Christine and Robert; Galvin, Larry and Rene; Neumann, Allan; and Tarzy, Jim.

These Homeowners are asserting (inter alia) the following allegations against Taylor

---

[6]     Sherman Aff., ¶ 5.
[7]     Sherman Aff., ¶ 6.
[8]     Sherman Aff., ¶ 7 and Ex. A, ¶ 10.
[9]     *See* the accompanying Affidavit of Mark A. DeLillo ("DeLillo Aff."), ¶¶ 10 and 17-21.
[10]    Sherman Aff., ¶ 10 and Ex. D.

Morrison:

> "624.  In 'Chinese drywall' (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by the Insured Defendants herein), the gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or 'off-gassed') from the drywall.

> 625.  The "Chinese drywall" is not fit for its ordinary and intended purpose in that it contains high levels of sulfur and strontium, which emit high levels of sulfur and sulfur compounds, including sulphuric acid and hydrogen sulfide, carbonyl sulfide and sulfur dioxide which corrode copper wires, copper plumbing, copper piping, air-conditioner coils, and other component parts of buildings, appliances, and personal property, including, but not limited to, HVAC systems, refrigerators, televisions, personal computers and other electrical and electronic devices.

> 626.  The Chinese-manufactured drywall (and the hydrogen sulfide and/or other compounds emitted therefrom, either independently and/or in combination with other ambient compounds such as formaldehyde) sold by and/or through the Insured Defendants has also been widely associated with an offensive smell, headaches, eye irritation, coughing, sore throats, an aggravation of allergy and/or breathing problems, and fear of potential long-term health effects, which have, in many cases, further contributed to a loss of enjoyment, mental anguish, and/or loss of use.[11]

### C.      The Chartis Insurance Policies

Taylor Morrison purchased commercial umbrella liability insurance policies from Chartis with the policy numbers and for the policy periods set forth below:

| Policy Number | Policy Period |
|---|---|
| 9746096 | March 1, 2005 – March 1, 2006 |
| 7412123 | March 1, 2006 – March 1, 2007 |
| 7412254 | March 1, 2007 – March 1, 2008 |
| 7412431 | March 1, 2008 – March 1, 2009 |

The aforementioned insurance policies are hereafter referred to as the "Chartis Policies".[12]

The four Taylor Morrison Defendants/Counter-Claimants are among approximately 250 named insureds under each of the four commercial umbrella liability insurance policies issued by Chartis.[13]  These policies cover Taylor Morrison subsidiaries incorporated in Delaware, Arizona,

---

[11]   Plaintiffs' Amended Omnibus Class Action Complaint.
[12]   Copies of the four Chartis Policies are attached as Exhibits A to D of the DeLillo Affidavit.
[13]   Taylor Morrison, Inc. is the First Named Insured on each of the four Chartis Policies; Taylor Morrison Services, Inc. is a Named Insured on the 2008-2009 Policy; Taylor Woodrow Communities

Florida, Georgia and Texas and Taylor Morrison operations in Arizona, Florida, Georgia and Texas.[14]

The Chartis Policies provide coverage for those sums in excess of the self-insured retention that the insureds become legally obligated to pay as damages by reason of liability imposed by law because of (*inter alia*) property damage or bodily injury to which the insurance applies.[15]  The Limit of Insurance under each Chartis Policy is $25,000,000 "Each Occurrence" and the self insured retention is $1,000,000 "Each Occurrence Indemnity Only."[16]

Each of the four Chartis Policies has a "pollution exclusion."  The exclusion in the first Chartis Policy, which is for the 2005-2006 Policy year, provides in relevant part as follows:

> "This insurance does not apply to:
>
> 1.     any liability arising out of the actual, alleged or threatened discharge, disposal, seepage, migration, release or escape of Pollutants:
>
>     a.     at or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any Insured;"[17]

This Policy defines "pollutant" as follows:

> "Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."[18]

---

at Vasari, L.L.C. and Taylor Morrison of Florida, Inc. are Named Insureds on all four Policies.  *See* De Lillo Aff., Ex. A, Endorsement #14 ("Named Insured"); Ex. B, Endorsement #6 ("Additional Named Insureds"); Ex. C, Endorsement #7 ("Additional Named Insureds"); and Ex. D, Endorsement #7 ("Additional Named Insureds.").

[14]   De Lillo Aff., Ex. A, Endorsement #14 ("Named Insured"); Ex. B, Endorsement #6 ("Additional Named Insureds"); Ex. C, Endorsement #7 ("Additional Named Insureds"); and Ex. D, Endorsement #7 ("Additional Named Insureds.").

[15]   *See e.g.*, De Lillo Aff., Ex. D, Commercial Umbrella Liability Coverage Form, Coverage A, page 1 of 27.

[16]   *See e.g.*, De Lillo Aff., Ex. D, Declarations and Endorsement #1 ("Schedule of Retained Limits").

[17]   De Lillo Aff., Ex. A., Commercial Umbrella Liability Coverage Form, Section VII, Exclusion T, page 17 of 26.

[18]   De Lillo Aff., Ex. A, Commercial Umbrella Liability Coverage Form, Section VI, Definition R, page 9 of 26.

> The pollution exclusion in each of the three later Chartis Policies
> in issue (for the 2006-2007, 2007-2008 and 2008-2009 policy
> years) is contained in a "Total Pollution Exclusion Endorsement"
> which provides, in relevant part, as follows:
> "This insurance does not apply to:
>
> 1.       Any Bodily Injury, Property Damage or Personal Injury
>          and Advertising Injury arising out of the actual, alleged or
>          threatened discharge, disposal, seepage, migration, release
>          or escape of Pollutants anywhere at any time;"[19]

The definition of "Pollutants" in the Policies for 2006 to 2009 is identical to the definition

contained in the 2005-2006 Policy, as set forth above.[20]

The "Total Pollution Exclusion Endorsement" (the "TPE") used by Chartis in its Policies

for 2006 to 2007, 2007 to 2008 and 2008 to 2009, therefore differs from the pollution exclusion

contained in the Chartis Policy for 2005 to 2006 in that the TPE does **not** say that the "discharge,

deferral, seepage, irrigation, release or escape of Pollutants" shall be "at or from any premises,

site or location . . ."  Instead, it says that the insurance does not apply to a "discharge, dispersal,

seepage, migration, release or escape of Pollutants anywhere at any time."

**D.**       **Negotiation, Execution And Issuance Of The Chartis Policies**

Each of the Chartis Policies was negotiated by Chartis underwriters located in New York,

New York and Atlanta, Georgia.  Each of the Chartis policies contains only New York, New

York addresses for Chartis (or American International Specialty Lines Insurance Company, as it

was known at the time the policies were issued).  And each of the Chartis policies is counter-

signed by Chartis representatives who were all located in New York at the time the Policies were

issued.  At least three of the Policies indicate on their face that they were issued in New York,

because they say that they "shall not be valid unless signed at the time of issuance," and they are

---

19    *See e.g.*, De Lillo Aff., Ex. D, Endorsement #8 ("Total Pollution Exclusion Endorsement").
20    *See e.g.*, De Lillo Aff., Ex. D, Commercial Umbrella Liability Coverage Form, Section VI,
      Definition U, page 10 of 27.

all signed by representatives who were located in New York at the time of execution.[21]

Taylor Morrison's broker for the negotiation of the Policies was located in Tampa, Florida but, as noted above, the Policies covered Taylor Morrison's operations in Arizona, Georgia and Texas, as well as Florida.  The Policies were also delivered to Taylor Morrison in Florida, because that is where it had its corporate office at the time, but that office is now in Arizona.[22]

The current mailing address for Taylor Morrison for each of the four Chartis Policies is in Scottsdale, Arizona where Taylor Morrison, Inc. moved its corporate office in April 2008. Taylor Morrison's broker on the Chartis policies provided Chartis with notice of this change of address and Chartis confirmed that they would make the change.[23]  The parties' expectation was always that claim payments would be sent by Chartis to Taylor Morrison at its corporate office, and that when Taylor Morrison moved its corporate office to Arizona, payments would be sent to that office as the **current** corporate office.[24]  Chartis' Handling of Taylor Morrison's Insurance Coverage Claim Taylor Morrison first tendered Chinese drywall claims to Chartis, in New York, in March 2009.[25]  Taylor Morrison's request for coverage was initially handled by Chartis claims examiners in New York and Arizona, but since August, 2009, it has been handled by Chartis claims examiners in California, subject at all times to supervision from the principal office in

---

[21]   De Lillo Aff., ¶¶ 10 and 11 and Exs. B, C and D, at page 27 of 27; *see* accompanying Affidavit of Suzanne McDermott Brown ("Brown Aff."), ¶ 4.

[22]   De Lillo Aff., ¶¶ 5 and 12.

[23]   De Lillo Aff., ¶ 14 and Ex. E.

[24]   De Lillo Aff., ¶ 13.  After initially confirming in writing that they would change the mailing address for Taylor Morrison on all of the Policies in issue, Chartis has recently refused to formalize the change of address to Arizona.  *See* De Lillo Aff., ¶ 15 and Ex. F.  However, it does not seem likely that Chartis will send communications regarding these Policies (let alone claim checks) to an address in Florida where it knows that Taylor Morrison no longer has a presence.  Chartis knows that Taylor Morrison's corporate office, and its Risk Manager, are now located in Scottsdale, Arizona and it would be absurd for Chartis to send correspondence concerning these Policies anywhere else.

[25]   De Lillo Aff., ¶17 and Exs. G and H.

New York.[26]

      Chartis did not take a coverage position on Taylor Morrison's Chinese drywall claims until December 4, 2009, when from its Santa Ana, California office, Chartis wrote to Taylor Morrison denying coverage by stating that "there is no coverage under the [Chartis] policies for any costs arising out of the process of repairing and replacing the drywall,"[27] and asserting twenty-one additional reasons why Chartis reserved the right to deny coverage. These included "the right to decline coverage based upon" the exclusion for "property damage arising from 'pollutants,' as defined in the policy."[28]

      Taylor Morrison tendered the instant (Amato) action to Chartis in New York for indemnity on September 17, 2010. So far, there has been no response from Chartis.[29]

## II.    ARGUMENT

### A.   Choice of Law

      In deciding which state's substantive law governs a dispute, federal courts apply the choice-of-law rules of the state in which the action was filed. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Smith v. Waste Mgmt. Inc.*, 407 F. 3d 381, 384 (5th Cir. 2005). Therefore, Louisiana's choice-of-law rules control the question of which state's substantive law applies to the issues on this Motion for Partial Summary Judgment.

      Under Louisiana choice-of-law rules, the Court must first consider the applicable substantive law from each involved state to determine if the law differs in those states. *Champagne v. Ward*, 893 So.2d 773, 786 (La. 2005). If the law is different, then the Court must conduct a choice-of-law analysis pursuant to the rules contained in Articles 3515 and 3537 of the

---

[26]   De Lillo Aff., ¶ 19 and Ex. K, ¶ 10.
[27]   De Lillo Aff., ¶ 20 and Ex. L, page 6 of 11.
[28]   De Lillo Aff., ¶ 20 and Ex. L, page 9 of 11.
[29]   De Lillo Aff., ¶ 21.

Louisiana Civil Code.  *Id.*

**B.**     **The Substantive Law Of The Involved States**.

The involved states are 1) Louisiana (where this action was filed); 2) New York (where the negotiation and formation of the Policies took place, where Chartis has its principal place of business, where its final coverage determinations are made, and where payments under the Policies are made from); 3) Arizona (where Taylor Morrison has its corporate office, where its Risk Manager is located, and where policy payments should be sent); and 4) Florida (where the Policies were delivered and the homes with the Chinese drywall problems are located).

**1)**     **Louisiana Law On The Pollution Exclusion**

Under Louisiana law, the total pollution exclusion is interpreted as being "designed to exclude coverage for environmental pollution only and not for all interactions with irritants or contaminants of any kind."  *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 136 (La. 2000), *corrected on rehrg.*, 782 So.2d 573 (La. 2001).

In *Doerr*, the Total Pollution Exclusion Endorsement was almost identical to the one contained in the Chartis Policies for 2006 to 2009.  It provided as follows:

"This insurance does not apply to:

(1) 'Bodily injury', 'property damage', 'personal injury' or 'advertising injury' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time."

"Pollutants" was defined as follows:
"Pollutants means solid liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste."

774 So. 2d at 122.  The *Doerr* class action lawsuit against Mobil Oil arose out of a discharge of hydrocarbons from a refinery in Chalmette, Louisiana into the Mississippi River.  Following the discharge, the hydrocarbons were allegedly drawn into the St. Bernard Parish water system and

then distributed to users throughout the parish.  The plaintiffs sought compensation for personal injuries allegedly suffered following their consumption and/or use of the contaminated water.

Overruling its earlier decision in *Ducote v. Koch Pipeline Co.*, L.P. 730 So. 2d 432 (La. 1999), the Louisiana Supreme Court held that "because the pollution exclusion was designed to exclude coverage for environmental pollution only, it should be interpreted so that the clause will not be applied to all contact with substances that may be classified as pollutants." *Doerr*, 774 So. 2d at 127-128.

**2)      New York Law On The Pollution Exclusion**

New York's highest court has held that the pollution exclusion is ambiguous as applied to a personal injury claim arising from indoor exposure to paint solvent fumes.  In *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377 (2003), the policy in issue contained the same Total Pollution Exclusion that was in issue before the Louisiana Supreme Court in *Doerr*.  The New York Court of Appeals held as follows:

1)      That the paint or solvent fumes were not "pollutants," and that holding that they were "would infinitely enlarge the scope of the term 'pollutants'";

2)      That even if the paint or solvent fumes were within the definition of "pollutant," the exclusion would not apply unless the injury was caused by a "discharge, dispersal, seepage, migration, release or escape" of the fumes; further, that it could not be said "that this language unambiguously applies to ordinary paint or solvent fumes that drifted a short distance from the area of . . . intended use and allegedly caused inhalation injuries"; and

3)      It rejected the insurer's contention that the absence of the language "into or upon land, the atmosphere or any water course or body of water" was a material

difference that indicated an intent to extend the exclusion to **indoor**, as well as outdoor, pollution.  "Because any pollution will necessarily involve discharge or release into land, atmosphere or water, the omission of such language in the present policy simply removes a redundancy in the exclusion.  It does not eliminate or overcome the environmental implications of the terms 'discharge, dispersal, seepage, migration, release or escape'."  100 N.Y.2d at 387-388.

### 3)    Arizona Law On The Pollution Exclusion

Arizona's highest court addressed the application of the pollution exclusion to "non-traditional" environmental pollution claims in *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43 (2000).  The issue in that case was whether the exclusion applied to the injuries allegedly sustained by a golfer who drank bacteria–contaminated water served by the insured.

*Keggi* involved two forms of the pollution exclusion.   The exclusion in the Northbrook policies read as follows:

> "This insurance does not apply to:
>
> (1)    Bodily injury or property damage arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
>
> (a)    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any Insured;"

199 Ariz. at 46.  The Northbrook exclusion was therefore similar to the exclusion in the Chartis Policy for the 2005 to 2006 policy year.  The pollution exclusion in the TIG policy was similar to the TPE in the Chartis Policies for 2006 to 2009.  It provided in relevant fact as follows:

> "This insurance does not apply to:
>
> A.    Bodily injury, property damage, personal injury arising out of:

    1.  The actual alleged or threatened discharge, dispersal,
        release or escape of pollutants[.]"

199 Ariz. at 51.

    With respect to the Northbrook exclusion, the Arizona Court of Appeals held as

follows:

> "We conclude that the pollution exclusion clause at issue, by its
> plain language, does not include 'bacteria.'  Alternatively, even if
> the language could be interpreted broadly enough to include
> 'bacteria,' we conclude that the purpose of the clause, public
> policy, and the transaction as a whole demonstrate that the
> language nevertheless should not be interpreted to preclude
> coverage for bacterial contamination absent any evidence that the
> actual contamination arose from traditional environmental
> pollution."

199 Ariz. at 50.  Regarding the TIG pollution exclusion, the court simply held that it "does not

differ in any material respect from Northbrook's pollution exclusion," and that it did not

preclude coverage for the injuries arising from the bacterial contamination of water.  199 Ariz. at

51.

    **4)**  **Florida Law On The Pollution Exclusion**

    Florida is the only one of the four states under consideration to have ruled that the

modern day so-called "total pollution exclusion" is clear and unambiguous so as to preclude

coverage for all pollution related liability.  In *Deni Associates of Florida, Inc. v. State Farm Fire

& Cas. Ins. Co.*, 711 So. 2d 1135 (Fl. 1998), ammonia was accidentally spilled while equipment

was being moved inside a building and the claimants alleged that they were injured after inhaling

ammonia fumes.  The policies in issue contained pollution exclusion clauses that were similar to

those in issue in *Doerr* and *Belt Painting*.  They excluded from coverage any liability for

property damage "arising out of the actual, alleged or threatened discharge, dispersal, release or

escape of pollutants."  711 So.2d at 1137.  "Applying the unambiguous language of the pollution

exclusion clause," the Florida Supreme Court held that it was "clear that the incidents at issue

were excluded from coverage." 711 So.2d at 1140.

Given that Florida law on the application of the pollution exclusion is at odds with the law of the other three potentially interested states (Louisiana, New York and Arizona), there appears to be a true conflict between the law of the involved states, and therefore a choice of law analysis is necessary.

**C.**     **Application Of Louisiana's Choice Of Law Rules**

The Louisiana choice-of-law rules are found in Louisiana Civil Code Articles 3515 and 3537. Article 3515 states that when a case involves contacts with other states, the applicable law is that "of the state whose policies would be most seriously impaired if its law were not applied to that issue." The factors used to determine the state whose policies would be most impaired are:

"(1) the relationship of each state to the parties and the dispute; and

(2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state."

La. Civ. Code Art. 3515; *see also Dunlap v. Hartford Ins. Co. of Midwest*, 907 So.2d 122, 124 (La.Ct.App. 1st Cir. 2005).

Article 3537, intended to be read in conjunction with Article 3515, provides "an illustrative list of the factual contacts that are usually pertinent" in determining which state's policies would be most impaired by the failure to apply its law. La. Civ.Code Ann. Art. 3537, Comment c.

Article 3537 requires the Court to:

"evaluat[e] the strength and pertinence of the relevant policies . . . in the light of:

(1)  the pertinent contacts of each state to the parties and the transaction,

including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence or business of the parties;

(2)  the nature, type, and purpose of the contract; and

(3)  the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other."

La. Civ.Code Art. 3537.

### 1)   The Policies Involved For Each State

The first step in determining which state's law applies under these sections is to identify the policies involved for each state.  *Abraham v. State Farm Mut. Auto Ins. Co.*, 465 F.3d 609, 612 (5th Cir. 2006).

### a)   Relevant Policies For Louisiana

It appears that Louisiana's only connection to this dispute is that the action was filed here, and that Chartis does a significant amount of business in Louisiana.  Therefore, Louisiana may not have any relevant policies that are triggered by the issues before the Court on this Motion.  However, Taylor Morrison has no objection to the application of Louisiana law on the pollution exclusion to the facts in this case, since Louisiana law is consistent with the law in most states on this issue.

### b)   Relevant Policies For New York

Chartis is a resident of New York because it has its principal place of business in that state.  The Chartis Policies were issued and formed in New York by an insurance carrier that had its principal place of business in New York at the time the Policies were issued and where it still has its principal place of business today.  The Policies  were also (at least in part) negotiated in New York.  Taylor Morrison tendered its Chinese drywall claims to Chartis in New York; and the claims have been (again, at least in part) handled by Chartis in New York.  Performance of

Chartis' contractual obligations is to be made in New York in that Chartis will make payments under the Policies from New York.

Every state "has an interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof. The integrity of the contract is a substantial and real interest." *Champagne v. Ward, supra,* 893 So. 2d 773, 788; *Norfolk Southern, supra*, 859 So. 2d 167; 181 (each state has "a compelling interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof. The integrity of the contract is a substantial and real interest."). As one of the world's leading insurance centers, New York's interest in the regulation of the New York insurance industry is perhaps stronger than any other state's interest in the regulation of its insurance industry. *See Schwartz v. Twin City Fire Ins. Co.*, 492 F.Supp. 2d 308, 328 (S.D.N.Y. 2007) ("The significant presence of the insurance industry within the state [of New York] yields a strong interest in its regulation.")

Therefore, the relevant policies in issue for New York are the regulation of its insurance industry and the contractual obligations that are an inherent part thereof.

c)    **Relevant Policies For Arizona**

Because Taylor Morrison, Inc. and Taylor Morrison Services, Inc. are Arizona residents, Arizona has an interest in seeing that its insureds are protected and that in this case, in accordance with Arizona law, the insurer should only be able to avoid its coverage obligations if what is at issue is ***traditional*** environmental contamination, which is not what is at issue in this coverage dispute. *See Peavey Company v. M/V ANPA*, 971 F.2d 1168, 1172 (5th Cir. 1992) (insured was a Louisiana resident; Louisiana therefore had an interest in seeing that the insured's coverage was protected and that the insurer would be able to avoid its contractual obligations

only if it could show actual prejudice).

    **d)**    **Relevant Policies For Florida**

The relevant policies for Florida do not give rise to an interest that would justify the application of Florida law on the pollution exclusion.  If anything, those policies indicate that it would ***not*** be appropriate to apply Florida law.  The Florida Supreme Court's decision in *Deni Associates, supra,* holding that a pollution exclusion of the type found in the Chartis Policies for 2006 to 2007, 2007 to 2008 and 2008 to 2009, is clear and unambiguous and is not limited in its application to environmental or industrial pollution, does not expressly identify the underlying policy behind the ruling.  However, the ***effect*** of the ruling is clear:  it is to protect insurers by (potentially) denying coverage for any claim that is pollution related.  But in this case, the insurer who would benefit from the application of the rule, Chartis, is neither a domiciliary nor a resident of Florida because it is incorporated in Illinois and has its principal place of business in New York.  In so far as the purpose of the Florida rule is to protect Florida insurance companies, clearly it should not be applied on this Motion because to do so will not benefit a Florida carrier.

In *Peavey Company v. M/V ANPA*, 971 F. 2d 1168, 1172-1173 (5th Cir. 1992), the court held that the purpose of Virginia's strict notice rule was to protect insurers from stale claims.  However, the insurer in that case, Zurich, was neither a domiciliary nor a resident of Virginia.  "Accordingly," held the court, "Virginia does not have an interest in seeing that its law is applied in this matter."  971 F. 2d at 1172.  Similarly, in *Sandefer Oil & Gas v. AIG Oil Rig of Texas, Inc.*, 846 F. 2d 319, 323 (5th Cir. 1988), the court held that Texas did not have an interest in the application of its notice rule, which was intended to protect Texas insurers, because none of the defendant insurance companies were domiciled in Texas.

The fact is that in this case the application of Florida law on the pollution

exclusion would actually *harm* residents of Florida.  While their parent corporation, Taylor Morrison, Inc., has its principal place of business in Arizona, Defendants/Cross-Claimants Taylor Woodrow Communities at Vasari, LLC and Taylor Morrison of Florida, Inc. are both Florida entities with their principal places of business in Florida.  It cannot be in Florida's interest to have its law applied to the pollution exclusion in the Chartis Policies when the net result of such application would likely be to harm two residents of Florida, without benefitting a single resident of that state.

### 2)  The States' Interests In Light Of Their Relationships To The Parties And The Dispute

To determine which state's interests control, the Court must evaluate those interests in light of each state's relationship to the parties and the dispute.  La. Civ.Code Arts. 3515, 3537; *Abraham, supra*, 465 F.3d at 612.

### a)  Louisiana's Relationship To The Parties And Dispute

Louisiana's relationship to the parties and dispute is limited.  It is based solely on the fact that Chartis does significant business in Louisiana and that this action is filed here.

### b)  New York's Relationship To The Parties And Dispute

New York clearly has a close relationship to the parties and the dispute:

1)  Chartis' principal place of business when it issued these Policies was New York and it is still New York today.[30]

2)  Chartis underwriters in New York (with some assistance from underwriters in Georgia), negotiated the Policies.[31]

3)  Chartis representatives counter-signed the Policies in New York.[32]

4)  The Chartis Policies were issued and formed in New York.[33]

---

[30]   Sherman Aff., ¶ 7 amd Ex. A to C.
[31]   De Lillo Aff., ¶ 10; Brown Aff., ¶ 4.
[32]   De Lillo Aff., ¶ 11 and Exs. A to D; Brown Aff., ¶ 4.
[33]   De Lillo Aff., ¶ 10 and 11 and Exs. A to D.

5)      Each of the Chartis Policies contains only New York addresses for Chartis.[34]

6)      Taylor Morrison tendered its Chinese drywall claims to Chartis in New York.[35]

7)      Chartis has, in part, been handling Taylor Morrison's Chinese drywall claims out of New York.[36]

8)      Payments on the Chartis Policies will likely be made out of New York.[37]

New York thus has many of the pertinent contacts to the parties and the transaction that are listed in La. Civ. Code Article 3537 (1).  Specifically, New York is 1) the place of **negotiation** of the contract (in large part), 2) the place of **formation** of the contract, 3) the place of **performance** of the contract, and 4) the place of **domicile** of one of the parties to the contract (Chartis).  The only factor identified by Article 3537 (1) that New York does not exhibit is the "location of the object of the contract."  However, in reality there is no such place because the Chartis Policies were intended to cover Taylor Morrison's operations in several states, namely Arizona, Florida, Georgia and Texas.

New York's highest court has spoken clearly on the application of the modern day pollution exclusion to personal injuries arising from indoor exposure to harmful substances.  It found the exclusion to be ambiguous and the court will therefore not apply the exclusion to injuries arising from indoor exposures.  *Belt Painting, supra*, 100 N.Y. 2d at 387-388.  New York's legitimate interest in the regulation of its insurance industry and the contractual obligations entered by the members of that industry, together with the close relationship between New York, on the one hand, and the parties and the dispute on the other, all dictate that New York has a substantial interest in seeing its rule on the pollution exclusion applied to insurance

---

[34]   De Lillo Aff., ¶ 10 and Exs. A to D.
[35]   De Lillo Aff., ¶ 17 and Exs. G and H.
[36]   De Lillo Aff., ¶¶ 17 and 19 and Exs. I (¶5) and K (¶ 10).
[37]   De Lillo Aff., ¶ 15.

policies issued in New York by New York insurers.  New York's interest will undoubtedly be significantly impaired if its law is not applied on this Motion.

> **c)**    **Arizona's Relationship To The Parties And Dispute**

Arizona has a substantial relationship to the parties and dispute:

1)    Defendant/Cross-Claimant Taylor Morrison, Inc., the U.S. parent to all of the Taylor Morrison parties involved in this coverage dispute, has had its corporate office and principal place of business in Scottsdale, Arizona, since April 2008, and is a resident of Arizona.[38]

2)    Defendant/Cross-Claimant Taylor Morrison Services, Inc. has also had its principal place of business in Scottsdale, Arizona since April 2008, and is a resident of Arizona.[39]

3)    Taylor Morrison's Risk Manager is located in Scottsdale, Arizona.[40]

4)    Chartis handled the Taylor Morrison Chinese drywall claim out of its office in Phoenix, Arizona for a period of time in 2009.[41]

5)    Payments for claims under the Chartis Policies should be sent by Chartis to Taylor Morrison, Inc. at its current corporate office in Scottsdale, Arizona.[42]

Arizona's highest court has clearly stated that pollution exclusions similar to those in issue on this Motion do not preclude coverage for anything except traditional environmental pollution. *Keggi,* 199 Ariz. At 50.  Arizona's close relationship with the parties and dispute means that its interests will be significantly impaired if the law of a state (such as Florida) that applies the pollution exclusion to non-traditional environmental claims is used to deny coverage to insured residents of Arizona.

> **d)**    **Florida's Relationship To The Parties And Dispute**

Florida's relationship to the parties and dispute are not significant:

---

[38]    Sherman Aff., ¶ 3.
[39]    Sherman Aff., ¶ 4.
[40]    De Lillo Aff., ¶ 12.
[41]    De Lillo Aff., ¶ 18 and Ex. J.
[42]    De Lillo Aff., ¶¶ 12 to 15.

1)      Chartis has never been incorporated, or had its principal place of business, in Florida.

2)      The Policies were issued to Defendant and Cross-Complainant Taylor Morrison, Inc. in Florida because its principal place of business at that time was in Florida, but now it is in Arizona.  Taylor Morrison Services, Inc. also had its principal place of business in Florida at the time the Policies were issued, but now it is in Arizona and it no longer does business in Florida.  Only Defendants/Cross-Complainants Taylor Woodrow Communities at Vasari, L.L.C. and Taylor Morrison of Florida Inc. still have their principal places of business in Florida.[43]

3)      The Policies cover Taylor Morrison's operations in Florida, but they also cover its operations in Arizona, Georgia and Texas.[44]

4)      The policies were brokered from Florida, but that fact has no bearing on Taylor Morrison's coverage dispute with Chartis.[45]

5)      None of the claims handling has taken place in Florida.

Chartis may argue that Florida has an interest in this dispute because Taylor Morrison's Chinese drywall losses occurred in Florida, and that Florida has an interest in ensuring that its resident homeowners are compensated for the damages or injuries they have experienced as a result of the presence of Chinese drywall in their homes.  However, in its Cross-Complaint against Chartis, Taylor Morrison is seeking relief as to all 200 or so of the homes it has developed where the presence of Chinese drywall is either established or alleged, not just the 13 homes where plaintiff homeowners in this action have asserted claims against Taylor Morrison.  Taylor Morrison is seeking ***reimbursement*** from Chartis for the costs it has already spent to remediate homes with Chinese drywall, so the owners of those homes have nothing to gain from the Chartis insurance because they have already been compensated.

As for the thirteen homeowners who have asserted claims against Taylor

---

[43]   Sherman Aff., ¶¶ 3 - 6.
[44]   *See* footnote 14, *supra*.
[45]   De Lillo Aff., ¶ 16.

Morrison in this (Amato) action, if their claims are not settled and paid by Taylor Morrison directly, and if they proceed to trial and obtain judgments against Taylor Morrison, Taylor Morrison has the financial strength to pay (and will pay) any such judgments from its own resources.  Satisfaction of any such judgments would not be contingent on the availability of insurance.[46]  Taylor Morrison is not asking Chartis to pay directly for the remediation of those thirteen homes; instead, it is seeking declaratory relief that its claims are covered and (ultimately) reimbursement of the losses that it incurs.  In short, Florida has no interest in the outcome of this coverage dispute by virtue of the fact that the homes are in Florida because the homeowners' legitimate Chinese drywall claims have been and will continue to be paid by Taylor Morrison regardless of the outcome of the insurance coverage dispute.  *See Norfolk Southern Corp. v. California Union Ins. Co*., 859 So.2d 167, 182 (2003) ("There is no evidence that any Louisiana resident would be affected by a denial of coverage in this suit, since Norfolk is simply seeking reimbursement for costs it has already paid as response costs.")

Finally, if the Court disagrees with Taylor Morrison's position and determines that Florida's interests, in the context of that state's relationship to the parties and the dispute, are such that Florida law on the pollution exclusion should be applied to this Motion, it cannot be disputed that such use of Florida law will only ***harm*** residents of Florida.  While Chartis would benefit from the application of Florida law to the pollution exclusion, Chartis is not, and never has been, a resident of Florida.  Taylor Morrison's position is that Florida homeowners will not be affected by the determination of Taylor Morrison's claim for coverage, but if the Court decides that the homeowners do have an interest in the coverage dispute, those homeowners will only be harmed by the application of Florida law to the Chartis pollution exclusion.  As to Defendants and Cross-Claimants Taylor Woodrow Communities at Vasari, LLC and Taylor

---

[46]    Sherman Aff., ¶ 11.

Morrison of Florida, Inc., they are both incorporated in and have their principal places of business in Florida.  They are residents of Florida and the injury to them resulting from the application of Florida law will be direct and immediate.

                **e)**       **New York And Arizona Have The Closest Relationships To The Parties And The Dispute**

Taylor Morrison submits that on this Motion, New York has the closest relationship to the parties and the dispute.  New York is also the state whose interests will be the most significantly impaired if its law is not applied.  La. Cv. Code Arts. 3515 and 3537.  Accordingly, the Court should apply New York law to the substantive issues involved on this Motion.  In the alternative, Arizona law should apply, because if it is not New York then Arizona is the state whose interests will be the most significantly impaired if its law is not applied.

**D.**       **The Chartis Policies' Pollution Exclusions Do Not Apply To Taylor Morrison's Chinese Drywall Claims**

                **a)**       **Under New York or Arizona Law, The Chartis Pollution Exclusions Do Not Apply To Chinese Drywall Claims**

If New York or Arizona law (or, for that matter, Louisiana law) is applied to the construction of the pollution exclusions contained in the Chartis Policies, then those exclusions will not apply to Taylor Morrison's Chinese drywall claims.

The highest courts of both New York and Arizona have held that pollution exclusion clauses almost identical to those in the Chartis Policies do not apply to claims arising from indoor exposure to paint solvent fumes (*Belt, supra* 100 N.Y. 2d 377) and bacteria - contaminated water (*Keggi, supra*, 199 Ariz. 43).  In both cases, the courts held 1) that the substances in question (solvent fumes and contaminated water), were not "pollutants," and 2) that the exclusions only applied to "traditional" environmental pollution and that the claims in

question were not "traditional" because they involved indoor exposure.[47]

Applying either New York law or Arizona law to the pollution exclusions contained in the Chartis Polices, it is clear that they do ***not*** apply to the indoor release of sulphur or sulfide gas or fumes from Chinese drywall.  Taylor Morrison's claim for coverage results from indoor exposures; it is ***not*** a "traditional" claim of environmental pollution and therefore the exclusions do not apply.

> **b)** **Even If New York or Arizona Law Does Not Govern, The Pollution Exclusion In The Chartis Policy For 2005 To 2006 Should Still Not Apply To The Chinese Drywall Claims**

If, contrary to Taylor Morrison's position on this Motion, the Court decides that Florida is the state whose interests will be most significantly impaired if its law is not applied, the Court should still not attempt to apply Florida law to the pollution exclusion in the Chartis Policy for 2005 to 2006.

In *Deni*, the Florida Supreme Court did not address the type of pollution exclusion contained in the first of the four Chartis Policies (for 2005 to 2006).  This exclusion is applicable only if the "discharge" etc. is "at or from any premises, site or location."  The pollution exclusion clauses in the *Deni* case excluded liability for property damage "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants."  711 So.2d at 1137.  They did not include the "at or from any premises, site or location" (or similar) language contained in the Chartis Policy for 2005 to 2006, and were substantially the same as the exclusions in the later Chartis Policies (for 2006 to 2009).

In the absence of a clearly applicable ruling from the Florida Supreme Court regarding pollution exclusion clauses of the type in the first Chartis Policy, this Court should hold that

---

[47] The Louisiana Supreme Court held likewise in *Doerr, Supra*, 774 So. 2d at 127-128.

Florida law is not different from Louisiana law. If Florida law does not differ from Louisiana law, then the Court does not need to do a choice of law analysis, and should simply apply Louisiana law to the first of the four Chartis policies. *See Champagne v. Ward*, 893 So.2d 773, 786 (La. 2005). Under the Louisiana Supreme Court's decision in *Doerr*, the exclusion in the Chartis Policy for 2005 to 2006 will not apply to Taylor Morrison's Chinese drywall claims.

WHEREFORE, Defendants and Cross-Complainants Taylor Morrison, Inc. Taylor Morrison Services, Inc., Taylor Woodrow Communities at Vasari, L.L.C. and Taylor Morrison of Florida, Inc. respectfully request that this Court grant their Motion for Partial Summary Judgment against Defendant/Cross-Defendant Chartis Specialty Insurance Company and rule that the pollution exclusions contained in the Chartis Policies do not apply to Taylor Morrison's Chinese drywall claims.

Dated: January 24, 2011             Respectfully submitted,

By:      /s/Neal A. Sivyer

NEAL A. SIVYER
Fla. Bar No. 373745
E-mail: NSivyer@sbwlegal.com
Sivyer Barlow & Watson, P.A.
Suntrust Financial Center
401 E. Jackson Street, Suite 2225
Tampa, Florida  33602
Tel. 813-221-4242

JEFFREY D. MASTERS
California State Bar No. 94122
E-mail: JMasters@coxcastle.com
Cox, Castle & Nicholson, LLP
2049 Century Park East, 28th Floor
Los Angeles, California 90067-3284
Tel. 310-277-4222

Attorneys for Defendants and Cross-Claimants Taylor Morrison, Inc., Taylor Morrison Services, Inc., Taylor Woodrow Communities at Vasari, L.L.C. and Taylor Morrison of Florida, Inc.

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on January 24, 2011, this document has been served on Plaintiffs' Liaison Counsel, Russ Herman, Esq., and Defendants' Liaison Counsel, Kerry Miller, Esq., and Homebuilders' Steering Committee Dorothy Wimberly and Insurer Defendants' Liaison Counsel, Judy Y. Barrasso, Esq. by U.S. mail and/or email or by hand delivery and I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No.: 6.

/s/ Neal A. Sivyer
Neal A. Sivyer