UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEAN and DAWN AMATO, et al., | CASE NO.: 10-932 |
| Plaintiffs, | |
| vs. | |
| LIBERTY MUTUAL INSURANCE COMPANY, et al., | |
| Defendants. | |

### AFFIDAVIT OF MARK A. DELILLO IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE POLLUTION EXCLUSION

I, Mark A. DeLillo, being duly sworn, depose and make under oath the following Affidavit:

1. I am the North America Risk Manager for Defendant and Cross-Claimant Taylor Morrison, Inc. and its subsidiaries, a position I have held with Taylor Morrison, Inc. or its predecessor entities since August 1, 2003. I am making this Affidavit in support of the Motion by Developer/Builder Defendants and Cross-Claimants Taylor Morrison, Inc., f/k/a Taylor Woodrow, Inc., Taylor Morrison Services, Inc., f/k/a Morrison Homes, Inc., Taylor Woodrow Communities at Vasari, L.L.C., and Taylor Morrison of Florida, Inc., (collectively, "Taylor Morrison") for Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, against Insurance Company Defendant Chartis Specialty Insurance Company, f/k/a American International Specialty Lines Insurance Company ("Chartis"), for a ruling that the underlying Chinese drywall claims against Taylor Morrison are not subject to the pollution exclusions contained in the insurance policies issued by Chartis to Taylor Morrison.

2. I was the individual at Taylor Morrison primarily responsible for the negotiation of each of the four insurance policies that are the subject of Taylor Morrison's Cross-Claim. I am also the person at Taylor Morrison responsible for the claims on the policies that are the

60494\4039567v1

subject of this lawsuit. Unless otherwise stated, each of the facts set forth herein is personally known to me and, if called as a witness, I could and would competently testify thereto.

### A. The Chartis Insurance Policies

3.  Taylor Morrison purchased commercial umbrella liability insurance policies from Chartis with the policy numbers and for the policy periods set forth below:

| Policy Number | Policy Period |
|---|---|
| 9746096 | March 1, 2005 – March 1, 2006 |
| 7412123 | March 1, 2006 – March 1, 2007 |
| 7412254 | March 1, 2007 – March 1, 2008 |
| 7412431 | March 1, 2008 – March 1, 2009 |

The aforementioned insurance policies are hereafter referred to as the "Chartis Policies". True and correct copies of the four Chartis Policies are attached hereto as Exhibits A through D.

4.  Taylor Morrison, Inc. is the First Named Insured on each of the four Chartis Policies. Taylor Morrison Services, Inc. is a Named Insured on the 2008-2009 Policy. Taylor Woodrow Communities at Vasari, L.L.C. and Taylor Morrison of Florida, Inc. are Named Insureds on all four Policies. *See* Exhibit A, Endorsement #14 ("Named Insureds"); Exhibit B, Endorsement #6 ("Additional Named Insureds"); and Exhibits C and D, Endorsement #7 ("Additional Named Insureds").

5.  The four Taylor Morrison Defendants/Counter-Claimants are among approximately 250 named insureds on each of the four Chartis Policies. These Policies cover Taylor Morrison subsidiaries incorporated in Delaware, Arizona, Florida, Georgia and Texas and Taylor Morrison operations in Arizona, Florida, Georgia and Texas. *See e.g.* Exhibit D, Endorsement #7 ("Additional Named Insureds").

6.  The Chartis Policies provide coverage for those sums in excess of the self-insured retention that the insureds become legally obligated to pay as damages by reason of liability imposed by law because of (*inter alia*) property damage or bodily injury to which the insurance applies. *See e.g.* Exhibit D, Commercial Umbrella Liability Coverage Form, Coverage A, page 1 of 27. The Limit of Insurance under each Chartis Policy is $25,000,000 "Each Occurrence" and

the self insured retention is $1,000,000 "Each Occurrence Indemnity Only." *See e.g.* Exhibit D, Declarations and Endorsement #1 ("Schedule of Retained Amounts").

7.   Each of the four Chartis Policies has a "pollution exclusion." The exclusion in the first Chartis Policy, which is for the 2005-2006 Policy year, provides in relevant part as follows:

> "This insurance does not apply to:
>
> 1.   any liability arising out of the actual, alleged or threatened discharge, disposal, seepage, migration, release or escape of Pollutants:
>
>     a.   at or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any Insured;"

*See* Exhibit A, Commercial Umbrella Liability Policy Coverage, Section VII.T, page 17 of 26. This Policy defines "pollutants" as follows:

> "Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

*See* Exhibit A, Commercial Umbrella Liability Coverage Form, Section VI.R, page 9 of 26.

8.   The pollution exclusion in each of the three later Chartis Policies in issue (for the 2006-2007, 2007-2008 and 2008-2009 policy years) is contained in a "Total Pollution Exclusion Endorsement" which provides, in relevant part, as follows:

> "This insurance does not apply to:
>
> 1.   Any Bodily Injury, Property Damage or Personal Injury and Advertising Injury arising out of the actual, alleged or threatened discharge, disposal, seepage, migration, release or escape of Pollutants anywhere at any time;"

*See e.g.* Exhibit D, Endorsement #8 ("Total Pollution Exclusion Endorsement"). The definition of "Pollutants" in the Policies for 2006 to 2009 is identical to the definition contained in the 2005-2006 Policy, as set forth above. *See e.g.* Exhibit D, Commercial Umbrella Liability Coverage Form, Section VI.U, page 10 of 27.

9. The "Total Pollution Exclusion Endorsement" (the "TPE") used by Chartis in its Policies for 2006 to 2007, 2007 to 2008 and 2008 to 2009, therefore differs from the pollution exclusion contained in the Chartis Policy for 2005 to 2006 in that the TPE does *not* say that the "discharge, deferral, seepage, irrigation, release or escape of Pollutants" shall be "at or from any premises, site or location . . ." Instead, it says that the insurance does not apply to a "discharge, dispersal, seepage, migration, release or escape of Pollutants anywhere at any time."

### B. Negotiation, Execution And Issuance Of The Chartis Policies

10. Each of the Chartis Policies was negotiated by Chartis underwriters located in New York, New York and Atlanta, Georgia. Each of the Chartis Policies contains only New York, New York addresses for American International Specialty Lines Insurance Company ("AISLIC") (as Chartis was known at the time the policies were issued), on both the Declarations page and the first page of the 26 or 27 page Coverage Form, namely, either 175 Water Street, New York, New York, or 70 Pine Street, New York, New York. The policy for the 2005-2006 policy period has the 175 Water Street address on both the Declarations page and the Coverage Form; the policy for 2006-2007 has the Water Street address on the Declarations page and the Pine Street address on the Coverage Form; while the Policies for 2007-2008 and 2008-2009 reference only the Pine Street address on both the Declarations page and Coverage Form. *See* Exhibits A to D.

11. The Policies for the three policy periods 2006 to 2009 all state on the last page of the Coverage Form as follows: "This policy shall not be valid unless signed at the time of issuance by an authorized representative of the Company, either below or on the Declarations page of the policy." *See* Exhibits B, C, and D, at page 27 of 27. Each of the Chartis Policies is counter-signed on the Declarations page and/or the last page of the 26 or 27-page Coverage Form, as well as on the endorsements, by Chartis representatives who, based on the accompanying Affidavit of broker Suzanne McDermott Brown, were all located in New York at the time the policies were issued. *See* Exhibits A to D and Brown Affidavit, ¶ 4.

12.     The mailing address for Taylor Morrison Inc. shown on each of the four Policies is in Bradenton, Florida. This is where Taylor Morrison, Inc. had its corporate office until April 2008, when it moved to Scottsdale, Arizona. Risk management is a corporate function and the Risk Manager is a corporate employee. Hence, my office is in Scottsdale, Arizona.

13.     Based on my 25 years or more of experience in the insurance business, insurance companies always send claim payments to corporate policyholders at the policyholder's corporate office, where the Risk Manager is customarily located. This, I believe, is the industry practice. Chartis has never paid any claims on the policies in issue. However, when Taylor Morrison, Inc. had its corporate office in Bradenton, Florida, my expectation was that claim payments would be sent by Chartis to that office, and that is why the Chartis policies have the Bradenton mailing address. I believe that the Chartis underwriters also had the same expectation.

14.     Although Chartis representatives were aware that our corporate office had moved to Scottsdale no later than the end of 2008 or beginning of 2009 (when we were in renewal discussions) and would, I believe, have sent claim payments to Scottsdale, Arizona, even without a formal notice of change of address, I requested Taylor Morrison's broker on the Chartis Policies, Willis of Florida, Inc. ("Willis"), to give them a written notice in October 2009. Willis did so by e-mail on October 22, 2009 and Chartis immediately confirmed that they would make the change. A true and correct copy of the October 22, 2009 e-mail exchanges between the broker and Chartis is attached hereto as Exhibit E. My expectation, and I believe that of the Chartis representatives, was that payments would be sent to the *current* corporate office: nobody would expect them to be sent to a former address.

15.     After initially stating that they would make the change, Chartis has recently refused to formalize the change of address to Arizona. True and correct copies of e-mail exchanges between the broker and Chartis dated October 23 and 25, 2010 are attached hereto as Exhibit F. However, it does not seem likely that Chartis will send communications under these Polices (let alone claim checks) to an address in Florida where it knows that Taylor Morrison no

longer has a presence. I anticipate that any claim payments will be sent by Chartis from its principal office in New York.

16. Taylor Morrison's broker for the negotiation of the Policies was located in Tampa, Florida but, as stated above, the Policies covered Taylor Morrison's operations in Arizona, Georgia and Texas, as well as Florida. *See e.g.* Exhibit D, Endorsement #7 ("Additional Named Insureds"). So far as I am aware, the broker's presence in Florida has no bearing on Taylor Morrison's coverage dispute with Chartis. The Policies were also delivered to Taylor Morrison in Florida, because that is where it had its corporate office at the time, but that office is now in Arizona.

C. **Chartis' Handling Of Taylor Morrison's Insurance Coverage Claim**

17. At my request, Willis the broker initially tendered Taylor Morrison's then known Chinese drywall claims to AIG Domestic Claims, Inc. ("AIG"), on behalf of Chartis, in New York, in March 2009. I followed up and tendered additional claims. *See e.g.* my two letters to Chartis (which at that time was still using the AIG name) dated April 22, 2009, true and correct copies of which are attached hereto as Exhibits G and H. Taylor Morrison's Chinese drywall claim was initially handled on behalf of Chartis by a claims examiner located in New York, James Corona. *See* paragraph 5 of Declaration of Janet Shipes, dated February 17, 2010, a true and correct copy of which is attached hereto as Exhibit I.

18. On August 18, 2009, I received an e-mail from Peter Bloom, the Chartis Senior Complex Claims Director in Phoenix, Arizona, advising me that, effective August 21, 2009, the Chartis file for Taylor Morrison's Chinese drywall claim was being re-assigned to Janet Shipes at the Chartis claims office in Santa Ana, California. A true and correct copy of Mr. Bloom's e-mail correspondence to me of August 18, 2009 is attached hereto as Exhibit J. In or about the Spring of 2010, local responsibility for the claim was again re-assigned, this time to Chartis' office in San Ramon, California. But such local responsibility was always subject to supervision by the principal claims office in New York.

19. According to Chartis' Janet Shipes, who was the claims examiner for Taylor Morrison's Chinese drywall claim from August 2009 to the Spring of 2010, "[n]o claims examiner has had sole responsibility for handling the claim. Each claims examiner has consulted with other employees of Chartis Claims, Inc., located in New York, New York." *See* paragraph 10 of Declaration of Janet Shipes, dated December 21, 2009, a true and correct copy of which is attached hereto as Exhibit K.

20. Chartis did not take a coverage position on Taylor Morrison's Chinese drywall claims until December 4, 2009. A true and correct copy of the Chartis denial and reservation of rights letter dated December 4, 2009 is attached hereto as Exhibit L. On behalf of Chartis, Chartis' Janet Shipes wrote to Taylor Morrison denying coverage by stating that "there is no coverage under the [Chartis] policies for any costs arising out of the process of repairing and replacing the drywall." *See* Exhibit L, page 6 of 11. Chartis asserted twenty-one additional reasons why it reserved the right to deny coverage, including the pollution exclusion. *See* Exhibit L, page 9 of 11. The Chartis denial/reservation of rights letter of December 4, 2009 was signed by Janet Shipes and sent to Taylor Morrison from the Chartis office in Santa Ana, California but, according to Ms. Shipes, the letter was "approved and authorized by [her] manager in New York before [she] sent it." *See* Exhibit I, paragraph 5.

21. Taylor Morrison tendered the instant (Amato) action to Chartis in New York for indemnity on September 17, 2010. So far, there has been no response from Chartis.

_____
Mark A. DeLillo

STATE OF ARIZONA

COUNTY OF MARICOPA

Sworn to (or affirmed) and subscribed before me this 1st day of December 2010, by Mark A. DeLillo, who is personally known to me or who has produced _____ as identification.

_____
Notary Public

OFFICIAL SEAL
DAWN D. BAXTER
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires April 4, 2014

My Commission expires:_____