# EXHIBIT E

**From:** Mothershead, Paula [mailto:Paula.Mothershead@willis.com]
**Sent:** Wednesday, January 27, 2010 10:30 AM
**To:** Mark DeLillo
**Cc:** Brown, Suzanne; Miller, Pamela
**Subject:** FW: Taylor Morrison

Mark:
Per your conversation with Suzanne this morning, please find below my request to AIG/Chartis to change your mailing address to Scottsdale.  Please let me know if you have any questions.
Thanks,
Paula

Paula Mothershead
Senior Client Manager
Assistant Vice President
Willis of Florida
3000 Bayport Drive, Suite 300
Tampa, FL  33607
Cell 813-368-0032
Direct:  813-490-5164
email:   paula.mothershead@willis.com
www.willis.com

---

**From:** Mothershead, Paula
**Sent:** Thursday, October 22, 2009 3:50 PM
**To:** Hayward, Warren
**Subject:** RE: Taylor Morrison

Back to inception on each term... Thanks!

Paula Mothershead
Senior Client Manager
Assistant Vice President
Willis of Florida
3000 Bayport Drive, Suite 300
Tampa, FL  33607
Cell 813-368-0032
Direct:  813-490-5164
email:   paula.mothershead@willis.com
www.willis.com

---

**From:** Hayward, Warren [mailto:Warren.Hayward@chartisinsurance.com]
**Sent:** Thursday, October 22, 2009 3:49 PM
**To:** Mothershead, Paula
**Subject:** RE: Taylor Morrison

Paula,

Will do. What is the effective date for the change?

**From:** Mothershead, Paula [mailto:Paula.Mothershead@willis.com]
**Sent:** Thursday, October 22, 2009 3:44 PM
**To:** Hayward, Warren
**Subject:** Taylor Morrison

Warren:

Please change the mailing address for Taylor Morrison on current policy, and all prior policies to:

Taylor Morrison, Inc.
4900 N. Scottsdale Road
Suite 2000
Scottsdale, AZ 85251
Paula Mothershead
Senior Client Manager
Assistant Vice President
Willis of Florida
3000 Bayport Drive, Suite 300
Tampa, FL 33607
Cell 813-368-0032
Direct 813-490-5164
email: paula.mothershead@willis.com
www.willis.com

# EXHIBIT F

**From:** Mothershead, Paula [mailto:Paula.Mothershead@willis.com]
**Sent:** Monday, October 25, 2010 5:50 AM
**To:** Mark DeLillo
**Cc:** Brown, Suzanne; Miller, Pamela
**Subject:** FW: Taylor Morrison

Mark:

Please review Warren's response below regarding changing the address on the prior Umbrella policies.

Let me know if you have any questions.

Thank you.

Paula

**Paula Mothershead, Senior Client Manager, Willis of Florida**
Willis Group, 3000 Bayport Drive, Suite 300, Tampa, FL 33607.
Direct: +813 490 5164, Mobile: +813 368 0032, paula.mothershead@willis.com , www.willis.com

www.the3day.oro/qoto/paula2011

---

**From:** Hayward, Warren [mailto:Warren.Hayward@chartisinsurance.com]
**Sent:** Saturday, October 23, 2010 11:58 AM
**To:** Mothershead, Paula
**Subject:** RE: Taylor Morrison

Paula,

I'm a little confused and hope you can clarify.

The current policies (311331337 and 31131342) were issued with the address you are showing below.

Prior policies were issued with the mailing address that applied when those policies were in force. We would not go back at this point and amend the mailing addresses for prior policies to reflect a mailing address that is effective 3/1/2010.

As such, I don't think that anything needs to be done. If you have any questions or concerns, please let me know.

Thanks.

---

**From:** Mothershead, Paula [mailto:Paula.Mothershead@willis.com]
**Sent:** Friday, October 22, 2010 2:46 PM
**To:** Hayward, Warren
**Subject:** FW: Taylor Morrison

Have these endorsements been issued? Thanks, Paula

**Paula Mothershead, Senior Client Manager, Willis of Florida**
Willis Group, 3000 Bayport Drive, Suite 300, Tampa, FL 33607.
Direct: +813 490 5164, Mobile: +813 368 0032, paula.mothershead@willis.com , www.willis.com

www.the3day.org/qoto/paula2011

# EXHIBIT G

# TaylorMorrison

TAYLOR MORRISON, INC.

8430 Enterprise Circle
Suite 100
Bradenton, FL 34202

p. (941) 554-2000
f. (941) 554-3005
taylormorrison.com

April 22, 2009

Mr. James C. Corona
Complex Director
Excess Casualty Claims
AIG Domestic Claims, Inc.
P & C Severity Claims
160 Water Street, 19ᵗʰ Floor
New York, NY 10038

RE:     Insured: Taylor Morrison, Inc.
        Claimant: Culliton, et al AND Various Others
        Policy #: BE 7412431
        Your File #: 169-285151

Dear Mr. Corona:

Thank you for your letter of April 8, 2009 acknowledging the above captioned matter.

We understand the AISLIC policies are excess policies; however, you are aware that these policies, under the Insuring Agreement, contain both Coverage A and Coverage B coverage parts: **Coverage A:** Excess Liability Over Insured's Self-Insured Retention and **Coverage B:** Excess Liability Over Scheduled Underlying Insurance and Any Other Insurance.

I call your attention to Endorsement # 1 **Schedule of Retained Amounts**. Under this endorsement, the Schedule of Retained Amounts apply to the General Liability and Products/Completed Operations Liability exposures. Consequently, we disagree with the preliminary requirements as listed in the third paragraph of your letter concerning primary carriers and the related information.

In further response to (7), we attach a spreadsheet of the confirmed cases of Chinese drywall as we know them today. The spreadsheet contains the homeowner/claimant name, close of escrow dates and other related information. These homeowner/claimants are potential members of this and any other class action regarding alleged defective Chinese drywall. Additionally, we attach copies of two additional complaints filed against the insured among others.

**Please acknowledge receipt of this information as Notice of additional potential claims under this policy.**

Taylor
    Woodrow
Communities

taylor
    morrison
Homes Inspired by You

Page Two
James C. Corona
April 22, 2009

Considering the complexity of the matter, the multiple claimants, the numerous
potentially responsible entities and the magnitude of the entirety of this claim, we would
welcome dialogue in the very near future.

Thank you for your attention to this matter.

Regards,

Mark A. DeLillo, ARM
North America Risk Manager
Taylor Morrison, Inc.

Attachments

# EXHIBIT H

# TaylorMorrison

TAYLOR MORRISON, INC.

8430 Enterprise Circle
Suite 100
Bradenton, FL 34202

p. (941) 554-2000
f. (941) 554-3005
taylormorrison.com

April 22, 2009

Mr. James C. Corona
Complex Director
Excess Casualty Claims
AIG Domestic Claims, Inc.
P & C Severity Claims
160 Water Street, 19th Floor
New York, NY 10038

RE:   **Insured: Taylor Woodrow – Texas & Florida Operations**
**Claimant: Culliton, et al AND Various Others**
**Policy #'s: BE 9745672, BE 9746096, BE 7412123 & BE 7412254**
**Your File #: 169-285152**

Dear Mr. Corona:

Thank you for your letter of April 8, 2009 acknowledging the above captioned matter.

We understand the AISLIC policies are excess policies; however, you are aware that
these policies, under the Insuring Agreement, contain both Coverage A and Coverage B
coverage parts: **Coverage A:** Excess Liability Over Insured's Self-Insured Retention and
**Coverage B:** Excess Liability Over Scheduled Underlying Insurance and Any Other
Insurance.

I call your attention to Endorsement # 1 <u>Schedule of Retained Amounts</u> in Policy #'s
9745672, 9746096 and 7412254 and Endorsement # 17 <u>Schedule of Retained
Amounts</u> in Policy # 7412123.  Under these endorsements, the Schedule of Retained
Amounts apply to the General Liability and Products/Completed Operations Liability
exposures.  Consequently, we disagree with the preliminary requirements as listed in the
third paragraph of your letter concerning primary carriers and the related information.

In further response to (7), we attach a spreadsheet of the confirmed cases of Chinese
drywall as we know them today.  The spreadsheet contains the homeowner/claimant
name, close of escrow dates and other related information.  These
homeowner/claimants are potential members of this and any other class action
regarding alleged defective Chinese drywall.  Additionally, we attach copies of two
additional complaints filed against the insured among others.

**Please acknowledge receipt of this information as Notice of additional potential
claims under this policy.**

Taylor
   Woodrow
Communities

taylor
   morrison
Homes Inspired by You

Page Two
James C. Corona
April 22, 2009

Considering the complexity of the matter, the multiple claimants, the numerous
potentially responsible entities and the magnitude of the entirety of this claim, we would
welcome dialogue in the very near future.

Thank you for your attention to this matter.

Regards,

Mark A. DeLillo, ARM
North America Risk Manager
Taylor Morrison, Inc.

Attachments

# EXHIBIT I

1 | Rebecca R. Weinreich State Bar Number 155684
     E-Mail: Weinreich@lbbslaw.com
2 | Jordan Harriman State Bar Number 117150
     E-Mail: Harriman@lbbslaw.com
3 | **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   221 North Figueroa Street, Suite 1200
4 | Los Angeles, California 90012
   Telephone: (213) 250-1800
5 | Facsimile: (213) 481-06218

6 | Warren Lutz
     E-Mail: **wlutz@jackscamp.com**
7 | Paul D. Smolinsky
     E-Mail: **psmolinsky@jackscamp.com**
8 | **JACKSON & CAMPBELL, P.C.**
   1120 20th Street, N.W., South Tower Ste. 300
9 | Washington, DC 20036
   Telephone: (202) 457-1600
10 | Facsimile: (202) 457-1687

11 | **Attorneys for Defendant,**
   **Chartis Specialty Insurance Company (Chartis) f/k/a**
12 | **American International Specialty Lines Insurance Company**

13 |
                    **UNITED STATES DISTRICT COURT**
14 |
                   **CENTRAL DISTRICT OF CALIFORNIA**
15 |

| | |
|---|---|
| **TAYLOR MORRISON, INC., TAYLOR MORRISON SERVICES, INC. and TAYLOR WOODROW AT VASARI, L.L.C.,** | Case No. CV09 08651 |
| **Plaintiff,,** | **SECOND DECLARATION OF JANET SHIPES IN SUPPORT OF MOTION TO TRANSFER VENUE UNDER 28 U.S.C. §1404(a)** |
| vs. | |
| **AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,** | |
| **Defendant.** | |

22 |      I, Janet Shipes, declare as follows:

23 |      1.      I am a Complex Director with Chartis Claims, Inc., the authorized representative of

24 | Chartis Specialty Insurance Company (Chartis) f/k/a American International Specialty Lines

25 | Insurance Company with respect to the claims at issue in this matter. I am familiar with the facts

26 | and circumstances regarding the claims brought by the plaintiff and the matters addressed below.

27 |      2.      I am submitting this declaration in support of Chartis' Motion to Transfer Venue

28 | Under 28 U.S.C. § 1404(a).

3.      I am over eighteen years of age, competent to testify, and state the following based on my personal knowledge.

4.      On October 19, 2009, in the course of my duties as a claims examiner, I met in Florida with Taylor Morrison representatives, including its Risk Manager, Mark DeLillo, to discuss the claims involving allegedly defective drywall installed in Florida houses sold by Taylor Morrison. During that meeting, Mr. DeLillo provided to me several spreadsheets identifying the houses, including a list of 118 Florida homeowners, the addresses of the homes, the close of escrow dates and other information. I retained a copy of the spreadsheets that Mr. DeLillo provided during the meeting in the file that I maintain in the ordinary course of business as part of handling this claim. Attached as Exhibit A to this Declaration is a true and correct copy of one of the spreadsheets Mr. DeLillo provided on October 19, 2009, listing all 118 homeowners. This copy is a duplicate of the copy in the claim file.

5.      No Chartis claims examiner has had sole responsibility for handling the Taylor Morrison claim involving the alleged defective drywall. I am the only Chartis claims examiner in California who has been involved with this claim. The others are located in New York (James Corona) and Arizona (Peter Bloom, now retired from Chartis). I signed and forwarded from California the Chartis position letter to Taylor Morrison dated December 4, 2009, that is attached as Exhibit 10 to the Declaration of Mark A. DeLillo. That letter was approved and authorized by my manager in New York before I sent it.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 17, 2010.

By: _____

1250260v.1

-2-

# EXHIBIT J

**From:** Bloom, Peter [mailto:Peter.Bloom@chartisinsurance.com]
**Sent:** Tuesday, August 18, 2009 12:56 PM
**To:** Mark DeLillo
**Cc:** Shipes, Janet
**Subject:** Taylor Morrison, et al

I am retiring effective August 21, 2009 the Chinese drywall files are being transferred to Janet Shipes. Her contact information is:

Janet Shipes
Complex Director
Excess Casualty Claims
Direct  (714) 436-3934
Fax:  (714) 436-5650
janet.shipes@chartisinsurance.com

Chartis
1 MacArthur Place, Suite 500
Santa Ana, CA 92707
www.chartisinsurance.com


Peter W. Bloom
Senior Complex Director
Chartis Claims, Inc. a member company of Chartis Inc.
2929 North Central Ave. 9th Fl.
Phoenix, AZ 85012
Office:   (602) 468-2318
Cell:     (602) 910-0004
Fax:      (866) 465-4270
email:    peter.bloom@chartisinsurance.com

www.chartisinsurance.com

# EXHIBIT K

1  Rebecca R. Weinreich  State Bar Number 155684
      E-Mail: Weinreich@lbbslaw.com
2  Jordon E. Harriman  State Bar Number 117150
      E-Mail: harriman@lbbslaw.com
3  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   221 North Figueroa Street, Suite 1200
4  Los Angeles, California 90012
   Telephone: (213) 250-1800
5  Facsimile: (213) 481-0621

6  Attorneys for Defendant,
   Chartis Specialty Insurance Company (Chartis) f/k/a
7  American International Specialty Lines Insurance Company

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11 | **TAYLOR MORRISON, INC.,** f/k/a **Taylor**            | Case No. CV09-08651 FMC (PLAx)
   | **Woodrow, Inc.,** a Delaware corporation;
12 | **TAYLOR MORRISON SERVICES, INC.,** f/k/a            | **DECLARATION OF JANET SHIPES**
   | **Morrison Homes, Inc.,** a Delaware corporation;   | **IN SUPPORT OF MOTION TO**
13 | and **TAYLOR WOODROW COMMUNITIES**                   | **TRANSFER VENUE UNDER 28 U.S.C.**
   | **AT VASARI, L.L.C.,** a Florida limited liability   | **§1404(a)**
14 | company,

15                Plaintiffs,                            Date:
                                                         Time:
16         v.                                            Place: CTRM 1600

17 **AMERICAN INTERNATIONAL SPECIALTY**
   **LINES INSURANCE COMPANY,** an Illinois
18 corporation,

19                 Defendant.

20
     I, Janet Shipes, declare as follows:
21
          1.     I am a Complex Director with Chartis Claims, Inc., the authorized representative of
22
   Chartis Specialty Insurance Company (Chartis) f/k/a American International Specialty Lines
23
   Insurance Company with respect to the claims at issue in this matter.  I am familiar with the facts
24
   and circumstances regarding the claims brought by the plaintiff and the matters addressed below.
25
          2.     I am submitting this declaration in support of Chartis' Motion to Transfer Venue
26
   Under 28 U.S.C. § 1404(a).
27
          3.     I am over eighteen years of age, competent to testify, and state the following based on
28
   my personal knowledge.

4847-9040-0773.1

4.     Based on the information that Taylor Morrison, Inc. (TMI), Taylor Morrison Services, Inc. (Taylor Services) and Taylor Woodrow Communities at Vasari, L.L.C. (Vasari) (collectively Taylor Morrison) have provided to Chartis, the claims at issue involve at least 137 homes in eight residential developments located in or near St. Petersburg, Florida and south along the Florida Gulf coast.

5.     Based on documents found in the underwriting files for the Chartis insurance policies at issue, each policy was negotiated primarily between underwriters located in Atlanta, Georgia and New York, New York and brokers representing Taylor Morrison located in Tampa, Florida. Mark DeLillo, the Florida-based risk manager for Taylor Morrison also participated in the negotiations for one or more of the policies.

6.     Based on the underwriting files and Chartis' records, when Taylor Morrison obtained the policies at issue, it negotiated separate coverage for its operations in California. Those additional policies are not at issue in this litigation or the claims involving drywall installed in Florida homes.

7.     Based on records found in the claims file with respect to the claims at issue, Taylor Morrison's risk manager, Mark A. DeLillo, submitted the initial claim for coverage. The claims correspondence indicates that Mr. DeLillo works in an office in Bradenton, Florida.

8.     The first claims examiner for the claim by Taylor Morrison that is the subject of this matter was located in New York, New York and the claim was then handled by an examiner in Phoenix, Arizona. In approximately August 2009, I became the examiner for the claims tendered by Taylor Morrison that are the subject of this matter. My office is located in Santa Ana, California.

9.     Each claims examiner has communicated with Taylor Morrison through Mr. DeLillo about the claim that is the subject of this matter.

10.     I have met in Florida with Mr. DeLillo and other representatives of Taylor Morrison to discuss the claim at issue in this matter.

11.     No claims examiner has had sole responsibility for handling the claim. Each claims examiner has consulted with other employees of Chartis Claims, Inc., located in New York, New York.

4847-9040-0773.1                                                    -2-

12.    The primary claim file maintained by the claims examiner is located in California but other claims materials are located in New York.

13.    The primary underwriting file maintained by the underwriter is located in Georgia but other underwriting materials are located in New York.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 21, 2009.

Janet Shipes, Declarant

# EXHIBIT L

**Chartis**
**One MacArthur Place, Suite 500**
**Santa Ana, CA.  92707**
**714.436.3934 (phone)**
**714-436-5650 (fax)**
Janet.shipes@chartisinsurance.com



# CHARTIS

December 4, 2009

<u>VIA US MAIL And EMAIL:  (MDelillo@taylormorrison.com)</u>

Mr. Mark A. DeLillo, ARM
North American Risk Manager
Taylor Morrison, Inc.
8430 Enterprise Circle, Suite 100
Bradenton, Florida 34202

|  |  |  |
|---|---|---|
| **Re:** | **Chinese Drywall Lawsuits and Potential Claims** | |
| | **Lawsuits:** | ***Culliton v. Taylor Morrison Services, Inc.*, No. 2008 CA 012639** |
| | | **NC (Cir. Ct. Sarasota Cty, Fla.)** |
| | | ***Vickers v. Knauf Gips KG*, No. 09-20510 (S.D. Fla.)** |
| | | ***Galvin v. Knauf Gips KG*, No. 09-20847 (S.D. Fla.)** |
| | **Claims:** | **Potential Claims Identified on 4/20/09 Spreadsheet** |
| | **Insured:** | **Taylor Morrison, Inc.** |
| | **Policies:** | **7412123 (eff. 3/1/06 to 3/1/07)** |
| | | **7412254 (eff. 3/1/07 to 3/1/08)** |
| | | **7412431 (eff. 3/1/08 to 3/1/09)** |
| | **Our File:** | **169-285151** |

Dear Mr. DeLillo:

Chartis Claims Inc. is the claims administrator for Chartis Specialty Insurance Company ("CSIC"), formerly known as American International Specialty Lines Insurance Company ("AISLIC").  CSIC issued to Taylor Woodrow, Inc., Homebuilders  Umbrella policy nos. 7412123, effective March 1, 2006, to March 1, 2007 ("2006 policy") and 7412254, effective March 1, 2007, to March 1, 2008 ("2007 policy").  CSIC issued to Taylor Morrison, Inc., Homebuilders Umbrella policy no. 7412431, effective March 1, 2008, to March 1, 2009 ("2008 policy").  Based on the available information, it appears that Taylor Morrison, Inc., is the successor-in-interest to Taylor Woodrow, Inc., by name change.  This letter will refer to both companies collectively as "Taylor Morrison".  I am writing to advise you of CSIC's position regarding coverage for Taylor Morrison with respect to the lawsuits and potential claims referenced above.  The 2006, 2007 and 2008 policies provide coverage only in excess of a self

Mr. Mark DeLillo
December 4, 2009
Page 2 of 11

insured retention. CSIC has not received information confirming that any applicable self insured retention in any of these three policies has been exhausted. Nonetheless, CSIC reviewed the lawsuits and claims referenced above and determined that there are issues regarding coverage. CSIC reserves its rights to decline coverage and requests additional information as discussed below.

CSIC appreciates and values Taylor Morrison as a customer and is committed to working closely with it in this matter. We expect that you may have questions after reading this letter regarding CSIC's position and the practical impact of the reservation of rights. Please contact me with any questions about CSIC's coverage position or to discuss how CSIC will handle any claim.

When considering the request for coverage, CSIC reviewed the 2006 policy, the 2007 policy, the 2008 policy and the information available to CSIC at this time. **Attached to this letter as Exhibit 1 are the relevant provisions of these three policies for your convenient review.** Please refer to the policies for their complete terms and conditions.

Taylor Morrison may also be a named insured under other commercial umbrella policies CSIC issued. CSIC will address its position with respect to coverage under those policies in separate letters. If you believe that Taylor Morrison is entitled to coverage under another policy issued by any other member company of Chartis Inc., please notify the company as provided in that policy.

Taylor Morrison has notified CSIC about three lawsuits and various potential claims.[1] In *Culliton v. Taylor Morrison Services, Inc.*, the plaintiff alleges in an amended class action complaint filed on approximately January 26, 2009, that she owns a home located in Bradenton, Florida built by Taylor Morrison Services, Inc. ("Taylor Services"), the alleged successor to Morrison Homes, Inc. Culliton alleges that Taylor Services installed in her home drywall manufactured in China by another defendant. According to Culliton, the drywall releases toxins and emits carbon disulfide, carbonyl sulfide and hydrogen sulfide gases that cause a bad odor, corrode various metals in her home, and contaminate her property. Culliton seeks certification of a class including all individuals who after January 20, 2005, purchased from Taylor Services or its affiliates a home in Florida containing drywall manufactured in China.

The seven plaintiffs in *Vickers v. Knauf Gips KG* filed a class action complaint on approximately March 3, 2009, alleging that they own homes located in Homestead, Cape Coral and Bonita Springs, Florida built by different companies. Two plaintiffs, Walter Niemczura and Jim Tarzy, claim that their homes were built by Taylor Woodrow Communities at Vasari, L.L.C. ("Taylor Vasari"). All the plaintiffs claim that the builders, including Taylor Vasari, installed defective drywall manufactured in China by other defendants. According to the plaintiffs the drywall emits various sulfide gases and/or other chemicals through "off-gassing" that create noxious odors and corrode HVAC components, electrical wiring, appliances, plumbing fixtures, computer wiring and other personal property. They also claim that exposure to the gases has

---

[1] By letter dated April 22, 2009, you advised us of potential claims involving some 87 houses identified in a spreadsheet, dated April 20, 2009, accompanying your letter.

Mr. Mark DeLillo
December 4, 2009
Page 3 of 11

caused health problems and placed the plaintiffs at an increased risk of disease. They seek damages and an injunction requiring defendants to create a medical monitoring program. Plaintiffs seek certification of a class including all owners and residents of homes in Florida built by Taylor Vasari that contain defective drywall that emits excessive levels of sulfur.

Larry and Rene Galvin filed a complaint on April 1, 2009, in *Galvin v. Knauf Gips, KG* alleging that Taylor Vasari built their home located in Bonita Springs, Florida. According to plaintiffs, the house contains drywall manufactured in China by other defendants. Plaintiffs claim that the drywall emits various sulfide gases and/or other chemicals through off-gassing, that create noxious odors and corrode HVAC components, electrical wiring, appliances, plumbing fixtures, computer wiring and other personal property. They also allege that the sulfides may cause health problems and seek damages and an injunction requiring defendants to create a medical monitoring program.

Taylor Morrison has advised CSIC of drywall claims involving eighty-seven homes with Chinese drywall. These houses are identified in a spreadsheet dated April 20, 2009, that Taylor Morrison provided to CSIC as an enclosure with a letter dated April 22, 2009. The claims include the homes that are at issue in *Culliton*, *Vickers* and *Galvin*. The houses are located in the following fifteen developments:

| | | |
|---|---|---|
| 1. | Palma Sola Trace | 3 homes with closing dates in December 2006 and March 2007 |
| 2. | Lucaya/Sonsette | 2 homes with closing dates in November and December 2006 |
| 3. | Lucaya | 1 home with a closing date in March 2008 |
| 4. | Vasari Arezzo | 1 home with a closing date September 2006 |
| 5. | Vasari Bellino | 15 homes with closing dates from June to November 2006 |
| 6. | Vasari Firenze | 11 homes with closing dates from September to November 2006 |
| 7. | Vasari Matera #4 | 4 homes with closing dates in May and June 2006 |
| 8. | Vasari Matera | 3 homes with closing dates in June 2006 |
| 9. | Vasari Cassia | 19 homes with closing dates from September to December 2006 and March and April 2007. One home (listed as No. 52) has no reported closing date. Please provide. |

Mr. Mark DeLillo
December 4, 2009
Page 4 of 11

| 10. | Herons Glen | 4 home with closing dates in April, November and December 2006 |
| 11. | Avalon Preserve | 1 home with a closing date in November 2007 and 2 models |
| 12. | Greenbrook | 7 homes with closing dates from June to October 2006 and April 2007 |
| 13. | Oakley Place | 1 home with a closing date in November 2006 |
| 14. | Aberdeen | 1 home with a closing date in June 2006 and 1 in inventory |
| 15. | Crystal Lakes | 9 homes with closing dates from August 2006 to October 2007 and 1 in inventory |

To facilitate our continuing investigation, please provide information about these claims, including the nature and extent of any alleged property damage and bodily injury, the status of the claims, and any response to date. Additional information is also requested at the end of this letter. If any other homeowners make claims or commence a lawsuit against Taylor Morrison, please notify me as soon as possible and provide whatever information and documents are available regarding such claims and lawsuits.

### Reservation of Rights

The 2006, 2007 and 2008 policies require CSIC to "pay on behalf of the Insured those sums in excess of the Self-Insured Retention that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury [or] Property Damage . . . to which this insurance applies . . . ." The term "Insured" includes the "Named Insured" and other persons identified in the applicable endorsement.

CSIC reserves the right to decline coverage to the extent that an entity that is the subject of a lawsuit or claim is not an insured under the 2006, 2007 or 2008 policy. Taylor Vasari, which is named as a defendant in *Vickers*, is listed in an endorsement of the policies as a Named Insured. Taylor Services, which appears to be the successor to Morrison Homes, Inc., is named as a defendant in *Galvin* and *Culliton*. That company, however, is not listed in the applicable endorsement under the 2006 policy and it does not otherwise appear to be an insured under that policy. CSIC does not have any information indicating to whom the eighty-seven claims identified above were made. Please identify each entity to which a claim has been made and indicate each entity that Taylor Morrison contends qualifies as an insured under the 2006, 2007 and 2008 policies.

Mr. Mark DeLillo
December 4, 2009
Page 5 of 11

With respect to any insured, CSIC is only required to pay "those sums in excess of the Self Insured Retention that the Insured becomes legally obligated to pay . . . ." The 2006 and 2007 policies apply in excess of a $1 million each occurrence indemnity only self-insured retention. The 2008 policy applies in excess of a $2 million each and every occurrence indemnity only self-insured retention. Each of the three policies provides that amounts paid for defense costs do not reduce the self-insured retention. Once a self-insured retention is exhausted by payment of "Loss" and other conditions are satisfied, CSIC has the right but not the duty to defend any "Suit". The term "Loss" is defined as "those sums actually paid as judgments or settlements." If an insured has other insurance that covers a Loss, amounts received through that insurance to pay the Loss may be applied to reduce the self-insured retention. Any sums received through that insurance to defend a Suit or investigate a claim will not reduce the retention. CSIC has not received any information indicating that any applicable self-insured retention under the 2006 policy, 2007 policy or 2008 policy has exhausted, and CSIC has no obligations under any policy at this time. Please inform us if any applicable self insured retention exhausts under any of the three policies.

Although CSIC has no duty to defend Taylor Morrison, it will participate in the defense of it. The 2006, 2007 and 2008 policies provide that CSIC has "the right, but not the duty, to participate in the defense of any Suit and the investigation of any claim to which this policy may apply." CSIC has retained Hilarie Bass, Esquire, of the law firm Greenberg Traurig, 1221 Brickell Avenue, Miami, Florida 33131 (telephone: 305-579-0745), to participate in the defense of Taylor Morrison. Ms. Bass has extensive experience in litigation and the defense of developers in claims involving construction defect, including Chinese drywall. She is currently representing other developers in connection with drywall claims and lawsuits pending in State and Federal courts, and CSIC believes that its developer insureds, such as Taylor Morrison, will benefit from her counsel. Although CSIC has retained Ms. Bass and will be responsible for her fees and costs, she will represent Taylor Morrison, and her duty of loyalty will run to Taylor Morrison. We request that you confer with your current defense counsel and contact Ms. Bass at your earliest convenience to discuss her role and how she may benefit Taylor Morrison.

CSIC must pay only those sums that an insured is legally obligated to pay as "damages" for which the insured is liable because of bodily injury or property damage. In each lawsuit referenced above, plaintiffs seek equitable relief, injunctive relief and medical monitoring. With these forms of relief, it does not appear that plaintiffs are seeking to recover damages, monetary compensation for bodily injury or property damage. CSIC reserves the right to decline coverage to the extent that the relief does not constitute damages because of bodily injury or property damage.

The term "bodily injury" is defined in each of the three policies as "bodily injury, sickness or disease sustained by any person, including death or mental anguish resulting from any of these at any time." Some claimants assert that they have suffered adverse health effects due to the drywall in their homes. CSIC reserves the right to decline coverage to the extent that these individuals have not suffered bodily injury as defined in the policies. Some claimants also allege that there may be an increased risk of future health problems. CSIC reserves the right to decline

Mr. Mark DeLillo
December 4, 2009
Page 6 of 11

coverage for such claims because they do not involve bodily injury that a claimant has actually suffered during the applicable policy period.

The 2006, 2007 and 2008 policies provide that property damage is defined, in part, as "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured." In this case, some claimants allege that defective drywall installed in their homes has damaged the homes and personal property. Defective drywall is not property damage. Therefore, there is no coverage under the CSIC policies for any costs arising out of the process of repairing and replacing the drywall (*e.g.* painting, millwork, cabinetry, countertops, *etc.*). Any damages caused by the drywall to other property may constitute property damage that is potentially covered under these three policies. CSIC cannot determine at this time what damages, if any, are covered based on the limited information provided to us. CSIC requests that Taylor Morrison provide it with information concerning the nature, cause and extent of the alleged damages, any plan to remediate those damages, any work performed or proposed to remediate the damages, and all estimated and actual costs for any remediation, as well as any settlement or release agreements that are executed by claimants related to any repair or remediation regarding these claims.

The 2006, 2007 and 2008 policies apply only if the "Bodily Injury or Property Damage is caused by an Occurrence . . . ." With respect to bodily injury and property damage, the term "occurrence" is defined in part as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions . . . ." If there is "continuing or progressively deteriorating damage over any length of time, such damage shall be one Occurrence . . . ." Based on the policy language and the information CSIC has received to date, the installation of drywall in homes in each development appears to be a single proximate, uninterrupted and continuing cause of any alleged damages suffered by all homeowners in that development. In light of the information available, CSIC will treat each development as a separate occurrence for which the insured must exhaust a separate self insured retention. CSIC, however, reserves the right to reevaluate this position based on any new information that it receives.

Any continuing or progressive damage is "deemed to occur only when such damage first commences." At this time, CSIC does not have sufficient information to determine when drywall installed in any development began to cause any bodily injury or property damage, if at all. For each development, the policy in effect when bodily injury, property damage or both first commences may provide coverage for claims involving homes in that development. CSIC reserves the right to decline coverage under each of its policies to the extent that bodily injury, property damage or both did not first commence within the respective policy period.

The 2006, 2007 and 2008 policies apply only if the bodily injury or property damage "occurs during the Policy Period" or it "occurred after the end of the Policy Period and within the applicable statute of limitations or within ten (10) years from . . . the Unit close of escrow, whichever is less, and arising out of a Unit . . ., the deed or title to which was recorded in the name of the original third party purchaser . . . during the Policy Period . . . ." A "Unit" is defined, in part, as a "home . . . built by the Insured or financed by the Insured and sold to an unrelated third party." CSIC reserves the right to decline coverage for any bodily injury or

Mr. Mark DeLillo
December 4, 2009
Page 7 of 11

property damage that occurs outside the 2006, 2007 or 2008 policy periods, or involves a house
for which a deed or title was recorded in the name of the original third-party purchaser outside
the 2006, 2007 or 2008 policy period.

Each of these three policies provides that it applies to bodily injury or property damage only if
certain designated persons were unaware prior to the policy period that bodily injury or property
damage had occurred. If any such person knew of bodily injury or property damage before the
policy period, "any continuation, change or resumption of such Bodily Injury [or] Property
Damage . . . during or after the Policy Period will be deemed to have been known prior to the
Policy Period." CSIC does not know what knowledge, if any, any designated persons had about
any bodily injury or property damage arising from the drywall, or when such persons learned the
information. Please provide us with all information concerning what any insured learned about
actual or potential injuries allegedly due to the drywall in the developments listed above, and
when the insured learned the information. CSIC reserves the right to decline coverage to the
extent that any insured knew about bodily injury or property damage arising from the drywall
prior to the applicable policy period.

These three policies do not apply under Exclusion D to "any liability for which the Insured is
obligated to pay damages by reason of the assumption of liability in a contract or agreement"
except as provided in the policy. CSIC reserves the right to decline coverage if this exclusion
applies.

Under Exclusion E, the policies do not apply to "Property Damage to Impaired Property or
property that has not been physically injured, arising out of . . . [a] defect, deficiency, inadequacy
or dangerous condition in Your Product or Your Work . . . ." CSIC reserves the right to assert
this exclusion to the extent that it applies.

Exclusion F.1. of each policy provides that there is no coverage for property damage to "property
you own, rent, or occupy, including any costs or expenses incurred by you, or any other person,
organization or entity, for repair, replacement, enhancement, restoration or maintenance of such
property for, any reason, including prevention of injury to a person or damage to another's
property . . . ." According to the information received to date, Taylor Morrison or a related
entity appears to own four homes in which Chinese drywall was installed. CSIC reserves the
right to decline coverage under this exclusion for any property damage arising in any house
owned by Taylor Morrison or any other insured.

Each of the three policies bars coverage under Exclusion F.5. for property damage to "that
particular part of real property on which you or any contractors working directly or indirectly on
your behalf are performing operations, if the Property Damage arises out of those operations . . .
." CSIC reserves the right to decline coverage for any property damage that arose out of on-
going operations by or on behalf of any insured.

Each policy also precludes coverage under Exclusion F.6. for property damage to "that particular
part of any property that must be restored, repaired or replaced because Your Work was

Mr. Mark DeLillo
December 4, 2009
Page 8 of 11

incorrectly performed on it." CSIC reserves the right to decline coverage for any property damage that falls within this exclusion.

Coverage is barred under Exclusion H. of each policy for property damage to "Your Work arising out of it or any part of it and included in the Products-Completed Operations Hazard." To the extent that a residential development constitutes an insured's work, CSIC reserves the right to decline coverage for any property damage to that work.

The policies do not apply under Exclusion M. to any bodily injury or property damage "expected or intended from the standpoint of any Insured." CSIC reserves the right to decline coverage if this exclusion applies.

There is no coverage under Exclusion O. for "any liability or any other Loss, injury, damage, cost or expense . . . arising from . . . clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or part" by "fungus(i)", "mold(s)", "spore(s)", mildew or yeast, as those terms are used in the policy. CSIC reserves the right to decline coverage to the extent this exclusion applies.

Exclusion V. bars coverage for bodily injury and property damage "arising out of, based on, or involving, the continuation of, during the Policy Period, any pre-existing damage and/or defects known to any Insured before the effective date of this policy." CSIC reserves the right to decline coverage based on this exclusion.

There is no coverage under Exclusion W. for bodily injury or property damage "included in the Products-Completed Operations Hazard arising out of a Unit, the deed or title to which was recorded in the name of a third party prior to the inception of the policy." Under this exclusion, CSIC has no coverage obligations with respect to damages arising from homes where the deed or title was recorded in the name of a third-party before the policy incepted. CSIC reserves the right to decline coverage under this exclusion.

Each policy provides under Exclusion X. that the insurance does not apply to bodily injury or property damage "arising out of any professional services performed by or on behalf of the Insured . . . ." CSIC reserves the right to decline coverage under this exclusion if any bodily injury or property damage at issue arose from professional services performed by or on behalf of an insured.

The three policies do not apply under Exclusion Y. to "damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of . . . Your Product . . . Your Work . . . or Impaired Property . . . if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it." CSIC reserves the right to decline coverage to the extent that this exclusion applies.

Mr. Mark DeLillo
December 4, 2009
Page 9 of 11

As modified by endorsement, Exclusion U of each policy bars coverage for bodily injury and property damage arising from "pollutants," as defined in the policy. CSIC reserves the right to decline coverage based upon this exclusion.

The policies also preclude coverage for Bodily Injury and Property Damage arising out of certain joint ventures and co-ventures, joint operating agreement or partnership or wrap-up or similar rating plans. CSIC reserves its right to decline coverage under the Wrap-Up and Joint Venture endorsement of the policies.

The conditions in each policy require that an insured must immediately provide "copies of any reports, notices, summonses or legal papers received or prepared by you or any person or organization acting on your behalf in connection with [a] claim or Suit . . . ." An insured must also "cooperate with [CSIC] in the investigation or settlement or defense of [a] claim or Suit . . . ." Finally, no "Insureds will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent . . . ."

### Request for Information

In addition to the information requested above, CSIC requests that Taylor Morrison provide the following information:

1.  Identify each developer entity for each development and state the basis on which Taylor Morrison contends that each such entity qualifies as an insured under the 2006, 2007 and 2008 policies.

2.  State the earliest date on which Taylor Morrison contends that the property damage at issue in the above-referenced claims commenced at each development at issue.

3.  State the earliest date on which Taylor Morrison contends that any bodily injury at issue in the above-referenced claims commenced at each development at issue.

4.  Provide details regarding the eighty-seven claims at issue, including the status of the claims, the damages asserted, and your response to such claims. If any new claims are made, notify us immediately and provide details as soon as they are available, including the close of escrow date for each home.

5.  State the extent of impairment or reduction of the retention for each development under the 2006, 2007 and 2008 policies.

6.  Provide all information concerning what any insured learned about any actual or potential property damage and bodily injury allegedly related to drywall at any development and when the insured learned the information.

Mr. Mark DeLillo
December 4, 2009
Page 10 of 11

7.  Identify the subcontractor, if any, who installed the drywall in the homes for
which claims have been made.  If a subcontractor did not install the drywall,
identify who did so.

8.  To the extent that a subcontractor installed the drywall at issue, provide a copy of
each contract between Taylor Morrison or its affiliate and the subcontractor,
including all insurance requirements, certificates of insurance and indemnification
requirements relating to each contract.  Also provide a copy of all subcontractor
insurance policies, or, to the extent you do not have a copy, please request one.

9.  To the extent Taylor Morrison has formulated any plan or proposal to repair or
remediate any of the houses at issue, provide a copy of the plan or proposal.

10. Provide each report regarding testing or inspection of any of the houses at issue in
connection with the allegations of damage caused by drywall.

11. Provide a list of all houses at issue that Taylor Morrison or any other insured
currently owns.

12. Identify for each house at issue whether or not the house was constructed as part
of a "wrap-up" insurance policy (e.g. OCIP or CCIP) or similar rating plan.

CSIC's coverage position is based on the information presently available to it. The investigation
is ongoing. This letter is not, and should not be construed as, a waiver of any terms, conditions,
exclusions or other provisions of the 2006, 2007 and 2008 policies, or any other insurance policy
issued by CSIC or any of its affiliates.  CSIC reserves all its rights under each policy, including
the right to assert additional defenses to any claims for coverage if subsequent information
indicates that such action is warranted.

If Taylor Morrison has any additional information that would cause CSIC to review its position
or would assist CSIC in its investigation or determination, please advise me as soon as possible.
If Taylor Morrison is served with any additional claims, demands, complaints or pleadings,
please forward them to me immediately so that CSIC can review its coverage position.

If you wish to have this matter reviewed, you may contact the following:

State of Florida
Department of Insurance Regulation
200 East Gaines Street
Tallahassee, Florida 32399-0305
850-413-3140

CSIC values Taylor Morrison as customers and I encourage you to contact me if you have any
questions or concerns regarding this letter. Thank you for your cooperation.

Mr. Mark DeLillo
December 4, 2009
Page 11 of 11

Sincerely,

Janet Shipes
Complex Director

Enc:    Exhibit 1 / Relevant Policy Provisions

c.c.    Jeffrey Masters, Esq./Cox, Castle & Nicholson (Via Email: jmasters@coxcastle.com)

1099506v.1

## EXHIBIT 1

The following are excerpts from AISLIC (n/k/a/ Chartis Specialty Insurance Company) Homebuilders Umbrella Liability Policy Nos. 7412123, effective March 1, 2006, to March 1, 2007, 7412254, effective March 1, 2007, to March 1, 2008, and 7412431, effective March 1, 2008, to March 1, 2009.  Please consult each policy for the complete terms.

* * *

**I.     INSURING AGREEMENT: EXCESS LIABILITY OVER INSURED'S SELF-INSURED RETENTION AND SCHEDULED UNDERLYING INSURANCE**

A.     **Coverage A:  Excess Liability Over Insured's Self-Insured Retention.**

We will pay on behalf of the **Insured** those sums in excess of the **Self-Insured Retention** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage,** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**

Coverage A will be provided according to the terms, definitions, conditions and exclusions of this policy.

* * *

C.     This policy applies, only if:

1.     a.     the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period,** or

b.     the **Bodily Injury** or **Property Damage** occurred after the end of the **Policy Period** and within the applicable statute of limitations or within ten (10) years from the common area transfer of title or from the **Unit** close of escrow, whichever is less, and arising out of a **Unit** or **Common Area,** the deed or title to which was recorded in accordance with applicable law in the name of the original third party purchaser during the **Policy Period,** or

c.     the **Personal Injury and Advertising Injury** is caused by an **Occurrence** arising out of your business, but only if the **Occurrence** was committed during the **Policy Period;** and

2.     prior to the **Policy Period,** no **Insured** shown in paragraph K2 of Section VI, no manager in your risk management, insurance or legal department

and no employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that **Bodily Injury** or **Property Damage** had occurred, in whole or in part or that an **Occurrence** had been committed that caused **Personal Injury and Advertising Injury**. If such an **Insured**, manager or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred or that an **Occurrence** had been committed that caused **Personal Injury and Advertising Injury**, then any continuation, change or resumption of such **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

**Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under Paragraph K2 of Section VI, any manager in your risk management, insurance or legal department or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

    a.    reports all, or any part, of the **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to us or any other insurer;

    b.    receives a written or verbal demand or claim for damages because of the **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury**; or

    c.    becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur or an **Occurrence** has been committed that has caused or may cause **Personal Injury and Advertising Injury**.

\* \* \*

**II.**    **DEFENSE PROVISIONS**

A.    Under Coverage A., we will have the right but not the duty to defend any **Suit** against the **Insured** that seeks damages covered under this policy when the applicable **Self-Insured Retention** has been exhausted by the payment of **Loss**, even if the **Suit** is groundless, false or fraudulent.

\* \* \*

**VI.**    **DEFINITIONS**

\* \* \*

C.    **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death or mental anguish resulting from any of these at any time.

\* \* \*

2

G.    **Fungus(i), Mold(s)** and **Spore(s)** means:

    1.    **Fungus(i)** includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts and mushrooms;

    2.    **Mold(s)** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

    3.    **Spore(s)** means any dormant or reproductive body produced by or arising or emanating out of any **Fungus(i)**, **Mold(s)**, mildew, plants, organisms or microorganisms.

* * *

I.    **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

    1.    it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

    2.    you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    1.    the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

    2.    your fulfilling the terms of the contract or agreement.

* * *

N.    **Loss** means those sums actually paid as judgments and settlements.

* * *

Q.    **Occurrence** means:

    1.    As respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of any **Insured**.

        In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be one **Occurrence** and shall be deemed to occur only when such damage first commences.

3

2.   As respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury** neither expected nor intended from the standpoint of any **Insured**. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

\* \* \*

U.   **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

V.   **Products-Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1.   products that are still in your physical possession; or

2.   work that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:

a.   when all of the work called for in your contract has been completed;

b.   when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

c.   when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

1.   the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

2.   the existence of tools, uninstalled equipment or abandoned or unused materials.

4

W.    **Property Damage** means:

    1.    physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

    2.    loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the **Occurrence** that cause it.

For the purposes of this insurance, "electronic data" is not tangible property.

As used in this definition, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

\* \* \*

Y.    **Self-Insured Retention** means the amount applicable to each **Occurrence** for which the **Insured** is responsible that is shown in the Self-Insured Retention Schedule referenced in Item 4 of the Declarations.

Z.    **Suit** means a civil proceeding in which damages because of **Bodily Injury, Property Damage**, or **Personal Injury and Advertising Injury** to which this policy applies are alleged. **Suit** includes:

    1.    an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

    2.    any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

\* \* \*

BB.    **Unit** means a home, townhouse, or condominium, built by the **Insured** or financed by the Insured and sold to an unrelated third party.

\* \* \*

DD.    **Your Product** means:

    1.    any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        a.    you;

        b.    others trading under your name; or

5

    c.    a person or organization whose business or assets you have acquired; and

2.    containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1.    warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2.    the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

EE.    **Your Work** means:

1.    work or operations performed by you or on your behalf; and

\* \* \*

**VII.   EXCLUSIONS**

\* \* \*

D.    **Contractual Liability**

This insurance does not apply to **any liability** for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1.    that the **Insured** would have in the absence of a contract or agreement; or

2.    assumed in an **Insured Contract**, provided **Bodily Injury** or **Property Damage** occurs subsequent to the execution and prior to the termination of the **Insured Contract**. Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage and included in the Limits of Insurance of this policy**, provided:

    a.    liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

6

b.      such attorney fees and litigation expenses are for defense of that
        party against a civil or alternative dispute resolution proceeding in
        which damages to which this policy applies are alleged.

E.    **Damage to Impaired Property**

This insurance does not apply to any **Property Damage** to **Impaired Property** or
property that has not been physically injured, arising out of:

1.      a defect, deficiency, inadequacy or dangerous condition in **Your Product**
        or **Your Work**; or

2.      a delay or failure by you or anyone acting on your behalf to perform a
        contract or agreement in accordance with its terms.

This exclusion does not apply to loss of use of other property arising out of
sudden and accidental physical injury to **Your Product** or **Your Work** after it
has been put to its intended use.

F.    **Damage to Property**

This insurance does not apply to any **Property Damage** to:

1.      property you own, rent, or occupy, including any costs or expenses
        incurred by you, or any other person, organization or entity, for repair,
        replacement, enhancement, restoration or maintenance of such property
        for any reason, including prevention of injury to a person or damage to
        another's property;

                                    *   *   *

5.      that particular part of real property on which you or any contractors
        working directly or indirectly on your behalf are performing operations if
        the **Property Damage** arises out of those operations; or

6.      that particular part of any property that must be restored, repaired or
        replaced because **Your Work** was incorrectly performed on it.

                                    *   *   *

Paragraph 6 of this exclusion does not apply to any **Property Damage** included
in the **Products-Completed Operations Hazard**.

                                    *   *   *

H.     **Damage to Your Work**

This insurance does not apply to any **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\* \* \*

M.     **Expected or Intended**

This insurance does not apply to any **Bodily Injury, Property Damage,** or **Personal Injury and Advertising Injury** expected or intended from the standpoint of any Insured.  However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

\* \* \*

O.     **Fungus(i), Mold(s) and Spore(s)**

This insurance does not apply to any liability or any other **Loss,** injury, damage, cost or expense, including, but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

1.     Any **Fungus(i), Mold(s),** mildew or yeast; or

2.     Any **Spore(s)** or toxins created or produced by or emanating from such **Fungus(i), Mold(s),** mildew or yeast; or

3.     Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any **Fungus(i), Mold(s),** mildew or yeast; or

4.     Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any **Fungus(i), Mold(s),** mildew, yeast, or **Spore(s)** or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that **Loss,** injury, damage, cost or expense.

\* \* \*

8

V.   **Pre-Existing Damages and/or Defects**

This insurance does not apply to any liability arising out of, based on, or involving, the continuation of, during the **Policy Period**, any pre-existing damages and/or defects known to any **Insured** before the effective date of this policy.

This exclusion shall apply whether or not the **Insured's** legal obligation to pay for such pre-existing damages and/or defects was established before the effective date of this policy.

W.   **Prior Units**

This insurance does not apply to any liability included in the **Products-Completed Operations Hazard** arising out of a **Unit**, the deed or title to which was recorded in the name of a third party prior to the inception of the policy.

X.   **Professional Services**

This insurance does not apply to any liability arising out of any professional services performed by or on behalf of the **Insured**, including but not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs, or specifications, and any supervisory, inspections or engineering work.

Y.   **Recall of Products, Work or Impaired Property**

This insurance does not apply to any damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.   **Your Product;**

2.   **Your Work;** or

3.   **Impaired Property;**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

* * *

**VIII.   CONDITIONS**

* * *

G.   **Duties in the Event of an Occurrence, Claim or Suit**

9

1.  You must see to it that we are notified in writing as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy.  To the extent possible, notice should include:

    a.   how, when and where the **Occurrence** took place;

    b.   the names and addresses of any injured persons and any witnesses; and

    c.   the nature and location of any injury or damage arising out of the **Occurrence**.

    Written notice should be mailed or delivered to:

    > AIG Domestic Claims, Inc.
    > Excess Casualty Claims Department
    > Segmentation Unit
    > 175 Water Street, 22nd Floor
    > New York, NY 10038

2.  You must notify us not later than sixty (60) days after you receive notice of any **Occurrence** that may result in a claim or **Suit** under this policy involving any of the following:

    a.   a fatality;

    b.   severe burns;

    c.   traumatic brain injury;

    d.   dismemberment or amputation;

    e.   paralysis;

    f.   loss or impairment of eyesight or hearing;

    g.   a sexual assault or battery, including, but not limited to, rape molestation, or sexual abuse; or

    h.   any **Occurrence**, claim or **Suit**, which in the reasonable opinion of you or any principal of yours may result in a **Loss** that is equal to or greater than 25% of the **Self-Insured Retention** or **Schedule of Underlying Insurance**.

3.  You and any other involved **Insured** must:

a.    immediately send us copies of any reports, notices, summonses or legal papers received or prepared by you or any person or organization acting on your behalf in connection with the claim or **Suit**;

b.    authorize us to obtain records and other information;

c.    cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

d.    assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

e.    immediately send us copies of title company or other escrow agent statement evidencing the **Unit Close of Escrow** for all properties forming a part of or at issue in the occurrence, claim or **Suit**.

4.    No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent, as respects items G2 and G3 above.

5.    Failure to comply with this Condition G shall result in a forfeiture of coverage under this policy.

80341(1/06)

* * *
### Endorsement

### Total Pollution Exclusion Endorsement

This policy is amended as follows:

**Section VII. EXCLUSIONS**, Paragraph U. **Pollution** is deleted in its entirety and replaced by the following:

#### Pollution

This insurance does not apply to:

1.    Any **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

11

2.    Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3.    Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

\* .\* \*

**Endorsement**

**Wrap-Ups and Joint Ventures Exclusion Endorsement**
**(with Limited Exception)**

This policy is amended as follows:

**Section VII. EXCLUSIONS, Paragraph FF.: "Wrap-Ups"** is deleted in its entirety and replaced by

FF.    Wrap-Ups and Joint Ventures

This insurance does not apply to **Bodily Injury, Property Damage,** or **Personal Injury and Advertising Injury** arising out of any joint venture, co-venture, joint lease, joint operating agreement or partnership, [or any project insured under a] "wrap-up" or any similar rating plan in which the **Insured** has a financial interest and/or there is another excess wrap-up or similar rating plan covering the wrap [up] project.[1]

However, this exclusion does not apply to any joint venture or **Wrap-Up** projects that are located in the states of Florida or Texas, but only with regards to those projects' units having a close of escrow date which is contained within this **Policy Period**.[2]

\* \* \*

However, this exclusion does not apply to any wrap-ups "where units are reported", for coverage in our close of escrow policy with respect to any **Occurrences** happening in the States of Florida & Texas.[3]

---

[1] The language in brackets does not appear in the 2006 policy.

[2] This paragraph appears in the 2007 and 2008 policies. The version in the 2008 policy includes States in addition to Florida and Texas.

[3] This paragraph appears only in the 2006 policy.

12