UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| | * | SECTON "L" |
| THIS DOCUMENT RELATES TO: | * * | |
| Kenneth and Barbara Wiltz, et al. vs. Beijing New Building Materials Public Limited Co., et al. | * * * * | JUDGE FALLON MAG. JUDGE WILKINSON |
| CASE NO.: 2:10-CV-00361-EEF-JCW | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORNADUM IN SUPPORT OF
## JIM MORRIS & SONS, INC.'S RULE 12(B) MOTION TO DISMISS

Defendant Jim Morris & Sons, Inc. ("**Morris**"), files this Memorandum in Support of its Rule 12(b) Motion to Dismiss the claims brought against it in the *Wiltz* Plaintiffs' Omnibus Class Action Complaint (II) ("**Omni II**"). Morris is named in Omni II by Cynthia and Jonathan Scott (the "**Plaintiffs**"). The Plaintiffs are second owners of a home built by Morris in Palm Bay, Florida.

Morris is a family-owned and operated general contractor of single-family homes in Florida. Morris has never manufactured, imported, distributed, or marketed drywall. Morris built the Plaintiffs' home for investors who, in turn, sold the property to the Plaintiffs. Morris hired a sub-contractor to supply and install the drywall in the home made subject of this case. Morris had absolutely no knowledge of any drywall defects. If any entities knew or should have known of such defects, they are the drywall manufacturers, importers, suppliers, and installers. In short, Morris does not belong in Plaintiffs' "catch all" complaint and should be dismissed.

I.   **SUMMARY OF ARGUMENT**

Plaintiffs' overbroad Complaint fails to state a cause of action. This Court should dismiss Morris from this case for the following non-exclusive reasons:

- The negligence claims against Morris fail as a matter of law. Morris sold the Plaintiffs' home to investors who later sold the property to the Plaintiffs. Morris owed the Plaintiffs no duty.

- Plaintiffs' claim for negligence per se is predicated on Morris' alleged breach of state building codes. Under Florida law, violations of state building codes cannot establish per se negligence. Furthermore, Plaintiffs do not even identify the codes that Morris violated.

- Plaintiffs' strict liability claim fails because Morris is not a drywall manufacturer, nor is drywall a "product" under state law.

- Plaintiffs' tort claims are barred by the Economic Loss Rule. This rule prevents a contractual party from seeking damages in tort for economic losses. Although the Plaintiffs are second owners of the home built by Morris, they are still barred from bringing tort claims against Morris for economic losses.

- Plaintiffs lack the requisite contractual privy with Morris to raise warranty claims.

- Plaintiffs' claim for private nuisance is without merit because Morris did not have possession over the property.

- The overly-broad allegation that Morris violated "various consumer Protection Acts" is a claim for fraud that requires specific pleading, which the Plaintiffs do not offer.

- Plaintiffs do not explain how their remedies at law are insufficient as to permit injunctive relief.

2

- Medical monitoring is not permitted under Florida law.
- Plaintiffs did not "confer a benefit" on Morris, foreclosing their unjust enrichment claim.

## II. BACKGROUND

Plaintiffs filed their *Wiltz* Omnibus Class Action Complaint (II) ("**Omni II**") on February 10, 2010. *See* Case 2:10-cv-00361 Docs. 1 and 1-1 (filed in two parts due to its length). Omni II identifies Jim Morris & Sons, Inc., as a Defendant in the "Developer/Builder" subclass. *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 806. Morris is named in Omni II by Plaintiffs Cynthia and Jonathan Scott. *See* Case 2:10-cv-00361 Doc. 1-9 at p. 16. Morris built the Scotts' home for investors ("first owners") who purchased the home from Morris and then sold it to the second owner Plaintiffs.

The Plaintiffs' general claim is that Morris built their home containing defective drywall about which Morris knew or should have known. In reality, Morris had absolutely no knowledge that the drywall was defective. Morris is named in this litigation alongside many purported manufacturers, importers, suppliers, and installers of Chinese Drywall. But Morris had <u>nothing</u> to do with the manufacture, marketing, distribution, or installation of that drywall. The Plaintiffs admit that Morris did not sell drywall. In fact, Plaintiffs name Morris as a "Developer/Builder." *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 806. Plaintiffs' Complaint offers a laundry list of generic theories of liability without fully distinguishing between, *inter alia*, homebuilders and other defendants or first and second owner plaintiffs. Table 1, below, lists the Plaintiffs' fifteen counts to highlight the "catch-all" nature of Plaintiffs' Complaint.

| Table 1: Plaintiffs' Omnibus Class Action Complaint ("Omni II")[1] ||| 
| (highlighted Counts do not apply to Morris) |||
| Plaintiffs' Count Number | Defendants against which Count is purportedly directed | Plaintiffs' Claim |
| --- | --- | --- |
| I | All Defendants | Negligence |
| II | All Defendants | Negligence Per Se |
| III | All Defendants | Strict Liability |
| IV | All Defendants | Breach of Express and/or Implied Warranties |
| V[2] | Builders Only (on behalf of Plaintiffs who own condominiums in the state of Florida) | Breach of the Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes Section 718.203 |
| VI | Builders Only | Breach of the Implied Warranty of Habitability |
| VII | Builders Only | Breach of Contract |
| VIII[3] | Louisiana Builders Only | Violation of the Louisiana New Home Warranty Act (on Behalf of Plaintiffs who own Homes in the State of LA) |
| IX[4] | Louisiana Plaintiffs against all Defendants | Redhibition |
| X[5] | Manufacturing Defendants (Pleaded in the Alternative against Distributor Defendants) | Louisiana Products Liability Act |
| XI | All Defendants | Private Nuisance |
| XII | All Defendants | Negligent Discharge of a Corrosive Substance |
| XIII | All Defendants | Unjust Enrichment |
| XIV | All Defendants | Violation of Consumer Protection Act |
| XV | All Defendants | Equitable and Injunctive Relief and Medical Monitoring |

Of Plaintiffs' fifteen counts, four do not apply to Morris (V, VIII, IX, and X); seven are tort-based claims (I, II, III, XI, XII, XIII, XV); three are contract claims (IV, VI, and VII); and one is statutory (XIV). None of the claims applicable to Morris states a claim for which relief can be granted. Every one of Plaintiffs' claims against Morris should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

---

[1] See Case 2:10-cv-00361 Docs. 1 and 1-1.
[2] Count V does not apply to Morris because Plaintiffs do not own Florida condominiums.
[3] Count VIII does not apply to Morris because Morris is not a Louisiana builder.
[4] Count IX does not apply to Morris because Morris is not a Louisiana builder.
[5] Count X does not apply to Morris because Plaintiffs identify Morris in neither the manufacturing nor distributor classes.

4

## III. ARGUMENT

### A. Plaintiffs fail to state a claim for negligence (Counts I and XII).

Plaintiffs' negligence claims highlight the "shotgun" approach they take in this litigation. Omni II alleges that Morris owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question. *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 820. The Complaint further alleges that Morris had a duty to provide Plaintiffs with certain warnings about the drywall. *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 823.

Morris simply did not design, manufacture, export, import, distribute, deliver, supply, inspect, market, or sell drywall to the Plaintiffs. Even the Plaintiffs identify Morris as a "Developer/Builder," Subclass #118. *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 806. Morris hired a subcontractor to supply and install the drywall.

The Plaintiffs, Cynthia and Jonathan Scott, bring their claim in Omni II for property they own together at "1984 Gloria Circle, Palm Bay, Florida 32905." *See* Case 2:10-cv-00361 Doc. 1 at ¶ 195. Morris built the Plaintiffs' home at this address pursuant to its contract with the original owners, Sidney and Brenda Penner. *See* Construction and Development Contract between Jim Morris & Sons, Inc., and the Penners, attached a Exhibit "A." The City of Palm Bay, Florida, issued a Certificate of Occupancy to the Penners on June 22, 2006. *See* Certificate of Occupancy, attached as Exhibit "B." Later that year, the Penners sold the property to the Scotts.

It is a bedrock principle of tort law that a negligence claim requires the plaintiff to prove, *inter alia*, that the defendant owed a <u>duty</u> to the plaintiff, and that the duty was <u>breached</u>. *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (explaining that, under Florida

5

law, "failure to establish any one of these elements is fatal to the plaintiff's case."). Plaintiffs cannot prove these prerequisites to a negligence claim. Morris owed no duty of care to the Plaintiffs concerning their drywall. Morris had no relationship with the second owner Plaintiffs. Morris sold the Plaintiffs' home to first owner investors (the Penners) who later sold the property to the Plaintiffs.

Additionally, drywall is not the kind of "inherently dangerous" product that carries a duty to inspect or warn. Under Florida law, manufacturers, retailers, and distributors have a duty to inspect or warn <u>only</u> when the product is considered "inherently dangerous." *See O'Connor v. Kawasaki Motors Corp.*, 699 F.Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F.Supp. 481, 483-84 (S.D. Fla. 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous."). Morris is <u>not</u> a manufacturer, retailer, or distributor of drywall. Morris owed no duty to inspect the drywall or warn second owners of possible defects unknown to Morris because Morris is not a manufacturer, retailer, or distributor of drywall and drywall is not inherently dangerous.

Morris had no knowledge of any defective drywall conditions. The drywall in question entered the Plaintiffs' home through an installer that purchased the drywall from a supplier. Morris cannot be held liable for latent defects absent actual or implied knowledge of those defects. *See Carter v. Hector Supply Co.*, 128 So.2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action… only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer Chem. Co.*, 515 So.2d 324, 326 (Fla. 3d DCA 1987).

Absent an "inherently dangerous" product or actual/implied knowledge—neither of which exists in this case—Plaintiffs' negligence claims fail as a matter of law. The self-serving and unsupported assertion that Morris "knew or should have known" that the drywall would "harm" Plaintiffs (*See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 821) does not suffice to state a claim under negligence, and Plaintiffs' Counts I and XII should be dismissed.

### B. Plaintiffs do not state a claim for negligence per se (Count II).

Plaintiffs fail to set forth the essential elements of a negligence per se claim. Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a particular class of persons from a particular type of injury." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So.2d 198, 201 (Fla. 1973). Plaintiffs do not identify a statute that Morris allegedly violated, much less explain how that violation occurred. Instead, the Plaintiffs assert that "Defendants," as an undifferentiated group, violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes." *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 830. Once again, this self-serving, conclusory statement is devoid of factual support. Such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Additionally, the "State and local Building Codes" that Plaintiffs claim Morris violated are "designed to protect the <u>general public</u> rather than a particular class of individuals." *Russ v. Wollheim*, 915 So.2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). Violations of a building code cannot establish per se negligence. *See Russ v. Wollheim*, 915 So. 2d 1285, 1286, n1 (Fla. 2d DCA 2005) (citing *Grand Union Co. v. Rocker*, 454 So. 2d 14 (Fla. 3d DCA 1984)) ("A building code is designed to protect the general public rather than a particular class of

7

individuals, and therefore, violation of a building code is merely evidence of negligence.") Plaintiffs do not identify the alleged code violations or explain how the codes exist to protect Plaintiffs from their alleged injuries. Plaintiffs' negligence per se claim should be dismissed.

### C. Plaintiffs' strict liability claim (Count III) fails under Florida law.

Plaintiffs' strict liability claim is premised on the false assumption that Morris manufactured or distributed drywall, which it did not. Count III alleges that Morris was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 835. But the Plaintiffs identify Morris as a "Developer/Builder." *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 806. Morris never distributed, delivered, supplied, inspected, marketed, or sold drywall.

Strict products liability is reserved for product manufacturers and distributors; it does not apply to a homebuilder like Morris.[6] *See Ugaz v. American Airlines, Inc.*, 576 F.Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claims "are the manufacturers and perhaps other persons in the chain of distribution."); *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly-defective product for purposes of strict liability). Because Morris is a builder that never manufactured or distributed the Plaintiffs' drywall, the Plaintiffs' strict liability claim against Morris must be dismissed.

---

[6] Furthermore, drywall is not a "product" for purposes of this tort. Under Florida strict liability law, drywall is considered a "structural improvement," as it was an integral part of Plaintiffs' home. *See Plaza v. Fisher Dev., Inc.*, 971 So.2d 918, 922-24 (Fla. 3d DCA 2007). "Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc.* No. 07-80767-CIV, 2008 WL 5111260, p. 4 (S.D. Fla. 2008).

**D. Plaintiffs' tort claims (Counts I, II, III, XI, XII, XIII, and XV) are barred in whole or in part by the Economic Loss Rule.**

The Economic Loss Rule ("ELR") bars plaintiffs from circumventing their contractual arrangements through allegations in tort. *See Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 536 & n. 1 (Fla. 2004). Florida law applies the ELR in two contexts:

(1) The contractual privity ELR where two parties are in privity of contract, and
(2) The products liability ELR where a defective product causes damage, but only to itself.

*See* this Court's January 13, 2010, "Order & Reasons," at p. 22, which applies by its terms to all drywall MDL cases.

Florida courts have defined economic loss in contexts such as this one as "damages for inadequate value, costs of repair and replacement of the defective product," and "disappointed economic expectations." *See, e.g., Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1246 (Fla. 1993). Some Plaintiffs, like the *Casa Clara* homeowners, seek purely economic damages, which are, "protected by contract law, rather than tort law."

Although the Plaintiffs are second owners of the home built by Morris, they are still barred from bringing tort claims against Morris for economic losses. In *Casa Clara*, the Florida Supreme Court affirmed the dismissal of homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties. *Id.* at 1248. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. *Id.* at 1247. Because the plaintiffs were seeking only economic damages, the ELR barred their tort claims against the supplier. *Id.* at 1246-48. The Plaintiffs' purely economic claims should be dismissed.

### E. Plaintiffs' warranty claims (Counts IV and VI) and breach of contract claim (Count VII) against Morris should be dismissed because Plaintiffs are second owners of their home and lack contractual privity with Morris.

In Counts IV and VI, Plaintiffs assert claims of breach of express and implied warranties. The Plaintiffs' Complaint does not identify the source of these purported warranties or how Morris might have breached them. Plaintiffs also allege breach of contract in Count VII without specifying Morris' contractual duty. The claims in Counts IV, VI, and VII should be dismissed because Morris did not have a contract with the Plaintiffs.

A plaintiff suing in warranty, "must be in privity of contract with the defendant." *Weiss v. Johansen*, 898 So.2d 1009, 1012 (Fla. 4th DCA 2005); *Cruz v. Mylan, Inc.*, No. 8:09-CV-1106-T17-EAJ, 2010 WL 598688, p. 2 (M.D. Fla. 2010). The Plaintiffs never contracted with Morris. Plaintiffs purchased their home from third parties. Without a showing of contractual privity with Morris, the Plaintiffs' express and implied warranty claims cannot survive. *See, e.g., Borchardt v. Mako Marine Intern., Inc.*, No. 08-61199-CIV, 2009 WL 3856678, p. 4 (S.D. Fla. 2009) (dismissing warranty claims where there was "no allegation… to establish that there [was] privity of contract."). Additionally, Plaintiffs' breach of contract claim fails because, "it is elementary that a person not a party to nor in privy with a contract does not have the right to sue for its breach." *Cibran Enters. Inc. v. BP Prods. N.A., Inc.*, 365 F.Supp. 2d 1241, 1251 (S.S. Fla. 2009). Because no contract existed between Morris and the Plaintiffs, Morris owed Plaintiffs no contractual obligations. Plaintiffs' warranty and breach of contract claims against Morris fail.

### F. Plaintiffs' unjust enrichment claim (Count XIII) fails because Plaintiffs are second owners who have no contractual privity with Morris.

As second owners of their home, the Plaintiffs cannot maintain an unjust enrichment claim against Morris. The elements of unjust enrichment are that

> (1) <u>the plaintiff has conferred a benefit on the defendant</u>; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that <u>it would be inequitable for the defendant to retain the benefit</u> without paying fair value for it.

*Commerce Partnership 8098 Ltd. v. Equity Contracting Co.*, 695 So.2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So.2d 1222, 1227 (Fla. 1st DCA 2005).

The Plaintiffs cannot meet the first or fourth elements of an unjust enrichment claim. As second owners, the Plaintiffs cannot show that they "conferred a benefit" on Morris. Indeed, the Plaintiffs did not pay Morris anything to build their home, which Morris constructed for third parties. Under Florida law, "the plaintiffs must show they directly conferred a benefit on the [defendant]" to sustain a claim for unjust enrichment. *Am. Safety Ins. Serv. v. Griggs*, 959 So.2d 322, 331 (Fla. 5th DCA 2007) (citing *Peoples National Bank of Commerce v. First Union National Bank of Florida*, 667 So.2d 876, 879 (Fla. 3d DCA 1996) (affirming the dismissal of a claim for unjust enrichment brought by a participating lender in development project against a co-participating lender with which the plaintiff had no relationship)). The Plaintiffs did not "enrich" Morris in any sense.

Additionally, there is nothing inequitable or unjust about permitting Morris to retain whatever benefit it received for building the home in which Plaintiffs now live. After all, Morris paid a third party to install the subject drywall. One Florida court explains that,

> [t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit.

11

*Maloney v. Therm Alum Industries Corp.*, 636 So.2d 767, 770 (Fla. 4th DCA 1994), *overruled on other grounds by Commerce Partnership*, 695 So.2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred").

Because the Plaintiffs did not "enrich" Morris and whatever compensation Morris received from the original owners was not retained "unjustly," Plaintiffs' claim for unjust enrichment fails and should be dismissed.

### G. Plaintiffs' claim against Morris for private nuisance (Count XI) should be dismissed because Morris lacks the requisite possession over the allegedly-nuisance property.

An action for private nuisance requires the claimant to establish an injury to his own property in connection with the use of the real property of someone else. *See Jones v. J.B. Trawick*, 75 So.2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").

The Plaintiffs' Complaint does not allege that Morris had ownership or possession of property that injured the Plaintiffs. On the contrary, the nuisance claim is predicated entirely on the allegation that "structures owned by Plaintiffs" are to blame. *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 915. That allegation does not state a claim for private nuisance. *See, e.g.: Morgan v. W.R. Grace & Co.*, 779 So.2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *see also Weaver v. United States*, 809 F.Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]"). Obviously, Morris had neither ownership nor possession of the Plaintiffs' property. Because the Plaintiffs

admit that they, themselves, own the home in question, their claim for private nuisance must be dismissed under Florida law.

### H. In Count XIV, Plaintiffs fail to plead specific facts concerning Morris' allegedly-deceptive acts.

Plaintiffs broadly allege violations of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("**FDUTPA**"). *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 933. A FDUTPA claim comprises three distinct elements: (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages." *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, p. 5 (S.D. Fla. 2007).

Courts examining FDUTPA claims apply the heightened pleading standards of Fed. R. Civ. Pro. 9(b), which requires that, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Specifically, "claims arising under the FDUTPA must be plead with particularity." *Wrestlerunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, p. 3 (M.D. Fla. 2008). *See also, Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, p. 2 (M.D. Fla. 2009) ("Like fraud, a claim pursuant to the FDUTPA... [must] meet the heightened pleading standard under Rule 9(b)[.]").

At a minimum, Rule 9(b) requires a claimant to allege:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth the same basic requirements).

The Plaintiffs' Complaint fails this heightened pleading standard for a FDUTPA claim. Indeed, Plaintiffs fail to allege a single specific fact in support of a claim against Morris. Additionally, because Morris had no contractual relationship or any other dealings with the Plaintiffs, it never made <u>any</u> representations to the Plaintiffs. For failing to satisfy this basic element of a FDUTPA cause of action, the Plaintiffs' claim should be dismissed.

Plaintiffs' claims for personal injury are also expressly precluded by the FDUTPA. The FDUPTA states that it does not apply to, "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F.Supp. 842, 851 (N.D. Fla. 1995). Count XIV must be dismissed for this reason as well. The Court should award attorney's fees to Morris for defeating this claim pursuant to Florida Statute 501.2105(1) (providing that the prevailing party in an action under the FDUPTA, "may receive his or her reasonable attorney's fees and costs from the nonprevailing party.").

## I. Plaintiffs are entitled to neither injunctive relief nor medical monitoring (Count XV).

Plaintiffs' final claim for "Equitable and Injunctive Relief and Medical Monitoring" (Count XV) is a catchall claim that seeks, among other things, an order that Morris "buy back and rescind" its contracts and "create, fund, and support a medical monitoring program." *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 940. This claim should be dismissed.

First, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based. Each of Plaintiffs' substantive claims is due for dismissal. Therefore, this derivative claim for injunctive relief also fails. *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a

14

traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. Pro. 12(b) (failure to state a claim).").

Second, even if one of Plaintiffs' substantive claims survives dismissal, the Court should dismiss the injunctive claim because Plaintiffs fail to allege an inadequate legal remedy or irreparable harm. Injunctions under both federal and Florida law require these elements. *Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, p. 6 (M.D. Fla. 2007) requires that, to state a cause of action for injunctive relief, a plaintiff must allege ultimate facts which, if true, would establish:

> (1) irreparable injury [...], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.

Plaintiffs do not explain how the legal remedies sought elsewhere in their Complaint are inadequate or why Plaintiffs are entitled to the extraordinary remedy of an injunction. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.").

Third, Plaintiffs' request for "medical monitoring" is not permitted under Florida law. The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring. In the Third District, seven elements must be adequately alleged to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substances; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed

15

monitoring regime is reasonably necessary according to contemporary scientific principles.

*Petito v. A.H. Robins Co.*, 750 So.2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm. *Id.*

The Plaintiffs do not allege the requisite elements of a medical monitoring claim. Instead, Plaintiffs set forth a series of legal conclusions without factual detail. *See, e.g., See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 944 ("Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct."). Plaintiffs do not identify any medical condition supposedly caused by their drywall; nor do they identify a monitoring procedure for that supposed condition. Plaintiffs do not even claim to be ill.

Again, legal conclusions do not suffice to support Plaintiffs' cause of action. *See Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadabare recitals" of the elements of a claim inadequate). This Court, like others, should dismiss Plaintiffs' claim for medical monitoring as deficient on the pleadings. *See Jacobs v. Osmoses, Inc.*, No. 01-944-CIV, 2002 WL 34241682, p. 3 (S.D. Fla. 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see also Wyeth, Inc. v. Gottlieb*, 930 So.2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program").

## IV.   CONCLUSION

Table 2, below, provides a summary of why this Court should dismiss each claim against Jim Morris & Sons, Inc., in Plaintiffs' *Wiltz* Class Action Complaint ("Omni II").

| **Table 2: Summary of Morris' Bases for Dismissal from Omni II** |
|---|---|---|---|

| **Plaintiffs' Count Number** | **Defendants against which Count is purportedly directed** | **Plaintiffs' Claim** | **Reason(s) why Plaintiffs' Claim Fails** |
|---|---|---|---|
| I | All Defendants | Negligence | Morris owes no duty to Plaintiffs; Economic Loss Rule ("ELR"); |
| II | All Defendants | Negligence Per Se | Statutes impose no duty on Morris; ELR |
| III | All Defendants | Strict Liability | Morris, as a homebuilder, cannot be held strictly liable under Florida law; ELR |
| IV | All Defendants | Breach of Express and/or Implied Warranties | Plaintiffs lack contractual privity with Morris. |
| V | Builders Only (on behalf of Plaintiffs who own condominiums in the state of Florida) | Breach of the Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes Section 718.203 | Not applicable. |
| VI | Builders Only | Breach of the Implied Warranty of Habitability | Plaintiffs lack contractual privity with Morris. |
| VII | Builders Only | Breach of Contract | Plaintiffs lack contractual privity with Morris. |
| VIII | Louisiana Builders Only | Violation of the Louisiana New Home Warranty Act (on Behalf of Plaintiffs who own Homes in the State of LA) | Not applicable. |
| IX | Louisiana Plaintiffs against all Defendants | Redhibition | Not applicable. |
| X | Manufacturing Defendants (Pleaded in the Alternative against Distributor Defendants) | Louisiana Products Liability Act | Not applicable. |
| XI | All Defendants | Private Nuisance | Morris did not possess the allegedly-nuisance property; ELR |
| XII | All Defendants | Negligent Discharge of a Corrosive Substance | Morris owes no duty to Plaintiffs; ELR |

17

| XIII | All Defendants | Unjust Enrichment | Plaintiffs lack contractual privity with Morris; ELR |
| XIV | All Defendants | Violation of Consumer Protection Act | Plaintiffs fail to plead specific facts; Morris made no representations to Plaintiffs. |
| XV | All Defendants | Equitable and Injunctive Relief and Medical Monitoring | Claim fails along with substantive ones; no evidence of inadequate remedy at law; medical monitoring not permitted under Florida law; ELR. |

Plaintiffs' "shotgun" approach to pleading diverse causes of action against many different types of defendants must be rejected. Morris had nothing to do with the manufacture, marketing, distribution, or installation of Plaintiffs' drywall. Morris does not belong in this litigation. Because each of Plaintiffs' claims is fatally defective, this Court should dismiss Jim Morris & Sons, Inc., under Fed. R. Civ. Pro. 12(b)(6).

Respectfully submitted,

**ADAMS AND REESE LLP**

s/Christopher A. D'Amour
CHRISTOPHER A. D'AMOUR (La. Bar # 26252)
MEGAN HAGGERTY GUY (La. Bar # 26316)
DAVID C. COONS (La. Bar # 32403)
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
***Attorneys for Defendant Jim Morris & Sons, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 25th day of January, 2011.

s/ David C. Coons