## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE MANUFACTURED | * | |
| DRYWALL PRODUCTS LIABILITY | * | MDL No. 2047 |
| LITIGATION | * | |
| | * | |
| | * | SECTON "L" |
| THIS DOCUMENT RELATES TO: | * | |
| | * | |
| Kenneth and Barbara Wiltz, et al. | * | JUDGE FALLON |
| vs. | * | |
| Beijing New Building | * | |
| Materials Public Limited Co., et al. | * | MAG. JUDGE WILKINSON |
| | * | |
| CASE NO.: 2:10-CV-00361-EEF-JCW | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## DEFENDANT JIM MORRIS & SONS, INC.'S
## THIRD-PARTY COMPLAINT AGAINST 1ST DRYWALL, LLC, AND
## CROSS-CLAIM AGAINST TAISHAN GYPSUM CO., LTD.

COMES NOW Defendant/ Third-Party-Plaintiff/ Cross-Claimant, **Jim Morris & Sons, Inc.** ("**Morris**"), by and through its undersigned counsel, and alleges for its Third-Party Complaint against Third-Party Defendant, 1st Drywall, LLC, ("**1st Drywall**"), and Cross-Claim against Defendant/Cross-Defendant, Taishan Gypsum Co., Ltd. ("**Taishan**"), as follows:

### The Parties, Jurisdiction, and Venue

1.     The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Morris

2.     The *Wiltz* Omnibus Class Action Complaint (II) ("**Omni II**") identifies Morris as a Defendant in the "Developer/Builder" subclass.[1]

3.     Morris is named in Omni II by plaintiffs Cynthia and Jonathan Scott.[2]

---

[1] *See* Case 2:10-cv-00361 Doc. 1-1 at ¶ 806.
[2] *See* Case 2:10-cv-00361 Doc. 1-9 at p. 16.

4.      Defendant/ Third-Party Plaintiff/ Cross-Claimant Morris was and is a Florida corporation doing business principally in Melbourne, Florida, where this cause of action arose. At all material times, Morris was a builder of residential homes in Florida.

5.      Morris constructed a single-family residential home for certain investors who ultimately sold the home to the Scott plaintiffs.

6.      The Plaintiffs allege that drywall used in the Morris-constructed home was defective and caused damages to the Plaintiffs.

7.      Morris denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

8.      Plaintiffs also name Defendant/ Cross-Defendant Taishan Gypsum Co., Ltd. as a Manufacturing Defendant.[3]

9.      Cynthia and Jonathan Scott, specifically, identify Taishan as the manufacturer of their drywall.[4]

10.     Morris adopts and incorporates, as if fully set forth herein, paragraph 527 of Omni II identifying Taishan and describing the nature of its business activities.[5]

11.     Upon information and belief, Third-Party Defendant, 1st Drywall, LLC, is an entity organized under Florida law with its principal place of business in Florida.  1st Drywall supplied and installed the Scotts' drywall made subject of this case.

12.     Morris brings this Cross-Claim pursuant to Federal Rule of Civil Procedure 13(g).

13.     Morris brings this Third-Party Complaint pursuant to Federal Rule of Civil Procedure 14.

---

[3] *See* Case 2:10-cv-00361 Doc. 1 at ¶ 527.
[4] *See* Case 2:10-cv-00361 Doc. 1-7 at page 12.
[5] *See* Case 2:10-cv-00361 Doc. 1 at ¶ 527 ("[Taishan] is a foreign corporation doing business in several States […]. Upon information and belief, [Taishan], together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall […].")

14.     Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. § 1367 insofar as Morris' Cross-Claim and Third-Party Complaint arise from the same transactions or occurrences as Plaintiffs' action.  Venue in this district for coordinated or consolidated pretrial proceedings is consistent with the Transfer Order of the Judicial Panel on Multidistrict Litigation (JPML).  *See In re: Chinese-Manufactured Drywall Products Liability Litigation*, 629 F.Supp.2d 1346 (J.P.M.L. Jun. 15, 2009).  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and Third-Party Complaint.

## General Allegations

15.     As set forth in more detail in Omni II, Plaintiffs allege that their homes were built using defective drywall designed, manufactured, and processed in China, and that Morris (as builder) is liable for damages to Plaintiffs.

16.     Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances, and Plaintiffs' personal property (the "**Other Property**").

17.     Plaintiffs further allege that the drywall contained in their Homes was manufactured, processed, distributed, marketed, sold, supplied, and/or installed by either or both of the Cross-Claim/ Third-Party Complaint Defendants.

18.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

19.     Morris contracted with 1st Drywall to supply and install the drywall in the Plaintiffs' home.

20.     Taishan manufactured the drywall that 1st Drywall supplied and installed in the Plaintiffs' home.

21.     At all material times, Taishan and 1st Drywall knew that the drywall in question was going to be used in construction of residential homes.  Taishan and 1st Drywall knew that Morris required and expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

22.     Morris did not know, could not have known, and was not made aware of any problem with the drywall.   The drywall manufactured, processed, distributed, marketed, installed, and/or sold, by Taishan and 1st Drywall for use in the construction of the Homes was not altered and/or otherwise substantively changed by Morris.

23.     For the purpose of this Cross-Claim and Third-Party Complaint only, and not constituting an admission of Plaintiffs' allegations or liability for Morris, and without in any way adopting the Plaintiffs' allegations as true, the allegations set forth in the Plaintiffs' Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by allegedly-defective drywall in the Homes.

24.     Without admitting any liability of damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Plaintiffs' Complaint, at all material times, Taishan and 1st Drywall knew or should have known of the drywall's applications, performance, and dangers.

25.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Plaintiffs' Complaint, Taishan's and 1st Drywall's acts and omissions in manufacturing, processing, distributing, selling, and/or installing the defective drywall directly and proximately caused and/or exposed Morris to substantial liability and damages to Plaintiffs.

26.     Morris did not know, could not have known, and was never informed by Taishan and 1st Drywall that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

27.     Consequently, Taishan and 1st Drywall are liable for any tort or other fault with respect to the use of the allegedly-defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages.

28.     Taishan and 1st Drywall are further liable to Morris for damages in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.  Additionally, Taishan's and 1st Drywall's wrongful conduct also caused damages to Morris, including but not limited to Morris' loss of reputation, goodwill, lost profits, and attorneys' fees.

29.     All conditions precedent to the filing of this Cross-Claim and Third-Party Demand have been performed, excused, or otherwise waived.

### Defendant Jim Morris & Sons, Inc.'s Third-Party Complaint against 1st Drywall, LLC
### (Counts 1-15)

### Count 1- Negligence
### (Against 1st Drywall, LLC)

30.     Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

31.     Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

32.     1st Drywall supplied and installed the drywall in the Homes.

33.     As such, 1st Drywall owed Morris a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect and install drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of Morris's customers; and, (ii) install drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

34.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, 1st Drywall knew or should have known that the drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

35.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, 1st Drywall breached its duty of care to Morris by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it installed in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the manufacturer, importer, wholesaler or distributor of

the drywall 1st Drywall installed; (iii) acquiring, procuring, marketing, distributing, wholesaling installing, and/or selling drywll which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to install drywall that complied with all applicable building and industry standards.

36.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such breaches in 1st Drywall's duty of care were the direct and proximate cause of Morris's injuries, losses, and damages.

37.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, 1st Drywall knew or reasonably should have known that its acts and omissions in marketing and installing defective drywall would expose Morris to substantial liability and damages.  If 1st Drywall had exercised that degree of care that  prudent or reasonably cautious installer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Morris would ensure as a result of marketing, installing defective drywall.

38.     Without admitting any liability or damages to Plaintiffs, Morris was damaged by 1st Drywall's breaches of its duties of care, which directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.  1st Drywall's wrongful

conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Third-Party Defendant, 1st Drywall, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

## Count 2- Common Law Indemnity
### (Against 1st Drywall, LLC)

39.     Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

40.     Plaintiffs in the Complaint allege various claims against Morris for damages caused by defective drywall contained in the Homes.

41.     Morris is not and was not in the business of supplying or installing drywall and had no reason to know or to suspect that there were problems with the drywall supplied/installed by 1st Drywall.  Morris justifiably relied on 1st Drywall to supply/install drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

42.     Morris is entirely without fault for the injuries alleged by Plaintiffs.

43.     Any injuries suffered by Plaintiffs were due to the acts or omissions of 1st Drywall.

44.     A special relationship existed between 1st Drywall and Morris such that any liability imposed upon Morris in this matter will be secondary, passive, solely vicarious, constructive, derivative, or technical to 1st Drywall.  1st Drywall supplied and installed drywall in the Homes pursuant to a Subcontract Agreement with Morris.  Moreover, to the extent that

plaintiffs are successful in proving their claims, the drywall supplied/installed by 1st Drywall was defective and wholly to blame for Plaintiffs' injuries.

45.     As a result of the claims that have been filed against Morris, Morris has incurred losses, damages, costs, attorneys' fees, and expenses due to the alleged failure of 1st Drywall to supply/install drywall fit for its intended purpose, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

46.     If Morris is found to be liable to Plaintiffs, 1st Drywall is liable to Morris for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Morris, including, without limitation, payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for indemnity in its favor against Third-Party Defendant, 1st Drywall, LLC, for compensatory damages plus attorneys' fees, interest, and costs as damages, and for such other relief as the Court deems just and proper.

### Count 3- Contribution Pursuant to Florida Statute 768.31
**(Against 1st Drywall, LLC)**

47.     Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

48.     This is an action, stated in the alternative, against 1st Drywall for contribution pursuant to Section 768.31, Florida Statutes.

49.     Plaintiffs in the Complaint allege various claims against Morris for damages caused by defects in the drywall contained in the Homes.

50.     Without admitting any liability or damages to Plaintiffs, should Morris be found liable, 1st Drywall would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

51.     Morris has not caused or contributed to the damages alleged by the Plaintiffs in this action.

52.     To the extent that any common liability is found with respect to Morris, Morris hereby asserts its right of contribution against 1st Drywall for its pro rata share of the liability.

53.     1st Drywall should be required to repay Morris for any loss, damages, costs, and expenses, including attorneys' fees, Morris is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Morris, in excess of its pro rata share of any common liability.

**WHEREFORE**, Jim Morris & Sons, Inc., demands that judgment be entered against Third-Party Defendant, 1st Drywall, LLC, for its pro rata share of the liability, if any, found against Morris in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### Count 4- Equitable Subrogation
### (Against 1st Drywall, LLC)

54.     Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

55.     This is an action, stated in the alternative, against 1st Drywall for equitable subrogation.

56.     Plaintiffs in the Complaint allege various claims against Morris for damages caused by defects in the drywall contained in the Homes.

57.     Morris is not and was not in the business of supplying or installing drywall and had no reason to know or to suspect that there were problems with the drywall supplied/installed by 1st Drywall.  Morris justifiably relied on 1st Drywall to supply/install drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

58.     Without admitting any liability or damages to Plaintiffs, Morris is not primarily liable for any liability to the Plaintiffs.

59.     To the extent that Morris is required to pay damages for any fault of 1st Drywall to protect its own interests, and not as a volunteer, Morris would be entitled to reimbursement from 1st Drywall under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Morris, including, without limitation, payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Morris and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Morris, as well as reasonable costs and attorneys' fees incurred by Morris in defending against the claims brought by Plaintiffs.

60.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment in its favor and against Third-Party Defendant, 1st Drywall, LLC, for equitable subrogation, as well as attorneys' fees, costs, and interest, together with any such other relief as this Court deems just and proper.

## Count 5- Breach of the Implied Warranty of Merchantability under Common Law
### (Against 1st Drywall, LLC)

61.     Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

62.     This is an action against 1st Drywall for breach of the implied warranty of merchantability under the common law.

63.     1st Drywall supplied and installed drywall in the Homes.  1st Drywall knew that Morris required and expected that drywall it supplied/installed to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and Morris justifiably relied on 1st Drywall's skill and judgment to supply/install such drywall for the construction of residential homes.

64.     Pursuant to the relationship between the parties, 1st Drywall is deemed to have provided Morris with an implied warranty of merchantability as to the drywall materials supplied/installed by 1st Drywall.

65.     The drywall supplied/installed by 1st Drywall for use in the construction of the homes was not altered and/or otherwise substantively changed by Morris.

66.     Pursuant to common law, 1st Drywall warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

12

67.     Plaintiffs in the Complaint allege various claims against Morris for damages caused by defective drywall contained in the Homes.  Morris denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Morris is found liable to Plaintiffs, 1st Drywall breached the implied warranty of merchantability by supplying/installing drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

68.     As a result of the claims that have been filed against Morris, Morris has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of 1st Drywall to supply/install drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending these Claims.  1st Drywall's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill, and lost profits.

69.     1st Drywall is aware of the alleged defective gypsum drywall, but 1st Drywall has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Third-Party Defendant, 1st Drywall, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

**Count 6- Breach of the Implied Warranty of Merchantability
under Florida Statute 672.314
(Against 1st Drywall, LLC)**

70.     Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

71.     This is an action against 1st Drywall for breach of the implied warranty of merchantability under Section 672.314, Florida Statutes.

72.     1st Drywall supplied and installed drywall in the Homes.  1st Drywall knew that Morris required and expected that drywall it supplied/installed to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and Morris justifiably relied on 1st Drywall's skill and judgment to install such drywall for the construction of residential homes.

73.     Pursuant to the relationship between the parties, 1st Drywall is deemed to have provided Morris with an implied warranty of merchantability as to the drywall materials supplied/installed by 1st Drywall.

74.     The drywall supplied/installed by 1st Drywall for use in the construction of the homes was not altered and/or otherwise substantively changed by Morris.

75.     Pursuant to Florida Statute 672.314, 1st Drywall warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

76.     Plaintiffs in the Complaint allege various claims against Morris for damages caused by defective drywall contained in the Homes.  Morris denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the

Homes is defective and not merchantable and Morris is found liable to Plaintiffs, 1st Drywall breached the implied warranty of merchantability by supplying/installing drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

77.     As a result of the claims that have been filed against Morris, Morris has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of 1st Drywall to supply/install drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending these Claims.  1st Drywall's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill, and lost profits.

78.     1st Drywall is aware of the alleged defective gypsum drywall, but 1st Drywall has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Third-Party Defendant, 1st Drywall, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

<u>**Count 7- Breach of the Implied Warranty of Fitness**</u>
**(Against 1st Drywall, LLC)**

79.     Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

80.     This is an action against 1st Drywall for breach of the implied warranty of fitness.

81.     1st Drywall supplied and installed drywall in the Homes.

82.     1st Drywall knew that Morris required and expected the drywall it supplied/ installed to be safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

83.     Morris justifiably relied on 1st Drywall's skill and judgment to supply/install drywall fit for the particular purpose of constructing residential homes.

84.     Pursuant to the relationship between the parties, 1st Drywall is deemed to have provided Morris with an implied warranty of fitness as to the drywall materials supplied/installed by 1st Drywall.

85.     The drywall supplied/installed by 1st Drywall for use in the construction of the Homes was not altered and/or otherwise substantively changed by Morris.

86.     1st Drywall impliedly warranted that the drywall was safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

87.     Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Morris denies that it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in providing that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Morris is found liable to Plaintiffs, 1st Drywall breached the implied warranty of fitness by supplying/installing drywall that was defective and not reasonably fit for use in the construction of residential homes.

88.     As a result of the claims that have been filed against Morris, Morris has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of 1st Drywall to install drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this

action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending these Claims.  1st Drywall's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill, and lost profits.

89.      1st Drywall is aware of the alleged defective gypsum drywall, but 1st Drywall has failed to repair or replace the drywall.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Third-Party Defendant, 1st Drywall, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

**Count 8- Negligent Failure to Warn**
**(Against 1st Drywall, LLC)**

90.      Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

91.      Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

92.      1st Drywall supplied and installed the gypsum drywall in the Home built by Morris.

93.      As such, 1st Drywall owed Morris a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it supplied/installed or disclose any adverse affects associated with the drywall; (ii) warn Morris about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn Morris about any problems or dangers in using the drywall for residential construction.

94.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in the Complaint, 1st Drywall knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

95.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, 1st Drywall knew or should have known that unless it warned Morris of the risk of using the drywall it installed, Morris would suffer harm.  However, 1st Drywall failed to provide an adequate warning of such danger.

96.     Morris did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, Morris had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

97.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, 1st Drywall breached its duty of care to Morris by (i) failing to disclose any defects in the drywall materials it installed which it knew or reasonably should have known about; (ii) failing to warn Morris about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn Morris about any problems or

dangers in using the drywall for residential construction, about which 1st Drywall knew or reasonably should have known.

98.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in 1st Drywall's duty of care were the direct and proximate cause of Morris's injuries, losses, and damages.

99.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, 1st Drywall knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Morris to substantial liability and damages.  If 1st Drywall had exercised that degree of care that a prudent or reasonably cautious installer acting under the same circumstances would exert, it would or could have foreseen that damages to Morris would ensue as a result of failing to disclose and/or warn of drywall defects.

100.    Without admitting any liability or damages to Plaintiffs, Morris was damaged by 1st Drywall's breaches of its duties of care, which directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.  1st Drywall's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Jim Morris & Sons, Inc. demands judgment for damages in its favor and against Third-Party Defendant, 1st Drywall, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 9- Breach of the Post-Sale Duty to Warn
### (Against 1st Drywall, LLC)

101.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

102.    Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

103.    1st Drywall supplied and installed the gypsum drywall in the Home built by Morris.

104.    To the extent Plaintiffs are successful in proving that drywall supplied/installed by 1st Drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the time such drywall left 1st Drywall's control, 1st Drywall knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

105.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, 1st Drywall, as the supplier and installer of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   1st

Drywall breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

106.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

107.    Consumers, such as Morris, to whom a warning might have been provided could have been identified by 1st Drywall

108.    A warning could have been effectively communicated to consumers such as Morris and acted on by them.

109.    At all material times, 1st Drywall knew or should have known of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Morris was unaware of potential dangers and/or risk of harm associated with the use of 1st Drywall's drywall product in residential construction.

110.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable supplier/installer in 1st Drywall's position would have provided a post-sale warning.

111.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Morris was damaged by 1st Drywall's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs,

payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.  1st Drywall's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Third-Party Defendant, 1st Drywall, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>**Count 10- Strict Products Liability**</u>
**(Against 1st Drywall, LLC)**

112.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

113.    This is an action, stated in the alternative, against 1st Drywall for strict products liability.

114.    At all material times, 1st Drywall was in the business of supplying and installing gypsum drywall of the type contained in the Home.

115.    At all material times, the gypsum drywall contained in Plaintiffs' Home was placed into the stream of commence and/or installed by 1st Drywall.

116.    At the time said drywall was placed into the stream of commerce and/or installed by 1st Drywall, 1st Drywall intended that the drywall reach consumers and/or ultimate users of the drywall, such as Morris.

117.    1st Drywall expected the gypsum drywall to reach Morris and/or the Home without substantial change affecting its condition, and the alleged defective gypsum drywall did, in fact, reach Morris and/or the Homes without substantial change affecting that condition.

118.     Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

119.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall supplied and installed by 1st Drywall directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this section and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.  1st Drywall's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Third-Party Defendant, 1st Drywall, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>**Count 11- Strict Products Liability Failure to Warn**</u>
**(Against 1st Drywall, LLC)**

120.     Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

121.     This is an action, stated in the alternative, against 1st Drywall for strict products liability failure to warn.

122.     At all material times, 1st Drywall was in the business of supplying and installing gypsum drywall of the type contained in the Homes.

123.     At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce and/or installed by 1st Drywall.

124.     At the time said drywall was placed into the stream of commerce and/or installed by 1st Drywall, 1st Drywall intended that the drywall reach consumers and/or ultimate users of the drywall, such as Morris.

125.     1st Drywall expected the gypsum drywall to reach Morris and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Morris and/or the Homes without substantial change affecting that condition.

126.     Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

127.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which 1st Drywall was required to provide a warning.  However, 1st Drywall failed to provide an adequate warning of such danger.

128.     Morris did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

129.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because 1st Drywall failed to warn Morris of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.  Without a warning, Morris had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

130.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, 1st Drywall's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.  1st Drywall's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Third-Party Defendant, 1st Drywall, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**Count 12- Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**Florida Statute 501.201, et seq.**
**(Against 1st Drywall, LLC)**

131.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

132.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

133.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

134.    At all material times, Morris was a person and a consumer of drywall as defined under FDUTPA.

135.    At all material times, 1st Drywall engaged in trade or commerce by supplying and installing drywall for consumers, such as Morris.

136.    1st Drywall supplied and installed the gypsum drywall in the Home built by Morris.

137.    At the time 1st Drywall supplied and installed drywall, 1st Drywall represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

138.    Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property including but not limited to the Other Property in the Homes.

139.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time 1st Drywall supplied and installed the drywall in the Homes, 1st Drywall knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

140.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged  in the Complaint, Plaintiffs' claims arise from 1st Drywall's unfair and deceptive conduct in installing defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

141.     To the extent Plaintiffs are successful in proving their claims, 1st Drywall's unfair and deceptive conduct in installing defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

142.     1st Drywall's unfair and deceptive conduct in supplying/installing defective gypsum drywall and/or its failure to disclose that the drywall unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as Morris acting reasonably in the same circumstances, to the consumer's detriment.  A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that

the supplier/installer of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

143.    1st Drywall's unfair and deceptive conduct in supplying/installing defective drywall and/or its failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Morris.

144.    To the extent Plaintiffs are successful in proving their claims, Morris did not get what is bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. 1st Drywall's violations of FDUTPA directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.  1st Drywall's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Third-Party Defendant, 1st Drywall, LLC,, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

## Count 13- Unjust Enrichment
### (Against 1st Drywall, LLC)

145.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

146.    This is an action, stated in the alternative, against 1st Drywall for unjust enrichment.

147.    Plaintiffs in the Complaint allege various claims against Morris for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

148.    1st Drywall supplied and installed the gypsum drywall in the Home built by Morris.

149.    1st Drywall received money from Morris for installing the drywall in the Home, pursuant to the parties' contract.

150.    In delivering such payment, monies and/or funds to 1st Drywall, Morris conferred a benefit, *i.e.*, funds and profit, to 1st Drywall, which had knowledge thereof.

151.    1st Drywall voluntarily accepted and retained the benefit conferred upon it by Morris.

152.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, 1st Drywall's acts and omissions in distributing, installing and/or selling defective drywall directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the

settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.

153.    The circumstances described herein under which 1st Drywall profited from supplying and/or installing drywall make it inequitable for 1st Drywall to retain those funds and profits.

154.    Morris has no adequate remedy at law.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Third-Party Defendant, 1st Drywall, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>**Count 14- Breach of Contract**</u>
**(Against 1st Drywall, LLC)**

155.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

156.    Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

157.    Pursuant to its contract with Morris, 1st Drywall supplied and installed the drywall in the Plaintiffs' home.

158.    Pursuant to its contract with Morris, 1st Drywall owed Morris a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect and install drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of Morris's customers; and, (ii) install drywall materials that were free from defects

and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

159.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, 1st Drywall knew or should have known that the drywall it installed in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

160.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, 1st Drywall breached its contract with Morris by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it installed in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the supplier of the drywall 1st Drywall supplied and installed; (iii) supplying/installing drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to install drywall that complied with all applicable building and industry standards.

161.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such contractual breaches were the direct and proximate cause of Morris's injuries, losses, and damages.

162.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, 1st Drywall knew or

reasonably should have known that its acts and omissions in installing drywall would expose Morris to substantial liability and damages.

163.    Without admitting any liability or damages to Plaintiffs, Morris was damaged by 1st Drywall's breaches of its contract, which directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.  1st Drywall's contractual breach also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Third-Party Defendant, 1st Drywall, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

## Count 15- Violations of Florida Building Code
### (Against 1st Drywall, LLC)

164.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

165.    Pursuant to Section 553.84, Florida Statutes, 1st Drywall is liable to Morris for violations of the Florida Building Code ("Code").

166.    Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

32

167.     1st Drywall supplied and installed the drywall in the Plaintiff's Home.

168.     Plaintiffs may prove that the design and construction of Plaintiffs' home do not comply with the Florida Building Code's requirements.

169.     1st Drywall owed Morris a duty to comply with all applicable Florida Building Codes.

170.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, 1st Drywall knew or should have known that the drywall it supplied/installed in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use in violation of the Florida Building Code

171.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, 1st Drywall violated the Florida Building Code by (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it installed in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the supplier of the drywall 1st Drywall supplied/installed; (iii) supplying/ installing drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to install drywall that complied with all applicable building and industry standards.

172.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such 1st Drywall's actions are the direct and proximate cause of Morris's injuries, losses, and damages.

173.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, 1st Drywall knew or reasonably should have known that its acts and omissions in installing drywall would expose Morris to substantial liability and damages.

174.    Without admitting any liability or damages to Plaintiffs, Morris was damaged by 1st Drywall's violations of the Florida Building Code, which directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.  1st Drywall's actions also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Third-Party Defendant, 1st Drywall, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

**Defendant Jim Morris & Sons, Inc.'s Cross-Claim against Taishan**
**(Counts 16-28)**

**Count 16- Negligence**
**(Against Taishan)**

175.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

176.    Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

177.    Taishan manufactured, distributed, supplied, and/or sold the drywall that was installed in the homes.

178.    As such, Taishan owed Morris a duty to, among other things, exercise reasonable care to (i) investigated and/or inspect, market, distribute, supply, and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of Morris's customers; and, (ii) market, distribute, supply, and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

179.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Taishan knew or should have known that the drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

180.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Taishan breached its duty of care to Morris by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold, and/or supplied for installation in the Home to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the upstream manufacturers, importers, wholesalers or distributors of the drywall components that Taishan sold and/or supplied; (iii) manufacturing, acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Morris with drywall that complied with all applicable building and industry standards.

181.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such breaches in Taishan's duty of care were the direct and proximate cause of Morris's injuries, losses, and damages.

182.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, Taishan knew or reasonably should have known that its acts and omissions in manufacturing, marketing, distributing, supplying, and/or selling defective drywall would expose Morris to substantial liability and damages.  If Taishan had exercised that degree of care that  prudent or reasonably cautious manufacturer and/or distributor acting under the same circumstances would exert, it

would or could have foreseen that the drywall was defective and that damages to Morris would ensure as a result of manufacturing, marketing, distributing, supplying, and/or selling defective drywall.

183.    Without admitting any liability or damages to Plaintiffs, Morris was damaged by Taishan's breaches of its duties of care, which directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.   Taishan's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Cross-Claim Defendant, Taishan, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

<u>**Count 17- Common Law Indemnity**</u>
**(Against Taishan)**

184.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

185.    Plaintiffs in the Complaint allege various claims against Morris for damages caused by defective drywall contained in the Homes.

186.    Morris is not and was not in the business of manufacturing, distributing, supplying, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, distributed, supplied, and/or sold by Taishan.   Morris

justifiably relied on Taishan to manufacutre drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

187.   Morris is entirely without fault for the injuries alleged by Plaintiffs.

188.   Any injuries suffered by Plaintiffs were due to the acts or omissions of Taishan.

189.   A special relationship existed between Taishan and Morris such that any liability imposed upon Morris in this matter will be secondary, passive, solely vicarious, constructive, derivative, or technical to Taishan.  Taishan manufacutred drywall to be installed in the homes. Moreover, to the extent that plaintiffs are successful in proving their claims, the drywall manufactured, distributed, sold, and/or supplied by Taishan was defective and wholly to blame for Plaintiffs' injuries.

190.   As a result of the claims that have been filed against Morris, Morris has incurred losses, damages, costs, attorneys' fees, and expenses due to the alleged failure of Taishan to manufacture, distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

191.   If Morris is found to be liable to Plaintiffs, Taishan is liable to Morris for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Morris, including, without limitation, payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Morris, and/or the settlement of Plaintiffs' claims, as

well as reasonable costs and attorneys' fees incurred by Morris in defending against the claims

brought by Plaintiffs.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for indemnity in its favor

against Cross-Claim Defendant, Taishan, for compensatory damages plus attorneys' fees,

interest, and costs as damages, and for such other relief as the Court deems just and proper.

## Count 18- Contribution Pursuant to Florida Statute 768.31
### (Against Taishan)

192.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as

if fully set forth herein.

193.    This is an action, stated in the alternative, against Taishan for contribution

pursuant to Section 768.31, Florida Statutes.

194.    Plaintiffs in the Complaint allege various claims against Morris for damages

caused by defects in the drywall contained in the Home.

195.    Without admitting any liability or damages to Plaintiffs, should Morris be found

liable, Taishan would also share in the liability to the extent its tortious acts or omissions caused

or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

196.    Morris has not caused or contributed to the damages alleged by the Plaintiffs in

this action.

197.    To the extent that any common liability is found with respect to Morris, Morris

hereby asserts its right of contribution against Taishan for its pro rata share of the liability.

198.    Taishan should be required to repay Morris for any loss, damages, costs, and

expenses, including attorneys' fees, Morris is required to pay to or on behalf of Plaintiffs for the

amount of any judgment entered against Morris in this action and/or any other action brought by

Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims in this action and/or any

other action brought by Plaintiffs against Morris, in excess of its pro rata share of any common liability.

**WHEREFORE**, Jim Morris & Sons, Inc., demands that judgment be entered against Cross-Claim Defendant, Taishan, for its pro rata share of the liability, if any, found against Morris in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

**Count 19- Equitable Subrogation**
**(Against Taishan)**

199.     Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

200.     This is an action, stated in the alternative, against Taishan for equitable subrogation.

201.     Plaintiffs in the Complaint allege various claims against Morris for damages caused by defects in the drywall contained in the Home.

202.     Morris is not and was not in the business of manufacturing, distributing, supplying, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, distributed, supplied, and/or sold by Taishan.  Morris justifiably relied on Taishan to manufacture drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

203.     Without admitting any liability or damages to Plaintiffs, Morris is not primarily liable for any liability to the Plaintiffs.

204.     To the extent that Morris is required to pay damages for any fault of Taishan to protect its own interests, and not as a volunteer, Morris would be entitled to reimbursement from

Taishan under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Morris, including, without limitation, payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Morris and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Morris, as well as reasonable costs and attorneys' fees incurred by Morris in defending against the claims brought by Plaintiffs.

205.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Jim Morris & Sons, Inc. demands judgment in its favor and against Cross-Claim Defendant, Taishan, for equitable subrogation, as well as attorneys' fees, costs, and interest, together with any such other relief as this Court deems just and proper.

## Count 20- Breach of the Implied Warranty of Merchantability under Common Law
### (Against Taishan)

206.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

207.    This is an action against Taishan for breach of the implied warranty of merchantability under the common law.

208.    Taishan manufactured the drywall installed in the Plaintiffs' Home.

209.    Taishan knew that its ultimate consumers required and expected that drywall it manufactured, distributed, supplied, and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and Morris justifiably relied on Taishan's skill and judgment to supply such drywall for the construction of residential homes.

210.    Pursuant to the relationship between the parties, Taishan is deemed to have provided Morris with an implied warranty of merchantability as to the drywall materials manufactured, distributed and/or sold by Taishan.

211.    The drywall manufactured, distributed, supplied, and/or sold by Taishan for use in the construction of the homes was not altered and/or otherwise substantively changed by Morris.

212.    Pursuant to common law, Taishan warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

213.    Plaintiffs in the Complaint allege various claims against Morris for damages caused by defective drywall contained in the Homes.   Morris denies it has any liability to Plaintiffs.   However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Morris is found liable to Plaintiffs, Taishan breached the implied warranty of merchantability by manufacturing, distributing, supplying, and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

214.    As a result of the claims that have been filed against Morris, Morris has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Taishan to manufacture, distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by

Morris in defending these Claims.  Taishan's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill, and lost profits.

215.    Taishan is aware of the alleged defective gypsum drywall, but Taishan has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Cross-Claim Defendant, Taishan, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 21- Breach of the Implied Warranty of Merchantability under Florida Statute 672.314
### (Against Taishan)

216.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

217.    This is an action against Taishan for breach of the implied warranty of merchantability under Florida Statute 672.314.

218.    Taishan manufactured the drywall that was installed in the Plaintiffs' Home.

219.    Taishan knew that consumers such as Morris required and expected that drywall it manufactured, distributed, supplied, and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and Morris justifiably relied on Taishan's skill and judgment to supply such drywall for the construction of residential homes.

220.    Pursuant to the relationship between the parties, Taishan is deemed to have provided Morris with an implied warranty of merchantability as to the drywall materials manufactured, distributed and/or sold by Taishan.

221.    The drywall manufactured, distributed, supplied, and/or sold by Taishan for use in the construction of the homes was not altered and/or otherwise substantively changed by Morris.

222.    Pursuant to Florida Statute 672.314, Taishan warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

223.    Plaintiffs in the Complaint allege various claims against Morris for damages caused by defective drywall contained in the Homes.  Morris denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Home is defective and not merchantable and Morris is found liable to Plaintiffs, Taishan breached the implied warranty of merchantability by manufacturing, distributing, supplying, and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

224.    As a result of the claims that have been filed against Morris, Morris has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Taishan to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending these Claims.  Taishan's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill, and lost profits.

225.    Taishan is aware of the alleged defective gypsum drywall, but Taishan has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Cross-Claim Defendant, Taishan, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

<u>**Count 22- Breach of the Implied Warranty of Fitness**</u>
**(Against Taishan)**

226.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

227.    This is an action against Taishan for breach of the implied warranty of fitness.

228.    Taishan manufactured the drywall installed in the Plaintiffs'' Home.

229.    Taishan knew that consumers like Morris required and expected the drywall it manufactured, distributed, supplied, and/or sold to be safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

230.    Morris justifiably relied on Taishan's skill and judgment to sell drywall fit for the particular purpose of constructing residential homes.

231.    Pursuant to the relationship between the parties, Taishan is deemed to have provided Morris with an implied warranty of fitness as to the drywall materials manufactured, distributed, supplied, and/or sold by Taishan.

232.    The drywall manufactured, distributed, supplied, and/or sold by Taishan for use in the construction of the Homes was not altered and/or otherwise substantively changed by Morris.

233.    Taishan impliedly warranted that the drywall was safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

234.     Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Morris denies that it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in providing that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Morris is found liable to Plaintiffs, Taishan breached the implied warranty of fitness by manufacturing, distributing, supplying, and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

235.     As a result of the claims that have been filed against Morris, Morris has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Taishan to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending these Claims.  Taishan's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill, and lost profits.

236.     Taishan is aware of the alleged defective gypsum drywall, but Taishan has failed to repair or replace the drywall.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Cross-Claim Defendant, Taishan, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

46

**Count 23- Negligent Failure to Warn**
**(Against Taishan)**

237.     Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

238.     Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

239.     Taishan manufactured, distributed, supplied, and/or sold the drywall installed in the Plaintiffs' home.

240.     Taishan owed Morris a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it manufactured, distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Morris about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn Morris about any problems or dangers in using the drywall for residential construction.

241.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

242.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan knew or should have known that unless it warned Morris

of the risk of using the drywall it distributed, sold, and/or supplied, Morris would suffer harm. However, Taishan failed to provide an adequate warning of such danger.

243.    Morris did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, Morris had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

244.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan breached its duty of care to Morris by (i) failing to disclose any defects in the drywall materials it manufactured, distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Morris about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn Morris about any problems or dangers in using the drywall for residential construction, about which Taishan knew or reasonably should have known.

245.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Taishan's duty of care were the direct and proximate cause of Morris's injuries, losses, and damages.

246.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Taishan knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of

drywall defects would expose Morris to substantial liability and damages.  If Taishan had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Morris would ensue as a result of failing to disclose and/or warn of drywall defects.

247.    Without admitting any liability or damages to Plaintiffs, Morris was damaged by Taishan's breaches of its duties of care, which directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.  Taishan's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Cross-Claim Defendant, Taishan, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 24- Breach of the Post-Sale Duty to Warn
**(Against Taishan)**

248.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

249.    Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

250.    Taishan manufactured, distributed, supplied, and/or sold the drywall that was in stalled in Plaintiffs' Home.

251.    To the extent Plaintiffs are successful in proving that drywall manufactured, distributed, supplied, and/or sold by Taishan was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the time such drywall left Taishan's control, Taishan knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

252.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Taishan, as the manufacturer, distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Taishan breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

253.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

254.    Consumers, such as Morris, to whom a warning might have been provided could have been identified by Taishan

255.    A warning could have been effectively communicated to consumers such as Morris and acted on by them.

256.     At all material times, Taishan knew or should have known of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Morris was unaware of potential dangers and/or risk of harm associated with the use of Taishan's drywall product in residential construction.

257.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable distributor, seller and/or supplier in Taishan's position would have provided a post-sale warning.

258.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Morris was damaged by Taishan's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.   Taishan's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Cross-Claim Defendant, Taishan, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## Count 25- Strict Products Liability
### (Against Taishan)

259.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

260.    This is an action, stated in the alternative, against Taishan for strict products liability.

261.    At all material times, Taishan was in the business of manufacturing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

262.    At all material times, the gypsum drywall contained in Plaintiffs' Homes was manufactured, placed into the stream of commence, distributed, supplied and/or sold by Taishan.

263.    At the time said drywall was manufactured, placed into the stream of commerce, distributed, supplied and/or sold by Taishan, Taishan intended that the drywall reach consumers and/or ultimate users of the drywall, such as Morris.

264.    Taishan expected the gypsum drywall to reach Morris and/or the Plaintiffs' Home without substantial change affecting its condition, and the alleged defective gypsum drywall did, in fact, reach Morris and/or the Home without substantial change affecting that condition.

265.    Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

266.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, distributed, placed into the stream of commerce, supplied and/or sold by Taishan directly and proximately caused and/or

exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this section and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.   Taishan's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill and lost profits.

WHEREFORE, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Cross-Claim Defendant, Taishan, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>**Count 26- Strict Products Liability Failure to Warn**</u>
**(Against Taishan)**

267.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

268.    This is an action, stated in the alternative, against Taishan for strict products liability failure to warn.

269.    At all material times, Taishan was in the business of manufacturing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

270.    At all material times, the gypsum drywall contained in the Homes was manufactured, placed into the stream of commerce, distributed, and/or sold by Taishan.

271.    At the time said drywall was manufactured, placed into the stream of commerce, distributed, supplied and/or sold by Taishan, Taishan intended that the drywall reach consumers and/or ultimate users of the drywall, such as Morris.

272.   Taishan expected the gypsum drywall to reach Morris and/or the Plaintiffs' Home without substantial change affecting its condition, and the gypsum drywall did in fact reach Morris and/or the Home without substantial change affecting that condition.

273.   Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

274.   To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Taishan was required to provide a warning.  However, Taishan failed to provide an adequate warning of such danger.

275.   Morris did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

276.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Taishan failed to warn Morris of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.  Without a warning, Morris had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

277.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims. Taishan's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Cross-Claim Defendant, Taishan, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 27- Violations of the Florida Deceptive and Unfair Trade Practices Act, Florida Statute 501.201, et seq.
### (Against Taishan)

278.     Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

279.     This is an action for violation of  §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

280.     The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable,

deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

281.    At all material times, Morris was a person and a consumer of drywall as defined under FDUTPA.

282.    At all material times, Taishan engaged in trade or commerce by manufacturing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Morris.

283.    Taishan manufactured, advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Plaintiffs' Home.

284.    At the time Taishan manufactured, advertised, solicited, offered, distributed, supplied and/or sold the drywall, Taishan represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

285.    Plaintiffs in the Complaint allege various claims against Morris for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property including but not limited to the Other Property in the Homes.

286.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Taishan manufactured, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Taishan knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

287.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged  in the Complaint, Plaintiffs' claims arise from Taishan's unfair and deceptive conduct in manufacturing, selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

288.    To the extent Plaintiffs are successful in proving their claims, Taishan's unfair and deceptive conduct in manufacturing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

289.    Taishan's unfair and deceptive conduct in manufacturing, advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall and/or its failure to disclose that the drywall unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as Morris acting reasonably in the same circumstances, to the consumer's detriment.  A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it

became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

290.    Taishan's unfair and deceptive conduct in manufacturing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Morris.

291.    To the extent Plaintiffs are successful in proving their claims, Morris did not get what is bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Taishan's violations of FDUTPA directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.  Taishan's wrongful conduct also caused damages to Morris, including but not limited to Morris's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Cross-Claim Defendant, Taishan, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### Count 28- Unjust Enrichment
**(Against Taishan)**

292.    Morris reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

293.     This is an action, stated in the alternative, against Taishan for unjust enrichment.

294.     Plaintiffs in the Complaint allege various claims against Morris for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

295.     Taishan manufactured, distributed, supplied, and/or sold the gypsum drywall that was installed in the Plaintiffs' Home.

296.     Taishan received money from Morris through supplier/installer 1st Drywall and/or other upstream importers/distributors/suppliers as a result of Morris's purchases of defective drywall installed in the Home.

297.     In delivering such payment, monies and/or funds to Taishan, downstream consumers such as Morris conferred a benefit, *i.e.*, funds and profit, to Taishan, which had knowledge thereof.

298.     Taishan voluntarily accepted and retained the benefit conferred upon it by downstream consumers such as Morris

299.     To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan's acts and omissions in manufacturing, distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Morris to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Morris to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Morris in this action and/or any other action brought by Plaintiffs against Morris, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Morris in defending against these claims.

300.    The circumstances described herein under which Taishan profited from manufacturing, selling and/or supplying drywall make it inequitable for Taishan to retain those funds and profits.

301.    Morris has no adequate remedy at law.

**WHEREFORE**, Jim Morris & Sons, Inc., demands judgment for damages in its favor and against Cross-Claim Defendant, Taishan, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### JIM MORRIS & SONS, INC.'S, JURY DEMAND

Jim Morris & Sons, Inc., also hereby demands a trial by jury.

Respectfully submitted,

**ADAMS AND REESE LLP**

s/Christopher A. D'Amour
CHRISTOPHER A. D'AMOUR (La. Bar # 26252)
MEGAN HAGGERTY GUY (La. Bar # 26316)
DAVID C. COONS (La. Bar # 32403)
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
***Attorneys for Defendant Morris Homes, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 25th day of January, 2011.

s/ David C. Coons_____