# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL                MDL No. 02047
        PRODUCTS LIABILITY LITIGATION               SECTION L

                                       JUDGE FALLON
                                       MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:

JOYCE W. ROGERS, *et al*. v.
KNAUF GIPS KG, *et al*.,
Case No. 10-362 Section L

_____/

## DEFENDANT ROBERT/CHARLES BUILDERS, INC.'S
## CROSS-CLAIM AND THIRD-PARTY CLAIM[1]

COMES NOW Defendant/Cross-Plaintiff and Third-Party-Plaintiff Robert/Charles
Builders, Inc. ("**RCB**"), by and through its undersigned counsel, and alleges for its Cross-Claim
against Defendants/Cross-Defendants Knauf Gips KG ("**Knauf Gips**"), Knauf Plasterboard
(Tianjin) Co. Ltd. ("**Knauf Tianjin**"), Knauf Plasterboard (Wuhu) Co. Ltd. ("**Knauf Wuhu**"),
Knauf Insulation GmbH a/k/a Knauf Insulation USA[2] ("**Knauf USA**"), Guangdong Knauf New
Building Products Co., Ltd.  ("**Knauf Guangdong**")[3] (collectively, the "**Knauf Cross-Claim**

---

[1]  Plaintiffs commenced this action on December 9, 2009 by filing an Omnibus Class Action
Complaint in this cause, which was subsequently amended and also expanded by way of intervention
(after all modifications, referred to herein as the "Complaint").  In response, RCB has moved to dismiss
the Complaint.  These Cross-Claims are therefore being brought to the extent all claims against RCB are
not dismissed in their entirety with prejudice.  In the event all of Plaintiffs' claims against RCB are not
dismissed with prejudice, RCB also expressly reserves the right to raise any and all available defenses and
to respond to the Complaint accordingly.

[2]  Plaintiffs did not name Knauf USA as a defendant until July 9, 2010, when intervening
plaintiffs, Kathleen and Mariss Barbee, filed a motion to intervene asking the Court to grant their
Omnibus Class Action Complaint In Intervention (IV(A)) (the "First Intervention Complaint"), which
alleged claims against Knauf USA for the first time.  This Court granted their motion at the September 16,
2010 Status Conference.

[3]   The Complaint originally named "Knauf Plasterboard (Dongguan) Co. Ltd." and not
"Guangdong Knauf New Building Products Co., Ltd." as a defendant.  Plaintiffs subsequently filed a
motion for judicial assistance asking the Court to deem the Complaint amended to replace "Guangdong

Defendants"), La Suprema Trading, Inc. ("**La Suprema Trading**" or "**LS Trading**"), La Suprema Enterprise, Inc. ("**La Suprema Enterprise**" or "**LS Enterprise**"), and Banner Supply Co. ("**Banner Co.**"), and alleges for its Third-Party Claims against Banner Supply Company Pompano, LLC ("**Banner Pompano**") as follows:

## CROSS-CLAIMS AGAINST THE KNAUF CROSS-CLAIM DEFENDANTS, LA SUPREMA TRADING, LA SUPREMA ENTERPRISE AND BANNER CO.

### The Parties, Jurisdiction and Venue

1.      This is an action for damages within the monetary jurisdiction of this Court.

2.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against RCB.

3.      RCB was and is a Florida corporation doing business in Broward County, Florida, where this cause of action arose.  At all material times, RCB was a drywall subcontractor in Broward County.

4.      RCB has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall installed by RCB in their homes was defective and caused damages to Plaintiffs.

5.      RCB denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.      The Knauf Cross-Claim Defendants, LS Trading, LS Enterprise, and Banner Co. (collectively, the "**Cross-Claim Defendants**") have also been named as defendants in the above styled action.  Robert/Charles adopts and incorporates, as if fully set forth herein, paragraphs

---

Knauf New Building Products Co., Ltd." in all instances where "Knauf Plasterboard (Dongguan) Co. Ltd." appears.  This Court granted Plaintiffs' motion by order dated March 12, 2010.

545-550,[4] 552, and 554 – 557 of the Complaint and paragraphs 1-3 of the First Intervention Complaint[5] identifying each of the Cross-Claim Defendants and describing the nature of their business activities.

7.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs, and the parties to the Cross-Claim are citizens of different states and citizens of foreign states.

8.      Moreover, this Cross-Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and over the instant Cross-Claim Defendants.

## General Allegations

9.      As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that RCB is liable for damages to Plaintiffs.[6]

10.      Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances and Plaintiffs' personal property (the "**Other Property**").

---

[4]  The allegations in paragraph 550 relating to Knauf Plasterboard (Dongguan) Co., Ltd. now apply to Knauf Guangdong.

[5]  See note 2, *infra.*

[6]  The named class Plaintiffs and other members of the putative class have asserted claims against RCB in this Action, as well as other actions in the state and federal courts.  The damages sought by RCB in this Cross-Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

{M3011708;2}

11.   Plaintiffs further allege that the drywall contained in their Homes was manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of the Cross-Claim Defendants.

12.   Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.   RCB purchased drywall that was installed in the Homes directly from Banner Co. and/or Banner Pompano (together, "**Banner**").

14.   At all material times, Banner knew that the drywall purchased for the Homes was going to be used in construction of residential homes.  Banner knew that RCB required and expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

15.   Upon information and belief, Banner procured drywall that was installed in the Homes from an import-export specialist, LS Trading and/or LS Enterprise (together, "**La Suprema**").  At all material times, La Suprema knew that such drywall was going to be used in construction of residential homes.

16.   Upon information and belief, Banner also procured drywall that was installed in the Homes from the Knauf Cross-Claim Defendants.  At all material times, the Knauf Cross-Claim Defendants knew that such drywall was going to be used in the construction of residential homes.

17.   Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips, Knauf Tianjin, La Suprema and Banner knew that some of Banner's customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled,

4

packaged, advertised, distributed, sold, and/or placed into the stream of commerce by Knauf Tianjin emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

18.     Knauf Tianjin consulted with Knauf Gips about the drywall complaints.

19.     Hans-Ulrich Hummel, head of research and development for Knauf Gips in Germany was aware of the "big problems" with Knauf boards from China, and investigated complaints of noxious odors being emitted by the drywall.

20.     Upon information and belief, Knauf Tianjin and/or Knauf Gips conducted their own tests of the drywall and advised Banner that the drywall was "smelly."

21.     Upon information and belief, Banner also conducted tests of the drywall installed in certain South Florida residential homes.

22.     Upon information and belief, Knauf Tianjin, Knauf Gips and/or Banner did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

23.     Upon information and belief, Knauf Gips and Knauf Tianjin were concerned about the potential fallout if the problems with the drywall product became widely known. In a concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Knauf Tianjin entered into a confidential settlement agreement with Banner in January of 2007 (the "**Secret Agreement**").

24.     The Secret Agreement stipulated that Knauf Tianjin would take back all of Banner's unsold drywall, pay Banner for storing it, and replace Banner's inventory of Chinese drywall with thousands of pieces of drywall made by U.S. manufacturers.  In return, Banner promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

25.     While Knauf Tianjin recalled the drywall product for Banner, it did not recall or take back the product from its other customers, nor did it warn them of the defective nature of the drywall.

26.     Upon information and belief, Knauf Tianjin entered into the Secret Agreement to buy the silence of Banner and conceal defects in the drywall from consumers.  The Secret Agreement purposefully kept consumers, such as RCB and other installers, builders and contractors, in the dark about the problems with the drywall.  The Secret Agreement acknowledged that if Banner broke its promise to remain silent, Knauf Tianjin could be irreparably harmed.

27.     RCB did not know and was not made aware of the problems with the drywall. The drywall manufactured, exported, imported, distributed and/or sold by Banner, La Suprema, and/or the Knauf Cross-Claim Defendants for use in the construction of the Homes was not altered and/or otherwise substantively changed by RCB.

28.     For the purpose of this Cross-Claim only, and not constituting an admission of the allegations or liability by RCB, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

29.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all

6

material times, the Cross-Claim Defendants had greater knowledge, and/or stood in a better position than RCB to know, of the drywall's applications, performance, and dangers.

30. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Cross-Claim Defendants' acts and omissions in manufacturing, exporting, importing, distributing and/or selling the defective drywall directly and proximately caused and/or exposed RCB to substantial liability and damages to Plaintiffs.

31. Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the gypsum drywall product purchased by RCB for installation in the Homes.

32. Moreover, RCB did not know and was never informed by any of the Cross-Claim Defendants that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

33. Consequently, the Cross-Claim Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to RCB in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

34. Additionally, the Cross-Claim Defendants' wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

7

35.     All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

### COUNT 1 – VICARIOUS LIABILITY
### (Against Knauf Gips)

36.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

37.     This is an action for vicarious liability against Knauf Gips for the negligence and other wrongful acts of its actual and/or apparent agents, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong.

38.     Among other things, Knauf Tianjin, Knauf Wuhu, Knauf USA and Knauf Guangdong are involved in the manufacturing and sale of gypsum drywall.  Upon information and belief, they are actual agents and/or apparent agents of Knauf Gips.

39.     Upon information and belief, at all material times, Knauf Gips was a family-owned German company extensively involved in the plasterboard market in Germany, the United Kingdom, France, China, and the United States, among others.  Indeed, the Court of European Justice of the European Union in an action between Knauf Gips and the European Commission has found that Knauf Gips and other subsidiaries dealing in gypsum products owned by the Knauf family (the "Knauf Group") constitute one "economic unit" in the area of competition law, and that Knauf Gips should be responsible for all activities of the Knauf Group.

40.     Upon information and belief, at all material times, Knauf Gips had an apparent or actual partnership with, or an ownership interest in, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong..

41.     Upon information and belief, Knauf Gips supervised, monitored, and/or otherwise exercised control and/or had a right to exercise control over the operations of Knauf Tianjin,

8

Knauf Wuhu, Knauf USA, Knauf Guangdong, and their agents, apparent agents, and employees, including the manufacturing, distribution, marketing, and/or sale of their drywall products. Moreover, upon information and belief, Knauf Gips is responsible for establishing, implementing, supervising, and maintaining the quality control mechanisms utilized by Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong.

42.    Upon information and belief, at all material times, Knauf Gips was closely involved in the management of Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, and their agents, apparent agents, and employees – overseeing quality control, finding raw materials and dealing with rising concerns over defective drywall.

43.    By way of its apparent or actual partnership and/or exercise of control over the conduct and operations of Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong, Knauf Gips acknowledged that Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong would act on its behalf as its actual and/or apparent agent(s).

44.    Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong accepted the undertaking to act on Knauf Gips' behalf.

45.    As such, Knauf Gips is vicariously liable for all of the damages caused by the negligent and/or other wrongful conduct of its actual and/or apparent agents, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong, as further alleged herein.

46.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Gips, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong's wrongful conduct directly and proximately caused and/or exposed RCB to

9

substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 2 – COMMON LAW INDEMNITY
**(Against Knauf Tianjin and Knauf Gips)**

47.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

48.     Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

49.     Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

50.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

{M3011708;2}

51.     RCB is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

52.     RCB is entirely without fault for the injuries alleged by Plaintiffs.

53.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Tianjin and/or Knauf Gips.

54.     A special relationship existed between Knauf Tianjin and/or Knauf Gips and RCB such that any liability imposed upon RCB in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Tianjin and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips was defective, Knauf Tianjin and Knauf Gips are wholly to blame for Plaintiffs' injuries.

55.     As a result of the claims that have been filed against RCB, RCB has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Tianjin and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

56.     If RCB is found to be liable to Plaintiffs, Knauf Tianjin and/or Knauf Gips is liable to RCB for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against RCB in this

{M3011708;2}

action and/or any other action brought by Plaintiffs against RCB, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

**WHEREFORE**, RCB demands judgment for indemnity in its favor against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for compensatory damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 3 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Tianjin and Knauf Gips)

57.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

58.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

59.    Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

60.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

12

61.     Plaintiffs, in the Complaint, allege various claims against RCB for damages caused by defects in the drywall contained in the Homes.

62.     Without admitting any liability or damages to Plaintiffs, should RCB be found liable, Knauf Tianjin and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

63.     RCB has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

64.     To the extent that any common liability is found with respect toRCB, RCB hereby asserts its right of contribution against Knauf Tianjin and/or Knauf Gips for its/their pro rata share of the liability.

65.     Knauf Tianjin and/or Knauf Gips should be required to repay RCB for any loss, damages, costs, and expenses, including attorneys' fees, RCB is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against RCB, in excess of its pro rata share of any common liability.

**WHEREFORE**, RCB demands that judgment be entered against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for its pro rata share of the liability, if any, found against RCB in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

{M3011708;2}

### COUNT 4 – EQUITABLE SUBROGATION
**(Against Knauf Tianjin and Knauf Gips)**

66.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

67.     This is an action, stated in the alternative, for equitable subrogation.

68.     Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

69.     Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

70.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

71.     RCB is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

72.     Without admitting any liability or damages to Plaintiffs, RCB is not primarily liable for any liability to the Plaintiffs.

73.     To the extent that RCB is required to pay damages for any fault of Knauf Tianjin and/or Knauf Gips to protect its own interests, and not as a volunteer, RCB would be entitled to

14

reimbursement from Knauf Tianjin and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

74.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, RCB demands judgment in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 5 – NEGLIGENCE
**(Against Knauf Tianjin and Knauf Gips)**

75.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

76.     Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

77.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

78.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling,

15

packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

79.     RCB was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Tianjin and/or Knauf Gips.

80.     Knauf Tianjin and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Tianjin and/or Knauf Gips owed RCB a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of RCB's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

81.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

16

82.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips breached the duty of care owed to RCB by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or and ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

83.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Tianjin's and/or Knauf Gips' duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

84.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing distributing, placing into the stream of commerce and/or selling

17

{M3011708;2}

defective gypsum drywall would expose RCB to substantial liability and damages.  If Knauf Tianjin and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to RCB would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

85.    Without admitting any liability or damages to Plaintiffs, RCB was damaged by Knauf Tianjin's and/or Knauf Gips' breaches of the duty of care owed to RCB, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 6 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Tianjin and Knauf Gips)

86.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

18

87.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

88.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  the gypsum drywall that was installed in the Homes.

89.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

90.    RCB was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

91.    Knauf Tianjin and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Tianjin and/or Knauf Gips owed RCB a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as RCB about any problems or dangers in using the drywall for residential construction.

19

92.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

93.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that unless it warned RCB of the risk of using the drywall, RCB would suffer harm. However, Knauf Tianjin and/or Knauf Gips failed to provide an adequate warning of such danger.

94.     RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.   Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

95.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips breached the duty of care owed to RCB by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers

20

and/or users such as RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as RCB about any problems or dangers in using the drywall for residential construction, about which Knauf Tianjin and/or Knauf Gips knew or reasonably should have known.

96.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Tianjin's and/or Knauf Gips' duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

97.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose RCB to substantial liability and damages. If Knauf Tianjin and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Tianjin and/or Knauf Gips would or could have foreseen that damages to RCB would ensue as a result of failing to disclose and/or warn of drywall defects.

98.    Without admitting any liability or damages to Plaintiffs, RCB was damaged by Knauf Tianjin's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf

21

Gips' and Knauf Tianjin's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Tianjin and Knauf Gips)

99.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

100.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

101.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

102.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

103.    RCB was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

104.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Tianjin's and/or Knauf Gips' control and/or was sold to RCB, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

105.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Tianjin and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Tianjin and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

106.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

107.    Consumers, such as RCB, to whom a warning might have been provided, could have been identified by Knauf Tianjin and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

108.    A warning could have been effectively communicated to consumers such as RCB and acted on by them.

109.    At all material times, Knauf Tianjin and/or Knauf Gips stood in a better position than RCB to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that RCB was unaware of potential dangers and/or risk of harm associated with the use of Knauf Tianjin's and/or Knauf Gips' drywall product in residential construction.

110.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in Knauf Tianjin's and/or Knauf Gips' position would have provided a post-sale warning.

111.    Without admitting any liability or damages to Plaintiffs, RCB was damaged by Knauf Tianjin's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

24

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

## COUNT 8 – STRICT PRODUCTS LIABILITY
### (Against Knauf Tianjin and Knauf Gips)

112.  RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

113.  Upon information and belief, at all material times, Knauf Tianjin and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

114.  Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

115.  Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in distributing, placing into the stream of commerce and/or selling gypsum drywall.

116.  At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips, Knauf Tianjin and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

117.  Knauf Tianjin and/or Knauf Gips expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

118.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

119.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Tianjin and Knauf Gips)

120.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

{M3011708;2}

121.    Upon information and belief, at all material times, Knauf Tianjin and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

122.    Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

123.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

124.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips, Knauf Tianjin and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

125.    Knauf Tianjin and/or Knauf Gips expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

126.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{M3011708;2}

127.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Tianjin and/or Knauf Gips was required to provide a warning. However, Knauf Tianjin and/or Knauf Gips failed to provide an adequate warning of such danger.

128.    RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

129.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Tianjin and/or Knauf Gips failed to warn RCB of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

130.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on

{M3011708;2}

behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 10
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf Tianjin and Knauf Gips)

131.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

132.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

133.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

134.    At all material times, RCB was a person and a consumer of drywall as defined under FDUTPA.

135.    At all material times, Knauf Tianjin engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as RCB.

{M3011708;2}

136.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the gypsum drywall that was installed in the Homes.

137.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such gypsum drywall.

138.    At the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, Knauf Tianjin and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

139.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

140.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes,

{M3011708;2}

Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

141.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from Knauf Tianjin's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

142.    To the extent Plaintiffs are successful in proving their claims, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 27 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

143.    Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as RCB acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer

{M3011708;2}

would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

144.   Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as RCB.

145.   To the extent Plaintiffs are successful in proving their claims, RCB did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Tianjin's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 11 – UNJUST ENRICHMENT
### (Against Knauf Tianjin and Knauf Gips)

146.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

147.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

148.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

149.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

150.    Knauf Tianjin and/or Knauf Gips received money from RCB as payment for the defective drywall installed in the Home.

151.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, RCB conferred a benefit, *i.e.*, funds and profit, to Knauf Tianjin and/or Knauf Gips, which had knowledge thereof.

152.    Knauf Tianjin and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by RCB.

{M3011708;2}

153.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.

154.    The circumstances described herein under which Knauf Tianjin and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Tianjin and/or Knauf Gips to retain those funds and profits.

155.    RCB has no adequate remedy at law.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 12 – FRAUDULENT CONCEALMENT
### (Against Knauf Tianjin and Knauf Gips)

156.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

{M3011708;2}

157.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

158.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

159.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

160.    As such, Knauf Tianjin and/or Knauf Gips had a duty to reveal any knowledge that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

161.    Upon information and belief, Knauf Tianjin and/or Knauf Gips failed to disclose and actively concealed drywall defects for the purpose of inducing consumers such as RCB to purchase and use the drywall product and/or to prevent such consumers from demanding that drywall already purchased and/or installed in residential homes be replaced at Knauf Tianjin's and/or Knauf Gips' expense.

35

162.    Knauf Tianjin and/or Knauf Gips had superior knowledge not readily available to RCB that the drywall was defective and/or not fit for use in the construction of a residential home, which could not have been discovered by RCB by way of ordinary observation.

163.    Knauf Tianjin and/or Knauf Gips having superior knowledge of the defective nature of the drywall knowingly, deliberately and/or intentionally failed to disclose and actively concealed the drywall's defective nature and used artifice to sell the drywall product.

164.    Knauf Tianjin employed artifice to sell the drywall product by entering into the Secret Agreement with Banner to conceal "perceived or actual smell or health risks" related to the drywall from RCB and other customers of Banner.

165.    RCB and/or its installers purchased drywall for RCB from Banner for the construction of the Homes. By entering into the Secret Agreement with Banner, Knauf Tianjin suppressed information that caused RCB to remain ignorant about any perceived or actual defects and to believe that it had all available information necessary to use the drywall product sold by Banner in the construction of the Homes.

166.    RCB relied on Knauf Tianjin and/or Knauf Gips as the manufacturer of the drywall to disclose any facts indicating the drywall was not fit for the ordinary purpose for which it was intended, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of a residential home.  The terms of the Secret Agreement foreclosed RCB from having an equal opportunity to become reasonably informed of the fact that such defects were associated with the drywall.

167.    By failing to disclose and actively concealing that the drywall Knauf Tianjin and/or Knauf Gips manufactured, designed, distributed, and/or sold emitted foul or noxious odors and/or gases, and/or was potentially unreasonably dangerous, Knauf Tianjin and/or Knauf

36

Gips conveyed the misleading impression that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of a residential home.

168.    RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

169.    If RCB had known about the matters concealed by Knauf Tianjin and/or Knauf Gips, RCB would not have purchased and used the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips for installation in residential homes and/or RCB would have demanded replacement of the drywall at Knauf Tianjin's expense.

170.    Knauf Tianjin and/or Knauf Gips engaged in the foregoing conduct with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[7]

171.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' fraudulent concealment of the defective nature of the drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on

---

[7]    RCB reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for fraudulent concealment.

behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 13
### COMMON LAW AIDING AND ABETTING FRAUDULENT CONCEALMENT
### (Against Knauf Gips)

172.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 157 - 169 above as if fully set forth herein.

173.     This is an action, stated in the alternative, for common law aiding and abetting fraudulent concealment against Knauf Gips.

174.     Knauf Gips was generally and specifically aware that Knauf Tianjin's active concealment of actual and/or potential drywall defects breached a duty to foreseeable consumers, such as RCB, to reveal its knowledge that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

175.     Knauf Gips was generally and specifically aware of the nature of the harm that would be incurred by consumers such as RCB by virtue of Knauf Tianjin's active concealment of actual and/or potential drywall defects.

{M3011708;2}

176.     Knauf Gips knowingly and substantially aided, abetted, advised or encouraged Knauf Tianjin's active concealment of actual and/or potential drywall defects.

177.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Gips' aiding and abetting a fraudulent concealment directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

178.     Knauf Gips engaged in the acts described above with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[8]

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

---

[8]  RCB reserves its right to claim exemplary and/or punitive damages against Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for common law aiding and abetting.

{M3011708;2}

<u>**COUNT 14**</u>
**CIVIL CONSPIRACY TO FRAUDULENTLY CONCEAL A DEFECTIVE PRODUCT**
**(Against Knauf Gips and Knauf Tianjin)**

179.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

180.    This is an action, stated in the alternative, for civil conspiracy to fraudulently conceal a defective product.

181.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

182.    RCB was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin.

183.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, upon information and belief, Knauf Tianjin failed to disclose and actively concealed drywall defects for the purpose of inducing consumers such as RCB to continue to purchase and use the drywall product and/or to prevent such consumers from demanding that drywall already purchased and/or installed in residential homes be replaced at Knauf Tianjin's expense.

184.    Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips and Knauf Tianjin knew that some of Banner's customers had complained that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,

40

placed into the stream of commerce, and/or sold by Knauf Tianjin emitted a very bad sulfurous odor.

185.    Upon information and belief, Knauf Tianjin and Knauf Gips engaged in and/or agreed to a scheme to conceal defective and/or unreasonably dangerous properties of the drywall from consumers, such as RCB (the "Concealment Scheme").

186.    Upon information and belief, Knauf Gips and/or Knauf Tianjin investigated the complaints of odors and tested the drywall.

187.    In furtherance of the Concealment Scheme, after conducting tests of the drywall, Knauf Tianjin and/or Knauf Gips advised Banner that the drywall was not unreasonably dangerous and met regulatory standards.

188.    In furtherance of the Concealment Scheme, Knauf Tianjin employed artifice to sell its drywall product by entering into the Secret Agreement with Banner to conceal "perceived or actual smell or health risks" related to the drywall from RCB and other customers of Banner.

189.    By entering into the Secret Agreement with Banner, Knauf Tianjin suppressed information that caused RCB to remain ignorant about any perceived or actual defects and to believe that it had all available information necessary to purchase and/or use the drywall product in the construction of the Homes.

190.    RCB relied on Knauf Tianjin as the manufacturer of the drywall to disclose any facts indicating the drywall was not fit for the ordinary purpose for which it was intended, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of a residential home.  The terms of the Secret Agreement foreclosed RCB from having an equal opportunity to become reasonably informed of the fact that such defects were associated with the drywall.

{M3011708;2}

191.    By failing to disclose and actively concealing that the drywall emitted foul or noxious odors and/or gases, and/or was potentially unreasonably dangerous, Knauf Tianjin conveyed the misleading impression that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of a residential home.

192.    RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

193.    If RCB had known about the matters concealed by Knauf Tianjin and Knauf Gips, RCB would not have purchased and/or used the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin for installation in residential homes and/or RCB would have demanded replacement of the drywall at Knauf Tianjin's expense.

194.    Knauf Gips and Knauf Tianjin engaged in the Concealment Scheme with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[9]

195.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Concealment Scheme directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to

---

[9]  RCB reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for civil conspiracy to fraudulently conceal a defective product.

be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 15
### CIVIL CONSPIRACY: WILLFUL FAILURE TO WARN
### (Against Knauf Gips and Knauf Tianjin)

196.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

197.    This is an action, stated in the alternative, for civil conspiracy premised on a willful failure to issue a post-sale warning.

198.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

199.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, marketed, sold, distributed, and/or supplied the gypsum drywall that was installed in the Homes.

43

200.    RCB was a foreseeable user of the gypsum drywall being manufactured, mined, designed, produced, made, marketed, sold, distributed and/or supplied by Knauf Tianjin.

201.    Knauf Tianjin, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.

202.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, marketed, sold, supplied, and/or delivered by Knauf Tianjin was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the time such drywall left Knauf Tianjin's control and/or was sold to RCB, Knauf Tianjin knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

203.    Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips and Knauf Tianjin knew that some of Banner's customers had complained that the drywall manufactured by Knauf Tianjin emitted a very bad sulfurous odor.

204.    Upon information and belief, Knauf Tianjin and Knauf Gips engaged in and/or agreed to an intentional and willful scheme not to warn consumers who had already purchased Knauf Tianjin's drywall product about actual or perceived defects in the drywall product (the "Scheme Not to Warn").

205.    Upon information and belief, Knauf Tianjin and/or Knauf Gips investigated the complaints of odors and tested the drywall.

206.    Upon information and belief, and in furtherance of the Scheme Not to Warn, Knauf Tianjin and/or Knauf Gips did not properly investigate potential dangers and/or risk of

44

harm associated with the use of Knauf Tianjin's drywall product and thereby breached the duty owed to RCB to properly investigate the drywall's potential dangers and risks.

207.    Upon information and belief, after Knauf Tianjin and/or Knauf Gips conducted tests of the drywall, and to further the Scheme Not to Warn, Knauf Tianjin entered into the Secret Agreement with Banner to conceal "perceived or actual smell or health risks" related to the drywall from RCB and other customers of Banner.

208.    RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, and therefore Knauf Tianjin was in breach of the duty to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall in residential construction.

209.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

210.    Consumers, such as RCB, to whom a warning might have been provided could have been identified by Knauf Tianjin and could reasonably be assumed to be unaware of the risk of harm.

211.    A warning could have been effectively communicated to consumers such as RCB and acted on by them.

212.    At all material times, Knauf Tianjin stood in a better position than RCB to know of such drywall's applications, performance, risks and dangers and it could reasonably be

assumed that RCB was unaware of potential dangers and/or risk of harm associated with the use of Knauf Tianjin's drywall product in residential construction.

213.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, distributor, seller and/or supplier in Knauf Tianjin's position would have provided a post-sale warning.

214.   Knauf Gips' and Knauf Tianjin's individual and collective failure to warn as set forth above was wanton, grossly negligent, reckless and demonstrated a complete disregard and reckless indifference to consumers of the drywall product, such as RCB. Knauf Gips and Knauf Tianjin engaged in the Scheme Not to Warn with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[10]

215.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Scheme Not to Warn directly and proximately caused and/or exposed RCB to substantial liability and damages to Plaintiffs, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs. Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

---

[10]   RCB reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for civil conspiracy premised on a willful failure to issue a post-sale warning.

46

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 16 – COMMON LAW INDEMNITY**
**(Against Knauf Wuhu and Knauf Gips)**

216.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

217.    Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

218.    Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

219.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

220.    RCB is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

221.    RCB is entirely without fault for the injuries alleged by Plaintiffs.

{M3011708;2}

222.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Wuhu and/or Knauf Gips.

223.    A special relationship existed between Knauf Wuhu and/or Knauf Gips and RCB such that any liability imposed upon RCB in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Wuhu and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

224.    As a result of the claims that have been filed against RCB, RCB has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Wuhu and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

225.    If RCB is found to be liable to Plaintiffs, Knauf Wuhu and/or Knauf Gips is liable to RCB for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought

{M3011708;2}

by Plaintiffs. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for indemnity in its favor against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for compensatory damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 17 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Wuhu and Knauf Gips)

226.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

227.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

228.    Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

229.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

230.    Plaintiffs in the Complaint allege various claims against RCB for damages caused by defects in the drywall contained in the Homes.

231.    Without admitting any liability or damages to Plaintiffs, should RCB be found liable, Knauf Wuhu and/or Knauf Gips would also share in the liability to the extent its/their

{M3011708;2}

tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

232.    RCB has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

233.    To the extent that any common liability is found with respect to RCB, RCB hereby asserts its right of contribution against Knauf Wuhu and/or Knauf Gips for its/their pro rata share of the liability.

234.    Knauf Wuhu and/or Knauf Gips should be required to repay RCB for any loss, damages, costs, and expenses, including attorneys' fees, RCB is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against RCB, in excess of its pro rata share of any common liability.

**WHEREFORE**, RCB demands that judgment be entered against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for its pro rata share of the liability, if any, found against RCB in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 18 – EQUITABLE SUBROGATION
#### (Against Knauf Wuhu and Knauf Gips)

235.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

236.    This is an action, stated in the alternative, for equitable subrogation.

237.    Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

{M3011708;2}

238.    Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

239.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

240.    RCB is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

241.    Without admitting any liability or damages to Plaintiffs, RCB is not primarily liable for any liability to the Plaintiffs.

242.    To the extent that RCB is required to pay damages for any fault of Knauf Wuhu and/or Knauf Gips to protect its own interests, and not as a volunteer, RCB would be entitled to reimbursement from Knauf Wuhu and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB and/or amounts paid in settlement in this action and/or any other

action brought by Plaintiffs against RCB, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

243.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, RCB demands judgment in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 19 – NEGLIGENCE
### (Against Knauf Wuhu and Knauf Gips)

244.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

245.     Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

246.     Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

247.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

248.     RCB was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Wuhu and/or Knauf Gips.

52

{M3011708;2}

249.    Knauf Wuhu and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Wuhu and/or Knauf Gips owed RCB a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of RCB's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

250.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

251.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips breached the duty of care owed to RCB by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the

53

properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

252.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Wuhu's and/or Knauf Gips' duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

253.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose RCB to substantial liability and damages. If Knauf Wuhu and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to RCB would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling,

54

packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

254.   Without admitting any liability or damages to Plaintiffs, RCB was damaged by Knauf Wuhu's and/or Knauf Gips' breaches of the duty of care owed to RCB, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 20 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Wuhu and Knauf Gips)

255.   RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

256.   Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{M3011708;2}

257.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  the gypsum drywall that was installed in the Homes.

258.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

259.    RCB was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

260.    Knauf Wuhu and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Wuhu and/or Knauf Gips owed RCB a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as RCB about any problems or dangers in using the drywall for residential construction.

261.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall

56

was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

262.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that unless it warned RCB of the risk of using the drywall, RCB would suffer harm. However, Knauf Wuhu and/or Knauf Gips failed to provide an adequate warning of such danger.

263.   RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.   Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

264.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips breached the duty of care owed to RCB by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as RCB about any problems or dangers in using the drywall for residential construction, about which Knauf Wuhu and/or Knauf Gips knew or reasonably should have known.

265.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Wuhu's and/or Knauf Gips' duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

266.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose RCB to substantial liability and damages. If Knauf Wuhu and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Wuhu and/or Knauf Gips would or could have foreseen that damages to RCB would ensue as a result of failing to disclose and/or warn of drywall defects.

267.    Without admitting any liability or damages to Plaintiffs, RCB was damaged by Knauf Wuhu's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 21 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Wuhu and Knauf Gips)

268. RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

269. Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

270. Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

271. Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

272. RCB was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

273. To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips was

59

defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Wuhu's and/or Knauf Gips' control and/or was sold to RCB, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

274.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Wuhu and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Wuhu and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

275.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

276.    Consumers, such as RCB, to whom a warning might have been provided, could have been identified by Knauf Wuhu and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

60

277.    A warning could have been effectively communicated to consumers such as RCB and acted on by them.

278.    At all material times, Knauf Wuhu and/or Knauf Gips stood in a better position than RCB to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that RCB was unaware of potential dangers and/or risk of harm associated with the use of Knauf Wuhu's and/or Knauf Gips' drywall product in residential construction.

279.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in Knauf Wuhu's and/or Knauf Gips' position would have provided a post-sale warning.

280.    Without admitting any liability or damages to Plaintiffs, RCB was damaged by Knauf Wuhu's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

61

## COUNT 22 – STRICT PRODUCTS LIABILITY
### (Against Knauf Wuhu and Knauf Gips)

281.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

282.    Upon information and belief, at all material times, Knauf Wuhu and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

283.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

284.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in distributing, placing into the stream of commerce and/or selling gypsum drywall.

285.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips, Knauf Wuhu and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

286.    Knauf Wuhu and/or Knauf Gips expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

287.    Plaintiffs, in the Complaint, allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

288.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 23 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Wuhu and Knauf Gips)

289.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

290.    Upon information and belief, at all material times, Knauf Wuhu and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing,

{M3011708;2}

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

291.    Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

292.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

293.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips, Knauf Wuhu and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

294.    Knauf Wuhu and/or Knauf Gips expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

295.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

296.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

64

as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Wuhu and/or Knauf Gips was required to provide a warning. However, Knauf Wuhu and/or Knauf Gips failed to provide an adequate warning of such danger.

297.    RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

298.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Wuhu and/or Knauf Gips failed to warn RCB of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

299.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of

65

Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 24**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Knauf Wuhu and Knauf Gips)**

300.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

301.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

302.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

303.    At all material times, RCB was a person and a consumer of drywall as defined under FDUTPA.

304.    At all material times, Knauf Wuhu engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as RCB.

305.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the gypsum drywall that was installed in the Homes.

66

306.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such gypsum drywall.

307.    At the time Knauf Wuhu and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, Knauf Wuhu and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

308.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

309.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Wuhu and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

310.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from Knauf Wuhu's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

311.    To the extent Plaintiffs are successful in proving their claims, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall, was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 27 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

312.    Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as RCB acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or

property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

313.    Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as RCB.

314.    To the extent Plaintiffs are successful in proving their claims, RCB did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Wuhu's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus

attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 25 – UNJUST ENRICHMENT
#### (Against Knauf Wuhu and Knauf Gips)

315.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

316.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

317.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

318.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

319.    Knauf Wuhu and/or Knauf Gips received money from RCB as payment for the defective drywall installed in the Home.

320.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, RCB conferred a benefit, *i.e*., funds and profit, to Knauf Wuhu and/or Knauf Gips, which had knowledge thereof.

321.    Knauf Wuhu and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by RCB.

322.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

70

as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.

323.    The circumstances described herein under which Knauf Wuhu and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Wuhu and/or Knauf Gips to retain those funds and profits.

324.    RCB has no adequate remedy at law.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 26 – COMMON LAW INDEMNITY
### (Against Knauf USA and Knauf Gips)

325.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

326.    Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

327.    Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,

placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

328.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

329.    RCB is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

330.    RCB is entirely without fault for the injuries alleged by Plaintiffs.

331.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf USA and/or Knauf Gips.

332.    A special relationship existed between Knauf USA and/or Knauf Gips and RCB such that any liability imposed upon RCB in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf USA and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

333.    As a result of the claims that have been filed against RCB, RCB has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf USA

and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

334.    If RCB is found to be liable to Plaintiffs, Knauf USA and/or Knauf Gips is liable to RCB for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for indemnity in its favor against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for compensatory damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 27 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf USA and Knauf Gips)

335.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

336.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

{M3011708;2}

337.    Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

338.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

339.    Plaintiffs in the Complaint allege various claims against RCB for damages caused by defects in the drywall contained in the Homes.

340.    Without admitting any liability or damages to Plaintiffs, should RCB be found liable, Knauf USA and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

341.    RCB has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

342.    To the extent that any common liability is found with respect to RCB, RCB hereby asserts its right of contribution against Knauf USA and/or Knauf Gips for its/their pro rata share of the liability.

343.    Knauf USA and/or Knauf Gips should be required to repay RCB for any loss, damages, costs, and expenses, including attorneys' fees, RCB is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims in this action

74

and/or any other action brought by Plaintiffs against RCB, in excess of its pro rata share of any common liability.

**WHEREFORE**, RCB demands that judgment be entered against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for its pro rata share of the liability, if any, found against RCB in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 28– EQUITABLE SUBROGATION
### (Against Knauf USA and Knauf Gips)

344.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

345.    This is an action, stated in the alternative, for equitable subrogation.

346.    Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

347.    Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

348.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

349.    RCB is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

350.    Without admitting any liability or damages to Plaintiffs, RCB is not primarily liable for any liability to the Plaintiffs.

351.    To the extent that RCB is required to pay damages for any fault of Knauf USA and/or Knauf Gips to protect its own interests, and not as a volunteer, RCB would be entitled to reimbursement from Knauf USA and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

352.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, RCB demands judgment in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 29 – NEGLIGENCE
**(Against Knauf USA and Knauf Gips)**

353.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

354.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

76

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

355.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

356.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

357.    RCB was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf USA and/or Knauf Gips.

358.    Knauf USA and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf USA and/or Knauf Gips owed RCB a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of RCB's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use

77

of the drywall in residential construction before placing drywall materials into the stream of commerce.

359.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

360.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips breached the duty of care owed to RCB by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

361.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf

78

USA's and/or Knauf Gips' duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

362.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf USA and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose RCB to substantial liability and damages. If Knauf USA and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to RCB would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

363.   Without admitting any liability or damages to Plaintiffs, RCB was damaged by Knauf USA's and/or Knauf Gips' breaches of the duty of care owed to RCB, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 30 – NEGLIGENT FAILURE TO WARN
### (Against Knauf USA and Knauf Gips)

364.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

365.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

366.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  the gypsum drywall that was installed in the Homes.

367.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

368.    RCB was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

369.    Knauf USA and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf USA

and/or Knauf Gips owed RCB a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as RCB about any problems or dangers in using the drywall for residential construction.

370.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

371.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that unless it warned RCB of the risk of using the drywall, RCB would suffer harm. However, Knauf USA and/or Knauf Gips failed to provide an adequate warning of such danger.

372.   RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.   Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property

81

and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

373.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips breached the duty of care owed to RCB by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as RCB about any problems or dangers in using the drywall for residential construction, about which Knauf USA and/or Knauf Gips knew or reasonably should have known.

374.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf USA's and/or Knauf Gips' duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

375.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf USA and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose RCB to substantial liability and damages.  If Knauf USA and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf USA and/or Knauf Gips would or could have foreseen that damages to RCB would ensue as a result of failing to disclose and/or warn of drywall defects.

376.     Without admitting any liability or damages to Plaintiffs, RCB was damaged by Knauf USA's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Knauf Gips' and Knauf USA's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 31 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf USA and Knauf Gips)

377.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

378.     Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

379.     Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

{M3011708;2}

380.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

381.    RCB was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

382.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf USA's and/or Knauf Gips' control and/or was sold to RCB, Knauf USA and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

383.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf USA and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf USA and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the

use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

384.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

385.    Consumers, such as RCB, to whom a warning might have been provided, could have been identified by Knauf USA and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

386.    A warning could have been effectively communicated to consumers such as RCB and acted on by them.

387.    At all material times, Knauf USA and/or Knauf Gips stood in a better position than RCB to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that RCB was unaware of potential dangers and/or risk of harm associated with the use of Knauf USA's and/or Knauf Gips' drywall product in residential construction.

388.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in Knauf USA's and/or Knauf Gips' position would have provided a post-sale warning.

389.    Without admitting any liability or damages to Plaintiffs, RCB was damaged by Knauf USA's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and

proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 32 – STRICT PRODUCTS LIABILITY
### (Against Knauf USA and Knauf Gips)

390.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

391.    Upon information and belief, at all material times, Knauf USA and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

392.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

393.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in distributing, placing into the stream of commerce and/or selling gypsum drywall.

86

394.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips, Knauf USA and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

395.    Knauf USA and/or Knauf Gips expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

396.    Plaintiffs, in the Complaint, allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

397.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Knauf

Gips' and Knauf USA's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 33 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf USA and Knauf Gips)

398.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

399.    Upon information and belief, at all material times, Knauf USA and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

400.    Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

401.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

402.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce,

{M3011708;2}

and/or sold by Knauf USA and/or Knauf Gips, Knauf USA and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

403.    Knauf USA and/or Knauf Gips expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

404.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

405.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf USA and/or Knauf Gips was required to provide a warning. However, Knauf USA and/or Knauf Gips failed to provide an adequate warning of such danger.

406.    RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

407.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf USA and/or Knauf Gips failed to warn RCB of the unduly hazardous condition of the drywall posing serious or unreasonable

{M3011708;2}

risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

408.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 34
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf USA and Knauf Gips)

409.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

90

410.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

411.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

412.    At all material times, RCB was a person and a consumer of drywall as defined under FDUTPA.

413.    At all material times, Knauf USA engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as RCB.

414.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the gypsum drywall that was installed in the Homes.

415.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such gypsum drywall.

416.    At the time Knauf USA and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, Knauf USA and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

417.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

418.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf USA and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf USA and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

419.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from Knauf USA's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

420.    To the extent Plaintiffs are successful in proving their claims, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their

{M3011708;2}

failure to disclose that the drywall, was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 – 27 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

421. Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as RCB acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

422. Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as RCB.

{M3011708;2}

423.     To the extent Plaintiffs are successful in proving their claims, RCB did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf USA's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf USA's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 35 – UNJUST ENRICHMENT
### (Against Knauf USA and Knauf Gips)

424.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

425.     Plaintiffs in the Complaint allege various claims against RCB for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

426.     Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

94

427.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

428.    Knauf USA and/or Knauf Gips received money from RCB as payment for the defective drywall installed in the Home.

429.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, RCB conferred a benefit, *i.e.*, funds and profit, to Knauf USA and/or Knauf Gips, which had knowledge thereof.

430.    Knauf USA and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by RCB.

431.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.

432.    The circumstances described herein under which Knauf USA and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling

95

defective drywall make it inequitable for Knauf USA and/or Knauf Gips to retain those funds and profits.

433.    RCB has no adequate remedy at law.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 36 – COMMON LAW INDEMNITY
### (Against Knauf Guangdong and Knauf Gips)

434.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

435.    Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

436.    Upon information and belief, Knauf Guangdong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

437.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

438.    RCB is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

96

advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

439.    RCB is entirely without fault for the injuries alleged by Plaintiffs.

440.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Guangdong and/or Knauf Gips.

441.    A special relationship existed between Knauf Guangdong and/or Knauf Gips and RCB such that any liability imposed upon RCB in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Guangdong and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

442.    As a result of the claims that have been filed against RCB, RCB has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Guangdong and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e*., not unreasonably dangerous and fit for use in the construction of residential homes.

443.    If RCB is found to be liable to Plaintiffs, Knauf Guangdong and/or Knauf Gips is liable to RCB for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, including, without

97

limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

**WHEREFORE**, RCB demands judgment for indemnity in its favor against Knauf Guangdong and/or Knauf Gips KG for compensatory damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 37 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Guangdong and Knauf Gips)

444.   RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

445.   This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

446.   Upon information and belief, Knauf Guangdong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

447.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

448.   Plaintiffs in the Complaint allege various claims against RCB for damages caused by defects in the drywall contained in the Homes.

449.   Without admitting any liability or damages to Plaintiffs, should RCB be found liable, Knauf Guangdong and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

450.   RCB has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

451.   To the extent that any common liability is found with respect to RCB, RCB hereby asserts its right of contribution against Knauf Guangdong and/or Knauf Gips for its/their pro rata share of the liability.

452.   Knauf Guangdong and/or Knauf Gips should be required to repay RCB for any loss, damages, costs, and expenses, including attorneys' fees, RCB is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against RCB, in excess of its pro rata share of any common liability.

**WHEREFORE**, RCB demands that judgment be entered against Knauf Guangdong and/or Knauf Gips KG for its pro rata share of the liability, if any, found against RCB in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 38 – EQUITABLE SUBROGATION
**(Against Knauf Guangdong and Knauf Gips)**

453.   RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

454.   This is an action, stated in the alternative, for equitable subrogation.

99

{M3011708;2}

455.   Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

456.   Upon information and belief, Knauf Guangdong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

457.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

458.   RCB is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

459.   Without admitting any liability or damages to Plaintiffs, RCB is not primarily liable for any liability to the Plaintiffs.

460.   To the extent that RCB is required to pay damages for any fault of Knauf Guangdong and/or Knauf Gips to protect its own interests, and not as a volunteer, RCB would be entitled to reimbursement from Knauf Guangdong and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments

100

for the amount of any judgment entered against RCB and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

461.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, RCB demands judgment in its favor and against Knauf Guangdong and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

## COUNT 39 – NEGLIGENCE
### (Against Knauf Guangdong and Knauf Gips)

462.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

463.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

464.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

465.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

{M3011708;2}

466.     RCB was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Guangdong and/or Knauf Gips.

467.     Knauf Guangdong and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Guangdong and/or Knauf Gips owed RCB a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of RCB's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

468.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

469.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

{M3011708;2}

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips breached the duty of care owed to RCB by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

470.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Guangdong's and/or Knauf Gips' duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

471.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose RCB to substantial liability and damages. If Knauf Guangdong and/or Knauf Gips had exercised that degree of care that a prudent or reasonably

cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to RCB would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

472.   Without admitting any liability or damages to Plaintiffs, RCB was damaged by Knauf Guangdong's and/or Knauf Gips' breaches of the duty of care owed to RCB, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 40 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Guangdong and Knauf Gips)

473.   RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

474.   Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

475.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  the gypsum drywall that was installed in the Homes.

476.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

477.    RCB was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

478.    Knauf Guangdong and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Guangdong and/or Knauf Gips owed RCB a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as RCB about any problems or dangers in using the drywall for residential construction.

479.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

{M3011708;2}

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

480.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that unless it warned RCB of the risk of using the drywall, RCB would suffer harm. However, Knauf Guangdong and/or Knauf Gips failed to provide an adequate warning of such danger.

481.    RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.   Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

482.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips breached the duty of care owed to RCB by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such

{M3011708;2}

as RCB about any problems or dangers in using the drywall for residential construction, about which Knauf Guangdong and/or Knauf Gips knew or reasonably should have known.

483.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Guangdong's and/or Knauf Gips' duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

484.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose RCB to substantial liability and damages. If Knauf Guangdong and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Guangdong and/or Knauf Gips would or could have foreseen that damages to RCB would ensue as a result of failing to disclose and/or warn of drywall defects.

485.   Without admitting any liability or damages to Plaintiffs, RCB was damaged by Knauf Guangdong's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

107

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 41 – BREACH OF POST-SALE DUTY TO WARN</u>
**(Against Knauf Guangdong and Knauf Gips)**

486.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

487.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

488.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

489.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

490.    RCB was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

491.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips was

{M3011708;2}

defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Guangdong's and/or Knauf Gips' control and/or was sold to RCB, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

492.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Guangdong and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Guangdong and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

493.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

494.   Consumers, such as RCB, to whom a warning might have been provided, could have been identified by Knauf Guangdong and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

{M3011708;2}

495.    A warning could have been effectively communicated to consumers such as RCB and acted on by them.

496.    At all material times, Knauf Guangdong and/or Knauf Gips stood in a better position than RCB to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that RCB was unaware of potential dangers and/or risk of harm associated with the use of Knauf Guangdong's and/or Knauf Gips' drywall product in residential construction.

497.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in Knauf Guangdong's and/or Knauf Gips' position would have provided a post-sale warning.

498.    Without admitting any liability or damages to Plaintiffs, RCB was damaged by Knauf Guangdong's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

{M3011708;2}

<u>COUNT 42 – STRICT PRODUCTS LIABILITY</u>
**(Against Knauf Guangdong and Knauf Gips)**

499.   RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

500.   Upon information and belief, at all material times, Knauf Guangdong and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

501.   Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

502.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in distributing, placing into the stream of commerce and/or selling gypsum drywall.

503.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips, Knauf Guangdong and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

504.   Knauf Guangdong and/or Knauf Gips expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

505.   Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

111

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

506.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 43 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Guangdong and Knauf Gips)

507.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

508.    Upon information and belief, at all material times, Knauf Guangdong and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making,

marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

509.    Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

510.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

511.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips, Knauf Guangdong and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

512.    Knauf Guangdong and/or Knauf Gips expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

513.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

514.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

113

as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Guangdong and/or Knauf Gips was required to provide a warning. However, Knauf Guangdong and/or Knauf Gips failed to provide an adequate warning of such danger.

515. RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

516. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Guangdong and/or Knauf Gips failed to warn RCB of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

517. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the

114

settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 44
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf Guangdong and Knauf Gips)

518.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

519.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

520.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

521.    At all material times, RCB was a person and a consumer of drywall as defined under FDUTPA.

522.    At all material times, Knauf Guangdong engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as RCB.

523.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the gypsum drywall that was installed in the Homes.

524.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such gypsum drywall.

525.    At the time Knauf Guangdong and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, Knauf Guangdong and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

526.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

527.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Guangdong and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes,

116

Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

528.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from Knauf Guangdong's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

529.   To the extent Plaintiffs are successful in proving their claims, Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 27 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

530.   Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as RCB acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer

117

{M3011708;2}

would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

531.    Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as RCB.

532.    To the extent Plaintiffs are successful in proving their claims, RCB did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Guangdong's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 45 – UNJUST ENRICHMENT
#### (Against Knauf Guangdong and Knauf Gips)

533.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

534.     Plaintiffs, in the Complaint, allege various claims against RCB for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

535.     Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

536.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

537.     Knauf Guangdong and/or Knauf Gips received money from RCB as payment for the defective drywall installed in the Home.

538.     In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, RCB conferred a benefit, *i.e.*, funds and profit, to Knauf Guangdong and/or Knauf Gips, which had knowledge thereof.

539.     Knauf Guangdong and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by RCB.

119

540.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.

541.     The circumstances described herein under which Knauf Guangdong and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Guangdong and/or Knauf Gips to retain those funds and profits.

542.     RCB has no adequate remedy at law.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 46 – COMMON LAW INDEMNITY
### (Against Banner Supply Co.)

543.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

{M3011708;2}

544.     Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

545.     RCB is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Banner Co. RCB justifiably relied on Banner Co. to supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes.

546.     RCB is entirely without fault for the injuries alleged by Plaintiffs.

547.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Co.

548.     A special relationship existed between Banner Co. and RCB such that any liability imposed upon RCB in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Co. RCB purchased drywall from Banner Co.  to be installed in the Homes.  Moreover, to the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Co. was defective and wholly to blame for Plaintiffs' injuries.

549.     As a result of the claims that have been filed against RCB, RCB has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Co. to distribute, supply and/or sell drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

550.     If RCB is found to be liable to Plaintiffs, Banner Co. is liable to RCB for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against RCB in this action and/or any

{M3011708;2}

other action brought by Plaintiffs against RCB, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

**WHEREFORE**, RCB demands judgment for indemnity in its favor against Cross-Claim Defendant, Banner Supply Co., for compensatory damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

## COUNT 47 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Banner Supply Co.)

551.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

552.    This is an action, stated in the alternative, against Banner Co. for contribution pursuant to Section 768.31, Florida Statutes.

553.    Plaintiffs in the Complaint allege various claims against RCB for damages caused by defects in the drywall contained in the Homes.

554.    Without admitting any liability or damages to Plaintiffs, should RCB be found liable, Banner Co. would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

555.    RCB has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

556.    To the extent that any common liability is found with respect to RCB, RCB hereby asserts its right of contribution against Banner Co. for its pro rata share of the liability.

{M3011708;2}

557.     Banner Co. should be required to repay RCB for any loss, damages, costs, and expenses, including attorneys' fees, RCB is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against RCB, in excess of its pro rata share of any common liability.

**WHEREFORE**, RCB demands that judgment be entered against Cross-Claim Defendant Banner Supply Co. for its pro rata share of the liability, if any, found against RCB in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 48 – EQUITABLE SUBROGATION
### (Against Banner Supply Co.)

558.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

559.     This is an action, stated in the alternative, against Banner Co. for equitable subrogation.

560.     Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

561.     RCB is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Banner Co.  RCB justifiably relied on Banner Co. to distribute, sell and/or supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes.

562.     Without admitting any liability or damages to Plaintiffs, RCB is not primarily liable for any liability to the Plaintiffs.

{M3011708;2}

563.     To the extent that RCB is required to pay damages for any fault of Banner Co. to protect its own interests, and not as a volunteer, RCB would be entitled to reimbursement from Banner Co. under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

564.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, RCB demands judgment in its favor and against Cross-Claim Defendant, Banner Supply Co., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 49 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY UNDER COMMON LAW AND/OR FLA. STAT. § 672.314
### (Against Banner Supply Co.)

565.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

566.     This is an action against Banner Co. for breach of the implied warranty of merchantability under the common law and/or Section 672.314, Florida Statutes.

567.     RCB purchased drywall from Banner Co. to be installed in the Homes.  Banner Co. knew that RCB required and expected the drywall it distributed, supplied and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and RCB justifiably

relied on Banner Co.'s skill and judgment to supply such drywall for the construction of residential homes.

568.    Pursuant to the relationship between the parties, Banner Co. is deemed to have provided RCB with an implied warranty of merchantability as to the drywall materials distributed and/or sold by Banner Co.

569.    The drywall distributed, supplied and/or sold by Banner Co. for use in the construction of the Homes was not altered and/or otherwise substantively changed by RCB.

570.    Pursuant to Fla. Stat. § 672.314 and/or common law, Banner Co. warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

571.    Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.  RCB denies it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and RCB is found liable to Plaintiffs, Banner Co. breached the implied warranty of merchantability by distributing, supplying and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

572.    As a result of the claims that have been filed against RCB, RCB has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Co. to distribute, supply and/or sell drywall fit for its intended purpose, *i.e.*, for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against

125

RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

573.    RCB timely notified Banner Co. of the alleged defective gypsum drywall, but Banner Co. has failed to repair or replace the defective gypsum drywall.

**WHEREFORE,** RCB demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 50 – BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Against Banner Supply Co.)

574.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

575.    This is an action against Banner Co. for breach of the implied warranty of fitness.

576.    RCB purchased drywall from Banner Co. to be installed in the Home.

577.    Banner Co. knew that RCB required and expected the drywall it distributed, supplied and/or sold to be safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

578.     RCB justifiably relied on Banner Co.'s skill and judgment to sell drywall fit for the particular purpose of constructing residential homes.

579.    Pursuant to the relationship between the parties, Banner Co. is deemed to have provided RCB with an implied warranty of fitness as to the drywall materials distributed, supplied and/or sold by Banner Co.

{M3011708;2}

580. The drywall distributed, supplied and/or sold by Banner Co. for use in the construction of the Homes was not altered and/or otherwise substantively changed by RCB.

581. Banner Co. impliedly warranted that the drywall was safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

582. Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries. RCB denies it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and RCB is found liable to Plaintiffs, Banner Co. breached the implied warranty of fitness by distributing supplying and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

583. As a result of the claims that have been filed against RCB, RCB has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Co. to distribute and/or sell drywall fit for its intended purpose, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Banner Co.'s wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

584. RCB timely notified Banner Co. of the defective gypsum drywall, but Banner Co. has failed to repair or replace the defective gypsum drywall installed in the Homes.

{M3011708;2}

**WHEREFORE,** RCB demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 51 – NEGLIGENCE
### (Against Banner Supply Co.)

585.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

586.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

587.    Banner Co. distributed, supplied and/or sold to RCB the gypsum drywall that was installed in the Homes.

588.    As such, Banner Co. owed RCB a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of RCB's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

589.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Co. knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

{M3011708;2}

590.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Co. breached its duty of care to RCB by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Banner sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply RCB with drywall that complied with all applicable building and industry standards.

591.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Banner Co.'s duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

592.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Banner Co. knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose RCB to substantial liability and damages. If Banner Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have

foreseen that the drywall was defective and that damages to RCB would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

593.    Without admitting any liability or damages to Plaintiffs, RCB was damaged by Banner Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 52 – NEGLIGENT FAILURE TO WARN
### (Against Banner Supply Co.)

594.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

595.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

596.    Banner Co. distributed, supplied and/or sold to RCB the gypsum drywall that was installed in the Homes.

{M3011708;2}

597.    As such, Banner Co. owed RCB a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn RCB about any problems or dangers in using the drywall for residential construction.

598.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

599.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. knew or should have known that unless it warned RCB of the risk of using the drywall it distributed, sold, and/or supplied, RCB would suffer harm. However, Banner Co. failed to provide an adequate warning of such danger.

600.    RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

601.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{M3011708;2}

as more fully alleged in the Complaint, Banner Co. breached its duty of care to RCB by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn RCB about any problems or dangers in using the drywall for residential construction, about which Banner Co. knew or reasonably should have known.

602.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Banner Co.'s duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

603.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Banner Co. knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose RCB to substantial liability and damages. If Banner Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to RCB would ensue as a result of failing to disclose and/or warn of drywall defects.

604.    Without admitting any liability or damages to Plaintiffs, RCB was damaged by Banner Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and

132

attorneys' fees incurred by RCB in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 53 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against Banner Supply Co.)

605.   RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

606.   Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

607.   Banner Co. distributed, sold and/or supplied to RCB the gypsum drywall that was installed in the Homes.

608.   To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner Co. was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the time such drywall left Banner Co.'s control and/or was sold to RCB, Banner Co. knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

609.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Banner Co., as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of

post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction. Banner Co. breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

610.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

611.    Consumers, such as RCB, to whom a warning might have been provided could have been identified by Banner Co.

612.    A warning could have been effectively communicated to consumers such as RCB and acted on by them.

613.    At all material times, Banner Co. stood in a better position than RCB to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that RCB was unaware of potential dangers and/or risk of harm associated with the use of Banner Co.'s drywall product in residential construction.

614.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable distributor, seller and/or supplier in Banner Co.'s position would have provided a post-sale warning.

615.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, RCB was damaged by Banner Co.'s breach of its post-sale duty to warn, which

directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Banner Co.'s wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

WHEREFORE, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 54 – STRICT PRODUCTS LIABILITY
### (Against Banner Supply Co.)

616.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

617.    At all material times, Banner Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

618.    At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Co. to RCB.

619.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Co., Banner Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

620.    Banner Co. expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

135

621.     Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

622.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner Co. directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 55 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Banner Supply Co.)

623.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

624.     At all material times, Banner Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

136

625.     At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Co. to RCB.

626.     At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Co., Banner Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

627.     Banner Co. expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

628.     Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

629.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner Co. was required to provide a warning. However, Banner Co. failed to provide an adequate warning of such danger.

630.     RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

631.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Co. failed to warn RCB of the

137

unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

632.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co.'s failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 56
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Banner Supply Co.)

633.   RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

634.     This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

635.     The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

636.     At all material times, RCB was a person and a consumer of drywall as defined under FDUTPA.

637.     At all material times, Banner Co. engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as RCB.

638.     Banner Co. advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

639.     At the time Banner Co. advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Co. represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

640.     Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

641.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner Co. sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Co. knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

642.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from Banner Co.'s unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

643.    To the extent Plaintiffs are successful in proving their claims, Banner Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 – 27 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

644.    Banner Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall and/or its failure to disclose that the drywall unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as RCB acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the

ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property

645.    Banner Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as RCB.

646.    To the extent Plaintiffs are successful in proving their claims, RCB did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner Co.'s violations of FDUTPA directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus attorneys'

fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

## COUNT 57– UNJUST ENRICHMENT
### (Against Banner Supply Co.)

647.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

648.     This is an action, stated in the alternative, against Banner Co. for unjust enrichment.

649.     Plaintiffs in the Complaint allege various claims against RCB for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

650.     Banner Co. distributed, sold and/or supplied to RCB the gypsum drywall that was installed in the Homes.

651.     RCB paid Banner Co. for supplying the drywall for the Homes.

652.     Banner Co. received money from RCB as a result of RCB's purchases of defective drywall installed in the Homes.

653.     In delivering such payment, monies and/or funds to Banner Co., RCB conferred a benefit, *i.e.*, funds and profit, to Banner Co., which had knowledge thereof.

654.     Banner Co. voluntarily accepted and retained the benefit conferred upon it by RCB.

655.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co.'s acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made

142

or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.

656.    The circumstances described herein under which Banner Co. profited from selling and/or supplying drywall make it inequitable for Banner Co. to retain those funds and profits.

657.    RCB has no adequate remedy at law.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 58 – COMMON LAW INDEMNITY
### (Against La Suprema Trading Inc.)

658.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

659.    Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

660.    RCB is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

661.    RCB is entirely without fault for the injuries alleged by Plaintiffs.

662.    Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Trading.

663.    A special relationship existed between LS Trading and RCB such that any liability imposed upon RCB in this matter will be secondary, passive, solely vicarious,

{M3011708;2}

constructive, derivative or technical to LS Trading. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Trading was defective and wholly to blame for Plaintiffs' injuries.

664.     As a result of the claims that have been filed against RCB, RCB has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Trading to supply drywall fit for its intended purpose, *i.e.*, for use in the construction of residential homes.

665.     If RCB is found to be liable to Plaintiffs, LS Trading is liable to RCB for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

**WHEREFORE**, RCB demands judgment for indemnity in its favor against Cross-Claim Defendant, La Suprema Trading Inc., for compensatory damages plus attorneys' fees, interest and costs  as damages, and for such other relief as the Court deems just and proper.

### COUNT 59 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against La Suprema Trading, Inc.)

666.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

667.     This is an action, stated in the alternative, against LS Trading for contribution pursuant to Section 768.31, Florida Statutes.

668.     Plaintiffs in the Complaint allege various claims against RCB for damages caused by defects in the drywall contained in the Homes.

669.     Without admitting any liability or damages to Plaintiffs, should RCB be found liable, LS Trading would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

670.     RCB has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

671.     To the extent that any common liability is found with respect to RCB, RCB hereby asserts its right of contribution against LS Trading for its pro rata share of the liability.

672.     LS Trading should be required to repay RCB for any loss, damages, costs, and expenses, including attorneys' fees, RCB is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against RCB, in excess of its pro rata share of any common liability.

**WHEREFORE**, RCB demands that judgment be entered against Cross-Claim Defendant, La Suprema Trading Inc., for its pro rata share of the liability, if any, found against RCB in this action, along with interest and costs, and such other and further relief as this Court deems just and proper.

### COUNT 60 – EQUITABLE SUBROGATION
### (Against La Suprema Trading Inc.)

673.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

674.     This is an action, stated in the alternative, against LS Trading for equitable subrogation.

{M3011708;2}

675.     Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

676.     RCB is not and was not in the business of manufacturing, distributing, or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

677.     Without admitting any liability or damages to Plaintiffs, RCB is not primarily liable for any liability to the Plaintiffs.

678.     To the extent that RCB is required to pay damages for any fault of LS Trading to protect its own interests, and not as a volunteer, RCB would be entitled to reimbursement from LS Trading under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

679.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, RCB demands judgment in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 61 – NEGLIGENCE
### (Against La Suprema Trading Inc.)

680.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

681.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

682.    Upon information and belief, LS Trading imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

683.    RCB was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Trading.

684.    As such, LS Trading owed RCB a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of RCB's customers; and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

685.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

686.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to RCB by among other things, (i) failing to

147

exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply RCB with drywall that complied with all applicable building and industry standards.

687.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in LS Trading's duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

688.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, LS Trading knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose RCB to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to RCB would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

689.    Without admitting any liability or damages to Plaintiffs, RCB was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any

148

payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  LS Trading's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 62 – NEGLIGENT FAILURE TO WARN
### (Against La Suprema Trading Inc.)

690.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

691.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

692.    Upon information and belief, LS Trading imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

693.    RCB was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Trading.

694.    As such, LS Trading owed RCB a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn foreseeable

consumers such as RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as RCB about any problems or dangers in using the drywall for residential construction.

695.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

696.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that unless it warned foreseeable consumers such as RCB of the risk of using the drywall it distributed, sold, and/or supplied, RCB would suffer harm. However, LS Trading failed to provide an adequate warning of such danger.

697.    RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.   Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in  a residential home in the ordinary manner.

698.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to RCB by:  (i)

150

failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers such as RCB about any problems or dangers in using the drywall for residential construction, about which LS Trading knew or reasonably should have known.

699.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in LS Trading's duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

700.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, LS Trading knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose RCB to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to RCB would ensue as a result of failing to disclose and/or warn of drywall defects.

701.   Without admitting any liability or damages to Plaintiffs, RCB was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and

attorneys' fees incurred by RCB in defending against these claims.  LS Trading's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

> **WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 63 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Trading Inc.)

> 702.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

> 703.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

> 704.    Upon information and belief, LS Trading imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

> 705.    RCB was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Trading.

> 706.    To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Trading was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the time such drywall left LS Trading's control and/or was sold to RCB, LS Trading knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

152

707.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, LS Trading as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  LS Trading breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

708.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

709.    Consumers, such as RCB, to whom a warning might have been provided, could have been identified by LS Trading.

710.    A warning could have been effectively communicated to consumers such as RCB and acted on by them.

711.    At all material times, LS Trading stood in a better position than RCB to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that RCB was unaware of potential dangers and/or risk of harm associated with the use of LS Trading's drywall product in residential construction.

712.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable importer, distributor, seller and/or supplier in LS Trading's position would have provided a post-sale warning. To the extent Plaintiffs are successful in proving that the drywall in the Homes

153

was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint

713.   Without admitting any liability or damages to Plaintiffs, RCB was damaged by LS Trading's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.   LS Trading's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 64 – STRICT PRODUCTS LIABILITY
(Against La Suprema Trading Inc.)

714.   RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

715.   At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

716.   Upon information and belief, the gypsum drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading.

{M3011708;2}

717.    At the time said drywall was placed into the stream of commerce, imported distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

718.    LS Trading expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

719.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

720.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Trading directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  LS Trading's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

155

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 65 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Trading Inc.)

721.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

722.    At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

723.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Trading.

724.    At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

725.    LS Trading expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

726.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

727.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential

156

construction involved a danger of which LS Trading was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

728.    RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

729.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Trading failed to warn RCB of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

730.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  LS

Trading's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 66
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against La Suprema Trading Inc.)

731.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

732.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

733.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

734.    At all material times, RCB was a person and a consumer of drywall as defined under FDUTPA.

735.    At all material times, LS Trading engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as RCB.

736.    LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

737.   At the time LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Trading represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

738.   Plaintiffs, in the Complaint, allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

739.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time LS Trading imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Trading knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

740.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from LS Trading's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

741.   To the extent Plaintiffs are successful in proving their claims, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing,

{M3011708;2}

supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 27 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

742.    LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as RCB acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property

743.    LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as RCB.

744.    To the extent Plaintiffs are successful in proving their claims, RCB did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs.

{M3011708;2}

LS Trading's violations of FDUTPA directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  LS Trading's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 67 – UNJUST ENRICHMENT
### (Against La Suprema Trading Inc.)

745.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

746.     Plaintiffs in the Complaint allege various claims against RCB for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

747.     LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

748.     LS Trading received money from RCB as payment for the alleged defective drywall installed in the Homes.

749.     In delivering such payment, monies and/or funds to pay for the drywall that was installed in the Homes, RCB conferred a benefit, *i.e.*, funds and profit, to LS Trading, which had knowledge thereof.

161

750.   LS Trading voluntarily accepted and retained the benefit conferred upon it by RCB.

751.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.

752.   The circumstances described herein under which LS Trading profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Trading to retain those funds and profits.

753.   RCB has no adequate remedy at law.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 68 – COMMON LAW INDEMNITY
### (Against La Suprema Enterprise Inc.)

754.   RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

755.   Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

{M3011708;2}

756.     RCB is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

757.     RCB is entirely without fault for the injuries alleged by Plaintiffs.

758.     Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Enterprise.

759.     A special relationship existed between LS Enterprise and RCB such that any liability imposed upon RCB in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Enterprise. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Enterprise was defective and wholly to blame for Plaintiffs' injuries.

760.     As a result of the claims that have been filed against RCB, RCB has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Enterprise to supply drywall fit for its intended purpose, *i.e.*, for use in the construction of residential homes.

761.     If RCB is found to be liable to Plaintiffs, LS Enterprise is liable to RCB for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

**WHEREFORE**, RCB demands judgment for indemnity in its favor against Cross-Claim Defendant La Suprema Enterprise Inc. for compensatory damages plus attorneys' fees, interest and costs and for such other relief as the Court deems just and proper.

## COUNT 69 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against La Suprema Enterprise, Inc.)

762. RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

763. This is an action, stated in the alternative, against LS Enterprise for contribution pursuant to Section 768.31, Florida Statutes.

764. Plaintiffs in the Complaint allege various claims against RCB for damages caused by defects in the drywall contained in the Homes.

765. Without admitting any liability or damages to Plaintiffs, should RCB be found liable, LS Enterprise would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

766. RCB has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

767. To the extent that any common liability is found with respect to RCB, RCB hereby asserts its right of contribution against LS Enterprise for its pro rata share of the liability.

768. LS Enterprise should be required to repay RCB for any loss, damages, costs, and expenses, including attorneys' fees, RCB is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against RCB, in excess of its pro rata share of any common liability.

{M3011708;2}

**WHEREFORE**, RCB demands that judgment be entered against Cross-Claim Defendant, La Suprema Enterprise Inc., for its pro rata share of the liability, if any, found against RCB in this action, along with interest and costs, together with such other and further relief as this Court deems just and proper.

**COUNT 70 – EQUITABLE SUBROGATION**
**(Against La Suprema Enterprise Inc.)**

769. RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

770. This is an action, stated in the alternative, against LS Enterprise for equitable subrogation.

771. Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

772. RCB is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

773. Without admitting any liability or damages to Plaintiffs, RCB is not primarily liable for any liability to the Plaintiffs.

774. To the extent that RCB is required to pay damages for any fault of LS Enterprise to protect its own interests, and not as a volunteer, RCB would be entitled to reimbursement from LS Enterprise under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against

165

RCB, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

775.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, RCB demands judgment in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

**COUNT 71 – NEGLIGENCE**
**(Against La Suprema Enterprise Inc.)**

776.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

777.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

778.    Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

779.    RCB was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Enterprise.

780.    As such, LS Enterprise owed RCB a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of RCB's customers;  and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

166

781.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

782.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to RCB by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply RCB with drywall that complied with all applicable building and industry standards.

783.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in LS Enterprise's duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

784.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, LS Enterprise knew or

{M3011708;2}

reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose RCB to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to RCB would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

785.   Without admitting any liability or damages to Plaintiffs, RCB was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 72 – NEGLIGENT FAILURE TO WARN
### (Against La Suprema Enterprise Inc.)

786.   RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

168

787.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

788.    Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

789.    RCB was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Enterprise.

790.    As such, LS Enterprise owed RCB a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as RCB about any problems or dangers in using the drywall for residential construction.

791.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

792.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that unless it warned foreseeable consumers such as RCB of the risk of using the drywall it distributed, sold,

and/or supplied, RCB would suffer harm. However, LS Enterprise failed to provide an adequate warning of such danger.

793.    RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.   Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

794.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to RCB by:  (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers such as RCB about any problems or dangers in using the drywall for residential construction, about which LS Enterprise knew or reasonably should have known.

795.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in LS Enterprise's duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

796.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, LS Enterprise knew or

reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose RCB to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to RCB would ensue as a result of failing to disclose and/or warn of drywall defects.

797.     Without admitting any liability or damages to Plaintiffs, RCB was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 73 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Enterprise Inc.)

798.     RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

799.     Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

800.    Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

801.    RCB was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Enterprise.

802.    To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Enterprise was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the time such drywall left LS Enterprise's control and/or was sold to RCB, LS Enterprise knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

803.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, LS Enterprise as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  LS Enterprise breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

804.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

{M3011708;2}

805.     Consumers, such as RCB, to whom a warning might have been provided, could have been identified by LS Enterprise.

806.     A warning could have been effectively communicated to consumers such as RCB and acted on by them.

807.     At all material times, LS Enterprise stood in a better position than RCB to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that RCB was unaware of potential dangers and/or risk of harm associated with the use of LS Enterprise's drywall product in residential construction.

808.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable importer, distributor, seller and/or supplier in LS Enterprise's position would have provided a post-sale warning.

809.     Without admitting any liability or damages to Plaintiffs, RCB was damaged by LS Enterprise's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

{M3011708;2}

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 74 – STRICT PRODUCTS LIABILITY**
**(Against La Suprema Enterprise)**

810.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

811.    At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

812.    Upon information and belief, the gypsum drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise.

813.    At the time said drywall was placed into the stream of commerce, imported distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

814.    LS Enterprise expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

815.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

816.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

174

as more fully alleged in the Complaint, the defective gypsum drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Enterprise directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 75 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Enterprise)

817.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

818.    At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

819.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Enterprise.

820.    At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

{M3011708;2}

821.    LS Enterprise expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

822.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

823.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which LS Enterprise was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

824.    RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

825.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Enterprise failed to warn RCB of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

176

826.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. LS Enterprise's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 76
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
**(Against La Suprema Enterprise Inc.)**

827.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

828.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

829.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable,

deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

830.  At all material times, RCB was a person and a consumer of drywall as defined under FDUTPA.

831.  At all material times, LS Enterprise engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as RCB.

832.   LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

833.  At the time LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Enterprise represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

834.  Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

835.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time LS Enterprise imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Enterprise knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

{M3011708;2}

836. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from LS Enterprise's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

837. To the extent Plaintiffs are successful in proving their claims, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 27 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

838. LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as RCB acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became

aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property

839.   LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as RCB.

840.   To the extent Plaintiffs are successful in proving their claims, RCB did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Enterprise's violations of FDUTPA directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. LS Enterprise's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

{M3011708;2}

## COUNT 77 – UNJUST ENRICHMENT
### (Against La Suprema Enterprise Inc.)

841.    RCB reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

842.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

843.    LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

844.    LS Enterprise received money from RCB as payment for drywall installed in the Homes.

845.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, RCB conferred a benefit, *i.e.*, funds and profit, to LS Enterprise, which had knowledge thereof.

846.    LS Enterprise voluntarily accepted and retained the benefit conferred upon it by RCB.

847.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.

848.    The circumstances described herein under which LS Enterprise profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Enterprise to retain those funds and profits.

849.    RCB has no adequate remedy at law.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## THIRD-PARTY CLAIM AGAINST BANNER POMPANO

### The Parties, Jurisdiction and Venue

1.    This is an action for damages within the monetary jurisdiction of this Court.

2.    The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against RCB.

3.    RCB was and is a Florida corporation doing business in Broward County, Florida, where this cause of action arose.  At all material times, RCB was a drywall subcontractor in Broward County.

4.    RCB has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used in the construction of their homes (the "**Homes**") was defective and caused damages to Plaintiffs.

5.    RCB denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.    Third-Party Defendant, Banner Pompano, is a Florida corporation having its principal place of business in Broward County, Florida, where this cause of action arose.

7.    Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs.

8.      Moreover, this Third-Party Claim arises from the same transactions or occurrences as Plaintiffs' action.   Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Third-Party Claim and over the instant Third-Party Defendant.

**General Allegations**

9.      As set forth in more detail in the Complaint, Plaintiffs allege that their Homes were built using defective drywall designed, manufactured and processed in China, and that RCB is liable for damages to Plaintiffs.[11]

10.     Plaintiffs allege that the drywall installed in their Homes has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances and Plaintiffs' personal property (the "**Other Property**").

11.     Plaintiffs further allege that the drywall contained in their Homes was manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of the Cross-Claim Defendants.

12.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.     RCB purchased drywall that was installed in the Homes directly from Banner Co. and/or Banner Pompano (together, "**Banner**").

14.     At all material times, Banner knew that the drywall purchased for the Homes was going to be used in construction of residential homes.  Banner knew that RCB required and

---

[11]   The named class Plaintiffs and other members of the putative class have asserted claims against RCB in this Action, as well as other actions in the state and federal courts.  The damages sought by RCB in this Third-Party Claim against the Third-Party Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

{M3011708;2}

expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

15.     Upon information and belief, Banner procured drywall that was installed in the Homes from an import-export specialist, LS Trading and/or LS Enterprise (together, "**La Suprema**").  At all material times, La Suprema knew that such drywall was going to be used in construction of residential homes.

16.     Upon information and belief, Banner also procured drywall that was installed in the Homes from the Knauf Cross-Claim Defendants.  At all material times, the Knauf Cross-Claim Defendants knew that such drywall was going to be used in the construction of residential homes.

17.     Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips, Knauf Tianjin, La Suprema and Banner knew that some of Banner's customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by Knauf Tianjin emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

18.     Knauf Tianjin consulted with Knauf Gips about the drywall complaints.

19.     Hans-Ulrich Hummel, head of research and development for Knauf Gips in Germany was aware of the "big problems" with Knauf boards from China, and investigated complaints of noxious odors being emitted by the drywall.

20.     Upon information and belief, Knauf Tianjin and/or Knauf Gips conducted their own tests of the drywall and advised Banner that the drywall was "smelly."

21.     Upon information and belief, Banner also conducted tests of the drywall installed in certain South Florida residential homes.

22.     Upon information and belief, Knauf Tianjin, Knauf Gips and/or Banner did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

23.     Upon information and belief, Knauf Gips and Knauf Tianjin were concerned about the potential fallout if the problems with the drywall product became widely known. In a concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Knauf Tianjin entered into a confidential settlement agreement with Banner in January of 2007 (the "**Secret Agreement**").

24.     The Secret Agreement stipulated that Knauf Tianjin would take back all of Banner's unsold drywall, pay Banner for storing it, and replace Banner's inventory of Chinese drywall with thousands of pieces of drywall made by U.S. manufacturers.  In return, Banner promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

25.     While Knauf Tianjin recalled the drywall product for Banner, it did not recall or take back the product from its other customers, nor did it warn them of the defective nature of the drywall.

26.     Upon information and belief, Knauf Tianjin entered into the Secret Agreement to buy the silence of Banner and conceal defects in the drywall from consumers.  The Secret Agreement purposefully kept consumers, such as RCB and other installers, builders and contractors, in the dark about the problems with the drywall.   The Secret Agreement

185

acknowledged that if Banner broke its promise to remain silent, Knauf Tianjin could be irreparably harmed.

27.     RCB did not know and was not made aware of the problems with the drywall. The drywall manufactured, exported, imported, distributed and/or sold by Banner, La Suprema, and/or the Knauf Cross-Claim Defendants for use in the construction of the Homes was not altered and/or otherwise substantively changed by RCB.

28.     For the purpose of this Third-Party Claim only, and not constituting an admission of the allegations or liability by RCB, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

29.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, Banner Pompano had greater knowledge, and/or stood in a better position than RCB to know, of the drywall's applications, performance, and dangers.

30.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Pompano's acts and omissions in manufacturing, exporting, importing, distributing and/or

selling the defective drywall directly and proximately caused and/or exposed RCB to substantial liability and damages to Plaintiffs.

31.     Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the gypsum drywall product purchased by RCB for installation in the Homes.

32.     Moreover, RCB did not know and was never informed by Banner Pompano that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

33.     Consequently, Banner Pompano is liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to RCB in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

34.     Additionally, Banner Pompano's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

35.     RCB has hired the undersigned counsel and has agreed to pay a reasonable fee for its services.

36.     All conditions precedent to the filing of this Third-Party Claim have been performed, excused, or otherwise waived.

### COUNT 1 – COMMON LAW INDEMNITY
### (Against Banner Pompano)

37.     RCB reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

{M3011708;2}

38.     Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

39.     RCB is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by Banner Pompano.  RCB justifiably relied on Banner Pompano to supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes.

40.     RCB is entirely without fault for the injuries alleged by Plaintiffs.

41.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Pompano.

42.     A special relationship existed between Banner Pompano and RCB such that any liability imposed upon RCB in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Pompano. RCB purchased drywall from Banner Pompano to be installed in the Home.  Moreover, to the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Pompano was defective and wholly to blame for Plaintiffs' injuries.

43.     As a result of the claims that have been filed against RCB, RCB has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Pompano to supply drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

44.     If RCB is found to be liable to Plaintiffs, Banner Pompano is liable to RCB for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against RCB in this action and/or

{M3011708;2}

any other action brought by Plaintiffs against RCB, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

**WHEREFORE**, RCB demands judgment for indemnity in its favor against Third-Party Defendant, Banner Supply Company Pompano, LLC, for compensatory damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 2 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Banner Pompano)

45.     RCB reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

46.     This is an action, stated in the alternative, against Banner Pompano for contribution pursuant to Section 768.31, Florida Statutes.

47.     Plaintiffs in the Complaint allege various claims against RCB for damages caused by defects in the drywall contained in the Homes.

48.     Without admitting any liability or damages to Plaintiffs, should RCB be found liable, Banner Pompano would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

49.     RCB has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

189

50.     To the extent that any common liability is found with respect to RCB, RCB hereby asserts its right of contribution against Banner Pompano for its pro rata share of the liability.

51.     Banner Pompano should be required to repay RCB for any loss, damages, costs, and expenses, including attorneys' fees, RCB is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against RCB, in excess of its pro rata share of any common liability.

**WHEREFORE**, RCB demands that judgment be entered against Third-Party Defendant, Banner Supply Company Pompano, LLC, for its pro rata share of the liability, if any, found against RCB in this action, along with interest and costs, and such other and further relief as this Court deems just and proper.

## COUNT 3 – EQUITABLE SUBROGATION
### (Against Banner Pompano)

52.     RCB reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

53.     This is an action, stated in the alternative, against Banner Pompano for equitable subrogation.

54.     Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.

55.     RCB is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by Banner Pompano.  RCB justifiably relied on Banner Pompano to supply drywall that

was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes.

56. Without admitting any liability or damages to Plaintiffs, RCB is not primarily liable for any liability to the Plaintiffs.

57. To the extent that RCB is required to pay damages for any fault of Banner Pompano to protect its own interests, and not as a volunteer, RCB would be entitled to reimbursement from Banner Pompano under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against RCB, including, without limitation, payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payments for the amount of any judgment entered against RCB and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against RCB, as well as reasonable costs and attorneys' fees incurred by RCB in defending against the claims brought by Plaintiffs.

58. Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, RCB demands judgment in its favor and against Third-Party Defendant, Banner Supply Company Pompano, LLC, for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 4 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### UNDER COMMON LAW AND/OR FLA. STAT. § 672.314
### (Against Banner Pompano)

59. RCB reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

60. This is an action against Banner Pompano for breach of the implied warranty of merchantability under the common law and/or Section 672.314, Florida Statutes.

{M3011708;2}

61.     RCB purchased drywall from Banner Pompano to be installed in the Homes. Banner Pompano knew that RCB required and expected the drywall it distributed, supplied and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and RCB justifiably relied on Banner Pompano's skill and judgment to supply such drywall for the construction of a residential homes.

62.     Pursuant to the relationship between the parties, Banner Pompano is deemed to have provided RCB with an implied warranty of merchantability as to the drywall materials sold and/or supplied by Banner Pompano.

63.     The drywall distributed, supplied and/or sold by Banner Pompano for use in the construction of the Homes was not altered and/or otherwise substantively changed by RCB.

64.     Pursuant to Fla. Stat. § 672.314 and/or common law, Banner Pompano warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

65.     Plaintiffs in the Complaint allege various claims against RCB for damages caused by defective drywall contained in the Homes.  RCB denies it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes was defective and not merchantable and RCB is found liable to Plaintiffs, Banner Pompano breached the implied warranty of merchantability by distributing, selling and/or supplying drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.  Banner Pompano's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

{M3011708;2}

66.     As a result of the claims that have been filed against RCB, RCB has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Pompano to distribute, sell and/or supply drywall fit for its intended purpose, *i.e.*, for use in the construction of residential homes.

67.     RCB timely notified Banner Pompano of the defective gypsum drywall, but Banner Pompano has failed to repair or replace the defective gypsum drywall.

**WHEREFORE,** RCB demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Pompano, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 5 – BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Against Banner Pompano)

68.     RCB reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

69.     This is an action against Banner Pompano for breach of the implied warranty of fitness.

70.     RCB purchased drywall from Banner Pompanoto be installed in the Homes.

71.     Banner Pompano knew that RCB required and expected the drywall it sold and/or supplied to be safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

72.     RCB justifiably relied on Banner Pompano's skill and judgment to supply drywall fit for the particular purpose of constructing residential homes.

73.     Pursuant to the relationship between the parties, Banner Pompano is deemed to have provided RCB with an implied warranty of fitness as to the drywall materials sold and/or supplied by Banner Pompano.

74.     The drywall sold and/or supplied by Banner Pompano for use in the construction of the Homes was not altered and/or otherwise substantively changed by RCB.

75.     Banner Pompano impliedly warranted that the drywall was safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

76.     Plaintiffs in the Complaint allege that the defective drywall in the Homes proximately caused their injuries.  RCB denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes was defective and not fit for the particular purpose for which the drywall was required and RCB is found liable to Plaintiffs, Banner Pompano breached the implied warranty of fitness by selling and/or supplying drywall that was defective and not reasonably fit for the use in the construction of residential homes.  Banner Pompano's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

77.     As a result of the claims that have been filed against RCB, RCB has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Pompano to sell and/or supply drywall fit for its intended purpose.

78.     RCB timely notified Banner Pompano of the defective gypsum drywall, but Banner Pompano has failed to repair or replace the defective gypsum drywall installed in the Homes.

{M3011708;2}

**WHEREFORE,** RCB demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Pompano, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 6 – NEGLIGENCE
### (Against Banner Pompano)

79.     RCB reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

80.     Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

81.     Banner Pompano distributed, sold and/or supplied to RCB the gypsum drywall that was installed in the Homes.

82.     As such, Banner Pompano owed RCB a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of RCB's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

83.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{M3011708;2}

Plaintiffs' Complaint, Banner Pompano knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

84.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Pompano breached its duty of care to RCB by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply RCB with drywall that complied with all applicable building and industry standards.

85.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, such breaches in Banner Pompano's duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

86.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Banner Pompano knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying, and/or selling defective drywall would expose RCB to substantial liability and damages.  If Banner Pompano had exercised that degree of care that a prudent or reasonably

cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to RCB would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

87.     Without admitting any liability or damages to Plaintiffs, RCB was damaged by Banner Pompano's breaches of its duties of care, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Banner Pompano's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Pompano, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – NEGLIGENT FAILURE TO WARN
### (Against Banner Pompano)

88.     RCB reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

89.     Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

90.     Banner Pompano distributed, sold and/or supplied to RCB the gypsum drywall that was installed in the Homes.

91.     As such, Banner Pompano owed RCB a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn RCB about any problems or dangers in using the drywall for residential construction.

92.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Pompano knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

93.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Pompano knew or should have known that unless it warned RCB of the risk of using the drywall it distributed, sold, and/or supplied, RCB would suffer harm. However, Banner Pompano failed to provide an adequate warning of such danger.

94.     RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property

{M3011708;2}

and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

95.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Pompano breached its duty of care to RCB by (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn RCB about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn RCB about any problems or dangers in using the drywall for residential construction, about which Banner Pompano knew or reasonably should have known.

96.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Banner Pompano's duty of care were the direct and proximate cause of RCB's injuries, losses, and damages.

97.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Banner Pompano knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose RCB to substantial liability and damages. If Banner Pompano had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to RCB would ensue as a result of failing to disclose and/or warn of drywall defects.

98.     Without admitting any liability or damages to Plaintiffs, RCB was damaged by Banner Pompano's breaches of its duties of care, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Banner Pompano's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Pompano, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 8 – BREACH OF THE POST-SALE DUTY TO WARN
**(Against Banner Pompano)**

99.     RCB reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

100.     Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

101.     Banner Pompano distributed, supplied and/or sold to RCB the gypsum drywall that was installed in the Homes.

102.     To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner Pompano was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the time such drywall left Banner Pompano's control and/or was sold to RCB, Banner Pompano knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

103.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Port St. Lucie as the distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction. Port St. Lucie breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

104.     To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

105.     Consumers, such as RCB, to whom a warning might have been provided, could have been identified by Banner Pompano.

106.     A warning could have been effectively communicated to consumers such as RCB and acted on by them.

107.     At all material times, Banner Pompano stood in a better position than RCB to know of such drywall's applications, performance, risks and dangers and it could reasonably be

{M3011708;2}

assumed that RCB was unaware of potential dangers and/or risk of harm associated with the use of Banner Pompano's drywall product in residential construction.

108.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable distributor, seller and/or supplier in Banner Pompano's position would have provided a post-sale warning.

109.    Without admitting any liability or damages to Plaintiffs, RCB was damaged by Banner Pompano's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.  Banner Pompano's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Pompano, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9 – STRICT PRODUCTS LIABILITY
### (Against Banner Pompano)

110.    RCB reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

111.    At all material times, Banner Pompano was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

{M3011708;2}

112.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Pompano to RCB.

113.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Pompano, Banner Pompano intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

114.    Banner Pompano expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

115.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

116.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner Pompano directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Banner Pompano's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

{M3011708;2}

**WHEREFORE**, RCB demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Pompano, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 10 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
**(Against Banner Pompano)**

117.    RCB reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

118.    At all material times, Banner Pompano was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

119.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Pompano to RCB.

120.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Pompano, Banner Pompano intended that the drywall reach consumers and/or ultimate users of the drywall, such as RCB.

121.    Banner Pompano expected the gypsum drywall to reach RCB and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach RCB and/or the Homes without substantial change affecting that condition.

122.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

123.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{M3011708;2}

as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner Pompano was required to provide a warning.  However, Banner Pompano failed to provide an adequate warning of such danger.

124.    RCB did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

125.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Pompano failed to warn RCB of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, RCB had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

126.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Pompano's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.

{M3011708;2}

Banner Pompano's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Pompano, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>**COUNT 11**</u>
<u>**VIOLATIONS OF THE FLORIDA DECEPTIVE AND**</u>
<u>**UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**</u>
**(Against Banner Pompano)**

127.     RCB reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

128.     This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

129.     The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

130.     At all material times, RCB was a person and a consumer of drywall as defined under FDUTPA.

131.     At all material times, Banner Pompano engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as RCB.

132.     Banner Pompano advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

{M3011708;2}

133.    At the time Banner Pompano advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Pompano represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

134.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

135.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner Pompano sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Pompano knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

136.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from Banner Pompano's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

137.    To the extent Plaintiffs are successful in proving their claims, Banner Pompano's unfair and deceptive conduct in advertising, soliciting, offering, distributing,

{M3011708;2}

supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 27 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

138.    Banner Pompano's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as RCB acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property

139.    Banner Pompano's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as RCB.

140.    To the extent Plaintiffs are successful in proving their claims, RCB did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs.

Banner Pompano's violations of FDUTPA directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims. Banner Pompano's wrongful conduct also caused damages to RCB, including but not limited to RCB's loss of reputation, goodwill and lost profits.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Pompano, LLC, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 12 – UNJUST ENRICHMENT
### (Against Banner Pompano)

141.    RCB reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

142.    Plaintiffs in the Complaint allege various claims against RCB for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

143.    This is an action, stated in the alternative, against Banner Pompano for unjust enrichment.

144.    Banner Pompano distributed, supplied and/or sold to RCB the gypsum drywall that was installed in the Homes.

145.    RCB paid Banner Pompano money for selling and/or supplying drywall for the Homes.

{M3011708;2}

146.    Banner Pompano received money from RCB as a result of RCB's purchases of defective drywall installed in the Homes.

147.    In delivering such payment, monies and/or funds to Banner Pompano, RCB conferred a benefit, *i.e.*, funds and profit, to Banner Pompano, which had knowledge thereof.

148.    Banner Pompanovoluntarily accepted and retained the benefit conferred upon it by RCB.

149.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Pompano's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed RCB to substantial liability and damages, including but not limited to any payments made or to be made on behalf of RCB to or on behalf of Plaintiffs, payment for the amount of any judgment entered against RCB in this action and/or any other action brought by Plaintiffs against RCB, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by RCB in defending against these claims.

150.    The circumstances described herein under which Banner Pompano profited from distributing, selling and/or supplying drywall make it inequitable for Banner Pompano to retain those funds and profits.

151.    RCB has no adequate remedy at law.

**WHEREFORE**, RCB demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Pompano, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{M3011708;2}

## DEMAND FOR JURY TRIAL

**COMES NOW** Defendant/Cross-Plaintiff and Third-Party-Plaintiff Robert/Charles

Builders, Inc. and hereby demands a trial by jury as to all issues so triable as a matter of right.

Respectfully submitted this 26th day of January, 2011.

### AKERMAN SENTERFITT

By: /s/ Michael A. Sayre
Valerie B. Greenberg, Esq. (Fla. Bar No. 026514)
Samantha Kavanaugh, Esq. (Fla. Bar No. 0194662)
Michael Sayre, Esq. (Fla. Bar No. 17607)
One Southeast Third Avenue, 25th Floor
Miami, FL  33131-1714
Phone:  (305) 374-5600
Fax:  (305) 374-5095
Email: valerie.greenberg@akerman.com
    samantha.kavanaugh@akerman.com
    michael.sayre@akerman.com

*Attorneys for Robert/Charles Builders, Inc.*

Co-Counsel for Robert/Charles Builders, Inc.
Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 18133)
D. Skylar Rosenbloom (La. Bar No. 31309)
Canal Place
365 Canal Street · Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
    Susie.morgan@phelps.com
    Skylar.rosenbloom@phelps.com

{M3011708;2}

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that *Defendant RCB Construction, Inc.'s Cross Claim* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA 70163 (kmiller@frilot.com), by U.S. Mail and e-mail <u>or</u> by hand delivery and email <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 26th day of January, 2011.

/s/      Michael A. Sayre

{M3011708;2}