1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
2

3   ****************************************************************

4   IN RE: CHINESE-MANUFACTURED
    DRYWALL PRODUCTS LIABILITY
5   LITIGATION

6                          CIVIL DOCKET NO. 09-MD-2047-EEF-JCW
                           NEW ORLEANS, LOUISIANA
10:12AM   7                THURSDAY, JANUARY 20, 2011, 10:15 A.M.

8   THIS DOCUMENT RELATES TO
    ALL CASES
9
    ****************************************************************
10

11                 TRANSCRIPT OF MOTIONS PROCEEDINGS
              HEARD BEFORE THE HONORABLE ELDON E. FALLON
12                   UNITED STATES DISTRICT JUDGE

13

14  APPEARANCES:

15

16  FOR THE PLAINTIFFS:
                          LEVIN FISHBEIN SEDRAN & BERMAN
17                        BY:  ARNOLD LEVIN, ESQUIRE
                          510 WALNUT STREET, SUITE 500
18                        PHILADELPHIA PA  19106

19
                          COLSON HICKS EIDSON
20                        BY:  PATRICK S. MONTOYA, ESQUIRE
                          225 ALHAMBRA CIRCLE, PENTHOUSE
21                        CORAL GABLES FL   33134

22

23  FOR THE DEFENDANTS:   HOGAN LOVELLS
                          BY:  FRANK T. SPANO, ESQUIRE
24                        875 THIRD AVENUE
                          NEW YORK NY  10022
25

1   APPEARANCES CONTINUED:

2

3   FOR ALL BANNER SUPPLY
    ENTITIES:                    WEINBERG WHEELER HUDGINS GUNN & DIAL
4                                BY:  NICHOLAS P. PANAYOTOPOULOS, ESQUIRE
                                 3344 PEACHTREE ROAD, SUITE 2400
5                                ATLANTA GA  30326

6

7   OFFICIAL COURT REPORTER:     CATHY PEPPER, CRR, RMR, CCR
                                 500 POYDRAS STREET, ROOM B406
8                                NEW ORLEANS LA  70130
                                 (504) 589-7779
9
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
10  PRODUCED BY COMPUTER.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                            **I N D E X**

2

3    <u>MOTIONS</u>                                              <u>PAGE</u>

4

5    PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR ACCOUNTING     4

6    AND OTHER RELIEF, RECORD DOCUMENT 6669.................

7    PLAINTIFF'S MOTION TO LIFT THE STAY ON OMNIBUS MOTION      4

8    FOR PRELIMINARY DEFAULT, RECORD DOCUMENT 5939.........

9    BANNER'S REQUEST THAT CTEH PRODUCE DISCOVERY RELATED      11

10   TO MEETING WITH THE CPSC, RECORD DOCUMENT 6634.........

11   PLAINTIFFS' STEERING COMMITTEE'S MOTION CHALLENGING       12

12   THE ADEQUACY AND COMPLETENESS OF DISCOVERY OF THE

13   DEFENDANTS TAISHAN GYPSUM, RECORD DOCUMENTS 6964 AND

14   6981.................................................

15

16

17

18

19

20

21

22

23

24

25

**P-R-O-C-E-E-D-I-N-G-S**

THURSDAY, JANUARY 20, 2011

M O R N I N G   S E S S I O N

(COURT CALLED TO ORDER)

THE DEPUTY CLERK:  Everyone rise.

THE COURT:  Be seated, please.  We have a number of motions.  I met with the parties earlier today, and many of the motions have now been resolved.  There are six motions that need to be discussed.  Using the proposed agenda, the first motion that I have is Plaintiffs' Steering Committee's motion for accounting and other relief.  The record document is 6669.

The issue there is whether or not they should lift the stay for that and set it for hearing.  I am looking to the parties to give me a briefing schedule on that, and we'll then set it for hearing, and I'll hear oral argument on that.

MR. LEVIN:  Thank you, sir.  That will be coming to you.  It's in the hopper.

THE COURT:  The next one, well, that's the same one.  G is the same thing, isn't it?

MR. LEVIN:  Well, it's the same relief, a different motion.

THE COURT:  The preliminary draft of H is Plaintiff's motion to lift the stay on omnibus motion for preliminary

10:20AM 1  default.

10:20AM 2          MR. LEVIN:  We're going to argue that even though we

10:20AM 3  don't have a formal response on the record or an entry of

10:20AM 4  appearance.

10:20AM 5          THE COURT:  Let me hear, then, from that one.  The

10:20AM 6  record docket number is 5939.

10:20AM 7          MR. LEVIN:  Your Honor, this is a motion based on

10:20AM 8  indeterminate defendant complaint where we sued several Chinese

10:20AM 9  entities.  We went to the expense of translating the complaint

10:20AM 10 into their native language, servicing them through the Hague,

10:20AM 11 having them either reject service or accept service but not enter

10:21AM 12 appearance.

10:21AM 13         This particular complaint was caused to be filed

10:21AM 14 because of the manner in which business is done by the Chinese

10:21AM 15 companies.  They don't always put their name on a product.

10:21AM 16 Sometimes it says *Made in China*, and sometimes there are other

10:21AM 17 markings that we can't identify.  We determined that these

10:21AM 18 Chinese companies are related to the Taishan companies, and we

10:21AM 19 effectuated service against Taishan.  We would like to take a

10:21AM 20 default.

10:21AM 21         Taishan has come in and said they needed some time

10:21AM 22 to think about it.  We gave them a lot of time to think about it.

10:21AM 23 It's the end of thinking time.  They have not entered an

10:21AM 24 appearance, their counsel.  Their counsel has told us and will

10:21AM 25 tell you that they went to China and they talked to the Chinese,

10:21AM 1    and the Chinese told them they had -- that these companies had no

10:22AM 2    involvement in the problem that we have in Florida and in

10:22AM 3    Virginia with regard to the Taishan products.

10:22AM 4            That's not good enough for us.  I mean, they could

10:22AM 5    enter their special appearance like they did for Taishan.  We can

10:22AM 6    proceed with discovery.  That discovery is going to be necessary

10:22AM 7    on alter-ego theories and undertaking theories and other

10:22AM 8    theories, and you just -- and if -- and they have relief.

10:22AM 9            I mean, we know that is there a Rule 11, and we're

10:22AM 10   willing to deal with a Rule 11 that's filed in accordance with

10:22AM 11   the Federal Rules of Civil Procedure, but it does us no good for

10:22AM 12   Chinese companies that have secrecy laws, they don't answer

10:22AM 13   questions at depositions because of the Chinese secrecy law, to

10:22AM 14   take the word of counsel, and I don't -- I'm not faulting counsel

10:22AM 15   who went to China and talked to Chinese principals who told them

10:23AM 16   we have nothing to do with the situation with these products in

10:23AM 17   the United States, even as to the company that they have entered

10:23AM 18   their appearance from, we're getting nowhere with them.

10:23AM 19           We have a significant problem.  We have residents

10:23AM 20   in homes that can't live in their homes, and we just -- we just

10:23AM 21   can't deal with that type of informal discovery.  We have an

10:23AM 22   obligation to proceed.  Having not entered --

10:23AM 23       THE COURT:  What are you asking for?  What are you

10:23AM 24   asking for?  To lift the stay so that you can put on evidence to

10:23AM 25   show that they are responsible?

10:23AM 1        MR. LEVIN:  Yes, so we can take discovery.  We're not

10:23AM 2  assessing damages at this time.  I believe Your Honor introduced

10:23AM 3  us to the preliminary default when we did it in the *Germano* case,

10:23AM 4  so we crafted our pleadings not to ask for a default but to ask

10:24AM 5  for a preliminary default to get this thing moving.

10:24AM 6        THE COURT:  Let me hear from your opponent.  Anybody who

10:24AM 7  wishes to speak.

10:24AM 8        MR. STANLEY:  Good morning, Your Honor.  I would like to

10:24AM 9  introduce Frank Spano from the Hogan Lovells firm, who will speak

10:24AM 10  on behalf of Taishan today.  My name is Rick Stanley.  Thank you.

10:24AM 11        MR. SPANO:  We represent Taishan Gypsum and

10:24AM 12  Taishan Taian Plasterboard, or TTP for short.  Our companies are

10:24AM 13  providing complete jurisdictional discovery regarding all of

10:24AM 14  their sales and potential sales of drywall to the United States.

10:24AM 15  They are providing all of the documents reflecting any sort of

10:25AM 16  contacts or communications they had with American companies or

10:25AM 17  American companies' representatives that solicited them in China

10:25AM 18  or with Chinese companies that bought drywall from TG or TTP and

10:25AM 19  then resold it to the U.S.

10:25AM 20        We have identified over 200 transactions that our

10:25AM 21  clients were involved in, and those are listed on our

10:25AM 22  manufacturers' profile forms, and we are providing complete

10:25AM 23  discovery as to all of those transactions -- all of the

10:25AM 24  underlying documentations, all of the contracts, all of the

10:25AM 25  proposals, all of the correspondence, all of the e-mails.

10:25AM  1          In the course of that investigation, we have

10:25AM  2  determined, and all of the discovery that we're providing will

10:25AM  3  show, that none of the 20 or so subsidiaries that the plaintiffs

10:26AM  4  are seeking a default judgment against in *Gross* had anything

10:26AM  5  whatsoever to do with the manufacturing or sale of drywall.

10:26AM  6          We identified one other company, a subsidiary of

10:26AM  7  Taishan Gypsum, that did manufacture one order of drywall for

10:26AM  8  sale to the U. S., and as to that company we're providing

10:26AM  9  discovery.  They haven't sought a default against that company.

10:26AM 10          The problem here is that the plaintiffs have not

10:26AM 11  stated a claim.  The Supreme Court ruled in *Iqbal* and *Twombly*

10:26AM 12  that the federal rules, the federal pleading rules require that a

10:26AM 13  plaintiff state facts, specific facts showing a plausible claim

10:26AM 14  before they get to put a party through the expense and the burden

10:26AM 15  of discovery.

10:27AM 16          So we, as a matter of fact and in good faith, have

10:27AM 17  told the PSC and the Court that there is no factual basis to sue

10:27AM 18  these companies.  We have asked them if they think they have one,

10:27AM 19  to disclose it, and they haven't.

10:27AM 20          THE COURT:  Have you made a formal appearance in this

10:27AM 21  case on behalf of --

10:27AM 22          MR. SPANO:  No, sir, we have not.

10:27AM 23          THE COURT:  That's the problem that I've having from

10:27AM 24  that standpoint.  You're not before the Court, you haven't

10:27AM 25  entered the litigation, and then you don't want them to conduct

10:27AM 1   discovery.  I understand your statements, but the way that you

10:27AM 2   generally handle matters, as you know, is each side is

10:27AM 3   represented, and then the party makes their presentation, and

10:28AM 4   then I deal with it.  I'm trying to move this case along a little

10:28AM 5   differently than I do ordinarily.  Ordinarily you wouldn't have

10:28AM 6   an opportunity to speak.  Now, we're trying to move this

10:28AM 7   litigation, but it's hard for me to just take your position when

10:28AM 8   you're not even formally before me.

10:28AM 9           MR. SPANO:  Your Honor, with all due respect, what we're

10:28AM 10   trying to do here is to be practical.  The Court has before it

10:28AM 11   the two parties that were involved in the sale and manufacture of

10:28AM 12   Taishan drywall.  The PSC does not have to take my word for it,

10:28AM 13   but they now are getting discovery, voluminous discovery, over

10:28AM 14   20,000 pages of documents produced in January.  More to come.

10:29AM 15   We'll be done with that.  They'll have 30(b)(6) depositions of

10:29AM 16   knowledgeable corporate representatives who can discuss these

10:29AM 17   issues.  They can cross-examine them on their declarations that

10:29AM 18   say these two companies were the only ones that were involved.

10:29AM 19           What I'm suggesting at the very minimum is that any

10:29AM 20   default proceeding, we don't waste the time with that unless they

10:29AM 21   see this evidence because, I think, once they do -- they are

10:29AM 22   practical and pragmatic attorneys -- they'll realize that they

10:29AM 23   are pointing the guns to the wrong people.  They have the right

10:29AM 24   people in front of them.  So that is my suggestion on that point,

10:29AM 25   Your Honor.

10:29AM 1          THE COURT:  Let me hear your response.

10:29AM 2          MR. LEVIN:  Your Honor, we can't deal with phantom

10:29AM 3    litigation.  We've already found out that in this indeterminate

10:29AM 4    defendant list of defendants where we couldn't figure out who the

10:30AM 5    Chinese companies were, we now determined that we know who they

10:30AM 6    are, and we're moving them into another complaint.

10:30AM 7          I would like to take his word for it, but I was

10:30AM 8    born but not yesterday, and I know there is Federal Rules of

10:30AM 9    Civil Procedure, there is a method of how to do this, and I think

10:30AM 10   it's most improper to come into court and represent an entity

10:30AM 11   that you haven't entered an appearance for.

10:30AM 12         If they enter an appearance, we could deal with it.

10:30AM 13   We have an awful lot at stake.  We have a lot of clients and

10:30AM 14   plaintiffs with product that can't determine who the manufacturer

10:30AM 15   is.  I mean, we had a Crescent Company.  We thought it must have

10:30AM 16   been domestic in New Orleans.  It turns out now we found out from

10:30AM 17   the indeterminate complaint there is a Crescent Company in China.

10:30AM 18         It just is plain wrong to deal with it, to walk

10:30AM 19   into court and say I don't represent the client -- I do represent

10:31AM 20   the client, but I'm not entering appearance for the client.  I'm

10:31AM 21   really a friend of the court and a friend of everybody.  You sued

10:31AM 22   these people, and you shouldn't have sued them.  That's what we

10:31AM 23   are faced with.

10:31AM 24         THE COURT:  Okay.  You wanted to say something else?

10:31AM 25         MR. LEVIN:  As to the discovery, sir, there is a

10:31AM 1   separate motion as to the discovery, and Mr. Montoya is going to

10:31AM 2   handle that.

10:31AM 3          THE COURT:  Let's not conflate both the motions

10:31AM 4   together.  First of all this one.  You wanted to respond.

10:31AM 5          MR. SPANO:  I just wanted to briefly respond to the

10:31AM 6   comments that have been made about indeterminate defendants.

10:31AM 7   Taishan Gypsum and TTP, with one exception, were OEMs, so they

10:31AM 8   made drywall to order, and they labeled it in the way that the

10:31AM 9   customers ordered it to be labeled.

10:31AM 10          Taishan Gypsum and TTP, in their MPFs and in the

10:31AM 11   discovery, are disclosing all of the markings for every single

10:32AM 12   order they produced, so the information to identify which

10:32AM 13   products our clients were involved in is out there and is being

10:32AM 14   produced, and there is no mystery about that.

10:32AM 15          THE COURT:  We're dealing with two motions, though.  One

10:32AM 16   motion before the Court is the motion for preliminary default.

10:32AM 17   Nobody has made an appearance.

10:32AM 18          What I'm going to do, I'll give you one week to

10:32AM 19   consider whether or not you're going to enter an appearance.  If

10:32AM 20   you do so, then I won't grant the motion, but if you don't do so

10:32AM 21   within a week, I'm going to grant the motion to proceed with

10:32AM 22   preliminary default because nobody has made an appearance, and

10:32AM 23   everybody has had an opportunity to do so.

10:32AM 24          The next issue is Banner's request that CTEH

10:32AM 25   produce discovery related to meeting with the CPSC,

10:32AM  1    Record Document 6634.  Is that something we need to orally argue?

10:33AM  2            MR. PANAYOTOPOULOS:  No, Your Honor.  I'm

10:33AM  3    Nick Panayotopoulos on behalf of certain Banner entities.

10:33AM  4            As Your Honor knows, we had a hearing on our motion

10:33AM  5    to compel, and the Court issued an order.  We're just dealing

10:33AM  6    with it, Your Honor.  They produced a lot of documents since the

10:33AM  7    Court's order, and we don't need to take up the Court's time any

10:33AM  8    further.  We'll just come back if we need to.

10:33AM  9            THE COURT:  I'll pass the motion with the understanding

10:33AM 10    that if you don't get what you need, you'll bring it back again.

10:33AM 11            Plaintiffs' Steering Committee's motion challenging

10:33AM 12    the adequacy and completeness of discovery of the defendants

10:33AM 13    Taishan Gypsum.  That's the aspect that we talked about a

10:33AM 14    little bit before, but let's focus on it now.  It's the

10:34AM 15    Record Document 6964, and there is also a Record Document 6981.

10:34AM 16            MR. MONTOYA:  Your Honor, Patrick Montoya on behalf of

10:34AM 17    the Plaintiffs' Steering Committee.  The two motions before

10:34AM 18    Your Honor are very similar.  It's plaintiffs' motion to compel

10:34AM 19    answers and appropriate answers to the first request for

10:34AM 20    production and first set of interrogatories directed at personal

10:34AM 21    jurisdiction discovery.

10:34AM 22            Taishan has also filed a motion for protective

10:34AM 23    order relating to the 30(b)(6) depositions which cover the same

10:34AM 24    topics.  So our argument will both address motion to compel and

10:34AM 25    Taishan's motion for protective order.

10:34AM   1         The core issue is what Mr. Levin has pointed out

10:34AM   2    earlier in the motion for default objection and what Your Honor

10:34AM   3    has accurately crystallized.  Taishan is making representations

10:34AM   4    on behalf of at least 20 of its affiliates that we cannot take

10:34AM   5    personal jurisdiction discovery over those entities.  They do not

10:34AM   6    dispute that they are affiliated with them.  They simply saying

10:35AM   7    that it's too over broad.

10:35AM   8         Now, why is it not over broad?  Why is it relevant

10:35AM   9    to personal jurisdiction?  It's relevant to personal jurisdiction

10:35AM  10    because on either an alter-ego theory, a veil-piercing theory, an

10:35AM  11    agency theory, or under the undertaker doctrine what those

10:35AM  12    entities that Taishan directs do as is related sales to the

10:35AM  13    United States of drywall and other products is relevant to

10:35AM  14    personal jurisdiction.

10:35AM  15         The second issue is what about the entities that

10:35AM  16    control Taishan that are above it in the chain?  The same issue.

10:35AM  17    What have they done to direct Taishan's sales or manufacturing of

10:35AM  18    drywall or other products to the United States for a minimum

10:35AM  19    contacts purpose?

10:35AM  20         Yesterday evening we filed a reply to the Taishan

10:35AM  21    defendants' motion for protective order that set forth the law.

10:35AM  22    I'm not going to belabor that law with Your Honor because I know

10:35AM  23    that the Court is well aware of it, but the whole question here

10:35AM  24    is what did those other entities do, how did they direct Taishan,

10:35AM  25    or how is Taishan directed towards the manufacture and sale of

10:35AM 1    drywall in the United States?  That's the core issue in our

10:36AM 2    motion to compel.  There is other subissues but for the most

10:36AM 3    part, I think those will fall like dominoes once Your Honor

10:36AM 4    decides the scope of discovery of the other entities.

10:36AM 5            As Mr. Levin stated, the idea that we have to

10:36AM 6    accept Taishan's representations -- with all respect to counsel,

10:36AM 7    they have made no appearance for those entities -- we're entitled

10:36AM 8    to that discovery.  We need that discovery.

10:36AM 9            They've also complained that we haven't pled

10:36AM 10   theories adequate in order to reach those entities.  We've pled

10:36AM 11   that Taishan is a multilayered, prolix entity that's ultimately

10:36AM 12   owned by the Chinese government through multiple layers of

10:36AM 13   corporate ownership.

10:36AM 14           What those entities did in terms of how they

10:36AM 15   directed Taishan sales to the United States and what Taishan did

10:36AM 16   in response and how Taishan directed other entities' sales to the

10:36AM 17   United States is relevant for the purposes of personal

10:36AM 18   jurisdiction on those alter-ego, veil-piercing, agency-type

10:36AM 19   theories.

10:36AM 20        THE COURT:  Now, how do you deal with it just

10:37AM 21   logistically and from a practical standpoint?  Who do you take

10:37AM 22   and where do you take them and what do you do with them if they

10:37AM 23   don't show up?  How does the Court have jurisdiction enforcing

10:37AM 24   that argument?

10:37AM 25        MR. MONTOYA:  Well, Your Honor, the whole issue here,

10:37AM  1  basically what's happened is we've -- in our request for

10:37AM  2  production, interrogatories, and the 30(b)(6) notice, we set

10:37AM  3  certain topics defining *you*, saying you, Taishan, what are your

10:37AM  4  connections with X, Y, Z entity, and we've defined what *you*

10:37AM  5  means -- subsidiaries, affiliates, successors.

10:37AM  6          At least 20 of those entities we've named in the

10:37AM  7  complaint.  They just came up here several minutes ago and said,

10:37AM  8  well, you know, we're not making notice of appearance for them at

10:37AM  9  this point.  The real question is does Taishan have those

10:37AM 10  documents in their possession, custody, or control?  That's what

10:37AM 11  the federal rules say.  If they have those documents, then they

10:37AM 12  should produce them.  That's not over broad.  That goes to the

10:37AM 13  personal jurisdiction discovery.

10:37AM 14          Your Honor is going to set a time frame for

10:37AM 15  30(b)(6) depositions.  We can ask those witnesses those

10:38AM 16  questions.  What they are trying to say is you can't ask us about

10:38AM 17  those related entities that we have an ownership interest in.

10:38AM 18  That's improper.  Personal jurisdiction discovery and minimum

10:38AM 19  contact analysis demands that we have that information.  So from

10:38AM 20  a practical perspective, we are entitled to more documents.  They

10:38AM 21  are not saying that there are no documents.  They are saying

10:38AM 22  simply that it's over broad.  They've already said that they are

10:38AM 23  affiliated, and they are not making an appearance.  The documents

10:38AM 24  are there.  They need to produce them.

10:38AM 25          The witnesses can be asked the question.  If

10:38AM 1    Your Honor would be willing to be on the phone, as you suggested

10:38AM 2    for the other Hong Kong depositions, that may also resolve some

10:38AM 3    of the issues as well.

10:38AM 4            THE COURT:  Any response on the discovery?

10:38AM 5            MR. MONTOYA:  Judge, if I may, one last point.  We also

10:38AM 6    moved in our papers to have a deposition scheduled in the middle

10:38AM 7    of February on the 14th.  The Taishan defendants have taken the

10:38AM 8    position that early April is appropriate.

10:38AM 9            We've laid out in our papers that they have been

10:38AM 10   before this Court for several months.  They've been aware of this

10:38AM 11   case for more than a year.  They've had more than enough time to

10:39AM 12   prepare their clients' depositions.

10:39AM 13           THE COURT:  Thank you.

10:39AM 14           MR. SPANO:  Your Honor, I think we need to bear in mind

10:39AM 15   the type of discovery we are undertaking and why we are doing it.

10:39AM 16   Taishan Gypsum has moved to vacate the default in the *Germano* and

10:39AM 17   in the *Mitchell* cases, and one of the basis for vacating the

10:39AM 18   default is the absence of personal jurisdiction.  We've submitted

10:39AM 19   declarations saying that based on our OEM production of drywall

10:39AM 20   and sales in China, that is not sufficient to establish our

10:39AM 21   minimum contacts for purposes of personal jurisdiction.  The

10:39AM 22   discovery should be centered around those facts.  What did

10:39AM 23   Taishan Gypsum do?  What did TTP do vis-a-vis the U.S. and is

10:40AM 24   that sufficient for jurisdiction?

10:40AM 25           THE COURT:  I agree with that, but the plaintiffs have

10:40AM 1   taken the position that Taishan may have acted with surrogates

10:40AM 2   and that they controlled the surrogates, so the surrogates'

10:40AM 3   actions are Taishan's actions.  Now you take the position that's

10:40AM 4   really not surrogates, and Taishan didn't do anything through

10:40AM 5   them, and that's the situation.

10:40AM 6           They want to test that, as I understand the

10:40AM 7   argument.  They want to ask somebody from those surrogates what

10:40AM 8   did you do, why did you do it, who told you to do it, and so

10:40AM 9   forth.  It goes really to the jurisdiction.

10:40AM 10          It's not a question of the other entities.  If

10:40AM 11  there are other entities and they are not controlled by Taishan

10:40AM 12  and Taishan didn't have anything to do with them, that will be

10:40AM 13  revealed.  Then your motions, if you enter the appearance, to

10:41AM 14  dismiss, I don't see how the plaintiffs can argue with it.

10:41AM 15          To just dismiss it on somebody saying that you were

10:41AM 16  told, and it's got to be hearsay with you, somebody in China

10:41AM 17  translated to you that they didn't have anything to do with this,

10:41AM 18  and so you tell the Court, this is what they told me, and I

10:41AM 19  believe them, but they don't want you to make an appearance

10:41AM 20  officially, and so you're now here as a friend of the Court

10:41AM 21  saying somebody in China told me to tell you this is the

10:41AM 22  situation.

10:41AM 23          MR. SPANO:  That's not correct, Your Honor.  We are here

10:41AM 24  on behalf of Taishan Gypsum and TTP arguing that those entities

10:41AM 25  are not subject to personal jurisdiction.  Those two entities are

10:42AM 1   taking responsibility, so to speak, for jurisdictional purposes

10:42AM 2   for all of the sales of the product that entered into the U.S.

10:42AM 3        So again, being practical, Your Honor, speculation

10:42AM 4   about whether some affiliate or some parent company or some

10:42AM 5   surrogate, as you say, whispered in Taishan Gypsum's ear and

10:42AM 6   influenced it in having those contacts with the U.S., that

10:42AM 7   doesn't figure -- really figure into the analysis.

10:42AM 8        The analysis is whether the contacts that my client

10:42AM 9   had with the U.S. amount to targeting the U.S. market and

10:42AM 10  purposeful availment of activity of the U.S. sufficient for

10:42AM 11  purposes of jurisdiction.  All of that -- and all of those

10:42AM 12  contacts are being disclosed.  We will have knowledgeable

10:43AM 13  witnesses to give full testimony about that.

10:43AM 14       THE COURT:  The knowledgeable witnesses will say that

10:43AM 15  they don't do any business in the United States, I assume.

10:43AM 16       MR. SPANO:  Knowledgeable 30(b)(6) witnesses on behalf

10:43AM 17  of Taishan Gypsum and TTP will answer factually regarding all of

10:43AM 18  the 200 transactions that I told you about, all of the

10:43AM 19  communications and contacts, and then the parties can argue about

10:43AM 20  whether those facts are sufficient to establish jurisdiction.

10:43AM 21       Your Honor, my client has a default judgment

10:43AM 22  against it.  We want to get past this jurisdictional discovery.

10:43AM 23  We want our depositions taken in April, we want the supplemental

10:43AM 24  briefing done quickly, and we want a hearing so we know where we

10:43AM 25  stand.  This going off on a tangent asking for discovery

10:43AM 1    regarding 41 other entities, they have Chinese companies

10:44AM 2    unrelated to us, they have Mexican companies listed, they have

10:44AM 3    American companies listed besides these 20 subsidiaries.  No way.

10:44AM 4         If we're required to give this discovery, we will

10:44AM 5    have to go back to China and search and collect documents from

10:44AM 6    companies all over China.  Mr. Montoya correctly said that we, if

10:44AM 7    this discovery is required, would be required to produce the

10:44AM 8    information and documents in our possession and custody and

10:44AM 9    control.  To do my due diligence under Rule 26, I have to go and

10:44AM 10   collect documents from 20 subsidiaries.  Some of them are a

10:44AM 11   thousand miles away.

10:44AM 12        THE COURT:  I got it.  Let's do it this way:  Let's take

10:44AM 13   the depositions of the people that they say.  Let's do a 30(b)(6)

10:44AM 14   of those individuals.  It may not be sufficient, but let's do

10:44AM 15   that first.  We need to do that quickly.  You want to do it in

10:45AM 16   May.  That's a little too far if we're just going to restrict it

10:45AM 17   to that.  They want to do it in February.  Why can't we do it in

10:45AM 18   February --

10:45AM 19        MR. SPANO:  Your Honor, we have been talking to the PSC

10:45AM 20   since November, and we told them in November that February is a

10:45AM 21   problem.  The first two weeks in February are absolutely out of

10:45AM 22   bounds because of the Chinese New Year.  It's impossible to

10:45AM 23   travel there.  It's impossible for witnesses to travel.

10:45AM 24        This is -- and this is a big undertaking.  We're

10:45AM 25   going to have about 30,000 pages of documents to prepare them on.

10:45AM 1  February is just untenable for us.  We proposed the first week in

10:45AM 2  April to give the witnesses and the attorneys and everybody a

10:45AM 3  chance to participate --

10:45AM 4         THE COURT:  Let's get together.

10:45AM 5         MR. SPANO:  -- including the State plaintiffs --

10:45AM 6         THE COURT:  Let's get together on a date that's

10:45AM 7  appropriate, and let's take the depositions of those individuals.

10:45AM 8  Bring it back to me after that, if it's necessary.

10:46AM 9         MR. SPANO:  Thank you, Your Honor.

10:46AM 10         MR. LEVIN:  Your Honor, we've heard Your Honor.  The

10:46AM 11  scope.  When we go to Hong Kong, are we precluded, even though we

10:46AM 12  don't have documents, from asking questions about these other

10:46AM 13  entities?

10:46AM 14         THE COURT:  No.  I don't feel that way.  I think that

10:46AM 15  that may be a reason to support your position, or it may be a

10:46AM 16  reason to support your position.  If the 30(b)(6) person knows

10:46AM 17  something about it, then that's one thing.  If he doesn't, then

10:46AM 18  that's another thing.  So I think the scope ought to be broad.  I

10:46AM 19  don't think it ought to be narrow.

10:46AM 20         MR. LEVIN:  That's fine, sir.

10:46AM 21         THE COURT:  Because if it's broad, you may win.  If it's

10:46AM 22  narrow, you may lose because they won't be able to ask the

10:46AM 23  questions.  They are going to have to ask the questions to

10:46AM 24  somebody, and let's start with that.

10:46AM 25         MR. LEVIN:  Your Honor said that you would want to be

10:46AM 1  available by phone.

10:46AM 2  THE COURT:  I will be.

10:47AM 3  MR. LEVIN:  If that's the case, we'll endeavor to start

10:47AM 4  the deposition at midnight so that you don't have to be on the

10:47AM 5  phone at midnight.

10:47AM 6  THE COURT:  You all make that decision.  Give me some

10:47AM 7  heads-up as to when you need me so that I can make myself

10:47AM 8  available.

10:47AM 9  MR. LEVIN:  Thank you, Your Honor.

10:47AM 10  MR. SPANO:  Thank you.

10:47AM 11  THE COURT:  So I'm going to deny the motion at this time

10:47AM 12  to allow you to refile it if it becomes necessary, and I would

10:47AM 13  like you all to get together within the next week and let me know

10:47AM 14  the date that you all have decided.

10:47AM 15  Any other motions that we need to take up?

10:47AM 16  MR. LEVIN:  That's all, Your Honor.

10:47AM 17  THE COURT:  Is that it?  Any other motions?  All right,

10:47AM 18  folks, thank you very much.  Court will stand in recess.

19  (WHEREUPON, at 10:47 a.m., the proceedings were

20  concluded.)

21  *   *   *

22

23

24

25

REPORTER'S CERTIFICATE

I, Cathy Pepper, Certified Realtime Reporter, Registered Merit Reporter, Registered Professional Reporter, Certified Court Reporter of the State of Louisiana, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

*s/Cathy Pepper*

Cathy Pepper, CRR, RMR, CCR

Official Court Reporter

United States District Court

## 0

**09-MD-2047-EEF-JCW** [1] - 1:6

## 1

**10022** [1] - 1:24
**10:15** [1] - 1:7
**10:47** [1] - 21:19
**11** [3] - 3:9, 6:9, 6:10
**12** [1] - 3:11
**14th** [1] - 16:7
**19106** [1] - 1:18

## 2

**20** [7] - 1:7, 4:2, 8:3, 13:4, 15:6, 19:3, 19:10
**20,000** [1] - 9:14
**200** [2] - 7:20, 18:18
**2011** [2] - 1:7, 4:2
**225** [1] - 1:20
**2400** [1] - 2:4
**26** [1] - 19:9

## 3

**30(b)(6** [7] - 9:15, 12:23, 15:2, 15:15, 18:16, 19:13, 20:16
**30,000** [1] - 19:25
**30326** [1] - 2:5
**33134** [1] - 1:21
**3344** [1] - 2:4

## 4

**4** [2] - 3:5, 3:7
**41** [1] - 19:1

## 5

**500** [2] - 1:17, 2:7
**504** [1] - 2:8
**510** [1] - 1:17
**589-7779** [1] - 2:8
**5939** [1] - 5:6
**5939.........** [1] - 3:8

## 6

**6634** [1] - 12:1
**6634........** [1] - 3:10

**6669** [1] - 4:13
**6669...............** [1] - 3:6
**6964** [2] - 3:13, 12:15
**6981** [1] - 12:15
**6981...........................
......................** [1] - 3:14

## 7

**70130** [1] - 2:8

## 8

**875** [1] - 1:24

## A

**A.M** [1] - 1:7
**a.m** [1] - 21:19
**ability** [1] - 22:8
**able** [1] - 20:22
**above-entitled** [1] - 22:9
**absence** [1] - 16:18
**absolutely** [1] - 19:21
**accept** [2] - 5:11, 14:6
**accordance** [1] - 6:10
**ACCOUNTING** [1] - 3:5
**accounting** [1] - 4:13
**accurately** [1] - 13:3
**acted** [1] - 17:1
**actions** [1] - 17:3
**activity** [1] - 18:10
**address** [1] - 12:24
**ADEQUACY** [1] - 3:12
**adequacy** [1] - 12:12
**adequate** [1] - 14:10
**affiliate** [1] - 18:4
**affiliated** [2] - 13:6, 15:23
**affiliates** [2] - 13:4, 15:5
**agency** [2] - 13:11, 14:18
**agency-type** [1] - 14:18
**agenda** [1] - 4:11
**ago** [1] - 15:7
**agree** [1] - 16:25
**ALHAMBRA** [1] - 1:20
**ALL** [2] - 1:8, 2:3
**allow** [1] - 21:12
**alter** [3] - 6:7, 13:10, 14:18

**alter-ego** [3] - 6:7, 13:10, 14:18
**American** [3] - 7:16, 7:17, 19:3
**amount** [1] - 18:9
**analysis** [3] - 15:19, 18:7, 18:8
**AND** [3] - 3:6, 3:12, 3:13
**answer** [2] - 6:12, 18:17
**answers** [2] - 12:19
**appearance** [17] - 5:4, 5:12, 5:24, 6:5, 6:18, 8:20, 10:11, 10:12, 10:20, 11:17, 11:19, 11:22, 14:7, 15:8, 15:23, 17:13, 17:19
**APPEARANCES** [2] - 1:14, 2:1
**appropriate** [2] - 12:19, 16:8, 20:7
**April** [3] - 16:8, 18:23, 20:2
**argue** [4] - 5:2, 12:1, 17:14, 18:19
**arguing** [1] - 17:24
**argument** [4] - 4:17, 12:24, 14:24, 17:7
**ARNOLD** [1] - 1:17
**aspect** [1] - 12:13
**assessing** [1] - 7:2
**assume** [1] - 14:17
**ATLANTA** [1] - 2:5
**attorneys** [2] - 9:22, 20:2
**available** [2] - 21:1, 21:8
**availment** [1] - 18:10
**AVENUE** [1] - 1:24
**aware** [2] - 13:23, 16:10
**awful** [1] - 10:13

## B

**B406** [1] - 2:7
**Banner** [1] - 12:3
**BANNER** [1] - 2:3
**BANNER'S** [1] - 3:9
**Banner's** [1] - 11:24
**based** [2] - 5:7, 16:19
**basis** [2] - 8:17, 16:17
**bear** [1] - 16:14
**becomes** [1] - 21:12
**BEFORE** [1] - 1:11
**behalf** [7] - 7:10, 8:21, 12:3, 12:16, 13:4, 17:24, 18:16

**belabor** [1] - 13:22
**BERMAN** [1] - 1:16
**best** [1] - 22:8
**big** [1] - 19:24
**bit** [1] - 12:14
**born** [1] - 10:8
**bought** [1] - 7:18
**bounds** [1] - 19:22
**briefing** [2] - 4:16, 18:24
**briefly** [1] - 11:5
**bring** [2] - 12:10, 20:8
**broad** [6] - 13:7, 13:8, 15:12, 15:22, 20:18, 20:21
**burden** [1] - 8:14
**business** [2] - 5:14, 18:15
**BY** [6] - 1:17, 1:20, 1:23, 2:4, 2:9, 2:10

## C

**CALLED** [1] - 4:4
**cannot** [1] - 13:4
**case** [5] - 7:3, 8:21, 9:4, 16:11, 21:3
**cases** [1] - 16:17
**CASES** [1] - 1:8
**Cathy** [2] - 22:3, 22:14
**CATHY** [1] - 2:7
**caused** [1] - 5:13
**CCR** [2] - 2:7, 22:14
**centered** [1] - 16:22
**certain** [2] - 12:3, 15:3
**CERTIFICATE** [1] - 22:1
**Certified** [2] - 22:3, 22:4
**certify** [1] - 22:7
**chain** [1] - 13:16
**CHALLENGING** [1] - 3:11
**challenging** [1] - 12:11
**chance** [1] - 20:3
**China** [10] - 5:16, 5:25, 6:15, 7:17, 10:17, 16:20, 17:16, 17:21, 19:5, 19:6
**CHINESE** [1] - 1:4
**Chinese** [13] - 5:8, 5:14, 5:18, 5:25, 6:1, 6:12, 6:13, 6:15, 7:18, 10:5, 14:12, 19:1, 19:22
**CHINESE-MANUFACTURED** [1] - 1:4

**CIRCLE** [1] - 1:20
**Civil** [2] - 6:11, 10:9
**CIVIL** [1] - 1:6
**claim** [2] - 8:11, 8:13
**CLERK** [1] - 4:7
**client** [5] - 10:19, 10:20, 18:8, 18:21
**clients** [3] - 7:21, 10:13, 11:13
**clients'** [1] - 16:12
**collect** [2] - 19:5, 19:10
**COLSON** [1] - 1:19
**coming** [1] - 4:18
**comments** [1] - 11:6
**Committee** [1] - 12:17
**Committee's** [2] - 4:12, 12:11
**COMMITTEE'S** [2] - 3:5, 3:11
**communications** [2] - 7:16, 18:19
**companies** [15] - 5:15, 5:18, 6:1, 6:12, 7:12, 7:16, 7:18, 8:18, 9:18, 10:5, 19:1, 19:2, 19:3, 19:6
**companies'** [1] - 7:17
**company** [5] - 6:17, 8:6, 8:8, 8:9, 18:4
**Company** [2] - 10:15, 10:17
**compel** [4] - 12:5, 12:18, 12:24, 14:2
**complained** [1] - 14:9
**complaint** [6] - 5:8, 5:9, 5:13, 10:6, 10:17, 15:7
**complete** [2] - 7:13, 7:22
**completeness** [1] - 12:12
**COMPLETENESS** [1] - 3:12
**COMPUTER** [1] - 2:10
**concluded** [1] - 21:20
**conduct** [1] - 8:25
**conflate** [1] - 11:3
**connections** [1] - 15:4
**consider** [1] - 11:19
**contact** [1] - 15:19
**contacts** [7] - 7:16, 15:21, 16:21, 18:6, 18:8, 18:12, 18:19
**CONTINUED** [1] - 2:1
**contracts** [1] - 7:24
**control** [3] - 13:16, 15:10, 19:9
**controlled** [2] - 17:2, 17:11

**CORAL** [1] - 1:21
**core** [2] - 13:1, 14:1
**corporate** [2] - 9:16, 14:13
**correct** [2] - 17:23, 22:7
**correctly** [1] - 19:6
**correspondence** [1] - 7:25
**counsel** [5] - 5:24, 6:14, 14:6
**course** [1] - 8:1
**COURT** [30] - 1:1, 2:7, 4:4, 4:8, 4:20, 4:24, 5:5, 6:23, 7:6, 8:20, 8:23, 10:1, 10:24, 11:3, 11:15, 12:9, 14:20, 16:4, 16:13, 16:25, 18:14, 19:12, 20:4, 20:6, 20:14, 20:21, 21:2, 21:6, 21:11, 21:17
**court** [3] - 10:10, 10:19, 10:21
**Court** [17] - 8:11, 8:17, 8:24, 9:10, 11:16, 12:5, 13:23, 14:23, 16:10, 17:18, 17:20, 21:18, 22:4, 22:5, 22:6, 22:15, 22:16
**Court's** [2] - 12:7
**cover** [1] - 12:23
**CPSC** [2] - 3:10, 11:25
**crafted** [1] - 7:4
**Crescent** [2] - 10:15, 10:17
**cross** [1] - 9:17
**cross-examine** [1] - 9:17
**CRR** [2] - 2:7, 22:14
**crystallized** [1] - 13:3
**CTEH** [2] - 3:9, 11:24
**custody** [2] - 15:10, 19:8
**customers** [1] - 11:9

**D**

**damages** [1] - 7:2
**date** [2] - 20:6, 21:14
**deal** [7] - 6:10, 6:21, 9:4, 10:2, 10:12, 10:18, 14:20
**dealing** [2] - 11:15, 12:5
**decided** [1] - 21:14
**decides** [1] - 14:4
**decision** [1] - 21:6
**declarations** [2] -

**9**:17, 16:19
**DEFAULT** [1] - 3:8
**default** [14] - 5:1, 5:20, 7:3, 7:4, 7:5, 8:4, 8:9, 9:20, 11:16, 11:22, 13:2, 16:16, 16:18, 18:21
**defendant** [2] - 5:8, 10:4
**DEFENDANTS** [2] - 1:23, 3:13
**defendants** [4] - 10:4, 11:6, 12:12, 16:7
**defendants'** [1] - 13:21
**defined** [1] - 15:4
**defining** [1] - 15:3
**demands** [1] - 15:19
**deny** [1] - 21:11
**deposition** [2] - 16:6, 21:4
**depositions** [9] - 6:13, 9:15, 12:23, 15:15, 16:2, 16:12, 18:23, 19:13, 20:7
**DEPUTY** [1] - 4:7
**determine** [1] - 10:14
**determined** [3] - 5:17, 8:2, 10:5
**DIAL** [1] - 2:3
**different** [1] - 4:22
**differently** [1] - 9:5
**diligence** [1] - 19:9
**direct** [2] - 13:17, 13:24
**directed** [4] - 12:20, 13:25, 14:15, 14:16
**directs** [1] - 13:12
**disclose** [1] - 8:19
**disclosed** [1] - 18:12
**disclosing** [1] - 11:11
**DISCOVERY** [2] - 3:9, 3:12
**discovery** [31] - 6:6, 6:21, 7:1, 7:13, 7:23, 8:2, 8:9, 8:15, 9:1, 9:13, 10:25, 11:1, 11:11, 11:25, 12:12, 12:21, 13:5, 14:4, 14:8, 15:13, 15:18, 16:4, 16:15, 16:22, 18:22, 18:25, 19:4, 19:7
**discuss** [1] - 9:16
**discussed** [1] - 4:11
**dismiss** [2] - 17:14, 17:15
**dispute** [1] - 13:6
**District** [3] - 22:6, 22:16

**DISTRICT** [3] - 1:1, 1:1, 1:12
**docket** [1] - 5:6
**DOCKET** [1] - 1:6
**doctrine** [1] - 13:11
**Document** [3] - 12:1, 12:15
**document** [1] - 4:13
**DOCUMENT** [4] - 1:8, 3:6, 3:8, 3:10
**documentations** [1] - 7:24
**DOCUMENTS** [1] - 3:13
**documents** [13] - 7:15, 9:14, 12:6, 15:10, 15:11, 15:20, 15:21, 15:23, 19:5, 19:8, 19:10, 19:25, 20:12
**domestic** [1] - 10:16
**dominoes** [1] - 14:3
**done** [6] - 5:14, 9:15, 13:17, 18:24
**draft** [1] - 4:24
**DRYWALL** [1] - 1:4
**drywall** [10] - 7:14, 7:18, 8:5, 8:7, 9:12, 11:8, 13:13, 13:18, 14:1, 16:19
**due** [2] - 9:9, 19:9

**E**

**e-mails** [1] - 7:25
**ear** [1] - 18:5
**early** [1] - 16:8
**Eastern** [1] - 22:6
**EASTERN** [1] - 1:1
**effectuated** [1] - 5:19
**ego** [3] - 6:7, 13:10, 14:18
**EIDSON** [1] - 1:19
**either** [2] - 5:11, 13:10
**ELDON** [1] - 1:11
**end** [1] - 5:23
**endeavor** [1] - 21:3
**enforcing** [1] - 14:23
**enter** [5] - 5:11, 6:5, 10:12, 11:19, 17:13
**entered** [6] - 5:23, 6:17, 6:22, 8:25, 10:11, 18:2
**entering** [1] - 10:20
**ENTITIES** [1] - 2:3
**entities** [18] - 5:9, 12:3, 13:5, 13:12, 13:15, 13:24, 14:4, 14:7, 14:10, 14:14,

15:6, 15:17, 17:10, 17:11, 17:24, 17:25, 19:1, 20:13
**entities'** [1] - 14:16
**entitled** [3] - 14:7, 15:20, 22:9
**entity** [3] - 10:10, 14:11, 15:4
**entry** [1] - 5:3
**ESQUIRE** [4] - 1:17, 1:20, 1:23, 2:4
**establish** [2] - 16:20, 18:20
**evening** [1] - 13:20
**evidence** [2] - 6:24, 9:21
**examine** [1] - 9:17
**exception** [1] - 11:7
**expense** [2] - 5:9, 8:14

**F**

**faced** [1] - 10:23
**fact** [1] - 8:16
**facts** [4] - 8:13, 16:22, 18:20
**factual** [1] - 8:17
**factually** [1] - 18:17
**faith** [1] - 8:16
**fall** [1] - 14:3
**FALLON** [1] - 1:11
**far** [1] - 19:16
**faulting** [1] - 6:14
**February** [6] - 16:7, 19:17, 19:18, 19:20, 19:21, 20:1
**federal** [3] - 8:12, 15:11
**Federal** [2] - 6:11, 10:8
**figure** [3] - 10:4, 18:7
**filed** [4] - 5:13, 6:10, 12:22, 13:20
**fine** [1] - 20:20
**firm** [1] - 7:9
**first** [7] - 4:11, 11:4, 12:19, 12:20, 19:15, 19:21, 20:1
**FISHBEIN** [1] - 1:16
**FL** [1] - 1:21
**Florida** [1] - 6:2
**focus** [1] - 12:14
**folks** [1] - 21:18
**FOR** [5] - 1:16, 1:23, 2:3, 3:5, 3:8
**foregoing** [1] - 22:7
**formal** [2] - 5:3, 8:20
**formally** [1] - 9:8
**forms** [1] - 7:22

**forth** [2] - 13:21, 17:9
**frame** [1] - 15:14
**Frank** [1] - 7:9
**FRANK** [1] - 1:23
**friend** [3] - 10:21, 17:20
**front** [1] - 9:24
**full** [1] - 18:13

**G**

**GA** [1] - 2:5
**GABLES** [1] - 1:21
**generally** [1] - 9:2
**Germano** [2] - 7:3, 16:16
**government** [1] - 14:12
**grant** [2] - 11:20, 11:21
**Gross** [1] - 8:4
**GUNN** [1] - 2:3
**guns** [1] - 9:23
**GYPSUM** [1] - 3:13
**Gypsum** [9] - 7:11, 8:7, 11:7, 11:10, 12:13, 16:16, 16:23, 17:24, 18:17
**Gypsum's** [1] - 18:5

**H**

**Hague** [1] - 5:10
**handle** [2] - 9:2, 11:2
**hard** [1] - 9:7
**heads** [1] - 21:7
**heads-up** [1] - 21:7
**hear** [4] - 4:17, 5:5, 7:6, 10:1
**HEARD** [1] - 1:11
**heard** [1] - 20:10
**hearing** [4] - 4:15, 4:17, 12:4, 18:24
**hearsay** [1] - 17:16
**hereby** [1] - 22:7
**HICKS** [1] - 1:19
**Hogan** [1] - 7:9
**HOGAN** [1] - 1:23
**homes** [1] - 6:20
**Hong** [2] - 16:2, 20:11
**Honor** [28] - 5:7, 7:2, 7:8, 9:9, 9:25, 10:2, 12:2, 12:4, 12:6, 12:16, 12:18, 13:2, 13:22, 14:3, 14:25, 15:14, 16:1, 16:14, 17:23, 18:3, 18:21, 19:19, 20:9, 20:10,

20:25, 21:9, 21:16
**HONORABLE** [1] - 1:11
**hopper** [1] - 4:19
**HUDGINS** [1] - 2:3

## I

**idea** [1] - 14:5
**identified** [2] - 7:20, 8:6
**identify** [2] - 5:17, 11:12
**impossible** [2] - 19:22, 19:23
**improper** [2] - 10:10, 15:18
**IN** [1] - 1:4
**including** [1] - 20:5
**indeterminate** [4] - 5:8, 10:3, 10:17, 11:6
**individuals** [2] - 19:14, 20:7
**influenced** [1] - 18:6
**informal** [1] - 6:21
**information** [3] - 11:12, 15:19, 19:8
**interest** [1] - 15:17
**interrogatories** [2] - 12:20, 15:2
**introduce** [1] - 7:9
**introduced** [1] - 7:2
**investigation** [1] - 8:1
**involved** [4] - 7:21, 9:11, 9:18, 11:13
**involvement** [1] - 6:2
**Iqbal** [1] - 8:11
**issue** [7] - 4:14, 11:24, 13:1, 13:15, 13:16, 14:1, 14:25
**issued** [1] - 12:5
**issues** [2] - 9:17, 16:3

## J

**JANUARY** [2] - 1:7, 4:2
**January** [1] - 9:14
**judge** [1] - 16:5
**JUDGE** [1] - 1:12
**judgment** [2] - 8:4, 18:21
**jurisdiction** [16] - 12:21, 13:5, 13:9, 13:14, 14:18, 14:23, 15:13, 15:18, 16:18, 16:21, 16:24, 17:9,

17:25, 18:11, 18:20
**jurisdictional** [3] - 7:13, 18:1, 18:22

## K

**knowledgeable** [4] - 9:16, 18:12, 18:14, 18:16
**knows** [2] - 12:4, 20:16
**Kong** [2] - 16:2, 20:11

## L

**LA** [1] - 2:8
**labeled** [2] - 11:8, 11:9
**laid** [1] - 16:9
**language** [1] - 5:10
**last** [1] - 16:5
**law** [3] - 6:13, 13:21, 13:22
**laws** [1] - 6:12
**layers** [1] - 14:12
**least** [2] - 13:4, 15:6
**LEVIN** [15] - 1:16, 1:17, 4:18, 4:22, 5:2, 5:7, 7:1, 10:2, 10:25, 20:10, 20:20, 20:25, 21:3, 21:9, 21:16
**Levin** [2] - 13:1, 14:5
**LIABILITY** [1] - 1:4
**lift** [3] - 4:14, 4:25, 6:24
**LIFT** [1] - 3:7
**list** [1] - 10:4
**listed** [3] - 7:21, 19:2, 19:3
**LITIGATION** [1] - 1:5
**litigation** [3] - 8:25, 9:7, 10:3
**live** [1] - 6:20
**logistically** [1] - 14:21
**looking** [1] - 4:15
**lose** [1] - 20:22
**LOUISIANA** [2] - 1:1, 1:6
**Louisiana** [2] - 22:5, 22:6
**LOVELLS** [1] - 1:23
**Lovells** [1] - 7:9

## M

**mails** [1] - 7:25
**manner** [1] - 5:14
**manufacture** [3] - 8:7, 9:11, 13:25

**MANUFACTURED** [1] - 1:4
**manufacturer** [1] - 10:14
**manufacturers'** [1] - 7:22
**manufacturing** [2] - 8:5, 13:17
**market** [1] - 18:9
**markings** [2] - 5:17, 11:11
**matter** [2] - 8:16, 22:10
**matters** [1] - 9:2
**mean** [3] - 6:4, 6:9, 10:15
**means** [1] - 15:5
**MECHANICAL** [1] - 2:9
**MEETING** [1] - 3:10
**meeting** [1] - 11:25
**Merit** [1] - 22:4
**met** [1] - 4:9
**method** [1] - 10:9
**Mexican** [1] - 19:2
**middle** [1] - 16:6
**midnight** [2] - 21:4, 21:5
**miles** [1] - 19:11
**mind** [1] - 16:14
**minimum** [4] - 9:19, 13:18, 15:18, 16:21
**minutes** [1] - 15:7
**Mitchell** [1] - 16:17
**months** [1] - 16:10
**MONTOYA** [1] - 1:20, 12:16, 14:25, 16:5
**Montoya** [3] - 11:1, 12:16, 19:6
**morning** [1] - 7:8
**most** [2] - 10:10, 14:2
**MOTION** [4] - 3:5, 3:7, 3:11
**motion** [22] - 4:11, 4:12, 4:23, 4:25, 5:7, 11:1, 11:16, 11:20, 11:21, 12:4, 12:9, 12:11, 12:18, 12:22, 12:24, 12:25, 13:2, 13:21, 14:2, 21:11
**MOTIONS** [2] - 1:11, 3:3
**motions** [9] - 4:9, 4:10, 11:3, 11:15, 12:17, 17:13, 21:15, 21:17
**move** [2] - 9:4, 9:6
**moved** [2] - 16:6, 16:16
**moving** [2] - 7:5, 10:6

**MPFs** [1] - 11:10
**MR** [29] - 4:18, 4:22, 5:2, 5:7, 7:1, 7:8, 7:11, 8:22, 9:9, 10:2, 10:25, 11:5, 12:2, 12:16, 14:25, 16:5, 16:14, 17:23, 18:16, 19:19, 20:5, 20:9, 20:10, 20:20, 20:25, 21:3, 21:9, 21:10, 21:16
**multilayered** [1] - 14:11
**multiple** [1] - 14:12
**must** [1] - 10:15
**mystery** [1] - 11:14

## N

**name** [2] - 5:15, 7:10
**named** [1] - 15:6
**narrow** [2] - 20:19, 20:22
**native** [1] - 5:10
**necessary** [2] - 6:6, 20:8, 21:12
**need** [11] - 4:10, 12:1, 12:7, 12:8, 12:10, 14:8, 15:24, 16:14, 19:15, 21:7, 21:15
**needed** [1] - 5:21
**New** [2] - 10:16, 19:22
**NEW** [3] - 1:6, 1:24, 2:8
**next** [3] - 4:20, 11:24, 21:13
**NICHOLAS** [1] - 2:4
**Nick** [1] - 12:3
**NO** [1] - 1:6
**nobody** [2] - 11:17, 11:22
**none** [1] - 8:3
**nothing** [1] - 6:16
**notice** [2] - 15:2, 15:8
**November** [1] - 19:20
**nowhere** [1] - 6:18
**number** [2] - 4:8, 5:6
**numbered** [1] - 22:9
**NY** [1] - 1:24

## O

**objection** [1] - 13:2
**obligation** [1] - 6:22
**OEM** [1] - 16:19
**OEMs** [1] - 11:7
**OF** [4] - 1:1, 1:11, 3:12
**Official** [2] - 22:5,

22:15
**OFFICIAL** [1] - 2:7
**officially** [1] - 17:20
**omnibus** [1] - 4:25
**OMNIBUS** [1] - 3:7
**ON** [1] - 3:7
**once** [2] - 9:21, 14:3
**one** [13] - 4:20, 5:5, 8:6, 8:7, 8:18, 11:4, 11:7, 11:15, 11:18, 16:5, 16:17, 20:17
**ones** [1] - 9:18
**opponent** [1] - 7:6
**opportunity** [2] - 9:6, 11:23
**oral** [1] - 4:17
**orally** [1] - 12:1
**ORDER** [1] - 4:4
**order** [9] - 8:7, 11:8, 11:12, 12:5, 12:7, 12:23, 12:25, 13:21, 14:10
**ordered** [1] - 11:9
**ordinarily** [1] - 9:5
**Orleans** [1] - 10:16
**ORLEANS** [3] - 1:6, 2:8
**OTHER** [1] - 3:6
**ought** [2] - 20:18, 20:19
**owned** [1] - 14:12
**ownership** [2] - 14:13, 15:17

## P

**PA** [1] - 1:18
**PAGE** [1] - 3:3
**pages** [2] - 9:14, 19:25
**Panayotopoulos** [1] - 12:3
**PANAYOTOPOULOS** [2] - 2:4, 12:2
**papers** [2] - 16:6, 16:9
**parent** [1] - 18:4
**part** [1] - 14:3
**participate** [1] - 20:3
**particular** [1] - 5:13
**parties** [4] - 4:9, 4:16, 9:11, 18:19
**party** [2] - 8:14, 9:3
**pass** [1] - 12:9
**past** [1] - 18:22
**Patrick** [1] - 12:16
**PATRICK** [1] - 1:20
**PEACHTREE** [1] - 2:4
**PENTHOUSE** [1] - 1:20
**people** [4] - 9:23,

9:24, 10:22, 19:13
**Pepper** [3] - 22:3, 22:13, 22:14
**PEPPER** [1] - 2:7
**person** [1] - 20:16
**personal** [11] - 12:20, 13:5, 13:9, 13:14, 14:17, 15:13, 15:18, 16:18, 16:21, 17:25
**perspective** [1] - 15:20
**phantom** [1] - 10:2
**PHILADELPHIA** [1] - 1:18
**phone** [3] - 16:1, 21:1, 21:5
**piercing** [2] - 13:10, 14:18
**plain** [1] - 10:18
**plaintiff** [1] - 8:13
**Plaintiff's** [1] - 4:24
**PLAINTIFF'S** [1] - 3:7
**plaintiffs** [6] - 8:3, 8:10, 10:14, 16:25, 17:14, 20:5
**PLAINTIFFS** [1] - 1:16
**PLAINTIFFS'** [2] - 3:5, 3:11
**Plaintiffs'** [2] - 4:12, 12:17
**plaintiffs'** [2] - 12:11, 12:18
**Plasterboard** [1] - 7:12
**plausible** [1] - 8:13
**pleading** [1] - 8:12
**pleadings** [1] - 7:4
**pled** [2] - 14:9, 14:10
**point** [3] - 9:24, 15:9, 16:5
**pointed** [1] - 13:1
**pointing** [1] - 9:23
**position** [6] - 9:7, 16:8, 17:1, 17:3, 20:15, 20:16
**possession** [2] - 15:10, 19:8
**potential** [1] - 7:14
**POYDRAS** [1] - 2:7
**practical** [5] - 9:10, 9:22, 14:21, 15:20, 18:3
**pragmatic** [1] - 9:22
**precluded** [1] - 20:11
**preliminary** [6] - 4:24, 4:25, 7:3, 7:5, 11:16, 11:22
**PRELIMINARY** [1] - 3:8
**prepare** [2] - 16:12,

19:25
**presentation** [1] - 9:3
**principals** [1] - 6:15
**problem** [5] - 6:2, 6:19, 8:10, 8:23, 19:21
**Procedure** [2] - 6:11, 10:9
**proceed** [3] - 6:6, 6:22, 11:21
**proceeding** [1] - 9:20
**PROCEEDINGS** [3] - 1:11, 2:9, 4:1
**proceedings** [2] - 21:19, 22:9
**produce** [4] - 11:25, 15:12, 15:24, 19:7
**PRODUCE** [1] - 3:9
**PRODUCED** [1] - 2:10
**produced** [4] - 9:14, 11:12, 11:14, 12:6
**product** [5] - 5:15, 10:14, 18:2
**production** [3] - 12:20, 15:2, 16:19
**PRODUCTS** [1] - 1:4
**products** [5] - 6:3, 6:16, 11:13, 13:13, 13:18
**Professional** [1] - 22:4
**profile** [1] - 7:22
**prolix** [1] - 14:11
**proposals** [1] - 7:25
**proposed** [2] - 4:11, 20:1
**protective** [3] - 12:22, 12:25, 13:21
**providing** [5] - 7:13, 7:15, 7:22, 8:2, 8:8
**PSC** [3] - 8:17, 9:12, 19:19
**purpose** [1] - 13:19
**purposeful** [1] - 18:10
**purposes** [4] - 14:17, 16:21, 18:1, 18:11
**put** [3] - 5:15, 6:24, 8:14

**Q**

**questions** [5] - 6:13, 15:16, 20:12, 20:23
**quickly** [2] - 18:24, 19:15

**R**

**RE** [1] - 1:4
**reach** [1] - 14:10
**real** [1] - 15:9
**realize** [1] - 9:22
**really** [4] - 10:21, 17:4, 17:9, 18:7
**Realtime** [1] - 22:3
**reason** [2] - 20:15, 20:16
**recess** [1] - 21:18
**Record** [2] - 12:1, 12:15
**RECORD** [4] - 3:6, 3:8, 3:10, 3:13
**record** [4] - 4:13, 5:3, 5:6, 22:9
**RECORDED** [1] - 2:9
**refile** [1] - 21:12
**reflecting** [1] - 7:15
**regard** [1] - 6:3
**regarding** [3] - 7:13, 18:17, 19:1
**Registered** [2] - 22:3, 22:4
**reject** [1] - 5:11
**RELATED** [1] - 3:9
**related** [4] - 5:18, 11:25, 13:12, 15:17
**RELATES** [1] - 1:8
**relating** [1] - 12:23
**relevant** [4] - 13:8, 13:9, 13:13, 14:17
**RELIEF** [1] - 3:6
**relief** [4] - 4:13, 4:22, 6:8
**reply** [1] - 13:20
**REPORTER** [1] - 2:7
**Reporter** [6] - 22:3, 22:4, 22:5, 22:15
**REPORTER'S** [1] - 22:1
**represent** [4] - 7:11, 10:10, 10:19
**representations** [2] - 13:3, 14:6
**representatives** [2] - 7:17, 9:16
**represented** [1] - 9:3
**REQUEST** [1] - 3:9
**request** [3] - 11:24, 12:19, 15:1
**require** [1] - 8:12
**required** [3] - 19:4, 19:7
**residents** [1] - 6:19
**resold** [1] - 7:19
**resolve** [1] - 16:2

**resolved** [1] - 4:10
**respect** [2] - 9:9, 14:6
**respond** [2] - 11:4, 11:5
**response** [4] - 5:3, 10:1, 14:16, 16:4
**responsibility** [1] - 18:1
**responsible** [1] - 6:25
**restrict** [1] - 19:16
**revealed** [1] - 17:13
**Rick** [1] - 7:10
**rise** [1] - 4:7
**RMR** [2] - 2:7, 22:14
**ROAD** [1] - 2:4
**ROOM** [1] - 2:7
**Rule** [3] - 6:9, 6:10, 19:9
**ruled** [1] - 8:11
**Rules** [2] - 6:11, 10:8
**rules** [3] - 8:12, 15:11

**S**

**s/Cathy** [1] - 22:13
**sale** [4] - 8:5, 8:8, 9:11, 13:25
**sales** [6] - 7:14, 13:12, 13:17, 14:15, 14:16, 16:20, 18:2
**schedule** [1] - 4:16
**scheduled** [1] - 16:6
**scope** [3] - 14:4, 20:11, 20:18
**search** [1] - 19:5
**seated** [1] - 4:8
**second** [1] - 13:15
**secrecy** [2] - 6:12, 6:13
**SEDRAN** [1] - 1:16
**see** [2] - 9:21, 17:14
**seeking** [1] - 8:4
**separate** [1] - 11:1
**service** [3] - 5:11, 5:19
**servicing** [1] - 5:10
**set** [6] - 4:15, 4:17, 12:20, 13:21, 15:2, 15:14
**several** [3] - 5:8, 15:7, 16:10
**short** [1] - 7:12
**show** [3] - 6:25, 8:3, 14:23
**showing** [1] - 8:13
**side** [1] - 9:2
**significant** [1] - 6:19
**similar** [1] - 12:18
**simply** [2] - 13:6, 15:22

**single** [1] - 11:11
**situation** [3] - 6:16, 17:5, 17:22
**six** [1] - 4:10
**solicited** [1] - 7:17
**sometimes** [2] - 5:16
**sort** [1] - 7:15
**sought** [1] - 8:9
**SPANO** [12] - 1:23, 7:11, 8:22, 9:9, 11:5, 16:14, 17:23, 18:16, 19:19, 20:5, 20:9, 21:10
**Spano** [1] - 7:9
**special** [1] - 6:5
**specific** [1] - 8:13
**speculation** [1] - 18:3
**stake** [1] - 10:13
**stand** [2] - 18:25, 21:18
**standpoint** [2] - 8:24, 14:21
**STANLEY** [1] - 7:8
**Stanley** [1] - 7:10
**start** [2] - 20:24, 21:3
**state** [1] - 8:13
**State** [2] - 20:5, 22:5
**statements** [1] - 9:1
**States** [10] - 6:17, 7:14, 13:13, 13:18, 14:1, 14:15, 14:17, 18:15, 22:6, 22:16
**STATES** [2] - 1:1, 1:12
**stay** [3] - 4:15, 4:25, 6:24
**STAY** [1] - 3:7
**STEERING** [2] - 3:5, 3:11
**Steering** [3] - 4:12, 12:11, 12:17
**STENOGRAPHY** [1] - 2:9
**STREET** [2] - 1:17, 2:7
**subissues** [1] - 14:2
**subject** [1] - 17:25
**submitted** [1] - 16:18
**subsidiaries** [4] - 8:3, 15:5, 19:3, 19:10
**subsidiary** [1] - 8:6
**successors** [1] - 15:5
**sue** [1] - 8:17
**sued** [3] - 5:8, 10:21, 10:22
**sufficient** [5] - 16:20, 16:24, 18:10, 18:20, 19:14
**suggested** [1] - 16:1
**suggesting** [1] - 9:19
**suggestion** [1] - 9:24

**SUITE** [2] - 1:17, 2:4
**supplemental** [1] - 18:23
**SUPPLY** [1] - 2:3
**support** [2] - 20:15, 20:16
**Supreme** [1] - 8:11
**surrogate** [1] - 18:5
**surrogates** [4] - 17:1, 17:2, 17:4, 17:7
**surrogates'** [1] - 17:2

## T

**Taian** [1] - 7:12
**Taishan** [36] - 5:18, 5:19, 5:21, 6:3, 6:5, 7:10, 7:11, 7:12, 8:7, 9:12, 11:7, 11:10, 12:13, 12:22, 13:3, 13:12, 13:16, 13:20, 13:24, 13:25, 14:11, 14:15, 14:16, 15:3, 15:9, 16:7, 16:16, 16:23, 17:1, 17:4, 17:11, 17:12, 17:24, 18:5, 18:17
**TAISHAN** [1] - 3:13
**Taishan's** [4] - 12:25, 13:17, 14:6, 17:3
**tangent** [1] - 18:25
**targeting** [1] - 18:9
**terms** [1] - 14:14
**test** [1] - 17:6
**testimony** [1] - 18:13
**TG** [1] - 7:18
**THAT** [1] - 3:9
**THE** [35] - 1:11, 1:16, 1:23, 3:7, 3:10, 3:12, 4:7, 4:8, 4:20, 4:24, 5:5, 6:23, 7:6, 8:20, 8:23, 10:1, 10:24, 11:3, 11:15, 12:9, 14:20, 16:4, 16:13, 16:25, 18:14, 19:12, 20:4, 20:6, 20:14, 20:21, 21:2, 21:6, 21:11, 21:17
**theories** [5] - 6:7, 6:8, 14:10, 14:19
**theory** [3] - 13:10, 13:11
**they've** [4] - 14:9, 15:22, 16:10, 16:11
**thinking** [1] - 5:23
**THIRD** [1] - 1:24
**THIS** [1] - 1:8
**thousand** [1] - 19:11
**THURSDAY** [2] - 1:7,

4:2
**TO** [4] - 1:8, 3:7, 3:10, 4:4
**today** [2] - 4:9, 7:10
**together** [4] - 11:4, 20:4, 20:6, 21:13
**topics** [2] - 12:24, 15:3
**towards** [1] - 13:25
**transactions** [3] - 7:20, 7:23, 18:18
**TRANSCRIPT** [2] - 1:11, 2:9
**transcript** [1] - 22:8
**translated** [1] - 17:17
**translating** [1] - 5:9
**travel** [1] - 19:23
**true** [1] - 22:7
**trying** [4] - 9:4, 9:6, 9:10, 15:16
**TTP** [7] - 7:12, 7:18, 11:7, 11:10, 16:23, 17:24, 18:17
**turns** [1] - 10:16
**two** [6] - 9:11, 9:18, 11:15, 12:17, 17:25, 19:21
**Twombly** [1] - 8:11
**type** [3] - 6:21, 14:18, 16:15

## U

**U.S** [7] - 7:19, 16:23, 18:2, 18:6, 18:9, 18:10
**ultimately** [1] - 14:11
**under** [2] - 13:11, 19:9
**underlying** [1] - 7:24
**undertaker** [1] - 13:11
**undertaking** [3] - 6:7, 16:15, 19:24
**UNITED** [2] - 1:1, 1:12
**United** [10] - 6:17, 7:14, 13:13, 13:18, 14:1, 14:15, 14:17, 18:15, 22:6, 22:16
**unless** [1] - 9:20
**unrelated** [1] - 19:2
**untenable** [1] - 20:1
**up** [5] - 12:7, 14:23, 15:7, 21:7, 21:15

## V

**vacate** [1] - 16:16
**vacating** [1] - 16:17
**veil** [2] - 13:10, 14:18

**veil-piercing** [2] - 13:10, 14:18
**Virginia** [1] - 6:3
**vis** [2] - 16:23
**vis-a-vis** [1] - 16:23
**voluminous** [1] - 9:13

## W

**walk** [1] - 10:18
**WALNUT** [1] - 1:17
**waste** [1] - 9:20
**week** [4] - 11:18, 11:21, 20:1, 21:13
**weeks** [1] - 19:21
**WEINBERG** [1] - 2:3
**whatsoever** [1] - 8:5
**WHEELER** [1] - 2:3
**WHEREUPON** [1] - 21:19
**whispered** [1] - 18:5
**whole** [2] - 13:23, 14:25
**willing** [2] - 6:10, 16:1
**win** [1] - 20:21
**wishes** [1] - 7:7
**WITH** [1] - 3:10
**witnesses** [7] - 15:15, 15:25, 18:13, 18:14, 18:16, 19:23, 20:2
**word** [3] - 6:14, 9:12, 10:7

## Y

**Year** [1] - 19:22
**year** [1] - 16:11
**yesterday** [2] - 10:8, 13:20
**YORK** [1] - 1:24