# EXHIBIT E

**LEXINGTON INSURANCE COMPANY**
Administrative Offices: 100 Summer Street Boston, Massachusetts 02110-2103
(hereinafter called the Company)

Follow Form Policy
Declarations

This insurance is issued pursuant to the Florida Surplus Lines Law. Persons insured by Surplus Lines Carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery for the obligation of an insolvent unlicensed insurer.

Named Insured: WCI COMMUNITIES, INC

Address: 24301 WALDEN CENTER DRIVE

BONITA SPRINGS   FL   34134-

Policy No.: 0355453

Renewal of No.: NEW

SECTION I – EXCESS INSURANCE

A) Policy Period:
From: 05/01/06   To: 05/01/07
12:01 A.M. Standard Time at the Address of the Insured stated herein

B) Coverage: EXCESS LIABILITY

C) Limits of Liability:   $See Endorsement # 005
$See Endorsement # 005

D) Premium Computation:

Surplus Lines Agent: Donna L. Schramer, License #A[...]
Address: 3000 Bayport Drive, Suite 300
Tampa, FL 33607

Producing Agent: [handwritten]
Address: 3000 Bayport Dr, Tampa
TL Premium: 307,598
Tax: 15,379.90   Service Fee: 615.00
Citizen's Assessment: 0
EMPA Surcharge: 0
Inspection Fee: 0   Policy Fee: [handwritten]
S/L Agent's Countersignature: Donna L Schramer

| Estimated Exposure | Rating Base | Rate | Audit Period |
|---|---|---|---|
| 2,917 | PER UNITS | $105.45 | ANNUAL |

| Advance Premium | Annual Minimum Premium | Minimum Earned Premium at Inception |
|---|---|---|
| $307,598 | $307,598 | $107,659 |

SECTION II – UNDERLYING INSURANCE

A) Underlying Company:   AMERICAN INTNATIONAL SURPLUS LINES AGENCY, INC.
Policy Number:   7412158
Coverage:   UMBRELLA
Eff. Date:   06/01/2006   Exp. Date: 05/01/2007
Limit:   $25,000,000 Each Occurrence
$25,000,000 General Aggregate
$25,000,000 Products/Completed Operations Aggregate

B) Total Limits of all Underlying Insurance including the Underlying Policy in excess of which this policy applies:
$26,000,000 EACH OCCURRENCE; $30,000,000 GENERAL AGGREGATE
$30,000,000 PRODUCTS/COMPLETED OPERATIONS AGGREGATE

Endorsements Attached: See attached Forms Schedule.

[signature]
Authorized Representative
Countersignature (In states where applicable)

LEX-OCC-FF1 (Ed.07/90)
LX0319

INSURED'S COPY

FORMS SCHEDULE

Named Insured:   WCI COMMUNITIES, INC

Policy No.:   0355453                                                                      Effective Date: 05/01/2006

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| LEX-OCC-FF1 | 07/90 | – | FOLLOW FORM X/S DEC 1 |
| LEX-OCC-FF-1T | 07/94 | | OCC FOLLOW FORM 1 TEXT |
| LX9803 | 08/05 | 001 | ANTI-STACKING ENDORSEMENT |
| LEXCME077 | 03/86 | 002 | MINIMUM EARNED PREMIUM |
| LEXCME081 | 09/02 | 003 | NO FAULT/UNINS MOTOR/PI EXCL |
| LEX9828 | 01/05 | 004 | TERRORISM EXCLUSION |
| | | 005 | LIMITS OF LIABILITY AMENDMENT |

DOC018(Ed.12/87)
.X0295

INSURED'S COPY

**LEXINGTON INSURANCE COMPANY**
Administrative Office, 100 Summer Street
Boston, Massachusetts 02110-2103
(hereinafter called the Company)

Following Form - Excess Liability Policy

Throughout this policy the Insured is the first Named Insured shown in the Declarations. The words we, us and our refer to the Company providing the insurance.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations made a part hereof and subject to the limits of liability, exclusions, conditions and other terms of this policy, the Company issuing this policy agrees with the Insured named in the Declarations as follows:

## INSURING AGREEMENTS

I. **COVERAGE**

   A. We will pay on behalf of the Insured that portion of the loss which the Insured will become legally obligated to pay as compensatory damages (excluding all fines, penalties, punitive or exemplary damages) by reason of exhaustion of all applicable underlying limits, whether collectible or not, as specified in Section II of the Declarations, subject to:

   1. the terms and conditions of the underlying policy listed in Section IIA of the Declarations, AND

   2. our Limit of Liability as stated in Section IC of the Declarations.

   B. Except as regards: (1) the premium; (2) the obligation to investigate and defend, including costs and expenses thereto; (3) the limit of liability; (4) the renewal agreement, if any; (5) the notice of occurrence, claim, or suit provision; (6) any other provision therein inconsistent with this policy; the provisions of the underlying policy are hereby incorporated as part of this policy.

II. **DEFENSE**

   A. This section shall apply to claims resulting from occurrences not covered by any underlying insurance due to exhaustion of any aggregate limits by reason of any losses paid thereunder.

   1. We will defend any suit against the Insured alleging liability insured under the provisions of this policy and seeking recovery for damages on account thereof, even if such suit is groundless, false or fraudulent, but we will have the right to make such investigation and negotiation and settlement of any claims or suits as may be deemed expedient by us.

   2. We will pay: (a) all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy; (b) all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds; (c) all costs taxed against the Insured in any such suits; (d) all expenses incurred by us; and (e) all interest accruing after entry of judgment until we have paid, tendered or deposited in court that part of any judgment as does not exceed the limit of our liability thereon.

   3. We will reimburse the Insured for all reasonable expenses incurred at our request, (including actual loss of wages or salary, but not loss of other income, not to exceed one hundred (100) dollars per day) because of the Insured's attendance at hearings or trials at such request.

   4. We will pay all pre-judgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

   B. We will pay the amounts incurred under IIA above, but any such payments shall serve to reduce the Limits of Liability of this policy as stated in the Declarations.

- 1 -

LEX-OCC-FF-1T(Ed. 07/94)
LX0401

INSURED'S COPY

C.  In all other instances except IIA above:

we shall not be called upon to assume charge of the investigation, settlement or defense of any claim made or suit brought or proceedings instituted against the Insured, but shall have the right and be given the opportunity to be associated in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in our opinion, may create liability for us under the terms of this policy.

III. LIMITS OF LIABILITY

A.  Aggregate

This policy is subject to an aggregate limit of liability as stated in the Declarations. This aggregate limit of liability is the maximum amount which will be paid under this policy for all losses in excess of the underlying policy limits occurring during the policy period, except automobile liability for which there is no applicable aggregate limit of liability.

B.  Occurrence Limit

Subject to the above provision respecting aggregate, the Limit of Liability stated in the Declarations as per occurrence is the total limit of our liability for ultimate net loss including damages for care, loss of services or loss of consortium because of personal injury and property damage combined, sustained by one or more persons or organizations as a result of any one (1) occurrence.

C.  Limit Exhaustion

This policy shall cease to apply after the applicable limits of liability have been exhausted by payments of defense costs and/or judgments and/or settlements.

In the event of exhaustion of the aggregate limits of liability of the underlying insurance as stated in Section II of the Declarations, this policy will continue in force as underlying insurance.

The aggregate limits of the underlying insurance will only be reduced or exhausted by payment of claims that would be insured by this policy.

IV. INSURED'S DUTIES

The Insured named in the Declarations hereby agrees to promptly furnish us with a copy of the underlying policy and all endorsements thereto which in any way effect this excess insurance. Written notice of any loss likely to give rise to a claim hereunder shall be given to us by or on behalf of the Insured named in the Declarations, containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances of the loss.

## EXCLUSIONS

This policy does not apply:

1.  to any injury caused by, contributed to or arising out of the actual or threatened discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, pollutants or contaminants into or upon the land, the atmosphere or any course or body of water, whether above or below ground. It is understood and agreed that the intent and effect of this exclusion is to delete from any and all coverages afforded by this policy any claim, action, judgment, liability, settlement, defense or expense (including any loss, cost, or expense arising out of any governmental direction or request that the Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants) in any way arising out of such actual or threatened discharge, dispersal, release or escape, whether such results from the Insured's activities or the activities of others, and whether or not such is sudden or gradual, and whether or not such is accidental, intended, foreseeable, expected, fortuitous or inevitable, and wherever such occurs;

2.  to any injury:

- 2 -

a. with respect to which an Insured is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b. under any liability coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

1) the nuclear material (a) is at any nuclear facility owned by the Insured or operated by the Insured or on the Insured's behalf, or (b) has been discharged or dispensed therefrom;

2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the Insured or on the Insured's behalf; or

3) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to injury to property damage to such nuclear facility and any property thereat;

c. as used in this exclusion:

1) hazardous properties includes radioactive, toxic or explosive properties;

2) nuclear material means source material, special nuclear material or by-product material;

3) source material, special nuclear material and by-product material have the meaning given them in Atomic Energy Act of 1954 or in any law amendatory thereof;

4) spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

5) waste means any waste material (a) containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (b) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

6) nuclear facility means:

    a) any nuclear reactor,

    b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes,

    c) any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than twenty-five (25) grams of plutonium or uranium 233 or any combination thereof, or more than two hundred fifty (250) grams of uranium 235,

    d) any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

- 3 -

7) nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

8) with respect to injury to or destruction of property the word injury or destruction includes all forms of radioactive contamination of property;

3. to any liability for property damage, personal injury, sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, at any time arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust, or

to any obligation of the Insured to indemnify any party because of damages arising out of such property damage, personal injury, sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, at any time as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust, or

to any obligation to defend any suit or claim against the Insured alleging personal injury, sickness, disease, occupational disease, disability, shock, death, mental anguish, mental injury or property damage resulting from or contributed to, by any and all manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

4. to discrimination or humiliation;

5. to any claim in respect of which the Insured either has given written notice to the insurers of any other insurance before the policy period as stated in Section IA of the Declarations, or gives written notice of potential claims which notice is treated as received by any insurers before the policy period as stated in Section IA of the Declarations;

6. to any liability of the Insured due to war, invasion, acts of foreign enemies, hostilities, (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction or damage to property by or under the order of any government or public or local authority.

## DEFINITIONS

1. **Loss** - The word loss means the sum paid in settlement of losses for which the Insured is liable after making deductions for all recoveries, salvages and other insurance (other than recoveries under the policy of the underlying insurance), whether recoverable or not, and shall include all expenses and costs.

2. **Claim** - The word claim means a written notice received by the Insured of an intention to hold the Insured responsible for an occurrence covered by this policy, and shall include the service of suit or institution of arbitration proceedings against the Insured.

3. **Occurrence** - The word occurrence means an event, including continuous or repeated exposures to conditions, neither expected or intended from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be deemed one occurrence.

4. **Costs** - The word costs shall be understood to mean interest on judgments, investigations, adjustments and legal expenses (excluding all expenses for salaried employees of the Insured or any of the underlying Insurer's permanent employees).

5. **Underlying Policy** - The term underlying policy shall be understood to mean the policy indicated in Section IIA of the Declarations.

**Underlying Insurance** - The term underlying insurance shall be understood to mean the total limits of all insurance including the underlying policy and/or any self-insured retentions excess of which this policy is written, whether recoverable or not recoverable.

- 4 -

LEX-OCC-FF-1T(Ed. 07/94)
LX0491

INSURED'S COPY

7. <u>Insured</u> - The term Insured shall be understood to mean the Insured named in the Declarations, any Insured under the underlying policy, and any additional Insured added to the policy by endorsement attached hereto.

<u>Ultimate Net Loss</u> - The term ultimate net loss means the total sum which the Insured or any company as its insurer, or both, become legally obligated to pay by reason of personal injury, property damage or advertising injury claims covered by this policy, either through adjudication or compromise (with our written consent), and shall also include hospital, medical and funeral charges and all sums paid or payable as salaries, wages, compensation, fees, charges, interest, or expenses for doctors, nurses, and investigators and other persons, and for settlement, adjustment, investigation and defense of claims but excluding the Insured's salaries or the salaries of any of the underlying insurer's permanent employees.

## CONDITIONS

1. <u>Following Form</u> - It is agreed that this policy, except as herein stated, is subject to all conditions, agreements and limitations of and shall follow the underlying policy/ies in all respects, including changes by endorsement, and the Insured shall furnish the Company with copies of such changes. It is further agreed, should any alteration be made in the premium for the policy/ies of the Primary Insurers during the period of this policy, then the premium hereon, other than the minimum premiums as stated in the Declarations, shall be adjusted accordingly.

2. <u>Maintenance of Underlying Insurance</u> - The policy or policies referred to in Section II, Underlying Insurance, in the Declarations, and renewal or replacement thereof not more restrictive, shall be maintained by the Insured in full force and effect during the currency of this policy without alteration in their terms or conditions, except for any reduction of the aggregate limit or limits contained therein solely by payment of claims.

Further, the receivership, the insolvency and/or inability to pay by an underlying insurer for any reason shall not be deemed to render the funds which would have been otherwise available from any underlying insurer to be unavailable, unrecoverable, reduced or exhausted for the purposes of determining the Company's liability under this policy, it being understood that the liability of the Company under this policy shall in no way be increased or expanded as a result of such receivership, insolvency or inability to pay by an underlying insurer.

3. <u>Application of Salvages - Subrogation</u> - All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this insurance shall be applied as if recovered or received prior to such settlement, and all necessary adjustments shall then be made between the Insured and us, provided always that nothing in this clause shall be construed or mean that losses under this insurance are not recoverable until the Insured's ultimate net loss has been finally ascertained. Inasmuch as this policy is excess coverage, the Insured's right of recovery against any person or other entity cannot always be exclusively subrogated to us. It is therefor understood and agreed that in case of any payment hereunder, we shall act in concert with all other interests (including the Insured's) concerned in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interest (including the Insured's) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them. We shall then be reimbursed out of any balance then remaining, up to the amount paid hereunder. Lastly, the interests (including the Insured's) of whom this coverage is excess are entitled to claim the residue, if any. Expense necessary to the recovery of any such amounts shall be apportioned between the interests (including the Insured's) concerned in the ratio of their respective recoveries as finally settled.

4. <u>Notice of Occurrence, Claim, or Suit</u>

   A. The first Named Insured shall immediately notify us in writing of any occurrence which may reasonably be expected to result in a claim against this policy. The first Named Insured will notify us on the assumption that an Insured is liable and that an Insured is liable for any amount claimed. Notice shall include:

1. how, when and where the occurrence took place; and
2. the names and addresses of any injured persons and any witnesses.

B.
1. The first Named Insured shall immediately notify us in writing of any claim, alone or in combination with any other claims, to which this policy applies which may exceed 25% of the applicable amount set forth in the Schedule of Underlying Insurance. The first Named Insured will notify us on the assumption that an Insured is liable and that an Insured is liable for any amount(s) claimed.

2. As respects B1. above, the first Named Insured and any other involved Insured must:
   a) immediately send us copies of any demands, notices, summonses or other legal papers received in connection with the claim or suit;
   b) authorize us to obtain records and other information;
   c) cooperate with us in the investigation, settlement or defense of the claim or suit; and
   d) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury to which this insurance may also apply.

3. No Insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without our consent.

5. Premium - It is agreed that should any alteration be made in the premium for the underlying policy during the period of this policy, or if there is an increase in the risk assumed by the Company, then the premium hereon may be adjusted accordingly.

If this policy is subject to audit adjustment, the premium will be based upon the rating base as set forth in the Declarations. Upon notice to the Named Insured of the earned premium due, such premium in excess of the advance premium shall become due and payable. If the total earned premium is less than the premium previously paid, the Company shall return to the Insured the unearned portion paid by the Insured, subject however to any minimum premium stated in the Declarations.

6. Cancellation - This policy may be cancelled by the Insured by surrender thereof to us or any of our authorized agents, or by mailing to us or any of our authorized agents, written notice stating when thereafter such cancellation shall be effective. The policy may be cancelled by us by mailing to the Insured at the address shown in Declarations written notice stating when, not less than thirty (30) days thereafter (ten (10) days with respect to cancellation for non-payment of premium) such cancellation shall be effective. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by us shall be equivalent to mailing.

If we cancel, earned premium shall be computed pro rata. If the Insured cancels, earned premium shall be computed in accordance with the customary short rate table procedure. In the event of such cancellation, the earned premium shall in no case be less than the Minimum Earned Premium at inception as stated in the Declarations.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due the Insured.

If this policy insures more than one Named Insured, cancellation may be effected by the first of such Insureds for the account of all Insureds. Notice of cancellation by us to such first Named Insured shall be notice to all Insureds. Payment of any unearned premium to such first Named Insured shall be for the account of all interests in such payment.

- 6 -

7. **Bankruptcy and Insolvency** - In the event of the Insured's bankruptcy or insolvency or any entity comprising the Insured, we shall not be relieved thereby of the payment of any claim hereunder because of such bankruptcy or insolvency.

8. **Aggregate Policy Period** - If the period of the underlying insurance is not concurrent with the policy period, it is agreed that for the purpose of determining the Company's liability loss excess of the aggregate limits of the underlying insurance, only loss or losses which take place during the policy period of this policy shall be included.

9. **Service of Suit** - In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company''s rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts, 02110-2103 or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

10. **Arbitration** - Notwithstanding the Service of Suit clause above, in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) Arbitrators, consisting of two (2) party-nominated (non-impartial) Arbitrators and a third (impartial) arbitrator (hereinafter "umpire") as the sole and exclusive remedy.

The Party desiring arbitration of a dispute shall notify the other party, said notice including the name, address and occupation of the Arbitrator nominated by the demanding party. The other party shall within 30 days following receipt of the demand, notify in writing the demanding party of the name, address and occupation of the Arbitrator nominated by it. The two (2) Arbitrators so selected shall, within 30 days of the appointment of the second Arbitrator, select an umpire. If the Arbitrators are unable to agree upon an umpire, each Arbitrator shall submit to the other Arbitrator a list of three (3) proposed individuals, from which list each Arbitrator shall choose one (1) individual. The names of the two (2) individuals so chosen shall be subject to a draw, whereby the individual drawn shall serve as umpire.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the umpire. Said hearings shall be held within thirty (30) days of the selection of the umpire. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud or gross misconduct by the Arbitrators. The award will be issued within 30 days of the close of the hearings. Each party shall bear the expenses of its designated Arbitrator and shall jointly and equally share with the other the expense of the umpire and of the arbitration proceeding.

The arbitration proceeding shall take place in or in the vicinity of Boston, Massachusetts. The procedural rules applicable to this arbitration, shall, except as provided otherwise herein, be in accordance with the Commercial Rules of the American Arbitration Association.

- 7 -

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of its duly authorized representatives.

*Elizabeth M. Tuck*  
Secretary

*[signature]*  
Chairman of the Board and CEO

- 8 -

LEX-OCC-FF-1T(Ed. 07/94)  
LX0491

INSURED'S COPY

ENDORSEMENT # 001

This endorsement, effective 12:01 AM 05/01/2006

Forms a part of policy no.: 0355453

Issued to: WCI COMMUNITIES, INC

By: LEXINGTON INSURANCE COMPANY

## ANTI-STACKING ENDORSEMENT

This endorsement modifies insurance provided by the policy:

The following condition is added to the policy:

If this insurance and any other insurance issued to you by us or any member company of American International Group, Inc. apply to the same incident, act, offense, claim, suit, or occurrence, whichever is applicable, the maximum limit of insurance under all insurance available will not exceed the highest applicable limit of insurance available under any one policy.

However, this condition does not apply to any other insurance issued to you by us or any member company of American International Group, Inc. which is specifically intended to be either primary to or in excess of the policy to which this endorsement is attached.

All other terms and conditions of the policy remain the same.

Authorized Representative OR
Countersignature (in states where applicable)

LX9803 (08/05)

INSURED'S COPY

ENDORSEMENT # 002

This endorsement, effective 12:01 AM 05/01/2006

Forms a part of policy no.: 0355453

Issued to: WCI COMMUNITIES, INC

By: LEXINGTON INSURANCE COMPANY

## MINIMUM EARNED PREMIUM

It is understood and agreed that in the event of cancellation of this policy by or at the direction of the Insured, the Company shall retain a Minimum Earned Premium of     $107,659.

It is further agreed that the provision regarding cancellation by the Insured is amended to read:

"If the Insured cancels this policy, earned premium will be computed in accordance with the customary short-rate table and procedure, or the Minimum Earned Premium stated herein, whichever is greater".

Authorized Representative OR
Countersignature (In states where applicable)

LEXCME077(Ed.03/86)
LX0082

INSURED'S COPY

ENDORSEMENT # 003

This endorsement, effective 12:01 AM 05/01/2006

Forms a part of policy no.: 0355453

Issued to: WCI COMMUNITIES, INC

By: LEXINGTON INSURANCE COMPANY

## NO FAULT, UNINSURED MOTORISTS, PERSONAL INJURY PROTECTION EXCLUSION

It is agreed that the coverage afforded by this policy, shall not apply with respect to any liability arising out of any Claims brought under "No Fault", Uninsured/Underinsured Motorists, or Personal Injury Protection Laws or Statutes or similar legislation.

Authorized Representative OR
Countersignature (In states where applicable)

LEXCME081 (09/02)
LX0086

INSURED'S COPY

ENDORSEMENT # 004

This endorsement, effective 12:01 AM 05/01/2006

Forms a part of policy no.: 0355453

Issued to: WCI COMMUNITIES, INC

By: LEXINGTON INSURANCE COMPANY

## TERRORISM EXCLUSION

This insurance does not apply to loss, injury, damage, claim or "suit", arising directly or indirectly as a result of, in connection with, or relating to "terrorism" including but not limited to:

1. Any action taken in hindering or defending against an actual or expected incident of "terrorism" regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage; and
2. Any contemporaneous or ensuing loss caused by explosion, fire, heat, vandalism, looting, theft, civil commotion, rebellion or insurrection.

Multiple Incidents of "terrorism" that occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership will be considered to be one incident.

As used in this exclusion, "terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

a. A government;
b. The civilian population of a country, state or community; or
c. To disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002 (the "Act") is in effect, "terrorism" includes an act of terrorism as defined by Section 102. Definitions of the Act and any revisions or amendments thereto.

All other terms and conditions of the policy are the same.

Authorized Representative OR
Countersignature (In states where applicable)

LX9828 (01/05)

INSURED'S COPY

ENDORSEMENT # 005

This endorsement, effective 12:01 AM: 05/01/2006

Forms a part of policy no.: 0355453

Issued To: WCI COMMUNITIES, INC

By: LEXINGTON INSURANCE COMPANY

## LIMITS OF LIABILITY AMENDMENT

In consideration of the premium charged, it is agreed and understood that the Declarations page of this policy is amended as follows:

SECTION I – EXCESS INSURANCE

C)   Limits of Liability:   $7,500,000 part of $15,000,000 Each Occurrence
                           $7,500,000 part of $15,000,000 Annual Aggregate

All other terms and conditions of this policy remain unchanged.

Authorized Representative-OR
Countersignature (In states where applicable)