# EXHIBIT F

# LEXINGTON INSURANCE COMPANY
**Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110-2103**
(hereinafter called the Company)

### Follow Form Policy
### Declarations

Named Insured:   WCI COMMUNITIES, INC

Address:   24301 WALDEN CENTER DRIVE

Policy No.:  1011060

BONITA SPRINGS          FL    34134

Renewal of No.: 0355453

## SECTION I - EXCESS INSURANCE

A)  Policy Period:
From:   05/01/07   To:   05/01/08
12:01 A.M. Standard Time at the Address of the Insured stated herein.

B)  Coverage:   EXCESS LIABILITY

C)  Limits of Liability:      $15,000,000   Each Occurrence
$15,000,000   Annual Aggregate

**FL Hurricane Catastrophe Fund Surcharge of 1% $2,019 ⁰⁰/₁₀₀**

D)  Premium Computation:

| Estimated Exposure | Rating Base | Rate | Audit Period |
|---|---|---|---|
| 1,320 | PER UNITS | FLAT | NOT AUDITABLE |

| Advance Premium | Annual Minimum Premium | Minimum Earned Premium At Inception |
|---|---|---|
| $201,980 | $201,980 | $70,693 |

## SECTION II - UNDERLYING INSURANCE

A)  Underlying Company:      AMERICAN INT'L SURPLUS LINES
Policy Number:      7412275
Coverage:      UMBRELLA
Eff. Date:      05/01/07   Exp. Date:      05/01/08
Limit:      $25,000,000

RECEIVED
JUL 30 2007
Willis of Florida

B)  Total limits of all Underlying Insurance including the underlying policy in excess of which this policy applies:

SURPLUS LINES AGENT:  BEN WILSON
AGENTS ADDRESS 15 100 N. TAMPA ST. SUITE 3800 OCCURRENCE; $25,000,000 GENERAL AGGREGATE
LIC# A287191    TAMPA, FLORIDA 33602
$25,000,000 PRODUCTS/COMPLETED OPERATIONS AGGREGATE
ADDRESS
CITY  Tampa, Fl
Endorsements Attached:      See attached forms schedule.

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES
LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE
PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT
ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT
UNLICENSED INSURER.

_____
Authorized Representative OR

(TOT. PREM $201,980 ⁰⁰/₁₀₀   TAX $10,099 ⁰⁰/₁₀₀   SERV FEE: $201 ⁹⁹/₁₀₀ Countersignature (in states where applicable)
LEX-OCC-FF1(Ed.07/90)
S/L Agents Countersignature: _____

## FORMS SCHEDULE

Named Insured:   WCI COMMUNITIES, INC

Policy No:  1011060

Effective Date:   05/01/2007

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| LEX-OCC-FF1 | 07/90 | – | FOLLOW FORM X/S DEC 1 |
| LEX-OCC-FF-1T | 07/94 | | OCC FOLLOW FORM 1 TEXT |
| LX9803 | 08/05 | 001 | ANTI-STACKING ENDORSEMENT |
| LEXCME077 | 03/86 | 002 | MINIMUM EARNED PREMIUM |
| LEXCME081 | 09/02 | 003 | NO FAULT/UNINS MOTOR/PI EXCL |
| LX9828 | 01/05 | 004 | TERRORISM EXCLUSION |
| LX9940 | 10/06 | 005 | ACCIDENT INSURANCE ENDORSEMENT |
| LX9883 | 11/05 | 006 | COVERAGE TERRITORY LIMITATION |
| LX9921 | 04/06 | 007 | PATROL ACCESS ENDORSEMENT |
| LX9886 | 12/05 | 008 | SCHEDULE OF UNDERLYING (12/05) |

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

91222 (7/06)

**LEXINGTON INSURANCE COMPANY**
Administrative Office, 100 Summer Street
Boston, Massachusetts  02110-2103
(hereinafter called the Company)

Following Form - Excess Liability Policy

Throughout this policy the **Insured** is the first Named Insured shown in the Declarations.  The words we, us and our refer to the Company providing the insurance.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations made a part hereof and subject to the limits of liability, exclusions, conditions and other terms of this policy, the Company issuing this policy agrees with the **Insured** named in the Declarations as follows:

### INSURING AGREEMENTS

I.   COVERAGE

    A.    We will pay on behalf of the **Insured** that portion of the **loss** which the **Insured** will become legally obligated to pay as compensatory damages (excluding all fines, penalties, punitive or exemplary damages) by reason of exhaustion of all applicable underlying limits, whether collectible or not, as specified in Section II of the Declarations, subject to:

        1.    the terms and conditions of the **underlying policy** listed in Section IIA of the Declarations, AND

        2.    our Limit of Liability as stated in Section IC of the Declarations.

    B.    Except as regards:  (1) the premium; (2) the obligation to investigate and defend, including costs and expenses thereto; (3) the limit of liability; (4) the renewal agreement, if any; (5) the notice of **occurrence**, **claim**, or suit provision; (6) any other provision therein inconsistent with this policy; the provisions of the **underlying policy** are hereby incorporated as part of this policy.

II.   DEFENSE

    A.    This section shall apply to **claims** resulting from occurrences not covered by any **underlying insurance** due to exhaustion of any aggregate limits by reason of any losses paid thereunder.

        1.    We will defend any suit against the **Insured** alleging liability insured under the provisions of this policy and seeking recovery for damages on account thereof, even if such suit is groundless, false or fraudulent, but we will have the right to make such investigation and negotiation and settlement of any **claims** or suits as may be deemed expedient by us.

        2.    We will pay: (a) all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy; (b) all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds; (c) all costs taxed against the **Insured** in any such suits; (d) all expenses incurred by us; and (e) all interest accruing after entry of judgment until we have paid, tendered or deposited in court that part of any judgment as does not exceed the limit of our liability thereon.

        3.    We will reimburse the **Insured** for all reasonable expenses incurred at our request, (including actual loss of wages or salary, but not loss of other income, not to exceed one hundred (100) dollars per day) because of the **Insured's** attendance at hearings or trials at such request.

        4.    We will pay all pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

    B.    We will pay the amounts incurred under IIA above, but any such payments shall serve to reduce the Limits of Liability of this policy as stated in the Declarations.

- 1 -

C.  In all other instances except IIA above:

we shall not be called upon to assume charge of the investigation, settlement or defense of any **claim** made or suit brought or proceedings instituted against the **Insured**, but shall have the right and be given the opportunity to be associated in the defense and trial of any such **claims**, suits or proceedings relative to any **occurrence** which, in our opinion, may create liability for us under the terms of this policy.

III.  LIMITS OF LIABILITY

A.  Aggregate

This policy is subject to an aggregate limit of liability as stated in the Declarations.  This aggregate limit of liability is the maximum amount which will be paid under this policy for all losses in excess of the **underlying policy** limits occurring during the policy period, except automobile liability for which there is no applicable aggregate limit of liability.

B.  Occurrence Limit

Subject to the above provision respecting aggregate, the Limit of Liability stated in the Declarations as per **occurrence** is the total limit of our liability for **ultimate net loss** including damages for care, loss of services or loss of consortium because of personal injury and property damage combined, sustained by one or more persons or organizations as a result of any one (1) **occurrence**.

C.  Limit Exhaustion

This policy shall cease to apply after the applicable limits of liability have been exhausted by payments of defense costs and/or judgments and/or settlements.

In the event of exhaustion of the aggregate limits of liability of the **underlying insurance** as stated in Section II of the Declarations, this policy will continue in force as **underlying insurance**.

The aggregate limits of the **underlying insurance** will only be reduced or exhausted by payment of **claims** that would be insured by this policy.

IV.  INSURED'S DUTIES

The **Insured** named in the Declarations hereby agrees to promptly furnish us with a copy of the **underlying policy** and all endorsements thereto which in any way effect this excess insurance.  Written notice of any loss likely to give rise to a claim hereunder shall be given to us by or on behalf of the **Insured** named in the Declarations, containing particulars sufficient to identify the **Insured** and also reasonably obtainable information with respect to the time, place and circumstances of the **loss**.

## EXCLUSIONS

This policy does not apply:

1.  to any injury caused by, contributed to or arising out of the actual or threatened discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, pollutants or contaminants into or upon the land, the atmosphere or any course or body of water, whether above or below ground.  It is understood and agreed that the intent and effect of this exclusion is to delete from any and all coverages afforded by this policy any **claim**, action, judgment, liability, settlement, defense or expense (including any loss, cost, or expense arising out of any governmental direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants) in any way arising out of such actual or threatened discharge, dispersal, release or escape, whether such results from the **Insured's** activities or the activities of others, and whether or not such is sudden or gradual, and whether or not such is accidental, intended, foreseeable, expected, fortuitous or inevitable, and wherever such occurs;

2.  to any injury:

- 2 -

a.  with respect to which an **Insured** is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b.  under any liability coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

1)  the nuclear material (a) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf, or (b) has been discharged or dispensed therefrom;

2)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

3)  the injury, sickness, disease, death or destruction arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to injury to property damage to such nuclear facility and any property thereat;

c.  as used in this exclusion:

1)  hazardous properties includes radioactive, toxic or explosive properties;

2)  nuclear material means source material, special nuclear material or by-product material;

3)  source material, special nuclear material and by-product material have the meaning given them in Atomic Energy Act of 1954 or in any law amendatory thereof;

4)  spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

5)  waste means any waste material (a) containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (b) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

6)  nuclear facility means:

a)  any nuclear reactor,

b)  any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes,

c)  any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than twenty-five (25) grams of plutonium or uranium 233 or any combination thereof, or more than two hundred fifty (250) grams of uranium 235,

d)  any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

- 3 -

7) nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

8) with respect to injury to or destruction of property the word injury or destruction includes all forms of radioactive contamination of property;

3. to any liability for property damage, personal injury, sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, at any time arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust, or

to any obligation of the Insured to indemnify any party because of damages arising out of such property damage, personal injury, sickness, disease, occupational-disease, disability, shock, death, mental anguish or mental injury, at any time as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust, or

to any obligation to defend any suit or claim against the Insured alleging personal injury, sickness, disease, occupational disease, disability, shock, death, mental anguish, mental injury or property damage resulting from or contributed to, by any and all manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

4. to discrimination or humiliation;

5. to any claim in respect of which the Insured either has given written notice to the insurers of any other insurance before the policy period as stated in Section IA of the Declarations, or gives written notice of potential claims which notice is treated as received by any insurers before the policy period as stated in Section IA of the Declarations;

6. to any liability of the Insured due to war, invasion, acts of foreign enemies, hostilities, (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction or damage to property by or under the order of any government or public or local authority.

## DEFINITIONS

1. Loss - The word loss means the sum paid in settlement of losses for which the Insured is liable after making deductions for all recoveries, salvages and other insurance (other than recoveries under the policy of the underlying insurance), whether recoverable or not, and shall include all expenses and costs.

2. Claim - The word claim means a written notice received by the Insured of an intention to hold the Insured responsible for an occurrence covered by this policy, and shall include the service of suit or institution of arbitration proceedings against the Insured.

3. Occurrence - The word occurrence means an event, including continuous or repeated exposures to conditions, neither expected or intended from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be deemed one occurrence.

4. Costs - The word costs shall be understood to mean interest on judgments, investigations, adjustments and legal expenses (excluding all expenses for salaried employees of the Insured or any of the underlying insurer's permanent employees).

5. Underlying Policy - The term underlying policy shall be understood to mean the policy indicated in Section IIA of the Declarations.

6. Underlying Insurance - The term underlying insurance shall be understood to mean the total limits of all insurance including the underlying policy and/or any self-insured retentions excess of which this policy is written, whether recoverable or not recoverable.

- 4 -

- The term **Insured** shall be understood to mean the **Insured** named in the Declarations, any under the **underlying policy**, and any additional **Insured** added to the policy by endorsement hereto.

**Net Loss** - The term **ultimate net loss** means the total sum which the **Insured** or any company rer, or both, become legally obligated to pay by reason of **personal injury, property damage** or ng **injury claims** covered by this policy, either through adjudication or compromise (with our nsent), and shall also include hospital, medical and funeral charges and all sums paid or payable es, wages, compensation, fees, charges, interest, or expenses for doctors, nurses, and ors and other persons, and for settlement, adjustment, investigation and defense of **claims** but the **Insured's** salaries or the salaries of any of the underlying insurer's permanent employees.

## CONDITIONS

**Form** - It is agreed that this policy, except as herein stated, is subject to all conditions, agreements ations of and shall follow the **underlying policy/ies** in all respects, including changes by rent, and the **Insured** shall furnish the Company with copies of such changes. It is further agreed, y alteration be made in the premium for the policy/ies of the Primary Insurers during the period of r, then the premium hereon, other than the minimum premiums as stated in the Declarations, shall ed accordingly.

nce of **Underlying Insurance** - The policy or policies referred to in Section II, **Underlying** e, in the Declarations, and renewal or replacement thereof not more restrictive, shall be maintained sured in full force and effect during the currency of this policy without alteration in their terms or s, except for any reduction of the aggregate limit or limits contained therein solely by payment of

he receivership, the insolvency and/or inability to pay by an underlying insurer for any reason shall emed to render the funds which would have been otherwise available from any underlying insurer available, unrecoverable, reduced or exhausted for the purposes of determining the Company's der this policy, it being understood that the liability of the Company under this policy shall in no ncreased or expanded as a result of such receivership, insolvency or inability to pay by an g insurer.

n of Salvages - Subrogation - All salvages, recoveries or payments recovered or received int to a loss settlement under this insurance shall be applied as if recovered or received prior to lement, and all necessary adjustments shall then be made between the **Insured** and us, provided lat nothing in this clause shall be construed or mean that **losses** under this insurance are not le until the **Insured's** ultimate net loss has been finally ascertained. Inasmuch as this policy is overage, the **Insured's** right of recovery against any person or other entity cannot always be ly subrogated to us. It is therefor understood and agreed that in case of any payment hereunder, act in concert with all other interests (including the **Insured's**) concerned in the exercise of such ecovery. The apportioning of any amounts which may be so recovered shall follow the principle interest (including the **Insured's**) that shall have paid an amount over and above any payment r, shall first be reimbursed up to the amount paid by them. We shall then be reimbursed out of any hen remaining, up to the amount paid hereunder. Lastly, the interests (including the **Insured's**) this coverage is excess are entitled to claim the residue, if any. Expense necessary to the of any such amounts shall be apportioned between the interests (including the **Insured's**) d in the ratio of their respective recoveries as finally settled.

### Occurrence, Claim, or Suit

first Named Insured shall immediately notify us in writing of any occurrence which may onably be expected to result in a claim against this policy. The first Named Insured will notify us he assumption that an **Insured** is liable and that an **Insured** is liable for any amount claimed. ce shall include:

- 5 -

      1.    how, when and where the **occurrence** took place; and

      2.    the names and addresses of any injured persons and any witnesses.

B.  1.    The first Named Insured shall immediately notify us in writing of any **claim**, alone or in combination with any other **claims**, to which this policy applies which may exceed 25% of the applicable amount set forth in the Schedule of Underlying Insurance. The first Named Insured will notify us on the assumption that an **Insured** is liable and that an **Insured** is liable for any amount(s) claimed.

      2.    As respects B1. above, the first Named Insured and any other involved **Insured** must:

         a)    immediately send us copies of any demands, notices, summonses or other legal papers received in connection with the **claim** or suit;

         b)    authorize us to obtain records and other information;

         c)    cooperate with us in the investigation, settlement or defense of the **claim** or suit; and

         d)    assist us, upon our request, in the enforcement or any right against any person or organization which may be liable to the **Insured** because of injury to which this insurance may also apply.

      3.    No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without our consent.

5.    Premium - It is agreed that should any alteration be made in the premium for the **underlying policy** during the period of this policy, or if there is an increase in the risk assumed by the Company, then the premium hereon may be adjusted accordingly.

    If this policy is subject to audit adjustment, the premium will be based upon the rating base as set forth in the Declarations. Upon notice to the Named Insured of the earned premium due, such premium in excess of the advance premium shall become due and payable. If the total earned premium is less than the premium previously paid, the Company shall return to the **Insured** the unearned portion paid by the **Insured**, subject however to any minimum premium stated in the Declarations.

6.    Cancellation - This policy may be cancelled by the **Insured** by surrender thereof to us or any of our authorized agents, or by mailing to us or any of our authorized agents, written notice stating when thereafter such cancellation shall be effective. The policy may be cancelled by us by mailing to the **Insured** at the address shown in Declarations written notice stating when, not less than thirty (30) days thereafter (ten (10) days with respect to cancellation for non-payment of premium) such cancellation shall be effective. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the **Insured** or by us shall be equivalent to mailing.

    If we cancel, earned premium shall be computed pro rata. If the **Insured** cancels, earned premium shall be computed in accordance with the customary short rate table procedure. In the event of such cancellation, the earned premium shall in no case be less than the Minimum Earned Premium at inception as stated in the Declarations.

    Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due the **Insured**.

    If this policy insures more than one Named Insured, cancellation may be effected by the first of such **Insureds** for the account of all **Insureds**. Notice of cancellation by us to such first Named Insured shall be notice to all **Insureds**. Payment of any unearned premium to such first Named Insured shall be for the account of all interests in such payment.

LEX-OCC-FF-1T(Ed. 07/94)
LX0491

7.   Bankruptcy and Insolvency - In the event of the **Insured's** bankruptcy or insolvency or any entity comprising the **Insured**, we shall not be relieved thereby of the payment of any **claim** hereunder because of such bankruptcy or insolvency.

8.   Aggregate Policy Period - If the period of the **underlying Insurance** is not concurrent with the policy period, it is agreed that for the purpose of determining the Company's liability **loss** excess of the aggregate limits of the **underlying insurance**, only **loss** or **losses** which take place during the policy period of this policy shall be included.

9.   Service of Suit  - In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company''s rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another   court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts, 02110-2103 or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such  court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

10.   Arbitration - Notwithstanding the Service of Suit clause above, in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) Arbitrators, consisting of two (2) party- nominated (non-impartial) Arbitrators and a third (impartial) arbitrator (hereinafter "umpire") as the sole and exclusive remedy.

The Party desiring arbitration of a dispute shall notify the other party, said notice including the name, address and occupation of the Arbitrator nominated by the demanding party. The other party shall within 30 days following receipt of the demand, notify in writing the demanding  party of the name, address and occupation of the Arbitrator nominated by it. The two (2) Arbitrators so selected shall, within 30 days of the appointment of the second Arbitrator, select an umpire. If the Arbitrators are unable to agree upon an umpire, each Arbitrator shall submit to the other Arbitrator a list of three (3) proposed individuals, from which list each Arbitrator shall choose one (1) individual. The names of the two (2) individuals so chosen shall be subject to a draw, whereby the individual drawn shall serve as umpire.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the umpire. Said hearings shall be held within thirty (30) days of the selection of the umpire. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud or gross misconduct by the Arbitrators. The award will be issued within 30 days of the close of the hearings. Each party shall bear the expenses of its designated Arbitrator and shall jointly and equally share with the other the expense of the umpire and of the arbitration proceeding.

The arbitration proceeding shall take place in or in the vicinity of Boston, Massachusetts. The procedural rules applicable to this arbitration, shall, except as provided otherwise herein, be in accordance with the Commercial Rules of the American Arbitration Association.

- 7 -

IN WITNESS WHEREOF,  the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of its duly authorized representatives.

Secretary

Chairman of the Board and CEO

- 8 -

LEX-OCC-FF-1T(Ed. 07/94)
LX0491

ENDORSEMENT # 001

This endorsement, effective 12:01 AM 05/01/2007

Forms a part of policy no.: 1011060

Issued to: WCI COMMUNITIES, INC

By: LEXINGTON INSURANCE COMPANY

### ANTI-STACKING ENDORSEMENT

This endorsement modifies insurance provided by the policy:

The following condition is added to the policy:

   If this insurance and any other insurance issued to you by us or any member company of American International Group, Inc. apply to the same incident, act, offense, claim, suit, or occurrence, whichever is applicable, the maximum limit of insurance under all insurance available will not exceed the highest applicable limit of insurance available under any one policy.

   However, this condition does not apply to any other insurance issued to you by us or any member company of American International Group, Inc. which is specifically intended to be either primary to or in excess of the policy to which this endorsement is attached.

All other terms and conditions of the policy remain the same.

Authorized Representative OR
Countersignature (In states where applicable)

LX9803 (08/05)

ENDORSEMENT # 002

**This endorsement, effective 12:01 AM** 05/01/2007

**Forms a part of policy no.:** 1011060

**Issued to:** WCI COMMUNITIES, INC

**By:** LEXINGTON INSURANCE COMPANY

### MINIMUM EARNED PREMIUM

It is understood and agreed that in the event of cancellation of this policy by or at the direction of the Insured, the Company shall retain a Minimum Earned Premium of          $70,693.

It is further agreed that the provision regarding cancellation by the Insured is amended to read:

"If the Insured cancels this policy, earned premium will be computed in accordance with the customary short-rate table and procedure, or the Minimum Earned Premium stated herein, whichever is greater".

_____
Authorized Representative OR
Countersignature (In states where applicable)

LEXCME077(Ed.03/86)
LX0082

ENDORSEMENT # 003

This endorsement, effective 12:01 AM 05/01/2007

Forms a part of policy no.:   1011060

Issued to: WCI COMMUNITIES, INC

By: LEXINGTON INSURANCE COMPANY

### NO FAULT, UNINSURED MOTORISTS, PERSONAL INJURY PROTECTION EXCLUSION

It is agreed that the coverage afforded by this policy, shall not apply with respect to any liability arising out of any Claims brought under "No Fault", Uninsured/Underinsured Motorists, or Personal Injury Protection Laws or Statutes or similar legislation.

_____
Authorized Representative OR
Countersignature (In states where applicable)

LEXCME081 (09/02)
LX0086

ENDORSEMENT # 004

**This endorsement, effective 12:01 AM** 05/01/2007

**Forms a part of policy no.:** 1011060

**Issued to:** WCI COMMUNITIES, INC

**By:** LEXINGTON INSURANCE COMPANY

## TERRORISM EXCLUSION

This insurance does not apply to loss, injury, damage, claim or "suit", arising directly or indirectly as a result of, in connection with, or relating to "terrorism" including but not limited to:

1.  Any action taken in hindering or defending against an actual or expected incident of "terrorism" regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage; and

2.  Any contemporaneous or ensuing loss caused by explosion, fire, heat, vandalism, looting, theft, civil commotion, rebellion or insurrection.

Multiple incidents of "terrorism" that occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership will be considered to be one incident.

As used in this exclusion, "terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

a.  A government;
b.  The civilian population of a country, state or community; or
c.  To disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002 (the "Act") is in effect, "terrorism" includes an act of terrorism as defined by Section 102. Definitions of the Act and any revisions or amendments thereto.

All other terms and conditions of the policy are the same.

---

Authorized Representative OR
Countersignature (In states where applicable)

LX9828 (01/05)

ENDORSEMENT # 005

This endorsement, effective 12:01 AM 05/01/2007

Forms a part of policy no.:   1011060

Issued to: WCI COMMUNITIES, INC

By: LEXINGTON INSURANCE COMPANY

THIS ENDORSEMENT ADDS ACCIDENT INSURANCE TO THE POLICY UNDER THE TERMS AND CONDITIONS STATED HEREIN, PLEASE READ IT CAREFULLY.

ACCIDENT INSURANCE ENDORSEMENT

NOTICE: THIS ENDORSEMENT PROVIDES ACCIDENT ONLY COVERAGE. IT DOES NOT COVER SICKNESS OR DISEASE.

NOTICE: COVERAGE IS NOT PROVIDED TO ANY OTHERWISE ELIGIBLE PERSON IF THE FIRST NAMED INSURED IS DOMICILED IN INDIANA, IOWA, MASSACHUSETTS, MISSOURI, NORTH CAROLINA, PENNSYLVANIA, OR RHODE ISLAND.

The words **we, us** and **our** refer to the company providing this insurance as stated above. Other words and phrases that appear in **bold face print** in this endorsement have special meaning within this endorsement. Refer to the **Accident Insurance Declarations** and **Accident Insurance Definitions** below.

The Policy is amended as follows:

I. **ACCIDENT INSURANCE DECLARATIONS** - The following declarations are added to the Policy and apply only with respect to the coverage provided by this endorsement:

    (a) **Accident Insurance Effective Date**:   Same as Policy Effective Date

    (b) **Classification of Eligible Persons**:

        **Class 1:**   All third parties, excluding Class 2. Class 1 does not otherwise include firefighters, police officers, emergency medical technicians or any other emergency services personnel who may be called to the venue or location(s) in the event of an emergency.

        **Class 2:**   All employees of the **First Named Insured** working at least 20 hours per week and who are permanently employed inside the U.S.

    (c) **Covered Activity(ies)**: Coverage is provided for **Injury** sustained by a **Covered Person** while:

        **Covered Activity 1: (Class 1)**  Lawfully in or on the **Covered Premises** of the **First Named Insured**.

        **Covered Activity 2: (Class 2)**  Actively performing the duties of his or her occupation for the **First Named Insured**.

    (d) **Principal Sum Amount** (per **Covered Person**):     $50,000

    (3) **Accident Insurance Policy Aggregate Limit**:     $5,000,000 per occurrence

II. **ACCIDENT INSURANCE** - The following Accident Insurance Coverage is added to the Policy. The provisions hereunder apply only with respect to the Accident Insurance provided by this endorsement:

## A. ACCIDENT INSURANCE INSURING AGREEMENT

We will pay a benefit to the **Covered Person** (or, in the event of death, to the **Covered Person's** beneficiary) if that **Covered Person** suffers a loss covered under this endorsement arising from an **Injury** that results from an accident that occurs on or after the **Accident Insurance Effective Date** and during a **Covered Activity**. The **Principal Sum Amount** and the **Covered Activity(ies)** applicable to each **Covered Person** are set out in the **Schedule**. The benefit amount payable is subject to the Accident Insurance Reduction Schedule found below.

**Accidental Death & Dismemberment and Paralysis Benefit.** If **Injury** to a **Covered Person** results, within 365 days of the date of the accident that caused the **Injury**, in that **Covered Person** suffering any one of the losses or any type of paralysis specified below, the benefit we will pay will be based upon the indicated percentage of the **Principal Sum Amount** shown below for that loss or paralysis:

| For Loss of: | Percentage of **Principal Sum Amount** Payable |
|---|---|
| Life | 100% |
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |
| Speech and Hearing in Both Ears | 100% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Speech or Hearing in Both Ears | 50% |
| Hearing in One Ear | 25% |
| Thumb and Index Finger of Same Hand | 25% |
| Quadriplegia | 100% |
| Paraplegia | 50% |
| Hemiplegia | 25% |

Loss of a hand or foot means complete severance through or above the wrist or ankle joint. Loss of sight of an eye means total and irrecoverable loss of the entire sight in that eye. Loss of hearing in an ear means total and irrecoverable loss of the entire ability to hear in that ear. Loss of speech means total and irrecoverable loss of the entire ability to speak. Loss of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

If more than one loss or paralysis is sustained by a **Covered Person** as a result of the same accident, only one amount, the largest, will be paid.

## B. ACCIDENT INSURANCE EXCLUSIONS

No coverage shall be provided under this endorsement and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks even if the proximate or precipitating cause of the loss is an accidental bodily injury:

1. suicide or any attempt at suicide or intentionally self-inflicted Injury or any attempt at intentionally self-inflicted Injury or any act of autoeroticism.

2. sickness or disease, or mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these.

3. the **Covered Person's** commission of or attempt to commit a crime.

4. declared or undeclared war, or any act of declared or undeclared war regardless of whether the Policy to which this endorsement is attached provides such coverage.

5. infections of any kind regardless of how contracted, except bacterial infections that are directly caused by botulism, ptomaine poisoning or an accidental cut or wound independent and in the absence of any underlying sickness, disease or condition including but not limited to diabetes.

6.  participation in any team sport or any other athletic activity.

7.  full-time active duty in the armed forces, National Guard or organized reserve corps of any country or international authority.  (Loss caused while on short-term National Guard or reserve duty for regularly scheduled training purposes is not excluded).

8.  travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, if the **Covered Person** is:

    a) riding as a passenger in any aircraft not intended or licensed for the transportation of passengers; or

    b) performing, learning to perform or instructing others to perform as a pilot or crew member of any aircraft; or

    c) riding as a passenger in an aircraft owned, leased or operated by the **First Named Insured** or the **Covered Person's** employer.

9.  the **Covered Person** being under the influence of intoxicants.

10. the **Covered Person** being under the influence of drugs unless taken under the advice of and as specified by a **Physician.**

11. the medical or surgical treatment of sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from the treatment.

12. stroke or cerebrovascular accident or event; cardiovascular accident or event; myocardial infarction or heart attack; coronary thrombosis; aneurysm.

13. the **Covered Person** riding in or driving any type of motor vehicle as part of a speed contest or scheduled race, including testing such vehicle on a track, speedway or proving ground.

## C. ACCIDENT INSURANCE LIMITATIONS

**Accident Insurance Aggregate Limit** - The maximum amount payable under the Accidental Death & Dismemberment and Paralysis Benefit may be reduced if more than one **Covered Person** suffers a loss or paralysis as a result of the same occurrence. The maximum amount payable for all such losses and types of paralysis for all **Covered Persons** will not exceed the amount shown as the **Accident Insurance Aggregate Limit** in the **Schedule.** If the combined maximum amount otherwise payable for all **Covered Persons** must be reduced to comply with this provision, the reduction will be taken by applying the same percentage of reduction to the individual maximum amount otherwise payable for each **Covered Person** for all such losses and types of paralysis. The **Accident Insurance Aggregate Limit** is in addition to the Policy's General Aggregate Limit.

**Accident Insurance Reduction Schedule** - The amount payable for a loss will be reduced if a **Covered Person** is age 70 or older on the date of the accident causing the loss. The amount payable for that **Covered Person's** loss is a percentage of the amount that would otherwise be payable, according to the following schedule:

| AGE ON DATE OF ACCIDENT | PERCENTAGE OF AMOUNT OTHERWISE PAYABLE |
|---|---|
| 70-74 | 65% |
| 75-79 | 45% |
| 80-84 | 30% |
| 85 and older | 15% |

Premium for a **Covered Person** age 70 or older is based on 100% of the coverage that would be in effect if the **Covered Person** were under age 70.

"Age" as used above refers to the age of the **Covered Person** on the **Covered Person's** most recent birthday, regardless of the actual time of birth.

## D. ACCIDENT INSURANCE DEFINITIONS

**Covered Activity(ies)** - means those activities set out as **Covered Activity(ies)** in the **Schedule** with respect to which **Covered Persons** are provided coverage under this endorsement.

**Covered Person** - means a person: (1) who is a member of an eligible class of persons as described in the Classification of Eligible Persons section of the Schedule; (2) for whom premium has been paid; and (3) while such person's coverage under this endorsement is in force.

**Covered Premises** - means the physical location of all premises owned by, rented to, leased to or controlled by the **First Named Insured**. Covered Premises does not include any vehicle or mode of transportation once it has left the premises of the First Named Insured.

**First Named Insured** - means the Named Insured first shown in the Declarations of the Policy to which this endorsement is attached.

**Hemiplegia** - means the complete and irreversible paralysis of the upper and lower **Limbs** of the same side of the body.

**Immediate Family Member** means a person who is related to the **Covered Person** in any of the following ways: spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or stepchild).

**Injury** - means an injury to the body: (1) which is sustained as a direct result of an unintended, unanticipated accident that is external to the body and that occurs while the injured person's accident coverage is in force; (2) which occurs under the circumstances described in a **Covered Activity** applicable to that person; and (3) which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss under this endorsement.

**Limb** - means entire arm or entire leg.

**Paraplegia** - means the complete and irreversible paralysis of both lower **Limbs**.

**Physician** - means a licensed practitioner of the healing arts acting within the scope of his or her license who is not: (1) the Covered Person; (2) an **Immediate Family Member**; or (3) retained by the **First Named Insured**.

**Quadriplegia** - means the complete and irreversible paralysis of both upper and both lower **Limbs**.

**Schedule** - means the Accident Insurance Declarations section of this endorsement.

E.  ACCIDENT INSURANCE CLAIMS PROVISIONS

**Notice of Claim.** Written notice of a claim for benefits must be given to us within 20 days after a Covered Person's loss, or as soon thereafter as reasonably possible. Such written notice given by or on behalf of the claimant to us in care of AIG Claim Services, P.O. Box 15701, Wilmington, DE 19850-5701, or by calling 1-800-551-0824 with information sufficient to identify the **Covered Person**, is deemed notice to us.

**Claim Forms.** We will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after the giving of notice of a claim, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed herein for filing proof of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the **Covered Person's** name, the **First Named Insured's** name and the Policy number.

**Proof of Loss.** Written proof of loss must be furnished to us within 90 days after the date of the loss. If the loss is one for which this endorsement requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as we may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

**Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of a Covered Person will be made, in equal shares, to the survivors in the first surviving class of those that follow: the Covered Person's (1) spouse; (2) children; (3) parents; or (4) brothers and sisters. If no class has a survivor, the beneficiary is the **Covered Person's** estate.

Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the **Covered Person** suffering the loss. If a **Covered Person** dies before all payments due have been made, the amount still payable will be paid as described above for loss of life.

**Covered Person** - means a person: (1) who is a member of an eligible class of persons as described in the Classification of Eligible Persons section of the Schedule; (2) for whom premium has been paid; and (3) while such person's coverage under this endorsement is in force.

**Covered Premises** - means the physical location of all premises owned by, rented to, leased to or controlled by the **First Named Insured**. Covered Premises does not include any vehicle or mode of transportation once it has left the premises of the First Named Insured.

**First Named Insured** - means the Named Insured first shown in the Declarations of the Policy to which this endorsement is attached.

**Hemiplegia** - means the complete and irreversible paralysis of the upper and lower **Limbs** of the same side of the body.

**Immediate Family Member** means a person who is related to the **Covered Person** in any of the following ways: spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or stepchild).

**Injury** - means an injury to the body: (1) which is sustained as a direct result of an unintended, unanticipated accident that is external to the body and that occurs while the injured person's accident coverage is in force; (2) which occurs under the circumstances described in a **Covered Activity** applicable to that person; and (3) which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss under this endorsement.

**Limb** - means entire arm or entire leg.

**Paraplegia** - means the complete and irreversible paralysis of both lower **Limbs**.

**Physician** - means a licensed practitioner of the healing arts acting within the scope of his or her license who is not: (1) the **Covered Person**; (2) an **Immediate Family Member**; or (3) retained by the **First Named Insured**.

**Quadriplegia** - means the complete and irreversible paralysis of both upper and both lower **Limbs**.

**Schedule** - means the Accident Insurance Declarations section of this endorsement.

E.  **ACCIDENT INSURANCE CLAIMS PROVISIONS**

**Notice of Claim.** Written notice of a claim for benefits must be given to us within 20 days after a **Covered Person's** loss, or as soon thereafter as reasonably possible. Such written notice given by or on behalf of the claimant to us in care of AIG Claim Services, P.O. Box 15701, Wilmington, DE 19850-5701, or by calling 1-800-551-0824 with information sufficient to identify the **Covered Person**, is deemed notice to us.

**Claim Forms.** We will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after the giving of notice of a claim, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed herein for filing proof of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the **Covered Person's** name, the **First Named Insured's** name and the Policy number.

**Proof of Loss.** Written proof of loss must be furnished to us within 90 days after the date of the loss. If the loss is one for which this endorsement requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as we may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

**Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of a **Covered Person** will be made, in equal shares, to the survivors in the first surviving class of those that follow: the **Covered Person's** (1) spouse; (2) children; (3) parents; or (4) brothers and sisters. If no class has a survivor, the beneficiary is the **Covered Person's** estate.

Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the **Covered Person** suffering the loss. If a **Covered Person** dies before all payments due have been made, the amount still payable will be paid as described above for loss of life.

ENDORSEMENT # 006

**This endorsement, effective 12:01 AM** 05/01/2007

**Forms a part of policy no.:** 1011060

**Issued to:** WCI COMMUNITIES, INC

**By:** LEXINGTON INSURANCE COMPANY

### COVERAGE TERRITORY LIMITATION ENDORSEMENT

This endorsement modifies insurance provided by the policy:

If coverage for a claim or suit under this policy is in violation of any United States of America's economic or trade sanctions, laws, or regulations, including, but not limited to, sanctions, laws, and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") then coverage for that claim or suit shall be null and void.

All other terms and conditions of the policy remain the same.

_____

Authorized Representative OR
Countersignature (In states where applicable)

ENDORSEMENT # 007

This endorsement, effective 12:01 AM 05/01/2007

Forms a part of policy no.: 1011060

Issued to: WCI COMMUNITIES, INC

By: LEXINGTON INSURANCE COMPANY

### PATROL®ACCESS ENDORSEMENT

This endorsement modifies insurance provided by the policy:

The Insurer provides the Named Insured with access during the policy period to AIG Consultants, Inc.'s Planning and Tracking Response Online (PATROL® ) Program through PATROL's ® website (https://www.aigpatrol.com). The PATROL® Program is a crisis management solution that provides the Named Insured with access to a global network of leading providers of crisis preparation and response services. The Named Insured can view online information about each service provider including company description, brochures, links, white papers, and press releases as well as complete and submit an online Request for Proposal (RFP) or a Work Order for Services. If the service providers response meets the Named Insured's criteria then the two companies can enter into an agreement for services.

The following services provider categories are available through PATROL®: Business Continuity/Disaster Recovery Planning, Workplace Violence, Public Relations, Employee Inventory, Threat & Vulnerability Assessment, Incident/Evacuation Drills, Incident Command, Sabotage & Terrorism, Chemical/ Bioterrorism, Insurance Products, Event Management Software, Pollution, Kidnap & Ransom, Background Checks, Natural Disasters, Medical/Political Evacuation, Cyberterrorism, Executive/VIP Protection, Investigations, Physical Security, and Business Intelligence.

The above referenced services are provided at no cost to the Named Insured and no premium has been allocated for these services. As such, the Insurer reserves the right to change or discontinue these services at the Insurer's sole discretion and without notice to the Named Insured.

All other terms and conditions of the policy remain the same.

Authorized Representative OR
Countersignature (In states where applicable)

LX9921 (04/06)

# SCHEDULE OF UNDERLYING INSURANCE

Forms a part of Policy No.: 1011060
Issued to: WCI COMMUNITIES, INC.
By: LEXINGTON INSURANCE COMPANY

**Other**                                                                                                X Occurrence
Company:            AMERICAN INTERNATIONAL SURPLUS LINES AGENCY, INC.
Policy Number:       7412275
Policy Period:       From:   05/01/07   To:   05/01/08
Limits
    Each Occurrence:                                     $25,000,000
    General Aggregate:                                   $25,000,000
    Products/Completed Operations Aggregate:             $25,000,000

LX9886 (12/05)