UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED | * | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | |
| | * | |
| THIS DOCUMENT RELATES TO: | * | JUDGE FALLON |
| DAVID GROSS, et al | * | |
| vs. | * | |
| KNAUF GIPS, KG, et al | * | |
| Case No. 2:09-CV-6690 | * | MAGISTRATE WILKINSON |

**MEMORANDUM IN SUPPORT OF HEIGHTS
PROPERTIES, LLC'S MOTION TO DISMISS**

MAY IT PLEASE THE COURT:

Defendant Heights Properties, LLC ("Heights Properties"), through undersigned counsel, making a special appearance solely for the purpose of the instant motion to dismiss, moves this court for an Order dismissing the claims of plaintiff, Michael Sheehan, under Rule 12(b) for the reasons stated herein.  Alternatively, Heights Properties prays this court to transfer venue to the Middle District of Florida pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404 in the interest of justice.

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    THIS ACTION MUST BE DISMISSED BECAUSE THIS COURT LACKS
        PERSONAL JURISDICTION OVER HEIGHTS PROPER . . . . . . . . . . . . . . . 4

        A.    MINIMUM CONTACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.    SPECIFIC JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.    GENERAL JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        D.    THE ALLEGED NATIONAL CLASS ACTION HAS NO EFFECT ON
                PERSONAL JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    II.    PLAINTIFF'S OMNIBUS COMPLAINT FAILS TO STATE A CLAIM UPON
         WHICH RELIEF CAN BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A.    PLAINTIFF'S NEGLIGENCE ALLEGATIONS (COUNT I) ARE FALSE
                AND IMPROPERLY PLEADED . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        B.    PLAINTIFF HAS NOT STATED A CLAIM FOR NEGLIGENCE PER SE
                (COUNT II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        C.    PLAINTIFF HAS NO CLAIM IN STRICT LIABILITY (COUNT III) . . . 16

        D.    PLAINTIFF CANNOT MAINTAIN AN IMPLIED WARRANTY CLAIM
                (COUNTS IV & VI) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        E.    PLAINTIFF'S BREACH OF CONTRACT CLAIM (COUNT VII) MUST BE
                DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        F.    PLAINTIFF CANNOT STATE A CLAIM FOR PRIVATE NUISANCE
                (COUNT XI) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

G.    PLAINTIFF CANNOT BRING A CLAIM FOR UNJUST ENRICHMENT (COUNT XIII) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

H.    THE OMNIBUS COMPLAINT FAILS TO STATE A CLAIM UNDER FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (COUNT XIV) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

I.    PLAINTIFF'S CLAIM FOR EQUITABLE RELIEF AND MEDICAL MONITORING (COUNT XV) CANNOT GO FORWARD AGAINST HEIGHTS PROPERTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

III.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE MIDDLE DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1404 & 1406 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

<u>**BACKGROUND**</u>

On October 7, 2009, numerous Plaintiffs filed a purported Class Action Complaint, *Gross et al v. Knauf Gips KG, et al*, Case No. 2:09-cv-06690 (E.D. La.) and on October 19, 2009, an amendment was filed in this court invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act 28 U.S.C. § 1711 *et seq.* (CAFA). On February 10, 2010, Plaintiffs filed a motion in intervention, *Mary Anne Benes et al v. Knauf Gips, KG et al* adopting the theory of the *Gross* complaint and adding direct actions against new defendants, including Heights Properties.  In the Omnibus Complaint, Plaintiffs allege that Defendants are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of allegedly defective drywall.  In his Complaint, Florida resident Michael Sheehan ("Plaintiff") alleges that Heights Properties built a house for him and, directly or through agents, installed defective drywall in these structures, resulting in harm to him. (Complaint, ¶ 870).  For the following reasons, Plaintiffs' Omnibus Complaint should be dismissed.

<u>**ARGUMENT**</u>

I.    **THIS ACTION MUST BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER HEIGHTS PROPERTIES**

Heights Properties is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Florida. (*See* Affidavit of Walter S. Hagenbuckle ("Aff") at ¶2, attached hereto as Exhibit "A".)  Heights Properties is a Florida

homebuilder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes. (Aff. ¶3).  Heights Properties has never built a residence in the state of Louisiana or had any contracts or subcontracts with companies located in Louisiana.  (Aff. ¶4).  Heights Properties has never been licensed or registered to do business in Louisiana, nor has Heights Properties ever had any offices or employees in Louisiana. (Aff. ¶5).  Heights Properties does not have an agent for service of process in Louisiana. (Aff. ¶6).  Heights Properties does not have any bank accounts in Louisiana or own any property in Louisiana.  (Aff. ¶7).  Heights Properties does not solicit business in Louisiana and has never transacted business in Louisiana.   (Aff. ¶8). Additionally, Heights Properties has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana. (Aff. ¶9).  Heights Properties does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the state of Louisiana.  (Aff. ¶10).  Heights Properties has never received any business from any contacts in Louisiana, whether individual customers, or business customers.  (Aff. ¶11). Moreover, the Plaintiff making allegations against Heights Properties is a Florida resident.[1] Consequently, Heights Properties never anticipated it would be haled into court in Louisiana. (Aff. ¶12).

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish *in personam* jurisdiction. *Wilson v. Belin*,

---

[1]      See Complaint at ¶870.

20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Ham v. La Cienega Music Co.,* 4 F.3d 413, 415 (5th Cir.1993); *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985); *Kelvin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995). In resolving a jurisdictional issue, the court may review pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits and any part of the record. *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir.1992). The allegations of the complaint are taken as true except to the extent that they are contradicted by defendant's affidavits. *Wyatt v. Kaplan*, 686 F.2d 276, 282-83 n. 13 (5th Cir.1982) (*citing Black v. Acme Markets, Inc*., 564 F.2d 681, 683 n. 3 (5th Cir.1977)).

In a diversity matter, a federal court may exercise jurisdiction over a nonresident defendant only (1) if the state long-arm statute confers personal jurisdiction over that defendant and (2) if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc*., 9 F.3d 415, 418 (5th Cir.1993) (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Revell v. Lidov,* 317 F.3d 467, 469 (5th Cir. 2002); *Mink v. AAAA Development, L.L.C.*, 190 F.3d 333, 335 (5th Cir. 1999); and *Irving v. Owens-Corning Fiberglass Corp.*, 864 F.2d 383, 385 (5th Cir. 1989).

Under Louisiana's long-arm statute:

    A.    A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from one of the following activities performed by the nonresident:
        (1)    Transacting any business in this state;

6

(2)    Contracting to supply services or things in this state;

(3)    Causing injury or damage by an offense or quasi offense committed through and act or omission in this state;

(4)    Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

*La. R.S. 13:3201(A)*.  Louisiana's long-arm statute allows jurisdiction over a nonresident to the fullest limits permitted under the Due Process Clause of the Fourteenth Amendment consistent with "the Constitution of this state and the Constitution of the United States." *La. R.S. 13:3201*(B); *Ruppert v. Geo. Kellett & Sons*, 996 So. 2d 501, 505 (La. App. 5th Cir 2008) (*citing Superior Supply Co. v. Assoc. Pipe and Supply Co.*, 515 So. 2d 790, 792 (La. 1987)); *Tsaoussidis v. State Farm Mutual Auto. Ins. Co.*, 2009 WL 3448133 (5th Cir. 2009). As such, "under the express terms of the present long-arm statute, the sole inquiry into jurisdiction is a one-step analysis of the constitutional due process requirements." *Ruppert*, 996 So. 2d at 505-06; *See also Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990) ("the exercise of jurisdiction [over a non-resident defendant] … must comport with norms imposed by the due process clause of the fourteenth amendment.").

## A.    MINIMUM CONTACTS

The Due Process Clause of the Fourteenth Amendment limits the Court's power to assert personal jurisdiction over a nonresident by guaranteeing that no federal court may assume jurisdiction over a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310,

319, 66 S. Ct. 154, 90 L. Ed. 95 (1945), *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1994).  Jurisdiction may be general or specific. When a defendant's contracts with the forum state are "continuous and systematic" with the forum state, the court may exercise "general" jurisdiction over any action brought against that defendant. *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 n.9, 415 (1984).  Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."  *Id*.  at 414 n.8.  Here, this Court cannot maintain personal jurisdiction—general or specific—over Heights Properties as it has <u>absolutely no contacts</u> with the forum state of Louisiana.

**B.    SPECIFIC JURISDICTION**

If a defendant has relatively few contacts, the court may exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 & n.8.  The Fifth Circuit has adopted a three step inquiry in determining whether it may exercise specific jurisdiction over a nonresident defendant:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed it self of the privileges of conducting activities there;
>
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
>
> (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 271 (5th Cir. 2006) (citing *Burger King*, 471 U.S. 462, 474 (1985).

Whether a nonresident defendant has sufficient minimum contacts with the forum state to subject it to personal jurisdiction depends upon whether the nonresident has "purposefully availed" itself of the privilege of conducting business in the forum state…" *Hogue*, 2009 WL 2525751 at 4 (*citing Wilton Jones v. Touche Ross & Co.*, 556 So. 2d 67 (La. App. 4th Cir. 1989) (*quoting Hansen v Denckla*, 357 U.S. 235 (1958)); *Sculptchair, Inc. v. Century Arts, Ltd*., 94 F.3d 623, 631 (11th Cir. 1996). The requirement of "purposeful availment" ensures that the nonresident defendant will not be haled into a jurisdiction "solely as a result of a random, fortuitous or attenuated contact, or by the unilateral activity of another party or a third person." *Asahi Metal Industry Co., Ltd.,* 480 U.S. at 102, at 475. Heights Properties has not committed any act to show that it reasonably anticipates being haled into court in Louisiana, a forum in which it has no contacts.

The second prong of the analysis is whether Plaintiff's cause of action arises out of or results from the defendant's forum related contacts. *Seiferth,* 472 F.3d at 271. Heights Properties is a Florida homebuilder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes. (Aff. ¶3). Heights Properties has never built a residence in the state of Louisiana or had any contracts or subcontracts with companies located in Louisiana. (Aff. ¶4). Heights Properties has never received any business from any contacts in Louisiana, whether individual customers, or

business customers.  (Aff. ¶11).  Thus, it is impossible for Plaintiff's claims to arise out of any forum related contacts of Heights Properties.

Finally, the court must determine whether the exercise of personal jurisdiction is fair and reasonable.  The factors of whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice" are 1) the burden on the defendant in defending the lawsuit; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd.,* 480 U.S. at 113; *Cronin v. Washington Nat'l Ins. Co.,* 980 F.2d 663, 671 (11th Cir. 1993) (citing *Int'l Shoe Co.,* 326 U.S. at 316.))   The facts of this case demonstrate that exercise of personal jurisdiction over Heights Properties would offend traditional notions of fair play and substantial justice.

Litigating this case in Louisiana would not further any fundamental substantive social policies, or help to resolve the issues in a convenient and effective way.  None of the factors favor personal jurisdiction in Louisiana.  First, Heights Properties will incur a great financial burden to defend this suit in Louisiana about a Florida matter.  Heights Properties is a Florida corporation with its principal place of business in Florida.  (Aff. ¶2).  Heights Properties is not licensed or registered to do business in Louisiana and it has no offices, bank accounts, property, or employees in Louisiana. (Aff. ¶5, 7).  Heights Properties does not solicit

10

business in Louisiana and has never transacted business in Louisiana, never maintained a telephone line in Louisiana, and never kept a post office box or otherwise received mail in Louisiana. (Aff. ¶8, 9). Heights Properties does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the state of Louisiana. (Aff. ¶10). Second, this Court cannot have an interest in adjudicating Plaintiff's claims, as the cause of action occurred in Florida alone and as both Plaintiff and Heights Properties are Florida residents. Louisiana's interest is cursory at best. Third, since there is no connection between this dispute and Louisiana, litigating this claim in Louisiana would only create inconvenience and additional cost to the parties. Fourth, the most efficient resolution of this case cannot be in Louisiana, because jurisdiction is lacking as to certain subcontractors who cannot be sued in Louisiana. Lastly, while certain homeowners impacted by defective drywall reside in Louisiana, having this Court deciding issues between a Florida corporation and a Florida citizen, over Florida property does not further social policies. Forcing Heights Properties to travel from Florida in order to defend itself in this complex litigation outweighs any benefit. There is no basis to bring Heights Properties into a Louisiana court to litigate matters best suited for Florida courts. Such an outcome would offend "traditional notions of fair play and substantial justice."

### C. GENERAL JURISDICTION

Personal jurisdiction over a defendant that does not arise out of or relate to the defendant's activities in the forum state is referred to as "general jurisdiction." *Helicopteros*

*Nacionales de Colombia, SA.*, 466 U.S. at 414 n.9.  For this court to exercise general jurisdiction over Heights Properties, its contacts with Louisiana must be "continuous and systematic." *Id*. at 808.  As argued *supra*, Heights Properties has absolutely no contacts with Louisiana.  Heights Properties' contacts with Louisiana are nonexistent and under no set of facts could it expect to be haled into a Louisiana court.

### D.   THE ALLEGED NATIONAL CLASS ACTION HAS NO EFFECT ON PERSONAL JURISDICTION

Plaintiff alleges jurisdiction by way of 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act ("CAFA").  Plaintiff's attempt to create a national class action has absolutely no effect on whether or not this court may exercise personal jurisdiction.  *See In re Train Derailment Near Amite La*., 2004 U.S. Dist. LEXIS 1507 (E.D. La. Feb. 3, 2004)(holding that a class certification failed to have any bearing on a defendant's motion to dismiss for lack of personal jurisdiction. "The personal jurisdiction determination depends solely on the [the defendant's] conduct in and contacts with the forum state.").  However, even if the court were to hold that the national class action were to have an effect, this suit does not meet the strict prerequisites for Rule 23. The large geographic scope creates an unprecedented and unmanageable suit, thereby diluting any common issues of law or fact.  *See Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000) (holding that because the laws of many different states would apply, variations in the law "may swamp any common issues and defeat predominance"); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig*., 288 F.3d 1012, 1018 (7th Cir. 2002) (stating that where claims are to be adjudicated under the laws

of the fifty states and multiple territories, "a single nationwide class is not manageable"); *In re Rhone-Poulenc Rorer, Inc*., 51 F.3d 1293, 1350 (7th Cir. 1995) (attempt to apply the law of different states made impossible the predominance of common questions and manageability requirements of Rule 23(b)(3)).

Plaintiff is attempting to use CAFA, the faulty contention of a nationwide class action, and the MDL proceedings to create a backdoor to manufacture personal jurisdiction in this matter.  Well established law prohibits such a contortion of the rules governing personal jurisdiction.  Plaintiff has failed to satisfy his burden of proof in justifying the Court's exercise of specific or general jurisdiction over Heights Properties in this matter.  Thus, this Honorable Court is without *in personam* jurisdiction and must dismiss Heights Properties.

## II.  PLAINTIFF'S OMNIBUS COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Each of the causes of action asserted by Plaintiff against Heights Properties should be dismissed pursuant to Civil Rule 12(b)(6) because none state a claim upon which relief can be granted.

### A.  PLAINTIFF'S NEGLIGENCE ALLEGATIONS (COUNT I) ARE FALSE AND IMPROPERLY PLEADED.

Plaintiff's negligence claim (Count I) alleges that Heights Properties owed him a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the

13

drywall in question.  Complaint ¶ 1461.  The Omnibus Complaint further alleges that Heights Properties had a duty to provide Plaintiff with warnings about the drywall.  *Id.* ¶ 1464.

These allegations are false.  Heights Properties did not "design," "manufacture," or "import" any drywall.  Even assuming the truth of these allegations, they do not state a claim for relief.  Under Florida law, a negligence claim requires the plaintiff to plead and prove that the defendant owed a duty to the plaintiff, and that the duty was breached.  *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (Florida law) ("Failure to establish any one of these elements is fatal to the plaintiff's case.").  Plaintiff can allege neither.

Heights Properties owed no duty of care with respect to Plaintiff's drywall.  Under Florida law, even manufacturers, retailers and distributors have a duty to inspect or warn <u>only</u> when the product is considered "inherently dangerous."  *See O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous.").  Drywall does not fit into the narrow "inherently dangerous" category, and the Omnibus Complaint does not allege otherwise.[2]

---

[2]      "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category.  They include highly toxic materials, second hand guns and drugs…. In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself."  *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted).  By way of illustration, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co..*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are <u>not</u> "inherently dangerous."  Drywall would not be an "inherently dangerous" product under Florida law.

Further, Heights Properties cannot be held liable in negligence for latent defects absent actual or implied knowledge of those defects.  *See Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1991). The alleged defects in the drywall are plainly "latent", and Plaintiff has not alleged actual or implied knowledge by Heights Properties.

Plaintiff's alleged defective drywall claim does not give rise to a negligence claim against Heights Properties.  Absent an "inherently dangerous" product or actual or implied knowledge, Count I fails as a matter of law.  The unsupported assertion that Heights Properties "knew or should have known" that the drywall would "harm" Plaintiff (*id*. ¶ 1466) is nothing more than a legal conclusion, which cannot salvage a negligence claim.

**B.    PLAINTIFF HAS NOT STATED A CLAIM FOR NEGLIGENCE PER SE (COUNT II).**

Plaintiff's negligence per se claim (Count II) should be dismissed because the Omnibus Complaint does not set forth the essential elements of this tort.  Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a particular class of persons from a particular type of injury."  *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiff has not stated a claim for negligence per se for two reasons. First, he has not identified a statute that Heights Properties allegedly violated. The Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes." Complaint ¶ 1471. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft*, 129 S.Ct. at 1949.

Further, because the "State and local Building Codes" that Heights Properties allegedly violated are "designed to protect the <u>general public</u> rather than a particular class of individuals," the violation of a building code cannot establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). Plaintiff's negligence per se claim is merely a restated negligence claim[3] which should be summarily dismissed.

## C.   PLAINTIFF HAS NO CLAIM IN STRICT LIABILITY (COUNT III).

Plaintiff's strict liability claim (Count III) is based on the false premise that Heights Properties was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." Complaint ¶ 1476. This theory is foreclosed by two established principles of Florida law.

---

[3]      Plaintiff's claim for "Negligent Discharge of a Corrosive Substance" (Count XII) is similarly duplicative of his negligence claim. Florida law does not appear to recognize an independent cause of action for Negligent Discharge.

Heights Properties cannot be sued in strict liability because it did not manufacturer or distribute the allegedly defective drywall.  The Omnibus Complaint itself identifies Heights Properties as a "Developer/Builder."  Complaint ¶ 1174.  Strict products liability is reserved for product manufacturers and distributors and does not apply to a homebuilder.  *See Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Furthermore, even if Plaintiff could sue a contractor in strict liability, the allegedly defective drywall is not a "product" for purposes of this particular tort.  Under Florida strict liability law the drywall is considered a "structural improvement," as it was an integral part of Plaintiff's house.  *See Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007).  "Florida courts have expressly <u>declined</u> to extend the principle of strict liability to structural improvements to real estate."  *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc.* No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added); *see Plaza*, 971 So. 2d at 924 (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water and Waste, Inc.*, 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer

17

or assembler of treatment tank "as an integral part" of sewage facility).  Given the foregoing, the Plaintiff's strict liability claim must be dismissed.

### D.    PLAINTIFF CANNOT MAINTAIN AN IMPLIED WARRANTY CLAIM (COUNTS IV & VI).

In Counts IV (Breach of Express Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiff alleges causes of action based on various express and implied warranties.  These warranty claims should be dismissed for the following reasons.

a.    *The express and implied warranty claims asserted by the Plaintiff are foreclosed by the plain language of the Construction Agreement.*

The Plaintiff's warranty claims are precluded by his contract with Heights Properties. His implied warranty claims must be dismissed because the Construction Agreement between the parties disclaimed all such warranties:

> IT IS EXPRESSLY UNDERSTOOD THAT THIS LIMITED WARRANTY IS IN LIEU OF ANY AND ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND HABITABILITY.  IN NO EVENT SHALL CONTRACTOR BE LIABLE FOR ANY DAMAGE (CONSEQUENTIAL OR OTHERWISE) ARISING FROM ANY DEFECT IN ANY ITEM COVERED HEREUNDER.

Exh. B (emphasis added).

Contractual exclusions of implied warranties like the one at bar are valid and enforceable under Florida law.  *See Leasetec Corp. v. Orient Sys., Inc.*, 85 F. Supp. 2d 1310, 1315 (S.D. Fla. 1999) (recognizing enforceability of warranty disclaimers); *e.g., Belle Plaza Condo. Ass'n, Inc. v. B.C.E. Dev., Inc.*, 543 So. 2d 239, 240 (Fla. 3d DCA 1989)

(condominium developer properly disclaimed any and all express and implied warranties);

*Xerographic Supplies Corp. v. Hertz Commercial Leasing Corp.*, 386 So. 2d 299, 300 (Fla. 3d DCA 1980) (defendant could not be liable for breach of implied warranty because agreement disclaimed all implied warranties).

The express implied warranty claims asserted by Plaintiff should be dismissed as well. The contract expressly limits the duration of any warranties for materials to, at most, twelve months from the date the certificate of occupancy was issued. *See* previously marked Exhibit A, attached to Exhibit B of this motion.   Since the Plaintiff has not alleged that he experienced a defect within the applicable limited warranty period, his express warranty claims are barred by the terms of the warranty.  *See Brisson v. Ford Motor Co.*, 349 Fed. Appx. 433, 434 (11th Cir. 2009) (affirming dismissal of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period") (Florida law); *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 324 (Fla. 3d DCA 2008) ("[T]here can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms."); *see also Bland v. Freightliner, LLC*, 206 F. Supp. 2d 1202, 1210 (M.D. Fla. 2002) ("A warranty, whether express or implied, is fundamentally a contract.").

      b.     *Plaintiff cannot maintain a claim for breach of warranty of merchantability or of fitness for a particular purpose.*

There are two more reasons to dismiss Plaintiff's implied warranty claims.  First, as a matter of settled Florida law, the implied warranties of merchantability and of fitness for

19

a particular purpose do not apply to the work performed by Heights Properties.  The implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant."  *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

Heights Properties is not bound by any implied warranties because it is not considered a merchant under Florida warranty law.  Heights Properties contracts with its clients to provide a service:  home construction.  That is why the agreement the Plaintiff entered into with Heights Properties is called a "Construction Contract" and not a "purchase agreement." *See* Exhibit B.  Because the inclusion of drywall in Plaintiff's homes was incidental to the construction services that Heights Properties rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in these circumstances. *See In re Sunshine-Jr.*, 240 B.R. at 794 ("[A]lthough construction contracts … typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, the claim for implied warranty of fitness for a particular purpose (Complaint. ¶ 2678) cannot survive because Plaintiff has not alleged that the drywall in his homes was unfit for a particular or unusual purpose different from that for which drywall is ordinarily used. The Court has already determined that "[t]he Chinese drywall stands just as any other functioning drywall, <u>serving its intended structural purpose</u>." Order & Reasons at 23 (emphasis added); *id*. at 18 ("[T]he Chinese drywall in the instant matter is operating as intended[.]"). This adjudicated fact is, by itself, fatal to the claim for breach of the implied warranty of fitness for a particular purpose.[4]

### E.   PLAINTIFF'S BREACH OF CONTRACT CLAIM (COUNT VII) MUST BE DISMISSED.

Plaintiff has failed to allege a viable claim for breach of contract because he fails to identify a provision of the contract that was breached by Heights Properties. If Plaintiff hopes to salvage his contract claim, he must "identify the relevant portion of the contract breached." *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co*., No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, *4 (M.D. Fla. Nov. 6, 2008); *see Insurance Concepts & Design, Inc. v. Healthplan Serv., Inc*., 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached").

While Plaintiff will likely attempt to justify his bare allegations by pointing to the "Omnibus" nature of the Complaint, the decision to join this litigation does not excuse

---

[4]      See Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co., 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding dismissal of particular purpose warranty claim where plaintiff did not "allege a particular or unusual use different from the purpose for which the item sold was ordinarily used"); *McGraw v. Fleetwood Enters., Inc*., No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

Plaintiff from satisfying basic pleading standards.    The Construction Contract outlines

Heights Properties' obligations. *See* Exh. B.[5]  *See also Cf. Lonnie D. Adams*, 714 So. 2d at

1179 (holding that although contractor had a duty to perform contract in a "workmanlike"

manner, there was no implied duty to deliver defect-free windows to the homeowner-

plaintiffs).  Plaintiff must base his breach of contract claim on the contract between the

parties.  Until he revises his allegations, Plaintiff's breach of contract claim cannot survive.

### F.    PLAINTIFF CANNOT STATE A CLAIM FOR PRIVATE NUISANCE (COUNT XI).

An action for private nuisance requires the claimant to establish an injury to his or her

own property in connection with the use of the real property of <u>someone else</u>.  *See Jones v.*

*J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on

the fundamental rule that every person should so use his own property as not to injure that

of another.").  The Omnibus Complaint does not allege that Plaintiff's purported injuries

resulted from real property owned by Heights Properties.  To the contrary, the nuisance claim

is predicated entirely on the allegation that "structures owned by Plaintiffs" are to blame.

Complaint ¶ 1556.  This allegation does not state a claim for private nuisance.  *See, e.g.,*

*Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal

of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property,

---

[5]      Regardless of whether Plaintiff can ever allege the elements of a breach of contract claim, Plaintiff will be hard-pressed to show that Heights Properties did not construct their house in a workmanlike manner or that it deviated from standard building practices. The Court has determined that "the drywall is functioning as intended, so the structural expectations of the plaintiffs with regard to the drywall are not disappointed." Order & Reasons at 19.

which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").  Plaintiff's the claim for private nuisance must be dismissed.

### G.   PLAINTIFF CANNOT BRING A CLAIM FOR UNJUST ENRICHMENT (COUNT XIII).

Plaintiff's unjust enrichment claim (Count XIII) fails because the contract that Plaintiff entered into with Heights Properties forecloses a quasi-contractual theory.  "It is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy."  *American Honda Motor Co. v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  Where (as here) the plaintiff admits to the existence of a contract, "claims arising out of that contractual relationship will not support a claim for unjust enrichment."  *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); *Validsa, Inc. v. PDVSA Serv., Inc.*, 632 F. Supp. 2d 1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties "admitted to the existence of express contracts").[6]

### H.   THE OMNIBUS COMPLAINT FAILS TO STATE A CLAIM UNDER FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (COUNT XIV).

Plaintiff also alleges a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*

---

[6]   Even if the existence of an express contract did not bar the unjust enrichment claims of the Plaintiff the economic loss rule would.

("FDUTPA").  Complaint ¶ 1574.  A FDUTPA claim comprises three distinct elements:  (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages."  *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  "In light of this trend, claims arising under the FDUTPA must be pled with particularity."  *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc*., No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).  At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  *Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

24

The Omnibus Complaint falls far short of this heightened standard as it alleges <u>no specific facts</u> in support of Plaintiff's FDUTPA claim. *See* Complaint ¶ 1574-1577. It does not identify a single instance in which Heights Properties deceived Plaintiff or treated him unfairly. Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b). *See Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[7]

Plaintiff's failure is not merely one of pleading. His FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to Plaintiff. *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury). Because Heights Properties provided services – namely, the construction of dwellings – Plaintiff can establish "actual damages" <u>only</u> by showing a difference between the "market value" of the services that Heights Properties actually provided and the services that Heights Properties was required

---

[7]   Plaintiff's FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply. A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly" and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc.*, No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

to provide.[8]  *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties" (citations omitted)).

As a matter of law, Plaintiff cannot make this showing.  There is zero evidence that the manner in which Heights Properties <u>constructed</u> the house was in any way responsible for the allegedly defective drywall.  The quality of construction is simply not an issue in this lawsuit, particularly after this Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose."  Order & Reasons at 18-19.

So even if Plaintiff could conceivably replead his FDUTPA claim with the particularity demanded by Rule 9(b), he has no hope of establishing the "actual damages" element of his claim.  Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction."  Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fl. 1995).  Count XIV must be dismissed.

---

[8]     The same would hold true if Heights Properties had delivered a "product" – *i.e.*, a completed structure – rather than providing a "service."  To recover under FDUTPA, Plaintiff would need to establish a difference in the market value of the structure as delivered, and its market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

I.   **PLAINTIFF'S CLAIM FOR EQUITABLE RELIEF AND MEDICAL MONITORING (COUNT XV) CANNOT GO FORWARD AGAINST HEIGHTS PROPERTIES.**

Plaintiff's final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XV). This catchall claim seeks, among other things, an order that Heights Properties "buy back or rescind" its contract and "create, fund, and support a medical monitoring program." Complaint ¶ 1580. This claim cannot survive dismissal.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based. Since each of Plaintiff's substantive claims must be dismissed, so too should his derivative claim for injunctive relief. *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiff's substantive claims could survive dismissal and lend support to an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiff has failed to allege an inadequate legal remedy or irreparable harm. Injunctions under both federal and Florida law require these elements. *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right,

(3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted). Plaintiff does not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory and statutory damages" – are inadequate and entitle him to the extraordinary remedy of an injunction. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983).

It is unclear whether Florida law even permits a cause of action for "medical monitoring."  The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five appellate courts in Florida) has expressly recognized a right to medical monitoring.  It is hardly clear whether Plaintiff can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim.  At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and

28

(7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm. *Id*.

The Omnibus Complaint does not attempt to properly allege these elements. Instead, Count XV sets forth a series of legal conclusions – *e.g*., "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct" – without a shred of evidence. Plaintiff fails to identify, for example, any medical condition (latent or otherwise) supposedly caused by his drywall; nor doe he identify a monitoring procedure for that supposed condition. Plaintiff does not even claim to be ill. He would have this Court speculate about his imaginary ailments and the means for monitoring him.

The Omnibus Complaint does not state a claim for medical monitoring. Rather, it states a series of legal conclusions, and those "do not suffice." *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate). The deficiencies highlighted above make the final Count subject to dismissal, on the pleadings. *See Jacobs v. Osmose, Inc*., No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc*., 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring

29

program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc*., 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

## III.   ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE MIDDLE DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1404 & 1406.

In the alternative to dismissal, the Court may transfer this action to any district in which Plaintiff could have filed this action. 28 U.S.C. § 1404 provides:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

(b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.

(c) A district court may order any civil action to be tried at any place within the division in which it is pending.

(d) As used in this section, the term "district court" includes the District Court of Guam, the District Court for the Northern Mariana Islands, and the District Court of the Virgin Islands, and the term "district" includes the territorial jurisdiction of each such court.

Pursuant to 28 U.S.C. § 1406(a), the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Plaintiff could have brought this action in the Middle District of Florida and Heights Properties requests this honorable court transfer the action against Heights Properties to the Middle District of Florida.

## CONCLUSION

For the reasons set forth above, this Court should dismiss Michael Sheehan's Omnibus Complaint against Heights Properties, LLC or in the alternative transfer this action to the Middle District of Florida.

KREBS, FARLEY & PELLETERI, P.L.L.C.

*/s/ Charles B. Long*
CHARLES B. LONG (#22824)
THOMAS H. PEYTON (#32635)
400 Poydras Street, Suite 2500
New Orleans, Louisiana   70130
Telephone:   504-299-3570
Facsimile:   504-299-3582
E-mail:        clong@kfplaw.com
E-mail:        tpeyton@kfplaw.com

ATTORNEYS FOR DEFENDANT
HEIGHTS PROPERTIES, LLC.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 7th day of February, 2011, this document has been served on Plaintiffs' Liaison Counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller by U.S. Mail and e-mail and e-mail upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

/s/*Charles B. Long*

CHARLES B. LONG