UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| THIS DOCUMENT RELATES TO: DAVID GROSS, et al. vs. KNAUF GIPS KG, et al Case No. 09-6690 | * * * * * | JUDGE FALLON<br><br>MAG. WILKINSON |

### AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

WALTER S. HAGENBUCKLE

who, being duly sworn, upon his oath deposed and stated as follows:

1. He is the Manager for Heights Properties, LCC., ("Heights Properties"), and as such, has personal knowledge of the following based on his review of records maintained by Heights Properties in the regular course of business.

2. Heights Properties is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Lee County, Florida.


EXHIBIT 4

3. Heights Properties is a home builder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes.

4. Heights Properties has never built a residence in the State of Louisiana nor had any contracts or subcontracts with companies located in Louisiana.

5. Heights Properties has never been licensed or registered to do business in Louisiana or ever had any offices or employees in Louisiana.

6. Heights Properties does not have an agent for service of process in Louisiana.

7. Heights Properties does not have any bank accounts in Louisiana or own any property in Louisiana.

8. Heights Properties does not solicit business in Louisiana or ever transacted business in Louisiana.

9. Heights Properties has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. Heights Properties does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. Heights Properties has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12. Consequently, Heights Properties never anticipated it would be haled into court in Louisiana.

_[signature]_
WALTER S. HAGENBUCKLE

SWORN TO AND SUBSCRIBED
BEFORE ME THIS _1st_ DAY OF _September_, 2010.

_[signature]_
NOTARY PUBLIC

NOTARY PUBLIC-STATE OF FLORIDA
Mark Tamulionis
Commission # DD933259
Expires: OCT. 15, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

3.



## RESIDENTIAL CONSTRUCTION CONTRACT

THIS AGREEMENT, made on this 28th day of February, 2005, by and between **HEIGHTS PROPERTIES, LLC.** (hereinafter referred to as the "Contractor"), whose address is 1231 Cape Coral Parkway, Cape Coral, Florida, 33904 and Michael F. Sheehan (herein after referred to as the "Owner"), whose address is 6001 Pelican Bay Blvd. #804, Naples, FL 34108.

### WITNESSETH

Owner covenants and agrees to retain Contractor to construct a single family residence and related improvements for Owner, and contractor covenants and agrees to construct a single family residence and related improvements for Owner, for and in consideration of the purchase price to be paid by the Owner as stated below, upon the following described property, according to the following terms and conditions:

Legal Description: Cape Coral, Unit 66, Block 3291, Lots 51+52, Platbook 22, Pg. 9
Strap: 03-45-23-C1-03291.0510

Street Address: 3531 SW 15th PL, Cape Coral, FL. 33914

1. Plans and Specifications. Owner and Contractor shall enter into a design contract with Heights Properties, LLC (Design Group) for the preparation of plans and specifications for the residence and related improvements. Contractor agrees to assist Owner and Architect in the design phase of the project, and to report to Owner and Architect any inconsistencies in the plans and specifications approved by the Owner, Owner and Contractor shall initial the same. Said approved plans and specifications together with this Contract and any Change Orders shall constitute the Contract Documents.

2. Materials and Labor. Contractor shall furnish or cause to be furnished all new materials, labor, equipment, tools, machinery and supplies necessary for the construction of said residence and related improvements in substantial accordance with the Contract Documents. All work shall be performed in a good and workmanlike manner. Contractor shall have the right to substitute new materials of like kind and quality in the event certain new materials are not available with approval from the Client.

3. Contract Price. In consideration for Contractor's work and obligations hereunder, Owner shall pay Contractor the Cost of the Work plus a Contractor's Fee. The total estimated contract value including the Contractor's Fee is currently $244,967. This price is for our standard 3 bedroom 3 car garage Cape Villa model, with Pavers (Driveway and front walk ways only). The term Cost of the Work shall mean costs necessarily incurred by the Contractor in the proper performance of the Work. Such Costs shall be at rates not higher than the standard paid at the place of the project except with prior consent of the Owner. Owner shall pay for any additional costs related to Change Orders and Increases in Material Costs and Labor Costs not currently known to Contractor. These additional fees shall be the sole responsibility of the Owner and will be paid for directly by the Owner to the Contractor.

HEIGHTS PROPERTIES, LLC   1231 Cape Coral Parkway, 8A, Cape Coral, FL 33904        239-542-4005 fax:239-542-4033



The Cost of the Work shall include only the following items:

(a) Labor Costs. Wages of construction workers directly employed by the Contractor to perform the construction of the Work at the site or, with the Owner's agreement, at off-site workshops. Wages or salaries of the Contractor's supervisory and administrative personnel when stationed at the site with the Owner's agreement. Wages and salaries of the Contractor's supervisory and administrative personnel engaged, at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the work, but only for that portion of their time required for the work. Costs paid or incurred by the Contractor for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries provided in this paragraph.

(b) Subcontract Costs. Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts.

(c) Costs of Materials and Equipment Incorporated in the Completed Construction. Costs, including transportation, of materials and equipment incorporated or to be incorporated in the completed construction, including materials in excess of those actually installed but required to provide reasonable allowance for waste and for spoilage. Unused excess materials, if any, shall be handed over to the Owner at the completion of the work or, at the Owner's option, shall be sold by the Contractor; amounts realized if any, from such sales shall be credited to the Owner as a deduction form the Cost of the Work.

(d) Costs of Other Materials and Equipment, Temporary Facilities and Related Items. Costs, including transportation, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by the construction workers, which are provided by the Contractor at the site and fully consumed in the performance of the work; and cost less salvage value on such items if not fully consumed, whether sold to others of retained by the Contractor. Cost for times previously used by the Contractor shall mean fair market value. Rental charges for temporary facilities, machinery, equipment and hand tools not customarily owned by the construction workers which are provided by the Contractor at the site, whether rented from the Contractor or others, and costs of transportation, installation, minor repairs and replacements, dismantling and removal thereof. Rates and quantities of equipment rented shall be subject to the Owner's prior approval. Costs of removal of debris from the site. Costs of telegrams and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses at the site office. That portion of the reasonable travel and subsistence expenses of the Contractor's personnel incurred while traveling in discharge of duties connected with the work.

(e) Miscellaneous Costs. That portion directly attributable to this Contract of premiums for insurance and bonds. Sales, use of similar taxes imposed by a governmental authority which are related to the work and for which the Contractor is liable. Fees and assessments for the building permit and for other permits, licenses and pay inspections for which the Contractor is required by the Contract Documents to pay. Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement by the Contract Documents; payments made in accordance with legal judgments against the Contractor resulting from such suits or claims and payments of settlements made with the Owner's consent; provided, however, that such costs of legal defenses, judgment and settlements shall not be included in the calculation of the Contractor's Fee. Deposits lost for causes other that the Contractor's fault or negligence.

(f) Other Costs. Other costs incurred in the performance of the work if and to the extent approved in advance by the Owner.

(g) Emergencies; Repairs to Damaged, Defective of Non-conforming Work. The Cost of the Work shall also include costs which are incurred by the Contractor: (I) in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property; and, (ii) in repairing damaged work, provided such damage did not result from the fault or negligence of the Contractor or the Contractor's personnel, and only to the extent that the cost of such repairs is not recoverable by the Contractor from others and the Contractor is not compensated therefore by insurance or otherwise.

The cost of the Work shall not include the following items: Salaries and other compensation of the contractor's personnel stationed at the Contractor's principal office or offices other that the site office, except as specifically provided in subparagraph 3. (a). Expenses of the Contractor's principal office and offices other than the site office. Overhead and general expenses, except as may be expressly included herein. The Contractor's capital expenses, including interest on the Contractor's capital employed for the work. Rental costs of machinery and equipment, except as specifically provided herein. Except as provided in subparagraph 3. (g) of this Agreement, costs due to the fault or negligence of the contractor, subcontractors, anyone directly or indirectly employed by any of them, or for whose acts any of them may be liable, including but not limited to costs for the correction of damaged, defective or non-conforming work, disposal and replacement of materials and equipment incorrectly ordered or supplied, and making good damage to property not forming part of the work.

Discounts and rebates, and the salvage value of tools and equipment consumed in the work, shall not be included in the Cost of the Work, however, cash discounts for prompt payment shall accrue to Contractor and be included in the cost of the Work unless Owner has deposited funds with Contractor with which to make payments.

The term "Cost of the Work" shall not include the cost of salaries paid to Contractor's home office personnel or any of Contractor's other home office expenses.

4. Payment. Upon execution of this Agreement, Owner shall pay Contractor a deposit of $10,000. At project start a weekly supervision, administrative, job overhead fee of $400 per week will be charged for a total 32 weeks or 8 months. Upon the issuance of a building permit, the Owner shall pay the Contractor and additional payment of $3,000. Thereafter, on or before the second (2nd) day of each month, Contractor will submit to the Owner/Lender an Application for Payment signed by the Contractor, showing in detail and with such backup as Owner/Lender may reasonably require the Cost of the Work for the preceding calendar month/draw period. All payments to Contractor shall be made by Owner within seven (7) days after the submission of the Application for Payment together with lien waivers from all subcontractors who provided a Notice to Owner form the previous draw request. Payment to the Contractor may be withheld if (a) work is found defective and not remedied within thirty (30) days of written notice to Contractor from Owner; (b) Contractor does not make proper and prompt payment to subcontractors or for labor and materials within thirty (30) days of receipt of notice of non-payment; or (c) if claims of lien are filed and not released within thirty (30) days from the date of recording. Owner shall have the right to contract with an architect to inspect, review and supervise the work. Owner and Contractor agree that the architect's determination of the amount of Owner's payment to Contractor will be conditioned upon the approval of the contracted architect. All checks issued by the Owner will be issued from a local institution. A third payment of $3,000.00 will be due after the home is under roof. A final payment of $3,200 shall be paid at Certificate of Occupancy (CO).

If the Owner is financing the construction of improvements with an institutional lender, any changes to the above payment schedule must first be approved in writing by Contractor. Notwithstanding any such approval by Contractor, Owner's obligation to make payment is not contingent upon financing.

5. No Multiple Contracts. It is the intent of the parties that, once the plans and specifications are approved, Contractor shall perform all work in order to construct the residence. Accordingly, Owner shall have no right to enter into contracts with third parties, with the exception of any

contract for furniture, for the performance of any portion of the residence until such time as Contractor has been paid its final payment and has completed all work under this Contract. Owner shall have no right to reduce or change the scope of the work set for the in the Contract Documents, except by change order approved by both Owner and Contractor.

    6. Insurance. The Contractor shall purchase and maintain the following insurance prior to commencement of work, which shall be included in the Cost of the Work:

    a. Worker's compensation policy providing coverage for all employees of Contractor in amounts not less that minimum coverage required by law.

    b. Standard comprehensive general liability policy naming Owner as coinsured and protecting against liability for bodily injury or property damage with an aggregate limit of not less that $1,000,000.00 for bodily injury and $100,000.00 for property damage. Coverage shall include automobile, products/completed operations, and personal injury.

    c. Standard Builder's "All Risk" policy in an amount not less than this contract, naming Owner and Contractor as co-insurers and insuring against physical loss and damage to the property under construction. Coverage shall include, but not be limited to, protection against fire, lightning, windstorm, hail, explosions, smoke, riots, vandalism, theft and malicious mischief.

    d. Flood Insurance if requested by Owner. (at owners expense)

Contractor shall furnish to Owner (and Lender at Owner's request) certificates or copies of policies providing the above coverages, showing such insurance is in force and that premiums due there under have been paid prior to commencement of work. Contractor agrees to indemnify and hold harmless Owner for work which causes bodily injury caused by the negligence of the Contractor. In the event of an insurance claim, any deductible will be the responsibility of the Owner and not the Contractor.

Prior to Contractors commencement of work hereunder, Contractor shall provide to Owner the certificate of insurance complying with the above.

All of the above policies shall contain a provision whereby the Owner is notified thirty (30) days prior to any cancellation of termination of said policy.

    7. Assignment. Neither Contractor nor Owner shall assign this Contract without the express written consent of the other party.

    8. Warranties. See Exhibit A, Contractor's Limited Warranty, attached hereto and made a part hereof. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES EXPRESS OR IMPLIED.

    9. Time of Performance. The parties understand that there may be a short delay between signing of this Contract and the date of commencement of construction which will be used to acquire subdivision approval by Owner, if applicable, and obtain permits. Owner agrees to work with Contractor in obtaining such approval and obtaining the permits promptly, and upon receipt of such approval and permits and the posting of a notice of commencement, Contractor estimates that the home can be substantially completed within two hundred forty (240) days. In the event that Contractor is delayed by acts of God, changes in the work, extras to the work, inclement weather, failure of the Owner to make progress payments, unforeseen contingencies, or any causes beyond the Contractor's control, then the Contract shall be extended for a reasonable time to accommodate the foregoing delays, The above time of performance is based upon the anticipated scope of the work as a **one-story Cape Villa** residence of approximately 2,200 square feet. Upon approval of final plans and specifications, Contractor shall have the right to amend the above time period to reflect any changes in the anticipated scope of the work.

10. Ownership of Property. Owner represents and warrants that the Owner is the soled owner of the real property described in this contract. Owner shall provide Contractor a copy of the deed whereby Owner acquired title to the property prior to the application for the building permit.

11. Building Restrictions. In the event the plans and specifications are required to be approved by a homeowners' association, then Owner agrees to diligently pursue all needed approvals. Any changes required by the homeowners' association shall be handled by change order to the contract.

12. Attorneys' Fees. In the event any litigation arises between the parties concerning the performance of interpretation of this construction agreement, the prevailing party shall be entitled to a reasonable attorney's fee and costs incurred in such litigation.

13. Completion and Occupancy. Owner will not occupy the residence until construction has been completed and final payment has been made, without the written consent of the Contractor.

14. Time is of the Essence. Time is of the essence as to the parties' performance under this contract.

15. Notice of Commencement. Within five (5) days of request by Contractor, Owner agrees to record a Notice of Commencement and provide Contractor a certified copy for posting on the construction site. No work shall commence until such notice is recorded and posted.

16. Selections of Colors. All selections of colors or other options shall be made by Owner within ten (10) days of request by Contractor to Owner and Owner's interior decorator. Failure of Owner to make such selections shall entitle Contractor to select the same on behalf of Owner.

17. Entire Agreement. This Contract contains the entire agreement between the parties and merges and extinguishes all prior negotiations, and no representations, brochures, advertising or other statements made by Contractor or any agent shall be binding unless stated herein.

18. Control of Site. During construction, Contractor shall have control of the construction site and Owner shall not interfere with workmen during working hours. Any questions concerning the work or other inquiries shall be directed to Contractor and not the subcontractors.

19. Clean –Up. Contractor shall at all times keep the site reasonable free from the accumulation of waste materials or rubbish caused by its operations. Upon completion of the work, Contractor shall remove all rubbish and waste material produced by its operations hereunder from the site as well as all of its tools, equipment, machinery and surplus material no longer needed, and leave the work or such portion in a 'dust up' or equivalent condition, unless otherwise specified. Cost of clean-up shall be included in the Cost of the Work.

20. Right to Stop Work. Contractor shall have the right to stop work if payments are not made when due under this contract. Owner shall have the right to stop payment if the Contract is terminated or if Contractor is in default provided that Contractor shall have the right to remedy any term of default within thirty (30) days of written notification to Contractor by Owner.

21. Punch Out. Upon Contractor's notice to Owner that construction is complete and final payment is due, Owner, along with a representative of the Contractor, shall "punch out" the property and provide Contractor with a list of items that are defective or do not conform to the Contract Documents signed by both the Owner and the representative of the Contractor. Contractor agrees to cause the work contained in such list which is defective or does not conform to these contract documents to be corrected. Owner shall have the right to withhold 125% of the estimated value of the punch list items until such items are corrected.

22. <u>Miscellaneous.</u> The parties agree that all actions and arbitrations arising out of the performance of the Agreement shall be brought in Lee County and that this Agreement will be construed in accordance with and governed by the laws of the State of Florida.

23. <u>Final Payment by Owner.</u> Final payment by the Owner to the Contractor shall be contingent upon the following conditions: (I) presentment to Owner of Contractor's Final Affidavit in form and substance acceptable to Owner; (ii) presentment to Owner of final lien waivers from all subcontractors who provided a notice to owner; (iii) delivery of the Certificate of Occupancy to Owner; (iv) presentment to Owner of final as-built survey certified to Owner; and (v) delivery to Owner of as-built drawings.

24. <u>Binding Agreement.</u> This Contract shall inure to the benefit of and shall be binding upon the partiers hereto, their respective heirs, executors and assigns.

25. <u>Applicable Law.</u> This Contract Shall be governed by and construed in accordance with the laws of the State of Florida.

26. <u>Default.</u>   The occurrence of any one or more of the following events shall constitute a default of this agreement by either party. Violation by owner or contractor of any material term, condition, or provision of this agreement where such failure continues for a period of thirty (30) days after written notice from either party, provided, however, that if any such default shall occur which cannot with due diligence be cured within said thirty (30) day period, either party shall not be deemed to be in default if, prior to the expiration of said cure period, either party commences to cure such default and thereafter diligently prosecute such cure to completion within forty-five (45) days of such default.

Two Witnesses Each:

CONTRACTOR:
HEIGHTS PROPERTIES, LLC.

By: _____
Walter S. Hagenbuckle, President

OWNER:
_____
Michael F. Sheehan

Notary:

**Sandpiper Strategies**
**3531 SW 15th Place**
Cape Villa Pricing 2.23.05

| | Cost |
|---|---|
| Appliances | 2,539.76 |
| Architect | 789.16 |
| Blueprints | 23.85 |
| Compaction | 240.00 |
| Cabinets/Tops | 11,991.00 |
| Cleaning | 926.00 |
| Driveway/Patio Concrete | 7,509.00 |
| Drywall | 7,600.00 |
| Electric | 7,678.95 |
| Flooring Labor | 3,000.00 |
| Flooring Materials | 1,906.50 |
| Framing | 13,116.28 |
| Garage Door | 1,885.00 |
| HVAC | 5,980.00 |
| Insulation | 2,984.00 |
| Insurance | 792.00 |
| Job Site Cleanup | 450.00 |
| Landscape/Sod | 6,076.82 |
| Lumbr Pack | 12,488.67 |
| Masonry | 33,616.00 |
| Materials | 3,357.24 |
| Miscellaneous | 403.01 |
| Perc Test | 300.00 |
| Painting | 7,101.61 |
| Permits | 10,110.03 |
| Pest Control | 312.70 |
| Plumbing | 4,431.00 |
| Pool | 22,822.00 |
| Port-O-Let | 516.96 |
| Punch Out | 560.00 |
| Roof | 10,365.00 |
| Septic | 4,790.00 |
| Security | 986.30 |
| Shutters | 1,506.00 |
| Sitework | 2,357.00 |
| Sofft/Aluminum | 1,347.84 |
| Stereo | 736.45 |
| Stucco | 4,950.00 |
| Survey | 420.00 |
| Temp Electric | 518.90 |
| Trim Labor | 563.17 |
| Trusses | 7,914.80 |
| Windows | 5,004.49 |
| Total | 212,967.49 |
| | |
| Contractor Fee | 32,000.00 |
| Grand Total | 244,967.49 |



### EXHITBIT "A"
### CONTRACTOR'S LIMITED WARRANTY

**Consequential and Incidental Damages:**

Consequential and incidental damages are excluded, and the implied warranties are limited in duration. Any injury to persons or damages to personal or real property, in whole or in part, which may be a consequence of, or incident to or result from any defects in material or performance of the work is excluded. This limited warranty is extended to Owner while occupying the dwelling as a residence during the coverage period.

**Term:**

The term of the various coverages of the Limited Warranty shall begin on the day the certificate of occupancy is issued and shall terminate 12 months from the day the certificate of occupancy was issued.

**Manufacturer's Warranty:**

Contractor assigns and passes through to Owner the Manufacturer's warranties on all "consumer products" as defined in the Magnuson-Moss Warranty Act (15 U.S.C. SS 2301-2311). The Act applies to written warranties on tangible personal property which is normally used for personal, family or household purposes. Merchantability, fitness and all other implied warranties, with respect to such goods, shall be governed by the Magnuson-Moss Act and other applicable state statutes. The following items are classified as "consumer products" when sold as part of a house and are covered by the Magnuson-Moss Warranty Act:

1. HEATING and VENTILATION: Furnace, air conditioning, coils and compressor, humidifier, electronic air cleaner, heat pump, exhaust fan or thermostat.
2. MECHANICAL/ELECTRICAL: Intercom, central vacuum system, security system, fire and smoke alarm, fire extinguisher garage door opener, door chimes, electric meter, gas meter, barbecue grill.
3. PLUMBING: Water heater, water pump, water meter, sump pumps, water softener, whirlpool, and pool.
4. APPLIANCES: Oven, surface unit, range, trash compactor, freezer, refrigerator, dishwasher, oven hood, disposal, ice maker, food center, clothes washer, clothes dryer, and hot water dispensers.

### EXCLUSIONS FROM COVERAGE:

The Contractor does not assume responsibility for any of the following, all of which are excluded from the coverage of this limited warranty:

1. Damage or defects in concrete floors of attached garages that are built separate from the foundation walls or other structural elements of the residence.
2. Any appliances, equipment, or other item within the residence which is considered a "consumer product" as defined under the Manufacturer's Warranty.

3. Loss or damage resulting from abnormal loading on floors by the Owner which exceeds the design criteria as mandated by the locally adopted building codes.
4. Normal wear and tear or abusive use.
5. Defects that result from characteristics common to the materials used, such as (but not limited to) warping and deflection of wood; fading; chalking, and checking of paint from exposure to sunlight; cracks that occurred in the drying and cursing of concrete, stucco, plaster, bricks, and masonry; drying, shrinking, and cracking of caulking and weather stripping.
6. Glass breakage.
7. Defects to structural slab foundations systems that have experienced movement, but are within the design criteria.
8. Presence of, or any damage from insects, birds or rodents.
9. Damage to real or personal property which was not included in the original delivery of the residence for the original contract price.
10. Loss of use, loss of opportunity, loss of market value, loss of rental value or any similar consequential loss.
11. Defects in materials or workmanship supplied by anyone other than the contractor or its employees, agents or subcontractors, and any covered defect which was caused by defective material or workmanship supplied by anyone other than the Contractor, its employees, agents or subcontractors.
12. Loss or damage resulting from failure of the Contractor to complete the construction, or to complete the construction timely.
13. Damage due to the abuse or neglect of the Owner or the Owner's failure to provide for proper maintenance.
14. Cost of shelter, transportation, food, moving, storage or other expenses associated with or related to any defect, or the repair or replacement of any defects in workmanship, materials or design.
15. Loss or damage which arises while the residence is being used primarily for nonresidential purposes, or loss or damage caused by the residence being used for nonresidential purposes.
16. Personal or bodily injury of any kind (including physical or mental pain and suffering and emotional distress), medical, hospital, rehabilitation or other incidental or consequential expenses, damage to personal property.
17. Loss or damage which the Owner has not taken appropriate action to minimize as soon as practical.
18. Any damage to the extent it is caused or made worse by:
    a. Loss or damage externally caused, including but not limited to acts of God, riot or civil commotion windstorm, fire, explosion, smoke water, hail, lightening, falling trees or other objects, aircraft, vehicles, flood, mud slides, earthquakes, volcanic eruption, natural or introduced gases, abuse or use of the residence, or any part thereof, beyond the reasonable such part for such use, or by any other external cause;
    b. Changes in the level of the underground water table which were not reasonably foreseeable at the time of construction;
    c. Damage of condensation due to failure of the Owner to maintain adequate ventilation;
    d. Subsidence or soil movement which was not reasonable predictable through soil testing at the time of construction;
    e. Any damage or defects caused by soil movement for which compensation is provided by legislation or which is covered by insurance or public funds to the extent that such compensation is paid for by other such providers.

**Claims Procedure:**

Upon detecting the existence of a defect, the Owner shall follow the following procedures set forth below:

1. If the defect is covered by the Contractor's Limited Warranty, written notice with a thorough and complete explanation of the defect shall be sent to the Contractor at 1231 Cape Coral Parkway, Cape Coral, Florida, 33904. The Owner shall give the opportunity to the Contractor

      to inspect the claimed defect prior to any work. Only emergency reports will be taken by telephone.
2.  If the defect is covered under the Manufacturer's Warranty, follow the instructions provided with such warranty. In the absence of a written Manufacturer's Warranty, contact the Contractor's office in writing to obtain information and assistance in filing a claim.
3.  Failure to notify the Contractor of defects covered under this limited warranty or any implied warranties relieves the Contractor of all liability for replacement, repair, and all other damages.

**Contractor Performance:**

The Contractor reserves the right to repair, replace, or pay reasonable sums in order to effect house repairs to any deficiencies. The choice among repair, replacement or payment is that of the Contractor. The Contractor will remedy failures, malfunctions and defects, without charge to Owner, at Contractor's own cost and expense, within a reasonable time not to exceed thirty (30) days from the date of Contractor's receipt of notification of any such failure or defect. Actions taken by the Contractor to correct the defect shall not extend any term of this warranty. Corrective work shall be performed by the Contractor only during normal working hours, 8:00 am to 5:00 pm on Monday through Friday. The Contractor shall not be required to enter the premises to perform corrective work unless the Owner has provided the Contractor with a key release, written permission to enter and a complete release of liability.

**Subcontractor Warranties:**

Contractor shall assign to Owner all subcontractors' and suppliers' Full One Year Warranty of Merchantability and Fitness" warranties which are effective for a period of one year from the date the residence has been delivered to Owner by Contractor.

**Arbitration:**

Any controversy or claim arising out of or relating to this warranty, or the breach thereof, shall be settled by binding arbitration in accordance with the Rules and Procedures of Construction Arbitration Associates, Ltd. Notice of demand for arbitration shall be filed with in a reasonable time after the dispute has arisen, and judgment upon the award rendered by the arbitration shall be evenly shared by Contractor and Owner. Should CAA, Ltd be unavailable to arbitrate the controversy, then another professional arbitration service, which is mutually agreeable to the Contractor and Owner shall be utilized.

**THIS LIMITED WARRANTY IS THE ONLY EXPRESS WARRANTY EXTENDED TO OWNER BY CONTRACTOR. ANY ITEM AND CONDITION NOT SPECIFICALLY COVERED BY THIS WARRANTY ARE EXCLUDED FROM COVERAGE AND ARE THE RESPONSIBILITY OF OWNER. IT IS EXPRESSLY UNDERSTOOD THAT THIS LIMITED WARRENTY IS IN LIEU OF ANY AND ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED,INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND HABITABILITY. IN NO EVENT SHALL CONTRACTOR BE LIABLE FOR ANY DAMAGE (CONSEQUENTIAL OR OTHERWISE) ARISING FROM ANY DEFECT IN ANY ITEM COVERED HEREUNDER. THIS WARRANTY WILL GIVE YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.**

NOTE TO OWNER: All residential construction goes through a period of settlement and as a result, the home will experience minor material changes which are unavoidable and are considered normal. The Owner should also be aware that the Owner is responsible for proper home maintenance. Damage caused by Owner negligence, improper maintenance or changes, alterations or additions performed by anyone other that the Contractor, its employees, or subcontractors directed by the Contract is excluded from the warranty.

**Assignment:** This warranty is assignable for the balance of time left on the one year (12 month) warranty. It is assignable to any persons, partnership, or corporation. No written consent is required for transfer and assignment of warranty.

**Signatures:**
Heights Properties, LLC

By: _____
Walter S. Hagenbuckle

_____
Owner

_____
Owner

Date: _____