# EXHIBIT K

# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| WCI COMMUNITIES, INC., et al.,[1] | Case No. 08-11643 (KJC) |
| | Jointly Administered |
| Debtors. | **Re: Docket No. 2088** |

## ORDER CONFIRMING THE SECOND AMENDED JOINT
## CHAPTER 11 PLAN OF REORGANIZATION FOR WCI
## COMMUNITIES, INC. AND ITS AFFILIATED DEBTORS

On August 4, 2008 (the "Petition Date"), WCI Communities, Inc. ("WCI")[2] and 126 of

its direct and indirect subsidiaries (collectively with WCI, the "Initial Debtors") each filed in the

United States Bankruptcy Court for the District of Delaware (the "Court") a voluntary petition

for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the

"Bankruptcy Code"). On July 1, 2009, three newly-formed subsidiaries of WCI, WCI 2009

Corporation, WCI 2009 Asset Holding, LLC and WCI 2009 Management, LLC (collectively and

together with the Initial Debtors, the "Debtors"), each filed in the Court a voluntary petition for

relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been

consolidated for procedural purposes only and are being jointly administered pursuant to Rule

1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule

1015-1.

---

[1]     The list of the Debtors and Tax Identification Numbers is located on the docket for Case No. 08-11643
(KJC) [Docket 64] and http://chapter11.epiqsystems.com/wcicommunities, and is attached hereto as Exhibit "A".

[2]     Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Plan. Unless
otherwise stated in the Plan, all references to "WCI" therein are to Debtor WCI Communities, Inc.

MIAMI 853380 (2K)

On August 13, 2008, the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") in these chapter 11 cases (the "Cases"). No trustee or examiner has been requested or appointed in any of the Debtors' Cases.

On June 8, 2009, the Debtors filed their Joint Chapter 11 Plan of Reorganization for WCI Communities, Inc. and its Affiliated Debtors [Docket No. 1741] and disclosure statement in support thereof [Docket No. 1638]. On July 1, 2009, the Debtors filed their First Amended Joint Chapter 11 Plan of Reorganization for WCI Communities, Inc. and its Affiliated Debtors [Docket No. 1981] and disclosure statement in support thereof [Docket No. 1982]. On July 17, 2009, the Debtors filed their Second Amended Joint Chapter 11 Plan of Reorganization for WCI Communities, Inc. and its Affiliated Debtors (the "Plan") [Docket No. 2088] and the Disclosure Statement Relating to the Second Amended Joint Chapter 11 Plan of Reorganization for WCI Communities, Inc. and its Affiliated Debtors (the "Disclosure Statement") [Docket No. 2089].

On July 17, 2009, the Court entered the Order (i) Approving the Disclosure Statement Relating to the Second Amended Joint Chapter 11 Plan of Reorganization for WCI Communities, Inc. and its Affiliated Debtors; (ii) Approving Form of Ballots and Proposed Solicitation and Tabulation Procedures for the Plan; (iii) Approving the Solicitation Packages and Prescribing the Form and Manner of Notice of Distribution Thereof; (iv) Establishing Procedures for (a) Voting in Connection with the Plan Confirmation Process and (b) Temporary Allowance of Claims Related Thereto; and (v) Scheduling a Hearing on Plan Confirmation (the "Disclosure Statement Order") [Docket No. 2097].

The Disclosure Statement Order, among other things, (i) established August 19, 2009 at 4:00 p.m. (Prevailing Eastern Time) as the deadline for voting on the Plan, and (ii) scheduled a

2

hearing commencing on August 26, 2009 at 11:00 a.m. (Prevailing Eastern Time) to consider confirmation of the Plan and objections thereto (the "Confirmation Hearing").

The Debtors' noticing, claims, solicitation, balloting and tabulation agent, Epiq Bankruptcy Solutions, LLC ("Epiq"), through its affiliate Financial Balloting Group LLC, transmitted solicitation packages in accordance with the Disclosure Statement Order, as attested to in the Affidavit of Service of Solicitation Packages (the "Solicitation Affidavit") [Docket No. 2314].

On August 14, 2009, the Debtors filed a Notice of Filing of Certain Plan Documents [Docket No. 2268].

Objections to confirmation of the Plan (collectively, the "Objections") were filed by (i) Vincent E. Rhynes [Docket No. 1860]; (ii) Safeco Insurance Company of America and Liberty Mutual Insurance Company (the "Safeco/Liberty Objection") [Docket Nos. 2040 and 2293]; (iii) Palm Beach County, Florida [Docket No. 2073]; (iv) The Resort at Singer Island Hotel Condominium Association, Inc. (the "RSI Association Objection") [Docket No. 2274]; (v) Charlotte Collier (the "Collier Objection") [Docket No. 2285]; (vi) Bharat and Rani Mehta (the "Mehta Objection") [Docket No. 2286]; (vii) Susan Lawson, as Trustee of the Lawson Trust (the "Lawson Objection") [Docket No. 2287]; (viii) Alan Stanley Freemond and Clarajohn Freemond (the "Freemond Objection") [Docket No. 2288]; (ix) Motto Holdings, Inc. (the "Motto Objection") [Docket No. 2289]; (x) Old Republic Insurance Company [Docket No. 2290]; (xi) Tax Collector for Palm Beach County (the "Palm Beach Tax Collector Objection") [Docket No. 2291]; (xii) Chicago Title Insurance Company (the "Chicago Title Objection") [Docket No. 2292]; (xiii) the United States, on behalf of the United States Army Corps of Engineers and the United States Environmental Protection Agency (the "United States Objection") [Docket No.

3

2294]; (xiv) Park Apartments of Southwest Florida, Inc. and Monroe Management Co. of Southwest Florida, Inc. [Docket No. 2296]; (xv) Yalcin, Inc. [Docket No. 2299 and 2300]; and (xvi) Jan Aikin (the "Akin Objection") [Docket No. 2301].

On August 21, 2009, the Debtors also filed their Memorandum of Law in (A) Support of Confirmation of Second Amended Joint Chapter 11 Plan of Reorganization for WCI Communities, Inc. and its Affiliated Debtors and (B) Response to Certain Objections Thereto (the "Confirmation Memorandum") [Docket No. 2315]. Further, on August 25, 2009, the Debtors filed the declarations of Jonathan Pertchik and Stephen Goldstein in support of confirmation of the Plan (collectively, the "Declarations in Support of the Plan") [Docket Nos. 2343 and 2344, respectively].

On August 21, 2009, the Debtors filed the Declaration of James Katchadurian of Epiq Bankruptcy Solutions, LLC Certifying Voting On, and Tabulation Of, Ballots Accepting and Rejecting Debtors' Chapter 11 Plan of Reorganization (the "Voting Certification") [Docket No. 2318].

The Confirmation Hearing concluded on August 26, 2009.

NOW, THEREFORE, the Court having considered the Plan, the Solicitation Affidavit, the Voting Certification, the Declarations in Support of the Plan, the Confirmation Memorandum, the Objections, all evidence proffered or adduced and the arguments of counsel at the Confirmation Hearing, and the entire record of these Cases, and after due deliberation thereon and good cause appearing therefor, this Court hereby makes and issues the following Findings of Fact and Conclusions of Law and hereby orders:[3]

---

[3]     This Confirmation Order constitutes this Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable by Federal Rules of Bankruptcy Procedure 7052 and 9014. Any and all

MIAMI 833380 (2K)

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    Jurisdiction and Venue. This Court has subject matter jurisdiction to confirm the Plan pursuant to 28 U.S.C. §§ 157 and 1334. Venue before this Court was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(A), (L), and (O). The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code.

B.    Burden of Proof. The Debtors, as proponents of the Plan, have the burden of proving the elements of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence, and, as set forth below, the Debtors have met that burden.

C.    Judicial Notice. This Court takes judicial notice of the docket in these Cases maintained by the clerk of the Court and/or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during these Cases, including, without limitation, the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

D.    The Record. The following record (the "Record") was established to support confirmation of the Plan:

> (i)    All documents identified by the Debtors at the Confirmation Hearing, including, without limitation, the Plan, the Disclosure Statement and all exhibits, schedules and attachments thereto and filed in connection therewith, and the Plan Documents, all of which were admitted into evidence without objection;

> (ii)   The Declarations in Support of the Plan;

---

findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

MIAMI 833380 (2K)

(iii)   The Solicitation Affidavit;

(iv)   The Voting Certification;

(v)   The entire record of these Cases and the docket maintained by the clerk of the Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of these Cases, as to all of which the Court took judicial notice at the Confirmation Hearing; and

(vi)   The statements and argument of counsel on the record at the Confirmation Hearing, and all papers and pleadings filed with the Court in support of, in opposition to, or otherwise in connection with, confirmation of the Plan.

The evidence that was admitted into the Record in support of confirmation of the Plan and all related matters demonstrates, by a clear preponderance of the evidence, that the Plan should be confirmed.

E.   Modifications to the Plan.   The Debtors have made the nonmaterial modifications to the Plan as set forth in Exhibit "B" hereto (the "Modifications"). Pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of the Modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The Plan as modified by the Modifications shall constitute the Plan submitted for confirmation by the Court.

F.   Resolution of Objections.   As presented at the Confirmation Hearing, the consensual resolutions of certain Objections satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interest of the Debtors and their estates and supported by the Record, and therefore should be approved. All Objections that were not resolved by agreement on or prior to the Confirmation Hearing should be overruled, or are

6

otherwise disposed of, as set forth herein and on the record of the Confirmation Hearing.

      G.    Solicitation and Notice. To obtain the requisite acceptance of the Plan, on July 24, 2009, the Debtors completed solicitation of acceptances and rejections of the Plan by distributing the Disclosure Statement and related materials to holders of Claims against the Debtors classified in impaired classes entitled to vote under the Plan.

      (i)    As evidenced by the Solicitation Affidavit, and in compliance with the requirements of the Disclosure Statement Order, the Debtors transmitted to all known holders of Claims against the Debtors classified in impaired classes entitled to vote under the Plan: (a) the Disclosure Statement Order (excluding exhibits); (b) a CD-ROM containing or a hard copy of the Disclosure Statement and all schedules and exhibits thereto, including the Plan and Disclosure Statement Order; (c) a notice of hearing to consider confirmation of the Plan and deadline for filing objections thereto (the "Confirmation Hearing Notice"); (d) an applicable ballot, customized for each recipient; (e) a letter from the Creditors' Committee for holders of Unsecured Claims or a letter from the administrative agents to the Prepetition Lenders for holders of Prepetition Lender Claims; (f) a notice regarding imported drywall (the "Drywall Notice"); and (g) a postage prepaid return envelope (collectively, the "Solicitation Packages").

      (ii)    Specifically, the Solicitation Packages were distributed to holders of Claims in Class 2 – Prepetition Lender Claims, Class 3 – Secured Claims, Class 4 – Unsecured Claims, Class 5 – Chinese Drywall Claims, and Class 6 – Convenience Claims.

      (iii)    In addition, as evidenced by the Solicitation Affidavit, and in compliance with the requirements of the Disclosure Statement Order, the Debtors transmitted to all known holders of Claims against and Equity Interests in the Debtors that were either classified as unimpaired or deemed to have rejected the Plan, (a) the Disclosure Statement Order (excluding

7

exhibits); (b) a CD-ROM containing the Disclosure Statement and all schedules and exhibits thereto, including the Plan and Disclosure Statement Order; (c) a Confirmation Hearing Notice; and (d) the Drywall Notice. Specifically, the items listed immediately above were transmitted to holders of Class 1 – Priority Claims, Class 7 – WCI Equity Interests, and Class 8 – Other Equity Interests.

(iv)    Furthermore, as evidenced by the Solicitation Affidavit, the Debtors transmitted to other parties in interest who were not entitled to vote on the Plan, (a) the Disclosure Statement Order (excluding exhibits); (b) a CD-ROM containing or a hard copy of the Disclosure Statement and all schedules and exhibits thereto, including the Plan and Disclosure Statement Order; (c) a Confirmation Hearing Notice; and (d) the Drywall Notice.

(v)    Finally, as evidenced by the Notice of Filing of Affidavits of Publication dated August 21, 2009 [Docket No. 2313], and in compliance with the requirements of the Disclosure Statement Order, the Debtors caused the Confirmation Hearing Notice to be published in The Wall Street Journal, The New York Times, The Washington Post, The Sun Sentinel, The Miami Herald, The Tampa Tribute, Naples Daily News, and Bonita Daily News on July 30, 2009. The Confirmation Hearing Notice was also published electronically at http://www.deb.uscourts.gov and http://chapter11.epiqsystems.com/wcicommunities.

(vi)    The Debtors complied with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and all other applicable laws in connection with the solicitation of votes on the Plan and the provision of notice of the Confirmation Hearing and the August 19, 2009 deadline for filing and serving objections to confirmation and for voting on the Plan and all other relevant deadlines related to the Plan. As such, the notice provided was due and proper with respect to all matters relating to the solicitation of votes on, and the confirmation

of, the Plan and satisfied the requirements of due process with respect to all creditors, equity holders and parties in interest who were provided actual or constructive notice.

      H.    Voting. As evidenced by the Voting Certification, and except as stated below, each class of Claims and Equity Interests either (i) voted to accept the Plan under section 1126 of the Bankruptcy Code and for purposes of section 1129(a)(8)(A) of the Bankruptcy Code; (ii) is not impaired as provided in section 1124 and 1129(a)(8)(B) of the Bankruptcy Code or (iii) is deemed, under section 1126(g) of the Bankruptcy Code, to have voted to reject the Plan. Classes 3T and 3KKK voted to reject the Plan (the "Class 3 Rejecting Classes"), and of the 180 holders of Class 3 – Secured Claims whose votes on the Plan were solicited, 98 did not timely return a ballot (the "Class 3 Non-Voting Classes," and collectively with the Class 3 Rejecting Classes, the "Class 3 Non-Accepting Classes"). Class 3C (Arch Insurance Company) and Class 3AAA (Pelican Marsh Community Development District) initially voted to reject the Plan but changed their votes prior to the conclusion of the Confirmation Hearing to vote to accept the Plan.

      I.    Compromises and Settlements Under and in Connection With the Plan. All of the settlements and compromises pursuant to and in connection with the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

      (i)    In settlement and compromise of certain existing and potential disputes regarding Intercompany Claims and related matters, the Plan treats the Debtors as comprising a single Estate solely for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Equity Interests in the Debtors under the Plan. Intercompany Claims and Administrative Claims between and among the Debtors shall, solely for purposes of receiving Plan Distributions, be deemed resolved as a result of this settlement and compromise. The grouping of the Debtors pursuant to Section 2.1 of the Plan for purposes

9

of voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of

Claims against and Equity Interests in the Debtors is proper, and the terms and provisions of

Article II of the Plan do not discriminate unfairly, and are fair and equitable and within the

bounds of reasonableness.

      (ii)      As set forth in the stipulation entered into by and among WCI, Parkland

Golf Club, Inc., a Florida non-for-profit corporation (the "Equity Club") and John Lanciotti,

Gary Mintz, Michael Sachs, Jason Scherr, Robert Spallina, and Richard Stein (the "Parkland

Stipulation"), which was filed with the Court on August 25, 2009 [Docket No. 2337], at a

meeting held on August 17, 2009 (the "August 17th Meeting"), a majority of the Equity

Members voted to approve the agreements and transactions contemplated by Parkland

Stipulation, including, but not limited to, (i) entering into the New Agreements (as defined in the

Parkland Stipulation) (ii) amending the Equity Club's membership plan and organizational

documents as necessary, among other things, to effectuate the New Agreements, offer non-equity

memberships in the Equity Club and provide non-resident Equity Members (as defined in the

Parkland Stipulation) with the same rights as resident Equity Members, and (iii) authorizing the

release of claims against WCI as set forth in the Parkland Stipulation. Each of Equity Members

was solicited for purposes of voting on the amendments to the Equity's Club's membership plan

and organizational documents. A unanimous approval of such amendments by a quorum of the

Equity Members was obtained at the August 17th Meeting. In conducting such solicitation and

the August 17th Meeting, the Equity Club complied with the requirements of the existing

organizational documents and therefore the notice provided of the amendments and the voting on

the amendments was due and proper. Further, the conveyance of Real Estate (as defined in the

Parkland Stipulation) contemplated by the Parkland Stipulation and the 2009 Club Acquisition

10

Agreement is a precondition or essential to the confirmation of the Plan, and is necessary to consummate or implement the Plan, therefore, pursuant to section 1146(a) of the Bankruptcy Code the conveyance of Real Estate is exempt from any transfer taxes. The Parkland Stipulation and the transactions contemplated thereunder comply with the requirements of Bankruptcy Rule 9019 and are fair, reasonable and adequate.

J.    Releases, Exculpations and Injunctions.  The Plan provides for various releases, exculpations and injunctions.  With regard to the releases contained in Section 8.15 of the Plan, each holder of a Claim against or Equity Interest in the Debtors was also given the opportunity to "opt out" of such releases by making a timely written election by the Voting Deadline.  To the extent any such holder of a Claim against or Equity Interest in the Debtors did not choose to "opt out" of the releases in Section 8.15 of the Plan, such releases are deemed to be consensual.  Any "opt out" of the releases contained in Section 8.15 of the Plan shall not and shall not be construed to in any way affect any other release, exculpation or injunction provided in the Plan, including without limitation the releases, exculpations and injunctions provided in Sections 8.14, 15.3, 18.2, 18.5, 18.6, 18.7, 18.23 of the Plan.  Furthermore, the releases, exculpations and injunctions provided in the Plan (i) are within the jurisdiction of the Court under 28 U.S.C. § 1334; (ii) are integral elements of the transactions incorporated into the Plan; (iii) confer material benefit on, and are in the best interests of, the Debtors, their Estates and their creditors, and are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; (iv) were approved by an overwhelming majority of holders of Claims against the Debtors; and (v) are consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

MIAMI 833380 (2K)

K.    Securities Under the Plan. Pursuant to the Plan, and without further corporate or other action, the following debt, equity and rights will be issued by New WCI: (i) shares of New WCI Common Stock, (ii) New WCI Senior Secured Term Notes in the principal amount of $300 million, (iii) New WCI Senior Secured Subordinated PIK Notes in the principal amount of $150 million, and (iv) shares of New WCI Preferred A Stock and New WCI Preferred B Stock, each of which shall permit the holder thereof to receive New WCI Common Stock upon the occurrence of certain events, as described in the Plan.

L.    Exit Financing. Notwithstanding anything in the Plan or Disclosure Statement to the contrary, the Debtors have determined that it is not necessary for New WCI to enter into the Exit Facility and, therefore, shall not enter into such Exit Facility.

M.    New WCI Note Documents. Each New WCI Note Document to which New WCI, New WCI AssetCo, New WCI ManagementCo and the New WCI Guarantors are a party constitutes the valid and binding obligation of such party, enforceable against New WCI, New WCI AssetCo, New WCI ManagementCo and the New WCI Guarantors in accordance with such New WCI Note Document's terms. The execution, delivery and performance by New WCI, New WCI AssetCo, New WCI ManagementCo and the New WCI Guarantors of the New WCI Note Documents is not in contravention of any applicable law or agreements. All liens and security interests created pursuant to the New WCI Note Documents shall be valid, binding, enforceable, and effective.

N.    Executory Contracts and Unexpired Leases. The Debtors have exercised reasonable business judgment in determining whether to reject, assume or assume and assign each of their executory contracts and unexpired leases under the terms of the Plan and this Confirmation Order. Each pre- or post-confirmation rejection, assumption or assumption and

MIAMI 833380 (2K)

assignment of an executory contract or unexpired lease pursuant to Article XVI of the Plan will be legal, valid and binding upon the applicable Debtor and all non-Debtor parties to such executory contract or unexpired lease, as applicable, all to the same extent as if such rejection, assumption, or assumption and assignment had been effectuated pursuant to an appropriate order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code. Each of the executory contracts and unexpired leases to be rejected, assumed or assumed and assigned is deemed to be an executory contract or an unexpired lease, as applicable.

(i)     The Plan constitutes a motion to assume or assume and assign to the New WCI Group (unless another party is otherwise listed) such executory contracts and unexpired leases (collectively, the "Assumed and Assigned Contracts") as set forth in Schedule 4 to the Disclosure Statement or the amended Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases filed with the Court on August 25, 2009, [Docket No. 2350] (collectively, the "Assumption Schedule") or as otherwise designated as being assumed or assumed and assigned in Section 16.1(a) of the Plan. Except as otherwise provided in a separate order of the Court, any non-Debtor party to an Assumed and Assigned Contract was required to object to such assumption and assignment or to the cure amounts proposed by the Debtors in connection therewith by no later than ten days prior to the Confirmation Hearing. Upon the entry of this Confirmation Order, (a) all of the requirements of sections 365(b) and (f) will have been satisfied with respect to each Assumed and Assigned Contract for which no timely objection was filed; (b) all rights to object to the assumption or assumption and assignment of any such Assumed and Assigned Contract will have been waived; (c) except as the Court may hereafter determine is necessary and appropriate to effect the purpose of the Bankruptcy Code and equity, all rights to object to the cure amounts with respect to any such

13

Assumed and Assigned Contracts will have been waived; and (d) the assumption or assumption and assignment of such Assumed and Assigned Contracts will have been approved. Any objections filed with respect to an Assumed and Assigned Contract will be resolved as set forth in Article XVI of the Plan.

(ii)    Except as otherwise provided in this Confirmation Order or Section 16.1 of the Plan, the Plan also constitutes a motion to reject all of the Debtors' executory contracts and unexpired leases, including, but not limited to, those contracts (collectively, the "Rejected Contracts") set forth on Schedule 3 to the Disclosure Statement or the amended Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases filed with the Court on August 25, 2009, [Docket No. 2350], except (i) any executory contracts and unexpired leases that are the subject of separate motions to reject, assume, or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the Effective Date; (ii) contracts and leases listed on the Assumption Schedule; (iii) all executory contracts and unexpired leases assumed or assumed and assigned under this Plan or by order of the Court entered before the Effective Date; (iv) any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure pursuant to Section 16.2 of the Plan and for which the Debtors make a motion to reject such contract or lease based upon the existence of such dispute filed at any time; (v) any guaranty or similar agreement executed by a third party which guarantees repayment or performance of an obligation owed to any of the Debtors or to indemnify the Debtors; (vi) agreements with third parties regarding preservation of the confidentiality of documents produced by the Debtors; (vii), to the extent they are executory, agreements embodied in development orders, city and/or county ordinances, zoning approvals, permits and/or other related documents or any other official action of a governmental unit, quasi-

14

governmental unit, and/or utility granting certain development rights, property interests and/or entitlements to the Debtors; and (viii), to the extent they are executory, club acquisition agreements, association transfer agreements, marketing, access & use agreements, management agreements, JV agreements, turnover agreements, license agreements, annual memberships, and any and all club membership application agreements (equity or non-equity) unless otherwise expressly rejected as set forth in Schedule 3 to the Disclosure Statement. Each executory contract or unexpired lease to be rejected pursuant to the Plan is burdensome and the rejection thereof is in the best interests of the Estates.

      O.    <u>Standing</u>. The Debtors have satisfied section 1121 of the Bankruptcy Code in that the Debtors have standing to file a plan. Furthermore, the Plan reflects the date it was filed with the Court and identifies the entities submitting it as Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

      P.    <u>The Plan Complies with the Bankruptcy Code (11 U.S.C. §§ 1129(a)(1))</u>. As set forth below and as demonstrated by the Record, the Plan complies with all relevant sections of the Bankruptcy Code, Bankruptcy Rules and applicable non-bankruptcy law relating to the confirmation of the Plan. In particular, the Plan complies with all of the requirements of section 1129 of the Bankruptcy Code.

      Q.    <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>. The Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code. The Plan's classifications conform to the statute and separately classify claims based on valid business and legal reasons. The Debtors' classification has a rational basis because it is based on the respective legal rights of each holder of a Claim against or Equity Interest in the applicable Debtor's Estate and was not proposed to create a consenting impaired class and, thereby,

manipulate class voting. Article III of the Plan designates classes of Claims and Equity Interests that require classification.

R. Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan complies fully with the requirements of section 1123(a)(2) of the Bankruptcy Code. Article IV of the Plan specifies which classes of Claims and Equity Interests are not impaired under the Plan.

S. Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan complies fully with the requirements of section 1123(a)(3) of the Bankruptcy Code. Article V of the Plan specifies the treatment of classes and interests under the Plan, including those which are impaired.

T. No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan complies fully with the requirements of section 1123(a)(4) of the Bankruptcy Code. As reflected in the treatment set forth in Article V of the Plan, the treatment of each of the Claims and Equity Interests in each particular class is the same as the treatment of each of the other Claims or Equity Interests in such class; provided, however, to the extent any claimant received any better treatment than that described by the Plan for its class on the basis of the standards for compromise and settlement, the Court hereby finds that such better treatment does not need to be made available to other members of the class.

U. Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan complies fully with the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan provides adequate means for implementation of the Plan through, among other things, the issuance of certain equity securities and notes described above, implementation of the Plan Trust, Creditor Trust and Chinese Drywall Trust, and the transfer of substantially all of the Debtors' assets and employees

to the New WCI Group.[4]

V.　Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)). The Plan complies fully with the requirements of section 1123(a)(6) of the Bankruptcy Code. As evidenced by the New WCI Constituent Documents, the charter documents of New WCI include such provisions as are required by section 1123(a)(6).

W.　Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Plan complies fully with the requirements of section 1123(a)(7) of the Bankruptcy Code. Section 8.5 of the Plan provides for the selection of the initial board of directors of New WCI. Under Sections 8.7 of the Plan, the current officers of WCI shall continue in such positions after the Effective Date with New WCI in accordance with the New WCI Employment Agreements, if any, and applicable law. Sections 9.1, 10.1 and 11.1 of the Plan provide for the selection of the Plan Trustee, Creditor Trustee and Chinese Drywall Trustee, respectively. Sections 10.5 and 11.5 of the Plan provide for the selection of the members of the Creditor Trust Advisory Board and the Chinese Drywall Trust Advisory Board, respectively. All of these provisions are consistent with the interests of the Debtors' stakeholders.

X.　Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate and consistent with the provisions of the Bankruptcy Code.

Y.　Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The

---

[4]　The New WCI Group is expected to consist of the following entities after the Effective Date: WCI 2009 Corporation (to be renamed WCI Communities, Inc.); WCI 2009 Management, LLC (to be renamed WCI Communities Management, LLC); WCI 2009 Asset Holding, LLC (to be renamed WCI Communities, LLC); First Fidelity Title, Inc.; Watermark Realty Referral, Inc.; Watermark Realty, Inc.; WCI Realty, Inc.; WCI Realty Connecticut, Inc.; WCI Realty New Jersey, Inc.; WCI Realty New York, Inc.; Financial Resources Group, Inc.; WCI Mortgage LLC; Pelican Landing Golf Resort Ventures, Inc.; Pelican Landing Golf Resort Ventures Limited Partnership; Pelican Landing Timeshare Ventures Limited Partnership; Tiburon Golf Ventures Inc.; Tiburon Golf Ventures Limited Partnership; Spectrum Eastport LLC; Eastport Home & Land Company LLC; Renaissance at Oak Creek Club, LLC; Four Corners Sewage Works Corporation; Four Corners Water Works Corporation; and WCI Communities Rivington, LLC.

Plan complies fully with the requirements of section 1129(a)(2) of the Bankruptcy Code. Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of title 11, including, specifically, sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order governing notice, disclosure and solicitation in connection with the Plan, the Disclosure Statement, the Plan Documents and all other matters considered by the Court in connection with the Cases.

Z.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Plan complies fully with the requirements of section 1129(a)(3) of the Bankruptcy Code. Having examined the totality of the circumstances surrounding the Plan, the Court has determined that the Plan was proposed in good faith and not by any means forbidden by law. The Plan achieves the rehabilitative and reorganizational goals of the Bankruptcy Code by restructuring the Debtors' obligations and providing the means through which the Debtors' businesses may operate as a viable enterprise. Attendant to this operation of the enterprise is the ability to preserve jobs and continue business operations through the New WCI Group. The Plan is the result of extensive arm's-length discussions, debate and/or negotiations among the Debtors and key stakeholders and is overwhelmingly supported by the creditors and other parties in interest in these Cases. It is clear that the Plan promotes the rehabilitative objectives and purposes of the Bankruptcy Code.

AA.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). The Plan complies fully with the requirements of section 1129(a)(4) of the Bankruptcy Code. Section 6.2 of the Plan clearly provides that each Professional Person who holds or asserts a Fee Claim will be required to file with the Court, and serve upon all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date. Failure to file and serve such notice timely and properly results in the Fee Claim being forever barred and discharged. A Fee

18

Claim in respect of which a Fee Application has been properly filed and served pursuant to

Section 6.2(b) of the Plan will become an Allowed Administrative Claim only to the extent

allowed by an order of this Court.  Pursuant to Section 18.16 of the Plan, no award or

reimbursement of attorneys' fees or related expenses or disbursements will be allowed on, or in

connection with, any Claims, except as set forth in the Plan or as ordered by the Court.  This

Court previously approved interim application procedures under section 331 of the Bankruptcy

Code, pursuant to which the Court authorized and approved the payment of certain fees and

expenses of professionals retained in the Cases.  All such fees and expenses, as well as all other

accrued fees and expenses of professionals through the Effective Date, remain subject to final

review for reasonableness by the Court under applicable provisions of the Bankruptcy Code.

The foregoing procedures for this Court's review and ultimate determination of fees and

expenses paid satisfy the objectives of section 1129(a)(4) of the Bankruptcy Code.

BB.    Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Plan complies

fully with the requirements of section 1129(a)(5) of the Bankruptcy Code.  Section 8.5 of the

Plan describes the process pursuant to which the members of the board of directors for New WCI

will be determined.  Section 8.7 of the Plan states that New WCI ManagementCo and New WCI

AssetCo will enter into a management agreement, in a form acceptable to the Prepetition

Lenders, pursuant to which New WCI ManagementCo will manage the assets of New WCI

AssetCo.  Section 8.7 of the Plan provides that the current officers of WCI will continue in such

positions after the Effective Date with New WCI in accordance with the New WCI Employment

Agreements, if any, and applicable law.  Further, pursuant to Section 8.7 of the Plan and subject

to the New WCI Employment Agreements, if any, and applicable law, from and after the

Effective Date, the officers of New WCI shall be selected and appointed by the board of

19

directors of New WCI, in accordance with, and pursuant to, the provisions of applicable law and the New WCI Constituent Documents. The members of the initial board of directors of New WCI were disclosed in the Certificate of Incorporation filed on August 14, 2009, as supplemented by the disclosures on the record at the Confirmation Hearing. Further, the nature of the compensation of any insiders has been disclosed, including through the filing of the New WCI Employee Incentive Programs as a Plan Document [Docket No. 2268], as supplemented by the filing with the Court on August 25, 2009 [Docket No. 2341] and the disclosures on the record at the Confirmation Hearing. Such compensation, including the New WCI Employee Incentive Programs, is reasonable and appropriate and should be approved, subject to ratification by the board of directors of New WCI. The identification of the proposed officers and directors of New WCI and compensation for any insiders satisfies section 1129(a)(5) of the Bankruptcy Code.

CC.     No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan complies fully with the requirements of section 1129(a)(6) of the Bankruptcy Code. Pursuant to Section 18.21, the Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Therefore, the provisions of section 1129(a)(6) of the Bankruptcy Code are inapplicable and thus satisfied.

DD.     Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The Plan complies fully with the requirements of section 1129(a)(7) of the Bankruptcy Code. As set forth fully in the Liquidation Analysis and by the evidence adduced in the Confirmation Hearing, the "best interests" test is satisfied as to all impaired classes of Claims and Equity Interests. Furthermore, a liquidation under chapter 7 as set forth in the Liquidation Analysis would profoundly and adversely affect the ultimate proceeds available for distribution to all holders of Allowed Claims in the Cases. Moreover, the increased costs associated with a liquidation under chapter 7 would

20

substantially reduce the proceeds available for distribution. These costs would include, among

other things, administrative fees and costs payable to a trustee in bankruptcy and professional

advisors to such trustee. Additionally, consummation of the Plan is not likely to be followed by

liquidation or the need for further financial reorganization. In the context of the erosion of the

asset values and the increased costs and delay associated with the administration of a chapter 7

case, confirmation of the Plan provides each rejecting creditor and interest holder with a

recovery that is not less than such holder would receive in a chapter 7 liquidation of the Debtors.

Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(7) of the

Bankruptcy Code. Therefore, the "best interests" test is satisfied with respect to each of these

classes.

EE.     Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(8)). Class 7 – WCI Equity

Interests is deemed to have rejected the Plan pursuant to section 1126(g). Accordingly, section

1129(a)(8) has not and cannot be satisfied. Further, the Class 3 Non-Accepting Classes did not

vote to accept the Plan. The Plan, however, is still confirmable because it satisfies the

nonconsensual confirmation provisions of section 1129(b), as set forth below.

FF.     Treatment of Administrative, Priority and Tax Claims (11 U.S.C. § 1129(a)(9)).

The Plan complies fully with the requirements of section 1129(a)(9) of the Bankruptcy Code.

Consistent with section 1129(a)(9)(A), on the Plan Distribution Date, each holder of an Allowed

Administrative Claim shall receive (i) the amount of such holder's Allowed Administrative

Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the

Debtors and such holder; provided, that such treatment shall not provide a return to such holder

having a present value as of the Effective Date in excess of such holder's Allowed

Administrative Claim; provided, further, that an Administrative Claim representing a liability

21

incurred in the ordinary course of business of the Debtors may be paid at the Debtors' election in the ordinary course of business. In addition, the Plan provides that the DIP Claims will be Allowed Administrative Claims on the Effective Date and will be paid in Cash in full on the Effective Date. As of the date hereof, such DIP Claims have been paid in full and are satisfied. As required by section 1129(a)(9)(B) of the Bankruptcy Code, Section 5.1(a) of the Plan provides that, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable, and contractual rights of each holder of an Allowed Priority Claim in respect of such Claim shall be fully reinstated and retained, and such holder of an Allowed Priority Claim shall be paid on the Plan Distribution Date in full in Cash. Consistent with section 1129(a)(9)(C) of the Bankruptcy Code, Section 6.3 of the Plan provides that, at the election of the Debtors, each holder of an Allowed Tax Claim will receive in full satisfaction of such Allowed Tax Claim (a) payments in Cash, in regular installments over a period ending not later that five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder; or (c) such other treatment as may be agreed upon in writing by such holder; provided, that such agreed upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Tax Claim or that is less favorable than the treatment provided to the most favored nonpriority Unsecured Claims under the Plan. Section 6.3 of the Plan also provides for a permanent injunction in the Confirmation Order against any holder of an Allowed Tax Claim prohibiting them from commencing or continuing any actions against any responsible person or officer or director of the Debtors that otherwise would be liable to such holder for payment of a Tax Claim so long as the Debtors are

MIAMI 833380 (2K)

in compliance with Section 6.3. Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

GG.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)). The Plan complies fully with the requirements of section 1129(a)(10) of the Bankruptcy Code. For each of the Debtors, at least one class of impaired creditors accepted the Plan. Specifically, Classes 2, 3 (except Classes 3C, 3T, 3AAA, and 3KKK), 4, 5, and 6 have voted to accept the Plan.

HH.    Feasibility (11 U.S.C. § 1129(a)(11)). The Plan complies fully with the requirements of section 1129(a)(11) of the Bankruptcy Code. Based on the Record before the Court, the Court concludes that the Debtors will have sufficient means to meet all of their obligations under the Plan. The Record establishes that the reorganized Debtors will emerge from bankruptcy as a viable, financially healthy business enterprise, unlikely to be in need of further financial reorganization. Based on the foregoing findings and conclusions, the Plan satisfies the feasibility standard of section 1129(a)(11).

II.    Payment of Fees (11 U.S.C. § 1129(a)(12)). The Plan complies fully with the requirements of section 1129(a)(12) of the Bankruptcy Code. Section 18.1 of the Plan provides for the payment of all statutory fees by the Debtors on or before the Effective Date. The Plan accordingly satisfies section 1129(a)(12) of the Bankruptcy Code.

JJ.    Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16)). Sections 1129(a)(13)-(16) are inapplicable as the Debtors (i) do not provide retiree benefits[5] (1129(a)(13)), (ii) have no domestic support obligations (1129(a)(14)), (iii) are not individuals (1129(a)(15)), and (iv) are

---

[5]    As defined in section 1114 of the Bankruptcy Code, "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependants, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under the Bankruptcy Code.

for-profit businesses (1129(a)(16)).

KK. Nonconsensual Confirmation (Cramdown) of Non-Accepting Classes (11 U.S.C. § 1129(b)). The Plan does not discriminate unfairly and is fair and equitable to each Class of Claims or Equity Interests that has not accepted the Plan, specifically including the Class 3 Non-Accepting Classes and Class 7 – WCI Equity Interests. Further, within their respective Classes, there exists no unfair discrimination of any of the holders of Claims or Equity Interests. Finally, the Plan does not violate the "absolute priority" rule contained in section 1129(b)(2).

LL. Confirmation of Only One Plan (11 U.S.C. § 1129(c)). The Plan (including previous versions thereof) is the only plan that has been filed in these Cases which has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

MM. Principal Purpose of Plan (11 U.S.C. § 1129(d)). The Plan complies fully with the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

NN. Satisfaction of Confirmation Requirements. The Plan satisfies all of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and should be confirmed.

OO. Good Faith Solicitation (11 U.S.C. § 1125(e)). Based on the record in these Cases, the Debtors, the Creditors' Committee and its members (in their capacity as such), the Indenture Trustees, the Prepetition Lenders, the Prepetition Agents, and the Prepetition Lender Steering Committee, and each of their respective current or former officers, directors, members,

employees, agents, attorneys, advisors, accountants, restructuring consultants, financial advisors, and investment bankers have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan.

PP.     Conditions Precedent to Confirmation.  Upon entry of this Confirmation Order, all conditions precedent to confirmation of the Plan contained in Section 14.1 of the Plan, if not waived pursuant to Section 14.3 of the Plan, shall be, and hereby are satisfied.

QQ.     Plan Documents.  The Plan Documents, as they may be amended as contemplated and permitted by the Plan, have been negotiated in good faith and are, in the judgment of the parties, necessary and appropriate to effectuate the Plan and the Court so finds.

RR.     Plan Consolidation.  The consolidation of the Debtors for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions is appropriate.  Furthermore, no holder of a Claim or Equity Interest has objected or opposed such consolidation.

## ORDER

## Confirmation of the Plan

1.     Pursuant to section 1127 of the Bankruptcy Code, the Modifications are approved, and pursuant to section 1129 of the Bankruptcy Code, the Plan is hereby CONFIRMED.  Each of the Objections to the Plan not otherwise withdrawn, resolved or otherwise disposed of (including the resolutions set forth in paragraph 71 of this Confirmation Order), is OVERRULED and denied.  All withdrawn Objections are deemed withdrawn with prejudice.

2.     The consolidation described in Section 2.1 of the Plan is approved.

MIAMI 833380 (2K)

3. Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of the Cases and was in compliance with the Bankruptcy Code and the Bankruptcy Rules.

4. The following are hereby incorporated by reference into and are an integral part of this Confirmation Order: (a) the Plan, (b) the exhibits to the Plan, and (c) the Plan Documents. The failure to reference any particular Plan Document, or any provision of a Plan Document or the Plan in this Confirmation Order will have no effect on the Court's approval and authorization of, or the validity, binding effect or enforceability of, the Plan and the Plan Documents in their entirety.

### Compromises and Settlements Under the Plan

5. The settlements and compromises set forth in the Plan, including, without limitation, Article II of the Plan, are approved in all respects.

6. The grouping of the Debtors pursuant to Section 2.1 of the Plan for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Equity Interests in the Debtors is approved in its entirety.

7. The treatment of Intercompany Claims, Guaranty Claims and Joint Liability Claims as provided in Article II of the Plan is approved in its entirety.

### Classification and Treatment

8. All Claims and Equity Interests shall be, and hereby are, classified and treated as set forth in the Plan. The Plan's classification scheme shall be, and hereby is, approved.

9. The treatment of all Claims and Equity Interests as provided in the Plan and the Plan Documents shall be, and hereby is, approved.

26

**Administrative Claims**

10.     The holder of an Administrative Claim, other than (i) a DIP Claim, (ii) a Fee

Claim, (iii) a liability incurred and payable in the ordinary course of business by a Debtor (and

not past due), or (iv) an Administrative Claim that has been Allowed on or before the Effective

Date, must file with the Court and serve on the Debtors, the Creditors' Committee and the Office

of the United States Trustee, notice of such Administrative Claim within forty (40) days after

service of Notice of Confirmation.  Such notice must include at a minimum (i) the name of the

Debtor(s) purported to be liable for the Claim, (ii) the name of the holder of the Claim, (iii) the

amount of the Claim, and (iv) the basis of the Claim.  **Failure to file and serve such notice**

**timely and properly shall result in the Administrative Claim being forever barred and**

**discharged.**

11.     An Administrative Claim with respect to which notice has been properly filed and

served pursuant to Section 6.2(a) of the Plan shall become an Allowed Administrative Claim if

no objection is filed within thirty (30) days after the later of (i) the Effective Date, (ii) the date of

service of the applicable notice of Administrative Claim or (iii) such later date as may be (A)

agreed to by the holder of such Administrative Claim or (B) approved by the Court on motion of

a party in interest, without notice or a hearing.  If an objection is filed within such 30-day period

(or any extension thereof), the Administrative Claim shall become an Allowed Administrative

Claim only to the extent allowed by Final Order.

12.     Each Professional Person who holds or asserts a Fee Claim shall be required to

file with the Court, and serve on all parties required to receive notice, a Fee Application within

forty-five (45) days after the Effective Date. **The failure to timely file and serve such Fee**

**Application shall result in the Fee Claim being forever barred and discharged.** A Fee Claim

in respect of which a Fee Application has been properly filed and served pursuant to Section

27

6.2(b) of the Plan shall become an Allowed Administrative Claim only to the extent allowed by order of the Court.

### Enforceability of Plan and Plan Documents

13.     Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and all Plan-related documents (including, but not limited to, the Plan Documents) shall be, and hereby are, valid, binding and enforceable notwithstanding any otherwise applicable nonbankruptcy law. Each of the Plan Documents (to the extent not already approved by order of this Court) is hereby approved. The Debtors and the New WCI Group may modify, amend or enter into the Plan Documents, without further order of the Court, in accordance with the provisions of the Plan.

### Authorization to Implement the Plan

14.     Upon the entry of this Confirmation Order, the New WCI Group, the Debtors and their Affiliates are authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and to execute, enter into, or otherwise make effective all documents arising in connection therewith, including, without limitation, the Plan Documents (as they may be amended or modified as contemplated or permitted by the Plan), prior to, on and after the Effective Date. All such actions taken or caused to be taken shall be, and hereby are, authorized and approved by the Court such that no further approval, act or action need to be taken under any applicable law, order, rule or regulation, including without limitation, any action otherwise required by the stockholders or directors of the New WCI Group, the Debtors and their Affiliates.

15.     The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of any Debtor, the New WCI Group or their Affiliates or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate

MIAMI 833380 (2K)

and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

16.     The Initial Board of directors of New WCI is authorized to serve, is duly qualified and shall be empowered to act as permitted by applicable non-bankruptcy law on the Effective Date without further reference to the Court.

**Cancellation of Instruments and Securities**

17.     Upon the occurrence of the Effective Date, the Prepetition Notes and the indentures pursuant to which such Prepetition Notes were issued shall be cancelled as of the Effective Date; provided, however, that the provisions of the indentures and the Prepetition Notes relating to the following matters shall continue in effect: (i) except as specifically modified by the Plan, subordination, (ii) the Indenture Trustee's rights and obligations relating to the Allowed Prepetition Note Claims and the holders of Prepetition Notes, including the right to make distributions to the holders of Prepetition Notes and to perform such other necessary functions with respect thereto and any right to appear and be heard in the Cases and any related appeals, (iii) the protections that each Indenture Trustee enjoys as against its respective holders, including any charging lien rights against distributions, and (iv) any right to indemnification, contribution or other claim that the Indenture Trustee may have under the applicable indenture.

18.     As a condition to receiving any Plan Distribution, on or before the Plan Distribution Date, the holder of an Allowed Claim evidenced by a certificate, instrument or note, including, but not limited to Prepetition Note Claims, other than any such certificate, instrument or note that is being reinstated or being left unimpaired under the Plan, shall (a) surrender such certificate, instrument or note representing such Claim, except to the extent assumed by the Debtors; provided, however, that with respect to the holders of Allowed Prepetition Note Claims, it shall surrender such Prepetition Note to its Indenture Trustee or in the event that such

29

Prepetition Note(s) are held in the name of, or by a nominee of, The Depository Trust Company, the Debtors shall seek the cooperation of The Depository Trust Company to provide appropriate instructions to the Indenture Trustee, and (b) execute and deliver such other documents as may be necessary to effectuate the Plan.  Such certificate, instrument or note shall thereafter be cancelled and extinguished and shall represent only the right, if any, to participate in the distributions contemplated by the Plan.

19.     On the Effective Date, the existing Equity Interests in WCI and New WCI shall be cancelled.

### Separate Existence/Revesting and Transfer of Assets

20.     Except as otherwise provided in Article VIII of the Plan, each of the Debtors shall continue to exist after the Effective Date as a separate entity until such entity is dissolved, with all the powers available to such legal entity, in accordance with applicable law.  On or after the Effective Date, the Debtors and the New WCI Group may, within their sole and exclusive discretion, take such action as permitted by applicable non-bankruptcy law as they determine is reasonable and appropriate.

21.     The following transactions and conveyances, assignment and transfers of property (collectively, the "Transfers") shall occur and be implemented pursuant to section 1123(a)(5) of the Bankruptcy Code on or prior to the Effective Date:

(a)     Except for (i) Avoidance Actions and $1,000,000 in Cash, which will be transferred to the Creditor Trust, and (ii) Insurance Coverage Actions, Insurance Recoveries, Chinese Drywall Actions, and $900,000 in Cash, which will be transferred to the Chinese Drywall Trust, on or prior to the Effective Date the Debtors, other than (i) First Fidelity Title, Inc., (ii) WCI Realty, Inc., (iii) WCI Realty Connecticut, Inc., (iv) WCI Realty New Jersey, Inc., (v) WCI Realty New York, Inc., (vi) Renaissance at Oak Creek Club, LLC, and (vii) Watermark Realty Referral, Inc. (collectively, the "Transferred Debtors") shall transfer substantially all of their Assets (other than the Assets defined as "Excluded Assets" in the immediately following paragraph) to WCI.

, and (viii) WCI Towers Northeast USA, Inc.

30

(b)     For purposes of the preceding paragraph, Excluded Assets shall mean (i) Equity Interests in Debtors other than the Transferred Debtors, WCI Realty Maryland, Inc. (the Equity Interests of which will be transferred by WCI Realty, Inc. to Bay Colony Gateway, Inc., but not to WCI) and WCI Title, Inc. (the Equity Interests of which will, not withstanding the last parenthetical in the preceding paragraph, be transferred by First Fidelity Title, Inc. to WCI) and (ii) Equity Interests in non-Debtor direct or indirect subsidiaries of WCI other than Financial Resources Group, Inc. (which owns and will continue to own a 49.9% interest in WCI Mortgage, LLC), Watermark Realty, Inc., Pelican Landing Golf Resort Ventures, Inc., Tiburon Golf Ventures, Inc., Pelican Landing Golf Resort Ventures Limited Partnership, Pelican Landing Timeshare Ventures Limited Partnership, Tiburon Golf Ventures Limited Partnership and Spectrum Eastport, LLC (which owns and will continue to own a 50% interest in Eastport Home and Land Company, LLC) (collectively, the "Transferred Non-Debtors").

(c)     In addition to the Assets transferred by Debtors to WCI as set forth in (a) and (b) above, on or prior to the Effective Date East Fishkill Home & Land Company, LLC shall transfer substantially all of its Assets (including its 100 percent Equity Interest in Four Corners Sewage Works Corporation and Four Corners Water Works Corporation) to WCI and Wilson Park Home & Land Company, LLC will transfer substantially all of its Assets to WCI if WCI indirectly owns 100 percent of the Equity Interests in such transferor entities on or prior to the Effective Date. In the event the transfers set forth in this paragraph do not occur on or prior to the Effective Date, Spectrum East Fishkill LLC and Spectrum Wilson Park LLC shall be deemed Transferred Non-Debtors.

(d)     After the foregoing transfers, WCI shall transfer or cause to be transferred on the Effective Date (i) all assets relating to that certain project known as Rivington located in Fairfield County, Connecticut to WCI Communities Rivington, LLC and (ii) substantially all of its remaining Assets, including the Equity Interests in the Transferred Debtors and the Transferred Non-Debtors, to New WCI AssetCo and then, as set forth in Section 8.2(e) of the Plan, the Equity Interests of WCI shall be transferred to the Plan Trust. The Assets transferred as set forth in the preceding sentence (i) shall exclude (a) the Excluded Assets, (b) Assets that are under contract, as of the Effective Date, to be sold to a third party; provided, however, that if such Assets under contract are not sold and closed to such third party, such Assets shall be transferred to New WCI AssetCo and (c) certain Assets which WCI has determined have nominal value and that are required to be conveyed to homeowners associations, governmental bodies or similar grantees in the future, and (ii) shall include, without limitation, the right to proceeds received by WCI after the Effective Date from (a) any sale of Assets to a third party under contract as of the Effective Date and (b) any refunds of amounts paid or

31

placed on deposit prior to the Effective Date, including, without limitation escrow deposits, performance deposits and tax refunds.

(e)     All employees of the Debtors who continue to be employed in connection with the Debtors' Assets after the Effective Date shall be employees of New WCI ManagementCo. Each subsidiary of New WCI, including New WCI ManagementCo and New WCI AssetCo, shall become a New WCI Guarantor unless the Prepetition Lenders agree otherwise.

22.     Further, the Parkland Stipulation is approved pursuant to Bankruptcy Rule 9019 and the Debtors are authorized to perform in accordance with its terms. Pursuant to the Parkland Stipulation, the Real Property (as therein defined) is hereby conveyed, assigned and transferred to the Equity Club (as defined in the Parkland Stipulation), upon the Effective Date without further action or approval by any Person. Such conveyance will be exempt from the imposition of any transfer tax pursuant to section 1146(a) of the Bankruptcy Code. The directors, officers and employees of the New WCI Group are authorized to take all actions, including, but not limited to, the payment of any valid prepetition liens on the Real Property and other expenses associated with the transfer of the Real Property as may be required by the New Agreements, executing deeds, assignments, bills of sale and other documents of, conveyance, assignment or transfer to evidence or otherwise confirm the effectuation of the foregoing conveyance, assignment and transfer.

23.     The Assets subject to the Transfers are hereby conveyed, assigned and transferred to the recipients specified in the Plan upon the Effective Date without further action or approval by any Person and, pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, the foregoing Transfers shall be free and clear of all liens, claims and encumbrances. To the extent necessary to evidence or otherwise confirm the effectuation of any of the Transfers, (i) the Plan Trustee shall execute such documents as reasonably requested by the New WCI Group and otherwise provide its full cooperation with the New WCI Group, (ii) the directors, officers and employees

32

of the New WCI Group are authorized to take all actions, including, but not limited to, executing deeds, assignments, bills of sale and other documents of, conveyance, assignment or transfer in the name of WCI and/or Real Estate Corporation, as applicable, and (iii) the Court may enter additional orders from time to time as may be required to implement the Transfers contemplated under the Plan and this Confirmation Order.

24.     On and after the occurrence of the Effective Date, except as otherwise provided in the Plan, the New WCI Group may operate their business and may use, acquire and dispose of their Assets free of any restrictions of the Bankruptcy Code.

25.     The mortgages securing the New WCI Senior Secured Term Notes in the principal amount of $300 million and the New WCI Senior Secured Subordinated PIK Notes in the principal amount of $150 million shall be first and second priority liens respectively, subject only to certain customary liens and encumbrances but not subject to any filed or inchoate mechanic's and materialmen's liens.

26.     The transfers contemplated and any financings, mortgages, equity pledges and other liens and security interests made or granted pursuant to the Plan or this Confirmation Order shall be considered made for reasonably equivalent value and will not be set aside as a preference or fraudulent conveyance under the Bankruptcy Code, state fraudulent transfer or fraudulent conveyance law or similar creditor's rights laws.

### Retention of Causes of Action

27.     Except for Avoidance Actions, Insurance Coverage Actions and Chinese Drywall Actions, and as otherwise set forth in the Plan, all Causes of Action of any of the Debtors and their respective Estates shall, upon the occurrence of the Effective Date, be transferred to, and be vested in, New WCI. Except as otherwise provided in the Plan, the rights of New WCI to

33

commence, prosecute or settle such Causes of Action, in its sole discretion, shall be preserved notwithstanding the occurrence of the Effective Date.

28.     No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that New WCI will not pursue any and all available Causes of Action against them. New WCI and the Estates expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise provided in the Plan. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors and New WCI expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan by reason of entry of this Confirmation Order.

### Disbursing Agent/Distributions

29.     Upon the occurrence of the Effective Date, New WCI shall be appointed to serve as the Disbursing Agent and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan. Pursuant to the terms and provisions of and except as otherwise provided in the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan or any Plan Document on the relevant Plan Distribution Date therefor.

30.     Except as otherwise provided in the Plan, Plan Distributions shall be made to the holders of Allowed Claims as reflected in the registry of claims maintained by the Claims Agent on the Effective Date. The Disbursing Agent, the Creditor Trustee, the Indenture Trustees, the Chinese Drywall Trustee and their respective agents, as applicable, shall have no obligation to recognize any transfer of a Claim after the Effective Date.

MIAMI 833380 (2K)

31.      Except as otherwise ordered by this Court or as provided in the Plan, the amount of any reasonable fees and expenses incurred (or to be incurred) by the Disbursing Agent on or after the Effective Date (including, but not limited to, taxes) shall be paid when due. Professional fees and expenses incurred by the Disbursing Agent from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business. Any dispute regarding compensation shall be resolved by agreement of the parties, or if the parties are unable to agree, as determined by this Court.

32.      Distributions shall be made by the Creditor Trustee on account of the Creditor Trust Interests issued to the holders of Allowed Prepetition Note Claims. The Creditor Trustee shall make any such distributions to the Indenture Trustees, or their agents, successors and assigns, who shall distribute such property in accordance with the applicable indenture, subject to Section 12.10(d) of the Plan. For purposes of making all such distributions, the record date shall be the Effective Date and the transfer ledgers in respect of the Prepetition Notes shall be closed as of close of business on the Effective Date. The Disbursing Agent, the Creditor Trustee, the Indenture Trustees, and their respective agents, as applicable, shall have no obligation to recognize any transfer after the Effective Date of a Prepetition Note Claim. The Indenture Trustees shall be compensated for all services and disbursements related to distributions pursuant to this Plan (and for the related fees and expenses of any agent, counsel, or other professional engaged by the Indenture Trustee with respect to administering or implementing such distributions), by the Debtors to the extent that such costs are incurred prior to the Effective Date and subject to the limitations set forth in the Plan or by the Creditor Trustee from the Creditor Trust if such costs are incurred from and after the Effective Date, in the ordinary course upon the presentation of invoices by the Indenture Trustee. Subject to the procedures set forth in the Plan

MIAMI 833380 (2K)

and/or the Creditor Trust, compensation of the Indenture Trustees for services relating to distributions under the Plan shall be made without the need for filing any application or request with, or approval by, this Court.

33.    Upon the occurrence of the Effective Date, the Claims of the applicable Prepetition Agents shall be, for all purposes under the Plan, including, without limitation, the right to receive distributions under the Plan, substituted for all Claims of individual holders of Allowed Prepetition Lender Claims. On the Plan Distribution Date, all Prepetition Lender Claims shall be settled and compromised in exchange for the distribution to the Prepetition Agents of the applicable Plan Distributions to the holders of Allowed Prepetition Lender Claims as specified in Section 5.1(b) of the Plan; provided, that the Prepetition Agents shall return to the Disbursing Agent any Plan Distributions held on account of any Allowed Prepetition Lender Claims as to which the requirements of Section 12.11 of the Plan are not satisfied by the first anniversary of the Effective Date.

34.    Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in the Plan, this Confirmation Order, the DIP Order, or as otherwise required by this Court or by applicable law. No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as set forth in the Plan or as ordered by this Court.

35.    The Disbursing Agent shall notify and consult in good faith with the Creditor Trustee with respect to the proposed settlement or compromise of an Unsecured Claim, other than a Chinese Drywall Claim, where the proposed Allowed amount of such Unsecured Claim is greater than or equal to $250,000. Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Disbursing Agent shall

have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Court, other than (a) the settlement or compromise of a Claim where the proposed Allowed amount of such Claim is greater than or equal to $1,000,000, (b) any settlement or compromise of a Claim or Cause of Action that involves an Insider, and (c) the settlement or compromise of an Unsecured Claim, other than a Chinese Drywall Claim, where the proposed Allowed amount of such Unsecured Claim is greater than or equal to $250,000 and the Creditor Trustee has notified the Disbursing Agent in writing, within five (5) business days of receiving notice from the Disbursing Agent of the proposed settlement or compromise, that it objects to the proposed settlement or compromise.

### Administration of the Plan Trust

36.     The Plan Trust Declaration, substantially in the form filed as a Plan Document, is hereby approved.

37.     The appointment of Aurin Primack as the Plan Trustee is hereby approved. The Plan Trustee shall be compensated in the manner set forth in and consistent with the Plan Trust Declaration. The Plan Trustee shall have all powers, rights, duties and protections afforded the Plan Trustee under the Plan and any applicable Plan Document.

38.     On the Effective Date, the equity interests in WCI shall be transferred to the Plan Trust. On and after the Effective Date, the Plan Trustee shall have the duty and authority to take all actions, including, but not limited to, the retention of professionals and the filing of appropriate tax returns, deemed by the Plan Trustee to be necessary or appropriate to dissolve the Debtors as required by applicable non-bankruptcy law.

39.     To the extent the legal name of WCI and the other Debtors has not been changed prior to their transfer to the Plan Trust, the Plan Trustee shall have the duty and authority to

MIAMI 833380 (2K)

change the legal name of WCI and the other Debtors to another legal name that does not contain the word "WCI."

40.     The Plan Trustee, together with its officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and Equity Interests, and parties in interest, from any and all Causes of Action, arising out of the discharge of the powers and duties conferred upon the Plan Trustee by the Plan Trust Declaration, the Plan, any Final Order of this Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Plan Trustee's gross negligence or willful misconduct. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any claim or Cause of Action against the Plan Trustee or its officers, directors, employees, agents, and representatives for making payments in accordance with the Plan Trust Declaration, or for liquidating assets to make payments under the Plan Trust Declaration.

## Administration of the Creditor Trust

41.     The Creditor Trust Declaration, substantially in the form filed as a Plan Document and entitled "WCI Communities, Inc. Creditor Trust Agreement" (the "Creditor Trust Declaration") is hereby approved and the Creditor Trustee, the Debtors and New WCI are authorized to execute and deliver and empowered to perform under, consummate and implement, the Creditor Trust Declaration, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Creditor Trust Declaration, and to take all further actions as may be reasonably requested by the Creditor Trustee for the purpose of assigning, transferring, granting, conveying, conferring or reducing to possession the Trust Assets (as defined in the Creditor Trust Declaration) to the Creditor Trust, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Creditor Trust Declaration.

MIAMI 833380 (2K)

42.     The appointment of Ocean Ridge Capital Advisors, LLC ("Ocean Ridge") as the Creditor Trustee is hereby approved. The Creditor Trustee shall be compensated in the manner set forth in and consistent with the Creditor Trust Declaration. The Creditor Trustee is authorized to execute the engagement letter with Ocean Ridge in the form annexed as Exhibit A to the Creditor Trust Declaration on behalf of the Creditor Trust. The Creditor Trustee shall have all powers, rights, duties and protections afforded to the Creditor Trustee under the Plan, this Confirmation Order, the Creditor Trust Declaration and any other applicable Plan Document.

43.     The Creditor Trustee shall have the power to administer the assets of the Creditor Trust in a manner consistent with the Creditor Trust Declaration and the Creditor Trustee shall be the estate representative designated to prosecute any and all Avoidance Actions transferred to the Creditor Trust and may commence, prosecute, or continue, in any appropriate court or tribunal, any suit or other proceeding for the enforcement of any Avoidance Action transferred to the Creditor Trust. Nothing in the Plan shall constitute a waiver of the rights, if any, of the Creditor Trust to a jury trial with respect to any Avoidance Action. Without limiting the generality of the foregoing, the Creditor Trustee shall (a) hold, administer and prosecute the assets of the Creditor Trust and any proceeds thereof; (b) have the power and authority to retain, as an expense of the Creditor Trust, attorneys, advisors, other professionals and employees as may be appropriate to perform the duties required of the Creditor Trustee under the Plan or in the Creditor Trust Declaration; (c) make distributions as provided in the Creditor Trust Declaration; and (d) provide periodic reports and updates regarding the status of the administration of the Creditor Trust. The Creditor Trustee shall be deemed a Disbursing Agent under the Plan when making distributions to holders of Creditor Trust Interests pursuant to the Creditor Trust Declaration.

MIAMI 833380 (2K)

44.     Neither the entry of this Confirmation Order nor the execution of any of the documents required or contemplated hereunder or by the Plan shall constitute a waiver, estoppel, res judicata, release, relinquishment, abandonment or any other abrogation of any objection, defense, offset or counterclaim by the Creditor Trustee.

45.     The appointment of Douglas P. Heyman and Todd Pulvino as the initial members of the Creditor Trust Advisory Board is hereby approved.

### Administration of the Chinese Drywall Trust

46.     The Chinese Drywall Trust Declaration, substantially in the form filed as a Plan Document, is hereby approved.

47.     The appointment of Robert C. Pate as the Chinese Drywall Trustee is hereby approved. The Chinese Drywall Trustee shall be compensated in the manner set forth in and consistent with the Chinese Drywall Trust Declaration. The Chinese Drywall Trustee shall have all powers, rights, duties and protections afforded the Chinese Drywall Trustee under the Plan and any applicable Plan Document.

48.     The Chinese Drywall Trustee shall have the power to administer the assets of the Chinese Drywall Trust in a manner consistent with the Chinese Drywall Trust Declaration, and the Chinese Drywall Trustee, in consultation with the Chinese Drywall Trust Advisory Board, shall be the estate representative designated to prosecute any and all Insurance Coverage Actions and Chinese Drywall Actions transferred to the Chinese Drywall Trust, and to object to and resolve objections to Chinese Drywall Claims pursuant to the claims liquidation procedures established by the Chinese Drywall Trustee, after consultation with and approval by the Chinese Drywall Trust Advisory Board. Without limiting the generality of the foregoing, the Chinese Drywall Trustee shall (a) hold, administer and prosecute the assets of the Chinese Drywall Trust and any proceeds thereof; (b) have the power and authority to retain, as an expense of the

40

Chinese Drywall Trust, attorneys, advisors, other professionals and employees as may be appropriate to perform the duties required of the Chinese Drywall Trustee under the Plan or in the Chinese Drywall Trust Declaration; (c) object to Chinese Drywall Claims and prosecute and resolve such objections; (d) otherwise resolve all Chinese Drywall Claims; (e) make distributions as provided in the Chinese Drywall Trust Declaration; and (f) provide periodic reports and updates regarding the status of the administration of the Chinese Drywall Trust. The Chinese Drywall Trustee shall be deemed a Disbursing Agent under the Plan when making distributions to holders of Chinese Drywall Trust Interests pursuant to the Chinese Drywall Trust Declaration. Further, except for any obligations to consult with the Creditor Trustee, the Chinese Drywall Trustee shall be deemed the Disbursing Agent in Article XIII of the Plan with respect to the filing, prosecution and resolution of objections to Chinese Drywall Claims.

49.     Upon the occurrence of the Effective Date, in exchange for the consideration provided for in the Plan, the Chinese Drywall Trust shall be deemed, without need for further action, to have assumed responsibility and liability for all Chinese Drywall Claims. The Chinese Drywall Trust shall have no recourse, claims, causes of action or right to recovery against the New WCI Group on account of the Chinese Drywall Claims.

50.     All Chinese Drywall Claims shall be processed, liquidated, and paid pursuant to the terms and provisions of the trust distribution procedures adopted and implemented by the Chinese Drywall Trustee, after consultation with the Chinese Drywall Trust Advisory Board. The sole recourse of the holder of a Chinese Drywall Claim shall be against the Chinese Drywall Trust, and such holder shall have no rights whatsoever at anytime to assert such holder's Claim against any Debtor, the New WCI Group, or the Creditor Trust.

51.    The appointment of Bruce Steckler, Michael Ryan and Jack Reise as the initial members of the Chinese Drywall Trust Advisory Board is hereby approved.

### Executory Contracts and Unexpired Leases

52.    Except as otherwise provided for in the Plan, on the Effective Date, all executory contracts and unexpired leases of the Debtors shall be, and hereby are, assumed, assumed and assigned, or rejected in accordance with Article XVI of the Plan.

53.    Inclusion of a contract, lease or other agreement on the Rejection Schedule shall constitute adequate and sufficient notice that (a) any Claims arising thereunder or related thereto shall be treated as Unsecured Claims (or Convenience Claims, as applicable) under the Plan, and (b) the Debtors are no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder. The inclusion of a contract, lease or other agreement in Section 16.1 of the Plan or on the Rejection Schedule or Assumption Schedule shall not constitute an admission by the Debtors as to the characterization of whether any such included contract, lease, or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease or other agreement are time-barred from asserting Claims against the Debtors. The Debtors reserve all rights with respect to the characterization of any such agreements.

54.    The assumption and assignment of each of the executory contracts and unexpired leases that is designated to be assumed and assigned as set forth in the Assumption Schedule or as otherwise designated as being assumed and assigned in Section 16.1 of the Plan and for which no timely objection was filed as required by Section 16.1(d) of the Plan is approved pursuant to sections 365(a), (b) and (f) of the Bankruptcy Code and any objections to such assumption and assignment are hereby deemed waived in all respects. Pursuant to section 365(k) of the

42

Bankruptcy Code, the Debtors shall have no liability for any breach of such assumed and assigned executory contract or lease occurring after such assignment, except as is specifically provided in the Plan.

55.     At the election of the Debtors, any monetary defaults under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Effective Date or as soon thereafter as practicable; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease. In the event of a timely dispute regarding: (a) the amount of any cure payments; (b) the ability to provide adequate assurance of future performance under the contract or lease to be assumed or assigned; or (c) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable.

56.     Any non-Debtor counterparty to an agreement listed on the Assumption Schedule who disputes the scheduled cure obligation contained therein was required to file with the Court, and serve upon the Debtors and the Creditors' Committee, a written objection to the cure obligation, setting forth the basis for the dispute, the alleged correct cure obligation, and any other objection related to the assumption or assumption and assignment of the relevant agreement by no later than ten (10) Business Days prior to the Confirmation Hearing. The cure obligation set forth on the Assumption Schedule is binding upon each non-Debtor counterparty that failed to file and serve an objection satisfying the requirements of this paragraph and each such non-Debtor counterparty is deemed to have waived any and all objections to the assumption or assumption and assignment of the relevant agreement as proposed by the Debtors.

43

57.     Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Court and served on the Debtors (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the Bar Date Notice, or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date, or (ii) is rejected pursuant to Article XVI of the Plan, no later than thirty (30) days after the Confirmation Date. Any such Claims for which a proof of claim is not filed and served by the deadlines set forth in the Bar Date Notice or Section 16.3 of the Plan, as applicable, will be forever barred from assertion and shall not be enforceable against the Debtors, the New WCI Group, their respective Estates, Affiliates, or Assets. Unless otherwise ordered by this Court, all such Claims that are timely filed shall be treated as Unsecured Claims (or Convenience Claims, as applicable) under the Plan subject to objection by the Disbursing Agent.

## Releases and Exculpations

58.     The releases set forth in Sections 8.14 and 8.15 of the Plan are incorporated herein by reference and shall be, and hereby are, approved, and shall be effective without further action upon the occurrence of the Effective Date. Any "opt out" of the releases contained in Section 8.15 of the Plan shall not and shall not be construed in any way to affect any other release, exculpation or injunction provided in the Plan, including without limitation the releases, exculpations and injunctions provided in Sections 8.14, 15.3, 18.2, 18.5, 18.6, 18.7, 18.23 of the Plan.

59.     The Plan Trustee, together with its officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and Equity Interests, and parties in interest, from any and all Causes of Action, arising out of the discharge

MIAMI 833380 (2K)

of the powers and duties conferred upon the Plan Trustee by the Plan Trust Declaration, the Plan, any Final Order of this Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Plan Trustee's gross negligence or willful misconduct. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any claim or Cause of Action against the Plan Trustee or its officers, directors, employees, agents, and representatives for making payments in accordance with the Plan Trust Declaration, or for liquidating assets to make payments under the Plan Trust Declaration.

60.     Except as otherwise provided in the Plan, the Disbursing Agent, together with its officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and Equity Interests, and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent (and each of its respective paying agents), by the Plan, any Final Order of this Court entered pursuant to or in furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent or its respective officers, directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan, or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan. Nothing contained herein or in Section 15.3 of the Plan shall preclude or impair any holder of an Allowed Claim or Allowed Equity Interest from bringing an action in this Court against any Debtor to compel the making of Plan Distributions contemplated by the Plan on account of such Claim or Equity Interest.

MIAMI 833380 (2K)

61.    None of the Debtors, the New WCI Group, the Creditors' Committee and its members (solely in their capacity as such), the Indenture Trustees, the Prepetition Lenders, the Prepetition Agents, the Prepetition Lender Steering Committee, or any of their respective officers, directors, members, employees, agents, representatives, advisors, attorneys or successors and assigns will have or incur any liability to any Person for any act or omission in connection with, or arising out of, the pursuit of confirmation of the Plan, the consummation of the Plan, or the implementation or administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as finally determined by the Court, and in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under the Plan.

### Retention of Jurisdiction

62.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Court shall retain and shall have exclusive jurisdiction over any matter: (a) arising under the Bankruptcy Code; (b) arising in or related to the Cases or the Plan; or (c) that relates to the matters set forth in Article XVII of the Plan.

### Effect of Confirmation

63.    The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any accrued postpetition interest, against the Debtors and the Debtors in Possession, or any of their Estates, Assets, properties, or interests in property. Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, all Claims against and Equity Interests in the Debtors and the Debtors in Possession shall be satisfied, discharged, and released in full. Neither the

46

New WCI Group nor the Debtors shall be responsible for any pre-Effective Date obligations of the Debtors or the Debtors in Possession, except those expressly assumed by the New WCI Group or any such Debtor, as applicable. Except as otherwise provided in the Plan or this Confirmation Order, all Persons shall be precluded and forever barred from asserting against the New WCI Group, the Debtors, their respective successors or assigns, or their Estates, Affiliates, Assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.

64.     Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, the Debtors, their Estates, and all successors thereto shall be deemed fully discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan. This Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, and all successors thereto. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, the New WCI Group, their Estates, or any successor thereto at any time obtained to the extent it relates to a discharged Claim, and operates as an injunction against

the prosecution of any action against the Debtors, the New WCI Group or property of the Debtors or the New WCI Group or their Estates to the extent it relates to a discharged Claim.

65.     Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtors and the New WCI Group shall be discharged from all Claims and Causes of Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims and Equity Interests shall be precluded from asserting against the New WCI Group and its Affiliates, the Debtors, their Assets, or any property dealt with under the Plan, any further Claim or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

66.     Except as otherwise provided in the Plan, New WCI and its Affiliates shall not have or be construed to have or maintain any liability, claim, or obligation that is based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the Effective Date of the Plan and no such liability, claim, or obligation for any acts shall attach to New WCI or its Affiliates.

67.     Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any document recording tax, stamp tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording tax, or other similar tax or governmental assessment to the fullest extent provided in section 1146(a) of the Bankruptcy Code.   All filing or recording officers (or any other Person with authority over

48

any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Transfers made under the Plan include, without limitation, any transfer, sale, or exchange of the Assets that is the subject of a motion or notice pursuant to section 363 of the Bankruptcy Code filed by the Debtors before the Effective Date regardless of the date the transaction is approved by the Court or the date such transfer, sale, or exchange closes. To effectuate the terms of this Confirmation Order and Section 18.13 of the Plan, this Court may enter any order necessary or appropriate to implement Section 18.13 of the Plan.

      68.    The issuance of the New WCI Common Stock, the New WCI Preferred Stock, and New WCI Common Stock as dividends under the New WCI Preferred Stock and the distribution thereof shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code. The issuance of the New WCI Senior Secured Term Notes and the New WCI Senior Secured Subordinated PIK Notes and the distribution thereof shall also be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code. Subject to applicable securities laws and the restrictions in the WCI Constituent Documents and, in the case of the New WCI Preferred A Stock, the Plan, the New WCI Common Stock and the New WCI Preferred A Stock are transferable without registration under the Securities Act unless any recipient of such securities is an "underwriter" with respect to such securities, as that term is defined in section 1145(b)(1) of the Bankruptcy Code.

### Injunctions

MIAMI 933380 (2K)

69.     On the Effective Date and except as otherwise provided in the Plan, all Persons

who have been, are, or may be holders of Claims against or Equity Interests in the Debtors shall

be permanently enjoined from taking any of the following actions against or affecting the New

WCI Group or its Affiliates, the Debtors or their Affiliates, the Estates, the Assets, or the

Disbursing Agent, or any of their current or former respective members, directors, managers,

officers, employees, agents, and professionals, successors and assigns or their respective assets

and property with respect to such Claims or Equity Interests (other than actions brought to

enforce any rights or obligations under the Plan):

> (a) commencing, conducting or continuing in any manner, directly or indirectly, any
> suit, action or other proceeding of any kind (including, without limitation, all
> suits, actions, and proceedings that are pending as of the Effective Date, which
> must be withdrawn or dismissed with prejudice);

> (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or
> means, whether directly or indirectly, any judgment, award, decree or order;

> (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly,
> any encumbrance; and

> (d) asserting any setoff, right of subrogation or recoupment of any kind; provided,
> that any defenses, offsets or counterclaims which the Debtors may have or assert
> in respect of the above referenced Claims are fully preserved in accordance with
> Section 18.19 of the Plan

70.     Further, on the Effective Date, pursuant to section 105(a) of the Bankruptcy Code,

all Persons shall be permanently and forever stayed, restrained and enjoined from taking any of

the following actions against or affecting the New WCI Group or its Affiliates, the Debtors or

their Affiliates, the Estates, the Assets, the Creditor Trust, the Creditor Trustee or the Disbursing

Agent, or any of their current or former respective members, directors, managers, officers,

employees, agents, and professionals, successors and assigns or their respective assets and

property for the purpose of, directly or indirectly, collecting, recovering or receiving payment of,

50

on or with respect to any Chinese Drywall Claims, regardless of when such Claims are deemed

to arise, all of which will be channeled to the Chinese Drywall Trust, including, but not limited

to:

> (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including a judicial, arbitral, administrative or other proceeding);

> (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;

> (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance;

> (d) asserting any setoff, right of subrogation, reimbursement, contribution or recoupment of any kind; and

> (e) proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Chinese Drywall Trust, except in conformity and compliance therewith.

Notwithstanding anything to the contrary, nothing herein or in the Plan shall enjoin, alter,

diminish, or impair the rights of the Chinese Drywall Trust with regard to any insurance

company and/or with respect to any Insurance Coverage Action, Insurance Recoveries or

Chinese Drywall Action, with the Chinese Drywall Trust being, and deemed to be, for all

purposes of insurance and indemnity, the successor to the Debtors in respect of all Chinese

Drywall Claims and other recoveries from any insurance company, including Insurance

Recoveries.

### Special Provisions Regarding Resolution of Certain Objections

71.     The following provisions reflect the consensual resolution of certain of the

Objections and objections raised informally prior to the deadline for objection to the Plan.

(a)     Safeco/Liberty Objection; Westchester Fire Insurance Company and ACE

USA Informal Objection; and Bond Safeguard Insurance Co. and Lexon Insurance Co. Informal

51

Objection. Attached as Exhibit "C" to this Confirmation Order is a list of certain bonds (the "Designated Bonds") and the related sureties (collectively, the "Sureties") that relate to projects the New WCI Group intends to maintain after the Effective Date. In order to ensure that such projects are properly bonded following the Effective Date, New WCI and New WCI AssetCo shall execute and deliver post-confirmation indemnity agreements in favor of the Sureties with respect to each such Designated Bond and continue to pay timely all premiums. Additionally, at the election of the Sureties, any surety loss incurred in connection with the Designated Bonds will be deemed an administrative claim against the Debtors paid in the ordinary course of business. In exchange, the Designated Bonds shall remain in place in accordance with their stated terms. Any sale by the New WCI Group of contract rights or property rights related to a project the New WCI Group intends to maintain after the Effective Date shall be subject to a requirement that either (i) the Surety consents, in its sole and absolute discretion, to the assumption of the Designated Bond(s) by the purchaser; or (ii) the purchaser under any such sale shall replace the Designated Bond(s) relating to such project.

Nothing in the Plan or the Confirmation Order shall affect the rights and remedies of the Sureties in respect of bonds issued in connection with the Debtors' projects, except to the extent such rights and remedies constitute debts or claims (in each case as defined in section 101 of the Bankruptcy Code) that are subject to discharge under section 1141 of the Bankruptcy Code.

The Debtors and New WCI acknowledge that Westchester Fire Insurance Company/ACE USA ("ACE") currently holds letters of credit issued for the benefit of the Debtors in the aggregate approximate face amount of $9 million, which letters of credit shall continue to secure all indemnification or other obligations (including the obligation to pay

52

premiums) arising at any time, whether prepetition, postpetition or after the Effective Date, in connection with all of ACE's surety bonds, whether or not such bonds are included on Exhibit "C" to this Confirmation Order.

(b)    RSI Association Objection. Nothing in the confirmed Plan shall be deemed to extinguish (i) any right or claim asserted by the Resort at Singer Island Hotel Condominium Association, Inc. (the "Association") in the Proposed Florida State Court Complaint ("Florida Complaint") that is attached as an exhibit to the Association's Motion for Relief from Stay filed on August 13, 2009 at DE 2251 or (ii) the Association's right to file an Adversary Complaint in the Bankruptcy Court to prosecute the same claims set forth in the Florida Complaint; provided however, that with respect to items (i) and (ii) immediately above, the Debtors and the Disbursing Agent reserve their right to oppose any such relief. Notwithstanding the confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to hear and decide the Association's Motion for Relief from Stay and, if the requested relief is not granted, to ultimately preside over the Association's Adversary Complaint. Finally, the Association shall have 120 days from the Effective Date of confirmation to amend its proof of claim if the Association elects to do so.

(c)    Collier Objection. The Collier Objection was withdrawn according to the settlement of such objection read on the record at the Confirmation Hearing. Such settlement complies with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and is hereby approved.

(d)    Mehta Objection. The Mehta Objection was withdrawn according to the settlement of such objection read on the record at the Confirmation Hearing. Such settlement complies with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy

Rule 9019 and is hereby approved.

      (e)    <u>Lawson Objection</u>. Nothing in the Plan or Confirmation Order, including

the injunction set out in Section 18.23 of the Plan, shall in any way enjoin, preclude, prohibit,

restrict or otherwise limit Susan Lawson, as Trustee of the Lawson Trust, Dated June 24, 1994,

the plaintiff in the legal action in the Circuit Court, Seventh Judicial Circuit, in and for Flagler

County, Florida styled, <u>Susan Lawson, as Trustee of the Lawson Trust, dated June 24, 1994 v.</u>

<u>WCI Communities, Inc, a Delaware corporation</u>, Case No. 2008-CA-001767 (the "Lawson State

Court Case"), from fully prosecuting any and all claims against any Debtor or causes of action

arising thereunder, including through judgment and any appeal; provided that any judgment

obtained in such action may not be enforced against any property or asset belonging to any

Debtor absent further order of this Court. Furthermore, nothing in the Plan or Confirmation

Order shall create issue preclusion, res judicata, or estoppel with respect to the determination if

the surety bond at issue in the above described case constitutes property or an asset of any

Debtor.

      (f)    <u>Freemond Objection</u>. Notwithstanding anything in the Plan, this

Confirmation Order or the ADR Procedures, as to any Claim (a "Freemond Claim") of Alan

and/or Clarajohn Freemond ("Freemonds") (i) any request to estimate the Freemonds' Claim

must be filed prior to the Claims Objection Deadline pursuant to section 13.2 of the Plan, (ii)

nothing in the Plan, this Confirmation Order, or the ADR Procedure shall enjoin, release,

discharge, exculpate or otherwise affect any claim the Freemonds have against any non-debtor

related to the state court action styled <u>Alan Stanley Fremont and Clarajohn Freemond v. Robin</u>

<u>H. Brandon, et al.</u>, Case No. 502007 CA 007688XXXXMB AD, (iii), the Disbursing Agent may

not refer any Freemond Claim to the ADR Procedure following the Claims Objection Deadline

MIAMI 833380 (2K)

as defined in the Plan unless the Freemonds stipulate to such referral, (iv) the procedures contained in the ADR Procedure concerning Third Party Payable Claims shall not be applicable to any Freemond Claim unless the Freemonds so stipulate, (v) the Freemonds shall have the right to seek relief from the discharge injunction and/or for permissive or mandatory abstention of any proceeding involving the liquidation of their Claim, and (vi) the Freemonds shall have the right to move for the establishment of a protocol for equitable allocation of available insurance proceeds to address any risk of multiple underinsured claims made under the same aggregate policy limits and/or aggregate deductibles, provided however, that with respect to items (v) and (vi) immediately above, the Debtors and the Disbursing Agent reserve their right to oppose any such relief.

(g)     Aikin Objection. Nothing in the Plan or this Confirmation Order shall prohibit or prevent Jan Aikin from seeking recovery from any applicable surety bond covering the deposit at issue in the Florida Second District Court of Appeal, Case No. 2D07-5721.

(h)     Park Apartments/Monroe Objection. The rights of the Debtors, Park Apartments of Southwest Florida, Inc. and/or Monroe Management Co. of Southwest Florida, Inc. preserved in the Agreed Order Sustaining in Part Debtors' Fourteenth Omnibus Objection (Non-Substantive) to Certain Claim of Park Apartments of Southwest Florida, Inc. and Monroe Management Co. of Southwest Florida, Inc. [Docket No. 2325] shall survive and not be affected or impaired by Confirmation of the Plan and the occurrence of the Effective Date.

(i)     Palm Beach County Tax Collector Objection. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the *ad valorem* property tax liens for the 2009 *ad valorem* property taxes due to Palm Beach County, Florida shall remain attached to the

applicable Assets dealt with under the Plan pursuant to applicable non-bankruptcy law (with statutory priority).

      (j)    Chicago Title Objection. To resolve the Chicago Title Objection, the Debtors and Chicago Title Insurance Company ("Chicago Title") have agreed that (i) on the Effective Date the Debtors will assume and assign to New WCI, pursuant to section 365 of the Bankruptcy Code and Sections 16.1 and 16.2 of the Plan, that certain Issuing Agency Agreement between Chicago Title and First Fidelity Title, Inc. dated September 28, 2005 (the "Agency Agreement") and that certain escrow agreement by and among Chicago Title (on the one hand) and WCI, Bay Colony-Gateway, Inc., JYC Holdings, and Sarasota Tower, Inc. (on the other hand), dated as of November 15, 2000 (the "Escrow Agreement" and, together with the Agency Agreement, the "Chicago Title Agreements"); (ii) the amount required to cure existing monetary defaults on the Chicago Title Agreements shall be fixed at $12,091.00 (the "Cure Claim"); (iii) the Cure Claim shall be paid in Cash on the Effective Date or as soon thereafter as practicable; and (iv) with regard to any Person, the Debtors and/or the New WCI Group, the terms and provisions of the Chicago Title Agreements are and shall remain enforceable and in full force and effect including, without limitation, provisions regarding Chicago Title's indemnity rights; provided, however, that neither the New WCI Group nor Chicago Title shall exercise their respective rights to terminate the Escrow Agreement pursuant to paragraph 17 thereof for a period of sixty (60) days following the Effective Date. Notwithstanding anything to the contrary, nothing in the Plan, the Confirmation Order and/or the Plan Documents, including the discharge and injunction provisions set forth in Sections 18.7 and 18.23 of the Plan, respectively, and the ADR Procedure attached as Exhibit H to the Plan, shall in any way enjoin, alter, limit, diminish, prohibit, preclude, restrict, impair or otherwise affect the rights of Chicago Title from

prosecuting or pursuing claim numbers 4063, 4064, 4065, and 4066 (the "Claims") against non-debtor parties, including without limitation, the Debtors' insurance carriers (the "Carriers") or the Debtors in a nominal capacity to establish liability and damages; provided, however, that Chicago Title's recovery with respect to the Claims shall be limited to the amount of and collected solely against available insurance proceeds through applicable policies issued by the Carriers.

(k)     United States Objection. Nothing in the Plan or this Confirmation Order shall release, discharge, enjoin or preclude any liability of any Debtor that arises anew under any federally enforceable law or regulation as a consequence of such Debtor being the owner or operator of property or a facility after the Effective Date. Nothing in the Plan or this Confirmation Order shall release, discharge, enjoin or preclude any liability of a Debtor to the United States, except to the extent such liability constitutes a claim or debt (in each case, as defined in section 101 of the Bankruptcy Code), as of the date of confirmation of the Plan, that is subject to discharge under section 1141 of the Bankruptcy Code.

Any relief provided under the Plan or this Confirmation Order to non-debtors shall not release, discharge, enjoin or preclude any liability of such non-debtors to the United States under any federal laws.

Notwithstanding anything to the contrary in the Plan or this Confirmation Order, with respect to exercise of the police or regulatory powers of the United States, the jurisdiction of the Bankruptcy Court and any other tribunal shall not be enlarged, reduced, or impaired from that as set forth in any applicable, valid statutory grant of jurisdiction.

Nothing in the Plan or this Confirmation Order shall adversely affect in any way the rights and remedies of the United States under Department of the Army

57

Authorization No. 2003-01075, issued by the New York District of the U.S. Army Corps of Engineers on October 1, 2004 (the "2004 Permit"). From and after the Effective Date, the terms and provisions of the 2004 Permit shall constitute an asset and obligation of New WCI with the same force and effect that the 2004 Permit was an asset and obligation of WCI prior to the Petition Date. In addition, from and after the Effective Date, the United States shall be entitled to exercise all rights and remedies available to enforce the 2004 Permit against New WCI.

(l)     Yalcin Objection. Pursuant to the Yalcin Objection, Yalcin, Inc., asserts that the Plan mischaracterized its claims by including them on Schedule 3 to the Disclosure Statement (Rejected Executory Contracts and Unexpired Leases). The Yalcin Objection has been resolved by the Debtors' agreement to amend Schedule 3 and remove the Yalcin contracts, currently listed as numbers 593 through 596 from the schedule.

(m)     Arch Insurance Company Informal Objection. Pursuant to this Court's Order (I) Authorizing the Debtors to Deliver Title to Homes, Tower Residences and Certain Other Real Property Free and Clear of Liens, Claims, Encumbrances and Other Interests, (II) Authorizing the Debtors to Satisfy Certain Prepetition Obligations in Connection with the Sale of Such Property, (III) Establishing Procedures for the Resolution and Payment of Certain Lien Claims and (IV) Granting Related Relief (the "Home Sales Order") [Docket No. 61], entered on August 5, 2008, New WCI shall reserve Cash in the amount of $1,400,000 (the "Arch Reserve") to satisfy the Construction Lien Claim (as defined in the Home Sales Order) of Arch Insurance Company ("Arch"). The requirement under this Confirmation Order to maintain the Arch Reserve shall commence on the Effective Date and shall terminate upon (i) the Arch Construction Lien Claim being Disallowed or (ii) payment to Arch of the Allowed amount of the Arch Construction Lien Claim pursuant to the terms of the Plan. On or before the Effective Date

and upon written confirmation from the New WCI that the Arch Reserve has been established, Arch shall release the lien recorded in the Public Records of Flagler County, Florida at O.R. Book 1649, Page 517, O.R. Book 1698, Page 1403 and O.R. Book 1703, Page 759 (the "Arch Lien") and the Arch Lien shall extend to the Arch Reserve and shall terminate upon (i) the Arch Construction Lien Claim being Disallowed or (ii) payment to Arch of the Allowed amount of the Arch Construction Lien Claim pursuant to the terms of the Plan.

(n)     Owens Corning Informal Objection. Nothing contained in the Plan or this Confirmation Order shall in any way alter or affect the rights and obligations: (i) under this Court's Order Approving the Stipulation by and between Exterior Systems, Inc. and WCI Communities, Inc. Regarding (A) WCI Communities, Inc.'s Motion for Allowance and Payment of Administrative Expenses with Respect to Exterior Systems, Inc. and (B) Plan Objections (the "Owens Stipulation and Order"), entered by this Court on September 6, 2006 in the Owens Corning bankruptcy case (Case No. 00-33837 (JKF)) (Jointly Administered); (ii) set forth in any documents prepared in furtherance of the agreements contained in the Owens Stipulation and Order as identified on Schedule 5 to the Disclosure Statement, the *Schedule of Non-Executory Contracts and Leases*; and (iii) with respect to any legal or factual arguments, all of which are preserved and unaffected by the Plan and this Confirmation Order, relating to any existing or subsequent demand on Owens Corning or Exterior to make payment to WCI (or any transferee of WCI including, without limitation, New WCI under the Plan or otherwise) or any other party for alleged obligations arising from Exterior's scope of work at the residential development known generally as "Evergrene," located in Palm Beach Gardens, Florida.

(o)     Supreme Drywall Informal Objection. Nothing in the Plan or Confirmation Order, including the injunction set out in Section 18.23 of the Plan, shall in any

way enjoin, preclude, prohibit, restrict or otherwise limit Supreme Drywall, the plaintiff in the case entitled Supreme Drywall & Metal Framing Company v. WCI Communities, Inc. and Lexon Insurance Company, Case No. 07-009588 - Div. K., from fully prosecuting any and all claims or causes of action arising thereunder, including through judgment and any appeal; provided that any judgment obtained in such action may not be enforced against any property or asset belonging to any Debtor absent further order of this Court.

(p)     Pelican Marsh Community Development District Stipulation.  The Debtors and Pelican Marsh Community Development District (the "Pelican Marsh CDD") entered into a settlement agreement (the "Pelican Marsh CDD Settlement") resolving proof of claim number 2207 filed by the Pelican Marsh CDD (the "Pelican Marsh CDD Claim").  The Pelican Marsh CDD Settlement was filed with the Court on August 25, 2009 [Docket No. 2347] and provides, among other things, that subject to the Pelican Marsh CDD Settlement being approved in connection with confirmation of the Plan, the Pelican Marsh CDD Claim shall be expunged.  The Pelican Marsh CDD Settlement complies with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and is hereby approved.

**Miscellaneous Provisions**

72.     The stay in effect in the Cases pursuant to section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunctions set forth in this Confirmation Order, Section 18.23 of the Plan and/or sections 524 and 1141 of the Bankruptcy Code; provided, however, that nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, trust agreements and bills of sale)

60

or the taking of such other actions as are necessary to effectuate the transactions contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

73. During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as Debtors in Possession, subject to the oversight of the Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Court that are then in full force and effect.

74. Except with respect to the treatment of any Claim, nothing in the Plan or this Confirmation Order shall be construed to modify, discharge, alter, amend, or impair the terms of, or rights under or reserved in, any stipulation or agreement (including any reservations of rights contained therein) between a Debtor and any party in interest that has been approved by a Final Order (each a "Settlement Agreement"). Nothing in the Plan or this Confirmation Order creates jurisdiction in the Court that the Court otherwise would not have over any such rights under or reserved in any Settlement Agreement.

75. Upon the Effective Date, the Creditors' Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Cases and under the Bankruptcy Code, except with respect to (a) applications for Fee Claims or reimbursement of expenses incurred as a member of the Creditors' Committee, and (b) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or this Confirmation Order or pending appeals of orders entered in the Cases.

76. In accordance with Section 18.14 of the Plan, the Debtors will serve and publish notice of the entry of this Confirmation Order within 15 days of the occurrence of the Effective

Date in The Wall Street Journal, The New York Times, The Washington Post, The Sun Sentinel, The Miami Herald, The Tampa Tribune, Naples Daily News, and Bonita Daily News.

77.     To the extent that any provisions of this Confirmation Order may be inconsistent with the terms of the Plan or any Plan Documents, the terms of this Confirmation Order shall be binding and conclusive. To the extent that any provision of any Plan Document may be in conflict with or inconsistent with any provision of the Plan, the terms of the Plan shall govern and be binding and conclusive.

78.     Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062, to the extent applicable, the Court finds that there is no reason for delay in the implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry.

Dated: Wilmington, Delaware
       August 14, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

62

# EXHIBIT A

EXHIBIT "A"

## List of the Debtors and Tax Identification Numbers

| Case No. | Debtor | Tax ID Number |
|---|---|---|
| 08-11649 | Bay Colony of Naples, Inc. | 65-0323732 |
| 08-11657 | Bay Colony Realty Associates, Inc. | 65-0227049 |
| 08-11646 | Bay Colony-Gateway, Inc. | 36-4025714 |
| 08-11663 | Carpentry Management Associates, LLC | 13-4137266 |
| 08-11682 | Communities Amenities, Inc. | 59-3431364 |
| 08-11691 | Communities Finance Company, LLC | 65-1062263 |
| 08-11644 | Communities Home Builders, Inc. | 59-3431554 |
| 08-11652 | Community Specialized Services, Inc. | 59-3740762 |
| 08-11661 | Coral Ridge Communities, Inc. | 65-0615045 |
| 08-11675 | Coral Ridge Properties, Inc. | 25-1184789 |
| 08-11699 | Coral Ridge Realty Sales, Inc. | 59-2103316 |
| 08-11685 | Coral Ridge Realty, Inc. | 59-0980280 |
| 08-11715 | Dix Hills Home & Land Company, LLC | 36-4443866 |
| 08-11647 | East Fishkill Development LLC | 81-0616726 |
| 08-11650 | Fair Oaks Parkway, LLC | 54-2097587 |
| 08-11655 | First Fidelity Title, Inc. | 59-3321774 |
| 08-11658 | Florida Design Communities, Inc. | 65-0585945 |
| 08-11666 | Florida Lifestyle Management Company | 59-1505694 |
| 08-11671 | Florida National Properties, Inc. | 65-0615052 |
| 08-11681 | Gateway Communications Services, Inc. | 65-0133017 |
| 08-11653 | Gateway Communities, Inc. | 59-2167649 |
| 08-11667 | Gateway Realty Sales, Inc. | 59-2741697 |
| 08-11678 | GC Assets of Nassau, Inc. | 11-3467830 |
| 08-11721 | Heron Bay Golf Course Properties, Inc. | 65-0583106 |
| 08-11710 | Heron Bay, Inc. | 65-0540040 |
| 08-11731 | Hopewell Crossing Home & Land Company, LLC | 20-1733128 |
| 08-11746 | Hunting Ridge II, LLC | 54-1920791 |
| 08-11648 | Hunting Ridge III, LLC | 54-2054916 |
| 08-11659 | JYC Holdings, Inc. | 59-3555684 |
| 08-11673 | Lake Grove Home & Land Company LLC | 61-1436178 |
| 08-11684 | Mansion Ridge Home & Land Company, LLC | 13-4148640 |
| 08-11709 | Marbella at Pelican Bay, Inc. | 65-0738244 |
| 08-11722 | MHI-Rugby Road, L.L.C. | 54-2021268 |
| 08-11645 | New Home & Land Company LLC | 13-2644753 |
| 08-11656 | Pelican Bay Properties, Inc. | 59-1906557 |
| 08-11668 | Pelican Landing Communities, Inc. | 25-1629089 |
| 08-11683 | Pelican Landing Properties, Inc. | 25-1629086 |
| 08-11693 | Pelican Marsh Properties, Inc. | 65-0348731 |
| 08-11702 | Poplar Tree, LLC | 58-2682577 |
| 08-11654 | Renaissance at Beacon Hill II, LLC | 54-2054918 |
| 08-11719 | Renaissance at Beacon Hill, LLC | 54-2029972 |
| 08-11660 | Renaissance at Bellview Road, LLC | 57-1167323 |
| 08-11669 | Renaissance at Bridges of Oakton II, LLC | 54-1945063 |
| 08-11680 | Renaissance at Cardinal Forest, LLC | 47-0887283 |
| 08-11687 | Renaissance at Evergreen Mills Road, LLC | 55-0834295 |
| 08-11694 | Renaissance at Foxhall, LLC | 54-2054920 |
| 08-11705 | Renaissance at Georgetown Pike, LLC | 65-1183159 |
| 08-11674 | Renaissance at Hunting Hills, LLC | 03-0407150 |
| 08-11688 | Renaissance at Kings Crossing, LLC | 55-0838332 |
| 08-11701 | Renaissance at Lake Manassas, LLC | 54-2029974 |
| 08-11711 | Renaissance at Oak Creek Club, LLC | 20-1353723 |
| 08-11736 | Renaissance at Oakton Glen, LLC | 75-3023701 |
| 08-11742 | Renaissance at Occoquan Walk, LLC | 20-2008542 |
| 08-11756 | Renaissance at River Creek II, LLC | 54-2054907 |

| Case No. | Debtor | Tax ID Number |
|---|---|---|
| 08-11763 | Renaissance at River Creek Towns, LLC | 47-0887264 |
| 08-11767 | Renaissance at River Creek Villas, Inc. | 54-1907551 |
| 08-11751 | Renaissance at River Creek, Inc. | 54-1860691 |
| 08-11670 | Renaissance at Roseland, Inc. | 54-1889295 |
| 08-11697 | Renaissance at Rugby Road II, LLC | 04-3720562 |
| 08-11689 | Renaissance at Rugby Road, LLC | 58-2675938 |
| 08-11708 | Renaissance at South River, Inc. | 54-1918235 |
| 08-11718 | Renaissance at the Bridges of Oakton, LLC | 54-2054903 |
| 08-11728 | Renaissance at The Oaks, LLC | 20-1353753 |
| 08-11760 | Renaissance at Timberlake II, LLC | 54-2029976 |
| 08-11759 | Renaissance at Timberlake, LLC | 47-0877756 |
| 08-11766 | Renaissance Centro Arlington, LLC | 20-1603648 |
| 08-11770 | Renaissance Centro Columbia, LLC | 20-1866553 |
| 08-11664 | Renaissance Custom Communities, LLC | 55-0838335 |
| 08-11676 | Renaissance Holdings Corp. | 54-2015382 |
| 08-11692 | Renaissance Housing Corp. | 52-1379241 |
| 08-11704 | Renaissance Land, L.L.C. | 14-1873740 |
| 08-11712 | Resort at Singer Island Properties, Inc. | 59-3658689 |
| 08-11723 | Reston Building Company, LLC | 54-2015929 |
| 08-11732 | RMH, LLC | 72-1522373 |
| 08-11741 | Sarasota Tower, Inc. | 65-1012613 |
| 08-11749 | Southbury Home & Land Company LLC | 36-4443868 |
| 08-11754 | Spectrum Construction Corp. | 13-3747827 |
| 08-11662 | Spectrum Customer Care, Inc. | 11-3466629 |
| 08-11679 | Spectrum Design Studio, Inc. | 13-4018395 |
| 08-11690 | Spectrum FS Corp. | 13-4175164 |
| 08-11695 | Spectrum Glen Cove Corp. | 13-4057564 |
| 08-11707 | Spectrum Holmdel Corp. | 13-4057565 |
| 08-11717 | Spectrum Kensington LLC | 56-2470770 |
| 08-11726 | Spectrum Lake Grove, LLC | 20-2355405 |
| 08-11735 | Spectrum Landing Corp. | 13-4146294 |
| 08-11744 | Spectrum Long Beach, LLC | 20-2372265 |
| 08-11752 | Spectrum North Bergen LLC | 20-2355376 |
| 08-11651 | Spectrum PDC Corp. | 13-4016880 |
| 08-11665 | Spectrum Valimar Corp. | 13-3894729 |
| 08-11677 | Spectrum-Irvington Corp. | 13-3902678 |
| 08-11686 | Spectrum-Riverwoods Corp. | 13-3817312 |
| 08-11696 | Sun City Center Golf Properties, Inc. | 59-3439449 |
| 08-11706 | Sun City Center Realty, Inc. | 59-1581628 |
| 08-11716 | Tarpon Cove Realty, Inc. | 59-2000931 |
| 08-11730 | Tarpon Cove Yacht & Racquet Club, Inc. | 59-3413469 |
| 08-11672 | The Colony at Pelican Landing Golf Club, Inc. | 59-2415982 |
| 08-11698 | (The) Mansion Ridge Sewer Co., Inc. | 76-0706070 |
| 08-11738 | (The) Valimar Home & Land Company, LLC | 13-4125505 |
| 08-11748 | Watermark Realty Referral, Inc. | 59-3227694 |
| 08-11700 | WCI Amenities, Inc. | 20-1179424 |
| 08-11714 | WCI Architecture & Land Planning, Inc. | 02-0570572 |
| 08-11725 | WCI Business Development, Inc. | 20-1179333 |
| 08-11740 | WCI Capital Corporation | 65-1108622 |
| 08-11753 | WCI Communities Property Management, Inc. | 65-0734347 |
| 08-11643 | WCI Communities, Inc. | 59-2857021 |
| 08-11761 | WCI Custom Homes, LLC | 54-1965014 |
| 08-11768 | WCI Golf Group, Inc. | 59-3518710 |
| 08-11769 | WCI Homebuilding Northeast, U.S., Inc. | 20-1179554 |
| 08-11762 | WCI Homebuilding, Inc. | 20-1178472 |
| 08-11703 | WCI Homes Northeast, Inc. | 13-3851184 |
| 08-11765 | WCI Homes, Inc. | 59-3557486 |
| 08-11729 | WCI Hunter Mill, LLC | 20-2304375 |
| 08-11745 | WCI Ireland Inn Corp. | 20-3505450 |

2

| Case No. | Debtor | Tax ID Number |
|---|---|---|
| 08-11734 | WCI Marketing, Inc. | 20-1179392 |
| 08-11747 | WCI Mid-Atlantic U.S. Region, Inc. | 20-2304216 |
| 08-11720 | WCI Northeast Real Estate Development, LLC | 16-1656426 |
| 08-11733 | WCI Northeast U.S. Region, LLC | 20-1146803 |
| 08-11739 | WCI Pompano Beach, Inc. | 20-5234415 |
| 08-11724 | WCI Realty Connecticut, Inc. | 20-2620653 |
| 08-11727 | WCI Realty Maryland, Inc. | 26-2031785 |
| 08-11737 | WCI Realty New Jersey, Inc. | 20-2205677 |
| 08-11743 | WCI Realty New York, Inc. | 20-2620610 |
| 08-11713 | WCI Realty, Inc. | 59-3408628 |
| 08-11750 | WCI Title, Inc. | 20-3307885 |
| 08-11758 | WCI Towers Mid-Atlantic USA, Inc. | 20-1656855 |
| 08-11764 | WCI Towers Northeast USA, Inc. | 20-1656944 |
| 08-11755 | WCI Towers, Inc. | 20-1179513 |
| 09-12269 | WCI 2009 Corporation | 27-0472098 |
| 09-12270 | WCI 2009 Management, LLC | 27-0472098 |
| 09-12271 | WCI 2009 Asset Holding, LLC | 27-0472098 |

MIAMI 833380 (2K)

# EXHIBIT B

## EXHIBIT "B"

### Modifications to the Plan

The following are nonmaterial Modifications to the Plan, and the Sections of or Defined Terms contained in the Plan referenced in this Exhibit "B" to the Confirmation Order are hereby replaced and superseded in their entirety by the Sections and Defined Terms stated herein.

**A.   Nonmaterial Modification to Section 5.1(b) of the Plan.**

**5.1   Claims and Equity Interests.**

\* \* \* \*

(b)   Class 2 – Prepetition Lender Claims.

Each holder of an Allowed Prepetition Lender Claim against any of the Debtors shall receive, on the Effective Date, (i) its Pro Rata Share of (A) New WCI Senior Secured Term Notes, (B) New WCI Senior Secured Subordinated PIK Notes, and (C) 95% of the shares of New WCI Common Stock issued under the Plan except for shares reserved for issuance pursuant to the New WCI Employee Incentive Programs, if any, and Creditor Common Shares and (ii) the Prepetition Lender Release. The Prepetition Lender Claims shall be Allowed in the aggregate amount of $739,120,669.77, subject to increase based on letter of credit draws occurring prior to the Effective Date, if any.

**B.   Nonmaterial Modification to Section 8.2 of the Plan.**

**8.2   Implementing Transactions on or Prior to the Effective Date.**

The following transactions shall occur and be implemented pursuant to section 1123(a)(5) of the Bankruptcy Code on or prior to the Effective Date:

(a)   Transfer of Assets to New WCI.

Except for (i) Avoidance Actions and $1,000,000 in Cash, which will be transferred to the Creditor Trust, and (ii) Insurance Coverage Actions, Insurance Recoveries, Chinese Drywall Actions, and $900,000 in Cash, which will be transferred to the Chinese Drywall Trust, on or prior to the Effective Date the Debtors, other than (i) First Fidelity Title, Inc., (ii) WCI Realty, Inc., (iii) WCI Realty Connecticut, Inc., (iv) WCI Realty New Jersey, Inc., (v) WCI Realty New York, Inc., (vi) Renaissance at Oak Creek Club, LLC, and (vii) Watermark Realty Referral, Inc. (collectively, the "Transferred Debtors") shall transfer substantially all of their Assets (other than the Assets defined as "Excluded Assets" in the immediately following paragraph) to WCI.

*and (viii) WCI Towers Northeast USA, Inc.*

For purposes of the preceding paragraph, Excluded Assets shall mean (i) Equity Interests in Debtors other than the Transferred Debtors, WCI Realty Maryland, Inc. (the Equity Interests of which will be transferred by WCI Realty, Inc. to Bay Colony Gateway, Inc., but not to WCI) and WCI Title, Inc. (the Equity Interests of which will, not withstanding the last parenthetical in the preceding paragraph, be transferred by First Fidelity Title, Inc. to WCI) and (ii) Equity Interests in non Debtor direct or indirect subsidiaries of WCI other than Financial Resources Group, Inc. (which owns and will continue to own a 49.9% interest in WCI Mortgage, LLC), Watermark Realty, Inc., Pelican Landing Golf Resort Ventures, Inc., Tiburon Golf Ventures, Inc., Pelican Landing Golf Resort Ventures Limited Partnership, Pelican Landing Timeshare Ventures Limited Partnership, Tiburon Golf Ventures Limited Partnership and Spectrum Eastport, LLC (which owns and will continue to own a 50% interest in Eastport Home and Land Company, LLC) (collectively, the "Transferred Non-Debtors").

In addition to the Assets transferred by Debtors to WCI pursuant to the first paragraph of this Section 8.2(a), on or prior to the Effective Date East Fishkill Home & Land Company, LLC shall transfer substantially all of its Assets (including its 100 percent Equity Interest in Four Corners Sewage Works Corporation and Four Corners Water Works Corporation) to WCI and Wilson Park Home & Land Company, LLC will transfer substantially all of its Assets to WCI if WCI indirectly owns 100 percent of the Equity Interests in such transferor entities on or prior to the Effective Date. In the event the transfers set forth in this paragraph do not occur on or prior to the Effective Date, Spectrum East Fishkill LLC and Spectrum Wilson Park LLC shall be deemed Transferred Non-Debtors.

After the foregoing transfers, WCI shall transfer or cause to be transferred on the Effective Date (i) all assets relating to that certain project known as Rivington located in Fairfield County, Connecticut to WCI Communities Rivington, LLC and (ii) substantially all of its remaining Assets, including the Equity Interests in the Transferred Debtors and the Transferred Non-Debtors, to New WCI AssetCo and then, as set forth in Section 8.2(e), the Equity Interests of WCI shall be transferred to the Plan Trust. The Assets transferred as set forth in the preceding sentence (i) shall exclude (a) the Excluded Assets, (b) Assets that are under contract, as of the Effective Date, to be sold to a third party; provided, however, that if such Assets under contract are not sold and closed to such third party, such Assets shall be transferred to New WCI AssetCo and (c) certain Assets which WCI has determined have nominal value and that are required to be conveyed to homeowners associations, governmental bodies or similar grantees in the future, and (ii) shall include, without limitation, the right to proceeds received by WCI after the Effective Date from (a) any sale of Assets to a third party under contract as of the Effective Date and (b) any refunds of amounts paid or placed on deposit prior to the Effective Date, including, without limitation escrow deposits, performance deposits and tax refunds.

All employees of the Debtors who continue to be employed in connection with the Debtors' Assets after the Effective Date shall be employees of New WCI ManagementCo. Each subsidiary of New WCI, including New WCI ManagementCo and

2

New WCI AssetCo, shall become a New WCI Guarantor unless the Prepetition Lenders agree otherwise.

\* \* \* \*

    (e)   <u>Transfer of WCI to the Plan Trust.</u>

WCI and the other Debtors shall continue to exist as separate legal entities on and after the Effective Date, having all rights and powers under applicable law. Immediately after entry of the Confirmation Order, WCI will change its name to "2009 Real Estate Corporation". Immediately after the consummation of the transfers described in Section 8.2(a), (i) WCI shall be converted into a Delaware limited liability company and renamed "2009 Real Estate, LLC", (ii) the Equity Interests in WCI shall be cancelled, and (iii) WCI shall issue a certificate (evidencing 100% of the membership interests in WCI) to the Plan Trust. Further, immediately upon the transfer of the membership interests in WCI to the Plan Trust, the remaining Debtors shall adopt new constituent documents that shall appoint the Plan Trustee as the sole director and officer thereof.

**C.**   **Nonmaterial Modification to Section 8.14 of the Plan.**

   **8.14**   <u>**Releases by the Debtors.**</u>

**As of the Effective Date, for good and valuable consideration, the Debtors and the New WCI Group in their individual capacities and as Debtors in Possession will be deemed to release and forever waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the New WCI Group, the Chapter 11 Cases, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates or the New WCI Group against (a) the Debtors' and their non-Debtor affiliates' present and former officers and directors, (b) the Creditors' Committee and its members (solely in their capacity as such) and the Indenture Trustees, and (c) the attorneys, accountants, investment bankers, bankruptcy and restructuring advisors and financial advisors of each of the Debtors, the Creditors' Committee and the Indenture Trustees; except, that nothing in this section shall be construed to release any party or entity from (a) willful misconduct or gross negligence as determined by a Final Order or (b) any objections by the Debtors, the New WCI Group, or the Chinese Drywall Trustee to Claims filed by such party or entity against any Debtor and/or its Estate. Notwithstanding the foregoing, (a) nothing contained herein shall or shall be construed to in any way enjoin, preclude, prohibit, restrict or otherwise limit the Chinese Drywall Trustee from fully prosecuting any and all Insurance Coverage**

MIAMI 833380 (2K)

Actions or receiving Insurance Recoveries with respect to the Debtors' director and officer liability insurance policies, general liability insurance policies, or any coverage provided to Debtors under first party property insurance policies or otherwise, and the Debtors' and their non-Debtor affiliates' present and former officers and directors are released pursuant to this Section with respect to such prosecution of Insurance Coverage Actions and receipt of Insurance Recoveries solely to the extent a right to recovery against any such officer or director is not satisfied from the proceeds of any of the Debtors' insurance policies, an Insurance Coverage Action or an Insurance Recovery; and (b) nothing contained herein shall release from Avoidance Actions any attorneys, accountants, investment bankers, bankruptcy and restructuring advisors and financial advisors of each of the Debtors that were not employed by the Debtors after the Petition Date.

As of the Effective Date, for good and valuable consideration, the Debtors and the New WCI Group in their individual capacities and as Debtors in Possession also will be deemed to release and forever waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the New WCI Group, the Chapter 11 Cases, the Plan or the Disclosure Statement, or the Prepetition Credit Facilities and that could have been asserted by or on behalf of the Debtors or their Estates or the New WCI Group against the Prepetition Lenders, Prepetition Agents, and Prepetition Lender Steering Committee, including, but not limited to, all Avoidance Actions against such Prepetition Lenders, Prepetition Agents, and the Prepetition Lender Steering Committee.

D.    Nonmaterial Modifications to Section 16.3 of the Plan.

16.3    Claims Arising from Rejection, Expiration or Termination.

Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the Bar Date Notice, (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date, or (ii) is rejected pursuant to this Section 16, no later than thirty (30) days after the Confirmation Date, or (c) in the case of an executory contract or unexpired lease that is the subject of separate motion to reject filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the Effective Date, no later than thirty (30) days after the effective date of rejection of such contract or lease. Any such Claims for which a proof of claim is not filed and served by the deadlines set forth in the Bar Date Notice or this Section 16.3, as applicable, will be forever barred from assertion and shall not be enforceable against the Debtors, the New WCI Group, their respective

4

Estates, Affiliates, or Assets. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan subject to objection by the Disbursing Agent.

E.   **Nonmaterial Modification to Exhibit "A" to the Plan, Glossary of Defined Terms.**

10.   "Allowed Prepetition Lender Claim" means the Allowed Claim of the Prepetition Lenders arising under the Prepetition Credit Facilities in the amount of $739,120,669.77, subject to increase based on letter of credit draws occurring prior to the Effective Date, if any.

\* \* \* \*

71.   "Insurance Coverage Actions" means any rights to indemnification, reimbursement, contribution or other payment under any of the Debtors' existing insurance policies, including the Debtors' director and officer liability insurance policies, general liability insurance policies, and any coverage provided to Debtors under first party property insurance policies, as of the Effective Date that may provide coverage with respect to Allowed Chinese Drywall Claims.

\* \* \* \*

109.   "Prepetition Lender Recovery" means the sum, at any given time, of (a) the aggregate amount of principal which has been paid on the New WCI Senior Secured Term Notes, (b) the aggregate amount of principal and interest which has been paid on the New WCI Senior Secured Subordinated PIK Notes and (c) the aggregate amount of dividends or other distributions (excluding any securities issued in connection with a stock dividend, stock split, subdivision, combination, recapitalization or similar transaction) which have been paid with respect to the shares of New WCI Common Stock issued on the Effective Date to the Prepetition Lenders (whether or not such shares are then held by the Prepetition Lenders). In the event of (a) a liquidation, dissolution or winding up of the New WCI, whether voluntary or involuntary or (b) any sale of New WCI (whether by way of merger, consolidation, sale of all of the outstanding capital stock (including a Drag-Along Sale, as defined in the certificate of incorporation of New WCI) or sale of all or substantially all of the assets of New WCI) (a "Liquidation"), Prepetition Lender Recovery shall include, without duplication, the cash consideration, as well as the fair market value (calculated as of the closing date of such Liquidation) of any non-cash consideration (including any indebtedness of New WCI that is assumed by the acquirer), received by the Prepetition Lenders or their assignees, as set forth in the first sentence of this definition.

\* \* \* \*

132.   "WCI" means Debtor WCI Communities, Inc.

5

# EXHIBIT C

**WCI Communities, Inc. - Exhibit "G" to Confirmation Order**
Surety Bonds
August 25, 2009

| Surety/Bank | Bond/LOC No. | Program | Purpose | Obligee | Issue Date | Amendment Date | Expire Date | Original Amount | Current Amount |
|---|---|---|---|---|---|---|---|---|---|
| America Home | 179075 | BellaMar | Performance | Village of Pine Beach | 6/23/2004 | | 06/23/2009 | 200,000 | 200,000.00 |
| Arch | SU1001084 | Old Palm | Plat 2 | City of Palm Beach Gardens | 01/27/03 | 02/21/08 | 01/26/10 | 2,435,336 | 1,922,477.33 |
| Arch | SU1001586 | Old Palm | Plat 4 infrastructure improvements | City of Palm Beach Gardens | 1/27/2004 | 2/22/2008 | 2/22/2010 | 7,848,683 | 2,556,110.85 |
| Arch | SU1001593 | Pelican Preserve | Systems & Sanitation underground utilities and paving | City of Ft. Myers | 12/15/2004 | | 04/21/10 | 110,892 | 110,892.25 |
| Arch | SU1001604 | Four Corners | Removal of temporary sales office | Town of East Fishkill | 7/8/2004 | | 06/30/10 | 88,500 | 88,500.00 |
| Arch | SU1001605 | Artesia | Site Improvements off-site | Collier County | 7/8/2004 | 2/21/2006 | 03/06/10 | 1,290,203 | 972,135.32 |
| Arch | SU1001606 | Artesia | Site Improvements on-site | Collier County | 7/8/2004 | 3/20/2008 | 03/06/05 | 2,013,754 | 1,647,245.18 |
| Arch | SU1001607 | Artesia | Lake Excavation/Water Management | Collier County | 7/8/2004 | | 07/09/10 | 193,750 | 193,750.00 |
| Arch | SU1001609 | CitySide | Install Traffic Signal | Palm Beach County | 7/21/2004 | 3/4/2005 | 07/21/09 | 290,000 | 290,000.00 |
| Arch | SU1008760 | Half Moon Harbour | Improvements for The Watermark Phase II | Township of North Bergen | 1/30/2006 | 4/22/2008 | 01/29/10 | 732,000 | 100,000.00 |
| Arch | SU1008766 | Four Corners | Improvements | Town of East Fishkill | 10/28/2006 | 3/24/2008 | 10/25/09 | 10,332,400 | 3,667,500.00 |
| Arch | SU1008710 | Rugby Road | VA Fairfax Co Bebow Performance Bond (General Improvement Bond) Rugby Road section 2 - Plan Number 1343-SP-01 | Fairfax County | 4/6/2006 | 7/27/2008 | 12/6/2009 | 808,842 | 238,700.00 |
| Arch | SU1008713 | Four Corners | Security for Project Completion w. heroes "model row" to sga lots | Central Hudson Gas & Electric | 6/9/2005 | 10/3/2008 | 06/01/10 | 200,000 | 74,600.00 |
| Arch | SU1008727 | Columbia Town Center | Private Storm Water Management Facilities Developer Agreement Performance bond | Howard County | 04/04/06 | | 04/04/10 | 82,180 | 82,180.00 |
| Arch | SU1008724 | Columbia Town Center | Water & Sewer Facilities - Labor & Material Payment bond | Howard County | 04/04/06 | | 04/04/10 | 84,476 | 84,477.50 |
| Arch | SU5001637 | Renaissance Gardens | Spruce Street Property, Plan #. 1295-SD-01 | Fairfax County | 7/24/2003 | 6/30/2005 | 7/24/2009 | 247,000 | 86,900.00 |
| Arch | SU5002239 | Hunting Ridge II | Hunting Ridge, Phase 1, Plan #. 6845-SP-01 | Fairfax County | 7/21/2003 | 10/26/2007 | 7/21/2009 | 617,034 | 617,034.00 |
| Arch | SU5002485 | Kersting Ridge III | Kersting Ridge II, Plan No. 9845-SD-01 | Fairfax County | 6/11/2003 | 3/20/2008 | 10/22/2009 | 68,783 | 68,783.00 |
| Arch | SU5002906 | Timberlake | Timberlake Section 2, Plan #. 6316-SD-02 | Fairfax County | 9/20/2003 | 3/20/2008 | 09/20/09 | 411,380 | 411,380.00 |
| Arch | SU5400107 | Georgetown Pike | Georgetown Ridge, Plan No. 1694-SD-01 | Fairfax County | 3/18/2004 | 8/24/2008 | 3/18/2010 | 1,117,000 | 201,000.00 |
| Arch | SU5001468 | Rugby Road | VA Fairfax Co Bebow Performance Bond (General Improvement Bond)- Rugby Road, Section 1 - Plan Number 1340-SP-01 | Fairfax County | 11/15/2002 | 4/21/2008 | 4/1/2010 | 1,358,000 | 826,500.00 |
| Arch | SU5001469 | Rugby Road | VA Fairfax Co Bebow Performance Bond (General Improvement Bond) - Rugby Road Section 3 - Plan Number 1340-SP-03 | Fairfax County | 11/20/2002 | 7/27/2008 | 4/6/2010 | 360,000 | 169,400.00 |
| Capital/Pinto River | 41047322 | Danbury | For Danbury Connecticut 40' wide main extension, booster pump station & storage tank | Woodland Group II | 12/15/05 | | 12/15/08 | 4,500,000 | 4,500,000.00 |
| Fidelity/Zurich | 4144220 | Lesina-1st | Escrow bond of Hammock Bay | Chicago Title/State Florida | 6/17/2005 | 4/21/2009 | 6/15/2009 | 4,650,500 | 645,750.00 |
| Fidelity/Zurich | 4144230 | Sun City Center | Deposit Insurance, Sun City Center (West Shore) Association | TECO | 02/21/06 | | 03/15/10 | 50,000.00 | 50,000.00 |
| Fidelity/Zurich | 4144245 | Maplewood | Escrow bond at Sun City Center | Chicago Title/State Florida | 5/11/2006 | 06/25/07 | 5/11/2010 | 1,000,000 | 91,814.50 |
| Fidelity/Zurich | 4144263 | Florencia-1st | Escrow bond at The Colony | Chicago Title/State Florida | 8/18/2005 | 4/9/2009 | 8/18/2009 | 7,500,000 | 333,750.00 |
| Fidelity/Zurich | 4144258 | WCI Corp | NY purchases in Florida Condo related only | State of NY | 07/25/06 | 02/6/07 | 07/26/10 | 1,000,000 | 1,000,000.00 |
| Fidelity/Zurich | 4144259 | Messina North | Escrow bond at Artesia Naples | Chicago Title/State Florida | 6/16/2005 | 07/16/08 | 6/15/2009 | 1,250,000 | 616,750.00 |
| Fidelity/Zurich | 4144261 | WCI Corp | NY purchases in Florida | State of NY | 08/01/06 | 10/18/06 | 08/01/10 | 1,000,000 | 1,000,000.00 |
| Fidelity/Zurich | 4144271 | The Watermark-1st | Escrow bond at NEUS | Stewart Title/New Jersey | 8/27/2005 | 6/4/2009 | 8/27/2009 | 16,500,000 | 4,125,175.00 |
| Fidelity/Zurich | 08635959 | Bishop Pit | Bishop Property - Littoral Planting | Palm Beach County DERM | 6/25/2007 | | 5/26/2007 | 46,500 | 46,500.00 |
| Fidelity/Zurich | 08635947 | Hammock Bay | Hammock Bay Infrastructure | Collier County | 06/14/02 | 04/3/03 | 07/65/07 | 1,062,136 | 97,678.41 |
| Fidelity/Zurich | 08635867 | Heron Bay | Mitigation & Maintenance of wetland | Broward County | 10/21/02 | 06/27/06 | 10/21/09 | 90,649 | 31,900.00 |
| Fidelity/Zurich | 08645353 | WCI Corp | Mortgage brokers bond for FRO | State of FL | 08/17/03 | | 12/13/09 | 10,000 | 10,000.00 |
| Fidelity/Zurich | 08685960 | WCI Corp | Guarantee FPL deposits for all accts open in the name of WCI | FPL | 06/25/01 | 05/16/09 | 06/11/09 | 242,186 | 261,061.49 |
| Fidelity/Zurich | 08685941 | WCI Corp | Lien transfer bond | Calvert & Cadidy | 9/18/2007 | | 09/18/10 | 105,992 | 105,991.92 |
| Fidelity/Zurich | LPM1600045 | WCI Corp | FPL Title Agent's Bond | State of FL | 03/15/03 | | 03/15/10 | 10,000 | 33,000.00 |
| Hartford | 208SBEYV307 | WCI Corp | Surplus Lines Agent bond for Calvin Eils | Dept of Fin Svcs State of FL | 8/20/98 | | | 50,000 | 50,000.00 |
| Liberty | 15-003-858 | Bishop Pit | Phase 2 Reclamation | Palm Beach County | 09/15/97 | | 09/15/09 | 258,180 | 258,180.00 |
| Liberty | 15-007-484 | Bishop Pit | Bishop Property Phase IV Reclamation | Palm Beach County | 05/14/99 | | 09/14/10 | 258,180 | 258,180.00 |
| Liberty | 15-007-486 | Bishop Pit | Bishop Property/lake excavation/Phase II | Palm Beach County | 06/16/99 | | 09/16/10 | 258,180 | 258,180.00 |
| Lumbermens Mutual | 3S5000773 | Old Palm | Old Palm Perimeter Buffer | City of Palm Beach Gardens | 12/27/02 | 07/12/06 | 12/27/09 | 9,573,810 | 94,743.31 |
| Safeco | 6241929 | Parkland Golf and CC | 2 lane expansion - University Drive includes earthwork, roadway work, and drainage | City of Parkland | 06/13/03 | | 06/03/09 | 584,692 | 584,692.00 |
| Safeco | 6241947 | Old Palm | Plat 3 Infrastructure Improvements includes drainage, paving, water distribution and sanitary sewer | City of Palm Beach Gardens | 11/07/03 | 02/22/08 | 11/07/09 | 3,915,752 | 1,814,029.74 |
| Safeco | 6273160 | Heron Bay | Heron Bay Mob'l plats 3 and 4 mitigation earthwork, planting, maintenance and monitoring | Broward County | 02/17/05 | | 02/17/10 | 155,000 | 155,000.00 |
| Safeco | 6333242 | Hampton Park | Development of all infrastructure including utilities, roads, lake plantings | Lee County | 06/25/05 | 05/30/08 | 06/25/10 | 12,445,212 | 2,272,349.50 |
| Safeco | 6333282 | WCI Corp | Tim Oak Contractor's bond compliance for approval to pull permits required for our projects | State of FL | 06/22/05 | | 06/22/09 | 5,000 | 5,000.00 |
| Safeco | 6333284 | Four Corners | Installation of Electric Meters to newly constructed homes with 59 homes in total | Central Hudson Gas & Electric | 09/28/05 | 10/03/08 | 09/25/09 | 67,437 | 27,432.00 |
| Safeco | 6373080 | Four Corners | Supply underground gas & electric trenching options from end right of way | Central Hudson Gas & Electric | 12/01/05 | 10/03/08 | 12/01/09 | 35,136 | 9,782.00 |
| Safeco | 6390565 | Four Corners | Installation of Secondary Electric Service of the Four Corners community | Central Hudson Gas & Electric | 03/01/06 | 10/3/08 | 02/02/10 | 34,998 | 20,745.00 |
| Safeco | 6405565 | Pelican Preserve | The CI, installation of underground utilities and roadway construction which includes paving, grading, storm drainage, sewer, potable water, irrigation and survey | City of Ft. Myers | 04/03/06 | 06/27/08 | 04/03/10 | 4,961,350 | 3,762,766.10 |
| Safeco | 6423627 | Parcel 19 Tech | Parcel 19 Spine Road improvements including water, sewer, paving, earthwork, drainage & retaining wall | Town of Jupiter | 09/28/06 | 1/16/07 | 09/08/09 | 2,545,492 | 100,000.00 |
| Safeco | 6423629 | Danbury | Site work to Danbury-Irvington, off site traffic improvements includes earthwork, excavation, erosion control, drainage, sidewalks, walls, landscaping, and pavement | State of CT Dept of Transportation | 09/29/06 | | 09/29/09 | 13,051,000 | 13,051,000.00 |
| Safeco | 6423632 | Four Corners | Install primary electric, telephone, cable & gas in main utility trenching | Central Hudson Gas & Electric | 10/20/06 | | 10/20/09 | 19,526 | 18,528.00 |
| Safeco | 6475030 | Four Corners | Electric and gas infrastructure installation | Central Hudson Gas & Electric | 05/01/07 | | 05/01/10 | 65,016 | 65,016.00 |
| Westchester/ACE | K06590047 | Pelican Preserve | Sun City Blvd | City of Ft. Myers | 05/10/01 | | 05/10/10 | 2,824,680 | 42,796.46 |
| Westchester/ACE | K06590421 | Pelican Preserve | Tract F-Raffaello | City of Ft. Myers | 04/10/03 | | 05/09/10 | 370,879 | 72,431.90 |
| Westchester/ACE | K06591012 | Bishop Pit | Restoration of Wetlands | Palm Beach County | 09/02/04 | | 06/02/10 | 468,150 | 468,150.00 |
| Westchester/ACE | K06670835 | WCI Corp | Sales to NJ residents | State of NJ | 06/03/03 | 03/01/05 | 06/03/10 | 500,000 | 500,000.00 |
| Westchester/ACE | K06876876 | WCI Corp | Bond for Massachusetts Purch | State of MA | 06/03/03 | | 06/03/10 | 150,000 | 150,000.00 |
| Westchester/ACE | K06876816 | WCI Corp | Bond for Ohio purchases | State of Ohio | 06/03/03 | | 06/03/10 | 150,000 | 150,000.00 |
| Westchester/ACE | K06878957 | WCI Corp | Bond for Connecticut purchases | State of CT | 06/03/03 | | 06/03/10 | 250,000 | 250,000.00 |
| Westchester/ACE | K07073137 | COW Hotel-1st | Escrow bond at 10295 Collins Ave | Chicago Title/State Florida | 7/19/2005 | 7/9/2009 | 3/16/2010 | 6,600,000 | 1,281,920.00 |
| Westchester/ACE | K07623505 | The Plaza at Oceanside | Escrow bond at Pompano Beach | Chicago Title/State Florida | 12/4/2006 | 7/25/2008 | 12/8/2009 | 14,500,000 | 6,552,255.00 |
| Westchester/ACE | K07623736 | COW Residential-1st Replacement | Escrow bond at 10295 Collins Ave | Chicago Title/State Florida | 05/24/07 | 05/11/09 | 03/24/10 | 16,600,000 | 1,878,900.00 |

**WCI Communities, Inc. - Exhibit "C" to Confirmation Order**
Surety Bonds
August 29, 2009

| Surety/Bank | Bond/LOC No. | Project | Purpose | Obligee | Issue Date | Amendment Date | Expiry Date | Original Amount | Current Amount |
|---|---|---|---|---|---|---|---|---|---|
| Westchester/ACE | K07823112 | WCI Corp | Cover purchaser's deposits that are resident of Michigan State | Michigan Dept of Labor | 10/09/07 | | 10/09/09 | 150,000 | 150,000.00 |
| Westchester/ACE | K07823357 | Encore Atlantic Shores | Dedication of small portion of property to the NYSDOT along w/highway & work performed by WCI off site. | New York State Dept of Transportation | 03/04/08 | | 03/04/10 | 50,000 | 50,000.00 |
| XL Specialty | SB00080054 | Old Palm | Plat 5 infrastructure improvements and landscaping | City of Palm Beach Gardens | 2/03/2004 | 6/4/2006 | 02/70/10 | 529,953 | 52,995.34 |
| XL Specialty | SB00080292 | Manhattan Woods | Improvements | Town of Orangetown | 06/27/03 | | 06/26/03 | 137,208 | 137,208.00 |
| Bond Safeguard | 1013203 | Gafo | Escrow bond at Lost Key Marina | Chicago Title/State Florida | 12/14/2005 | 6/15/2009 | 12/14/2009 | 1,900,000 | 243,000.00 |
| Bond Safeguard | 5018772 | Pelican Preserve | Tract 1 | City of Ft. Myers | 9/18/2005 | 10/14/2008 | 09/18/08 | 3,201,491 | 650,055.58 |
| Bond Safeguard | 5020249 | Westshore | Final summary judgement entered against WCI in resolution litigation. Stafford vs. WCI litigation | Mr. Colin Stafford | 8/16/2007 | | 06/16/09 | 78,065 | 78,065.48 |
| Bond Safeguard | 5020299 | Evergrene | Final certification of punch list items and one year maintenance at 5%. | City of Palm Beach Gardens | 8/28/2007 | 9/8/2008 | 08/28/09 | 1,000,000 | 100,000.00 |
| Bond Safeguard | 5023929 | Sun City Center | OC license bond for Dave Nelsen | Hillsborough County | 7/1/2008 | | 07/01/09 | 5,000 | 5,000.00 |
| Lexon Insurance Company | 1012038 | Briarbay-1st | Escrow bond at Hammock Dunes | Chicago Title/State Florida | 4/27/2006 | 6/25/2007 | 4/27/2010 | 2,500,000 | 149,000.00 |
| Lexon Insurance Company | 1012035 | Hampton Park | Griffin Road improvements | Lee County | 06/11/05 | | 06/11/010 | 8,058 | 8,057.00 |
| Lexon Insurance Company | 1012210 | Castillo-1st | Escrow bond at Westshore Yacht Club | Chicago Title/State Florida | 6/17/2006 | 7/18/2008 | 6/17/2009 | 2,500,000 | 378,772.50 |
| Lexon Insurance Company | 1013060 | Westshore Yacht Club Townhomes I | Escrow bond at Westshore Yacht Club | Chicago Title/State Florida | 6/22/2005 | 1/21/2008 | 6/22/2010 | 1,910,595 | 368,597.00 |
| Lexon Insurance Company | 1013192 | Tidewater Preserve | 48th Street mitigation/monitoring phase 1 Wetland E | SWFWMD | 10/04/05 | 04/27/09 | 10/04/09 | 41,245 | 5,805.00 |
| Lexon Insurance Company | 1013284 | La Jonla-1st | Escrow bond at Hammock Dunes | Chicago Title/State Florida | 12/1/2005 | 6/15/2009 | 12/1/2009 | 1,400,000 | 946,000.00 |
| Lexon Insurance Company | 1016835 | Manchester Square | On site improvements required | Collier County | 02/23/06 | | 02/23/10 | 1,316,789 | 1,316,789.39 |
| Lexon Insurance Company | 1016836 | Manchester Square | Off Site improvements required | Collier County | 02/23/06 | | 02/23/10 | 243,435 | 243,435.59 |
| Lexon Insurance Company | 1016893 | Arezzo | Required for site improvements in Hammock Dunes | Flagler County | 03/22/06 | | 03/22/10 | 530,000 | 530,000.00 |
| Lexon Insurance Company | 1017730 | Cypress Pointe I, II, III, IV | Escrow bond at Haven Bay | Chicago Title/State Florida | 6/4/2008 | 7/18/2008 | 6/4/2010 | 3,000,000 | 449,392.00 |
| Lexon Insurance Company | 1017721 | Westshore Yacht Club Townhomes II | Escrow bond at Westshore Yacht Club | Chicago Title/State Florida | 6/4/2006 | 1/21/2008 | 6/4/2010 | 2,600,000 | 727,339.50 |
| Lexon Insurance Company | 1017724 | Westshore Yacht Club Townhomes III | Escrow bond at Westshore Yacht Club | Chicago Title/State Florida | 6/4/2006 | 6/25/2007 | 6/4/2010 | 1,600,000 | 1,514,501.74 |
| Lexon Insurance Company | 1017776 | Tidewater Preserve | Mitigation/monitoring phase 3 wetland F | SWFWMD | 05/18/06 | 04/27/09 | 05/18/10 | 49,091 | 7,795.00 |
| Lexon Insurance Company | 1017803 | Marsala | Fill project and constrict water, sewer, storm sewer, roads, street lights and irrigation. | Collier County | 05/24/06 | 01/21/08 | 05/31/10 | 2,976,233 | 433,074.48 |
| Lexon Insurance Company | 1016451 | Pelican Preserve | Roadway construction Pet Preserve Tract E | City of Ft. Myers | 10/27/06 | | 10/27/09 | 107,973 | 107,973.40 |
| Lexon Insurance Company | 1020250 | Artesia | Sewer installation for village homes Clusters East | Collier County | 06/04/07 | | 06/04/10 | 8,870 | 8,870.00 |
| Lexon Insurance Company | 1020276 | Evergrene | Permit required for intersection improvement at RCA Blvd and alternate A1A for permit w/County | Palm Beach County | 12/26/07 | | 12/26/09 | 48,709 | 48,700.00 |
| Lexon Insurance Company | 1020796 | Oceanside B | Landscape improvements for FDOT Right away. | FDOT | 05/14/08 | | 05/14/10 | 212,770 | 212,770.00 |
| Lexon Insurance Company | 1020683 | Marquesa Royale | Utility performance security for previously installed water and sewer system for 1 year warranty period. | Collier County | 05/09/08 | | 05/09/10 | 32,635 | 32,634.50 |
| Lexon Insurance Company | 1023607 | Marquesa Royale | Paving and drainage | Collier County | 07/09/08 | | 07/09/09 | 110,155 | 110,164.72 |