VIRGINIA:   IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

IN RE:   ALL PENDING CHINESE DRYWALL CASES

Civil Docket Nos.: CL09-3105; CL09-5127; CL09-5133; CL09-5135;
CL09-5137; CL09-5167; CL09-5168; CL09-5697;
CL09-5722; CL09-5763; CL09-5795; CL09-5822;
CL09-5891; CL09-5892; CL09-5893; CL09-5894;
CL09-5895; CL09-5901; CL09-5903; CL09-5932;
CL09-5946; CL09-6328; CL09-6329; CL09-6330;
CL09-6331; CL09-6332; CL09-6333; CL09-6334;
CL09-6365; CL09-6366; CL09-6367; CL09-6487;
CL09-6629; CL09-6630; CL09-6631; CL09-6720;
CL09-6721; CL09-6725; CL09-6726; CL09-6784;
CL09-6785; CL09-6820; CL09-6875; CL09-6876;
CL09-6878; CL09-6879; CL09-6880; CL09-6952;
CL09-7024; CL09-7078; CL09-7079; CL09-7320;
CL09-7321; CL09-7322; CL09-7556; CL09-7751;
CL09-7768; CL09-7769; CL09-7802; CL09-7803;
CL09-7859; CL09-7880; CL09-7977; CL10-0035;
CL10-0037

## MEMORANDUM OPINION

The matter comes before the Court on Defendants' demurrers to

Counts III through XI of the Plaintiffs' Complaints.  The Court heard oral

argument on those legal issues raised by demurrer that were common to

all consolidated cases.  The parties have reserved argument as Counts I,

II, and XII, as well as individual legal issues not common to all.  The Court

refers to Defendants in the two groups identified in the Complaint: the

Builder/Developer Defendants and the Manufacturer/Supplier Defendants.

As set forth herein, with respect to those issues submitted, the

Court rules as follows:

Count III – demurrers are OVERRULED.

Count IV – demurrers are OVERRULED.

Count V – demurrers are OVERRULED.

Count VI – demurrers are SUSTAINED.

Count VII – demurrers are SUSTAINED.

Count VIII – demurrers are SUSTAINED.

Count IX – demurrers are OVERRULED as to Manufacturer/ Supplier Defendants; and SUSTAINED as to Builder/Developer Defendants.

Count X – demurrers are SUSTAINED.

Count XI – demurrers are SUSTAINED.

## FACTUAL BACKGROUND

The many suits filed herein, which have been consolidated for pretrial purposes, are brought by homeowners seeking damages allegedly resulting from the importation, sale, and installation of defective Chinese drywall. The Complaints allege that the Chinese drywall is inherently defective because it emits various sulfide gases and other toxic chemicals that create noxious odors and cause damage and corrosion to various systems within their homes, as well as personal and other household property items. They also allege that the chemical compounds have caused and are causing personal injury to the occupants of the homes.

Chinese drywall has triggered a tsunami of cases nationwide, including thousands of federal complaints that have been consolidated into multidistrict litigation in the United States District Court for the Eastern District of Louisiana, with many more hundreds of cases pending in Florida, Louisiana, Alabama, Mississippi, Virginia, and North Carolina.

## COUNT III: IMPLIED WARRANTIES

Plaintiffs include three counts in their Complaints arising out of alleged breaches of implied warranties. With Count III, against all defendants, Plaintiffs assert a general breach of implied warranties; in Count IX, Plaintiffs claim a breach of the implied warranty of merchantability against all defendants; and in Count X, they assert a breach of the implied warranty of fitness for a particular purpose. The Complaint does not identify the source of any of the warranties alleged in these counts, but the parties have acknowledged in their briefs that Counts IX and X asserted warranty claims available only under the Uniform Commercial Code, while Count III addressed common-law warranty claims and/or any other available statutory warranties.

The Builder-Developer Defendants acknowledge that buyers of new homes enjoy a statutory warranty provided in Virginia Code § 55-70.1. They demur on the basis of Plaintiffs' failure to plead the particulars relating each claimed warranty, including the date that it commenced, the

3

date of the breach, and the date and substance of any notice of breach. In some of the cases, they assert that the statutory warranty extends only to the initial vendee of a new home and not a subsequent purchaser. In addition, *citing Bruce Farms, Inc. v. Coup,* 219 Va. 287, 247 S.E.2d 400 (1976), they also ask the Court to rule that no warranties other than those provided for § 55-70.1 apply to the transactions at issue in this litigation against them.

Section 55-70.1 does not include the pleading requirements cited by the Builder-Developers. Unless otherwise specified by statute, Rule 1:4(j) authorizes pleadings to include simple statements accompanied by the essential facts alleged. The Court finds that Count III meets this requirement. Also, the statute does not expressly limit the benefit of the warranty to the initial transferee as opposed to subsequent vendees, as argued in some of the cases. The Court declines to issue the requested ruling as to the alleged exclusivity of warranties under § 55-70.1 in the context of a demurrer to the Complaint.

The remaining defendants demur to Count III for reasons that the Court determines to be those more appropriately heard in an evidentiary hearing. They allege, *inter alia,* that the UCC warranties invoked in Counts IX and X are the only applicable warranties relating to their transactions and there are no other claims that could be the subject of

4

Count III. Tobin Trading alleges that it never sold anything to Plaintiffs, so it may not be held liable in warranty at all. Reference to Plaintiffs' pleadings, however, indicate that the count has been properly pled and is supported by sufficient factual allegations to permit Count III to withstand demurrer.

All demurrers to Count III are overruled.

## COUNT IV: NEGLIGENCE

Count IV alleges that all Defendants were negligent in creating the dangerous condition presented by the Chinese drywall. Defendants' demurrer to this count argues that the economic loss rule (the "ELR") bars Plaintiffs from recovering economic damages such as the cost to repair the drywall and repair the damage to their homes.

In support of their Demurrer, Defendants largely rely upon *Sensenbrenner v. Rust*, 236 Va. 419, 374 S.E.2d 55 (1988), a decision that in turn relied upon the United States Supreme Court decision in *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858 (1986).

In *Sensenbrenner*, homeowners asserted a negligence claim against an architect and a pool subcontractor with whom they were not in privity, alleging that negligence in the design and construction of their swimming pool caused damage to their home. The Supreme Court of Virginia found that the homeowner could not recover in tort because both the pool and

5

the home were elements of the "package" that was the subject of the parties' contract with their builder. In arriving at this conclusion, the Court reasoned that the plaintiffs alleged nothing more than disappointed economic expectations. The Court discussed the distinction between tort losses and disappointed economic expectations:

> The law of torts is well equipped to offer redress for losses suffered by reason of a 'breach of some duty imposed by law to protect the broad interests of social policy.' Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates and analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contract.
>
> The controlling policy consideration underlying tort law is the safety of persons and property—the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for.

236 Va. at 425, 374 Va. at 58 (citation omitted). Elsewhere, the Court held that "when a plaintiff alleges and proves nothing more than disappointed economic expectations, the law of contracts, not the law of torts, provides the remedy for such economic losses." *Filak v. George* , 267 Va. 612, 618. 594 S.E.2d 610, 613 (2004).

All parties claim that the ELR bars the negligence cause of action and that Plaintiffs are limited to damages available under the law of contract. At oral argument, certain Defendants conceded that Plaintiffs

6

may sue in negligence for personal injury and for damages to property that was not part of the home itself (e.g., damaged computers but not damaged wiring or HVAC). They contend that remaining damages claimed, including those associated replacement of the drywall, are barred by the ELR.

These precise issues were addressed at length in an opinion authored by Judge Fallon in the United States District Court for the Eastern District of Louisiana, presiding judge over the Multi-District Litigation involving Chinese Manufactured Drywall (MDL No. 2047, Section L). In his January 13, 2010 Order and Reasons, Judge Fallon analyzed the ELR under the laws of states that, like Virginia, have followed the precedent of the United States Supreme Court decision in *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. at 858. He noted that "from the origin of the ELR in *East River*, through its development in various states, ⋯ it is clear that the ELR targets products which fail to meet a plaintiff's economic expectations, as distinguished from products which pose an unreasonable risk of harm to a plaintiff's property and health, but do not fail to meet their intended purpose. For this latter group, the ELR has no relevance." Opinion at 15.

Analyzing the facts of *East River*, which involved defectively designed turbine components on supertankers which caused only the

7

turbines to malfunction, Judge Fallon observed that there were few similarities between the facts and rationale of that case and those involving Chinese drywall:

> The instant matter does not involve a non-operational product like the turbines in *East River*. Rather, the Chinese drywall in the instant matter is operating as intended – as an interior wall and/or ceiling, a room divider, a shell for insulation and wiring, and a base for hanging various items, such as lighting fixtures and decorative items.  It is not crumbling, deteriorating, or failing to serve its intended purpose.  The allegations involving the Chinese drywall are that it is contaminating the home by giving off noxious fumes, which are corroding certain metal elements located within the property where the drywall is installed, and is causing health problems to the inhabitants of this property.  Factually, this contrasts with defective turbines which ceased to run.

*Id.* at 19.  Because the Chinese drywall was serving its intended purpose but was also posing an unreasonable risk of harm to property and health, Judge Fallon ruled that the ELR did not apply; and the negligence claims were not barred.

In consolidated Chinese Drywall litigation pending in Miami – Dade County, Florida, a Florida state court has likewise denied motions to dismiss tort claims under the ELR for the same reasons.  In its December 18, 2009 order, the Circuit Court of the Eleventh Judicial Circuit held:

> The purported off-gassing of sulfur-based compounds has not caused the drywall to fail at its general purpose and function.  Instead, the off-gassing places the drywall into a category of products whose failure may have created an unreasonable risk of harm.  As such, the economic loss rule

8

will not be employed to restrict the plaintiffs, and they are
permitted to maintain their tort claims as currently alleged.

*In re Chinese Drywall Litig.*, No.09-200,000 (Fla. Cir. Ct. Dec. 18, 2009).

Defendants have cited to the Court a number of Virginia decisions
involving negligence claims within the context of building construction
litigation, including *Rotunda Condominium Unit Owners Assoc. v. Rotunda
Assoc.*, 238 Va. 85, 380 S.E.2d 876 (1989)(alleging structural defects),
*Bay Point Condominium Assoc., Inc. v. RML Corp* 52 Va. Cir. 432 (Norfolk
2000)(involving EIFS/synthetic stucco that failed to prevent water
intrusion into walls), and *MacConkey v. F.J. Matter Design, Inc.*, 54 Va.
Cir. 1 (Va. Beach 2000) (EIFS/water intrusion case). The cases cited each
involved a product that failed to meet the bargained-for level of quality,
causing a diminution in the value of the plaintiff's property.

More analogous to the facts at bar are decisions relating to tort
claims and economic losses involving asbestos fireproofing. Like Chinese
drywall, asbestos fireproofing served its intended structural and fire
retardant purpose; but it also presented the potential to cause damages
and personal injury. As the United States Court of Appeals for the Fourth
Circuit ruled, in a case applying South Carolina law:

> In both *East River* and *Watermark [Association v. Celetex
> Corp.*, 784 F.2d 1183 (4th Cir. 1986)] the defective products
> injured only themselves. There was no claim of any injury or
> threat of injury to persons or to other property. By contrast,

9

the injury that resulted from the installation of [asbestos] in this case is the contamination of the Greenville City Hall with asbestos fibers, which endanger the lives and health of the building's occupants. In our opinion, this is not the type of risk that is normally allocated between the parties to a contract by agreement, unlike the risk of malfunctioning turbines at issue in *East River* or the risk of faulty roofing shingles involved in *Watermark*.

*City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975, 977–78 (4th Cir. 1987).

The Court finds no notable differences in the law applied by Judge Fallon in his decision and Virginia ELR law, which also traces its roots to the *East River* decision. For the reasons stated herein, the Court declines to rule that the claims in Count IV are barred by the ELR.

The Builder/Developer Defendants also demur to Count IV on the basis that the only duties owed to Plaintiffs were those imposed by contract. The Court holds that the duty to avoid creating an unsafe condition within Plaintiffs' homes and to avoid injuring Plaintiffs are duties imposed by law and not dependent upon the terms of their contracts with Plaintiffs. As Judge Klein wrote,

> Although this court fully agrees with the rationale underlying the Supreme Court of Virginia's decision [*Kamlar Corp. v. Haley*, 224 Va. 699 (1983)] holding that a breach of contract should not inevitably lead to litigation also sounding in tort, the court declines to extend this rationale to preclude a personal injury claim by someone claiming serious injury arising from a contracting party's creation of an unreasonably dangerous condition.

10

*Gonella v. Lumbermens Mutual Casualty Co.,* 64 Va. Cir. 229, 235 (Fairfax 2004).   To the same effect, in *Meng v. The Drees Co.,* 77 Va. Cir. 442 (Loudoun 2009), the court ruled that "as a result of negligence on the part of the builder, an unsafe condition was created within the household leading to injury and damages being sustained by the plaintiffs.  The duty to avoid creating such a condition and of injuring the plaintiffs is one imposed by law and not dependent upon the terms of the contract." *Id.* at 444. The *Meng* Court quoted Professor Keeton's treatise:

> Generally speaking, there is a duty to exercise reasonable care in how one acts to avoid physical harm to persons and tangible things.   Entering into a contract with another pursuant to which one party promises to do something does not alter the fact that there was a preexisting obligation or duty to avoid harm when one acts.

W. Page Keeton, *Prosser and Keeton on the Law of Torts* 656-57 (5th ed. West 1984).

Therefore, although the Builder/Developer Defendants may have had contract duties relating to the claims asserting herein, the Court finds that Plaintiffs have properly alleged breach of duties owed by common law as well.

The demurrers to Count IV are OVERRULED.

11

COUNT V: NEGLIGENCE PER SE

Plaintiffs' negligence per se claims allege that Defendants breached statutory duties to Plaintiff "including but not limited to statutory duties imposed under the Virginia Building Code." The doctrine of negligence per se represents the adoption of "the requirements of a legislative enactment as the standard of conduct of a reasonable man." *Butler v. Frieden*, 208 Va. 352, 353, 158 S.E.2d 121, 122 (1967). The Virginia Supreme Court explained the doctrine:

> A party relying on negligence per se does not need to establish common law negligence provided the proponent produces evidence supporting a determination that the opposing party violated a statute enacted for public safety, that the proponent belongs to the class of persons for whose benefit the statute was enacted and the harm suffered was of the type against which the statute was designed to protect, and that the statutory violation was a proximate cause of the injury.

*McGuire v. Hodges,* 273 Va. 199, 206, 639 S.E.2d 284, 288 (2007),

Defendants rely upon a number of circuit court decisions holding that the Virginia Building Code was not intended to provide the basis of a duty in a negligence claim for damages. Indeed, this Court so held in *Ripley Hetwole Co., Inc. v. Hall Electrical Contractor,* 69 Va. Cir. 69 (Norfolk 2005).

Since the circuit court cases cited by Defendants were decided, the Virginia Supreme Court approved the negligence per se doctrine in a case

12

involving the violation of an applicable building code provision.   In
*McGuire v. Hodges*, 273 Va. at 199, 639 S.E.2d at 284, the Court
permitted a building code provision relating to swimming pool enclosures
to supply the statutory violation required for negligence per se:

> The evidence was clearly sufficient ⋯ that [the defendant]
> violated the Building Code because the pool gate latch was
> not self-latching and the latch itself was substantially lower
> ⋯ than required. [Plaintiff's decedent] was clearly within the
> class of individuals meant to be protected because Section
> 616.9 of the National Building Code specifically required the
> fence to make the pool entirely inaccessible to small children.
> The harm suffered here, [the child's] drowning, was the type
> against which the statute was designed to protect.

*Id.* at 207.   Application of the *McGuire* holding confirms that plaintiffs may
properly refer to the building code for the required statutory violation.

Defendants additionally argue that Plaintiffs have not suffered the
types of harm against which the building code provisions were designed to
protect and that alleged building code violations did not proximately cause
the claimed injuries.   Plaintiffs do have the burden of satisfying those
requirements, but whether they have met those burdens present issues
that must be determined by the fact-finder at trial.

Plaintiffs' pleadings satisfy the pleading standard for a negligence
per se claim, and the Court will permit Count V to go forward on the basis
of alleged building code violations.

13

## COUNT VI: UNJUST ENRICHMENT

In Count VI, Plaintiffs characterize Defendants' "receipt and retention of the profits gained by sale of the defective drywall" as unjust and inequitable. Plaintiffs do not, however, limit their prayer to the return of profits unjustly retained; they recite that they have "sustained substantial damages as set forth herein. Compl. ¶ 47.

Unjust enrichment provides the basis for implying an equitable contract where there is no express contract. *Raven Red Ash Coal Co. v. Ball,* 185 Va. 534, 542–43, 39 S.E.2d 231, 235 (1946). In order to state a cause of action for unjust enrichment, Plaintiffs must allege (1) they conferred a benefit on Defendants, (2) Defendants were aware of the benefit and should reasonably have expected to pay for it, and (3) Defendants failed to pay for the benefit's value. *Schmidt v. Household Finance Corp.,* 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008).

The Manufacturer/Supplier Defendants argue that they had no contact with any of the Plaintiffs, that they received no benefit from Plaintiffs, and that no facts are alleged to indicate that they should have known that some payment from them to Plaintiffs was expected. The Builder/Developer Defendants argue that a claim for unjust enrichment is a judicially created rationale for implying the existence of a contract where no express contract exists. Because they also face liability for

14

breach of contract and express warranty, they claim that unjust enrichment has no application to them. Additionally, they argue the absence of any facts alleged to indicate that they received a benefit from Plaintiffs for which they should have expected to pay.

Plaintiffs contend that they sufficient pleaded each element of unjust enrichment, but Count VI has no facts to support any allegation that Defendants should have reasonably expected to pay Plaintiffs for something. Plaintiffs have not cited any case in which a defendant who allegedly provided defective goods or services was held liable under this theory. The heart of an unjust enrichment claim is the implied promise that a defendant would pay for a benefit that he received: "One may not recover under a theory of implied contract simply by showing a benefit to the defendant, without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit." *Nedrich v. Jones*, 245 Va. 465, 476, 429 S.E.2d 201, 207 (1993).

The failure to plead anything about Defendants' reasonable expectation to pay Plaintiffs for some benefit that they received is fatal to this claim. While builders, developers, manufacturers and suppliers all perhaps expect to face a claim for damages in the event of some breach of duty on their part, they have no reason to expect to repay the benefit that they realized from the transaction. Profits realized from business

15

transactions often bear no relationship to reasonably foreseeable damages that might flow from a breach of duty. Return of profits, as opposed to liability for foreseeable damages, would almost certainly be an inferior remedy to customers adversely affected by defective products. The bare allegation that a defendant should be expected to repay whatever profits it realized from a sale to an unhappy customer does not state a claim for unjust enrichment. Thus, the Court SUSTAINS all Defendants' demurrers to Count VI.

### COUNT VII: PRIVATE NUISANCE

Count VII alleges that Defendants' acts or omissions created a private nuisance. Under Virginia law:

> A private nuisance is the using, or authorizing the use of, one's property, or of anything under one's control, so as to injuriously affect an owner or occupier of property (1) by diminishing the value of that property; (2) by continuously interfering with his power of control or enjoyment of that property; (3) by causing material disturbance or annoyance to him in his use or occupation of that property.

*Virginia Railway Company v. London*, 114 Va. 334, 344–45, 76 S.E. 306, 308 (1912). Defendants demur to Count VII on the grounds that they have no ownership or control over the drywall that is causing the nuisance. Defendants point out that control is an essential element to a private nuisance cause of action. Without control over the material, Defendants have no opportunity to abate the nuisance or provide a remedy.

16

Plaintiffs concede that the Supreme Court of Virginia has not yet recognized private nuisance as a cause of action against defendants who no longer control the alleged nuisance. They argue that the Court's broad definition of the realm of private nuisance law indicates that it would accept the application of existing nuisance principles to defective products, citing *City of Virginia Beach v. Murphy*, 239 Va. 353, 389 S.E.2d 462 (1990)(appeal of trial court's dismissal of prosecution of restaurant owner for allowing loud music, reversing lower decision that city noise ordinance was unconstitutional), *National Energy Corp. v. O'Quinn*, 223 Va. 83, 286 S.E.2d 181 (1982)(affirming judgment against operator of coal processing plant in favor of neighbors who alleged nuisance) and *Fairfax County v. Parker*, 186 Va. 675, 44 S.E.2d 9 (1947)(challenge to validity of zoning ordinance).

Plaintiffs cite the Restatement (Second) of Torts as their supporting authority for the principle that a defendant's liability for harmful physical conditions should continue:

> If he creates the condition upon land in his possession and thereafter sells or leases it to another, he is subject to liability for invasions caused by the condition after the sale or lease as well as for those occurring before.

Restatement (Second) of Torts § 834, comment e (1979). Plaintiffs further cite a Wisconsin asbestos case where the Court held that manufacturers of

17

the asbestos may be held responsible for the continuing nuisance despite the fact that they had relinquished ownership. *Northridge Co. v. W.R. Grace & Co.*, 205 Wis.2d 267, 556 N.W.2d 345.

First, the Court is not persuaded that the Virginia decisions cited by Plaintiffs illustrate a "broad definition of the realm of private nuisance law" in Virginia.   (Pl. Memo at 31).   Two of the cited cases involved challenges to ordinances, and the third applied the 1912 holding in *Virginia Railway Company v. London*, 114 Va. at 334, to a coal operator that was interfering with the neighbors' enjoyment of property by generating loud noise and dust.

In any event, without prognosticating about whether the Virginia Supreme Court would adopt "comment e" to Section 834 of the Restatement, the Court notes that reliance upon that provision to the facts at bar seems misplaced.   The comment itself references a condition created "upon land."   Cases which have used the theory of liability articulated in "comment e" uniformly involve conditions that a defendant has created on his own land with resultant damage to the plaintiff or the plaintiff's land. *See generally, Keeley v. Manor Park Apartment*, 99 A.2d 248 (Del.Ch. 1953) (defendants had demanded the construction of a concrete conduit and retained a right of usage on land as part of the transfer of the land to a third party); *Walter v. Wagner*, 225 Ky. 255, 8

S.W.2d 421 (1928) (claim of private nuisance allowed to go forward against defendant who had sold property after raising its surface, causing flooding and mud slides onto plaintiff's property); *Dorman v. Ames*, 12 Minn. 451 (1867) (defendant held liable for nuisance caused by a mill dam that he had constructed despite having sold it to a third party); *Merrick v. Murphy*, 83 Misc.2d 39, 371 N.Y.S.2d 97 (1975) (prior owner of land who had torn down a retaining wall between a public road and a deep excavation on the land could be held liable for nuisance when plaintiff drove off road into excavation area).

The Court finds that these cases are not analogous to the situation at bar. Plaintiffs make no allegation about any condition that Defendants created on land. The Court has not located any Virginia authority extending private nuisance liability to someone who sold, handled, or installed a dangerous product manufactured by another. The Wisconsin decision in *Northridge Co. v. W.R. Grace & Co.*, 205 Wis.2d 267, 556 N.W.2d 345 would arguably support this cause as to the manufacturer if the manufacturer of the Chinese drywall were before the Court; but none of Defendants herein "created" the danger.

The Court declines Plaintiffs' request to extend Virginia private nuisance law to impose liability on defendants who sold or installed a dangerous product but who no longer exercise ownership or control over

it.    The Court agrees with the analysis in *City of Manchester v. Nat'l Gypsum Co.*, 637 F. Supp. 646, (D.R.I. 1986) and *Tioga Public School District v. U.S. Gypsum Co.*, 984 F.2d 915 (8th Cir. 1993) where both courts  determined that nuisance is not a viable action against defendants who have no further control of the contaminated materials.

The Court SUSTAINS Defendants' demurrers to Count VII.

COUNT VIII:  EQUITABLE RELIEF AND MEDICAL MONITORING

Plaintiffs request equitable relief in Count VIII, including a request for an order compelling Defendants to initiate a medical monitoring program for those plaintiffs not presently claiming personal injuries, as well as a requirement that Defendants repair their homes and damaged property.

Plaintiffs have also prayed for an award of damages sufficient to cover the cost of repair or replacement of their homes and other damaged property.   As to that aspect of their claims, Plaintiffs have pleaded no facts to suggest that the requested monetary award to cover those costs would  be  inadequate.    Further,  the  request  for  an  order  requiring Defendants to perform the repairs on Plaintiffs' homes states a request that even a court of chancery would not favor: "[C]ourts of chancery ⋯ will not entertain a bill for the specific enforcement of contracts for personal services or acts involving skill, labor and judgment." *Campbell v.*

*Rust*, 85 Va. 653, 667, 8 S.E. 664, 669 (1889). *See also Levisa Coal Company v. Consolidation Coal Co.*, 276 Va. 44,, 61, 662 S.E.2d 44, 53 (2008)("[T]he guiding principle which remains constant is that the granting of an injunction is an extraordinary remedy that rests on the sound judicial discretion to be exercised upon consideration of the nature and circumstances of a particular case").

Plaintiffs appear to have an adequate remedy at law for the repair and replacement costs and are not entitled to the extraordinary remedy of specific enforcement or other equitable relief.

The request for medical monitoring states a claim that has not previously been recognized in Virginia. Plaintiffs contend that the Virginia Supreme Court "is likely to recognize a medical monitoring claim in light of its recognition of a parties' right to recover future medical damages." Pl. Opposition Memo at 39. Plaintiffs cite twelve decisions from other jurisdictions in which courts have recognized the compensability of claims for medical monitoring for individuals at risk of serious disease from exposure to toxic contaminants. Those courts have in some cases fashioned court-supervised funds to administer medical-surveillance payments. *See, e.g., Ayers v. Township of Jackson,* 106 N.J. 557, 525 A.2d 287 (1987), where the Court acknowledged that "there may be administrative and procedural questions in the establishment and operation

21

of such a fund" but nonetheless encouraged trial courts to establish such funds in mass-exposure cases.   Plaintiffs' counsel clarified at oral argument that Plaintiffs were requesting the establishment of such a fund in those cases before this Court where no personal injury is alleged.

The Court has reviewed a law review article cited by Plaintiffs' counsel in which the author advocates for the recognition of medical monitoring damages and the concomitant establishment of public health funds for victims of toxic exposure. *See* Taylor, *Public Health Funds: The Next Step in the Evolution of Tort Law,* 21 B.C. Envtl. Aff. L. Rev. 753, 777-78 (1994).   While she makes a strong case that "public health funds are the essential next step in the evolution of tort law to accommodate toxic torts," *(Id.* at 800), she also characterizes the claim as "novel" and an "innovative damage theory:"

> Whether a public health fund is recognized as a component of medical monitoring damages or as its own cause of action in equity, public health funds must be recognized and fully utilized if our society is to be free of the threat of toxic chemicals.

*Id.*

Circuit courts are not empowered to establish "novel" or "innovative" remedies that depart from Virginia common-law or legislative authority.   Even though this Court might recognize the merits of a monitoring program for those who have been exposed to Chinese

22

drywall, the creation of such a program is one for the legislature and not the courts.[1] As the Virginia Supreme Court reasoned in its refusal to recognize a claim for implied warranty in sales of new homes:

> The issue involves a multitude of competing economic, cultural, and societal values which courts are ill-equipped to balance, a fact best illustrated by the disparate conclusions reached by the several courts which have tinkered with the common law rule. On the other hand, the legislative machinery is specially geared to the task. A legislative change in the law is initiated by introduction of a bill which serves as public notice to all concerned. .. The issue is tried and tested in the crucible of public debate.

*Bruce Farms v. Coupe*, 219 Va. 287, 293, 247 S.E.2d 400 (1976).

Therefore, although the claim for medical monitoring may in fact be a claim for which Plaintiffs have no adequate remedy at law, the Court does not find that it has the authority to fashion that remedy without authorization or guidance from the General Assembly.

For these reasons, the demurrers to Count VIII will be sustained.

### COUNT IX – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

Count IX asserts a breach of the implied warranty of merchantability, a warranty created in Virginia by the Uniform Commercial

---

[1] The Virginia General Assembly has just enacted the Virginia Defective Drywall Correction and Restoration Assistance Fund, HB 46, which establishes a fund to promote the correction and restoration of residential property affected by Chinese drywall. Several other bills relating to the Chinese drywall problem were considered in the 2010 session but not passed (e.g. HB44, HB45, SB, 298, SB 471, and SB523. See http://leg1.stat.va.us). Obviously the General Assembly recognizes the problem presented by Chinese drywall and has made a legislative decision about remediation that did not include or address medical monitoring costs.

Code, Va. Code § 8.2-314. The availability of this remedy first requires consideration of the applicability of the UCC to the transactions that caused the alleged injuries to Plaintiffs in these cases.

Ample case authority has considered this precise issue and come down on different sides of the question. Defendants contend that the UCC has no application to the sale of building material that becomes incorporated into real property, citing cases including *Bay Point Condo Ass'n v. RML Corp.,* 54 Va. Cir. 422, 431 (Norfolk 2001) and *Winchester Homes, Inc. v. Hoover Universal, Inc.,* 30 Va. Cir. 22, 30 (Fairfax 1992).

The Court considers the most persuasive authority on this issue to be the decision in *Stoney v. Franklin,* 54 Va. Cir. 591 (Suff. 2001), which overruled demurrers to implied warranty claims against manufacturers and assemblers of building materials:

> The plaintiffs seek to enforce the implied warranties made by the manufacturers and assemblers of the building products. Those transactions clearly involved sales of goods, not contracts for services or real estate. Under Va. Code Ann. § 8.2-105(1), goods exist if they "are movable at the time of identification to the contract of sale." In context, the "contract of sale" identifying the goods refers to the sale involving the seller that made the implied warranty – not simply the party with whom the claimant contracted.

54 Va. Cir. at 601. The *Stoney* Court was sharply critical of the decision in *Winchester Homes, Inc. v. Hoover Universal, Inc.,* 30 Va. Cir. at 22, which was cited by most of the courts that have upheld the position

24

asserted by Defendants in this case. *Stoney* also noted, however, that the UCC remedy was not available against a builder who sold a completed home that had incorporated defective building materials, because that transaction did not involve "goods."

Therefore, the Court does find that the UCC implied warranties are available against the Manufacturer/Supplier Defendants; but they are not available against the Builder/Developer Defendants who were not parties to any sale of "goods" that are the subject of Plaintiff's claims.

Venture Supply, Inc. also demurs on the basis that its transactions were outside of the UCC because it predominantly provided services with the provision of drywall only incidentally involved. See *Palmetto Linen Service v. U.N.X., Inc.*, 205 F.3d 126, 129 (4th Cir. 2000)(test for inclusion of mixed contract for goods and services is whether their predominant thrust is rendition of service with goods incidentally involved or a transaction of sale, with labor incidentally involved). The Court has no evidence upon which to resolve that issue at the demurrer stage and declines to dismiss the count against Venture Supply. That issue is reserved for trial.

The demurrer to Count IX will be sustained as to the Builder/Developer Defendants and overruled as to the remaining Manufacturer/Supplier Defendants.

## COUNT X – BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE

Count X asserts breaches of the implied warranty of fitness for a particular purpose, another remedy created by the Uniform Commercial Code.  For the reasons stated above, this count does not lie against the Builder/Developer defendants.

Remaining Defendants contend that the Complaint fails to allege that the seller knew of any "particular purpose" for which the drywall was required and that the buyer was relying on the seller's skill or judgment to select or furnish suitable goods, as required by Va. Code § 8.2–315.

The Complaint alleges that the "specific purpose" of the drywall was "being installed in the Plaintiff's family home as a building material." (¶ 72).  All drywall, however, is intended to be installed and function properly as a building material. The Court does not find that Count X alleges a purpose beyond the ordinary purpose for which all drywall is used.  The Official Comment to Section 2–315 of the UCC explains:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business, whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

26

Official Comment, UCC § 2-315. Nothing in the Complaint describes any specific use of drywall by these dozens of affected plaintiffs that was peculiar to the nature of their residences. To borrow the analogy of the Official Comment, the Court finds that Plaintiffs' Complaint involves walking shoes and not climbing shoes, such that an action for breach of the implied warranty for a particular purpose is not available.

The demurrers of all Defendants to Count X will be sustained.

### COUNT XI – VIRGINIA CONSUMER PROTECTION ACT

In Count XI, Plaintiffs charge Defendants with violations of the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196 et seq. In support of their VCPA cause of action, Plaintiffs allege Defendants violated the VCPA by misrepresenting the source, affiliation, origin, characteristics, ingredients, standards, and quality of the drywall. Also, Plaintiffs allege that Defendants violated the VCPA by mislabeling the drywall as "Venture Supply, Inc." drywall.

Defendants' demurrer to Plaintiff's VCPA claim argues that, as a matter of law, Plaintiffs cannot state a VCPA claim against Defendants because the transactions on which Plaintiffs premise their misrepresentation allegations were beyond the scope of the VCPA.

The VCPA makes it unlawful for a supplier to make certain misrepresentations in connection with a consumer transaction. Va. Code § 59.1-200. A "consumer transaction," as applicable to this case, is "the advertisement, sale . . . or offering for sale . . . goods or services to be used primarily for personal family or household purposes." Va. Code § 59.1-198. "Goods" are "all real, personal, or mixed property." Va. Code § 59.1-198. A "supplier" is "[a] seller . . . who advertises, solicits, or engages in consumer transactions, or a manufacturer or distributor who advertises and sells . . . goods or services to be resold . . . by other persons in consumer transactions." Va. Code § 59.1-198.

A sale between commercial parties of a good intended for use as a component part in the construction of a building is not a "consumer transaction" within the meaning of the VCPA. As discussed earlier, Plaintiffs had no direct contact with any of the Manufacturer/ Supplier Defendants. The transactions in Chinese drywall in which those parties participated involved builders, contractors, and developers and fall outside the VCPA definition of "consumer transaction." Plaintiffs have not cited any authority for the proposition that sales of building material to general contractors for use in construction of a residence is a transaction covered by the VCPA. Ample case authority holds that it is not. *See, e.g. Murray v. Dryvit Systems, Inc,* 61 Va. Cir. 643, 648 (Franklin 2002). *Bindra v.*

28

*Bowman*, 58 Va. Cir. 47, 50–51 (Fairfax 2001); *Sargeant v. Early Street Properties*, 56 Va. Cir. 168, 170 (Alexandria 2001); *MacConkey v. J.F. Matter Design, Inc.*, 54 Va. Cir. 1,2 (Virginia Beach 2000).

Therefore, as to the Manufacturer/ Supplier Defendants, the demurrer to Count XI will be sustained.

Sales of residences by builders and developers to consumers, in contrast, are covered by the VCPA. The allegations that those defendants misrepresented the source and characteristics of the drywall satisfy the pleading requirements for a claim under the VCPA. The demurrer of the Builder / Developer Defendants to Count XI will be OVERRULED.

### CONCLUSION

Counsel are directed to submit any written exceptions to this Order within 10 days.

ENTERED: 3-29-2010

MARY JANE HALL, JUDGE

VIRGINIA:   IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

IN RE:   PENDING CHINESE DRYWALL CASES

Civil Docket Nos.: CL09-3105; CL09-5127; CL09-5133; CL09-5135;
CL09-5137; CL09-5167; CL09-5168; CL09-5697;
CL09-5722; CL09-5763; CL09-5795; CL09-5822;
CL09-5891; CL09-5892; CL09-5893; CL09-5894;
CL09-5895; CL09-5901; CL09-5903; CL09-5932;
CL09-5946; CL09-6328; CL09-6329; CL09-6330;
CL09-6331; CL09-6332; CL09-6333; CL09-6334;
CL09-6365; CL09-6366; CL09-6367; CL09-6487;
CL09-6629; CL09-6630; CL09-6631; CL09-6720;
CL09-6721; CL09-6725; CL09-6726; CL09-6784;
CL09-6785; CL09-6820; CL09-6875; CL09-6876;
CL09-6878; CL09-6879; CL09-6880; CL09-6952;
CL09-7024; CL09-7078; CL09-7079; CL09-7320;
CL09-7321; CL09-7322; CL09-7556; CL09-7751;
CL09-7768; CL09-7769; CL09-7802; CL09-7803;
CL09-7859; CL09-7880; CL09-7977; CL10-0035;
CL10-0037

ORDER

For the reasons stated in the Court's Memorandum Opinion dated
March 29, 2010, the Court rules as follows:

    1.    Count III – demurrers are OVERRULED;

    2.    Count IV – demurrers are OVERRULED;

    3.    Count V – demurrers are OVERRULED;

    4.    Count VI – demurrers are SUSTAINED;

    5.    Count VII – demurrers are SUSTAINED;

    6.    Count VIII – demurrers are SUSTAINED;

7.    Count IX – demurrers are OVERRULED as to Manufacturer/ Supplier Defendants; and SUSTAINED as to Builder/ Developer Defendants;

8.    Count X – demurrers are SUSTAINED; and

9.    Count XI – demurrers are OVERRULED as to Builder/ Developer Defendants and SUSTAINED as to Manufacturer/ Supplier Defendants.

Counsel are directed to submit any written exceptions to this Order within 10 days.

Pursuant to Rule 1:13 endorsements of counsel are waived.

Let the Clerk forward certified copies of this Order to counsel for the parties.

It is so ORDERED.

ENTERED: This 29ᵗʰ day of March, 2010

MARY JANE HALL, JUDGE