# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | : | **MDL NO. 2047** |
| **IN RE: CHINESE MANUFACTURED DRYWALL** | : | |
| **PRODUCTS LIABILITY LITIGATION** | : | **SECTION:  L** |
|  | : | |
|  | : | **JUDGE FALLON** |
|  | : | **MAG. WILKINSON** |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**This Document Relates to:** *Pate v. American International Specialty Lines Insurance Co.*, No. 09-7791; *Centerline Homes Construction, Inc. v. Mid-Continent Casualty Co.*, No. 10-178; and *Northstar Holdings, Inc. v. General Fidelity Insurance Co.*, No. 10-384 **.**

## ORDER & REASONS

Before the Court are the following motions to dismiss:  Mid-Continent Casualty

Company's ("MCC") Motion to Dismiss in *Pate v. American International Specialty Lines*

*Insurance Co.*, No. 09-7791(E.D. La. filed Dec. 23, 2009), *consolidated with,* No. 09-md-2047

(E.D. La. filed June 15, 2009)(R. Doc. 2156); MCC's Motion to Dismiss in *Centerline Homes*

*Construction, Inc. v. Mid-Continent Casualty Co.*, No. 10-178 (E.D. La. filed Jan. 26, 2010),

*consolidated with,* No. 09-md-2047(R. Doc. 2282); MCC's Motion to Dismiss in *Northstar*

*Holdings, Inc. v. General Fidelity Insurance Co.*, No. 10-384 (E.D. La. filed Feb. 12, 2010),

*consolidated with,* No. 09-md-2047 (R. Doc. 2843); FCCI Commercial Insurance Co. and FCCI

Insurance Co.'s (collectively referred to as "FCCI") Motion to Dismiss in *Pate*, No. 09-7791 (R.

Doc. 2147); Owners Insurance Company's ("Owners") Motion to Dismiss in *Pate*, No. 09-7791

(R. Doc. 3302); and NGM Insurance Co.'s ("NGM") Motion to Dismiss in *Pate*, No. 09-7791

(R. Doc. 3174).  Each of these motions raises a personal jurisdiction challenge, among others, to

support the relief sought.  A briefing and hearing schedule on the personal jurisdiction

challenges was established by the Court, which culminated in a hearing on November 3, 2010.

1

The Court ruled from the bench after reviewing the briefs, applicable law, and hearing from the parties on oral argument.  The Court denied MCC's personal jurisdiction challenges in all three of its motions, denied FCCI's personal jurisdiction challenge, but granted both Owners' and NGM's personal jurisdiction challenges.  *See* (R. Doc. 6330).  Nonetheless, the Court finds it appropriate to issue the present Order & Reasons to provide written reasons for its rulings from the bench.  *See id.*

## I.      BACKGROUND

The present litigation arises from the manufacture, distribution, sale, and installation of Chinese drywall which is contained in homes where it allegedly emits foul odors and damages metal and electronic elements and devices, as well as causes various personal injuries to occupants of the homes.  On June 15, 2009, the Judicial Panel on Multi-District Litigation transferred all federal actions alleging damages from Chinese-manufactured drywall to this Court, the U.S. District Court for the Eastern District of Louisiana, for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 626 F.Supp.2d 1346 (J.P.M.L. 2009)(R. Doc. 1). Since the inception of the MDL, a number of parties have entered the litigation, including comprehensive general liability ("CGL") insurers, sought after for indemnity and/or defense by their insureds.  Many of these cases involving the CGL insurers, among numerous others, have been consolidated with the MDL proceedings.

On August 5, 2010, the Court, determining it was an appropriate time in the MDL litigation, issued an Order establishing a briefing and hearing schedule for personal jurisdiction,

venue, and indispensable party motions filed by the CGL insurers.[1]  (R. Doc. 4873).  This Order also provides for conducting discovery and depositions prior to the hearing on the motions.  *Id*.  However, also pursuant to this Order, if the CGL insurers stipulated to personal jurisdiction, they were relieved of the obligation to respond to discovery and participate in depositions.  *Id*.  Fifteen CGL insurers stipulated to personal jurisdiction in this Court, while the four CGL insurers who filed the present motions challenging personal jurisdiction did not.

As mentioned above, three cases are implicated in the present motions, (1) *Pate v. American International Specialty Lines, et al.*, No. 09-7791; (2) *Centerline Homes Construction, Inc., et al. v. Mid-Continent Casualty Co., et al.*, No. 10-178; and (3) *Northstar Holdings, Inc., et al. v. General Fidelity Insurance Co.*, No. 10-384, the facts of which are summarized as follows.

### A.    *Pate*

The *Pate* case was filed directly in the Eastern District of Louisiana on December 23, 2009, by Robert C. Pate, as Trustee for the WCI Chinese Drywall Trust (the "Trust"), seeking a declaratory judgment that WCI's CGL insurers, as well as its subcontractors' CGL insurers, are obligated to indemnify the Trust for losses arising from claims against WCI Communities, Inc. and certain of its subsidiaries (collectively referred to as "WCI") for the development and sale of homes allegedly containing defective Chinese drywall.  *See* No. 09-7791(R. Doc. 1).  Thereafter, on March 15, 2010, the Trustee filed a First Amended Complaint.  *See* No. 09-md-2047(R. Doc. 1732).

---

[1]The Court held a hearing on the indispensable party challenges on the same date as the hearing on the present personal jurisdiction challenges, *see* (R. Doc. 6330), and will address these challenges in a separate Order & Reasons.  The venue challenges have been continued by the Court, and, if appropriate, will be fully briefed and scheduled for hearing after resolution of the jurisdiction and indispensable party challenges.  *See* (R. Doc. 5450).

WCI is a contractor for single-family homes, villas, condominiums, and luxury high rise towers. *See id.* In 2006, WCI began to receive complaints of property damage and/or personal injuries as a result of Chinese drywall installed in the residences WCI sold in Florida from 2005 to 2008, particularly in the Fort Lauderdale, Fort Meyers, and Bradenton areas. *Id.* On August 4, 2008, and July 1, 2009, WCI filed for bankruptcy. *Id.* Thereafter, on July 16, 2009, WCI filed a Second Amended Joint Chapter 11 Plan of Reorganization. *Id.* This Plan created the Chinese Drywall Trust to assume WCI's liability or losses for Chinese drywall-related claims asserted against WCI. *Id.* The Trust was transferred the right, title, and interest in pursuing and receiving any and all insurance recoveries arising from these claims. *Id.* The United States Bankruptcy Court for the District of Delaware confirmed the Plan on August 26, 2009. *Id.*

The *Pate* complaints allege that the Trustee is a citizen of the state of Texas and lives in Texas. *Id.* As to the four movant CGL Insurers, the complaints allege that FCCI is a Florida corporation with its principal place of business in Florida, MCC is an Ohio corporation with its principal place of business in Oklahoma, NGM is a New Hampshire corporation with its principal place of business in Florida, and Owners is an Ohio corporation with its principal place of business in Michigan. *See* (R. Doc. 1732). The complaints further allege personal jurisdiction in Louisiana over MCC by virtue of its authorization to sell insurance in Louisiana, over FCCI for its sale of insurance in Louisiana and maintenance of a regional office in the gulf-coast to service Louisiana, and over NGM for offering a complete line of commercial products and services throughout the southeast and southwest. *See id.* FCCI issued policies to subcontractors SD & Associates and Residential Drywall, Inc.; MCC issued policies to subcontractors Finest Drywall, Inc., Residential Drywall, Inc., and Florida Drywall; NGM issued

policies to subcontractor HDS Drywall Services; and Owners issued a policy to Hinkle Drywall, LLC.  *Id.*

      **B.**    **Centerline**

The *Centerline* case was filed in the Eastern District of Louisiana on January 26, 2010, by Centerline Homes Construction, Inc., Completed Communities II, LLC, Centerline Homes at Georgetown, LLC, and Centerlines Homes, Inc. (collectively referred to as "Centerline"), seeking a declaratory judgment that their insurers, as well as the insurers of their subcontractors, are obligated to defend and indemnify Centerline for claims against it relating to its development of residences allegedly containing Chinese drywall.  *See* No. 10-178(R. Doc. 1).  Centerline builds single-family and multi-family homes, such as townhouses and condominiums, in Florida. *Id.*  A number of homeowners who purchased Centerline residences between 2005 and 2007 in Broward, Palm Beach, and Saint Lucie counties have complained of property damage and/or personal injuries as a result of the Chinese drywall in their homes.  *Id.*  MCC issued Centerline both commercial umbrella and excess liability insurance policies, and it issued United Framers, Inc., a subcontractor of Centerline, a CGL policy.  *Id.*  Centerline alleges that MCC is authorized to conduct business in Louisiana and has issued policies there.  *Id.*

      **C.**    **Northstar**

The *Northstar* case was filed in the Eastern District of Louisiana on February 12, 2010, by Northstar Holdings, Inc., Northstar Homes, Inc., and Northstar Holdings at B & A., LLC (collectively referred to as "Northstar"), seeking a declaratory judgment that their insurers are obligated to defend and indemnify them for losses arising from claims against Northstar for its development of homes allegedly containing Chinese drywall.  *See* No. 10-384(R. Doc. 1).

Northstar builds homes and residential communities in Florida. *Id.* A number of homeowners who purchased Northstar homes between 2005 and 2007 have alleged that these homes contain Chinese drywall which causes property damage and/or personal injuries. *Id.* MCC issued insurance policies to Northstar's subcontractor, Precision Drywall, Inc., under which Northstar seeks coverage as a named or additional insured. *Id.* According to Northstar, MCC is authorized to conduct business in Louisiana and has issued policies in this state. *Id.*

As mentioned above, defendant CGL insurers in these cases, MCC, FCCI, Owners, and NGM, filed the present motions to dismiss for lack of personal jurisdiction, among other grounds.

## II.    LAW & ANALYSIS

The Court will now review the law on personal jurisdiction, followed by a discussion and analysis of the parties' arguments.

### A.    Personal Jurisdiction

"The plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a *prima facie* case if the district court rules without an evidentiary hearing. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)(citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). "Proof by a preponderance of the evidence is not required." *Id.* (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). In resolving personal jurisdiction, the court may review "pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof." *Command-Aire Corp. v. Ontario Mech. Sales & Servs., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992)(citing *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985)). However, the court must take

as true, the uncontroverted allegations in the complaint, and conflicts between the facts

contained in the parties' affidavits must be resolved in favor of the plaintiff.  *Johnston*, 523 F.3d

at 609 (quoting *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc*., 754 F.2d 542, 546

(5th Cir. 1985)).

A federal court may exercise personal jurisdiction over a non-resident defendant where,

(1) the long-arm statute of the forum state confers personal jurisdiction over that defendant, and

(2) the exercise of such jurisdiction comports with due process under the United States

Constitution.  *See Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th

Cir. 1999).  This Court, although functioning as a MDL transferee court[2], is seated in the Eastern

District of Louisiana; thus, the Court must first determine whether Louisiana's long arm statute

confers personal jurisdiction over the non-resident CGL Insurers.  "The limits of the Louisiana

long-arm statute are coextensive with constitutional due process limits.  Therefore, the inquiry is

---

[2]Although the Court sits as a MDL transferee court it has authority pursuant to 28 U.S.C. § 1407 to resolve the present personal jurisdiction challenges.  *See Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61-63 (2d Cir. 1999); *In re Agent Orange Prod. Liab. Litig*., 818 F.2d 145, 163 (2d Cir. 1987)(citing *In re FMC Corp. Patent Litig.* 422 F.Supp. 1163, 1165 (J.P.M.D.L 1976)). "It appears to be reasonably well established, given the plethora of cases on the point, that in actions in which a federal court would be guided or governed by state law, the transferee court is bound to apply the law that the transferor court would follow....in cases involving federal questions, the transferee court follows the interpretation of federal law that has been established by its own court of appeals."  15 Charles A. Wright, *et al.*, Federal Practice and Procedure § 3866 (3d ed. 2009)*; Larson v. Actavis, Inc*., 2010 WL 610053, at *2-3 (S.D.W.Va. Feb. 18, 2010).  Here, the *Pate*, *Centerline*, and *Northstar* cases were filed directly into the Eastern District of Louisiana; thus, the Court is obliged to apply the law of the Fifth Circuit, which it turn looks to the law of the forum state, Louisiana, to determine whether the present motions should be granted.  If the cases were transferred by the MDL Panel to this Court for consolidation, the Court would be obligated under the same Fifth Circuit law to look to the law of the foreign forum to determine personal jurisdiction.  *See e.g. In re WellNX Mktg. & Sales Practices Litig*., 2010 WL 3652457, at *1-2 (D. Mass. Sept. 15, 2010); *In re Trade Partners, Inc., Investors Litig*., 532 F.Supp.2d 904, 907-08 (W.D. Mich. 2007).

whether jurisdiction comports with federal constitutional guarantees." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010)(citing *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)).  Due process in the personal jurisdiction context requires that, (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

With regard to the minimum contacts requirement, a defendant's contacts with a forum may be "general" or "specific."  *Cent. Freight Lines, Inc. v. APA Trans. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003)(citing *Alpine View Co. Ltd. v. Altas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)).  Specific jurisdiction requires that, (1) the defendant has purposefully availed itself of the privileges of conducting activities in the forum state; and (2) the litigation results from alleged injuries that arise out of or relate to those activities.  *See Alpine*, 205 F.3d at 215 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  The parties, and the Court for that matter, agree that specific jurisdiction is not at issue in the present motions.  *See* Hr'g Trans. (Nov. 3, 2010) 13:17-20, 19:22, 37:6-7.  Only general jurisdiction is disputed.  *Id*.

General jurisdiction requires that a defendant's contacts with the forum state be "substantial and 'continuous and systematic' but unrelated to the instant cause of action."  *Cent. Freight Lines*, 322 F.3d at 381 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)).  "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Jackson*, 615 F.3d at 584 (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).  "To confer

8

general jurisdiction, a defendant must have a business presence in the forum state." *Id.* (citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987)).  "'General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed.'" *Johnston*, 523 F.3d at 610 (*Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)).  These contacts are to be considered *in toto*, excluding any "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts."  *Id*.

If a plaintiff demonstrates that the defendant has minimum contacts with the forum state, personal jurisdiction exists unless the defendant can make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.  *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).  In assessing traditional notions of fair play and substantial justice, a court must consider the following factors: (1) the burden upon the nonresident defendant to litigate in that forum; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining the most efficient and convenient relief; (4) the judicial systems's interest in efficient resolution of the controversies; and (5) the several states' shared interest in furthering substantive social policies.  *See Johnston*, 523 F.3d at 615; *Paz v. Brush Engineered Materials, Inc*., 445 F.3d 809, 814 (5th Cir. 2006).

Before addressing whether there exists general personal jurisdiction over the defendant CGL Insurers, the Court finds it appropriate to review the jurisprudence on general personal jurisdiction in order to put the present motions in perspective.

The Supreme Court has addressed general personal jurisdiction only on two occasions, first in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), and thereafter *in*

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).[3]  In *Perkins*, the Court

was presented with the issue of whether there was general personal jurisdiction in Ohio over a

Philippine corporation whose president and general manager relocated to the state during the

Japanese occupation of the Philippine Islands.  342 U.S. at 447-49.  The corporation had the

following contacts with Ohio: a corporate office, the records of the corporation, director

meetings, decision-making, and use of banks.  *Id.* at 447-48.  Based upon these contacts, the

Court held that general jurisdiction was satisfied since the contacts were "continuous and

systematic supervision of the necessarily limited wartime activities of the company."  *Id.* at 448.

The Supreme Court reached the opposite conclusion in *Helicopteros*.  In *Helicopteros*,

the Court was presented with the issue of whether there was general personal jurisdiction in

Texas over a non-resident corporation with the following contacts in Texas over a six-year

period: the purchase of approximately 80% of its helicopter fleet, as well as spare parts and

accessories, totaling over $4 million; sending its prospective pilots to Texas for training; sending

management and maintenance personnel to Texas for technical consultations; and receiving a

check for over $5 million that was drawn upon a Texas bank.  523 F.3d at 411.  The Court held

that these contacts were not sufficient to confer general personal jurisdiction.  *See id.* at 416-19.

It reasoned that the mere purchase of goods, even at regular intervals and in substantial amounts,

was not enough; nor was the sending of personnel since this was part of the purchase.  *Id.* at 417-

18.  Finally, the receipt of check drawn from a Texas bank was of no consequence to the Court

---

[3]However, on January 11, 2011, the United States Supreme Court heard oral arguments
regarding general personal jurisdiction over a non-resident defendant in *Goodyear Dunlop Tires
Operations, S.A. v. Brown*, No. 10-76.  At the time of this Order & Reasons, a decision had not
yet been issued.

since the location of the bank was the result of a third-party's fortuitous, unilateral activity.  *Id*. at 416-17.

The Fifth Circuit has of course relied upon *Perkins* and *Helicopteros* in its own general personal jurisdiction cases.  Most recently, the Fifth Circuit addressed general personal jurisdiction in *Jackson v. Tanfoglio Guiseppe, S.R.L.*, 615 F.3d 579, 584-85 (5th Cir. 2010).  In *Jackson*, the Circuit held that no general personal jurisdiction existed over a defendant who had no office, bank accounts, employees, postal address, or property in the forum state, and who was not registered to do business nor paid taxes there.  *Id*. at 584.  The only contacts with the forum were that the handguns defendant supplied parts for in another state were sold in the forum state, it attended two trade shows in the forum, and advertised and marketed in nationwide media that reached the forum.  *Id*. at 585.

Similarly in *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan*, 615 F.3d 364, 368 (5th Cir. 2010), the Fifth Circuit held that general personal jurisdiction did not exist over a defendant who had no offices and owned no property in the forum state, was not licensed to do business in the forum state, nor conducted or solicited business in the state.  The fact that the defendant had made 53 payments to the forum over the course of three years was insufficient to establish continuous and systematic contacts with the forum.  *Id*.

Along the same lines as *Jackson* and *Choice Healthcare*, the Fifth Circuit declined to find general personal jurisdiction in *Johnston v. Multidata Systems International Group*, 523 F.3d 602, 611-14 (5th Cir. 2008).  In *Johnston*, three different defendants raised challenges to personal jurisdiction.  With regard to the first, the Circuit found general personal jurisdiction was lacking because the defendant did not maintain a place of business in the forum nor had a

registered agent for service of process, despite the fact that over the period of five years it sold approximately $140,000 worth of goods and service-related contracts to ten different customers in the forum, representing three percent of the defendants business, its employees periodically traveled to the forum, and its advertisements in national publications reached the forum. *Id*. at 611-12. For the second defendant, the Circuit concluded there was no general personal jurisdiction even though it purchased over $5.2 million worth of goods from forum vendors over the last five years, it was party to agreements governed by forum law with forum corporations, it employed two forum residents who worked from their forum homes, and its former corporate director lived in the forum. *Id*. at 612. The Court noted that the defendant did not manufacture or sell any products in the forum, owned no property in the forum, did not have a registered agent for process there, and lacked forum offices. *Id*. Finally, with regard to the third defendant, the Circuit concluded that although the defendant sold products and services to forum customers, because the sales were not "substantial or regular," and the defendant was not registered to do business in the forum, did not own, possess or use property in the forum, and did not have an address, bank account, or documents there, general jurisdiction was lacking. *Id*. at 613-14. The sales which were not "substantial or regular" enough constituted less than one percent of testing revenue and a range of sales revenue over four years between 0.5% and 2.5%. *Id*. The Circuit also found that the fact that the defendant sent employees to the forum to service equipment and had one employee who resided in the forum to be inconsequential to the general personal jurisdiction analysis. *Id*. at 614.

*Central Freight Lines, Inc. v. APA Transport Corp*., 322 F.3d 376 (5th Cir. 2003), is another fairly recent and oft cited Fifth Circuit decision involving general personal jurisdiction.

Therein, the Fifth Circuit concluded that there was no general personal jurisdiction over a defendant who was not registered to do business in the forum, did not maintain a business office or records in the state, did not pay franchise taxes there, and did not operate any trucks or pick up or deliver any freight there. *Id*. at 381. The Circuit reached this conclusion despite recognizing the defendant had federal operating authority in the forum, routinely arranged and received shipments to and from the forum, sent its sales persons to the forum regularly, and negotiated and serviced contracts in the forum. *Id*.

The foregoing Fifth Circuit cases demonstrate that this Circuit "has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues." *Johnston*, 523 F.3d at 611. This "high standard" is also recognized in cases specifically addressing the general personal jurisdiction of non-resident insurance companies, which is at issue in the present motions. For example, the Fifth Circuit addressed whether there was personal general jurisdiction over a non-resident insurer in *Travelers Indemnity Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 832-34 (5th Cir. 1986). Therein, the Circuit held that general personal jurisdiction was lacking since the defendant insurer was not authorized to business in the forum, had no appointed agent for service of process in the forum, had no place of business, employees or assets in the forum, and did not solicit business there; nor did the insurer issue any policies in the forum or for any forum resident, and it did not receive any premiums from the forum. *Id*. at 832-33. The insurer's only contacts with the forum were: it listed a forum law firm to contact in its manual, it issued insurance on some vessels which sometimes entered the forum's waters, and it had been named as a defendant in approximately 25 cases in the forum. *Id*. at 833-34.

This Court too has addressed the general personal jurisdiction over a non-resident insurer on a number of occasions.  Most recently in *Hogue v. State Farm Fire & Casualty Co.*, 2009 WL 2525751, at *5 (E.D. La. Aug. 17, 2009), the Eastern District held that there existed general personal jurisdiction over a non-resident insurer based upon its "business interests such as insurance policies with other residents throughout" the forum, including the policy at issue covering a home in the forum state.

However, this Court reached the opposition conclusion in *Omega Hospital, LLC v. Board of Trustees*, 2008 WL 4286757, at *4 (E.D. La. Sept. 16, 2008).  In *Omega*, the Court concluded that general personal jurisdiction was lacking over a non-resident insurer since it was not registered or licensed to do business in the forum state, did not maintain registered agents, employees, offices, or business operations in the forum, did not own property in the forum, and did not maintain bank accounts there.  *Id.*  The Court found inconsequential to the general personal jurisdiction determination that when an insurer's non-forum insureds travel to the forum, they constructively bring with them the insurers' insurance coverage.  *Id.*

In *Andrieu v. Countrywide Home Loans, Inc*., 2006 WL 2117713, at *4 (E.D. La. July 26, 2006), this Court reached a similar result.  In *Andrieu*, the Eastern District declined to find general personal jurisdiction existed over a non-resident insurer where the insurer was not licensed to write insurance in the forum state, did not own property there, did not advertise in the forum, had no agent for service of process there, and did not solicit forum business.  *Id.*  The fact the insurer had conducted business with the plaintiff in the forum via phone, fax, and mail was not sufficient to confer general personal jurisdiction.  *Id.*

**B.      Analysis of Present Motions**

14

Now that the Court has reviewed the law and cases on general personal jurisdiction, it is prepared to address the present motions.

1.    *MCC*

MCC filed three motions to dismiss, (R. Docs. 2156, 2282, 2843), each of which raises similar, if not identical personal jurisdiction challenges, and thus these challenges will be discussed and resolved all together.

a.    Minimum Contacts

MCC contends that the Court lacks general personal jurisdiction over it since, (1) it does not have any insurance agents in Louisiana to write insurance business on its behalf; (2) it does not issue or deliver any CGL policies for construction in Louisiana; (3) it does not have any employees or maintain offices in Louisiana; (4) MCC's CGL policies specifically exclude from coverage insureds who perform work in Louisiana; and (5) in the past four years, MCC's total premiums generated in Louisiana, as compared to its total premium revenue, were between .28% and .72%, comprising between three and seven percent of its business.  *See id;* (R. 6272); Hr'g Tr. 37:19-22.  MCC concedes that it has the contacts with Louisiana alleged by Plaintiffs, but argues that these contacts are insufficient to confer general personal jurisdiction.  *See id.*; Hr'g Tr. 37:24-38:1.

In response, Plaintiffs[4] contend that the Court may properly exercise personal jurisdiction over MCC based upon MCC's insurance and bond businesses in Louisiana and the substantial,

---

[4]Plaintiffs in each of the *Pate*, *Centerline*, and *Northstar* cases, along with the Plaintiffs' Steering Committee, filed a joint Response in opposition to each of the pending motions addressed in this Order & Reasons.  *See* (R. 6023).  For convenience purposes, the Court will collectively refer to these parties as the "Plaintiffs."

continuous, and systematic contacts related thereto.  *See* (R. Doc. 6023).  Plaintiffs list numerous

Louisiana-based contacts related to these businesses in support of their opposition.  *See id.*

At the hearing, the Court concluded that MCC's contacts with Louisiana subject it to

general personal jurisdiction.  *See* Hr'g Tr. 63:7-19.  The Court reasoned that MCC has active

Louisiana licenses and authorizations to sell its policies in Louisiana, it routinely submits

insurance policy and endorsement forms and rate filings in Louisiana, has sold 1,288 policies in

Louisiana over the last five years, has collected over four million dollars in premiums from

Louisiana, has paid annual taxes in Louisiana, and has an active surety bond practice there.  *See*

*id.*  The Court now provides further explanation for its bench ruling.

As discussed above, the test for whether there exists general personal jurisdiction over a

non-resident defendant is whether the defendant has "a business presence in the forum state."

*Jackson*, 615 F.3d at 584.  The Court finds that the following contacts support MCC's "business

presence" in Louisiana: (1) MCC has been licensed to sell insurance in Louisiana since 1996, (2)

the Louisiana Secretary of State is appointed as MCC's agent for service of process, (3) MCC

routinely submits insurance policy and endorsement forms and rate filings to the Louisiana

Department of Insurance, (4) MCC sold 1,280 insurance policies in Louisiana from 2005 to

2010, (5) MCC sold 275 bonds in Louisiana from 2005 to 2010, (6) MCC collected $4,479,718

in premiums and/or bonds from Louisiana from 2005 to 2010, and (7) MCC pays premium taxes

in Louisiana.  *See* (R. Doc. 6023, Exs. B, C, D, U, V, W, X, Y, Z, BB); *see also* Hr'g Tr. 37:25-

38:2 (MCC's acknowledgment that it has the Louisiana contacts suggested by the PSC).  A

number of courts, including the Fifth Circuit and this Court, have identified these and similar

contacts to be determinative of general personal jurisdiction.  *See e.g. Jackson*, 615 F.3d 579,

16

584 (concluding no general personal jurisdiction in part because defendant was not registered to do business in the forum nor paid taxes there); *Choice Healthcare*, 615 F.3d 364, 368 (concluding no general personal jurisdiction in part because defendant was not licensed to do business in the forum and had not conducted business there); *Johnston*, 523 F.3d 602, 611-14 (concluding no general personal jurisdiction over three defendants in part because the defendants lacked registered agents for service of process in the forum, did not sell any products there, and were not registered to do business in the forum); *Cent. Freight Lines*, 322 F.3d 376, 381 (concluding no general personal jurisdiction existed in part because defendant was not registered to do business in the forum and did not pay taxes there); *Travelers Indemn*., 789 F.2d 826, 832-34 (concluding no general personal jurisdiction existed in part because defendant insurer was not authorized to do business in the forum, had not appointed an agent for service of process there, did not solicit business there, did not issue policies there, and did not receive any premiums from the forum); *Hogue*, 2009 WL 2525751, at *5 (concluding general personal jurisdiction existed on the basis that the defendant insurer issued insurance policies to residents in the forum); *Omega*, 2008 WL 4286757, at *4 (concluding that no personal jurisdiction existed in part because the defendant insurer was not registered or licensed to do business in the forum state); *Andrieu*, 2006 WL 2117713, at *4 (concluding no general personal jurisdiction existed in part because defendant insurer was not licensed to write policies in the forum, had no agent for service of process there, and did not solicit forum business).  This Court likewise finds that these contacts indicate that MCC has "purposefully availed" itself of Louisiana to conduct its business.

Additionally, MCC has the following contacts with Louisiana which, although not as substantive, continuous, and systematic as those above, when considered with MCC's other

17

contacts lend in further support of general personal jurisdiction over MCC: (1) MCC markets its policies and bonds to Louisiana-based agencies and citizens, (2) MCC retains and communicates with Louisiana adjusters and attorneys, (3) MCC has initiated litigation in Louisiana, (4) MCC has entered into agency-company agreements in Louisiana, (5) MCC employees travel to Louisiana, and (6) MCC has opened 52 claims files and paid $774,596.05 to Louisiana citizens from 2005 through 2010.  *See* (R. Doc. 6023, Exs. B, C, D, CC, DD, EE, FF, HH, JJ, LL, MM). Indeed, a non-resident defendant's contacts with the forum are to be considered *in toto* for purposes of the general personal jurisdiction inquiry.  *See generally Johnston*, 523 F.3d at 610.

      MCC's arguments against general personal jurisdiction, though at first blush persuasive, are ultimately unavailing.  MCC argues that because it has no offices or employees in Louisiana it cannot be subject to the Court's jurisdiction.  However, courts have found in favor of general personal jurisdiction even though a non-resident defendant does not have any employees or offices in the forum.  *See e.g. Pac. Emp'rs Ins. Co. v. M/T Iver Champion*, 1995 WL 295293, at * (E.D. La. May 11, 1995)(finding general personal jurisdiction existed over non-resident insurer even though it had no employees or offices in the forum); *Trizec Props., Inc. v. U.S. Mineral Prods. Co.*, 1990 WL 142017, at * (E.D. La. Sept. 26, 1990)(finding general personal jurisdiction existed over non-resident insurer even though it had no employees or offices in the forum); *see generally Rimkis Consulting Grp., Inc. v. Balentine*, 693 F.Supp.2d 681 (S.D. Tex. 2010)(finding general personal jurisdiction over defendants who did not have businesses or property in the forum).  Thus, whether a non-resident defendant has employees and/or offices in the forum are just two contacts in the general personal jurisdiction analysis, and not dispositive of the determination.

18

MCC also argues against general personal jurisdiction on the basis that its business in Louisiana over the last five years is merely between three and seven percent of its entire nationwide business. *See* Hr'g Tr. 37:19-22. However, this Court in *Trizec Properties, Inc. v. U.S. Mineral Products Co.*, 1990 WL 142017 (E.D. La. Sept. 26, 1990), held that general personal jurisdiction existed over a defendant whose forum sales were on average "somewhat over 1.0 percent of annual gross sales" through the United States and overseas. *Cf. Johnston*, 523 F.3d at 613-14 (finding no general personal jurisdiction over defendant in part because its forum sales of less than one percent for one revenue stream and 0.5-2.5% for another revenue stream, as compared to its total sales, were not substantial or regular). Thus, general personal jurisdiction is not defeated solely because a defendant with a broad sales base, such as MCC, derives a fraction of its sales from the forum, especially when considered in the context of its other forum contacts.

MCC relies upon *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694 (5th Cir. 1999), *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359 (5th Cir. 1990), and *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370 (5th Cir. 1987), all which held general personal jurisdiction was lacking, to support its argument that its revenue derived from Louisiana is too *de minimis* to support general personal jurisdiction. *See* Hr'g Tr. 38:5-22, 41:1-42:18; (R. Docs. 2156, 2282, 2843, 6272). However, this reliance is misplaced. *Access Telecom* is distinguishable from the present cases in that, although the *Access* defendant derived millions of dollars monthly from forum residents, its business was not in the forum, but rather the result of running its foreign-based telephone lines through the forum, as well as contacts with U.S. companies, not forum-specific companies. *See* 197 F.3d at 717-18. The Fifth Circuit characterized the defendant's

19

business as "with" the forum, rather than "in" the forum as required for general personal jurisdiction. *See id.* at 717. Here, MCC has a business presence in Louisiana and its Louisiana-based revenues are a result of this business.

*Dalton* is also distinguishable. Although the defendant in *Dalton* chartered vessels to its forum subsidiaries, yielding 12.9% of the defendant's total revenues, a higher percentage than MCC's own revenues in Louisiana, unlike MCC, the *Dalton* defendant had no authorization to do business in Louisiana and did not do business there. 897 F.2d at 1362. Finally, *Bearry* is even more distinguishable in that although the *Bearry* defendant distributed $250 million of its products to forum dealers, it was not qualified to do business in the forum, had no agent for service of process in the forum, did not insure any forum residents, and did not pay taxes in the forum, all of which MCC has or does. 818 F.2d at 372, 375.

Because the Court finds that MCC has substantial, systematic, and continuous contacts with Louisiana which satisfy the first prong of the general personal jurisdiction inquiry, it must now determine whether the second prong of the inquiry-traditional notions of fair play and substantial justice-is satisfied.

  b.  <u>Traditional Notions of Fair Play & Substantial Justice</u>

MCC argues that this Court's exercise of personal jurisdiction over it would offend traditional notions of fair play and substantial justice. *See* (R. Docs. 2156, 2282, 2843, 6272). MCC claims that to litigate the *Pate*, *Centerline*, and *Northstar* cases in Louisiana, when the cases completely revolve around Florida buildings, persons, and businesses, and when it has no connection itself to Louisiana, would cause it inconvenience and to incur a financial burden. *See id*. MCC insists that this Court has no interest in adjudicating these claims on the same bases.

*See id.*  MCC claims that litigating these cases in Louisiana would be inefficient since jurisdiction is lacking over certain insurers and its subcontractors.  *See id.*  Finally, MCC argues that it is inconvenient for it to litigate the same claims in both the MDL in Louisiana and in the Florida district court.  *See* Hr'g Tr. 35:17-37:5, 39:19-24.

In response, the PSC contends that the exercise of general personal jurisdiction over MCC would not be so unreasonable as to offend traditional notions of fair play and substantial justice.  *See* (R. Doc. 6023).  The PSC claims that litigating in Louisiana as compared to Florida, where MCC seeks to transfer the cases, is no more burdensome considering that MCC is an Ohio corporation with its principal place of business in Oklahoma.  *See id.*  The PSC notes that MCC has previously litigated in Louisiana on a number of occasions.  *See id.*  According to the Plaintiffs, Louisiana has an interest in litigating the dispute, the parties and Court have an interest in efficiently litigating the MDL claims, and the states have a shared interest in the bellwether decision these insurance claims present.  *See id.*

"Once a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable."  *Cent. Freight Lines, Inc. v. APA Trans. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003)(citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).  "The defendant must make a 'compelling case.'" *Id.* (quoting *Burger King*, 471 U.S. at 477). Considering this burden, the Court will now discuss each of the five factors under the second prong of the personal jurisdiction inquiry.  *See supra* p. 9.

First, the Court must consider the burden upon the nonresident defendant to litigate in the forum. *See Johnston*, 523 F.3d at 615.  Here, the burden on MCC to litigate in Louisiana would

be nominal.  As mentioned, MCC is an Ohio corporation with its principal place of business in

Oklahoma; thus, the Court sees no reason why it would be more burdensome for MCC to litigate

in Louisiana as compared to in Florida where MCC urges the Court to transfer its case.  The

Court acknowledges that MCC's insureds are located in Florida and that the claims against it in

the present cases arise from damages to persons and buildings in that state.  However, the present

litigation is not a typical civil suit, but rather multi-district litigation in which the Court sits as

the district court for any district for purposes of pretrial proceedings.  *See* 28 U.S.C. 1407.

Because the Court is operating in this capacity, it is arguably more beneficial and convenient for

MCC to litigate the claims involving it within the MDL, the *gravitas* of the federal Chinese

drywall claims.  Additionally, this Court has embraced coordination with other courts presiding

over similar claims in the past, and is likewise amenable to doing so with the Florida district

court where MCC is a party in similar litigation, thus preventing MCC from duplicative or

inconsistent litigation.

Second, the Court must consider the interests of the forum state-Louisiana-in subjecting

MCC to personal jurisdiction.  *See Johnston*, 523 F.3d at 615.  The Court finds that Louisiana

has an interest in the cases involving MCC on the basis that there are numerous Louisiana

residents and business who are involved with Chinese drywall, all of whom have an interest in

efficient resolution of Chinese drywall claims, and on the basis of MCC's business presence in

the state.

Third, the Court must consider the Plaintiffs' interest in obtaining the most efficient and

convenient relief.  *See id.*  Because the Court, as the MDL court, has before it all related federal

cases involving Chinese drywall, it can offer Plaintiffs the benefit of consolidated and shared

discovery.  The MDL Court has demonstrated the ability to eliminate duplicative and inconsistent rulings by grouping and prioritizing related claims and motions to set for hearing or trial, and coordinating with other state and federal courts to resolve common or related issues.

Fourth, the Court must consider the judicial system's interest in efficient resolution of the controversies.  *See id.*  Again, because the Court is sitting as an MDL court, the interest of the judicial system would be that this single Court resolve all similar Chinese drywall-related claims.

Fifth, and finally, the Court must consider the states' shared interest in furthering substantive social policies.  *See id.*  All states have an interest in protecting their residents from the damage caused by Chinese drywall to their residents and businesses.  So while Florida undoubtedly has an interest in the cases in which MCC is involved, the shared interest of the states, altogether, would be for the efficient and consistent resolution of similar Chinese drywall-related claims before the MDL Court.

Based upon all five considerations, the Court finds that its exercise of personal jurisdiction over MCC would not offend traditional notions of fair play and substantial justice. Indeed, "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant."  *Wien Air*, 195 F.3d at 215 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987)).  Accordingly, all three of MCC's motions to dismiss, to the extent they raise personal jurisdiction challenges, are denied.

2.      *FCCI*

In its Motion, FCCI challenges this Court's exercise of general personal jurisdiction.  *See* (R. Docs. 2147, 6273); Hr'g Tr. 25:12-35:6.  The Court ruled from the bench at the hearing, denying FCCI's personal jurisdiction challenge on the basis that FCCI has continuous and

systematic contacts with Louisiana by virtue of imputation of National Trust Insurance Company's ("National") Louisiana contacts. *See* Hr'g Tr. 63:20-25. There does not appear to be any dispute from the Plaintiffs that FCCI, in its own right, lacks sufficient contacts with Louisiana to warrant general personal jurisdiction, *see* (R. Doc. 6023); Hr'g Tr. 48:17-53:14*,* nor does the Court find any such basis; thus, the Court will not discuss FCCI's own contacts, or lack thereof, with Louisiana. Instead, the Court will explain its ruling by first summarizing the parties' arguments regarding minimum contacts, and then explain how National's Louisiana contacts are imputable to FCCI, how these contacts support general personal jurisdiction, and finally, discuss how the exercise of personal jurisdiction over FCCI comports with traditional notions of fair play and substantial justice.

a.     <u>Minimum Contacts Arguments</u>

FCCI argues that it lacks sufficient minimum contacts with Louisiana to subject it to personal jurisdiction in the state. *See* (R. Docs. 2147, 6273); Hr'g Tr. 25:12-35:6. According to FCCI, because it does not directly own National, National's Louisiana contacts may not be imputed to it for general personal jurisdiction. *See id.* FCCI acknowledges that from November 1, 2000, to September 13, 2007, National wrote workers compensation coverage in Louisiana, and that National Loss Control Management, Inc. ("NLCM") served as the general agent for National for writing these policies. *See id.* However, once the agency agreement was terminated, FCCI alleges that National did not authorize any agent to write policies in Louisiana. *See id.* FCCI argues that at no time was there any overlapping ownership, control, or management between NLCM and itself, and thus, NLCM's contacts with Louisiana also cannot be attributed to FCCI, but even if they could, NLCM, on its own, does not have sufficient

24

minimum contacts with Louisiana since it ended its business in Louisiana in 2007.  *See id.*

In response, the Plaintiffs contend that the Court may properly exercise personal jurisdiction over FCCI.  *See* (R. Doc. 6023); Hr'g Tr. 48:17-53:14.  According to the Plaintiffs, National, a subsidiary of FCCI, has sufficient minimum contacts with Louisiana to support general personal jurisdiction.  *See id.*  The Plaintiffs argue that National's Louisiana contacts are imputed to FCCI because FCCI exercises control over National such that the corporations constitute alter egos for purposes of personal jurisdiction.  *See id.*  The Plaintiffs refute FCCI's claim that National's general agent, NLCM, located in Louisiana, was the entity responsible for National's sale of insurance policies in Louisiana.  *See id.*  Nonetheless, according to the Plaintiffs, FCCI exercises sufficient control over NLCM for NLCM to impute its Louisiana contacts to FCCI.  *See id.*

> b.    Imputation of Contacts

Because the Court has determined that FCCI, in its own right, lacks continuous and systematic contacts with Louisiana, in order for FCCI to be subject to the general personal jurisdiction of this Court, National's Louisiana contacts must be imputable to FCCI.  To put this issue in perspective, the Court now discusses the law on imputing forum contacts between corporate entities for purposes of personal jurisdiction, and thereafter, applies this law to the present case.

In limited circumstances, general personal jurisdiction of a non-resident company may be based upon the imputation of contacts of an affiliated company.  *See e.g. DP Solutions, Inc. v. Rollins, Inc.*, 34 Fed. App'x 150 (5th Cir. 2002).  The seminal case from the Fifth Circuit on imputing personal jurisdiction on the basis of a corporate relationship is *Hargrave v. Fibreboard*

*Corp.*, 710 F.2d 1154 (5th Cir. 1983).  Therein, the Fifth Circuit stated that the "rationale for such an exercise of jurisdiction is that the parent corporation exerts such domination and control over its subsidiary 'that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction.'"  *Hargrave*, 710 F.2d at 1159.  However, "[a]s a general rule...the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts in the forum state of another corporate entity with which the defendant may be affiliated."  *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 345 (5th Cir. 2004); *accord Adm'rs of Tulane Educ. Fund v. Biomeasure, Inc.*, 687 F.Supp.2d 620, 625 (E.D. La. 2009)("Courts presume the institutional independence of related corporations, such as a parent and its subsidiary, when they determine if one corporation's contacts with a forum can be the basis of jurisdiction over a related corporation.").  A showing of "clear evidence" that one corporation has control over the internal business operations and affairs of another corporation is required before the two may be fused together for jurisdictional purposes.  *Id*.

In determining whether the imputation of contacts is appropriate, the Fifth Circuit analyzes what have become known as the "*Hargrave* factors," after, of course, the *Hargrave* case.  *See Turan v. Universal Plan Inv. Ltd.*, 70 F.Supp.2d 671, 675 (E.D. La. 1999).  These factors include the following: (1) the amount of common stock owned by the corporate entities, (2) whether the entities share corporate headquarters, (3) whether the entities share common officers and directors, (4) whether the entities observe corporate formalities, (5) whether the entities share bank accounts, accounting and payroll systems, insurance contracts, budgets, financial records, and tax returns, (6) whether the parent has authority over general policy

decisions of the subsidiary, and (7) whether the parent has authority over the subsidiary's day-to-day business and operations decisions. *See Freudensprung,* 379 F.3d at 345(citing *Hargrave,* 710 F.2d at 1159); *see also Adm'rs of Tulane Educ. Fund,* 687 F.Supp.2d at 625; *Turan*, 70 F.Supp.2d at 675.

In *Hargrave*, the Fifth Circuit concluded, after analyzing its namesake factors, that imputation of a forum subsidiary's contacts to a non-resident parent corporation was not warranted.  710 F.2d at 1160.  Although the parent owned 100% of the stock of the subsidiary, and the parent had complete authority over the internal affairs of the subsidiary, the Circuit found imputation of contacts was inappropriate given that the entities, (1) observed corporate formalities, (2) maintained separate headquarters, (3) shared no common officers and only one common director, (4) maintained separate bank accounts, accounting and payroll systems, insurance contracts, budgets, financial records, and tax returns, and (5) each made their own day-to-day business and operational decisions.  *Id*.

The *Hargrave* considerations were applied in the Fifth Circuit's recent decision in *Freudensprung v. Offshore Technical Services, Inc*., 379 F.3d 327 (5th Cir. 2004).  Therein, the Circuit declined to impute the contacts of a forum subsidiary to a non-forum parent corporation on the basis that the parent company lacked control over the subsidiary, did not own stock in the subsidiary, the companies did not share officers, directors, or a place of business, and the companies observed corporate formalities.  *Id.* at 346-47.  The fact that website-print outs of SEC filings which described the parent and subsidiary as a collective entity were not sufficient to impute the contacts of one to the other for personal jurisdiction purposes.  *Id*. at 347.

The Fifth Circuit similarly held in *Turan v. Universal Plan Investments Limited*, 248 F.3d

1139 (5th Cir. 2001), that there was insufficient "clear evidence" to impute contacts between a parent and subsidiary for personal jurisdiction purposes where the two corporations had different corporate headquarters, did not share common officers or directors, observed corporate formalities, and maintained separate accounting systems.  The Court reached this conclusion despite evidence showing that one corporation owned a substantial amount of the other's stock, and thus, exercised authority over its general policy and daily operations.  *Id*.

The Fifth Circuit, however, reached the opposite conclusion in *DP Solutions, Inc. v. Rollins, Inc.*, 34 Fed. App'x 150, at *4-6 (5th Cir. 2002), when it held that there existed an alter ego relationship between two corporations, sufficient to impute the subsidiary corporation's contacts with the forum to the parent corporation for purposes of personal jurisdiction.  The Court supported its conclusion with the following facts: (1) the corporations shared 32 common business departments, (2) all money from the subsidiary's branch offices were swept into the parent's bank account, (3) the parent exerted control over the subsidiary's ability to hire outside companies, and (4) the corporations shared benefit plans, consolidated financial statements, and income tax returns, as well as some officers and directors.  *Id*. at *5.

In applying the *Hargrave* factors to the relationship between FCCI and National, the Court finds that there exists clear evidence that FCCI has sufficient control over National to impute National's contacts to FCCI for purposes of general personal jurisdiction.  Under the first *Hargrave* factor, amount of stock, the Court finds significant that FCCI Insurance Co. owns 100% of each FCCI Commercial Insurance Co. and FCCI Insurance Group, Inc., the latter of which in turn owns 100% of National.  *See* (R. 2147, 6023)(Aff. Rupert L. Willis).  With regard to the second factor, common corporate headquarters, the Court notes that FCCI and National

share an administrative office.  *See* (R. 6023).  As to the third, common officers and directors, it is notable that National and FCCI share a president, executive vice president, vice president, secretary, treasurer, directors, and most trustees.  *See id.*  The fourth factor, observation of corporate formalities, favors imputation of contacts as FCCI and National share a common office, phone number, mailing address, website, statutory statement contact, storage for books and records, and common employees.  *See id.*  For the fifth factor, common accounting and financial systems, the Court notes that FCCI and National share an accounting system, file a consolidated tax return, and use the same accounting firm, actuary consulting firm, and investment advisor.  *See id.*  As to the sixth factor, authority over general policy decisions, the Court recognizes that FCCI's financial strength ratings factor into National's own rating.  *See id.*  Finally, under the seventh factor, authority over day-to-day business and operation decisions, the Court finds that FCCI Services, Inc., FCCI Insurance Co.'s wholly owned subsidiary, provides staff, claims adjusting services, underwriting services, payroll, clerical and administrative assistance, and general management services for National and FCCI.  *See id.*  Additionally, FCCI Insurance Co. reinsures 100% of National's claims and losses, National cedes 100% of its premium to FCCI Insurance Co., and in 2007, all of National's insurance policies were transferred to FCCI Insurance Group, the 100% owner of FCCI Commercial Insurance Co., which now handles all claims under these policies.  *See id.*  In comparing these facts to those in the cases discussed above, the Court finds that there exists "clear evidence" of an alter ego relationship between FCCI and National, warranting the imputation of National's Louisiana contacts to FCCI.

<u>c.</u>        <u>National's Louisiana Contacts</u>

29

Although the Court has determined that FCCI's control over National is sufficient to impute National's Louisiana contacts to FCCI, the Court still must determine whether National's contacts with Louisiana warrant the exercise of general personal jurisdiction. As a preliminary matter, the Court will address FCCI's argument that the Court may not consider National's contacts with Louisiana because at the time the present case was filed National was no longer doing business in Louisiana.

In the Fifth Circuit, "'[g]eneral jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed.'" *Johnston*, 523 F.3d at 610 (quoting *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)). "'The determination of what period is reasonable in the context of each case should be left to the court's discretion.'" *Morris v. B.C. Olympiakos, SFP*, 721 F.Supp.2d 546, 562 (S.D. Tex)(quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 570 (2d Cir. 1996), *cert. denied*, 519 U.S. 1006, 1007 (1996)). The Court recognizes that National's general agency agreement with NLCM was terminated on September 13, 2007. *See* (R. Doc. 2147)(Aff. Willis). However, there exists evidence that National continued to write business on behalf of FCCI in Louisiana after 2007, as demonstrated by direct written premiums to residents or employers in Louisiana totaling $11,286 in 2008, and $49,615 in 2009, as well as $112,000 in workers' compensation gross premiums for 2008 and 2009. *See* (R. Doc. 6023). The Court finds that in the context of the present case, considering National's contacts with Louisiana from approximately 2000 to the time of filing suit on December 23, 2009 is not unreasonable. *Compare Access Telecom*, 197 F.3d at 717 (considering defendant's contacts with the forum during the six years prior to filing suit); *and Patel v. Pac. Life Ins. Co.*, 2009 WL

30

1456526, at *27 (N.D. Tex. May 22, 2009)(considering defendant's contacts with the forum over ten year period prior to filing of suit); *with Stanley v. Trinchard*, 2010 WL 1992007, at *5 (E.D. La. May 14, 2010)(refusing to consider a defendant's contacts with the forum from over 30 years prior to suit for purposes of general personal jurisdiction analysis).

Now that the Court has determined that it is reasonable to consider National's contacts with Louisiana between 2000 and the end of 2009, it now addresses whether National's contacts with Louisiana are sufficient to confer general personal jurisdiction.  National's Louisiana contacts include the following: (1) it has been licensed to sell insurance in Louisiana since December 31, 1997, (2) it has appointed the Louisiana Secretary of State as its agent for service of process, (3) it is a member of the Property Insurance Association of Louisiana, an organization of insurance companies licensed to write property coverage in Louisiana, to which National pays assessments, (4) it began writing workers' compensation coverage in Louisiana in 2000, and continues to do so, (5) its direct written premiums to residents of or employers in Louisiana totaled $11,286 in 2008, and in the years 2008 and 2009, it wrote $62,000 and $50,000, respectively, in workers' compensation gross premiums for Louisiana, (6) it pays Louisiana taxes, and in 2008 had over one million dollars federal taxable income in Louisiana, (7) it has paid workers' compensation assessments since at least 2008 to the Louisiana Insurance Guarantee Association, *see* (R. Doc. 6023, Exs. F, I, J, K, WW), and (8) pursuant to a general agency agreement, it hired NLCM as its general agent in Louisiana from 2000 until 2007.  *See* (R. Doc. 2147)(Aff. Willis).

With regard to the final contact listed above, the agency relationship between National and NLCM, the Court finds that by virtue of this relationship, NLCM's Louisiana contacts are

shared by National for purposes of general personal jurisdiction.  The Fifth Circuit recognizes

that for purposes of general personal jurisdiction an agency relationship permits the imputation

of the contacts of the agent to the principal.  *See Nolan v. Boeing Co.*, 736 F.Supp. 120, 126

(E.D. La. 1990)(citing Fifth Circuit cases holding insomuch); *accord Adm'rs of Tulane Educ.*

*Fund v. Biomeasure, Inc*., 687 F.Supp.2d 620, 629-30 (E.D. La. 2009).  This imputation may

occur in the absence of an alter ego or subsidiary relationship between the agent and principal.

*See Nolan*, 736 F.Supp. at 126.  In order for such imputation, the "plaintiff must establish a

general agency."  *Nolan*, 736 F.Supp. at 126.

> General agency exists when the putative agent carries on substantial activities for the
> benefit of the principal.  In other words, in the context of this case, a general agent is one
> who performs duties which are sufficiently necessary to the corporation's operations.
> The services performed by the agent must be so important to the corporate principal that
> if it did not have the stand-in to perform them, the corporation's own people would do it
> themselves.  Such an agent must have broad executive responsibilities, and the
> relationship must reflect a degree of continuity.  *Id*.

In the present case, FCCI acknowledges that National and NLCM entered into a "General

Agency Agreement."  *See* (R. Doc. 2147).  FCCI further acknowledges that under this

Agreement, NLCM served as the "General Agent" for National and was authorized by National

to write workers' compensation coverage on its behalf in Louisiana from November 1, 2000 until

September 13, 2007.  *See id.*  In its capacity as "General Agent," NLCM did the following: (1)

appointed retail agents to sell workers compensation insurance for National, (2) on behalf of

National, solicited applications, bound insurance coverage, issued policies and endorsements,

effected renewals, non-renewals, and cancellations, (3) countersigned policies for National, (4)

maintained all underwriting, statistical, and accounting records required by law for the coverages

it wrote for National, (5) handled claims for the Louisiana coverages it wrote for National in

32

Louisiana, (6) hired adjusters to handle National claims in Louisiana, (7) had the authority to adjust, settle, deny, and/or pay losses and loss adjustment expenses on behalf of National, (8) maintained all claims files related to the Louisiana policies issued by National, (9) established bank accounts for purposes of collecting premiums and paying all claims and loss adjustment expenses on behalf of National, (10) it handled any communications between National and its Louisiana insured, policy holders, claimants, or any others, and (11) it filed all required claims reports with the Louisiana Department of Insurance. *See id.* Based upon these facts, the Court finds that the "General Agency Agreement" authorized National with "broad executive responsibility" to carry out tasks necessary to National's insurance business, and this authorization was continuous. Accordingly, the Court concludes that there existed general agency between National and NLCM, permitting the imputation of NLCM's Louisiana contacts National. Furthermore, considering NLCM's Louisiana contacts, including that NLCM operated out of Baton Rouge, Louisiana, during the agency relationship, *see* (R. Doc. 2147), as well as National's own contacts with Louisiana, the Court finds that National has sufficiently substantial, continuous, and systematic contacts with Louisiana to support the exercise of general personal jurisdiction over FCCI.

d.      <u>Traditional Notions of Fair Play & Substantial Justice</u>

FCCI argues that even if it has minimum contacts with Louisiana sufficient to confer general personal jurisdiction, if this Court presides over the claims against it, traditional notions of fair play and substantial justice would be offended. *See* (R. Doc. 6273). In support, FCCI claims that, as a Florida company sued over Florida-related claims, it will incur a financial burden and be inconvenienced to litigate in Louisiana. *See id.* FCCI also claims that this Court

33

does not have an interest in adjudicating a Texas plaintiff's claims arising from incidents in Florida.  *See id.*  According to FCCI, it is inefficient for the Court to exercise personal jurisdiction over it since jurisdiction is lacking here over certain other insurers and FCCI's subcontractors, while there is personal jurisdiction in Florida.  *See id.*  Finally, FCCI argues that this Court's exercise of personal jurisdiction over it will not further any social policies.  *See id.*

In response, the Plaintiffs contend that FCCI will not incur a financial burden or be inconvenienced to litigate in this forum since FCCI is a named defendant in another case before the MDL Court, the *Amato* case, and FCCI has litigated in Louisiana previously.  *See* (R. Doc. 6023).  According to the Plaintiffs, they and the forum have an interest in litigating the claims involving FCCI in Louisiana since it is the location of the Chinese drywall MDL and Louisiana has an interest in litigation concerning insurers of Louisiana citizens.  *See id.*  The Plaintiffs claim that the interstate judicial system has an interest in adjudicating all Chinese drywall claims as efficiently as possible, and the MDL is the best vehicle for doing so.  *See id.*  Finally, the Plaintiffs allege that the states have a shared interest in furthering substantive social policies through resolution of Chinese drywall issues for bellwether purposes.  *See id.*

"Once a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable."  *Cent. Freight Lines, Inc. v. APA Trans. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003)(citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).  "The defendant must make a 'compelling case.'"  *Id.* (quoting *Burger King*, 471 U.S. at 477).  Considering this burden, the Court will now discuss each of the factors under the second prong of the general personal jurisdiction inquiry.  *See supra* p. 9.

First, the Court must consider the burden upon the nonresident defendant to litigate in the forum.  *See Johnston*, 523 F.3d at 615.  Here, the burden on FCCI would be negligible given that it is a named defendant in another case consolidated with the MDL.  The Court acknowledges that FCCI is a Florida company, its insureds are located in Florida, and that the claims against it arise from damages to persons and buildings in that state.  However, the present litigation is not a typical civil suit, but rather multi-district litigation in which the Court sits as the district court for any district for purposes of pretrial proceedings.  *See* 28 U.S.C. 1407.  Because the Court is operating in this capacity, it is arguably more beneficial and convenient for FCCI to litigate the claims involving it within the MDL, the *gravitas* of the federal Chinese drywall claims.  Additionally, as mentioned previously, this Court has embraced coordination with other courts presiding over similar claims in the past, and is likewise amenable to doing so with the Florida district court where FCCI is a party in similar litigation, thus preventing FCCI from duplicative and/or inconsistent litigation.

Second, the Court must consider the interests of the forum state-Louisiana-in subjecting FCCI to personal jurisdiction.  *See Johnston*, 523 F.3d at 615.  The Court finds that Louisiana has an interest in the cases involving FCCI on the basis that there are numerous Louisiana residents who are involved with Chinese drywall, including those seeking to recover under CGL policies similar to those of FCCI, and FCCI has a business presence in the state.

Third, the Court must consider the Plaintiffs' interest in obtaining the most efficient and convenient relief.  *See id.*  Because the Court, as the MDL court, has before it all related federal cases involving Chinese drywall, it can offer plaintiffs the benefit of consolidated and shared discovery, and has demonstrated the ability to prevent duplicative and inconsistent rulings by

grouping and prioritizing related claims and motions, and resolving such in an organized, efficient fashion through hearings and bellwether trials.

Fourth, the Court must consider the judicial system's interest in efficient resolution of the controversies.  *See id.*  Again, because the Court is sitting as an MDL court, the interest of the judicial system would be that this single Court resolve all similar Chinese drywall-related claims in a consistent and efficient fashion.  This concept forms the very basis of 28 U.S.C. § 1407. Under that statute, an MDL transferee court has the authority and duty to resolve pretrial motions, such as this one.

Fifth, and finally, the Court must consider the states' shared interest in furthering substantive social policies.  *See id.*  All states have an interest in protecting their residents from the damage caused by Chinese drywall to their residents and businesses.  So while Florida undoubtedly has an interest in the cases in which FCCI is involved, the shared interest of the states, altogether, would be for the efficient and consistent resolution of similar Chinese drywall-related claims before the MDL Court.

Based upon all five considerations, the Court finds that its exercise of personal jurisdiction over FCCI would not offend traditional notions of fair play and substantial justice. Indeed, "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant."  *Wien Air*, 195 F.3d at 215 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987)).  Accordingly, FCCI's motion to dismiss, to the extent it raises a personal jurisdiction challenge, is denied.

       *3.*    *Owners*

In its Motion, Owners contends that the claims against it in the *Pate* action must be

dismissed on the basis that the Court lacks general personal jurisdiction.  *See* (R. Docs. 3302, 6271); Hr'g Tr. 11:7-19:11.  Owners argues it lacks the continuous and systematic contacts with Louisiana to support general personal jurisdiction based upon the following: (1) it does not maintain offices in Louisiana, (2) it does not solicit business from or collect premiums from Louisiana residents, (3) it does not hold a license or any authority from the State of Louisiana to conduct insurance business within the state, (4) it does not have any employees or agents in the state, (5) it does not advertise in the state, (6) it does not own any property in the state, (7) it does not have a registered agent for service of process in Louisiana, and (8) it does not have any insureds or insure any risks or businesses in Louisiana.  *Id.*  Owners refutes that its mailing of claim payments to Louisiana is sufficient to establish general jurisdiction.  *See* (R. Doc. 6271); Hr'g Tr. 12:10-13:1.  It also claims that the fact it filed two lawsuits in Louisiana over forty years ago is also insufficient to support general personal jurisdiction.  *Id*.

In response, Plaintiffs contend that the Court may properly exercise personal jurisdiction over Owners.  *See* (R. Docs. 6023; 6267, Attach. 2); Hr'g Tr. 53:16-54:23.  The Plaintiffs claim that the following contacts with Louisiana warrant general personal jurisdiction: (1) Owners has paid over 340 claims directed to Louisiana addresses, totaling approximately half a million dollars each year over the last five years, (2) Owners insures entities that do business in Louisiana, (3) Owners has initiated litigation in Louisiana, (4) Owners maintains a security interest in Louisiana, (5) Owners hires Louisiana independent adjusters, (6) Owners hires Louisiana lawyers to defend its Louisiana insureds, and (7) Owners sells insurance policies to individuals traveling to or residing in Louisiana.  *See id.*

As the Court announced from the bench at the hearing, Owners does not have sufficiently

substantial, systematic, and continuous contacts with Louisiana to warrant the exercise of general

personal jurisdiction.  *See* Hr'g Tr. 63:2-5.  Indeed, as the Fifth Circuit has recognized, the

general personal jurisdiction test "is a difficult one to meet, requiring extensive contacts."

*Jackson*, 615 F.3d at 584.  Owners lacks the following crucial connections with the forum: (1) it

is not licensed by the State of Louisiana to write insurance coverage in Louisiana, (2) it does not

maintain any offices in Louisiana, (3) it does not have any employees in Louisiana, (4) it does

not solicit business from Louisiana residents, (5) it does not advertise in Louisiana, (6) it does

not collect premiums from Louisiana residents, and (7) it does not have a registered agent for

service of process in Louisiana.  *See* (R. Doc. 3302, Ex. A)(Aff. of Scott Norris); *see e.g.*

*Jackson*, 615 F.3d at 584-85(concluding no general personal jurisdiction existed in part because

defendant did have an office, employees, address, property, business registration, taxes, or sales

in the forum); *Choice Healthcare*, 615 F.3d at 368(concluding no general personal jurisdiction

existed in part because defendant lacked officer, property, accounts, taxes, business license, and

business in the forum); *Johnston*, 523 F.3d at 611-14(concluding no general personal jurisdiction

existed over defendant who had no business, no registered agent, no products, no property, no

business registration, no bank, and no records in the forum); *Cent. Freight Lines*, 322 F.3d at

381(concluding no general personal jurisdiction over a defendant without operating authority,

business registration, offices, records, or taxes in the forum); *but cf. Hogue*, 2009 WL 2525751,

at *5 (finding general personal jurisdiction where non-resident insurer had business interests in

the forum, including issuing its policies to residents of the forum).  Notably, Owner's absent

contacts with the forum are substantially similar to those of the insurer in *Travelers Indemnity* in

which the Fifth Circuit concluded general personal jurisdiction was lacking; these absent

contacts include: no authorization to do business, no appointed agent for service of process, no

place of business, no employees, no assets, no solicitation of business, no issuance of policies,

and no receipt of premiums.  798 F.2d at 832-34.

Plaintiffs attempt to create general personal jurisdiction based upon a number of Owner's

contacts with Louisiana.  However, even considered all together, these contacts are not

"substantial" or  "continuous and systematic."  First, the fact that Owners has paid over 340

claims directed to Louisiana addresses totaling approximately half a million dollars each year

over the last five years[5], *see* (R. Doc. 6267, Attach. A), is fortuitous, and not a result of

purposeful availment of the forum.  The Court permitted the parties to do a sampling of these

claims which demonstrates that out of the 35 sampled claims paid to Louisiana residents, 30

were the result of Owners' non-Louisiana insureds' automobile accidents with claimants from

Louisiana, many of which accidents did not occur in Louisiana.  *See id.*  Of the other five, one

claim did not involve Louisiana at all, but rather was paid in Louisiana when the claimant moved

there after the incident; three involved non-Louisiana insureds who were sued for faulty work

performed in Louisiana; and in the last, a non-Louisiana insured damaged an object outside of

Louisiana, but a claim was paid to a Louisiana resident.  *See id.*  The Fifth Circuit has recognized

that the mailing of insurance claim payments into a forum does not constitute substantial,

continuous, and systematic contact with the forum.[6]  *See Choice Healthcare*, 615 F.3d at 368

---

[5]The specific numbers of these claims: 2005, 70 claims totaling $593,343.73; 2006, 61
claims totaling $481,743.92; 2007, 62 claims totaling $502,399.70; 2008, 79 claims totaling
$516,627.76; and 2009, 74 claims totaling $431,381.04.  *See* (R. 6267, Attach. 2).

[6]Plaintiffs cite *Trizec Properties, Inc. v. U.S. Minerals Products Co.*, 1990 WL 142017
(E.D. La. Sept. 26, 1990), to support their argument that Owners' mailing of claim payments to
Louisiana warrants general jurisdiction.  However, the finding of general personal jurisdiction in
*Trizec* was partially based upon the fact that the non-resident defendant sold products to

(finding the intermittent payments to a forum over the course of three years was insufficient for general jurisdiction); *see also Am. Bank, F.S.B. v. Auto-Owners Mut. Fire & Cas. Ins. Co.*, 2010 WL 3784282, at *5-6 (N.D. Tex. Sept. 27, 2010)(finding payment of over $80,000,000.00 in claims-related expenses to forum-based insureds, claimants, and adjusters insufficient to confer general personal jurisdiction over non-resident insurer); *see generally Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc*., 115 Fed. App'x 662, 666 (5th Cir. 2004)(reasoning that contractual payments to a forum do not constitute purposeful availment of the forum); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, (5th Cir. 1986)(recognizing that the mailing of payment checks into the forum does not weigh heavily in determining purposeful availment).  Likewise, here, the Court concludes that Owners' payment of claims to Louisiana residents does not, in and of itself, warrant the exercise of general personal jurisdiction.

Additionally, the travel of Owners' non-resident insureds to the forum is not sufficient to create general personal jurisdiction.  *See Omega Hospital*, 2008 WL 4286757, at *4 (declining to find general personal jurisdiction based upon the fact that the insureds of a non-resident insurer continuously travel to the forum); *see also Choice Healthcare*, 615 F.3d at 369(finding no purposeful availment in the forum by non-resident insurer where its insured, by their own volition, went to the forum for treatment); *Am. Bank, F.S.B.*, 2010 WL 3784282, at *5-6 (finding no general personal jurisdiction where some of the defendant non-resident insurer's insureds had forum addresses and may have resided at the forum at some during the policy periods).  This Court in *Omega Hospital*, 2008 WL 4286757, at *4, rejected the argument that general personal jurisdiction can be conferred over a non-resident insurer on the basis of its non-resident insureds'

companies in the forum, which is entirely different from mailing individual insurance claims payments to persons in the forum who are not even their own customers.

travel to the forum.

For the same reasons that travel of Owners' non-resident insureds into the forum is not a systematic and continuous contact, its non-resident insureds' working in the forum is not. Owners does not control or direct the actions of its insured; nor does it provide insurance specifically for Louisiana-related activities. *See* (R. Doc. 6023, Ex. N)(Dep. Lopilato). Notably, Owners does not gain any Louisiana-based business or economic gains by its non-resident insureds' fortuitous work in Louisiana. *But see Adams v. Unione Mediterranea Di Sicurta*, 234 F.Supp.2d 614, 624 (E.D. La. 2002)(finding general personal jurisdiction over insurer because of the "*economic gain* generated by its over-all business of insuring cargo bound for the [forum].")(emphasis added).

Plaintiffs also attempt to base Owners' general personal jurisdiction upon its initiation of two lawsuits in the forum, one in 1973, another in 1969. However, even as Plaintiffs concede, these cases are quite dated. *See* Hr'g Tr. 54:9-11. In considering contacts for general personal jurisdiction, the Fifth Circuit provides that the contacts to be considered for this inquiry should be limited to those "over a reasonable number of years." *Johnston,* 523 F.3d at 610. The Court finds that these suits, filed approximately 40 years ago, are not within such a time period. Furthermore, the Fifth Circuit has declined to find general personal jurisdiction on the basis of a non-resident defendant being a named party in lawsuits filed in the forum. *See Travelers Indem.*, 798 F.2d at 833-34 (finding no general personal jurisdiction over non-resident insurer even though insurer had been named as a defendant in approximately 25 cases in the forum); *see also Am. Bank, F.S.B.*, 2010 WL 3784282, at *6 ("That defendant has engaged in other litigation is

not indicative of minimum contacts.").[7]

Plaintiffs also argue in favor of general personal jurisdiction over Owners on the basis of Owners' security interest in Louisiana.  This "security interest" is the purchase of a Louisiana power company's debt.  *See* (R. Doc. 6023, Ex. N)(Dep. Lopilato).  Generally, having investments in the forum is not sufficient to confer general personal jurisdiction over a non-resident defendant.  *See e.g. In re IFS Fin. Corp.*, 2008 WL 2778845, at *11 (Bankr. S.D. Tex. July 15, 2008)(finding general personal jurisdiction does not exist based upon a defendant's investment in a forum corporation);  *Am. Bank, F.S.B.,* 2010 WL 3784282, at *6 (finding the purchase of municipal bonds in the forum insufficient to confer general personal jurisdiction over a non-resident insurer); *In re Terrorist Attacks on September 11, 2001*, 718 F.Supp.2d 456, 471 (S.D.N.Y. 2010)(finding forum investment is not a contact individually of such quality, nature or duration to support of finding of general personal jurisdiction).  Thus, the purchase of a single security interest from Louisiana does not warrant the exercise of general personal jurisdiction over Owners.

Finally, Plaintiffs claim that Owners' hiring of independent adjusters and lawyers in Louisiana to resolve insurance claims that occur in the state constitutes continuous and systematic contact with the forum.  This Court has held previously that a non-resident defendant's hiring of employees in the forum is not sufficient to confer general personal

_____

[7]Plaintiffs cite *Praetorian Specialty Insurance Co. v. Auguillard Construction Co.*, 2010 WL 2026655 (W.D. La. May 20, 2010), for the proposition that personal jurisdiction is appropriate when a non-resident initiates a lawsuit in the forum; however, *Praetorian* is distinguishable from the present case since therein the non-residents had filed state court cases arising from the same set of facts as the case in the forum and did so contemporaneously.  2010 WL 2026655, at *1.

jurisdiction. *See Frisella v. Transoceanic Cable Ship Co.*, 181 F.Supp.2d 644 (E.D. La. 2002)(finding no general personal jurisdiction although non-resident defendant hired forum employees); *Ricord v. Energy Transp. Co.*, 1993 WL 459937, at *3-4 (E.D. La. Nov. 2, 1993)(finding no general personal jurisdiction although non-resident defendant retained forum physician for examining its employees and engaged an employee 15 times over ten years in the forum); *see also Am. Bank F.S.B.*, 2010 WL 3784282, at *5 (hiring of forum attorneys to represent non-resident insurer and its insureds when sued in the forum more than 100 times in the past ten years insufficient to confer personal jurisdiction over the insurer).  Thus, here, the Court also declines to base general personal jurisdiction over Owners on the basis of its hiring of forum adjusters and lawyers.

Because the Court has determined that general personal jurisdiction over Owners is lacking, it need not discuss the second prong of the personal jurisdiction inquiry-whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice-and grants Owners' Motion to Dismiss.

> 4. NGM

NGM contends that this Court lacks personal jurisdiction over it, and thus, the claims against it in the *Pate* action should be dismissed.  *See* (R. Docs. 3174, 6274); Hr'g Tr. 19:21-25:7.  NGM alleges that it, along with its subsidiaries, have insufficient contacts with the forum state-Louisiana-on the basis that they: (1) have never had any rates on file with nor are registered with the Louisiana Department of Insurance; (2) have never collected any premiums for insurance written in Louisiana; (3) have never authorized any insurance agent to write any business on their behalf in Louisiana; (4) do not maintain an office, records, or bank account in

Louisiana, (5) have no employees in Louisiana; (6) do not have a registered agent for service in Louisiana; (7) do not issue or deliver insurance policies in Louisiana; (8) do not directly market or advertise their insurance policies in Louisiana; (9) own no property in Louisiana, and (10) do not pay taxes in Louisiana. *See* (R. Docs. 3174, 6274); Hr'g Tr. 20:12-22.

NGM concedes that it has paid 54 claims to Louisiana over the last five years, totaling slightly under $2 million, and it has hired independent adjusters, and possibly attorneys in Louisiana regarding these claims. *See* (R. Doc. 6274); Hr'g Tr. 21:12-22:16. NGM also concedes that it has been involved in litigation in Louisiana.[8] *See id*. However, NGM refutes that these contacts with Louisiana are sufficient for general personal jurisdiction. *Id*.

In response, the Plaintiffs contend that this Court may properly exercise general personal jurisdiction over NGM. *See* (R. Doc. 6023); Hr'g Tr. 54:25-57:19. The Plaintiffs argue that NGM, together with its wholly-owned subsidiaries, maintains the minimum contacts with Louisiana necessary to establish general personal jurisdiction. *See* (R. 6023); Hr'g Tr. 54:25-57:19. In support, the Plaintiffs note the following contacts: (1) NGM and its subsidiaries operate in 24 states and serve more than 600,000 policy holders, (2) NGM alone is allowed to sell insurance in 44 states plus D.C., (3) the NGM entities sell both commercial and personal policies, which include policies for homeowners, automobiles, businesses which have contact with Louisiana, (4) NGM advertises its products nationwide, (5) NGM corresponds with and pays residents or businesses located in Louisiana for claims arising both inside and outside of Louisiana, resulting in payments of approximately $2 million over the last five years for 54

---

[8]NGM has submitted an affidavit from an attorney involved in its forum litigation correcting a pleading in a case which mistakenly stated that a subsidiary of NGM did business in Louisiana. *See* Hr'g Tr. 23:23-24:8.

44

claims of 66 claimants, (6)  to resolve these Louisiana claims, NGM entities communicate and work with independent adjusters and attorneys based in Louisiana, and (7) NGM has been involved in litigation in the forum, even admitting in pleadings that it is subject to personal jurisdiction in this Court.  *See* (R. Doc. 6023); Hr'g Tr. 55:12-56:2.

The Court ruled from the bench at the hearing on NGM's Motion, concluding that general personal jurisdiction was lacking over NGM.  *See* Hr'g Tr. 63:6.  The Court now provides further explanation for this ruling.  At the outset, the Court notes that neither party disagrees that the Louisiana contacts of NGM's wholly-owned subsidiaries may also be considered for the general personal jurisdiction inquiry, *see* Hr'g Tr. 21:10, 55:1-4, and thus, the Court need not make a determination on this issue.[9]  In discussing NGM's contacts, the Court is at the same time considering those of the subsidiaries.

Many of NGM's absent contacts with Louisiana are similar, if not identical, to those of Owners discussed above.  *See supra* pp. 37-38.  Accordingly, for the same reasons explained therein, establishing general personal jurisdiction over NGM in this forum poses an insurmountable challenge.  *See id.*

In terms of the contacts which NGM does have with the forum, even considering these contacts *in toto*, they are not sufficiently continuous and systematic to support general personal jurisdiction.  Again, a number of the contacts alleged by Plaintiffs are similar, if not the same, as those alleged with regard to Owners and which are discussed and analyzed above.  *See supra* pp. 38-43.  These common contacts include: (1) the sale of insurance policies to non-resident

---

[9]Nonetheless, based upon the Deposition of Brian J. Brennan alone, it appears that the *Hargrave* factors are satisfied for imputation of NGM's wholly-owned subsidiaries' Louisiana contacts to NGM for general personal jurisdiction purposes.  *See* (R. Doc. 6023)(Pl.'s Ex. S)(Brennan Dep. Sept. 24, 2010); *see supra* pp. 26-7 (discussing *Hargrave* factors).

insureds which have some contact with Louisiana, whether it be property, business, or travel to the state, (2) the payment of claims to Louisiana, specifically 54 claims over five years, totaling approximately $2 million, (3) the hiring of independent adjusters and attorneys in Louisiana to resolve any Louisiana-related claims, and (4) previous involvement in forum litigation.  For the reasons discussed above in the section discussing Owners' contacts with Louisiana, these contacts of NGM are not sufficient to confer general personal jurisdiction.  *See supra* pp. 39-42.

As to the other NGM contacts alleged by Plaintiffs, the Court will address these now. First, Plaintiffs allege that general personal jurisdiction over NGM is warranted based upon its widespread operations through out the United States and the large volume of policies it sells nationwide.  However, NGM does not sell these policies in Louisiana or to Louisiana residents, nor does it have authority to do so.  *See* Hr'g Tr. 20:13-19; (R. Doc. 6023, Pl.'s Exs. R, S).  The focus of the general personal jurisdiction inquiry is the defendant's contacts with the *forum* state, not how pervasive the defendant's contacts are with the country.  *See Cent. Freight Lines*, 322 F.3d at 381; *Jackson*, 615 F.3d at 584.  Furthermore, the Fifth Circuit has declined to find general personal jurisdiction over a non-resident defendant on the basis of the nationwide sale of its products.  *See Jackson v. Tanfoglio Guiseppe, S.R.L.*, 615 F.3d 579, 584-85 (5th Cir. 2010)(finding no general personal jurisdiction over a non-resident defendant whose products were integrated into handguns sold throughout the United States by other companies).

Plaintiffs also allege that there exists general personal jurisdiction over NGM on the basis of its nationwide advertising which reaches Louisiana.  *See* (R. Doc. 6023); Hr'g Tr. 55: 17-20. However, the Fifth Circuit has routinely rejected nationwide advertising as holding much weight for purposes of general personal jurisdiction. *See Jackson*, 615 F.3d at 585 (finding non-resident

defendant's advertising and marketing in nationwide media that reached the forum, but was not directed there, to be neither systematic, continuous, nor substantial enough to support general personal jurisdiction); *accord Johnston,* 523 F.3d at 611-12; *Anderson v. T&D Mach. Handling, Inc.,* 85 F.3d 625 (5th Cir. 1996).

Because the Court has determined that general personal jurisdiction over NGM is lacking, it need not discuss the second prong of the personal jurisdiction inquiry-whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice-and grants NGM's Motion to Dismiss.

## III.   CONCLUSION

For the foregoing reasons, as well as the reasons articulated from the bench, IT IS ORDERED that,

MCC's Motion to Dismiss in *Pate*, Case No. 09-7791 (R. Doc. 2156); Motion to Dismiss in *Centerline*, Case No. 10-178 (R. Doc. 2282); and Motion to Dismiss in *Northstar*, Case No. 10-384 (R. Doc. 2843), are DENIED insofar as the personal jurisdiction challenges raised therein;

FCCI's Motion to Dismiss in *Pate*, Case No. 09-7791 (R. Doc. 2147) is DENIED insofar as the personal jurisdiction challenge raised therein;

Owners' Motion to Dismiss in *Pate*, Case No. 09-7791 (R. Doc. 3302) is GRANTED; and

NGM's Motion to Dismiss in *Pate*, Case No. 09-7791 (R. Doc. 3174) is GRANTED.

New Orleans, Louisiana, this 8th of February, 2011.

47

_____
U.S. District Judge