```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3     ******************************************************************

 4     IN RE: CHINESE-MANUFACTURED
       DRYWALL PRODUCTS LIABILITY
 5     LITIGATION

 6                              CIVIL DOCKET NO. 09-MD-2047-EEF-JCW
                                NEW ORLEANS, LOUISIANA
 7                              THURSDAY, JANUARY 20, 2011, 10:15 A.M.

 8     THIS DOCUMENT RELATES TO
       ALL CASES
 9
       ******************************************************************
10

11                    TRANSCRIPT OF MOTIONS PROCEEDINGS
                 HEARD BEFORE THE HONORABLE ELDON E. FALLON
12                     UNITED STATES DISTRICT JUDGE

13

14     APPEARANCES:

15


16     FOR THE PLAINTIFFS:
                                LEVIN FISHBEIN SEDRAN & BERMAN
17                              BY:  ARNOLD LEVIN, ESQUIRE
                                510 WALNUT STREET, SUITE 500
18                              PHILADELPHIA PA  19106

19
                                COLSON HICKS EIDSON
20                              BY:  PATRICK S. MONTOYA, ESQUIRE
                                225 ALHAMBRA CIRCLE, PENTHOUSE
21                              CORAL GABLES FL  33134

22

23     FOR THE DEFENDANTS:      HOGAN LOVELLS
                                BY:  FRANK T. SPANO, ESQUIRE
24                              875 THIRD AVENUE
                                NEW YORK NY  10022
25
```

10:12AM

1   APPEARANCES CONTINUED:

2

3   FOR ALL BANNER SUPPLY
    ENTITIES:                    WEINBERG WHEELER HUDGINS GUNN & DIAL
4                                BY:  NICHOLAS P. PANAYOTOPOULOS, ESQUIRE
                                 3344 PEACHTREE ROAD, SUITE 2400
5                                ATLANTA GA  30326

6

7   OFFICIAL COURT REPORTER:     CATHY PEPPER, CRR, RMR, CCR
                                 500 POYDRAS STREET, ROOM B406
8                                NEW ORLEANS LA  70130
                                 (504) 589-7779
9
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
10  PRODUCED BY COMPUTER.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              **I N D E X**

2

3    <u>MOTIONS</u>                                              <u>PAGE</u>

4

5    PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR ACCOUNTING    4

6    AND OTHER RELIEF, RECORD DOCUMENT 6669.................

7    PLAINTIFF'S MOTION TO LIFT THE STAY ON OMNIBUS MOTION     4

8    FOR PRELIMINARY DEFAULT, RECORD DOCUMENT 5939.........

9    BANNER'S REQUEST THAT CTEH PRODUCE DISCOVERY RELATED     11

10   TO MEETING WITH THE CPSC, RECORD DOCUMENT 6634.........

11   PLAINTIFFS' STEERING COMMITTEE'S MOTION CHALLENGING      12

12   THE ADEQUACY AND COMPLETENESS OF DISCOVERY OF THE

13   DEFENDANTS TAISHAN GYPSUM, RECORD DOCUMENTS 6964 AND

14   6981.................................................

15

16

17

18

19

20

21

22

23

24

25

4

|  |  |
|---|---|
| | 1 |
| 10:12AM | 2 |
| 10:12AM | 3 |
| 10:12AM | 4 |
| 10:12AM | 5 |
| 10:18AM | 6 |
| 10:18AM | 7 |
| 10:18AM | 8 |
| 10:18AM | 9 |
| 10:18AM | 10 |

**P-R-O-C-E-E-D-I-N-G-S**

THURSDAY, JANUARY 20, 2011

M O R N I N G   S E S S I O N

(COURT CALLED TO ORDER)

THE DEPUTY CLERK:  Everyone rise.

THE COURT:  Be seated, please.  We have a number of motions.  I met with the parties earlier today, and many of the motions have now been resolved.  There are six motions that need to be discussed.  Using the proposed agenda, the first motion that I have is Plaintiffs' Steering Committee's motion for accounting and other relief.  The record document is 6669.

The issue there is whether or not they should lift the stay for that and set it for hearing.  I am looking to the parties to give me a briefing schedule on that, and we'll then set it for hearing, and I'll hear oral argument on that.

MR. LEVIN:  Thank you, sir.  That will be coming to you.  It's in the hopper.

THE COURT:  The next one, well, that's the same one.  G is the same thing, isn't it?

MR. LEVIN:  Well, it's the same relief, a different motion.

THE COURT:  The preliminary draft of H is Plaintiff's motion to lift the stay on omnibus motion for preliminary

10:20AM  1    default.

10:20AM  2            MR. LEVIN:  We're going to argue that even though we

10:20AM  3    don't have a formal response on the record or an entry of

10:20AM  4    appearance.

10:20AM  5            THE COURT:  Let me hear, then, from that one.  The

10:20AM  6    record docket number is 5939.

10:20AM  7            MR. LEVIN:  Your Honor, this is a motion based on

10:20AM  8    indeterminate defendant complaint where we sued several Chinese

10:20AM  9    entities.  We went to the expense of translating the complaint

10:20AM 10    into their native language, servicing them through the Hague,

10:20AM 11    having them either reject service or accept service but not enter

10:21AM 12    appearance.

10:21AM 13            This particular complaint was caused to be filed

10:21AM 14    because of the manner in which business is done by the Chinese

10:21AM 15    companies.  They don't always put their name on a product.

10:21AM 16    Sometimes it says *Made in China*, and sometimes there are other

10:21AM 17    markings that we can't identify.  We determined that these

10:21AM 18    Chinese companies are related to the Taishan companies, and we

10:21AM 19    effectuated service against Taishan.  We would like to take a

10:21AM 20    default.

10:21AM 21            Taishan has come in and said they needed some time

10:21AM 22    to think about it.  We gave them a lot of time to think about it.

10:21AM 23    It's the end of thinking time.  They have not entered an

10:21AM 24    appearance, their counsel.  Their counsel has told us and will

10:21AM 25    tell you that they went to China and they talked to the Chinese,

10:21AM 1    and the Chinese told them they had -- that these companies had no

10:22AM 2    involvement in the problem that we have in Florida and in

10:22AM 3    Virginia with regard to the Taishan products.

10:22AM 4              That's not good enough for us.  I mean, they could

10:22AM 5    enter their special appearance like they did for Taishan.  We can

10:22AM 6    proceed with discovery.  That discovery is going to be necessary

10:22AM 7    on alter-ego theories and undertaking theories and other

10:22AM 8    theories, and you just -- and if -- and they have relief.

10:22AM 9              I mean, we know that is there a Rule 11, and we're

10:22AM 10   willing to deal with a Rule 11 that's filed in accordance with

10:22AM 11   the Federal Rules of Civil Procedure, but it does us no good for

10:22AM 12   Chinese companies that have secrecy laws, they don't answer

10:22AM 13   questions at depositions because of the Chinese secrecy law, to

10:22AM 14   take the word of counsel, and I don't -- I'm not faulting counsel

10:22AM 15   who went to China and talked to Chinese principals who told them

10:23AM 16   we have nothing to do with the situation with these products in

10:23AM 17   the United States, even as to the company that they have entered

10:23AM 18   their appearance from, we're getting nowhere with them.

10:23AM 19             We have a significant problem.  We have residents

10:23AM 20   in homes that can't live in their homes, and we just -- we just

10:23AM 21   can't deal with that type of informal discovery.  We have an

10:23AM 22   obligation to proceed.  Having not entered --

10:23AM 23        THE COURT:  What are you asking for?  What are you

10:23AM 24   asking for?  To lift the stay so that you can put on evidence to

10:23AM 25   show that they are responsible?

10:23AM 1      MR. LEVIN:  Yes, so we can take discovery.  We're not

10:23AM 2  assessing damages at this time.  I believe Your Honor introduced

10:23AM 3  us to the preliminary default when we did it in the *Germano* case,

10:23AM 4  so we crafted our pleadings not to ask for a default but to ask

10:24AM 5  for a preliminary default to get this thing moving.

10:24AM 6      THE COURT:  Let me hear from your opponent.  Anybody who

10:24AM 7  wishes to speak.

10:24AM 8      MR. STANLEY:  Good morning, Your Honor.  I would like to

10:24AM 9  introduce Frank Spano from the Hogan Lovells firm, who will speak

10:24AM 10  on behalf of Taishan today.  My name is Rick Stanley.  Thank you.

10:24AM 11      MR. SPANO:  We represent Taishan Gypsum and

10:24AM 12  Taishan Taian Plasterboard, or TTP for short.  Our companies are

10:24AM 13  providing complete jurisdictional discovery regarding all of

10:24AM 14  their sales and potential sales of drywall to the United States.

10:24AM 15  They are providing all of the documents reflecting any sort of

10:25AM 16  contacts or communications they had with American companies or

10:25AM 17  American companies' representatives that solicited them in China

10:25AM 18  or with Chinese companies that bought drywall from TG or TTP and

10:25AM 19  then resold it to the U.S.

10:25AM 20      We have identified over 200 transactions that our

10:25AM 21  clients were involved in, and those are listed on our

10:25AM 22  manufacturers' profile forms, and we are providing complete

10:25AM 23  discovery as to all of those transactions -- all of the

10:25AM 24  underlying documentations, all of the contracts, all of the

10:25AM 25  proposals, all of the correspondence, all of the e-mails.

10:25AM  1          In the course of that investigation, we have

10:25AM  2  determined, and all of the discovery that we're providing will

10:25AM  3  show, that none of the 20 or so subsidiaries that the plaintiffs

10:26AM  4  are seeking a default judgment against in *Gross* had anything

10:26AM  5  whatsoever to do with the manufacturing or sale of drywall.

10:26AM  6          We identified one other company, a subsidiary of

10:26AM  7  Taishan Gypsum, that did manufacture one order of drywall for

10:26AM  8  sale to the U. S., and as to that company we're providing

10:26AM  9  discovery.  They haven't sought a default against that company.

10:26AM 10          The problem here is that the plaintiffs have not

10:26AM 11  stated a claim.  The Supreme Court ruled in *Iqbal* and *Twombly*

10:26AM 12  that the federal rules, the federal pleading rules require that a

10:26AM 13  plaintiff state facts, specific facts showing a plausible claim

10:26AM 14  before they get to put a party through the expense and the burden

10:26AM 15  of discovery.

10:27AM 16          So we, as a matter of fact and in good faith, have

10:27AM 17  told the PSC and the Court that there is no factual basis to sue

10:27AM 18  these companies.  We have asked them if they think they have one,

10:27AM 19  to disclose it, and they haven't.

10:27AM 20          THE COURT:  Have you made a formal appearance in this

10:27AM 21  case on behalf of --

10:27AM 22          MR. SPANO:  No, sir, we have not.

10:27AM 23          THE COURT:  That's the problem that I've having from

10:27AM 24  that standpoint.  You're not before the Court, you haven't

10:27AM 25  entered the litigation, and then you don't want them to conduct

10:27AM 1    discovery.  I understand your statements, but the way that you

10:27AM 2    generally handle matters, as you know, is each side is

10:27AM 3    represented, and then the party makes their presentation, and

10:28AM 4    then I deal with it.  I'm trying to move this case along a little

10:28AM 5    differently than I do ordinarily.  Ordinarily you wouldn't have

10:28AM 6    an opportunity to speak.  Now, we're trying to move this

10:28AM 7    litigation, but it's hard for me to just take your position when

10:28AM 8    you're not even formally before me.

10:28AM 9         MR. SPANO:  Your Honor, with all due respect, what we're

10:28AM 10   trying to do here is to be practical.  The Court has before it

10:28AM 11   the two parties that were involved in the sale and manufacture of

10:28AM 12   Taishan drywall.  The PSC does not have to take my word for it,

10:28AM 13   but they now are getting discovery, voluminous discovery, over

10:28AM 14   20,000 pages of documents produced in January.  More to come.

10:29AM 15   We'll be done with that.  They'll have 30(b)(6) depositions of

10:29AM 16   knowledgeable corporate representatives who can discuss these

10:29AM 17   issues.  They can cross-examine them on their declarations that

10:29AM 18   say these two companies were the only ones that were involved.

10:29AM 19         What I'm suggesting at the very minimum is that any

10:29AM 20   default proceeding, we don't waste the time with that unless they

10:29AM 21   see this evidence because, I think, once they do -- they are

10:29AM 22   practical and pragmatic attorneys -- they'll realize that they

10:29AM 23   are pointing the guns to the wrong people.  They have the right

10:29AM 24   people in front of them.  So that is my suggestion on that point,

10:29AM 25   Your Honor.

10:29AM 1          THE COURT:  Let me hear your response.

10:29AM 2          MR. LEVIN:  Your Honor, we can't deal with phantom

10:29AM 3     litigation.  We've already found out that in this indeterminate

10:29AM 4     defendant list of defendants where we couldn't figure out who the

10:30AM 5     Chinese companies were, we now determined that we know who they

10:30AM 6     are, and we're moving them into another complaint.

10:30AM 7          I would like to take his word for it, but I was

10:30AM 8     born but not yesterday, and I know there is Federal Rules of

10:30AM 9     Civil Procedure, there is a method of how to do this, and I think

10:30AM 10    it's most improper to come into court and represent an entity

10:30AM 11    that you haven't entered an appearance for.

10:30AM 12         If they enter an appearance, we could deal with it.

10:30AM 13    We have an awful lot at stake.  We have a lot of clients and

10:30AM 14    plaintiffs with product that can't determine who the manufacturer

10:30AM 15    is.  I mean, we had a Crescent Company.  We thought it must have

10:30AM 16    been domestic in New Orleans.  It turns out now we found out from

10:30AM 17    the indeterminate complaint there is a Crescent Company in China.

10:30AM 18         It just is plain wrong to deal with it, to walk

10:30AM 19    into court and say I don't represent the client -- I do represent

10:31AM 20    the client, but I'm not entering appearance for the client.  I'm

10:31AM 21    really a friend of the court and a friend of everybody.  You sued

10:31AM 22    these people, and you shouldn't have sued them.  That's what we

10:31AM 23    are faced with.

10:31AM 24         THE COURT:  Okay.  You wanted to say something else?

10:31AM 25         MR. LEVIN:  As to the discovery, sir, there is a

10:31AM 1   separate motion as to the discovery, and Mr. Montoya is going to

10:31AM 2   handle that.

10:31AM 3          THE COURT:  Let's not conflate both the motions

10:31AM 4   together.  First of all this one.  You wanted to respond.

10:31AM 5          MR. SPANO:  I just wanted to briefly respond to the

10:31AM 6   comments that have been made about indeterminate defendants.

10:31AM 7   Taishan Gypsum and TTP, with one exception, were OEMs, so they

10:31AM 8   made drywall to order, and they labeled it in the way that the

10:31AM 9   customers ordered it to be labeled.

10:31AM 10          Taishan Gypsum and TTP, in their MPFs and in the

10:31AM 11   discovery, are disclosing all of the markings for every single

10:32AM 12   order they produced, so the information to identify which

10:32AM 13   products our clients were involved in is out there and is being

10:32AM 14   produced, and there is no mystery about that.

10:32AM 15          THE COURT:  We're dealing with two motions, though.  One

10:32AM 16   motion before the Court is the motion for preliminary default.

10:32AM 17   Nobody has made an appearance.

10:32AM 18          What I'm going to do, I'll give you one week to

10:32AM 19   consider whether or not you're going to enter an appearance.  If

10:32AM 20   you do so, then I won't grant the motion, but if you don't do so

10:32AM 21   within a week, I'm going to grant the motion to proceed with

10:32AM 22   preliminary default because nobody has made an appearance, and

10:32AM 23   everybody has had an opportunity to do so.

10:32AM 24          The next issue is Banner's request that CTEH

10:32AM 25   produce discovery related to meeting with the CPSC,

10:32AM 1   Record Document 6634.  Is that something we need to orally argue?

10:33AM 2          MR. PANAYOTOPOULOS:  No, Your Honor.  I'm

10:33AM 3   Nick Panayotopoulos on behalf of certain Banner entities.

10:33AM 4          As Your Honor knows, we had a hearing on our motion

10:33AM 5   to compel, and the Court issued an order.  We're just dealing

10:33AM 6   with it, Your Honor.  They produced a lot of documents since the

10:33AM 7   Court's order, and we don't need to take up the Court's time any

10:33AM 8   further.  We'll just come back if we need to.

10:33AM 9          THE COURT:  I'll pass the motion with the understanding

10:33AM 10  that if you don't get what you need, you'll bring it back again.

10:33AM 11         Plaintiffs' Steering Committee's motion challenging

10:33AM 12  the adequacy and completeness of discovery of the defendants

10:33AM 13  Taishan Gypsum.  That's the aspect that we talked about a

10:33AM 14  little bit before, but let's focus on it now.  It's the

10:34AM 15  Record Document 6964, and there is also a Record Document 6981.

10:34AM 16         MR. MONTOYA:  Your Honor, Patrick Montoya on behalf of

10:34AM 17  the Plaintiffs' Steering Committee.  The two motions before

10:34AM 18  Your Honor are very similar.  It's plaintiffs' motion to compel

10:34AM 19  answers and appropriate answers to the first request for

10:34AM 20  production and first set of interrogatories directed at personal

10:34AM 21  jurisdiction discovery.

10:34AM 22         Taishan has also filed a motion for protective

10:34AM 23  order relating to the 30(b)(6) depositions which cover the same

10:34AM 24  topics.  So our argument will both address motion to compel and

10:34AM 25  Taishan's motion for protective order.

10:34AM 1          The core issue is what Mr. Levin has pointed out

10:34AM 2    earlier in the motion for default objection and what Your Honor

10:34AM 3    has accurately crystallized.  Taishan is making representations

10:34AM 4    on behalf of at least 20 of its affiliates that we cannot take

10:34AM 5    personal jurisdiction discovery over those entities.  They do not

10:34AM 6    dispute that they are affiliated with them.  They simply saying

10:35AM 7    that it's too over broad.

10:35AM 8          Now, why is it not over broad?  Why is it relevant

10:35AM 9    to personal jurisdiction?  It's relevant to personal jurisdiction

10:35AM 10   because on either an alter-ego theory, a veil-piercing theory, an

10:35AM 11   agency theory, or under the undertaker doctrine what those

10:35AM 12   entities that Taishan directs do as is related sales to the

10:35AM 13   United States of drywall and other products is relevant to

10:35AM 14   personal jurisdiction.

10:35AM 15         The second issue is what about the entities that

10:35AM 16   control Taishan that are above it in the chain?  The same issue.

10:35AM 17   What have they done to direct Taishan's sales or manufacturing of

10:35AM 18   drywall or other products to the United States for a minimum

10:35AM 19   contacts purpose?

10:35AM 20         Yesterday evening we filed a reply to the Taishan

10:35AM 21   defendants' motion for protective order that set forth the law.

10:35AM 22   I'm not going to belabor that law with Your Honor because I know

10:35AM 23   that the Court is well aware of it, but the whole question here

10:35AM 24   is what did those other entities do, how did they direct Taishan,

10:35AM 25   or how is Taishan directed towards the manufacture and sale of

10:35AM 1  drywall in the United States?  That's the core issue in our

10:36AM 2  motion to compel.  There is other subissues but for the most

10:36AM 3  part, I think those will fall like dominoes once Your Honor

10:36AM 4  decides the scope of discovery of the other entities.

10:36AM 5          As Mr. Levin stated, the idea that we have to

10:36AM 6  accept Taishan's representations -- with all respect to counsel,

10:36AM 7  they have made no appearance for those entities -- we're entitled

10:36AM 8  to that discovery.  We need that discovery.

10:36AM 9          They've also complained that we haven't pled

10:36AM 10 theories adequate in order to reach those entities.  We've pled

10:36AM 11 that Taishan is a multilayered, prolix entity that's ultimately

10:36AM 12 owned by the Chinese government through multiple layers of

10:36AM 13 corporate ownership.

10:36AM 14         What those entities did in terms of how they

10:36AM 15 directed Taishan sales to the United States and what Taishan did

10:36AM 16 in response and how Taishan directed other entities' sales to the

10:36AM 17 United States is relevant for the purposes of personal

10:36AM 18 jurisdiction on those alter-ego, veil-piercing, agency-type

10:36AM 19 theories.

10:36AM 20         THE COURT:  Now, how do you deal with it just

10:37AM 21 logistically and from a practical standpoint?  Who do you take

10:37AM 22 and where do you take them and what do you do with them if they

10:37AM 23 don't show up?  How does the Court have jurisdiction enforcing

10:37AM 24 that argument?

10:37AM 25         MR. MONTOYA:  Well, Your Honor, the whole issue here,

10:37AM 1    basically what's happened is we've -- in our request for

10:37AM 2    production, interrogatories, and the 30(b)(6) notice, we set

10:37AM 3    certain topics defining *you*, saying you, Taishan, what are your

10:37AM 4    connections with X, Y, Z entity, and we've defined what *you*

10:37AM 5    means -- subsidiaries, affiliates, successors.

10:37AM 6            At least 20 of those entities we've named in the

10:37AM 7    complaint.  They just came up here several minutes ago and said,

10:37AM 8    well, you know, we're not making notice of appearance for them at

10:37AM 9    this point.  The real question is does Taishan have those

10:37AM 10   documents in their possession, custody, or control?  That's what

10:37AM 11   the federal rules say.  If they have those documents, then they

10:37AM 12   should produce them.  That's not over broad.  That goes to the

10:37AM 13   personal jurisdiction discovery.

10:37AM 14           Your Honor is going to set a time frame for

10:37AM 15   30(b)(6) depositions.  We can ask those witnesses those

10:38AM 16   questions.  What they are trying to say is you can't ask us about

10:38AM 17   those related entities that we have an ownership interest in.

10:38AM 18   That's improper.  Personal jurisdiction discovery and minimum

10:38AM 19   contact analysis demands that we have that information.  So from

10:38AM 20   a practical perspective, we are entitled to more documents.  They

10:38AM 21   are not saying that there are no documents.  They are saying

10:38AM 22   simply that it's over broad.  They've already said that they are

10:38AM 23   affiliated, and they are not making an appearance.  The documents

10:38AM 24   are there.  They need to produce them.

10:38AM 25           The witnesses can be asked the question.  If

10:38AM  1    Your Honor would be willing to be on the phone, as you suggested

10:38AM  2    for the other Hong Kong depositions, that may also resolve some

10:38AM  3    of the issues as well.

10:38AM  4              THE COURT:  Any response on the discovery?

10:38AM  5              MR. MONTOYA:  Judge, if I may, one last point.  We also

10:38AM  6    moved in our papers to have a deposition scheduled in the middle

10:38AM  7    of February on the 14th.  The Taishan defendants have taken the

10:38AM  8    position that early April is appropriate.

10:38AM  9              We've laid out in our papers that they have been

10:38AM 10    before this Court for several months.  They've been aware of this

10:38AM 11    case for more than a year.  They've had more than enough time to

10:39AM 12    prepare their clients' depositions.

10:39AM 13              THE COURT:  Thank you.

10:39AM 14              MR. SPANO:  Your Honor, I think we need to bear in mind

10:39AM 15    the type of discovery we are undertaking and why we are doing it.

10:39AM 16    Taishan Gypsum has moved to vacate the default in the *Germano* and

10:39AM 17    in the *Mitchell* cases, and one of the basis for vacating the

10:39AM 18    default is the absence of personal jurisdiction.  We've submitted

10:39AM 19    declarations saying that based on our OEM production of drywall

10:39AM 20    and sales in China, that is not sufficient to establish our

10:39AM 21    minimum contacts for purposes of personal jurisdiction.  The

10:39AM 22    discovery should be centered around those facts.  What did

10:39AM 23    Taishan Gypsum do?  What did TTP do vis-a-vis the U.S. and is

10:40AM 24    that sufficient for jurisdiction?

10:40AM 25              THE COURT:  I agree with that, but the plaintiffs have

10:40AM 1  taken the position that Taishan may have acted with surrogates
10:40AM 2  and that they controlled the surrogates, so the surrogates'
10:40AM 3  actions are Taishan's actions.  Now you take the position that's
10:40AM 4  really not surrogates, and Taishan didn't do anything through
10:40AM 5  them, and that's the situation.

10:40AM 6          They want to test that, as I understand the
10:40AM 7  argument.  They want to ask somebody from those surrogates what
10:40AM 8  did you do, why did you do it, who told you to do it, and so
10:40AM 9  forth.  It goes really to the jurisdiction.

10:40AM 10         It's not a question of the other entities.  If
10:40AM 11 there are other entities and they are not controlled by Taishan
10:40AM 12 and Taishan didn't have anything to do with them, that will be
10:40AM 13 revealed.  Then your motions, if you enter the appearance, to
10:41AM 14 dismiss, I don't see how the plaintiffs can argue with it.

10:41AM 15         To just dismiss it on somebody saying that you were
10:41AM 16 told, and it's got to be hearsay with you, somebody in China
10:41AM 17 translated to you that they didn't have anything to do with this,
10:41AM 18 and so you tell the Court, this is what they told me, and I
10:41AM 19 believe them, but they don't want you to make an appearance
10:41AM 20 officially, and so you're now here as a friend of the Court
10:41AM 21 saying somebody in China told me to tell you this is the
10:41AM 22 situation.

10:41AM 23         MR. SPANO:  That's not correct, Your Honor.  We are here
10:41AM 24 on behalf of Taishan Gypsum and TTP arguing that those entities
10:41AM 25 are not subject to personal jurisdiction.  Those two entities are

10:42AM 1   taking responsibility, so to speak, for jurisdictional purposes

10:42AM 2   for all of the sales of the product that entered into the U.S.

10:42AM 3          So again, being practical, Your Honor, speculation

10:42AM 4   about whether some affiliate or some parent company or some

10:42AM 5   surrogate, as you say, whispered in Taishan Gypsum's ear and

10:42AM 6   influenced it in having those contacts with the U.S., that

10:42AM 7   doesn't figure -- really figure into the analysis.

10:42AM 8          The analysis is whether the contacts that my client

10:42AM 9   had with the U.S. amount to targeting the U.S. market and

10:42AM 10  purposeful availment of activity of the U.S. sufficient for

10:42AM 11  purposes of jurisdiction.  All of that -- and all of those

10:42AM 12  contacts are being disclosed.  We will have knowledgeable

10:43AM 13  witnesses to give full testimony about that.

10:43AM 14         THE COURT:  The knowledgeable witnesses will say that

10:43AM 15  they don't do any business in the United States, I assume.

10:43AM 16         MR. SPANO:  Knowledgeable 30(b)(6) witnesses on behalf

10:43AM 17  of Taishan Gypsum and TTP will answer factually regarding all of

10:43AM 18  the 200 transactions that I told you about, all of the

10:43AM 19  communications and contacts, and then the parties can argue about

10:43AM 20  whether those facts are sufficient to establish jurisdiction.

10:43AM 21         Your Honor, my client has a default judgment

10:43AM 22  against it.  We want to get past this jurisdictional discovery.

10:43AM 23  We want our depositions taken in April, we want the supplemental

10:43AM 24  briefing done quickly, and we want a hearing so we know where we

10:43AM 25  stand.  This going off on a tangent asking for discovery

10:43AM  1    regarding 41 other entities, they have Chinese companies

10:44AM  2    unrelated to us, they have Mexican companies listed, they have

10:44AM  3    American companies listed besides these 20 subsidiaries.  No way.

10:44AM  4         If we're required to give this discovery, we will

10:44AM  5    have to go back to China and search and collect documents from

10:44AM  6    companies all over China.  Mr. Montoya correctly said that we, if

10:44AM  7    this discovery is required, would be required to produce the

10:44AM  8    information and documents in our possession and custody and

10:44AM  9    control.  To do my due diligence under Rule 26, I have to go and

10:44AM 10    collect documents from 20 subsidiaries.  Some of them are a

10:44AM 11    thousand miles away.

10:44AM 12         THE COURT:  I got it.  Let's do it this way:  Let's take

10:44AM 13    the depositions of the people that they say.  Let's do a 30(b)(6)

10:44AM 14    of those individuals.  It may not be sufficient, but let's do

10:44AM 15    that first.  We need to do that quickly.  You want to do it in

10:45AM 16    May.  That's a little too far if we're just going to restrict it

10:45AM 17    to that.  They want to do it in February.  Why can't we do it in

10:45AM 18    February --

10:45AM 19         MR. SPANO:  Your Honor, we have been talking to the PSC

10:45AM 20    since November, and we told them in November that February is a

10:45AM 21    problem.  The first two weeks in February are absolutely out of

10:45AM 22    bounds because of the Chinese New Year.  It's impossible to

10:45AM 23    travel there.  It's impossible for witnesses to travel.

10:45AM 24         This is -- and this is a big undertaking.  We're

10:45AM 25    going to have about 30,000 pages of documents to prepare them on.

10:45AM 1    February is just untenable for us.  We proposed the first week in

10:45AM 2    April to give the witnesses and the attorneys and everybody a

10:45AM 3    chance to participate --

10:45AM 4         THE COURT:  Let's get together.

10:45AM 5         MR. SPANO:  -- including the State plaintiffs --

10:45AM 6         THE COURT:  Let's get together on a date that's

10:45AM 7    appropriate, and let's take the depositions of those individuals.

10:45AM 8    Bring it back to me after that, if it's necessary.

10:46AM 9         MR. SPANO:  Thank you, Your Honor.

10:46AM 10         MR. LEVIN:  Your Honor, we've heard Your Honor.  The

10:46AM 11    scope.  When we go to Hong Kong, are we precluded, even though we

10:46AM 12    don't have documents, from asking questions about these other

10:46AM 13    entities?

10:46AM 14         THE COURT:  No.  I don't feel that way.  I think that

10:46AM 15    that may be a reason to support your position, or it may be a

10:46AM 16    reason to support your position.  If the 30(b)(6) person knows

10:46AM 17    something about it, then that's one thing.  If he doesn't, then

10:46AM 18    that's another thing.  So I think the scope ought to be broad.  I

10:46AM 19    don't think it ought to be narrow.

10:46AM 20         MR. LEVIN:  That's fine, sir.

10:46AM 21         THE COURT:  Because if it's broad, you may win.  If it's

10:46AM 22    narrow, you may lose because they won't be able to ask the

10:46AM 23    questions.  They are going to have to ask the questions to

10:46AM 24    somebody, and let's start with that.

10:46AM 25         MR. LEVIN:  Your Honor said that you would want to be

10:46AM 1    available by phone.

10:46AM 2              THE COURT:  I will be.

10:47AM 3              MR. LEVIN:  If that's the case, we'll endeavor to start

10:47AM 4    the deposition at midnight so that you don't have to be on the

10:47AM 5    phone at midnight.

10:47AM 6              THE COURT:  You all make that decision.  Give me some

10:47AM 7    heads-up as to when you need me so that I can make myself

10:47AM 8    available.

10:47AM 9              MR. LEVIN:  Thank you, Your Honor.

10:47AM 10             MR. SPANO:  Thank you.

10:47AM 11             THE COURT:  So I'm going to deny the motion at this time

10:47AM 12   to allow you to refile it if it becomes necessary, and I would

10:47AM 13   like you all to get together within the next week and let me know

10:47AM 14   the date that you all have decided.

10:47AM 15                  Any other motions that we need to take up?

10:47AM 16             MR. LEVIN:  That's all, Your Honor.

10:47AM 17             THE COURT:  Is that it?  Any other motions?  All right,

10:47AM 18   folks, thank you very much.  Court will stand in recess.

19                  (WHEREUPON, at 10:47 a.m., the proceedings were

20     concluded.)

21                            *    *    *

22

23

24

25

```
 1                    REPORTER'S CERTIFICATE

 2

 3      I, Cathy Pepper, Certified Realtime Reporter, Registered

 4  Merit Reporter, Registered Professional Reporter, Certified Court

 5  Reporter of the State of Louisiana, Official Court Reporter for

 6  the United States District Court, Eastern District of Louisiana,

 7  do hereby certify that the foregoing is a true and correct

 8  transcript, to the best of my ability and understanding, from the

 9  record of the proceedings in the above-entitled and numbered

10  matter.

11

12

13                           s/Cathy Pepper
                             _____

14                           Cathy Pepper, CRR, RMR, CCR

15                           Official Court Reporter

16                           United States District Court

17

18

19

20

21

22

23

24

25
```

## 0

**09-MD-2047-EEF-JCW** [1] - 1:6

## 1

**10022** [1] - 1:24
**10:15** [1] - 1:7
**10:47** [1] - 21:19
**11** [3] - 3:9, 6:9, 6:10
**12** [1] - 3:11
**14th** [1] - 16:7
**19106** [1] - 1:18

## 2

**20** [7] - 1:7, 4:2, 8:3, 13:4, 15:6, 19:3, 19:10
**20,000** [1] - 9:14
**200** [2] - 7:20, 18:18
**2011** [2] - 1:7, 4:2
**225** [1] - 1:20
**2400** [1] - 2:4
**26** [1] - 19:9

## 3

**30(b)(6** [7] - 9:15, 12:23, 15:2, 15:15, 18:16, 19:13, 20:16
**30,000** [1] - 19:25
**30326** [1] - 2:5
**33134** [1] - 1:21
**3344** [1] - 2:4

## 4

**4** [2] - 3:5, 3:7
**41** [1] - 19:1

## 5

**500** [2] - 1:17, 2:7
**504** [1] - 2:8
**510** [1] - 1:17
**589-7779** [1] - 2:8
**5939** [1] - 5:6
**5939.........** [1] - 3:8

## 6

**6634** [1] - 12:1
**6634........** [1] - 3:10

**6669** [1] - 4:13
**6669..............** [1] - 3:6
**6964** [2] - 3:13, 12:15
**6981** [1] - 12:15
**6981............................ ........................** [1] - 3:14

## 7

**70130** [1] - 2:8

## 8

**875** [1] - 1:24

## A

**A.M** [1] - 1:7
**a.m** [1] - 21:19
**ability** [1] - 22:8
**able** [1] - 20:22
**above-entitled** [1] - 22:9
**absence** [1] - 16:18
**absolutely** [1] - 19:21
**accept** [2] - 5:11, 14:6
**accordance** [1] - 6:10
**ACCOUNTING** [1] - 3:5
**accounting** [1] - 4:13
**accurately** [1] - 13:3
**acted** [1] - 17:1
**actions** [1] - 17:3
**activity** [1] - 18:10
**address** [1] - 12:24
**ADEQUACY** [1] - 3:12
**adequacy** [1] - 12:12
**adequate** [1] - 14:10
**affiliate** [1] - 18:4
**affiliated** [2] - 13:6, 15:23
**affiliates** [2] - 13:4, 15:5
**agency** [2] - 13:11, 14:18
**agency-type** [1] - 14:18
**agenda** [1] - 4:11
**ago** [1] - 15:7
**agree** [1] - 16:25
**ALHAMBRA** [1] - 1:20
**ALL** [2] - 1:8, 2:3
**allow** [1] - 21:12
**alter** [3] - 6:7, 13:10, 14:18

**alter-ego** [3] - 6:7, 13:10, 14:18
**American** [3] - 7:16, 7:17, 19:3
**amount** [1] - 18:9
**analysis** [3] - 15:19, 18:7, 18:8
**AND** [3] - 3:6, 3:12, 3:13
**answer** [2] - 6:12, 18:17
**answers** [2] - 12:19
**appearance** [17] - 5:4, 5:12, 5:24, 6:5, 6:18, 8:20, 10:11, 10:12, 10:20, 11:17, 11:19, 11:22, 14:7, 15:8, 15:23, 17:13, 17:19
**APPEARANCES** [2] - 1:14, 2:1
**appropriate** [2] - 12:19, 16:8, 20:7
**April** [3] - 16:8, 18:23, 20:2
**argue** [4] - 5:2, 12:1, 17:14, 18:19
**arguing** [1] - 17:24
**argument** [4] - 4:17, 12:24, 14:24, 17:7
**ARNOLD** [1] - 1:17
**aspect** [1] - 12:13
**assessing** [1] - 7:2
**assume** [1] - 17:1
**ATLANTA** [1] - 2:5
**attorneys** [2] - 9:22, 20:2
**available** [2] - 21:1, 21:8
**availment** [1] - 18:10
**AVENUE** [1] - 1:24
**aware** [2] - 13:23, 16:10
**awful** [1] - 10:13

## B

**B406** [1] - 2:7
**Banner** [1] - 12:3
**BANNER** [1] - 2:3
**BANNER'S** [1] - 3:9
**Banner's** [1] - 11:24
**based** [2] - 5:7, 16:19
**basis** [2] - 8:17, 16:17
**bear** [1] - 16:14
**becomes** [1] - 21:12
**BEFORE** [1] - 1:11
**behalf** [7] - 7:10, 8:21, 12:3, 12:16, 13:4, 17:24, 18:16

**belabor** [1] - 13:22
**BERMAN** [1] - 1:16
**best** [1] - 22:8
**big** [1] - 19:24
**bit** [1] - 12:14
**born** [1] - 10:8
**bought** [1] - 7:18
**bounds** [1] - 19:22
**briefing** [2] - 4:16, 18:24
**briefly** [1] - 11:5
**bring** [2] - 12:10, 20:8
**broad** [6] - 13:7, 13:8, 15:12, 15:22, 20:18, 20:21
**burden** [1] - 8:14
**business** [2] - 5:14, 18:15
**BY** [6] - 1:17, 1:20, 1:23, 2:4, 2:9, 2:10

## C

**CALLED** [1] - 4:4
**cannot** [1] - 13:4
**case** [5] - 7:3, 8:21, 9:4, 16:11, 21:3
**cases** [1] - 16:17
**CASES** [1] - 1:8
**Cathy** [2] - 22:3, 22:14
**CATHY** [1] - 2:7
**caused** [1] - 5:13
**CCR** [2] - 2:7, 22:14
**centered** [1] - 16:22
**certain** [2] - 12:3, 15:3
**CERTIFICATE** [1] - 22:1
**Certified** [2] - 22:3, 22:4
**certify** [1] - 22:7
**chain** [1] - 13:16
**CHALLENGING** [1] - 3:11
**challenging** [1] - 12:11
**chance** [1] - 20:3
**China** [10] - 5:16, 5:25, 6:15, 7:17, 10:17, 16:20, 17:16, 17:21, 19:5, 19:6
**CHINESE** [1] - 1:4
**Chinese** [13] - 5:8, 5:14, 5:18, 5:25, 6:1, 6:12, 6:13, 6:15, 7:18, 10:5, 14:12, 19:1, 19:22
**CHINESE-MANUFACTURED** [1] - 1:4

**CIRCLE** [1] - 1:20
**Civil** [2] - 6:11, 10:9
**CIVIL** [1] - 1:6
**claim** [2] - 8:11, 8:13
**CLERK** [1] - 4:7
**client** [5] - 10:19, 10:20, 18:8, 18:21
**clients** [3] - 7:21, 10:13, 11:13
**clients'** [1] - 16:12
**collect** [2] - 19:5, 19:10
**COLSON** [1] - 1:19
**coming** [1] - 4:18
**comments** [1] - 11:6
**Committee** [1] - 12:17
**Committee's** [2] - 4:12, 12:11
**COMMITTEE'S** [2] - 3:5, 3:11
**communications** [2] - 7:16, 18:19
**companies** [15] - 5:15, 5:18, 6:1, 6:12, 7:12, 7:16, 7:18, 8:18, 9:18, 10:5, 19:1, 19:2, 19:3, 19:6
**companies'** [1] - 7:17
**company** [5] - 6:17, 8:6, 8:8, 8:9, 18:4
**Company** [2] - 10:15, 10:17
**compel** [4] - 12:5, 12:18, 12:24, 14:2
**complained** [1] - 14:9
**complaint** [6] - 5:8, 5:9, 5:13, 10:6, 10:17, 15:7
**complete** [2] - 7:13, 7:22
**completeness** [1] - 12:12
**COMPLETENESS** [1] - 3:12
**COMPUTER** [1] - 2:10
**concluded** [1] - 21:20
**conduct** [1] - 8:25
**conflate** [1] - 11:3
**connections** [1] - 15:4
**consider** [1] - 11:19
**contact** [1] - 15:19
**contacts** [7] - 7:16, 13:21, 16:21, 18:6, 18:8, 18:12, 18:19
**CONTINUED** [1] - 2:1
**contracts** [1] - 7:24
**control** [3] - 13:16, 15:10, 19:9
**controlled** [2] - 17:2, 17:11

**CORAL** [1] - 1:21
**core** [2] - 13:1, 14:1
**corporate** [2] - 9:16, 14:13
**correct** [2] - 17:23, 22:7
**correctly** [1] - 19:6
**correspondence** [1] - 7:25
**counsel** [5] - 5:24, 6:14, 14:6
**course** [1] - 8:1
**COURT** [30] - 1:1, 2:7, 4:4, 4:8, 4:20, 4:24, 5:5, 6:23, 7:6, 8:20, 8:23, 10:1, 10:24, 11:3, 11:15, 12:9, 14:20, 16:4, 16:13, 16:25, 18:14, 19:12, 20:4, 20:6, 20:14, 20:21, 21:2, 21:6, 21:11, 21:17
**court** [3] - 10:10, 10:19, 10:21
**Court** [17] - 8:11, 8:17, 8:24, 9:10, 11:16, 12:5, 13:23, 14:23, 16:10, 17:18, 17:20, 21:18, 22:4, 22:5, 22:6, 22:15, 22:16
**Court's** [2] - 12:7
**cover** [1] - 12:23
**CPSC** [2] - 3:10, 11:25
**crafted** [1] - 7:4
**Crescent** [2] - 10:15, 10:17
**cross** [1] - 9:17
**cross-examine** [1] - 9:17
**CRR** [2] - 2:7, 22:14
**crystallized** [1] - 13:3
**CTEH** [2] - 3:9, 11:24
**custody** [2] - 15:10, 19:8
**customers** [1] - 11:9

**D**

**damages** [1] - 7:2
**date** [2] - 20:6, 21:14
**deal** [7] - 6:10, 6:21, 9:4, 10:2, 10:12, 10:18, 14:20
**dealing** [2] - 11:15, 12:5
**decided** [1] - 21:14
**decides** [1] - 14:4
**decision** [1] - 21:6
**declarations** [2] -

**9**:17, 16:19
**DEFAULT** [1] - 3:8
**default** [14] - 5:1, 5:20, 7:3, 7:4, 7:5, 8:4, 8:9, 9:20, 11:16, 11:22, 13:2, 16:16, 16:18, 18:21
**defendant** [2] - 5:8, 10:4
**DEFENDANTS** [2] - 1:23, 3:13
**defendants** [4] - 10:4, 11:6, 12:12, 16:7
**defendants'** [1] - 13:21
**defined** [1] - 15:4
**defining** [1] - 15:3
**demands** [1] - 15:19
**deny** [1] - 21:11
**deposition** [2] - 16:6, 21:4
**depositions** [9] - 6:13, 9:15, 12:23, 15:15, 16:2, 16:12, 18:23, 19:13, 20:7
**DEPUTY** [1] - 4:7
**determine** [1] - 10:14
**determined** [3] - 5:17, 8:2, 10:5
**DIAL** [1] - 2:3
**different** [1] - 4:22
**differently** [1] - 9:5
**diligence** [1] - 19:9
**direct** [2] - 13:17, 13:24
**directed** [4] - 12:20, 13:25, 14:15, 14:16
**directs** [1] - 13:12
**disclose** [1] - 8:19
**disclosed** [1] - 18:12
**disclosing** [1] - 11:11
**DISCOVERY** [2] - 3:9, 3:12
**discovery** [31] - 6:6, 6:21, 7:1, 7:13, 7:23, 8:2, 8:9, 8:15, 9:1, 9:13, 10:25, 11:1, 11:11, 11:25, 12:12, 12:21, 13:5, 14:4, 14:8, 15:13, 15:18, 16:4, 16:15, 16:22, 18:22, 18:25, 19:4, 19:7
**discuss** [1] - 9:16
**discussed** [1] - 4:11
**dismiss** [2] - 17:14, 17:15
**dispute** [1] - 13:6
**District** [3] - 22:6, 22:16

**DISTRICT** [3] - 1:1, 1:1, 1:12
**docket** [1] - 5:6
**DOCKET** [1] - 1:6
**doctrine** [1] - 13:11
**Document** [3] - 12:1, 12:15
**document** [1] - 4:13
**DOCUMENT** [4] - 1:8, 3:6, 3:8, 3:10
**documentations** [1] - 7:24
**DOCUMENTS** [1] - 3:13
**documents** [13] - 7:15, 9:14, 12:6, 15:10, 15:11, 15:20, 15:21, 15:23, 19:5, 19:8, 19:10, 19:25, 20:12
**domestic** [1] - 10:16
**dominoes** [1] - 14:3
**done** [6] - 5:14, 9:15, 13:17, 18:24
**draft** [1] - 4:24
**DRYWALL** [1] - 1:4
**drywall** [10] - 7:14, 7:18, 8:5, 8:7, 9:12, 11:8, 13:13, 13:18, 14:1, 16:19
**due** [2] - 9:9, 19:9

**E**

**e-mails** [1] - 7:25
**ear** [1] - 18:5
**early** [1] - 16:8
**Eastern** [1] - 22:6
**EASTERN** [1] - 1:1
**effectuated** [1] - 5:19
**ego** [3] - 6:7, 13:10, 14:18
**EIDSON** [1] - 1:19
**either** [2] - 5:11, 13:10
**ELDON** [1] - 1:11
**end** [1] - 5:23
**endeavor** [1] - 21:3
**enforcing** [1] - 14:23
**enter** [5] - 5:11, 6:5, 10:12, 11:19, 17:13
**entered** [6] - 5:23, 6:17, 6:22, 8:25, 10:11, 18:2
**entering** [1] - 10:20
**ENTITIES** [1] - 2:3
**entities** [18] - 5:9, 12:3, 13:5, 13:12, 13:15, 13:24, 14:4, 14:7, 14:10, 14:14,

15:6, 15:17, 17:10, 17:11, 17:24, 17:25, 19:1, 20:13
**entities'** [1] - 14:16
**entitled** [3] - 14:7, 15:20, 22:9
**entity** [3] - 10:10, 14:11, 15:4
**entry** [1] - 5:3
**ESQUIRE** [4] - 1:17, 1:20, 1:23, 2:4
**establish** [2] - 16:20, 18:20
**evening** [1] - 13:20
**evidence** [2] - 6:24, 9:21
**examine** [1] - 9:17
**exception** [1] - 11:7
**expense** [2] - 5:9, 8:14

**F**

**faced** [1] - 10:23
**fact** [1] - 8:16
**facts** [4] - 8:13, 16:22, 18:20
**factual** [1] - 8:17
**factually** [1] - 18:17
**faith** [1] - 8:16
**fall** [1] - 14:3
**FALLON** [1] - 1:11
**far** [1] - 19:16
**faulting** [1] - 6:14
**February** [6] - 16:7, 19:17, 19:18, 19:20, 19:21, 20:1
**federal** [2] - 8:12, 15:11
**Federal** [2] - 6:11, 10:8
**figure** [3] - 10:4, 18:7
**filed** [4] - 5:13, 6:10, 12:22, 13:20
**fine** [1] - 20:20
**firm** [1] - 7:9
**first** [7] - 4:11, 11:4, 12:19, 12:20, 19:15, 19:21, 20:1
**FISHBEIN** [1] - 1:16
**FL** [1] - 1:21
**Florida** [1] - 6:2
**focus** [1] - 12:14
**folks** [1] - 21:18
**FOR** [5] - 1:16, 1:23, 2:3, 3:5, 3:8
**foregoing** [1] - 22:7
**formal** [2] - 5:3, 8:20
**formally** [1] - 9:8
**forms** [1] - 7:22

**forth** [2] - 13:21, 17:9
**frame** [1] - 15:14
**Frank** [1] - 7:9
**FRANK** [1] - 1:23
**friend** [3] - 10:21, 17:20
**front** [1] - 9:24
**full** [1] - 18:13

**G**

**GA** [1] - 2:5
**GABLES** [1] - 1:21
**generally** [1] - 9:2
**Germano** [2] - 7:3, 16:16
**government** [1] - 14:12
**grant** [2] - 11:20, 11:21
**Gross** [1] - 8:4
**GUNN** [1] - 2:3
**guns** [1] - 9:23
**GYPSUM** [1] - 3:13
**Gypsum** [9] - 7:11, 8:7, 11:7, 11:10, 12:13, 16:16, 16:23, 17:24, 18:17
**Gypsum's** [1] - 18:5

**H**

**Hague** [1] - 5:10
**handle** [2] - 9:2, 11:2
**hard** [1] - 9:7
**heads** [1] - 21:7
**heads-up** [1] - 21:7
**hear** [4] - 4:17, 5:5, 7:6, 10:1
**HEARD** [1] - 1:11
**heard** [1] - 20:10
**hearing** [4] - 4:15, 4:17, 12:4, 18:24
**hearsay** [1] - 17:16
**hereby** [1] - 22:7
**HICKS** [1] - 1:19
**Hogan** [1] - 7:9
**HOGAN** [1] - 1:23
**homes** [2] - 6:20
**Hong** [2] - 16:2, 20:11
**Honor** [28] - 5:7, 7:2, 7:8, 9:9, 9:25, 10:2, 12:2, 12:4, 12:6, 12:16, 12:18, 13:2, 13:22, 14:3, 14:25, 15:14, 16:1, 16:14, 17:23, 18:3, 18:21, 19:19, 20:9, 20:10,

20:25, 21:9, 21:16
**HONORABLE** [1] - 1:11
**hopper** [1] - 4:19
**HUDGINS** [1] - 2:3

## I

**idea** [1] - 14:5
**identified** [2] - 7:20, 8:6
**identify** [2] - 5:17, 11:12
**impossible** [2] - 19:22, 19:23
**improper** [2] - 10:10, 15:18
**IN** [1] - 1:4
**including** [1] - 20:5
**indeterminate** [4] - 5:8, 10:3, 10:17, 11:6
**individuals** [2] - 19:14, 20:7
**influenced** [1] - 18:6
**informal** [1] - 6:21
**information** [3] - 11:12, 15:19, 19:8
**interest** [1] - 15:17
**interrogatories** [2] - 12:20, 15:2
**introduce** [1] - 7:9
**introduced** [1] - 7:2
**investigation** [1] - 8:1
**involved** [4] - 7:21, 9:11, 9:18, 11:13
**involvement** [1] - 6:2
**Iqbal** [1] - 8:11
**issue** [7] - 4:14, 11:24, 13:1, 13:15, 13:16, 14:1, 14:25
**issued** [1] - 12:5
**issues** [2] - 9:17, 16:3

## J

**JANUARY** [2] - 1:7, 4:2
**January** [1] - 9:14
**judge** [1] - 16:5
**JUDGE** [1] - 1:12
**judgment** [2] - 8:4, 18:21
**jurisdiction** [16] - 12:21, 13:5, 13:9, 13:14, 14:18, 14:23, 15:13, 15:18, 16:18, 16:21, 16:24, 17:9,

17:25, 18:11, 18:20
**jurisdictional** [3] - 7:13, 18:1, 18:22

## K

**knowledgeable** [4] - 9:16, 18:12, 18:14, 18:16
**knows** [2] - 12:4, 20:16
**Kong** [2] - 16:2, 20:11

## L

**LA** [1] - 2:8
**labeled** [2] - 11:8, 11:9
**laid** [1] - 16:9
**language** [1] - 5:10
**last** [1] - 16:5
**law** [3] - 6:13, 13:21, 13:22
**laws** [1] - 6:12
**layers** [1] - 14:12
**least** [2] - 13:4, 15:6
**LEVIN** [15] - 1:16, 1:17, 4:18, 4:22, 5:2, 5:7, 7:1, 10:2, 10:25, 20:10, 20:20, 20:25, 21:3, 21:9, 21:16
**Levin** [2] - 13:1, 14:5
**LIABILITY** [1] - 1:4
**lift** [3] - 4:14, 4:25, 6:24
**LIFT** [1] - 3:7
**list** [1] - 10:4
**listed** [3] - 7:21, 19:2, 19:3
**LITIGATION** [1] - 1:5
**litigation** [3] - 8:25, 9:7, 10:3
**live** [1] - 6:20
**logistically** [1] - 14:21
**looking** [1] - 4:15
**lose** [1] - 20:22
**LOUISIANA** [2] - 1:1, 1:6
**Louisiana** [2] - 22:5, 22:6
**LOVELLS** [1] - 1:23
**Lovells** [1] - 7:9

## M

**mails** [1] - 7:25
**manner** [1] - 5:14
**manufacture** [3] - 8:7, 9:11, 13:25

**MANUFACTURED** [1] - 1:4
**manufacturer** [1] - 10:14
**manufacturers'** [1] - 7:22
**manufacturing** [2] - 8:5, 13:17
**market** [1] - 18:9
**markings** [2] - 5:17, 11:11
**matter** [2] - 8:16, 22:10
**matters** [1] - 9:2
**mean** [3] - 6:4, 6:9, 10:15
**means** [1] - 15:5
**MECHANICAL** [1] - 2:9
**MEETING** [1] - 3:10
**meeting** [1] - 11:25
**Merit** [1] - 22:4
**met** [1] - 4:9
**method** [1] - 10:9
**Mexican** [1] - 19:2
**middle** [1] - 16:6
**midnight** [2] - 21:4, 21:5
**miles** [1] - 19:11
**mind** [1] - 16:14
**minimum** [4] - 9:19, 13:18, 15:18, 16:21
**minutes** [1] - 15:7
**Mitchell** [1] - 16:17
**months** [1] - 16:10
**MONTOYA** [1] - 1:20, 12:16, 14:25, 16:5
**Montoya** [3] - 11:1, 12:16, 19:6
**morning** [1] - 7:8
**most** [2] - 10:10, 14:2
**MOTION** [4] - 3:5, 3:7, 3:11
**motion** [22] - 4:11, 4:12, 4:23, 4:25, 5:7, 11:1, 11:16, 11:20, 11:21, 12:4, 12:9, 12:11, 12:18, 12:22, 12:24, 12:25, 13:2, 13:21, 14:2, 21:11
**MOTIONS** [2] - 1:11, 3:3
**motions** [9] - 4:9, 4:10, 11:3, 11:15, 12:17, 17:13, 21:15, 21:17
**move** [2] - 9:4, 9:6
**moved** [2] - 16:6, 16:16
**moving** [2] - 7:5, 10:6

**MPFs** [1] - 11:10
**MR** [29] - 4:18, 4:22, 5:2, 5:7, 7:1, 7:8, 7:11, 8:22, 9:9, 10:2, 10:25, 11:5, 12:2, 12:16, 14:25, 16:5, 16:14, 17:23, 18:16, 19:19, 20:5, 20:9, 20:10, 20:20, 20:25, 21:3, 21:9, 21:10, 21:16
**multilayered** [1] - 14:11
**multiple** [1] - 14:12
**must** [1] - 10:15
**mystery** [1] - 11:14

## N

**name** [2] - 5:15, 7:10
**named** [1] - 15:6
**narrow** [2] - 20:19, 20:22
**native** [1] - 5:10
**necessary** [2] - 6:6, 20:8, 21:12
**need** [11] - 4:10, 12:1, 12:7, 12:8, 12:10, 14:8, 15:24, 16:14, 19:15, 21:7, 21:15
**needed** [1] - 5:21
**New** [2] - 10:16, 19:22
**NEW** [3] - 1:6, 1:24, 2:8
**next** [3] - 4:20, 11:24, 21:13
**NICHOLAS** [1] - 2:4
**Nick** [1] - 12:3
**NO** [1] - 1:6
**nobody** [2] - 11:17, 11:22
**none** [1] - 8:3
**nothing** [1] - 6:16
**notice** [2] - 15:2, 15:8
**November** [1] - 19:20
**nowhere** [1] - 6:18
**number** [2] - 4:8, 5:6
**numbered** [1] - 22:9
**NY** [1] - 1:24

## O

**objection** [1] - 13:2
**obligation** [1] - 6:22
**OEM** [1] - 16:19
**OEMs** [1] - 11:7
**OF** [4] - 1:1, 1:11, 3:12
**Official** [2] - 22:5,

22:15
**OFFICIAL** [1] - 2:7
**officially** [1] - 17:20
**omnibus** [1] - 4:25
**OMNIBUS** [1] - 3:7
**ON** [1] - 3:7
**once** [2] - 9:21, 14:3
**one** [13] - 4:20, 5:5, 8:6, 8:7, 8:18, 11:4, 11:7, 11:15, 11:18, 16:5, 16:17, 20:17
**ones** [1] - 9:18
**opponent** [1] - 7:6
**opportunity** [2] - 9:6, 11:23
**oral** [1] - 4:17
**orally** [1] - 12:1
**ORDER** [1] - 4:4
**order** [9] - 8:7, 11:8, 11:12, 12:5, 12:7, 12:23, 12:25, 13:21, 14:10
**ordered** [1] - 11:9
**ordinarily** [1] - 9:5
**Orleans** [1] - 10:16
**ORLEANS** [3] - 1:6, 2:8
**OTHER** [1] - 3:6
**ought** [2] - 20:18, 20:19
**owned** [1] - 14:12
**ownership** [2] - 14:13, 15:17

## P

**PA** [1] - 1:18
**PAGE** [1] - 3:3
**pages** [2] - 9:14, 19:25
**Panayotopoulos** [1] - 12:3
**PANAYOTOPOULOS** [2] - 2:4, 12:2
**papers** [2] - 16:6, 16:9
**parent** [1] - 18:4
**part** [1] - 14:3
**participate** [1] - 20:3
**particular** [1] - 5:13
**parties** [4] - 4:9, 4:16, 9:11, 18:19
**party** [2] - 8:14, 9:3
**pass** [1] - 12:9
**past** [1] - 18:22
**Patrick** [1] - 12:16
**PATRICK** [1] - 1:20
**PEACHTREE** [1] - 2:4
**PENTHOUSE** [1] - 1:20
**people** [4] - 9:23,

9:24, 10:22, 19:13
**Pepper** [3] - 22:3, 22:13, 22:14
**PEPPER** [1] - 2:7
**person** [1] - 20:16
**personal** [11] - 12:20, 13:5, 13:9, 13:14, 14:17, 15:13, 15:18, 16:18, 16:21, 17:25
**perspective** [1] - 15:20
**phantom** [1] - 10:2
**PHILADELPHIA** [1] - 1:18
**phone** [3] - 16:1, 21:1, 21:5
**piercing** [2] - 13:10, 14:18
**plain** [1] - 10:18
**plaintiff** [1] - 8:13
**Plaintiff's** [1] - 4:24
**PLAINTIFF'S** [1] - 3:7
**plaintiffs** [6] - 8:3, 8:10, 10:14, 16:25, 17:14, 20:5
**PLAINTIFFS** [1] - 1:16
**PLAINTIFFS'** [2] - 3:5, 3:11
**Plaintiffs'** [2] - 4:12, 12:17
**plaintiffs'** [2] - 12:11, 12:18
**Plasterboard** [1] - 7:12
**plausible** [1] - 8:13
**pleading** [1] - 8:12
**pleadings** [1] - 7:4
**pled** [2] - 14:9, 14:10
**point** [3] - 9:24, 15:9, 16:5
**pointed** [1] - 13:1
**pointing** [1] - 9:23
**position** [6] - 9:7, 16:8, 17:1, 17:3, 20:15, 20:16
**possession** [2] - 15:10, 19:8
**potential** [1] - 7:14
**POYDRAS** [1] - 2:7
**practical** [5] - 9:10, 9:22, 14:21, 15:20, 18:3
**pragmatic** [1] - 9:22
**precluded** [1] - 20:11
**preliminary** [6] - 4:24, 4:25, 7:3, 7:5, 11:16, 11:22
**PRELIMINARY** [1] - 3:8
**prepare** [2] - 16:12,

19:25
**presentation** [1] - 9:3
**principals** [1] - 6:15
**problem** [5] - 6:2, 6:19, 8:10, 8:23, 19:21
**Procedure** [2] - 6:11, 10:9
**proceed** [3] - 6:6, 6:22, 11:21
**proceeding** [1] - 9:20
**PROCEEDINGS** [3] - 1:11, 2:9, 4:1
**proceedings** [2] - 21:19, 22:9
**produce** [4] - 11:25, 15:12, 15:24, 19:7
**PRODUCE** [1] - 3:9
**PRODUCED** [1] - 2:10
**produced** [4] - 9:14, 11:12, 11:14, 12:6
**product** [3] - 5:15, 10:14, 18:2
**production** [3] - 12:20, 15:2, 16:19
**PRODUCTS** [1] - 1:4
**products** [5] - 6:3, 6:16, 11:13, 13:13, 13:18
**Professional** [1] - 22:4
**profile** [1] - 7:22
**prolix** [1] - 14:11
**proposals** [1] - 7:25
**proposed** [2] - 4:11, 20:1
**protective** [3] - 12:22, 12:25, 13:21
**providing** [5] - 7:13, 7:15, 7:22, 8:2, 8:8
**PSC** [3] - 8:17, 9:12, 19:19
**purpose** [1] - 13:19
**purposeful** [1] - 18:10
**purposes** [4] - 14:17, 16:21, 18:1, 18:11
**put** [3] - 5:15, 6:24, 8:14

## Q

**questions** [5] - 6:13, 15:16, 20:12, 20:23
**quickly** [2] - 18:24, 19:15

## R

**RE** [1] - 1:4
**reach** [1] - 14:10
**real** [1] - 15:9
**realize** [1] - 9:22
**really** [4] - 10:21, 17:4, 17:9, 18:7
**Realtime** [1] - 22:3
**reason** [2] - 20:15, 20:16
**recess** [1] - 21:18
**Record** [3] - 12:1, 12:15
**RECORD** [4] - 3:6, 3:8, 3:10, 3:13
**record** [4] - 4:13, 5:3, 5:6, 22:9
**RECORDED** [1] - 2:9
**refile** [1] - 21:12
**reflecting** [1] - 7:15
**regard** [1] - 6:3
**regarding** [3] - 7:13, 18:17, 19:1
**Registered** [2] - 22:3, 22:4
**reject** [1] - 5:11
**RELATED** [1] - 3:9
**related** [4] - 5:18, 11:25, 13:12, 15:17
**RELATES** [1] - 1:8
**relating** [1] - 12:23
**relevant** [4] - 13:8, 13:9, 13:13, 14:17
**RELIEF** [1] - 3:6
**relief** [3] - 4:13, 4:22, 6:8
**reply** [1] - 13:20
**REPORTER** [1] - 2:7
**Reporter** [6] - 22:3, 22:4, 22:5, 22:15
**REPORTER'S** [1] - 22:1
**represent** [4] - 7:11, 10:10, 10:19
**representations** [2] - 13:3, 14:6
**representatives** [2] - 7:17, 9:16
**represented** [1] - 9:3
**REQUEST** [1] - 3:9
**request** [3] - 11:24, 12:19, 15:1
**require** [1] - 8:12
**required** [3] - 19:4, 19:7
**residents** [1] - 6:19
**resold** [1] - 7:19
**resolve** [1] - 16:2

**resolved** [1] - 4:10
**respect** [2] - 9:9, 14:6
**respond** [2] - 11:4, 11:5
**response** [4] - 5:3, 10:1, 14:16, 16:4
**responsibility** [1] - 18:1
**responsible** [1] - 6:25
**restrict** [1] - 19:16
**revealed** [1] - 17:13
**Rick** [1] - 7:10
**rise** [1] - 4:7
**RMR** [2] - 2:7, 22:14
**ROAD** [1] - 2:4
**ROOM** [1] - 2:7
**Rule** [3] - 6:9, 6:10, 19:9
**ruled** [1] - 8:11
**Rules** [2] - 6:11, 10:8
**rules** [3] - 8:12, 15:11

## S

**s/Cathy** [1] - 22:13
**sale** [4] - 8:5, 8:8, 9:11, 13:25
**sales** [6] - 7:14, 13:12, 13:17, 14:15, 14:16, 16:20, 18:2
**schedule** [1] - 4:16
**scheduled** [1] - 16:6
**scope** [3] - 14:4, 20:11, 20:18
**search** [1] - 19:5
**seated** [1] - 4:8
**second** [1] - 13:15
**secrecy** [2] - 6:12, 6:13
**SEDRAN** [1] - 1:16
**see** [2] - 9:21, 17:14
**seeking** [1] - 8:4
**separate** [1] - 11:1
**service** [3] - 5:11, 5:19
**servicing** [1] - 5:10
**set** [6] - 4:15, 4:17, 12:20, 13:21, 15:2, 15:14
**several** [3] - 5:8, 15:7, 16:10
**short** [1] - 7:12
**show** [3] - 6:25, 8:3, 14:23
**showing** [1] - 8:13
**side** [1] - 9:2
**significant** [1] - 6:19
**similar** [1] - 12:18
**simply** [2] - 13:6, 15:22

**single** [1] - 11:11
**situation** [3] - 6:16, 17:5, 17:22
**six** [1] - 4:10
**solicited** [1] - 7:17
**sometimes** [2] - 5:16
**sort** [1] - 7:15
**sought** [1] - 8:9
**SPANO** [12] - 1:23, 7:11, 8:22, 9:9, 11:5, 16:14, 17:23, 18:16, 19:19, 20:5, 20:9, 21:10
**Spano** [1] - 7:9
**special** [1] - 6:5
**specific** [1] - 8:13
**speculation** [1] - 18:3
**stake** [1] - 10:13
**stand** [2] - 18:25, 21:18
**standpoint** [2] - 8:24, 14:21
**STANLEY** [1] - 7:8
**Stanley** [1] - 7:10
**start** [2] - 20:24, 21:3
**state** [1] - 8:13
**State** [2] - 20:5, 22:5
**statements** [1] - 9:1
**States** [10] - 6:17, 7:14, 13:13, 13:18, 14:1, 14:15, 14:17, 18:15, 22:6, 22:16
**STATES** [2] - 1:1, 1:12
**stay** [3] - 4:15, 4:25, 6:24
**STAY** [1] - 3:7
**STEERING** [2] - 3:5, 3:11
**Steering** [3] - 4:12, 12:11, 12:17
**STENOGRAPHY** [1] - 2:9
**STREET** [2] - 1:17, 2:7
**subissues** [1] - 14:2
**subject** [1] - 17:25
**submitted** [1] - 16:18
**subsidiaries** [4] - 8:3, 15:5, 19:3, 19:10
**subsidiary** [1] - 8:6
**successors** [1] - 15:5
**sue** [1] - 8:17
**sued** [3] - 5:8, 10:21, 10:22
**sufficient** [5] - 16:20, 16:24, 18:10, 18:20, 19:14
**suggested** [1] - 16:1
**suggesting** [1] - 9:19
**suggestion** [1] - 9:24

**SUITE** [2] - 1:17, 2:4
**supplemental** [1] - 18:23
**SUPPLY** [1] - 2:3
**support** [2] - 20:15, 20:16
**Supreme** [1] - 8:11
**surrogate** [1] - 18:5
**surrogates** [4] - 17:1, 17:2, 17:4, 17:7
**surrogates'** [1] - 17:2

## T

**Taian** [1] - 7:12
**Taishan** [36] - 5:18, 5:19, 5:21, 6:3, 6:5, 7:10, 7:11, 7:12, 8:7, 9:12, 11:7, 11:10, 12:13, 12:22, 13:3, 13:12, 13:16, 13:20, 13:24, 13:25, 14:11, 14:15, 14:16, 15:3, 15:9, 16:7, 16:16, 16:23, 17:1, 17:4, 17:11, 17:12, 17:24, 18:5, 18:17
**TAISHAN** [1] - 3:13
**Taishan's** [4] - 12:25, 13:17, 14:6, 17:3
**tangent** [1] - 18:25
**targeting** [1] - 18:9
**terms** [1] - 14:14
**test** [1] - 17:6
**testimony** [1] - 18:13
**TG** [1] - 7:18
**THAT** [1] - 3:9
**THE** [35] - 1:11, 1:16, 1:23, 3:7, 3:10, 3:12, 4:7, 4:8, 4:20, 4:24, 5:5, 6:23, 7:6, 8:20, 8:23, 10:1, 10:24, 11:3, 11:15, 12:9, 14:20, 16:4, 16:13, 16:25, 18:14, 19:12, 20:4, 20:6, 20:14, 20:21, 21:2, 21:6, 21:11, 21:17
**theories** [5] - 6:7, 6:8, 14:10, 14:19
**theory** [3] - 13:10, 13:11
**they've** [4] - 14:9, 15:22, 16:10, 16:11
**thinking** [1] - 5:23
**THIRD** [1] - 1:24
**THIS** [1] - 1:8
**thousand** [1] - 19:11
**THURSDAY** [2] - 1:7,

4:2
**TO** [4] - 1:8, 3:7, 3:10, 4:4
**today** [2] - 4:9, 7:10
**together** [4] - 11:4, 20:4, 20:6, 21:13
**topics** [2] - 12:24, 15:3
**towards** [1] - 13:25
**transactions** [3] - 7:20, 7:23, 18:18
**TRANSCRIPT** [2] - 1:11, 2:9
**transcript** [1] - 22:8
**translated** [1] - 17:17
**translating** [1] - 5:9
**travel** [1] - 19:23
**true** [1] - 22:7
**trying** [4] - 9:4, 9:6, 9:10, 15:16
**TTP** [7] - 7:12, 7:18, 11:7, 11:10, 16:23, 17:24, 18:17
**turns** [1] - 10:16
**two** [6] - 9:11, 9:18, 11:15, 12:17, 17:25, 19:21
**Twombly** [1] - 8:11
**type** [3] - 6:21, 14:18, 16:15

## U

**U.S** [7] - 7:19, 16:23, 18:2, 18:6, 18:9, 18:10
**ultimately** [1] - 14:11
**under** [2] - 13:11, 19:9
**underlying** [1] - 7:24
**undertaker** [1] - 13:11
**undertaking** [3] - 6:7, 16:15, 19:24
**UNITED** [2] - 1:1, 1:12
**United** [10] - 6:17, 7:14, 13:13, 13:18, 14:1, 14:15, 14:17, 18:15, 22:6, 22:16
**unless** [1] - 9:20
**unrelated** [1] - 19:2
**untenable** [1] - 20:1
**up** [5] - 12:7, 14:23, 15:7, 21:7, 21:15

## V

**vacate** [1] - 16:16
**vacating** [1] - 16:17
**veil** [2] - 13:10, 14:18

**veil-piercing** [2] - 13:10, 14:18
**Virginia** [1] - 6:3
**vis** [2] - 16:23
**vis-a-vis** [1] - 16:23
**voluminous** [1] - 9:13

## W

**walk** [1] - 10:18
**WALNUT** [1] - 1:17
**waste** [1] - 9:20
**week** [4] - 11:18, 11:21, 20:1, 21:13
**weeks** [1] - 19:21
**WEINBERG** [1] - 2:3
**whatsoever** [1] - 8:5
**WHEELER** [1] - 2:3
**WHEREUPON** [1] - 21:19
**whispered** [1] - 18:5
**whole** [2] - 13:23, 14:25
**willing** [2] - 6:10, 16:1
**win** [1] - 20:21
**wishes** [1] - 7:7
**WITH** [1] - 3:10
**witnesses** [7] - 15:15, 15:25, 18:13, 18:14, 18:16, 19:23, 20:2
**word** [3] - 6:14, 9:12, 10:7

## Y

**Year** [1] - 19:22
**year** [1] - 16:11
**yesterday** [2] - 10:8, 13:20
**YORK** [1] - 1:24