UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: 2047 SECTION: L |
| THIS DOCUMENT RELATES TO ALL CASES _____/ | JUDGE FALLON MAG. JUDGE WILKINSON |

## CERTAIN BANNER ENTITIES' RESPONSE TO PSC'S EMERGENCY MOTION FOR AN ORDER PREVENTING THE PAYMENT OR TRANSFER OF CERTAIN MONEYS OR, IN THE ALTERNATIVE, FOR COURT ORDERED MEDIATION AND TEMPORARY STAY OF ALL OUTSIDE SETTLEMENT ACTIVITIES

Defendants Banner Supply Company, Banner Supply Company Pompano, LLC, Banner Supply Company Fort Myers, LLC, and Banner Supply Company Tampa, LLC, (collectively "Banner"), file this Memorandum in Response to the PSC's Emergency Motion for an Order Preventing the Payment or Transfer of Certain Moneys or, in the Alternative, for Court Ordered Mediation and Temporary Stay of all Outside Settlement Activities.  Banner wholeheartedly supports the PSC's motion to compel all the parties to mediation, at least those with claims against Banner, but opposes the PSC's motion in all other respects.

**I.     Summary of the Argument**

The Plaintiffs' Steering Committee combines a number of requests in its Emergency Motion, most of which seek relief to which the PSC is not entitled and which the Court lacks authority to grant.  The one request on which the parties agree is the PSC's request that the Court order the parties to mediation within 30 days.  Banner does not oppose, and, in fact, supports the PSC's request for a global mediation of the claims against Banner relating to the sale and distribution of allegedly defective Chinese-manufactured drywall (the "CDW Claims").

Banner opposes the PSC's other requests, in particular its request for an unprecedented injunction prohibiting all settlement activity concerning Chinese drywall, including settlements between all Defendants and "co-parties, absent class members, or non-parties without giving sufficient notice to Plaintiffs or without Plaintiffs' involvement." This Court, or any court for that matter, does not have the authority to prohibit a defendant from settling a claim against another defendant or non-party, or to prevent a defendant from paying or transferring its funds to settle claims, especially when the PSC has made no showing that an exception to the Anti-Injunction Act applies or that the requisite factors justifying preliminary injunctive relief have been satisfied. The PSC does not cite a single analogous case where such extraordinary relief has been granted. Accordingly, as detailed below, the PSC's Motion should be denied in part and granted in part.

## II.   Factual Background

This Court is well aware of the factual underpinning of this litigation, and Banner will not rehash it here except to note that the PSC's renewed focus on prohibiting all settlement activity occurs while various entities are trying to settle pending claims. The Plaintiffs in this case have no greater right to those funds than any non-party with similar claims against the Defendants.

## III.   Argument and Citation of Authority

The PSC correctly notes that this Court can issue injunctions concerning the use of certain assets by defendants to prevent the judicial process from being rendered futile by a defendant's actions or refusal to act. That is not the situation here, however, where the judicial process is achieving its goal of resolving disputes and the parties are acting in good faith to attempt to settle and resolve the claims between them. The PSC's objection is only that the disputes being resolved are claims between Defendants or non-parties rather than the Plaintiffs'

2

claims against the Defendants. As detailed below, in this situation, the Court cannot enjoin those settlements. On the other hand, this Court has the authority to order the parties to mediation, per the PSC's motion, and should do so to ensure fair and equitable resolution of the CDW Claims on a global basis.

### A. Banner Joins the PSC's Motion for this Court to Order All Parties, At Least Those With Claims Against Banner, to Mediation in the Next 30 Days.

Banner joins the PSC motion for the Court to "order all parties to mediation within thirty (30) days . . ." PSC Brief, p. 24. Banner wholeheartedly agrees with the PSC that a mediation involving *everyone's* claims against Banner would create the best opportunity to end the "inevitable logjam that is occurring" and "perhaps even to permit the development of a comprehensive framework of a global resolution." *Id.* The PSC's proposal of a mediation in the immediate near future is the solitary vehicle that provides, at least in Banner's view, the realistic possibility of a *lasting* and omnibus resolution for Banner and all those with claims against it.

### B. The Court Does Not Have the Authority to Prohibit Settlement of Claims Between Other Parties in This Case.

While Banner supports the PSC's efforts to compel a global mediation of the Chinese drywall claims against Banner, Banner opposes the PSC's efforts to enjoin on-going and future settlement negotiations with other parties and to prevent Banner from using its resources to pay to resolve claims in such settlements. The PSC requests extraordinary relief from the Court—an injunction prohibiting settlement of claims between not only the Defendants and putative class members, but also between co-Defendants as well as the Defendants and non-parties. The PSC claims that the Court has the authority to enter such an order under its equity jurisdiction to prevent the dissipation of assets by the Defendants that would otherwise be available to satisfy the Plaintiffs' claims. The PSC has made no showing that there is a risk of dissipation or other

3

threats justifying the Court's exercise of its equitable powers to enjoin settlements or payments in furtherance of settlement.

Rather, the rights of private parties to settle amongst themselves is paramount, as recognized by the Fifth Circuit long ago:

> In what can be termed "ordinary litigation," that is, lawsuits brought by one private party against another private party that will not affect the rights of any other persons, *settlement of the dispute is solely in the hands of the parties. If the parties can agree to terms, they are free to settle the litigation at any time, and the court need not and should not get involved.*

*U.S. v. City of Miami*, 614 F.2d 1322, 1330 (5th Cir. 1980) (emphasis added).  Here, the Plaintiffs have no greater right to the Defendants' "assets" than do other Defendants or non-parties that have claims against the same Defendants.  Because those claims are nothing more than ordinary litigation between private parties, this Court cannot interfere with settlement of them—certainly not by enjoining any such settlements or "undoing" previously agreed-upon settlements as suggested by the PSC.

In *U.S. v. Altman*, 750 F.2d 684 (8th Cir. 1984), the Eighth Circuit held that the district court did not have the authority to enjoin settlement of a foreclosure action that was related to two other pending lawsuits.  *Altman* concerned a default on several mortgages on a condominium development in St. Louis.  After the default, the Department of Housing and Urban Development ("HUD") became the holder of the notes and agreed not to foreclose them in exchange for the owners' promise to make certain capital contributions and payments.  Several years later, after learning that the project funds had been used for improper purposes, the government filed suit on behalf of HUD to recover the improperly-expended funds.  *Id.* at 687.  That litigation dragged on for years, during which time the government sued the owners to foreclose on the defaulted mortgages, and the parties eventually agreed to settle the foreclosure

4

case, which at that time was one of three ongoing lawsuits concerning the project. *Id.* at 689. The district court endeavored to achieve a global settlement of all three cases and would not permit a piecemeal settlement, so entered an injunction prohibiting the consummation of the foreclosure settlement agreement unless certain conditions were satisfied relating to the other cases. *Id.* at 690. On appeal, the Eighth Circuit reversed the injunction and held that the district court did not have the authority to enjoin the settlement in the foreclosure action because under Rule 41(a)(1)(ii), the parties were free to settle and stipulate to the dismissal of the action without judicial involvement.[1] *Id.* at 696-97. The Eighth Circuit remanded the case with instructions to "permit the consummation of the settlement of the foreclosure litigation as contemplated by those parties." *Id.* at 697.

The PSC seeks extraordinary relief, but cites to no cases that support overriding the paramount interest in protecting the rights of private parties to settle amongst themselves. Rather, each case relied upon by the PSC is clearly distinguishable from this case and cannot be relied upon to justify the issuance of an injunction here.

The PSC relies on *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940), a case in which the Supreme Court held that an injunction preventing the disposition of ill-gotten profits obtained through fraudulent misrepresentations in the sale of securities was warranted. But the injunction was limited to the exact amount of the improper gains, and the "principal objects of the suit" were rescission of the securities and restitution of the consideration paid for them. *Id.* at 289-90. In addition:

> there were allegations that [the seller] was insolvent and its assets in danger of dissipation or depletion. This being so, the legal remedy against [the seller], without recourse to the fund in the hands of [a third party], would be inadequate. The injunction was framed narrowly to restrain only the transfer of $38,258.85,

---

[1] The court also noted that the other authority referenced by the district court in support of its injunction—the appointment of a receiver—was improper since no receiver had been appointed in the foreclosure action. *Id.*

>and the trial judge required petitioners to furnish security for any losses respondents might suffer.

Here, unlike *Deckert*, even if the Plaintiffs' equitable claims are legitimate, they are merely an afterthought in light of the primary purpose of the litigation, which is to obtain money to remedy the allegedly-defective drywall and the damage caused by it. More importantly, the Plaintiffs have not even attempted to prove the amount of disgorged funds they seek, as they are required to do, nor have they attempted to prove that the Defendants are insolvent or that the assets sought to be enjoined are on the verge of being exhausted—as was done in *Deckert*. Accordingly, *Deckert* does not support the relief sought by the PSC, and the other two cases primarily relied upon by the PSC are distinguishable.

The PSC also relies upon an unpublished decision, *Animale Group, Inc. v. Sunny's Perfume, Inc.*, 256 Fed. Appx. 707 (5th Cir. 2007), in which the Fifth Circuit affirmed a preliminary injunction restraining the defendants from transferring assets in a trademark infringement case. The sole issue in the case, however, was simply whether the court had the authority to issue "a prejudgment asset freeze under any circumstance." *Id.* at 707. Thus, the Fifth Circuit never addressed the merits of the injunction; instead, the court simply confirmed that the Supreme Court's decision in *Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), did not prohibit asset freezes in cases seeking equitable relief. *Id.* at 709. As such, *Animale Groupe* does not support the relief sought by the Plaintiffs.

Although the PSC relies on a Seventh Circuit case, *Iantosca v. Step Plan Services, Inc.*, 604 F.3d 24 (7th Cir. 2010), affirming an asset freeze , the circumstances in that case—involving a fraudulent conveyance, alter ego entities, corporate veil piercing, and other deceptive practices—are nothing like those present here. In *Iantosca*, the plaintiffs obtained a $20 million judgment against several defendants for breach of contractual and fiduciary duties in losing the

6

plaintiffs' escrowed funds in high-risk options trading. The state court ultimately pierced the corporate veil of the corporate defendants and added them to the judgment. *Id.* at 27. Another lawsuit was then initiated by entities related to the defendant companies in the first action against various parties, and the parties settled that case for $4.5 million. The plaintiffs in the first case—referred to as "creditors" by the Seventh Circuit—then sued two insurance companies attempting to satisfy the judgment that they had previously obtained and prevent the insurers from funding the settlement in the second case because the creditors believed that if the insurers funded the settlement in the second case, the settling plaintiffs would abscond with the money that was rightfully owed to the creditors since the settling plaintiffs were alter egos of the defendants from the first case. *Id.* at 28.

The district court agreed, and after determining that at least on of the settling plaintiffs was likely the alter ego of the first-case defendants, enjoined the insurance companies from distributing any funds because the court found that there was a substantial risk that the alter-ego companies would dissipate or conceal the assets obtained from the settlement in the second case. Notably, the court also required a $400,000 bond from the creditors. *Id.* Based on these unique facts, the Seventh Circuit affirmed the issuance of the injunction because "those funds may belong not to alter egos but to named defendants subject to the [original] judgment." *Id.* at 34. Unlike this case, the parties seeking injunctive relief in *Iantosca* were judgment creditors of the settling party, whereas here, the Plaintiffs have not recovered a judgment against most of the parties sought to be enjoined and have not even been certified as a class. Thus, *Iantosca* is anything but "analogous" to this case, as the PSC claims, and does not support a blanket injunction against all settlements.

In addition to the three cases primarily relied upon by the PSC discussed above, the PSC also alleges that a "superabundance of case law supports entering a provisional interim order preventing a defendant from using, transferring or disposing of assets in order to help satisfy a potential judgment in plaintiffs' flavor."  But none of the cases cited by the PSC involved an injunction prohibiting settlement of claims during litigation, and most involved evidence of fraud or some other underhanded conduct that warranted an injunction.  *See* PSC's Motion, pp. 9-10.  Thus, this alleged "superabundance" of case law is of no consequence.

Finally—and indicative of the overreaching nature of the PSC's request—the PSC asks the Court to set aside any settlements that have already been executed.  In support of that extreme request, the PSC cites *Doubleclick v. Paikin*, 402 F. Supp. 2d 1251, 1255 (D.C. Col. 2005), which the PSC claims authorized an injunction "undoing defendants' agreements in order to restore the status quo."  But that case did not "undo" any agreements; in fact, the court did just the opposite and enforced several provisions of a separation agreement.  *Id.* at 1261 (enjoining the defendants from "violating the non-competition, non-solicitation, and confidentiality provisions of the separation agreement between her and Plaintiff . . . .").  The other case cited by the PSC, *Cohen v. Brown Univ.*, 991 F.3d 888 (1st Cir. 1993), was a gender discrimination case involving the women's volleyball and gymnastic teams at Brown University in which the court ordered the school to return the teams to varsity classification rather than the club status to which they had been assigned.  Neither case stands for the proposition that a court can set aside a valid settlement agreement.

Consistent with long-standing Fifth Circuit case law, and the Eighth Circuit's decision in *Altman*, this Court does not have the authority to enjoin settlements between co-Defendants or Defendants and non-parties, nor does it have the authority to set aside prior settlements.  And it

8

certainly cannot do so without the introduction of some evidence in support of this extraordinary relief, which the Plaintiffs have not introduced. The Plaintiffs have not cited any authority to the contrary and, instead, have relied upon cases involving fraud and other deception on behalf of the defendants—none of which is at issue in this product liability case involving allegedly-defective drywall. As such, the Court should deny the PSC's Motion.

### C. The All Writs Act Does Not Authorize The Requested Relief.

The PSC argues that it has a right to injunctive relief under the All Writs Act, under the "in aid of jurisdiction" exception to the Anti-Injunction Act. The PSC has utterly failed to show that the "in aid of jurisdiction" exception justifies the extraordinary relief it seeks.

The All Writs Act empowers district courts to "issue all writs <u>necessary or appropriate</u> in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651 (emphasis added). The authority the All Writs Act imparts is limited by the Anti-Injunction Act. The Anti-Injunction Act directs that a court of the United States may not grant an injunction to stay proceedings in a state court except: (1) "as expressly authorized by Act of Congress;" (2) "where necessary in aid of its jurisdiction;" or (3) "to protect or effectuate its judgments." 28 U.S.C. § 2283. The Anti-Injunction Act has been interpreted consistently as an absolute bar to any federal court action that has the effect of staying a pending state court proceeding unless that action falls within one of the Act's three specifically designated exceptions. *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977); *Mitchum v. Foster*, 407 U.S. 225, 228-29 (1972); *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970).[2] Moreover, "[a]ny doubts as to the propriety of a federal injunction against

---

[2] Note that the Fifth Circuit has held that the Anti-Injunction Act does not prevent federal courts from enjoining the initiation of *future* state court actions. *Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 132 (5th Cir. 1990) (citing *Response of Carolina v. Leasco Response, Inc.*, 498 F.2d 314, 317 n.4 (5th Cir.), *cert. denied*, 419 U.S. 1050 (1974) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 484 n.2 (1965))).

9

state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line*, 398 U.S. at 297.

Ordinarily, a federal court may issue an injunction "in aid of its jurisdiction" in only two circumstances: (1) when the district court has exclusive jurisdiction over the action because it has been removed from state court; or (2) when the state court entertains an *in rem* action involving a *res* over which the district court has been exercising jurisdiction in an *in rem* action. *Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co. (In re Ford Motor Co.)*, 471 F.3d 1233, 1251 (11th Cir. 2006). This case does not fall into either category.

Some courts have held that MDL proceedings that have advanced so far as preliminary approval of a settlement are akin to *in rem* proceedings and thus courts have applied the "in aid of jurisdiction" exception to justify issuance of injunctions against extra-MDL actions. The PSC relies on this line of cases without giving any credence to the key distinction that makes injunctive relief inappropriate here. The courts in those cases were willing to issue injunctions against proceedings in other jurisdictions based on vexatious and bad faith behavior by litigants, which the courts determined evinced a clear threat to the MDL court's ability to manage the proceedings before it. *See, e.g., Three J Farms, Inc. v. Plaintiffs' Steering Comm. (In re Corrugated Container Antitrust Litig.)*, 659 F.2d 1332 (5th Cir. 1981), *cert. denied*, 456 U.S. 936 (1982) (holding that federal anti-suit injunction was appropriate when plaintiffs pursued a state court injunction barring defendants from entering into settlement which "would clearly interfere with the multidistrict court's ability to dispose of the broader action pending before it," manifesting "an intention to continue to take[] actions threatening this court's exercise of its proper jurisdiction and the effectuation of its judgments, by filing and threatening to file duplicative and harassing litigation in the courts of various states and by seeking therein orders

10

disrupting the proceedings" in the multidistrict litigation); *In re Inter-Op Hip Prosthesis Prod. Liab. Litig.,* 176 F. Supp. 2d 758, 763-64 (N.D. Ohio 2001) (holding that it was proper to enjoin commencement or continuance of all federal and state actions outside MDL when MDL had already conditionally certified a nationwide class and preliminarily approved a settlement). The PSC has not and cannot show that the parties who are attempting to negotiate settlements to resolve the CDW Claims are acting in bad faith or are actively seeking to divest the MDL court of its ability to resolve the claims before it. Rather, Banner and the parties with whom it has negotiated and continues to negotiate are parties to a multiplicity of actions file both pre- and post-MDL claims in numerous state and federal jurisdictions, and are making good faith efforts to fairly and equitably resolve the CDW Claims. These good-faith efforts to resolve such a complex web of claims cannot be construed as the vexatious and disruptive behavior warranting this Court's issuance of an injunction under the "in aid of jurisdiction" exception to the Anti-Injunction Act.

Though the PSC argues that, absent an injunction precluding the payment of settlements to other parties, it fears that defendants like Banner may not have sufficient assets against which Plaintiffs can enforce any judgments they obtain, such hyperbolic fears do not justify the requested injunction, and the PSC has not established a real threat justifying issuance of the requested injunction. As the Fifth Circuit has repeatedly recognized, "'[t]he fact that a party may be better able to effectuate its rights or duties if a writ is issued never has been [issued], and under the language of the statute cannot be, a sufficient basis for issuance of the writ.'" *ITT Community Dev. Corp. v. Barton*, 569 F.2d 1351, 1360 (5th Cir. 1978) (quoting *U.S. v. New York Telephone Co.*, 434 U.S. 159 (1977)); *Williams v. McKeithen*, 939 F.2d 1100, 1104-05 (5th Cir. 1991). Thus, in *Barton*, the Fifth Circuit reversed an order requiring the defendant to pay funds

11

into the registry of the court to secure the payment of a potential judgment. As the court explained:

> In the case before us, we think that at the time the turn-over order was entered, the district court was well equipped to develop the material issues and to bring them to a complete resolution whether or not the money was in the registry of the court. To be sure, with the money in the registry of the court, ITT would have been in a better position to enforce any judgment that it might have obtained against appellants, but . . . .

that did not justify relief under the All Writs Act. *Barton*, 569 F.2d 1359-60. The Fifth Circuit confirmed the effect of this holding in *In re Fredeman Litigation*, 843 F.2d 821, 825-26 (5th Cir. 1988), when it stated:

> The plaintiff in [*Barton*], like the plaintiffs here, argued that the All Writs Act and the district court's inherent powers authorized the turnover order. We held, however, that these sources of power would justify only an order essential to preserving the court's subject matter jurisdiction or processing the litigation to complete resolution, and not an order designed simply to aid the plaintiff in enforcing any judgment he might obtain.

In light of this authority, the Court cannot enjoin settlement or sequester insurance funds to secure a potential judgment for the Plaintiffs under the All Writs Act. Therefore, the Court should deny the PSC's Motion.

### D. The Plaintiffs Have Not Even Attempted to Satisfy the Factors Required Before the Court Could Issue a Preliminary Injunction.

Despite the PSC's equivocation ("To the extent what Plaintiffs seek is injunctive relief"), the Plaintiffs are undoubtedly seeking injunctive relief and, as such, have the burden to prove the required elements before they are entitled to a preliminary injunction.[3] Such a showing is required even if an exception to the anti-injunction act applied here. The PSC has utterly failed to meet its burden.

---

[3] Indeed, the PSC's proposed order, which is attached to its Motion, would have the Court "enjoin" Defendants and Insurer Defendants from all settlement-related activity.

12

The party seeking a preliminary injunction must introduce evidence that shows: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006); *see Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008). The PSC has not even attempted to satisfy these factors—save for a single section of its brief addressing the alleged likelihood of success based on two essentially-uncontested trials. (PSC's Motion, pp. 12-15). As such, the PSC has not met its burden of proof and, therefore, is not entitled to injunctive relief.

### 1. No Substantial Likelihood of Success

The PSC claims that it has demonstrated a likelihood of success on the merits based on the *Germano* and *Hernandez* trials. Although the Court made factual findings in both cases, neither was fully contested by the Defendants. *Germano* was unopposed, and in *Hernandez*, Knauf Plasterboard Taishan stipulated that the Chinese drywall in the Hernandez home was defective and not fit for its intended use *only* for purposes of trial. The parties also agreed that remediation was necessary and even agreed on various aspects of remediation. The only dispute was over the scope of the remediation. Thus, this evidence is insufficient to demonstrate a substantial likelihood of success on the merits of a fully-contested trial, and because this is the only evidence offered in support of that element of the preliminary-injunction test, the PSC has not met its burden.

### 2. No Substantial Threat of Irreparable Injury Without Injunction

The PSC makes no attempt to show that the Plaintiffs face a substantial threat of irreparable injury if the injunction is not issued—asserting only that the PSC is "concerned by the progressive dissipation of assets that otherwise would be available to satisfy Plaintiffs' claims." (PSC's Motion, p. 2). The PSC submits no evidence of this supposed "dissipation of assets," the amount of the alleged dissipation, or how settlements between defendants is somehow impacting the Plaintiffs' claims other than unsupported argument in their Motion. Accordingly, the PSC has not shown that the Plaintiffs face a "substantial threat of irreparable injury" if the proposed injunction is not entered.

Moreover, even if the PSC had attempted to show irreparable injury, it could not do so because the PSC is seeking only monetary relief—whether the result of a claim for restitution, disgorgement, or negligence—and if monetary relief will suffice, then the injury is not irreparable. *See, e.g., Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.").

### 3. Threatened Injury Does not Outweigh the Harm of the Injunction.

The PSC confidently asserts—without any supporting authority—that the proposed injunction "can hardly be called 'burdensome' on any Defendant under any circumstance." This is simply untrue given the extraordinary breadth of the proposed injunction, which would prohibit the settlement of claims between Defendants and between Defendants and non-parties. (PSC's Proposed Order). To claim that preventing two private parties from settling claims against each other is somehow not burdensome is absurd, and it is difficult to imagine a more-burdensome order. The lone case cited in support of this proposition, *In re Delorean Motor Co.*,

755 F.2d 1223, 1227 (6th Cir. 1985), does not apply since it expressly noted that, unlike this case, "[t]he preliminary injunction in the present case is similarly not for the purpose of securing satisfaction of the judgment ultimately to be entered in the action." Here, the only purpose of the injunction sought by the PSC is to preserve a fund from which the Plaintiffs may satisfy potential judgments or, more particularly, so the PSC can collect its attorneys' fees. The PSC has not shown that the threatened injury absent an injunction outweighs the significant harm of the injunction, namely, the prevention of settlement between private parties.

### 4. The Injunction Will Disserve the Public Interest.

The PSC never mentions the final element that it must establish to obtain a preliminary injunction: that the injunction will not disserve the public interest. *Speaks*, 445 F.3d at 399-400. This is not surprising, since prohibiting settlements among private parties is contrary to public policy, so the PSC's proposed injunction would undoubtedly disserve the public interest. *See Bass v. Phoenix Seadril/78, Ltd.*, 749 F.2d 1154, 1164 (5th Cir. 1985) ("[P]ublic policy favors voluntary settlements which obviate the need for expensive and time-consuming litigation."). Consequently, the PSC has failed to satisfy the fourth factor required before the Court can issue a preliminary injunction.

### E. Even if the Court Could Enter the Requested Injunction, the Plaintiffs Have Not Proven the Amount of Funds Sought in their Disgorgement Claim.

Even if this Court had the authority to freeze all of the Defendants' assets as urged by the PSC, such a freeze could not exceed the amount sought to be disgorged, which the PSC has not even attempted to prove. *Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987) ("To the extent the injunction can be read to apply to assets beyond those subject to equitable remedies, modification will be required."); *see SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005). Instead, the PSC seeks a blanket order enjoining each Direct

15

Defendant from "seeking, requesting or petitioning for payments of funds or moneys under any policy coverage a Claim made by a Named Plaintiff on behalf of itself or on behalf of one or more absent class members, whether issued by a named Insurer Defendant or by an unnamed insurer or guarantor, until resolution of all claims in the Lawsuit . . . ." (PSC's Proposed Order). As detailed above, such an order is beyond the authority of this Court, and even if it were not, any such injunction must be limited to the specific funds sought to be disgorged, which the PSC has not proven though the introduction of admissible evidence. Accordingly, the Court should deny this portion of the PSC's Emergency Motion.

### IV. Conclusion

The Court should deny the PSC's Emergency Motion in part because it seeks relief that the Court does not have authority to award. Even if the Court could order the requested relief, the PSC has not satisfied the burden of proof to obtain a preliminary injunction and, accordingly, the Court should deny that portion of the PSC's Motion. On the other hand, per the PSC's motion, the Court should order the parties to mediation.

Respectfully submitted, this 9TH day of February, 2011.

> **WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**
>
> */s/ Nicholas P. Panayotopoulos*
> **NICHOLAS P. PANAYOTOPOULOS, ESQUIRE**
> Georgia Bar Number: 560679
> 3344 Peachtree Road, Suite 2400
> Atlanta, GA 30326
> Telephone (404)876-2700
> npanayo@wwhgd.com
> *Counsel for Banner Supply Company, Banner Supply Company Pompano, LLC, Banner Supply Company Fort Myers, LLC, and Banner Supply Company Tampa, LLC*

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing CERTAIN BANNER ENTITIES' RESPONSE TO PSC'S EMERGENCY MOTION FOR AN ORDER PREVENTING THE PAYMENT OR TRANSFER OF CERTAIN MONEYS OR, IN THE ALTERNATIVE, FOR COURT ORDERED MEDIATION AND TEMPORARY STAY OF ALL OUTSIDE SETTLEMENT ACTIVITIES has been served on Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was previously electronically filed with the Clerk of Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF System, in accordance with the procedures established in MDL 2047, on this 9th day of February, 2011.

        WEINBERG, WHEELER, HUDGINS,
        GUNN & DIAL, LLC

        */s/ Nicholas P. Panayotopoulos* _____
        **NICHOLAS P. PANAYOTOPOULOS, ESQUIRE**

1015944