UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) | CASE NO. 2:09-MD-02047<br><br>SECTION L<br><br>JUDGE FALLON<br><br>MAG. JUDGE WILKINSON |
| (Relates to All Cases) | | |

**INSURER STEERING COMMITTEE'S OPPOSITION TO THE PLAINTIFFS STEERING COMMITTEE'S MOTION FOR AN ACCOUNTING AND OTHER RELIEF AND EMERGENCY MOTION FOR AN ORDER PREVENTING THE PAYMENTS OR TRANSFER OF CERTAIN MONEYS OR, IN THE ALTERNATIVE, FOR COURT ORDERED MEDIATION AND <u>TEMPORARY STAY OF ALL OUTSIDE SETTLEMENT ACTIVITIES</u>**

<u>INTRODUCTION</u>

The Insurer Steering Committee hereby opposes the PSC's motion for an accounting and other relief ("Motion for Accounting") (Rec. Doc. No. 6669), and emergency motion for an order preventing the payments or transfer of certain moneys or, in the alternative, for court ordered mediation and temporary stay of all outside settlement activities ("Emergency Motion to Freeze Assets and Enjoin Settlements") (Rec. Doc. No. 6947) (collectively "Motions for Injunctive Relief"). This is the PSC's third attempt to have this Court interfere in settlement discussions involving cases outside the MDL. As shown below, the Court again should decline the PSC's invitation. As a threshold matter, the Motions for Injunctive Relief are premature given that they are directed at defendants (such as insurers named in *Amato*) that have not even been afforded an opportunity to present threshold Rule 12 defenses, including for lack of subject matter or personal jurisdiction, or improper venue. *See Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*¸ 762 F.2d 464, 470-72 (5th Cir. 1985) (holding the district court abused

1

its discretion in entering preliminary injunction order without first "determining whether it had jurisdiction over the party enjoined"). Further, resolution of those Rule 12 defenses will likely have a significant impact on the scope of claims and the parties involved in this litigation and, indeed, might well terminate certain insurers' involvement in this litigation. It would be highly prejudicial for this Court to grant the PSC the far-reaching injunctive relief it seeks before these threshold defenses are resolved.

Accordingly, the Insurance Steering Committee respectfully submits that the PSC's Motions for Injunctive Relief should not be considered until after *all* threshold Rule 12 Motions are resolved. While the Court has broad discretion to manage its docket, forcing defendants who have meritorious threshold defenses, such as lack of subject matter or personal jurisdiction, to be subject to the injunctive relief purportedly sought in these motions would not be an appropriate exercise of that discretion. This is especially so given that any injunctive relief entered would be subject to immediate appeal, and would simply serve to delay these proceedings further by triggering collateral appellate proceedings. 28 U.S.C. § 1292(a)(1).

Moreover, the PSC has completely failed to satisfy the prerequisites for any preliminary injunctive relief, much less the extraordinary (and unprecedented) relief sought. This alone dooms the PSC's Motions for Injunctive Relief. Given that all the PSC seeks is monetary relief (primarily its own attorneys' fees), there is no irreparable harm as a matter of law, as this Court has recognized. *In re Vioxx Prods. Liab. Litig.*, MDL 1657, 2008 U.S. Dist. LEXIS 60269, at *55-56 (E.D. La. Aug. 7, 2008) (holding that "[m]ere injuries, however substantial, in terms of money . . . are not enough" to establish irreparable harm) (quoting *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975)).

Further, the relief sought is unfair, unnecessary, and unworkable because it turns the insurers into collection agents for the plaintiffs' counsels' fund,[1] and no reason exists for casting aside the bargained-for confidentiality protections contained in settlement agreements. The Motion also is overbroad as it seeks to assess settlements on separate state and federal suits outside the MDL. And, the PSC's proposed order, if granted, would bring a halt to the orderly administration of the subject policies. The order, if granted, would in effect bring all competing claims and claimants, both those involving Chinese drywall and those that have no association with Chinese drywall, involving any of the subject policies to this Court for resolution. Alternatively, the PSC proposed order would require the insurers to seek protective orders with respect to any request for payment from the policies in every jurisdiction throughout the United States and subject the insurers to the likelihood of conflicting court orders.

## PROCEDURAL HISTORY AND BACKGROUND

On August 20, 2009, this Court indicated it was its intention "to stay all motions." (Rec. Doc. No. 169.) The Stay Order was given effect by Pretrial Order 1, and its various iterations. Under Pretrial Order 1G, entered on May 27, 2010, a stay of all motion practice was reinstituted, and this Court held all cases in the MDL "in abeyance until such time as the suspension described in this Order is terminated." (*See* Pretrial Order 1G at 1-2.)

On March 19, 2010, the PSC filed a putative class action complaint entitled *Amato v. Liberty Mutual Ins. Co.*, Case No. 10-932, which is sometimes referred to as the "Omnibus V" Action. The clerk's office subsequently consolidated that action into this MDL case number. The PSC filed an Amended Complaint in *Amato* on May 11, 2010. (Rec. Doc. No. 3132.) The

---

[1] Although the Insurance Steering Committee does not take a position in this opposition on the propriety of such a fund, the insurers should not be responsible for administering such a fund if it is ever created.

3

Amended Complaint asserts claims against dozens of Defendants, some of which are alleged to be a distributor, supplier, importer, exporter, or manufacturer of Chinese Drywall, or a builder or developer that allegedly used defective Chinese Drywall, as well as *98 different insurers* who are alleged to be insurers of the other defendants. No attempts at service of the Complaint (or the Amended Complaint) were attempted until on or about July 19, 2010 (more than 120 days after the Complaint was filed), when many of the insurers were served through the Louisiana Secretary of State's office. Thus, at the time *Amato* was served, the cases already were all being held in abeyance under Pretrial Order 1G.

On July 26, 2010, the PSC filed a Motion to Establish a Litigation Expense Fund ("Motion for Expense Fund"). (Rec. Doc. No. 4603.) Although no motion to lift stay was filed, on August 4, 2010, this Court entered an order setting that Motion for Expense Fund for hearing on August 12, 2010, and required responses to be filed by August 6, 2010, two days after the date of the order. (Rec. Doc. No. 4814.) In response to several requests to extend this briefing schedule, the Court extended the response date by a few days to August 10, 2010. (Rec. Doc. No. 4923.) Even under this extremely expedited briefing schedule, numerous oppositions were filed to the Motion for Expense Fund. (*See, e.g.,* Rec. Doc. Nos. 4958, 5021, 5038, 5040, 5042, 5045, 5055, 5064, and 5068.) The day before the hearing on the Motion for Expense Fund, the PSC filed a Motion for Leave to file a Reply Brief, clearly demonstrating that the PSC continued to seek a ruling on its Motion. (Rec. Doc. No. 5083.) However, the next day this Court announced that the PSC had reversed course and wanted to "pass" the Motion for Expense Fund. (Rec. Doc. No. 5207.)

**ARGUMENT**

I. **The Motions for Injunctive Relief Are Premature Because Threshold Rule 12 Motions Have Not Been Filed Or Heard.**

The Motions for Injunctive Relief seek a series of broad affirmative injunctions that are geared solely toward the PSC attorneys' ultimate goal of recovering their personal attorneys' fees and costs. But the request is premature.

These proceedings have been held in abeyance since before the Omnibus V *Amato* action was even filed. Accordingly, the insurers have not had an opportunity to present threshold defenses, including lack of subject matter and personal jurisdiction, or improper venue which likely (if not certainly) will be successful in at least some instances. (*See* Rec. Doc. No. 6330 (granting motions to dismiss for lack of personal jurisdiction as to some insurers, denying similar motions as to others).) Simply put, it would be completely inequitable and prejudicial to impose the injunctive relief set forth above onto parties over which this Court lacks jurisdiction in the first place, and would also be inconsistent with controlling Fifth Circuit precedent. *Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana¸* 762 F.2d 464, 470 (5th Cir. 1985) ("The district court has no power to grant an interlocutory or final injunction against a party over whom it has not acquired valid jurisdiction, and an order granting an interlocutory injunction in these circumstances is erroneous as a matter of law," "[w]here a challenge to jurisdiction is interposed on an application for a preliminary injunction the plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.") (internal quotations omitted). Here, Plaintiffs have not made such a heightened showing and, indeed, for many of the defendants, cannot.

**II.     The PSC's Motions For Injunctive Relief Are Fatally Flawed.**

    **A.     The PSC does not, and cannot, meet the standards for preliminary injunctive relief as to the Insurance Steering Committee.**

As a threshold matter, the PSC cannot meet the rigid standards necessary to obtain *any* preliminary injunctive relief, much less the extraordinary (and unprecedented) relief it is seeking. *Winter v. NRDC, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374-75 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 129 S. Ct. at 376-77 (citations omitted).

    **1.     The PSC has not demonstrated any possibility of success on the merits against the Insurers, much less a "substantial likelihood of success."**

The PSC's Motions for Injunctive Relief fail to even mention any ruling or claim against any insurer and that alone establishes that the PSC has failed to meet its heavy burden. *See generally In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, at **49-50 (denying motion to enjoin distribution of funds, holding the plaintiffs had failed to demonstrate a likelihood of success on the merits for myriad reasons including because "the AvMed Plaintiffs seek to enjoin distribution of settlement funds to approximately 35,000 plaintiffs against whom they have no claim whatsoever, let alone a substantial likelihood of success on the merits.").

Indeed, the plaintiffs are so far from being able to demonstrate a substantial likelihood of success on the merits, that they cannot even demonstrate a substantial likelihood that this Court can properly exercise jurisdiction. As this Court's previous rulings demonstrate, there is good reason to believe that the Court lacks personal jurisdiction over some of the *Amato* insurers who have not yet been required to plead.

6

Further, even where personal jurisdiction exists, this Court may have no connection with the subject matter of litigation, such that venue in this Court is not proper. This lack of jurisdiction cuts to the heart of any attempt to establish a likelihood of success on the merits. In *Amato*, the plaintiffs are attempting to bring direct claims against the insurers of the installers, developers and other defendants against whom they are otherwise proceeding. Such direct claims are not permitted under the laws of many jurisdictions where the claims would be properly venued. Furthermore, many of the claims in *Amato* seek to duplicate litigation that is pending in other jurisdictions and which the Joint Panel on Multidistrict Litigation has affirmatively refused to transfer to the MDL.

In these circumstances, even if the PSC had attempted to establish a likelihood of success, it could not have done so.

### 2.    Nor can the PSC establish irreparable harm when all it is seeking is monetary damages.

To obtain *any* preliminary injunctive relief, the movant must also establish that it is "likely" to suffer irreparable harm. *Winter*, 129 S. Ct. at 375 76 (collecting cases). Here, the PSC is merely seeking monetary relief, which establishes there is no likelihood it will suffer irreparable harm as a matter of law. *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, at *55-56 (holding that "[m]ere injuries, however substantial, in terms of money . . . are not enough" to establish irreparable harm) (quoting *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975)); *see also Enter. Int'l Inc.,* 762 F.2d at 472 (holding that it is well settled that an "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies"); *Metal Mgmt. Miss. v. Barbour*, No. 3:08-CV-00431, 2008 U.S. Dist. LEXIS 107165, at *38 (S.D. Miss. Aug. 13, 2008) ("Injuries adequately remedied by monetary damages are not irreparable.") (citation omitted); *Johnson Controls, Inc. v. Guidry*, No. 6:10-0080, 2010 U.S. Dist. LEXIS 69083, at *15

(W.D. La. July 12, 2010) (same, further stating that a party must show that monetary damages are inadequate to meet the irreparable harm requirement).

### 3. Balance of equities weighs heavily against granting the injunction.

In particular, the PSC's request for injunctive relief is overbroad as it would encompass many federal and state court cases that are separate from the MDL, including declaratory judgment actions between insurers and their policyholders which the Judicial Panel has refused to transfer to the MDL. It would affect every single claim that an insured has submitted to the insurer for coverage under the subject policies, both those involving Chinese drywall and those having nothing to do with Chinese drywall. The proposed order would prevent any payment by the insurers under the subject policies to anyone on any claim anywhere in the United States without the PSC having shown an entitlement to said payments. Such a broad sweeping order would place the insurers in the position of seeking the appropriate relief in courts throughout the United States when a request for payment under the subject policies was made or when required to do so by state statute. In effect, this order will cause a multitude of litigation throughout the Country or result in all the competing claims being brought into this Court for resolution. The PSC seeks such a broad order, affecting not only the insurers but all those who have an interest in the policies without giving notice of the motions to the affected non-parties. Such separate suits and separate settlements reached therein should not be subject to assessments for work in the MDL, absent some agreement between the settling parties in those proceedings and the PSC. Meanwhile, imposing the injunctive relief the PSC requests, which would shut down all settlements, especially those involved in separate federal and state court suits outside the MDL, is unreasonable. Such interference with the docket management of other Courts is also unwarranted and unreasonable.

Moreover, the PSC's request that this Court order all parties to provide an accounting of any settlement with respect to a Chinese drywall claim, including the amount of the payment, would require disclosure of *confidential* settlement agreements. The Court should reject this effort to intrude on the settlement process and invade settling parties' rights. Courts routinely enforce confidentiality provisions in settlement agreements, in order to uphold private contracts and to facilitate settlement and avoid protracted litigation. *See, e.g., Butta-Brinkman v. FCA Int'l, Ltd.*, 164 F.R.D. 475 (N.D. Ill. 1995) (denying motion to compel production of confidential settlement agreements); *Christensen Shipyards, Ltd. v. St. Paul Fie & Marine Ins. Co.*, No. C06-0641-JCC, 2007 WL 564241 at *1 (W.D. Wash. Feb. 16, 2007) (deferring to the parties' "interest in having their confidential agreements enforced, and the Court's policy of promoting the resolution of disputes").[2]

Consonant with these principles, this Court's order creating a litigation expense fund in the *Turner* case, explicitly protected the confidentiality of settlement information. The order provided:

> Details of any individual settlement agreement, individual settlement amount, and individual amounts deposited into escrow shall be confidential and shall not be disclosed to the Plaintiffs' Steering Committee, the Court, or the Court's designee.

*See Turner v. Murphy Oil USA, Inc.*, 422 F.Supp.2d 676, 685 (E.D. La. 2006) (Fallon, J.). The order also provided that necessary settlement information could be provided to the court *in camera* and under seal. *Id.* The PSC does not attempt in its present motion and memorandum to explain why a similar provision should not be included in the order in this case. Where the

---

[2] Settlements in this case do not require court approval because no class has been certified, and therefore the public right of access to judicial records is not implicated. *See, e.g., Eckert v. Equitable Life Assurance Society of the U.S.*, 227 F.R.D. 60, 62 (E.D.N.Y. 2005) (concluding that Rule 23(e) does not require court approval of settlement or dismissal before a class is certified).

610615_2

Plaintiffs' Liaison Counsel do not represent plaintiffs that are parties to confidential settlement agreements, they have no right to the settlement agreements, and the confidentiality of such settlement agreements should be enforced.

Even if the Court were inclined to allow Plaintiffs' Liaison Counsel access to confidential settlement agreements, the burden should not be on the insurers to gather and provide those agreements, for many of the reasons that the insurers should not be required to collect and pay over the assessments to the fund. To the extent that the insurers have relatively restricted involvement in the underlying settlement process here, they will not have access to the settlement agreements. The settling plaintiffs themselves would be a more logical source, if the settlement agreements are to be produced to the Plaintiffs' Liaison Counsel.

For all these reasons, the extraordinary injunctive relief the PSC seeks, which would shut down settlements of cases outside the reach of this MDL and require disclosure of confidential settlement agreements, is entirely inequitable and should not be granted.

### 4. The public interest would not be served by the injunction.

Nor would the public interest be served by the injunction. As the PSC itself recognizes, the relief sought would preclude, for example, homebuilders from entering into agreements with their customers to remediate their homes to remove the Chinese drywall -- the very relief the homeowners have been seeking for years. Such a result is contrary to the public interest. *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1164 (5th Cir. 1985) ("[P]ublic policy favors voluntary settlements which obviate the need for expensive and time-consuming litigation"); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) ("Settlement agreements are 'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits'"). This Court previously recognized the parties' right to engage in continuing settlement negotiations and set certain guidelines for those

communications, as well as parameters for the PSC to challenge any settlements it disputed: "[t]he Court expects the parties to advise property owners that they have the right to consult with counsel. Henceforth, property owners should be advised of the multi-district litigation and website address. On a case-by-case basis, the plaintiffs retain the right to challenge the release." Minute Entry dated 9/24/09 (Dkt. No. 278). If the PSC believes certain defendants have violated this order, it may challenge the release on a case by case basis but it is not entitled to use allegations of misconduct by some to unilaterally shut down all negotiations nationwide and insist on its inclusion in every settlement communication under the guise of serving the public interest.

To the contrary, the broad sweeping and unprecedented relief sought by the PSC is contrary to the public interest because, as mentioned above, it unnecessarily interferes with settlements across the country, including those that are outside the scope of this MDL proceeding, including the non-transferred state court suits that do not involve foreign defendants, as detailed by certain plaintiffs' opposition to the PSC motion. *See* Rec. Doc. No. 7035.  In addition, for those homeowners whose claims do not involve foreign manufacturers or whose

11

settlements do not involve an assignment, there is no justification whatsoever for the extraordinary injunctive relief the PSC seeks.[3]

### 5. Rule 65(c) requires the posting of a substantial bond if the extraordinary relief requested were granted.

Rule 65 of the Federal Rules of Civil Procedure *requires* the posting of security in an amount that "the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010) ("Although the amount of the bond is left to the discretion of the court . . . the instances in which a bond may not be required are so rare that the requirement is almost mandatory.") (quotation omitted); *Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 131 (5th Cir. 1990) ("Because of the importance of the bond requirement, failure to require the posting of a bond or other security constitutes grounds for reversal of an injunction.").  Despite this mandate, the PSC's Motions for Injunctive Relief failed to even address this issue.

---

[3] The relief requested in PSC's motion is also inconsistent with prior rulings by the Judicial Panel on Multidistrict Litigation denying PSC's motions to transfer liability insurance coverage actions to the MDL.  For example, as PSC points out in its motion, Hanover Insurance Company ("Hanover") and Dragas Management Corporation ("Dragas") are currently engaged in litigation in the Eastern District of Virginia, in which Dragas seeks to recover under Hanover policies issued to Porter-Blaine Corporation a $4.9 million arbitration award Dragas obtained against Porter-Blaine.  What PSC neglects to mention, however, is that the JPMDL previously denied PSC's motion to transfer to the MDL parallel litigation involving Hanover and Dragas, *Builders Mutual Ins. Co. v. Dragas Management, et al.*, No. 2:09-cv-185 (E.D.Va.).  See Order Denying Transfer (attached as Exhibit __).  The JPMDL's decision to deny PSC's motion to transfer reflects JPMDL's considered judgment that this liability coverage action does not belong in the MDL.  Granting PSC's motion would undermine -- if not constructively overrule -- the JPMDL's decision, by effectively precluding the continued prosecution, defense and/or resolution of that litigation.  Put another way, granting PSC's motion would effectively turn control over the Hanover/Dragas litigation to this Court, even though the JPMDL has already decided that the case should be litigated where it was filed, in the Eastern District of Virginia.  The Court should decline PSC's invitation to "second guess" and effectively ignore or undermine prior decisions of the JPMDL, and should deny PSC's motion.

610615_2

One of the cases cited and relied upon heavily by the PSC demonstrates how substantial the bond would be in this case. *Iantosca v. Step Plan Servs.*, 604 F.3d 24 (1st Cir. 2010). In that case, *after* obtaining a judgment against a company and certain corporate officials, the plaintiffs filed a "reach-and-apply" action to attach certain insurance proceeds. In enjoining approximately $4.5 million in funds, the district court required a bond of approximately 10% of that amount, $400,000, to be posted. *Id.* at 28. Here, even applying this minimal 10% figure, the amount of a bond here would be staggering. There are over 60 Insured Defendants at issue here, each with its own coverage scheme, many of which go well into the tens of millions of dollars. (ECF No. 3132-3 at 24-61.) Thus, the total insurance coverage sought to be enjoined is likely extremely high, meaning that under the 10% formula from *Iantosca,* the appropriate bond could easily be in the millions of dollars. Furthermore, when the specific and limited relief at issue in *Iantosca* is compared to the broad and extraordinary relief sought by the PSC here, the amount of any bond should be significantly more than merely 10% of the amount sought to be enjoined.

### 6. The proposed orders are vague and indefinite and would fail to provide adequate notice of the prohibited conduct.

Rule 65 also expressly provides that any order granting a preliminary injunction "shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained …." FED. R. CIV. P. 65(d). The purpose for this requirement is based on notions of basic fairness, and to ensure that the parties enjoined receive explicit notice of the precise conduct that is being prohibited. As the Fifth Circuit has stated:

> The clear purpose of this language is avoidance of injunctions which do not set out fairly for the benefit of the enjoined party what conduct is forbidden. An injunction is overly broad which leaves parties open to the hazard of conducting business in the mistaken belief that it is not prohibited by the injunction and later finding themselves subject to punishment for contempt. It is, of course well accepted that an injunction

13

>must be worded in such specific terms and with such detail as to put the party enjoined on notice of precisely what he is called upon to do or refrain from doing.

*Sheila's Shine Products, Inc. v. Sheila Shine, Inc.* 486 F.2d 114, 129 (5th Cir. 1973) (quotation omitted); *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (same principle); *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004) (same).

Here, none of the proposed orders come close to meeting these strict standards and, indeed, given the nature of the relief requested it is difficult to envision any possible order that could comply with these mandates. For example, the proposed order to the Motion for Accounting repeatedly references the pleadings, and contains vague and broad language that fails to make clear what parties are required to take any action much less what it is those parties are required to do or not do. (ECF No. 6669-11.) The proposed orders to the Emergency Motion to Freeze Assets and Enjoin Settlements fare even worse. (ECF Nos. 6947-4 and 6947-5.) These orders largely rely on the pleadings to define various terms (*see, e.g.,* ECF No. 6947-4 at 2); they broadly enjoin, for example, the "Insurance Steering Committee" from "paying, tendering, conveying, or otherwise alienating, or agreeing to do same, any funds or moneys to any *absent class member* under a policy that covers Claims made against either a Direct Defendant or presently *unnamed third party* by one or more Named Plaintiffs on behalf of itself or absent class members." (*Id.* at 1 (emphases added).) So, in other words, insurers are prohibiting from paying, or even agreeing to pay, any money to "absent class members" and "unnamed third parties" whoever they might be and whatever the nature of the claims might be (*i.e.,* they need not even relate to Chinese drywall under the proposed order). Such an order clearly fails to

comply with Rule 65(d)'s mandates.[3]  Moreover, on its face, this order would seemingly preclude an insurer from making payments for defense costs under policies that might impose a defense obligation.  To protect against violating such an order, the only rational course would be to completely stop making *any* payments, which would completely undermine the operations of the insurers (and could violate court rulings and/or agreements mandating such payments.

### B.   The Asset-Freeze Injunction Sought By The PSC Is Also Barred By Binding Law.

The PSC also seeks the extraordinary remedy of a prejudgment asset freeze.  (Memo in Support of Emergency Motion to Freeze Assets and Enjoin Settlements at 6-10.)  That request, however, is barred by controlling precedent for several reasons.

First, as the PSC's own brief recognizes, the United States Supreme Court has expressly held that such relief is barred in claims arising "at law."  (Mem. at 6-10 (citing, *e.g., Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) (holding that such injunctions are improper in actions at law).)  Here, although the PSC attempts to distinguish *Grupo* by arguing that this is a case in equity, the only claims that can be asserted against the Insurance Steering Committee are purely claims at law based on the insurance policies at issue seeking "money damages." *Grupo Mexicano*, 527 U.S. at 339-40 ("Because such a remedy was historically unavailable from a court of equity, we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages").  The PSC notes that it has attempted to plead numerous other causes of action against other defendants, (Memo. at 10-11

---

[3] The proposed orders are also vague, overbroad, and flawed because (1) there is no way to determine which claims are implicated by the policies until there has been an adjudication on the policies; (2) there are no *specific* acts or *specific* funds restrained, and therefore it is impossible to know what conduct is being enjoined; (3) the temporal scope injunction is open ended and indefinite.

(citing ECF No. 3132, *Amato* Am. Compl.)), but none of those causes of actions can properly be asserted against the insurers.  Indeed, resolving this issue would of course first require this Court to address Rule 12 issues, such as whether there is any basis in law or fact for asserting direct action claims against insurers relating to insurance policies and claims that have no connection to Louisiana -- which there is not.  *See Bolls v. Middendorf's, Inc.*, 729 F. Supp. 1583, 1584 (S.D. Miss. 1990) (dismissing action and imposing Rule 11 sanctions against plaintiff's attorney for improperly seeking to join liability insurer in action that was outside the scope of Louisiana's direct action statute).  Thus, this simply bolsters the conclusion that any request for injunctive relief should not be considered until after Rule 12 motions are resolved.

Second, as the Fifth Circuit has made clear, even when equitable claims are at issue (which they are not as to the Insurance Steering Committee): "The general federal rule of equity is that a court may *not* reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy potential money judgment."  *In re Fredeman Litigation*, 843 F.2d 821, 827 (5th Cir. 1988) (stating that assets may not be encumbered by a preliminary injunction in anticipation of a judgment unless "the assets frozen [are] in some way the subject of the litigation").  Yet, that is precisely what the PSC seeks to do here -- attach assets that, although might be used to satisfy a final judgment, are not the "subject of the dispute."  *Id.* Simply put, this is not a case where money was allegedly wrongfully appropriated as a result of some fraud or ponzi scheme, where a prejudgment asset freeze over the alleged tortfeasor's accounts might be authorized such as at issue in the cases upon which the PSC relies.  Here, the only potential claims against the insurers are typical coverage action claims as to whether or not coverage exists.  Thus, there is simply no basis to seek an equitable prejudgment freeze in such circumstances, particularly when this Court has yet to even consider whether plaintiffs' claims of

16

insurance coverage can survive 12(b)(6) motions similar to those filed by the insurers with respect to coverage under their homeowners policies.

Finally, even a cursory review of the cases cited in the PSC's motion demonstrates that in those cases, unlike here, the funds enjoined were the subject of the litigation just as in *Fredeman*. *Deckert*, for example, involved an alleged fraudulent sale of securities involving a trust, and certain investors sought the appointment of a receiver and an injunction restraining the company administering the trust from transferring any assets of the trust. *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 290 (1940) (emphasizing that "[t]he injunction was framed narrowly to restrain only the transfer of $38,258.85, and the trial judge required petitioners to furnish security for any losses respondents might suffer"). Similarly, in *Animale* the defendants were allegedly passing off counterfeit perfume under the plaintiff's trademarked name, and the plaintiffs therefore sought to enjoin the defendants from transferring approximately $600,000 in real property and cash that was specifically tied to the alleged wrongful conduct. *Animale Group Inc. v. Sunny's Perfume Inc.,* 256 Fed. App'x 707, 708-09 (5th Cir. Dec. 5, 2007) (allowing the injunction "to prevent Defendants from dissipating their assets" and becoming judgment proof). Finally, in *Iantosca*, the plaintiffs had already obtained a judgment for $20 million against a corporation and related officers, and sought to prevent an insurance company from making payments of $4.5 million dollars to one of those defendants. Thus, the injunction order attached to specific insurance proceeds that undisputedly were due to be paid to an insured, and the plaintiffs had already obtained a binding judgment against that same insured. *Iantosca v. Step Plan Servs.*, 604 F.3d 24 (1st Cir. 2010). Here, in stark contrast, there is no judgment and there are significant disputes as to whether any insurance proceeds are (or ever will be) properly payable. In short, none of the cases cited by the PSC provides any support for the relief sought.

    **C.**    **The PSC's Motions for Injunctive Relief are nothing more than an attempt to reargue its Motions to Restrict Communications with Putative Class Members and seek relief which this Court has repeatedly denied.**

The "other relief" in the PSC's Motion for Accounting is in fact the PSC's *third* motion to restrict communications with putative class members. (Memo. to Mot. for Accounting at 16-19.) This Court has previously (and correctly) rejected virtually identical motions on at least two occasions. (ECF Nos. 278 and 5207 (denying virtually identical requested relief).) The Motions for Injunctive Relief fail again for these same reasons.

## CONCLUSION

For all the foregoing reasons, the Insurer Steering Committee respectfully requests that this Court deny Plaintiffs' Steering Committee's Motion for an Accounting and Other Relief (Rec. Doc. No. 6669), and also deny the PSC's *Emergency* Motion for an Order Preventing the Payment or Transfer of Certain Moneys or, in the Alternative, for Court Ordered Mediation and Temporary Stay of All Outside Settlement Activities (Rec. Doc. No. 6947); and grant such other relief this Court deems necessary and proper.

    Respectfully submitted,

    */s/ Judy Y. Barrasso*
    Judy Y. Barrasso, 2814
    H. Minor Pipes, III, 24603
    BARRASSO USDIN KUPPERMAN
     FREEMAN & SARVER, L.L.C.
    909 Poydras Street, 24th Floor
    New Orleans, Louisiana 70112
    Telephone: (504) 589-9700
    jbarrasso@barrassousdin.com
    mpipes@barrassousdin.com
    *Lead Counsel for the Insurer Steering Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail *or* by hand delivery and e-mail *and* upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 9th day of February, 2011.

>  */s/ Judy Y. Barrasso*
>  Judy Y. Barrasso, 2814