UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO ALL CASES** | MDL No. 2:09-md-2047<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**DEFENDANTS FCCI COMMERCIAL INSURANCE COMPANY AND FCCI INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR AN ORDER REQUIRING AN ACCOUNTING AND OTHER RELIEF**

COME NOW, FCCI COMMERCIAL INSURANCE COMPANY AND FCCI INSURANCE COMPANY ("FCCI"), by and through their undersigned counsel and file this Memorandum in Opposition to Plaintiffs' Steering Committee's Motion for an Order Requiring an Accounting and Other Relief, and state as follows:

**I.   INTRODUCTION**

On July 26, 2010, the Plaintiffs' Steering Committee ("PSC") filed a motion requesting that the Court establish a fund for PSC attorneys' fees and expenses for MDL administration and "common benefit" activities, demanding a tax or set-aside of a portion of any settlement or judgment related to any Chinese Drywall ("CDW") claims.  FCCI, other insurers involved in CDW claims, and various plaintiffs in the MDL objected, filing responses and memoranda, outlining the number of reasons and arguments why such a fund was wholly inappropriate and unsupported.  This Court held a hearing on the PSC's Motion on August 12, 2010, at which time the PSC agreed to continue the Motion, which was premature and too broad at that time.

As an initial matter, no defendant has responded to Amato v. Liberty Mutual Ins. Co., Case No. 10-932, raising their defenses. Included as defendants in the Amato action, among numerous alleged manufacturers, distributors, suppliers, builders, importers or developers, are dozens of insurer-defendants. Many of these insurer-defendants will likely raise lack of jurisdiction defenses in the Amato action. Despite this, the PSC seeks an Order by the Court issuing mandates and injunctions over all of these parties, over whom jurisdiction has not yet been established. Additionally, while the Court held a hearing on the insurers' Motions to Dismiss based on lack of jurisdiction and venue in Pate v. Am. Int'l Specialty Lines Ins. Co. (MDL No. 2047), a written order has not yet been entered on those Motions.

On December 16, 2010, the PSC filed another Motion[1] essentially renewing its request that the Court order a fund be established to require payment of any settlement funds for CDW claims and to allow the PSC to recover fees from any such settlement. The PSC also seeks a mandate that any payments made to builder-defendants by either manufacturers or insurers be sequestered. For the reasons outlined in FCCI's Response to PSC's Motion to Establish a Fund and as set forth further herein, PSC's request remains inappropriate and premature in the present action and PSC fails to present grounds for the extreme remedy sought. In addition to the argument set forth herein, FCCI incorporates the Insurer Steering Committee's Opposition[2].

---

[1] D.E. 6669

[2] Insurer Steering Committee's Opposition to the Plaintiffs Steering Committee's Motion for an Accounting and Other relief and Emergency Motion for an Order Preventing the Payments or Transfer of Certain Moneys or, in the Alternative, for Court Ordered Mediation and Temporary Stay of All Outside Settlement Activities ("Insurer Steering Committee Opposition").

## II.  ARGUMENT

### A. Ordering a Common Fund or "Sequestration" of Settlement Funds to Award PSC Fees Remains Improper and Unnecessary in the Present Case.

As outlined in FCCI's Memorandum in Opposition of the PSC's first Motion requesting the Court to create a mandatory fund in order to allow for the PSC to obtain attorneys' fees from settlements[3], PSC's request in this case and at this juncture remains inappropriate and unsupported.

#### 1. The purpose and use of "common fund" doctrine is not applicable or warranted in present matter.

As an exception to the American Rule whereby parties pay their own attorneys' fees, the "common fund doctrine" provides that a private plaintiff or plaintiff's attorney, *whose efforts create, discover, increase, or preserve a fund to which others also have a claim*, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.  In re Diet Drugs, 582 F3d 524 (3d Cir 2009).  See also Fickinger v. C.I. Planning Corp., 646 F. Supp. 622 (E.D. Pa. 1986) (explaining that under the "common fund" exception to the rule against fee-shifting for attorney fees, a *person who maintains a lawsuit resulting in the creation, preservation or increase of a fund in which others have common interest may be reimbursed from that fund for attorney fees and costs incurred*) (emphasis added).

The purpose and typical application of the common fund doctrine is that:

> When a *case results in the creation of a common fund for the benefit of the plaintiff class*, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund. In such a case, the defendant typically pays a specific sum into court, in *exchange for a release of its liability*.  The court then determines the amount of attorneys' fees that plaintiffs' counsel may recover from this fund, thereby diminishing the amount of money that ultimately will be distributed to the class.

---

[3] D.E. 5064

- 3 -

Goodyear v. Estes Express Lines, Inc., 2008 WL 687130, *6 (S.D. Ind. 2008) (quoting Florin v. Nationsbank of Ga., 34 F.3d 560 (7th Cir. 1994) (emphasis added).

"**Before fees may be awarded under the common fund exception, the fee movant must demonstrate the existence of a common fund**." Balakian v. Balakian, 2008 WL 4539481, *2 (E.D. Cal. 2008) (quoting Moore's Federal Practice 3d § 54.171[2][a][i]) (emphasis added); see also Purdy v. Security Sav. U & Loan Assoc., 727 F. Supp. 1266 (E.D. Wis. 1989) (When a common fund is available, attorneys for successful parties may petition for portion of fund as compensation for their efforts); Muehler v Land O'Lakes, Inc., 617 F. Supp 1370 (D.C. Minn. 1985) (Award of attorney fees *from fund successfully recovered by class representatives and their attorneys* found appropriate since *fund had been recovered for benefit of all class members*) (emphasis added); Skelton v. General Motors Corp., 860 F. 2d 250, 251 (7th Cir. 1988) (stating that a court may award attorneys' fees out of a fund when a case results in the creation of a common fund for the benefit of a plaintiff class).

In the present matter, there is still no "common fund" from which the Court could order fees be deducted or applied to and the PSC provides no basis for why its Motion presents an exception to this doctrine. See Market Street Sec., Inc. v. Midwest Air Group, Inc., 2009 WL 2985451, *4 (E.D. Wis. Sept. 15, 2009) ("It is doubtful that plaintiff, . . ., would be able to recover under the common fund doctrine because, as previously stated, there is no common fund over which this court has authority to order attorney's fees deducted").  While there have been continued settlement discussions between various parties, some who are not parties to the MDL, PSC has not been successful in obtaining a judgment or global settlement for all of the plaintiffs from which they seek fees and have thus not created or obtained a "fund" common to all parties yet from which they could potentially seek attorneys' fees.

As noted by the PSC "the purpose of this equitable common fund doctrine is to allow "a person preserving or recovering a fund *for the benefit of others in addition to himself*, to recover his costs, including counsel fees . . ." PSC Motion, p. 12 (quoting *Smiley v. Sincoff*, 958 F.2d 498, 501 (2nd Cir. 1992) (emphasis added). The PSC still cannot show that all plaintiffs (or in some cases potential plaintiffs) from whom they seek to recover fees have "shared in a common benefit" such that the common fund doctrine or the common benefit doctrine applies.[4] Nor is the PSC able to show that their efforts have recovered any settlement or benefit that has not simply been for their own benefit. The PSC has the burden of showing that its efforts are the cause of the settlements that they ask the Court to disrupt and intervene in. See Barton v. Drummond Co., 636 F.2d 978, 984 (5th Cir. 1981) (Causation is the crucial link upon which any equitable award of attorney fees under common fund or common benefit doctrine must be based).

There still has been no global settlement in this action creating a fund, nor is there a proposed settlement for the entire action or omnibus class action; rather, there have been trials on individual actions and settlements of certain claims. Many defendants have been and continue to seek potential settlement of various claims, some of whom were in the process of attempting to settle plaintiffs' claims when the claims were joined or added to an action now included in this MDL action.

The PSC describes its efforts in recovering a fund, allegedly for the benefit of others, as generally "continuing to actively pursue litigation on behalf of more than 5,000 property owners,"

---

[4] The "common benefit" doctrine recognizes that attorneys' fees should be shared by those who receive a common benefit arising from a suit, even if that benefit is not a monetary fund. Market Street Sec., Inc. v. Midwest Air Group, Inc., 2009 WL 2985451, *2 (E.D. Wis. Sept. 15, 2009). The typical situation applying the common benefit doctrine is a shareholder derivative suit in which the successful shareholder plaintiff confers a substantial benefit on all of the shareholders that is not an actual monetary award.

and takes credit for the pilot agreement or settlement with Knauf. However, this does not describe "common benefit services" performed for those upon whom the PSC asks the Court to impose restrictions and injunctions or any efforts the PSC would not otherwise take in actively pursuing litigation of their individual or class plaintiff-clients. Further, the PSC complains of individual settlements that parties are engaging in but fails to show that PSC's efforts are the cause of any of those settlements.

In limited circumstances courts have held that attorneys' fees may be withheld or assessed before a "fund" is established. See Turner v. Murphy Oil USA, Inc., 422 F.Supp. 2d 676 (E.D. La. 2006) (granting in part a PSC's motion to set aside funds in twenty-seven consolidated class actions on behalf of people claiming damages against a oil refinery and excluding individuals who opted out); In re Zyprexa Prods. Liab. Litig., 467 F. Supp. 2d 256 (E.D.N.Y. 2006) (granting in part PSC's motion to establish a fund where the PSC had engaged in extensive discovery and depositions and engaged in intense settlement negotiations). However, those cases presented different circumstances than the present action, and the PSC has not met its burden of demonstrating why such an exception should be made in the present case. The present case differs substantially from Turner and other classes applying the common fund rule. Rather than a group of class actions all against one manufacturer or alleged responsible entity, this action and the claims PSC describe involve a multitude of cases, some class actions and some individual actions, against dozens of various entities alleged to be liable for CDW damages, and a number of insurers joined as defendants.

>    **2.    The PSC again asks for court intervention over parties and matters that are outside the scope of this Court's management and current jurisdiction.**

The PSC requests the ordering of a fund established for its attorneys' fees under basically the same conditions as presented in the PSC's initial Motion to Establish Litigation Fund. Essentially, the PSC asserts that any home containing Chinese drywall in the United States must be considered part of this action and the owners of such homes cannot settle with their respective builders without going through this Court and turning over all settlement money and being subject to paying PSC fees. This remains the PSC's position, even if the homeowners have independent counsel representing them. The PSC also seeks to include all insurers, regardless of whether jurisdiction has been confirmed over such insurers and asks to intervene in any settlement in which an insurer may be involved.

While federal courts have under certain circumstances determined it was equitable to award lead plaintiffs' counsel attorneys' fees in other class action and MDL cases as mentioned above, the present facts and circumstances in the CDW cases do not support such intervention.

>    **B.    There Have Been No Significant Changes since the August 12, 2010 Hearing to Warrant the PSC's Renewed Request.**

As outlined above, the creation of a fund for the purpose of preserving and "sequestering" attorneys' fees as the PSC proposes is not warranted and is inappropriate in the present action. In cases where courts have permitted set-asides for attorneys' fees the plaintiffs' attorneys seeking the fee or set-aside have accomplished settlement for those parties and have undertaken lengthy work on behalf of the plaintiffs. See e.g., In re NTL Inc. Sec. Litig., 2007 WL 1294377 (S.D.N.Y. May 2, 2007) (granting in part class counsel's application for attorneys' fees and expenses where counsel spent approximately 517 hours in discovery related to class certification and briefs, undertaking

extensive discovery, engaging in lengthy negotiations and mediations, reaching Stipulation of Settlement of the entire class action, and sending out over 39,000 copies of the settlement notice to potential class members).

In the present matter a number of motions to dismiss still remain pending by various defendants and another new Omnibus Complaint was just filed. The procedural status of these actions has not materially changed since this Court held a hearing on the PSC's initial Motion to Establish a Litigation Fund. Such a fund was not appropriate at that time and it remains unwarranted.

Additionally, the PSC's requested relief is simply unfair under the circumstances in the present MDL action where many of the members of the PSC sought the formation of the MDL and sought the joinder of plaintiffs to the Omni class actions. Members of the PSC used the MDL for finding new plaintiffs in order to file additional Omnibus Complaints and continue to do so, as evidenced by the most recent Omnibus Complaint, <u>Abel v. Taishan Gypsum Co., Ltd., et al</u>. Many plaintiffs chose to file their actions in state court and did not seek to be a party to the MDL and are represented by their own selected counsel.

Under such circumstances, the establishment of a fund to order settling parties to pay a percentage of their settlement in order to compensate and reimburse PSC attorneys is not warranted or equitable.

### C. Granting the Relief the PSC Seeks May Interfere with Resolution of Claims with FCCI or Other Insurers.

For the same reasons outlined in FCCI's Memorandum opposing the PSC's Motion for establishing a fund, the request the PSC seeks now would unreasonably and unnecessarily interfere with insurer's potential resolution of their claims with their insureds. The FCCI entities named in

this action and which the PSC seeks to include in its requested relief are Florida corporations that only issued Florida policies to its Florida insureds. FCCI has contested personal jurisdiction and has not yet raised any of its defenses in Amato. Every home built that involved any FCCI insured was constructed in Florida. FCCI has coverage cases pending in Florida to resolve the issues of whether or to what extent it should provide coverage for any of its insureds. For this Court to impose conditions on any potential resolution of those claims is simply unreasonable, particularly because some of those parties are not part of the MDL.

Some of FCCI's insureds are not part of any aspect of the MDL. It would be unfair and unjust to impose the far-reaching orders and intervention the PSC requests upon those insureds that have no relationship to the MDL, and that chose not to take part in common benefit discovery by the PSC and agreed to remediate their homes without significant monetary payments

The actual parties to the MDL continue to make strides toward resolution of the issues between the parties. Most of that progress has been made by Knauf, without the PSC's controlling input. This Court's ultimate goal is not creating a fund for payments to lawyers. This Court's ultimate goal is to assist homeowners who have defective CDW in their homes in getting those homes remediated, getting them remediated at a fair price, and placing the financial burden of that remediation on the appropriate parties. To the extent lawyers help homeowners with that process, they have been and will be compensated by traditional fee agreements. This Court should reserve ruling on any common benefit fees or expenses until such time as any collective settlement agreements are brought before the Court.

### III. CONCLUSION

For the reasons outlined above, as set forth in FCCI's Response in Opposition to PSC's Motion to Establish Litigation Fund, and as argued in the Insurer Steering Committee Opposition, the PSC again seeks relief that is not appropriate or equitable in this matter. All of the arguments raised by the various parties in opposition to the PSC's initial Motion to Establish Litigation Fund remain present at this time. The status of the cases has not materially changed and many parties will be raising jurisdictional defenses in <u>Amato</u>. The PSC does not show sufficient efforts for the benefit of all others over which it seeks an order to collect attorneys' fees for activities it would not otherwise engage in anyway for its own clients. The PSC seeks equitable relief entirely within the discretion of the Court, but equity does not favor the intervention and disruption sought in the present case simply because parties are engaging in meaningful settlement discussions and the PSC has been yet unable to bring every possible prospective CDW claimant as a class plaintiff in the MDL. As such, the PSC's Motion for an Order Requiring an Accounting and Other Relief should be denied.

This 9th day of February 2011.

        Respectfully submitted,

        GOODMAN MCGUFFEY LINDSEY & JOHNSON, LLP
        Attorneys for FCCI COMMERCIAL INSURANCE
        COMPANY and FCCI INSURANCE COMPANY

        BY:    /S/ ROBERT M. DARROCH
                  ROBERT M. DARROCH
                  GA State Bar No.: 205490
                  STEPHANIE F. GLICKAUF
                  GA State Bar No.: 257540
                  3340 Peachtree Road NE, Suite 2100
                  Atlanta, GA 30326-1084
                  Phone: (404) 264-1500

        Fax:   (404) 264-1737
        rdarroch@gmlj.com
        sglickauf@gmlj.com

        AND

MOULEDOUX, BLAND, LEGRAND & BRACKETT, LLC

By:   /s/ PATRICK E. COSTELLO
       PATRICK E. COSTELLO (#26619)
       JACQUES P. DeGRUY (#29144)
       4250 One Shell Square
       701 Poydras Street
       New Orleans, Louisiana 70139
       Telephone: 504-595-3000
       Facsimile: 504-522-2121
       pcostello@mblb.com
       jdegruy@mblb.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **DEFENDANTS FCCI COMMERCIAL INSURANCE COMPANY AND FCCI INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR AN ORDER REQUIRING AN ACCOUNTING AND OTHER RELIEF** has been served upon Plaintiff's Liaison Counsel, Russ Herman, and Defendant's Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

This 9th day of February, 2011.

/s/ PATRICK E. COSTELLO
PATRICK E. COSTELLO (#26619)