UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUSIANA

-------------------------------------------------------------x
IN RE: CHINESE MANUFACTURED     :     MDL No. 2047
DRYWALL PRODUCTS LIABILITY     :
LITIGATION         :     SECTION: L
-------------------------------------------------------------x
THIS DOCUMENT RELATES TO:     :     JUDGE FALLON
         :
09-cv-4115, 09-cv-4117, 09-cv--4119, 09-cv-4324, :     MAG. JUDGE WILKINSON
09-cv-6690, 09-cv-7628, 10-cv-0720    :
-------------------------------------------------------------x

**RESPONSE OF KNAUF PLASTERBOARD (TIANJIN) CO., LTD., KNAUF
PLASTERBOARD (WUHU) CO., LTD., GUANGDONG KNAUF NEW BUILDING
MATERIALS PRODUCTS CO., LTD. AND KNAUF GIPS KG TO THE MOTION OF
THE PLAINTIFFS' STEERING COMMITTEE TO ESTABLISH A PLAINTIFFS'
LITIGATION EXPENSE FUND TO COMPENSATE AND REIMBURSE ATTORNEYS
FOR SERVICES PERFORMED AND EXPENSES INCURRED FOR MDL
ADMINISTRATION AND COMMON BENEFIT**

Defendants Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd.,

Guangdong Knauf New Building Materials Products Co., Ltd. and Knauf Gips KG (collectively

the "Knauf Defendants") submit this response to the motion of the Plaintiffs' Steering

Committee ("PSC") to establish a plaintiffs' litigation expense fund to compensate and

reimburse attorneys for services performed and expenses incurred for MDL administration and

common benefit (the "Fund").[1] The Knauf Defendants do not object to the establishment of the

Fund with a reasonable assessment withheld from plaintiffs' recoveries, including settlements

---

[1]    Each Knauf Defendant submits this response only in cases in which it has been served. The
arguments raised in this response would apply equally to all other cases in which the Knauf
Defendants might be served.


EXHIBIT

A

and judgments (the "holdback").  However, the Knauf Defendants object to the PSC's proposals

regarding:

- **Holdback Amounts:**  The PSC proposes that seventeen percent (17%) of plaintiffs'

  recoveries (including settlements and judgments) be withheld as a holdback for

  deposit into the Fund -- a figure far in excess of the holdback amounts ordered by this

  Court in other MDL proceedings and by other MDL courts.  *See, e.g.*:

  - *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, PTO No. 19 (E.D. La.

    Aug. 4, 2005) (the "Vioxx Fund Order") (holdback ranging from 3%-6%)

    (attached as Exhibit 1);

  - *In re Propulsid Prods. Liab. Litig.*, MDL No. 1355, PTO No. 16 (E.D. La.

    Dec. 26, 2001) (the "Propulsid Fund Order") (holdback ranging from 4%-

    6%) (attached as Exhibit 2);

  - *In re Ford Motor Company Speed Control Deactivation Switch Prods.*

    *Liab. Litig.*, MDL No. 1718 (E.D. Mich. Jan. 21, 2009) (the "Ford Fund

    Order") (2% holdback) (attached as Exhibit 3);

  - *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, MDL No.

    1909 (Feb. 20, 2009) (the "Gadolinium Fund Order") (6% holdback,

    including 5% in fees and 1% in costs) (attached as Exhibit 4);

  - *In re Prempro Prods. Liab. Litig.*, MDL No. 1507, PPO No. 6 (E.D. Ark.

    Mar. 30, 2005) (the "Prempro Fund Order") (holdback ranging from 3%-

    5%) (attached as Exhibit 5);

o   *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, PTO No. 67 (S.D.N.Y.
Mar. 20, 2002) (the "Rezulin Fund Order") (holdback ranging from 4%-
6%) (attached as Exhibit 6); and

o   *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, MDL No. 1407,
Amended CMO No. 8 (W.D. Wash. July 8, 2002) (the "PPA Fund Order")
(holdback ranging from 3%-4%) (attached as Exhibit 7).

- **Disclosure of Confidential Settlement Information to Plaintiffs' Liaison Counsel
("PLC")**:  The PSC proposes that (a) defendants produce confidential settlement
agreements to PLC; and (b) the escrow agent overseeing the Fund provide monthly
statements to PLC reflecting aggregate monthly deposits (among other information).
Disclosure to PLC members of settlement details reached with attorneys who are not
on the PLC is unfairly prejudicial to defendants.  PLC members can use that
information to the Knauf Defendants' disadvantage in their negotiations with the
Knauf Defendants.  The Knauf Defendants propose a structure to ensure that
settlement amounts remain confidential while fully protecting the PLC by providing
for disclosure to the escrow agent (or trustee) managing the Fund or to the Court and
not to any plaintiffs' counsel.  As in other MDL proceedings, reporting by the escrow
agent regarding deposits into the Fund should be made on a quarterly basis and in a
manner designed to avoid making any individual settlement amounts ascertainable.

In addition, the order should be clarified to make certain that the holdbacks apply only to
settlements with homeowners (and not settlements among defendants, some of which may also

be plaintiffs or third-party plaintiffs).  Finally, the Court should require the PSC to identify the

state court plaintiffs who have agreed to the holdback and establish a dispute resolution

mechanism in case any state plaintiffs contest the holdback.


## ARGUMENT

### I.      A Seventeen Percent (17%) Holdback Is Excessive And Unreasonable.

The PSC argues that a "substantial assessment be imposed now" and the "most analogous

case is the *Orthopedic Bone Screw* litigation" in which the MDL court ordered a 17% (12% fees

and 5% expenses) holdback for a common benefit fund.[2]  Reliance on the 1996 decision in

*Orthopedic Bone Screw* is misplaced and ignores the more recent approach to common benefit

fund holdbacks employed by this Court and other MDL courts around the country.  For example,

in the Vioxx MDL, this Court ordered a holdback ranging from 3%-6%, and in the Propulsid

MDL, this Court ordered a holdback ranging from 4%-6%.  *See* Vioxx Fund Order at 3-4 (Ex. 1);

Propulsid Fund Order at 3-4 (Ex. 2).  Other MDL courts have similarly limited holdback

amounts.  *See, e.g.*, Ford Fund Order at 1 (assessing 2% holdback) (Ex. 3); Gadolinium Fund

Order at 4 (assessing 6% holdback, including 5% in fees and 1% in costs) (Ex. 4); Prempro Fund

Order at 1-4 (assessing holdback of 3% for state cases and 5% for federal cases) (Ex. 5); Rezulin

---

[2]     *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, PTO 402, 1996 WL
        900349 (E.D. Pa. June 17, 1996); PSC's Memorandum in Support of Motion to Establish a
        Plaintiffs' Litigation Expense Fund ("PSC Br.") at 10.

Fund Order at 2 (assessing holdback of 4% for state cases and 6% for federal cases) (Ex. 6); PPA

Fund Order at 2 (assessing holdback of 3% for state cases and 4% for federal cases) (Ex. 7).

The PSC argues that "pharmaceutical case recent precedents are not precisely accurate

markers for the appropriate assessment" and that "the litigation has significantly matured thanks

to the PSC processing of thousands of individual cases through the use of the Omni Complaints."

PSC Br. at 10. But there is nothing remarkable about this MDL as compared to other MDL

proceedings in which a Master Complaint has been used and many defendants are named. *See,*

*e.g.*, Prempro Fund Order (assessing 3%-5% holdback even though MDL proceeding included

Master Complaint procedure, involved numerous pharmaceutical manufactures and multiple

hormone therapy products).[3]  Moreover, in recent non-pharmaceutical products liability MDL

proceedings, the MDL courts assessed single digit holdbacks. *See* Ford Fund Order, at 1 (2%

holdback) (Ex. 3); Gadolinium Fund Order, at 4 (6% holdback) (Ex. 4).[4]

The current MDL approach to more modest common benefit holdback amounts

recognizes that significant assessments merely increase the cost of settlement.  Plaintiffs' counsel

who settle cases factor the holdback amount in their determination of settlement value -- *i.e.*, the

greater the holdback amount, the more each plaintiff's counsel will seek for settlement to

---

[3]   *See In re Prempro Prods. Liab. Litig.*, MDL No. 1507, PPO No. 7 (E.D. Ark. Mar. 30, 2005)
(noting Master Complaint procedure) (attached as Exhibit 8); *In re Prempro Prods. Liab.
Litig.*, MDL No. 1507 (J.P.M.L Feb. 12, 2004) (ordering transfer of cases involving
numerous pharmaceutical manufacturers and multiple hormone therapy products to MDL
proceeding) (attached as Exhibit 9).

[4]   The Gadolinium MDL involved alleged injuries arising from the use of the chemical
gadolinium in magnetic resonance imaging systems (MRI).

maximize that plaintiff counsel's fee.  A significant holdback could inhibit settlement and prolong the overall litigation.

The PSC relies on an inapposite decision setting a common benefit fund assessment of 12% for *class counsel with respect to recoveries by class action opt-outs following the grant of class certification.* *Turner v. Murphy Oil USA*, 422 F. Supp. 2d 676 (E.D. La. 2006). *Turner* did not involve an MDL proceeding, but rather was a class action with an already certified class.  In an MDL, each plaintiff generally has his or her own counsel from the outset who conducts the due diligence necessary to commence an action.  But in the class action context, it is class counsel who represents the interests of putative class members from the outset of the case through class certification motion practice, performing significant common benefit work for all putative class members.  It is only once a class is certified that opt-outs generally proceed with their own counsel.  It thus stands to reason why class counsel in a class action could be entitled to a greater common benefit recovery than the PSC in an MDL proceeding.

Accordingly, this Court should reject the PSC's unreasonable request to assess a 17% holdback and should follow the more recent MDL precedents, including those of this Court, assessing a more limited single digit holdback amount.

Moreover, the PSC's proposed order does not distinguish between state and federal court recoveries.  This Court should follow the general approach taken in recent MDL proceedings and

set a lower holdback for state court cases (to the extent that state court counsel have a written

agreement with the PSC to utilize the PSC's common benefit MDL work).[5]

## II.   Disclosure of Confidential Settlement Information To PLC Is Prejudicial To The Defendants.

A salient aspect of the common benefit fund process is ensuring that the settlement

amount of any particular settlement not be transparent.  A number of the PSC's proposals run

counter to that goal.

The PSC proposes that in addition to paying the holdback into the Fund, "defendants are

required to produce to [PLC] any and all papers constituting their settlement agreements."  PSC

Proposed Order at 2.  The PSC cites no precedent requiring disclosure of confidential settlement

agreements to a PLC, where that counsel does not represent the settling plaintiff.  Such a

disclosure would undermine the confidentiality of settlements and prejudice defendants in future

settlement negotiations with PLC attorneys.  Possession of such information would give PLC

attorneys an unfair advantage in settlement negotiations with the Knauf Defendants by making

every concession in every settlement agreement a floor for the next agreement.  If disclosure of

---

[5]   We note that in its brief, the PSC states that "the responsibility for paying the assessment into the fund established is that of the hundreds of defendants."  PSC Br. at 11.  In its proposed order, the PSC states that "[i]f for any reason the assessment is not or has not been . . . withheld, the plaintiff and his counsel are jointly responsible for paying the assessment into the fund promptly."  To the extent that the PSC's brief suggests that the defendants should be responsible if holdbacks are not withheld, the Court should follow the language of the proposed order which expressly makes each plaintiff (and plaintiff's counsel) responsible if for any reason the holdback is not withheld.  *See also* Vioxx Fund Order, at 2 (where a holdback assessment is not withheld "for any reason . . ., the plaintiff and his counsel are jointly responsible for paying the assessment into the fund promptly") (Ex. 1).

settlement agreements needs to be made, it can be made to the escrow agent (or trustee) overseeing the Fund or to this Court *in camera.*

Similarly, the PSC's proposal that the escrow agent provide to the PLC a monthly statement with the "aggregate of the monthly deposits" could similarly prejudice defendants. Disclosure of settlement holdbacks deposited within a limited monthly period, even if in the aggregate, may provide PLC with the ability to calculate the amount of particular settlements.

The approach to reporting taken by this Court in the Propulsid MDL strikes the proper balance between an accounting of the Fund and protecting the confidentiality of prior settlements. Under the Propulsid order:

> The Clerk of Court is instructed, on a quarterly basis, to provide PLC [Plaintiffs' Liaison Counsel] and DLC [Defendants' Liaison Counsel] a report containing a statement identifying the total sum of principal deposits, interest accrued, disbursements and total current balance of the amount on deposit in the Registry of the Court. The Clerk of Court is further directed to provide only to DLC the ledger of all deposits and disbursements. The ledger shall be sealed and remain confidential to all parties and counsel except for DLC. The ledger shall be provided by the Clerk of Court to DLC at the same time the quarterly statement is provided to PLC and DLC.  LDC shall, on a quarterly basis certify that the ledger maintained by the Clerk of Court accurately reflects the accounting of assessments and deposits maintained by DLC.

*In re Propulsid Prods. Liab. Litig.,* Order Supplementing Pretrial Order No. 16, at 3 (E.D. La. Jan. 15, 2003) (Ex. 2).  Thus, as this Court recognized in the Propulsid MDL, the key features of

any reporting regime are:  (a) reports no more frequently than on a quarterly basis; and (b) disclosure of particular Fund deposits to no one other than the Court or defendant's counsel.[6]

Although the Vioxx Fund Order included a provision for reporting "the aggregate of the monthly deposits" to PLC, the Knauf Defendants respectfully note that monthly disclosure of the aggregate amount of a month's deposits relating to settlements at this stage of the litigation could inadvertently enable PLC to determine the amount of a particular settlement.  Thus, this Court should adopt reporting procedures similar to those adopted in the Propulsid MDL.

### III.    The Settlements Subject To The Holdback Should Be Clarified

As a point of clarification, the Knauf Defendants further note that the PSC's proposed order subjects any recovery by "plaintiffs and their attorneys" to a holdback.  The holdback should be limited to recoveries by *homeowner plaintiffs* and not recoveries by plaintiffs or third-party plaintiffs who are not homeowners (*e.g.*, manufacturers, suppliers and homebuilders).  The holdback should be limited to homeowner plaintiff recoveries because:  (a) The PSC's common benefit work has been undertaken for the benefit of homeowners, not manufacturers, suppliers and homebuilders; and (b) extending the holdback to settlements among manufacturers, suppliers, homebuilders, etc. could create "double-dipping" in that the PSC would recover twice for the same recovery — *i.e.*, it would recover once when the homeowner plaintiff received his/her settlement or judgment, and again when the various defendants sorted out how much each should contribute to that settlement or judgment.  We also presume that homebuilders who have

---

[6]   Because there are multiple defendants in this litigation, settlement amounts for a particular defendant's cases should also not be disclosed to counsel for other defendants.

retained or obtained ownership of the homes they built would be treated as homebuilders rather than homeowners for this purpose.

**IV.    The State Court Plaintiffs Subject To The Holdback Should Be Identified**

The PSC's proposal does not include any procedure that requires the PSC to identify those state court plaintiffs who have voluntarily agreed to cooperate with the PSC and to be subject to a holdback. Absent such a procedure, there is no way to determine which state court cases might be subject to a holdback. Indeed, there apparently is disagreement on that issue between at least some counsel who represent state court plaintiffs and the PSC. [MDL Docket Nos. 4958, 4995.] The Court should require the PSC to identify those state court plaintiffs who have voluntarily agreed to cooperate with the PSC and to be subject to the holdback, and to provide for a dispute resolution mechanism if the agreement is contested.

## CONCLUSION

For the reasons set forth above, this Court should (a) reject the excessive holdback amount proposed by the PSC in favor of a single digit holdback amount consistent with that in Vioxx, Propulsid and other recent MDL proceedings; (b) deny PLC access to confidential settlement agreements; and (c) adopt the quarterly reporting procedures relating to the Fund similar to those adopted by this Court in the Propulsid MDL proceeding. The Knauf Defendants request that after the Court rules on these substantive issues, the parties should submit an agreed upon order reflecting the Court's rulings and resolving any language ambiguities.

Dated: August 10, 2010    Respectfully submitted,


       By:  /s/ Kyle A. Spaulding
       STEVEN GLICKSTEIN (NY Bar No. 1038157)
       JAY P. MAYESH (NY Bar No. 1081603)
       KAYE SCHOLER LLP
       425 Park Avenue
       New York, NY 10022
       Telephone:  (212) 836-8485
       Facsimile:  (212) 836-6485
       Email:  sglickstein@kayescholer.com

        - AND -

       MILES P. CLEMENTS (#4184)
       PETER E. SPERLING (#17812)
       KERRY J. MILLER (#24562)
       KYLE A. SPAULDING (#29000)
       PAUL C. THIBODEAUX (#29446)
       FRILOT L.L.C.
       1100 Poydras Street
       Suite 3700
       New Orleans, LA 70163
       Telephone:  (504) 599-8194
       Facsimile:  (504) 599-8145
       Email:  kmiller@frilot.com

       Counsel for Defendants Knauf Plasterboard
       (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co.,
       Ltd., Guangdong Knauf New Building Materials
       Products Co., Ltd and Knauf Gips KG

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served upon Plaintiffs'

Liaison Counsel by email and by electronically uploading the same to LexisNexis File & Serve

in accordance with Pre-Trial Order No. 6, on this 10th day of August, 2010.

/s/ Kyle A. Spaulding

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE |
| . .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. : | | KNOWLES |

PRETRIAL ORDER NO. 19

(ESTABLISHING PLAINTIFFS' LITIGATION EXPENSE FUND TO COMPENSATE
AND REIMBURSE ATTORNEYS FOR SERVICES PERFORMED AND EXPENSES
INCURRED FOR MDL ADMINISTRATION AND COMMON BENEFIT)

This order is entered to provide for the fair and equitable sharing among plaintiffs of the

cost of special services performed and expenses incurred by attorneys acting for MDL

administration and common benefit of all plaintiffs in this complex litigation.

1.   Plaintiffs' Litigation Expense Fund to be Established

Plaintiffs' Liaison Counsel (Russ Herman) and Defendants' Liaison Counsel (Phillip A.

Wittmann) are directed to establish an interest-bearing account to receive and disburse funds as

provided in this order.  Counsel shall agree on and designate an escrow agent for this purpose.

These funds will be held as funds subject to the direction of the Court.  No party or attorney has

any individual right to any of these funds except to the extent of amounts directed to be

disbursed to such person by order of the Court.  These funds will not constitute the separate

property of any party or attorney or be subject to garnishment or attachment for the debts of any

party or attorney except when and as directed to be disbursed as provided by court order to a

specific person. These limitations do not preclude a party or attorney from transferring, assigning, or creating a security interest in potential disbursements from the fund if permitted by applicable state laws and if subject to the conditions and contingencies of this order.

2.   Assessment

   a.   All plaintiffs and their attorneys who, either agree or have agreed – for a monetary consideration – to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, including such compensatory and punitive damages, with respect to Rofecoxib (Vioxx) claim are subject to an assessment of the "gross monetary recovery," as provided herein.

   b.   Defendants are directed to withhold this assessment from amounts paid to plaintiffs and their counsel, and to pay the assessment directly into the fund as a credit against the settlement or judgment. If for any reason the assessment is not or has not been so withheld, the plaintiff and his counsel are jointly responsible for paying the assessment into the fund promptly.

   c.   No orders of dismissal of any plaintiffs claim, subject to this order, shall be filed unless accompanied by a certificate of plaintiffs and defendants counsel that the assessment has been withheld and deposited into the fund.

   d.   The Plaintiff's Steering Committee shall provide Defendants' Liaison Counsel, plaintiff's counsel, the escrow agent, the court or its designee with a list of cases and/or counsel who have entered into written agreements with the Plaintiff's Steering Committee. In the event there is a dispute as to whether a case should be on the list, the Plaintiff's Steering Committee shall resolve the matter with the

2

particular plaintiff's counsel either informally or upon motion.

e.  In measuring the "gross monetary recovery":

    (1)  Exclude court costs that are to be paid by the defendant.

    (2)  Exclude any payments to be made by the defendant on an intervention asserted by third-parties, such as to physicians, hospitals, and other health-care providers in subrogation related to treatment of plaintiff.

    (3)  Include the present value of any fixed and certain payments to be made in the future.

f.  This obligation attaches in the following instances:

    (1)  Full Participation Option.  For all cases whose counsel have agreed within 90 days of this Order to cooperate with the MDL by signing an appropriate agreement [attached hereto as Exhibit A], the assessment in such cases shall be three (3) percent of the "gross monetary recovery" (2% fees/1% costs).  The assessment shall apply to cases of Counsel with Vioxx cases now pending or later filed in, transferred to, or removed to, this court as well as unfiled and tolled cases and treated as part of the coordinated proceeding known as *In re: Vioxx Products Liability Litigation* including cases later remanded to a state court or any cases on tolling agreements, filed in any state court, or clients whose cases are as yet unfiled.  Two percent (2%) shall be deemed fees to be subtracted from the attorneys' fees portions of individual fee contracts, and one percent (1%) shall be deemed costs to be subtracted from the client portion of individual fee contracts.  This option shall be required by all members of

the PSC, MDL committee members and the Court approved State Liaison Committee.

(2)    Traditional Assessment Option.    Following the 90 day period to permit counsel to consider the Full Participation Option, Counsel who sign an appropriate agreement [Attached hereto as Exhibit B] to an assessment on all Vioxx cases now pending, or later filed in, transferred to, or removed to, this court and treated as part of the coordinated proceeding known as *In re: Vioxx Products Liability Litigation*, as well as unfiled or tolled cases in the amount of six (6) percent of the "gross monetary recovery" or four (4) percent of the "gross monetary recovery" of any other cases filed in any state court, or clients whose cases are as yet unfiled, or whose cases are later remanded to state court; unless these percentages are modified by agreement of counsel or by the Court upon showing of good cause.

(3)    Limited Waiver Option. Following the 90 day period to permit counsel to consider the Full Participation Option, Counsel who sign an appropriate agreement [Attached hereto as Exhibit C] to an assessment on all Vioxx cases now pending, or later filed in, transferred to, or removed to, this court and treated as part of the coordinated proceeding known as *In re: Vioxx Products Liability Litigation* in the amount of six (6) percent of the "gross monetary recovery" of these federal cases;    unless these percentages are modified by agreement of counsel or by the Court upon showing of good cause.

<u>4</u>

(4)   The Limited Waiver Option assessment shall not apply to cases removed from state court to federal court and then remanded to state court (based upon an order of improper removal) that have not at any time been transferred to MDL 1657.

3.   Disbursements

a.   Upon order of the Court, payments may be made from the fund to attorneys who provide services or incur expenses for the joint and common benefit of plaintiffs in addition to their own client or clients.   Attorneys eligible are limited to Plaintiffs' Liaison Counsel and members of the Plaintiff's Steering Committee, and other attorneys called upon by them to assist in performing their responsibilities, Court appointed State Liaison Counsel, and other attorneys performing similar responsibilities in state court actions.   All time and expenses are subject to proper and timely submission (each month) of contemporaneous records certified to have been timely received by Wegmann Dazet & Company in accord with this Court's prior orders.

b.   Payments will be allowed only to entities for special services performed, and to reimburse for special expenses incurred, for the joint and common benefit of all plaintiffs.

c.   Payment may, for example, be made for services and expenses related to the obtaining, reviewing, indexing, and payment for hard copies of computerized images of documents for the defendants; to conducting "national" or "state" depositions; and to activities connected with the coordination of federal and state litigation.   The fund will not, however, be used to pay for services and expenses

5

primarily related to a particular case, such as the deposition of a treating physician, even if such activity results in some incidental and consequential benefit to other plaintiffs.

d.    Payments will not exceed the fair value of the services performed or the reasonable amount of the expenses incurred, and, depending upon the amount of the fund, may be limited to a part of the value of such services and expenses.

e.    No amounts will be disbursed without review and approval by the Court or such other mechanism as the Court may order. Defense Counsel shall provide at least quarterly notice to the Court or its designee the names and docket numbers of the cases for which it has made an assessment. Details of any individual settlement agreement, individual settlement amount and individual amounts deposited into escrow shall be confidential and shall not be disclosed to the Plaintiff's Steering Committee, the Court, or the Court's designee. However, monthly statements from the escrow agent shall be provided to Plaintiff's Liaison Counsel, Defense Liaison Counsel, the Court, and the Court's designee showing only the aggregate of the monthly deposits, disbursements, interest earned, financial institution charges, if any, and current balance.

f.    If the fund exceeds the amount needed to make payments as provided in this order, the Court may order a refund to those who have contributed to the fund. Any such refund will be made in proportion to the amount of the contributions.

4.     **Incorporation by Reference**

The individual attorney agreements attached hereto as Exhibits A, B, and C are incorporated by reference and have the same effect as if fully set forth in the body of this order.


NEW ORLEANS, LOUISIANA, this __4th__ day of __August__, 2005.


                                        _/s/ Eldon E. Fallon_____
                                        UNITED STATES DISTRICT COURT JUDGE

7

# AGREEMENT
### (FULL PARTICIPATION OPTION)

This Agreement is made this _____ day of _____, 200___, by and between the Plaintiffs' Steering Committee ("PSC") appointed by the United States District Court for the Eastern District of Louisiana in MDL Docket No. 1657 and **[FILL IN THE NAME OF THE FIRM EXECUTING THE AGREEMENT]** (hereinafter "the Participating Attorneys").

WHEREAS, the United States District Court for the Eastern District of Louisiana has appointed Russ Herman, Andy D. Birchfield, Jr., Christopher A. Seeger, Richard J. Arsenault, Elizabeth J. Cabraser, Thomas R. Kline, Arnold Levin, Carlene Rhodes Lewis, Gerald E. Meunier, Troy A. Rafferty, Drew Ranier, Mark P. Robinson, Jr., and Christopher V. Tisi  to serve as members of the PSC to facilitate the conduct of pretrial proceedings in the federal actions relating to the use of Vioxx.

WHEREAS, the PSC in association with other attorneys working for the common benefit of plaintiffs have developed or are in the process of developing work product which will be valuable in the litigation of state court proceedings involving Vioxx induced injuries (the "PSC Work Product") and

WHEREAS, the Participating Attorneys are desirous of acquiring the PSC Work Product and establishing an amicable, working relationship with the PSC for the mutual benefit of their clients;

NOW, THEREFORE, in consideration of the covenants and promises contained herein, and intending to be legally bound hereby, the parties agree as follows:

### EXHIBIT "A"

1.      With respect to each client who they represent in connection with a Vioxx related claim, whether currently with a filed claim in state or federal court or unfiled or on a tolling agreement, each of the Participating Attorneys shall deposit or cause to be deposited in an MDL Fee and Cost Account established by the District Court in the MDL a percentage proportion of the gross amount recovered by each such client which is equal to three percent (3%) of the gross amount of recovery of each such client (2% fees; 1% costs).  For purposes of this Agreement, the gross amount of recovery shall include the present value of any fixed and certain payments to be made to the plaintiff or claimant in the future.  It is the intention of the parties that such assessment shall be in full and final satisfaction of any present or future obligation on the part of each Plaintiff and/or Participating Attorney to contribute to any fund for the payment or reimbursement of any legal fees, services or expenses incurred by, or due to, the MDL and/or any Common Benefit Attorneys.

2.      The Participating Attorneys, on behalf of themselves, their affiliated counsel, and their clients, hereby grant and convey to the PSC a lien upon and/or a security interest in any recovery by any client who they represent in connection with any Vioxx induced injury, to the full extent permitted by law, in order to secure payment in accordance with the provisions of paragraph 1 of this Agreement.  The Participating Attorneys will undertake all actions and execute all documents which are reasonably necessary to effectuate and/or perfect this lien and/or security interest.

3.      The amounts deposited in the MDL Fee and Cost Account shall be available for distribution to attorneys who have performed professional services or incurred expenses for the benefit of the plaintiffs in MDL 1657 and the coordinated state court litigation pursuant to

2