## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

```
-----------------------------------------------------------------x
IN RE:  CHINESE MANUFACTURED          :        MDL NO. 2047
DRYWALL PRODUCTS LIABILITY            :
LITIGATION                            :        SECTION: L
-----------------------------------------------------------------x
THIS DOCUMENT RELATES TO:             :        JUDGE FALLON
                                      :
Payton, et al.  v. Knauf Gips KG, et al.   :   MAG. JUDGE WILKINSON
No. 09-7628 (E.D. La.)                :
                                      :
-----------------------------------------------------------------x
```

**OPPOSITION OF KNAUF PLASTERBOARD (TIANJIN) CO., LTD. AND KNAUF PLASTERBOARD (WUHU) CO., LTD. TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION TO RESTRICT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS**

Knauf Plasterboard (Tianjin) Co., Ltd. ("Tianjin") and Knauf Plasterboard (Wuhu) Co.,

Ltd. ("Wuhu") submit this opposition to the Plaintiffs' Steering Committee's ("PSC") motion to

restrict communications with putative class members.[1]

### INTRODUCTION

The PSC seeks to restrict communications with property owners concerning efforts to

repair homes and otherwise resolve property damage claims arising from Chinese drywall.  Such

communications between homebuilders or suppliers and property owners have led to the repair

of more than one thousand homes affected by Chinese drywall at no cost to the property owners.

---

[1]     KPT and Wuhu submit this opposition in *Payton*, in which they have been served.
        Guangdong Knauf New Building Materials Products Co., Ltd. ("Dongguan") and Knauf
        Gips KG ("Gips") have not been served in *Payton*.  (For the purposes of this motion and
        for convenience only – and without prejudice to their position regarding the separateness
        of each corporate entity – KPT, Wuhu, Dongguan and Gips are referred to as "Knauf" in
        this opposition.)  The PSC also filed this motion in *Rogers, et al. v. Knauf Gips KG, et
        al.*, No. 10-362 (E.D. La.).  None of KPT, Wuhu, Dongguan or Gips have been served in
        *Rogers*.  The points in this submission would apply equally to the identical relief that the
        PSC seeks in *Rogers*.



Those property owners are now (or soon will be) living in homes free of Chinese drywall and the problems associated with it. The PSC has not submitted any evidence from those property owners concerning complaints about the scope or quality of the repair work done in their homes.

By this motion, the PSC seeks to impede those reasonable settlement efforts for a fourth time. On three previous occasions, putative class plaintiffs or the PSC have sought to prevent or impede homebuilders from communicating with property owners concerning problems arising from installation of Chinese drywall in their homes. Three federal courts, including this Court, denied that relief with the proviso that homebuilders inform property owners that they have the right to consult with counsel.

Thus, prior to transfer of putative class actions to this Court, two federal courts denied plaintiffs' motions to impede settlement communications between homebuilders and property owners. *See Culliton v. Taylor Morrison Servs., Inc.*, No. 8:09-cv-598-T-27TGW, Order (M.D. Fla. May 26, 2009) (attached as Exhibit 1); *Minafri v. M/I Homes, Inc.*, No. 2:09-cv-167, Order (S.D. Ohio Apr. 27, 2009) (attached as Exhibit 2). Most recently, on September 24, 2009, this Court denied the PSC's emergency motion to protect class members and fairly conduct the action by which the PSC sought to impede communications between homebuilders and property owners that have resulted in repair of homes containing Chinese drywall. Minute Entry, September 24, 2009 [MDL Docket No. 278.] At that time, the Court found that the PSC had failed to carry its burden to establish a "clear record demonstrating misleading information or coercive or abusive communication," which "[a]s I read the law, [is] what's necessary" to justify the order that the PSC seeks. Sept. 24, 2009 Tr. at 15. The Court also directed "the parties to advise property owners that they have the right to consult with counsel" and advise them "of the multi-district litigation and website address." Minute Entry, Sept. 24, 2009 [MDL Docket No. 278.]

In its motion papers, the PSC does not even mention this Court's prior order (or those of the two other federal courts that have denied similar relief) much less explain why changed circumstances require reconsideration of that order.  The only evidence offered in support of the PSC's renewed motion is two news reports that Knauf has entered into a settlement with a homebuilder and may be involved in settlement negotiations with other homebuilders.

As to Knauf, the PSC's motion is based on several incorrect factual premises.  Knauf has not initiated contact nor settled with any unrepresented property owner concerning these matters.[2]  All that Knauf has done is agreed to contribute towards costs already incurred (or scheduled to be incurred) by certain homebuilders or suppliers in repairing homes containing KPT's drywall.  In consideration for those payments, Knauf has obtained releases of the *homebuilders'* or *suppliers'* claims against Knauf relating to property damage arising from the installation of KPT drywall.  In previously entered settlements with the property owners, the homebuilders or suppliers obtained releases of the property owners' property damage claims against them and an assignment or release of the property owners' property damage claims against other entities, including Knauf.  These releases and assignments are understandably required by homebuilders or suppliers that enter into settlements to remediate property owners' homes.

As to the homebuilders or the suppliers, the PSC has not submitted any evidence that any homebuilder or supplier has engaged in misleading, coercive or abusive communications.  Nor

---

[2]     Some unrepresented property owners have initiated contact with Knauf, but to date none has resulted in a settlement.  Knauf also has had settlement discussions with counsel for represented property owners.

Some homebuilders have retained ownership in homes built by them.  In this brief, homebuilders who are also property owners are treated as homebuilders.  Tenants of property owners are treated as property owners in this brief.

has the PSC submitted any evidence that any homebuilder or supplier has failed to comply with this Court's direction to inform property owners that they have the right to consult with counsel and of this litigation and the Court's website. Absent a "clear record" of such abuse, the PSC's proposed restrictions on settlement discussions would violate Local Rule 23.1.D, binding U.S. Supreme Court precedent in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), and Knauf's First Amendment rights.

Subject to its previous order, this Court already has determined that the homebuilders are permitted to engage in settlement discussions with property owners and in some cases "have a right and perhaps even a duty to seek and to remedy the conditions caused by their installation of defective Chinese drywall." Sept. 24, 2009 Tr. at 15. There can be nothing misleading, coercive or abusive to property owners about Knauf's agreements with homebuilders to contribute to the homebuilders' costs of repair or discussions towards that end.

As a result, there is no legal basis for the "curative notice" that the PSC proposes be sent to property owners at defendants' expense, which would tout the outcomes in the *Germano* and *Hernandez* cases in this Court and the *Seifart* verdict in a Florida state court that has not yet been converted to a judgment as the trial court is still considering post-trial motions. Moreover, there is no need for such relief because those outcomes already have been publicized broadly. Even the articles on which the PSC relies concerning publicity about KPT's settlement with a homebuilder also report on the *Germano* and *Hernandez* outcomes. *See* PSC Mem. Ex. A, B.

Property owners have all the information that they need to make informed decisions concerning the relative merits of, on the one hand, settlement proposals offered by homebuilders versus, on the other hand, litigation against manufacturers, homebuilders and others. In light of this Court's prior order, property owners will be informed that they have the right to consult

independent counsel on those issues. The risks associated with this litigation to property owners are considerable, including the risk and delay associated with enforcing any judgments obtained against foreign entities in foreign countries. The PSC's motion presumes that property owners would prefer a paper judgment subject to appeals and post-appeal enforcement proceedings in foreign countries to actually having their homes repaired. But some property owners may prefer the certainty of timely repair of their homes under a settlement with their homebuilders or suppliers to the uncertainty, expense and delay associated with this litigation. Permitting the property owners to make those decisions will hasten the resolution of this litigation and the timely repair of homes with Chinese drywall damage. That is Knauf's goal, which should be shared by every other party to this litigation.

## STATEMENT OF FACTS

These actions involve 2,068 (*Payton*) and 522 (*Rogers*) owners of real property who allege that their property contains defective drywall manufactured by Knauf.[3] Plaintiffs allege that the drywall "releases sulfide and other noxious gases," which "causes corrosion and damage to personal property" and personal injury. *Payton* Complaint ¶¶ 2611-13. Plaintiffs seek to represent a class of "[a]ll owners and residents (past or present) of real property located in the United States containing defective Chinese drywall manufactured, sold, distributed and/or supplied by Knauf." *Payton* Complaint ¶ 2261. In addition, plaintiffs seek to represent numerous subclasses who are asserting claims against distributors/suppliers of Chinese drywall, importers/exporters/brokers of Chinese drywall, builders/developers of homes containing Chinese drywall, and contractors/installers of Chinese drywall.

---

[3]     By motions filed on July 9, 2010, an additional 383 plaintiffs have sought to intervene in *Payton* and an additional 29 plaintiffs have sought to intervene in *Rogers*. KPT opposes the intervention in *Payton* for the reasons set forth in its concurrently filed opposition.

Knauf consistently has expressed its desire to resolve property damage claims, including by remediating homes containing KPT drywall at a reasonable cost. Toward that end, Knauf has entered into settlement agreements with some like-minded homebuilders, including Beazer Homes Corp. ("Beazer"), that already have agreed with some of their customers to remediate homes, which contained KPT drywall. As disclosed in previous proceedings, some homebuilders have entered into agreements with some property owners providing for repair of homes containing Chinese drywall, releases of the property owners' property damage claims against the homebuilders and assignment of the property owners' property damage claims against other parties to the homebuilders. Sept. 24. 2009 Tr. at 7-15.

Pursuant to its settlement agreements, Knauf agreed to pay some costs associated with remediation of homes containing KPT drywall that the homebuilders have or are in the process of repairing. In consideration for those payments, Knauf obtained a release of the homebuilders' claims against Knauf relating to property damage allegedly caused by KPT drywall in the repaired homes.[4] Knauf also has had ongoing settlement discussions with other homebuilders and others in the stream of distribution that have repaired homes or plan to do so.

In connection with such settlements and settlement discussions, Knauf has not initiated contact with any unrepresented property owner.

## ARGUMENT

A.   **The PSC Has The Burden To Show That Knauf Has Engaged In Misleading, Coercive Or Abusive Communications With Putative Class Members**

Under Local Rule 23.1.D.1 of this Court, where, as here, a party seeks to restrict communications "with any potential or actual class member not a formal party to the action,"

---

[4]   Knauf has entered into similar agreements with a supplier.

that party "must set forth with particularity the abuses they fear will result from such communication, along with the form of remedy they believe would be appropriate to prevent frustration of the policies of Rule 23." In addition, the Local Rule specifically provides:

> The court will not enter an order prohibiting communications with members of the class in the absence of a clear record (and when necessary, an evidentiary hearing) reflecting:
>
> a.    specific findings regarding the abuse the court seeks to prevent;
>
> b.    the need for such an order, weighing the abuse sought to be corrected and the effect it will have on the right of a party to proceed pursuant to Rule 23 without interference.

Local Rule 23.1.D.2

Local Rule 23.1.D derives from the seminal case of *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). In that case, the Supreme Court limited a district court's authority to restrict communications between parties or their counsel and putative members of an uncertified class. In particular, the Court held that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101; *see id.* at 102 (a district court cannot restrict communications absent "'a specific record showing by the moving party of the particular abuses by which it is threatened'" (citation omitted)). Because an order to restrict communication implicates the First Amendment, in considering such orders, the district court must determine "whether the restraint is justified by a likelihood of serious abuses." *Id.* at 104. The "mere possibility of abuses does not justify" entry of such orders. *Id.*

Even prior to *Gulf Oil*, it had long been held that, prior to certification of a class, defendants have the right to engage in non-misleading, non-coercive settlement discussions with

putative class members. As Judge Friendly explained for the Second Circuit: "we are unable to perceive any legal theory that would endow a plaintiff who has brought what would have been a 'spurious' class action under former Rule 23 with a right to prevent negotiation of settlements between the defendant and other potential members of the class who are of a mind to do this …." *Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc.*, 455 F.2d 770, 773 (2d Cir. 1972); *accord Christensen v. Kiewit-Murdock Investment Corp.*, 815 F.2d 206, 213 (2d Cir. 1987) ("at least prior to class certification, defendants do not violate Rule 23(e) by negotiating settlements with potential members of a class"); 2 Joseph M. McLaughlin, *McLaughlin on Class Actions: Law and Practice* § 11:1 (6th ed. 2010) ("a defendant pre-certification ordinarily may communicate noncoercive or abusive, written settlement offers directly to putative class members").

Since *Gulf Oil*, and consistent with the standard set forth in Local Rule 23.1.D.2, as the Manual for Complex Litigation confirms: "Most judges are reluctant to restrict communications between the parties or their counsel and potential class members, except when necessary to prevent serious misconduct." *Manual for Complex Litigation* (4th ed. 2006) § 21.12. In particular, "[d]efendants and their counsel generally may communicate with potential class members in the ordinary course of business, ***including discussing settlement before certification*** but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3)." *Id.* (emphasis added).

For example, in *Turner v. Murphy Oil USA, Inc.*, No. 05-4206, slip op. at 7 (E.D. La. Nov. 10, 2005) (attached as Exhibit 3), this Court held that a defendant could communicate with putative class members in an effort to resolve property damage claims resulting from an oil spill

where the defendant was "not in a position to force individuals into settlement" and "Plaintiffs have not presented evidence of threats or coercion." The Court required that any such communications inform putative class members that "the individual has a right to consult with an attorney prior to any settlement or waiver of legal rights." *Id.* at 8.[5]

---

[5]    *Accord In re M.L. Stern Overtime Litig.*, 250 F.R.D. 492, 500 (S.D. Cal. 2008) ("Plaintiffs have failed to establish that Defendant's communications with Account Executives were coercive or ethically improper"); *Kay Co., LLC v. Equitable Prod. Co.*, 246 F.R.D. 260, 263 (S.D. W. Va. 2007) (denying motion to bar communications with putative class members where "plaintiffs have not directed the court to any evidence which indicates that the defendants have attempted to coerce putative class members into excluding themselves from the class or undermined cooperation with or confidence in the plaintiffs' counsel;" "[c]laims that the defendant merely communicated a settlement offer to a putative plaintiff will not provide the basis for a limitation"); *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 295, 298 (D. Mass. 2004) (denying motion to bar communications with putative class members where "there is no evidence that Defendant abused the class action process or was involved in misleading communications"); *Cox Nuclear Medicine v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003) (denying motion to bar communications with putative class members where plaintiff failed to satisfy its "burden of showing that the defendant's communication with putative class members is 'abusive'"); *Keystone Tobacco Co. v. United States Tobacco Co.*, 238 F. Supp. 2d 151, 159 (D.D.C. 2002) (denying motion to bar communications with putative class members where "plaintiffs have not presented a 'clear record' of abuses that would justify precluding settlement discussions with direct purchasers"); *Payne v. Goodyear Tire & Rubber Co.*, 207 F.R.D. 16, 20 (D. Mass. 2002) ("an order barring ex parte communication with absent plaintiffs is not justified by the record currently before the court" because "plaintiffs have failed to show that the defendant has engaged in any threatened or actual abusive or unethical communications with putative class members"); *Basco v. Wal-Mart Stores, Inc.*, 2002 WL 272384, at *4 (E.D. La. Feb. 25. 2002) (denying motion to bar communications with class members where plaintiffs "have not provided the Court with the evidence to show that Wal-Mart has abused the process or attempted to undermine the purposes of Rule 23"); *Burrell v. Crown Central Petroleum, Inc.*, 176 F.R.D. 239, 244 (E.D. Tex. 1997) (denying motion to restrict communications with putative class members where "Plaintiffs have not provided the court with evidence to show that Crown has abused the process or attempted to undermine the purposes of Rule 23").

B.    **This Court Denied The PSC's Previous Motion To Restrict Communications Between Homebuilders And Homeowners**

Applying these principles and authorities, three courts, including this Court, have denied

motions to bar homebuilders from communicating with their customers concerning repair of

homes containing Chinese drywall.  On April 27, 2009, the United States District Court for the

Southern District of Ohio denied plaintiff's motion for a temporary restraining order barring a

homebuilder from communicating with putative class members regarding Chinese drywall

because "there is no clear record demonstrating misleading information in the Letter [sent by the

homebuilder to its customers] or inherently coercive behavior on the part of Defendant M/I

Homes".  *Minafri v. M/I Homes, Inc.*, No. 2:09-cv-167, Order at 2 (S.D. Ohio Apr. 27, 2009)

(attached as Exhibit 2).

Subsequently, on May 12, 2009, the United States District Court for the Middle District

of Florida considered plaintiff's motion for a protective order declaring as void releases and

assignment of claims in agreements between a homebuilder and its customers and requiring the

homebuilder to distribute a court-approved notice concerning the litigation.  The court found that

the agreements and other documents between the homebuilders and their customers were not

"misleading," but concluded that the documents should inform the property owner that "you may

wish to contact a lawyer before you sign this document."  *Culliton v. Taylor Morrison Servs.,

Inc.*, No. 8:09-cv-598-T-27TGW (M.D. Fla.), May 12, 2009 Tr. at 39 (excerpt attached as

Exhibit 4).  Accordingly, the court granted the motion only to the extent that the court required

the homebuilder on a prospective basis to include language that informed the homeowners of

their right to consult with an attorney, if they chose to do so, prior to executing any agreement.

*Culliton v. Taylor Morrison Servs., Inc.*, No. 8:09-cv-598-T-27TGW, Order (M.D. Fla. May 26,

2009) (attached as Exhibit 1).

Most recently, on September 24, 2009, this Court denied, with the right to refile, the

PSC's motion to obtain the same relief it seeks in this motion.  Minute Entry, September 24,

2009 [MDL Docket No. 278].  At that time, the Court concluded:

> A review of the material indicates that at the present time there's no clear record
> demonstrating misleading information or coercive or abusive communication....
> At the present time, I have no record of showing that there's any abuses.  As I
> read the law, that's what's necessary.

Sept. 24, 2009 Tr. at 15.

At the same time, the Court offered the following guidelines:

> I do also advise the parties that I expect the[] [homebuilders] to tell the clients that
> the parties who have signed the releases have a right to counsel before they sign
> the releases.  Henceforth, I also want you to advise them of the MDL proceeding
> and give them the Court's Web site to that particular proceeding.  I also mention
> to the parties that this does not mean that they can't move on specific releases, for
> various reasons, if they have good reasons.

Id.; see Minute Entry, September 24, 2009 [MDL Docket No. 278].

In addition, the Court noted that, under Florida law, "the builders have a right and

perhaps even a duty to seek and to remedy the conditions caused by their installation of defective

Chinese drywall."  Sept. 24, 2009 Tr. at 15.  Under Florida law, prior to initiating litigation,

property owners are required to give notice of alleged construction defects to homebuilders and

others involved in construction of their homes.  Fla. Stat. Ann. § 558.004(1).  The homebuilder

must respond in writing within a specified period, which may contain "[a] written offer to

remedy the alleged construction defect at no cost to the claimant, a detailed description of the

proposed repairs necessary to remedy the defect, and a timetable for the completion of such

repairs."  Fla. Stat. Ann. § 558.004(5)(a).

Accordingly, it is incumbent on the PSC to establish that changed facts or circumstances

justify departure from the Court's September 24, 2009 order.  The PSC has not done so.

C.    **The PSC Has Not Carried Its Burden To Show That Knauf Or Any Homebuilder Has Provided Misleading Information Or Engaged In Coercive Or Abusive Communications With Property Owners**

1.    **There Is No Evidence Of Abuse – Let Alone A "Clear Record" – Justifying A Gag Order Restricting Settlement Discussions**

The evidence that the PSC has submitted does not differ in any material way from that which the Court found insufficient to carry the PSC's burden in September, 2009. The PSC has not submitted any evidence that Knauf or any homebuilder has engaged in misleading, coercive or abusive communications with any property owner. The PSC has not even identified any communication from Knauf or any homebuilder to any property owner that the PSC contends is misleading, coercive or abusive. Nor could it. The only "evidence" that the PSC has submitted are two news articles reporting that Knauf entered into a settlement with Beazer and is engaged in settlement discussions with other homebuilders. PSC Mem. Ex A, B. That evidence does not even remotely satisfy the PSC's burden.

In Knauf's settlement with Beazer, Knauf agreed to reimburse Beazer for costs Beazer already had incurred or will incur to repair homes of property owners with whom Beazer previously had settled. As such, Knauf's settlement with Beazer did not affect the rights of any property owner. Knauf did not communicate with those property owners. There is no basis to restrict communications between Knauf and property owners because there have been no such communications, much less misleading, coercive or abusive communications.

Moreover, the Court already has considered the propriety of communications between homebuilders and property owners concerning problems arising from Chinese drywall. The PSC does not contend that Beazer or any other homebuilder has failed to comply with this Court's direction that property owners be informed that they have the right to consult independent counsel and also be notified of the Chinese drywall multidistrict litigation and the Court's

website.  There is no basis to restrict communications between homebuilders and homeowners,
particularly in light of the fact that some homebuilders must communicate with property owners
in light of Florida law.

In sum, the PSC has not submitted any evidence that any property owner was misled or
coerced into releasing his or her property damage claims.  *See Jenifer v. Delaware Solid Waste
Auth.*, 1999 WL 117762, at *5 (D. Del. Feb. 25, 1999) ("The test for coercion is whether the
conduct somehow overpowers the free will or business judgment of the potential class
members").  Nor has any property owner who has entered into a settlement with a homebuilder
come forward independently to express dissatisfaction with the scope or quality of repairs to his
or her home or otherwise challenged the release provided to any homebuilder.  Even if any
property owner were to do so, this Court already has indicated that it would consider any such
challenge on a case-by-case basis.  Minute Entry, September 24, 2009 [MDL Docket No. 278].

### 2.   The PSC's Proposed "Curative Notice" Is Unnecessary, One-Sided And Misleading

Even though the PSC has not identified any misleading or abusive communication, the
PSC nevertheless seeks an order requiring Knauf and homebuilders to send a "curative notice" to
property owners.  The "curative notice" would tout the outcomes in the *Hernandez* and *Germano*
cases tried by this Court and the *Seifart* case tried to a jury in a Florida state court for the stated
purpose of permitting putative class members to "meaningfully decide whether to accept any
remediation program proposed to them by their home builders."  PSC Mem. at 4.  In addition to
being unauthorized by law or fact and violative of Knauf's First Amendment rights, the "curative
notice" is unnecessary, one-sided and misleading.

The proposed "curative notice" is unnecessary because there is no reason to believe that
property owners are not already aware of the outcomes in *Germano*, *Hernandez* and *Seifart*.

There has been widespread publicity concerning problems associated with Chinese drywall and the progress of Chinese drywall litigation in this Court and state courts.  The outcomes in *Germano*, *Hernandez* and *Seifart* have been reported by major broadcast and print media outlets and over the internet.  *See* Ex. 5 (publicity concerning *Germano* outcome); Ex. 6 (publicity concerning *Hernandez* outcome); Ex. 7 (publicity concerning *Seifart* outcome).  Indeed, the exhibits that the PSC has attached as evidence of the publicity associated with Knauf's settlement with Beazer themselves explicitly address the *Hernandez* and *Germano* outcomes.[6] PSC Mem. Ex. A ("Last month, a federal judge in New Orleans, who is presiding over all the defective drywall, cases against Chinese drywall makers, ruled that Knauf must pay $164,000 in damages, plus attorneys' fees and costs, to a Louisiana couple" and "in a separate case, the same judge ruled that another Chinese drywall manufacturer, Taishan Gypsum Company, must pay a total of $2.6 million to seven Virginia homeowners"); PSC Mem. Ex. B ("Last week U.S. District Judge Eldon E. Fallon awarded over $164,000 to the plaintiffs in that lawsuit" and "mandated that the plaintiffs' home be gutted down to the studs").  In addition, the *Germano* and *Hernandez* outcomes are displayed on this Court's website to which property owners who communicate with their homebuilders are referred.

The circumstances here are no different than those confronted by this Court in the *Murphy Oil* litigation:

> Plaintiffs also underestimate their own media access .…  The present cases have been well publicized, and Plaintiffs' counsel have taken out their own advertisements regarding the oil spill.  In addition, local government and federal agencies have made much information available about the oil spill and its effects. This is not a case in which a defendant has a monopoly on the information available to putative class members.

---

[6]     The news articles pre-date the *Seifart* verdict.

*Turner v. Murphy Oil USA, Inc.*, No. 05-4206, slip op. at 7 (E.D. La. Nov. 10, 2005) (attached as Exhibit 3).

Moreover, the PSC's proposed "curative notice" is itself one-sided and misleading. It does not include any information concerning the uncertainty, expense and delay associated with litigation, which would be necessary to an informed decision about the relative costs and benefits associated with settlements as proposed by homebuilders and litigation.

For example, the proposed "curative notice" does not inform property owners of the potential risks of not being able to collect on a judgment. Even if a property owner obtains a judgment against one or more defendants, there is no guarantee if or when that might result in repair of that property owner's home. Even if those judgments survive appeals, there are significant collection risks facing property owners. Property owners who obtain judgments against KPT, the manufacturer of the drywall, will have to enforce their judgments in China which, because of a lack of reciprocity by United States courts in enforcing Chinese judgments, has not enforced United States judgments in the past. *See* Donald C. Clarke, *The Enforcement of United States Court Judgments in China: A Research Note*, The George Washington University Law School Public Law and Legal Theory Working Paper No. 26 (May 27, 2004) (available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=943922). The same risks of non-collection pertain to other Chinese manufacturers. The proposed "curative notice" does not disclose these risks.

The proposed "curative notice" does not discuss the risks associated with plaintiffs' claim against Gips. For example, the proposed notice does not disclose the potential need to pierce the corporate veil in order to obtain enforceable relief, nor the risk that plaintiff may not prevail on that issue at trial or on appeal. Moreover, a German court, like a United States court enforcing a

foreign judgment, must determine whether the court which rendered the judgment had

jurisdiction and whether the judgment violates public policy. *See* Wolfgang Wurmnest,

*Recognition and Enforcement of U.S. Money Judgments in Germany*, 23 Berkeley J. Int'l L. 175,

189-98 (2005). Thus, even if a property owner could obtain a judgment against Gips on an alter-

ego theory, and that judgment survived appeal, the property owner would have to enforce that

judgment in Germany. In deciding whether to enforce such a judgment, a German court would

make its own determinations whether this Court properly exercised personal jurisdiction over

Gips, including jurisdiction under alter ego theories, and whether subjecting Gips to discovery

other than through Hague Convention procedures rendered the judgment unenforceable under

international treaty obligations. The proposed "curative notice" does not disclose this risk.

In addition, if property owners are unable to collect on their judgments, they will have

incurred substantial out-of-pocket costs (*e.g.*, experts, transcripts) for which they are personally

liable under their contingency fee agreements.[7] The proposed "curative notice" does not disclose

this risk.

Not only does the proposed "curative notice" fail to discuss litigation risks, it also does

not discuss delay associated with litigation. It could take years for appeals and foreign

enforcement proceedings to conclude and there is no guarantee that they will result in

satisfaction of any judgment. Furthermore, even assuming that any property owner obtains and

recovers a monetary judgment at some point in time, that property owner would still need to

retain contractors to make repairs to his or her home and would be responsible for amounts, if

any, in excess of the judgment. Again, this is not discussed in the proposed "curative notice."

---

[7]   For example, the Hernandez contingency fee agreement states: "Out of our recovery, in
      addition to paying Attorneys' Fees, we agree to pay all costs Attorney incurs during the
      handling of this matter out of any settlement and/or judgment." *See* Ex. 8.

Furthermore, whether repairs performed by homebuilders or suppliers pursuant to settlement agreements with property owners are identical in every respect to the relief ordered in *Germano* and *Hernandez* is beside the point. Property owners may reasonably agree to a compromise that provides them with most of the relief they might receive in litigation but which avoids the litigation risks that they might never obtain any enforceable relief or might have to wait years to repair their homes.

The PSC also professes concern that "the reported settlements [will not] result in recoveries for homeowners at the average per square foot rates determined by this Court as necessary to accomplish full remedial work." PSC Mem. at 4. Under the terms of their agreements with property owners, homebuilders and suppliers are repairing homes containing Chinese drywall at *no cost* to the property owners, *i.e.*, the property owners are obtaining specific performance. For property owners who obtain specific performance, the "average" cost incurred by the homebuilders or suppliers to make repairs is immaterial. What matters if one's home is being repaired at *no cost* is that the repair is done properly. There is no evidence of any complaints.

### 3.     Summary

In light of this Court's prior order, property owners have access to all the relevant information concerning this litigation and are informed that they have the right to consult independent counsel if they wish to assess the relative benefits and risks of settlement proposals from homebuilders and litigation. Thus, "[t]he communications here relate to a business proposition which potential class members are free to reject if they decide the costs outweigh the benefits." *Jenifer v. Delaware Solid Waste Auth.*, 1999 WL 117762, at *5 (D. Del. Feb. 25, 1999). Under those circumstances, there is no reason for concern if some property owners prefer

the certainty of timely repairs to their homes at no cost to them to the uncertainty, expense and delay of litigation. *See id.* at *6 ("Both waste haulers are willing to trade the certainty of a favorable settlement for the uncertainty of protracted litigation"). The Court should not intervene in this process.

### D.     The PSC's Cases Do Not Justify The Relief That It Seeks

The PSC relies on the same cases that they cited when this Court denied their previous motion to restrict communications between homebuilders and property owners. Those cases are no more compelling on this renewed motion.

Some of the cases on which the PSC relies were decided prior to *Gulf Oil* in which the Supreme Court limited the authority of federal courts to order the relief that the PSC seeks.[8] Prior to *Gulf Oil*, the *Manual for Complex Litigation* recommended a Local Rule, which this Court adopted, barring any communication by parties and their counsel with putative class members in every potential and actual class action. *See Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 782, 786, 789 (E.D. La. 1977). The revised versions of the *Manual* and this Court's Local Rule reflect the Supreme Court's holding in *Gulf Oil* and confirm that "[d]efendants and their counsel generally may communicate with potential class members in the ordinary course of business, ***including discussing settlement before certification* ....**" *Manual for Complex Litigation* (4th ed. 2006) § 21.12 (emphasis added); *see* Local Rule 23.1.D.

Many of the cases on which the PSC relies involve coercive communications for the purpose of convincing class members to opt out of a certified class or not to cooperate with class

---

[8]     *See Erhardt v. Prudential Group, Inc.*, 629 F.2d 843 (2d Cir. 1980); *Zarate v. Younglove*, 86 F.R.D. 80 (C.D. Cal. 1980).

counsel.[9]  Such communications interfere with the court's authority to provide notice to the class

so that the class members can make an informed decision whether to participate or opt out. *See,*

*e.g., Kleiner,* 751 F.2d at 1202-03.  Those concerns are not implicated here where no class has

been certified and there has been no notice to class members.

Moreover, prior to certification, the PSC "has no attorney-client relationship with

putative class members that would automatically preclude" direct communication with them

under ethical rules. *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 4401970, at *2 (E.D.

La. Sept. 22, 2008); *accord* 2 Joseph M. McLaughlin, *McLaughlin on Class Actions:  Law and*

*Practice* § 11:1 (6th ed. 2010) ("The majority rule is that while named plaintiffs are clients of

class counsel precertification, absent class members are not represented parties prior to class

certification, and thus neither the ethical rules governing communications with represented

parties nor the attorney-client privilege, are applicable precertification").

---

[9]     *See In re School Asbestos Litig.*, 842 F.2d 671, 682 (3d Cir. 1988) (advocacy
organization created by defendants made misleading communications to members of
certified class for purpose of "influencing class plaintiffs' responses to the presence of
asbestos in their schools"); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202
(11th Cir. 1985) (defendant bank solicited opt outs from certified class of customers
"many of whom were dependent on the Bank for future financing"); *Haffer v. Temple
Univ. of the Commonwealth Sys. of Higher Educ.*, 115 F.R.D. 506, 511 (E.D. Pa. 1987)
(defendant engaged in misleading and unethical communications with student class
members, which "were designed to discourage class members from meeting with class
counsel"); *In re Federal Skywalk Cases*, 97 F.R.D. 370, 377 (W.D. Mo. 1983)
(defendants "sought the vehicle of a state court class action to disseminate information to
… members" of a class certified by a federal court, thereby "evidenc[ing] a deliberate
attempt to evade [the federal] Court's supervisory authority"); *Resnick v. American
Dental Ass'n*, 95 F.R.D. 372, 377 (N.D. Ill. 1982) (defendant not permitted to
communicate with members of certified class because "the unnamed class members, once
the class has been certified, are 'represented by' class counsel"); *Impervious Paint Indus.,
Inc. v. Ashland Oil*, 508 F. Supp. 720, 722-23 (W.D. Ky. 1981) (defendant contacted
customers of certified class during opt-out period to warn them "of the need to
affirmatively opt out if the class member wished to avoid being included in the class, …
that evidentiary proof of claim would be required in order to recover, and … that a class
member who failed to opt out might be subject to discovery and other legal procedures").

Other cases on which the PSC relies involve on-going business relationships between the defendant and putative class members that render communications by the defendant inherently coercive. For example, in *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 632-33 (N.D. Tex. 1994), a wholesaler warned its member-owners, which also were putative class members, "of the potential cost" of participating in the class, "specifically advised [them] not to participate in the lawsuit," and "told [them] that by participating in the lawsuit they are suing themselves." The court found that the putative class members were "particularly susceptible to believing defendant's comments that the lawsuit will cost them money" because they "must necessarily rely upon the defendant for dissemination of factual information regarding hardware goods and for lower prices in purchasing those goods." *Id.* at 633; *see Kleiner*, 751 F.2d at 1202 (communications between bank and its borrowers who were putative class members "many of whom were dependent on the Bank for future financing"); *Ralph Oldsmobile Inc. v. General Motors Corp.*, 2001 WL 1035132, at *4 (S.D.N.Y. Sep. 7, 2001) (defendant communicated with its franchisees which were putative class members and "depend upon the defendant for information, supplies and credit" without notifying them that class action was pending).

There is no ongoing business relationship between homebuilders or suppliers and property owners that renders the property owners particularly susceptible to coercive communications from homebuilders. Nor is there any such relationship between Knauf and property owners. In any event, there have been no misleading or coercive communications from Knauf to property owners, and we are aware of no evidence of misleading communications from homebuilders or suppliers.

Another case on which the PSC relies involves "widespread solicitation of representation by numerous unidentified attorneys" after class certification. *See In re Shell Oil Refinery*, 152

F.R.D. 526, 533 (E.D. La. 1989). The court ordered that only the Plaintiffs' Legal Committee and individually retained counsel could initiate contact with the class members, which was "composed of mainly unsophisticated and unmoneyed people, who are susceptible to pressure from unscrupulous lawyers seeking as many 40% contingency fee contracts as possible." *Id.* at 534.[10] That concern plainly does not justify the relief that the PSC seeks here. Moreover, unlike *Shell*, there is no certified class in this multi-district litigation.

Several other cases on which the PSC relies ordered what this Court has already done: notice to putative class members of the pending litigation and their right to consult with counsel to consider their options. *See Burford v. Cargill, Inc.*, 2007 WL 81667, at *2 (W.D. La. Jan. 9, 2007) ("the Court finds that the release, if coupled with a notification or cautionary statement concerning the pending litigation above the signature line, may be adequate"); *Ralph Oldsmobile*, 2001 WL 1035132, at *6 ("Requiring that notice be provided is sufficient to cure any potential unknowing waivers"); *Jenifer*, 1999 WL 117762, at *7 (defendant "must give [putative class members] adequate notice of the pendency of this action and that by signing the release they forfeit their right to participate in this litigation"). The PSC has provided no basis for the Court to do anything further here.

---

[10]   *See also In re Community Bank of Northern Virginia*, 418 F.3d 277, 310-11 (3d Cir. 2005) (ban on misleading communications from plaintiffs' firms attempting to solicit opt outs from or objectors to a settlement class reversed because district court order "ran afoul of the *Gulf Oil* holding requiring specification and articulated weighing of the relevant factors to ensure that the chosen remedy be restricted to the minimum necessary to correct the alleged misconduct"); *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 490-91 (E.D. Pa. 1995) (misleading communications from plaintiffs' firms attempting to solicit opt outs from or objectors to a settlement class).

## CONCLUSION

For the reasons set forth above, this Court should deny the PSC's motion to restrict communications with putative class members.

Dated: August 4, 2010                           Respectfully submitted,


                                        By:  /s/ Kyle A. Spaulding
                                        STEVEN GLICKSTEIN (NY Bar No. 1038157)
                                        JAY P. MAYESH (NY Bar No. 1081603)
                                        KAYE SCHOLER LLP
                                        425 Park Avenue
                                        New York, NY 10022
                                        Telephone:  (212) 836-8485
                                        Facsimile:  (212) 836-6485
                                        Email:  sglickstein@kayescholer.com

                                             - AND -

                                        MILES P. CLEMENTS (#4184)
                                        PETER E. SPERLING (#17812)
                                        KERRY J. MILLER (#24562)
                                        KYLE A. SPAULDING (#29000)
                                        PAUL C. THIBODEAUX (#29446)
                                        FRILOT L.L.C.
                                        1100 Poydras Street
                                        Suite 3700
                                        New Orleans, LA 70163
                                        Telephone:  (504) 599-8194
                                        Facsimile:  (504) 599-8145
                                        Email:  kmiller@frilot.com

                                        Counsel for Defendants Knauf Plasterboard
                                        (Tianjin) Co., Ltd. and Knauf Plasterboard (Wuhu)
                                        Co., Ltd.