**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition of Knauf Plasterboard (Tianjin)

Co., Ltd. and Knauf Plasterboard (Wuhu) Co., Ltd. to Plaintiffs' Steering Committee's Motion to

Restrict Communications With Putative Class Members has been served upon Plaintiffs' Liaison

Counsel by email and by electronically uploading the same to LexisNexis File & Serve in

accordance with Pre-Trial Order No. 6, on this 4th day of August, 2010.

/s/ Kyle A. Spaulding

# EXHIBIT 1

Case 2:09-md-02047-EEF-MBN   Document 7386-7   Filed 02/09/11   Page 3 of 22

Case 2:09-md-02047-EEF-JCW   Document 4824-1   Filed 08/04/10   Page 2 of 3

Case 2:09-md-02047-EEF-JCW   Document 249-1   Filed 09/21/09   Page 80 of 81
Case 8:09-cv-00589-JDW-TGW   Document 48   Filed 05/26/2009   Page 1 of 2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KRISTIN MORGAN CULLITON,

      Plaintiff,

v.                         CASE No. 8:09-CV-589-T-27TGW

TAYLOR MORRISON SERVICES,
INC., et al.,

      Defendants.

---

O R D E R

THIS CAUSE came on to be heard upon the Plaintiff's Motion for Protective Order (Doc. 10) and the defendant's response thereto (Doc. 19). Based upon the reasons set forth at the hearing, the motion will be granted to the extent that the Taylor Morrison's fact sheet shall include language regarding the homeowners' right to an attorney. The parties subsequently filed a notice of agreed language (Doc. 47).

      It is, therefore, upon consideration

      ORDERED:

      That the Plaintiff's Motion for Protective Order (Doc. 10) be, and the same is hereby, **GRANTED** to the extent that the fact sheet sent by Taylor Morrison to homeowners shall include the following language: "The

Case 2:09-md-02047-EEF-MBN   Document 7386-7   Filed 02/09/11   Page 4 of 22

Case 2:09-md-02047-EEF-JCW   Document 4824-1   Filed 08/04/10   Page 3 of 3

Case 2:09-md-02047-EEF-JCW   Document 249-1   Filed 09/21/09   Page 81 of 81
Case 8:09-cv-00589-JDW-TGW   Document 48   Filed 05/26/2009   Page 2 of 2

Repair and Relocation Agreement is a legally binding contract, which may

affect your legal rights. You have the right to consult with an attorney should

you choose to do so, prior to executing the Agreement."

DONE and ORDERED at Tampa, Florida, this ___ day of May,

2009.

_____

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 2

Case 2:09-md-02047-EEF-MBN   Document 7386-7   Filed 02/09/11   Page 6 of 22

Case 2:09-md-02047-EEF-JCW   Document 4824-2   Filed 08/04/10   Page 2 of 3

Case 2:09-md-02047-EEF-JCW   Document 249-2   Filed 09/21/09   Page 66 of 71
Case 2:09-cv-00167-ALM-NMK   Document 12   Filed 04/29/09   Page 1 of 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEVEN MINAFRI,                              :
                                             :
                    Plaintiff,               :    Case No. 2:09-cv-167
                                             :
                                             :
                                             :    JUDGE ALGENON L. MARBLEY
M/I HOMES, INC., et al.,                     :    Magistrate Judge King
                                             :
                                             :
                    Defendant.               :

## ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER

This case involves Plaintiff's claim that Defendants manufactured, sold, and installed

defective drywall that contains sulfur and other organic compounds that are injurious to human

health.  Plaintiff Steven Minafri ("Minafri") has filed this action as a class action, however, the

Court has not yet ruled on the issue of class certification.  Now before the Court is Minafri's

Motion for a Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 23(d).

(Doc. no. 8.)

Minafri asks the Court to enjoin Defendant M/I Homes, Inc. from communicating with

putative class members without obtaining prior approval from the Court or the agreement of

Plaintiff's counsel.  Minafri's Motion centers around an April 24, 2009 letter that M/I Homes

sent to putative class members who owned houses built by M/I Homes.[1]  The Letter offered to

remove the drywall from putative class members houses in exchange for a limited release and

assignment of certain claims against M/I Homes.  Minafri contends that the Letter was

misleading and improper, warranting injunctive relief under Rule 23(d).

---

[1] Minafri's Motion also asked the Court to enjoin M/I Homes from sending the Letter in
its present form, however, the Court learned during the hearing on the Motion that the Letter had
already been sent on April 24, 2009.

Case 2:09-md-02047-EEF-MBN   Document 7386-7   Filed 02/09/11   Page 7 of 22

Case 2:09-md-02047-EEF-JCW   Document 4824-2   Filed 08/04/10   Page 3 of 3

Case 2:09-md-02047-EEF-JCW   Document 249-2   Filed 09/21/09   Page 67 of 71
Case 2:09-cv-00167-ALM-NMK   Document 12   Filed 04/29/09   Page 2 of 2

A preliminary informal conference on Minafri's Motion was held by telephone on Monday, April 27, 2009, pursuant to S.D. Ohio Civ. R. 65.1(a). In attendance were counsel for Minafri and counsel for M/I Homes. Upon consideration of Minafri's briefs and exhibits and the arguments of the parties, and for the reasons set forth on the record during the April 27, 2009 hearing, the Court finds that there is no clear record demonstrating misleading information in the Letter or inherently coercive behavior on the part of Defendant M/I Homes. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981) (order limiting communications between parties and potential class members must be based on a clear record of particular abuses); *In re M.L. Stern Overtime Litig.*, 250 F.R.D. 492, 500 (S.D. Cal. 2008) (pre-certification communication of settlement offer to putative class members was not misleading or coercive and, thus, not improper). Accordingly, the Court **DENIES** Minafri's Motion for a Temporary Restraining Order.

The Court further orders that a preliminary injunction hearing shall be held on **Monday, May 18, 2009 at 9:30 a.m.** The briefing schedule for that hearing, to include only opening and reply briefs, will be as follows:

> **May 4, 2009, at 4:00 p.m.**: opening briefs from both parties <u>not to exceed 15 pages</u> in length are due.

> **May 11, 2009, at 4:00 p.m.**: reply briefs, <u>not to exceed 5 pages</u> in length are due.

> **IT IS SO ORDERED.**

_____s/Algenon L. Marbley_____
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE: April 27, 2009**

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV 14   AM 10: 46

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| PATRICK JOSEPH TURNER, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NO. 05-4206 |
| | | CONSOLIDATED CASE |
| MURPHY OIL USA, INC. | * | SECTION "L" (2) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**THIS DOCUMENT RELATES TO ALL CASES**

### ORDER AND REASONS

Before the Court is the Plaintiffs' Motion to Supervise Ex Parte Communications

Between Defendant and Putative Class Members. This motion came on for hearing before the

Court with oral argument on November 3, 2005. For the following reasons, the motion is hereby

GRANTED IN PART.

I.   **Factual and Procedural Background**

These consolidated cases arise from one of the more unfortunate events that occurred

after Hurricane Katrina struck southeastern Louisiana earlier this year. Sometime in the first few

days of September 2005, a day or so after Katrina struck, a crude oil tank at the refinery owned

by Defendant Murphy Oil USA, Inc. ("Murphy Oil") in Meraux, Louisiana discharged an

unknown quantity of crude oil into the surrounding area in St. Bernard Parish. The exact number

is unknown at this point, but it is contended that several thousand homes received some oil from

the spill.

Plaintiffs are residents of St. Bernard Parish who allege that the oil spill damaged their

properties. Plaintiffs have filed nineteen class action lawsuits which have been consolidated

-1-

Fee _____
Process _____
X Dktd _____
✓ CtRmDep _____
Doc. No. _____

Case 2:09-md-02047-EEF-MBN   Document 7386-7   Filed 02/09/11   Page 10 of 22
Case 2:09-md-02047-EEF-JCW   Document 4824-3   Filed 08/04/10   Page 3 of 13

Case 2:05-cv-04206-EEF-JCW   Document 39   Filed 11/14/05   Page 2 of 12

before this Court. On September 27, 2005, Plaintiffs' counsel in *Tommy Duckert, et al. v. Murphy Oil USA, Inc.*, Civil Action Number 05-4210, filed a Motion to Enjoin Any and All Ex Parte Communication Between Murphy Oil and Putative Class Members. Plaintiffs alleged that representatives of Murphy Oil were issuing inaccurate and overreaching statements to residents of St. Bernard Parish. That motion came on for expedited hearing on October 4, 2005, and was denied on that date. The Court held that there was no need for a blanket order prohibiting all communication between the Defendant and residents of St. Bernard Parish based upon the record at that time. The Court determined that such an order would unduly infringe upon Murphy Oil's First Amendment rights and was not justified by any specific evidence of coercion or duress. However, Plaintiffs retained their rights to challenge individual communications by Murphy Oil.

Thereafter, Murphy Oil has continued to issue informational communiques and have undertaken to make settlement proposals to residents who have contacted Murphy Oil and expressed an interest in amicably resolving their damage. On October 25, 2005, Plaintiffs filed the present Motion to Supervise Ex Parte Communications Between Defendant and Putative Class Members. The motion was set for expedited hearing with oral argument on November 3, 2005.

## II.   Plaintiffs' Motion to Supervise Ex Parte Communications Between Defendant and Putative Class Members

Plaintiffs' present motion is somewhat different from their previous motion in that it asks the Court to supervise, rather than completely prohibit, communications between Murphy Oil and putative class members. In particular, Plaintiffs seek the following relief: 1) prohibition of

-2-

communications between Murphy Oil and putative class members unless the communications are recorded or transcribed; 2) filing of all written communications and oral transcripts between Murphy Oil and putative class members with the Court; 3) requirement that all settlement offers be in writing and provide for a 14-day cooling-off period; 4) requirement that all settlement offers give notice to the putative class member of the present litigation; 5) requirement that all settlement offers warn putative class members to seek legal advice prior to settlement; and 6) requirement that all settlement offers contain a statement that the agreement waives all rights to pursue litigation in the future.

In their motion, Plaintiffs argue that Murphy Oil's communications with residents of St. Bernard Parish threaten to undermine the purpose of the class. Moreover, putative class members may be unduly influenced by Murphy Oil's strategies due to the severe financial hardships many face, Plaintiffs argue. In addition, Plaintiffs suggest that Murphy Oil's communications are misleading and require the Court's monitoring. Plaintiffs point to Murphy Oil's communications in mass media, their use of settlement offices and a toll-free number, their use of independent consultants, and their settlement process as areas in which Murphy Oil is engaging in problematic speech.

However, Defendant argues that there is no legitimate reason for restricting Murphy Oil's communications with residents of St. Bernard Parish. Primarily, Defendant argues that there is no clear evidence of abuse in the communications at issue here. There is no evidence of threats or coercion, and the Defendant is in no position of control over putative class members. Moreover, Plaintiffs' counsel equally have used mass media and other marketing tools to contact putative class members about the litigation. Defendant argues that the supervision requested by

-3-

Plaintiffs would constitute a prior restraint on Murphy Oil's and St. Bernard Parish residents'

First Amendment rights to free speech and free association, and as such should be denied.

### a.    Law and Analysis

As stated in the Court's October 4, 2005 Minute Entry in this matter, district courts enjoy

broad discretion under Rule 23 of the Federal Rules of Civil Procedure to make appropriate

orders imposing conditions upon the parties in class actions. Fed. R. Civ. P. 23(d). However,

because orders limiting the communication of defendants impinges upon a defendant's First

Amendment right to free speech, "an order limiting communications must be based upon a clear

record and specific findings that reflect a weighing of the need for a limitation and the potential

interference with the rights of the parties." *Lee v. American Airlines, Inc.*, 2002 WL 226347 *2

(N.D.Tex. Jun. 19, 2001), *citing Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981).

A defendant's speech to putative class members is considered commercial speech,

because the defendant's economic interest in reducing its litigation costs is involved. *Kleiner v.

First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1204 n.22 (11th Cir. 1985). Because this speech is

commercial speech, a defendant's communications with potential class members does not enjoy

heightened First Amendment protection. *Id.* at 1204. Also, a district court may freely prohibit

false or misleading speech by a defendant, and may restrict a defendant from using methods of

speech that are inherently coercive or prone to abuse, like oral solicitation. *Id.* at 1204 & 1206.

As the Eleventh Circuit has stated, "[u]nsupervised, unilateral communications with the plaintiff

class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided

presentation of the facts, without opportunity for rebuttal. The damage from misstatements could

well be irreparable." *Id.* at 1203.

-4-

Case 2:09-md-02047-EEF-MBN   Document 7386-7   Filed 02/09/11   Page 13 of 22
Case 2:09-md-02047-EEF-JCW   Document 4824-3   Filed 08/04/10   Page 6 of 13

Case 2:05-cv-04206-EEF-JCW   Document 39   Filed 11/14/05   Page 5 of 12

In other cases, district courts have limited a defendant's communications with putative class members in situations in which defendants engaged in speech that was clearly coercive or threatening. For example, in *Kleiner*, the defendant, a bank, called its customers, the putative class members, in a massive telephone solicitation and demanded that they opt out of a potential class action. *Id.* at 1198. The district court and Eleventh Circuit found that the oral, unsolicited communication by the bank was inherently coercive and threatening both because of the way it was conducted (by telephone) and because of the ongoing business relationship between the bank and its customers. *Id.* at 1206-07.

Similarly, in *Hampton Hardware, Inc. v. Cotter & Company,* the defendant, a hardware wholesaler, had an ongoing business relationship with the putative class members, individual stores that received supplies from the wholesaler. 156 F.R.D. 630, 631 (N.D. Tex. 1994). The defendant sent letters to putative class members that specifically mentioned the litigation and its possible financial costs to the class members. *Id.* at 631. The district court held that these letters were threatening due to the parties' ongoing relationship, and prohibited the defendant from discussing the litigation with putative class members. *Id.* at 632.

However, in *Burrell v. Crown Central Petroleum, Inc.*, the district court determined that an order prohibiting communication between the defendant and putative class members was not appropriate. 176 F.R.D. 239, 245 (E.D. Tex. 1997). In that case, a group of employees sued their employer for sexual and racial discrimination. *Id.* at 241. The employer sent a mass email to its employees informing them of the litigation, and posted this email at the workplace. *Id.* Also, the employer held two informational meetings with employees to discuss the litigation. *Id.* None of these communications threatened the employees or asked them to opt out of the litigation. *Id.*

The district court found that the putative class members could not show specific instances of harm from these communications; thus, an order prohibiting the defendant's speech was inappropriate. *Id.* at 244-45.

In the present motion, Plaintiffs have challenged a range of different communications between Murphy Oil and residents of St. Bernard Parish. The Court finds it useful to address each type of communication individually to determine whether a potential for serious abuse exists. If such potential exists, restriction or supervision of Murphy Oil's communications would be appropriate. *Kleiner*, 751 F.2d at 1206.

        1.      **Open Letters and Advertisements in Local Media; Settlement Offices**

According to Plaintiffs, Murphy Oil has published at least two "open letters" and one full-page advertisement in local newspapers in New Orleans and Baton Rouge in September and October 2005. In these advertisements, Murphy Oil discusses the oil spill and offers a toll-free number for residents to call who have been affected by the spill. Murphy Oil states in several of these advertisements that the most of the oil has been recovered or has evaporated. In the October 24, 2005 advertisement, Murphy Oil states that it will contact residents who have previously called Murphy Oil for the purposes of settlement of their claims. Although the details have not been presented to the Court, counsel allege that similar advertisements have been posted on the Internet as well.

In addition, it has been well-publicized that Murphy Oil has set up five offices for settlement of claims regarding the oil spill. Plaintiffs object to the opening of these offices for the same reasons that they object to Murphy Oil's use of a toll-free number: Plaintiffs allege that there is inherent potential for coercion and abuse in an oral, in-person, unsupervised meeting

-6-

between a putative class member and representatives of the Defendant.

Plaintiffs argue that these communications should be prohibited because Murphy Oil is using the ads and settlement offices to shrink the size of the class. Plaintiffs contend that this effort is at odds with the purposes of Rule 23 of the Federal Rules of Civil Procedure. In addition, Plaintiffs argue that the use of the toll-free number and settlement offices creates oral, unsupervised communication between the defendant and putative class members that is particularly problematic.

The Court agrees with Plaintiffs in principle that oral, unsupervised solicitations by counsel are a type of communication that is particularly subject to abuse. However, in this case, the danger of abuse appears to be low. Murphy Oil is not making targeted, oral solicitations to individuals for settlement: any oral communication that occurs between the defendant and a resident of St. Bernard Parish is initiated by the *resident*, not by Murphy Oil. Plaintiffs also underestimate their own media access and the media access of the residents of St. Bernard Parish. The present cases have been well-publicized, and Plaintiffs' counsel have taken out their own advertisements regarding the oil spill. In addition, local government and federal agencies have made much information available about the oil spill and its effects. This is not a case in which a defendant has a monopoly on the information available to putative class members.

Moreover, Murphy Oil set up these claims offices two months after Hurricane Katrina: claimants have had time to deliberate and consider what to do with their properties. In addition, Murphy Oil has no ongoing relationship with the putative class members, except in that both are residents of St. Bernard Parish. Murphy Oil is not in a position to force individuals into settlement. Plaintiffs have not presented evidence of threats or coercion.

-7-

However, given the potential for abuse inherent in any unsupervised oral communication in this context, IT IS ORDERED that Defendant Murphy Oil shall begin any communication with a putative class member with the statement that the individual has a right to consult with an attorney prior to any settlement or waiver of legal rights.  The Court specifically finds that such a statement will not unduly burden Defendant's First Amendment right to speak on its own behalf. Communication can continue, while the interests of putative class members in receiving independent information is protected.

In addition, Murphy Oil shall not initiate contact with any individual who has not previously contacted Murphy Oil.  The Defendant shall comply with Rule 4.2 of the Louisiana Rules of Professional Conduct and not communicate with persons already represented by counsel.

2.    **Communication Regarding Murphy Oil's Use of the Center for Toxicology and Environmental Health**

Plaintiffs further argue that Murphy Oil is misleading residents of St. Bernard Parish about its relationship with the Center for Toxicology and Environmental Health ("CTEH"), a private consulting and testing firm.  Murphy Oil has hired CTEH to perform testing of public and private property in the area of the oil spill, and CTEH has published its preliminary results on the St. Bernard Parish government Web site and Murphy Oil's Web site.  Murphy Oil has stated in mailings to parish residents that CTEH has determined that there will be no long- or short-term health or safety hazards from the spill.  Plaintiffs object to these communications for two reasons.  First, Murphy Oil does not clearly state that the CTEH is a paid consultant of Murphy Oil, and not an independent agency.  Second, Plaintiffs allege that Murphy Oil

-8-

deliberately presents CTEH as a quasi-official agency by placing it on equal footing with
agencies like the Environmental Protection Agency and Louisiana Department of Environmental
Quality.  Plaintiffs argue that Murphy Oil's communications about CTEH may mislead putative
class members into believing they are receiving objective, unbiased information from the firm.
Defendants argue that CTEH is a reputable organization that is conducting unbiased testing, and
that there is no intent to deceive residents.  Defendants further contend that CTEH's test results
are similar to those issued by the EPA.

The Court finds that Murphy Oil's public representations regarding the Center for
Toxicology and Environmental Health can be misleading.  Accordingly, IT IS ORDERED that, if
the CTEH has been retained by Murphy Oil, Murphy Oil shall disclose its relationship with the
CTEH in all public communications regarding the CTEH.  If the CTEH is not a governmental
regulatory agency, Murphy Oil shall disclose that fact as well in all public communications
involving the CTEH.

### 3.    Claimant Intake Forms

Plaintiffs also object to the format and content of intake forms used by Murphy Oil to
process claims from residents of St. Bernard Parish.  When a claimant calls the toll-free number
or visits one of Murphy Oil's settlement offices, the claimant is asked to complete an intake
form, which asks questions regarding ownership of the property, and requests information
regarding the claimant's insurance coverage.  The form also asks whether the claimant will
consent to testing on his or her property; however, the form also states that by signing it, the
claimant consents to testing on his or her property.  Plaintiffs argue that the form is misleading in
a number of respects.  The form seeks information on insurance coverage, ostensibly for proof of

-9-

ownership of the property, but Plaintiffs argue that this information could also be used to "low-ball" a claimant for settlement. Also, there is no disclaimer that this information could be used in future litigation. Plaintiffs also argue that the question regarding consent to testing is confusing, in that a claimant automatically consents to testing by signing the form. Again, there is no disclaimer that any information gathered during testing could be used in future litigation.

Murphy Oil argues that it requests insurance coverage from claimants for the same reason that FEMA and other government agencies have been requesting this information: insurance coverage is solid evidence of ownership. Murphy Oil alleges that the mortgage and conveyance office in St. Bernard Parish has been destroyed, and that it is difficult to establish ownership without this information. In addition, Murphy Oil contends that the consent to testing on the intake form is harmless, in that the testing itself is beneficial.

The Court finds that the intake form used by Murphy Oil can be misleading. If claimants wish to consent to testing of their properties, Murphy Oil should offer that option to them clearly because there could be evidentiary issues that arise from the testing. Accordingly, IT IS ORDERED that the final sentence of the intake form shall be deleted in all future versions of the form. This sentence reads, "By signing and returning this form you consent to testing on your property by environmental specialists hired by Murphy Oil Corporation."

**4.     Settlement and Release Agreement**

Plaintiffs also object to the template that Murphy Oil is using for settlement of claims. Plaintiffs argue that the Settlement and Release Agreement contains numerous waivers using technical legal language, and that a claimant or lay person would not understand the consequences of these waivers without independent legal advice. Moreover, Plaintiffs object to

-10-

Case 2:09-md-02047-EEF-MBN   Document 7386-7   Filed 02/09/11   Page 19 of 22
Case 2:09-md-02047-EEF-JCW   Document 4824-3   Filed 08/04/10   Page 12 of 13
Case 2:05-cv-04206-EEF-JCW   Document 39   Filed 11/14/05   Page 11 of 12

Addendum A to the agreement, which Plaintiffs allege requires homeowners to remove their oil-damaged belongings and to gut their houses of drywall prior to Murphy Oil's cleanup of the properties.  Plaintiffs argue that under Louisiana law Murphy Oil may have an absolute duty to cleanup the entire property, and that an agreement requiring a homeowner to cleanup these materials is premature.  Defendants counter that the Agreement speaks for itself and is clear about what rights an individual is surrendering through settlement.

The Court considers the Settlement and Release Agreement to be a communication with a putative class member by Murphy Oil.  As such, the Settlement and Release Agreement should contain a statement that the individual signing the agreement should seek independent legal advice prior to any settlement or waiver of his or her legal rights.  This statement should be adequate to protect the interests of putative class members.

**III.    Conclusion**

Accordingly, the Plaintiffs' Motion to Supervise Ex Parte Communications should be and hereby is GRANTED IN PART.  IT IS ORDERED that Defendant Murphy Oil shall begin any communication with a putative class member with the statement that the individual should consult with an attorney prior to any settlement or waiver of legal rights.  Murphy Oil's settlement agreements with putative class members should also contain this statement.  In addition, Murphy Oil shall not initiate contact with any individual who has not previously contacted Murphy Oil.  The Defendant shall comply with Rule 4.2 of the Louisiana Rules of Professional Conduct and not communicate with persons already represented by counsel.

In addition, IT IS ORDERED that, if the Center for Toxicology and Environmental Health has been retained by Murphy Oil, Murphy Oil shall disclose that the CTEH is a paid

-11-

consultant of Murphy Oil in all public communications regarding the CTEH.  If the CTEH is not a governmental regulatory agency, Murphy Oil shall disclose that fact as well in all public communications involving the CTEH.

Regarding the claimant intake forms used by Murphy Oil, IT IS ORDERED that the final sentence of the intake form shall be deleted in all future versions of the form.  This sentence reads, "By signing and returning this form you consent to testing on your property by environmental specialists hired by Murphy Oil Corporation."

New Orleans, Louisiana, this __10th__ day of November, 2005.

UNITED STATES DISTRICT COURT

-12-

# EXHIBIT 4

1

1                  IN THE UNITED STATES DISTRICT COURT
               FOR THE MIDDLE DISTRICT OF FLORIDA
2                       TAMPA DIVISION

3             Case No. 8:09-cv-598-T-27TGW

4                  May 12, 2009
                  Tampa, Florida
5

6  KRISTIN MORGAN CULLITON, individually
    and on behalf of all similarly situated
7  individuals,

8        Plaintiffs,

9  vs.

10  TAYLOR MORRISON SERVICES, INC., et al.,

11        Defendants.

12  _____/

13

14

15      TRANSCRIPT OF DIGITALLY RECORDED HEARING RE:
       MOTION FOR PROTECTIVE ORDER (Document 10)
16      BEFORE THE HONORABLE THOMAS G. WILSON,
         UNITED STATES MAGISTRATE JUDGE
17

18  Appearances of Counsel:

19    For the Plaintiffs:

20        Mr. Christopher Craig Casper
        Mr. Darren Robert Inverso
21       Mr. John Allen Yanchunis
        Mr. Jonathan Betten Cohen
22

    For the Defendants:
23

24        Mr. Mark Anthony Romance
        Mr. Neal Allen Sivyer

25  Transcribed by:    Dennis Miracle, Official Reporter

*Dennis Miracle, Official Reporter (352) 622-7212*

5/18/09