UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: 2047 |
| | SECTION: L |
| | JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO ALL CASES<br>_____ / | |

**MERITAGE HOMES OF FLORIDA, INC.'S RESPONSE
TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR
AN ORDER REQUIRING AN ACCOUNTING AND OTHER RELIEF**

Meritage Homes of Florida, Inc. ("Meritage") hereby submits its response to the Plaintiffs' Steering Committee's ("PSC") Motion for an Order Requiring an Accounting and Other Relief ("Motion for Accounting"), and in support thereof states as follows.

**I. INTRODUCTION**

Meritage adopts all arguments advanced by the Homebuilders' Steering Committee ("HSC") in its Response in Opposition to the PSC's (i) Motion for an Order Requiring an Accounting and Other Relief ("Motion for Accounting"); and (ii) Emergency Motion for an Order Preventing the Payment or Transfer of Certain Moneys or, in the Alternative, for Court Ordered Mediation and Temporary Stay of all Outside Settlement Activities ("Motion to Prevent Settlements") (the "HSC Response"). However, because the PSC makes specific references to Meritage and its repair efforts in the Motion for Accounting, Meritage hereby responds specifically to those arguments directed to Meritage.

In its Motion for Accounting, the PSC suggests that homebuilders, such as Meritage, are attempting to deprive the PSC of a common benefit fund award by settling with their homeowner customers with repair offers that "do not measure up to the standards set forth by the Court for

the proper scope of remediation." This is simply not true and reflects a gross misunderstanding on the part of the PSC of the value, if any, the PSC is imparting on homeowners whose homebuilders have been willing to repair their homes that contain defective Chinese-manufactured drywall ("Chinese Drywall") before any significant activities took place in the MDL and before Meritage was ever served with its first complaint in the MDL.

To that end, there are two distinct classes of homeowners impacted by Chinese Drywall. First, there are homeowners whose homebuilders have, for whatever reason, been unable or unwilling to undertake the repair of their homes that contain Chinese Drywall. This multi-district litigation proceeding for Chinese Drywall-related claims (the "MDL") is serving a legitimate, laudable purpose with respect to these homeowners. Second, however, there are those homeowners whose homebuilders have the financial strength and corporate conscience to do the right thing and repair their homes, and who made the decision to repair their customers' homes long before the creation of this MDL and the PSC, and/or before these homebuilders were brought before these MDL proceedings. With respect to this second class of homeowners, such as those who own homes built by Meritage, the PSC has added no value and its actions, including this Motion for Accounting, merely result in preventing or delaying the primary goal of the MDL--the repair of homes that contain Chinese Drywall.

Meritage stands behind its homes and decided to repair its homes that contain defective Chinese Drywall before ever being sued as a defendant in the MDL. In fact, Meritage has already repaired the vast majority of its homes that it has identified as containing Chinese Drywall. Despite the PSC's suggestions otherwise, the repairs that Meritage has performed in these homes *equals or exceeds* the scope of remediation described in *Germano, Hernandez* and the KPT Pilot Program in all material components of the repair process. Meritage has completed

this repair work without any influence or assistance from the PSC. In fact, of those homes that Meritage has yet been unable to repair, a major obstacle for most has been negotiations with these homeowners' attorneys, who have refused to accept any form of settlement that does not include a substantial cash payment to them.

In addition, the PSC suggests in its Motion for Accounting that homebuilders such as Meritage should be precluded from communicating with its homeowner customers unless the PSC first provides its approval. However, this argument is based on a fundamental misunderstanding by the PSC of Meritage's relationship to and communications with its homeowners. Accordingly, and for the reasons discussed more fully below, the Court should deny the PSC's Motion for Accounting.

## II. ARGUMENT

### 1. The PSC has Conferred no Benefit to Homebuilders, such as Meritage, who Committed to Repairing their Homes prior to being Hailed before the MDL.

Meritage was served with the *Payton* lawsuit and brought into the MDL on February 3, 2010. (Affidavit of John Coughlin ("Coughlin Aff."), at ¶ 3). At that time, however, Meritage had already committed to repairing its homes that contained Chinese Drywall. (*Id.*, at ¶ 2). Indeed, Meritage, upon becoming aware of the issues relating to Chinese Drywall and the potential that its homes may have been affected, began proactively to communicate with its homeowners and perform inspections of its homes. (*Id.*)

By the fall of 2009, Meritage had already created its initial scope of work and packet of other materials to provide to homeowners regarding these repairs, hired a general contractor to perform repairs, and provided homeowners with a Relocation, Repair Work Authorization and Limited Release Agreement ("Repair Agreement"), pursuant to which Meritage would perform repairs to homes that contained Chinese Drywall. (*Id.*) Through this repair program, Meritage

3

has entered into a Repair Agreement with over 85 percent of its homeowners that have been impacted by Chinese Drywall. (Affidavit of Camille Nesbitt ("Nesbitt Aff."), at ¶ 8).

To date, Meritage has identified 88 homes that contained Chinese Drywall. (*Id.*). Among those homes, the homeowners for 75 homes have entered into a Repair Agreement with Meritage. (*Id.*) Meritage has completed all repair work and moved the homeowners back into their newly-repaired homes in 65 homes. In the remaining 10 homes, Meritage is in various stages of completing the repair work and moving the homeowners back into their homes. (*Id.*)

None of Meritage's efforts in repairing these homes is the result of any work from the PSC. Indeed, although six (6) of the 75 homeowners with whom Meritage has entered into a Repair Agreement are named MDL plaintiffs, all settled with Meritage on terms that were available to them prior to Meritage's involvement in the MDL. If anything, the PSC and the attorneys for those six (6) specific homeowners harmed these homeowners by further delaying Meritage's ability to repair these homes so that the homeowners could move back and live comfortably in their homes.

Homebuilders that have proceeded with repairing their homes, such as Meritage, have done so at enormous expense and a significant risk that they will be unable to recover these repair and other related costs from the manufacturers or others. In fact, Meritage has incurred, and continues to incur, costs that total in the millions of dollars, without having recovered a single dime from the manufacturers or any other culpable parties involved in the distribution chain of the Chinese Drywall. At the same time, Meritage has filed its own recovery lawsuit against the installer that installed the Chinese Drywall in its homes, as well as the suppliers of the Chinese Drywall. (*See Meritage Homes of Florida, Inc. v. Banner Supply Company Fort Myers, LLC, et al.*, Case No. 10-CA-004695 (20th Jud. Cir., Lee County, Fla.)). Meritage has further

pursued its own insurance carrier for recovery of insurance proceeds, separate and apart from any activities of the PSC.

Meritage recognizes that the class of homeowners whose homebuilders have not offered to repair their homes are in an entirely different set of circumstances. Indeed, many of these homeowners have little or no recourse outside of the MDL. To the extent the PSC, through its "painstaking efforts," continues to provide services, such as obtaining service of process and conducting jurisdictional discovery, on the manufacturers and others in the supply chain, the PSC may very well have grounds to claim entitlement to a common benefit award from any amounts recovered on behalf of these helpless homeowners. However, the relief sought in the PSC's Motion for Accounting goes too far in that it would unfairly prevent homebuilders, such as Meritage, from working with its homeowner customers to complete the repairs to these homes.

### 2. Meritage's Repair Protocol is Equal to or Exceeds the Scope of Remediation Accepted by this Court in all Material Respects.

The PSC, in its Motion for Accounting, spends a substantial amount of time attacking Meritage's repair protocol as being inadequate and inferior to that which was specified in the Findings of Fact and Conclusions of Law from the *Hernandez* case. Notwithstanding the PSC's argument, the current scope of work that Meritage is following is equal to or exceeds the scope of remediation described in *Germano*, *Hernandez*, as well as the scope or work in the Knauf Demonstration Remediation Program ("KPT Pilot Program") in all material components of the repair process (Coughlin Aff., at ¶ 4). Indeed, the few variances between Meritage's repair protocol and that from *Hernandez*, as called out by the PSC in the Motion for Accounting, involve discretionary decisions to repair items that may or may not be affected.

5

The Court in *Hernandez* determined that those homeowners were entitled to money damages for the replacement cost of certain items that were not directly impacted by the Chinese Drywall, but should be replaced "for practical and economic reasons." *Hernandez v. Knauf Gips KG, et al.*, Case No. 09-6050, Findings of Fact & Conclusions of Law (E.D. La. Apr. 27, 2010) ("It is not worth the cost to attempt to remove, store, and replace these items, when it is likely they will be damaged and when one considers the relatively low cost of these items.")  There is no reason why Meritage should be precluded from making its own business decisions about whether Meritage can cost-effectively protect and reinstall certain items rather than simply replacing them.  Although in many instances Meritage decides it is appropriate to simply replace such items, this is a business decision that has nothing to do with the "adequacy" of the repair work Meritage is providing to its homeowners.

Attached to this memorandum is the Affidavit of John Coughlin, Meritage's Construction/Project Manager in charge of overseeing Meritage's repair program in a Meritage community in Ft. Myers, Florida.  Mr. Coughlin, who is closely involved in executing Meritage's repair work in homes with Chinese Drywall, provides a more comprehensive chart that accurately compares the existing Meritage scope of work with the scopes of remediation described in *Germano*, *Hernandez*, and the KPT Pilot Program. (Coughlin Aff., at Exhibit "1"). Mr. Coughlin demonstrates, through this comparison, that Meritage is providing its homeowners a high quality and comprehensive scope of repairs that is entirely consistent, in all material components, with the level of repair work accepted by this Court.

For example, the PSC specifically calls out Meritage's Repair Agreement because Meritage reserves the right, "in its discretion" to salvage and re-install plumbing fixtures, such as porcelain toilets and sinks.  Where practical and economically efficient, Meritage attempts to

preserve and reuse items that have not been directly affected by the Chinese Drywall. Through its repair efforts to date, Meritage has concluded that it can economically and effectively reinstall these items. Meritage's approach is entirely *consistent* with the MDL's findings to date. In *Germano*, the reason this Court found replacement of plumbing fixtures to be appropriate *in that case* was on the basis that the evidence *in that case* established that it would be more cost-effective to do so:

> Sinks, toilets and shower enclosures generally must be removed when the drywall is removed because they are installed on top of drywall or to enable the remediation workers to move freely. It is more cost-effective to replaced these items than to gently remove, safely transport and store, and reinstall at a later date. Thus these items should be removed and replaced.

*Germano, et al. v. Taishan Gypsum Co. Ltd., et al.*, Case No. 09-6687, Findings of Fact & Conclusions of Law, at *52 (E.D. La. Apr. 8, 2010) (internal citations to the record omitted).

By way of further example, the PSC attacks Meritage's repair protocol because it only "provides for an 'air-out' period of 10 days." In *Germano*, by contrast, the Court accepted testimony that an airing-out period for between 15 and 30 days was adequate "to insure that all sulfur odors are gone." *Id.*, at *53. What the PSC omits from its criticism of Meritage's repair protocol, however, is that the airing-out specified in the KPT Pilot Program (to which the PSC is a party) is for a period of "no less than 24 hours." The Meritage protocol to which the PSC refers--a previous draft from September 2009--required a *minimum* of 10 days for the airing-out period. In addition, as of May 2010 (immediately following the Court's issuance of its Findings of Fact in *Germano*), Meritage's repair protocol has required an airing-out period of a *minimum* of fifteen days. (Coughlin Aff., Exhibit 1). What is more, Meritage goes even further in its efforts to remove sulfur odors from its homes. In addition to airing-out, Meritage introduces heating sources to the homes to maintain an inside temperature of 82 degrees, which

7

assists in drying the home and removing odors.  (*Id.*)   Before Meritage commences reconstruction in a home, a third-party consultant inspects the home to determine whether any sulfur-based odors remain.  (*Id.*)  Meritage also conducts random spot inspections in its homes during the reconstruction process.  To that end, at some point during the reconstruction process, Meritage temporarily halts its construction activities and directs a third-party consultant to close up these random homes for a period of three days to confirm that no lingering sulfur odors remain.  (*Id.*)  These extra efforts all exceed the scope of repair this Court recognized as appropriate in *Germano*.

The PSC's suggestion that Meritage's scope of repairs "do not measure up to the standards set forth by the Court," which the PSC attempts to bolster through misstating the facts, is inappropriate, offensive, and unsupported by any substance.  Indeed, many of Meritage's homeowners have praised the repair work Meritage has performed in their homes. (Nesbitt Aff., at ¶ 6.).  Through e-mails and letters, Meritage's homeowners have thanked Meritage for "doing the right thing," going "above and beyond in this most difficult situation," "ma[king] a bad situation the best it could be," and "standing behind their product."  (Nesbitt Aff., at Exhibit "1").  Meritage is proud to stand behind its product.  And it stands behind the repair work it has performed, and will continue to perform, for its homeowners that have been impacted by Chinese Drywall.

      3.     <u>**Meritage is Entitled to Communicate with its Homeowners.**</u>

In its Motion for Accounting, the PSC suggests that Meritage and other homebuilders should no longer be able to contact directly and work with their homeowners to repair their homes, unless the PSC first gives their approval.  As briefed by the HSC in the HSC Response, this is contrary to well-established law.  As the basis for the argument that such relief is

necessary, the PSC suggests that Meritage and other homebuilders are violating this Court's pronouncement that homebuilders should "advise property owners that they have the right to consult with counsel . . . [and] of the multi-district litigation and website address." (*In Re Chinese-Manufactured Drywall Prod. Liab. Litig.*, Minute Entry (E.D. La. Sept. 24, 2009) (D.E. 278)).

To the extent the PSC is referring to the Homeowner Letter that Meritage sent to its homeowners in the Moody River Community on January 25, 2010 (the "Homeowner Letter"), this letter clearly stated that "we welcome any questions your legal counsel may have," and invited the homeowners' legal counsel to contact Meritage's in-house general counsel department. (*See* Memorandum in Support of PSC's Motion for Accounting, Exhibit "B"). In addition, paragraph 3.8 of Meritage's September 2009 Repair Agreement, which was attached to the Homeowner Letter, specifically provides that "Homeowner acknowledges that Homeowner has been encouraged to seek advice of counsel with respect to this Agreement." (*Id.*) Furthermore, the PSC fails to note that Meritage sent this letter at a time when it was not a party to the MDL, did not have notice and was not aware of the Court's Minute Entry from September 24, 2009, and had no reason to believe it was subject to these MDL proceedings. (Coughlin Aff., at ¶ 3) (noting that Meritage was served in the *Payton* complaint on February 3, 2010).

In addition, the PSC fails to note that the Repair Agreement that they argue is objectionable for failing to advise of the MDL website is an outdated version, from September of 2009. Meritage's current version of the Repair Agreement complies fully with Judge Fallon's September 24, 2009 minute entry, in that in advises property owners of their right to consult with counsel and of the existence of the MDL and the MDL's website. (*Id.*)

In addition to suggesting that Meritage is not providing its homeowners with a fair settlement offer, the PSC further criticizes the homebuilders for "asking for assignments of plaintiffs' Chinese drywall claims." What the PSC fails to make clear, however, is that in most instances the homebuilders, including Meritage, are simply seeking an assignment of the homeowners' claims for the costs of the repair work they have performed, so that the homebuilders can then seek to recover some of the enormous expenses they are incurring to repair these homes. That is the prudent thing to do for homebuilders if they ever wish to be able to settle their claims against the manufacturers and other culpable parties in the chain of distribution. In fact, many of the homebuilders, including Meritage, are publicly-traded companies, with obligations to their shareholders. Any suggestion from the PSC that these homebuilders should not take appropriate measures in their attempts to recover these repair costs is, at best, disingenuous and misinformed.

As further support for its Motion for Accounting, the MDL suggests that Meritage is "unfairly denigrating the services provided by plaintiffs' counsel" and scoffs at Meritage's committment to "doing the right thing." The PSC has quoted Meritage's Homeowner Letter out of context, and completely disregards the circumstances under which Meritage was compelled to send this letter to its homeowners. Before Meritage sent the Homeowner Letter, its manager for national customer relations had several conversations with homeowners about the Repair Agreement. (Nesbitt Aff., at ¶ 4). During some of those conversations, Meritage was told by homeowners that they were being advised by several attorneys that if a homeowner signed the Repair Agreement, that homeowner would be releasing all claims for personal injury and certain other claims against the manufacturers of the Chinese Drywall. (*Id*.) Because that is simply not

true pursuant to the terms of its Repair Agreement, Meritage sent the Homeowner Letter to clarify this misinformation. (*Id.*).

When the skin is peeled back from the PSC's arguments, what is left is a rotten tomato. At the end of the day, the Motion for Accounting (which, along with the Motion to prevent Settlements, constitute the PSC's third and fourth such requests to this Court) is nothing less than a desperate attempt to prevent homebuilders from repairing the homes of their homeowners, because these repair activities have the unintended consequence of ultimately reducing the payday for the PSC.

Finally, the PSC's attempt to belittle Meritage and other homebuilders for "doing the right thing" is disappointing. Meritage had a contractual relationship with its homeowners long before the MDL or PSC existed. Indeed, Meritage and these and other homeowners will continue their relationships long after this Court has resolved all of the Chinese Drywall claims before it, and the MDL and PSC are long gone. As Judge Fallon has recognized in these MDL proceedings, the homebuilders, pursuant to certain statutory rights, as well as their contracts and relationships with their homeowners, "have a right and perhaps even a duty to seek and to remedy the conditions caused by their installation of the defective Chinese drywall." *In Re: Chinese-Manufactured Drywall Products Liability Litigation*, Case No. 2:09-md-02047-EEF-JCW, Transcript of 9/24/09 Hearing, at pp. 15:3-16:7 (E.D. La. Sept. 24, 2009). Moreover, as a matter of public policy, the Court should encourage homeowners and homebuilders to communicate about completing repairs to homes affected with Chinese Drywall. These repairs are not only beneficial to the homeowners, but also to the communities in which these homes are situated. It is no doubt evident from Meritage's efforts in repairing the homes of its customers--without any assurances of recovering the substantial costs it has incurred in doing so--that

Meritage is committed to its homeowners and, as one Meritage homeowner who was impacted by Chinese Drywall put it, going "above and beyond in this most difficult situation." (Nesbitt Aff., Exhibit "1").

### III. CONCLUSION

The relief sought in the PSC's Motion for Accounting is extreme, unproductive, and harmful to the end goal of this MDL--repairing the homes of homeowners who have been impacted by Chinese Drywall. For all the foregoing reasons, Meritage respectfully requests that this Court deny the Motion for Accounting.

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
*Counsel for Meritage Homes of Florida, Inc.*
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
Email: bassh@gtlaw.com
Email: salkym@gtlaw.com

By: /s/ Hilarie Bass
HILARIE BASS
Florida Bar No. 334323
MARK A. SALKY
Florida Bar No. 058221

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 9, 2011, this document has been served on Plaintiffs' Liaison Counsel, Russ Herman, Esq., and Defendants' Liaison Counsel, Kerry Miller, Esq., and Homebuilders' Steering Committee Dorothy Wimberly and Insurer Defendants' Liaison Counsel, Judy Y. Barrasso, Esq. by U.S. mail and/or email or by hand delivery and I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 6.

                                                  /s/ Hilarie Bass
                                                Hilarie Bass