# EXHIBIT 4

SP PageToolBar

# Chinese Drywall: The Next Big Issue?

*Summary:*

An interesting side issue has arisen from the hurricanes of 2005. At the time, supplies of drywall were running low. The country had been through a housing boom and the destruction caused by hurricanes Katrina and Rita left ready construction materials in short supply. As a result, the construction industry turned to supplies of drywall made in China to supplement their limited supplies. Drywall manufactured by different companies is not identical, and problems now exist presumably from the Chinese drywall used during the supply shortage.

Tests of some Chinese drywall has shown that it gives off a rotten egg odor from volatile sulfur compounds when exposed to heat and moisture. In the presence of moisture these vapors create a corrosive environment. The average humidity in Florida is over 50 percent year round, which could account for why Florida is the leader in drywall complaints.

**Topics:**

**Drywall**

**Effects**

**Scope**

**Coverages**

**Action**

**Legal aspects**

**Loss control**

## Drywall

While everyone has heard of drywall, not much thought is given to exactly what it is. Drywall is plaster made out of gypsum that is mixed with other materials, formed into boards, and dried. Gypsum is a common mineral

often found in sedimentary environments, and when used in drywall provides a noncombustible core. Cotton, fiberglass, or paper is added to the gypsum powder in order to make it stronger and less likely to crack over time. Starch is added in order to help the drywall adhere to the backing paper. Once the mixture is completed, it is pressed between thick paperboard. This is true of all drywall. Gypsum naturally contains sulfur compounds.

With regard to the Chinese drywall, testing has shown that sulfur compounds are released from both the gypsum core and the outer drywall paper. It is possible that before entry into the United States the drywall was treated with insecticide or that the adhesive binding the paper to the drywall contained contaminants. Another possibility is that the Chinese drywall remained on ships at sea for months awaiting approval to enter the country. The exposure of the drywall to humid sea air and the process of evaporation of that moisture once the drywall was on land could be responsible for the off gassing. Off gassing is simply the emission of gasses from a particular substance, such as drywall or carpet. The Gypsum Association recommends that gypsum board not be exposed to high levels of moisture for extended periods of time.

Chinese drywall is made of naturally mined gypsum—it appears to have a higher than normal density and to have a higher than normal tendency to off gas sulfur compounds. Much of the drywall that predates 2006 came from a particular mine in the ShanDong province, and tests show that an unusually high amount of sulfur compounds is present there. Both Chinese and American drywall products have been tested to determine the cause of the problem. The Consumer Product Safety Commission (CPSC) is working with the Environmental Protection Agency (EPA) and the Centers for Disease Control (CDC)/Agency for Toxic Substances and Disease Registry (ATSDR) to coordinate a united action plan to address the health hazards posed by Chinese drywall. The approach includes import investigations; field measurements of affected homes; gauging corrosion to electrical, fire and safety systems; and studies of gypsum and environmental release from disposal sites. The CDC/ATSDR will assist in developing a health awareness program in the future.

### Effects

The off gassing of these vapors has resulted in illness of the residents and damage to property. Reported health issues include headaches, sore throats, nosebleeds, respiratory issues, and dry eyes. The Florida health department has received over 140 complaints concerning the drywall, and the Consumer Product Safety Commission (CPSC) has received 608 reports from residents of twenty-one states about health and property conditions that the residents believe are due to the drywall. The first report to the CPSC was received December 2008.

Damage to property consists of corroded piping and wiring, causing electronics or appliances to fail –copper components are particularly susceptible to damage. A deteriorated connection between a circuit breaker and a panel board could become a hot spot and start a fire. Any wiring or piping is at risk--from the gas service components to the smoke alarm components. Air conditioners seem to be particularly susceptible to damage from these vapors. Air conditioning coils that should last ten years or more are corroding in just a few years. Ground wires are more susceptible to damage because they are not insulated.

Jewelry and silverware of the residents show evidence of corrosion as well. Since personal property typically is insured on a named perils basis, there is no coverage available for any of these items unless they have been scheduled on the policy.

### Scope

The scope of this issue is still being determined. The Gypsum Association states that 300 million square feet of Chinese drywall was imported in 2006-07. A construction consultant estimates that between 2006 and the first two months of 2007 enough drywall was imported to produce at least 50,000 homes of 2,000 square feet each. However this may not be where the drywall issue starts; some experts believe that defective drywall was installed as early as 2004, which would increase the number of homes exposed. It is estimated that Florida

alone has 36,000 homes containing the problem drywall, and national estimates range from 60,000 to 100,000 homes. The issue is widespread enough in Florida that real estate agents are adding disclosures to forms advising the buyers that they have the right to have the home inspected in order to ascertain whether or not the drywall is problematic. New homes are not the only issue – renovated or remodeled homes may also contain tainted drywall. While many states are affected, the majority of complaints are originating in Florida, Louisiana, and Virginia .

## Coverages

There are many coverage issues that may develop. Claims may fall under homeowners, commercial liability, or commercial property policies. Homeowners have already started filing claims with their carriers against their homeowners policies, and carriers have already denied coverage. For reference, see *Baker v. American Home Assurance Company* Middle District of Florida , No. 09-cv-188-FtM-99DNF f. The homeowner is suing on the basis that the gas from the drywall interfered with the use and enjoyment of the property. The case is not yet settled.

## Homeowners

The ISO HO 00 03 10 00 clearly excludes pollution, and the definition of pollutant is "...any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, ...". If the vapors from the drywall are corroding metal, then the pollution exclusion may apply. However, there is an exception to the exclusion for ensuing loss to property that is not precluded by any other provision. Therefore, if corroded metal such as that found on wires and pipes lead to leaks or fires, damage from those perils would be covered. The pollution exclusion may or may not stand --some courts will still hold that the pollution exclusion applies to traditional environmental contamination losses, spills, superfund, and similar exposures and that gasses from drywall didn't discharge, disperse, or escape onto land, water, or atmosphere. Atmosphere is generally construed to mean the external atmosphere, and not the air inside a building. This exclusion did not hold up through the past lead paint and asbestos suits, and it may not withstand the drywall litigation. The exclusion was intended to limit or exclude coverage for environmental contamination, not product liability claims. The damages from the drywall aren't environmental pollution but, rather, bodily injury or damage caused by products containing the sulfur compounds.

Another applicable exclusion is the one for faulty "...repair, construction, renovation, remodeling...materials used in repair, construction, renovation or remodeling..." Again, there is an exception to this exclusion for ensuing losses stemming from these causes that are not excluded elsewhere. So while there is no coverage for the replacement of the drywall, there is at least coverage available for ensuing losses.

Medical payments coverage is not available to the insured, and there is no exception. Medical payments coverage on the typical homeowners policy is intended for those who are not insureds.

Homeowners may also file claims against the builder who constructed the dwelling. This brings the commercial policies into view.

### Commercial General Liability

Under the ISO commercial general liability policy CG 00 01 12 07, pollution is a major exclusion. Coverage is excluded for BI or PD arising out of the discharge or escape of pollutants at any premises on which any insured, contractor, or subcontractor working on behalf of the insured are performing operations if the pollutants were brought on to the premises in connection with such operations. For example if a plumber brought insulation with asbestos onto the property, injury from the asbestos is excluded. However, an exception exists for injury or damage sustained within a building and caused by the release of vapors, fumes, or gases from materials brought into that building in connection with operations being performed. Construction of the dwelling is certainly an operation being performed. So even if the vapors are considered to be a pollutant, there is coverage because of this exception.

Another exclusion removes property damage coverage for premises you (the named insured) sell, give away, or abandon if the property damage arises out of any part of those premises. This overrides the exception to the pollution exclusion for damage from the release of vapors, fumes and gases from materials brought onto the property in connection with operations. Also, damage to that part of real property on which the insured or contractors are working if the property damage arises out of those operations is also excluded. Once installed, the drywall becomes real property. Damages to the insured's product or work are excluded as well.

Medical expenses are paid if they stem from an accident that occurred on owned or rented premises or if they occurred because of the insured's operations. Coverage is provided for first aid and necessary medical, surgical, dental services, ambulance, hospital, nursing, and funeral services. However, expenses for injury that are included with the "products-completed operations hazard" are excluded. The "products-completed operations hazard" includes injury occurring away from premises the named insured owns or rents and arising out of "your product" or "your work". "Your product" includes goods and products other than real property manufactured, sold, handled, or distributed by the insured and includes warranties made at any time regarding the fitness, quality, performance of the product. "Your work" is work performed by the insured or on his behalf and materials, parts, or equipment furnished in connection with such work. The Chinese drywall installed into a home by a contractor would be considered "your work" (of the contractor) and, therefore, injury due to the faulty drywall is ultimately excluded. If a claim is filed against the contractor who install the drywall, that would be "your product" only until the drywall is installed into a building. Once installed the drywall becomes real property and is no longer "your product."

There also are products liability exposures for manufacturers. Manufacturers are responsible if drywall is defective and causes injury or damage and also must make sure the product is labeled for fitness of use. However, in this situation responsibility may fall on the builders who used the drywall because in general Chinese companies won't come to the United States to defend suits, and judgments made here can not be enforced in China . China does not recognize the jurisdiction of the United States, and it is very costly to go to China to file suit against a manufacturer.

Builders are supposed to heed labeling and use the proper type of product for the proper situation. Labeling and misuse are not the issues here, and the builders could not have reasonably been expected to foresee problems in the use of the materials.

**Commercial Property**

If the insured property is a commercial structure, the commercial property causes of loss form needs to be reviewed. The special causes of loss form contains a standard pollution exclusion with an exception granting coverage if the pollution is caused by or results in a specified cause of loss. Specified causes of loss are fire; lightning; explosion; wind or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of ice, snow, or sleet; and water damage. There is no cause of loss for vapors emitted from drywall.

Another applicable exclusion is hidden or latent defect. The chemicals in the drywall that are causing the problem vapors are not visible and they are an integral part of the product. Therefore, they are a latent defect; the drywall itself is defective. There is no

coverage provided on this policy form.

**Action**

Steps to correct the problems may lead to the drywall, wiring, and piping needing to be removed and/or replaced. The interior of the building may also need to be cleaned. Another issue is just which drywall is the offending Chinese drywall and which drywall is safe. One of the problems is that once the drywall in a house is painted, it is difficult if not impossible to tell if the problem is all the drywall in the house or just a few walls. The drywall may not be clearly labeled, which could result in the entire house having to be gutted if a distinction cannot be made.

As mentioned previously, the CPSC is heading up the task force to study the issue and make recommendations. The Environmental Protection Agency and Centers for Disease Control are conducting studies on the effects of Chinese drywall, but the studies are not yet completed.

Disposal of the drywall is going to be another issue. Many landfills will not take the material and guidelines for where it may be dumped are still being developed. For example, the Florida state environmental department does not consider Chinese drywall a hazardous waste, yet when tons of drywall were sent to waste sites after the 2004 and 2005 hurricanes, problems with severe hydrogen odors developed. The environmental department is recommending that suspect drywall be sent to landfills that are lined with clay or other material and that have gas collection and control systems. Additionally, the drywall should be covered daily with several inches of soil.

## Legal Aspects

Many lawsuits have been filed against builders or manufacturers; ten suits have been consolidated into one action since they share factual questions regarding the drywall, its importation and use, and the emission of smelly, corrosive gases. Sixty-seven other suits may be tagged onto this action. Some suits target the manufacturer while others target the construction companies. In *Harrell v. South Kendall Construction Corp., et. al.*, No. 09-08401CA40, the co nstruction company is being sued because the plaintiffs state their home is uninhabitable because of defective drywall made in China that was sold, manufactured, distributed, imported, and supplied by the defendants in violation of the law.

A separate lawsuit claims that fly ash was used in the making of the Chinese drywall. Fly ash is a waste product from coal-fired power plants. It is not unusual for some drywall to be made using this material. Various drywall manufacturers are listed as defendants in suits, including Knauf Plasterboard Tianjin Co., Ltd. (KPT), Banner Supply, and Taishan Gypsum.

In *Builders Mutual Insurance Company v. Dragas Management Corporation, et. al.*, No 2:09-cv-185, the insurer has filed suit against the insured claiming that neither a defense nor indemnification is owed because the drywall is excluded by the total pollution exclusion that exists on the policy. The insurer states that the drywall off gassing clearly constitutes the "actual, alleged, or threatened discharge, dispersal, seepage...escape of pollutants at any time" and that the vapors or fumes fit the policy definition of pollution. The insured is claiming bad faith. This is just an example of how disputes may develop over drywall and whether the pollution exclusions apply.

The Drywall Safety Act of 2009 is a bill that was introduced in the U. S. Senate. The bill calls for the CPSC to study Chinese drywall imported between 2004 and 2007, determine whether or not a safety standard for the material is necessary, designate drywall with more than 5 percent organic compounds to be considered hazardous, and order manufacturers, distributors, and retailers of such drywall to cease and desist distribution of the product. A companion bill has been filed in the House. Should these bills pass, both the construction and insurance industries may be greatly affected.

## Loss Control

Medical advice should be sought immediately if an insured experiences symptoms similar to those discussed here. Symptoms often clear when a person is away from the home and return when the person returns home. If the insured has electrical or fire issues, he should contact an electrician and the utility service provider. The CPSP should also be notified. They can be contacted at: www.cpsc.gov/cgibin/incident.aspx

Signs of Potential Electrical Issues
- Circuit breaker that needs to be reset frequently for no reason; ground fault circuit interrupter trips frequently
- Dim/flickering lights for no reason
- Arc/sparks anywhere in system

- Sizzles/buzzes from electrical systems/devices
- Overheating – switch plates, dimmer switches, and cords, plugs that are discolored or painful to touch.
- Odors – smells as if from overheating plastic or electrical insulation material.
- Shocks, even a mild tingle

Summit Business Media

Privacy Policy Contact Us Copyright © 2009, The National Underwriter Company

# SP PageToolBar

## Chinese Drywall

*What ISO policy exclusion under an HO3, if any, applies to a product defect? We have seen a couple of instances in Louisiana where the insureds are sustaining damage as a result of defective drywall made in China . This was used following Katrina to replenish shortages of drywall supplies.*

**Louisiana Subscriber**

The ISO HO 03 excludes loss to coverages A &B caused by faulty materials used in repair, construction renovation or remodeling. (See page 12 of the 10 00 policy.) Any ensuing loss as a result of the faulty drywall would be covered, for example if the drywall caused corrosion damage to wires or pipes.

 Summit Business Media

Privacy Policy Contact Us Copyright © 2009, The National Underwriter Company