**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO.: 2047 |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *Pate v. American International Specialty Lines Insurance Company, et al.* (09-7791) | MAGISTRATE JUDGE WILKINSON |

**PLAINTIFF ROBERT C. PATE'S AND THE PLAINTIFFS' STEERING COMMITTEE'S STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE POLLUTION EXCLUSION**

Pursuant to Local Rule 56.1, Plaintiff Robert C. Pate and the Plaintiffs' Steering Committee ("Plaintiffs") hereby submit this statement of material facts as to which no genuine issue exists.[1]

| **MATERIAL FACT** | **EVIDENCE IN SUPPORT** |
|---|---|
| 1. WCI Communities, Inc. builds homes and residential communities in states such as Florida, New York, New Jersey, Virginia, Maryland, and Connecticut. | 1. Affidavit of Vivien Hastings ("Hastings Aff.") at ¶ 3. |
| 2. WCI began to receive complaints of property damage and/or bodily injury allegedly arising from Chinese Drywall installed in homes that WCI sold. | 2. Hastings Aff. at ¶ 4; Notice Letters, attached to Affidavit of Sheila Leith ("Leith Aff.") as Exs. Q, R. |
| 3. The claimants allege damages that include increased rates of corrosion of soft metal materials throughout the houses (such as air conditioning coils, refrigerator tubing, electrical wires, and television connections); various health issues allegedly arising from the drywall; and | 3. Hastings Aff. at ¶ 4; Notice Letters, attached to Affidavit of Sheila Leith ("Leith Aff.") as Exs. Q, R. |

---

[1] Defined terms used herein have the same meaning as in Plaintiffs' Memorandum In Support Of Their Motion For Partial Summary Judgment On The Pollution Exclusion [Docket No. 7343-4].

| | |
|---|---|
| tarnishing of silver and soft metal within the homes. | |
| 4.  Because of the overwhelming nature of the claims against WCI, and for other reasons, WCI Communities, Inc. and a number of its subsidiaries ultimately filed for bankruptcy (collectively, the "WCI Debtors"). | 4.  Hastings Aff. at ¶ 2. |
| 5.  The plan of reorganization, approved by the United States Bankruptcy Court, created a Chinese Drywall Trust (the "Trust") upon which the WCI Debtors' liability or losses for claims asserted against the WCI Debtors by an owner or occupant of, or person otherwise exposed to, a home built by the WCI Debtors for damages related to Chinese Drywall was imposed. | 5.  Second Amended Plan of Reorganization, Article V, § 5.1(e), attached as Ex. J to Leith Aff.; Order Confirming Plan, attached as Ex. K to Leith Aff. |
| 6.  The WCI Debtors transferred to the Trust their right, title, and interest in the "Insurance Coverage Actions" and the "Chinese Drywall Actions" and the proceeds thereof, and any right, title or interest in pursuing and receiving any and all "Insurance Recoveries." | 6.  Ex. J to Leith Aff., Second Amended Plan of Reorganization at Article XI, § 11.2. |
| 7.  The Plan defines "Insurance Coverage Actions" as "any rights to indemnification, reimbursement, contribution or other payment under any of the [WCI] Debtors' existing insurance policies, including the [WCI] Debtors' director and officer liability insurance policies, as of the Effective Date that may provide coverage with respect to Allowed Chinese Drywall Claims." | 7.  Ex. J to Leith Aff., Ex. A to Plan, # 71. |
| 8.  The Plan defines "Chinese Drywall Actions" as "the Causes of Action that the [WCI] Debtors may have against any subcontractor or other Person who installed Chinese drywall in a home built or sold by a [WCI] Debtor, directly or indirectly, any insurer of any such subcontractor or other Person, any retailer, | 8.  Ex. J to Leith Aff., Ex. A to Plan, # 22. |

| | |
|---|---|
| wholesaler, distributor, manufacturer or provider of Chinese drywall that was installed in a home built or sold by a [WCI] Debtor, directly or indirectly, and/or any insurer of any such retailer, wholesaler, distributor, manufacturer or provider." | |
| 9.  The Plan defines "Insurance Recovery," in pertinent part, as "(a) the right to pursue and receive the benefits and proceeds of any insurance policy issued to, owned by, or otherwise providing coverage to any [WCI] Debtor, including any insurance policy owned by any third party on which any [WCI] Debtor is named as an additional insured, with respect to Chinese Drywall Claims; (b) the right to pursue and receive recovery from or as a result of any Insurance Coverage Action; ... [and] (e) the right to pursue and receive any other recovery from an insurance company, in its capacity as such, with respect to Chinese Drywall Claims." | 9.  Ex. J to Leith Aff., Ex. A to Plan, # 72. |
| 10.  The Plan approved by the United States Bankruptcy Court also established a Chinese Drywall Trustee ("Trustee") to prosecute the Insurance Coverage Actions and Chinese Drywall Actions. | 10.  Second Amended Plan of Reorganization at Article XI, § 11.1(b). |
| 11.  The United States Bankruptcy Court for the District of Delaware confirmed the Plan on August 26, 2009, including the creation of the Trust, and approved Judge Robert C. Pate's appointment as Trustee. | 11.  Ex. K. to Leith Aff. |
| 12.  In his complaint, Pate seeks, inter alia, a declaratory judgment that the defendant liability insurance companies are obligated to pay the liabilities faced by the Trust for liabilities and losses arising from claims against WCI Communities, Inc. and certain of its subsidiaries (collectively, "WCI") for the development and sale of homes by WCI allegedly containing Chinese Drywall. | 12.  *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, First Amended Complaint (E.D. La. Mar. 15, 2010) [Doc. No. 1732] at ¶¶ 56-60. |
| 13.  This motion concerns the following | 13.  Exs. A-I to Leith Aff. |

NYDOCS1-963037.1

| | | | |
|---|---|---|---|
| liability insurance policies that the Defendant liability insurance companies sold directly to WCI: | | | |

| Insurance Company | Policy Number | Policy Type | Policy Period |
|---|---|---|---|
| Chartis | 7412158 | Commercial umbrella liability | 5/1/06 – 5/1/07 |
| | 7412275 | Commercial umbrella liability | 5/1/07 – 5/1/08 |
| | BE 4943750 | Commercial umbrella liability | 5/1/08 – 12/1/08 |
| Illinois Union | XOO G22081706 | Commercial umbrella liability | 3/1/05 – 5/1/06 |
| Lexington | 0355453 | Excess liability | 5/1/06 – 5/1/07 |
| | 1011060 | Excess liability | 5/1/07 – 5/1/08 |
| | 1053988 | Excess liability | 5/1/08 – 12/1/08 |
| Steadfast | AEC 3836443 03 | Excess liability | 3/31/05 – 5/1/06 |
| | AEC 3836443 04 | Excess liability | 5/1/06 – 5/1/07 |

| | |
|---|---|
| 14.  The Chartis liability insurance policies contain a pollution exclusion, which states, in pertinent part:<br><br>**Pollution**<br><br>This insurance does not apply to:<br><br>1. Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere | 14.  Chartis policy no. 7412158, Endorsement 7, attached to Leith Aff. as Ex. A; Chartis policy no. 7412275, Endorsement 4, attached to Leith Aff. as Ex. B; Chartis policy no. BE 4943750, Endorsement 7, attached to Leith Aff. as Ex. C. |

| | |
|---|---|
| at any time;<br><br>2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or<br><br>3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**. | |
| 15.  Policy nos. 7412275 and BE 4943750 define pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." | 15.   Ex. B to Leith Aff., Section VI(U); Ex. C to Leith Aff., Section VI(U). |
| 16.  Endorsement 7 of Chartis policy no. 7412158 amends "Paragraph U. Pollution," but the policy does not contain a Paragraph U concerning pollution. | 16.  Ex. A to Leith Aff., Endorsement 7 and Section VII(U). |
| 17.  Chartis policy no. 7412158 fails to define the term "pollutants." | 17.  Ex. A to Leith Aff., Section VI. |
| 18.  Illinois Union Policy no. XOO G22081706 contains the following pollution exclusion:<br><br>This insurance does not apply to any injury, damage, expense, | 18.  Illinois Union policy no. XOO G22081706, Endorsement 12, attached to Leith Aff. as Ex. D. |

| | |
|---|---|
| cost, loss, liability or legal obligation arising out of or in any way related to pollution, however caused.<br><br>Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance, if such substance has or is alleged to have the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water. | |
| 19.  The Lexington liability insurance policies include a pollution exclusion that states as follows:<br><br>This policy does not apply:<br><br>1. to any injury caused by, contributed to or arising out of the actual or threatened discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, pollutants or contaminants into or upon the land, the atmosphere or any course or body of water, whether above or below ground.  It is understood and agreed that the intent and effect of this exclusion is to delete from any and all coverages afforded by this policy any claim, action, judgment, liability, settlement, defense or expense (including any loss, cost, or expense arising out of any governmental direction or request that the Insured test for, monitor, clean up, remove, | 19.  Lexington policy no. 0355453, Exclusions at p. 2, attached to Leith Aff. as Ex. E; Lexington policy no. 1011060, Exclusions at p. 2, attached to Leith Aff. as Ex. F; Lexington policy no. 1053988, Exclusions at p. 2, attached to Leith Aff. as Ex. G. |

NYDOCS1-963037.1

6

| | |
|---|---|
| contain, treat, detoxify or neutralize pollutants) in any way arising out of such actual or threatened discharge, dispersal, release or escape, whether such results from the Insured's activities or the activities of others, and whether or not such is sudden or gradual, and whether or not such is accidental, intended, foreseeable, expected, fortuitous or inevitable, and wherever such occurs; | |
| 20.  The Lexington policies define neither "pollutants" nor "contaminants." | 20.  Exs. E-G to Leith Aff., Definitions at pp. 4-5. |
| 21.  Steadfast liability insurance policy no. AEC 3836443 03 contains the following pollution exclusion:<br><br>**SECTION IV. – EXCLUSIONS, EXCLUSION B.** is deleted in its entirety and replaced by the following:<br><br>B.  1.  Arising directly or indirectly out of the actual, alleged or threatened existence, discharge, seepage, migration, disposal, release or escape of "pollutants."<br><br>2.  Arising out of any:<br><br>a.  Request, demand, or order than any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants;" | 21.  Steadfast policy no. AEC 3836443 03, Endorsement 18, attached to Leith Aff. as Ex. H. |

       or

    b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

As used in this endorsement, "pollutants" means any man-made or naturally occurring solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to: smoke; vapor; soot; fumes; acids; alkalis; chemicals; and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

However, it is agreed that this exclusion does not apply to any liability, damage, loss, cost or expense described above for which coverage is afforded under **ACE's (Illinois Union Insurance Company** Policy No. **XOO G22081706** and then for no broader coverage than is afforded by such insurance (hereafter referred to as the "Underlying Pollution Coverage"). In the event that the "Underlying Pollution Coverage" is amended or deleted after the inception date of this policy, we must be so advised in writing within 14 days after the effective date of such amendment or deletion. Any amendment which broadens

| | |
|---|---|
| coverage under the "Underlying Pollution Coverage" shall not be binding upon us unless our agreement is acknowledged in writing by an authorized representative of the Company. | |
| 22.  Steadfast liability insurance policy no. AEC 3836443 04 has the following pollution exclusion:<br><br>**SECTION IV.  EXCLUSIONS**<br><br>This policy does not apply to any liability, damage, loss, cost or expense:<br><br>**POLLUTION**<br><br>B.  1.  Arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.<br><br>This exclusion does not apply to bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:<br><br>a.  At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or<br><br>b.  At any premises, site or location on which any insured or any | 22.  Steadfast policy no. AEC 3836443 04, Section IV at pp. 2-3, attached to Leith Aff. as Ex. I. |

    contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

2. Arising out of any:

    a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

As used in this exclusion:

1. A "hostile fire" means one which becomes uncontrollable or breaks out from where it was

|  |  |
|---|---|
| intended to be.<br><br>2. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed. |  |
| 23. Each of the Defendants sells insurance in New York and collects premiums from New York residents. | 23. Annual Statements and Best's Insurance Reports, attached as Ex. 3. |
| 24. New York is considered Chartis's home office for virtually all decision making, including, but not limited to, principal underwriting operations and claims. Moreover, New York is from where Chartis makes virtually all of its significant final coverage determinations and payments under the insurance policies and other financial products and services Chartis sells. | 24. Ex. P to Leith Aff. |
| 25. The Chartis insurance policies were negotiated, at least in part, in New York. | 25. Ex. P to Leith Aff. |
| 26. WCI provided notice under the Chartis policies to the New York office. | 26. Notice Letter, attached to Leith Aff. as Ex. Q. |
| 27. Steadfast countersigned policy nos. AEC 3836443 03 and AEC 3836443 04, and their corresponding binders, in New York. | 27. Ex. L to Leith Aff. (insurance binder signed by Rob Kenyon, team leader for underwriting of Zurich North America Specialties Excess Casualty NYC); Ex. H to Leith Aff. and Ex. 6 (policy countersigned by Doreen Miller of Zurich North America's New York office); Ex. M to Leith Aff. (binder signed by Rob Kenyon, regional vice president of Zurich North America Specialties Excess Casualty NYC); Exs. I, M to Leith Aff. (policy countersigned by Robert Kenyon of Zurich |

| | |
|---|---|
| | Excess Casualty New York). |
| 28.  Chartis created and signed the binder for policy no. 7412158, and countersigned policy no. 7412275, in New York. | 28.  Ex. O to Leith Aff. (binder signed by Jonathan Luca of Chartis in New York) and Ex. 8, attached hereto; Ex. B to Leith Aff. and Ex. 7 (policy countersigned by Timothy J. McAuliffe, an executive of Chartis in New York). |
| 29.  Chartis created and signed the binder for policy no. BE4943750 in New York, and sent the binder to WCI's broker, Lockton, Inc. ("Lockton") in New York. | 29.  Ex. P to Leith Aff. (e-mail correspondence transmitting binder from Elizabeth K. Johnson of AIG Excess Casualty to Timothy J. Harper of Lockton Companies, LLC in New York). |
| 30.  Chartis countersigned policy no. BE4943750 in New York. | 30.  Ex. C to Leith Aff. and Ex. 7 (policy countersigned by Timothy J. McAuliffe, an executive of Chartis in New York). |
| 31.  Lexington delivered the binder for policy no. 1053988 to Lockton in New York. | 31.  Exs. N, P to Leith Aff. (binder addressed to Tim Harper of Lockton in New York). |
| 32.  The Defendants have been named defendants in other member cases of the MDL. | 32.  *See, e.g.*, *Amato v. Liberty Mut. Ins. Co.*, C.A. No. 10-932 (naming American International Specialty Lines, Lexington, and Steadfast as defendants); *Hernandez v. AAA Insurance*, C.A. No. 10-3070 (naming Lexington as a defendant). |
| 33.  Each of the Defendants sells insurance in Louisiana and collect premiums from Louisiana residents. | 33.  Ex. 3. |
| 34.  WCI provided notice under the policies to Lexington's Massachusetts office. | 34.  Notice Letter, attached to Leith Aff. as Ex. R. |
| 35.  Lexington countersigned each of the Lexington policies in Massachusetts, and Lexington maintains its principal place of business in Massachusetts. | 35.  Ex. E to Leith Aff. and Ex. 7 (policy countersigned by Shaun E. Kelly, Chief Operating Officer of Lexington, which is located in Boston, Massachusetts); Ex. F to Leith Aff. and Ex. 7 (same); Ex. G to Leith Aff. and Ex. 7 (same). |
| 36.  The Defendants sell insurance in Massachusetts and collect premiums from | 36.  Ex. 3. |

| | |
|---|---|
| Massachusetts residents. | |
| 37.  The place of domicile, habitual residence, or business of the parties is as follows: | 37.  Ex. 3A, attached hereto. |
| <table><tr><td>PARTY</td><td>DOMICILE, RESIDENCE, OR BUSINESS</td></tr><tr><td>Pate</td><td>Resides in Corpus Christi, Texas</td></tr><tr><td>Chartis</td><td>Alaskan corporation with its principal place of business in New York</td></tr><tr><td>Illinois Union</td><td>Illinois corporation with its principal place of business in Pennsylvania</td></tr><tr><td>Lexington</td><td>Delaware corporation with its principal place of business in Massachusetts</td></tr><tr><td>Steadfast</td><td>Delaware corporation with its principal place of business in Illinois</td></tr></table> | |

March 3, 2011

Respectfully submitted,

/s/ Russ M. Herman
Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
P:  504-581-4892
F:  504-561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

NYDOCS1-963037.1

13

        Arnold Levin
        Fred S. Longer (On the Brief)
        Matthew C. Gaughan (On the Brief)
        Levin, Fishbein, Sedran & Berman
        510 Walnut Street, Suite 500
        Philadelphia, PA 19106
        P:  215-592-1500
        F:  215-592-4663
        Alevin@lfsblaw.com
        *Plaintiffs' Lead Counsel*
        *MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

| | |
|---|---|
| Dawn M. Barrios<br>Barrios, Kingsdorf & Casteix, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>P:  504-524-3300<br>F:  504-524-3313<br>Barrios@bkc-law.com | Daniel E. Becnel, Jr.<br>Becnel Law Firm, LLC<br>P.O. Drawer H<br>106 W. Seventh Street<br>Reserve, LA 70084<br>P:  985-536-1186<br>F:  985-536-6445<br>dbecnel@becnellaw.com |
| Robert C. Josefsberg<br>Podhurst Orseck, P.A.<br>25 Flagler Street, 8th Floor<br>Miami, FL 33130<br>Phone: (305) 358-2800<br>Fax: (305) 358-2382<br>rjosefsberg@podhurst.com | Bruce William Steckler (On the Brief)<br>Baron & Budd, P.C.<br>3102 Oak Lawn Ave., Suite 1100<br>Dallas, TX 75219<br>P:  214-521-3605<br>F:  214-520-1181<br>bsteckler@baronbudd.com |
| Ervin A. Gonzalez<br>Colson, Hicks, Eidson, Colson<br>  Matthews, Martinez, Gonzales,<br>  Kalbac & Kane<br>255 Aragon Avenue, 2nd Floor<br>Cora Gables, FL 33134<br>P:  305-476-7400<br>F:  305-476-7444<br>Ervin@colson.com | Ben W. Gordon, Jr.<br>Levin, Papantonio, Thomas, Mitchell<br>  Echsner & Proctor, P.A.<br>316 S. Baylen Street, Suite 600<br>Pensacola, FL 32502<br>P:  850-435-7000<br>F:  850-435-7020<br>bgordon@levinlaw.com |

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
P:  504-581-1750
F:  504-529-2931
hlambert@lambertandnelson.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
P:  239-390-1000
F:  239-390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
P:  228-374-5151
F:  228-374-6630
jrr@lumpkinreeves.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
P:  757-233-0009
F:  757-233-0455
rserpe@serpefirm.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
   & Warshauer, LLC
2800 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-2800
P:  504-522-2304
F:  504-528-9973
gmeunier@gainsben.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
P:  239-433-6880
F:  239-433-6836
sweinstein@forthepeople.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
P:  212-584-0700
F:  212-584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
P:  919-981-0191
F:  919-981-0431
dkb@lewis-roberts.com

### OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Jeremy W. Alters
Alters Law Firm, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
P:  305-571-8550
F:  305-571-8559
jeremy@alterslaw.com

Richard S. Lewis
Hausfeld LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
P:  202-540-7200
F:  202-540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
P:  985-783-6789
F:  985-783-1333
andrew@lemmonlawfirm.com

### INDIVIDUAL COUNSEL FOR PLAINTIFF ROBERT C. PATE, TRUSTEE FOR THE CHINESE DRYWALL TRUST

Robert M. Horkovich (On the Brief)
Anna M. Piazza (On the Brief)
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, New York 10020
P:  212-278-1000
F:  212-278-1733
rhorkovich@andersonkill.com
apiazza@andersonkill.com

Burton LeBlanc
Baron & Budd, P.C.
9015 Bluebonnet Blvd.
Baton Rouge, LA 70810
P:  225-927-5441
F:  225-927-5449
bleblanc@baronbudd.com

### **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all counsel of record by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 3rd day of March, 2011.

      /s/ Russ M. Herman
      Russ M. Herman

NYDOCS1-963037.1