UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) | CASE NO. 2:09-MD-02047 SECTION L JUDGE FALLON |
| (Relates to *Amato v. Liberty Mutual Ins.*, No. 2:10-cv-00932) | | MAG. JUDGE WILKINSON |

### TRAVELERS' OBJECTION TO PROPOSED SCHEDULING ORDER AND SUGGESTION OF EXPANDED ATTENDANCE AT THE SCHEDULING CONFERENCE SET FOR FEBRUARY 17, 2011

#### INTRODUCTION

On February 10, 2011, this Court entered an order setting a conference in Chambers to "discuss scheduling certain pending insurance-related motions in the MDL litigation." (ECF No. 7400.) It is Travelers[1] understanding that a scheduling order regarding Rule 12 motions and the partial summary judgment motions filed by the PSC may be entered as a result of this conference. Travelers files this objection because, as explained below, the United States Supreme Court has made clear that jurisdictional challenges must be resolved before *any* merits-based issues can be addressed, and the one-way intervention rule similarly prohibits a plaintiff from pursing a merits-based motion prior to the resolution of class certification issues. *See* FED. R. CIV. P. 23(c). Because of the importance of these issues, Travelers submits this objection into the record to provide these authorities to the Court before any scheduling order is entered.

---

[1] Defendants The Travelers Indemnity Company of Connecticut, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois, St. Paul Fire & Marine Insurance Company, and The Standard Fire Insurance Company (collectively "Travelers").

1

Additionally, Travelers notes that Court's order setting the February 17, 2011, status conference states in pertinent part that "[a]ppropriate representatives of the… Insurers' Steering Committee are to be in attendance." [Rec. Doc. 7400]  Undersigned counsel are members of the Insurer Steering Committee and upon reviewing the order, they advised Insurer Liaison Counsel of their desire to attend.  However, undersigned counsel were informed by Insurer Liaison Counsel that they did not believe it was the Court's intention to include Insurer Steering Committee members at the meeting despite the language of the order.

While mindful of the Court's streamlined approach to managing and organizing its docket in connection with its frequent meetings with various Liaison counsel, Travelers respectfully suggests that the Court expand those presently allowed to attend this particular status conference beyond just the Insurer Liaison Counsel.  Such attendance would ensure that the Court will be fully informed of the competing interests and disparate views of the Insurer Steering Committee and/or the insurer defense group at large on the briefing schedule issue.  This would relieve Insurer Liaison Counsel of the burden of familiarizing herself with the several different legal arguments and nuances and the friction of having to advocate in favor of competing positions given Insurer Liaison Counsel's clients may not share the same views of all other insurers on this issue.  Accordingly, Travelers respectfully requests that this Court maintain its order authorizing appropriate representatives of the Insurer Steering Committee to attend the conference.

**ARGUMENT**

I.    **The Scheduling Order Should Provide That Rule 12 Motions, Particularly Raising Jurisdictional Issues, Be Resolved Before Any Other Issues Are Addressed.**

The United States Supreme Court and Fifth Circuit have repeatedly held that Article III of the United States Constitution prohibits a district court from delaying resolution of threshold jurisdictional questions in order to address other issues.  *See, e.g., Steel Co. v. Citizens for a Better*

*Env't*, 523 U.S. 83, 93-101 (1998) (stating that courts must address threshold jurisdictional issues before merits issue of availability of cause of action and expressly rejecting the "hypothetical jurisdiction" approach that had been adopted by the Ninth Circuit). As the United States Supreme Court explained in *Steel Co.* in rejecting the position that jurisdiction need not be addressed first:

> We decline to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers. This conclusion should come as no surprise, since it is reflected in a long and venerable line of our cases. Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause. On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is "inflexible and without exception."

*Id.* (quotations, citations, and internal punctuation omitted). Indeed, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies," "[i]f a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); *Allen v. Wright*, 468 U.S. 737, 752 (1984) (holding federal courts "may exercise power only . . . 'as a necessity,' that is, only when they are sure they have an actual case before them") (quotation omitted); *U.S. v. Texas Tech Univ.*, 171 F.3d 279, 286-87 (5th Cir. 1999) ("To rule on a merits question before, or in addition to, answering the omni-present jurisdictional question would contravene the well-established principle that the federal courts may not issue advisory opinions"); *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778-79 (2000) ("[q]uestions of jurisdiction, of course, should be given priority -- since if there is no

3

jurisdiction there is no authority to sit in judgment of anything else") (citing *Steel Co.*, 523 U.S. at 93-102).

Both questions of subject matter as well as personal jurisdiction are conditions precedent to a federal court's authority to do anything. *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574 (1999) (reversing Fifth Circuit's *en banc* ruling that subject matter jurisdiction questions must be decided before personal jurisdiction, and holding that both types of jurisdiction are "an essential element of the jurisdiction of a district [] court, without which the court is powerless to proceed to an adjudication") (quotation and internal punctuation omitted); *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 423 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the cause (subject-matter jurisdiction) and the parties (personal jurisdiction) . . . ."); *U.S. v. Texas Tech Univ.*, 171 F.3d 279, 286 n.9 (5th Cir. 1999) ("[C]ourts must . . . decide issues of personal jurisdiction before ruling on the merits"). So fundamental are these concepts that federal appellate courts will grant the extraordinary remedy of mandamus relief where a district court fails to dismiss an action for want of jurisdiction when the record clearly reveals such jurisdiction is lacking. *See generally In re DaimlerChrysler Corp.*, 294 F.3d 697, 699 (5th Cir. 2002) ("Mandamus is appropriate when the trial court has exceeded its jurisdiction or has declined to exercise it, or when the trial court has so clearly and indisputably abused its discretion as to compel prompt intervention by the appellate court.").

As these authorities make compellingly clear, this Court should (and indeed must) address questions of jurisdiction at the outset of the litigation, and before any other issues are addressed. Any ruling on substantive issues before then would amount to hypothetical (and impermissible) advisory opinions. Accordingly, the scheduling order should give priority to these types of motions and defer any other motions until after such threshold Rule 12 motions are resolved.

**II.     Any Scheduling Order That Would Allow The Plaintiffs Or PSC To File A Motion Seeking A Ruling On A Merits Issue Would Violate The One-way Intervention Rule.**

  **A.     The 1966 Amendments to Rule 23 eliminate one-way intervention by prohibiting plaintiffs from seeking rulings on merits issues prior to class certification and notice.**

For more than four decades, the rule in class actions has been clear -- absent the defendant's consent, a court may *not* determine liability prior to certification and the completion of the class notice process. *See, e.g., Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 353-54 (7th Cir. 1975) ("Rule 23 requires class certification prior to a determination on the merits. . . . Section 23(c)(3), by providing that the judgment shall bind all class members, was specifically intended to confront the one-way intervention problem"). The Fifth Circuit and this Court have recognized this rule. *Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2006 U.S. Dist. LEXIS 4472, at *14-15 (E.D. La. Feb. 6, 2006) (recognizing the one-way intervention rule and that notice must occur prior to "settlement or adjudication on the merits") (citation omitted); *see also Robinson v. Union Carbide Corp.*, 538 F.2d 652, 662-63 (5th Cir. 1976) (noting the 1966 amendments to Rule 23 were "designed to prevent 'sideline sitting' and subsequent 'one-way intervention' by the eligible class member").

"One-way intervention" occurs when potential class members "await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 546-48 (1974). Prior to the 1966 amendments to Federal Rule of Civil Procedure 23, one-way intervention was permitted, enabling potential class members to await a favorable merits determination before joining the lawsuit (or, if the defendant prevailed on any part of the merits, allowing the potential class members to sue yet again, depriving the defendant of res judicata protection). *Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n*, 814 F.2d 358, 367 (7th Cir. 1987); Fed. R. Civ. P. 23 Advisory Committee Notes. As one commentator aptly noted, "'one-way intervention,' amounted to placing

5

bets on a horse race after it had run." Mattioli, Opting Out: Procedural Fair Use, 12 Va. J.L. & Tech. 3, 17 (2007).

The 1966 amendments to Federal Rule of Civil Procedure 23 were designed to eliminate "spurious" class actions in which "class members might be permitted to intervene after a decision on the merits favorable to their interests . . . to secure the benefits of the decision for themselves, although they would presumably be unaffected by an unfavorable decision." Fed. R. Civ. P. 23 Advisory Committee Notes; *Peritz*, 523 F.2d at 353-54 ("The obvious import of this language is that the amended Rule 23 *requires* class certification prior to a determination on the merits. . . . Section 23(c)(3), by providing that the judgment shall bind all class members, was specifically intended to confront the one-way intervention problem") (emphasis in original); *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) (noting the amended language "clearly contemplates" that both certification and notice must occur prior to a merits determination, and "the history of the development of Rule 23(c)(2) makes clear that the rule was adopted to prevent 'one-way intervention'"), cert. denied, 517 U.S. 1121 (1996); *see also Am. Pipe*, 414 U.S. at 547-48 (amended Rule 23 assures that certification and notice occur before merits determinations).[2]

As the Seventh Circuit put it, under the 1966 amendments:

> a person's decision whether to be bound by the judgment -- like the court's decision whether to certify the class -- would come well in advance of the decision on the merits. Under the scheme of the revised Rule 23, a member of the class must cast his lot at the beginning of the suit and all parties are bound,

---

[2] The 1966 amendments to Rule 23 provided that certification was to be addressed "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(c)(1)(A). The Rule further provides that the order must define the class, and that notice must be directed to the class explaining, *inter alia*, the "binding effect of a class judgment on members under Rule 23(c)(3)," and that any judgment "[w]hether or not favorable to the class [] must" "include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members." FED. R. CIV. P. 23(c)(1)-(3).

>for good or ill, by the results. Someone who opted out could take his chances separately, but the separate suit would proceed as if the class action had never been filed. As the Advisory Committee put it: "Under proposed subdivision (c)(3), one-way intervention is excluded; the action will have been early determined to be a class or a nonclass action, and in the former case the judgment, whether or not favorable, will include the class"

*Premier Elec. Constr. Co. v. National Electrical Contractors Ass'n, Inc.*, 814 F.2d 358, 362 (7th Cir. 1987).

Accordingly, as the Supreme Court and numerous other courts have correctly recognized, the Plaintiffs and PSC are prohibited from filing any motion seeking a ruling on a merits issue before class certification and, to the extent certification occurs, notice is issued to the class. Alternatively, if this Court allows such motions to be heard, regardless of the outcome, the class allegations must be stricken from the pleadings because class certification would be prohibited. *See, e.g., Peritz*, 523 F.2d at 354 (vacating class certification order and requiring case to proceed as an individual action because "[i]nasmuch as the plaintiffs here did not seek certification, and in fact affirmatively sought resolution on the merits prior to certification in the face of objections by the defendants, they have themselves effectively precluded any class certification in this case.").

**B.  The one-way intervention rule is designed to protect the due process rights of Defendants, and accordingly, a violation of that rule would violate the Due Process Clause.**

Not only is the PSC's attempt to seek a ruling on the merits barred by Rule 23, it also runs afoul of the Due Process Clause protections that are embodied in that rule. Any consideration of a Plaintiff or PSC filed motion on the merits relating to insurance coverage issues would Travelers in precisely the situation that the rule against one-way intervention prohibits: potential class members will be permitted to "stand on the sidelines" until a favorable merits decision, and then join the suit to share in the spoils without fear of adverse consequences. *See Premier Elec.*, 814 F.2d at 357. Travelers will have unfairly borne the risk of litigating the merits issues, while potential class

members will have incurred no risk.  As such, the case would turn one-sided against Travelers—a proverbial "heads, I win, tails, you lose" situation.  This is a fundamental violation of due process.  *E.g., Isaacs v. Sprint Corp.*, 261 F.3d 679, 681 (7th Cir. 2001) (Posner, J.) (observing that if liability is determined against the defendant prior to class notice, "few if any class members will opt out and [the defendant] will be exposed to enormous potential liabilities"); *Kyriazi v. W. Elec. Co.*, 647 F.2d 388, 394 n.8 (3d Cir. 1981) (due process concerns underlie Rule 23, which "derives chiefly from the interest of defendants in mutuality of estoppel by judgment"); *see also Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985) (stating that a class action defendant has a "distinct and personal interest in seeing the entire plaintiff class bound by res judicata just as the [defendant] is bound").[3]

In *Isaacs*, Judge Posner, writing for the court, reversed a district court's certification order because it provided that the class would receive notice only after two liability findings if decided in favor of the class.  *Issacs*, 261 F.3d at 681.  Judge Posner summarized the effect of that order:

> What this means is that if the first two [liability] rulings go in favor of Sprint, no members of the class, other than the named plaintiffs, will fail to opt out of the suit, and the result will be that only the named plaintiffs will be bound by the judgment.  If, however, the judge proceeds to stage 3, few if any class members will opt out and Sprint will be exposed to enormous potential liabilities.  So even if Sprint prevails at stages 1 or 2, it will have to face the class members in other cases, while if the judge rules against it at those stages its prospects will darken greatly as a result of the combined effects of the two rulings -- portents of likely future judgments against Sprint -- plus the effect of those rulings in encouraging members of the class not to opt out of the suit.  Were it not for this "one-way intervention" authorized by the challenged order, Sprint would face a smaller potential liability because members of the class would have a greater incentive to opt out of the suit.  If the order of certification stands, the pressure on Sprint to settle will be enormous.

---

[3] These due process concerns would not be avoided by allowing the PSC to pursue similar motions in individual actions in these proceedings, because the effect of such a ruling would still be the same for Due Process purposes, it would allow putative class members to gain a preview of how this Court will rule on an issue implicated by their claims before they have to decide whether or not to opt-out of the class action or be bound.  This is particularly so here given that the numerous separate lawsuits consolidated under the MDL banner have been managed largely as if they were all one case.

*Id.*; *see also* Nagareda, The Preexistence Principle and the Structure of the Class Action, 103 Colum. L. Rev. 149, 175 (2003) ("[O]ne-way intervention gave rise to a glaring asymmetry in the class action, with defendants faced with the prospect of a loss that effectively would inure to the benefit of all potential plaintiffs but with defendants unable to bind all such persons to the class judgment in the event of a defense victory.").

As these courts have recognized, the fundamental problem with a pre-notice liability determination is that putative class members will decide to participate in the case only if they have already won. This creates obvious prejudice to the defendant that is prohibited by the Due Process Clause. Thus, as a matter of settled law, a defendant has a right to insist on class certification being determined prior to the resolution of a merits issue. Otherwise, the merits decision—whether for the Plaintiffs or against them—requires the class allegations to be stricken. Here, Travelers objects to the PSC's attempt to obtain a merits ruling prior to class certification, and objects to any scheduling order that would allow such a result unless the class action allegations are stricken from the pleadings under Rule 23. Travelers expressly preserves its right to challenge any subsequent motion for class certification on this basis.

## CONCLUSION

For all the foregoing reasons, Defendants The Travelers Indemnity Company of Connecticut, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois, and The Standard Fire Insurance Company, respectfully request that this Court:

(1) Enter a scheduling order that sets forth a reasonable schedule for motions under Rule 12 or that otherwise address defects in the pleadings, and that defers any schedule for other motions until after such threshold motions are heard and resolved;

(2) Maintain this Court's prior order allowing appropriate representatives of the Insurer Steering Committee to attend the February 17, 2011, status conference; and

(3) Grant such other relief this Court deems necessary and proper.

February 14, 2011              Respectfully submitted by,

/s/ Seth A. Schmeeckle
Ralph S. Hubbard III, T.A., La. Bar 7040
Seth A. Schmeeckle, La. Bar 27076
LUGENBUHL, WHEATON, PECK, RANKIN
& HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Phone:  (504) 568-1990
Fax:  (504) 310-9195
Email:  rhubbard@lawla.com
           sschmeeckle@lawla.com

And

Donna J. Vobornik
Daniel E. Feinberg
Anthony T. Eliseuson
SNR DENTON US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6404
Phone: (312) 876-8000
Fax:  (312) 876-7934
donna.vobornik@snrdenton.com
daniel.feinberg@snrdenton.com
anthony.eliseuson@snrdenton.com

*Attorneys for Defendants The Travelers Indemnity Company of Connecticut, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois, St. Paul Fire & Marine Insurance Company, and The Standard Fire Insurance Company*

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing Objection to Proposed Scheduling Order and Suggestion of Expanded Attendance at the Scheduling Conference Seth for February 17, 20100 has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 14th day of February, 2011.

                         /s/ Seth A. Schmeeckle

                         Seth A. Schmeeckle