**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  CHINESE MANUFACTURED | * | |
| DRYWALL PRODUCTS LIABILITY | * | MDL No. 2047 |
| LITIGATION | * | |
| | * | |
| | * | SECTON "L" |
| THIS DOCUMENT RELATES TO: | * | |
| | * | |
| Sean and Beth Payton, et al | * | JUDGE FALLON |
| | * | |
| vs. | * | |
| | * | MAG. JUDGE WILKINSON |
| Knauf Gips, KG, et al | * | |
| | * | |
| Case No. 2:09-cv-07628-EEF-JCW | * | |

*****************************************

**EXCEL CONSTRUCTION OF S.W. FLORIDA, INC.'S**
**AMENDED ANSWER, AFFIRMATIVE DEFENSES, RULE 12 DEFENSES TO**
**PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT,**
**DEMAND FOR JURY TRIAL, CROSS-CLAIM AGAINST KNAUF KG, ET AL.,**
**CROSS-CLAIM AGAINST BANNER SUPPLY CO., ET AL., AND**
**THIRD-PARTY COMPLAINT AGAINST J&A STUCCO DRYWALL, INC.**

**NOW INTO COURT**, through undersigned counsel, comes **Excel Construction of S.W. Florida, Inc. ("Excel Construction")**, sought to be made defendant herein, for the purpose of amending its original Answer (Document 2421) pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

Excel Construction fully adopts and incorporates by reference its *Answer, Affirmative Defenses, Rule 12 Defenses Plaintiffs' Omnibus Class Action Complaint and Demand for Jury Trial* (Document 2421) as if plead here *in extenso*.

AND NOW for further answer, Defendant/ Cross-Claimant/ Third-Party-Plaintiff, **Excel Construction of S.W. Florida, Inc. ("Excel Construction")**, by and through its undersigned counsel, alleges for its Cross-Claims against Defendants/Cross-Defendants Knauf Gips KG; Knauf Plasterboard (Tianjin) Co., Ltd.; Knauf Plasterboard (Wuhu), Co., Ltd.; and Guangdong

1

Knauf New Building Materials Products Co., Ltd. (collectively, "**Knauf**"), Cross-Claim against Defendants/Cross-Defendants Banner Supply Co.; Banner Supply Company Pompano, LLC; Banner Supply Company Fort Myers, LLC; Banner Supply Company Tampa LLC; Banner Supply Company Port St. Lucie, LLC; and Banner Supply International, LLC (collectively, "**Banner**") and Third-Party Complaint against Third-Party Defendant, J&A Stucco Drywall, Inc. ("**J&A**"), as follows

### The Parties, Jurisdiction, and Venue

1.　　The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Excel Construction.

2.　　The *Payton* Plaintiffs Omnibus Class Action Complaint (I) ("**Omni I**") identifies Excel Construction as a Defendant in the Builder/Developer Subclass.[1]

3.　　Excel Construction is named in Omni I by plaintiff Stephen Lopez.[2]

4.　　Stephen Lopez alleges ownership of property at 622 Wilmington Parkway in Cape Coral, Florida.[3]

5.　　Defendant/ Cross-Claimant/ Third-Party Plaintiff Excel Construction was and is a Florida corporation doing business in Cape Coral, Florida, where this cause of action arose.  At all material times, Excel Construction was a builder of residential homes in Florida.

6.　　Excel Construction constructed a single-family residential home at 622 Wilmington Parkway for original (first) owners.

---

[1] *See* Doc. 1 at ¶ 2231.
[2] *See* Doc. 3160-11 at p. 12 (N.B.: In an Order of May 18, 2010 (Doc 3160), the Court approved the amendment of all exhibits to Omni I to dismiss and clarify claims against certain defendants.  This amendment did not change the claims against Excel Construction (*See* Doc. 1-11 at p. 22, filed originally with Omni I, linking Stephen Lopez and Excel Construction)).
[3] *See* Doc. 1 at ¶ 703.

7.     Upon information and belief, Plaintiff Stephen Lopez ultimately purchased the property at 622 Wilmington Parkway.

8.     The Plaintiffs allege that drywall used in the Excel Construction-built homes was defective and caused damages to the Plaintiffs.

9.     Excel Construction denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

10.    Plaintiffs also name Defendants/ Cross-Defendants Knauf Gips KG; Knauf Plasterboard (Tianjin) Co., Ltd.; Knauf Plasterboard (Wuhu), Co., Ltd.; and Guangdong Knauf New Building Materials Products Co., Ltd. (collectively, "**Knauf**") as members of the Manufacturing Defendants subclass.[4]

11.    Excel Construction adopts and incorporates, as if fully set forth herein, paragraphs 2074-2079 of Omni I identifying Knauf and describing the nature of its business activities.

12.    Upon information and belief, Knauf manufactured the drywall in the property located at 622 Wilmington Parkway, now purportedly owned by Plaintiff Lopez.

13.    Plaintiffs also name Defendants/ Cross-Defendants Banner Supply Co.; Banner Supply Company Pompano, LLC; Banner Supply Company Ft. Myers, LLC; Banner Supply Company Tampa LLC; Banner Supply Company Port St. Lucie, LLC; and Banner Supply International, LLC (collectively, "**Banner**") as members of the Distributor/Supplier subclass.[5]

14.    Excel Construction adopts and incorporates, as if fully set forth herein, paragraphs 2085-2090 of Omni I identifying Banner and describing the nature of its business activities.

---

[4] *See* Doc. 1 at ¶¶ 2074-2079.  N.B.: Omni I originally named "Knauf Plasterboard (Dongguan) Co., Ltd." as a manufacturing defendant.  (*See* Doc. 1 at ¶ 2079).  In an Order of March 12, 2010, the Court granted Plaintiffs' Motion for Judicial Assistance and clarified that Omni I is deemed to state "Guangdong Knauf New Building Materials Products Co., Ltd." in all instances where the name "Knauf Plasterboard (Dongguan) Co., Ltd." appears. (*See* Doc. 1719).
[5] *See* Doc. 1 at ¶¶ 2085-2090.

15.     Banner distributed/supplied the drywall in the property located at 622 Wilmington Parkway, now purportedly owned by Plaintiff Lopez.

16.     Upon information and belief, Third-Party Defendant J&A is an entity organized under Florida law with its principal place of business in Florida.  J&A is an installer of drywall and related building products

17.     Pursuant to its subcontract agreement with Excel Construction, J&A installed the drywall in the property located at 622 Wilmington Parkway, now purportedly owned by Plaintiff Lopez.

18.     Excel Construction brings this Cross-Claim pursuant to Federal Rule of Civil Procedure 13(g).

19.     Excel Construction brings this Third-Party Complaint pursuant to Federal Rule of Civil Procedure 14.

20.     Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. § 1367 insofar as Excel Construction's Cross-Claim and Third-Party Complaint arise from the same transactions or occurrences as Plaintiffs' action.  Venue in this district for coordinated or consolidated pretrial proceedings is consistent with the Transfer Order of the Judicial Panel on Multidistrict Litigation (JPML).  *See In re: Chinese-Manufactured Drywall Products Liability Litigation*, 629 F.Supp.2d 1346 (J.P.M.L. Jun. 15, 2009).  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and Third-Party Complaint.

**General Allegations**

21.      As set forth in more detail in Omni I, Plaintiffs allege that their homes were built using defective drywall designed, manufactured, and processed in China, and that Excel Construction (as builder) is liable for damages to Plaintiffs.

22.      Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances, and Plaintiffs' personal property (the "**Other Property**").

23.      The drywall contained in the Plaintiffs' Homes was processed, distributed, sold, and/or installed by one or all of the Cross-Claim/ Third-Party Complaint Defendants.

24.      Excel Construction purchased drywall for use in the subject home from Defendant/Cross-Claim Defendant Banner.

25.      Upon information and belief, the subject drywall was manufactured by Knauf.

26.      As a general contractor, Excel Construction hired installer and Third-Party Defendant J&A to install drywall in certain Plaintiffs' homes.

27.      At all material times, Knauf, Banner, and J&A knew that the drywall in question was going to be used in construction of residential homes.  Knauf, Banner, and J&A knew that Excel Construction required and expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

28.      Excel Construction did not know, could not have known, and was not made aware of any problem with the drywall.  The drywall manufactured, processed, distributed, sold, and/or

installed by Knauf, Banner, and J&A for use in the construction of the Homes was not altered and/or otherwise substantively changed by Excel Construction.

29.    For the purpose of this Cross-Claim and Third-Party Complaint only, and not constituting an admission of Plaintiffs' allegations or liability for Excel Construction, and without in any way adopting the Plaintiffs' allegations as true, the allegations set forth in the Plaintiffs' Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by allegedly-defective drywall in the Homes.

30.    Without admitting any liability of damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Plaintiffs' Complaint, at all material times, Knauf, Banner, and J&A knew or should have known of the drywall's applications, performance, and dangers.

31.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Plaintiffs' Complaint, Knauf's, Banner's, and J&A's acts and omissions in processing, distributing, selling, and/or installing the defective drywall directly and proximately caused and/or exposed Excel Construction to substantial liability and damages to Plaintiffs.

32.     Excel Construction did not know, could not have known, and was never informed by Knauf, Banner, or J&A that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

33.     Consequently, Knauf, Banner, or J&A are liable for any tort or other fault with respect to the use of the allegedly-defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages.

34.     Knauf, Banner, or J&A are further liable to Excel Construction for damages in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.  Additionally, Knauf's, Banner's, or J&A's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, lost profits, and attorneys' fees.

35.     All conditions precedent to the filing of this Cross-Claim and Third-Party Demand have been performed, excused, or otherwise waived.

### Excel Construction's Cross-Claim against Knauf
### (Counts 1-13)

### Count 1- Negligence
### (Against Knauf)

36.     Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

37.     Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

38.     Knauf manufactured, distributed, supplied, and/or sold the drywall that was installed in the homes.

39.     As such, Knauf owed Excel Construction a duty to, among other things, exercise reasonable care to (i) investigated and/or inspect, market, distribute, supply, and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of Excel Construction's customers; and, (ii) market, distribute, supply, and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

40.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Knauf knew or should have known that the drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

41.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Knauf breached its duty of care to Excel Construction by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold, and/or supplied for installation in the Home to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the upstream manufacturers, importers, wholesalers or distributors of the drywall components that Knauf sold and/or supplied; (iii) manufacturing, acquiring, procuring, marketing,

distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Excel Construction with drywall that complied with all applicable building and industry standards.

42.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such breaches in Knauf's duty of care were the direct and proximate cause of Excel Construction's injuries, losses, and damages.

43.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, Knauf knew or reasonably should have known that its acts and omissions in manufacturing, marketing, distributing, supplying, and/or selling defective drywall would expose Excel Construction to substantial liability and damages.  If Knauf had exercised that degree of care that  prudent or reasonably cautious manufacturer and/or distributor acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Excel Construction would ensure as a result of manufacturing, marketing, distributing, supplying, and/or selling defective drywall.

44.     Without admitting any liability or damages to Plaintiffs, Excel Construction was damaged by Knauf's breaches of its duties of care, which directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction

in defending against these claims.  Knauf's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

WHEREFORE, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Knauf, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 2- Common Law Indemnity
### (Against Knauf)

45.     Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

46.     Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defective drywall contained in the Homes.

47.     Excel Construction is not and was not in the business of manufacturing, distributing, supplying, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, distributed, supplied, and/or sold by Knauf. Excel Construction justifiably relied on Knauf to manufacture drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

48.     Excel Construction is entirely without fault for the injuries alleged by Plaintiffs.

49.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf.

50.     A special relationship existed between Knauf and Excel Construction such that any liability imposed upon Excel Construction in this matter will be secondary, passive, solely vicarious, constructive, derivative, or technical to Knauf.  Knauf manufacutred drywall to be installed in the homes.  Moreover, to the extent that plaintiffs are successful in proving their

claims, the drywall manufactured, distributed, sold, and/or supplied by Knauf was defective and wholly to blame for Plaintiffs' injuries.

51.     As a result of the claims that have been filed against Excel Construction, Excel Construction has incurred losses, damages, costs, attorneys' fees, and expenses due to the alleged failure of Knauf to manufacture, distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

52.     If Excel Construction is found to be liable to Plaintiffs, Knauf is liable to Excel Construction for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Excel Construction, including, without limitation, payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Excel Construction demands judgment for indemnity in its favor against Cross-Claim Defendant, Knauf, for compensatory damages plus attorneys' fees, interest, and costs as damages, and for such other relief as the Court deems just and proper.

## Count 3- Contribution Pursuant to Florida Statute 768.31
### (Against Knauf)

53.     Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

54.     This is an action, stated in the alternative, against Knauf for contribution pursuant to Section 768.31, Florida Statutes.

55.     Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defects in the drywall contained in the Home.

56.     Without admitting any liability or damages to Plaintiffs, should Excel Construction be found liable, Knauf would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

57.     Excel Construction has not caused or contributed to the damages alleged by the Plaintiffs in this action.

58.     To the extent that any common liability is found with respect to Excel Construction, Excel Construction hereby asserts its right of contribution against Knauf for its pro rata share of the liability.

59.     Knauf should be required to repay Excel Construction for any loss, damages, costs, and expenses, including attorneys' fees, Excel Construction is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Excel Construction, in excess of its pro rata share of any common liability.

**WHEREFORE**, Excel Construction demands that judgment be entered against Cross-Claim Defendant, Knauf, for its pro rata share of the liability, if any, found against Excel Construction in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## Count 4- Equitable Subrogation
### (Against Knauf)

60.     Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

61.     This is an action, stated in the alternative, against Knauf for equitable subrogation.

62.     Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defects in the drywall contained in the Home.

63.     Excel Construction is not and was not in the business of manufacturing, distributing, supplying, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, distributed, supplied, and/or sold by Knauf. Excel Construction justifiably relied on Knauf to manufacture drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

64.     Without admitting any liability or damages to Plaintiffs, Excel Construction is not primarily liable for any liability to the Plaintiffs.

65.     To the extent that Excel Construction is required to pay damages for any fault of Knauf to protect its own interests, and not as a volunteer, Excel Construction would be entitled to reimbursement from Knauf under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Excel Construction, including, without limitation, payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Excel Construction and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Excel Construction, as well as reasonable

costs and attorneys' fees incurred by Excel Construction in defending against the claims brought by Plaintiffs.

66.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Jim Excel Construction & Sons, Inc. demands judgment in its favor and against Cross-Claim Defendant, Knauf, for equitable subrogation, as well as attorneys' fees, costs, and interest, together with any such other relief as this Court deems just and proper.

## Count 5- Breach of the Implied Warranty of Merchantability under Common Law
### (Against Knauf)

67.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

68.    This is an action against Knauf for breach of the implied warranty of merchantability under the common law.

69.    Knauf manufactured the drywall installed in the Plaintiffs' Home.

70.    Knauf knew that its ultimate consumers required and expected that drywall it manufactured, distributed, supplied, and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and Excel Construction justifiably relied on Knauf's skill and judgment to supply such drywall for the construction of residential homes.

71.    Pursuant to the relationship between the parties, Knauf is deemed to have provided Excel Construction with an implied warranty of merchantability as to the drywall materials manufactured, distributed and/or sold by Knauf.

72.    The drywall manufactured, distributed, supplied, and/or sold by Knauf for use in the construction of the homes was not altered and/or otherwise substantively changed by Excel Construction.

14

73.     Pursuant to common law, Knauf warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

74.     Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defective drywall contained in the Homes.  Excel Construction denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Excel Construction is found liable to Plaintiffs, Knauf breached the implied warranty of merchantability by manufacturing, distributing, supplying, and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

75.     As a result of the claims that have been filed against Excel Construction, Excel Construction has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf to manufacture, distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending these Claims.  Knauf's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

76.     Knauf is aware of the alleged defective gypsum drywall, but Knauf has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Knauf, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 6- Breach of the Implied Warranty of Merchantability under Florida Statute 672.314
### (Against Knauf)

77.     Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

78.     This is an action against Knauf for breach of the implied warranty of merchantability under Florida Statute 672.314.

79.     Knauf manufactured the drywall that was installed in the Plaintiffs' Home.

80.     Knauf knew that consumers such as Excel Construction required and expected that drywall it manufactured, distributed, supplied, and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and Excel Construction justifiably relied on Knauf's skill and judgment to supply such drywall for the construction of residential homes.

81.     Pursuant to the relationship between the parties, Knauf is deemed to have provided Excel Construction with an implied warranty of merchantability as to the drywall materials manufactured, distributed and/or sold by Knauf.

82.     The drywall manufactured, distributed, supplied, and/or sold by Knauf for use in the construction of the homes was not altered and/or otherwise substantively changed by Excel Construction.

83.    Pursuant to Florida Statute 672.314, Knauf warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

84.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defective drywall contained in the Homes.  Excel Construction denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Home is defective and not merchantable and Excel Construction is found liable to Plaintiffs, Knauf breached the implied warranty of merchantability by manufacturing, distributing, supplying, and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

85.    As a result of the claims that have been filed against Excel Construction, Excel Construction has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending these Claims. Knauf's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

86.    Knauf is aware of the alleged defective gypsum drywall, but Knauf has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Knauf, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 7- Breach of the Implied Warranty of Fitness
### (Against Knauf)

87.     Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

88.     This is an action against Knauf for breach of the implied warranty of fitness.

89.     Knauf manufactured the drywall installed in the Plaintiffs'' Home.

90.     Knauf knew that consumers like Excel Construction required and expected the drywall it manufactured, distributed, supplied, and/or sold to be safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

91.     Excel Construction justifiably relied on Knauf's skill and judgment to sell drywall fit for the particular purpose of constructing residential homes.

92.     Pursuant to the relationship between the parties, Knauf is deemed to have provided Excel Construction with an implied warranty of fitness as to the drywall materials manufactured, distributed, supplied, and/or sold by Knauf.

93.     The drywall manufactured, distributed, supplied, and/or sold by Knauf for use in the construction of the Homes was not altered and/or otherwise substantively changed by Excel Construction.

94.     Knauf impliedly warranted that the drywall was safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

95.     Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Excel Construction denies that it has any liability to Plaintiffs.

However, to the extent that Plaintiffs are successful in providing that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Excel Construction is found liable to Plaintiffs, Knauf breached the implied warranty of fitness by manufacturing, distributing, supplying, and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

96.     As a result of the claims that have been filed against Excel Construction, Excel Construction has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending these Claims. Knauf's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

97.     Knauf is aware of the alleged defective gypsum drywall, but Knauf has failed to repair or replace the drywall.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Knauf, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

<u>**Count 8- Negligent Failure to Warn**</u>
**(Against Knauf)**

98.     Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

99.     Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

100.     Knauf manufactured, distributed, supplied, and/or sold the drywall installed in the Plaintiffs' home.

101.     Knauf owed Excel Construction a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it manufactured, distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Excel Construction about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn Excel Construction about any problems or dangers in using the drywall for residential construction.

102.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

103.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf knew or should have known that unless it warned Excel Construction of the risk of using the drywall it distributed, sold, and/or supplied, Excel Construction would suffer harm.  However, Knauf failed to provide an adequate warning of such danger.

104.     Excel Construction did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.   Without a warning, Excel Construction had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

105.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf breached its duty of care to Excel Construction by (i) failing to disclose any defects in the drywall materials it manufactured, distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Excel Construction about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn Excel Construction about any problems or dangers in using the drywall for residential construction, about which Knauf knew or reasonably should have known.

106.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf's duty of care were the direct and proximate cause of Excel Construction's injuries, losses, and damages.

107.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Excel Construction to substantial liability and damages.   If Knauf

had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Excel Construction would ensue as a result of failing to disclose and/or warn of drywall defects.

108.    Without admitting any liability or damages to Plaintiffs, Excel Construction was damaged by Knauf's breaches of its duties of care, which directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  Knauf's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Knauf, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 9- Breach of the Post-Sale Duty to Warn
### (Against Knauf)

109.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

110.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious

or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

111.    Knauf manufactured, distributed, supplied, and/or sold the drywall that was in stalled in Plaintiffs' Home.

112.    To the extent Plaintiffs are successful in proving that drywall manufactured, distributed, supplied, and/or sold by Knauf was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the time such drywall left Knauf's control, Knauf knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

113.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf, as the manufacturer, distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Knauf breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

114.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

115.    Consumers, such as Excel Construction, to whom a warning might have been provided could have been identified by Knauf

116.     A warning could have been effectively communicated to consumers such as Excel Construction and acted on by them.

117.     At all material times, Knauf knew or should have known of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Excel Construction was unaware of potential dangers and/or risk of harm associated with the use of Knauf's drywall product in residential construction.

118.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable distributor, seller and/or supplier in Knauf's position would have provided a post-sale warning.

119.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Excel Construction was damaged by Knauf's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.   Knauf's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Knauf, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**Count 10- Strict Products Liability**
**(Against Knauf)**

120.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

121.    This is an action, stated in the alternative, against Knauf for strict products liability.

122.    At all material times, Knauf was in the business of manufacturing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

123.    At all material times, the gypsum drywall contained in Plaintiffs' Homes was manufactured, placed into the stream of commence, distributed, supplied and/or sold by Knauf.

124.    At the time said drywall was manufactured, placed into the stream of commerce, distributed, supplied and/or sold by Knauf, Knauf intended that the drywall reach consumers and/or ultimate users of the drywall, such as Excel Construction.

125.    Knauf expected the gypsum drywall to reach Excel Construction and/or the Plaintiffs' Home without substantial change affecting its condition, and the alleged defective gypsum drywall did, in fact, reach Excel Construction and/or the Home without substantial change affecting that condition.

126.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

127.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, distributed, placed into the stream of commerce, supplied and/or sold by Knauf directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this section and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  Knauf's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Knauf, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 11- Strict Products Liability Failure to Warn
### (Against Knauf)

128.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

129.    This is an action, stated in the alternative, against Knauf for strict products liability failure to warn.

130.    At all material times, Knauf was in the business of manufacturing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

131. At all material times, the gypsum drywall contained in the Homes was manufactured, placed into the stream of commerce, distributed, and/or sold by Knauf.

132. At the time said drywall was manufactured, placed into the stream of commerce, distributed, supplied and/or sold by Knauf, Knauf intended that the drywall reach consumers and/or ultimate users of the drywall, such as Excel Construction.

133. Knauf expected the gypsum drywall to reach Excel Construction and/or the Plaintiffs' Home without substantial change affecting its condition, and the gypsum drywall did in fact reach Excel Construction and/or the Home without substantial change affecting that condition.

134. Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

135. To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf was required to provide a warning. However, Knauf failed to provide an adequate warning of such danger.

136. Excel Construction did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

137. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more

fully alleged in the Complaint, it was so because Knauf failed to warn Excel Construction of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Excel Construction had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

138.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and  proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  Knauf's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Knauf, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**Count 12- Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**Florida Statute 501.201, et seq.**
**(Against Knauf)**

139.   Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

140.   This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

141.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

142.   At all material times, Excel Construction was a person and a consumer of drywall as defined under FDUTPA.

143.   At all material times, Knauf engaged in trade or commerce by manufacturing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Excel Construction.

144.   Knauf manufactured, advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Plaintiffs' Home.

145.   At the time Knauf manufactured, advertised, solicited, offered, distributed, supplied and/or sold the drywall, Knauf represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

146.   Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing

serious or unreasonable risk of harm or injury to persons and/or property including but not limited to the Other Property in the Homes.

147.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf manufactured, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Knauf knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

148.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged  in the Complaint, Plaintiffs' claims arise from Knauf's unfair and deceptive conduct in manufacturing, selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

149.    To the extent Plaintiffs are successful in proving their claims, Knauf's unfair and deceptive conduct in manufacturing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

150.    Knauf's unfair and deceptive conduct in manufacturing, advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall and/or its failure to

disclose that the drywall unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as Excel Construction acting reasonably in the same circumstances, to the consumer's detriment.   A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.   A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

151.   Knauf's unfair and deceptive conduct in manufacturing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Excel Construction.

152.   To the extent Plaintiffs are successful in proving their claims, Excel Construction did not get what is bargained for and is entitled to its actual damages, plus attorneys' fees and court costs.   Knauf's violations of FDUTPA directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction

in defending against these claims.  Knauf's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

WHEREFORE, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Knauf, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

**Count 13- Unjust Enrichment**
**(Against Knauf)**

153.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

154.    This is an action, stated in the alternative, against Knauf for unjust enrichment.

155.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

156.    Knauf manufactured, distributed, supplied, and/or sold the gypsum drywall that was installed in the Plaintiffs' Home.

157.    Knauf received money from Excel Construction through supplier Banner and/or other upstream importers/distributors/suppliers as a result of Excel Construction's purchases of defective drywall installed in the Home.

158.    In delivering such payment, monies and/or funds to Knauf, downstream consumers such as Excel Construction conferred a benefit, *i.e.*, funds and profit, to Knauf, which had knowledge thereof.

159.    Knauf voluntarily accepted and retained the benefit conferred upon it by downstream consumers such as Excel Construction

160.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf's acts and omissions in manufacturing, distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.

161.    The circumstances described herein under which Knauf profited from manufacturing, selling and/or supplying drywall make it inequitable for Knauf to retain those funds and profits.

162.    Excel Construction has no adequate remedy at law.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Knauf, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## Excel Construction's Cross-Claim against Banner
## (Counts 14-26)

**Count 14- Negligence**
**(Against Banner)**

163.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

164.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

165.    Banner distributed, supplied, and/or sold the drywall that was installed in the homes.

166.    As such, Banner owed Excel Construction a duty to, among other things, exercise reasonable care to (i) investigated and/or inspect, market, distribute, supply, and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of Excel Construction's customers; and, (ii) market, distribute, supply, and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

167.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner knew or should have known that the drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

168.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint,

Banner breached its duty of care to Excel Construction by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold, and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Banner sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywll which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Excel Construction with drywall that complied with all applicable building and industry standards.

169.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such breaches in Banner's duty of care were the direct and proximate cause of Excel Construction's injuries, losses, and damages.

170.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, Banner knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying, and/or selling defective drywall would expose Excel Construction to substantial liability and damages.  If Banner had exercised that degree of care that  prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Excel Construction would ensure as a result of marketing, distributing, supplying, and/or selling defective drywall.

171.    Without admitting any liability or damages to Plaintiffs, Excel Construction was damaged by Banner's breaches of its duties of care, which directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  Banner's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Banner, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 15- Common Law Indemnity
#### (Against Banner)

172.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

173.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defective drywall contained in the Homes.

174.    Excel Construction is not and was not in the business of distributing, supplying, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied, and/or sold by Banner.  Excel Construction justifiably relied on Banner to supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

36

175.    Excel Construction is entirely without fault for the injuries alleged by Plaintiffs.

176.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner.

177.    A special relationship existed between Banner and Excel Construction such that any liability imposed upon Excel Construction in this matter will be secondary, passive, solely vicarious, constructive, derivative, or technical to Banner.   Banner supplied drywall to be installed in the homes.   Moreover, to the extent that plaintiffs are successful in proving their claims, the drywall distributed, sold, and/or supplied by Banner was defective and wholly to blame for Plaintiffs' injuries.

178.    As a result of the claims that have been filed against Excel Construction, Excel Construction has incurred losses, damages, costs, attorneys' fees, and expenses due to the alleged failure of Banner to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

179.    If Excel Construction is found to be liable to Plaintiffs, Banner is liable to Excel Construction for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Excel Construction, including, without limitation, payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Excel Construction demands judgment for indemnity in its favor against Cross-Claim Defendant, Banner, for compensatory damages plus attorneys' fees, interest, and costs as damages, and for such other relief as the Court deems just and proper.

### Count 16- Contribution Pursuant to Florida Statute 768.31
**(Against Banner)**

180.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

181.    This is an action, stated in the alternative, against Banner for contribution pursuant to Section 768.31, Florida Statutes.

182.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defects in the drywall contained in the Homes.

183.    Without admitting any liability or damages to Plaintiffs, should Excel Construction be found liable, Banner would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

184.    Excel Construction has not caused or contributed to the damages alleged by the Plaintiffs in this action.

185.    To the extent that any common liability is found with respect to Excel Construction, Excel Construction hereby asserts its right of contribution against Banner for its pro rata share of the liability.

186.    Banner should be required to repay Excel Construction for any loss, damages, costs, and expenses, including attorneys' fees, Excel Construction is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the

settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Excel Construction, in excess of its pro rata share of any common liability.

**WHEREFORE**, Excel Construction demands that judgment be entered against Cross-Claim Defendant, Banner, for its pro rata share of the liability, if any, found against Excel Construction in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### Count 17- Equitable Subrogation
**(Against Banner)**

187.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

188.    This is an action, stated in the alternative, against Banner for equitable subrogation.

189.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defects in the drywall contained in the Homes.

190.    Excel Construction is not and was not in the business of distributing, supplying, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied, and/or sold by Banner.  Excel Construction justifiably relied on Banner to supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

191.    Without admitting any liability or damages to Plaintiffs, Excel Construction is not primarily liable for any liability to the Plaintiffs.

192.    To the extent that Excel Construction is required to pay damages for any fault of Banner to protect its own interests, and not as a volunteer, Excel Construction would be entitled to reimbursement from Banner under equitable principles for any damages which are attributable

to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Excel Construction, including, without limitation, payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Excel Construction and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Excel Construction, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against the claims brought by Plaintiffs.

193.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Excel Construction demands judgment in its favor and against Cross-Claim Defendant, Banner, for equitable subrogation, as well as attorneys' fees, costs, and interest, together with any such other relief as this Court deems just and proper.

### Count 18- Breach of the Implied Warranty of Merchantability under Common Law
**(Against Banner)**

194.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

195.    This is an action against Banner for breach of the implied warranty of merchantability under the common law.

196.    Excel purchased drywall from Banner to be installed in the Homes.  Banner knew that Excel Construction required and expected that drywall it distributed, supplied, and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and Excel Construction justifiably relied on Banner's skill and judgment to supply such drywall for the construction of residential homes.

197.    Pursuant to the relationship between the parties, Banner is deemed to have provided Excel Construction with an implied warranty of merchantability as to the drywall materials distributed and/or sold by Banner.

198.    The drywall distributed, supplied, and/or sold by Banner for use in the construction of the homes was not altered and/or otherwise substantively changed by Excel Construction.

199.    Pursuant to common law, Banner warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

200.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defective drywall contained in the Homes.  Excel Construction denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Excel Construction is found liable to Plaintiffs, Banner breached the implied warranty of merchantability by distributing, supplied, and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

201.    As a result of the claims that have been filed against Excel Construction, Excel Construction has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought

by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending these Claims. Banner's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

202.    Banner is aware of the alleged defective gypsum drywall, but Banner has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Banner, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 19- Breach of the Implied Warranty of Merchantability under Florida Statute 672.314
### (Against Banner)

203.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

204.    This is an action against Banner for breach of the implied warranty of merchantability under Florida Statute 672.314.

205.    Excel purchased drywall from Banner to be installed in the Homes.  Banner knew that Excel Construction required and expected that drywall it distributed, supplied, and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and Excel Construction justifiably relied on Banner's skill and judgment to supply such drywall for the construction of residential homes.

206.    Pursuant to the relationship between the parties, Banner is deemed to have provided Excel Construction with an implied warranty of merchantability as to the drywall materials distributed and/or sold by Banner.

207.    The drywall distributed, supplied, and/or sold by Banner for use in the construction of the homes was not altered and/or otherwise substantively changed by Excel Construction.

208.    Pursuant to Florida Statute 672.314, Banner warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

209.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defective drywall contained in the Homes.  Excel Construction denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Excel Construction is found liable to Plaintiffs, Banner breached the implied warranty of merchantability by distributing, supplied, and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

210.    As a result of the claims that have been filed against Excel Construction, Excel Construction has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought

by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending these Claims. Banner's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

211.    Banner is aware of the alleged defective gypsum drywall, but Banner has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Banner, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 20- Breach of the Implied Warranty of Fitness
#### (Against Banner)

212.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

213.    This is an action against Banner for breach of the implied warranty of fitness.

214.    Excel purchased drywall from Banner to be installed in the Homes.

215.    Banner knew that Excel Construction required and expected the drywall it distributed, supplied, and/or sold to be safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

216.    Excel Construction justifiably relied on Banner's skill and judgment to sell drywall fit for the particular purpose of constructing residential homes.

217.    Pursuant to the relationship between the parties, Banner is deemed to have provided Excel Construction with an implied warranty of fitness as to the drywall materials distributed, supplied, and/or sold by Banner.

218.   The drywall distributed, supplied, and/or sold by Banner for use in the construction of the Homes was not altered and/or otherwise substantively changed by Excel Construction.

219.   Banner impliedly warranted that the drywall was safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

220.   Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Excel Construction denies that it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in providing that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Excel Construction is found liable to Plaintiffs, Banner breached the implied warranty of fitness by distributing, supplying, and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

221.   As a result of the claims that have been filed against Excel Construction, Excel Construction has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner to distribute, supply, and/or sell drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending these Claims. Banner's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

222.    Banner is aware of the alleged defective gypsum drywall, but Banner has failed to repair or replace the drywall.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Banner, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 21- Negligent Failure to Warn
#### (Against Banner)

223.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

224.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

225.    Banner distributed, supplied, and/or sold the gypsum drywall to Excel Construction that was installed in the Homes built by Excel Construction.

226.    Banner owed Excel Construction a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Excel Construction about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn Excel Construction about any problems or dangers in using the drywall for residential construction.

227.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner

knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

228.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner knew or should have known that unless it warned Excel Construction of the risk of using the drywall it distributed, sold, and/or supplied, Excel Construction would suffer harm.  However, Banner failed to provide an adequate warning of such danger.

229.   Excel Construction did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, Excel Construction had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

230.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner breached its duty of care to Excel Construction by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Excel Construction about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn Excel Construction about any problems or dangers in using the drywall for residential construction, about which Banner knew or reasonably should have known.

231.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Banner's duty of care were the direct and proximate cause of Excel Construction's injuries, losses, and damages.

232.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Banner knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Excel Construction to substantial liability and damages.  If Banner had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Excel Construction would ensue as a result of failing to disclose and/or warn of drywall defects.

233.   Without admitting any liability or damages to Plaintiffs, Excel Construction was damaged by Banner's breaches of its duties of care, which directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  Banner's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Banner, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**Count 22- Breach of the Post-Sale Duty to Warn**
**(Against Banner)**

234.   Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

235.   Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

236.   Banner distributed, supplied, and/or sold the gypsum drywall to Excel Construction that was installed in the Homes built by Excel Construction.

237.   To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the time such drywall left Banner's control, Banner knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

238.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Banner, as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.

Banner breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

239.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

240.    Consumers, such as Excel Construction, to whom a warning might have been provided could have been identified by Banner

241.    A warning could have been effectively communicated to consumers such as Excel Construction and acted on by them.

242.    At all material times, Banner knew or should have known of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Excel Construction was unaware of potential dangers and/or risk of harm associated with the use of Banner's drywall product in residential construction.

243.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable distributor, seller and/or supplier in Banner's position would have provided a post-sale warning.

244.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Excel Construction was damaged by Banner's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to

or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  Banner's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Banner, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 23- Strict Products Liability
#### (Against Banner)

245.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

246.    This is an action, stated in the alternative, against Banner for strict products liability.

247.    At all material times, Banner was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

248.    At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commence, distributed, supplied and/or sold by Banner to Excel Construction.

249.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner, Banner intended that the drywall reach consumers and/or ultimate users of the drywall, such as Excel Construction.

250.    Banner expected the gypsum drywall to reach Excel Construction and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did, in fact, reach Excel Construction and/or the Homes without substantial change affecting that condition.

251.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

252.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this section and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  Banner's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Banner, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**Count 24- Strict Products Liability Failure to Warn**
**(Against Banner)**

253.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

254.    This is an action, stated in the alternative, against Banner for strict products liability failure to warn.

255.    At all material times, Banner was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

256.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner to Excel Construction.

257.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner, Banner intended that the drywall reach consumers and/or ultimate users of the drywall, such as Excel Construction.

258.    Banner expected the gypsum drywall to reach Excel Construction and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Excel Construction and/or the Homes without substantial change affecting that condition.

259.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

260.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction

involved a danger of which Banner was required to provide a warning.  However, Banner failed to provide an adequate warning of such danger.

261.    Excel Construction did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

262.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner failed to warn Excel Construction of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Excel Construction had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

263.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and  proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  Banner's wrongful conduct also caused damages

to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Banner, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 25- Violations of the Florida Deceptive and Unfair Trade Practices Act, Florida Statute 501.201, et seq.
#### (Against Banner)

264.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

265.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

266.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

267.    At all material times, Excel Construction was a person and a consumer of drywall as defined under FDUTPA.

268.    At all material times, Banner engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Excel Construction.

269.    Banner advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

270.     At the time Banner advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

271.     Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property including but not limited to the Other Property in the Homes.

272.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Banner sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

273.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged  in the Complaint, Plaintiffs' claims arise from Banner's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

274.     To the extent Plaintiffs are successful in proving their claims, Banner's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling

defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

275.   Banner's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall and/or its failure to disclose that the drywall unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as Excel Construction acting reasonably in the same circumstances, to the consumer's detriment.  A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

276.   Banner's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Excel Construction.

277.   To the extent Plaintiffs are successful in proving their claims, Excel Construction did not get what is bargained for and is entitled to its actual damages, plus attorneys' fees and court costs.  Banner's violations of FDUTPA directly and proximately caused and/or exposed

Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  Banner's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

WHEREFORE, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Banner, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### Count 26- Unjust Enrichment
### (Against Banner)

278.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

279.    This is an action, stated in the alternative, against Banner for unjust enrichment.

280.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

281.    Pursuant to its contract with Excel Construction, Banner distributed, supplied, and/or sold the gypsum drywall to Excel Construction that was installed in the Homes built by Excel Construction.

282.     Excel Construction paid Banner for supplying the drywall for the Homes built by Excel Construction.

283.     Banner received money from Excel Construction as a result of Excel Construction's purchases of defective drywall installed in the Homes.

284.     In delivering such payment, monies and/or funds to Banner, Excel Construction (conferred a benefit, *i.e.*, funds and profit, to Banner, which had knowledge thereof.

285.     Banner voluntarily accepted and retained the benefit conferred upon it by Excel Construction.

286.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.

287.     The circumstances described herein under which Banner profited from selling and/or supplying drywall make it inequitable for Banner to retain those funds and profits.

288.     Excel Construction has no adequate remedy at law.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Cross-Claim Defendant, Banner, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Defendant Excel Construction's Third-Party Complaint against J&A Stucco Drywall, Inc. (Counts 27-41)

### Count 27- Negligence
### (Against J&A Stucco Drywall, Inc.)

289.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

290.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

291.    J&A installed the drywall in the Homes.

292.    As such, J&A owed Excel Construction a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect and install drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of Excel Construction's customers; and, (ii) install drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

293.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, J&A knew or should have known that the drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

294.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, J&A breached its duty of care to Excel Construction by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it installed in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall J&A installed; (iii) acquiring, procuring, marketing, distributing, wholesaling installing, and/or selling drywll which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to install drywall that complied with all applicable building and industry standards.

295.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such breaches in J&A's duty of care were the direct and proximate cause of Excel Construction's injuries, losses, and damages.

296.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, J&A knew or reasonably should have known that its acts and omissions in marketing and installing defective drywall would expose Excel Construction to substantial liability and damages.  If J&A had exercised that degree of care that  prudent or reasonably cautious installer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and

that damages to Excel Construction would ensure as a result of marketing, installing defective drywall.

297.    Without admitting any liability or damages to Plaintiffs, Excel Construction was damaged by J&A's breaches of its duties of care, which directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  J&A's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Third-Party Defendant, J&A, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 28- Common Law Indemnity
### (Against J&A Stucco Drywall, Inc.)

298.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

299.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defective drywall contained in the Homes.

300.    Excel Construction is not and was not in the business of installing drywall and had no reason to know or to suspect that there were problems with the drywall installed by J&A. Excel Construction justifiably relied on J&A to install drywall that was fit for the ordinary

purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

301.    Excel Construction is entirely without fault for the injuries alleged by Plaintiffs.

302.    Any injuries suffered by Plaintiffs were due to the acts or omissions of J&A.

303.    A special relationship existed between J&A and Excel Construction such that any liability imposed upon Excel Construction in this matter will be secondary, passive, solely vicarious, constructive, derivative, or technical to J&A.  J&A installed drywall in the Homes. Moreover, to the extent that plaintiffs are successful in proving their claims, the drywall installed by J&A was defective and wholly to blame for Plaintiffs' injuries.

304.    As a result of the claims that have been filed against Excel Construction, Excel Construction has incurred losses, damages, costs, attorneys' fees, and expenses due to the alleged failure of J&A to install drywall fit for its intended purpose, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

305.    If Excel Construction is found to be liable to Plaintiffs, J&A is liable to Excel Construction for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Excel Construction, including, without limitation, payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Excel Construction demands judgment for indemnity in its favor against Third-Party Defendant, J&A, for compensatory damages plus attorneys' fees, interest, and costs as damages, and for such other relief as the Court deems just and proper.

### Count 29- Contribution Pursuant to Florida Statute 768.31
### (Against J&A Stucco Drywall, Inc.)

306.   Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

307.   This is an action, stated in the alternative, against J&A for contribution pursuant to Section 768.31, Florida Statutes.

308.   Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defects in the drywall contained in the Homes.

309.   Without admitting any liability or damages to Plaintiffs, should Excel Construction be found liable, J&A would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

310.   Excel Construction has not caused or contributed to the damages alleged by the Plaintiffs in this action.

311.   To the extent that any common liability is found with respect to Excel Construction, Excel Construction hereby asserts its right of contribution against J&A for its pro rata share of the liability.

312.   J&A should be required to repay Excel Construction for any loss, damages, costs, and expenses, including attorneys' fees, Excel Construction is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of

Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Excel Construction, in excess of its pro rata share of any common liability.

**WHEREFORE**, Excel Construction demands that judgment be entered against Third-Party Defendant, J&A, for its pro rata share of the liability, if any, found against Excel Construction in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

<u>**Count 30- Equitable Subrogation**</u>
**(Against J&A Stucco Drywall, Inc.)**

313.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

314.    This is an action, stated in the alternative, against J&A for equitable subrogation.

315.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defects in the drywall contained in the Homes.

316.    Excel Construction is not and was not in the business of installing drywall and had no reason to know or to suspect that there were problems with the drywall installed by J&A. Excel Construction justifiably relied on J&A to install drywall that was fit for the ordinary purpose for which it was intended, *i.e.*: not unreasonably dangerous and fit for use in the construction of residential homes.

317.    Without admitting any liability or damages to Plaintiffs, Excel Construction is not primarily liable for any liability to the Plaintiffs.

318.    To the extent that Excel Construction is required to pay damages for any fault of J&A to protect its own interests, and not as a volunteer, Excel Construction would be entitled to reimbursement from J&A under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by

Plaintiffs against Excel Construction, including, without limitation, payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Excel Construction and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Excel Construction, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against the claims brought by Plaintiffs.

319. Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Excel Construction demands judgment in its favor and against Third-Party Defendant, J&A, for equitable subrogation, as well as attorneys' fees, costs, and interest, together with any such other relief as this Court deems just and proper.

### Count 31- Breach of the Implied Warranty of Merchantability under Common Law
**(Against J&A Stucco Drywall, Inc.)**

320. Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

321. This is an action against J&A for breach of the implied warranty of merchantability under the common law.

322. J&A installed drywall in the Homes. J&A knew that Excel Construction required and expected that drywall it installed to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and Excel Construction justifiably relied on J&A's skill and judgment to install such drywall for the construction of residential homes.

323. Pursuant to the relationship between the parties, J&A is deemed to have provided Excel Construction with an implied warranty of merchantability as to the drywall materials installed by J&A.

324.   The drywall installed by J&A for use in the construction of the homes was not altered and/or otherwise substantively changed by Excel Construction.

325.   Pursuant to common law, J&A warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

326.   Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defective drywall contained in the Homes.   Excel Construction denies it has any liability to Plaintiffs.   However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Excel Construction is found liable to Plaintiffs, J&A breached the implied warranty of merchantability by installing drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

327.   As a result of the claims that have been filed against Excel Construction, Excel Construction has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of J&A to install drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending these Claims.   J&A's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

328.     J&A is aware of the alleged defective gypsum drywall, but J&A has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Third-Party Defendant, J&A, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

**Count 32- Breach of the Implied Warranty of Merchantability
under Florida Statute 672.314**
**(Against J&A Stucco Drywall, Inc.)**

329.     Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

330.     This is an action against J&A for breach of the implied warranty of merchantability under Section 672.314, Florida Statutes.

331.     J&A installed drywall in the Homes.  J&A knew that Excel Construction required and expected that drywall it installed to be fit for the ordinary purpose for which it was intended, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes, and Excel Construction justifiably relied on J&A's skill and judgment to install such drywall for the construction of residential homes.

332.     Pursuant to the relationship between the parties, J&A is deemed to have provided Excel Construction with an implied warranty of merchantability as to the drywall materials installed by J&A.

333.     The drywall installed by J&A for use in the construction of the homes was not altered and/or otherwise substantively changed by Excel Construction.

334.     Pursuant to Florida Statute 672.314, J&A warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in

residential construction, *i.e.*: safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

335.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages caused by defective drywall contained in the Homes.  Excel Construction denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Excel Construction is found liable to Plaintiffs, J&A breached the implied warranty of merchantability by installing drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

336.    As a result of the claims that have been filed against Excel Construction, Excel Construction has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of J&A to install drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending these Claims.  J&A's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

337.    J&A is aware of the alleged defective gypsum drywall, but J&A has failed to repair or replace the defective gypsum drywall.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Third-Party Defendant, J&A, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 33- Breach of the Implied Warranty of Fitness
**(Against J&A Stucco Drywall, Inc.)**

338.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

339.    This is an action against J&A for breach of the implied warranty of fitness.

340.    J&A installed drywall in the Homes.

341.    J&A knew that Excel Construction required and expected the drywall it installed to be safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

342.    Excel Construction justifiably relied on J&A's skill and judgment to install drywall fit for the particular purpose of constructing residential homes.

343.    Pursuant to the relationship between the parties, J&A is deemed to have provided Excel Construction with an implied warranty of fitness as to the drywall materials installed by J&A.

344.    The drywall installed by J&A for use in the construction of the Homes was not altered and/or otherwise substantively changed by Excel Construction.

345.    J&A impliedly warranted that the drywall was safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.

346.    Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Excel Construction denies that it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in providing that the drywall in the Homes is

defective and not fit for the particular purpose for which the drywall was required and Excel Construction is found liable to Plaintiffs, J&A breached the implied warranty of fitness by installing drywall that was defective and not reasonably fit for use in the construction of residential homes.

347.    As a result of the claims that have been filed against Excel Construction, Excel Construction has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of J&A to install drywall fit for its intended purpose, *i.e.*: for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending these Claims.   J&A's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

348.    J&A is aware of the alleged defective gypsum drywall, but J&A has failed to repair or replace the drywall.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Third-Party Defendant, J&A, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 34- Negligent Failure to Warn
**(Against J&A Stucco Drywall, Inc.)**

349.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

350.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

351.    J&A installed the gypsum drywall in the Homes built by Excel Construction.

352.    As such, J&A owed Excel Construction a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it installed or disclose any adverse affects associated with the drywall; (ii) warn Excel Construction about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn Excel Construction about any problems or dangers in using the drywall for residential construction.

353.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in the Complaint, J&A knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

354.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, J&A knew or should have known that unless it warned Excel Construction of the risk of using the drywall it installed, Excel Construction would suffer harm. However, J&A failed to provide an adequate warning of such danger.

355.    Excel Construction did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, Excel

Construction had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

356.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, J&A breached its duty of care to Excel Construction by (i) failing to disclose any defects in the drywall materials it installed which it knew or reasonably should have known about; (ii) failing to warn Excel Construction about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn Excel Construction about any problems or dangers in using the drywall for residential construction, about which J&A knew or reasonably should have known.

357.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in J&A's duty of care were the direct and proximate cause of Excel Construction's injuries, losses, and damages.

358.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, J&A knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Excel Construction to substantial liability and damages.  If J&A had exercised that degree of care that a prudent or reasonably cautious installer acting under the same circumstances would exert, it would or could have foreseen that damages to Excel Construction would ensue as a result of failing to disclose and/or warn of drywall defects.

359.     Without admitting any liability or damages to Plaintiffs, Excel Construction was damaged by J&A's breaches of its duties of care, which directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.   J&A's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Third-Party Defendant, J&A, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 35 Breach of the Post-Sale Duty to Warn
**(Against J&A Stucco Drywall, Inc.)**

360.     Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

361.     Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

362.     J&A installed the gypsum drywall in the Homes built by Excel Construction.

363.     To the extent Plaintiffs are successful in proving that drywall installed by J&A was defective, unreasonably dangerous and/or not reasonably safe for its intended use, after the

time such drywall left J&A's control, J&A knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

364.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, J&A, as the installer of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  J&A breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

365.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

366.    Consumers, such as Excel Construction, to whom a warning might have been provided could have been identified by J&A

367.    A warning could have been effectively communicated to consumers such as Excel Construction and acted on by them.

368.    At all material times, J&A knew or should have known of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Excel Construction was unaware of potential dangers and/or risk of harm associated with the use of J&A's drywall product in residential construction.

369. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable installer in J&A's position would have provided a post-sale warning.

370. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Excel Construction was damaged by J&A's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.   J&A's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Third-Party Defendant, J&A, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 36- Strict Products Liability
**(Against J&A Stucco Drywall, Inc.)**

371. Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

372. This is an action, stated in the alternative, against J&A for strict products liability.

373.    At all material times, J&A was in the business of installing gypsum drywall of the type contained in the Homes.

374.    At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commence and/or installed by J&A.

375.    At the time said drywall was placed into the stream of commerce and/or installed by J&A, J&A intended that the drywall reach consumers and/or ultimate users of the drywall, such as Excel Construction.

376.    J&A expected the gypsum drywall to reach Excel Construction and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did, in fact, reach Excel Construction and/or the Homes without substantial change affecting that condition.

377.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

378.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall installed by J&A directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this section and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and

attorneys' fees incurred by Excel Construction in defending against these claims. J&A's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Third-Party Defendant, J&A, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>**Count 37- Strict Products Liability Failure to Warn**</u>
**(Against J&A Stucco Drywall, Inc.)**

379.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

380.    This is an action, stated in the alternative, against J&A for strict products liability failure to warn.

381.    At all material times, J&A was in the business of installing gypsum drywall of the type contained in the Homes.

382.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce and/or installed by J&A.

383.    At the time said drywall was placed into the stream of commerce and/or installed by J&A, J&A intended that the drywall reach consumers and/or ultimate users of the drywall, such as Excel Construction.

384.    J&A expected the gypsum drywall to reach Excel Construction and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Excel Construction and/or the Homes without substantial change affecting that condition.

385.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing

serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

386.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which J&A was required to provide a warning.  However, J&A failed to provide an adequate warning of such danger.

387.    Excel Construction did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

388.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because J&A failed to warn Excel Construction of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Excel Construction had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

389.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, J&A's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and  proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not

limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  J&A's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Third-Party Defendant, J&A, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**Count 38- Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**Florida Statute 501.201, et seq.**
**(Against J&A Stucco Drywall, Inc.)**

390.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

391.    This is an action for violation of  §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

392.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

393.    At all material times, Excel Construction was a person and a consumer of drywall as defined under FDUTPA.

394.    At all material times, J&A engaged in trade or commerce by installing drywall for consumers, such as Excel Construction.

395.    J&A installed the gypsum drywall in the Homes built by Excel Construction.

396.    At the time J&A installed drywall, J&A represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

397.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property including but not limited to the Other Property in the Homes.

398.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time J&A installed the drywall in the Homes, J&A knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

399.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from J&A's unfair and deceptive conduct in installing defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

400.    To the extent Plaintiffs are successful in proving their claims, J&A's unfair and deceptive conduct in installing defective drywall, and/or its failure to disclose that the drywall

was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

401.    J&A's unfair and deceptive conduct in installing defective gypsum drywall and/or its failure to disclose that the drywall unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as Excel Construction acting reasonably in the same circumstances, to the consumer's detriment.  A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the installer of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

402.    J&A's unfair and deceptive conduct in installing defective drywall and/or its failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Excel Construction.

403.    To the extent Plaintiffs are successful in proving their claims, Excel Construction did not get what is bargained for and is entitled to its actual damages, plus attorneys' fees and court costs.  J&A's violations of FDUTPA directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action

brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  J&A's wrongful conduct also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Third-Party Defendant, J&A, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### Count 39- Unjust Enrichment
### (Against J&A Stucco Drywall, Inc.)

404.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

405.    This is an action, stated in the alternative, against J&A for unjust enrichment.

406.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

407.    J&A installed the gypsum drywall in the Homes built by Excel Construction.

408.    J&A received money from Excel Construction for installing the drywall in the Homes.

409.    In delivering such payment, monies and/or funds to J&A, Excel Construction conferred a benefit, *i.e.*, funds and profit, to J&A, which had knowledge thereof.

410.    J&A voluntarily accepted and retained the benefit conferred upon it by Excel Construction.

411.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more

fully alleged in the Complaint, J&A's acts and omissions in distributing, installing and/or selling defective drywall directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.

412.   The circumstances described herein under which J&A profited from selling and/or installing drywall make it inequitable for J&A to retain those funds and profits.

413.   Excel Construction has no adequate remedy at law.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Third-Party Defendant, J&A, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### Count 40- Breach of Contract
### (Against J&A Stucco Drywall, Inc.)

414.   Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

415.   Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

416.   Pursuant to its oral contract with Excel Construction, J&A installed the drywall that was installed in the Homes.

417.    Pursuant to its oral contract with Excel Construction, J&A owed Excel Construction a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect and install drywall which was free from defects that could cause property damage, bodily injury, and damage to the health and safety of Excel Construction's customers; and, (ii) install drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

418.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, J&A knew or should have known that the drywall it installed in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use.

419.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, J&A breached its contract with Excel Construction by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it installed in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the supplier of the drywall J&A installed; (iii) installing drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to install drywall that complied with all applicable building and industry standards.

420.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such contractual

breaches were the direct and proximate cause of Excel Construction's injuries, losses, and damages.

421.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, J&A knew or reasonably should have known that its acts and omissions in installing drywall would expose Excel Construction to substantial liability and damages.

422.    Without admitting any liability or damages to Plaintiffs, Excel Construction was damaged by J&A's breaches of its contract, which directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  J&A's contractual breach also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Third-Party Defendant, J&A, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

### Count 41- Violations of Florida Building Code
### (Against J&A Stucco Drywall, Inc.)

423.    Excel Construction reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

424.    Pursuant to Section 553.84, Florida Statutes, J&A is liable to Excel Construction for violations of the Florida Building Code ("Code").

425.    Plaintiffs in the Complaint allege various claims against Excel Construction for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

426.    J&A installed the drywall that was installed in the Homes.

427.    Plaintiffs may prove that the design and construction of Plaintiffs' homes do not comply with the Florida Building Code's requirements.

428.    J&A owed Excel Construction a duty to comply with all applicable Florida Building Codes.

429.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, J&A knew or should have known that the drywall it installed in the Homes was defective, unreasonably dangerous, and/or not reasonably safe for its intended use in violation of the Florida Building Code

430.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in providing that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, J&A violated the Florida Building Code by (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it installed in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise

reasonable care in overseeing, managing, controlling, inspecting, investigating, and/or auditing the supplier of the drywall J&A installed; (iii) installing drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to install drywall that complied with all applicable building and industry standards.

431.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, such J&A's actions are the direct and proximate cause of Excel Construction's injuries, losses, and damages.

432.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous, and/or not reasonably safe for its intended use, J&A knew or reasonably should have known that its acts and omissions in installing drywall would expose Excel Construction to substantial liability and damages.

433.    Without admitting any liability or damages to Plaintiffs, Excel Construction was damaged by J&A's violations of the Florida Building Code, which directly and proximately caused and/or exposed Excel Construction to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Excel Construction to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Excel Construction in this action and/or any other action brought by Plaintiffs against Excel Construction, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Excel Construction in defending against these claims.  J&A's contractual breach also caused damages to Excel Construction, including but not limited to Excel Construction's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Excel Construction demands judgment for damages in its favor and against Third-Party Defendant, J&A, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as this Court deems just and proper.

Respectfully submitted,

**ADAMS AND REESE LLP**

s/Christopher A. D'Amour
CHRISTOPHER A. D'AMOUR (La. Bar #26252)
MEGAN HAGGERTY GUY (La. Bar # 26316)
DAVID C. COONS (La. Bar #32403)
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
*Attorneys for Defendant*
*Excel Construction of S.W. Florida, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 10th day of February, 2011.

s/Christopher A. D'Amour