**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | ) | CASE NO. 2:09-MD-02047 |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | SECTION L |
| | ) | |
| | ) | JUDGE FALLON |
| (Relates to *Amato v. Liberty Mutual Ins.*, No. | ) | |
| 2:10-cv-00932) | ) | MAG. JUDGE WILKINSON |

**CORRECTED TRAVELERS OPPOSITION TO THE PLAINTIFFS STEERING
COMMITTEE'S MOTION FOR ACCOUNTING AND OTHER RELIEF AND
EMERGENCY MOTION FOR AN ORDER PREVENTING THE PAYMENTS OR
TRANSFER OF CERTAIN MONEYS OR, IN THE ALTERNATIVE, FOR COURT
ORDERED MEDIATION AND TEMPORARY STAY
OF ALL OUTSIDE SETTLEMENT ACTIVITIES**

**MAY IT PLEASE THE COURT:**

The Travelers Indemnity Company of Connecticut, Travelers Property Casualty Company

of America f/k/a The Travelers Indemnity Company of Illinois, St. Paul Fire & Marine Insurance

Company, and The Standard Fire Insurance Company (collectively "Travelers"), having received a

deficiency notice relative to its original Opposition [Rec. Doc. 7384] with respect to its Opposition

to the Motions for Injunctive Relief.[1]  Travelers respectfully submits this corrected memorandum

in opposition to the PSC's Motion for Injunctive Relief to delete without prejudice reference to the

Cross-Motion for Dismiss Lack of Subject Matter Jurisdiction included within the original

Opposition filed by Travelers [Rec. Doc. 7384].

---

[1] The Plaintiffs Steering Committee ("PSC") has filed a Motion for an Accounting and Other Relief ("Motion for Accounting") (ECF No. 6669), and an *Emergency* Motion for an Order Preventing the Payment or Transfer of Certain Moneys or, in the Alternative, for Court Ordered Mediation and Temporary Stay of All Outside Settlement Activities ("Emergency Motion to Freeze Assets and Enjoin Settlements") (ECF No. 6947) (collectively "Motions for Injunctive Relief").

## INTRODUCTION

The PSC's Motions for Injunctive Relief are fatally flawed as to Travelers for several reasons, which also requires the dismissal of Travelers from this litigation:

**First**, this Court lacks personal jurisdiction over Travelers and, therefore, lacks the authority to enter *any* order against Travelers.  The claims asserted against Travelers have absolutely no connection with Louisiana, and thus there is no specific jurisdiction.  Nor can this Court properly assert general jurisdiction over Travelers under controlling Supreme Court and Fifth Circuit precedents that demonstrate *general* jurisdiction can only be asserted over corporations where the contacts with the forum amount to establishing a principal place of business in that forum.

**Second**, this Court also lacks subject matter jurisdiction over the claims asserted against Travelers for several reasons as discussed below, including the fact that the Florida homeowners claims are barred by Florida's non-joinder statute, which requires noninsured third-party claimants (the Plaintiffs) to obtain a verdict or settlement from an alleged insured wrongdoer before such a claimant can then bring suit against the alleged wrongdoer's insurer.  Statutes such as the non-joinder statute deprive this Court of subject matter jurisdiction as this Court has previously held. *Essex Co. v. Bayou Concession Salvage*, 942 F. Supp. 258, 260-61 (E.D. La 1996) (Fallon, J.).

**Third**, as set forth in the Insurer Steering Committee's ("ISC") Opposition, which Travelers adopts in full, the PSC has failed to show the threshold prerequisites for *any* preliminary injunctive relief, much less the extraordinary relief sought in the Motions for Injunctive Relief. For example, the PSC's Motions for Injunctive Relief do not even discuss, much less establish, that the claims against Travelers have any likelihood of success on the merits.  Nor could the PSC

do so given that the claims against Travelers cannot even survive the pleadings as discussed above. Similarly, the PSC cannot show that irreparable harm is "likely" as required because all it is seeking is monetary relief, which is insufficient as a matter of law.

**Fourth**, beyond all the above threshold flaws with the Motions, the Motions for Injunctive Relief also fail because controlling Supreme Court and Fifth Circuit precedent demonstrate that the PSC is not entitled to a prejudgment asset freeze; nor any relief based on the "common fund" or "substantial benefit" doctrines.

In sum, the PSC's Motions for Injunctive Relief should be denied and Travelers should be dismissed from this litigation because this Court lacks jurisdiction.[2]

## PROCEDURAL HISTORY AND BACKGROUND

On March 19, 2010, the PSC filed a putative class action complaint entitled *Amato v. Liberty Mutual Ins. Co.*, Case No. 10-932, which is sometimes referred to as the "Omnibus V" Action. This was an original action filed in the Eastern District of Louisiana, based on jurisdiction under 28 U.S.C. § 1332(d), the Class Action Fairness Act. The clerk's office subsequently consolidated that action into this MDL case number. The PSC filed an Amended Complaint in *Amato* on May 11, 2010. (ECF No. 3132.) The Amended Complaint asserts claims against dozens of Defendants, some of which are alleged to be a distributor, supplier, importer, exporter, or manufacturer of Chinese Drywall, or a builder or developer that allegedly used defective Chinese

---

[2] The Plaintiffs Steering Committee ("PSC") filed a Motions to Lift Stay regarding the Motions for Injunctive Relief. (ECF Nos. 6672 and 6954.) Numerous oppositions were filed, including Travelers (ECF No. 7020), which is incorporated herein in full, and which demonstrated that the Fifth Circuit has held that issues of jurisdiction must be resolved before preliminary injunctions can be issued. Additionally, as noted above, Travelers expressly incorporates the Insurer Steering Committee's Opposition to the Motions for Injunctive Relief, which have briefed the issues raised in points three and four of this Introduction.

Drywall (the "Insured Defendants"), as well as *98 different insurers* who are alleged to be insurers of the other defendants.  Under Pretrial Order 1 and 1G, motion practice has been held in abeyance in *Amato* since before it was served.

## ARGUMENT

I.   **This Court Lacks Personal Jurisdiction Over Travelers, And Lacks Subject Matter Jurisdiction Over The Claims Asserted Against Traveler Which Precludes An Order Granting The PSC's Motions for Injunctive Relief.**

   A.   **This Court must resolve threshold jurisdictional issues before addressing the merits of the Motions for Injunctive Relief.**

It is fundamental that a district court lacks the power to enter a preliminary injunction where the court is lacking jurisdiction.  *Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana¸* 762 F.2d 464, 470 (5th Cir. 1985) ("The district court has no power to grant an interlocutory or final injunction against a party over whom it has not acquired valid jurisdiction, and an order granting an interlocutory injunction in these circumstances is erroneous as a matter of law," "[w]here a challenge to jurisdiction is interposed on an application for a preliminary injunction the plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.") (internal quotations omitted); *see also Visual Sciences, Inc. v. Integrated Comm'ns, Inc.*, 660 F.2d 56, 59 (2d Cir. 1981) ("A prima facie showing of jurisdiction will not suffice, however, where a plaintiff seeks preliminary injunctive relief.  A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him.  Where a challenge to jurisdiction is interposed on an application for a preliminary injunction 'the plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.'") (quotation omitted);

*Home-Stake Production Co. v. Talon Petroleum, C.A.,* 907 F.2d 1012, 1020-21 (10th Cir. 1990) (dissolving preliminary injunction as to corporate defendants and remanding with directions to dismiss them for lack of personal jurisdiction).

Indeed, the United States Supreme Court and Fifth Circuit have repeatedly held that Article III of the United States Constitution prohibits a district court from delaying resolution of threshold jurisdictional questions in order to address other issues. *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-101 (1998) (stating that courts must address threshold jurisdictional issues before merits issue of availability of cause of action and expressly rejecting the "hypothetical jurisdiction" approach that had been adopted by the Ninth Circuit that allowed the court to assume jurisdiction in order to address the merits).  As the United States Supreme Court explained in *Steel Co.* in rejecting the position that jurisdiction need not be addressed first:

> We decline to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers. This conclusion should come as no surprise, since it is reflected in a long and venerable line of our cases. Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.  On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it.  The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is "inflexible and without exception."

*Id.* (quotations, citations, and internal punctuation omitted).  Indeed, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies," "[i]f a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the

course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); *Allen v. Wright*, 468 U.S. 737, 752 (1984) (holding federal courts "may exercise power only . . . 'as a necessity,' that is, only when they are sure they have an actual case before them") (quotation omitted); *U.S. v. Texas Tech Univ*., 171 F.3d 279, 286-87 (5th Cir. 1999) ("To rule on a merits question before, or in addition to, answering the omni-present jurisdictional question would contravene the well-established principle that the federal courts may not issue advisory opinions"); *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778-79 (2000) ("[q]uestions of jurisdiction, of course, should be given priority -- since if there is no jurisdiction there is no authority to sit in judgment of anything else") (citing *Steel Co.*, 523 U.S. at 93-102).[3]

This applies to both questions of subject matter as well as personal jurisdiction, because both are conditions precedent to a federal court's authority to do anything. *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574 (1999) (reversing Fifth Circuit's *en banc* ruling that subject matter jurisdiction questions must be decided before personal jurisdiction, and holding that both types of jurisdiction are "an essential element of the jurisdiction of a district [] court, without which the court is powerless to proceed to an adjudication") (quotation and internal punctuation omitted); *Sinochem International Co. v. Malaysia International Shipping Corp*., 549 U.S. 422, 423 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the cause (subject-matter jurisdiction) and the parties (personal

---

[3] At the January 20, 2011 status hearing, this Court invited the parties to "stipulate" to jurisdiction so that merits issues could be considered first. This Court further entered an order authorizing the parties to reserve jurisdictional defenses until after certain merits issued are resolved. (ECF No. 7334.) That procedure, however, is barred by these precedents and Article III of the United States Constitution, which prohibit a federal court from assuming jurisdiction in order to reach the merits of any issues.

jurisdiction) . . . ."); *U.S. v. Texas Tech Univ.*, 171 F.3d 279, 286 n.9 (5th Cir. 1999) ("[C]ourts must . . . decide issues of personal jurisdiction before ruling on the merits").  So fundamental are these concepts that federal appellate courts will grant the extraordinary remedy of mandamus relief where a district court fails to dismiss an action for want of jurisdiction when the record clearly reveals such jurisdiction is lacking.  *See In re DaimlerChrysler Corp.*, 294 F.3d 697, 699 (5th Cir. 2002) ("Mandamus is appropriate when the trial court has exceeded its jurisdiction or has declined to exercise it, or when the trial court has so clearly and indisputably abused its discretion as to compel prompt intervention by the appellate court.").

As these authorities demonstrate, this Court should (indeed must) address questions of jurisdiction at the outset of the litigation.  Thus, this Court should resolve these threshold jurisdictional issues before determining whether to grant, or even deny, the Motions for Injunctive Relief.[4]

## B.    This Court lacks personal jurisdiction over Travelers.[5]

Plaintiffs' Amended Complaint does not include any factual allegations that would demonstrate *any* basis for Louisiana's exercise of personal jurisdiction over Travelers.  Nor have Plaintiffs provided any factual support in their Motions for Injunctive Relief that would establish

---

[4] Similarly, the PSC's request for mandated mediation is premature until jurisdictional issues are resolved.  *See, e.g., Bouchard Transp. Co. v. Florida Dep't of Envtl. Protection*, 91 F.3d 1445, 1449 (11th Cir. 1996) (holding the district court abused its authority in ordering mediation despite the pending question of Eleventh Amendment immunity, which may have deprived the court of jurisdiction) (citation omitted).

[5] Travelers is aware that this Court issued its ruling regarding personal jurisdiction motions filed in the Pate case on the date this brief was due to be filed.  (ECF No. 7356.)  As this Court correctly recognized in that decision, controlling Supreme Court and Fifth Circuit precedents make clear that the level of necessary contacts for general jurisdiction is extremely high and requires extensive, continuous, and systematic contacts in the forum state. (*Id.* at 8-13 (collecting cases).)  Here, Travelers contacts with Louisiana do not satisfy that "high standard set by the Supreme Court."  (*Id.* at 13 (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610-11 (5th Cir. 2008).)

such jurisdiction.  This is not surprising given that there is no factual basis for asserting personal jurisdiction over Travelers in these circumstances given that not a single named Plaintiff in this case that is alleged to be a Louisiana homeowner can properly assert a claim against Travelers and there is *no* connection between any of the claims asserted against Travelers and Louisiana.[6]

Because there is no connection between the claims at issue and Louisiana, Plaintiffs must demonstrate that the exercise of "general jurisdiction" over Travelers comports with the Due Process Clause of the United States Constitution.  Under controlling Fifth Circuit and Supreme Court precedents, however, a plaintiff seeking to establish general jurisdiction over an out-of-state corporate defendant must make a showing, at a minimum, that the defendant has "continuous and systematic" contacts with Louisiana—an extremely high bar.  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610-11 (5th Cir. 2008) (recognizing the "high standard set by the Supreme Court" to establish general jurisdiction, and recognizing "just how difficult it is" to meet the standard); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375-76 (5th Cir. Tex. 1987) (holding personal jurisdiction over defendant was lacking, even though it sold its products in the forum state and was a national corporation that advertised nationally); *Submersible Sys. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001) ("the continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.  The Supreme Court has upheld an exercise of personal jurisdiction when the suit was unrelated to the defendant's contacts with a forum only once.") (citations omitted).

---

[6] One set of Plaintiffs, Valliere and Margaret Dauterive are alleged to be Louisiana homeowners asserting claims against Travelers.  As discussed below, their profile form makes clear that this is at best a scrivener's error as their drywall was distributed by Interior/Exterior Building Supply, not Travelers alleged insured, Banner Supply.

Under the Supreme Court's precedents it seems unlikely that general jurisdiction can ever be asserted over a corporate entity outside of its state of incorporation or the state where it has its principal place of business.  Indeed, the Supreme Court's most recent case addressing general jurisdiction specifically held that Texas courts violated the Due Process Clause in asserting general jurisdiction over a corporate entity that had substantial contacts and business activities in the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-19 (1984).  In so holding, the Supreme Court strongly suggested that general jurisdiction *requires* the corporation's contacts with the forum state to amount to having a principal place of business in that state.  As the Supreme Court put it, the question is whether the defendant's contacts with the forum state "constitute[d] the kind of continuous and systematic general business contacts the court *found to exist* in *Perkins*," 466 U.S. at 416 (emphasis added), suggesting that *Perkins*—in which the forum was the corporation's "principal . . . place of business," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 n.11 (1984)—sets the general jurisdiction floor.[7]  *Helicopteros* 466 U.S. at 415-19 (holding that a state may only exercise general jurisdiction over an out-of-state corporation consistent with the Due Process Clause when "the foreign corporation, through its [agent] 'ha[s] been carrying on in [the forum State] a continuous and systematic . . . part of its general business") (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952)).

Applying that test to the case at hand in *Helicopteros*, the Supreme Court held that it was constitutionally impermissible for the Texas courts to exercise general jurisdiction even though the

---

[7] The issue of general jurisdiction is currently pending before the United States Supreme Court in *Goodyear v. Brown*, No. 10-76.  At oral argument, Justice Kagan specifically questioned whether "general jurisdiction [could] go beyond State of incorporation, principal place of business."  (Oral Arg. Tr. at 4:17-21).  The United States has joined the Petitioners in arguing that the exercise of general jurisdiction in that case was constitutionally impermissible.

defendant had extensive contacts with Texas, including purchase of approximately 80% of its helicopter fleet, parts, and accessories from a Texas company, sending prospective pilots and management and maintenance personnel to Texas for training, sending its CEO to Texas to negotiate a contract, and accepting a $5 million dollar check drawn on a Texas bank.  Notably, Texas was *not* the principal place of business of the corporate defendant in *Helicopteros*, which further supports the conclusion that under Supreme Court precedent, general jurisdiction may not be constitutionally asserted over a corporate defendant outside of its state of incorporation or principal place of business.

The Supreme Court's refusal to extend general jurisdiction beyond the state of incorporation or the state of a defendant's principal place of business is based on sound policy considerations that are intertwined with the Due Process Clause itself.  Unlike specific jurisdiction, which requires some nexus between the claims at issue and the forum state (of which there are none here), general jurisdiction allows the forum state to adjudicate claims bearing no relationship whatsoever to the claims at issue.  If this Court were to find it had general jurisdiction over Travelers, it would suggest that any corporate defendant engaged in a nationwide business could be sued in any state in the country on any claim regardless of the fact there was absolutely no connection between those claims and the state selected.  Such a result would encourage blatant forum shopping as plaintiffs could bring claims in the most friendly forum available to them in the country.  Courts deemed to be "plaintiff friendly" would be flooded with claims bearing no relationship whatsoever to the forum state.  The forum state's residents in turn would bear significant expense as a result of the increased litigation and would find their own cases significantly delayed by the additional burdens caused by the out-of-state cases, which would

provide no benefits to (and indeed would prejudice) the forum state's own residents.  Such a result is completely inconsistent with the fundamental principles of the Due Process Clause, and would certainly be highly prejudicial to such out-of-state corporate defendants, which is likely why the Supreme Court has thus far only upheld general jurisdiction in *one* case—where (unlike here) the forum state was the corporate defendant's "principal, if temporary, place of business," *Keeton*, 465 U.S. at 779 n.11 (citing *Perkins*, 342 U.S. at 448).

Against this backdrop, it is apparent that Plaintiffs have not, and cannot, establish general jurisdiction over Travelers because its contacts with Louisiana are not sufficient to meet the extraordinarily high bar for general jurisdiction.  The Travelers entities named as Defendants here are Connecticut corporations with their principle place of business in Connecticut.  This fact, standing alone, likely precludes the exercise of general jurisdiction over Travelers as a matter of law under Supreme Court precedents.  But even if not, as one federal court recently held in dismissing an insurer for lack of personal jurisdiction, even the following extensive contacts were "far less than those which the Supreme Court and the Fifth Circuit have found insufficient for a finding of general jurisdiction":

> [The insurer] was licensed by the Texas Department of Insurance; contracted and communicated with, and issued insurance policies to, its insureds located in Texas; billed and collected premiums from insureds in Texas; adjusted and paid claims by and against its insureds in Texas on insurance policies issued to Texas insureds; hired and paid Texas attorneys to represent it and its insureds when they were sued in Texas more than 100 times during the past ten years; purposefully invoked the jurisdiction of a Texas court by filing suit in Dallas County to collect a debt; contracted with Texas-based vendors and paid them more than $25 million over the past five years; purchased almost $400 million worth of Texas municipal bonds, upon which defendant receives over $15,000,000 annually in interest; and paid over $80,000,000 in claims-related expenses to Texas-based insureds, claimants, adjusters, and others.

*See Am. Bank, F.S.B. v. Auto-Owners Mut. Fire & Cas. Ins. Co.*, No. 4:10-CV-331-A, 2010 U.S. Dist. LEXIS 102341, at *11-19 (N.D. Tex. Sept. 27, 2010) (granting motion to dismiss for lack of personal jurisdiction over insurer because the claims did not arise from any specific contacts with Texas and there was no general jurisdiction); *see also Choice Healthcare, Inc. v. Kaiser Found. Health Plan*, 615 F.3d 364, 368 (5th Cir. 2010) (affirming dismissal of insurer for lack of personal jurisdiction); *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984) ("[N]o court has ever held that the maintenance of even a substantial sales force within the state is a sufficient contact to assert jurisdiction in an unrelated cause of action.").  Here, the Plaintiffs have not adduced *any* facts, much less facts that would establish that Travelers contacts with Louisiana were as extensive as in *Auto-Owners*, which were insufficient as a matter of law. Accordingly, it is apparent from the record that this Court lacks personal jurisdiction over Travelers, and Travelers should be dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

In any event, because Plaintiffs have completely failed to make any showing that would allow this Court to actual exercise personal jurisdiction over Travelers, the PSC's Motions for Injunctive Relief necessarily fail, and must be denied.  *Enterprise Intern., Inc.¸* 762 F.2d at 470 ("[w]here a challenge to jurisdiction is interposed on an application for a preliminary injunction ***the plaintiff is required to adequately establish that there is at least a reasonable probability of***

*ultimate success upon the question of jurisdiction*.") (internal quotations omitted, emphasis added).[8]

###### C.   This Court lacks subject matter jurisdiction over the claims asserted against Travelers.

This Court also lacks subject matter jurisdiction over the claims asserted against Travelers. The claims asserted against the Travelers entities can be placed in two categories: (1) claims governed by Florida law, such as all the claims brought by Florida Plaintiffs relating to Florida Insured Defendants and Florida policies; and (2) claims asserted against The Standard Fire Insurance Company ("Standard Fire") relating to Summit Contractors, Inc., Summit Homes of Louisiana, Inc., or Summit Homes, LLC (collectively "Summit Homes"). This Court lacks subject matter jurisdiction over both categories of claims, albeit for different reasons. This Court also lacks subject matter jurisdiction over some claims for additional and independent reasons, as demonstrated by various profile forms that directly undermine the allegations contained in the Amended Complaint and demonstrate those Plaintiffs have no claim against any Travelers insured.[9]

---

[8] Here, despite the fact that Travelers raised this very point in its opposition to the Lift Stay Motions (ECF No. 7020 at 6-7), the PSC has failed to supplement their Motion with *any* factual support, which dooms these motions. *See, e.g.,* FED. R. CIV. P. 6(c)(2) (requiring affidavits in support of motions to be filed with the motion); *see also Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70*, 415 U.S. 423, 434 n.7 (1974) (before preliminary injunction may issue, defendant must be given fair opportunity to oppose application and to prepare for such opportunity); *Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991) (vacating preliminary injunction applying same principles). As these authorities demonstrate, the PSC cannot cure its deficient factual record in its reply brief.

[9] St. Paul Fire & Marine Insurance Company ("St. Paul") has not joined this brief in full, but would have similar arguments that subject matter jurisdiction is lacking because it is a high level excess carrier and there has been no showing that the underlying limits have been exhausted or that its policy limits could even be potentially implicated by the claims. Absent such allegations there is no justiciable issue as to St. Paul. St. Paul adopts Sections II and III of this brief in full.

1.     **The Florida-related Plaintiffs lack standing to purse any claims under Florida's non-joinder statute.**

Florida's non-joinder statute expressly bars non-insured third-parties like Plaintiffs from maintaining or accruing any cause of action against the alleged wrongdoer's insurer until *after* securing a settlement or verdict against that insured.  Fla. Stat. § 627.4136 (2011) (formerly Section 627.7262 and also known as the "non-joinder statute"); *see also VanBibber v. Hartford Accident & Indem. Ins. Co.*, 439 So. 2d 880, 882 (Fla. 1983) (holding that this statute constitutionally modified Florida law to prohibit direct actions against insurers); *Lucente v. State Farm Mut. Auto. Ins. Co.*, 591 So. 2d 1126, 1128 (Fla. Ct. App. 1992) (affirming dismissal of injured third party's claims against insurer under Section 627.4136, stating "[b]ecause Lucente had not received a judgment against the insured, he did not have standing to sue State Farm").  The prohibition extends to declaratory relief.  *See, e.g., Clarendon Am. Ins. Co. v. Bayside Rest., LLC*, No. 8:05-cv-1662, 2006 U.S. Dist. LEXIS 9121, at *3 (M.D. Fla. Feb. 23, 2006) (dismissing declaratory claims against insurer, holding non-insured third-party "lacks the requisite standing to seek declaratory relief," and that "the statute is clear on its face that a person not insured under the contract may not bring action against the liability insurer . . . until they attain a verdict against the insured").

As this Court has previously held, statutes, like the non-joinder statute, deprives this Court of subject matter jurisdiction over these claims.  *Essex Co. v. Bayou Concession Salvage*, 942 F. Supp. 258, 260-61 (E.D. La 1996) (Fallon, J.) (dismissing claims for lack of subject matter jurisdiction because the relevant state statute, in that case Texas, prohibited the direct action);  *see also Grant v. Gilbert,* 324 F.3d 383, 386 (5th Cir. 2003) (holding plaintiff lacked standing, which required dismissal of suit); *Lucente*, 591 So. 2d at 1128 ("[b]ecause Lucente had not received a

judgment against the insured, he did not have standing to sue State Farm"); *Clarendon Am. Ins. Co.*, 2006 U.S. Dist. LEXIS 9121, at *3 (same principle, dismissing because there was no actual case or controversy over the claim based on lack of standing).[10]

> **2.      Standard Fire did not issue any policy to Summit Homes and therefore, the Plaintiffs asserting claims with regard to Summit Homes lack standing to sue Standard Fire.**

Although the Amended Complaint asserts that Standard Fire issued an insurance policy to Summit Homes (ECF No. 3132-4 at 113-15; ECF No. 3132-5 at 42), the policy number alleged is for a homeowners policy with Mary Catalanotto (who is not a party in *Amato*), and not for a CGL policy (much less a CGL policy issued to Summit Homes).   (Exhibit A., O'Brien Decl. at ¶ 8.) Moreover, Travelers was unable to find any records suggesting Standard Fire or any other Travelers affiliate ever issued any general liability insurance policy to Summit Homes.  (*Id.*)  It is axiomatic that in order for a court to have subject matter jurisdiction over a claim, the plaintiff must have standing to assert it in the first place.  *Grant,* 324 F.3d at 386.  The plaintiff must "allege[] such a personal stake in the outcome of the controversy" as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Florida Dept. of Ins. v. Chase Bank of Texas Nat. Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (quoting

---

[10] Florida's non-joinder statute applies to all the Florida Plaintiffs asserting claims against Travelers here because they reside in Florida and are bound by the non-joinder statute that reflects a substantive public policy choice by that state to preclude its residents from directly suing liability insurers.  *Van Bibber*, 439 So. 2d at 883.  In any event, Louisiana substantive law will certainly not apply to any of the claims relating to Travelers policies, because under Louisiana's choice of law approach, the law of the state where the policy is issued or delivered controls.  *See, e.g., Trade-Winds Environ. Restoration, Inc. v. Stewart*, 653 F. Supp. 2d 649, 652 (E.D. La. 2009) ("Under Louisiana choice of law rules, the provisions of an insurance policy are interpreted in accordance with the law of the state in which the policy was delivered"); *Hall v. Horace Mann Ins. Co.*, 626 F. Supp. 2d 630, 633 (E.D. La. 2009) (holding that the law of the state where the policy "was issued" applies to liability policies).  Here, for example, the Travelers policies issued to Banner Supply and Black Bear were issued in Florida, to a Florida insured, through a Florida broker, and thus are subject to Florida law.  (Exhibit A, Declaration of Thomas O'Brien ("O'Brien Decl.") at ¶¶ 5-6.)

*Warth v. Seldin,* 422 U.S. 490, 498-99 (1975)).  A plaintiff must establish the three elements required for standing:  (1) an "injury in fact", known as an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent - not conjectural or hypothetical"; (2) a causal connection between the injury and defendants' conduct; and (3) a "likely" probability that the injury will be redressed by a favorable decision.  *Id.* at 387 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Failure to establish *any one* of the above elements mandates dismissal of Plaintiffs' Petition pursuant to Rule 12(b)(1).  *See Rivera v. Wyeth Ayerst Laboratories*, 283 F.3d 315, 319 (5th Cir. 2002) (explaining that an "injury in fact" is an "irreducible constitutional minimum" of standing under Art. III of the Constitution); *see also Arbaugh v. Y&H Corp.*, 163 L. Ed. 2d 1097, 1109-10 (U.S. 2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court ***must dismiss*** the complaint") (emphasis added); *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998); Fed. R. Civ. P. 12(h)(3).

Here, the Plaintiffs asserting claims against Standard Fire lack standing because they cannot possibly have been injured by Standard Fire when Standard Fire didn't issue any insurance policy to Summit Homes (that might cover their alleged injuries).  As such, this Court is without subject matter jurisdiction over those claims and they should be dismissed.

### 3.    In addition to the above, some Plaintiffs are also lacking standing for additional reasons as demonstrated by the profile forms.

Many of the plaintiffs allegedly asserting claims against Travelers also lack standing for additional reasons disclosed by their very own profile forms.[11]   For example, as noted above, the Dauterives purport to assert a claim against Travelers based on the allegation that Banner Supply Co. (a Travelers insured) distributed their drywall (ECF No. 3132-4 at 3), yet their sworn profile form demonstrates it was Interior Exterior Supply (not a Travelers insured), not Banner, that provided their drywall.  (Exhibit B at 2.)   Similarly, there are numerous other inconsistencies between the allegations contained in the Amended Complaint and the profile forms for the Travelers-related Plaintiffs that demonstrate other Plaintiffs have no claim against Travelers, and as such, no standing to sue Travelers, which is yet another reason to dismiss those claims under Rule 12(b)(1).  *See, e.g., Grant*, 324 F.3d at 386.

## II.    The PSC Has Not, And Cannot Demonstrate The Prerequisites For Preliminary Injunctive Relief.

The PSC cannot meet the rigid standards necessary to obtain *any* preliminary injunctive relief, much less the extraordinary (and unprecedented) relief it is seeking.  *Winter v. NRDC, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374-74 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is

---

[11] Travelers was unable to locate all of the Plaintiff Profile Forms for the Plaintiffs asserting claims against it, despite receiving copies of hundreds if not thousands of profile forms through the liaison counsel process.  The statements in those sworn profile forms, which this Court required the parties to submit as supplements to the pleadings, control over the inconsistent allegations in the unverified schedules to the Amended Complaint.  *See, e.g., In re Enron Corp.*, No. MDL 1446, 2011 U.S. Dist. LEXIS 1359, at *160-61 (S.D. Tex. Jan. 6, 2011) (holding that exhibits to the pleadings or other documents that are central to the claims control over inconsistent allegations in the complaint) (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)).

in the public interest.").  "A preliminary injunction is an extraordinary remedy never awarded as of

right."  *Winter*, 129 S. Ct. at 376-77 (citations omitted).

Travelers incorporates and adopts the arguments set forth in the Insurer Steering

Committee's Opposition Brief in full, which demonstrate that the PSC's Motions: (1) fail to

demonstrate that any of the prerequisites for injunctive relief are met here; (2) would require the

posting of a bond in an amount of at least $10,000,000 just as to Travelers, and in the hundreds of

millions of dollars as to all defendants sought to be enjoined; and (3) demonstrate that the

proposed injunctive orders are impermissibly vague, indefinite, and overbroad in express violation

of Rule 65(d) of the Federal Rules of Civil Procedure and Supreme Court and Fifth Circuit

controlling precedents.

**III.   The PSC's Motions For Injunctive Relief Also Fail To Meet The Requirements Articulated By The United States Supreme Court To Establish "Common Fund," "Substantial Benefit," Or Entitlement To A Prejudgment Equitable Asset Freeze.**

**A.   The PSC has not established any "common fund" nor provided any benefit, much less a "substantial one" as to the claims against Travelers.**

As explained in more detail in response to the PSC's Motion to Establish a Litigation

Expense Fund (ECF No. 5042),[12] in order to establish that the "common fund" or "substantial

benefit" doctrines apply in the first instance, the PSC must demonstrate that it has actually created

a common benefit and prevailed on some significant issue in this litigation, and it must also meet

the following three requirements -- mandated by the United States Supreme Court -- before costs

may be shifted:  (1) The classes of persons benefited by the lawsuits are small in number and

easily identifiable; (2)  The benefits must be traceable with reasonable accuracy; and (3) The Court

---

[12] The arguments and points made in that Response Brief, as well as made by all other oppositions filed to that motion, are expressly incorporated in full herein, and preserved for appellate purposes.

must be confident that the costs of litigation can be shifted with exactitude to those benefiting. *Boeing v. Van Gemert*, 444 U.S. 472, 478-79, 100 S. Ct. 745, 749, 2 L. Ed. 2d 676 (1980) (noting these strict limitations on the common fund doctrine, and that because of these restrictions, the common-fund doctrine does not alter the American Rule "against taxing the losing party with the victor's attorney's fees," because under the common-fund doctrine the defendant no longer has any interest in the fund); *see also Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1319 (10th Cir. 2000) ("[T]he common fund doctrine requires identifiable beneficiaries and circumstances that permit proportionate sharing among the beneficiaries with some exactitude.") (internal citations omitted).  Simply put, the PSC has not, and cannot, demonstrate that each of these factors is met here.

Additionally, the PSC's Motions for Injunctive Relief cannot rely on the "common fund" doctrine because the PSC has not established any "common fund" through a successful litigation or settlement.  *See, e.g., Morganroth & Morganroth*, 213 F.3d at 1319 ("[T]he dispositive fact is that this action did not result in the creation of a fund from which others would benefit.  Thus, we find no legal basis on which the award of attorney's fees can be sustained."); *Holbrook v. Pitt*, 748 F.2d 1168, 1176 (7th Cir. 1984) (litigation requiring HUD to make subsidy payments to individual landlords did not create a "fund" from which fees could be recovered). Nor has the PSC demonstrated that it has successfully conferred ***any*** benefit on the plaintiffs, much less a "substantial" one.  To recover fees under the "substantial benefit" or "common fund" doctrine, an attorney must show that his or her efforts (1) were successful, ***and*** (2) conferred a substantial benefit on others.  In the words of the Fifth Circuit, "[a]ttorney's fees may . . . be awarded to a ***successful litigant*** whose success confers 'a substantial benefit on the members of an ascertainable

class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Rogers v. Air Line Pilots Ass'n., Int'l*, 988 F.2d 607, 616 (5th Cir. 1993) (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-94, 90 S. Ct. 616, 626, 24 L. Ed. 2d 593 (1970)) (emphasis added).  Here, the PSC has not even survived the pleadings stage in *Amato*, and accordingly, there is absolutely no basis to assert that the PSC somehow has met these requirements.

**B.      The Asset-Freeze Injunction Sought By The PSC Is Also Barred By Binding Law.**

Similarly, the PSC's request for the extraordinary remedy of a prejudgment asset freeze is barred by controlling Supreme Court precedents, including *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) (holding that such injunctions are improper in actions at law).  Here, the only possible claims against Travelers are "at law," which bars this relief as a matter of law.  The PSC's request also fails for additional reasons as discussed in full in the Insurer Steering Committee's Opposition Brief, which Travelers incorporates in full.

**C.      The PSC's back-handed attempt to reargue this Court's repeated denial of the PSC's Motions to Restrict Communications with Putative Class Members is also without merit.**

Travelers incorporates and adopts the arguments set forth in the Insurer Steering Committee's in full with regard to this issue.

## CONCLUSION

In sum, for all the foregoing reasons, the reasons contained in the Insurer Steering Committee's Opposition Brief, the reasons contained in all the other oppositions that were filed to these motions, the related motions to lift stay, and the predecessor motion to establish a litigation expense fund, and the multiple motions to restrict communications with putative class members, Travelers respectfully requests that this Court:  (1)  Deny Plaintiffs' Steering Committee's Motion for an Accounting and Other Relief (ECF No. 6669) and *Emergency* Motion for an Order Preventing the Payment or Transfer of Certain Moneys or, in the Alternative, for Court Ordered Mediation and Temporary Stay of All Outside Settlement Activities (ECF No. 6947) because these Motions are wholly without any merit; (2) and grant such other relief this Court deems necessary and proper.

* * * *

February 22, 2011

Respectfully submitted by,

/s/ Ralph S. Hubbard III, T.A.

Ralph S. Hubbard III, T.A., La. Bar 7040
Seth A. Schmeeckle, La. Bar 27076
LUGENBUHL, WHEATON, PECK, RANKIN
& HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Phone:  (504) 568-1990
Fax:  (504) 310-9195
Email:  rhubbard@lawla.com
         sschmeeckle@lawla.com

And

Donna J. Vobornik
Daniel E. Feinberg
Anthony T. Eliseuson
SNR DENTON US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6404
Phone: (312) 876-8000
Fax:  (312) 876-7934
donna.vobornik@snrdenton.com
daniel.feinberg@snrdenton.com
anthony.eliseuson@snrdenton.com

*Attorneys for Defendants The Travelers Indemnity Company of Connecticut, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois, St. Paul Fire & Marine Insurance Company, and The Standard Fire Insurance Company*

22

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 22nd day of February, 2011.

_/s//Ralph S. Hubbard_____
**Ralph S. Hubbard, La. Bar No. 7040**