UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * | MDL No. 2047 |
| | * | JUDGE: FALLON |
| **This Document relates to** | * | MAG: WILKINSON |
| *Silva v. Arch Insurance Co., et al* | * | |
| **(09-8034)** | * | |
| * * * * * * * * * * * * * | | |

### OBJECTION OF THE NORTH RIVER INSURANCE COMPANY TO PLAINTIFFS' MOTION FOR LEAVE OF COURT TO FILE AMENDED MOTION IN INTERVENTION

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

The North River Insurance Company ("North River") asks that Plaintiffs' Motion for Leave of Court to File Amended Motion in Intervention (the "Motion for Leave") and Plaintiffs' Amended Motion to Intervene ("Amended Motion") be denied. While the Amended Motion magniloquently proclaims that "the Amatos, the Byrnes, the Puigs and the Beckendorfs are compelled to present themselves as representative plaintiffs" because the Silva Plaintiffs are now involved in the pilot remediation program, North River believes that Plaintiffs' real motivation is not reluctant altruism but, instead, an attempt to subvert the purpose of bellwether trials that has been envisioned by the Court in this MDL.

There is a very significant fact missing from the various filings made by Plaintiffs in support of their Amended Motion. Not only are the Amatos, Byrnes, Puigs, and Beckendorfs seeking leave to intervene to serve as class representatives in this proceeding, but they are also the exact same group that has been unilaterally proposed by the Plaintiffs' Steering Committee

("PSC") to serve as the plaintiffs in the bellwether trial set for this July. While the PSC apparently does not see any problems in using the same set of cherry-picked plaintiffs to act as both class representatives and bellwether plaintiffs, the proposal to allow eight Plaintiffs to serve this double duty in the MDL raises very severe questions about (1) the reliability of the results of the proposed bellwether trial and (2) the suitability of designating class representatives whose claims will soon be uniquely different than every other claimant in the MDL.

The Fifth Circuit has recognized that allowing each side in an MDL to pick its preferred claimants for a bellwether trial does not provide a representative sample of the broad range of plaintiffs in a large plaintiff class and is not an acceptable method for selection of bellwether plaintiffs. In *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997), the Fifth Circuit held that a trial consisting of fifteen claimants selected by plaintiffs and fifteen claimants selected by defendants "is not a bellwether trial" because these "are not cases calculated to represent the group of . . . claimants" and they "lack the requisite level of representativeness so that the results could permit a court to draw sufficiently reliable inferences about the whole that could, in turn, form the basis for a judgment affecting cases other than the selected thirty." *Id.* The PSC's proposed strategy in this MDL – to allow one side to hand-pick its best cases while leaving the other side out of the selection process entirely – is even more inherently biased and unsuitable then the selection process castigated in *Chevron*.

And what happens if the PSC's chosen dream team of claimants serve not only as class representatives but also as bellwether plaintiffs? Within a few weeks (or perhaps even sooner) of the class certification hearing, the eight class representatives will have claims reduced to judgment. At that point, whether their interest is in trying to recover on a successful verdict and judgment or overturn an unsuccessful verdict and judgment, the interests of those eight "class representatives" is no longer aligned with those of the hundreds of other class members.

Following a trial of their individual claims, the proposed class representatives may well be the least suitable plaintiffs to represent the class as a whole.

Allowing class representatives to also serve as the initial bellwether plaintiffs is fated to cause substantial and perhaps insurmountable problems in the administration of further class proceedings. For these reasons, the PSC's attempt to rig the system by allowing their hand-picked class representatives to also serve as their hand-picked bellwether plaintiffs should be denied, and their Amended Motion that is intended to achieve that impermissible goal should be denied.

## THE IMPORTANCE OF THE SELECTION PROCESS IN BELLWETHER TRIALS

It is now generally accepted that the trial of some members of a large group of claimants may provide a basis for resolving common issues or claims or for enhancing prospects of settlement. *Chevron*, 109 F.3d at 1019.

> A bellwether trial designed to achieve its value ascertainment function for settlement purposes or to answer troubling causation or liability issues common to the universe of claimants has as a core element representativeness-that is, the sample must be a randomly selected one of sufficient size so as to achieve statistical significance to the desired level of confidence in the result obtained.

*Id.*

In order for a bellwether trial to achieve those goals, it "is critical to a successful bellwether plan that an honest representative sampling of cases be achieved." *In re Yasmin and Yaz Product Liability Litigation*, 2010 WL 4024778, *1 (S.D. Ill. 2010). "If bellwether trials are to serve their twin goals as informative indicators of future trends and catalysts for an ultimate resolution, the transferee court and the attorneys must carefully construct the trial-selection process." Eldon E. Fallon, Jeremy T. Grabill, and Robert Pitard Wynne, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2343 (2008) (hereinafter "*Bellwether Trials*").

> Little credibility will be attached to this process, and it will be a waste of everyone's time and resources, if cases are selected which do not accurately reflect the run-of-the-mill case. If the very best case is selected, the defense will not base any settlement value on it as an outlier. If a case is picked that is dismissed on summary judgment, after the Plaintiff's evidence or a jury's verdict when it is obviously a weak case, the plaintiffs side will look upon it as an outlier as well.

*Yasmin*, 2010 WL 4024778 at *2.

The role of bellwether trials in MDL proceedings has evolved over time. *Bellwether Trials* at 2331. Originally, courts attempted to use the results of bellwether trials to bind related claimants formally, even in the absence of class certification. *Id.* Appellate courts have been skeptical of this practice "for good reason." *Id.* More recently, however, bellwether trials have been used to provide a more informational approach. Courts have used bellwether trials "not to resolve the thousands of related cases" pending in an MDL "but instead to provide meaningful information and experience to everyone involved in the litigation[]." *Id.* at 2332. In addition, the use of bellwether trials allows the parties to test various theories and defenses in a trial setting. *Id.* at 2337.

If a court determines that bellwether trials are appropriate in an MDL, "the transferee court and coordinating counsel should focus on the mechanics of the trial-selection process." *Id.*

at 2343-43.  A trial case-selection process requires careful participation by the court and all of the parties:

> Ideally, the trial-selection process should accurately reflect the individual categories of cases that comprise the MDL in toto, illustrate the likelihood of success and measure of damages within each respective category, and illuminate the forensic and practical challenges of presenting certain types of cases to a jury. Any trial-selection process that strays from this path will likely resolve only a few independent cases and have a limited global impact.

*Id.* at 2343.  Indeed, "unrepresentative cases, even if they are successful at trial, will do little to resolve the entire litigation and will have little predictive value." *Id.* at 2349.

The trial-selection process consists of three "separate but equally important sequential steps:" (1) cataloguing the entire universe of cases in the MDL, (2) creating a pool of potential bellwether cases and putting those cases on a fast-track for discovery, and (3) near the end of the discovery process, selecting a predetermined number of cases within the sample for trial.  *Id.* at 2343.  *Bellwether Trials* discusses alternative methods for each stop in the case-selection process but, in all instances, recognizes a strong preference for a collaborative effort between the court and the parties.  *See, e.g., id.* at 2351 (in selecting cases to fill the trial-selection pool, the court should make efforts to have both sides jointly agree on the cases because allowing one side to pick the cases "does not eliminate or minimize the change that the attorneys will select favorable, rather than representative, cases"); *id.* at 2364 (the disadvantage to allowing one side to choose the bellwether cases is that "the selecting side of attorneys may disregard their responsibility to select cases that represent the major variables and may instead choose cases that increase their ability to prevail at trial").

### THE PSC'S UNILATERAL SELECTION OF BELLWETHER PLAINTIFFS UNDERMINES THE PURPOSE OF BELLWETHER TRIALS

The history of bellwether trials has established that bellwether trials will only serve their intended purposes if the claimants in those trials are truly representative of the overall claimant

group. Instead of subscribing to that paradigm, the PSC wants to skew the process by using claimants that are hand-picked by the PSC, without even an effort to show that the chosen few are representative of the vast majority of claimants. If the PSC is allowed to dictate the selection of the bellwether plaintiffs, the inevitable consequence will be that if there is a result that is favorable to the bellwether plaintiffs, it will be seen as an anomaly and will not be viewed as a reliable basis for the prediction of future outcomes. In any event, the PSC's unilateral decision on who the bellwether plaintiffs will be is inimical to the selection process envisioned by *Bellwether Trials* and mandated by the Fifth Circuit's decision in *Chevron.*

While North River agrees that the trial-selection process should proceed as expeditiously as possible, North River does not believe that a rush to judgment should take precedence over a reasoned and impartial resolution of bellwether claims. The Defendants can have no confidence in a bellwether trial that features only the PSC's showcase Plaintiffs, nor can such a trial be expected to result in an adequate protection of future trends to be a reliable basis for further resolution of claims. Instead of letting the PSC import hand-picked claimants into the *Silva* case, the Court should encourage the parties to go through the trial-selection process described in *Bellwether Trials* in order to maximize the utility of the bellwether approach.

### THE PLAINTIFF'S USE OF CLASS REPRESENTATIVES AS BELLWETHER PLAINTIFFS WILL CREATE CONFLICTS BETWEEN THE CLASS REPRESENTATIVES AND THE ABSENT CLASS MEMBERS

The PSC's desire to have their hand-picked class representatives also serve as their hand-picked bellwether plaintiffs will create an inevitable nightmare should a class be certified. Fed. R. Civ. P. 23(a)(3)-(4) requires that the claims of class representatives be typical of the claims of the other class members and that the class representatives fairly and adequately protect the interests of the class. Under the PSC's proposal, the class representatives would have their individual claims tried on an expedited basis. This would create a very significant conflict

between the class representatives and the absent class members. If the class representatives will have a verdict and judgment in their favor, their interest will be in upholding and enforcing the judgment, not in representing the hundreds of claimants whose claims remain untried. On the other hand, if the claims of the class representatives are found to be unmeritorious, then the absent class members will not want to be bound by that result and will undoubtedly distance themselves from the unsuccessful class representatives.

If the class representatives are given an expedited trial on their individual claims, their claims will no longer be typical of the claims of other class members and the class representatives will no longer be able to adequately and fairly represent the interests of absent class members. North River respectfully suggests that it would be an unnecessary waste of time and expense to allow the proposed class representatives to become bellwether plaintiffs if the probable outcome is to make those claimants unable to serve as class representatives. That is what will happen, however, if Plaintiffs' Amended Motion to Intervene is granted.

## CONCLUSION

Class action proceedings and bellwether trials are supposed to serve different purposes. A class action is a vehicle that is supposed to result in a single binding result in a particular class of claimants. Bellwether trials, on the other hand, are intended to provide information that may provide guidance in the treatment or resolution of similar claims but are not meant to be binding on any claims other than those actually tried. The PSC seems to want to amalgamate those two separate procedures into one by using the same hand-picked plaintiffs to serve both purposes. North River is not aware of that being done anywhere else in the country. The purposes of a bellwether trial will be frustrated in the bellwether plaintiffs are allowed to be selected only by the PSC, and the ability to manage a large class action will be irreparably harmed by having class representatives who are in conflict with all absent class members because of an expedited trial of

the class representatives' claims. Rather than cause these problems, the Court should deny the Plaintiffs' Amended Motion to Intervene and direct the parties to engage in a more reasoned and balanced selection of bellwether plaintiffs.

For these reasons, Defendant The North River Insurance Company asks that the Plaintiffs' Amended Motion to Intervene be denied.

          Respectfully submitted,

          By:    __*/s Eric B. Berger*_____
                Brian S. Martin, Esq.
                Kevin Risley, Esq.
                Rodrigo "Diego" Garcia, Jr., Esq.
                THOMPSON COE COUSINS & IRONS LLP
                One Riverway, Suite 1600
                Houston, Texas 77056
                Phone: (713) 403-8206
                Fax: (713) 403-8299
                bmartin@thompsoncoe.com

                -and-

                Sidney J. Angelle, Esq., La. Bar No. 1002
                Eric B. Berger, Esq. La. Bar No. 26196
                LOBMAN CARNAHAN BATT ANGELLE
                    & NADER
                400 Poydras Street, Suite 2300
                New Orleans, Louisiana 70130
                Phone: (504) 586-9292
                Fax:   (504) 586-1290
                sja@lcba-law.com

                ATTORNEYS FOR THE NORTH RIVER
                INSURANCE COMPANY

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on February 22, 2011.

                                                                                         /s Eric B. Berger
                                                                                         ERIC B. BERGER