## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL      MDL No. 02047
         PRODUCTS LIABILITY LITIGATION       SECTION L

                                              JUDGE FALLON
                                              MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:

KENNETH and BARBARA WILTZ, *et. al.,*
*Plaintiffs,* v. BEIJING NEW BUILDING MATERIALS
PUBLIC LTD. CO., *et. al., Defendants.*
Case No. 10:361

_____/

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, R. FRY BUILDERS, INC.'S, MOTION TO DISMISS THE CLAIMS ASSERTED AGAINST IT IN THE WILTZ OMNIBUS CLASS ACTION COMPLAINT IN INTERVENTION (II(C))

Defendant, R. Fry Builders, Inc. ("Fry"), pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby files this Memorandum of Law in Support of its Motion to Dismiss, with Prejudice, the claims asserted against it by Plaintiff **Howell Q. Heath, Jr.** ("Plaintiff"), in the Wiltz Omnibus Class Action Complaint in Intervention (II(C)) (the "Omnibus Complaint")[1].  In support, Fry states as follows:

### MEMORANDUM OF LAW

Plaintiff has added Fry – the Florida builder that constructed the Plaintiff's home – to the hundreds of defendants named in the Amended Omnibus Class Action Complaint filed in *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al*., Case No. 2:10-cv-00361 (E.D.

---

[1]      This Memorandum cites to the, Omnibus Class Action Complaint in Intervention (II(C)) filed by Clifford Abromatts and Janice Worobec, et al., on or about December 15, 2010, as "Intervention Cmplt. ¶ __."

La.) on March 16, 2010 (the "Omnibus Complaint")[2] even though there is no evidence, and indeed no allegation, that the construction of his home was in any way deficient.  Plaintiff wants compensation for his drywall, yet it is beyond dispute that Fry had <u>nothing</u> to do with the manufacture, marketing or distribution of that drywall.  Fry, in other words, does not belong in this lawsuit.

The futility of the claims asserted against Fry underscores this point.  In a shotgun pleading that makes no effort to distinguish between Fry and the entities actually responsible for the drywall, Plaintiff has offered a laundry list of generic common law and statutory theories.  However, every one of the claims asserted against Fry should be dismissed as fatally defective pursuant to Rule 12(b)(6).

## I.  BACKGROUND

### A.    Plaintiff's Allegations Against Fry.

The Omnibus Complaint heedlessly lumps together thousands of parties over hundreds of pages of truly boilerplate allegations.  Specifically, Plaintiff alleges the following eleven claims[3] against Fry:  Negligence (Count I, ¶¶ 782-789); Negligence Per Se (Count II, ¶¶ 790-796); Strict Liability (Count III, ¶¶ 797-814); Breach of Express and/or Implied Warranties (Count IV, ¶¶ 815-822); Breach of Implied Warranty of Habitability (Count VI, ¶¶ 835-841); Breach of

---

[2]      This Memorandum cites to the Wiltz Amended Omnibus Complaint as "Cmplt. ¶___", which Plaintiff has adopted by reference.  *See* Intervention Cmplt., p. 1.

[3]      There are fifteen Counts in the Omnibus Complaint, but only eleven of them arguably apply to Fry.  The four remaining Counts do not.  Specifically, Count V (for breach of warranty under Florida's condominium code) does not apply to Fry because Plaintiff allegedly purchased a residential home, not a condominium.  Cmplt. ¶¶ 823-834.  Count VIII applies to "Louisiana Home Builders Only," and no one disputes that Fry resides in Florida.  *Id*. ¶¶ 846-852.  Count IX ("Redhibition – by Louisiana Plaintiffs") does not apply because Plaintiff is allegedly a resident of Florida, not Louisiana.  *See* Intervention Cmplt., p. 15.  Finally, Count X (Louisiana Products Liability Act) applies solely to "Manufacturing" or "Distributor" Defendants, whereas the Omnibus Complaint identifies Fry as a "Developer/Builder" Defendant.  *Id*. ¶¶ 823-834.

Contract (Count VII, ¶¶ 842-845); Private Nuisance (Count XI, ¶¶ 877-883); Negligent

Discharge of Corrosive Substance (Count XII, ¶¶ 884-890); Unjust Enrichment (Count XIII, ¶¶

891-894); Violation of Florida's Deceptive and Unfair Trade Practices Act (Count XIV, ¶¶ 895-

889); and Equitable and Injunctive Relief and Medical Monitoring (Count XV, ¶¶ 900-912).

Each of these claims is governed by and arises under the law of Florida.[4]

**B.      The Governing Legal Standard.**

A motion to dismiss under Rule 12(b)(6) should be granted if the allegations in the

Complaint, even if proven true, would not entitle the plaintiff to relief.  *See Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 & 570 (2007); Fed. R. Civ. P. 12.  Plaintiff's obligation "to provide

the 'grounds' of [his] 'entitlement to relief' requires more than labels and conclusions."  *Id*. at

555 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## II.  ARGUMENT

Each of the causes of action asserted against Fry should be dismissed pursuant to Civil

Rule 12(b)(6) because none of them states a claim for relief.  The balance of this Memorandum

addresses the incurable defects in each of Plaintiff's eleven claims against Fry.

---

[4]      Because Plaintiff filed his claims against Fry directly in the Eastern District of Louisiana – rather than filing in a Florida court and having the matter transferred to this forum – this Court should apply the choice-of-law rules of Louisiana.  *See Long Island Trust Co. v. Dicker*, 659 F.2d 641, 645 n.6 (5th Cir. 1981).  Under Louisiana's choice-of-law rules, Florida has, by far, the most significant relationship with the dispute.  Plaintiff's alleged drywall injuries occurred in Florida, the subject property is located in Florida, and Fry resides in Florida.  *See* Cmplt. ¶ 661; *Gulf States Utilities Co. v. NEI Peebles Elec. Prods., Inc*., 819 F. Supp. 538, 552-53 (M.D. La. 1993) (discussing Louisiana choice of law factors and statutes). Florida substantive law therefore governs each of Plaintiff's claims against Fry.

A. **Plaintiff's negligence allegations (Count I) are without merit and improperly pleaded.**

Plaintiff's negligence claim (Count I) really illustrates why Fry does not belong in this lawsuit. The Omnibus Complaint alleges that Fry somehow owed Plaintiff a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question. Cmplt. ¶ 783. The Complaint further alleges that Fry had a duty to provide Plaintiff with certain warnings about the drywall. *Id.* ¶ 786.

Besides being intercepted by the economic loss rule (*see* discussion, *infra*), these allegations are indisputably false. Fry, for example, did not "design," "manufacture," or "import" any drywall. Yet even assuming the truth of Plaintiff's specious allegations, they do not state a claim for relief. Under Florida law, a negligence claim requires the plaintiff to plead and prove (among other things) that the defendant owed a duty to the plaintiff, and that the duty was breached. *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (Florida law) ("Failure to establish any one of these elements is fatal to the plaintiff's case."). Plaintiff can allege neither prerequisite.

To begin with, Fry owed no duty of care with respect to Plaintiff's drywall. Under Florida law, even manufacturers, retailers and distributors – all of whom arguably bear a *greater* responsibility toward their products than a contractor like Fry – have a duty to inspect or warn only when the product is considered "inherently dangerous." *See O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is

inherently dangerous."). Drywall obviously does not fit into the narrow "inherently dangerous" category, and the Omnibus Complaint does not allege otherwise.[5]

In the same vein, Fry cannot be held liable in negligence for latent defects absent actual or implied knowledge of those defects. *See Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1991). The alleged defects in the drywall are plainly "latent" (*e.g.,* Cmplt. ¶ 2611), and Plaintiff has not alleged actual or implied knowledge by Fry.

The result is that Plaintiff cannot parlay his allegedly defective drywall into a negligence claim against Fry. Absent an "inherently dangerous" product or actual or implied knowledge – neither of which Plaintiff can allege in good faith – the first Count fails as a matter of law. The boilerplate, and wholly unsupported assertion that Fry "knew or should have known" that the drywall would "harm" Plaintiff (*id.* ¶ 788) is really only a legal conclusion. That conclusory allegation cannot possibly salvage a negligence claim, particularly one that flies in the face of such basic principles of Florida law.

Furthermore, to the extent that Plaintiff seeks to sue Fry in tort for purely economic losses, those claims should also be dismissed under Florida's products liability economic loss

---

[5] "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category. They include highly toxic materials, second hand guns and drugs…. In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself." *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted). By way of illustration, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are not "inherently dangerous." Drywall would certainly not be an "inherently dangerous" product under Florida law.

rule.  In *Casa Clara Condominium Association v. Charley Toppino & Sons, Inc*., 620 So. 2d 1244, 1248 (Fla. 1993), the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties.  The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages.  *Id*. at 1247.  Because the plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier.  *Id*. at 1246-48.

The same reasoning applies here.  The economic loss rule limits Plaintiff to recovering non-economic losses (e.g., for personal injury) and damages to property other than the home itself.[6]  *See Casa Clara*, 620 So. 2d at 1247-48.  Plaintiff must therefore replead his tort claims to seek only non-economic losses.  *Cf.* Cmplt. ¶ 2647 (seeking general "damages" on negligence count).

**B.     Plaintiff has not stated a claim for negligence per se (Count II).**

Besides being barred by the economic loss rule, Plaintiff's negligence per se claim (Count II) is poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort.  Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>." *DeJesus v. Seaboard Coast Line R.R. Co*., 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiff has not stated a claim for negligence per se for two reasons.  First, he has not identified a statute that Fry allegedly violated, much less explained how that violation occurred.

---

[6]     Plaintiff also cannot recover economic losses because he has <u>suffered</u> no such losses. The Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed."  *In re Chinese Manufactured Drywall Products Liability Litig.,* 680 F. Supp. 2d 780, 799 (E.D. La. 2010).

Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes." Cmplt. ¶ 793. Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and Local Building Codes" that Fry allegedly violated are "designed to protect the <u>general</u> <u>public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). In other words, Plaintiff's negligence per se claim appears to be nothing more than repackaged negligence claim.[7] It should be summarily dismissed for that reason as well.

## C.      Plaintiff's Cannot Hold Fry Strictly Liable for the Allegedly Defective Drywall.

> *(i)      Plaintiff's strict liability claims against Fry must be dismissed because Fry did not manufacture the drywall at issue, nor was it in the "chain of distribution" with respect to the drywall.*

Plaintiff seeks to hold Fry "strictly liable" for the allegedly defective drywall installed in his home. However, the law is well settled that strict products liability is reserved for the actual manufacturers and distributors of defective products, and not for defendants - such as Fry - who simply install allegedly defective material as an incidental component of their home construction services.[8] *See Bennett v. Centerline Homes, Inc.*, No. 2009 CA 014458 (Fla. Cir. Ct. Order Nov.

---

[7]      Plaintiff's claim for "Negligent Discharge of a Corrosive Substance" (Count XII) is similarly duplicative of his garden-variety negligence claim. Regardless, Florida law does not appear to recognize an independent cause of action for Negligent Discharge.

[8]      Note that Florida courts have routinely held that a contractor is viewed as a "provider of services, not a merchant" of products. *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *see also In re Sunshine-Jr. Stores, Inc.*, 240 B.R.

5, 2010) (hereinafter, the "Omnibus Order") attached hereto as **Exhibit "A"** (dismissing all strict liability claims brought by homeowners against their builders for allegedly defective Chinese drywall installed in their homes on the ground that the defendant builders cannot be deemed to have manufactured the drywall at issue, and there is no merit to the homeowners' claims that the builders are in the legal "chain of distribution" of such material for strict liability purposes).

Section 402A of the Restatement (Second) of Torts ("Section 402A"), which sets forth the doctrine of strict liability, was judicially adopted by the Florida Supreme Court in *West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976).[9]  Section 402A holds that a seller of a defective product that is unreasonably dangerous may be subject to strict liability for injury to the ultimate user or to his/her property if the seller is "engaged in the business of selling the product." *Id.*  Accordingly, courts have routinely held that the "proper defendants" for strict products liability claims "are the manufacturers [of the defective products] and perhaps other persons in the chain of distribution" of the defective products, not contractors. *See e.g., Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008); *Alvarez v. DeAguirre*, 395 So. 2d 213 (Fla. 3d DCA 1981) (holding that a general contractor who built a home with a defective electrical system could not be held strictly liable for the damages caused by the defect).

For instance, in *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986), plaintiffs who were injured when their automobile skidded on a slippery roadway brought a strict liability claim against the contractor who resurfaced the road on the grounds that

---

788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

[9]      "An action sounding in strict products liability requires the plaintiff to prove that (1) a product (2) produced by a manufacturer (3) was defective or created an unreasonably dangerous condition (4) that proximately caused (5) injury". *Chadbourne, Inc. v. Vaughn*, 491 So. 2d 551, 553 (Fla. 1986), *citing West* 336 So. 2d at 86.

the road sealer applied to the road was defective.  *Id.* at 1291.  There, the Fifth District Court of Appeals held that, although the contractor mixed and applied the paving product during its resurfacing work, it did not manufacture the product and therefore could not be held strictly liable for the injuries sustained.  *Id.*  Indeed, the court pointed out that the contractor was rendering "services" for the improvement of real property and that the supply of goods (i.e., the paving product) was only a minor element of the transaction which did not give rise to strict products liability.  *Id.*

The public policy behind strict products liability is to protect the public from defective products and to create an incentive for the production of safe products by assigning the costs of defects to manufacturers and others in the chain of distribution.  *See Porter v. Rosenberg*, 650 So. 2d 79 (Fla. 4th DCA 1995), *rev. den.* 661 So. 2d 825 (Fla. 1995) (holding that the rationale for applying strict liability to distributors is that they, "like manufacturers, are engaged in the business of distributing goods to the public…[and] are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from the defective products" they distribute).  However, the "chain of distribution" is clearly limited to those entities that are "in the business of" manufacturing, marketing, distributing and selling the particular <u>products</u> at issue – not the end users who happen to use the product in conjunction with services provided to others.

Illustrating the difference between a contractor/builder like Fry and those entities that manufactured or were in the "distributive chain" of placing the drywall at issue into the stream of commerce is the Fourth District Court's decision in *Adobe Bldg. Centers v. Reynolds*, 403 So. 2d 1033 (Fla. 4th DCA 1981), *overruled on other grounds by Casa Clara Condominium Assoc. v. Charley Toppino and Sons, Inc.,* 620 So. 2d 1244, 1247 (Fla. 1993).  In *Adobe*, a homebuilder

sued a distributor of cement and mortar mix in strict liability on the grounds that the mortar mix sold to the homebuilder (and used in the homebuilder's construction of homes) was defective and caused exterior stucco to "pop-out". *Id.* at 1033. There, the distributor attempted to avoid the strict liability claim by alleging that the homebuilder did not constitute an "ultimate consumer or user" of the product sold and, therefore, had no standing to invoke the doctrine of strict liability. *Id.* at 1034. However, citing Comment 1 to Section 402A, the Fourth District Court held that the homebuilder did constitute an "end user" or "consumer" of the mortar mix and, therefore, could proceed in its strict products liability claim against the distributor of the defective product. Like the homebuilder in *Adobe,* Fry is an "end user" or "consumer" of the drywall at issue. As such, because Fry cannot logically be deemed <u>both</u> a consumer of the drywall <u>and</u> a manufacturer/distributor of same, Fry cannot be held strictly liable to Plaintiff for any alleged defects in drywall manufactured and distributed by others.

In Chinese drywall cases it is the manufacturers and distributors that are responsible for placing the drywall into the stream of commerce, and it is <u>they</u> who are "in the business" of selling, developing and marketing drywall to end users such as Fry. Fry offered (and provided) a service – home construction. The use of drywall was merely an incidental part of that service and not an "offer of goods" which would subject Fry to strict liability. To hold a service provider, like Fry, strictly liable for the defective manufacture of every nail, roof truss, or 2" x 4" piece of wood installed in every building it builds would not promote public policy, but instead, would "cast too wide a net" by holding ultimate "consumers" strictly liable for products sold to them. Because there is no factual basis upon which to find that Fry manufactured or was in the business of distributing or supplying drywall, and because the installation of the drywall was

only a small component of the overall service of home construction, Plaintiff's strict liability claims against Fry should be dismissed as a matter of law, with prejudice.

    *(ii)*    *Plaintiff's strict liability claim against Fry must be dismissed, as a matter of law, because the doctrine of strict liability does not apply to structural improvements to real property.*

Moreover, even if Plaintiff's strict liability claim was not barred for the foregoing reasons, the claim still fails because the law is well settled in Florida that "the doctrine of strict products liability <u>does not</u> apply to structural improvements to real estate," such as a home, because a home is not a product. *Federal Ins. Co. v. Bonded Lightning Protection Systems, Inc.*, No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (quoting *Easterday v. Masiello*, 518 So. 2d 260, 261 (Fla. 1988)); *see also Virgilio v. Ryland Group, Inc.*, 695 F. Supp. 2d 1276 (M.D. Fla. 2010) (holding that "a home is not a product" for purposes of strict products liability); *Pamperin v. Interlake Companies, Inc.*, 634 So. 2d 1137 (Fla. 1st DCA 1994) (structural improvements to real property are generally not considered products for purposes of products liability actions); and the Omnibus Order attached hereto as <u>Exhibit "A"</u> (dismissing all Chinese drywall plaintiffs' strict liability claims against homebuilders because "the law in Florida appears to be well settled that strict liability does not apply to improvements to real property, as improvements to real property are not considered products").

Under Florida's strict liability law, the drywall at issue here is considered a "structural improvement" to real property – and not a product – because the drywall is an integral part of the buildings into which it was installed. *See Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007) (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water and Waste, Inc.*, 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank

"as an integral part" of sewage facility); *Foreline Security Corp. v. Scott*, 871 So. 2d 906 (Fla. 5th DCA 2004) (rejecting contention that a security system installed in a bank is a "product" and not a "structural improvement").  As such, Fry cannot be held strictly liable for the damages asserted by Plaintiff under a strict liability theory.[10]

**D.      Plaintiff cannot maintain a warranty claim against Fry (Counts IV & VI).**

In Counts IV (Breach of Express Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiff alleges causes of action based on various express and implied warranties.[11]  Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties – let alone explain how Fry might have breached them – these improvised warranty claims should be dismissed for several independently sufficient reasons.

      (i)     *The Plaintiff cannot maintain a warranty claim of any kind because he was not in privity of contract with Fry.*

Plaintiff is suing Fry based on the installation of allegedly defective drywall in his home, which is located at 213 NW 1st Street, Cape Coral, FL 33993.  Intervention Cmplt., p. 15.  It is axiomatic that a plaintiff suing in warranty "must be in privity of contract with the defendant." *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005); *Cruz v. Mylan, Inc.*, No. 8:09-CV-1106-T17-EAJ, 2010 WL 598688, *2 (M.D. Fla. Feb. 17, 2010) (same); *T.W.M. v. Am. Med.*

---

[10]      Moreover, as stated above, to the extent that Plaintiff seeks the recovery of purely economic losses under a theory of strict liability, those claims are also foreclosed by the economic loss rule and should be dismissed on that basis as well.

[11]      The Omnibus Complaint also includes a claim for "redhibition" on behalf of "Louisiana Plaintiffs" (Count IX), but the Plaintiff does not reside in Louisiana.  *See* Intervention Cmplt., p. 15.  Besides, redhibition requires a showing that the allegedly defective product – here, drywall – failed for its intended purpose.  *See Benoit v. Ryan Chevrolet*, 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). This showing is unavailable in light of the Court's determination that the drywall is "serving its intended structural purpose."  *In re Chinese Manufactured Drywall*, 680 F. Supp. 2d at 799.

*Systems, Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (explaining concept of privity).   The Plaintiff, however, never contracted with Fry with respect to his home.   Instead, Plaintiff acquired his house from a third party, Ellen Bruno (who is not a litigant in this action).   A copy of the June 23, 2005 Construction Agreement between Fry as "Builder" and Ellen Bruno as "Purchaser/Owner" is attached hereto as "**Exhibit B**."[12]   The Certificate of Occupancy for the Plaintiff's home was issued on May 1, 2007.   *See* Certificate of Occupancy (attached as "**Exhibit C**").   A copy of the General Warranty Deed, dated June 12, 2008, from Bruno in favor of Plaintiff is attached as "**Exhibit D**."[13]

Without a showing of contractual privity with Fry, the Plaintiff's express and implied warranty claims cannot survive.[14]   *See, e.g., Borchardt v. Mako Marine Intern., Inc.*, No. 08-

---

[12]     Note that the Construction Agreement between Bruno and Fry prohibited Bruno from assigning her agreement without Fry's express written prior consent.  See Ex. B, Addendum ¶ 17. The Omnibus Complaint nowhere alleges that Bruno ever sought or obtained such consent.

[13]     The fact that Plaintiff chose not to attach these documents to the Omnibus Complaint does not prevent the Court from considering them now.  The Court can and should consider these instruments because they are undeniably central to Plaintiff's claims against Fry and – at least with respect to the Certificate of Occupancy and Warranty Deed referenced herein – publicly available.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (holding that contract could be considered on motion to dismiss where it was attached to motion, referred to in the complaint, and central to the plaintiff's claims); *Aucoin v. Regions Fin. Corp.*, No. 09-3835, 2010 WL 334533 *2 (E.D. La. Jan. 21, 2010) (incorporating Retirement Plan mentioned in complaint and central to one or more of plaintiff's claims); *Federal Ins. Co. v. New Hampshire Ins. Co.*, No. 03-385-CM, 2010 WL 28568, *4 (M.D. La. Jan. 4, 2010) ("Since the insurance policy issued by New Hampshire is central to [plaintiff's] claims, the Court may consider it as evidence even though it was not attached to [plaintiff's] original petition or amended complaint.").

[14]     To be sure, the Omnibus Complaint asserts – without a shred of detail – that the Plaintiff (along with every other plaintiff in this lawsuit) "was in privity" with Fry or were "foreseeable third party beneficiaries of any warranties."  Cmplt. ¶ 816.  These are classic unsupported legal conclusions that this Circuit has long classified as inadequate to survive a motion to dismiss.  *See Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (reaffirming that Fifth Circuit does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" in resolving Rule 12(b)(6) challenges) (internal marks and citation omitted); *see also Fed. Ins. Co. v. Bonded Lightning Protection Sys., Inc.*, No. 07-80767-CIV,

61199-CIV, 2009 WL 3856678, *4 (S.D. Fla. Nov. 17 2009) (dismissing warranty claims where there was "no allegation … to establish that there [was] privity of contract").

> (*ii*)    *Plaintiff also cannot maintain a claim for breach of warranty of merchantability or of fitness for a particular purpose.*

Even if Plaintiff were in privity of contract with Fry (which he is not), his implied warranty claims must still be dismissed.  First, as a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by Fry.  That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant."  *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

Fry is not bound by any implied warranties because it is not considered a merchant under Florida warranty law.  Fry contracts with its clients to provide a service:  home construction. Because the inclusion of drywall in Plaintiff's home was incidental to the construction services that Fry rendered (to the initial purchaser, Bruno), the implied warranties of merchantability and of fitness for a particular purpose do not apply in these circumstances.  *See In re Sunshine-Jr.*, 240 B.R. at 794 ("[A]lthough construction contracts … typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty

---

2008 WL 5111260, *7 (S.D. Fla. Dec. 3, 2008) (dismissing third-party beneficiary claim where complaint failed to allege that contracting parties intended contract to benefit third party).

claims unavailable against contractor who used allegedly defective product in road work).

Finally, the claim for implied warranty of fitness for a particular purpose (Cmplt. ¶ 820) cannot survive because Plaintiff has not – and indeed cannot – allege that the drywall in his home was unfit for a particular or unusual purpose different from that for which drywall is ordinarily used.  The Court has already determined that "[t]he Chinese drywall stands just as any other functioning drywall, serving its intended structural purpose."  *In re Chinese Manufactured Drywall Products Liability Litig.,* 680 F. Supp. 2d at 799 (emphasis added).  This adjudicated fact is, by itself, fatal to the claim for breach of the implied warranty of fitness for a particular purpose.[15]

**E.    Plaintiff's breach of contract claim (Count VII) must be dismissed.**

As with his breach of warranty claims, the Plaintiff cannot maintain a claim for breach of contract (Count VII) for the simple reason that he never contracted with Fry.  Plaintiff acquired his home from a third party, Ellen Bruno, leaving his only contractual remedy with that party.  *See* Ex. B.  "It is elementary that a person not a party to nor in privy with a contract does not have the right to sue for its breach."  *Cibran Enters., Inc. v. BP Prods. N.A., Inc*., 365 F. Supp. 2d 1241, 1251 (S.D. Fla. 2009) (internal marks and citation omitted); *Banco Ficohsa v. Aseguradora Hondurena*, *S.A.*, 937 So. 2d 161, 164-65 (Fla. 3d DCA 2006) (same principle).  As such, Count VII must be dismissed.

---

[15]    *See Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding dismissal of particular purpose warranty claim where plaintiff did not "allege a particular or unusual use different from the purpose for which the item sold was ordinarily used"); *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

**F.      Plaintiff cannot state a claim for private nuisance (Count XI).**

Plaintiff's private nuisance claim (Count XII) would fail even if it were not barred by the economic loss rule.  *See supra*. at Section II.A.  An action for private nuisance requires the claimant to establish an injury to his or her own property <u>in connection with the use of the real property of someone else</u>.  *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").

The Omnibus Complaint does not allege that Plaintiff's purported injuries resulted from real property owned by Fry.  On the contrary, the nuisance claim is predicated entirely on the allegation that "structures owned by Plaintiffs" are to blame.  Cmplt. ¶ 878.  That allegation simply does not state a claim for private nuisance.  *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

**G.      Plaintiff cannot bring a claim for unjust enrichment (Count XIII).**

The elements of unjust enrichment are that "(1) <u>the plaintiff has conferred a benefit on the defendant</u>; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that <u>it would be inequitable for the defendant to retain the benefit</u> without paying fair value for it."  *Commerce Partnership 8098 Ltd. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA

2005).

Plaintiff's unjust enrichment claim stumbles on the first and fourth of these elements. The first element is not satisfied because the Plaintiff cannot show that he "conferred a benefit" on Fry because Plaintiff did not pay Fry a single dime to build his house, as he obtained the home from a third party.  *See* Ex. B.  The Plaintiff, in other words, did not "enrich" Fry in any sense.

As to the fourth element of unjust enrichment, there is nothing inequitable or unjust about permitting Fry to retain whatever benefit it received for constructing the Plaintiff's home because it cannot be disputed that Fry paid a third party (i.e., a subcontractor or distributor) for the drywall in question.  As the Florida appellate court explained in *Maloney v. Therm Alum Industries, Corp.*, "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust.  Consequently, <u>if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit</u>." 636 So. 2d 767, 770 (Fla. 4th DCA 1994), *overruled on other grounds by*, *Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities).

Thus, not only is the Plaintiff's unjust enrichment claim barred because he did not "enrich" Fry, his unjust enrichment claim is precluded because whatever compensation Fry received for the drywall was not retained "unjustly."

**H.     The Omnibus Complaint fails to state a claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIV).**

In the overbroad style that is the hallmark of the Omnibus Complaint, Plaintiff also alleges a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*. ("FDUTPA").  Cmplt. ¶ 896.  A

FDUTPA claim comprises three distinct elements:  (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages."  *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  "In light of this trend, claims arising under the FDUTPA must be pled with particularity."  *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).  At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard.  Indeed, it alleges no specific facts in support of Plaintiff's FDUTPA claim.  *See* Cmplt. ¶ 897.  It does not identify a single instance in which Fry – by its words or conduct – deceived Plaintiff or treated him unfairly.  Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b).  *See Florida Digital Network, Inc. v.*

*Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[16]

      Plaintiff's failure, however, is not merely one of pleading. Plaintiff's FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to him. *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co*., No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury). Because Fry provided services – namely, the construction of two houses – Plaintiff can establish "actual damages" <u>only</u> by showing a difference between the "market value" of the services that Fry actually provided and the services that Fry was required to provide.[17] *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties" (citations omitted)).

---

[16]     Plaintiff's FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply. A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly" and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc*., No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

[17]     The same would hold true if Fry had delivered a "product" – i.e., a completed home – rather than providing a "service." To recover under FDUTPA, Plaintiff would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

As a matter of law, Plaintiff cannot make this showing.  There is zero evidence – and Plaintiff does not appear to suggest – that the manner in which Fry <u>constructed</u> the home was in any way responsible for the allegedly defective drywall.  The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." *In re Chinese Manufactured Drywall Products Liability Litig.,* 680 F. Supp. 2d at 799.

So even if Plaintiff could conceivably replead his FDUTPA claim with the particularity demanded by Rule 9(b), he has no hope of establishing the "actual damages" component of that claim.  Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.,* 886 F. Supp. 842, 851 (N.D. Fl. 1995).  Count XIV must be dismissed for this reason as well.

**i.      Plaintiff's claim for equitable relief and medical monitoring (Count XV) cannot go forward against Fry.**

Plaintiff's final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XV).  This hybrid, catchall-type claim seeks, among other things, an order that Fry "buy back or rescind" its contracts and "create, fund, and support a medical monitoring program." Cmplt. ¶ 903.  This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based.  Since each of Plaintiff's substantive claims is due for dismissal, so too is his derivative claim for injunctive relief.  *See, e.g., Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a

traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).".

Even if one or more of Plaintiff's substantive claims could survive dismissal and lend support to an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiff has failed to allege an inadequate legal remedy or irreparable harm.  Injunctions under both federal and Florida law require these elements.  *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted).  Plaintiff does not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory and statutory damages" – are inadequate and entitle him to the extraordinary remedy of an injunction.  *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiff's request for "medical monitoring," it is unclear whether Florida law permits this cause of action.  The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring.  It is hardly clear, then, that Plaintiff can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim.  At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999).  The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm.  *Id*.

The Omnibus Complaint does not even attempt to properly allege these elements. Instead, Count XV sets for a series of legal conclusions – e.g., "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct" – without a shred of factual detail.  Plaintiff fails to identify, for example, any medical condition (latent or otherwise) supposedly caused by his drywall; nor does he identify a monitoring procedure for that supposed condition.  <u>Plaintiff does not even claim to be ill</u>.  He would have this Court speculate about his imaginary ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring.  It states a series of legal conclusions, and those "do not suffice."  *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate).  The glaring deficiencies highlighted above make the final Count subject to dismissal now, on the pleadings.  *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v.*

*Metabolife Intern., Inc*., 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc*., 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

### III.  CONCLUSION

For all of the foregoing reasons, Defendant R. Fry Builders, Inc. respectfully requests an order dismissing the Amended Omnibus Class Action Complaint in Intervention (II(C)), with prejudice, and awarding Fry its fees incurred in defending against Plaintiff's claims pursuant to Florida's Unfair and Deceptive Trade Practices Act.

Dated:  February 23, 2011

Respectfully submitted,

**AKERMAN SENTERFITT**

BY:     /s/ Leslie Miller Tomczak
Stacy Bercun Bohm (Fla. Bar No. 022462)
Valerie B. Greenberg. (Fla. Bar No. 26514
Leslie Miller Tomczak (Fla. Bar No. 126489)
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, Florida 33301-2229
Telephone: (954) 463-2700
Telecopier: (954) 463-2224
Email:  stacy.bohm@akerman.com
        valerie.greenberg@akerman.com
        leslie.tomczak@akerman.com
**ATTORNEYS FOR DEFENDANT,
R. FRY BUILDERS, INC.**

**PHELPS DUNBAR LLP**

BY:     /s/ Susie Morgan
Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La Bar No. 31309)
Canal Place, 365 Canal Street  Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
Email: Brent.barriere@phelps.com
       Susie.morgan@phelps.com
       Skylar.rosenbloom@phelps.com

**LOCAL COUNSEL FOR DEFENDANT,
R. FRY BUILDERS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing document has been served on Plaintiffs'
Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail
and e-mail <u>or</u> by hand delivery and email <u>and</u> upon all parties by electronically uploading the
same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing
was electronically filed with the Clerk of Court of the United States District Court for the Eastern
District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in
accordance with the procedures established in MDL 2047, on this 23rd day of February, 2011.

                                    _____ /s/ Leslie Miller Tomczak _____