# EXHIBIT A



34292782

Nov 10 2010
3:14PM

**IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA**

MARLENE BENNETT,                    CASE NO. 50 2009 CA 014458
                                    Civil Division "AA" Chinese Drywall
      Plaintiff,

vs.

CENTERLINE HOMES INC., et al.,

      Defendants.

_____/

### OMNIBUS ORDER ON PENDING MOTIONS TO DISMISS

      The Court has under consideration the following omnibus motions: 1) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Tort Claims Under the Economic Loss Rule and Claims for Private Nuisance (joined by the Albanese-Popkin defendants); 2) Banner Supply Company's Omnibus Opening Brief On Economic Loss Rule and Nuisance (joined by certain installer defendants); 3) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Strict Liability Claims. The omnibus motions now before the Court have been fully briefed, and were argued at scheduled case management conferences. Having reviewed the submissions of the parties, and having heard the argument of counsel, the Court makes the following findings.

### Economic Loss Rule

      The first issue for consideration is the application of Florida's economic loss rule to the tort claims asserted by the homeowner plaintiffs. The Supreme Court discussed at length the origins and application of the economic loss rule in *Indemnity Insurance Company of North America v. American Aviation, Inc.*, 891 So.2d 532 (Fla. 2004).

1

The economic loss rule is a limitation on tort claims where the damages suffered are economic losses. Economic losses are defined as damages for inadequate value, costs of repair and replacement of defective products, or loss of profits. *Id.* at 536; *see also, Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.,* 620 So.2d 1244 (Fla. 1993). These damages are also described as the loss of the "benefit of the bargain" or "disappointed economic expectations." *Indemnity Insurance, id* at 536.

All of the parties here acknowledge that the economic loss rule would not bar a claim for personal injury caused by defective Chinese manufactured drywall. Therefore, to the extent that the plaintiff homeowners are suing in tort for personal injury, the economic loss rule does not apply and such claims are not subject to dismissal. The issue is whether- and to what extent - the economic loss rule bars the recovery of economic damages in the pending Chinese drywall cases.

The Supreme Court made clear in *Indemnity Insurance* that the economic loss rule applies in two distinct circumstances. First, the rule applies to parties in contractual privity for matters arising out of the contract. Second, the rule applies to liability for a defective product that causes damage to the product, but causes no personal injury or damage to other property. Both applications of the rule must be examined here.

1. Contractual Privity Economic Loss Rule

The defendant homebuilders assert that the plaintiff homeowners are barred from asserting tort claims for their economic losses based on the application of the contractual privity economic loss rule. The Court agrees.

The Supreme Court in *Indemnity Insurance* explained the rational for application of the contractual privity economic loss rule as follows:

2

A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. *Indemnity Insurance, id* at 536-537.

The plaintiffs' tort claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Supreme Court.

There are recognized exceptions to application of the contractual privity economic loss rule. Independent torts such as fraud in the inducement are not barred by the economic loss rule. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238 (Fla. 1996). Claims for negligence in rendering professional services are not barred. *Moransais v. Heathman*, 744 So.2d 973 (Fla. 1999). Likewise, statutory claims are not barred by the economic loss rule. *Comptech Intern, Inc. v. Milan Commerce Park, Ltd.*, 753 So.2d 1219 (Fla. 1999).

None of the recognized exceptions apply here.[1] The damages sought by the plaintiff homeowners arise out of the contracts they entered with the defendant homebuilders. Traditional contract damages must be applied to the economic losses suffered by the plaintiffs.

---

[1] It is clear that homeowners are not exempt from the application of the economic loss rule on public policy grounds. *Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1247 (Fla. 1993) (refusing to exempt homeowners from the economic loss rule despite their status as "an appealing, sympathetic class"). Moreover, the Court will not create an exception to the contractual privity economic loss rule based on an assertion that the drywall is an unreasonably dangerous product.

2. Products Liability Economic Loss Rule

The products liability economic loss rule applies in limited circumstances notwithstanding the absence of privity.    The rule applies when the product causes damage to itself, but causes no personal injury or damage to other property.   The issue here is whether the plaintiff homeowners' tort claims against the defendant suppliers and installers – who are not in privity with the plaintiffs - are barred by the economic loss rule.   The Court holds that such claims are not barred.

It appears clear from the Supreme Court's discussion in *Indemnity Insurance* that application of the products liability economic loss rule is limited.   That is to say, the Supreme Court made clear that the products liability economic loss rule should not be extended beyond its intended purpose, and the rule must only be applied in those limited circumstance where all elements necessary for its application have been satisfied.

The Court has considered the well-reasoned discussion of the economic loss rule in Judge Fallon's order in *In Re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780 (N.D. Louisiana 2010).   Judge Fallon traces the origins and history of the rule in Florida (and elsewhere) and discusses the application of the economic loss rule to non-privity defendants in the multi-district Chinese drywall litigation.

It is not necessary to repeat here the analysis of Judge Fallon in considering the application of the economic loss rule to non-privity defendants.   However, the Court will briefly address Judge Fallon's conclusion – a conclusion which this Court adopts.

Judge Fallon essentially concludes that the Chinese drywall at issue here presents a unique factual scenario that does implicate the products liability economic loss rule at

4

all.  The factual distinction lies in the nature of the alleged defect and its impact, or lack thereof, on the product itself.

In cases like *Casa Clara*, the defect in the product damaged the product itself. The defect in the concrete caused the concrete to fail and, presumably, to damage other components of the home.   Here, the alleged defect does not damage or affect the product (Chinese manufactured drywall) at all.

In defining the application of the products liability economic loss rule, the Supreme Court has stated that the rule is implicated where "there is a defect in a product that *causes damage to the product*, but causes no personal injury or damage to other property." *Indemnity Insurance, id.* 536  [emphasis added].   Here the alleged defect causes *no damage to the product* and causes *only* personal injury or damage to other property.  Under such unique circumstances, the Court agrees that the products liability economic loss rule does not apply.

## Private Nuisance

The Court will next consider whether plaintiff can state a claim for private nuisance based on the allegation that the Chinese manufactured drywall is off-gassing causing a nuisance within the effected homes.   All defendants assert that the claim for private nuisance under such circumstances cannot be asserted.  The Court agrees with the defendants.

Florida law essentially defines nuisance as:

> using one's property as to injure the land or some incorporeal right of one's neighbor... The law of nuisance plays between two antithetical extremes: The principle that every person is entitled to use his property for any purpose that he sees fit, and the opposing principle that everyone is bound to use his property in such a manner as not to injure the property or rights of his neighbor... The law of private nuisance is a law of degree; it

5

generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances.

*Beckman v. Marshall*, 85 So. 2d 552, 554-55 (Fla. 1956) (approving and adopting the language of *Antonik v. Chamberlain*, 78 N.E.2d 752 (Ohio Ct. App., 1947).

Plaintiffs assert that there is no exhaustive definition of what constitutes a nuisance citing *Windward Marina, L.L.C. v. City of Destin*, 743 So. 2d 635 (Fla. 1st DCA 1999). While this may be true, Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("This court recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another") (citing *Reaver v. Martin Theatres of Florida, Inc.*, 52 So. 2d 682 (Fla. 1951). It seems clear that the underlying policy of private nuisance jurisprudence does not support the plaintiffs' application of the doctrine of private nuisance in this case.

Plaintiffs rely heavily on the four-part test for proving the existence of a private nuisance purportedly established by the Court in *Beckman*. According to the plaintiffs, none of the four components makes any mention of a requirement that a private nuisance must involve two landowners. However, such a roadmap for establishing a private nuisance is neither expressed nor implied by the Court in *Beckman*.

In fact, much of the instructive language in *Beckman* seems to contradict the plaintiffs' position that nuisance actions do not necessarily involve contemporaneous and proximate private land owners. *Beckman, id* at 555 ("no one has absolute freedom in the

6

use of his property, because he must be restrained in his use by the existence of equal rights of his neighbor to the use of his property."). *Id.*

Further, none of the cases plaintiffs rely on directly support the contention that a nuisance may exist absent a defendant's exercise of its property rights. *See, e.g., Davey Compressor Co. v. City of Delray Beach*, 639 So. 2d 595 (Fla. 1994) (holding that a defendant who illegally disposed of a highly toxic solvent by dumping it onto the grounds at the rear of its facility created a nuisance because it contaminated plaintiff's water supply); *Kotcher v. Santaniello*, 438 So. 2d 440, 441 (Fla. 1983) (declining to reverse an injunctive order which was "principally predicated upon a determination that the appellants' conduct in keeping and training dogs for attack and security purposes constituted a nuisance in the residential neighborhood where all of the parties resided").

The only case which arguably supports plaintiffs' position, *Putnam v. Roudebush*, 352 So. 2d 908 (Fla. 2d DCA 1977), held that a noisy air conditioner was a "continuing nuisance" that constituted a "permanent defect in the realty." However, private nuisance was not even a claim in the *Putnam* case. The Court's reference to the air conditioning being a nuisance was merely a descriptive reference, and not a statement of a legal claim.

Taken together, neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case. The Court concludes that plaintiffs' claims for private nuisance must be dismissed.

## Strict Liability

The defendant homebuilders have moved to dismiss the plaintiffs' strict liability claims. The homebuilders advance two grounds for dismissal. First, the homebuilder defendants assert that only manufacturers of the product and those in the chain of

7

distribution can be held strictly liable and they are neither.   Second, the defendant homebuilders assert that strict liability does not apply to improvements to real property. The Court will begin with the homebuilders' second argument.

The law in Florida appears to be well settled that strict liability does not apply to improvements to real property as improvements to real property are not considered products.   *Plaza v. Fisher Development, Inc.*, 971 So.2d 918 (Fla. 3rd DCA 2007); *Neumann v. Davis Water & Waste, Inc.*, 433 So. 2d 559 ( Fla. 2d DCA 1983) *see Easterday v. Masiello*, 518 So.2d 260, 261 (Fla.1988) ("[I]t has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate."); *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1291 (Fla. 5th DCA 1986).

Plaintiffs argue that an exception exists with respect to improvements to real property "where the injuries result not from the real property as improved by the alleged defective product but directly from a defective product manufactured by defendant, which product may have itself been incorporated into the improvement of the realty before the injury from the product occurred." *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1292 (Fla. 5th DCA 1986); *Craft v. Wet 'N Wild, Inc.*, 489 So.2d 1221, 1222 (Fla. 5th DCA 1986).   Plaintiffs conceded at oral argument that this exception has never been applied in a reported Florida case.   Indeed, the exception appears to be *dicta* in the cases that mention it.

Whether the exception advanced by the plaintiffs exists or not, it does not appear that the exception would apply to the defendant homebuilders in this case.   The exception appears to apply to the manufacturer of an allegedly defective product which

happens to be incorporated into the real property.   The defendant homebuilders did not manufacture the drywall at issue.

The defendant homebuilders also argue that only manufacturers, and those in the distributive chain of a product, can be held strictly liable.  Defendant homebuilders assert that they are not manufacturers and they are not within the distribution chain of the drywall at issue.  While the plaintiffs argue otherwise, the Court finds that the defendant homeowners' position has merit.

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that the plaintiff homeowners' tort claims against the defendant homeowners seeking economic losses are dismissed based on the privity economic loss rule.  The request of the defendant suppliers and installers (who lack privity with the plaintiffs) to dismiss the plaintiffs' tort claims based on the products liability economic loss rule is denied.   The plaintiffs' claim for private nuisance against all defendants is dismissed.  Likewise, the plaintiffs' claims for strict liability against the homebuilder defendants are dismissed.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida this  5ᵗʰ  day of November, 2010.

_____
JUDGE GLENN D. KELLEY
CIRCUIT COURT JUDGE

Copies furnished to:

Plaintiffs' Liaison Counsel, C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134; Defendants' Liaison Counsel, Todd R. Ehrenreich, Esq. and Michael A. Sexton, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, FL 33133; and for distribution to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with the Electronic Service Order entered in this case.

# EXHIBIT B

921. Vesle Blvd. Suite 203
Cape Co.al, Fl 33990
239-772-2665
239-772-2615 Fax

# R.Fry Builders, Inc.

## CONTRACT

THIS AGREEMENT made and entered into this __23rd_ day of June ___ 2005 by and between R. FRY BUILDERS, INC., Builder, and ___Ellen Bruno___, purchaser, presently residing at: 3447 25TH STREET, San Francisco CA 94110
Telephone: Home # __415-990-9932 Cell # _____ Fax #
E:Mail address:

WITNESSETH: That in consideration of the covenants and agreements herein contained on the part of said Purchaser, the Builder does agree as follows:

CONSTRUCT A SINGLE FAMILY RESIDENCE ON OWNER'S LOT:    Dove Model

Address:  213 NW 1ST ST. CAPE CORAL FL 33993
          Block  · 2585  Lot 75-76 Unit 3/  Pb. 1/ Pg. 18
          Strap #  11-44-23-C3-02585.0750

| | |
|---|---|
| TOTAL PRICE OF HOME | $ 215,000.00 |
| LESS DEPOSIT | ($  2,000.00) |
| TOTAL | $ 213,000.00 |
| LESS 10% DUE | ($ 21,300.00) |
| TOTAL | $ 191,700.00 |
| POOL PACKAGE | $  27,000.00 |
| TOTAL TO BE DISBURSED | $ 218,700.00 |

Purchaser agrees to pay the Builder, the sum of $ 242,000.00
(Two hundred twenty nine thousand, two hundred and 00/00)

THIS CONTRACT is subject to the successful purchase of the aforementioned lot and the securing of septic and building permits from _Cape Coral Building Dept. This contract is also subject to the granting of a Loan by Watermark Lending. /
IF SAID LOAN is not approved, the deposit shall be refunded. IF CONSTRUCTION has not started within 6 months from the above date, the Builder has the option of canceling this contract and the deposit shall be refunded. (All refunds will be less any out of pocket expenses paid by the Builder).

1. Ten percent (10%) due at Bank Closing not to be deducted from first draw: $ 21,300.00
2. Proceeds of the above loan in the amount of $ 218,700.00
3. $ 7,000.00 Closing Costs to be dispersed at Bank Closing
4. Commissions payable to Watermark Real Estate(Stefan Damianov) $ 5,520.00 at Bank Closing
5. Pool draws to be paid separate from construction draws $ 27,000.00 Allowance

IN WITNESS WHEREOF, the above named parties do hereby agree to do the full performance of the covenants and agreements as hereinabove set forth.

PURCHASERS:                          ACCEPTANCE BY BUILDER:

_____ 6/25/05               _____ 7/20/05
              Date                   R. Fry Builders, Inc.   Date

_____
              Date

*Quality Craftsmanship in Southwest Florida since 1983*

923 -   Pondo Blvd. Suite 203
Cape Coral, Fl 33990
239-772-2566
239-772-2613 Fax

# R Fry Builders, Inc.

## *Dome Specifications*

R. Fry Builders, Inc. hereby called the Builder, does agree that the Builder will supply all labor and materials for the construction of a single family residence for   Ellen Bruno per blueprints provided and accepted.

### STRUCTURAL & CONSTRUCTION FEATURES & MATERIALS

4 bedroom 3 baths
CBS with stucco finish
All Grading, Fill & Clearing - ALLOWANCE  $10,000.00
2-course stem wall
Concrete footers reinforced with steel
Certified termite soil treatment under slab
1-year subterranean termite warranty
4" steel reinforced concrete foundation w/vapor barrier
Concrete Driveways and sidewalks per plot plan
Interior wall framing 16" on center (wood)
Engineered roof trusses w/hurricane straps
Plywood Sheathing or equivalent or roof
Steel reinforced concrete tie beam
Pre-cast concrete windowsills
Exterior Paint - choice of one color for house and one color for banding
Interior Paint – Choice of Colors
Inside garage walls finished and painted
Ventilated aluminum soffit and fascia
Dimensional, fungus resistant fiberglass asphalt roof shingles
         Thirty (30) year guarantee - choice of colors
White aluminum framed windows w/screens
Cultured Marble windowsills
R-30 insulation in ceilings
4.2 Ft Foil installed on exterior block walls of living area
R-11 Kraft faced batts installed on exterior frame walls
Central heat & air conditioning
Textured drywall on interior walls
Pex Pipe water lines

### ELECTRICAL FEATURES:

Garage door opener with 2 remotes
200 amp electrical service
Washer & dryer outlets
Pre-wire for 3 phone & 3 TV outlet
Pre-wire for ceiling fans – per blueprint
2 smoke detectors
Door chimes
Wire for Jacuzzi with jets
Lighting  Allowance $ 1,000.00

### KITCHEN FEATURES:

Raised Panel Mica Cabinet Doors – Wood Grain Color
Granite countertops With Stainless Steel undermount sink
Icemaker line
Appliance Package Includes:  $ 2,300.00 Allowance
         Micro over range
         Smooth top range
         25 cf. s/s refrigerator
         Dishwasher – 5 speed

**BATHROOM FEATURES:**

Raised Panel Mica vanity doors & cultured marble tops
1 gal water closets elongated
Anti-scald valve guard on shower faucet
Mirror over vanities
Mirrored medicine cabinets
Jacuzzi tub with jets
Ceramic wall tile in wet area (white or almond) Allowance $2,800.00
Moen single lever faucets

**OTHER ITEMS INCLUDED:**

Carpet & Tile in Kitchen, Baths, Entry and Utility Room Allowance $5,500.00
Ventilated closet shelving
Trussed patio roof w/screen across rear
40-gallon energy efficient water heater
Overhead steel garage door with openers
All exterior doors metal
Floritam Sod & Landscaping per City Code
**Irrigation System**
Custom raised panel bi-fold doors
Colonial base molding
Colonial door casing
Pull down stairway to access attic
Panel shutters –as required per code
Cathedral ceiling where noted
Permit fees
Builders Risk Insurance
Impact fees as of contract signing – to include Utility Impact fee
Well and Septic Equipment
Interest Payments included up to $7500
Pool Package: Spraycrete deck, 28' x 14' pool.   Allowance $27,000.00
        (Allowance does not include Retaining wall , Spa or Heater unless specified in separate
        Pool Contract)

**Culvert determined by City of Cape Coral at time of driveway stakeout (cost of culvert
not included in contract)

Note: There will be a $200.00 change order charge, per change, for any change requiring a
modification to the plans once the full set of plans has been completed.  This charge is
payable at the time change is made

Total Contract Amount: $ 242,000.00

_____  6/25/05          _____  7/30/05
                    Date         R. Fry Builders Inc.         Date

_____
                    Date

## ADDENDUM TO CONTRACT

1. The following conditions that follow are an integral part of this agreement.

2. The Builder shall construct upon the building site a building in accordance with the plans and specifications hereto attached. The Builder shall provide all materials and perform all work of the construction provided for in the plans and specifications in a good and workmanlike manner. The Builder warrants the construction of the building from defects of materials or workmanship for a period of twelve months from the date of the Certificate of Occupancy. All manufacturers' warranties shall continue in force and effect according to their terms.

3. Owner herewith grants possession of the premises to the Builder, said premises to be redelivered to Owner upon completion of the construction and payment by the Owner of all money due Builder under this agreement and by Owner signing Builder's acceptance form. Owner agrees that under no circumstance will he occupy the premises prior to final closing and settlement of all accounts due to the Builder.

4. Construction is to be completed within twelve (12) months of the starting date. Start of construction is defined as the date of which the footings are poured, allowing five(5) working days per calendar week, unless delayed by strike, building materials shortages, newly established requirements of government or agency, Act of God, or other cause beyond the control of the Builder. Closing and settlement of this contract will be within fifteen (15) days of notice by Builder to Owner that the premises are substantially ready for occupancy. Owner shall not unreasonably delay the closing because of minor work that does not interfere with occupancy. Said minor work will be listed on Compliance List, signed by Owner and Builder. This work will be scheduled and completed by Builder as quickly as possible after occupancy.

5. Changes in plans and specifications may be requested by Owner when practical, and shall be stipulated in writing between the parties, together with the cost thereof. For each change made, Builder shall be allowed and additional five (5) working days to complete the construction. Builder may use and install materials other than and different from those specified in the plans, drawings and specifications, if those so specified or incorporated are not readily available when needed, provided all different materials are of equal or better value and utility.

6. It is agreed and understood that if the Owner secures a mortgage loan upon this property in compliance with the contract, Owner agrees and understands that there will be a loan closing with the financial institution or agency of its representative when the mortgage is obtained. Owner acknowledges that this loan closing is separate and apart from the closing of this contract.

7. The contract price in this agreement is based upon a readily accessible clear, level, developed lot, now serviced by public utilities, free of bushes and trees, or a sufficiently high elevation to permit a normal two block foundation. Owner authorizes and agrees to pay charges for any clearing, fill on exterior foundation, and special foundation, and temporary utilities, if needed, including but not limited to any fill requirements necessitated to meet the provisions of Federal Flood Insurance Laws or any other applicable laws or regulations. It is the Owner's responsibility to notify the Builder of unusual soil connotations and to provide test borings, if needed. Expense of removal of excess dirt or vegetation, to provide proper grade or any expenses caused by rock or other adverse sub-soil conditions will be borne by Owner.

8. Builder's Insurance prohibits persons not employed by the contractor from being on the job site during working hours. Owner recognizing this, agrees to limit his visits to the property to times other than scheduled working hours. Owner agrees that his contact with the Builder and the Builder's workmen or sub-contractors will be solely through the Builder. If Owner and/or Owner's dependents, guests, companions or invitee sustain any personal injury or property damage while on the property, prior to completion with or without the Builder's consent, Owner shall indemnify, defend and save harmless the Builder from any claims or causes of action against the Builder from any claims, loss damage or expense arising from such personal injury or property damage, and Owner, for himself and his heirs, hereby waive and relinquish any and all claims arising from personal injury or property damage sustained upon the property.

9. Pricing in the Contract is based upon present construction costs and are subject to change. In the event that the Builder shall not be in the position to commence construction within 30 days as a result of a delay in obtaining building permits or necessary government agency approvals or unusual delays in Owner obtaining mortgage financing, the construction price shall be subject to change. Any adjustment in price will be documented by Builder to Owner with evidence of the need for adjustment, if said adjustment results in an increase of more than 10% of the contract total. Owner has the right to cancel the contract and receive the return of his deposit with out further liability. Notice of this election must be given to Builder with in ten (10) working days of the receipt of adjustment notice by Owner. All fees, costs of material and labor charges related to the specifications required by the new State of Florida Hurricane Code will be passed on to the buyer at time of enforcement. All City and/or County Impact Fee increases will be passed onto buyer at time of enforcement.

10. Improvement allowances are Builder's best estimates at the time of contract signing. Actual site improvements may cost more or less. Owner shall pay all bills in excess over the estimated homesite improvement cost as reflected on the face of the contract of Builder shall refund over estimate at closing by crediting any lesser sum utilized for allowances. Any excess payment owed to the Builder shall include the Builder's standard added cost of administration and profit.

11. This agreement shall be binding upon heirs, executors, administrators, successors, and assigns of Owner and Builder.

12. Builder is not responsible for, expansion cracks, surface blemishes, or discoloration in concrete. The conditions are caused by the environment which is beyond a mason's control. Weather, ready mix concrete, drying time, and contraction all play a major part in the final appearance of concrete. Due to these conditions, the final concrete finish will not be covered under R. Fry Builders, Inc. warranty.

13. The Builder will connect to public water and/or sewer lines a distance of 50 feet. Cost of lines required over 50 feet will be borne by Owner.

14. Expense of all electrical service which may be required to be run across the building necessitated by the power company, pole locations and regulations, or underground electric and/or telephone service when required will be borne by the Owner.

15. If the Owner is to secure a mortgage loan, this Construction Agreement is contingent upon the Owner obtaining a mortgage commitment with a payment draw schedule mutually agreeable to the lending institution and the Builder. In the event that such a commitment cannot be concluded by the Owner, Builder shall have sufficient time to exercise best efforts in obtaining said mortgage loan on behalf of the Owner. If the Owner and the Builder are unsuccessful, this contract shall, at the option of the Owner, become null and void, and all deposits shall be refunded to the Owner by the Builder, less out of pocket expenses incurred by the Builder.

16. It is understood that the Builder is to retain exclusive possession of the entire premises until completion of the construction thereon, and occupancy of any part thereof by the Owner prior to such completion shall be deemed to constitute an acknowledgment on the Owner's part of complete performance by the Builder of the construction under this Contract and all balances due under this contract shall become immediately due and payable.

17. It is understood and agreed that the Owners will not assign this contract without the prior written consent of the contractor.

18. The Builder is not responsible for any water damage created by a lawn sprinkler system.

BUYER(S):

BUILDER:

_____

_____

_____

Date: _____

# EXHIBIT C

140

# CITY OF CAPE CORAL
------ CERTIFICATE OF OCCUPANCY ------
# PERMANENT

### ISSUE DATE:        5/01/07

LOCATION: 213 NW 1ST ST

STRAP #: 11-44-23-C3-02585-0750          PERMIT #: 05-00031782

OWNER INFORMATION:                    OCCUPANCY TYPE      RESIDENTIAL 1 & 2 FA
    BRUNO ELLEN
    3447 25TH ST                      CONST. TYPE         TYPE VI UNSPRK/UNPRO
    SAN FRANCISCO, CA 94110-3822
                                      ALLOWABLE OCC CONTENT:

CONTRACTOR INFORMATION:               ALLOWABLE FLOOR LOAD :
    FRY RANDY A
    R FRY BUILDERS INC                GAC UNIT            :  37-0
    923 DEL PRADO BL SOUTH #203
    CAPE CORAL, FL 33990-3628         PLAT BOOK PAGE#  :  04
    (941)772-2666                     # OF PLATTED LOTS:              2.0000
    COMPETENCY #:                     ZONING              :  R1B
    REG OR STATE LIC: CBC023132
                                      TYPE OF WORK     :  NEW CONSTRUCTION

                                      NUMBER OF STORIES   :         1.00

                                      FLOOD ELEVATION     :

                                      FLOOD CODE          :              B

                                      NUMBER OF BEDROOMS  :         4.00

                                      NUMBER OF BATHROOMS :         3.00

                                      TOTAL DWELLING UNITS :        1.00

                                      TOTAL BLDG SIZE     :      3069.00

SAID PREMISES HEREBY ARE FOUND TO COMPLY WITH THE BUILDING
ORDINANCES AND ZONING OF SAID CITY.   THIS FORM IS A
"CERTIFICATE OF OCCUPANCY" WHEN VALIDATED.


DATE  5/1/07

                        DEPT. OF COMMUNITY DEVELOPMENT

        VOID UNLESS SIGNED BY BUILDING OFFICIAL

# EXHIBIT D

INSTR # 2008000162767, Doc Type D, Pages 2, Recorded 06/18/2008 at 10:14 AM,
Charlie Green, Lee County Clerk of Circuit Court, Deed Doc. D $1246.00 Rec. Fee
$18.50 Deputy Clerk LAMBROSIO

Prepared by:
Americhoice Title
Americhoice Title, LLC
16921 Gunn Highway
Odessa, Florida 33556

File Number: G07-0031

# General Warranty Deed

Made this June 12, 2008 A.D. By **Ellen Bruno, a single person,** whose address is: 3447 25th Street, San Francisco, CA 94110, hereinafter called the grantor, to Howell Q. Heath, Jr., whose post office address is: 2432 Westland Way, Acworth, GA 30102, hereinafter called the grantee:

(Whenever used herein the term "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations)

**Witnesseth,** that the grantor, for and in consideration of the sum of Ten Dollars, ($10.00) and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the grantee, all that certain land situate in Lee County, Florida, viz:

Lots 75 and 76, Block 2585, Unit 37, OF CAPE CORAL SUBDIVISION, as per plat thereof, recorded in Plat Book 17, Pages 15 to 29, inclusive, of the Public Records of Lee County, Florida

Parcel ID Number: 11-44-23-C3-02585.0750

**Together** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**To Have and to Hold,** the same in fee simple forever.

**And** the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances except taxes accruing subsequent to December 31, 2007.

DEED Individual Warranty Deed - Legal on Face
Closers' Choice

Prepared by:
Americhoice Title
Americhoice Title, LLC
16921 Gunn Highway
Odessa, Florida 33556

File Number: G07-0031

**In Witness Whereof,** the said grantor has signed and sealed these presents the day and year first above written.

*Signed, sealed and delivered in our presence:*

Witness Printed Name _Anita E Bowen_

_____ (Seal)
**Ellen Bruno**
Address: 3447 25th Street, San Francisco, CA 94110

Witness Printed Name _Victor A. IBARRA_

_____ (Seal)
Address:

3288 21ST ST.
SF. CA 94110

State of California
County of _San Francisco_

The foregoing instrument was acknowledged before me this _6_ th day of June, 2008, by Ellen Bruno, a single person, who is/are personally known to me or who has produced _DRIVER LICENSE_ as identification.

Notary Public
Print Name: _Victor A. IBARRA_

My Commission Expires: _April 17, 2011_

VICTOR ANDRES IBARRA
Commission # 1739629
Notary Public - California
San Francisco County
My Comm. Expires Apr 17, 2011

DEED Individual Warranty Deed - Legal on Face
Closers' Choice