# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO.:  2047 |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *Pate v. American International Specialty Lines Insurance Company, et al.* (09-7791) | MAGISTRATE JUDGE WILKINSON |

**PLAINTIFF ROBERT C. PATE'S AND THE PLAINTIFFS' STEERING COMMITTEE'S STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING INSURANCE <u>COVERAGE TRIGGER THEORY</u>**

| <u>MATERIAL FACT</u> | <u>EVIDENCE IN SUPPORT</u> |
|---|---|
| 1.  WCI Communities, Inc. builds homes and residential communities in states such as Florida, New York, New Jersey, Virginia, Maryland, and Connecticut. | 1.  Affidavit of Vivien Hastings ("Hastings Aff.") at ¶ 3. |
| 2. Between 2006 and 2009, WCI received complaints of property damage and/or bodily injury allegedly arising from Chinese Drywall installed in homes that WCI developed. | 2. Hastings Aff. at ¶ 4; Notice Letters, attached to Affidavit of Sheila Leith ("Leith Aff.") as Exs. Q, R. |
| 3.  The claimants allege property damage in the form of:<br><br>- increased rates of corrosion of soft metal materials in the houses, including corrosion of air conditioning coils, refrigerator tubing, electrical wires, and television connections;<br><br>- plumbing system oxidation and pitting;<br><br>- electrical system faults, including circuit breakers that | 3.  Exs. Q, R to Leith Aff. |

| | |
|---|---|
| frequently need resetting - and lights that flicker - without any apparent cause;<br><br>- appliance failures; and<br><br>- tarnishing of silver and soft metal, including de-silvered mirrors. | |
| 4. The property damage that Chinese Drywall causes is progressive and continuous in nature. | 4. *See in re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, Findings of Fact & Conclusions of Law (E.D. La. Apr. 8, 2010) [Doc. No. 2380] at pp. 12-14 (finding that Chinese Drywall releases sulfur gases that react with metals, and sulfide deposits form on the metals' surfaces, which then cause electrical and mechanical devices to fail); [Doc. No. 2713] at pp. 10-11 (noting repeat deterioration of HVAC coil and refrigerator after repairs, and resulting damage to other areas of home). |
| 5. Because of – among other reasons – the overwhelming nature of the claims against it, WCI and a number of its subsidiaries ultimately filed for bankruptcy (collectively, the "WCI Debtors"). | 5. Hastings Aff. at ¶ 2. |
| 6. The plan of reorganization, approved by the United States Bankruptcy Court, created a Chinese Drywall Trust (the "Trust"). | 6. Second Amended Plan of Reorganization, Article V, § 5.1(e), attached as Ex. J to Leith Aff.; Order Confirming Plan, attached to Leith Aff. as Ex. K. |
| 7. The plan imposed upon the Trust the WCI Debtors' liability or losses for claims asserted against the WCI Debtors by an owner or occupant of, or person otherwise exposed to, a home built by the WCI Debtors for Chinese Drywall related damages. | 7. Second Amended Plan of Reorganization, Article V, § 5.1(e), attached as Ex. J to Leith Aff.; Order Confirming Plan, attached to Leith Aff. as Ex. K. |
| 8. The WCI Debtors transferred to the Trust their right, title, and interest in the "Insurance Coverage Actions" and the "Chinese Drywall Actions" and the | 8. Ex. J to Leith Aff., Second Amended Plan of Reorganization at Article XI, § 11.2. |

| | |
|---|---|
| proceeds thereof, and any right, title or interest in pursuing and receiving any and all "Insurance Recoveries. | |
| 9. The Plan also established a Chinese Drywall Trustee ("Trustee") – Judge Robert C. Pate – to prosecute the Insurance Coverage Actions and Chinese Drywall Actions. | 9. Ex. J to Leith Aff., Second Amended Plan of Reorganization at Article XI, § 11.1(b). |
| 10. The plan defines "Insurance Coverage Actions" as "any rights to indemnification, reimbursement, contribution or other payment under any of the [WCI] Debtors' existing insurance policies, including the [WCI] Debtors' director and officer liability insurance policies, as of the Effective Date that may provide coverage with respect to Allowed Chinese Drywall Claims." | 10. Ex. J to Leith Aff., Ex. A to Plan, # 71. |
| 11. The plan defines "Chinese Drywall Actions" as "the Causes of Action that the [WCI] Debtors may have against any subcontractor or other Person who installed Chinese drywall in a home built or sold by a [WCI] Debtor, directly or indirectly, any insurer of any such subcontractor or other Person, any retailer, wholesaler, distributor, manufacturer or provider of Chinese drywall that was installed in a home built or sold by a [WCI] Debtor, directly or indirectly, and/or any insurer of any such retailer, wholesaler, distributor, manufacturer or provider." | 11. Ex. J to Leith Aff., Ex. A to Plan, # 22. |
| 12. The plan defines "Insurance Recovery," in pertinent part, as "(a) the right to pursue and receive the benefits and proceeds of any insurance policy issued to, owned by, or otherwise providing coverage to any [WCI] Debtor, including any insurance policy owned by any third party on which any [WCI] Debtor is named as an additional insured, with respect to Chinese Drywall Claims; (b) the right to pursue and receive recovery from or as a result of any Insurance Coverage | 12. Ex. J to Leith Aff., Ex. A to Plan, # 72. |

| | |
|---|---|
| Action; ... [and] (e) the right to pursue and receive any other recovery from an insurance company, in its capacity as such, with respect to Chinese Drywall Claims." | |
| 13. In his complaint, Pate seeks, inter alia, a declaratory judgment that the defendant liability insurance companies are obligated to pay the Trusts' liabilities for losses arising from claims against WCI for its development of homes allegedly containing Chinese Drywall. | 13. *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, First Amended Complaint (E.D. La. Mar. 15, 2010) [Doc. No. 1732] at ¶¶ 56-60. |
| 14. This motion concerns the following liability insurance policies that the Defendant liability insurance companies sold to WCI:<br><br>| Insurance Company | Policy Number | Policy Type | Policy Period |<br>|---|---|---|---|<br>| Chartis | 7412158 | Commercial umbrella liability | 5/1/06 – 5/1/07 |<br>| | 7412275 | Commercial umbrella liability | 5/1/07 – 5/1/08 |<br>| | BE 4943750 | Commercial umbrella liability | 5/1/08 – 12/1/08 |<br>| Illinois Union | XOO G22081706 | Commercial umbrella liability | 3/1/05 – 5/1/06 |<br>| Lexington | 0355453 | Excess liability | 5/1/06 – 5/1/07 |<br>| | 1011060 | Excess liability | 5/1/07 – 5/1/08 |<br>| | 1053988 | Excess liability | 5/1/08 – 12/1/08 |<br>| Steadfast | AEC 3836443 03 | Excess liability | 3/31/05 – 5/1/06 |<br>| | AEC 3836443 04 | Excess liability | 5/1/06 – 5/1/07 | | 14. Exs. A-I to Leith Aff. |
| 15. Chartis policy no. 7412158 contains an insuring agreement that states, in part: | 15. Chartis policy no. 7412158, Section I(A), attached to Leith Aff. as Ex. A. |

| | |
|---|---|
| We will pay on behalf of the **Insured** those sums in excess of the **Self Insured Retention** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**, provided that:<br><br>1.    the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**…. | |
| 16.  Chartis policy no. 7412158 defines "occurrence," in pertinent part, as:<br><br>as respects **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**. | 16.  Chartis policy no. 7412158, Section VI(N)(2), attached to Leith Aff. as Ex. A. |
| 17.  Chartis policy no. 7412158 defines "property damage" as:<br><br>1.    physical Injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the | 17.  Chartis policy no. 7412158, Section VI(T), attached to Leith Aff. as Ex. A. |

| | |
|---|---|
| physical injury that caused it; or<br><br>2. loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it. | |
| 18. The remaining Chartis liability insurance policies – nos. 7412275 and BE 4943750 – include an insuring agreement that states, in part:<br><br>A. Coverage A: Excess Liability Over Insured's Self-Insured Retention.<br><br>We will pay on behalf of the **Insured** those sums in excess of the **Self-Insured Retention** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**<br><br>Coverage A will be provided according to the terms, definitions, conditions and exclusions of this policy.<br><br>B. Coverage B: **Excess Liability Over Scheduled Underlying Insurance and any Other Insurance**<br><br>We will also pay on behalf of the **Insured** those sums in excess of the total applicable limits of **Scheduled Underlying** | 18. Chartis policy no. 7412275, Section I, attached to Leith Aff. as Ex. B; Chartis policy no. BE 4943750, Section I, attached to Leith Aff. as Ex. C. |

NYDOCS1-962565.2

18

| | |
|---|---|
| **Insurance** and any **Other Insurance** that the **Insured** becomes legally obligated to pay as damages provided the damages would be covered by **Scheduled Underlying Insurance** and any **Other Insurance**, except for exhaustion of the total applicable limits of **Scheduled Underlying Insurance** and any **Other Insurance** by the payment of **Loss**.<br><br>Coverage B will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  If any provisions of **Scheduled Underlying Insurance** conflict with any provisions of this policy, the provisions of this policy will apply.<br><br>C. This policy applies, only if:<br><br>    1.a. the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**. | |
| 19.  Policy nos. 7412275 and BE4943750 define "occurrence" as:<br><br>1. As respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **Bodily Injury** or | 19.  Ex. B, Section VI(Q); Ex. C, Section VI(Q). |

| | |
|---|---|
| **Property Damage** neither expected nor intended from the standpoint of any **Insured**.<br><br>In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be one **Occurrence** and shall be deemed to occur only when such damage first commences…. | |
| 20.  Policy nos. 7412275 and BE4943750 define "property damage" as:<br><br>1.   physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it; or<br><br>2.   loss of use of tangible property that is not physically injured.  All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it…. | 20.  Ex. B, Section VI(W); Ex. C, Section VI(W). |
| 21.  In policy no. XOOG22081706, Illinois Union agreed to:<br><br>pay on behalf of the INSURED all sums that the INSURED shall become legally obligated to pay as damages because of BODILY INJURY, PERSONAL AND ADVERTISING INJURY or PROPERTY DAMAGE, to which this policy applies that takes place during the POLICY PERIOD.  The OCCURRENCE must take place in the COVERAGE TERRITORY. | 21. Illinois Union policy no. XOO G22081706, Section I(A), attached to Leith Aff. as Ex. D. |
| 22.  Illinois Union policy no. XOO G22081706 defines "occurrence" as: | 22.  Illinois Union policy no. XOO G22081706, Endorsement 8, attached to |

| | |
|---|---|
| an accident including continuous or repeated exposure to substantially the same general harmful conditions.<br><br>In the event of continuous, progressive, or deteriorating damage or injury which exists over any length of time, such damage or injury shall be deemed to be one Occurrence and shall be deemed to occur only when such damage or injury first commences. | Leith Aff. as Ex. D. |
| 23.  It defines "property damage" as:<br><br>1. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or<br><br>2. Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the OCCURRENCE that caused it. | 23.  Illinois Union policy no. XOO G22081706, Section III(T), attached to Leith Aff. as Ex. D. |
| 24.  The Lexington policies' insuring agreements state:<br><br>A. We will pay on behalf of the **Insured** that portion of the **loss** which the **Insured** will become legally obligated to pay as compensatory damages (excluding all fines, penalties, punitive or exemplary damages) by reason of exhaustion of all applicable underlying limits, whether collectible or not, as specified in Section II of the Declarations, subject to:<br><br>    1.    the terms and conditions | 24.  Lexington policy no. 0355453, Insuring Agreements, Section I, attached to Leith Aff. as Ex. E; Lexington policy no. 1011060, Insuring Agreements, Section I, attached to Leith Aff. as Ex. F; Lexington policy no. 1053988, Insuring Agreements, Section I, attached to Leith Aff. as Ex. G. |

| | |
|---|---|
|     of the **underlying policy** listed in Section IIA of the Declarations, AND<br><br>  2.    our Limit of Liability as stated in Section IC of the Declarations.<br><br>B.    Except as regards: (1) the premium; (2) the obligation to investigate and defend, including costs and expenses thereto; (3) the limit of liability; (4) the renewal agreement, if any; (5) the notice of **occurrence**, **claim**, or suit provision; (6) any other provision therein inconsistent with this policy; the provisions of the **underlying policy** are hereby incorporated as part of this policy. | |
| 25. The Lexington policies further state:<br><br>    <u>Following Form</u> – It is agreed that this policy, except as herein stated, is subject to all conditions, agreements and limitations of and shall follow the **underlying policy/ies** in all respects, including changes by endorsement, and the **Insured** shall furnish the Company with copies of such changes. It is further agreed, should any alteration be made in the premium for the policy/ies of the Primary Insurers during the period of this policy, then the premium hereon, other than the minimum premiums as stated in the Declarations, shall be adjusted accordingly. | 25. Ex. E, Conditions, Section 1; Ex. F, Conditions, Section 1; Ex. G, Conditions, Section 1. |
| 26. The policies also contain the following pertinent definitions:<br><br>    **Loss** – The word **loss** means the | 26. Ex. E, Definitions 1, 3, 7; Ex. F, Definitions 1, 3, 7; Ex. G, Definitions 1, 3, 7. |

| | |
|---|---|
| sum paid in settlement of losses for which the **Insured** is liable after making deductions for all recoveries, salvages and other insurance (other than recoveries under the policy of the **underlying insurance**), whether recoverable or not, and shall include all expenses and costs.<br><br>**Occurrence** – The word **occurrence** means an event, including continuous or repeated exposures to conditions, neither expected or intended from the standpoint of the **Insured**. All such exposure to substantially the same general conditions shall be deemed one **occurrence**.<br><br>**Ultimate Net Loss** – The term **ultimate net loss** means the total sum which the **Insured** or any company as its insurer, or both, become legally obligated to pay by reason of **personal injury**, **property damage** or **advertising injury claims** covered by this policy, either through adjudication or compromise (with our written consent), and shall also include hospital, medical and funeral charges and all sums paid or payable as salaries, wages, compensation, fees, charges, interest, or expenses for doctors, nurses, and investigators and other persons, and for settlement, adjustment, investigation and defense of claims but excluding the **Insured's** salaries or the salaries of any of the underlying insurer's permanent employees. | |
| 27.  The Steadfast liability insurance policies include the following insuring | 27.  Steadfast policy no. AEC 3836443 03, Insuring Agreements, Section I, attached |

| | |
|---|---|
| agreements:<br><br>A.  We will pay on behalf of the insured the sums in excess of the total Underlying Limits of Insurance shown in Item **6.B.** of the Declarations that the insured becomes legally obligated to pay as damages.<br><br>B.  This insurance applies only to damages covered by the Controlling Underlying Policy as shown in Item **6.A.** of the Declarations.  Except as otherwise provided by this policy, the coverage follows the definitions, terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy. | to Leith Aff. as Ex. H; Steadfast policy no. AEC 3836443 04, Insuring Agreements, Section I, attached to Leith Aff. as Ex. I. |
| 28.  Steadfast policy no. AEC3836443-03 contains the same definitions of "occurrence" and "property damage" as the Illinois Union liability insurance policy. | 28.  Ex. H, Insuring Agreements, Section I(B). |
| 29.  Steadfast policy no. AEC 3836443 04 contains the same definitions of "occurrence" and "property damage" as Chartis policy no. 7412158. | 29.  Ex. I, Insuring Agreements, Section I(B). |
| 30.  Chartis maintains its principal place of business in New York. | 30.  Ex. 3. |
| 31.  Defendant Lexington maintains a principal place of business in Massachusetts. | 31.  Ex. 3 |
| 32.  Each of the Defendants sells insurance in New York and collects premiums from New York residents. | 32.  Ex. 3. |
| 33.  Chartis makes virtually all its significant coverage determinations and payments – under the insurance policies, other financial products, and services it | 33.  Ex. P to Leith Aff. |

| | |
|---|---|
| sells – from New York. | |
| 34.  The Chartis insurance policies were negotiated, at least in part, in New York. | 34.  Ex. P to Leith Aff. |
| 35.  WCI provided notice under the Chartis policies to Chartis' New York office. | 35.  Notice Letter, attached to Leith Aff. as Ex. Q. |
| 36.  Steadfast countersigned policy nos. AEC 3836443 03 and AEC 3836443 04, and their corresponding binders, in New York. | 36.  Ex. L to Leith Aff. (insurance binder signed by Rob Kenyon, team leader for underwriting of Zurich North America Specialties Excess Casualty NYC); Ex. H to Leith Aff. and Ex. 4 attached hereto (policy countersigned by Doreen Miller of Zurich North America's New York office); Ex. M to Leith Aff. (binder signed by Rob Kenyon, regional vice president of Zurich North America Specialties Excess Casualty NYC); Exs. I, M to Leith Aff. (policy countersigned by Robert Kenyon of Zurich Excess Casualty New York). |
| 37.  Chartis created and signed the binder for policy no. 7412158, and countersigned policy no. 7412275, in New York. | 37.  Ex. O to Leith Aff. (binder signed by Jonathan Luca of Chartis in New York) and Ex. 6; Ex. B to Leith Aff. and Ex. 5 attached hereto (policy countersigned by Timothy J. McAuliffe, an executive of Chartis in New York). |
| 38.  Chartis created and signed the binder for policy no. BE4943750 in New York, and sent the binder to WCI's broker, Lockton, Inc. ("Lockton") in New York. | 38.  Ex. P to Leith Aff. (e-mail correspondence transmitting binder from Elizabeth K. Johnson of AIG Excess Casualty to Timothy J. Harper of Lockton Companies, LLC in New York). |
| 39.  Chartis also countersigned policy no. BE4943750 in New York. | 39.  Ex. C to Leith Aff. and Ex. 5 attached hereto (policy countersigned by Timothy J. McAuliffe, an executive of Chartis in New York). |
| 40.  Lexington delivered the binder for policy no. 1053988 to Lockton in New York. | 40.  Exs. N, P to Leith Aff. (binder addressed to Tim Harper of Lockton in New York). |
| 41.  The Defendants have been named | 41.  *Amato v. Liberty Mut. Ins. Co.*, C.A. |

| | |
|---|---|
| defendants in other MDL cases. | No. 10-932 (naming American International Specialty Lines, Lexington, and Steadfast as defendants); *Hernandez v. AAA Insurance*, C.A. No. 10-3070 (naming Lexington as a defendant). |
| 42.  Each of the Defendants sells insurance in Louisiana and collects premiums from Louisiana residents. | 42.  Ex. 3. |
| 43.  WCI provided notice under the Lexington policies to Lexington's Massachusetts office. | 43.  Notice Letter, attached to Leith Aff. as Ex. R. |
| 44.  Lexington countersigned each of the Lexington policies in Massachusetts, Lexington maintains its principal place of business in Massachusetts, and provides that service of process may be made upon its legal counsel in Massachusetts. | 44.  Ex. E to Leith Aff. and Ex. 5 attached hereto (policy countersigned by Shaun E. Kelly, Chief Operating Officer of Lexington, which is located in Boston, Massachusetts); Ex. F to Leith Aff. and Ex. 5 attached hereto (same); Ex. G to Leith Aff. and Ex. 5 attached hereto (same). |
| 45.  The Defendants all sell insurance in Massachusetts and collect premiums from Massachusetts residents. | 45.  Ex. 3. |
| 46.  The parties' place of domicile, habitual residence, or business is as follows:<br><br>PARTY          DOMICILE, RESIDENCE, OR BUSINESS<br>Pate               Resides in Corpus Christi, Texas<br><br>Chartis            Illinois corporation with its principal place of business in New York<br><br>Illinois Union    Illinois corporation with its principal place of business in Pennsylvania<br><br>Lexington       Delaware corporation with its principal place of business in Massachusetts | 46.  Ex. 3. |

| | | |
|---|---|---|
| Steadfast | Delaware corporation with its principal place of business in Illinois | |
| 47.  The damage caused by Chinese Drywall in the claimants' homes did not result in a one-time instance of property damage, but rather, property damage started immediately and worsened from that point on. | 47.  *See in re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, Findings of Fact & Conclusions of Law (E.D. La. Apr. 8, 2010) [Doc. No. 2380] at pp. 12-14 and [Doc. No. 2713] at pp. 10-11 (describing Chinese Drywall's release of sulfur compounds and the resulting progressive damage). | |

February 24, 2011

Respectfully submitted,

/s/ Russ M. Herman
Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
P:  504-581-4892
F:  504-561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer (On the Brief)
Matthew C. Gaughan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
P:  215-592-1500
F:  215-592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
P: 504-524-3300
F: 504-524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
P: 985-536-1186
F: 985-536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler (On the Brief)
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
P: 214-521-3605
F: 214-520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
P: 305-476-7400
F: 305-476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
P: 850-435-7000
F: 850-435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
P: 504-581-1750
F: 504-529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-2800
P: 504-522-2304
F: 504-528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
P: 239-390-1000
F: 239-390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
P: 239-433-6880
F: 239-433-6836
sweinstein@forthepeople.com

NYDOCS1-962565.2

James Robert Reeves  
Lumpkin & Reeves  
160 Main Street  
Biloxi, MS 39530  
P:  228-374-5151  
F:  228-374-6630  
jrr@lumpkinreeves.com  

Richard J. Serpe, Esquire  
Law Offices of Richard J. Serpe  
Crown Center, Ste. 310  
580 East Main Street  
Norfolk, VA 23510-2322  
P:  757-233-0009  
F:  757-233-0455  
rserpe@serpefirm.com  

Christopher Seeger  
Seeger Weiss, LLP  
One William Street  
New York, NY 10004  
P:  212-584-0700  
F:  212-584-0799  
cseeger@seegerweiss.com  

Daniel K. Bryson  
Lewis & Roberts  
3700 Glenwood Avenue, Suite 410  
Raleigh, NC 27612  
P:  919-981-0191  
F:  919-981-0431  
dkb@lewis-roberts.com  

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Jeremy W. Alters  
Alters Law Firm, P.A.  
4141 N.E. 2nd Avenue, Suite 201  
Miami, FL 33137  
P:  305-571-8550  
F:  305-571-8559  
jeremy@alterslaw.com  

Andrew A. Lemmon  
Lemmon Law Firm, LLC  
P.O. Box 904  
15058 River Road  
Hahnville, LA 70057  
P:  985-783-6789  
F:  985-783-1333  
andrew@lemmonlawfirm.com  

Richard S. Lewis  
Hausfeld LLP  
1700 K Street, N.W, Suite 650  
Washington, DC 20006  
P:  202-540-7200  
F:  202-540-7201  
rlewis@hausfeldllp.com  

**INDIVIDUAL COUNSEL FOR PLAINTIFF ROBERT C. PATE,  
TRUSTEE FOR THE CHINESE DRYWALL TRUST**

Robert M. Horkovich (On the Brief)  
Anna M. Piazza (On the Brief)  
Anderson Kill & Olick, P.C.  
1251 Avenue of the Americas  
New York, New York 10020  
P:  212-278-1000  
F:  212-278-1733  

Burton LeBlanc  
Baron & Budd, P.C.  
9015 Bluebonnet Blvd.  
Baton Rouge, LA 70810  
P:  225-927-5441  
F:  225-927-5449  
bleblanc@baronbudd.com  

NYDOCS1-962565.2

rhorkovich@andersonkill.com
apiazza@andersonkill.com

## **CERTIFICATE OF SERVICE**

       I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all counsel of record by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 24th day of February, 2011.

                                                        /s/ Russ M. Herman
                                                        Russ M. Herman