**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED              MDL NO. 2047
DRYWALL PRODUCTS LIABILITY               SECTION: L
LITIGATION

THIS DOCUMENT RELATES TO                 JUDGE FALLON
                                         MAG. JUDGE WILKINSON

*Silva, et al. v. Interior Exterior*
*Building Supply, LP et al.*, Civ. Action
No. 09-08030 (E.D.La.)

*Silva et al v. Arch Insurance Company,*
 *et al.*, Civ. Action No. 09-08034 (E.D.La.)


**MEMORANDUM IN SUPPORT OF PLAINTIFFS' SUBSTITUTED**
**MOTION FOR CERTIFICATION OF A LOUISIANA HOMEOWNER CLASS FOR**
**DAMAGES AND DECLARATORY RELIEF**

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 3

III.  ARGUMENT .................................................................................................................. 6

  A.   Standard of Review .................................................................................................. 6

  B.   The Class Meets the Rule 23(a)(1)-(4) Criteria ..................................................... 7

    1.   Numerosity – Rule 23(a)(1) .............................................................................. 7

    2.   Commonality – Rule 23(a)(2) ........................................................................... 9

      a.   The Damages Claims ................................................................................. 9

      b.   The Declaratory Judgment Claim ........................................................... 10

    3.   Typicality – Rule 23(a)(3) ............................................................................... 10

      a.   The Damages Claims ............................................................................... 11

      b.   The Declaratory Judgment Claim ........................................................... 11

    4.   Adequacy of Representation – Rule 23(a)(4) .................................................. 12

      a.   Ascertainability ....................................................................................... 13

  C.   The Class is Appropriate for Certification Under Rule 23(b)(3) for Damages Claims
       and 23(b)(2) for Declaratory Relief Claim ........................................................... 14

    1.   The Damages Class Should be Certified Under Rule 23(b)(3) ....................... 14

      a.   Defendant Interior Exterior's Course of Conduct is a Common Liability Issue ....... 15

      b.   Determination of Class-Wide Damages is a Predominant Issue ............. 16

        i.   Formulaic Method to Determine Class-Wide Damages ......................... 18

      c.   Louisiana Law Applies to All Claims in this Case ................................... 20

      d.   Class Treatment of the Damages Claims Meets the Rule 23(b)(3) Superiority
           Requirement ............................................................................................. 22

    2.   The Declaratory Relief Claim Should be Certified Under Rule 23(b)(2) .................... 23

IV.  CONCLUSION ............................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adkinson v. Int'l Harvester Co.*,
  975 F.2d 208 (5th Cir. 1992) .......................................................................23

*Allapattah Servs. v. Exxon Corp.*,
  333 F.3d 1248 (11th Cir. 2003) .................................................................17

*Berger v. Compaq Computer Corp.*,
  257 F.3d 475 (5th Cir. 2001) ..................................................................6, 12

*Boos v. AT & T, Inc.*,
  252 F.R.D. 319 (W.D. Tex. 2008) .............................................................11

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) ...................................................................6, 14

*DeBremaecker v. Short*,
  433 F.2d 733 (5th Cir. 1970) ....................................................................13

*Hilao v. Estate of Marcos*,
  103 F.3d 767 (9th Cir. 1996) .....................................................................20

*In re A.H. Robins Co.*,
  880 F.2d 709 (4th Cir. 1989) ....................................................................13

*In re Chevron U.S.A., Inc.*,
  109 F.3d 1016 (5th Cir. 1997) ..................................................................19

*In re NASDAQ Market-Makers Antitrust Litigation*,
  169 F.R.D. at 525 (S.D.N.Y. 1996) ..........................................................17

*In re Terazosin Hydrochloride*,
  220 F.R.D. 672 (S.D. Fla. 2004) ..........................................................17, 18

*James v. City of Dallas*,
  254 F.3d 551 (5th Cir. 2001) ...................................................................9, 10

*John v. Nat'l Security Fire & Cas. Co.*,
  501 F.3d 443 (5th Cir. 2007) ....................................................................13

*Jones v. Am. Gen. Life & Accident Ins. Co.*,
  213 F.R.D. 689 (S.D. Ga. 2002) .......................................................9, 11, 23

*Leszczynski v. Allianz Ins.*,
    176 F.R.D. 659 (S.D. Fla. 1997)................................................................9, 11, 23

*McQuilken v. A&R Development*,
    576 F.Supp. 1023 (E.D. Pa. 1983) ...........................................................16, 20, 21

*McWaters v. FEMA*,
    237 F.R.D. 155 (E.D. La. 2006).......................................................................23

*Mims v. Stewart Title Guar. Co.*,
    590 F.3d 298 (5th Cir. 2009) ..........................................................................22

*Monumental Life Ins. Co. v. Nat'l Life*,
    365 F.3d 408 (5th Cir. 2004) ......................................................................16, 20

*Mullen v. Treasure Chest Casino LLC*,
    186 F.3d 620 (5th Cir. 1999) ..................................................................... passim

*Payton et al. v. Knauf Gips KG, et al.*,
    No. 09-7628 (*Payton* Docket No. 1 at Schedule 1 at 34-44 (Distributor/Supplier List) ..........7

*Payton* Intervention, *In re Chinese Manufactured Drywall Products Liability Litigation*,
    MDL No. 2047, Docket No. 4346-2, 4346-3 at 2-42 (List of Intervening Plaintiffs))..............7

*Pederson v. La. State Univ.*,
    213 F.3d 858 (5th Cir. 2000) ...........................................................................7

*Sher v. Raytheon Co.*,
    261 F.R.D. 651, 2009 WL 31931.....................................................................19

*Silva et al v. Interior Exterior Building Supply, LP*,
    No. 09-cv-09030 ("Silva Damages Complaint") (E.D.La Dec. 31, 2009) ..............................4

*Simer v. Rios*,
    661 F.2d 655 (7th Cir. 1981) ..........................................................................13

*Turner v. Murphy*,
    No. 05-4206, Order and Reasons (March 3,2006), slip op. at 3 ..............................18

*Turner v. Murphy*
    No. 05-4206, Order and Reasons at 13-14 (January 30, 2006) ..............................21

*Turner v. Murphy Oil USA Inc.*,
    234 F.R.D. 597 (E.D. La. 2006).................................................................. passim

*Vizena v. Union Pac. R.R. Co.*,
    360 F.3d 496 (5th Cir. 2004) ..........................................................................6,7

*Watson v. Shell Oil Co.,*
    979 F.2d 1014 (5th Cir. 1992) ........................................................................................15, 19

*Zeidman v. J. Ray McDermott & Co.,*
    651 F.2d 1030 (5th Cir. 1981) ............................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(b)(2)........................................................................................2, 6, 14, 23

Fed. R. Civ. P. 23(b)(3)......................................................................................... passim

Fed. R. Civ. P. 23(g) ................................................................................................12

Fed. R. Civ. P. 30(b)(6)................................................................................................8

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED                MDL NO. 2047
DRYWALL PRODUCTS LIABILITY                  SECTION: L
LITIGATION

THIS DOCUMENT RELATES TO                    JUDGE FALLON
                                            MAG. JUDGE WILKINSON

*Silva, et al. v. Interior Exterior*
*Building Supply, LP et al.*, Civ. Action
No. 09-08030 (E.D.La.)

*Silva et al v. Arch Insurance Company,*
*et al.*, Civ. Action No. 09-08034 (E.D.La.)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' SUBSTITUTED**
**MOTION FOR CERTIFICATION OF A LOUISIANA HOMEOWNER CLASS FOR**
**DAMAGES AND DECLARATORY RELIEF**

**I.      INTRODUCTION**

This matter involves the claims of at least 1,000 Louisiana homeowners whose homes

have been severely damaged by Chinese manufactured drywall ("CDW") distributed by

Interior/Exterior Building Supply L.P. ("Interior Exterior").  Dean and Dawn Amato, Byron and

Debra Byrne, Donald and Marcelyn Puig and Edward and Susan Beckendorf (hereafter

"Plaintiffs")[1], on behalf of themselves and those similarly situated, seeks compensation for these

damages and a declaratory judgment that Interior Exterior's liability insurance policies provide

coverage for repairs of, and damage to, their homes.  Plaintiffs define the class as it relates both

the damages and declaratory relief claims as follows:

All owners of residential real properties in the state of Louisiana

---

[1]Because Mr. Stephen Silva is now involved in the Knauf Demonstration Remediation Program, he is no longer
participating as a class representative in these proceedings.  Therefore, Plaintiffs have filed a Second Amended
Motion to Intervene [document # 7734], which seeks to intervene the Amatos, Byrnes, Puigs, and Beckendorfs as
class representatives in place of Mr. Silva.  Assuming that motion is granted, the intervening plaintiffs intend to
represent the interests of the absent class members in the Silva proceedings.

> containing Chinese manufactured drywall sold or distributed by Interior Exterior Building Supply LP from January 1, 2005 to December 31, 2008, who have not released or assigned their property damage claims to a third party.

The conservation of resources for the Court and the parties of resolving liability on a class-wide basis is substantial, and is available *even if* the Court later determines that some damages issues must be resolved through individualized adjudications.

Class Certification of these claims is appropriate because: 1) class members suffered the same type of damages to their homes, 2) have an entitlement to compensation for this damage, and 3) are in need of a declaration of insurance coverage for Interior Exterior to pay for repairs and damages to the class members' homes.  The case does not present highly individualized damage claims such as personal injury.  A finding of liability would apply equally to all members of the class and damages can be calculated on a formulaic basis, and through the use of a claims proceeding or mini-trials where necessary.  Thus, the damages claims are appropriate for certification pursuant to Fed. R. Civ. P. 23(b)(3).  The declaratory relief claim is injunctive in nature and thus presents a common question for all members of the class and is appropriate for certification pursuant to Fed. R. Civ. P. 23(b)(2).

This Court is highly experienced with the types of factual and expert evidence utilized by the parties in CDW cases and the law that governs Louisiana CDW claims as a result of presiding over the *Germano* and *Hernandez* trials and the *Campbell/Clement* pretrial proceedings.  This experience includes familiarity with evidence relating to defective CDW products sold and distributed by Interior Exterior, and the damages caused by these products.  *See Hernandez v. Knauf,* Findings of Fact and Conclusions of Law (Docket #2713) ("*Hernandez* FOFCOL) at 20-44.  Plaintiffs reserve their right to proceed on class claims against Interior Exterior for homeowners in other states.

Certification of the claims for a Louisiana class would expedite the resolution of a large set of Louisiana claims for homeowners who are in desperate need of compensatory and injunctive relief, and provide a blueprint for homeowners in other states who have claims against Interior Exterior.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

The general factual background underlying the importing of and distribution of defective CDW into the Gulf states and the property damage caused by this drywall are set forth in detail at *Germano v. Taishan,* Findings of Fact and Conclusions of Law (Docket #2380) ("*Germano* FOFCOL") at 3-11, 27-57; and at *Hernandez* FOFCOL at 3-44.   This case concerns the importation and distribution of CDW by Interior Exterior in Louisiana.

In approximately January 2006, Stephen Silva purchased 180 sheets of Knauf Plasterboard (Tianjin) Co., Ltd. ("Knauf") drywall directly from Defendant Interior Exterior to be used in the construction of a new home on their property at 52095 Turnpike Road in Folsom, Parish of St. Tammany, Louisiana.   During the initial construction of the home in 2006, Mr. Silva observed sulfur like odors in the home, but at that time did not know that these odors were caused by the Knauf Chinese drywall.   Eventually, Mr. Silva observed distinctive corrosion of copper surfaces in the home.   In March of 2009 Mr. Silva discontinued the construction of the home and has not moved into the home because of the damage caused by the Knauf drywall. Silva Plaintiff Profile Form ("PPF"), Compendium of Exhibits In Support of Motion for Certification of a Louisiana Homeowner Class for Damages and Declaratory Relief ("Comp.) (Exhibit ("Ex.") 1) at 2 [document # 5567-3].[2]   In approximately March of 2009, Plaintiffs began

---

[2] Plaintiffs incorporate the compendium of exhibits filed in conjunction with the earlier motion for class certification herein by reference.  *See* documents 5567-2 through 5567-11.  Plaintiffs have also filed a compendium of exhibits in support of their supplemental motion for class certification with additional documentation not previously provided to the Court.

to suspect that this corrosion was related to the Knauf drywall sold to them by Interior Exterior.

On November 30, 2009, Mr. Stephen Silva filed suit against Interior Exterior, individually and on behalf of a class of similarly-situated persons, claiming Defendant Interior Exterior sold and distributed defective CDW boards in Louisiana from at least 2005-2008. Interior Exterior records indicate that the company purchased over 500,000 CDW boards from Knauf Tianjin, Knauf Wuhu, and Taian Taishan.  *See* Interior Exterior Building Supply L.P. Distributor Profile Form (Comp. Ex. 2) [document # 5567-4]; Knauf Defendant Manufacturers' Profile Form (KPT, Wuhu, GIPSP (Comp. Ex. 3) [document # 5567-5]; and Interior Exterior Sales Records (Comp. Ex. 4) [document # 5567-6].  Interior Exterior failed to adequately test, inspect, monitor the suitability of this product, and warn plaintiffs and class members of the defective nature of the CDW, in order to assure class members they were receiving a product fit for its intended purpose.  *See Silva et al v. Interior Exterior Building Supply, LP*, No. 09-cv-08030, (*Silva* Docket No. 1-2 at *1) ("Silva Damages Complaint") (E.D.La Dec. 31, 2009). Although initially filed in the Judicial District Court for the Parish of Orleans, the case has since been removed to this Court.  *Id.*

As was previously noted, Mr. Silva has elected to participate in the Knauf Demonstration Remediation Program and is no longer participating in the instant proceedings.  Other Plaintiffs have subsequently moved to intervene as class representatives since they are members of the class and are willing to assume the duties of a class representative.  *See* Second Amended Motion to Intervene [document # 7734].

Each of the Intervening Plaintiffs purchased a home in Louisiana during the class period that contains Knauf Chinese drywall that was supplied by Interior Exterior.  *See* Amato Plaintiff Profile Form ("PPF"), Supplemental Compendium of Exhibits In Support of Plaintiffs' Motion

for Certification of a Louisiana Homeowner Class for Damages and Declaratory Relief ("Sub. Comp.) (Exhibit ("Ex.") 2) at 1-2 (Dean and Dawn Amato purchased the subject property, located at 18615 Bellingrath Lakes, Greenwell Springs, LA 70739, in October 2006); Beckendorf PPF, (Sub. Comp. Ex. 4) at 1-2 (Edward and Susan Beckendorf purchased the subject property, located at 304 Brown Thrasher Loop S., Madisonville, LA 70447, on May 1, 2006); Byrne PPF, (Sub. Comp. Ex. 3) at 1-2 (Byron and Debra Byrne purchased the subject property, located at 532 Snead Court, Slidell, LA 70458, on April 2, 2007); Puig PPF, (Sub. Comp. Ex. 5) at 1-2 (Donald and Marcelyn Puig purchased the subject property, located at 302 Tallow Creek Dr., Covington, LA 70433, on March 31, 2006). Each of the Plaintiffs has observed sulfur like odors and has experienced distinctive corrosion associated with defective drywall. Pursuant to Louisiana law, Plaintiffs seek all recoverable property damages including remediation/repair damages, alternative living costs, property diminution, loss of use and enjoyment, and personal property losses.[3]

The homes of the intervening class representatives contain Knauf CDW and have exhibited typical CDW induced corrosion damages to electrical wiring and electrical and electronic appliances and other property damage. *See* Amato PPF [Sub. Comp. Ex. 2]; Beckendorf PPF [Sub. Comp. Ex. 4]; Byrne PPF [Sub. Comp. Ex. 3]; Puig PPF [Sub. Comp. Ex. 5]. The homes of Plaintiffs are in need of remediation n to make them fit for their intended use and restore them to the pre-CDW condition. *See* Declaration of Ronald E. Wright, P.E. ("Wright Dec.") at ¶¶5-6 [document # 5567-13]; *see also* Supplemental Declaration ("Supp Wright Dec.") at ¶¶ 2-6 [document #7139]; Supplemental Compendium of Exhibits ("Supp Comp.") at #6...

During the relevant years, Interior Exterior was covered by insurance policies issued by

---

[3] The proposed class does not seek to certify personal injury (or medical monitoring) claims in this motion. To the extent members of the class seek to bring those claims, they will be brought on an individual basis.

Arch Insurance Company, RSUI, North River Insurance Company, Fireman's Fund Insurance Company, and Liberty Mutual Insurance Company. *See* Interior Exterior Plaintiff Profile Form at §V (p. 5-10) (Comp. Ex. 2) [document 5567-4]. On information and belief these insurers have denied coverage for damage caused by defective CDW sold and distributed by Interior Exterior. On December 1, 2009, Mr. Silva filed a separate petition for declaratory judgment seeking coverage under the Defendants' liability policies with respect to Interior Exterior's liability for the aforementioned damages. *Silva* Docket No. 1-3 at *1 ("Silva Dec. J. Petition"). This case was filed in the 22nd Judicial District Court for the Parish of St. Tammany, but was removed to this Court. Like the Silva damages complaint, the intervening plaintiffs intend to participate in this action as representative plaintiffs.

Plaintiffs on behalf of themselves and similarly-situated persons seek class certification on their claims for damages pursuant to Fed. R. Civ. P. 23(b) (3), and for declaratory judgment for insurance coverage pursuant to Fed. R. 23(b) (2).

## III.   ARGUMENT

### A.   Standard of Review

The proponents of the class bear the burden of demonstrating that the case is appropriate for class treatment. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001). Class certification is soundly within the district court's discretion, and this decision is essentially a factual inquiry. *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502-03 (5th Cir. 2004). The class certification decision should not reach the merits of the Plaintiffs' claims. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). While in some cases it is necessary for a district court to go beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in order to make a meaningful certification decision, the "strength of a plaintiff's

claim should not affect the certification decision." *Id*. at 744-45.  The district court must make specific findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *Vizena*, F.3d at 503.

**B.      The Class Meets the Rule 23(a) (1)-(4) Criteria**

**1.      Numerosity – Rule 23(a) (1)**

To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through "some evidence or reasonable estimate of the number of purported class members."  *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000).  "Although the number of members of any proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has generally set the threshold of 100 to 150 people as satisfying the numerosity requirement. *Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999).  Other considerations include the practicability of joinder and all other relevant factors, *Pederson*, 213 F.3d at 868, including the (1) geographical dispersion of the class; (2) ease with which class members may be identified; (3) nature of the action; and (4) size of each plaintiff's claim.  *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981); *Turner v. Murphy Oil USA Inc.,* 234 F.R.D. 597, 604 (E.D. La. 2006).

Plaintiffs have alleged a class the size of which is reasonably believed to exceed 1,000 persons.  In the complaint filed by plaintiffs in *Payton et al. v. Knauf Gips KG, et al.*, No. 09-7628, (*Payton* Docket No. 1 at Schedule 1 at 34-44 (Distributor/Supplier List), and the *Payton* Intervention, *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, Docket No. 4346-2, 4346-3 at 2-42 (List of Intervening Plaintiffs)), approximately 250 Louisiana homeowners that purchased their drywall by and/or through Interior Exterior Building Supply are identified.  The PSC has since filed additional complaints involving claims by some 582

7

additional plaintiffs against Interior Exterior.[4]  In 2005 and 2006 alone, Interior Exterior purchased almost 500,000 pieces of CDW from Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd. and Taian Taishan Plasterboard Co. ("Taishan").  Interior Exterior Distributor Profile Form at 2-4 (Comp. Ex. 2) [document 5567-4].  Furthermore, Interior Exterior has its corporate headquarters and five of twelve of its sales offices in Louisiana. Interior Exterior Building Supply Locations, http://www.interiorexterior.net/ INEX_Locations.htm; (Comp. Ex. 5) [document 5567-7].  Interior Exterior distribution records indicate approximately 3,825 invoices for drywall products sold from four Louisiana sales offices.  Interior Exterior Sales Records (Comp. Ex. 4) [document 5567-6].  Testimony of Interior Exterior officers indicates that the majority of this product was CDW including Knauf and Taishan CDW.  Fed. R. Civ. P. 30(b) (6) Deposition, Interior Exterior at 51(15-18); 56(12-18); 58(19) – 59(1); 60(9) – 63(2); 63(3) – 64(4) (Comp. Ex. 6) [document 5567-10].  Assuming each of these transactions represents a purchase for use in a separate home, the class would consist of well over 1,000 homeowners.  *See* Wright Dec. at ¶3 [document 5567-13].  Thus, a conservative estimate of the number of class members is at least 1,000.  The class members are identifiable from Interior Exterior's business records which indicate delivery or sale of Knauf or Taishan drywall by or through Interior Exterior to the class members' address.  Joinder of more than 1,000 class members is impracticable and would lead to a squandering of judicial economy and the resources of the parties.  The evidence demonstrating that there are more than a thousand class members meets the numerosity requirement.

---

[4]  Some of the claims being asserted against Interior Exterior in these subsequent actions involve properties located in states other than Louisiana.

### 2.      Commonality – Rule 23(a) (2)

Commonality requires that there be "questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a) (2). The inquiry is not demanding. *Mullen*, 186 F.3d at 624. Rather, the commonality requirement is satisfied if resolution of at least one issue will affect all or a significant number of class members. *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001); *Mullen*, 186 F.3d at 625. There is a low threshold for commonality, and the fact that some Plaintiffs have different claims or require individualized analysis does not defeat commonality. *James*, 254 F.3d at 570. Courts regularly find declaratory judgment class actions to meet the commonality requirement when granting certification. *See Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 671-72 (S.D. Fla. 1997) (finding commonality to exist in case involving interpretation of form insurance contract's applicability to class of insured); *Jones v. Am. Gen. Life & Accident Ins. Co.*, 213 F.R.D. 689, 695 (S.D. Ga. 2002) (finding that application of common contract to class members satisfies commonality requirement).

### a.      The Damages Claims

Here, there are numerous questions of law and fact common to the class. As to the damages claims, the common questions for the proposed class representatives and the proposed class include: (1) whether CDW distributed and sold to class members by Interior Exterior is defective and needs to be replaced; (2) whether additional items in the home need to be repaired or replaced; (3) the determination of Interior Exterior's liability as the distributor or seller of CDW; (4) the fact of property damage to the class representatives and class; (5) the availability of property-related damages under Louisiana law; and (6) the identification of a methodology to calculate class-wide damages.[5]

---

[5] Wright Dec. at ¶¶5-6 [document 5567-13].

### b.      The Declaratory Judgment Claim

As to the declaratory judgment claim, common questions include: whether one or more of the insurance company defendants' policies provides coverage with respect to Interior Exterior's fault and/or other legal liability to the Plaintiffs for: (i) property damage, (ii) repair and/or restoration costs, (iii) diminution in value, (iv) loss of use, (v) damage to personal property, (vi) inconvenience, (vii) mental anguish, (viii) fear and fright, (ix) personal injuries, (x) attorneys' fees, (xi) other economic damages or injuries; and (xii) whether any valid exclusions exists which may limit or eliminate coverage.  Interior Exterior purchased multiple insurance policies from at least five defendant insurers covering the period of January 1, 2005 through December 31, 2008.  Resolution of the above-listed questions of law and fact with respect to each insurance policy in question, identified in the Silva Dec. J. Petition (*Silva* Docket #1-3) at ¶¶ 8-12, will affect all class members.

As such, the commonality requirement is met both for the damages claims and the declaratory relief claim.

### 3.      Typicality – Rule 23(a) (3)

Rule 23(a) (3) requires that the claims of the class representatives are typical of the class's claims or defenses.  Again, the threshold for typicality is low: class representatives must show similarity between their legal and remedial theories and the theories of the rest of the class. *Mullen*, 186 F.3d at 625.  Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics – a similar course of conduct, or the same legal theory.  *James*, 254 F.3d at 571 (*quoting* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)).  In a property damage context, liability theories are often deemed to be common questions. *Murphy,* 234 F.R.D. at 605 (finding theory of liability a

common question in oil contamination property case.).  When plaintiffs seek the same

declaratory judgment and injunctive relief on behalf of the entire class, "the claims of the

proposed class representatives are typical of the entire proposed class." *Boos v. AT & T, Inc.*,

252 F.R.D. 319, 323 (W.D. Tex. 2008).  Courts regularly find declaratory judgment class actions

to meet the typicality requirement when granting certification.  *See Leszczynski v. Allianz Ins.*,

176 F.R.D. 659, 672-73 (S.D. Fla. 1997) (finding Rule 23(a)(3) to be met when the "named

plaintiffs' claims arise from the same event or cause or conduct that give rise to the claims of the

class members); *Jones v. Am. Gen. Life & Accident Ins. Co.*, 213 F.R.D. 689, 696 (S.D. Ga.

2002) (finding that plaintiffs and proposed class members all seek the same remedy of claiming

their life insurance benefits).

### a.    The Damages Claims

The property damage claims of the class representatives are the same as those of the

absent class members.  The determination of these damages depends on the same factual

predicate as to the distributor and seller of the defective product, product identification, the

mechanism of damage occurring in the class members' homes, the need for remediation, and the

square footage costs of accomplishing the remediation.  *Murphy,* 234 F.R.D. at 605 (finding

typicality established where theory of liability of property owners damaged by oil are alike.); *see*

Wright Dec. at ¶¶5-6 [document 5567-13].  Further, all class members' claims are governed by

Louisiana law.

### b.    The Declaratory Judgment Claim

The insurance coverage questions of the class representatives are the same as those of the

absent class members.  The assessment necessary to determine the extent to which each

insurance policy may cover the claims of plaintiffs will not differ from the assessment that would

be required with respect to any other class member's claims.

Accordingly, the class representatives' damages and injunctive claims meet the typicality requirement.

### 4.        Adequacy of Representation – Rule 23(a) (4)

Rule 23(a) (4) demands that the named class representatives fairly and adequately represent the claims of the other class members.  There can be differences between the class representatives and other class members so long as these differences do not "create conflicts between the named Plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 626.  A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members.  *Id.* (*citing Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1971)).  In addition, the district court should inquire into the competence of the class representatives' counsel and into the class representatives' willingness to take an active role in the litigation and to protect the interests of absentees.  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).

Under Fed. R. Civ. P. 23(g), a district court must appoint class counsel when the class is certified, unless otherwise provided by statute.  The class counsel must fairly and adequately represent the interests of the class.  The court must review the counsel's work in investigating claims, experience in handling class action litigation, knowledge of the applicable law, and the resources counsel will commit to representing the class.  Rule 23(g) (1) (B), (C).

The class representatives, Dean and Dawn Amato, Byron and Debra Byrne, Donald and Marcelyn Puig and Edward and Susan Beckendorf, have the same interest as absent class members in obtaining property damage relief from Interior Exterior and in determining the

extent of coverage for Interior Exterior to make repairs and reimburse damages under the several

defendant insurance policies. The class representatives, have demonstrated their commitment to

the litigation by participating in this lawsuit, providing properly completed PPFs, and by

providing documentation establishing product identification and corrosion damage.  Declaration

of Russ M. Herman ("Herman Dec.") at ¶¶2-3 (filed simultaneously herewith).

  The proposed class counsel (Russ Herman of Herman, Herman, Katz & Cotlar, LLP; and

Gerald Meunier of Gainesburgh, Benjamin, David, Meunier and Warshauer) are committed to

this litigation, experienced in class action practice, and are well respected and competent

lawyers.  This Court has already had the opportunity to work extensively with each of the

proposed class counsel and their firms in proceedings related to *Germano*, *Hernandez*, and

*Campbell/Clement*.  *See* the Curriculum Vitae's of Proposed Class Counsel attached to Herman

Dec.  Thus, the Court should find that the proposed class representative, as well as the proposed

class counsel, are adequate.

### a. Ascertainability

  It should be noted that various courts consider *ascertainability* to be a requirement under

Rule 23.  Ascertainability pertains to the ability of the court based on record evidence to utilize

objective criteria to determine who is, and is not, a class member.  The Firth Circuit has referred

to ascertainability as an "implied prerequisite of Rule 23."  *John v. Nat'l Security Fire & Cas.

Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *see also DeBremaecker v. Short*, 433 F.2d 733, 734 (5th

Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be

represented must be adequately defined and clearly ascertainable."), *In re A.H. Robins Co.*, 880

F.2d 709, 728 (4th Cir. 1989); *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981); 5 JAMES W.

MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[1], at 23-47 (Matthew Bender 3d

ed. 1997) ("It is axiomatic that in order for a class action to be certified, a class must exist.").

Here, the class is ascertainable. Membership in the class is based on two key objective criteria:

(1) homeownership in Louisiana; and (2) the identification of Chinese-manufactured drywall

sold or distributed by and/or through Interior Exterior in the home. The determination of CDW

in a residence is established through visual identification of known markings. *See* PTO #10

(Docket #171); Wright Dec. at ¶5 [document 5567-13]. The determination that Interior Exterior

was the distributor of the CDW in question can be made based on Interior Exterior invoices and

other documentation linking Interior Exterior distribution to construction of residences in

Louisiana. Interior Exterior Distributor Form (Comp. Ex. 2) [document 5567-4]; Interior

Exterior Sales Records (Comp. Ex. 4) [document 5567-6]. Thus, the ascertainability requirement

is satisfied.

### C. The Class is Appropriate for Certification Under Rule 23(b) (3) for Damages Claims and 23(b) (2) for Declaratory Relief Claim

Certification is proper under 23(b)(3) for the property damage claim and 23(b)(2) for a

class-wide declaration mandating insurance coverage for all damages and remedies for which

Interior Exterior may be liable for under the relevant insurance policies.

#### 1. The Damages Class Should be Certified Under Rule 23(b) (3)

Rule 23(b) (3) requires that the class share common issues of law or fact that predominate

over the questions affecting individual class members. In general, in order to predominate,

common issues must form a significant part of the individual cases. *Mullen,* 186 F.3d at 626.

Specifically, a district court should consider how the cases would proceed to trial, that is,

whether any cases would require individual trials on particular issues. *See Castano,* 84 F.3d at

744-45 (finding that certification was inappropriate where individual trials would be necessary to

determine an element of the Plaintiffs' fraud claims).

The dual demands of Rule 23(b) (3) are that common issues are significant and will resolve substantial aspects of the case, and that the case will be manageable for trial purposes. *Id.*  In the *Hernandez* case, this Court has already determined the applicable Louisiana law to a CDW claim, and has already issued factual findings establishing property damage from defective CDW distributed or sold by Interior Exterior.  This experience enhances the manageability of trying liability and damages.  Further, Plaintiffs have put forth a Supplemental Proposed Trial Plan which relies on bifurcation of liability and damages.  The Plan suggests a Phase I liability trial to establish general liability and general causation.  Damages would be left to a Phase 2 trial.  This type of bifurcation is well accepted in the Fifth Circuit and does not raise Seventh Amendment reevaluation concerns.  *Mullen,* 186 F.3d at 628-629; *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1019-1020 (5th Cir. 1992); *Turner,* 234 F.R.D. at 606; *Turver v. Murphy,* Order and Reasons (March 2, 2006) at 3, 5-6.  Plaintiffs have also put forth expert declarations identifying methodologies to establish damages utilizing common methodologies, formulaic analysis, or individual mini-trials if necessary.  *See* Wright Dec. at ¶¶ 5-6, Supp. Wright Dec. at ¶ 2; Letter Opinion of Lee H. Waronker, MAI, SRA (January 24, 2011) (Supp. Comp. at Ex, 7).  Thus, class-wide liability and damages can be established in an efficient manner and these issues predominate over any individual issues.[6]  Moreover, there are no individual issues associated with any personal injury claims as those claims are excluded from the class.

### a.   Defendant Interior Exterior's Course of Conduct is a Common Liability Issue

Here, there can be no dispute that Defendant Interior Exterior's common course of conduct in distributing and selling defective CDW to the Louisiana home construction market

---

[6] There will be a need during claims processing for each claimant to prove up basic facts to establish property damages: (1) product identification; (2) homeownership; and (3) square footage of owned home, to recover on a remediation claim.

has a common property damage impact on the class member homeowners.  Liability is commonly recognized as a predominant issue in the class setting.  *Mullen,* 186 F.3d at 626 ("the common issues in this case, especially negligence and seaworthiness, are not only significant but pivotal … If the [Defendant] prevails on these two issues, they will prevail in the case."); *Murphy,* 243 F.R.D. at 606 (property damage claims "share large areas of fact in common."); *McQuilken v. A&R Development,* 576 F.Supp. 1023, 1031 (E.D. Pa. 1983) (construction activity causing damages to homeowner's properties was common and predominant issue supporting certification).

The issue of Interior Exterior's liability to the class is highly amenable to class treatment because the evidence of Interior Exterior's failure to monitor the product it sold and distributed for defects and failures to warn, will be the same for all class members.  Thus, a finding of liability for the class would allow 1,000 plus claimants to proceed directly to the damages phase. The conservation of resources for the court and the parties of resolving liability on a class-wide basis is substantial and is available *even if* the court later determines that some damages issues must be resolved through individualized adjudications.  *Murphy,* 234 F.R.D. at 605, 607 (individualized damage issues do not prevent a finding of predominance).

### b.    Determination of Class-Wide Damages is a Predominant Issue

Similarly, the Plaintiffs' demonstrated ability to determine class-wide damages meets the predominance requirement at the certification stage.  *See, e.g., Monumental Life Ins. Co. v. Nat'l Life,* 365 F.3d 408, 419 (5th Cir. 2004) ("The policy variables are identifiable on a classwide basis and, when sorted, are capable of determining damages for individual policyowners; none of these variables is unique to particular Plaintiffs.  The prevalence of variables common to the class makes damages computation 'virtually a mechanical task.'").

As the Eleventh Circuit noted in *Klay v. Humana*:

> In assessing whether to certify a class, the court's inquiry is limited
> to whether or not the proposed methods for computing damages
> are so insubstantial as to amount to no method at all . . . . Plaintiffs
> need only come forward with plausible statistical or economic
> methodologies to demonstrate impact on a class-wide basis.
> Particularly where damages can be computed according to some
> formula, statistical analysis, or other easy or essentially mechanical
> methods, the fact that damages must be calculated on an individual
> basis is no impediment to class certification.

382 F.3d at 1259-60 (internal brackets, quotations and footnotes omitted).[7]  As such, damages

can be proven on a class-wide basis and allocation and claims processing issues will not defeat

class certification.  *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 699 (S.D. Fla. 2004)

("Assuming the jury renders an aggregate judgment, allocation will become an intra-class matter

accomplished pursuant to a court-approved plan of allocation, and such individual damages

allocation issues are insufficient to defeat class certification."); *In re NASDAQ Market-Makers*

*Antitrust Litigation*, 169 F.R.D. at 525 (S.D.N.Y. 1996) ("Aggregate computation of class

monetary relief is lawful and proper.").

Even if some individual damages issues may exist, it is well settled that their presence

does not defeat predominance.  *See Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th

Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004) ("[N]umerous courts have

recognized that the presence of individualized damages issues does not prevent a finding that the

common issues in the case predominate."); *Murphy,* 234 F.R.D. at 605, 607 (same).  Any

individualized damage issues, for example determining individual personal property damage, can

be dealt with "pursuant to a court-approved plan of allocation," or mini-trials in a proceeding

---

[7]  Courts routinely have used class-wide, formula-based techniques to calculate individual damages in various types of class actions.  *See, e.g.*, *Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977) (approving aggregate damages judgment), *aff'd*, 444 U.S. 472 (1980); *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003) (approving of the use of objective data extracted from the Defendant's computer system and analyzed through a "mechanical process" in a case involving charging customers for incoming cellular telephone calls.); *see also* 3 Newberg on Class Actions § 10:8.

where liability and damages are bifurcated. *Terazosin*, 220 F.R.D. at 699; *see also Turner v. Murphy,* No. 05-4206, Order and Reasons (March 3, 2006), slip op. at 3 (Comp. Ex. 7) ("Fifth Circuit has approved of bifurcated trial plans in which common issues of liability, negligence, and certain defenses are tried commonly, with causation actual damages, and … comparative fault tried individually.") (Citations omitted).

### i.      Formulaic Method to Determine Class-Wide Damages

Alternatively, damages can be determined for individual Plaintiffs using the same methodology; and some forms of damages can be formulaic in nature and be amenable to class treatment.  Ronald Wright, Plaintiffs' expert, a Civil Engineer who specializes in the assessment and repair and remediation for home construction has inspected many Knauf drywall homes, and has developed a methodology to estimate damages for the remediation of such homes and the replacement of damaged components including appliances, flooring, cabinetry and other items. Wright Dec. at ¶¶5-7 [document 5567-13].  He has considered national databases that estimate such costs including RS Means and more specifically he has reviewed the real world repair bids of local construction companies to perform the necessary remediation in several homes in different states.  Mr. Wright has applied this methodology to individual homes and groups of homes.  For example, based on his work in Virginia and available Virginia data, Mr. Wright offered the expert opinion in the *Germano* proceeding that the cost of repair for a fair cross-section of Virginia homes would be on average $86 per square foot, which was accepted by the Court.  *Germano* FOFCOL at 57-60.  Based on similar data for Louisiana, available statistical databases in the housing and construction industry, and Louisiana CDW distribution records Mr. Wright will be able to determine remediation damages for individual homes and if desired estimate: (1) the number of homes in Louisiana likely to contain defective CDW sold or

distributed by Interior Exterior and thus require remediation, and (2) the total square footage of these homes.  Therefore remediation damages can either be determined for individual plaintiffs or groups of individual plaintiffs using the same methodology.  Wright Dec. at ¶¶5-7 [document 5567-13]; *see also Germano* FOFCOL at 57-59, 64-69.

Additional forms of property damage, including alternative living costs, property diminution, loss of use and enjoyment, and personal property losses are also amenable to plaintiff specific determination or determination for groups of plaintiffs.    For example, in the case of alternative living costs, the damage amount established in *Hernandez* was $2376.81/month.  *Hernandez* FOFCOL at 42.  Real property diminution also can be determined in a formulaic manner.  *Murphy,* 234 F.R.D. at 607 and n.5 ("Court notes that real estate expert "opined that the properties at issue would be properly subject to mass appraisal to determine their present value."); *Sher v. Raytheon Co.,* 261 F.R.D. 651, 2009 WL 31931 52, (M.D. Fla. 2009) (in environmental pollution toxic tort case, court found at class certification that plaintiffs provided a "viable model for calculating property damages on a class-wide basis").

Loss of use and enjoyment and personal property damages could also be assessed on an individual basis, or for the class based on a survey of representative homeowners.  *In re Chevron U.S.A., Inc.,* 109 F.3d 1016, 1019-20 (5th Cir. 1997) (permitting the use of statistics to draw inferences about the claims of 3,000 plaintiffs and intervenors who claimed wrongful death, personal injury, and property contamination from defendant's storage of hazardous substances which had leaked from crude oil waste pits and migrated into the plaintiffs' drinking water supply.); *see Watson v. Shell Oil Co.,* 979 F.2d 1014, 1018 (5th Cir. 1992) (approving trial court's proposal to determine punitive damages in a mass-tort class-action suit by fully trying 20 sample claims on *compensatory* damages to the jury and then asking the jury to "establish the ratio of

punitive damages to compensatory damages for each class member"); *Hilao v. Estate of Marcos,* 103 F.3d 767, 782087 (9th Cir. 1996). The Ninth Circuit Court of Appeals allowed the use of aggregation and statistical analysis to determine compensatory damages where a statistics expert relied on a random sample of claims to calculate damages for the entire class.); *see also,* Newberg on Class Actions at §10:3 (4th ed) (citing *Long v. Trans World Airlines, Inc.,* 761 F.Supp. 1320, 1324-1326 (N.D. Ill. 1991) (approving use of a sample of class members' damages in labor dispute as a basis to determine class-wide damages).

Thus, class-wide property damages can be established individually using the same methodology for each plaintiff, and for some damages by use of a formulaic method. Use of a formulaic method and/or mini-trials to meet the Rule 23(b)(3) predominance requirement is well accepted. *Monumental,* 365 F.3d at 419. In addition, the FOFCOL from *Germano* and *Hernandez* demonstrate benchmark damage awards for the cost of remediation, the alternative living costs, property diminution, loss of use and enjoyment and private property damage.

### c.       Louisiana Law Applies to All Claims in this Case

Variation of state law and choice of law are also significant concerns for manageability. *Mullen,* 186 F.3d at 627. Here, these matters are easily managed because there is only one state's laws to consider - Louisiana. *See Manual for Complex Litigation,* Fourth § 22.634, p. 634; §§22.753-54, p. 652.

As stated above, the factual determination of class-wide liability and property damages are the predominating common issues to be resolved in this case. These types of issues are recognized as pivotal class issues. *Mullen,* 186 F.3d at 626; *Monumental,* 365 F.3d at 419; *Murphy,* 234 F.R.D. at 606; *McQuilken,* 576 F.Supp. at 1031. The types of issues that are often seen as obstacles to class certification: those that require extensive individualized proof like

where class members seeking personal injury damages are exposed to different products, at different times and suffer different injuries; are not present in this case.  *Mullen,* 186 F.3d at 626; *Turner v. Murphy Oil,* No. 05-4206, Order and Reasons at 13-14 (January 30, 2006) (Comp. Ex. 7).  Similarly, complex choice of law issues are not involved here.  *Mullen,* 186 F.3d at 627.  In contrast to those cases that have not allowed certification, this case presents class claims where each member of the class has suffered the same type of injury, during the same time period, caused by the conduct of the same defendant; which is a paradigm for class certification.

> In the present case the plaintiffs are an extremely compact and discrete geographical group, readily identifiable.  There are no choice of law problems.  All claim to have suffered the same type of harm, during the same time period, caused by the same conduct of the defendant.  This case is thus similar to those cited above in which class certification has been granted.  It also differs from those "mass tort" cases in which certification has been denied because the harm to various class members took place at different times and under different circumstances, or because individual defenses or choice of law problems existed.

*McQuilken,* 576 F.Supp. at 1031; *see also Mullen,* 186 F.3d at 626-627.

In sum, the substantive property damage law applicable to CDW claims in Louisiana has been established, *Hernandez* FOFCOL at 44-47,[8] and there is no variation in the law to be applied to members of the class.  Class-wide liability and damages can be established using the same method for each plaintiff on a common basis.  The trial of this case on these predominant issues thus is manageable as is demonstrated by the Supplemental Proposed Trial Plan ("Supp.

---

[8] In addition, Louisiana law supports a property damage claim for diminished value of real estate and loss of use and enjoyment.  *See also Thomas v. Desire Cmty. Hous. Project,* 98-2097 (La. App. 4th Cir. 8/10/00), 773 So.2d 755 (allowing non-pecuniary damages of $15,500 for problems in the construction of plaintiff's home); *Taylor v. Burton,* 97-1348 (La. App. 3rd Cir. 3/6/98), 708 So.2d 531 (upholding award for aggravation and mental distress due to defects in plaintiff's house); *Mayer v. Three R's Inc.,* 597 So.2d 151, 155 (La. App. 3rd Cir. 1992) (affirming award for inconvenience and mental anguish), *writ denied,* 600 So.2d 680 (La. 1992); *see also,* LA.CIV. CODE ART. 2524. *See Bonnette v. Conoco Inc.,* 2001-2767 (La. 1/28/03), 837 So.2d 1219, 1238-1240 (upholding an award for the diminished value of a remediated home because the former presence of asbestos would need to be disclosed to prospective buyers); *see also, e.g., Johnson v. Orleans Parish Sch. Bd.,* 2006-1223 (La. App. 4th Cir. 1/30/08), 975 So.2d 698, 705-706.

Trial Plan") (filed simultaneously herewith).  The requirements of Rule 23(b)(3) predominance for the damages claims are readily established.

> **d.      Class Treatment of the Damages Claims Meets the Rule 23(b)(3) Superiority Requirement**

Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the class action format is superior to other methods of adjudication:  the class members' interest in individually controlling their separate actions, the extent and nature of existing litigation by class members concerning the same claims, the desirability of concentrating the litigation in the particular form, and the likely difficulties in class management.  Fed. R. Civ. P. 23; *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 304 (5th Cir. 2009).

A class proceeding is the superior method to adjudicate this significant subset of claims in the MDL, the property damage claims against INEX in Louisiana.  The exhaustive record of the relevant factual evidence already reviewed by and ruled on by this Court greatly enhances the manageability of this matter.  A class proceeding will facilitate an expeditious and streamlined resolution for this significant subset of affected homeowners, and potentially establish a road map to resolve the remaining claims in the MDL.  This streamlined procedure is desirable and necessary because the property damage caused by CDW has forced many homeowners to abandon their homes and has placed several homeowners under financial pressure including the need to pay two mortgages, loss of credit rating, and foreclosure.  Further, there are no management obstacles in the trial of these claims.  *See* Supp. Trial Plan.  For all the reasons stated above, as well as the procedural advantages of avoiding duplicate proceedings on identical issues, class adjudication is the superior method to resolve the property damage claims of Louisiana homeowners who purchased defective CDW from Interior Exterior.  Thus, the predominance and superiority requirements for the class damages claims are established.

   **2. The Declaratory Relief Claim Should be Certified Under Rule 23(b)(2)**

Class certification is appropriate under Rule 23(b)(2) if the 23(a) factors are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Declaratory relief, rather than monetary damages, embodies the type of equitable claim for which "class certification is appropriate under Rule 23(b)(2)." *McWaters v. FEMA*, 237 F.R.D. 155, 162 (E.D. La. 2006).

Indemnity actions or insurance declaratory relief actions are held to be principally equitable in nature. *See, e.g.*, *Adkinson v. Int'l Harvester Co.*, 975 F.2d 208, 213 (5th Cir. 1992) (explaining that many states, including Mississippi, treat indemnity claims as equitable claims). Indeed, coverage actions are regularly certified under Rule 23(b)(2). *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 674 (S.D. Fla. 1997) (certifying (b)(2) action seeking declaration of rights as to coverage available under insurance policies); *Jones v. Am. Gen. Life & Accident Ins. Co.*, 213 F.R.D. 689, 698 (S.D. Ga. 2002) (granting (b)(2) certification of claim alleging improper termination of life insurance benefits). The class here seeks an equitable remedy from the insurance carrier Defendants to indemnify Interior Exterior for the remediation costs the class has incurred, continues to incur, and will incur. Resolution of such issues is paradigmatic of the purpose of Rule 23(b)(2).

## IV. CONCLUSION

For the reasons stated herein and in the Supplemental Proposed Trial Plan and Supplemental Declarations filed simultaneously herewith, Plaintiffs respectfully request class certification of their damages and declaratory judgment claims pursuant to Fed. R. Civ. P. 23(b)(3) and 23(b)(2).

Dated: February 28, 2011

Respectfully submitted,

/s/ Russ M. Herman_____
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

**PROPOSED OF COUNSEL TO CLASS**

## PLAINTIFFS' STEERING COMMITTEE

Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR,
LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*

Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931

hlambert@lambertandnelson.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

### OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA  70057
Phone:  (985) 783-6789
Fax: (985) 783-1333
Andrew@lemmonlawfirm.com

4818-7018-6247