UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

DANIEL ABREU, et al.,

      Plaintiffs,

vs.

GEBRUEDER KNAUF
VERWALTUNGSGESELLSSCHAFT,
KG, et al.

      Defendants.

_____/

CASE NO.:  11-252
SECT. L MAG. 2

CLASS ACTION COMPLAINT

**CHINESE DRYWALL**

## DEFENDANT, BANNER SUPPLY COMPANY PORT ST. LUCIE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (VIII)

Defendant, BANNER SUPPLY COMPANY PORT ST. LUCIE, LLC ("Banner PSL"), files this Memorandum in Support of its Motion to Dismiss Plaintiffs' Omnibus Class Action Complaint (VIII) (the "Complaint") filed by Plaintiffs, DANIEL ABREU, et al. ("Plaintiffs").

### I.

### INTRODUCTION

On or about February 7. 2011, Plaintiffs filed this class action against distributors, suppliers, importers, exporters, brokers, builders, developers, contractors and installers in connection with the installation of allegedly defective Chinese-manufactured drywall in the Plaintiffs' residences.  Plaintiffs have asserted a laundry list of generic common law and statutory claims against Banner PSL in what can best be characterized as a shotgun pleading. Specifically, Plaintiffs have asserted purported causes of action against Banner PSL[1] for: (1)

---

[1]    There are fourteen Counts in the Omnibus VIII, but only eight of them arguably apply to Banner PSL.  The six other counts do not.  Specifically, Counts V (for breach of warranty under Florida's condominium code), VI (for breach of the implied warranty of habitability), VII (for breach of contract), and VIII (for violation of the Louisiana New Home Warranty Act) are asserted against "Builders Only," whereas the Omnibus VII identifies Banner PSL as

PETERSON & ESPINO, P.A.

CASE NO.: 11-252
SECT. L MAG. 2

negligence (Count I); (2) negligence *per se* (Count II); (3) strict products liability (Count III); (4) breach of express and/or implied warranties (Count IV); (5) private nuisance (Count XI); (6) unjust enrichment (Count XII); (7) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count XIII); and (8) equitable and injunctive relief and medical monitoring (Count XIV).

This Court should dismiss the Complaint in its entirety and grant the instant Motion because, among other things: (1) there is no connection between Banner PSL and the State of Louisiana to justify this Court's exercise of personal jurisdiction over Banner PSL under Louisiana's log-arm statute or constitutional due process requirements; (2) venue is improper in the State of Louisiana; and (3) every one of Plaintiffs' claims against Banner PSL is fatally defective and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.

## PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

### A.

### *Legal Standard*

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant only if two requirements are satisfied: (1) the forums state's long-arm statute confers personal jurisdiction; and (2) the exercise of jurisdiction does not exceed the boundaries of Due Process. *See* Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 270 (5th Cir. 2006). Louisiana's long arm statute, La. R.S. 13:3201(B), provides that a Louisiana court "may exercise personal jurisdiction over a non-resident on any basis consistent with . . . the Constitution of the

---

a "Distributor/Supplier/Importer/Exporter/Broker." *See* Compl. ¶ 439. Counts IX ("Redhibition") and X ("Louisiana Products Liability Act") are simply not applicable to Banner PSL because, as alleged more fully herein, none of the residences allegedly involving Banner PSL encompassed by this action are located in Louisiana.

- 2 -

CASE NO.: 11-252
SECT. L MAG. 2

United States." Because the limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, the inquiry is simply whether this Court's exercise of jurisdiction over Banner PSL would offend due process. See Luv N' Care, LTD v. Insta-Mix, Inc., 438 F.3d 465,469 (5th Cir. 2006); see also Electrosource, Inc. v. Horizon Battery Techs, Ltd., 176 F.3d 867, 871 (5th Cir. 1999).

The Due Process inquiry is two-fold.  First, the Court must establish whether Banner PSL, a non-resident defendant, has the requisite minimum contacts with Louisiana, the forum state. See Luv N' Care, 438 F.3d at 469 (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 319 (1945)). Second, the Court must determine whether exercising personal jurisdiction over Banner PSL would violate "traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 310. For the following reasons, the Due Process inquiry clearly demonstrates that the Court lacks the power to assert personal jurisdiction over Banner PSL.

B.

### Banner PSL does not have Sufficient Minimum Contacts with Louisiana

The minimum contacts test takes two forms and the constitutional limitations on the exercise of personal jurisdiction differ depending on whether a court seeks to exercise general or specific jurisdiction over the defendant. See Asarco, Inc. v. Glenara Ltd., 912 F.2d 784, 786 (5th Cir. 1990).  Specific jurisdiction arises when the lawsuit is derived from, or related to, the defendant's purposeful contacts with the forum state.  Id. (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 413-14(1994)).  General jurisdiction arises where a defendant has "continuous and systematic contacts" with the state. Asarco, Inc., 912 F.2d at 786.

In this case, the Court clearly lacks the power to exercise either general or specific jurisdiction over Banner PSL because it has no contacts with Louisiana.  Plaintiffs admit in their

- 3 -
PETERSON & ESPINO, P.A.

Complaint that Banner PSL is a Florida corporation with its principal place of business in Florida. See Compl. ¶ 304. Banner PSL never transacted business in Louisiana, does not maintain an office or agent in Louisiana, does not own property in Louisiana, has not breached any contract or committed any tort in Louisiana and has not otherwise conducted itself in any manner that would give rise to personal jurisdiction over Banner PSL by a court in Louisiana. See Affidavit of Scott Giering (the "Affidavit"), Banner PSL's Controller, a true and correct copy of which is attached hereto as Exhibit "A" and specifically incorporated by reference.

1. Specific Jurisdiction

In order to exercise specific jurisdiction over Banner PSL, the Court must find that Banner PSL purposefully availed itself of the privilege of conducting activities in Louisiana, thus invoking the benefits and protections of Louisiana's laws. Jones v. Petty-Ray Geophysical, 954 F.2d 1061, 1086 (5th Cir. 1992) (quoting Hanson v. Denckla, 375 U.S. 235 (1958)). The Affidavit clearly establishes that Banner PSL has not purposefully availed itself of the privilege of doing business in Louisiana. See Exhibit "A."

The Affidavit, which is undisputed, establishes that Banner PSL: (1) is a Florida corporation, and its place of business was in Port St. Lucie, Florida; (2) is a building material supplier that has never had a location outside of Port St. Lucie, Florida; (3) has never sold or delivered drywall to any person or entity in Louisiana; (4) has never sought a business license in Louisiana; (5) has never been licensed to conduct business in Louisiana; (6) has never maintained a business listing, telephone number, or business address in Louisiana; (7) has never owned any real property in Louisiana; (8) has never maintained or operated any factories, warehouses, or offices in Louisiana; (9) has never advertised its business in Louisiana; (10) has never marketed or promoted the sale of any products in Louisiana; and (11) has never maintained

PETERSON & ESPINO, P.A.

a bank account in Louisiana.  See id.  As such, Plaintiffs have failed to establish that Banner PSL purposefully availed itself of the privilege of conducting business in Louisiana and, therefore, this Court cannot exercise specific jurisdiction over Banner PSL.

### 2.   General Jurisdiction

In order to assert general jurisdiction over Banner PSL, Plaintiffs' causes of action must arise out of or relate to Banner PSL's forum-related contacts.  Asarco, Inc., 912 F.2d at 786. Plaintiffs, however, have not and cannot establish that any of their causes of action (asserted against Banner PSL) arise out of or relate to Banner PSL's conduct in Louisiana.  Banner PSL simply has simply had no contact whatsoever with Louisiana.  The underlying basis for this class-action lawsuit is allegedly defective drywall material used in the construction of certain residences. Yet, none of the residences allegedly involving Banner PSL encompassed by this action are located in Louisiana.   Moreover, Banner PSL is not even registered to do business in Louisiana.  See Exhibit A.  Banner PSL does not have any offices or employees in Louisiana, nor does it own property in Louisiana.  See id.  In light of the fact Banner PSL has had no contact with the state of Louisiana, much less the systematic and continuous contact contemplated by Louisiana's Long Arm Statute, this Court cannot exercise general jurisdiction over Banner PSL since Plaintiffs cannot establish that their causes of action arise out of or relate to Banner PSL's "forum-related contacts."

### B.

### *This Court's Exercise of Personal Jurisdiction over Banner PSL Would Offend Traditional Notions of Fair Play and Substantial Justice*

Even where a defendant's contacts with the forum are sufficient to meet the minimum contacts requirement for exercising personal jurisdiction, if exercising personal jurisdiction would offend "traditional notions of fair play and substantial justice," the Court is prohibited

- 5 -

CASE NO.: 11-252
SECT. L MAG. 2

from exercising personal jurisdiction. Int'l Shoe Co., 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). In reaching its decision, the Court must consider the burden on Banner PSL. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); see also Luv N' Care. Ltd., 438 F.3d at 473.

Fairness dictates the dismissal of the Complaint as to Banner PSL. Banner PSL is a Florida corporation with its principal place of business in Florida. It is not licensed or registered to do business in Louisiana, and it has no offices, employees, property, bank accounts or other assets/resources in Louisiana. See Exhibit A. If this lawsuit were allowed to proceed in Louisiana, most, if not all, of the critical witnesses, along with all of the physical evidence and related documents are located in Florida. Where, as here, Banner PSL has not sold or delivered a single piece of allegedly defective Chinese-manufactured drywall in Louisiana, it would be an unreasonable burden on Banner PSL to be forced to defend this action in Louisiana. Therefore, exercising personal jurisdiction over Banner PSL would violate traditional notions of fair play and substantial justice. See Int'l Shoe Co., 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Adjudicating this dispute against Banner PSL in Louisiana violates the minimum contacts required to fulfill due process and impedes any notion of "fair play and substantial justice." Pursuant to Federal Rule of Civil Procedure 12(b)(2), Plaintiffs' Complaint must be dismissed against Banner PSL for lack of personal jurisdiction.

## III.

## VENUE IS IMPROPER IN THE EASTERN DISTRICT OF LOUISIANA

Should this Court find Banner PSL is subject to its exercise of personal jurisdiction, Banner PSL contends that the Eastern District of Louisiana is not the proper forum for the adjudication of the claims asserted by Plaintiffs against Banner PSL. Pursuant to 28 U.S.C. §

CASE NO.: 11-252
SECT. L MAG. 2

1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Moreover, pursuant to 28 U.S. § 1406(a), when venue is improper, the court may dismiss the action, or, in the interests of justice, transfer the case to the district or division in which it could have been brought.

As indicated above, it is Banner PSL's position that the Eastern District of Louisiana cannot exercise personal jurisdiction over Banner PSL. In a diversity action, a corporation resides in any judicial district in which it is subject to personal jurisdiction when the action is commenced and, accordingly, the Eastern District of Louisiana is an improper venue for any and all claims brought against Banner PSL. See 28 U.S.C. § 1391(c). The Affidavit demonstrates, and Plaintiffs are unable to refute, that none of the activities allegedly engaged in by Banner PSL and giving rise to the claims set forth in the Complaint occurred in Louisiana and none of the products sold and/or distributed by Banner PSL ended up in Louisiana. See Exhibit A. In the event that this Court does not dismiss the Complaint for lack of personal jurisdiction, the convenience of the parties and witnesses, and the interests of justice, require this case to be transferred to the United States District Court for the Middle District of Florida where Banner PSL's principal place of business is located. This case should be dismissed for improper venue or, in the alternative, transferred.

PETERSON & ESPINO, P.A.

IV.

## PLAINTIFFS' COMPLAINT FAILS TO STATE A CAUSE OF ACTION AGAINST BANNER PSL AND SHOULD BE DISMISSED

A.

*Legal Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556). Furthermore, a complaint should be dismissed if it constitutes nothing more than a "shotgun pleading," in which each count incorporates all preceding paragraphs. Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (finding that the complaint was a shotgun pleading, because each count incorporated nearly all preceding paragraphs and, as a result, "each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.").

B.

*Plaintiffs' Class Action Complaint should be dismissed as an Impermissible Shotgun Pleading*

A shotgun pleading is "[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading." Lampkin-Asam v. Volusia Cnty. Sch. Bd., 261 F.App'x 274, 277 (11th Cir. 2008) (citing Byrne v. Nezhat, 261 F.3d 1075, 1128-29 (11th Cir. 2001)). "Pleadings of this nature are prohibited by Rule 8(a)(2), which requires . . . 'a short and plain statement of claim showing that the pleader is entitled to relief.'" Id. (quoting FED. R. CIV. P. 8(a)(2)).

A review of the Complaint reveals that it contains 14 causes of action and 577 paragraphs. The first 453 paragraphs of the Complaint contain allegations of fact that are adopted in full in Counts I through XIV of the Complaint.[2] Each of these causes of action contains factual allegations in addition to those set out in the first 453 paragraphs. As a result, factual allegations that may be relevant to one cause of action, but not another, are incorporated into each of these causes of action and include immaterial factual allegations, which preclude Banner PSL from reasonably responding to these allegations. Moreover, Plaintiffs' separate causes of action adopt and restate "the preceding paragraphs as if fully set forth herein." See ¶¶ 454 (Count I), 462 (Count II), 469 (Count III), 487 (Count IV), 495 (Count V), 507 (Count VI), 514 (Count VII), 518 (Count VIII), 525 (Count IX), 535 (Count X), 549 (Count XI), 556 (Count XII), 560 (Count XIII) and 565 (Count XIV). Because each count incorporates all preceding paragraphs, Plaintiffs' Complaint should be dismissed as a shotgun pleading. See Magluta, 256 F.3d at 1284; see also Greif v. Jupiter Med. Ctr., Case No.: 08-80070-CIV, 2008 WL 2705436, *4 (S.D. Fla. 2008) (dismissing shotgun complaint and instructing that "[a]lthough other

---

[2]   Banner PSL is referenced only twice in the first 453 paragraphs of the Complaint. In fact, aside from these two allegations, Banner PSL is not specifically referenced again in Plaintiffs' entire Complaint.

PETERSON & ESPINO, P.A.

CASE NO.: 11-252
SECT. L MAG. 2

numbered paragraphs may be incorporated by reference, this must be done with particular care
so that only relevant paragraphs are referenced.").

C.

### Plaintiffs Complaint Violates Rule 8(a)(2) of the Federal Rules of Civil Procedure

Plaintiffs have failed to properly plead a cause of action against Banner PSL because
Plaintiffs improperly lump all Defendants together in Counts I through XIV in violation of Rule
8 of the Federal Rules of Civil Procedure. See Compl. ¶¶ 462-577. Under Rule 8(a)(2), when a
complaint alleges that multiple defendants are liable for multiple claims, and does not distinguish
the acts done by a particular defendant, the court must determine whether the complaint gives
adequate notice to each defendant of the claims against it. Pro Image Installers, Inc. v. Dillon,
No. 3:08-CV-273, 2009 WL 112953, *2 (N.D. Fla. Jan. 15, 2009). Numerous courts have held
that the practice of lumping all defendants together and making general allegations against the
group does not provide each defendant with fair notice of the claims against them, and, therefore,
does not withstand the requirements of Rule 8(a)(2). See Atuahene v. Hartford, 10 F. App'x 33,
34 (2d Cir. 2001); see also Pierson v. Orlando Reg'l Healthcare Sys., Inc., 619 F. Supp. 2d 1260
(M.D. Fla. 2009). Granting a motion to dismiss is an appropriate remedy for such a violation of
Rule 8(a)(2). Pro Image Installers, Inc., 2009 WL 112953, at *2 (citing Atuahene, 20 F. App'x
at 34).

In the instant action, Plaintiffs have alleged fourteen (14) counts against multiple
Defendants, including violations of consumer protections acts, by simply lumping together all
Defendants in their conclusory allegations in Counts I through XIV. While Plaintiffs allege
Banner PSL "is a[n] importer, exporter, distributor, supplier or broker of drywall and related
building products that engaged in these practices" (see Compl. ¶ 304), Plaintiffs neither allege

CASE NO.: 11-252
SECT. L MAG. 2

what "practices" Banner PSL allegedly engaged in, nor do Plaintiffs specify in what capacity Banner allegedly engaged in such undefined "practices." See Complaint. The Complaint is devoid of any allegations establishing that Banner delivered allegedly defective Chinese-manufactured drywall to any of the Plaintiffs addresses enumerated in Paragraphs 6 through 308 of the Complaint. Because Plaintiffs improperly lump together all Defendants throughout the Complaint such that Banner PSL cannot be on notice of the claims against it, Plaintiffs' Complaint fails to state a cause of action against Banner PSL, and should be dismissed.

D.

### Plaintiffs have Failed to Allege Satisfaction with All Conditions Precedent

In pleading conditions precedent, the Federal Rules of Civil Procedure require only that conditions precedent be alleged "generally." FED. R. CIV. P. 9(c); accord Fitz-Patrick v. Commonwealth Oil Co., 285 F.2d 726, 729-30 (5th Cir. 1960) (sufficient to allege that "all conditions precedent have been performed or have occurred"); Atl. Tech Sys., LLC v. Advanced Lifts & Elevators, Inc., No. 08-81376-CIV, 2009 WL 1211003, at *2 (S.D. Fla. May 4, 2009) (sufficient to allege all conditions precedent have been met).

The causes of action asserted by Plaintiffs against Banner PSL require satisfaction of various statutory prerequisites in order to adequately state a claim. See, e.g., § 558.004, Fla. Stat. (2010) ("In actions brought alleging a construction defect, the claimant shall, at least 60 days before filing an action . . . serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable."). Nowhere in the 577 paragraphs comprising the Complaint do Plaintiffs allege that it complied with section 558.004, Florida Statutes, or otherwise demonstrate that all conditions precedent to filing this action have been met or waived. Banner PSL recognizes the liberality of the Federal Rules of Civil Procedure in connection with

pleading the satisfaction of conditions precedent. The Complaint, however, cannot be said to meet the requirements of Rule 9(c) where Plaintiffs have failed to even include the generalized allegations upheld by the courts in Fitz-Patrick and Atl. Tech Sys., LLC. See id. Plaintiffs' failure to plead satisfaction of all conditions precedent renders the Complaint legally insufficient and subject to dismissal.

E.

### *Plaintiffs' Claim for Negligence Should be Dismissed for Failure to State a Claim*

In Count I of the Complaint, Plaintiffs attempt to assert a claim for negligence against Banner PSL. In order to state a cause of action for negligence, Plaintiffs must allege that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; and (3) the breach caused the plaintiff damages. See Fla. Dep't of Corrs. V. Abril, 969 So. 2d 201, 204-05 (Fla. 2007) (internal citations omitted); see also Hansenfus v. Secord, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (applying Florida law) ("Failure to establish any one of these elements is fatal to the plaintiff's case."). The Complaint alleges Banner PSL somehow owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k) selling" the drywall at issue. See Compl. ¶ 455. The Complaint further alleges Banner PSL has a duty to provide Plaintiffs with certain warnings about the allegedly defective Chinese-manufactured drywall. See Compl. ¶¶ 455, 458.

Plaintiffs have failed to allege any ultimate facts in Count I of the Complaint to support their claim for negligence. See Dejernette v. M.D. Moody & Sons. Inc., 140 So. 2d 76, 77 (Fla. 2d DCA 1962) (properly sustaining motion to dismiss where complaint alleged only that defendant failed to make a reasonable inspection and failed to discover the defect without

CASE NO.:  11-252
SECT. L MAG. 2

alleging specific facts as to how defendant failed to make a reasonable inspection and failed to discover the alleged defect).  Banner PSL, as a mere supplier in the chain of distribution of the allegedly defective drywall, did not "design," "manufacture," or "import" any drywall.  In the absence of specific allegations demonstrating how Banner PSL negligently supplied the drywall at issue, and failed to properly inspect the drywall so as to discover the alleged defect, Count I of the Complaint should be dismissed, or, in the alternative, Plaintiffs should be required to comply with the pleading requirements under Florida law.  See Dejernette, 140 So. 2d at 77 ; see also Hansenfus, 962 F.2d at 1560-61.

Furthermore, aside from the fact that the allegations in Count I of the Complaint are insufficient as a matter of law, Florida cases uniformly hold that Banner PSL, as a mere distributor of a product that is not inherently dangerous, owes no duty to inspect or to warn for hidden defects.  See generally Craig v. Baker & Holmes Co., 96 So. 2d 94 (Fla. 1923); see also Odum v. Gulf Tire & Supply Co., 196 F. Supp. 35 (N.D. Fla. 1961).  Drywall obviously does not fit into the narrow "inherently dangerous" category, and the Complaint does not allege otherwise.  The court in Odum specifically opined:

> The retailer or wholesaler who does nothing more than transfer the goods from one place to another is in no greater position to determine whether there are hidden defects in such an article, and has no greater means for making such inspection than the purchaser or other third person.

Id. at 36.   Banner PSL, as a mere distributor of the allegedly defective Chinese-manufactured drywall, owes no duty to Plaintiffs to inspect or to warn for latent defects.  As such, Banner PSL could not have breached a legally non-existent duty giving rise to a claim for negligence.  See Superior Garlic Int'l v. E&A Produce Corp., 913 So. 2d 645 (Fla. 3d DCA 2005); see also Stahl v. Metro. Dade Cnty., 438 So. 2d 14 (Fla. 3d DCA 1983).   The boilerplate, and wholly

- 13 -
PETERSON & ESPINO, P.A.

CASE NO.: 11-252
SECT. L MAG. 2

unsupported assertion that Banner PSL "knew or should have known" the drywall would harm Plaintiffs (see Complt. ¶ 460), is a legal conclusion that cannot possibly salvage a negligence claim, especially one that flies in the face of basic principles of Florida law. Count I of the Complaint should, therefore, be dismissed.

F.

_Plaintiffs have not stated a claim for Negligence Per Se_

Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a particular class of persons from a particular type of injury." DeJesus v. Seaboard Coast Line R.R. Co., 281 So. 2d 198, 201 (Fla. 1973). Plaintiffs have failed to state a cause of action for negligence per se because they have not identified a statute that Banner PSL allegedly violated, much less explained how that violation occurred. Rather, the Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes." See Compl. ¶ 465. Such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. Ashcroft, 129 S.Ct. at 1949.

In addition, because the "State and local Building Codes" that Banner PSL allegedly violated are "designed to protect the _general public_ rather than a particular class of individuals," the violation of a building code cannot possibly form the basis of a claim for negligence per se. Russ v. Wollheim, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). Count II of the Complaint should, therefore, be dismissed.

- 14 -

PETERSON & ESPINO, P.A.

G.

## *Plaintiffs' Claim for Strict Liability Should be Dismissed as a Matter of Law Since the Doctrine of Strict Liability Does Not Apply to Structural Improvements to Real Property*

In Count III of the Complaint, Plaintiffs attempt to state a cause of action for strict liability against Banner PSL. Florida law is well settled that the doctrine of strict products liability does not apply to structural improvements to real estate, such as a home, because a home is not a product. See Easterday v. Masiello, 518 So. 2d 260, 261 (Fla. 1988); see also Virgilio v. Ryland Group, Inc., 695 F. Supp. 2d 1276 (M.D. Fla. 2010) (holding that "a home is not a product" for purposes of strict products liability). In determining whether something constitutes a "product" or a "structural improvement to real property" with regard to products liability actions, courts will look at several factors, including: (1) whether the structure can be disassembled and resold; (2) whether the item adds value to the property; (3) whether the item is intended to enhance the property's value, beauty, or utility; and (4) whether the item is available for purchase in the sense that it is offered in the stream of commerce. See Plaza v. Fisher Dev., Inc., 971 So. 2d 918, 920 (Fla. 3d DCA 2007); see also Easterday, 518 So. 2d at 261.

In their Complaint, Plaintiffs allege that the drywall at issue is a defective building component because it has damaged certain building materials and items within the Plaintiffs' residences. See Compl. ¶¶ 426-431. Because the Chinese-manufactured drywall is an integral part of the subject property into which it was installed, it is considered a "structural improvement" to real property. See Plaza, 971 So. 2d at 922-24 (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); see also Neumann v. Davis Water and Waste, Inc., 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (dismissing claim against installer of treatment tank as an integral part of sewage facility); Foreline Sec. Corp. v. Scott, 871 So. 2d 906 (Fla. 5th DCA 2004) (rejecting contention that a

- 15 -

security system installed in a bank is a "product" and not a "structural improvement").

Accordingly, Plaintiffs' claim for strict liability against Banner PSL must fail. Likewise, since

there are absolutely no allegations in the Complaint that the drywall: (1) can be disassembled and

resold, (2) adds value to the property; (3) is intended to enhance the property's value, beauty, or

utility; and (4) is available for purchase in the sense that it is offered in the stream of commerce,

there can be no dispute that the allegedly defective drywall is a structural improvement to real

property and, as such, is not subject to the strict products liability doctrine. See Plaza, 971 So.

2d at 920. Plaintiffs' claim for strict liability against Banner PSL in Count III of the Complaint

should, therefore, be dismissed.

H.

### *As a Supplier, Banner PSL has no Duty to Warn and Plaintiffs' Strict Liability Claims Cannot be Predicated Upon a Duty that Does not Exist as a Matter of Law*

In Count III of the Complaint, Plaintiffs allege that "[T]he drywall is also problematic

and unreasonably dangerous because Defendants failed to adequately warn and instruct Class

Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of

the drywall." See Compl. ¶ 483. As set forth with more particularity above, Florida cases

uniformly hold that Banner PSL, as a mere distributor of a product that is not inherently

dangerous, owes no duty to inspect or to warn for hidden defects. See generally Craig, 96 So. 2d

at 94; see also Odum, 196 F. Supp. at 36. Drywall obviously does not fit into the narrow

"inherently dangerous" category, and the Complaint does not allege otherwise. Banner PSL, as a

mere distributor of the allegedly defective Chinese-manufactured drywall, owes no duty to

Plaintiffs to inspect or to warn for hidden defects. As such, Plaintiffs cannot predicate their

claims that the drywall was defective and unreasonably dangerous on that basis. See Superior

Garlic Int'l v. E & A Produce Corp., 913 So. 2d 645 (Fla. 3d DCA 2005); see also Stahl v.

CASE NO.: 11-252
SECT. L MAG. 2

Metro. Dade Cnty., 438 So. 2d 14 (Fla. 3d DCA 1983).   Count III of the Complaint should,

therefore, be dismissed.

I.

_Plaintiff' Complaint Fails to Assert Privity Between Banner PSL and Plaintiffs Thereby
Precluding Claims for Breach of Express Warranty and Breach of Implied Warranty_

In Count IV of the Complaint, Plaintiffs attempt to assert a claim against Banner PSL for

breach of express and/or implied warranties.   A plaintiff must be in privity of contract with the

defendant in order to state a cause of action for breach of warranty.[3]   T.W.M. v. Am. Med. Sys.,

Inc., 886 F. Supp. 842 (N.D. Fla. 1995) (applying Florida law and holding that the recipient of

allegedly defective product did not state a cause of action for breach of express warranty or

breach of implied warranties of merchantability and fitness for particular purpose absent any

allegation that he purchased the product directly from the manufacturer or contracted with the

manufacturer).   This is because "[a] warranty, whether express or implied, is fundamentally a

contract.   A contract cause of action requires privity."   T.W.M., 886 F. Supp. at 844 (citations

omitted).   A plaintiff who purchases a product, but does not buy it directly from the defendant, is

not in privity with that defendant.   White & Summers, UNIFORM COMMERCIAL CODE § 11-2, at

528 (3rd ed. 1988).

An express warranty generally arises "where [a] seller asserts a fact of which the buyer is

ignorant prior to the beginning of the transaction," and the fact is relied upon by the buyer as the

"basis of the bargain."   Thursby v. Reynolds Metal Co., 466 So. 2d 245, 250 (Fla. 1st DCA

1984).   Plaintiffs' Complaint is devoid of any facts indicating Plaintiffs relied on any purported

---

[3]   It is true "that an action [for breach of warranty] may be brought against a manufacturer notwithstanding want of privity."   Manheim v. Ford Motor Co., 201 So. 2d 440, 441 (Fla. 1967).   However, because Banner PSL is not the manufacturer of the allegedly defective Chinese manufactured drywall, but only a supplier, Plaintiffs must _properly_ allege that the parties are in privity in order to survive Banner PSL's Motion to Dismiss.

PETERSON & ESPINO, P.A.

CASE NO.: 11-252
SECT. L MAG. 2

express warranties of the undifferentiated defendants.   Indeed, Plaintiffs cannot show the existence of reliance on any specific affirmations of fact, descriptions, samples or models of the drywall allegedly made or supplied by Banner PSL since Plaintiffs were not in contractual privity with Banner PSL.  See Spolski Gen. Contractor, Inc. v. Jett-Air Corp. Aviation Mgmt. of Cent. Fla., Inc., 637 So. 2d 968, 970 (Fla. 5th DCA 1994) (holding that paint manufacturer could not be held liable to the general contractor for breach of express warranty where there was no sale from the manufacturer to contractor, no privity between them, no contract between them, no reliance on contractor on any warranty, and no warranty was given to contractor).  Plaintiffs have failed to allege any facts in their Complaint indicating that they purchased the allegedly defective Chinese-manufactured drywall from Banner PSL, that Banner PSL and Plaintiffs were in privity of contract, that the contract contained an express warranty, or that Plaintiffs relied on that express warranty.  Count IV of the Complaint should, therefore, be dismissed.

Likewise, in Count IV of the Complaint, Plaintiffs attempt to assert a claim against Banner PSL for alleged breaches of implied warranties of merchantability and fitness for a particular purpose.   Florida law also requires privity of contract to maintain an action for breach of an implied warranty.  See Ocana v. Ford Motor Co., 992 So. 2d 319, 325 (Fla. 3d DCA 2008). Plaintiffs have failed to allege that they were in privity with Banner PSL.  Accordingly, Plaintiffs have failed to state a cause of action against Banner PSL for breach of the implied warranties of merchantability or fitness for a particular purpose, and Count IV of the Complaint should be dismissed.

Finally, in order to state a cause of action for breach of implied warranty of fitness for a particular purpose and to survive a motion to dismiss, a plaintiff must "allege a particular or unusual use different from the purpose for which the item sold is ordinarily used."  Fred's

Excavating & Crane Serv., Inc. v. Cont'l Ins. Co., 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976). In their Complaint, Plaintiffs have failed to allege that the allegedly defective Chinese-manufactured drywall was going to be used for a particular or unusual use distinct from the purpose for which the item was sold, or that the seller had reason to know the supposed "particular purpose" for which the drywall was purchased.  In fact, in Paragraph 491 of the Complaint, Plaintiffs assert that "the drywall functions according to its intended purpose as a building component."  See Compl. ¶ 491.  Plaintiffs cannot, therefore, state a claim under a theory of breach of the implied warranty of fitness for a particular purpose when the allegations in the Complaint, taken as true, admit that the allegedly defective drywall was warranted for its ordinary use and purpose.  Furthermore, because Plaintiffs have failed to allege that they were in privity with Banner PSL, Plaintiffs could not have made the alleged "particular purpose" known to Banner PSL, and Plaintiffs could not have relied on Banner PSL's judgment with regard to the drywall's suitability for that "particular purpose."  Accordingly, Plaintiffs' unsubstantiated claims are insufficient to state a cause of action for breach of the implied warranty of fitness for a particular purpose and, therefore, Count IV of the Complaint should be dismissed.

J.

### Plaintiffs Cannot State a Claim for Private Nuisance Against Banner PSL as a Matter of Law

The underlying policy of private nuisance jurisprudence does not support the Plaintiffs' claim for private nuisance.  In a recent Omnibus Order on Pending Motions to Dismiss (the "Omnibus Order") entered on November 5, 2010 by the Honorable Glenn Kelley in the matter styled Marlene Bennett v. Centerline Homes, et. al., Case No.: 50 2009 CA 014458, pending in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Judge Kelley considered, addressed and analyzed whether a plaintiff can state a claim for a private

nuisance where he or she alleges that the Chinese-manufactured drywall is off-gassing and thereby causing a nuisance within the affected home. A true and correct copy of the Omnibus Order is attached hereto as Exhibit "B" and specifically incorporated herein by reference. The Omnibus Order and the legal authority relied upon by Judge Kelley in entering the Omnibus Order dismissing plaintiffs' private nuisance claim is instructive in these proceedings, and Banner PSL respectfully suggests to this Court that Count XI of the Complaint should be dismissed for the very same reasons enunciated by Judge Kelley in the Omnibus Order.

Judge Kelley relied on well established Florida legal precedent in recognizing that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. Jones v. Trawick, 75 So. 2d 785, 787 (Fla. 1954) (stating "[t]his court recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another") (citing Reaver v. Martin Theatres of Florida, Inc., 52 So. 2d 682 (Fla. 1951). In their Complaint, Plaintiffs allege that the Defendants' "tortuous or wrongful acts or omissions have . . . unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties." See Compl. ¶ 550. Plaintiffs further allege that Banner PSL's "interference has impaired the rights of the Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property." See id. at ¶ 551. Plaintiffs, however, have not, nor can they ever, allege that their claims are "contemporaneous disputes" between "adjoining landowners" as required by Florida law since, simply stated, Banner PSL is not an adjoining landowner. See Beckman v. Marshall, 85 So. 2d 552, 555 (Fla. 1956). In this case, as in the Bennett case

pending before Judge Kelley, neither Florida law, nor the "policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance." See Exhibit B.

On February 11, 2011, The Honorable Peter M. Weinstein, Circuit Court Judge for the Seventeenth Judicial Circuit in and for Broward County, Florida, followed Judge Kelley's ruling in the case styled <u>Dario Orlando, et al. v. Banner Supply Co., et al.,</u> Case No.: 10-28090 (12) and entered the Order on Defendant Banner Supply Company Port St. Lucie, L.L.C.'s Motion to Dismiss First Amended Class Action Complaint dismissing plaintiffs' private nuisance claims ***with prejudice***.  A true and correct copy of the Order is attached hereto as Exhibit "C" and specifically incorporated herein by reference.  For the same reasoning and analysis adopted by Judge Kelley and Judge Weinstein in the attached Orders, this Court should dismiss Count XI of the Complaint with prejudice.

K.

<u>*The Complaint Fails to Allege that Plaintiffs Conferred a Direct Benefit Upon Banner PSL,*
*Precluding Plaintiffs' Claim for Unjust Enrichment*</u>

In Count XII of the Complaint, Plaintiffs attempt to assert a claim against Banner PSL for unjust enrichment.  The elements of a cause of action for unjust enrichment are: (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.  See <u>Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.,</u> 667 So. 2d 876 (Fla. 3d DCA 1996) (citing <u>Hillman Constr. Corp. v. Wainer,</u> 636 So. 2d 576 (Fla. 4th DCA 1994).

In <u>Extraordinary Title Services, LLC v. Florida Power & Light Co.,</u> 1 So. 3d 400 (Fla. 3d DCA 2009), an electrical utility customer brought a purported class action against Florida Power

- 21 -

CASE NO.: 11-252
SECT. L MAG. 2

& Light Company ("FPL") and its parent company, FPL Group, Inc. ("Group"), alleging that FPL violated the Florida Deceptive and Unfair Trade Practices Act by collecting federal corporate taxes from customers that were not in fact paid to the government, and that Group was unjustly enriched by this practice. The court, however, affirmed the trial court's dismissal with prejudice of the unjust enrichment claim asserted against Group, specifically noting that because the plaintiff contracted with FPL—not Group—for electricity, plaintiff paid FPL—not Group—and Group provided no services to the plaintiff, the plaintiff cannot allege nor establish that it conferred a direct benefit upon Group.

In the instant action, as in Extraordinary Title, the Complaint indicates that Plaintiffs had absolutely no relationship with Banner PSL and has not directly conferred a benefit upon Banner PSL, negating an equitable claim for unjust enrichment. Plaintiffs admit in their Complaint that they entered into building contracts with various developers and/or builders to acquire a home and never purchased the Chinese-manufactured drywall directly from Banner PSL. The Complaint, therefore, is devoid of any factual support that Plaintiffs contracted with Banner PSL, that Plaintiffs purchased the drywall directly from Banner PSL, or that Banner PSL provided any service to Plaintiffs. Banner PSL is but a mere supplier in a chain of merchants who Plaintiffs claim supplied the allegedly defective drywall. Plaintiffs, therefore, as the plaintiff in Extraordinary Title, cannot allege or establish that they conferred any direct benefit upon Banner PSL in the form of payment or otherwise. Extraordinary Title Servs., LLC, 1 So. 3d at 404. As a result, Count XII fails to state a cause of action against Banner PSL for unjust enrichment and should be dismissed with prejudice.

CASE NO.: 11-252
SECT. L MAG. 2

L.

*Plaintiffs' FDUTPA Claim Should be Dismissed since the Allegations in Count XIII are not Pled with Particularity and Plaintiffs' are Impermissibly Seeking Consequential and Incidental Damages*

In Count XIII of the Complaint, Plaintiffs attempt to assert a claim against Banner PSL for alleged violations of "various consumer Protection Acts," including FDUTPA.  In order to state a claim for damages under FDUTPA, Plaintiffs must plead, at a minimum, the following elements: (1) a deceptive act or practice; (2) causation; and (3) actual damages.  Sundance Apartments I, Inc. v. Gen. Elec. Capital Corp., 581 F. Supp. 2d 1215 (S.D. Fla. 2008).  Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure.  See FED. R. CIV. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). "In light of this trend, *claims arising under the FDUTPA must be pled with particularity.*" See Wrestlereunion, LLC v. Live Nation TV Holdings, Inc., No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (internal citations omitted) (emphasis added).  At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001); see also Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

Plaintiffs' Complaint falls far short of this heightened pleading standard.  Indeed, Plaintiffs have failed to allege that: (1) Banner PSL engaged in unfair or deceptive trade

practices in the course of trade or commerce; (2) Plaintiffs were aggrieved by such unfair or deceptive trade practices; and (3) Plaintiffs suffered damages as a result of such practices. Instead, Plaintiffs generally allege that "[t]he Defendants' acts and omissions . . . constitute violations of the Consumer Protection Acts of the Relevant States." See Compl. ¶ 562. The Complaint does not identify a single instance in which Banner PSL—by its words or conduct—deceived Plaintiffs or treated them unfairly. Such conclusory allegations do not satisfy the requirement of "particularity" embodied in Rule 9(b). See Fla. Digital Network, Inc. v. N. Telecom, Inc., No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUPTA claim that failed to allege "specific facts" as mandated by Rule 9(b)). What is more, when alleging fraudulent conduct and statements, a plaintiff may not lump together defendants when it will obscure the identity of the party that has committed the alleged act. See Centrifugal Air Pumps Austl. v. TCS Obselete, LLC, No. 6:10-CV-820, 2010 WL 3584948, at *2 (M.D. Fla. Sept. 9, 2010) (criticizing the practice of "lumping" when it rendered "the factual underpinnings of the [c]omplaint practically incomprehensible" and created a conflicting description of events). This is precisely what Plaintiffs have done here and, as such, a reasonable person reading the allegations contained in Count XIII of the Complaint cannot determine which acts and/or omissions—whether it be the "failure to disclose the source, affiliation, origin, characteristics, ingredients, standards [or] quality" of the drywall at issue (see Compl. ¶ 562)—Plaintiffs are attributing to Banner PSL. Plaintiffs should be required to allege these and other similarly vague allegations with specificity. See Great Fla. Bank v. Countrywide Home Loans, Inc., No. 10-22124-CIV, 2011 WL 382588, *3 (S.D. Fla. Feb. 3, 2011) (finding plaintiff improperly lumped together defendants "in a way that obscures the identity of the party or parties that are alleged to have actually committed the fraudulent actions."). Plaintiffs'

unsubstantiated allegations regarding the facts giving rise to their alleged claims under FDUPTA and their damages are insufficient to state a claim against Banner PSL as a matter of law, and Count XIII of the Complaint should, therefore, be dismissed.

In addition, Section 501.212(3), Florida Statues, specifically provides that FDUPTA "does not apply to . . . a claim for damage to property other than the property that is the subject of the consumer transaction." Accordingly, under FDUPTA, the term "actual damages" does not include special or consequential damages. See Smith v. 2001 S. Dixie Highway, Inc., 872 So. 2d 992, 994 (Fla. 4th DCA 2004) (where plaintiff improperly sought consequential damages in her FDUPTA claim—rather than actual damages in relation to the value of the car she purchased—dismissal with prejudice was proper); see also Barrow v. Bristol-Myers Squibb Co., No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury). Because Banner PSL allegedly provided a product—namely, the supply of drywall—Plaintiffs can establish "actual damages" *only* by showing a difference between the "market value" of the product that Banner PSL actually provided and the product that Banner PSL was required to provide. See Collins v. Daimler-Chrysler Corp., 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties" (internal citations omitted)).

The subject of Plaintiffs transaction under its claim for violation of FDUPTA is the purchase of the drywall, and, therefore, the proper measure of damages is the difference between the market value of the drywall, as delivered, and its market value as it should have been delivered. Plaintiffs, however, fail to set forth facts indicating Plaintiffs had any relationship

CASE NO.: 11-252
SECT. L MAG. 2

with Banner PSL or that Banner PSL made any representation to Plaintiffs. Specifically, the Complaint does not evidence the existence of any supply orders or invoices demonstrating that Banner PSL distributed, supplied or sold Plaintiffs the allegedly defective drywall that was installed in any of Plaintiffs' residences. Accordingly, Banner PSL could not have committed an unfair or deceptive or deceptive act or practice which caused damage to Plaintiffs. See Rollins, Inc. v. Heller, 454 So. 2d 580, 584-85 (Fla. 3d DCA 1984) (holding damages awarded pursuant to a violation of FDUPTA must be limited to the "actual damage related to the system and services [the defendant] contracted to provide").

Finally, because each cause of action incorporates all preceding paragraphs in Plaintiffs' Complaint, Count XIII is wrought with allegations that, on their very face, seek unrecoverable damages under FDUTPA. Paragraph 435 of the Complaint alleges damages resulting from "the costs of inspection; costs and expenses necessary to remedy, replace and remove the problematic drywall and other property that has been inspected; lost value or devaluation of their homes, residences or structures and property . . . loss of use and enjoyment of their home and property; and/or damages associated with personal injuries. See Compl. ¶ 435. Plaintiffs' improper efforts to seek consequential and incidental damages as a result of the installation of allegedly defective Chinese-manufactured drywall are fatal to their FDUTPA claim. See Smith, 872 So. 2d at 994. Plaintiffs' blatant reference to "other property" in their claim for damages (see Compl. ¶ 435) is in complete derogation of section 501.211(3), Florida Statutes, which specifically prohibits recovery of "damage to property other than the property that is the subject of the consumer transaction." § 501.211(3), Fla. Stat. Accordingly, Plaintiffs have failed to state a cause of action under section 501.211, Florida Statutes, as a matter of law, and Count XIII should, therefore, be dismissed.

CASE NO.: 11-252
SECT. L MAG. 2

## M.

### *Plaintiffs' Complaint Fails to Adequately Allege a Claim for Equitable and Injunctive Relief and Medical Monitoring*

Count XIV of the Complaint is titled "Equitable and Injunctive Relief and Medical Monitoring." Plaintiffs seek to "buy back or rescind" its contracts and "create, fund, and support a medical monitoring program." See Compl. ¶ 568.

### 1. Equitable and Injunctive Relief

To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury, (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally. See, e.g., Tucker v. Citigroup Global Mkts. Inc., No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007). Plaintiffs have failed to allege any of the elements required to properly state a cause of action for equitable and injunctive relief. In fact, by repeating and readopting all preceding counts, Plaintiffs admit the existence of their adequate legal remedies which, by operation of law, vitiate any claims that Plaintiffs may have to equitable relief. Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint are inadequate or why Plaintiffs should be entitled to the extraordinary remedy of an injunction. See, e.g., *Gate v.* Oldham, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); accord City of Meridian v. Algernon Blair, Inc., 721 F.2d 525, 529 (5th Cir. 1983). Count XIV of the Complaint for equitable relief should, therefore, be dismissed.

### 2. Medical Monitoring

Count XIV of the Complaint also seeks to establish a medical monitoring fund for the cost of medical care received to determine any personal injuries to Plaintiffs. In Petito v. A.H.

- 27 -

PETERSON & ESPINO, P.A.

Robbins Company, Inc., 750 So. 2d 103 (Fla. 3d DCA 1999), the court held that a court of equity may establish a medical monitoring plan under prescribed circumstances to assess the condition of plaintiffs.  The Court in Petito held that the plaintiffs must establish the following elements in order to establish a claim for a medical monitoring fund: (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has significantly increased risk of contacting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles." Id. at 106-07 (citing Barnes v. Am. Tobacco Co., 161 F.3d 127, 138-39 (3d Cir.1998).  The Complaint is simply devoid of any of these allegations.

Furthermore, in Jacobs v. Osmose, No. 01-944-CIV, 2002 WL 34241682 (S.D. Fla. Jan. 3, 2002), the plaintiff alleged entitlement to the establishment of a medical monitoring fund because he had been exposed to the hazardous chemicals in treated wood.  Id. at *3.  The only factual allegation concerning the plaintiff's exposure to treated wood was that his deck was comprised of the allegedly hazardous substances." Id.  The court found the complaint alleged insufficient facts surrounding the plaintiff's exposure to treated wood or his entitlement to a medical monitoring fund. Id.  In particular, the court stated the Complaint "does not adequately provide the defendants with sufficient notice of how the plaintiff was exposed to the allegedly hazardous substances." Id.

In their Complaint, Plaintiffs generally allege that they "have been exposed to greater than normal levels of sulfur compounds as a result of exposures to Defendants' problematic and

unfit drywall and have suffered personal injuries as well." See Compl. ¶ 570.  Analogous to the court's reasoning in Jacobs, Plaintiffs' conclusory allegations surrounding their exposure to the allegedly defective drywall are insufficient for purposes of stating a claim against Banner PSL for the establishment of a medical monitoring fund.   In the absence of specific allegations demonstrating how Plaintiffs were exposed to the allegedly defective Chinese-manufactured drywall, Count XIV of the Complaint should be dismissed, or, in the alternative, Plaintiffs should be required to comply with the pleading requirements set forth in Petito and Jacobs.  See Petito, 750 So. 2d at 106-07; see also Jacobs, 2002 WL 34241682 at *3.

## IV.

## CONCLUSION

For the foregoing reasons and the legal authority cited herein, Defendant, BANNER SUPPLY COMPANY PORT ST. LUCIE, LLC, respectfully requests that this Court enter an order: (1) dismissing the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); (2) dismissing the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); (3) in the alternative, dismissing the Complaint for improper venue in accordance with Federal Rule of Civil Procedure 12(b)(3) and transferring venue of this action to the Unites States District Court for the Southern and/or Middle District of Florida; (4) and for such other and further relief that this Court deems just and proper.

PETERSON & ESPINO, P.A.

CASE NO.: 11-252
SECT. L MAG. 2

Respectfully submitted,

PETERSON & ESPINO, P.A.
Attorneys for Banner Supply Company Port
St. Lucie, LLC
10631 Southwest 88th Street, Suite 220
Miami, Florida 33176
Telephone:     (305) 270-3773
Facsimile:     (305) 275-7410
mpeterson@petersonespino.com

By:     /s/ Michael P. Peterson
        Florida Bar No. 982040

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Motion to Dismiss and Incorporated Memorandum of Law of BANNER SUPPLY COMPANY PORT ST. LUCIE, LLC has been served on Liason Counsel by e-mail and upon all Chinese Drywall parties by electronically uploading same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 6 on this 3rd day of March, 2011. I further certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 3rd day of March, 2010.

By:     /s/ Michael P. Peterson

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

DANIEL ABREU, et al.,

      Plaintiffs,

vs.

GEBRUEDER KNAUF
VERWALTUNGSGESELLSSCHAFT,
KG, et al.

      Defendants.

_____/

CASE NO.: 11-252
SECT. L MAG. 2

CLASS ACTION COMPLAINT

**CHINESE DRYWALL**

## AFFIDAVIT OF SCOTT K. GIERING

1.     My name is Scott K. Giering.  I was the Controller of Banner Supply Company Port St. Lucie, LLC ("Banner PSL") when Banner PSL was operational. I am over the age of eighteen (18) years, of sound mind and otherwise _sui juris_.  I have personal knowledge of the matters and facts contained in this Affidavit.

2.     I make this Affidavit on behalf of Banner PSL in connection with the lawsuit styled Daniel Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al., Case No. 11-252, Sect. L, Mag. 2 (hereinafter the "Lawsuit") filed in the United States District Court for the Eastern District of Louisiana.

3.     Banner PSL is no longer in operation.

4.     Banner PSL, while in operation, was a Florida corporation that maintained its only place of business in Port St. Lucie, Florida.

5.     Banner PSL, while in operation, was a building materials distributor.

6.     Banner PSL, while in operation, never conducted business outside of Florida.

7.     Banner PSL, while in operation,  never sold or delivered drywall to Daniel Abreu, or to any other person or entity in Louisiana.

8.     Banner PSL, while in operation, never sought a business license in Louisiana.

9.     Banner PSL, while in operation, was never licensed to conduct business in Louisiana.



10. Banner PSL, while in operation, never maintained a business listing, telephone number, or business address in Louisiana.

11. Banner PSL, while in operation, never owed any real property in Louisiana.

12. Banner PSL, while in operation, never maintained or operated any factories, warehouses, or offices in Louisiana.

13. Banner PSL, while in operation, never advertised its business in Louisiana.

14. Banner PSL, while in operation, never marketed or promoted the sale of any products in Louisiana.

15. Banner PSL, while in operation, never sold any products in Louisiana.

16. Banner PSL, while in operation, never maintained a bank account in Louisiana.

FURTHER AFFIANT SAYETH NAUGHT.

BANNER SUPPLY COMPANY PORT ST. LUCIE, LLC

By: _____

Scott K. Giering, as Controller

The foregoing instrument was acknowledged before me on this ⸱3⸱ day of March, 2011, by Scott K Giering, as Controller of BANNER SUPPLY COMPANY PORT ST. LUCIE, LLC who is personally known to me, or who has produced _____ as identification and who did take an oath.

_____
Notary Public, State of Florida
My Commission Expires:

Notary Public State of Florida
Esmi Oliva
My Commission DD978573
Expires 05/01/2014



IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARLENE BENNETT,

      Plaintiff,

vs.

CENTERLINE HOMES INC., et al.,

      Defendants.

_____/.

CASE NO. 50 2009 CA 014458
Civil Division "AA" Chinese Drywall

## OMNIBUS ORDER ON PENDING MOTIONS TO DISMISS

The Court has under consideration the following omnibus motions: 1) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Tort Claims Under the Economic Loss Rule and Claims for Private Nuisance (joined by the Albanese-Popkin defendants); 2) Banner Supply Company's Omnibus Opening Brief On Economic Loss Rule and Nuisance (joined by certain installer defendants); 3) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Strict Liability Claims. The omnibus motions now before the Court have been fully briefed, and were argued at scheduled case management conferences. Having reviewed the submissions of the parties, and having heard the argument of counsel, the Court makes the following findings.

### Economic Loss Rule

The first issue for consideration is the application of Florida's economic loss rule to the tort claims asserted by the homeowner plaintiffs. The Supreme Court discussed at length the origins and application of the economic loss rule in *Indemnity Insurance Company of North America v. American Aviation, Inc.*, 891 So.2d 532 (Fla. 2004).

1


EXHIBIT
13

The economic loss rule is a limitation on tort claims where the damages suffered are economic losses.   Economic losses are defined as damages for inadequate value, costs of repair and replacement of defective products, or loss of profits. *Id*. at 536; *see also, Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244 (Fla. 1993).  These damages are also described as the loss of the "benefit of the bargain" or "disappointed economic expectations." *Indemnity Insurance, id* at 536.

All of the parties here acknowledge that the economic loss rule would not bar a claim for personal injury caused by defective Chinese manufactured drywall.  Therefore, to the extent that the plaintiff homeowners are suing in tort for personal injury, the economic loss rule does not apply and such claims are not subject to dismissal.  The issue is whether- and to what extent - the economic loss rule bars the recovery of economic damages in the pending Chinese drywall cases.

The Supreme Court made clear in *Indemnity Insurance* that the economic loss rule applies in two distinct circumstances.  First, the rule applies to parties in contractual privity for matters arising out of the contract.  Second, the rule applies to liability for a defective product that causes damage to the product, but causes no personal injury or damage to other property.  Both applications of the rule must be examined here.

1.   Contractual Privity Economic Loss Rule

The defendant homebuilders assert that the plaintiff homeowners are barred from asserting tort claims for their economic losses based on the application of the contractual privity economic loss rule.  The Court agrees.

The Supreme Court in *Indemnity Insurance* explained the rational for application of the contractual privity economic loss rule as follows:

2

A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. *Indemnity Insurance, id* at 536-537.

The plaintiffs' tort claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Supreme Court.

There are recognized exceptions to application of the contractual privity economic loss rule. Independent torts such as fraud in the inducement are not barred by the economic loss rule. *HTP, Ltd. v. Lineas Aereas Costarrricenses, S.A.,* 685 So.2d 1238 (Fla. 1996). Claims for negligence in rendering professional services are not barred. *Moransais v. Heathman,* 744 So.2d 973 (Fla. 1999). Likewise, statutory claims are not barred by the economic loss rule. *Comptech Intern, Inc. v. Milan Commerce Park, Ltd.,* 753 So.2d 1219 (Fla. 1999).

None of the recognized exceptions apply here.[1] The damages sought by the plaintiff homeowners arise out of the contracts they entered with the defendant homebuilders. Traditional contract damages must be applied to the economic losses suffered by the plaintiffs.

---

[1] It is clear that homeowners are not exempt from the application of the economic loss rule on public policy grounds. *Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.,* 620 So.2d 1244, 1247 (Fla. 1993) (refusing to exempt homeowners from the economic loss rule despite their status as "an appealing, sympathetic class"). Moreover, the Court will not create an exception to the contractual privity economic loss rule based on an assertion that the drywall is an unreasonably dangerous product.

2. Products Liability Economic Loss Rule

The products liability economic loss rule applies in limited circumstances notwithstanding the absence of privity.    The rule applies when the product causes damage to itself, but causes no personal injury or damage to other property.    The issue here is whether the plaintiff homeowners' tort claims against the defendant suppliers and installers – who are not in privity with the plaintiffs - are barred by the economic loss rule.    The Court holds that such claims are not barred.

It appears clear from the Supreme Court's discussion in *Indemnity Insurance* that application of the products liability economic loss rule is limited.    That is to say, the Supreme Court made clear that the products liability economic loss rule should not be extended beyond its intended purpose, and the rule must only be applied in those limited circumstance where all elements necessary for its application have been satisfied.

The Court has considered the well-reasoned discussion of the economic loss rule in Judge Fallon's order in *In Re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780 (N.D. Louisiana 2010).    Judge Fallon traces the origins and history of the rule in Florida (and elsewhere) and discusses the application of the economic loss rule to non-privity defendants in the multi-district Chinese drywall litigation.

It is not necessary to repeat here the analysis of Judge Fallon in considering the application of the economic loss rule to non-privity defendants.    However, the Court will briefly address Judge Fallon's conclusion – a conclusion which this Court adopts.

Judge Fallon essentially concludes that the Chinese drywall at issue here presents a unique factual scenario that does implicate the products liability economic loss rule at

4

all.   The factual distinction lies in the nature of the alleged defect and its impact, or lack thereof, on the product itself.

In cases like *Casa Clara*, the defect in the product damaged the product itself. The defect in the concrete caused the concrete to fail and, presumably, to damage other components of the home.   Here, the alleged defect does not damage or affect the product (Chinese manufactured drywall) at all.

In defining the application of the products liability economic loss rule, the Supreme Court has stated that the rule is implicated where "there is a defect in a product that *causes damage to the product*, but causes no personal injury or damage to other property." *Indemnity Insurance, id.* 536  [emphasis added].   Here the alleged defect causes *no damage to the product* and causes *only* personal injury or damage to other property.   Under such unique circumstances, the Court agrees that the products liability economic loss rule does not apply.

<u>Private Nuisance</u>

The Court will next consider whether plaintiff can state a claim for private nuisance based on the allegation that the Chinese manufactured drywall is off-gassing causing a nuisance within the effected homes.   All defendants assert that the claim for private nuisance under such circumstances cannot be asserted.   The Court agrees with the defendants.

Florida law essentially defines nuisance as:

using one's property as to injure the land or some incorporeal right of one's neighbor... The law of nuisance plays between two antithetical extremes: The principle that every person is entitled to use his property for any purpose that he sees fit, and the opposing principle that everyone is bound to use his property in such a manner as not to injure the property or rights of his neighbor... The law of private nuisance is a law of degree; it

generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances.

*Beckman v. Marshall*, 85 So. 2d 552, 554-55 (Fla. 1956) (approving and adopting the language of *Antonik v. Chamberlain*, 78 N.E.2d 752 (Ohio Ct. App., 1947).

Plaintiffs assert that there is no exhaustive definition of what constitutes a nuisance citing *Windward Marina, L.L.C. v. City of Destin*, 743 So. 2d 635 (Fla. 1st DCA 1999). While this may be true, Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("This court recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another") (citing *Reaver v. Martin Theatres of Florida, Inc.*, 52 So. 2d 682 (Fla. 1951). It seems clear that the underlying policy of private nuisance jurisprudence does not support the plaintiffs' application of the doctrine of private nuisance in this case.

Plaintiffs rely heavily on the four-part test for proving the existence of a private nuisance purportedly established by the Court in *Beckman*. According to the plaintiffs, none of the four components makes any mention of a requirement that a private nuisance must involve two landowners. However, such a roadmap for establishing a private nuisance is neither expressed nor implied by the Court in *Beckman*.

In fact, much of the instructive language in *Beckman* seems to contradict the plaintiffs' position that nuisance actions do not necessarily involve contemporaneous and proximate private land owners. *Beckman, id* at 555 ("no one has absolute freedom in the

6

use of his property, because he must be restrained in his use by the existence of equal rights of his neighbor to the use of his property."). *Id.*

Further, none of the cases plaintiffs rely on directly support the contention that a nuisance may exist absent a defendant's exercise of its property rights. *See, e.g., Davey Compressor Co. v. City of Delray Beach*, 639 So. 2d 595 (Fla. 1994) (holding that a defendant who illegally disposed of a highly toxic solvent by dumping it onto the grounds at the rear of its facility created a nuisance because it contaminated plaintiff's water supply); *Kotcher v. Santaniello*, 438 So. 2d 440, 441 (Fla. 1983) (declining to reverse an injunctive order which was "principally predicated upon a determination that the appellants' conduct in keeping and training dogs for attack and security purposes constituted a nuisance in the residential neighborhood where all of the parties resided").

The only case which arguably supports plaintiffs' position, *Putnam v. Roudebush*, 352 So. 2d 908 (Fla. 2d DCA 1977), held that a noisy air conditioner was a "continuing nuisance" that constituted a "permanent defect in the realty." However, private nuisance was not even a claim in the *Putnam* case. The Court's reference to the air conditioning being a nuisance was merely a descriptive reference, and not a statement of a legal claim.

Taken together, neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case. The Court concludes that plaintiffs' claims for private nuisance must be dismissed.

### Strict Liability

The defendant homebuilders have moved to dismiss the plaintiffs' strict liability claims. The homebuilders advance two grounds for dismissal. First, the homebuilder defendants assert that only manufacturers of the product and those in the chain of

distribution can be held strictly liable and they are neither. Second, the defendant homebuilders assert that strict liability does not apply to improvements to real property. The Court will begin with the homebuilders' second argument.

The law in Florida appears to be well settled that strict liability does not apply to improvements to real property as improvements to real property are not considered products. *Plaza v. Fisher Development, Inc.,* 971 So.2d 918 (Fla. 3rd DCA 2007); *Neumann v. Davis Water & Waste, Inc.,* 433 So. 2d 559 ( Fla. 2d DCA 1983) *see Easterday v. Masiello,* 518 So.2d 260, 261 (Fla.1988) ("[I]t has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate."); *Jackson v. L.A.W. Contracting Corp.,* 481 So.2d 1290, 1291 (Fla. 5th DCA 1986).

Plaintiffs argue that an exception exists with respect to improvements to real property "where the injuries result not from the real property as improved by the alleged defective product but directly from a defective product manufactured by defendant, which product may have itself been incorporated into the improvement of the realty before the injury from the product occurred." *Jackson v. L.A.W. Contracting Corp.,* 481 So.2d 1290, 1292 (Fla. 5th DCA 1986); *Craft v. Wet 'N Wild, Inc.,* 489 So.2d 1221, 1222 (Fla. 5th DCA 1986). Plaintiffs conceded at oral argument that this exception has never been applied in a reported Florida case. Indeed, the exception appears to be *dicta* in the cases that mention it.

Whether the exception advanced by the plaintiffs exists or not, it does not appear that the exception would apply to the defendant homebuilders in this case. The exception appears to apply to the manufacturer of an allegedly defective product which

8

happens to be incorporated into the real property. The defendant homebuilders did not manufacture the drywall at issue.

The defendant homebuilders also argue that only manufacturers, and those in the distributive chain of a product, can be held strictly liable. Defendant homebuilders assert that they are not manufacturers and they are not within the distribution chain of the drywall at issue. While the plaintiffs argue otherwise, the Court finds that the defendant homeowners' position has merit.

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that the plaintiff homeowners' tort claims against the defendant homeowners seeking economic losses are dismissed based on the privity economic loss rule. The request of the defendant suppliers and installers (who lack privity with the plaintiffs) to dismiss the plaintiffs' tort claims based on the products liability economic loss rule is denied. The plaintiffs' claim for private nuisance against all defendants is dismissed. Likewise, the plaintiffs' claims for strict liability against the homebuilder defendants are dismissed.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida this 5 day of November, 2010.

JUDGE GLENN D. KELLEY
CIRCUIT COURT JUDGE

Copies furnished to:

Plaintiffs' Liaison Counsel, C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134; Defendants' Liaison Counsel, Todd R. Ehrenreich, Esq. and Michael A. Sexton, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, FL 33133; and for distribution to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with the Electronic Service Order entered in this case.



IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

IN RE:  CHINESE DRYWALL LITIGATION

DARIO ORLANDO; STEPHEN SINES;          CASE NO.:  10-28090 (12)
DAVID AND JOAN GLICKMAN;
THOMAS WOJCIECHOWSKI;
OCEANPARK ESTATES ASSOCIATON,
INC., and DOCKSIDE LOFTS CONDOMINIUM
ASSOCIATION, INC., individually and as
representatives of others similarly situated,
                                Plaintiffs,

vs.

BANNER SUPPLY CO., et al.,                 HON. PETER M. WEINSTEIN
                           Defendants.
_____/

### ORDER ON DEFENDANT BANNER SUPPLY COMPANY PORT ST. LUCIE, LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

THIS CAUSE came before the Court on Defendant Banner Supply Company Port St.

Lucie, LLC's Motion to Dismiss First Amended Class Action Complaint.  The Court having

considered same, having heard argument of counsel and being otherwise fully advised in

premises, finds and decides as follows:

Plaintiffs filed the instant first amended class action complaint asserting claims for

product liability; negligence; violations of the Florida Deceptive and Unfair Trade Practices Act

(hereinafter FDUTPA); Private Nuisance; and equitable and injunctive relief.  Defendant Banner

Supply Company Port St. Luce LLC (hereinafter Banner PSL) is now moving to dismiss the first

amended complaint arguing that it fails to comply with the requirements of Rule 1.220, Fla. R.

Civ. P., fails to properly allege a cause of action for private nuisance, for violations of FDUTPA

and for equitable and injunctive relief and for failure to comply with Rule 1.130, Fla. Civ. P.



**EXHIBIT**

C

in that plaintiffs have failed to attach documents necessary for Banner PSL to properly respond to the complaint.

Turning first to plaintiffs' claim for private nuisance, Banner PSL argues that plaintiffs cannot state a cause of action for private nuisance as a matter of law. In the motion to dismiss, Banner PSL cites to a recent Omnibus Order on Pending Motion to Dismiss in the matter styled <u>Marlene Bennett v. Centerline Homes, et. al.</u>, Case No. 50 2009 CA 014458, entered on November 5, 2010 by the Hon. Glenn Kelly of the Fifteenth Circuit Court. In that case, Judge Kelley in a well reasoned order sets forth the well established law in Florida regarding private nuisances and states that "Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Id.* at 6 citing *Jones v. Trawick*, 75 So.2d 785, 785 (Fla. 1954). "Florida law essentially define nuisance as using one's property as to injure the land or some incorporeal rights of one's neighbor. *Id.*, citing *Beckman v. Marshall*, 85 So.2d 552, 554 (Fla. 1956). Plaintiff argues that there is an inherent weakness in Judge Kelley's ruling that the nuisance must come from outside the plaintiffs' land, that is the defective drywall did come from outside of plaintiffs' land and was delivered by Banner to the home. Plaintiffs argue that Banner PSL should have used its own property, the defective drywall, in a manner not to injure the plaintiffs. This Court finds that it is plaintiffs' argument that has the inherent weakness based on this Court's interpretation of Florida law as it deals with private nuisance. This Court finds Judge Kelley's ruling to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for

Case No.: 10-28090(12)

private nuisance in this case.[1] Therefore, Banner PSL' motion to dismiss plaintiffs' claim for private nuisance will be granted.

Banner PSL's motion to dismiss is denied in all other respects.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant Banner Supply Company Port St. Lucie, LLC's Motion to Dismiss First Amended Class Action Complaint is GRANTED in Part as to Count IV for Private Nuisance. Count IV for Private Nuisance is hereby Dismissed with Prejudice.

DONE AND ORDERED in Chambers, Fort Lauderdale, Florida, this 4th day of February, 2011.

PETER M. WEINSTEIN
CIRCUIT COURT JUDGE

Michael J. Ryan, Esq., Plaintiff's Liaison Counsel & Matthew Kotzen, Esq., Defendant's Liaison Counsel for distribution electronically through Lexis Nexis File & Serve

---

[1] Plaintiffs, in support of their opposition to the motion to dismiss argue that Judge Farina of the Eleventh Circuit, in the case of Seifert v. Banner Supply, Case No. 09-3887 CA 01(42), permitted the "Nuisance" count to go to the jury after a trial of the matter. However, plaintiffs do not indicate whether, in fact, a motion to dismiss the "Nuisance" count ever presented to, or ruled on by Judge Farina. Therefore, plaintiff's reliance on that case is misplaced.