**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED          MDL NO. 2047
DRYWALL PRODUCTS LIABILITY           SECTION: L
LITIGATION

THIS DOCUMENT RELATES TO             JUDGE FALLON
                                     MAG. JUDGE WILKINSON
Payton et al v. Knauf Gips KG et al
EDLA 09-07628


**MEMORANDUM IN SUPPORT OF PLAINTIFFS' SUBSTITUTED**
**MOTION FOR CERTIFICATION OF A FLORIDA HOMEOWNER CLASS**
**AND A LOUISIANA HOMEOWNER CLASS FOR PROPERTY**
**DAMAGE CLAIMS AGAINST KNAUF**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

    **A.**     **Numerosity** .................................................................................................. 4

    **B.**     **Commonality** ............................................................................................... 4

    **C.**     **Typicality** .................................................................................................... 4

    **D.**     **Adequacy of Representation** ....................................................................... 5

    **E.**     **Predominance** ............................................................................................. 5

    **F.**     **Superiority** .................................................................................................. 6

II.     FACTUAL STATEMENT AND PROCEDURAL HISTORY .................................. 6

    **A.**     **Distribution of Knauf CDW in Florida and Louisiana** ............................. 6

    **B.**     **General Background on CDW Damage to Homes** ...................................... 8

    **C.**     **CDW Related Damages Suffered by the Class Representatives** .............. 11

III.    ARGUMENT ........................................................................................................ 12

    **A.**     **Standard of Review** ................................................................................... 12

    **B.**     **Elements of Rule 23** ................................................................................. 12

        1.     Numerosity – Rule 23(a)(1) ............................................................... 12

        2.     Commonality – Rule 23(a)(2) ............................................................ 13

        3.     Typicality – Rule 23(a)(3). ................................................................ 14

        4.     Adequacy of Representation – Rule 23(a)(4) ..................................... 15

            a.   Ascertainability ......................................................................... 16

        5.     Predominance – Rule 23(b)(3) ........................................................... 17

            a.   Defendant Knauf's Course of Conduct is a Common Liability Issue ....................... 18

            b.   Determination of Class-Wide Damages is a Predominant Issue ............................... 19

                i.   Formulaic Method to Determine Class-Wide Property Damages ......................... 21

            c.   Variation of Substantive Law Between Florida and Louisiana Does not Bar Class Certification ................................................................................ 23

                i.   Louisiana Substantive Law Applies to the Louisiana Class Claim ....................... 24

                 ii.  Florida Substantive Law Applies to the Florida Class Claim ............................... 25

        6.     Superiority – Rule 23(b)(3) ................................................................ 27

IV.     CONCLUSION ..................................................................................................... 28

i

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Allapattah Servs. v. Exxon Corp.*,
   333 F.3d 1248 (11th Cir. 2003) ...........................................................................21

*Berger v. Compaq Computer Corp.*,
   257 F.3d 475 (5th Cir. 2001) ..........................................................................12, 15

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) ...........................................................................12, 17

*Cole v. Gen. Motors Corp.*,
   484 F.3d 717 (5th Cir. 2007) ..........................................................................12

*DeBremaecker v. Short*,
   433 F.2d 733 (5th Cir. 1970) ..........................................................................16

*Hilao v. Estate of Marcos*,
   103 F.3d 767 (9th Cir. 1996) ..........................................................................23

*In re A.H. Robins Co., Inc.*,
   880 F.2d 709 (4th Cir. 1989) ..........................................................................16

*In re Chevron U.S.A., Inc.*,
   109 F.3d 1016 (5th Cir. 1997) ........................................................................22

*In re NASDAQ Market-Makers Antitrust Litigation*,
   169 F.R.D. at 525 (S.D.N.Y. 1996) ...............................................................20

*In re Terazosin Hydrochloride*,
   220 F.R.D. 672 (S.D. Fla. 2004) ....................................................................20

*James v. City of Dallas*,
   254 F.3d 551 (5th Cir. 2001) ......................................................................13, 14

*John v. Nat'l Security Fire & Cas. Co.*,
   501 F.3d 443 (5th Cir. 2007) ..........................................................................16

*McQuilken v. A&R Development*,
    576 F.Supp. 1023 (E.D. Pa. 1983) ..................................................................18, 26

*Mims v. Stewart Title Guar. Co.*,
    590 F.3d 298 (5th Cir. 2009) ..................................................................................27

*Monumental Life Insurance Co. v. National Life*,
    365 F.3d 408 (5th Cir. 2004) ....................................................................20, 23, 25

*Mullen v. Treasure Chest Casino LLC*,
    186 F.3d 620 (5th Cir. 1999) ........................................................................ passim

*Pederson v. La. State Univ.*,
    213 F.3d 858 (5th Cir. 2000) ..................................................................................12

*Sher v. Raytheon Co.*,261
    F.R.D. 651, 2009 WL 31931 ...................................................................................22

*Simer v. Rios*,
    661 F.2d 655 (7th Cir. 1981) ..................................................................................16

*Turner v. Murphy*,
    No. 05-4206, Order ....................................................................................19, 21, 26

*Turner v. Murphy Oil USA Inc.*,
    234 F.R.D. 597 (E.D. La. 2006) ..................................................................... passim

*Vizena v. Union Pac. R.R. Co.*,
    360 F.3d 496 (5th Cir. 2004) ..................................................................................12

*Watson v. Shell Oil Co.*,
    979 F.2d 1014 (5th Cir. 1992) ........................................................................19, 23

Other Authorities

Fed. R. Civ. P. 23(a)(1-4) ......................................................................................3

Fed. R. Civ. P. 23(b)(3) .............................................................................. passim

Fed. R. Civ. P. 23(g) ............................................................................................15

iii

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO | JUDGE FALLON MAG. JUDGE WILKINSON |
| Payton et al v. Knauf Gips KG et al EDLA 09-07628 | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' SUBSTITUTED**
**MOTION FOR CERTIFICATION OF A FLORIDA HOMEOWNER CLASS**
**AND A LOUISIANA HOMEOWNER CLASS FOR PROPERTY**
**DAMAGE CLAIMS AGAINST KNAUF**

## I.    INTRODUCTION

This matter involves the claims of thousands of homeowners who have suffered property

damages from the use of Chinese-manufactured drywall ("CDW") from the use of Knauf CDW

in their homes.[1]  The Florida and Louisiana class representatives, hereby move for class

certification on behalf of themselves and all similarly situated persons pursuant to Fed. R. Civ. P.

23(b)(3).  Plaintiffs seek certification of a class of all owners of residential real properties

containing CDW manufactured by Knauf, on their claims for remediation and property

damages.[2]

---

[1]   The Knauf entities involved in the *Payton* action are: Gebrueder Knauf Verwaltungsgesellschaft, KG; Knauf International GmbH; Knauf UK GMBH; Knauf Gips KG; Knauf Plasterboard (Tianjin) Co., Ltd.; Knauf Plasterboard (Wuhu) Co., Ltd.; and Guangdong Knauf New Building Materials Products Co., Ltd.; and Knauf Insulation GmbH (collectively "Knauf").

[2]   The class definitions are :

> ***Florida Class***: "All owners of residential real properties in the State of Florida containing Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by Knauf, from January 1, 2005 to December 31, 2008, who have not released or assigned their property damage claims to a

1

All claims of homeowners who obtained Knauf CDW are claims brought by Florida or Louisiana homeowners.  Proposed class counsel and the PSC submit that the MDL claimants will best be served by a class action proceeding on behalf of a Florida homeowner class and a Louisiana homeowner class against Knauf seeking an award of class-wide property damages for all similarly situated residents.  Certification of these claims will efficiently advance the resolution of a large set of Florida and Louisiana claims.  The conservation of resources for the Court and the parties of resolving liability on a class-wide basis is substantial, and is available *even if* the Court later determines that some damages issues must be resolved through individualized adjudications.

These claims are ripe for class certification for several reasons:

- First, this court has already overseen extensive CDW-related discovery, expert testimony, and issued judicial Findings of Fact and Conclusions of Law ("FOFCOL");[3] and the Miami-Dade County state court in Florida has already presided over a jury trial with a verdict for damages caused by the Knauf CDW, which was distributed by Banner.[4]

---

third party."

> *Louisiana Class*: "All owners of residential real properties in the State of Louisiana containing Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by Knauf, from January 1, 2005 to December 31, 2008, who have not released or assigned their property damage claims to a third party."

[3] *See* In re Chinese Manufactured Drywall Products Liability Litigation, MDL 2047, *Hernandez v. Knauf Gips KG, et al.*, Case No. 09-6050 (hereinafter "*Hernandez*") FOFCOL (Docket #2713); In *re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, *Campbell-Clement/Schexnaydre v. Knauf Plasterboard (Tianjin) Co., Ltd., et al,* Case No. 09-7628 (hereinafter "*Campbell/Clement*"); *see also Germano et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 2:09-cv-6687 (hereinafter "*Germano*") FOFCOL (Docket #2380).

[4] *See In re Chinese Manufactured Drywall Products Litigation, Seifart v. Knauf GIPS KG et al,* Case No. 09-38887 CA 01 (42) (Circuit Court of the 11th Judicial District, Miami-Dade County, Florida) (hereinafter "Seifart") Order Denying Defendant Banner Supply Co.'s Motion for Judgment in Accordance with Prior Motion for Directed Verdict or, in the Alternative, for New Trial (July 26, 2010) (*See* Compendium of Exhibits in Support of Plaintiffs'

- Second, the Florida law as it relates to CDW property damage claims has been established in the *Seifart* trial in state court in Florida; and Louisiana law has also been established, *Hernandez* FOFCOL (Document 2713) at 44-47.

- Third, this class action is limited to property damage and does not include personal injury.

- Fourth, the proposed class representatives from Florida and Louisiana have completed their Plaintiff Profile Forms ("PPF") and provided their product identification information to Knauf. .

The pivotal issues underlying the homeowners' claims have been thoroughly litigated and provide sufficient maturity to this mass tort to facilitate a determination of class-wide property damages. Since Florida and Louisiana homeowners with CDW from Knauf make up a significant portion of the MDL claims; a class action, brought under Fed. R. Civ. P. 23(b)(3), can potentially resolve a large subset of claims in the MDL and establish a roadmap for the resolution of remaining claims. Here, Plaintiffs limit their request for certification to the property damage claims of homeowners who obtained Knauf CDW. Any class member seeking personal injury (or medical monitoring) relief would need to do so on an individual basis, not through this class action. Furthermore, this motion only seeks to certify class claims for Knauf sales in Florida and Louisiana.

The class claims readily meet the Fed. R. Civ. P. 23(a)(1-4) requirements of numerosity, commonality, typicality, and adequacy, as well as the predominance and superiority

---

Motion for Certification of a Florida Homeowner Class and a Louisiana Homeowner class and Property Damage Claims Against Knauf, Document 5612-2, ("Comp.") Exhibit ("Ex.") 1); Order Denying Defendants Certain Homes and Mandy Drywall Motions to Dismiss Plaintiffs' Second Amended Complaint (March 30, 2010) (Comp. Ex. 2); Order Denying Defendant Banner Supply Co. and all Similarly Situated Defendants' Motions to Stay, or Alternatively, Motions to Dismiss Plaintiffs' Amended Complaints and Strike Demands for Attorneys' Fees

requirements of Rule 23(b)(3).

### A.    Numerosity

As to numerosity, available sales and distribution records and the  Omnibus Complaints indicate that the number of Florida and Louisiana homeowners who own homes containing Knauf CDW (homes that are either all Chinese drywall or "mixed" Chinese and other drywall), and who could qualify as members of  the class is estimated to be more than 2,000.  This evidence establishes numerosity.

### B.    Commonality

Commonality is also easily established.  With the benefit of the availability of the pretrial and trial rulings from *Seifart* and *Hernandez,* Plaintiffs will be able to readily demonstrate that the relevant factual and legal property damage determinations already made, including Knauf's liability and damages to homeowners caused by Knauf CDW, are common questions.  In addition, the need to quantify damages for the class is a common question.  Thus, the commonality requirement will be satisfied.

### C.    Typicality

The claims of the class representatives are also typical of the class.  The class representatives, like each class member, are homeowners seeking to recover for damages caused by defective Knauf CDW and they are utilizing the same causes of action.  Similarly, the class representatives' claims, like the claims of all class members, are governed by the substantive law of Plaintiffs' home state (either Florida or Louisiana).  The class representatives possess the same interest and have suffered the same type of injury as class members.  Thus, typicality can be readily established.

---

(December 18, 2009) (Comp. Ex. 3); Verdict Form (June 18, 2010) (Comp. Ex. 4).

**D.      Adequacy of Representation**

Similarly, the class representatives will fairly and adequately protect the interests of the class. Each has already undergone a screening inspection of his or her home to verify the presence of defective Knauf CDW and corrosion damage. Each has completed the court-mandated PPF and provided product identification photographs. In addition, proposed Florida class counsel (Arnold Levin of Levin, Fishbein, Sedran & Berman; Ervin Gonzalez, of Colson Hicks Eidson and Richard Lewis, of Hausfeld LLP) and proposed Louisiana class counsel (Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Avenue, New Orleans, Louisiana 70113 and Gerald Meunier, Gainsburgh, Benjamin, David, Meunier, & Warshauer, LLC, 2800 Energy Centre, 1100 Poydras Street, New Orleans, LA 70163) are experienced and competent counsel, as amply demonstrated by their participation in the *Germano, Hernandez,* and *Campbell/Clement* proceedings before this court, and the *Seifart* trial in Florida state court.

**E.      Predominance**

As to predominance, the primary remaining unresolved issue that predominates over any individual issues that may be present in this case is the issue of the amount of class-wide damages. Plaintiffs will establish herein that the class-wide liability and damages can be determined on a common basis. Knauf's course of conduct which caused the property damages to the Plaintiffs and the class impacted all class members in a similar way. Plaintiffs and class members suffered the same type of property damages. There will be no difficulty in managing multiple states' laws because the law of only two states (Florida and Louisiana) is involved and all class members' claims will be governed by their home state law. Plaintiffs have submitted a trial plan for the determination of liability and class-wide damages. (*See* Supplemental Proposed Trial Plan, filed simultaneously herewith).

### F.        Superiority

Plaintiffs will show that the class action mechanism is a superior mechanism to resolve these claims compared to individual proceedings.  The applicable law and the type of recoverable damages are uniform across class members.  It would be grossly inefficient and a waste of judicial economy for different courts to resolve these identical issues on an individual basis, and it would unnecessarily create a risk of inconsistent adjudications.  In sum, if the class is certified, the Court can resolve the issues of class-wide liability and the amount of class-wide damages.  These are common and predominating issues that are thoroughly within the expertise and competence of the MDL Court, particularly after the Court has presided as the finder of fact in the *Hernandez* remediation and property damages trial and presided over other CDW trials.

## II.        FACTUAL STATEMENT AND PROCEDURAL HISTORY

### A.        Distribution of Knauf CDW in Florida and Louisiana

The present matter commenced when Plaintiffs (the Florida plaintiffs are Dr. Stephen Roberts, Karen Vickers, Jennifer and Felix Martinez, and Jason Santiago; the Louisiana plaintiffs are Edward and Susan Beckendorf, Donald and Marcelyn Puig, Dean and Dawn Amato, and Byron and Debra Byrne (hereafter "Plaintiffs"),[5] on behalf of themselves and all

---

[5] In addition to the proposed class representatives originally named for the Florida class, Dr Stephen Roberts, Proposed Class Counsel is also offering three additional proposed class representatives (Karen Vickers, Jennifer and Felix Martinez, and Jason Santiago). For the Louisiana class, Proposed Class Counsel is offering four additional class representatives (Dean and Dawn Amato, Debra Byrne, Edward and Susan Beckendorf, and Donald and Marcelyn Puig), since Mr. Nunez is no longer able to participate in these proceedings in light of his participation in the Knauf Demonstration Remediation Program. Defendants have been notified of these substitutions, have taken discovery of the new proposed class representatives and have or will have the opportunity to conduct inspections of each proposed class representative's home. The additional proposed class representatives are necessary to assure proper representation of the classes.  The additional proposed class representatives have complied with all court-ordered requirements including the filing of completed PPF's and providing indicia of product identification; and they understand and accept their responsibilities if allowed to serve as class representatives.

6

other similarly situated owners brought a class action against Defendant Knauf and others on

December 9, 2009, or intervened therein through an intervention complaint.  Service of the

Knauf entities was accomplished in July of 2010.

The *Payton* Complaint asserts claims against Knauf for negligence, negligence per se,

strict liability, breach of express and/or implied warranties, breach of contract, private nuisance,

unjust enrichment, violation of the Consumer Protection Acts, redhibition, and for equitable

injunctive relief and medical monitoring.

Knauf produced and sold defective drywall that was purchased and built into homes in

Florida and Louisiana from at least 2005 to 2008.  According to the Knauf Defendant

Manufacturers' Profile Forms, Knauf exported 5,286,015 square meters of Knauf KPT CDW to

the United States in the time period 2005-2006.  The overwhelming majority of this product was

delivered to Miami and New Orleans.  Knauf (KPT) Defendant Manufacturer's Profile Form

(Comp. Ex. 5). WHERE IS FIRST TIME WE MENTION OLD COMPENDIUM DO WE GIVE

IT SHORT FORM NAME "COMP"   Furthermore, the records of Florida and Louisiana drywall

distributors indicate they distributed significant amounts of Knauf drywall in those states.

Confidential Settlement Agreement and Release, (Comp. Ex. 6); Summary of Banner Supply Co.

CDW Purchases for Sale Based on Distributor Profile Forms and Banner Supply Co. Distributor

Profile Forms (Miami, Pompano, Fort Meyers, Tampa, St. Luicie) (Comp. Ex. 7); Summary of

La Suprema Invoices to Banner Supply Co., *Seifart* Ex. 349, (Comp. Ex. 8); Fed. R. Civ. P.

30(b)(6) Deposition of La Suprema, Salomon H. Adabi (October 9, 2009) at 104(22) – 105(13),

108(20) – 109(17), 199(19) – 201(2) (Comp. Ex. 9); Revised Exporter, Importer, or Broker

Defendant Profile Form – La Suprema Enterprise Inc. and La Suprema Trading Inc. (October 14,

2009) (Comp. Ex. 10); Knauf GIPS KG's Supplemental Response to Plaintiffs' First Request for

Production of Documents Concerning Jurisdictional Issues (Comp. Ex. 11); Banner Invoice

(Roberts), Banner MDL-00007925 (Comp. Ex. 12); Banner Supply Sales Records (Comp. Ex.

13); Interior Exterior Distributor Profile Form (September 9, 2009) (Comp. Ex. 14); Declaration

of Ronald E. Wright, P.E. at ¶3 (document 5612-23).  Knauf failed to adequately test and

monitor its production process to prevent or correct its defective product.  Knauf failed to warn

the Plaintiffs and members of the classes and withheld information from the class members that

would have enabled these individuals to prevent or mitigate damage from the defective drywall.

Further, Knauf assisted others and provided incentives for others to join them in the withholding

of information regarding the defect. [6]

### B.      General Background on CDW Damage to Homes

The Court's Findings of Fact and Conclusions of Law in *Hernandez* establish and set

forth the majority of the facts (supported by record evidence) relevant to this class motion

including facts relevant to Knauf's conduct, the defect in its drywall product, and the damage it

causes.  (Docket #2713).  This Factual Statement incorporates the *Hernandez* FOFCOL by

reference and will only highlight those facts most relevant to class certification.

From 2004 through 2006, the housing boom and rebuilding efforts necessitated by

various hurricanes lead to a shortage of construction materials, including drywall.  As a result,

drywall manufactured in China was brought into the United States and used in the construction

and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast

states including Virginia.  After the installation of the Chinese drywall, homeowners began to

complain of emissions of smelly gasses; the corrosion and blackening of metal wiring, surfaces,

and objects; and the failure of appliances and electrical devices in their homes.  Many of these

---

[6] Confidential Settlement Agreement (Comp. Ex. 6) at ¶ 7.

homeowners also began to complain of experiencing symptoms of irritant effects such as respiratory irritation, headaches and fatigue.  *Hernandez* FOFCOL at 3-19.

The Consumer Product Safety Commission ("CPSC") and this Court established that CDW, including Knauf drywall, releases reduced sulfur gases.  *Hernandez* FOFCOL at 15-21. The three main gases released from Knauf CDW are hydrogen sulfide ($H_2S$), carbonyl sulfide (COS), and carbon disulfide ($CS_2$).  *Id.*  The CPSC and plaintiffs' experts have detected sulfur gas emissions by conducting laboratory tests on samples of this drywall.  *Id.*  These emissions are often associated with strong odors.  *Id.*  The fact that Knauf CDW emits sulfur gases has been reported by the CPSC, the Florida Department of Health, and other investigatory agencies and firms.  *Id.*  The sulfur gases released by Knauf drywall cause respiratory, eye, throat and skin irritation,[7] and cause offending odors in homes, making them hard if not impossible to live in, and are corrosive to metals, particularly copper and silver.  *Id* at 8-19.

The corrosion of metals, particularly copper and silver, caused by the sulfur gases emitted by Knauf drywall leads to premature failure of electrical and mechanical devices.  *Id.* at 15-31.  Laboratory analysis of the copper and silver components from the homes identified the sulfur induced corrosion as the cause of HVAC coil failure and the cause of the severe deposits at the operative connections in the appliances and in consumer electronics.  *Id. at* 15-31. Mechanical, electrical, and electronic failures have occurred prematurely due to the severe industrial corrosive environments in these Knauf drywall homes.  *Id. at* 15-31.  Evaluation of comparable HVAC systems, appliances, and electronics in *control* homes (e.g., similar homes without Knauf drywall or other defective CDW) do not show premature failures of HVAC

---

[7] While personal injury claims are not a part of this class action, the reported symptoms are relevant in so far as they establish that the CDW is defective and must be replaced, caused class-wide effects, and that residents experienced

systems, appliances, and electronics, and the wires do not have corrosion product thicknesses that would predict premature failures based on corrosivity standards. *Id.* at 15-31. The corrosion on metals caused by the sulfur gases emitted by Knauf drywall also poses a fire risk. *Id.* at 25-26. The level of corrosive sulfur gases emitted by the drywall in the class representatives' homes exceed the safe level established by recognized standards, peer reviewed literature, and expert opinions; and caused a corrosive environment in their homes that has a significant impact on the exposed property. *Id.* at 15-31.

The scientific evidence has demonstrated that corrosion has damaged many components in the home. *Id.* at 15-33. The Court-ordered Crawford inspections also confirmed widespread corrosion damage. Wright Dec. at ¶3. Consequently, in these homes *all* drywall needs to be removed and replaced. Removal of all drywall in a home that contains only Knauf drywall as well as a "mixed" home is efficient and cost effective. All electrical wires also need to be replaced because the insulation jackets on electrical wires do not adequately protect them from corrosive attack. *Id.* at 21-33. It is not feasible to clean the wires of corrosion product to render them free of risk of future failure. *Id.* at 25. In addition, the following items will also have to be replaced: copper pipes, HVAC units, certain electrical devices and appliances, carpet, and vinyl flooring, cabinets, countertops, trim, crown molding, baseboards, bathroom fixtures and insulation. *Id.* at 29-35; Confidential Agreement (Comp. Ex. 6).

In sum, the evidence supports the conclusion that the appropriate remediation for homes containing Knauf drywall includes the removal of all drywall, all electrical wiring, the entire HVAC system, and many other items such as appliances, carpet, cabinetry, trim work and flooring. *Id.* at 27-35. The scope of this remediation is supported by both the scientific evidence

---

loss of use and enjoyment and dislocation expenses due to the CDW.

and the evidence of pragmatic concerns relevant to efficient remediation.  *Id. at* 27-36.  As part of the remediation, homes will need to be cleaned with a HEPA vacuum, wet-wiped or power-washed, and allowed to air-out after remediation.  After remediation, an independent, qualified engineering company should inspect and certify that the homes are safe for occupation.  *Id.* at 34.  This remediation scope of work is consistent with Chinese drywall remediation being performed by national homebuilders and recommended by the CPSC.  *Id.* at 34-35; *Germano* FOFCOL at 54-55.

The evidence reviewed by this Court indicates that the removal of all drywall in those homes in which there is a substantial mixture, as opposed to selective removal of CDW on a board-by-board basis is the better and more realistic approach.  This is necessary in order to remove and replace wires, pipes, and insulation, and to adequately clean the home.  Furthermore, the evidence indicates that it is virtually impossible to detect, in a nondestructive manner with reasonable accuracy, which drywall is and which is not CDW.  *Hernandez* FOFCOL at 32.  To accomplish the type  of necessary remediation described above, homeowners will be out of their home for 4-6 months during remediation.  *Id. at* 41; Seifart Verdict Form (Comp. Ex. 4).

### C.     CDW Related Damages Suffered by the Class Representatives

The need for this sort of repair and remediation is fully applicable to the class representatives, and absent class members.  Wright Dec. at ¶6; Supplemental Declaration of Ronald Wright ("Supp. Wright Dec." at ¶2), Supplemental Compendium of Exhibits ("Supp. Comp.") Ex. 11.  The class representatives have subjected their homes to a screening inspection which determined product identification of CDW and corrosion of metal surfaces in the home, characteristic of CDW.  Supp. Wright Dec. at ¶2; Supplemental Declaration of Arnold Levin ("Supp. Levin Dec.") at ¶3 and 7.  In addition, the class representatives have completed the PPF

and provided product identification information, as required by court order.  Supp. Levin Dec. at

¶3 and 7.  The class representatives have suffered property damage caused by the defective

CDW.  Wright Dec. at ¶5, Supp. Wright Dec. at ¶2; Supp. Levin Dec. at ¶4.  Damages suffered

by the class representatives, and class members include the cost of the needed remediation,

alternate living costs, property diminution, loss of use and enjoyment damages, and personal

property damages.  *Payton* Complaint.

## III.   ARGUMENT

### A.   Standard of Review

The proponents of the class bear the burden of demonstrating that the case is appropriate

for class treatment.  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001).

Class certification is soundly within the district court's discretion, and this decision is essentially

a factual inquiry.  *Vizena v. Union Pac. R.R. Co.,* 360 F.3d 496, 502-03 (5th Cir. 2004).  The

class certification decision should not reach the merits of the Plaintiffs' claims.  *Cole v. Gen.*

*Motors Corp.,* 484 F.3d 717, 724, (5th Cir. 2007) (*quoting Castano v. Am. Tobacco Co.,* 84 F.3d

734, 744 (5th Cir. 1996)).  However, in some cases it is necessary for a district court to go

beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in

order to make a meaningful certification decision.  *Id.*  The district court must make specific

findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23 of the

Federal Rules of Civil Procedure.  *Vizena,* F.3d at 503.

### B.   Elements of Rule 23

#### 1.   Numerosity – Rule 23(a)(1)

To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through

"some evidence or reasonable estimate of the number of purposed class members."  *Pederson v.*

*La. State Univ.,* 213 F.3d 858, 868 (5th Cir. 2000).  "Although the number of members of any proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has generally set the threshold of 100 to 150 people as satisfying the numerosity requirement. *Mullen v. Treasure Chest Casino LLC,* 186 F.3d 620, 624 (5th Cir. 1999).

Analysis of available records, including the Omnibus Complaints, Distributor Profile Forms and sales records, and third party sales records, indicates that the best estimate of the number of Florida and Louisiana homeowners with Knauf CDW who would qualify as a class member is in excess of 2,000.  Supp. Levin Dec. at ¶5.  According to Knauf, it exported over 6 million square meters of CDW to Florida and Louisiana in the 2005-2008 timeframe.  *See* Comp. Ex. 5.  Furthermore, the invoice and Profile Form records of Banner, La Suprema, INEX, and Knauf indicate widespread sales of CDW in Florida and Louisiana.  *See* Comp. Exs. 5-15.  The class representatives and absent members of the class all seek remediation and property damages for their homes as the primary form of relief in their claims.  Joinder of this many class members is impracticable and would lead to a squandering of judicial economy and the resources of the parties.  *Turner v. Murphy Oil USA Inc.,* 234 F.R.D. 597, 604 (E.D. La. 2006).  Thus, the proposed class meets the numerosity requirement.

### 2.    **Commonality – Rule 23(a)(2)**

Rule 23(a)(2) requires that there be issues of law or fact common to the class.  The commonality requirement is satisfied if resolution of at least one issue will affect all or a significant number of class members.  *James v. City of Dallas,* 254 F.3d 551, 570 (5th Cir. 2001); *Mullen,* 186 F.3d at 620, 625.  There is a low threshold for commonality, and the fact that some class members have different claims or require individualized analysis does not defeat commonality.  *James,* 254 F.3d at 570.

13

The proposed class representatives and the proposed class have numerous factual and legal issues in common, including but not limited to:

- whether Knauf CDW is defective and needs to be replaced;

- whether additional items in the home need to be repaired or replaced;

- the determination of Knauf's liability as the manufacturer of CDW;

- the determination of the fact of damages to the class representatives and members of the class; and

- the availability and amount of class-wide damages.

Thus, the commonality requirement is also satisfied.

### 3.    Typicality – Rule 23(a)(3).

Rule 23(a)(3) requires that the claims of the class representatives are typical of the class's claims or defenses.  Again, the threshold for typicality is low,  class representatives must show similarity between their legal and remedial theories and the theories of the rest of the class. *Mullen,* 186 F.3d at 625.  Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics – a similar course of conduct, or the same legal theory. *James,* 254 F.3d at 571 (*quoting* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)).

The property damage claims of the class representatives are the same as those of the absent class members.  The determination of these damages depends on the same factual predicate as to the manufacturer of the defective product, product identification, the mechanism of damage occurring in the class members' homes, the need for remediation, and the square footage costs of accomplishing the remediation. *Murphy,* 234 F.R.D. at 605 (theories of liability of property owners damaged by oil are alike, and support a finding of typicality); *see* Declaration

14

of Ronald Wright ("Wright Dec.") (Document 5612-23) at ¶¶5-6, Supp. Wright Dec. at ¶2; Supp. Levin Dec. at ¶3 and 7.  Further, the establishment of damages is governed by each state's law (Florida and Louisiana) for all class members.  Thus, the typicality requirement is readily met.

### 4.    Adequacy of Representation – Rule 23(a)(4)

Rule 23(a)(4) demands that the named class representatives fairly and adequately represent the claims of the other class members.  There can be differences between the class representatives and other class members so long as these differences do not "create conflicts between the named Plaintiffs' interests and the class members' interests."  *Mullen,* 186 F.3d at 626.  A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members.  *Id.* (*citing Jenkins v. Raymark Indus.,* 782 F.2d 468, 472 (5th Cir. 1971)).  In addition, the district court should inquire into the zeal and competence of the class representatives' counsel and into the class representatives' willingness to take an active role in the litigation and to protect the interests of absentees.  *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir. 2001).

Under Rule Fed. R. Civ. P. 23(g), a district court must appoint class counsel at the time the class is certified, unless otherwise provided by statute.  The class counsel must fairly and adequately represent the interests of the class, and the court must review the counsel's work in investigating claims, experience in handling class action litigation, knowledge of the applicable law, and the resources counsel will commit to representing the class.  Rule 23(g)(1)(B),(C).

The proposed class representatives have the same interest as absent subclass members in obtaining property damage relief from Knauf.  They also all share the same interest in the enforcement of a class judgment and the collection of that judgment against Knauf.  The class

representatives have demonstrated their commitment to the litigation by subjecting their residences to screening inspections to establish product identification and the fact of corrosion damage.  Further, the class representatives have timely completed the court ordered PPF and provided product identification information.  Supp. Levin Dec. at ¶ 3 and 7.  Finally, each has agreed to make themselves available for deposition and cooperate with requests to assist this Court and counsel as needed.  Supp. Levin Dec. at ¶7.

The proposed class counsel are experienced in class action practice, well respected, and competent lawyers.  Supp. Levin Dec. at ¶8 (attaching Curriculum Vitae of proposed class counsel).  This Court has already had the opportunity to work extensively with each of the proposed class counsel and their firms in prior proceedings in this case.  Thus, the Court should find that the proposed class representatives, as well as the proposed Florida class counsel and the proposed Louisiana class counsel are adequate.

### a.      Ascertainability

It should be noted that various courts consider *ascertainability* to be a requirement under Rule 23.  Ascertainability pertains to the ability of the Court based on record evidence to utilize objective criteria to determine who is a subclass member (and who is not).  The Fifth Circuit has referred to ascertainability as an "implied prerequisite of Rule 23."  *John v. Nat'l Security Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *see also DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."), *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 728 (4th Cir. 1989); *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir. 1981); 5 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[1], at 23-47 (Matthew Bender 3d ed. 1997) ("It is axiomatic that in order for a class action to be certified, a class must exist.").

16

Here, the class is ascertainable.  Membership in the class is based on two key objective criteria: (1) ownership of a residence in Florida or Louisiana; and (2) the identification of Knauf CDW in that residence.  The determination of Knauf drywall in a residence is established through visual identification of known markings.  *See* PTO #10 (Docket #171); and other documentation of Knauf deliveries by third parties; Wright Dec. at ¶¶3-5; Supp Wright Dec at ¶2-11.  Thus, the proposed classes meet the ascertainability requirement.

### 5.        Predominance – Rule 23(b)(3)

Rule 23(b)(3) requires that the class share common issues of law or fact that predominate over the questions affecting individual class members.  In general, in order to predominate, common issues must form a significant part of the individual cases.  *Mullen,* 186 F.3d at 626. Specifically, a district court should consider how the cases would proceed to trial, that is, whether any cases would require individual trials on particular issues.  *See Castano,* 84 F.3d at 744-45 (finding that certification was inappropriate where individual trials would be necessary to determine an element of the Plaintiffs' fraud claims).

The dual demands of Rule 23(b)(3) are that common issues are significant and will resolve substantial aspects of the case, and that the case will be manageable for trial purposes. *Id.*   The issue of Knauf's liability for the manufacture and distribution of defective CDW is a significant issue that will resolve a substantial aspect of the many claims pending against Knauf. Furthermore the determination that property damages can be determined on a class-wide basis using a formulaic approach to determine damages such as the one outlined by Plaintiff's expert, Ronald Wright.  Wright Dec. at ¶¶6-7.  The ultimate determination of the class-wide damages is also a significant issue that will resolve major aspects of this case and is manageable for trial purposes.  This Court, and the *Seifart* Court in prior proceedings have already found sufficient

facts to establish the fact of property damage associated with defective CDW and have

determined the law applicable to the liability and damages aspects of the case.  Thus, class-wide

liability and damages can be established in an efficient manner and these issues predominate

over any individual issues.  Moreover, there are no individual issues associated with any

personal injury claims as those claims are excluded from the class.

> **a.** **Defendant Knauf's Course of Conduct is a Common Liability Issue**

Here, there can be no dispute that Defendant Knauf's conduct in manufacturing and

selling defective CDW to the Florida and Louisiana home construction market has a common

property damage impact on the class member homeowners.  Liability is commonly recognized as

a predominant issue in the class setting.  *Mullen,* 186 F.3d at 626 ("the common issues in this

case, especially negligence and seaworthiness, are not only significant but pivotal … If the

[Defendant] prevails on these two issues, they will prevail in the case."); *Murphy,* 243 F.R.D. at

606 (Plaintiffs' property damage claims "share large areas of fact in common."); *McQuilken v.

A&R Development,* 576 F.Supp. 1023, 1031 (E.D. Pa. 1983) (Involving damage to homeowners'

properties caused by construction activity, defendants' conduct is viewed as a common and

predominant issue supporting certification).

The issue of Knauf's liability to the class is highly amenable to class treatment because

the evidence of the actual defect, Knauf's knowledge of it and conduct related to it, and the type

of corrosion damage associated with the product will be the same for all class members.  Thus, a

finding of liability for the class would allow an estimated 2,000 plus claimants to proceed

directly to the damages phase.  The conservation of resources for the Court and the parties of

resolving liability on a class-wide basis is substantial, and is available *even if* the Court later

determines that some damages issues must be resolved through individualized adjudications. *Murphy,* 234 F.R.D. at 605, 607 (individualized damage issues do not prevent a finding of predominance).

          **b.**      **Determination of Class-Wide Damages is a Predominant Issue**

      The Supplemental Proposed Trial Plan suggests a Phase I liability trial to establish general liability and general causation.  Damages would be left to a Phase 2 trial.  This type of bifurcation is well accepted in the Fifth Circuit and does not raise Seventh Amendment reevaluation concerns.  *Mullen,* 186 F.3d at 628-629; *Watson v. Shell Oil Co.,* 979 F.2d 1014, 1019-1020 (5th Cir. 1992); *Turner,* 234 F.R.D. at 606; *Turner v. Murphy,* Order and Reasons (March 2, 2006) at 3, 5-6 (Compendium, ("Comp.") Ex.18).  Plaintiffs have also put forth expert declarations identifying methodologies to establish damages utilizing common methodologies, formulaic analysis, or individual mini-trials if necessary.  *See* Declaration of Ronald Wright ("Wright Dec.") at ¶¶ 5-6, Document 5612-21, Supplemental Wright Declaration ("Supp. Wright Dec.") at ¶ 2 (Supplemental Compendium ("Supp. Comp.," Ex. 11); Letter Opinion of Lee H. Waronker, MAI, SRA (January 24, 2011) ("Waronker Letter") (Supp. Comp. at Ex. 12).  The same expert methodologies can be used to determine damages for each member of the class on an individual basis and some forms of relief can be determined on a class-wide basis.  In addition, previous trials in Florida and Louisiana demonstrate benchmark damage awards for the cost of remediation, the alternative living costs, property diminution, loss of use and enjoyment and private property damage.  Thus class-wide liability and damages can be established in an efficient manner.  Moreover, there are no individual issues associated with any personal injury claims as those claims are excluded from the class, and there are no choice of law issues, since Florida or Louisiana substantive law applies.

The plaintiffs' demonstrated ability to determine class-wide damages meets the predominance requirement at the certification stage.  *See, e.g., Monumental Life Insurance Co. v. National Life,* 365 F.3d 408, 419 (5th Cir. 2004) ("The policy variables are identifiable on a class-wide basis and, when sorted, are capable of determining damages for individual policy owners; none of these variables is unique to particular Plaintiffs.  The prevalence of variables common to the class makes damages computation 'virtually a mechanical task.'").

As the Eleventh Circuit noted in *Klay v. Humana*:

> In assessing whether to certify a class, the court's inquiry is limited to whether or not the proposed methods for computing damages are so insubstantial as to amount to no method at all . . . . Plaintiffs need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis. Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.

382 F.3d at 1259-60 (internal brackets, quotations and footnotes omitted).[8]  As such, damages can be proven on a class-wide basis and allocation and claims processing issues will not defeat class certification.  *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 699 (S.D. Fla. 2004) ("Assuming the jury renders an aggregate judgment, allocation will become an intra-class matter accomplished pursuant to a court-approved plan of allocation, and such individual damages allocation issues are insufficient to defeat class certification."); *In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. at 525 (S.D.N.Y. 1996) ("Aggregate computation of class

---

[8] Courts routinely have used class-wide, formula-based techniques to calculate individual damages in various types of class actions.  *See, e.g., Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977) (approving aggregate damages judgment), *aff'd*, 444 U.S. 472 (1980); *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003) (approving of the use of objective data extracted from the Defendant's computer system and analyzed through a "mechanical process" in a case involving charging customers for incoming cellular telephone calls.); *see also* 3 Newberg on Class Actions § 10:8.

monetary relief is lawful and proper.").

Even if some individual damages issues may exist, it is well settled that their presence does not defeat predominance.  *See Allapattah Servs. v. Exxon Corp*., 333 F.3d 1248, 1261 (11th Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004) ("[N]umerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate."); *Murphy,* 234 F.R.D. at 605, 607 (same).  Any individualized damage issues, for example, determining individual personal property damage, can be dealt with "pursuant to a court-approved plan of allocation," or mini-trials.  *Terazosin*, 220 F.R.D. at 699; *see also Turner v. Murphy,* No. 05-4206, Order and Reasons (March 3, 2006), slip op. at 3 (Comp. Ex. 18) ("Fifth Circuit has approved of bifurcated trial plans in which common issues of liability, negligence, and certain defenses are tried commonly, with causation actual damages, and … comparative fault tried individually.") (Citations omitted).

### i.    Formulaic Method to Determine Class-Wide Property Damages

Alternatively, damages can be formulaic in nature and amenable to class treatment. Ronald Wright, Plaintiffs' expert, is a Civil Engineer who specializes in the assessment of repair and remediation for home construction.  Mr. Wright can determine remediation damage costs individually or thorough the use of formulaic analysis. Mr. Wright has inspected many CDW homes, and has developed a methodology to estimate damages for the remediation of CDW homes and the replacement of damaged components including appliances, flooring, cabinetry and other items.  Wright Dec. at ¶¶5-6.  He has considered national databases that estimate such costs including RS Means.  More specifically, he has reviewed the real world repair bids of local construction companies to perform the necessary remediation in several homes in different

states.  *Id.*  For example, based on his work in Virginia and available Virginia data, Mr. Wright

offered the expert opinion in the *Germano* proceeding that the cost of repair for a fair cross-

section of Virginia homes would be on average $86 per square foot, which was accepted by the

Court.  *Germano* FOFCOL at 57-60.  Mr. Wright will be able to use the same methodology to

estimate damages for each homeowner, or for some forms of damage he could estimate class-

wide damages.  Wright Dec. at ¶¶5-7; *see also Germano* FOFCOL at 57-59, 64-69.

Additional forms of property damage, including alternative living costs, property

diminution, loss of use and enjoyment, and personal property losses are also amenable to

determination on an individual basis using the same methodology, or for some forms of damage

amenable to determination on a class-wide basis.  For example, in the case of alternative living

costs, the damage amount established in *Hernandez* was $2,376.81/month.  *Hernandez* FOFCOL

at 42.  Real property diminution also can be determined in a formulaic manner.  *Murphy,* 234

F.R.D. at 607 and n.5 (Court notes that real estate expert "opined that the properties at issue

would be properly subject to mass appraisal to determine their present value."); *Sher v. Raytheon

Co.,*261 F.R.D. 651, 2009 WL 31931 52, *19 (M.D. Fla. 2009) (in environmental pollution toxic

tort case, court found at class certification that plaintiffs provided a "viable model for calculating

property damages on a class-wide basis").

Loss of use and enjoyment and personal property damages could also be assessed for the

class on an individual basis using the same methodology or based on a survey of representative

homeowners.  *In re Chevron U.S.A., Inc.,* 109 F.3d 1016, 1019-20 (5th Cir. 1997) (permitting the

use of statistics to draw inferences about the claims of 3,000 plaintiffs and intervenors who

claimed wrongful death, personal injury, and property contamination from defendant's storage of

hazardous substances which had leaked from crude oil waste pits and migrated into the

plaintiffs' drinking water supply.); *see Watson v. Shell Oil Co.,* 979 F.2d 1014, 1018 (5th Cir. 1992) (approving trial court's proposal to determine punitive damages in a mass-tort class-action suit by fully trying 20 sample claims on *compensatory* damages to the jury and then asking the jury to "establish the ratio of punitive damages to compensatory damages for each class member"); *Hilao v. Estate of Marcos,* 103 F.3d 767, 782087 (9th Cir. 1996). The Ninth Circuit Court of Appeals allowed the use of aggregation and statistical analysis to determine compensatory damages where a statistics expert relied on a random sample of claims to calculate damages for the entire class.); *see also,* Newberg on Class Actions at §10:3 (4th ed.) (citing *Long v. Trans World Airlines, Inc.,* 761 F.Supp. 1320, 1324-1326 (N.D. Ill. 1991) (approving use of a sample of class members' damages in labor dispute as a basis to determine class-wide damages.).

Thus, class-wide property damages can be established by using a common methodology for each individual class member or by a formulaic method. This meets the Rule 23(b)(3) predominance requirement. *Monumental,* 365 F.3d at 419. In addition, the FOFCOL from *Germano* and *Hernandez,* as well as the jury verdict in *Seifart,* demonstrate benchmark damage awards for the cost of remediation, the alternative living costs, property diminution, loss of use and enjoyment and private property damage, that may be used by the court as standards of comparison to review the reasonableness of an expert opinion on these damages or an award of class-wide property damages.

> **c.   Variation of Substantive Law Between Florida and Louisiana Does not Bar Class Certification**

Variation of state law and choice of law are also significant concerns for manageability. *Mullen,* 186 F.3d at 627. Here, these matters are easily managed because there are only two

states' laws to consider, Florida and Louisiana.  There is little significant variation between them on the issue of property damage, and even if there were, that concern  is minimized here because each state class's claim is governed by the law of its own state.  *See Manual for Complex Litigation,* Fourth § 22.634, p. 412 (2004) ("If the choice-of-law and subsequent analysis show little relevant difference in the governing law, or that the law of only a few jurisdictions applies, the court might address these differences by creating subclasses or by other appropriate grouping of claims.").

> **i.      Louisiana Substantive Law Applies to the Louisiana Class Claim**

Federal courts sitting in diversity must apply the choice of law rules of the forum state. *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); *In re Vioxx Products Liability Litigation*, 239 F.R.D. 450, 454 (E.D. La. 2006).  This case, having been filed initially in the United States District Court for the Eastern District of Louisiana, (*Payton* Docket #1) requires the application of Louisiana choice of law rules.  *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 385 n.7 (5th Cir. 2009) (citing *Klaxon*).  Louisiana choice of law rules require the court to determine what state has the most significant relationship to, and interest in, the claim and to determine whose policies would be most seriously impaired if its law were not applied to that issue.  La. Civ. Code Ann. Art. 3515, 3539, and 3542; *Commercial Union Insurance Group v. The Upjohn Company,* 409 F.Supp. 453 (W.D. La. 1976); *Skansi Marine, LLC v. Ameron Intern. Corp.,* 2003 WL 22852221 (E.D. La. 2003). Under these provisions it is clear that substantive Louisiana law would apply to a Louisiana resident's property damage claim for a residence that is located in Louisiana.  *Id.*  This Louisiana law will apply to the claims of Louisiana class representatives and the Louisiana class.

ii.     **Florida Substantive Law Applies to the Florida Class Claim**

Under Louisiana choice of law rules, the fact that Florida is the state where the injury occurred to the class representatives, Dr. Roberts, Karen Vickers, Jennifer and Felix Martinez, and Jason Santiago and the Florida class; and Florida is where the class representatives and class are domiciled, requires Florida law to apply to these claims. *Bishop,* 389 So. 2d 999, 1001; *Harris v. Berkowitz,* 433 So. 2d 613, 615 (Fla. App. 1983). Florida's substantive law makes clear the state's policies to protect its own residents and its own properties from injury and to provide fair compensation to its residents when such injuries occur. *See Bishop,* 389 So.2d at 1001 (explaining that "the state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law … [o]ther factors may combine to outweigh the place of injury as a controlling consideration"); *Harris v. Berkowitz,* 433 So.2d at 615.

Thus, the substantive law of Florida would apply to the Florida class claim and the substantive law of Louisiana would apply to the Louisiana class claim; and variation between the law of the states, if any, would not interfere with the management of the trial of this case. *See Waste Mgmt. Holdings v. Mowbray,* 208 F.3d 288, 296-97, (1st Cir. 2000) (a class action involving eight different states' potentially relevant statutes of limitations in a breach of contractual warranty case); *see also In re Pharmaceutical Industry Average Wholesale Price Litigation,* 252 F.R.D. 83, 107 (D. Mass 2008) (certifying two separate multi-state classes).

As stated above, the factual determination of class-wide liability and property damages are the predominant common issues to be resolved in this case. These types of issue are recognized as pivotal class issues. *Mullen,* 186 F.3d at 626; *Monumental,* 365 F.3d at 419;

*Murphy,* 234 F.R.D. at 606; *McQuilken,* 576 F.Supp. at 1031.  The types of issues that are often

seen as obstacles to class certification: those that require extensive individualized proof like

where class members seeking personal injury damages are exposed to different products, at

different times and suffer different injuries; are not present in this case.  *Mullen,* 186 F.3d at 626;

*Turner v. Murphy Oil,* No. 05-4206, Order and Reasons, slip op at 13-14 (January 30, 2006)

(Comp. Ex. 19).  Similarly, complex choice of law issues are not involved here.  *Mullen,* 186

F.3d at 627.  In contrast to those cases that have not allowed certification, this case presents class

claims where each class member has suffered the same type of injury, during the same time

period, caused by the conduct of the same defendant, a paradigm for class certification:

> In the present case the plaintiffs are an extremely compact and
> discrete geographical group, readily identifiable.  There are no
> choice of law problems.  All claim to have suffered the same type
> of harm, during the same time period, caused by the same conduct
> of the defendant.   This case is thus similar to those cited above in
> which class certification has been granted.  It also differs from
> those "mass tort" cases in which certification has been denied
> because the harm to various class members took place at different
> times and under different circumstances, or because individual
> defenses or choice of law problems existed.

*McQuilken,* 576 F.Supp. at 1031; *see also Mullen,* 186 F.3d at 626-627.

        In sum, the substantive property damage law applicable to CDW claims in Florida and

Louisiana has been established.  *Hernandez* FOFCOL at 44-47;[9] *Seifart* Orders and Verdict

Sheet (Comp. Exs. 1-4).  There is no variation in the law to be applied to members of each class.

---

[9] In addition, Louisiana law supports a property damage claim for diminished value of real estate and loss of use and enjoyment.  *See also Thomas v. Desire Community Housing Project,* 98-2097 (La. App. 4th Cir. 8/10/00), 773 So.2d 755 (allowing non-pecuniary damages of $15,500 for problems in the construction of plaintiff's home); *Taylor v. Burton,* 97-1348 (La. App. 3rd Cir. 3/6/98), 708 So.2d 531 (upholding award for aggravation and mental distress due to defects in plaintiff's house); *Mayer v. Three R's Inc.,* 597 So.2d 151, 155 (La. App. 3rd Cir. 1992) (affirming award for inconvenience and mental anguish), *writ denied,* 600 So.2d 680 (La. 1992); *see also,* LA.CIV. CODE ART. 2524.  *See Bonnette v. Conoco Inc.,* 2001-2767 (La. 1/28/03), 837 So.2d 1219, 1238-1240 (upholding an award for the diminished value of a remediated home because the former presence of asbestos would need to be disclosed to

Class-wide liability and class-wide damages can be established on a common basis.  The trial of this case on these predominant issues is manageable as demonstrated by the Supplemental Proposed Trial Plan (filed simultaneously herewith).  The requirements of Rule 23(b)(3) predominance are readily established.

### 6.        Superiority – Rule 23(b)(3)

Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the class action format is superior to other methods of adjudication:  (1) the class members' interest in individually controlling their separate actions, (2) the extent and nature of existing litigation by class members concerning the same claims, (3) the desirability of concentrating the litigation in the particular form, and, (4) the likely difficulties in class management.  Fed. R. Civ. P. 23; *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 304 (5th Cir. 2009).[10]

A class proceeding is the superior method to adjudicate a major subset of claims in the MDL, the property damage claims against Knauf in Florida and Louisiana.  The exhaustive record of the relevant factual evidence already reviewed by and ruled on by this Court and the *Seifart* Court greatly enhances the manageability of this matter.  A class proceeding will facilitate an expeditious and streamlined resolution for the largest subset of affected homeowners and potentially establish a road map to resolve the remaining claims in the MDL.  This streamlined proceeding is desirable and necessary because the property damage caused by CDW obtained through Knauf has forced many homeowners to abandon their homes and has placed several homeowners under financial pressure including the need to pay two mortgages, loss of credit rating, and foreclosure.  Further, there are no unmanageable obstacles in the trial of these

---

prospective buyers); *see also, e.g., Johnson v. Orleans Parish School Bd.,* 2006-1223 (La. App. 4th Cir. 1/30/08), 975 So.2d 698, 705-706.

claims.  *See* Supplemental Proposed Trial Plan.  For all the reasons stated above, as well as the procedural advantages of avoiding duplicate proceedings on identical issues, class adjudication is the superior method to resolve the property damage claims against Knauf.

## IV. CONCLUSION

In sum, the plaintiffs can readily establish that the proposed class meets the Rule 23 requirements of numerosity, commonality, typicality, adequacy, predominance and superiority. Plaintiffs respectfully request that the class described herein be certified.

---

[10] This Court has recognized that these defective drywall claims against Knauf are meritorious.  *Hernandez* FOFCOL at 44-47.

**PROPOSED CLASS COUNSEL**

Dated: March 10, 2011                    Respectfully submitted,


**FLORIDA CLASS**


/s/ Arnold Levin_____
Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Matthew C. Gaughan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*


Ervin A. Gonzalez
Patrick Montoya
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com


Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

**LOUISIANA CLASS**

/s/ Russ M. Herman
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*


Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com


**PROPOSED OF COUNSEL TO CLASS,
PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Russ M. Herman, Esquire | Arnold Levin (On the Brief) |
| Leonard A. Davis, Esquire | Fred S. Longer (On the Brief) |
| HERMAN, HERMAN, KATZ & COTLAR, LLP | Matthew C. Gaughan (On the Brief) |
| | Levin, Fishbein, Sedran & Berman |
| 820 O'Keefe Avenue | 510 Walnut Street, Suite 500 |
| New Orleans, Louisiana 70113 | Philadelphia, PA 19106 |
| Phone: (504) 581-4892 | 215-592-1500 (phone) |
| Fax: (504) 561-6024 | 215-592-4663 (fax) |
| Ldavis@hhkc.com | Alevin@lfsblaw.com |
| *Plaintiffs Liaison Counsel* | *Plaintiffs' Lead Counsel* |

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931

hlambert@lambertandnelson.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836

sweinstein@forthepeople.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

31

Ervin A. Gonzalez
Patrick Montoya
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA  70057
Phone:  (985) 783-6789
Fax: (985) 783-1333
Andrew@lemmonlawfirm.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com