UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| JOHN CONRY | ) | CIVIL ACTION NO 10-CV-4599 |
|  | ) | 09-MD-2047 |
|  | ) |  |
| -VERSUS- | ) | JUDGE FALLON |
|  | ) |  |
| GERALD "JERRY" DAUGHERTY, | ) | MAGISTRATE JUDGE |
| THE HERB COMPANY, | ) | WILKINSON |
| AND THE HERB IMPORT COMPANY | ) |  |
| INC. | ) |  |

## FIRST AMENDED COMPLAINT

COMES NOW, THE Plaintiff, John Conry, Pro Se, and for a complaint against the

Defendants, states and alleges the following:

I. JURISDICTION AND VENUE

1. This court has jurisdiction over the claims herein pursuant to 18 U.S.C.A §1964(c) and

28 U.S.C.A. §1331.  This civil action arises under the laws of the United States.  Plaintiff

is alleging violations of their rights under Title IX of the Organized Crime control Act of

1970, as amended, 18 U.S.C.A. §§1961 et seq.;


2. Venue herein is proper under 18 U.S.C.A. § 1965 (a) and 28 U.S.C.A. § 1391(b).

II. PARTIES

3. Plaintiff, John D Conry is a citizen of the United States and Residents of the State of

Louisiana.


4. Defendant, Gerald R. Daugherty, is a citizen of the United States, and a resident of the

States of California and Louisiana. Defendant, The Herb Import Company, is a corporation existing under and by virtue of the laws of the State of Louisiana and under and by virtue of the State of California.

## III. CHRONOLOGY OF EVENTS

5. In January of 2007, Plaintiff, John Conry, contracted to purchase a renovated house from Defendant, Gerald Daugherty, for the property located at 123 Fremont St, in New Orleans, Louisiana (hereinafter, "the property.").

6. As a part of the contract to purchase Daugherty agreed to spend $60,000 or more renovating the property.

7. When the property was not ready in May of 2007, Conry and Daugherty signed a supplemental agreement allowing Daugherty more time to complete the work and again agreeing to spend more than $60,000.00 on the Hurricane Katrina Repairs. Conry also paid Daugherty approximately $10,000.00 for certain special improvements including bamboo floors and a special air filtration system to help with his wife's allergies. On information and belief, Daugherty spent less than $30,000.00 on the renovation, and part of his cost savings was achieved through he use of Toxic Chinese Drywall.

8. In July of 2007, Conry and Daugherty signed an Act of Sale for the property and Conry

took possession of the property.  The sale was financed by Daugherty in the amount of $180,000.00 and Conry.

9. Conry, along with Plaintiff's Reine PEMA SANGA and Rosine PEMA SANGA moved into the house in the summer of 2007, and purchased appliances for the home including, but not limited to: a Gas Powered Dryer, Washing Machine, Refrigerator, Gas Stove and Oven, Microwave and a Dish Washer.

10.  By winter of 2007 a metal soap and shampoo holder in the property's bathroom showed rust, Plaintiff's assumed that it was due to poor quality manufacture quality.

11. In Spring of 2008 the Air Conditioning Unit in the Property failed, Plaintiff's called AC Ambulance, who recharged the unit with Freon.

12. Over the summer of 2008 AC Ambulance replaced a copper line between the condenser and the internal unit and the condenser coil as well as charging the unit three times.

13. Other metal items also began showing signs of rust in 2008, Plaintiff's still had no idea why.

14.  By winter of 2008 Plaintiff began experiencing sinus issues which they attributed to allergies.

-3-

15. In Summer of 2009 the AC unit continued failing at the property, Plaintiff's began calling different HVAC companies, believing that AC Ambulance did not know what they were doing. The new HVAC repairman that came to the property in August of 2009 indicated that he thought the house had Chinese Drywall.

16. Plaintiff's contacted Gurtler Brothers Consulting to Determine whether Chinese Drywall was used in the renovation of the Property.

17. In September of 2009, Gurler Brothers Produced their report on the Property, indicating Chinese Drywall was used throughout and serious damage was caused by the use of the toxic product.

18. Plaintiff's immediately sought other accommodation after researching the potential health affects of the Chinese Drywall and moved out of the Property in November of 2009.

19. In January 2010, Daugherty and Conry entered into negotiations regarding the Chinese Drywall, Daugherty asked Conry to bring payments up to date on the property and Conry made a payment of approximately $3,000.00 on January 13, 2010, bringing the mortgage current.

20. In July 2010, Daugherty caused his attorney to offer Conry a settlement of the Property

where Daugherty would discount the sale price to $150,000.00 if Conry refinanced the property.

21. Conry was unable to accept the offer and Daugherty demanded the Mortgage be brought current. Conry issued a check drawn on his business I Write It, LLC for $10,500.00 to be cashed on July 30, 2010. Daugherty deposited the check on July 29, 2010, Conry made a large Cash deposit to cover the check on July 30, 2010.

22. Unbeknownst to Conry, his bank had closed the account automatically on July 29, 2010, and reopened it when he made the large Cash Deposit the following morning.

23. The next week a contractor who was working on the Property cashed a check that he (the contractor) was supposed to hold, and did not notify Conry. Conry saw the large check cleared and assumed it was the Check to Daugherty.

24. In mid August 2010, Daugherty contacted Daugherty and stated that Conry's check had been returned stamped account closed. Conry called his bank and was then informed that the account had been closed and reopened. He also learned that the contractor had cashed the large check the next week.

25. When Conry explained the situation to Daugherty, he offered to collect the funds from the contractor and pay Daugherty. Daugherty stated that Conry should have the contractor

do the work on the Property and he would work with Conry on mortgage payments during the renovation.

26. The contractor began working on on the property and Conry spent a total of $33,250.00 on the summer and fall of 2010.

27. In late September of 2010, Daugherty demanded further payment on the mortage and threatened to "take the check to the DA" if Conry did not renovate the property, return it to Daugherty, wave his right to sue Daugherty for Chinese Drywall use, and pay double his back mortgage amount. Daugherty made this threat over the phone on a call from California to Louisnana.

28. Sometime in September or October of 2010, Conry allegedly wrote a check to Daugherty for $3,500.00 towards the mortgage payments in the earlier check that was returned NSF, when notified Conry immediately caused his contractor to issue a Cashier's Check for the $3,500.00.  Between the two returned checks, there existed a debt of $7,000.00 after the Cashier's Check.

29. Daugherty then asked conry to go forward with the return of the Property in cancellation of the Mortgage.   Daugherty caused his attorney to forward paperwork to Conry in early December of 2010 and at the same time sent a text message that said if Conry did not go forward with the transaction on December 7, 2010, that he would take the returned checks

to the District Attorney and Conry would "go to jail." He also made a similar threat on Monday, December 6, 2010.

30. The paperwork Daugherty forwarded included a return of the property to Daugherty in payment of the $180,000.00 mortgage, $17,000.00 in additional mortgage payments, waiver of the suit regarding Chinese Drywall, and paying for the full cost of renovation withing two weeks of closing. A total of at least $70,000.00 in benefits to Daugherty that he were due under no interpretation of the contract between the parties nor in tort.

31. Since Daugherty finally put his in writing, Conry now believed that he was safe in avoiding Daugherty's blackmail scheme. As a result of the extortion, Conry spent at least $50,000.00 in additional funds to Daugherty's benefit, repairing the building or improving it.

32. When Conry refused to go forward with sale, Daugherty again threatened to take the issue to the district Attorney, Conry suggested he consult with a criminal attorney regarding potentially exposing himself to extortion charges before he did so.

33. Daugehrty then caused his attorney to send a demand letter to collect the $7,000.00 in unpaid balance for the returned $10,500.00 check. However, instead of accurately stating the amount due, Daugherty caused his attorney to demand payment of the full amount of the $10,500.00 check and the $3,500.00 check toward the same debt that he had already been

-7-

paid for. So, he fraudulently claimed a debt of $14,000.00 when the real debt was only $7,000.00.

34. Defendants caused their attorney to file a Petition for Excecutory Process and to attest to the veracity of its allegations which included a false allegation of amicable demand and a false statement of the date of last payment, again ignoring that Daugherty received a cashier's Check in November 2010.


## IV CLAIM FOR RELIEF UNDER RICO

35. Gerald Daugherty is an enterprise engaged in and the activities of which affect interstate commerce and foreign commerce, to wit Gerald Daugherty, The Herb Company and the Herb Import Company associates in fact to generate money for Gerald R Daugherty.


36. Defendants, Gerald Daugherty, The Herb Company and The Herb Import Company, as persons within the meaning of 18 U.S.C.A. § 1961 (3), through a pattern of racketeering activity acquired and interest in The Herb Import Company of California and Maintained control of the Herb Import Company of Louisiana, both in violation of 18 U.S.C.A. §1962 (b).


37. Defendants, Gerald Daugherty, The Herb Company and The Herb Import Company as persons within the meaning of 18 U.S.C.A. § 1961 (3), and as persons associated with or

employed by said enterprise conducted and participated, directly and indirectly, in the

conduct of the affairs of said enterprise through a pattern of racketeering activity in

violation of 18 U.S.C.A. §1962 (c).

38. The **seven** predicate acts which constitute a pattern of racketeering activity are:

1- Daugherty Faxed and or Mailed a signed copy of a document Entitled

"Purchase Agreement" to John Conry in which he fraudulently stated that he

would conduct about $60,000.00 worth of renovations on a house Conry was to

purchase rom Daugherty on or about January 29, 2007, he spend less than half that

amount;

2- Daugherty Represented by Telephone that he would not purchase any products

in said renovation that were the cheapest on the market, he did in fact use the

cheapest, Chinese Drywall, causing all three of the plaintiff's significant damage;

3- Daugherty again faxed or mailed a new copy of the same agreement to spend

$60,000 on renovations for the property on or about April 27, 2007, knowing he

would spend less than half that amount;

4- When the Chinese Drywall was discovered Daugherty demanded a large sum of

mortgage payments be made all at once. Plaintiff, John Conry, delivered a check to Daugherty but the check was returned due to a Banking Error. Daugherty began an extortion scheme to force Conry to complete renovations on the property, pay double his back mortgage payments and waive his right to sue Daugherty for his role in the installation of the Chinese Drywall. Daugherty repeatedly threatened to take the returned check to the District Attorney's office and have prosecution instituted by telephone, from California, if Conry did not comply. Finally, Daugherty texted his threat to Conry from California, if Conry did not sign paperwork Daugherty has emailed on Tuesday, December 7, 2010, Daugherty would take the returned checks to the District Attorneys Office that same day. (See Exhibits A, "Proposed Documents" and B, "Forwarded Text.")

5- On Monday, December 6, 2010, Daugherty again texted Conry that he could get arrested if he did not consent to the paperwork. Conry responded by sending Daugherty's attorney a letter explaining the problems with the paperwork, that Daugherty has been forcing Conry to do renovations under a threat of criminal enforcement and that, now that Daugherty had made his threat in writing, Conry no longer felt compelled to go forward with the "closing, loan and waiver of rights."

6- On December 9, 2010, Daugherty caused his attorney to send two letters in an attempt to collect on the returned checks. The letter stated that Conry had written

two checks which were returned.  One in the amount of $10,500.00 (the check returned due to a banking error) and another in the amount of $3,500.00, issued as partial payment of the same debt while Conry conducted renovations on the building and which Daugherty had been given a Cashier's check for already. Daugherty demanded that Conry pay him $14,000.00 within fifteen days or Daugherty would seek $28,000.00 plus attorney's fees.  Essentially, Daugherty knowingly caused his attorney to seek collection of $7,000.00 worth of debt that did not exist. (See Exhibit C, "Collection Letters," and Exhibit D, "Cashier's Check Receipt.")

7- That on or about January 4, 2011, in response to Plaintiff's original Complaint, Defendants caused their attorney to file a Petition for Executory Process and to swear to its allegations.  Amongst those allegations were two false statements: First, the allegation of amicable demand; and, Second, the allegation concerning amounts paid.  This was a fraudulent abuse of process and perjury on the part of the Defendants and Mr Davidson, who, much to plaintiff's surprise, affirmed his personal knowledge of all the allegations in the petition.  Even knowing that they had been sued under a racketeering statute, defendants did not cease their criminal acts.

39. These acts of racketeering, occurring within ten years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C.A. §1961(5).

-11-

40. Plaintiff was injured in his business or property by reason of this violation of 18 U.S.C.A. §1962 in that, as a direct and proximate result of Defendant's Complained of Acts, Plaintiff Suffered Damages including:

1-  Plaintiff Purchased and lived in a home that was at an inflated price;

2-  Plaintiff was forced to repair drywall, wiring, plumbing and other aspects of the property at his expense when it should have been paid for by Defendant;

3-  Plaintiff lived in a house that emitted toxic gas for years before they even because aware of it;

4-  Plaintiff's right to claim Redhibition may have prescribed as a result of Daugherty's extortion scheme;

5-  Plaintiff made significant renovations and upgrades to the property which have lost all of their value due to the use of substandard renovation supplies;

6-  Plaintiff has suffered mental pain and anguish for a total of about

$230,000.00 in direct damages.

41. By reason of the defendants violation of 18 U.S.C.A. §1962, Plaintiff is entitled, pursuant to 18 U.S.C.A. §1964(c), to threefold the damages sustained or $690,000.00, with interest thereof at 10% per anum and reasonable expenses and attorney's fee in connection herewith.

42. Plaintiff specifically alleges that the Defendants violated the following statues:§891-894; relating to mail fraud under §1341; obstruction of justice under §1503; interference with commerce, robbery or extortion under §1952; 2315; use of chemical weapons under §229-229F; fraud connected with the sale of securities and many other activities; and Perjury and Fraudulent Abuse of Process.

## INTERPLEADER UNDER FED R CIV P 22

44.     Stakeholder and Plaintiff filed this suit against Defendants Gerald Daugherty and The Herb Import Company in this court on December 22, 2010. Stakeholder reiterates and reasserts all of the allegations hereinabove.

45. On or about January 10, 2011, Defendant in the above captioned matter filed a Petition for Executory Process ("foreclosure").

-13-

46. This court has Jurisdiction over this Interpleader suit because it arises under 18 U.S.C.A. 1964, 1963 and 1343.  This matter presents a Federal Question under the RICO statute.

47.  Venue is proper in this district under 28 U.S.C.A. 1391 because defendant is a resident of this district.

48.  The Property subject to this Interpleader is the property located at 123 Fremont Street in New Orleans, Louisiana, the same property over which Plaintiff filed his complaint.

49. The value of the property subject to this interpleader is greater than seventy five thousand dollars.

50. There are multiple claims to the property subject to this interpleader: 10-CV-4599/09-MD-2047, Conry versus Daugherty, and CDC 2011-227, Daugherty versus Conry.

51. Claimants' interests in the property subject to this interpleader are adverse.  Plaintiff herein, Conry, seeks to have the original note and sale declared invalid as a result of Daugherty's fraud and to collect for damages caused to him by Daugherty's subsequent artifices of fraud.  Daugherty seeks to foreclose on the property and collect on the note.

52. Should Daugherty succeed in foreclosing on the property Conry's rights in this matter,

filed first, would be prejudiced.

53. Plaintiff requests that costs and attorney's fees be assessed to Defendant as Defendant did not have the right to file a foreclosure and committed material acts of fraud in the Petition for Executory Process. Specifically, Defendant filed the foreclosure in the Civil District Court for the Parish of Orleans after being notified that Jurisdiction had been established in this court by the above captioned action, 10-cv-4599.

## V. STATE LAW CLAIMS

54. Plaintiff purchased the property from Mr Daugherty in August of 2007 based on Fraudulent misleading statements by Defendant, Daugherty. Specifically, Daugherty said he had renovated the house using high quality materials and that he "never got the cheapest anything" and his statement that he would spend at least $60,000.00 on the renovation.

55. In reality, Daugherty had saved a large amount of money in the renovation by using Chinese Drywall and other substandard materials and fixtures and spend less than half what he was obligated to spend under the purchase agreement.

56. Chinese Drywall rendered the house unsuitable for its intended use because the it filled the house with toxic cancer causing emissions and destroyed plumbing and wiring. The

drywall was brand named, "Crescent City Gypsum Incorporated."

57. The use of Chinese Drywall constituted a vice of consent in that plaintiff would not have purchased home had they known it would not be habitable. Furthermore, it constituted a Redhibitory defect and a breach of an express warranty to use materials of a certain quality in preparing the home for habitation.

58. Daugherty was not simply the seller of this property, he was the general contractor on its renovation after it was flooded by Katrina. He integrated them into the home as well making him a manufacturer for purposes of the Louisiana Products Liability Law.

59. The use of Chinese Drywall violated the New Home Warranty Act.

60. The use of the Chinese Drywall was a breach of Daugherty's Duty of Care to use good quality materials, and his statutory obligation under the International Building Code as well as other state and local building codes. Had Daugherty used reasonable care, he would have verified the safety of a drywall priced so far below market rates, and would have confirmed with the Buyer/Contractee that its use was acceptable. Failure to exercise reasonable care caused Plaintiff's extensive financial, professional and health damages.

61. Plaintiff's believe that Daugherty was already aware of the "off gassing" when the property was sold to them because the property had the Chinese drywall without air

conditioning, in June 2007, while other work was done on the house.

62. Daugherty's use and sale of the Drywall constituted a violation of the New Home

Warranty Act, the Louisiana Products Liabity Act, Redhibition, Consumer Protection Act,

a vice of consent, Negligence, Negligence Per Se, a Private Nuissance, a Negligent

Discharge of a Toxic Substance, Daugherty was unjustly enriched by the sale of the

defective home.

63. In January of 2010, Plaintiff, John Conry, discussed the matter with Daugherty who

agreed to make an offset to mortage payments for the period of rennovations.  Conry

hired a contractor to do the rennovations.  In July of 2010, Daugherty sent a letter placing

Conry in Default on his mortage.  Conry Paid the amount due and requested the check be

held for deposit until Friday, July 2, 2010.  Daugehrty deposited it on Thursday, July 1,

2010.  The check was returned due to a banking error.

64. In late August, Daugherty, for a second time, agreed to cease collecting the mortgage

while renovations were underway. Once repairs were nearly complete Daugherty

threatened to take the returned Mortgage Payment check to the District Attorney's office

and "have you [Conry] arrested" if he did not make an immediate mortage payment.

65. On November 9, 2010, Plaintiff, Conry, delivered to Daugherty a Chashier's Check

drawn on Regions Bank for $3,500.00. (No. 5003753909).  Daugherty then stated he

wanted to quickly close the return of the house.

66. Daugherty had his attorney forward closing documents titled "Partiel Dation en Paiment" to Conry in which the following terms were presented:

      a- Return of the fully renovated and unencombered house;

      b- Payment of $17,000.00 in a note to Daugherty over a two year    period;

      c- Waiver of Plaintiff's rights to sue Daugherty regarding his use of defective

      Toxic  Chinese Drywall in violation of his express warranty.

Conry noted that Daugherty was demanding well over the $180,000.00 due on the original note and interest.

67. On Friday, December 3, 2010, Daugherty texted Conry that if he did not finish the paperwork by the following Tuesday he would go to the District Attorney with the returned Check.  On Monday, December 6, 2010, Daugherty again threatened to take the returned check to the District Attorney if Conry did not sign the Dation.

68. The amount Conry was asked to waive or agree to pay was at least $60,000.00 more than he owed Daugherty on the property and threatened with criminal prosecution if he did not agree.

69. Defendant's negotiation in bad faith was an attempt to force Plaintiff into renovating the property and/or delay their filing of suit.  Any prescriptive periods should be tolled by

Daugherty's Bad Faith negotiations.

70. Plaintiff Pray that this court find:

1) for threefold damages actually sustained and the costs of this suit, in sum and not less than $2,000,000.00 including reasonable attorney's fees pursuant to 18 U.S.C.A. §1964(c) with interest thereon at the rate of ten percent (10%) per anum;

2) For any other relief, including punitive damages, that the court may award under 18 U.S.C.A. §1964 and for such other relief as may be granted under plaintiff's state law claims, spelled out below:

3) That the original sale was based on a fraudulent representation  regarding the quality of materials and that using Chinese Drywall violated the warranty of Redhibition as well as other express warranties, and that the sale suffered from the vice of fraud or mistake and was therefore invalid:

a) All of the work done by the Plaintiff's to renovate, improve and repair the Fremont Property should be resolved under an Unjust Enrichment Theory; and

b) Defendant should be liable to Plaintiff's for pain and suffering, medical supervision and risk of future disease as well as loss of use; and

c) Defendant should pay plaintiff for the damage to his business caused by

Defendant's extortion and fraud schemes including, but not limited to, the loss of his building located at 1100 Clearview Parkway in Metairie Louisiana and damage to Plaintiff's credit and reputation caused by Defendant's abuse of process in filing for Executory Process without right and/or on a contract he fraudulently induced plaintiff into signing.

OR

4) In the event that this court finds the original sale of the property was valid, that the installation of Chinese Drywall in the property violated a duty of care causing harm to Plaintiff, or any other theory of warranty, negligence, product liability, or unspecified theory of law or equity:

a) That the full amount of the renovation be paid by Daugherty and additional living expenses and damage to Plaintiff's possessions;

b) That Daugherty be held liable for Plaitniff's medical supervision, pain and suffering and any other damage available under any theory of law herein expressed or not expressed but later discovered through the litigation process;

c) The full damages caused by Defendant's extortion scheme and other fraud schemes including, but not limited to any and all damages to plaintiff's business or reputation as listed above.

AND

3) That Daugherty be ordered to pay punative damages for his malicious bad faith in negotiating and in placing the toxic drywall in the Fremont Property despite assurances he would not do so.

Plaintiff demand a trial by jury on all issues trialbe by jury.

WHEREFORE, Plaintiff , JOHN CONRY  respectfully prays that THEIR Petition for Damages be deemed good and sufficient, and that Defendant, Gerald Daugherty be duly served and cited with a copy of this Petition for Damages and that it be made to appear and answer same within the delays allowed by law, and that after all due and legal proceedings are had herein, for the reasons set forth herein, that there be judgment entered in favor of Plaintiff , JOHN CONRY and against Defendant Daugherty, in an amount that is reasonable under the premises, and together with all costs of these proceedings, for penalties and attorney fees, for legal interest from the date of judicial demand until paid, and for all general and equitable relief.

Respectfully submitted,

**John D Conry PRO SE**
**4053 Turtle Bayou Dr**
**Kenner, LA 70065**
**504-324-2387**
**504-754-7556 (f)**

**PLEASE SERVE**:
GERALD DAUGHERTY AND THE HERB IMPORT COMPANY
Through Counsel of Record
John A Davidson
2901 Independence Street
Suite 201
Metairie, LA 70006