UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL 2047 <br> SECTION: L |
| This document relates to: | * * | JUDGE: FALLON |
| *Vickers, et al v. Knauf Gips KG, et al* <br> EDLA 09-04117 | * * * | MAG. JUDGE WILKINSON |
| *Payton, et al v. Knauf Gips, KG, et al* <br> EDLA 09-07628 | * * * | |
| *Silva, et al v. Arch Insurance Co., et al* <br> EDLA 09-08034 | * * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANTS' MEMORANDUM TO THE COURT**
**ON ISSUES OF SCHEDULING AND CLASS CERTIFICATION**

MAY IT PLEASE THE COURT:

    Pursuant to the Court's March 3, 2011 Order, Defendants Banner Supply Company, Banner Supply Company Pompano, LLC, Banner Supply Company Fort Myers, LLC, Banner Supply Company Tampa, LLC Banner Supply International, LLC (collectively "Banner" or "the Banner entities") and Interior Exterior Building Supply, L.P. ("INEX") (the foregoing parties are all collectively referred to herein as "Defendants"), by and through their counsel, hereby presents the Court with this their Memorandum on Issues of Scheduling and Class Certification as follows:

1

## I. INTRODUCTION

Defendants present this memorandum to apprise the Court of conversations and developments between the parties related to the existing Scheduling Order, the designation of witnesses and class representatives, and the general participation – and in some cases, lack of participation – in the discovery process. Defendants now ask this Court to enter the proposed Scheduling Order[1] previously submitted by them (a copy of which is attached hereto as Exhibit "A"), which provides a deadline for Plaintiffs to amend their motions for class certification to name the Class Representatives in *Silva*, *Vickers* and *Payton* and allows Defendants sufficient time to complete the discovery of the Class Representatives, as well as a reasonable number of fact witnesses, and expert witnesses in preparation for a class certification hearing in August 2011.

## II. LEGAL STANDARD FOR CLASS CERTIFICATION

Plaintiffs seek to certify these classes pursuant to Rules 26(b)(3) and 23(b)(2)[2] of the Federal Rules of Civil Procedure. As the parties moving for certification, Plaintiffs bear the burden of demonstrating that the requirements of Rule 23 have been met. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir.1998). The district court must conduct a "rigorous analysis of the Rule 23 prerequisites" in deciding whether to certify a class. *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996).

Framed for situations in which "class-action treatment is not as clearly called for" as it is in

---

[1] This Court has asked for proposed class certification schedules with a hearing date sometime this summer. Defendants reserve their objections to proceeding with such a hearing on the basis that the Plaintiffs in this case, with a handful of exceptions, have refused to comply with discovery served on them in 2009 and 2010, hundreds of Plaintiffs failed to submit profile forms, and hundreds of Plaintiffs failed to submit *complete* profile forms. Moreover, even the proposed class representatives have failed to completely respond to discovery.

[2] Plaintiffs only seek certification pursuant to Rule 23(b)(2) for a class seeking declaratory judgment against INEX's insurers. Plaintiffs seek certification of the Louisiana and Florida damage classes against Knauf, Banner, and INEX pursuant to Rule 23(b)(3).

2

Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit "may nevertheless be convenient and desirable." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 615-18 (1997); s*ee also,* Adv. Comm. Notes, 28 U.S.C.App., p. 697. To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23() prerequisites: Common questions must "predominate over any questions affecting only individual members" and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* Determining whether legal issues common to the class predominate over individual issues requires that the court inquire how the case will be tried. *Castano,* 84 F.3d at 744. This entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class. *Id.* "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *In re Katrina Canal Breaches Consol. Litig.*, 258 F.R.D. 128, 132 (E.D. La. 2009*)* ( citing Manual for Complex Litigation § 30.11 (3d ed. 1995)).

Even if Rule 23(a)'s commonality requirement may be satisfied by a shared experience amongst the claimants, the predominance criterion is far more demanding. *See Amchem Products, Inc.*, 521 U.S. at 623-24. For example, courts have refused to certify classes involving product defects, construction defects, mass torts, toxic exposure, and other cases involving highly

3

individualized damage questions.[3]

### III. ISSUES RELATED TO SCHEDULING AND CLASS CERTIFICATION

#### A. Since September 20, 2010 Plaintiffs' Steering Committee Has Continually Changed the Class Representatives Who Are Movants In The Motion For Class Certification.

Due to Plaintiffs' multiple changes to the Class Representatives lineup, a brief timeline of the events surrounding the Class Representative revisions is necessary:

**Initial Class Representatives**

- September 21, 2010 - Plaintiff, Mr. Stephen Silva, filed a Motion for Class Certification seeking to represent all Louisiana Homeowners with Chinese Drywall supplied and/or distributed by Interior Exterior ("The *Silva* Class"). (Rec. Doc. 5567).[4]

- September 21, 2010 - Plaintiffs, Mr. Freddie Nunez and Dr. Steven Roberts, filed a Motion for Class Certification seeking to represent all Florida and Louisiana homeowners with

---

[3] *See Amchem Products, Inc.*, 521 U.S. at 623-24 (finding a class for damages for Asbestos exposure cannot satisfy the Rule 23(b)(3) predominance standard"); *Jacobs v. Home Depot U.S.A., Inc.*, 219 F.R.D. 549, 551 (S.D. Fla. 2003) (denying certification for a product liability class because of , among other things, the need for site-specific inquiries, the diversity of property conditions, the level of individual knowledge about the safety of the product, the involvement of intervening parties and intervening acts of negligence, the relative immaturity of the tort, and perhaps most importantly, potential difficulties in product identification" prevent certification); *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1018-19 (7th Cir.2002) (varying types of defective tires barred finding of predominance); *Castano,* 84 F.3d at 742 n. 15 ("different products, for different amounts of time, and over different time periods" impacts "causation, reliance, comparative fault, and other affirmative defenses"); *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 673 (N.D. Ohio 1995) (different manufacturers, distributors, and related companies prevents certification); *Martin v. Home Depot U.S.A., Inc.*, 225 F.R.D. 198, 202-03 (W.D. Tx. 2004) ("The conduct of thousands of non-parties-building contractors and their agents, the manufacturers of the wood itself, and retailers and other sellers not named herein … precludes any finding of typicality or predominance.); *In re Katrina Canal Breaches Consol. Litig.,* 258 F.R.D. 128, 134 (E.D. La. 2009) ("[t]he necessity of calculating damages on an individual basis, by itself, *can* be grounds for not certifying a class.")

[4] Silva's original Motion for Class Certification was filed in "EDLA case no. 09-8034," which is *Silva, et. al v Arch Insurance Co., et. al.*  While the PSC sometimes mistakenly refers to this case as *Silva v. Knauf KG, et. al.*, as was done on the Motion for Class Certification, Knauf is actually not a defendant to the action.  Until recently, every pleading related to the *Silva* class motion only ever listed "EDLA case no 09-8034."  This is significant, of course, because 09-cv-8034 does not contain the substantive allegations of INEX's liability, instead only addressing insurance coverage issues.  Then, last week  - for the first time - in Plaintiffs' Motion for Leave of Court to File its Substituted Motion for Class Certification, the caption provided that the pleading applied to both *Silva, et. al. v. Interior Exterior Building Supply, LP et al.*, Civ. Action No. 09-08030 (E.D.La.) and *Silva et al v. Arch Insurance Company, et al.*, Civ. Action No. 09-08034 (E.D.La.).  It is unclear if this addition of Civil Action no. 09-8030 is intended to be an addition or a correction, as it was done without notice.  But in any event, it further evidences the unnecessary haste and resulting imprecision of Plaintiffs in pressing forward with the class certification proceedings.  INEX and its insurers are entitled to clarification (and explanation) of this discrepancies before class certification discovery can fairly continue.

4

- Chinese Manufactured Drywall supplied and/or distributed by KPT ("The *Payton* Class"). (Rec. Doc. 5612).

- September 27, 2010 - Plaintiffs, Ms. Karen Vickers and Dr. Steven Roberts, filed a Motion for Class Certification seeking to represent all Florida Homeowners that had Chinese Manufactured Drywall sold and/or distributed by Banner ("The *Vickers* Class"). (Rec. Doc. 5611).5

- January 12, 2011 – Based on the original four Class Representatives identified, this Court entered a Scheduling Order for the *Vickers*, *Silva*, and *Payton* actions setting various deadlines. (Rec. Doc. 6958).

**First Class Representative Change**

- January 25, 2011 - Plaintiffs informed KPT of their intention to amend the Class Representatives in all three actions. *See* Supplemental Declaration by Ronald E. Wright, P.E. (Rec. Doc. 7139); (*See* Counsel Emails attached as Exhibit "B"). The Class Representatives were identified by Plaintiffs as follows:

    o *Silva*: Dean and Dawn Amato and Edward and Susan Boudreaux;

    o *Payton*: Byron and Debra Byrne, Edward and Susan Beckendorf, Donald and Marcelyn Puig; and Miriam Castro (and Felix Diaz),

    o *Vickers*: Miriam Castro (and Felix Diaz), Elizabeth Montoya (and Luis Ochoa), Liam Quach (and Ann Naoc Thile), and Giancarlo Visciglia.

- January 25 – February 3, 2011 – defendants repeatedly attempted to confer with Plaintiffs regarding this first Class Representative change in light of the original Scheduling Order entered by the Court. (*See* Counsel Emails attached as Exhibit "C").

**Second Class Representative Change**

- February 3, 2011 - Plaintiffs confirmed to defendants that they were amending the Florida Class Representatives such that the only Florida Class Representative would be Dr. Steven Roberts. (*See* Counsel Emails attached as Exhibit "D"). The Class Representatives were then identified as follows:

    o *Silva*: Amato and Boudreaux;

    o *Payton*: Byrne, Beckendorf, Puig and Roberts;

    o *Vickers*: Roberts.

---

5 In a curious move, Plaintiffs filed identical motions in both *Vickers* and *Payton* against Banner, naming Vickers and Roberts as movants. Plaintiffs failed to differentiate between the two actions in any way other than the fact that Roberts was a named Class Representative in *Payton* and *Vickers*, and Vickers was a named Class Representative in *Vickers*. In the interest of clarity, this class will continue to be referred to as The *Vickers* Class, as indicated.

5

- February 3, 2011 - Plaintiffs, KPT, and the other defendants agreed that, in light of the Class Representative changes, the previous Scheduling Order was unworkable and that a new Scheduling Order and Class Certification Hearing date was necessary. (*See* Counsel Emails attached as Exhibit "E").

**Third Class Representative Change**

- February 11, 2011 - Plaintiffs changed the Class Representatives of the *Vickers* Class by adding an additional three Class Representatives from Florida: Karen Vickers (who had originally been listed but later dropped as a movant), Felix and Jenny Martinez, and Jason Santiago. (*See* Counsel Emails attached as Exhibit "F"). The Class Representatives were then identified as follows:

    - *Silva*: Amato and Boudreaux;
    - *Payton*: Byrne, Beckendorf, Puig, and Roberts;
    - *Vickers*: Roberts, Vickers, Martinez, Diaz and Santiago

- February 14, 2011 - Despite the Plaintiffs' repeated modifications to the number of Class Representatives, Plaintiffs informed defendants that they would not agree to the six (6) plaintiff fact witness depositions set forth in the original Scheduling Order, rather the plaintiffs would only agree to two (2) fact witnesses per class. (*See* Counsel Emails attached as Exhibit "G").

**Fourth Class Representative Change**

- February 15, 2011 – Plaintiffs confirmed to KPT that Mr. Boudreaux was being removed as a Class Representative in the *Silva* Class, and that Byrne, Beckendorf, and Puig were being added as Class Representatives. *See* Plaintiffs' Motion to Intervene (Rec. Doc. 7490-3); (*See* Counsel Emails attached as Exhibit "H").

    - *Silva*: Amato, Byrne, Beckendorf, and Puig;
    - *Payton*: Byrne, Beckendorf, Puig, and Roberts;
    - *Vickers*: Roberts, Vickers, Martinez, Diaz and Santiago

**Fifth Class Representative Change**

- March 9, 2011 – Plaintiffs announced to Banner that they were withdrawing class members from the *Harrell* class once the claims against Banner in *Vickers* were settled. This development left Dr. Steven Roberts as the sole moving Class Representative in *Vickers* with claims against Banner. (*See* Counsel Emails attached as Exhibit "I").

    - *Silva*: Amato, Byrne, Beckendorf, and Puig;

6

- o *Payton*: Byrne, Beckendorf, Puig, and Roberts;
- o *Vickers*: Roberts (sole moving class member with claims against Banner)

**Sixth Class Representative Change**

- ι March 9, 2011 – Plaintiffs announced to Banner that they were withdrawing class members from the *Harrell* class once the claims against Banner in *Vickers* were settled. This development left Dr. Steven Roberts as the sole moving Class Representative, with Diaz as an unofficially named Class Representative in *Vickers* with claims against Banner. (*See* Counsel Emails attached as Exhibit "I").

**Seventh Class Representative Change**

- ι March 10, 2011 – Plaintiffs filed a Motion for Leave to file Substituted Motion for Class Certification against Banner.  Banner's counsel received that pleading this morning after having drafted this brief and has not yet had time to review the PSC's latest filing.  At first glance, it appears that the PSC is asking this Court for permission to add, some time in the future, an additional class representative, Mr. Felix Diaz.  Obviously, Banner has not yet responded to the Motion for Leave and the Court has not yet ruled on the PSC latest effort to add Mr. Diaz and amend its prior positions.

This timeline clearly demonstrates that Plaintiffs have maintained a virtual revolving door of designated class representatives, some for only days at a time. With this list in a constant state of flux, Defendants have been unable to focus on obtaining the necessary discovery from the designees, for fear of the PSC popping up to change the representatives yet again. <u>Compounding the problem, the PSC has never agreed to defense counsel's repeated requests that the PSC certify that it is done with changes to its designation of class representatives so that Defendants do not waste resources gearing up to hit a constantly moving target.</u> (*See* Counsel Emails attached as Exhibit "J").  A deadline by which time Plaintiffs must settle on their final representatives would provide all parties with a solid basis from which they could formally prepare for the class certification hearings.[6]

---

[6] The Defendants, in an effort to accommodate the PSC and move this process along, have taken as many steps as possible to start preparations, such as taking or scheduling future inspections.  Most of that time, however, has been wasted because Defendants continued to change the schedule based on the PSC's latest revisions and corrections.  The Defendants have incurred significant expenses and fees as a result of the Plaintiffs playing musical chairs with the class representatives.

7

### B. Plaintiffs Seek to Unfairly Limit the Number of Fact Witnesses Available to Defendants

Originally Plaintiffs have indicated that they wish to limit the Defendants resources so as to cap the available fact witnesses to Defendants at two class member fact witnesses per class. (*See* Exhibit "G"). They have since relinquished and offered to allow Defendants four class member fact witnesses per class. However, at the most instinctual level, limiting Defendants' access to fact witnesses to even twelve individuals as named witnesses is simply untenable in case involving literally thousands of plaintiffs. At the same time, Plaintiffs are insisting on allowing themselves seven or eight class representatives in each of the actions in which they have moved for class certification (all this despite the fact that they have apparently not settled on which individuals those representatives will be).

Pursuant to the Court's original January 12, 2011 Scheduling Order, the Defendants were limited to ten depositions of class members, including the proposed class representatives, in each of the three actions. The PSC, however, contends that the Court's January 12, 2011 Scheduling Order applies collectively to *Payton*, *Vickers*, and *Silva* so that the Defendants in all three actions were limited to ten total depositions, the four named class representatives (two in Louisiana and two in Florida) and six other class members collectively from the four proposed classes. Even under this interpretation, the Defendants in all three actions were allowed to take the deposition of putative class members in a ratio of 3:2 with class representatives. Applying this same ratio to the PSC's latest proposal for class representatives would result in the Defendants in just the two Louisiana class actions (*Payton* and *Silva*) being allowed to depose twelve class members in addition to the eight named class representatives. Defendants can accept this (6 per class) as a fair number of non-moving class member fact witnesses.

Perhaps most troubling about Plaintiffs' position is the fact that Plaintiffs filed a list identifying fact witnesses for the class certification hearing wherein they named eighteen individuals specifically as witnesses, in addition to seventeen witness roles for corporate designees or records custodians, and a final catch-all designation for any witness deposed in the MDL or otherwise identified in MDL discovery. Such posturing is inconsistent at best and insincere at worst. Plaintiffs cannot in good faith argue that Defendants are impermissibly seeking to expand the scope of class discovery and needlessly delay the certification hearing when they propose presenting testimony from over 40 individual and corporate witnesses plus conceivably "any witness … identified in MDL discovery."

Defendants have proposed, in the alternative, to limit the number of deposition to six non-representative class members per action. This would allow for a maximum total of 18 class member depositions in addition to the class representatives. These numbers are more than reasonable given the total number of putative class representatives (15) and the sheer size and scope of these lawsuits. These numbers are also consistent with the ratio of class member to class representative depositions called for in the Court's original Scheduling Order. Finally, these numbers will justly allow Defendants the opportunity to conduct necessary discovery in order to present the Court with evidence of how the case will be tried and a full understanding of the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. Defendants seek this Court's assistance in establishing a firm number so that Defendants might be able to properly prepare their case.

**C.     Plaintiffs Seek to Unfairly Prevent Defendants from Inspecting the home of Non-Representative Class Member Fact Witnesses**

Plaintiffs' proposed Scheduling Order also seeks to prevent Defendants from inspecting the homes of the non-representative class member fact witnesses. Plaintiffs desire to limit Defendants to

depositions of these fact witnesses alone, without the benefit of written discovery and without the benefit of inspecting their homes. However, without at least the ability to inspect these homes, Defendants will be severely limited in their ability to assess the claims, defenses, and relevant facts pertinent to the purported class as a whole and present this information to Court for its consideration.

The PSC has handpicked the class representatives to obviously present the worst-case Plaintiffs for Defendants. Although inspections and sampling of these class representative homes is still on-going, the PSC is operating as though it is believed that the homes may largely be homogenous, with exclusively or nearly exclusively reactive, imported Chinese drywall and similar damages. This is simply not the case. Defendants are entitled to test, and the Court is entitled to know, whether the same is true for the putative class as a whole. Only with this information, can the Court properly determine if the common issues predominate. The United States Supreme Court has made clear that a shared experience amongst the claimants alone is not sufficient to meet the requirements for a Rule 23(b)(3) class. *Amchem Products, Inc.*, 521 U.S. at 623-24. Nevertheless, Plaintiffs apparently seek to rely solely on just that, imposing unfair limitations designed to keep Defendants and the Court in the dark as to whether there is more than a shared experience amongst the claimants.

Defendants have reason to believe that the homes of the putative class members differ dramatically, with the individual circumstances peculiar to each home greatly outweighing the common condition of the mere presence of Chinese drywall. While some homes, such as the class representative homes, may exclusively have Chinese drywall, other putative class member homes may only have a handful of sheets of imported drywall (*e.g.*, in the case of minor remodel), or imported drywall only on certain levels (*e.g.*, in the case of a two story flooded home in Gentilly). Other homes may have Chinese drywall manufactured by Taishan instead of Knauf or, in some

cases, a mixture of drywall manufactured by Knauf and Taishan. Finally, some homes may have imported Chinese drywall that is non-reactive.

Simply put, there may be, and the evidence strongly suggests there will be, vast differences in the material and physical attributes of each putative class member home. Under established authority, the Court cannot properly assess class certification without this information. Yet, Plaintiffs' proposal seeks to deny Defendants and the Court with access to this information. It is highly unlikely that this information will come from depositions of these class members alone. The information provided to date by class members has been superficial at best. The only way to obtain this necessary information is by allowing Defendants and their experts access to inspect these homes. Anything less will prevent a fair and just adjudication of the class certification issues.

Finally, allowing Defendants access to these homes is appropriate given that the putative class members in this case have all largely already filed suit against the Defendants. This is not the typical putative class action, where the non-representative class members have not instituted litigation and subjected themselves to the rigors of formal litigation and the control of the court. Rather, these putative class members have already availed themselves of the judicial process, thereby waiving any claim that they should not be "inconvenienced" by the rigors of that process. *See In Re FEMA Trailer Formaldehyde Products Liability Litigation*, 628 F.3d 157, 163 (5th Cir. 2010) (noting that a putative class member cannot "have his cake and eat it" by "sitting back to await the outcome of another plaintiff's experience" and holding that "[w]hen a plaintiff files any court case, however, sitting back is no option. He must be prepared to undergo the costs, psychological, economic and otherwise, that litigation entails. That the plaintiff becomes one of a mass of thousands pursuing particular defendants lends urgency to this reality.") The non-moving class representatives

11

are named Plaintiffs in this action and should not be allowed to hide from the demands incumbent upon them by the ordinary course of litigation.

  **D.**  **Plaintiffs Refuse to Participate in or Respond to Discovery Requests Properly Made by Defendants' Steering Committee**

Further, Plaintiffs have also threatened to bring this already slow-moving litigation to a complete stop by refusing to participate in discovery. Defendants are entitled to discovery, and specifically, they are entitled to responses to discovery requests that were served well over one year ago. Plaintiffs are unable to point to any authority anywhere that suggest they are somehow exempt from the discovery process, and yet they blatantly refuse to respond to Defendants' requests.

The Defendants' Steering Committee ("DSC") first issued discovery in these cases in 2009. [Doc. Nos. 27532930 and 27533288.] Named Plaintiffs, as indicated above, refused to respond, and instead suggested that the only parties that need to respond to the DSC's requests were the designated class representatives. This poses a number of problems for the Defendants, not the least of which is the PSC's own inability to settle on which Plaintiffs will be finally determined to be class representatives for the purposes of Plaintiffs Motions for Class Certification.

Moreover, even the representatives and the proposed representatives have either refused to answer that discovery (as is the case with INEX's Second Set of Interrogatories and Request for Production, which are related to liability issues) or have provided incomplete, inadequate, or inaccurate responses (as is the case with Banner's discovery and INEX's First Set of Interrogatories and Request for Production, in response to which the class representatives have failed to provide basic information on the sale, construction, and remodeling of their homes and the basis of their damage claims, among other deficiencies.) (*See* Counsel Emails attached as Exhibit "K"; *see also* Banner's Good Faith Letter to All Plaintiffs, attached as Exhibit "L"). Despite these written

12

discovery abuses, Plaintiffs are insisting on moving forward with class representative depositions in only two weeks.

In addition, even when Plaintiffs do send discovery responses, they send incomplete or incorrect forms because, ostensibly, they are rushing to argue they have complied with discovery when in fact they are not prepared. When Defendants are barraged with e-mails of purported discovery responses from the Martinez Plaintiffs, those are subsequently withdrawn and Defendants are asked to disregard. (*See, e.g.* Counsel Email attached as Exhibit "M"). While mistakes are only human and understandable, the PSC's fumbling efforts to push through a hearing when the PSC is unprepared on the issues serves to further add to the confusion.

Defendants have also sent each of the individual Plaintiffs profile forms in an attempt to gather some information and begin mapping out case strategy, including the selection of class member fact witnesses. Even circumventing the PSC, several hundred Plaintiffs have yet to complete the profile and respond to Defendants. Moreover, these profile forms merely seek introductory information, and not the full extent of information to which Defendants are entitled, and Plaintiffs are not completing the profiles in their entirety. Specifically, in reviewing the limited discovery we have received, the following categories seem to be going unanswered consistently: the current value of the home, the evidence supporting diminished value of the home (outside of inspection reports), the evidence supporting damage to personal property (outside of inspection reports; *i.e.* receipts), and a tendency for participants towards answering "unknown" to if the house has been appraised and/or documents reflecting appraisals. Obviously these requests are relevant to predominance issues as well as damages.

**E.      Even Where Plaintiffs Are Submitting Profile Forms, They Fail to Adequately Respond to the Questions on the Form.**

13

The vast majority of the Plaintiffs in this litigation have simply failed to provide ***any*** responses to this discovery. As a result, Defendants are being forced to prepare for class certification hearing that is scheduled for this summer without the most essential information to make any sort of informed decisions. Defendants have sought the Court's assistance in managing, and ultimately dismissing, claims for which the Defendants have not received a completed profile form.[7]

Even where Plaintiffs have managed to provide some response, in many cases they have failed to submit complete profile forms despite the fact that profile forms are required by the Court, Pre-trial Order No. 1G. For instance, many Plaintiffs have failed to identify the manufacturer of the drywall in their homes, or any markings on the drywall that could be used in an identification process. *See*, *e.g.*, Profile Forms for: Morton, R., Morris, R., Mottolo, E., Nuccio, T., Meyer, K., and Taggaret, T.[8] In addition, numerous profile forms do not identify the installers, general contractors, or homebuilders that installed the drywall. *See, e.g.*, Profile Forms for: Mulligan, V., Nemes, R., and Nunez, J. Even basic, publicly available information, such as when the dwelling was built and when the claimant owner-occupier took possession has been left blank on the profile forms. *See, e.g.*, Profile Forms for: Miranda, J., Marzulff, P., and Meister, D. Compounding these problems is that fact that some Plaintiffs do not even acknowledge the question and simply leave entire sections blank. *See, e.g.*, Profile Forms for: Miranda, J., and Marzulff, P. This information is necessary for the Defendants on liability, predominance issues and numerous other purposes.

### IV.    CONCLUSION

---

[7] Banner and INEX each recently filed Rule 37 Motions to Dismiss the claims of over 300 Plaintiffs for failing to comply with the Court's Order to provide completed profile forms.

[8] Defendants would also draw the Court's attention to the fact that these handful of names, whose forms have been identified as examples, were pulled after review of a sample of only 50 or so Plaintiff Profile Forms. Defendants have no doubts that these deficiencies are reflect throughout the body of forms that Defendants have received.

Plaintiffs have repeatedly thrown roadblocks in the way of efficiency throughout this litigation and the class discovery process. Defendants respectfully request that the Court take the aforementioned facts and pending conflicts under consideration, and provide the Parties with formal guidance as to their resolution, by adopting Defendant's proposed Scheduling Order, which presumes Plaintiffs comply with their discovery obligations.

Respectfully submitted this 11th day of March, 2011.

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

*/s/ Nicholas P. Panayotopoulos*
**NICHOLAS P. PANAYOTOPOULOS, ESQUIRE**
Georgia Bar Number: 560679
npanayo@wwhgd.com
**SHUBHRA R. MASHELKAR, ESQUIRE**
Georgia Bar Number: 475388
smashelkar@wwhgd.com
2601 S. Bayshore Drive
Suite 850
Miami, Florida 33130
Telephone (305)455-9500
**and**
3344 Peachtree Road
Suite 2400
Atlanta, GA 30326
Telephone (404)876-2700
***Counsel for Banner Supply Company***


*Richard G. Duplantier, Jr.   /s/*
Richard G. Duplantier, Jr. (# 18874)
Lambert J. Hassinger, Jr. (# 21683)
Benjamin R. Grau (#26307)
Carlina C. Eiselen, (# 28524)
Jeffrey P. Green (# 30531)
GALLOWAY, JOHNSON, TOMPKINS,
    BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802 / Fax:   (504) 525-2456

rduplantier@gjtbs.com / jhassinger@gjtbs.com
bgrau@gjtbs.com / ceiselen@gjtbs.com /
jgreen@gjtbs.com

*Counsel for Defendant, Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail; and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, in accordance with the procedures established in MDL 2047, on this 11th day of March, 2011

*/s/ Nicholas P. Panayotopoulos*
**NICHOLAS P. PANAYOTOPOULOS, ESQUIRE**