UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL NO. 2047 <br> SECTION "L" |
| THIS DOCUMENT RELATES TO: | * * | JUDGE FALLON |
| *Vickers, et al. v. Knauf GIPS KG, et al.* <br> Case No. 09-04117 (E.D. La.) | * * | MAG. JUDGE WILKINSON |

### D.R. HORTON, INC.'S COMPLAINT IN INTERVENTION

**NOW INTO COURT**, through undersigned counsel, comes plaintiff, D.R. Horton, Inc. ("D.R. Horton"), who files this Complaint in Intervention and alleges as follows:

### PARTIES

1.

Plaintiff, **D.R. Horton**, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Texas. D.R. Horton is duly authorized and lawfully entitled to conduct its business in the State of Florida.

2.

Made a defendant herein is **Banner Supply Company Fort Myers, LLC** ("Banner Supply"). Banner Supply is a limited liability company organized and existing under the laws of the State of Florida. Banner Supply maintains its principal address at 2910 Cargo Street, Fort Meyers, Florida 33916. Banner Supply sells drywall and related materials to subcontractors like B&B Stucco, Inc. ("B&B Stucco") within the State of Florida for installation in single family homes such as those at issue in this case.

565811.1


EXHIBIT A

## VENUE AND JURISDICTION

3.

This Court has subject matter jurisdiction over this case under 28 USC §1332, as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.

Venue is proper in this matter under 28 USC §1391 because a significant number of the events and occurrences giving rise to these claims occurred in the State of Florida. Specifically, venue of this action is proper because: (a) Banner Supply maintains its principal place of business in Florida; and (b) the causes of action described herein accrued and arose in Florida.

## BACKGROUND FACTS

5.

The claims asserted in this lawsuit by D.R. Horton, and the recovery sought herein, are limited to claims arising out of the residential homes built by D.R. Horton with Chinese manufactured drywall supplied by Banner Supply in the State of Florida only.

6.

D.R. Horton develops residential subdivisions such as Catalina Isles in Fort Myers, Florida and Bella Vida in Cape Coral, Florida. D.R. Horton served as not only the developer but also the general contractor for the single family homes constructed in Catalina Isles and Bella Vida. In its role as general contractor D.R. Horton engaged various subcontractors to provide labor, materials, and services to construct the single family homes.

7.

D.R. Horton also sold the single family homes to its customers. In doing so D.R. Horton

made certain express and implied warranties that the homes, as constructed by the subcontractors with materials obtained from suppliers, were of good and sufficient quality and free of defects and deficiencies. Such implied and express warranties are usual, typical and customary in this business. Under the arrangements of sale, and as a matter of Florida law, D.R. Horton remained liable to the purchaser customers to correct and repair defects in the homes including specifically the defects in the drywall supplied by Banner Supply to B&B Stucco and installed by B&B Stucco in the Homes (all as described more below) at issue in this action.

8.

D.R. Horton engaged B&B Stucco to provide and install all of the drywall in each of the single family homes at Catalina Isles and Bella Vida at issue in this action. D.R. Horton entered into two written agreements with B&B Stucco: one for Catalina Isles and the other for Bella Vida. In the each of the written agreements with B&B Stucco, B&B Stucco agreed that the drywall it supplied and installed in the single family homes would be free of defects and deficiencies and warranted the same to D.R. Horton.

9.

In the respective written agreements regarding Catalina Isles and Bella Vida, B&B Stucco, among other things, also agreed:

  A. To perform its work in a good and workmanlike manner;

  B. To perform its work in accordance with the plans and specifications of Owner;

  C. To perform its work according to industry standards;

  D. To perform its work such that it meets or exceeds FHA minimum property requires and VA requirements:

  E. To perform its work according to all laws and regulations and applicable

3

565811.1

    building code requirements; and

F. All of its work including all labor performed and materials furnished shall be free of any defects in workmanship and materials when judged by the standards of acceptable residential construction industry trade practices and requirements of all applicable governmental authorities.

10.

With respect to the single family homes at Catalina Isles and Bella Vida at issue in this action, B&B Stucco installed drywall, in whole or in part, which it obtained from Banner Supply. In short D.R. Horton paid B&B Stucco to supply and install drywall at Catalina Isles and Bella Vida and B&B Stucco carried out its obligations in this respect by, among other things, purchasing drywall from Banner Supply. At all times Banner Supply was aware that the drywall it supplied to B&B Stucco was intended to be installed by B&B Stucco in the single family homes houses at Catalina Isles and Bella Vida.

11.

The single family homes at Catalina Isles and Bella Vida are described more specifically by lot numbers on the attached Exhibit "A" and are separated by each development. All such single family homes described on Exhibit "A" shall be collectively referred to as the "Homes".

12.

The drywall supplied by Banner Supply to B&B Stucco and which B&B Stucco installed in the Homes contained defective gypsum. The defective gypsum made the drywall as a whole defective.

13.

The gypsum drywall supplied by Banner Supply to B&B Stucco and which B&B Stucco

4

installed in the Homes was defective because it was designed, manufactured, exported, imported, delivered, supplied, marketed, and sold and/or installed such that the gypsum components of the drywall released, emitted, and off-gassed sulfides, sulfur, methane, and/or other volatile organic chemical compounds that caused corrosion of and to HVAC coils, refrigerator units, certain electrical wiring and plumbing components, and other household items. The defective drywall caused damage to various components of the Homes other than the drywall itself. The corrosive causing characteristics of the this drywall renders the drywall unsuitable for installation in single family homes and the product, as a result of these characteristics the drywall supplied by Banner Supply to B&B Stucco and which B&B Stucco installed in the Homes was inherently defective

14.

Additionally, the sulfides, sulfur, methane and/or other noxious gasses emitted from the defective drywall supplied by Banner Supply to B&B Stucco and which B&B Stucco installed in each of the Homes resulted in unpleasant, offensive, and intolerable odors within each of the Homes. The odor emitted is similar to the smell of "rotten eggs". This unpleasant odor is not typical with gypsum drywall of proper and reasonable quality. Such odors made living in the Homes undesirable if not impossible. Such offensive odor emitted from the defective drywall also made it inherently defective.

15.

The defective drywall supplied by Banner Supply to B&B Stucco and which B&B Stucco installed in the Homes was not fit for ordinary use; such defective drywall did not meet standards for goods of its kind due to its corrosive causing characteristics and the objectionable odors emitted from it. The defective drywall was not free of defects and to not meet the standards of acceptable residential construction industry trade practices.

5

565811.1

16.

D.R. Horton and its customers were not initially aware that Banner Supply had supplied to B&B Stucco and that B&B Stucco had installed such defective drywall in the Homes and neither D.R. Horton nor its customers were in a position such that they should have known that Banner Supply had supplied to B&B Stucco and B&B Stucco had installed defective drywall in the Homes.

17.

B&B Stucco and Banner Supply knew or should have known that the drywall products supplied by Banner Supply to B&B Stucco and which B&B Stucco installed in the Homes were defective and would cause harm and damage to the Homes.

18.

Beginning in early 2009, D.R. Horton began receiving complaints from its customers that their homes suffered from obnoxious and offensive odors and also that their HVAC coils and/or refrigerator units were failing at unusual and unexpected rates.

19.

D.R. Horton investigated these complaints and learned that the drywall supplied by Banner Supply to B&B Stucco and which B&B Stucco installed in each of the Homes was defective as described herein.

20.

D.R. Horton provided notice to B&B Stucco and Banner Supply of the complaints received from D.R. Horton's customers and offered B&B Stucco and Banner Supply a reasonable opportunity to investigate these matters and complaints. B&B Stucco and Banner Supply have confirmed that the Homes have defective drywall as described above.

21.

Upon discovery of the defective drywall in each of the Homes it became readily apparent that the only way to remedy the defective drywall was to completely remove and replace the defective drywall along with all damaged metal and electric components, and other damaged property within the Homes.

22.

In order to perform the necessary and reasonable repairs, D.R. Horton was required to relocate each of its customers, remove the customer's furniture and belongings from each of the Homes and store them, remove and replace carpets, flooring materials, cabinets, countertops, and other fixtures in the Homes, and conduct various inspections and tests to confirm the existence and removal of the defective drywall and the damages resulting therefrom. D.R. Horton, at its sole cost and expense, has completed the repair of each of the Homes in the manner described

23.

D.R. Horton offered B&B Stucco the opportunity to perform these remedial tasks but it refused. Likewise, D.R. Horton offered Banner Supply the opportunity to perform these remedial tasks but it refused.

24.

Because of the defective drywall, D.R. Horton has suffered general and special damages as follows:

> A. The costs and expenses to investigate, including with third party consultants, customer complaints regarding offensive odors and damaged HVAC coils and refrigerator units in the Homes;
>
> B. The costs and expenses to replace damaged HVAC coils, refrigerator units and

other electrical equipment in the Homes;

C. Legal costs including attorneys' fees incurred to reasonably protect D.R. Horton's interests with respect to claims by customers who purchased the Homes with the defective drywall supplied by Banner Supply and installed by B&B Stucco;

D. The costs and expenses of dealing with building officials and obtaining building permits on account of the defective drywall and the repairs to the Homes;

E. The cost and expense of relocating the customers of the Homes and storing their furniture and belongings while their Homes were repaired;

F. The cost of removing the defective drywall from the Homes and replacing it with fit and proper drywall;

G. The cost of replacing carpets, flooring materials, cabinets, countertops and other fixtures and equipment in the Homes;

H. The cost of repainting and replacing wall coverings in the Homes;

I. The costs of replacing and repairing the electrical wiring and electrical equipment in the Homes;

J. The costs of testing and inspections of the Homes both prior to, during and after the remediation and repair of the Homes; and

K. Other costs, expenses and damages incurred as a result or consequence of the defective drywall supplied by Banner Supply and installed by B&B Stucco in the Homes.

other electrical equipment in the Homes;

C. Legal costs including attorneys' fees incurred to reasonably protect D.R. Horton's interests with respect to claims by customers who purchased the Homes with the defective drywall supplied by Banner Supply and installed by B&B Stucco;

D. The costs and expenses of dealing with building officials and obtaining building permits on account of the defective drywall and the repairs to the Homes;

E. The cost and expense of relocating the customers of the Homes and storing their furniture and belongings while their Homes were repaired;

F. The cost of removing the defective drywall from the Homes and replacing it with fit and proper drywall;

G. The cost of replacing carpets, flooring materials, cabinets, countertops and other fixtures and equipment in the Homes;

H. The cost of repainting and replacing wall coverings in the Homes;

I. The costs of replacing and repairing the electrical wiring and electrical equipment in the Homes;

J. The costs of testing and inspections of the Homes both prior to, during and after the remediation and repair of the Homes; and

K. Other costs, expenses and damages incurred as a result or consequence of the defective drywall supplied by Banner Supply and installed by B&B Stucco in the Homes.

25.

D.R. Horton seeks recovery from Banner Supply in its own right and also as an assignee of claims assigned to it or to be assigned to it by the owners of Homes that have been or in the future will have to be repaired and remediated by D.R. Horton as a result of the defective drywall.

## COUNT I

### (Negligence)

26.

D.R. Horton realleges, and incorporates by this reference, paragraphs 1-25 of this Complaint in Intervention.

27.

B&B Stucco and Banner Supply owed a duty to use reasonable care in importing, distributing, delivery, selling, marketing and installing the drywall which was supplied by Banner Supply to B&B Stucco and which B&B Stucco installed in the Homes. Such duty included the duty to not supply and install drywall which emitted sulfides, sulfur, methane, and other noxious and corrosive causing gasses. If Banner Supply intended to supply or B&B Stucco intended to install drywall with regard to the Homes which emitted sulfides and other noxious gasses then Banner Supply and B&B Stucco had a duty to warn D.R. Horton of the characteristics of such drywall.

28.

Banner Supply breached its duty to use reasonable care by supplying the defective drywall in the Homes and in failing to warn D.R. Horton that Banner Supply was supplying and B&B Stucco was installing such defective drywall in the Homes.

565811.1

29.

The negligence of Banner Supply has resulted in damage, among other damages, to property other than the defective drywall itself.

30.

As a direct result of the negligence of Banner Supply, D.R. Horton has been proximately caused general and special damages.

WHEREFORE, D.R. Horton demands a final judgment against Banner Supply for general and special damages, costs, pre-judgment interest, and such other and additional relief as is just and proper.

## COUNT II

### (Breach of Implied Warranty of Merchantability)

31.

D.R. Horton realleges, and incorporates by this reference, paragraphs 1-30 of this Complaint in Intervention.

32.

Banner Supply specializes in supplying drywall for use in residential home construction including in installation in single family homes like the Homes.

33.

Based on its specialized business and its regular practice of supplying drywall for use in residential construction, Banner Supply is a merchant of drywall.

34.

Banner Supply is in a direct distribution path and scheme of the defective drywall installed in the Homes.

35.

After Banner Supply supplied the defective drywall to B&B Stucco, and B&B Stucco installed the defective drywall in the Homes, D.R. Horton did not alter, change, or modify the material components of the defective drywall. The customers of D.R. Horton who purchased each of the Homes did not alter, change, or modify the material components of the defective drywall. In other words neither D.R. Horton nor its customers took any action which caused the defective drywall to possess its corrosive powers or have the capability to emit its noxious odors.

36.

Banner Supply impliedly warranted that the drywall, which was installed by B&B Stucco in the Homes, would be merchantable.

37.

The drywall supplied by Banner Supply and installed by B&B Stucco in the Homes was not merchantable in that;

    A. The drywall would not pass without objection in the trade; and

    B. The drywall was not fit for the ordinary purposes for which such drywall is used.

38.

Banner Supply breached its implied warranty of merchantability with respect to the defective drywall supplied by it and installed by B&B Stucco in the Homes.

39.

As a direct result of the breach of the implied warranty of merchantability by Banner Supply, D.R. Horton has been proximately caused general and special damages.

WHEREFORE, D.R. Horton demands a final judgment against Banner Supply for general and special damages, costs, pre-judgment interest, and such other and additional relief as

is just and proper.

## COUNT III

**(Breach of Implied Warranty of Fitness for a Particular Purpose)**

40.

D.R. Horton realleges, and incorporates by this reference, paragraphs 1-39 of this Complaint in Intervention.

41.

Banner Supply specializes in supplying drywall for use in residential home construction including in installation in single family homes like the Homes.

42.

At the time that Banner Supply entered into contract(s) with B&B Stucco, Banner Supply had reason to know that the drywall was purchased for the particular purpose of being installed in residential homes being built by D.R. Horton, including the Homes, and that B&B Stucco was relying on Banner Supply's skill and judgment to select and furnish B&B Stucco with gypsum drywall that was suitable for this particular purpose.

43.

B&B Stucco relied on Banner Supply's judgment in furnishing the drywall that was suitable for the particular purpose of being installed in residential homes, including the Homes.

44.

Banner Supply impliedly warranted that the drywall, which was installed by B&B Stucco in the Homes, was fit for the particular purpose of being installed in residential homes, including the Homes.

565811.1

45.

Banner Supply has breached its implied warranty of fitness for a particular purpose by selling certain gypsum drywall that was defective and not fit for the particular purpose of being installed in residential homes, including the Homes.

46.

The drywall supplied by Banner Supply and installed in the Homes is defective because it has caused damage to other property in the Homes.

47.

As a direct result of the breach of the implied warranty of fitness for a particular purpose by Banner Supply, D.R. Horton has been proximately caused general and special damages.

WHEREFORE, D.R. Horton demands a final judgment against Banner Supply for general and special damages, costs, pre-judgment interest, and such other and additional relief as is just and proper.

**DEMAND FOR TRIAL BY JURY**

48.

D.R. Horton hereby demands a trial by jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, D.R. Horton, Inc. requests a trial by jury, requests judgment against Banner Supply Company Fort Myers, LLC in accordance with the several Counts of this Complaint, and requests that this Honorable Court grant the following relief on its claims asserted herein:

1. All actual and/or incidental damages to which D.R. Horton may be entitled, in an amount to be determined at trial;

565811.1

2. Reimbursement and/or restitution of profits and all other equitable relief to which D.R. Horton may be entitled;

3. The cost of remediation, repair, testing, relocation, storage, and all other costs described herein associated with the repair and remediation of the Homes;

4. Costs and expenses of this litigation and other litigation arising from the defective drywall, including, but not limited to, attorneys' fees, expert fees, filing fees, and costs;

5. Pre-judgment and post-judgment interest; and

6. Such other and further relief at law or in equity to which D.R. Horton may show itself justly entitled.

**Respectfully submitted,**

BY: /s/ **Erick Y. Miyagi**
**Erick Y. Miyagi, #22533**
**hiko.miyagi@taylorporter.com**
**Edward J. Laperouse, II #29310**
**ted.laperouse@taylorporter.com**
**Leslie Ayres Daniel, #27948**
**leslie.daniel@taylorporter.com**
**Kari A. Bergeron #31043**
**kari.bergeron@taylorporter.com**
**(451 Florida Street, 8th Floor, 70801)**
**P. O. Box 2471**
**Baton Rouge, LA 70821**
**Telephone: 225-387-3221**
**Fax:        225-346-8049**

**James M. Talley  FL#0331961**
**jtalley@fisherlawfirm.com**
**Fisher, Rushmer, Werrenrath, Dickson, Talley**
**   &  Dunlap, P.A.**
**P.O. Box 712**
**Orlando, FL 32802**
**Telephone: (407) 843-2111**
**Facsimile: (407) 422-1080**

**Attorneys for D.R. Horton, Inc.**

565811.1

# EXHIBIT "A"

**List of the Homes repaired by D.R. Horton, Inc. as identified by Lot Numbers:**

<u>CATALINA ISLES</u>

Lot Numbers: 95; 97; 98; 99; 100; 23; 24; 14; 15; 102; 240; 237; 31; 119; 170; 34; 104; 174; 227; 214; 96; 128; 246; 101; 20; and 17.

<u>BELLA VIDA</u>

Lot Numbers: 0640; 0080; Lot 36 – Blk 10; Lot 32 – Blk 10; 0070; 0620; and 0340.

565835.1