UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| State of Louisiana, *ex rel.* James D. ("Buddy") Caldwell, the Attorney General of Louisiana | MAG. WILKINSON |
| | (#10-340) |
| VERSUS | |
| Knauf Gips KG, et al. | |

### STATE OF LOUISIANA'S MEMORANDUM IN OPPOSITION TO THE PLAINTIFFS STEERING COMMITTEE'S MOTION FOR PROTECTIVE ORDER REGARDING CERTAIN KNAUF DEPOSITIONS

The State of Louisiana ("the State"), through the Honorable James D. "Buddy" Caldwell, Attorney General of the State of Louisiana, respectfully submits its Memorandum in Opposition to the PSC's Motion for Protective Order Regarding Certain Knauf Depositions (Doc. 7746, hereafter "Motion"), filed on February 28, 2011, and the Knauf Defendants' joinder in the PSC's Motion, filed on March 11, 2011.  (Doc. 8138).  The State submits this Memorandum subject to the State's Motion to Remand (Doc. 1636) and without waiving any of its objections to this Court's jurisdiction over the State's claims.

### INTRODUCTION

After weeks of effort to obtain mutually convenient dates, the PSC noticed the depositions of four Knauf witnesses: Hans-Peter Ingenillem, Manfred Paul, Martin Halbach, and Baldwin Knauf.  Counsel for Louisiana discussed and agreed on these dates with counsel for Knauf prior to the agreed deposition notice being served.  Now, the PSC and Knauf, for their own purposes, and without consulting with other affected parties, are seeking to postpone

72080-0001/LEGAL20344764.1

indefinitely—if not completely bar—these important depositions.  The State, which has cross-noticed all of these depositions, wishes to proceed.

The State joins the Banner Defendants in asking that the PSC's Motion be denied for several reasons.  The PSC lacks standing to seek the requested protective order and did not comply with the mandatory requirements of Rule 26(c).  Moreover, the PSC has failed to show good cause for the Motion.  The Knauf depositions are critical to the State's case.  Accordingly, the Motion should be denied and the depositions should be ordered to go forward.

## STATEMENT OF FACTS

The State of Louisiana has been investigating and pursuing its claims against the Knauf Defendants since before the Chinese Drywall MDL or PSC were created.  During the summer and fall of 2009, the State served civil investigative demands ("CIDs") on various Knauf entities, as well as numerous other parties that are now defendants in the State's action.  On January 14, 2010, the State filed its Petition in Orleans Parish Civil District Court, seeking vindication of Louisiana's rights under Louisiana state law and redress for the direct and indirect injuries suffered by Louisiana, its political subdivisions, and its general public.  The Knauf Defendants removed the State's Petition to this Court in February, 2010.  On March 8, 2010, the State filed its Motion to Remand (Doc. 1636), which remains pending.

Subject to its remand motion, and without waiving any of its objections to this Court's jurisdiction over the State's claims, the State has been pursuing its own case.  Prior to being removed, and without the assistance of the PSC or any other party to the MDL, the State of Louisiana served all foreign defendants in its case (except Rothchilt, whom no one has been able to serve).  Indeed, the State obtained service over the foreign defendants on its own, at its own expense, and before the PSC served them.  Since being removed, the State has obtained its own

sets of documents from defendants and prepared its own translations of key documents where necessary, all at the State's own cost.

The State has also attended and participated in key depositions of Knauf Defendant witnesses, including those covering areas germane to the State's unique claims and requests for relief. For example, the State actively questioned Isabel Knauf and Mark Norris during their depositions. (Declaration of David L. Black dated March 18, 2011 at ¶ 2, attached as Exhibit A.) The State's questioning focused on several issues necessary to the State's claims and requested relief which were not addressed by the PSC or other parties. (*Id.*)

The State was also prepared to question Dr. Hans-Ulrich Hummel during his deposition on October 19-20, 2010 on issues particularly relevant to the State's case, but did not get the opportunity to do so. (*Id.*) Dr. Hummel was designated as a Rule 30(b)(6) witness to testify on various topics on behalf of Knauf Gips. He is and was the lead scientist for the Knauf entities during all relevant times and has been involved in Knauf's investigation of problems with its Chinese Drywall since 2006. Because numerous parties, including the State, did not get the opportunity to question Dr. Hummel, counsel for Knauf agreed to hold open Dr. Hummel's deposition pending its rescheduling and completion. (*Id.*) Further, by agreement of counsel, the parties agreed that no one could use Dr. Hummel's deposition transcript until his deposition is completed. (*Id.*) The State has repeatedly asked counsel for Knauf orally and in writing for dates for the continuation of Dr. Hummel's deposition. (*Id.* at ¶¶ 3, 6, 7.) Counsel for Knauf has promised to provide dates for these depositions but has not done so yet. (*Id.* at ¶ 8.) Counsel for the PSC has informed counsel for Knauf counsel that the PSC is done with Dr. Hummel and does not intend to seek the completion of his deposition. (*Id.* at ¶¶ 6-7.)

On February 17, 2011, the PSC noticed the depositions of four Knauf employees or representatives: Hans-Peter Ingenillem, scheduled for March 3-4, 2011, in Frankfurt, Germany; Manfred Paul, scheduled for March 16-17, 2011, in New York, New York; Baldwin Knauf, scheduled for Marcy 29-30, in Frankfurt, Germany; and Martin Halbach, scheduled for April 28-29, in New York, New York (collectively the "Knauf depositions"). Counsel for the State also discussed and agreed on these dates with counsel for Knauf prior to the agreed deposition notice being served. (*Id.* at ¶ 5.) Counsel for the State made arrangements to participate in these depositions and prepared for those depositions. (*Id.* at ¶ 9.) The Banner Defendants cross noticed the depositions on February 22, 2011. Then, without any warning or notice to the State (or any other party, including Banner), the PSC cancelled the four Knauf depositions on February 23, 2011. (*Id.* at ¶ 11.) The State immediately issued cross notices the next day. (*Id.* at ¶ 10.) On February 28, 2011, the PSC moved for a protective order barring the Knauf depositions from occurring on the dates originally noticed by the PSC, if ever. The State has agreed to the postponement of the depositions of Hans-Peter Ingenillem and Manfred Paul until the issues raised in the subject Motion for Protective Order are resolved.

## STANDARD OF REVIEW

Under Rule 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). As the movant, the PSC has "[t]he burden . . . to show the necessity of [a protective order]" by "a particular and specific demonstration of

fact as distinguished from stereotyped and conclusory statements." *In re Terre Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). "Orders prohibiting discovery by deposition are particularly disfavored." *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).

## ARGUMENT

The PSC's Motion should be denied for several reasons. First, the PSC lacks standing to seek the requested protective order. Under Rule 26(c), only "[a] party or any person *from whom discovery is sought* may move for a protective order." Fed. R. Civ. P. 26(c)(1) (emphasis added). Here, no discovery was sought from plaintiffs; therefore, the PSC cannot seek the requested protective order. The PSC cites a single case—*Norris Manufacturing Co. v. R.E. Darling Co.*, 29 F.R.D. 1 (D. Md. 1961)—for the proposition that a party can seek a protective order under Rule 26(c) "if it believes its own interest is jeopardized by discovery sought from a third person." (PSC's Memo. at 2 n.1.) *Norris* held no such thing. In *Norris*, the plaintiff served depositions notices and subpoenas duces tecum on investigators hired by the defendant and its attorneys. The defendant moved to quash the subpoenas under Rule 45(b) on the grounds of attorney work product and lack of good cause. The court held that, having asserted privilege, the defendant had standing to move to quash. *Id.* at 2 (the court quashed the subpoenas but allowed the depositions). As the PSC has not asserted privilege, *Norris* has no bearing on the Motion.

Further, under Rule 26(c), "[t]he motion *must* include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1) (emphasis added). Though the PSC's Motion is aimed at depositions cross noticed by the State, the PSC did not confer with the State

before filing the Motion.  Nor did Knauf.  The Motion lacks the required certification.  Accordingly, the PSC's Motion should be denied.

Even if the PSC has standing to seek a protective order barring depositions of Knauf personnel, it has not shown good cause for the reasons set forth in the Banner Defendants' Motion to Compel and Objection to Plaintiffs' Motion for Protective Order Regarding Certain Knauf Depositions.  With the possible exception of the now-passed Ingenillem deposition, the PSC has never claimed to need more time to prepare for the Manfred Paul, Baldwin Knauf, or Martin Halbach depositions.  Neither the PSC nor Knauf argues that the depositions would cause annoyance, embarrassment, oppression, or undue burden or expense.  Instead, the PSC and Knauf conclusorily declare how various parties, plaintiffs and defendants alike, should spend their resources.  Neither the PSC nor Knauf gets to dictate what is or is not a productive use of the State's resources.  It is undisputed that the Knauf depositions are relevant and that the PSC and Knauf could be prepared to go forward.

Further, that the PSC and Knauf would prefer to focus on other things, such as the Pilot Program or settlement discussions amongst themselves, does not constitute good cause for postponing depositions that are undisputedly relevant and necessary to the State's case.  There is no allegation that Hans-Peter Ingenillem, Manfred Paul, Baldwin Knauf, or Martin Halbach are personally involved in the Pilot Program or settlement discussions.  Nor is there any allegation, let alone evidence, that conducting four depositions spread out over several weeks would in any way derail the Pilot Program or settlement discussions.  Finally, while the State shares other parties' hope for settlement and the success of the Pilot Program (which the Louisiana Attorney General's Office and other state agencies are carefully monitoring), the fact remains that no settlement of the State's distinct claims can occur without additional discovery from Knauf.  The

requested depositions are necessary to the development of the State's case and settlement position. If Knauf is serious about wanting a resolution of the Chinese Drywall matter, then it should want these depositions to occur as soon as possible.

Though framed as eight separate grounds, the PSC's real argument for indefinitely postponing the Knauf depositions is this: they no longer want the Knauf depositions, therefore no one should get them. The PSC, however, does not and cannot speak for the State of Louisiana. The State has unique interests and claims that are not represented or protected by the PSC. The State's claims are fundamentally different from those of any other party. Indeed, Louisiana is the only state that has brought claims against any of the Chinese Drywall manufacturers. Knauf's conduct in introducing defective drywall to the State of Louisiana implicates several key state interests and the unique investigatory and regulatory power of the Attorney General on behalf of the State.

While all other cases in the MDL focus on individual injuries to owners and occupants of homes containing defective Chinese Drywall, the focus of the State's Petition is different. Instead, the State's Petition sets forth Louisiana's own claims, claims that only Louisiana as a sovereign entity can bring, both to vindicate its own interests (civil penalties, costs, lost revenues) and *parens patriae* claims on behalf of the State of Louisiana, its political subdivisions, and all residents of Louisiana as a whole, including those who do not have any Chinese Drywall in their homes. (*See* Petition at ¶¶ 177, 178, 185, 187, 192; Motion to Remand at 5-10.) Moreover, the State is pursuing unique claims and remedies not available to other parties. For example, of all the parties involved in Chinese Drywall litigation, only the State of Louisiana can seek injunctive relief and civil penalties for Knauf's violations of the Louisiana Unfair Trade Practices Act. *See* La. Rev. Stat. § 51:1407.

Thus, unlike the PSC, the State does not seek relief on behalf of individual homeowners who have Chinese Drywall. (Petition at ¶ 198.) Instead, Louisiana seeks to enforce LUTPA's police, regulatory, and civil penalty provisions. The State also seeks relief for damages to the State caused by defendants, including damages for the State's investigatory costs, costs for inspection and testing to ensure public safety, health, and to protect the environment, lost tax revenues for the State and/or her political subdivisions, attorneys' fees and costs, and other damages caused to the State or her citizens generally by Knauf's importation, sale, and installation of defective Chinese Drywall in Louisiana. The PSC does not—and cannot—represent these interests. Accordingly, the State's need for discovery is separate and unique from the PSC's discovery needs.

Further, while carefully preserving its jurisdictional objections, the State has been actively pursuing its claims independently from the PSC. The State brought its own claims in Louisiana state court. Despite being removed (and while its remand motion is pending), the State has vigorously pursued its own case independent of the PSC's actions. For example, the State served all foreign defendants named in the State's Petition (except for Rothchilt, whom no one has served) without any assistance from the PSC or any other party in the MDL. Indeed, Louisiana served all foreign defendants on its own, at its own expense, and before the PSC served them. In addition, among other things, the State has obtained its own sets of documents from defendants and prepared its own translations of key documents where necessary, all at its own cost.

The State has also participated in key depositions of Knauf Defendant witnesses, including covering areas germane to the State's unique claims, such as its request for civil penalties under LUTPA, as well as covering areas and establishing testimony helpful to the PSC,

the Homebuilders, and others.  The State's experience during these depositions confirms that the PSC cannot adequately protect the State's interests.  The State intends to continue its investigation of its claims and to take the depositions of key Knauf witnesses, as well as the depositions of Taishan/Taihe, Interior/Exterior, and such others as may be necessary to establish the State's claims and violations of Louisiana statutes.

While the PSC has lost interest in pursuing further discovery from Knauf, the State and several other parties, including the Banner Defendants, have not.  The Knauf depositions are critical to the State's case.  The vast majority of the defective Chinese Drywall in Louisiana came from Knauf.  Accordingly, full and adequate discovery from Knauf is critical to the State's unique claims, requests for relief, and interests.

The experience of the partial deposition of Dr. Hummel, a Rule 30(b)(6) witness designated by Knauf Gips, confirms that the State must be allowed to pursue its own discovery from Knauf.  As this Court is aware, the deposition of Dr. Hummel began on October 19-20, 2010, but was not completed.  Dr. Hummel is the head of research and development for Knauf Gips, and as such is the chief scientist for all the Knauf entities, including KPT, Knauf Wuhu, and Knauf Dongguan.  He also led Knauf entities' investigation of problems with its Chinese Drywall beginning in November 2006 in response to complaints made in Florida to and through Banner and USG/L&W (as well as complaints to Lennar in Florida in 2007) and with respect to determining how to fix affected homes.

Though counsel for the State was present and ready to question Dr. Hummel during the first two days of his deposition, the State never had the opportunity to do so.  The questioning by the PSC and Banner focused almost exclusively on only one of the three Knauf Chinese Drywall producing entities, KPT.  The deposition also touched on Dr. Hummel's testing of Taishan

drywall. Dr. Hummel was not questioned about several issues within his designation that are relevant to the State's claims and requests for relief. For example, Dr. Hummel was not asked other than superficially about the other Knauf Chinese entities (Knauf Wuhu and Knauf Dongguan) or about the activities he conducted with respect to drywall produced by these entities. The issues of what Knauf Gips, through its lead researcher, knew and when they knew it are critical to the State's case. In light of the PSC's limited questioning, it is necessary for the State to conduct its own examination of Dr. Hummel. Further, by agreement of counsel, no party can use Dr. Hummel's deposition transcript until his deposition is completed. Because counsel for Knauf has repeatedly agreed to produce Dr. Hummel for the completion of his deposition, and because the PSC has stated it has no additional questions for Dr. Hummel, the issue is not whether Dr. Hummel's continued deposition should occur but when.

The State has also good cause for seeking the depositions of Martin Halbach, Manfred Paul, and Baldwin Knauf. Mr. Halbach is a key witness. He ran one of the Chinese Drywall entities for two years, was responsible for the technology used at those entities, including the transfer of Knauf's German drywall-making technology, and he personally inspected each of the Knauf China drywall-making entities after problems surfaced in Florida in late 2006. Mr. Paul was the liaison between the Knauf general partners and the various Knauf businesses, both during the time of Baldwin and Nikolaus Knauf and currently. Finally, Baldwin Knauf may be the single most important Knauf deponent because he was the lead general partner during the time the Knauf entities targeted Louisiana, the time of the Florida Banner problems in 2006, and the time of the corrosion complaints by Lennar in late 2007. He remains a key representative of the Knauf family. These depositions are critical to the development of the State's case against

Knauf.  Neither the PSC nor Knauf should be allowed to dictate the State's prosecution of its case against Knauf.

There is no reason to delay the remainder of the Knauf depositions.  Contrary to Knauf's unsupported suggestion, denying the protective order would not unfairly subject anyone to multiple depositions.  That the HSC and INEX did not oppose the PSC's Motion does not mean that the HSC or INEX would refuse to participate in any Knauf deposition noticed by the State or Banner.  All interested parties, including the HSC, INEX, or PSC, can participate in any depositions noticed by the State.  Knauf witnesses would not be subject to multiple depositions.

Further, that the PSC no longer wants to participate in the Knauf depositions does not mean they can indefinitely bar such depositions.  Though given wide latitude regarding discovery, the PSC does not have absolute control over the State's discovery needs or unique claims.  If the PSC is done or does not want to participate in the Hummel deposition or any other Knauf deposition, then the depositions can occur without the PSC.[1]

Finally, the PSC's claim that it "has only sought to postpone, not cancel, the aforementioned depositions," (PSC's Memo. at 3), is disingenuous.  The PSC has made no efforts to reschedule any of the four Knauf depositions for a later date.  At best, the depositions may be "*potentially* reset . . . at a later date."  (Pls.' Mot. ¶¶ 2, 4 (emphasis added).)  The PSC has not indicated when, if ever, it would actually consent to the Knauf depositions, which are necessary to the State's claims.  Accordingly, the Court should deny the PSC's Motion and allow the State to pursue the noticed depositions.

---

[1] The State also remains interested in completing other depositions of Knauf personnel as well, including the deposition of Ann Zhong (which was apparently designated by Knauf), and, as noted above, Dr. Hummel.  Ms. Zhong was the lead financial person for Knauf's Chinese drywall producing entities. These depositions, which are not mentioned in the PSC's Motion, are necessary to the development of the State's case and should be set promptly.

## CONCLUSION

For the reasons set forth above, the State respectfully requests that the PSC's Motion for a Protective Order be denied. The depositions of Baldwin Knauf, and Martin Halbach should go forward as scheduled, and the depositions of Hans-Peter Ingenillem and Manfred Paul should be promptly reset for mutually acceptable dates. The State also asks that the continuation of Dr. Hummel's deposition be promptly set for a mutually acceptable date.

Respectfully submitted,

**JAMES D. "BUDDY" CALDWELL**
**LOUISIANA ATTORNEY GENERAL**

James Trey Phillips (Bar Roll # 19978)
Sanettria Glasper Pleasant (Bar Roll#25396)
Assistant Attorneys General
**LOUISIANA DEPARTMENT OF JUSTICE**
1885 North Third Street
Post Office Box 94005
Baton Rouge, Louisiana 70804-9005
Telephone: (225) 326-6000
Facsimile: (225) 326-6499

**Usry, Weeks & Matthews, APLC**
T. Allen Usry, La. Bar #12988
Trial Attorney

  s/John F. Weeks, II_____
John F. Weeks, II,  La. Bar #13309
1615 Poydras St., Ste. 1250
New Orleans, LA  70112
(504) 592-4600

**Shows, Cali, Berthelot & Walsh, LLP**
E. Wade Shows, La. Bar #7637
Trial Attorney
John C. Walsh, La. Bar #24903
628 St. Louis St.
P. O. Drawer 4425
Baton Rouge, LA  70821
(225) 346-1461

**Perkins Coie, LLP**
David L. Black
1899 Wynkoop St., #700
Denver, CO  80202
(303) 291-2306

Counsel for the State of Louisiana

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **State of Louisiana's Memorandum in Opposition to the Plaintiff Steering Committee's Motion for Protective Order Regarding Certain Knauf Depositions** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, in accordance with the procedures established in MDL 2047, on this 18th day of March, 2011.

    ___s/John F. Weeks, II_____
    (Signature of Filing Attorney)