UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>Payton et al v. Knauf Gips KG et al<br>EDLA 09-07628<br><br>Silva et al v. Arch Insurance Company, et al.<br>EDLA 09-08034<br><br>Silva et al v. Interior Exterior Building Supply, LP et al<br>EDLA 09-08030<br><br>Vickers et al v. Knauf Gips KG et al<br>EDLA 09-04117 | |

**SECOND SUPPLEMENTAL DECLARATION OF RONALD E. WRIGHT, P.E.**

I, Ronald E. Wright, declare as follows:

1. My prior declarations done in the above captioned class action cases are incorporated herein by reference. (Documents 5570-23, 5567-13, and 5569-21 filed on September 17, 2010), and (Document 7139 on January 24, 2011).

2. This declaration addresses the above-captioned class action cases and the nine proposed class representative homeowners designated in those cases. This declaration summarizes my previous declarations and adds information on three Florida homeowners. The opinions expressed herein are stated to a reasonable degree of scientific certainty within my field

1

of expertise.

3. I graduated with a Bachelor of Science in Civil Engineering and Master of Business Administration degrees from the University of Toledo, and am a licensed Professional Engineer in the states of Virginia, North Carolina, Maryland, New Jersey, South Carolina, and Ohio. I have been involved in construction for over 30 years. I am currently employed by Berman & Wright Architecture, Engineering & Planning, LLC ("Berman & Wright") and previously was employed by R. V. Buric Construction Consultants, PC ("Buric") for the past twenty-one years. In addition, my firm has licensed engineering staff in Florida. With Berman & Wright and Buric, I have performed forensic investigations and provided opinions regarding construction issues and building problems that included developing the scope of repair necessary and the estimated cost of repairs. I have presented at numerous seminars regarding various construction issues on topics including: problems with mold, water intrusion, and defective materials; their effects on buildings; and the repairs necessary to address these problems. I have formed opinions regarding these construction issues through the use of my technical education and training, twenty plus years of hands-on field experience including investigations of over 1,000 buildings and the subsequent remediation needed to address the building problems. I have also extended considerable time and effort in the research of publications and studies by other forensic investigators and trade associations, and the review of national standards and guidelines. I have been retained in numerous matters to provide expert opinions regarding building problems. My curriculum vitae is attached hereto as Exhibit 1. A listing of those depositions, arbitrations, and trials in which I have provided expert testimony over the past four years is

attached hereto as Exhibit 2. My hourly rate for services rendered on this matter is $225/hour.

4. In my professional experience with Chinese Manufactured Drywall ("CDW"), I have been asked to evaluate the property damage and scope and cost of repair associated with various CDW's including Knauf drywall and Taishan drywall for CDW homes in Virginia, Florida, Louisiana, North Carolina and New Jersey. I have reviewed governmental and scientific reports on CDW, as well as CDW data collected and analyzed by experts in prior CDW cases. I have written expert reports and offered expert opinions on these matters in the *Germano* case, and consulted on other CDW matters in the states listed above. My *Germano* report and opinions are incorporated herein by reference. Expert Report of Wright, Ronald E. (Dec. 23, 2009) (P1.2027), Ronald Wright's Scope of Remediation Work (P1.2058), Remediation Estimate Averages (P1.2059), Ronald Wright's Summaries of Cost Estimates (P1.2060), *Germano* Trial Transcript (February 2, 2010) (Vol. II: 62(23)-125(11)) (available upon request). In my work on CDW I have conferred with other experts including Dean Rutila, P.E. of Simpson Gumpertz and Heger, who conducted inspections and gave expert testimony in the *Seifart* case in Florida and the *Hernandez* and *Campbell/Clement* cases in Louisiana.

5. The nine proposed class representative homeowners in the above-captioned cases consist of five Florida homeowners and four Louisiana homeowners. The Florida homeowners are: Felix Diaz and Miriam Castro of 20318 SW 87 Court, Cutler Bay, FL 33189; Steven and Jennifer Roberts, 10013 Cobblestone Creek Dr., Boynton Beach, FL 33472; Karen Vickers, 2259 SE 19th Ave., Homestead, FL 33035; Jennifer and Felix Martinez, 2250 SE 19th Avenue, Homestead, FL 33035; and Jason Santiago, 2140 SE 19th Avenue, Homestead, FL 33035. The

four Louisiana homeowners are: Byron and Debra Byrne, 532 Snead Court, Slidell, LA 70458; Edward and Susan Beckendorf, 304 Brown Thrasher Loop S., Madisonville, LA 70447; Donald and Marcelyn Puig, 302 Tallow Creek Dr., Covington, LA 70433; and Dean and Dawn Amato, 18615 Bellingrath Lakes, Greenwell Springs, LA 70739.

6.     As to these homeowners, I have reviewed sufficient information to determine that there is a methodology and available data to determine if these homeowners have suffered damages caused by the CDW in their homes and to determine those damages. The methodology includes review of product identification information, inspection reports, evidence of damage and other factors as outlined in protocols put forth by the CPSC and the Florida Department of Health, as referenced in my initial declarations. Based on the preliminary data I have reviewed, it is likely that the nine homeowners identified below have experienced the damages typical of other Florida and Louisiana homeowners who have defective CDW in their homes. These damages include:

       (a)    Remediation,

       (b)    Alternative living,

       (c)    Property diminution,

       (d)    Loss of use and enjoyment, and

       (e)    Personal property.

7.     I am able to inspect homes individually to determine remediation costs. I can also utilize home-specific parameters and regional construction database information to estimate remediation damages. In my analysis in Virginia I determined that the remediation in the

Virginia market for the type of homes involved will cost an average $86/square foot. Using available data on square footage and other factors of the subject home and unit cost repair in the local market I can employ a similar methodology to estimate the $/square foot cost for remediation in Florida and Louisiana. The Florida and Louisiana homeowners will also require a post-remediation inspection and certification to assure the remediation has repaired all the damage. The cost of this inspection and certification is approximately $12,500 per home. The homeowners will need to vacate the home for a period of six months during the remediation. The average alternative living costs for the *Germano* Virginia cross-section for this time period was $11,611.80 per household. In the *Hernandez* case in Louisiana, the Court found alternative living costs to be $2,376.81 per month. FOFCOL (Docket #2713) at 42. I can determine the comparable alternative living costs in Florida and Louisiana by surveying local moving and rental prices. Personal property damages may be determined through an individual inspection or a survey questionnaire. My firm, with the assistance of expert statisticians where necessary, can design and administer the survey questionnaire in order to determine these damages on an individual or group basis.

8.    For all of these nine homeowners I have reviewed the Plaintiff Profile Form ("PPF"), the Screening Inspection report, product identification photographs, and corrosion photographs. These documents have been produced earlier in the Compendium of Exhibits filed with the class certification papers. I have conducted inspections for six of the homeowners listed above and plan to conduct inspections of the three others prior to trial.

9.    I have been asked to evaluate whether there is a common methodology to use to

estimate CDW-related damages for the proposed class representatives and class members. There does exist well established common methodologies to make these determinations of damages as outlined below.

10. I have also reviewed Defendant Profile Forms for Banner Supply Co., La Suprema, Interior Exterior (INEX) and Knauf, as well as delivery records pertaining to the delivery of Knauf CDW in Florida. These records indicate there are greater than 2000 Florida and Louisiana homes with Knauf CDW in their homes.

11. I have also reviewed delivery records pertaining to the delivery of CDW by Banner in Florida. The Banner Distributor Profile Forms indicate Banner purchased over 1.3 million pieces of CDW for sale in Florida. Assuming the average CDW home with CDW obtained through Banner had 200 pieces of CDW in it, that would support an estimate of well over 1000 CDW homes in Florida with CDW obtained from Banner.

12. I have also reviewed the Distributor Profile Forms for Interior Exterior, and Interior Exterior delivery records pertaining to the delivery of CDW by Interior Exterior in Louisiana. These records indicate that Interior Exterior purchased over 500,000 CDW boards from Knauf for distribution in Louisiana. Furthermore, these records show over 3,800 invoices for drywall products sold by Interior Exterior Louisiana offices. These records indicate there are most likely over 1,000 Louisiana homeowners with CDW from Interior Exterior in their home.

13. I have also reviewed the results from the court supervised inspection program. The court supervised Crawford Inspections Program included 15 inspections in Florida and eight inspections in Louisiana. Many of these inspections documented typical CDW type damage.

14. **Felix Diaz and Miriam Castro:** The Diaz home is of a similar type of construction, similar size, and has a similar time period of construction (2005-2008) as the homes I have studied throughout the Gulf Coast and East Coast states that are damaged by CDW. The Diaz home is built in whole or in part with the Knauf drywall product commonly associated with CDW damaged homes. The Diaz home has experienced a similar type of corrosion damage as other CDW damaged homes that I have inspected. The screening inspection data for this home shows positive product identification by photographic documentation of Knauf drywall, and corrosion damage typical of a CDW home. Based on this documentation, it is likely that this home has experienced corrosion damage from CDW. Such damage can be readily identified by a trained inspector. The CPSC and the Florida Department of Health have issued guidances with objective criteria to identify homes with CDW corrosion damage. *See* CPSC Interim Guidance Identification of Homes with Corrosion from Problem Drywall (January 28, 2010); Florida Division of Environmental Health Case Definition (December 18, 2009) for Drywall Associated Corrosion in Residences. The Diaz home will likely require a similar type of remediation as I recommended for the Plaintiff Intervenors cross-section in the *Germano* case, in order to return the home to its pre-damaged condition. The Diaz' also experienced personal property damage to electronics and other items as a result of the exposure to corrosive gases, alternative living cost damages, and the loss of use and enjoyment of their homes.

15. **Steven and Jennifer Roberts:** The Roberts' home is of a similar type of construction, similar size, and has a similar time period of construction (2005-2008) as the homes I have studied throughout the Gulf Coast and East Coast states that are damaged by CDW.

The Roberts' home is built in whole or in part with the Knauf drywall product commonly associated with CDW damaged homes. The Roberts' home has experienced a similar type of corrosion damage as other CDW damaged homes that I have inspected. The screening inspection data for this home shows positive product identification by photographic documentation of Knauf drywall, and corrosion damage typical of a CDW home. Based on this documentation, it is likely that this home has experienced corrosion damage from CDW. Such damage can be readily identified by a trained inspector. The CPSC and the Florida Department of Health have issued guidances with objective criteria to identify homes with CDW corrosion damage. *See* CPSC Interim Guidance Identification of Homes with Corrosion from Problem Drywall (January 28, 2010); Florida Division of Environmental Health Case Definition (December 18, 2009) for Drywall Associated Corrosion in Residences. The Roberts' home will likely require a similar type of remediation as I recommended for the Plaintiff Intervenors cross-section in the *Germano* case, in order to return the home to its pre-damaged condition. The Roberts also experienced personal property damage to electronics and other items as a result of the exposure to corrosive gases, alternative living cost damages, and the loss of use and enjoyment of their homes.

16.  **Karen Vickers:** The Vickers' home is of a similar type of construction, similar size, and has a similar time period of construction (2005-2008) as the homes I have studied throughout the Gulf Coast and East Coast states that are damaged by CDW. The Vickers' home is built in whole or in part with the Knauf drywall product commonly associated with CDW damaged homes. The Vickers' home has experienced a similar type of corrosion damage as other CDW damaged homes that I have inspected. The screening inspection data for this home

shows positive product identification by photographic documentation of Knauf drywall, and corrosion damage typical of a CDW home. Based on this documentation, it is likely that this home has experienced corrosion damage from CDW. Such damage can be readily identified by a trained inspector. The CPSC and the Florida Department of Health have issued guidances with objective criteria to identify homes with CDW corrosion damage. *See* CPSC Interim Guidance Identification of Homes with Corrosion from Problem Drywall (January 28, 2010); Florida Division of Environmental Health Case Definition (December 18, 2009) for Drywall Associated Corrosion in Residences. The Vickers' home will likely require a similar type of remediation as I recommended for the Plaintiff Intervenors cross-section in the *Germano* case, in order to return the home to its pre-damaged condition. Ms. Vickers also experienced personal property damage to electronics and other items as a result of the exposure to corrosive gases, alternative living cost damages, and the loss of use and enjoyment of her homes.

17.     **Jennifer and Felix Martinez:** The Martinez home is of a similar type of construction, similar size, and has a similar time period of construction (2005-2008) as the homes I have studied throughout the Gulf Coast and East Coast states that are damaged by CDW. The Martinez home is built in whole or in part with the Knauf drywall product commonly associated with CDW damaged homes. The Martinez home has experienced a similar type of corrosion damage as other CDW damaged homes that I have inspected. The screening inspection data for this home shows positive product identification by photographic documentation of Knauf drywall, and corrosion damage typical of a CDW home. Based on this documentation, it is likely that this home has experienced corrosion damage from CDW. Such damage can be

readily identified by a trained inspector. The CPSC and the Florida Department of Health have issued guidances with objective criteria to identify homes with CDW corrosion damage. *See* CPSC Interim Guidance Identification of Homes with Corrosion from Problem Drywall (January 28, 2010); Florida Division of Environmental Health Case Definition (December 18, 2009) for Drywall Associated Corrosion in Residences. The Martinez home will likely require a similar type of remediation as I recommended for the Plaintiff Intervenors cross-section in the *Germano* case, in order to return the home to its pre-damaged condition. The Martinez' also experienced personal property damage to electronics and other items as a result of the exposure to corrosive gases, alternative living cost damages, and the loss of use and enjoyment of their homes.

18.  **Jason Santiago:** The Santiago home is of a similar type of construction, similar size, and has a similar time period of construction (2005-2008) as the homes I have studied throughout the Gulf Coast and East Coast states that are damaged by CDW. The Santiago home is built in whole or in part with the Knauf drywall product commonly associated with CDW damaged homes. The Santiago home has experienced a similar type of corrosion damage as other CDW damaged homes that I have inspected. The screening inspection data for this home shows positive product identification by photographic documentation of Knauf drywall, and corrosion damage typical of a CDW home. Based on this documentation, it is likely that this home has experienced corrosion damage from CDW. Such damage can be readily identified by a trained inspector. The CPSC and the Florida Department of Health have issued guidances with objective criteria to identify homes with CDW corrosion damage. *See* CPSC Interim Guidance Identification of Homes with Corrosion from Problem Drywall (January 28, 2010); Florida

Division of Environmental Health Case Definition (December 18, 2009) for Drywall Associated Corrosion in Residences. The Santiago home will likely require a similar type of remediation as I recommended for the Plaintiff Intervenors cross-section in the *Germano* case, in order to return the home to its pre-damaged condition. Mr. Santiago also experienced personal property damage to electronics and other items as a result of the exposure to corrosive gases, alternative living cost damages, and the loss of use and enjoyment of his homes.

19. **Byron and Debra Byrne:** The Byrne's home is of a similar type of construction, similar size, and has a similar time period of construction (2005-2008) as the homes I have studied throughout the Gulf Coast and East Coast states that are damaged by CDW. The Byrne's home is built in whole or in part with the Knauf drywall product commonly associated with CDW damaged homes. The Byrne's home has experienced a similar type of corrosion damage as other CDW damaged homes that I have inspected. The screening inspection data for this home shows positive product identification by photographic documentation of Knauf drywall, and corrosion damage typical of a CDW home. Based on this documentation, it is likely that this home has experienced corrosion damage from CDW. Such damage can be readily identified by a trained inspector. The CPSC and the Louisiana Department of Health have issued guidances with objective criteria to identify homes with CDW corrosion damage. *See* CPSC Interim Guidance Identification of Homes with Corrosion from Problem Drywall (January 28, 2010); Louisiana Division of Environmental Health Case Definition (December 18, 2009) for Drywall Associated Corrosion in Residences. The Byrne's home will likely require a similar type of remediation as I recommended for the Plaintiff Intervenors cross-section in the *Germano* case, in

order to return the home to its pre-damaged condition. The Byrnes also experienced personal property damage to electronics and other items as a result of the exposure to corrosive gases, alternative living cost damages, and the loss of use and enjoyment of their homes.

20. **Edward and Susan Beckendorf:** The Beckendorf's home is of a similar type of construction, similar size, and has a similar time period of construction (2005-2008) as the homes I have studied throughout the Gulf Coast and East Coast states that are damaged by CDW. The home is built in whole or in part with the Knauf drywall product commonly associated with CDW damaged homes. The Beckendorf's home has experienced a similar type of corrosion damage as other CDW damaged homes that I have inspected. The screening inspection data for this home shows positive product identification by photographic documentation of Knauf drywall, and corrosion damage typical of a CDW home. Based on this documentation, it is likely that this home has experienced corrosion damage from CDW. Such damage can be readily identified by a trained inspector. The CPSC and the Louisiana Department of Health have issued guidances with objective criteria to identify homes with CDW corrosion damage. *See* CPSC Interim Guidance Identification of Homes with Corrosion from Problem Drywall (January 28, 2010); Louisiana Division of Environmental Health Case Definition (December 18, 2009) for Drywall Associated Corrosion in Residences. The Beckendorf's home will likely require a similar type of remediation as I recommended for the Plaintiff Intervenors cross-section in the *Germano* case, in order to return the home to its pre-damaged condition. The Beckendorfs also experienced personal property damage to electronics and other items as a result of the exposure to corrosive gases, alternative living cost damages, and the loss of use and enjoyment of their

homes.

21. **Donald and Marcelyn Puig:** The Puig's home is of a similar type of construction, similar size, and has a similar time period of construction (2005-2008) as the homes I have studied throughout the Gulf Coast and East Coast states that are damaged by CDW. The Puig's home is built in whole or in part with the Knauf drywall product commonly associated with CDW damaged homes. The Puig's home has experienced a similar type of corrosion damage as other CDW damaged homes that I have inspected. The screening inspection data for this home shows positive product identification by photographic documentation of Knauf drywall, and corrosion damage typical of a CDW home. Based on this documentation, it is likely that this home has experienced corrosion damage from CDW. Such damage can be readily identified by a trained inspector. The CPSC and the Louisiana Department of Health have issued guidances with objective criteria to identify homes with CDW corrosion damage. *See* CPSC Interim Guidance Identification of Homes with Corrosion from Problem Drywall (January 28, 2010); Louisiana Division of Environmental Health Case Definition (December 18, 2009) for Drywall Associated Corrosion in Residences. The Puig's home will likely require a similar type of remediation as I recommended for the Plaintiff Intervenors cross-section in the *Germano* case, in order to return the home to its pre-damaged condition. The Puigs also experienced personal property damage to electronics and other items as a result of the exposure to corrosive gases, alternative living cost damages, and the loss of use and enjoyment of their homes.

22. **Dean and Dawn Amato:** The Amato's home is of a similar type of construction,

13

similar size, and has a similar time period of construction (2005-2008) as the homes I have studied throughout the Gulf Coast and East Coast states that are damaged by CDW. The Amato's home is built in whole or in part with the Knauf drywall product commonly associated with CDW damaged homes. The Amato's home has experienced a similar type of corrosion damage as other CDW damaged homes that I have inspected. The screening inspection data for this home shows positive product identification by photographic documentation of Knauf drywall, and corrosion damage typical of a CDW home. Based on this documentation, it is likely that this home has experienced corrosion damage from CDW. Such damage can be readily identified by a trained inspector. The CPSC and the Louisiana Department of Health have issued guidances with objective criteria to identify homes with CDW corrosion damage. *See* CPSC Interim Guidance Identification of Homes with Corrosion from Problem Drywall (January 28, 2010); Louisiana Division of Environmental Health Case Definition (December 18, 2009) for Drywall Associated Corrosion in Residences. The Amato's home will likely require the same type of remediation as I recommended for the Plaintiff Intervenors cross-section in the *Germano* case, in order to return the home to its pre-damaged condition. The Amatos also experienced personal property damage to electronics and other items as a result of the exposure to corrosive gases, alternative living cost damages, and the loss of use and enjoyment of their homes.

23.     Relying on the types of data and methodologies reviewed above, I will be able to estimate damages for members of the proposed class for remediation, post-remediation inspection and certification, alternative living costs, loss of use and enjoyment, and personal property losses. I also will be able to estimate the number of homeowners with CDW that would

make up each of the proposed classes.

3-16-2011
Date

Ronald E. Wright, P.E.