UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2047<br>SECTION L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO**
*Amato v. Liberty Mutual Insurance Co.*, No. 10-932

**MEMORANDUM IN SUPPORT OF
QUANTA INDEMNITY COMPANY'S MOTION TO DROP PARTIES
IMPROPERLY JOINED PURSUANT TO RULES 20 AND 21
OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Quanta Indemnity Company has been sued in this case as the alleged commercial general liability insurer of two Louisiana homebuilders and eight Florida homebuilders. The plaintiffs suing Quanta over the Florida homebuilders' policies have been improperly joined with the plaintiffs suing Quanta over the Louisiana homebuilders' policies. The Florida plaintiffs do not satisfy the requirements for permissive joinder set forth in Rule 20(a)(1) because (A) their claims do not arise our of the same transaction, occurrence or series of transactions or occurrences as the claims of the Louisiana plaintiffs; and (B) there is no question of law or fact common to both sets of plaintiffs that will arise in this particular action. Because the Florida plaintiffs are misjoined, Quanta moves this court to drop them as parties pursuant to Rule 21.

This motion is brought in the alternative to the Insurer Steering Committee's Motion to Dismiss Pursuant to Rule 12(B)(1) of the Federal Rules of Civil Procedure, in which Quanta joins. If that motion is granted, this motion will be moot and there will be no need for the Court to consider this motion.

**I.     Florida plaintiffs versus Louisiana plaintiffs suing Quanta**

The *Amato* complaint asserts two legal theories:

{N2273335.2}                                    1

- A direct action pursuant to Louisiana Revised Statute 22:1269; and

- A declaratory judgment action pursuant to 28 U.S.C. §2201.[1]

The direct action is available only to plaintiffs suing Louisiana homebuilders and plaintiffs have appropriately limited their direct action claim to policies issued or delivered in Louisiana or policies applicable to homes built in Louisiana.[2] As to Quanta, the two alleged Louisiana insureds and plaintiffs suing those insureds are:

| **Louisiana Quanta Insured** | **Plaintiffs Against Louisiana Quanta Insured** |
|---|---|
| Daelen of Tangipahoa, LLC | Clague, Randy and Lisa<br>4416 Halter Ln.<br>Hammond, LA 70403 |
| Ray Beck, Inc. | Lea, Chris and Julie<br>213 Summer Place Cove<br>Slidell, LA 70461 |

The remaining plaintiffs are suing Quanta over policies allegedly issued to Florida homebuilders.[3] None have homes in Louisiana and the insureds are all alleged to have their principal place of business and state of incorporation in Florida. The alleged Florida insureds and plaintiffs suing those insureds are:

---

[1] Plaintiffs' Amended Omnibus Class Action Complaint (V), Doc. 3132, Preface, page 2 of 85 (May 11, 2010).

[2] *See* Insurer Steering Committee's Motion to Dismiss Pursuant to Rule 12(B)(1) of the Federal Rules of Civil Procedure, in which Quanta joins.

[3] Quanta uses the term "alleged" because three of the homebuilders are not insured under any Quanta policy, but have names that are similar to other Quanta insureds. The three that are not actually Quanta insureds are: Northstar Homebuilders, Inc., Northstar Homes, Inc., and Sterling Communities Realty, Inc. Quanta is filing a separate "no policy" motion as to these three companies. However, the arguments made in this motion would be applicable to these three entities even if the Court were to deny Quanta's "no policy" motion. Thus, they are included here.

| Florida Alleged Quanta Insured | Plaintiffs Against Florida Alleged Quanta Insured |
|---|---|
| Advantage Builders of America, Inc. | Peace, Stephanie & John<br>123 SW 29th Street<br>Cape Coral, FL 33914<br><br>Transland, LLC<br>5000 Southgate<br>Chrisiansted, VI 00820[4] |
| Advantage Builders of America, Inc. aka Advantage Builders of SWFL | Kelly, Christopher & Jesica<br>2836 NW 25th Terrace<br>Cape Coral, Florida 33993<br><br>Mercedes, William and Carmen<br>845 SW 17lh Street<br>Cape Coral, Florida 33991<br><br>Montalvo, Samuel, Jr.<br>1133 Nelson Road North<br>Cape Coral, Florida 33993<br><br>Penny, Andrew and Rachel<br>1814 NW 22nd Place<br>Cape Coral, Florida 33993 |

---

[4] Although this plaintiff lists its home address in the Virgin Islands, it is suing over "real property located at 34 NE 4th Street, Cape Coral, Florida 33909." Doc. 3132, ¶ 399, p. 76 of 85.

{N2273335.2}                3

| Florida Alleged Quanta Insured | Plaintiffs Against Florida Alleged Quanta Insured |
|---|---|
| Northstar Holdings at B and A, LLC | El1iot, Dezman<br>9845 Cobblestone Creek Drive<br>Boynton Beach, FL 33437<br><br>Eisenberg, Brian and Lauren<br>9957 Cobblestone Creek Drive<br>Boynton Beach, FL 33472<br><br>Frenchman, Beth<br>10133 Cobblestone Creek Drive<br>Boynton, Beach, FL 33437<br><br>Johnson, Charles and Molly<br>10125 Cobblestone Creek Drive<br>Boynton Beach, FL 33472<br><br>Mizne, Michael and Jeannine<br>9621 Cobblestone Creek Drive<br>Boynton Beach, FL 33472 |
| Northstar Homebuilders, Inc. | Gonzalez, Luis and Caridad<br>2944 NE 3rd Drive<br>Homestead, FL 33033<br><br>Segundo, Rafael & Ana<br>PO Box 771498<br>Miami, FL 33177 |
| Northstar Homes, Inc. | Felicetti, Steven & Gayle<br>9941 Cobblestone Creek Drive<br>Boynton Beach, FL 33472 |
| Premier Communities, Inc. | Plotkin, Peter<br>McNeel, Diane[5]<br>9700 Aviation Blvd., St.<br>Los Angeles, CA 90045 |

---

[5] Although these two plaintiffs list a home address in California, they are suing over properties located in Florida, specifically 1906 Scarlet Avenue, 1908 Scarlet Avenue, 1910 Scarlet Avenue, and 1914 Scarlet Avenue North Port, Florida, 34289. Doc. 3132 ¶ 325, p. 61 of 85.

| Florida Alleged Quanta Insured | Plaintiffs Against Florida Alleged Quanta Insured |
|---|---|
| Sterling Communities, Inc. | Fallmann, James & Barbara<br>11063 Pacifica Street<br>Wellington, FL 33449<br><br>Miller, Bradley & Tricia<br>11134 Pacifica Street<br>Wellington, FL 33449 |
| Sterling Communities Realty, Inc. | Fallmann, James & Barbara<br>11063 Pacifica Street<br>Wellington, FL 33449<br><br>Miller, Bradley & Tricia<br>11134 Pacifica Street<br>Wellington, FL 33449 |
| The Sterling Collection | Orlowski, David<br>2722 SW 10th Avenue<br>Cape Coral, FL 33914 |

**II.     Rule 20 requirements for permissive joinder of Florida plaintiffs against Quanta are not met**

Assuming for purposes of argument the viability in the abstract of the Louisiana plaintiffs' claims against Quanta, those of the Florida plaintiffs do not meet the requirements of permissive joinder because (A) the Florida plaintiffs' allegations do not arise out of the same transaction or occurrence as do the Louisiana plaintiffs' allegations; and (B) there is no question of law or fact common to the Louisiana plaintiffs and the Florida plaintiffs that will arise in this action. Unless both of these requirements are met, joinder is not proper under Rule 20.[6]

---

[6] *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) ("To join together in one action, plaintiffs must meet two specific requirements…."); *Campo v. State Farm Fire and Cas. Co.*, No. 06-2611, 2007 WL 2155792, *1 (E.D. La. July 26, 2007) (Fallon, J.) ("Both requirements must be satisfied in order for the parties to be properly joined.").

{N2273335.2}                              5

### A.     Not the same transaction or occurrence

"[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence."[7] Putting aside for the moment the larger question of whether the huge bulk of joined parties in *Amato* are properly joined in the case as a whole, it is clear that, as to Quanta, the claims of the Florida plaintiffs against Quanta's alleged Florida insureds, do not arise out of the same transaction or occurrence as do the claims of the Louisiana plaintiffs against Quanta's Louisiana insureds.[8]

In the context of insurance claims for Hurricane Katrina damages, this Court held in *Campo v. State Farm Fire and Cas. Co.* that multiple plaintiffs' claims against a single insurer were improperly joined when the plaintiffs sought to enforce separate insurance policies.[9] Although the plaintiffs all asserted similar legal claims against a single defendant, this Court explained that "[t]he only common elements between the plaintiffs' claims are that their claims arise from damages caused by Hurricane Katrina and that each plaintiff had a separate insurance policy with the defendant."[10] This Court stated that such limited factual and legal similarities "cannot serve as a common transaction or occurrence because Hurricane Katrina affected each

---

[7] *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).

[8] By moving on the specific question of joinder of Florida plaintiffs with Louisiana plaintiffs suing different Quanta insureds, Quanta does not waive the right to bring a motion at another time addressing whether *any* of the plaintiffs suing one Quanta insured should be joined with plaintiffs suing a different Quanta insured on a different policy. According to Rule 21, a motion to drop a party due to misjoinder may be brought at any time. Such a motion may even be brought after trial has been concluded or on appeal. 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE §1688.1 (2010). However, depending upon the outcome of pending motion on subject matter jurisdiction, future such motions may be moot.

[9] *Campo v. State Farm Fire and Cas. Co.*, No. 06-2611, 2007 WL 2155792 (E.D. La. July 26, 2007).

[10] *Id.* at * 3.

property differently, each property was different with respect to its prior condition, and each property was covered by a separately negotiated insurance policy."[11]

This Court's ruling in *Campo* accords with the reasoning of other judges in this district faced with the joinder of multiple plaintiffs against one or more insurers for Hurricane Katrina damages and alleged bad faith.[12] While *Campo* and similar cases dealt with homeowners' policies and the case here concerns a declaratory judgment action against commercial general liability insurers, the disparities which barred joinder in *Campo* are even more pronounced here.

Unlike in *Campo* and other post-Katrina cases involving a "standard homeowner's policy,"[13] the policies at issue in these declaratory judgment claims are commercial general liability policies. These policies are not identical nor do plaintiffs assert that they are. Each insured's policy is individually negotiated and contains its own unique amalgam of terms and endorsements. Each insured's policy has its own dates of inception and expiration, a critical initial hurdle in determining whether the policy is even *potentially* applicable. The policies of the different insureds have different limits and different deductibles and some have self-insured retentions which raise an entirely different issue. In addition to the fact that each insured's policy consists of its own negotiated compilation of forms, the Louisiana policies contain Louisiana endorsements and the Florida policies contain Florida endorsements. If in *Campo*

---

[11] *Id. See also Burton v. Allstate Ins. Co.*, 2009 WL 365744 (E.D. La. Feb. 11, 2009) in which this Court granted a motion under similar circumstances, although in *Burton* the motion was not opposed.

[12] *Sucherman v. Metropolitan Property and Cas. Inc. Co.*, No. 06-8765, 2007 WL 1484067 (E.D. La. May 21, 2007) (Vance, J.); *Rohr v. Metropolitan Ins. & Cas. Co.*, No. 06-10511, 2007 WL 163037 (E.D .La. Jan. 17, 2007) (Feldman, J.).

[13] *See* Judge Feldman's comment in the *Rohr* case that, "Although Plaintiffs each held basically the same standard homeowner's policy, each insurance contract is a separate transaction."

claims of homeowners involving the same standard policy do not arise out of the same transaction or occurrence, then claims here of homeowners against a commercial general liability insurer involving differing policies and insuring builders in different states cannot arise out of the same transaction or occurrence.

### B. No question of law or fact common to both sets of plaintiffs will arise in this particular action

There is no question of fact that will arise in this action that will be common to Louisiana and Florida plaintiffs. As has been observed by the Judicial Panel on Multi-District Litigation, declaratory judgment actions in these insurance coverage cases do not involve the factual issues that are the subject of the underlying tort claims.[14] Instead, they involve legal issues to be decided on the basis of the particular policy issued to each individual insured. The terms of each policy present no disputed fact issue that will "arise" here and require resolution.

The claims of plaintiffs founded on Louisiana's Direct Action Statute and policies issued to Quanta Louisiana insureds are legally completely different from the declaratory judgment claims by other plaintiffs based on policies issued to Quanta Florida insureds. The plaintiffs suing Louisiana insureds over policies issued or delivered in Louisiana may avail themselves of the Louisiana Direct Action Statute. Plaintiffs suing over policies issued or delivered to Florida insureds may not.[15] Accordingly, the basic issues of standing and subject matter jurisdiction are radically different between the two groups. As pointed out in the Insurer Steering Committee's

---

[14] June 15, 2010 Order Denying Transfer, p. 2 (J.P.M.L.) ("[T]he cases seem to present strictly legal questions which require little or no centralized discovery….. Where insurance coverage actions require and rely on the same factual discovery as the underlying tort actions, transfer may be warranted. That does not appear to be true here.").

[15] At minimum they do not where the individual plaintiff's home is not in Louisiana. According to plaintiffs' complaint here all of the plaintiffs who are suing Quanta's alleged Florida insureds are suing over buildings located outside Louisiana.

Motion to Dismiss Pursuant to Rule 12(B)(1) of the Federal Rules of Civil Procedure, Florida homeowner plaintiffs do not have standing to sue insurers like Quanta, because they are not parties to the insurance contracts and have not obtained any judgment or settlement against the insured builders. As such, they are affirmatively prohibited from suing Quanta at this juncture under Fla. Stat. § 627.4136 (2011). Choice of law issues will differ between the Louisiana and Florida groups as well because the interests of different states must be considered.

### III. Use Of The Omnibus Complaint Procedure Does Not Excuse Compliance With Requirements Of The Federal Rules

The omnibus complaint is an administrative device fashioned for the purpose of obtaining a census of the litigation and determining the extent and nature of the claims.[16] This Court has

---

[16] This Court has explained the use of the omnibus complaint in several status conferences. For example:

> THE COURT: One of the purposes of the omnibus complaint, or the significant purpose of omnibus complaint is to try to get our hands around this particular litigation. The way of doing that is to find out how many claims are out there. While there are obviously more claims than have been filed, it is some indication of the claims. Hopefully this will give an opportunity to take some sampling and design some kind of sample that reflects the litigation in general or certain aspects of the litigation from the standpoint of the defendants involved.
>
> Once that grouping is analyzed to see whether or not it's a reliable sample, whether it's enough of a reliable sample, if it is, then you can explore more about the type of claims in that sample, and the nature and extent of the claims in that sample, where they are from, how many in that sample have drywall in over 50 percent of the house as opposed to under 50 percent of the house or 10 percent of the house or whatever it is.
>
> You're better off with a grouping like that than you are with simply one claim, in order to get some indication of total census in the case and the nature and extent of the claims in the case. That's one of the aspects of the omnibus complaint that hopefully we can now begin mining that data.

said that a master complaint is merely a procedural tool that "should not be given the same effect as an ordinary complaint."[17] It is submitted that similarly an omnibus complaint, while an ingenious method for "getting hands" around the litigation, is not intended to, and cannot, hopscotch the requirements of the Federal Rules of Civil Procedure. In Quanta's case, if the Louisiana plaintiffs and the Florida plaintiffs could not be properly joined in a suit where Quanta was the sole defendant, then they surely cannot be joined in the *Amato* case merely by cumulating multiple plaintiffs' claims against multiple insurers and labeling the pleading an omnibus complaint.

### IV. Dropping All Non-Louisiana Plaintiffs Suing Quanta Is The Appropriate Remedy Under Rule 21

Rule 21 provides that misjoinder of parties is not a ground for dismissing the action, but the Court may, on motion of a party, or on its own, drop a party. Under settled case law, the language "[p]arties may be dropped" essentially means that parties may be dismissed.[18]

### V. Conclusion

The group of plaintiffs suing Quanta's alleged Florida insureds over buildings outside of Louisiana has been misjoined with those plaintiffs suing Quanta's Louisiana insureds over buildings in Louisiana. The Florida group's claims do not arise out of the same transaction or occurrence as the Louisiana group's claims and there is no common issue of fact or law between the two groups that will be decided in the *Amato* case. Accordingly, Quanta asks this Court to

---

Transcript of Dec. 9, 2009 status conference, doc. 690, pp. 18-19 of 40.

[17] *In re Propulsid Products Liability Litigation*, 208 F.R.D. 133, 142 (E.D. La. 2002) (Fallon, J.).

[18] *See, e.g., Don King Productions, Inc. v. Colon-Rosario*, 561 F. Supp. 2d 189, 193 (D.P.R. 2008); *DirecTV, Inc. v. Boggess*, 300 F. Supp. 2d 444, 450 (S.D. W. Va. 2004).

drop the non-Louisiana plaintiffs by dismissing them without prejudice.  Specifically, the following plaintiffs should be dismissed from this case:

Peace, Stephanie & John
Transland, LLC
Kelly, Christopher & Jesica
Mercedes, William and Carmen
Montalvo, Samuel, Jr.
Penny, Andrew and Rachel
El1iot, Dezman
Eisenberg, Brian and Lauren
Frenchman, Beth
Johnson, Charles and Molly
Mizne, Michael and Jeannine
Gonzalez, Luis and Caridad
Segundo, Rafael & Ana
Felicetti, Steven & Gayle
Plotkin, Peter
McNeel, Diane
Fallmann, James & Barbara
Miller, Bradley & Tricia
Orlowski, David

Respectfully submitted,

*/s/ Madeleine Fischer*
MADELEINE FISCHER, T.A. (5575)
JOSEPH J. LOWENTHAL JR. (8909)
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 51st Floor
New Orleans, Louisiana   70170
Telephone:  (504) 582-8000 / Direct:  582-8208
Direct Facsimile:  (504) 589-8208
E-mail:  mfischer@joneswalker.com
E-mail:  jlowenthal@joneswalker.com

*Attorneys for Quanta Indemnity Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Support of Quanta Indemnity Company's Motion to Drop Parties Improperly Joined Pursuant to Rules 20 and 21 of

the Federal Rules of Civil Procedure has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was previously electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, in accordance with the procedures established in MDL 2047, on this 24th day of March, 2011.

/s/ *Madeleine Fischer*
                    MADELEINE FISCHER