## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | ) | CASE NO. 2:09-MD-02047 |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | SECTION L |
| | ) | |
| | ) | JUDGE FALLON |
| (Relates to *Amato v. Liberty Mutual Ins.*, No. | ) | |
| 2:10-cv-00932) | ) | MAG. JUDGE WILKINSON |

### TRAVELERS MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE FOR LACK OF PERSONAL JURISDICTION

### INTRODUCTION

As the Fifth Circuit and this Court have recognized, the Supreme Court has set an

extremely "high standard" for finding *general* personal jurisdiction exists over an out-of-state

defendant.  (R. Doc. No. 7356 at 13 (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d

602, 610-11 (5th Cir. 2008)).)  Plaintiffs' *Amato* "Omnibus V" Amended Complaint asserts

claims against Travelers without alleging any facts even suggesting that Travelers contacts with

Louisiana meet this "high standard."  As demonstrated below, this Court has no basis for

asserting personal jurisdiction over Travelers when the claims have no connection to Louisiana

whatsoever.  Accordingly, Travelers respectfully requests this Court to dismiss it from this action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1]

### BACKGROUND

On March 19, 2010, Plaintiffs and the Plaintiff Steering Committee ("PSC") filed this *Amato* "Omnibus V" Complaint asserting claims on behalf of injured third-party Plaintiffs against alleged distributors, suppliers, importers, exporters, or manufacturers of Chinese drywall, or home builders or developers that allegedly used defective Chinese drywall ("Insured Defendants").  The Plaintiffs' claims relate to homes located in at least six states: Louisiana, Florida, Georgia, Virginia, Alabama, and Mississippi

Plaintiffs also assert claims against Travelers who allegedly issued commercial general liability ("CGL") policies to a group of these Insured Defendants ("Travelers Insureds"). However, none of these coverage claims against Travelers arise from or relate to any homes located in Louisiana (or otherwise have any connection with Louisiana whatsoever) and therefore none of these claims provide any basis for asserting personal jurisdiction over Travelers.

Despite the lack of any connection with Louisiana, this action asserting these claims was nonetheless originally filed in the Eastern District of Louisiana pursuant to the Class Action Fairness Act and was assigned case number 2:10-cv-00932.  (*See* R. Doc. 1 in Case No. 2:10-cv-00932 (E.D. La.).)  Next, the case was administratively transferred to this MDL by the clerk's

---

[1] This motion is filed pursuant to the Court's March 2, 2011 Order (R. Doc. 7793) which allows partial Rule 12(b) motions to be filed without waiving any rights to assert other Rule 12(b) motions raising other issues at later times.  Accordingly, Travelers is filing several other Rule 12(b) motions addressing other issues contemporaneously with the filing of this motion.  To the extent necessary, Travelers incorporates and joins all of those motions here.  Travelers also expressly reserves all its rights to assert different Rule 12(b) motions at later times and does not intend to waive any such defenses or motions.

office, presumably based on the clerk's office's determination that the allegations in this

Complaint were sufficient to qualify this action as a "tag-along action" under this Court's Pretrial

Order 1 at ¶¶ 2-3.  Notably, no specific order, findings, or motions to that regard were made by

this Court or any other party.  On May 11, 2010, the PSC filed the Amended Complaint, the

current operative pleading.  (R. Doc. 3132.)  Plaintiffs' Amended Complaint purports to join the

claims of approximately 420 Plaintiffs as well as a putative nationwide class against

approximately 94 different Insured Defendants.  (*See generally* Am. Compl. at ¶¶ 6-622.)

Plaintiffs also assert claims against the 98 Insurance Company Defendants named in the

Complaint.  (Am. Compl. at ¶¶ 644-647.)

Importantly, the *Amato* action is an original action filed in this Judicial District as it was

not transferred here under the MDL statute.  Indeed, the Judicial Panel on Multidistrict Litigation

("JPML") has repeatedly *refused* to transfer other insurance coverage actions into this MDL

finding they lacked sufficient commonality to be included in the MDL proceedings.  (*See, infra,*

n. 4 (collecting orders).)

## LEGAL STANDARDS AND ARGUMENT

**I.    Plaintiffs Have The Burden Of Establishing Personal Jurisdiction.**

When a nonresident defendant presents a motion to dismiss for lack of personal

jurisdiction, it is the plaintiff's burden to establish that in personam jurisdiction exists. *Wilson v.

Belin*, 20 F.3d 644, 648 (5th Cir.), cert. denied, 513 U.S. 930 (1994) (finding plaintiff failed to

meet that burden); *Wyatt v. Kaplan*, 686 F.2d 276, 282 (5th Cir. 1982) (holding that plaintiff

failed to discharge his burden of establishing personal jurisdiction); *Ham v. La Cienega Music

Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (same principle).  In resolving a jurisdictional issue, the

Court may review pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits and

any part of the record. *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90,

95 (5th Cir. 1992). The allegations of the Amended Complaint are taken as true except to the extent that they are contradicted by other evidence presented by the movant. *Wyatt*, 686 F.2d 282-83 n. 13 (citation omitted). Here, the Amended Complaint lacks any allegations that provide a basis for establishing personal jurisdiction over Travelers. Indeed, the only allegations relating to Travelers demonstrate that the claims asserted against it relate to Florida and *not* to Louisiana. (R. Doc. 3132-4 at 3-10, 94, 114-16.)[2]

## II.     Plaintiffs Cannot Meet Their Burden Through *Specific* Personal Jurisdiction.

Because the claims alleged against Travelers have no connection to Louisiana, there is no basis to even argue that Travelers is subject to specific personal jurisdiction. As this Court has noted: "[s]pecific jurisdiction requires that, (1) the defendant has purposefully availed itself of the privileges of conducting activities in the forum state; and (2) the litigation results from alleged injuries that arise out of or relate to those activities." (R. Doc. 7356 at 8 (noting the parties conceded specific personal jurisdiction was not at issue) (citations omitted).)

## III.    This Court Lacks *General* Personal Jurisdiction Over Travelers.

As noted above, Plaintiffs' Amended Complaint does not include any factual allegations that demonstrate *any* basis for Louisiana's exercise of personal jurisdiction over Travelers. Because there is no connection whatsoever between the claims at issue and the forum state, Plaintiffs must demonstrate that Travelers is subject to the "general personal jurisdiction" of Louisiana, and that the exercise of such general personal jurisdiction would comport with the Due Process Clause of the United States Constitution.

---

[2] Standard Fire has moved to dismiss because the policy alleged does not exist, as set forth in a separate motion. Because there is no policy, there is no basis for suing Standard Fire on Louisiana-related claims, which means it is also entitled to dismissal for lack of personal jurisdiction. (R. Doc. 3132-4 at 113-15; R. Doc. 3132-5 at 42.)

A.      **General personal jurisdiction standards.**

"[G]eneral jurisdiction requires that the defendant's contacts with the forum state be 'substantial' and 'continuous and systematic'" and that test "is a difficult one to meet requiring extensive contacts between a defendant and a forum."  (R. Doc. 7356 at 8-9 (collecting cases holding general personal jurisdiction was lacking).)  Under controlling Fifth Circuit and Supreme Court precedents, the "continuous and systematic" test is an *extraordinarily* high bar.  *See, e.g., Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610-11 (5th Cir. 2008) (recognizing the "high standard set by the Supreme Court" to establish general jurisdiction and "just how difficult it is" to meet the standard); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375-76 (5th Cir. Tex. 1987) (holding personal jurisdiction over defendant was lacking, even though it sold its products in the forum state and was a national corporation that advertised nationally); *Subermsible Sys. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001) ("[T]he continuous and systematic contacts test is a difficult one to meet, requiring *extensive* contacts between a defendant and a forum.  The Supreme Court has upheld an exercise of personal jurisdiction when the suit was unrelated to the defendant's contacts with a forum only once.") (citations omitted, emphasis added); *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (affirming dismissal for lack of personal jurisdiction, recognizing under the Supreme Court's precedents that "continuous and systematic" contacts requires extensive contacts rising to the level of those in *Perkins* where the corporation was headquartered in the forum, and stating "even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction . . . .").

**B.**    **The Supreme Court has refused to extend general jurisdiction over a corporate defendant to a forum outside of that corporation's principal place of business.**

Under the Supreme Court's precedents, general personal jurisdiction has *never* been asserted over a corporate entity outside of its state of incorporation or the state where it has its principal place of business.  Indeed, the Supreme Court's most recent case addressing general jurisdiction specifically held that Texas courts violated the Due Process Clause in asserting general jurisdiction over a corporate entity even though, unlike Travelers, the company had substantial contacts and business activities in the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-19 (1984).  In so holding, the Supreme Court strongly suggested that general jurisdiction *requires* the corporation's contacts with the forum state to be so significant as to amount to having its principal place of business in that state.  As the Supreme Court stated, the question is whether the defendant's contacts with the forum state "constitute the kind of continuous and systematic general business contacts the Court *found to exist* in *Perkins,*" *id.* at 416 (emphasis added), thus suggesting that *Perkins*—where the forum state was the corporation's "principal . . . place of business," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 n.11 (1984)—sets the general jurisdiction floor.[3]  *See Helicopteros*, 466 U.S. at 415-19 (holding that a state may only exercise general jurisdiction over an out-of-state corporation consistent with the Due Process Clause when "the foreign corporation, through its [agent] 'ha[s] been carrying on in [the forum State] a continuous and systematic . . . part of its general business") (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952)).

---

[3] The issue of general jurisdiction is currently pending before the United States Supreme Court in *Goodyear v. Brown*, No. 10-76.  At oral argument, Justice Kagan specifically questioned whether "general jurisdiction [could] go beyond State of incorporation, principal place of business." (Oral Arg. Tr. at 4:17-21).  The United States has joined the Petitioners in arguing that the exercise of general jurisdiction in that case was constitutionally impermissible.

Applying this test to the case at hand in *Helicopteros*, the Supreme Court held that it was constitutionally impermissible for the Texas courts to exercise general jurisdiction even where the defendant had extensive contacts with Texas, including: the purchase of approximately 80% of its helicopter fleet, parts, and accessories from a Texas company; sending prospective pilots and management and maintenance personnel to Texas for training; sending its CEO to Texas to negotiate a contract; and accepting a $5 million dollar check drawn on a Texas bank.  Notably, Texas was *not* the corporate defendant's principal place of business in *Helicopteros*, which further supports the conclusion that, under Supreme Court precedent, general jurisdiction may *not* be constitutionally asserted over a corporate defendant outside of its state of incorporation or principal place of business.

### C.   Important Due Process principles are protected by the Supreme Court's refusal to extend general personal jurisdiction beyond a corporate defendant's state of incorporation or principal place of business.

The Supreme Court's refusal to extend general personal jurisdiction beyond a corporate defendant's state of incorporation or principal place of business is based on sound policy considerations and rooted in the Due Process Clause.  Unlike specific jurisdiction, which requires some nexus between the claims at issue and the forum state (of which there is none here), general jurisdiction allows a court to adjudicate claims bearing no relationship whatsoever to the forum state.  If this Court were to find general personal jurisdiction existed over Travelers, such a finding would suggest that any corporate defendant engaged in a nationwide business could be amenable to suit in any state in the country to any claim, irrespective of whether or not there exists any connection between such claim and the forum state.

This result would encourage blatant forum shopping as plaintiffs could bring claims in whatever forum they perceived to be the most favorable.  Courts considered "plaintiff friendly" would be flooded with claims bearing no relationship to the forum state, and residents of such

states would, in turn, be forced to bear a significant burden and expense as a result of the increased litigation causing their own cases to be significantly delayed.  Certainly the additional influx of out-of-state cases would provide no benefits to, and indeed would prejudice, the forum state's own residents.

Moreover, forcing a corporate defendant to defend against claims anywhere that a plaintiff chooses to file is completely inconsistent with the fundamental principles of the Due Process Clause as it would clearly be highly prejudicial to these defendants.  This is likely why the Supreme Court has thus far only upheld general jurisdiction in *one* case—where (unlike here) the forum state was the corporate defendant's "principal, if temporary, place of business." *Keeton*, 465 U.S. at 779 n.11 (citing *Perkins*, 342 U.S. at 448).

Against this backdrop, it is clear that Plaintiffs have not, and cannot, establish general jurisdiction over Travelers.  As one federal court recently held in dismissing an insurer for lack of personal jurisdiction, even the following *extensive contacts* were "far less than those which the Supreme Court and the Fifth Circuit have found insufficient for a finding of general jurisdiction":

> [The insurer] was licensed by the Texas Department of Insurance; contracted and communicated with, and issued insurance policies to, its insureds located in Texas; billed and collected premiums from insureds in Texas; adjusted and paid claims by and against its insureds in Texas on insurance policies issued to Texas insureds; hired and paid Texas attorneys to represent it and its insureds when they were sued in Texas more than 100 times during the past ten years; purposefully invoked the jurisdiction of a Texas court by filing suit in Dallas County to collect a debt; contracted with Texas-based vendors and paid them more than $25 million over the past five years; purchased almost $400 million worth of Texas municipal bonds, upon which defendant receives over $15,000,000 annually in interest; and paid over $80,000,000 in claims-related expenses to Texas-based insureds, claimants, adjusters, and others.

*See Am. Bank, F.S.B. v. Auto-Owners Mut. Fire & Cas. Ins. Co.*, No. 4:10-CV-331-A, 2010 U.S. Dist. LEXIS 102341, at *11-19 (N.D. Tex. Sept. 27, 2010) (granting motion to dismiss for lack

of personal jurisdiction over insurer because the claims did not arise from any specific contacts with Texas and there was no general jurisdiction); *see also Choice Healthcare, Inc. v. Kaiser Found. Health Plan*, 615 F.3d 364, 368 (5th Cir. 2010) (affirming dismissal of insurer for lack of personal jurisdiction). Accordingly, it is apparent from the record that this Court lacks personal jurisdiction over Travelers, and they should be dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

> **D.** **This Court applied an incorrect legal standard in finding general personal jurisdiction existed over insurers in the *Pate* decision.**

Travelers recognizes that this Court recently issued a thorough decision on this very issue. (R. Doc. 7356.) Travelers respectfully submits, however, that this Court's analysis was erroneous. In its Opinion, this Court stated that general personal jurisdiction exists over a defendant if it has a "business presence in the forum state." (R. Doc. 7356 at 16 (citing *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).) But this quote from *Jackson* was improperly applied in *Pate* because the context was different. In *Jackson*, the Fifth Circuit did state (in finding general jurisdiction was lacking) that a minimal requirement for the *possibility* of finding general jurisdiction was the existence of some "business presence in the forum state." *Jackson*, 615 F.3d at 584 (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)). However, the Fifth Circuit was specific in that this is a *necessary* condition, **not** a *sufficient* condition, for general jurisdiction to exist. In *Jackson* the Fifth Circuit was able to easily "dispose of any argument that general jurisdiction" existed because the defendant lacked *any* business presence in the forum state. *Id.*; *see also* (R. Doc. 7356 at 16-17 (collecting Fifth Circuit cases all holding general jurisdiction did ***not*** exist).)

Similarly, the fact that the *Jackson* court found the lack of a registered agent, an office, bank accounts, employees, or real estate in the forum state dispositive of a *lack* of the requisite

"continuous and systematic contacts" necessary for the assertion of general personal jurisdiction does *not* mean, as this Court concluded, that the mere existence of some or all of those items necessarily equates to "continuous and systematic contacts."  The fundamental flaw in this Court's analysis in *Pate* appears to be its determination that the mere existence of certain contacts--those that were lacking in cases in which the Fifth Circuit refused to find general personal jurisdiction existed--necessarily meant that the presence of those contacts (individually or even collectively) equated with the presence of "continuous and systematic" contacts.  By way of example, if the Fifth Circuit stated that general jurisdiction could not be gained over a defendant because that defendant "had not so much as set foot in Louisiana," it would be erroneous to conclude that general jurisdiction could be obtained over a litigant simply because the reverse was true and it had "set foot in Louisiana" without more.  By confusing the concept of necessary contacts with sufficient ones, this Court found general personal jurisdiction in situations that do not meet the "high standard" required to satisfy the "continuous and systematic" contacts test under the precedents of the United States Supreme Court and Fifth Circuit.  *See*, *supra*, at 4-8 (analyzing the extensive contracts required to meet the high bar for general jurisdiction).

The law is precisely the opposite:

- **Registered agent or appointment of secretary of state for service is not sufficient**.
  As the Fifth Circuit has stated:  "A registered agent, from any conceivable
  perspective, hardly amounts to 'the general business presence' of a corporation so as
  to sustain an assertion of general jurisdiction."  *Wenche Siemer v. The Learjet
  Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992) (further stating the existence of
  a registered agent is not entitled to any special weight for jurisdictional purposes)
  (citing *Bearry*, 818 F.2d at 375); *see also Am. Bank, F.S.B.*, 2010 U.S. Dist. LEXIS
  102341, at *11-19 (granting motion to dismiss for lack of personal jurisdiction over
  insurer because the claims did not arise from any specific contacts with Texas and
  there was no general jurisdiction even though it was registered to do business in
  Texas and paid over $80 million a year in claims-related expenses to Texas insureds);
  *Citicapital Commercial Corp. v. First Nat. Bank of Fort Smith*, No. Civ A3:04-CV-
  0302-B, 2005 WL 856886 (N.D. Tex. April 11, 2005) (holding personal jurisdiction

was lacking and stating "Fifth Circuit precedent is clear that maintaining a registered agent for service in a state does not, standing alone, create personal jurisdiction").

- **Employees or offices in state is not sufficient.** *Submersible Sys.,* 249 F.3d at 418-19 (vacating judgment in favor of plaintiff because general personal jurisdiction was not established even where the defendant owned a drilling rig in the forum state, maintained an office in the state that was staffed by three employees because such contacts were *not* "continuous and systematic"); *Cooper v. McDermott Intern., Inc*., 62 F.3d 395, at *3-4 (5th Cir. 1995) (unpublished) (holding personal jurisdiction was lacking and the fact that some members of board of directors resided in forum, that some employees were based in forum "does not materially advance the argument that" the defendant had "continuous and systematic contacts" with the forum).

- **Doing business in the state or selling products in the state is not sufficient.** *Steinbuch v. Cutler*, 518 F.3d 580, 587 (8th Cir. 2008) ("The percentage of a company's sales in a given state is generally not relevant to the general jurisdiction analysis as the focus lies on whether the contacts are continuous and systematic."); *Tuazon vs. R. J. Reynolds Tobacco Co*., 433 F.3d 1163, 1174 (9th Cir. 2006) ("[A] corporation does not necessarily submit to general jurisdiction in every state in which it merely sells a product"); *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984) ("[N]o court has ever held that the maintenance of even a substantial sales force within the state is a sufficient contact to assert jurisdiction in an unrelated cause of action.").

- **Even significant sales or profits from state not sufficient.** *Bearry*, 818 F.2d at 375-76 (finding sales of $250 million to forum state's residents; maintaining distribution network in forum; advertising its products in forum did not constitute "continuous and systematic contacts" with forum sufficient to support court's exercise of general jurisdiction); *Choice Healthcare, Inc*, 615 F.3d at 368-69 (affirming dismissal for lack of personal jurisdiction, holding that fifty-three insurance payments over the course of more than three years did *not* constitute "continuous and systematic" contact with the forum, and noting the argument otherwise "is unavailing as this circuit has found general jurisdiction lacking in instances where a defendant's forum contacts were significantly more substantial than [defendant's]"); *Dalton v. R & W Marine, Inc*., 897 F.2d 1359, 1362 (5th Cir. 1990) (holding that general jurisdiction did not exist even though 12.9% of the company's revenues were generated in Louisiana, the defendant engaged in advertising which reached Louisiana, and purchased vessels in Louisiana); *Access Telecom, Inc. v. MCI Telecom. Corp*., 197 F.3d 694, 717-718 (5th Cir. 1999) (finding no general jurisdiction even though defendant's "revenues derived from Texas residents totaled millions of dollars a month").

Thus, Travelers respectfully submits that when the appropriate legal standard is properly applied to the present facts, it is clear that general personal jurisdiction is lacking, and the claims

asserted against Travelers should be dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## IV.  Travelers Is Not Subject To The General Jurisdiction Of Louisiana.

While the Travelers entities at issue here are registered to do business in Louisiana, and sell insurance therein, these entities do *not* have "continuous and systematic" contacts with Louisiana.  These Travelers entities are headquartered in Connecticut, which is the "nerve center" where their business is directed, controlled, and coordinated.  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  Connecticut is the *only* state with which Travelers has such continuous and systematic contacts to support the exercise of  general jurisdiction, as this is the only state which it performs the functions and has the contacts found sufficient by the United States Supreme Court in *Perkins* to meet the extraordinarily high general personal jurisdiction test. *Perkins*, 342 U.S. at 438.

While Travelers entities sell insurance in numerous other states, their minimal presence in these states does not come close to constituting the nerve center of their operations, particularly not in Louisiana.  Indeed, although Travelers greatly values its relationship with Louisiana, Louisiana is but one of many markets in which Travelers does business.  Thus, the fact Travelers sells insurance in Louisiana is simply not sufficient to establish the continuous and systematic contacts as the Fifth Circuit has repeatedly required for the assertion of general personal jurisdiction.  *See, supra*, at 10-11 (collecting cases).  Once the law is properly understood,  it is clear that under the appropriate test Travelers simply does not have "continuous and systematic" contacts in Louisiana.

**V.      Even If This Court Finds It Can Exercise Personal Jurisdiction Over Travelers, The Exercise Of Such Jurisdiction Under These Circumstances Would Violate "Traditional Notions Of Fair Play And Substantial Justice."**

> **A.      The fact that none of the claims against Travelers have any connection whatsoever to Louisiana demonstrates that the Due Process Clause does not permit the exercise of jurisdiction.**

Even if this Court finds that Travelers contacts with Louisiana are sufficiently "continuous and systematic" to support general personal jurisdiction (which it should not), this Court still should not exercise that jurisdiction here because it would clearly violate "traditional notions of fair play and substantial justice." *See, e.g., Johnston*, 523 F.3d at 615.  To evaluate the reasonableness of exercising jurisdiction, the Fifth Circuit and Supreme Court have instructed courts to consider five factors: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining an efficient resolution of the controversy; and (5) the shared interest of the several states in furthering substantive social policies.  *Id.* (citing *Bearry*, 818 F.2d at 377); *Asahi Metal Ind. Co. v. Superior Ct. of Cal., Solano City*, 480 U.S. 113-14 (1986).

Courts routinely find the exercise of jurisdiction offends traditional notions of fair play and substantial justice where the forum state, like Louisiana here, has *no* interest in the claims at issue.  *See generally Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1497 n.10 (5th Cir. 1993) cert. denied by 510 U.S. 1044 (1994) (holding that "[i]t would simply be unfair to exercise personal jurisdiction" over the parties where the forum state had "no interest in th[e] suit" and the claims involved application of non-forum law to non-forum parties); *see also Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 573-74 (2d Cir. 1996) (same principle); *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1096 (10th Cir. 1998) (reversing denial of motion to dismiss for lack of personal jurisdiction, stating: "[w]e have little trouble concluding

that this factor weighs heavily in favor of Defendants" because "[n]either Plaintiff nor

Defendants are Kansas residents," "[t]he insurance contract giving rise to the lawsuit was

drafted, negotiated, and executed in Canada," "Canadian law governs the case," and "[t]his is not

a case where a Kansas resident is attempting to recover from the insurer for acts committed by an

insolvent insured").

     Here, given that these claims relate solely to non-Louisiana plaintiffs, arise from non-

Louisiana homes, and relate to insurance policies that were issued and delivered outside of

Louisiana to non-Louisiana Insured Defendants, the well-settled reasoning of these cases

demonstrates that the exercise of personal jurisdiction over Travelers (even if it has "continuous

and systematic contacts," which it does not) would violate the Due Process Clause.

    **B.**    **Evaluation of the five reasonableness factors also demonstrates that the
exercise of jurisdiction would offend the Due Process Clause.**

     Furthermore, the specific factors that the Fifth Circuit and United States Supreme Court

have instructed be considered in determining whether the exercise of personal jurisdiction would

offend traditional notions of fair play and substantial justice all weigh against the exercise of

jurisdiction under the facts here.

    **1.**    **Having to defend suit in a forum with no connection whatsoever to the
relevant claims creates a substantial burden on the Travelers.**

     Travelers would bear a significant burden for several reasons in having to defend suits in

a forum that has no connection whatsoever to the relevant claims.  First, the relevant evidence

and witnesses for these claims are all contained in another state -- Florida.  *See, e.g.,*

*Metropolitan Life Ins. Co*, 84 F.3d at 573-74 (affirming dismissal based on lack of personal

jurisdiction holding the burden on defendant weighed against the exercise of jurisdiction because

"none of its records, files, or witnesses with information about the litigation" are located in the

forum state").

Also, where the choice of forum is clearly a case of forum shopping, courts will consider this factor in holding that defending suit in the forum is an impermissible burden and finding the exercise of jurisdiction offends "traditional notions of fair play and substantial justice." *See, e.g., id.* (affirming dismissal based on lack of personal jurisdiction because exercise of jurisdiction would offend "traditional notions of fair play and substantial justice" when the only reason the plaintiffs' filed suit in the forum, which had no connection to the claims at issue, was to try to take advantage of the forum's favorable statute of limitations, which weighed against exercising jurisdiction) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778 (1984)).

> **2.    Louisiana has no interest in adjudicating disputes involving injuries to non-Louisiana homeowners, based on non-Louisiana insurance policies that were issued to non-Louisiana Insured Defendants.**

As noted above, Louisiana has *no* interest in adjudicating purely non-Louisiana claims that involve non-Louisiana homes, non-Louisiana insurance policies, and non-Louisiana Insured Defendants.  Therefore, this factor weighs heavily against the exercise of jurisdiction.  *See, supra*, at 12 (collecting cases on this point); *see also Villar*, 990 F.2d at 1497 n.10 (holding that "[i]t would simply be unfair to exercise personal jurisdiction" over the parties where the forum state had "no interest in th[e] suit"); *LeBlanc v. Patton Tully Transp*. LLC, 138 F. Supp. 2d 817, 820 (S.D. Tex. 2001) (concluding "even if the Court were to conclude that sufficient contacts existed ... the exercise of [general] jurisdiction" would be unreasonable due to the forum state's lack of connection or interest in the dispute).

> **3.    Asserting jurisdiction over claims by non-Louisiana homeowners does not promote their interest in obtaining convenient and effective relief and, indeed, Plaintiffs' interests are actually better served by prosecuting these actions elsewhere.**

The non-Louisiana Plaintiffs' interests in obtaining convenient and effective relief will be better served if these claims are dismissed from this action and prosecuted elsewhere for at least

three reasons.  First, it will be more convenient for the homeowners to be deposed in their home state rather than here in Louisiana, where they will be required to travel for their depositions and for trial given that they chose to file suit here.  Second, numerous other courts are similarly addressing these Chinese drywall-related claims--in forums where the homeowners or insured defendants reside--and, in many cases, those proceedings are further advanced than these proceedings.  Finally, where the plaintiff is not itself a resident of the forum state, it cannot meet this factor as a matter of law.  *Metropolitan Life Ins. Co.*, 84 F.3d at 573 (holding that because the plaintiff was not a resident of the forum state it had no interest in prosecuting the claims in the forum, and this factor weighed against the exercise of jurisdiction).

> **4.**     **The interstate judicial system's interest in obtaining the most efficient resolution of the controversy does not weigh in favor of jurisdiction given the JPML expressly refused to transfer these insurance coverage cases to this Court.**

The fourth factor considers the common interest of the judicial system in obtaining an efficient resolution of the dispute.  *Metropolitan Life Ins. Co*, 84 F.3d at 574-75.  Here, this factor also weighs against the exercise of jurisdiction for an obvious reason: the JPML panel, which represents the interstate judicial system, expressly refused to transfer these insurance coverage cases to this Court under the MDL statute.[4] (JPML June 15, 2010 Order (finding

---

[4]      *See* Order Vacating Conditional Transfer Order of *General Fid. Ins. Co. v. Foster*, No. 9:09-80743 (S.D. Fla. Dec. 2, 2009); Order Denying Transfer of *Builders Mut. Ins. Co. v. Dragas Mgt. Corp.*, No. 2:09-185 (E.D. Va. Feb. 5, 2010); Order Denying Transfer of *Taylor Woodrow Communities at Vasari LLC v. Mid-Continent Cas. Co.*, No. 09-823 (M.D. Fla. June 15, 2009), *Chartis Specialty Ins. Co., et al. v Banner Supply Co., et al.*, No. 10-339 (M.D. Fla June 15, 2009), and *General Fid. Ins. Co. v. Foster*, No. 09-80743 (S.D. Fla. June 15, 2009); Order Vacating Condition Transfer Order of *Mid-Continent Cas. Co. v. Pate*, No. 2:10-121 (M.D. Fla. Aug. 9, 2010), *Mid-Continent Cas. Co. v. Centerline Homes Const., Inc.*, No. 0:10-60484 (S.D. Fla. Aug. 9, 2010), *Mid-Continent Cas. Co. v. Design Drywall of South Florida, LLC*, No. 1:10-20861 (S.D. Fla. Aug. 9, 2010), and *Mid-Continent Cas. Co. v. Precision Drywall, Inc.*, No. 9:10-80457 (S.D. Fla. Aug. 9, 2010); Order Denying Transfer of *Amerisure Ins. Co. v. Albanese Popkin The Oaks Dev. Group, LP*, No. 9:09-81213 (S.D. Fla. Aug. 2010);

transferring these cases "would not achieve sufficient conveniences or other benefits"
particularly given that the policies and claims would be subject to different applicable state
law).) Furthermore, given that Louisiana has *no* connection to these claims, then by definition
Louisiana has no substantive policy interests that are at issue in these claims.

> **5.     The "shared interest of the several states in furthering substantive
> social policies" factor clearly favors the non-Louisiana states given,
> once again, that Louisiana has *no* connection to the claims at issue in
> these motions.**

Finally, the fifth factor similarly weighs against the exercise of personal jurisdiction
because only non-Louisiana states where the homes are actually located have *any* interest in
these claims, and Louisiana, as explained above, has *no* interest whatsoever. *Burstein*, 693 F.2d
at 522 (finding this fairness test violated because California had a more significant interest in
regulating the admission standards for its state bar than Louisiana had in ensuring its residents
could obtain admission in the California bar). Indeed, this factor weighs "strongly in favor" of
the defendant when the witnesses and evidence are not likely to be located in the forum state.
*See Metropolitan Life Ins. Co.,* 84 F.3d at 574.

Furthermore, it is clear that the state where the Plaintiffs reside, where the homes are
located, and where the policies are issued has a substantially greater interest in these claims than
Louisiana--which lacks *any* interest. *See generally Oregeron v. Opryland, U.S.A*., No. 92-2657,
1993 WL 192200, at *4-5 (E.D. La. June 03, 1993) (dismissing for lack of personal jurisdiction
because "[e]ven if Opryland's contacts with Louisiana are continuous and systematic, exercising

---

Order Denying Transfer of *Taylor Morrison, Inc. v. American Int'l Specialty Lines Ins. Co.*, No.
8:10-1347 (M.D. Fla. Oct. 8, 2010), *Mid-Continent Cas. Co. v. Active Drywall South, Inc.*, No.
1:10-20859 (S.D. Fla. Oct. 8, 2010), and *Mid-Continent Cas. Co. v. JDM Builders, Inc.*, No.
1:10-20862 (S.D. Fla. Oct. 8, 2010); Order Denying Transfer of *Lennar Corp. v. Nautilus Ins.
Co.*, No. 1:10-21909 (S.D. Fla. Dec. 2, 2010); Order Denying Transfer of *Naionwide Mut. Ins.
Co. v. The Overlook, LLC*, No. 4:10-69 (E.D. Va. Feb. 3, 2011).

jurisdiction over Opryland would offend traditional notions of fair play and substantial justice"

because although "Louisiana has an interest in seeing that its resident personal injury plaintiffs

are able to recover against nonresident theme parks. However, the interests of Tennessee are

greater. The incident occurred in Tennessee, the case will be governed by Tennessee law, and

Tennessee has a greater interest in 'furthering its substantive social policies' with regard to

tourist attractions on its soil").

     **C.**    **The JPML's refusal to transfer coverage cases into this MDL further supports the conclusion that the exercise of personal jurisdiction over Travelers violates the Due Process Clause.**

     Finally, the JPML's repeated refusal to transfer insurance coverage claims to this Court

further supports refusing to exercise jurisdiction over these claims based upon the Due Process

considerations. As the JPML concluded:

> [T]he cases seem to present strictly legal questions which require little or no centralized discovery. . . .  Each of the insurance coverage questions in these cases is likely to be decided by an application of the complaint to the policy language *under the applicable state law*. Significantly, the insurance companies that might benefit the most from the efficiencies of centralization, all oppose these motions.  The similarity of legal issues alone is not enough to justify transfer in these circumstances. . . .  For all of these reasons, the Panel concludes that inclusion of these actions in MDL No. 2047 would not achieve sufficient conveniences or other benefits to justify transfer under 28 U.S.C. § 1407.

(*See, supra* n. 4.)  The JPML's reasons for refusing to transfer insurance coverage claims to this

MDL simply reinforces the fundamental point that allowing such claims to be prosecuted in this

Louisiana federal court provides no benefit and would simply serve to unfairly prejudice

Travelers (and Travelers Insureds).

**VI.    To The Extent This Court Denies These Motions, It Should Certify The Order Under 28 U.S.C. § 1292(b) Because It Involves A Controlling Question Of Law Over Which There Is A Substantial Ground For Difference Of Opinion And There Is A Significant Likelihood Such An Appeal Will Terminate This Litigation As To Travelers, Conserving Significant Litigant And Judicial Resources.**

For all the reasons discussed above, Travelers respectfully submits that this Court should grant their motions and dismiss them for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  In the alternative, pursuant to Federal Rule of Appellate Procedure 5(a)(3) and 28 U.S.C. § 1292(b), if this Court declines to grant this Motion, Travelers requests that this Court certify its order denying these motions for immediate interlocutory appeal by adding this statement to its Order:

> Pursuant to Federal Rule of Appellate Procedure 5(a)(3) and 28 U.S.C. § 1292(b), the Court certifies that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from this Order may materially advance the ultimate termination of the litigation.  The controlling question of law is:

> Whether a Louisiana federal court can assert personal jurisdiction over an insurance company based on claims and insurance policies that have no connection with the forum state, merely because the insurance company has registered to do business with the Louisiana Department of Insurance, and sells other insurance policies to other individuals in Louisiana that have no connection to the claims at issue.

In addition, Travelers respectfully requests that the Court stay all proceedings in this action until the United States Court of Appeals for the Fifth Circuit decides Travelers petition for permission to appeal and all appeals resulting therefrom are finally resolved.

The decision whether the Court has personal jurisdiction over Travelers involves a threshold and potentially dispositive question of law, and is therefore particularly appropriate for

interlocutory appellate review.[5]   Indeed, the issue of personal jurisdiction is routinely reviewed

on an interlocutory basis under Section 1292(b).  *See, e.g., Johnston*, 523 F.3d at 608-09 (noting

the appeal arose under 1292(b), and reversing the district court's failure to dismiss for lack of

personal jurisdiction); *Bearry*, 818 F.2d at 373 (noting the district court properly certified the

personal jurisdiction question under Section 1292(b), and reversing the district court because

personal jurisdiction was lacking).

        In determining whether to certify a question for interlocutory appeal under 28 U.S.C. §

1292(b) three factors must be met:  (1) there must be a controlling question of law; (2) as to

which there is a substantial ground for difference of opinion; and (3) that an immediate appeal

from the order may materially advance the ultimate termination of the litigation.  The advantages

of immediate appeal "increase with the probabilities of prompt reversal, the length of the district

court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens

imposed on the parties by a wrong ruling."  *See* Wright, A.R. Miller & E.H. Cooper, *Federal

Practice and Procedure: Jurisdiction 2d,* §3930, p. 416 (2010).

        Here, all three factors are met.  First, whether this Court can exert personal jurisdiction

over Travelers is clearly a "controlling question of law" as evidenced by the fact this precise

issue is routinely certified for interlocutory appeal.  *See, e.g., Johnston*, 523 F.3d at 608-09;

*Bearry*, 818 F.2d at 373; *see also* 19 Moore's Federal Practice, § 203.31[2], p. 203-87 (Matthew

Bender 3d ed. 2010) ("if resolution of the question being challenged on appeal will terminate the

action in the district court, it is clearly controlling"); *see also Stafford vs. Briggs*, 444 U.S. 527,

528 (1980) ("The District Court denied the defendants' motion to dismiss the complaint for lack

_____

[5] Whether the Court can properly assert personal jurisdiction over a defendant is subject to a *de novo* review.  *Choice Healthcare, Inc.*, 615 F.3d at 367 ("This Court reviews *de novo* a district court's dismissal for lack of personal jurisdiction."); *Johnston*, 523 F.3d at 609 ("We review the personal jurisdiction question here de novo.").

of personal jurisdiction, improper venue, and insufficiency of process, but certified the questions involved for immediate appeal.").  Second, because the issue is potentially dispositive, an immediate appeal may materially advance the termination of the litigation, and importantly, may prevent a massive waste of judicial and litigant resources that would otherwise be unnecessarily expended if this case were to proceed through summary judgment or trial only to be reversed for lack of personal jurisdiction.  *Id.*

Finally, given the controlling precedents of the United States Supreme Court, the Fifth Circuit, and the persuasive and well-reasoned decisions of this Court's sister district courts holding under facts essentially identical to those presented here that there is no basis for the exercise of personal jurisdiction, there is a "substantial ground for difference of opinion" regarding this controlling question of law.  Travelers recognizes that this Court recently refused to certify a related question of personal jurisdiction under Section 1292(b).  However, this Court's analysis of the issue in that case shows why a different result should be reached here. *Harch Hyperbarics, Inc. v. Martinucci*, No. 09-7467, 2010 U.S. Dist. LEXIS 124095, at *6-9 (E.D. La. Nov. 9, 2010) (Fallon, J.).  As this Court noted in *Martinucci*, this factor is met where, as here, any of the following situations are present:

> (1) "there is genuine doubt as to the correct legal standard to be applied";

> (2) where "the circuits are in dispute on the question on the Court of Appeals of the circuit encompassing the district court has not spoken on the point";

> (3) "where novel or difficult questions of first impression are presented"; or

> (4) where there is "divergent application of a legal standard."

*Id.* (citations, quotations, and internal punctuation omitted).  Here, at least three of this situations are presented.  In the event this Court denies these motions, it will demonstrate there is genuine doubt about the correct legal standard because, as Justice Kagan recently noted, the United States

Supreme Court's precedents strongly suggest that general jurisdiction cannot be found outside of the state of incorporation or principal place of business of an out-of-state corporation.  (*see, supra* n. 2.)  Similarly, the fact that the Supreme Court has accepted certiorari on two personal jurisdiction cases this term further demonstrates the standards are unsettled and the Circuits are in conflict.  *See J. McIntyre Machinery Ltd. v. Nicastro,* U.S., No. 09-1343 (cert. granted 9/28/10 argued and submitted 1/11/2011); *Goodyear Luxembourg Tires SA v. Brown,* U.S., No. 10-76 (cert. granted 9/28/10, argued and submitted 1/11/2011).

Additionally, other district courts within the Fifth Circuit have found general personal jurisdiction lacking under similar facts and thus this Court's denial of this Motion would demonstrate divergent application of a legal standard.  Indeed, this Court's prior analysis of this issue shows the extreme divergence in the law considering that Fifth Circuit routinely reject the application of general personal jurisdiction and that this Court (and other district courts) exercise general jurisdiction even where the high standards required by the United States Supreme Court are not met.  (*See generally* R. Doc. No. 7356 at 16-17 (collecting nearly half a dozen Fifth Circuit cases holding general jurisdiction was not present, and comparing those to three district court cases where general jurisdiction was found).)

Finally, a decision by the Northern District of Texas from just last year involving an insurer demonstrates a direct conflict between that Court's application of these standards and this Court's prior analysis.  (*Compare* R. Doc. No. 7356 at 15-23 (holding general personal jurisdiction could be asserted over MCC merely because it was registered to do business in Louisiana and sold minimal unrelated insurance in Louisiana) *with Am. Bank, F.S.B.*, 2010 U.S. Dist. LEXIS 102341, at *11-19 (granting motion to dismiss for lack of personal jurisdiction over insurer because the claims did not arise from any specific contacts with Texas and there was no general jurisdiction even where the insurer was "licensed by the Texas Department of

Insurance," issued, sold, and paid claims on insurance policies in Texas, hired and paid Texas

attorneys in more than 100 cases in past 10 years, "contracted with Texas-based vendors and

paid them more than $25 million over the past five years; purchased almost $400 million worth

of Texas municipal bonds, upon which defendant receives over $15,000,000 annually in interest;

*and paid over $80,000,000* in claims-related expenses to Texas-based insureds, claimants,

adjusters, and others") (emphasis added)).   The fact that these two decisions cannot be squared

demonstrates, by definition, that there is a divide within the Fifth Circuit that warrants immediate

interlocutory review under Section 1292(b).

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants The Travelers Indemnity Company of

Connecticut, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity

Company of Illinois, and The Standard Fire Insurance Company respectfully request that this

Court enter an order dismissing Travelers for lack of personal jurisdiction under Rule 12(b)(2) of

the Federal Rules of Civil Procedure.

Respectfully submitted by,

/s/ Seth A. Schmeeckle
Ralph S. Hubbard III, T.A., La. Bar 7040
Seth A. Schmeeckle, La. Bar 27076
LUGENBUHL, WHEATON, PECK, RANKIN
& HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Phone:  (504) 568-1990
Fax:  (504) 310-9195
Email:  rhubbard@lawla.com
        sschmeeckle@lawla.com

And

Donna J. Vobornik
Daniel E. Feinberg
Anthony T. Eliseuson

SNR Denton US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6404
Phone:  (312) 876-8000
Fax:  (312) 876-7934
Email:  donna.vobornik@snrdenton.com
           daniel.feinberg@snrdenton.com
           anthony.eliseuson@snrdenton.com

*Attorneys for Defendants The Travelers Indemnity Company of Connecticut, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois, and The Standard Fire Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Travelers Memorandum of Law in Support of Motion to Dismiss Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for Lack of Personal Jurisdiction** been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 24th day of March, 2011.

   /s/ Seth A. Schmeeckle
Seth A. Schmeeckle