UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>(Relates to *Amato v. Liberty Mutual Ins.*, No. 2:10-cv-00932) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 2:09-MD-02047<br><br>SECTION L<br><br>JUDGE FALLON<br><br>MAG. JUDGE WILKINSON |
|---|---|---|

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CLAIMS OF CERTAIN PLAINTIFFS PURSUANT TO RULE 12(B)(1) OF AMERICAN ZURICH INSURANCE COMPANY AND ZURICH AMERICAN INSURANCE COMPANY

There is no subject-matter jurisdiction in the above-referenced action over claims made by certain plaintiffs ("the Non-Louisiana Claims") against Defendants American Zurich Insurance Company ("AZIC") and Zurich American Insurance Company ("ZAIC") because none of them involve either Louisiana properties affected by Chinese-Manufactured Drywall ("CDW") or liability insurance policies that were delivered, issued, or written in Louisiana. A list of these Non-Louisiana Claims subject to dismissal is attached (*Exhibit A hereto*). Thus these plaintiffs do not have the right to bring a Direct Action under Louisiana law. Nor does any other state law potentially applicable to the CDW-related claims against these two companies provide for a Direct Action procedure. Accordingly, this Court has no subject-matter jurisdiction over the Non-Louisiana Claims, and should dismiss them pursuant to Fed.R.Civ.P. 12(b)(1).[1]

---

[1] For further support of this Motion, the Zurich Companies incorporate by reference the Insurer Steering Committee's Memorandum in Support of Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

**I.     The AZIC Policies**

The *Amato* Amended Complaint mentions five liability policies issued by AZIC to USG Corp. and L&W Supply Corp. (collectively, "USG"):

(1) Policy No. AEC 2935017 04 (providing following-form excess liability coverage for the period of April 1, 2005 to April 1, 2006) (*Exhibit B*);

(2) Policy No. AEC 2935017 05 (providing following-form excess liability coverage for the period of April 1, 2006 to April 1, 2007) (*Exhibit C*);

(3) Policy No. AEC 2935017 06 (providing following-form excess liability coverage for the period of April 1, 2007 to April 1, 2008) (*Exhibit D*);

(4) Policy No. AEC 2935017 07 (providing following-form excess liability coverage for the period of April 1, 2008 to April 1, 2009) (*Exhibit E*);

(5) Policy No. AEC 2935017 09 (providing following-form excess liability coverage for the period of April 1, 2009 to April 1, 2010) (*Exhibit F*).

All Non-Louisiana Claims in the *Amato* Amended Complaint involving USG involve properties in Florida, Georgia, and Pennsylvania. *Amended Complaint at Schedule 1, pg. 90-92, 94-96.* All of the AZIC Policies were delivered to USG in Illinois. *Exhibit B at 2, Declarations, Exhibit C at 5, Declarations, Exhibit D at 2, Declarations, Exhibit E at 2, Declarations, Exhibit F at 2, Declarations.* None of the AZIC Policies were written, in any way or to any extent, in Louisiana. USG is a Delaware corporation. *Exhibit G hereto.*

**II.    The ZAIC Policies**

The *Amato* Amended Complaint mentions three liability policies issued by ZAIC to 84 Lumber Company:

(1) Policy No. GLO 9302293-03, providing general liability insurance for the period of January 1, 2005 to January 1, 2006(*Exhibit H hereto*);

(2) Policy No. GLO 9302293-04, providing general liability insurance for the period of January 1, 2006 to January 1, 2007 (*Exhibit I hereto*);

(3) Policy No. GLO 9302293-05, providing general liability insurance for the period of January 1, 2007 to January 1, 2008 (*Exhibit J hereto*).

All Non-Louisiana Claims in the *Amato* Amended Complaint involving 84 Lumber Company involve properties in Florida and Mississippi. *Amended Complaint at Schedule 1, pg. 1*. All of the AZIC Policies were delivered to 84 Lumber Company in Pennsylvania. *Exhibit H at 1, Declarations, Exhibit I at 1, Declarations, Exhibit J at 1,. Declarations)*. None of the ZAIC Policies were written, in any way or to any extent, in Louisiana. 84 Lumber Company is a Pennsylvania corporation. *Exhibit G hereto*.

## LAW AND ARGUMENT

**I.     The Louisiana Direct Action Statute Does Not Cover The Non-Louisiana Claims**

The Louisiana Direct Action Statute, LSA-R.S. 22:1269 "can only be applied when at least one of the following prerequisites has been met: (1) the policy was written in Louisiana; (2) the policy was delivered in Louisiana; or (3) the accident occurred in Louisiana." *Continental Ins. Co. v. Jantran, Inc.*, 906 F. Supp. 362 (E.D. La. 1995), citing *Esteve v. Allstate Ins. Co.*, 351 So. 2d 117 (La. 1977) (right of direct action is only conferred where accident occurred in Louisiana, or policy was issued or delivered in Louisiana); see also *Sprow v. Hartford Ins. Co.*, 594 F.2d 412 (5th Cir. 1979).

As explained in the Statement of Facts above, none of the Non-Louisiana Claims meet any of these requirements. Regarding AZIC, (1) none of the AZIC Policies were written in Louisiana; (2) all of the AZIC Policies were delivered to USG in Illinois; and (3) all of the properties involved in CDW-related claims against USG are in Florida, Georgia, and Pennsylvania. Regarding ZAIC, (1) none of the ZAIC Policies were written in Louisiana; (2) all of the ZAIC Policies were delivered to 84 Lumber Company in Pennsylvania; and (3) all of the properties involved in CDW-related claims against 84 Lumber Company are in Florida and Mississippi.

## II.     There Is No Right Of Direct Action Under Any Other State Law

As a federal court sitting in diversity, this Court must apply the choice-of-law rules of the forum state. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007). Accordingly, Louisiana's choice-of-law rules will be used to determine which state's substantive law applies to the merits of each plaintiff's claim. Louisiana's general choice-of-law rule is Civil Code Article 3515, which states:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

4

Louisiana's specific choice-of-law rule for contract issues is Article 3537 which states:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

Under the mandates of this rule, Louisiana choice-of-law decisions have been highly consistent in one respect: when a liability policy was delivered to the headquarters or principal place of business of the insured, the courts have consistently applied the law of that state. *E.g.*, *Murden v. Acands, Inc.*, 921 So.2d 165 (La. App. 4 Cir. 2005) (applying Texas law to policy delivered at insured company's headquarters in Texas); *Wood v. Hartford Ins. Co.*, No. Civ.A.01-3167, 2002 WL 1887878 (E.D. La. Aug. 12, 2002) (applying Florida law to policy delivered at insured company's headquarters in Florida – and ignoring minor factors such as first insurer's state of incorporation (Indiana) and place of business (New Jersey)); *Norfolk Southern Corp. v. California Union Ins. Co.*, 859 So.2d 167 (La. App. 1 Cir. 2003) (applying Virginia law to a CGL policy because the insured was incorporated in Virginia and the policies at issue were delivered to the insured in Virginia); *Fenkel v. St. Paul Mercury Ins. Co.*, 974 So.2d 13 (La. App.

5 Cir. 2007) ("the above factors overwhelmingly support application of Colorado laws. The policy was written and delivered in Colorado, Frankel is a Colorado resident, it is clear that the parties contemplated application of these laws"). Likewise, in *Resure, Inc. v. Chemical Distributors, Inc.*, 927 F. Supp. 190 (M.D. La. 1996) the court applied New Mexico law because "[the policyholder] is a New Mexico corporation, and ... the insurance policy was negotiated and delivered in New Mexico."

Nor should this Court apply Louisiana law simply because this action was filed here; Louisiana courts consistently apply the law of the state where a policy was delivered to the insured's headquarters. *Shell Oil Co. v. Hollywood Marine, Inc.*, 701 So.2d 1038 (La. App. 5 Cir. 1997) (applying Texas law to policy delivered at insured company's headquarters in Texas, because "Texas has a compelling interest is regulating insurance policies contracted for in Texas and issued to companies doing business in Texas.").

### A.   The AZIC Policies

The AZIC Policies were delivered to USG in Illinois. USG is a Delaware corporation. All of the properties involved in CDW-claims against USG are located in Florida, Georgia, and Pennsylvania. Accordingly, without taking a position as to which state law applies to the plaintiffs' claims regarding these policies, it could only be one of these four states. However, none of these four states allow direct actions. *Hett v. Madison Mut. Ins. Co., Inc.*, 621 So. 2d 764, 766 (Fla. 2d DCA 1993) (applying Florida's "Non-Joinder Statute", Fla. Stat. § 627.4136(1), and holding dismissal was proper where claimant did not fulfill the condition precedent of obtaining a judgment against the insured prior to suing carrier); *Hartford Ins. Co. v.*

*Henderson & Son, Inc.*, 258 Ga. 493, 494, 371 S.E.2d 401, 402 (1988) (holding Georgia law does not allow an injured party to bring suit directly against a liability insurer, unless and until the injured party secures a judgment against the tortfeasor for which insurance coverage is afforded, or in the certain instances where liability insurance is legislatively mandated); *Zegar v. Sears Roebuck & Co.*, 211 Ill. App. 3d 1025, 570 N.E.2d 1176 (Ill. App. Ct. 1991) ("In Illinois, direct actions against insurance companies are against public policy."); *Commonwealth Dept. of General Serv. v. Celli-Flynn* 115 Pa.Cmwlth. 494, 498, 540 A.2d 1365, 1368 (Pa. Commw. Ct. 1988) ("the general rule in Pennsylvania is that direct actions against insurance companies are not allowed").

### B. The ZAIC Policies

The ZAIC Policies were delivered to 84 Lumber Company in Pennsylvania. 84 Lumber Company is a Pennsylvania corporation. All of the properties involved in CDW-claims against 84 Lumber Company are located in Florida and Mississippi. Accordingly, without taking a position as to which state law applies to the plaintiffs' claims regarding these policies, it could only be one of these three states.

However, <u>none</u> of these three states allow direct actions. *Hett v. Madison Mut. Ins. Co., Inc.*, 621 So. 2d 764, 766 (Fla. 2d DCA 1993) (applying Florida's "Non-Joinder Statute", Fla. Stat. § 627.4136(1), and holding dismissal was proper where claimant did not fulfill the condition precedent of obtaining a judgment against the insured prior to suing carrier); *Mississippi*; *Commonwealth Dept. of General Serv. v. Celli-Flynn* 115 Pa. Cmwlth. 494, 498, 540 A.2d 1365, 1368 (Pa. Commw. Ct. 1988) ("the general rule in Pennsylvania is that direct

7

actions against insurance companies are not allowed"); *Clark v. City of Pascagoula,* 507 So.2d 70, 77 (Miss. 1987) ("The rule in this state is that there is no right of direct action against an insurer.")

## III. This Court Lacks Subject Matter Jurisdiction

As this Court has previously held, where the relevant state law does not allow direct action suits by injured third-parties against the alleged wrongdoer's insurance carrier, the Court lacks subject matter jurisdiction over such claims. *See, e.g., Essex Co. v. Bayou Concession Salvage,* 942 F. Supp. 258, 260-61 (E.D. La 1996) (Fallon, J.) (dismissing for lack of subject matter jurisdiction because there was no case or controversy when the applicable State direct action statute, in that case Texas, prohibited the direct action); *Sercovich v. State Farm Mut. Ins. Co.,* No. 99-2476, 1999 U.S. Dist. LEXIS 17056, at *2-3 (E.D. La. Nov. 2, 1999) (Fallon, J.) (dismissing claims *for lack of jurisdiction* because "the accident and injuries occurred in the state of Mississippi," and the "insurance policy was written in Georgia and delivered to [the insured] in Mississippi," and therefore the Louisiana Direct Action statute did not apply). Accordingly, because none of the Non-Louisiana Claims listed in Exhibit A hereto trigger the Louisiana Direct Action Statute, this Court has no subject-matter jurisdiction over them.

## CONCLUSION

To the extent that the *Amato* Amended Complaint purports to bring a Direct Action against the AZIC or ZAIC, there is no right to a Direct Action under Louisiana or any other law. (Notably, the Amended Complaint does not even assert that such claims exist specifically with regard to these Non-Louisiana Claims.) Therefore, with regard to all Non-Louisiana Claims

listed in Exhibit A hereto, this Court has no subject-matter jurisdiction. Accordingly, these claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

    Respectfully submitted,

*/s/ signature*

**THOMAS L. GAUDRY, JR., (#5980)**
**WADE A. LANGLOIS, III (#17681)**
**GAUDRY, RANSON, HIGGINS & GREMILLION, LLC**
Oakwood Corporate Center
401 Whitney Avenue, Suite 500
Gretna, Louisiana 70056
Telephone: (504) 362-2466   Fax: (504) 362-5938
Emails: tgaudry@grhg.net and wlanglois@grhg.net
Local Counsel for American Zurich Insurance Company and Zurich American Insurance Company

**AND**

**J. STEPHEN BERRY, GA. Bar No. 053106**
**J. RANDOLPH EVANS, GA. Bar No. 252336**
**McKENNA, LONG & ALDRIDGE, LLP**
303 Peachtree Street, NE, Suite 5300
Atlanta, GA 30308
Phone: 404-527-4000 Fax: 404-527-4198
Emails: sberry@mckennalong.com
Lead counsel for American Zurich Insurance Company and Zurich American Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Memorandum of Law in Support of Motion to Dismiss Claims of Certain Plaintiffs Pursuant to Rule 12(B)(1) of American Zurich Insurance Company and Zurich American Insurance Company* has been served on Plaintiffs' Liaison Counsel, Russ Herman and Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by e-mail and/or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 24th day of March, 2011.

Wade A. Langlois, III, LSBA #17681