# EXHIBIT D



**ZURICH**

## <u>Verification of Policy Records</u>

The attached record constitutes documents relevant to the contents of policy AEC 2935017-06 effective 04/01/2007 to 04/01/2008, generated from the data maintained by the issuing company, which Records Management was able to locate.  Cosmetic changes not affecting coverage may have occurred to the format of the policy over time.

_____
Name

***Arlene Church***
*Records Management*

_____
Date

May 14, 2010

Zurich NA

**RICOH**
Records Management
600 Red Brook Blvd,  Suite 600
Owings Mills, Maryland  21117
USA
Phone 410-559-8394
Fax 410-559-8908

# Following Form Excess Liability Policy

**Declarations**



**ZURICH**

American Zurich Insurance Company

Policy Number: AEC 2935017 06

Renewal of Number: AEC 2935017-05

**1. Named Insured:** USG CORPORATION

**Producer:** SWETT & CRAWFORD

**2. Mailing Address:** 125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**3. Policy Period:** FROM: 04/01/2007 TO: 04/01/2008
at 12:01 A.M. Standard Time at the address of the Named Insured.

**4. Limits of Insurance:**
A. $25,000,000 Occurrence
B. $25,000,000 Other Aggregate
C. $25,000,000 Products/Completed Operations Aggregate

**5. Policy Premium:**

| | |
|---|---|
| Advance Premium | $142,186 |
| Policy Minimum Earned Premium | $35,546 |

**6. Underlying Insurance:**

**A. Controlling Underlying Policy:**

Insurance Company: ILLINOIS NATIONAL INS. CO.

Policy Number: BE 9834813

Policy Period: From: 04/01/2007 To: 04/01/2008

Limit of Insurance:

$25,000,000 Occurrence

$25,000,000 Other Aggregate

$25,000,000 Products/Completed Operations Aggregate

**B. Total Limits Of All Underlying Insurance, Including The Controlling Underlying Policy Which This Policy Applies Excess Of:**

$75,000,000 Occurrence

$75,000,000 Other Aggregate

$75,000,000 Products/Completed Operations Aggregate

**7. Endorsements Attached:** See Attached Schedule of Forms and Endorsements

Signed by: _____    _____
Authorized Representative                                    Date

Endorsement # 16

# Amendatory Endorsement - Mailing Address



ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

**USG CORPORATION**
**125 S FRANKLIN STREET**
**CHICAGO, IL 60606-4678**

**Producer:**

**SWETT & CRAWFORD**
**1 N FRANKLIN ST STE 1400**
**CHICAGO, IL 60606-3421**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

It is understood and agreed that the insured mailing address is amended to:

550 West Adams Street

Chicago, IL  60661-3676

All other terms and conditions of this policy remain unchanged.

Signed by: _____          _____
         Authorized Representative                    Date

U-EXS-150-A CW  (4/99)
Page 1 of 1



# Following Form Excess Liability Policy

<u>Zurich U.S.</u>
Insurance is provided by the company designated on the declarations page of this policy.

The addresses of the Zurich U.S. companies are shown below:

ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS COMPANY
1400 American Lane
Schaumburg, Illinois 60196-1056

AMERICAN ZURICH INSURANCE

1400 American Lane
Schaumburg, Illinois 60196-1056

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY
One Liberty Plaza, 165 Broadway
New York, New York 10006

Administrative Offices of all Zurich U.S. companies are
located at 1400 American Lane, Schaumburg, Illinois 60196-1056

# Following Form Excess Liability Policy



There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such in the Controlling Underlying Policy, but only to the extent and within the scope for which such "insureds" qualify for coverage in the Controlling Underlying Policy.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations and in accordance with the provisions of this policy we agree with you to provide coverage as follows:

**Insuring Agreements**

## SECTION I.  COVERAGE

**A.**   We will pay on behalf of the insured the sums in excess of the total Underlying Limits of Insurance shown in Item **6.B.** of the Declarations that the insured becomes legally obligated to pay as damages.

**B.**   This insurance applies only to damages covered by the Controlling Underlying Policy as shown in Item **6.A.** of the Declarations. Except as otherwise provided by this policy, the coverage follows the definitions, terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.

**C.**   The amount we will pay for damages is limited as described in **SECTION II. LIMITS OF INSURANCE.**

## SECTION II.  LIMITS OF INSURANCE

**A.**   The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay regardless of the number of:

   **1.**   Insured's;

   **2.**   Claims made or suits brought; or

   **3.**   Persons or organizations making claims or bringing suits.

**B.**   The Limits of Insurance of this policy will apply as follows:

   **1.**   This policy applies only in excess of the Underlying Limits of Insurance shown in Item **6.B.** of the Declarations.

   **2.**   If our Limits of Insurance stated in Item **4.** of the Declarations are less than the total Limits of Insurance stated in Item **4.,** the limits of our liability shall be that proportion of all damages which our Limits of Insurance bear to the total Limits of Insurance in Item **4.** and which is in excess of the total underlying insurance limits as stated in Item **6.B.** of the Declarations.

   **3.**   Subject to Paragraph **B. 2.** above, the Occurrence Limit stated in Item **4.A.** of the Declarations is the most we will pay for all damages arising out of any one occurrence to which this policy applies.

   **4.**   Subject to Paragraphs **B.2.** and **B.3.** above, the limit stated in Item **4.C.** of the Declarations for the Products/Completed Operations Aggregate is the most we will pay for all damages during our policy period under the products/ completed operations hazard.

5. Subject to Paragraphs **B.2.** and **B.3.** above, the Other Aggregate Limit stated in Item **4.B.** of the Declarations is the most we will pay for all damages, except for damages covered under the products/completed operations hazard, that are subject to an aggregate limit provided by the Controlling Underlying Policy. The Other Aggregate Limit applies separately and in the same manner as the aggregate limits provided by the Controlling Underlying Policy.

6. Subject to Paragraphs **B.2., B.3., B.4.** and **B.5.** above, if the underlying Limits of Insurance stated in Item **6.** of the Declarations are reduced or exhausted solely by payment of damages to which this policy applies, such insurance provided by this policy will apply in excess of the reduced Underlying Limits or, if all Underlying Limits are exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions and exclusions of the Controlling Underlying Policy, except for the terms, conditions, definitions and exclusions of this policy.

7. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the preceding period for purposes of determining the Limits of Insurance.

## SECTION III. DEFENSE

**A.** We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

**B.** We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for payment under this policy.

**C.** If all Underlying Limits of Insurance stated in Item **6.** of the Declarations are exhausted solely by payment of damages, we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which in our opinion may give rise to a payment under this policy. We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Insurance stated in Item **4.** of the Declarations are exhausted by payment of damages.

If we exercise our rights under Paragraphs **B.** or **C.** above, we will do so at our own expense, and any such expense payments will not reduce the Limits of Insurance provided by this policy.

## SECTION IV. EXCLUSIONS

This policy does not apply to any liability, damage, loss, cost or expense:

### ASBESTOS

**A.** Arising out of;

1. The mining, processing, manufacturing, use, testing, ownership, sale or removal of asbestos, asbestos fibers or materials containing asbestos;

2. Exposure to asbestos, asbestos fibers, or material containing asbestos; or

3. Any error or omission in supervision, instructions, recommendations, notices, warnings or advice given, or which should have been given, in connection with asbestos fibers or material containing asbestos.

### POLLUTION

**B.** 1. Arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

 This exclusion does not apply to bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

 **a.** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

 **b.** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

 2. Arising out of any:

 **a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

As used in this exclusion:

**1.** A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**2.** "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

## NUCLEAR

**C. 1.** With respect to which any insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

    **2.** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

        **a.** A person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

        **b.** Any insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

    **3.** Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material", if:

        **a.** The "nuclear material":

            **(i)** Is at any "nuclear facility" owned by, or operated by or on behalf of, any insured; or

            **(ii)** Has been discharged or dispersed therefrom;

        **b.** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any insured; or

        **c.** The injury or "nuclear property damage" arises out of the furnishing by any insured of services, materials, parts or equipment in connection with the planning, construction, maintenance operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph **c.** applies only to "nuclear property damage" to such "nuclear facility'" and any property thereat.

As used in this exclusion:

**1.** "Hazardous properties" include radioactive, toxic or explosive properties.

**2.** "Nuclear Facility" means:

    **a.** Any "nuclear reactor";

    **b.** Any equipment or device designed or used for:

        **(i)** Separating the isotopes of uranium or plutonium,

        **(ii)** Processing or utilizing "spent fuel", or

        **(iii)** Handling, processing or packaging "waste";

    **c.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    **d.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste", and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**3.** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

4. "Nuclear property damage" includes all forms of radioactive contamination of property;

5. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

6. "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

7. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

8. "Waste" means any waste material;

   a. Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

   b. Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

## SECTION V.  CONDITIONS

### A.  Appeals

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the Underlying Insurance, we may elect to appeal at our expense. If we do so elect, we will be liable for the costs and additional interest accruing during this appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in **SECTION II.** of this policy.

### B.  Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any insured will not relieve us from our obligation to pay damages covered by this policy.

In the event of bankruptcy, insolvency or refusal or inability to pay, of any underlying insurer, the insurance afforded by this policy will not replace such underlying insurance, but will apply as if all the limits of any underlying insurance is fully available and collectible.

### C.  Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we will mail or deliver to you not less than ten (10) days advance written notice when the cancellation is to take effect. If we cancel for any other reason, we will mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing notice to you at your mailing address shown in Item **2.** of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and our short rate cancellation table and procedure.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The Named Insured in Item **1.** of the Declarations will act on behalf of all other insureds with respect to the giving and receiving of notice of cancellation and the receipt of any premium refund that may become payable under this policy.

### D.  Maintenance of Underlying Insurance

During the period of this policy, you agree:

1. To keep the policies making up the Total Limits of Underlying Insurance in Item **6.B.** of the Declarations in full force and effect;

2. That the Limits of Insurance of the Underlying Insurance policies will be maintained except for any reduction or exhaustion of aggregate limits by payment of claims or suits for damages covered by Underlying Insurance;

3. The Underlying Insurance policies may not be canceled or not renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any Underlying Insurance policy;

4. Renewals or replacements of the Controlling Underlying Policy will not be materially changed without our agreement.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

**E. Notice of Occurrence**

1. You must see to it that we are notified as soon as practicable of an occurrence which may result in damages covered by this policy. To the extent possible, notice will include:

   a. How, when and where the occurrence took place;

   b. The names and addresses of any injured persons and witnesses;

   c. The nature and location of any injury or damage arising out of the occurrence.

2. If a claim or suit against any Insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation, settlement or defense of the claim or suit; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

4. The insureds will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**F. Other Insurance**

If other insurance applies to damages that are also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is written to be excess of this policy.

Other insurance includes any type of self-insurance or other mechanism by which an insured arranges for funding of legal liabilities.

**G. Terms Conformed to Statute**

The terms of this policy which are in conflict with the statutes of the state where this policy is issued are amended to conform to such statutes. If we are prevented by law or statute from paying on behalf of the insured, then we will, where permitted by law or statute, indemnify the insured.

**H. When Damages are Payable**

Coverage under this policy will not apply unless and until the insured or the insured's underlying insurance has paid or is obligated to pay the full amount of the Underlying Limits of Insurance stated in Item **6.B.** of the Declarations.

When the amount of damages is determined, we will promptly pay on behalf of the insured the amount of damages covered under the terms of this policy.

# Schedule of Forms and Endorsements



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer |
|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 |

**Named Insured and Mailing Address:**

**USG CORPORATION**
**125 S FRANKLIN STREET**
**CHICAGO, IL 60606-4678**

**Producer:**

**SWETT & CRAWFORD**
**1 N FRANKLIN ST STE 1400**
**CHICAGO, IL 60606-3421**

## Schedule of Forms and Endorsements

| Form Name | Form Number | Edition Date |
|---|---|---|
| Following Form Excess Liability Policy Declarations | UEXSD100ACW | 4/1999 |
| Following Form Excess Liability Policy Jacket | UEXS218ACW | 4/1999 |
| Following Form Excess Liability Policy | UEXS100ACW | 4/1999 |
| Schedule of Forms and Endorsements | UEXS215ACW | 4/1999 |
| In Witness Clause | UEXS217ACW | 4/1999 |
| War or Military Action Exclusion | UEXS277ACW | 12/2002 |
| Designated Entity(ies) Exclusion | UEXS121ACW | 4/1999 |
| Designated Products Exclusion | UEXS125ACW | 4/1999 |
| Occupational Disease Exclusion | UEXS157ACW | 4/1999 |
| Products Recall Exclusion | UEXS162ACW | 4/1999 |
| Fungus Liability Exclusion | UEXS267ACW | 7/2001 |
| Silica or Silica Mixed Dust Exclusion | UEXS294ACW | 6/2004 |
| Amendatory Endorsement - Violation of Communication or Information Law Exclusion | UEXS150ACW | 4/1999 |
| Absolute Pollution Follow Form | UEXS264ACW | 4/1999 |
| Cancellation - Amendment of Notice | UEXS112ACW | 4/1999 |
| Amendatory Endorsement - Qualified Entity Endorsement | UEXS150ACW | 4/1999 |
| Certified Act of Terrorism Retained Amount Provisions | UEXS282AMU | 2/2003 |
| Illinois Changes Cancellation/Nonrenewal | UEXS182AIL | 4/1999 |
| Illinois Pollution Exclusion | UEXS235AIL | 4/1999 |
| Conditional Terrorism Retained Amount Provisions (Related to Disposition of Federal TRIA) | UEXS299BCW | 1/2006 |
| Disclosure of Premium Endorsement (Relating to Disposition of TRIA) | UGU692BCW | 1/2006 |

Signed by: _____     _____
                    Authorized Representative                                  Date

# In Witness Clause



**ZURICH**

In return for the payment of premium, and subject to all the terms of the policy, we agree with you to provide insurance as stated in this policy.  This policy shall not be valid unless countersigned by the duly authorized Representative of the Company.

**In Witness Whereof,** this Company has executed and attested these presents, and where required by law, has caused this policy to be countersigned by its duly authorized Representative.

**President**                                  **Corporate Secretary**

**American Guarantee and Liability Insurance Company**
**American Zurich Insurance Company**
**Zurich American Insurance Company of Illinois**
    **Administrative Offices**
    **Zurich Towers**
    **1400 American Lane**
    **Schaumburg, Illinois   60196-1056**

---

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich U.S.
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois  60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])

Endorsement # 1

# War or Military Action Exclusion


ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**
USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**
SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This policy does not apply to any liability, damage, loss, cost or expense arising, directly or indirectly, out of:

    **A.** War, including undeclared or civil war; or

    **B.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **C.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these regardless of any other cause or event that contributes concurrently or in any sequence to injury or damage.

Signed by: _____      _____
            Authorized Representative                        Date

Endorsement # 2

# Designated Entity(ies) Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This policy does not apply to any liability, damage, loss, cost or expense arising out of the operations of or work performed by or on the behalf of the entity(ies) designated in the Schedule listed below:

## SCHEDULE OF EXCLUDED ENTITY(IES)

(DAP, Inc except for Products / Comp. Ops mfg prior to 9/21/91)

Signed by: _____       _____
                 Authorized Representative                                   Date

Endorsement # 3

# Designated Products Exclusion


ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This policy does not apply to bodily injury or property damage included within the products/completed operations hazard and which arises out of any of your products designated in the Schedule below.

### SCHEDULE OF EXCLUDED PRODUCTS

(Formaldehyde)

Signed by: _____        _____
              Authorized Representative                          Date

Endorsement # 4

# Occupational Disease Exclusion



ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This policy does not apply to bodily injury by disease which is caused or aggravated by the conditions of employment by any insured to:

1.   Any employee of the insured and arising out of and in the course of:

    a.   Employment by any insured; or

    b.   Performing duties related to the conduct of any insured's business;

2.   A co-employee of any insured arising out of and in the course of such employment when the insured is an executive officer of such employer; or

3.   The spouse, child, parent, brother or sister of that employee as a consequence of **1.** or **2.** above.

This exclusion applies:

1.   Whether the insured may be liable as an employer or in any other capacity; and

2.   To any obligation to share damages with or repay someone else who must pay damages because of such injury.

Signed by:_____          _____
       Authorized Representative                                              Date

Includes copyrighted material of Insurance Services Office, Inc. with its permission
Copyright, Insurance Services Office, Inc. 1993

Endorsement # 5

# Products Recall Exclusion


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 293017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This policy does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.  Your product;

2.  Your work; or

3.  Impaired property;

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Signed by:_____        _____
           Authorized Representative                 Date

Endorsement # 6

# Fungus Liability Exclusion



ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This policy does not apply to any liability, damage, loss, cost or expense arising directly or indirectly, in whole or in part, by:

1.  Any "fungus(i)" or "spore(s)";

2.  Any substance, vapor or gas produced by or arising out of any  "fungus(i)" or "spore(s)" ; or

3.  Any material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any "fungus(i)" or "spore(s)".

It is agreed that this exclusion applies regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that injury or damage.

**Definitions**

As used in this endorsement:

1.  "Fungus(i)" includes, but is not limited to, any form or type of mold, mushroom or mildew.

2.  "Spore(s)" means any reproductive body produced by or arising out of any "fungus(i)".

Signed by:_____        _____
            Authorized Representative                                          Date

Endorsement # 7

# Silica or Silica Mixed Dust Exclusion



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This policy does not apply to:

1.  Any liability, damage, loss, cost or expense caused directly or indirectly, in whole or in part,  by  the actual, alleged or threatened inhalation, ingestion, absorption, exposure to, existence of or presence of silica; or

2.  Any loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any manner responding to or assessing the effects of silica by any insured or by any other person or entity.

3.  As used in this exclusion, silica means:

    a.  Any form of crystalline or non-crystalline (amorphous) silica, silica particles, silica compounds, silica dust or silica mixed or combined with dust or other particles; or

    b.  Synthetic silica, including precipitated silica, silica gel, pyrogenic or fumed silica or silica-flour.

Signed by: _____        _____

               Authorized Representative                                  Date

Endorsement # 8

# Amendatory Endorsement - Violation of Communication or Information Law Exclusion



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This policy does not apply to any liability, damage, loss, cost or expense resulting from or arising out of any actual or alleged violation of:

1.   The federal Telephone Consumer Protection Act (47 U.S.C. § 227), Drivers Privacy Protection Act (18 U.S.C. § 2721 - 2725) or Controlling the Assault of Non-Solicited Pornography and Marketing Act  (15 U.S.C. § 7701, et seq.); or

2.   Any other federal, state or local statute, regulation or ordinance that imposes liability for the:

   a.   Unlawful use of telephone, electronic mail, internet, computer, facsimile machine or other communication or transmission device; or

   b.   Unlawful use, collection, dissemination, disclosure or re-disclosure of personal information in any manner

   by any insured or on behalf of any insured.

Signed by:_____          _____
              Authorized Representative                                      Date

U-EXS-150-A CW  (4/99)
Page 1 of 1

Endorsement # 9

# Absolute Pollution Follow Form


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SECTION IV. –EXCLUSIONS, EXCLUSION B.** is deleted in its entirely and replaced by the following:

**B.**   **1.**   Arising directly or indirectly out of the actual, alleged or threatened existence, discharge, seepage, migration, disposal, release or escape of "pollutants."

  **2.**   Arising out of any:

  **a.**   Request, demand, or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants;" or

  **b.**   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

As used in this endorsement, "pollutants" means any man-made or naturally occurring solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to: smoke; vapor; soot; fumes; acids; alkalis; chemicals; and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

However, it is agreed that this exclusion does not apply to any liability, damage, loss, cost or expense described above for which coverage is afforded under ILLINOIS NATIONAL INSURANCE COMPANY Policy No. BE 9834813 and then for no broader coverage than is afforded by such insurance (hereafter referred to as the "Underlying Pollution Coverage"). In the event that the "Underlying Pollution coverage" is amended or deleted after the inception date of this policy, we must be so advised in writing within 14 days after the effective date of such amendment or deletion. Any amendment which broadens coverage under the "Underlying Pollution coverage" shall not be binding upon us unless our agreement is acknowledged in writing by an authorized representative of the Company.

Signed by: _____        _____
                      Authorized Representative                                                 Date

Endorsement # 10

# Cancellation - Amendment Of Notice



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 293501706 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

It is agreed that the number of days of advance written notice of cancellation, for reasons other than non-payment of premium, stated in paragraph **2.** of **CONDITION C. Cancellation** or any applicable amendatory endorsement governing the cancellation of this policy, is amended to 90 days. If we cancel for reason of nonpayment of premium, the number of days notice stated in paragraph **2.** of **CONDITION C. Cancellation** or any applicable amendatory endorsement governing the cancellation of this policy remains unchanged.

Signed by:_____      _____
          Authorized Representative           Date

Endorsement # 11

# Amendatory Endorsement - Qualified Entity Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT APPLIES SOLELY WITH RESPECT TO ENTITIES THAT ARE REGISTERED, DOMICILED OR HAVE ONGOING OPERATIONS IN NON-ADMITTED JURISDICTIONS**

I.  **SECTION I. COVERAGE,** paragraph **A.,** is deleted in its entirety and replaced with the following:

   **SECTION I. COVERAGE**

   **A.**  With respect to a **qualified entity**, we will pay to the **First Named Insured** for sums in excess of the total Underlying Limits of Insurance shown in Item **6.B.** of the Declarations that the **qualified entity** becomes legally obligated to pay as damages.

II.  **SECTION III. DEFENSE,** is deleted in its entirety and replaced with the following:

   **SECTION III. DEFENSE**

   We will not assume any duty with respect to the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against any insured in **non-admitted jurisdictions.**

III.  **SECTION V. CONDITIONS,** is amended to include the following additional Condition:

   **Duties as respects claims or suits in non-admitted jurisdictions**

   The duties and requirements imposed upon any insured under this Policy shall not apply in any **non-admitted jurisdiction.** However, with respect to any claim made or suit brought in a **non-admitted jurisdiction,** it shall be the duty of the **First Named Insured** to do or to cause the applicable **qualified entity** to do such things as would be required of such **qualified entity** if coverage applied directly to such claim or suit, as the case may be.

   Coverage under this policy will not apply until the **qualified entity,** or the **qualified entity's** underlying insurer, has paid or is obligated to pay the full amount of the Underlying Limits of Insurance stated in Item **6.B.** of the Declarations.

   When the amount of damages is determined by an agreed settlement or by a final judgment entered against a **qualified entity,** we will promptly pay to the **First Named Insured,** at the mailing address listed in item **2.** of the Declarations, the amount of damages covered under the terms of this policy.

   If the **First Named Insured** or any **qualified entity** recovers from any third party all or part of any amount that we have paid pursuant to this endorsement, the **First Named Insured** shall promptly reimburse the amount of any such recovery to us.

**IV.** The following terms as used in this endorsement have special meaning as follows:

**A.** **First Named Insured** means the person or organization first designated in Item **1.** of the Declarations

**B.** **Non-admitted jurisdiction** means any country or political subdivision in which we are not authorized to insure risks and where doing so would violate the insurance laws and regulations of such jurisdiction..

**C.** **Qualified Entity** means any entity, person or organization that would qualify as an **insured** under this policy, but for the fact that the entity is registered, domiciled or has ongoing operations in a **non-admitted jurisdiction.**

Signby:_____            _____
            Authorized Representative                                Date

Endorsement # 12

# Certified Act of Terrorism Retained Amount Provisions


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### CERTIFIED ACT OF TERRORISM RETAINED AMOUNT SCHEDULE.

| | |
|---|---|
| Each Occurrence Retained Amount: | $77,000,000 |
| Products-Completed Operations Aggregate Retained Amount: | $80,000,000 |
| Other Aggregate Retained Amount: | $80,000,000 |

The following additional provisions apply to this policy as respects any liability, damage, loss, cost or expense arising, directly or indirectly, out of a "certified act of terrorism", including any action taken in hindering or defending against an actual or expected "certified act of terrorism", regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage:

A. We will pay on behalf of the insured the sums in excess of the Total Limits of Underlying Insurance shown in Item **6. B.** of the Declarations or in excess of the "retained amount" shown in the **Certified Act of Terrorism Retained Amount Schedule** of this endorsement, whichever is greater, that the insured legally becomes obligated to pay as damages.

B. Except as otherwise provided by this policy and by this endorsement, coverage as respects an "certified act of terrorism" follows the terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.

C. The amount we will pay for damages is limited as described in **SECTION II. LIMITS OF INSURANCE** except that Paragraph B. 6. is amended to read as follows:

Subject to Paragraphs **B. 2., B. 3., and B.4.** and **B. 5.** above, if the underlying Limits of Insurance stated in Item **6.** of the Declarations or the applicable "retained amount" in the **Certified Act of Terrorism Retained Amount Schedule** of this endorsement are reduced or exhausted solely by payment of damages to which this policy applies, such insurance provided by this policy will apply in excess of the reduced Underlying Limits or "retained amount" or, if all Underlying Limits or "retained amounts" are exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions and exclusions of the Controlling Underlying Policy, except for the terms, conditions, definitions and exclusions of this policy or this endorsement.

**D.** If the coverage of this policy applies in excess of the "retained amount", per paragraph A. above, rather than the Total Underlying Limits of Insurance shown in Item 6.B of the Declarations, the specific "retained amounts" applying to any "certified acts of terrorism" are as follows:

    **1.** The Each Occurrence Retained Amount shown in the Schedule above is the total "retained amount" of damages for which the insured is responsible, applicable to each occurrence.

    **2.** The Products-Completed Operations Aggregate Retained Amount shown in the Schedule above is the total "retained amount" of damages for which the insured is responsible, applicable to all occurrences included within the products-completed operations hazard.

    **3.** The Other Aggregate Retained Amount shown in the Schedule above is the total "retained amount" of damages for which the insured is responsible, applicable to all occurrences except for occurrences included within the products-completed operations hazard.

**E.** The following provision is added to **SECTION V., CONDITIONS, F., Notice of Occurrence**:

You must notify us immediately in writing of any claim or suit which seeks damages in an amount which is fifty (50) percent or more of the amount of the Each Occurrence Retained Amount stated in **the Certified Act of Terrorism Retained Amount Schedule** of this endorsement.

**F.** As used in this endorsement, "certified act of terrorism" means an act that is certified by the Secretary of Treasury of the United States, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The Terrorism Risk Insurance Act of 2002 defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

    **1.** to be an act of terrorism;

    **2.** to be a violent act or an act that is dangerous to human life, property or infrastructure;

    **3.** to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in Section 40102 of title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

    **4.** to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

But, no act shall be certified by the Secretary as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

**G.** As used in this endorsement, "retained amount" means the amount of damages for which the insured is responsible as shown in the **Certified Act of Terrorism Retained Amount Schedule** of this endorsement.

**All other terms, conditions or limitations of the policy remain unchanged.**

Signed by: _____     _____
           Authorized Representative                         Date

Endorsement # 13

# Illinois Changes
# Cancellation/Nonrenewal


ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**A.   CONDITION C. Cancellation,** is deleted in its entirety and replaced with the following:

**Cancellation**

1.   You may cancel this policy by mailing to us advance written notice of the cancellation.

2.   **a.**   We may cancel this policy by mailing to you written notice stating the reason for cancellation.

    **b.**   If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

    **c.**   If we cancel for a reason other than nonpayment of premium, we will mail the notice at least 60 days prior to the effective date of cancellation.

3.   If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

    **a.**   Nonpayment of premium;

    **b.**   The policy was obtained through a material misrepresentation;

    **c.**   Any insured has violated any of the terms and conditions of the policy;

    **d.**   The risk originally accepted has measurably increased;

    **e.**   Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

    **f.**   A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4.   Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.   If this policy is canceled we will send the Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.**   The following is added and supersedes any provision to the contrary:

**Nonrenewal**

1.   If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 30 days before the expiration date to:

    **a.**   You; and

    **b.**   The broker, if known to us, or the agent of record

2.  Even if we do not comply with these terms, this policy will terminate:

    **a.**  On the expiration date if:

        **(1)**  You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

        **(2)**  We have indicated our willingness to renew this policy to you or your representative; or

        **(3)**  You have notified us or our agent that you do not want to renew this policy.

    **b.**  On the effective date of any other insurance replacing this policy.

**Mailing of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

Signed by: _____

               Authorized Representative                  Date

Endorsement # 14

# Illinois
# Pollution Exclusion



ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SECTION IV. EXCLUSIONS,** Exclusion **B. POLLUTION** is deleted in its entirety and replaced with the following:

**POLLUTION**

**B.** **1.** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**a.** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**b.** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**2.** Arising out of any:

**a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

As used in this exclusion:

**1.** A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**2.** "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

Signed by:_____     _____
                        Authorized Representative                                          Date

Endorsement # 15

# Conditional Terrorism Retained Amount Provisions (Related to Disposition of Federal Terrorism Risk Insurance Act)



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 2935017 06 | 04/01/2007 | 04/01/2008 | 04/01/2007 | 18284000 | --- | --- |

**Named Insured and Mailing Address:**

USG CORPORATION
125 S FRANKLIN STREET
CHICAGO, IL 60606-4678

**Producer:**

SWETT & CRAWFORD
1 N FRANKLIN ST STE 1400
CHICAGO, IL 60606-3421

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| TERRORISM RETAINED AMOUNT SCHEDULE. |
|---|

Each Occurrence Retained Amount: $77,000,000

Products-Completed Operations Aggregate Retained Amount: $80,000,000

Other Aggregate Retained Amount: $80,000,000

A. Applicability of the Provisions of this Endorsement

1. The provisions of this endorsement become applicable commencing on the date when one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

    a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this policy; or

    b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

        (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses); or

        (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

        (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

Includes copyrighted material of ISO Properties, Inc. with its permission.

U-EXS-299-B-CW (01/2006)
Page 1 of 3

2.  If the provisions of this endorsement become applicable, such provisions:

   **a.**  Supersede any terrorism endorsement already endorsed to this policy that addresses certified acts of terrorism and/or other acts of terrorism, but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made coverage, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   **b.**  Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3.  If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" will continue in effect unless we notify you of changes to that endorsement in response to federal law.

**B.**  The following additional provisions apply to this policy as respects any liability, damage, loss, cost or expense caused directly or indirectly by "terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism".

1.  We will pay on behalf of the insured the sums in excess of the Total Limits of Underlying Insurance shown in Item **6. B.** of the Declarations or in excess of the "retained amount" shown in the **Terrorism Retained Amount Schedule** of this endorsement, whichever is greater, that the insured legally becomes obligated to pay as damages.

2.  Except as otherwise provided by this policy and by this endorsement, coverage as respects an incident of " terrorism" follows the terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.  Coverage under this endorsement in excess of the "retained amount" shown in the **Terrorism Retained Amount Schedule** of this endorsement only applies with respect to an incident(s) of "terrorism" which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable.

3.  The amount we will pay for damages is limited as described in **SECTION II. LIMITS OF INSURANCE** except that Paragraph **B. 6.** is amended to read as follows:

   Subject to Paragraphs **B. 2.**, **B. 3.**, **B.4.** and **B. 5.** above, if the underlying Limits of Insurance stated in Item **6.** of the Declarations or the applicable "retained amount" in the **Terrorism Retained Amount Schedule** of this endorsement are reduced or exhausted solely by payment of damages to which this policy applies, such insurance provided by this policy will apply in excess of the reduced Underlying Limits or "retained amount" or, if all Underlying Limits or "retained amounts" are exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions and exclusions of the Controlling Underlying Policy, except for the terms, conditions, definitions and exclusions of this policy or this endorsement.

4.  If the coverage of this policy applies in excess of the "retained amount", per paragraph **B.1.**. above, rather than the Total Underlying Limits of Insurance shown in Item **6.B.** of the Declarations,   the specific "retained amounts" applying to any incident of "terrorism" are as follows:

   **a.**  The Each Occurrence Retained Amount shown in the Schedule above is the total "retained amount" of damages for which the insured is responsible, applicable to each occurrence.

   **b.**  The Products-Completed Operations Aggregate Retained Amount shown in the Schedule above is the total "retained amount" of damages for which the insured is responsible, applicable to all occurrences included within the products-completed operations hazard.

   **c.**  The Other Aggregate Retained Amount shown in the Schedule above is the total "retained amount" of damages for which the insured is responsible, applicable to all occurrences except for occurrences included within the products-completed operations hazard.

5.  The following provision is added to **SECTION V., CONDITIONS, F., Notice of Occurrence**:

   You must notify us immediately in writing of any claim or suit which seeks damages in an amount which is fifty (50) percent or more of the amount of the Each Occurrence Retained Amount stated in the **Terrorism Retained Amount Schedule** of this endorsement.

6.   The following definition is added and applies under this endorsement whenever the term terrorism appears in quotation marks:

"Terrorism" means activities against persons, organizations or property of any nature:

   **a.**   That involve the following or preparation for the following:

      **(1)**   Use or threat of force or violence; or

      **(2)**   Commission or threat of a dangerous act; or

      **(3)**   Commission or threat of an act that interferes with or disrupts an  electronic, communication, information or mechanical system; and

   **b.**   When one or both of the following applies:

      **(1)**   The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      **(2)**   It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

7.   The following definition is added and applies under this endorsement whenever the term retained amount appears in quotation marks:

"Retained amount" means the amount of damages for which the insured is responsible as shown in the **Terrorism Retained Amount Schedule** of this endorsement

**All other terms, conditions or limitations of the policy remain unchanged.**

Signed by: _____      _____
          Authorized Representative                Date

Includes copyrighted material of ISO Properties, Inc. with its permission.      U-EXS-299-B-CW  (01/2006)

Page 3 of 3

**Insured Name:**       USG CORPORATION
**Reference Number:**   AEC 2935017 06
**Effective Date:**      04/01/2007



**ZURICH**

## THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY.
## THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS
## AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE OF PREMIUM
# (RELATING TO DISPOSITION OF TRIA)

### SCHEDULE*

| |
|---|
| **(1)** Premium attributable to risk of loss from certified acts of terrorism through the end of the policy period based on the extension of the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Extension Act of 2005, ("TRIA") for lines subject to TRIA: <br> $1,405 <br><br> If TRIA terminates, the portion of this premium attributable to the remaining part of the policy period, as modified by any change shown in **(2)** of this Schedule, applies to the risk of loss from terrorism after the termination of TRIA. |
| **(2)** Premium change upon termination of TRIA or upon applicability of a Conditional Endorsement: <br><br> No change unless one of the following is completed - <br> Return Premium:  N/A <br> Additional Premium:  N/A <br><br> If we notify you of an additional premium charge, the additional premium will be due as specified in such notice. |

*Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**

In accordance with the TRIA, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of your premium attributable is shown in the Schedule of this endorsement or in the Declarations.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% (85% for 2007) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. The Act currently provides for no insurance industry or United States government participation in terrorism losses that exceed $100 billion in any one calendar year.  The federal program established by the Act is scheduled to terminate at the end of December 31, 2007 unless extended by the federal government.

**C. Possibility of Additional or Return Premium**

The premium attributable to the risk of loss from certified acts of terrorism coverage is calculated based on the coverage (if any) in effect at the beginning of your policy for certified acts of terrorism.  If your policy contains a Conditional Endorsement, the termination of TRIA or extension of the federal program with certain modifications (as explained in that endorsement) may modify the extent of coverage (if any) your policy provides for terrorism. If TRIA terminates or the Conditional Endorsement becomes applicable to your policy, the return premium (if any) or additional premium (if any) shown in **(2)** of the Schedule will apply. If the level or terms of federal participation change, the premium shown in **(1)** of the Schedule attributable to that part of the policy period extending beyond such a change may not be appropriate and we will notify you of any changes in your premium.