UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-cv-60273-GOLD/McALILEY

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

Plaintiff,

v.

F. VICINO DRYWALL II, INC.;
F. VICINO DRYWALL, INC.; and
F. VICINO AND COMPANY, INC.,

Defendants.

_____/

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION [ECF No. 46]; DENYING MOTION FOR SUMMARY JUDGMENT [ECF No. 21] AND MOTION FOR STAY [ECF No. 60] AS MOOT; ADMINISTRATIVELY CLOSING CASE

THIS CAUSE comes before the Court on Plaintiff's Motion for Summary Judgment [ECF No. 21], Defendant's Motion for Judgment on the Pleadings or, in the Alternative, to Dismiss for Lack of Subject Matter Jurisdiction [ECF No. 46], and Defendant's Motion for Stay [ECF No. 60]. The Parties have filed responses and replies on several of these motions. [ECF Nos. 51, 52, 66, 74, 75]. For the reasons stated below, I grant the Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [ECF No. 46] and deny the remaining motions as moot.

I.  **FACTUAL BACKGROUND**

The following facts derive from the Complaint. [ECF No. 1]. Between 2003 and 2006, the Plaintiff, National Union Fire Insurance Company of



1

Pittsburgh, PA ("Plaintiff") issued three umbrella insurance policies (the "Policies") to the Defendants, three Florida corporations in the drywall business ("Defendants"). [*Id.* ¶ 15]. Each of the Policies contained a "Total Pollution Exclusion Endorsement," barring coverage for "bodily injury" and "property damage" associated with defective drywall, arising from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants," as that term is defined in each Policy. [*Id.* ¶ 18]. In 2009 and 2010, Defendants[1] were named in approximately seventeen lawsuits related to allegedly defective Chinese drywall (the "Underlying Lawsuits"). [*Id.* ¶ 8].

On February 24, 2010, Plaintiff filed this action, seeking a declaratory judgment under 28 U.S.C. §§ 2201–02 and the substantive law of Florida that it owes no duty to defend or indemnify the Defendants in the Underlying Lawsuits. In particular, Plaintiff argues that the Defendants are not entitled to coverage under the Policies because the allegations in the Underlying Lawsuits concern "pollutants," which are not covered by the Policies. In the Complaint, the Plaintiff also alleged the following:

> Any insurance provided by the Policies is provided on an excess basis, and National Union has reserved its rights to deny coverage pursuant to the Policies.
>
> . . .
>
> A controversy exists between National Union and Defendants regarding the obligation of National Union to defend and indemnify Defendants under the Policies with respect to claims arising from

---

[1] In its Complaint, Plaintiff alleges that only two of the Defendants have been named in the underlying lawsuits. **[ECF No. 1, ¶ 8]**. All three of the Defendants have moved to dismiss, and the Parties have not otherwise distinguished between the three Defendants in their motions, responses, and replies.

2

> allegedly defective drywall installed in the homes of the plaintiffs in the Underlying Lawsuits.
>
> . . .
>
> The Defendants have not yet requested payment or reimbursement from National Union of defense costs that Defendants have incurred to date in defending the Underlying Lawsuits. To the extent that National Union does incur any such defense costs in the future, it will be entitled to reimbursement of those defense costs from each Defendant to the extent that National Union has no coverage obligations to Defendants under the Policies.

[*Id.* ¶¶ 17, 33, 37].

On June 21, 2010, Plaintiff submitted a Motion for Summary Judgment [ECF No. 21], seeking judgment as a matter of law that it owes no duty to defend or indemnify the Defendants in the Underlying Lawsuits. Before responding to the Motion for Summary Judgment, Defendants moved pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(c), and 12(h)(2)(B) for entry of judgment on the pleadings, or alternatively, to dismiss for failure to allege a justiciable controversy necessary to state a claim for declaratory relief. [ECF No. 46]. To oppose Plaintiff's Motion for Summary Judgment, Defendants have sought discovery of certain aspects of the drafting history of the pollution exclusion contained in the Policies. Because the Plaintiff has vigorously opposed these discovery requests, I have held a status conference on this issue, and U.S. Magistrate Judge McAliley has issued several orders. [ECF Nos. 45, 58, 64]. Most recently on November 5, 2010, Defendants moved under Rule 56(f) for a continuance or stay of the Motion for Summary Judgment on the basis that it has not been able to conduct sufficient discovery to adequately oppose Plaintiff's Motion for Summary Judgment [ECF No. 70].

3

## II.   LEGAL STANDARD

Before addressing the Parties' motions concerning summary judgment, I first address the Defendants' Motion to Dismiss because a federal court must always determine whether it has jurisdiction to hear a case. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006). As noted above, the Defendants have moved for "entry of a judgment on the pleadings, or alternatively, to dismiss for failure to allege a justiciable controversy." [ECF No. 46]. Defendants' entire motion focuses on its argument that Plaintiff has not alleged a "case or controversy" under Article III of the Constitution. The proper vehicle to challenge an action under the "case and controversy" requirement is by way of a motion to dismiss for lack of subject matter jurisdiction. *See United States v. Denedo*, 129 S. Ct. 2213, 2221 (2009) ("[A] court's power to issue any form of relief—extraordinary or otherwise—is contingent on that court's subject-matter jurisdiction over the case or controversy."). As such, I will analyze the Defendants' motion as a motion to dismiss under Rule 12(b)(1).

Attacks on subject matter jurisdiction come in two forms. "Facial attacks" focus on the complaint and require a court to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, taking all allegations in the complaint as true. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). "Factual attacks" challenge the existence of subject matter jurisdiction by considering matters outside the pleadings. *Id.* This case presents a facial attack on subject matter jurisdiction as the Defendants have based their motions on the allegations contained in the Complaint.

4

Subject matter jurisdictional disputes in federal court that concern a justiciable "case or controversy" are to be resolved under federal law, not state law. *State Farm Mut. Auto. Ins. Co. v. Bates*, 542 F. Supp. 807, 817 (D. Ga. 1982) ("Whether a certain case presents a controversy under Article III of the Constitution is a question of federal law to be resolved independent of state law.") (citing *Nashville Chattanooga & St. Louis Ry. Co. v. Wallace*, 288 U.S. 249 (1933)); *Am. Ins. Co. v. Evercare Co.*, 699 F. Supp. 2d 1355, 1360 (N.D. Ga. 2010) (same); *Providence Journal Co. v. Travelers Indem. Co.*, 938 F. Supp. 1066, 1079 (D.R.I. 1996) ("Since the Declaratory Judgment Act is procedural in nature, federal law controls the question of whether a district court may grant declaratory relief in a given case."). Accordingly, I will primarily look to the Federal Declaratory Judgment Act and binding case law from the U.S. Supreme Court and the Eleventh Circuit.

The Declaratory Judgment Act provides as follows:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

The U.S. Supreme Court has interpreted the Declaratory Judgment Act by holding that a proper controversy under the statute must be definite, concrete, real, substantial, and not hypothetical. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937) ("The controversy must be definite and concrete, touching

5

the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.") (citations omitted). The Eleventh Circuit has interpreted the statute in a similar manner. *Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985) ("[T]here must be a substantial continuing controversy between parties having adverse legal interests. . . . [T]he continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury. The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments.") (citations omitted); *see also Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) ("There must be a substantial likelihood that the plaintiff will suffer future injury: a 'perhaps' or 'maybe' chance is not enough.").

In the context of an insurance dispute, the Fifth Circuit put forth the following analysis of the Declaratory Judgment Act in 1971:[2]

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

---

[2] All cases decided by the United States Court of Appeals for the Fifth Circuit before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

6

> *Allstate Ins. Co. v. Employers Liab. Assurance Corp.*, 445 F.2d 1278, 1280–81 (5th Cir. 1971) (quoting *Maryland Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The Supreme Court has further noted that the Declaratory Judgment Act provides district courts with discretion over whether to exercise jurisdiction in any particular case. *See Public Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment Act was an authorization, not a command. It gave federal courts competence to make a declaration of rights . . . ."); *Brillhard v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942) ("Put another way, the declaratory judgment statute is an enabling Act which confers discretion on the courts."); *see also Maryland Cas. Co.*, 312 U.S. at 273.

## III. DISCUSSION

As an initial matter, Plaintiff opposes Defendants' motion based on two technical arguments. First, Plaintiff argues that Defendants have conceded in earlier pleadings that there is a justiciable controversy. In particular, Defendants "admitted" certain allegations from Plaintiff's Complaint in the Answer that an "actual, present, and bona-fide" dispute exists between the Parties; Defendants asserted affirmative defenses in the Answer based on the language of the Policies; and Defendants "denied" in the Answer the allegation that "the Defendants had not yet requested payment or reimbursement from National Union." [ECF No. 51, pp. 3–6]. Second, Plaintiff argues that Defendants' motion is not timely:

> F.R.C.P. 12(b) provides: 'A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.'

7

> Defendants have already filed their Answer, which was filed on June 23, 2010. Accordingly, Defendants' Motion for dismissal pursuant to F.R.C.P. 12(b)(1) is not timely filed and should be stricken and disregarded on that basis.

[*Id.* at 2 n.1].

Neither of these two technical arguments is sufficient to demand a denial of the Defendants' motion. First, it is well-established that subject matter jurisdiction cannot be waived or conferred by consent of the parties. *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir. 1983) (citing *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17–18 (1951); *People's Bank v. Calhoun*, 102 U.S. 256, 260–61 (1880)). Second, it is well-settled that any party or the Court may raise the issue of subject matter jurisdiction at any stage of the proceedings. *See Ashcrost v. Mattis*, 431 U.S. 171, 172 (1977) (raising jurisdictional issue *sua sponte*); *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (noting in a dispute if there was a justiciable case or controversy that if "[a]ny time doubt arises as to the existence of federal jurisdiction, we are obliged to address the issue before proceeding further"); *Tobar v. United States*, Case No. 07CV817, 2008 WL 3863893, at *2 (S.D. Cal. Aug. 19, 2008) (holding that a defendant's motion to dismiss under Rule 12(b)(1) was procedurally proper and timely filed despite being filed four months after the defendant's Answer because "lack of subject matter jurisdiction may be raised at any time by any party or by the Court"); *Fahnestock v. Reeder ex rel. Haggerty*, Case No. 00-1912, 2002 WL 32348275, at *1 (E.D. Pa. Jan. 28, 2002) ("Rule 12(b)(1) motions may be filed at any time . . . .") (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

Moving beyond these technical arguments, I look to binding case law, which provides the requirements that an excess insurer must meet to establish an actual "case or controversy" under the Declaratory Judgment Act.[3] The Fifth Circuit[4] has long held "that no action for declaratory relief will lie to establish an insurer's liability in [an excess insurance policy clause contest] until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize." *Allstate Ins. Co. v. Emp'rs Liab. Assurance Corp.*, 445 F.2d 1278, 1280–81 (5th Cir. 1971). The court established this test because "it is not the function of a United States District Court to sit in judgment on . . . nice and intriguing questions which today may be readily imagined, but may never in fact come to pass." *Am. Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960). When faced with an action where the apportionment of insurance coverage between insurers may never arise due to a lack of judgment, a district court is entitled to exercise a certain level of discretion. *Edwards v. Sharkey*, 747 F.2d 684, 686 (11th Cir. 1984). For example, if there is no judgment against an insured, a settlement may be sufficient to establish the insured's liability. *Id.* at 687.

---

[3] Eleventh Circuit case law also provides examples of factual scenarios from other contexts where a controversy between the parties was too remote to be considered ripe or immediate. *E.g., Emory*, 756 F.2d at 1552 (holding that the "mere possibility" that a juror who brought action against a judge for making public statements about the juror "will once again be summoned, qualified, and selected to sit as a juror in a capital case before [the same judge] . . . is too remote to be labeled a controversy"); *Malowney*, 193 F.3d at 1347–48 (holding that judgment debtors whose bank account had been frozen by a writ of garnishment and sued the court clerk for declaratory relief did not present a case or controversy because the complaint did not allege that the plaintiffs had checking account funds likely to be subject to future garnishment or even that they were still judgment debtors).

[4] As discussed *supra*, all cases decided by the Fifth Circuit before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner*, 661 F.2d at 1207.

The issue of justiciability plays a significant role in insurance coverage disputes that come before the Eleventh Circuit even if the parties do not raise it. On at least two occasions, the court has raised this issue *sua sponte* and vacated a district court order because the insurance dispute did not constitute a proper case or controversy. *See Atlanta Gas Light Co. v. Aetna Casualty & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (holding that case must be dismissed for lack of jurisdiction even though district court made no determination as to existence of a case or controversy and entered summary judgment in favor of the insurers); *Provident Life & Accident Ins. Co. v. Transam.-Occidental Life Ins. Co.*, 850 F.2d 1489, 1490–92 (11th Cir. 1988) (raising issue *sua sponte* during oral argument and vacating district court's judgment on jurisdictional grounds in dispute between two insurance companies because there was no legal relationship between the parties).

The facts in *Atlanta Gas Light Co.* involved excess insurance policies. In that case, a natural gas distribution company faced with certain environmental clean-up costs filed a declaratory judgment action against several of its excess umbrella insurers, seeking a judgment that the insurers had a duty to defend or indemnify the company for any losses incurred in clean-up. *Id.* at 411–12. The plaintiff filed action when its only clean-up cost estimate "was well below the amounts required to implicate many if not all of the excess liability policies." *Id.* at 412. In evaluating if the case presented a justiciable case or controversy, the Eleventh Circuit "look[ed] to the state of affairs as of the filing of the complaint" to see if at an "irreducible minimum" the plaintiff had shown some actual or

threatened injury at that time. *Id.* at 414. The action failed under this analysis because many of the defendant excess insurers had not yet received notice of the plaintiff's potential liability for environmental clean-up costs by the time the complaint was filed. *Id.* at 414–15. Although the complaint asserted that the defendant insurers had denied coverage to similar utilities under similar circumstances in the past, the court specifically rejected this as an adequate basis to establish a true "controversy." *Id.* at 415. The court concluded that the plaintiff's decision to file the complaint was not a result of an actual justiciable dispute, but rather it was a "speculati[ve]" and "anticipatory maneuver" that only presented "conjectural questions" and thus failed to establish federal jurisdiction. *Id.*

Another case from this district, which was cited by the Defendants, also bears some similarities to the present dispute. In *Ironshore Indem., Inc. v. Banyon*, Case No. 10-60285 (S.D. Fla. May 28, 2010), an insurance company that had issued an excess policy providing for $10 million of coverage if $30 million of underlying coverage became exhausted brought action against the insured seeking a declaration that it owed no duty to indemnify the defendant in underlying claims regarding a criminal ponzi scheme. Like the Eleventh Circuit, the court raised the case or controversy requirement *sua sponte*. It held that the complaint was facially insufficient to establish a case or controversy because it raised no "indication that these claims are likely to exhaust the underlying coverage of $30 million." *Id.* at 4. As such, the court could as well have been "deciding purely hypothetical issues." *Id.* at 6.

11

The Defendants cite several other similar district court cases where excess insurance coverage disputes did not constitute a case or controversy because the underlying insurance coverage had not been exhausted. *E.g.*, *Goodyear Tire & Rubber Co. v. Nat'l Union Ins. Co.*, Case No. 08-1789, 2009 WL 3518070, at *4 (N.D. Oh Oct. 23, 2009); *Providence Journal Co. v. Travelers Indem Co.*, 938 F. Supp. 1066, 1080 (D.R.I. 1996); *Broadhead v. Hartford Cas. Ins. Co.*, 773 F. Supp. 882, 909 (S.D. Miss. 1991).

Turning to the facts of this case, the Complaint alleges that 17 Underlying Lawsuits exist against the Defendants; that Defendants have not yet requested payment or reimbursement of defense costs for these lawsuits; and that Plaintiff should be entitled to reimbursement of any such costs incurred *in the future*. [ECF No. 1 ¶¶ 17, 37]. Plaintiff does *not* identify any claims against it, nor does it allege that the underlying policies have been exhausted by any final judgments or settlements. Given the large number of current lawsuits pending against Defendants, it is certainly possible that the Underlying Lawsuits may exhaust Defendants' primary policies and trigger the Plaintiff's excess policies. Nevertheless, Plaintiff has failed to make any of these allegations in its Complaint.

Plaintiff cites to several Florida state court cases and a case from the Third Circuit to support its general theory in favor of prompt judicial determination for insurance disputes. [ECF No. 51, pp. 8–9].[5] As noted above, this dispute is

---

[5] Plaintiff cited the following cases: *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819 (3d Cir. 1981); *Higgins v. State Farm Fire & Cas. Co.*, 894 So.2d 5 (Fla. 2004); *Coalition for Adequacy & Fairness in Sch. Funding, Inc. v. Chiles*, 680 So.2d 400, 404 (Fla. 1996); *Home Shopping*

12

governed by federal law, not state law, and I am bound by the Supreme Court and the Eleventh Circuit. Thus, I decline to follow these general propositions of law.

Plaintiff also opposes the Defendants' motion on the basis that "[t]here are approximately 17 lawsuits pending against Defendants" and "there have already been substantial judgments entered in a number of cases [involving other drywall defendants, but not the Defendants in this case]." [ECF No. 51, p. 7]. Specifically, Plaintiff refers to awards in other cases ranging between $164,049 and $2,465,359, and notes that "F. Vicino's primary insurance policies provide $1 million per occurrence liability limits." [*Id.* at 8].[6] Plaintiff asserts that these other cases indicate that a controversy is ripe and immediate in the present case because we should infer from these other judgments that the primary insurance here will likely soon become exhausted, thereby triggering the excess Policies. This may be true, but Plaintiff has failed to cite any case law authorizing me to exercise jurisdiction over this dispute on the basis of judgments in separate actions involving other parties. And the Eleventh Circuit in *Atlanta Gas Light Co.* specifically prohibited district courts from considering other similar insurance disputes as a basis for establishing "case or controversy" jurisdiction because it

---

*Network, Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 857 So.2d 290, 291 (Fla. 2d DCA 2003); *Britamco Underwriters, Inc. v. Cent. Jersey Inv., Inc.*, 632 So.2d 138, 141 (Fla. 4th DCA 1994).

[6] Plaintiff cited the following cases: *Germano, et al. v. Taishan Gypsum Co., Ltd.,* et al., MDL No. 2047, Case No. 09-6687 (E.D. La. May 10, 2010) (ordering judgment in favor or 7 property owner plaintiffs in amount of $2,758,366); *Hernandez v. Knauf Gips KG,* et al., MDL No. 2047, Case No. 09-6050 (E.D. La. Apr. 27, 2010) (awarding damages to a plaintiff in the amount of $164,049; *Seifart v. Banner Supply Co.*, Case No. 09-38887 (Fla. 11th Cir. Ct. June 18, 2010) (returning a jury verdict in favor of plaintiffs in the amount of $2,465,359 for one property).

13

was too "speculative." Thus, I do not consider the previous drywall judgments cited by Plaintiff in my analysis.

Plaintiff also argues that according to this district court in *Ironshore*, "any indication that the limits of the underlying policies will, in the future, be exhausted is sufficient to establish subject matter jurisdiction and justifies the entry of declaratory judgment." [ECF No. 51, pp. 10–11]. But Plaintiff overlooks that the court in *Ironshore* also dismissed the amended complaint in that case, holding that although the plaintiff had alleged that "certain loss payees and insureds have submitted a demand and proof of loss in excess of the underlying coverage," the plaintiff did "not allege that the underlying coverage ha[d] been exhausted." *Ironshore Indem., Inc. v. Banyon*, Case No. 10-60285 (S.D. Fla. June 18, 2010). The key to the analysis in *Ironshore* was that "no case or controversy exists because the excess coverage is contingent on exhaustion of the underlying coverage and *the underlying coverage has not been exhausted*." *Id.* at 4 (emphasis added).[7]

---

[7] A closer look at the language in the cases relied upon in *Ironshore* demonstrates that exhaustion of the primary insurance policy was the critical test for justiciability in an excess insurance policy context in each case. Plaintiff is correct that some of these courts also briefly analyzed the likelihood of exhaustion in the future, but the language from the courts' orders demonstrates that the likelihood inquiry is secondary in importance to the question of whether the primary insurance was actually exhausted. *See Providence Journal Co. v. Travelers Indem. Co.*, 938 F. Supp. 1066, 1080 (D.R.I. 1996) ("*The Journal, however, has no claim against the First State Policies until the $3,000,000 American Policies are first exhausted.* Therefore, the factual predicates to coverage under the First State Policies have not occurred. In fact, they probably never will take place. This Court cannot decide a case based on such hypothetical, contingent future events.") (emphasis added); *Broadhead v. Hartford Cas. Ins. Co.*, 773 F.Supp. 882, 910 (S.D. Miss. 1991) ("*Only if that coverage were to be exhausted* would there be a need for a determination of whether the International policy would operate to provide the next layer of coverage, and that may never happen. None of the parties have even suggested to the court the likelihood that such eventuality will or will not occur. There is merely a possibility that the described factual situation will develop and that, as the *Rowan* court explicitly observed, will not suffice as a basis for present court action.") (emphasis added); *Goodyear Tire & Rubber Co. v. Nat'l Union Ins. Co.*, Case No. 08-1789, 2009 WL 3518070, at *4 (N.D. Oh Oct. 23, 2009) ("Further, Federal has not paid on the Goodyear claim, and will not pay *unless and until the*

14

Like the court in *Ironshore*, I conclude that this action does not qualify as a proper case or controversy. Even if all of the allegations in the Complaint are true, Plaintiff has not alleged a judgment or settlement that would exhaust the primary insurance and trigger its own excess policies. Binding case law provides that these circumstances do not present a justiciable case because the Parties' liabilities at this time are merely contingent and may never materialize. Applying Supreme Court and Eleventh Circuit precedent, I can only conclude that Plaintiff's Complaint alleges a "conjectural, hypothetical, or contingent" controversy and not an "actual" or "real and immediate" controversy. The Plaintiff's Complaint is defective because it does not provide any basis or explanation as to why this Court should exercise jurisdiction over the Plaintiff's declaratory action. As such, any determination as to Plaintiff's future liability is purely hypothetical and improper for judicial decision.

According, it is hereby ORDERED and ADJUDGED that

1.  Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [ECF No. 46] is **GRANTED**.
2.  This case is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may file an Amended Complaint if a proper justiciable case or controversy arises between the Parties.

---

*Primary Policy limits have been exhausted.* Furthermore, there is no dispute that Goodyear and National Union have not reached any settlement nor any contingent agreement to settle the underlying claim. Based upon these facts, the Court is yet to be presented with a real, concrete issue of interpretation of the rights of the parties under the exhaustion provisions outlined in Sections 1, 2 and 3 of the Federal policy.") (emphasis added).

3. Plaintiff's Motion for Summary Judgment [ECF No. 21] and Defendant's Motion for Stay under Rule 56(f) [ECF No. 60] are **DENIED AS MOOT**.

4. All hearings are **CANCELED**.

5. All other pending motions are **DENIED AS MOOT**.

6. This case is **ADMINISTRATIVELY CLOSED**.

DONE AND ORDERED, in Chambers, in Miami, Florida, this 24 day of November, 2010.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc
All counsel of record
U.S. Magistrate Judge Chris M. McAliley