UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>(Relates to *Amato v. Liberty Mutual Ins.*, No. 2:10-cv-00932) | ) ) ) ) ) ) ) | CASE NO. 2:09-MD-02047<br><br>SECTION L<br><br>JUDGE FALLON<br><br>MAG. JUDGE WILKINSON |

MEMORANDUM OF LAW IN SUPPORT OF RULE 12(B)(1) MOTION TO DISMISS
INSURANCE COVERAGE CLAIMS REGARDING CERTAIN INSURED DEFENDANTS OF
MARYLAND CASUALTY COMPANY, STEADFAST INSURANCE COMPANY,
AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, AND
ZURICH AMERICAN INSURANCE COMPANY

There is no subject-matter jurisdiction in the above-referenced action over Defendants

Maryland Casualty Company ("MCC"), Steadfast Insurance Company ("Steadfast"), American

Guarantee and Liability Insurance Company ("AGLIC"), and Zurich American Insurance

Company ("ZAIC") (collectively, "the Zurich Companies") with regard to any of the Non-

Louisiana claims against certain insured defendants ("the Non-Louisiana Claims") because none

of them involve either Louisiana properties affected by Chinese-Manufactured Drywall

("CDW") or liability insurance policies that were delivered, issued, or written in Louisiana.

Thus the plaintiffs do not have the right to bring a Direct Action under Louisiana law. Nor does

any other state law potentially applicable to the Non-Louisiana Claims against the Zurich

companies provide for a Direct Action procedure. Accordingly, this Court has no subject-matter

jurisdiction over the Non-Louisiana Claims, and should dismiss them pursuant to Fed.R.Civ.P.

12(b)(1).[1]  A list of the Non-Louisiana Claims subject to dismissal is attached.  (*Exhibit A hereto*).

## STATEMENT OF FACTS

### I.    The MCC Policies

The *Amato* Amended Complaint mentions three liability policies issued by MCC to Black Bear Gypsum Supply, Inc. ("Black Bear Gypsum"): Precision Portfolio Policy No. PAS 41145096 (period of August 30, 2002 to August 30, 2003) (*Exhibit B hereto*); Precision Portfolio Policy No. PAS 41145096 (period of August 30, 2003 to August 30, 2004); (*Exhibit C hereto*); and Precision Portfolio Policy No.  PAS 00131278 (period of August 30, 2004 to August 30, 2005) (*Exhibit D hereto*) (these three policies are referred to collectively hereafter as "the MCC Policies").  All allegations in the *Amato* Amended Complaint involving Black Bear Gypsum under the MCC Policies involve properties in Florida. *Amended Complaint at Schedule 1, pg. 9-10*. All of the MCC Policies were delivered to Black Bear Gypsum in Florida. *Exhibit B at 7, Exhibit C at 7, Exhibit D at 8.*   None of the MCC Policies were written, in any way or to any extent, in Louisiana.  Black Bear Gypsum is a Florida corporation. *Exhibit E hereto.*

---

[1] For further support of this Motion, the Zurich Companies incorporate by reference the Insurer Steering Committee's Memorandum in Support of Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**II.      The AGLIC Policies**

The *Amato* Amended Complaint mentions one liability policy, which was renewed twice, issued by AGLIC to Beazer Homes USA, Inc. ("Beazer Homes"): Following Form Excess Liability Policy No. CEO 3991382-01, with a policy period (pursuant to renewals) of April 1, 2006 to April 1, 2009 (collectively, "the AGLIC Policies") (*Exhibit F hereto*).  All allegations in the Amato Amended Complaint involving Beazer Homes involve properties in Florida. *Amended Complaint at Schedule 1, pg. 98-99.*  The AGLIC Policy was delivered to the insured in Georgia. *Exhibit F at 2, Declarations.*  The AGLIC Policy was not written, in any way or to any extent, in Louisiana. Beazer Homes is a Georgia corporation. *Exhibit G hereto.*

**III.     The Steadfast Policies**

The *Amato* Amended Complaint mentions two liability policies issued by Steadfast to M/I Homes, Inc. ("M/I Homes"): (1) Home Builder Protective Policy No. HBP 3878264-00, with a policy period of April 1, 2006 to April 1, 2009 (*Exhibit H hereto*); and (2) Home Builder Protective Policy No. HBP 9383583-01 (*Exhibit I hereto*) (collectively, "the Steadfast-M/I Homes Policies"). The Steadfast-M/I Homes Policies were delivered to M/I Homes in Ohio. *Exhibit H at 2, Declarations, Exhibit I at 2, Declarations.*  M/I Homes is an Ohio corporation. *Exhibit J hereto.*  All allegations in the *Amato* Amended Complaint involving M/I Homes involve properties in Florida. *Amended Complaint at Schedule 1, pg. 108-110.*

Steadfast also issued two policies to Beazer Homes: Home Builders Protective Policy No. HBP 3991380-01, with a period of April 1, 2006 to April 1, 2009 (*Exhibit K hereto*) and Home Builders Protective Policy No. HBP 3991380-02, with a period of April 1, 2009 to April 1, 2010 (*Exhibit L hereto*) (collectively, the Steadfast-Beazer Policies"). The Steadfast-Beazer Policies were delivered to Beazer Homes in Georgia. *Exhibit K at 2, Declarations; Exhibit L at 2, Declarations.* Beazer Homes is a Georgia corporation. *Exhibit G hereto.*

None of these four Steadfast Policies were written in Louisiana.

## IV.    The ZAIC Policies

The *Amato* Amended Complaint mentions one liability policy issued by ZAIC to M/I Homes: Excess Follow Form Liability Policy No. CEO 3878228 00, with a policy period of October 1, 2005 to October 1, 2006 ("the ZAIC Policy") (*Exhibit M hereto*). The ZAIC Policy was delivered to M/I Homes in Ohio. *Exhibit M at 3, Declarations.* M/I Homes is an Ohio corporation. *Exhibit J hereto.* All allegations in the *Amato* Amended Complaint involving M/I Homes involve properties in Florida. *Amended Complaint at Schedule 1, pg. 108-110.* The ZAIC Policy was not written, in any way or to any extent, in Louisiana.

## LAW AND ARGUMENT

## I.    The Louisiana Direct Action Statute Does Not Cover The Non-Louisiana Claims

The Louisiana Direct Action Statute, LSA-R.S. 22:1269 "can only be applied when at least one of the following prerequisites has been met: (1) the policy was written in Louisiana; (2) the policy was delivered in Louisiana; or (3) the accident occurred in Louisiana." *Continental Ins. Co. v. Jantran, Inc.,* 906 F. Supp. 362 (E.D. La. 1995), citing *Esteve v. Allstate Ins. Co.,* 351

So. 2d 117 (La. 1977) (right of direct action is only conferred where accident occurred in Louisiana, or policy was issued or delivered in Louisiana); see also *Sprow v. Hartford Ins. Co.*, 594 F.2d 412 (5th Cir. 1979) (same).

As explained in the Statement of Facts above, none of the Non-Louisiana Claims meet any of these requirements. Regarding MCC, (1) none of the MCC Policies were written in Louisiana; (2) all of the MCC Policies were delivered to Black Bear Gypsum in Florida; and (3) all of the properties involved in CDW-related claims against Black Bear Gypsum are in Florida. Regarding AGLIC, (1) none of the AGLIC Policies were written in Louisiana; (2) all of the AGLIC Policies were delivered to Beazer in Georgia; and (3) all of the properties involved in CDW-related claims against Beazer Homes are in Florida. Regarding Steadfast, (1) none of the Steadfast Policies were written in Louisiana; (2) all of the Steadfast Policies were delivered in Georgia (to Beazer Homes) and Ohio (to M/I Homes); and (3) all of the properties involved in CDW-related claims against Beazer Homes and M/I Homes are in Florida. Regarding ZAIC, (1) none of the Steadfast Policies were written in Louisiana; (2) all of the ZAIC Policies were delivered in Ohio; and (3) all of the properties involved in CDW-related claims against M/I Homes are in Florida. Accordingly, none of these Non-Louisiana Claims support a Direct Action against the Zurich Companies.

## II.     There Is No Right Of Direct Action Under Any Other State Law

As a federal court sitting in diversity, this Court must apply the choice-of-law rules of the forum state. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007). Accordingly, Louisiana's choice-of-law rules will be used to determine which state's substantive

law applies to the merits of each plaintiff's claim.  Louisiana's general choice-of-law rule is Civil

Code Article 3515, which states:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Louisiana's specific choice-of-law rule for contract issues is Article 3537 which states:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

Under the mandates of this rule, Louisiana choice-of-law decisions have been highly

consistent in one respect: when a liability policy was delivered to the headquarters or principal

place of business of the insured, the courts have consistently applied the law of that state. *E.g.*, *Murden v. Acands, Inc.*, 921 So.2d 165 (La. App. 4 Cir. 2005) (applying Texas law to policy delivered at insured company's headquarters in Texas); *Wood v. Hartford Ins. Co.*, No. Civ.A.01-3167, 2002 WL 1887878 (E.D. La. Aug. 12, 2002) (applying Florida law to policy delivered at insured company's headquarters in Florida – and ignoring minor factors such as first insurer's state of incorporation (Indiana) and place of business (New Jersey)); *Norfolk Southern Corp. v. California Union Ins. Co.*, 859 So.2d 167 (La. App. 1 Cir. 2003) (applying Virginia law to a CGL policy because the insured was incorporated in Virginia and the policies at issue were delivered to the insured in Virginia); *Fenkel v. St. Paul Mercury Ins. Co.*, 974 So.2d 13 (La. App. 5 Cir. 2007) ("the above factors overwhelmingly support application of Colorado laws. The policy was written and delivered in Colorado, Frankel is a Colorado resident, it is clear that the parties contemplated application of these laws").   Likewise, in *Resure, Inc. v. Chemical Distributors, Inc.*, 927 F. Supp. 190 (M.D. La. 1996) the court applied New Mexico law because "[the policyholder] is a New Mexico corporation, and ... the insurance policy was negotiated and delivered in New Mexico."

Nor should this Court apply Louisiana law simply because this action was filed here; Louisiana courts consistently apply the law of the state where a policy was delivered to the insured's headquarters. *Shell Oil Co. v. Hollywood Marine, Inc.*, 701 So.2d 1038 (La. App. 5 Cir. 1997) (applying Texas law to policy delivered at insured company's headquarters in Texas, because "Texas has a compelling interest is regulating insurance policies contracted for in Texas and issued to companies doing business in Texas.").

7

A.    The MCC Policies

The MCC Policies were delivered to Black Bear Gypsum in Florida. Black Bear Gypsum is a Florida corporation. All of the properties involved in CDW-claims alleged in the *Amato* Amended Complaint against Black Bear Gypsum are located in Florida. Accordingly, the only law that could apply to the MCC Policies is Florida law.

Florida law does not allow a Direct Action against a liability insurer until after the plaintiff has a judgment against the insured defendant, pursuant to §627.4136(1), Fla. Stat. (2010), (commonly known as Florida's "Non-Joinder Statute"), which provides:

> It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such persons shall first obtain settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.

Courts consistently enforce this statute as written and precludes claimants who are not insureds from suing an insurer, like MCC in this case, until a claimant obtains a settlement or judgment. *See, e.g., Hett v. Madison Mut. Ins. Co., Inc.*, 621 So. 2d 764, 766 (Fla. 2d DCA 1993) (dismissal was proper where claimant did not fulfill the condition precedent of first obtaining a judgment against the insured prior to suing carrier); *Tomlinson v. State Farm Fire & Cas. Co.*, 579 So. 2d 211, 212 (Fla. 2d DCA 1991) (Section 627.4136(1) "applies to declaratory judgment actions against insurers"); *Gregg v. Metropolitan Prop. and Liab. Ins. Co.*, 595 F. Supp. 529, 531 (S.D. Fla. 1984) ("By failing to obtain a judgment against the insureds prior to bringing suit against the insurer, the Plaintiffs are precluded from proceeding with this action as against the

insurer under Florida law."). Indeed, another federal court has already applied Florida's Non-Joinder Statute to bar a CDW lawsuit against another builder's insurer. *Mid-Continent Cas. Co. v. Eastern Construction*, Case No. 10-21041-CIV-Graham/Torres (S.D. Fla. October 13, 2010) at *6 ("Moreover the Court agrees that Fla. Stat. 627.4137(1) precludes Alvarez's counterclaim until there is a settlement or judgment in the underlying action").

Significantly, §627.4136(1) is <u>substantive not procedural</u> and controls in federal actions based on diversity. *Allstate Ins. Co. v. Stanley*, 282 F.Supp.2d 1342 (M.D.Fla.2003).

Accordingly, under the only state law potentially applicable to the MCC Policies (that of Florida), the plaintiffs in the Amato Amended Complaint with claims against Black Bear Gypsum do not have the right to bring a Direct Action against MCC.

**B.      The AGLIC Policies**

The AGLIC Policies were delivered to Beazer Homes in Georgia. Beazer Homes is a Georgia corporation. All of the properties involved in CDW-claims against Beazer Homes are located in Florida. Accordingly, the only law that could apply to the AGLIC Policies is that of either Florida or Georgia. As explained above, Florida law does not allow a Direct Action such as that attempted in the *Amato* Amended Complaint. Likewise, Georgia law does not allow an injured party to bring suit directly against a liability insurer, without a judgment against the tortfeasor for which insurance coverage is afforded, or in the certain instances where liability insurance is legislatively mandated. *Crisp Regional Hospital, Inc. v. Oliver*, 275 Ga. App. 578, 621 S.E.2d 554 (2006). This rule was clarified by the Georgia Supreme Court in *Hartford Ins. Co. v. Henderson & Son, Inc.,* 258 Ga. 493, 371 S.E.2d 401 (1988):

> The general rule is that because there is no privity of contract, a party may not bring a direct action against the liability insurer of the party who allegedly caused the damage unless there is an unsatisfied judgment against the insured or it is specifically permitted either by statute or a provision in the policy.

*Id.*, 258 Ga. at 494, 371 S.E.2d at 402.

Thus it is the law in Georgia that without an unsatisfied judgment, an agreement between parties, or a legislative mandate, an injured claimant cannot sue an insurer directly to recover under a liability policy. *See also Googe v. Florida Int'l Indem. Co.*, 262 Ga. 546, 548, 422 S.E.2d 552 (1992); *Haezebrouk v. State Farm Auto. Ins. Co.*, 252 Ga. App. 248, 555 S.E.2d 764 (2001).

This rule applies in the context of contractual, declaratory judgment, and bad faith claims. *Mikell v. Certain Underwriters at Lloyds, London*, 288 Ga. App. 430, 654 S.E.2d 227 (2007) (third-party claimant had no right to file direct action for declaratory judgment); *Capitol Indem. Corp. v. Fraley*, 266 Ga. App. 561, 597 S.E.2d 601 (2004) (third-party claimant had no right to file direct action for bad faith); *Crisp, supra* (malpractice claimant asserting that hospital failed to obtain liability insurance for doctor, in contravention of employment contract between hospital and doctor, had no standing to enforce a contract, unless named in the contract); *Capitol Indemnity Corp. v. Fraley*, 266 Ga. App. 561, 597 S.E.2d 601 (2004) (bar patrons had no standing to sue bar's liability insurer directly after being injured in brawl).

The legislative mandate exception was discussed in *Richards v. State Farm Mutual Automobile Insurance Co.*, 252 Ga. App. 45, 555 S.E.2d 506 (2001), which reiterates the general rule that third-parties do not have standing to enforce a contract absent an unsatisfied judgment, an agreement between parties, or a legislative mandate. The *Richards* court listed the classes of

persons who have been excepted from this rule by legislative mandate: (1) persons injured by common carriers; (2) children riding in school buses; (3) members of the public injured by school buses; and (4) victims of automobile accidents. *Id.* at 45-46. The plaintiffs in this action are not among the classes excepted from this rule.

Accordingly, under the only state law potentially applicable to the AGLIC Policies (that of Georgia), the plaintiffs in the *Amato* Amended Complaint with claims against Beazer Homes do not have the right to bring a Direct Action against AGLIC.

### C. The Steadfast Policies

The Steadfast-Beazer Policies are governed by Georgia law for the reasons explained above. Accordingly, there can be no Direct Action regarding the Steadfast-Beazer Policies.

The Steadfast-M/I Homes Policies were delivered to M/I Homes at its headquarters in Ohio. Accordingly, they are governed by Ohio law. Like Georgia and Florida, Ohio does not allow Direct Actions. R.C. 2721.02(B); see also, *Marks v. Allstate Ins. Co.*, 153 Ohio App.3d 378, 794 N.E.2d 129 (Ohio App. 5 Dist., 2003) ("The 'direct action' rule provides that 'an injured person may sue a tortfeasor's liability insurer, but only after obtaining judgment against the insured.'"). Thus, there can be no Direct Action regarding the Steadfast-M/I Homes Policies.

### D. The ZAIC Policies

The ZAIC-M/I Homes Policies were delivered to M/I Homes at its headquarters in Ohio. As explained above, under Ohio law, the plaintiffs making claims against M/I Homes in the *Amato* Amended Complaint cannot bring a Direct Action against ZAIC.

## III. This Court Lacks Subject Matter Jurisdiction

As this Court has previously held, where the relevant state law does not allow direct action suits by injured third-parties against the alleged wrongdoer's insurance carrier, the Court lacks subject matter jurisdiction over such claims. *See, e.g., Essex Co. v. Bayou Concession Salvage*, 942 F. Supp. 258, 260-61 (E.D. La 1996) (Fallon, J.) (dismissing for lack of subject matter jurisdiction because there was no case or controversy when the applicable State direct action statute, in that case Texas, prohibited the direct action); *Sercovich v. State Farm Mut. Ins. Co.*, No. 99-2476, 1999 U.S. Dist. LEXIS 17056, at *2-3 (E.D. La. Nov. 2, 1999) (Fallon, J.) (dismissing claims *for lack of jurisdiction* because "the accident and injuries occurred in the state of Mississippi," and the "insurance policy was written in Georgia and delivered to [the insured] in Mississippi," and therefore the Louisiana Direct Action statute did not apply). Accordingly, because none of the Non-Louisiana Claims listed in Exhibit A hereto trigger the Louisiana Direct Action Statute, this Court has no subject-matter jurisdiction over them.

## CONCLUSION

To the extent that the *Amato* Amended Complaint purports to bring a Direct Action against the Zurich Companies, there is no right to a Direct Action under Louisiana or any other law. (Notably, the Amended Complaint does not even assert that such claims exist specifically with regard to these Non-Louisiana Claims.) Therefore, with regard to all Non-Louisiana Claims listed in Exhibit A hereto, this Court has no subject-matter jurisdiction. Accordingly, these claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

Respectfully submitted,

_____

**THOMAS L. GAUDRY, JR., (#5980)**
**WADE A. LANGLOIS, III (#17681)**
**GAUDRY, RANSON, HIGGINS & GREMILLION,**
**LLC**
Oakwood Corporate Center
401 Whitney Avenue, Suite 500
Gretna, Louisiana 70056
Telephone: (504) 362-2466  Fax: (504) 362-5938
Emails: tgaudry@grhg.net and wlanglois@grhg.net
Local Counsel for American Guarantee and Liability
Insurance Company; Steadfast Insurance Company; Zurich
American Insurance Company and Maryland Casualty
Company

**AND**

**J. STEPHEN BERRY, GA. Bar No. 053106**
**J. RANDOLPH EVANS, GA. Bar No. 252336**
**McKENNA, LONG & ALDRIDGE, LLP**
303 Peachtree Street, NE, Suite 5300
Atlanta, GA 30308
Phone: 404-527-4000 Fax: 404-527-4198
Emails: sberry@mckennalong.com
Lead counsel for American Guarantee and Liability
Insurance Company; Steadfast Insurance Company; Zurich
American Insurance Company and Maryland Casualty
Company

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Memorandum of Law in Support* of *Rule 12(B)(1) Motion to Dismiss Insurance Coverage Claims Regarding Certain Insured Defendants of Maryland Casualty Company, Steadfast Insurance Company, American Guarantee and Liability Insurance Company, And Zurich American Insurance Company,* has been served on Plaintiffs' Liaison Counsel, Russ Herman and Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by e-mail and/or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that

13

the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this  24th  day of March, 2011.

Wade A. Langlois, III, LSBA #17681