by this policy will apply in excess of the reduced Underlying Limits or, if all Underlying Limits are exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions and exclusions of the Controlling Underlying Policy, except for the terms, conditions, definitions and exclusions of this policy.

7.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the preceding period for purposes of determining the Limits of Insurance.

## SECTION III.  DEFENSE

**A.**  We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

**B.**  We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for payment under this policy.

**C.**  If all Underlying Limits of Insurance stated in Item **6.** of the Declarations are exhausted solely by payment of damages, we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which in our opinion may give rise to a payment under this policy. We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Insurance stated in Item **4.** of the Declarations are exhausted by payment of damages.

If we exercise our rights under Paragraphs **B.** or **C.** above, we will do so at our own expense, and any such expense payments will not reduce the Limits of Insurance provided by this policy.

## SECTION IV.  EXCLUSIONS

This policy does not apply to any liability, damage, loss, cost or expense:

### ASBESTOS

**A.**  Arising out of;

1.  The mining, processing, manufacturing, use, testing, ownership, sale or removal of asbestos, asbestos fibers or materials containing asbestos;

2.  Exposure to asbestos, asbestos fibers, or material containing asbestos; or

3.  Any error or omission in supervision, instructions, recommendations, notices, warnings or advice given, or which should have been given, in connection with asbestos fibers or material containing asbestos.

### POLLUTION

**B.  1.**  Arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

a.  At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

b.  At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

2.  Arising out of any:

a.  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

b.  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

As used in this exclusion:

1.  A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

2. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

## NUCLEAR

C. 1. With respect to which any insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

2. Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

   a. A person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

   b. Any insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

3. Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material", if:

   a. The "nuclear material":

      (i) Is at any "nuclear facility" owned by, or operated by or on behalf of, any insured; or

      (ii) Has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any insured; or

   c. The injury or "nuclear property damage" arises out of the furnishing by any insured of services, materials, parts or equipment in connection with the planning, construction, maintenance operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph c. applies only to "nuclear property damage" to such "nuclear facility'" and any property thereat.

As used in this exclusion:

1. "Hazardous properties" include radioactive, toxic or explosive properties.

2. "Nuclear Facility" means:

   a. Any "nuclear reactor";

   b. Any equipment or device designed or used for:

      (i) Separating the isotopes of uranium or plutonium,

      (ii) Processing or utilizing "spent fuel", or

      (iii) Handling, processing or packaging "waste";

   c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

   d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of   "waste",   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

3. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

4. "Nuclear property damage" includes all forms of radioactive contamination of  property;

5. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

6. "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

7. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

8. "Waste" means any waste material;

    a. Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

    b. Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

## SECTION V. CONDITIONS

### A. Appeals

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the Underlying Insurance, we may elect to appeal at our expense. If we do so elect, we will be liable for the costs and additional interest accruing during this appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in **SECTION II.** of this policy.

### B. Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any insured will not relieve us from our obligation to pay damages covered by this policy.

In the event of bankruptcy, insolvency or refusal or inability to pay, of any underlying insurer, the insurance afforded by this policy will not replace such underlying insurance, but will apply as if all the limits of any underlying insurance is fully available and collectible.

### C. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we will mail or deliver to you not less than ten (10) days advance written notice when the cancellation is to take effect. If we cancel for any other reason, we will mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing notice to you at your mailing address shown in Item **2.** of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and our short rate cancellation table and procedure.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The Named Insured in Item **1.** of the Declarations will act on behalf of all other insureds with respect to the giving and receiving of notice of cancellation and the receipt of any premium refund that may become payable under this policy.

### D. Maintenance of Underlying Insurance

During the period of this policy, you agree:

1. To keep the policies making up the Total Limits of Underlying Insurance in Item **6.B.** of the Declarations in full force and effect;

2. That the Limits of Insurance of the Underlying Insurance policies will be maintained except for any reduction or exhaustion of aggregate limits by payment of claims or suits for damages covered by Underlying Insurance;



**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY.**
**THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM
# (RELATING TO TERRORISM RISK INSURANCE ACT)

**SCHEDULE\***

| |
|---|
| Premium attributable to risk of loss from certified acts of terrorism for lines subject to TRIA: |
| $46,973 |

\*Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**
In accordance with the federal Terrorism Risk Insurance Act of 2002 ("TRIA"), we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of your premium attributable is shown in the Schedule of this endorsement or in the Declarations.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**
The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention (85% for acts of terrorism in 2007).

**C. Limitation of Liability and Termination of the Program**
The Act currently provides for no insurance industry or United States government participation in terrorism losses that exceed $100 billion in any one calendar year. The federal program established by the Act is scheduled to terminate at the end of December 31, 2007 unless extended by the federal government.

**D. Availability**
As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E. Definition of Act of Terrorism**
TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
1. to be an act of terrorism;
2. to be a violent act or an act that is dangerous to human life, property or infrastructure;
3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
4. to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
But, no act shall be certified by the Secretary as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

# Change Endorsement



**ZURICH**

Endorsement #013

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 04-01-2006 | 18-418-000 | | |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy Rd., NE, Ste 1200
Atlanta, GA  30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 1200
Atlanta, GA  30305-2988

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

In consideration of no change in premium, subject to audit, effective 04-01-2006 the following form is hereby deleted:

Extended Reporting Period          U-EXS-150-A CW 05

Signed by: _____          _____
         Authorized Representative                                      Date

# Change Endorsement


**ZURICH**

Endorsement #012

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 09-23-2008 | 18-418-000 | | |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy Rd., NE, Ste 1200
Atlanta, GA  30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 1200
Atlanta, GA  30305-2988

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

In consideration of any change in premium, subject to audit, the following changes are made.

Effective 9-23-2008, adding Brickstreet Mutual Insurance Company to the Schedule of Underlying Insurance for Employers Liability.

The following form(s) is amended as per the attached:

    Schedule of Underlying Insurance       U-EXS-150-A CW 01

Signed by: _____     _____

      Authorized Representative                Date

# Schedule of Underlying Insurance



**ZURICH**

### Endorsement #012

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 09-23-2008 | 18-418-000 | | |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy Rd. NE, Ste 1200
Atlanta, GA 30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 1200
Atlanta, GA 30305-2988

| Company, Policy No. and Term | Coverage | Applicable Limits |
|---|---|---|
| A. Company Steadfast Insurance Company<br>Policy No: HBP 3991380-01<br>Term: 04-01-2006 to 04-01-2009 | Home Builders Protective Insurance Policy | $ 1,000,000 General Aggregate (Other than Products – Completed Operations<br>$ 1,000,000 Products –Completed Operations Aggregate<br>$ 1,000,000 Personal and Advertising Injury<br>$ 1,000,000 Each Occurrence/Construction Occurrence |
| B. Company Liberty Mutual<br>Policy No: AS2651004147-03<br>Term: 04-01-2006 TO 04-01-2007<br><br>Policy No: AS2651004147-037<br>Term: 04-01-2007 TO 04-01-2008<br><br>Policy No: AS2651004147-038<br>Term: 04-01-2008 TO 04-01-2009 | Commercial Auto Liability | $1,000,000 Bodily Injury and Property Damage Combined Single Limit Each Accident |
| C. Company Liberty Mutual<br>Policy No: WA265D004147-081<br>Term: 04-01-2006 TO 04-01-2007<br><br>Policy No: WA265D004147-087<br>Term: 04-01-2007 TO 04-01-2008<br><br>Policy No: WC7651004147-088<br>Term: 04-01-2008 TO 04-01-2009 | Employers Liability | Bodily Injury by Accident<br>$1,000,000 Each Accident<br>Bodily Injury by Disease<br>$1,000,000 Policy Limit<br>Bodily Injury by Disease<br>$1,000,000 Each Employee |
| Company Brickstreet Mutual Insurance Company<br>Policy No: WC10043339-05<br>Term: 09-23-2008 TO 09-23-2009 | Employers Liability | Bodily Injury by Accident<br>$1,000,000 Each Accident<br>Bodily Injury by Disease<br>$1,000,000 Policy Limit<br>Bodily Injury by Disease<br>$1,000,000 Each Employee |

Signed by: _____

_____    _____
Authorized Representative                    Date

# Change Endorsement


**ZURICH**

Endorsement #011

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 04-01-2007 | 18-418-000 | $N/A | $1,166,343.00 |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy Rd., NE, Ste 1200
Atlanta, GA  30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 1200
Atlanta, GA  30305-2988

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of a return premium including 1%TRIA, subject to audit, effective 04-01-2007 the following changes are made.

In consideration of a return premium of $1,166,343 including 1% TRIA, the exposure for the 2007 to 2008 policy term is amended to $2,767,516,000 at a rate of $0.77 per $1,000 of revenue.

Signed by: _____       _____
      Authorized Representative                            Date

# Change Endorsement


**ZURICH**

Endorsement #010

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 04-01-2008 | 18-418-000 | | |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy Rd., NE, Ste 1200
Atlanta, GA 30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 1200
Atlanta, GA 30305-2988

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

In consideration of any change in premium, subject to audit, the following changes are made.

The following forma are amended as per the attached:

Schedule of Underlying Insurance       U-EXS-150-A CW 01

Signed by: _____      _____
              Authorized Representative                    Date

U-EXS-150-A CW (4/99)
Page 1 of 1

# Schedule of Underlying Insurance


**ZURICH**

### Endorsement #010

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 04-01-2008 | 18-418-000 | | |

**Named Insured and Mailing Address:**

**Beazer Homes USA, Inc.**
**400 Northpark Town Center**
**1000 Abernathy Rd. NE, Ste 1200**
**Atlanta, GA  30328**

**Producer:**

**Marsh, Inc. of GA**
**3475 Piedmont Rd., Ste 1200**
**Atlanta, GA  30305-2988**

| Company, Policy No. and Term | Coverage | Applicable Limits |
|---|---|---|
| A.  Company Steadfast Insurance Company<br>Policy No:  HBP 3991380-01<br>Term:  04-01-2006 to 04-01-2009 | Home Builders Protective Insurance Policy | $ 1,000,000 General Aggregate (Other than Products – Completed Operations<br>$ 1,000,000 Products –Completed Operations Aggregate<br>$ 1,000,000 Personal and Advertising Injury<br>$ 1,000,000 Each Occurrence/Construction Occurrrence |
| B.  Company Liberty Mutual<br>Policy No: AS2651004147-03<br>Term:  04-01-2006 TO 04-01-2007<br>Policy No:  AS2651004147-037<br>Term: 04-01-2007 TO 04-01-2008<br>Policy No:  AS2651004147-038<br>Term:  04-01-2008 TO 04-01-2009 | Commercial Auto Liability | $1,000,000 Bodily Injury and Property Damage Combined Single Limit Each Accident |
| C.  Company  Liberty Mutual<br>Policy No:  WA265D004147-081<br>Term:  04-01-2006 TO 04-01-2007<br>Policy No:  WA265D004147-087<br>Term: 04-01-2007 TO 04-01-2008<br>Policy No:  WC7651004147-088<br>Term:  04-01-2008 TO 04-01-2009 | Employers Liability | Bodily Injury by Accident<br>$1,000,000 Each Accident<br>Bodily Injury by Disease<br>$1,000,000 Policy Limit<br>Bodily Injury by Disease<br>$1,000,000 Each Employee |

Signed by: _____

      Authorized Representative            Date

# Change Endorsement



**ZURICH**

Endorsement #009

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 04-01-2008 | 18-418-000 | $N/A | $1,372,049.00 |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy Rd., NE, Ste 1200
Atlanta, GA 30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 1200
Atlanta, GA 30305-2988

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of a return premium including 1%TRIA, subject to audit, effective 04-01-2008 the following changes are made.

In consideration of a return premium of $1,372,049 including 1% TRIA, the exposure for the 2008 to 2009 policy term is amended to $2,503,009,904 at a rate of $0.77 per $1,000 of revenue.

Signed by: _____          _____
              Authorized Representative                              Date

# Change Endorsement



## ZURICH

Endorsement #008

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 04-01-2006 | 18-418-000 | N/A | N/A |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy Rd., NE, Ste 1200
Atlanta, GA  30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 1200
Atlanta, GA  30305-2988

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of no change in premium, effective 04-01-2006 the following forms are hereby added as per the attached:

Section III. Defense       U-EXS-150-A CW 08 (4/99)

Signed by: _____          _____
          Authorized Representative                    Date

Endorsement # 008

# Section III. Defense



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 04-01-2006 | 18-418-000 | N/A | N/A |

**Named Insured and Mailing Address:**

**Beazer Homes USA, Inc.**
**400 Northpark Town Center**
**1000 Abernathy Rd., NE, Ste 1200**
**Atlanta, GA 30328**

**Producer:**

**Marsh, Inc. of GA**
**3475 Piedmont Rd., Ste 1200**
**Atlanta, GA 30305-2988**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SECTION III. DEFENSE**

   **A.**  We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

   **B.**  We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim of defense of any suit which in our opinion, may create liability on us for payment under this policy.

   **C.**  If the Underlying Automobile, Employers Liability, or Commercial General Liability Limits of Insurance stated in Item **6.** of the Schedule of Underlying Insurance or Extended Schedule of Underlying Insurance are exhausted solely by payment of damages, we shall have the right and the duty to investigate and settle any claim or assume the defense of any suit which in our opinion may give rise to a payment under this policy. We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Insurance stated in Item **4.** of the Declarations are exhausted by payment of damages.

       If the Underlying Home Builders Protective Insurance Limits of Insurance stated in Item **6.** of the Schedule of Underlying Insurance is exhausted, we shall have the right and the duty to investigate and settle any claim or assume the defense of any suit which in our opinion may give rise to a payment under this policy. We may, however, withdraw from the defense of such a suit and tender the continued defense to you if our applicable Limit of Insurance stated in Item **4.** of the Declarations are exhausted by payment of damages.

If we exercise our rights under Paragraph **B.** above, we will do so at our own expense, and any such expense payments will not reduce the Limits of Insurance provided by this policy.

Signed by: _____          _____
        Authorized Representative                      Date

# Change Endorsement



**ZURICH**

Endorsement #007

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 04-01-2006 | 18-418-000 | $N/A | $1,076,133.00 |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy Rd., NE, Ste 1200
Atlanta, GA  30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 1200
Atlanta, GA  30305-2988

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of a return premium including 1%TRIA, subject to audit, effective 04-01-2006 the following changes are made.

In consideration of a return premium of $1,076,133 including 1% TRIA, the exposure for the 2006 to 2007 policy term is amended to $4,716,605,000 at a rate of $0.77 per $1,000 of revenue.

Signed by: _____         _____
              Authorized Representative                              Date

Endorsement # 006

# POLICY CHANGE ENDORSEMENT



## ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 04-01-2006 | 18-418-000 | -0- | -0- |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy R., NE, Ste 1200
Atlanta, GA  30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 1200
Atlanta, GA  30305-2988

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

In consideration of any change in premium, subject to audit, the following changes are made.

The following forms are amended as per the attached.

Deductible Endorsement             U-EXS-150-A CW 03

Signed by: _____          _____
             Authorized Representative                              Date

# Deductible Endorsement



## ZURICH

Endorsement #006

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2008 | 04-01-2007 | 18-418-000 | $-0- | $-0- |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Ctr
1000 Abernathy Rd., NE, Ste 1200
Atlant, GA  30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 1200
Atlanta, GA  30305-2988

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### DEDUCTIBLE ENDORSEMENT

This endorsement applies between you and us.  You will reimburse for the deductible amounts that we pay on your behalf.  This endorsement will remain in effect on renewals of this policy unless specifically not made part of such renewal or replaced by a similar deductible endorsement.

This endorsement and its individual sections which include Deductible Amounts, How this Deductible Applies, Effect of Deductible on Limits of Liability, Definitions and Conditions apply only with respect to the deductibles which are the subject of s endorsement.

### SCHEDULE

**COVERAGE:**
"Property Damage" or "Construction Defects"
for any combination of Coverage C-Home Builders
Limited Warranty or Coverage D-Construction
Damage Liability as defined in the Schedule
of Underlying Insurance, but not including  the
Extended Schedule of Underlying Insurance.

**DEDUCTIBLE AMOUNT/BASIS:**
$9,000,000   each "occurrence", or "construction occurrence"
$15,000,000  any one single "Occurrence" or "Construction Occurrence" that would apply to any (2) two consecutive annual periods of the (3) three year policy period, starting with the beginning of the policy period.  This is the maximum deductible that would be applicable to "Property Damage" or "Construction Defect" for any combination of Coverage C-Home Builders Limited Warranty or Coverage D-Construction Damage Liability under this policy or the Home Builders Protective Insurance Policy found in the Schedule of Underlying Insurance combined.
$20,000,000  any one single "Occurrence" or "Construction Occurrence" that would apply to all (3) three consecutive annual periods of the (3) three year policy period, starting with the beginning of the policy period.  This is the maximum deductible that would be applicable to "property Damage" or "Construction Defect" for any combination of Coverage C-Home Builders Limited Warranty or Coverage D-Construction Damage Liability under this policy or the Home Builders Protective Insurance Policy found in the Schedule of Underlying Insurance combined.

# Deductible Endorsement Cont'd

### ALLOCATED LOSS ADJUSTMENT EXPENSE (ALAE)

A. How this deductible applies.

You agree to reimburse for each "occurrence" or "construction occurrence", up to the Deductible Amount shown in the Schedule above, for all sums payable for "damages" and "ALAE".

B. Effect of Deductible on Limits of Liability.

Our obligation under the Home Builders Limited Warranty Liability and Construction Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

While "ALAE" erodes the Deductible, neither "ALAE" nor any payments made within the Deductible erode the Limit of Liability.

C. Definitions

"ALAE" – Allocated loss adjustment expenses is an expense directly allocable to a specific claim an shall include all supplementary payments as defined in Section I – Coverages – Supplementary Payments – Coverages A, B, C and D – of this policy. "ALAE" shall not include the fees, charges or costs of subrogation or salvage or of a third party administrator engaged to provide such a claim service or related services.

Signed by: _____   _____
         Authorized Representative                         Date

Endorsement # 005

# POLICY CHANGE ENDORSEMENT



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 04-01-2006 | 18-418-000 | -0- | -0- |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy R., NE, Ste 1200
Atlanta, GA  30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 1200
Atlanta, GA  30305-2988

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

In consideration of any change in premium, subject to audit, the following changes are made.

The following forms are deleted and are no longer a part of the policy:

    Section III – Defense Endorsement        U-EXS-150-A CW 07

The following forms are amended as per the attached:

    Schedule of Underlying Insurance        U-EXS-150-A CW 01
    Extended reporting Period           U-EXS-150-A CW 05

Signed by: _____      _____
        Authorized Representative                Date

U-EXS-150-A CW (4/99)

# Extended Reporting Period


**ZURICH**

Endorsement #005

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2008 | 04-01-2006 | 18-418-000 | | |

**Named Insured and Mailing Address:**

**Beazer Homes USA, Inc.**
**400 Northpark Town Center**
**1000 Abernathy Rd. NE, Ste 1200**
**Atlanta, GA  30328**

**Producer:**

**Marsh, Inc. of GA**
**3475 Piedmont Rd., Ste 1200**
**Atlanta, GA  30305-2988**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### This endorsement modifies Insurance provided by the following:
### FOLLOW FORM EXCESS LIABILITY POLICY

This policy will pay those sums that the insured becomes legally obligate to pay as damages in excess of the total Underlying Limits of Insurance in the Extended Schedule of Underlying Policies below, but only if the "Accident", "Occurrence", "Bodily Injury by Accident" or "Bodily Injury by Disease" that caused the legal liability under the policies below, occurred after April 1, 2001 but prior to April 1, 2004, and only if the such "Accident", "Occurrence", "Bodily Injury by Accident" or "Bodily Injury by Disease" was not know to Beazer's Risk Management Department and asserted prior to April 1, 2004.  All sums paid in excess of ╷ total Underlying Limits of Insurance in the Extended Schedule of Underlying Policies below will be included within the Other ╷ggregate – Products/Completed Operations Aggregate or Operations Aggregate, whichever applies.  Furthermore, the maximum limit for all damages, regardless of the number of  "Accident", "Occurrence",  "Bodily Injury by Accident" or "Bodily Injury by Disease", shall not exceed the Per Occurrence Limit listed in the Declarations, regardless of the number of years the policy is in effect.

## Extended Schedule of Underlying Insurance

| Company, Policy No. and Term | Coverage | Applicable Limits |
|---|---|---|
| Liberty Mutual<br>Policy No.  AS2651004147-031<br>Term: 4-01-2001 to 4-01-2002 | Automobile | $1,000,000 Bodily Injury and Property Damage Combined Liability Each Accident |
| Liberty Mutual<br>Policy No.  AS2651004147-032<br>Term: 4-01-2002 to 4-01-2003 | Automobile | $1,000,000 Bodily Injury and Property Damage Combined Liability Each Accident |
| Liberty Mutual<br>Policy No.  AS2651004147-033<br>Term: 4-01-2003 to 4-01-2004 | Automobile | $1,000,000 Bodily Injury and Property Damage Combined Liability Each Accident |
| Liberty Mutual<br>Policy No.  WA2651004147-081<br>Term: 4-01-2001 to 4-01-2002 | Employers Liability | Bodily Injury by Accident<br>    $1,000,000 Each Accident<br>Bodily Injury by Disease<br>    $1,000,000 Policy Limit<br>Bodily Injury by Disease<br>    $1,000,000 Each Employee |
| Liberty Mutual<br>Policy No.  WA2651004147-082<br>Term: 4-01-2002 to 4-01-2003 | Employers Liability | Bodily Injury by Accident<br>    $1,000,000 Each Accident<br>Bodily Injury by Disease<br>    $1,000,000 Policy Limit<br>Bodily Injury by Disease<br>    $1,000,000 Each Employee |

# Extended Reporting Period



**ZURICH**

| Company, Policy No. and Term | Coverage | Applicable Limits |
|---|---|---|
| Liberty Mutual<br>Policy No.  WA2651004147-083<br>Term:  4-01-2003 to 4-01-2004 | Employers Liability | Bodily Injury by Accident<br>  $1,000,000 Each Accident<br>Bodily Injury by Disease<br>  $1,000,000 Policy Limit<br>Bodily Injury by Disease<br>  $1,000,000 Each Employee |
| Liberty Mutual<br>Policy No. RG26510047147-021<br>Term:  4-01-2001 to 4-01-2002 | Commercial General Liability | $2,000,000 General Aggregate<br>$2,000,000 Products Completed<br>  Operations Aggregate<br>$1,000,000 Personal and Advertising<br>  Injury<br>$1,000,000 Each Occurrence |
| Liberty Mutual<br>Policy No.  RG26510047147-022<br>Term:  4-01-2002 to 4-01-2003 | Commercial General Liability | $2,000,000 General Aggregate<br>$2,000,000 Products Completed<br>  Operations Aggregate<br>$1,000,000 Personal and Advertising<br>  Injury<br>$1,000,000 Each Occurrence |
| Liberty Mutual<br>Policy No.  RG26510047147-023<br>Term:  4-01-2003 to 4-01-2004 | Commercial General Liability | $2,000,000 General Aggregate<br>$2,000,000 Products Completed<br>  Operations Aggregate<br>$1,000,000 Personal and Advertising<br>  Injury<br>$1,000,000 Each Occurrence |

ned by: _____       _____

     Authorized Representative                Date

# Schedule of Underlying Insurance



**ZURICH**

Endorsement #005

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2008 | 04-01-2006 | 18-418-000 | | |

**Named Insured and Mailing Address:**

**Beazer Homes USA, Inc.**
**400 Northpark Town Center**
**1000 Abernathy Rd. NE, Ste 1200**
**Atlanta, GA 30328**

**Producer:**

**Marsh, Inc. of GA**
**3475 Piedmont Rd., Ste 1200**
**Atlanta, GA 30305-2988**

| Company, Policy No. and Term | Coverage | Applicable Limits |
|---|---|---|
| A. Company Steadfast Insurance Company<br>Policy No: HBP 3991380-01<br>Term: 04-01-2006 to 04-01-2009 | Home Builders Protective Insurance Policy | $ 1,000,000 General Aggregate (Other than Products – Completed Operations<br>$ 1,000,000 Products –Completed Operations Aggregate<br>$ 1,000,000 Personal and Advertising Injury<br>$ 1,000,000 Each Occurrence/Construction Occurrrence |
| B. Company Liberty Mutual<br>Policy No: AS2651004147-03<br>Term: 04-01-2006 TO 04-01-2007<br>Policy No: AS2651004147-037<br>Term: 04-01-2007 TO 04-01-2008 | Commercial Auto Liability | $1,000,000 Bodily Injury and Property Damage Combined Single Limit Each Accident |
| C. Company Liberty Mutual<br>Policy No: WA265D004147-081<br>Term: 04-01-2006 TO 04-01-2007<br>Policy No: WA265D004147-087<br>Term: 04-01-2007 TO 04-01-2008 | Employers Liability | Bodily Injury by Accident<br>$1,000,000 Each Accident<br>Bodily Injury by Disease<br>$1,000,000 Policy Limit<br>Bodily Injury by Disease<br>$1,000,000 Each Employee |

Signed by: _____     _____
      Authorized Representative                Date

# Change Endorsement


**ZURICH**

Endorsement #004

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 04-01-2007 | 18-418-000 | $6,637,280.00 | |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy Rd., NE, Ste 1200
Atlanta, GA  30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 100
Atlanta, GA  30305-2988

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of an additional premium including 1% TRIA, effective 04-01-2007 the following changes are made.

In consideration of an additional premium of $3,318,640 including 1% TRIA, the exposure for the 2007 to 2008 policy term is added in the amount of $4,267,249,707 at a rate of $0.77 per $1,000 of revenue.

In consideration of an additional premium of $3,318,640 including 1% TRIA **due 04-01-2008**, the policy expiration date is amended to 04-01-2009 with additional exposure for the 2008-2009 policy term of $4,267,249,707 at a rate of $0.77 per $1,000 of revenue.

The following form is hereby added to the policy:

Cancellation – Amendment of Notice  U-EXS-112-A CW

Signed by: _____        _____
　　　　　　 Authorized Representative                              Date

Endorsement # 004

# Cancellation - Amendment Of Notice



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2009 | 04-01-2007 | 18-418-000 | $ | $ |

Named Insured and Mailing Address:

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy Rd., NE, Ste 1200
Atlanta, GA 30328

Producer:

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 100
Atlanta, GA 30305-2988

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that the number of days of advance written notice of cancellation, for reasons other than non-payment of premium, stated in paragraph 2. of CONDITION C. Cancellation or any applicable amendatory endorsement governing the cancellation of this policy, is amended to 90 days. If we cancel for reason of nonpayment of premium, the number of days notice stated in paragraph 2. of CONDITION C. Cancellation or any applicable amendatory endorsement governing the cancellation of this policy remains unchanged.

Signed by: _____     _____
           Authorized Representative                Date

# Change Endorsement



## ZURICH

Endorsement #003

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2008 | 04-01-2006 | 18-418-000 | N/A | N/A |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy Rd., NE, Ste 1200
Atlanta, GA  30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 100
Atlanta, GA  30305-2988

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of no change in premium, effective 04-01-2006 the following form is added.

Following Form Excess Liability Policy  U-EXS-100-A CW

Signed by: _____          _____
       Authorized Representative                                    Date

# ollowing Form Excess Liability Policy



**ZURICH**

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such in the Controlling Underlying Policy, but only to the extent and within the scope for which such "insureds" qualify for coverage in the Controlling Underlying Policy.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations and in accordance with the provisions of this policy we agree with you to provide coverage as follows:

**Insuring Agreements**

## SECTION I.  COVERAGE

**A.**   We will pay on behalf of the insured the sums in excess of the total Underlying Limits of Insurance shown in Item **6.B.** of the Declarations that the insured becomes legally obligated to pay as damages.

**B.**   This insurance applies only to damages covered by the Controlling Underlying Policy as shown in Item **6.A.** of the Declarations. Except as otherwise provided by this policy, the coverage follows the definitions, terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.

**C.**   The amount we will pay for damages is limited as described in **SECTION II. LIMITS OF INSURANCE.**

## SECTION II.  LIMITS OF INSURANCE

The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay regardless of the number of:

**1.**   Insured's;

**2.**   Claims made or suits brought; or

**3.**   Persons or organizations making claims or bringing suits.

**B.**   The Limits of Insurance of this policy will apply as follows:

**1.**   This policy applies only in excess of the Underlying Limits of Insurance shown in Item **6.B.** of the Declarations.

**2.**   If our Limits of Insurance stated in Item **4.** of the Declarations are less than the total Limits of Insurance stated in Item **4.**, the limits of our liability shall be that proportion of all damages which our Limits of Insurance bear to the total Limits of Insurance in Item **4.** and which is in excess of the total underlying insurance limits as stated in Item **6.B.** of the Declarations.

**3.**   Subject to Paragraph **B. 2.** above, the Occurrence Limit stated in Item **4.A.** of the Declarations is the most we will pay for all damages arising out of any one occurrence to which this policy applies.

**4.**   Subject to Paragraphs **B.2.** and **B.3.** above, the limit stated in Item **4.C.** of the Declarations for the Products/Completed Operations Aggregate is the most we will pay for all damages during our policy period under the products/ completed operations hazard.

**5.**   Subject to Paragraphs **B.2.** and **B.3.** above, the Other Aggregate Limit stated in Item **4.B.** of the Declarations is the most we will pay for all damages, except for damages covered under the products/completed operations hazard, that are subject to an aggregate limit provided by the Controlling Underlying Policy. The Other Aggregate Limit applies separately and in the same manner as the aggregate limits provided by the Controlling Underlying Policy.

**6.**   Subject to Paragraphs **B.2., B.3., B.4.** and **B.5.** above, if the underlying Limits of Insurance stated in Item **6.** of the Declarations are reduced or exhausted solely by payment of damages to which this policy applies, such insurance provided by this policy will apply in excess of the reduced Underlying Limits or, if all Underlying Limits are exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions and exclusions of the Controlling Underlying Policy, except for the terms, conditions, definitions and exclusions of this policy.

**7.**   The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is

extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the preceding period for purposes of determining the Limits of Insurance.

## SECTION III. DEFENSE

**A.**  We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

**B.**  We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for payment under this policy.

**C.**  If all Underlying Limits of Insurance stated in Item **6.** of the Declarations are exhausted solely by payment of damages, we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which in our opinion may give rise to a payment under this policy. We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Insurance stated in Item **4.** of the Declarations are exhausted by payment of damages.

If we exercise our rights under Paragraphs **B.** or **C.** above, we will do so at our own expense, and any such expense payments will not reduce the Limits of Insurance provided by this policy.

## SECTION IV. EXCLUSIONS

This policy does not apply to any liability, damage, loss, cost or expense:

## ASBESTOS

**A.**  Arising out of;

  **1.**  The mining, processing, manufacturing, use, testing, ownership, sale or removal of asbestos, asbestos fibers or materials containing asbestos;

  **2.**  Exposure to asbestos, asbestos fibers, or material containing asbestos; or

  **3.**  Any error or omission in supervision, instructions, recommendations, notices, warnings or advice given, or which should have been given, in connection with asbestos fibers or material containing asbestos.

## POLLUTION

  **1.**  Arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

  This exclusion does not apply to bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

  **a.**  At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

  **b.**  At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

  **2.**  Arising out of any:

  **a.**  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

  **b.**  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

As used in this exclusion:

  **1.**  A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

  **2.**  "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

## NUCLEAR

  **1.**  With respect to which any insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

2. Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    a. A person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    b. Any insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

3. Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material", if:

    a. The "nuclear material":

        (i) Is at any "nuclear facility" owned by, or operated by or on behalf of, any insured; or

        (ii) Has been discharged or dispersed therefrom;

    b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any insured; or

    c. The injury or "nuclear property damage" arises out of the furnishing by any insured of services, materials, parts or equipment in connection with the planning, construction, maintenance operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph **c.** applies only to "nuclear property damage" to such "nuclear facility'" and any property thereat.

As used in this exclusion:

1. "Hazardous properties" include radioactive, toxic or explosive properties.

2. "Nuclear Facility" means:

    a. Any "nuclear reactor";

    b. Any equipment or device designed or used for:

        (i) Separating the isotopes of uranium or plutonium,

        (ii) Processing or utilizing "spent fuel", or

        (iii) Handling, processing or packaging "waste";

    c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste", and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

3. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

4. "Nuclear property damage" includes all forms of radioactive contamination of   property;

5. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

6. "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

7. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

8. "Waste" means any waste material;

    a. Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

    b. Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

**SECTION V.  CONDITIONS**

**A. Appeals**

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the Underlying Insurance, we may elect to appeal at our expense. If we do so elect, we will be liable for the costs and additional interest accruing during this appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in **SECTION II.** of this policy.

**B. Bankruptcy or Insolvency**

The bankruptcy, insolvency or inability to pay of any insured will not relieve us from our obligation to pay damages covered by this policy.

In the event of bankruptcy, insolvency or refusal or inability to pay, of any underlying insurer, the insurance afforded by this policy will not replace such underlying insurance, but will apply as if all the limits of any underlying insurance is fully available and collectible.

**C. Cancellation**

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we will mail or deliver to you not less than ten (10) days advance written notice when the cancellation is to take effect. If we cancel for any other reason, we will mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing notice to you at your mailing address shown in Item **2.** of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and our short rate cancellation table and procedure.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The Named Insured in Item **1.** of the Declarations will act on behalf of all other insureds with respect to the giving and receiving of notice of cancellation and the receipt of any premium refund that may become payable under this policy.

**D. Maintenance of Underlying Insurance**

During the period of this policy, you agree:

1. To keep the policies making up the Total Limits of Underlying Insurance in Item **6.B.** of the Declarations in full force and effect;

2. That the Limits of Insurance of the Underlying Insurance policies will be maintained except for any reduction or exhaustion of aggregate limits by payment of claims or suits for damages covered by Underlying Insurance;

3. The Underlying Insurance policies may not be canceled or not renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any Underlying Insurance policy;

4. Renewals or replacements of the Controlling Underlying Policy will not be materially changed without our agreement.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

**E. Notice of Occurrence**

1. You must see to it that we are notified as soon as practicable of an occurrence which may result in damages covered by this policy. To the extent possible, notice will include:

   a. How, when and where the occurrence took place;

   b. The names and addresses of any injured persons and witnesses;

   c. The nature and location of any injury or damage arising out of the occurrence.

2. If a claim or suit against any Insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3. You and any other involved insured must:

a.  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

b.  Authorize us to obtain records and other information;

c.  Cooperate with us in the investigation, settlement or defense of the claim or suit; and

d.  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

4.  The insureds will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**F.  Other Insurance**

If other insurance applies to damages that are also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is written to be excess of this policy.

Other insurance includes any type of self-insurance or other mechanism by which an insured arranges for funding of legal liabilities.

**G.  Terms Conformed to Statute**

The terms of this policy which are in conflict with the statutes of the state where this policy is issued are amended to conform to such statutes. If we are prevented by law or statute from paying on behalf of the insured, then we will, where permitted by law or statute, indemnify the insured.

**H.  When Damages are Payable**

Coverage under this policy will not apply unless and until the insured or the insured's underlying insurance has paid or is obligated to pay the full amount of the Underlying Limits of Insurance stated in Item **6.B.** of the Declarations.

When the amount of damages is determined, we will promptly pay on behalf of the insured the amount of damages covered under the terms of this policy.



# Change Endorsement
Amended



ENDT#002

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2008 | 04-01-2006 | 18-418-000 | | |

### Endorsement #002

Named Insured and Mailing Address:
**Beazer Homes USA, Inc.**
**(Per Named Insured Schedule)**
**400 Northpark Town Ctr**
**1000 Abernathy Rd., NE, Ste 1200**
**Atlanta, GA  30328**

Producer:
**Marsh USA, Inc.**
**2475 Piedmont Rd., Ste 1200**
**Atlanta, GA  30305-2988**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of no change in premium, effective 04-01-2006, the following endorsement has been amended per the attached:

| | |
|---|---|
| SCHEDULE OF UNDERLYING INSURANCE | U-EXS-150-A CW 01 |
| DEDUCTIBLE ENDORSEMENT | U-EXS-150-A CW 03 |
| LATE ENDORSEMENT | U-EXS-150-A CW 04 |
| CALIFORNIA CHANGES CANCELLATION | U-EXX-178-A  CA |

Signed by: _____        _____
              Authorized Representative                                    Date

# Change Endorsement

Amended



ENDT #1

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2008 | 04-01-2006 | 18-418-000 | | |

**Named Insured and Mailing Address:**

**Beazer Homes USA, Inc.**
**400 Northpark Town Ctr**
**1000 Abernathy Rd., NE, Ste 1200**
**Atlanta, GA 30328**

**Producer:**

**Marsh USA, Inc.**
**2475 Piedmont Rd., Ste 1200**
**Atlanta, GA 30305-2988**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

In consideration of no change in premium, effective 04-01-2006, the following endorsements have been amended per the attached:

| | |
|---|---|
| SCHEDULE OF UNDERLYING INSURANCE | U EX 150 A CW 01 |
| DEDUCTIBLE ENDORSEMENT | U EX 150 A CW 03 |
| RATE ENDORSEMENT | U EX 150 A CW 04 |
| CALIFORNIA CHANGES CANCELLATION/NONRENEWAL | U EX 178 A CA |

Signed by: _____        _____
　　　　　　Authorized Representative　　　　　　　　　Date

U-EXS-150-A CW (4/99)
Page 1 of 1

# Schedule of Underlying Insurance
Amended



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2008 | 04-01-2006 | 18-418-000 | | |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Center
1000 Abernathy Rd. NE, Ste 1200
Atlanta, GA 30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 1200
Atlanta, GA 30305-2988

| Company, Policy No. and Term | Coverage | Applicable Limits |
|---|---|---|
| A. Company Liberty Mutual<br>Policy No: AS2651004147-03<br>Term: 04-01-2006 TO 04-01-2007 | AUTOMOBILE | $1,000,000   Combined Single Limit |
| B. Company Liberty Mutual<br>Policy No: WA2651004147-081<br>Term: 04-01-2006 TO 04-01-2007 | EMPLOYERS LIABILITY | Bodily Injury by Accident<br>$1,000,000 Each Accident<br>Bodily Injury by Disease<br>$1,000,000 Policy Limit<br>Bodily Injury by Disease<br>$1,000,000 Each Employee |
| C. Company Liberty Mutual<br>Policy No: RG26510047147-021<br>Term: 04-01-2001 TO 04-01-2002<br>Company Liberty Mutual<br>Policy No: RG26510047147-022<br>Term: 04-01-2002 TO 04-01-2003<br>Company Liberty Mutual<br>Policy No: RG2651004147-023<br>Term: 04-01-2003 TO 04-01-2004 | GENERAL LIABILITY | $1,000,000 Each Occurrence<br>$2,000,000 General Aggregate<br>$2,000,000 Products Aggregate<br>$100,000 Fire Legal Liability<br>$10,000 Medical Payments |
| D. Company Steadfast Insurance Company<br>Policy No: HBP 3991380-01<br>Term: 04-01-2006 TO 04-01-2008 | HOME BUILDERS<br>PROTECTIVE LIABILITY | $250,000 Each Occurrence<br>Cov A & B<br>$250,000 Each Occurrence<br>Cov C, D & E<br>$32,331,823 Annual Aggregate<br>Retention SIR/Deductible Adjustable<br>per $1,000 Revenue at a rate of 5.30 |

Signed by _____

Authorized Representative                          Date

U-EXS-150-A CW 01 (4/99)
Page 1 of 1

# Deductible Endorsement
Amended



ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2008 | 04-01-2006 | 18-418-000 | | |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Ctr
1000 Abernathy Rd., NE, Ste 1200
Atlanta, GA  30328

**Producer:**

Marsh, Inc. of GA
3475 Piedmont Rd., Ste 1200
Atlanta, GA  30305-2988

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## DEDUCTIBLE ENDORSEMENT

This endorsement applies between you and us.  You will reimburse for the deductible amounts that we pay on your behalf.  This endorsement will remain in effect on renewals of this policy unless specifically not made part of such renewal or replaced by a similar deductible endorsement.

This endorsement and its individual sections which include Deductible Amounts, How this Deductible Applies, Effect of Deductible on Limits of Liability, Definitions and Conditions apply only with respect to the deductibles which are the subject of this endorsement.

### SCHEDULE

COVERAGE:
"Property Damage" or "Construction Defects"

DEDUCTIBLE AMOUNT/BASIS:
$9,000,000 each "occurrence", or "construction occurrence"

### ALLOCATED LOSS ADJUSTMENT EXPENSE (ALAE)

A. How this deductible applies

You agree to reimburse for each "occurrence" or "construction occurrence", up to the Deductible Amount shown in the Schedule above, for all sums payable for "damages" and "ALAE".

B. Effect of Deductible on Limits of Liability

Our obligation under the Home Builders Limited Warranty Liability and Construction Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

While "ALAE" erodes the Deductible, neither "ALAE" nor any payments made within the Deductible erode the Limit of Liability.

C. Definitions



# Rate Endorsement
amended


ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO 3991382-01 | 04-01-2006 | 04-01-2008 | 04-01-2006 | 18-418-000 | | |

**Named Insured and Mailing Address:**

Beazer Homes USA, Inc.
400 Northpark Town Ctr
1000 Abernathy Rd., NE, Ste 1200
Atlanta, GA  30328

**Producer:**

Marsh USA, Inc.
2475 Piedmont Rd., Ste 1200
Atlanta, GA  30305-2988

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| EXPOSURE | RATE PER 1,000 REVENUE | ESTIMATED PREMIUM |
|---|---|---|
| $6,100,344,047 | $ .77 | $4,697,264. |

**TRIA 1% of Estimated Premium**

Signed by: _____         _____
                    Authorized Representative                              Date