# EXHIBIT M



**ZURICH**

# Following Form Excess Liability Policy

<u>Zurich U.S.</u>
Insurance is provided by the company designated on the declarations page of this policy.

The addresses of the Zurich U.S. companies are shown below:

ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS
1400 American Lane
Schaumburg, Illinois 60196-1056

AMERICAN ZURICH INSURANCE COMPANY
1400 American Lane
Schaumburg, Illinois 60196-1056

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY
One Liberty Plaza, 165 Broadway
New York, New York 10006

Administrative Offices of all Zurich U.S. companies are
located at 1400 American Lane, Schaumburg, Illinois 60196-1056

# In Witness Clause



## ZURICH

In return for the payment of premium, and subject to all the terms of the policy, we agree with you to provide insurance as stated in this policy.

**In Witness Whereof,** this Company has executed and attested these presents, and where required by law, has caused this policy to be countersigned by its duly authorized Representative.

**President**
**American Guarantee and Liability Insurance Company**
**American Zurich Insurance Company**
**Zurich American Insurance Company of Illinois**
    **Administrative Offices**
    **Zurich Towers**
    **1400 American Lane**
    **Schaumburg, Illinois   60196-1056**

**Corporate Secretary**

---

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich U.S.
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois   60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])

---

# Following Form Excess Liability Policy

Declarations



**ZURICH**

### ZURICH AMERICAN INSURANCE COMPANY

**Policy Number:  CEO 3878228 00**  **Renewal of Number:  NEW**

1. **Named Insured:**  M/I HOMES, INC  **Producer:**  LOCKTON COMPANIES
2. **Mailing Address:**  3 EASTON OVAL, STE 500  525 W MONROE, STE 600
   COLUMBUS, OH 43219  CHICAGO, IL 60661

3. **Policy Period:**  FROM:  **10/01/2005**  TO:  **10/01/2006**
   at 12:01 A.M. Standard Time at the address of the Named Insured.

4. **Limits Of Insurance:**

| | | | |
|---|---|---|---|
| | A. | $15,000,000 | Occurrence |
| | B. | $15,000,000 | Other Aggregate Products/Completed |
| | C. | $15,000,000 | Operations Aggregate |

5. **Policy Premium:**

| | |
|---|---|
| **Advance Premium** | $1,100,000 |
| **Policy Minimum Earned Premium** | $1,100,000 |

6. **Underlying Insurance:**

   **A.  Controlling Underlying Policy:**

   | | |
   |---|---|
   | Insurance Company: | SEE U-EXS-150-ACW (4/99) |
   | Policy Number: | SEE U-EXS-150-ACW (4/99) |
   | Policy Period: | From:  To: |

   Limits Of Insurance:

   | | |
   |---|---|
   | $SEE U-EXS-150-ACW (4/99) | Occurrence |
   | $SEE U-EXS-150-ACW (4/99) | Other Aggregate Products/Completed |
   | $SEE U-EXS-150-ACW (4/99) | Operations Aggregate |

   **B.  Total Limits Of All Underlying Insurance, Including The Controlling Underlying Policy Which This Policy Applies Excess Of:**

   | | |
   |---|---|
   | $SEE U-EXS-150-ACW (4/99) | Occurrence |
   | $SEE U-EXS-150-ACW (4/99) | Other Aggregate Products/Completed |
   | $SEE U-EXS-150-ACW (4/99) | Operations Aggregate |

7. **Endorsements Attached:**  See Attached Schedule Of Forms And Endorsements

Signed by: _[signature]_  5-4-2010
Authorized Representative  Date

THIS IS A CERTIFIED COPY, THIS DUPLICATE
COPY SHALL NOT BE CONSTRUED AS
GRANTING ADDITIONAL INSURANCE BUT
MERELY INDICATES THE COVERAGE AS
ORIGINALLY WRITTEN. _[signature]_

U-EXS-D-100-A CW (4/99)
Page 1 of 1

# Following Form Excess Liability Policy



**ZURICH**

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such in the Controlling Underlying Policy, but only to the extent and within the scope for which such "insureds" qualify for coverage in the Controlling Underlying Policy.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations and in accordance with the provisions of this policy we agree with you to provide coverage as follows:

**Insuring Agreements**

## SECTION I.  COVERAGE

**A.**  We will pay on behalf of the insured the sums in excess of the total Underlying Limits of Insurance shown in Item **6.B.** of the Declarations that the insured becomes legally obligated to pay as damages.

**B.**  This insurance applies only to damages covered by the Controlling Underlying Policy as shown in Item **6.A.** of the Declarations. Except as otherwise provided by this policy, the coverage follows the definitions, terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.

**C.**  The amount we will pay for damages is limited as described in **SECTION II. LIMITS OF INSURANCE.**

## SECTION II.  LIMITS OF INSURANCE

The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay regardless of the number of:

1.  Insured's;

2.  Claims made or suits brought; or

3.  Persons or organizations making claims or bringing suits.

**B.**  The Limits of Insurance of this policy will apply as follows:

1.  This policy applies only in excess of the Underlying Limits of Insurance shown in Item **6.B.** of the Declarations.

2.  If our Limits of Insurance stated in Item **4.** of the Declarations are less than the total Limits of Insurance stated in Item **4.**, the limits of our liability shall be that proportion of all damages which our Limits of Insurance bear to the total Limits of Insurance in Item **4.** and which is in excess of the total underlying insurance limits as stated in Item **6.B.** of the Declarations.

3.  Subject to Paragraph **B. 2.** above, the Occurrence Limit stated in Item **4.A.** of the Declarations is the most we will pay for all damages arising out of any one occurrence to which this policy applies.

4.  Subject to Paragraphs **B.2.** and **B.3.** above, the limit stated in Item **4.C.** of the Declarations for the Products/Completed Operations Aggregate is the most we will pay for all damages during our policy period under the products/ completed operations hazard.

5.  Subject to Paragraphs **B.2.** and **B.3.** above, the Other Aggregate Limit stated in Item **4.B.** of the Declarations is the most we will pay for all damages, except for damages covered under the products/completed operations hazard, that are subject to an aggregate limit provided by the Controlling Underlying Policy. The Other Aggregate Limit applies separately and in the same manner as the aggregate limits provided by the Controlling Underlying Policy.

6.  Subject to Paragraphs **B.2.**, **B.3.**, **B.4.** and **B.5.** above, if the underlying Limits of Insurance stated in Item **6.** of the Declarations are reduced or exhausted solely by payment of damages to which this policy applies, such insurance provided by this policy will apply in excess of the reduced Underlying Limits or, if all Underlying Limits are exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions and exclusions of the Controlling Underlying Policy, except for the terms, conditions, definitions and exclusions of this policy.

7. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the preceding period for purposes of determining the Limits of Insurance.

## SECTION III. DEFENSE

**A.** We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

**B.** We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for payment under this policy.

**C.** If all Underlying Limits of Insurance stated in Item **6.** of the Declarations are exhausted solely by payment of damages, we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which in our opinion may give rise to a payment under this policy. We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Insurance stated in Item **4.** of the Declarations are exhausted by payment of damages.

If we exercise our rights under Paragraphs **B.** or **C.** above, we will do so at our own expense, and any such expense payments will not reduce the Limits of Insurance provided by this policy.

## SECTION IV. EXCLUSIONS

This policy does not apply to any liability, damage, loss, cost or expense:

### ASBESTOS

**A.** Arising out of;

1. The mining, processing, manufacturing, use, testing, ownership, sale or removal of asbestos, asbestos fibers or materials containing asbestos;

2. Exposure to asbestos, asbestos fibers, or material containing asbestos; or

3. Any error or omission in supervision, instructions, recommendations, notices, warnings or advice given, or which should have been given, in connection with asbestos fibers or material containing asbestos.

### POLLUTION

**B. 1.** Arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

    **a.** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

    **b.** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**2.** Arising out of any:

    **a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

As used in this exclusion:

1. A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

2. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

**NUCLEAR**

C. 1. With respect to which any insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

2. Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    a. A person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    b. Any insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

3. Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material", if:

    a. The "nuclear material":

        (i) Is at any "nuclear facility" owned by, or operated by or on behalf of, any insured; or

        (ii) Has been discharged or dispersed therefrom;

    b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any insured; or

    c. The injury or "nuclear property damage" arises out of the furnishing by any insured of services, materials, parts or equipment in connection with the planning, construction, maintenance operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph c. applies only to "nuclear property damage" to such "nuclear facility'" and any property thereat.

As used in this exclusion:

1. "Hazardous properties" include radioactive, toxic or explosive properties.

2. "Nuclear Facility" means:

    a. Any "nuclear reactor";

    b. Any equipment or device designed or used for:

        (i) Separating the isotopes of uranium or plutonium,

        (ii) Processing or utilizing "spent fuel", or

        (iii) Handling, processing or packaging "waste";

    c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste", and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

3. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

4. "Nuclear property damage" includes all forms of radioactive contamination of   property;

5. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

6. "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

7. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

8. "Waste" means any waste material;

   a. Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

   b. Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

## SECTION V. CONDITIONS

### A. Appeals

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the Underlying Insurance, we may elect to appeal at our expense. If we do so elect, we will be liable for the costs and additional interest accruing during this appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in **SECTION II.** of this policy.

### B. Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any insured will not relieve us from our obligation to pay damages covered by this policy.

In the event of bankruptcy, insolvency or refusal or inability to pay, of any underlying insurer, the insurance afforded by this policy will not replace such underlying insurance, but will apply as if all the limits of any underlying insurance is fully available and collectible.

### C. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we will mail or deliver to you not less than ten (10) days advance written notice when the cancellation is to take effect. If we cancel for any other reason, we will mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing notice to you at your mailing address shown in Item **2.** of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and our short rate cancellation table and procedure.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The Named Insured in Item **1.** of the Declarations will act on behalf of all other insureds with respect to the giving and receiving of notice of cancellation and the receipt of any premium refund that may become payable under this policy.

### D. Maintenance of Underlying Insurance

During the period of this policy, you agree:

1. To keep the policies making up the Total Limits of Underlying Insurance in Item **6.B.** of the Declarations in full force and effect;

2. That the Limits of Insurance of the Underlying Insurance policies will be maintained except for any reduction or exhaustion of aggregate limits by payment of claims or suits for damages covered by Underlying Insurance;

3. The Underlying Insurance policies may not be canceled or not renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any Underlying Insurance policy;

4. Renewals or replacements of the Controlling Underlying Policy will not be materially changed without our agreement.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

**Notice of Occurrence**

1. You must see to it that we are notified as soon as practicable of an occurrence which may result in damages covered by this policy. To the extent possible, notice will include:

   a. How, when and where the occurrence took place;

   b. The names and addresses of any injured persons and witnesses;

   c. The nature and location of any injury or damage arising out of the occurrence.

2. If a claim or suit against any Insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation, settlement or defense of the claim or suit; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

4. The insureds will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**F. Other Insurance**

If other insurance applies to damages that are also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is written to be excess of this policy.

Other insurance includes any type of self-insurance or other mechanism by which an insured arranges for funding of legal liabilities.

**G. Terms Conformed to Statute**

The terms of this policy which are in conflict with the statutes of the state where this policy is issued are amended to conform to such statutes. If we are prevented by law or statute from paying on behalf of the insured, then we will, where permitted by law or statute, indemnify the insured.

**H. When Damages are Payable**

Coverage under this policy will not apply unless and until the insured or the insured's underlying insurance has paid or is obligated to pay the full amount of the Underlying Limits of Insurance stated in Item **6.B.** of the Declarations.

When the amount of damages is determined, we will promptly pay on behalf of the insured the amount of damages covered under the terms of this policy.

# Schedule of Forms and Endorsements



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | | |
|---|---|---|---|---|---|---|
| CEO3878228-00 | 10/01/2005 | 10/01/2006 | | 18652-000 | | |

**Named Insured and Mailing Address:**

M/I HOMES, INC.
3 EASTON OVAL, STE 500
COLUMBUS, OH 43219

**Producer:**

LOCKTON COMPANIES
525 W. MONROE, STE 600
CHICAGO, IL 60661

## Schedule of Forms and Endorsements

| | |
|---|---|
| FOLLOW FORM EXCESS LIABILITY POLICY JACKET | U-EXS-218-A CW |
| IN WITNESS CLAUSE | U-EXS-216-A CW |
| FOLLOWING FORM EXCESS LIABILITY POLICY DECLARATIONS | U-EXS-D-100-A CW |
| FOLLOWING FORM EXCESS LIABILITY POLICY | U-EXS-100-A CW |
| SCHEDULE OF UNDERLYING INSURANCE | U-EXS-150-A CW 01 |
| NAMED INSURED SCHEDULE | U-EXS-150-A CW 02 |
| RATE ENDORSEMENT | U-EXS-150-A CW 03 |
| SCHEDULE OF FORMS AND ENDORSEMENTS | U-EXS-215-A CW |
| DISTRICT OF COLUMBIA CHANGES CANCELLATION/NONRENEWAL | U-EXS-179-A DC |
| MARYLAND CHANGES NONRENEWAL | U-EXS-190-A MD |
| NORTH CAROLINA CHANGES | U-EXS-195-A NC |
| OHIO CHANGES | U-EXS-196-A OH |
| VIRGINIA CHANGES | U-EXS-228-A VA |
| DISCLOSURE OF PREMIUM (RELATING TO DISPOSITION OF TRIA) | U-GU-692-A CW |

Signed by: _____     _____

          Authorized Representative                Date

U-EXS-215-A CW (4/99)

# Schedule of Underlying Insurance

**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. |
|---|---|---|---|---|
| CEO3878228 00 | 10/01/2005 | 10/01/2006 | | 18652-000 |

**Named Insured and Mailing Address:**
M/I HOMES, INC
3 EASTON OVAL, STE 500
COLUMBUS, OH 43219

**Producer:**
LOCKTON COMPANIES
525 W MONROE, STE 600
CHICAGO, IL 60661

| Company, Policy No. and Term | | Coverage | Applicable Limits | |
|---|---|---|---|---|
| A. | Company    OLD REPUBLIC<br>Policy No:  MWZY57035<br><br>Term:      10-01-2005<br>           10-01-2006 | Commercial General Liability<br><br><br><br><br><br><br><br>Including Employee Benefits | $1,000,000<br>$5,000,000<br><br><br><br>$1,000,000<br>$1,000,000 | Each Occurrence<br>Products – Completed<br>  Operations Aggregate<br><br><br>General Aggregate Limit<br>Personal Injury/<br>  Advertising Injury<br><br>Each Claim<br>Aggregate |
| B. | Company    CNA<br>Policy No:  BUA2079596770<br><br>Term:      10-01-2005<br>           10-01-2006 | Commercial Auto Liability<br><br><br>$1,000,000 | | Bodily Injury &<br>  Property Damage<br><br>Combined Single Limit |
| C. | Company    CNA<br>Policy No:  WC2079596753<br><br>Term:      10-01-2005<br>           10-01-2006 | Employers Liability<br><br>$500,000<br><br>Bodily Injury By Disease<br>$500,000. | Bodily Injury By Accident<br><br>Each Accident<br><br><br>Each Employee |

Signed by: _____
   Authorized Representative

Date _____

Endorsement #

# Named Insured Endorsement



## ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO378228 00 | 10/01/2005 | 10/01/2006 | | 18652-000 | | |

**Named Insured and Mailing Address:**

M/I HOMES, INC.

3 EASTON OVAL, STE 500

COLUMBUS, OH 43219

**Producer:**

LOCKTON COMPANIES

525 W MONROE, STE 600

CHICAGO, IL 60661

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

M/I SCHOTTENSTEIN HOMES, INC.

M/I FINANCIAL CORP.

M/I SCHOTTENSTEIN HOMES

M/I HOMES, INC.

M/I HOMES CONSTRUCTION, INC.

301RS, LLC – AN OHIO LIMITED LIABILITY COMPANY

M/I PROPERTIES LLC – AN OHIO LMITED LIABILITY COMPANY

NORTHEAST OFFICE VENTURE, LLC – A DELAWARE LIMITED LIABILITY COMPANY

M/I HOMES SERVICE CORP.

MHO, LLC – A FLORIDA LIMITED LIABILITY COMPANY

M/I HOMES OF INDIANA, L.P

M/I HOMES FIRST INDIANA, LLC

M/I HOMES SECOND INDIANA, LLC – AN INDIANA LIMITED LIABILITY COMPANY

M/I HOMES OF TAMPA, LLC – A FLORIDA LIMITED LIABILITY COMPANY

M/I HOMES OF ORLANDO, LLC – A FLORIDA LIMITED LIABILITY COMPANY

M/I HOMES OF WEST PALM BEACH, LLC - A FLORIDA LIMITED LIABILITY COMPANY

M/I HOMES OF FLORIDA - A FLORIDA LIMITED LIABILITY COMPANY

MHO HOLDINGS LLC - A FLORIDA LIMITED LIABILITY COMPANY

Signed by: _____     _____
       Authorized Representative                 Date

Endorsement #

# ｌamed Insured Endorsement


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO378228 00 | 10/01/2005 | 10/01/2006 | | 18652-000 | | |

**Named Insured and Mailing Address:**

M/I HOMES, INC.

3 EASTON OVAL, STE 500

COLUMBUS, OH 43219

**Producer:**

LOCKTON COMPANIES

525 W MONROE, STE 600

CHICAGO, IL 60661

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

M/I HOMES OF DC, LLC A DELAWARE LIMITED LIABILITY COMPANY

M/I HOMES OF CHARLOTTE, LLC – A DELAWARE LIMITED LIABILITY COMPANY

M/I HOMES OF RALEIGH, LLC – A DELAWARE LIMITED LIABILITY COMPANY

M/I HOMES OF CINCINNATI, LLC – AN OHIO LIMITED LIABILITY COMPANY

ｙI HOMES OF CENTRAL OHIO, LLC - AN OHIO LIMITED LIABILITY COMPANY

Signed by:_____     _____
                Authorized Representative                          Date

Endorsement #

# Named Insured Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO378228 00 | 10/01/2005 | 10/01/2006 | | 18652-000 | | |

**Named Insured and Mailing Address:**

M/I HOMES, INC.

3 EASTON OVAL, STE 500

COLUMBUS, OH  43219

**Producer:**

LOCKTON COMPANIES

525 W MONROE, STE 600

CHICAGO, IL  60661

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| EXPOSURE | RATE PER $1,000 REVENUE | ESTIMATED PREMIUM |
|---|---|---|
| $1,400,000,000 | FLAT CHARGE | $1,089,109 |
| | | $   10,891 (1% TRIA) |
| | | -------------- |
| | | $1,100,000. |

Signed by: _____          _____

       Authorized Representative                    Date

Endorsement #

# District Of Columbia Changes
# Cancellation/Nonrenewal



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO3878228 00 | 10/01/2005 | 10/01/2006 | | 18652-000 | | |

**Named Insured and Mailing Address:**

**M/I HOMES, INC**

**3 EASTON OVAL, STE 500**

**COLUMBUS, OH 43219**

**Producer:**

**LOCKTON COMPANIES**

**525 W MONROE, STE 600**

**CHICAGO, IL 60661**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

A.   **CONDITION C. Cancellation,** paragraph **2.,** is deleted in its entirety and replaced with the following:

2.   We may cancel this policy by mailing or delivering to you written notice of cancellation at least 30 days before the effective date of cancellation. At least 5 days before sending notice to you, we will notify the agent, or broker, if any, who wrote the policy.

If this policy has been in effect for 30 days or less and is not a renewal of a policy we issued, we may cancel this policy for any reason.

If this policy has been in effect more than 30 days, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

a.   You have refused or failed to pay a premium due under the terms of the policy;

b.   Any insured has made a material and willful misstatement or omission of fact to us or our employees, agents or brokers in connection with any application to or claim against us;

c.   Any insured has transferred his or her property or other interest to a person other than you or your beneficiary, unless the transfer is permitted under the terms of the policy; or

d.   The property, interest or use of the property or interest has materially changed with respect to its insurability.

B.   The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

We may elect not to renew this policy by mailing or delivering written notice of nonrenewal to your last mailing address known to us. We will mail or deliver the notice at least 30 days before the expiration of the policy. At least 5 days before sending notice to you, we will notify the agent or broker, if any, who wrote the policy. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of notice will be the same as mailing.

Signed by: _____          _____
              Authorized Representative                                Date

Includes copyrighted material of Insurance Services Office, Inc. with its permission
Copyright, Insurance Services Office, Inc. 1989

Endorsement #

# Maryland Changes
# Nonrenewal



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO3878228-00 | 10/01/2005 | 10/01/2006 | | 18652000 | | |

**Named Insured and Mailing Address:**

**M/I HOMES, INC**

**3 EASTON OVAL, STE 500**

**COLUMBUS, OH 43219**

**Producer:**

**LOCKTON COMPANIES**

**525 S MONROE, STE 600**

**CHICAGO, IL 60661**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The following **CONDITION** is added and supersedes any other provision to the contrary:

**When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver to you written notice of nonrenewal not less than 45 days before the expiration date. Even if we do not comply with these terms, this policy will terminate:

1. On the expiration date if:

   a. You fail to perform any of your obligations in connection with the payment of premium for the policy or the renewal of the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit;

   b. We have indicated our willingness to renew this policy to you or your representative;

   c. You have notified us or our agent that you do not want to renew this policy; or

2. On the effective date of any other insurance policy issued as a replacement for any insurance afforded by this policy, with respect to insurance to which both policies apply.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

Signed by: _____     _____

          Authorized Representative                Date

Includes copyrighted material of Insurance Services Office, Inc. with its permission
Copyright, Insurance Services Office, Inc. 1986

Endorsement #

# l rth Carolina Changes



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | 18652000 | <aprem> | <rprem> |
| CEO3878228 00 | 10-01-2005 | 10-01-2006 | | | | |

**Named Insured and Mailing Address:**

M/I HOMES, INC.

3 EASTON OVAL, STE 500

COLUMBUS, OH 43219

**Producer:**

LOCKTON COMPANIES

525 W MONROE, STE 600

CHICAGO, IL 60661

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CONDITION C. Cancellation,** paragraph **2.** is deleted and replaced by the following:

**C. Cancellation**

1. If this policy has been in effect for less than 60 days and it is not a renewal of a policy we issued, we may cancel this policy for any reason. A written notice of cancellation will be mailed or delivered to you at least;

   a. 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 60 days before the effective date of cancellation if we cancel for any reason other than nonpayment of premium.

2. If this policy has been in effect for 60 days or more or if it is a renewal of a policy we issued, we may cancel this policy prior to the:

   a. Expiration of the policy; or

   b. Anniversary date, stated in the policy only for one or more of the following reasons:

   (1) Nonpayment of premium;

   (2) An act or omission by any insured or any insured's representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;

   (3) Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

   (4) Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;

   (5) A fraudulent act against us by any insured or any insured's representative that materially affects the insurability of the risk;

   (6) Willful failure by any insured or any insured's representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;

   (7) Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S.58-41-30;

   (8) Any insured's conviction of a crime arising out of acts that materially affect the insurability of the risk;

   (9) A determination of the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

   (10) The insured fails to meet the requirements contained in our corporate charter, articles of incorporation or bylaws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

   We will mail or deliver written notice of cancellation to you at least:

U-EXS-195-A NC  (4/99)
Page 1 of 2

(i) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(ii) 60 days before the effective date of cancellation if we cancel for one or more of the reasons **b. (2)** through **b.(10)** above.

3. Cancellation for nonpayment of premium will not become effective if you pay the premium due before the effective date of cancellation.

4. We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

**B.** The following provisions are added and supersede any other provisions to the contrary:

1. Nonrenewal

   a. If we elect not to renew this policy, we will mail or deliver to you written notice of nonrenewal at least 45 days prior to the:

      (1) Expiration of the policy if this policy has been written for one year or less; or

      (2) Anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

   b. We need not mail or deliver the notice of nonrenewal if you have:

      (1) Insured property covered under this policy under any other insurance policy;

      (2) Accepted replacement coverage; or

      (3) Requested or agreed to nonrenewal of this policy.

   c. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. The written notice of cancellation or nonrenewal will:

   a. Be mailed or delivered to you and any designated mortgagee or loss payee at their address shown in the policy, or if not indicated in the policy, at their last known addresses; and

   b. State the reason or reasons for cancellation or nonrenewal.

3. Knowledge by our agent of any fact which breaches a condition of the policy shall be considered knowledge known by us if such fact is known to the agent at the time the policy is issued or an application made or thereafter becomes known to the agent in the course of his or her dealings as an agent with you. Any fact which breaches a condition of the policy and is known to the agent prior to loss shall not void the policy or defeat a recovery thereon in the event of loss.

gned by:_____          _____
          Authorized Representative                    Date

Endorsement #

# Ohio Changes



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO3878228 00 | 10-01-2005 | 10-01-2006 | | 18652-000 | | |

**Named Insured and Mailing Address:**

M/I HOMES, INC

3 EASTON OVAL, STE 500

COLUMBUS, OH 43219

**Producer:**

LOCKTON COMPANIES

525 W MONROE, STE 600

CHICAGO, IL 60661

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CONDITION C. Cancellation** is amended to include the following:

**1.   Cancellation of Policies in Effect for 90 Days or More**

If this policy has been in effect for 90 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

a.   Nonpayment of premium;

b.   Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

c.   Discovery of willful or reckless acts or omissions on the part of any insured which increase any hazard insured against;

d.   The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer should reasonably have foreseen the change or contemplated the risk in writing the contract;

e.   A determination by the Director of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public;

f.   Loss of applicable reinsurance or a substantial decrease in applicable reinsurance; or

g.   Any insured's failure to correct material violations of safety codes or to comply with reasonable written loss control recommendations.

If we cancel this policy based on one or more of the above provisions, we will mail or deliver a written notice including the reason for cancellation to you and your agent or broker, 60 days before the effective date of cancellation except for nonpayment of premium.

When cancellation is for nonpayment of premium, we will provide a notice at least 10 days before the effective date of cancellation.

**2.   Nonrenewal**

We may elect not to renew this policy by mailing or delivering to you and your agent or broker, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 30 days before the expiration date. If notice is mailed or delivered less than 30 days before the expiration date, this policy will remain in effect until 30 days after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rate based on the previous year's premium.

3   enewal With Altered Terms

    **a.**   Any renewal that is conditioned on a substantial increase in premium shall have notice of such mailed to you at least 30 days prior to expiration.

    **b.**   If notice is mailed less than 30 days before expiration, your coverage remains in effect until 30 days after mailing of the notice. If you elect not to renew, the premium due will be calculated based on the rates of the expiring policy. If you elect to renew, the renewal is effective immediately following the normal expiration of the old policy.

**4.**   If notice is mailed, proof of mailing will be sufficient proof of notice.

gned by:_____        _____
         Authorized Representative                                      Date

Endorsement #

# irginia Changes



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CEO3878228 00 | 10-01-2005 | 10-01-2006 | | 18652-000 | | |

**Named Insured and Mailing Address:**

**M/I HOMES, INC**

**3 EASTON OVAL, STE 500**

**COLUMBUS, OH 43219**

**Producer:**

**LOCKTON COMPANIES**

**525 W MONROE, STE 600**

**CHICAGO, IL 60661**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**A. CONDITION C. Cancellation,** paragraph **2.** is deleted and replaced by the following:

    **2.** We may cancel this policy by sending written notice of cancellation by registered or certified mail or by delivering written notice to the named insured, including the reason for cancellation, at least:

        **a.** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **b.** 60 days before the effective date of cancellation if we cancel for any other reason.

    **3.** We will mail or deliver our notice to the named insured's last mailing address known to us.

**B.** The following **CONDITIONS** are added and supersede any other provisions to the contrary:

**Nonrenewal**

If we decide not to renew this policy, we will send written notice of nonrenewal by registered or certified mail or by delivering written notice to the named insured, at the mailing address shown in this policy, including the reason for nonrenewal, at least:

**1.** 15 days before the expiration date if the nonrenewal is due to nonpayment of premium; or

**2.** 45 days before the expiration date if the nonrenewal is for any other reason.

**Sole Agent**

The named insured shown in Item **1.** of the Declarations is authorized to act on behalf of all insureds with respect to receiving refunds and agreeing to any changes in this policy.

However, it is agree that any notices of cancellation or nonrenewal that we send out will be sent to all named insureds.

gned by: _____    _____

        Authorized Representative                  Date



**ZURICH**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY.
THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS
AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM
# (RELATING TO DISPOSITION OF TRIA)

### SCHEDULE*

---

**(1)** Premium attributable to risk of loss from certified acts of terrorism through the end of the policy period based on the extension of the Terrorism Risk Insurance Act of 2002 ("TRIA"):

**1% OF TOTAL POLICY PREMIUM**

If TRIA terminates, the portion of this premium attributable to the remaining part of the policy period, as modified by any change shown in **(2)** of this Schedule, applies to the risk of loss from terrorism after the termination of TRIA.

**(2)** Premium change upon termination of TRIA or upon applicability of a Conditional Endorsement:

    No change unless one of the following is completed -

    Return Premium:  **N/A**

    Additional Premium: N/A

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

---

*Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002 ("TRIA"), we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act. That portion of your premium attributable is shown in the Schedule of this endorsement or in the Declarations.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. The Act currently provides for no insurance industry or United States government participation in terrorism losses that exceed $100 billion in any one calendar year.  The federal program established by the Act is scheduled to terminate at the end of 12/31/05 unless extended by the federal government.

**C. Possibility of Additional or Return Premium**

The premium attributable to the risk of loss from certified acts of terrorism coverage is calculated based on the coverage (if any) in effect at the beginning of your policy for certified acts of terrorism.  If your policy contains a Conditional Endorsement, the termination of TRIA or extension of the federal program with certain modifications (as explained in that endorsement) may modify the extent of coverage (if any) your policy provides for terrorism. If TRIA terminates or the Conditional Endorsement becomes applicable to your policy, the return premium (if any) or additional premium (if any) shown in (2) of the Schedule will apply. If the level or terms of federal participation change, the premium shown in (1) of the Schedule attributable to that part of the policy period extending beyond such a change may not be appropriate and we will notify you of any changes in your premium.

Includes copyrighted material of ISO Properties, Inc. with its permission.
Copyright Zurich American Insurance Company 2004