UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIATION<br><br>This document relates to:<br><br>DEAN and DAWN AMATO, *et al.*<br>v.<br>LIBERTY MUTUAL INSURANCE COMPANY, *et al.*<br>Civil Action No. 10-0932 | MDL NO. 2047<br><br>SECTION L<br><br>JUDGE FALLON<br><br>MAJ. JUDGE WILKINSON |

**MEMORANDUM IN SUPPORT OF MOTION TO STAY PENDING ARBITRATION
FILED BY XL INSURANCE COMPANY LIMITED AND
XL INSURANCE COMPANY LIMITED AS SUCCESSOR TO XL EUROPE LIMITED**

There is a strong presumption in favor of arbitration clauses. Plaintiffs sued Defendants XL Insurance Company Limited ("XLICL") and XL Insurance Company Limited as successor to XL Europe Limited ("XL Europe") based on insurance policies which contain binding arbitration clauses, and these clauses apply to plaintiffs because they seek to benefit from the very policies containing these clauses. Thus, all claims against XLICL and XL Europe must be stayed pending arbitration and until such time that the plaintiffs can assert the claims that they interpose against XLICL and XL Europe as judgment or settlement creditors of XIICL's insureds or XL Europe's insureds.

**I.  STATEMENT OF FACTS**

The *Amato* plaintiffs sued XLICL and XL Europe based on three particular policies that are identified in Schedule 2, attached to the *Amato* Amended Complaint. Plaintiffs allege that XLICL issued a policy to Beazer Homes USA, Inc.,[1] that XL Europe issued a policy to Lennar

---

[1]   *See* Schedule 1, attached to Amended Complaint, pp. 98-99 (naming XL Insurance Company Ltd.).

1

Corporation,[2] and that XL Europe issued a policy to Morrison Homes, Inc.[3]  Plaintiffs allege that the XLICL and XL Europe policies are excess insurance policies.[4]

The policies issued by XLICL and XL Europe that give rise to plaintiffs' claims contain binding arbitration clauses.  The XLICL policy issued to Beazer Homes USA, Inc. and the XL Europe policy issued to Morrison Homes, Inc. both include this identical language:

> any dispute, controversy or claim arising out of or relating to this **Policy** or to the breach, cancellation, termination or validity of this **Policy** shall be finally and fully determined in London, England under the provisions of the Arbitration Act of 1996 ("Act") and/or any statutory modifications or amendments thereto, for the time being in force, by a Board composed of three arbitrators….[5]

The XL Europe policy issued to Lennar Corporation contains the following virtually identical language:

> Any dispute, controversy or claim arising out of or relating to this Policy or the breach, termination or invalidity thereof shall be finally and fully determined in London, England under the provisions of the Arbitration Acts of 1950, 1975 and 1979 and/or any statutory modifications or amendments thereto, for the time being in force, by a Board composed of three arbitrators….[6]

## II. CHOICE OF LAW

### A. Louisiana Conflicts of Law Provisions

To determine whether the law requires that plaintiffs' claims be stayed pending arbitration, the first question is which law applies.  On this motion, a complicated choice of law analysis is not necessary because the potentially applicable bodies of state law are not in conflict on any controlling legal principal.

---

[2]   *See* Schedule 1, attached to Amended Complaint, pp. 106-107 (naming XL Europe, Ltd.).
[3]   *See* Schedule 1, attached to Amended Complaint, pp. 131-32 (naming XL Europe Ltd.).
[4]   Amended Complaint, Schedule 2, p. 17 (XLICL excess policy to Beazer Homes Corporations), p. 25 (XL Europe excess policy to Lennar), p. 43 (XL Europe excess policy to Morrison Homes).
[5]   These policies are attached as Exhibits A and B.
[6]   This policy is attached as Exhibit C.

2

To determine which state law applies, an MDL court applies the choice of law principles of the state where the action was filed. *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007). This action was filed in Louisiana and is thus governed by the choice of law provisions contained in La. C.C. art. 3515 *et seq.*

Under La. C.C. art. 3540, when a contract includes a choice of law clause, that clause controls which law applies except for those rare cases in which it would violate public policy. *Prescott v. Northlake Christian School*, 369 F.3d 491, 496 (5th Cir. 2004); *B&S Underwriters, Inc. v. Constitution State Servs. Co.*, 946 So. 2d 746, 748 (La. App. 3d Cir. 2006); *Turner v. Miller Transporters, Inc.*, 852 So. 2d 478, 486 n.3 (La. App. 1st Cir. 2003).

Absent a choice of law clause in the insurance policy, "[u]nder the Louisiana choice-of-law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract." *Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 286 n.2 (5th Cir. 2009).[7]

### B.     Application of These Conflicts of Law Provisions

Two of the three policies at issue on this motion include a choice of law provision, also called a forum selection clause, in the policy itself. First, the policy issued by XL Europe to Morrison Homes has a choice of law provision providing for the application of **New York** law. Second, the policy issued by XLICL to Beazer has a choice of law provision providing for the application of **Georgia** law. There are no public policies impediments to the application of that law to this lawsuit.

---

[7]     Notably, whether one looks to the choice of law provision in the contracts or other choice of law provisions, Louisiana law is not applicable to any of these four policies. None of these policies were issued in Louisiana, none of the insureds are in Louisiana, and none of the plaintiffs suing XLICL or XL Europe are in Louisiana. Thus, there cannot possibly be an argument that Louisiana's policies would be most seriously impaired if Louisiana were not applied.

There are no choice of law provisions in the policy that XL Europe issued to Lennar. The Amended Complaint alleges that Lennar is organized under the laws of **Florida** and that its principal place of business is in **Florida**.[8]

The "threshold question" in any conflict of law analysis is whether there is "no conflict." *Wooley v. Lucksinger*, 14 So. 3d 311, 356 (La. App. 1st Cir. 2008). "Obviously, if the laws of two states are substantially identical, then there is no conflict" and the court need not undertake the analysis to pick a single state law that applies. *Id.* As shown below, there is no conflict between the possible state laws at issue—New York, Florida, Georgia or Arizona—so this Court can grant this motion without needing to designate a single state's law to apply to each policy.

## III. THE CLAIMS AGAINST XLICL AND XL EUROPE CONTAIN BINDING ARBITRATION CLAUSES

### A. There is a Strong Presumption in Favor of Arbitration

An overwhelming presumption exists in the law in favor of the arbitrability of these claims. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, was enacted "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts …." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Today, "there is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).[9] The FAA requires that arbitration provisions be construed "as broadly as possible," *Oldroyd v. Elmira Sav.*

---

[8] Amended Complaint ¶ 573.

[9] The FAA applies to written arbitration agreements in contracts connected to transactions involving interstate commerce, and the reach of the FAA is broad and coextensive with that of the federal Commerce Clause. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995). The FAA generally preempts state law, except that states retain the ability to regulate contracts that include arbitration agreements, and thus state law may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995).

4

*Bank, FSB,* 134 F.3d 72, 76 (2d Cir. 1998) and "that questionis of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Accordingly, any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration. *Volt Info. Sci., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989). Furthermore, a denial of a motion, such as this one, seeking relief brought under §§ 3 or 4 of the FAA is subject to immediate appeal.

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (also known as the "New York Convention") is one of the key instruments in international arbitration and it provides for the recognition and enforcement of foreign arbitral awards as well as the referral of a court to arbitration. The New York Convention recognizes that London is an appropriate venue for arbitration because both the United States and the United Kingdom are signatories.

**B.     The Arbitration Clauses in These Policies Apply to These Claims**

Plaintiffs sued XLICL and XL Europe to seek to take advantage of contracts of insurance entered into between the XLICL and XL Europe and their insured homebuilders. As set forth in the above Statement of Facts, these insurance policies contain arbitration clauses that provide that any disputes arising out of or relating to the insurance policies are to be arbitrated in London.

If the insureds of the XLICL and XL Europe had wanted to bring a claim against XLICL and XL Europe, any such disputes would clearly arise out of or relate to the insurance policies and thus would be subject to the arbitration clauses. There is no dispute that any such lawsuit brought in this Court against XLICL and XL Europe would have to be stayed or dismissed because foreign arbitration clauses in contracts are valid. 9 U.S.C. § 3 ("If any suit or

5

proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."); *see also Reaseguros v. M/V Sky Reefer*, 515 U.S. 528 (1995); *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33 (5th Cir. 1997) (affirming this Court's judgment granting a motion to dismiss); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1359 (2d Cir. 1993) ("the agreement to submit to arbitration or the jurisdiction of the English courts must be enforced even if that agreement tacitly includes the forfeiture of some claims that could have been brought in a different forum.").

The only real question on this motion is whether, in a case where the <u>insureds</u> would clearly be bound to the arbitration clause, there is any basis for <u>these plaintiffs</u> to not be so bound.

Until recently, there was a split of authority on this issue, but in *Arthur Anderson LLP v. Carlisle*, 129 S.Ct. 1896 (2009), the Supreme Court reviewed a Sixth Circuit decision holding that an arbitration clause did not apply to non-signatory. Reversing the Sixth Circuit, the Supreme Court held that an arbitration provision in a contract can apply to "a litigant who was not a party to the relevant arbitration agreement" if the arbitration provision of the contract is enforceable under the applicable state law. *Id.* at 1903.

Recently, in *Noble Drilling Servs. v.. Certex USA, Inc.,* 620 F.3d 469, 473 (5th Cir. 2010), the Fifth Circuit recognized that a non-signatory to a contract containing an arbitration agreement can be bound to arbitrate its claims related to that contract under a theory of direct-

6

benefit estoppel. The *Noble Drilling* court noted that non-signatories can be bound to the arbitration agreement in an underlying contract if, despite their non-signatory status, they have "embraced" the contract containing the clause. *Id*. at 473. A non-signatory "embraces" a contract by either "knowingly exploit[ing] the contract containing the arbitration clause and obtain[ing] a direct benefit from that contract" or by "su[ing] to enforce certain terms in a contract containing an arbitration clause, or bring[ing] claims that can only be determined by reference to" that contract. *Id*. at 474.

The *Amato* plaintiffs are just such non-signatories, as their suit fulfills either prong of the Fifth Circuit's *Noble Drilling* test. Plaintiffs have sued insurers for coverage under insurance policies to which they are not a party. In asserting their claims for coverage under the insurance policies at issue, plaintiffs have obviously "embraced" these policies, and must have had the requisite knowledge of the policies to have asserted their claims in the first place. But even assuming for the sake of argument that the *Amato* plaintiffs do not fall into the first *Noble Drilling* category, their suit places them squarely within the second group: they have sued for coverage under an insurance policy and these claims can only be determined by reference to the insurance contracts at issue, contracts that contain mandatory arbitration clauses.

As noted above, it is clear that **New York** law applies to the policy issued by XL Europe to Morrison Homes and that **Georgia** law applies to the policy issued by XLICL to Beazer because those policies have choice of law provisions calling for the applicable of New York and Georgia law. As for the other XL Europe policy at issue in this case, plaintiffs allege that XL Europe issued a policy to Lennar and that Lennar is organized under the laws of **Florida** and that

its principal place of business is in **Florida**.[10]   Under all of these state laws, the foreign arbitration agreements against XLICL and XL Europe are enforceable.

New York courts compel a non-signatory to arbitrate against a signatory pursuant to the principles of equitable estoppel.  "Under the theory of estoppel, 'a company knowingly exploiting [an] agreement [with an arbitration clause can be] estopped from avoiding arbitration despite having never signed the agreement.'"  *Best Concrete Mix Corp. v. Lloyd's of London Underwriters*, 413 F. Supp. 2d 182, 187 (S.D.N.Y. 2006) (citations omitted, brackets in original). The rationale is that if a non-signatory wants to take advantage of the benefits of an agreement between other parties, it would be unfair to let him avoid the burdens of the agreement.  The *Best* court explained that for this reason, it would be inequitable not to apply an arbitration clause in an insurance policy when the plaintiff tried to benefit from that policy:

> [A] party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him . . . .To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.

*Id.* (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBG*, 206 F.3d 411, 418 (4th Cir. 2000).  Thus, the *Best* court granted a motion to compel arbitration in London and stayed the litigation pending the outcome of that arbitration.  *Id.* at 189.  *See also HRH Constr. LLC v. Metropolitan Transp. Auth.*, 33 A.D.3d 568, 569 (1st Dept. 2006) ("A nonsignatory to an agreement containing an arbitration clause that has knowingly received direct benefits under the agreement will be equitably estopped from avoiding the agreement's obligation to arbitrate."); *Merril Lynch Int'l Finance, Inc. v. Donaldson*, 895 N.Y.S.2d 698, 703 (Sup. Ct., N.Y. Cty. 2010)

---

10   Amended Complaint ¶ 573.

("a non-signatory who exploits a contract containing an arbitration clause is estopped from repudiating that clause.").

Courts applying Florida law have also held that non-signatories who seek to take advantage of a contract containing an arbitration clause are bound by that arbitration clause under the principal of equitable estoppel. For example, applying Florida law, the Eleventh Circuit has held: "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Blanco v. Green Tree Serv., LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005) (also noting: "Other Circuit Courts have applied equitable estoppel to compel arbitration where non-signatories to contracts containing an arbitration clause have sought to enforce their alleged contractual rights.").

The law in Georgia on this issue is not as developed as the law of New York and Florida, and there is yet to be a reported case in which a non-signatory has sued, seeking to benefit from an insurance policy or other contract, and yet the non-signatory has sought to avoid an arbitration provision in the contract. Nevertheless, courts in Georgia have referenced the general rule in states such as New York and Florida that non-signatories can be bound under the law of equitable estoppel. *See, e.g., Bruce v. PharmaCentra LLC*, 07-3053, 2008 U.S. Dist. LEXIS 116742, at *16 (N.D. Ga. 2008) ("Non-signatories to arbitration agreements, however, can be bound by those agreements under theories which include 'veil-piercing/alter-ego' and estoppel.") (citing the Florida law applied in *Becker v. Davis*, 491 F.3d 1292, 1303 (11th Cir. 2007)). Other courts in Georgia have held that non-signatories were not bound by an arbitration agreement, but only in the context of cases where the non-signatory was not a plaintiff seeking to take advantage of the insurance policy or other agreement. *See, e.g., Leevers v. Bilberry*, 04-0034, 2007 U.S. Dist. LEXIS 7212, at *13-*14 (M.D. Ga. 2007). Because the plaintiffs in this case to whom

9

Georgia law could apply are seeking to take advantage of the benefits of an insurance policy, equitable estoppel requires that the arbitration clause apply to them.

IV. **CONCLUSION**

XLICL and XL Europe entered into insurance contracts with their insureds and those policies require arbitration in London, not lawsuits in New Orleans. Plaintiffs are seeking to sue based on those policies, seeking to benefit from the payment of claims provisions in those policies. To obtain the advantage of that benefit, under the principle of equitable estoppel, they are also bound to comply with the foreign arbitration clauses in those contracts. It was improper for these plaintiffs to sue XLICL and XL Europe in Louisiana on disputes that are subject to arbitration, and thus their claims against XLICL and XL Europe must be stayed pending arbitration and until such time that the plaintiffs can assert the claims that they interpose against XLICL and XL Europe as judgment or settlement creditors of XIICL's insureds or XL Europe's insureds.[11]

**WHEREFORE** Defendants XL Insurance Company Limited and XL Insurance Company Limited as successor to XL Europe Limited pray that this Court stay all claims against them until the conclusion of arbitration proceedings between Plaintiffs and XL Insurance Company Limited and XL Insurance Company Limited as successor to XL Europe Limited.

---

[11] As noted in the Memorandum in Support of Motion to Dismiss filed by XL Insurance Company Limited and XL Insurance Company Limited as Successor to XL Europe Limited, plaintiffs may not directly sue XLICL or XL Europe until a tort plaintiff has obtained a judgment against the insured. Moreover, as set forth in that Memorandum, plaintiffs do not have a ripe case or controversy against XLICL or XL Europe and therefore lack Article III standing to bring a claim against XLICL or XL Europe unless and until the underlying policies have been exhausted by final judgments or settlements. If, however, plaintiffs ever do gain standing to bring a claim against XLICL or XL Europe, that claim will be subject to arbitration.

Respectfully submitted,

*Martin A. Stern*
MARTIN A. STERN, T.A. (#17154)
JEFFREY E. RICHARDSON (#2323)
CHRISTINE S. FORTUNATO (#30505)
ADAMS AND REESE LLP
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone:  (504) 581-3234
Facsimile:  (504) 566-0210
Martin.Stern@arlaw.com
Jeff.Richardson@arlaw.com
Christine.Fortunato@arlaw.com

STEPHEN M. MARCELLINO
RICHARD S. OELSNER
JENNIFER ALAMPI
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
3 Gannett Drive
White Plains, NY 10604-3407
Telephone:  (914) 323-7000
Facsimile:  (914) 323-7001
Stephen.Marcellino@wilsonelser.com
Richard.Oelsner@wilsonelser.com
Jennifer.Alampi@wilsonelser.com

***Attorneys For XL Insurance Company Limited and XL Insurance Company Limited as successor to XL Europe Limited***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon Plaintiffs' Liaison Counsel, Russ Herman at drywall@hhk.com and Defendants' Liaison Counsel, Kerry Miller at kmiller@frilot.com and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 24th day of March, 2011.

*Jeffrey E. Richardson*
JEFFREY E. RICHARDSON