INSURANCE

La Touche House
International Financial Services Centre
Dublin 1
Ireland
Phone+353 1 607 5300
Fax  +353 1 607 5333
www.xlcapital.com

November 6th, 2007

**VIA AIR COURIER**

Morrison Homes, Inc
3655 Brookside Parkway #400,
Alpharetta, Georgia,
30022,
United States

Dear Sirs:

Re:    **MORRISON HOMES, INC**
       **POLICY NO. IE00012837LI05A / IE00012838LI06A / IE00012839LI07A**

For purposes of record keeping clarity, we hereby confirm that the captioned policy was cancelled at October 31st, 2007.

If you have any questions, please do not hesitate to contact the undersigned.

Sincerely,

Nigel Heather

**Casualty Underwriting Manager**
**XL Europe Ltd**

cc:    Mr. Luke Mayhook, Willis Limited

Ref:   XSOCC-017.01

XL Europe Limited
Directors  M.C. Brady  F. Muldoon. D.J. O'Donohoe, B.M. O'Hara (US. Chairman), R.J. Patten, C. Tobin (UK)
Reg. Office  La Touche House, International Financial Services Centre, Dublin 1
Registered in Dublin. Ireland Reg. No. 163260



**EXHIBIT**

**B**

A member of the XL Capital group



## HOMEBUILDERS UMBRELLA
*Issued by*
**XL Europe Limited**
La Touche House, International Financial Services Centre, Dublin 1

### Commercial Umbrella Liability Policy

### DECLARATIONS

---

**POLICY NUMBER:**   IE00012837LI05A / IE00012838LI06A / IE00012839LI07A

**RENEWAL OF:**   New

**ITEM 1.  NAMED INSURED:**   Morrison Homes, Inc

**MAILING ADDRESS:**   3655 Brookside Parkway #400, Alpharetta, Georgia, 30022, United States.

**ITEM 2.  POLICY PERIOD:**   **FROM:** November 1, 2005     **TO:**   November 1, 2008
(At 12:01 A.M., standard time, at the address of the Named Insured stated above.)

**ITEM 3.  LIMITS OF INSURANCE**

The Limits of Insurance, subject to the terms of this policy, are:

  A.  USD 15,000,000  **Each Occurrence**
  B.  USD 15,000,000  **General Aggregate** (in accordance with Section V. Limits of Insurance)
  C.  USD 15,000,000  **Products-Completed Operations Aggregate** (in accordance with
      Section V. Limits of Insurance)

**ITEM 4.  SELF-INSURED RETENTION —**   As per Endorsement 2

**ITEM 5.  SCHEDULED UNDERLYING INSURANCE —** As per Endorsement 1

**ITEM 6.  APPROVED COUNSEL SELF-INSURED RETENTION CREDIT:**   Not applicable

**ITEM 7.  PREMIUM**   **Gross Written Premium**   USD
                     **Net Written Premium**   USD

**ITEM 8.  THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE:** SEE ATTACHED   SCHEDULE

**INSURED'S REPRESENTATIVE:** Willis Limited
**ADDRESS:**   One Camomile Street, London, EC3A 7LA, United Kingdom.

**By:**   Sean O'Regan
**Title:**   Vice President
**Date:**   May 02, 2006.

## FORMS SCHEDULE

**Named Insured:**      Morrison Homes, Inc

**Policy Number:**      IE00012837LI05A / IE00012838LI06A / IE00012839LI07A

**Effective 12.01AM**   November 1, 2005

| Endt No | Form Name |
|---------|-----------|
| 1 | Schedule of Underlying Insurance |
| 2 | Schedule of Self Insured Retentions |
| 3 | Arbitration Clause |
| 4 | Law of Construction and Interpretation |
| 5 | Special Exclusionary Endorsement |
| 6 | Attached Properties Endorsement |
| 7 | Premium Adjustment Endorsement |
| 8 | Premium Instalment Endorsement |
| 9 | Minimum Earned Premium Endorsement |
| 10 | Financial Institutions Endorsement |
| 11 | Quality Control Endorsement |



Insured:         Morrison Homes, Inc
Policy No.       IE00012837LI05A / IE00012838LI06A / IE00012839LI07A
Endorsement No:  1
Effective Date:   1 November 2005

## SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF COVERAGE | CARRIER | LIMITS OF LIABILITY |
|---|---|---|
| Automobile Liability | XL America Inc | USD 5,000,000 each **Occurrence** |
| | In Excess of: | |
| | Interstate Fire and Casualty Company | USD 4,000,000 each **Occurrence** |
| | In Excess of: | USD 1,000,000 each **Occurrence** |
| | | DEFENSE COSTS ARE OUTSIDE OF THE LIMITS AND DO NOT ERODE |
| Employers Liability | XL America Inc | USD 5,000,000 each Accident<br>USD 5,000,000 each Employee<br>USD 5,000,000 Policy Limit<br>(Reinstated Annually) |
| | In Excess of: | |
| | Interstate Fire and Casualty Company | USD 4,000,000 each Accident<br>USD 4,000,000 each Employee<br>USD 4,000,000 Policy Limit<br>(Reinstated Annually) |
| | In Excess of: | USD 1,000,000 each Accident<br>USD 1,000,000 each Employee<br>USD 1,000,000 each 12 Month Period Commencing November 1, 2005. |

DEFENSE COSTS ARE OUTSIDE OF THE LIMITS AND DO NOT ERODE

The terms, declarations, insuring agreements, definitions, exclusions and conditions of this **Policy** otherwise remain unchanged.

XL EUROPE LTD

By: _____
     Sean O'Regan

Title:  Vice President
Date:  May 02, 2006



Insured:          Morrison Homes, Inc
Policy No.        IE00012837LI05A / IE00012838LI06A / IE00012839LI07A
Endorsement No.   2
Effective Date:   1 November 2005

## SCHEDULE OF SELF INSURED RETENTIONS

General Liability

i)     $5,000,000    each Occurrence Indemnity Only

      DEFENSE COSTS ARE OUTSIDE OF THE LIMITS AND DO NOT ERODE

Products Completed Operations Liability

i)     $5,000,000    each Occurrence Indemnity Only

      DEFENSE COSTS ARE OUTSIDE OF THE LIMITS AND DO NOT ERODE

The terms, declarations, insuring agreements, definitions, exclusions and conditions of this **Policy** otherwise remain unchanged.

**XL EUROPE LTD**

By:     _____
        Sean O'Regan

Title:  Vice President

Date:   May 02, 2006



Insured:         Morrison Homes, Inc
Policy No.       IE00012837LI05A / IE00012838LI06A / IE00012839LI07A
Endorsement No:  3
Effective Date:  1 November 2005

## ARBITRATION CLAUSE

It is hereby agreed that, notwithstanding anything to the contrary, any dispute, controversy or claim arising out of or relating to this **Policy** or to the breach, cancellation, termination or validity of this **Policy** shall be finally and fully determined in London, England under the provisions of the Arbitration Act of 1996 ("Act") and/or any statutory modifications or amendments thereto, for the time being in force, by a Board composed of three arbitrators to be selected for each controversy as follows:

Any party may, in the event of such a dispute, controversy or claim, notify the other party or parties to such dispute, controversy or claim of its desire to arbitrate the matter, and at the time of such notification the party desiring arbitration shall notify any other party or parties of the name of the arbitrator selected by it. The other party or parties who has been so notified shall within thirty (30) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party or parties notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within thirty (30) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of thirty (30) calendar days, apply to a judge of the High Court of Justice of England and Wales for the appointment of a second arbitrator and in such a case the arbitrator appointed by such a judge shall be deemed to have been nominated by the party or parties who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within thirty (30) calendar days after the appointment of the second arbitrator choose a third arbitrator. In the event of the failure of the first two arbitrators to agree on a third arbitrator within said thirty (30) calendar day period, either of the parties may within a period of thirty (30) calendar days thereafter, after notice to the other party or parties, apply to a judge of the High Court of Justice of England and Wales for the appointment of a third arbitrator and in such case the person so appointed shall be deemed and shall act as the third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Board of Arbitration for the controversy in question shall be deemed fixed. All claims, demands, denials of claims and notices pursuant to this arbitration provision shall be given in accordance with the notice provisions of this **Policy**.

The Board of Arbitration shall fix, by a notice in writing to the parties, a reasonable time and place for the hearing and may prescribe reasonable rules and regulations governing the course and conduct of the arbitration proceedings, including discovery by the parties.

The Board shall, within ninety (90) calendar days following the conclusion of the hearing, render its decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on the parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board and the same shall be final and binding on the parties thereto. Such decision shall be a complete defense to any attempted appeal or litigation of such decision in the absence of serious irregularity. Without limiting the foregoing, the parties waive any right to appeal to, and/or seek collateral review of the decision of the Board of



Insured: Morrison Homes, Inc
Policy No. IE00012837LI05A / IE00012838LI06A / IE00012839LI07A
Endorsement No: 3
Effective Date: 1 November 2005

## ARBITRATION CLAUSE (Cont'd)

Arbitration by, any court or other body to the fullest extent permitted by applicable law, including, without limitation, application or appeal under Sections 45 and 69 of the Act.

Any order as to the costs of the arbitration shall be in the sole discretion of the Board, who may direct to whom and by whom and in what manner they shall be paid.

The parties agree that, in the event that claims for indemnity or contribution are asserted in any action or proceeding against the **Company** by any of the **Insured's** other insurers in any jurisdiction or forum other than that set forth in this arbitration provision, the **Insured** will in good faith take all reasonable steps requested by the **Company** to assist the **Company** in obtaining a dismissal of these claims (other than on the merits) and will undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the **Company** would have been liable to such insurers for indemnity or contribution pursuant to this **Policy**. The **Insured** shall be entitled to assert claims against the **Company** for coverage under this **Policy**, including, without limitation, for amounts by which the **Insured** reduced its judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the **Company** and the **Insured** pursuant to this arbitration provision, which arbitration may take place before, concurrently with and/or after the action or proceeding involving such other insurers; provided, however, that the **Company** in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this **Policy** and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers (and no determination in any such action or proceeding involving such other insurers shall have collateral estoppel, res judicata or other issue preclusion or estoppel effect against the **Company** in such arbitration, irrespective of whether or not the **Company** remained a party to such action or proceeding).

The terms, declarations, insuring agreements, definitions, exclusions and conditions of this **Policy** otherwise remain unchanged.

XL EUROPE LTD

By:

Sean O'Regan

Title: Vice President

Date: May 02, 2006



Insured:         Morrison Homes, Inc
Policy No.       IE00012837LI05A / IE00012838LI06A / IE00012839LI07A
Endorsement No:  4
Effective Date:  1 November 2005

## LAW OF CONSTRUCTION AND INTREPRETATION

It is hereby agreed that notwithstanding anything to the contrary in this **Policy,** this **Policy**
and any dispute, controversy or claim arising out of or relating to this **Policy**, shall be
governed by and construed in accordance with the substantive internal law (i.e., excluding
procedural and choice-of-law rules) of the State of New York, except insofar as such law (1)
may prohibit payment in respect of punitive damages hereunder; (2) pertain to regulation
under New York Insurance Law, or regulations issued by the Insurance Department of the
State of New York pursuant thereto, applying to insurers doing insurance business, or
issuance, delivery or procurement of policies of insurance, within the State of New York or as
respect risks or insured entities situated in the State of New York; or (3) are inconsistent with
any provision of this **Policy**; provided, however, that the provisions, stipulations, exclusions
and conditions of this **Policy** are to be construed in an even handed fashion as between the
**Insured** and the **Company**; where the language of this **Policy** is deemed to be ambiguous or
otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant
provisions, stipulations, exclusions and conditions (without regard to authorship of the
language, without any presumption or arbitrary interpretation or construction in favour of either
the **Insured** or the **Company** or reference to the "reasonable expectations" of either thereof
or to contra proferentum and without reference to parol or other extrinsic evidence).  Insofar
as the substantive internal law of New York is inapplicable as provided herein or otherwise,
and as respects arbitration procedure, the internal laws of England and Wales apply.

The terms, declarations, insuring agreements, definitions, exclusions and conditions of this
**Policy** otherwise remain unchanged.

XL EUROPE LTD

By:   ⌣⌣∨

      Sean O'Regan

Title:  Vice President

Date:   May 02, 2006



Insured:           Morrison Homes, Inc
Policy No.         IE00012837LI05A / IE00012838LI06A / IE00012839LI07A
Endorsement No:    5
Effective Date:    1 November 2005

## SPECIAL EXCLUSIONARY ENDORSEMENT

It is hereby agreed effective as of the **Inception Date** of the **Policy** that notwithstanding any other provision of this **Policy**, this **Policy** shall not apply to, and the **Company** shall have no liability hereunder to the **Insured** in respect of, any liability or alleged liability for any **Personal Injury** and **Advertising Injury**, **Property Damage** or **Bodily Injury** arising out of or allegedly arising out of the operations, risks, events or other matters set forth below: -

REFRACTORY FIBRES

The terms, declarations, insuring agreements, definitions, exclusions and conditions of this **Policy** otherwise remain unchanged.

**XL EUROPE LTD**

By:   _____
      Sean O'Regan

Title:   Vice President

Date:   May 02, 2006



Insured:          Morrison Homes, Inc
Policy No.        IE00012837LI05A / IE00012838LI06A / IE00012839LI07A
Endorsement No:   6
Effective Date:   1 November 2005

## ATTACHED PROPERTIES ENDORSEMENT

It is hereby noted and agreed that the **Company** reserve the right to restrict, review or amend the **Policy** terms and conditions and / or premium if the number of units constituting a **Multi-Family Dwelling Unit** exceed 15% of the total number of **Units**, including all **Single Family Dwelling Units**, to close escrow during each annual period.

In addition, the **Company** requires confirmation of the split of percentage of units for **Multi-Family Dwelling Units** to **Single Family Dwelling Units** within 30 days of the expiration of each annual period. Any changes to terms, conditions, and / or premium will be solely at the discretion of the **Company**.

For the purposes of this endorsement the following Definitions are added to Section VI. Definitions of the Policy: -

**Multi-Family Dwelling Unit** means a building that contains two or more **Single Family Dwelling Units**.

**Single Family Dwelling Units** means a home that is constructed for the purpose of single family occupancy and is not part of a building that contains one or more other **Single Family Dwelling Units**.

The terms, declarations, insuring agreements, definitions, exclusions and conditions of this **Policy** otherwise remain unchanged.

XL EUROPE LTD

By:    _____
       Sean O'Regan

Title:  Vice President

Date:   May 02, 2006



Insured:           Morrison Homes, Inc
Policy No.         IE00012837LI05A / IE00012838LI06A / IE00012839LI07A
Endorsement No:    7
Effective Date:    1 November 2005

## PREMIUM ADJUSTMENT ENDORSEMENT

At the end of each annual period (i.e. the end of the period 1 November 2005 to 1 November 2006) the **Company's** premium will be adjustable upwards only at a rate of $316 per additional **Unit** closing escrow above the below estimated homes closing: -

Estimated number of **Units** to close escrow in year one:        5,952
Estimated number of **Units** to close escrow in year two:        6,547
Estimated number of **Units** to close escrow in year three:      7,200

The terms, declarations, insuring agreements, definitions, exclusions and conditions of this **Policy** otherwise remain unchanged.

**XL EUROPE LTD**

By:     _____
        Sean O'Regan

Title:   Vice President

Date:   May 02, 2006



Insured: Morrison Homes, Inc
Policy No. IE00012837LI05A / IE00012838LI06A / IE00012839LI07A
Endorsement No: 8
Effective Date: 1 November 2005

## PREMIUM INSTALLMENT ENDORSEMENT

Nothwithstanding any other provision of the **Policy**, the Annual Premium shall be payable in three (3) instalments, as follows:

|  | Date | Amount |
|---|---|---|
| 1st Instalment: | December 1, 2005 | USD 1,885,000 |
| 2nd Instalment: | November 1, 2006 | USD 1,885,000 |
| 3rd Instalment: | November 1, 2007 | USD 1,885,000 |

If any premium is not paid when due, the **Policy** automatically shall be cancelled without notice. In such case, no further premium shall be due, and there shall be no return of premium previously paid.

The terms, declarations, insuring agreements, definitions, exclusions and conditions of this Policy otherwise remain unchanged.

**XL EUROPE LTD**

By:

Sean O'Regan

Title: Vice President

Date: May 02, 2006



Insured:            Morrison Homes, Inc
Policy No.          IE00012837LI05A / IE00012838LI06A / IE00012839LI07A
Endorsement No:     9
Effective Date:     1 November 2005

## MINIMUM EARNED PREMIUM ENDORSEMENT

The parties agree that in the event of cancellation of this **Policy** by or at the direction of **Insured**, the **Company** shall retain a Minimum Earned Premium of $1,885,000 at inception and $3,770,000 after 24 months.

The terms, declarations, insuring agreements, definitions, exclusions and conditions of this **Policy** otherwise remain unchanged.

**XL EUROPE LTD**

By:    _____
       Sean O'Regan

Title:   Vice President

Date:   May 02, 2006



Insured:            Morrison Homes, Inc
Policy No.          IE00012837LI05A / IE00012838LI06A / IE00012839LI07A
Endorsement No:     10
Effective Date:     1 November 2005

## FINANCIAL INSTITUTIONS ENDORSEMENT

It is hereby noted and agreed that the Policy is amended as follows: -

**Section VII. Exclusions, A. Aircraft and Watercraft** is deleted in its entirety and replaced by the following:

A.  Aircraft, Watercraft, Auto and Railroad Vehicle

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use, including operation, loading and unloading or entrustment of others of any;

1. aircraft, watercraft, or railroad vehicle in which the **Insured** has any financial interest;
2. aircraft, watercraft, or railroad vehicle owned by the **Insured**  or rented to the **Insured** without a crew;
3. off-lease aircraft, watercraft, **Auto** or railroad vehicle;
4. aircraft, watercraft, **Auto** or railroad vehicle repossessed by the **Insured**; or
5. **Auto** leased by the **Insured** to others.

**Section VII. Exclusions** is amended to include the following additional exclusions:

1. This insurance does not apply to **Bodily Injury** or **Property Damage** to or arising out of any property held by or in the care, custody or control of the **Insured** while the **Insured** is acting in any **Fiduciary Capacity**;

2. This insurance does not apply to **Property Damage** to money; currency; coin; bank notes; Federal Reserve notes; postage and revenue stamps; savings stamps; savings bonds; bullion; precious metals of all kinds and in any form; articles made from such precious metals; jewellery; watches; necklaces; bracelets; gems; precious and semi-precious stones; bonds; securities; evidences of debts; debentures; script; certificates; receipts; warrant rights; transfers; coupons, drafts; bills of exchange; acceptances; notes; checks; withdrawal orders; money orders; travellers checks; letters of credit; bills of lading; abstracts of title; insurance policies and assignments of such policies; deeds; mortgages upon real estate and / or upon chattels and upon interests therein and assignments of such mortgages and instruments; other valuable papers and documents and all other instruments similar to or in the nature of the foregoing; or

3. This insurance does not apply to any damages, financial loss, loss of profits, inadequate value, diminution in value or out of pocket expenses arising out of any act, error, mistake or omission of any **Insured** or any agent or sub-agent of any **Insured** while acting in any **Fiduciary Capacity**.

**Section VI. Definitions** is amended to include the following additional definition:

**Fiduciary Capacity** means, but is not limited to, the following:

1. administrator; executor; trustee under will or personal trust agreement; committee for incompetents; guardian; any agent or sub-agent for any of the foregoing; custodian of securities; manager of real or personal property; or



Insured:          Morrison Homes, Inc
Policy No.        IE00012837LI05A / IE00012838LI06A / IE00012839LI07A
Endorsement No:   10
Effective Date:   1 November 2005

## FINANCIAL INSTITUTIONS ENDORSEMENT (Cont'd)

. 2.  interest or dividend disbursing agent; paying agent; fiscal agent; transfer agent; Registrar; agent for voting trustee; warrant agent; depository; agent or committee of holders of stock or securities; escrow agent; trustee under bond indenture; sinking fund agent; receiver or trustee appointed by any court in receivership; bankruptcy or re-organization proceedings; or any similar trust or representative capacity.

The terms, declarations, insuring agreements, definitions, exclusions and conditions of this **Policy** otherwise remain unchanged.

**XL EUROPE LTD**

By:      Sean O'Regan

Title:   Vice President

Date:    May 02, 2006



Insured:            Morrison Homes, Inc
Policy No.          IE00012837LI05A / IE00012838LI06A / IE00012839LI07A
Endorsement No:     11
Effective Date:     1 November 2005

## QUALITY CONTROL ENDORSEMENT

It is hereby noted and agreed that the **Insured** will contract with IBACO Third Party Quality Control consultants and that such contract will be kept in force for all divisions of the **Insured** throughout the period of this insurance contract. Failure to keep the contract with IBACO in force will be considered a material change in risk to be notified to XL Europe who may vary policy terms or cancel coverage.

The terms, declarations, insuring agreements, definitions, exclusions and conditions of this **Policy** otherwise remain unchanged.

**XL EUROPE LTD**

By:    _____
        Sean O'Regan

Title:    Vice President

Date:    May 02, 2006



HOME BUILDERS UMBRELLA
COMMERCIAL UMBRELLA LIABILITY POLICY
*Issued by*
**XL Europe Limited,**
La Touche House, IFSC, Dublin 1, Ireland

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy. The words "we," "us" and "our" refer to the company providing this insurance shown in the Declarations.

The word **Insured** means any person or organization qualifying as such under Section VI. Definitions.

Other words and phrases that appear in bold print have special meaning. See Section VI. Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

## I. INSURING AGREEMENT: EXCESS LIABILITY OVER INSURED'S SELF-INSURED RETENTION AND SCHEDULED UNDERLYING INSURANCE

### A. Coverage A: Excess Liability Over Insured's Self-Insured Retention.

We will pay on behalf of the **Insured** those sums in excess of the **Self-Insured Retention** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**

Coverage A will be provided according to the terms, definitions, conditions and exclusions of this policy.

### B. Coverage B: Excess Liability Over Scheduled Underlying Insurance

We will also pay on behalf of the **Insured** those sums in excess of the total applicable limits of **Scheduled Underlying Insurance** that the **Insured** becomes legally obligated to pay as damages provided the damages would be covered by **Scheduled Underlying Insurance**, except for exhaustion of the total applicable limits of **Scheduled Underlying Insurance** by the payment of **Loss**.

Coverage B will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. If any provisions of **Scheduled Underlying Insurance** conflict with any provisions of this policy, the provisions of this policy will apply.



C. This policy applies, only if:

    1. a. the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**, or

       b. the **Bodily Injury** or **Property Damage** occurred after the end of the **Policy Period** and within the applicable statute of limitations or within ten (10) years from the common area transfer of title or from the **Unit** close of escrow, whichever is less, and arising out of a **Unit** or **Common Area**, the deed or title to which was recorded in accordance with applicable law in the name of the original third party purchaser during the **Policy Period**, or

       c. the **Personal Injury and Advertising Injury** is caused by an **Occurrence** arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**; and

    2. prior to the **Policy Period**, no **Insured** shown in paragraph J2 of Section VI, no manager in your risk management, insurance or legal department and no employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that **Bodily Injury** or **Property Damage** had occurred, in whole or in part or that an **Occurrence** had been committed that caused **Personal Injury and Advertising Injury**. If such an **Insured**, manager or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred or that an **Occurrence** had been committed that caused **Personal Injury and Advertising Injury**, then any continuation, change or resumption of such **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

**Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under Paragraph J2 of Section VI, any manager in your risk management, insurance or legal department or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

    a. reports all, or any part, of the **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to us or any other insurer;

    b. receives a written or verbal demand or claim for damages because of the **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**; or

    c. becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur or an **Occurrence** has been committed that has caused or may cause **Personal Injury and Advertising Injury**.

D. If we are prevented by law or statute from paying damages on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Self-Insured Retention** or **Scheduled Underlying Insurance**.

E. We will not pay any sums, unless the **Self-Insured Retention** or **Scheduled Underlying Insurance** has been exhausted by the payment of **Loss**.

F. The amount we will pay for damages is limited as described in Section V. Limits of Insurance.

| II. DEFENSE PROVISIONS |
|---|

A. Under Coverage A., we will have the right but not the duty to defend any **Suit** against the **Insured** that seeks damages covered under this policy when the applicable **Self-Insured Retention** has been exhausted by the payment of **Loss**, even if the **Suit** is groundless, false or fraudulent.

B. Under Coverage B., we will have the right and duty to defend any **Suit** against the **Insured** that seeks damages covered under this policy when the total applicable limits of **Scheduled Underlying Insurance** has been exhausted by the payment of **Loss**, even if the **Suit** is groundless, false or fraudulent.

**XL** INSURANCE

C. When we assume the defense of any **Suit**, we will:

1. defend, investigate, negotiate and settle the **Suit** as we deem expedient; and

2. pay the following:

   a. premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

   b. premiums on appeal bonds required by law to appeal the **Suit**, but we are not obligated to apply for or furnish any such bond;

   c. all court costs taxed against the **Insured** in the **Suit**;

   d. pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make a settlement offer within the applicable Limits of Insurance of this policy that is acceptable to the claimant, we will not pay any pre-judgment interest accruing after we make such offer;

   e. post-judgment interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

   f. the **Insured's** expenses incurred with our express written consent.

D. Except as provided in Paragraph B above, we will have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise any of these rights, we will do so at our own expense.

We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

---

## III. SELF-INSURED RETENTION

A. Coverage A. applies only in excess of the **Self-Insured Retention** and only for those coverages listed in the Self-Insured Retention Schedule referenced in Item 4 of the Declarations.

B. The Each Occurrence Self-Insured Retention and Aggregate Self-Insured Retention, if any, shown in the Self-Insured Retention Schedule referenced in Item 4 of the Declarations will only be reduced or exhausted by the payment of **Loss**.

C. The **Self-Insured Retention** applies whether or not there is any available **Other Insurance**. If there is insurance specifically purchased by the **Insured** to be underlying insurance to this policy applicable to a **Loss**, amounts received through such insurance for payment of the **Loss** may be applied to reduce or exhaust the Each Occurrence Self-Insured Retention shown in the Self-Insured Retention Schedule referenced in Item 4 of the Declarations. However, in no event will amounts received through such insurance for the payment of expenses to defend any **Suit** or to investigate any claim reduce the Each Occurrence Self-Insured Retention.

D. The Each Occurrence Self-Insured Retention shown in the Self-Insured Retention Schedule referenced in Item 4 of the Declarations is the most the **Insured** will pay for all **Loss** with respect to any one **Occurrence**.

E. The Aggregate Self-Insured Retention, if any, shown in the Self-Insured Retention Schedule referenced in Item 4 of the Declarations is the most the **Insured** will pay for all **Loss**.



## IV. APPROVED COUNSEL S.I.R. CREDIT

With respect to the **Occurrence** giving rise to **Suit**, the Each Occurrence Self-Insured Retention shown in the Self-Insured Retention Schedule referenced in Item 4 of the Declarations will be reduced by the Approved Counsel Self-Insured Retention Credit shown in Item 6 of the Declarations, provided you comply with the following conditions:

1. You retain a law firm that is approved by us in writing promptly after the **Suit** is filed against any **Insured**; and

2. You maintain as counsel of record the approved law firm to defend the **Suit** through to the final resolution.

## V. LIMITS OF INSURANCE

A. The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

1. **Insureds**;

2. claims made or **Suits** brought against any or all **Insureds**;

3. persons or organizations making claims or bringing **Suits**; or

4. coverages provided under this policy.

B. The General Aggregate Limit shown in Item 3B of the Declarations is the most we will pay for all damages, except for damages included in the **Products-Completed Operations Hazard.**

C. The Products-Completed Operations Aggregate Limit shown in Item 3C of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard**.

D. Subject to Paragraphs B and C above, the Each Occurrence Limit stated in Item 3A of the Declarations is the most we will pay for the sum of all damages arising out of any one **Occurrence**.

E. Subject to Paragraphs B and C above, the most we will pay for damages under this policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in Item 3 of the Declarations or the Limits of Insurance you agreed to procure in such written **Insured Contract**.

F. If the **Self-Insured Retention** or limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss**, we will:

1. in the event of reduction, pay excess of the remaining limits of **Self-Insured Retention** or **Scheduled Underlying Insurance**; and,

2. in the event of exhaustion, pay those sums covered herein excess of the exhausted **Self-Insured Retention** or **Scheduled Underlying Insurance**.

G. Coverage B applies only in excess of the total applicable limits of **Scheduled Underlying Insurance**. If, however, a policy shown in the Schedule of Underlying Insurance referenced in Item 5 of the Declarations has a limit of insurance:

1. greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or

2. less than the amount shown in such schedule, this policy will apply in excess of the amount shown in such schedule.



H. Expenses incurred to defend any **Suit** or to investigate any claim will reduce the applicable Limits of Insurance of this policy.

I. The Limit of Insurance of this policy as respects to Item 3B of the Declarations, General Aggregate, and Item 3C of the Declarations, Products-Completed Operations Aggregate apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period**, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance of this policy.

J. The Products-Completed Operations coverage, applies for a period of ten (10) years after the end of the **Policy Period** or the applicable statute of limitations has expired, whichever occurs first.

---

## VI. DEFINITIONS

A. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. **Auto** does not include **Mobile Equipment**.

C. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death or mental anguish resulting from any of these at any time.

D. **Common Area** means:

A. **Improvements** to real estate, regardless of ownership, which are not part of, attached to or conveyed with a **Unit** and are contained within the geographical boundaries and are an integral part of the Project.

B. Common Area shall include, but not be limited to, any roads, curbs, retaining or decorative walls, berms, recreation amenities of any kind, sewer and water mains, athletic facilities, common rooms or recreation facilities, fire roads and breaks, utility access easements and any other **Improvement** given, conveyed, sold, or otherwise transferred by the **Insured** to any government entity or homeowners association, by whatever name.

E. **Employee** includes a **Leased Worker**, but not a **Temporary Worker.**

F. **Fungus(i), Mold(s) and Spore(s)** means:

1. **Fungus(i)** includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts and mushrooms;

2. **Mold(s)** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

3. **Spore(s)** means any dormant or reproductive body produced by or arising or emanating out of any **Fungus(i), Mold(s),** mildew, plants, organisms or microorganisms.

G. **Hostile Fire** means a fire that becomes uncontrollable or breaks out from where it was intended to be.



H. **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

  1. it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

  2. you have failed to fulfill the terms of a contract or agreement;

  if such property can be restored to use by:

  1. the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

  2. your fulfilling the terms of the contract or agreement.

I. **Improvement** means an addition to real property, whether permanent or not; especially one that increases its value or utility or that enhances its appearance.

J. **Insured** means:

  1. the **Named Insured**;

  2. if you are designated in the Declarations as:

      a. an individual, you and your spouse are Insureds, but only with respect to the conduct of a business of which you are the sole owner;

      b. a partnership or joint venture, you are an Insured. Your members and your partners are also Insureds, but only with respect to the conduct of your business;

      c. a limited liability company, you are an Insured. Your members are also Insureds, but only with respect to the conduct of your business. Your managers are Insureds, but only with respect to their duties as your managers;

      d. an organization other than a partnership, joint venture or limited liability company, you are an Insured. Your executive officers and directors are Insureds, but only with respect to their duties as your officers or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders;

      e. a trust, you are an Insured. Your trustees are also Insureds, but only with respect to their duties as trustees;

  3. your **Employees** other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

  4. your **Volunteer Workers** only while performing duties related to the conduct of your business;

  5. any person or organization (other than your employee or volunteer worker) while acting as your real estate manager;

  6. any person or organization to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy, but only with respect to their liability arising out of operations conducted by you or on your behalf.

  Notwithstanding any of the above, no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations.



K. **Insured Contract** means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**Insured Contract** does not include that part of any contract or agreement:

1. that indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those listed in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

L. **Leased Worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. Leased Worker does not include **Temporary Worker**.

M. **Loss** means those sums actually paid as judgments and settlements.

N. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in Paragraph 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in Paragraph 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:



    a.   equipment designed primarily for:

        i)    snow removal;

        ii)   road maintenance, but not construction or resurfacing; or

        iii)  street cleaning;

    b.   cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.   air compressors, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment.

O.  **Named Insured** means:

    1.  any person or organization designated in Item 1 of the Declarations;

    2.  any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy and to which more specific insurance does not apply, provided that this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

    3.  any organization, except for a partnership, joint venture, or limited liability company that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%) and to which more specific insurance does not apply, provided that:

        a.  this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred, or any **Personal Injury** or **Advertising Injury** that was caused by an **Occurrence** that was committed, before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

        b.  you give us notice within ninety (90) days of such acquisition or formation of such organization.

    A partnership, joint venture, or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

    We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

P.  **Occurrence** means:

    1.  As respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of any **Insured**.

       In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be one **Occurrence** and shall be deemed to occur only when such damage first commences.

    2.  as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury** neither expected nor intended from the standpoint of any **Insured**. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.



Q. **Other Insurance** means a policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include the **Self-Insured Retention**, **Scheduled Underlying Insurance**, or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

R. **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

 1. false arrest, detention or imprisonment;

 2. malicious prosecution;

 3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

 4. oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

 5. oral or written publication, in any manner, of material that violates a person's right of privacy;

 6. the use of another's advertising idea in your **Advertisement**; or

 7. infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

S. **Policy Period** means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of termination of this policy.

T. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

U. **Products-Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

 1. products that are still in your physical possession; or

 2. work that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:

   a. when all of the work called for in your contract has been completed;

   b. when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

   c. when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

 **Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

 1. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or



2. the existence of tools, uninstalled equipment or abandoned or unused materials.

V. **Property Damage** means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

As used in this definition, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

W. **Scheduled Underlying Insurance** means:

1. the policy or policies of insurance and limits of insurance listed in the Schedule of Underlying Insurance forming a part of this policy; and

2. automatically any renewal or replacement of any policy in Paragraph 1 above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

X. **Self-Insured Retention** means the amount applicable to each **Occurrence** for which the **Insured** is responsible that is shown in the Self-Insured Retention Schedule referenced in Item 4 of the Declarations.

Y. **Suit** means a civil proceeding in which damages because of **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to which this policy applies are alleged. **Suit** includes:

1. an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

Z. **Temporary Worker** means a person who is furnished to you to substitute for a permanent **Employee** on leave or to meet seasonal or short term workload conditions.

AA. **Unit** means a home, townhouse, or condominium, built by the **Insured** or financed by the Insured and sold to an unrelated third party.

BB. **Volunteer Workers** means a person who is not your employee and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

CC. **Your Product** means:

1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

a. you;

**XL** INSURANCE

    b.   others trading under your name; or

    c.   a person or organization whose business or assets you have acquired; and

2.  containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2.  the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

DD. **Your Work** means:

1.  work or operations performed by you or on your behalf; and

2.  materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2.  the providing of or failure to provide warnings or instructions.

---

| VII. EXCLUSIONS |
|---|

A.  **Aircraft and Watercraft**

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any **Insured**. Use includes operation and loading and unloading.

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any **Insured**.

This exclusion does not apply to a watercraft you do not own that is less than 26 feet long and not being used to carry persons or property for a charge.

B.  **Asbestos**

This insurance does not apply to any liability arising out of:



1.  the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos containing products or materials, asbestos fibers or asbestos dust;

2.  any obligation of the **Insured** to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.  any obligation to defend any **Suit** or claim against the **Insured** that seeks damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

C.  **Chromium Copper Arsenate**

This insurance does not apply to:

1.  any liability arising out of manufacture, installation, use, sale, handling, removal, distribution of; or

2.  any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of inhalation, consumption of, or exposure to

any chemical or product containing Chromium Copper Arsenate (CCA) or which has the same chemical formulary, or which is generally known in the chemical trade as having a substantially similar formulation, structure, or function by whatever name manufactured, formulated, structured, sold or distributed.

D.  **Contractual Liability**

This insurance does not apply to any liability for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1.  that the **Insured** would have in the absence of a contract or agreement; or

2.  assumed in an **Insured Contract**, provided **Bodily Injury** or **Property Damage** occurs subsequent to the execution and prior to the termination of the **Insured Contract**. Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of this policy, provided:

    a.  liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

    b.  such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

E.  **Damage to Impaired Property**

This insurance does not apply to any **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1.  a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2.  a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

F.  **Damage to Property**

**XL** INSURANCE

This insurance does not apply to any **Property Damage** to:

1.  property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.  premises you sell, give away or abandon if the **Property Damage** arises out of any part of those premises;

3.  property loaned to you;

4.  personal property in the care, custody or control of the **Insured**;

5.  that particular part of real property on which you or any contractors working directly or indirectly on your behalf are performing operations if the **Property Damage** arises out of those operations; or

6.  that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Paragraph 2 of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to any **Property Damage** included in the **Products-Completed Operations Hazard**.

G.  **Damage to Your Product**

   This insurance does not apply to any **Property Damage** to **Your Product** arising out of it or any part of it.

H.  **Damage to Your Work**

   This insurance does not apply to any **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

   This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

I.  **Economic or Trade Sanctions**

   If coverage for a claim or **Suit** under this Policy is in violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or **Suit** will be null and void.

J.  **Electronic Chatrooms or Bulletin Boards**

   This insurance does not apply to **Personal Injury and Advertising Injury** arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control.

K.  **Employees and Volunteers**

   This insurance does not apply to liability of any employee or volunteer with respect to **Bodily Injury** or **Personal Injury and Advertising Injury**:



1. to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to an employee of yours while in the course of his or her employment or performing duties related to the conduct of your business, or to another volunteer of yours while performing duties related to the conduct of your business;

2. to the spouse, child, parent, brother or sister of such injured employee or volunteer as a consequence of subparagraph 1 above;

3. for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraphs 1 or 2 above; or

4. arising out of his or her providing or failing to provide professional health care services.

L.  **Employment Practices**

This insurance does not apply to any liability arising out of:

1. wrongful dismissal, discharge, or termination, including breach of an implied contract;

2. coercion or harassment, including quid pro quo, hostile work environment, or other sexual harassment;

3. discrimination;

4. retaliation, including lockouts;

5. employment related misrepresentations;

6. employment related libel, slander, humiliation, defamation, or invasion of privacy;

7. wrongful failure to employ or promote;

8. wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

9. wrongful discipline any of your employees or applicants for employment with you;

10. failure to grant tenure to any of your employees;

11. failure to provide or enforce adequate or consistent corporate policies and procedures relating to any employment practice;

12. violation of an individual's civil rights relating to any of the above.

This exclusion applies:

1. whether the **Insured** may be liable as an employer or in any other capacity; and

2. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

M.  **Expected or Intended**

This insurance does not apply to any **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** expected or intended from the standpoint of any **Insured**. However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.



N. **Exterior Insulation and Finish Systems**

This insurance does not apply to **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** arising in whole or in part out of the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement of an Exterior Insulation and Finish System (EIFS), synthetic stucco, or any similar product or any part thereof, including the application or use of paints, conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a product.

O. **Fungus (i), Mold(s) and Spore(s)**

This insurance does not apply to any liability or any other **Loss**, injury, damage, cost or expense, including, but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

1. Any **Fungus(i)**, **Molds(s)**, mildew or yeast; or

2. Any **Spore(s)** or toxins created or produced by or emanating from such **Fungus(i)**, **Mold(s)**, mildew or yeast; or

3. Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any **Fungus(i)**, **Mold(s)**, mildew or yeast; or

4. Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any **Fungus(i)**, **Mold(s)**, mildew, yeast, or **Spore(s)** or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that **Loss**, injury, damage, cost or expense.

P. **Infringement of Copyright, Patent, Trademark or Trade Secret**

This insurance does not apply to any liability arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **Advertisement**, of copyright, trade dress or slogan.

Q. **Liquor Liability**

This insurance does not apply to any **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1. causing or contributing to the intoxication of any person;

2. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

R. **Media and Internet Type Businesses**

This insurance does not apply to **Personal Injury and Advertising Injury** committed by any **Insured** whose business is:

1. advertising, broadcasting, publishing or telecasting;

**XL**INSURANCE

2.  designing or determining content of web-sites for others; or

3.  an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs P1, P2 and P3 of Section VI.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

S.  **"No-Fault," "Uninsured Motorist" or "Underinsured Motorist" Laws**

This insurance does not apply to any obligation of the **Insured** under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law.

T.  **Nuclear Liability**

This insurance does not apply to:

1.  any liability:

    a.  with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability;

    b.  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

    c.  resulting from the hazardous properties of nuclear material if:

        i)   the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

        ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

        iii) the injury or damage arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion iii applies only to **Property Damage** to such nuclear facility and any property thereat.

2.  As used in this exclusion:

    a.  "hazardous properties" includes radioactive, toxic or explosive properties;

    b.  "nuclear material" means source material, special nuclear material or by-product material;

    c.  "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;



d. "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

e. "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

f. "nuclear facility" means:

   i) any nuclear reactor;

   ii) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

   iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

   iv) any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

g. "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h. **Property Damage** includes all forms of radioactive contamination of property.

## U.  Pollution

This insurance does not apply to:

1. Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1 of this exclusion will not apply if coverage for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) below is provided by **Scheduled Underlying Insurance**:

1) **Products-Completed Operations Hazard**

Paragraph 1 of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

a) discarded, dumped, abandoned, thrown away; or

b) transported, handled, stored, treated, disposed of or processed as waste;



by anyone.

2) **Hostile Fire**

Paragraph 1 of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

3) **Equipment to Heat the Building and Contractor/Lessee Operations**

Paragraph 1 of this exclusion does not apply to:

a) **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat the building; or

b) **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

4) **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment**

Paragraph 1 of this exclusion does not apply to:

a) **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

b) **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. – Auto**

Paragraph 1 of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** covered by **Scheduled Underlying Insurance** or its parts, if:

a) the **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

b) the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment shown in Paragraphs 6b and 6c of the definition of **Mobile Equipment**.

6) **Upset, Overturn or Damage of an Auto:**



Paragraph 1 of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

a) the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance**; and

b) the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

Coverage under this policy for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) above will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

## V. Pre-Existing Damages and/or Defects

This insurance does not apply to any liability arising out of, based on, or involving, the continuation of, during the **Policy Period**, any pre-existing damages and/or defects known to any **Insured** before the effective date of this policy.

This exclusion shall apply whether or not the **Insured's** legal obligation to pay for such pre-existing damages and/or defects was established before the effective date of this policy.

## W. Prior Units

This insurance does not apply to any liability included in the **Products - Completed Operations Hazard** arising out of a **Unit**, the deed or title to which was recorded in the name of a third party prior to the inception of the policy.

## X. Professional Services

This insurance does not apply to any liability arising out of any professional services performed by or on behalf of the **Insured**, including but not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs, or specifications, and any supervisory, inspections or engineering work.

## Y. Recall of Products, Work or Impaired Property

This insurance does not apply to any damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. **Your Product**;

2. **Your Work**; or

3. **Impaired Property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

## Z. Securities

This insurance does not apply to any liability arising out of:

 INSURANCE

1. any violation of any securities law, whether statutory or common law, or any regulation promulgated thereunder;

2. the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

3. any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

4. any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

## AA. Unauthorized Use of Another's Name or Product

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

## BB. Various Personal Injury and Advertising Injury

This insurance does not apply to **Personal Injury and Advertising Injury**:

1. caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury and Advertising Injury**;

2. arising out of oral, written or electronic publication of material if done by or at the direction of any **Insured** with knowledge of its falsity;

3. arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the **Policy Period**;

4. arising out of a criminal act committed by or at the direction of the **Insured**;

5. for which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement;

6. arising out of a breach of contract, except an implied contract to use another's advertising idea in your **Advertisement**;

7. arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **Advertisement**;

8. arising out of the wrong description of the price of goods, products or services stated in your **Advertisement**.

## CC. Various Laws

This insurance does not apply to any obligation of the **Insured** under any of the following:

1. the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), or any amendment or revision thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world; or

**XL** INSURANCE

2. any workers' compensation, unemployment compensation or disability benefits law, or under any similar law.

DD. **Violation of Communication or Information Law**

This insurance does not apply to any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws that prohibits or limits the sending, transmitting or communicating of material or information.

EE. **War**

This insurance does not apply to **Loss**, costs, injury, damage, claim, dispute and/or or suit arising therefrom, caused directly or indirectly, in whole or in part, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes:

1. Civil war; or

2. Armed conflict between two or more nations, armed conflict between military forces of any origin, or warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

FF. **"Wrap-Ups"**

This insurance does not apply to **Bodily Injury, Property Damage**, or **Personal Injury and Advertising Injury** arising out of any project insured under a "wrap-up" or any similar rating plan.

## VIII. CONDITIONS

A. **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the **Self-Insured Retention** or the **Schedule of Underlying Insurance**, we may elect to exercise our right to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

B. **Audit**

We may audit and examine your books and records as they relate to this policy at any time during the **Policy Period** and for up to three (3) years after the expiration or termination of this policy.

C. **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under the **Self-Insured Retention** or **Schedule of Underlying Insurance**.

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

**XL** INSURANCE

2.  We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than fifteen (15) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.  The **Policy Period** will end on the day and hour stated in the cancellation notice.

4.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 6 of the Declarations.

5.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium shown in Item 6 of the Declarations.

6.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7.  The first **Named Insured** in Item 1 of the Declarations will act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.  Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

E.  **Change In Control**

If during the **Policy Period**:

1.  the first **Named Insured** designated in Item 1 of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2.  any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first **Named Insured** designated in Item 1 of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this policy will continue in full force and effect subject to any modifications to the terms and conditions of this policy that we may require as set forth in a written endorsement that we make to this policy, provided however, that 90 days prior to the effective date of such transaction, you provide us with full particulars of such transaction and agree to any additional premiums and modifications to the terms of this policy.

If prior to the effective date of such transaction, we do not agree that this policy will continue in full force and effect or you do not pay any additional premium that may be required, this policy will be deemed cancelled by you.

F.  **Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can be changed only by a written endorsement that we make to this policy.

G.  **Duties in the Event of an Occurrence, Claim or Suit**

1.  You must see to it that we are notified in writing as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extent possible, notice should include:

Page 22 of 27



a.  how, when and where the **Occurrence** took place;

b.  the names and addresses of any injured persons and any witnesses; and

c.  the nature and location of any injury or damage arising out of the **Occurrence**.

Written notice should be mailed or delivered to:

Claims Department
XL Europe Limited
La Touche House
International Financial Services Centre
Dublin 1
Telephone:  (353) 1 6075300
Telecopier:  (353) 1 6075321

2.  You must notify us not later than sixty (60) days after you receive notice of any **Occurrence** that may result in a claim or **Suit** under this policy involving any of the following:

a.  a fatality;

b.  severe burns;

c.  traumatic brain injury;

d.  dismemberment or amputation;

e.  paralysis;

f.  loss or impairment of eyesight or hearing;

g.  a sexual assault or battery, including, but not limited to, rape, molestation, or sexual abuse; or

h.  any **Occurrence**, claim or **Suit**, which in the reasonable opinion of you or any principal of yours may result in a **Loss** that is equal to or greater than 25% of the **Self-Insured Retention** or **Schedule of Underlying Insurance**.

3.  You and any other involved **Insured** must:

a.  immediately send us copies of any reports, notices, summonses or legal papers received or prepared by you or any person or organization acting on your behalf in connection with the claim or **Suit**;

b.  authorize us to obtain records and other information;

c.  cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

d.  assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

e.  immediately send us copies of title company or other escrow agent statement evidencing the **Unit Close of Escrow** for all properties forming a part of or at issue in the occurrence, claim or **Suit**.

4.  No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

Page 23 of 27

 INSURANCE

5. Failure to comply with this Condition G shall result in a forfeiture of coverage under this policy.

### H. Headings

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

### I. Inspection

We have the right, but not the obligation, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

### J. Knowledge of Occurrence or Claim

Knowledge of an **Occurrence,** claim or **Suit** by your agent, servant or employee will not in itself constitute knowledge by you, unless any **Insured** described in Paragraph J2 of Section VI, any manager in your risk management, insurance or legal department or any employee who was authorized by you to give or receive notice of an **Occurrence,** claim or **Suit** will have received notice of such **Occurrence,** claim or **Suit** from said agent, servant or employee.

### K. Legal Actions Against Us

No person or organization has a right under this policy:

1. to join us as a party or otherwise bring us into a **Suit** asking for damages from an **Insured**; or

2. to sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **Insured**; but we will not be liable for damages that are not payable under this policy or that are in excess of the applicable Limits of Insurance of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

### L. Maintenance of Scheduled Underlying Insurance

You agree that during the **Policy Period**:

1. you will keep **Scheduled Underlying Insurance** in full force and effect;

2. the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

3. the total applicable limits of **Scheduled Underlying Insurance** will not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss**; and

4. any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements



M. **Other Insurance** If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance**. However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

N. **Premium**

The first **Named Insured** designated in Item 1 of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 7 of the Declarations.  At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 7 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force.  If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium.  If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you.  But in any event, we will retain the Minimum Premium as shown in Item 6 of the Declarations for each twelve months of the **Policy Period**.

O. **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1. as if each **Named Insured** were the only **Named Insured**; and

2. separately to each **Insured** against whom claim is made or **Suit** is brought.

P. **Transfer of Rights of Recovery**

1. If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

2. Any recoveries will be applied as follows:

   a. any person or organization, including the **Insured**, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

   b. we then will be reimbursed up to the amount we have paid; and

   c. lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

   Expenses incurred in the exercise of rights of recovery will be apportioned among the persons or organizations, including the **Insured**, in the ratio of their respective recoveries as finally settled.

3. If, prior to the time of an **Occurrence**, you and the insurer of **Scheduled Underlying Insurance** waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract** we will also waive any rights we may have against such person or organization.

Q. **Transfer of Your Rights and Duties**

**XL** INSURANCE

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

R. **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

S. **When Damages Are Payable** We will not make any payment under this policy unless and until the **Self-Insured Retention** or **Schedule of Underlying Insurance** has been exhausted by the payment of **Loss**.

When the amount of **Loss** has finally been determined, we will promptly pay on behalf of the **Insured** the amount of such **Loss** within the applicable Limits of Insurance of this policy.

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

XL EUROPE LTD

By:   Sean O'Regan
Title:  Vice President
Date:  May 02, 2006



This Page is intentionally Blank.