UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) MDL No. 2047 ) Section L |
| This Document Relates to: | ) ) JUDGE FALLON ) MAG. JUDGE WILKINSON |
| *Dean and Dawn Amato, et al., v. Liberty Mutual Insurance Co., et al. Case No. 10-932* _____ | ) ) ) ) |

**DEFENDANT ALLIED WORLD ASSURANCE COMPANY, LTD'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO RULE 12(b)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION**

COMES NOW Defendant Allied World Assurance Company, Ltd (hereinafter referred to as "Allied World Bermuda"), improperly sued as Allied World Assurance Company, by its counsel, McCranie, Sistrunk, Anzelmo, Hardy, McDaniel & Welch LLC, and submits this memorandum of law in support of its Motion to Dismiss Plaintiffs' Complaint Pursuant To Rule 12(b)(2) of the Federal Rules of Civil Procedure, or in the alternative, to Compel Arbitration.[1]  In support of its Motion, Allied World Bermuda states as follows:

I.   SUMMARY OF ARGUMENT

The Court should dismiss Plaintiffs' Complaint against Allied World Bermuda because there is no personal jurisdiction over Allied World Bermuda. Allied World Bermuda is a foreign company based in Bermuda, a British Overseas Territory.  Allied World Bermuda does not transact business in

---

[1] Allied World Bermuda is also filing a separate motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, and is joining the Insurer Steering Committee and other defendant insurers in a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

1

CH/369988v11

Louisiana, or anywhere else in the United States. It has never maintained offices in Louisiana, nor does it have any employees or agents representing them in Louisiana. Plaintiffs cannot meet their burden that Allied World Bermuda has "minimum contacts" with Louisiana or any state in the United States, and the exercise of personal jurisdiction over the company would be unreasonable and would not satisfy due process standards of the United States Constitution.

Alternatively, the Court should compel the arbitration of any dispute with Allied World Bermuda under the terms of its insurance policy. The policy of Allied World Bermuda requires that any dispute, controversy or claim arising out of or relating to the policy be finally and fully determined in an arbitration in Hamilton, Bermuda. To the extent Plaintiffs seek a determination of coverage under the Allied World Bermuda policy, they seek a direct benefit under the policy, and Plaintiffs must abide by all of the terms and conditions of the policy, including the arbitration provision.

II.   STATEMENT OF FACTS

Plaintiffs asserting claims against Allied World Bermuda purport to be members of a subclass of owners and residents of homes containing Chinese drywall that were built by Defendants M/I Homes, Inc. or M/I Homes of Tampa, LLC. Plaintiffs allege that the Chinese drywall has caused adverse effects on their property and personal injuries (the "Underlying Claims"). It is further alleged that Allied World Bermuda, incorrectly named as Allied World Assurance Company, provided an insurance policy covering Defendants M/I Homes, Inc. and M/I Homes of Tampa, LLC, and that Allied World Bermuda is obligated to indemnify its Insured Defendants for the Underlying Claims.

On March 19, 2010, Plaintiffs filed an Omnibus Class Action Complaint (V) seeking a declaration mandating coverage by various Insurance Company Defendants, including Allied World Assurance Company, for the Underlying Claims for which the Insured Defendants are liable.

2

CH/369988v12

Plaintiffs purported to effect service upon Allied World Bermuda by serving the Summons and Complaint on the Louisiana Secretary of State on July 19, 2010.  The Secretary of State then sent the Summons and Complaint to the offices of Allied World Assurance Company (US) Inc. in Boston, Massachusetts. Allied World Assurance Company (U.S.) Inc. is not an insurer of M/I Homes, Inc. and M/I Homes of Tampa, LLC.  The Summons and Complaint were not sent to the Registrar of the Bermuda Supreme Court, the Bermuda Central Authority for service of process under the Hague Convention.

Allied World Bermuda is a Bermuda company with its principal office in Pembroke, Bermuda (*see* Exhibit A, DeGiulio Aff., ¶4).  Allied World Bermuda insured M/I Homes, Inc. under excess liability Policy No. C003999/002, which has limits of $25,000,000 excess of $20,000,000 excess of any other available insurance or retentions on an occurrence basis during the period of October 1, 2005 to April 1, 2006.  Allied World Bermuda has reserved its rights under its policy with respect to the Underlying Claims.

The Allied World Bermuda policy was underwritten, issued, delivered and paid for in Bermuda, where M/I Homes, Inc. was represented by Besso Limited, an insurance broker in London, England.  The policy was issued to M/I Homes, Inc., which is headquartered at 3 Easton Oval, Suite 500, Columbus, Ohio 43219.  M/I Homes, Inc. is a homebuilder with operations in multiple states, but it does not do business in Louisiana.  Allied World Bermuda is not licensed or authorized to transact any business in Louisiana and has never designated or authorized any agent or public official to accept service of process for the company in Louisiana.  *See* DeGiulio Aff. ¶¶8,17.  Allied World Bermuda has never had offices in Louisiana, nor does it transact business in Louisiana.  *See* DeGiulio Aff. ¶¶13, 6-11.

The policy issued by Allied World Bermuda to M/I Homes, Inc. has a mandatory arbitration provision requiring that any dispute, controversy or claim arising out of or relating to the policy be determined by final and binding arbitration in Hamilton, Bermuda. The arbitration provision in the policy of Allied World Bermuda falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 3 (hereinafter "New York Convention"), an international treaty that guarantees citizens of signatory countries the right to enforce agreements to arbitrate disputes.

III.   ARGUMENT

   A.   THERE IS NO PERSONAL JURISDICTION OVER ALLIED WORLD BERMUDA IN LOUISIANA.

The Louisiana long-arm statute enumerates specific activities which justify asserting personal jurisdiction over non-residents. *See* La. R.S. 13:3201(A). The long-arm statute further provides that "a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States." *See* La. R.S. 13:3201(B). As Allied World Bermuda's supporting affidavit shows, Allied World Bermuda does not transact business in Louisiana, contract to supply services in Louisiana, or engage in any of the other activities contemplated in the statute. (*See generally* DeGiulio Aff.) In addition, Allied World Bermuda lacks any contacts with Louisiana, much less the "minimum contacts" that are necessary to establish personal jurisdiction under the Due Process Clause of the Constitution. *See Stuart v. Spademan*, 772 F.2d 1185, 1190 (5th Cir. 1985), *citing Hanson v. Denckla*, 357 U.S 235, 253 (1958), *and World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 294 (1980); *see also Burger King Corp .v. Rudzewicz*, 471 U.S. 462 (1985).

The due process requirement of "minimum contacts" is met by either of two standards: general jurisdiction or specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*,

4

466 U.S. 408 (1984); *Travelers Indem. Corp. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 832-33 (5th Cir. 1986).  General jurisdiction requires that the defendant have "continuous and systematic" general business contacts with the forum state.  *Helicopteros*, 466 U.S. at 414-15.  General jurisiction does not exist here, as demonstrated at subsection 2 below.  Alternatively, specific jurisdiction requires that (1) a defendant has purposely directed its activities at residents of a forum state, and (2) the case arises out of or relates to those activities.  *Burger King*, 471 U.S. at 472-73 (1985) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  A plaintiff bears the burden of establishing personal jurisdiction.  *See Travelers Indem. Corp. v. Calvert Fire Ins. Co.*, 798 F.2d 826 (5th Cir. 1986).  Plaintiffs have failed to allege any facts on which this Court can base the exercise of personal jurisdiction under either standard.  In fact, as discussed below, Allied World Bermuda simply has insufficient contacts to satisfy due process requirements.  In the absence of these minimum contacts with Louisiana, this Court must dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

        1.     Allied World Bermuda has committed no acts to justify the exercise of specific jurisdiction over it.

To support specific jurisdiction, the defendant must purposefully direct his activities at residents of the forum state, and the litigation must arise out of, or relate to, those activities.  *Burger King*, 471 U.S. at 472; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  First, the analysis of "purposeful availment" (*see Burger King*, 471 U.S. at 476) revolves around whether the "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.  Courts consider the quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it, and the relationship between the cause of action and the contacts.  *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir. 1981).  Allied World Bermuda

5

has not conducted any activities in or directed at the State of Louisiana, as set forth in further detail below.

Second, the plaintiff's claims must arise out of the defendant's activities directed at the forum state. *See Stuart*, 772 F.2d at 1190 ("When a controversy is related to or arises out of a nonresident's contacts with the forum, the minimum-contacts inquiry focuses on the relationship among the defendant, the forum and the litigation."). Importantly, the contacts must be those that the defendant itself created, not contacts which resulted from the unilateral acts of some third party. *Burger King*, 471 U.S. at 475; *see Stuart*, 772 F.2d at 1190 ("The unilateral activity of those who claim some relationship with a nonresident defendant, however, cannot satisfy the requirement of contact with the forum state."). The second prong of the test for specific jurisdiction also cannot be met in this circumstance because Plaintiffs' claims against Allied World Bermuda have no connection whatsoever to the State of Louisiana. Plaintiffs are Florida residents whose claims against Allied World Bermuda purport to arise out of insurance it issued to M/I Homes, Inc., which does not conduct business in Louisiana. As this litigation does not arise out of or relate to any activities in the State of Louisiana, there can be no specific personal jurisdiction over Allied World Bermuda.

        2.        Allied World Bermuda has no contacts with Louisiana, precluding the exercise of general jurisdiction over it.

General jurisdiction requires a defendant's "continuous and systematic" contacts within a forum state. *Central Freight Lines, Inc. v. APA Transport Corp.,* 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros*, 466 U.S. 408, 414 n. 8 (1994)). In assessing whether a defendant has "continuous and systematic" contacts, courts consider a number of different facts including: the location of the defendant's business decisions, the location of its assets, location of employees and business operations. *See Wilson v. Belin*, 20 F.3d 644, 651 (5th Cir. 1994); *see also Stuart*, 772 F.2d at 1190-91; *Felch*, 92 F.3d at 324. Further, those contacts must be "substantial" for a court to

6

exercise general jurisdiction. *See Wilson*, 20 F.3d at 650-51 (finding that "various brief contacts" were not substantial enough to give rise to the reasonable expectation of being sued in the forum).

Allied World Bermuda has no direct contact with Louisiana and certainly lacks the "continuous and systematic" contacts necessary to establish general jurisdiction in Louisiana. The test for whether there exists general personal jurisdiction over a non-resident defendant is whether the defendant has "a business presence *in* the forum state." *Jackson v. Tanfoglio Guiseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (emphasis in original) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.,* 197 F.3d 694, 717 (5th Cir. 1999)). Allied World Bermuda does not come close to satisfying that test. Allied World Bermuda is a Bermuda company and has never been authorized, licensed, registered or otherwise qualified to sell insurance or to conduct any other type of business in Louisiana or in any other jurisdiction in the United States. (DeGiulio Aff. ¶¶4,8.) It does not have, and has never had, any office, place of business, mailing address, bank account or telephone listing in Louisiana. (DeGiulio Aff. ¶14.) Likewise, it does not have any officers, agents, employees or other representatives within Louisiana or elsewhere in the United States. (DeGiulio Aff. ¶9.) Further, Allied World Bermuda does not broker or negotiate any policies in Louisiana, and does not underwrite insurance from any location in Louisiana. (DeGiulio Aff. ¶10,11.)

Under these circumstances, it is clear that Allied World Bermuda lacks the substantial contacts with Louisiana that are necessary to establish general jurisdiction. This Court has declined to find general personal jurisdiction over other non-resident insurers that similarly were not licensed to write insurance in the forum state and had no business operations or property in the forum. *Omega Hospital, LLC v. Board of Trustees*, 2008 WL 4286757, at *4 (E.D. La. Sept. 16, 2008); *Andrieu v. Countrywide Home Loans, Inc.*, 2006 WL 2117713, at *4 (E.D. La. July 26, 2006). The Fifth Circuit also found general personal jurisdiction over a non-resident insurer to be lacking where

the insurer was not authorized to write business in the forum, had no appointed agent for service of process in the forum and had no place of business or assets in the forum. *Travelers Indemnity Co. v. Calvert Fire Ins. Co.,* 798 F.2d 826 (5th Cir. 1986).

        3.        These due process principles apply with equal force to a foreign insurer.

Even where minimum contacts exist, which is not so here, this Court must also find that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 113 (1987); *Burger King*, 471 U.S. at 476. This issue requires that the exercise of jurisdiction be reasonable in light of the circumstances of the case. *Burger King*, 471 U.S. at 477-78. The burden on the defendant of litigating in a foreign forum is the primary concern in determining the reasonableness of personal jurisdiction. *World-Wide Volkswagen*, 44 U.S. at 292. When the defendant is from another country, as Allied World Bermuda is, "this concern is heightened and 'great care and reserve should be exercised' before personal jurisdiction is exercised over the defendant." *Id.*, *quoting Asahi Metal Indus. Co.*, 480 U.S. at 114. Notably, these due process inquiries are complementary in the sense that where the minimum contacts are weak, that is, the defendant's contacts with the forum are minimal, a court should not exercise jurisdiction if it would offend traditional notions of fair play. *See Benton v Cameco Corp.*, 375 F.3d 1070, 1078-79 (10th Cir. 2004); *Diamond Healthcare v. Humility of Mary Health Partners*, 229 F.3d 448, 451-52 (4th Cir. 2000); *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994).

Where a foreign insurer maintains no offices in Louisiana and writes no policies within Louisiana, an insurance contract with a non-resident defendant does not support a finding of purposeful availment. *See Louis Dreyfus Corp. v. McShares, Inc.*, 723 F. Supp. 375, 379-380 (E.D. La. 1989) (declining to exercise personal jurisdiction over an insurer from the British Isles). Louisiana courts have similarly declined to exercise personal jurisdiction where an out-of-state

8

insurer lacked business contacts with Louisiana and where the insured was not a resident of Louisiana. *See Ford v. Calo*, 602 So. 2d 787 (La. Ct. App. 4th Cir. 1992) (refusing to permit the exercise of personal jurisdiction where the Georgia insurer lacked business contacts with Louisiana and the insured was a Mississippi resident); *Hall*, 416 So. 2d at 230 (finding no personal jurisdiction based on an insurance contract with non-resident); *Jones*, 398 So. 2d 10 (finding no "minimum contacts" in direct action where the foreign insurer had no offices, employees or agents in Louisiana but where it insured the decedent who died in Louisiana).

The Tenth Circuit case *OMI Holdings, Inc. v. Royal Insurance Co.*, 149 F.3d 1086 (10th Cir. 1998), is highly instructive regarding the reasonableness of asserting personal jurisdiction over an insurer from a *foreign nation*. The defendants were insurers in a foreign country who – like Allied World Bermuda here – had no license to conduct business in the state, maintained no offices in the state and employed no agents in the state. *Id.* at 1089. Immediately recognizing that there were insufficient contacts to establish general jurisdiction, the Tenth Circuit held that there was no sufficient basis for specific jurisdiction either, because forcing the foreign insurer to litigate in the foreign forum would be unreasonable and inconsistent with the notions of "fair play and substantial justice." *Id.* at 1098. *See also TH Agriculture & Nutrition, LLC v. ACE European Group Ltd.*, 416 F. Supp. 2d 1054 (D. Kan. 2006) (dismissing for lack of personal jurisdiction an action against foreign excess insurers based on limited contacts), *aff'd* 488 F.3d 1282 (10th Cir. 2007).

In this case, Plaintiffs' underlying lawsuit against M/I Homes, Inc. and M/I Homes of Tampa, LLC clearly does not arise out of any contacts Allied World Bermuda has had with Plaintiffs or with Louisiana, because Allied World Bermuda has had no contacts whatsoever with Plaintiffs and its contacts with M/I Homes were not in Louisiana or anywhere else in the United States. Allied World Bermuda has been improperly named in this proceeding because it issued a policy in

Bermuda through a London insurance broker to an Ohio builder for projects in Florida and other states, but not Louisiana. Furthermore, Allied World Bermuda did not direct activities at residents of Louisiana. (*See generally* DeGiulio Aff.) The Insureds, M/I Homes, Inc. and M/I Homes of Tampa, LLC, do not maintain any offices in Louisiana, and neither one is located in Louisiana. *See Ford*, 602 So. 2d 787; *Jones*, 398 So. 2d 10. In addition, Allied World Bermuda has only a duty to indemnify, not a duty to defend, so Allied World Bermuda would never be required to provide a defense to any insured in Louisiana. *See Hall*, 416 So. 2d at 229-230 (distinguishing between insurance contracts for indemnification, which do not sustain personal jurisdiction, and those that provide defense of liability). In light of these circumstances, Allied World Bermuda would never "reasonably anticipate being haled into court there." *See Burger King*, 471 U.S. at 475; *see also Stuart*, 772 F.2d at 1194 (finding that limited contacts with the forum state through interstate commerce failed to support an inference of purposeful availment).

      B.     ALTERNATIVELY, THIS COURT SHOULD COMPEL THE ARBITRATION OF ANY DISPUTE WITH ALLIED WORLD BERMUDA

          1.     Allied World Bermuda Has a Contractual Right to Arbitration of "Any and All Disputes" Arising Out of or Related to its Policy.

The policy issued by Allied World Bermuda to M/I Homes, Inc. requires that any dispute, controversy or claim arising out of or relating to the policies be finally and fully determined in an arbitration in Hamilton, Bermuda. The arbitration clause provides as follows:

> Any and all disputes arising under or relating to this Policy, including its formation and validity, shall be finally and fully determined in Hamilton, Bermuda under the provision of The Bermuda International Conciliation and Arbitration Act 1993 (exclusive of the Conciliation Part of such Act), as may be amended and supplemented, by a Board composed of three arbitrators to be selected for each controversy as follows. . . .

*See* Exhibit B - Allied World Bermuda Policy, at Endorsement No. 2.

10

If Plaintiffs seek to bind Allied World Bermuda to any coverage position, they must pursue a coverage determination from an arbitration panel in Hamilton, Bermuda. To the extent Plaintiffs seek a determination of the Insured's (M/I Homes, Inc.'s) rights to coverage under the policy issued by Allied World Bermuda, they seek a "direct benefit" from that policy, and Plaintiffs must abide by all of the terms and conditions of the policy, including the arbitration provision.

2. The New York Convention Mandates the Enforcement of Allied World Bermuda's Arbitration Agreement.

The arbitration provision in the policy of Allied World Bermuda falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 3 (hereinafter "New York Convention"), which is an international treaty that guarantees citizens of signatory countries the right to enforce agreements to arbitrate disputes. Because the New York Convention has been expressly adopted by the United States Congress, it serves as a basis of original federal court jurisdiction when invoked by a party entitled to its protection. *See* 9 U.S.C. §201 *et seq*. "Convention Act"). Congress's purpose and intent in enacting the Convention Act was "to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). The New York Convention entered into force in the United States on December 29, 1970. Hence, the United States is a Contracting State to the New York Convention. Bermuda is bound by the New York Convention pursuant to the United Kingdom's Instrument of Accession and subsequent extension to Bermuda.

Congress expressly incorporated the New York Convention into federal law through the Federal Arbitration Act ("FAA"). The FAA envisions federal jurisdiction to govern the enforcement of arbitration agreements, and of arbitral awards made pursuant to such agreements. *Base Metal*

11

*Trading Ltd. v. OJSC Novokuznetsky Aluminum Factory*, 28 F.3d 208, 212 (4th Cir. 2002); *see I.T.A.D. Assocs. v. Podar Bros.*, 636 F.2d 75, 76 (4th Cir. 1981); *Jain v. de Mere,* 51 F.3d 686, 688-89 (7th Cir. 1995).

Article II of the New York Convention sets forth the responsibilities of Contracting States. This Article states:

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

3. The court of a Contracting State, when seized of an action in a matter in respect to which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed. (emphasis added)

Pursuant to Section 202 of the New York Convention, "an arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the New York Convention." 9 U.S.C. § 202.

Pursuant to Section 203 of the New York Convention:

> an action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203. Consequently, the FAA mandates the enforcement of the New York Convention in United States courts. "By its terms, the Federal Arbitration Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to

12

proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 218.

The arbitration agreement in the policy of Allied World Bermuda, quoted above, clearly calls for an arbitration in Hamilton, Bermuda – a signatory of the New York Convention. Moreover, the agreement is set forth as a clause in a commercial contract which arises out of a legal relationship which is not entirely between citizens of the United States. For these reasons, among others, the arbitration clause within the policy of Allied World Bermuda falls plainly under the New York Convention, as contemplated by 9 U.S.C. §202.

The Fifth Circuit generally favors construing arbitration clauses in favor of arbitration:

> The Convention contemplates a very limited inquiry by courts when considering a motion to compel arbitration:
>
> 1) is there an agreement in writing to arbitrate the dispute; in other words, is the arbitration agreement broad or narrow;
> 2) does the agreement provide for arbitration in the territory of a Convention signatory;
> 3) does the agreement to arbitrate arise out of a commercial legal relationship;
> 4) is a party to the agreement not an American citizen?

*Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1144 (5th Cir. Tex. 1985) In *Sedco*, the Fifth Circuit also noted that "as a general rule, whenever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration." *Id.*

The Fifth Circuit has cited U.S. Supreme Court language favoring arbitration with approval, "There is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity". *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, (1991)). *See Lim v. Offshore Specialty Fabricators, Inc.,* 404 F.3d 898, 905-906 (5th Cir. La. 2005) ("given the strong federal policy in favor of international arbitration agreements in general . . .

Plaintiffs do not meet the 'high burden of proof' necessary to show public policy renders the arbitration clause unreasonable."); *McDermott Int'l v. Lloyds Underwriters of London*, 944 F.2d 1199, 1207-1209 (5th Cir. La. 1991) (discussing the history, application, and similarities of the Convention and the FAA).

As contemplated by 9 U.S.C. §205, the subject matter of this case relates to an arbitration agreement falling under the New York Convention insofar as Plaintiffs seek to bind Allied World Bermuda to any determination of coverage by a Louisiana Court. *See*, *Acosta v. Master Maintenance & Constr., Inc.,* 452 F.3d 373 (5th Cir. 2006). In these circumstances, Allied World Bermuda's arbitration clause must be enforced.

      3.    The doctrine of direct benefits estoppel requires that Plaintiffs, even as non-signatories, arbitrate their claims.

If the Court concludes that Plaintiffs have succeeded in bringing a proper claim against Allied World Bermuda, which they have not, the Court must compel arbitration of this dispute pursuant to Allied World Bermuda's policy. Where a contract contains a broad clause that requires arbitration of all disputes arising out of the contract, and where the claimant's lawsuit relies on the substance or existence of a contract, a court must enforce the arbitration clause on the claimant despite the fact that the claimant was not a signatory to the contract. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen*, 206 F.3d 411 (4th Cir. 2000).

In *International Paper*, a purchaser of industrial equipment brought a lawsuit against the manufacturer on the basis of the contract between the *distributor* of the equipment and the manufacturer, which contained an arbitration clause, but to which the plaintiff purchaser was not a signatory. The federal district court in West Virginia stayed the litigation, and the district court subsequently granted the defendant manufacturer's motion to enforce the arbitral award. The

14

plaintiff purchaser appealed on the basis that it was not a party to the contract containing the arbitration clause.

On appeal, the Fourth Circuit held that the doctrine of equitable estoppel was an exception to the signatory rule and required arbitration of the dispute with the manufacturer. *Id.* at 417. Furthermore, it observed that a party should be estopped from asserting the lack of signature on a written contract when that party's action relies on the provisions of the same contract. *Id.* In the arbitration context, a non-signatory is estopped from refusing to comply with the arbitration clause when it receives a "direct benefit" from a contract containing the clause. *Id.* at 418. Ultimately, because the purchaser's "entire case hinge[d] on its asserted rights under the [distributor-manufacturer] contract[,]" the purchaser could not seek to enforce those contractual rights without being subject to the arbitration requirement. *Id*.

The Fifth Circuit has also recognized that direct benefits estoppel may bind a non-signatory to an arbitration agreement. *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514 (5th Cir. Tex. 2006). "Direct-benefit estoppel involves non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Id.* at 517-518. Non-signatories can "embrace" a contract by (1) knowingly seeking and obtaining "direct benefits" from the contract, or (2) by seeking to enforce the terms of the contract or asserting claims that must be determined by reference to the contract. *See Id*. at 517-520. Clearly, Plaintiffs have "embraced" Allied World Bermuda's policy to the extent they seek from this Court a determination of coverage. Moreover, the Fifth Circuit, in *Todd v. S.S. Mut. Underwriting Ass'n (Berm.) Ltd.,* recently concluded that even direct action plaintiffs, which Plaintiffs herein are not, can be compelled to arbitrate despite the fact that they are not parties to the pertinent insurance policy. 601 F.3d 329 (5th Cir. La. 2010). The Fifth

Circuit acknowledged that its prior rulings to the contrary have been overruled by the U.S. Supreme Court in *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896 (U.S. 2009).

If Plaintiffs are permitted to maintain their action against Allied World Bermuda based upon the excess policy issued to M/I Homes, Inc., Plaintiffs must be subject to the arbitration provision in that policy under the theory of direct benefits estoppel. By seeking to bind Allied World Bermuda to a declaration concerning coverage, Plaintiffs seek to enforce contractual rights under the policy. This they cannot do while at the same time avoiding the arbitration clause in the same policy.

As the *Hellenic Inv. Fund* case demonstrates, the Fifth Circuit has enforced arbitration provisions against non-signatories of contracts who, like Plaintiffs, seek benefits under a contract. Accordingly, if the Court does not dismiss the lawsuit against Allied World Bermuda for any of the reasons discussed above, the arbitration clause in Allied World Bermuda's policy should be applied to Plaintiffs, and they should be compelled to arbitrate their claims pursuant to the policy terms.

IV.   CONCLUSION

For all of the foregoing reasons, Allied World Bermuda respectfully requests that this Court issue an order dismissing the Complaint against it based upon a lack of personal jurisdiction. In the alternative, Allied World Bermuda respectfully requests that this Court issue an order compelling the arbitration of any claims against Allied World Bermuda pursuant to the mandatory arbitration provision in the policy issued by Allied World Bermuda.

Dated March 24, 2011.

Respectfully submitted,

ALLIED WORLD ASSURANCE COMPANY, LTD

By Counsel

___/s/ Thomas P. Anzelmo_____  _____
Thomas P. Anzelmo, Esq.
McCRANIE, SISTRUNK, ANZELMO, HARDY,
   McDANIEL & WELCH LLC
3445 N. Causeway Boulevard, Suite 800
Metarie, LA 70002
Telephone No. (504) 831-0946
Facsimile No. (504) 831-2492

Of Counsel
James D. Wangelin, Esq.
Michael B. Satz, Esq.
Sedgwick, Detert, Moran & Arnold LLP
One North Wacker Drive, Suite 4200
Chicago, IL 60606-2841
(312) 641-9050

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Allied World Assurance Company, Ltd's Motion to Dismiss Plaintiffs' Complaint Pursuant To Rule 12(b)(2) of the Federal Rules of Civil Procedure, or in the alternative, to Compel Arbitration has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was previously electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, in accordance with the procedures established in MDL 2047, on this 24th day of March, 2011.

_____/s/ Thomas P. Anzelmo_____
Thomas P. Anzelmo, Esq.