**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | ) | CASE NO. 2:09-MD-02047 |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | SECTION L |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | JUDGE FALLON |
| | ) | MAG. JUDGE WILKINSON |
| *Amato v. Liberty Mut. Ins.*, et al. | ) | |
| (2:10-cv-00932) (E.D. La.) | | |

**FCCI COMMERCIAL INSURANCE COMPANY**
**AND FCCI INSURANCE COMPANY'S BRIEF IN SUPPORT OF THEIR**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

COME NOW Defendants, FCCI COMMERCIAL INSURANCE COMPANY and FCCI

INSURANCE COMPANY, (collectively here referred to as "FCCI"), by and through the

undersigned counsel of record, and file this, their memorandum of law in support of their Motion

to Dismiss Plaintiffs' Omnibus Class Action Complaint (V) (individually referenced hereinafter,

"Complaint") and Plaintiffs' Amended Omnibus Class Action Complaint (V) (individually

referenced hereinafter, "Amended Complaint") (hereinafter collectively "Complaints") pursuant

to Federal Rule of Civil Procedure 12(b)(2) and show the Court the following:

**STATEMENT OF FACTS**

Plaintiffs filed the Complaints "mandating coverage by the respective Insurance

Company Defendants for all damages and remedies under the pertinent insurance policies for

which the distributors, suppliers, importers, exporters, brokers, builders, developers, contractors,

and installers (the "Insured Defendants") for whom the Plaintiffs have standing are liable."

(Complaint[1] p. 2).  Plaintiffs are various homeowners who name the FCCI Defendants, among many other insurance company defendants, in these Complaints.  (Complaint p.1, ¶¶ 411-412). Plaintiffs assert that the named insurance company defendants, including FCCI, issued insurance policies under which an insured defendant named in the Plaintiffs' Complaint is a named or additional insured.  (Complaint ¶ 555).  Plaintiffs assert these insurance company defendants provide coverage for the claims set forth in Plaintiffs' Complaint.  (Complaint ¶ 555).  Therefore, Plaintiffs assert that each insurance company defendant is liable for the damages allegedly caused by defective Chinese drywall.  (Complaint ¶¶ 553, 555).

The Complaints allege that the drywall "designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold by the 'Insured Defendants'" emitted sulfides and other noxious gases (or "off-gases").  (Complaint ¶¶ 542, 546).  Plaintiffs allege the sulfides and other noxious gases have caused corrosion and damage to personal property such as HVAC systems, refrigerators, televisions, personal computers and other metal surfaces and property and that exposure to sulfide and other noxious gases caused health problems.  (Complaint ¶¶ 543-44).

Additionally, Plaintiffs seek damages including the costs of inspection; costs and expenses necessary to remedy, replace and remove the Chinese drywall and other property that has been replaced; lost value or diminution of property value; damages associated with personal injury; medical monitoring, compensatory damages and punitive damages.  (Complaint pp. 128-29, ¶ 550-551).

---

[1] For efficiency and readability, throughout this Memorandum, FCCI cites to Plaintiffs' Omnibus Class Action Complaint (V) when it refers to page numbers, paragraph numbers and schedules or exhibits.

Plaintiffs identify insurance policies that were allegedly sold by FCCI to named "Insured Defendants" included in Plaintiffs' Complaints in Schedule 1. (Complaint ¶ 380, Schedule 1). Plaintiffs fail to indicate where such policies were sold, issued or delivered. Additionally, Plaintiffs incorrectly name installers and/or suppliers as FCCI insureds. (Complaint, Schedule 1, pp. 2-5, 7-10; See attached hereto as Exhibit "A," the Affidavit of Rupert L. Willis, ¶ 2).

The undisputed jurisdictional facts relevant to this Motion include:

1.      The FCCI Defendants are Florida corporations with their principal place of business in Florida. (Complaint, ¶¶ 411-12; the Affidavit of Rupert L. Willis, ¶ 3).

2.      The specific plaintiffs who allege claims against actual FCCI "insured defendants" are not citizens of the State of Louisiana. (Complaint, Schedule 1, pp. 6-7).

3.      Neither FCCI Insurance Company nor FCCI Commercial Insurance Company has collected any premiums for any business written in Louisiana. (Affidavit of Rupert L. Willis, ¶ 5).

4.      Neither FCCI Insurance Company nor FCCI Commercial Insurance Company has ever authorized any insurance agent to write business on their behalf in Louisiana. (Affidavit of Rupert L. Willis, ¶ 6).

5.      Neither FCCI Defendant maintains an office in Louisiana. (Affidavit of Rupert L. Willis, ¶ 7).

6.      Neither FCCI Insurance Company nor FCCI Commercial Insurance Company has any employees within the State of Louisiana. (Affidavit of Rupert L. Willis, ¶ 8).

7.      Neither FCCI Insurance Company nor FCCI Commercial Insurance Company issues or delivers insurance policies in Louisiana. (Affidavit of Rupert L. Willis, ¶ 8).

3

8.      Neither FCCI Insurance Company nor FCCI Commercial Insurance Company markets their insurance policies in Louisiana.  (Affidavit of Rupert L. Willis, ¶ 8).

9.      Neither FCCI Insurance Company nor FCCI Commercial Insurance Company has ever had any rates on file with the Louisiana Department of Insurance.  (Affidavit of Rupert L. Willis, ¶ 5).

10.     The FCCI Defendants issued insurance policies only to the following entities named as insureds in Plaintiffs' Amended Omnibus Class Action Complaint (V):  Banner Supply Company Port St. Lucie, LLC and Residential Drywall, Inc.  (Affidavit of Rupert L. Willis ¶ 2).

11.     The FCCI policies under which Plaintiffs claim the named FCCI insured Defendants are covered were issued by Florida corporations (FCCI Insurance Company and FCCI Commercial Insurance Company) to Florida corporations (Banner Supply Company Port St. Lucie, LLC and Residential Drywall, Inc.) and insured only construction by those insureds in Florida.  (Affidavit of Rupert L. Willis ¶ 3; Complaint ¶ 476;).

12.     National Trust Insurance Company's ("National Trust") Contract with National Loss Control Management ("NLCM") ended Sept 13, 2007.  (See attached hereto as Exhibit "B" a true and accurate copy of FCCI's Amended Responses to Plaintiffs' Interrogatories it filed in *Pate v. American International Specialty Lines Insurance Co.*, No. 09-7791 (E.D. La.)).

13.     National Trust does not and has never maintained any offices in Louisiana.  (Ex. B.)

14.     National Trust does not have nor has it ever had any employees within the State of Louisiana.  (Ex. B.)

4

15.     National Trust does not write, issue or deliver insurance policies in Louisiana. (Ex. B.)

16.     National Trust does not market insurance policies in Louisiana.  (Ex. B.)

17.     National Trust has never had any rates on file with the Louisiana Department of Insurance.  (Ex. B.)

As will be set forth below, FCCI Defendants lack any of the traditional "minimum contacts" a court must rely upon to exercise personal jurisdiction over a nonresident defendant; therefore, Plaintiffs' Complaints must be dismissed as to FCCI as a matter of law.

## ARGUMENT & CITATION TO AUTHORITY

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), this Court must consider the allegations set forth in Plaintiffs' Amended Complaint as true, unless those allegations are refuted by defendant's affidavit.  *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir. 1990).  When nonresident defendants, such as the FCCI Defendants, move to dismiss for lack of personal jurisdiction, the plaintiff has the burden of establishing the Court's personal jurisdiction.  *See Telephone Elec. Corp. v. Southern Pacific Telecomm. Co.*, 98 F.3d 1338 (5th Cir. 1996) (*citing Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

FCCI is not subject to the jurisdiction of this Honorable Court; therefore, Plaintiffs' Complaints must be dismissed as to the FCCI Defendants.

## A.     This Court Cannot Assert General Personal Jurisdiction Over FCCI; Therefore, Plaintiffs' Complaints Must Be Dismissed

In filing this case in this Court, the Plaintiffs attempt to invoke federal jurisdiction. Louisiana's long-arm statute provides that the exercise of Louisiana's long-arm jurisdiction over

a nonresident is to the fullest limits permitted under the Due Process Clause of the Fourteenth

Amendment consistent with "the Constitution of this state and the Constitution of the United

States."  La. R.S. 13:3201(B); *Ruppert v. Geo. Kellett & Sons*, 996 So.2d 501, 505 (5th Cir 2008)

(*citing Superior Supply Co. v. Assoc. Pipe and Supply Co.*, 515 So.2d 790, 792 (La. 1987)).  As

such, "under the express terms of the present long-arm statute, the sole inquiry into jurisdiction is

a one-step analysis of the constitutional due process requirements." *Id*, 996 So. 2d at 505-06.

## 1.     Plaintiff Fails to Satisfy the Constitutional Due Process Requirements; Therefore, the FCCI Defendants Must Be Dismissed.

"Due process requirements are satisfied when the non-resident defendant has certain

minimum contacts with the forum state such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice."  *Hogue v. State Farm Fire and Cas. Co.*,

2009 WL 2525751 (E.D. La. 2009).  The required degree of "minimum contacts" can arise in

two ways:

> When a cause of action arises out of a defendant's purposeful contacts with the forum, minimum contacts are found to exist and the court may exercise its "specific" jurisdiction.  Even a single, substantial act directed toward the forum can support specific jurisdiction.  Where a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum, however, due process requires that the defendant have engaged in "continuous and systematic contacts" in the forum to support the exercise of "general" jurisdiction over that defendant …. [C]ontacts of a more extensive nature are required.

*Asarco*, 912 F.2d at 786 (*citing Dalton*, 897 F.2d at 1361-62 (citations omitted)).  *See also*

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Helicopteros Nacionales de Columbia*,

*S.A. v. Hall*, 466 U.S. 408 (1984).

The determination of whether a nonresident defendant has sufficient minimum contacts with the forum state to subject it to personal jurisdiction initially depends upon whether the nonresident has "purposefully availed" itself of the privilege of conducting business in the forum state, "thus invoking the benefits and protections of its laws." *Hogue*, 2009 WL 2525751 at \*4 (*citing Wilton Jones v. Touche Ross & Co.*, 556 So.2d 67 (La. App. 4th Cir. 1989) (*quoting Hansen v Denckla*, 357 U.S. 235 (1958)).  A nonresident defendant's "purposeful availment" of a foreign forum must be such that the defendant "should reasonably anticipate being haled into court" in the forum state, and ensures that the nonresident defendant will not be haled into a jurisdiction "solely as a result of a random, fortuitous or attenuated contact, or by the unilateral activity of another party or a third person." *See Asahi Metal Industry Co., Ltd. V. Superior Court of California*, 480 U.S. 102 (1987); *Burger King Corp.,* 471 U.S. at 475.

The degree of a nonresident defendant's "minimum contacts" with the forum state is critical, since the type of personal jurisdiction a court may exercise over said nonresident defendant depends upon the type of contacts the nonresident defendant has with the forum state. *Asarco*, 912 F.2d at 786 (*citing Dalton*, 897 F.2d at 1361-62)*; see also Helicopteros*, 466 U.S. at 414.  If the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action, the jurisdiction is said to be "specific."  If the claims are not directly related to the nonresident defendant's contact with the forum state, but the nonresident defendant's contacts with the forum state are both "continuous and systematic," then jurisdiction is said to be "general" in nature.  *Wilson v. Belin*, 30 F.3d 644, 647 (5th Cir. 1994).

2.      **The FCCI Defendants Do Not Possess Such "Minimum Contacts" with**
**Louisiana so as to Subject Them to Personal Jurisdiction.**

The FCCI Defendants had nothing to do with Chinese Drywall or the construction of any homes.   Therefore, Plaintiffs' claims do not arise from, and are not directly related to, the underlying cause of action.   That lack of causal connection precludes this Court from exercising specific personal jurisdiction over the FCCI Defendants.   Therefore, if personal jurisdiction exists, it must be general in nature.   For general jurisdiction to exist, the FCCI Defendants contacts with Louisiana must be "systematic and continuous" in nature.   *See Belin*, 20 F.3d at 647.

As to FCCI, none of the factors that generally evidence "purposeful availment" of a forum are present in this case.   Therefore, the FCCI Defendants are not subject to the jurisdiction of this Court.   *See*, *e.g.*, *Telephone Elec. Corp.*, 98 F.3d 1338 (exercise of personal jurisdiction over nonresident defendant is proper where nonresident of Louisiana had discussions and negotiations leading up to agreement conducted in Louisiana, repeated meetings following execution of agreement in Louisiana, and nonresident defendant's office in Louisiana provided a variety of services related to the continued operation of the joint enterprise).   *But see Bearry v. Beech Aircraft Corp.*, 818 F.2d 370 (5th Cir. 1987) (no personal jurisdiction where nonresident defendant was not qualified to conduct business in forum state, had no employees in forum state, sold goods to forum state only through contracts entered into and executed in other states and accepted all deliveries from forum state via vendors in other states); *Dalton*, 897 F.2d at 1362-63 (nonresident defendant took care to ensure all boat charters entered into, and payment remitted to, Ohio; no systematic and continuous contacts); *Tsaossidis v. State Farm Mut. Auto. Ins. Co.*,

2009 WL 3448133 at *3 (nonresident defendant not licensed to do business in Louisiana, no evidence it ever defended a lawsuit in Louisiana, accident took place in state other than Louisiana, and no evidence nonresident defendant ever conducted business in Louisiana or entered into any contractual relationships in Louisiana).

As set forth in the affidavit of Rupert Willis, Executive Vice President and Chief Regional Officer for the FCCI Defendants, neither of the FCCI Defendants is licensed to conduct business in Louisiana or to sell insurance in Louisiana. Neither of the FCCI Defendants has ever sold a policy of insurance in Louisiana or collected a premium for a policy sold to an insured in Louisiana. Neither FCCI Insurance Company nor FCCI Commercial Insurance Company has ever authorized any insurance agent to write business on their behalf in Louisiana. Neither FCCI Defendant maintains an office in Louisiana. No entity owned or operated by any FCCI Defendant maintains an office in Louisiana. Neither FCCI Defendant has any employees with the State of Louisiana, issues or delivers insurance policies in the State of Louisiana, advertises or markets their insurance policies in the State of Louisiana, or collects premiums from any insured for any risk within the State of Louisiana. No policy of insurance issued by the FCCI Defendants to the subcontractors identified in Plaintiffs' Complaints were ever negotiated, delivered, or entered into in the State of Louisiana.

The FCCI Defendants have shown that they are not subject to this Court's exercise of personal jurisdiction over them, and Plaintiffs' Complaints should be dismissed as a matter of law as to the FCCI defendants.

**B.**     **Any Limited Contacts National Trust Has with Louisiana Are Insubstantial and Do Not Create General Personal Jurisdiction as to FCCI in Louisiana.**

Even if the Court deems it appropriate to consider National Trust's few and attenuated contacts to Louisiana, those contacts are not substantial enough to subject FCCI to general personal jurisdiction in Louisiana. The level of contacts constitutionally required differs substantially for general and specific jurisdiction. *See, e.g.*, *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colorado*, 615 F.3d 364, 368 (5th Cir. 2010) ("To show the type of 'continuous and systematic' contact required for general jurisdiction, a plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed for specific jurisdiction."). Specific jurisdiction can be satisfied when a single contact gives rise to litigation. *See Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990) ("Even a single, substantial act directed toward the forum can support specific jurisdiction."). General jurisdiction, by contrast, requires contacts that are not only continuous and systematic, but also substantial. *See Cent. Freight Lines,* 322 F.3d at 381 ("Even if APA's contacts with the state of Texas have been, in some sense, 'continuous and systematic,' APA's activities, *in toto*, are clearly not substantial enough to justify subjecting APA to suit in the Western District of Texas based on a theory of general personal jurisdiction.").

A defendant is only subject to general jurisdiction in the state in which it has its principal place of business. *See Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 447-48 (1952). The Supreme Court and Fifth Circuit both read *Perkins*, the only case in which the Supreme Court held that a defendant was subject to a state's general jurisdiction, as limiting general jurisdiction to a defendant's principal place of business. *See Keeton v. Hustler*

10

*Magazine, Inc.*, 465 U.S. 770, 780 n.11 (1984) ("[In Perkins,] the company's files were kept in Ohio, several directors' meetings were held there, substantial accounts were maintained in Ohio banks, and all key business decisions were made in the state. *In those circumstances, Ohio was the corporation's principal, if temporary, place of business so that Ohio jurisdiction was proper even over a cause of action unrelated to the activities in the state*." (Emphasis added); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374-75 (5th Cir. 1987) (holding that general jurisdiction is only available if the defendant's contacts "sum to the general business presence found to exist in *Perkins*.").  Limiting general jurisdiction to a defendant's principal place of business makes intuitive as well as legal sense given that general jurisdiction extends to cases in which a state's only interest in the litigation is in regulating the general affairs of the defendant. *See id.* at 375-377.

The Supreme Court recently held that a corporation's principal place of business is limited "to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  Under that test, FCCI's principal place of business is clearly in Florida, not Louisiana.  Even under the more liberal tests that prevailed before *Hertz Corp.*, however, FCCI's contacts with Louisiana do not come close to establishing that Louisiana is FCCI's principal place of business.  At best, National Trust's contacts show that a related company sold some worker's compensation policies in Louisiana for a three-to-six year period.  (*See* Dkt. No. 31-33.)  However, National Trust does not and has never maintained any offices in Louisiana.  National Trust does not have nor has ever had any employees within the State of Louisiana.  National Trust does not write, issue or deliver insurance policies in Louisiana.  National Trust does not market insurance policies in

Louisiana.  National Trust has never had any rates on file with the Louisiana Department of Insurance.  (*See* Ex. B.)  These contacts are far from being substantial.

This evidence merely shows that at one time National Trust, an entity affiliated with FCCI, had some contact with Louisiana.  Even if such contacts were enough to establish specific jurisdiction over FCCI if, for example, the case arose out of those contacts which it did not, National Trust's contacts are not substantial enough to establish *general* jurisdiction over FCCI.  The contacts do not establish that Louisiana is the principal place of business of National Trust or FCCI.  *See Keeton*, 465 U.S. 770, 780 & n.11 (holding that the defendant's contacts were enough to establish specific jurisdiction, even though they were not substantial enough to establish general jurisdiction under *Perkins*); *Cent. Freight Lines*, 322 F.3d at 381-82 (same).  Therefore, this Court should dismiss FCCI as it is not subject to general jurisdiction in Louisiana.

**C.   National Trust's Contacts with Louisiana Cannot Be Imputed to FCCI; Therefore the FCCI Defendants Do Not Have Substantial Contacts with Louisiana.**

As stated above, because the FCCI Defendants, in their own right, lack continuous and systematic contacts with Louisiana, the only way that the FCCI defendants could be subject to the jurisdiction of this Court is via National Trust's conduct in Louisiana.  However, National Trust's worker's compensation business in Louisiana up until 2007 is not a substantial contact which can be imputed to the FCCI Defendants in order to create jurisdiction over FCCI.

Only in limited circumstances may a court assert general jurisdiction over a non-resident company based on the imputed contacts of an affiliated company.  *See e.g. DP Solutions, Inc. v. Rollins, Inc.*, 34 Fed. App'x 150 (5th Cir. 2002).  The mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction; the foreign parent

12

corporation is not subject to the forum state's jurisdiction simply because its subsidiary is present or doing business in the forum state. *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250 (U.S. 1925).

In those few instances where the conduct of a subsidiary corporation is sufficient to exercise jurisdiction over a parent corporation, the focus is on control. "Although jurisdiction over a subsidiary does not automatically provide jurisdiction over a parent ... where the parent totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over the parent as well." *Patin v. Thoroughbred Power Boats Inc.,* 294 F.3d 640 (5th Cir. 2002) (quoting *Minnesota Mining & Mfg. Co. v. Eco Chem Inc.,* 757 F.2d 1256, 1265 (Fed.Cir.1985)).

Here FCCI does not control the day to day operations of National Trust. FCCI Insurance Company owns all of the outstanding stock in FCCI Insurance Group, Inc. (FIG), a Florida stock holding corporation. FIG in turn owns all the outstanding stock of National Trust, an Indiana corporation (formally a Tennessee corporation). National Trust wrote only workers compensation coverage in Louisiana. It never wrote any liability coverage in Louisiana. The FCCI policies under which Plaintiffs claim coverage were issued by Florida corporations (FCCI Insurance Company and FCCI Commercial Insurance Company) to Florida corporations (Residential Drywall, S D & Associates, Inc. and Swedberg Enterprises d/b/a Florida Drywall) and insured only construction by those insureds in Florida. The FCCI Defendants provided, not workers compensation coverage, but liability coverage.

Furthermore, no entity related to any FCCI affiliated company (including FCCI Insurance Company, FCCI Commercial Insurance Company, FIG, National, and FCCI Services, Inc.)

13

retained any right to control and exercised no control over the operations of NLCM, who served as the general agent for National Trust. No employee of NLCM was an employee of FCCI Insurance Company, FCCI Commercial Insurance Company, FIG, National Trust, or FCCI Services, Inc. (Affidavit of Rupert L. Willis, ¶11). Any communications between National Trust and its Louisiana insureds, policy holders claimants, or any others, were handled by NLCM.

During this time, FCCI Services, Inc. was providing similar services for FCCI Insurance Company and FCCI Commercial Insurance Company. There was no overlapping ownership, control or management between NLCM and FCCI Insurance Company, FCCI Commercial Insurance Company, FIG, National Trust, or FCCI Services, Inc. (Affidavit of Rupert L. Willis, ¶ 13). Therefore, National Trust's relationship with NLCM had no bearing on the FCCI defendants as FCCI had no control over NLCM nor its agreement with National Trust.

Because there is no evidence that FCCI controlled the day-to-day business decisions of National Trust, there is insufficient evidence for this Court to hold general jurisdiction over FCCI based on National Trust's contacts with Louisiana. *See DP Solutions, Inc. v. Rollins, Inc.*, 34 Fed. App'x 150 (5th Cir. 2002) Thus, the Plaintiffs' Complaints should be dismissed.

**D.** **National Trust Did Not Maintain Sufficient Contacts with Louisiana Up to and Including the Time of Suit and thus there is No Personal Jurisdiction.**

Where a foreign company's contacts with a forum cease before suit is filed, a court may not maintain personal jurisdiction over the corporation if the suit is not related to the corporation's actions. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 877 (7th Cir. 2006) (agreeing with district court that plaintiff did not meet general

personal jurisdiction burden where foreign reinsurer that issued insurance in the U.S. because reinsurer was not doing business in the U.S. at the time suit was filed where the last policy expired in May of 2004 and suit was not filed until fall of 2004); *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002) ("jurisdiction is normally determined as of the date of the filing of the suit"); *Asset Allocation & Mgmt. Co. v. Employers Ins. Co.*, 892 F2d 566, 570 (7th Cir. 1989)(court could not exercise general jurisdiction, defendant's continuous and systematic contacts "must continue up to the time of suit."). *Repository Tech. v. Sys. Consultants, Inc.*, No. 02-C-8640WL 21148340 (N.D. Ill. May 16, 2003) (holding that general personal jurisdiction did not exist over foreign corporation because it ceased doing business in the state a little over a year prior to filing of suit).[2]

"[T]he appropriate period for evaluating a defendant's contacts will vary in individual cases.  In general jurisdiction cases, 'district courts should examine a defendant's contacts with the forum state over a period that is reasonable *under the circumstances – up to and including the date the suit was filed* – to assess whether they satisfy the 'continuous and systematic' standard.'"  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569-570 (2d Cir. 1996) (emphasis added).  There is very little case law specifically discussing the analysis of the reasonableness of a determined time frame.  However, at a minimum, it is clearly established that

---

[2] *See also Buckingham, Doolittle & Burroughs, LLP v. Kar Kare Auto. Group, Ins.*, 987 So. 2d 818 (Fla. Dist. Ct. App. 2008)(foreign corporation was not doing business in the state recently enough to the time of filing of suit to subject it to general personal jurisdiction, where corporation had been doing business in the forum state 18 months before suit filed.); *Potts v. Dyncorp, Inter., LLC*, 465 F. Supp. 2d 1254, (M.D. Ala 2006)(finding relevant time period to determine general personal jurisdiction over an individual began at time person moved out of the state until the time suit was filed) *Arch Aluminum & Glass Co. v. Haney*, 964 So. 2d 228 (Fla. Dist. Ct. App. 2007) (holding that the Florida long arm statute language "is engaged in substantial…activity" means "currently" engaged); *but see Singer v. Unibilt Dev. Co.*, 43 So.3 d 784 (Fl. Dist. Ct. App. 2010) (finding general personal jurisdiction over corporation who had ceased doing business in state prior to suit because breach of contract claim in the suit occurred contemporaneously with corporation's exodus from state and involved that contract claim).

for a court to assert general personal jurisdiction, the defendant's contacts must be continuous, systematic and substantial ***up to and including*** the time of the filing of the complaint.  (emphasis added)  *Id*.; *Wild v. Subscription Plus, Inc*, 292 F.3d 526, 528 (7th Cir. 2002) ("jurisdiction is normally determined as of the date of the filing of the suit"); *Wilson v. Belin*, 20 F.3d 644, 650-51 (5th Cir. 1994) (holding that the defendant's contacts were not substantial enough for general personal jurisdiction, even if they were continuous).

The Court noted in *Sasnett v. Iowa State Traveling Men's Ass'n*, 90 F.2d 514 (C.A.8 1937):

> The cases appear to hold that merely casual acts do not constitute 'doing business,' that there must be some continuity in the employment of an alleged agent, **or at least that the employment existed at the time of the alleged service**; that the mere insuring of residents of a foreign state, the contract of insurance being made and being carried out in the home state of the association, does not constitute 'doing business' in the state of the insured.

(emphasis added).  The focus is on whether that **conduct occurred at the time of service of process.**  *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250 (1925).

Federal and Florida courts and have failed to find general personal jurisdiction over foreign corporations where the corporation ceased doing business in the state prior to the filing of the law suit.  Here, National Trust ceased doing business in Louisiana in September 2007. From that point forward, no FCCI related entity, nor anyone on FCCI's behalf, maintained substantial contacts with Louisiana to support general personal jurisdiction after it ceased doing business in 2007.

16

1.      __During the Relevant Time Period, National Trust's Contacts with Louisiana were/are not Continuous or Substantial.__

This Court may not assert general personal jurisdiction over National Trust because National Trust did not maintain continuous, systematic or substantial contacts with the forum state up until the time suit was filed.  This *Amato* action was filed in March 2010.  National Trust ceased writing business in Louisiana in 2007, more than 2 years prior to the filing of the *Amato* action.

Even if National Trust's contacts, are imputed to FCCI and are considered continuous, systematic and substantial prior to the termination of National Trust's agency with NLCM, which FCCI maintains they are not, National Trust 's actions after the termination of the agency agreement in 2007 up until the filing of the above-styled action cannot be considered continuous, systematic or substantial.

Since 2007, National Trust has consistently made the decision not to do business in Louisiana.  Because National Trust terminated its business in Louisiana in 2007, its contacts are not "continuous" from 2007 through the time of the filing of the *Pate* action.   After 2007, National Trust directed no business activity toward Louisiana.  In *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228 (1958), the Supreme Court held that there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  "The purposeful availment test 'focuses on the defendant's intentionality,'" and "is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect . . . to be subject to the court's jurisdiction based on these contacts." *Swiss Am. Bank*, 274 F.3d at

623-24.  National Trust's clear intention since 2007 to not direct business activity in Louisiana made it such that it would have no expectation of being hauled into court in Louisiana.

Under Fifth Circuit precedent, the few contacts National Trust had with Louisiana after 2007 are not substantial.  Since 2007, after the termination of the agency agreement with NLCM, National Trust has not written, issued or delivered a single policy in Louisiana; marketed business in Louisiana; had any offices in Louisiana or retained any employees in Louisiana.  (Ex. B) Further, the limited amount of business in which National Trust was involved with in Louisiana was related to the sale of worker's compensation policies only and does not rise to the standard of a "general business presence" in Louisiana.  *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374-75 (5th Cir. 1987) (holding that general jurisdiction is only available if the defendant's contacts "sum to the general business presence found to exist in *Perkins*.").

The amount of claims National Trust reported for both Louisiana *and* non-Louisiana insureds for 2007, 2008 and 2009 is a mere 13, 11 and 3 respectively.  (Ex. D)  The Fifth Circuit has already established this amount of claims, 27 claims over 3 years, is not sufficiently substantial to assert general personal jurisdiction.  *See Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010) (payment of 53 claims over a three year period to Louisiana citizens is not continuous and systematic contact with Louisiana where defendant had no offices or other accounts in Louisiana, noting that the Fifth Circuit had found general jurisdiction lacking where a defendant's forum contacts were even "more significantly substantial").  Based on this Court's own analysis in *Choice Healthcare*, under these facts it cannot hold general jurisdiction over FCCI.

Additionally, in *Johnston v. Multidata Systems International Group*, 523 F.3d 602, 613-14 (5th Cir. 2008), the Fifth Circuit held that Texas did not have personal jurisdiction over a defendant where its sales within the forum were not "substantial or regular;" the defendant did not own, possess or use property in the forum; the defendant did not have an address, bank account or documents there; and was not registered to do business in the forum. The sales which the *Johnston* court failed to find "substantial or regular" constituted less than one percent of testing revenue and a range of sales revenue over four years between .5% and 2.5%. *Id.* National Trust's contacts with Louisiana after 2007 are less substantial than that of the defendant in *Johnston* described above: National Trust did not own, possess or use property in the forum; did not have an address, bank account or documents there; and its premiums were far less substantial than the sales found unsubstantial in *Johnston*. For 2007, 2008 and 2009, the percentage of National Trust's premium to residents/employers of Louisiana as compared to all FCCI's direct written premiums is: .0487%, .002% and 0%, respectively. (Ex. D.) National Trust's direct written premium to residents of or employers in Louisiana for 2007 is $268,900; for 2008 is $11,286; and for 2009 is $0.00. (Ex. D.) Again, based on this Court's own analysis in *Johnston* where there were far more substantial Louisiana contacts, this Court cannot hold general jurisdiction over FCCI.

Further, the claims National Trust paid after the termination of the agreement in 2007, 2008 and 2009, as stated above, were on business written *before* the termination of the agency agreement with NLCM, but were received after the termination of the agreement. (Ex. D.) In 2009, the premiums collected were on *indirect* business that was written by an agent located in a state *other than Louisiana* for an insured that was (1) located in a state *other* than Louisiana (FL,

19

GA, AL, MS, KY) and (2) did the vast majority of its business *outside* Louisiana but had some has some employees who worked in Louisiana. (Ex. D.) Fifth Circuit precedent is clear: National Trust's contacts after 2007 are not substantial. *See Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.,* 615 F.3d 364, 368 (5th Cir. 2010)*; Johnston v. Multidata Systems International Group,* 523 F.3d 602, 613-14 (5th Cir. 2008).

Although National Trust did not immediately cancel its certificate of authority in Louisiana and still had an agent for service of process in Louisiana, this is not sufficient to subject it to general personal jurisdiction. *Chipman Ltd. v. Thomas B. Jeffrey Co.*, 251 U.S. 373, 40 S.Ct. 172 (1920) (where a corporation no longer does business in the forum state, a court may not hold personal jurisdiction over the corporation who has not yet revoked its agent for service of process); *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992).

This Court cannot ignore established precedent and take National Trust's contacts from 2000-2007 and impute or extend them to the time period up to and including the filing of the *Amato* action (2007- March, 2010). *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund*, 440 F.3d at 877. National Trust overtly and unequivocally terminated its contacts with Louisiana in 2007. It did not "direct activity" toward Louisiana such that it could reasonably consider being hailed into a Louisiana court on a completely unrelated matter. Thus, because neither National Trust, nor any entity affiliated with FCCI, had sufficient contacts with Louisiana during the time up to and including the filing of the *Amato* action, this Court may not assert general jurisdiction over FCCI.

National Trust's contacts are not "continuous" from 2000 through 2010 because it terminated its contract in 2007.  Further, according to Fifth Circuit precedent, National Trust's contacts are not substantial from 2000 through 2010.

>    **2.     National's Contacts with Louisiana Are not Systematic.**

Finally, National Trust's contacts with Louisiana essentially ended when the agency agreement with NLCM terminated in 2007 and certainly any "systematic" contacts terminated in 2007.   After the agency agreement terminated, National Trust did not write business in Louisiana.  After the agency agreement terminated, National Trust did not issue a single policy in Louisiana after 2007.  Thus, any "system" by which National Trust had contacts with Louisiana ended in 2007 with the termination of the agency agreement.  National did not direct substantial business activity to the forum during the time "up to and including" the time of filing of the *Amato* action such that it would expect to be hailed into court in Louisiana.

> **E.     Plaintiffs Cannot Rely on the Fact that this is a Multi-District Litigation to Subject FCCI to General Personal Jurisdiction in Louisiana**

The MDL statute was enacted to allow similar cases to be consolidated in a single forum for resolution of pretrial proceedings.  *See* 28 U.S.C. § 1407.  The statute does not have any substantive effect on the merits of pretrial motions.  *See In re Telectronics Pacing Sys., Inc.*, 953 F. Supp. 909, 914 (S.D. Ohio 1997).  This Court cannot and should not consider the fact that it is sitting as an MDL court to affect the *merits* of FCCI's pretrial motions and assert *general* personal jurisdiction over FCCI because the Court by allowing the MDL statute.  The Court may not factor its MDL status into the personal jurisdictional analysis because 1) nothing in the MDL statute expands the power of a sovereign state to assert jurisdiction over a person; 2) doing so

would subject FCCI to jurisdiction in Louisiana due to the acts of third parties; 3) doing so would improperly rely on the type of claim asserted against the defendant in the general jurisdiction analysis; and finally, 4) doing so would improperly transform the MDL *venue* statute into a national claims administration procedure.   The Court should therefore not consider its MDL status in its personal jurisdiction analysis.

    **1.**    **The MDL Statute Does Not Expand the Jurisdictional Reach of a Sovereign State**

Due process limits on personal jurisdiction, at their most fundamental level, concern the power of a sovereign state to assert jurisdiction over a person.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) ("The concept of minimum contacts . . . acts to ensure that the States through their courts, do not reach beyond the limits imposed on them by their status as coequal sovereigns in a federal system.").  Nothing in the text, history, or purpose of the MDL statute expands the power of Louisiana or any other state to assert jurisdiction over an out-of-state company such as FCCI.  *See In re Showa Denko L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992).  Rather, the MDL statute merely "provides a procedure for transferring cases filed in different districts to a single district court for pretrial proceedings, *nowhere does it expand the jurisdiction of either the transferor or the transferee court.*"  *Id.*  (emphasis added).  When the Court sits as an MDL court, it does not even retain jurisdiction for the duration of the case; the Court loses jurisdiction over transferred cases as soon as pretrial proceedings are concluded.  *See* 28 U.S.C. § 1407(a) ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have previously been terminated[.]").  A

22

statute that does not vest the Court with power to try a case ought not be interpreted as expanding a state's general and unlimited jurisdiction over a defendant.

It would be illogical to say that FCCI, which has its principal place of business in Florida, could be sued in Louisiana if an FCCI-insured subcontractor that operates exclusively in Florida did a poor job painting a house in Florida.  But that is precisely what this Court did when it held that Louisiana has general personal jurisdiction over FCCI.  The only basis for distinguishing this case from that hypothetical is to say that this case is different because the Court is sitting as an MDL court.  If, however, the Court distinguishes the hypothetical case on that basis, it transforms the MDL statute from a pretrial venue statute into one that affects due process limits on state jurisdiction.

2. **General Jurisdiction Cannot Be Based on the Unilateral Acts of Third Parties**

A fundamental principle of due process is that a state's jurisdiction over a defendant cannot be based on the acts of third parties.  *See, e.g.*, *World-Wide Volkswagen*, 444 U.S. at 298-99.  This Court cannot hold that general jurisdiction over FCCI is proper because this Court is sitting as an MDL court.  One of the problems with that reasoning is that this Court is sitting as an MDL court because of the actions of third parties; not the actions of FCCI.  FCCI is involved in Chinese drywall litigation because it sold insurance policies to a few companies, also located in Florida, that installed or sold Chinese-manufactured drywall *in Florida*.  This Court became an MDL court when other companies that installed and sold Chinese-manufactured drywall in other states were sued throughout the country.

FCCI is thus two-levels removed from the actions that created this MDL.  FCCI is one level removed from its insureds that were sued for installing and selling Chinese-manufactured drywall, and its insureds are another level removed from the other companies that performed similar operations in other states, which created the need for the MDL.  If this Court factors in its MDL status, this Court would essentially be holding that it has *general* jurisdiction over FCCI because companies with which FCCI has no relationship were sued on similar grounds as FCCI's insureds.  Holding that FCCI is subject to general jurisdiction in Louisiana because of the random, unforeseeable actions of third-parties-twice-removed violates any notion of fair play and substantial justice.

**F.     In the Alternative, this Court Should Certify the Personal Jurisdiction Question Under 28 U.S.C. § 1292(b), because it Involves a Controlling Question of Law over which there Is a Substantial Ground for Difference of Opinion, and there Is a Significant Likelihood such an Appeal Will Terminate this Litigation as to FCCI Conserving Significant Litigant and Judicial Resources.**

For all the reasons discussed above, FCCI submits that this Court should dismiss FCCI for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  In the alternative, pursuant to Federal Rule of Appellate Procedure 5(a)(3) and 28 U.S.C. § 1292(b), if this Court declines to grant this Motion, FCCI requests that this Court certify it's the question of FCCI's personal jurisdiction for immediate interlocutory appeal by adding this statement to its Order:

> Pursuant to Federal Rule of Appellate Procedure 5(a)(3) and 28 U.S.C. § 1292(b), the Court certifies that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from this Order may materially advance the ultimate termination of the litigation.  The controlling question of law is:

> Whether a Louisiana federal court can assert personal jurisdiction over an insurance company based on claims and insurance policies that have no connection with the forum state, merely because the insurance company has registered to do business with the Louisiana Department of Insurance, and sells other insurance policies to other individuals in Louisiana that have no connection to the claims at issue.

The decision of whether the Court has personal jurisdiction FCCI involves a threshold and potentially dispositive question of law and is therefore particularly appropriate for interlocutory appellate review.[3]   Indeed, the issue of personal jurisdiction is routinely reviewed on an interlocutory basis under Section 1292(b).  *See, e.g., Johnston*, 523 F.3d at 608-09 (noting the appeal arose under 1292(b), and reversing the district court's failure to dismiss for lack of personal jurisdiction); *Bearry*, 818 F.2d at 373 (noting the district court properly certified the personal jurisdiction question under Section 1292(b), and reversing the district court because personal jurisdiction was lacking).

In determining whether to certify a question for interlocutory appeal under 28 U.S.C. § 1292(b), three factors must be met:  (1) there must be a controlling question of law; (2) as to which there is a substantial ground for difference of opinion; and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation.  The advantages of immediate appeal, "increase with the probabilities of prompt reversal, the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling.  *See* Wright, A.R. Miller & E.H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d,* §3930, p. 416 (2010).

---

[3] Whether the Court can properly assert personal jurisdiction over a defendant is subject to a *de novo* review. *Choice Healthcare, Inc.*, 615 F.3d at 367 ("This Court reviews *de novo* a district court's dismissal for lack of personal jurisdiction"); *Johnston*, 523 F.3d at 609 ("We review the personal jurisdiction question here de novo.").

Here, all three factors are met.  First, whether this Court can exert personal jurisdiction over the moving Insurance Company Defendants is clearly a "controlling question of law" as evidenced by the fact this precise issue is routinely certified for interlocutory appeal.  *See, e.g., Johnston*, 523 F.3d at 608-09; *Bearry*, 818 F.2d at 373; *see also* 19 Moore's Federal Practice, § 203.31[2], p. 203-87 (Matthew Bender 3d ed. 2010) ("if resolution of the question being challenged on appeal will terminate the action in the district court, it is clearly controlling"); *see also Stafford vs. Briggs*, 444 U.S. 527, 528 (1980) ("The District Court denied the defendants' motion to dismiss the complaint for lack of personal jurisdiction, improper venue, and insufficiency of process, but certified the questions involved for immediate appeal.").  Second, because the issue is potentially dispositive, an immediate appeal may materially advance the termination of the litigation, and importantly, prevents a massive waste of judicial and litigant resources that would otherwise be unnecessarily expended if this case were to proceed through summary judgment or trial only to be reversed for lack of personal jurisdiction.  *Id.*

Finally, given the controlling precedents of the United States Supreme Court, the Fifth Circuit, and the persuasive and well-reasoned decisions of this Court's sister district courts that have held under facts essentially identical to those presented here that there is no basis for asserting personal jurisdiction, there is a "substantial ground for difference of opinion" regarding this controlling question of law.  FCCI recognizes that this Court recently refused to certify a related question of personal jurisdiction under Section 1292(b), however, this Court's analysis of the issue in that case shows why a different result should be reached here.  *Harch Hyperbarics, Inc. v. Martinucci*, No. 09-7467, 2010 U.S. Dist. LEXIS 124095, at *6-9 (E.D. La. Nov. 9, 2010)

(Fallon, J.).   As this Court noted in *Martinucci*, this factor is met where, as here, any of the following situations are present:

> (1) "there is genuine doubt as to the correct legal standard to be applied";
>
> (2) where "the circuits are in dispute on the question on the Court of Appeals of the circuit encompassing the district court has not spoken on the point";
>
> (3) "where novel or difficult questions of first impression are presented"; or
>
> (4) where there is "divergent application of a legal standard."

*Id.* (citations, quotations, and internal punctuation omitted).   Here, at least three of these situations are presented.   In the event this Court denies FCCI's Motion, it will demonstrate there is genuine doubt about the correct legal standard because, as Justice Kagan recently noted, the United States Supreme Court's precedents strongly suggest that general jurisdiction cannot be found outside of the state of incorporation or principal place of business of an out-of-state corporation.   (*see, supra* n. 2.)   Similarly, the fact that the Supreme Court has accepted certiorari on two personal jurisdiction cases this term further demonstrates the standards are unsettled and the Circuits are in conflict.   *See J. McIntyre Machinery Ltd. v. Nicastro,* U.S., No. 09-1343 (cert. granted 9/28/10 argued and submitted 1/11/2011); *Goodyear Luxembourg Tires SA v. Brown,* U.S., No. 10-76 (cert. granted 9/28/10, argued and submitted 1/11/2011).

Additionally, other district courts within the Fifth Circuit have found general personal jurisdiction lacking under similar facts, thus, this Court's denial of this Motion would demonstrate divergent application of a legal standard.   Indeed, this Court's prior analysis of this issue shows the extreme divergence in the law, with the Fifth Circuit routinely rejecting the application of general personal jurisdiction and this Court (and other district courts) exercising

27

general jurisdiction even where the high standards required by the United States Supreme Court are not met.  (*See generally* Rec. Doc. No. 7356 at 16-17 (collecting nearly half a dozen Fifth Circuit cases holding general jurisdiction was not present, and comparing those to three district court cases where general jurisdiction was found).)

Finally, a decision by the Northern District of Texas from just last year involving an insurer demonstrates a direct conflict between that Court's application of these standards and this Court's prior analysis.  *Compare* Rec. Doc. No. 7356 at 15-23 (holding general personal jurisdiction could be asserted over MCC merely because it was registered to do business in Louisiana and sold minimal unrelated insurance in Louisiana) *with Am. Bank, F.S.B.*, 2010 U.S. Dist. LEXIS 102341, at *11-19 (granting motion to dismiss for lack of personal jurisdiction over insurer because the claims did not arise from any specific contacts with Texas and there was no general jurisdiction even where the insurer was "licensed by the Texas Department of Insurance," issued, sold, and paid claims on insurance policies in Texas, hired and paid Texas attorneys in more than 100 cases in past 10 years, "contracted with Texas-based vendors and paid them more than $25 million over the past five years; purchased almost $400 million worth of Texas municipal bonds, upon which defendant receives over $15,000,000 annually in interest; *and paid over $80,000,000* in claims-related expenses to Texas-based insureds, claimants, adjusters, and others") (emphasis added).  These two decisions cannot be squared, which demonstrates, by definition, that there is a divide within the Fifth Circuit that warrants immediate interlocutory review under Section 1292(b).

28

## CONCLUSION

The FCCI Defendants do not have the required degree of "minimum contacts" with the State of Louisiana sufficient to subject these nonresident defendants, FCCI Commercial Insurance Company and FCCI Insurance Company, to this Court's exercise of personal jurisdiction. Defendants FCCI Commercial Insurance Company and FCCI Insurance Company respectfully request this Court GRANT their Motion to Dismiss Plaintiffs' Omnibus Class Action Complaint (V) and Plaintiffs' Amended Omnibus Class Action Complaint (V) and cast all expenses and costs against Plaintiff, and award to the FCCI Defendants such other and further relief as this Court deems proper and just.

This 24th day of March, 2011.

Respectfully submitted,

GOODMAN MCGUFFEY LINDSEY & JOHNSON, LLP
Attorneys for FCCI COMMERCIAL INSURANCE
COMPANY and FCCI INSURANCE COMPANY

BY:     /s/ ROBERT M. DARROCH
         ROBERT M. DARROCH
         GA State Bar No.:  205490
         STEPHANIE F. GLICKAUF
         GA State Bar No.:  257540
         3340 Peachtree Road NE, Suite 2100
         Atlanta, GA 30326-1084
         Phone:  (404) 264-1500
         Fax:   (404) 264-1737
         rdarroch@gmlj.com
         sglickauf@gmlj.com

         AND

MOULEDOUX, BLAND, LEGRAND & BRACKETT, LLC

By:     /s/ PATRICK E. COSTELLO

29

> PATRICK E. COSTELLO (#26619)
> JACQUES P. DeGRUY (#29144)
> 4250 One Shell Square
> 701 Poydras Street
> New Orleans, Louisiana  70139
> Telephone: 504-595-3000
> Facsimile: 504-522-2121
> pcostello@mblb.com
> jdegruy@mblb.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail *or* by hand delivery and e-mail *and* upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 24th day of March, 2011.

> /s/ PATRICK E. COSTELLO
> PATRICK E. COSTELLO (#26619)
> pcostello@mblb.com