# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY; NATIONWIDE MUTUAL FIRE INSURANCE COMPANY; and NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL NO. 4:10cv00069 |
| THE OVERLOOK, LLC; STEVEN A. MIDDLETON; VISTA MIDDLETON, LLC; and RICKY L. EDMONDS, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendant Ricky L. Edmonds' motion to transfer venue (Docket No. 10), a motion by Plaintiffs to supplement their brief in opposition to the motion to transfer venue (Docket No. 25), and a motion by Plaintiffs for leave to file a letter in lieu of oral argument (Docket No. 36).[1] For the reasons set forth herein, the Defendant's motion to transfer venue is DENIED, and the Plaintiffs' motions are both GRANTED.

---

[1] While the case has been transferred to the Honorable Mark S. Davis in the Newport News Division of the Court (Docket No. 39), the Order transferring the case expressly noted that the Order was not intended to withdraw the previous referrals of non-dispositive motions to this Court.

1

# I. BACKGROUND

Plaintiffs, Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, and Nationwide Property & Casualty Insurance Company (collectively, "Nationwide") filed the instant action seeking declaratory judgment relief relating to certain insurance policies issued to the Defendants—The Overlook, LLC, Steven A. Middleton and Vista Middleton, LLC (collectively, "Overlook"). (Compl. ¶¶ 1, 14, Jan. 19, 2010.) All of the Nationwide Plaintiffs are insurance companies organized and existing under the laws of the State of Ohio, which maintain their principal place of business in the State of Ohio. (Compl. ¶¶ 2–4.) All of the named Overlook Defendants are considered as Virginia residents. (Compl. ¶¶ 6–8.)

Overlook purchased polices from Nationwide relating to the development of a condominium complex named Overlook Townhouses. (Compl. ¶ 14.) Overlook Townhouses is located in Richmond, Virginia. (Compl. ¶ 15.) After completing construction of several units, Overlook offered those units for purchase. (Compl. ¶¶ 16–17.) Overlook sold one of those units to Defendant Ricky L. Edmonds ("Edmonds"), and the sale of that unit forms a part of the underlying basis for this action. (Compl. ¶¶ 21, 24, 27.) Edmonds is also a Virginia resident. (Compl. ¶ 9.)

In May of 2009, Overlook informed Nationwide that certain units in Overlook Townhouses contained so-called "Chinese drywall" that had the potential to emit sulfide gasses that can allegedly cause property damage and personal injury to any inhabitants. (Compl. ¶¶ 20–21; Exhibit 1 to Nationwide's Br. in Opposition to Mot. to Transfer of Venue ["Nationwide's Br."] ¶¶ 11–12, Mar. 29, 2010.) As a result, Overlook proposed to examine these units on an individual basis to determine whether they would require a replacement/reinstallation process.

(Compl. ¶¶ 20–21.) Overlook thereupon advised Nationwide that, per the subject policies, it would seek coverage from Nationwide for "all potential property damage; personal injury; breach of contract; breach of warrant; indemnification; contribution; and any and all other related claims" arising from the use of Chinese drywall in Overlook Townhouses. (Compl. ¶ 23; Sjullie Aff. ¶ 5, March 29, 2010.)

Overlook has currently identified twelve units from Overlook Townhouses adversely impacted by the installation of Chinese drywall. (Compl. ¶ 21.) One of those units belongs to Edmonds. (Compl. ¶ 25.) On September 3, 2009, Edmonds filed suit against Overlook in the Circuit Court for the City of Norfolk, Virginia, alleging that he suffered personal injury and property damage because of the defective Chinese drywall that had been installed in his residence. (Exhibit 1 to Nationwide's Br. ¶¶ 11–12; Exhibit 2 to Nationwide's Br. at 1.) In this action, Edmonds named five defendants purportedly liable for his injuries because of their involvement in the installation process. (Exhibit 1 to Nationwide's Br. ¶¶ 1–10.) All of those defendants are Virginia residents. (Exhibit 1 to Nationwide's Br. ¶¶ 5–10.)

Consistent with its prior notice, Overlook informed Nationwide that it would seek defense and indemnification in the Edmonds lawsuit from Nationwide based on its active policies. (Compl. ¶ 28.) Nationwide agreed to provide defense for Overlook in Edmonds' action, subject to a reservation of rights. (Compl. ¶ 29.) On January 19, 2010, Nationwide brought this action seeking declaratory judgment regarding its obligations, if any, to provide coverage for Overlook's insurance claims under the subject Nationwide policies. (Compl. ¶¶ 31–67.) One of the issues involved in the action is Nationwide's obligation to provide coverage

3

for Overlook in regard to Overlook Townhouses and Edmonds' pending actions. (Compl. ¶¶ 60–65.)

Overlook's situation is not uncommon. Numerous property owners are currently filing lawsuits, or joining class actions against developers, alleging property damage and personal injury as a result of the developers installing defective Chinese drywall in various structures. (Edmonds' Memo in Support of Mot. to Transfer Venue ["Edmond's Memo"] at 2–5, Mar. 8, 2010.) In response to the claims relating to defective Chinese drywall, the Multidistrict Litigation Panel ("MDL") opted to consolidate actions alleging injury from the installation of such drywall in the Eastern District of Louisiana. (Edmonds' Memo at 2.) On February 10, 2010, Edmonds joined other plaintiffs in bringing a products liability class action in the Eastern District of Louisiana seeking relief for alleged damages suffered as a result of defective Chinese drywall. (Exhibit 4 to Nationwide's Br. at 3.) Thereafter, on March 8, 2010, Edmonds filed a motion to transfer venue in the instant action, requesting that this Court transfer the action to the Eastern District of Louisiana so that, presumably, it may be litigated in the same venue as the products liability class action previously filed. (Edmonds' Mot. to Transfer Venue ["Edmonds' Mot."] at 2, Mar. 8, 2010.) On March 19, 2010, Edmonds joined other plaintiffs in filing a second class action in the Eastern District of Louisiana which addressed the disputes related to the insurance coverage of developers that installed the allegedly defective Chinese drywall. (Dunn Aff. ¶ 7, Mar. 29, 2010.) Nevertheless, Edmonds' original action against Overlook in the Circuit Court for the City of Norfolk, Virginia remains pending. (Exhibit 2 to Nationwide's Br. at 1.) The substantive distinction between Edmonds' individual lawsuit in Norfolk, and his first class action lawsuit in the Eastern District of Louisiana, is unclear.

In the meantime, the Court was informed that the MDL Panel is considering ordering (on its own initiative) the transfer of many, if not all, of the so-called Chinese drywall cases to its docket, including this case. Accordingly, this Court stayed all further proceedings (Docket No. 24), with the expectation that a decision from the MDL Panel would be forthcoming in the near future. However, having since been informed that a decision involving this case will not be forthcoming for several weeks; that the MDL Panel has recently declined to transfer similar, but unrelated, insurance coverage actions; desiring an expeditious approach to the litigation; and given the assumption that any discovery could be used in any jurisdiction where the case may be transferred, the Court finds it appropriate to rule on the instant motions at this time.[2]

## II. GOVERNING STANDARD

A district court may transfer a civil action to any other appropriate district court "for the convenience of parties and witnesses, and in the interest of justice . . . ." 28 U.S.C. § 1404(a). Section 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)

---

[2] To date, this Court is aware of three other similar motions in similar litigation in which the underlying claimants sought to transfer the venue of a declaratory judgment action brought by insurance carriers, all of which have been denied or subsequently vacated. See Travco Ins. Co. v. Ward, No. 2:10cv14 (E.D. Va. Mar. 30, 2010); Builders Mut. Ins. Co. v. Dragas Mgmt. Corp, No. 2:09-185 (E.D. Va. Feb. 5, 2010); Gen. Fidelity Ins. Co. v. Foster, No. 9:09-80743 (S.D. Fla. Dec. 2, 2009); Travco is particularly instructive on the matter. There, as here, the plaintiff insurance company filed a declaratory judgment suit requesting the court define its obligation to indemnify and defend the developer defendant in the underlying "Chinese drywall" litigation. Another defendant—the underlying plaintiff in the class action suit—sought to transfer an insurance declaratory judgment action to the Eastern District of Louisiana for the same reasons asserted by Edmonds. The pending class action notwithstanding, the district court noted that "it is by no means clear that the transfer to the Eastern District of Louisiana is in the interests of justice."

(quotations and citations omitted). Accordingly, the decision whether to transfer is committed to the sound discretion of the reviewing court. Koh v. Microtek Int'l Inc., 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). However, as a threshold requirement, the party seeking the transfer bears the burden of establishing that the desired venue is one in which the action "might have been brought." 28 U.S.C. § 1404(a); Inline Connection Corp. v. Verizon Internet Servs, Inc., 402 F. Supp. 2d 695, 699 (E.D. Va. 2005) (quoting Hoffman v. Blaski, 363 U.S. 335, 343 (1960)). The transferee venue is one in which the action "might have been brought" if, at the time of the filing of the action, the district court therein could have exercised personal jurisdiction over the defendants and the district was a proper venue for the action without waiver or consent by the defendants. Kontoulas v. A.H. Robins Co., Inc., 745 F.2d 312, 315 (4th Cir. 1984) (citing Hoffman, 363 U.S. at 342–43); Inline Connection, 402 F. Supp. 2d at 699 (citing Corry v. CFM Majestic Inc., 16 F. Supp. 2d 660, 663 (E.D. Va. 1998)).

Once the party seeking the transfer of venue sufficiently demonstrates that the transferee venue is a proper one—namely, one in which personal jurisdiction over the defendants existed and that would be a proper venue to bring the action at the time it was filed—the court then considers whether transferee venue would be more convenient to the parties and witnesses and otherwise serves the interests of justice. 28 U.S.C. § 1404(a). "In deciding whether to grant transfer pursuant to § 1404(a), this [C]ourt must consider 'the following four factors: (1) the plaintiff's [initial] choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice.'" JTH Tax, Inc., v. Lee, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007) (citing Precision Franchising, LLC v. Coombs, No. 1:06CV1148, 2006 WL 3840334, at *2 (E.D. Va. Dec. 27, 2006); Corry, 16 F. Supp. 2d at 666. Nevertheless, the "party

6

seeking such discretionary transfer 'bears the burden of demonstrating that the balance of convenience among the parties and witnesses is <u>strongly</u> in favor of the forum to which transfer is sought.'" <u>Nossen v. Hoy</u>, 750 F. Supp. 740, 742 (E.D. Va. 1990) (quoting <u>Medicenters of Am., Inc. v. T & V Realty & Equip. Corp.</u>, 371 F. Supp. 1180, 1184 (E.D. Va.1974) (emphasis added)).

### III. THE THRESHOLD REQUIREMENT

Although the transferor court is afforded broad discretion in granting a motion to transfer venue to a location pursuant to § 1404(a), such discretion can only be exercised if the movant sufficiently demonstrates that the desired alternate venue is an appropriate one for the transfer. <u>Inline Connection</u>, 402 F. Supp. 2d at 699 (citing <u>Corry</u>, 16 F. Supp. 2d at 663). Specifically, a transferee district is one in which the action "might have been brought" if, at the time the plaintiff filed the action, the district court in the transferee district could have exercised personal jurisdiction over the defendants and the transferee district would have been a proper venue for the action without waiver or consent by the defendants. <u>Hoffman</u>, 363 U.S. at 342–44. Thus, the movant bears the initial burden of demonstrating that the transferee venue is a permissible one. <u>U.S. Ship Management, Inc. v. Maersk Line, Ltd.</u>, 357 F. Supp. 2d 924, 930 (E.D. Va. 2005) ("To satisfy this threshold prerequisite, the movant must show that venue and personal jurisdiction would have been proper in the transferee forum." (citing <u>Hoffman</u>, 363 U.S. at 342–43)). It is therefore necessary to determine at the outset of this analysis whether Edmonds sufficiently carried the burden of demonstrating that the Eastern District of Louisiana is a district in which the instant action "might have been brought." <u>Hoffman</u>, 363 U.S. at 342–44.

Nationwide argues that it could not have sought its declaratory judgment action in the

7

Eastern District of Louisiana because that court would have lacked personal jurisdiction over the Defendants in the action. (Nationwide's Br. at 9–11.) Nationwide further argues that the Eastern District of Lousiana would have been an improper venue to bring the action pursuant to 28 U.S.C. § 1391 in any event. (Nationwide's Br. at 9–11.) Thus, Nationwide asserts that granting Edmonds' motion to transfer venue is improper as a matter of a law, and that this Court should not even consider whether convenience to the witnesses and parties or the interests of justice favor transfer. (Nationwide's Br. at 9–11.) In this regard, Edmonds does not address the requirement, or otherwise demonstrate, that the Eastern District of Louisiana is a federal district in which the instant action "might have been brought." 28 U.S.C. § 1404(a); Hoffman, 363 U.S. at 342–44.

**A.** **Whether Edmonds sufficiently demonstrated that the district court in the Eastern District of Louisiana could have exercised personal jurisdiction over the defendants in this action at the time it was filed.**

Because there is no federal, so-called, "long-arm statute," a federal district court may only exercise personal jurisdiction over a foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits, and where application of the "long-arm statute" of that jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009) (citations omitted). Thus, such an analysis consists of a two-part inquiry: first, a court must determine whether service of process is authorized by the forum's applicable long-arm statute; and second, whether that service of process comports with Fourteenth Amendment due process standards. Ellicott Mach. Corp. v. John Holland Party, Ltd., 995 F.2d 474, 477 (4th Cir. 1993) (citing English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990)). Stated another way, the relevant inquiry is:

8

(1) whether the applicable long-arm statute "reaches" the defendant; and then (2) whether that "reach" exceeds constitutional grasp. See RZS Holdings AVV v. PDVSA Petroleos S.A., 293 F. Supp. 2d 645, 649 (E.D. Va. 2003).

However, when a state's long-arm statute intends to allow service of process to the full extent permitted by the Due Process Clause—as Louisiana's does— the two-part analysis merges into a single issue in which the constitutional and statutory provisions become coextensive and a bifurcated analysis is unnecessary.[3] Ellicott Mach. Corp., 995 F.2d at 447 (citing Mohamed v. Michael, 279 Md. 653, 657 (1977)). Accordingly, it is only necessary for this Court to begin its analysis by evaluating whether Edmonds sufficiently demonstrated that the Eastern District of Louisiana could have exercised personal jurisdiction over the defendants in this action without offending the due process requirements of the Constitution. Consulting Eng'rs Corp, 561 F.3d at 277.

To satisfy the constitutional due process requirements in the context of the issues here, a defendant must have engaged in sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)). Such an analysis requires a showing that the defendant "purposefully directed his activities at the residents of the forum," and that the plaintiff's cause of action "arise[s] out of" those activities. Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). Such a test protects defendants from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Id. (citing Burger King, 471 U.S. at 475). Likewise, requiring "minimum contacts"

---

[3] Louisiana's long-arm statute is specifically designed to allow service of process to the full extent permitted by the Due Process Clause. Dalton v. R & W Marine, Inc., 897 F.2d 1359, 1361 (5th Cir. 1990) (citations omitted).

prevents a defendant from having to defend himself in a forum where he should not have anticipated being sued. Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that they amount to a surrogate for presence, and thus render the exercise of sovereignty just. Id. (quoting ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997)).

The Fourth Circuit, the immediate controlling authority for this Court, has crafted a three-part test to determine whether a forum's exercise of personal jurisdiction over a nonresident defendant offends due process requirements. Id. at 278. The test requires this Court to evaluate: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. Id. (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)).

As to the first prong of ALS Scan, Inc.'s three-part test, there are several factors that this Court must consider in determining whether a defendant "purposefully availed" itself of the privilege of conducting activities in the forum State. Such factors include: whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant "reached" into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum

10

state would govern disputes; whether the defendant made in-person contact with a resident of the forum regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum. Id. In regards to these essential issues, Edmonds fails to demonstrate, or even discuss, the existence of any fact(s) related to such factors by indicating that the Defendants here "purposefully availed" themselves of the privilege of conducting activities in Louisiana. Such a position renders an analysis of the second and third prong in ALS Scan, Inc. unnecessary, where such issues are not implicated until the first prong has been satisfied. Id.

Accordingly, based on an analysis of the three-prong test as articulated by the Fourth Circuit, Edmonds has failed to satisfy his burden of showing that Eastern District of Louisiana could have exercised personal jurisdiction over the Defendants in this action at the time the action was filed. Based on the evidence presently before the Court, it appears the Eastern District of Louisiana would have, in effect, needed to ignore due process requirements in order to exercise personal jurisdiction over the Defendants in the absence of waiver by the Defendants. As a result, the Eastern District of Louisiana is not a district in which the instant action "might have been brought" as required by § 1404(a). Hoffman, 363 U.S. at 342–44.

**B.  Whether Edmonds sufficiently demonstrated that the district court in the Eastern District of Louisiana would have been a proper venue for Nationwide to bring this action in at the time it was filed.**

Moreover, the Eastern District of Louisiana would not have been a proper venue for Nationwide to bring this action in at the time it was filed for additional reasons. In cases based on federal diversity jurisdiction, venue is only proper in:

11

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). A corporate defendant resides in any district in which it is subject to personal jurisdiction. Id. § 1391(c). Therefore, where § 1391(a)(3) is inapplicable, Edmonds' burden is to demonstrate that the Eastern District of Lousiana was nevertheless a proper venue for this action at the time it was filed pursuant to § 1391(a)(1) or § 1391(a)(2). Hoffman, 363 U.S. at 342–44.

Edmonds does not argue that the Eastern District of Louisiana would have been a proper venue for Nationwide in which to file this action pursuant to §1391(a)(1). Indeed, § 1391(a)(1) requires that the defendants be residents of the forum state, and all of the named defendants in this action are residents of Virginia. Likewise, Edmonds fails to offer any argument that the Eastern District of Louisiana would have been a proper venue for Nationwide to file the action pursuant to § 1391(a)(2). In fact, Edmonds does not articulate any facts that demonstrate a connection between the Eastern District of Louisiana and the acts or omissions forming the basis of this lawsuit. To the contrary, the insurance policies at issue in this action were issued in Virginia and purchased by Virginia residents. The installation of the allegedly defective drywall—the underlying basis of the action—took place at a housing complex in Virginia. Furthermore, of course, Edmonds originally filed his lawsuit against Overlook in a Virginia circuit court.

Indeed, the only connection between Louisiana and the instant lawsuit that Edmonds demonstrates is the two class action lawsuits filed in the MDL action No. 2047.

12

Edmonds filed his first class action lawsuit on February 10, 2010, and the second class action lawsuit on March 19, 2010. Assuming, without deciding, that the lawsuits could create a sufficient connection between the instant action and the Eastern District of Louisiana so as to invoke proper venue there, Edmonds did not file those actions until after Nationwide filed the instant action in this Court. Therefore, "incubation" of those lawsuits in the Eastern District of Louisiana is irrelevant in evaluating whether Edmonds' established the threshold requirement of § 1404(a) because this Court must evaluate whether that court would have been a proper venue for Nationwide to bring this action in the first instance. Id.

Accordingly, the Court concludes that Edmonds failed to carry his burden of demonstrating that the Eastern District of Louisiana would have provided a proper venue for Nationwide to bring this action in at the time it was filed as required by § 1404(a). Id.

C. **Failure to demonstrate Nationwide could establish personal jurisdiction and proper venue in the Eastern District of Louisiana at the time it filed the instant action is grounds to deny Edmonds' motion.**

Because Edmonds has failed to meet § 1404(a)'s threshold requirement of demonstrating that the Eastern District of Louisiana is a district in which the instant action "might have been brought," this Court is precluded from recommending that his motion to transfer venue be granted. Id. at 343–44 ("[T]he power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff."). Therefore, any analysis of whether allowing the transfer would be more convenient for the witnesses and parties or serves the interests of justice is not necessary. Nonetheless,

13

where Edmonds argues that the motion should be granted on the basis of improved convenience to the witnesses and parties, as well as the interests of justice, a brief discussion of such additional factors is warranted for any further review.

### IV. OTHER FACTORS CONSIDERED IN ALLOWING TRANSFER OF VENUE

As noted, Edmonds fails to carry his burden regarding § 1404(a)'s threshold requirement in demonstrating that the Eastern District of Louisiana is a district in which the action "might have been brought." However, even if Edmonds is deemed to have carried that burden, granting his motion to transfer is nevertheless inappropriate. Once a proponent of a motion to transfer venue establishes § 1404(a)'s threshold requirement is met, the court must still analyze whether the transfer should be permitted "for the convenience of parties and witnesses, and in the interest of justice . . . ." 28 U.S.C. § 1404(a). In making the determination, this Court must consider four factors: (1) the plaintiff's [initial] choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice. JTH Tax, 482 F. Supp. 2d at 736 (citing Precision Franchising, 2006 WL 3840334, at *2).

**A.      Nationwide's choice of venue is afforded great weight.**

"'The initial choice of forum, from among those possible, is a privilege given to the plaintiff.'" Reynolds Foil Inc. v. Pai, No. 3:09CV657, 2010 WL 1225620, at *8 (E.D. Va. Mar. 25, 2010) (quoting Medicenters of Am., Inc. v. T & V Realty & Equip. Corp., 371 F. Supp. 1180, 1183–84 (E.D. Va. 1974)). Nationwide elected to bring this action in the Eastern District of Virginia, and that choice is entitled to substantial weight. Id. (quoting Medicenters of Am., Inc., 371 F. Supp. at 1183–84). Therefore, there is a strong presumption in favor of maintaining jurisdiction in the Eastern District of Virginia, and that presumption will be overcome only if the

other factors involved in the analysis considerably outweigh Nationwide's right to choose the forum of its lawsuit and clearly favor transferring the trial elsewhere. Id. (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981)).

**B.      Edmonds fails to show that granting his motion improves witness convenience and access.**

The second factor—witness convenience and access to sources of proof—is "often the most important in balancing for a potential § 1404(a) transfer, but the influence of this factor may not be assessed without reliable information identifying the witnesses involved and specifically describing their testimony." Id. (quoting JTH Tax, 482 F. Supp. 2d at 737) (emphasis added). Therefore, Edmonds "has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience . . . ." Id. (citing Koh, 250 F. Supp. 2d at 636).

Edmonds does not identify a single witness who is inconvenienced by having to appear in Virginia, or who is better accommodated by appearing in Louisiana. Without such information, the Court is unable to conclude that the factor weighs in favor of granting the motion. JTH Tax, 482 F. Supp. 2d at 737. In fact, all of the defendants in this action are residents of Virginia, and that circumstance obviously weighs against Edmonds. Yet, Edmonds fails to even address the issue, and his failure to do so therefore weighs against granting the motion. Reynolds Foil, 2010 WL 1225620, at *8 (quoting Piper Aircraft Co., 454 U.S. at 255); Nossen v. Hoy, 750 F. Supp. 740, 742 (E.D. Va. 1990) ("A party seeking such discretionary transfer 'bears the burden of demonstrating that the balance of convenience among the parties and witnesses is strongly in

15

favor of the forum to which transfer is sought.'" (quoting Medicenters of Am, 371 F. Supp. at 1184)).

C. **Edmonds fails to show that granting his motion improves convenience for the parties.**

When evaluating the convenience of the parties, "the logical starting point is a consideration of the residence of the parties." JTH Tax, 482 F.Supp.2d at 738. In this action, as already noted, all of the named defendants are Virginia residents. Indeed, the only party in this action that is not a resident of Virginia is Nationwide, the plaintiff that has filed the action in this Court. The fact that the majority of the parties to this action reside in Virginia, where the action has been filed, obviously weighs against granting Edmonds' motion. Although Edmonds argues that granting his motion greatly increases convenience to him, because he has filed other actions related to the this action in the Eastern District of Louisiana, "inconvenience to the movant alone will not demonstrate sufficient reason for a [§] 1404(a) transfer and the plaintiff's choice of forum should rarely be disturbed unless the balance of hardships clearly favors transfer." Nossen, 750 F. Supp. at 742 (citing E. Scientific Marketing, Inc. v. Tekna-Seal, Inc., 696 F. Supp. 173, 180 (E.D. Va. 1988)).

Indeed, it is Edmonds' burden to show that the balance of hardships between the parties favor granting his motion. Id. ("A party seeking such discretionary transfer 'bears the burden of demonstrating that the balance of convenience among the parties and witnesses is strongly in favor of the forum to which transfer is sought.'" (quoting Medicenters of Am, 371 F. Supp. at 1184)). Although Edmonds may establish that his personal convenience related to his legal pursuits are greatly enhanced by transferring the instant action to the Louisiana court, he does not address "the balance of convenience among the parties" and explain how granting his motion

16

improves convenience for Nationwide or Overlook. Id. It is difficult to conclude that he could, given that Nationwide issued the policies in question to Overlook in Virginia; the subject matter of those policies is located in Virginia; and that Overlook is located in Virginia. Thus, the Court concludes that Edmonds fails to carry his burden in demonstrating that the "convenience of the parties" factor outweighs the deference due to Nationwide's choice of forum. Reynolds Foil, 2010 WL 1225620, at *8 (quoting Piper Aircraft Co., 454 U.S. at 255)).

**D.      The interests of justice do not clearly support granting Edmonds' motion.**

The final "interests of justice" factor is designed to be broad. JTH Tax, 482 F. Supp. 2d at 736 (quoting Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1259 (E.D. Va.1988)). It encompasses all those issues bearing on transfer, while being distinguished from the other three factors. Id. (citing Precision Franchising, 2006 WL 3840334, at *6). Relevant considerations in evaluating the "interests of justice" are the pendency of a related action; the court's familiarity with the applicable law; docket conditions; access to premises that might have to be viewed; the possibility of unfair trial; the ability to join other parties; and the possibility of harassment. Id.

Edmonds does not argue that all of the above considerations related to the interests of justice are "in play." Rather, he argues that two specific considerations related to the interests of justice support transferring this action to the Eastern District of Louisiana, namely: (a) the district court there will be more familiar with the case and the issues involved in it; and (b) the case will be handled more efficiently. (Edmonds' Memo at 12.) However, Edmonds does not demonstrate how the court in the Eastern District of Louisiana is better equipped than this Court to interpret insurance policies issued to Virginia businesses and pertaining to Virginia properties.

17

In fact, he only asserts that interests of justice are served by granting the motion to transfer venue. See JTH Tax, 482 F. Supp. 2d at 739 (discussing how the absence of a clear indication that one district court is better equipped than another to deal with the substantive legal issues of a case weigh against granting a motion for a transfer of venue (quoting Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp., 227 F. Supp. 2d 581, 585 (E.D. Va. 2002)). As to Edmonds' argument that the lawsuit would be more efficiently managed in the Eastern District of Louisiana, there is evidence to suggest that the case would actually be resolved in a less timely and efficient manner if his motion were granted. (Exhibit A to Edmonds' Memo at 3.) Additionally, docket conditions, "'although somewhat relevant, . . . receive minor consideration'" and carry little weight in the analysis. JTH Tax, 482 F. Supp. 2d at 739 (quoting Cognitronics Imaging Sys., Inc., v. Recognition Research Inc., 83 F. Supp. 2d 689, 699 (E.D. Va. 2000)). Therefore, Edmonds fails to carry his burden in demonstrating that the "interests of justice" factor considerably outweighs the deference due to Nationwide's choice of forum. Reynolds Foil, 2010 WL 1225620, at *8 (quoting Piper Aircraft Co., 454 U.S. at 255).

**E.      Granting a discretionary transfer of venue in this action would be inappropriate even if Edmonds could demonstrate the threshold requirement of § 1404(a).**

Edmonds has failed to overcome the presumption in favor of maintaining the present action in the Eastern District of Virginia by demonstrating how the convenience of the witnesses, convenience of the parties, and interests of justice <u>considerably outweigh</u> Nationwide's right to control the forum of its lawsuit or <u>clearly favor</u> transferring the trial in the Eastern District of Louisiana. Accordingly, even if Edmonds had demonstrated the Louisiana court is one in which the action "might have been brought," the relevant factors bearing on this Court's discretion to transfer the action to Louisiana also weigh against doing so. JTH Tax, 482 F. Supp. 2d at 736

(citing Precision Franchising, 2006 WL 3840334, at *2). Thus, § 1404(a)'s threshold requirement notwithstanding, this Court finds, within its discretion, that the motion to transfer venue should be denied.

## V. MOTIONS TO SUPPLEMENT AND FILE

Nationwide's motion to supplement merely seeks to provide the District Court's opinion addressing the motion to transfer venue in Travco Ins. Co. v. Ward as an exhibit for the Court to consider in evaluating the instant motion. The motion to supplement is granted because the Court's review of Travco Ins. Co. v. Ward assisted it in forming its opinion on the matter. Similarly, Nationwide's motion to file a letter in lieu of oral argument is granted because the Court considered Nationwide's letter in preparing this opinion. Additionally, neither motion is opposed by Overlook or Edmonds.

## VI. CONCLUSION

In conclusion, and for the reasons discussed herein, Defendant Edmonds' motion to transfer venue (Docket No. 10) is DENIED and Plaintiffs' motions (Docket Nos. 25 and 36) are GRANTED.

An appropriate Order shall issue.

                              /s/
                              Dennis W. Dohnal
                              United States Magistrate Judge

Richmond, Virginia
Dated: June 17, 2010