# EXHIBIT 4

**Plaintiff Profile Form - Residential Properties**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE MANUFACTURED DRYWALL  MDL NO. 2047
PRODUCTS LIABILITY LITIGATION  SECTION: L
THIS DOCUMENT RELATES TO: ALL CASES  JUDGE FALLON
MAG. JUDGE WILKINSON

**For Internal Use Only**
File Number
Date Received

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.
The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.
To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

## Section I. Property Information

Name Property Owner: Ricky Lee Edmonds
Address of Affected Property: 801 Holly Street, Richmond, VA 23220

Is this Property:* [X] Residential  [ ] Commercial  [ ] Governmental
Name of Person Completing this Form: Ricky L. Edmonds
Is above your primary residence? (•) Yes  ( ) No
Mailing Address (if different): 7509 Woodside Lane, Apartment 24, Lorton, VA 22079
Phone: (804) 343 - 7425

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Circle one: [X] Owner-Occupant  [ ] Owner Only  [ ] Renter-Occupant
Represented By: Richard J. Serpe, P.C.
Address: 580 E. Main Street, Suite 310, Norfolk, VA 23510
Phone: (757) 233 - 0009
Case No. /Docket Info: 2:10-cv-00361

## Section II. Insurance Information

Homeowner/ Renter Insurer: USAA
Policy #: USAA-020305444 90A
Agent: Unknown
Address: 9800 Fredericksburg Road, San Antonio, TX 78288
Phone: (800) 531 - 8722

+ Attach Copy of Insurance Declaration Page - See Attached

## Section III. Claimant Information

| Name of Claimant | Dates Occupied Move-in | Dates Occupied Leave | Gender | Date of Birth | Are you claiming personal Injuries?* Circle One | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| Ricky L. Edmonds | 7/26/06 | 03/04/10 | M / F (M) | 10/03/64 | Yes / No (Yes) | Owner-Occupant |
|  | / / | / / | M / F | / / | Yes / No |  |
|  | / / | / / | M / F | / / | Yes / No |  |
|  | / / | / / | M / F | / / | Yes / No |  |
|  | / / | / / | M / F | / / | Yes / No |  |
|  | / / | / / | M / F | / / | Yes / No |  |
|  | / / | / / | M / F | / / | Yes / No |  |
|  | / / | / / | M / F | / / | Yes / No |  |
|  | / / | / / | M / F | / / | Yes / No |  |
|  | / / | / / | M / F | / / | Yes / No |  |

* Personal injuries include claims for mental anguish and medical monitoring.

EdmondsR00001

Plaintiff Profile Form - Residential Properties

### Section IV. Inspection Information

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?  ● Yes *    No ○

1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection? **Building Science, Inc.**
1.2. When did the inspection take place? 6/03/09    Arthur Greason 9/2/10

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?  ● Yes    No ○
2.1. If "Yes" to Question 2.0. Section IV. Who made this determination? **Building Science, Inc.**
2.2. When was this determination made? 6/03/09    Engineering Systems, Inc. 9/2/10

### Section V. Drywall Information

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Taishan Gypsum | MFG Taihe China | Throughout |
|  | Venture Supply |  |

### Section VI. Home Information

| | | | Yes | No |
|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 1712 | | | |
| Estimated Sq. Ft. of Drywall | 3078 | Occupied ** | ☒ | ☐ |
| Height of Interior Walls | 9 ft | Year-round | ☒ | ☐ |
| Number of Bedrooms: | 3 | Summer | ☐ | ☐ |
| Number of Bathrooms: | 2.5 | Winter | ☐ | ☐ |

#### Plumbing System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | ☐ | ☒ | ☐ |
| Copper Piping | ☒ | ☐ | ☐ |
| Copper Fixtures | ☒ | ☐ | ☐ |
| Other Fixtures | ☒ | ☐ | ☐ |
| Were repairs made to the plumbing system? | Yes | | |
| Dates: November 2006 | | | |

#### Electrical System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | ☒ | ☐ | ☐ |
| Switches | ☒ | ☐ | ☐ |
| Main Panel | ☒ | ☐ | ☐ |
| 2nd Panel | ☐ | ☐ | ☒ |
| Exposed Copper Wires | ☒ | ☐ | ☐ |
| Were repairs made to the electrical system? | ☐ | ☒ | |
| Dates: N/A | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper - See Attached

### Section VII. Construction/Renovation Information

Date Range for New Home Construction: (Month/Day/Year)
Start Date: - / - / -     Completion Date: 7/26/06
Move In Date: 7/26/06    Date Acquired Home: 7/26/06

Date Range for Renovations: (Month/Day/Year)
Start Date: - / - / -     Completion Date: - / - / -
Move In Date: - / - / -

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | ☐ | ☐ | ☒ |
| First Floor: Full Wall of drywall replaced | ☐ | ☐ | ☒ |
| Second Floor: Any drywall replaced | ☐ | ☐ | ☒ |

### Section VIII. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:
Address: Steven Middleton
Overlook, LLC
9030 Stony Point Parkway
Richmond, VA 23235

Phone: (804) 327 - 9500

+ Attach Copy of Construction/Renovation Contract - N/A
+ Attach Copy of New Home Warranty Declaration - See Attached

### Section IX. Drywall Installer

Drywall Installer's Name: The Porter-Blaine Corp.
Address: 1140 Azalea Garden Road
Norfolk, VA 23502

Phone: (757) 857 - 0282

### Section X. Drywall Supplier

Drywall Supplier's Name: Venture Supply, Inc.
Address: 1140 Azalea Garden Road
Norfolk, VA 23502

Phone: (757) 855 - 5433

\* Yes - screening inspection. Testifying experts and reports will be disclosed in accordance with the Court's schedule.
\*\* Home was occupied year round prior to the discovery of Chinese drywall. It is now vacant.

EdmondsR00002

Plaintiff Profile Form - Residential Properties

### Section XI. Verification of Plaintiff Profile Form

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
|---|---|---|---|
| [signed] | 08/18/10 | | |
| | | | |
| | | | |

EdmondsR00003

MESSAGES | SAVED ITEMS | LOG OFF

USAA® USAA.COM IS A SECURE SITE

**MY ACCOUNTS** | PRODUCTS & SERVICES | ADVICE & PLANNING    Search

Payments | Transfers | My Profile | My Documents | My Offers | Forms | Claims

## My Accounts / Account Summary

Homeowners Policy Term 02/01/2009 - 02/01/2010    Nickname    August 27, 2009 |    Print

### Account Overview

View Another Account

★★★★ 3.8
Rate This Product

| | | | |
|---|---|---|---|
| Policy Number[1] | USAA— 020305444 90A | Total Annual Premium | $349.26 |
| Named Insured | RICKY L EDMONDS | | |
| Address | 801 HOLLY ST | | |
| | RICHMOND, VA 23220 - 6502 | | |

Read All Reviews

**NEED EXPERT HELP?**

1-800-531-USAA (8722)

**I WANT TO...**
Nickname This Account
View My Documents
View My Auto & Property Bill
Report a Claim
View More Services

**COVERAGE** | DEDUCTIBLES | DISCOUNTS | HOME CHARACTERISTICS | MORTGAGEE

| Coverage Type | Coverage Limit |
|---|---|
| **Dwelling** | $152,000 |
| **Other Structures** | $15,200 |
| **Personal Belongings** | $114,000 |
| **Loss of Use** | Unlimited |
| **Personal Liability - Each Occurrence** | $1,000,000 |
| **Medical Payments to Others** | $1,000 |

**LEARN MORE**
Buying a Home
The Claims Process

SHAREUSAA
» Invite family and friends to join.

ABOUT USAA | NEWSROOM | PRIVACY & SECURITY | MOBILE    Contact Us   Site Map   FAQs   Glossary   Site Terms

Copyright © 2009, USAA.

[1] The insurer of your property can be determined by looking at the alpha prefix in your policy number. The prefix USAA means you are insured by UNITED SERVICES AUTOMOBILE ASSOCIATION; the prefix CIC means you are insured by USAA CASUALTY INSURANCE COMPANY; the prefix GIC means you are insured by USAA GENERAL INDEMNITY COMPANY; the prefix GAR means you are insured by GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY; the prefix LLYD means you are insured by USAA TEXAS LLOYD'S COMPANY; and the prefix LTD means you are insured by USAA LIMITED.

ENT-2007-1730






FRONT ELEVATION

MAIN LEVEL PLAN

UPPER LEVEL PLAN

"UNIT D3 – 801"

2 STORY PORCH
3 BEDROOM, 2 1/2 BATHS
1,712 HEATED SQUARE FEET

THE OVERLOOK
RICHMOND, VIRGINIA

COMMONWEALTH PROPERTIES, LLC.

THE DEVELOPER RESERVES THE RIGHT TO ALTER AND/OR IMPROVE THE PRODUCT AT ANYTIME. ACTUAL DIMENSIONS ARE SUBJECT TO VARIATIONS DUE TO CONSTRUCTION TOLERANCES.

EdmondsR00005

ENCL - 3

## THE OVERLOOK CONDOMINIUM
### PURCHASE AGREEMENT

THIS AGREEMENT is made on ___March 22___, 20 06, by and between

___Ricky L. Edmonds___

___1536___ ___Oldbury Rd___ ___Midlothian___ ___VA___ ___23113___
street address — city — state — zip

telephone: residence ___804 794 4081___ office ___804 986 6039___ ("Purchaser")
and THE OVERLOOK, LLC ("Declarant"), a Virginia limited liability company, with its principal office at 9030 Stony Point Parkway, Suite 500, Richmond, VA 23235, and BROOKS & INNES, INC., d/b/a RE/MAX COMMONWEALTH ("Listing Broker"), a Virginia corporation, for the purchase of a condominium unit in The Overlook Condominium ("Condominium") located in the City of Richmond, Virginia and the right to use any limited common element parking space appurtenant thereto.

### R E C I T A L :

R-1. Declarant is the developer of the Condominium pursuant to the provisions of Chapter 4.2 of Title 55 of the Code of Virginia (1950), as amended ("Condominium Act").

R-2. The Condominium has been registered (or will be registered prior to confirmation of this Agreement by Purchaser) pursuant to the provisions of the Condominium Act.

R-3. Purchaser wishes to purchase the Condominium Unit and, if indicated in Section 1(b), the right to use the limited common element parking space and the options described herein.

### A G R E E M E N T

In consideration of the payment of the Deposit to Declarant, it is mutually agreed as follows.

1. **Basic Terms.**

    (a) **Defined Terms.** Capitalized terms used herein without definition shall have the meanings specified for such terms in the condominium instruments. Otherwise, terms not defined herein shall have the meanings specified for such terms in Section 55-79.41 of the Condominium Act.

    (b) **Terms of Purchase.** Declarant shall sell to Purchaser and Purchaser shall purchase from Declarant:

    Condominium Building Number _____
    Unit Street Address ___801 Holly St___ ("the Unit")    $ ___349,950___

    Options shown on the attached Schedule B    +$ ___Ø___

    Purchase Price
    (exclusive of settlement costs, prorated
    amounts of prepaid items and increases
    made pursuant to Section 19(c), the "Purchase Price")    =$ ___349,950___

Such Purchase Price being payable as follows:

    Deposit    $ ___3,500___

    Mortgage Proceeds (if any)    $ ___TBD___

    Balance Due
    (exclusive of settlement costs,
    prorated amounts of prepaid items and
    increases made pursuant to Section 19(c))    $ ___346,450___

2. **Deposit.** Declarant acknowledges receipt of the Deposit in the amount of $ ___3,500___, in cash or by personal check. The Deposit shall be held in an escrow account by Listing Broker pursuant to Section 55-79.95 of the Condominium Act. At settlement, the Deposit shall be paid to the person conducting the settlement hereunder for delivery to Declarant. Upon default hereunder or upon any termination of this Agreement, the Deposit shall be paid to the person lawfully entitled thereto pursuant to the terms of this Agreement. If settlement is not completed for any reason whatsoever, no credit for interest on the Deposit shall be due, paid or credited to Purchaser.

3. **Financing.** Purchaser hereby elects the following method of financing, pursuant to the terms of this Agreement (Purchaser to designate applicable financing):

    ☐ No financing arrangement (all cash)
    ☒ Financing arranged through lender of Purchaser's choice

    This Agreement shall be in no way contingent upon financing and Purchaser assumes full responsibility to initiate and pursue all steps necessary to obtain the funds required for settlement. Further, Purchaser shall provide proof of Purchaser's financial ability to pay the Balance Due at settlement to Declarant within ten (10) days after the date of this Agreement. If Purchaser fails to provide proof satisfactory to Declarant, Declarant at its sole option, may terminate this Agreement and cause the Deposit to be returned to Purchaser. If Purchaser thereafter fails to pay the Purchase Price due at settlement, then this Agreement, at the sole option of Declarant and in addition to all other remedies available to Declarant hereunder, may be terminated and the Deposit retained by Declarant. The lender customarily will require a loan origination fee from Purchaser. Declarant will not pay any loan origination or discount fee. Purchaser shall pay all lender's fees. Declarant is not obligated to pay any fees charged by a lender.

4. **Amendment of Condominium Instruments.**

    (a) **Restrictions.** Declarant reserves the right, upon notice to Purchaser, prior to settlement hereunder, to make such modifications, additions or deletions in or to any of the condominium instruments as may be approved or required by any permanent lender, secondary mortgage market agency, public authorities or the title company insuring title, provided that none of the same shall: (i) change the Common Element Interest of the Condominium Unit as fixed in the Declaration (other than as permitted by the Declaration and the Condominium Act) or increase the proportion of the common expenses to be borne by the Condominium Unit being sold hereunder; (ii) increase the Purchase Price hereunder (except as provided in Section 19(c)); (iii) require a material physical modification of the layout or location of the Condominium Unit; or (iv) decrease the financial obligations of Declarant hereunder. Notwithstanding the foregoing, the Declarant may amend the condominium instruments to correct or supplement any erroneous or incomplete information based upon an objectively verifiable fact in accordance with Section 55-79.71F of the Condominium Act.

EdmondsR00006

(b) **Development Rights.** Notwithstanding anything contained herein to the contrary, Declarant reserves the right, and Purchaser agrees to the exercise thereof, to amend the condominium instruments to expand or contract the Condominium or to convert any convertible land or convertible space at any time permitted by law.

5. **Public Offering Statement / Declarant's Rights.**

    (a) **Public Offering Statement.** Purchaser hereby acknowledges receipt of a copy of the Public Offering Statement for the Condominium, including the condominium instruments and all other attached exhibits and schedules. Purchaser hereby ratifies and agrees to be bound by the provisions of the foregoing documents, as each such document may be duly amended from time to time.

    (b) **Declarant's Rights.** Declarant shall retain or acquire title to each condominium unit not sold to any other person. Declarant retains the right to enter into leases with any third parties for the occupancy of any condominium unit so retained or acquired by Declarant and not sold to any other person.

6. **Delivery.**

At settlement, Declarant shall deliver the unit and the appurtenances thereto substantially in accordance with the Plats and Plans, as the same may be modified and amended from time to time, with all fixtures, appliances and equipment to be provided by Declarant installed as set forth on the Schedule of Finishes attached as Schedule A hereto and the Schedule of Purchaser's Options attached as Schedule B hereto. Purchaser acknowledges that measurements shown on the Plats and Plans are approximate and actual dimensions may not be exactly as shown. Declarant shall not be required to install or provide any fixtures or appliances not actually installed in the unit at the time of inspection pursuant to Section 7 or otherwise agreed in writing to be installed by Declarant. Declarant shall have the right to make minor changes in the dimensions of any portion of the Condominium and to substitute substantially equivalent materials for any of the same set forth in any sales or other documents and to make such modifications or substitutions as may be required by any governmental authorities asserting jurisdiction over the Condominium, or any construction or permanent lender or as may be reasonably necessary. Any dispute involving delivery of the unit in accordance with Schedule A and Schedule B hereto and the Plans shall be submitted to the architect for the project whose decision shall be binding.

7. **Inspection.** Declarant shall notify Purchaser not less than five days prior to settlement that the unit is ready for inspection. Upon receipt of such notice, Purchaser shall promptly arrange for an appointment with a representative of Declarant to make the inspection. At such inspection, the Unit Inspection Form set forth as an exhibit to the Public Offering Statement shall be completed and signed by Purchaser and by a representative of Declarant. Purchaser shall attend such inspection and participate in completing the Unit Inspection Form prior to settlement. Failure of Purchaser to arrange such an appointment within the five-day period or failure of Purchaser to keep the appointment shall constitute full acceptance of the Condominium Unit by Purchaser.

8. **Settlement.** Subject to the provisions of Paragraph 19 hereof, Declarant shall complete the Unit, and settlement shall occur, on or before the tenth (10th) business day following Declarant's receipt of the certificate of occupancy for the Unit. Declarant shall give notice to Purchaser specifying a date, which date shall not be less than ten (10) nor more than thirty (30) days following the giving of such notice, on which settlement shall take place. Settlement may, at Declarant's option, be conducted individually or in groups, and shall take place on the date and at the time and place specified in the notice or such other date, time and place as the parties may agree upon in writing. Declarant shall deliver to Purchaser a good and sufficient special warranty deed at settlement conveying the Condominium Unit to Purchaser subject to the conditions in Section 23(b) hereof. Purchaser shall pay the Balance Due at settlement (in addition to causing the lender, if any, to pay the Mortgage Proceeds) to the order of Declarant or as Declarant may direct. Declarant thereupon will deliver possession of the Condominium Unit to Purchaser.

9. **Title.**

    (a) **Quality.** Title to the Condominium Unit shall be subject to the terms and conditions of the condominium instruments. The Condominium Unit shall otherwise be conveyed free from encumbrances except for utility and other easements of record and as provided for herein. Title shall be good and marketable and insurable at regular rates, subject, however, to covenants, easements and restrictions of record or to be recorded prior to settlement, (including without limitation all such covenants, easements and restrictions set forth in the condominium instruments and the association documents for The Overlook Condominium) and to liens or other matters over which the title company agrees to insure.

    (b) **Defects.** If Declarant is unable because of any defect in title to convey title as provided herein at settlement, Declarant is expressly released from all liability for damages, and Declarant, at Declarant's sole option, may either: (i) correct the defect if the same can be done within a reasonable time or (ii) terminate this Agreement and cause the Deposit to be returned to Purchaser. If Declarant determines that legal action is necessary to remedy defects in title, such action shall be taken promptly by Declarant at its own expense, whereupon the time specified herein for full settlement by Purchaser will thereby be extended for the period necessary for such prompt action.

10. **Expenses of Closing.**

    (a) **Settlement Costs.** If settlement is made by such attorneys or agents as Declarant may designate, then Declarant shall pay the cost of attorney settlement charges (other than charges by Purchaser's attorney). If, however, Purchaser elects to make settlement through any other attorney or agent, Declarant shall pay only the state grantor's tax. Purchaser shall pay all other expenses, including without limitation owner's and mortgagee's title insurance premiums, all recording costs, and mortgage insurance premiums then due.

    (b) **Prepayments and Escrows.** Notwithstanding anything contained herein to the contrary, Purchaser shall reimburse Declarant at settlement for prepaid real estate taxes, assessments and utility charges, if any, on the Condominium Unit, all of which shall be prorated as of the date of settlement. If required by the lender, Purchaser shall prepay at settlement any mortgage insurance premiums, interest for up to one month and a reasonable percentage of the estimated annual real estate taxes. If a separate real estate tax bill has not been issued for the Condominium Unit prior to settlement, Purchaser shall comply with such arrangements as may be established by Declarant to assure payment of such taxes.

    (c) **Association Assessments.** Purchaser will also deposit with Declarant at settlement for transmittal to the Unit Owners Association of the Condominium: a portion of the monthly installment of the common expense assessment and limited common element parking space charges, if applicable, against the Condominium Unit, prorated to the date of settlement.

11. **Risk of Loss.** Purchaser does not acquire any equitable ownership of or title to the Condominium Unit under this Agreement. The risk of loss or damage by fire or other casualty is assumed by Declarant until the deed of conveyance is delivered to Purchaser at settlement.

12. **Furnishings and Models.** Furniture, wall coverings, furnishings or the like as shown in or about any model unit are for display purposes only and are not considered a part of such unit for the purposes of this Agreement. Further, the location of wall switches, thermostats, chases, plumbing, electrical outlets and similar items may vary from unit to unit and may not be as shown in any model unit. Any floor plans, sketches or sales drawings shown to Purchaser other than those which are a part of the Plans or the Public Offering Statement are for display purposes only and may not be exactly duplicated. The Condominium Unit is being sold unfurnished and will contain only the appliances and equipment installed at the time of inspection of the Condominium Unit by Purchaser. Declarant will finish and equip the Unit only in accordance with Schedule A and Schedule B hereto. Any scale model or drawing of the project is only an artist's conception and is subject to change.

13. **Custom Finishing; Access.** Items in the nature of "custom finishing," decorating or the like and/or any deviations from the Plans shall be the sole responsibility of Purchaser and shall be performed only after settlement and possession by Purchaser. Purchaser shall not bring any furniture or other property onto the Condominium nor, except for the inspection pursuant to Section 7, shall Purchaser have access to the Condominium Unit or the building containing the Condominium Unit prior to settlement and delivery of possession to Purchaser.

14. **Default by Purchaser.** If Purchaser shall fail to pay the Balance Due at settlement, or shall fail to perform any of Purchaser's other obligations hereunder, Declarant may terminate this Agreement by giving notice to Purchaser and may retain the Deposit and all other sums paid to Declarant as liquidated damages. The parties hereto shall thereupon be released from any further liability or obligation hereunder. Thereafter, Declarant shall be free to sell the Condominium Unit to any third party, and Declarant shall be under no obligation to account to Purchaser for any part of the proceeds of such sale.

EdmondsR00007

15. **Assignment**. This Agreement is personal to Purchaser and Purchaser may not assign this Agreement without the prior written consent of Declarant. Any purported assignment of this Agreement in violation hereof shall be voidable at the option of Declarant. Declarant's refusal to consent to an assignment hereof shall not entitle Purchaser to terminate this Agreement or give rise to any claim for damages against Declarant. Declarant may assign its rights hereunder and, if such assignment shall be for the purpose of securing a lender to Declarant, Purchaser's rights hereunder shall, at the option of such lender, be subject and subordinate to the rights of such lender. Within ninety days after foreclosure or acceptance of a deed in lieu thereof, such lender may terminate this Agreement, whereupon the Deposit shall be returned to Purchaser, and Declarant, such lender and Purchaser shall be released from any further liability or obligation hereunder. If such lender does not terminate this Agreement, Purchaser shall complete the purchase of the Condominium Unit in accordance herewith.

16. **Notices**. Any notice to be given hereunder by one party shall be in writing and sent by registered or certified United States mail (except for notice given pursuant to Section 24), postage prepaid, return receipt requested, to the other party at the address given above or at such other address as either party may hereafter specify to the other in writing. The postmark date shall be deemed to be the date of the giving of notice, except that the date of actual receipt shall be deemed to be the date of the giving of any notice of change of address.

17. **Warranties**. Declarant shall warrant the Condominium Unit against structural defects (as defined in Section 55-79.79(b) of the Condominium Act) for two years after the date of conveyance of the Condominium Unit, and each of the common elements against structural defects for two years after the date of conveyance of the first unit in that portion of the Condominium to be conveyed or completion of that common element (whichever is later). For the same period, Declarant shall warrant that the unit is fit for habitation and was constructed in a workmanlike manner so as to pass without objection in the trade. All such warranties are more fully set forth on the Limited Warranty Certificates attached as exhibits to the Public Offering Statement. Declarant will deliver a signed copy of the Limited Warranty Certificate for the Condominium Unit to Purchaser at settlement. Prior to the expiration of the warranty period, Declarant will assign to the Board of Directors of the Condominium, on behalf of the unit owners of all units, all guaranties from subcontractors or suppliers of materials running in favor of Declarant, to the extent that such guaranties are assignable. Declarant will deliver to Purchaser at settlement any manufacturers' warranties covering any equipment in the Condominium Unit except insofar as the same may be common elements.

18. **Brokerage**. RE/MAX Commonwealth ("Selling Broker") is to be paid a fee of two and one half percent (2½ %) of the gross sales price by Listing Broker if and when the settlement occurs. Listing Broker is to be paid the fee stated in the Listing Agreement executed by Seller. Seller hereby authorizes and directs the settlement agent to disburse to the Listing broker and the Selling Broker the respective brokerage fees from Seller's proceeds at settlement. Purchaser shall indemnify Declarant against the claim of any broker (other than Selling Broker), including any attorney's fees incurred as a result of such claim.

19. **Delay**.

(a) **Purchaser's Option**. If settlement shall not have occurred within the period allowed in Section 8 due to reasons within Declarant's control, Purchaser shall have the option, as its sole and exclusive remedy hereunder, of either: (i) terminating this Agreement by written notice to Declarant, delivered at any time prior to Declarant's establishment of a settlement date, in which event Declarant shall, if Purchaser shall not then be in default, cause the Deposit (and all other money paid to Declarant by Purchaser hereunder, if any) to be returned to Purchaser, and neither party shall have any further liability or obligation hereunder; or (ii) electing to proceed with the purchase of the Condominium Unit when the same is available. In no event shall Declarant be liable for any loss incurred by Purchaser due to the expiration of any "rate lock" or other financing provision obtained by Purchaser.

(b) **Force Majeure**. If Declarant is delayed in performing any obligation hereunder due to construction or inspection delays or for reasons beyond the control of Declarant, then the time for performance shall be extended for the period of such delay not to exceed an additional twelve months. Reasons beyond the control of Declarant shall include, without limitation, impossibility of performance, acts of God, fire, earthquake, flood, explosion, condemnation or acts of governmental agencies asserting jurisdiction over the Condominium, and any other legally supportable justification under the laws of the Commonwealth of Virginia which would excuse Declarant from performance within the period allowed in this Agreement.

(c) **Increase in Purchase Price**. If completion and settlement do not occur within the period allowed in Section 8 due to the actions or failure to act of Purchaser or Purchaser's chosen lender, the Purchase Price shall be increased by an amount equal to the total Purchase Price set forth herein times eight percent (8%) per annum. All of such increase in the total Purchase Price shall be paid in cash at settlement. The price of any limited common elements described above and options shown on Schedule B shall be similarly adjusted.

20. **Termination of Agreement**. If Declarant has not satisfied the pre-sale requirements specified by any construction or permanent lender designated by Declarant, the Federal Home Loan Mortgage Corporation, Fannie Mae (the Federal National Mortgage Association), the Federal Housing Administration, the Department of Veterans Affairs, or any of them, then Declarant may by notice to Purchaser terminate this Agreement, whereupon Declarant shall cause the Deposit to be returned to Purchaser, and thereafter neither of the parties hereto shall have any further liability to the other hereunder.

21. **Integration and Scope of Authority**. This Agreement supersedes any and all prior understandings and agreements between the parties and constitutes the entire agreement between them. No representations, warranties, conditions or statements, oral or written, not contained herein shall be considered a part hereof. This Agreement may not be changed except by an instrument in writing signed by the party sought to be charged therewith or by the duly authorized agent of such party. Any and all additions, deletions, omissions and/or deviations from the printed form of this Agreement or any attachments hereto, other than the appropriate completion of the "blanks" which appear herein, are agreed to be in excess of the authority of Declarant's sales representatives and shall be of no force or effect. Only an officer of Declarant has the authority to sign this Agreement on behalf of Declarant.

22. **Miscellaneous**. Subject to the provisions hereof, when this Agreement becomes effective, it shall bind and inure to the benefit of the parties hereto and their heirs, personal representatives, successors and assigns. The invalidity of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement. Notwithstanding anything to the contrary herein, acceptance of the deed at settlement shall constitute Purchaser's acknowledgment of full compliance by Declarant with the terms of this Agreement. The terms hereof shall be merged into and extinguished by delivery of the deed at settlement except for Sections 4(b), 5, 17, 18, 21, 22 and 23 which shall survive delivery of the deed and shall not be merged therein. Time is of the essence in this Agreement.

23. **Representations of Purchaser**.

(a) **Status of Purchaser**. If this Agreement is signed by an individual who is then unmarried and at the time of settlement is married, Purchaser shall indemnify Declarant from any loss that may arise by reason of the failure of Purchaser's spouse to sign any applications, mortgages, notes or other documents required by the lender. If Purchaser is married and Purchaser's spouse is not also a purchaser under this Agreement, then Purchaser shall be responsible for such spouse signing the mortgage loan documents required by the lender and the failure of such spouse to do so shall not release Purchaser from any obligation under this Agreement, and Purchaser shall hold Declarant harmless from any loss as a result of the refusal of such spouse to sign any such document. If Purchaser is not a natural person, Purchaser shall indemnify Declarant from any loss that may arise by reason of the failure of any of Purchaser's principal officers, owners, beneficiaries or their spouses to sign any applications, mortgages, notes or other documents required by the lender. If Purchaser files for or is adjudicated a bankrupt, makes an assignment or arrangement for the benefit of creditors, files for divorce or legal separation, dies or notifies Declarant of a desire to be released from this Agreement, Declarant may, at Declarant's sole option, terminate this Agreement and cause the Deposit to be returned to Purchaser, whereupon neither party shall have any further obligation to the other hereunder.

(b) **Use of Unit as Primary Residence/Declarant's Right to Repurchase**. PURCHASER HEREBY REPRESENTS AND DECLARES THAT PURCHASER INTENDS TO OCCUPY THE UNIT AS A PRIMARY YEAR-ROUND RESIDENCE. ANY MISREPRESENTATION REGARDING PURCHASER'S INTENTION TO RESIDE IN THE UNIT SHALL BE A DEFAULT HEREUNDER. (This statement does not prevent unit owners from residing at one or more second homes for part of the year.) Purchaser agrees not to sell the Unit within twelve (12) months of settlement hereunder to any party without first offering it in writing to the Declarant at the Purchase Price. The Declarant shall have thirty (30) days from receipt of such offer within which to accept it by notifying the Purchaser of Declarant's decision in writing. If Declarant accepts the offer, Purchaser shall convey the Unit to Declarant or its assigns and Declarant or its assigns shall pay for the Unit within thirty (30) days of Declarant's written acceptance of Purchaser's offer. If Purchaser fails to perform its obligations hereunder, Declarant shall have the right to pursue an action at law or in equity against Purchaser or any subsequent owner of the Unit for damages or equitable relief. The foregoing obligations of Purchaser shall be reflected in the deed for the Unit delivered by Declarant to Purchaser at settlement.

EdmondsR00008

24. Right to Rescind - Nonbinding Reservation.

(a) Condominium Act. Pursuant to Section 55-79.87(A)(3) of the Condominium Act, following the execution of this Agreement and at any time prior to Declarant's registration of the Condominium pursuant to the Condominium Act (the "Pre-registration Period"), this Agreement shall be a nonbinding reservation agreement and Declarant and Purchaser shall have the unqualified right to rescind this Agreement by giving notice thereof hand-delivered or sent by United States mail, return receipt requested, to Declarant. If Declarant or Purchaser elects to rescind this Agreement within the Pre-registration Period as aforesaid, then Purchaser shall be entitled to the return of the Deposit made on account hereof, whereupon the parties shall have no further rights and liabilities hereunder. If Declarant and Purchaser elect not to rescind this Agreement within the Pre-registration Period as aforesaid, then Purchaser shall have a period of ten (10) days following the registration of the Condominium and receipt of the current approved Public Offering Statement to:

(1) rescind this Agreement by delivering written notice thereof to Declarant within said ten (10 day period, upon which rescission the Purchaser shall be entitled to the return of the Deposit made on account hereof, whereupon the parties shall have no further rights and liabilities hereunder; or

(2) confirm the terms of this Agreement as a binding contract for sale of the Unit and proceed to settlement.

(b) Property Owners' Association Act. The Condominium is not located within a development which is subject to the Virginia Property Owners' Association Act.

25. Mechanics' Lien Notice. Virginia law (Section 43-1 et seq.) permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the property. This lien may be filed at any time after the work is commenced or the material is furnished, but no later than the earlier of (i) ninety (90) days from the last day of the month in which the lienor last performed work or furnished materials or (ii) ninety (90) days from the time the construction, removal, repair or improvement is terminated.

26. CRESPA Disclosure. Virginia law (Section 6.1-2.22) requires the following disclosure:

Choice of Settlement Agent: You have the right to select a settlement agent to handle the closing of the transaction. The settlement agent's role in closing your transaction involves the coordination of numerous administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the parties. If part of the purchase price is financed, your lender will instruct the settlement agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No settlement agent can provide legal advice to any party to the transaction except a settlement agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the purpose of providing legal services to that party.

Escrow, closing and settlement service guidelines: The Virginia State Bar issues guidelines to help settlement agents avoid and prevent the unauthorized practice of law in connection with furnishing escrow, settlement or closing services. As a party to a real estate transaction, you are entitled to receive a copy of these guidelines from your settlement agent, upon request, in accordance with the provisions of the Consumer Real Estate Settlement Protection Act.

IN WITNESS WHEREOF, the parties have signed this Agreement as of the date first written above.

PURCHASER:

Social Security No. 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    _____ [SEAL]

Social Security No. _____    _____ [SEAL]

THE OVERLOOK, LLC

By: _____
       Manager

The undersigned acknowledges receipt of the Deposit as set forth above on  3/22  20 06.

_____
Sales Representative for Listing Broker

EdmondsR00009




CENTRAL VIRGINIA REGIONAL MLS
ADDENDUM TO PURCHASE AGREEMENT
ADDENDUM # __1__

THIS ADDENDUM is attached to and made a part of the Purchase Agreement dated __March 22__, 20__06__ (the "Purchase Agreement"), between __The Overlook, LLC__ ("Seller") and __Ricky Edmonds__ ("Purchaser") for the sale of that certain real property and all improvements thereon located in the County/City of __Richmond__, Virginia, and described in the Purchase Agreement as __801 Holly St Richmond VA 23220__, and provides as follows:

Seller and purchaser agree to the following upgrades, new purchase price and nonrefundable deposit.

| Item | Price |
|---|---|
| Add fireplace Gas, Vented | 5175 |
| Add hose bib by back door | 200 |
| Upgrade bathroom vanities Cherry Cordovan | 400 |
| Upgrade appliances to Gas, Package C Stainless | 2850 |
| Upgrade Carpet Pad | 425 |
| Upgrade Hall Bath Floor Ceramic Tile | 300 |
| Upgrade Master Bath Floor Ceramic Tile | 400 |
| Upgrade Carpet Simply Perfect Oiled Leather | 850 |
| | $10,600 |

Old Purchase Price    $349,950
Total Upgrades        $10,600
New Purchase Price    $360,550

A nonrefundable deposit of $5,300 has been received by RE/MAX Commonwealth and will be held in escrow until settlement.

WITNESS the following duly authorized signatures and seals:

__3/30/06__ / _____(SEAL)  __27 March__ / _____(SEAL)
Date    Seller                     Date         Purchaser

_____ / _____(SEAL)  _____ / _____(SEAL)
Date    Seller            Date       Purchaser

COPYRIGHT© 2005 by the Central Virginia Regional MLS ("CVRMLS"). All rights reserved. This form may be used only by members in good standing with the CVRMLS. The reproduction of this form, in whole or in part, is prohibited without prior consent from CVRMLS.

EdmondsR00010




## CENTRAL VIRGINIA REGIONAL MLS
## ADDENDUM TO PURCHASE AGREEMENT
### ADDENDUM # 2

THIS ADDENDUM is attached to and made a part of the Purchase Agreement dated **March 22**, 20 **06** (the "Purchase Agreement"), between **The Overlook LLC** ("Seller") and **Ricky Edmonds** ("Purchaser") for the sale of that certain real property and all improvements thereon located in the County/City of **Richmond**, Virginia, and described in the Purchase Agreement as **801 Holly St. Richmond VA 23220** and provides as follows:

Seller and purchaser agree to the following allowance for upgraded electronics paid directly to Connec Inc and warranted by Connec Inc. 11246 Dude Ranch Rd Glen Allen, VA per invoice # 1142 (attached).

Old Purchase Price        $360,550
Allowance for upgrades    $10,353
New Purchase Price        $370,903

WITNESS the following duly authorized signatures and seals:

4/13/06  _____ (SEAL)  4/13/06  _____ (SEAL)
Date     Seller                 Date     Purchaser

_____  _____ (SEAL)  _____  _____ (SEAL)
Date     Seller                 Date     Purchaser

COPYRIGHT© 2005 by the Central Virginia Regional MLS ("CVRMLS"). All rights reserved. This form may be used only by members in good standing with the CVRMLS. The reproduction of this form, in whole or in part, is prohibited without prior consent from CVRMLS.

EdmondsR00011