# *EXHIBIT 8 (PART B)*




OVERLOOK POINT

TIDEWATER ELEVATION 'A'

FIRST FLOOR: 1339 S.F.
SECOND FLOOR: 1376 S.F.
TOTAL LIVING AREA: 2715 S.F.
OPT. BONUS ROOM: 211 S.F.
TOTAL LIVING AREA: 2926 S.F.

FRONT ELEVATION

REAR ELEVATION

Atlantic Homes, LLC

VestH00009





SEP-16-2005 FRI 12:20 PM MIDATLANTIC COMMERCIAL    FAX NO. 757 857 9557

## PURCHASE AGREEMENT

THIS AGREEMENT OF PURCHASE ("Agreement") made this __16__ day of __SEPT__, __2005__ by and between ATLANTIC HOMES, LLC at __Overlook Point__ ("Seller") and __Hughs & Tracy F. Vest__ ("Purchaser"), and __Mid Atlantic Residential__ ("Listing Broker") and __Mid Atlantic Residential__ ("Selling Broker"), provides:

1) Seller is to construct and convey to Purchaser a home known as the __Tidewater__ with elevation __A__ and a __2__ car garage in accordance with the plans and specifications, the Purchaser's Option Selection Form, and Purchaser's Color Selection Form, on LOT __80__ BLOCK _____ SECTION _____ in SUBDIVISION __Overlook Point__ in the County or City of __York__ Virginia and more commonly known as __111 Estates Ktt, Yorktown 23693__ ("Property").

2) The Option Selection Form and Color Selection Form detail the optional features selected by the Purchaser and take precedence over the plans and specifications in case of conflict. Along with the plans and specifications, they will be held on file at the Seller's office and/or the VA, FHA, and appropriate municipality as they may be modified from time to time. Purchaser agrees to complete Color Selection Form within (fifteen) 15 business days of the ratification of this Agreement.

3) The Purchase Price is __Four hundred Fifty-Five Thousand Five hundred__

($ __455,950.00__ ) Which shall be paid as follows:
__5,000.00__ Deposit Herewith To Be Applied To __Down Payment__
_____ Additional Cash due at Closing
__TBD__ Loan Amount
_____ Total Purchase Price.

4) Purchaser has made a deposit of $ __5,000.00__ earnest money ("Deposit") by __Check__ (Method) to be held in escrow by __Mid Atlantic__ ("Escrow Agent") until settlement hereinafter defined and then applied to the __Down Payment__.

It is understood and agreed by Purchaser that the Deposit with this Agreement will be deposited by Escrow Agent in a federally insured interest bearing account(s) and all interest which accrues with respect to the Deposit shall become the sole and exclusive property of Escrow Agent. Purchaser waives any and all right or entitlement to such interest. In the event this transaction is not consummated, Escrow Agent shall hold the Deposit in escrow until (i) all parties to the transaction have agreed in writing as to its disposition, or (ii) a court of competent jurisdiction orders disbursement of the Deposit, or (iii) Escrow Agent can pay the Deposit to the party who is entitled to receive it in accordance with the clear and explicit terms of this Agreement. In the latter event, prior to disbursement, Escrow Agent shall give written notice to each party not to be paid, by either (i) hand delivery receipted for by the addressee, or (ii) by regular and certified mail(return receipt requested), that this payment will be made unless a written protest from that party is received by Escrow Agent within thirty (30) days of the delivery or mailing, as appropriate, of that notice.

5) This Agreement is contingent upon Purchaser obtaining a loan commitment from __Wells Fargo Mortgage__ ("Lender") or other Lender as the parties mutually agree, to be obtained no later than __Jan 2006__. Purchaser agrees to make loan application within five (5) business days of ratification of this Agreement and to diligently pursue obtaining a commitment. Failure of the Purchaser to do so will constitute a default.

6) Purchaser and Seller agree to pay closing costs as follows (check one):

(a) __X__ Purchaser and Seller agree to pay their own respective closing costs and pre-paid items.

(b) _____ Seller to pay up to $ _____ of Purchaser's closing costs including no ( ) or one ( ) discount point. The discount fee cannot be used to buy down the loan, unless otherwise noted herein.

(c) _____ Seller to pay all of Purchaser's closing costs over _____ and One Discount Point.

Purchaser to pay any document preparation, document review, underwriting tax, service fees, VA Funding Fee, owner's title, insurance coverage, and pre-paid items.

7) In an effort to assist with the placement of your mortgage, it may be necessary for a Representative of Seller to discuss Purchaser's credit report and any other loan package information required to obtain a loan with Purchaser's lender. Purchaser acknowledges this and authorizes Seller access to the above information.

8) Other Provisions: _____
_____
_____
_____

Page 1 of 4    Please Initial ___

VA. CONTRACTORS LICENSE #2705 050926A

10 San Jose Drive, Suite 4C • Newport News, Virginia 23606
Telephone: (757) 596-8800 • Fax (757) 596-8516

REV 4/04



VestH00012

SEP-16-2005 FRI 12:20 PM MIDATLANTIC COMMERCIAL        FAX NO. 757 867 9597        P. 06

The estimated completion date of construction of the Property is approximately the __30__ day of __MAY__ 200_. This is approximately when the Property will have passed the final inspection of the appropriate building officials. Purchaser acknowledges that this date is an estimate only and Seller will not be liable for any delay in completion of work caused by factors outside its control which include but are not limited to weather conditions, material manpower shortages, and delay in selections by Purchaser. Seller is authorized to provide a revised completion date if such factors are encountered, however, Purchaser may declare this contract null and void if home should not be completed within one year from contract date.

10) **CHOICE OF SETTLEMENT AGENT:** You have the right to select a Settlement Agent to handle the closing of this transaction. The Settlement Agent's role in closing your transaction involves the coordination of numerous administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the parties. If part of the purchase price is financed, your lender will instruct the Settlement Agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No Settlement Agent can provide legal advice to any party to the transaction except a Settlement Agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the purpose of providing legal services to that party.

**ESCROW, CLOSING AND SETTLEMENT SERVICE GUIDELINES:** The Virginia State Bar issues guidelines to help Settlement Agents avoid and prevent the unauthorized practice of law in connection with furnishing escrow, settlement or closing services. As a party to a real estate transaction, you are entitled to receive a copy of these guidelines from your Settlement Agent, upon request, in accordance with the provision of the Consumer Real Estate Settlement Protection Act.

If Seller is to participate in Purchaser's closing costs, Seller will pay the Settlement Agent of its choice to prepare and effect the requirements of Purchaser's lender at Settlement. Any additional legal representation provided at the request of the Purchaser will be paid for by Purchaser. Settlement will be at the office of __TO BE DETERMINED__ ("Settlement Agent") approximately five working days after completion of construction of the Property ("Settlement"). Possession of the Property will be delivered at Settlement, unless otherwise agreed to in writing. Any change in Settlement Agent by Purchaser must be approved in writing by Seller. Purchaser will be responsible for costs, if any, incurred by Seller in preparation for closing if Purchaser elects to change Settlement Agent within 30 days of closing.

11) All taxes, insurance, upkeep, water, rent, and other charges on the Property shall be prorated as of the date of the Settlement. Purchaser understands that taxes may be based upon estimated assessment at the time of Settlement and may be subject to change. Purchaser agrees to execute, at Settlement, all documents required by VA, FHA, and/or the lender. Seller and Purchaser authorize their respective attorneys and the Settlement Agent to furnish to Listing Broker and Selling Broker copies of the final HUD-1 Settlement Statements for the transaction.

12) Seller agrees to convey the Property to Purchaser by General Warranty Deed, with English Covenants of Title and free and clear of all encumbrances except as may be based upon estimated assessment at the time of Settlement and may be otherwise provided above, but subject to all easements and restrictive covenants of record not adversely affecting the use of the Property. Seller is to pay the expenses of preparing the deed and the recordation tax applicable to grantor.

13) Seller agrees to pay Listing Broker a fee of __6__ % of the Purchase Price at Settlement. In the event of a cooperative sale, Selling Broker will receive a commission of __N/A__ % of the Purchase Price paid at Settlement, which amount shall be paid from the fee payable to Listing Broker as stated above. In the event of a breach of this Agreement by Purchaser, in addition to all remedies available to the parties at law or in equity, Purchaser shall be liable for all brokerage fees and expenses incurred by Seller, including attorney's fees, when applicable.

14) **Agency Disclosure.** (Check as Applicable) The parties confirm, with respect to their own representation, that disclosure of the agency relationships described below was made in writing at the time specific real estate assistance was first provided by the broker(s) named below, or their respective salespersons.

A) __X__ The Parties confirm that the Listing Broker and cooperating Broker (sub-agent), if any, and their salespersons have acted on behalf of Seller.

B) _____ The Parties confirm that the Listing Broker and its salespersons have acted on behalf of Seller and the Purchaser's Broker and its salespersons, by agreement, have acted on behalf of Purchaser.

C) _____ The Parties confirm that the Broker and its salespersons are acting on behalf of Purchaser.

D) _____ The Parties confirm that the Broker and its salespersons are acting on behalf of both the Seller and the Purchaser as disclosed dual representatives.

E) _____ The Principal or supervising broker has designated _____ to represent the Seller in the transaction and _____ to represent the Purchaser in the transaction. _____ the principal or supervising broker, is acting on behalf of both the Seller and the Purchaser as a disclosed dual representative.

F) _____ The Parties also confirm that the written disclosure of and informed consent to the brokerage relationships described in paragraph 14 (D) or (E) above was made prior to the time the offer was made by Purchaser and delivered to Seller.

15) **Property Owner's Association Disclosure:** (Check as applicable)
Seller represents that the Property is __X__ is not _____ located within a development which is subject to the Virginia Property Owner's Association Act (Section 55-516 of the Code of Virginia) ("Act"), with a mandatory fee of $ __Apx $200.00 yr__ for the current year. If the Property is within such a development, the Act requires Seller to obtain from the property owner's association an association disclosure packet and provide it to Purchaser. Purchaser may cancel this Agreement within three (3) days after receiving the disclosure packet or being notified that it will not be available. The right to receive the association disclosure packet and the right to cancel this Agreement are waived conclusively if not exercised before Settlement.

16) Purchaser and Seller agree that paragraph __C__ (indicate A, B, or C) below applies.

A) **VA LOAN:** It is expressly agreed that, notwithstanding any of the provisions of this Agreement, Purchaser shall not incur any penalty by forfeiture of the Deposit or otherwise be obligated to complete the purchase of the Property described by this Agreement if the agreed Property Price exceeds the reasonable value of the Property established by the Veterans Administration. The Purchaser shall, however, have the privilege and option of proceeding with the consummation of this Agreement without regard to the amount of the reasonable value established by the Veterans Administration. **The Veteran Purchaser certifies that he intends to occupy the Property as his primary residence.**

B) **FHA LOAN:** It is expressly agreed that notwithstanding any other provisions of this Agreement, the Purchaser shall not be obligated to complete the purchase of the Property or to incur any penalty by forfeiture of the Deposit or otherwise unless the Purchaser has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property (excluding closing costs) of not less than $ _____. The Purchaser shall, however, have the privilege and option of proceeding with the consummation of this Agreement without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. The Purchaser should satisfy himself/herself that the Purchase Price and condition of the Property are acceptable.

The undersigned certifies that the terms of this Agreement are true to the best of their knowledge and belief. Any other agreement entered into by any of the parties has been fully disclosed and attached to this Agreement.

Page 2 of 4                                                                                                                Please initial

VestH00013

SEP-18-2005 FRI 12:21 PM MIDATLANTIC COMMERCIAL          FAX NO. 757 867 XXXX

CONVENTIONAL LOAN: It is expressly agreed that, notwithstanding any other provisions of this agreement, the Pur shall not incur any penalty by forfeiture of the deposit or otherwise be obligated to complete the purchase of the Property des herein, if the agreed Purchase Price exceeds the value established by the lender approved appraiser and the Seller does not ag reduce the Purchase Price to that appraised value. The Purchaser shall, however, have the privilege and option of proceeding w consummation of this Agreement without regard to the amount of the appraised valuation made by the lender approved appraiser. event the Purchase Price exceeds the value established by the lender approved appraiser and Seller or Listing Broker notifies Purc or Selling Broker that Seller agrees to reduce the Purchase Price to the established value, then this Agreement will remain in forc Settlement shall occur as specified in this Agreement.

17) Purchaser certifies that a personal inspection has been made of the homesite and that a copy of the plat of the Property has provided for review. In the event the selected home will not fit on the lot or should the lot require substantial excess preparation (at discretion of Seller), it is understood that this Agreement may be nullified and the Deposit returned to Purchaser.

18) Seller will furnish Purchaser with a ten year "2-10 Home Buyer's Warranty" (herein called "2-10 Warranty") policy and ass warranties furnished by manufacturers to Purchaser. The limited warranty provided by the Seller to the Purchaser through the 2 Warranty requires that all disputes related to or arising out of the limited warranty be submitted to binding arbitration for resolution. T binding arbitration proceeding shall be governed by the arbitration rules and procedures applicable to the arbitration organization select to resolve the dispute.

The parties to this Agreement hereby agree that any and all claims or disputes arising between them related to or arising out the limited warranty provided through the 2-10 Warranty shall be submitted to the required binding arbitration for resolution.

Seller may, in its discretion, furnish a substitute home buyer's warranty policy in place of the 2-10 Warranty, provided that suc substitute policy shall provide coverage substantially similar to the 2-10 Warranty.

19) Seller will furnish Purchaser a Termite Treatment Warranty at Settlement.

20) If the Property is served by a well and/or septic system, Seller will furnish Purchaser with a certificate indicating that the well water is potable and that the septic system is functioning properly.

21) No alterations or extra work will be done without a written Change Order or Addendum signed by Purchaser and Seller and accompanied by a non-refundable payment in full by Purchaser. No alterations which affect plans will be accepted after five (5) business days from execution of this Agreement. No Change Orders or Addendums will be accepted after fifteen (15) business days.

22) Seller will determine siting of the dwelling on the lot (including reversing the floor plan) to assure that it blends with surrounding houses, has proper drainage and to protect trees or undergrowth outside of the area affected by construction. SELLER'S PRACTICE IS TO MINIMIZE THE CLEARING OF TREES and Seller will make all reasonable effort not to damage trees, but because of possible unseen damage, diseases, and effects of grade alterations, Seller does not guarantee the life of any tree. During freezing or wet weather, Seller may not be able to establish final finished grades, but will do so as soon as weather permits. Purchaser acknowledges that once Seller completes final grading and seeding, Purchaser is responsible for the growth and survival of the grass.

23) Unless specified elsewhere, insulation will be installed in the home as follows:

| AREA | TYPE | THICKNESS | R-VALUE |
|---|---|---|---|
| Slab Perimeter | Foam Board | 1" | R-4 |
| Crawl Space Floors | F.G. Batts | 6.25" | R-19 |
| Exterior Walls | F.G. Batts | 3.50" | R-13 |
| Cathedral Ceilings | F.G. Batts | 8.25" | R-30 |
| All other Ceilings | F.G. Batts | 12.75" | R-30 |
| OR | Cellulose | 8" | R-30 |

Seller may substitute insulation types so long as equivalent R-Values according to the manufacturer are obtained.

24) Seller has the right to substitute materials of similar quality if unable to obtain exact materials indicated on plans, specifications, Option Form and Color Selection Form through Seller's usual sources. Dimensions may vary somewhat according to field conditions. Until Settlement, the dwelling and all materials and supplies on site remain the property of the Seller.

25) Prior to Settlement, Seller will schedule an orientation walk-through of the Property with Purchaser to inform Purchaser of working components and warranties. A "Punch List" will be prepared noting discrepancies, to be signed and retained by Purchaser and Seller. This document will be a complete list of discrepancies to be corrected by Seller, except as otherwise required by any applicable warranty.

26) It is understood that neither Purchaser nor Purchaser's agent(s) are authorized to enter the property prior to Settlement. In the event that Purchaser does enter the Property prior to Settlement, Purchaser agrees and understands that Purchaser is doing so without permission of the Seller and at Purchaser's own risk. Purchaser releases and agrees to indemnify and hold Seller harmless from and against any and all claims for damage(s) to Purchaser's person or property and to any person or property of any person who may accompany Purchaser.

27) Mechanic's Lien Notice: Virginia Law (Section 43-1 et seq.) permits persons who have performed labor or furnished materials for construction, removal, repair or improvement of any building or structure to file a lien against the Property. This lien may be filed at any time after the work is commenced or the material is furnished but not later then the earlier of: a) 90 days from the last day of the month in which he performs labor or furnishes material, or b) 90 days from time of construction, removal, repair or improvement is completed, or the work thereon otherwise completed.

AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE DATE OF SETTLEMENT MAY BE FILED AFTER SETTLEMENT. LEGAL COUNSEL SHOULD BE CONSULTED.

VestH00014

SEP-16-2005 FRI 12:22 PM MIDATLANTIC COMMERCIAL       FAX NO. 757 867 9597       P. 06

28) **Title Insurance Notification:** The Purchaser may wish at Purchaser's expense to purchase owner's title insurance. Depe_ on the particular circumstances of the transaction, such insurance could include affirmative coverage against possible mechanics materialmen's lien for labor and materials performed prior to Settlement and which, though not recorded at the time of recordation o Purchaser's deed, may still effect the title to the property.

29) **Megan's Law Approved Disclosure/Disclaimer:** "You should exercise whatever due diligence you deem necessary respect to information on any sexual offenders registered under 23 (§19.2-387 et seq.) of Title 19.2; whether the owner proceeds u subdivision 1 or 2 of subsection §55-519. Such information may be obtained by contacting your local police department or the Departm of State Police, Central Criminal Records Exchange, at (804) 674-2000 or www.state.va.us/vsp.html."

30) Seller is affiliated with a real estate broker who is not a party to this Agreement.

31) Purchaser and Seller agree that a facsimile transmission of any original document will have the same effect as an original.

32) In the event Purchaser defaults in the performance of any part of this Agreement, unless otherwise written herein, Seller m require specific performance by Purchaser of this Agreement or Seller, at his option, may terminate this Agreement. In the event of su termination, all rights of Purchaser shall hereby cease and terminate and Seller shall have the right to retain all monies previously paid I Purchaser and apply said monies to damages sustained by Seller. However, such amounts shall not be construed as liquidated damage for breach of the Agreement by Purchaser.

33) The parties of this agreement that it shall be binding upon them, and their respective personal representatives, successor and assigns; that its provisions shall be merged into the deed delivered at Settlement and shall not survive Settlement, that unless amend ed in writing by Seller and Purchaser, this Agreement contains the final agreement between the parties hereto, and that they shall not b bound by any terms, conditions, oral statements, warranties or representations not herein contained; and that it shall be construed under the laws of the Commonwealth of Virginia. Notwithstanding the above, the Agreement may not be assigned by Purchaser, except with prior written consent by Seller, which consent may be withheld by Seller in its sole and absolute discretion for any or no reason.

Witness the following signatures and seals. All parties hereby acknowledge receipt of a copy of this agreement.

SELLER:
ATLANTIC HOMES, LLC

BY: _____

DATE: _____

PURCHASER:

BY: _____ [signed]

DATE: 9-16-2005

BY: Tracy F. Vest

DATE: 9-16-2005

Mid Atlantic Residential
Listing Broker
By: David Slain
    Jane Werly

Mid Atlantic Residential
Selling Broker
By: David Slain

Page 4 of 4

VestH00015

# WARRANTY OF COMPLETION OF CONSTRUCTION

U.S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0059

| Lender's Name & Address: | FHA/V.A. Case Number: |
|---|---|
|  | Lender's Phone No.: |

| Name(s) of Purchaser/Owner: | Property Address: |
|---|---|
| Hugh S & Tracy F Vest | 111 Eston's Run<br>Yorktown, Virginia 23693 |

For good and valuable consideration, and in accordance with Section 801 of the Housing Act of 1954, and Public Law 85-857 (38 U.S.C. 3705), the undersigned Warrantor hereby warrants to the Purchaser(s) or Owner(s) identified in the caption hereof, and to his/her successors or transferees, that:

The dwelling located on the property identified in the caption hereof is constructed in substantial conformity with the plans and specifications (including any amendments thereof, or changes and variations therein) which have been approved in writing by the Federal Housing Commissioner or the Secretary of Veterans Affairs on which the Federal Housing Commissioner or the Secretary of Veterans Affairs based the valuation of the dwelling: **Provided, however,** that this warranty shall apply only to such instances of substantial nonconformity as to which the Purchaser(s)/Owner(s) or his/her (their) successors or transferees shall have given written notice to the Warrantor at any time or times within one year from the date of original conveyance of title to such Purchaser(s)/Owner(s) or the date of initial occupancy, whichever first occurs: **Provided further, however,** that in the event (1) the Purchaser(s)/Owner(s) acquired title to the captioned property prior to the completion of construction of the dwelling thereon, such notice of nonconformity to the Warrantor may be given any time or times within one year from the date of completion or initial occupancy of such dwelling, whichever first occurs, or (2) where it has been necessary to postpone improvements such notice of nonconformity to the Warrantor as to such incomplete items may be given at any time or times within one year from the date of full completion of each of such items.

The term "dwelling" as used herein shall be deemed to include all improvements or appurtenances set forth in the plans and specifications upon which the Federal Housing Commissioner or the Secretary of Veterans Affairs has based the valuation of the property, excepting those constructed by a municipality or other government authority.

**The undersigned Warrantor further warrants** to the Purchaser(s)/Owner(s) or his/her (their) successors or transferees, the property against defects in equipment, material, or workmanship and materials supplied or performed by the Warrantor or any subcontractor or supplier at any tier resulting in noncompliance with standards of quality as measured by acceptable trade practices. This warranty shall continue for a period of one year from the date of original conveyance of title to such Purchaser(s) or from the date of full completion of each of any items completed after conveyance of title. The Warrantor shall remedy, at the Warrantor's expense, any defect(s) of equipment, material, or workmanship furnished by the Warrantor. Warrantor shall restore any work damaged in fulfilling the terms and conditions of this warranty.

If a manufactured (mobile) home was erected on this property, the Warrantor further warrants that (1) the property (other than the manufactured unit itself) complies with the submitted construction exhibits; (2) the manufactured home sustained no hidden damage during transportation and erection; and (3) if the home was manufactured in separate sections, the sections were properly joined and sealed.

Manufacturer's Name, Address & Phone No.:

This warranty shall be in addition to, and not in derogation of, all other rights and privileges which such Purchaser(s)/Owner(s) or his/her (their) successors or transferees may have under any other law or instrument, and shall survive the conveyance of title, delivery of possession of the property, or other final settlement made by the Purchaser(s)/Owner(s), and shall be binding on the Warrantor notwithstanding any provision to the contrary contained in the contract of purchase or other writing executed by the Purchaser(s)/Owner(s) or his/her (their) successors or transferees heretofore or contemporaneously with the execution of this agreement or prior to final settlement.

This warranty is executed for the purpose of inducing the Federal Housing Commissioner or the Secretary of Veterans Affairs to make, to guarantee or to insure a mortgage on the captioned property, and the person signing for the Warrantor represents and certifies that he/she is authorized to execute the same by the Warrantor and by his/her signature the Warrantor is duly bound under the terms and conditions of said warranty. The FHA Commissioner or the Secretary of Veterans' Affairs reserves the right to make a final determination as to whether a defect exists and whether the builder must remedy the defect.

| Warrantor's Title, Signature & Date: | Builder's Name, Address & Phone No.: |
|---|---|
| X _[signature]_ May 1, 2006<br>Kenneth L. Allen, Operating Manager | ATLANTIC HOMES, LLC<br>10 SAN JOSE DRIVE, SUITE 4C<br>NEWPORT NEWS, VIRGINIA 23606 |

VestH00016

Purchaser(s)' acknowledgment: Signature(s) of Purchaser(s) & Dates:

furnished by the Warrantor. Warrantor shall restore any work damaged in fulfilling the terms and conditions of this warranty. remedy, at the Warrantor's expense, any defect(s) of equipment, material, or workm[anship] of any items con[...]

If a manufactured (mobile) home was erected on this property, the Warrantor further warrants that (1) the property (other th[an] manufactured unit itself) complies with the submitted construction exhibits; (2) the manufactured home sustained no hidden damage [in] transportation and erection; and (3) if the home was manufactured in separate sections, the sections were properly joined and sealed.

Manufacturer's Name, Address & Phone No.:

---

This warranty shall be in addition to, and not in derogation of, all other rights and privileges which such Purchaser(s)/Owner(s) or hi[s/her] (their) successors or transferees may have under any other law or instrument, and shall survive the conveyance of title, delivery of possessi[on of] the property, or other final settlement made by the Purchaser(s)/Owner(s), and shall be binding on the Warrantor notwithstanding any prov[ision] to the contrary contained in the contract of purchase or other writing executed by the Purchaser(s)/Owner(s) or his/her (their) successor[s or] transferees heretofore or contemporaneously with the execution of this agreement or prior to final settlement.

This warranty is executed for the purpose of inducing the Federal Housing Commissioner or the Secretary of Veterans Affairs to mak[e, ] guarantee or to insure a mortgage on the captioned property, and the person signing for the Warrantor represents and certifies that he/sh[e is] authorized to execute the same by the Warrantor and by his/her signature the Warrantor is duly bound under the terms and conditions of [this] warranty. The FHA Commissioner or the Secretary of Veterans' Affairs reserves the right to make a final determination as to whether a de[fect] exists and whether the builder must remedy the defect.

Warrantor's Title, Signature & Date:

X _____ May 1, 2006
Kenneth L. Allen, Operating Manager

Builder's Name, Address & Phone No.:

ATLANTIC HOMES, LLC
10 SAN JOSE DRIVE, SUITE 4C
NEWPORT NEWS, VIRGINIA 23606

Purchaser(s)' acknowledgment: Signature(s) of Purchaser(s) & Dates:

X _____

X _____

X _____

X _____

**Purchaser Note:** Any notice of nonconformity must be delivered to the Warrantor within the period or periods set forth above.
**Warning:** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 101[0,] 1012; 31 U.S.C. 3729,3802)
Previous editions are obsolete.
Combines previous HUD-92544-A.

VMP-441 (9210)
Printed on Recycled Paper
VMP MORTGAGE FORMS - (800)521-7291

V.A. form 26-1859
form HUD-92544 (8/92)
ref. Handbook 4145.1

VestH00017

# 2-10 Home Buyers Warranty
## Certificate of Warranty Coverage
### Warranty VA114443



2-10 Home Buyers Warranty®
America's Choice®

**Home Owner:**

HUGH S VEST, TRACY F VEST

111 ESTON'S RUN
YORKTOWN, VA 23693

Insured by:
National Home Insurance Company
(A Risk Retention Group)

Your builder, **Atlantic Homes, LLC**                HBW Builder # **2800-9825**

has completed the enrollment process. Your home has now been enrolled in the following warranty program with an effective date of warranty of **02/23/06**

**One Year Workmanship/Two Year Systems/Ten Year Structural.**
**Warranty Limit: $463,580.00**

The Address and legal description of the home which has been accepted for enrollment is:

**111 ESTON'S RUN**                        **20**

**YORKTOWN, VA 23693**                **OVERLOOK POINT**

The Home Buyers Warranty Limited Warranty Booklet enclosed is dated   1/17/2006 HBW 307

The Builder Application for Home Enrollment that you signed with your Builder prior to your home being enrolled in the HBW program, this Certificate of Warranty Coverage and the enclosed Home Buyers Warranty Limited Warranty Booklet make up your warranty contract. No Party will be bound by any other representations or agreements made by any persons.

**Notice: Any modifications, alterations or revisions made to this document will void the warranty coverage.**

HBW 320 5/03

HOMEBUYER(S)

VestH00018