Swiss Re

Policy No:     MH 63 326.1.13
Renewal of:  MH 63 326.1.9

## EXCESS LIABILITY FOLLOWING FORM INSURANCE POLICY

*The Company agrees* with the Named Insured below, in consideration of the premium paid and subject to all the terms and conditions set forth below, that the insurance afforded by this Policy shall follow all the terms and conditions of Underlying Umbrella Policy (Followed Policy) HBP Policy No. 3991380-02 for the period April 1st, 2009 to April 1st, 2010, except as regards the premium, the amount and limits of liability and except as otherwise provided herein.

The Underlying Umbrella Policy (Followed Policy) is attached and incorporated within this Agreement as Schedule 1. For the purpose of this Agreement the Underlying Umbrella Policy (Followed Policy) attached in Schedule 1 shall be deemed to be a copy of the wording of the Underlying Umbrella Policy and in the event of any discrepancy between the Underlying Umbrella Policy and the wording attached hereto the terms and conditions of the latter shall prevail.

| | |
|---|---|
| **NAMED INSURED:** | Beazer Homes USA, Inc. |
| **ADDRESS:** | 400 Northpark Town Center<br>1000 Abernathy Rd.; NE, Suite 1200<br>Atlanta, GA 30328<br>USA |
| **POLICY PERIOD:** | Inception Date:    April 1st, 2009<br>Expiration Date:  April 1st, 2010<br>Retroactive Date: N/A<br>12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE. |
| **COVERAGE:** | EXCESS LIABILITY INSURANCE |
| **THE COMPANY:** | Swiss Re International SE<br><br>(a)    Notice of Claim, Occurrence and Notice of Potential Claim:<br>Legal & Claims Department<br>Swiss Re International SE<br>Zurich Contact Office for International<br>Mythenquai 50/60<br>P.O.Box 4288<br>8022 Zurich<br>Switzerland<br><br>(b)    All other Notices:<br>Swiss Re International SE<br>Zurich Contact Office for International<br>Mythenquai 50/60<br>P.O.Box 4288<br>8022 Zurich<br>Switzerland |



EXHIBIT
4



Swiss Re

| | |
|---|---|
| **LIMIT OF LIABILITY:** | Hereon: (SR International Share: 100%) |

USD    15,000,000 per occurrence and in the annual aggregate where applicable. Allocated loss adjustment expenses – outside the limits of liability

EXCESS OF:

USD    50,000,000 per occurrence and in the annual aggregate as listed in Schedule A (Underlying Insurance). Allocated loss adjustment expenses – outside the limits of liability

WHICH IS IN TURN IN EXCESS OF:

Primary Limits of Liability/Self-Insured Retentions as per Schedule of Retained Amounts in the Underlying Umbrella Policy and/or Schedule of Underlying Insurance in the Underlying Umbrella Policy - HBP Policy No. 3991380-02.

It is expressly agreed that liability shall attach to the Company only after the Underlying Insurers (as per Schedule A attached) have paid or have been held liable to pay the full amount of their respective ultimate net loss.

**CONDITIONS:**    PREMIUM ADJUSTMENT & MAINTENANCE OF UNDERLYING INSURANCE

Should any alteration be made in the premium for the Underlying Policy/ies during the currency of this Policy, the Company reserves the right to adjust the premium hereon accordingly. It is a condition of this Policy that the Underlying Policy/ies shall be maintained in full effect during the currency hereof except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or Occurrences occurring during the period of this Policy.

CHANGES IN THE UNDERLYING UMBRELLA POLICY (FOLLOWED POLICY)

If during the Policy Period of this Policy, the terms, conditions, exclusions or limitations of the Underlying Umbrella Policy are changed in any manner, these changes shall not be binding upon the Company unless agreed to in writing by the Company.

LAW OF CONSTRUCTION AND INTERPRETATION

This Policy, and any dispute, controversy or claim arising out of or relating to this Policy, shall be governed by and construed in accordance with the substantive internal law (i.e., excepting procedural and choice-of-law rules) of New York; provided, however, that the provisions, stipulations, exclusions and conditions of this Policy are to be construed in an even handed fashion as between the Insured and the Company. Where the language of this Policy or of the Underlying Umbrella Policy (Followed Policy) is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant provisions, stipulations, exclusions and conditions of this Policy or of the Followed Policy, as the case may be (without regard to the authorship of the language, without any presumption or arbitrary interpretations or construction in favour of either the Insured or the Company or reference to the "reasonable expectations" of either thereof or to contra proferentem) and with due regard for the practices and usages of the insurance business.


Swiss Re

**CONDITIONS** (*continued*):

UNIMPAIRED AGGREGATE

Notwithstanding anything to the contrary, the aggregate limits scheduled for the Underlying Policy/ies, including the existing Underlying Policy/ies or subsequent renewals or replacements thereof, shall, for purposes of this Policy, be deemed unimpaired and uneroded as of the Inception Date of this Policy, irrespective of whether or not the coverage periods of the Underlying Policy/ies are concurrent with the Policy Period hereof.

CANCELLATION

The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering advance written notice of cancellation to the Company. The Company may cancel this policy by mailing or delivering written notice of cancellation to the first Named Insured at least (a) ten (10) days before the effective date of cancellation if the cancellation is for nonpayment of premium; or (b) thirty (30) days before the effective date of cancellation if the cancellation is for any other reason. The Company will mail or deliver its notice to the first Named Insured's last mailing address known to it. The Notice of cancellation will state the effective date of cancellation. The policy will end on that date. If this policy is cancelled, the Company will send the first Named Insured any premium refund due. If the Company cancels, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

**PREMIUM:**  USD 265,500 (for the Policy Period/flat rated)
Including TRIA: USD 3,000

The Named Insured is liable for all taxes on or arising from the premium paid for this Policy, including but not limited to insurance premium taxes, excises, stamp duties, withholdings, charges, impositions, assessments, or similar items imposed by law of any jurisdiction. Any and all such amounts are in addition to the Premium. In addition for EU/EEA countries and Switzerland: Premium tax is added where appropriate. For all other countries, in which SR International is a non-admitted carrier, the Named Insured or its representative is liable to declare and pay any and all premium tax. SR International is not liable for such taxes in those countries.

**TOTAL DEDUCTIONS:**  12% brokerage included in the above premium

**SCHEDULE OF ENDORSEMENTS:**

- Schedule A – Schedule of Underlying Limits
- Schedule 1 - Underlying Umbrella Policy (Followed Policy)
- Endorsement 1 – Claims Cooperation Clause
- Endorsement 2 – Arbitration Clause
- Endorsement 3 – Exclusion of Liability for Terrorism ; Coverage Notice of TRIEA
- Endorsement 4 – Special Conditions



3

Swiss Re

*IN WITNESS WHEREOF*, the Company has caused this Policy to be signed and countersigned by duly authorized representatives of the Company as below:

Date of Issuance: 1st March 2010



Swiss Re 

Attaching to and forming part of Policy No. MH 63 326.1.13

## SCHEDULE A

Effective:     April 1st 2009

### SCHEDULE A: SCHEDULE OF UNDERLYING LIMITS

Underlying Insurance Limits:

1. **XL Europe**

    Policy Limit: USD 25,000,000 each occurrence and USD 25,000,000 in the annual aggregate where applicable

2. **Zurich Follow Form HBPP**

    Policy Limit: USD 25,000,000 each occurrence and

    USD 40,000,000 Genreral Aggregate

    USD 40,000,000 Products / Completed Operations Aggregate

~~Which are in excess of the Insured's Retentions as described below:~~

~~Insured's Retention:~~

| | |
|---|---|
| Each "Occurrence" / Offense (Coverage's A & B): | USD   250,000 |
| Each "Construction Occurrence" (Coverage's C, D & E):<br>As per Schedule of Designated Wrap-Up Projects, STF-GL-113-A-CW (11/06) | USD   500,000 |
| Each "Construction Occurrence" (Coverage's C, D & E) – All Other | USD 5,000,000 |
| Each "Occurrence" / Offense – Third Party Over Action – All Other | USD 1,000,000 |
| Each "Occurrence" / Offense – Third Party Over Action<br>As per Schedule of Designated Wrap-Up Projects, STF-GL-113-A-CW (11/06) | USD   500,000 |

Each Project Aggregate Self Insured Retention
for "Construction Occurrences"                                   Not Applicable

Annual Aggregate Self Insured Retention                          *USD 10,000,000 Minimum
*Adjustable upward based on Audited Revenues at a rate of USD 8.68 per USD 1,000 Revenue

Maintenance Self Insured Retention (Each "Occurrence"/Offense/
"Construction Occurrence")                                       USD   100,000



5

Swiss Re 

Attaching to and forming part of Policy No. MH 63 326.1.13

## SCHEDULE 1

### Underlying Umbrella Policy (Followed Policy)

Policy No.:  HBP Policy No. 3991380-02
Carrier:     Steadfast Insurance Company
Period:      1st April 2009 – 1st April 2010





Swiss Re

"Attached Endorsements"

| Policy Number: | MH 63 326.1.13 |
|---|---|
| Endorsement No.: | 01 |
| Insured: | Beazer Homes USA |
| Effective Date: | April 1st 2009 |

## CLAIMS COOPERATION CLAUSE

Notice, Inspection, Settlements, Handling, Cooperation, Recoveries, Subrogation

(1) Conditions Precedent. As conditions precedent to the Insured's right to any indemnity under this insurance agreement, the Insured shall give the Insurer written notice of occurrences, losses, and claims, shall permit inspection, and shall obtain the Insurer's consent prior to settling claims as required by paragraphs (2), (3), and (4) of this Article.

(2) Occurrences, Losses and Claims Requiring Notice. Any occurrence, loss, or claim which in the Insured's judgment is likely to involve an amount exceeding USD 5 million shall be notified to the Insurer within thirty (30) days after the Insured becomes aware of such occurrence, loss, claim. For each such occurrence, loss or claim notified, the Insured shall promptly report any changes in loss reserves or other significant developments that become known to it during the handling of the loss or claim and which may affect the final disposition or amount of any settlement.

(3) Insurer's Right of Inspection. The Insured shall, at all reasonable times and irrespective of whether or not any occurrence, loss, or claim has been notified, place at the disposal of the Insurer or its authorised representatives for inspection and copying at the Insurer's expense all books, records, and papers of the Insured. The Insurer's right of inspection shall exist after termination of this insurance agreement Period as long as one of the parties hereto has a claim arising under this insurance agreement against the other.

(4) Settlements. The Insured shall not, with respect to settlements which involve the participation of the Insurer, settle any such claims without first consulting with and obtaining consent from the Insurer.

(5) Claims Handling. The Insured shall take all steps reasonably necessary for a proper and businesslike investigation and evaluation of every occurrence, loss or claim for which the Insurer potentially may become liable.

(6) Right to Associate. The Insurer shall not be called upon to assume charge of the investigation, evaluation, settlement, defence or control of the handling of, any loss, claim or legal action, arbitration or other proceeding commenced against the Insured. At the Insurer's discretion and expense, and upon express written request therefor by the Insurer, the Insured shall, however, permit the Insurer to associate with the Insured or the Insured's underlying insurers in the investigation, evaluation, settlement, defence and/or handling of any such loss or claim or proceeding that potentially may affect the Insurer's liability under this Agreement. If the Insurer exercises this right to associate, the Insured shall cooperate fully with the Insurer or its authorised representatives in the investigation, evaluation, settlement, defence and/or handling of such loss, claim, or proceeding.

(7) Recoveries & Subrogation. Recoveries or payments recovered or received subsequent to loss settlement by the Insured shall be applied as if recovered or received prior to such settlement, and all necessary adjustments shall be made by the Insured and the Insurer. The Insurer shall be subrogated, insofar as it has indemnified the Insured under this Agreement, to all of the rights of the Insured against any person or entity legally responsible in damages for the loss indemnified.

Swiss Re

All other terms and conditions of this Policy remain unchanged.

"Attached Endorsements"

| Policy Number: | MH 63 326.1.13 |
| --- | --- |
| Endorsement No.: | 02 |
| Insured: | Beazer Homes USA |
| Effective Date: | April 1st 2009 |

### ARBITRATION CLAUSE

(1) Any dispute, controversy or claim arising out of or relating to this insurance agreement or the breach, termination or invalidity thereof shall be finally and fully determined in London, England under the provisions of the Arbitration Acts of 1950, 1975 and 1979 and/or any statutory modifications or amendments thereto, for the time being in force, by a Board composed of three arbitrators to be selected for each controversy as follows:

Any party may, in the event of such a dispute, controversy or claim, notify the other party or parties to such dispute, controversy or claim of its desire to arbitrate the matter, and at the time of such notification the party desiring arbitration shall notify any other party or parties of the name of the arbitrator selected by it. The other party who has been so notified shall within thirty (30) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within thirty (30) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of thirty (30) calendar days, apply to a judge of the High Court of Justice of England and Wales for the appointment of a second arbitrator and in such a case the arbitrator appointed by such a judge shall be deemed to have been nominated by the party or parties who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within thirty (30) calendar days after the appointment of the second arbitrator choose a third arbitrator. In the event of the failure of the first two arbitrators to agree on a third arbitrator within said thirty (30) calendar day period, either of the parties may within a period of thirty (30) calendar days thereafter, after notice to the other party or parties, apply to a judge of the High Court of Justice of England and Wales for the appointment of a third arbitrator and in such case the person so appointed shall be deemed and shall act as the third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Board of Arbitration for the controversy in question shall be deemed fixed. All claims, demands, denials of claims and notices pursuant to this Arbitration clause shall be given in accordance with the notice provisions of the policy.

(2) The Board of Arbitration shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may prescribe reasonable rules and regulations governing the course and conduct of the arbitration proceeding, including, without limitation, discovery by the parties.

(3) The Board shall, within ninety (90) calendar days following the conclusion of the hearing, render its decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on all the parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board and the same shall be final and binding on the parties thereto. Such decision shall be a complete defense to any attempted appeal or litigation of such decision in the absence of fraud or collusion. Without limiting the foregoing, the parties waive any right to appeal to, and/or seek collateral review of the decision of the Board of Arbitration by, any court or other body to the fullest extent permitted by applicable law.

(4) Any order as to the costs of the arbitration shall be in the sole discretion of the Board, who may direct to whom and by whom and in what manner they shall be paid.

Swiss Re

"Attached Endorsements"

| Policy Number: | MH 63 326.1.13 |
|---|---|
| Endorsement No.: | 02 - continued |
| Insured: | Beazer Homes USA |
| Effective Date: | April 1st 2009 |

(5) The Insurer and the Insured agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the Insurer by any of the Insured's other insurers in any jurisdiction or forum other than that set forth in this Arbitration clause, the Insured will in good faith take all reasonable steps requested by the Insurer to assist the Insurer in obtaining a dismissal of these claims (other than on the merits) and will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the Insurer would have been liable to such insurers for indemnity or contribution pursuant to this insurance agreement. The Insured shall be entitled to assert claims against the Insurer for coverage under this insurance agreement, including, without limitation, for amounts by which the Insured reduced its judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the Insurer and the Insured pursuant to this Arbitration clause, which arbitration may take place before, concurrently with and/or after the action or proceeding involving such other insurers; provided, however, that the Insurer in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this Policy and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers (and no determination in any such action or proceeding involving such other insurers shall have collateral estoppel, res judicata or other issue preclusion or estoppel effect against the Insurer in such arbitration, irrespective of whether or not the Insurer remained a party to such action or proceeding).

All other terms and conditions of this Policy remain unchanged.



9

**Swiss Re**

"Attached Endorsements"

| Policy Number: | MH 63 326.1.13 |
|---|---|
| Endorsement No.: | 03 |
| Insured: | Beazer Homes USA |
| Effective Date: | April 1st 2009 |

### EXCLUSION OF LIABILITY FOR TERRORISM

Notwithstanding any provision in this policy to the contrary, except the Endorsement below, this policy does not cover any liability, loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from, happening through, arising out of or in connection with any act of terrorism, regardless of any other cause contributing concurrently or in any other sequence to the loss, damage, cost or expense. For he purpose of this exclusion, terrorism means an actual or threat of violence or an act harmful to human life tangible or intangible property or infrastructure with the intention or effect to influence any government or to put the public or any section of the public in fear. In any action suit or other proceedings where the insurer alleges that by reason of this definition a loss damage, cost or expense is not covered by this policy, the burden of proving that such loss, damage, cost or expense is covered shall be upon the insured. In the event any portion of this clause is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

### A.   TRIA Coverage Endorsement

This policy offers coverage for Insurer's share of liability for loss caused by certified terrorist acts as defined in the Terrorism Risk Insurance Act of 2002 as amended in 2007 (TRIA). That part of the total premium amount paid for this policy for Swiss Re International that is attributed to coverage pursuant to TRIA is USD 3,000. Under TRIA, the United States government pays 85% of any insured loss that is covered by TRIA and exceeds Swiss Re International's retention as defined by TRIA. However, the premium charged for Swiss Re International's TRIA coverage does not include any charge for that portion of any terrorism loss to be paid by the United States government. TRIA contains a USD 100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds USD 100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed USD 100 billion, your coverage may be reduced.
The above Exclusion of Liability for Terrorism does not apply to the extent provided in this paragraph A.

All other terms and conditions of this Policy remain unchanged.



Swiss Re 

"Attached Endorsements"

| Policy Number: | MH 63 326.1.13 |
| --- | --- |
| Endorsement No.: | 04 |
| Insured: | Beazer Homes USA |
| Effective Date: | April 1st 2009 |

## SPECIAL CONDITIONS

### BASIS OF POLICY
This Policy is based on the underwriting information provided to the Insurer.

### ASBESTOS EXCLUSION
Unless agreed otherwise, it is hereby agreed that this Policy shall not apply to and does not cover any actual or alleged liability whatsoever for any claim or claims in respect of loss or losses directly or indirectly arising out of, resulting from, or in consequence of asbestos, in whatever form or quantity.

### LEADING UNDERWRITER DISCLAIMER
If a leading Underwriter is, has been, or will be appointed to represent underwriters hereon, then the following provisions shall apply to the Insurer's participation hereon, notwithstanding the fact that other insurers or reinsurers may accept or acquiesce in such appointment without reservation:

1. Any such Leading Underwriter shall have no authority to agree, negotiate, stipulate, bind, amend, settle, or litigate on behalf of the Insurer for purposes of the Insurer's participation;

2. The Insurer hereby retains and does not relinquish to any such Leading Underwriter its rights to obtain notice of any loss affecting this insurance directly from the Insured.

3. Any market custom or usage contrary to the above is hereby rejected to the extent of any such conflict.

4. Notwithstanding the foregoing, if the Leading Underwriter appoints counsel, then the Insurer hereon accepts that appointment of counsel until further notice.

### DUTY OF DOSCLOSURE: DISCLAIMERS THEREOF VOID
This Policy is provided on the basis that all information given to Insurer by or on the behalf of the Insured in its underwriting submission and/or in its responses to the underwriter's requests for information is reliable, truthful and complete to the best of the Insured's information and knowledge. The Insurer relies on the "duty of disclosure" as it exists under applicable law, and rejects an y attempt to negate that duty wholly or partially. The Insured, by accepting this Policy, waives the effect of any purported disclaimers of the Insured's duty to disclose to underwriters all material facts to the best of its knowledge that may be contained in such submission or in its responses to questions or requests for information, or in emails, cd roms, or internet websites used in providing or transmitting underwriting information.

### SEVERAL AND NOT JOINT LIABILITY
The liability of the Insurer shall be several and not joint and is limited solely to the extent of the Insurer's individual share. The Insurer is not responsible for the subscription of any co-subscribing insurer or reinsurer who for any reason does not satisfy all or part of its obligations.



11

Swiss Re 

"Attached Endorsements"

| Policy Number: | MH 63 326.1.13 |
| --- | --- |
| Endorsement No.: | 04 - continued |
| Insured: | Beazer Homes USA |
| Effective Date: | April 1st 2009 |

### SPECIAL CONDITIONS

PREMIUM PAYMENT WARRANTY

It is a condition precedent to any obligation of the Insurer that the Insurer's share of the Gross Premium quoted shall be paid in full to the Insurer within sixty (60) days after the Effective Date of the Agreement Period (or in respect of any additional or instalment premium, when due), time to be of the essence. The Insured agrees to make payment of Premium pro rata temporis for the time Insurer is on risk if this Agreement is cancelled for non-payment of premium.

If the Insurer's share of the Gross Premium due under the Agreement is not paid to the Insurer within sixty (60) days after the Effective Date of the Agreement period (or in respect of any additional or instalment premium, by the date it is due), then the Insurer shall have the right to cancel the Policy ab initio by giving not less than ten (10) days prior written notice of cancellation to the Insured. In the event of cancellation, any premium already paid to the Insurer shall be refunded to the Insured and any Loss Payments already paid to the Insured shall be refunded to the Insurer.

The Gross Premium is exclusive of all premium tax.

All other terms and conditions of this Policy remain unchanged.

