## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) | CASE NO. 2:09-MD-02047 |
| | ) | SECTION L |
| | ) | JUDGE FALLON |
| (Relates to *Amato v. Liberty Mutual Ins.,* No. 2:10-cv-00932) | ) ) ) | MAG. JUDGE WILKINSON |

### HARLEYSVILLE MUTUAL INSURANCE COMPANY'S ADDITIONAL MEMORANDUM OF LAW IN SUPPORT OF THE INSURANCE STEERING COMMITTEE'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE

#### Introduction

COMES NOW Harleysville Mutual Insurance Company (hereinafter referred to as "Harleysville") adopting and incorporating the Insurer Steering Committee's Memorandum of Law in Support of Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure as if fully set forth herein, but supplementing that filing with this Additional Memorandum of Law to particularly address issues relating to choice of law as applied to the claims against Harleysville. Based on the foregoing analysis, under any standard, the substantive law of the State of Alabama is due to be applied with regard to claims against Harleysville. Because Alabama law precludes actions such as this against a third-party's insurer, this Honorable Court has no subject matter jurisdiction over the claims against Harleysville, and consequently Harleysville is due to be dismissed from this action

#### Statement of Facts

On May 11, 2010, Plaintiffs filed their Amended Omnibus Class Action Complaint (V) (hereinafter referred to as "Amato"). Doc. 3132 to 3132-6. In the Amato action, the Plaintiffs invoked diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act, 28 U.S.C. § 1711, et seq. Doc. 3132, ¶ 1. The Amato action identifies Harleysville Mutual Insurance Company as an Insurance Company Defendant with its principal place of business in Pennsylvania. Doc. 3132-1, ¶ 478. Additionally, the Plaintiffs identified Mazer's Discount

Homes Centers, Inc. ("Mazer") as an importer, exporter, distributor, supplier or broker of Chinese drywall. Doc. 3132-1, ¶ 543. Although Mazer is incorporated in Delaware, it is located in Jefferson County, Alabama, has its principal place of business in Jefferson County, Alabama, and was issued insurance by Harleysville in Jefferson County, Alabama. <u>See</u> certified copies of the Harleysville policies attached as Exhibit A, and separately Exhibit B.[1] The policies were issued to Mazer at the following address: #2 South 41st Street, Birmingham, AL 35222-1929. <u>See</u> Exhibits A and B. The Harleysville policies issued to Mazer were placed by an insurance broker/agent located in Alabama. <u>See</u> Exhibits A and B. There are no other Harleysville insureds named in the <u>Amato</u> Complaint; therefore, the only reason Harleysville is a named party is by virtue of its issuance of insurance to Mazer. Doc. 3132-4, Schedule 1, and Doc. 3132-5, Schedule 2.

The <u>Amato</u> Complaint identifies a Direct Action Subclass (Subclass 1) comprised of Plaintiffs making claims against the Insurance Company Defendants under the Louisiana Direct Action statute. Doc. 3132-1, ¶ 645.[2] Harleysville is not a part of this Direct Action Subclass. The members of Subclass 1 and all remaining subclasses are identified in Schedule 1 attached to the <u>Amato</u> Complaint. <u>Id</u>.

Harleysville is identified as a part of Subclass 50. Doc. 3132-1, p. 131. Such a subclass is identified as follows:

> All owners and residents (past or present) of real property located in the United States containing Chinese drywall, where each of the Insured Defendants identified in Schedule1 was the distributor, supplier, importer, exporter, broker, builder, developer, contractor, or installer of the property, and where the Insurance Company Defendants identified in Schedule 1 provided an Insurance Policy covering the Insured Defendant.

Doc. 3132-1, p. 129.

---

[1] This Court has previously held that insurance policies attached to a Rule 12(b) motion to dismiss may be considered because they are central to the Plaintiffs' coverage claims. <u>See</u> <u>In re Chinese Manufactured Drywall Products Liability Litigation</u>, ___ F.Supp.2d ___ 2010 WL 5288032, *2 (E.D. La. Dec. 16, 2010).

[2] A review of Schedule 1 shows that the no Subclass 1 members are making any claims against Harleysville such that Harleysville is not a "Direct Action Defendant" as defined in the Complaint.

Schedule 1 of the <u>Amato</u> Complaint identifies the alignment of the representative Plaintiffs with the appropriate Insured Defendant(s) and Insurance Company Defendant(s). Doc. 3132-4, Schedule 1.   A review of Schedule 1 shows the following Plaintiffs as the only Plaintiffs asserting claims against Mazer and thereby associated in Subclass 50: Samuel Ledford, Danny and Cathy Headley, Jeremy Macon, Brenda Owens and Stanley and April Thornton.  Doc. 3132-4, pp. 92-93.  Each of these Plaintiffs identified as having claims against Mazer, and consequently Harleysville, resides in the State of Alabama and is making claims relating to homes located in the State of Alabama.  <u>See</u> <u>Id</u>. and Doc. 3132, ¶¶ 197, 249, 256, 299 and 395. None of the above Plaintiffs have received judgments against Mazer.

As to the claims made against Harleysville in the <u>Amato</u> Complaint, the only requested action[3] is a declaratory judgment whereby the Plaintiffs request a declaration that the Insurance Company Defendants are obligated to indemnify the Insured Defendants in connection with the underlying claims.[4]  Doc. 3132-1, Count I.

## CHOICE OF LAW

### I.      Louisiana Choice Of Law Rules Apply.

Because the Plaintiffs have invoked diversity jurisdiction, this Court must apply the substantive law of Louisiana and federal procedural law.  <u>Erie RR Co. v. Tomkins</u>, 304 U.S. 64, 78-79 (1938).[5] State substantive law includes Louisiana's choice of law principles.  <u>Klaxon v.</u>

---

[3] The Plaintiffs state that their claim for equitable and injunctive relief is made against All Defendants but a review of the assertions of this Count make it clear that no facts have been alleged relative to any of the Insurance Company Defendants. Doc. 3132-1, Count XIV.

[4] There is currently a declaratory judgment action pending in the Circuit Court of Jefferson County, Alabama (CV-2009-3513) between Harleysville and Mazer.  This Alabama state court declaratory judgment action was filed on November 30, 2009, approximately four months prior to the filing of the <u>Amato</u> complaint, and more than six months prior to Harleysville being named as a defendant in <u>Amato</u>. Harleysville respectfully refers this Honorable Court to its concurrently filed Motion and Memorandum of Law related to this prior action filed in the State of Alabama.

[5] In <u>Audler v. CBC Innovis Inc.</u>, 519 F.3d 239, 248 (5th Cir. 2008), the Fifth Circuit, in relation to the Class Action Fairness Act ("CAFA"), held:
"Because CAFA is based on diversity jurisdiction, state substantive law governs . . . . *See Braud v. Transp. Serv. Co.*, 445 F.3d 801, 803 (5th Cir.2006) ('CAFA broadens diversity jurisdiction for certain

Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Simply stated, a "federal court, sitting in diversity, applies the choice of law rules from the forum state."  Travelers Cas. & Sur. Co. of America v. Wright Ins. Agency, Inc., 404 F.3d 927, 928 (5th Cir. 2005).  Therefore, Louisiana choice of law rules apply.

## II.    Louisiana Choice Of Law Rules Dictate That Alabama Substantive Law Applies.

In determining choice of law issues related to direct actions against an insurer, a Louisiana state court considers La. Civ. Code Article 3544, relating to loss distribution, as well as La. Civ. Code Article 3537, relating to contract interpretation.  See Levy v. Jackson, 612 So. 2d 894 (La. App. 4th 1993).  Both Articles dictate that the substantive law of Alabama be applied to determine the propriety of direct actions against an insurer.

### A.    Louisiana Civil Code Article 3544 Dictates That Alabama Law Applies

Because loss distribution and financial protection are implicated by the present set of facts, La. Civ. Code Article 3544 is applicable.  This Article states:

> Issues pertaining to loss distribution and financial protection are governed, as between a person injured by an offense or quasi-offense and the person who caused the injury, by the law designated in the following order:
>
> (1) If, at the time of the injury, the injured person and the person who caused the injury were domiciled in the same state, by the law of that state. Persons domiciled in states whose law on the particular issue is substantially identical shall be treated as if domiciled in the same state.

In the present case, all of the Plaintiffs with claims against Mazer reside in Alabama and are making claims only as to homes located in Alabama.  See Doc. 3132-4, pp. 92-93.  As such the "person injured" for the purposes of Article 3544 is domiciled in Alabama.   Additionally, Mazer, the alleged tortfeasor, is domiciled in Alabama where its principal place of business is located.[6]

---

qualifying class actions.'); Ashland Chem. v. Barco Inc., 123 F.3d 261, 265 (5th Cir.1997) ('Under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), in a diversity case a federal court must apply the substantive law of the state while following federal procedural rules.')."

[6] For the purposes of this argument, the domicile of Mazer is Alabama because it is the location of Mazer's principal place of business and is most pertinent to determining which state's direct action

Because both the injured party and the tortfeasor are domiciled in Alabama, Article 3544 dictates that Alabama law relative to direct actions against insurers controls.  See Levy v. Jackson, 612 So.2d 894 (La. App. 4th Cir. 1993) (Interpreting Article 3544 to mean Alabama law was applicable against an insurer when the Plaintiffs and alleged tortfeasor (the insured) were residents of Alabama).

### B.   Louisiana Civil Code Articles 3537 And 3515 Dictate That Alabama Law Applies.

Also pertinent to the determination of Louisiana Choice of law rules are La. Civ. Code Articles 3515 and 3537.  Article 3515 states:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applies to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of holding the justified expectations of the parties and minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Article 3537 states:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiations, formation, and performance of the contract, the location of the contract, and the place of domicile, habitual residence or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from under imposition by the other.

---

statute is applicable. See La. Civ. Code 3518.  Here, the issues involve Mazer's relationships with third parties rather than the internal affairs of Mazer such that Mazer is domiciled in Alabama. See La. Civ. Code 3518, Revision Comment (c) and CXY Chemicals U.S.A. v. Gerling Global General Ins. Co., 991 F.Supp. 770, 775 (E.D. La. 1998) (When issues involve external relationships rather than internal affairs "domicile" is the principal place of business).

Articles 3515 and 3537 are intended to be read together with the objective being to identify the state whose policies would be most seriously impaired if its law were not applied. La. Civ. Code Article 3537, Revision Comment (c).  The first step in making the choice of law determination under these Articles is to identify the relevant policies of the involved states.  La. Civ. Code Article 3537, Revision Comment (d).  The second step of the process is to evaluate the strength and pertinence of these policies in light of (1) the pertinent contacts of each involved state to the parties and the transaction; (2) the nature, type and purpose of the contract; and (3) the policies listed in clause (3).  La. Civ. Code Article 3537, Revision Comment (d).  As discussed below, these considerations dictate the application of Alabama substantive law.

### 1.   Relevant Policies Of Alabama And Louisiana.

The State of Louisiana has no actual interest in the controversy among the Plaintiffs, Mazer and Harleysville because none of these three is a Louisiana resident, no act upon which this suit is based occurred in Louisiana, nor were there insurance policies issued by Harleysville to Mazer in the State of Louisiana.  The only interest that the State of Louisiana might have in this controversy as it relates to Harleysville is providing to Alabama residents a mechanism by which they could sue a third-party's insurers directly.  See Holcomb v. Universal Ins. Co. , 640 So.2d 718 (La. App. 3rd Cir. 1994).   However, Louisiana Courts have refused to apply Louisiana's direct action statute in situations in which the insured was not located in Louisiana, the damage at issue did not occur in Louisiana and the insurance policy was not issued in Louisiana.  See Signal Oil & Gas Co. v. Barge W-701, 654 F.2d 1164, 1175 (5th Cir. 1981) (Citing Webb v. Zurich Ins. Co., 251 La. 558, 205 So.2d 398 (1967)) ("A direct action against the insurer is available when the insurance contract at issue was written or delivered in the State of Louisiana or if the injury occurred within the state") and Sprow v. Hartford Ins. Co., 594 F.2d 412 (5th Cir. 1979) (Citing Louisiana state court decisions and holding that the direct action statute applies only when the tort giving rise to the insurer's liability occurs in Louisiana or the insurance

6

policy was issued in Louisiana).   Moreover, Louisiana has not only espoused a policy of not applying its direct action statute to cases where the accident or injury did not occur in Louisiana nor was the policy written or delivered in Louisiana, but Louisiana courts have held that if these requirements are not met the insurer is entitled to a dismissal of the claim against it.   See Diamond v. Progressive Sec. Ins. Co., 934 So.2d 739, 742 (La. Civ. App. 1st 2006).

Alabama has stated its policy as to the prohibition against direct actions by a plaintiff against a third-party's insurer in Alabama Code § 27-23-2.   By adopting this statute, Alabama chose to provide its citizens a limited remedy against a third-party's insurer for enforcement of that insurer's obligations to pay damages after a judgment against its insured. Ala. Code § 27-23-2.   See State Farm Mut. Ins. Co. v. McClendon, 269 Ala. 456, 114 So.2d 153 (1959). Furthermore, the statute enables persons suffering damage to acquire a lien against the loss and gives them rights to damage or indemnity arising under the policy which can be enforced in his or her own name.  Id.

In the present case, Harleysville is an insurance company that issued insurance policies in the State of Alabama to an Alabama insured.   As such, Alabama has an interest in protecting the integrity of insurance contracts in Alabama, as well as protecting insurance companies who write policies in Alabama and charge premiums based on an understanding of the laws of the State of Alabama.  Furthermore, Alabama has a right to regulate its insurance industry and has done so by preventing direct actions against insurers who write policies under its laws.  This is especially true here were the policy was negotiated, executed and formed in Alabama and the activities insured were those of an Alabama company.   See Holcomb v. Universal Ins. Co., 640 So.2d 718 (La. App. 3rd Cir. 1994); Breese v. Hadson Petroleum (USA), Inc., 955 F.Supp. 648 (M.D. La. 1996) (Stating that under Louisiana's choice of law rules, Mississippi law applied when a policy was negotiated and executed in Mississippi because Mississippi has a significant policy interest in regulating its insurance industry) and Shell Oil Co. v. Hollywood Marine, Inc., 701 So.2d 1038 (La. Civ. 5th 1997) (Under Louisiana choice of law rules, when a party

contracted for insurance in Texas and is doing business in Texas, even though an injury occurred in Louisiana, Texas law applied to the insurance contract because Texas clearly has a legitimate interest in regulating insurance contracts delivered to and insuring activities of a Texas business).

Considering the foregoing policies of Louisiana and Alabama, Harleysville submits that the substantive law of the state of Alabama should apply because to apply Louisiana law would effectively abrogate an Alabama contract by the law of another State that essentially has no interest in that contract.

### 2. Pertinent Contacts Favor The Use Of Alabama Law.

In the present case, the only contact that the State of Louisiana has with this action is that it is the forum state. All of the pertinent contacts outlined in Article 3537 are contacts with Alabama: the insurance contract was negotiated, formed, executed and performed in Alabama[7]; the insured is located in Alabama and the Plaintiffs are in Alabama. Additionally, the property, and any alleged damaged thereto, is located in Alabama. The insurance contract was written to conform to Alabama law, with the risk of loss to be underwritten based on Alabama law.[8] As such, Alabama is clearly the state with the only significant pertinent contacts. Accordingly, Alabama's policies would be the most seriously impaired if its law relating to direct actions was not applied in this case.

### 3. The Nature, Type And Purpose Of The Contract Support The Use Of Alabama Law.

The contracts at issue are liability insurance policies. These insurance policies were negotiated by an Alabama insurance brokerage agency and issued in Alabama to an Alabama

---

[7] Louisiana Courts tend to apply the law of the forum in which the insurance policy was executed. See Breese v. Hadson Petroleum (USA), Inc., 955 F.Supp. 648, 650, n. 5 (M.D. La. 1996) (Stating as such and listing numerous cases in support thereof) and Resure, Inc. v. Chemical Distributors, Inc., 927 F.Supp. 190, 192 n. 4 (M.D. La. 1996) (Stating that Louisiana courts consistently apply the law of the state in which the insurance policy was executed and citing several cases).

[8] Alabama Code § 27-14-22 mandates: "All contracts of insurance the application for which is taken within this state, shall be deemed to have been made within this state and subject to the laws thereof."

insured.   The risk of loss was underwritten with the presumption, consistent with Ala. Code § 27-14-22, that Alabama law would govern the interpretation of the contracts.   As such, the substantive law of Alabama should be applied.

          **4.**     **The Policies Referred To In Article 3515 Dictate The Use Of Alabama Law.**

Pursuant to Article 3537, the policies referred to in Article 3515 are to be considered as part of the choice of law analysis.   The policies in Article 3515 also support the use of Alabama law in this action.   The relationship of Alabama to the parties and the dispute is significantly greater than the relationship of Louisiana to the parties and the dispute.   Louisiana's only contact with this case is that it is the forum of the action.   Every other relevant contact is found in Alabama: the parties, the insured, the contract and the property at issue.   As such, this policy supports the imposition of Alabama law in this case.

Article 3515 also mandates a discussion of the policies and needs of the interstate and international system.   Here the policy of the interstate system dictates uniform application of law especially when one state, Louisiana, has no relation to the place of contracting and the parties contracting.   To hold that Alabama law applies would be to favor interstate uniformity of result.   Alabama has "strongly espoused" its position as to direct actions involving insurers and third parties and such position is clearly implicated by the posture of this case.   Additionally, applying Alabama law would uphold the justified expectation of the parties.   Harleysville expected that an action involving an insurance contract formed and delivered in Alabama to an Alabama corporation would be construed under Alabama law.   See Ala. Code § 27-14-22 ("All contracts of insurance the application for which is taken within this state, shall be deemed to have been made within this state and subject to the laws thereof.")   This is especially true when the Plaintiffs and the property at issue are located in Alabama.   See Levy v. Jackson, 612 So.2d 894 (La. Civ. App. 4th 1993) (Holding that an insured could not expect coverage of risks not contemplated by him or the insured where the policy was issued in Alabama and Alabama risks

of loss were accepted).  In short, none of the parties had any reason to expect that Louisiana

law would be applied. Therefore, the policies listed in Article 3515 support the use of Alabama

law.

   **5.    The Policies Of Facilitating The Orderly Planning Of Transactions, Of Promoting Multistate Commercial Intercourse And Of Protecting One Party From Undue Imposition By The Other Support The Use Of Alabama Law.**

   The application of Alabama law facilitates the orderly planning of transactions, promotes

multistate commercial intercourse and prevents an undue imposition on Harleysville.   As

discussed above, Alabama is the location of every significant contact in this litigation.  To apply

Alabama law then creates predictability and therefore facilitates transactional planning and

multistate commerce.  Additionally, to apply Alabama law prevents the undue imposition of a

direct action upon Harleysville, a company whose actions relevant to the instant dispute and

parties have no connection to Louisiana.   Therefore, Alabama law should be applied in the

present case.

   **6.    Alabama's Policies Would Be Most Seriously Impaired If Its Laws Were Not Applied In This Action.**

   As discussed above, Alabama law would be most seriously impaired it its law regarding

direct actions is not applied in this action.  Alabama is the location of every significant contact

and interest relating to the insurance contract at issue.  Louisiana Courts have repeatedly

refused to impose the Louisiana direct action statute upon out-of-state insurers even when there

were significant contacts and interests found in Louisiana.  See Esteve v. Allstate Ins. Co., 343

So.2d 353 (La. Civ. App. 4th 1977) (Louisiana direct action statute not applicable to personal

injury suit filed by Louisiana resident in Louisiana court against insurer of nonresident driver

when automobile accident giving rise to the damage occurred in Florida and insurer issued

policy to nonresident driver in that state) and Cook v. Herring, 521 So.2d 807 (La. Civ. App. 2nd

1988) (Louisiana direct action statute not applicable where the policy was prepared in Louisiana

but was issued and delivered in Mississippi by Mississippi agent to Mississippi agent).  For all of these reasons, Alabama law is due to be applied by this Court.

## III.   Louisiana And Alabama Law Regarding Direct Action Conflict.

In the present case, there is a direct conflict of the laws of the State of Louisiana and the State of Alabama.  Direct actions against a third-party's insurer are authorized by statute under Louisiana law.  See La. R.S. 22:1269.  Alabama law, however, prohibits direct actions against a third-party's insurer until after a final judgment is obtained against the insurer's insured.  See Ala. Code § 27-23-2.  Harleysville should be dismissed from the Amato action because it is an improper direct action.

## IV.   The Louisiana Direct Action Statute Is Not Applicable To The Present Case.

Even assuming Louisiana's substantive law is applicable, which it is not, Louisiana's direct action statute cannot be applied to this set of facts based on the language of the statute and case law interpreting the statute because the policy was not written or delivered in Louisiana, nor did the accident or injury occur in Louisiana.  See La. R. S. 22:1269(B)(2).[9]  Case law has repeatedly enforced this mandate in relation to the direct action statute.  See Diamond v. Progressive Sec. Ins. Co., 934 So.2d 739, 742-743 (La. Civ. App. 1st 2006) (Truck driver injured in accident in Alabama had no right of direct action against Pennsylvania automobile insurer under policy issued to driver's Mississippi employer even though the truck was garaged in Louisiana because the policy was written and delivered outside the state and the accident occurred outside of the state); Easterly v. Dynamic Enterprise, Inc., 334 So.2d 467, 470 (La. Civ. App. 1st 1976) (Plaintiffs had no right of action arising out of a motor vehicle accident against insurer under direct action statute where accident occurred in another state and insurance policy was written or delivered in another state) and Sacher v. Columbia Steamship

---

[9]   This portion of the statute states: "This right of direct action shall exist whether or not the policy of insurance sued upon was written or delivered in the state of Louisiana and whether or not such policy contains a provision forbidding such direct actions, provided the accident or injury occurred within the state of Louisiana...."

Co., 493 F.2d 1109, 1110 (5th Cir. 1974) (Employee of owner of vessel could not maintain action under Louisiana Direct Action Statute against owner's insurer for injuries on the vessel where accident did not take place within Louisiana and insurer's policy was neither written nor delivered in that state). In the present case, the accident or injury at issue occurred in Alabama. In the present case, the policy was not written or delivered in Louisiana, nor did any accident occur in Louisiana. Accordingly, the Louisiana Direct Action statute is inapplicable to the present controversy related to Harleysville.

### ALABAMA LAW

Alabama law clearly prohibits a direct action against an insurer where such claims are not made by a party to the insurance contract. See Ala. Code § 27-23-2.[10] Instead, Ala. Code § 27-23-2 allows an injured party to bring an action against the insurer only after he has recovered a judgment against the insured. Baughman v. Harbor Ins. Co., 450 So.2d 1090, 1092 (Ala. 1984) (citing Maness v. Alabama Farm Bureau Mutual Casualty Ins. Co., 416 So.2d 979 (Ala. 1984)). In the present case none of the Harleysville Plaintiffs have received a judgment against Mazer such that this direct action, in the form of a declaratory judgment, is due to be dismissed under Alabama law.

Alabama Courts have repeatedly dismissed direct actions in the form of declaratory judgments brought against insurers by third parties to the contract. In State Farm Automobile Insurance Co. v. Brown, 894 So.2d 643 (Ala. 2004), a tort claimant brought an action against the tortfeasor as well as a declaratory judgment against the tortfeasor's liability insurer. In reversing and remanding the trial court and ordering the dismissal of the insurer, the Alabama

---

[10] This section states: "Upon the recovery of a final judgment against any person, firm, or corporations by any person, including administrators or executors, for loss or damage on account of bodily injury, or death or for loss or damage to property, if the defendant in such action was insured against the loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurer and the defendant applied to the satisfaction of judgment, and if the judgment is not satisfied within 30 days after the date when it is entered, the judgment creditor may proceed against the defendant and the insurer to reach and apply the insurance money to the satisfaction of the judgment."

Supreme Court discussed whether a plaintiff in a personal injury action can in effect bring a declaratory judgment action in light of Ala. Code § 27-23-2. Id. at 647-648. The Court reviewed numerous cases dismissing direct actions by injured parties against insurers prior to a final judgment and held that there was no justiciable controversy because the tort claimant had yet to obtain a judgment against the insured which would obligate the insurer to the tort claimant in any way. Id. at 648-650. See also Knox v. Western World Ins. Co., 893 So.2d 321 (Ala. 2004) (Tort claimant did not have standing to bring a claim for declaratory relief against a tortfeasor's liability insurer prior to a final judgment determining the tortfeasor's liability being entered); Norton v. Belarus Machinery of USA, Inc., 2005 WL 1501452 (M.D. Ala. 2005) (Dismissing declaratory judgment action against insurers of tortfeasor based on Ala. Code § 27-23-2) and Maness v. Alabama Farm Bur. Mut. Cas. Ins. Co., 416 So.2d 979 (Ala. 1984) (not followed on other grounds by Woodall v. Alfa Mut. Ins. Co., 658 So.2d 369, 373 (Ala. 1995)) (Cross-claims of the insured parties against the insurance carriers in a declaratory judgment action brought by the carriers were tantamount to a direct action not allowable under Alabama law).

Plaintiffs associated with Harleysville in Subclass 50 - Samuel Ledford, Danny and Cathy Headley, Jeremy Macon, Brenda Owens and Stanley and April Thornton - are making a direct action claim against Harleysville in the form of a declaratory judgment. None of these Plaintiffs have obtained a judgment against Mazer. Under Alabama law, these Plaintiffs cannot maintain a direct action against an insurer without first obtaining a judgment against the insured. Stated another way, a suit against an insurer cannot not be brought by a nonparty to the insurance policy prior to judgment.[11] Here, the Plaintiffs who have stated claims against Harleysville are not parties to the contract of insurance between Harleysville and Mazer and, furthermore, have not obtained any judgments against Mazer. Therefore, the claims made against Harleysville in the Amato Complaint are due to be dismissed under Ala. Code § 27-23-2.

---

[11] Indeed, Harleysville's policies issued to Mazer incorporate this very principle prohibiting direct actions against Harleysville, stating that "no person or organization has a right . . . to join us as a party or otherwise bring us into a 'suit' asking for damages from an insured . . . ." Exhibit A.

**CONCLUSION**

Based on the foregoing, Harleysville respectfully requests that this Honorable Court dismiss it from this action pursuant to Rule 12(b)(1), Fed. R. Civ. P.

James M. Smith
Stockham, Carroll, & Smith, P.C.
Attorney for Harleysville Mutual
Insurance Company
2204 Lakeshore Drive, Suite 114
Birmingham, AL 35209
Tel:     (205) 879-9954
Fax:     (205) 879-9990
Alabama State Bar: ASB-9466-I71J
Email: jms@stockhampc.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Notice of Appearance has been served on Plaintiffs' Liaison Counsel, Russ Herman, (drywall@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, (kmiller@frilot.com),  by U.S. Mail, and e-mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 24th day of March, 2011.

James M. Smith
Stockham, Carroll, & Smith, P.C.
Attorney for Harleysville Mutual
Insurance Company
2204 Lakeshore Drive, Suite 114
Birmingham, AL 35209
Tel:    (205) 879-9954
Fax:    (205) 879-9990
Alabama State Bar: ASB-9466-l71J
Email: jms@stockhampc.com