**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE: CHINESE-MANUFACTURED** | * | **MDL NO. 2047** |
| **DRYWALL PRODUCTS** | * | |
| **LIABILITY LITIGATION** | * | **SECTION: L** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to all cases** | * | |
| | * | **MAG. JUDGE WILKINSON** |

* * * * * * * * * * * * * * * * * * * * * * * * *

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

**MAY IT PLEASE THE COURT:**

Interior/Exterior Building Supply, L.P. submits this Memorandum in support of its Motion for Summary Judgment:

**I.    <u>Brief Introduction</u>**

**"Should have known"**

The PSC's position concerning Interior Exterior's alleged liability has undergone a significant and unmistakable shift. In written discovery responses, the PSC failed to produce one witness, document, or shred of evidence leading one to believe that Interior Exterior actually knew any of the drywall it sold was defective.  While the PSC initially claimed that Interior Exterior was aware of the defective nature of the Chinese drywall it sold, while it was selling it, the PSC now claims that that Interior Exterior *should have been aware* of alleged problems with the drywall it sold.   This fact bears mention due to the PSC's sworn statement attached to its

Opposition to Interior Exterior's previous motion for partial summary judgment regarding the duty of a good faith seller under Louisiana law.[1]  That statement alleged, first and foremost:

> Plaintiffs reasonably believe that discovery will lead to competent evidence establishing (among other things) the following facts which are relevant to Interior Exterior's Motion for Partial Summary Judgment.
>
> A.      That Interior Exterior *knew* that the Chinese Drywall it was selling was defective.  (emphasis added).

That the PSC's case now centers on the allegation that Interior Exterior *should have known* that the drywall it sold was defective shows that, despite depositions of hand selected Interior Exterior personnel, numerous inspections, consultation with various experts, fact investigation with potential class members and other forms of discovery, the PSC has uncovered no evidence that Interior Exterior actually knew the drywall it sold was defective.  Because the PSC has discovered no such evidence, the PSC has been forced to essentially abandon its primary claim against Interior Exterior, and instead, focus on a new claim that Interior Exterior "should have known" the drywall was defective.

This distinction is important.  A bad faith seller in Louisiana is defined as "[a] seller who *knows* the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he *knows* it does not have…"[2]  The PSC has not been able to produce any evidence that Interior Exterior knew the drywall it sold was defective.  Accordingly, Interior Exterior is entitled to judgment, as a matter of law, that it is a good faith seller for purposes of redhibition.

## II.      <u>Background</u>

Interior Exterior is a Louisiana Limited Partnership engaged in the business of selling products used in commercial and residential building, including insulation, sheetrock and other

---

[1] Rec. Doc. No. 341-2
[2] *See* La. Civ. Code. Art. 2545 (1995) (emphasis added)

building materials. Until early 2006 – when a domestic drywall shortage partially resulting from Hurricane Katrina occurred – Interior Exterior had never imported or sold Chinese drywall. Following Hurricane Katrina, however, the only way for Interior Exterior to meet local demand was to begin selling imported drywall.

Interior Exterior learned of the availability of imported drywall through its relationship with certain employees of Knauf USA, a domestic insulation distributor. Interior Exterior had a long standing relationship with Knauf USA. Specifically, Jeff Brisley of Knauf USA informed James Geary, a principal of Interior Exterior, that Knauf overseas could provide drywall to Interior Exterior.[3] Interior Exterior had purchased insulation from Knauf USA for years, and had no reason to suspect that products endorsed by Knauf USA and manufactured by other Knauf entities were defective.[4]

At or around the time of Interior Exterior's first order of Chinese drywall in January of 2006, the drywall supply shortage was so severe that Interior Exterior was turning numerous orders down due to lack of available product.[5] The severe supply shortage, along with Interior Exterior's existing relationship with Knauf, led Interior Exterior to order drywall from Knauf Tianjin.[6]

The Knauf drywall Interior Exterior imported and later sold came with numerous specific warranties, including a Certificate of Origin, a mill certificate, an ASTM certificate, a Beneficiary Signed Statement, a certification that the sheetrock was properly packaged, a Certificate of Warranty, and a Certificate of Quality, Quantity and Condition.[7] As a non-manufacturer seller of a product, Interior Exterior is entitled to rely upon the warranties of a

---

[3] *See*, Exhibit A, "Geary Depo.," p. 56-58
[4] Geary Depo p. 55-57
[5] Geary Depo p. 56-58
[6] Geary Depo p. 56-58
[7] Geary Depo p. 30-40

3

manufacturer.[8]  Further, Interior Exterior has no duty to perform an additional inspection under the law.[9]  In light of the prior relationship with Knauf and the warranties provided, it was reasonable not to perform any testing.  The only inspections ever performed by Interior Exterior were visual inspections conducted contemporaneously with the loading of drywall to assure the product was in good condition and not damaged.[10]  It has been discovered that Knauf breached its warranties to Interior Exterior.  Such breach is the sole fault of Knauf, and in that regard, Interior Exterior is put in a similar position as those down the chain of sale.

Interior Exterior sold Chinese drywall imported from Knauf until December 2006, or at the latest, early 2007.[11]  When the supply of Knauf drywall could no longer accommodate local demand, Interior Exterior completed one small drywall purchase from Metro Resources Corporation, which was selling Chinese drywall imported from Taishan.[12]  Interior Exterior received the same warranties from Metro Resources Corporation regarding the Taishan product as it had from Knauf.[13]  Again, Interior Exterior had no reason to believe that Taishan's product was defective, and further, is entitled to rely on those warranties provided by Metro Resources Corporation and Taishan.  To this day, it is still unclear exactly what percentage of either Taishan or Knauf Tianjin Chinese drywall is actually defective.  Interior Exterior imported Taishan product on one occasion, on July 30, 2006.[14]  Interior Exterior sold out of Taishan drywall around the same time it sold its last Knauf board, in early 2007.[15]

---

[8] *See See*  La. R.S. §9:2800.58
[9] *See, Slaid v. Evergreen Indem., Ltd.,* 32-363 (La.App.2d Cir.10/27/99), 745 So.2d 793; *Harris v. Atlanta Stove Works, Inc.*, 428 So.2d 1040, 1043 (La.App. 1st Cir.), writ denied, 434 So.2d 1106 (La.1983) (a non-manufacturer seller "…is not required to inspect a product prior to sale to determine the possibility of inherent vices or defects.")

[10] Geary Depo p.81-84, 133-134
[11] Geary Depo p.62-63
[12] Geary Depo p. 132
[13] Geary Depo p.64
[14] *See* Exhibit B, Interior Exterior Distributor  Profile Form
[15] Geary Depo p. 63-64

Interior Exterior did not learn of any defects with Chinese drywall until January 12, 2009, nearly two years after it had stopped selling both Knauf and Taishan product.[16]  No Interior Exterior employee ever reported any defects with Chinese drywall prior to that time, nor did Interior Exterior receive any reports from customers or consumers of defects with drywall it had sold.[17]

Knauf, on the other hand, at the very least learned of potential defects in its product on or around December 13, 2006, when Professor Hans Hummel acknowledged reports about smell issues with the drywall.[18]  His report was based on tests he conducted in Florida.  Instead of notifying its customers like Interior Exterior, Knauf concealed its knowledge of the defect.[19] Knauf's concealment of the defective nature of its product prevented Interior Exterior from learning of the alleged defects in the drywall.

In light of the warranties provided by Knauf and Taishan, Interior Exterior had no reasonable duty to test the product it imported.  Further, because Interior Exterior did not hold the product out as its own, Interior Exterior had no legal duty to perform such tests.  Interior Exterior acted reasonably, did not learn of defects in the drywall until 2009, and had no method for discovering such problems at any point before that time.  As a result, Interior Exterior is clearly a good faith seller under Louisiana redhibition law.

Because the PSC has produced no competent evidence establishing that Interior Exterior knew any of the drywall it sold was defective, Interior Exterior is entitled to judgment, as a matter of law, that it is a good faith seller for purposes of redhibition.

---

[16] Geary Depo p. 314
[17] Geary Depo p.101-102
[18] Isabel Knauf Depo p. 338-339 (under seal)
[19] Isabel Knauf Depo p. 322-329 (under seal)

III.   <u>Law and Argument</u>

A.   **Summary Judgment Standard**

A party against whom a claim is brought may move for summary judgment in its favor as to all or any part of the claim asserted against it.[20]   Summary Judgment is appropriate if the pleadings, depositions, discovery responses and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[21]

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may…grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."[22]

B.   **Liability of Seller who knew not of the defect**

Plaintiffs' cause of action arises under Louisiana Civil Code Art. 2520, Warranty Against Redhibitory Defects:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or is so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect.  The existence of such defect gives the buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for the a lesser price.  The existence of such a defect limits the right of a buyer to a reduction of the price.[23]

---

[20] Fed. R. Civ. Pro. 56(b)
[21] *Id.*
[22] Fed R. Civ. Pro. 56
[23] La. Civ. Code art. 2520 (1995)

Louisiana Civil Code Article 2531 sets forth the obligations of a good faith seller when a product contains a redhibitory defect:

> A seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect. If he is unable or fails so to do, he is then bound to return the price to the buyer with interest from the time it was paid, and to reimburse him for the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, less the credit to which the seller is entitled if the use made of the thing, or the fruits it has yielded, were of some value to the buyer.[24]

"Under LSA-C.C. Art. 2531 the 'good faith' seller is bound to repair, remedy, or correct the vices in the thing sold, and failing to do so, the purchaser must be reimbursed the purchase price and all reasonable related expenses."[25]   In *Pratt v. Himel Marine, Inc.*, 01-1832  (La. App. 1 Cir. 6/21/02), 823 So.2d 394, the state First Circuit Court of Appeal addressed a claim brought by the purchaser of a vessel that contained a redhibitory defect.  The Court found that Himel Marine, the seller of the boat, was not a manufacturer and did not know of the redhibitory defect. On the issue of damages, the Court held that:

> As [a good faith seller], Himel Marine was only bound to repair, remedy, or correct the defect. If unable to do so, a good faith seller is then bound to return the price to the buyer with interest from the time it was paid, and to reimburse him for the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, less the credit to which a seller is entitled if the use made of the thing, or the fruits it has yielded, were of some value to the buyer.[26]

"The purpose of the redhibition action in Louisiana, as was the case in Roman law, has been to restore the status quo."[27] "The seller in good faith had only to restore the purchase price paid and any expenses incurred (Article 2509, La. Civil Code of 1825), while the seller in bad

---

[24] La. Civ. Code. art. 2531 (1995)

[25] *Weber v. Crescent Ford Truck Sales, Inc.*, 393 So.2d 919, 922 (La. App. 4 Cir 1991).

[26] *Id.*

[27] *Young v. Ford Motor Co., Inc.*, 595 So.2d 1123 (La.1992) citing Floyd W. Lewis, Comment, Warranty of Quality in Louisiana: Extent of Recovery under the Implied-In-Law Warranty, 23 Tul. L. Rev. 130, 131 (1948) and *Savoie v. Snell*, 213 La. 823, 35 So.2d 745, 746 (1948).

faith was also liable in damages."[28] Thus, an action in redhibition against a good faith seller entitles the buyer to annul the sale and recover the purchase price, but does not entitle the buyer to an award of damages.[29]

Plaintiffs have produced no evidence that Interior Exterior had actual knowledge of defects in any of the drywall it sold.  In voluminous written discovery responses specifically dealing with Interior Exterior's alleged liability, the PSC failed to produce any of the following:

1.   A witness, whether an employee, former employee, independent contractor, supplier, or customer who will testify that anyone at Interior Exterior was aware of the defects in Chinese drywall before 2009;

2.   An internal or external document detailing defects in Chinese drywall before 2009;

3.   Correspondence between or among Interior Exterior principals or employees and any other person revealing that Interior Exterior was aware of the alleged defects in Chinese drywall before 2009;

4    Record of testing performed by Interior Exterior showing that Interior Exterior had uncovered defects in Chinese drywall; or

5.   Any other credible evidence that would lead a reasonable fact finder to conclude that Interior Exterior was aware of the defects at issue in this lawsuit before 2009.

Accordingly, the PSC must now provide competent evidence that Interior Exterior knew of the defects in Chinese drywall and failed to disclose those defects while in the course of selling the product.  If the PSC is unable to produce such evidence, Interior Exterior is entitled to judgment, as a matter of law, that it is a good faith seller for purposes of redhibition.

---

[28] *Id.*
[29] *Rey v. Cuccia*, 298 So.2d 840 (La.1974); *Prince v. Paretti Pontiac Co.*, 281 So.2d 112 (La.1973); *Burch v. Durham Pontiac Cadillac, Inc.*, 564 So.2d 380 (La. App. 1 Cir. 1990); *Scully v. Campo*, 270 So.2d 267 (La. App. 4 Cir. 1972) ("expenses occasioned by the sale" are the immediate expenses occasioned by the contract of sale itself, not consequential damages).

### C.    Limited Applicability of Exception to Actual Knowledge

Out of necessity, and sprung from failure to uncover evidence of Interior Exterior's fault, the PSC will argue that Interior Exterior "should have known" of the problems associated with Chinese drywall.   In some circumstances, such claims may trigger a narrow "constructive knowledge" exception.   The constructive knowledge exception is applicable only when it has been shown that a non-manufacturer seller of a product  "turned a blind eye" to a defect.   The exception has been applied only in situations where a seller conducted an inspection that reasonably would have led to discovery of a redhibitory defect, but turned a blind eye to the defect.[30]

In *Riche v. Krestview Mobile Homes, Inc.*, 375 So.2d 133 (La.App. 3 Cir. 7/25/79), *re'hrng denied* (9/4/79), the Court refused to apply the limited exception to actual knowledge under factually analogous circumstances to the instant case.  In *Riche*, the Court rescinded the sale of a motor home due to redhibitory defects it found were present at the time of sale.  The seller of the mobile home was found to be a good faith seller who did not have knowledge of the defects.  In rejecting the plaintiffs' claims that the seller "should have known of the defect," the Court held:

> The evidence in this case indicates that the defects in the home at the time of sale were of such a nature as *not to be observable by ordinary inspection without actually taking the unit apart and inspecting each individual component.* As such, Krestview was a good faith seller bound only to restore the purchase price and corresponding expenses of the sale.[31]

The instant case is directly analogous to *Riche*; the alleged defects in the drywall were not obvious unless, at the very least, Interior Exterior had performed invasive and destructive

---

[30] *See, Meche v. Harvey, Inc.*, 95-848 (La.App. 3 Cir. 12/6/95), 664 So.2d 855; *Riche v. Krestview Mobile Homes, Inc.*, 375 So.2d 133 (La.App. 3 Cir. 7/25/79), *re'hrng denied* (9/4/79); *Coleman Oldsmobile, Inc. v. Newman & Associates, Inc.*,·477 So.2d 1155 (La.App. 1 Cir. 1985), *re'hrng denied* (11/21/1985).
[31] *Id.* at 137. (emphasis added)

testing, and it is unclear whether such testing would have even uncovered the defects.  It is undisputed that Interior Exterior did not conduct any inspection other than a visual inspection. Further, the defects in the Chinese drywall do not fully manifest until the drywall comes into contact with certain metal substances found in homes, and thus, are not discoverable by visual inspection.[32]

In *Coleman Oldsmobile, Inc. v. Newman & Associates, Inc.¸* 477 So.2d 1155 (La.App. 1 Cir. 1985), *re'hrng denie*d (11/21/1985), the Court reached the same conclusion, also under analogous factual circumstances.   In *Coleman*, the buyer of a motor home was granted redhibition and full recission of the sale when the Court found that redhibitory defects existed at the time of sale. Plaintiffs claimed that the vendor, a non manufacturer seller, had constructive knowledge of the defects, and accordingly, was a bad faith seller for purposes of redhibition.

In rejecting the plaintiffs' claims of constructive knowledge, the Court found that despite the fact that warranty work had been performed on the vehicle, the vendor did not necessarily acquire knowledge of redhibitory defects.  The minor service work performed by the vendor was insufficient to convince the Court that the vendor knew or should have known about the redhibitory defects.

In *Meche v. Harvey, Inc.*, 95-848 (La.App. 3 Cir. 12/6/95), 664 So.2d 855, the Court applied the exception to actual knowledge. *Meche* provides guidance, but is factually distinguishable from the instance case.  In *Meche*, Plaintiffs purchased a used automobile from a non manufacturer seller of the vehicle, but noticed problems immediately.  Eventually, plaintiffs

---

[32] *See* Exhibit D, White Paper on Corrosive Drywall, American Industrial Hygiene Association, ¶ 15.3, *Corrosion*:

> Sulfide gases produced by CDW react with metal surfaces to form black corrosion.  This has been associated with the failure of air conditioning coils and damage to other electrical and mechanical components.

were involved in an accident in the car.  It was at that time, when the car went in for mechanical work, that the mechanic noticed the car had been involved in a previous undisclosed accident, which led to many of the problems plaintiffs were having with the vehicle.

The Court granted the plaintiffs redhibition and rescinded the sale, deeming the previous wreck a redhibitory defect that diminished the value of the vehicle to the extent that had the plaintiffs known of the wreck, they would never have purchased the vehicle in the first place. The *Meche* Court also went one step further in granting plaintiffs damages available only against a bad faith seller because it found that the dealership that had sold plaintiffs the vehicle had ignored obvious defects.  The court held:

> Plaintiffs could not prove that defendant had actual knowledge of the defects. Nevertheless, they were able to show that the defects were obvious to anyone with experience in body work and that defendant inspected the car closely at least once prior to the sale.
>
> *The record supports that any reasonable auto dealer would have discovered the defects in the vehicle caused by the prior wreck.* The repair job on the passenger side was of relatively low quality and there was paint over spray from the repair on the passenger door jambs.[33]

Thus, the narrow exception to actual knowledge carved out in *Meche* would apply where (a) an inspection was conducted, and (b) any reasonable inspector would have found the problems during that inspection.  In other words, the Court found that, in the course of inspecting the vehicle, the dealership had essentially "looked away" from certain defects.

*Meche* is clearly distinguishable from the instant case.  For one, any reasonable seller of Chinese drywall would not and did not discover the defects associated with Chinese drywall; only Knauf, the manufacturer, had any knowledge of the defect.  Knauf did not share that knowledge with Interior Exterior, and Interior Exterior did not discover problems with the drywall on its own.  Interior Exterior would not have been able to discover the defects associated

---

[33] *Id.* at 859. (emphasis added)

with Chinese drywall prior to sale even if it had tested, because the defective drywall emits vapors that react with certain metal substances found in homes.[34]

Further, the *Meche* Court found that the defendant had performed at least one comprehensive inspection of the vehicle before selling it.  It is undisputed that Interior Exterior never performed anything more than a visual inspection of the subject drywall, nor did it have any legal duty to perform such an inspection.

Accordingly, Interior Exterior had no constructive knowledge of the defects associated with Chinese drywall.  As a result, Interior Exterior is entitled to judgment, as a matter of law, that it is a good faith seller for purposes of redhibition.

### D.      No Duty to Inspect

The PSC will argue that Interior Exterior was negligent by failing to perform rigorous and destructive testing of the drywall.  This is simply not the case.  For one, Interior Exterior relied upon the various warranties provided in the sale of drywall.  As a seller of a product it does not hold out as its own, Interior Exterior is entitled to rely on such warranties.[35]

Further, Interior Exterior is unequivocally relieved of a duty to inspect under the law. The jurisprudence on this topic is voluminous and uniform on the issue.  A non-manufacturing seller of a defective product is not responsible for damages in tort absent a showing that he knew or should have known the product was defective and failed to declare it.[36]  Nor is a non-

---

[34] *See* White Paper on Corrosive Drywall, American Industrial Hygiene Association, ¶ 15.3, *Corrosion*:

> Sulfide gases produced by CDW react with metal surfaces to form black corrosion.  This has been associated with the failure of air conditioning coils and damage to other electrical and mechanical components.

[35] *See* La. R.S. §9:2800.58

[36] *Slaid v. Evergreen Indem., Ltd.,* 32-363 (La.App.2d Cir.10/27/99), 745 So.2d 793.

manufacturing seller required to inspect the product prior to sale to determine the possibility of inherent vices or defects.[37]

Tort liability for a defective product attaches to a non-manufacturer seller who does not vouch for the product by holding it out as his own or who is not a professional vendor or merchant "…only if he knew or should have known that the product sold was defective, and failed to declare it."[38]  Furthermore, a non-manufacturer seller "…is not required to inspect a product prior to sale to determine the possibility of inherent vices or defects."[39]

The PSC's contentions that Interior Exterior had any duty to inspect the drywall are of no moment; Interior Exterior is specifically relieved of such duty under the law.  As a result, Interior Exterior could not and did not acquire constructive knowledge of the alleged defects. Accordingly, Interior Exterior is entitled to judgment, as a matter of law, that it is a good faith seller for purposes of redhibition.

### E.    No Evidence that Inspection would have uncovered problems

The PSC offers no evidence that an inspection would have been reasonable under the circumstances or would have even uncovered the alleged defects in the drywall. In fact, to this day, it is unknown exactly what caused this particular defect in the Chinese drywall.  In the CPSC's last published status report, it noted:

> III. Progress in the Investigation
>
> We continue to investigate long term corrosion on electrical and fire safety components under contract with other federal laboratories.  Initial results of analyses of components exposed to corrosive conditions are expected this autumn. Through this work, the Commission hopes to finetune the Interim Identification Guidance and Interim Remediation Guidance (in conjunction with the U.S.

---

[37] *Id.*
[38] *Harris v. Atlanta Stove Works, Inc.*, 428 So.2d 1040, 1043 (La.App. 1st Cir.), writ denied, 434 So.2d 1106 (La.1983).
[39] *Id.*

Department of Housing and Urban Development).   To date, this has been the largest compliance investigation in agency history.[40]

That status report was published in September of 2010, over two years after Interior Exterior stopped selling Chinese drywall.  The CPSC notes that the investigation of Chinese drywall has been the largest compliance investigation in the agency's history.  The PSC contends that Interior Exterior should have been aware of such defects in 2006 when it was selling the drywall; the CPSC is still not fully aware of what causes those defects.

**IV.    Conclusion**

For the above and foregoing reasons, Interior Exterior prays for judgment, as a matter of law, that it is a good faith seller for purposes of redhibition.

Respectfully submitted,

/s/ Richard G. Duplantier, Jr.

_____
Richard G. Duplantier, Jr. #18874
Lambert J. Hassinger, Jr. #21683
Benjamin R. Grau #26307
Carlina C. Eiselen, #28524
Jeffrey P. Green #30531
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, Suite 4040 One Shell Square
New Orleans, LA 70139
504 525 6802 / 504 525 2456 Fax
rduplantier@gjtbs.com
jhassinger@gjtbs.com
bgrau@gjtbs.com
ceiselen@gjtbs.com
jgreen@gjtbs.com
*Counsel for Interior Exterior Building Supply, L.P.*

---

[40] http://www.cpsc.gov/info/drywall/sep2010status.pdf

**Certificate of Service**

The undersigned certifies that this document has been served on Plaintiffs' liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 4th day of April, 2011.

/s/ Richard G. Duplantier, Jr.

_____

RICHARD G. DUPLANTIER, JR.