UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE -MANUFACTURED      *      MDL No. 2047
DRYWALL PRODUCTS LIABILITY        *
LITIGATION                        *
                                  *
THIS DOCUMENT RELATES TO:         *      JUDGE FALLON
KENNETH and BARBARA WILTZ, et al  *
vs.                               *
BEIJING NEW BUILDING MATERIALS    *
PUBLIC Ltd, et al                 *
Case No. 2:10-cv-361-EEF-JCW      *

## <u>AFFIDAVIT</u>

BEFORE ME, the undersigned authority, on this day personally appeared

NEIL LAYTON

who, being duly sworn, upon his oath deposed and stated as follows:

1.      He is the President of Devonshire Properties, Inc., ("Devonshire Properties"), and as

        such, has personal knowledge of the following based on his review of records

        maintained by Devonshire Properties in the regular course of business.

2.      Devonshire Properties is a corporation organized and existing under the laws of the

        State of Florida and has its principal place of business in Hillsborough County,

        Florida.

3.      Devonshire Properties is a home builder that contracts with third party vendors for the



construction of single-family homes and/or sells completed single-family homes.

4.  Devonshire Properties has never built a residence in the State of Louisiana nor had any contracts or subcontracts with companies located in Louisiana.

5.  Devonshire Properties has never been licensed or registered to do business in Louisiana or ever had any offices or employees in Louisiana.

6.  Devonshire Properties does not have an agent for service of process in Louisiana.

7.  Devonshire Properties does not have any bank accounts in Louisiana or own any property in Louisiana.

8.  Devonshire Properties does not solicit business in Louisiana or ever transacted business in Louisiana.

9.  Devonshire Properties has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. Devonshire Properties does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. Devonshire Properties has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12.    Consequently, Devonshire Properties never anticipated it would be haled into court

in Louisiana.

NEIL LAYTON

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 22 DAY OF OCTOBER , 2010.

NOTARY PUBLIC

Notary Public State of Florida
Paul Wiezorek
My Commission DD908854
Expires 07/20/2013

3

## CONTRACT FOR NEW HOME CONSTRUCTION ON AN OWNER'S LOT

THIS AGREEMENT is made and entered into by and between <u>Devonshire Properties</u>, a Florida corporation whose address is: <u>3412 W. Bay to Bay Blvd. Tampa, Fl 33629</u> hereinafter referred to as "Developer," and <u>William and Stacy Peek</u>,  whose address is <u>7808 Hidden Island Lane, Temple Terrace Fl 33617</u> hereinafter referred to as "Owner," who hereby agree that Developer shall build a new home constructed on the Owner's lot situated in Hillsborough County, Florida with a street address of <u>11 Baffin Ave.,</u> and legally described as <u>Davis Island PB 10 pg 52-57 and PB 17 pgs 5-9: Lots 18 and 19 Block 18</u> the ("Lot"), together with improvements, designated as Developer's model number <u>Custom 6820</u>, to be constructed thereon by Developer substantially in accordance with Developer's published floor plan brochure and specifications attached hereto as Exhibit "A" plus any optional items or extras set forth on the Option Addendum attached hereto, if any, ("the Improvements") and otherwise pursuant to the terms and conditions set forth herein of attached hereto.  The Lot and the Improvements are hereinafter called the "Property."

      1.    <u>Purchase Price</u>. The total purchase price for the Property (the "Purchase Price") shall be:

$    <u>1,212,120.00</u>   Total Purchase Price

      2.    <u>Method of Payment</u>.

        2.1    The Owner has placed with Developer an earnest money deposit in the amount of $ <u>10,000</u>. Further, on or before <u>n/a</u>, Owner shall place with Developer an additional earnest money deposit of <u>n/a</u> both deposits shall hereinafter collectively be referred to as the "Deposit." Said Deposit shall be held by <u>Devonshire Properties</u>. Unless Owner otherwise defaults under this Agreement, the full amount of the Deposit shall be applied to the Purchase Price due at closing.

        2.2    The balance of the Purchase Price shall be payable in accordance with the construction lender's draw schedule attached hereto as Exhibit "B," with any balance to be paid by Owner upon completion of the home.

      3.    <u>Financing</u>

        3.1    In the event Owner is obtaining mortgage loan financing, this Agreement shall be contingent upon Owner obtaining, within <u>60</u> days from the date hereof, a binding commitment for a mortgage loan in the principal sum of not less than $1,212,120.00 and Owner shall provide Developer with written evidence thereof within said <u>30</u> day period. Owner agrees to apply for such mortgage loan within five (5) business days after the signing of this Agreement in an amount as stated above and to proceed with all due diligence to obtain said loan. The loan commitment obtained by Owner shall be satisfactory to Developer in form and substance. In the event Owner fails to obtain such financing commitment within said <u>60</u> day period, through no fault or misrepresentation on the part of the Owner, then this Agreement shall be terminated and the Deposit shall be returned to Owner, less any costs and expenses of Developer actually incurred.

1



3.2     If Owner fails to obtain a loan commitment in the manner described above due to Owner's misrepresentation, failure to cooperate, or failure to proceed diligently, at any time during the term of this Agreement, then Owner shall be deemed to be in default under this Agreement and Developer shall be entitled to the remedies set forth herein upon such default.

4.     Default:

(a)     Owner's Default: If the Owner shall fail to make the payments herein provided, or any part thereof, when due, or if Owner shall fail to perform in a timely manner an act herein required, this Agreement may be terminated at the option of Developer, and Owner shall pay to Developer a proportionate part of the Purchase Price based upon the percentage of completion then attained and, in addition thereto, as liquidated damages, an amount equal to ten percent (10%) of the Purchase Price allocable to the remaining uncompleted construction work, as theretofore proportioned. Owner recognizes and understands that in the event of any breach by the Owner, the resulting damages to the Developer arising from said breach are uncertain and difficult to calculate, whereupon the above specified liquidated damages are agreed as a reasonable adjustment of the probable damages to the Developer under the circumstances above stated. A lien is hereby given to the Developer by Owner on the above described property to secure all obligations and liabilities of Owner and all the provisions of this Agreement in its entirety, which lien shall be in addition to construction or other liens granted by the laws of Florida or the United States. In the event there occurs a default by Owner under the terms and conditions of this Agreement, Developer may enforce the lien granted herein through foreclosure, or exercise any other right granted to the Developer by law, including, but not limited to exercising the rights and privileges granted to the Developer by Chapter 713, Florida Statutes. Any attempt by Developer to enforce the lien granted by the provisions of this paragraph shall not be deemed an election by Developer to waive or forego the rights granted to Developer by law, including but not limited to Developer's rights under Chapter 713, Florida Statutes.

(b)     Developer's Default: The Owner may terminate the Contract if the Developer:

1.     persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

2.     fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Developer and the Subcontractors unless the failure to make such payment is the result of a legitimate dispute between Developer and Subcontractor in which case Developer shall act appropriately to protect the interests of Owner;

3.     persistently disregards laws, ordinances or rules, regulations or orders of a public authority having jurisdiction; or

4.     otherwise is guilty of substantial breach of a provision of the Contract documents.

2

When any of the above reasons exist, the Owner may without prejudice to any other rights or remedies of the Owner and after giving the Developer seven days written notice, terminate employment of the Developer and may finish the work by whatever reasonable method the Owner may deem expedient. Upon request of the Developer, the Owner shall furnish to the Developer a detailed accounting of the costs incurred by the Owner in finishing the work, reserving all rights under Florida law.

5.      Draw Schedule. Developer has approved the terms of the construction lender's draw schedule **attached hereto as Exhibit "B."** Developer requires 10% of the loan amount to be paid to Developer at the time of closing the construction loan.

6.      Closing Costs. Owner will pay all closing costs.

7.      Completion. Developer shall notify Owner as to the date and time of completion at least 7 days prior to such designated completion date. Upon completion, Developer shall supply the Owner with a Certificate of Occupancy issued by the City of Tampa. The Developer agrees to pay all valid bills received by subcontractors and suppliers employed by the Developer.

8.      Warranty. Upon completion, Developer shall furnish to Owner a "New Home Warranty" **in the form attached hereto as Exhibit "C".** OWNER FURTHER UNDERSTANDS AND AGREES THAT THE WARRANTIES REFERENCED HEREIN SHALL BE THE SOLE WARRANTIES, EXPRESSED OR IMPLIED, BEING FURNISHED TO OWNER IN CONJUNCTION WITH THIS TRANSACTION. If the Improvements being constructed on the Property include a swimming pool, the parties agree that upon completion of construction of the swimming pool, Developer shall cause to be delivered to Owner any warranty for the swimming pool, which may be furnished by the Developer employed by Developer to construct the swimming pool. The provisions of this paragraph 8 shall survive the closing of this transaction.

9.      Construction. Developer agrees to construct the Improvements in substantial compliance with the specifications attached hereto as Exhibit "A." Upon reasonable advance written notice to Owner, Developer shall have the right to substitute substantially equivalent materials for any of those called for in said specifications as may be required due to shortages in supplies or materials or as may be required by appropriate local authorities or any construction lender, or as may be reasonably necessary to fulfill the design intent of the Developer. **Upon reasonable advance written notice to Owner,** Developer reserves the right to remove any existing vegetation and/or trees interfering with the construction of the new home or the demolition of the existing home on the Property. Developer shall not be responsible for any such trees or vegetation, which do not survive. Any and all plans, blueprints, illustrations or specifications utilized in connection with the construction of the Improvements shall be and remain the sole and exclusive property of the Developer. Developer will furnish a copy of the plans to the Owner prior to start of construction and hereby grants Owner a license to use the plans until completion of the home, but only for completion of the home contemplated by this Agreement. Owner agrees that the direction and supervision of all workers on the Property, including subcontractors, rests exclusively with Developer. Owner further agrees not to contract with Developer's subcontractors or to engage other builders or

3

subcontractors or personally perform any work on the Property prior to completion, without Developer's permission.

10.     Insulation. Owner hereby acknowledges pursuant to the applicable rules of the Federal Trade Commission regarding labeling and advertising home insulation, that the following types, thickness and R-values of insulation shall be installed in the following locations of the Residence: Block Perimeter Walls - Type AL Foil, and R-4.3; Frame Perimeter Walls – type Batts, and R-11; Flat Ceiling – type Blown, and R-30; Vaulted Ceiling – type Batts, and R-30. R-value means the resistance of insulation to heat flow. The higher the R-value the greater the insulating power.

11.     Extras; Options; Changes.

    (a)     Should Owner request any extras, options or changes to the plans or specifications attached hereto as Exhibit "A," the Developer, in its sole discretion, shall have the right to determine whether the Developer will accept the request and contract with the Owner to provide the extras, options, or ("Changes").

    (b)     The Owner acknowledges that to reduce the time and expense of reappraisals, permit delays, misunderstandings, errors by subcontractors and suppliers, and construction delays, the Developer will strictly enforce the following policies concerning Changes:

    (c)     Owner hereby agrees to pay to Developer, upon request, the total charge imposed by Developer for any Changes agreed to by the parties under a written change order and understands that installation of such Changes will not be commenced until payment is received by Developer, unless otherwise agreed to by Developer in writing. Change Orders shall include a mark up of 5% for overhead and 5% for profit.

    (d)     The Owner hereby acknowledges that any Changes that the Developer and the Owner agree to make subsequent to the date of this Agreement may extend the completion date of the home agreed to in paragraph 12, as described by Developer in each Change Order.

12.     Agreement to Complete.

    (a)     Developer shall cause the Improvements to be "Substantially Completed" (as hereinafter defined) __365__ days from the actual start of construction, subject only to delays caused by matters beyond Developer's control. Developer will start construction within 30 days from the unconditional receipt of a building permit issued by the City of Tampa. "Substantially Completed" means that the Improvements have been completed in the manner required by this Agreement and a Certificate of Occupancy has been issued by the appropriate governmental agency. Start of construction is defined as the date on which footings are poured, or in the case of monolithic footings and slab, the day rough plumbing is begun. Developer is not responsible for any damages or inconvenience caused to Owner due to Developer's failure to complete the Improvements within the time period

4

set forth above, so long as completed within 60 days of the time period set forth above.

(b)     Force Majeure. Subject to the other provisions of this Agreement, the Developer agrees to use reasonable efforts to complete all construction specified herein (as set forth in Paragraph 12.a. above). Any delays caused by Owner, change orders, war, strikes, changes in law or regulations after the date hereof, shortage or inability to obtain labor and/or materials, disaster, destruction, or acts of God including, but not limited to rain, hurricane or flood, shall automatically extend the date for completion set forth herein. The Developer shall use reasonable efforts to expeditiously conclude all punch list items.

13.     Brokers. The parties hereto represent, warrant and agree, that there have been no brokers, salesperson or finders engaged for this transaction or entitled to a fee of commission for this transaction except as may be otherwise set forth in this Agreement (see last page). Owner shall indemnify and hold Developer harmless against any fees or commissions, liabilities, costs or expenses claimed by or as a result of any broker, salesperson or finder claiming through or on behalf of Owner. This representation and indemnification shall survive the closing of this Agreement. Owner further acknowledges that Developer's sales representative is acting as an agent for Developer and has a fiduciary duty to Developer.

14.     Time. Time is of the essence of this Agreement.

15.     Severability. In the event any portion of this Agreement should be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect in any way the remainder of this Agreement, which shall continue in full force and effect.

16.     Governing Law. This Agreement shall be construed in accordance with the laws of the State of Florida. The parties hereby agree that venue for any action hereunder shall lie in Hillsborough County, Florida.

17.     Radon Gas Disclosure. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels or radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

18.     Counterparts. This Agreement may be signed in any number of counterparts each of which shall be deemed an original, but all of which together will count as a single instrument.

19.     Construction Industry Recovery Fund. Owner is hereby advised that payment may be made from the Construction Industry Recovery Fund if Owner loses money on a project performed under contract, where the loss results from specified violations of Florida Law by a State Licensed Developer. For information about the Recovery Fund and filing a claim, Owner may contact the Florida Construction Industry Licensing Board at the following number and address: Construction Industry Licensing Board, 7960

5

Arlington Expressway, Room 300, Jacksonville, Florida 32211-7467, Tel.: (904) 727-6530.

20.    Owner's Acknowledgements.  Owner certifies that he/she has read each and every part of this Agreement between Owner and Developer.  No agreements, promises, representations or warranties, whether oral, written or otherwise, made by Developer, its agents or employees, Owner, or by any broker, Developer or any other person, are binding upon the parties hereto unless stated in this Agreement.

Owner acknowledges receipt of copies of the following:
☐    Option Addendum
☒    Floor Plans-to be completed and approved after contact signing per prior discussions
☒    Specifications
☐    Additional Work Order(s)
☐    Berber/Hardwood Disclosure
☐    Homeowners Association Documents
☐    Other Addenda (if applicable)

21.    Adjacent Property.  Developer has informed the Owner and Owner acknowledges and agrees that Developer has no control over any land which is not owned by Developer that may be located adjacent to or in the vicinity of the Property to be purchased by Owner.  As such, Developer makes no representations as to what may or may not be built upon said property of for what purpose the property may ultimately be used.

22.    Inspections:    Owner has the right to enter and inspect the home from time to time during construction.  The Developer will furnish the Owner with a key when the home is locked during construction.  Owner understands a construction site is potentially a dangerous place, and will take all reasonable efforts to ensure their own safety.

23.    Builder's Risk:        Developer will obtain Builder's Risk Insurance Policy and shall be responsible for all deductibles.

24.    Liability Insurance:    Developer shall provide general liability insurance and workman's compensation insurance in accordance with Developer's sample Certificate of Insurance **attached hereto as Exhibit "D."**  Owner shall be named as an additional insured under Developer's general liability insurance policy.

25.    Indemnity:    Developer agrees to indemnify, defend and hold Owner harmless from any and all claims and causes of action and damages, including attorneys' fees, arising out of or relating to the Developer's performance of its work on the home provided that such claims, causes of action and damages are not related to any actions or omissions of Owner, Owner's agents, invitees, licensees, family members or anyone acting with permission or on behalf of the Owner.  Owner shall be required to give Developer written notice of any such claims, causes of action or damages and a reasonable opportunity to take such action as Developer deems appropriate, under the circumstances, to mitigate same.

6

26. <u>Assignment:</u> The Owner may assign this Contract but shall not be released from personal liability and shall be fully responsible for the complete and timely performance of all obligations, duties and responsibilities by the Assignee.

IN WITNESS WHEREOF, this Agreement is entered into as of the date when the last one of Owner or Developer has signed the same.

Dated by Owner this ____ day of _____, 20<u>07</u>.

<u>OWNER:</u>                                                <u>DEVELOPER:</u>

<u>Devonshire Properties</u>, a Florida corporation

_____  6/20/07              _____
Owner                           Date              By:_____
                                                  Its: President

_____  6/20/07
Owner                           Date

JOINDER BY REAL ESTATE BROKER OR ASSOCIATE: Developer acknowledges the services of <u>n/a</u>_____, Office Telephone No. _____ as a broker on this transaction and further agrees to pay broker a brokerage commission of ____% of the Purchase Price. Such Broker further acknowledges and agrees that the real estate commission due to said Broker pursuant to this Agreement shall be due and payable at the time of closing.

_____N/a_____              _____
Brokerage Company                        Agent Cell#, Fax #

_____              _____
Signature                                Date
Broker or Realtor Associate

_____              _____
Print Name                               Agent ID#

Florida Developer's License Number        CBC035113

7

Ex 4.b.t A.

# Specifications for 11 Baffin

# Billy and Stacy Peek

**Note: The term stucco is commonly used to refer to a cementious finish applied to the exterior of a home. Although these specifications refer to this coating as stucco, it is technically a cementious finish, and not technically stucco. In any event, builder will comply with all applicable provisions of the Florida Building Codes, regarding application of said cementious finish.**

### General Conditions

Utility Fees

Water Standard Connection - Included

Sewer Standard Connection - Included

Gas (fireplace) Standard Connection – Included if necessary

Permit Fees Standard Permit Fees - Included

Impact Fees Standard Impact Fees - Included

Surveys

Lot With Elevation - Included

Foundation - Included

Final - Included

Architectural Drawings and Engineering Requirements - Included

## Site Work

Fill Dirt for foundation - Included (paid by Billy 700.00)

## Concrete Masonry

All components of concrete shall meet or exceed City of Tampa code requirements.

Monolithic Slab if applicable

Concrete 3000psi

Footings

Concrete 3000 psi

Reinforcing per plans

Size per plans

Foundation Wall (if grade requires)

Number of Courses As Required

Corner cells poured

Other cells per engineering

Continuous under garage door opening

Slab

Reinforcing Fiber Mesh

Vapor Barrier 6 mil

Thickness 4" 3000 psi

Termite Treatment Chemical pretreat below slab w/1 year annual renewable warranty

1st Floor Exterior Walls Per Plan

2nd Floor Exterior Walls Per Plan

Driveway Concrete Pavers with concrete apron at street

## Framing

All framing components to meet or exceed City of Tampa code requirements.

Framing- Exterior Walls

Thickness 4"

P.T. bottom plate 2x4 on 1st floor walls

Sheathing 1/2" CDX 4 ply plywood (or equiv.) w/Tyvek House Wrap (or equiv.)

Anchoring per engineering requirements

Stud Spacing 16" O.C.

Trim per plans

Flashing per plans

Framing - Interior Walls

Ceiling Height 10'

Thickness 4" min.

P.T. bottom plate 2x4 on 1st floor walls

Anchoring per engineering

Stud Spacing 16" O.C.

Framing - Second Floor

Ceiling Height 10'

Subfloor Material 3/4" Advantec T&G glued and nailed

Porch Columns Per Plan

Porch Beam Stucco

## "Stucco" and Sheetrock

Exterior wall Finish Stucco with foam banding and stone columns per plan

Interior Sheetrock Finish Orange Peel all ceilings and walls with square corner bead

## Metals/Vinyl

Soffit and Fascia

Material White Aluminum or Vinyl ventilated

Gutters and Downspouts as required by City of Tampa Stormwater Management Department

Screen Enclosure None

## Roofing

Material Clay Barrel Tile per plan builder approved colors

## Insulation

Area R-Value Material Blown/Batts

Ceilings 30 fiberglass per plan

Frame Wall 11 fiberglass batts

Sound Insulation

Bath walls fiberglass batts

## *Mechanical*

Equipment Type 2 Heat Pumps

Manufacturer Trane/ Carrier (or equiv.)

Capacity Per Load Calculations

Supplies/ Returns Per Load Calculations

Grill Style/finish Adjustable louver, internal damper, white

Thermostats Digital

Supply in all walk in closets

2 zone system, one per floor

Duct material - Supply Flexible

Return Flexible


Venting - Outside

Dryer

Range Hood

Bath Fans


Gas Water heater, fireplace, cook top, grill stub out, dryer


## Plumbing


Drain PVC

Supply CPVC

Hose bibs 3 per plan

Icemaker Line to kitchen refrigerator

Water Heater 65 gallon, rapid recovery gas


Fixture allowance including sinks, tubs and faucets is $12,000. Need to be selected at

Rough in so plumber can install proper valves in the wall. Can not be changed to

different brand after installation.

## Electrical


Service Overhead

Capacity 200 A

Switch type/color Decora Rocker White

Outlet Type/ color Decora White

Dimmers Family Room, and Dining Room

Recessed Can color White

Garage Ceiling Light Flourescent

Flood Lights 1 double on rear

Decorative fixture and fan allowance $6000

*Allowance includes all fixtures and fan controls, except recessed cans, garage ceiling light and flood lights

Appliances $20,000

Security System Full Perimeter system - all doors and windows

2 keypads

Structured Wiring

Cat V Wire Bedrooms, Kitchen,

RG-6 Cable Bedrooms, Family Room

Central Distribution Panel

Surround Sound Pre-Wiring 5 speaker wires in Family Room and bonus room 1 Center, 2 Front, 2 Rear Lanai speaker wires

## *Doors/ Interior Trim*

All trim is painted

Exterior Doors

Location Material /Style

Front Entry $4,000.00

Lanai French, Steel, Insulated, no grids, 8' tall doors

Garage Overhead Steel Sectional

Opener Included


Interior Doors

All doors are to be 8' tall on 1st floor and 2nd floor, Six panel smooth hollow core Colonist

(2 panel solid at 100.00 extra per door)


Trim Style

Cased Windows 3 1/4" Howe Casing, 1st floor and Master Suite

Window Sills Wood Sill, w/ 3 1/4" Howe Skirt

Cased Openings 3 1/4" Howe Casing Throughout

Base Mold 7 1/4"


Crown Molding Double crown 1st Floor and Master bedroom, Single crown upstairs hallways and remaining bedrooms and baths.

**Door Hardware**

Entrance Set Schlage/ Plymouth Antique Brass or ORB

Dead Bolts Schlage Plymouth Antique Brass or ORB

Door Knobs Schlage/ Plymouth Antique Brass or ORB

Hinges Schlage/ Plymouth Antique Brass or ORB


**Main Stair Detail**

Railing Iron (8,000.00 allowance for all iron rails)

Treads and Risers Natural Oak treads and risers (extra charge for different wood treads for example cherry, walnut or maple)


*Windows*


Frame - material type 30,000.00 allowance

## *Paint*

Sherwin Williams Paint

Includes up to 3 different interior wall colors (excluding deep colors)


All ceilings 2 coats flat white

Painted interior walls 3 coats flat interior latex including primer

Painted woodwork 3 coats high gloss latex enamel


Exterior "stucco" 3 coats semi-gloss exterior latex including primer

Exterior Wood/Fiberglass 3 coats semi-gloss exterior latex including primer

Metal doors 2 coats semi-gloss acrylic enamel


Exterior Rails     Iron straight picket on lanai, front steps and balcony




## *Flooring & Wall Tile*

| Type | Location | Details |
|------|----------|---------|
| Carpet Allowance | bedrooms/bedroom closets | $25 /square yard installed, yardage price includes 6 lb. Pad |
| Wood | Stairs, 2nd Floor Hall, Bonus room. Entire 1st Floor except any storage areas, and baths, | Engineered Premium 3" wide Red Oak, tongue and groove, pre-finished |
| Floor Tile | Secondary baths, Laundry, front porch. All tile and stone to be set with thin set. Mud set is additional 5.00 per square foot. | $3.00 Material allowance, standard pattern<br><br>$5.OO material master, kitchen, downstairs bath |
| Wall Tile | All Full Baths in Shower and Tub Deck | $3.00 Material allowance, standard pattern |
| | 1 Row Master Shower Wall<br><br>1 Row Master Tub Deck | $10 /L.F |
| Listello | | |

*Cabinets & Countertops*

Total Cabinet Allowance $70,000.00

Granite Countertops

     Kitchen Per Builder Level 2 Selections with undermount Stainless Steel Sink

     3 cm

     Baths Per Builder Level 2 Selections (same color in all baths)


## Additional Features


**Shelving**

Total allowance $8,000


**Interior Glazing None**


Master Bath

     Mirrors 46" high, 1/4" plate glass, counter width, framed

Shower Door 3/8" thick, frameless

Medicine Cabinets none


Private and Jack n Jill Baths 46" high, 1/4" plate glass, counter width, framed

Shower enclosure standard thickness bypass doors


Powder Room Decorative wall hung mirror supplied by owner, builder will install

Medicine Cabinet None


**Bath Hardware** Allowance $600


**Mailbox** Owner to supply, builder will install.

## *Landscaping*

Automatic Sprinkler System Included, with timer and rain sensor

Sod Floritam St. Augustine

Plantings $6,000 Allowance

Exterior Grill Area    $5,000  Allowance