UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| THIS DOCUMENT RELATES TO: KENNETH and BARBARA WILTZ, et al vs. BEIJING NEW BUILDING MATERIALS PUBLIC Ltd, et al Case No. 2:10-cv-361-EEF-JCW | * * * * * * | JUDGE FALLON (L)  MAG. WILKINSON (4) |

### AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

RAYMOND J. SCALERO

who, being duly sworn, upon his oath deposed and stated as follows:

1. He is the President for Oyster Bay Homes, Inc., ("Oyster Bay Homes"), and as such, has personal knowledge of the following based on his review of records maintained by Oyster Bay Homes in the regular course of business.

2. Oyster Bay Homes is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Lee County, Florida.

3. Oyster Bay Homes is a home builder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes.

4. Oyster Bay Homes has never built a residence in the State of Louisiana nor had any contracts or subcontracts with companies located in Louisiana.

5. Oyster Bay Homes has never been licensed or registered to do business in Louisiana



EXHIBIT A

or ever had any offices or employees in Louisiana.

6. Oyster Bay Homes does not have an agent for service of process in Louisiana.

7. Oyster Bay Homes does not have any bank accounts in Louisiana or own any property in Louisiana.

8. Oyster Bay Homes does not solicit business in Louisiana or ever transacted business in Louisiana.

9. Oyster Bay Homes has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. Oyster Bay Homes does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. Oyster Bay Homes has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12. Consequently, Oyster Bay Homes never anticipated it would be haled into court in Louisiana.

_____
RAYMOND J. SCALERO
FCDCAS IO

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 25 DAY OF March, 2011.

_____
NOTARY PUBLIC
GERRI ANCEFSKY

GERRI ANCEFSKY
Notary Public - State of Florida
My Comm. Expires Dec 15, 2013
Commission # DD 946954
Bonded Through National Notary Assn.

2

Job # 2175

# CONSTRUCTION AGREEMENT
## Oyster Bay Homes, Inc. CRCO 16339

THIS AGREEMENT made this 31th day of August, 2005, by and between **Delgado, Pedro & Margarita** of 4229 SW 13th Ave., Cape Coral, FL., 33914, (Home phone #**218-1732**, Work Phone #) herein called OWNER and **Oyster Bay Homes, Inc.**, a Florida Corporation, of 6460 Topaz Ct. U.1, Ft. Myers, FL., 33912, hereinafter called the BUILDER.

WHEREAS, the OWNER is the owner in fee simple of or is purchasing certain premises described as follows and hereinafter called the building site, and OWNER desires BUILDER to construct a certain building on the premises: **Unit 96, Block 6047, Lots 41-43, Cape Coral Subdivision as recorded in the Lee County Records.(St. # 33-44-23-C4-06047.0410) 2023 SW 30th St.(33914)**

NOW, THEREFORE, in consideration of the premises:

1. The BUILDER shall construct upon the building site a building in accordance with the plans and specifications hereto attached. The BUILDER shall provide all materials and perform all work of the construction provided for in the plans and specifications in a good and workmanlike manner. The BUILDER warrants the construction of the building from defects of material or workmanship for a period of twelve (12) months from Certificate of Occupancy (C/O), in accordance with terms in paragraph 10 on the reverse side of this agreement.

2. The OWNER shall pay the BUILDER for such construction the amount of $241,206.67
Payable as follows:

| | |
|---|---|
| Upon signing this agreement | $1,000.00 |
| As per Approved Lender's draw schedule | $24,020.67 |
| When slab is poured | $43,237.20 |
| When tiebeam is poured | $54,046.50 |
| When drywall is completed | $54,046.50 |
| When cabinets are installed | $43,237.20 |
| Upon completion of construction | $21,618.60 |

plus a penalty of five per cent (5%) of the draw amount not paid within fifteen (15) days after requested by BUILDER, in accordance with paragraph 7 on the reverse side of this agreement.

3. OWNER to secure mortgage loan upon property from reputable lending institution or agency in the amount of 90%.

4. The Conditions on the reverse side of this Construction Agreement are an integral part of this agreement.

| | |
|---|---|
| Basic Model *Jade II-4* with the following front elevation *Standard Hip* is priced at | $142,900.00 |
| Additional Specifications in lieu of or in addition to Standard Specifications (Total of Page 3): | $47,459.00 |

ESTIMATED HOMESITE IMPROVEMENT ALLOWANCES:

| | |
|---|---|
| Foundation & Final Surveys (flood elevation) | 325.00 |
| HRS Ap., site review & repere | 450.00 |
| Basic Stemwall fill | 2,275.00 |
| Additional stemwall block | 1,700.00 |
| Additional interior Fill | 4,550.00 |
| Additional Exterior Fill | 2,800.00 |
| 39 loads of prefill @ $175.00 per load | 6,825.00 |
| Certified Compaction Test | 350.00 |
| Grading | 2,350.00 |
| Septic tank with 300 sq ft. drainfield, septic filter & HRS required gutters | 1,640.00 |
| Septic System Corrections, permits, etc. & digout | 5,650.00 |
| 4" well, aereator, softener, pad & electric | 5,725.00 |
| School Impact Fee | 2,233.34 |
| Cape Coral Impact Fees | 4,129.33 |
| Temporary Power | 225.00 |
| 24' of 12" x 18" culvert pipe under driveway with 3 loads fill @ $175.00 per load if necessary | 1,555.00 |
| Landscaping by OWNER | N/A |
| Farside Service (extended electric) | 675.00 |
| **ESTIMATED HOMESITE ALLOWANCE TOTAL:** | **43,537.67** |

OTHER ALLOWANCES:

| | |
|---|---|
| Sprinkler system by OWNER | 2,000.00 |
| Allowance for additional or upgraded sod | 2,300.00 |
| Allowance for "funnel shaped" driveway of approx 860 sq ft @ $3.50 sq ft.(see sketch) | 3,010.00 |
| **OTHER ALLOWANCE TOTAL:** | **$7,310.00** |

Slab Height based on preliminary Perk test with invert elevation of 19" from perc site existing grade dated 7/29/05
Estimated Construction Agreement Total: $241,206.67

Garage Left

Witnessed by: _Jan Dunlop_ _Pedro Delgado_ Owner
Witnessed by: _Jan Dunlop_ _Margarita Delgado_ Owner
Witnessed by: _____ _____ Builder
Jan Dunlop   Oyster Bay Homes, Inc. CRCO 16339


EXHIBIT B

CONSTRUCTION AGREEMENT CONDITIONS

5. OWNER herewith grants possession of the premises to the BUILDER, said premises to be delivered to OWNER upon completion of the construction and payment by OWNER of all moneys due BUILDER and OWNER signing BUILDER'S acceptance form. OWNER agrees to remain off the job site, only while construction is in progress, during the working hours of 7:00 AM to 5:00 PM.

6. Construction is to be completed within 180 working days of the starting date, allowing five (5) working days per calendar week, unless delayed by legal Holidays & company Vacation time, strike, building material shortages, withholding of funds due the BUILDER under this Agreement, newly established requirements of governmental agencies, Act of God, or other causes beyond the BUILDER'S control. Start of construction is defined as the date on which footings are poured. Closing and settlement of this Agreement will be within fifteen (15) days from the time the building is substantially ready for occupancy, and certificate of occupancy has been issued by the Building Department.

7. If the OWNER is to secure a mortgage loan, this Construction Agreement is contingent upon the OWNER obtaining a mortgage commitment with a payment schedule mutually agreeable to the Lending Institution and the BUILDER. If the OWNER is unsuccessful in obtaining a mortgage loan commitment, this Construction Agreement shall become null and void, and all deposits shall be refunded to OWNER by BUILDER, less out of pocket expenses incurred by the BUILDER. If the OWNER secures a mortgage loan upon the property in compliance with Paragraph Three (3) on the reverse, OWNER agrees and understands that there will be a loan closing with the financial institution or agency or its representatives when the mortgage is obtained. If the OWNER is not securing a mortgage, the OWNER must comply with the BUILDER'S request, prior to or at any time during construction, to set up an escrow account with a Commercial Bank or Saving And Loan whereby payments, or the balance of payments, according to the draw schedule in Paragraph Two (2) shall be guaranteed. All construction draws are due upon request by the BUILDER. A 5% penalty on the amount of funds requested will be due if the BUILDER does not receive the draw within fifteen (15) days of the request for payment and an Additional 5% penalty every fifteen (15) days thereafter.

8. BUILDER will not apply for Building Permits or commence with construction prior to receiving signed OWNER APPROVED PLAN with any and all changes initialed. BUILDER will not be held responsible for delays in permit processing due to OWNER'S delay in returning OWNER APPROVED prints or engineering. Such delays will not affect or change the conditions as set forth in paragraph #12 of this agreement. Changes in plans and specifications may be requested by the OWNER when practicable and must be stipulated in writing, signed by both parties. All changes must meet the approval of both the BUILDER, and Lender and must comply with all applicable governmental rules and regulations. Changes must be paid for when change order is signed & returned. Any structural or mechanical changes made by the OWNER after BUILDERS receipt of signed OWNER APPROVED PRINTS shall be paid for, along with costs for new drawings, new engineering, etc. before the start of construction. Upon purchase of building permit, BUILDER reserves the right not to commence construction until a signed color selection sheet has been provided to BUILDER by OWNER. Changes made by OWNER after BUILDER has purchased building permits must be received by BUILDER no later than fifteen (15) days prior to the phase of construction such change will affect. All changes made by OWNER after purchase of building permit are subject to BUILDER'S approval together with the costs thereof, and a one hundred dollar ($100.00), change order fee for each change, which shall be paid by OWNER at the time the changes are requested. For each change made by OWNER, the BUILDER shall be allowed a minimum of five (5) additional working days to complete construction, notwithstanding any additional delays caused by the change order.

9. BUILDER may use and install materials other than and different from those specified in the plans, drawings and specifications, or incorporated in the BASIC MODEL, provided such different materials are of substantially equal value and utility.

10. The BUILDER gives the OWNER a "Limited Warranty" for a period of one (1) year, starting when the certificate of occupancy is granted. The BUILDER warrants all materials and their installation incorporated in the Construction Agreement, with the exception of those items stated as allowances, or homesite improvements, and any such items which require OWNER maintenance. Should BUILDER determine that warranty work requested by the OWNER was the result of neglect or abuse, the OWNER agrees to reimburse the BUILDER for all expenses incurred in the repair. The BUILDER warrants the structure from defects of material or workmanship only. Due to unstable soil conditions in Florida, and fill requirements, the BUILDER'S warranty will not cover cracks caused by settling and or stress.

11. The contract price and Homesite Improvement Estimates in this Agreement are based upon a readily accessible, clear, level developed lot up to 10,000 sq. ft. in total area, now serviced by public utilities, free of vegetation, brush and trees, of sufficiently high elevation to permit the foundation as specified in the plans. The Fill, Grade, and Hauling Allowances as stated under Homesite improvements, applies to but is not limited to, charges for initial lot preparation, foundation fill, machine grading, compaction, culvert pipe & driveway grading, rough & final machine grading, fill needed, or removal of fill or vegetation to establish proper grade. Such charges are to be at fair market value plus the BUILDER'S standard costs for administration (10%) and profit (25%). OWNER authorizes and agrees to pay charges for any clearing, special foundation requirements, testing required by governmental agencies, fill on interior and exterior of foundation, temporary utilities, maintenance and repair of access roads, including, but not limited to any fill requirements necessitated to meet the provision of Federal Flood Insurance Laws, or any other applicable laws or regulations. BUILDER reserves the right to use whatever means & methods available for septic system and site work which are economically beneficial to the OWNER. It is the OWNER'S responsibility to notify the BUILDER of unusual soil conditions and provide any needed test borings. Expense for removal of excess dirt and vegetation to provide proper grade or any expenses caused by rock or other adverse sub soil conditions will be borne by OWNER, and paid to BUILDER at the time such expenses are incurred.

12. Pricing in the Agreement is based upon present construction costs. OWNER and BUILDER recognize that construction costs are very fluid and subject to change. In the event that the BUILDER shall not be in the position to commence construction within sixty (60) days of the date shown on Page 1 of this Agreement, as a result of a delay in obtaining building permits or necessary governmental approvals, or delays in OWNER obtaining mortgage financing, the construction price shall be subject to change. The BUILDER shall notify the OWNER of any adjustment in price. If said adjustment results in an increase of the contract total, OWNER has the right to cancel the contract and receive the return of deposit, less any expenses incurred by the BUILDER, without further liability. Notice of this election must be given to BUILDER within (10) days of the receipt of adjustment notice by OWNER.

13. Homesite improvement allowance are BUILDER'S best estimate at the time of contract signing. Actual site improvements may cost more or less. OWNER shall pay during construction, as they are incurred, any excess over the estimated homesite improvement cost reflected on the face of the Agreement, or BUILDER shall refund over estimates at closing by crediting any lesser sum utilized for allowances. Any payment owed to the BUILDER for Homesite Improvements, changes, or any other work determined by this Agreement shall include BUILDER'S standard addition for cost of administration (10%), and profit (25%).

14. Items stated as Allowance, with the exception of Homesite Improvements, in this Agreement will be paid at face value to the OWNER or to whom the OWNER directs the BUILDER to pay, at the time of closing. All materials purchased and work performed for items listed as allowances are the OWNER'S responsibility and will not be covered by the BUILDER'S "Limited Warranty". The OWNER shall be directly responsible to the BUILDER for damages and delays which may result from allowance purchases. The expense for such damages will be deducted from the allowance prior to disbursement. The OWNER will be obligated to close with the BUILDER should delays occur due to allowance purchases, or be subject to penalties as set forth in paragraph seven (7) of this Agreement. The OWNER clearly understands there is no obligation to purchase materials or services stated as an allowance from anyone the BUILDER or his staff may recommend.

15. OWNER agrees to maintain all items which require maintenance as of the time they are installed on the premises, and through the balance of the construction period. Examples of such items, but not limited to these items are, sod, landscaping, sprinkler system swimming pool, spa, etc. The OWNER may request the BUILDER to delay installation of these items, provided such a delay will not delay closing with OWNER and or Lender. Damages resulting from improper maintenance will not be covered by the BUILDER'S "Limited Warranty".

16. OWNER will not construct, cause to be built, or contract with other parties for any construction on the premises without the BUILDER'S written consent. Upon receiving the BUILDER'S consent, the OWNER will be directly responsible to the BUILDER for damages, delays and the costs thereof resulting from work the OWNER has performed, or from work performed by any other parties the OWNER has authorized. The OWNER, when contacting with other parties, agrees to use only licensed persons, and must supply the BUILDER with a valid Certificate of Liability and Workmanship Compensation Insurance, prior to commencement. The OWNER holds the BUILDER harmless for any and all delays, damages and injuries which may result.

17. Expenses for electrical service which may be required to be run across the building necessitated by power company pole location and regulations, or underground electric and or telephone service required will be borne by OWNER.

18. Connection allowances made for public water and sewer will be limited to a distance of forty five (45) feet. Cost of lines required over forty five (45) feet will be borne by OWNER.

19. Building fees and charges will be paid by BUILDER. The term "Building Fees and Charges", as used in this Agreement will be limited to the purchase of the home building permits and items stated on attached specification sheet pertaining to the phases of construction contemplated by this Construction Agreement. Expenses incurred for testing, engineering, City, Local, or State Fees, including but not limited to Fees, such as, Impact Fees, Betterment Fees, Concurrency Fees, Health Department Fees, etc., and other special requirements made by the Building Department or the Lender shall be borne by the OWNER, unless otherwise incorporated in this Agreement.

20. It is understood and agreed that the OWNER will not assign this contract without the written consent of the BUILDER

21. This Agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of OWNER and BUILDER.

22. This Agreement constitutes the entire agreement between the parties and no representations, warranties, or agreements have been made unless incorporated herein.

I (WE) HAVE READ AND UNDERSTAND AND AGREE TO THE ABOVE CONDITIONS.

_____    _____
OWNER SIGNATURE                     OWNER SIGNATURE

Rev. 9/29/99

Page 2

**STRUCTURAL & CONSTRUCTION FEATURES & MATERIALS**
- Foundation - 8" x 16" steel reinforced concrete
- Two (2) courses stemwall block
- Termite soil pretreatment
- Building Permits & Builder's Risk Insurance
- Vapor barrier under 4" reinforced concrete slab
- Concrete Block construction with textured stucco finish
- Precast concrete window sills
- Marble window sills
- 8" x 16" poured steel reinforced concrete tie beam
- Engineered roof trusses tied to concrete tie beam
- Inside garage walls finished and painted
- Fiberglass Class A fungus resistant shingles
- 6" fiberglass batt insulation in ceilings over living area to R-19
- All exterior masonry living area walls insulated with 1" fiberglass batts and vapor barrier, 3 1/2" on living area frame walls
- Continuous exhaust ridge vent
- Interior studs at 16" o. c. maximum
- Aluminum fascia and soffits
- Overhead PEX (cross linked polyethylene) water lines with P. V. C. drains
- Interior walls to be drywall

**KITCHEN COMPONENTS**
- Custom mica cabinets and counter tops
- Ice maker water line in refrigerator area
- Stainless steel double sink
- Kitchen hood vented outside
- Built in dishwasher
- Built in garbage disposal
- Sliding glass pass through window where indicated
- Luminous ceiling lights
- Range with self cleaning oven

**ELECTRICAL ITEMS**
- 200 Amp electrical service
- Two (2) smoke detectors
- Prewired telephone and TV outlets (2 each)
- Dropped florescent ceilings where noted
- Pre-wired for garage door opener

**BATHROOM FEATURES**
- Decorator type vanities with mica tops
- Medicine cabinets where indicated
- Large mirror at vanities
- Brand name fixtures
- Single lever faucets
- Ceramic tile over tub and in shower

**OTHER ITEMS INCLUDED**
- Washer hook up and dryer vent to outside
- Aluminum weathersealed windows and framed screens
- Tempered safety glass in all sliding doors
- Insulated Metal front entrance door
- Flush masonite painted interior doors
- Steel sectional overhead garage door
- Screened in patio
- Choice of exterior house color
- Central heat and air conditioning
- Quick recovery 40 gal hot water heater
- Allowance for 7,200 sq. ft. of Bahia Sod
- 780 sq. ft. reinforced concrete driveway & walk
- 3 exterior hose bibbs
- Floor Allow. of **$1,500.00** included in base price
- Elect Fixture Allow. of **$300.00** included in base price

| | | |
|---|---|---|
| Floor Covering Allowance is now **$1,500.00** by increasing the allowance by | | $0.00 |
| Electric Fixture Allowance is now **$300.00** by increasing the allowance by | | $0.00 |

**ADDITIONAL SPECIFICATIONS:**

| | |
|---|---:|
| Home to be built with hip elevation, bipass sliding glass doors in lieu of pocket sliders, no windows in overhead garage door | N/A |
| Storm Panels | 2,300.00 |
| Increase garage to 39' wide x 26' deep with 2nd 16' wide overhead garage door | 32,077.00 |
| Extend guest wing 2' x 26' (enlarge BDRM #3 & #2) | 3,016.00 |
| Build home to meet good cents specifications including 50 gal HWH | 2,500.00 |
| Florinata Granite solid surface kitchen countertops with integrated 1/4 - 3/4 kitchen sink & Moen chrome onetouch kitchen faucet | 3,965.00 |
| Upgrade to suede seamless molded raised panel cabinet doors in kitchen and three baths | 2,654.00 |
| Extend Utility Room 4' forward & redesign Utility Room | 1,392.00 |
| Upgrade to 5" baseboard molding (not doors) | 875.00 |
| Change tub in guest bath to shower without glass doors | 740.00 |
| Upgrade to cultured marble vanity top in guest bath | 350.00 |
| Add weatherproof outlet for sprinkler system by OWNER | 200.00 |
| Stub out 2 laundry tubs (1 in Utility Room & 1 in garage | 590.00 |
| Change sliding glass door in Bedroom #3 to double #25 SH fire egress windows | N/C |
| Upgrade to knockdown finish | 350.00 |
| Add pull down stairs in garage | 225.00 |
| Add 33 SH window with storm panel in side wall of garage (no banding) | 625.00 |

| | |
|---|---:|
| Total Additional Specifications | $51,859.00 |

**EXCLUSIONS & DELETIONS:**

| | |
|---|---:|
| A/C by OWNER | 4,400.00 |
| | |
| Exclusion & Deletion Total: | ($4,400.00) |

White Window Frames

Witnessed by: _Jan Dunlop_                        _Pedro Delgado_ Owner

Witnessed by: _Jan Dunlop_                        _Margarita Delgado_ Owner

Witnessed by: _____             _____ Builder
             Jan Dunlop            Oyster Bay Homes, Inc.   CRC0 16339

ADDENDUM TO CONSTRUCTION AGREEMENT

This document will authorize the BUILDER, to proceed with the following procedures:

I (We) am (are) aware that the insulation in the home being built for me (us) will have insulation above the ceiling in the living area yielding a value of R-$30$, the exterior block walls of the living area will be insulated to the value of R-$5$, and the frame walls adjacent to living areas will yield a value of R-11.

RADON GAS is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

I (We) acknowledge that, I (We) have read this and each of the attached forms and understand that due to ever changing City, County and State regulations, the BUILDER can only supply estimates upon receipt of current surveys and perc tests with cross sections. This addendum is intended to be part of the above mentioned Construction Agreement, and is legally binding.

If any part of this Construction Agreement or Addendum(s) is found to be invalid, the balance of the Construction Agreement and Addendum(s) is deemed to be valid & binding.

Signature _Pedro Delgado_   Signature _Margarita Delgado_   Builder _[signature]_
Witness _[signature]_   Witness _[signature]_   Witness _____
Date _9/7/05_   Date _9/7/05_   Date _9/8/05_

We hereby request that our home be built with the garage on the _left_ side of the house (looking from the street). In accordance with paragraph #17 of the construction agreement, should the electric power source not accommodate service to the exterior garage wall additional expenses shall be borne by the OWNER.

Date _9/7/05_ Signature _Pedro Delgado_ Signature _Margarita Delgado_

We hereby request that the BUILDER proceed with drawings for our building plans. It is understood that should construction not take place, that the cost for plan development shall be borne by me (us), and is to be considered "out of pocket" expenses, according to the construction agreement.

Date _9/7/05_ Signature _Pedro Delgado_ Signature _Margarita Delgado_

We hereby request that the BUILDER begin the permit application procedure. It is understood that should construction not take place for any reason, that the costs incurred shall be borne be me (us), and is to be considered "out of pocket" expenses, according to the construction agreement.

Date _9/7/05_ Signature _Pedro Delgado_ Signature _Margarita Delgado_

I (We) understand that certain cities, subdivisions & developments mandate minimum landscaping requirements be completed prior to C.O. I (We) understand that the costs are not included in the base price of the Construction Agreement & must be borne by the OWNER.

Date _9/7/05_ Signature _Pedro Delgado_ Signature _Margarita Delgado_

I (We) hereby acknowledge the receipt of copies of the Florida Building Energy-Efficiency Rating System brochure and Notice Of Consumer Rights.

Date _9/7/05_ Signature _Pedro Delgado_ Signature _Margarita Delgado_

Rev.1/18/96

Job # 2149

# CONSTRUCTION AGREEMENT
## Oyster Bay Homes, Inc. CRCO 16339

THIS AGREEMENT made this 2nd day of August, 2005, by and between **Destacamento, Aladin & Marilou and Deyto, Andy D.** of 5251 Red Cedar Dr. #10, Ft. Myers, FL, 33907, (Home phone #274-8594, Work Phone #) herein called OWNER and Oyster Bay Homes, Inc., a Florida Corporation, of 6460 Topaz Ct., U.1, Ft. Myers, FL, 33912, hereinafter called the BUILDER.

WHEREAS, the OWNER is the owner in fee simple of or is purchasing certain premises described as follows and hereinafter called the building site, and OWNER desires BUILDER to construct a certain building on the premises: **Unit 3, Block 20, Lot 9, Lehigh** subdivision as recorded in the Lee County Records (St.#30-44-26-03-00020.0090) 910 Alaska Ave., Lehigh, 33971.

NOW, THEREFORE, in consideration of the premises:

1. The BUILDER shall construct upon the building site a building in accordance with the plans and specifications hereto attached. The BUILDER shall provide all materials and perform all work of the construction provided for in the plans and specifications in a good and workmanlike manner. The BUILDER warrants the construction of the building from defects of material or workmanship for a period of twelve (12) months from Certificate of Occupancy (C/O), in accordance with terms in paragraph 10 on the reverse side of this agreement.

2. The OWNER shall pay the BUILDER for such construction the amount of $192,491.00
Payable as follows:

| | |
|---|---|
| Upon signing this agreement | $1,000.00 |
| As per Approved Lender's draw schedule | $19,149.10 |
| When slab is poured | $34,468.38 |
| When tiebeam is poured | $43,085.48 |
| When drywall is completed | $43,085.48 |
| When cabinets are installed | $34,468.38 |
| Upon completion of construction | $17,234.19 |

plus a penalty of five per cent (5%) of the draw amount not paid within fifteen (15) days after requested by BUILDER, in accordance with paragraph 7 on the reverse side of this agreement.

3. OWNER to secure mortgage loan upon property from reputable lending institution or agency in the amount of 90%.

4. The Conditions on the reverse side of this Construction Agreement are an integral part of this agreement.

| | |
|---|---|
| Basic Model *Cardian* with the following front elevation *Standard Hip elevation* is priced at | $124,900.00 |
| Additional Specifications in lieu of or in addition to Standard Specifications (Total of Page 3): | $20,880.00 |

ESTIMATED HOMESITE IMPROVEMENT ALLOWANCES:

| | |
|---|---|
| Foundation & Final surveys | 275.00 |
| HRS Ap., site review & reperc | 420.00 |
| Clearing | 1,200.00 |
| Basic Stemwall fill | 2,015.00 |
| Additional stemwall block | 2,250.00 |
| Additional interior Fill | 6,045.00 |
| Additional Exterior Fill | 3,720.00 |
| 33 loads of prefill @ $155.00 per load | 5,115.00 |
| Certified Compaction Test | 540.00 |
| Grading | 1,650.00 |
| Septic tank with 300 sq ft. drainfield, septic filter & HRS required gutters | 1,640.00 |
| Septic System Corrections, permits, etc. & digout | 5,640.00 |
| 4" well, aereator, softener, pad & electric | 4,625.00 |
| Lee County impact fees (Park, Road, Fire, EMS & School) | 6,861.00 |
| Temporary Power | 225.00 |
| Landscaping by OWNER | N/A |
| 32' of 12" x 18" culvert pipe under driveway with 3 loads of fill | 1,990.00 |
| **ESTIMATED HOMESITE ALLOWANCE TOTAL:** | **44,211.00** |

OTHER ALLOWANCES:

| | |
|---|---|
| Sprinkler system by OWNER | 1,800.00 |
| Allowance for ceiling fans by OWNER | 700.00 |
| **OTHER ALLOWANCE TOTAL:** | **$2,500.00** |

Slab Height based on preliminary Perk test with invert elevation of 26" from perc site existing grade dated 6/14/05
Estimated Construction Agreement Total: $192,491.00
Garage: RIGHT

Witnessed by: _Lucy Morgan_ _Andy D. Deyto_ Owner
Witnessed by: _Lucy Morgan_ _Marilou J. Destacamento_ Owner
Witnessed by: _____ _____ Builder
Lucy Morgan                  Oyster Bay Homes, Inc.  CRCO 16339


EXHIBIT C

## CONSTRUCTION AGREEMENT CONDITIONS

5. OWNER herewith grants possession of the premises to the BUILDER, said premises to be delivered to OWNER upon completion of the construction and payment by OWNER of all moneys due BUILDER and OWNER signing BUILDER'S acceptance form. OWNER agrees to remain off the job site, only while construction is in progress, during the working hours of 7:00 AM to 5:00 PM.

6. Construction is to be completed within 140 working days of the starting date, allowing five (5) working days per calendar week, unless delayed by legal Holidays & company Vacation time, strike, building material shortages, withholding of funds due the BUILDER under this Agreement, newly established requirements of governmental agencies, Act of God, or other causes beyond the BUILDER'S control. Start of construction is defined as the date on which footings are poured. Closing and settlement of this Agreement will be within fifteen (15) days from the time the building is substantially ready for occupancy, and certificate of occupancy has been issued by the Building Department.

7. If the OWNER is to secure a mortgage loan, this Construction Agreement is contingent upon the OWNER obtaining a mortgage commitment with a payment schedule mutually agreeable to the Lending Institution and the BUILDER. If the OWNER is unsuccessful in obtaining a mortgage loan commitment, this Construction Agreement shall become null and void, and all deposits shall be refunded to OWNER by BUILDER, less out of pocket expenses incurred by the BUILDER. If the OWNER secures a mortgage loan upon the property in compliance with Paragraph Three (3) on the reverse, OWNER agrees to and understands that there will be a loan closing with the financial institution or agency or its representatives when the mortgage is obtained. If the OWNER is not securing a mortgage, the OWNER must comply with the BUILDER'S request, prior to or at any time during construction, to set up an escrow account with a Commercial Bank or Saving And Loan whereby payments, or the balance of payments, according to the draw schedule in Paragraph Two (2) shall be guaranteed. All construction draws are due upon request by the BUILDER. A 5% penalty on the amount of funds requested will be due if the BUILDER does not receive the draw within fifteen (15) days of the request for payment and an Additional 5% penalty every fifteen (15) days thereafter.

8. BUILDER will not apply for Building Permits or commence with construction prior to receiving signed OWNER APPROVED PLAN with any and all changes initialed. BUILDER will not be held responsible for delays in permit processing due to OWNER'S delay in returning OWNER APPROVED prints or engineering. Such delays will not affect or change the conditions as set forth in paragraph #12 of this agreement. Changes in plans and specifications may be requested by the OWNER when practicable and must be stipulated in writing, signed by both parties. All changes must meet the approval of both the BUILDER, and Lender and must comply with all applicable governmental rules and regulations. Changes must be paid for when change order is signed & returned. Any structural and or mechanical changes made by the OWNER after BUILDERS receipt of signed OWNER APPROVED PRINTS shall be paid for, along with costs for new drawings, new engineering, etc. before the start of construction. Upon purchase of building permit, BUILDER reserves the right not to commence construction until a signed color selection sheet has been provided to BUILDER by OWNER. Changes made by OWNER after BUILDER has purchased building permits must be received by BUILDER no later than fifteen (15) days prior to the phase of construction such change will affect. All changes made by OWNER after purchase of building permit are subject to BUILDER'S approval together with the costs thereof, and a one hundred dollar ($100.00), change order fee for each change, which shall be paid by OWNER at the time the changes are requested. For each change made by OWNER, the BUILDER shall be allowed a minimum of five (5) additional working days to complete construction, notwithstanding any additional delays caused by the change order.

9. BUILDER may use and install materials other than and different from those specified in the plans, drawings and specifications, or incorporated in the BASIC MODEL, provided such different materials are of substantially equal value and utility.

10. The BUILDER gives the OWNER a "Limited Warranty" for a period of one (1) year, starting when the certificate of occupancy is granted. The BUILDER warrants all materials and their installation incorporated in the Construction Agreement, with the exception of those items stated as allowances, or homesite improvements, and any such items which require OWNER maintenance. Should BUILDER determine that warranty work requested by the OWNER was the result of neglect or abuse, the OWNER agrees to reimburse the BUILDER for all expenses incurred in the repair. The BUILDER warrants the structure from defects of material or workmanship only. Due to unstable soil conditions in Florida, and fill requirements, the BUILDER'S warranty will not cover cracks caused by settling and or stress.

11. The contract price and Homesite Improvement Estimates in this Agreement are based upon a readily accessible, clear, level developed lot up to 10,000 sq. ft. in total area, now serviced by public utilities, free of vegetation, brush and trees, of sufficiently high elevation to permit the foundation as specified in the plans. The Fill, Grade, and Hauling Allowances as stated under Homesite Improvements, applies to but is not limited to, charges for initial lot preparation, foundation fill, machine grading, compaction, culvert pipe & driveway grading, rough & final machine grading, fill needed, or removal of fill or vegetation to establish proper grade. Such charges are to be at fair market value plus the BUILDER'S standard addition for administration (10%) and profit (25%). OWNER authorizes and agrees to pay charges for any clearing, special foundation requirements, testing required by governmental agencies, fill on interior and exterior of foundation, temporary utilities, maintenance and repair of access roads, including, but not limited to any fill requirements necessitated to meet the provision of Federal Flood Insurance Laws, or any other applicable laws or regulations. BUILDER reserves the right to use whatever means & methods available for septic system and site work which are economically beneficial to the OWNER. It is the OWNER'S responsibility to notify the BUILDER of unusual soil conditions and provide any needed test borings. Expense for removal of excess dirt and vegetation to provide proper grade or any expenses caused by rock or other adverse sub soil conditions will be borne by OWNER, and paid to BUILDER at the time such expenses are incurred.

12. Pricing in the Agreement is based upon present construction costs. OWNER and BUILDER recognize that construction costs are very fluid and subject to change. In the event that the BUILDER shall not be in the position to commence construction within forty-five (45) days of the date shown on Page 1 of this Agreement, as a result of a delay in obtaining building permits or necessary governmental approvals, or delays in OWNER obtaining mortgage financing, the construction price shall be subject to change. The BUILDER shall notify the OWNER of any adjustment in price. If said adjustment results in an increase of the contract total, OWNER has the right to cancel the contract and receive the return of deposit, less any expenses incurred by the BUILDER, without further liability. Notice of this election must be given to BUILDER within (10) days of the receipt of adjustment notice by OWNER.

13. Homesite improvement allowance are BUILDER'S best estimate at the time of contract signing. Actual site improvements may cost more or less. OWNER shall pay during construction, as they are incurred, any excess over the estimated homesite improvement cost reflected on the face of the Agreement, or BUILDER shall refund over estimates at closing by crediting any lesser sum utilized for allowances. Any payment owed to the BUILDER for Homesite Improvements, changes, or any other work determined by this Agreement shall include BUILDER'S standard addition for cost of administration (10%), and profit (25%).

14. Items stated as Allowance, with the exception of Homesite Improvements, in this Agreement will be paid at face value to the OWNER or to whom the OWNER directs the BUILDER to pay, at the time of closing. All materials purchased and work performed for items listed as "allowances" are the OWNER'S responsibility and will not be covered by the BUILDER'S "Limited Warranty". The OWNER shall be directly responsible to the BUILDER for damages and delays which may result from allowance purchases. The expense for such damages will be deducted from the allowance prior to disbursement. The OWNER will be obligated to close with the BUILDER should delays occur due to allowance purchases, or be subject to penalties as set forth in paragraph seven (7) of this Agreement. The OWNER clearly understands there is no obligation to purchase materials or services stated as an allowance from anyone the BUILDER or his staff may recommend.

15. OWNER agrees to maintain all items which require maintenance as of the time they are installed on the premises, and through the balance of the construction period. Examples of such items, but not limited to these items are, sod, landscaping, sprinkler system swimming pool, spa, etc. The OWNER may request the BUILDER to delay installation of these items, provided such a delay will not delay closing with OWNER and or Lender. Damages resulting from improper maintenance will not be covered by the BUILDER'S "Limited Warranty".

16. OWNER will not construct, cause to be built, or contract with other parties for any construction on the premises without the BUILDER'S written consent. Upon receiving the BUILDER'S consent, the OWNER will be directly responsible to the BUILDER for damages, delays and the costs thereof resulting from work the OWNER has performed, or from work performed by any other parties the OWNER has authorized. The OWNER, when contacting with other parties, agrees to use only licensed persons, and must supply the BUILDER with a valid Certificate of Liability and Workmanship Compensation Insurance, prior to commencement. The OWNER holds the BUILDER harmless for any and all delays, damages and injuries which may result.

17. Expenses for electrical service which may be required to be run across the building necessitated by power company pole location and regulations, or underground electric and or telephone service required will be borne by OWNER.

18. Connection allowances made for public water and sewer will be limited to a distance of forty five (45) feet. Cost of lines required over forty five (45) feet will be borne by OWNER.

19. Building fees and charges will be paid by BUILDER. The term "Building Fees and Charges", as used in this Agreement will be limited to the purchase of the home building permits and items stated on attached specification sheet pertaining to the phases of construction contemplated by this Construction Agreement. Expenses incurred for testing, engineering, City, Local, or State Fees, including but not limited to Fees, such as, Impact Fees, Betterment Fees, Concurrency Fees, Health Department Fees, etc., and other special requirements made by the Building Department or the Lender shall be borne by the OWNER, unless otherwise incorporated in this Agreement.

20. It is understood and agreed that the OWNER will not assign this contract without the written consent of the BUILDER.

21. This Agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of OWNER and BUILDER.

22. This Agreement constitutes the entire agreement between the parties and no representations, warranties, or agreements have been made unless incorporated herein.

I (WE) HAVE READ AND UNDERSTAND AND AGREE TO THE ABOVE CONDITIONS:

x _____  8/6/05     _____
         OWNER SIGNATURE                       OWNER SIGNATURE

Rev. 9/29/99

x _____

**STRUCTURAL & CONSTRUCTION FEATURES & MATERIALS**
- Foundation - 8" x 16" steel reinforced concrete
- Two (2) courses stemwall block
- Termite soil pretreatment
- Building Permits & Builder's Risk Insurance
- Vapor barrier under 4" reinforced concrete slab
- Concrete Block construction with textured stucco finish
- Precast concrete window sills
- Marble window sills
- 8" x 16" poured steel reinforced concrete tie beam
- Engineered roof trusses tied to concrete tie beam
- Inside garage walls finished and painted
- Fiberglass Class A fungus resistant shingles
- 6" fiberglass batt insulation in ceilings over living area to R-19
- All exterior masonry living area walls insulated with 1" fiberglass batts and vapor barrier, 3 1/2" on living area frame walls
- Continuous exhaust ridge vent
- Interior studs at 16" o. c. maximum
- Aluminum fascia and soffits
- Overhead PEX (cross linked polyethylene) water lines with P. V. C. drains
- Interior walls to be drywall

**KITCHEN COMPONENTS**
- Custom mica cabinets and counter tops
- Ice maker water line in refrigerator area
- Stainless steel double sink
- Kitchen hood vented outside
- Built in dishwasher
- Built in garbage disposal
- Sliding glass pass through window where indicated
- Luminous ceiling lights
- Range with self cleaning oven

**ELECTRICAL ITEMS**
- 200 Amp electrical service
- Two (2) smoke detectors
- Prewired telephone and TV outlets (2 each)
- Dropped florescent ceilings where noted
- Pre-wired for garage door opener

**BATHROOM FEATURES**
- Decorator type vanities with mica tops
- Medicine cabinets where indicated
- Large mirror at vanities
- Brand name fixtures
- Single lever faucets
- Ceramic tile over tub and in shower

**OTHER ITEMS INCLUDED**
- Washer hook up and dryer vent to outside
- Aluminum weathersealed windows and framed screens
- Tempered safety glass in all sliding doors
- Insulated Metal front entrance door
- Flush masonite painted interior doors
- Steel sectional overhead garage door
- Screened in patio
- Choice of exterior house color
- Central heat and air conditioning
- Quick recovery 40 gal hot water heater
- Allowance for 7,200 sq. ft. of Bahia Sod
- 780 sq. ft. reinforced concrete driveway & walk
- 3 exterior hose bibbs
- Floor Allow. of $1,500.00 included in base price
- Elect Fixture Allow. of $300.00 included in base price

Floor Covering Allowance is now $9,500.00 by increasing the allowance by         $8,000.00
Electric Fixture Allowance is now $1,300.00 by increasing the allowance by       $1,000.00

**ADDITIONAL SPECIFICATIONS:**

| | |
|---|---:|
| Home to be built with hip elevation, bipass sliding glass doors in lieu of pocket sliders, no windows in overhead garage door | N/A |
| Build home to meet good cents specifications including 50 gal HWH | 2,400.00 |
| Increase Master Bath 2' x 13' & change shower to tub/shower | 1,903.00 |
| Florinata Granite solid surface kitchen countertops with integrated 1/4 - 3/4 kitchen sink & Moen chrome onetouch kitchen faucet | 3,050.00 |
| Upgrade to suede seamless molded raised panel cabinet doors in kitchen and both baths | 2,847.00 |
| Upgrade sliding glass doors in Dining Room & Master Bedroom to French doors | 1,400.00 |
| Estimate to install OWNER supplied ceiling fans (not light kits) | 280.00 |

Total Additional Specifications         $20,880.00

**EXCLUSIONS & DELETIONS:**

Exclusion & Deletion Total:         $0.00

White Window Frames

Witnessed by: _Lucy Morgan_                         x _Andy D. Dapp_ Owner
Witnessed by: _Lucy Morgan_                         x _[signature]_ Owner
Witnessed by: _____                        x _[signature]_ Builder
     Lucy Morgan        Oyster Bay Homes, Inc.   CRCO 16339

Destacamento                    Page 3

## ADDENDUM TO CONSTRUCTION AGREEMENT

This document will authorize the BUILDER to proceed with the following procedures:

I (We) am (are) aware that the insulation in the home being built for me (us) will have insulation above the ceiling in the living area yielding a value of R-_30_; the exterior block walls of the living area will be insulated to the value of R-_5_, and the frame walls adjacent to living areas will yield a value of R-11.

RADON GAS is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

I (We) acknowledge that, I (We) have read this and each of the attached forms and understand that due to ever changing City, County and State regulations, the BUILDER can only supply estimates upon receipt of current surveys and perc tests with cross sections. This addendum is intended to be part of the above mentioned Construction Agreement, and is legally binding.

If any part of this Construction Agreement or Addendum(s) is found to be invalid, the balance of the Construction Agreement and Addendum(s) is deemed to be valid & binding.

Signature _[signed]_  Signature _[signed]_  Builder _[signed]_
Witness _Lucy Morgan_  Witness _Lucy Morgan_  Witness
Date _8/6/05_  Date _8/6/05_  Date _8/11/05_

We hereby request that our home be built with the garage on the _RIGHT_ side of the house (looking from the street). In accordance with paragraph #17 of the construction agreement, should the electric power source not accommodate service to the exterior garage wall additional expenses shall be borne by the OWNER.
Date _8/6/05_  Signature _[signed]_  Signature _[signed]_

We hereby request that the BUILDER proceed with drawings for our building plans. It is understood that should construction not take place, that the cost for plan development shall be borne by me (us), and is to be considered "out of pocket" expenses, according to the construction agreement.
Date _8/6/05_  Signature _[signed]_  Signature _[signed]_

We hereby request that the BUILDER begin the permit application procedure. It is understood that should construction not take place for any reason, that the costs incurred shall be borne be me (us), and is to be considered "out of pocket" expenses, according to the construction agreement.
Date _8/6/05_  Signature _[signed]_  Signature _[signed]_

I (We) understand that certain cities, subdivisions & developments mandate minimum landscaping requirements be completed prior to C.O. I (We) understand that the costs are not included in the base price of the Construction Agreement & must be borne by the OWNER.
Date _8/6/05_  Signature _[signed]_  Signature _[signed]_

I (We) hereby acknowledge the receipt of copies of the Florida Building Energy-Efficiency Rating System brochure and Notice Of Consumer Rights.
Date _8/6/05_  Signature _[signed]_  Signature _[signed]_

Rev.1/18/96

Page 4