## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL          MDL No. 02047
        PRODUCTS LIABILITY LITIGATION          SECTION L

                                                 JUDGE FALLON
                                                 MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:

DAVID GROSS, CHERYL GROSS and
LOUIS VELEZ, *et al*. v.
KNAUF GIPS KG, *et al*.,
Case No. 2:09-cv-06690-EEF-JCW
_____/

### DEFENDANT ARANDA HOMES INC.'S CROSS CLAIM[1]

COMES NOW Defendant/Cross-Claimant, Aranda Homes, Inc. ("**Aranda**"), by and through its undersigned counsel, and alleges for its Cross-Claim against Defendants/Cross-Defendants Knauf Gips KG ("**Knauf Gips**"), Knauf Plasterboard (Tianjin) Co. Ltd. ("**Knauf Tianjin**"), Knauf Plasterboard (Wuhu) Co. Ltd. ("**Knauf Wuhu**"), Knauf Plasterboard (Dongguan) Co. Ltd., ("**Knauf Dongguan**"), Knauf InsulationGmbH a/k/a Knauf Insulation USA ("**Knauf USA**"), Knauf Gypsum Indonesia ("**Knauf Indonesia**"), Guangdong Knauf New Building Products Co., Ltd. ("**Knauf Guangdong**"), Knauf Amf GmbH & Co. KG ("**Knauf Amf GmbH**"), and Knauf Do Brasil Ltd. ("**Knauf Brasil**") (collectively, the "**Knauf Cross-Claim Defendants**"), Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.

---

[1]    Plaintiffs commenced this action by filing an Omnibus Class Action Complaint in this cause, which was subsequently amended (the "Amended Complaint") [D.E.366] and also expanded by way of intervention, when intervening plaintiffs, Mary Ann Benes, *et. al*., filed their Omnibus Class Action Complaint in Intervention (III) (the "Complaint in Intervention") [D.E. 1777 & 1777-1] (after all modifications, referred to herein as the "Complaint"). In response, Aranda has moved to dismiss the Complaint.  These Cross-Claims are therefore being brought to the extent all claims against Aranda are not dismissed in their entirety with prejudice. In the event all of Plaintiffs' claims against Aranda are not dismissed with prejudice, Aranda also expressly reserves the right to raise any and all available defenses and to respond to the Complaint accordingly.

("**Taishan Gypsum**"),  Taian Taishan Plasterboard Co., Ltd.  ("**Taian Taishan**"), La Suprema Trading, Inc. ("**La Suprema Trading**" or "**LS Trading**"), La Suprema Enterprise, Inc. ("**La Suprema Enterprise**" or "**LS Enterprise**"), Banner Supply Co. ("**Banner Co.**") and Banner Supply Company Fort Myers, LLC ("**Banner Fort Myers**"), as follows:

<u>**CROSS-CLAIMS AGAINST THE KNAUF CROSS-CLAIM DEFENDANTS, TAISHAN GYPSUM, TAIAN TAISHAN, LA SUPREMA TRADING, LA SUPREMA ENTERPRISE, BANNER CO. AND BANNER FORT MYERS**</u>

<u>**The Parties, Jurisdiction and Venue**</u>

1.      This is an action for damages within the monetary jurisdiction of this Court.

2.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Aranda.

3.      Aranda was and is a Florida corporation doing business in Lee County Florida, where this cause of action arose.  At all material times, Aranda was a builder of residential homes in Lee County.

4.      Aranda has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Aranda in the construction of their homes was defective and caused damages to Plaintiffs.

5.      Aranda denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.      The Knauf Cross-Claim Defendants, Taishan Gypsum**,** Taian Taishan, LS Trading, LS Enterprise, Banner Co. and Banner Fort Myers (collectively, the "**Cross-Claim Defendants**") have also been named as defendants in the above styled action.  Aranda adopts and incorporates, as if fully set forth herein, paragraphs 15 – 22, 37, 48, 92 – 94 and 134 – 143 of the Amended Complaint and paragraphs 1076 – 1077, 1445, and 1449 of the Complaint in

{M3040734;1}

Intervention[2] identifying each of the Cross-Claim Defendants and describing the nature of their business activities.

7.   Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs.

8.   Moreover, this Cross-Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and over the instant Cross-Claim Defendants.

## General Allegations

9.   As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Aranda is liable for damages to Plaintiffs.[3]

10.   Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, appliances and Plaintiffs' personal property (the "**Other Property**").

11.   Plaintiffs further allege that the drywall contained in their Homes was manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of the Cross-Claim Defendants.

12.   Plaintiffs also allege that the drywall is unreasonably dangerous because they

---

[2]      *See* note 1, *infra*.

[3]      The named class Plaintiffs and other members of the putative class have asserted claims against Aranda in this Action, as well as other actions in the state and federal courts.  The damages sought by Aranda in this Cross-Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

3

have suffered personal injuries.

13.     In connection with the construction of certain homes in Lee County, Aranda purchased drywall that was installed in the Homes, which was purchased from and supplied by Banner Co. and/or Banner Fort Myers (together, "**Banner**").

14.     At all material times, Banner knew that the drywall purchased for the Homes was going to be used in construction of residential homes.  Banner knew that Aranda was a foreseeable user of the drywall and that Aranda required and expected the drywall to be fit for the ordinary purpose for which it was intended.

15.     Upon information and belief, Banner procured drywall that was installed in the Homes from an import-export specialist, LS Trading and/or LS Enterprise (together, "**La Suprema**").  At all material times, La Suprema knew that such drywall was going to be used in construction of residential homes.

16.     Upon information and belief, Banner also procured drywall that was installed in the Homes from the Knauf Cross-Claim Defendants, Taishan Gypsum and/or Taian Taisshan.

17.     Upon information and belief, at all material times, the Knauf Cross-Claim Defendants, Taishan Gypsum and/or Taian Taishan knew or should have known that such drywall was going to be used in the construction of residential homes.

18.     Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips, Knauf Tianjin, La Suprema and Banner knew that some of Banner's customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by Knauf Tianjin emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

19.     Knauf Tianjin consulted with Knauf Gips about the drywall complaints.

4

20.     Hans-Ulrich Hummel, head of research and development for Knauf Gips in Germany, was aware of the "big problems" with Knauf boards from China and investigated complaints of noxious odors being emitted by the drywall.

21.     Upon information and belief, Knauf Tianjin and/or Knauf Gips conducted their own tests of the drywall and advised Banner that the drywall was "smelly."

22.     Upon information and belief, Banner also conducted tests of the drywall installed in certain South Florida residential homes.

23.     Upon information and belief, Knauf Tianjin, Knauf Gips and/or Banner did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

24.     Upon information and belief, Knauf Gips and Knauf Tianjin were concerned about the potential fallout if the problems with the drywall product became widely known. In a concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Knauf Tianjin entered into a confidential settlement agreement with Banner in January of 2007 (the "**Secret Agreement**").

25.     The Secret Agreement stipulated that Knauf Tianjin would take back all of Banner's unsold drywall, pay Banner for storing it, and replace Banner's inventory of Chinese drywall with drywall made by U.S. manufacturers.  In return, Banner promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

26.     While Knauf Tianjin recalled the drywall product from Banner, it did not recall or take back the product from its other customers, nor did it warn them of the defective nature of the drywall.

27.     Upon information and belief, Knauf Tianjin entered into the Secret Agreement to

{M3040734;1}

buy the silence of Banner and conceal defects in the drywall from consumers.  The Secret Agreement purposefully kept consumers, such as Aranda and other builders, contractors and installers, in the dark about the problems with the drywall.  The Secret Agreement acknowledged that if Banner broke its promise to remain silent, Knauf Tianjin could be irreparably harmed.

28.     Aranda did not know and was not made aware of the problems with the drywall. The drywall manufactured, exported, imported, distributed and/or sold by Banner, La Suprema, Taishan Gypsum, Taian Taishan, and/or the Knauf Cross-Claim Defendants for use in the construction of the Homes was not altered and/or otherwise substantively changed by Aranda.

29.     For the purpose of this Cross-Claim only, and not constituting an admission of the allegations or liability by Aranda, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

30.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, the Cross-Claim Defendants had greater knowledge, and/or stood in a better position than Aranda to know, of the drywall's applications, performance, and dangers.

31.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the

Cross-Claim Defendants' acts and omissions in manufacturing, exporting, importing, distributing, and/or selling the defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages to Plaintiffs.

32.     Further, to the extent Plaintiffs are successful in proving the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the drywall product Aranda purchased for installation in the Homes.

33.     Moreover, Aranda did not know and was never informed by any of the Cross-Claim Defendants that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.

34.     Consequently, the Cross-Claim Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Aranda in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

35.     Additionally, the Cross-Claim Defendants' wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

36.     All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

## COUNT 1 – VICARIOUS LIABILITY
### (Against Knauf Gips)

37.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

{M3040734;1}

38.     This is an action for vicarious liability against Knauf Gips for the negligence and other wrongful acts of its actual and/or apparent agents, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil.

39.     Among other things, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil are involved in the manufacturing and sale of drywall.  Upon information and belief, they are actual agents and/or apparent agents of Knauf Gips.

40.     Upon information and belief, at all material times, Knauf Gips was a family-owned German company extensively involved in the plasterboard market in Germany, the United Kingdom, France, China, and the United States, among others.  Indeed, the Court of European Justice of the European Union in an action between Knauf Gips and the European Commission has found that Knauf Gips and other subsidiaries dealing in gypsum products owned by the Knauf family (the "Knauf Group") constitute one "economic unit" in the area of competition law, and that Knauf Gips should be responsible for all activities of the Knauf Group.

41.     Upon information and belief, at all material times, Knauf Gips had an apparent or actual partnership with, or an ownership interest in, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil.

42.     Upon information and belief, Knauf Gips supervised, monitored, and/or otherwise exercised control and/or had a right to exercise control over the operations of Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil, and their agents, apparent agents, and employees, including the

manufacturing, distribution, marketing, and/or sale of their drywall products. Moreover, upon information and belief, Knauf Gips is responsible for establishing, implementing, supervising and maintaining the quality control mechanisms utilized by Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil.

43.     Upon information and belief, at all material times, Knauf Gips was closely involved in the management of Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil, and their agents, apparent agents, and employees – overseeing quality control, finding raw materials and dealing with rising concerns over defective drywall.

44.     By way of its apparent or actual partnership and/or exercise of control over the conduct and operations of Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil, Knauf Gips acknowledged that Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil would act on its behalf as its actual and/or apparent agent(s).

45.     Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil accepted the undertaking to act on Knauf Gips' behalf.

46.     As such, Knauf Gips is vicariously liable for all of the damages caused by the negligent and/or other wrongful conduct of its actual and/or apparent agents, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil, as further alleged herein.

9

{M3040734;1}

47.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's, Knauf Wuhu's, Knauf Dongguan's, Knauf USA's, Knauf Indonesia's, Knauf Guangdong's, Knauf Amf GmbH's, and Knauf Brasil's wrongful conduct directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips', Knauf Tianjin's, Knauf Wuhu's, Knauf Dongguan's, Knauf USA's, Knauf Indonesia's, Knauf Guangdong's, Knauf Amf GmbH's, and Knauf Brasil's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 2 – COMMON LAW INDEMNITY
### (Against Knauf Tianjin and Knauf Gips)

48.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

49.     Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

50.     Upon information and belief, Knauf Tianjin, among other things, manufactured,

10

mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

51. Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

52. Aranda is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

53. Aranda is entirely without fault for the injuries alleged by Plaintiffs.

54. Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Tianjin and/or Knauf Gips.

55. A special relationship existed between Knauf Tianjin and/or Knauf Gips and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Tianjin and/or Knauf Gips. To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips was defective, Knauf Tianjin and Knauf Gips are wholly to blame for Plaintiffs' injuries.

56. As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Tianjin and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package,

advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

57.     If Aranda is found to be liable to Plaintiffs, Knauf Tianjin and/or Knauf Gips is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 3 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Tianjin and Knauf Gips)

58.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

59.     This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

60.     Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall  installed in the Homes.

61.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's

conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

62.     Plaintiffs, in the Complaint, allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

63.     Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, Knauf Tianjin and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

64.     Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

65.     To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against Knauf Tianjin and/or Knauf Gips for its/their pro rata share of the liability.

66.     Knauf Tianjin and/or Knauf Gips should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Aranda in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## COUNT 4 – EQUITABLE SUBROGATION
### (Against Knauf Tianjin and Knauf Gips)

67.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

68.     This is an action, stated in the alternative, for equitable subrogation.

69.     Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

70.     Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

71.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

72.     Aranda is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

73.     Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

74.     To the extent that Aranda is required to pay damages for any fault of Knauf Tianjin and/or Knauf Gips to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from Knauf Tianjin and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this

14

action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

75.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 5 – NEGLIGENCE
### (Against Knauf Tianjin and Knauf Gips)

76.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

77.     Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

78.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

79.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

80.     Aranda was a foreseeable user of the drywall manufactured, mined, designed,

{M3040734;1}

produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Tianjin and/or Knauf Gips.

81.     Knauf Tianjin and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Tianjin and/or Knauf Gips owed Aranda a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Aranda's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

82.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

83.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips breached the duty of care owed to Aranda by

16

among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or and ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

84.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Tianjin's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

85.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Aranda to substantial liability and damages.  If Knauf Tianjin and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of improperly manufacturing,

17

mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

86.     Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Tianjin's and/or Knauf Gips' breaches of the duty of care owed to Aranda, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 6 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Tianjin and Knauf Gips)

87.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

88.     Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

89.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the

{M3040734;1}

stream of commerce, and/or sold drywall that was installed in the Homes.

90.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

91.     Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

92.     Knauf Tianjin and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Tianjin and/or Knauf Gips owed Aranda a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction.

93.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

94.     To the extent Plaintiffs are successful in proving drywall in the Homes was

19

defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that unless it warned Aranda of the risk of using the drywall, Aranda would suffer harm. However, Knauf Tianjin and/or Knauf Gips failed to provide an adequate warning of such danger.

95.     Aranda did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as alleged by Plaintiffs.  Without a warning, Aranda had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

96.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips breached the duty of care owed to Aranda by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Aranda about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Aranda about any problems or dangers in using the drywall for residential construction, about which Knauf Tianjin and/or Knauf Gips knew or reasonably should have known.

97.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Tianjin's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

98.     To the extent Plaintiffs are successful in proving that drywall was defective,

20

unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If Knauf Tianjin and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Tianjin and/or Knauf Gips would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

99.    Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Tianjin's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Tianjin and Knauf Gips)

100.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

101.    Plaintiffs in the Complaint allege various claims against Aranda for damages

21

{M3040734;1}

grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

102.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

103.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

104.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

105.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Tianjin's and/or Knauf Gips' control and/or was sold to Aranda, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

106.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged in the Complaint, Knauf Tianjin and/or Knauf Gips, as the manufacturer of the drywall, had a duty of

{M3040734;1}

reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Tianjin and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

107.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

108.    Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by Knauf Tianjin and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

109.    A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

110.    At all material times, Knauf Tianjin and/or Knauf Gips stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of Knauf Tianjin's and/or Knauf Gips' drywall product in residential construction.

111.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable

23

manufacturer, producer and/or seller in Knauf Tianjin's and/or Knauf Gips' position would have provided a post-sale warning.

112.     Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Tianjin's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 8 – STRICT PRODUCTS LIABILITY
### (Against Knauf Tianjin and Knauf Gips)

113.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

114.     Upon information and belief, at all material times, Knauf Tianjin and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

115.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the

24

stream of commerce, and/or sold drywall that was installed in the Homes.

116.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in distributing, placing into the stream of commerce and/or selling drywall.

117.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips, Knauf Tianjin and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

118.   Knauf Tianjin and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

119.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

120.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as

25

reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Tianjin and Knauf Gips)

121.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

122.    Upon information and belief, at all material times. Knauf Tianjin and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

123.    Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

124.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

125.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips, Knauf Tianjin and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

26

126.   Knauf Tianjin and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

127.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

128.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Tianjin and/or Knauf Gips was required to provide a warning. However, Knauf Tianjin and/or Knauf Gips failed to provide an adequate warning of such danger.

129.   Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

130.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Tianjin and/or Knauf Gips failed to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

131.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 10**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Knauf Tianjin and Knauf Gips)**

132.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

133.     This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

134.     The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. §

501.202(2).

135.    At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

136.    At all material times, Knauf Tianjin engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Aranda.

137.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

138.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

139.    At the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Tianjin and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

140.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

141.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

29

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

142.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Tianjin's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

143.    To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein constitutes unfair methods of competition, unconscionable acts or

practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

144.    To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

145.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

146.    To the extent Plaintiffs are successful in proving their claims, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court

{M3040734;1}

costs. Knauf Tianjin's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 11 – UNJUST ENRICHMENT
### (Against Knauf Tianjin and Knauf Gips)

147.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

148.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

149.   Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

150.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

{M3040734;1}

151. Knauf Tianjin and/or Knauf Gips received money from Aranda as payment for the defective drywall installed in the Home.

152. In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Aranda conferred a benefit, *i.e.*, funds and profit, to Knauf Tianjin and/or Knauf Gips, which had knowledge thereof.

153. Knauf Tianjin and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Aranda.

154. To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

155. The circumstances described herein under which Knauf Tianjin and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Tianjin and/or Knauf Gips to retain those funds and profits.

156. Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 12 – FRAUDULENT CONCEALMENT
### (Against Knauf Tianjin and Knauf Gips)

157.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

158.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

159.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

160.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

161.     As such, Knauf Tianjin and/or Knauf Gips had a duty to reveal any such knowledge.

162.     Upon information and belief, Knauf Tianjin and/or Knauf Gips failed to disclose

and actively concealed drywall defects for the purpose of inducing consumers such as Aranda to purchase and use the drywall product and/or to prevent such consumers from demanding that drywall already purchased and/or installed in residential homes be replaced at Knauf Tianjin's and/or Knauf Gips' expense.

163.    Knauf Tianjin and/or Knauf Gips had superior knowledge not readily available to Aranda that the drywall was defective and/or not fit for use in the construction of a residential home, which could not have been discovered by Aranda by way of ordinary observation.

164.    Knauf Tianjin and/or Knauf Gips having superior knowledge of the defective nature of the drywall knowingly, deliberately and/or intentionally failed to disclose and actively concealed the drywall's defective nature and used artifice to sell the drywall product.

165.    Knauf Tianjin employed artifice to sell the drywall product by entering into the Secret Agreement with Banner to conceal "perceived or actual smell or health risks" related to the drywall from Aranda and other customers of Banner.

166.    Aranda purchased drywall for Aranda from Banner for the construction of the Homes. By entering into the Secret Agreement with Banner, Knauf Tianjin suppressed information that caused Aranda to remain ignorant about any perceived or actual defects and to believe that it had all available information necessary to use the drywall product sold by Banner in the construction of the Homes.

167.    Aranda relied on Knauf Tianjin and/or Knauf Gips as the manufacturer of the drywall to disclose any facts indicating the drywall was not fit for the ordinary purpose for which it was intended.  The terms of the Secret Agreement foreclosed Aranda from having an equal opportunity to become reasonably informed of the fact that such defects were associated with the drywall.

168.     By failing to disclose and actively concealing that the drywall Knauf Tianjin and/or Knauf Gips manufactured, designed, distributed, and/or sold emitted foul or noxious odors and/or gases, and/or was not fit for the ordinary purpose for which it was intended, Knauf Tianjin and/or Knauf Gips conveyed the misleading impression that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of a residential home.

169.     Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

170.     If Aranda had known about the matters concealed by Knauf Tianjin and/or Knauf Gips, Aranda would not have purchased and used the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips for installation in residential homes and/or Aranda would have demanded replacement of the drywall at Knauf Tianjin's expense.

171.     Knauf Tianjin and/or Knauf Gips engaged in the foregoing conduct with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[4]

172.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' fraudulent concealment of the defective

---

[4] Aranda reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for fraudulent concealment.

36

nature of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 13
### COMMON LAW AIDING AND ABETTING FRAUDULENT CONCEALMENT
### (Against Knauf Gips)

173.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 158, 160 through 170 above as if fully set forth herein.

174.    This is an action, stated in the alternative, for common law aiding and abetting fraudulent concealment against Knauf Gips.

175.    Knauf Gips was generally and specifically aware that Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects breached a duty to foreseeable consumers, such as Aranda, to reveal such knowledge.

176.    Knauf Gips was generally and specifically aware of the nature of the harm that would be incurred by consumers such as Aranda by virtue of Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects.

37

177.   Knauf Gips knowingly and substantially aided, abetted, advised or encouraged Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects.

178.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Gips' aiding and abetting a fraudulent concealment directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.   Knauf Gips' wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

179.   Knauf Gips engaged in the acts described above with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[5]

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 14
### CIVIL CONSPIRACY TO FRAUDULENTLY CONCEAL A DEFECTIVE PRODUCT
### (Against Knauf Gips and Knauf Tianjin)

180.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

---

[5]   Aranda reserves its right to claim exemplary and/or punitive damages against Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for common law aiding and abetting.

{M3040734;1}

181.    This is an action, stated in the alternative, for civil conspiracy to fraudulently conceal a defective product.

182.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

183.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin.

184.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, upon information and belief, Knauf Tianjin failed to disclose and actively concealed actual and/or potential and/or perceived drywall defects for the purpose of inducing consumers such as Aranda to continue to purchase and use the drywall product and/or to prevent such consumers from demanding that drywall already purchased and/or installed in residential homes be replaced at Knauf Tianjin's expense.

185.    Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips and Knauf Tianjin knew some of Banner's customers had complained that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin emitted a very bad sulfurous odor.

186.    Upon information and belief, Knauf Tianjin and Knauf Gips engaged in and/or agreed to a scheme to conceal defects in the drywall from consumers, such as Aranda (the "Concealment Scheme").

{M3040734;1}

187.    Upon information and belief, Knauf Gips and/or Knauf Tianjin investigated the complaints of odors and tested the drywall.

188.    After conducting tests of the drywall, Knauf Tianjin and/or Knauf Gips advised Banner the drywall was safe and met regulatory standards.

189.    In furtherance of the Concealment Scheme, Knauf Tianjin employed artifice to sell its drywall by entering into the Secret Agreement with Banner to conceal from Aranda and other customers of Banner "perceived or actual smell or health risks" related to the drywall.

190.    By entering into the Secret Agreement with Banner, Knauf Tianjin suppressed information that caused Aranda to remain ignorant about any perceived or actual defects and to believe that it had all available information necessary to purchase and/or use the drywall product in the construction of the Homes.

191.    Aranda relied on Knauf Tianjin as the manufacturer of the drywall to disclose any facts indicating the drywall was not fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.  The terms of the Secret Agreement foreclosed Aranda from having an equal opportunity to become reasonably informed of the fact that such defects were associated with the drywall.

192.    By failing to disclose and actively concealing that the drywall emitted foul or noxious odors and/or gases, and/or was defective, Knauf Tianjin conveyed the misleading impression that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

193.    Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or was not safe and fit for use in the construction of residential homes.

40

194.    If Aranda had known about the matters concealed by Knauf Tianjin and Knauf Gips, Aranda would not have purchased and/or used the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin for installation in residential homes and/or Aranda would have demanded replacement of the drywall at Knauf Tianjin's expense.

195.    Knauf Gips and Knauf Tianjin engaged in the Concealment Scheme with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[6]

196.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Concealment Scheme directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

---

[6]    Aranda reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for civil conspiracy to fraudulently conceal a defective product.

{M3040734;1}

## COUNT 15
### CIVIL CONSPIRACY: WILLFUL FAILURE TO WARN
(Against Knauf Gips and Knauf Tianjin)

197.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

198.    This is an action, stated in the alternative, for civil conspiracy premised on a willful failure to issue a post-sale warning.

199.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

200.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, marketed, sold, distributed, and/or supplied drywall that was installed in the Homes.

201.    Aranda was a foreseeable user of the drywall being manufactured, mined, designed, produced, made, marketed, sold, distributed and/or supplied by Knauf Tianjin.

202.    Knauf Tianjin, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.

203.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, marketed, sold, supplied, and/or delivered by Knauf Tianjin was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Tianjin's control and/or was sold to Aranda, Knauf Tianjin knew or

reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

204.    Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips and Knauf Tianjin knew that some of Banner's customers had complained that the drywall manufactured by Knauf Tianjin emitted a very bad sulfurous odor.

205.    Upon information and belief, Knauf Tianjin and Knauf Gips engaged in and/or agreed to an intentional and willful scheme not to warn consumers who had already purchased Knauf Tianjin's drywall product about actual or perceived defects in the drywall product (the "Scheme Not to Warn").

206.    Upon information and belief, Knauf Tianjin and/or Knauf Gips investigated the complaints of odors and tested the drywall.

207.    Upon information and belief, and in furtherance of the Scheme Not to Warn, Knauf Tianjin and/or Knauf Gips did not properly investigate potential dangers and/or risk of harm associated with the use of Knauf Tianjin's drywall product and thereby breached the duty owed to Aranda to properly investigate the drywall's potential dangers and risks.

208.    Upon information and belief, after Knauf Tianjin and/or Knauf Gips conducted tests of the drywall, and to further the Scheme Not to Warn, Knauf Tianjin entered into the Secret Agreement with Banner to conceal "perceived or actual smell or health risks" related to the drywall from Aranda and other customers of Banner.

209.    Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or was not safe and fit for use in the construction of a residential home, and therefore Knauf Tianjin was in breach of the duty to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its

drywall in residential construction.

210.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

211.    Consumers, such as Aranda, to whom a warning might have been provided could have been identified by Knauf Tianjin and could reasonably be assumed to be unaware of the risk of harm.

212.    A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

213.    At all material times, Knauf Tianjin stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of Knauf Tianjin's drywall product in residential construction.

214.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, distributor, seller and/or supplier in Knauf Tianjin's position would have provided a post-sale warning.

215.    Knauf Gips' and Knauf Tianjin's individual and collective failure to warn as set forth above was wanton, grossly negligent, reckless and demonstrated a complete disregard and reckless indifference to consumers of the drywall product, such as Aranda. Knauf Gips and Knauf Tianjin engaged in the Scheme Not to Warn with oppression, fraud or malice, and acted

wantonly, willfully and with reckless indifference to the rights of others.[7]

216.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Scheme Not to Warn directly and proximately caused and/or exposed Aranda to substantial liability and damages to Plaintiffs, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs. Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

WHEREFORE, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 16 – COMMON LAW INDEMNITY
### (Against Knauf Wuhu and Knauf Gips)

217.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

218.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

219.   Upon information and belief, Knauf Wuhu, among other things, manufactured,

---

[7]   Aranda reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for civil conspiracy premised on a willful failure to issue a post-sale warning.

{M3040734;1}

mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

220.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

221.     Aranda is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

222.     Aranda is entirely without fault for the injuries alleged by Plaintiffs.

223.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Wuhu and/or Knauf Gips.

224.     A special relationship existed between Knauf Wuhu and/or Knauf Gips and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Wuhu and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims as more fully alleged in the Complaint, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

225.     As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Wuhu and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package,

advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

226.    If Aranda is found to be liable to Plaintiffs, Knauf Wuhu and/or Knauf Gips is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.  Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Aranda, including, but not limited to, Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 17 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
(Against Knauf Wuhu and Knauf Gips)

227.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

228.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

229.    Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,

{M3040734;1}

placed into the stream of commerce, and/or sold drywall installed in the Homes.

230.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

231.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

232.    Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, Knauf Wuhu and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

233.    Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

234.    To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against Knauf Wuhu and/or Knauf Gips for its/their pro rata share of the liability.

235.    Knauf Wuhu and/or Knauf Gips should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for its pro rata share of the liability, if any, found against

48

Aranda in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

<u>COUNT 18 – EQUITABLE SUBROGATION</u><br>(Against Knauf Wuhu and Knauf Gips)

236.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

237.     This is an action, stated in the alternative, for equitable subrogation.

238.     Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

239.     Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

240.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

241.     Aranda is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

242.     Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

243.     To the extent that Aranda is required to pay damages for any fault of Knauf Wuhu and/or Knauf Gips to protect its own interests, and not as a volunteer, Aranda would be entitled

49

to reimbursement from Knauf Wuhu and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

244.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 19 – NEGLIGENCE
### (Against Knauf Wuhu and Knauf Gips)

245.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

246.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

247.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

248.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling,

50

packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

249.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Wuhu and/or Knauf Gips.

250.    Knauf Wuhu and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Wuhu and/or Knauf Gips owed Aranda a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Aranda's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

251.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

252.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

51

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips breached the duty of care owed to Aranda by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

253.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Wuhu's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

254.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged by the Complaint, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Aranda to substantial liability and damages. If Knauf Wuhu and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious

manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

255.     Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Wuhu's and/or Knauf Gips' breaches of the duty of care owed to Aranda, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 20 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Wuhu and Knauf Gips)

256.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

257.     Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

258.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

259.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

260.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

261.    Knauf Wuhu and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Wuhu and/or Knauf Gips owed Aranda a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction.

262.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended

{M3040734;1}

use.

263.    To the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that unless it warned Aranda of the risk of using the drywall, Aranda would suffer harm. However, Knauf Wuhu and/or Knauf Gips failed to provide an adequate warning of such danger.

264.    Aranda did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.   Without a warning, Aranda had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

265.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips breached the duty of care owed to Aranda by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Aranda about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as Aranda about any problems or dangers in using the drywall for residential construction, about which Knauf Wuhu and/or Knauf Gips knew or reasonably should have known.

266.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

55

the Complaint, such breaches in Knauf Wuhu's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

267.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If Knauf Wuhu and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Wuhu and/or Knauf Gips would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

268.    Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Wuhu's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{M3040734;1}

### COUNT 21 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Wuhu and Knauf Gips)

269.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

270.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

271.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

272.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

273.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

274.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Wuhu's and/or Knauf Gips' control and/or was sold to Aranda, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to

{M3040734;1}

persons or property.

275.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Wuhu and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

276.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

277.    Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by Knauf Wuhu and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

278.    A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

279.    At all material times, Knauf Wuhu and/or Knauf Gips stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm

associated with the use of Knauf Wuhu's and/or Knauf Gips' drywall product in residential construction.

280.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Wuhu's and/or Knauf Gips' position would have provided a post-sale warning.

281.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Wuhu's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 22 – STRICT PRODUCTS LIABILITY
**(Against Knauf Wuhu and Knauf Gips)**

282.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

283.   Upon information and belief, at all material times, Knauf Wuhu and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing,

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

284.   Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

285.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in distributing, placing into the stream of commerce and/or selling drywall.

286.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips, Knauf Wuhu and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

287.   Knauf Wuhu and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

288.   Plaintiffs, in the Complaint, allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

289.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips directly and proximately

{M3040734;1}

caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 23 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Wuhu and Knauf Gips)

290.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

291.     Upon information and belief, at all material times, Knauf Wuhu and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

292.     Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

293.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

{M3040734;1}

294.     At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips, Knauf Wuhu and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

295.     Knauf Wuhu and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

296.     Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

297.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Wuhu and/or Knauf Gips was required to provide a warning. However, Knauf Wuhu and/or Knauf Gips failed to provide an adequate warning of such danger.

298.     Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

299.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Wuhu and/or Knauf Gips failed

to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

300.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**C<small>OUNT</small> 24**
**V<small>IOLATIONS OF THE</small> F<small>LORIDA</small> D<small>ECEPTIVE AND</small> U<small>NFAIR</small>**
**T<small>RADE</small> P<small>RACTICES</small> A<small>CT</small>, F<small>LA</small>. S<small>TAT</small>. §§ 501.201, <small>ET SEQ</small>.**
**(Against Knauf Wuhu and Knauf Gips)**

301.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

302.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida

Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

303.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

304.    At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

305.    At all material times, Knauf Wuhu engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Aranda.

306.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

307.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

308.    At the time Knauf Wuhu and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Wuhu and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

309.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

310.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Wuhu and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

311.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Wuhu's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

312.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling,

packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall, was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

313.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

314.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling,

packaging, advertising, distributing, placing into the stream of commerce and/or selling defective

drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably

dangerous and/or not reasonably safe for its intended use offends public policy and is immoral,

unethical, and substantially injurious to consumers, such as Aranda.

315.    To the extent Plaintiffs are successful in proving that the drywall in the

Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the Complaint, Aranda did not get what it bargained for and is entitled

to its actual damages, plus attorneys' fees and court costs. Knauf Wuhu's and/or Knauf Gips'

violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial

liability and damages, including but not limited to any payments made or to be made on

behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered

against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or

the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by

Aranda in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct

also caused damages to Aranda, including but not limited to Aranda's loss of reputation,

goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf

Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus

attorneys' fees, costs and interest, and for such further and other relief as the Court may deem

just and proper.

### COUNT 25 – UNJUST ENRICHMENT
### (Against Knauf Wuhu and Knauf Gips)

316.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39

through 47 above as if fully set forth herein.

317.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

318.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

319.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

320.    Knauf Wuhu and/or Knauf Gips received money from Aranda as payment for the defective drywall installed in the Home.

321.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Aranda conferred a benefit, *i.e.*, funds and profit, to Knauf Wuhu and/or Knauf Gips, which had knowledge thereof.

322.    Knauf Wuhu and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Aranda.

323.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims,

68

as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

324.    The circumstances described herein under which Knauf Wuhu and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Wuhu and/or Knauf Gips to retain those funds and profits.

325.    Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 26 – COMMON LAW INDEMNITY
### (Against Knauf Dongguan and Knauf Gips)

326.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

327.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

328.    Upon information and belief, Knauf Dongguan, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

329.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or

{M3040734;1}

selling drywall.

330.    Aranda is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips.

331.    Aranda is entirely without fault for the injuries alleged by Plaintiffs.

332.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Dongguan and/or Knauf Gips.

333.    A special relationship existed between Knauf Dongguan and/or Knauf Gips and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Dongguan and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

334.    As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Dongguan and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

335.    If Aranda is found to be liable to Plaintiffs, Knauf Dongguan and/or Knauf Gips is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related

70

to claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs. Knauf Dongguan's and/or Knauf Gips' wrongful conduct also caused damages to Aranda, including, but not limited to, Aranda's loss of reputation, goodwill, and lost profits.

WHEREFORE, Aranda demands judgment for indemnity in its favor against Knauf Dongguan and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 27 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Dongguan and Knauf Gips)

336.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

337.     This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

338.     Upon information and belief, Knauf Dongguan, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

339.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing,

71

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

340.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

341.    Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, Knauf Dongguan and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

342.    Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

343.    To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against Knauf Dongguan and/or Knauf Gips for its/their pro rata share of the liability.

344.    Knauf Dongguan and/or Knauf Gips should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Knauf Dongguan and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Aranda in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

<u>**COUNT 28 – EQUITABLE SUBROGATION**</u>
**(Against Knauf Dongguan and Knauf Gips)**

345.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

346.     This is an action, stated in the alternative, for equitable subrogation.

347.     Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

348.     Upon information and belief, Knauf Dongguan, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

349.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

350.     Aranda is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips.

351.     Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

352.     To the extent that Aranda is required to pay damages for any fault of Knauf Dongguan and/or Knauf Gips to protect its own interests, and not as a volunteer, Aranda would

73

be entitled to reimbursement from Knauf Dongguan and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

353.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Knauf Dongguan and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 29 – NEGLIGENCE
**(Against Knauf Dongguan and Knauf Gips)**

354.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

355.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

356.    Upon information and belief, Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

357.    Upon information and belief, Knauf Gips is vicariously liable for Knauf

Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

358.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Dongguan and/or Knauf Gips.

359.    Knauf Dongguan and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Dongguan and/or Knauf Gips owed Aranda a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Aranda's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

360.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips knew or should have known that the

drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

361.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips breached the duty of care owed to Aranda by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

362.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Dongguan's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

363.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing,

76

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Aranda to substantial liability and damages. If Knauf Dongguan and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

364.     Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Dongguan's and/or Knauf Gips' breaches of the duty of care owed to Aranda, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.   Knauf Gips' and Knauf Dongguan's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 30 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Dongguan and Knauf Gips)

365.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39

77

through 47 above as if fully set forth herein.

366.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

367.    Upon information and belief, Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

368.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

369.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips.

370.    Knauf Dongguan and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Dongguan and/or Knauf Gips owed Aranda a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in

using the drywall for residential construction.

371.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

372.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips knew or should have known that unless it warned Aranda of the risk of using the drywall, Aranda would suffer harm. However, Knauf Dongguan and/or Knauf Gips failed to provide an adequate warning of such danger.

373.   Aranda did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Aranda had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

374.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips breached the duty of care owed to Aranda by (i) failing to disclose any defects in the drywall materials which

79

it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Aranda about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Aranda about any problems or dangers in using the drywall for residential construction, about which Knauf Dongguan and/or Knauf Gips knew or reasonably should have known.

375.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Dongguan's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

376.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If Knauf Dongguan and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Dongguan and/or Knauf Gips would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

377.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Dongguan's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or

any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf Gips' and Knauf Dongguan's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

WHEREFORE, Aranda demands judgment for damages in its favor and against Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 31 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Dongguan and Knauf Gips)

378.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

379.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

380.    Upon information and belief, Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

381.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

382.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the

{M3040734;1}

stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips.

383.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Dongguan's and/or Knauf Gips' control and/or was sold to Aranda, Knauf Dongguan and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

384.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Knauf Dongguan and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

385.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

{M3040734;1}

386.    Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by Knauf Dongguan and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

387.    A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

388.    At all material times, Knauf Dongguan and/or Knauf Gips stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of Knauf Dongguan's and/or Knauf Gips' drywall product in residential construction.

389.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended useas more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Dongguan's and/or Knauf Gips' position would have provided a post-sale warning.

390.    Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Dongguan's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Dongguan's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

{M3040734;1}

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

## COUNT 32 – STRICT PRODUCTS LIABILITY
### (Against Knauf Dongguan and Knauf Gips)

391.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

392.    Upon information and belief, at all material times. Knauf Dongguan and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

393.    Upon information and belief, Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

394.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in distributing, placing into the stream of commerce and/or selling drywall.

395.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips, Knauf Dongguan and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

396.    Knauf Dongguan and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

397.    Plaintiffs in the Complaint allege various claims against Aranda for damages

84

grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

398.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Dongguan's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 33 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Dongguan and Knauf Gips)

399.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

400.    Upon information and belief, at all material times. Knauf Dongguan and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing,

{M3040734;1}

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

401.   Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

402.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

403.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips, Knauf Dongguan and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

404.   Knauf Dongguan and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

405.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

406.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential

{M3040734;1}

construction involved a danger of which Knauf Dongguan and/or Knauf Gips was required to provide a warning. However, Knauf Dongguan and/or Knauf Gips failed to provide an adequate warning of such danger.

407.     Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

408.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Dongguan and/or Knauf Gips failed to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

409.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf Gips' and Knauf Dongguan's wrongful conduct also caused damages to Aranda, including but

87

not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 34**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Knauf Dongguan and Knauf Gips)**

410.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

411.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

412.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

413.    At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

414.    At all material times, Knauf Dongguan engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Aranda.

415.    Upon information and belief, Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

416.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing,

88

testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

417.    At the time Knauf Dongguan and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Dongguan and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

418.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

419.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Dongguan and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Dongguan and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

420.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Dongguan's and/or Knauf Gips' deceptive and

89

unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

421. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

422. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume

90

that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

423. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

424. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Dongguan's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf Gips' and Knauf Dongguan's

91

wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 35 – UNJUST ENRICHMENT
### (Against Knauf Dongguan and Knauf Gips)

425.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

426.     Plaintiffs, in the Complaint, allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

427.     Upon information and belief, Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

428.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

429.     Knauf Dongguan and/or Knauf Gips received money from Aranda as payment for the defective drywall installed in the Home.

430.     In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Aranda conferred a benefit, *i.e.*, funds and profit, to Knauf Dongguan and/or Knauf Gips, which had knowledge thereof.

431.     Knauf Dongguan and/or Knauf Gips voluntarily accepted and retained the benefit

92

conferred upon it by Aranda.

432.    To the extent Plaintiffs are successful in proving drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims.

433.    The circumstances described herein under which Knauf Dongguan and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Dongguan and/or Knauf Gips to retain those funds and profits.

434.    Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 36 – COMMON LAW INDEMNITY
### (Against Knauf USA and Knauf Gips)

435.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

93

436.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

437.    Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

438.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

439.    Aranda is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

440.    Aranda is entirely without fault for the injuries alleged by Plaintiffs.

441.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf USA and/or Knauf Gips.

442.    A special relationship existed between Knauf USA and/or Knauf Gips and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf USA and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

443.    As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf USA and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

444.    If Aranda is found to be liable to Plaintiffs, Knauf USA and/or Knauf Gips is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 37 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf USA and Knauf Gips)

445.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

446.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

{M3040734;1}

447.   Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

448.   Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

449.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

450.   Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, Knauf USA and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

451.   Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

452.   To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against Knauf USA and/or Knauf Gips for its/their pro rata share of the liability.

453.   Knauf USA and/or Knauf Gips should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Aranda in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 38– EQUITABLE SUBROGATION
### (Against Knauf USA and Knauf Gips)

454.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

455.    This is an action, stated in the alternative, for equitable subrogation.

456.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

457.    Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

458.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

459.    Aranda is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

460.    Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

461.    To the extent that Aranda is required to pay damages for any fault of Knauf USA and/or Knauf Gips to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from Knauf USA and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

462.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

**COUNT 39 – NEGLIGENCE**
**(Against Knauf USA and Knauf Gips)**

463.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

464.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

465.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the

98

stream of commerce, and/or sold drywall that was installed in the Homes.

466.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

467.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf USA and/or Knauf Gips.

468.    Knauf USA and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf USA and/or Knauf Gips owed Aranda a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Aranda's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

469.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that the drywall

was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

470.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips breached the duty of care owed to Aranda by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

471.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf USA's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

472.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing,

{M3040734;1}

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Aranda to substantial liability and damages. If Knauf USA and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

473.    Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf USA's and/or Knauf Gips' breaches of the duty of care owed to Aranda, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 40 – NEGLIGENT FAILURE TO WARN
### (Against Knauf USA and Knauf Gips)

474.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

{M3040734;1}

475.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

476.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

477.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

478.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

479.    Knauf USA and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf USA and/or Knauf Gips owed Aranda a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction.

480.    Without admitting any liability or damages to Plaintiffs, to the extent

Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

481.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that unless it warned Aranda of the risk of using the drywall, Aranda would suffer harm. However, Knauf USA and/or Knauf Gips failed to provide an adequate warning of such danger.

482.    Aranda did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Aranda had no way of anticipating the drywall could harm persons and/or property and had every reason to expect the product could be safely used in a residential home in the ordinary manner.

483.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips breached the duty of care owed to Aranda by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Aranda about any dangers inherent in the drywall, and/or (iii) failing to warn

foreseeable consumers and/or users such as Aranda about any problems or dangers in using the drywall for residential construction, about which Knauf USA and/or Knauf Gips knew or reasonably should have known.

484.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf USA's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

485.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or reasonably should have known its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages.  If Knauf USA and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf USA and/or Knauf Gips would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

486.    Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf USA's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf

Gips' and Knauf  USA's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 41 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf USA and Knauf Gips)

487.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

488.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

489.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

490.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

491.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

492.    To the extent Plaintiffs are successful in proving that drywall manufactured,

{M3040734;1}

mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf USA's and/or Knauf Gips' control and/or was sold to Aranda, Knauf USA and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

493.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf USA and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

494.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

495.   Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by Knauf USA and/or Knauf Gips and could reasonably be assumed to be

unaware of the risk of harm.

496.   A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

497.   At all material times, Knauf USA and/or Knauf Gips stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of Knauf USA's and/or Knauf Gips' drywall product in residential construction.

498.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf USA's and/or Knauf Gips' position would have provided a post-sale warning.

499.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf USA's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be

{M3040734;1}

determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

**COUNT 42 – STRICT PRODUCTS LIABILITY**
**(Against Knauf USA and Knauf Gips)**

500.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

501.    Upon information and belief, at all material times. Knauf USA and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

502.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

503.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in distributing, placing into the stream of commerce and/or selling drywall.

504.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips, Knauf USA and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

505.    Knauf USA and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

506.    Plaintiffs, in the Complaint, allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

108

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

507.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 43 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf USA and Knauf Gips)

508.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

509.    Upon information and belief, at all material times. Knauf USA and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing,

{M3040734;1}

labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

510.    Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

511.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

512.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips, Knauf USA and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

513.    Knauf USA and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

514.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

515.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf USA and/or Knauf Gips was required to

{M3040734;1}

provide a warning. However, Knauf USA and/or Knauf Gips failed to provide an adequate warning of such danger.

516.   Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

517.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf USA and/or Knauf Gips failed to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

518.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

{M3040734;1}

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 44
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf USA and Knauf Gips)

519.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

520.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

521.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

522.   At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

523.   At all material times, Knauf USA engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Aranda.

524.   Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

525.   Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling,

packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

526.   At the time Knauf USA and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf USA and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

527.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

528.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf USA and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf USA and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

529.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf USA's and/or Knauf Gips' deceptive and

{M3040734;1}

unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

530.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall, was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

531.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the

114

drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

532. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

533. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf USA's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf Gips' and Knauf USA's wrongful conduct

115

also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

**COUNT 45 – UNJUST ENRICHMENT**
**(Against Knauf USA and Knauf Gips)**

534.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

535.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

536.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

537.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

538.    Knauf USA and/or Knauf Gips received money from Aranda as payment for the defective drywall installed in the Home.

539.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Aranda conferred a benefit, *i.e.*, funds and profit, to Knauf USA and/or Knauf Gips, which had knowledge thereof.

540.    Knauf USA and/or Knauf Gips voluntarily accepted and retained the benefit

116

conferred upon it by Aranda.

541.   To the extent Plaintiffs are successful in proving drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

542.   The circumstances described herein under which Knauf USA and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf USA and/or Knauf Gips to retain those funds and profits.

543.   Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 46 – COMMON LAW INDEMNITY
### (Against Knauf Indonesia and Knauf Gips)

544.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

{M3040734;1}

545.     Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

546.     Upon information and belief, Knauf Indonesia, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

547.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

548.     Aranda is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips.

549.     Aranda is entirely without fault for the injuries alleged by Plaintiffs.

550.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Indonesia and/or Knauf Gips.

551.     A special relationship existed between Knauf Indonesia and/or Knauf Gips and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Indonesia and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed

into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

552.    As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Indonesia and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

553.    If Aranda is found to be liable to Plaintiffs, Knauf Indonesia and/or Knauf Gips is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs, including, but not limited to, Aranda's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Knauf Indonesia and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

## COUNT 47 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Indonesia and Knauf Gips)

554.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

119

555.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

556.    Upon information and belief, Knauf Indonesia, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

557.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

558.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

559.    Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, Knauf Indonesia and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

560.    Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

561.    To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against Knauf Indonesia and/or Knauf Gips for its/their pro rata share of the liability.

562.    Knauf Indonesia and/or Knauf Gips should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on

behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Knauf Indonesia and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Aranda in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 48 – EQUITABLE SUBROGATION
### (Against Knauf Indonesia and Knauf Gips)

563.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

564.    This is an action, stated in the alternative, for equitable subrogation.

565.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

566.    Upon information and belief, Knauf Indonesia, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

567.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

568.    Aranda is not and was not in the business of manufacturing, distributing or

selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips.

569.   Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

570.   To the extent that Aranda is required to pay damages for any fault of Knauf Indonesia and/or Knauf Gips to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from Knauf Indonesia and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

571.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Knauf Indonesia and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 49 – NEGLIGENCE
### (Against Knauf Indonesia and Knauf Gips)

572.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

{M3040734;1}

573.     Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

574.     Upon information and belief, Knauf Indonesia manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

575.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

576.     Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Indonesia and/or Knauf Gips.

577.     Knauf Indonesia and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Indonesia and/or Knauf Gips owed Aranda a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Aranda's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations

and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

578.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

579.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips breached the duty of care owed to Aranda by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

580.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Indonesia's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

581.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips knew or reasonably should have known its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Aranda to substantial liability and damages. If Knauf Indonesia and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

582.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Indonesia's and/or Knauf Gips' breaches of the duty of care owed to Aranda, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending

{M3040734;1}

against these claims.   Knauf Gips' and Knauf Indonesia's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 50 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Indonesia and Knauf Gips)

583.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

584.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

585.   Upon information and belief, Knauf Indonesia manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

586.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

587.   Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips.

126

{M3040734;1}

588.     Knauf Indonesia and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Indonesia and/or Knauf Gips owed Aranda a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction.

589.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

590.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips knew or should have known that unless it warned Aranda of the risk of using the drywall, Aranda would suffer harm. However, Knauf Indonesia and/or Knauf Gips failed to provide an adequate warning of such danger.

591.     Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk

127

of harm or injury to persons and/or property, as alleged by Plaintiffs. Without a warning, Aranda had no way of anticipating the drywall could harm persons and/or property and had every reason to expect the product could be safely used in a residential home in the ordinary manner.

592.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips breached the duty of care owed to Aranda by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Aranda about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Aranda about any problems or dangers in using the drywall for residential construction, about which Knauf Indonesia and/or Knauf Gips knew or reasonably should have known.

593.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Indonesia's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

594.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If Knauf Indonesia and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the

same circumstances would exert, Knauf Indonesia and/or Knauf Gips would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

595.    Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Indonesia's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf Gips' and Knauf Indonesia's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 51 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Indonesia and Knauf Gips)

596.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

597.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

598.    Upon information and belief, Knauf Indonesia manufactured, mined, designed,

produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

599.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

600.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips.

601.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Indonesia's and/or Knauf Gips' control and/or was sold to Aranda, Knauf Indonesia and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

602.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Knauf

130

Indonesia and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

603.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

604.    Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by Knauf Indonesia and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

605.    A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

606.    At all material times, Knauf Indonesia and/or Knauf Gips stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of Knauf Indonesia's and/or Knauf Gips' drywall product in residential construction.

607.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended useas more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Indonesia's and/or Knauf Gips' position would have provided a post-sale warning.

608.    Without admitting any liability or damages to Plaintiffs, Aranda was damaged by

Knauf Indonesia's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Indonesia's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 52 – STRICT PRODUCTS LIABILITY
### (Against Knauf Indonesia and Knauf Gips)

609.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

610.    Upon information and belief, at all material times. Knauf Indonesia and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

611.    Upon information and belief, Knauf Indonesia manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

612.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in distributing, placing into the stream of commerce and/or selling drywall.

613.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips, Knauf Indonesia and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

614.   Knauf Indonesia and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

615.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

616.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Indonesia's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 53 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Indonesia and Knauf Gips)

617.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

618.    Upon information and belief, at all material times. Knauf Indonesia and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

619.    Knauf Indonesia manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

620.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

621.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips, Knauf Indonesia and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

622.    Knauf Indonesia and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall

did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

623.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

624.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Indonesia and/or Knauf Gips was required to provide a warning. However, Knauf Indonesia and/or Knauf Gips failed to provide an adequate warning of such danger.

625.    Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

626.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Indonesia and/or Knauf Gips failed to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

627.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{M3040734;1}

as more fully alleged in the Complaint, Knauf Indonesia's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf Gips' and Knauf Indonesia's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 54**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Knauf Indonesia and Knauf Gips)**

628.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

629.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

630.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

631.    At all material times, Aranda was a person and a consumer of drywall as defined

{M3040734;1}

under FDUTPA.

632.    At all material times, Knauf Indonesia engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Aranda.

633.    Upon information and belief, Knauf Indonesia manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

634.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

635.    At the time Knauf Indonesia and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Indonesia and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

636.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

637.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Indonesia and/or Knauf Gips manufactured, mined, designed,

{M3040734;1}

produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Indonesia and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

638.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Indonesia's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

639.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

640.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

641.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

642.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

139

as more fully alleged in the Complaint, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Indonesia's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.   Knauf Gips' and Knauf Indonesia's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

 **WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 55 – UNJUST ENRICHMENT
### (Against Knauf Indonesia and Knauf Gips)

 643. Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

 644. Plaintiffs, in the Complaint, allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

 645. Upon information and belief, Knauf Indonesia manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

 646. Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing,

140

labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

647.   Knauf Indonesia and/or Knauf Gips received money from Aranda as payment for the defective drywall installed in the Home.

648.   In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Aranda conferred a benefit, *i.e.*, funds and profit, to Knauf Indonesia and/or Knauf Gips, which had knowledge thereof.

649.   Knauf Indonesia and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Aranda.

650.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

651.   The circumstances described herein under which Knauf Indonesia and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Indonesia and/or Knauf Gips to retain those

{M3040734;1}

funds and profits.

652.    Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf

Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest,

and for such further and other relief as the Court deems just and proper.

**COUNT 56 – COMMON LAW INDEMNITY**
**(Against Knauf Guangdong and Knauf Gips)**

653.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39

through 47 above as if fully set forth herein.

654.    Plaintiffs in the Complaint allege various claims against Aranda for damages

caused by defective drywall contained in the Homes.

655.    Upon information and belief, Knauf Guangdong, among other things,

manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

advertised, distributed, placed into the stream of commerce, and/or sold drywall that was

installed in the Homes.

656.    Upon information and belief, Knauf Gips is vicariously liable for Knauf

Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing,

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or

selling drywall.

657.    Aranda is not and was not in the business of manufacturing, distributing,

and/or selling drywall and had no reason to know or to suspect that there were problems with the

drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Guangdong

and/or Knauf Gips.

142

658.    Aranda is entirely without fault for the injuries alleged by Plaintiffs.

659.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Guangdong and/or Knauf Gips.

660.    A special relationship existed between Knauf Guangdong and/or Knauf Gips and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Guangdong and/or Knauf Gips. To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

661.    As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Guangdong and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

662.    If Aranda is found to be liable to Plaintiffs, Knauf Guangdong and/or Knauf Gips is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending

143

against the claims brought by Plaintiffs.

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Knauf Guangdong and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 57 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Guangdong and Knauf Gips)

663.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

664.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

665.    Upon information and belief, Knauf Guangdong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

666.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

667.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

668.    Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, Knauf Guangdong and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

{M3040734;1}

669.    Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

670.    To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against Knauf Guangdong and/or Knauf Gips for its/their pro rata share of the liability.

671.    Knauf Guangdong and/or Knauf Gips should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Knauf Guangdong and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Aranda in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 58 – EQUITABLE SUBROGATION
### (Against Knauf Guangdong and Knauf Gips)

672.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

673.    This is an action, stated in the alternative, for equitable subrogation.

674.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

675.    Upon information and belief, Knauf Guangdong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

{M3040734;1}

advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

676.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

677.   Aranda is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

678.   Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

679.   To the extent that Aranda is required to pay damages for any fault of Knauf Guangdong and/or Knauf Gips to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from Knauf Guangdong and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

{M3040734;1}

680.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Knauf Guangdong and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

## COUNT 59 – NEGLIGENCE
### (Against Knauf Guangdong and Knauf Gips)

681.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

682.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

683.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

684.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

685.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Guangdong and/or Knauf Gips.

686.    Knauf Guangdong and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf

147

Guangdong and/or Knauf Gips owed Aranda a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Aranda's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

687.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

688.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips breached the duty of care owed to Aranda by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the

148

stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

689.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Guangdong's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

690.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Aranda to substantial liability and damages. If Knauf Guangdong and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

691.     Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Guangdong's and/or Knauf Gips' breaches of the duty of care owed to Aranda, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.   Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 60 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Guangdong and Knauf Gips)

692.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

693.     Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

694.     Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

{M3040734;1}

695.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

696.   Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

697.   Knauf Guangdong and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Guangdong and/or Knauf Gips owed Aranda a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction.

698.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

699.   To the extent Plaintiffs are successful in proving that the drywall in the

Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that unless it warned Aranda of the risk of using the drywall, Aranda would suffer harm. However, Knauf Guangdong and/or Knauf Gips failed to provide an adequate warning of such danger.

700.    Aranda did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Aranda had no way of anticipating the drywall could harm persons and/or property and had every reason to expect the product could be safely used in a residential home in the ordinary manner.

701.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips breached the duty of care owed to Aranda by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Aranda about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Aranda about any problems or dangers in using the drywall for residential construction, about which Knauf Guangdong and/or Knauf Gips knew or reasonably should have known.

702.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Guangdong's and/or Knauf Gips' duty of care were the

152

direct and proximate cause of Aranda's injuries, losses, and damages.

703.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If Knauf Guangdong and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Guangdong and/or Knauf Gips would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

704.    Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Guangdong's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{M3040734;1}

<u>COUNT 61 – BREACH OF POST-SALE DUTY TO WARN</u>
**(Against Knauf Guangdong and Knauf Gips)**

705.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

706.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

707.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

708.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

709.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

710.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Guangdong's and/or Knauf Gips' control and/or was sold to Aranda, Knauf Guangdong and/or Knauf Gips knew or

154

reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

711.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Knauf Guangdong and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

712.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

713.    Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by Knauf Guangdong and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

714.    A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

715.    At all material times, Knauf Guangdong and/or Knauf Gips stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and

it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of Knauf Guangdong's and/or Knauf Gips' drywall product in residential construction.

716.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Guangdong's and/or Knauf Gips' position would have provided a post-sale warning.

717.    Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Guangdong's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.   Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 62 – STRICT PRODUCTS LIABILITY
**(Against Knauf Guangdong and Knauf Gips)**

718.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

719.    Upon information and belief, at all material times. Knauf Guangdong and/or

Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

720.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

721.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in distributing, placing into the stream of commerce and/or selling drywall.

722.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips, Knauf Guangdong and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

723.    Knauf Guangdong and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

724.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

725.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 63 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Guangdong and Knauf Gips)

726.   Aranda reasserts and realleges the allegations in paragraphs1 through 36 and 39 through 47 above as if fully set forth herein.

727.   Upon information and belief, at all material times. Knauf Guangdong and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

728.   Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

158

729.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

730.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips, Knauf Guangdong and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

731.    Knauf Guangdong and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

732.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

733.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Guangdong and/or Knauf Gips was required to provide a warning. However, Knauf Guangdong and/or Knauf Gips failed to provide an adequate warning of such danger.

734.    Aranda did not know, had no reason to believe, and was never informed that

the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

735.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Guangdong and/or Knauf Gips failed to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

736.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{M3040734;1}

**COUNT 64**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Knauf Guangdong and Knauf Gips)**

737.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

738.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

739.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

740.    At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

741.    At all material times, Knauf Guangdong engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Aranda.

742.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

743.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

744.    At the time Knauf Guangdong and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered,

distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Guangdong and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

745.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

746.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Guangdong and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

747.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Guangdong's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use

162

in residential construction.

748.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

749.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably

fit for the ordinary purpose for which drywall is used.

750.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

751.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Guangdong's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees,

164

costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 65 – UNJUST ENRICHMENT
### (Against Knauf Guangdong and Knauf Gips)

752.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

753.     Plaintiffs, in the Complaint, allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

754.     Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

755.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

756.     Knauf Guangdong and/or Knauf Gips received money from Aranda as payment for the defective drywall installed in the Home.

757.     In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Aranda conferred a benefit, *i.e.*, funds and profit, to Knauf Guangdong and/or Knauf Gips, which had knowledge thereof.

758.     Knauf Guangdong and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Aranda.

759.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' acts and

omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

760.    The circumstances described herein under which Knauf Guangdong and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Guangdong and/or Knauf Gips to retain those funds and profits.

761.    Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 66 – COMMON LAW INDEMNITY
### (Against Knauf Amf GmbH and Knauf Gips)

762.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

763.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

764.    Upon information and belief, Knauf Amf GmbH, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

{M3040734;1}

advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

765.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

766.    Aranda is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips.

767.    Aranda is entirely without fault for the injuries alleged by Plaintiffs.

768.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Amf GmbH and/or Knauf Gips.

769.    A special relationship existed between Knauf Amf GmbH and/or Knauf Gips and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Amf GmbH and/or Knauf Gips. To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

770.    As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Amf

GmbH and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

771.   If Aranda is found to be liable to Plaintiffs, Knauf Amf GmbH and/or Knauf Gips is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs, including, but not limited to, Aranda's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Knauf Amf GmbH and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 67 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Amf GmbH and Knauf Gips)

772.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

773.   This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

774.   Upon information and belief, Knauf Amf GmbH, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

advertised, distributed,  placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

775.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

776.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

777.    Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, Knauf Amf GmbH and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

778.    Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

779.    To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against Knauf Amf GmbH and/or Knauf Gips for its/their pro rata share of the liability.

780.    Knauf Amf GmbH and/or Knauf Gips should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

{M3040734;1}

**WHEREFORE**, Aranda demands that judgment be entered against Knauf Amf GmbH and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Aranda in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 68 – EQUITABLE SUBROGATION
### (Against Knauf Amf GmbH and Knauf Gips)

781.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

782.    This is an action, stated in the alternative, for equitable subrogation.

783.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

784.    Upon information and belief, Knauf Amf GmbH, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

785.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

786.    Aranda is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips.

{M3040734;1}

787.     Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

788.     To the extent that Aranda is required to pay damages for any fault of Knauf Amf GmbH and/or Knauf Gips to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from Knauf Amf GmbH and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

789.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Knauf Amf GmbH and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 69 – NEGLIGENCE
### (Against Knauf Amf GmbH and Knauf Gips)

790.     Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

791.     Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{M3040734;1}

792.   Upon information and belief, Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

793.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

794.   Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Amf GmbH and/or Knauf Gips.

795.   Knauf Amf GmbH and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Amf GmbH and/or Knauf Gips owed Aranda a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Aranda's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

796.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

797.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips breached the duty of care owed to Aranda by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

798.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Amf GmbH's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

{M3040734;1}

799.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Aranda to substantial liability and damages. If Knauf Amf GmbH and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

800.     Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Amf GmbH's and/or Knauf Gips' breaches of the duty of care owed to Aranda, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.   Knauf Gips' and Knauf Amf GmbH's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf

174

Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 70 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Amf GmbH and Knauf Gips)

801.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

802.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

803.    Upon information and belief, Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

804.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

805.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips.

806.    Knauf Amf GmbH and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Amf GmbH and/or Knauf Gips owed Aranda a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested,

labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction.

807.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

808.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips knew or should have known that unless it warned Aranda of the risk of using the drywall, Aranda would suffer harm. However, Knauf Amf GmbH and/or Knauf Gips failed to provide an adequate warning of such danger.

809.    Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

{M3040734;1}

810.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips breached the duty of care owed to Aranda by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Aranda about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Aranda about any problems or dangers in using the drywall for residential construction, about which Knauf Amf GmbH and/or Knauf Gips knew or reasonably should have known.

811.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Amf GmbH's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

812.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If Knauf Amf GmbH and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Amf GmbH and/or Knauf Gips would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

813.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged

{M3040734;1}

by Knauf Amf GmbH's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf Gips' and Knauf Amf GmbH's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 71 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Amf GmbH and Knauf Gips)

814.    Aranda reasserts and realleges the allegations in paragraphs1 through 36 and 39 through 47 above as if fully set forth herein.

815.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

816.    Upon information and belief, Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

817.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing,

{M3040734;1}

labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

818.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips.

819.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Amf GmbH's and/or Knauf Gips' control and/or was sold to Aranda, Knauf Amf GmbH and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

820.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Amf GmbH and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

821.    To the extent Plaintiffs are successful in proving that the drywall in the

Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

822.   Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by Knauf Amf GmbH and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

823.   A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

824.   At all material times, Knauf Amf GmbH and/or Knauf Gips stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of Knauf Amf GmbH's and/or Knauf Gips' drywall product in residential construction.

825.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended useas more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Amf GmbH's and/or Knauf Gips' position would have provided a post-sale warning.

826.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Amf GmbH's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this

action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Amf GmbH's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

WHEREFORE, Aranda demands judgment for damages in its favor and against Knauf Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 72 – STRICT PRODUCTS LIABILITY
### (Against Knauf Amf GmbH and Knauf Gips)

827.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

828.    Upon information and belief, at all material times. Knauf Amf GmbH and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

829.    Upon information and belief, Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

830.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in distributing, placing into the stream of commerce and/or selling drywall.

831.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips, Knauf Amf GmbH and/or Knauf Gips

{M3040734;1}

intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

832.    Knauf Amf GmbH and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

833.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

834.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.   Knauf Gips' and Knauf Amf GmbH's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus costs and

{M3040734;1}

interest, and for such further and other relief as the Court deems just and proper.

COUNT 73 – STRICT PRODUCTS LIABILITY FAILURE TO WARN<br>(Against Knauf Amf GmbH and Knauf Gips)

835.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

836.    Upon information and belief, at all material times. Knauf Amf GmbH and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

837.    Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

838.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

839.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips, Knauf Amf GmbH and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

840.    Knauf Amf GmbH and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

183

841.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

842.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Amf GmbH and/or Knauf Gips was required to provide a warning. However, Knauf Amf GmbH and/or Knauf Gips failed to provide an adequate warning of such danger.

843.   Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

844.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Amf GmbH and/or Knauf Gips failed to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

845.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH's and/or Knauf Gips' failure to

adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Amf GmbH's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 74**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Knauf Amf GmbH and Knauf Gips)**

846.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

847.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

848.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

849.    At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

{M3040734;1}

850.    At all material times, Knauf Amf GmbH engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Aranda.

851.    Upon information and belief, Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

852.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

853.    At the time Knauf Amf GmbH and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Amf GmbH and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

854.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

855.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Amf GmbH and/or Knauf Gips manufactured, mined,

designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Amf GmbH and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

856.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Amf GmbH's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

857.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

{M3040734;1}

858.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

859.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

860.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{M3040734;1}

as more fully alleged in the Complaint, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Amf GmbH's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Amf GmbH's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 75 – UNJUST ENRICHMENT
### (Against Knauf Amf GmbH and Knauf Gips)

861.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

862.    Plaintiffs, in the Complaint, allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

863.    Upon information and belief, Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

864.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing,

189

labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

865.   Knauf Amf GmbH and/or Knauf Gips received money from Aranda as payment for the defective drywall installed in the Home.

866.   In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Aranda conferred a benefit, *i.e.*, funds and profit, to Knauf Amf GmbH and/or Knauf Gips, which had knowledge thereof.

867.   Knauf Amf GmbH and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Aranda.

868.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

869.   The circumstances described herein under which Knauf Amf GmbH and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Amf GmbH and/or Knauf Gips to retain those

{M3040734;1}

funds and profits.

870.    Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf

Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus costs and

interest, and for such further and other relief as the Court deems just and proper.

### COUNT 76 – COMMON LAW INDEMNITY
### (Against Knauf Brasil and Knauf Gips)

871.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39

through 47 above as if fully set forth herein.

872.    Plaintiffs in the Complaint allege various claims against Aranda for damages

caused by defective drywall contained in the Homes.

873.    Upon information and belief, Knauf Brasil, among other things, manufactured,

mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,

placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

874.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's

conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling,

packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

875.    Aranda is not and was not in the business of manufacturing, distributing,

and/or selling drywall and had no reason to know or to suspect that there were problems with the

drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Brasil and/or

Knauf Gips.

876.    Aranda is entirely without fault for the injuries alleged by Plaintiffs.

877.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf

{M3040734;1}

Brasil and/or Knauf Gips.

878.   A special relationship existed between Knauf Brasil and/or Knauf Gips and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Brasil and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

879.   As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Brasil and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

880.   If Aranda is found to be liable to Plaintiffs, Knauf Brasil and/or Knauf Gips is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

{M3040734;1}

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Knauf Brasil and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

**COUNT 77 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31**
**(Against Knauf Brasil and Knauf Gips)**

881.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

882.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

883.    Upon information and belief, Knauf Brasil, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

884.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

885.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

886.    Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, Knauf Brasil and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

887.    Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

888.    To the extent that any common liability is found with respect to Aranda, Aranda

{M3040734;1}

hereby asserts its right of contribution against Knauf Brasil and/or Knauf Gips for its/their pro rata share of the liability.

889.    Knauf Brasil and/or Knauf Gips should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Knauf Brasil and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Aranda in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 78 – EQUITABLE SUBROGATION
### (Against Knauf Brasil and Knauf Gips)

890.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

891.    This is an action, stated in the alternative, for equitable subrogation.

892.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

893.    Upon information and belief, Knauf Brasil, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

894.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

{M3040734;1}

895.    Aranda is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips.

896.    Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

897.    To the extent that Aranda is required to pay damages for any fault of Knauf Brasil and/or Knauf Gips to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from Knauf Brasil and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

898.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Knauf Brasil and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 79 – NEGLIGENCE
### (Against Knauf Brasil and Knauf Gips)

899.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

195

900. Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

901. Upon information and belief, Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

902. Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

903. Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Brasil and/or Knauf Gips.

904. Knauf Brasil and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Brasil and/or Knauf Gips owed Aranda a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Aranda's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to

ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

905.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

906.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips breached the duty of care owed to Aranda by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

907.    To the extent Plaintiffs are successful in proving that drywall was defective,

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Brasil's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

908.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Aranda to substantial liability and damages. If Knauf Brasil and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

909.     Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Brasil's and/or Knauf Gips' breaches of the duty of care owed to Aranda, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Brasil's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 80 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Brasil and Knauf Gips)

910.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

911.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

912.    Upon information and belief, Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

913.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

914.    Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips.

915.    Knauf Brasil and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Brasil and/or Knauf Gips owed Aranda a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled,

packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction.

916.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

917.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips knew or should have known that unless it warned Aranda of the risk of using the drywall, Aranda would suffer harm. However, Knauf Brasil and/or Knauf Gips failed to provide an adequate warning of such danger.

918.    Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

919.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips breached the duty of care owed to Aranda by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Aranda about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Aranda about any problems or dangers in using the drywall for residential construction, about which Knauf Brasil and/or Knauf Gips knew or reasonably should have known.

920.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Brasil's and/or Knauf Gips' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

921.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If Knauf Brasil and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Brasil and/or Knauf Gips would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

922.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged

{M3040734;1}

by Knauf Brasil's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf Gips' and Knauf Brasil's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 81 – BREACH OF POST-SALE DUTY TO WARN
**(Against Knauf Brasil and Knauf Gips)**

923.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

924.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

925.    Upon information and belief, Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

926.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling,

202

packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

927.   Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips.

928.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Brasil's and/or Knauf Gips' control and/or was sold to Aranda, Knauf Brasil and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

929.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Brasil and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

930.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

203

as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

931.    Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by Knauf Brasil and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

932.    A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

933.    At all material times, Knauf Brasil and/or Knauf Gips stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of Knauf Brasil's and/or Knauf Gips' drywall product in residential construction.

934.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended useas more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Brasil's and/or Knauf Gips' position would have provided a post-sale warning.

935.    Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Knauf Brasil's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims,

{M3040734;1}

as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Brasil's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

## COUNT 82 – STRICT PRODUCTS LIABILITY
### (Against Knauf Brasil and Knauf Gips)

936.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

937.    Upon information and belief, at all material times. Knauf Brasil and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

938.    Upon information and belief, Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

939.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in distributing, placing into the stream of commerce and/or selling drywall.

940.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips, Knauf Brasil and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

941.    Knauf Brasil and/or Knauf Gips expected the drywall to reach Aranda and/or the

Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

942.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

943.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Brasil's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 83 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Brasil and Knauf Gips)

944.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39

206

through 47 above as if fully set forth herein.

945.    Upon information and belief, at all material times. Knauf Brasil and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

946.    Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

947.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

948.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips, Knauf Brasil and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

949.    Knauf Brasil and/or Knauf Gips expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

950.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

951.    To the extent Plaintiffs are successful in proving that the drywall in the

207

Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Brasil and/or Knauf Gips was required to provide a warning. However, Knauf Brasil and/or Knauf Gips failed to provide an adequate warning of such danger.

952.   Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

953.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Brasil and/or Knauf Gips failed to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

954.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs

and attorneys' fees incurred by Aranda in defending against these claims.  Knauf Gips' and Knauf Brasil's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 84
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
**(Against Knauf Brasil and Knauf Gips)**

955.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

956.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

957.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

958.    At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

959.    At all material times, Knauf Brasil engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Aranda.

960.    Upon information and belief, Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

961.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

962.    At the time Knauf Brasil and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Brasil and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

963.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

964.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Brasil and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Brasil and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

965.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

{M3040734;1}

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Brasil's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

966.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

967.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was

likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

968.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

969.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Brasil's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or

the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Knauf Gips' and Knauf Brasil's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 85 – UNJUST ENRICHMENT
**(Against Knauf Brasil and Knauf Gips)**

970.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

971.    Plaintiffs, in the Complaint, allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

972.    Upon information and belief, Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

973.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

974.    Knauf Brasil and/or Knauf Gips received money from Aranda as payment for the defective drywall installed in the Home.

975.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Aranda conferred a benefit, *i.e.*, funds and profit, to Knauf Brasil and/or Knauf Gips, which had knowledge thereof.

{M3040734;1}

976.    Knauf Brasil and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Aranda.

977.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

978.    The circumstances described herein under which Knauf Brasil and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Brasil and/or Knauf Gips to retain those funds and profits.

979.    Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 86 – COMMON LAW INDEMNITY
### (Against Taishan Gypsum)

980.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as

{M3040734;1}

if fully set forth herein.

981.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

982.    Upon information and belief, Taishan Gypsum, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

983.    Aranda is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Taishan Gypsum.

984.    Aranda is entirely without fault for the injuries alleged by Plaintiffs.

985.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Taishan Gypsum.

986.    A special relationship existed between Taishan Gypsum and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Taishan Gypsum.   To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum was defective and wholly to blame for Plaintiffs' injuries.

987.    As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Taishan Gypsum to manufacture, mine, design, produce, make, market, test, label, package, advertise,

{M3040734;1}

distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

988.    If Aranda is found to be liable to Plaintiffs, Taishan Gypsum is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Taishan Gypsum for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 87 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Taishan Gypsum)

989.    Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

990.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

991.    Upon information and belief, Taishan Gypsum, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold drywall that was

installed in the Homes.

992.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

993.   Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, Taishan Gypsum would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

994.   Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

995.   To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against Taishan Gypsum for its pro rata share of the liability.

996.   Taishan Gypsum should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Taishan Gypsum for its pro rata share of the liability, if any, found against Aranda in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 88 – EQUITABLE SUBROGATION
### (Against Taishan Gypsum)

997.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as

if fully set forth herein.

998.   This is an action, stated in the alternative, for equitable subrogation.

999.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

1000.   Upon information and belief, Taishan Gypsum, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

1001.   Aranda is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum.

1002.   Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

1003.   To the extent that Aranda is required to pay damages for any fault of Taishan Gypsum to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from Taishan Gypsum under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

{M3040734;1}

1004.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Taishan Gypsum for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

## COUNT 89 – NEGLIGENCE
### (Against Taishan Gypsum)

1005.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1006.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1007.   Upon information and belief, Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

1008.   Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Taishan Gypsum.

1009.   Taishan Gypsum had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Taishan Gypsum owed Aranda a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Aranda's

{M3040734;1}

customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

1010.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1011.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum breached the duty of care owed to Aranda by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing,

{M3040734;1}

producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

1012.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Taishan Gypsum's duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

1013.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum a knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Aranda to substantial liability and damages. If Taishan Gypsum had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

1014.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Taishan Gypsum's breaches of the duty of care owed to Aranda, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims,

{M3040734;1}

as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Taishan Gypsum's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 90 – NEGLIGENT FAILURE TO WARN
### (Against Taishan Gypsum)

1015.  Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1016.  Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1017.  Upon information and belief, Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

1018.  Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum.

1019.  Taishan Gypsum had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Taishan Gypsum owed Aranda a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,

{M3040734;1}

placed into the stream of commerce, and/or sold by Taishan Gypsum or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction.

1020.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1021.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum knew or should have known that unless it warned Aranda of the risk of using the drywall, Aranda would suffer harm. However, Taishan Gypsum failed to provide an adequate warning of such danger.

1022.  Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1023.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum breached the duty of care owed to

{M3040734;1}

Aranda by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Aranda about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Aranda about any problems or dangers in using the drywall for residential construction, about which Taishan Gypsum knew or reasonably should have known.

1024.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Taishan Gypsum's duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

1025.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If Taishan Gypsum had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Taishan Gypsum would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

1026.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Taishan Gypsum's breaches of the duty of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action

brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Taishan Gypsum's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 91 – BREACH OF POST-SALE DUTY TO WARN
### (Against Taishan Gypsum)

1027.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1028.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1029.   Upon information and belief, Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

1030.   Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum.

1031.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum was defective,

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Taishan Gypsum's control and/or was sold to Aranda, Taishan Gypsum knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

1032.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Taishan Gypsum breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

1033.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

1034.   Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by Taishan Gypsum and could reasonably be assumed to be unaware of the risk of harm.

1035.   A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

{M3040734;1}

1036.   At all material times, Taishan Gypsum stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of Taishan Gypsum's drywall product in residential construction.

1037.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Taishan Gypsum's position would have provided a post-sale warning.

1038.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Taishan Gypsum's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Taishan Gypsum's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 92 – STRICT PRODUCTS LIABILITY
### (Against Taishan Gypsum)

1039.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

{M3040734;1}

1040.   Upon information and belief, at all material times. Taishan Gypsum was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

1041.   Upon information and belief, Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

1042.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum, Taishan Gypsum intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

1043.   Taishan Gypsum expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

1044.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1045.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum directly and proximately caused and/or

{M3040734;1}

exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Taishan Gypsum's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 93 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
**(Against Taishan Gypsum)**

1046.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1047.   Upon information and belief, at all material times. Taishan Gypsum was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

1048.   Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

1049.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum, Taishan Gypsum a intended that the drywall reach consumers

and/or ultimate users of the drywall, such as Aranda.

1050.   Taishan Gypsum expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

1051.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1052.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Taishan Gypsum was required to provide a warning. However, Taishan Gypsum failed to provide an adequate warning of such danger.

1053.   Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

1054.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Taishan Gypsum failed to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1055.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.   Taishan Gypsum's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 94**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Taishan Gypsum)**

1056.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1057.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

1058.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."   Fla. Stat. §

231

501.202(2).

1059.   At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

1060.   At all material times, Taishan Gypsum engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Aranda.

1061.   Upon information and belief, Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

1062.   At the time Taishan Gypsum a manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Taishan Gypsum represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

1063.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1064.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Taishan Gypsum

232

knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

1065. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Taishan Gypsum's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

1066. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

1067. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{M3040734;1}

as more fully alleged in the Complaint, Taishan Gypsum's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

1068.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

1069.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Aranda did not get what it bargained for and is entitled

234

to its actual damages, plus attorneys' fees and court costs. Taishan Gypsum's violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.   Taishan Gypsum's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 95 – UNJUST ENRICHMENT
### (Against Taishan Gypsum)

1070.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1071.   Plaintiffs, in the Complaint, allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

1072.   Upon information and belief, Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

1073.   Taishan Gypsum received money from Aranda as payment for the defective drywall installed in the Home.

1074.   In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Aranda conferred a benefit, *i.e.*, funds and profit, to Taishan

Gypsum, which had knowledge thereof.

1075.   Taishan Gypsum voluntarily accepted and retained the benefit conferred upon it by Aranda.

1076.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum's acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

1077.   The circumstances described herein under which Taishan Gypsum profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Taishan Gypsum to retain those funds and profits.

1078.   Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 96 – COMMON LAW INDEMNITY**
**(Against Taian Taishan)**

1079.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

236

1080.  Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

1081.  Upon information and belief, Taian Taishan, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

1082.  Aranda is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Taian Taishan.

1083.  Aranda is entirely without fault for the injuries alleged by Plaintiffs.

1084.  Any injuries suffered by Plaintiffs were due to the acts or omissions of Taian Taishan.

1085.  A special relationship existed between Taian Taishan and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Taian Taishan.  To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan was defective and wholly to blame for Plaintiffs' injuries.

1086.  As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Taian Taishan to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

1087.   If Aranda is found to be liable to Plaintiffs, Taian Taishan is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Taian Taishan for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

### COUNT 97 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Taian Taishan)

1088.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1089.   This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

1090.   Upon information and belief, Taian Taishan, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

1091.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

{M3040734;1}

1092.   Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, Taian Taishan would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

1093.   Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

1094.   To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against Taian Taishan for its pro rata share of the liability.

1095.   Taian Taishan should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Taian Taishan for its pro rata share of the liability, if any, found against Aranda in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 98 – EQUITABLE SUBROGATION
### (Against Taian Taishan)

1096.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1097.   This is an action, stated in the alternative, for equitable subrogation.

1098.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

1099.   Upon information and belief, Taian Taishan, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

1100.   Aranda is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan.

1101.   Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

1102.   To the extent that Aranda is required to pay damages for any fault of Taian Taishan to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from Taian Taishan under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

1103.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Taian Taishan for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

{M3040734;1}

## COUNT 99 – NEGLIGENCE
### (Against Taian Taishan)

1104.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1105.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1106.   Upon information and belief, Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

1107.   Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Taian Taishan.

1108.   Taian Taishan had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Taian Taishan owed Aranda a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Aranda's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function

241

properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

1109.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1110.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan breached the duty of care owed to Aranda by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

1111.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Taian Taishan's duty of care were the direct and proximate

242

cause of Aranda's injuries, losses, and damages.

1112.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan a knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Aranda to substantial liability and damages. If Taian Taishan had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

1113.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Taian Taishan's breaches of the duty of care owed to Aranda, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Taian Taishan's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus costs and interest, and for such further and

{M3040734;1}

other relief as the Court deems just and proper.

### COUNT 100 – NEGLIGENT FAILURE TO WARN
### (Against Taian Taishan)

1114.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1115.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1116.   Upon information and belief, Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

1117.   Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan.

1118.   Taian Taishan had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Taian Taishan owed Aranda a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction.

1119.   Without admitting any liability or damages to Plaintiffs, to the extent

{M3040734;1}

Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1120.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan knew or should have known that unless it warned Aranda of the risk of using the drywall, Aranda would suffer harm. However, Taian Taishan failed to provide an adequate warning of such danger.

1121.  Aranda did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Aranda had no way of anticipating the drywall could harm persons and/or property and had every reason to expect the product could be safely used in a residential home in the ordinary manner.

1122.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan breached the duty of care owed to Aranda by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Aranda about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Aranda about any problems or dangers in using the drywall for residential construction, about which Taian Taishan knew or reasonably should have known.

1123.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Taian Taishan's duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

1124.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If Taian Taishan had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Taian Taishan would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

1125.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Taian Taishan's breaches of the duty of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Taian Taishan's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus costs and interest, and for such further and

other relief as the Court deems just and proper.

## COUNT 101 – BREACH OF POST-SALE DUTY TO WARN
### (Against Taian Taishan)

1126.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1127.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1128.   Upon information and belief, Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

1129.   Aranda was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan.

1130.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Taian Taishan's control and/or was sold to Aranda, Taian Taishan knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

1131.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

247

the Complaint, Taian Taishan, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Taian Taishan breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

1132.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

1133.  Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by Taian Taishan and could reasonably be assumed to be unaware of the risk of harm.

1134.  A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

1135.  At all material times, Taian Taishan stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of Taian Taishan's drywall product in residential construction.

1136.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{M3040734;1}

the Complaint, a reasonable manufacturer, producer and/or seller in Taian Taishan's position would have provided a post-sale warning.

1137. Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Taian Taishan's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Taian Taishan's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 102 – STRICT PRODUCTS LIABILITY
### (Against Taian Taishan)

1138. Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1139. Upon information and belief, at all material times. Taian Taishan was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

1140. Upon information and belief, Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the

249

stream of commerce, and/or sold drywall that was installed in the Homes.

1141. At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan, Taian Taishan intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

1142. Taian Taishan expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

1143. Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1144. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Taian Taishan's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of

reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 103 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Taian Taishan)

1145.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1146.   Upon information and belief, at all material times. Taian Taishan was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

1147.   Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

1148.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan, Taian Taishan a intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

1149.   Taian Taishan expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

1150.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

251

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1151.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Taian Taishan was required to provide a warning. However, Taian Taishan failed to provide an adequate warning of such danger.

1152.  Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

1153.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Taian Taishan failed to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1154.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any

judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Taian Taishan's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 104**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Taian Taishan)**

1155.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1156.   This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

1157.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

1158.   At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

1159.   At all material times, Taian Taishan engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Aranda.

1160.   Upon information and belief, Taian Taishan manufactured, mined, designed,

253

produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

1161.  At the time Taian Taishan a manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Taian Taishan represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

1162.  Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1163.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Taian Taishan knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

1164.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Taian Taishan's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging,

254

advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

1165.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

1166.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably

fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

1167.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

1168.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Taian Taishan's violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending

256

against these claims.   Taian Taishan's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 105 – UNJUST ENRICHMENT
### (Against Taian Taishan)

1169.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1170.   Plaintiffs, in the Complaint, allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

1171.   Upon information and belief, Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

1172.   Taian Taishan received money from Aranda as payment for the defective drywall installed in the Home.

1173.   In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Aranda conferred a benefit, *i.e.*, funds and profit, to Taian Taishan, which had knowledge thereof.

1174.   Taian Taishan voluntarily accepted and retained the benefit conferred upon it by Aranda.

1175.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan's acts and omissions in distributing,

placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

1176.   The circumstances described herein under which Taian Taishan profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Taian Taishan to retain those funds and profits.

1177.   Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 106 – COMMON LAW INDEMNITY
**(Against Banner Supply Co.)**

1178.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1179.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

1180.   Aranda is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Banner Co.

1181.   Aranda is entirely without fault for the injuries alleged by Plaintiffs.

{M3040734;1}

1182.   Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Co.

1183.   A special relationship existed between Banner Co. and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Co.  Aranda purchased drywall from Banner Co. that was installed in the Homes.  To the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Co. was defective and wholly to blame for Plaintiffs' injuries.

1184.   As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Co. to distribute, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

1185.   If Aranda is found to be liable to Plaintiffs, Banner Co. is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Cross-Claim Defendant, Banner Supply Co., for damages plus attorneys' fees, interest and costs as

damages, and for such other relief as the Court deems just and proper.

## COUNT 107 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Banner Supply Co.)

1186.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1187.   This is an action, stated in the alternative, against Banner Co. for contribution pursuant to Section 768.31, Florida Statutes.

1188.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

1189.   Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, Banner Co. would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

1190.   Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

1191.   To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against Banner Co. for its pro rata share of the liability.

1192.   Banner Co. should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Cross-Claim Defendant Banner Supply Co. for its pro rata share of the liability, if any, found against Aranda

{M3040734;1}

in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 108 – EQUITABLE SUBROGATION
### (Against Banner Supply Co.)

1193.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1194.   This is an action, stated in the alternative, against Banner Co. for equitable subrogation.

1195.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

1196.   Aranda is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Banner Co.

1197.   Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

1198.   To the extent that Aranda is required to pay damages for any fault of Banner Co. to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from Banner Co. under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

261

1199.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Cross-Claim Defendant, Banner Supply Co., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 109 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY UNDER COMMON LAW AND/OR FLA. STAT. § 672.314
### (Against Banner Supply Co.)

1200.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1201.   This is an action against Banner Co. for breach of the implied warranty of merchantability under the common law and/or Section 672.314, Florida Statutes.

1202.   Aranda purchased drywall from Banner Co. to be installed in the Homes.  Banner Co. knew that Aranda required and expected the drywall it distributed, supplied and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes, and Aranda justifiably relied on Banner Co.'s skill and judgment to supply such drywall for the construction of residential homes.

1203.   Pursuant to the relationship between the parties, Banner Co. is deemed to have provided Aranda with an implied warranty of merchantability as to the drywall materials distributed and/or sold by Banner Co.

1204.   The drywall distributed, supplied and/or sold by Banner Co. for use in the construction of the Homes was not altered and/or otherwise substantively changed by Aranda.

1205.   Pursuant to Fla. Stat. § 672.314 and/or common law, Banner Co. warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.

{M3040734;1}

1206.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.  Aranda denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Aranda is found liable to Plaintiffs, Banner Co. breached the implied warranty of merchantability by distributing, supplying and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

1207.   As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Co. to distribute, supply and/or sell drywall fit for its intended purpose, *i.e.*, for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Aranda, including but not limited to Aranda' loss of reputation, goodwill and lost profits.

1208.   Aranda timely notified Banner Co. of the alleged defective drywall, but Banner Co. has failed to repair or replace the defective drywall.

**WHEREFORE,** Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 110 – BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Against Banner Supply Co.)

1209.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as

{M3040734;1}

if fully set forth herein.

1210.   This is an action against Banner Co. for breach of the implied warranty of fitness.

1211.   Aranda purchased drywall from Banner Co. to be installed in the Home.

1212.   Banner Co. knew that Aranda required and expected the drywall it distributed, supplied and/or sold to be safe and fit for use in the construction of residential homes.

1213.   Aranda justifiably relied on Banner Co.'s skill and judgment to sell drywall fit for the particular purpose of constructing residential homes.

1214.   Pursuant to the relationship between the parties, Banner Co. is deemed to have provided Aranda with an implied warranty of fitness as to the drywall materials distributed, supplied and/or sold by Banner Co.

1215.   The drywall distributed, supplied and/or sold by Banner Co. for use in the construction of the Homes was not altered and/or otherwise substantively changed by Aranda.

1216.   Banner Co. impliedly warranted that the drywall was safe and fit for use in the construction of residential homes.

1217.   Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Aranda denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Aranda is found liable to Plaintiffs, Banner Co. breached the implied warranty of fitness by distributing supplying and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

1218.   As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Co. to

264

distribute and/or sell drywall fit for its intended purpose, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Banner Co.'s wrongful conduct also caused damages to Aranda, including but not limited to Aranda' loss of reputation, goodwill and lost profits.

1219.   Aranda timely notified Banner Co. of the defective drywall, but Banner Co. has failed to repair or replace the defective drywall installed in the Homes.

**WHEREFORE,** Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 111 – NEGLIGENCE
### (Against Banner Supply Co.)

1220.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1221.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1222.   Banner Co. distributed, supplied and/or sold drywall that was installed in the Homes.

1223.   Aranda was a foreseeable user of the drywall imported, distributed supplied, and/or sold by Banner Co.

265

{M3040734;1}

1224.  As such, Banner Co. owed Aranda a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Aranda's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

1225.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Co. knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1226.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Co. breached its duty of care to Aranda by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Banner sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall that allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Aranda with drywall that complied with all applicable building and industry standards.

266

1227.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Co.'s duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

1228.  To the extent Plaintiffs are successful in proving drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. knew or reasonably should have known its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose Aranda to substantial liability and damages. If Banner Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen the drywall was defective and damages to Aranda would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

1229.  Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Banner Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and

{M3040734;1}

interest, and for such further and other relief as the Court deems just and proper.

**COUNT 112 – NEGLIGENT FAILURE TO WARN**
**(Against Banner Supply Co.)**

1230.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1231.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1232.   Banner Co. distributed, supplied and/or sold drywall that was installed in the Homes.

1233.   Aranda was a foreseeable user of the drywall imported, distributed supplied, and/or sold by Banner Co.

1234.   As such, Banner Co. owed Aranda a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Aranda about any dangers inherent in the drywall, and/or (iii) warn Aranda about any problems or dangers in using the drywall for residential construction.

1235.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1236.   To the extent Plaintiffs are successful in proving the drywall in the Homes

268

was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. knew or should have known that unless it warned Aranda of the risk of using the drywall it distributed, sold, and/or supplied, Aranda would suffer harm. However, Banner Co. failed to provide an adequate warning of such danger.

1237.  Aranda did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Aranda had no way of anticipating the drywall could harm persons and/or property and had every reason to expect the product could be safely used in a residential home in the ordinary manner.

1238.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. breached its duty of care to Aranda by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Aranda about any dangers inherent in the drywall, and/or (iii) failing to warn Aranda about any problems or dangers in using the drywall for residential construction, about which Banner Co. knew or reasonably should have known.

1239.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Co.'s duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

1240.  To the extent Plaintiffs are successful in proving that drywall was defective,

269

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If Banner Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

1241.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Banner Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 113 – BREACH OF THE POST-SALE DUTY TO WARN**
**(Against Banner Supply Co.)**

1242.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1243.   Plaintiffs in the Complaint allege various claims against Aranda for damages

270

grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1244.   Banner Co. distributed, sold and/or supplied drywall that was installed in the Homes.

1245.   Aranda was a foreseeable user of the drywall distributed supplied, and/or sold by Banner Co.

1246.   To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner Co. was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner Co.'s control and/or was sold to Aranda, Banner Co. knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

1247.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co., as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Banner Co. breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

1248.   To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

1249.   Consumers, such as Aranda, to whom a warning might have been provided could have been identified by Banner Co.

1250.   A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

1251.   At all material times, Banner Co. stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of Banner Co.'s drywall product in residential construction.

1252.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Banner Co.'s position would have provided a post-sale warning.

1253.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Aranda was damaged by Banner Co.'s breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending

272

against these claims.  Banner Co.'s wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 114 – STRICT PRODUCTS LIABILITY
### (Against Banner Supply Co.)

1254.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1255.   At all material times, Banner Co. was in the business of distributing, supplying, and/or selling drywall of the type contained in the Homes.

1256.   At all material times, the drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Co.

1257.   At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Co., Banner Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

1258.   Banner Co. expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

1259.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1260.   To the extent Plaintiffs are successful in proving that the drywall in the

273

Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner Co. directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 115 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Banner Supply Co.)

1261.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1262.   At all material times, Banner Co. was in the business of distributing, supplying, and/or selling drywall of the type contained in the Homes.

1263.   At all material times, the drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Co.

1264.   At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Co., Banner Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

1265.  Banner Co. expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

1266.  Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1267.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner Co. was required to provide a warning. However, Banner Co. failed to provide an adequate warning of such danger.

1268.  Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

1269.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Co. failed to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1270.  To the extent Plaintiffs are successful in proving that the drywall in the

{M3040734;1}

Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co.'s failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 116
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
**(Against Banner Supply Co.)**

1271.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1272.   This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

1273.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

{M3040734;1}

1274.   At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

1275.   At all material times, Banner Co. engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Aranda.

1276.   Banner Co. advertised, solicited, offered, distributed, supplied and/or sold drywall that was installed in the Homes.

1277.   At the time Banner Co. advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Co. represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

1278.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1279.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner Co. sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Co. knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous..

1280.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, Plaintiffs' claims arise from Banner Co.'s unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

1281. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

1282. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Banner Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall unfit, was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

{M3040734;1}

1283.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the   Complaint, Banner Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

1284.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner Co.'s violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 117– UNJUST ENRICHMENT
### (Against Banner Supply Co.)

1285.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as

if fully set forth herein.

1286.   This is an action, stated in the alternative, against Banner Co. for unjust enrichment.

1287.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

1288.   Banner Co. distributed, sold and/or supplied drywall that was installed in the Homes.

1289.   Banner Co. received money from Aranda as a result of Aranda's purchases of defective drywall installed in the Homes.

1290.   In delivering such payment, monies and/or funds to Banner Co., Aranda conferred a benefit, *i.e.*, funds and profit, to Banner Co., which had knowledge thereof.

1291.   Banner Co. voluntarily accepted and retained the benefit conferred upon it by Aranda.

1292.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co.'s acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

1293.   The circumstances described herein under which Banner Co. profited from selling

and/or supplying drywall make it inequitable for Banner Co. to retain those funds and profits.

1294.   Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 118 – COMMON LAW INDEMNITY
**(Against Banner Fort Myers)**

1295.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1296.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

1297.   Aranda is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Banner Fort Myers.

1298.   Aranda is entirely without fault for the injuries alleged by Plaintiffs.

1299.   Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Fort Myers.

1300.   A special relationship existed between Banner Fort Myers and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Fort Myers.  Aranda purchased drywall from Banner Fort Myers that was installed in the Homes.  Moreover, to the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Fort Myers was defective and wholly to blame for Plaintiffs' injuries.

1301.   As a result of the claims that have been filed against Aranda, Aranda has incurred

281

losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Fort Myers to distribute, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

1302.   If Aranda is found to be liable to Plaintiffs, Banner Fort Myers is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 119 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Banner Fort Myers)

1303.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1304.   This is an action, stated in the alternative, against Banner Fort Myers for contribution pursuant to Section 768.31, Florida Statutes.

1305.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

1306.   Without admitting any liability or damages to Plaintiffs, should Aranda be

found liable, Banner Fort Myers would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

1307.  Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

1308.  To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against Banner Fort Myers for its pro rata share of the liability.

1309.  Banner Fort Myers should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, for its pro rata share of the liability, if any, found against Aranda in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 120 – EQUITABLE SUBROGATION
### (Against Banner Fort Myers)

1310.  Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1311.  This is an action, stated in the alternative, against Banner Fort Myers for equitable subrogation.

{M3040734;1}

1312.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

1313.   Aranda is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Banner Fort Myers.

1314.   Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

1315.   To the extent that Aranda is required to pay damages for any fault of Banner Fort Myers to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from Banner Fort Myers under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

1316.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, for equitable subrogation, as well as attorneys' fees, costs and interest, together with any other relief this Court deems just and proper.

### COUNT 121 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### UNDER COMMON LAW AND/OR FLA. STAT. § 672.314
**(Against Banner Fort Myers)**

1317.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as

if fully set forth herein.

1318.   This is an action against Banner Fort Myers for breach of the implied warranty of merchantability under the common law and/or Section 672.314, Florida Statutes.

1319.   Aranda purchased drywall from Banner Fort Myers to be installed in the Homes. Banner Fort Myers knew that Aranda required and expected the drywall it distributed, supplied and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes, and Aranda justifiably relied on Banner Fort Myers' skill and judgment to supply such drywall for the construction of residential homes.

1320.   Pursuant to the relationship between the parties, Banner Fort Myers is deemed to have provided Aranda with an implied warranty of merchantability as to the drywall materials distributed and/or sold by Banner Fort Myers.

1321.   The drywall distributed, supplied and/or sold by Banner Fort Myers for use in the construction of the Homes was not altered and/or otherwise substantively changed by Aranda.

1322.   Pursuant to Fla. Stat. § 672.314 and/or common law, Banner Fort Myers warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.

1323.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.   Aranda denies it has any liability to Plaintiffs.   However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Aranda is found liable to Plaintiffs, Banner Fort Myers breached the implied warranty of merchantability by distributing, supplying and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is

285

used in residential home construction.

1324.   As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Fort Myers to distribute, supply and/or sell drywall fit for its intended purpose, *i.e.*, for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Banner Fort Myers' wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

1325.   Aranda timely notified Banner Fort Myers of the alleged defective drywall, but Banner Fort Myers has failed to repair or replace the defective drywall.

**WHEREFORE,** Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Fort Myers, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 122 – BREACH OF THE IMPLIED WARRANTY OF FITNESS
(Against Banner Fort Myers)

1326.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1327.   This is an action against Banner Fort Myers for breach of the implied warranty of fitness.

1328.   Aranda purchased drywall from Banner Fort Myers to be installed in the Home.

1329.   Banner Fort Myers knew that Aranda required and expected the drywall it

286

distributed, supplied and/or sold to be safe and fit for use in the construction of residential homes.

1330.   Aranda justifiably relied on Banner Fort Myers' skill and judgment to sell drywall fit for the particular purpose of constructing residential homes.

1331.   Pursuant to the relationship between the parties, Banner Fort Myers is deemed to have provided Aranda with an implied warranty of fitness as to the drywall materials distributed, supplied and/or sold by Banner Fort Myers.

1332.   The drywall distributed, supplied and/or sold by Banner Fort Myers for use in the construction of the Homes was not altered and/or otherwise substantively changed by Aranda.

1333.   Banner Fort Myers impliedly warranted that the drywall was safe and fit for use in the construction of residential homes.

1334.   Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Aranda denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Aranda is found liable to Plaintiffs, Banner Fort Myers breached the implied warranty of fitness by distributing supplying and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

1335.   As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Fort Myers to distribute and/or sell drywall fit for its intended purpose, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action

287

brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Banner Fort Myers's wrongful conduct also caused damages to Aranda, including but not limited to Aranda' loss of reputation, goodwill and lost profits.

1336.   Aranda timely notified Banner Fort Myers of the defective drywall, but Banner Fort Myers has failed to repair or replace the defective drywall installed in the Homes.

**WHEREFORE,** Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Fort Myers, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 123 – NEGLIGENCE
### (Against Banner Fort Myers)

1337.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1338.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1339.   Banner Fort Myers distributed, supplied and/or sold to Aranda drywall that was installed in the Homes.

1340.   Aranda was a foreseeable user of the drywall distributed supplied, and/or sold by Banner Fort Myers.

1341.   As such, Banner Fort Myers owed Aranda a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall

which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Aranda's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

1342. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Fort Myers knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1343. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Fort Myers breached its duty of care to Aranda by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Banner Fort Myers sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Aranda with drywall that complied with all applicable building and industry standards.

1344. To the extent Plaintiffs are successful in proving that drywall was defective,

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Fort Myers's duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

1345.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose Aranda to substantial liability and damages. If Banner Fort Myers had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

1346.  Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Banner Fort Myers' breaches of its duties of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Banner Fort Myers' wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount determined at trial,

plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 124 – NEGLIGENT FAILURE TO WARN</u>
**(Against Banner Fort Myers)**

1347.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1348.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1349.   Banner Fort Myers distributed, supplied and/or sold to Aranda drywall that was installed in the Homes.

1350.   Aranda was a foreseeable user of the drywall distributed supplied, and/or sold by Banner Fort Myers.

1351.   As such, Banner Fort Myers owed Aranda a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Aranda about any dangers inherent in the drywall, and/or (iii) warn Aranda about any problems or dangers in using the drywall for residential construction.

1352.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1353.   To the extent Plaintiffs are successful in proving that the drywall in the

{M3040734;1}

Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or should have known that unless it warned Aranda of the risk of using the drywall it distributed, sold, and/or supplied, Aranda would suffer harm. However, Banner Fort Myers failed to provide an adequate warning of such danger.

1354.  Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1355.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers breached its duty of care to Aranda by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Aranda about any dangers inherent in the drywall, and/or (iii) failing to warn Aranda about any problems or dangers in using the drywall for residential construction, about which Banner Fort Myers knew or reasonably should have known.

1356.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Fort Myers' duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

292

1357.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If Banner Fort Myers had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

1358.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by Banner Fort Myers' breaches of its duties of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Banner Fort Myers' wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 125 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against Banner Fort Myers)

1359.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

{M3040734;1}

1360.  Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1361.  Banner Fort Myers distributed, sold and/or supplied to Aranda drywall that was installed in the Homes.

1362.  Aranda was a foreseeable user of the drywall distributed supplied, and/or sold by Banner Fort Myers.

1363.  To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner Fort Myers was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner Fort Myers' control and/or was sold to Aranda, Banner Fort Myers knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

1364.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Banner Fort Myers breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

1365.  To the extent Plaintiffs are successful in proving that such drywall was defective,

{M3040734;1}

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

1366.   Consumers, such as Aranda, to whom a warning might have been provided could have been identified by Banner Fort Myers.

1367.   A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

1368.   At all material times, Banner Fort Myers stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of Banner Fort Myers' drywall product in residential construction.

1369.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Banner Fort Myers' position would have provided a post-sale warning.

1370.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Aranda was damaged by Banner Fort Myers' breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of

{M3040734;1}

Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Banner Fort Myers' wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 126 – STRICT PRODUCTS LIABILITY
### (Against Banner Fort Myers)

1371. Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1372. At all material times, Banner Fort Myers was in the business of distributing, supplying, and/or selling drywall of the type contained in the Homes.

1373. At all material times, the drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Fort Myers to Aranda.

1374. At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Fort Myers. Banner Fort Myers intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

1375. Banner Fort Myers expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

1376. Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{M3040734;1}

1377.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner Fort Myers directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  Banner Fort Myers' wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 127 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Banner Fort Myers)

1378.  Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1379.  At all material times, Banner Fort Myers was in the business of distributing, supplying, and/or selling drywall of the type contained in the Homes.

1380.  At all material times, the drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Fort Myers.

1381.  At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Fort Myers, Banner Fort Myers intended that the drywall reach

consumers and/or ultimate users of the drywall, such as Aranda.

1382.  Banner Fort Myers expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

1383.  Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1384.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner Fort Myers was required to provide a warning. However, Banner Fort Myers failed to provide an adequate warning of such danger.

1385.  Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

1386.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Fort Myers failed to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

298

1387.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.   Banner Fort Myers' wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 128 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Banner Fort Myers)

1388.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1389.   This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

1390.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. §

501.202(2).

1391.   At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

1392.   At all material times, Banner Fort Myers engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Aranda.

1393.   Banner Fort Myers advertised, solicited, offered, distributed, supplied and/or sold drywall that was installed in the Homes.

1394.   At the time Banner Fort Myers advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Fort Myers represented the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

1395.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1396.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner Fort Myers sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Fort Myers knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous..

1397.   Without admitting any liability or damages to Plaintiffs, to the extent

Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Banner Fort Myers' unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

1398. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

1399. To the extent Plaintiffs are successful in that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall unfit, was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of

301

such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

1400. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

1401. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner Fort Myers' violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. Banner Fort Myers' wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court

{M3040734;1}

may deem just and proper.

### COUNT 129– UNJUST ENRICHMENT
### (Against Banner Fort Myers)

1402.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1403.   This is an action, stated in the alternative, against Banner Fort Myers for unjust enrichment.

1404.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

1405.   Banner Fort Myers distributed, sold and/or supplied to Aranda drywall that was installed in the Homes.

1406.   Banner Fort Myers received money from Aranda as a result of Aranda's purchases of defective drywall installed in the Homes.

1407.   In delivering such payment, monies and/or funds to Banner Fort Myers, Aranda conferred a benefit, *i.e.*, funds and profit, to Banner Fort Myers, which had knowledge thereof.

1408.   Banner Fort Myers voluntarily accepted and retained the benefit conferred upon it by Aranda.

1409.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs

303

against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

1410.   The circumstances described herein under which Banner Fort Myers profited from selling and/or supplying drywall make it inequitable for Banner Fort Myers to retain those funds and profits.

1411.   Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 130 – COMMON LAW INDEMNITY
### (Against La Suprema Trading Inc.)

1412.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1413.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

1414.   Aranda is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

1415.   Aranda is entirely without fault for the injuries alleged by Plaintiffs.

1416.   Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Trading.

1417.   A special relationship existed between LS Trading and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Trading. To the extent that Plaintiffs are successful in

proving their claims, the drywall imported, distributed, sold and/or supplied by LS Trading was defective and wholly to blame for Plaintiffs' injuries.

1418.   As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Trading to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

1419.   If Aranda is found to be liable to Plaintiffs, LS Trading is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Cross-Claim Defendant, La Suprema Trading Inc., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 131 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against La Suprema Trading, Inc.)

1420.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1421.   This is an action, stated in the alternative, against LS Trading for contribution pursuant to Section 768.31, Florida Statutes.

1422.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

1423.   Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, LS Trading would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

1424.   Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

1425.   To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against LS Trading for its pro rata share of the liability.

1426.   LS Trading should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Cross-Claim Defendant, La Suprema Trading Inc., for its pro rata share of the liability, if any, found against Aranda in this action, along with interest and costs, and such other and further relief as this Court deems just and proper.

### COUNT 132 – EQUITABLE SUBROGATION
### (Against La Suprema Trading Inc.)

1427.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1428.   This is an action, stated in the alternative, against LS Trading for equitable

subrogation.

1429.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

1430.   Aranda is not and was not in the business of manufacturing, distributing, or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

1431.   Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

1432.   To the extent that Aranda is required to pay damages for any fault of LS Trading to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from LS Trading under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

1433.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 133 – NEGLIGENCE
### (Against La Suprema Trading Inc.)

1434.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as

if fully set forth herein.

1435.  Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1436.  Upon information and belief, LS Trading imported, distributed, sold and/or supplied drywall that was installed in the Homes.

1437.  Aranda was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

1438.  As such, LS Trading owed Aranda a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Aranda's customers;  and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

1439.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1440.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{M3040734;1}

the Complaint, LS Trading breached its duty of care to Aranda by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

1441.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

1442.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Aranda to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

1443.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged

by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  LS Trading's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 134 – NEGLIGENT FAILURE TO WARN
### (Against La Suprema Trading Inc.)

1444.  Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1445.  Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1446.  Upon information and belief, LS Trading imported, distributed, sold and/or supplied drywall that was installed in the Homes.

1447.  Aranda was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

1448.  As such, LS Trading owed Aranda a duty to, among other things, exercise

310

reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction.

1449.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1450.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that unless it warned foreseeable consumers such as Aranda of the risk of using the drywall it distributed, sold, and/or supplied, Aranda would suffer harm. However, LS Trading failed to provide an adequate warning of such danger.

1451.   Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in  a residential home in the ordinary manner.

1452.   To the extent Plaintiffs are successful in proving that the drywall in the

311

Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to Aranda by: (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction, about which LS Trading knew or reasonably should have known.

1453.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

1454.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

1455.  Without admitting any liability or damages to Plaintiffs, Aranda was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the

312

amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  LS Trading's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 135– BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Trading Inc.)

1456.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1457.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1458.   Upon information and belief, LS Trading imported, distributed, sold and/or supplied drywall that was installed in the Homes.

1459.   Aranda was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

1460.   To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Trading was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Trading's control and/or was sold to Aranda, LS

313

Trading knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

1461.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  LS Trading breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

1462.   To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

1463.   Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by LS Trading.

1464.   A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

1465.   At all material times, LS Trading stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of LS Trading's drywall product in residential construction.

1466.   To the extent Plaintiffs are successful in proving that drywall was defective,

314

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable importer, distributor, seller and/or supplier in LS Trading's position would have provided a post-sale warning.

1467.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by LS Trading's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.   LS Trading's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 136 – STRICT PRODUCTS LIABILITY
### (Against La Suprema Trading Inc.)

1468.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1469.   At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

1470.   Upon information and belief, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading.

1471.   At the time said drywall was placed into the stream of commerce, imported

315

distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

1472.  LS Trading expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

1473.  Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1474.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Trading directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  LS Trading's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

{M3040734;1}

## COUNT 137 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Trading Inc.)

1475.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1476.   At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

1477.   At all material times, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Trading.

1478.   At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

1479.   LS Trading expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

1480.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1481.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which LS Trading was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

1482.   Aranda did not know, had no reason to believe, and was never informed that

the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

1483.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Trading failed to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1484.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  LS Trading's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

318

## COUNT 138
## VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against La Suprema Trading Inc.)

1485.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1486.   This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

1487.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

1488.   At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

1489.   At all material times, LS Trading engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Aranda.

1490.   LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold drywall that was installed in the Homes.

1491.   At the time LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Trading represented the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

1492.   Plaintiffs, in the Complaint, allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

319

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1493.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time LS Trading imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Trading knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

1494.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from LS Trading's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

1495.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

1496.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

1497.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

1498.  To the extent Plaintiffs are successful in that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Trading's violations of FDUTPA directly and

proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  LS Trading's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 139 – UNJUST ENRICHMENT
### (Against La Suprema Trading, Inc.)

1499.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1500.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

1501.  LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

1502.  LS Trading received money from Aranda as payment for the alleged defective drywall installed in the Homes.

1503.   In delivering such payment, monies and/or funds to pay for the drywall that was installed in the Homes, Aranda conferred a benefit, *i.e.*, funds and profit, to LS Trading, which had knowledge thereof.

1504.  LS Trading voluntarily accepted and retained the benefit conferred upon it by

Aranda.

1505.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

1506.  The circumstances described herein under which LS Trading profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Trading to retain those funds and profits.

1507.  Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 140 – COMMON LAW INDEMNITY
### (Against La Suprema Enterprise Inc.)

1508.  Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1509.  Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

1510.  Aranda is not and was not in the business of manufacturing, distributing or

323

selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

1511.   Aranda is entirely without fault for the injuries alleged by Plaintiffs.

1512.   Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Enterprise.

1513.   A special relationship existed between LS Enterprise and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Enterprise. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Enterprise was defective and wholly to blame for Plaintiffs' injuries.

1514.   As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Enterprise to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

1515.   If Aranda is found to be liable to Plaintiffs, LS Enterprise is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

{M3040734;1}

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Cross-Claim Defendant La Suprema Enterprise Inc. for damages plus attorneys' fees, interest and costs and for such other relief as the Court deems just and proper.

## COUNT 141 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against La Suprema Enterprise, Inc.)

1516.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1517.   This is an action, stated in the alternative, against LS Enterprise for contribution pursuant to Section 768.31, Florida Statutes.

1518.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

1519.   Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, LS Enterprise would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

1520.   Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

1521.   To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against LS Enterprise for its pro rata share of the liability.

1522.   LS Enterprise should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any

common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Cross-Claim Defendant, La Suprema Enterprise Inc., for its pro rata share of the liability, if any, found against Aranda in this action, along with interest and costs, together with such other and further relief as this Court deems just and proper.

### COUNT 142 – EQUITABLE SUBROGATION
### (Against La Suprema Enterprise Inc.)

1523.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1524.   This is an action, stated in the alternative, against LS Enterprise for equitable subrogation.

1525.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

1526.   Aranda is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

1527.   Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

1528.   To the extent that Aranda is required to pay damages for any fault of LS Enterprise to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from LS Enterprise under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment

entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

1529.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 143 – NEGLIGENCE
### (Against La Suprema Enterprise Inc.)

1530.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1531.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1532.   Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

1533.   Aranda was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

1534.   As such, LS Enterprise owed Aranda a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Aranda's customers;  and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws,

{M3040734;1}

codes, regulations and standards applicable to its industry.

1535.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1536.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Aranda by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Aranda with drywall that complied with all applicable building and industry standards.

1537.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

1538.  To the extent Plaintiffs are successful in proving that drywall was defective,

{M3040734;1}

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Aranda to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

1539.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 144 – NEGLIGENT FAILURE TO WARN
### (Against La Suprema Enterprise Inc.)

1540.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1541.  Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1542.  Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

1543.  Aranda was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

1544.  As such, LS Enterprise owed Aranda a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction.

1545.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1546.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that unless it warned foreseeable consumers such as Aranda of the risk of using the drywall it distributed,

sold, and/or supplied, Aranda would suffer harm. However, LS Enterprise failed to provide an adequate warning of such danger.

1547.  Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1548.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Aranda by:  (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as Aranda about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction, about which LS Enterprise knew or reasonably should have known.

1549.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

1550.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions

331

in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

1551.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 145 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Enterprise Inc.)

1552.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1553.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the

{M3040734;1}

Other Property in the Homes.

1554.  Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

1555.  Aranda was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

1556.  To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Enterprise was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Enterprise's control and/or was sold to Aranda, LS Enterprise knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

1557.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  LS Enterprise breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

1558.  To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

{M3040734;1}

1559.   Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by LS Enterprise.

1560.   A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

1561.   At all material times, LS Enterprise stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of LS Enterprise's drywall product in residential construction.

1562.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable importer, distributor, seller and/or supplier in LS Enterprise's position would have provided a post-sale warning.

1563.   Without admitting any liability or damages to Plaintiffs, Aranda was damaged by LS Enterprise's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs

{M3040734;1}

and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 146 – STRICT PRODUCTS LIABILITY
### (Against La Suprema Enterprise)

1564.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1565.   At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

1566.   Upon information and belief, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise.

1567.   At the time said drywall was placed into the stream of commerce, imported distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

1568.   LS Enterprise expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

1569.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1570.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Enterprise directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to

335

any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 147 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Enterprise)

1571.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1572.   At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

1573.   At all material times, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Enterprise.

1574.   At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

1575.  LS Enterprise expected the drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

1576.  Plaintiffs in the Complaint allege various claims against Aranda for damages

336

grounded on the unduly hazardous condition of the drywall in the Homes posing serious risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1577.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which LS Enterprise was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

1578.   Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

1579.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Enterprise failed to warn Aranda of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1580.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to

be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 148**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against La Suprema Enterprise Inc.)**

1581.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1582.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

1583.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

1584.   At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

1585.   At all material times, LS Enterprise engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such

as Aranda.

1586.   LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold drywall that was installed in the Homes.

1587.   At the time LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Enterprise represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

1588.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1589.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time LS Enterprise imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Enterprise knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

1590.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from LS Enterprise's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably

{M3040734;1}

safe for its intended use in residential construction.

1591.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

1592.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

1593.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{M3040734;1}

as more fully alleged in the Complaint. LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

1594.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Enterprise's violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims. LS Enterprise's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

## COUNT 149 – UNJUST ENRICHMENT
### (Against La Suprema Enterprise Inc.)

1595.   Aranda reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

341

1596.   Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

1597.   LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

1598.   LS Enterprise received money from Aranda as payment for drywall installed in the Homes.

1599.   In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, Aranda conferred a benefit, *i.e.*, funds and profit, to LS Enterprise, which had knowledge thereof.

1600.   LS Enterprise voluntarily accepted and retained the benefit conferred upon it by Aranda.

1601.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

1602.   The circumstances described herein under which LS Enterprise profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Enterprise to retain those funds and profits.

{M3040734;1}

1603.   Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

**COMES NOW** Defendant/Cross-Plaintiff, Aranda Homes, Inc. and hereby demands a trial by jury as to all issues so triable as a matter of right.

Respectfully submitted this 13th day of April, 2011.

### AKERMAN SENTERFITT

BY: /s/      Valerie Greenberg
Valerie B. Greenberg, Esq. (Fla. Bar No. 26514)
Stacy Harrison, Esq. (Fla. Bar No. 44109)
One Southeast Third Avenue
25th Floor
Miami, Florida  33131
Telephone: (305) 374-5600
Telecopier: (305) 374-5095
Email:  valerie.greenberg@akerman.com
stacy.harrison@akerman.com

*Attorneys for Aranda Homes, Inc.*

*Co-Counsel for Aranda Homes, Inc.*

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
Susie.morgan@phelps.com
Skylar.rosenbloom@phelps.com

{M3040734;1}

## CERTIFICATE OF SERVICE

I hereby certify that *Defendant Aranda Homes Inc.'s Cross Claim* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA  70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA  70163 (kmiller@frilot.com), by U.S. Mail and e-mail <u>or</u> by hand delivery and email <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 13th day of April, 2011.

/s/      Valerie Greenberg

344

{M3040734;1}