UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED | * | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | |
| | * | |
| THIS DOCUMENT RELATES TO: | * | JUDGE FALLON (L) |
| KENNETH and BARBARA WILTZ, et al | * | |
| vs. | * | |
| BEIJING NEW BUILDING MATERIALS | * | |
| PUBLIC Ltd, et al | * | |
| Case No. 2:10-cv-361-EEF-JCW | * | MAG. WILKINSON (4) |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

MAY IT PLEASE THE COURT:

Defendant Suntree Homes, Inc. ("Suntree Homes"), through undersigned counsel,

making a special appearance solely for the purpose of the instant motion to dismiss, moves

this court for an order dismissing the claims of plaintiffs under Rule 12(b) for the reasons

stated herein.    Alternatively, Suntree Homes prays this court to transfer venue to the

Southern District of Florida pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404 in the

interest of justice.

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.     THIS ACTION MUST BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL
           JURISDICTION OVER SUNTREE HOMES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

           A.    MINIMUM CONTACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           B.    SPECIFIC JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           C.     GENERAL JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

           D.    THE ALLEGED NATIONAL CLASS ACTION HAS NO EFFECT ON
                PERSONAL JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    II.    PLAINTIFFS' OMNIBUS COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
           RELIEF CAN BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           A.     THE ECONOMIC LOSS RULE BARS PLAINTIFFS' TORT CLAIMS,
                (COUNTS I, II, III, XI, XII, XIII AND XV) . . . . . . . . . . . . . . . . . . . 13

           B.    PLAINTIFFS' NEGLIGENCE ALLEGATIONS (COUNT I) ARE FALSE AND
                IMPROPERLY PLEADED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

           C.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR NEGLIGENCE PER SE
                (COUNT II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

           D.    PLAINTIFFS HAVE NO CLAIM IN STRICT LIABILITY (COUNT III) . . . 19

           E.    PLAINTIFFS CANNOT MAINTAIN A WARRANTY CLAIM
                (COUNTS IV & VI) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                1.    THE NON-CONTRACTING PLAINTIFFS CANNOT MAINTAIN A
                      WARRANTY CLAIM OF ANY KIND BECAUSE THEY WERE NOT
                      IN PRIVITY OF CONTRACT WITH SUNTREE HOMES . . . . . . . . 20

2.    THE WARRANTY CLAIMS ASSERTED BY THE CONTRACTING
      PLAINTIFFS ARE FORECLOSED BY THE PLAIN LANGUAGE OF
      THE CONSTRUCTION AGREEMENT  . . . . . . . . . . . . . . . . . . . . . 21

3.    PLAINTIFFS CANNOT MAINTAIN A CLAIM FOR BREACH OF
      WARRANTY OF MERCHANT ABILITY OR OF FITNESS FOR A
      PARTICULAR PURPOSE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

F.    PLAINTIFFS' BREACH OF CONTRACT CLAIM (COUNT VII) MUST BE
      DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

G.    PLAINTIFFS CANNOT STATE A CLAIM FOR PRIVATE NUISANCE
      (COUNT XI)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

H.    PLAINTIFFS CANNOT BRING A CLAIM FOR UNJUST ENRICHMENT
      (COUNT XIII)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

I.    THE OMNIBUS COMPLAINT FAILS TO STATE A CLAIM UNDER
      FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (COUNT
      XIV) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

J.    PLAINTIFFS' CLAIM FOR EQUITABLE RELIEF AND MEDICAL
      MONITORING (COUNT XV) CANNOT GO FORWARD . . . . . . . . . . . . 31

III.  ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE
      SOUTHERN DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1404 & 1406 35

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## BACKGROUND

On March 15, 2010, nearly 500 Plaintiffs filed "Plaintiffs' Amended Omnibus Class Action Complaint (II)" under the caption *Wiltz v. Beijing New Building Materials, et al,* asserting claims against various Defendants, including Suntree Homes, in the United States District Court for the Eastern District of Louisiana invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act 28 U.S.C. § 1711 *et seq.* (CAFA). This Omnibus Complaint has been subsequently amended via several complaints in intervention.

In the Omnibus Complaint and in Complaint in Intervention II(A), Florida residents Fernando and Bridget Madero and Michael and Renee Anderson ("Plaintiffs") allege that Suntree Homes built their houses and, directly or through agents, installed defective drywall in these structures, resulting in harm and damage to them. (Complaint ¶ 230 and ¶85 in Complaint in Intervention II(A)).

As an initial matter, Suntree Homes has spoken to the installer, J. W. Hodges, who confirmed to Suntree Homes that it did not use any Chinese drywall in the construction of Plaintiff' dwellings. To date, Plaintiffs have failed to produce any evidence of Chinese drywall at their structures. Thus, *Plaintiffs' complaint should be dismissed unless they can produce evidence of Chinese drywall at these locations.*

Plaintiffs' Complaint should also be dismissed for the following reasons:

<u>**ARGUMENT**</u>

**I.     This Action Must be Dismissed Because This Court Lacks Personal Jurisdiction Over Suntree Homes**

Suntree Homes is a corporation organized under the laws of the State of Florida, with a principal place of business in Palm Beach County, Florida.  (See Affidavit of Rebecca F. Barin ("Aff") at ¶2 attached hereto as Exhibit "A".)  Suntree Homes was administratively dissolved on September 24, 2010, as shown in the records of the Florida Secretary of State. Suntree Homes was a Florida homebuilder that contracted with third party vendors for the construction of single-family homes and/or sold completed single-family homes. (Aff. ¶3). Suntree Homes never built a residence in the State of Louisiana or had any contracts or subcontracts with companies located in Louisiana.  (Aff. ¶4).  Suntree Homes was never licensed or registered to do business in Louisiana, nor did it ever have any offices or employees in Louisiana. (Aff. ¶5).  Suntree Homes never had an agent for service of process in Louisiana.  (Aff. ¶6).  Suntree Homes never had any bank accounts in Louisiana or own any property in Louisiana.  (Aff. ¶7).  Suntree Homes did not solicit business in Louisiana and never transacted business in Louisiana.  (Aff. ¶8).  Additionally, Suntree Homes never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana. (Aff. ¶9).  Suntree Homes never maintained an office, store, headquarters, shop, warehouse, or any other facility in the state of Louisiana.  (Aff. ¶10).  Suntree Homes never received any business from any contacts in Louisiana, whether individual customers, or business customers.  (Aff. ¶11).  Moreover, none of the plaintiffs making allegations

5

against Suntree Homes reside in Louisiana.  Consequently, Suntree Homes never anticipated it would be haled into court in Louisiana.  (Aff. ¶12).

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish *in personam* jurisdiction.  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Ham v. La Cienega Music Co.,* 4 F.3d 413, 415 (5th Cir.1993); *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985); *Kelvin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995).  In resolving a jurisdictional issue, the court may review pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits and any part of the record. *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc*., 963 F.2d 90, 95 (5th Cir.1992).  The allegations of the Omnibus Complaint are taken as true except to the extent that they are contradicted by defendant's affidavits.  *Wyatt v. Kaplan*, 686 F.2d 276, 282-83 n. 13 (5th Cir.1982) (*citing Black v. Acme Markets, Inc*., 564 F.2d 681, 683 n. 3 (5th Cir.1977)).

In a diversity matter, a federal court may exercise jurisdiction over a nonresident defendant only (1) if the state long-arm statute confers personal jurisdiction over that defendant and (2) if the exercise of jurisdiction is consistent with due process under the United States Constitution.  *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc*., 9 F.3d 415, 418 (5th Cir.1993) (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Revell v. Lidov,* 317 F.3d 467, 469 (5th Cir. 2002); *Mink v. AAAA Development, L.L.C.*, 190 F.3d 333, 335 (5th Cir. 1999); and *Irving v. Owens-Corning Fiberglass Corp.*, 864 F.2d 383,

385 (5th Cir. 1989).

Under Louisiana's long-arm statute:

A.    A court may exercise personal jurisdiction over a nonresident, who acts
      directly or by an agent, as to a cause of action arising from one of the
      following activities performed by the nonresident:
      (1)    Transacting any business in this state;
      (2)    Contracting to supply services or things in this state;
      (3)    Causing injury or damage by an offense or quasi offense
             committed through and act or omission in this state;
      (4)    Causing injury or damage in this state by an offense or quasi
             offense committed through an act or omission outside of this
             state if he regularly does or solicits business, or engages in any
             other persistent course of conduct, or derives revenue from
             goods used or consumed or services rendered in this state.

*La. R.S. 13:3201(A).* Louisiana's long-arm statute allows jurisdiction over a nonresident to

the fullest limits permitted under the Due Process Clause of the Fourteenth Amendment

consistent with "the Constitution of this state and the Constitution of the United States." *La.

R.S. 13:3201*(B); *Ruppert v. Geo. Kellett & Sons*, 996 So. 2d 501, 505 (La. App. 5th Cir

2008) (*citing Superior Supply Co. v. Assoc. Pipe and Supply Co.*, 515 So. 2d 790, 792 (La.

1987)); *Tsaoussidis v. State Farm Mutual Auto. Ins. Co.*, 2009 WL 3448133 (5th Cir. 2009).

As such, "under the express terms of the present long-arm statute, the sole inquiry into

jurisdiction is a one-step analysis of the constitutional due process requirements." *Ruppert*,

996 So. 2d at 505-06; *See also Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir.

1990) ("the exercise of jurisdiction [over a non-resident defendant] … must comport with

norms imposed by the due process clause of the fourteenth amendment.").

### A.   MINIMUM CONTACTS

The Due Process Clause of the Fourteenth Amendment limits the Court's power to assert personal jurisdiction over a nonresident by guaranteeing that no federal court may assume jurisdiction over a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95 (1945), *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1994).  Jurisdiction may be general or specific.  When a defendant's contacts with the forum state are "continuous and systematic" with the forum state, the court may exercise "general" jurisdiction over any action brought against that defendant.  *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 n.9, 415 (1984).  Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."  *Id.*  at 414 n.8.  Here, this Court cannot maintain personal jurisdiction–general or specific–over Suntree Homes as it has <u>absolutely no contacts</u> with the forum state of Louisiana.

### B.   SPECIFIC JURISDICTION

If a defendant has relatively few contacts, the court may exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 & n.8.  The Fifth Circuit has adopted a three step inquiry in determining whether it may exercise specific jurisdiction over a nonresident defendant:

(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed it self of the privileges of conducting activities there;

(2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and

(3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 271 (5th Cir. 2006) (citing *Burger King*, 471 U.S. 462, 474 (1985).

Whether a nonresident defendant has sufficient minimum contacts with the forum state to subject it to personal jurisdiction depends upon whether the nonresident has "purposefully availed" itself of the privilege of conducting business in the forum state…" *Hogue*, 2009 WL 2525751 at 4 (*citing Wilton Jones v. Touche Ross & Co.*, 556 So. 2d 67 (La. App. 4th Cir. 1989) (*quoting Hansen v Denckla*, 357 U.S. 235 (1958)); *Sculptchair, Inc. v. Century Arts, Ltd*., 94 F.3d 623, 631 (11th Cir. 1996).  The requirement of "purposeful availment" ensures that the nonresident defendant will not be haled into a jurisdiction "solely as a result of a random, fortuitous or attenuated contact, or by the unilateral activity of another party or a third person." *Asahi Metal Industry Co., Ltd.,* 480 U.S. at 102; *Burger King Corp.*, at 475.  Suntree Homes has not committed any act to show that it reasonably anticipates being haled into court in Louisiana, a forum in which it has no contacts.

The second portion of the analysis is whether the Plaintiffs' cause of action arises out of or results from the defendant's forum related contacts.  *Seiferth,* 472 F.3d at 271.  Suntree Homes was a Florida homebuilder that contracted with third party vendors for the

9

construction of single-family homes and/or sold completed single-family homes. (Aff. ¶3). Suntree Homes never built a residence in the state of Louisiana or had any contracts or subcontracts with companies located in Louisiana. (Aff. ¶4). Suntree Homes never received any business from any contacts in Louisiana, whether individual customers, or business customers. (Aff. ¶11). Thus, it is impossible for Plaintiffs' claims to arise out of any forum related contacts of the Suntree Homes.

Finally, the court must determine whether the exercise of personal jurisdiction is fair and reasonable. The factors of whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice" are 1) the burden on the defendant in defending the lawsuit; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and, 5) the shared interest of the states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd.,* at 113; *Cronin v. Washington Nat'l Ins. Co*., 980 F.2d 663, 671 (11th Cir. 1993) (citing *Int'l Shoe Co*., 326 U.S. at 316.)) The facts of this case demonstrate that exercise of personal jurisdiction over Suntree Homes would offend traditional notions of fair play and substantial justice.

Litigating this case in Louisiana would not further any fundamental substantive social policies, or help to resolve the issues in a convenient and effective way. None of the factors favor personal jurisdiction in Louisiana. First, as Suntree Homes has been administratively

dissolved, it would incur a great burden to defend this suit in Louisiana about a Florida matter.  Second, this Court cannot have an interest in adjudicating Plaintiffs' claims, as the cause of action occurred in Florida alone and as the Plaintiffs are Florida residents and the files of Suntree Homes are maintained in Florida–Louisiana's interest is cursory at best. Third, since there is no connection between this dispute and Louisiana, litigating this claim in Louisiana would only create inconvenience and additional cost to the parties.  Lastly, while certain homeowners impacted by defective drywall reside in Louisiana, having this Court deciding issues between a defunct Florida corporation and Florida citizens over Florida property does not further social policies.  Forcing Suntree Homes to travel from Florida in order to defend itself in this complex litigation outweighs any benefit.  There is no basis to bring Suntree Homes into a Louisiana court to litigate matters best suited for Florida courts. Such an outcome would offend "traditional notions of fair play and substantial justice."

### C.    GENERAL JURISDICTION

Personal jurisdiction over a defendant that does not arise out of or relate to the defendant's activities in the forum state is referred to as "general jurisdiction." *Helicopteros Nacionales de Colombia, SA.,* 466 U.S. at 414 n.9.  For this court to exercise general jurisdiction over Suntree Homes, its contacts with Louisiana must be "continuous and systematic." *Id*. at 808.  As Suntree Homes has absolutely no contacts with Louisiana, under no set of facts could they expect to be haled into a Louisiana court.

11

### D. THE ALLEGED NATIONAL CLASS ACTION HAS NO EFFECT ON PERSONAL JURISDICTION

Plaintiffs allege jurisdiction by way of 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act ("CAFA"). Plaintiffs' attempt to create a national class action has absolutely no effect on whether or not this court may exercise personal jurisdiction. *See In re Train Derailment Near Amite La.*, 2004 U.S. Dist. LEXIS 1507 (E.D. La. Feb. 3, 2004)(holding that a class certification failed to have any bearing on a defendant's motion to dismiss for lack of personal jurisdiction. "The personal jurisdiction determination depends solely on the [the defendant's] conduct in and contacts with the forum state."). However, even if the court were to hold that the national class action were to have an effect, this suit does not meet the strict prerequisites for Rule 23. The large geographic scope creates an unprecedented and unmanageable suit, thereby diluting any common issues of law or fact. *See Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000) (holding that because the laws of many different states would apply, variations in the law "may swamp any common issues and defeat predominance"); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (stating that where claims are to be adjudicated under the laws of the fifty states and multiple territories, "a single nationwide class is not manageable"); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1350 (7th Cir. 1995) (attempt to apply the law of different states made impossible the predominance of common questions and manageability requirements of Rule 23(b)(3)).

Plaintiffs are attempting to use CAFA, the faulty contention of a nationwide class action, and the MDL proceedings to create a backdoor to manufacture personal jurisdiction in this matter. Well established law prohibits such a contortion of the rules governing personal jurisdiction. Plaintiffs have failed to satisfy their burden of proof in justifying the Court's exercise of specific or general jurisdiction over Suntree Homes. Thus, this Honorable Court is without *in personam* jurisdiction and must dismiss Suntree Homes.

## II. PLAINTIFFS' OMNIBUS COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Each of the causes of action asserted by Plaintiffs against Suntree Homes should be dismissed pursuant to Civil Rule 12(b)(6) because none state a claim upon which relief can be granted.

### A. THE ECONOMIC LOSS RULE BARS PLAINTIFFS' TORT CLAIMS (COUNTS I, II, III, XI, XII, XIII AND XV).

Plaintiffs' Omnibus Complaint alleges that Suntree Homes is liable to them pursuant to several tort theories including: negligence, negligence per se, strict liability, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, and medical monitoring.[1] All of these claims are barred by the Economic Loss Rule ("ELR"). The ELR prevents parties from circumventing contractual claims through tort. *Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc*., 891 So. 2d 532, 536, & n.1 (Fla. 2004). In Florida, the ELR arises in two contexts: "(1) the contractual privity ELR where two parties are in privity of

---

[1]        *See* Complaint Counts I, II, III, XI, XII, XIII and XV.

contract, and (2) the products liability ELR where a defective product causes damage, but only to itself." (Doc. 741, Order & Reasons (January 13, 2010) at 22 (Fallon)). This Court has explained how the contractual privity ELR applies to homebuilders like Suntree Homes:

> The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contractor breach, and in other limited circumstances. The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall. Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs.

*Id.* at 30 (citation omitted) (emphasis added). Underlying the contractual privity ELR is the that "contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement." *Indemnity Ins. Co.*, 891 So. 2d at 536-37.

Michael and Renee Anderson were in privity of contract with Suntree Homes (hereinafter the "Contracting Plaintiffs") (*See* Exibit B). The Contracting Plaintiffs assert numerous tort claims in the Omnibus Complaint, including Negligence (Count I), Negligence Per Se (Count II), Strict Liability (Count III), Private Nuisance (Count XI), Negligent Discharge of a Corrosive Substance (Count XII), Unjust Enrichment (Count XIII) and Medical Monitoring (Count XV). The ELR intercepts each of these claims because "the alleged duty breached is derived from the contractual relationship" between the parties. *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1315 (S.D. Fla. 2002) (internal marks omitted). The basis for all of their tort claims is that Suntree

14

Homes allegedly built a home with defective Chinese-manufactured drywall. Because the alleged wrong is derived from the parties' contractual relationship, it cannot give rise to a tort claim.

Furthermore, and aside from the question of privity, none of the Plaintiffs can sue in tort for economic losses. Florida courts have defined economic loss in this context as "disappointed economic expectations" where the product "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain." Order & Reasons at 22 (internal marks and citation omitted). In *Casa Clara Condominium Association v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1248 (Fla. 1993), the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. *Id.* at 1247. Because the plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier. *Id.* at 1246-48. The same reasoning applies here.

The products liability strand of the ELR also bars all Plaintiffs from suing Suntree Homes in tort for purely economic losses. As a matter of law, the rule limits them to recovering *non*-economic losses (*e.g.*, for personal injury) and damages to property other than the house itself.[2] *See Casa Clara*, 620 So. 2d at 1247-48. Plaintiffs must therefore replead

---

[2]       Plaintiffs also cannot recover economic losses because they have <u>suffered</u> no such losses. This Court has found that "the drywall is functioning as intended, so the structural expectations of Plaintiffs with regard to the drywall are not disappointed." Order & Reasons at 19-20.

their tort claims to seek only non-economic losses.

**B.    PLAINTIFFS' NEGLIGENCE ALLEGATIONS (COUNT I) ARE FALSE AND IMPROPERLY PLEADED.**

Plaintiffs' negligence claim (Count I) alleges that Suntree Homes owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question.  Complaint. ¶783.  The Omnibus Complaint further alleges that Suntree Homes had a duty to provide Plaintiffs with warnings about the drywall.  *Id*. ¶ 786.

Besides being barred by the economic loss rule, these allegations are false.  Suntree Homes, for example, did not "design," "manufacture," or "import" any drywall.  Even assuming the truth of these allegations, they do not state a claim for relief.  Under Florida law, a negligence claim requires the plaintiff to plead and prove that the defendant owed a duty to the plaintiff, and that the duty was breached.  *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (Florida law) ("Failure to establish any one of these elements is fatal to the plaintiff's case.").  Plaintiffs can allege neither.

Suntree Homes owed no duty of care with respect to Plaintiffs' drywall.  Under Florida law, even manufacturers, retailers and distributors have a duty to inspect or warn only when the product is considered "inherently dangerous."  *See O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co*., 738 F. Supp. 481, 483-84

(S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous."). Drywall obviously does not fit into the narrow "inherently dangerous" category, and the Omnibus Complaint does not allege otherwise.[3]

Further, Suntree Homes cannot be held liable in negligence for latent defects absent actual or implied knowledge of those defects. *See Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1991). The alleged defects in the drywall are plainly "latent," and Plaintiffs have not alleged actual or implied knowledge by Suntree Homes.

Plaintiffs alleged defective drywall claim does not give rise to a negligence claim against Suntree Homes. Absent an "inherently dangerous" product or actual or implied knowledge, Count I fails as a matter of law. The unsupported assertion that Suntree Homes "knew or should have known" that the drywall would "harm" Plaintiffs is nothing more than a legal conclusion which cannot salvage a negligence claim.

---

[3]     "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category. They include highly toxic materials, second hand guns and drugs…. In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself." *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted). By way of illustration, Florida courts have ruled that jet skis (*id*. at 1543), motorcycles (*Byrnes v. Honda Motor Co.*., 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id*.) are not "inherently dangerous." Drywall would certainly not be an "inherently dangerous" product under Florida law.

C.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR NEGLIGENCE PER SE (COUNT II).

Besides being barred by the economic loss rule, Plaintiffs' negligence per se claim (Count II) should be dismissed because the Omnibus Complaint does not set forth the essential elements of this tort. Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se for two reasons. First, they have not identified a statute that Suntree Homes allegedly violated. The Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes." Complaint. ¶ 793. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft*, 129 S.Ct. at 1949.

Second, because the "State and local Building Codes" that Suntree Homes allegedly violated are "designed to protect the <u>general public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). Plaintiffs' negligence per se claim is merely a restated negligence claim,[4] which should be

---

[4]    Plaintiffs' claim for "Negligent Discharge of a Corrosive Substance" (Count XII) is similarly duplicative of their negligence claim. Florida law does not appear to recognize an independent cause

summarily dismissed.

### D.   PLAINTIFFS HAVE NO CLAIM IN STRICT LIABILITY (COUNT III).

Plaintiffs' strict liability claim (Count III) is based on the false premise that Suntree Homes was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public."  Complaint. ¶ 798.  This theory is foreclosed by the economic loss rule (*supra*) and by at least two established principles of Florida law.

Suntree Homes cannot be sued in strict liability because it did not manufacturer or distribute the allegedly defective drywall.  The Omnibus Complaint itself identifies Suntree Homes as a "Developer/Builder."  (*See* Complaint ¶681 and Subclass 172).  Strict products liability is reserved for product manufacturers and distributors, and does not apply to a homebuilder.  *See Ugaz v. American Airlines, Inc*., 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Furthermore, even if Plaintiffs could sue a contractor in strict liability, the allegedly defective drywall is not a "product" for purposes of this particular tort.  Rather, under Florida strict liability law the drywall is considered a "structural improvement," as it was an integral

_____

of action for Negligent Discharge.

part of Plaintiffs' home.  *See Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007).  "Florida courts have expressly <u>declined</u> to extend the principle of strict liability to structural improvements to real estate."  *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc*. No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added); *see Plaza*, 971 So. 2d at 924 (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water and Waste, Inc*., 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).  Given the foregoing, the strict liability claim must be dismissed.

### E.    PLAINTIFFS CANNOT MAINTAIN A WARRANTY CLAIM (COUNTS IV & VI).

In Counts IV (Breach of Express Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiffs allege causes of action based on various express and implied warranties.  These warranty claims should be dismissed for the following reasons.

### 1.    THE NON-CONTRACTING PLAINTIFFS' CANNOT MAINTAIN A WARRANTY CLAIM OF ANY KIND BECAUSE THEY WERE NOT IN PRIVITY OF CONTRACT WITH SUNTREE HOMES.[5]

The Non-Contracting Plaintiffs' lack of privity with Suntree Homes precludes any warranty claim they might assert.  A plaintiff suing in warranty "must be in privity of contract with the defendant."  *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005); *Cruz v. Mylan, Inc*., No. 8:09-CV-1106-T17-EAJ, 2010 WL 598688, *2 (M.D. Fla. Feb. 17, 2010)

---

[5]    The Non-Contracting Plaintiffs are Fernando and Bridget Madero.

(same).  The Non-Contracting Plaintiffs never contracted with Suntree Homes.  Instead, they acquired their house from a third party.  *T.W.M. v. Am. Med. Systems, Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (explaining concept of privity).  Without a showing of contractual privity with Suntree Homes, the Non-Contracting Plaintiffs' express and implied warranty claims cannot survive.[6]  *See, e.g., Borchardt v. Mako Marine Intern., Inc.*, No. 08-61199-CIV, 2009 WL 3856678, *4 (S.D. Fla. Nov. 17 2009) (dismissing warranty claims where there was "no allegation … to establish that there [was] privity of contract").

## 2. THE WARRANTY CLAIMS ASSERTED BY THE CONTRACTING PLAINTIFFS ARE FORECLOSED BY THE PLAIN LANGUAGE OF THE CONSTRUCTION AGREEMENT.

Although the Contracting Plaintiffs were in contractual privity with Suntree Homes, their warranty claims also fail as a matter of law and should be dismissed as well.  The Construction Agreement expressly limits the duration of any express warranties to, at most, 1 year from completion of the work, commencing two days after the purchaser is notified of the completion of the work.  *See* Exhibit B.  The Contracting Plaintiffs have not alleged that they experienced a defect within the applicable limited warranty periods.  Their express

---

[6]    To be sure, the Omnibus Complaint asserts – without a shred of detail – that the Non-Contracting Plaintiffs (along with every other plaintiff in this lawsuit) "were in privity" with Suntree Homes or were "foreseeable third party beneficiaries of any warranties."  These are classic unsupported legal conclusions that the Fifth Circuit has long classified as inadequate to survive a motion to dismiss.  *See Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (reaffirming that Fifth Circuit does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" in resolving Rule 12(b)(6) challenges) (internal marks and citation omitted); *see also Fed. Ins. Co. v. Bonded Lightning Protection Sys., Inc.*, No. 07-80767-CIV, 2008 WL 5111260, *7 (S.D. Fla. Dec. 3, 2008) (dismissing third-party-beneficiary claim where complaint failed to allege that contracting parties intended contract to benefit third party).

21

warranty claims are barred by the terms of the warranties.  *See Brisson v. Ford Motor Co*., 349

Fed. Appx. 433, 434 (11th Cir. 2009) (affirming dismissal of express warranty claim where

plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period")

(Florida law); *Ocana v. Ford Motor Co*., 992 So. 2d 319, 324 (Fla. 3d DCA 2008) ("[T]here

can be no cause of action for breach of an express limited warranty unless the consumer can

allege and prove that the manufacturer did not comply with the limited express warranty's

terms."); *see also Bland v. Freightliner, LLC*, 206 F. Supp. 2d 1202, 1210 (M.D. Fla. 2002)

("A warranty, whether express or implied, is fundamentally a contract.").

### 3.     PLAINTIFFS CANNOT MAINTAIN A CLAIM FOR BREACH OF WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE.

Additionally, there are two more reasons to dismiss Plaintiffs' implied warranty claims.

First, as a matter of settled Florida law, the implied warranties of merchantability and of

fitness for a particular purpose do not apply to the work performed by Suntree Homes.  The

implied warranties in the Uniform Commercial Code "do not generally pass from a contractor

to an owner, because a contractor is viewed as a provider of services, not a merchant." *Lonnie*

*D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998);

*In re Sunshine-Jr. Stores, Inc*., 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida

law, contractors are viewed as service providers, not merchants.").

Suntree Homes is not bound by any implied warranties because it is not considered a

merchant under Florida warranty law.  Suntree Homes contracts with its clients to provide a

service: home construction.  That is why the agreement the Contracting Plaintiffs entered into

with Suntree Homes is called a "Construction Agreement" and not a "purchase agreement." *See* Exhibit B.  Because the inclusion of drywall in Plaintiffs' homes was incidental to the construction services that Suntree Homes rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in these circumstances.  *See In re Sunshine-Jr.*, 240 B.R. at 794 ("[A]lthough construction contracts … typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc*., 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, the claim for implied warranty of fitness for a particular purpose cannot survive because none of the Plaintiffs have alleged that the drywall in their houses was unfit for a particular or unusual purpose different from that for which drywall is ordinarily used. The Court has already determined that "[t]he Chinese drywall stands just as any other functioning drywall, <u>serving its intended structural purpose</u>."  Order & Reasons at 23 (emphasis added); *id*. at 18 ("[T]he Chinese drywall in the instant matter is operating as intended[.]").  This adjudicated fact is fatal to the claim for breach of the implied warranty of fitness for a particular purpose.[7]

---

[7]       See *Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding dismissal of particular purpose warranty claim where plaintiff did not "allege a particular or unusual use different from the purpose for which the item sold was ordinarily used"); *McGraw v. Fleetwood Enters., Inc*., No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

23

F.   **PLAINTIFFS' BREACH OF CONTRACT CLAIM (COUNT VII) MUST BE DISMISSED.**

The Non-Contracting Plaintiffs cannot maintain a claim for breach of contract (Count VII) because they never contracted with Suntree Homes. They acquired their house from a third party, leaving their only contractual remedy with that party. "It is elementary that a person not a party to nor in privy with a contract does not have the right to sue for its breach." *Cibran Enters., Inc. v. BP Prods. N.A., Inc*., 365 F. Supp. 2d 1241, 1251 (S.D. Fla. 2009) (internal marks and citation omitted); *Banco Ficohsa v. Aseguradora HondurenaS.A.,* 937 So. 2d 161, 164-65 (Fla. 3d DCA 2006) (same principle).

Although the Contracting Plaintiffs were in privity with Suntree Homes, they too have failed to allege a viable claim for breach of contract. The Contracting Plaintiffs have failed to allege a viable claim for breach of contract because they fail to identify a provision of the contract that was breached by Suntree Homes. If Plaintiffs hope to salvage their contract claim, they must" identify the relevant portion of the contract breached." *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co*., No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, *4 (M.D. Fla. Nov. 6, 2008); *see Insurance Concepts & Design, Inc. v. Healthplan Serv., Inc*., 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached").

While Plaintiffs will likely attempt to justify their bare allegations by pointing to the "Omnibus" nature of the Complaint, the decision to join this litigation does not excuse Plaintiffs from satisfying basic pleading standards. The Construction Agreement outlines

24

Suntree Homes' obligations.  *See* Exh. B.[8]  *See also Cf. Lonnie D. Adams*, 714 So. 2d at 1179 (holding that although contractor had a duty to perform contract in a "workmanlike" manner, there was no implied duty to deliver defect-free windows to the homeowner-plaintiffs). Plaintiffs must base their breach of contract claim on the contract between the parties.  Until they revise their allegations, their breach of contract claim cannot survive.

### G.   PLAINTIFFS CANNOT STATE A CLAIM FOR PRIVATE NUISANCE COUNT XI.

An action for private nuisance requires the claimant to establish an injury to his or her own property in connection with the use of the real property of <u>someone else</u>.  *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").  The Omnibus Complaint does not allege that Plaintiffs' purported injuries resulted from real property owned by Suntree Homes.  To the contrary, the nuisance claim is predicated entirely on the allegation that "structures owned by Plaintiffs" are to blame. Complaint. ¶ 878.  This allegation does not state a claim for private nuisance.  *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in

---

[8]     Regardless of whether they can ever allege the elements of a breach of contract claim, Plaintiffs will be hard-pressed to show that Suntree Homes did not construct their house in a workmanlike manner or that it deviated from standard building practices.  The Court has determined that "the drywall is functioning as intended, so the structural expectations of the plaintiffs with regard to the drywall are not disappointed."  Order & Reasons at 19.

the absence of the right to possession or control of the land on which the nuisance is located[.]"). The claim for private nuisance must be dismissed.

H.      **PLAINTIFFS CANNOT BRING A CLAIM FOR UNJUST ENRICHMENT COUNT XIII.**

Plaintiffs' unjust enrichment claim (Count XIII) fails because the contract that the Contracting Plaintiffs entered into with Suntree Homes forecloses a quasi-contractual theory. "It is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy." *American Honda Motor Co. v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005). Where (as here) the plaintiff admits to the existence of a contract, "claims arising out of that contractual relationship will not support a claim for unjust enrichment." *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); *Validsa, Inc. v. PDVSA Serv., Inc.*, 632 F. Supp. 2d 1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties "admitted to the existence of express contracts").[9]

The Non-Contracting Plaintiffs cannot maintain an unjust enrichment claim either. The elements of unjust enrichment are "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Commerce Partnership 8098 Ltd. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added);

---

[9]      Even if the existence of an express contract did not bar the unjust enrichment claims of the Plaintiffs against Suntree Homes, the economic loss rule would.

*Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

The Non-Contracting Plaintiffs' unjust enrichment claim cannot satisfy the first and fourth of these elements. The first element is not satisfied because they cannot show that they "conferred a benefit" on Suntree Homes. In fact, the Non-Contracting Plaintiffs did not pay Suntree Homes a cent to build their house, as they obtained the house from a third party. The Non-Contracting Plaintiffs, in other words, did not "enrich" Suntree Homes.

As to the fourth element of unjust enrichment, there is nothing inequitable or unjust about permitting Suntree Homes to retain whatever benefit it received for constructing the house currently owned by the Non-Contracting Plaintiffs. After all, it cannot be disputed that Suntree Homes paid a third party (*i.e.*, a subcontractor or distributor) for the drywall in question. As the Florida appellate court explained in *Maloney v. Therm Alum Industries, Corp.,* 636 So. 2d 767, 770 (Fla. 4th DCA 1994), "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit." *Id. overruled on other grounds by, Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities).

Thus, not only are the Non-Contracting Plaintiffs' unjust enrichment claims barred because those homeowners did not "enrich" Suntree Homes, they are precluded because whatever compensation Suntree Homes received for the drywall was not retained "unjustly."

## I.   THE OMNIBUS COMPLAINT FAILS TO STATE A CLAIM UNDER FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (COUNT XIV).

Plaintiffs also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*. ("FDUTPA").  Complaint. ¶ 896.  A FDUTPA claim comprises three distinct elements:  (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages." *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  "In light of this trend, claims arising under the FDUTPA must be pled with particularity." *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc*., No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).  At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what

28

documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard. Indeed, it alleges no specific facts in support of Plaintiffs' FDUTPA claim. *See* Complaint. ¶ 897. It does not identify a single instance in which Suntree Homes deceived Plaintiffs or treated them unfairly. Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b). *See Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[10]

Plaintiffs' failure, however, is not merely one of pleading. Their FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to them. *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations

---

[10]     Plaintiffs' FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply. A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly" and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc*., No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury).  Because Suntree Homes provided services – namely, the construction of houses – Plaintiffs can establish "actual damages" <u>only</u> by showing a difference between the "market value" of the services that Suntree Homes actually provided and the services that Suntree Homes was required to provide.[11]  *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties." (citations omitted)).

As a matter of law, Plaintiffs cannot make this showing.  There is zero evidence that the manner in which Suntree Homes <u>constructed</u> the houses was in any way responsible for the allegedly defective drywall.  The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose."  Order & Reasons at 18-19.

So even if Plaintiffs could conceivably replead their FDUTPA claim with the particularity demanded by Rule 9(b), they have no hope of establishing the "actual damages"

---

[11]    The same would hold true if Suntree Homes had delivered a "product" – *i.e.*, a completed home – rather than providing a "service."  To recover under FDUTPA, Plaintiffs would need to establish a difference in the market value of the house as delivered, and its market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

element of their claim.  Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction."  Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc*., 886 F. Supp. 842, 851 (N.D. Fl. 1995).  Count XIV must be dismissed.

### J.    PLAINTIFFS' CLAIM FOR EQUITABLE RELIEF AND MEDICAL MONITORING (COUNT XV) CANNOT GO FORWARD.

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XV).  This catchall claim seeks, among other things, an order that Suntree Homes "buy back or rescind" its contract and "create, fund, and support a medical monitoring program."  Complaint. ¶ 903.  This claim cannot survive dismissal.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based.  Since each of Plaintiffs' substantive claims must be dismissed so too should their derivative claim for injunctive relief.  *See, e.g., Klay v. United Healthgroup, Inc*., 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support to an injunction, the Court should nevertheless dismiss the injunction claim because

Plaintiffs have failed to allege an inadequate legal remedy or irreparable harm.  Injunctions under both federal and Florida law require these elements.  *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury, (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted).  Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory and statutory damages" – are inadequate and entitle them to the extraordinary remedy of an injunction.  *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc*., 721 F.2d 525, 529 (5th Cir. 1983).

It is unclear whether Florida law permits a cause of action for "medical monitoring." The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring.  It is unclear that these Plaintiffs can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim.  At the very least, and as articulated by the Third District Court of Appeal

in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999).  The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm.  *Id*.

The Omnibus Complaint does not attempt to properly allege these elements.  Instead, Count XV sets forth a series of legal conclusions – *e.g.*, "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct" – without a shred of evidence.  Plaintiffs fail to identify, for example, any medical condition (latent or otherwise) supposedly caused by their drywall; nor do they identify a monitoring procedure for that supposed condition.  Thus, they would have this Court speculate about their imaginary ailments and the means for monitoring them.

The Omnibus Complaint does not state a claim for medical monitoring.  Rather, it states a series of legal conclusions, and those obviously "do not suffice."  *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate).  The glaring deficiencies highlighted above make the final Count subject to dismissal now, on the

33

pleadings.  *See Jacobs v. Osmose, Inc*., No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc*., 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc*., 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

Finally, the claims for medical monitoring asserted by the Contracting Plaintiffs are prohibited by the economic loss rule, as they were in direct privity with Suntree Homes.  *See* Construction Agreement (Exhibit B).  The allegedly hazardous "exposure" upon which Plaintiffs' medical monitoring claim is based was caused, according to the Omnibus Complaint, by Suntree Homes' "negligent and otherwise tortious conduct." Complaint. ¶ 907.

But the contractual privity ELR precludes the Plaintiffs from circumventing their contracts through allegations in tort.[12]

### III.   ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1404 & 1406.

In the alternative to dismissal, the Court may transfer this action to any district in which plaintiffs could have filed this action. 28 U.S.C. § 1404 provides:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

> (b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.

> (c) A district court may order any civil action to be tried at any place within the division in which it is pending.

> (d) As used in this section, the term "district court" includes the District Court of Guam, the District Court for the Northern Mariana Islands, and the District Court of the Virgin Islands, and the term "district" includes the territorial jurisdiction of each such court.

Pursuant to 28 U.S.C. § 1406(a), the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice,

---

[12]      While Plaintiffs have mechanically alleged the basic elements of a claim for medical monitoring, Suntree Homes disputes the availability of this unusual form of relief, particularly because the Omnibus Complaint does not name a single medical condition caused by the allegedly defective drywall, let alone identify a medical procedure that could monitor or treat such condition. *See Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 106 (Fla. 3d DCA 1999) (setting forth seven elements for cause of action for medical monitoring).

transfer such case to any district or division in which it could have been brought." Plaintiffs could have brought this action in the Southern District of Florida and Suntree Homes requests this honorable court transfer the action against Suntree Homes to the Southern District of Florida.

<u>CONCLUSION</u>

For the reasons set forth above this Court should dismiss Plaintiffs Omnibus Complaint against Suntree Homes or in the alternative transfer this action to the Southern District of Florida.

KREBS, FARLEY & PELLETERI, P.L.L.C.

*/s/ Charles B. Long*
CHARLES B. LONG (#22824)
THOMAS H. PEYTON (#32635)
400 Poydras Street, Suite 2500
New Orleans, Louisiana    70130
Telephone:    504-299-3570
Facsimile:    504-299-3582
E-mail:        clong@kfplaw.com
E-mail:        tpeyton@kfplaw.com

ATTORNEYS FOR DEFENDANT
SUNTREE HOMES, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of April, 2011, this document has been served on Plaintiffs' Liaison Counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller by U.S. Mail and e-mail and e-mail upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

/s/*Charles B. Long*
CHARLES B. LONG