UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| THIS DOCUMENT RELATES TO: KENNETH and BARBARA WILTZ, et al vs. BEIJING NEW BUILDING MATERIALS PUBLIC Ltd, et al Case No. 2:10-cv-361-EEF-JCW | * * * * * * | JUDGE FALLON<br><br>MAG. WILKINSON |

## AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

REBECCA F. BARIN

who, being duly sworn, upon his oath deposed and stated as follows:

1. She is the Vice President of Suntree Homes, Inc., ("Suntree Homes"), and as such, has personal knowledge of the following based on his review of records maintained by Suntree Homes in the regular course of business.

2. Suntree Homes is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Palm Beach County, Florida.

3. Suntree Homes is a home builder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes.



4. Suntree Homes has never built a residence in the State of Louisiana nor had any contracts or subcontracts with companies located in Louisiana.

5. Suntree Homes has never been licensed or registered to do business in Louisiana or ever had any offices or employees in Louisiana.

6. Suntree Homes does not have an agent for service of process in Louisiana.

7. Suntree Homes does not have any bank accounts in Louisiana or own any property in Louisiana.

8. Suntree Homes does not solicit business in Louisiana or ever transacted business in Louisiana.

9. Suntree Homes has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. Suntree Homes does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. Suntree Homes has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12. Consequently, Suntree Homes never anticipated it would be haled into court in Louisiana.

_/s/ Rebecca F. Barin_
REBECCA F. BARIN

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 10 DAY OF February, 2011.

_/s/ Kimberly A. Pirozzi_
NOTARY PUBLIC

NOTARY PUBLIC-STATE OF FLORIDA
Kimberly A. Pirozzi
Commission #DD850369
Expires: FEB. 07, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

2

# SUNTREE HOMES, INC.

## CONSTRUCTION AGREEMENT

THIS AGREEMENT made this date **July 12, 2005** by and between SunTree Homes, Inc. hereinafter referred to as Contractor, and **MICHAEL W ANDERSON** and **RENEE ANDERSON** whose address is **17276 83RD PLACE N., LOXHATCHEE, FL 33470** telephone number **561-795-7004** hereinafter referred to as Purchaser.

WITNESSETH:

Contractor and Purchaser for good and valuable consideration as hereinafter set forth, do mutually agree as follows:

**1. SCOPE OF WORK:** The contractor agrees to furnish all materials, labor, permits and services necessary to construct a single family residence on the property described in Paragraph 2 and agrees to build and construct said residence in a workmanlike manner in accordance with all applicable building codes and in full compliance with Plans and Specifications, and Selection Sheet for: House Type and Elevation **GEORGIAN "C"**

**2. REAL ESTATE:** The contractor agrees to construct said residence upon the property legally described as follows:
Lot **56** Block **0** Section **23-N** Subdivision **ACREAGE**
City of **LOXAHATCHEE** and the County of **Palm Beach** State of Florida
SunTree Homes, Inc. Inventory Lot **NO**

**3. CONVEYANCE:**
[NO] Contractor shall hold fee simple title to said real estate until closing. If Purchaser owns the above described real estate, cost such shall be conveyed to the Contractor by Warranty Deed at the time of loan approval. The Contractor agrees that upon completion of the construction and fulfillment by Purchaser of all obligations hereunder, the real estate, with improvements thereon, shall be conveyed to the Purchaser. The cost of real estate taxes shall be borne by Purchaser during construction.
[YES] Purchaser to hold title to said property (see construction pay-out addendum).

**4. METHOD OF PAYMENT:** The total purchase price for the subject real property described above, including improvements, lot and selected options, as set forth herein shall be:

| | |
|---|---|
| Basic House Cost | $ 265,831 |
| Selected Options | $ 32,250 |
| Lot Cost (Contingent on Lot Acquisition) | $ 190,000 |
| Total Purchase Price | $ 488,081 |
| Deposit Upon Execution of Contract | $ 500 |
| Additional Deposit due at Mortgage Approval or Plan Approval | $ 20,907 |
| Lot Equity Credit, if any | $ 3,000 |
| VA Funding Fee (INCLUDE IN MORTGAGE) | $ |
| Mortgage Amount | $ 463,674 |
| Cash (See Paragraph 8) | $ |
| TOTAL PURCHASE PRICE | $ 488,081 |

The extras included in the total purchase price are: (Included in Addendum "A")

**5. PERMANENT FINANCING:** If the purchase price, or any part thereof, is to be financed by a third party loan, this Contract is contingent upon the Purchaser obtaining a firm commitment for said Loan within ninety (90) days from the date hereof. Purchaser agrees to make application for, and to use reasonable diligence to obtain said commitment. Should Purchaser fail to obtain same within same time, Contractor may cancel this Contract. The amount of the commitment shall not be less than the mortgage amount shown in Paragraph 4, and shall be for an interest rate prevailing with the lending institution making the commitment at the time of closing.

a) Upon written notification that the Purchaser has executed a firm commitment for a permanent loan satisfactory to Contractor, provided that Purchaser has complied with the additional deposit required by this Contract, and further provided that the Purchaser has completed the selection sheet and has approved the plans and specifications, Contractor will: secure all required building permits; and construction will commence as soon as practicable thereafter.

b) In the event the Purchaser fails to supply all of the aforesaid items within the time provided, the Contractor shall have the option to cancel this Contract and return to Purchaser all monies paid under this Contract, less any actual expenses incurred by Contractor, in which event this Contract shall be null and void and both parties released of all further liability hereunder; or the Contractor may pursue any other rights it may have at law or equity.

c) Customer must close within 90 days or base price of home will automatically adjust to current prices.

**6. START OF CONSTRUCTION:** Having commenced construction, Contractor will complete the same as expeditiously as conditions will permit. The delivery date shall be approximately **ASAP** or **180** days after construction has commenced. Larger homes and multiple change orders will extend these times. Contractor will not be held in default by any delay caused by circumstances not within Contractor's control. Purchaser expressly agrees that Contractor will not be responsible for any loss, damage, expenses or inconvenience alleged to have been incurred or sustained by Purchaser, directly or indirectly as a result of delayed completion of the proposed improvements and delivery to Purchaser. If the dwelling aforesaid described is yet to be constructed, it is agreed and understood that the purchase price is based upon material and labor prices as well as governmental fees which are currently applicable in the industry. In the unforeseen event of natural disaster, governmental policy or code changes including the Planning Building and Zoning, Department of Environmental Protection, The Army Corps of Engineers and HRS or any other incident which will effect the cost to or time in which to complete the dwelling as described, the Contractor reserves the right to terminate the agreement or at the Purchaser's option, amend the purchase price accordingly.

**7. PERMITTING:** Contractor will begin preparing for permitting as expeditiously as possible. In the event Purchaser is unable to meet all obligations prior to construction, SunTree Homes reserves the right to retain all monies paid to Contractor for expenses incurred.

**8. CLOSING COST EXPENSE:** Contract to allow up to **$18,839** for all closing cost and discount points.
Construction interest to be paid by **CONTRACTOR** YES
                                  **PURCHASER** NO

**9. PURCHASER FINANCING:** In the event that this Contract is an all cash contract, the Purchaser agrees to deposit as

| | |
|---|---|
| 10% with SunTree Homes, Inc. prior to the start of construction | $0 |
| 25% of total sales price at time underground plumbing and monolithic slab completely installed | $0 |
| 30% of total sales price at time the structure is framed, rough wiring, rough heating/cooling, and second phase of plumbing has been completed | $0 |
| 15% of total sales price at time of insulation and drywall installed | $0 |
| 15% of total sales price at time of kitchen cabinets & bath vanities installed | $0 |
| The balance at time of completion, inspected and a certificate of occupancy issued by the governing building inspection department | $0 |

EXHIBIT B

10. **POSSESSION:** It is acknowledged by the parties hereto that Contractor and its agents are to have exclusive possession of the premises during construction, in order to minimize the risk of loss to Purchaser and to maximize performance of Contractor's employees and subcontractors. Therefore, Purchaser shall not enter the premises during such construction period, or prior to acceptance of the completed house, except with an authorized representative of Contractor. Contractor shall deliver possession of the premises at completion of the completed building in accordance with the terms of this Agreement and upon payment in full of the Contract sum. Final inspection by the Building Department or Building Inspector having jurisdiction of the construction, and acceptance by any mortgage shall be deemed completion of all improvements. Purchaser agrees not to take possession until all monies have been paid in full.

11. **HEALTH PERMITS:** Contractor is hereby authorized to take all necessary action to make application to obtain a permit from the County Health Department having jurisdiction of said property, to install a septic system on the above described real estate. *A dosing system (pump) may be required by government regulations.

12. **WELL WATER:** If the premises described herein are not served by a public water supply, Contractor shall provide Purchaser a well, including casing, pump and all required pipe so as to flow sufficient fresh water to serve the premises. PROVIDED HOWEVER, Contractor makes no warranties, expressed or implied, as to the quality of the water supply which will be provided, and specifically, said quality is not represented to be potable or otherwise suitable for drinking, nor is the quality of said water to be provided warranted, expressed or implied, to meet the limitation standards for drinking water as set forth by the United States Public Health Service, the State of Florida Department of Health and Rehabilitative Services, any County Department of Health, nor those of any other agency or branch of the United States, the State of Florida, or County have jurisdiction of said property, or any other governmental authority claiming jurisdiction over the property described herein.

13. **CHANGES AND EXTRAS:** Contractor shall have the right to substitute building materials, appliances and fixtures with others of like kind and quality and to make minor structural changes in keeping with all applicable building codes and on the basis of good design standards. Except for the right of the Contractor to make such substitution, there shall be no changes in or variations from the referenced plans, drawings, specifications and selection sheet, except as specifically provided herein.

    A. Conditions for Changes

    (1) It is Contractor's understanding that the house will be built in accordance with the plans and specifications and will incorporate all optional features selected and shown on this Contract or an addendum hereto. Any deviation must be acknowledged in writing by Contractor.

    (2) If any changes are made after plan approval which affect the price herein agreed to, Purchaser will be charged an administrative fee of $250 for each change made to cover the processing and documenting costs for such changes, in addition to any costs incurred as a result of the change requested. The cost of the change made must be paid in full at the time the change addendum is requested.

    (3) Change requests which affect only a color and which do not affect the cost of the home will be charged the same $250, per change, to cover the processing and documenting costs for such change. The cost of the change made must be paid in full at the time the change addendum is requested.

    (4) NO STRUCTURAL, PRICE OR COLOR CHANGES WILL BE CONSIDERED ONCE THE LOAN HAS BEEN APPROVED.

    (5) No changes that affect the permit will be considered once the permit application is submitted.

14. **LOT PREPARATION**

    A) Contractor will clear the lot of all small growth, such as palmettos, in an area consisting of no more than 10,000 square feet. If a larger area is desired to be cleared, such will be done on a cost bid basis by Contractor and treated as a price change request under subparagraph A above.

    B) All trees will be removed that are within ten (10') feet of the house, or are in the future driveway or walks, or in the direct path of water, sewer or septic tank area, electric lines; or in a future drainage swale at the side of the house.

Contractor reserves the right to remove any trees within the area described above, or trees which Contractor, in its sole discretion, judges would have the roots so damaged by construction that the tree could be expected to die. Contractor shall not be required to remove trees at Purchaser's convenience nor to remove trees outside the area affected by construction.

    C) The elevation of the house may necessitate that Contractor fill around trees when establishing the final grade of the lot. It is Purchaser's responsibility to remove excessive dirt from around the trees that have been graded higher than the original grade to establish a well so that the roots may continue to breathe.

    D) CONTRACTOR DOES NOT GUARANTEE THE LIFE OR GROWTH OF ANY TREE.

15. **FINAL GRADING**

Purchaser recognizes that the County Health Department and Building Department regulations dictate the elevation at which the sewer invert leaves the foundation and also the lot drainage plan; and that the Building Department having jurisdiction of the construction dictates the elevation of the finish floor elevation. Contractor shall comply with the elevations as directed. Purchaser understands that such requirements determine the height of the finish floor and driveway elevations. Contractor will provide fill and grade the pad area to comply with the elevations as established by local governing bodies. See Paragraph 15 for Contractor's allowance. Additional fill for areas outside the pad area, if required, is _not included_ unless specified in writing.

16. **FILL DIRT:**      NO     ALL THE FILL IS TO COME FROM THE ONSITE POND.
Additional dirt cost for foundation pad   $23,333   (for clearing, grading and foundation pad) Any amount above this will be paid by the Purchaser at the time of closing. A 4 foot fence may be required around pond per Palm Beach County Building Department.

17. **SOD**

Upon completion of construction with driveway and grade established, Contractor will provide and install a total of 10,000 square feet of sod. It shall be the Purchaser's responsibility to water, maintain and establish the lawn growth. CONTRACTOR DOES NOT GUARANTEE THE LIFE OR GROWTH OF THE SOD.

18. **LOT BOUNDARIES**

Purchaser will receive a copy of a survey showing the dimensions of the lot and the approximate location of the house on the lot with septic locations. Field conditions will be taken into account and locations may be adjusted accordingly, by the Contractor.

19. **TRANSFER OF TITLE OR OCCUPANCY:** The acceptance of a transfer of title to Purchaser or occupancy of any part of the property by Purchaser shall be deemed to constitute an acknowledgment of complete, unqualified, irrevocable and satisfactory performance by Contractor of the construction according to this Contract, and concurrence that any and all balances due Contractor are due and payable.

20. **CLOSING AND DELIVERY:** The closing shall be scheduled to take place within two (2) days from the date Contractor notifies Purchaser and the lending institution, in the event of financing, that the construction is completed and the Certificate of Occupancy is available.

In the event closing or final payment is delayed for any reason not attributable to the fault of Contractor, Purchaser shall pay Contractor, in addition to all other sums called for hereunder, interest upon the full purchase price due under this agreement, at the time of closing. Said interest shall be the rate of eighteen (18%) per cent per annum (or the maximum interest allowed by law, whichever is less) and shall begin to accrue as of the second day from the date Contractor notifies Purchaser of completion as provided herein.

21. **LIMITED WARRANTY:** Contractor shall provide limited warranty on construction, including workmanship and materials, for a period of one (1) year after completion, normal wear and tear and routine maintenance excepted. All appliances and equipment warranties shall be assigned from the manufacturer and inure to the benefit of Purchaser. All warranties of the Contractor shall commence as of the date two (2) days after Purchaser is notified of completion of work. PROVIDED HOWEVER, Contractor shall have no obligation whatsoever under said warranties, and shall not assign any appliance or equipment warranties, until such time as Purchaser has paid all sums due hereunder.

22. **TIME:** If the parties do not execute simultaneously, then the party who has not signed shall have 72 hours within which to sign or this Contract can be declared null and void by notification in writing to the party who has not executed the Contract. Time shall be of the essence of this Contract.

23. **ANTICIPATORY BREACH:** If Purchaser, after Contractor starts construction, without legal excuse, attempts to breach this Contract and prevent Contractor from completing construction of said house, the Contractor will be reimbursed by Purchaser for actual expenses incurred in construction of said house, and for all profits which would have naturally flowed from this Contract, in addition to any legal fees incurred in order to collect same.

24. **LAW GOVERNING:** This Contract shall be construed in accordance with the laws of the State of Florida and the Standards for Real Estate Transactions shall apply. Notices required under this Contract shall be furnished to the parties at their respective addresses.

25. **PROHIBITION AGAINST RECORDING:** Neither this Contract, nor any notice thereof, shall be recorded into the public records of any county.

26. **DEFAULT - LIQUIDATED DAMAGES:** All monies paid to the Contractor pursuant to this Contract will be applied to the purchase price at the time the same is closed except that in the event the Purchaser fails or refuses to pay the balance of the purchase prices as provided herein, such balance shall draw interest at the rate of eighteen (18%) per cent per annum (or the maximum interest allowed by law, whichever is less), from the date of Purchaser's failure to pay and any or all monies previously paid by Purchaser may be retained by the Contractor and applied to said interest charge, which application shall in no way prejudice the rights of the Contractor to sue for additional damages incurred. In the event of Purchaser's default hereunder, Contractor shall have option to terminate this Contract and retain all monies previously paid by Purchaser as its liquidated damages upon five (5) days written notice to Purchaser, or Contractor may sue for damages or pursue any other legal remedy it may have.

27. **UNUSUAL FORMATIONS:** The Contractor reserves the right to cancel this Contract and refund all monies in the event geological or physical conditions make it impractical to construct the type house selected on the site selected within normal anticipated construction costs.

28. **NOTICE:**

A) The Purchaser of a one or two family residential dwelling unit has the right to have all deposit funds (up to ten (10%) per cent of the price) deposited in an interest bearing escrow account. This right may be waived in writing by the Purchaser, and, the Purchaser by execution of this Contract, hereby waives the foregoing statutory provision.

B) "RADON GAS: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit."

29. **ENTIRE AGREEMENT:** It is further understood by and between the parties hereto that this Contract, including the plans containing the specifications, selection sheet, and any addendum to the Contract which have been signed by the parties, contain all terms and conditions agreed upon between the parties, there being no oral conditions, representations, warranties or other agreements made by Contractor or any agent of the Contractor not contained herein. Any subsequent conditions, representations, warranties or agreements shall not be valid and binding upon the parties hereto unless made in writing and signed by both Purchaser and Contractor. Any representations made by any Realtor, or by any agent of any Realtor, is in no way binding on the Contractor.

The said parties for themselves, their heirs, executors, administrator, successors and assigns, do hereby agree to the full performance of the covenants herein contained by this Contract.

THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT.

WITNESSES:

X _____ MICHAEL W. ANDERSON

X _____ RENEE ANDERSON

Executed by Purchaser on July 12, 2005

By _____ SunTree Homes, Inc.

Executed by Contractor on the _____ day of _____, 20___

DEPOSIT(S) UNDER CONTRACT RECEIVED:

**SunTree Homes, Inc.**
2777 Forest Hill Boulevard Suite 1501
Wellington, FL 33414
561-795-4141

## CONSTRUCTION PAY-OUT AGREEMENT

To:   Construction Loan Department

**YES**  SunTree Homes will pay interest up to _____$13,092_____ which is included in the agreement. Customer responsible for any additional interest.

**NO**  Customer to pay all Construction Interest.

**YES**  Customer responsible for Builder's Risk and Liability Insurance. The Builder's Risk Insurance MUST include theft. If theft is not included in policy, buyer will be responsible for theft during construction. Buyer may elect to go through SunTree Homes Builders Risk Policy, where theft is covered ( call 795-4141 ext. 30 for details ).

The owner (s) hereby authorize the lending institution to make a minimum 10% construction loan draw to SunTree Homes, or receive total down payment, which ever is greater, at closing for permits, architectural drawings, survey, impact fees, etc. Also all construction loan draw checks payable to SunTree Homes; after each phase of completion and a favorable inspection by the lending institution.

The following items to be complete prior to disbursement of the final draw:
a.) Final Inspection by the Lender
b.) Subterranean Termite Control Guarantee
c.) Final Survey (As Built)
d.) Copy of the Certificate of Occupancy

July 12, 2005
DATE                                    X _____
                                          MICHAEL W ANDERSON

July 12, 2005
DATE                                    X _____
                                          RENEE ANDERSON

7/8/05
DATE                                    _____
                                          SunTree Homes, Inc.