# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO:**
**ALL CASES AND**

*Silva, et al. v. Interior Exterior Building Supply, LP, et al.*
**Case No. 09-08030 (E.D. La.)**

*Silva, et al. v. Arch Insurance Company, et al.*
**Case No. 09-08034 (E.D. La.)**

*Payton, et al. v. Knauf Gips, KG, et al.*
**Case No. 09-07628 (E.D. La.)**

*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*
**Case No. 2:10-cv-00361 (E.D. La.)**

*Gross, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:09-cv-6690 (E.D. La.)**

*Rogers, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:10-cv-00362 (E.D. La.)**

*Amato, et al. v. Liberty Mutual Ins. Co.*
**Case No. 2:10-cv-00932 (E.D. La.)**

*Kenneth Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*
**Case No. 2:11-080 (E.D. La)**

*Daniel Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 2:11-252 (E.D. La.)**

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR AN ORDER:**
**(1) PRELIMINARILY APPROVING INEX SETTLEMENT AGREEMENT;**
**(2) CONDITIONALLY CERTIFYING INEX SETTLEMENT CLASS; (3) ISSUING**
**CLASS NOTICE; AND (4) SCHEDULING A SETTLEMENT FAIRNESS HEARING**

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      The Chinese Drywall Castastrophe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.      Chinese Drywall Multidistrict Litigation Proceedings . . . . . . . . . . . . . . . . . . . . . 6

        C.      The KPT Pilot Settlement Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        D.      InEx's Involvement in Chinese Drywall Litigation . . . . . . . . . . . . . . . . . . . . . . . 13

        E.      Reasons for the InEx Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        A.      The InEx Settlement Is in the Best Interest of the Class . . . . . . . . . . . . . . . . . . . 15

        B.      The Requirements of Rule 23 Have Been Met For Conditional
                Certification of the Settlement Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                1.      Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                2.      Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                3.      Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

                4.      Adequacy of Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

                5.      Common Questions of Law and Fact Predominate . . . . . . . . . . . . . . . . 23

        C.      The Proposed Form and Method of Class Notice Is Adequate and
                Satisfies the Requirement of Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

        D.      The Court Should Preliminarily Approve the InEx Settlement and
                Conditionally Certify the Settlement Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        E.      Proposed Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**EXHIBITS**

Exhibit "A"          Settlement Agreement Regarding Claims Against Interior-Exterior in
                     MDL 2047 dated April 25, 2011, with Exhibits

Exhibit "B"          Preliminary Approval Order

Exhibit "C"          Notice of Pendency and Proposed Settlement of InEx Class Action

Exhibit "D"          Summary Notice of InEx Class Action Settlement

This Memorandum of Law[1] is submitted by proposed Settlement Class Counsel, the Court-appointed Plaintiffs' Steering Committee ("PSC"), Counsel for Interior/Exterior Building Supply, L.P. ("InEx"), and Counsel for InEx's insurers, Arch Insurance Company and Liberty Mutual Fire Insurance Company (together, the "Insurers"), in support of their Joint Motion for Preliminary Approval of the InEx Settlement and Conditional Certification of an InEx Settlement Class brought pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3) and 23(e). The Settling Parties seek entry of an Order[2] finding preliminarily that: (1) the InEx Settlement is fair, reasonable and adequate; (2) the requirements for conditionally certifying an InEx Settlement Class under Rule 23(a) and Rule 23(b)(3) have been met; and (3) notifying the Class Members of the terms of the Settlement and of their rights in connection therewith is warranted.

In addition, the Settling Parties respectfully request that the Court: (1) approve the form of Class notice described in the Notice of Pendency and Proposed Settlement of InEx Class Action[3]; (2) approve the form of the Summary Notice of InEx Class Action Settlement[4]; (3) schedule a fairness hearing to determine whether the InEx Settlement should be given final approval ("Settlement Fairness Hearing"); and (4) establish dates for the dissemination of the Class notice, the submission of requests for exclusion from and objections to the Settlement and other relevant deadlines.

---

[1] Capitalized terms used in this memorandum shall have the same meaning as those defined in the Settlement Agreement Regarding Claims Against Interior-Exterior in MDL 2047 dated April 25, 2011 (the "InEx Settlement"), attached hereto as Exhibit "A."

[2] The "Preliminary Approval Order" is attached hereto as Exhibit "B."

[3] The Class Notice is attached hereto as Exhibit "C."

[4] The Summary Notice is attached hereto as Exhibit "D."

## I.    INTRODUCTION

The proposed Settlement now before the Court for preliminary approval provides for the tender of all remaining primary insurance available to InEx.  This encompasses an aggregate cash payment of eight million dollars ($8,000,000) minus payments made in prior Chinese Drywall settlements with InEx[5] and minus the costs of Notice advanced by the Insurers.  The InEx Settlement provides that Pending Settlements, entered into but not paid prior to the Execution Date of the Agreement, will be paid out of and credited against the Settlement Fund.[6]

This Settlement Fund is for the benefit of a nationwide Class consisting of all persons or entities with claims against the Settling Defendants[7] arising from Chinese Drywall sold, marketed, distributed and/or supplied by InEx.[8]  The Settlement creates two subclasses:  (1) for

---

[5] All previous bona fide Chinese Drywall settlements of claims against InEx and/or the Insurers entered into and paid prior to the Execution Date of the InEx Settlement Agreement ("Prior Settlements") will be deducted from the insurance proceeds that the Insurers deposit into the InEx Settlement Fund. The amounts paid for each Prior Settlement claim are listed on Exhibit 1.23 to the InEx Settlement Agreement.

[6] Pending Settlements are listed on Exhibit 1.21 to the InEx Settlement Agreement.

[7] The Settling Defendants are InEx, Arch, Liberty and the "Downstream InEx Releasees" (including, but not limited to, those listed on Exhibit 1.10 to the InEx Settlement Agreement), except that any Builder listed on Exhibit 1.10 is not a Settling Defendant.  The Settling Defendants are not permitted to make a claim under the Settlement Fund.

[8] The Settlement defines Chinese Drywall as "any and all drywall products sold, marketed, distributed and/or supplied by InEx and which are alleged to be defective, and which were manufactured, in whole or in part, in China, or that include components manufactured, in whole or in part, in China, including, but not limited to, drywall manufactured by (i) Knauf Gips KG; Knauf Plasterboard (Tianjin) Co., Ltd.; Knauf Plasterboard (Wuhu), Co., Ltd.; Knauf Plasterboard (Dongguan) Co., Ltd.; Knauf International GmbH; Knauf Insulation GmbH; Knauf AMF GmbH & Co. KG; Knauf do Brasil Ltda., Gebr.; Knauf Verwaltungsgesellschaft; P.T. Knauf Gypsum Indonesia (collectively, "Knauf") and (ii) Taishan Gypsum Co., Ltd. f/k/a/ Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard Co., Ltd.; Pingyi Zhongxin Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co., Ltd.; Crescent City Gypsum, Inc.; Beijing New Building Materials Public Ltd., Co. ("BNBM"); and any other manufacturer of Chinese drywall, whether reactive or not."  Settlement Agreement at Paragraph 1.7.

members of the Class with claims arising from or related to "Affected Property," *i.e.*, any real or personal property, residential or commercial, containing Chinese Drywall sold, marketed, distributed and/or supplied by InEx, located in Louisiana (the "Louisiana Subclass"), and (2) for members of the Class with claims arising from or related to Affected Property located in states other than Louisiana (the "Non-Louisiana Subclass"). As part of the global Settlement, InEx has assigned to the Non-Louisiana Subclass its rights and claims for $72 million of excess insurance and for damages for bad faith or extra-contractual conduct against InEx's Excess Insurance Carrier, The North River Insurance Company ("North River"). Also, the Settlement reserves the rights of the Louisiana Subclass to pursue a claim against North River to the extent of the Available Policy Limits of the Excess Policies.

The above-captioned lawsuits, *Silva, et al. v. Interior Exterior Building Supply, LP, et al.*, Civ. Action No. 09-08030 (E.D. La.), and *Silva, et al. v. Arch Insurance Company, et al.*, Civ. Action No. 09-08034 (E.D. La.), are putative class actions brought on behalf of Louisiana homeowners in the United States whose homes and other properties contain defective Chinese Drywall that was supplied by InEx. On March 11, 2011, the PSC filed a substituted motion for class certification in these actions (Rec. Doc. No. 8125).

Proposed Settlement Class Counsel and the PSC believe that the global InEx Settlement before this Court is in the best interests of the Class in view of a variety of factors, including the estimated damages suffered by the Class, as well as both the complexity of and risks attendant to Plaintiffs' demonstration that those damages were causally linked to InEx's alleged wrongdoing, and the delays inherent in litigating thousands of individual claims against InEx. This Settlement was negotiated at arm's length over a period of months, with oversight by the Court.

The parties accordingly respectfully submit that the InEx Settlement is fair, reasonable and adequate under the governing standards for evaluating class action settlements in the Fifth Circuit.  Moreover, certification of the proposed Class is appropriate pursuant to FED. R. CIV. P. 23, and the proposed notice program satisfies the requirements of due process.  Indeed, the individual and summary forms of notice are consistent with the forms of notice used and routinely recognized as satisfying due process in class actions.  As set forth below, all prerequisites for preliminary approval of the InEx Settlement and conditional certification of the proposed Class have been met, and the movants respectfully submit that their Joint Motion for Preliminary Approval of the Settlement should be granted.

## II.   BACKGROUND

### A.   The Chinese Drywall Catastrophe

In the aftermath of Hurricanes Katrina and Rita in 2005, this country faced a critical shortage of drywall for the reconstruction of homes and other structures damaged by the storms. Beginning in the fall of 2005 and continuing through 2008, hundreds of millions of square feet of Chinese drywall were exported to the United States, sold to distributors and suppliers, resold to builders and installers, and installed in thousands of properties domestically, but primarily in Florida, Louisiana, Alabama, Mississippi, Texas and Virginia.[9]

"Sometime after installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses and the corrosion of appliances and certain other components of their homes.  Some homeowners also began to complain of headaches, nosebleeds, difficulty

---

[9]  The Gypsum Association reports that 300 million square feet of Chinese drywall were imported from 2006-2007.  *See* Fire, Casualty and Surety Bulletin (The National Underwriter Co. Mar. 1, 2010) at 3.  Knauf acknowledges in its manufacturer profile form that it exported 5,286,015 square meters (or 56,898,192 square feet) of board to the U.S. between 2005 and 2006.

4

breathing and other physical afflictions believed to be caused by the Chinese drywall."[10]  Given

the widespread use of Chinese drywall in home construction between 2005 and 2007, the

magnitude of problems associated with the drywall spans much of the country.  The public

outcry demanded that federal and state agencies investigate the problem and weigh in on the

subject.

Numerous governmental agencies studied the Chinese drywall and found it to be

defective.[11]  When Chinese drywall is installed in certain structures and climates, it creates

corrosive environments that wreak havoc on homes and other properties by producing noxious,

foul-smelling odors and damaging electrical and other parts of the structures, appliances and

home furnishings.[12]  According to the Remediation Guidance of the Department of Housing and

Urban Development ("HUD") and the U.S. Consumer Product Safety Commission ("CPSC"),

the necessary repair of properties impacted by Chinese drywall requires that all possible

problematic drywall, fire safety alarm devices, electrical distribution components (including

receptacles, switches and circuit breakers), gas service piping and fire suppression sprinkler

systems be removed and replaced.[13]  In these MDL proceedings, following evidentiary hearings

on the proper scope of remediation of property containing Chinese drywall, this Court issued

---

[10]  Order appointing Special Master (Rec. Doc. No. 505) at 1.

[11]  INEX, Arch and Liberty dispute that all Chinese Drywall is defective and causes damage.

[12]  Findings of Fact and Conclusions of Law in *In re Chinese Manufactured Drywall Prods. Liab. Litig.* (*Germano*), 2010 WL 1445684, *5-*7 (E.D. La. Apr. 8, 2011); Findings of Fact and Conclusions of Law in *In re Chinese Manufactured Drywall Prods. Liab. Litig.* (*Hernandez*), 2010 WL 1710434, *8-*9 (E.D. La. Apr. 27, 2010).

[13]  *See* CPSC's Remediation Guidance for Homes with Corrosion from Problem Drywall as of March 18, 2011.

findings of fact and conclusions of law holding that all electrical wiring in property impacted by Chinese drywall must be removed as well.[14]

### B.    Chinese Drywall Multidistrict Litigation Proceedings

The impetus for this complex multidistrict litigation began when scores of individual and class action lawsuits were brought in several federal district courts in the Gulf Coast and mid-Atlantic regions of the United States by property owners whose homes and other properties were damaged by defective Chinese drywall.  Plaintiffs sued the manufacturers of the Chinese drywall as well as homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, and distributors that were involved with Chinese drywall.[15]  "Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation" by the Judicial Panel on Multidistrict Litigation.[16]

On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from defective Chinese drywall to the United States District Court for the Eastern District of Louisiana for coordinated and consolidated pretrial proceedings in MDL 2047 pursuant to 28 U.S.C. § 1407.[17]  Since the formation of this MDL more than 22 months ago, thousands of claimants have participated in the PSC's omnibus class action complaints. The Court has held regular monthly status conferences attended by hundreds of counsel and it

---

[14]  *See Germano* Findings of Fact; *Hernandez* Findings of Fact; Transcript of Proceedings, 3/23/2011, at 18:4 - 19:14.

[15]  *Hernandez* Findings of Fact, 2010 WL 1710434 at *1.

[16]  *Id.*

[17]  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009) (Rec. Doc. No. 1).

has entered 24 separate Pretrial Orders, many with subparts, as well as scores of other orders and

minute entries.[18]  To date, more than 8,600 entries have been recorded on the docket in this case.

This Court has worked tirelessly to manage the nationwide litigation of Chinese drywall

claims.  The Court's efforts have included the coordination and oversight of pretrial discovery

and motion practice for thousands of individual cases as well as the Omni Complaint class

actions filed in the MDL.[19]  In the myriad of lawsuits filed before this Court in this Chinese

drywall litigation, dozens of motions have been filed by the parties on a variety of issues,

including motions for class certification in *Germano*, *Payton* (Knauf), and *Payton/Vickers*, and

motions for Florida and/or Louisiana Homeowners classes for damages and/or declaratory

relief,[20] numerous motions to intervene, motions for default judgment, motions to dismiss for

lack of personal jurisdiction, motions for summary judgment, and a motion to establish a

Plaintiffs' litigation expense fund.[21]

For purposes of coordination, consistency and global treatment of Chinese drywall

---

[18]  *E.g.*, Minute Entry dated 12/2/2010 (Rec. Doc. No. 6525).

[19]  *See, e.g.*, *Payton, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.) (Omnibus I, I(A), I(B), I(C)) (involving claims against the Knauf Defendants); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Case No. 2:10-cv-00361 (E.D. La.) (Omnibus II, II(A), II(B), II(C)) (involving claims against non-Knauf manufacturers such as Taishan and BNBM); *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-6690 (E.D. La.) (original complaint, Omnibus III, III(A)) (asserting alternative liability theory against all known manufacturers for drywall that cannot be traced to a particular manufacturer); *Rogers, et al. v. Knauf Gips, KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.) (Omnibus IV, IV(A), IV(B), IV(C)) (involving claims against the Knauf Defendants); *Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D. La.) (Omnibus V); *Kenneth Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 2:11-080 (E.D. La); *Daniel Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 2:11-252 (E.D. La.).

[20]  Rec. Doc. Nos. 3293 (*Germano*), 5567 (*Silva*), 5611 (*Vickers/Payton*), 5612 (*Payton*), 8125 (*Silva*), 8195 (*Vickers/Payton*), 8197 (*Payton*).

[21]  *See* 12/2/2010 Minute Entry at 23-25.

claims, the Court has consulted with numerous state court judges and other federal judges also overseeing Chinese drywall litigation, including the Honorable Joseph Farina from the 11th Judicial Circuit Court of Florida, the Honorable J. Scott Vowell from the 10th Judicial Circuit Court of Alabama, the Honorable Mary Jane Hall from the 4th Judicial Circuit Court of Virginia, and the Honorable Mark Davis from the United States District Court for the Eastern District of Virginia.[22]  In coordination with these jurists, this MDL Court has strived to achieve finality in the resolution of this litigation.[23]

In order to accomplish its goals, the Court appointed the PSC and a Plaintiffs' Liaison Counsel ("PLC") to prepare and respond to pleadings and motions, engage in discovery, pretrial preparation, trial and settlement of cases, manage the MDL docket, establish and administer a document depository, communicate with individual Plaintiffs and their counsel, liaison with Defendants and attend court status conferences and hearings.[24]  The Court also appointed a Defendants' Liaison Counsel[25] and a Homebuilders and Installers Liaison Counsel[26] to assist in these efforts.  In November, 2009, the Court appointed a Special Master "to explore opportunities for an ultimate resolution of the instant matter as to any and all interested parties," recognizing that "some or all parties [we]re interested in exploring a global resolution of the

---

[22]  *E.g.*, Transcript of Proceedings, 10/14/10, at 2:17-3:17 (comments of J. Fallon praising "the help of state court judges":  "I've counted on their wisdom, on their suggestions in trying to gather all of the cases and move them forward."); Transcript of Proceedings, 3/23/2011, at 7:5-17.

[23]  Transcript of Proceedings, 3/23/2011, at 7:19-25.

[24]  *See* Pretrial Order No. 3 (appointing Plaintiffs' Liaison Counsel, Russ Herman); Pretrial Order No. 8 (creating the PSC and appointing Lead Counsel for Plaintiffs, Arnold Levin).

[25]  *See* Pretrial Order No. 4 (appointing Defendants' Liaison Counsel).

[26]  *See* Pretrial Order No. 18 (appointing Homebuilders and Installers Liaison Counsel).

matter as it affect[ed] them at th[at] stage of the proceeding."[27]  In March, 2010, the Court appointed State and Federal Coordination Committees "to assist the Court, litigants and judicial system to facilitate coordination between this MDL and the various state court cases."[28]  And, the Court appointed an Insurer Steering Committee as well as Co-Lead Counsel for the First-Party Insurer Subcommittee.[29]

Through the vehicle of "Omni" complaints, the Court has assisted the parties in bringing all interested and affected entities into the Chinese drywall litigation in a consistent, fair and judicious manner.[30]  Intervention Omni complaints have been filed on behalf of thousands of Plaintiffs suing more than thousands of Defendants, including foreign Chinese drywall manufacturers Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd.[31] ("Taishan"), BNBM and related entities, China National Building Materials Co., Ltd. and related entities, and various Knauf entities, as well as numerous importers, builders, suppliers and installers of Chinese drywall, their insurers and other Defendants.[32]  Absent the Omni complaints, few individual Plaintiffs, if any, would have been able to perfect service of process under the Hague

---

[27] Rec. Doc. No. 505 at 4.

[28] *See* Pretrial Order No. 19 (appointing a Plaintiffs' State/Federal Coordination Committee and a Defendants' State/Federal Committee).

[29] *See* Pretrial Order No. 20 (appointing Insurer Steering Committee and Co-Lead Counsel for the First-Party Insurer Subcommittee).

[30] *See* Tr. Status Conf., June 24, 2010, at 4-5 (recognizing that Omni complaints serve as a vehicle to "effectively and efficiently" serve more than 500 Defendants and to evaluate the "whole census").

[31] On September 10, 2007, Shandong Taihe Dongxin Co., Ltd., which was a subsidiary company controlled by BNBM, changed its name to Taishan Gypsum Co., Ltd.

[32] *See* fn. 19, *supra*.

Convention on the foreign manufacturers of the Chinese drywall installed in their properties. The costs of translation of the complaints and service on these foreign Defendants exceeds $100,000 for each complaint in the litigation. These Omni pleadings are intended to close the circle of liability by engaging the insurers and the financiers of the Defendants directly in this litigation. These efforts have aggregated the "mass" in this mass tort, which is contributing to resolve this litigation on a global basis.

In the spring of 2010, the Court resolved ten bellwether cases in Virginia and Louisiana.[33] After considering the testimony of experts in the fields of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, and failure analysis concerning the effects of having Chinese drywall installed in Plaintiffs' homes, this Court made numerous findings of fact regarding the appropriate scope of remediation. The Court found that Chinese drywall "has to be remediated" since "by any recognized standard, high levels of corrosive gases are present in the representative homes. This condition is clearly irritating and harmful to residents and destructive to property."[34] These bellwether trials have served as a useful tool for all litigants involved in Chinese drywall litigation, as well as the Court.[35] In *Germano*, for example, the

---

[33] *See Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 09-6687 (E.D. Va.) (7 cases), Default Judgment (May 11, 2010) (Rec. Doc. No. 3013); *Hernandez v. Knauf Gips, KG, et al.*, CA 09-6050 (E.D. La.) (1 case), Judgment (May 11, 2010) (Rec. Doc. No. 3). Two additional bellwether cases, *Campbell v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.), were settled on the eve of trial on June 18, 2010.

[34] *Germano* Findings of Fact, 2010 WL 1445684 at *12.

[35] *See* Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict Litigation," 82 TUL. L. REV. 2323 (Jun. 2008) (concluding that the use of a bellwether trial is "one of the most innovative and useful techniques for the resolution of complex cases"); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar.... The reasons for acceptance by bench and bar are apparent. If a representative group of claimants are tried to verdict, the results of such trials

Court ruled that the average cost to remediate a home in Virginia is $86 per square foot.[36]  In *Hernandez*, the Court awarded Plaintiffs in Louisiana what amounted to $81 per square foot for remediation costs, plus other alternative living expenses and personal property damages.[37]  An additional bellwether jury trial is scheduled to take place in July, 2011 against InEx if this Settlement is not consummated.[38]

In addition to these trial accomplishments, the PSC is presently engaged in widespread jurisdictional discovery of those foreign Defendants that have challenged this Court's power to adjudicate claims against them resulting from the Chinese drywall they produced, promoted, imported, marketed, distributed and/or sold in this country.  Substantive discovery is ongoing with respect to the foreign Defendants as well as other Defendants, including, but not limited to, the Banner entities and L&W Supply Corporation, d/b/a Seacoast Supply Corporation.  The PSC has served extensive written discovery on all of the Defendants, reviewed tens of thousands of documents, taken depositions of myriad officers of the Knauf companies and the Taishan companies in Hong Kong, Germany, the United Kingdom and elsewhere.  The PSC has also taken discovery of other Defendants in various cities throughout the United States.  As a result of these painstaking efforts, the PSC has laid the foundation to establish liability and jurisdiction over these Defendants; however, numerous motions to dismiss for lack of personal jurisdiction remain pending.

---

can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts.").

[36] *Germano* Findings of Fact, 2010 WL 1445684 at *28.

[37] *Hernandez* Findings of Fact at *3, *24.

[38] Minute Entry dated 2/8/2011 (Rec. Doc. No. 7352).

C.      **The KPT Pilot Settlement Program**

Following the bellwether trials, in October, 2010, the PSC reached an agreement with Chinese drywall manufacturer Knauf Plasterboard (Tianjin) Co. Ltd. ("KPT") and other Knauf entities for the remediation of homes containing KPT drywall.[39]  Pursuant to this settlement, known as the "Demonstration Remediation of Homes Agreement" or the "KPT pilot program," the remediation of homes with KPT Chinese drywall has proceeded in conformance with this Court's previous rulings set forth in the *Hernandez* trial.[40]  In addition to the KPT entities, a number of suppliers, including InEx, the Insurers and other Defendants are participating in this settlement.[41]  It is expected "that possibly 2,000 to 3,000 [additional] homes ... could be eligible" for the remediation program.[42]

It is the intention of the Settling Parties herein that subject to Court approval and on an individual basis, a Class Member with a home being remediated by Knauf as part of the KPT Pilot Settlement Program may have an appropriate portion of the Settlement funds provided to Knauf to defray the cost of remediation.

The Settling Parties are seeking the appointment of a Special Master to assist the Court in the development of a fair and reasonable Plan of Allocation of the InEx settlement proceeds based on objective criteria.  As set forth in the Notice, all Class Members will be provided an opportunity to comment on and/or object to said Plan.  The Court will entertain interventions for

---

[39]  This agreement has been posted to the Court's website at http://www.laed.uscourts.gov/Drywall/DemonstrationRemediationAgreement.pdf.

[40]  *See Hernandez* Findings of Fact; Transcript of Proceedings, 10/14/10, at 4:16-20.

[41]  Transcript of Proceedings, 10/14/10, at 5:3-5.

[42]  *Id*. at 7:1-3.

the purpose of determining allocation.  The Plan will allocate the settlement funds for the

remediation and/or reimbursement of costs spent to remediate Plaintiffs' homes and other

Affected Properties, based on the types of Chinese Drywall installed therein.  Upon approval of

the Settlement following a duly noticed Fairness Hearing, it is anticipated that Class Members

will be sent a Proof of Claim form on which to provide proof and identity of Chinese Drywall in

their properties and/or costs spent to remediate same.

> **D.**      **InEx's Involvement in Chinese Drywall Litigation**

In late 2005 and in July, 2006, InEx purchased more than 478,000 pieces of Chinese

Drywall manufactured by Defendant Knauf.  In May, 2006, InEx purchased 33,000 pieces of

Chinese Drywall manufactured by Defendant Taishan.  InEx sold this drywall to developers,

subsuppliers, builders and installers in multiple states, including, but not necessarily limited to,

Alabama, Louisiana, Mississippi and Texas.  In the Litigation, the PSC contended that at about

the time that InEx purchased and sold this drywall, multiple news reports, articles and stories, as

well as multiple government recalls and warnings notified Americans that there were problems

with various contaminated, tainted and/or defective Chinese products which were imported into

the United States.  The PSC claimed that InEx did not inspect or test the Chinese Drywall it

purchased prior to supplying it to others for building construction in the United States.  The PSC

also claimed that by January, 2006, InEx began to state on some of its invoices that no Chinese

Drywall was to be delivered to its customers.

Many homeowners have contended that they were forced to leave their residence due to

the foul odors emitted from the Chinese Drywall and the corrosive effects the drywall had on all

metal components in the home, including HVAC systems, electrical wiring, alarm systems,

plumbing, electronics, appliances, utensils, hardware, mirrors and other home furnishings. Thousands of actions have been filed against InEx in state and federal courts throughout the country as well as in this MDL.

InEx has denied liability for its activities involving any sales, marketing, distribution or supply of Chinese Drywall. InEx has lodged and continues to lodge a number of defenses in the Litigation and contends, *inter alia*, that Plaintiffs will be unable to prove that InEx's sale and distribution of Chinese Drywall caused bodily injury. InEx contends that it was a "good faith" seller of the Chinese Drywall.

The proposed InEx Settlement will prevent the dissipation of InEx's insurance and eliminate the risks and further delay of litigation.

### E.    Reasons for the InEx Settlement

The Settlement amount of $8,000,000 represents all of the remaining primary insurance available to InEx. An assignment of rights to pursue $72 million of excess insurance proceeds from the company's excess insurance carrier will be made for the benefit of the Non-Louisiana Subclass. And, the Settlement reserves the rights of the Louisiana Subclass to pursue a claim against that excess carrier to the extent of the Available Policy Limits of the Excess Policies. This is a significant recovery for Plaintiffs in light of, among other things, the procedural posture of the litigation, the range of estimates of damages to the Settlement Class, the amount of available insurance and other relevant factors regarding InEx's financial condition to meet the claims at issue in this Chinese Drywall litigation, and all of the material factual information revealed during discovery and settlement negotiations.

Although proposed Settlement Class Counsel and the PSC believe in the merits of the

14

case against InEx and in their ability to prevail, the parties recognize that Plaintiffs would face serious obstacles to establishing both liability and damages should the cases proceed to trial.  For instance, InEx was prepared to, and would, strenuously argue that Plaintiffs could not establish causation for bodily injury damages, which would materially reduce the potential range of damages.  Moreover, if the cases against InEx were to proceed to trial, Defendants would likely appeal any judgment favorable to the Class, imposing a significant additional delay on the payment of any recovery to individual Class Members, not to mention a drain on the limited resources available for any recovery to Class Members.

The parties respectfully request that this motion be granted not only because, as will be set forth herein, public policy favors the settlement of complex class actions such as this, but because the InEx Settlement is an excellent result for the Settlement Class.  It is fair, reasonable and adequate, and was negotiated at arm's length with oversight from the Court.  In light of the foregoing, it is respectfully requested that the Court enter an Order preliminarily approving the InEx Settlement and conditionally certifying the Settlement Class.

## III.    ARGUMENT

### A.    The InEx Settlement Is in the Best Interest of the Class.

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a class action.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Evans v. Jeff D.*, 475 U.S. 717, 727-28 (1986).  In determining whether to approve the InEx Settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of complex class action lawsuits.  *See*, *e.g.*, *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d

830, 843 (E.D. La. 2007) (Fallon, J.); *Braud v. Transport Service Co. of Illinois*, 2010 WL

3283398, *3 (E.D. La. Aug. 17, 2010) (Knowles, Mag. J.).[43]  This is, in part, because of the

complexity and size of class actions:

> Particularly in class action suits, there is an overriding public
> interest in favor of settlement [...] it is common knowledge that
> class action suits have a well deserved reputation as being most
> complex. The requirement that counsel for the class be
> experienced attests to the complexity of the class action [...] In
> these days of increasing congestion within the federal court
> system, settlements contribute greatly to the efficient utilization of
> our scarce judicial resources.

*Cotton*, 559 F.2d at 1331, *citing*, *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826

(5th Cir. 1975); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also*

*Murphy Oil*, 472 F. Supp. 2d at 843 ("The public interest favoring settlement is especially

apparent in the class action context where claims are complex [... and] could lead to years of

protracted litigation and sky-rocketing expenses.").

In addition:

> Complex litigation - like the instant case - can occupy a court's
> docket for years on end, depleting the resources of the parties and
> the taxpayers while rendering meaningful relief increasingly
> evasive.  Accordingly, the Federal Rules of Civil Procedure
> authorize district courts to facilitate settlements in all types of
> litigation, not just class actions [...] Although class action
> settlements require court approval, such approval is committed to
> the sound discretion of the trial court.

*In re United States Oil & Gas Litig.*, 967 F.2d 489, 493-94 (11th Cir. 1992), *citing*, FED. R. CIV.

P. 16(a), (c), 23(e); *Bennett v. Behring*, 737 F.2d 982, 987 (11th Cir. 1984); *Cotton*, 559 F.2d at

---

[43] "Federal Courts look with great favor upon the voluntary resolution of litigation through settlement... This rule has particular force regarding class action lawsuits." *Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980).

16

1331).  The courts have recognized that certification of a class for settlement purposes is

beneficial in resolving major class action disputes.  *See*, *e.g.*, *In re Corrugated Container*

*Antitrust Litig.*, 643 F.2d 195, 207-10 (5ᵗʰ Cir. 1981); *In re Beef Indus. Antitrust Litig.*, 607 F.2d

167, 173-77 (5ᵗʰ Cir. 1976).

The first step in determining whether to grant preliminary approval to a class settlement

is for "the Court [to] make[] a preliminary fairness evaluation of the proposed settlement."  *Cope*

*v. Duggins*, 2001 WL 333102, *1 (E.D. La. Apr. 4, 2001) (Fallon, J.), *citing*, MANUAL FOR

COMPLEX LITIGATION (THIRD) § 30.41 (1995).  The Court must "evaluate the likelihood that the

Court would approve the settlement during its second review stage, the full fairness hearing."  *Id*.

In so doing, "the Court will examine the submitted materials and determine whether the

proposed settlement appears fair on its face."  *Id*.; *see Corrugated Container*, 643 F.2d at 212.

At the preliminary stage, the Court's review is less stringent.  *See*, *e.g.*, *In re OCA, Inc.*

*Sec. and Der. Litig.*, 2008 WL 4681369, *11 (E.D. La. Oct. 17, 2008) ("As this motion is for

*preliminary* approval of a class action settlement, the standards are not as stringent as those

applied to a motion for final approval."); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y.

2007); MANUEL FOR COMPLEX LITIGATION (FOURTH), § 21.63 (2004) ("At the stage of

preliminary approval, the questions are simpler, and the court is not expected to, and probably

should not, engage in analysis as rigorous as is appropriate for final approval.").

As set forth above, the Settling Parties arrived at an agreement in principal during arm's

length negotiations, with oversight by the Court.  This settlement was subsequently

memorialized in the InEx Settlement Agreement, submitted herewith.  The Court may presume,

therefore, that the proposed Settlement is fair and reasonable, as it is the result of arm's length

negotiations.  *See Camp v. The Progressive Group*, 2004 WL 2149079, *7 (E.D. La. Sept. 23, 2004).  The InEx Settlement Agreement contains the material economic terms of the Settlement, the manner and form of notice to be given to the Settlement Class, the contingencies or conditions to the Settlement's final approval, and other terms.  The precise allocation of the InEx insurance proceeds will be determined by the Court at a future date following the Fairness Hearing based on objective criteria and an opportunity for Class Members to present proofs of claim.

The PSC possessed adequate information concerning the strengths and weaknesses of the litigation against InEx after extensive document discovery, briefing on Defendants' motions to dismiss and for summary judgment, briefing on the PSC's motion for partial summary judgment, and the exchange of information during negotiation sessions, including information concerning damage calculations.  In addition, proposed Settlement Class Counsel, the Court-appointed PSC, its individual counsel members, and the PLC are highly competent counsel, all with many years of experience litigating complex class action and multidistrict cases.  Finally, as explained above, the complexity, expense, uncertainty, and likely duration of the litigation also militate in favor of consummating the settlement process.  Therefore, proposed Class Counsel, the PSC, InEx and the Insurers respectfully submit that all of the above-cited circumstances support preliminary approval of the InEx Settlement.

> **B.**     **The Requirements of Rule 23 Have Been Met For Conditional Certification of the Settlement Class.**

For purposes of conditionally certifying the Rule 23(b)(3) Settlement Class sought by the Settling parties, The MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 advises that "[i]f the case is presented for both class certification and settlement approval, the certification hearing

and preliminary fairness evaluation can usually be combined.  The judge should make a

preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at

least one of the subsections of Rule 23(b)."  *See id.* at § 21.22.  Further, "[i]f there is a need for

subclasses, the judge must define them and appoint counsel to represent them.  The judge must

make a preliminary determination on the fairness, reasonableness, and adequacy of the

settlement terms and must direct the preparation of notice of the certification, proposed

settlement, and date of the final fairness hearing."  *Id.* at § 21.632.  This comports with the

Supreme Court's holding in *Amchem*, 521 U.S. at 619-20, that "[s]ettlement is relevant to a class

certification," but the requirements of Rule 23(a) and 23(b)(3) must still be met.  *Id.* at 620.

However, when a court is "[c]onfronted with a request for settlement-only class certification, a

district court need not inquire whether the case, if tried, would present intractable management

problems."  *Id.*

      In this case, all of the requirements for Rule 23(a) have been met.  Rule 23(a) requires

that:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are

questions of law or fact common to the class; (3) the claims or defenses of the representative

parties are typical of the claims or defenses of the class; and (4) the representative parties will

fairly and adequately protect the interests of the class.

      Rule 23(b)(3) requires that "questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."  As

determined by *Amchem*, the issue of class management is not relevant for purposes of certifying

the Settlement Class.

### 1.      Numerosity

Thousands of Plaintiffs have filed suit against InEx alleging damages sustained as a result of InEx's involvement in the distribution of defective Chinese Drywall for installation in Plaintiffs' homes and other properties.  InEx has admitted it purchased more than 500,000 pieces of Chinese Drywall for distribution in this country.  Under these circumstances, the numerosity factor specified in Rule 23(a)(1) is satisfied.  *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978) (a class consisting of 1,000 members "clearly satisfies the numerosity requirement"); *see* William B. Rubenstein, Alba Conte, and Herbert B. Newberg, 1 NEWBERG ON CLASS ACTIONS, § 3:3 (4ᵗʰ ed. 2010) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

### 2.      Commonality

The commonality requirement of Rule 23(a)(2) is easily met in this case.  The Judicial Panel on Multidistrict Litigation ordered that these actions be consolidated in this MDL based on "the commonality of facts in the various cases."[44]  Questions surrounding InEx's role in purchasing Chinese Drywall from Defendants Knauf and Taishan, the effects of Chinese Drywall on Class Members and the damages caused by Chinese Drywall are issues common to all Plaintiffs, satisfying this element of Rule 23(a).  *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and they "turn on questions of law applicable in the same manner to each member of the class."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9ᵗʰ Cir. 1998) ("The

---

[44] *Hernandez* Findings of Fact, 2010 WL 1710434 at *1.

existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); 1 NEWBERG ON CLASS ACTIONS § 3:1 ("Convenience, uniformity of decision, and judicial economy are achieved through the class action device by litigating common issues only once on behalf of all class members.").

### 3.   Typicality

The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." 1 NEWBERG ON CLASS ACTIONS § 3:13, *quoting*, *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986).  In other words, courts must determine "whether other [Class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct."  *Id.*, *quoting*, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).  The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members.  *See*, *e.g.*, *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156-57 (1982).  The typicality requirement has been liberally construed by the federal courts.  *See*, *e.g.*, *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Each of the Plaintiffs in this case is seeking money from InEx for the costs of remediation of defective Chinese Drywall that InEx distributed and sold in the United States.

21

"The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class."  1 NEWBERG ON CLASS ACTIONS § 3:13. Proposed Louisiana Subclass representatives Dean and Dawn Amato, Byron and Debra Byrne, Donald and Marcelyn Puig, and Edward and Susan Beckendorf are homeowners who have asserted claims against InEx for damages arising from Chinese Drywall installed in Affected Properties located in the state of Louisiana.  Proposed Non-Louisiana Subclass representatives Danny and Celeste O'Keefe are homeowners who have brought claims against InEx for damages arising from Chinese Drywall installed in Affected Property located in Mississippi.  The claims of the Class Representatives are typical of the absent Class Members in that all Plaintiffs are seeking to hold InEx liable for its role in the Chinese Drywall debacle and receive appropriate damages for the costs of remediating Affected Properties and other damages.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that the named class representatives "not possess interests which are antagonistic to the interests of the class."  1 NEWBERG ON CLASS ACTIONS § 3:21.  Second, the named class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id.*; *Amchem*, 521 U.S. at 625-26 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citation and quotations omitted).  At this preliminary stage of the approval process, there is nothing to suggest that this requirement has not been met.  The named representatives are members of the class and subclass they seek to represent, and they do not possess any interests antagonistic to that class with respect to their claims against InEx.  Moreover, proposed Class Counsel and Subclass Counsel are members of the PSC, which was appointed by this

Court after an application process to represent all Plaintiffs in the MDL, based on the attorneys'
vast experience in class actions and multidistrict litigation. The PSC conducted these class
negotiations with InEx at arm's length, and will fairly and adequately represent the Class.
*Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).

### 5.    Common Questions of Law and Fact Predominate

For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks
whether a class suit for the unitary adjudication of common issues is economical and efficient in
the context of all the issues in the suit." 1 NEWBERG ON CLASS ACTIONS § 4:25; *see also
Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed
classes are sufficiently cohesive to warrant adjudication by representation"). In this case it
makes eminent good sense to resolve the claims against InEx in this forum through the class
action device. The issues of InEx's liability for the sale and distribution of Chinese Drywall in
this country predominate over any individual issues involving the Plaintiffs. A class settlement
will prevent the dissipation of InEx's insurance proceeds and insure that all available funds are
allocated equitably among those with claims against the company stemming from defective
Chinese Drywall.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action
device be superior to other methods of adjudication. Factors the Court may consider include:

(A) the interest of members of the class in individually controlling the prosecution
or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already
commenced by or against members of the class;

23

(C) the desirability or undesirability of concentrating the litigation of the claims

in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.[45]

FED. R. CIV. P. 23(b)(3)(A)-(D).  Given the various suits already commenced against InEx in

federal and state courts, and the limited availability of remaining insurance proceeds, approval of

the InEx Settlement and resolution of all Chinese Drywall claims against InEx in this forum

benefits all parties.

### C.   The Proposed Form and Method of Class Notice Is Adequate and Satisfies the Requirement of Rule 23.

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class

action settlement, the district court "must direct notice in a reasonable manner to all class

members who would be bound by the proposal."  In addition, for classes certified under Rule

23(b)(3), courts must ensure that class members receive "the best notice that is practicable under

the circumstances, including individual notice to all members who can be identified by

reasonable effort."  FED. R. CIV. P. 23(c)(2)(B).  Courts have held that "[t]he Due Process Clause

also gives unnamed class members the right to notice of the settlement of a class action."  *OCA*,

2008 WL 4681369 at *15, *citing*, *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008); *DeJulius*

*v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005).

The law requires that Class notice must be "reasonably calculated, under all of the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections."  *DeJulius*, 429 F.3d at 944, *quoting*, *Mullane v. Cent.*

---

[45]  As stated earlier, any difficulties of management of this Class need not be considered. *Amchem*, 521 U.S. at 620.

*Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); *OCA*, 2008 WL 4681369 at *15.  For all

Class members "whose names and addresses may be ascertained through reasonable effort,"

individual notice must be sent.  *Eisen v. Carlisle & Jacqueline*, 471 U.S. 156, 173 (1974);

*Amchem*, 521 U.S. at 617; *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088,

1097 (5th Cir. 1977).

In accordance with these legal parameters, the Court should approve the form and content

of the proposed Notice of Pendency of and Proposed Class Action InEx Settlement ("Notice")[46]

and the Summary Notice of InEx Class Action Settlement ("Summary Notice").[47]  Each form of

notice is written in plain and straightforward language consistent with Rules 23(c)(2)(B) and

23(e)(1).  The Notice objectively and neutrally apprises all Class Members of the nature of the

action, the definition of the Class and Subclasses sought to be certified for purposes of the

Settlement, the Class claims and issues, that Class Members may enter an appearance before the

Court at the Settlement Fairness Hearing (in accordance with the procedures set forth in the

Notice), that the Court will exclude from the Class any Class Member who requests exclusion

(and sets forth the procedures and deadlines for doing so), and the binding effect of a class

judgment on Class Members under Rule 23(c)(3)(B).  The Notice additionally discloses the date,

time and location of the Settlement Fairness Hearing and the procedures and deadlines for the

submission of objections to any aspect of the Settlement, including the request for attorneys'

fees.[48]  These disclosures are complete and should be approved by the Court.  *See*, *e.g.*, *In re*

---

[46]  Attached hereto as Exhibit "C."

[47]  Attached hereto as Exhibit "D."

[48]  The Settlement provides that the PSC, common benefit attorneys and privately retained counsel for Class Members may petition the Court for an award of attorneys' fees constituting, in the

*Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000).

　　　The parties have agreed to use the traditional methods for notifying Class Members: notification by mail to all known Class Members and by publication.  The Agreement provides that upon the entry of the Preliminary Approval Order, proposed Settlement Class Counsel will cause the Notice to be mailed to the last known address of all persons and entities (and their counsel) who can be identified through Plaintiff Profile Forms and InEx's invoices from 2006 and 2007 as:  (i) a Plaintiff in one of the *Silva* actions; (ii) a Plaintiff in an Omni complaint; (iii) a Plaintiff in a Related Action (including, but not limited to, those listed in Exhibit 1.25 to the Settlement Agreement); and/or (iv) a claimant with Chinese Drywall claims against InEx.  In addition, the Summary Notice will be published once in *USA Today*, as well as regional newspapers and a supplement to *Parade* with circulation in Louisiana, Alabama, Mississippi and Texas.  The Summary Notice will also be published on the Internet so that it will appear nationally across a wide range of sites, as set forth in paragraph 6.1.1.2. of the InEx Settlement. The Settling Parties are requesting that the InEx Settlement be posted on the District Court's Chinese Drywall MDL website, the CPSC website, and the Department of Health websites for Alabama, Louisiana, Mississippi and Texas, and at other relevant public places.

　　　Notice by mail and publication satisfies the requirements of due process.  *See OCA*, 2008 WL 4681369 at *16 ("direct mailing of notice, along with publication of Summary Notice in print and on the web, is reasonably calculated to apprise class members of the settlement"); *In re Prudential-Bache Energy Income P'ship Sec. Litig.*, 1995 WL 20613, *5 (E.D. La. Jan. 6, 1995)

---

aggregate, no more than 32% of the InEx Settlement fund, plus reimbursement of reasonable expenses. The Court will determine the allocation of said fees and reimbursement of reasonable costs.

(First class mail and publishing notice complied with fundamental due process rights as "'notice reasonably calculated, under all circumstances, to apprise interested parties.'"); *Schwartz v. TXU Corp.*, 2005 WL 3148350, *41 (N.D. Tex. Nov. 8, 2005) (same).

Upon notification of the Settlement, Class Members have three choices:  (1) approve the Settlement, maintain the right to comment on and/or object to the Plan of Allocation at an appropriate juncture, and share in the Settlement proceeds by submitting a Proof of Claim; (2) exclude themselves from the Settlement by "opting out" of the Class, in which case they will not participate in the Settlement recovery and will retain their individual claims against InEx; or (3) object to the Settlement, in which case they will nonetheless remain Class Members.

To participate in the Settlement, Class Members need do nothing at this time.   Class Members who wish to exclude themselves from the Settlement must submit a timely request for exclusion.  Class Members who wish to object to the Settlement must file and serve a notice of their intention to appear and object.  Objectors can submit a memorandum of law in opposition to the Settlement and can appear before the Court at the Settlement Fairness Hearing.

The proposed notice program fulfills the requirements of due process and Rule 23, and should be approved by the Court.  *See In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35-36 (D.N.H. 2006) (approving notice program that distributed notice packets to individual investors and nominees and published summary notice in national newspaper and wire services); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210-11 (S.D.N.Y. 1995) (Sending notice by first class mail is the "best notice practicable," and publication in a major newspaper "will have the broadest reach to inform those members of the Class who, for some reason, may not receive the mailed Notice."); *cf. New England Health Care Employees Pension Fund v. Fruit of*

*the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (granting final approval of settlement where notice had been mailed to class members and summary notice was published in the relevant journal).

### D.   The Court Should Preliminarily Approve the InEx Settlement and Conditionally Certify the Settlement Class.

Determining the fairness of the InEx Settlement is left to the sound discretion of the Court, and an appellate court will not overturn the Court's decision absent a clear showing of abuse of that discretion. *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982), *citing*, *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977), *citing*, *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971); *see also In re U.S. Oil*, 694 F.2d at 493-94. The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller*, 559 F.2d at 428, *quoting*, *Pearson v. Ecological Sci. Corp.*, 559 F.2d 171, 176 (5th Cir. 1975). Settlements of class actions are "particularly favored" and are not to be lightly rejected. *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331; *Turner*, 472 F. Supp. 2d at 843. In the case of class actions, the Fifth Circuit has held that "there is an overriding public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331; *accord Van Bronkhorst*, 529 F.2d at 950.

Moreover, it is widely recognized that courts should exercise restraint in examining a proposed settlement and should not "make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest

28

hopes." *Cotton*, 559 F.2d at 1330.  In other words, in weighing the benefits obtained by settlement against benefits dependent on the likelihood of recovery on the merits, courts are not expected to balance the scales.  *See id.*  The very object of a compromise "is to avoid the determination of sharply contested and dubious issues."  *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

In addition, a court should not engage in a trial on the merits when considering the propriety of a settlement:

> It cannot be overstated that neither the trial court in approving the settlement nor [the appellate court] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.

*Cotton*, 559 F.2d at 1330, *quoting*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2nd Cir. 1974); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *see also Murphy Oil*, 472 F. Supp. 2d at 843 ("The Court may not resolve contested issues of fact or law, but instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as compared to the alternative of litigation.").  The trial court is not required to decide the merits of the action or substitute a different view of the merits for that of the parties or counsel.  *Maher*, 714 F.2d at 455 ("In other words, in determining the fairness, reasonableness, and adequacy of a proposed settlement, neither the district court nor the appellate court on review, should reach ultimate conclusions on the issues of fact and law underlying the dispute.").

Where, as here, experienced counsel representing many interested parties have extensively negotiated the Settlement at arm's length, a strong initial presumption is created that the compromise is fair and reasonable.  *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).  The Fifth Circuit has recognized that courts must rely to a large degree on the

judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. GMC*, 703 F.2d 170, 175 (5th Cir. 1983).  Thus, if experienced counsel determine that a settlement is in the class's best interests, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978); *see also OCA*, 2008 WL 4681369 at *11 (Where there is "no reason to doubt [the] fairness" of the settlement and it "appears to fall within the range of possible approval, the court should grant preliminary approval."); *In re Train Derailment Near Amite Louisiana on October 12, 2002*, 2006 WL 644494, *1 (E.D. La. Jan. 27, 2006) (granting preliminary approval of class settlement negotiated at arm's length and without collusion, where the compromise bore "a probable, reasonable relationship to the claims and exposure and to the risks presented in the litigation" and was "within the possible range of judicial approval").

Moreover, the Court is not required at this point to make a determination as to whether the settlement should be finally approved.  As stated in the MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632:  "First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation."  Generally, "this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."  *Id*.  Although non-binding, the preliminary approval establishes "an initial presumption of fairness."  *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995); *Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, *2 (N.D. Cal. Oct.15, 2009); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.25.

The InEx Settlement before the Court is the product of extensive arm's length negotiations between counsel for the Settling Parties, which culminated in a preliminary

agreement.  The parties negotiated the terms of the InEx Settlement in detail, and the parties each made concessions and won positions on difficult issues.  Therefore, the Settlement should be preliminarily approved.

At the Settlement Fairness Hearing, any Class Members who have timely filed and served a notice of intention to appear may voice any objections.  The Court can then consider the merits of the Settlement in light of any objections and determine whether to grant final approval of the Settlement.  At the Fairness Hearing, the Settling Parties will have submitted briefs and other documents in support of the Settlement.  If the Court finds the InEx Settlement to be fair and reasonable, the Court should enter a Final Judgment and Order of Dismissal with Prejudice, dismissing this action with prejudice as to the Settling Defendants and effecting a release of all claims against the Settling Defendants as provided for in the Settlement Agreement.

### E.      Proposed Schedule

The Settling Parties suggest the following schedule leading to the Settlement Fairness Hearing.  Blanks for the actual dates are provided in the proposed Preliminary Approval Order submitted herewith:

| Event | Day |
| --- | --- |
| Preliminary Approval Order ("PAO") Signed | 1 |
| Mail Notice (PAO ¶ 14) | On or before 10 days from entry of PAO |
| Publish Summary Notice (PAO ¶ 15) | On or before 10 days from entry of PAO |
| Opt-Outs/Objections (PAO ¶¶ 17 & 18) | 70 days from entry of PAO |
| Fairness Hearing (PAO ¶ 19) | 115 days from entry of PAO |

IV.     **CONCLUSION**

The Settling Parties respectfully request that this Court find preliminarily that the InEx

Settlement is fair, reasonable and adequate, and that notification to Class Members of the terms

of the Settlement and their rights in connection with the Settlement is warranted.  The moving

parties seek entry of an Order:  (1) preliminarily approving the Settlement; (2) conditionally

certifying the Settlement Class as set forth in the Preliminary Approval Order; (3) approving the

form of Notice to the Settlement class; and (4) scheduling the Settlement Fairness Hearing.

Respectfully submitted,


Dated: April 26, 2011                          /s/ Russ M. Herman_____
                                               Russ M. Herman, Esquire (Bar No. 6819)
                                               Leonard A. Davis, Esquire (Bar No. 14190)
                                               Stephen J. Herman, Esquire (Bar No. 23129)
                                               HERMAN, HERMAN, KATZ & COTLAR, LLP
                                               820 O'Keefe Avenue
                                               New Orleans, Louisiana 70113
                                               Phone: (504) 581-4892
                                               Fax: (504) 561-6024
                                               LDavis@hhkc.com
                                               *Plaintiffs' Liaison Counsel in MDL 2047*

                                               Arnold Levin (On the Brief)
                                               Fred S. Longer (On the Brief)
                                               Sandra L. Duggan (On the Brief)
                                               Matthew C. Gaughan (On the Brief)
                                               LEVIN, FISHBEIN, SEDRAN & BERMAN
                                               510 Walnut Street, Suite 500
                                               Philadelphia, PA 19106
                                               Phone: (215) 592-1500
                                               Fax: (215) 592-4663
                                               Alevin@lfsblaw.com
                                               *Plaintiffs' Lead Counsel in MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com
Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
 MATTHEWS, MARTINEZ, GONZALES,
 KALBAC & KANE
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
 ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
 & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

33

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Daniel K. Bryson
LEWIS & ROBERTS
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Christopher Seeger
SEEGER WEISS, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Richard J. Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@alterslaw.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

### PROPOSED CLASS COUNSEL

| | |
|---|---|
| Arnold Levin | Russ M. Herman, Esquire (Bar No. 6819) |
| LEVIN, FISHBEIN, SEDRAN & BERMAN | HERMAN, HERMAN, KATZ & COTLAR, LLP |
| 510 Walnut Street, Suite 500 | 820 O'Keefe Avenue |
| Philadelphia, PA 19106 | New Orleans, Louisiana 70113 |
| Phone: (215) 592-1500 | Phone: (504) 581-4892 |
| Fax: (215) 592-4663 | Fax: (504) 561-6024 |
| Alevin@lfsblaw.com | Rherman@hhkc.com |

### PROPOSED SUBCLASS COUNSEL

| | |
|---|---|
| Gerald E. Meunier | James Robert Reeves |
| GAINSBURGH, BENJAMIN, DAVID, MEUNIER | LUMPKIN & REEVES |
| & WARSHAUER, LLC | 160 Main Street |
| 2800 Energy Centre, 1100 Poydras Street | Biloxi, MS 39530 |
| New Orleans, LA 70163-2800 | Phone: (228) 374-5151 |
| Phone: (504) 522-2304 | Fax: (228) 374-6630 |
| Fax: (504) 528-9973 | jrr@lumpkinreeves.com |
| gmeunier@gainsben.com | *Proposed Non-Louisiana Subclass Counsel* |
| *Proposed Louisiana Subclass Counsel* | |

### INEX

Richard G. Duplantier
GALLOWAY JOHNSON TOMKINS BURR AND SMITH
701 Poydras Street, 40th Floor
New Orleans, LA  70139
Phone: (504) 525-6802
Fax: (504) 525-2456
rduplantier@gjtbs.com

**INSURERS**

Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Barrasso Usdin Kupperman
  Freeman & Sarver, LLC
909 Poydras Street, 24th Floor
New Orleans, LA  70112
Phone: (504) 589-9700
Fax: (504) 589-9701
jbarrasso@barrassousdin.com
mpipes@barrassousdin.com
*Counsel for Liberty Mutual Fire Insurance
Company*

D. Russell Holwadel
Adams, Hoefer, Holwadel & Eldridge
400 Poydras Street, Suite 2450
New Orleans, LA  70130
Phone: (504) 581-2606
Fax: (504) 525-1488
DRH@ahhelaw.com
*Counsel for Arch Insurance Company*

36

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Memorandum of Law in Support of Joint Motion for an Order: (1) Preliminarily Approving Inex Settlement Agreement; (2) Conditionally Certifying Inex Settlement Class; (3) Issuing Class Notice; and (4) Scheduling a Settlement Fairness Hearing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 26th day of April,  2011.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel MDL 2047*
*Co-counsel for Plaintiffs*

37