# EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

KENNETH ABEL, individually, and on
behalf of all others similarly situated, *et al.*

           Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. f/k/a
SHANDONG TAIHE DONGXIN CO., LTD.;
TAIAN TAISHAN PLASTERBOARD CO.,
LTD.; QINHUANGDAO TAISHAN BUILDING
MATERIALS CO., LTD. a/k/a QINHUANG
DAO TAISHAN BUILDING MATERIALS CO.,
LTD., *et al.*

           Defendants.

_____/

CASE NO. 11-080

SECT. L MAG. 2
CLASS ACTION
COMPLAINT

## BREAKWATER CUSTOM HOMES INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS WITH PREJUDICE THE CLAIMS BROUGHT AGAINST IT IN THE ABEL OMNIBUS CLASS ACTION COMPLAINT (OMNI VII)

Defendant Breakwater Custom Homes, Inc. ("Breakwater"), hereby submits this Memorandum of Law in Support of its Motion to Dismiss with Prejudice the Claims Brought by Plaintiffs Robert and Joanne Santimauro ("Plaintiffs" or the "Santimauros") in the Abel Omnibus Class Action Complaint (Omni VII).[1]

## I. ARGUMENT

### A.    The Governing Legal Standard.

A motion to dismiss under Rule 12(b)(6) should be granted if the allegations in the

_____

[1]    This Memorandum refers to the terms defined in and exhibits attached to Breakwater's accompanying Motion to Dismiss.

Complaint, even if assumed to be true, would not entitle the plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007). Plaintiffs' obligation "to provide the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions." *Id.* at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

**B.   Each of Plaintiffs' Causes of Action Against Breakwater Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted**

**1.   Plaintiffs' tort claims (Counts I, II, III, XI, XII, and XIV) are barred in whole or in part by the economic loss rule.**

Florida law applies the economic loss rule (or "ELR") in two contexts: "(1) The contractual privity ELR where two parties are in privity of contract, and (2) the products liability ELR where a defective product causes damage, but only to itself." MDL No. 2047 Order & Reasons, at 22 (Jan. 13, 2010).[2] The latter application of the ELR – often referred to as the "products ELR" – applies here because the Santimauros are the *second*-purchasers of their home (*see* Motion to Dismiss at 2 & Exh. A), and are thus not in privity of contract with Breakwater. The products ELR precludes them from suing Breakwater in tort for purely "economic" losses. Economic losses are losses connected to the Property itself – including damage to the drywall, HVAC equipment, wires, pipes, coils, vents, and other structural elements. *See, e.g., Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993).

Florida case law confirms the application of the products ELR in this context. In *Casa Clara*, the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties. *See id.*

---

[2]   The Court's January 13, 2010 "Order & Reasons," *In re Chinese Drywall Prods. Liab. Litig.*, 680 F. Supp. 2d 780, 794-95 (E.D. La. 2010), applies by its terms to all drywall MDL cases pending before the Court, including this one.

at 1248.  The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages.  *Id.* at 1247.  Because the plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier.  *Id.* at 1246-48.

More recently, in a case directly on point, a Florida circuit held that the products ELR barred a tort claim based on allegedly defective drywall.  In *Henderson v. Douglas B. Francis*, Case No. 09-CA-001280 (Fla. 20th Jud. Cir., Sept. 9, 2009), the court followed the reasoning in *Casa Clara*, and granted a defendant-subcontractor's motion to dismiss the plaintiff-homeowners' drywall-related negligence claim based on the products ELR to the extent the claim sought economic losses.  *See* Order ¶ 1 (part of **Exhibit D** to Motion to Dismiss) ("Plaintiffs shall not be entitled to pursue damages … including, but not limited to, portions of the HVAC system and copper wiring throughout the subject residence."); *accord Casa Clara*, 620 So. 2d at 1246-48.  As a matter of law, then, the Santimauros must re-plead their tort claims to seek only non-economic losses.  *Cf.* Cmplt. ¶ 918 (seeking "damages" on negligence count).[3]

### 2.   Plaintiffs' negligence allegations (Count I) cannot state a claim.

The negligence claim (Cmplt. ¶¶ 911-25) is irreparably flawed.  The Omnibus Complaint alleges that Breakwater somehow owed the Santimauros a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question.  *id.* ¶ 912.  The Complaint further alleges that Breakwater had a duty to provide Plaintiffs with certain warnings

---

[3]      Plaintiffs' claims for economic losses also fail because they have suffered no such losses. This Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed."  MDL No. 2047 Order & Reasons at 19-20

about the drywall.  *Id.* ¶ 915.  Even assuming the truth of these obviously specious allegations, they fail to state a claim for relief.

The most fundamental problem with Plaintiffs' negligence theory is that, as a matter of law, Breakwater did not owe them a duty in negligence.   The March 18, 2011 omnibus order in *Bennett v. Centerline Homes, Inc. et al.*, No. 502009-CA-014458 (Fla. 15th Jud. Cir.) (part of **Exh. D** to Motion to Dismiss), explains why this is so.  *Bennett* is a consolidated state court action that, like this one, pits homeowners with defective drywall claims against homebuilders. Just as the Santimauros are attempting to do here, the homeowners in *Bennett* attempted to assert a negligence claim based on their builders' purported failure to protect them from a latent defect – namely, hazardous "Chinese manufactured" drywall.  The issue of whether the builders owed a duty in negligence was, the court held, "a question of law."  Omnibus Order, pg. 1.

In what appears to be a case of first impression in Florida, the court in *Bennett* ruled that the homebuilders **did not have a duty** "to inspect, test or warn" the plaintiffs about the allegedly defective drywall in their homes.  The court explained that where, as here, the purported defect is "latent," the law imposes no such duties "unless the product is inherently dangerous."  *Id.* at 2; *see O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim as manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous.").  Because even *defective* drywall does not fit into the narrow "inherently dangerous" category, the builders had no duty to inspect the drywall, to test it, or to warn the plaintiffs about it.  *Bennett*, Omnibus Order, pg. 2.[4]  **The only**

---

[4]    "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category.   They include highly toxic materials, second hand guns and drugs…. In other words … a commodity burdened with a latent danger which derives from the

way for the negligence claims to survive, the court held, was for the homeowners to allege "in good faith" that the builders had "actual or implied notice" of the alleged drywall defects. *Id.*; *see Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez*, 738 F. Supp. at 483-84.

Because the purported drywall defects at issue in this case were indisputably latent (*see, e.g.*, Cmplt. ¶ 940), Plaintiffs' negligence claim cannot survive because they cannot allege – in good faith – that Breakwater had "actual or implied notice" of the defects. The boilerplate and unsupportable assertion that Breakwater "knew or should have known" that the drywall would "harm" the Santimauros (*id.* ¶ 917) is a bare legal conclusion that cannot state a claim for relief, particularly one premised on a negligence theory that files in the face of basic Florida law. *See Bennett*, Omnibus Order, pg. 2 (requiring more specific allegations); *Ashcroft*, 129 S.Ct. at 1949.

### 3.     Plaintiffs have not stated a claim for negligence per se (Count II).

Aside from being intercepted by the products ELR, Plaintiffs' negligence per se claim (Cmplt. ¶¶ 919-25) is poised for dismissal because the Omnibus Complaint does not set forth the essential elements of that tort. Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

The Santimauros have not stated a claim for negligence per se. First, they have not

---

very nature of the article itself." *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted). By way of example, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are <u>not</u> "inherently dangerous."

identified a statute that Breakwater allegedly violated, much less explained how that violation occurred. Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes" and "furnished the drywall in violation of ASTMC C 1396/C 1396M-069." Cmplt. ¶ 922. The Complaint does not even attempt to allege *which* building codes Breakwater violated or how Breakwater violated them. Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the pleading stage. *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that Breakwater allegedly violated are "designed to protect the <u>general</u> <u>public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). In other words, the negligence per se claim appears to be nothing more than a repackaged negligence claim. It should be summarily dismissed for that reason as well.

### 4.    Plaintiffs cannot sue Breakwater in strict liability (Count III).

Plaintiffs' strict liability claim (Count III) is premised on the patently false assertion that Breakwater – a builder – was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." Cmplt. ¶ 927.

Even assuming that fabricated statement is true, the strict liability theory is nonetheless foreclosed by the products ELR and by at least two other established principles of Florida law. Each principle was cited as an independent basis for dismissing a strict liability claim brought against a homebuilder in *Bennett v. Centerline Homes Inc*., No. 50 2009-CA-014458 (Fla. 15th Jud. Cir., Nov. 15, 2010) (part of **Exh. D** to Motion to Dismiss). There, the same Florida circuit

court that later rejected the plaintiffs' negligence theory (*see* supra) ruled that **(1)** "only manufactures, and those in the distributive chain of a product, can be held strictly liable" for allegedly defective drywall; and **(2)** drywall is not subject to strict liability because it is considered an improvement to real property, not a "product." *See id.*, Order pgs. 7-9. Each rationale applies here and each is fatal to Plaintiffs' strict liability claim.

First, Breakwater cannot be strictly liable to the Santimauros because Breakwater obviously did not manufacture or distribute the drywall in question. The Complaint itself identifies Breakwater as a "Developer/Builder." Cmplt., pg. 182 (Subclass #76). It is firmly settled – and *Bennett* confirms – that strict products liability is reserved for manufacturers and others in the chain of distribution, not homebuilders. *See, e.g., Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291-92 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Second, it has long been held that strict product liability **does not apply** to "structural improvements" to real estate, such as a home, as a home is not considered a product.[5] Drywall is a "structural improvement" to real property because it is an *integral part* of Plaintiffs' home. "Florida courts have expressly declined to extend the principle of strict liability to structural

---

[5]   *See Federal Ins. Co. v. Bonded Lighting Prot. Sys., Inc.*, No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (dismissing strict liability claim based on lighting system because system was structural improvement to real estate); *see also Virgilio v. Ryland Group, Inc.*, 695 F. Supp. 2d 1276, 1283 n.11 (M.D. Fla. 2010) (explaining that "a home is not a product" for purposes of strict products liability, and citing authorities); *see generally Porter v. Rosenberg*, 650 So. 2d 79 (Fla. 4th DCA 1995).

improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc*. No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added); *see Plaza v. Fisher Dev., Inc*., 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007) (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water & Waste, Inc*., 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

     **5.**     **Plaintiffs cannot maintain a warranty claim (Counts IV & VI)**.

In Count IV (Breach of Express and/or Implied Warranties) and Count VI (Breach of Implied Warranty of Habitability), the Santimauros attempt to allege causes of action based on various express and implied warranties.[6] Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties – let alone explain how Breakwater might have breached them – these improvised warranty claims should be dismissed for several independently sufficient reasons.

     a.     *Plaintiffs cannot maintain a warranty claim of any kind because they were not in privity of contract with Breakwater.*

Plaintiffs' lack of privity with Breakwater dooms any warranty claim they might assert. It is axiomatic that a plaintiff suing in warranty "must be in privity of contract with the defendant." *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005); *Cruz v. Mylan, Inc*., No. 8:09-CV-1106-T17-EAJ, 2010 WL 598688, *2 (M.D. Fla. Feb. 17, 2010) (same). The Santimauros, however, never contracted with Breakwater; they acquired their home from a third

---

[6]     The Omnibus Complaint also includes a claim for "redhibition" on behalf of "Louisiana Plaintiffs" (Count IX), but Plaintiffs do not reside in Louisiana. *See* Cmplt. ¶ 465. Moreover, redhibition requires a showing that the allegedly defective product – here, drywall – failed for its intended purpose. *See Benoit v. Ryan Chevrolet*, 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). This theory is conclusively barred by this Court's prior determination that the drywall is "serving its intended structural purpose." MDL No. 2047 Order & Reasons, at 23.

party.  *See* Motion to Dismiss at 2; *T.W.M. v. Am. Med. Systems, Inc.*, 886 F. Supp. 842, 844

(N.D. Fla. 1995) (explaining concept of privity).  Without a showing of contractual privity with

Breakwater, Plaintiffs' express and implied warranty claims cannot survive.[7]   *See, e.g.,*

*Borchardt v. Mako Marine Intern., Inc.*, No. 08-61199-CIV, 2009 WL 3856678, *4 (S.D. Fla.

Nov. 17 2009) (dismissing warranty claims where there was "no allegation … to establish that

there [was] privity of contract").

> b.   *In any event, Plaintiffs cannot maintain a claim for breach of warranty of*
>       *merchantability or of fitness for a particular purpose.*

There are two more reasons to dismiss Plaintiffs' implied warranty claims.  First, as a

matter of settled Florida law, the implied warranties of merchantability and of fitness for a

particular purpose do not apply to Breakwater's work.  Breakwater was a contractor, and the

implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to

an owner, because a contractor is viewed as a provider of <u>services</u>, not a merchant." *Lonnie D.*

*Adams Bldg. Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998)

(emphasis added).   The drywall product was incidental and subordinate to the construction

services Breakwater rendered.  *See In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy.

M.D. Fla. 1999) ("[A]lthough construction contracts . . . typically involve materials that qualify

as goods (such as concrete or roofing tiles, for example), the services element of such contracts is

---

[7]   The Omnibus Complaint asserts – without a shred of detail – that the Santimauros (along with every other plaintiff in this lawsuit) "were in privity" with Breakwater or were "foreseeable third party beneficiaries of any warranty." Cmplt. ¶ 945.  These are classic unsupported legal conclusions that this Circuit has long classified as inadequate to survive a motion to dismiss.  *See Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (reaffirming that Fifth Circuit does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" in resolving Rule 12(b)(6) challenges) (internal marks and citation omitted); *see also Fed. Ins. Co. v. Bonded Lightning Protection Sys., Inc.*, No. 07-80767-CIV, 2008 WL 5111260, *7 (S.D. Fla. Dec. 3, 2008) (dismissing third-party-beneficiary claim where complaint failed to allege that contracting parties intended contract to benefit third party).

usually held to be dominant.") (internal marks omitted); *Jackson*, 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986) (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Second, Plaintiffs' implied warranty of fitness claim fails because they do not allege that their drywall was unfit for a <u>particular</u> purpose – that is, "a particular or unusual use different from the purpose for which the item sold is ordinarily used." *Fred's Excavating & Crane Serv., Inc. v. Cont. Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976). "Florida courts have determined that in order to state a cause of action for [breach of] an implied warranty of fitness for a 'particular purpose' ... a plaintiff [must] allege the 'particular' purpose for which the goods were warranted as opposed to 'ordinary use' under a warranty of merchantability." *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (quoting *Weiss v. PPG Indus., Inc.*, 138 F.R.D. 289, 293 (M.D. Fla. 1993)) (dismissing warranty of fitness claim where plaintiff did not allege "the 'particular purpose' for which the motor home was not fit"); *see Fred's Excavating*, 340 So. 2d at 1220 (upholding dismissal of warranty of fitness claim for same reason). Plaintiffs' implied warranty of fitness claim must be dismissed because they cannot make this indispensable allegation.[8]

### 6.  Plaintiffs' breach of contract claim (Count VII) must be dismissed.

The Santimauros cannot maintain a claim for breach of contract (Count VII) for the simple reason that they never contracted with Breakwater. They acquired their home from a third party, leaving their only contractual remedy with that party. *See* Motion to Dismiss at 2.

---

[8]      Even assuming the drywall is defective, as Plaintiffs allege, it is nonetheless serving its *intended* purpose as room divider and structural support element. This Court has ruled that "[t]he Chinese drywall has not deteriorated the walls, making them structurally unsound; it is the exact opposite, the Chinese drywall stands just as any other functioning drywall, <u>serving its intended structural purpose</u>." MDL No. 2047 Order & Reasons, at 23.

"It is elementary that a person not a party to nor in privy with a contract does not have the right to sue for its breach." *Cibran Enters., Inc. v. BP Prods. N.A., Inc.*, 365 F. Supp. 2d 1241, 1251 (S.D. Fla. 2009) (internal marks and citation omitted); *Banco Ficohsa v. Aseguradora Hondurena, S.A.*, 937 So. 2d 161, 164-65 (Fla. 3d DCA 2006) (same principle).

7.      **Plaintiffs cannot state a claim for private nuisance (Count XI).**

The private nuisance claim (Count XI) would fail even if it were not barred by the economic loss rule. *See Bennett*, Omnibus Order at 7 (**Exh. D**) (dismissing all plaintiffs' private nuisance claims against homebuilders because "neither [Florida] case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance"). An action for private nuisance requires the claimant to establish an injury to his or her own property in connection with the use of the real property of someone else. *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").

The Santimauros, however, do not allege that their purported injuries resulted from real property owned by someone else. To the contrary, the nuisance claim is predicated entirely on the allegation that certain conditions existing on the "structures owned by Plaintiffs" are to blame. Cmplt. ¶ 1007. That allegation simply does not state a claim for private nuisance. *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

8.      **Plaintiffs cannot bring a claim for unjust enrichment (Count XII).**

Plaintiffs' unjust enrichment claim (Count XII) fails for two basic reasons.  The elements of unjust enrichment are that "(1) <u>the plaintiff has conferred a benefit on the defendant</u>; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that <u>it would be inequitable for the defendant to retain the benefit</u> without paying fair value for it." *Commerce Partnership 8098 Ltd. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

Plaintiffs' unjust enrichment claim stumbles on the first and fourth of these elements. The first element is not satisfied because Plaintiffs cannot show that they "conferred a benefit" on Breakwater.  In fact, they did not pay Breakwater a single dime to build their house, since they obtained the home from a third party.  *See* Motion to Dismiss at 2.  The Santimauros, in other words, did not "enrich" Breakwater in any sense.

As to the fourth element of unjust enrichment, there is nothing inequitable or unjust about permitting Breakwater to retain whatever benefit it received for constructing the Property.  After all, it cannot be disputed that Breakwater paid South Florida Custom Trim, Inc., a drywall subcontractor and a Defendant this action (Cmplt. ¶ 873 & pg. 187 (Subclass #284)), for the drywall in question.  As the Florida appellate court explained in *Maloney v. Therm Alum Industries, Corp.*, "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust.  Consequently, <u>if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit</u>." 636 So. 2d 767, 770 (Fla. 4th DCA 1994) (emphasis added), *overruled on other grounds by*, *Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment

cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities).

> **9.     The Omnibus Complaint fails to state a claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIII).**

In the overbroad style that is the hallmark of the Omnibus Complaint, the Santimauros also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"). Cmplt. ¶ 1018. A FDUTPA claim comprises three distinct elements: (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages." *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). "In light of this trend, <u>claims arising under the FDUTPA must be pled with particularity</u>." *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities). At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard. Indeed, it alleges <u>no specific facts</u> in support of a FDUTPA claim. *See* Cmplt. ¶¶ 1017-21. It does not identify a single instance in which Breakwater – by its words or conduct – deceived Plaintiffs or treated them unfairly. And how could the Complaint make those allegations? The Santimauros purchased the Property from a third party, not Breakwater. They are the second owners! *See* Motion to Dismiss at 2. The skeletal allegations in the Complaint do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b). *See Florida Digital Network, Inc. v. N. Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[9]

Plaintiffs' failure, moreover, is not merely one of pleading. Their FDUTPA claims must be dismissed with prejudice because "actual damages" are simply not available to the Santimauros. *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury). Because Breakwater provided services – namely, the construction of houses – Plaintiffs can establish

---

[9]     Plaintiffs' FDUTPA claims would be inadequately pled even if Rule 9(b) did not apply. A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly' and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc.*, No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

"actual damages" <u>only</u> by showing a difference between the "market value" of the *services* that Breakwater actually provided and the *services* that Breakwater was required to provide.[10]  *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties") (citations omitted).

As a matter of law, the Santimauros cannot make this showing.  There is zero evidence – and the Complaint does not suggest – that the manner in which Breakwater <u>constructed</u> the Property was in any way responsible for the allegedly defective drywall.  The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose."  MDL No. 2047 Order & Reasons, at 18-19.

So even if Plaintiffs could conceivably replead their FDUTPA claim with the particularity demanded by Rule 9(b), they have no hope of establishing the "actual damages" component of that claim.  Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fl. 1995).  Count XIII must be dismissed for this reason as well.

---

[10]     The same would hold true if Breakwater had delivered a "product" rather than providing a "service."  To recover under FDUTPA, Plaintiffs would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

10.    **Plaintiffs' claim for equitable relief and medical monitoring (Count XIV) cannot go forward against Breakwater.**

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XIV). This hybrid, catchall-type claim seeks, among other things, an order that Breakwater "buy back or rescind" its contracts and "create, fund, and support a medical monitoring program." Cmplt. ¶ 1024. This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based. Because each of Plaintiffs' substantive claims is due for dismissal, so too is their derivative claim for injunctive relief. *See, e.g.*, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support for an injunction, the Court should nevertheless dismiss the injunctive claim because Plaintiffs have failed to allege an inadequate legal remedy or irreparable harm. Injunctions under both federal and Florida law require these elements. *See, e.g.*, *Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted). Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for

"compensatory and statutory damages" – are inadequate or why Plaintiffs should be entitled to the extraordinary remedy of an injunction. *See, e.g.*, *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," it is unclear whether Florida law permits this cause of action. The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring. It is hardly clear, then, that these Plaintiffs can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim. At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is defined as the cost of periodic medical examinations necessary to detect the onset of physical harm. *Id.*

The Omnibus Complaint makes no attempt to properly allege these elements. Instead, Count XIV sets forth a series of legal conclusions—*e.g.*, "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct"—without a shred of factual detail. The Santimauros fail to identify, for example, any medical condition

(latent or otherwise) supposedly caused by their drywall; nor do they identify a monitoring procedure for that supposed condition. <u>The Santimauros do not claim to be ill</u>. They would have this Court speculate about their imaginary ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring. It states a series of legal conclusions, and those "do not suffice." *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate). The glaring deficiencies highlighted above make the final Count subject to dismissal on the pleadings. *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

## II. CONCLUSION

WHEREFORE, for the reasons stated in the Motion and the foregoing Memorandum of Law, Defendant Breakwater Custom Homes, Inc. respectfully requests that the Court enter an order dismissing the claims against it pursuant to Fed. R. Civ. Pro. 12(b)(6), and awarding

Breakwater its fees in defending this action pursuant to the Florida's Deceptive and Unfair Trade Practices Act.

Dated:  April 27, 2011                          **AKERMAN SENTERFITT**

                                         BY:  /s/  Samuel S. Heywood
                                              Valerie Greenberg, Esq.
                                              Fla. Bar No. 026514
                                              Samuel S. Heywood, Esq.
                                              Fla. Bar No. 0016604

                                              One SE 3rd Ave., 25th Floor, Miami, FL  33131
                                              Phone:  (305) 374-5600
                                              Fax:  (305) 374-5095
                                              Email:  valerie.greenberg@akerman.com
                                              Email:  samuel.heywood@akerman.com

                                              *Attorneys for Breakwater Custom Homes, Inc.*

*Co-Counsel for Breakwater Custom Homes, Inc.*

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
         Susie.morgan@phelps.com
         Skylar.rosenbloom@phelps.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Memorandum of Law in Support of Breakwater Custom Homes, Inc.'s Motion to Dismiss With Prejudice the Claims Brought Against it in the Abel Class Action Complaint (Omni VII)* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA 70163 (kmiller@frilot.com), by U.S. Mail and e-mail <u>or</u> by hand delivery and email <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 27th day of April, 2011.

/s/      Samuel S. Heywood