**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | *<br>*<br>*<br>* | MDL NO. 2047<br>SECTION: L |
| THIS DOCUMENT RELATES TO: | *<br>*<br>* | JUDGE FALLON |
| *ALL CASES* | *<br>* | MAGISTRATE JUDGE WILKINSON |
| * * * * * * * * * * * * * * * * * * * | *<br>* | |

**MEMORANDUM IN SUPPORT OF**
***EMERGENCY* MOTION FOR EXTENSION OF TIME**

  Builder-Defendants, Southern Homes, LLC; Tallow Creek, LLC; and Springhill, LLC (collectively "Southern Homes"), and the other undersigned parties move this Court for an order extending the deadline to oppose the INEX Settlement Agreement from Tuesday, May 3, 2011 to May 10, 2011 and proportionately extending the hearing date for preliminary approval of the INEX Settlement Agreement.  For the following reasons, Southern Homes' Emergency Motion should be granted:

    •  Louisiana Builders, such as Southern Homes, have standing to object to the INEX Settlement Agreement as it seeks to devastate builder defendants' legal protections

> by asking this Court to "bar" builders from pursuing their statutory redhibition rights against Interior Exterior Building Supply, LP, Interior Exterior Enterprises, LLC and South Cortez, LLC and other related entities (collectively "INEX");

- the INEX Settlement Agreement seeks the additional measure of unfairness to builders by further asking this Court to "bar" builders from pursuing contractual and tort indemnity claims against their drywall installers;

- Courts have refused to uphold such "bar" agreements because they impermissibly seek to extinguish non-settling defendants' independent claims; and

- fairness dictates that Southern Homes be given more than seven days to study and thoughtfully respond to the 200-plus-page INEX Settlement Agreement, to which its drafters obviously have already devoted countless hours.

Southern Homes and the other undersigned parties emphasize that they do not seek to prevent homeowner-plaintiffs in this MDL from recovering against INEX. To the contrary, they want homeowner-plaintiffs to be made whole. This Emergency Motion for Extension of Time has been filed only to ensure that builders, who have also been badly affected by Chinese-manufactured drywall, are protected and that their rights are not stripped away by a settlement agreement that unfairly goes too far.

**I.      Builder-Defendants Like Southern Homes Have Standing to Oppose the INEX Settlement Agreement.**

"Courts have a duty to protect the rights of the parties before them." *Zupnick v. Fogel*, 989 F.2d 93, 98 (2d Cir. 1993). Consequently, courts have allowed non-settling defendants, like Southern Homes, to object to settlement agreements when the non-settling defendant can demonstrate that it will sustain "plain legal prejudice" as a result of the settlement. *See, e.g., id.; see also In re Vioxx Prod. Liab. Lit.*, 388 Fed. Appx. 391, 395 (5th Cir. 2010). "Plain legal prejudice" has been found to include "any interference with a party's contractual rights or a party's ability to seek contribution or indemnification." *Agreti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992). A party

also suffers "plain legal prejudice" if the settlement "strips the party of a legal claim or cause of action, such as a cross-claim." *Id.* The following text of the INEX Settlement Agreement shows, clearly, that Southern Homes and like builders will undoubtedly suffer plain legal harm if this Court approves the Settlement Agreement. Section 11 of the INEX Settlement Agreement asks this Court to:

> 11.2.2 Bar the assertion by *any* entity or person against the Settling Defendants of *any* contribution, indemnification, subrogation, other claims concerning (i) the Chinese Drywall claims against INEX or (ii) the Settlement.

INEX Settlement Agreement at p. 26, Sec. 11.2.2 (emphasis added). "Settling Defendants" is defined to include INEX *and* the "Downstream INEX Releasees," which includes drywall installers "who purchased or received Chinese drywall from INEX, used Chinese drywall supplied by INEX in the construction of Affected Property." *See* INEX Settlement Agreement at p. 4, Sec. 1.10. Southern Homes notes that "Builders shall *not* be Downstream INEX Releasees." *See id.* (emphasis added).

This language seeks to destroy Southern Homes' pending claims against its *only* drywall supplier, INEX. Under Louisiana's redhibition law, Southern Homes has a statutorily granted indemnity right and potentially the right to collect other damages against INEX. For that reason, Southern Homes has, of right, filed a first-party redhibition action against INEX in Louisiana state court in addition to the several third-party demands Southern Homes has had to file against INEX for supplying it with allegedly defective Chinese-manufactured drywall. The INEX Settlement Agreement also seeks to destroy Southern Homes contractually granted indemnity rights against its only drywall installer. All these claims can be found in the Exhibits to the INEX Settlement Agreement. Regardless, Southern Homes will provide a list of these claims if the Court so orders.

## II. Courts Have Refused to Uphold Bar Agreements Such as That Described in the INEX Settlement Agreement.

"A court can endorse a settlement *only* if the compromise is fair, reasonable and adequate." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (emphasis added). Moreover, "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is *not* enough to earn the judicial stamp of approval." *Id.* (emphasis added).

*Altman v. Liberty Equities Corp.*, for example, provides analysis of a strikingly similar bar agreement as is in issue here. 54 F.R.D. 620, 622 (U.S.D.C. S.D. NY 1972). The bar order in the Altman Settlement stemmed from a class action settlement including less than all the defendants of the class action, and provided that:

> The final judgment contemplated shall *bar and permanently enjoin the non-settling defendants* from prosecuting against the settling defendants any claim or claim over for indemnification or contribution arising out of the subject matter of this or any related matter.

*Id.* (emphasis added). The *Altman* court concluded that it could *not* fairly approve of the proposed bar order in the stipulation of the settlement. *Id.* at 625. The court reasoned "there can be no doubt that the objecting defendants are entitled to contribution," and "it can be said that the objecting defendants presently have sufficient rights in their potential claims for contribution that a bar thereof would be prejudice to their interests." *Id.* "These," concluded the *Altman* court, "are sufficient grounds to require this court to refrain from barring the non-settling defendants from such rights at this time." *Id*.

Southern Homes and other builders would suffer even more egregiously because an order approving the INEX Settlement would destroy their statutorily granted indemnity rights under redhibition and any contractual indemnity rights they may have against INEX and their drywall

4

installer.

### III. Fairness Dictates that Builders, Such as Southern Homes, Have More Than Just Seven Days to Study and Respond to the 200-Plus Page INEX Settlement Agreement.

The agreement is of critical importance to the builder-defendants in this Court. As discussed more fully above, the INEX Settlement Agreement has been drafted to deny builders their statutory and contractual rights of recovery in- and outside of this MDL. It is obvious that the drafters of the INEX Settlement Agreement devoted countless hours to the agreement. Builders, such as Southern Homes, should also have a fair amount of time to respond. To that end, the undersigned builders request a mere week extension of the briefing schedule to study the agreement and respond as they have the right to do.

### IV. Conclusion

For the reasons discussed above, Southern Homes moves this Court to extend the deadlines of its Order of April 26, 2011 [Doc. 8634] by one week.

Respectfully submitted,

/s/ James M. Garner
JAMES M. GARNER, T.A. (# 19589)
MARTHA Y. CURTIS (# 20446)
MATTHEW C. CLARK (#31102)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, LLC**
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112-1033
Telephone: (504) 299-2100
Facsimile: (504) 299-2300

COUNSEL FOR SOUTHERN HOMES, LLC; SPRINGHILL, LLC; TALLOW CREEK, LLC; AND ADRIAN KORNMAN

/s/ Andrew L. Plauche, Jr.
ANDREW L. PLAUCHE, JR. (11023)
PLAUCHE MASELLI PARKERSON, LLP
701 Poydras Street, Ste. 3800
One Shell Square
New Orleans, LA 70139

COUNSEL FOR GENERAL FIDELITY INSURANCE COMPANY


/s/ Warren Horn
WARREN HORN (14380)
HELLER DRAPER HAYDEN PATRICK & HORN, LLC
650 Poydras Street, Ste. 2500
New Orleans, Louisiana 70130

COUNSEL FOR DALEN OF TANGIPAHOA, LLC; GMI CONSTRUCTION, INC.; GREMILLION HOMES, INC.; LEE ROY JENKINS/LEE ROY JENKINS, INC.; L.A. HOMES, INC.; ANTHONY F. MARINO GENERAL CONTRACTOR, LLC; ROYAL HOMES, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice electronic filing in accordance with the procedures established in MDL 2047, on this 28th day of April, 2011.

/s/ James M. Garner
JAMES M. GARNER