UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO.: 2047
SECTION: L
JUDGE FALLON
MAGISTRATE WILKINSON

**THIS DOCUMENT RELATES TO:**

**JUDITH PASTENTINE V. KNAUF GIPS KG, ET AL.**

**CA 09-6051**

_____/

# DEFENDANT INDEPENDENT BUILDER SUPPLY ASSOCIATION, INC.'S MOTION TO DISMISS

COMES NOW, Defendant Independent Builder Supply Association, Inc. (hereinafter "IBSA") by and through their undersigned counsel move this Honorable Court pursuant to Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all counts of the Complaint directed towards IBSA filed by Plaintiffs because Plaintiffs cannot show that IBSA's drywall was installed in Plaintiffs' home and Plaintiffs cannot demonstrate that this court has personal jurisdiction over IBSA, and in support thereof, state as follows:

## MEMORANDUM OF LAW

Plaintiffs have filed the instant action against, among others, the Defendant IBSA. The lawsuit alleges IBSA supplied the defective Chinese-manufactured drywall installed in Plaintiffs' home. Plaintiffs seek to recover, among other types of relief, damages allegedly caused by this Chinese-manufactured drywall.

Prior to the Supreme Court's decision in *Bell Atl. v. Twombly*, 127 S.Ct. 1955 (2007), a motion to dismiss could only be granted if a plaintiff could prove "no set of facts ... which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), abrogated by *Bell Atl. v.*

*Twombly*, 127 S.Ct. 1955 (2007).  Now, in order to survive a motion to dismiss, the plaintiff must supply more than just any conceivable set of facts tending to support a claim and must alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974. *Pennsylvania Employees Benefit Trust Fund v. Astrazeneca Pharmaceuticals*, 2009 WL 2231686 (M.D. Fla., July 20, 2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqball*, 129 S.Ct. 1937, 1949 (2009).  A "formulaic recitation of the elements of a cuase of action will not do." *Id.* At 1965.  "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Id.*  Pleadings that "are no more than conclusions, are not entitled to the assumption of truth[;] they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009); *see also Waters Edge Living LLC v. RSUI Indemnity Co.*, 2010 WL 326166 (M.D. Fla., January 21, 2010).

**Argument**

IBSA's involvement with Chinese drywall is limited to the calender year of 2006.  IBSA arranged for the shipment of the Chinese drywall upon request of supplier Black Bear Gypsum Supply, Inc. (hereinafter "Black Bear") from Metro Resource Corp. (hereinafter "Metro Resource"), located in Canada and who directly shipped all Chinese drywall to Black Bear Gypsum Supply, Inc., located in Largo, Florida.  See IBSA's affidavit annexed hereto as Exhibit A.

All of the Chinese-drywall at issue with respect to IBSA was shipped directly to the Port of Tampa, Florida, where Black Bear Gypsum Supply, Inc., took possession of the entire

shipment. Black Bear Gypsum Supply, Inc., has never supplied any materials to any contractors or subcontractors in Miami-Dade County, Broward County, Palm Beach County and Lee County, Florida. See Black Bear's affidavit and deposition testimony annexed hereto as Exhibit B. As such, the drywall at issue as discussed more fully below is limited to the Largo, Florida area.

Furthermore, Plaintiffs have been provided IBSA's MDL Profile Form and have access to all the MDL Profile forms filed by other defendants. The MDL Profile forms establish the Chinese-drywall installed in Plaintiffs' home was not distributed by IBSA since IBSA did not ship to anywhere but Largo, Florida. See IBSA's MDL Distributor Profile Form annexed hereto as Exhibit C.

Plaintiffs have been provided with all necessary documents to make the determination that no nexus exists between the Chinese-drywall arranged for the shipment by IBSA and the Chinese-drywall installed in Plaintiffs' home.

Defendant Black Bear contacted IBSA and requested that IBSA contact Defendant Metro Resources in Canada to deliver drywall to Defendant Black Bear. *See* Composite Exhibit D: (P. 246-247; L. 22-24 & 1-7). Furthermore, IBSA never had an opportunity to inspect or take possession of the drywall because it was delivered directly from Defendant Metro Resources to Defendant Black Bear. *See* Composite Exhibit D: (P. 244; L. 14-24). Also, any attempt to assert a claim against IBSA is speculative since Black Bear received board from other suppliers and cannot distinguish their inventory: As Black Bear's corporate representative Gina Milinovich testified in her deposition:

> Q: So, for example, if I were to, say, give you an address of a home in the Tampa area, and I'll pick 4210 West Kingston Avenue, Tampa, Florida,

> 33629, it was a home built by River Street Homes, would you know if that home at issue with Chinese drywall would be Chinese drywall that was provided by IBSA or by La Suprema?
>
> A: I have no idea.
>
> Q: Okay. And if I were to give you the address of 2226 Soho Bay Court, Tampa, Florida, 33606, would you know if that Chinese drywall in that particular home came through La Suprema or IBSA?
>
> A: No.
>
> Q: No, you couldn't tell me, one way or the other?
>
> A: No, I couldn't tell you, one way or the other....
>
> [Similar address questions and answers omitted]
>
> Q: And I could continue, but I guess the exercise is that there's no way for Black Bear to tell, one way or the other, is that true?
>
> A: Correct.
>
> Q: Okay. And that would be for all homes at issue with Chinese drywall, where Black Bear would have supplied the Chinese drywall; is that a fair statement?
>
> A: Yes.

See Composite Exhibit D: (P. 240, L. 5-24; P. 241, L. 7-15).

## **Limited Appearance to Contest Personal Jurisdiction**

Notwithstanding the foregoing, Defendant IBSA respectfully disputes the personal jurisdiction of this Honorable Court because there are no minimum contacts, domicile or consent to any jurisdiction any where other than where it shipped drywall. Under *International Shoe v.*

*Washington*, for a court to exercise personal jurisdiction the defendant must have certain minimum contacts so that the suit does not offend traditional notions of fair play and substantial justice, 326 U.S. 310 (1945). There have been constitutional elaborations on the nature of the minimum contacts as follows:

- Activities must be systematic and continuous. *Helicopteros Nationales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984).

- Activities must be purposely directed towards the forum state. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987).

- Defendant must purposely avail himself of the privileges of the forum State. *Hanson v. Denkla*, 357 U.S. 235 (1958).

- Possibility of litigation must be foreseeable. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980).

- There must be connection between litigation Defendant and the forum state because mere presence of property is not enough unless Defendant has necessary minimum contacts under *Shaeffer v. Heitner*, 433 U.S. 186 (1977).

**Wherefore**, IBSA respectfully requests this Honorable Court to enter an Order dismissing Plaintiffs' cause of action against IBSA for the reasons cited above, and requests any further relief as this Honorable Court deems necessary and appropriate.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on April 28, 2011, I filed the foregoing document and this certificate with the Clerk of the Court by U.S. Mail. I also certify that the foregoing document and certificate is being served this day on all counsel of record by electronically uploading and sending the same via LexisNexis File and Serve:

FULMER LeROY ALBEE BAUMANN, P.L.C.
Attorneys for Defendant,
INDEPENDENT BUILDER SUPPLY
ASSOCIATION, INC.
2866 East Oakland Park Boulevard
Fort Lauderdale, FL  33306
(954) 707-4430  phone
(954) 707-4431  fax


BY:_____/s/_____
          GARY F. BAUMANN

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCT LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

THIS DOCUMENT RELATES TO ALL CASES

### AFFIDAVIT

STATE OF NORTH CAROLINA
COUNTY OF JOHNSTON

1. My name is W. Ray Price, being first duly sworn, who deposes and says.
   I am older than 18 years of age, and I am the President for Independent Builders Supply Association, Inc. I have personal knowledge of Independent Builders Supply Association, Inc's affairs and business activities contained in this affidavit.

2. As per the attached Exhibit A, Independent Builders Supply Association, Inc., shipped all Chinese Drywall to Black Bear Gypsum Supply, Inc., through the Port of Tampa, located in Hillsborough County, Florida.

3. The foregoing statements are made under my own free will.

UNDER PENALTIES OF PERJURY, I declare that I have read the foregoing Affidavit and that the facts stated in it are true to the best of my knowledge and belief.

SWORN TO AND SUBSCRIBED before me this __11__ day of __November__, 2009.

Notary Public, State of North Carolina
Brenda C. Smith
Printed name
My commission expires: 6-30-2011

BRENDA C SMITH
NOTARY PUBLIC
Johnston County
North Carolina
My Commission Expires June 30, 2011

DEFENDANT'S EXHIBIT A

## AFFIDAVIT OF GINA MILINOVICH

STATE OF FLORIDA ) 
) :SS
COUNTY OF PINELLAS )

I, Gina Milinovich, after first being duly sworn, depose, and say:

1. I am over the age of 18 and I am the President of Black Bear Gypsum Supply, Inc.

2. The facts contained in this affidavit are true and correct to the best of my own personal knowledge.

3. Black Bear Gypsum Supply, Inc. never supplied any materials to any contractor or subcontractor for use on a job in Miami-Dade County.

4. Black Bear Gypsum Supply, Inc. never supplied any materials to any contractor or subcontractor for use on a job in Broward County.

5. Black Bear Gypsum Supply, Inc. never supplied any materials to any contractor or subcontractor for use on a job in Palm Beach County.

6. Black Bear Gypsum Supply, Inc. never supplied any materials to any contractor or subcontractor for use on a job in Lee County.

FURTHER AFFIANT SAYETH NAUGHT.

_____
GINA MILINOVICH

SWORN TO AND SUBSCRIBED before me this 10th day of October 2009, by Gina Milinovich, who is personally known to me or who has produced FDNLc. M 451 299 645110 as identification.

My Commission Expires:

_____
Notary Public, STATE OF Florida

Printed Name: 

MARIA C. PEZZUTI
MY COMMISSION # DD 608275
EXPIRES: February 24, 2011
Bonded Thru Notary Public Underwriters



DEFENDANT'S EXHIBIT B

Case 2:09-md-02047-EEF-JCW   Document 174-2   Filed 08/25/2009   Page 1 of



Aug 25 2009
11:23AM

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL          : MDL No. 2047
PRODUCTS LIABILITY LITIGATION                : Section L
                                             :

This Document Relates to                     : JUDGE FALLON
ALL CASES                                    : MAG. JUDGE WILKINSON

### DISTRIBUTOR PROFILE FORM

All Defendant Drywall Distributors must complete and submit this Defendant Distributors' Profile Form. Additionally, each Defendant Drywall Distributor must sign and date Exhibit A to the Defendant Distributors' Profile Form for each property owned, rented or occupied by persons who are named Plaintiffs in suits pending in the MDL. The term "Chinese Drywall or Wallboard" encompasses all wallboard of Chinese origin or manufacture without reference to whether the particular wall board has been found to be defective. If additional knowledge becomes known after completion, this Defendant Distributors' Profile Form must be supplemented. If additional space is needed to answer any questions or complete your responses, additional pages may be attached. The questions contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law. Please print legibly or type your responses in English.

I.   IDENTIFICATION AND CONTACT INFORMATION

A.   Distributor's Name: __IBSA, Inc.__

B.   Distributor's Address: __PO Box 2310, Smithfield, NC 27577__

C.   Website: __IBSAINC.NET__

D.   Headquarters if Foreign: __1801 Wal Pat Rd., Smithfield, NC 27577__

E.   Address of USA Headquarters: __1801 Wal Pat Rd., Smithfield, NC 27577__

F.   Name of supervisor at USA Headquarters: __Ray Price__

G.   Principal Place of Business in USA: __Smithfield, NC__

H.   Has Distributor operated under any other names from 2001 to 2009? If so, please list and explain for each different locale.
     __NO.__
     _____
     _____
     _____
     _____

I.   Did Distributor also install Chinese Drywall? If so, describe involvement as installer.

1218429.0005/N0778704_1 1


DEFENDANT'S EXHIBIT C

NO. _____

_____
_____
_____
_____
_____
_____

II. **COUNSEL INFORMATION OF DEFENDANT DISTRIBUTOR**

A. Name: Fulmer LeRoy Albee Baumann & Glass   Attn: Gary Baumann, Esq.
B. Address: 2866 East Oakland Park Blvd., Ft. Lauderdale, Fl 33306
C. Phone Number: 954-707-4430
D. Fax Number: 954-707-4431
E. E-Mail: gbaumann@fulmerleroy.com

III. **DISTRIBUTOR'S PURCHASE OF CHINESE DRYWALL**

For each purchase of Chinese Drywall between 2001 and 2009, please describe all sources from which Distributor purchased Chinese drywall, including manufacturers, exporters, importers, other distributors, sales agents, and/or sales brokers. Attach additional sheets as necessary.

A. Source: Metro Resources Corporation

1. Name of Chinese Drywall Manufacturer, if known:

   Unknown.

2. Address of Chinese Drywall Manufacturer, if known:
   Unknown.

3. Name of Chinese Drywall Product, if known:
   Unknown.

4. Dates of purchase(s): 8/22/2006

5. Total Volume of received Chinese Drywall product:
   66,000 pieces   3,168,000 sq. feet

6. Identify any markings on the Chinese Drywall product (e.g., lot number, batch number, serial number, color markings, UPC codes, etc.):
   Unknown.

7. List all trademarks of the product, if known:
   Unknown.

8. The name and address of any importer, exporter, purchasing agent, or sales broker involved or referenced in any way with respect to your purchases of Chinese Drywall:
   Delivery Agent: Triumph Link (USA), Inc.   (310) 516-7822
   20280 S. Vermont Ave., Suite 250, Torrance, CA 90502

9. If known, prior to your receipt of or taking title to the Chinese Drywall, if any of your Chinese drywall was stored at any time by or for you at any location, identify the following:

   Name of entity providing storage: _____ None. _____

   Address of entity providing storage: _____

   Dates product was stored:
   __/__/_____ (Month / Day / Year) to __/__/_____ (Month / Day / Year)

   Quantity of product stored: _____

   Price paid for storage: _____

   Name of contact person at storage facility: _____

   Phone number: _____

   Email address: _____

   List any complaints made or received regarding storage of the product:
   _____

### IV. DISTRIBUTOR'S ABILITY TO TRACK SHIPMENTS

Please state whether you are able to track the distribution of Chinese drywall? If yes, provide names and/or entities of those to whom you supplied Chinese drywall. If you cannot track the distribution of Chinese drywall, please provide a description of your distribution process, including a description of database accessibility of this information, and the name and address of the person or persons with knowledge of the same:

Yes, we are able to track the Chinese drywall we purchased because we sold all of the Chinese drywall to Black Bear Gypsum, ~~Inc.~~

Black Bear Gypsum, Inc.

2050 Tall Pine Drive, Suite B

Largo, Fl 33771

### V. INSURANCE

{218429 0005/N0778704_1}3

A.  Identify all policies of insurance, including all CGL, Product Liability, Builder's Risk, D&O and Excess insurance policies relating to claims.[1]

1.  For each policy, identify the following:

    Insurer: __Erie Insurance__

    Dates policy in effect:

    _1_ / _2_ / _2002_ (Month / Day / Year) to _1_ / _2_ / _2010_ (Month / Day / Year)

    Policy Number: __Q37-0250508__

    Type of Policy: __Ultra Flex Package Policy__

    Insurance Agent: __Paul Schultze__

    Policy Coverage Limits __1 Million per occurrence__
                            __2 Million Aggregate__

### CERTIFICATION

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Defendant Manufacturers' Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration, to the extent that such documents are in my possession, custody or control.

_9-8-09_  
Date

Entity: _IBSA, INC_  
By: _[signature]_  
Its: _PRESIDENT_

---

[1] Listing policies does not purport to represent coverage status.

**Page 237**

1    MR. BAUMANN: We're going to
2 make a --
3    MR. STECKLER: It's on there.
4 It's --
5    MR. BAUMANN: -- copy. Yeah.
6    THE WITNESS: It's what?
7    MR. BAUMANN: Yeah, I'll
8 just -- I'll keep it, if that's okay,
9 or if you want to make a copy of it --
10    MR. STECKLER: Well, he needs
11 to make -- I mean --
12    THE REPORTER: I need it.
13    MR. STECKLER: He needs it.
14    MR. BAUMANN: All right.
15 That's fine.
16    BY MR. BAUMANN:
17 Q. Now, one of the things that
18 you've talked about earlier when counsel was
19 asking you questions about the La Suprema
20 board versus the other Chinese drywall that
21 you received, and I wrote it down, and he
22 asked you about complaints about La Suprema
23 board specifically, and your answer was, and
24 I wrote it down, "I wouldn't know if it was

**Page 238**

1 related to La Suprema board or the other
2 Chinese drywall board."
3    Is that your recollection of
4 the testimony when you discussed that?
5 A. Yes.
6    MR. STECKLER: I'm going to
7 object to the form.
8    BY MR. BAUMANN:
9 Q. Okay. And I guess that's a
10 fair statement because you didn't receive any
11 complaints about Chinese drywall until early
12 2009, correct?
13 A. Correct.
14 Q. Okay. So it was nearly three
15 years after you first received Chinese
16 drywall before you had any notice of any
17 problems from any Chinese drywall board?
18 A. Correct.
19 Q. Okay. So -- and at that time,
20 you wouldn't know if those particular homes
21 that are being complained of were the result
22 of La Suprema board or board that you
23 obtained through IBSA; is that a fair
24 statement?

**Page 239**

1 A. Yes.
2 Q. Okay. And there's no way of
3 knowing at this point whether the board that
4 is at issue in any particular home is from
5 IBSA or through IBSA or from La Suprema
6 because, as you testified, there's no way
7 that Black Bear can reconcile through their
8 invoices who the particular distributor of
9 any particular drywall board was for any
10 given home, true?
11    MR. STECKLER: I have to object
12 to that, as well. I apologize.
13 Objection to the form of the question.
14    MR. BAUMANN: That's okay.
15    BY MR. BAUMANN:
16 Q. Is that a fair statement?
17 A. Yes.
18 Q. Okay.
19    MR. STECKLER: Hold on a
20 second. I don't want to ruin your
21 stride. I'll try to --
22    MR. BAUMANN: No stride. Go
23 ahead.
24    MR. STECKLER: You know,

**Page 240**

1 whatever.
2    MR. BAUMANN: There's no stride
3 here. It's fine.
4    BY MR. BAUMANN:
5 Q. So, for example, if I were to,
6 say, give you an address of a home in the
7 Tampa area, and I'll pick 4210 West
8 Kensington Avenue, Tampa, Florida, 33629, it
9 was a home built by River Street Homes, would
10 you know if that home at issue with Chinese
11 drywall would be Chinese drywall that was
12 provided by IBSA or by La Suprema?
13 A. I have no idea.
14 Q. Okay. And if I were to give
15 you the address of 2226 Soho Bay Court,
16 Tampa, Florida, 33606, would you know if that
17 Chinese drywall in that particular home came
18 through La Suprema or IBSA?
19 A. No.
20 Q. No, you couldn't tell me, one
21 way or the other?
22 A. No, I couldn't tell you, one
23 way or the other.
24 Q. And for the address


DEFENDANT'S EXHIBIT D

Chinese Drywall MDL    Confidential – Subject to Further Confidentiality Review    Gina Milinovich
April 1, 2010

**Page 241**

1. 21509 Draycott Way, Land O' Lakes, Florida,
2. 34637, could you tell me, one way or the
3. other, if that home contains Chinese drywall
4. from either La Suprema or board obtained
5. through IBSA?
6. A. No.
7. Q. And I could continue, but I
8. guess the exercise is that there's no way for
9. Black Bear to tell, one way or the other; is
10. that true?
11. A. Correct.
12. Q. Okay. And that would be for
13. all homes at issue with Chinese drywall,
14. where Black Bear would have supplied the
15. Chinese drywall; is that a fair statement?
16. A. Yes.
17. Q. Now, with respect to the issue
18. of some of the board from IBSA where you said
19. that you wanted to return it because you had
20. nowhere to store it, do you remember that
21. issue we discussed near the end of your
22. testimony today?
23. A. I wanted -- I tried to refuse
24. the board.

**Page 242**

1. Q. Do you recall being told by Ray
2. Price that it was impossible to cancel the
3. order because it was purchased on an
4. irrevocable letter of credit?
5. A. Yes, that's how IBSA purchased
6. it.
7. Q. Meaning, "You asked us to
8. purchase this for you, we purchased this for
9. you with a document called irrevocable letter
10. of credit, meaning you can't revoke it, and
11. it's too late; you have to accept it."
12. And that was explained to you
13. by Ray Price at IBSA, correct?
14. A. Not until I tried to refuse it.
15. Q. Correct, because if you hadn't
16. refused it, it would have been accepted by
17. Black Bear -- or tried to refuse it, I should
18. say, right?
19. MR. HARDEMAN: Object to the
20. form of the question.
21. THE WITNESS: Wow. Can you
22. repeat that?
23. MR. BAUMANN: Yeah. It's been
24. a long couple of days for me here.

**Page 243**

1. BY MR. BAUMANN:
2. Q. That issue developed because
3. you wanted to reject the board, correct?
4. A. Yeah, I no longer needed it.
5. Q. And you ended up placing that
6. board outside, correct?
7. A. Some was inside; some was
8. outside.
9. Q. And you were asked some
10. questions in your earlier deposition on
11. February 18th, 2009, about that issue. And
12. it was your testimony back then that you
13. would have disposed of in excess of 30,000
14. sheets of Chinese drywall at the Pasco County
15. dump, I believe is what you said previously,
16. but you also identified the -- what were the
17. other dumps you identified today?
18. A. The San Antonio one and the
19. Pinellas County one.
20. Q. Okay. Would that include the
21. Pasco County dump?
22. A. San Antonio is in Pasco.
23. Q. Okay. But then going back to
24. your testimony February 18th, 2009, you'd

**Page 244**

1. identified in excess of 30,000 boards that
2. would have been destroyed or disposed of at
3. the dump. Does that refresh your
4. recollection as to the quantity that would
5. have been discarded by Black Bear?
6. A. Yes.
7. Q. Does that sound about right?
8. A. At that time, yes.
9. Q. Okay. And was that all board
10. that would have been provided to Black Bear
11. through IBSA, since it was the board that you
12. had to store outside?
13. A. Yes.
14. Q. Okay. Now, on the issue of
15. inspection of the board, you agreed with
16. counsel when he made the point that IBSA
17. never had an opportunity to inspect the
18. board, since it was shipped directly from
19. Metro, directly to Black Bear, correct?
20. A. Yes.
21. Q. Okay. Meaning the board never
22. physically took a presence at IBSA prior to
23. being delivered to Black Bear, correct?
24. A. Correct.

| Chinese Drywall MDL | Confidential – Subject to Further Confidentiality Review | Gina Milinovich<br>April 1, 2010 |

**Page 245**

1. Q. And you were aware of this at
2. all times, correct?
3. A. Yes.
4. Q. So you wouldn't have expected
5. IBSA to conduct an inspection of this board
6. on Black Bear's behalf, since it was never
7. going to be physically in their possession
8. anytime before Black Bear took delivery of
9. this drywall, true?
10. A. I would have expected them to
11. investigate Metro before they signed a
12. contract.
13. Q. Well, let's talk about that for
14. a second. Metro was brought to Black Bear's
15. attention by a customer of yours through your
16. husband, Ron, I believe, correct? Was it
17. Jerome?
18. A. Yes.
19. Q. And what's Jerome's last name?
20. A. Harold.
21. Q. Which company is Jerome Harold
22. with?
23. A. Harold's Drywall.
24. Q. Okay. So Harold's Drywall,

**Page 246**

1. Jerome Harold, tells you about Metro
2. Resources and David Zhang, right?
3. A. Told Ron, yes.
4. Q. Okay. And at that point,
5. that's when David Zhang comes down -- and you
6. discussed this in your earlier deposition.
7. That's how I know this. That's when David
8. Zhang came down and met with you and with Ron
9. at your location here in Clearwater, correct?
10. A. Yes.
11. Q. And at that point, you decided
12. that you were going to purchase the board
13. after you met with David, and you contacted
14. IBSA and asked them to help with the
15. transaction, correct?
16. A. At first, the meeting that I
17. had with Ron and David, I -- we didn't
18. need -- I argued that we didn't need Chinese
19. board at that time. It was in a subsequent
20. meeting that Ron and David had that they
21. decided to purchase the board.
22. Q. Okay. But the point of my
23. questioning, I guess, is that IBSA did not
24. introduce Metro Resources to Black Bear, but

**Page 247**

1. instead, Black Bear contacted IBSA and asked
2. IBSA to contact Metro Resources on behalf of
3. Black Bear for the transaction that we've
4. been discussing?
5. A. Yes.
6. Q. Fair?
7. A. Yeah.
8. Q. Okay. Now, your husband also
9. has another drywall company called
10. O.H. Drywall, correct?
11. A. Not exactly.
12. Q. Well, "O.H." stands for owner's
13. husband, right?
14. A. Yes.
15. Q. You're the owner; he's the
16. husband. O.H. Drywall, correct?
17. A. Correct.
18. Q. Well, tell me why it's not
19. exactly, then.
20. A. It was never a formal entity.
21. I mean, it's not with the State of Florida.
22. It was just a way to -- when he did have
23. occasional jobs, for him to purchase material
24. through Black Bear.

**Page 248**

1. Q. So it was never a Florida
2. corporation, but O.H. Drywall was sort of on
3. the books with Black Bear as sort of a
4. fictitious company that your husband just set
5. up, "O.H." meaning owner's husband?
6. A. Yes.
7. Q. Okay. And do you know how much
8. drywall was purchased by O.H. Drywall?
9.    MR. HARDEMAN: Let's go off the
10. record, please.
11.    THE VIDEOGRAPHER: Going off
12. the record. The time is 3:02.
13.    (Discussion off the record.)
14.    THE VIDEOGRAPHER: Going back
15. on the record. The time is 3:03.
16.    BY MR. BAUMANN:
17. Q. Well, how much drywall did
18. Black Bear distribute to O.H. Drywall?
19. A. I would have to go back and
20. look at the records, since it was sporadic.
21. Q. Now, do you still have that
22. computer, the one that crashed?
23. A. Yes.
24. Q. I'd ask you to hold on to it,