# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL     **MDL DOCKET: 2047**
PRODUCTS LIABILITY LITIGATION

                                                **SECTION: L**

**THIS DOCUMENT RELATES TO:**                  **JUDGE FALLON**
                                                **MAG. JUDGE WILKINSON**

*Silva, et al. v. Interior Exterior Building
Supply, LP, et al.*
EDLA 09-08030

*Silva, et al. v. Arch Insurance Company, et al.*
EDLA 09-08034

*Payton, et al v. Knauf Gips, KG, et al.*
EDLA 09-07628

*Wiltz, et al. v. Beijing New Building Materials
Public Limited Co., et al.*
EDLA 2:10-cv-000361

*Gross, et al. v. Knauf Gips, KG, et al.*
EDLA 2:09-cv-6690

*Rogers, et al. v. Knauf Gips, KG, et al.*
EDLA 2:10-cv-00362

*Amato, et al. v. Liberty Mutual Ins. Co.*
EDLA 2:10-cv-00932

*Kenneth Abel, et al. v. Taishan Gypsum Co.,
Ltd., f/k/a Shangdong Taihe Dongxin Co., Ltd., et al.*
EDLA 2:11-cv-080

*Daniel Abreu, et al. v. Gebrueder Knauf
Verwaltungsgesellschaft, KG, et al.*
EDLA 2:11-cv-252

_____/

# HOMEBUILDERS' STEERING COMMITTEE'S RESPONSE
# IN OPPOSITION TO JOINT MOTION FOR AN ORDER: (1) PRELIMINARILY
# APPROVING INEX SETTLEMENT AGREEMENT; (2) CONDITIONALLY
# CERTIFYING INEX SETTLEMENT CLASS; (3) ISSUING CLASS NOTICE;
# AND (4) SCHEDULING A SETTLEMENT FAIRNESS HEARING

The Homebuilders' Steering Committee ("HSC"), on behalf of homebuilders, hereby submits its response in opposition to the Joint Motion for an Order: (1) Preliminarily Approving InEx Settlement Agreement; (2) Conditionally Certifying InEx Settlement Class; (3) Issuing Class Notice; and (4) Scheduling a Settlement Fairness Hearing ("Motion to Approve InEx Settlement Agreement") [D.E. 8628], and in support thereof states as follows:

1.     On April 26, 2011, the Plaintiffs' Steering Committee ("PSC"), Interior/Exterior Building Supply, L.P. ("InEx"), Arch Insurance Company ("Arch"), and Liberty Mutual Fire Insurance Company ("Liberty Mutual"), jointly filed their Motion to Approve InEx Settlement Agreement, asking this Court to, among other things, preliminarily approve the "Settlement Agreement Regarding Claims Against Interior-Exterior in MDL No. 2047" ("InEx Settlement Agreement").  While many homebuilders intend to file detailed objections to the InEx Settlement Agreement sufficiently in advance of the final fairness hearing so that the objections can be fully argued and resolved at the time of that fairness hearing, the homebuilders did want to outline a few of their primary concerns with the InEx Settlement Agreement, which purports to substantially impact the homebuilders' rights.

2.     As the Court is well aware, many homebuilders have spent millions of dollars repairing the homes that were impacted by the defective Chinese-manufactured drywall at issue in this litigation ("Chinese Drywall").  These homebuilders made the decision to repair these homes early on, without any hope or guarantee of ever recovering a dime from the manufacturers, distributors, suppliers, brokers and installers who are responsible for the Chinese Drywall found in these homes  ("Supply Chain

Parties"). Accordingly, homebuilders have literally millions of dollars of claims that have been filed, or that will be filed, against these Supply Chain Parties.

3.       Regrettably, despite their significant role in these proceedings as a group, the homebuilders were not asked to, and in fact did not, participate in the negotiations over any of the terms of the InEx Settlement Agreement. As such, the homebuilders were surprised to see that the PSC, InEx, Arch and Liberty Mutual took it upon themselves to attempt to negotiate a settlement, release and permanent bar for not only all of the homebuilders' claims against InEx and InEx's primary insurers, Arch and Liberty Mutual, but also all of the homebuilders' claims against all other defendants "downstream" from InEx. (InEx, Arch, Liberty Mutual and the "downstream" defendants are all defined as the "Settling Defendants" under the InEx Settlement Agreement. InEx Settlement Agreement, § 1.30.)

4.       Insofar as the homebuilders are concerned, the InEx Settlement Agreement is entirely unfair, unreasonable and inadequate, and should not be approved – even preliminarily. Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing on finding that it is fair, reasonable, and adequate.") To be sure, the InEx Settlement Agreement reflects a shameless attempt by the PSC, InEx, Arch and Liberty Mutual to completely eviscerate the homebuilders' due process rights, by leaving homebuilders fully exposed to claims by homeowners by not providing them with a release, while at the same time precluding homebuilders from pursuing InEx or any other defendants "downstream" from InEx (such as, for example, a drywall subcontractor or their insurers), on claims for

indemnity, contribution or otherwise, and for pursuing the millions of dollars the homebuilders have spent repairing homes.

5.      To make matters worse, by the time the homebuilders will be forced to decide whether to opt-out from the InEx settlement, InEx Settlement Agreement, § 7.1.1 ("Class Members will have seventy (70) days following the entry of the Preliminary Approval Order by the Court (or such different period as the Court may direct) to opt out of the Settlement…."), the homebuilders:

> (i)     will not know what portion of the settlement proceeds, if any, they will be allocated pursuant to Section 16 of the InEx Settlement Agreement;
>
> (ii)    will not know whether any members of the proposed class will receive any preferential treatment given their status (*e.g.,* a homeowner whose home has not been repaired vis-à-vis a homebuilder whose outlayed millions of dollars to repair homes and received assignments of homeowners' claims); and
>
> (iii)   will not have received <u>any</u> consideration from <u>any</u> of the Downstream InEx Releasees or their insurers in exchange for their complete release.

6.      Had the homebuilders been invited to the negotiations between the PSC, InEx, Arch and Liberty Mutual, as the homebuilders have repeatedly requested in connection with the ongoing negotiations between the PSC and Banner Supply Co., the homebuilders could have addressed all of these problems with the proposed settlement before it was formally presented to the Court.

7.      As the InEx Settlement Agreement reads now, those homebuilders with claims against InEx (or its insurers), either directly or as assignee of the claims of homeowners whose homes the homebuilders have repaired, or have agreed to repair, are clearly included in the broad definition of the proposed settlement "Class," which is defined as:

> …all persons or entities with claims, known or unknown, against the Settling Defendants arising from, or otherwise related in any way to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx.

InEx Settlement Agreement, § 1.1.3.[1] Importantly, the defined term, "Settling Defendants," is <u>inclusive</u> of "Downstream InEx Releasees," which are defined under the agreement as follows:

> …Subsuppliers, General Contractors, Subcontractors, Installers, Developers, and Realtors who purchased or received Chinese Drywall from InEx, used Chinese Drywall supplied by InEx in the construction of Affected Property, or sold or marketed Affected Property containing Chinese Drywall sold, marketed, distributed, and/or supplied by InEx, and shall include but not be limited to those persons and entities listed on Exhibit 1.10 <u>except for any Builders that may be listed thereon.  For purposes of clarity, Builders shall not be Downstream InEx Releasees.</u>

InEx Settlement Agreement, § 1.10  (emphasis added).

8.     It is unclear why the parties to the InEx Settlement Agreement intended to specifically exclude Builders from the definition of "Downstream InEx Releasees,"[2] while parties that are similarly situated to Builders, such as Developers[3] and General Contractors,[4] are included in this definition.  Whatever distinction these settling parties are trying to make, however, is unworkable, in part because many homebuilders may in

---

[1] This proposed settlement "Class" is broken down into two subclasses, a Louisiana Subclass and a Non-Louisiana Subclass.  InEx Settlement Agreement, §§ 1.1.3.1 and 1.1.3.2.

[2] A "Builder" is defined under the agreement as "any entity or person engaged principally in the business of construction of properties and to whom a Developer sells or has sold one or more lots on which the property construction will take place.  A Builder shall not include a Developer engaged solely in selling the lot on which such property is constructed, who does not have the authority to manage or control the actual construction.  Other entities or persons excluded form the term Builder include, but are not limited to, subcontractors, material suppliers, installers, and design professionals."  InEx Settlement Agreement § 1.6.

[3] A "Developer" is defined under the agreement as "the developer of any properties with Chinese Drywall that was sold, marketed, distributed and/or supplied by InEx."  InEx Settlement Agreement § 1.9.

[4] A "General Contractor" is defined under the agreement as "any general contractor which (i) took part in the building, remodeling or restoration of any property with Chinese Drywall that was sold, marketed, distributed and/or supplied by InEx, and (ii) did so working under contract with, and/or under the direction of a Builder." InEx Settlement Agreement § 1.14.

some instances fit within the definition of a Builder, a Developer and a General Contractor all at the same time.   Moreover, any settlement that leaves a Builder exposed to liability to a homeowner by not providing the Builder with a complete release, while at the same time bars that same Builder from pursuing indemnity or some other form of recovery from the other defendants "downstream" from InEx, reflects a fundamental lack of due process and should be rejected out of hand.

9.     Essentially, if the homebuilders do not opt-out of the settlement within the prescribed time frame, they will receive some unknown allocated portion of whatever is left, if anything, from (i) the proceeds of InEx's primary insurance policies and (ii) the recovery by the PSC through InEx's assignment of its right to pursue InEx's excess carrier, The North River Insurance Company, for any available excess insurance policy limits (which could conceivably be nothing at all), <u>after</u> deducting, among other things, (a) amounts already earmarked for pending and prior settlements (InEx Settlement Agreement, §§ 1.21 and 1.23); (b) attorneys' fees and costs to the "PSC, common benefit attorneys, and privately retained attorneys for all Class Members" (InEx Settlement Agreement, § 16.7); and (c) the costs of publishing notice of the class settlement (InEx Settlement Agreement, § 6.2).

10.     In exchange for their possible receipt of nothing, or almost nothing, the homebuilders are required under the InEx Settlement Agreement to grant a full and complete release of:

> …any and all claims against any Settling Defendants whatsoever (a) arising out of, in any manner related to, or connected in any way with Chinese Drywall, or the collective mitigation of, response to, and/or recovery from the damage caused by Chinese Drywall and/or any act and/or failure to act related in any way to any of the foregoing, and/or (b) for any and all losses, damages and/or injuries arising from, in any

6

manner related to, or connected in any way with all and/or any of the foregoing, including but not limited to any and all claims that a Class Member has, may have, or may have had, regardless of whether such claim is known or unknown, filed or unfiled, asserted or as yet unasserted, or existing or contingent, and whether asserted by petition, complaint, cross-claim, third party demand, or otherwise (or any judgment or order entered on such claims), and which is based upon or alleges any act, conduct, status or obligation of any person or entity (including the Settlement Defendants) and/or any source of liability whatsoever, and regardless of the legal theory or theories of damages involved.

InEx Settlement Agreement, § 4.1.1.; *see also* § 4.3.1. ("…all Class Members…hereby fully, finally, and forever release, waive, discharge, surrender, forego, give up, abandon, and cancel any and all Released Claims (as defined in Section 4.1) against the Settling Defendants and Released Parties, including (but not limited to) those asserted, or that could have been asserted, in the Litigation, the Related actions, and/or the Related Claims.")

11.     In other words, the homebuilders are not just required to release InEx, Arch and Liberty Mutual, but they are also required to release all "Downstream InEx Releasees."  The seriousness of the impact of this release on homebuilders' claims cannot be overstated.  For example, many of the homebuilders used drywall subcontractors to purchase and install drywall in their homes pursuant to subcontract agreements that contained contractual indemnities and warranties, and that required the drywall subcontractors to name the homebuilders as additional insureds under the subcontractors' insurance policies.  Given the structure of the InEx Settlement Agreement, these drywall subcontractors fit squarely within the definition of "Settling Defendants," which would be fully released from any claims the homebuilders may have against them (whether contractual, statutory or otherwise), without having paid the

homebuilders any form of consideration for such a release.[5]  The same holds true for any other "downstream" defendant.  Such a unreasonable and inadequate result is unacceptable to homebuilders.

12.    To make matters worse, whether or not a homebuilder opts out of the settlement, the InEx Settlement Agreement contemplates that the Court will enter a bar order that:

> 11.2.1 Enjoin[s] and forever bar[s] any and all Class Members from commencing and/or maintaining any action, legal or otherwise, against he Settling Defendants arising out of, or otherwise relating to, Chinese Drywall;
>
> 11.2.2 Bar[s] the assertion **by any entity or person** against the Settling Defendants of any contribution, indemnification, subrogation, other claims concerning (i) the Chinese Drywall  claims against InEx or (ii) this Settlement.

InEx Settlement Agreement, § 11.2 (emphasis added); *see also* § 4.3.2.  Therefore, even a person or entity that chooses to opt out of this settlement – *i.e.,* a non-settling defendant -- will be forever barred from pursuing Downstream InEx Releasees, such as drywall subcontractors, for claims relating to Chinese Drywall supplied by InEx.

13.    "A court can endorse a settlement *only* if the compromise is fair, reasonable and adequate."  *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (emphasis added).  Moreover, "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is *not* enough to earn the judicial stamp of approval."  *Id.*  (emphasis added).

14.    A bar order similar to the one included in the InEx Settlement Agreement was rejected by a district court in *Altman v. Liberty Equities Corp.*, 54 F.R.D. 620, 622

---

[5] The insurers of these drywall subcontractors would similarly be released.  InEx Settlement Agreement, § 1.26 (defining "Released Party" to include "insurers" of "Downstream InEx Releasees").

(S.D.N.Y. 1972).  There, the court described the proposed bar order as follows:

> The final judgment contemplated shall bar and permanently enjoin the non-settling defendants from prosecuting against the settling defendants any claim or claim over for indemnification or contribution arising out of the subject matter of this or any related matter.

*Id.*  The *Altman* court concluded that it could not "fairly approve of the proposed bar order in the stipulation of settlement."  *Id.* at 625.  The court reasoned "there can be no doubt that the objecting defendants are entitled to contribution…," and "it can be said that the objecting defendants presently have sufficient rights in their potential claims for contribution that a bar thereof would be prejudicial to their interests."  *Id.*  The court went on to hold that "these are sufficient grounds to require this court to refrain from barring the non-settling defendants from such rights at this time."  *Id.*

15.    Put simply, the rights and interests of the homebuilders are materially and negatively impacted by the InEx Settlement Agreement.  It should be flatly rejected by the Court.  The Court should also require that homebuilders be permitted to participate in any further negotiations that attempt to resolve any and all claims against any supply chain defendants on a global basis.

**WHEREFORE,** for all the foregoing reasons, the HSC objects to the InEx Settlement Agreement, and respectfully requests that the Court deny the Motion to Approve InEx Settlement Agreement.

Dated:   May 3, 2011                    Respectfully submitted,

**STONE PIGMAN WALTHER WITTMANN**
*Local Lead Counsel for  the HSC*
546 Carondelet Street
New Orleans, LA  70130
Telephone: (504) 593-0804
Facsimile: (504) 593-0804
E-mail: pwittmann@stonepigman.com

By:      */s/ Phillip A. Wittmann*
         PHILLIP A. WITTMANN
         Louisiana Bar No. 13625

**SIVYER BARLOW & WATSON**
*Member of the HSC*
100 S Ashley Drive, Suite 2150
Tampa, FL 33602
Telephone: (813) 221-4242
Facsimile: (813) 227-8598
Email: nsivyer@sbwlegal.com

By:      */s/ Neal Allen Sivyer*
         NEAL A. SIVYER
         Florida Bar No. 373745

**GREENBERG TRAURIG, P.A.**
*Lead Counsel for the HSC*
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
Email: bassh@gtlaw.com

By:      */s/ Hilarie Bass*
         HILARIE BASS
         Florida Bar No. 334323
         MARK A. SALKY
         Florida Bar No. 058221

**KING & SPALDING LLP**
*Member of the HSC*
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: kbuster@kslaw.com

By:      */s/ J Kevin Buster*
         J. KEVIN BUSTER
         Georgia Bar No. 099267

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 3, 2011, this document has been served on Plaintiffs' Liaison Counsel, Russ Herman, Esq., and Defendants' Liaison Counsel, Kerry Miller, Esq., Homebuilders' Liaison Counsel, Dorothy Wimberly, Esq., and Insurer Defendants' Liaison Counsel, Judy Y. Barrasso, Esq., by U.S. mail and/or email or by hand delivery and I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 6.

/s/ Hilarie Bass_____
Hilarie Bass