## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO. 09-2047

SECTION L

THIS DOCUMENT RELATES TO:

JUDGE FALLON

ALL CASES AND

MAG. JUDGE WILKINSON

*Silva v. Interior/Exterior Building Supply, No. 09-8030*

### OBJECTIONS OF THE NORTH RIVER INSURANCE COMPANY TO MOTION FOR AN ORDER PRELIMINARILY APPROVING INEX SETTLEMENT AGREEMENT, CONDITIONALLY CERTIFYING INEX SETTLEMENT CLASS, ISSUING CLASS NOTICE, AND <u>SCHEDULING A SETTLEMENT FAIRNESS HEARING</u>

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant The North River Insurance Company ("North River") objects to the Joint Motion filed by the Plaintiffs' Steering Committee ("PSC"), Interior/Exterior Building Supply ("INEX"), Arch Insurance Company ("Arch"), and Liberty Mutual Insurance Company ("Liberty Mutual") which requests preliminary approval of an INEX Settlement Agreement, conditional certification of an INEX settlement class, and other relief for several reasons:

1.      The parties to the Joint Motion are asking this Court to ignore the plain language of Fed. R. Civ. P. 23 so that the Court may "conditionally" certify a class and "preliminarily" approve a multi-million dollar settlement agreement.  Rule 23 does not provide for, and does not allow, a Court to give advisory opinions based solely on a movant's assertions that a class should be certified and a settlement of the class claims approved.

2.      The schedule set for consideration of this motion does not provide North River and other interested parties with adequate time to review and evaluate the proposed settlement.

3.      Neither the motion, the Settlement Agreement, nor the proposed class notice adequately informs North River, the Plaintiffs, or other interested parties with sufficient information as to the amount actually being paid in settlement, how the settlement proceeds will be allocated, or the compensation that may ultimately be received by individual class members;

4.      The proposed Settlement Agreement purports to assign INEX's rights against North River to persons or entities who are not insureds under the policies issued by North River to INEX in violation of the terms of the relevant policies.

5.      The proposed Settlement Agreement would require INEX to violate the cooperation provision of the policies issued by North River to INEX.

6.      North River objects to the Joint Motion because it is replete with self-serving language that is not relevant or necessary to the settlement itself.  North River is concerned that, if the Joint Motion is granted, Plaintiffs will seek to use the approval of the settlement as approval of the matters set forth in the Joint Motion.  Many of the items set forth in the Joint Motion are disputed and without either legal or factual support.  Even if the Joint Motion is granted, the Court should make it clear that it is only approving the settlement and is not adopting the language of the Joint Motion or making findings that any of the facts in the Motion are correct or should be taken as established.

**INTEREST OF NORTH RIVER IN THE SETTLEMENT AGREEMENT**

North River issued four excess liability policies to INEX that are at issue here.  Two policies have aggregate limits of $15 million and two policies have aggregate limits of $25 million.  The proposed settlement agreement purports to assign the majority of INEX's rights to the proceeds of those policies to certain non-Louisiana Plaintiffs, to allow for additional litigation against North River, to limit North River's right to discoverable information, to allow INEX to breach its duties under the policies of insurance issued by North River, asks the Court to

summarily order that all primary coverage under the North River policies is exhausted, and to take other actions that affect the substantive rights of North River.  North River therefore has an interest in the proposed Settlement Agreement and a right to be heard on its objections.  *See In Re: Vioxx Products Liability Litigation*, 388 Fed. Appx. 391, 395 (5th Cir. 2010) (recognizing that a non-party to a settlement agreement have standing to object to the settlement if it deprives the non-party of its rights or results in plain legal prejudice to the non-party); *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1160 n. 10 (5th Cir. 1985 (stating that a court may consider an attempt by a non-party to void portions of a settlement agreement that purport to affect the rights of the non-party).

North River has not breached any duty to INEX under any of the relevant four policies issued to INEX.  In fact, it has been INEX's position that the primary policies issued to INEX have not yet been exhausted and therefore any obligation under the excess policies has not yet matured.  North River does not consent to the settlement nor does it consent to any attempt by INEX to assign its rights under any of the policies issued by North River.  In order to protect its rights, North River objects to the Joint Motion for the following reasons.

## OBJECTIONS TO THE JOINT MOTION AND PROPOSED SETTLEMENT AGREEMENT

### 1. Objection to the Request for Advisory Opinions on the Class and the Settlement

Fed. R. Civ. P. 23 provides a carefully-structured method for certifying class actions and resolving class action proceedings through settlement.  Courts considering a class certification request "must be mindful" that Rule 23 "sets the requirements they are bound to enforce." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rule 23 is the result of "an extensive deliberate process involving many reviewers" and courts "are not free to amend a rule outside the process Congress ordered." *Id.*

In the 1966 amendments to Rule 23, the Advisory Committee noted that mass torts are "ordinarily not appropriate" for class treatment (Adv. Comm. Notes, 28 U.S.C. App., p. 697), but did not categorically exclude mass tort cases from class certification. *See Amchem*, 521 U.S. at 625. The Advisory Committee also noted that Rule 23(b)(3) certification was framed for situations in which "class-action treatment is not as clearly called for" as it is in Rule 23(b)(1) and (b)(2).[1] Adv. Comm. Notes, 28 U.S.C. App., p.697. In fact, Rule 23(b)(3) has been described as "the most adventuresome innovation" in class action procedure. *Amchem*, 521 U.S. at 614, *citing* Kaplan, A Prefatory Note, 10 B.C. IND. & COM. L. REV. 497, 497 (1969).

While Rule 23 allows settlement-only classes, settlement-only classes "demand undiluted, even heightened" judicial scrutiny. *Amchem*, 521 U.S. at 620. The settlement provision in Rule 23(e) is "an additional requirement, not a superseding direction, to the requirements for certification under Rule 23(a) and 23(b). *Id.* at 621. This means that a settlement-only class must be appropriate not only under Rule 23(b), but the class must come within the requirements of Rule 23(a) and 23(b).

The proponents of the settlement class before the Court are using the "most adventuresome" class action procedure (Rule 23(b)(3)) in the type of case for which class treatment is "ordinarily not appropriate" (mass tort). In this context, it is especially important for the Court to adhere to the requirements of Rule 23. Rule 23 does not talk about "preliminary approval" or a settlement agreement or "conditional certification" of a class. Any such rulings by the Court would be at best advisory rulings that are beyond the jurisdiction of the Court. *See John Doe # 1 v. Veneman,* 380 F.3d 807, 814 (5th Cir.2004) (recognizing that " 'a federal court

---

[1] While the PSC, INEX, Arch, and Liberty are seeking certification under Rule 23(b)(3), it is not at all clear that 23(b)(3) is the appropriate vehicle for the settlement. The settlement does not propose to pay a specific sum to any plaintiff; instead it provides for a limited fund that does not purport to finally resolve the claim of any individual plaintiff. This suggests that the class may be more properly handled as a limited fund class under Rule 23(b)(1). *See In re Katrina Canal Breaches Litigation*, 628 F.3d 185, 191 (5th Cir. 2010 (discussing limited fund classes). *But see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 844 (5th Cir. 1999) (questioning whether it is ever appropriate to aggregate individual mass tort claims under Rule 23(b)(1)).

has neither the power to render advisory opinions . . . .") (*quoting Preiser v. Newkirk,* 422 U.S. 395, 401 (1975) (internal quotation marks and citations omitted)).

The Court should decline to stray outside the provisions of Rule 23.  It is entirely inconsistent with the careful requirements of the class action rule for a court to "preliminarily" approve a class settlement without full briefing and a plenary hearing.  It is equally improper for a court to "conditionally certify" a class without proof that the proposed class meets the standards of Rule 23.  If the PSC, INEX, Arch, and Liberty want to seek court approval of a settlement-only class they are free to do so, but it should be done within the parameters of Rule 23 and not through procedural devices that are neither recognized by nor consistent with the heightened Rule 23 scrutiny required for a settlement-only class.

### 2.        Objections to Section 16: Allocation of Payments

The most glaring omission in the Joint Motion and the proposed Settlement Agreement is what is ***not*** in the Agreement: any information which would allow potential class members and other affected parties to determine the potential financial impact of the settlement.  Section 16 purports to deal with allocation, but it does not identify the total amount of funds that will be available for distribution.  Section 16 mentions a "Settlement Fund," although that does not appear to be a defined term.  There is a definition for "Insurance Proceeds" which includes a gross number of $8 million (§ 1.16), but it is not clear what amount is available for distribution to class members.  That amount is to be reduced by $100,000 for class notice costs (§ 6.2.1), amounts paid in settlement in the amount of $851,433, and unspecified amounts for pending settlements and prior unfunded settlements.  The amount available is also to be reduced by up to 32% for distribution to attorneys as well as an undisclosed amount of "reasonable costs."

The Settlement Agreement and the Joint Motion nowhere provide a firm number, or even an estimate, on the amount of settlement proceeds that could be available to class members.

Instead of the $8 million that is mentioned, it could be as little as $4 million or less.  Because of the omission of this vital information, the Joint Motion is asking the class members and other affected parties to buy a pig-in-a-poke whose real value is hidden and unknown.

North River additionally objects to the provisions of § 16.1 which (1) ask the Court to participate in the determination of the allocation method as well as to devise procedures by which the allocation shall proceed and (2) give the Court final decision on whether the allocation method or procedures are valid and proper.  No individual should be both a active participant, witness, trier of fact, and judge all in the same case.  Neither can a court deny appellate review, which seems to be the intent behind the provision stating that allocation decisions "may be appealed solely to Judge Fallon, whose decision shall be final." Section 16.1.

### 3. *Assignment of Claims Against North River: Sections 3.3 and 1.20.7*

As part of the proposed Settlement Agreement, INEX will be required to assign $72 million of potential insurance coverage to a Non-Louisiana Subclass in order to allow those assignees to pursue claims directly against North River (§ 3.3).  The assignment is presumably limited to non-Louisiana homeowners because the states in which they live do not allow direct actions against insurers.  On the face of the proposed Settlement Agreement, therefore, INEX and the PSC are asking the Court to assist them in circumventing the laws of states across the country.

The policies issued by North River to INEX contain provisions expressly prohibiting assignment of policy rights to third parties without the consent of North River.  North River has not been asked to consent to such an assignment and has not consented to such an assignment. North River objects to any proposed assignment of its policy rights to third parties.

The Joint Motion and Settlement Agreement not only propose such an assignment, but ask the Court for an order that the proposed assignment "is valid, binding, and enforceable."

Section 1.20.7.  The proposed assignment is not valid, binding, or enforceable, nor have INEX and the PSC put anything before the Court that would justify such a determination by the Court.

### 4.      *Exhaustion of Primary Coverage: Section 1.20.6*

INEX, the PSC, and INEX's primary liability carriers, Arch and Liberty, are asking the Court to enter an order declaring that once Arch and Liberty pay their undisclosed policy proceeds into an escrow account, "the aggregate limits of the Arch Policies and the Liberty Policies are exhausted."  Just because Arch and Liberty, who are not disinterested parties, say their coverage is exhausted does not make it so.  If they want the Court to make a ruling that the limits of their liability have been exhausted, it is their burden to provide evidence to support such a conclusion.  They cannot do so, and indeed the express terms of the Settlement  Agreement establish that the relevant primary policies would not be properly exhausted.

For example, the Settlement Agreement dedicates money from the policies to resolve "Chinese Drywall" claims against INEX, but the Settlement Agreement defines "Chinese Drywall" to include drywall manufactured by any manufacturer in China, "<u>whether reactive or not</u>." Section 1.7.  If drywall is not reactive, then it does not emit gases and does not present any risk for the type of property damage and personal injury which has been alleged by the plaintiffs in this proceeding.  In other words, some portion of the money from the Arch and Liberty policies will be used for the purely prophylactic purpose of replacing a product that has not failed and is not defective.  These claims do not involve any property damage, would not result in any liability against INEX and are not covered under any relevant insurance.  If the insurance dollars pay uncovered claims, then there is no exhaustion of those policies.

The Settlement Agreement purports to exhaust coverage without any evidence of what amount is being paid or identifying to what claim any payments apply. It even asks the Court to ignore the contractual requirements of proper exhaustion and to make an unsupported,

unappealable finding that the relevant primary policies were properly exhausted.  The Court should not approve this Settlement Agreement.

### 5.     *Disclosure of confidential information: Section 16.2*

In Section 16.2 of the Settlement Agreement, INEX "agrees to cooperate with reasonable requests for documents and other information related to continuing litigation against the Excess Carrier [North River] and the manufacturers of Chinese Drywall."  To the extent that provision means that INEX agrees to provide non-privileged information concerning the litigation to the PSC, North River has no objection.  The language of § 16.2 is not that limited, however.  As it is written, INEX is agreeing to hand over to the PSC anything that the PSC "reasonably" requests.

The insurance policies issued by North River to INEX all contain a provision requiring that INEX cooperate with North River in the investigation and resolution of third-party claims arising out of the conduct of INEX.  That contractual provision means that INEX has agreed not to voluntarily take actions that will prejudice the ability of North River to defend those claims.  If § 16.2 is intended to allow INEX to give the PSC privileged information or information which INEX would not otherwise be required to give to the PSC through normal discovery processes, then it is intended to cause INEX to violate its contracts with North River.

### 6.     *Attempt to Hide Relevant Evidence: Section 18*

Section 18 of the Settlement Agreement purports to make all documents of any type relating to the Settlement Agreement not only inadmissible in any future judicial proceeding but not even discoverable.  In this effort to hide potentially relevant and inadmissible evidence from the rest of the world, the parties to the Settlement Agreement seek to invoke Federal Rule of Evidence 408.  This is a gross misapplication of Rule 408.

Rule 408 does not address discoverability of evidence.  Instead, it only limits the admissibility of certain information relating to settlement discussions when the evidence is

"offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount" or for certain types of impeachment.  *See* Fed. R. Civ. P. 408(a).  Rule 408 does not require exclusion of the evidence if the evidence is offered for a purpose not prohibited by 408(a), such as the bias or prejudice of a witness.  Rule 408(b).  In fact, courts have consistently held that Rule 408 does not even bar the admission of relevant evidence in litigation involving a claim that is different than the claim that was the subject of earlier compromise negotiations or settlement.  *See, e.g., Dahlgren v. First Nat'l Bank*, 533 F.2d 681, 699 (8th Cir. 2008); *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997) ("Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated"); *United States v. Austin*, 54 F.3d 394, 400 (7th Cir. 1995); *Trinity Mortg Co., Inc. v. Dryer*, 2010 WL 2365525, *1 (N.D. Okla. 2010); *Pace v. Paris Maintenance Co.*, 107 F. Supp.2d 251, 265 (S.D.N.Y. 2000).  *See also Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 297-98 (5th Cir. 2010) ("settlement evidence is not inadmissible merely because it relates to circumstances that are 'similar' to those being litigated").

The evidence surrounding the Settlement Agreement is potentially relevant to a number of issues in future litigation involving North River: whether the primary coverage below the North River policies has been properly exhausted; whether INEX complied with its contractual duties under the North River policies; whether an individual plaintiff has been fully compensated for his or her damage; whether an appropriate credit has been applied to the claim of a certain homeowner; and many other issues.  The range of potentially relevant evidence is too large to allow INEX, the PSC, Arch, and Liberty – who will not be parties to that future litigation – to unilaterally place relevant, discoverable, and admissible evidence beyond the reach of other litigants.

Rule of Evidence 408 was never intended to be used to prevent the discovery of relevant or admissible evidence.  The attempts by INEX, the PSC, Arch, and Liberty to misuse Rule 408 as a means of hiding evidence must not be allowed.

### CONCLUSION

For the foregoing reasons, The North River Insurance Company asks that preliminary and final approval of an INEX Settlement Agreement, conditional certification of an INEX settlement class, and other relief filed by the PSC, Interior/Exterior Building Supply, Arch Insurance Company, and Liberty Mutual Insurance Company be denied.

Respectfully submitted,

THOMPSON COE COUSINS & IRONS LLP

By:  _____/s Eric B. Berger_____
BRIAN S. MARTIN, ESQ.
KEVIN RISLEY, ESQ.
RODRIGO "DIEGO" GARCIA, JR., ESQ.
One Riverway, Suite 1600
Houston, Texas 77056
Phone: (713) 403-8206
Fax:  (713) 403-8299
bmartin@thompsoncoe.com

LOBMAN CARNAHAN BATT ANGELLE & NADER

SIDNEY J. ANGELLE, ESQ.
La. Bar No. 1002
ERIC B. BERGER, ESQ.
La. Bar No. 26196
400 Poydras Street, Suite 2300
New Orleans, Louisiana 70130
Phone: (504) 586-9292
Fax:   (504) 586-1290
sja@lcba-law.com
ebb@lcba-law.com

ATTORNEYS FOR THE NORTH RIVER INSURANCE COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on May 3, 2011.

_____*/s Eric B Berger*_____
ERIC B. BERGER
