UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) | MDL NO. 2047<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO ALL CASES**

**<u>PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS & FURTHER JURISDICTIONAL DEPOSITIONS OF THE TAISHAN DEFENDANTS & FOR SANCTIONS</u>**

**MAY IT PLEASE THE COURT:**

Pursuant to Federal Rule of Civil Procedure 37(a)-(b), the Plaintiffs' Steering Committee ("PSC"), served interrogatories and requests for production of documents concerning jurisdictional issues upon Defendants Taishan Gypsum Co. Ltd. ("TG") and Taian Taishan Plasterboard Co. Ltd. ("TTP"), (collectively, the "Taishan Defendants"). The PSC served interrogatories and requests for production of documents concerning jurisdictional issues upon Taishan Defendants. The Court is familiar with this in light of the PSC's Motion Challenging the Adequacy and Completeness of the Discovery Responses by The Taishan Defendants, filed January 12, 2011 (see Rec. Doc. 6964) and the PSC's Renewed Motion Challenging the Adequacy and Completeness of the Discovery Responses, filed February 9, 2011 (see Rec. Doc. 7364). Copies of the relevant Discovery at issue are incorporated in the prior motions filed by the PSC and in order to not be redundant the Discover is not copied again. The Court is aware of the procedural history and motion practice related to jurisdictional discovery of the Taishan

1

Defendants; therefore, the PSC will not rehash it. As set forth herein, the Taishan Defendants have been less than forthcoming and obstreperous with their discovery responses, document production, production of witnesses for Rule 30(b)(6) depositions, and their conduct during the 30(b)(6) depositions. The PSC has moved the Court to compel the documents set forth herein, further depositions of the witnesses set forth herein, and sanctions, attorneys' fees and costs against the Taishan Defendants for the reasons set forth below.

This Memorandum will first discuss the PSC's motion to compel documents and which documents are missing from the Taishan Defendants' production. Next, the PSC will address its motion to compel depositions of further jurisdictional witnesses and finally its motion for sanctions.

### A. THE TAISHAN DEFENDANTS' PRODUCTION OF RELEVANT DOCUMENTS IN CHINESE 10 MINUTES BEFORE THE FIRST DEPOSITION IN HONG KONG

Four attorneys on behalf of the PSC and eight other attorneys on behalf of the HSC and other parties traveled thousands of miles to Hong Kong to participate in the depositions only to be stymied by the Taishan Defendants' discovery tactics. The first example of the Taishan Defendants inappropriate discovery conduct occurred before the first deposition in Hong Kong even began. Before the first deposition, the Taishan Defendants' counsel announced that it was producing responsive documents in Chinese language reflecting transactions between TTP and TG: a licensing agreement, a warehouse leasing agreement, and an equipment purchase agreement. (Dep. of T. Jia at 16-17, Ex. A, which is submitted to the Court under seal, due to confidentiality designations.) According to Taishan's counsel, the documents had only been "located" the day before. *Id.* These documents were requested by the PSC and addressed as a designated 30(b) (6) topic. The documents are directly relevant to Plaintiffs alter-ego theories of

the Taishan entities and the control over TTP and TG by "upstream" entities. But the PSC did not have the opportunity to have the documents translated, nor study them before the deposition with such a late production. Off the record, Plaintiffs' counsel inquired as to whether the Taishan Defendants had a translation of the documents and defense counsel indicated that no translation existed. Thus, for a deposition where the subject matters for examination included the relationship between TG and TTP and any transactions between the entities, Defendants produced highly relevant documents in Chinese language at the start of deposition.

The Taishan Defendants' tactic of late document production at such important and expensive depositions (travel, translators, court reporter, videographer and accommodations) is egregious. The Taishan Defendants have participated in these cases for nearly a year. The Court has been extremely patient with scheduling the jurisdictional depositions and understanding the alleged difficulties confronted by Taishan's counsel and its clients. Taishan's counsel's has represented in Court that it faced difficulties in discovery due to a language barrier with its clients. Taishan's counsel's candor with the Court regarding the language barrier is questionable, given that at the depositions at least one, and sometimes two, Chinese and English speaking lawyers from Hogan Lovells[1] and a third lawyer from a Beijing law firm fluent in Chinese and English[2] were present at the depositions, and an interpreter.

In light of this eleventh-hour disclosure of relevant documents set forth above and the fact that prior to the first deposition, the PSC has not received any similar such materials from the Taishan Defendants, Plaintiffs seek production of the following:

---

[1] Mr. Eugene Chen of Hogan Lovells was present at all depositions the week of April 4. Ms. Stacy Yuan of Hogan Lovells was present for all but one day of depositions the week of April 4.
[2] Mr. Chungang Dong of the law firm of Jigtian & Gongcheng located in Beijing, China. Mr. Dong's profile on his law firm's website provides that he is a native Chinese speaker and fluent in English. See http://www.jingtian.com/eng/node/165, last accessed April 28, 2011.

1. any and all licensing, marketing, rental, leasing, shipping, loan, or expense-sharing agreements between the TG and TTP, and any translations thereof;

2. any and all notes, correspondence, email, reports, analyses, or memoranda concerning such agreements, and any translations thereof;

3. any and all board minutes where executive, directors, or shareholders of either TG or TTP discussed, approved, or voted, on such agreements; and

4. any and all documentation of any payments or exchange of monies between the two entities.

The PSC will address additional areas of missing document production in turn, below.

### B. THE TAISHAN DEFENDANTS FAILED TO PRODUCE DOCUMENTS REGARDING BEIJING NEW BUILDING MATERIALS, INCLUDING LOAN GUARANTEES FOR TTP

The PSC has alleged that TG and TTP are controlled by or are the alter-ego of Beijing New Building Materials, PLC ("BNBM").  Mr. Tongchun Jia is Chairman of the Board and General Manager for TG.  (Dep. of T. Jia at 24:21-26:09).  Mr. Jia sits on the Board of Directors of BNBM, which owns 42 percent of TG, TG has a 65% voting ratio in BNBM, and BNBM holds out TG as a main component of its plasterboard production.  (*See, e.g.*, Dep. of T. Jia at 35, 47; BNBM 2010 Interim Rpt. at 5-6 (Ex. B, attached hereto with translation); BNBM 2007 Annual Rpt. at 68).  Mr. Jia further testified that BNBM has guaranteed loan obligations on behalf of Taishan Gypsum.  (*See* Dep. of T. Jia at 191:18-20).  Ultimately, Mr. Jia admitted that TG and BNBM have a joint venture together.  (Dep. of T. Jia at 203:19-204:10).  To date, TG has produced no information pertaining to its relationship with BNBM; therefore, the PSC seeks production of the following:

1. Plaintiffs request all documents and communications relating to any guarantees provided by BNBM on behalf of TG;

2. any documents and communications relating to BNBM's acquisition of shares in TG;

3. any board minutes of BNBM where TG is discussed or referenced in any way;

4. any board minutes of TG where BNBM is discussed or referenced in any way;

5. any reports, analyses, or summaries regarding TG's operations or finances that have been provided to BNBM;

6. any reports, analyses, or summaries regarding BNBM's operations or finances that have been provided to TG;

7. all annual reports, government filings, or foreign government filings created by TG during the relevant time period; and

8. all annual reports, government filings, or foreign government filings created by BNBM during the relevant time period.

## C. **THE TAISHAN DEFENDANTS FAILED TO PRODUCE EMAILS WRITTEN ON BEHALF OF OR BY MR. TONGCHUN JIA**

The PSC has conducted a diligent search, and upon information and belief, the Taishan Defendants' production contains no emails from Mr. Jia. At his deposition, Mr. Jia testified that there are three people in his office who occasionally receive and send emails on his behalf: Zhang Jian Chun, Chen Xin Hua, and Zhao Xiu Yun. (Dep. of T. Jia at 54:06-54:19 and 57:21-58:13). Accordingly, Plaintiffs request production of all emails from the files of Tongchun Jia and the witnesses identified above, pertaining to the subject matters identified in the Rule 30(b)(6) deposition notice.

D. **THE TAISHAN DEFENDANTS FAILED TO PRODUCE MONTHLY REPORTS ON TTP'S OPERATIONS AND COMMUNICATIONS BETWEEN MR. JIA AND TTP**

Mr. Jia testified that he receives a monthly report concerning the operations of TTP and that occasionally, he has exchanges with the directors of TTP. (*See* Dep. of T. Jia at 131:18-132:11). To date, the PSC has not received any such reports. The PSC requests production of all monthly reports generated by TTP and sent to TG. Further, Plaintiffs request any and all communications between Mr. Jia and the Board of Directors of TTP, including but not limited to Pang Shi Liang. (*Id.* at 132:12-22; see also 136:12-138:21). Additionally, Mr. Jia testified that he received audited financial statements from TTP on a monthly basis. (*See id.* at 136:03-06). Plaintiffs request production of any and all financial statements created by TTP during the Relevant Time Period.

E. **THE TAISHAN DEFENDANTS FAILED TO PRODUCE TEST RESULTS CONCERNING ITS DRYWALL**

Mr. Jia testified that TG investigated the alleged defects associated with Chinese manufactured drywall and that TG conducted some testing. That testing included the construction of a building using Chinese manufactured drywall, when no subsequent problems were detected, and that TG conducted a survey of its customers and found no complaints related to the drywall. (*See* Dep. of T. Jia at 369:16-370:18). Mr. Jia admits that TG is in possession of the customer survey and the complaints that prompted it. (*Id.* at 373:10-23). Plaintiffs therefore request the following documents be produced:

1. the complaints that prompted the testing of the drywall and customer survey;
2. any and all documents and communications relating to the test building constructed by TG;

3. all documents and communications relating to the customer survey performed by TG in investigation of the allegations concerning Chinese drywall; and

4. and any sales and marketing materials the Taishan Defendants created as a result of the testing and customer survey.

### F. THE TAISHAN DEFENDANTS FAILED TO PRODUCE ANY DOCUMENTS RELATING TO THE TESTING OF ITS DRYWALL BY THE CHINESE GOVERNMENT

Mr. Jia testified that the Chinese government conducted testing of the drywall and that the test results are in possession of the Chinese government. (*See* Jia Tr. at 376:08-377:05; 377:20-378:12). Plaintiffs request any and all documents and communications related to such testing in the possession of the Taishan Defendants.

### G. THE TAISHAN DEFENDANTS FAILED TO PRODUCE THE CUSTODIAL FILE OR EMAILS OF MR. ZHANG, WHO ASSISTED IN THE MANAGEMENT OF TTP, ITS DAILY OPERATIONS, AND IS SECRETARY OF THE BOARD OF DIRECTORS FOR TTP & TG

Mr. Jianchun Zhang is secretary for the Board of Directors for both TTP and TG. (Dep. of J. Zhang at 20:1-5, attached as Ex. C, which is submitted to the Court under seal, due to confidentiality designations.) Mr. Zhang testified that as Secretary to the Board of Directors for TTP, he drafted documents for the board of directors and assisted in management of the day to day operations of the business. (Dep. of J. Zhang at 21:1-16). Mr. Zhang claims to have knowledge of both TTP and TG's subsidiaries, organization, and structure. (*Id.* at 24:8-15). Plaintiffs request the custodial file of Mr. Zhang.

### H. THE TAISHAN DEFENDANTS FAILED TO PRODUCE ANNUAL REPORTS OF TTP

Mr. Zhang testified that from 2006 to 2009, TTP created annual reports and that he has access to such reports. (*Id.* at 63:19-64:07; 65:01-12). Amazingly, Mr. Zhang did not review

those reports in preparation for deposition, despite the fact that he was the designated corporate representative for TTP. (*Id.*). Nor have the Taishan Defendants produced the annual reports of TTP. Plaintiffs request production of all annual reports for TTP.

### I. THE TAISHAN DEFENDANTS HAVE NOT PRODUCED THE UNDERLYING DOCUMENTS FOR TTP & TG'S MANUFACTURER PROFILE FORM FOR DRYWALL SALES

Mr. Zhang testified that there were sales records for TTP from 2006-2007, although he did not review them. (*Id.* at 69:06-18). The only sales information produced by TTP for drywall is the chart annexed to the manufacturer profile form. None of the designated witnesses produced by Defendants were able to verify the sales history contained in the Manufacturer Profile Forms produced by Defendants, nor were they able to explain how the information contained in the MPFs was collected. Plaintiffs request all source information for the sales history data contained in the MPFs.

### J. THE TAISHAN DEFENDANTS HAVE NOT PRODUCED RECORDS OF TRANSACTIONS OR COST SHARING BETWEEN TG & TTP

Mr. Zhang testified that there have been occasions when TG has provided services to TTP for a fee, and that TTP's finance department has records of such transactions. (*Id.* at 114:04-115:08). To date, no such records have been provided to the PSC. Plaintiffs request any and all records concerning transactions between TG and TTP.

### K. THE TAISHAN DEFENDANTS HAVE NOT PRODUCED TTP'S BUSINESS PLAN FROM 2006-2007

Mr. Zhang testified that TTP had a business plan in 2006 and 2007. (*Id.* at 116:4-8). This business plan has not been produced. Plaintiffs request production of TTP's business plan.

L. **THE TAISHAN DEFENDANTS HAVE PRODUCED NO DOCUMENTS REGARING TTP'S & TG'S JOINT DECISION TO SHUT DOWN TTP'S DRYWALL PRODUCTION IN 2008**

Mr. Zhang testified that the decision to shut down TTP's production of drywall in 2008 was a joint decision made by the Board of Directors of both TTP and TG. (*Id.* at 155:01-05). This is not surprising, given that TTP is a 100% owned subsidiary of TG and the reason TTP was formed was to get a tax break for TG. (Dep. of J. Zhang at 140:17-142:24, 190:11-14) Given TG's control of TTP, the "joint" decision of the Taishan Defendant decision to shut down TG's production is relevant to TG's control of TTP, and ultimately TG's liability for TTP's delivery of drywall to the United States. Consequently, Plaintiffs request production of any board minutes, correspondence, communications, documentation, summaries, memoranda, or analyses relating to the decision to shut down TTP's production.

M. **THE TAISHAN DEFENDANTS HAVE FAILED TO PRODUCE THE UNDERLYING DOCUMENTS THAT SUPPORT THE INFORMATION CONTAINED IN THE MANUFACTURER'S PROFILE FORMS & FAILED TO PRODUCE WITNESSES WHO HAD KNOWLEDGE OF THE FORM, OR WHO SIGNED IT**

The Court required that manufacturer's provide a sworn Manufacturer Profile Form ("MPF") with vital information regarding shipment of drywall to the United States, among other matters. None of the witnesses the Taishan Defendants produced for deposition could meaningfully testify about the information contained in the Taishan Defendants' Manufacturer's Profile Forms ("MPF"). As to TG, Mr. Jia signed the MPF for TG. But Mr. Jia could not testify as to how much drywall TG shipped to the United States in his capacity as General Manager of TG. (Dep. of T. Jia at 329:19-330:133). He admitted that the best person to testify regarding sales of drywall

---

3 These questions arose during questioning on TG's Manufacturer's profile form, Ex. 11 to Mr. Jia's deposition, beginning at p. 321:4.

to the United States were personnel in his foreign sales department, not him. (*Id.* at 440:15-23). He admitted that he did not know what other American customers other than Venture Supply purchased from TG. (*Id.* at 441:19-23). (*Id.* at 443:18-444:5). Thus, Mr. Jia could not meaningfully testify regarding the areas he needed to be knowledgeable in to sign off on the MPF.

As to TTP, Mr. Song Qinghai signed the MPF. (*Id.* at 409:7-20). Mr. Qinghai was the senior official managing production at for TTP. (*Id.*). Mr. Qinghai was terminated by TTP in 2008 and hired by a TG subsidiary in 2008. He signed the MPF on October 14, 2010. (See Taishan MPF). Mr. Qinghai has been employed by a Taishan subsidiary since he was terminated 2010. (*Id.* at 412:16-23). Thus, TTP could have him sign the MPF, but did not produce him for deposition. Given the substantial deficiencies of the Taishan Defendants' witnesses to knowledgeably testify regarding the MPFs, the Taishan Defendants should be compelled to produce knowledgeable witnesses with information regarding the MPFs, including Mr. Qinghai, and production of all documents underlying the MPF.

### N. **THE TAISHAN DEFENDANTS SHOULD BE REQUIRED TO PRODUCE BILL CHER AND APOLLO YANG FOR DEPOSITION AND TO PRODUCE THEIR CUSTODIAL FILES**

Mr. Apollo Yang and Mr. Bill Cher were TG employees that moved over to work at TTP in sales. (Dep. of P. Wenlong at 99:6-10; 112:3-17, see Ex. D, which is submitted to the Court under seal due to confidentiality designations.) Emails produced by the Taishan Defendants demonstrate that Yang and Cher had substantial contact in English with customers in the United States who ordered drywall. (See composite Ex. E as to Apollo Yang, and Ex. F as to Bill Cher, which is submitted to the Court under seal due to confidentiality designations.) Now that Taishan has had the opportunity to produce its witnesses who it believes had the most knowledge regarding jurisdiction, the PSC should be permitted to take the depositions of Yang and Cher, whose email

10

correspondence shows substantial contact with the United States for the sale of drywall. (See Ex. E and Ex. F, filed under seal.) Moreover, given the content of Mr. Yang and Mr. Cher's emails showing contacts with the United States, and to make the requested depositions productive, the PSC also requests that Mr. Yang and Mr. Cher's custodial files be produced.

## O. THE TAISHAN DEFENDANTS' REFUSAL TO PRODUCE DOCUMENTS RELATING TO DOWNSTREAM ENTITIES

The Taishan Defendants refused to produce documents requested early in this litigation. This issue was previously addressed with the Court in the prior Motion Challenging the Adequacy and Completeness of the Discovery Requests and the Renewed Motion Challenging the Adequacy and Completeness of the Discovery Requests. At the hearing on January 20, 2011, the Court addressed issues regarding the Taishan Defendants actions relating to how they "acted with surrogates" and that the Taishan Defendants' actions "controlled the surrogates." The Court suggested that questions regarding this be posed at the depositions and that discovery be broad so that the PSC could determine whether additional documents were needed and whether the surrogates' actions are Taishan actions (see January 20, 2011 transcript of motions hearing, Ex. G attached hereto). The subsidiaries of Taishan should be required to produce documents that were requested many months ago and not produced by the Taishan Defendants. These documents are all within the control or custody of the Taishan Defendants. The depositions clearly revealed that the Taishan Defendants were not prepared to fully answer questions allowed at the hearing of January 20, 2011. Without production of the documents and a witness that can address the "surrogates" issues, the PSC is unable to fully discover relevant information.

### P. THE TAISHAN DEFENDANTS' DISCOVERY CONDUCT SHOULD BE SANCTIONED

There are numerous examples of the Taishan Defendants' discovery conduct that should be sanctioned. The Taishan Defendants' discovery conduct should be sanctioned because it caused the Hong Kong depositions to be of extremely limited value and an enormous expenditure of time and money. The Taishan Defendants' conduct should also be sanctioned because it could have been prevented if the Taishan Defendants and their counsel were genuine in their efforts to comply with the PSC's discovery requests. As stated previously the PSC has already filed motions with the Court relating to the Taishan Defendants failure to properly participate in discovery. On January 20, 2011, the Court issued a Minute Entry, Rec. Doc. 7136, which ordered "that the parties are to proceed with Rule 30(b)(6) depositions as soon as practicable" and that "scope of the depositions is to be broad, including questions about related, subsidiary, parent and affiliated companies." As if the first Order was not sufficient, the PSC was forced to renew its original motion and on February 16, 2011 another Minute Entry, Rec. Doc. 7511, was issued by the Court wherein "… the Court directed the parties to work together to produce documents necessary to the depositions and stated that it would entertain motions after the depositions regarding document discovery if necessary."

Four PSC lawyers and eight other lawyers took the long and expensive trip to Hong Kong, paying for airfare, lodging and food. Hundreds of hours of attorney time was spent by lawyers preparing for and taking the Taishan depositions. The PSC spent thousands of dollars renting a suitable location in Hong Kong, an interpreter, court reporter and videographer for depositions that ultimately were of limited value due to the Taishan Defendants: 1) failing to produce multiple relevant documents to personal jurisdiction listed above in this motion; 2) failing to produce the

witnesses with the most knowledge regarding the Rule 30(b)(6) topics; and 3) producing highly relevant documents in Chinese, without a translation, just minutes before a deposition began and not giving the PSC adequate time to analyze the documents.

The Taishan Defendants also conducted the depositions in a matter designed to prevent effective questioning of a witness by: 1) agreeing with the PSC to an official translator and then retaining a "check interpreter" that made numerous interjections during every deposition either on her own or when prompted by the Taishan Defendants' English and Chinese speaking lawyers; 2) having its attorneys object to the translation of questions; 3) numerous improper speaking objections that clearly influenced the witnesses; 4) requiring an interpreter for Peng Wenlong, when his college degree was in English literature and he wrote numerous emails <u>in English</u> to customers in the United States <u>in English</u>; and 5) not producing the relevant documents set forth above.

In *Tower Manufacturing Corp. v. Shanghai Ele Manufacturing Corp.*, 244 F.R.D. 125 (USDC, D. Rhode Island, 2007) a Chinese company that was a party to a lawsuit failed to properly participate in discovery as a corporate representative to testify at a 30(b)(6) deposition regarding the Chinese company's customer support center in America. The Court had difficulty determining whether the witness was unwilling or unprepared to testify. The Court could not determine whether the failure to testify "was due to a lack of knowledge on his part or the disruptive effect of Shanghai Ele's counsel's repeated, meritless objections and lengthy interjections…" but it was clear that "Tower did not get the information for which the Court had originally authorized the deposition…" and therefore found a violation of either Federal Rule 37(b)(2) or Rule 30(d)(3). Similarly, in this case the Taishan Defendants have failed to provide testimony in response to the 30(b)(6) deposition notices issued by the PSC. Furthermore as described herein and as exemplified

13

in the depositions counsel for the Taishan Defendants made repeated meritless objections and lengthy interjections in addition to obstructing the orderly process of the deposition.

Federal Rule of Civil Procedure 26(g) "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." The spirit and purpose of the discovery rules were clearly delineated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495,500-01, 67 S. Ct. 385, 91 L.Ed. 451 (1947). The Rule explicitly encourages sanctions where counsel or a party makes a faulty response after failing to conduct a reasonable inquiry under the circumstances and Rule 26(g) makes explicit the authority judges have to impose appropriate sanctions. Furthermore Fed.Rule 37(b) provides for a spectrum of sanctions when a party "fails to obey an order to provide or permit discovery." In addition, pursuant to its inherent power a Court may "fashion an appropriate sanction for conduct which abuses the judicial process." "When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap, but the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *The Rottlund Company v. Pinnacle Corp*., 222 F.R.D. 362 (USDC D. Minn. 2004) and cases cited therein: see also *Roberts v. Norden Division, United Aircraft Corp*., 76 F.R.D. 75 (USDC, E.D.N.Y. 1977) and cases cited therein. Finally, 28 USC § 1927 provides that a counsel can be sanctioned for its conduct in coaching responses, advising clients to give no answers at all and making frequent elicitation of meaningful discovery.

**Q. STATUS OF THE MEET AND CONFER BETWEEN THE PARTIES TO RESOLVE THE ISSUES IN THIS MOTION**

In accordance with the Court's Order, the PSC discussed the above referenced matters in a good faith effort to resolve the issues after the Status Conference on April 26. On April 27, the

PSC had an hour long telephonic meet and confer with Taishan's counsel. (See Email correspondence of L. Davis, Ex. H.) During the April 27th meet and confer, the PSC fully outlined its position regarding the mentioned issues in this motion and provided a written list of discovery it believes is deficient, and explained the problems with the Taishan Defendants' Rule 30(b)(6) witnesses' deficiencies. The PSC has committed to discussing these matters further with the Taishan Defendants' counsel on May 9, in New York City, but have filed this motion to fully explicate its position in the event the present impasse can not be resolved.

WHEREFORE, the PSC respectfully requests that this Honorable Court set a hearing on this matter for May 11, 2011, and that the Court order: 1) the Taishan Defendants to produce the documents requested in this motion; 2) to produce witnesses for deposition knowledgeable of the MPFs; 3) to produce Mr. Cher and Yang for deposition; and 4) to sanction the Taishan Defendants for their conduct in discovery, including, but not limited to the costs of: travel, lodging, food, court reporters, videographer, and the rental of the conference room for the depositions in Hong Kong the week of April 4th; and 5) assessment of attorneys' fees and costs (including, but not limited to the costs of: travel, lodging, food, court reporters, videographer, and the rental of the conference room for the depositions in Hong Kong the week of April 4th) for the PSC's having to file this motion.

Respectfully Submitted,

Dated: May 3, 2011

/s/ Leonard A. Davis
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
Stephen J. Herman, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

Ervin A. Gonzalez (On the Brief)
Patrick S. Montoya (On the Brief)
Colson, Hicks, Eidson, Colson
Matthews, Martinez, Gonzalez,
Kalbac & Kane
255 Alhambra Circle, PH
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com
*Member of the PSC*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
Matthews, Martinez, Gonzalez,
Kalbac & Kane
255 Alhambra Circle, PH
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone:   (757) 233-0009
Fax:   (757) 233-0455
rserpe@serpefirm.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

### OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W. Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 (mailing address)
15058 River Road
Hahnville, LA   70057
Phone:   (985) 783-6789
Fax:   (985) 783-1333
andrew@lemmonlawfirm.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 3rd day of May, 2011.

      /s/ Leonard A. Davis
      Leonard A. Davis
      Herman, Herman, Katz & Cotlar, LLP
      820 O'Keefe Ave.
      New Orleans, LA   70113
      PH:   (504) 581-4892
      Fax:   (504) 561-6024
      ldavis@hhkc.com