# EXHIBIT "G"

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


    ***************************************************************

    IN RE: CHINESE-MANUFACTURED
    DRYWALL PRODUCTS LIABILITY
    LITIGATION

                              CIVIL DOCKET NO. 09-MD-2047-EEF-JCW
                              NEW ORLEANS, LOUISIANA
                              THURSDAY, JANUARY 20, 2011, 10:15 A.M.

    THIS DOCUMENT RELATES TO
    ALL CASES

    ***************************************************************


              TRANSCRIPT OF MOTIONS PROCEEDINGS
         HEARD BEFORE THE HONORABLE ELDON E. FALLON
                  UNITED STATES DISTRICT JUDGE


    APPEARANCES:


    FOR THE PLAINTIFFS:
                              LEVIN FISHBEIN SEDRAN & BERMAN
                              BY:  ARNOLD LEVIN, ESQUIRE
                              510 WALNUT STREET, SUITE 500
                              PHILADELPHIA PA  19106


                              COLSON HICKS EIDSON
                              BY:  PATRICK S. MONTOYA, ESQUIRE
                              225 ALHAMBRA CIRCLE, PENTHOUSE
                              CORAL GABLES FL  33134


    FOR THE DEFENDANTS:       HOGAN LOVELLS
                              BY:  FRANK T. SPANO, ESQUIRE
                              875 THIRD AVENUE
                              NEW YORK NY  10022
```

```
 1  APPEARANCES CONTINUED:

 2

 3  FOR ALL BANNER SUPPLY
    ENTITIES:                WEINBERG WHEELER HUDGINS GUNN & DIAL
 4                           BY:  NICHOLAS P. PANAYOTOPOULOS, ESQUIRE
                             3344 PEACHTREE ROAD, SUITE 2400
 5                           ATLANTA GA   30326

 6

 7  OFFICIAL COURT REPORTER: CATHY PEPPER, CRR, RMR, CCR
                             500 POYDRAS STREET, ROOM B406
 8                           NEW ORLEANS LA   70130
                             (504) 589-7779
 9
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
10  PRODUCED BY COMPUTER.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# I N D E X

MOTIONS                                                              PAGE


PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR ACCOUNTING     4
AND OTHER RELIEF, RECORD DOCUMENT 6669.................
PLAINTIFF'S MOTION TO LIFT THE STAY ON OMNIBUS MOTION     4
FOR PRELIMINARY DEFAULT, RECORD DOCUMENT 5939..........
BANNER'S REQUEST THAT CTEH PRODUCE DISCOVERY RELATED     11
TO MEETING WITH THE CPSC, RECORD DOCUMENT 6634.........
PLAINTIFFS' STEERING COMMITTEE'S MOTION CHALLENGING      12
THE ADEQUACY AND COMPLETENESS OF DISCOVERY OF THE
DEFENDANTS TAISHAN GYPSUM, RECORD DOCUMENTS 6964 AND
6981...................................................

```
10:32AM  1   Record Document 6634.  Is that something we need to orally argue?
10:33AM  2              MR. PANAYOTOPOULOS:  No, Your Honor.  I'm
10:33AM  3   Nick Panayotopoulos on behalf of certain Banner entities.
10:33AM  4              As Your Honor knows, we had a hearing on our motion
10:33AM  5   to compel, and the Court issued an order.  We're just dealing
10:33AM  6   with it, Your Honor.  They produced a lot of documents since the
10:33AM  7   Court's order, and we don't need to take up the Court's time any
10:33AM  8   further.  We'll just come back if we need to.
10:33AM  9              THE COURT:  I'll pass the motion with the understanding
10:33AM 10   that if you don't get what you need, you'll bring it back again.
10:33AM 11              Plaintiffs' Steering Committee's motion challenging
10:33AM 12   the adequacy and completeness of discovery of the defendants
10:33AM 13   Taishan Gypsum.  That's the aspect that we talked about a
10:33AM 14   little bit before, but let's focus on it now.  It's the
10:34AM 15   Record Document 6964, and there is also a Record Document 6981.
10:34AM 16              MR. MONTOYA:  Your Honor, Patrick Montoya on behalf of
10:34AM 17   the Plaintiffs' Steering Committee.  The two motions before
10:34AM 18   Your Honor are very similar.  It's plaintiffs' motion to compel
10:34AM 19   answers and appropriate answers to the first request for
10:34AM 20   production and first set of interrogatories directed at personal
10:34AM 21   jurisdiction discovery.
10:34AM 22              Taishan has also filed a motion for protective
10:34AM 23   order relating to the 30(b)(6) depositions which cover the same
10:34AM 24   topics.  So our argument will both address motion to compel and
10:34AM 25   Taishan's motion for protective order.
```

```
10:34AM  1            The core issue is what Mr. Levin has pointed out
10:34AM  2   earlier in the motion for default objection and what Your Honor
10:34AM  3   has accurately crystallized.  Taishan is making representations
10:34AM  4   on behalf of at least 20 of its affiliates that we cannot take
10:34AM  5   personal jurisdiction discovery over those entities.  They do not
10:34AM  6   dispute that they are affiliated with them.  They simply saying
10:35AM  7   that it's too over broad.
10:35AM  8            Now, why is it not over broad?  Why is it relevant
10:35AM  9   to personal jurisdiction?  It's relevant to personal jurisdiction
10:35AM 10   because on either an alter-ego theory, a veil-piercing theory, an
10:35AM 11   agency theory, or under the undertaker doctrine what those
10:35AM 12   entities that Taishan directs do as is related sales to the
10:35AM 13   United States of drywall and other products is relevant to
10:35AM 14   personal jurisdiction.
10:35AM 15            The second issue is what about the entities that
10:35AM 16   control Taishan that are above it in the chain?  The same issue.
10:35AM 17   What have they done to direct Taishan's sales or manufacturing of
10:35AM 18   drywall or other products to the United States for a minimum
10:35AM 19   contacts purpose?
10:35AM 20            Yesterday evening we filed a reply to the Taishan
10:35AM 21   defendants' motion for protective order that set forth the law.
10:35AM 22   I'm not going to belabor that law with Your Honor because I know
10:35AM 23   that the Court is well aware of it, but the whole question here
10:35AM 24   is what did those other entities do, how did they direct Taishan,
10:35AM 25   or how is Taishan directed towards the manufacture and sale of
```

```
10:35AM  1  drywall in the United States?  That's the core issue in our
10:36AM  2  motion to compel.  There is other subissues but for the most
10:36AM  3  part, I think those will fall like dominoes once Your Honor
10:36AM  4  decides the scope of discovery of the other entities.
10:36AM  5           As Mr. Levin stated, the idea that we have to
10:36AM  6  accept Taishan's representations -- with all respect to counsel,
10:36AM  7  they have made no appearance for those entities -- we're entitled
10:36AM  8  to that discovery.  We need that discovery.
10:36AM  9           They've also complained that we haven't pled
10:36AM 10  theories adequate in order to reach those entities.  We've pled
10:36AM 11  that Taishan is a multilayered, prolix entity that's ultimately
10:36AM 12  owned by the Chinese government through multiple layers of
10:36AM 13  corporate ownership.
10:36AM 14           What those entities did in terms of how they
10:36AM 15  directed Taishan sales to the United States and what Taishan did
10:36AM 16  in response and how Taishan directed other entities' sales to the
10:36AM 17  United States is relevant for the purposes of personal
10:36AM 18  jurisdiction on those alter-ego, veil-piercing, agency-type
10:36AM 19  theories.
10:36AM 20           THE COURT:  Now, how do you deal with it just
10:37AM 21  logistically and from a practical standpoint?  Who do you take
10:37AM 22  and where do you take them and what do you do with them if they
10:37AM 23  don't show up?  How does the Court have jurisdiction enforcing
10:37AM 24  that argument?
10:37AM 25           MR. MONTOYA:  Well, Your Honor, the whole issue here,
```

```
10:37AM  1   basically what's happened is we've -- in our request for
10:37AM  2   production, interrogatories, and the 30(b)(6) notice, we set
10:37AM  3   certain topics defining you, saying you, Taishan, what are your
10:37AM  4   connections with X, Y, Z entity, and we've defined what you
10:37AM  5   means -- subsidiaries, affiliates, successors.
10:37AM  6               At least 20 of those entities we've named in the
10:37AM  7   complaint.  They just came up here several minutes ago and said,
10:37AM  8   well, you know, we're not making notice of appearance for them at
10:37AM  9   this point.  The real question is does Taishan have those
10:37AM 10   documents in their possession, custody, or control?  That's what
10:37AM 11   the federal rules say.  If they have those documents, then they
10:37AM 12   should produce them.  That's not over broad.  That goes to the
10:37AM 13   personal jurisdiction discovery.
10:37AM 14               Your Honor is going to set a time frame for
10:37AM 15   30(b)(6) depositions.  We can ask those witnesses those
10:38AM 16   questions.  What they are trying to say is you can't ask us about
10:38AM 17   those related entities that we have an ownership interest in.
10:38AM 18   That's improper.  Personal jurisdiction discovery and minimum
10:38AM 19   contact analysis demands that we have that information.  So from
10:38AM 20   a practical perspective, we are entitled to more documents.  They
10:38AM 21   are not saying that there are no documents.  They are saying
10:38AM 22   simply that it's over broad.  They've already said that they are
10:38AM 23   affiliated, and they are not making an appearance.  The documents
10:38AM 24   are there.  They need to produce them.
10:38AM 25               The witnesses can be asked the question.  If
```

10:38AM 1  Your Honor would be willing to be on the phone, as you suggested
10:38AM 2  for the other Hong Kong depositions, that may also resolve some
10:38AM 3  of the issues as well.
10:38AM 4  　　　　　THE COURT: Any response on the discovery?
10:38AM 5  　　　　　MR. MONTOYA: Judge, if I may, one last point. We also
10:38AM 6  moved in our papers to have a deposition scheduled in the middle
10:38AM 7  of February on the 14th. The Taishan defendants have taken the
10:38AM 8  position that early April is appropriate.
10:38AM 9  　　　　　We've laid out in our papers that they have been
10:38AM 10 before this Court for several months. They've been aware of this
10:38AM 11 case for more than a year. They've had more than enough time to
10:39AM 12 prepare their clients' depositions.
10:39AM 13 　　　　　THE COURT: Thank you.
10:39AM 14 　　　　　MR. SPANO: Your Honor, I think we need to bear in mind
10:39AM 15 the type of discovery we are undertaking and why we are doing it.
10:39AM 16 Taishan Gypsum has moved to vacate the default in the *Germano* and
10:39AM 17 in the *Mitchell* cases, and one of the basis for vacating the
10:39AM 18 default is the absence of personal jurisdiction. We've submitted
10:39AM 19 declarations saying that based on our OEM production of drywall
10:39AM 20 and sales in China, that is not sufficient to establish our
10:39AM 21 minimum contacts for purposes of personal jurisdiction. The
10:39AM 22 discovery should be centered around those facts. What did
10:39AM 23 Taishan Gypsum do? What did TTP do vis-a-vis the U.S. and is
10:40AM 24 that sufficient for jurisdiction?
10:40AM 25 　　　　　THE COURT: I agree with that, but the plaintiffs have

10:40AM  1  taken the position that Taishan may have acted with surrogates
10:40AM  2  and that they controlled the surrogates, so the surrogates'
10:40AM  3  actions are Taishan's actions.  Now you take the position that's
10:40AM  4  really not surrogates, and Taishan didn't do anything through
10:40AM  5  them, and that's the situation.
10:40AM  6            They want to test that, as I understand the
10:40AM  7  argument.  They want to ask somebody from those surrogates what
10:40AM  8  did you do, why did you do it, who told you to do it, and so
10:40AM  9  forth.  It goes really to the jurisdiction.
10:40AM 10            It's not a question of the other entities.  If
10:40AM 11  there are other entities and they are not controlled by Taishan
10:40AM 12  and Taishan didn't have anything to do with them, that will be
10:40AM 13  revealed.  Then your motions, if you enter the appearance, to
10:41AM 14  dismiss, I don't see how the plaintiffs can argue with it.
10:41AM 15            To just dismiss it on somebody saying that you were
10:41AM 16  told, and it's got to be hearsay with you, somebody in China
10:41AM 17  translated to you that they didn't have anything to do with this,
10:41AM 18  and so you tell the Court, this is what they told me, and I
10:41AM 19  believe them, but they don't want you to make an appearance
10:41AM 20  officially, and so you're now here as a friend of the Court
10:41AM 21  saying somebody in China told me to tell you this is the
10:41AM 22  situation.
10:41AM 23            MR. SPANO:  That's not correct, Your Honor.  We are here
10:41AM 24  on behalf of Taishan Gypsum and TTP arguing that those entities
10:41AM 25  are not subject to personal jurisdiction.  Those two entities are

10:42AM 1  taking responsibility, so to speak, for jurisdictional purposes
10:42AM 2  for all of the sales of the product that entered into the U.S.
10:42AM 3  　　　　　So again, being practical, Your Honor, speculation
10:42AM 4  about whether some affiliate or some parent company or some
10:42AM 5  surrogate, as you say, whispered in Taishan Gypsum's ear and
10:42AM 6  influenced it in having those contacts with the U.S., that
10:42AM 7  doesn't figure -- really figure into the analysis.
10:42AM 8  　　　　　The analysis is whether the contacts that my client
10:42AM 9  had with the U.S. amount to targeting the U.S. market and
10:42AM 10 purposeful availment of activity of the U.S. sufficient for
10:42AM 11 purposes of jurisdiction. All of that -- and all of those
10:42AM 12 contacts are being disclosed. We will have knowledgeable
10:43AM 13 witnesses to give full testimony about that.
10:43AM 14 　　　　　THE COURT: The knowledgeable witnesses will say that
10:43AM 15 they don't do any business in the United States, I assume.
10:43AM 16 　　　　　MR. SPANO: Knowledgeable 30(b)(6) witnesses on behalf
10:43AM 17 of Taishan Gypsum and TTP will answer factually regarding all of
10:43AM 18 the 200 transactions that I told you about, all of the
10:43AM 19 communications and contacts, and then the parties can argue about
10:43AM 20 whether those facts are sufficient to establish jurisdiction.
10:43AM 21 　　　　　Your Honor, my client has a default judgment
10:43AM 22 against it. We want to get past this jurisdictional discovery.
10:43AM 23 We want our depositions taken in April, we want the supplemental
10:43AM 24 briefing done quickly, and we want a hearing so we know where we
10:43AM 25 stand. This going off on a tangent asking for discovery

Case 2:09-md-02047-EEF-MBN   Document 8685-8   Filed 05/03/11   Page 12 of 14

19

```
10:43AM  1    regarding 41 other entities, they have Chinese companies
10:44AM  2    unrelated to us, they have Mexican companies listed, they have
10:44AM  3    American companies listed besides these 20 subsidiaries. No way.
10:44AM  4            If we're required to give this discovery, we will
10:44AM  5    have to go back to China and search and collect documents from
10:44AM  6    companies all over China. Mr. Montoya correctly said that we, if
10:44AM  7    this discovery is required, would be required to produce the
10:44AM  8    information and documents in our possession and custody and
10:44AM  9    control. To do my due diligence under Rule 26, I have to go and
10:44AM 10    collect documents from 20 subsidiaries. Some of them are a
10:44AM 11    thousand miles away.
10:44AM 12            THE COURT: I got it. Let's do it this way: Let's take
10:44AM 13    the depositions of the people that they say. Let's do a 30(b)(6)
10:44AM 14    of those individuals. It may not be sufficient, but let's do
10:44AM 15    that first. We need to do that quickly. You want to do it in
10:45AM 16    May. That's a little too far if we're just going to restrict it
10:45AM 17    to that. They want to do it in February. Why can't we do it in
10:45AM 18    February --
10:45AM 19            MR. SPANO: Your Honor, we have been talking to the PSC
10:45AM 20    since November, and we told them in November that February is a
10:45AM 21    problem. The first two weeks in February are absolutely out of
10:45AM 22    bounds because of the Chinese New Year. It's impossible to
10:45AM 23    travel there. It's impossible for witnesses to travel.
10:45AM 24            This is -- and this is a big undertaking. We're
10:45AM 25    going to have about 30,000 pages of documents to prepare them on.
```

```
10:45AM  1   February is just untenable for us.  We proposed the first week in
10:45AM  2   April to give the witnesses and the attorneys and everybody a
10:45AM  3   chance to participate --
10:45AM  4           THE COURT:  Let's get together.
10:45AM  5           MR. SPANO:  -- including the State plaintiffs --
10:45AM  6           THE COURT:  Let's get together on a date that's
10:45AM  7   appropriate, and let's take the depositions of those individuals.
10:45AM  8   Bring it back to me after that, if it's necessary.
10:46AM  9           MR. SPANO:  Thank you, Your Honor.
10:46AM 10           MR. LEVIN:  Your Honor, we've heard Your Honor.  The
10:46AM 11   scope.  When we go to Hong Kong, are we precluded, even though we
10:46AM 12   don't have documents, from asking questions about these other
10:46AM 13   entities?
10:46AM 14           THE COURT:  No.  I don't feel that way.  I think that
10:46AM 15   that may be a reason to support your position, or it may be a
10:46AM 16   reason to support your position.  If the 30(b)(6) person knows
10:46AM 17   something about it, then that's one thing.  If he doesn't, then
10:46AM 18   that's another thing.  So I think the scope ought to be broad.  I
10:46AM 19   don't think it ought to be narrow.
10:46AM 20           MR. LEVIN:  That's fine, sir.
10:46AM 21           THE COURT:  Because if it's broad, you may win.  If it's
10:46AM 22   narrow, you may lose because they won't be able to ask the
10:46AM 23   questions.  They are going to have to ask the questions to
10:46AM 24   somebody, and let's start with that.
10:46AM 25           MR. LEVIN:  Your Honor said that you would want to be
```

| | | |
|---|---|---|
| 10:46AM | 1 | available by phone. |
| 10:46AM | 2 | THE COURT: I will be. |
| 10:47AM | 3 | MR. LEVIN: If that's the case, we'll endeavor to start |
| 10:47AM | 4 | the deposition at midnight so that you don't have to be on the |
| 10:47AM | 5 | phone at midnight. |
| 10:47AM | 6 | THE COURT: You all make that decision. Give me some |
| 10:47AM | 7 | heads-up as to when you need me so that I can make myself |
| 10:47AM | 8 | available. |
| 10:47AM | 9 | MR. LEVIN: Thank you, Your Honor. |
| 10:47AM | 10 | MR. SPANO: Thank you. |
| 10:47AM | 11 | THE COURT: So I'm going to deny the motion at this time |
| 10:47AM | 12 | to allow you to refile it if it becomes necessary, and I would |
| 10:47AM | 13 | like you all to get together within the next week and let me know |
| 10:47AM | 14 | the date that you all have decided. |
| 10:47AM | 15 | Any other motions that we need to take up? |
| 10:47AM | 16 | MR. LEVIN: That's all, Your Honor. |
| 10:47AM | 17 | THE COURT: Is that it? Any other motions? All right, |
| 10:47AM | 18 | folks, thank you very much. Court will stand in recess. |
| | 19 | (WHEREUPON, at 10:47 a.m., the proceedings were |
| | 20 | concluded.) |
| | 21 | *  *  * |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |