UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: CHINESE-MANUFACTURED** | * | **MDL 2047** |
| **DRYWALL PRODUCTS LIABILITY** | * | |
| **LITIGATION** | * | **SECTION  L** |
| | * | |
| **This Document Relates to:** | * | |
| | * | **JUDGE FALLON** |
| **ALL CASES AND** | * | |
| | * | **MAG. JUDGE WILKINSON** |
| **Stephen and Isis Silva, et al v.** | * | |
| **Interior Exterior** | * | |
| **No. 2:09-cv-08030** | * | |
| | * | |
| **Stephen and Isis Silva, et al v.** | * | |
| **Arch Insurance Company, et al** | * | |
| **No. 2:09-cv-08034** | * | |
| ************************************ | | |

**LANDMARK AMERICAN INSURANCE COMPANY
AND NATIONAL SURETY CORPORATION'S
OBJECTION TO THE PROPOSED INEX SETTLEMENT AGREEMENT**

**NOW INTO COURT,** through undersigned counsel, come defendants, Landmark American Insurance Company (hereinafter, "Landmark") and  National Surety Corporation (hereinafter, "National Surety") who respectfully reserves their collective rights to object to the proposed Interior Exterior (hereinafter, "INEX") Settlement Agreement filed by the PSC on April 26, 2011, ECF Doc. No. 8628-3 (hereinafter, "Settlement Agreement").

1

**I.      INTRODUCTION**

Landmark and National Surety would like to make it clear that they do not object to the fact of settlement. Landmark and National Surety further do not object to the goals attempted to be achieved by the submitted settlement documents, as Landmark and National Surety understand those goals after oral communications, including Landmark's face-to-face meeting, with counsel for the Settling Defendants. Landmark and National Surety have each communicated orally with counsel for INEX and Landmark has communicated with counsel for a primary carrier, both of which are "Settling Defendants." Landmark and National Surety only reserve its right to object on account of ambiguities raised but not yet addressed in the proposed Settlement Agreement or any supplemental filings. These ambiguities include: 1) whether Landmark and National Surety are released from claims by the Class Members or the Settling Defendants (particularly INEX) as a result of the contradictory language in Paragraphs 4.3.1 and 4.3.2 when compared to the language in Paragraphs 1.5, 1.27 and 1.30; and, 2) whether Arch, Liberty, INEX and the PSC consider the Arch and Liberty policies to be exhausted by the payment of the amounts described in the Settlement Agreement. Landmark and National Surety have attempted to resolve these issues informally through attempting to gather further information from the Settling Defendants, with the Court's assistance, but these attempts have not yet succeeded. As a result, Landmark and National Surety do not have any other available option but to file formal objections at this time in order to reserve their rights, while they continue to attempt to obtain the information needed in order to evaluate and analyze the proposed settlement.

## II. ARGUMENT

As mentioned above, it is both Landmark and National Surety's positions that the Settlement Agreement as drafted is impermissibly ambiguous and must be clarified and/or supplemented before it can be approved preliminarily. Specifically, Landmark and National Surety believe that the Settlement Agreement does not provide enough information as to which parties the settlement agreement contemplates releasing, the extent of those releases, and whether the primary policies are exhausted by contributions to the settlement fund, as contemplated by the Settlement Agreement. Landmark and National Surety are hopeful that the Settlement Agreement with be clarified and consummated.  However, National Surety and Landmark are compelled to object because of the ambiguities in the Settlement Agreement.  Landmark and National Surety do so,  in order to reserve their rights to object once it becomes evident what the true terms of the Settlement Agreement actually are.  At this juncture and from the materials provided, Landmark and National Surety are simply unable to tell.

### A. What Parties Are Released By The Settlement Agreement?

The Settlement Agreement, as drafted, is a comprehensive and thorough document that evidences hours of diligent work performed by skilled attorneys.  However, most likely as a result of the sheer length of the document, or the shortage of time prior to its submission, there are certain internal inconsistences within it. From Landmark and National Surety's perspective, the most important of these inconsistencies is whether or not the second layer excess carriers are released by any settling parties.  These second layer excess carriers include both Landmark and National Surety.

3

Counsel for Landmark has spoken to counsel for Liberty Mutual, one of the primary drafters of the Settlement Agreement, and was told that it was the intention of the settlement agreement to release claims made against Landmark and National Surety by the "Class Members." Additionally, counsel for INEX has confirmed that this was also the intention of the Settlement Agreement.

The intention to release Landmark and National Surety is clearly evidenced throughout the Settlement Agreement - specifically in Paragraphs 1.5, 1.11, 1.28, 4.3.1 and 4.3.8. Specifically, Paragraph 1.5 defines "Available Policy Limits" to include the majority of the excess policies issued by The North River Insurance Company (hereinafter, "North River") and does not include Landmark's or National Surety's policies. The parties intention to only assign rights to the North River policies is confirmed by the language of Paragraph 1.11, which defines "Excess Carrier" to be only The North River Insurance Company and its affiliated and related entities. Secondly, Paragraph 4.3, the first paragraph in the section entitled, "Class Release" states in part that:

> all Class Members, and anyone claiming by, through and/or on behalf of any of them, hereby fully, finally and forever release, waive, discharge, surrender, forego, give up, abandon and cancel any and all Released Claims (as defined in Section 4.1) against the Settling Defendants and **Released Parties**....

The definition of "Released Parties" provided in Paragraph 1.28 states that it shall mean INEX, Arch, Liberty and "insurers other than the Excess Carrier and reinsurers of each of the foregoing." Landmark, as an insurer for INEX, would fall within the definition of a Released Party. Similarly, in Paragraph 4.3.8, the final paragraph of the "Class Release" section also includes release language pertaining to a broad release of "any Released Party and/or Settling Defendant."

4

However, this language is contradicted by Paragraphs 4.3.2, 4.3.3.1 and 4.3.5 which release claims made by the Class Members only against either INEX or the Settling Defendants. The language in paragraph 4.3.3.1 is particularly concerning as it does not use the term "Excess Carrier" as defined by Paragraph 1.11 of the Settlement Agreement, but rather assigns the rights of insurance to the Non-Louisiana sub-class for "all rights InEx has to excess insurance coverage for the Non-Released Claims." The Landmark and National Surety policies may fall within that assignment, since it is so ambiguous, if it is not clarified, regardless of the intention of the drafters of the Settlement Agreement.

Because of this crucial ambiguity in the Settlement Agreement, Landmark and National Surety are left with no other choice but to bring this to the Court's attention since Landmark and National Surety are unable to determine what the true terms of the Settlement Agreement are. At this juncture, from the language in the Settlement Agreement as drafted, Landmark and National Surety are unable to determine whether it includes a release of the claims brought by the Class Members against Landmark and National Surety or a release of any future claims by INEX..

**B.    Are The Liberty and Arch Policies Exhausted?**

Secondly, notably absent from the Settlement Agreement is complete information as to the extent to which the primary policies may be or are exhausted by the payments made to the settlement fund, as contemplated by the Settlement Agreement. The issue of exhaustion is essential not only to National Surety and Landmark, in their individual capacities as second layer excess insurers, but is also vital for any interested person to evaluate the Settlement Agreement. It appears that the Settlement Agreement, in Section 7.3, permits INEX, Arch, and Liberty to withdraw from the

5

settlement if any party exercises his right to opt out.  In deciding whether to opt out, Class Members will certainly need to determine the extent to which insurance coverage for claims against INEX exists outside the proposed settlement class.

Further, the Settlement Agreement includes language, in Paragraph 16.4, that indicate that the costs associated with issuing class notice and administering the settlement fund will be paid out of the settlement fund, and, in Paragraph 6.2.1 that Liberty and Arch will contribute a combined $100,000.00 towards the payment of costs associated with issuing class notice.  Expenses associated with a defense cost, such as issuing class notice, are traditionally considered to be included as a "cost of defense" and as such, would not erode or exhaust the policy limits.  Yet there is no explanation as to whether the Settling Defendants all propose that such notice payments will erode or exhaust the primary policies.  In spite of the language contained in Paragraphs 16.4 and 6.2.1 of the Settlement Agreement,  Landmark is also cognizant of the contents of Paragraph 1.20.6 of the Settlement Agreement in which the definition of  "Order and Judgment" references exhaustion.

Landmark submits that the settlement documents do not explain the way in which payments such as those enumerated in Paragraph 6.2.1 exhaust primary limits or what each of the Settling Defendants' positions are regarding such payments.  Because of the absence of clear information on exhaustion,  Landmark is concerned that potential class members may have an incentive to opt out of the settlement in the hopes that they will still be able to recover from Arch and Liberty, as well as the excess carriers. Such opt outs may well prompt INEX, Arch, or Liberty Mutual to exercise their right under the Settlement Agreement on Paragraph 7.3 to withdraw from the settlement.

6

Landmark and National Surety are not indicating that they object to a declaration of exhaustion, but need the requested information in order to make that determination. It would be helpful to all interested parties if this Honorable Court could fashion a process to monitor the payments made by Arch and Liberty and determine whether these payments go towards exhaustion, or are a cost of defense.

The Court is familiar with Landmark's efforts to obtain information regarding policy exhaustion. Oral information has been provided, by certain members of the settling parties and written confirmation is expected regarding the each of settling parties positions on policy exhaustion. This information is critical to Landmark, National Surety and any interested party's ability to assess and evaluate the proposed Settlement Agreement.

As stated above, Landmark and National Surety reserve the right to object for purposes of determining what the true terms of the Settlement Agreement actually are, and what each settling party's position is with regard to policy exhaustion. Landmark and National Surety further raise this issue in hopes that more information can be provided to all interested parties.

### III. CONCLUSION

Landmark American Insurance Company and National Surety Corporation respectfully requests that this Honorable Court take into account the ambiguities and issued raised by Landmark and National Surety when determining whether or not to approve the proposed INEX Settlement Agreement and requests that the parties clarify the same, before such settlement agreement is preliminarily approved.

*Signature Block Follows*

7

**Respectfully submitted:**

   /s/*Melissa M. Swabacker*
JUDY L. BURNTHORN (#17496)
JAMES W. HAILEY, III (#23111)
MELISSA M. SWABACKER (#32710)
**DEUTSCH, KERRIGAN & STILES LLP**
755 Magazine Street
New Orleans  LA  70130
Phone: (504) 581-5141
Fax: (504) 566-4022
jburnthorn@dkslaw.com
mswabacker@dkslaw.com
*Counsel for Landmark American Insurance Company*


*- and-*

GARY J. RUSSO (10828)
MEGAN E. DONOHUE (32429)
**JONES, WALKER, WAECHTER, POITEVENT, CARRERE & DENEGRE, LLP.**
P.O. Drawer 3408
Lafayette, LA 70502-3408
Phone: (337) 262-9000
Fax: (337) 262- 9001
grusso@joneswalker.com
mdonohue@joneswalker.com
*Counsel for National Surety Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading, entitled,"Landmark American Insurance Company and National Surety Corporation's Objection to the Proposed INEX Settlement Agreement," has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this **3rd** day of **May, 2011.**

                  */s/ Melissa M. Swabacker*
                  MELISSA M. SWABACKER