UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2047 |
| | SECTION: L |
| | JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: | |
| THE MITCHELL COMPANY, INC. v.<br>KNAUF GIPS, KG; et al.<br>Case No. 09-cv-4115 | |
| and | |
| PAYTON; et al. v. KNAUF GIPS, KG; et al.<br>Case No. 09-07628 | |

### THE MITCHELL COMPANY, INC.'S
### RESPONSE TO KNAUF DEFENDANTS'
### MOTION TO ENFORCE SETTLEMENT AGREEMENT

Comes now The Mitchell Company, Inc. ("Mitchell"), who is both a Plaintiff and a Defendant before this Court, and responds to the Knauf Defendants' Motion to Enforce Settlement Agreement as follows:

I.  **INTRODUCTION**

The Knauf Defendants' motion is based upon an entirely incorrect factual premise. As this Court is well aware, Mitchell is one of the original **plaintiffs** in the coordinated actions brought before this Court. Many months after these proceedings began, Mitchell also became a defendant when the Prichard Housing Authority ("PHA") joined in the multi-district litigation with its claims against Mitchell.

PHA arranged for a mediation in an attempt to join the pilot program. The parties selected John Perry as a mediator by agreement. The "settlement" which the Knauf Defendants propose to enforce derives from that mediation process.

From the beginning of the mediation, Mitchell took the position that it was a plaintiff, as well as a defendant, and that any complete resolution of the case would require the settlement of Mitchell's affirmative claims. Mitchell held to that position in its pre-mediation submission, at the beginning of the mediation, throughout the mediation, and after the mediation. The mediation session ended without an agreement. Despite Mitchell's insistence that it would not provide any releases to its defendants without the resolution of its claims, it became apparent that a settlement might be possible regarding PHA's claims. Hence, Mitchell, through its insurance carrier, offered to contribute a modest amount of money to the PHA in order to settle its claims. Throughout the discussions, Mitchell expressly stated that it was reserving its affirmative claims and made it clear there was no offer to release those claims. See Steve Usdin Declaration attached as Exhibit A.

As in many mediations, all communications were through the mediator. Hence, there were no direct communications between Mitchell, PHA and Knauf. Mitchell relied on the mediator to convey its position. Mitchell has no reason to believe that the mediator did not do so in this case.

The mediation session ended without an agreement. On November 30, 2010, the mediator circulated the email, which is attached as Exhibit A to the Knauf Defendants' Motion to Enforce Settlement, setting forth some of the terms of the settlement.

Within hours of receiving that email, undersigned counsel for Mitchell confirmed with the mediator that the proposed settlement had no effect on Mitchell's affirmative claims. Counsel wrote:

> John,
>
> Steve Usdin forwarded your email reporting a deal on the settlement of the above. Mitchell has been steadfast in it's [sic] position that it will not release it's [sic] claims against any of the defendants without settling it's [sic] affirmative claims. I don't want you, or the defendants, to be surprised by that position down the road.

See Exhibit B.

Again, within hours, the mediator agreed. By email, John Perry responded:

> I think everyone has the same understanding. Thanks.

See Exhibit C.

Approximately 45 days after this email exchange, Knauf circulated a draft settlement agreement that was inconsistent with Mitchell's communications to the mediator regarding releases, and which included other provisions unacceptable to both plaintiffs and defendants. On February 24, 2011, counsel for Mitchell circulated a revised draft amongst the non-Knauf parties, including plaintiffs, which included language reflecting Mitchell's previously-stated position on releases and other terms requested by the non-Knauf parties.

While Mitchell did not have any desire to obstruct the resolution of PHA's claims by insisting on any payment to Mitchell for its affirmative claims as part of a PHA settlement, it consistently maintained throughout the settlement negotiations that it was not resolving its affirmative claims, and was not granting any form of release of its affirmative claims. Thus, the only settlement agreement which could be enforced by this Court would involve Mitchell's retention of its affirmative claims. Mitchell stands ready to perform its agreement to settle the PHA case on the terms which it agreed to during the mediation process.

## II. THERE IS NO ENFORCEABLE SETTLEMENT AGREEMENT FOR THE COURT TO ENFORCE

The facts of this case highlight the limited circumstances in which a court may summarily enforce a settlement agreement. "Although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally." *E. Energy, Inc. v. Unico Oil & Gas, Inc.*, 861 F.2d 1379, 1380 (5th Cir. 1988).

In this case, presumably Louisiana law would control. Under Louisiana law, an out of court oral agreement is unenforceable. See *Sims v. USAgencies Cas. Ins. Co.*, ___ So. 3d ___, 2010 WL 5185671 (La. App. 1 Cir. Dec. 22, 2010), citing LSA-C. C. Art. 3072. As the court noted in *Sims*,

the purpose of the writing requirement is to serve as proof of the agreement and the acquiescence therein. The *Sims* court further held that in order for a settlement agreement to be enforceable, the written document must be signed by the parties. *Id.* at *5. There is no written, signed agreement in this case.[1]

As noted above, Mitchell is in no way attempting to renegotiate the terms of the settlement or back out of any agreed to settlement. However, Louisiana law protects against this very situation, where one party believes the terms of the settlement are governed by one set of facts, and the other party believes that they are governed by a different set of facts. The requirement of a writing or the recitation of the terms in open court protects the parties from the very ambiguities that are present in this case. This Court may not impose settlement terms upon a party different than those to which it agreed. Consequently, the Knauf Defendants' Motion to Enforce Settlement must be denied.

Finally, it goes without saying that if the Knauf Defendants' Motion to Enforce Settlement is denied, the Prichard Housing Authority's joinder is also denied. In any event, there is no basis for the imposition of damages summarily on Mitchell for maintaining its good faith position that it has been damaged by the sale of the defective product by Knauf and Interior/Exterior and its consistent position that it must be compensated for its damages before it will agree to release those parties.[2]

---

[1] To the extent that Alabama law applies, the result would be the same. Ala. Code ¶ 34-3-21 (1975) provides that any agreement entered into by an attorney which seeks to bind a client must be in writing or made on the minutes of the court. Further, an agreement by an attorney must be pursuant to actual authority. *Roberson v. State ex rel. Smith*, 842 So. 2d 709, 712 (Ala. Civ. App. 2002); *Warner v. Pony Express Courier Corp.*, 675 So. 2d 1317, 1320 (Ala. Civ. App. 1996); *Blackwell v. Adams*, 467 So. 2d 680, 684-85 (Ala. 1985). In this case, no written agreement existed and no actual authority exists.

[2] Further, any delays regarding a final, written agreement were not caused by Mitchell. Knauf's proposed draft of the agreement was not circulated until January 18, and Mitchell circulated a revised draft on February 24. On March 16, counsel for InEx responded to the release language in the Mitchell draft for the first time.

### III. CONCLUSION

Based on the foregoing, there was no agreement to settle on the terms proposed by the Knauf Defendants, and the present motion is due to be denied.

/s/ Steven L. Nicholas
STEVEN L. NICHOLAS
Cunningham Bounds, LLC
1601 Dauphin Street
Mobile, Alabama 36604
251-471-6191
251-479-1031 (fax)
sln@cunninghambounds.com

Attorneys for The Mitchell Company, Inc.

### CERTIFICATE OF SERVICE

I do hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this the 3rd day of May, 2011.

/s/ Steven L. Nicholas
STEVEN L. NICHOLAS