**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: 2047 |
| | SECTION:  L |
| | JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO ALL CASES<br>_____/ | |

**HOMEBUILDERS' STEERING COMMITTEE'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SANCTIONS AND TO COMPEL
ADDITIONAL JURISDICTIONAL DEPOSITIONS OF DEFENDANTS
<u>TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN PLASTERBOARD CO., LTD.</u>**

The Homebuilders' Steering Committee ("HSC"), by and through undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion for Sanctions and to Compel Additional Jurisdictional Depositions of Defendants Taishan Gypsum Co. Ltd. ("TG") and Tai'an Taishan Plasterboard Co. Ltd. ("TTP") (collectively, the "Taishan Defendants").

**I. BACKGROUND**

In the wake of various motions to set aside defaults against TG, the Court directed the parties to proceed "as soon as practicable" with discovery, including "broad" jurisdictional depositions of designated corporate representatives from TG and TTP, in order to establish whether the Court has personal jurisdiction over the Taishan Defendants. *See In Re Chinese-Manufactured Drywall Prod. Liab. Litig.*, Case No. 2:09-md-2047-EEF-JCW, Minute Entry (E.D. La. Jan. 20, 2011) (D.E. 7136) (ordering that the "scope of the depositions is to be broad, including questions about related, subsidiary, parent, and affiliated companies."); *In Re Chinese-Manufactured Drywall Prod. Liab. Litig.*, Case No. 2:09-md-2047-EEF-JCW, Minute Entry (E.D. La. Feb. 16, 2011) (D.E. 7511) ("defining the scope of the depositions topics broadly to

1

include information regarding the defendants' affiliates."). Pursuant to the Court's directive, and as detailed in the deposition notices served by multiple parties, TG and TTP were required to produce for deposition a corporate representative designated as having knowledge of, among other things, the Taishan Defendants' contacts with the United States and, more specifically, sales of defective Chinese-manufactured drywall that was imported into the United States. The Plaintiffs' Steering Committee's Amended Re-Notice of Oral and Videotaped Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) to TG and TTP (the "Deposition Notices") are attached hereto as Composite Exhibit "A," along with a letter from the Taishan Defendants' counsel setting forth the witnesses the Taishan Defendants' designated to testify in connection with the twenty-five topics set forth in the Deposition Notices.

## II. THE TAISHAN DEFENDANTS' OBSTRUCTIONIST DISCOVERY TACTICS

From April 4 through April 8, Hilarie Bass, Esq., lead counsel for the HSC, and twelve other attorneys on behalf of the Plaintiffs' Steering Committee and other parties, took the depositions of TG and TTP's designated corporate representatives, Tongchun Jia ("Jia"), Wenglong Peng ("Peng") and Jianchun Zhang ("Zhang") (collectively, the "30(b)(6) Witnesses") in Hong Kong. These thirteen attorneys traveled halfway across the world, spent thousands of dollars, and devoted hundreds of hours preparing for and taking the depositions of these 30(b)(6) Witnesses, only to be hindered at every turn by the Taishan Defendants' obstructionist discovery tactics.

These tactics started before the first deposition when the Taishan Defendants announced, for the first time, they were producing documents in Chinese (without any accompanying translations), reflecting various transactions and agreements between TG and TTP that were directly related to the establishment of personal jurisdiction, as well as agency and alter-ego

2

theories of liability, against the Taishan Defendants. Jia Dep. at 16:2-17:11.[1] Notwithstanding the fact that these documents had been requested by the PSC and members of the HSC months ago, the Taishan Defendants failed to identify and produce these relevant documents until minutes before the first of these 30(b)(6) depositions. Simply stated, the Taishan Defendants did not provide the HSC with an adequate opportunity to translate, review, and, in turn, question the 30(b)(6) Witnesses on these highly-relevant, responsive documents.

Once the depositions commenced, the Taishan Defendants conducted the 30(b)(6) depositions in an obstreperous manner by utilizing a second "interpreter" – whom they referred to as a "check interpreter" – to challenge the translation of the official translator agreed to in advance of the depositions by all parties, including the Taishan Defendants. The deposition transcripts for all of the 30(b)(6) Witnesses are literally littered with examples of the substantial delays caused by the Taishan Defendants' repeated challenges to the official interpreter's translations. *See, e.g.,* Jia Dep. at 24:21-26:24; 62:8-63:23; 370:20-372:12; Peng Dep. at 78:21-80:11; 257:11-260:7; Zhang Dep. at 27:22-29:6; 185:1-186:12. Not only that, the Taishan Defendants also used their multiple English and Chinese speaking lawyers to lodge numerous improper speaking objections designed to obstruct the questioning and inappropriately influence the testimony of the 30(b)(6) Witnesses. *See, e.g.,* Jia Dep. at 99:4-100:20; 318:9-320:9; Peng Dep. at 257:11-263:5; Zhang Dep. at 147:15-148:16. The extended delays caused by these recurrent interruptions were made worse by the fact that the Taishan Defendants stopped the depositions prematurely, without allowing certain attorneys to finish questioning the 30(b)(6) Witnesses, even after those attorneys made it clear they had only a limited amount of additional questions. *See, e.g.,* Jia Dep. at 482:6-488:22; Peng Dep. at 432:19-440:20.

---

[1] A copy of the deposition transcripts for all of the 30(b)(6) Witnesses will be provided to the Court for an *in camera* review in light of confidentiality designations.

Worse yet, as set forth in detail below, the 30(b)(6) Witnesses were extremely unprepared, provided incomplete and evasive answers, and lacked the proper knowledge and authority to testify on key jurisdictional issues, including the Taishan Defendants' sale of the defective Chinese-manufactured drywall that was imported into the United States.  Not one of the 30(b)(6) Witnesses was able to verify or provide any details surrounding these transactions, much less any of the transactions described by the Taishan Defendants in their respective Manufacturer Profile Forms.

**A.     THE JIA DEPOSITION**

Jia signed TG's Profile Form, but testified that he did not recall either the Profile Form or the fact that he certified under penalty of perjury that the information therein was true and accurate.  Jia Dep. at 318:9-320:9.  Jia testified further that he was unsure how TG obtained the information contained in the TG Profile Form and he could not provide any details surrounding TG's admitted sale of defective TG-manufactured drywall directly to United States distributor, Venture Supply, Inc.  *See id*. at 329:19-331:17.  Then, when asked whether it was possible that some shipments or exports to the U.S. were not reflected in the TG Profile Form, Jia, after initially providing a nonresponsive answer, testified that he could not speculate.  *See id.* at 338:18-339:23.

Moreover, Jia testified he had never seen, let alone reviewed, TTP's Profile Form.  *See* Jia Dep. at 444:6-16.  Jia also admitted he was not familiar with the transactions set forth therein, including those transactions involving the defective TTP-manufactured drywall that was imported into the United States.  *See id*. at 444:17-445:6.  Simply put, Jia had no knowledge of information or transactions contained in TG's and TTP's Profile Form and was unprepared to answer questions on the subject.

Jia also testified he does not know anything about Beijing New Building Material Company's ("BNBM") U.S. operations, including whether it does business in the U.S., or whether it has any U.S. subsidiaries, notwithstanding the fact that he was specifically designated by TG to testify about the structure and activities of BNBM, a major shareholder of Taishan and a company in which Jia sits on the Board of Directors.  *See id.* at 394:8-11; 397:22-398:1-4. Similarly, even though he was designated by TTP to testify about the relationships between TTP, the People's Republic of China, Morgan Stanley, and J.P. Morgan, Jia stated that he was not sure that he was the best person to provide testimony on those topics.  *See id.* at 127:8-128:14.

**B.     THE PENG DEPOSITION**

Despite the fact he was specifically designated by the Taishan Defendants to testify about direct and indirect shipments of the Taishan Defendants' drywall into the United States, Peng clearly lacked sufficient knowledge to testify about the details surrounding the transactions set forth in the Taishan Defendants' Profile Forms.  Remarkably, Peng claimed he "could not recall" and had "no obligation to try to understand" whether TTP knew of its customers intentions to ship TTP-manufactured drywall to the United States.  *See* Peng Dep. at 318:21-319:13; 322:18-323:18; 327:10-20; 334:22-335:12.  Peng claimed further that he lacked the authority to verify the accuracy of the TTP Profile Form and he was not aware of any TTP-manufactured drywall imported into the United States.  *See id.* at 343:21-344:18; 344:20-346:11.  Notwithstanding his designation, Peng also failed to provide details concerning the Taishan Defendants' sales activities and marketing efforts, *see id.* at 286:22-287:6; 290:5-293:3, contacts with the United States, *see id.* at 191:17-192:3, and business in the United States or with U.S. companies. *see id.* at 202:21-203:23).

**C.     THE ZHANG DEPOSITION**

Just like Jia and Peng, Zhang exhibited an extreme lack of knowledge and preparation concerning the topics on which he was designated to testify. To begin with, Zhang testified that, between 2006 and 2009, TTP created annual reports but admitted he had not reviewed the reports in advance of the deposition. Zhang Dep. at 65:1-23. Moreover, Zhang admitted that TTP maintained sales records for 2006 and 2007, but conceded that he did not review them or any of TTP's invoices in advance of the deposition. *See id.* at 69:6-70:4. Zhang testified further that he had never seen, let alone reviewed, TTP's Profile Form and was not aware of any TTP-manufactured drywall imported into the United States. *See id*. at 51:19-53:18; 59:2-13; 71:21-72:9. Zhang also admitted he had not spoken with Song Qinghai ("Song"), TTP's former manager of production and the person that signed TTP's Profile Form, in preparation for his deposition, notwithstanding the fact that Song is currently employed by an affiliate of the Taishan Defendants. *See id.* 61:15-62:14. Despite his designation, Zhang also failed to provide details concerning, among other things, TTP's sales activities, marketing efforts, finances and employees. *See id.* at 72:8-73:19; 121:14-122:12.

* * * *

When one considers the fact that information concerning the direct or indirect shipments of drywall into the United States by TG and TTP involve perhaps the most critical issues in the case, both from a jurisdictional and liability standpoint, the failure by TG and TTP to have a witness available and fully prepared to testify in detail about those shipments is simply offensive and warrants the imposition of severe sanctions. This is especially true given the incredible time and expense involved in having more than a dozen lawyers from the United States travel halfway around the world to attend these depositions.

## III. ARGUMENT

### A. This Court Should Compel TG and TTP to Make Substitute or Additional TG and TTP 30(b)(6) Representatives Available for Deposition

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, a company is obligated to designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf. The designated person must then "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6); *see T & W Funding Co. XII, L.L.C. v. Pennant Rent-A-Car Midwest, Inc.*, 210 F.R.D. 730, 734-35 (D. Kan. 2002). "'[T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.' The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006)(internal footnotes omitted). Moreover,

> [w]hen a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition. This extends not only to facts, but also to subjective beliefs and opinions. **If it becomes obvious that the deposition representative designated by the corporation is deficient, the corporation is obligated to provide a substitute.**

*Id*. (internal footnotes omitted)(emphasis added); *see also U.S. v. Taylor,* 166 F.R.D. 356, 361 (M.D.N.C. 1996). In other words, where a corporate 30(b)(6) representative lacks knowledge about relevant facts, "the appearance is, for all practical purposes, no appearance at all." *Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993).

Here, as demonstrated above, all three of the witnesses that TG and TTP designated to testify on the 25 relevant topics set forth in the deposition notices lacked proper knowledge about key jurisdictional issues. Most notably, neither Jia, Peng nor Zhang was able to provide any meaningful information about the direct or indirect shipments of drywall to the United States that

are listed in TG's and TTP's Manufacturer Profile Forms.  The witnesses TG and TTP produced lacked basic knowledge of these critical jurisdictional issues, improperly prepared for the depositions and refused to provide any testimony on the subjective opinions and views of TG and TTP claiming they lacked authority to do so.  Thus, the appearances of Jia, Peng and Zhang amounted to no appearance at all, and this Court should compel TG and TTP to make available for deposition substitute or additional 30(b)(6) witnesses.

### B. TG's and TTP's Failure To Provide Adequate 30(B)(6) Witnesses Warrants Sanctions

Whether to impose discovery sanctions is within the discretion of the court.  *T & W Funding Co.*, 210 F.R.D. at 733  ("The Federal Rules of Civil Procedure give the court 'ample tools to deal with a recalcitrant litigant.'") (*quoting Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993).  Rule 37(a)(3) allows courts to compel discovery where "a deponent fails to answer a question asked under Rule 30" or where "a corporation or other entity fails to make a designation under Rule 30(b)(6)….."  Fed. R. Civ. P. 37(a)(3)(B)(i), (ii).  Courts should diligently apply sanctions under Rule 37 to penalize those who have engaged in sanctionable misconduct and to prevent such conduct from occurring in the future.  *T & W Funding Co.*, 210 F.R.D. at 733.

Sanctions are warranted when a party fails to comply with a request under Rule 30(b)(6) to produce knowledgeable deponents to testify on behalf of the organization.  *Thomas v. Hoffman-Laroche*, 126 F.R.D. 522, 525 (N.D.Miss. 1989).  Moreover, "[a] party may be sanctioned for disregarding obligations imposed by the discovery rules without a direct violation of a court order."  *Id.* (*citing Guidry v. Continental Oil Co.*, 640 F.2d 523, 533 (5th Cir. 1981)).  In *Thomas*, the district court upheld a magistrate judge's award of attorneys' fees for discovery abuses caused by a corporation's failure to provide deponents knowledgeable in the requested areas where the deponents provided by the corporation were unable to address the requested

30(b)(6) categories despite clear 30(b)(6) requests. *See also Resolution Trust Corp.*, 985 F.2d at 197-98 (affirming district court's award of sanctions in the form of fees and costs incurred in deposing two 30(b)(6) witnesses where corporation's designation of the unprepared witnesses was tantamount to a complete failure of the corporation to appear); *T & W Funding Co.*, 210 F.R.D. at 734-35 (affirming magistrate's grant of monetary sanctions of costs and expenses incurred in taking deposition of 30(b)(6) witnesses where designees' unpreparedness and lack of authority to testify disrupted the proceedings and caused prejudice to defendants).

TG's and TTP's improper designation of Jia, Peng and Zhang, as demonstrated by the deponents' lack of knowledge and unpreparedness, prejudiced the HSC's efforts to conduct adequate jurisdictional discovery. Therefore, the HSC respectfully requests that the Court require TG and TTP to pay the fees and costs associated with having Ms. Bass travel back to Hong Kong to conduct the additional or substitute depositions of the proper corporate representatives of TG and TTP, including, without limitation, any associated charges for the court reporter, deposition location, airfare, lodging and other travel expenses.

## IV. CONCLUSION

WHEREFORE, the HSC respectfully request that this Court grant the Motion in its entirety, and award such other relief as the Court deems just and proper.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Prior to filing this discovery motion, the HSC complied with Federal Rule of Civil Procedure 37(a)(1). Attorney for the HSC, Hilarie Bass, hereby certifies that she, along with members of the PSC, conferred by telephone with Frank Spano, Renne Garcia, Matthew Galvin, Tom Owen, and Courtney Colegan, attorneys for Taishan and TTP, in a good faith effort to reach an agreement with respect to the issues set forth in this Memorandum. The parties were unable

to resolve these issues, but the HSC and PSC have committed to discussing these issues further with the attorneys for Taishan and TTP on May 9, in New York City.

Dated: May 3, 2011                    Respectfully submitted,

| | |
|---|---|
| **STONE PIGMAN WALTHER WITTMANN**<br>*Local Lead Counsel of the HSC*<br>546 Carondelet Street<br>New Orleans, LA  70130<br>Telephone: (504) 593-0804<br>Facsimile: (504) 593-0804<br>E-mail: pwittmann@stonepigman.com<br><br>By:  /s/ Phillip A. Wittmann<br>       PHILLIP A. WITTMANN<br>       Louisiana Bar No. 13625 | **GREENBERG TRAURIG, P.A.**<br>*Lead Counsel for the HSC*<br>1221 Brickell Avenue<br>Miami, Florida 33131<br>Telephone: (305) 579-0500<br>Facsimile: (305) 579-0717<br>Email: bassh@gtlaw.com<br>Email: salkym@gtlaw.com<br><br>By:   /s/ Hilarie Bass<br>        HILARIE BASS<br>        Florida Bar No. 334323<br>        MARK A. SALKY<br>        Florida Bar No. 058221 |
| **SIVYER BARLOW & WATSON**<br>*Member of the HSC*<br>100 S Ashley Drive, Suite 2150<br>Tampa, FL 33602<br>Telephone: (813) 221-4242<br>Facsimile: (813) 227-8598<br>Email: nsivyer@sbwlegal.com<br><br>By:  /s/ Neal Allen Sivyer<br>       NEAL A. SIVYER<br>       Florida Bar No. 373745 | **KING & SPALDING LLP**<br>*Member of the HSC*<br>1180 Peachtree Street, NE<br>Atlanta, GA 30309<br>Telephone: (404) 572-4600<br>Facsimile: (404) 572-5100<br>Email: kbuster@kslaw.com<br><br>By:  /s/ J Kevin Buster<br>       J. KEVIN BUSTER<br>       Georgia Bar No. 099267 |

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on May 3, 2011, this document has been served on Plaintiffs' Liaison Counsel, Russ Herman, Esq., and Defendants' Liaison Counsel, Kerry Miller, Esq., and Homebuilders' Steering Committee Dorothy Wimberly and Insurer Defendants' Liaison Counsel, Judy Y. Barrasso, Esq. by U.S. mail and/or email or by hand delivery and I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 6.

                /s/ Hilarie Bass
                Hilarie Bass