**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | SECTION: L |
| LITIGATION | * | |
| | * | |
| | * | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | * | |
| | * | MAGISTRATE JUDGE |
| *ALL CASES* | * | WILKINSON |
| | * | |
| * * * * * * * * * * * * * * * * * * * * | * | |

**MEMORANDUM IN OBJECTION
TO MOTION FOR PRELIMINARY APPROVAL OF INEX SETTLEMENT**[1]

Builder-Defendants, Southern Homes, LLC; Tallow Creek, LLC; and Springhill, LLC (collectively "Southern Homes"),[2] and the other undersigned parties object to the terms of the INEX Settlement Agreement. For the following reasons, preliminary approval of the INEX Settlement

---

[1] The undersigned parties reserve their rights to supplement this objection at a later date. They had moved for an extension of time to file this objection, but that request was denied, Doc. No. 8676. The undersigned parties further reserve any and all challenges they have to this Court's subject matter and personal jurisdiction over them.

[2] All references to the claims of Southern Homes should also be considered as a reference to the basic claims of all other similarly situated builders, including the other undersigned parties.

Agreement should be denied:

- Louisiana Builders, such as Southern Homes, have standing to object to the INEX Settlement Agreement as it seeks to devastate builder defendants' legal protections by asking this Court to "stay" the prosecution of the several omnibus complaints against INEX and to "bar" builders from pursuing their statutory redhibition rights against Interior Exterior Building Supply, LP, Interior Exterior Enterprises, LLC and South Cortez, LLC and other related entities (collectively "INEX");

- the INEX Settlement Agreement seeks the additional measure of unfairness to builders by further asking this Court to "stay" the prosecution of the several omnibus complaints against defendants "downstream" from INEX and to "bar" builders from pursuing contractual and tort indemnity claims against their drywall installers;

- Southern Homes' claims against INEX and its drywall supplier are vested causes of action that cannot constitutionally be divested by the INEX Settlement Agreement;

- Courts have refused to uphold such "bar/stay" agreements because they impermissibly seek to extinguish non-settling defendants' independent claims; and

- fairness dictates that Southern Homes and other builders be included in negotiations over a 200-plus-page settlement "agreement" that will substantially affect builders.

## I. **INTRODUCTION**

Southern Homes and the other undersigned parties emphasize that they do not seek to prevent homeowner-plaintiffs in this MDL from recovering against INEX. To the contrary, they want homeowner-plaintiffs to be made whole.

The suggestion of the Plaintiffs' Steering Committee ("PSC") that the undersigned and other objecting parties table their objections until this Court holds a fairness hearing on the INEX Settlement Agreement is patently contrary to this Court's Order, which sets May 3, 2011 as the deadline to file "*responses* to the Motion." *See* Order, Doc. 8834 (emphasis added); *see also* PSC's Response in Opposition to Southern Homes, LLC's Emergency Motion for Extension of Time, Doc. 8681. The PSC's suggestion is also contrary to, as the PSC put it, "the fundamental question presented by the INEX Settlement Agreement that is before this Court . . . *whether the settlement*

2

*is sufficiently within the bounds of fairness.*" *See id.* at p. 2 (emphasis added).  The INEX Settlement Agreement plainly is not!  Hence, the undersigned have filed this Objection Memorandum to address that very issue.

The INEX Settlement Agreement, as currently drafted, would eviscerate fundamental rights and protections of uilders without the benefit of constitutionally guaranteed due process and in contravention of the Contracts clauses of the United States and Louisiana constitutions.  Louisiana builders, like Louisiana homeowners in this MDL, have been badly affected by Chinese-manufactured drywall supplied by INEX.  Southern Homes and the other undersigned Louisiana builders, have lost reputation, resources, and face–on the front line–the claims and concerns of their homeowners for installing a drywall product that they did not know to be defective.  Despite the significant role of builders in these proceedings, the builders were not asked to, and did not, participate in the negotiations of any of the terms of the INEX Settlement Agreement–an "agreement" that attempts to negotiate the release and permanent bar of not only all the builders' claims against INEX but also all builder claims against other defendants "downstream" from INEX, parties who may not even have a contractual relationship with INEX.[3]

The remedy of redhibition works in favor of all purchasers, which includes the ultimate purchaser, the homeowner, *and* other purchasers of products used in homebuilding, such as builders.  Any settlement which seeks to recognize the rights of one set of claimants to the detriment of the rights of another set of claimants, by forever barring the latter's rights, is neither reasonable nor in

---

[3] For example, Southern Homes had direct contracts with its drywall installer that provided defense and indemnity from the installer to Southern Homes.  Southern Homes is unaware of any principle of law that should allow INEX, a stranger to that contract, to bar Southern Homes' ability to recover under the contract.  *See, e.g.,* Drywall Work Contract, attached as Exhibit A.

3

keeping with the constitutional due process rights. Approval of the INEX Settlement Agreement would leave hollow these constitutional protections without the guaranteed benefit of due process.

Although Southern Homes and the other undersigned parties adopt the arguments set forth in the Opposition Memorandum filed by the Homebuilders' Steering Committee, the undersigned parties file this Objection Memorandum to stress the detriment any approval of the INEX Settlement Agreement would have on Louisiana homebuilders.

## II.  STANDING

### A.  Builder-Defendants Like Southern Homes Have Standing to Object to the INEX Settlement Agreement.

"Courts have a duty to protect the rights of the parties before them." *Zupnick v. Fogel*, 989 F.2d 93, 98 (2d Cir. 1993). Consequently, courts have allowed non-settling defendants, like Southern Homes, to object to settlement agreements when the non-settling defendant can demonstrate that it will sustain "plain legal prejudice" as a result of the settlement. *See, e.g., id.; see also In re Mid-Atl. Toyota Antitrust Lit.*, 564 F. Supp. 1379, 1387 (D. Md. 1983) (holding "non-settling defendants *do* have standing to object to proposed court approval of settlement which would bar their rights of contribution and indemnity from settling defendants") (emphasis added); *In re Vioxx Prod. Liab. Lit.*, 388 Fed. Appx. 391, 395 (5th Cir. 2010).

"Plain legal prejudice" has been found to include "*any* interference with a party's contractual rights or a party's ability to seek contribution or indemnification." *Agreti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (emphasis added). A party also suffers "plain legal prejudice" if the settlement "strips the party of a legal claim or cause of action, such as a cross-claim." *Id.*; *see also In re Vioxx Prod. Liab. Lit.*, 388 Fed. Appx. at 395. The following text of the INEX Settlement Agreement shows, clearly, that Southern Homes and like builders will undoubtedly suffer plain legal

4

harm if this Court approves the Settlement Agreement. Section 11 of the INEX Settlement Agreement asks this Court to:

> 11.2.2 Bar the assertion by *any* entity or person against the Settling Defendants of *any* contribution, indemnification, subrogation, or *other claims* concerning (i) the Chinese Drywall claims against INEX or (ii) the Settlement.

INEX Settlement Agreement at p. 26, Sec. 11.2.2 (emphasis added). "Settling Defendants" is defined to include INEX *and* the "Downstream INEX Releasees," which includes drywall installers "who purchased or *received* Chinese drywall from INEX or *used* Chinese drywall supplied by INEX in the construction of Affected Property." *See* INEX Settlement Agreement at p. 4, Sec. 1.10 (emphasis added). Southern Homes notes that "Builders shall *not* be Downstream INEX Releasees," even though builders, such as Southern Homes, purchased, received or used Chinese-manufactured drywall supplied by INEX. *See id.* (emphasis added).

Paragraphs 20 through 22 of the Proposed Order Preliminarily Approving INEX Settlement Agreement asks this Court to "stay" the prosecution of the various omnibus complaints and related actions against INEX and defendants "downstream" from them, excluding, of course, builders. *See* Proposed Order, Doc. 8628-2, at p. 6.

The INEX Settlement Agreement seeks to strip Louisiana homebuilders of their claims against their direct drywall seller and their direct drywall installers. This "agreement," in which no homebuilder took part, purports to leave homebuilders with nothing but claims against foreign drywall manufacturers, which claims, realistically, have apparent collectability issues and interferes with their contractual rights against drywall installers who appear to have not even contributed anything to settlement.

Under Louisiana's redhibition law, Southern Homes has a statutorily granted right to costs,

expenses, indemnity and other damages against INEX for defective Chinese-manufactured drywall. For that reason, Southern Homes has, of right, filed a first-party redhibition action against INEX in Louisiana state court in addition to the several third-party demands Southern Homes has had to file against INEX for supplying it with allegedly defective Chinese-manufactured drywall. The INEX Settlement Agreement also seeks to destroy Southern Homes contractually granted indemnity and defense rights against its only drywall installer, Graf's. All these claims can be found in the Exhibits to the INEX Settlement Agreement. Regardless, Southern Homes has attached, as exhibits, its first-party suit against INEX and its drywall installer, Graf's. *See* Ex. B1-B4 (including Southern Homes' motions for summary judgment against INEX and corresponding hearing transcript).

### B. Louisiana Builders, including Southern Homes, Have Statutory Rights of Redhibition Against Drywall Supplier, INEX.

Louisiana's law of redhibition, which is contained in Louisiana Civil Code article 2520 *et seq.*, provides remedies for a buyer who purchases a product containing a redhibitory defect. Specifically, articles 2531 and 2545 entitle a buyer to costs, expenses, indemnification and other damages from the seller of a defective product. If a seller did not know that his product was defective, moreover, the seller is still bound to correct or repair the defect, or if he cannot correct it, to return the purchase price to the buyer with interest and reimburse the buyer for expenses resulting from the sale. This relief is afforded by article 2531, which provides that the seller is bound to:

> repair, remedy, or correct the defect. If he is unable or fails so to do, he is then bound to return the price to the buyer with interest from the time it was paid, and to reimburse him for the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, less the credit to which the seller is entitled if the use made of the thing, or the fruits it has yielded, were of some value to the buyer.

LA. CIV. CODE ANN. art. 2531 (2010). If a seller knew that his product was defective at the time of sale, he is responsible to the buyer of his product for:

> the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees.

LA. CIV. CODE ANN. art. 2545 (2011).

Articles 2531 and 2545 provide the right of Louisiana builders, such as Southern Homes, to seek costs, expenses, indemnification *and* other damages from INEX for selling them Chinese-manufactured drywall. *See, e.g., Stratton-Baldwin Co. v. Brown*, 343 So.2d 292, 298 (La. App. 1 Cir. 1977) (citing *Breaux v. Winnebago Indus., Inc.*, 282 So.2d 763 (La. App. 1 Cir. 1973)) (holding a good faith seller liable in redhibition for the expenses incurred in investigating and attempting to repair defects in materials sold to customers from whom complaints were received). The redhibition claims of Louisiana homebuilders against INEX are, therefore, distinct from claims for simple tort indemnity for homeowner claims that may be awarded against a builder.

### C. These Redhibition Rights are the Vested Property Rights of Louisiana Builders And are Constitutionally Protected by the Guarantee of Due Process, as are The Contractual Rights to Defense and Indemnity that Builders Have Against "Downstream INEX Releasees."

Under Louisiana law, a cause of action accrues when a party has the right to sue. *See Falgout v. Dealers Truck Equip. Co.*, 98-3150 (La. 1999), 748 So. 2d 399, 407; *see also Trahan v. Lib. Mut. Ins., Co.*, 314 So. 2d 350, 353 (La. 1975) (defining a "cause of action" as "the state of facts that gives a party a right to judicially assert an action against the defendants"). When a party acquires a right to assert a cause of action or to defend himself against one, that right is "a vested property right which may not be constitutionally divested" pursuant to the Due Process and Contracts clauses of the United States and Louisiana constitutions. *Id.*; *see also Luoette v. Sec.*

7

*Indus. Ins. Co.*, 361 So. 2d 1348, 1350 (La. App. 3 Cir. 1978) (holding "a cause of action accrues when suit may be legally instituted on it). Such a cause of action cannot be divested, *even by subsequent legislation*. *See id.* Courts have specifically held that a supplier's redhibition cause of action against his manufacturer may be asserted even *after* a settlement between a manufacturer and the injured individual. *See Draten v. Winn Dixie of La., Inc.*, 940767 (La. App. 1 Cir. 1995), 652 So.2d 675 (reversing summary judgment in favor of manufacturer of a defective bench and finding that retailer had the right to pursue its redhibition claim against the manufacturer *after* manufacturer settled with injured plaintiff).

### 1.     Redhibition Rights of Louisiana Builders against INEX.

A redhibition cause of action accrues when a buyer can show the following elements:

> a thing sold contains a defect or defects which render the thing sold either absolutely useless for its intended purpose or its use so inconvenient that the buyer would not have purchased the item had he known of the defect; (2) the defect existed at the time of sale, and was not apparent; and (3) the seller was given the opportunity to repair the thing and failed to do so.

*See Vanderbrook v. Coachmen Ind., Inc.*, 2001-809 (La. App. 2 Cir. 2002), 818 So. 2d 906, 912. Southern Homes purchased Chinese-manufactured drywall exclusively from INEX. This Court has already held, on at least one occasion, that Chinese-manufactured drywall *has* a redhibitory defect under Louisiana law and that the redhibitory defect existed at the time of sale from the drywall manufacturer. *See Hernandez v. Knauf Gips KG*, Case No. 2009-cv-6050, U.S.D.C. E.D. La., Doc. 3012 (5/11/10). On April 16, 2009, Southern Homes emailed Jim Geary, President of INEX, notice of a Southern Homes homeowner's concern regarding the presence of Chinese-manufactured drywall in his home. Southern Homes was requesting that INEX and/or its drywall supplier inspect and, if necessary, remediate the home. INEX did not respond. A cause of action for redhibition

against INEX has, therefore, accrued to the interest of Southern Homes and presumably many other Louisiana builders.

Southern Homes and the other undersigned parties note that, on April 4, 2011, INEX attempted to avail itself of article 2531 by filing a pro-active motion for partial summary judgment arguing that it should be deemed a "good faith" seller of Chinese-manufactured drywall. In consideration of the above, it would be abhorrent to Louisiana jurisprudence and to the constitutional underpinnings of that jurisprudence to approve a settlement agreement that destroys the vested property rights of Louisiana builders, such as those of Southern Homes.[4]

### 2. Contractual Rights of Builders Against "Downstream INEX Releasees"

Southern Homes has already filed first- and third-party suits against its drywall installer for the defense and indemnity obligations owed to Southern Homes under its contract with the installer. *See, e.g.,* Exs. B-1 through B-4. Under Louisiana law, Southern Homes' contractual cause of action against its drywall installer accrued *prior* to the INEX Settlement Agreement. *See* LA. CIV. CODE ANN. art. 1986 (2011) (providing the right of the obligee to demand specific performance under a contract).

As noted above, the INEX Settlement Agreement includes, by definition, Southern Homes' drywall installer amongst its "Settling Defendants." The bar and stay orders of the INEX Settlement

---

[4] Claims have been asserted against INEX by homebuilders in state court proceedings. *See, e.g., Southern Homes, L.L.C., et al. v. Interior/Exterior Building Supply, L.P., et al.*, Civil District Court, Parish of Orleans, Division M, No. 09-6564; *Derrick Alexander v. General Fidelity Insurance Company, et al.*, Civil District Court, Parish of Orleans, Division L-6, No. 10-8237. It is anticipated that homebuilders will file demands against INEX for their personal redhibition rights in the MDL and the only reason that such claims have not yet been filed is the fact that MDL pleadings are essentially stayed by virtue of the standing MDL Pre-Trial Order Nos. 1G and 1H.

Agreement, therefore, would prevent Southern Homes from continuing to prosecute its vested contractual claims against Graf's–another unconstitutional divestment of the rights of homebuilders.

### D.  Courts Have Refused to Uphold Bar/Stay Agreements Such as that Described in the INEX Settlement Agreement.

"A court can endorse a settlement *only* if the compromise is fair, reasonable and adequate." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (emphasis added). Moreover, "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is *not* enough to earn the judicial stamp of approval." *Id.* (emphasis added).

*Altman v. Liberty Equities Corp.*, for example, provides analysis of a strikingly similar bar agreement as is in issue here. 54 F.R.D. 620, 622 (S.D.N.Y. 1972). The bar order in the Altman Settlement stemmed from a class action settlement including less than all the defendants of the class action, and provided that:

> The final judgment contemplated shall *bar and permanently enjoin the non-settling defendants* from prosecuting against the settling defendants any claim or claim over for indemnification or contribution arising out of the subject matter of this or any related matter.

*Id*. (emphasis added). The *Altman* court concluded that it could *not* fairly approve of the proposed bar order in the stipulation of the settlement. *Id.* at 625. The court reasoned "there can be no doubt that the objecting defendants are entitled to contribution," and "it can be said that the objecting defendants presently have sufficient rights in their potential claims for contribution that a bar thereof would be prejudice to their interests." *Id*. "These," concluded the *Altman* court, "are sufficient grounds to require this court to refrain from barring the non-settling defendants from such rights at this time." *Id*.

Southern Homes (and other builders) would suffer even more egregiously because an order

10

approving the INEX Settlement would destroy their vested redhibition rights and vested contractual indemnity rights they have against INEX and their drywall installers.

### E. This Court May Not Have Jurisdiction to Stay a State Court Chinese-Manufactured Drywall Proceeding.

There is no readily apparent jurisdictional basis for a federal court to stay a state court Chinese-manufactured drywall proceeding. The All Writs Act does *not* create subject matter jurisdiction for courts where such jurisdiction would otherwise be lacking. *Henson v. Ciba-Geigy Corp.*, 261 F.3d 1065 (11th Cir.2001). The Act provides courts with only a procedural tool to enforce jurisdiction they have already derived from another source. *Brittingham v. Commissioner*, 451 F.2d 315, 317 (5th Cir.1971).

The Anti-Injunction Act serves as a check, moreover, on the authority recognized by the All Writs Act. The former prohibits federal courts from utilizing authority under the All Writs Act to stay proceedings in state court unless the requirements of one of the narrow exceptions are met. *See Olin Corp. v. Ins. Co.*, 807 F. Supp. 1143, 1152 (S.D.N.Y.1992). In light of the federalism concerns underlying the Anti-Injunction Act, courts construe both the "necessary in aid of its jurisdiction" and "to protect and effectuate its judgments" exceptions narrowly. *See T. Smith & Son, Inc. v. Williams*, 275 F.2d 397, 407 (5th Cir.1960); *see also Delta Air Lines, Inc. v. McCoy Rests., Inc.*, 708 F.2d 582, 585 (5th Cir.1983). The "to protect and effectuate its judgments" exception is generally referred to as the "re-litigation exception." *See Jacksonville Blow Pipe Co. v. R.F.C.*, 244 F.2d 394, 400 (5th Cir.1957). An injunction under the re-litigation exception is appropriate when the state law claims would be precluded by the doctrine of res judicata. A settlement between INEX and certain homeowners does not, however, trigger the doctrine of res judicata as to non-settling builders.

Courts have upheld injunctions predicated on the "necessary in aid of its jurisdiction"

11

exception in two distinct situations. The first is when the federal court in an in rem proceeding obtains jurisdiction over the res before the state court action involving the same res is brought. *See In re Abraham*, 421 F.2d 226, 228 (5th Cir. 1970).  Orders enjoining state court proceedings have also been upheld in contexts roughly analogous to proceedings in rem, such as when enjoining the state court proceeding is necessary to protect an earlier federal court injunction. *See Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993).  The "necessary in aid of its jurisdiction" exception provides the basis for an injunction "[w]hen particular property is before the district court . . . such as when it is the subject of an in rem proceeding or in the custody of a bankruptcy trustee[.]" *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1103 (11th Cir. 2004). The principal focus of this exception is on parallel *in rem* proceedings--one in federal court, the other in state court. *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 641-42 (1977) (noting that traditionally the exception has been used to enjoin parallel in rem proceedings, while concurrent in personam proceedings have traditionally been allowed to continue).  This situation is not one in which a state court in rem proceeding is competing with a federal court in rem proceeding to resolve ownership of a res.

### III.     FUNDAMENTAL FAIRNESS MILITATES AGAINST PRELIMINARY APPROVAL OF THE INEX SETTLEMENT AGREEMENT.

The agreement is of critical importance to the builder-defendants in this Court.  It is obvious that the drafters of the INEX Settlement Agreement devoted countless hours to the agreement.  As evidence of the same, the INEX Settlement Agreement even attempts to negotiate on behalf of builders.  However, these negotiations have been crafted not to protect builders but to deny them their vested statutory and contractual rights of recovery in- and outside of this MDL.

### IV.     CONCLUSION

For the reasons discussed above, this Court should not preliminarily approve the INEX

12

Settlement Agreement as written because it is fundamentally unfair.

                                      Respectfully submitted,

/s/ James M. Garner
JAMES M. GARNER, T.A. (# 19589)
MARTHA Y. CURTIS (# 20446)
MATTHEW C. CLARK (#31102)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, LLC**
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112-1033
Telephone: (504) 299-2100
Facsimile: (504) 299-2300

COUNSEL FOR SOUTHERN HOMES, LLC; SPRINGHILL, LLC; TALLOW CREEK, LLC; AND ADRIAN KORNMAN

/s/ Warren Horn
WARREN HORN (14380)
HELLER DRAPER HAYDEN PATRICK & HORN, LLC
650 Poydras Street, Ste. 2500
New Orleans, Louisiana 70130

COUNSEL FOR DAELEN OF TANGIPAHOA, LLC; GMI CONSTRUCTION, INC.; GREMILLION HOMES, INC.; LEE ROY JENKINS/LEE ROY JENKINS, INC.; L.A. HOMES, INC.; ANTHONY F. MARINO GENERAL CONTRACTOR, LLC; ROYAL HOMES, LLC

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Memorandum in Opposition to the Motion for Preliminary Approval of the INEX Settlement Agreement has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice electronic filing in accordance with the procedures established in MDL 2047, on this 3rd day of May, 2011.

                                          /s/ James M. Garner
                                          JAMES M. GARNER