# CONTRACT

| OWNER: | TRADE CONTRACTOR |
|---|---|
| Springhill, L.L.C. | Graf's Drywall |
| 2053 Gause Blvd. East, Suite 200 | 93 American Way |
| Slidell, LA 70461 | Picayune MS 39466 |
| Tax ID: 72-1171449 | 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   Doryk Graf |
| Phone: 985-643-0123 | 601-798-6115   grafsdrywall@yahoo.com |
| Fax: 985-643-6964 | |

WITNESSETH: That OWNER and TRADE CONTRACTOR identified above for the consideration hereinafter named agree as follows:

TRADE CONTRACTOR agrees to furnish all material and perform all work as described herein for OWNER in accordance with the drawings and specifications specified herein, all of which drawings and specifications hereby becoming a part of this contract. NOW, THEREFORE, in consideration of the mutual agreements herein contained, it is agreed as follows:

ARTICLE I. -- TRADE CONTRACTOR and OWNER agree that the materials to be furnished and the work to be done, including guarantees and warranties by TRADE CONTRACTOR, are as specified in the SCOPE OF WORK attached hereto and made a part hereof by reference.

ARTICLE II. -- OWNER agrees to pay TRADE CONTRACTOR for the faithful and strict performance of the work the sum specified in the SCHEDULE OF VALUES. TRADE CONTRACTOR shall make application for payment on and payment shall be made in accordance with the SCHEDULE OF VALUES, payable at the rate of 100% of all material and labor in place as approved and allowed by OWNER, less previous payments. Any remaining balance shall be paid upon completion of all work. No payment hereunder, or failure to withhold any payment or part thereof, or lapse of time shall be construed as an acceptance by OWNER of any work done by or under TRADE CONTRACTOR. OWNER may at his option withhold payment of any estimate until TRADE CONTRACTOR has furnished OWNER with suitable evidence that he has paid in full for all labor, materials, and supplies used in the work through the date of the estimate, and has paid, or has made arrangements to secure payment of, all withholding taxes, both State and Federal, payroll taxes, and costs of all kinds. Concurrent with the receipt of final payment, TRADE CONTRACTOR shall deliver to OWNER and its officers, agents and employees, a release discharging OWNER and its officers, agents and employees from all liabilities, obligations, and claims arising out of or under this contract.

ARTICLE III. -- TRADE CONTRACTOR shall make all alterations, furnish the material for, and perform all extra work, or omit any work OWNER may require without nullifying this agreement. No changes are to be made except upon written work order from OWNER. For extra or omitted work, TRADE CONTRACTOR shall be paid in accordance with the SCHEDULE OF VALUES, or if not covered in the SCHEDULE OF VALUES, a mutually satisfactory price agreed upon prior to written work order being issued.

ARTICLE IV. -- (a) The work performed by TRADE CONTRACTOR shall be at the risk of TRADE CONTRACTOR and its employees, exclusively. To the fullest extent permitted by law, TRADE CONTRACTOR shall indemnify, defend (at TRADE CONTRACTOR's sole expense) and hold harmless OWNER from and against any and all claims for bodily injury or death, damage to property, demands, damages, actions, causes of action, suits, losses, judgments, obligations and any liabilities, costs and expenses (including, but not limited to, investigative and legal costs, attorney fees and costs, and consultant fees and costs), which arise or are in any way connected with the work performed, materials furnished, or services provided, under this agreement, by TRADE CONTRACTOR or its agents. Said indemnity and defense obligations shall further apply, whether or not said claim arises out of the concurrent act, omission, or negligence of OWNER, whether active or passive. TRADE CONTRACTOR shall not be obligated to indemnify or defend OWNER for claims found to be due to the sole negligence or willful misconduct of OWNER.

(b) 1. TRADE CONTRACTOR shall carry Comprehensive General Liability insurance including explosion, collapse, underground hazards, products liability, contractual liability, and completed operations for limits of at least $1,000,000 each occurrence and aggregate, or Commercial General Liability insurance on the occurrence basis with limits of liability of at least $1,000,000 general aggregate, $1,000,000 products/completed operations aggregate, $1,000,000 personal and advertising injury, and $1,000,000 each occurrence. TRADE CONTRACTOR shall obtain from each of its insurers a waiver of subrogation in favor of OWNER with respect to losses, claims, or costs arising out of or in connection with the work.

(b) 2. TRADE CONTRACTOR shall carry statutory Workers Compensation and Employers Liability insurance for limits of at least $500,000 each accident, $500,000 disease each employee and $500,000 disease policy limit. If any part of the work is sublet to a third party, TRADE CONTRACTOR shall require the third party to carry the above designated insurance in ARTICLE IV. (b)(1) and (b)(2).

(b) 3. In the event the TRADE CONTRACTOR uses its vehicle on behalf of the OWNER, then the TRADE CONTRACTOR shall carry $1,000,000 liability insurance on any owned, non-owned or hired autos.

(c) Prior to TRADE CONTRACTOR commencing any work or services, TRADE CONTRACTOR shall show evidence to OWNER that the insurance required is carried in full compliance with the above. TRADE CONTRACTOR shall provide OWNER with a Certificate of Insurance and additional insured endorsement naming OWNER as an additional named insured, in a form acceptable to OWNER. TRADE CONTRACTOR shall further provide Certificates of Insurance and additional insured endorsements on an annual basis, which name OWNER as an additional named insured, through the applicable statute of limitations period that a construction defect suit can properly be filed. The coverage available to OWNER as an additional named insured shall not be less than $1,000,000 combined single limit per occurrence and $1,000,000 in the general aggregate, providing for coverages for completed operations, products liability and contractual liability. The insurance carrier must be "A-" rated or better. No insurance shall be subject to cancellation without a prior thirty (30) day written notice to OWNER. The required Certificates of Insurance shall indicate OWNER as certificate holder and additional named insured and shall indicate OWNER's correct mailing address. Failure by TRADE CONTRACTOR to maintain the insurance required herein, as evidenced by a current Certificate of Insurance and additional insured endorsement, shall be considered a breach of this contract.

(d) TRADE CONTRACTOR, as an independent contractor and as a part of the obligations assumed by him in this contract, accepts exclusive liability for all taxes and contributions required by the Federal Insurance Contributions Act and the Unemployment Compensation Law, or similar applicable law, with respect to the employees of TRADE CONTRACTOR in the performance of the work.

(e) TRADE CONTRACTOR accepts exclusive liability for any and all sales and use taxes and import and export duties which may be assessed against materials, equipment or labor used in the work, and assumes all expenses and risks of transit thereof.

ARTICLE V. -- (a) Should TRADE CONTRACTOR at any time breach this agreement or fail to prosecute the work with promptness, diligence, and efficiency, or fail to perform any of the requirements hereof, OWNER may after forty-eight (48) hours written notice by registered mail addressed to TRADE CONTRACTOR at the address set forth in the preamble hereof, proceed as follows:

1. Provide such materials, supplies, equipment, and labor as may be necessary to complete the work, pay for same, and deduct the amount so paid from any money then or thereafter due TRADE CONTRACTOR; or

2. Terminate the employment of TRADE CONTRACTOR, enter upon the premises and take possession, for use in completing the work, of all the materials, supplies, tools, equipment, and appliances of TRADE CONTRACTOR thereon, and either complete the work or have it completed by others, and be liable to TRADE CONTRACTOR for no further payment until final payment is due, and then only if and to the extent that the unpaid balance of the amount to be paid under this contract exceeds the expense of OWNER in finishing the work; or

3. (a) By registered mail addressed to surety, require the surety to enter upon the premises and take possession, for use in completing the work, of all the materials, supplies, tools equipment and appliances of TRADE CONTRACTOR thereon and to complete the work or to have it completed by other, all in accordance with plans and specifications; OWNER shall not be liable to TRADE CONTRACTOR for any further payment until final payment is due, and then only if and to the extent that the unpaid balance of the amount to be paid under this contract exceeds any damages for delay or otherwise, or other set-off, counter-claim, or recoupment in favor of OWNER against TRADE CONTRACTOR. Any balance owed by OWNER shall be paid at the direction of the surety upon completion.

(b) If the amount expended by OWNER under 1 above, or the cost of completing the work under 2 above, or damages to which OWNER is entitled, as mentioned in 3 above, exceed the unpaid balance of the contract price herein stated, TRADE CONTRACTOR, or his surety, shall pay OWNER such excess within thirty (30) days after submission of invoices therefore to TRADE CONTRACTOR.

(c) Should TRADE CONTRACTOR at any time fail to pay, when due, for all labor, materials, or supplies used in the work, OWNER may therefore and charge the payment amount to TRADE CONTRACTOR, with or without his consent. OWNER has the further right to pay any claims for labor, materials, and supplies used in the work, whether these claims are overdue or not, providing, however, TRADE CONTRACTOR gives his consent.

(d) Should TRADE CONTRACTOR default in any of the provisions of this contract and should OWNER employ an attorney to enforce any provision hereof, or to collect damages for breach of the contract, or to recover on any bond given in connection herewith, TRADE CONTRACTOR and his surety agree to pay OWNER such reasonable attorney's fees as he may expend therein. As against the obligations herein contained, TRADE CONTRACTOR and his surety waive all rights of exemption. Attorneys fees and costs of collection shall be in addition to the amount of the bond, should OWNER sue for collection more than one hundred twenty (120) days after presentation of claim against this bond.

ARTICLE V. -- TRADE CONTRACTOR does covenant and agree that if for any reason this contract is not completed as contemplated hereby and any dispute shall arise over the entitlement or rights of TRADE CONTRACTOR, his sole remedies shall be an action to enforce the several terms and provisions of this contract. TRADE CONTRACTOR hereby waives his right, if any, to bring an action in the nature of quantum meruit, quantum valebat, or quasi contract, nothing contained herein shall excuse TRADE CONTRACTOR from completion of the work in the manner provided in this contract, nor shall the pendency of any dispute, suit, or proceeding excuse any delay, deficiency, illegality or nonconformance therewith.

ARTICLE VII. -- This contract shall not become effective until and unless TRADE CONTRACTOR is approved by OWNER.

Page 1 of 2
Revised 08/20/04

Signature & date required on back.

EXHIBIT A

ARTICLE VIII. — OWNER as principal employer, and TRADE CONTRACTOR, as direct employer, mutually agree that it is their intention to recognize OWNER as the statutory employer of TRADE CONTRACTOR'S employees, to include direct employees or statutory employees of TRADE CONTRACTOR, while TRADE CONTRACTOR'S employees are providing work and/or services to OWNER under this agreement.

ARTICLE IX. — (a) TRADE CONTRACTOR shall not sublet, assign or transfer this contract, or any part thereof, without the written consent of OWNER. After OWNER has given his consent to any such contract assignment, or transfer, TRADE CONTRACTOR still must obtain the approval of OWNER as to the specific subcontractor, assignee or transferee.

(b) This contract contains the entire agreement between the parties, and all modifications thereto, or changes thereto, shall be in writing.

(c) Should any clause or clauses contained in this instrument be found invalid, other provisions hereof shall remain in full force and effect.

ARTICLE X. — (a) TRADE CONTRACTOR acknowledges that he has read all plans and specifications and that he is familiar therewith. He agrees to comply with and perform all provisions thereof, applicable to his work.

(b) TRADE CONTRACTOR shall procure at his own expense all required permits and licenses.

ARTICLE XI. — (a) TRADE CONTRACTOR shall submit for approval all shop drawings and samples for which approval is required by OWNER.

(b) Upon receipt of OWNER'S notice or not less than five (5) days in to do, TRADE CONTRACTOR shall begin the work as instructed by OWNER, and shall perform the work promptly, efficiently and at a speed which will not cause delay in the progress of OWNER'S activities or other branches of the project carried on by other contractors. OWNER may require TRADE CONTRACTOR to execute specified parts of work in preference to other parts thereof.

(c) In the event a work stoppage should occur in which TRADE CONTRACTOR'S employees are involved, OWNER shall have the right to terminate this contract upon seventy-two (72) hours written notice to TRADE CONTRACTOR; provided, however, that TRADE CONTRACTOR may, prior to the time fixed for such termination, request in writing that OWNER, with the concurrence of the labor organization or organizations of employees involved in the work stoppage, submit to TRADE CONTRACTOR a proposal for the settlement thereof. If this is done, the termination of this contract shall not become effective until a settlement proposal has been submitted to TRADE CONTRACTOR and he has failed to accept it within seventy-two (72) hours after receipt. Work stoppage, as herein used, is defined as including any and all interruptions of work of any kind or character resulting from the actions of employees of TRADE CONTRACTOR or a labor organization representing or claiming representation of TRADE CONTRACTOR'S employees, where, in the opinion of the OWNER, such interruptions interfere with the progress of construction of the project. In the event of a termination under this paragraph, OWNER shall proceed under ARTICLE V.

(d) Any damages for delay caused by TRADE CONTRACTOR shall be deducted by OWNER from the amount due, for said work as liquidated damages and not as a penalty; subject, however, to the option of OWNER to terminate said contract for default as elsewhere provided.

(e) OWNER shall not be liable to TRADE CONTRACTOR by reason of fire or other casualty, on account of riots, heat strikes, or other combined action of the workmen or others, or on account of any acts of God, or any other cause beyond OWNER'S control; or by reason of any circumstances caused or contributed to by TRADE CONTRACTOR.

(f) Should TRADE CONTRACTOR'S work be delayed by OWNER, then OWNER shall owe TRADE CONTRACTOR therefore only an extension of time for completion equal to the delay caused, and then only if a written claim for delay is made to OWNER within forty-eight (48) hours from the beginning of the delay.

(g) TRADE CONTRACTOR shall remove from the premises or place in location specified by OWNER, daily or as often as directed by OWNER, all rubbish and surplus material which may accumulate from the prosecution of the work, and, should TRADE CONTRACTOR fail to finish, OWNER may, at his option, remove or relocate same at TRADE CONTRACTOR'S expense.

(h) TRADE CONTRACTOR shall supervise the work himself, or provide a competent and qualified foreman satisfactory to OWNER. TRADE CONTRACTOR shall not bring any personnel onto the job other than properly skilled workmen. TRADE CONTRACTOR SHALL NOT BRING ANY CHILDREN ONTO THE JOB AT ANY TIME UNDER ANY CIRCUMSTANCES. TRADE CONTRACTOR agrees to immediately remove from the job any personnel or other non-authorized individuals upon request of OWNER.

ARTICLE XII. — TRADE CONTRACTOR shall provide safe and sufficient facilities at all times for inspection of all work by OWNER, or OWNER'S authorized representatives, and, at TRADE CONTRACTOR'S sole cost, risk and expense shall, within forty-eight (48) hours after receiving written notice from OWNER, proceed promptly to take down all portions of the work and remove from the grounds and buildings all material, whether worked or unworked, which shall be condemned or fail to be approved, and shall promptly make good all such work or material and all other work, products, damaged or destroyed thereby.

ARTICLE XIII. — TRADE CONTRACTOR shall at all times supply adequate tools, appliances and equipment, a sufficient number of properly skilled workmen, and a sufficient amount of materials and supplies of proper quality to prosecute the work efficiently and promptly; shall promptly pay for all material purchased; shall pay all workmen, each week if required; shall, as often as required by the OWNER, obtain and furnish signed receipts from all workmen showing date of payment, amount paid, number of hours paid for, the days on which the labor was performed, the classification of the labor so paid, and the rate of wage per hour paid.

ARTICLE XIV. — (a) TRADE CONTRACTOR shall turn said work over to OWNER in good condition and free and clear of all claims, encumbrances or liens from TRADE CONTRACTOR'S employees, subcontractors, and material and equipment suppliers; shall protect and save OWNER harmless from all such claims, encumbrances, and liens growing out of the performance of the work; shall at his own cost and expense, including attorney's fees, defend all suits to establish such claims; and shall pay any such claims or liens so established.

(b) TRADE CONTRACTOR shall, as often as required by the OWNER, furnish a sworn statement showing all parties who furnished labor or materials for the work with their names and addresses and the amount due or to become due each. Like statements may be required from any subcontractors of TRADE CONTRACTOR.

ARTICLE XV. — TRADE CONTRACTOR will employ no equipment, tools or machinery other than those owned solely by him, unless he shall first obtained the written consent of OWNER.

ARTICLE XVI. — (a) Before proceeding with the fabrication of materials under this contract, TRADE CONTRACTOR will accurately check all previous correlating work done by other trades and determine the correctness of same, and failure on its part to detect or report discrepancies will relieve OWNER of any and all claims to recover costs, expenses or damages resulting there from.

(b) TRADE CONTRACTOR will store materials only in areas approved for storage by OWNER. The handling, re-handling, distribution, and redistribution, whenever necessary, shall be done by TRADE CONTRACTOR at his own expense within forty-eight (48) hours of the receipt of notices to relocate the materials.

ARTICLE XVII. — (a) TRADE CONTRACTOR agrees that the prevention of accidents to workmen engaged upon or in the vicinity of TRADE CONTRACTOR'S work is TRADE CONTRACTOR'S responsibility. TRADE CONTRACTOR agrees to comply with all federal, state and local laws, ordinances, rules, regulations (including but not limited to CFR 1926 and CFR 1910), codes, notices and requirements concerning safety as shall be applicable to the work, including but not limited to, the Federal Occupational Safety and Health Act (OSHA) of 1970, as amended, and all standards, rules, regulations and orders which have been or shall be adopted or issued thereunder; and TRADE CONTRACTOR shall be liable to OWNER for all loss, cost and expense attributable to any acts of commission or omission by TRADE CONTRACTOR, its employees and agents resulting from failure to comply therewith, including but not limited to, all fines, penalties or corrective measures.

(b) When so ordered, TRADE CONTRACTOR shall stop any part of the work that OWNER deems unsafe until corrective measures satisfactory to OWNER have been taken, and TRADE CONTRACTOR agrees that it shall not have nor make any claims for damages resulting from such stoppages. Should TRADE CONTRACTOR neglect to take such corrective measures, OWNER may do so at the cost and expense of TRADE CONTRACTOR and may deduct the cost thereof from any payments due or to become due to TRADE CONTRACTOR. Failure on the part of OWNER to stop unsafe practices shall in no way relieve TRADE CONTRACTOR of its responsibility therefor.

ARTICLE XVIII. — This contract is for a term of two (2) months or as otherwise specified in the SCHEDULE OF VALUES or SCOPE OF WORK. In the event either party desires this contract to terminate at the end of the specified term or at any time thereafter, the party desiring to terminate this contract agrees to provide the other party, in advance, at least a one (1) month written notice of termination by registered mail. Failure to provide said written notice of termination shall automatically renew this contract, and all of its terms and conditions for an additional term of one (1) month. This automatic renewal provision shall be a continuing one and shall apply at the expiration of each subsequent term.

| Springhill, L.L.C. | | Crates Drywall | |
|---|---|---|---|
| Representative's Signature | Date | Representative's Signature | Date |

FOR HOME OFFICE USE ONLY

Approval & acceptance of CONTRACT & TRADE CONTRACTOR effective this CONTRACT DATE: 08/04/06

HOME OFFICE MANAGEMENT APPROVAL/ACCEPTANCE:

Representative's Signature     Date

Page 2 of 2
Revised 08/20/04