# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE CHINESE-MANUFACTURED** | § | **MDL NO. 2047** |
| **DRYWALL PRODUCTS LIABILITY** | § | **SECTION L** |
| **LITIGATION** | § | |
| | § | |
| **THIS DOCUMENT RELATES TO:** | § | **JUDGE FALLON** |
| | § | **MAGISTRATE JUDGE** |
| *Silva, et al. v. Interior Exterior Building* | § | **WILKINSON** |
| *Supply, LP, et al.* | § | |
| EDLA 09-08030 | § | |
| | § | |
| *Silva, et al. v. Arch Insurance Company, et al.* | § | |
| EDLA 09-08034 | § | |
| | § | |
| *Payton, et al. v. Knauf Gips, KG, et al.* | § | |
| EDLA 09-07628 | § | |
| | § | |
| *Wiltz, et al. v. Beijing New Building Materals* | § | |
| *Public Limited Co., et al.* | § | |
| EDLA 2:10-cv-000361 | § | |
| | § | |
| *Gross, et al. v. Knauf Gips, KG, et al.* | § | |
| EDLA 2:09-cv-6690 | § | |
| | § | |
| *Rogers, et al. v. Knauf Gips, KG, et al.* | § | |
| EDLA 2:10-cv-00362 | § | |
| | § | |
| *Amato, et al. v. Liberty Mutual Ins. Co.* | § | |
| EDLA 2:10-cv-00932 | § | |
| | § | |
| *Kenneth Abel, et al. v. Taishan Gypsum Co.,* | § | |
| *Ltd., f/k/a Shangdong Taihe Dongxin Co., Ltd.,* | § | |
| *et al.* | § | |
| EDLA 2:11-cv-080 | § | |
| | § | |
| *Daniel Abreau, et al. v. Gebrueder Knauf* | § | |
| *Verwaltungsgesellschaft, KG, et al.* | § | |

1

587054.2

EDLA 2:11-cv-252 §
§

**AMICUS MEMORANDUM IN OPPOSITION TO JOINT MOTION FOR AN ORDER: (1) PRELIMINARILY APPROVING INEX SETTLEMENT AGREEMENT; (2) CONDITIONALLY CERTIFYING INEX SETTLEMENT CLASS; (3) ISSUING CLASS NOTICE; AND (4) SCHEDULING A SETTLEMENT FAIRNESS HEARING**

TO THE HONORABLE ELDON E. FALLON, PRESIDING JUDGE:

Non-party Perry Homes, LLC ("Perry") files this Amicus Memorandum in Opposition to Joint Motion for an Order: (1) Preliminarily Approving InEx Settlement Agreement (the "Settlement"); (2) Conditionally Certifying InEx Settlement Class; (3) Issuing Class Notice; and (4) Scheduling a Settlement Fairness Hearing (the "Joint Motion").   In support, Perry respectfully shows the following:

INTRODUCTION

1.     Perry is neither a Plaintiff nor a Defendant in this multidistrict litigation ("MDL") generally or in any specific cases consolidated into this MDL.  Perry is also not currently a party in any related state or federal action.  However, the Settlement attempts to dramatically affect Perry's rights surrounding the housing industry's Chinese drywall problem.  For these reasons, Perry makes a limited appearance in this litigation for the sole limited purpose of filing this opposition as a "friend of the Court" in addition to the memorandum in opposition filed by the MDL Homebuilders Steering Committee ("HSC").[1]  In the event that Perry is subsequently named a Defendant in any action filed in, transferred to, or included in any motion to conditionally transfer to, this Court, Perry reserves all rights to:  (1) object to this Court's jurisdiction over Perry; (2) object that the Court lacks subject matter jurisdiction over such

---

[1]     Perry does not concede that the Court has jurisdiction to issue an order affecting the rights and status of non-parties that are not before the Court.  Nonetheless, Perry files this opposition in the interest of judicial economy so that the Court may consider additional, relevant issues not necessarily raised by the parties that are before It.

2

action(s); (3) object that the action does not involve common questions of fact or centralization will not serve the convenience of the parties or otherwise permits transfer of any such actions to this Court; and (4) file appropriate motions for procedural and substantive relief under the Texas Residential Construction Liability Act.

2.     Perry hereby adopts and incorporates for all purposes the HSC's opposition as part of its opposition.  Because of its own unique circumstances, both as a non-party and in its relationship with others, as more fully set forth below, Perry believes that filing its own opposition raising additional issues is necessary.

<u>BACKGROUND</u>

3.     Perry is a regional homebuilder headquartered in Houston, Texas.  All of Perry's homes are built in the State of Texas.  Based on currently available information, Perry constructed a limited number of homes that contain reactive Knauf drywall.  Aurora Commercial Construction ("Aurora") was the independent contractor that supplied and installed the drywall in each home.  Aurora received the Knauf drywall from Interior Exterior Building Supply Limited Partnership ("InEx").

4.     Despite the fact that Perry believes responsibility for this problem lies with Knauf, InEx and/or Aurora, Perry went to each of the affected homeowners and presented an offer to remediate and repair their homes **<u>at Perry's cost.</u>**  The remediation protocols presented in those offers are consistent with the scope of remediation set forth in the Court's *Germano* and *Hernandez* opinions, as well as the Demonstration Remediation Agreement between the MDL Plaintiffs' Steering Committee ("PSC") and the Knauf Entities.  Perry also offered to cover certain other reasonable losses, such as alternative housing during the remediation and repair period, for each homeowner.  All offers were submitted by April 8, 2011.  One homeowner, who

3

was represented by a member of the PSC, has already accepted Perry's offer.  Remediation on that home began in early April.  While offers to the remaining homeowners remain open, and despite the reasonableness of those offers, several homeowners have rejected the offers and threatened to sue Perry.  To Perry's knowledge, no such suits have been filed.

5.     As the Court is well aware, the costs to remediate and repair each of these homes are not insignificant.  While Perry has a limited number of affected homes, Perry will incur substantial costs if each of its affected homeowners accepts Perry's offer.  These amounts also do not include other losses and expenses Perry incurred, such as inspection costs, lab fees, and employees' lost productivity.

6.     Like other homebuilders that are parties to the MDL litigation, Perry qualifies as a both a potential claimant and a potential defendant.  Perry began approaching Knauf, InEx, and Aurora in mid-February 2011 in an effort to try to reach a "global resolution" of the claims regarding its homes.  Not only has Perry not been able to reach a settlement agreement with any party in its supply chain, Perry's attempts at substantive discussions with these parties have been largely unsuccessful.

7.     Consequently, the Settlement came as a surprise to Perry.  It is particularly troubling to Perry that InEx and the PSC struck a deal that appears to seek to permanently bar Perry from asserting claims against InEx and other parties "downstream" from InEx.  Further, it is troubling InEx and the PSC included Perry and other homebuilders within the definition of the "Settlement Class" despite the fact that neither InEx nor the PSC had authority to negotiate on Perry's behalf.  At the same time, InEx and the PSC seek to leave homebuilders fully exposed to claims from other Settlement Class members.

587054.2

8.     Had InEx and the PSC included Perry (and others in the supply chain) in its settlement negotiations, the issues raised below could have been addressed, and an agreed-upon settlement agreement likely could have been presented to the Court.

9.     Perry recognizes the Court's desire to achieve an ultimate, global resolution of this matter in a manner that provides the injured parties with as much compensation as possible to make them whole.  Perry agrees with these laudable goals, and hopes that such a resolution can be reached.  The proposed Settlement, however, falls far short of these goals.

10.     Because the Settlement is wholly unfair, unreasonable and inadequate as to Perry – and other similarly situated homebuilders – for the reasons set forth below, it should not be preliminarily approved.

<u>ARGUMENT AND AUTHORITIES</u>

I.     PERRY HAS STANDING TO OBJECT TO THE SETTLEMENT

11.     "A court can endorse a settlement only if the compromise is fair, reasonable and adequate." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).  A non-settling party has standing to object to a partial settlement agreement if the non-settling party can demonstrate it will sustain plain legal prejudice as a result of the settlement. *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992).  "Plain legal prejudice has been found to include any interference with a party's contract rights or a party's ability to seek contribution or indemnity." *Id.*

12.     Perry has standing to challenge the Settlement.  Among other things, the Settlement seemingly seeks to strip Perry of its contractual indemnification claims against Aurora.  It also ostensibly seeks to eviscerate Perry's equitable claims for contribution and indemnification against Knauf, InEx and Aurora.

5

II.     THE SETTLEMENT FAILS TO MAXIMIZE CLASS MEMBERS' RECOVERY

13.     The Settlement fully and completely releases Downstream InEx Releasees without any consideration.  InEx Settlement Agreement, p. 4, § 1.10; p. 8, § 1.30; p. 11, § 4.1. There is no economic justification for fully releasing downstream supply chain defendants without any monetary consideration, particularly where Downstream InEx Releasees maintain insurance policies that may provide coverage.[2]  The Settlement fails to explain why the PSC is not pursuing claims against Downstream InEx Releasees.  While the Court cannot force Downstream InEx Releasees to settle with plaintiffs, it should not allow InEx and the PSC to dismiss those parties fully and completely from this litigation where those parties provided no compensation in exchange for their releases.

14.     The list of "Downstream InEx Releasees" in Exhibit 1.10 identifies approximately 900 parties.  Even after removing "Builders" from the list, several hundred parties remain.  It is not unreasonable to believe that fifty (50) or one hundred (100) downstream parties maintain insurance policies that may provide coverage.  By releasing those downstream parties, and by barring homebuilders like Perry from bringing any claim against the downstream parties, the PSC is foregoing tens of millions of dollars in potential funds to reimburse injured parties.  This lacks any rational explanation.  Moreover, it deters homebuilders from repairing these homes at their own cost since avenues for contribution are cut off.  Approving this Settlement will impair everyone's ability to reach a global resolution.

---

[2]     Insurers and reinsurers for Downstream InEx Releasees are among the "Released Parties" under the Settlement Agreement.  InEx Settlement Agreement, p. 8, § 1.28.

587054.2

III.   THE SETTLEMENT ARGUABLY IMPERMISSIBLY INTERFERES WITH PERRY'S CONTRACTUAL INDEMNIFICATION RIGHTS

15.    InEx and the PSC seek a "Bar Order" that permanently enjoins "any and all pending or future claims against the Settling Defendants arising from, or otherwise relating to Chinese Drywall."  InEx Settlement Agreement, p. 26, § 11.1.  InEx and the PSC further ask the Court to prohibit, *inter alia*, "the assertion by any entity or person against the Settling Defendants of any contribution, indemnification, subrogation, other claims [sic] concerning the Chinese drywall claims against InEx[.]"  *Id.*, p. 26, § 11.2.2.  The term "Settling Defendants" is defined to include not just the InEx entities, but every potential downstream defendant (except Builders) that purchased, received, used, sold or marketed Chinese drywall from InEx.  *Id.*, pp. 4, 8, §§ 1.10, 1.30.  These "Downstream InEx Releasees" provide no consideration to the Settlement Class in exchange for their full and complete release.  Aurora is identified as one of the "Downstream InEx Releasees" in Exhibit 1.10 of the Settlement Agreement.  *Id.*, Exhibit 1.10, p. 4.[3]

16.    Perry and Aurora entered into a contract relating to the homes at issue.  That contract contains an indemnification provision whereby Aurora indemnifies Perry for "any and all claims, losses, damages, costs, or expenses of every kind (including but not limited to legal fees, court costs and the costs of litigation) for . . . damage to any property . . . arising out of or in any way related to the work, the materials, supplies or equipment furnished in furtherance of the work[.]"  The proposed Bar Order arguably impermissibly interferes with Perry's contract by terminating a bargained-for unqualified right to indemnification for certain losses.  The contract does not provide that Aurora's indemnification obligation can be extinguished by a bar order

---

[3]     The "shiptoaddr1" entry for "Aurora Commercial" on Exhibit 1.10 is a Perry home that did not exhibit any symptoms associated with reactive Chinese-manufactured drywall during a threshold inspection.

similar to the one proposed by InEx and the PSC. Courts have rightly rejected similar bar orders, and this Court should do the same to adequately protect Perry's contractual rights. *See West End Capital Mgmt., LLC v. Pixelplus Co., Ltd.*, 580 F.Supp.2d 343, 344-45 (S.D.N.Y. 2008) (amending bar order in proposed settlement agreement to expressly exclude non-settling defendants' contractual indemnity claims from the scope of the order).

IV.   THE SETTLEMENT CANNOT BAR PERRY'S INDEPENDENT CLAIMS

17.   The Bar Order appears to also prohibit Perry's independent claims – contractual or otherwise – against InEx and Aurora for losses (including those losses incurred by Perry to inspect and/or remediate and repair any homes), costs or expenses incurred relating to Aurora's use of reactive Chinese drywall from InEx. Federal courts clearly hold that independent claims for damages – as opposed to equitable claims for contribution or indemnification based on liability to the settling plaintiffs – are not extinguished by a bar order. *See, e.g., TBG, Inc. v. Bendis*, 36 F.3d 916, 928-29 (10 Cir. 1994) (finding that district court abused its discretion by approving a proposed bar order that included non-settling defendant's independent claims against settling defendant). Again, InEx and the PSC's proposed Bar Order seemingly invades Perry's rights. The proposed Bar Order is so broadly worded that it allegedly encompasses Perry's independent claims. The Court must therefore reject InEx and the PSC's proposed language.

18.   More importantly, barring independent claims to recover out-of-pocket losses associated with a good faith offer to remediate and repair a home – and at the same time barring claims for contribution or indemnity – would deter a homebuilder from making such offers, since the homebuilder would incur the full financial burden without any right to compensation – in

8

whole or in part – from the responsible parties.  This cannot be the ultimate outcome that the Court desires.

## V.   THE SETTLEMENT CONTAINS AN IMPERMISSIBLE NON-MUTUAL BAR ORDER

19.    In addition to the Bar Order's over breadth, Perry objects to the Settlement because it does not contain a mutual bar order relating to the Settling Defendants' claims for contribution, indemnification, subrogation, or otherwise from non-settling parties.  Section 3.2 of the Settlement **expressly reserves** to the Settling Defendants such claims against third parties.[4] The Settling Defendants – particularly, InEx and its primary carriers – seek protection in the event they overpaid for their settlement.  This is wholly inequitable under the circumstances. Permitting such non-mutual bar orders invites a co-defendant to settle quickly to the unfair disadvantage of the non-settling defendants.  Federal courts reject non-mutual bar orders for this very reason.  *See Gerber v. MTC Electronic Technologies Co., Ltd.*, 329 F.3d 297, 307-10 (2d Cir. 2003) (rejecting non-mutual bar order where the settling defendants remained free to assert contribution and indemnity claims against the non-settling defendants).  This Court should likewise reject the Settling Defendants' requested non-mutual bar language.

20.    The inequity in the non-mutual bar order is highlighted by the following hypothetical: if a homeowner Class Member opts-out of the Settlement, and also names a homebuilder as a defendant, the homebuilder would be barred from asserting **any cross-claim** against InEx or the Settling Defendants, but InEx and the Settling Defendants would be free to assert cross-claims against the homebuilder for contribution and indemnification.  The Settlement not only fails to protect homebuilders, it exposes them to the possibility of bearing

---

[4]    "The Settlement will not settle or release any claims by way of subrogation, contribution or indemnification that the Settling Defendants may have against third parties arising out of, in any manner related to, or connected in any way with Chinese Drywall."

587054.2

InEx and the downstream parties' responsibility for the homeowner's claims.  This Court cannot, therefore, endorse the Settlement.

VI.   PERRY AND OTHER HOMEBUILDERS ARE NOT ADEQUATELY REPRESENTED IN THE SETTLEMENT BY THE PSC

21.    A review of the Settlement in its entirety unmistakably reflects that Perry and other homebuilders are not adequately represented by the PSC, the proposed Class Counsel, or the Class Representatives.  More pointedly, the PSC and the proposed Class Counsel have a conflict of interest in their representation of all proposed Settlement Class members.  This alone requires rejection of the Settlement.

22.    The Settlement Class is defined as "all persons or entities with claims, known and unknown, against the Settling Defendants arising from, or otherwise related in any way to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx."  InEx Settlement Agreement, p. 2, § 1.1.3.  Clearly, this class definition includes both homeowners and homebuilders that have claims relating to Chinese Drywall sold, marketed, distributed or supplied by InEx.

23.    Despite the fact that homebuilders are included in the defined class, the Settlement expressly reserves to Class Members their claims against "Non-Settling Defendants." This term is defined as "the Excess Carrier and any other defendants who are not specifically designated as Settling Defendants."  Since homebuilders are expressly excluded from the definition of Settling Defendants, the Settlement expressly reserves homeowner Class Members' claims against homebuilders, who are also Class Members.[5]

---

[5]    The Settlement Class Members' reservation of their claims against homebuilders is further established by Section 3.3.5.  ("That the Settlement Class reserves the right to have any claims against Builders be subject to dismissal upon condition that the Builder agrees to assign its entitlement to insurance to allow the Class to pursue, either through direct action or by assignment, such Builder's claims against that Builder's insurers[.]").

587054.2

24.     The dichotomy of homebuilders as "Class Members" and "Non-Setting Defendants" creates inherent conflict in the Settlement.  On the one hand, Builders' claims against InEx and the PSC, including contribution and indemnity, may be preserved by opting out of the Settlement Class.  However, the Settlement's Bar Order on all claims forces homebuilders to have to opt into the Settlement so they obtain <u>some</u> meager recovery.  Thus, homebuilders really do not have the "option" to exclude themselves from the Settlement.  This fact, in and of itself, is inherently unfair, and requires the Court to reject the Settlement.

25.     How the PSC can serve as Class Counsel for potential Class Members that are opposing parties in litigation is incomprehensible, and may violate some jurisdictions' rules of professional conduct.[6]   Likewise, the proposed Class Representatives do not adequately represent the interests of homebuilder Class Members.  In fact, homeowner and homebuilder Class Members have antagonistic interests not only with respect to their claims against InEx, but also as to the limited funds available from InEx.  Indeed, homebuilders like Perry have expended substantial sums of money.  There is no indication if, or how, such costs will be allocated under the Settlement.

---

[6]     *See, e.g.,* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06(a) ("A lawyer shall not represent opposing parties to the same litigation").

587054.2

**VII.**   THE SETTLEMENT DELETERIOUSLY INCREASES PERRY'S LIABILITY EXPOSURE

26.   If the Settlement truly releases downstream parties, such as Aurora, without any consideration, the Settlement has another unexpected impact on Perry's liability exposure under Texas' proportionate responsibility statutes.  In determining a claimant's recovery, the trial court is required to apply a dollar-for-dollar credit against the claimant's recovery for any settlements. TEX.CIV.PRAC. & REM. CODE § 33.012(b).   Here, the Downstream InEx Releasees are not providing any consideration for their release.  The Downstream InEx Releasees are not providing monetary compensation to Class Members, are not providing non-monetary assets, and are not contributing to the Settlement amounts paid by InEx and its primary carriers.  Perry thus faces the prospect of a judgment against it for which it receives no settlement credit – and is burdened with Aurora's liability assessed by the trier of fact.  This oppresses Perry's right to ensure any claimant's recovery is limited to the "one satisfaction" rule.  Homeowners cannot profit off of their intentional release of such claims without compensation.

CONCLUSION

While Perry commends InEx and the PSC for their attempts to reach a comprehensive resolution, the Settlement is woefully inadequate and unfair to Perry's and other homebuilders' interests.  The Court should reject the Settlement, deny InEx and the PSC's Joint Motion to preliminarily approve the same, and for any further relief, at law or in equity, the Court deems necessary.

12

587054.2

Dated: May 3, 2011.

Respectfully Submitted,

LOOPER REED & McGRAW, P.C.

By:/s/ Andrew K. York[7]
        ANDREW K. YORK
        Texas State Bar No. 24051554

1601 Elm Street, Suite 4600
Dallas, Texas  75201
Telephone:  214.954.4135
Facsimile:  214.953.1332
Email:  dyork@lrmlaw.com

ATTORNEYS FOR NON-PARTY
PERRY HOMES, LLC

## CERTIFICATE OF SERVICE

I certify that on May 3, 2011, I electronically filed the foregoing instrument with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the parties of record.

/s/ Andrew K. York
ANDREW K. YORK

---

[7]      Pursuant to Pre-Trial Order No. 1, Mr. York is admitted and in good standing in the Eastern, Northern, and Southern Districts of Texas.

13

587054.2