*EXHIBIT D*

# AIA® Document A201™ – 1997

## *General Conditions of the Contract for Construction*

for the following PROJECT;
*(Name and location or address):*
BLANK DRAFT

THE OWNER:
*(Name and address):*

THE ARCHITECT:
*(Name and address):*

**TABLE OF ARTICLES**

1    GENERAL PROVISIONS

2    OWNER

3    CONTRACTOR

4    ADMINISTRATION OF THE CONTRACT

5    SUBCONTRACTORS

6    CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7    CHANGES IN THE WORK

8    TIME

9    PAYMENTS AND COMPLETION

10   PROTECTION OF PERSONS AND PROPERTY

11   INSURANCE AND BONDS

12   UNCOVERING AND CORRECTION OF WORK

13   MISCELLANEOUS PROVISIONS

14   TERMINATION OR SUSPENSION OF THE CONTRACT

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document has been approved and endorsed by The Associated General Contractors of America

**ELECTRONIC COPYING** of any portion of this AIA® Document to another electronic file is prohibited and constitutes a violation of copyright laws as set forth in the footer of this document.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 08/15/2004 under Order No.1000120770_1 which expires on 1/27/2005, and is not for resale.

INDEX
(Numbers and Topics in Bold are Section Headings)

**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, **12.3**
**Acceptance of Work**
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
**Access to Work**
**3.16, 6.2.1, 12.1**
**Accident Prevention**
**4.2.3, 10**
**Acts and Omissions**
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 4.3.8, 4.4.1, 8.3.1,
9.5.1, 10.2.5, 13.4.2, 13.7, 14.1
**Addenda**
1.1.1, 3.11
**Additional Costs, Claims for**
4.3.4, 4.3.5, 4.3.6, 6.1.1, 10.3
**Additional Inspections and Testing**
9.8.3, 12.2.1, 13.5
**Additional Time, Claims for**
4.3.4, 4.3.7, 8.3.2
**ADMINISTRATION OF THE CONTRACT**
3.1.3, 4, 9.4, 9.5
**Advertisement or Invitation to Bid**
1.1.1
**Aesthetic Effect**
4.2.13, 4.5.1
**Allowances**
**3.8**
**All-risk Insurance**
11.4.1.1
**Applications for Payment**
4.2.5, 7.3.8, 9.2, 9.3, 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5,
9.10, 11.1.3, 14.2.4, 14.4.3
**Approvals**
2.4, 3.1.3, 3.5, 3.10.2, 3.12, 4.2.7, 9.3.2, 13.4.2, 13.5
**Arbitration**
4.3.3, 4.4, 4.5.1, 4.5.2, 4.6, 8.3.1, 9.7.1, 11.4.9,
11.4.10
**Architect**
**4.1**
**Architect, Definition of**
**4.1.1**
**Architect, Extent of Authority**
2.4, 3.12.7, 4.2, 4.3.6, 4.4, 5.2, 6.3, 7.1.2, 7.3.6, 7.4,
9.2, 9.3.1, 9.4, 9.5, 9.8.3, 9.10.1,  9.10.3, 12.1, 12.2.1,
13.5.1, 13.5.2, 14.2.2, 14.2.4
**Architect, Limitations of Authority and
Responsibility**
2.1.1, 3.3.3, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1,
4.2.2, 4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 4.4,
5.2.1, 7.4, 9.4.2, 9.6.4, 9.6.6
**Architect's Additional Services and Expenses**
2.4, 11.4.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4
**Architect's Administration of the Contract**

3.1.3, 4.2, 4.3.4, 4.4, 9.4, 9.5
**Architect's Approvals**
2.4, 3.1.3, 3.5.1, 3.10.2, 4.2.7
**Architect's Authority to Reject Work**
3.5.1, 4.2.6, 12.1.2, 12.2.1
**Architect's Copyright**
1.6
**Architect's Decisions**
4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1, 4.4.5,
4.4.6, 4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2, 9.4,
9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4
**Architect's Inspections**
4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
**Architect's Instructions**
3.2.3, 3.3.1, 4.2.6, 4.2.7, 4.2.8, 7.4.1, 12.1, 13.5.2
**Architect's Interpretations**
4.2.11, 4.2.12, 4.3.6
**Architect's Project Representative**
4.2.10
**Architect's Relationship with Contractor**
1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2, 3.5.1,
3.7.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2,
4.3.4, 4.4.1, 4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4,
9.5, 9.7, 9.8, 9.9,  10.2.6, 10.3, 11.3, 11.4.7, 12,
13.4.2, 13.5
**Architect's Relationship with Subcontractors**
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.4.7
**Architect's Representations**
9.4.2, 9.5.1, 9.10.1
**Architect's Site Visits**
4.2.2, 4.2.5, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2, 9.10.1,
13.5
**Asbestos**
10.3.1
**Attorneys' Fees**
3.18.1, 9.10.2, 10.3.3
**Award of Separate Contracts**
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for
Portions of the Work**
**5.2**
**Basic Definitions**
**1.1**
**Bidding Requirements**
1.1.1, 1.1.7, 5.2.1, 11.5.1
**Boiler and Machinery Insurance**
11.4.2
**Bonds, Lien**
9.10.2
**Bonds, Performance, and Payment**
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
**Building Permit**
3.7.1
**Capitalization**
**1.3**
Certificate of Substantial Completion

AIA Document A201™ –1997.  Copyright  © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by
The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and
International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe
civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA
software at 09:41:43 on 06/15/2004 under Order Number.1000120770 1 which expires on 5/27/2005, and is not for resale.

2



9.8.3, 9.8.4, 9.8.5
Certificates for Payment
4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1,
9.10.3, 13.7, 14.1.1.3, 14.2.4
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
Change Orders
1.1.1, 2.4.1, 3.4.2, 3.8.2.3, 3.11.1, 3.12.8, 4.2.8, 4.3.4,
4.3.9, 5.2.3, 7.1, 7.2, 7.3, 8.3.1, 9.3.1.1, 9.10.3,
11.4.1.2, 11.4.4, 11.4.9, 12.1.2
Change Orders, Definition of
7.2.1
CHANGES IN THE WORK
3.11, 4.2.8, 7, 8.3.1, 9.3.1.1, 11.4.9
Claim, Definition of
4.3.1
Claims and Disputes
3.2.3, 4.3, 4.4, 4.5, 4.6, 6.1.1, 6.3, 7.3.8, 9.3.3, 9.10.4,
10.3.3
Claims and Timely Assertion of Claims
4.6.5
Claims for Additional Cost
3.2.3, 4.3.4, 4.3.5, 4.3.6, 6.1.1, 7.3.8, 10.3.2
Claims for Additional Time
3.2.3, 4.3.4, 4.3.7, 6.1.1, 8.3.2, 10.3.2
Claims for Concealed or Unknown Conditions
4.3.4
Claims for Damages
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3,
11.1.1, 11.4.5, 11.4.7, 14.1.3, 14.2.4
Claims Subject to Arbitration
4.4.1, 4.5.1, 4.6.1
Cleaning Up
3.15, 6.3
Commencement of Statutory Limitation Period
13.7
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.1, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 4.3.5, 5.2.1,
5.2.3, 6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.4.1, 11.4.6,
11.5.1
Commencement of the Work, Definition of
8.1.2
Communications Facilitating Contract
Administration
3.9.1, 4.2.4
Completion, Conditions Relating to
1.6.1, 3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8,
9.9.1, 9.10, 12.2, 13.7, 14.1.2
COMPLETION, PAYMENTS AND
9
Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3,
9.10.4.2, 12.2, 13.7
Compliance with Laws

1.6.1, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6.4,
4.6.6, 9.6.4, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1,
13.5.2, 13.6, 14.1.1, 14.2.1.3
Concealed or Unknown Conditions
4.3.4, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 1.1.7, 6.1.1, 6.1.4
Consent, Written
1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2,
9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2
CONSTRUCTION BY OWNER OR BY
SEPARATE CONTRACTORS
1.1.4, 6
Construction Change Directive, Definition of
7.3.1
Construction Change Directives
1.1.1, 3.12.8, 4.2.8, 4.3.9, 7.1, 7.3, 9.3.1.1
Construction Schedules, Contractor's
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
Contingent Assignment of Subcontracts
5.4, 14.2.2.2
Continuing Contract Performance
4.3.3
Contract, Definition of
1.1.2
CONTRACT, TERMINATION OR
SUSPENSION OF THE
5.4.1.1, 11.4.9, 14
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating
to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.4.6, 11.5.1
Contract Documents, The
1.1, 1.2
Contract Documents, Copies Furnished and Use of
1.6, 2.2.5, 5.3
Contract Documents, Definition of
1.1.1
Contract Sum
3.8, 4.3.4, 4.3.5, 4.4.5, 5.2.3, 7.2, 7.3, 7.4, 9.1, 9.4.2,
9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.4.1, 14.2.4, 14.3.2
Contract Sum, Definition of
9.1
Contract Time
4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1.3, 7.3, 7.4, 8.1.1, 8.2,
8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2
Contract Time, Definition of
8.1.1
CONTRACTOR
3
Contractor, Definition of
3.1, 6.1.2
Contractor's Construction Schedules
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
Contractor's Employees

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by
The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and
International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe
civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA
software at 09:41:41 on 06/15/2004 under Order No.1000120710 1 which expires on 5/27/2005, and is not for resale.

3

3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,
11.1.1, 11.4.7, 14.1, 14.2.1.1,
**Contractor's Liability Insurance**
**11.1**
Contractor's Relationship with Separate Contractors
and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.4.7, 12.1.2, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2,
11.4.1.2, 11.4.7, 11.4.8
Contractor's Relationship with the Architect
1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2, 3.5.1,
3.7.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2,
4.3.4, 4.4.1, 4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4,
9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3, 11.4.7, 12,
13.4.2, 13.5
Contractor's Representations
1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those Performing the
Work
3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1,
10
Contractor's Review of Contract Documents
1.5.2, 3.2, 3.7.3
Contractor's Right to Stop the Work
9.7
Contractor's Right to Terminate the Contract
4.3.10, 14.1
Contractor's Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2, 9.3,
9.8.2, 9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.5.2
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction
Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 4.3.3, 6.1.3,
6.2.4, 7.1.3, 7.3.4, 7.3.6, 8.2, 10, 12, 14
Contractual Liability Insurance
11.1.1.8, 11.2, 11.3
Coordination and Correlation
1.2, 1.5.2, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
1.6, 2.2.5, 3.11
Copyrights
1.6, 3.17
Correction of Work
2.3, 2.4, 3.7.4, 4.2.1, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2,
12.2, 13.7.1.3
**Correlation and Intent of the Contract Documents**
**1.2**
Cost, Definition of
7.3.6
Costs
2.4, 3.2.3, 3.7.4, 3.8.2, 3.15.2, 4.3, 5.4.2, 6.1.1, 6.2.3,
7.3.3.3, 7.3.6, 7.3.7, 7.3.8, 9.10.2, 10.3.2, 10.5, 11.3,
11.4, 12.1, 12.2.1, 12.2.4, 13.5, 14
**Cutting and Patching**

6.2.5, 3.14
Damage to Construction of Owner or Separate
Contractors
3.14.2, 6.2.4, 9.2.1.5, 10.2.1.2, 10.2.5, 10.6, 11.1,
11.4, 12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.6, 11.4, 12.2.4
Damages, Claims for
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3,
11.1.1, 11.4.5, 11.4.7, 14.1.3, 14.2.4
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
Date of Commencement of the Work, Definition of
8.1.2
Date of Substantial Completion, Definition of
8.1.3
Day, Definition of
8.1.4
Decisions of the Architect
4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1, 4.4.5,
4.4.6, 4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2, 9.4,
9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4
Decisions to Withhold Certification
9.4.1, 9.5, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance,
Rejection and Correction of
2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2,
9.9.3, 9.10.4, 12.2.1, 13.7.1.3
Defective Work, Definition of
3.5.1
Definitions
1.1, 2.1.1, 3.1, 3.5.1, 3.12.1, 3.12.2, 3.12.3, 4.1.1,
4.3.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 7.3.6, 8.1, 9.1, 9.8.1
Delays and Extensions of Time
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1,
7.4.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Disputes
4.1.4, 4.3, 4.4, 4.5, 4.6, 6.3, 7.3.8
Documents and Samples at the Site
3.11
Drawings, Definition of
1.1.5
Drawings and Specifications, Use and Ownership of
1.1.1, 1.3, 2.2.5, 3.11, 5.3
Effective Date of Insurance
8.2.2, 11.1.2
Emergencies
4.3.5, 10.6, 14.1.1.2
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,
11.1.1, 11.4.7, 14.1, 14.2.1.1
Equipment, Labor, Materials and
1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Execution and Progress of the Work

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 08/15/2004 under Order No.1000120778_1 which expires on 3/27/2008, and is not for resale.

4

1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3, 3.4, 3.5, 3.7,
3.10, 3.12, 3.14, 4.2.2, 4.2.3, 4.3.3, 6.2.2, 7.1.3, 7.3.4,
8.2, 9.5, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3
Extensions of Time
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3, 7.4.1,
9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Failure of Payment
4.3.6, 9.5.1.3, 9.7, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6
Faulty Work
(See Defective or Nonconforming Work)
Final Completion and Final Payment
4.2.1, 4.2.9, 4.3.2, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1,
11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.5
Fire and Extended Coverage Insurance
11.4
GENERAL PROVISIONS
1
Governing Law
13.1
Guarantees (See Warranty)
Hazardous Materials
10.2.4, 10.3, 10.5
Identification of Contract Documents
1.5.1
Identification of Subcontractors and Suppliers
5.2.1
Indemnification
3.17, 3.18, 9.10.2, 10.3.3, 10.5, 11.4.1.2, 11.4.7
Information and Services Required of the Owner
2.1.2, 2.2, 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3,
6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3,
11.2, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4
Injury or Damage to Person or Property
4.3.8, 10.2, 10.6
Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.2,
9.8.3, 9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.3, 3.3.1, 3.8.1, 4.2.8, 5.2.1, 7, 12, 8.2.2, 13.5.2
Insurance
3.18.1, 6.1.1, 7.3.6, 8.2.1, 9.3.2, 9.8.4, 9.9.1, 9.10.2,
9.10.5, 11
Insurance, Boiler and Machinery
11.4.2
Insurance, Contractor's Liability
11.1
Insurance, Effective Date of
8.2.2, 11.1.2
Insurance, Loss of Use
11.4.3
Insurance, Owner's Liability
11.2

Insurance, Project Management Protective
Liability
11.3
Insurance, Property
10.2.5, 11.4
Insurance, Stored Materials
9.3.2, 11.4.1.4
INSURANCE AND BONDS
11
Insurance Companies, Consent to Partial Occupancy
9.9.1, 11.4.1.5
Insurance Companies, Settlement with
11.4.10
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
Interest
13.6
Interpretation
1.2.3, 1.4, 4.1.1, 4.3.1, 5.1, 6.1.2, 8.1.4
Interpretations, Written
4.2.11, 4.2.12, 4.3.6
Joinder and Consolidation of Claims Required
4.6.4
Judgment on Final Award
4.6.6
Labor and Materials, Equipment
1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
42.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6,
9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1,
13.5.2, 13.6, 14
Liens
2.1.2, 4.4.8, 8.2.2, 9.3.3, 9.10
Limitation on Consolidation or Joinder
4.6.4
Limitations, Statutes of
4.6.3, 12.2.6, 13.7
Limitations of Liability
2.3, 3.2.1, 3.5.1, 3.7.3, 3.12.8, 3.12.10, 3.17, 3.18,
4.2.6, 4.2.7, 4.2.12, 6.2.2, 9.4.2, 9.6.4,  9.6.7, 9.10.4,
10.3.3, 10.2.5, 11.1.2, 11.2.1, 11.4.7, 12.2.5, 13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1,
4.2.7, 4.3, 4.4, 4.5, 4.6, 5.2, 5.3,  5.4, 6.2.4, 7.3, 7.4,
8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9,
9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5,
13.7, 14
Loss of Use Insurance
11.4.3
Material Suppliers
1.6, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
Materials, Hazardous
10.2.4, 10.3, 10.5

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by
The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and
International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe
civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA
software at 08:41:41 on 06/15/2004 under Order No.1000120770 1 which expires on 3/23/2005, and is not for resale.

Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.6.1, 3.4, 3.5.1, 3.8.2, 3.8.23, 3.12, 3.13,
3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Means, Methods, Techniques, Sequences and
Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
4.4.8
Mediation
4.4.1, 4.4.5, 4.4.6, 4.4.8, 4.5, 4.6.1, 4.6.2, 8.3.1, 10.5
Minor Changes in the Work
1.1.1, 3.12.8, 4.2.8, 4.3.6, 7.1, 7.4
MISCELLANEOUS PROVISIONS
13
Modifications, Definition of
1.1.1
Modifications to the Contract
1.1.1, 1.1.2, 3.7.3, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1,
9.7, 10.3.2, 11.4.1
Mutual Responsibility
6.2
Nonconforming Work, Acceptance of
9.6.6, 9.9.3, 12.3
Nonconforming Work, Rejection and Correction of
2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.8.2, 9.9.3, 9.10.4,
12.2.1, 13.7.1.3
Notice
2.2.1, 2.3, 2.4, 3.2.3, 3.3.1, 3.7.2, 3.7.4, 3.12.9, 4.3,
4.4.8, 4.6.5, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 11.1.3,
11.4.6, 12.2.2, 12.2.4, 13.3, 13.5.1, 13.5.2, 14.1, 14.2
Notice, Written
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8, 4.6.5,
5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 11.4.6,
12.2.2, 12.2.4, 13.3, 14
Notice of Testing and Inspections
13.5.1, 13.5.2
Notice to Proceed
8.2.2
Notices, Permits, Fees and
2.2.2, 3.7, 3.13, 7.3.6.4, 10.2.2
Observations, Contractor's
1.5.2, 3.2, 3.7.3, 4.3.4
Occupancy
2.2.2, 9.6.6, 9.8, 11.4.1.5
Orders, Written
1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2,
13.5.2, 14.3.1
OWNER
2
Owner, Definition of
2.1
Owner, Information and Services Required of the
2.1.2, 2.2, 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3,
6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3,
11.2, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4
Owner's Authority

1.6, 2.1.1, 2.3, 2.4, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2,
4.1.3, 4.2.4, 4.2.9, 4.3.6, 4.4.7, 5.2.1, 5.2.4, 5.4.1,
6.1, 6.3, 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1,
9.9.1, 9.10.2, 10.3.2, 11.1.3, 11.3.1, 11.4.3, 11.4.10,
12.2.2, 12.3.1, 13.2.2, 14.3, 14.4
Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.5
Owner's Liability Insurance
11.2
Owner's Loss of Use Insurance
11.4.3
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
Owner's Right to Carry Out the Work
2.4, 12.2.4, 14.2.2.2
Owner's Right to Clean Up
6.3
Owner's Right to Perform Construction and to
Award Separate Contracts
6.1
Owner's Right to Stop the Work
2.3
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2
Ownership and Use of Drawings, Specifications
and Other Instruments of Service
1.1.1, 1.6, 2.2.5, 3.2.1, 3.11.1, 3.17.1, 4.2.12, 5.3
Partial Occupancy or Use
9.6.6, 9.9, 11.4.1.5
Patching, Cutting and
3.14, 6.2.5
Patents
3.17
Payment, Applications for
4.2.5, 7.3.8, 9.2, 9.3, 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5,
9.10.1, 9.10.3, 9.10.5, 11.1.3, 14.2.4, 14.4.3
Payment, Certificates for
4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1,
9.10.3, 13.7, 14.1.1.3, 14.2.4
Payment, Failure of
4.3.6, 9.5.1.3, 9.7, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6
Payment, Final
4.2.1, 4.2.9, 4.3.2, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1,
11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3
Payment Bond, Performance Bond and
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
Payments, Progress
4.3.3, 9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3
PAYMENTS AND COMPLETION
9
Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 11.4.8,
14.2.1.2
PCB
10.3.1

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by
The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and
International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe
civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA
software at 09:41:41 on 06/15/2008 under Order No.1000120770_1 which expires on 3/27/2008, and is not for resale.

6

Performance Bond and Payment Bond
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
Permits, Fees and Notices
2.2.2, 3.7, 3.13, 7.3.6.4, 10.2.2
PERSONS AND PROPERTY, PROTECTION
OF
10

Polychlorinated Biphenyl
10.3.1
Product Data, Definition of
3.12.2
Product Data and Samples, Shop Drawings
3.11, 3.12, 4.2.7
Progress and Completion
4.2.2, 4.3.3, 8.2, 9.8, 9.9.1, 14.1.4
Progress Payments
4.3.3, 9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3
Project, Definition of the
1.1.4
Project Management Protective Liability
Insurance
11.3
Project Manual, Definition of the
1.1.7
Project Manuals
2.2.5
Project Representatives
4.2.10
Property Insurance
10.2.5, 11.4
PROTECTION OF PERSONS AND PROPERTY
10
Regulations and Laws
1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6,
9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1,
13.5.2, 13.6, 14
Rejection of Work
3.5.1, 4.2.6, 12.2.1
Releases and Waivers of Liens
9.10.2
Representations
1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1,
9.8.2, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.10, 5.1.1, 5.1.2,
13.2.1
Resolution of Claims and Disputes
4.4, 4.5, 4.6
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1,
10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
Review of Contract Documents and Field
Conditions by Contractor
1.5.2, 3.2, 3.7.3, 3.12.7, 6.1.3

Review of Contractor's Submittals by Owner and
Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and
Samples by Contractor
3.12
Rights and Remedies
1.1.2, 2.3, 2.4, 3.5.1, 3.15.2, 4.2.6, 4.3.4, 4.5, 4.6, 5.3,
5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3,
12.2.2, 12.2.4, 13.4, 14
Royalties, Patents and Copyrights
3.17
Rules and Notices for Arbitration
4.6.2
Safety of Persons and Property
10.2, 10.6
Safety Precautions and Programs
3.3.1, 4.2.2, 4.2.7, 5.3.1, 10.1, 10.2, 10.6
Samples, Definition of
3.12.3
Samples, Shop Drawings, Product Data and
3.11, 3.12, 4.2.7
Samples at the Site, Documents and
3.11
Schedule of Values
9.2, 9.3.1
Schedules,
1.4.1.2, 3.10, 3.Construction12.1, 3.12.2, 4.3.7.2,
6.1.3
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 4.6.4, 6, 8.3.1,
11.4.7, 12.1.2, 12.2.5
Shop Drawings, Definition of
3.12.1
Shop Drawings, Product Data and Samples
3.11, 3.12, 4.2.7
Site, Use of
3.13, 6.1.1, 6.2.1
Site Inspections
1.2.2, 3.2.1, 3.3.3, 3.7.1, 4.2, 4.3.4, 9.4.2, 9.10.1, 13.5
Site Visits, Architect's
4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
4.2.6, 12.2.1, 13.5
Specifications, Definition of the
1.1.6
Specifications, The
1.1.1, 1.1.6, 1.1.7, 1.2.2, 1.6, 3.11, 3.12.10, 3.17
Statute of Limitations
4.6.3, 12.2.6, 13.7
Stopping the Work
2.3, 4.3.6, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4, 11.4.1.4
Subcontractor, Definition of
5.1.1
SUBCONTRACTORS

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by
The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and
International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe
civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA
software at 09:01:43 on 06/15/2004 under Order No.1000120770 1 which expires on 5/27/2005, and is not for resale.

5

Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2,
9.6.7
**Subcontractual Relations**
**5.3, 5.4, 9.3.1.2, 9.6, 9.10 10.2.1, 11.4.7, 11.4.8, 14.1,
14.2.1, 14.3.2**
Submittals
1.6, 3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2,
9.3, 9.8, 9.9.1, 9.10.2, 9.10.3, 11.1.3
**Subrogation, Waivers of**
6.1.1, 11.4.5, 11.4.7
**Substantial Completion**
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3,
9.10.4.2, 12.2, 13.7
Substantial Completion, Definition of
9.8.1
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, 3.5.1, 7.3.7
Sub-subcontractor, Definition of
5.1.2
Subsurface Conditions
4.3.4
**Successors and Assigns**
13.2
Superintendent
3.9, 10.2.6
**Supervision and Construction Procedures**
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 4.3.3, 6.1.3,
6.2.4, 7.1.3, 7.3.6, 8.2, 8.3.1, 9.4.2, 10, 12, 14
Surety
4.4.7, 5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
**Suspension by the Owner for Convenience**
14.4
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract
4.3.6, 5.4.1.1, 11.4.9, 14
Taxes
3.6, 3.8.2.1, 7.3.6.4
**Termination by the Contractor**
4.3.10, 14.1
**Termination by the Owner for Cause**
4.3.10, 5.4.1.1, 14.2
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2

TERMINATION OR SUSPENSION OF THE
CONTRACT
14
Tests and Inspections
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2,
9.10.1, 10.3.2, 11.4.1.1, 12.2.1,13.5
TIME
8
Time, Delays and Extensions of
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1,
7.4.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Time Limits
2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1,
4.2, 4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4,
8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9,
9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5,
13.7, 14
Time Limits on Claims
4.3.2, 4.3.4, 4.3.8, 4.4, 4.5, 4.6
Title to Work
9.3.2, 9.3.3
UNCOVERING AND CORRECTION OF
WORK
12
Uncovering of Work
12.1
Unforeseen Conditions
4.3.4, 8.3.1, 10.3
Unit Prices
4.3.9, 7.3.3.2
Use of Documents
1.1.1, 1.6, 2.2.5, 3.12.6, 5.3
Use of Site
3.13, 6.1.1, 6.2.1
Values, Schedule of
9.2, 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
4.3.10, 9.10.5, 11.4.7, 13.4.2
Waiver of Claims by the Owner
4.3.10, 9.9.3, 9.10.3, 9.10.4, 11.4.3, 11.4.5, 11.4.7,
12.2.2.1, 13.4.2, 14.2.4
Waiver of Consequential Damages
4.3.10, 14.2.4
Waiver of Liens
9.10.2, 9.10.4
Waivers of Subrogation
6.1.1, 11.4.5, 11.4.7
Warranty
3.5, 4.2.9, 4.3.5.3, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2,
13.7.1.3
Weather Delays
4.3.7.2
Work, Definition of
1.1.3
Written Consent

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by
The American Institute of Architects. All rights reserved. WARNING: This AIA™ Document is protected by U.S. Copyright Law and
International Treaties. Unauthorized reproduction or distribution of this AIA™ Document, or any portion of it, may result in severe
civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA
software at 08:41:41 on 06/15/2004 under Order No.1000120770 1 which expires on 5/27/2005, and is not for resale.

8

1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2,
9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1,  13.2, 13.4.2
Written Interpretations
4.2.11, 4.2.12, 4.3.6
**Written Notice**

2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8, 4.6.5,
5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3,  11.1.3, 11.4.6,
12.2.2, 12.2.4, **13.3**, 14
Written Orders
1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2,
13.5.2, 14.3.1

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by
The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and
International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe
civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA
software at 09:41:41 on 06/15/2004 under Order No.1000120770_1 which expires on 5/27/2005, and is not for resale.

## ARTICLE 1  GENERAL PROVISIONS
### § 1.1 BASIC DEFINITIONS
### § 1.1.1 THE CONTRACT DOCUMENTS
The Contract Documents consist of the Agreement between Owner and Contractor (hereinafter the Agreement), Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include other documents such as bidding requirements (advertisement or invitation to bid, Instructions to Bidders, sample forms, the Contractor's bid or portions of Addenda relating to bidding requirements).

### § 1.1.2 THE CONTRACT
The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor, (3) between the Owner and Architect or (4) between any persons or entities other than the Owner and Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

### § 1.1.3 THE WORK
The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

### § 1.1.4 THE PROJECT
The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors.

### § 1.1.5 THE DRAWINGS
The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

### § 1.1.6 THE SPECIFICATIONS
The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

### § 1.1.7 THE PROJECT MANUAL
The Project Manual is a volume assembled for the Work which may include the bidding requirements, sample forms, Conditions of the Contract and Specifications.

### § 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS
§ 1.2.1 The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

§ 1.2.2 Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

§ 1.2.3 Unless otherwise stated in the Contract Documents, words which have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 08/19/2004 under Order No.1000120770_1 which expires on 5/27/2005, and is not for resale.



### § 1.3 CAPITALIZATION
§ 1.3.1 Terms capitalized in these General Conditions include those which are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

### § 1.4 INTERPRETATION
§ 1.4.1 In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

### § 1.5 EXECUTION OF CONTRACT DOCUMENTS
§ 1.5.1 The Contract Documents shall be signed by the Owner and Contractor. If either the Owner or Contractor or both do not sign all the Contract Documents, the Architect shall identify such unsigned Documents upon request.

§ 1.5.2 Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

### § 1.6 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE
§ 1.6.1 The Drawings, Specifications and other documents, including those in electronic form, prepared by the Architect and the Architect's consultants are Instruments of Service through which the Work to be executed by the Contractor is described. The Contractor may retain one record set. Neither the Contractor nor any Subcontractor, Sub-subcontractor or material or equipment supplier shall own or claim a copyright in the Drawings, Specifications and other documents prepared by the Architect or the Architect's consultants, and unless otherwise indicated the Architect and the Architect's consultants shall be deemed the authors of them and will retain all common law, statutory and other reserved rights, in addition to the copyrights. All copies of Instruments of Service, except the Contractor's record set, shall be returned or suitably accounted for to the Architect, on request, upon completion of the Work. The Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants, and copies thereof furnished to the Contractor, are for use solely with respect to this Project. They are not to be used by the Contractor or any Subcontractor, Sub-subcontractor or material or equipment supplier on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants. The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants appropriate to and for use in the execution of their Work under the Contract Documents. All copies made under this authorization shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' copyrights or other reserved rights.

## ARTICLE 2   OWNER
### § 2.1 GENERAL
§ 2.1.1 The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

§ 2.1.2 The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

### § 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER
§ 2.2.1 The Owner shall, at the written request of the Contractor, prior to commencement of the Work and thereafter, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 06/15/2004 under Order No.1000120738-1 which expires on 5/27/2005, and is not for resale.

continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

§ 2.2.2 Except for permits and fees, including those required under Section 3.7.1, which are the responsibility of the Contractor under the Contract Documents, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

§ 2.2.3 The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

§ 2.2.4 Information or services required of the Owner by the Contract Documents shall be furnished by the Owner with reasonable promptness. Any other information or services relevant to the Contractor's performance of the Work under the Owner's control shall be furnished by the Owner after receipt from the Contractor of a written request for such information or services.

§ 2.2.5 Unless otherwise provided in the Contract Documents, the Contractor will be furnished, free of charge, such copies of Drawings and Project Manuals as are reasonably necessary for execution of the Work.

## § 2.3 OWNER'S RIGHT TO STOP THE WORK

§ 2.3.1 If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or persistently fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 6.1.3.

## § 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK

§ 2.4.1 If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may after such seven-day period give the Contractor a second written notice to correct such deficiencies within a three-day period. If the Contractor within such three-day period after receipt of such second notice fails to commence and continue to correct any deficiencies, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

## ARTICLE 3  CONTRACTOR
### § 3.1 GENERAL
§ 3.1.1 The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Contractor" means the Contractor or the Contractor's authorized representative.

§ 3.1.2 The Contractor shall perform the Work in accordance with the Contract Documents.

§ 3.1.3 The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons other than the Contractor.

## § 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR
§ 3.2.1 Since the Contract Documents are complementary, before starting each portion of the Work, the Contractor shall carefully study and compare the various Drawings and other Contract Documents relative to that portion of the

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by the American Institute of Architects.  All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 05:41:41 on 06/15/2004 under Order No.1000120770_1 which expires on 5/27/2005, and is not for resale.

Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, any errors, inconsistencies or omissions discovered by the Contractor shall be reported promptly to the Architect as a request for information in such form as the Architect may require.

§ 3.2.2 Any design errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional unless otherwise specifically provided in the Contract Documents. The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations, but any nonconformity discovered by or made known to the Contractor shall be reported promptly to the Architect.

§ 3.2.3 If the Contractor believes that additional cost or time is involved because of clarifications or instructions issued by the Architect in response to the Contractor's notices or requests for information pursuant to Sections 3.2.1 and 3.2.2, the Contractor shall make Claims as provided in Sections 4.3.6 and 4.3.7. If the Contractor fails to perform the obligations of Sections 3.2.1 and 3.2.2, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. The Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents or for differences between field measurements or conditions and the Contract Documents unless the Contractor recognized such error, inconsistency, omission or difference and knowingly failed to report it to the Architect.

## § 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES

§ 3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any resulting loss or damage.

§ 3.3.2 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

§ 3.3.3 The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

## § 3.4 LABOR AND MATERIALS

§ 3.4.1 Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

§ 3.4.2 The Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order.

§ 3.4.3 The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.



AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 06/15/2004 under Order No.1000120730_1 which expires on 5/27/2005, and is not for resale.

13

## § 3.5 WARRANTY

§ 3.5.1 The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Contract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

## § 3.6 TAXES

§ 3.6.1 The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

## § 3.7 PERMITS, FEES AND NOTICES

§ 3.7.1 Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work which are customarily secured after execution of the Contract and which are legally required when bids are received or negotiations concluded.

§ 3.7.2 The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work.

§ 3.7.3 It is not the Contractor's responsibility to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations. However, if the Contractor observes that portions of the Contract Documents are at variance therewith, the Contractor shall promptly notify the Architect and Owner in writing, and necessary changes shall be accomplished by appropriate Modification.

§ 3.7.4 If the Contractor performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations without such notice to the Architect and Owner, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

## § 3.8 ALLOWANCES

§ 3.8.1 The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

§ 3.8.2 Unless otherwise provided in the Contract Documents:

.1 allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

.2 Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances;

.3 whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

§ 3.8.3 Materials and equipment under an allowance shall be selected by the Owner in sufficient time to avoid delay in the Work.

## § 3.9 SUPERINTENDENT

§ 3.9.1 The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor. Important

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 06/15/2004 under Order No.1000120770_1 which expires on 3/27/2005, and is not for resale.

14

communications shall be confirmed in writing. Other communications shall be similarly confirmed on written request in each case.

## § 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES

§ 3.10.1 The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

§ 3.10.2 The Contractor shall prepare and keep current, for the Architect's approval, a schedule of submittals which is coordinated with the Contractor's construction schedule and allows the Architect reasonable time to review submittals.

§ 3.10.3 The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

## § 3.11 DOCUMENTS AND SAMPLES AT THE SITE

§ 3.11.1 The Contractor shall maintain at the site for the Owner one record copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to record field changes and selections made during construction, and one record copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work.

## § 3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

§ 3.12.1 Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

§ 3.12.2 Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

§ 3.12.3 Samples are physical examples which illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

§ 3.12.4 Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. The purpose of their submittal is to demonstrate for those portions of the Work for which submittals are required by the Contract Documents the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals which are not required by the Contract Documents may be returned by the Architect without action.

§ 3.12.5 The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors. Submittals which are not marked as reviewed for compliance with the Contract Documents and approved by the Contractor may be returned by the Architect without action.

§ 3.12.6 By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents that the Contractor has determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

§ 3.12.7 The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 06/16/2004 under Order No.1006220770 1 which expires on 3/27/2005, and is not for resale.

§ 3.12.8 The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

§ 3.12.9 The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice the Architect's approval of a resubmission shall not apply to such revisions.

§ 3.12.10 The Contractor shall not be required to provide professional services which constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance or design criteria required by the Contract Documents.

### § 3.13 USE OF SITE
§ 3.13.1 The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

### § 3.14 CUTTING AND PATCHING
§ 3.14.1 The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

§ 3.14.2 The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

### § 3.15 CLEANING UP
§ 3.15.1 The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials.

§ 3.15.2 If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the cost thereof shall be charged to the Contractor.

AIA Document A201™ — 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 06/15/2004 under Order No.1000120770 1 which expires on 5/27/2005, and is not for resale.

**§ 3.16 ACCESS TO WORK**
§ 3.16.1 The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

**§ 3.17 ROYALTIES, PATENTS AND COPYRIGHTS**
§ 3.17.1 The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

**§ 3.18 INDEMNIFICATION**
§ 3.18.1 To the fullest extent permitted by law and to the extent claims, damages, losses or expenses are not covered by Project Management Protective Liability Insurance purchased by the Contractor in accordance with Section 11.3, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 3.18.

§ 3.18.2 In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

**ARTICLE 4   ADMINISTRATION OF THE CONTRACT**
**§ 4.1 ARCHITECT**
§ 4.1.1 The Architect is the person lawfully licensed to practice architecture or an entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Architect" means the Architect or the Architect's authorized representative.

§ 4.1.2 Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

§ 4.1.3 If the employment of the Architect is terminated, the Owner shall employ a new Architect against whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the former Architect.

**§ 4.2 ARCHITECT'S ADMINISTRATION OF THE CONTRACT**
§ 4.2.1 The Architect will provide administration of the Contract as described in the Contract Documents, and will be an Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the one-year period for correction of Work described in Section 12.2. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents, unless otherwise modified in writing in accordance with other provisions of the Contract.

§ 4.2.2 The Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of the Contractor's operations (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by the American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:11 on 06/15/2004 under Order No.1000120770 1 which expires on 3/27/2005, and is not for resale.

17

deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.

§ 4.2.3 The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

§ 4.2.4 Communications Facilitating Contract Administration. Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

§ 4.2.5 Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

§ 4.2.6 The Architect will have authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

§ 4.2.7 The Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ 4.2.8 The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Section 7.4.

§ 4.2.9 The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, will receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor, and will issue a final Certificate for Payment upon compliance with the requirements of the Contract Documents.

§ 4.2.10 If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 15:41:43 on 06/15/2004 under Order No.1000128710 1 which expires on 3/27/2005, and is not for resale.

§ 4.2.11 The Architect will interpret and decide matters concerning performance under and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Section 4.2, then delay shall not be recognized on account of failure by the Architect to furnish such interpretations until 15 days after written request is made for them.

§ 4.2.12 Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.

§ 4.2.13 The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

§ 4.3 CLAIMS AND DISPUTES
§ 4.3.1 Definition. A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

§ 4.3.2 Time Limits on Claims. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.

§ 4.3.3 Continuing Contract Performance. Pending final resolution of a Claim except as otherwise agreed in writing or as provided in Section 9.7.1 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

§ 4.3.4 Claims for Concealed or Unknown Conditions. If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall so notify the Owner and Contractor in writing, stating the reasons. Claims by either party in opposition to such determination must be made within 21 days after the Architect has given notice of the decision. If the conditions encountered are materially different, the Contract Sum and Contract Time shall be equitably adjusted, but if the Owner and Contractor cannot agree on an adjustment in the Contract Sum or Contract Time, the adjustment shall be referred to the Architect for initial determination, subject to further proceedings pursuant to Section 4.4.

§ 4.3.5 Claims for Additional Cost. If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.6.

§ 4.3.6 If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with this Section 4.3.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 05:41:41 on 04/18/2004 under Order No.1000129770_1 which expires on 5/27/2005, and is not for resale.

**§ 4.3.7 Claims for Additional Time**
**§ 4.3.7.1** If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay only one Claim is necessary.

**§ 4.3.7.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

**§ 4.3.8 Injury or Damage to Person or Property.** If either party to the Contract suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

**§ 4.3.9** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

**§ 4.3.10 Claims for Consequential Damages.** The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes:

 .1 damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

 .2 damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 4.3.10 shall be deemed to preclude an award of liquidated direct damages, when applicable, in accordance with the requirements of the Contract Documents.

**§ 4.4 RESOLUTION OF CLAIMS AND DISPUTES**
**§ 4.4.1 Decision of Architect.** Claims, including those alleging an error or omission by the Architect but excluding those arising under Sections 10.3 through 10.5, shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect. The Architect will not decide disputes between the Contractor and persons or entities other than the Owner.

**§ 4.4.2** The Architect will review Claims and within ten days of the receipt of the Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Architect is unable to resolve the Claim if the Architect lacks sufficient information to evaluate the merits of the Claim or if the Architect concludes that, in the Architect's sole discretion, it would be inappropriate for the Architect to resolve the Claim.

**§ 4.4.3** In evaluating Claims, the Architect may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Architect in rendering a decision. The Architect may request the Owner to authorize retention of such persons at the Owner's expense.

**§ 4.4.4** If the Architect requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either provide a response on the requested supporting data, advise the Architect when the response or supporting data will be furnished or advise the Architect that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Architect will either reject or approve the Claim in whole or in part.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 06/15/2004 under Order No.1000120970 3 which expires on 5/27/2005, and is not for resale.

§ **4.4.5** The Architect will approve or reject Claims by written decision, which shall state the reasons therefor and which shall notify the parties of any change in the Contract Sum or Contract Time or both. The approval or rejection of a Claim by the Architect shall be final and binding on the parties but subject to mediation and arbitration.

§ **4.4.6** When a written decision of the Architect states that (1) the decision is final but subject to mediation and arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days' period shall result in the Architect's decision becoming final and binding upon the Owner and Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence, but shall not supersede arbitration proceedings unless the decision is acceptable to all parties concerned.

§ **4.4.7** Upon receipt of a Claim against the Contractor or at any time thereafter, the Architect or the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Architect or the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

§ **4.4.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the Claim by the Architect, by mediation or by arbitration.

§ **4.5 MEDIATION**
§ **4.5.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

§ **4.5.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

§ **4.5.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

§ **4.6 ARBITRATION**
§ **4.6.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.

§ **4.6.2** Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.

§ **4.6.3** A demand for arbitration shall be made within the time limits specified in Sections 4.4.6 and 4.6.1 as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Section 13.7.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 05:41:41 on 06/15/2004 under Order No.1000120775 1 which expires on 5/27/2005, and is not for resale.

§ 4.5.4 Limitation on Consolidation or Joinder. No arbitration arising out of or relating to the Contract shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

§ 4.5.5 Claims and Timely Assertion of Claims. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

§ 4.6.6 Judgment on Final Award. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 5  SUBCONTRACTORS
### § 5.1 DEFINITIONS
§ 5.1.1 A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

§ 5.1.2 A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

### § 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK
§ 5.2.1 Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect will promptly reply to the Contractor in writing stating whether or not the Owner or the Architect, after due investigation, has reasonable objection to any such proposed person or entity. Failure of the Owner or Architect to reply promptly shall constitute notice of no reasonable objection.

§ 5.2.2 The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

§ 5.2.3 If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

§ 5.2.4 The Contractor shall not change a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitute.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 06/15/2004 under Order No.1000120776_1 which expires on 5/27/2005, and is not for resale.

**§ 5.3 SUBCONTRACTUAL RELATIONS**

**§ 5.3.1** By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement which may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

**§ 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS**

**§ 5.4.1** Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner provided that:

.1   assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and

.2   assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

**§ 5.4.2** Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

**ARTICLE 6   CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS**

**§ 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS**

**§ 6.1.1** The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Section 4.3.

**§ 6.1.2** When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

**§ 6.1.3** The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules when directed to do so. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

**§ 6.1.4** Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights which apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

**§ 6.2 MUTUAL RESPONSIBILITY**

**§ 6.2.1** The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:42:41 on 06/15/2004 under Order No.1000120770 1 which expires on 5/27/2005, and is not for resale.

23

§ 6.2.2 If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

§ 6.2.3 The Owner shall be reimbursed by the Contractor for costs incurred by the Owner which are payable to a separate contractor because of delays, improperly timed activities or defective construction of the Contractor. The Owner shall be responsible to the Contractor for costs incurred by the Contractor because of delays, improperly timed activities, damage to the Work or defective construction of a separate contractor.

§ 6.2.4 The Contractor shall promptly remedy damage wrongfully caused by the Contractor to completed or partially completed construction or to property of the Owner or separate contractors as provided in Section 10.2.5.

§ 6.2.5 The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

§ 6.3 OWNER'S RIGHT TO CLEAN UP
§ 6.3.1 If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.

ARTICLE 7   CHANGES IN THE WORK
§ 7.1 GENERAL
§ 7.1.1 Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

§ 7.1.2 A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

§ 7.1.3 Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

§ 7.2 CHANGE ORDERS
§ 7.2.1 A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following:
   .1   change in the Work;
   .2   the amount of the adjustment, if any, in the Contract Sum; and
   .3   the extent of the adjustment, if any, in the Contract Time.

§ 7.2.2 Methods used in determining adjustments to the Contract Sum may include those listed in Section 7.3.3.

§ 7.3 CONSTRUCTION CHANGE DIRECTIVES
§ 7.3.1 A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

§ 7.3.2 A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 05/13/2004 under Order No.1000120776 1 which expires on 3/27/2005, and is not for resale.

§ 7.3.3 If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

.1     mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;

.2     unit prices stated in the Contract Documents or subsequently agreed upon;

.3     cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

.4     as provided in Section 7.3.6.

§ 7.3.4 Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

§ 7.3.5 A Construction Change Directive signed by the Contractor indicates the agreement of the Contractor therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

§ 7.3.6 If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Architect on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.6 shall be limited to the following:

.1     costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

.2     costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3     rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4     costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5     additional costs of supervision and field office personnel directly attributable to the change.

§ 7.3.7 The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

§ 7.3.8 Pending final determination of the total cost of a Construction Change Directive to the Owner, amounts not in dispute for such changes in the Work shall be included in Applications for Payment accompanied by a Change Order indicating the parties' agreement with part or all of such costs. For any portion of such cost that remains in dispute, the Architect will make an interim determination for purposes of monthly certification for payment for those costs. That determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a claim in accordance with Article 4.

§ 7.3.9 When the Owner and Contractor agree with the determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order.

§ 7.4 MINOR CHANGES IN THE WORK
§ 7.4.1 The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly.

AIA Document A201™ - 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:43:41 on 05/13/2004 under Order No.1000120770_1 which expires on 5/21/2005, and is not for resale.

## ARTICLE 8  TIME
### § 8.1 DEFINITIONS
§ 8.1.1 Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

§ 8.1.2 The date of commencement of the Work is the date established in the Agreement.

§ 8.1.3 The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

§ 8.1.4 The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

### § 8.2 PROGRESS AND COMPLETION
§ 8.2.1 Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

§ 8.2.2 The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance. Unless the date of commencement is established by the Contract Documents or a notice to proceed given by the Owner, the Contractor shall notify the Owner in writing not less than five days or other agreed period before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

§ 8.2.3 The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

### § 8.3 DELAYS AND EXTENSIONS OF TIME
§ 8.3.1 If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner, or by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control, or by delay authorized by the Owner pending mediation and arbitration, or by other causes which the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

§ 8.3.2 Claims relating to time shall be made in accordance with applicable provisions of Section 4.3.

§ 8.3.3 This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

## ARTICLE 9  PAYMENTS AND COMPLETION
### § 9.1 CONTRACT SUM
§ 9.1.1 The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

### § 9.2 SCHEDULE OF VALUES
§ 9.2.1 Before the first Application for Payment, the Contractor shall submit to the Architect a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

### § 9.3 APPLICATIONS FOR PAYMENT
§ 9.3.1 At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment for operations completed in accordance with the schedule of values. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 05:11:41 on 06/15/2004 under Order No.1000124770_1 which expires on 5/27/2005, and is not for resale.

payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and reflecting retainage if provided for in the Contract Documents.

**§ 9.3.1.1** As provided in Section 7.3.8, such applications may include requests for payment on account of changes in the Work which have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

**§ 9.3.1.2** Such applications may not include requests for payment for portions of the Work for which the Contractor does not intend to pay to a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

**§ 9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

**§ 9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

## § 9.4 CERTIFICATES FOR PAYMENT
**§ 9.4.1** The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

**§ 9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

## § 9.5 DECISIONS TO WITHHOLD CERTIFICATION
**§ 9.5.1** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts or omissions described in Section 3.3.2, because of:

    **.1**    defective Work not remedied;

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:45:41 on 06/15/2004 under Order No.1000120771C 1 which expires on 8/27/2005, and is not for resale.

.2    third party claims filed or reasonable evidence indicating probable filing of such claims unless
      security acceptable to the Owner is provided by the Contractor;

.3    failure of the Contractor to make payments properly to Subcontractors or for labor, materials or
      equipment;

.4    reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;

.5    damage to the Owner or another contractor;

.6    reasonable evidence that the Work will not be completed within the Contract Time, and that the
      unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay;
      or

.7    persistent failure to carry out the Work in accordance with the Contract Documents.

**§ 9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts
previously withheld.

**§ 9.6 PROGRESS PAYMENTS**
**§ 9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and
within the time provided in the Contract Documents, and shall so notify the Architect.

**§ 9.6.2** The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the
amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said
Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of
such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor,
require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**§ 9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of
completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on
account of portions of the Work done by such Subcontractor.

**§ 9.6.4** Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a
Subcontractor except as may otherwise be required by law.

**§ 9.6.5** Payment to material suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and
9.6.4.

**§ 9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the
Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**§ 9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum,
payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by
the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under
contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require
money to be placed in a separate account and not commingled with money of the Contractor, shall create any
fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity
to an award of punitive damages against the Contractor for breach of the requirements of this provision.

**§ 9.7 FAILURE OF PAYMENT**
**§ 9.7.1** If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days
after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven
days after the date established in the Contract Documents the amount certified by the Architect or awarded by
arbitration, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the
Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and
the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and
start-up, plus interest as provided for in the Contract Documents.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by
The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and
International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe
civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA
software at 05:41:41 on 08/15/2004 under Order No.1000120770_1 which expires on 5/27/2005, and is not for resale.

28

## § 9.8 SUBSTANTIAL COMPLETION

**§ 9.8.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

**§ 9.8.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**§ 9.8.3** Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

**§ 9.8.4** When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**§ 9.8.5** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

## § 9.9 PARTIAL OCCUPANCY OR USE

**§ 9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.4.1.5 and authorized by public authorities having jurisdiction over the Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

**§ 9.9.2** Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

**§ 9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

## § 9.10 FINAL COMPLETION AND FINAL PAYMENT

**§ 9.10.1** Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 06/15/2004 under Order No.1000120770_1 which expires on 5/27/2005, and is not for resale.

final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

**§ 9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

**§ 9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

**§ 9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from:

   .1   liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;

   .2   failure of the Work to comply with the requirements of the Contract Documents; or

   .3   terms of special warranties required by the Contract Documents.

**§ 9.10.5** Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10   PROTECTION OF PERSONS AND PROPERTY
### § 10.1 SAFETY PRECAUTIONS AND PROGRAMS
**§ 10.1.1** The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

### § 10.2 SAFETY OF PERSONS AND PROPERTY
**§ 10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

   .1   employees on the Work and other persons who may be affected thereby;

   .2   the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

   .3   other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

**§ 10.2.2** The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 06/15/2006 under Order No.1000120770 1 which expires on 2/27/2005, and is not for resale.

§ 10.2.3 The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

§ 10.2.4 When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

§ 10.2.5 The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

§ 10.2.6 The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

§ 10.2.7 The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

## § 10.3 HAZARDOUS MATERIALS
§ 10.3.1 If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

§ 10.3.2 The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to verify that it has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up, which adjustments shall be accomplished as provided in Article 7.

§ 10.3.3 To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

§ 10.4 The Owner shall not be responsible under Section 10.3 for materials and substances brought to the site by the Contractor unless such materials or substances were required by the Contract Documents.

AIA Document A201® - 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:43 on 06/15/2004 under Order No.1000320770_1 which expires on 5/29/2005, and is not for resale.

§ 10.5 If, without negligence on the part of the Contractor, the Contractor is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

## § 10.6 EMERGENCIES
§ 10.6.1 In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Section 4.3 and Article 7.

## ARTICLE 11  INSURANCE AND BONDS
## § 11.1 CONTRACTOR'S LIABILITY INSURANCE
§ 11.1.1 The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

   .1   claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed;

   .2   claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;

   .3   claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

   .4   claims for damages insured by usual personal injury liability coverage;

   .5   claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

   .6   claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

   .7   claims for bodily injury or property damage arising out of completed operations; and

   .8   claims involving contractual liability insurance applicable to the Contractor's obligations under Section 3.18.

§ 11.1.2 The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Work until date of final payment and termination of any coverage required to be maintained after final payment.

§ 11.1.3 Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work. These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment as required by Section 9.10.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness in accordance with the Contractor's information and belief.

## § 11.2 OWNER'S LIABILITY INSURANCE
§ 11.2.1 The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

## § 11.3 PROJECT MANAGEMENT PROTECTIVE LIABILITY INSURANCE
§ 11.3.1 Optionally, the Owner may require the Contractor to purchase and maintain Project Management Protective Liability insurance from the Contractor's usual sources as primary coverage for the Owner's, Contractor's and Architect's vicarious liability for construction operations under the Contract. Unless otherwise required by the Contract Documents, the Owner shall reimburse the Contractor by increasing the Contract Sum to pay the cost of purchasing and maintaining such optional insurance coverage, and the Contractor shall not be responsible for purchasing any other liability insurance on behalf of the Owner. The minimum limits of liability purchased with such coverage shall be equal to the aggregate of the limits required for Contractor's Liability Insurance under Sections 11.1.1.2 through 11.1.1.5.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 06/15/2004 under Order No.1000120770_1 which expires on 5/27/2005, and is not for resale.

32

§ 11.3.2 To the extent damages are covered by Project Management Protective Liability insurance, the Owner, Contractor and Architect waive all rights against each other for damages, except such rights as they may have to the proceeds of such insurance. The policy shall provide for such waivers of subrogation by endorsement or otherwise.

§ 11.3.3 The Owner shall not require the Contractor to include the Owner, Architect or other persons or entities as additional insureds on the Contractor's Liability Insurance coverage under Section 11.1.

### § 11.4 PROPERTY INSURANCE

§ 11.4.1 Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.4 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

§ 11.4.1.1 Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

§ 11.4.1.2 If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

§ 11.4.1.3 If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

§ 11.4.1.4 This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

§ 11.4.1.5 Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

§ 11.4.2 Boiler and Machinery Insurance. The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

§ 11.4.3 Loss of Use Insurance. The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:43:43 on 06/15/2004 under Order No.1000120779_1 which expires on 8/27/2005, and is not for resale.

§ 11.4.4 If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

§ 11.4.5 If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

§ 11.4.6 Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.4. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

§ 11.4.7 Waivers of Subrogation. The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

§ 11.4.8 A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.4.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

§ 11.4.9 If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or in accordance with an arbitration award in which case the procedure shall be as provided in Section 4.6. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

§ 11.4.10 The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved as provided in Sections 4.5 and 4.6. The Owner as fiduciary shall, in the case of arbitration, make settlement with insurers in accordance with directions of the arbitrators. If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.

§ 11.5 PERFORMANCE BOND AND PAYMENT BOND
§ 11.5.1 The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents as of the date of execution of the Contract.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 06/15/2004 under Order No.1000120770 1 which expires on 3/27/2005, and is not for resale.

34

§ 11.5.2 Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall permit a copy to be made.

## ARTICLE 12  UNCOVERING AND CORRECTION OF WORK
### § 12.1 UNCOVERING OF WORK
§ 12.1.1 If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if required in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

§ 12.1.2 If a portion of the Work has been covered which the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

### § 12.2 CORRECTION OF WORK
### § 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION
§ 12.2.1.1 The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

### § 12.2.2 AFTER SUBSTANTIAL COMPLETION
§ 12.2.2.1 In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4.

§ 12.2.2.2 The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work.

§ 12.2.2.3 The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

§ 12.2.3 The Contractor shall remove from the site portions of the Work which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

§ 12.2.4 The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work which is not in accordance with the requirements of the Contract Documents.

§ 12.2.5 Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 04/15/2004 under Order No.1000120770 1 which expires on 3/27/2005, and is not for resale.

Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

### § 12.3 ACCEPTANCE OF NONCONFORMING WORK
§ 12.3.1 If the Owner prefers to accept Work which is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

### ARTICLE 13  MISCELLANEOUS PROVISIONS
### § 13.1 GOVERNING LAW
§ 13.1.1 The Contract shall be governed by the law of the place where the Project is located.

### § 13.2 SUCCESSORS AND ASSIGNS
§ 13.2.1 The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

§ 13.2.2 The Owner may, without consent of the Contractor, assign the Contract to an institutional lender providing construction financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

### § 13.3 WRITTEN NOTICE
§ 13.3.1 Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice.

### § 13.4 RIGHTS AND REMEDIES
§ 13.4.1 Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

§ 13.4.2 No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

### § 13.5 TESTS AND INSPECTIONS
§ 13.5.1 Tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections or approvals which do not become requirements until after bids are received or negotiations concluded.

§ 13.5.2 If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:43 on 06/18/2004 under Order No.1000126770_1 which expires on 5/27/2005, and is not for resale.

36

§ 13.5.3 If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

§ 13.5.4 Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

§ 13.5.5 If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

§ 13.5.6 Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

§ 13.6 INTEREST
§ 13.6.1 Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

§ 13.7 COMMENCEMENT OF STATUTORY LIMITATION PERIOD
§ 13.7.1 As between the Owner and Contractor:
.1    Before Substantial Completion. As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion;
.2    Between Substantial Completion and Final Certificate for Payment. As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and
.3    After Final Certificate for Payment. As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any Warranty provided under Section 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Section 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

ARTICLE 14   TERMINATION OR SUSPENSION OF THE CONTRACT
§ 14.1 TERMINATION BY THE CONTRACTOR
§ 14.1.1 The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:
.1    issuance of an order of a court or other public authority having jurisdiction which requires all Work to be stopped;
.2    an act of government, such as a declaration of national emergency which requires all Work to be stopped;
.3    because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or
.4    the Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Section 2.2.1.

§ 14.1.2 The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 05:41:41 on 05/15/2004 under Order No.1000120770_1 which expires on 5/27/2005, and is not for resale.

by the Owner as described in Section 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

§ 14.1.3 If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

§ 14.1.4 If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has persistently failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

### § 14.2 TERMINATION BY THE OWNER FOR CAUSE
§ 14.2.1 The Owner may terminate the Contract if the Contractor:

  .1  persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

  .2  fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;

  .3  persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or

  .4  otherwise is guilty of substantial breach of a provision of the Contract Documents.

§ 14.2.2 When any of the above reasons exist, the Owner, upon certification by the Architect that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

  .1  take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

  .2  accept assignment of subcontracts pursuant to Section 5.4; and

  .3  finish the Work by whatever reasonable method the Owner may deem expedient. Upon request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

§ 14.2.3 When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

§ 14.2.4 If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

### § 14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE
§ 14.3.1 The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

§ 14.3.2 The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent:

  .1  that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or

  .2  that an equitable adjustment is made or denied under another provision of the Contract.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1974, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:41:41 on 08/15/2004 under Order No.1000120770_1 which expires on 3/27/2005, and is not for resale.

## § 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE

§ 14.4.1 The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

§ 14.4.2 Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall:

    .1    cease operations as directed by the Owner in the notice;

    .2    take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

    .3    except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

§ 14.4.3 In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by
The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and
International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe
civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA
software at 05:41:41 on 06/18/2003 under Order No.1000120770 1 which expires on 5/27/2003, and is not for resale.



| | Sheet # | Architectural: Mouriz Salazar Architects | Plan or Revision Date | Coastal Received Date |
|---|---|---|---|---|
| | | **Villa Lago** | | |
| | | **Boyton Beach, Florida** | | |
| | | **Exhibit "E" - Plan Log for Condo Units West Building** | | |
| | | March 28, 2005 | | |
| 1 | A-0.1.3 | Index of Drawings - Cover Sheet | 1/12/05 | 1/21/05 |
| 2 | A-0.2 | Unit mix, Abbreviations & Symbols | 1/12/05 | 1/21/05 |
| 3 | SP-1 | Overall Site Plan | 1/12/05 | 1/21/05 |
| 4 | SP-2 | Site Plan | 1/12/05 | 1/21/05 |
| 5 | SP-3 | Entry Wall Signage | 1/12/05 | 1/21/05 |
| 6 | SP-4 | Blow up of Main Entrance | 1/12/05 | 1/21/05 |
| 7 | A-2.1 | Ground Floor Plan | 1/12/05 | 1/21/05 |
| 8 | A-2.2 | Second Floor Plan | 1/12/05 | 1/21/05 |
| 9 | A-2.2LS | Second Floor Life Safety Plan | 1/12/05 | 1/21/05 |
| 10 | A-2.3 | Third Floor Plan | 1/12/05 | 1/21/05 |
| 11 | A-2.3LS | Third Floor Life Safety Plan | 1/12/05 | 1/21/05 |
| 12 | A-2.4 | Fourth Floor Plan | 1/12/05 | 1/21/05 |
| 13 | A-2.4LS | Fourth Floor Life Safety Plan | 1/12/05 | 1/21/05 |
| 14 | A-2.5 | Fifth Floor Plan | 1/12/05 | 1/21/05 |
| 15 | A-2.5LS | Fifth Floor Life Safety Plan | 1/12/05 | 1/21/05 |
| 16 | A-2.6 | Sixth Floor Plan | 1/12/05 | 1/21/05 |
| 17 | A-2.6LS | Sixth Floor Life Safety Plan | 1/12/05 | 1/21/05 |
| 18 | A-2.7 | Roof Plan | 1/12/05 | 1/21/05 |
| 19 | A-2.1.1D | Ground Floor Walkway Drainage Plan | 1/12/05 | 1/21/05 |
| 20 | A-2.1.1N | Ground Floor Plan - North | 1/12/05 | 1/21/05 |
| 21 | A-2.1.1R | Ground Floor Reflected Ceiling Plan | 1/12/05 | 1/21/05 |
| 22 | A-2.1.1S | Ground Floor Plan - South | 1/12/05 | 1/21/05 |
| 23 | A-2.1.2D | Typical Floor Walkway Drainage Plan | 1/12/05 | 1/21/05 |
| 24 | A-2.1.2N | Typical Floor Plan - North | 1/12/05 | 1/21/05 |
| 25 | A-2.1.2R | Typical Floor Reflected Ceiling Plan | 1/12/05 | 1/21/05 |
| 26 | A-2.1.2S | Typical Floor Plan - South | 1/12/05 | 1/21/05 |
| 27 | A-2.1.3N | Third Floor Plan - North | 1/12/05 | 1/21/05 |
| 28 | A-2.1.3S | Third Floor Plan - South | 1/12/05 | 1/21/05 |
| 29 | A-2.1.7N | Roof Plan - North | 1/12/05 | 1/21/05 |
| 30 | A-2.1.7S | Roof Plan - South | 1/12/05 | 1/21/05 |
| 31 | A-3.1.1 | Elevations | 1/12/05 | 1/21/05 |
| 32 | A-3.1.2 | Elevations | 1/12/05 | 1/21/05 |
| 33 | A-3.1.3 | Elevations | 1/12/05 | 1/21/05 |
| 34 | A-3.1.4 | Elevations | 1/12/05 | 1/21/05 |
| 35 | A-3.2.1 | Sections | 1/12/05 | 1/21/05 |
| 36 | A-3.2.2 | Sections | 1/12/05 | 1/21/05 |
| 37 | A-4.1 | Units A & B Layout | 1/12/05 | 1/21/05 |
| 38 | A-4.1R | Units A & B Layout (Reverse) | 1/12/05 | 1/21/05 |
| 39 | A-4.2 | Units C & D Layout | 1/12/05 | 1/21/05 |
| 40 | A-4.2R | Units C & D Layout ( Reverse) | 1/12/05 | 1/21/05 |
| 41 | A-5.1 | Door, Window & Unit Finish Schedules | 1/12/05 | 1/21/05 |

# ℭ Coastal

## Villa Lago
### Boyton Beach, Florida
### Exhibit "E" - Plan Log for Condo Units West Building
#### March 28, 2005

| 42 | A-5.2 | Unit Plan Blow Ups | 1/12/05 | 1/21/05 |
|----|-------|--------------------|---------|---------|
| 43 | A-5.3 | Interior Elevations - Bathrooms | 1/12/05 | 1/21/05 |
| 44 | A-5.4 | Interior Elevations - Kitchens | 1/12/05 | 1/21/05 |
| 45 | A-5.5 | Interior Elevations - Public Bathrooms | 1/12/05 | 1/21/05 |
| 46 | A-6.1 | Typical Wall Sections | 1/12/05 | 1/21/05 |
| 47 | A-6.2 | Typical Wall Sections | 1/12/05 | 1/21/05 |
| 48 | A-6.3 | Typical Wall Sections | 1/12/05 | 1/21/05 |
| 49 | A-7.1.1 | North & South Trash Rooms | 1/12/05 | 1/21/05 |
| 50 | A-7.1.2.1 | Elevator #1 | 1/12/05 | 1/21/05 |
| 51 | A-7.1.2.2 | Elevator #2 | 1/12/05 | 1/21/05 |
| 52 | A-7.1.2.3 | Elevator #3 | 1/12/05 | 1/21/05 |
| 53 | A-7.1.3 | Stair #1 | 1/12/05 | 1/21/05 |
| 54 | A-7.1.4 | Stair #2 | 1/12/05 | 1/21/05 |
| 55 | A-7.1.5 | Stair #3 | 1/12/05 | 1/21/05 |
| 56 | A-8.1 | Details | 1/12/05 | 1/21/05 |
| 57 | A-8.2 | Details | 1/12/05 | 1/21/05 |
| 58 | A-8.3 | Details | 1/12/05 | 1/21/05 |
| 59 | A-8.4 | Details | 1/12/05 | 1/21/05 |
| 60 | A-8.5 | Details | 1/12/05 | 1/21/05 |
| 61 | A-9.1 | Accessability Notes | 1/12/05 | 1/21/05 |
|    |       |         |         |         |
|    |       | **Structural; J. Eduardo GonZalez P.E.** |  |  |
|    |       |         |         |         |
| 62 | S-2.1.1.1 | Foundation & Ground Floor Framing Plan | 12/1/04 | 1/21/05 |
| 63 | S-2.1.1.2 | Foundation & Ground Floor Framing Plan | 12/1/04 | 1/21/05 |
| 64 | S-2.1.1.3 | Foundation & Ground Floor Framing Plan | 12/1/04 | 1/21/05 |
| 65 | S-2.1.1.4 | Foundation & Ground Floor Framing Plan | 12/1/04 | 1/21/05 |
| 66 | S-2.1.1.5 | Foundation & Ground Floor Framing Plan | 12/1/04 | 1/21/05 |
| 67 | S-2.1.2.1 | Second Floor Framing Plan | 12/1/04 | 1/21/05 |
| 68 | S-2.1.2.2 | Second Floor Framing Plan | 12/1/04 | 1/21/05 |
| 69 | S-2.1.2.3 | Second Floor Framing Plan | 12/1/04 | 1/21/05 |
| 70 | S-2.1.2.4 | Second Floor Framing Plan | 12/1/04 | 1/21/05 |
| 71 | S-2.1.2.5 | Second Floor Framing Plan | 12/1/04 | 1/21/05 |
| 72 | S-2.1.3.1 | Third Floor Framing Plan | 12/1/04 | 1/21/05 |
| 73 | S-2.1.3.2 | Third Floor Framing Plan | 12/1/04 | 1/21/05 |
| 74 | S-2.1.3.3 | Third Floor Framing Plan | 12/1/04 | 1/21/05 |
| 75 | S-2.1.3.4 | Third Floor Framing Plan | 12/1/04 | 1/21/05 |
| 76 | S-2.1.3.5 | Third Floor Framing Plan | 12/1/04 | 1/21/05 |
| 77 | S-2.1.4.1 | Fourth Floor Framing Plan | 12/1/04 | 1/21/05 |
| 78 | S-2.1.4.2 | Fourth Floor Framing Plan | 12/1/04 | 1/21/05 |
| 79 | S-2.1.4.3 | Fourth Floor Framing Plan | 12/1/04 | 1/21/05 |
| 80 | S-2.1.4.4 | Fourth Floor Framing Plan | 12/1/04 | 1/21/05 |
| 81 | S-2.1.4.5 | Fourth Floor Framing Plan | 12/1/04 | 1/21/05 |
| 82 | S-2.1.5.1 | Fifth Floor Framing Plan | 12/1/04 | 1/21/05 |



# Coastal

## Villa Lago
### Boyton Beach, Florida
### Exhibit "E" - Plan Log for Condo Units West Building
#### March 28, 2005

| 83 | S-2.1.5.2 | Fifth Floor Framing Plan | 12/1/04 | 1/21/05 |
|---|---|---|---|---|
| 84 | S-2.1.5.3 | Fifth Floor Framing Plan | 12/1/04 | 1/21/05 |
| 85 | S-2.1.5.4 | Fifth Floor Framing Plan | 12/1/04 | 1/21/05 |
| 86 | S-2.1.5.5 | Fifth Floor Framing Plan | 12/1/04 | 1/21/05 |
| 87 | S-2.1.6.1 | Sixth Floor Framing Plan | 12/1/04 | 1/21/05 |
| 88 | S-2.1.6.2 | Sixth Floor Framing Plan | 12/1/04 | 1/21/05 |
| 89 | S-2.1.6.3 | Sixth Floor Framing Plan | 12/1/04 | 1/21/05 |
| 90 | S-2.1.6.4 | Sixth Floor Framing Plan | 12/1/04 | 1/21/05 |
| 91 | S-2.1.6.5 | Sixth Floor Framing Plan | 12/1/04 | 1/21/05 |
| 92 | S-2.1.7.1 | Roof Slab Framing Plan | 12/1/04 | 1/21/05 |
| 93 | S-2.1.7.2 | Roof Slab Framing Plan | 12/1/04 | 1/21/05 |
| 94 | S-2.1.7.3 | Roof Slab Framing Plan | 12/1/04 | 1/21/05 |
| 95 | S-2.1.7.4 | Roof Slab Framing Plan | 12/1/04 | 1/21/05 |
| 96 | S-2.1.7.5 | Roof Slab Framing Plan | 12/1/04 | 1/21/05 |
| 97 | S-2.1.8.1 | Roof Trusses Layout Plan | 12/1/04 | 1/21/05 |
| 98 | S-2.1.8.2 | Roof Trusses Layout Plan | 12/1/04 | 1/21/05 |
| 99 | S-2.1.8.3 | Roof Trusses Layout Plan | 12/1/04 | 1/21/05 |
| 100 | S-2.1.8.4 | Roof Trusses Layout Plan | 12/1/04 | 1/21/05 |
| 101 | S-2.1.8.5 | Roof Trusses Layout Plan | 12/1/04 | 1/21/05 |
| 102 | S-3.1 | Footing, Column & Beam Schedules | 12/1/04 | 1/21/05 |
| 103 | S-3.2 | General Structural Notes | 12/1/04 | 1/21/05 |
| 104 | S-4.1 | Sections | 12/1/04 | 1/21/05 |
| 105 | S-4.2 | Sections | 12/1/04 | 1/21/05 |
| 106 | S-4.3 | Sections | 12/1/04 | 1/21/05 |
| | | **HVAC:  Florida Engineering Services** | | |
| 107 | AC-1.1 | General Notes & Schedules | 1/12/05 | 1/21/05 |
| 108 | AC-1.2 | Details | 1/12/05 | 1/21/05 |
| 109 | AC-1.3 | Details | 1/12/05 | 1/21/05 |
| 110 | AC-2.1.1N | Ground Floor Plan - North Partial | 1/12/05 | 1/21/05 |
| 111 | AC-2.1.1S | Ground Floor Plan - South Partial | 1/12/05 | 1/21/05 |
| 112 | AC-2.1.2N | Typical 2nd thru 5th Floor Plans - North Partial | 1/12/05 | 1/21/05 |
| 113 | AC-2.1.2S | Typical 2nd thru 5th Floor Plans - South Partial | 1/12/05 | 1/21/05 |
| 114 | AC-2.1.6N | Sixth Floor Plan - North Partial | 1/12/05 | 1/21/05 |
| 115 | AC-2.1.6S | Sixth Floor Plan - South Partial | 1/12/05 | 1/21/05 |
| 116 | AC-2.1.7N | Roof Plan - North Partial | 1/12/05 | 1/21/05 |
| 117 | AC-2.1.7S | Roof Plan - South Partial | 1/12/05 | 1/21/05 |
| 118 | AC-2.3.1 | 1st Level Parking | 1/12/05 | 1/21/05 |
| 119 | AC-3.1 | Typical Trash Chutes Ventilation Detail | 1/12/05 | 1/21/05 |
| 120 | AC-4.1 | All Units Duct Layout | 1/12/05 | 1/21/05 |





# Coastal

## Villa Lago
### Boyton Beach, Florida
### Exhibit "E" - Plan Log for Condo Units West Building
March 28, 2005

### Plumbing:  Florida Engineering Services

| | | | | |
|---|---|---|---|---|
| 121 | P-1.1 | Site Plan | 1/12/05 | 1/21/05 |
| 122 | P-2.1.0N | Underground Floor Plan – North | 1/12/05 | 1/21/05 |
| 123 | P-2.1.0S | Underground Floor Plan – South | 1/12/05 | 1/21/05 |
| 124 | P-2.1.1N | Ground Floor Plan – North | 1/12/05 | 1/21/05 |
| 125 | P-2.1.1S | Ground Floor Plan – South | 1/12/05 | 1/21/05 |
| 126 | P-2.1.2N | Typical 2nd thru 5th Floor Plans – North | 1/12/05 | 1/21/05 |
| 127 | P-2.1.2S | Typical 2nd thru 5th Floor Plans – South | 1/12/05 | 1/21/05 |
| 128 | P-2.1.6N | 6th Floor Plan – North | 1/12/05 | 1/21/05 |
| 129 | P-2.1.6S | 6th Floor Plan – South | 1/12/05 | 1/21/05 |
| 130 | P-2.1.7N | Roof Plan – North | 1/12/05 | 1/21/05 |
| 131 | P-2.1.7S | Roof Plan – South | 1/12/05 | 1/21/05 |
| 132 | P-3.1.1 | Riser Diagrams | 1/12/05 | 1/21/05 |
| 133 | P-3.1.2N | Sanitary Riser Diagram – North | 1/12/05 | 1/21/05 |
| 134 | P-3.1.2S | Sanitary Riser Diagram – South | 1/12/05 | 1/21/05 |
| 135 | P-3.1.3 | Water Riser Diagram | 1/12/05 | 1/21/05 |
| 136 | P-3.1.4 | Storm Riser Diagram – West Bldg | 1/12/05 | 1/21/05 |
| 137 | P-3.2.4 | Storm Riser Diagram – East Bldg | 1/12/05 | 1/21/05 |
| 138 | P-5.1 | General Plumbing Notes | 1/12/05 | 1/21/05 |

### Fire Protection:  Florida Engineering Services

| | | | | |
|---|---|---|---|---|
| 139 | SP-0.1 | Fire Protection System Notes, Specs & Details | 1/12/05 | 1/21/05 |
| 140 | SP-1.1 | Site Plan | 1/12/05 | 1/21/05 |
| 141 | SP-2.1.1.N | Ground Floor Plan – Bldg. 1 | 1/12/05 | 1/21/05 |
| 142 | SP-2.1.1.S | Ground Floor Plan – Bldg. 1 | 1/12/05 | 1/21/05 |
| 143 | SP-2.1.2.N | Typical 2nd thru 5th Floor Plans – Bldg.1 | 1/12/05 | 1/21/05 |
| 144 | SP-2.1.2.S | Typical 2nd thru 5th Floor Plans – Bldg.1 | 1/12/05 | 1/21/05 |
| 145 | SP-2.1.6N | 6th Floor Plan – Bldg. 1 | 1/12/05 | 1/21/05 |
| 146 | SP-2.1.6S | 6th Floor Plan – Bldg. 1 | 1/12/05 | 1/21/05 |
| 147 | SP-2.1.7N | Roof Plan – Bldg.1 | 1/12/05 | 1/21/05 |
| 148 | SP-2.1.7S | Roof Plan – Bldg.1 | 1/12/05 | 1/21/05 |
| 149 | SP-2.2.1N | Ground Floor Plan – Bldg. 2 | 1/12/05 | 1/21/05 |
| 150 | SP-2.3.1 | 1st Level Parking | 1/12/05 | 1/21/05 |
| 151 | SP-3.1 | Standpipe Riser Diagram | 1/12/05 | 1/21/05 |
| 152 | SP-4.1 | All Units Sprinkler Layout Plan | 1/12/05 | 1/21/05 |



## Villa Lago
### Boyton Beach, Florida
### Exhibit "E" - Plan Log for Condo Units West Building
March 28, 2005

**Electrical:  Florida Engineering Services**

| | | | | |
|---|---|---|---|---|
| 153 | E-1.1 | General Electrical Notes | 1/12/05 | 1/21/05 |
| 154 | E-1.2 | Site Plan | 1/12/05 | 1/21/05 |
| 155 | E-1.3 | Site Plan | 1/12/05 | 1/21/05 |
| 156 | E-1.4 | Site Plan | 1/12/05 | 1/21/05 |
| 157 | E-1.5.1 | Ground Floor Security Plan | 1/12/05 | 1/21/05 |
| 158 | E-2.1.1N | Ground Floor Plan - North Partial | 1/12/05 | 1/21/05 |
| 159 | E-2.1.1S | Ground Floor Plan - South Partial | 1/12/05 | 1/21/05 |
| 160 | E-2.1.2N | Typical 2nd, 4thu & 5th Floor Plans - North Partial | 1/12/05 | 1/21/05 |
| 161 | E-2.1.2S | Typical 2nd thru 5th Floor Plans - South Partial | 1/12/05 | 1/21/05 |
| 162 | E-2.1.6N | 6th Floor Plan - North Partial | 1/12/05 | 1/21/05 |
| 163 | E-2.1.6S | 6th Floor Plan - South Partial | 1/12/05 | 1/21/05 |
| 164 | E-2.1.7N | Roof Plan - North Partial | 1/12/05 | 1/21/05 |
| 165 | E-2.1.7S | Roof Plan - South Partial | 1/12/05 | 1/21/05 |
| 166 | E-3.1.1 | Electrical Riser Diagrams | 1/12/05 | 1/21/05 |
| 167 | E-3.1.2 | Fire Alarm Riser Diagram | 1/12/05 | 1/21/05 |
| 168 | E-4R | All Units (Reversed) Electrical Floor Layouts | 1/12/05 | 1/21/05 |
| 169 | E-4 | All Units Electrical Floor Layouts | 1/12/05 | 1/21/05 |

It is intended that a revised Plan, Sheets, and Details be issued on or about July 7, 2005. Contractor shall immediately evaluate, discuss, and price all changes by August 5, 2005. Additionally, Contractor shall make its best effort to minimize cost impact.

CK

## Villa Lago
*Residence Finish Schedule*
### Exhibit "F"

Page 2

**Secondary Bath: If Applicable**

| | | |
|---|---|---|
| Vanity | Cabinets (as displayed in Sales center) | White |
| Countertops | Cultured Marble w/ integral sink | Beige |
| Flooring | 18" x 18" Ceramic tile w/ MG *– WOOD BASE* | Beige |
| Faucets | Kohler or Equal *– new different* | Chrome |
| | | |
| Shower Enclosure | Glass Enclosure | Clear |
| Shower Head | Kohler or Equal  *new different* | Chrome |
| or | | |
| Tub/ Shower | 36" tub | White |
| Tub/ Shower Setup | Kohler or Equal  *– new different* | Chrome |
| | | |
| Toilet | Brello or Equal  *– new different –* | White |
| Towel bars (1) | 24" - 30" | Chrome |
| Toilet Paper Holder (1) | Single Roll | Chrome |
| | | |
| **Mirrors** | Full Width Above Vanities | Tempered Non Beveled |
| | | |
| **Laundry** | | |
| Washer | GE WCSE41608 or Equal | White |
| Dryer | GE DBXR453GB or Equal | White |
| | | |
| **Plumbing** | Quick recovery Electric water heater or Equal | Sized for 1,2 or 3 Bedrooms |
| | | |
| **HVAC** | 10 Seer or Equal Air cooled split direct expansion system Electric A/C/ Heat individual to each unit. | TBD |
| | | |
| **Electrical** | | |
| Lighting | Surface mounted fixtures to be provided throughout residence (Foyer, Kitchen, Laundry, Baths, & Walk-in Closets) | |
| | | |
| Receptacles | Per Code | White |
| Switches | Per Code | White |
| | | |
| Panel size | Electric Panel sized per Architect's/Engineer's Specifications | Sized Respectfully for 1,2 or 3 Bedrooms |
| | | |
| **Security** | Pre-Wired for Optional Security System | As per electrical Drawings |
| | | |
| **Sprinklers** | Throughout each residence per Code | As per Building Code |
| | | |
| **Cable/ Multimedia** | | |
| Cable television | Provided in Residence | As per electrical Drawings |
| Phone Lines | Provided in Residence | As per electrical Drawings |

**Buyers Initials** ☐

UC

JUN. 24. 2005 11:59AM                                    NO. 4041   P. 11

## Villa Lago      CONTRACTORS EXHIBIT " E "
*Residence Finish Schedule*

### Exhibit "E"

The following is a list of features home provided as part of each residence at Villa Lago. All items are standard in the Residence. NO CREDITS WILL BE GIVEN ON INTERIOR FINISHES.   Any work in excess of standard finish shall be done after closing of the residence as provided in the Agreement for Sale.

Purchaser shall be allowed to use a contractor (only after closing) of their choice subject to the rules and regulations of the Condominium and proper governmental permitting and inspection of said work.

| Items | Description | Specifications |
|---|---|---|
| **Floors** | | |
| Kitchen | Ceramic Tile | Color Choice Two Of Developer Selections |
| Bathrooms | Ceramic Tile | Color Choice Two Of Developer Selections |
| Terraces | Concrete Floors | Color choice by Developer |

*" All hard surface floors must be installed with approved sound proofing material which specifications will be provided by separate letter.*

| | | |
|---|---|---|
| **Ceiling** | Ceilings will have designer knockdown finish | Approximately 9' High |
| | 1/2" Drywall W/ Light Textured knockdown except Kitchens, | |
| **Walls** | Baths, Utility & Closets) | Knockdown |
| **Paint** | Finished walls, ceiling, millwork | Latex ( 1 Coat of Primer & 1 Coat of Paint) |
| **Millwork** | Door casings - 3 — 3 ¼" | Paint grade  — WOOD BASE THROUGHOUT |
| | Baseboard 1 ⅜ | |
| | 1 ⅞ | |
| **Interior Doors** | Entry-(if applicable) Raised Panel (paint grade) | Paint Grade |
| | Interior 4 Panel Design (paint grade) | Paint Grade |
| **Hardware** | | |
| Residence | Kwikset or Equal | Brushed Nickel |
| Entry | Kwikset or Equal | Brushed Nickel |
| Interior | Kwikset or Equal | Brushed Nickel |
| Trash, Storage & Stairwell | Schlage or Equal | Brushed Nickel |
| Mechanical & Electrical | Schlage or Equal | Brushed Nickel |
| **Windows/ Glass** | Impact resistant | Aluminum Frame System |
| **Exterior Doors** | Sliding Glass Doors | |
| Hardware | Product Approved & Tested With Above | Brushed Nickel |
| **Kitchen** | | |
| Cabinetry | Wood Doors | Choice of 3 colors Offered by Developer |
| Countertops | Granite with 4" Backsplash (where cabinets are above) | Choice of 3 colors Offered by Developer |
| Sink | (2) Compartment | Stainless |
| Disposal | Badger 5 or Equal | 1/2 Hp |
| Faucet | Single handle with pullout spray | Chrome |
| **Appliances** | | |
| Refrigerator / Freezer | PSG23SG or Equal | Stainless |
| Dishwasher | GSD3660 w/ GPF425B Cabinet Panel Kit  or Equal | W/ Integral wood panel |
| Oven | JTP7GS or Equal | Stainless |
| Cook top | JP340B or Equal | Black |
| Microwave | JVM 1871G or Equal | Stainless / Black |
| **Master Bathroom only:** | | |
| Vanities | Cabinets Raised Panel | White |
| Countertops | Marble | Beige |
| Flooring | 18" x 18" Ceramic tile/box  WOOD BASE | Beige |
| Sinks | Under mount | White |
| Faucets | Kohler or Equal  New style (lanrieu | Chrome |
| Shower Enclosure | Glass (Where Applicable) | Clear |
| Shower Head | Kohler or Equal  — New style / Sup tm | Chrome |
| Shower Volume Control | Kohler or Equal  — New style (Base tm | Chrome |
| Tub | 42" Tub (Daneli & Amalfi Only) 36" tub (Cipriani & Salerni) | White |
| Tub Faucet | Kohler or Equal  New style flance tm | Chrome |
| Toilet | Roberts Equal   New style tm | White |
| Toilet Paper Holder (1) | Single Roll | Chrome |
| Towel bars (1) | 24" + 36" | Chrome |

CIL

Buyers Initials

27-Jun-2005  04:52PM    From-Katz Barron Squitero & Faust, P.A.        305 235 0320        T-282  P.010/018  F-119

# EXHIBIT "G"

## "ATTACHMENT NO. 2"
Insurance Addendum

*Villa Lago*
*Boynton Beach, Florida*

**BCR Holdings II, LLC**

1. This insurance addendum is an integral part of the contract (the "Contract") between Coastal Construction of South Florida dba Coastal Condominium ("Contractor") and ~~BCR Holdings I, LLC~~ ("Developer") for the construction of the condominium known as Villa Lago at Renaissance Commons, in Boynton Beach, Florida (the "Project" or "Building" supersedes any language to the contrary in the body of the main contract or your written proposal or any other addendum with respect to insurance.

2. <u>Contractor Insurance Coverages Required.</u> Contractor agrees to maintain the following amounts of insurance at its own expense from an insurance company licensed to do business in the State of Florida until completion and final acceptance of the work being performed at the Project pursuant to the Contract, ~~and all such insurance shall~~ ~~name the developer as subrogation in favor of Developer.~~    SEE  11.4.7

   a. Insurance Coverages:

      *General Liability*
      Each Occurrence:  Not Less Than $1,000,000
      General Aggregate:  Not Less Than $2,000,000
      Personal ~~& Adv~~ Injury:  Not Less Than $1,000,000
      Products - COMP/OP Agg: Not Less Than $1,000,000

      *Automobile Liability (ANY AUTO)*
      Combined Single Limit: Not Less Than $1,000,000

      *Excess/Umbrella Liability*
      Each Occurrence:  Not Less Than $10,000,000
      Aggregate:  Not Less Than $10,000,000

      *Workers Compensation/Employers Liability*
      WC Statutory limits
      E.L. Each Accident: Not Less Than $500,000
      E.L. Disease - EA Employee:  Not Less Than $500,000
      E.L. Disease - Policy Limit:  Not Less Than $500,000

   b. <u>Certificate of Insurance.</u> An original certificate of the Contractor's insurance must be delivered to Developer's office before work can commence. Contractor agrees that Developer may request an updated certificate of insurance at any time, and Contractor consents to Developer discussing a certificate with the issuing agent and the insurance company. Contractor agrees to have the following certificate holders and additional insureds covered by the certificate of insurance:

*Contractor shall price per project aggregate and forward to Owner for Owners decision. If accepted by Owner, costs shall be incorporated herein by Change Order.*

Received  27-Jun-2005  03:14pm    From-305 497 8228        To-Katz Barron Squitero    Page  004

27-Jun-2005 04:05PM   From-Neil Barron Squitero & Faust, P.A.   305 285 9233   T-262  P.011/018  F-110

The Certificate Holder should be:
RCR Holdings I, LLC
Attn: Jeffrey Slatoff, PH (561) 391-6570, FX (561) 391-2423
980 North Federal Highway, Suite 200
Boca Raton, FL 33432

The Additional Insureds shall be as follows:
Compson Associates, Inc., Renaissance Commons Realty, Inc., RCR Holdings II, LLC
Compson Associates of Boynton, LLC, Compson Associates of Boynton II, LLC,
and the owners, officers, managers, members, affiliates, and employees of the
companies listed above.

c. **Cancellation.** Contractor agrees to notify Developer within 24 hours in the event
that the required amounts of insurance are canceled or reduced. The certificate of
insurance must contain the provision that "The coverages afforded shall not be
canceled or materially changed until after at least thirty (30) days written notice, by
certified mail, return receipt requested, has been given to certificate holder."

d. **Failure to Maintain Insurance.** If Contractor fails to procure and maintain
insurance in an amount at least equal to the amounts set forth in paragraphs 2 and 4,
Developer has the option to (i) cancel any contract that Contractor has with
Developer, (ii) have the right, but not the obligation, to procure and maintain such
insurance for and in the name of the Contractor and the Contractor shall pay the cost
of the insurance, and (iii) pursue any other legal remedy available to Developer.
These options are cumulative rather than exclusory.

3. **Subcontractor Insurance Coverages Required.** The Contractor shall require its
subcontractors to procure and maintain during the progress of their portion of the Work the
following types and minimum amounts of insurance. This insurance shall provide coverage at
least in the minimum limits as follows:

a. **Insurance Coverages**

*Worker's Compensation Insurance Certificate* - Florida Statutory limits under all
circumstances; and

*Commercial Automobile Liability* - $500,000 Combined Single Limit; and

*Commercial Liability* - $1,000,000 per occurrence, $2,000,000 aggregate amount,
$2,000,000 for products and completed operations; and

*Umbrella Excess Liability* - $2,000,000 per occurrence, $2,000,000 aggregate; and

*Subcontractor's Commercial General Liability, Comprehensive Automobile
Liability, and Umbrella/Excess Liability Policies* - shall be endorsed to add
Contractor and Owner as additional insured with respect to the performance of
Subcontractor's operations under the Subcontract Agreement and the Contract
Documents.

*Exhibit "G", Attachment No. 1*      *June 22, 2005*                              *Page 2 of 3*

27-Jun-2006 04:36pm From-Katz Barron Squitero & Faust, P.A. 305 358 0329 T-262 P.012/013 F-118
FROM: (LEGAL)

b. **Certificate of Insurance**

The Additional Insureds shall be as follows: RCR Holdings II, LLC
Compson Associates, Inc., Renaissance Commons Realty, Inc.,
Compson Associates of Boynton, LLC, Compson Associates of Boynton II, LLC,
and the owners, officers, managers, members, affiliates, and employees of the
companies listed above.

c. **Cancellation.** The certificate of insurance shall provide as follows: "The coverages
afforded shall not be cancelled or materially changed until after at least thirty (30)
days written notice, by certified mail, return receipt requested, has been given to
certificate holder."

d. **Failure to Maintain Insurance.** If a subcontractor fails to procure and maintain
insurance in the minimums set forth above, Contractor may procure and maintain
insurance on behalf of the subcontractor. If Contractor fails to procure and maintain
insurance in the minimums set forth above on behalf of a subcontractor, Developer
has the option to (i) cancel any contract that Contractor has with Developer" (ii) have
the right, but not the obligation, to procure and maintain such insurance for and in the
name of the subcontractor and the Contractor shall pay the cost of the insurance, and
(iii) pursue any other legal remedy available to Developer. These options are
cumulative.

e. **Insurance Required for Access to Jobsite.** Developer has the right, but not the
obligation, to refuse entry to the jobsite of employees of any subcontractor that has
not complied with the Insurance requirements.

4. **Review of Insurance Policies.** Developer's counsel may review such policies and shall
determine in good faith whether the policies provide the required Insurance coverages as
set forth in paragraphs 2 and 3. Developer shall have 15 days from receipt of each policy
to notify Contractor if the coverages provided by the policies do not meet the insurance
requirements set forth in paragraphs 2 and 3, and Contractor (or a subcontractor) shall
have 15 days from such notice to correct and/or modify such insurance coverages.

5. **No Liability to Developer.** Contractor agrees that Developer accepts no responsibility
for any harm to Contractor caused by Contractor's or a subcontractor's failure to procure
adequate insurance.

Agreed and Accepted:
Coastal Construction of South Florida
dba Coastal Condominiums
BY:

Name _____ (Date)

DANIEL E. WHITEMAN, PRES/CEO
Title _____

RCR Holdings I, LLC
BY:

Name _____ (Date)

6-27-05

Title _____

Received 27-Jun-2006 03:36pm From-305 487 8229 To-Katz Barron Squitero Page 009

JUN-27-2005 04:06PM FAX:                    ID:                    PAGE:013 R=95%

Jun. 24. 2005 12:20PM       **Exhibit "H"**       No. 4843   P. 2

## CONTRACT AGREEMENT AND GENERAL CONDITIONS BETWEEN
## GENERAL CONTRACTOR AND SUBCONTRACTOR
### CONTRACT NO: 04-

| | | |
|---|---|---|
| Contractor: | Coastal Construction of South Florida, Inc<br>d/b/a/ Coastal Condominiums<br>790 N.W. 107th Avenue, Suite 305<br>Miami, FL 33172 | Contract Date:<br><br>Subcontractor: |
| GC License #: | CG-C048420 | Contact:<br>Phone No:<br>Fax No:<br>Cost Code: |
| Project No: | 04- | |
| Project: | | Bond Required:  ☐ Yes  ☐ No |

| Contract Price: $ .00 | ( Hundred Thousand and 00/100 dollars.)<br>(includes all applicable sales and use tax) |
|---|---|

### ARTICLE 1 - SCOPE

1.1    Subject to the terms and conditions contained herein, Subcontractor agrees to furnish all material, equipment, labor and supervision as required to complete the following described work in connection with the construction of the above referenced project, including but not limited to all work as indicated per attached Exhibits:

    1.11 EXHIBIT "A" – Scope of Work
    1.12 EXHIBIT "B" – Enumeration Pages & Specification Enumeration
    1.13 EXHIBIT "C" – Project Schedule
    1.14 EXHIBIT "D" – General Jobsite Conditions
    1.15 EXHIBIT "E" – Qualifications & Clarifications
    1.16 EXHIBIT "F thru 1" – not used

1.2    Notwithstanding the above mentioned scope of work, terms and conditions, this subcontract is lump sum and includes any and all LABOR AND MATERIAL FOR ALL WORK as required by the plans and specifications and all contract documents inclusive; work will be performed in a workmanlike manner in complete accordance with these plans and specifications and with all applicable codes and regulations, ordinances, rules and orders of any public authority bearing on the performance of the work (and manufacturers suggested installation standards, where applicable). Subcontractor hereby acknowledges that he has received, read and is thoroughly familiar with said plans and specifications and that the methods, sequences and procedures described therein for said work are agreed upon and correct.

1.3    Subcontractor will furnish and pay for all labor, materials, permits, scaffolding, equipment, machinery, tools, apparatus, transportation, all required shop drawings and samples, as part of this contract.

1.4    Subcontractor shall comply with all Federal, State and Local tax laws, Social Security Acts, Unemployment Compensation Acts and Workers Compensation Acts to the extent that they apply to the performance of Subcontractor's work under this contract.

### ARTICLE 2 – COMPLIANCE

2.1.    The Subcontractor maintains that it is an entity duly organized, validly existing and in good standing under the laws of both the state of its formation and the State of Florida.  Subcontractor further affirms that there are no actions, suits or proceedings pending or threatened against it which could, directly or indirectly, adversely affect Subcontractor's performance under the contract.

2.2.    The Subcontractor has carefully examined the Contract Documents, including but not limited to all drawings and specifications, and agrees that the Contract Documents are adequate and sufficient for the performance of the work to be done under this contract.

2.3    Subcontractor acknowledges that he has visited the job site and has become familiar with all existing conditions or conditions affecting and governing the construction of the project and shall furnish all labor, materials, equipment or other items, facilities and services for the proper execution and completion of the Work under this contract.

2.4    Subcontractor can and will perform all work required herein, in a timely fashion, in accordance with the project construction schedule as provided by Coastal Condominiums, and so as not to delay the overall progress of the job or the work of any other subcontractor.

2.5.    The Subcontractor has and will maintain adequate skilled employees, workforces, materials, machinery and tools necessary and adequate to accomplish the Work in accordance with Contractor's progress schedule.

### ARTICLE 3 - INSURANCE

3.1    Subcontractor shall secure and pay for insurance coverage as enumerated below.  All coverages shall be written on an occurrence based form. An original certificate of insurance in a form acceptable to Contractor shall be delivered to Contractor within ten (10) days from the full execution hereof, or prior to commencement of any Subcontract Work hereunder, whichever occurs first.  The certificate of insurance shall evidence insurance coverage at least in the minimum limits as follows, or as may be further increased in connection with the requirements of the Contract Documents:

    Workman's Compensation Insurance Certificate - Florida Statutory limits under all circumstances.
    Commercial Automobile Liability - $500,000 combined single limit.
    Commercial Liability - $1,000,000 per occurrence, $2,000,000 aggregate amount, $2,000,000 for products and completed operations.
    Umbrella Excess Liability $2,000,000 per occurrence, $2,000,000 aggregate.

Subcontractor's Commercial General Liability, Comprehensive Automobile Liability, and Umbrella/Excess Liability policies shall be endorsed to add Contractor and Owner as additional insured with respect to this Subcontractor's operations under this Subcontract Agreement and the Contract Documents.  Such insurance afforded to Contractor and Owner as additional insured under Subcontractor's policies shall be written on a per project aggregate basis, primary insurance and not excess over, or contributing with, any insurance purchased or maintained by Contractor or Owner. The completed operations coverage shall be maintained by Subcontractor for two (2) years after the Project completion date.  The certificate of insurance must contain the provision that: "The coverages afforded shall not be cancelled or materially changed until after at least thirty (30) days written notice, by certified mail, return receipt requested, has been given to Contractor".

CONTRACT AGREEMENT BETWEEN GENERAL CONTRACTOR AND SUBCONTRACTOR – May 30, 2003

Initial _____

## ARTICLE 4 - PAYMENTS

4.1     Payment requests for completed work must be submitted on Coastal Condominium's Subcontractor's Application for Payment, along with Subcontractor's Affidavit on or before 20th of the month to be paid by or around the 15th of the following month as further conditioned in other provisions of this contract. (Sample of Coastal Condominium's Subcontractor's Application for Payment and Subcontractor's Affidavit are attached herein). The Contractor shall retain TEN percent ( 10 %) retainage from every draw request from Subcontractor. Retainage must be billed separately at the end of the project.

4.2     Subcontractor shall submit, prior to its first payment request, a detailed Schedule of Values, a detailed schedule of suppliers, material men and sub-subcontractors to be used in the performance of this contract.

4.3     Subcontractor agrees and warrants that it has paid for all material , equipment and labor used in, or in connection with, the performance of its work under this contract through the period covered by payments received from the Contractor and that it shall furnish satisfactory evidence to Contractor of such payments as further provided for herein.

4.4     Subcontractor shall provide release of lien for materials and work performed under this contract in accordance with the requirements of Chapter 713, Florida Statutes. Further, should any mechanic's lien be filed by any supplier, materialman or sub-subcontractor of Subcontractor, Subcontractor shall immediately cause such lien to be discharged or transferred to bond and Subcontractor shall protect, defend, indemnify and hold both Contractor and Owner harmless in respect of such lien.

4.5     Subcontractor's right to final payment is subject to the following provisions:

a)  Subcontractor having given evidence satisfactory to Contractor that the project is free from lien and other claims arising by reason of the Work performed by Subcontractor.

b)  Subcontractor having satisfactorily completed any repairs to the Work required under this contract including but not limited to any and all contract related items regarding Contractor or Owner/Architect punchlists.

c)  Delivery to Contractor at the time of final payment, final releases of lien, affidavits and acknowledgements of payments for material, labor and equipment under this contract.

d)  Delivery to and acceptance by Contractor of all required close-out documents including but not limited to as-built drawings, guaranties, operation and maintenance manuals and the signed off completed punch list.

## ARTICLE 5 - GENERAL CONDITIONS

5.1     There will be no change orders to this contract unless the Owner or Contractor specifically adds to or changes the scope of work, as described herein. All Subcontractor change orders must be in writing and approved and signed by Contractor. Change orders that are not approved and signed by Contractor shall not be valid.

5.2     Jobsite is to be kept clean at all times. At the end of each work day, subcontractor must pick up all trash and scrap material he has created at interior and exterior of jobsite, and dispose in dumpster provided by Coastal Condominiums. Additionally, all interior floors must be broom swept.

5.3     All slab, ceiling, wall penetrations, etc., must be patched in accordance with all applicable codes, including fire codes, as work progresses, so as not to hold up completion of any work.

5.4     All work performed and materials supplied under this subcontract will be warranted by this Subcontractor for a period of one year (or longer as required by the Specifications and Contract Documents) from the Contractor's receipt of the latest of the following; 1) All Final Inspections, 2) Certificate of Occupancy or 3) Final Acceptance of Owner, Architect and Contractor. Subcontractor warrants that all material used shall be new and that all work performed under this contract shall be of the highest quality, free from faults and defects and in conformance with the Contract Documents. Subcontractor shall insure that all manufacturers warranties for equipment shall remain in effect for the length of time as warranted by Manufacturer, or as required by the Contract Documents, whichever is longer.

5.5     Subcontractor shall submit shop drawings, submittal data, brochures and samples to Contractor in as many duplicate copies as Contractor may require and no later than ten (10) days after notification therefore from Contractor.

5.6     Subcontractor agrees to immediately prepare for performance of the Work hereunder and to be prepared to begin such work as soon as instructed by Contractor and shall commence work upon receipt by Contractor of a notice to commence from Owner or other specifically written direction by Contractor.

5.7     If, in the opinion of the Contractor, the Subcontractor falls behind in the progress of the Work to be performed hereunder, the Contractor may direct the Subcontractor to take such steps as the Contractor deems necessary to improve the rate of progress, including requiring Subcontractor to increase the number of shifts, overtime operations, days of work, amount of workman and/or amount of equipment and to submit for approval a schedule demonstrating the manner in which the required rate of progress may be regained, all without any additional costs whatsoever to Contractor. Failure of Subcontractor to immediately comply with Contractor's scheduling requests provided herein shall be considered to be an event of material default hereunder and Contractor may assert any and all remedies as provided herein. Should Subcontractor in any way cause delay to the Contractor, any other subcontractor on the project or to any portion of the work described in the prime contract, Subcontractor shall be liable to Contractor for any and all damages sustained by Contractor as a result thereof, including, but not limited to, all consequential damages and costs of continued supervision, job overhead, insurance, project facilities and other ongoing fixed costs. In addition, in the event Owner shall assess any delay damage against Contractor, either pursuant to a valid liquidated damage provision in the prime contract or otherwise, Contractor shall have the right and option to deduct any and all such assessments that are directly attributable to delays caused by Subcontractor from any amounts that may be owing to Subcontractor under this agreement. Permitting Subcontractor to continue after the time to complete the work has expired shall not be construed as a waiver of damages from noncompliance with time requirements provided herein.

5.8     Contractor shall not be liable to the Subcontractor for delay to Subcontractor's work by act, neglect or default of the Owner or the Architect or the Engineer, or other Subcontractor's or by reason of fire or other casualty, or on account of riots, or strikes, or other combined action of the workmen or others, or on account of any acts of God, or any other cause, beyond Contractor's control, or on account of any circumstances caused or contributed to by the Subcontractor. In any event, Contractor's liability for delays shall expressly exclude consequential or incidental damages sustained by Subcontractor for any other party.

5.9     Subcontractor shall maintain a competent and experienced superintendent or foreman on the project at all times, with authority to carry out directives of the Contractor relating to the Subcontractor's work and responsibility. Subcontractor must at all times maintain, keep and supply adequate tools, appliances, equipment and material and employ a sufficient number of properly skilled workmen to efficiently and promptly execute all work required hereunder as requested by Contractor.

5.10    It is specifically agreed by Subcontractor that a material matter of inducement and consideration for the award of this subcontract by Contractor, is the Subcontractor's agreement that it will not look to the Contractor, or its surety, for payments hereunder unless and until the Contractor has received payment for Subcontractor's work from the Owner and, further, that said payment by the Owner is a specific condition precedent to Subcontractor's right to payment by the Contractor or its surety.

5.11    Subcontractor agrees not to post signs anywhere on the jobsite premises.

5.12    Subcontractor agrees that they shall not look to Contractor for additional financial compensation should subsurface or otherwise concealed or unknown physical conditions which differ materially from the contract documents or conditions of an unusual nature be uncovered or encountered. Subcontractor agrees to proceed as directed by Contractor without delay to the project schedule to correct, remove, alter and remedy such concealed

CONTRACT AGREEMENT BETWEEN GENERAL CONTRACTOR AND SUBCONTRACTOR – May 30, 2005

physical conditions or unknown physical conditions in a manner in which Subcontractor provides a complete scope of work acceptable to Owner, Architect and Contractor.

8.13    Subcontractor agrees to comply with all municipal, state and federal laws and ordinances, all federal OSHA and US or international trade or patent agreements and such other laws as may be applicable, and to comply with all other laws and ordinances and to reimburse and save Coastal Condominiums harmless from any annoyances and fines having reference to the work and to give proper authorities all requisite notices relating to the work and to procure and pay for all necessary official licenses, fees, royalties, or permits for carrying on the work described herein. Subcontractor shall defend all suits or claims for infringement of any patent rights arising out of the work. Subcontractor shall correct, at its own cost and expense, any violations thereof resulting from performance of the work. Subcontractor shall furnish such proof as Coastal Condominiums may request showing compliance and correction of violations.

8.14    Subcontractor shall take all reasonable safety precautions with respect to its Work and to comply with all applicable laws, ordinance, rules, regulations, etc. relating to the safety of persons or property. Further, Subcontractor shall report any injury on the job site to the Contractor immediately upon the occurrence of said injury. In addition, the Subcontractor shall promptly properly complete, duly execute and deliver to the Contractor a written report of the accident on a form furnished by or acceptable to Contractor. Subcontractor shall simultaneously deliver to the Contractor a true, correct and complete copy of any and all reports and other documents prepared by or on behalf of Subcontractor in connection with the accident or occurrence at the time of delivery of such report or other document to any of Subcontractor's insurance companies or their agents or representatives. Failure to comply with Contractor's directives regarding safety shall be cause for the Contractor, at his discretion, to cause Sub-Contractor's forces to vacate the project site until compliance is accomplished. In the event such action becomes necessary, any delays to the project as a result shall become the responsibility of the Sub-Contractor under the terms and conditions of this agreement.

8.15    General Contractor, in its sole discretion, may prepare a monthly punchlist of unacceptable work items and require all items to be corrected as a strict condition to the Subcontractor submitting and General Contractor processing Subcontractor's monthly Application for Payment. General Contractor's monthly punchlist may include items of work that, in the General Contractor's opinion, have not been completed in a timely manner and/or are behind the construction schedule as determined by the General Contractor. Subcontractor shall remain responsible for the correction of any defective or nonconforming work whether or not specifically noted on General Contractor's monthly punchlist.

8.16    In consideration of the specific sum of One Thousand ($1,000.00) Dollars and other specific consideration, all of which is included in the Contract Price and the receipt and sufficiency of which the Subcontractor, hereby acknowledges, Subcontractor shall, on behalf of itself, and its respective agents and employees, to the fullest extent permitted by law, protect, defend, indemnify and hold Contractor and Owner, and their respective agents, partners, officers, directors, attorneys, employees and representatives harmless from and against all liabilities, claims, damages, losses and expenses (including but not limited to, court costs and attorneys' fees incurred through all levels of proceedings and in bankruptcy) of every kind and nature, arising out of, in connection with or resulting from the failure of Subcontractor to perform, and/or by or comply with any of the provisions of the Agreement, or arising out of, in connection with or resulting from the intentional wrongful act or negligent act or omission of Subcontractor, its sub-contractors, vendors or anyone directly or indirectly employed by any of them while performing the Subcontractor's work hereunder or delivering materials to the Project site. The indemnification obligations of Subcontractor shall not be limited in any way by any limitations on the amount or type of damages, compensation or benefits payable by or for Subcontractor under worker's compensation acts, disability benefit acts or other employee benefit acts, except as otherwise provided by the laws of the State of Florida or any other laws having jurisdiction. The obligations expressed in this paragraph shall also be the obligations of the subcontractor's surety under and bond(s) provided herein. The provisions of this Section shall survive the expiration or sooner termination of this Agreement.

8.17    Subcontractor shall be fully responsible, financially and otherwise, for any loss incurred by Owner, Architect, Contractor, or any and all other parties in the event of theft, accidental damage, vandalism or by any means whatsoever by any employee, representative, contracted labor delivery personnel or their agents, suppliers, or sub-subcontractor of Subcontractor. Further, Subcontractor shall provide compensation to the damaged party available to 72 hours of written notification from Contractor of loss, regardless of subcontractor's method of compensation to the damaged party available to Contractor, whether insurance or otherwise. In the event Subcontractor fails to compensate the Owner, Architect, Contractor or other parties, Contractor, at its sole discretion, shall have the right to deduct the dollar amount of the loss from any monies or other compensations due or forthcoming to the Subcontractor under the terms of this Agreement.

8.18    Subcontractor is responsible for providing a secure storage area for his own materials. Contractor will not be responsible for any theft, vandalism or damages of any kind to Subcontractor's tools, equipment or materials.

8.19    Subcontractor shall be bound to Contractor by the terms of this Agreement and, to the extent that the provisions of the Contract Documents between the Owner and Contractor apply to the Work of the Subcontractor, the Subcontractor shall assume toward the Contractor all the obligations and responsibilities which the Contractor, by said Contract Documents, assumes towards the Owner and the Architect; provided, however that where any provision of the Contract Documents between Owner and Contractor is inconsistent with any provision of this Agreement, this Agreement shall govern as between Contractor and Subcontractor. At the Subcontractor's request, Contractor shall make available, copies of the Contract Documents to which Subcontractor shall be bound.

8.20    Subcontractor's Project Superintendent shall attend all weekly project meetings and any and all other project related meetings as required by Contractor. In addition, at Contractor's request, Subcontractor's principals (Owner(s), President, Vice President and all other persons) as required by Contractor shall attend all project related meetings as scheduled by Contractor.

8.21    Contractor and Sub-Contractor for themselves, their heirs, successors, executors, administrators and assigns, do hereby agree in full performance of the covenants of this agreement and agree that the provisions of this agreement and all rights and remedies provided herein shall be construed under and governed by the laws of the State of Florida. In the event of suit by the Contractor or its surety against the Sub-Contractor or its surety or those with whom he deals on behalf of this agreement, or suit by the Sub-Contractor or its surety or those with whom he deals on behalf of this agreement against the Contractor or its surety, then the venue of such suit shall be in Dade County, Florida and the Sub-Contractor hereby waives for itself, its surety or those with whom he deals on behalf of this agreement whatever rights it may have in the selection of venue. Sub-Contractor and its surety do hereby further agree that the provisions concerning venue as contained herein shall be specifically binding upon them, notwithstanding the existence of any contrary venue provision which may be contained in any surety bond delivered to the owner by Contractor and/or its surety.

## ARTICLE 9 - CHANGES

9.1    Coastal Condominiums may, without invalidating the agreement or any bond given hereunder, order extra and/or additional work, deletions, or other modifications to the work, such changes to be effective only upon written order of Coastal Condominiums. Any adjustment to the subcontract sum or to the time for completion of the work shall be made in accordance with the Contract Documents. In the event that the Subcontractor fails to submit a quotation within the time limit required Coastal Condominiums, subcontractor shall accept the decision of Coastal Condominiums for the value of the work. Notwithstanding any inability to agree upon any adjustment or the basis for a in adjustment, Subcontractor shall, if directed by Coastal Condominiums nevertheless proceed in accordance with the order and the subcontract sum shall be adjusted as reasonably determined by Coastal Condominiums with any dispute to be resolved after the completion of the work. If requested, by Coastal Condominiums, the Subcontractor shall perform extra work on a time and material basis. The Subcontractor shall not receive payment for additional work or work that deviates from the Contract Documents performed without a written authorization from Coastal Condominiums executed prior to the commencement of any such work.

CLC    initial____

· Jun. 24. 2005 12:22PM                                             No. 4843   P. 5

6.2     The value of the work to be changed, added or deleted shall be determined by the Contract Documents or by one or more of the following methods or combinations thereof as Coastal Condominiums may elect: (1) mutual acceptance of a lump sum with properly itemized costs; (2) unit prices stated in the Contract Documents or subsequently agreed upon (unit price shall be deemed to include an allowance for all of Subcontractor's direct and indirect costs, including without limitation, office or shop expense, overhead, profit and bond); or (3) actual field costs incurred in performance of the changed work, plus allowance for overhead, supervision and profit as follows:

6.2.1     Actual field cost shall mean costs necessarily incurred in the proper performance of the work and paid by Subcontractor at rates not higher than the standard paid in the locality of the project (except with prior consent of Coastal Condominiums) defined as follows:

6.2.2     Wages paid for labor in the direct employ of Subcontractor in performance of the work plus a payroll mark-up, acceptable to Coastal Condominiums, to cover all overhead items applicable to payroll, such as insurance, taxes, FICA, workers compensation, unemployment taxes and fringe benefits.

6.2.3     Net cost of all materials, supplies and equipment used in or incorporated in the work.

6.2.4     Third party rental charges of all necessary machinery and equipment, exclusive of hand tools, used in performing the changed work, including installation, minor repairs and replacements, dismantling, removal, transportation and delivery costs thereof at rental charges consistent with those prevailing in the locality of the project.

6.3     No additive change orders will be requested by Subcontractor unless the Owner or Architect request changes, in writing, which add to the scope of work defined herein. Subcontractor's combined overhead and profit for changes will be computed on the following basis for all revisions to the subcontract sum:

6.3.1     Architect/Owner initiated changes: The maximum allowance for combined overhead and profit added to itemized costs under a lump sum proposal or to actual field costs shall be the lesser of (1) 15% or (2) the maximum percentage allowance permitted in the Contract Documents for changed or extra work less an allowance to COASTAL CONDOMINIUMS for overhead and profit on such work, or (3) the maximum allowed by the Architect/Owner, less an allowance to COASTAL CONDOMINIUMS for overhead and profit on such work.

6.3.2     Subcontractor initiated change order/backcharge related to other subcontractors: Zero percent (0%) of the actual cost of the charge.

6.3.3     Contractor initiated changes: Zero percent (0%) of the cost of the changes.

6.4     Coastal Condominiums shall have the right to inspect, copy and audit the books and records of Subcontractor or any sub-subcontractor making claim for reimbursement for actual costs in order to verify the accuracy and allowability of all cost claimed.

6.5     All changes, additions or deletions to work ordered in writing by Coastal Condominiums shall be deemed part of the work hereunder and shall be performed in compliance with all provisions of the Contract Documents.

## ARTICLE 7 - ASSIGNMENT

7.1     Neither any payment herein provided to be paid to Subcontractor, nor any other right or interest of Subcontractor hereunder shall be assigned or transferred without Subcontractor first having received the expressed, written consent of Contractor. In the event Contractor shall agree to any such transfer or assignment, Contractor specifically reserves the right to renegotiate or to add any additional provisions as may be necessary under the circumstances and under no circumstances shall any such transfer or assignment relieve Subcontractor of any of its obligations under this agreement.

## ARTICLE 8 - FAILURE TO PERFORM

8.1     Should the Subcontractor fail to do or perform work required hereunder or in any other manner breach or fail to perform any of its obligations and understandings herein, thereby in the opinion of the Contractor causing or threatening to cause delay in general progress of the building, structure or project, Contractor shall have the right to any or all of the following remedies or courses of action:

        a.  Investigate the cause of such breach or failure and expedite same in any way or manner whatsoever, or
        b.  Take charge of and complete the performance of this agreement and the work provided for herein, or
        c.  Declare this contract to be breached by Subcontractor by twenty-four (24) hours notice to him as provided herein and renegotiate and re-execute contract or contracts for the completion of the work required to be done under this agreement with such persons, firms or corporation as shall be necessary in the opinion of Contractor. All losses, damages, and expenses, including interest, attorneys fees, court costs, appellate attorneys fees and appellate court costs in the prosecution of defense of any action or suit incurred by or resulting to Contractor in the above account, or by reason of any other breach of failure by Subcontractor hereunder, shall be borne by and charged against Subcontractor and its surety, including a ten (10%) percent overhead and a ten (10%) percent profit, and shall be the damages for breach of this agreement, and Contractor may recover on the bond(s) previously described, if any, and both Subcontractor and its surety, if any, agree to pay Contractor such losses, damages, expenses, interest, attorney fees, court costs, appellate attorneys fees, and appellate court costs, and including a ten (10%) percent overhead and a ten (10%) percent profit. Subcontractor further agrees that a breach of any other agreement between Contractor and Subcontractor pertaining to this or any other construction project shall be and constitute a material breach under this agreement, thereby enabling Contractor to assert all its rights and remedies hereunder.

8.2     For any and all work performed by Subcontractor, Subcontractor shall supply Contractor with submittals, shop drawings, etc. and receive written approval from Contractor prior to the purchasing of materials, fabrication or production and the performance of any work whatsoever. Should the Subcontractor commence with the purchasing of materials, fabrication or production or performance of any type of work, incurring any costs prior to Contractor written approval of required submittals, shop drawings, etc., then it shall be considered that Subcontractor has done so at its own risk and shall not look to the Contractor or as surety for any compensation, financial or other wise.

8.3     Should it become necessary for Contractor or anyone on Contractor's behalf, to incur any costs and/or expenses, whether directly or indirectly, including, but not limited to attorney's fees, collection fees, court costs, mediation or arbitration expenses, or appellate attorney's fees, in connection with any claim or demand asserted by Subcontractor, or as a result of Subcontractor's action or omission, Subcontractor and its surety, if any, agrees to pay all such costs and/or expenses.

## ARTICLE 9 - TERMINATION

9.1     The Contractor reserves the right to terminate this agreement and all rights and obligations hereunder, with or without cause and at Contractor's sole discretion, at any time up to seven (7) days prior to the scheduled actual commencement of the work by Subcontractor. The Contractor further reserves the right, at any time after actual commencement of the Work by Subcontractor, to terminate this Agreement upon three (3) days' written notice to the Subcontractor. Upon the giving of any such notice to terminate to Subcontractor, Contractor shall have the right to take possession of any materials, equipment or other items related to the Work on the job site. In the event Contractor terminates this agreement without cause prior to commencement of work as further conditioned in other provisions of this agreement, then Contractor shall reimburse Subcontractor for any reasonable out of pocket costs incurred by Subcontractor for the actual preparation of performance of work under this agreement. In the event Contractor shall terminate this agreement after commencement of the work and whether with or without justifiable cause, damages recoverable by Subcontractor, if any, shall be strictly limited to compensation to Subcontractor for services performed through the date of such termination, subject to off set for damages, delays and costs to Contractor and other monetary loss to Contractor caused by said termination.

## ARTICLE 10 - APPROVAL OF WORK

10.1     All work is to be performed subject to the final approval of the Owner, Architect/Engineer (other design professionals if applicable) and Contractor at their sole discretion as to the performance of the work in accordance with the plans and specifications  and the true construction and

**Page 4 of 5**

CTC   Initial_____

Jun. 24. 2005 12:23PM                                                                No. 4843   P. 6

meaning of the plans and specifications shall be final. Subcontractor shall conform to and abide by any additional specifications, drawings or explanations furnished by Architect or Engineer to illustrate the work to be performed.

10.2    All work and/or materials which are determined by the Owner, Architect/Engineer (other design professionals if applicable) or Contractor to be defective or deficient in any manner shall be repaired, remedied, removed and/or replaced by the Subcontractor in the manner specified by the Owner, Architect/Engineer (other design professionals if applicable) or Contractor, at the sole cost and expense of the Subcontractor. If Subcontractor fails to so repair defective work within a time specified by the Contractor, then Contractor may cause the defective work or materials to be repaired at the expense of the Subcontractor.

**ARTICLE 11 - PRIOR COMMENCEMENT**

11.1    In the event any work described herein shall be commenced or in any part undertaken by Subcontractor without its having first executed this agreement, and said Subcontractor shall have received a copy of this Subcontract Agreement, then Subcontractor and Contractor until the full execution hereof, shall be deemed to have entered into an oral agreement, fully binding upon said parties and containing the identical provisions as are contained herein.

**ARTICLE 12 - THE AGREEMENT**

12.1    Subcontractor hereby acknowledges and agrees that Subcontractor will enter into any agreements which may be required by any construction lender for the project including, without limitation, (a) the Subcontractor's agreement to continue the Work, (b) the subordination of Subcontractor's lien rights to the lien of the construction mortgage, (c) the escrowing of releases of lien, (d) the issuance of joint checks and (e) such other requirements as are generally required by construction lenders.

12.2    This subcontract is contingent upon Contractor's receipt of a fully executed Agreement between Owner and Contractor and all conditions and provisions of said Agreement having been met.

12.3    This contract, including the terms and conditions contained herein, embodies the entire agreement between the parties and no other agreement, instructions or papers, oral or otherwise except those set forth in this agreement shall be deemed to exist or bind any of the parties hereto relating to the subject matter hereof.

12.4    It is understood by Subcontractor that time is of the essence in the performance of the Work under this contract.

**ARTICLE 13 - LICENSING**

13.1    It is specifically agreed by the Subcontractor that upon execution of this Contract Agreement, he must submit a copy of his appropriate County Occupational License along with a State of Florida Specialty Contractors License or Certificate of Competency (as may be applicable), to Coastal Condominiums. Subcontractor further agrees to keep all licenses current throughout the duration of the project. Failure to do so releases Coastal Condominiums and the Owner from all liability or responsibility for any payment whatsoever that may be due or become due hereunder.

**ARTICLE 14 - SPECIAL PROVISIONS**

14.1    Subcontractor shall provide Coastal a Payment and Performance bond(s) payable to Coastal, in an amount equal to the contract amount as specified above or as subsequently changed, on a form and executed by a surety satisfactory to Coastal undertaking to insure to Coastal the full and faithful performance of all obligations and undertakings contained herein, and the payment of all labor and materials supplied by or through Subcontractor hereunder. The original bond(s) shall be delivered to Coastal within ten (10) days from the full execution hereof, but in any event, prior to commencement of any work hereunder by Subcontractor. All terms, conditions and obligations herein defined are specifically incorporated by reference into the said bond(s) as though fully set forth therein. Should the surety, at any future date become insolvent or otherwise in the opinion of Coastal to be unable to financially support the bond, Subcontractor will within ten (10) days from the receipt of request of Coastal, deliver a replacement bond to Coastal in full conformance with this agreement. The cost of the bond is included in the subcontract amount.

14.2    Subcontractor agrees that it will not, under any circumstances, allow any person to perform any work on the project, either on or off site, on behalf of subcontractor who is not covered by subcontractor's worker's compensation insurance, in compliance with Sections 440.10 and 440.38, Florida Statutes, which are expressly incorporated herein by reference. Failure to comply with this requirement shall constitute a material breach of the Subcontract Agreement by subcontractor.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.

SUBCONTRACTOR:

COASTAL CONSTRUCTION OF SOUTH FLORIDA, INC
d/b/a COASTAL CONDOMINIUMS

By: _____

Print Name: _____

Title: _____

Date: _____

By: _____

Print Name: _____

Title: _____

Date: _____

CONTRACT AGREEMENT BETWEEN GENERAL CONTRACTOR AND SUBCONTRACTOR – May 30, 2003

FJun. 24. 2005°11:55AM                                                    No. 4841    P. 7P.82

Exhibit "I"

# THE AMERICAN INSTITUTE OF ARCHITECTS



AIA Document A311

Bond No.

# Performance Bond

KNOW ALL MEN BY THESE PRESENTS: that

*Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums, 790 NW 107 Ave. #308, Miami, FL  33172*

as Principal, hereinafter called Contractor, and  (Here insert full name and address or legal title of Surety)

*Arch Insurance Company, 5601 Mariner St. #220, Tampa, FL  33609*

as Surety, hereinafter called Surety, are held and firmly bound unto   (Here insert full name and address or legal title of Owner)

*RCR I Holdings, LLC, 980 N. Federal Highway, Suite 200, Boca Raton, FL  33432*

***Please see attached Dual Obligee Rider***
as Obligee, hereinafter called Owner, in the amount of —
*Twenty Eight Million Two Hundred Fifty Thousand and No/100*********                    Dollars ($28,250,000.00 ),

for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS,

Contractor has by written agreement dated *July 27, 2004* , entered into a contract with Owner for
(Here insert full name, address and description of project)

*SAN RAFAEL AT RENAISSANCE COMMONS*

in accordance with Drawings and Specifications prepared by     (Here insert full name and address or legal title of Architect)
*Mouriz, Salazar & Associates, Inc., 7695 S.W. 104ᵗʰ Street, Miami, FL  33156*

which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

AIA DOCUMENT A311 • PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND • AIA ®
FEBRUARY 1970 ED • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006

1

C:\DOCUME~1\laura\LOCALS~1\Temp\6838685.doc

Jun. 24. 2005 11:56AM                                    No. 4841    P. 3, 03

# PERFORMANCE BOND

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

The Surety hereby waives notice of any alteration or extension of time made by the Owner.

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligation thereunder, the Surety may promptly remedy the default, or shall promptly

1) Complete the Contract in accordance with its terms and conditions, or

2) Obtain a bid or bids for completing the Contract in accordance with its term and conditions, and upon determination by Surety of the lowest responsible bidder, or if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as work progresses (even though there should be a default or a succession of defaults

under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or successors of the Owner.

*The Warranty Obligations of the Surety under this Bond is limited to one (1) year after issuance of Certificate of Occupancy.*

DRAFT

Signed and sealed this          day of                                    2004

Coastal Construction of South Florida, Inc.
d/b/a Coastal Condominiums
(Principal)

_____ (Title)
(Witness)                                                                (Seal)

Arch Insurance Company
(Surety)

_____ (Title)
(Witness)                               (Title) Charles J. Nielson, Attorney-In-Fact & Resident
                                        Agent          (Seal)

AIA DOCUMENT A311 • PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND • AIA ®
FEBRUARY 1970 ED • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006          2

Jun. 24. 2005 11:56AM                                        No. 4841   P. 9/104

# RIDER ADDING
## ADDITIONAL OBLIGEE

Rider to be attached to and form a part of Bond Number _____ , dated the _____ day of
_____ , 19 _____ , executed by Arch Insurance Company (the "Surety") on

behalf of
**Coastal Construction of South Florida, Inc.**                    (the "Principal")
**d/b/a Coastal Condominiums**

in favor of
**RCR I Holdings, LLC**

                                                                      (the "Obligee")

WHEREAS, the Principal has by written agreement dated ___July 27___ , 19 __2004__ , entered into

a contract (the "Contract") with the Obligee for

**San Rafael at Renaissance Commons**                                      ; and

WHEREAS, upon the request of the Principal and Obligee the attached bond is hereby amended to add

**Wachovia Bank, N.A.**                                        as additional Obligee.

PROVIDED, HOWEVER, there shall be no liability under this bond to the Obligees, or either of them
unless the said Obligees, or either of them, shall make payments to the Principal or to the Surety, should it arrange
for or undertake the completion of the Contract upon default of the Principal, strictly in accordance with the terms
of the Contract; and otherwise satisfy all terms and conditions and perform all of the other obligations to be
performed under the Contract at the time and in the manner therein set forth; all of the acts of one Obligee being
binding on the other.

In no event shall the aggregate liability of the Surety to either or to both Obligees exceed the penal sum of
the attached bond, nor shall the Surety be liable except for a single payment for each single breach or default. At
the Surety's election, any payment due to either Obligee may be made by its check issued jointly to both.

This change is effective this _____ day of _____ , 19 _____ .

The attached bond shall be subject to all of its terms, conditions and limitations except as herein modified.

Signed, sealed and dated this _____ day of _____ , 19 _____

WITNESS or ATTEST:                          **Coastal Construction of South Florida   Inc.**
                                            **d/b/a Coastal Condominiums**
                                                        (Principal)

_____            By _____ (Seal)
                                                Name:
_____                Title:

                                            **Arch Insurance Company**

                                            By _____ (Seal)
                                                Attorney-In-Fact & Resident Agent

Accepted:                                           **Charles J. Nielson**
**Wachovia Bank, N.A.**

Name: _____ (Obligee)
Title:

Name: _____ (Obligee)
Title:
Date: _____

Jun. 24. 2005 11:57AM                                          No. 4841    P. 10.12

# POWER OF ATTORNEY

) Know All Men By These Presents:

That the Arch Insurance Company, a corporation organized and existing under the laws of the State of Missouri, having its principal office in Kansas City, Missouri (hereinafter referred to as the "Company") does hereby appoint

Mary C. Aceves, Warren M. Alter, Charles D. Nielson, Charles J. Nielson and Laura Clymer of Miami Lakes, FL (EACH)

its true and lawful Attorney(s)-in-Fact, to make, execute, seal, and deliver from the date of issuance of this power for and on its behalf as surety, and as its act and deed:

Any and all bonds and undertakings

EXCEPTION: NO AUTHORITY is granted to make, execute, seal and deliver bonds or undertakings that guarantee the payment or collection of any promissory note, check, draft or letter of credit.

This authority does not permit the same obligation to be split into two or more bonds in order to bring each such bond within the dollar limit of authority as set forth herein.

The Company may revoke this appointment at any time.

The execution of such bonds and undertakings in pursuance of these presents shall be as binding upon the said Company as fully and amply to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at its principal office in Kansas City, Missouri.

This Power of Attorney is executed by authority of resolutions adopted by unanimous consent of the Board of Directors of the Company on March 3, 2003, true and accurate copies of which are hereinafter set forth and are hereby certified to by the undersigned Secretary as being in full force and effect:

"VOTED, That the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, or the Secretary shall have the power and authority to appoint agents and attorneys-in-fact, and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, recognizances, contracts of indemnity and other writings, obligatory in the nature thereof, and any such officers of the Company may appoint agents for acceptance of process."

This Power of Attorney is signed, sealed and certified by facsimile under and by authority of the following resolution adopted by the unanimous consent of the Board of Directors of the Company on March 3, 2003:

VOTED, That the signature of the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, and the signature of the Secretary, the seal of the Company, and certifications by the Secretary, may be affixed by facsimile on any power of attorney or bond executed pursuant to the resolution adopted by the Board of Directors on March 3, 2003, and any such power so executed, sealed and certified with respect to any bond or undertaking to which it is attached, shall continue to be valid and binding upon the Company.

00ML0013 00 03 03

Printed in U.S.A.

Jun. 24. 2005 11:57AM                                                    No. 4841    P. 11

In Testimony Whereof, the Company has caused this instrument to be signed and its corporate seal to be affixed by their authorized officers, this 24th  day of November  , 20 03  .

Arch Insurance Company

Attested and Certified



Joseph S. Label, Corporate Secretary

Thomas P. Luckstone, Vice President

STATE OF CONNECTICUT   SS

COUNTY OF FAIRFIELD   SS

I Melissa B. Gilligan, a Notary Public, do hereby certify that Thomas P. Luckstone and Joseph S. Label personally known to me to be the same persons whose names are respectively as Vice President and Corporate Secretary of the Arch Insurance Company, a Corporation organized and existing under the laws of the State of Missouri, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they being hereunto duly authorized signed, sealed with the corporate seal and delivered the said instrument as the free and voluntary act of said corporation and as their own free and voluntary acts for the uses and purposes therein set forth.

OFFICIAL SEAL
MELISSA B. GILLIGAN, Notary Public
State of Connecticut
My Commission Expires February 28, 2005

DRAFT

Melissa B. Gilligan, Notary Public
My commission expires 2-28-05

CERTIFICATION

I, Joseph S. Label, Corporate Secretary of the Arch Insurance Company, do hereby certify that the attached Power of Attorney dated November 24, 2003  . on behalf of the person(s) as listed above is a true and correct copy and that the same has been in full force and effect since the date thereof and is in full force and effect on the date of this certificate; and I do further certify that the said Thomas P. Luckstone, who executed the Power of Attorney as Vice President, was on the date of execution of the attached Power of Attorney the duly elected Vice President of the Arch Insurance Company.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the Arch Insurance Company on this  day of  , 20  .



Joseph S. Label, Corporate Secretary

This Power of Attorney limits the acts of those named therein to the bonds and undertakings specifically named therein and they have no authority to bind the Company except in the manner and to the extent herein stated.

Home Office: Kansas City, MO

00ML0015 00 03 03

Page 2 of 2

Printed in U.S.A.

⊬Jun. 24.  2005☞11:56AM                                                    No. 4841   P.  P.27



# THE AMERICAN INSTITUTE OF ARCHITECTS

AIA Document A311 Bond No.

# Labor and Material Payment Bond

THIS BOND IS ISSUED SIMULTANEOUSLY WITH PERFORMANCE BOND IN FAVOR OF THE
OWNER CONDITIONED ON THE FULL AND FAITHFUL PERFORMANCE OF THE CONTRACT

KNOW ALL MEN BY THESE PRESENTS: that **DRAFT**   (Here insert full name and address or legal title of contractor)

*Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums, 790 NW 107 Ave. #308, Miami, FL 33172*

as Principal, hereinafter called Contractor, and,                  (Here insert full name and address or legal title of Surety)

*Arch Insurance Company, 5601 Mariner Street, Suite 220, Tampa, FL 33609*

as Surety, hereinafter called Surety, are held and firmly bound unto     (Here insert full name and address or legal title of Owner)

*RCR I Holdings, LLC, 980 N. Federal Highway, Suite 200, Boca Raton, FL  33432*

\*\*\**Please see attached Dual Obligee Rider*\*\*\*
As Obligee, hereinafter called Owner, in the amount of
*Twenty Eight Million Two Hundred Fifty Thousand and No/100*\*\*\*\*\*\*\*\*                  Dollars  (*$28,250,000.00* ),

for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators,
successors and assigns, jointly and severally, firmly by these presents.

WHEREAS,

Contractor has by written agreement dated     *July 27, 2004*     , entered into a contract with Owner for
(Here insert full name, address and description of project)
*SAN RAFAEL AT RENAISSANCE COMMONS*

in accordance with Drawings and Specifications prepared by     (Here insert full name and address or legal title of Architect)
*Mouriz, Salazar, & Associates, Inc., 7695 S.W. 104ᵗʰ Street, Miami, FL  33166*

which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

AIA DOCUMENT A311 • PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND • AIA ®
FEBRUARY 1970 ED • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006     3

AJun. 24. 2005  11:57AM          No. 4841   P. 8P. 28

# LABOR AND MATERIAL PAYMENT BOND

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1. Claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit.

3. No suit or action shall be commenced hereunder by any claimant:

a) Unless claimant, other than one having a contract with the Principal, shall have given written notice to any two of the following: the Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial

accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

b) After the expiration of one (1) year following the date on which Principal ceased work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

c) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project, or any part thereof, is situated, and not elsewhere.

4. The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanic's liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.

**DRAFT**

*THIS BOND HEREBY IS AMENDED SO THAT THE PROVISIONS AND LIMITATIONS OF SECTION 255.05 OR SECTION 713.23, FLORIDA STATUTES, WHICHEVER IS APPLICABLE, ARE INCORPORATED HEREIN BY REFERENCE.*

Signed and sealed this        day of                      2004.

         *Coastal Construction of South Florida, Inc.*
         *d/b/a Coastal Condominiums*
         (Principal)

(Witness)

                                         (Seal)
                                         (Title)

         *Arch Insurance Company*              (Surety)

(Witness)

                                         (Seal)
         (Title) *Charles J. Nielson, Attorney-in-Fact & Resident Agent*

**ARCH Insurance Company**

**ARCH Surety**

## NOTICE – DISCLOSURE OF TERRORISM PREMIUM

In accordance with the Terrorism Risk Insurance Act of 2002, we are providing this disclosure notice for bonds on which Arch Insurance Company is the surety.

### DISCLOSURE OF PREMIUM

The portion of the premium attributable to coverage for terrorist acts certified under the Act is Zero Dollars ($0.00).

### DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States will pay ninety percent (90%) of covered terrorism losses exceeding the applicable insurer deductible.

**DRAFT**

AU Jun. 24. 2005 11:56AM                                                    No. 4891    P. 5

# POWER OF ATTORNEY

Know All Men By These Presents:

That the Arch Insurance Company, a corporation organized and existing under the laws of the State of Missouri, having its principal office in Kansas City, Missouri (hereinafter referred to as the "Company") does hereby appoint

Mary C. Aceves, Warren M. Alter, Charles D. Nielson, Charles J. Nielson and Laura Clymer of Miami Lakes, FL (EACH)

its true and lawful Attorney(s)-in-Fact, to make, execute, seal, and deliver from the date of issuance of this power for and on its behalf as surety, and as its act and deed:

Any and all bonds and undertakings

EXCEPTION:  NO AUTHORITY is granted to make, execute, seal and deliver bonds or undertakings that guarantee the payment or collection of any promissory note, check, draft or letter of credit.

This authority does not permit the same obligation to be split into two or more bonds in order to bring each such bond within the dollar limit of authority as set forth herein.

The Company may revoke this appointment at any time.

The execution of such bonds and undertakings in pursuance of these presents shall be as binding upon the said Company as fully and amply to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at its principal office in Kansas City, Missouri.

This Power of Attorney is executed by authority of resolutions adopted by unanimous consent of the Board of Directors of the Company on March 3, 2003, true and accurate copies of which are hereinafter set forth and are hereby certified to by the undersigned Secretary as being in full force and effect:

"VOTED, That the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, or the Secretary shall have the power and authority to appoint agents and attorneys-in-fact, and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, recognizances, contracts of indemnity and other writings, obligatory in the nature thereof; and any such officers of the Company may appoint agents for acceptance of process."

This Power of Attorney is signed, sealed and certified by facsimile under and by authority of the following resolution adopted by the unanimous consent of the Board of Directors of the Company on March 3, 2003:

VOTED, That the signature of the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, and the signature of the Secretary, the seal of the Company, and certifications by the Secretary, may be affixed by facsimile on any power of attorney or bond executed pursuant to the resolution adopted by the Board of Directors on March 3, 2003, and any such power so executed, sealed and certified with respect to any bond or undertaking to which it is attached, shall continue to be valid and binding upon the Company.

00ML0013 00 03 03

Printed in U.S.A.

At Jun. 24. 2005 11:56AM                                No. 4841   P. 6/6

In Testimony Whereof, the Company has caused this instrument to be signed and its corporate seal to be affixed by their authorized officers, this 24th ___ day of November _____, 20 03 ___.

Arch Insurance Company

Attested and Certified

Joseph S. Labell, Corporate Secretary

Thomas P. Luckstone, Vice President

STATE OF CONNECTICUT  SS

COUNTY OF FAIRFIELD    SS

I Melissa B. Gilligan, a Notary Public, do hereby certify that Thomas P. Luckstone and Joseph S. Labell personally known to me to be the same persons whose names are respectively as Vice President and Corporate Secretary of the Arch Insurance Company, a Corporation organized and existing under the laws of the State of Missouri, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they being thereunto duly authorized signed, sealed with the corporate seal and delivered the said instrument as the free and voluntary act of said corporation and as their own free and voluntary acts for the uses and purposes therein set forth.

OFFICIAL SEAL
MELISSA B. GILLIGAN, Notary Public
State of Connecticut
My Commission Expires February 28, 2005

Melissa B. Gilligan, Notary Public
My commission expires 2-28-05

**DRAFT**

CERTIFICATION

I, Joseph S. Labell, Corporate Secretary of the Arch Insurance Company, do hereby certify that the attached Power of Attorney dated November 24, 2003 ___ on behalf of the person(s) as listed above is a true and correct copy and that the same has been in full force and effect since the date thereof and is in full force and effect on the date of this certificate; and I do further certify that the said Thomas P. Luckstone, who executed the Power of Attorney as Vice President, was on the date of execution of the attached Power of Attorney the duly elected Vice President of the Arch Insurance Company.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the Arch Insurance Company on this _____ day of _____, 20____.

Joseph S. Labell, Corporate Secretary

This Power of Attorney limits the acts of those named therein to the bonds and undertakings specifically named therein and they have no authority to bind the Company except in the manner and to the extent herein stated.

Home Office: Kansas City, MO

CIC

00ML0013 00 03 03

Printed in U.S.A.

## AGREEMENT OF GENERAL CONTRACTOR

### EXHIBIT "J"

AGREEMENT OF GENERAL CONTRACTOR (the "Agreement"), dated June 23, 2005, by Coastal Construction of South Florida, Inc., d/b/a Coastal Condominiums, having an office at 790 NW 107th. Avenue, Suite 308, Miami, Florida 33172 ("Contractor"), in favor of WACHOVIA BANK, NATIONAL ASSOCIATION, as Agent for the "Lenders" which now are or hereafter become parties to the "Loan Agreement" described herein, having an office at 200 East Broward Boulevard, Suite 200, Fort Lauderdale, Florida 33301 (singularly and collectively, "Lender").

### BACKGROUND

A.     Lender, pursuant to the terms and conditions of a Construction Loan Agreement (the "Loan Agreement") between RCR HOLDINGS II, LLC, a Florida limited liability company ("Owner") and Lender, will be providing financing for the construction of a 328 unit residential condominium project to be known as the "Villa Lago" (the "Project"), on certain premises located in the City of Boynton Beach, Palm Beach County, Florida (the "Property"), as more particularly described in the Loan Agreement; and

B.     Contractor and Owner have entered into a Contract dated ___June 22, 2005 (the "Contract") providing for the construction of the Project on the Property; and

C.     It is a condition to Lender's making the Loan described in the Loan Agreement (collectively, the "Loan") that Contractor enter into this Agreement, on which Agreement Lender will be relying in advancing the Loan pursuant to the Loan Agreement. As the Loan will inure to the benefit of Contractor, Contractor hereby agrees and acknowledges the Bank's Obligation to advance the proceeds of the loan, of which such Contractor's portion of any advance shall be paid directly to the Contractor from the Lender, is subject to satisfaction of the disbursement terms of the Loan Agreement to be executed by Borrower at the closing of the Loan as contained in Section 6 of the Loan Agreement attached hereto as Exhibit "A" and made a part hereof ("Loan Agreement") and Contractor hereby acknowledges payment in full for all services rendered through Requisition Number _____ dated _____ 2005, except for retainages in accordance with the contract and waives all Lien claims prior to and Contractor hereby subordinates its lien on the Property to the lien of the Lender's mortgage encumbering the Property and all other security instruments executed by Borrower in favor of Lender.

> **Formatted:** Font: Not Bold, Font color: Auto

### AGREEMENT

NOW, THEREFORE, in consideration of the premises contained herein and intending to be legally bound hereby, the parties hereto agree as follows:

1.     **CONTRACT.**

Contractor represents and warrants that: (i) no work was commenced nor materials delivered to the Property prior to ___June 22__, 2005___; (ii) all fees and other sums required to be paid as of the date hereof under the terms of the Contract have been paid; (iii) the Contract is in full force and effect, is valid and enforceable, and has not been altered, modified or amended( except as set forth in Exhibit B Miscellaneous Provisions and Exhibit A-1 Assumptions and Clarifications, attached hereto and incorporated herein by reference);; (iv) neither Contractor nor, to the best of Contractor's knowledge, Owner are in default under any of the terms, covenants or conditions of the Contract; (v) Contractor is not prohibited under any law, agreement, judgment or permit from performing any of its obligations under the Contract; (vi) no action has been brought or, to the best of Contractor's knowledge, is threatened which in any manner is likely to interfere with the performance of any of Contractor's obligations under the Contract; and (vii) Contractor has full power and authority to execute and deliver this Agreement.

2.    **AGREEMENT TO PERFORM.**

Contractor consents to the assignment of the Contract by Owner to Lender pursuant to the Loan Agreement. Contractor agrees, at the request of Lender and without regard to any prior default of Owner under the Contract, to continue to perform under the terms of the Contract if Lender should notify Contractor in writing that Lender has elected to undertake to complete or cause the completion of the Project, provided that Bank agrees in writing to pay contractor directly, all sums due for it's work through *the date of the authorization notice and agrees to continue to pay Contractor for the balance of the work* in accordance with the Contract for any work, labor and material rendered. Contractor further specifically agrees that, in the event Lender forecloses or takes over the Project and the Property, Contractor agrees to complete all work provided that that Bank agrees in writing to pay contractor all sums due for it's work through the date of the authorization notice and agrees to continue to pay Contractor for the balance of the work in accordance with the Contract for any work, labor and material rendered.

3.    **MODIFICATION AND AMENDMENTS.**

No amendment shall be made to the "Plans and Specifications" (as hereinafter defined) or to the Contract, nor shall any change orders be made thereunder without the prior written consent of Lender; provided, however, that Lender's consent shall not be required for (but Lender shall promptly receive copies of) any change orders which do not involve a change in the scope of the Project or a reduction in the value thereof so long as such change order does not (a) affect the electrical, plumbing, mechanical, HVAC or structural portions of the Project, (b) materially change gross square footage, number of Units or floors, basic layout, parking or quality of materials; (c) extend the Completion Date, or (d) exceed $_25,000.00 or more. Once the aggregate of all change orders exceeds $_50,000.00, Lender's consent shall be required for all change orders regardless of amount.

4.    **CONTRACTOR'S COVENANTS.**

Contractor agrees: (i) to give Lender prompt written notice at Lender's address as set forth above of any defaults by Owner under the Contract and to give Lender, at the sole option of Lender, the right (but not the obligation) to cure any defaults by Owner under the Contract for a period of thirty (30) days after receipt by Lender of notice of such default; (ii) not to assign its rights and obligations under the Contract without the prior written consent of Lender; (iii) to pay and discharge all liens or claims for labor and materials furnished in connection with the construction of the Project pursuant to the Contract; (iv) to fully complete the Project in a good and workmanlike manner on or before the completion date specified in the Contract, subject to any permitted delays as set forth in the Contract; (v) that in the event any of the Loan proceeds are disbursed under the Loan Agreement directly to Contractor, Contractor will receive such advances as a trust fund for the work to be performed under the Contract and Contractor will apply such sums first to such payment before using any part of such advances for any other purpose; (vi) that Lender shall have no liability to Contractor either under the Contract, this Agreement, or otherwise, for any act or omission occurring prior to such time as Lender elects in writing to assume the future obligations of Owner under the Contract; and (vii) to furnish to Lender, upon request, complete, current and correct lists of all subcontractors and material suppliers of the Project.

Contractor further covenants and agrees that the Project will be completed in accordance with the plans and specifications for the Project approved by Lender ("Plans and Specifications"), the list of which is attached to the Contract, and that in addition to all affidavits, partial releases and other documents and papers required to be furnished by Contractor under the Contract and the Florida Mechanics' Lien Law, Contractor, at the time of final payment, will furnish a full and complete release of lien of Contractor and of every person who performed work, labor or services or supplied materials covered by the Contract to the Property. Requisitions for draws will be submitted on an AIA form as designated by the Contract, accompanied by such certifications and other evidence of payment of obligations as Lender may require. Contractor will not stop work under the Contract for any reason without giving Lender at least seven (7) days prior written notice.

Contractor agrees that each subcontract executed between Contractor and a subcontractor performing work on the Project shall include a provision whereby the subcontractor agrees that (i) if Contractor defaults under the subcontract, the subcontractor will, before exercising any remedy, give Borrower and Lender written notice specifying the default and the steps necessary to cure same, and Borrower and/or Lender shall have the right (but not the obligation) within thirty (30) days after receipt of such notice to cure such default or cause it to be cured; and (ii) following a default by Contractor under the subcontract, at the request of Borrower and/or Lender, the subcontractor will continue performance under the subcontract in accordance with its terms, or will enter into a new subcontract with a contractor to be approved by Borrower and Lender upon substantially the same terms and conditions as the original subcontract, so long as subcontractor shall be paid in accordance with the subcontract or such new subcontract for all work, labor and materials furnished in connection therewith. Contractor further agrees to furnish Lender simultaneously with draw requests a copy of each fully executed subcontract that has been signed within the preceding thirty (30) day period.

Contractor acknowledges that Lender may have no means of determining in due course when Contractor may claim a default under the Contract with Borrower. Therefore, Contractor agrees that it shall not claim a breach entitling it to rescind or terminate its performance under the Contract nor will it claim any right to additional consideration, time or performance, unless Contractor shall have given written notice to Lender of such breach at the same time and in the same manner as notice is given to Owner, with the same opportunity to cure, and provided further that Contractor is compensated in accordance with the Contract for all services performed for during such cure period. No claim by Contractor of rescission or of default or of any right or remedy under the Contract shall be binding upon Lender in the absence of receipt of such notice by Lender, and, upon the curing of any such default or breach (whether cured by Borrower or Lender), Contractor shall continue to perform its obligations under the Contract, which shall be performed to or for the benefit of Lender, if Lender is then acting pursuant to its rights under this document.

5.    INSPECTION OF PROJECT.

Contractor will permit Lender or its agents at any time (i) to enter upon and inspect the work or construction at the Project and (ii) in the event that any mechanics' or materialmen's liens are filed against the Project, or other questions are raised concerning Contractor's performance relating to the Project, to examine such portions of Contractor's books and records as relate to the Project or the Contract, as Lender or its agents may require.

6.    SUBORDINATION.

Contractor further agrees that any present or future lien rights Contractor may have shall be subject and subordinate at all times to the lien of Lender's mortgage on the Property, as the same may be hereafter modified, spread, supplemented, extended or otherwise altered.

7.    MISCELLANEOUS.

7.1.    Binding Effect. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

7.2.    Modifications. This Agreement may not be supplemented, amended or modified unless set forth in writing and signed by the parties hereto.

7.3.    Notices. All notices and communications under this Agreement shall be in writing and shall be given by either (a) hand delivery, (b) certified mail, return receipt requested, or (c) reliable overnight commercial courier (charges prepaid) to the addresses listed in this Agreement. Notice shall be deemed to have been given when and received: (i) if by hand delivery, upon delivery; (ii) if by mail, three (3) calendar days after the date first deposited in the United States mail; and (iii) if by overnight courier, on the date scheduled for delivery. A party may change its address by giving written notice to the other party as specified herein.

7.4.    Governing Law. This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Florida without reference to conflict of laws principles.

IN WITNESS WHEREOF, Contractor has signed and sealed this agreement as of the day and year first above written.

**CONTRACTOR**

By: _____

Name: DANIELE WHITEMAN

Title: PRESIDENT

(CORPORATE SEAL)


**DESCRIPTION AND ADDRESS OF PROJECT:**

Construction of a 328 unit residential condominium project to be known as the "Villa Lago", with related amenities (the "Project"), located in the City of Boynton Beach, Palm Beach County, Florida.

CONTRACTOR'S AGR (4/88)
FTL:1461501:1

4

## EXHIBIT "A"

5.   **CONDITIONS TO ADVANCE**

5.1.   **General Conditions.** Lenders will have no obligation to make any Advance (a) unless Agent is satisfied, in its Reasonable discretion, that the conditions precedent to the making of such Advance have been satisfied; or (b) if an Event of Default or an event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default, has occurred and is continuing.

*Deleted: sole*

5.2.   **Conditions to Initial Advance.** Lenders' obligations hereunder to make the initial Advance on a building-by-building basis is conditioned upon Agent's receipt of the following, each in form and substance satisfactory to Agent:

5.2.1.   each of the Loan Documents duly executed as necessary to be enforceable against the parties thereto;

5.2.2.   each of the other documents, certificates, opinion letters and instruments required under this Agreement and/or the Commitment Letter;

5.2.3   a paid title insurance commitment or policy (the "Title Policy") issued by the Title Insurer acceptable to Agent, insuring the Mortgage as a valid first lien on Borrower's fee estate in the Property for the full amount of the Loan, free and clear of all defects and encumbrances except as Agent shall approve;

5.2.4.   A Notice of Commencement signed by Borrower and acceptable to Agent shall have been delivered to the Title Insurer to be recorded on a date subsequent to the date of the recording of the Mortgage. An executed copy of the payment Bond (as hereinafter defined) shall be attached to and recorded with the Notice of Commencement. Borrower shall have agreed to post a certified copy of the recorded Notice of Commencement on the Property in accordance with the Legal Requirements;

5.2.5.   Copies of Qualified Contracts with sales prices that in the aggregate of at least $58,655,914 and otherwise acceptable to Agent;

*Formatted: Font: Bold*

5.2.6.   Agent and its counsel must review and approve the condominium documents and any and all relevant filings with the Division of Florida Land Sales, Condominiums and Mobile Homes (the "Division"), and the United States Department of Housing and Urban Development (the "HUD"), including, but not limited to, evidence that the Project is registered with HUD as required by the Interstate Land Sales Act so that all contracts of sale are enforceable beyond twenty-four (24) months from contract execution. Additionally, Borrower shall covenant and provide reasonable certifications, opinions and documentation, acceptable to Agent and its legal counsel that (i) no contract of sale is at risk of being voided or rescinded due to its required closing date being prior to the anticipated date of Project completion date, and (ii) all contracts of sale contain provisions to extend the required closing date for the period of any uncontrollable delays in construction including force majeure;

5.2.7.   An independent appraisal showing (i) the as-is value of the Property to be not less than $_____ and (ii) the discounted sellout value of the Project to be not less than $_____. The appraisal shall also indicate the as-if completed value of the Project and the individual retail values for each Unit. The appraiser and the form and substance of the appraisal shall be acceptable to Agent; and

5.3.   **Conditions to Subsequent Advances.** Lenders' obligations hereunder to make any subsequent Advances on a building-by-building basis are conditioned upon Agent's receipt of the following, each in form and substance satisfactory to Agent:

5.3.1.   a timely Advance Request, together with all required supporting documentation;

CIC

5.3.2.   evidence that Borrower has invested the required portion of the Equity Requirement in the Project;

5.3.3.   an endorsement to the Title Policy continuing the effective date of the Title Policy through the date of the Advance and insuring that there has been no change in the status of the title to the Property.  In the event the Title Policy contains a "pending disbursement" clause, the endorsement shall also increase the amount of the Title Policy by the amount of the Advance being made in connection therewith;

5.3.4.   an inspection report from the Agent's inspector satisfactory to Agent;  and

5.3.5.   such other documents, instruments, information, agreements and certificates as Agent or the Title Insurer may reasonably require.

5.4.   Conditions to Final Advance.  Lenders' obligations hereunder to make the final Advance is conditioned upon Agent's receipt of the following, each in form and substance satisfactory to Agent:

6.4.1.   each of the items set forth in subsection 5.3 hereof, except as otherwise provided herein;

5.4.2.   a final endorsement to the Title Policy continuing the effective date of the Title Policy so as to insure the Loan as fully disbursed and removing any "pending disbursement" clause, any survey exceptions and any other exceptions to title arising out of the construction of the Project;

5.4.3.   the final "as-built" survey in compliance with the requirements of Section 7.6;

5.4.4.   evidence that Borrower's builder's risk insurance has been converted to an "all-risk" fire and extended coverage hazard insurance policy (non-reporting Commercial Property Policy with Special Cause of Loss form) in accordance with the requirements of the Mortgage; and

5.4.5.   each of the items set forth in the Completion Conditions set forth in subsection 7.2. below.

## Coastal Condominiums
## VILLA LAGO CONTRACT EXHIBIT " K "

| ID | Description | Orig Dur | Rem Dur | Early Start | Early Finish | Actual Start | Actual Finish |
|---|---|---|---|---|---|---|---|
| | **RESIDENTIAL EAST** | | | | | | |
| 10000 | Notice to proceed | 4dd | 4dd | 07MAY07 | | | |
| 10020 | Shop drawing review footing steel | 1d | 1d | 18JUL05 | 18JUL05 | | |
| 10030 | Fabview and shop approvals | 1d | 1d | 19JUL05 | 19JUL05 | | |
| 10040 | Layout building footings | 2d | 2d | 19JUL05 | 19JUL05 | | |
| 10050 | Dig footings | 10d | 10d | 20JUL05 | 21JUL05 | | |
| 10120 | Install form boards | 7d | 7d | 25JUL05 | 05AUG05 | | |
| 10140 | Install Rebar | 30d | 30d | 26JUL05 | 05AUG05 | | |
| 10150 | Footing Inspections | 30d | 30d | 27JUL05 | 09AUG05 | | |
| 10160 | Pour footings | 2t | 2t | 10AUG05 | 11AUG05 | | |
| 10190 | Expat exterior walls | 8d | 8d | 12AUG05 | 29AUG05 | | |
| 10220 | Install stemwall & topof Foudati | 8d | 8d | 22JUL05 | 28AUG05 | | |
| 10240 | Install underground utilities in Bldg | 15d | 15d | 01SEP05 | 21SEP05 | | |
| 10260 | Inspect utilities | 2d | 2d | 22SEP05 | 28SEP05 | | |
| 10290 | Backfill settles | 3d | 3d | 27SEP05 | 03OCT05 | | |
| 10300 | Prep ground floor slab | 7d | 7d | 04SEP05 | 06OCT05 | | |
| 10320 | Slab Inspection | 2d | 2d | 28SEP05 | 29SEP05 | | |
| 10340 | Pour ground floor slab/elevator pits | 1d | 1d | 10OCT05 | 10OCT05 | | |
| 10360 | Form 2nd Storey | 2d | 2d | 11OCT05 | 12OCT05 | | |
| 10390 | First floor block 8" walls/include any tie | 20d | 20d | 12OCT05 | 09NOV05 | | |
| 10400 | Second floor 91/2" concrete slab | 25d | 25d | 28OCT05 | 29NOV05 | | |
| 10430 | Second floor 8" load bearing masonry | 20d | 20d | 09NOV05 | 06DEC05 | | |
| 10440 | Form/rebar first floor slab | 5d | 5d | 29NOV05 | 16NOV05 | | |
| 10455 | Third floor 91/2" concrete slab | 30d | 30d | 11NOV05 | 22DEC05 | | |
| 10440 | Form/Pour second floor slabs | 12d | 12d | 11NOV05 | 28NOV05 | | |
| 10580 | Third Floor 8" Load bearing masonry walls | 20d | 20d | 23NOV05 | 20DEC05 | | |
| 10530 | Fourth Floor 91/2" concrete slab | 30d | 30d | 25NOV05 | 05JAN06 | | |
| 10540 | Form/Pour third floor slabs | 12d | 12d | 29NOV05 | 12DEC05 | | |
| 10560 | Fourth Floor 8" load bearing masonry | 25d | 25d | 20DEC05 | 02JAN06 | | |
| 10580 | Plan dept 91/2" slab | 33d | 33d | 01DEC05 | 11JAN06 | | |
| 10590 | Form/Pour fourth floor slabs | 12d | 12d | 01DEC05 | 19DEC05 | | |
| 10590 | Fifth Floor 8" Load bearing masonry | 25d | 25d | 06JAN06 | 20JAN06 | | |
| 10600 | Sixth Floor Block | 30d | 30d | 08JAN06 | 16FEB06 | | |
| 10660 | Set managed roof trusses | 15d | 15d | 28JAN06 | 15FEB06 | | |
| 10705 | Roof deck | 30d | 30d | 19FEB06 | 29MAR06 | | |
| 10725 | Set managed roof trusses | 15d | 15d | 20MAR06 | 07APR06 | | |
| 10720 | Install the roof | 21d | 21d | 10APR06 | 08MAY06 | | |
| 10740 | Form/pour roof deck slabs | 10d | 10d | 10APR06 | 21APR06 | | |
| 10760 | Deck of exterior windows and door frames | 10d | 10d | 24APR06 | 09MAY06 | | |
| 10780 | Install all exterior skin | 15d | 15d | 08MAY06 | 29MAY06 | | |
| 10800 | Brown Coat stucco | 15d | 15d | 29MAY06 | 18JUN06 | | |
| 10820 | Final stucco | 10d | 10d | 19JUN06 | 10JUL06 | | |
| 10840 | Prime Paint exterior of building | 10d | 10d | 11JUL06 | 24JUL06 | | |
| 10860 | Tie In exterior site utilities | 5d | 5d | 13JUL06 | 17JUL06 | | |

| Start date | 18JUL05 | |
|---|---|---|
| Finish date | 07MAY07 | |
| Data date | 18JUL05 | |
| Run date | 24JUN05 | |
| Page number | 1A | |
| © Primavera Systems, Inc. | | |

Legend: Early bar / Progress bar / Critical bar / Summary bar / Finish milestone point / Start milestone point

Coastal Condominiums
VILLA LAGO CONTRACT EXHIBIT " K "

Legend:
- Early bar
- Progress bar
- Critical bar
- Summary bar
- ◆ Start milestone point
- ◆ Finish milestone point

Start date:    24.81.05
Finish date:   07MAY07
Data date:     HUNJUN
Run date:      24JUN05
Page number:   2A
© Primavera Systems, Inc.

| ID | Description | Orig Dur | Rem Dur | Early Start | Early Finish |
|---|---|---|---|---|---|
| 11780 | Final trim on Plumbing 2nd floor | 10d | 10d | 01AUG06 | 14AUG06 |
| 11790 | Final first floor electrical trim/2nd floor | 10d | 10d | 01AUG06 | 14AUG06 |
| 11800 | Final 2nd floor plumbing/ sprinkler trim | 10d | 10d | 02AUG06 | 15AUG06 |
| 11820 | Appliance Installation/2nd floor | 5d | 5d | 04AUG06 | 10AUG06 |
| 11840 | Install all Door Hardware | 10d | 10d | 07AUG06 | 18AUG06 |
| 11860 | Final touch up/slart up/2nd floor | 10d | 10d | 08AUG06 | 21AUG06 |
| 11880 | Install all Carpet/ Touch up paint | 10d | 10d | 09AUG06 | 22AUG06 |
| 11900 | Final Inspections/2nd floor | 5d | 5d | 25AUG06 | 31AUG06 |
| 11930 | Install window locks, 3rd floor | 5d | 5d | 28MAY06 | 07JUN06 |
| 11940 | Check 3rd floor back to/hi sides | 5d | 5d | 29MAY06 | 05JUN06 |
| 11960 | Install windows on 3rd floor | 5d | 5d | 30MAY06 | 09JUN06 |
| 11980 | Install Interior wall framing on 3rd floor | 10d | 10d | 31MAY06 | 13JUN06 |
| 12000 | Rough wall and ceiling electric/3rd floor | 15d | 15d | 02JUN06 | 22JUN06 |
| 12020 | Rough in HVAC, 3rd floor | 15d | 15d | 01JUN06 | 21JUN06 |
| 12140 | Rough wall plumbing 3rd floor | 15d | 15d | 01JUN06 | 21JUN06 |
| 12100 | Wall close in Inspections, 3rd floor | 5d | 5d | 23JUN06 | 29JUN06 |
| 12180 | Hang all drywall, 3rd floor | 10d | 10d | 20JUN06 | 14JUL06 |
| 12100 | Tape block, finish, sand 3rd floor | 10d | 10d | 03JUL06 | 17JUL06 |
| 12120 | Install all doors/frames/trim/ 3rd floor | 10d | 10d | 17JUL06 | 28JUL06 |
| 12140 | Prime paint 3rd floor | 10d | 10d | 19JUL06 | 31JUL06 |
| 12180 | Paint up 3rd floor | 10d | 10d | 19JUL06 | 01AUG06 |
| 12160 | Final Paint 3rd floor | 10d | 10d | 21JUL06 | 03AUG06 |
| 12200 | Install Domestic flooring/bathrooms/3rd floor | 10d | 10d | 25JUL06 | 07AUG06 |
| 12220 | Install Kitchen cabinets/vanities/3rd floor | 15d | 15d | 27JUL06 | 16AUG06 |
| 12240 | Install Kitchen counter tops/vanities, 3rd | 15d | 15d | 31JUL06 | 18AUG06 |
| 12220 | Final trim on Plumbing 3rd floor | 10d | 10d | 01AUG06 | 14AUG06 |
| 12240 | Final first floor electrical trim/3rd floor | 10d | 10d | 03AUG06 | 15AUG06 |
| 12300 | Final 3rd floor plumbing/ sprinkler trim | 10d | 10d | 03AUG06 | 16AUG06 |
| 12320 | Appliance Installation/3rd floor | 5d | 5d | 07AUG06 | 11AUG06 |
| 12340 | Install all Door Hardware 3rd floor | 10d | 10d | 09AUG06 | 21AUG06 |
| 12360 | Final touch up/start up/3rd floor | 10d | 10d | 09AUG06 | 22AUG06 |
| 12380 | Install all Carpet/ Touch up paint 3rd floor | 10d | 10d | 09AUG06 | 22AUG06 |
| 12400 | Final Inspections/3rd floor | 5d | 5d | 23AUG06 | 29AUG06 |
| 12420 | Install window locks, 4th floor | 5d | 5d | 31MAY06 | 07JUN06 |
| 12440 | Check 4th floor back both sides | 5d | 5d | 01JUN06 | 07JUN06 |
| 12460 | Install Windows on 4th floor | 5d | 5d | 02JUN06 | 14JUN06 |
| 12480 | Install Interior wall framing on 4th floor | 10d | 10d | 05JUN06 | 16JUN06 |
| 12500 | Rough wall and ceiling electric/4th floor | 15d | 15d | 06JUN06 | 26JUN06 |
| 12520 | Rough in HVAC, 4th floor | 15d | 15d | 02JUN06 | 27JUN06 |
| 12540 | Rough wall plumbing 4th floor | 15d | 15d | 07JUN06 | 27JUN06 |
| 12560 | Wall close in Inspections, 4th floor | 5d | 5d | 28JUN06 | 05JUL06 |
| 12580 | Hang all drywall, 4th floor | 10d | 10d | 05JUL06 | 19JUL06 |
| 12300 | Tape block, finish, sand 4th floor | 10d | 10d | 03JUL06 | 21JUL06 |
| 12320 | Install all doors/frames/trim/ 4th floor | 10d | 10d | 25JUL06 | 07AUG06 |

Start date   18JUL05
Finish date  07MAY07
Data date    24JUN05
Run date     3A
Page number  3A

© Primavera Systems, Inc.

Early bar
Progress bar
Critical bar
Summary bar
◆ Start milestone point
◆ Finish milestone point

Jun. 24. 2005 4:15PM No. 4850 P. 3

| Act ID | Description | Orig Dur | Rem Dur | Early Start | Early Finish | Actual Start | Actual Finish |
|---|---|---|---|---|---|---|---|
| 12640 | Install elevator cabs | 30d | 30d | 10JUL06 | 18AUG06 | | |
| 12660 | Final Elevator inspections | 5d | 5d | 21AUG06 | 25AUG06 | | |
| 12680 | Prime paint 4th floor | 10d | 10d | 27JUL06 | 09AUG06 | | |
| 12700 | Point up 4th floor | 10d | 10d | 31JUL06 | 11AUG06 | | |
| 12720 | Final Paint 4th floor | 10d | 10d | 02AUG06 | 15AUG06 | | |
| 12740 | Install Ceramic flooring/ bathrooms/4th floor | 15d | 15d | 04AUG06 | 24AUG06 | | |
| 12760 | Install kitchen cabinets/vanities/4th floor | 15d | 15d | 08AUG06 | 28AUG06 | | |
| 12780 | Install Kitchen counter tops/vanities, 4th floor | 15d | 15d | 10AUG06 | 30AUG06 | | |
| 12800 | Final trim on Plumbing 4th floor | 10d | 10d | 17AUG06 | 30AUG06 | | |
| 12820 | Final first floor electrical trim/4th floor | 10d | 10d | 21AUG06 | 01SEP06 | | |
| 12840 | Final 4th floor plumbing/ sprinkler trim | 10d | 10d | 23AUG06 | 05SEP06 | | |
| 12860 | Appliance Installation/4th floor | 5d | 5d | 25AUG06 | 31AUG06 | | |
| 12880 | Install all Door Hardware4th floor | 5d | 5d | 29AUG06 | 04SEP06 | | |
| 12900 | Final touch up/clean up/4th floor | 5d | 5d | 30AUG06 | 05SEP06 | | |
| 12920 | Install all Carpet/ Touch up paint 4th floor | 10d | 10d | 01SEP06 | 14SEP06 | | |
| 12940 | Final inspections 4th floor | 5d | 5d | 18SEP06 | 22SEP06 | | |
| 12960 | Install window bucks, 5th floor | 5d | 5d | 07JUN06 | 13JUN06 | | |
| 12980 | Caulk 5th floor buck both sides | 5d | 5d | 08JUN06 | 14JUN06 | | |
| 13000 | Install windows on 5th floor | 9d | 9d | 09JUN06 | 21JUN06 | | |
| 13020 | Install interior wall framing on 5th floor | 10d | 10d | 12JUN06 | 23JUN06 | | |
| 13040 | Rough wall and ceiling electric 5th floor | 15d | 15d | 13JUN06 | 03JUL06 | | |
| 13060 | Rough in HVAC, 5th floor | 15d | 15d | 14JUN06 | 05JUL06 | | |
| 13080 | Rough wall plumbing 5th floor | 15d | 15d | 14JUN06 | 05JUL06 | | |
| 13100 | Wall close in inspections, 5th floor | 5d | 5d | 06JUL06 | 12JUL06 | | |
| 13120 | Hang all drywall, 5th floor | 10d | 10d | 13JUL06 | 26JUL06 | | |
| 13140 | Tape block, finish, sand 5th floor | 10d | 10d | 17JUL06 | 28JUL06 | | |
| 13160 | Install all doors/frames/trim/ 5th floor | 10d | 10d | 01AUG06 | 14AUG06 | | |
| 13180 | Install elevator cabs | 30d | 30d | 24JUL06 | 01SEP06 | | |
| 13200 | Final Elevator inspections | 5d | 5d | 04SEP06 | 08SEP06 | | |
| 13220 | Prime paint 5th floor | 10d | 10d | 03AUG06 | 16AUG06 | | |
| 13240 | Point up 5th floor | 10d | 10d | 07AUG06 | 18AUG06 | | |
| 13260 | Final Paint 5th floor | 10d | 10d | 09AUG06 | 22AUG06 | | |
| 13280 | Install Ceramic flooring/ bathrooms/5th floor | 15d | 15d | 11AUG06 | 31AUG06 | | |
| 13300 | Install kitchen cabinets/vanities/5th floor | 15d | 15d | 15AUG06 | 04SEP06 | | |
| 13320 | Install Kitchen counter tops/vanities, 5th floor | 15d | 15d | 17AUG06 | 06SEP06 | | |
| 13340 | Final trim on Plumbing 5th floor | 10d | 10d | 24AUG06 | 06SEP06 | | |
| 13360 | Final first floor electrical trim/5th floor | 10d | 10d | 28AUG06 | 08SEP06 | | |
| 13380 | Final 5th floor plumbing/ sprinkler trim | 10d | 10d | 30AUG06 | 12SEP06 | | |
| 13400 | Appliance Installation/5th floor | 5d | 5d | 01SEP06 | 07SEP06 | | |
| 13420 | Install all Door Hardware5th floor | 10d | 10d | 05SEP06 | 18SEP06 | | |
| 13440 | Final touch up/clean up/5th floor | 5d | 5d | 06SEP06 | 12SEP06 | | |
| 13460 | Install all Carpet/ Touch up paint 5th floor | 10d | 10d | 08SEP06 | 21SEP06 | | |
| 13480 | Final inspections 5th floor | 5d | 5d | 25SEP06 | 29SEP06 | | |
| 13500 | Install window bucks, 6th floor | 5d | 5d | 14JUN06 | 20JUN06 | | |

| | |
|---|---|
| Start date | 18JUL05 |
| Finish date | 07MAY07 |
| Data date | 18JUL05 |
| Run date | 24JUN05 |
| Page number | 4A |
| © Primavera Systems, Inc. | |

Coastal Condominiums
VILLA LAGO CONTRACT EXHIBIT " K "

Early bar
Progress bar
Critical bar
Summary bar
Start milestone point
Finish milestone point

Jun. 24. 2005  4:16PM

No. 4850   P. 4

| Act ID | Description | Orig Dur | Rem Dur | Early Start | Early Finish | Actual Start | Actual Finish |
|---|---|---|---|---|---|---|---|
| 13520 | Create 5th floor back both sides | 3d | 5d | 15JUN06 | 21JUN06 | | |
| 13640 | Install windows on 5th floor | 5d | 5d | 16JUN06 | 22JUN06 | | |
| 13550 | Install intermittent flashings on 5th floor | 1d | 1d | 19JUN06 | 19JUN06 | | |
| 13560 | Rough set and swing detail, 5th floor | 10d | 15d | 20JUN06 | 11JUL06 | | |
| 13620 | Rough in HVAC, 5th floor | 5d | 12d | 21JUN06 | 12JUL06 | | |
| 13640 | Rough wall plumbing 5th floor | 5d | 15d | 21JUN06 | 12JUL06 | | |
| 13680 | Wall close in inspections, 5th floor | 5d | 5d | 13JUL06 | 19JUL06 | | |
| 13880 | Hang off drywall, 5th floor | 5d | 10d | 20JUL06 | 02AUG06 | | |
| 13700 | Tape block, finish, sand 5th floor | 10d | 10d | 24JUL06 | 04AUG06 | | |
| 13720 | Install at door/frames/trim 5th floor | 5d | 10d | 08AUG06 | 21AUG06 | | |
| 13740 | Install elevator cabs | 2d | 20d | 09AUG06 | 05SEP06 | | |
| 13780 | Prime paint 5th floor | 10d | 10d | 10AUG06 | 25AUG06 | | |
| 13780 | Paint up 5th floor | 10d | 10d | 14AUG06 | 25AUG06 | | |
| 13800 | First Paint 5th floor | 20d | 20d | 16AUG06 | 29AUG06 | | |
| 13820 | Install Ceramic flooring bathroom 5th floor | 10d | 10d | 16AUG06 | 29AUG06 | | |
| 13840 | Install kitchen cabinets/vanities 5th floor | 25d | 15d | 22AUG06 | 31AUG06 | | |
| 13860 | Install Kitchen counter tops/vanities 5th floor | 25d | 15d | 24AUG06 | 11SEP06 | | |
| 13880 | Final trim on plumbing 5th floor | 10d | 10d | 31AUG06 | 13SEP06 | | |
| 13900 | Final first floor electrical trim 5th floor | 10d | 10d | 04SEP06 | 13SEP06 | | |
| 13920 | Final tile floor plumbing/ wardrobe trim | 10d | 10d | 06SEP06 | 11SEP06 | | |
| 13840 | Appliance installation 5th floor | 10d | 10d | 06SEP06 | 14SEP06 | | |
| 13980 | Install at Door Hardware 5th floor | 5d | 5d | 11SEP06 | 15SEP06 | | |
| 13980 | Final touch up/trim out 5th floor | 5d | 5d | 12SEP06 | 27SEP06 | | |
| 14000 | Install at Carpet/ Touch up point 5th floor | 10d | 10d | 15SEP06 | 28SEP06 | | |
| 14020 | Final inspections 5th floor | 1d | 1d | 02OCT06 | 02OCT06 | | |
| 14040 | Certificate of Occupancy | 2d | 2d | 02OCT06 | 04OCT06 | | |
| 15000 | RESIDENTIAL WEST | 486d | 486d | 16JUL05 | 07MAY07 | | |
| 15010 | Notice to proceed | 1d | 1d | 16JUL05 | 16JUL05 | | |
| 15020 | Survey | 5d | 5d | 09NOV05 | 15NOV05 | | |
| 16000 | Review and stage approvals | 1d | 1d | 16NOV05 | 16NOV05 | | |
| 16040 | Layout building footage | 3d | 3d | 17NOV05 | 21NOV05 | | |
| 16060 | Dig Footings | 15d | 15d | 23NOV05 | 13DEC05 | | |
| 16060 | Install form Boards | 10d | 10d | 24NOV05 | 07DEC05 | | |
| 16070 | Install Rebar | 25d | 25d | 01DEC05 | 04JAN06 | | |
| 15080 | Footing inspections | 2d | 2d | 05JAN06 | 05JAN06 | | |
| 15090 | Pour footings | 2d | 2d | 05JAN06 | 30JAN06 | | |
| 15100 | Layout exterior walls | 10d | 10d | 06JAN06 | 27JAN06 | | |
| 15110 | Install channel/block/Bac-fill | 5d | 5d | 23JAN06 | 20FEB06 | | |
| 15120 | Install underground utilities in Bldg | 21d | 21d | 19FEB06 | 05APR06 | | |
| 15130 | Inspect utilities | 3d | 3d | 06APR06 | 13APR06 | | |
| 15140 | Backfill utilities | 20d | 20d | 14APR06 | 11MAY06 | | |
| 15150 | Prep ground floor slab | 20d | 20d | 17APR06 | 12MAY06 | | |
| 15160 | Slab inspection | 5d | 5d | 11MAY06 | 21APR06 | | |

Start date     16JUL05
Finish date    07MAY07
Data date      16JUL05
Run date       24JUN05
Page number    5A
© Primavera Systems, Inc.

Early bar
Progress bar
Critical bar
Summary bar
◆ Start milestone point
◇ Finish milestone point

Coastal Condominiums
VILLA LAGO CONTRACT EXHIBIT "K"

| Act ID | Description | Orig Dur | Rem Dur | Early Start | Early Finish | Actual Start | Actual Finish |
|---|---|---|---|---|---|---|---|
| 15170 | Pour ground floor slabs/elevator pits | | | | | | |
| 15180 | Perm Bench Survey | | | | | | |
| 15190 | First floor block 8" walls/include any tie | | | | | | |
| 15200 | Second floor 5 1/2" concrete slab | | | | | | |
| 15210 | Second floor 8" lead bearing masonry | | | | | | |
| 15220 | Form/pour first floor slabs | | | | | | |
| 15230 | Third floor 5 1/2" concrete slab | | | | | | |
| 15240 | Perm / Pour second floor stairs | | | | | | |
| 15250 | Third Floor 8" Lead bearing masonry walls | | | | | | |
| 15260 | Fourth Floor 5 1/2" concrete slab | | | | | | |
| 15270 | Form/Pour third floor stairs | | | | | | |
| 15280 | Fourth Floor 8" lead bearing masonry | | | | | | |
| 15290 | Fifth deck 5 1/2" slab | | | | | | |
| 15300 | Form/pour fourth floor stairs | | | | | | |
| 15310 | Sixth Floor Block | | | | | | |
| 15320 | Sixth Floor slab Pours | | | | | | |
| 15330 | Sixth Floor block | | | | | | |
| 15340 | Roof deck | | | | | | |
| 15350 | Set in stand roof trusses | | | | | | |
| 15360 | Install the roof | | | | | | |
| 15370 | Form/pour roof deck stairs | | | | | | |
| 15380 | Caulk all exterior windows and door frames | | | | | | |
| 15390 | Install all exterior trim | | | | | | |
| 15400 | Brown Coat stucco | | | | | | |
| 15410 | Float stucco | | | | | | |
| 15420 | Prime Paint exterior of building | | | | | | |
| 15430 | Tie in exterior site utilities | | | | | | |
| 15440 | Rough in fire sprinklers | | | | | | |
| 15450 | Install all exterior concrete pads | | | | | | |
| 15460 | Install window bucks, first floor | | | | | | |
| 15470 | Caulk first floor buck both sides | | | | | | |
| 15480 | Install windows on first floor | | | | | | |
| 15490 | Install interior wall framing on first floor | | | | | | |
| 15500 | Rough in wall and ceiling electric-first floor | | | | | | |
| 15510 | Rough in HVAC, first floor | | | | | | |
| 15520 | Rough wall plumbing, first floor | | | | | | |
| 15530 | Wall close in inspections, first floor | | | | | | |
| 15540 | Hang all drywall, first floor | | | | | | |
| 15550 | Tape, block, finish, sand first floor | | | | | | |
| 15560 | Install all doors/frames/trim/ first floor | | | | | | |
| 15570 | Prime paint first floor | | | | | | |
| 15580 | Paint up first floor | | | | | | |
| 15590 | Final Paint first floor | | | | | | |
| 15600 | Install Ceramic flooring/ tub/rooms/wet floor | | | | | | |

Start date: 18JUL05
Finish date: 07MAY07
Data date: 18JUL05
Run date: 24JUN05
Page number: 8A
© Primavera Systems, Inc.

Coastal Condominiums
VILLA LAGO CONTRACT EXHIBIT " K"

Early bar
Progress bar
Critical bar
Summary bar
◆ Finish milestone point
◆ Start milestone point

Coastal Condominiums
VILLA LAGO CONTRACT EXHIBIT " K "

Legend:
- Early bar
- Progress bar
- Critical bar
- Summary bar
- Start milestone point
- Finish milestone point

Start date: 19JUL05
Finish date: 07MAY07
Data date: 24JUN05
Page number: 7A
© Primavera Systems, Inc.

Jun. 24. 2005  4:18PM                                    No. 4850   P. 7

**Coastal Condominiums**
**VILLA LAGO CONTRACT EXHIBIT "K"**

Coastal Condominiums
VILLA LAGO CONTRACT EXHIBIT " K"

**Coastal Condominiums**
**VILLA LAGO CONTRACT EXHIBIT " K"**

Jun. 24. 2005  4:21PM

No. 4850   P. 10

Coastal Condominiums
VILLA LAGO CONTRACT EXHIBIT " K "

| ID | Description | Orig Dur | Rem Dur | Early Start | Early Finish | Actual Start | Actual Finish |
|---|---|---|---|---|---|---|---|
| 20550 | Final Paint first floor | 5d | | 08JAN07 | 08JAN07 | | |
| 20160 | Install Ceramic flooring / bathrooms first floor | 4d | | 08JAN07 | 12JAN07 | | |
| 20720 | Install kitchen cabinets/vanities/first floor | 2d | | 15JAN07 | 16JAN07 | | |
| 20740 | Inside kitchen counter tops/ finish vanities | 2d | | 17JAN07 | 18JAN07 | | |
| 20760 | Final trim on Plumbing first floor | 2d | | 19JAN07 | 22JAN07 | | |
| 20700 | Final first floor electrical / final first floor | 2d | | 22JAN07 | 23JAN07 | | |
| 20800 | Final first floor plumbing/ sprinkler trim | 2d | | 23JAN07 | 24JAN07 | | |
| 20820 | Appliances install at final first floor | 1d | | 31JAN07 | 31JAN07 | | |
| 20840 | Install all door hardware | 2d | | 02FEB07 | 05FEB07 | | |
| 20860 | Final touch up/clean up first floor | 3d | | 01FEB07 | 05FEB07 | | |
| 20880 | Final inspection/first floor | 3d | | 06FEB07 | 08FEB07 | | |
| 20900 | Owner final touch up | 2d | | 07FEB07 | 08FEB07 | | |
| 20910 | Marble the Pool and Pit | 2d | | 12FEB07 | 13FEB07 | | |
| 20920 | Final inspection/ C of O | 1d | | 14FEB07 | 14FEB07 | | |
| 20930 | GARAGE | 460d | | 09JUL05 | 07MAY07 | | |
| 20940 | Garage Graying | 1d | | 11JUL05 | 11JUL05 | | |
| 20950 | Garage Footings | 10d | | 12JUL05 | 26JUL05 | | |
| 20960 | Garage walls, floors, columns & Beams | 35d | | 26JUL05 | 12SEP05 | | |
| 20970 | Barrier Cable | 8d | | 13SEP05 | 22SEP05 | | |
| 20980 | Garage MEP's | 40d | | 13SEP05 | 14NOV05 | | |
| 20990 | Striping & bumper blocks | 10d | | 15NOV05 | 29NOV05 | | |
| 21000 | Garage C of O | 5d | | 23NOV05 | 02DEC05 | | |

Garage Graying
Garage Footings
Garage walls, floors, columns & Beams
Barrier Cable
Garage MEP's
Striping & bumper blocks
Garage C of O

| Start date | 18JUL05 |
|---|---|
| Finish date | 07MAY07 |
| Data date | 18JUL05 |
| Run date | 24JUL05 |
| Page number | 11A |

© Primavera Systems, Inc.

Legend:
Early bar
Progress bar
Critical bar
Summary bar
Start milestone point
Finish milestone point

CK

# EXHIBIT "G"

## *ATTACHMENT NO. 1*
Insurance Addendum

### Villa Logo
*Boynton Beach, Florida*

*ce Holdings II, LLC*

1. This insurance addendum is an integral part of the contract (the "Contract") between Coastal Construction of South Florida dba Coastal Condominiums ("Contractor") and RCR Holdings I, LLC ("Developer") for the construction of the condominium known as VIIa Logo at Renaissance Commons, in Boynton Beach, Florida (the "Project" or "Building" supersedes any language to the contrary in the body of the main contract or your written proposal or any other addendum with respect to insurance.

2. **Contractor Insurance Coverage Required.** Contractor agrees to maintain the following amounts of insurance at its own expense from an insurance company licensed to do business in the State of Florida until completion and final acceptance of the work being performed at the Project pursuant to the Contract, ~~and all such insurance coverage shall remain, maintained etc, integration in favor of Developer.~~ *SEE 11.4.7*

   a. **Insurance Coverage**

      *General Liability*
      Each Occurrence:  Not Less Than $1,000,000
      General Aggregate:  Not Less Than $2,000,000
      Personal and ADV Injury:  Not Less Than $1,000,000
      Products - COMP/OP AGG: Not Less Than $1,000,000
      ~~~~ *Ad & Gr*

      *Automobile Liability (ANY AUTO)*
      Combined Single Limit: Not Less Than $1,000,000

      *Excess/Umbrella Liability*
      Each Occurrence:  Not Less Than $10,000,000
      Aggregate:  Not Less Than $10,000,000

      *Workers Compensation/Employers Liability*
      WC Statutory limits
      E.L. Each Accident:  Not Less Than $500,000
      E.L. Disease - EA Employee:  Not Less Than $500,000
      E.L. Disease - Policy Limit:  Not Less Than $500,000

      b. **Certificate of Insurance.** An original certificate of the Contractor's insurance must be delivered to Developer's office before work can commence. Contractor agrees that Developer may request an updated certificate of insurance at any time, and Contractor consents to Developer discussing a certificate with the issuing agent and the insurance company. Contractor agrees to have the following certificate holders and additional insureds covered by the certificate of insurance:

*Contractor Shall price per project aggregate and forward to Owner for Owners decision. If accepted by Owner, costs shall be incorporated herein by change order.*

The Certificate Holder should be:

RCR Holdings I, LLC
Attn: Jeffrey Stanoff, PH (561) 391-6570, FX (561) 391-2423
080 North Federal Highway, Suite 200
Boca Raton, FL 39432

The Additional Insureds shall be as follows: RCR Holdings II, LLC

Compson Associates, Inc., Renaissance Commons Realty, Inc.,
Compson Associates of Boynton, LLC, Compson Associates of Boynton II, LLC,
and the owners, officers, managers, members, affiliates, and employees of the
companies listed above.

c. **Cancellation.** Contractor agrees to notify Developer within 24 hours in the event
that the required amounts of insurance are canceled or reduced. The certificate of
insurance must contain the provision that "The coverages afforded shall not be
cancelled or materially changed until after at least thirty (30) days written notice, by
certified mail, return receipt requested, has been given to certificate holder."

d. **Failure to Maintain Insurance.** If Contractor fails to procure and maintain
insurance in an amount at least equal to the amounts set forth in paragraphs 2 and 4,
Developer has the option to (i) cancel any contract that Contractor has with
Developer, (ii) have the right, but not the obligation, to procure and maintain such
insurance for and in the name of the Contractor and the Contractor shall pay the cost
of the insurance, and (iii) pursue any other legal remedy available to Developer.
These options are cumulative rather than mandatory.

3. **Subcontractor Insurance Coverages Required.** The Contractor shall require its
subcontractors to procure and maintain during the progress of their portion of the Work the
following types and minimum amounts of insurance. This insurance shall provide coverage at
least in the minimum limits as follows:

   a. **Insurance Coverages**

   *Worker's Compensation Insurance Certificate* - Florida Statutory limits under all
   circumstances; and

   *Commercial Automobile Liability* - $500,000 Combined Single Limit; and

   *Commercial Liability* - $1,000,000 per occurrence, $2,000,000 aggregate amount,
   $2,000,000 for products and completed operations; and

   *Umbrella Excess Liability* - $2,000,000 per occurrence, $2,000,000 aggregate; and

   *Subcontractor's Commercial General Liability, Comprehensive Automobile
   Liability, and Umbrella/Excess Liability Policies* - shall be endorsed to add
   Contractor and Owner as additional insured with respect to the performance of
   Subcontractor's operations under the Subcontract Agreement and the Contract
   Documents.

*Exhibit "G", Attachment No. 1*      *June 22, 2005*      Page 2 of 3

JUN. 27. 2005 4:06PM    27-Jun-2005 04:06pm   From-Katz Barron   Itaro & Faust, P.A.   305 285 8920    T-282   P.012/018   F-119

b. **Certificate of Insurance.**

The Additional Insureds shall be as follows: *RCR Holdings II, LLC* ~~LLC~~

Compson Associates, Inc., Renaissance Commons Realty, Inc., Compson Associates of Boynton, LLC, Compson Associates of Boynton II, LLC, and the owners, officers, managers, members, affiliates, and employees of the companies listed above.

c. **Cancellation.** The certificate of insurance shall provide as follows: "The coverages afforded shall not be cancelled or materially changed until after at least thirty (30) days written notice, by certified mail, return receipt requested, has been given to certificate holder."

d. **Failure to Maintain Insurance.** If a subcontractor fails to procure and maintain insurance in the minimums set forth above, Contractor may procure and maintain insurance on behalf of the subcontractor. If Contractor fails to procure and maintain insurance in the minimums set forth above on behalf of a subcontractor, Developer has the option to (i) cancel any contract that Contractor has with Developer" (ii) have the right, but not the obligation, to procure and maintain such insurance for and in the name of the subcontractor and the Contractor shall pay the cost of the insurance, and (iii) pursue any other legal remedy available to Developer. These options are cumulative.

e. **Insurance Required for Access to Jobsite.** Developer has the right, but not the obligation, to refuse entry to the jobsite of employees of any subcontractor that has not complied with the Insurance requirements.

4. **Review of Insurance Policies.** Developer's counsel may review such policies and shall determine in good faith whether the policies provide the required insurance coverages as set forth in paragraphs 2 and 3. Developer shall have 15 days from receipt of each policy to notify Contractor if the coverage provided by the policies do not meet the insurance requirements set forth in paragraphs 2 and 3, and Contractor (or a subcontractor) shall have 15 days from such notice to correct and/or modify such insurance coverages.

5. **No Liability to Developer.** Contractor agrees that Developer accepts no responsibility for any harm to Contractor caused by Contractor's or a subcontractor's failure to procure adequate insurance.

Agreed and Accepted:
Coastal Construction of South Florida
dba Coastal Condominiums
BY: _____ 6-17-05

Name _____ (Date)

DANIEL E. WHITEMAN, PRESIDENT
Title

RCR Holdings I, LLC
BY: _____ (Date)

Name _____

6-27-05

Title

Exhibit "G", Attachment No. 1    June 22, 2005      Page 3 of 3