# CARVER, DARDEN,
# KORETZKY, TESSIER, FINN,
# BLOSSMAN & AREAUX LLC

PHILIP D. NIZIALEK

Also Admitted in Texas
(504) 585-3820
nizialek@carverdarden.com

May 4, 2011

Honorable Eldon E. Fallon
United States District Court Judge
Eastern District of Louisiana
500 Poydras Street
New Orleans, LA 70130

Re:   *Silva v. Arch Ins. Co., et al.,* EDLA Case No. 2009-08034
    *Silva v. InteriorExterior, et al.,* EDLA Case No. 2009-08030
    *In re: Chinese Drywall Multi District Litigation,* EDLA Case No. 2009-2047

Dear Judge Fallon:

I write today pursuant to the Court's instructions that InteriorExterior respond to Melissa Swabacker's letter of April 28, 2011 commenting on the recent Interior/Exterior settlement of Chinese Drywall claims.   Ms. Swabacker represents Landmark Insurance Company ("Landmark"), one of InteriorExterior's upper level excess carriers which is released from liability in the settlement.   In the letter, Landmark raises premature objections regarding class member opt outs, an issue on which Landmark has no standing to complain.   More importantly, Landmark alleges that there is no indication in the settlement documents provided to the Court with respect to the Settling Defendants' position regarding exhaustion of the Arch and Liberty primary policies.

The Settling Defendants' position regarding exhaustion of the Arch and Liberty policies is clearly and expressly set forth in the Settlement Agreement in paragraphs 4.4.1 (c) and (d). Those clauses provide that, as of the effective date of the settlement,

> "(c) the aggregate policy limits under the Arch policies and the Liberty policies, individually and collectively, have been exhausted, and (d) that Arch and Liberty have no further duty to defend and/or indemnify InteriorExterior, or any other persons, entity or entities under the Arch policies or the Liberty policies, individually and/or collectively or otherwise."

**EXHIBIT A**

Honorable Eldon E. Fallon
May 4, 2011
Page 2

CARVER, DARDEN,
KORETZKY, TESSIER, FINN,
BLOSSMAN & AREAUX LLC

Other provisions (¶¶ 3.3.1, 3.4.1 and 3.4.2) set out in detail that the primary payments will be used to pay claims, and ¶ 1.20.6 asks for court to find that the payments exhaust the policy.

The Agreement assigns to the non-Louisiana sub-class all of InteriorExterior's rights against its first layer excess carrier North River to the extent of the Applicable Policy Limits as defined in the Agreement. The Agreement makes abundantly clear that the primary policies are fully exhausted by this settlement, the upper layer excess carriers, including Landmark, are released, and no insurance remains to pay opt out claims for InteriorExterior.

In short, the view of the Settling Defendants with regard to exhaustion of the primary policies is clearly set out in the Settlement Agreement. Landmark's objection to the Settlement Agreement is both premature and unfounded. The Court should proceed with preliminary approval at the hearing on May 6.

Respectfully,

Philip D. Nizialek

PDN/jlr
cc:     Mr. Arnie Levin  (via email)
        Mr. Russell Hermann (via email)
        Mr. Hugh Scott (via email)
        Mr. Russell Holwadel (via email)
        Ms. Judith Barrasso (via email)
        Mr. Melissa Swabacker (via email)

4825-5812-6345, v. 1

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

A. Hugh Scott
(617) 248-5250
hscott@choate.com

May 4, 2011

**By Email & U.S. Mail**

The Honorable Eldon E. Fallon
United States District Court for
  the Eastern District of Louisiana
500 Poydras Street
New Orleans, Louisiana 70130

Re:    *Silva v. Arch Insurance Company et al.*, Civ. No. 2009-08034 (E.D. La.);
        *Silva v. Interior-Exterior*, Civ. No. 2009-08030 (E.D. La.); and
        *In Re: Chinese Drywall Multi District Litigation*, MDL No. 2047

Dear Judge Fallon:

This letter responds on behalf of Liberty Mutual Fire Insurance Company to the letter by counsel for National Surety Corporation to the Court dated April 29, 2011, regarding the proposed settlement by Interior-Exterior Building Supply L.P. ("InEx") in the referenced litigation.

The National Surety letter asserts (i) that it does not have sufficient information to make a decision whether or not to object to the settlement, and (ii) that one of its prime concerns is how the underlying policy limits are being exhausted. The relief sought by National Surety is that the Court "not set a deadline for National Security to file a motion to consent or object to the settlement."

National Security should be required to abide by the same objection procedures and deadline as all other persons or entities who claim to have an interest in the InEx Settlement Agreement approval process. National Security has not given any reason why it should be singled out for preferrential treatment, and no such reason exists.

**EXHIBIT B**

---

Two International Place I Boston MA 02110 I t 617-248-5000 I f 617-248-4000 I choate.com

The Honorable Eldon E. Fallon
May 4, 2011.
Page 2

The Court should decline National Security's request that no deadline be set for it to file an objection to the settlement, for the following reasons:  (i) Any action regarding potential objections to the settlement is premature until the Court has determined whether preliminary approval should be given to the settlement. (ii) National Surety lacks an interest in, or standing to raise issues concerning exhaustion of the primary policies. (iii) In any event, the exhaustion issue is fully addressed in the InEx Settlment Agreement.

*First,* any objection to the Settlement Agreement would be premature at this point.  The only issue presently before the Court is whether to grant the settling parties' Joint Motion For Preliminary Approval of the settlement, so that notice will be given to the conditional settlement class and a Fairness Hearing will be held to determine whether the settlement will be given final approval.  To grant preliminary approval of the settlement, "the court need only find that the proposed settlement fits 'within the range of possible approval.'" *Prudential Sec. Inc. Ltd. Partnerships Litig.,* 163 F.R.D. 200, 210 (S.D.N.Y. 1995), *quoting Armstrong v. Bd. of Sch. Directors of the City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980).  The proposed InEx settlement easily meets that relatively low standard and should be approved by the Court.  But, until that occurs, the objection process for which National Surety says seeks information, cannot begin.

*Second,* National Surety lacks standing to raise matters of primary exhaustion regarding Chinese drywall claims against InEx.  Under the Settlement Agreement, the only excess insurance available for Chinese drywall claims against InEx is specified excess insurance provided under the first layer excess policies of The North River Insurance Company. *See* InEx Settlement Agreement, Section 1.5.  Since National Surety's coverage is not available for Chinese drywall claims against InEx, National Surety has no interest in whether or how the primary insurance for those claims is exhausted.

*Third,* in any event, the Settlement fully addresses the issue of the exhaustion of primary insurance coverage.  The Agreement indicates that the Arch policies for 2006-07 contain $4 million in aggregate limits, the Liberty policies for 2008-09 contain $4 million in aggregate limits, and Arch and Liberty will pay those limits into a settlement fund to benefit the class plaintiffs. *See* InEx Settlement Agreement, Sections 1.3., 1.16., and 1.17.  In addition, the Order and Judgment to be entered by the Court upon final approval of the settlement will confirm that the Arch and Liberty primary policies are exhausted, and InEx will so agree in its release to Arch and Liberty. *See* id., Sections 1.20.6 and 4.4.1.

The Honorable Eldon E. Fallon
May 4, 2011
Page 3


Liberty respectfully submits that, for the foregoing reasons, the National Surety letter does not raise any issue that requires any response or action by the Court, other than a denial of National Security's request that no deadline be set for objection by it to the settlement. If the Court grants preliminary approval of the settlement, National Surety should be required to follow the same deadline for objection to the settlement that applies to all other persons or entities.


Very respectfully,

A. Hugh Scott



cc (by email):   Gary J. Russo, Esq.
                 Melissa Swabacker, Esq.
                 Philip Nizialek, Esq.
                 Richard Duplantier, Esq.
                 H. Minor Pipes, Esq.
                 Russell Holwadel, Esq.
                 Kevin Risley, Esq.
                 Russ Herman, Esq.
                 Arnold Levin, Esq.
                 Fred Longer, Esq.


4857471



CHOATE HALL & STEWART LLP

A. Hugh Scott
(617) 248-5250
hscott@choate.com

May 4, 2011

**By Email & U.S. Mail**

The Honorable Eldon E. Fallon
United States District Court for
 the Eastern District of Louisiana
500 Poydras Street
New Orleans, Louisiana 70130

Re:     *Silva v. Arch Insurance Company et al.*, Civ. No. 2009-08034 (E.D. La.);
        *Silva v. Interior-Exterior*, Civ. No. 2009-08030 (E.D. La.); and
        *In Re: Chinese Drywall Multi District Litigation*, MDL No. 2047

Dear Judge Fallon:

This letter responds on behalf of Liberty Mutual Fire Insurance Company to the letter by
counsel for Landmark American Insurance Company to the Court dated April 28, 2011,
regarding the proposed settlement by Interior-Exterior Building Supply L.P. ("InEx") in the
referenced litigation.

The Landmark letter asserts (i) that the settlement papers do not contain information on "the
extent to which the primary policies may be exhausted by the payments the settlement
contemplates," and (ii) that "the issue of exhaustion is essential to us." The relief sought by
Landmark is "the Court's instruction on whether it too considers such information essential to
an understanding of the settlement and its [i.e. the Court's] guidance as to the best method by
which to obtain such information."

No such "instruction" or "guidance" by the Court is needed because the Settlement Agreement
fully addresses these matters -- as Landmark would surely know if it had reviewed that
Agreement carefully. The Court should take no action on the Landmark letter, for the

The Honorable Eldon E. Fallon
May 4, 2011
Page 2

following reasons: (i) Any action regarding potential objections to the settlement is premature until the Court has determined whether preliminary approval should be given to the settlement. (ii) Landmark lacks an interest in, or standing to raise issues concerning exhaustion of the primary policies. (iii) In any event, the exhaustion issue is fully addressed in the InEx Settlement Agreement.

*First,* any objection to the Settlement Agreement would be premature at this point. The only issue presently before the Court is whether to grant the settling parties' Joint Motion For Preliminary Approval of the settlement, so that notice will be given to the conditional settlement class and a Fairness Hearing will be held to determine whether the settlement will be given final approval. To grant preliminary approval of the settlement, "the court need only find that the proposed settlement fits 'within the range of possible approval.'" *Prudential Sec. Inc. Ltd. Partnerships Litig.,* 163 F.R.D. 200, 210 (S.D.N.Y. 1995), *quoting Armstrong v. Bd. of Sch. Directors of the City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980). The proposed InEx settlement easily meets that relatively low standard and should be approved by the Court. But, until that occurs, the objection process for which Landmark says seeks information requested in the letter, cannot begin.

*Second,* Landmark lacks standing to raise matters of primary exhaustion regarding Chinese drywall claims against InEx. Under the Settlement Agreement, the only excess insurance available for Chinese drywall claims against InEx is specified excess insurance provided under the first layer excess policies of The North River Insurance Company. *See* InEx Settlement Agreement, Section 1.5. Since Landmark's coverage is not available for Chinese drywall claims against InEx, Landmark has no interest in whether or how the primary insurance for those claims is exhausted.

*Third,* in any event, the Settlement fully addresses the issue of the exhaustion of primary insurance coverage. The Agreement indicates that the Arch policies for 2006-07 contain $4 million in aggregate limits, the Liberty policies for 2008-09 contain $4 million in aggregate limits, and Arch and Liberty will pay those limits into a settlement fund to benefit the class plaintiffs. *See* InEx Settlement Agreement, Sections 1.3., 1.16., and 1.17. In addition, the Order and Judgment to be entered by the Court upon final approval of the settlement will confirm that the Arch and Liberty primary policies are exhausted, and InEx will so agree in its release to Arch and Liberty. *See* id., Sections 1.20.6 and 4.4.1. Landmark's letter asserts that the settlement papers do not address whether costs of notice will erode the primary policy limits. To the contrary, the Settlement Agreement explains that the primary insurers will advance (i.e. lend) part of the costs of notice, subject to being repaid. *See* id. Section 6.2.

The Honorable Eldon E. Fallon
May 4, 2011
Page 3


Liberty respectfully submits that, for the foregoing reasons, the Landmark letter does not raise any issue that requires any response or action by the Court.

Very respectfully,

A. Hugh Scott


cc (by email):  Melissa Swabacker, Esq.
                Philip Nizialek, Esq.
                Richard Duplantier, Esq.
                H. Minor Pipes, Esq.
                Russell Holwadel, Esq.
                Gary J. Russo, Esq.
                Kevin Risley, Esq.
                Russ Herman, Esq.
                Arnold Levin, Esq.
                Fred Longer, Esq.


4857467

## Swabacker, Melissa

| | |
|---|---|
| **From:** | Fred Longer [FLonger@lfsblaw.com] |
| **Sent:** | Thursday, May 05, 2011 2:05 PM |
| **To:** | 'mdonohue@joneswalker.com'; 'AScott@choate.com'; 'lexy_butler@laed.uscourts.gov' |
| **Cc:** | 'drh@ahhelaw.com'; 'grusso@joneswalker.com'; 'KRisley@thompsoncoe.com'; 'mpipes@barrassousdin.com'; 'nizialek@carverdarden.com'; 'RDuplantier@gjtbs.com'; 'rherman@hhkc.com'; Arnold Levin; Swabacker, Melissa |
| **Subject:** | Re: Chinese Drywall MDL Case No. 09-2047/INEX Settlement |

Megan, You are correct. FSL
-----------------------------
Sent from my BlackBerry Wireless Device


----- Original Message -----
From: Donohue, Megan <mdonohue@joneswalker.com>
To: Fred Longer; Scott, A. Hugh <AScott@choate.com>; Lexy_Butler@laed.uscourts.gov
<Lexy_Butler@laed.uscourts.gov>
Cc: drh@ahhelaw.com <drh@ahhelaw.com>; Russo, Gary <grusso@joneswalker.com>; Risley,
Kevin <KRisley@thompsoncoe.com>; H. Minor Pipes <mpipes@barrassousdin.com>; Philip
D. Nizialek <nizialek@carverdarden.com>; Richard G. Duplantier, Jr.
<RDuplantier@gjtbs.com>; Russ Herman <RHERMAN@hhkc.com>; Arnold Levin; Swabacker,
Melissa <mswabacker@dkslaw.com>
Sent: Thu May 05 14:51:46 2011
Subject: RE: Chinese Drywall MDL Case No. 09-2047/INEX Settlement

Fred,

We assume that the PSC's response (adopting Mr. Scott's and Mr. Nizialek's
correspondence on this subject) to National Surety's letter to the Court is the same
as its response to Landmark's letter.  Please confirm that this is accurate.

Thanks,
Megan

Megan E. Donohue
Attorney at Law
JONES, WALKER, WAECHTER, POITEVENT,
  CARRÈRE & DENÈGRE LLP
600 Jefferson Street Suite 1600
Lafayette, LA 70501
Direct: 337.262.9058| Fax: 337.262.9001
 mdonohue@joneswalker.com
www.joneswalker.com
Thank you for considering the environmental impact of printing e-mails.

-----Original Message-----
From: Fred Longer [mailto:FLonger@lfsblaw.com]
Sent: Wednesday, May 04, 2011 3:18 PM
To: 'Scott, A. Hugh'; Lexy_Butler@laed.uscourts.gov
Cc: drh@ahhelaw.com; Russo, Gary; Risley, Kevin; H. Minor Pipes; Philip D. Nizialek;
Richard G. Duplantier, Jr.; Russ Herman; Arnold Levin; Swabacker, Melissa
Subject: RE: Chinese Drywall MDL Case No. 09-2047/INEX Settlement

Lexy,  Mr. Scott's and Mr. Nizialek's correspondence on this subject address the
issues raised by Landmark in their most recent email to the court.  Thank you for
you patience.  Respectfully, FSL

-----Original Message-----
From: Scott, A. Hugh [mailto:AScott@choate.com]
Sent: Wednesday, May 04, 2011 12:01 PM
To: Lexy_Butler@laed.uscourts.gov

1

**EXHIBIT C**

Cc: drh@ahhelaw.com; Russo, Gary; Risley, Kevin; H. Minor Pipes; Philip D. Nizialek;
Richard G. Duplantier, Jr.; Russ Herman; Arnold Levin; Fred Longer; Swabacker,
Melissa
Subject: RE: Chinese Drywall MDL Case No. 09-2047/INEX Settlement

Dear Ms. Butler,

Please find attached copies responses by Liberty Mutual to the Landmark
correspondence mentioned in your email below, as well as to similar correspondence
subsequently received from National Surety.

The original letters are being mailed to the Court.

We appreciate your assistance.

            -   Hugh Scott

A. Hugh Scott
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
617 248 5250 (direct)
617 248 4000 (fax)
hscott@choate.com

-----Original Message-----
From: Lexy_Butler@laed.uscourts.gov
[mailto:Lexy_Butler@laed.uscourts.gov]
Sent: Friday, April 29, 2011 9:31 AM
To: Swabacker, Melissa
Cc: drh@ahhelaw.com; Russo, Gary; Scott, A. Hugh; Risley, Kevin; H.
Minor Pipes; Philip D. Nizialek; Richard G. Duplantier, Jr.; Russ Herman
Subject: Re: Chinese Drywall MDL Case No. 09-2047/INEX Settlement

The Court received the correspondence from Landmark's counsel and would like a
response from the PSC, InEx, Arch, and Liberty Mutual.
Thereafter, the Court will either schedule a telephone conference or issue an order
resolving the issue.
Thanks,
Lexy


Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP.
The substance of this message, along with any attachments, may be confidential and
legally privileged.  If you are not the designated recipient of this message, please
destroy it and notify the sender of the error by return e-mail or by calling
1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the
following statement in this message: Any advice contained herein (or in any
attachment hereto) regarding federal tax matters was not intended or written by the
sender to be used, and it cannot be used by any taxpayer, for the purpose of
avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com
The information contained in this email and any attachments hereto may be
confidential and/or legally privileged. It has been sent for the sole use of the
intended recipient(s). If the reader of this message is not an intended recipient,
you are hereby notified that any unauthorized review, use, disclosure,
dissemination, distribution, or copying of this communication, or any of its
contents, is strictly prohibited.
If you have received this communication in error, please contact the sender by reply
email and destroy all copies of the original message.

**EXHIBIT D – Proposed Revisions to the Settlement Agreement**

Proposed revisions to the Settlement Agreement are indicated by **bold** text, as follows.   Note that these revisions only address changes proposed by Landmark and National Surety concerning the issue of whether Landmark and National Surety are to be released by the Settlement Agreement.   No suggested revisions have been made to these paragraphs concerning the other issues raised by Landmark and National Surety in its original or supplemental objections to the motion for an order preliminarily approving the Settlement Agreement.

**4.3 Class Release**

4.3.1   As of the Effective Date of the Settlement, and with the approval of the Court, all Class Members, and anyone claiming by, through and/or on behalf of any of them, hereby fully, finally, and forever release, waive, discharge, surrender, forego, give up, abandon, and cancel any and all Released Claims (as defined in Section 4.1) against the Settling Defendants and Released Parties, including (but not limited to) those asserted, or that could have been asserted, in the Litigation, the Related Actions, and/or the Related Claims.

4.3.2   As of the Effective Date of the Settlement, all Class Members, and anyone claiming by, and through and/or on behalf of any of them, will be forever barred and enjoined from prosecuting any action against the Settling Defendants **and the Released Parties** asserting any and/or all Released Claims.

4.3.3   The Non-Louisiana Subclass will exclude from its release of InEx Chinese Drywall claims against InEx to the extent that such claims exceed $8,000,000 but are less than the Available Insurance Limits (the Non-Released Claims," as defined above).

4.3.3.1   InEx will make the Assignment of Insurance to the Non-Louisiana Sub-class for all rights InEx has to excess insurance coverage for the Non-Released Claims.

{L0150389.1}                                                    1

4.3.3.2    The Non-Louisiana Subclass will (a) dismiss the Non-Released Claims without prejudice, (b) covenant not to sue InEx for any of the Non-Released Claims, and (c) covenant not to sue InEx to collect from InEx, or to seek to execute against InEx, any settlements of or judgments for Non-Released Claims.

4.3.4.    The execution of the Settlement shall not be construed as a release of any claims the Class Members may have against any person and/or entity other than the Settling Defendants **and the Released Parties**.  All Class Members reserve all claims (including, but not limited to, any and all rights and causes of action, no matter how arising, under any ordinance, code, law, statute, federal or state, pending or dismissed, known or unknown) against any person and/or entity other than the Settling Defendants **and the Released Parties** named, or who could have been named, in the Related Actions.

4.3.5.    The Parties agree that the Settlement Class and each of the Class Members shall satisfy any judgment it or they may obtain against a third party to the manner necessary (under applicable state law whether it be pro rata, pro tonto, and/or set off) to extinguish any claims for contribution, indemnity, common law or contractual, and/or subrogation, whether arising under tort, contract or otherwise, by such third party against the Settling Defendants **and Released Parties**.  It is the intent of the Parties that the Settling Defendants **and Released Parties** shall have no further liability in connection with the Release Claims.

4.3.6.    As of the Effective Date of the Settlement, to the extent of each Class Member's individual and net recovery, and to the extent the claim described in this Section arises out of the claim of that class Member, each Class Member shall defend, indemnify, and hold harmless each of the Settling Defendants **and Released Parties** from and against (a) any and all claims by, on behalf of, through or deriving from his, her, or its heirs, executors, representatives, attorneys or former attorneys, successors, employers, insurers, employers' insurers, health insurers, health care providers, assignees, subrogees, predecessors in interest, successors in interest, beneficiaries or survivors; and (b) any claims for contribution; indemnity, common law or contractual; and/or subrogation, whether arising under tort, contract or

otherwise, related in any way to the Released Claims of said Class Member released by this Settlement.

4.3.7   To the extent that any entity or person other than InEx may have, or may assert that it has (whether by way of being an additional insured, or an other insured, or otherwise) any rights (including but not limited to, rights to defense or for indemnification) under the Arch Policies or the Liberty Policies, the Parties agree that the Settlement Class and each of the Class Members will not seek to assert those rights against the Settling Defendants **or the Released Parties**, whether by assignment, or subrogation, or otherwise.

4.3.8   It is expressly understood and agreed that the indemnity, defense, and judgment reduction obligations detailed above shall exist regardless of the legal basis for the claim, demand, cause of action, right of action, liability, lien, or judgment demand asserted by any person or entity to the extent related to the Released Claims against any Released Party and/or Settling Defendant and shall survive the execution of any Settlement Agreement.  In particular, the Class Members expressly bind themselves to the foregoing indemnity, defense and judgment reduction obligations regardless of whether the claim, demand, suit, liability, lien, judgment, cause of action, or right of action is based on or related to (a) the strict liability of any of the Settling Defendants **and/or the Released Parties** under any theory whatsoever; (c) the absolute liability of any of the Settling Defendants; (d) the wanton, reckless, or willful misconduct of any of the Settling Defendants **and/or the Released Parties**; (e) any actual, alleged or purported right, asserted by any Settling Defendant, **Released Party,** or any Class Member under a policy of insurance issued by one or more insurers; or (f) any other basis whatsoever.

**4.4. InEx Release**

4.4.1   As of the Effective Date of the Settlement, InEx and/or all persons or entities who or which derive any right or claim from, by and/or through InEx, hereby (i) releases and discharges any and all claims whatsoever against Arch and Liberty **and the Released Parties,** which claims arise out of, or are related in any way to, Chinese Drywall, the Released Claims, the Litigation, the Related Actions, the Related Claims, the Arch Policies, and/or the Liberty

Policies, including, but not limited to, (a) all claims for insurance coverage, indemnity, "duty to defend," liability of any kind arising from insurance policies, bad faith claims, and/or extra-contractual liability of any kind, which claims arise under Louisiana law, the law of any other state, or any other law (including common law) and (b) any and all past, present, and/or future claims arising out of, or related to indemnity obligations, duty to defend, claims handling, claims adjustment, beach of contract , breach of duty or duties, negligent investigation, breach of warranty, failure to warn, breach of implied warranty, breach of good faith and fair dealing, bad faith, negligent or intentional interference with contractual relationships, deceptive trade practices, unfair trade practices, unfair settlement practices, conduct in violation of any insurance code, or any other alleged misconduct, omission, or wrongdoing of any kind and (ii) agrees and stipulates (a) that the Arch Policies are the only insurance policies issued by Arch to InEx that potentially provide coverage to InEx for Chinese Drywall claims, (b) that the Liberty Policies are the only insurance policies issued by Liberty to InEx that potentially provide coverage to InEx for Chinese Drywall claims, (c) that the aggregate policy limits under the Arch Policies and the Liberty Policies, individually and collectively, have been exhausted, and (d) that Arch and Liberty have no further duty to defend and/or indemnify InEx, or any other person or persons, entity or entities under the Arch Policies or the Liberty Policies, individually and/or collectively, or otherwise.

4.4.2   InEx shall not assign any claims it may possess against any Insurer to any person or entity except as provided in the Assignment of Insurance.

{L0150389.1}                                                4