UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE -MANUFACTURED    *      MDL No. 2047
DRYWALL PRODUCTS LIABILITY    *
LITIGATION    *
     *
THIS DOCUMENT RELATES TO:    *      JUDGE FALLON
KENNETH and BARBARA WILTZ, et al    *
vs.    *
BEIJING NEW BUILDING MATERIALS    *
PUBLIC Ltd, et al    *
Case No. 2:10-cv-361-EEF-JCW    *

## AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

NEIL LAYTON

who, being duly sworn, upon his oath deposed and stated as follows:

1.     He is the President of Devonshire Properties, Inc., ("Devonshire Properties"), and as

such, has personal knowledge of the following based on his review of records

maintained by Devonshire Properties in the regular course of business.

2.     Devonshire Properties is a corporation organized and existing under the laws of the

State of Florida and has its principal place of business in Hillsborough County,

Florida.

3.     Devonshire Properties is a home builder that contracts with third party vendors for the



EXHIBIT
A

construction of single-family homes and/or sells completed single-family homes.

4. Devonshire Properties has never built a residence in the State of Louisiana nor had any contracts or subcontracts with companies located in Louisiana.

5. Devonshire Properties has never been licensed or registered to do business in Louisiana or ever had any offices or employees in Louisiana.

6. Devonshire Properties does not have an agent for service of process in Louisiana.

7. Devonshire Properties does not have any bank accounts in Louisiana or own any property in Louisiana.

8. Devonshire Properties does not solicit business in Louisiana or ever transacted business in Louisiana.

9. Devonshire Properties has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. Devonshire Properties does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. Devonshire Properties has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12.    Consequently, Devonshire Properties never anticipated it would be haled into court

in Louisiana.

_____
NEIL LAYTON

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 22 DAY OF OCTOBER , 2010.

_____
NOTARY PUBLIC

Notary Public State of Florida
Paul Wiezorek
My Commission DD908854
Expires 07/20/2013

3

## CONTRACT FOR NEW HOME CONSTRUCTION ON AN OWNER'S LOT

THIS AGREEMENT is made and entered into by and between <u>Devonshire Properties</u>, a Florida corporation whose address is: <u>3412 W. Bay to Bay Blvd. Tampa, Fl 33629</u> hereinafter referred to as "Developer," and <u>William and Stacy Peek</u>,  whose address is  <u>7808 Hidden Island Lane, Temple Terrace Fl 33617</u> hereinafter referred to as "Owner," who hereby agree that Developer shall build a new home constructed on the Owner's lot situated in Hillsborough County, Florida with a street address of <u>11 Baffin Ave.,</u> and legally described as <u>Davis Island PB 10 pg 52-57 and PB 17 pgs 5-9: Lots 18 and 19 Block 18</u> the ("Lot"), together with improvements, designated as Developer's model number <u>Custom 6820</u>, to be constructed thereon by Developer substantially in accordance with Developer's published floor plan brochure and specifications attached hereto as Exhibit "A" plus any optional items or extras set forth on the Option Addendum attached hereto, if any, ("the Improvements") and otherwise pursuant to the terms and conditions set forth herein of attached hereto.  The Lot and the Improvements are hereinafter called the "Property."

1.    <u>Purchase Price</u>. The total purchase price for the Property (the "Purchase Price") shall be:

$     <u>1,212,120.00</u>    Total Purchase Price

2.    <u>Method of Payment</u>.

2.1    The Owner has placed with Developer an earnest money deposit in the amount of $ <u>10,000</u>. Further, on or before  <u>n/a</u>   , Owner shall place with Developer an additional earnest money deposit of <u>n/a</u>  both deposits shall hereinafter collectively be referred to as the "Deposit."  Said Deposit shall be held by <u>Devonshire Properties</u>. Unless Owner otherwise defaults under this Agreement, the full amount of the Deposit shall be applied to the Purchase Price due at closing.

2.2    The balance of the Purchase Price shall be payable in accordance with the construction lender's draw schedule attached hereto as Exhibit "B," with any balance to be paid by Owner upon completion of the home.

3.    <u>Financing</u>

3.1    In the event Owner is obtaining mortgage loan financing, this Agreement shall be contingent upon Owner obtaining, within <u>60</u>   days from the date hereof, a binding commitment for a mortgage loan in the principal sum of not less than $1,212,120.00 and Owner shall provide Developer with written evidence thereof within said <u>30</u> day period.  Owner agrees to apply for such mortgage loan within five (5) business days after the signing of this Agreement in an amount as stated above and to proceed with all due diligence to obtain said loan.  The loan commitment obtained by Owner shall be satisfactory to Developer in form and substance.  In the event Owner fails to obtain such financing commitment within said <u>60</u>   day period, through no fault or misrepresentation on the part of the Owner, then this Agreement shall be terminated and the Deposit shall be returned to Owner, less any costs and expenses of Developer actually incurred.

1



EXHIBIT

**B**

3.2    If Owner fails to obtain a loan commitment in the manner described above due to Owner's misrepresentation, failure to cooperate, or failure to proceed diligently, at any time during the term of this Agreement, then Owner shall be deemed to be in default under this Agreement and Developer shall be entitled to the remedies set forth herein upon such default.

4.    <u>Default:</u>

(a)    <u>Owner's Default</u>: If the Owner shall fail to make the payments herein provided, or any part thereof, when due, or if Owner shall fail to perform in a timely manner an act herein required, this Agreement may be terminated at the option of Developer, and Owner shall pay to Developer a proportionate part of the Purchase Price based upon the percentage of completion then attained and, in addition thereto, as liquidated damages, an amount equal to ten percent (10%) of the Purchase Price allocable to the remaining uncompleted construction work, as theretofore proportioned. Owner recognizes and understands that in the event of any breach by the Owner, the resulting damages to the Developer arising from said breach are uncertain and difficult to calculate, whereupon the above specified liquidated damages are agreed as a reasonable adjustment of the probable damages to the Developer under the circumstances above stated. A lien is hereby given to the Developer by Owner on the above described property to secure all obligations and liabilities of Owner and all the provisions of this Agreement in its entirety, which lien shall be in addition to construction or other liens granted by the laws of Florida or the United States. In the event there occurs a default by Owner under the terms and conditions of this Agreement, Developer may enforce the lien granted herein through foreclosure, or exercise any other right granted to the Developer by law, including, but not limited to exercising the rights and privileges granted to the Developer by Chapter 713, Florida Statutes. Any attempt by Developer to enforce the lien granted by the provisions of the paragraph shall not be deemed an election by Developer to waive or forego the rights granted to Developer by law, including but not limited to Developer's rights under Chapter 713, Florida Statutes.

(b)    <u>Developer's Default</u>: The Owner may terminate the Contract if the Developer:

1.    persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

2.    fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Developer and the Subcontractors unless the failure to make such payment is the result of a legitimate dispute between Developer and Subcontractor in which case Developer shall act appropriately to protect the interests of Owner;

3.    persistently disregards laws, ordinances or rules, regulations or orders of a public authority having jurisdiction; or

4.    otherwise is guilty of substantial breach of a provision of the Contract documents.

2

When any of the above reasons exist, the Owner may without prejudice to any other rights or remedies of the Owner and after giving the Developer seven days written notice, terminate employment of the Developer and may finish the work by whatever reasonable method the Owner may deem expedient. Upon request of the Developer, the Owner shall furnish to the Developer a detailed accounting of the costs incurred by the Owner in finishing the work, reserving all rights under Florida law.

5.      Draw Schedule.  Developer has approved the terms of the construction lender's draw schedule **attached hereto as Exhibit "B."**  Developer requires 10% of the loan amount to be paid to Developer at the time of closing the construction loan.

6.      Closing Costs.  Owner will pay all closing costs.

7.      Completion.  Developer shall notify Owner as to the date and time of completion at least 7 days prior to such designated completion date.  Upon completion, Developer shall supply the Owner with a Certificate of Occupancy issued by the City of Tampa. The Developer agrees to pay all valid bills received by subcontractors and suppliers employed by the Developer.

8.      Warranty.  Upon completion, Developer shall furnish to Owner a "New Home Warranty" **in the form attached hereto as Exhibit "C".**  OWNER FURTHER UNDERSTANDS AND AGREES THAT THE WARRANTIES REFERENCED HEREIN SHALL BE THE SOLE WARRANTIES, EXPRESSED OR IMPLIED, BEING FURNISHED TO OWNER IN CONJUNCTION WITH THIS TRANSACTION. If the Improvements being constructed on the Property include a swimming pool, the parties agree that upon completion of construction of the swimming pool, Developer shall cause to be delivered to Owner any warranty for the swimming pool, which may be furnished by the Developer employed by Developer to construct the swimming pool.  The provisions of this paragraph 8 shall survive the closing of this transaction.

9.      Construction.  Developer agrees to construct the Improvements in substantial compliance with the specifications attached hereto as Exhibit "A."  Upon reasonable advance written notice to Owner, Developer shall have the right to substitute substantially equivalent materials  for any of those called for in said specifications as may be required due to shortages in supplies or materials or as may be required by appropriate local authorities or any construction lender, or as may be reasonably necessary to fulfill the design intent of the Developer. **Upon reasonable advance written notice to Owner,** Developer reserves the right to remove any existing vegetation and/or trees interfering with the construction of the new home or the demolition of the existing home on the Property.  Developer shall not be responsible for any such trees or vegetation, which do not survive. Any and all plans, blueprints, illustrations or specifications utilized in connection with the construction of the Improvements shall be and remain the sole and exclusive property of the Developer.  Developer will furnish a copy of the plans to the Owner prior to start of construction and hereby grants Owner a license to use the plans until completion of the home, but only for completion of the home contemplated by this Agreement.  Owner agrees that the direction and supervision of all workers on the Property, including subcontractors, rests exclusively with Developer.  Owner further agrees not to contract with Developer's subcontractors or to engage other builders or

3

subcontractors or personally perform any work on the Property prior to completion, without Developer's permission.

10.     Insulation. Owner hereby acknowledges pursuant to the applicable rules of the Federal Trade Commission regarding labeling and advertising home insulation, that the following types, thickness and R-values of insulation shall be installed in the following locations of the Residence:  Block Perimeter Walls - Type AL Foil, and R-4.3; Frame Perimeter Walls – type Batts, and R-11; Flat Ceiling – type Blown, and R-30; Vaulted Ceiling – type Batts, and R-30.  R-value means the resistance of insulation to heat flow. The higher the R-value the greater the insulating power.

11.     Extras; Options; Changes.

(a)     Should Owner request any extras, options or changes to the plans or specifications attached hereto as Exhibit "A," the Developer, in its sole discretion, shall have the right to determine whether the Developer will accept the request and contract with the Owner to provide the extras, options, or ("Changes").

(b)     The Owner acknowledges that to reduce the time and expense of reappraisals, permit delays, misunderstandings, errors by subcontractors and suppliers, and construction delays, the Developer will strictly enforce the following policies concerning Changes:

(c)     Owner hereby agrees to pay to Developer, upon request, the total charge imposed by Developer for any Changes agreed to by the parties under a written change order and understands that installation of such Changes will not be commenced until payment is received by Developer, unless otherwise agreed to by Developer in writing.  Change Orders shall include a mark up of 5% for overhead and 5% for profit.

(d)     The Owner hereby acknowledges that any Changes that the Developer and the Owner agree to make subsequent to the date of this Agreement may extend the completion date of the home agreed to in paragraph 12, as described by Developer in each Change Order.

12.     Agreement to Complete.

(a)     Developer shall cause the Improvements to be "Substantially Completed" (as hereinafter defined) ___365___ days from the actual start of construction, subject only to delays caused by matters beyond Developer's control.  Developer will start construction within 30 days from the unconditional receipt of a building permit issued by the City of Tampa.  "Substantially Completed" means that the Improvements have been completed in the manner required by this Agreement and a Certificate of Occupancy has been issued by the appropriate governmental agency.  Start of construction is defined as the date on which footings are poured, or in the case of monolithic footings and slab, the day rough plumbing is begun. Developer is not responsible for any damages or inconvenience caused to Owner due to Developer's failure to complete the Improvements within the time period

4

set forth above, so long as completed within 60 days of the time period set forth above.

(b)     Force Majeure. Subject to the other provisions of this Agreement, the Developer agrees to use reasonable efforts to complete all construction specified herein (as set forth in Paragraph 12.a. above). Any delays caused by Owner, change orders, war, strikes, changes in law or regulations after the date hereof, shortage or inability to obtain labor and/or materials, disaster, destruction, or acts of God including, but not limited to rain, hurricane or flood, shall automatically extend the date for completion set forth herein. The Developer shall use reasonable efforts to expeditiously conclude all punch list items.

13.     Brokers. The parties hereto represent, warrant and agree, that there have been no brokers, salesperson or finders engaged for this transaction or entitled to a fee of commission for this transaction except as may be otherwise set forth in this Agreement (see last page). Owner shall indemnify and hold Developer harmless against any fees or commissions, liabilities, costs or expenses claimed by or as a result of any broker, salesperson or finder claiming through or on behalf of Owner. This representation and indemnification shall survive the closing of this Agreement. Owner further acknowledges that Developer's sales representative is acting as an agent for Developer and has a fiduciary duty to Developer.

14.     Time. Time is of the essence of this Agreement.

15.     Severability. In the event any portion of this Agreement should be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect in any way the remainder of this Agreement, which shall continue in full force and effect.

16.     Governing Law. This Agreement shall be construed in accordance with the laws of the State of Florida. The parties hereby agree that venue for any action hereunder shall lie in Hillsborough County, Florida.

17.     Radon Gas Disclosure. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels or radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

18.     Counterparts. This Agreement may be signed in any number of counterparts each of which shall be deemed an original, but all of which together will count as a single instrument.

19.     Construction Industry Recovery Fund. Owner is hereby advised that payment may be made from the Construction Industry Recovery Fund if Owner loses money on a project performed under contract, where the loss results from specified violations of Florida Law by a State Licensed Developer. For information about the Recovery Fund and filing a claim, Owner may contact the Florida Construction Industry Licensing Board at the following number and address: Construction Industry Licensing Board, 7960

5

Arlington Expressway, Room 300, Jacksonville, Florida 32211-7467, Tel.: (904) 727-6530.

20.     Owner's Acknowledgements.  Owner certifies that he/she has read each and every part of this Agreement between Owner and Developer.  No agreements, promises, representations or warranties, whether oral, written or otherwise, made by Developer, its agents or employees, Owner, or by any broker, Developer or any other person, are binding upon the parties hereto unless stated in this Agreement.

Owner acknowledges receipt of copies of the following:
☐     Option Addendum
☒     Floor Plans-to be completed and approved after contact signing per prior discussions
☒     Specifications
☐     Additional Work Order(s)
☐     Berber/Hardwood Disclosure
☐     Homeowners Association Documents
☐     Other Addenda (if applicable)

21.     Adjacent Property.  Developer has informed the Owner and Owner acknowledges and agrees that Developer has no control over any land which is not owned by Developer that may be located adjacent to or in the vicinity of the Property to be purchased by Owner.  As such, Developer makes no representations as to what may or may not be built upon said property of for what purpose the property may ultimately be used.

22.     Inspections:   Owner has the right to enter and inspect the home from time to time during construction.  The Developer will furnish the Owner with a key when the home is locked during construction.  Owner understands a construction site is potentially a dangerous place, and will take all reasonable efforts to ensure their own safety.

23.     Builder's Risk:          Developer will obtain Builder's Risk Insurance Policy and shall be responsible for all deductibles.

24.     Liability Insurance:   Developer shall provide general liability insurance and workman's compensation insurance in accordance with Developer's sample Certificate of Insurance **attached hereto as Exhibit "D."**  Owner shall be named as an additional insured under Developer's general liability insurance policy.

25.     Indemnity:   Developer agrees to indemnify, defend and hold Owner harmless from any and all claims and causes of action and damages, including attorneys' fees, arising out of or relating to the Developer's performance of its work on the home provided that such claims, causes of action and damages are not related to any actions or omissions of Owner, Owner's agents, invitees, licensees, family members or anyone acting with permission or on behalf of the Owner.  Owner shall be required to give Developer written notice of any such claims, causes of action or damages and a reasonable opportunity to take such action as Developer deems appropriate, under the circumstances, to mitigate same.

26.  Assignment:  The Owner may assign this Contract but shall not be released from personal liability and shall be fully responsible for the complete and timely performance of all obligations, duties and responsibilities by the Assignee.

IN WITNESS WHEREOF, this Agreement is entered into as of the date when the last one of Owner or Developer has signed the same.

Dated by Owner this ____day of_____, 2007.

OWNER:                                        DEVELOPER:

Devonshire Properties, a Florida corporation

Owner          Date                           By:_____
                                              Its: President

Owner          Date

JOINDER BY REAL ESTATE BROKER OR ASSOCIATE:  Developer acknowledges the services of n/a_____, Office Telephone No. _____ as a broker on this transaction and further agrees to pay broker a brokerage commission of ____% of the Purchase Price.  Such Broker further acknowledges and agrees that the real estate commission due to said Broker pursuant to this Agreement shall be due and payable at the time of closing.

_____N/a_____                           _____
Brokerage Company                             Agent Cell#, Fax #

_____                      _____
Signature                                     Date
Broker or Realtor Associate

_____                      _____
Print Name                                    Agent ID#

Florida Developer's License Number            CBC035113

7

*Ex 4.6, t A*

# Specifications for 11 Baffin

# Billy and Stacy Peek

**Note: The term stucco is commonly used to refer to a cementious finish applied to the exterior of a home. Although these specifications refer to this coating as stucco, it is technically a cementious finish, and not technically stucco. In any event, builder will comply with all applicable provisions of the Florida Building Codes, regarding application of said cementious finish.**

## General Conditions

Utility Fees

Water Standard Connection - Included

Sewer Standard Connection - Included

Gas (fireplace) Standard Connection – Included if necessary

Permit Fees Standard Permit Fees - Included

Impact Fees Standard Impact Fees - Included

Surveys

Lot With Elevation - Included

Foundation - Included

Final - Included

Architectural Drawings and Engineering Requirements - Included

## Site Work

Fill Dirt for foundation - Included (paid by Billy 700.00)

## Concrete Masonry

All components of concrete shall meet or exceed City of Tampa code requirements.

Monolithic Slab if applicable

Concrete 3000psi

Footings

Concrete 3000 psi

Reinforcing per plans

Size per plans

Foundation Wall (if grade requires)

Number of Courses As Required

Corner cells poured

Other cells per engineering

Continuous under garage door opening

Slab

Reinforcing Fiber Mesh

Vapor Barrier 6 mil

Thickness 4" 3000 psi

Termite Treatment Chemical pretreat below slab w/1 year annual renewable warranty

1st Floor Exterior Walls Per Plan

2nd Floor Exterior Walls Per Plan

Driveway Concrete Pavers with concrete apron at street

## Framing

All framing components to meet or exceed City of Tampa code requirements.

Framing- Exterior Walls

Thickness 4"

P.T. bottom plate 2x4 on 1st floor walls

Sheathing 1/2" CDX 4 ply plywood (or equiv.) w/Tyvek House Wrap (or equiv.)

Anchoring per engineering requirements

Stud Spacing 16" O.C.

Trim per plans

Flashing per plans

Framing - Interior Walls

Ceiling Height 10'

Thickness 4" min.

P.T. bottom plate 2x4 on 1st floor walls

Anchoring per engineering

Stud Spacing 16" O.C.

Framing - Second Floor

Ceiling Height 10'

Subfloor Material 3/4" Advantec T&G glued and nailed

Porch Columns Per Plan

Porch Beam Stucco

# "Stucco" and Sheetrock

Exterior wall Finish Stucco with foam banding and stone columns per plan

Interior Sheetrock Finish Orange Peel all ceilings and walls with square corner bead

# Metals/Vinyl

Soffit and Fascia

Material White Aluminum or Vinyl ventilated

Gutters and Downspouts as required by City of Tampa Stormwater Management Department

Screen Enclosure None

## Roofing

Material Clay Barrel Tile per plan builder approved colors

## Insulation

Area R-Value Material Blown/Batts

Ceilings 30 fiberglass per plan

Frame Wall 11 fiberglass batts

Sound Insulation

Bath walls fiberglass batts

## *Mechanical*

Equipment Type 2 Heat Pumps

Manufacturer Trane/ Carrier (or equiv.)

Capacity Per Load Calculations

Supplies/ Returns Per Load Calculations

Grill Style/finish Adjustable louver, internal damper, white

Thermostats Digital

Supply in all walk in closets

2 zone system, one per floor

Duct material - Supply Flexible

Return Flexible


Venting - Outside

Dryer

Range Hood

Bath Fans


Gas Water heater, fireplace, cook top, grill stub out, dryer


## *Plumbing*


Drain PVC

Supply CPVC

Hose bibs 3 per plan

Icemaker Line to kitchen refrigerator

Water Heater 65 gallon, rapid recovery gas


Fixture allowance including sinks, tubs and faucets is $12,000. Need to be selected at

Rough in so plumber can install proper valves in the wall. Can not be changed to

different brand after installation.

## *Electrical*


Service Overhead

Capacity 200 A

Switch type/color Decora Rocker White

Outlet Type/ color Decora White

Dimmers Family Room, and Dining Room

Recessed Can color White

Garage Ceiling Light Flourescent

Flood Lights 1 double on rear

Decorative fixture and fan allowance $6000

*Allowance includes all fixtures and fan controls, except recessed cans, garage ceiling light and flood lights

Appliances $20,000

Security System Full Perimeter system - all doors and windows

2 keypads

Structured Wiring

Cat V Wire Bedrooms, Kitchen,

RG-6 Cable Bedrooms, Family Room

Central Distribution Panel

Surround Sound Pre-Wiring 5 speaker wires in Family Room and bonus room 1 Center, 2 Front, 2 Rear Lanai speaker wires

## *Doors/ Interior Trim*

All trim is painted

Exterior Doors

<u>Location Material /Style</u>

Front Entry $4,000.00

Lanai French, Steel, Insulated, no grids, 8' tall doors

Garage Overhead Steel Sectional

Opener Included

Interior Doors

    All doors are to be 8' tall on 1st floor and 2nd floor, Six panel smooth hollow core Colonist

    (2 panel solid at 100.00 extra per door)

Trim Style

Cased Windows 3 1/4" Howe Casing, 1st floor and Master Suite

Window Sills Wood Sill, w/ 3 1/4" Howe Skirt

Cased Openings 3 1/4" Howe Casing Throughout

Base Mold 7 1/4"

Crown Molding Double crown 1st Floor and Master bedroom, Single crown upstairs hallways and remaining bedrooms and baths.

**Door Hardware**

Entrance Set Schlage/ Plymouth Antique Brass or ORB

Dead Bolts Schlage Plymouth Antique Brass or ORB

Door Knobs Schlage/ Plymouth Antique Brass or ORB

Hinges Schlage/ Plymouth Antique Brass or ORB

**Main Stair Detail**

Railing Iron (8,000.00 allowance for all iron rails)

Treads and Risers Natural Oak treads and risers (extra charge for different wood treads for example cherry, walnut or maple)

*Windows*

Frame - material type 30,000.00 allowance

*Paint*

Sherwin Williams Paint

Includes up to 3 different interior wall colors (excluding deep colors)


All ceilings 2 coats flat white

Painted interior walls 3 coats flat interior latex including primer

Painted woodwork 3 coats high gloss latex enamel


Exterior "stucco" 3 coats semi-gloss exterior latex including primer

Exterior Wood/Fiberglass 3 coats semi-gloss exterior latex including primer

Metal doors 2 coats semi-gloss acrylic enamel


Exterior Rails      Iron straight picket on lanai, front steps and balcony




*Flooring & Wall Tile*

| Type | Location | Details |
|---|---|---|
| Carpet Allowance | bedrooms/bedroom closets | $25 /square yard installed, yardage price includes 6 lb. Pad |
| Wood | Stairs, 2nd Floor Hall, Bonus room. Entire 1st Floor except any storage areas, and baths, | Engineered Premium 3" wide Red Oak, tongue and groove, pre-finished |
| Floor Tile | Secondary baths, Laundry, front porch. All tile and stone to be set with thin set. Mud set is additional 5.00 per square foot. | $3.00 Material allowance, standard pattern<br><br>$5.OO material master, kitchen, downstairs bath |
| Wall Tile | All Full Baths in Shower and Tub Deck | $3.00 Material allowance, standard pattern |
| | 1 Row Master Shower Wall<br><br>1 Row Master Tub Deck | $10 /L.F |
| Listello | | |

*Cabinets & Countertops*

Total Cabinet Allowance $70,000.00

Granite Countertops

      Kitchen Per Builder Level 2 Selections with undermount Stainless Steel Sink

      3 cm

      Baths Per Builder Level 2 Selections (same color in all baths)

## Additional Features

**Shelving**

Total allowance $8,000

**Interior Glazing None**

Master Bath

      Mirrors 46" high, 1/4" plate glass, counter width, framed

Shower Door 3/8" thick, frameless

Medicine Cabinets none

Private and Jack n Jill Baths 46" high, 1/4" plate glass, counter width, framed

Shower enclosure standard thickness bypass doors

Powder Room Decorative wall hung mirror supplied by owner, builder will install

Medicine Cabinet None

**Bath Hardware Allowance $600**

Mailbox Owner to supply, builder will install.

## *Landscaping*

Automatic Sprinkler System Included, with timer and rain sensor

Sod Floritam St. Augustine

Plantings $6,000 Allowance

Exterior Grill Area    $5,000  Allowance

## Corporate Warranty Deed

**This Indenture,** made , September 30, 2008 A.D.
**Between**
**Devonshire Properties, Inc. ,** a corporation existing under the laws of the State of
Florida, Grantor and Keith A. Willett and Tricia Willett, husband and wife
whose post office address is: 4418 W. Vasconia Street, Tampa, Florida 33629,
Grantee,

**Witnesseth,** that the said Grantor, for and in consideration of the sum of Ten and No/100 Dollars ($10.00  ), to it in hand
paid by the said Grantee, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the said Grantee forever, the
following described land, situate, lying and being in the County of Hillsborough, State of Florida, to wit:

Lot 152, less the West 29 feet and the Westerly 46 feet of Lot 151 of Bel-Mar Revised Unit  No. 11, according
to the map or plat thereof as recorded in Plat Book 25, page 4, of the Public Records of Hillsborough
County, Florida.

Subject to taxes for the current year, covenants, restrictions and easements of record, if any.

Parcel Identification Number: **122820.0000**

**And** the said Grantor does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all
persons whomsoever.

**In Witness Whereof,** the said Grantor has caused this instrument to be executed in its name by its duly authorized officer
and caused its corporate seal to be affixed the day and year first above written.

Devonshire Properties, Inc.

*Signed and Sealed in Our Presence:*

By: _____
Neil Layton
Its: President

Witness Print Name: DONNA M. SORGENFREI

Witness Print Name: KIM DAVIS

(Corporate Seal)

State of        Florida
County of      Hillsborough

The foregoing instrument was acknowledged before me this 30th day of September, 2008, by Neil Layton, the President of Devonshire
Properties, Inc. A corporation existing under the laws of the State of Florida, on behalf of the corporation.
He/She is personally known to me or has produced driver's license as identification.

_____ (Seal)
Notary Public
Notary Printed Name: DONNA M. SORGENFREI

My Commission Expires::

Notary Public State of Florida
Donna M Sorgenfrei
My Commission DD481128
Expires 10/25/2009

Prepared by:
Donna M. Sorgenfrei, an employee of
Tampa Title Company,
3321 Henderson Boulevard, Suite 200
Tampa, Florida 33609

File Number: 08-0306

EXHIBIT
C

## NOTICE OF TERMINATION

Prepared by:
Donna M. Sorgenfrei
Tampa Title Company
3321 Henderson Boulevard, Suite 200, Tampa, Florida  33609
File number: 08-0306

The Undersigned hereby gives Notice of Termination of the Notice of
Commencement recorded in O.R. Book 18409 page 286,
of the Public Records of Hillsborough County, Florida.

1. Description of property: Lot 152 less the West 29 feet and the Westerly 46 feet of Lot 151 of BEL-MAR REVISED
   UNIT NO. 11, according to the map or plat thereof as recorded in Plat book 25, page 4, of the Public Records of
   Hillsborough County, Florida.

2. Address: 4418 W. Vasconia Street, Tampa, Florida 33629

3. General Description of Improvements: Construction of home

4. Owner information:
   a. Name and Address:
      Devonshire Properties, Inc., 3412 W. Bay to Bay Blvd., Tampa, Florida 33629
   b. Interest in Property:  FEE SIMPLE

5. Contractor:        Devonshire Properties, Inc.

6. Surety:           n/a

7. Lender Name     :       Mercantile Bank
   Lender Address:         2307 W. Kennedy Blvd., Tmapa, Florida  33609

8. Persons within the State of Florida designated by Owner upon whom notices or other documents may be served as
   provided by Section 713.13 (1)(1)7, Florida Statues:

9. In addition to himself, Owner designates N/A to receive a copy of the Lienor Notice as provided in Section
   713.13(1)(b), Florida Statutes.

10. Expiration of Commencement (the expiration date is One Year from recording unless a different date is specified).
    Expiration date:  09/30/2008

11. Pursuant to Florida Statutes Section 713.132, the Notice of Commencement is terminated as of 09/30/2008 (but not
    less than 30 days after the Notice of Termination is recorded.

12. This Notice of Termination applies to all real property subject to the Notice of Commencement.

13. To the best of Owner's knowledge, all lienor have been paid in full.

14. A copy of this document is being provided to the Contractor and to anyone who has provided Owner or its designee
    with a Notice to Owner as provided in Florida Statues Section 713.06(2)(c)(d).

Devonshire Properties, Inc.
by:_____          _____
Neil Layton, President
State of Florida
County of Hillsborough

The foregoing instrument was acknowledged before me September 30, 2008 by Neil Layton, President of Devonshire
Properties, Inc., who is personally known to me or who produced driver's license as identification and who did not take an
oath.

_____
Notary
Print Notary name:   **DONNA M. SORGENFREI**
Commission Expires:_____
Notary Seal

Notary Public State of Florida
Donna M Sorgenfrei
My Commission DD481120
Expires 10/25/2009

Notice Of Termination
Closers' Choice

## NOTICE OF TERMINATION

Prepared by:
Donna M. Sorgenfrei
Tampa Title Company
3321 Henderson Boulevard, Suite 200, Tampa, Florida  33609
File number: 08-0306

The Undersigned hereby gives Notice of Termination of the Notice of
Commencement recorded in O.R. Book 18310, Page 904
of the Public Records of Hillsborough County, Florida.

1. Description of property: Lot 152 less the West 29 feet and the Westerly 46 feet of Lot 151 of BEL-MAR REVISED UNIT NO. 11, according to the map or plat thereof as recorded in Plat book 25, page 4, of the Public Records of Hillsborough County, Florida.

2. Address: 4418 W. Vasconia Street, Tampa, Florida  33629

3. General Description of Improvements: Construction of home

4. Owner information:
   a. Name and Address:
      Devonshire Properties, Inc., 3412 W. Bay to Bay Blvd., Tampa, Florida  33629
   b. Interest in Property:  FEE SIMPLE

5. Contractor:          Devonshire Properties, Inc.

6. Surety:          n/a

7. Lender Name    :       Mercantile Bank
   Lender Address:        2307 W. Kennedy Blvd., Tmapa, Florida  33609

8. Persons within the State of Florida designated by Owner upon whom notices or other documents may be served as provided by Section 713.13 (1)(1)7, Florida Statues:

9. In addition to himself, Owner designates N/A to receive a copy of the Lienor Notice as provided in Section 713.13(1)(b), Florida Statutes.

10. Expiration of Commencement (the expiration date is One Year from recording unless a different date is specified). Expiration date:  09/30/2008

11. Pursuant to Florida Statutes Section 713.132, the Notice of Commencement is terminated as of 09/30/2008 (but not less than 30 days after the Notice of Termination is recorded.

12. This Notice of Termination applies to all real property subject to the Notice of Commencement.

13. To the best of Owner's knowledge, all lienor have been paid in full.

14. A copy of this document is being provided to the Contractor and to anyone who has provided Owner or its designee with a Notice to Owner as provided in Florida Statues Section 713.06(2)(c)(d).

Devonshire Properties, Inc.
by: _____          _____
Neil Layton, President
State of Florida
County of Hillsborough

The foregoing instrument was acknowledged before me September 30, 2008 by Neil Layton, President of Devonshire Properties, Inc., who is personally known to me or who produced driver's license as identification and who did not take an oath.

_____
Notary
Print Notary name:  DONNA M. SORGENFREI
Commission Expires: _____
Notary Seal

Notary Public State of Florida
Donna M Sorgenfrei
My Commission DD481128
Expires 10/25/2009

Notice Of Termination
Closers' Choice

**AFFIDAVIT OF BUYER AND SELLER REGARDING CONTRACT COMPLIANCE**

State of Florida
County of Hillsborough

BEFORE ME, the undersigned authority, personally appeared, Devonshire Properties, Inc., a Florida corporation (hereby called the "Seller") and Keith A. Willett and Tricia Willett, husband and wife (hereby called the "Buyer") who, being first duly sworn deposes and says:

1.    That all of the contingencies and conditions set forth in the contract (and all addendums thereto) between the Seller and the Buyer have been satisfied, performed or waived by the Buyer and the Seller. There are not unperformed contractual obligations of the Seller or the Buyer which remain to be performed or satisfied after the closing EXCEPT the following:

2.    Seller and Buyer indemnify, release and hold Tampa Title Company, its employees, agents and underwriters harmless from any liability for claims or damages arising out of or in any way connected with any unperformed contractual obligations, contingencies or conditions, remaining to be performed or satisfied by the parties after this date.

Devonshire Properties, Inc., by Neil                    - Seller
Layton, President

Keith A. Willett                                        - Buyer

Tricia Willett                                          - Buyer

SWORN TO AND SUBSCRIBED BEFORE ME THIS 30th day of September, 2008 by : Neil Layton, President of Devonshire Properties, Inc., a Florida corporation and Keith A. Willett and Tricia Willett, husband and wife.

WHO PRODUCED A driver's license AS IDENTIFICATION AND WHO TOOK AN OATH.

NOTARY PUBLIC

Notary Public State of Florida
Donna M Sorgenfrei
My Commission DD481128
Expires 10/25/2009

MY COMMISSION EXPIRES:

# COUNTY TAX PRORATION STATEMENT

FILE NUMBER: 08-0306

PROPERTY: 4418 W. Vasconia Street, Tampa, Florida  33629

DATE: September 30, 2008

LEGAL: Lot p/o 151 & 152, Bel-Mar Revised Unit No. 11, Book 25, Page 4,  Hillsborough County, Florida

It is understood between the parties hereto that the exact amount of real property taxes applicable to the subject property for the current year is unknown.  The tax proration herein was therefor based upon estimated taxes in the amount of **$3,604.21**

Should actual taxes for the current year vary from estimated taxes, each party shall have the right to demand and receive from the other a reproration of taxes and reimbursement for the prorated amount of variation thereof.  Each party consents to such proration and agrees to look to the other party should a reproration become necessary, and  to save and hold harmless as to such proration the mortgagee, realtors and closing attorney and/or agent.

|  PURCHASERS |  SELLERS |
| --- | --- |
| Keith A. Willett                           - Buyer | Devonshire Properties, Inc., by Neil Layton,    - Seller<br>President |
| Tricia Willett                               - Buyer | |

# TAX RE-PRORATION WORKSHEET

Actual bill paid equals $ _____          divided by 365 equals $ _____          , the daily tax rate.

$ _____ , the daily tax rate times   274    , the number of days prorated per closing statement equals

$ _____           , the actual proration.

| | |
| --- | --- |
| Actual tax proration | $ |
| LESS: Estimated tax proration | $ 2698.23 |
| Difference, actual vs. Estimated taxes | $ |

If difference is a positive number, Seller owes Buyer the difference.
If difference is a negative number, Buyer owes Seller the difference.

Closer's Choice County Tax Proration

# PAY-OFF AFFIDAVIT

State of Florida

County of Hillsborough

I/WE the undersigned, under penalties of perjury, do hereby state that we are aware that the payoff figures used by Tampa Title Company are received in good faith by our lender.

Any additional funds required by said lender, to pay loan in full, will be our sole responsibility and I/We hold Tampa Title Company and Old Republic National Title Insurance Company, harmless from any and all recourse, liability or loss arising from any shortages that may occur.

_____ - Witness

_____ - Witness

Devonshire Properties, Inc., by Neil   - Seller
Layton, President

_____ - Seller

The Foregoing instrument was acknowledged before me this September 30, 2008

_____
Notary Public
State of Florida at large

Notary Public State of Florida
Donna M Sorgenfrei
My Commission DD481128
Expires 10/25/2009

My Commission Expires: _____

STATE OF Florida                    )          **NON-FOREIGN PERSON AFFIDAVIT**
                                    )                  (Corporate Seller)
COUNTY OF                           )

The undersigned, as President of Devonshire Properties, Inc. (Owner), being first duly sworn, states under penalties of perjury as provided under Internal Revenue Code Section 1445(b)(2):

1.    That Owner is the transferor of all of that certain property located in 4418 W. Vasconia Street, Tampa, Florida 33629, as more particularly described on EXHIBIT A attached hereto and made a part hereof for all purposes;

2.    That Owners United States taxpayer identification number is __-_____; and

3.    That Seller is not a foreign person as that term is defined in Section 1445(f)(3) of the Internal Revenue Code.

This affidavit is given for the purpose of establishing and documenting the nonforeign affidavit exemption to the withholding requirement of Section 1445 of the Internal Revenue Code.

Devonshire Properties, Inc.

_____(L.S.)
Neil Layton, President

Sworn to and subscribed
before me on September 30, 2008

_____
Notary Public

My commission expires:

Notary Public State of Florida
Donna M Sorgenfrei
My Commission DD481128
Expires 10/25/2009

(Notarial Seal)

Non Foreign FRPTA - Affidavit - Corporate
Closers' Choice

Prepared by and return to:
Tampa Title Company
Donna M. Sorgenfrei
3321 Henderson Boulevard, Suite 200
Tampa, Florida 33609

File Number: 08-0306
Folio Number: 122820.0000

# CORPORATE OWNER/SELLER AFFIDAVIT

State of Florida
County of Hillsborough

The undersigned, Neil Layton, ("hereinafter Affiant) being first duly sworn, deposes and says that Affiant has personal knowledge of the following facts:

1.   I am President of Devonshire Properties, Inc. hereinafter referred to as "Entity".

2.   That Entity is not a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Internal Revenue Code and the Income Tax Regulations under the Internal Revenue Code).

3.   That Entity's U.S. Employer Identification Number is:

     __-_____.

4.   That Entity's Office Address is: .

5.   That Entity owns the property described as follows:

     Lot 152, less the West 29 feet and the Westerly 46 feet of Lot 151 of Bel-Mar Revised Unit No. 11, according to the map or plat thereof as recorded in Plat Book 25, page 4, of the Public Records of Hillsborough County, Florida.

     And its possession thereof has been peaceable and undisturbed and the title to said property has never been disputed or questioned to our knowledge, nor do we know of any facts by reason of which the title to, or possession of said property might be disputed or questioned, or by reason of which any claim to any said property might be asserted adversely to me.

6.   There are no tenancies, leases or occupants.

7.   No proceeding in any bankruptcy or receivership have ever been instituted by or against Entity, and we have never made an assignment for the benefit of creditors.

8.   I know of no action or proceedings relating to said property which is now pending in any State or Federal Court in the United States, nor do we know of any State or Federal Judgment or any Federal Lien of any kind or nature whatsoever, which now constitutes or could constitute a lien or charge upon the subject property.

9.   There are no judgments against us unpaid or unsatisfied of record, IRS liens and/or State Revenue Liens in any court

Affidavit - Owner - Seller - Corporate (Page 1 of 2 pages)
Closers' Choice

of this State or of the United States and said property, as far as we know is free from all leases, mortgages and other liens and encumbrances except as disclosed in Commitment No.  issued through Old Republic National Title Insurance Company.

10.   There are no loans of any kind on said property except the following:

      one mortgage

11.   There are no unpaid bills or claims for labor or services performed or material furnished or delivered during the last twelve months for alterations, repair work, or new construction on said property which have not been paid for in full except those as shown on the closing statement of this transaction.

12.   There is no contract for the making of repairs or improvements on said property.

13.   There is no outstanding unrecorded contract for sale of subject property to any person or persons or corporations whatsoever, other than that certain contract to Keith A. Willett and Tricia Willett, husband and wife nor are there any chattel mortgages, security agreements, financing statements nor any other conveyance affecting the title to the property described herein except as disclosed in Commitment Number , issued through Old Republic National Title Insurance Company.

14.   There are no unpaid real estate taxes and/or tangible taxes due on subject property except as disclosed in Commitment Number , issued through Old Republic National Title Insurance Company.

15.   That there are no matters pending against Entity that could give rise to a lien that would attach to the property between the disbursing of the funds and the recording of the interest to be insured, and that the affiant has not and will not execute any instrument that would adversely affect the title or interest to be insured.

This affidavit is made and given to induce Tampa Title Company to issue a policy of title insurance.

**Devonshire Properties, Inc.**

Neil Layton, President

State of Florida
County of Hillsborough

The foregoing instrument was sworn to and subscribed before me this 30th day of September, 2008, by  Neil Layton, who is personally known to me or who produced driver's license as identification and who did take an oath.

Notary Public

Notary Printed or Typed Name

My Commission Expires: _____

Notary Public State of Florida
Donna M Sorgenfrei
My Commission DD481128
Expires 10/25/2009

Affidavit - Owner - Seller - Corporate (Page 2 of 2 pages)
Closers' Choice

# Home Protection Plan

## Introduction

This introduction provides a general overview of the coverage's in the Devonshire Properties, Inc. ("DPI") ("The Builder") Protection Plan, which consists of the Limited Warranty and Performance Standards. The specific details, limitations and conditions of the DPI Protection Plan are described in the Limited Warranty, which is provided to you ("The Homeowner") in this book. In general, the DPI Protection Plan is a commitment that materials and workmanship are warranted for one year from the time of closing.

Some appliances, equipment and other components included in the home are not warranted by the DPI Protection Plan, but are covered by separate warranties provided by the manufacturer or supplier. These warranties are assigned to The Homeowner at the time of closing.

**The Spirit of the Warranty** — Our warranty commitment is easy to understand and is based on COMMON SENSE. We believe The Homeowner has a right to expect a clean home complete and free of defects at the time of closing. Things should work. If there are problems because of defects in materials and workmanship, as outlined above and described in more detail later, The Builder will arrange for their repair or replacement. If a problem results from actions by occupants of the home or others, or from ordinary wear and tear, The Builder is not responsible for the resulting repair or replacement.

**The Rights of Your Home** — We view your warranty in terms of what you, as our customer, have a right to expect. We view the issue of preventative maintenance in terms of what your home has a right to expect from you. None of the materials used in the construction of your home will last forever; however, most will last for a long time if properly maintained. It is our desire to help you understand how to prolong the life of your home through regular maintenance that is appropriate for the types of material used in your home.

The following pages describe in general terms, What the Homeowner Has a Right to Expect from the Builder and What Your Home Has a Right to Expect from You. Following that are sections on the Limited Warranty, Warranty Exclusions, Limitation of Liability, Requesting Warranty Service, Detailed Warranty Information and helpful information on ways to keep your home in good condition.

## A. Your Rights and the Rights of Your Home

This section discusses, in general terms, what you can expect from The Builder in the construction of your home, and what your home should expect from you in ongoing maintenance and care. The actual coverage is described in The Warranty provided in this book.



**What the Homeowner Has a Right to Expect from the Builder:**

**1. Soil Drainage** — Your home should not settle in such a way as to create structural problems during the warranty period.

**2. Concrete Surfaces** — The concrete surfaces in your home should fulfill the functions for which they were intended without excessive settlement, cracking or secondary damage, such as leaking. Since concrete is likely to crack, standards are defined in the detailed Performance Standards which follow.

**3. Structural Integrity** — since human beings using a variety of materials construct homes, small tolerances are normal. What we consider unacceptable tolerances are defined in the detailed Performance Standards that follow.

**4. Intrusion of the Elements** — Your home should not leak. Exceptions might occur such as when a driving rain forces water into vents, windows or under doors. Under normal circumstances, your home should protect you from the intrusion of the elements.

**5. Mechanical Systems** — Those systems installed in your home to provide power, water, treated air, ventilation and waste disposal should work.

**6. Finished Surfaces** — Finished surfaces should maintain uniform or characteristic appearances for a reasonable period of time. Cracks or surface deterioration should be repaired as provided in the Limited Warranty.

**7. Care & Maintenance** — Although things wear out, components in your home should last a reasonable length of time (assuming you give them appropriate care and maintenance). As time goes on, adjustments will be required.

**8. Common Elements** — If your new home is part of a multi-family development, the common elements should be in the same clean and completed condition as your unit. This includes entries, common hallways, common utility and service areas.

**What Your Home Has a Right to Expect from You:**

1. Your home and lot were designed with a particular drainage pattern, which should carry rainwater away from the foundation. Water should not be directed to the edge of the foundation, either in the form of lot drainage or the watering of flowers.

2. Concrete surfaces should be free of salts (for ice) and excessive weight such as a moving van. Yard drainage should be maintained to divert water away from concrete surfaces; if possible, to eliminate the chance it will undermine the surface and erode the bearing soil.

3. Structural alterations to the home must be performed by professionals who understand the load bearing requirements of the change. The reason that local municipalities require permits for building alterations is to make sure that the structural integrity of the home is maintained.

4. In many cases, the seal around doors and windows is caulk. This material will require annual inspection and any necessary replacement after one to two years. Water from yard and lawn watering devices should not come in contact with the structure.

5. Since the mechanical systems of your home were designed for normal usage, placing unreasonable demands upon them will present problems. Plugging several electrical devices into one circuit may cause it to overload. Loading materials into a drain may cause it to clog. Undue weight should not be placed upon pipes or showerheads because they can break. Some devices must be cleaned periodically (e.g., furnace filters) so that they can do what they were designed to do.

6. Wood requires cleaning and sealing to prevent problems associated with water penetration and continual exposure to the elements. Painted or sealed surfaces must be cleaned and refinished according to the requirements of your geographic area. If this is not done, the surface will deteriorate.

7. Instructions for care and maintenance are included with many components of your home, including finished flooring, appliances and air-handling equipment. By following these instructions you will extend the life of these components.

8. The common areas require the same care and maintenance as your home. Although your homeowner or condo association is responsible for maintenance, all residents should strive to keep these areas clean and usable.

## The Limited Warranty

### A. The Limited Warranty

The Builder's Limited Warranty relates only to "Covered Defects," which are defined as defects in material and workmanship that are either part of the structure or are elements of the home as supplied by The Builder at the date of closing. The existence of a Covered Defect does not constitute a breach of this Limited Warranty; however, The Builder is obligated to

repair or replace the item to conform to the Performance Standards. This is not an insurance policy, nor a maintenance agreement, but a definition of what The Homeowner has a right to expect in terms of warranties.

**Summary of Coverage** — The Builder warrants the construction of the home will conform to the tolerances for materials and workmanship, as defined in the Performance Standards, for a period of one year after the closing date.

If a defect occurs in an item covered by this Limited Warranty, The Builder will repair or replace it to conform to the Performance Standards. In the case of defects in Structural Elements, The Builder will repair or replace the Structural Element to restore the load-bearing function, as designed, and make such other repairs as are necessary to return the home to a safe status. The repair of a defect will include the correction, replacement or refinishing of only those surfaces, finishes and coverings that were damaged by the defect and that were a part of the home when the title was first transferred by The Builder. The Builder will repair or replace surfaces, finishes and coverings that require removal in order for The Builder to repair or replace a defect. The extent of the repair or replacement of these surfaces, finishes and coverings will be to approximately the same condition they were in prior to the defect, but not necessarily to a "like-new" condition. The Builder cannot guarantee, nor does it warrant, exact color matches with the original surrounding area due to factors such as fading, aging or unavailability of the original materials.

The Builder assigns The Homeowner warranties for particular appliances and equipment furnished by the manufacturer to The Builder. The Builder provides no warranty on those items except where the malfunction is due to damage during installation or improper installation. If it is necessary to request warranty service in such a case, The Homeowner must make a request directly to the manufacturer. In the unlikely event that the manufacturer is not responsive to the request, The Builder will assist The Homeowner in attempting to obtain the necessary repairs or replacements from the manufacturer.

The benefits included in this Limited Warranty are only available when service is requested according to the procedures established by The Builder and included in your warranty material. In addition, The Homeowner's failure to reasonably provide access to the home during normal working hours for making repairs will relieve The Builder from its obligations under this warranty. The Builder's aggregate total liability shall not exceed the original contract price of the home.

The Builder reserves the right to use its judgment in determining the most appropriate method of repairing warranty defects. The Builder's offer to resolve an issue for which it bears no responsibility under this Limited Warranty does not create the responsibility to provide the resolution in another situation for which it bears no responsibility. Actions taken to cure defects will not extend the period of coverage specified in this Limited Warranty or any applicable statutes of limitation or repose.

## B. Warranty Exclusions

This Limited Warranty excludes any loss or damage which is not a Covered Defect, including:

1. Loss of, or damage to, any real property which is not part of the home covered by this limited warranty and which is not included in the original purchase price of the home as stated in the closing documents.
2. Any damage to the extent it is made worse by:
   a. Negligence, improper maintenance, or intentional or improper operation by anyone other than The Builder, its agents or subcontractors, including, but not limited to, damage resulting from rot, corrosion or rust.
   b. Failure by The Homeowner or anyone other than The Builder, its agents or subcontractors to comply with the warranty requirements of manufacturers of appliances, fixtures and equipment.
   c. Failure by The Homeowner to give timely notice to The Builder of any defects.
   d. Changes in the grading of the ground by anyone other than The Builder, its agents or subcontractors.
   e. Changes, alterations or additions made to the home by anyone other than The Builder, it's agents or subcontractors after the Limited Warranty commencement date.
   f. Dampness or condensation due to The Homeowner's failure to maintain adequate ventilation.
3. Loss or damage that The Homeowner has not taken timely action to minimize.
4. Any defect caused by, or resulting from, materials or work supplied by someone other than The Builder, its agents or subcontractors.
5. Normal wear and tear or normal deterioration.
6. Loss or damage not otherwise excluded under this Limited Warranty, which does not constitute a defect in the construction of the home by The Builder, its agents or subcontractors.
7. Loss or damage caused by, or resulting either directly or indirectly from, accidents, riots and civil commotion, theft, vandalism, fire, explosion, power surges or failures, smoke, water escape, falling objects, aircrafts, vehicles, acts of God, lightning, windstorm, hail, tornado, hurricane, mudslide, earthquake and volcanic eruption.
8. Loss or damage caused directly or indirectly by flood, wind-driven water, surface water, waves, tidal waves, overflow of a body of water, or spray from any of these (whether or not driven by wind), water which backs up from sewers or drains, changes in the water table which were not reasonably foreseeable at the time of construction, or water below the surface of the ground (including water which exerts pressure on, or seeps or leaks through, a building, sidewalk, driveway, foundation, swimming pool or other structure), wetlands, springs or aquifers.
9. Loss or damage caused by soil movement, including subsidence, expansion or lateral movement of the soil (excluding flood and earthquake), which is covered by any other

Devonshire Properties Home_Protection_Plan1

insurance for which compensation is granted by state or federal legislation.

10. Loss or damage to the home, persons or property directly or indirectly caused by termites, other insects, birds, vermin, rodents or other wild or domestic animals.

11. Loss or damage resulting from the use of the home for non-residential purposes.

12. Any condition which does not result in actual damage to the home, including, but not limited to, un-inhabitability or health risk due to the presence or consequence of electromagnetic fields (emfs), radon gas, mold, formaldehyde or other pollutants and contaminants; or the presence of hazardous or toxic materials.

13. Bodily injury or damage to personal property.

14. Loss or damage caused by, or resulting from, abnormal loading of Structural Elements by The Homeowner, which exceeds design loads as mandated by codes.

15. Consequential damages including, but not limited to, costs of shelter, food, transportation; moving and storage; any other expenses related to inconvenience or relocation during repairs to the home; and any diminution of the market value of the home.

1. **C. Limitation of Liability**

It is understood and agreed that the builder's liability, whether in contract, tort, statute, negligence or otherwise, is limited to the remedy provided in this Limited Warranty. The Builder's obligations under this Limited Warranty, and under the purchase agreement, are limited to repair and replacement. Under no circumstances shall the builder be liable for any special, indirect or consequential damages, including without limitation any damages based on a claimed decrease in the value of the home, even if the builder has been advised of the possibility of such damages. This Limited Warranty is the only warranty applicable to this purchase. all other warranties, expressed or implied, including, but not limited to, all implied warranties of fitness, merchantability or habitability, are disclaimed and excluded.

**D. Requesting Warranty Service**

The Builder has made submitting warranty requests very easy.  You may submit a warranty request by any one of the following methods.

1. Visiting our website devonshireproperties.com and filling out a warranty from online.
2. By mail to P.O. Box 740, Tampa, FL 33601
3. By fax to (813) 831-7194
4.  Or personally dropping a written request to our office at 3106 W. Bay to Bay Blvd., Tampa, FL 33629.  Your request must be in writing, we do not take verbal or phone requests.

## THE BUILDERS PERFORMANCE STANDARDS

This section establishes the standards by which it will be determined whether the concern you have with some element of your home is covered by this Limited Warranty and is the obligation of The Builder to correct.  Where specific standards and actions are not shown, the standard shall be the accepted industry practice for workmanship and materials.

| CATEGORY | ITEM | OBSERVATION | ACTION REQUIRED |
|---|---|---|---|
| CONCRETE SLAB | EXPANSION JOINTS | Cracks appear in the expansion joints on concrete foundation surfaces | Such action was the intent of the engineered joint. No action is required. |
| | FLOOR | Depression in floor exceeding ¼" in 32" length | The Builder will fill area to tolerance |
| | | Uneven floor area where crown exceeds ¼" in 32" length | The Builder will fill area to tolerance |
| | CONCRETE BLOCK WALLS | Cracks in the foundation walls that exceed 1/8" in width of vertical displacement | The Builder will patch voids in the wall. |
| CABINETS | KITCHEN/BATH | Cabinets separate from wall or ceiling ¼" measured diagonally | The Builder will repair. |

| | | | |
|---|---|---|---|
| | | | |
| | | Cracks in door panels | The Builder will replace. |
| | | Door warpage exceeding ¼" in height and width | Door will be replaced. |
| | | Misalignment of doors | The Builder will adjust. |
| | | Variation in stain color | Due to normal grain variations, The Builder cannot guarantee stain color. |
| CHIMNEY & FIREPLACE | CHIMNEY | Chimney separation exceeding ½" from attached structure | The Builder will determine cause of separation and correct as necessary. |

| | FIREPLACE | Smoke escapes into living area | The Builder will correct if problem caused by improper installation or design. NOTE: High winds or external factors such as trees can cause negative draft situations. Make sure damper is fully opened. |
| | | Water infiltration into firebox from the flue | A certain amount of rainwater can be expected under certain conditions. No action is required. |
| | MASONRY | Cracking of firebrick and mortar joints | Intense heat may cause cracking. No action is required. |
| CONCRETE | DRIVEWAYS | Depressions which retain water in excess of 1" deep | The Builder will repair. |
| | FLATWORK | Concrete surfaces settle or heave in excess of 1" where it abuts another concrete surface | The Builder will repair. |

| | | Cracks exceeding ¼" in width or vertical displacement | The Builder will repair by patching. |
|---|---|---|---|
| | GARAGE FLOORS | Disintegration of the concrete surface resulting in the appearance of course aggregate below the surface | The Builder will repair concrete surfaces unless causes by salt or chemical damage. |
| | STOOPS | Stoop settles, heaves or separates in excess of 1" from home | The Builder will repair. |
| COUNTER TOPS | KITCHEN/BATHS | Delamination of counter top material | The Builder will repair. |
| | | Open seams in counter top | The Builder will repair. |
| | | Cracks in marble or granite surfaces | The Builder will repair. |
| | | Gaps between counter top and wall in excess of 3/16" | The Builder will repair. |
| DOORS | EXTERIOR | Failure to operate properly by binding sticking; not latching or sealing | The Builder will make necessary corrections. |
| | | Shrinkage of wood door panels | Panels will shrink and expand and may expose unpainted or unstained surfaces.  No |

| | | | action is required. |
|---|---|---|---|
| | | Warping in excess of ¼" measured diagonally from corner to corner or to the extent they become inoperable or cease to be weather resistant | The Builder will correct or replace and refinish door. |
| | GARAGE | Failure to operate properly | The Builder will correct or adjust door as required. |
| | | Leak (through) or under door | The Builder will make needed adjustments if necessary. Some entrance of the elements can be expected under high conditions. |
| DRYWALL (SHEETROCK) | INTERIOR FINISH | Cracks in drywall, nail pops | The Builder will repair any cracks, nail pops, blisters in tape, and corner bead pops on a one-time basis during first year. |
| | | Excessive waviness or seams visible un normal light | The Builder will repair cracks 1/8" or greater or obvious irregularities. The Builder cannot be responsible for color variation. |

| EXTERIOR | TRIM | Excess warping cupping, splitting or rotting of wooden members | The Builder will repair or replace as necessary. |
|---|---|---|---|
| | | Exterior trim pulls away from its surface | The Builder will re-nail and seal the material to the surface on which it is attached. |
| | | Open joints in exterior trim exceeding ¼" | The Builder will correct the problem, on a one-time basis. |
| | FLASHING | Flashing leaks | Leaks due to improperly installed flashing will be corrected. |
| | WALLS | Cracks in stucco wall | Hairline cracks in masonry is normal.  Thos 1/8" or greater will be repaired. |
| | | Siding material becomes loose or detached | Unless the problem is a result of catastrophic winds, The Builder will correct. |
| | | Siding materials show signs of deterioration and/or delamination | The Builder will hold manufacturer responsible for repairing or replacing faulty material. |
| FLOORING | CARPET | Carpet becomes | The Builder will |

| | | loose at edges | repair. |
|---|---|---|---|
| | | Carpet buckles | The Builder will re-stretch carpet on a one time basis. |
| | | Fading, staining, or discoloration | Manufacturer's warranty will apply if due to carpet defect. |
| | | Premature wearing | Manufacturer's warranty will apply. |
| | HARDWOOD | Gaps in floor | The Builder will make a one-time repair to gaps in excess of 1/8". Hardwood floors will expand and contract due to humidity changes within your home. |
| | | Loose boards | The Builder will repair. |
| FOUNDATION | FLOOR SLAB | Serious cracks and/or deterioration in the foundation floor slab which cause the home to be unsafe or uninhabitable | The Builder will repair cracks and repair the finished floor. |
| | FOOTINGS & WALLS | Serious cracks and/or deterioration in the foundation footings or foundation walls which cause the home to be unsafe | The Builder will make the necessary repairs and/or replacement to the structural elements and |

| | | or uninhabitable | related damage. |
|---|---|---|---|
| FRAMING | BEARING WALLS & BRACES | Deterioration of the bearing walls and/or braces which cause the home to be unsafe or uninhabitable | The Builder will make necessary repairs and/or replacement to the structural elements and related damage. |
| | FLOOR & ROOF SHEATHING | Deterioration of floor and/or roof sheathing which causes the home to be unsafe or uninhabitable | The Builder will make necessary repairs and/or replacement to the structural elements and related damage. |
| | STRUCTURAL FASTENERS | Failure of structural fasteners associated with the structural elements of the home which causes the home to be unsafe or uninhabitable | The Builder will make necessary repairs and/or replacement to the structural elements and related damage. |
| INSULATION | TRUSSES AND/OR JOISTS | Deterioration of floor or joists and or roof trusses or joists which causes the home to be unsafe or uninhabitable | The Builder will make necessary repairs and/or replacement to the structural elements and related damage. |
| | VENTS | Leaking through vents or louvers | The Builder will correct if there are problems with the vents or louvers, but not if the leak is from wind-driven rain or snow. |
| | WALLS/FLOORS | Crowns in walls or floors exceeding | The Builder will correct the |

| | | ¼" in 32" length | problem. |
|---|---|---|---|
| | | Delamination or deterioration of sub flooring | The Builder will repair or replace faulty material. |
| | | Depressions in walls or floors exceeding ¼" in 32" length | The Builder will correct the problem. |
| | | The floor squeaks | The Builder will take corrective action to eliminate loose flooring and minimize squeaks on a one-time basis.  The absence of squeaks cannot be guaranteed. |
| | | Wall is out of plumb over ¼" in a 32" vertical measurement | The Builder will correct the problem. |
| | WINDOWS | Condensation (or frost) | Condensation on interior window surfaces is the result of extreme temperature differences and high levels of humidity inside the home.  No action is required. |

| | | | |
|---|---|---|---|
| | | Defects, including stress cracks or failed seals in insulated windows | The Builder will replace defective glass. Manufacturer's warranty will apply after one year. |
| | | Excess air infiltration | Some infiltration around windows is normal especially during high winds. The Builder will take necessary corrective action by adjusting windows or weather-stripping. |
| | | Fail to operate properly | The Builder will correct or repair as needed. |
| | INFILTRATION | Insufficient insulation | Insulation shall be installed in accordance with applicable energy and building codes. |
| INTERIOR | CERAMIC TILE | Cracks in grout | The Builder will repair. |
| | | Tile cracks or | The Builder will |

|  |  | loosens | repair. |
|---|---|---|---|
|  | DOORS | Door is loose or rattles at latch | The Builder will repair. |
|  |  | Door rubs on jamb | The Builder will repair. |
|  |  | Split in door panel | The Builder will fill split and finish to match as close as possible. |
|  |  | Delamination of door frame | Manufacturer's warranty will apply. |
|  |  | Warping exceeds ¼" vertically or horizontally | The Builder will replace. |
|  | WALL COVERING (THE BUILDER INSTALLED) | Edge mismatched | The Builder will repair. |
|  |  | Nails popping through wall covering | The Builder will repair. |
|  |  | Open seams | The Builder will repair. |
|  |  | Peeling of wall covering | The Builder will repair. |
| MASONRY (BRICK) | EXTERIOR FINISH | 1/8" or greater cracks | The Builder will repair cracks 1/8" or greater by refinishing joints. |
|  |  | Efflorescence on | The Builder will |

| | | masonry walls | correct. |
|---|---|---|---|
| | | Moisture entering home through masonry | The Builder will correct. |
| MECHANICALS | ELECTRICAL | Circuit breakers trip excessively | The Builder will correct. |
| | | Malfunction of outlets, switches or fixtures | The Builder will correct. |
| | HEATING & COOLING | Condensation lines clog up | The Builder will correct. |
| | | Ductwork separates | The Builder will correct. |
| | | Leak in refrigerant lines | The Builder will correct. |
| | | Not heating (cooling) properly | The Builder will take corrective action, if ASHRAE standards are not met. |
| | | Settling of exterior HVAC unit | The Builder will correct excessive settling of 2" or more on a one-time basis. |
| | PLUMBING | Cracks or chips in plumbing fixtures | The Builder is not responsible unless condition is noted on the final walk-through. |
| | | Defective plumbing, fixtures, fittings or | The Builder will repair or replace. |

| | | appliances | |
|---|---|---|---|
| | | Faulty water supply | The builder will make necessary corrections to improperly installed water supply systems, but cannot be held responsible for conditions beyond their control, such as municipal system problems. |
| | | Leakage from any piping (not including condensation) | The Builder will make necessary repairs in any soil, waste, vent or water pipe. |
| | | Leaky faucets | The Builder will repair as necessary. |
| | | Noisy water pipes (ex. Water hammer) | The Builder will correct as necessary. |
| | | Stopped up sewer, fixtures or drains | The Builder will assume responsibility for clogged sewers, fixtures and drains where defective construction or workmanship caused the problem. |
| PAINTING & CAULKING | EXTERIOR | Separation or deterioration of caulk | The Builder will repair. |
| | | Excessive fading or uneven fading on a wall surface | The Builder will correct. |

| | | Flaking, scaling of painted surfaces | The Builder will correct. |
|---|---|---|---|
| | | Mildew appears on painted surfaces | Fungus must be cleaned when detected by homeowner as a maintenance item. No action is required. |
| | INTERIOR | Excessive or differential fading of painted surfaces | The Builder will repair. |
| | | Scaling or flaking of painted surfaces | The Builder will repair. |
| | | Cracking or deterioration of caulking | The Builder will repair on a one-time basis. |
| ROOFING | EXTERIOR | Roof and roof flashing leaks | The Builder will make necessary repairs. |
| | | Shingles blow off roof. | The Builder will reseal or replace unless caused by wind velocities exceeding manufacturers tolerances. |
| | | Uneven shading of roof shingles | Shade variations in shingles are normal.  No action is required. |
| SHEET METAL | GUTTERS | Gutters do not drain | The Builder will assure adequate fall to limit standing water depth to ½". Homeowner will be responsible to keep gutters |

| | | | clean. |
|---|---|---|---|
| | | Leaking gutters | The Builder will correct as necessary. |
| SITE WORK | DRAINAGE | Improper drainage of the sit; standing water or ponding water in the yard beyond a 24 hour period (48 hours on swales) | The Builder will regrade yard or swales in 1st year if proper grades were not established initially. Homeowner is responsible for maintaining drainage of lot. No grading determination can be made during frost conditions. |
| | GRADING | Settlement of soil exceeding 6" in depth | The Builder will fill affected areas on a one-time basis, reinstalling displaced plant material if originally installed by The Builder. |
| | LANDSCAPING | Trees, shrubs and grass die after | No action will be |

| | | move-in | taken. |
|---|---|---|---|