**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.,* Case No. 2:09-cv-6687 (E.D.La.) **Omni II** (*Wiltz, et al v. Beijing New Building Materials Public Limited Co., et al* **10-361**) **Omni III** (*Gross, et al v. Knauf Gips, KG, et al* **09-6690**) **Omni VII** (*Abel, et al v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al* **11-080**) *Hinkley, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.,* Case No. 2:09-cv-06686 (E.D.La.) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF PLAINTIFFS' CLAIMS FOR DAMAGES AGAINST VENTURE SUPPLY**

**I.      INTRODUCTION**

This matter involves the claims of at least 600 Virginia, Georgia, Alabama, and North

Carolina homeowners who have suffered property damages from the use of Venture Supply

Chinese Drywall[1] in their homes.  The Plaintiffs' Steering Committee (PSC) represents hundreds of Venture Supply Chinese Drywall homeowners in these states.

Plaintiffs define the class and subclasses as follows:

> All owners of residential real properties in the states of Virginia, Georgia, Alabama, and North Carolina containing Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by Venture Supply Inc., who have not released or assigned their property damage claims to a third party.

Proposed class counsel and the PSC submit that the MDL claimants will best be served by a class action proceeding on behalf of Virginia, Georgia, Alabama, and North Carolina homeowner subclasses against Venture Supply seeking an award of class-wide property damages for all similarly situated residents.  Certification of these claims will efficiently advance the resolution of a significant set of claims.  The conservation of resources for the Court and the parties of resolving liability on a class-wide basis is substantial, and is available *even if* the Court later determines that some damages issues must be resolved through individualized adjudications.

These claims are ripe for class certification for several reasons:

- First, this court has already overseen extensive CDW-related discovery, expert testimony, and issued judicial Findings of Fact and Conclusions of Law ("FOFCOL"),[2] including the *Germano* case which involves evidence of damage to Virginia homes and the application of Virginia law.[3]

---

[1] The Chinese Drywall ("CDW") at issue in the present case was manufactured by Shandong Taihe Dongxin Co., Ltd. which on September 10, 2007, changed its name to Taishan Gypsum Co. Ltd.  *Germano* Findings of Fact and Conclusions of Law (Docket #2380) (hereinafter "FOFCOL") at 8.  Hereafter, Shandong Taihe Dongxin Co., Ltd. and Taishan Gypsum Co., Ltd. shall be referred to as "Taishan."

[2] *See In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, *Hernandez v. Knauf Gips KG,*

- Second, the law of Virginia, Georgia, Alabama, and North Carolina allows for recovery for property damage.

- Third, this class action is limited to property damage and does not include personal injury.

- Fourth, the proposed subclass representatives from Virginia, Georgia, Alabama, and North Carolina have completed their Plaintiff Profile Forms ("PPF") and provided their product identification information to Venture Supply.

Here, Plaintiffs limit their request for certification to the property damage claims of homeowners from these four states who obtained CDW through Venture Supply. All of the Chinese Drywall (CDW) at issue was obtained from one manufacturer – Taishan. Any class member seeking personal injury (or medical monitoring) relief would need to do so on an individual basis, not through this class action. Furthermore, although the underlying *Germano* Complaint alleges a national class against all Defendants, this motion only seeks to certify four state subclasses, to wit the claims against Venture Supply for Virginia, Georgia, Alabama, and North Carolina homeowners.

This case is highly similar to the *Harrell* case in Florida, where the court certified a class of approximately 150 Florida CDW homeowners who all received defective drywall from the same distributor – Banner Supply. Under Florida law, the state rule for class certification is

---

*et al.*, Case No. 09-6050 (hereinafter "*Hernandez*") Findings of Fact and Conclusions of Law ("FOFCOL") (Docket #2713); I*n re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, *Campbell-Clement/Schexnaydre v. Knauf Plasterboard (Tianjin) Co., Ltd., et al,* Case No. 09-7628 (hereinafter "*Campbell/Clement*"); *see also Germano et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 2:09-cv-6687 (hereinafter "*Germano*") FOFCOL (Docket #2380).

[3] The *Germano* FOFCOL do not have a preclusive effect as against Venture Supply (Consent Order, Docket #546). The *Germano* FOFCOL are cited herein to demonstrate the court's familiarity with the relevant law and evidence; as well as to provide background information to the motion.

based on Federal Rule 23.  *In re: Chinese Drywall Litigation, Harrell v South Kendall Construction*, Order,  Case No. 09-008401 CA (42) (Cir. Ct . of 11th Jud. Cir., Miami-Dade County, Fla., May 27, 2010)  (Compendium of Exhibits  (Comp Ex" ) 14) at 2, 14-16.

The class claims against Venture Supply readily meet the Fed. R. Civ. P. 23(a)(1-4) requirements of numerosity, commonality, typicality, and adequacy, as well as the predominance and superiority requirements of Rule 23(b)(3).

### A.    Numerosity

As to numerosity, available sales and distribution records and the Omnibus Complaints indicate that the number of subclass homeowners exceeds 600.  The number of Virginia homeowners who own homes containing CDW obtained through Venture Supply, and who could qualify as members of the class is estimated to be approximately 400.  The number of Georgia homeowners is likely to be approximately 150.  The number of Alabama homeowners is likely to be at least 15.  The number of North Carolina homeowners is likely to be at least 15.  This evidence establishes numerosity.

### B.    Commonality

Commonality is also easily established.  Plaintiffs will be able to demonstrate that liability is a common issue, as well as entitlement to damages.  Venture Supply's conduct in distributing CDW was the same as it relates to all members of the class and subclasses. Thus, the commonality requirement will be satisfied.

### C.    Typicality

The claims of the subclass representatives are also typical of each of the subclasses.  Mr. and Mrs. Michaux, like each Virginia subclass member, are Virginia homeowners seeking to

recover for damages caused by defective CDW distributed by Venture Supply. Similarly, Mr. & Mrs. Spencer, like each Georgia subclass member, are Georgia homeowners seeking to recover damages caused by defective CDW distributed by Venture Supply. Similarly, Mr. Jeremy W. Dickey, like each Alabama subclass member, is an Alabama homeowner seeking to recover damages caused by defective CDW distributed by Venture Supply. Finally, Mr. and Mrs. Hinkley (who purchased a home with their daughter, Stephanie Hinkley-Lopez), like each North Carolina subclass member, are North Carolina homeowners seeking to recover for damages caused by defective Chinese Drywall Claims distributed by Venture Supply. All subclass members in each state would bring their claims under the same causes of action. Similarly, the subclass representatives' claims, like the claims of all subclass members, are governed by the substantive law of their home state. The subclass representatives possess the same interest and have suffered the same type of injury as other subclass members. Thus, typicality can be readily established.

### D. Adequacy of Representation

Fred and Vannessa Michaux will fairly and adequately protect the interests of the Virginia subclass. Thomas and Virginia Spencer will fairly and adequately protect the interests of the Georgia subclass. Jeremy W. Dickey will fairly and adequately represent the interests of the Alabama class. Curtis and Linda Hinkley and their daughter Stephanie Hinkley Lopez will fairly and adequately protect the interest of the North Carolina subclass. Each proposed subclass representative has already undergone a screening inspection of his or her home to verify the presence of defective CDW distributed by Venture Supply and corrosion damage. Each has completed the court-mandated PPF and provided product identification photographs.

In addition, in regard to the appointment of class counsel, Arnold Levin of Levin, Fishbein, Sedran & Berman; Richard Serpe of Law Offices of Richard Serpe; Jeffrey Breit and Michael Imprevento of Breit, Drescher, Imprevento & Walker; and Richard Lewis of Hausfeld LLP for the Virginia subclass are experienced and competent counsel, as amply demonstrated by their participation in the *Germano, Hernandez,* and *Campbell/Clement* proceedings before this court. Similarly, Russ Herman of Herman, Herman, Katz & Cotler, and Andrea S. Hirsch of Herman Gerel LLP for the Georgia subclass are experienced and competent counsel. K. Edward Sexton, II of Gentle Turner & Sexton and Eric D. Hoaglund of McCallum Hoaglund Cook & Irby, LLP for the Alabama subclass and J. Michael Malone of Hendrin and Malone, PLLC for the North Carolina subclass are experienced and competent counsel. Plaintiffs ask that these counsel be appointed as subclass counsel.

### E.    Predominance

As to predominance, the primary remaining unresolved issues that predominate over any individual issues that may be present in this case are the issues of Venture Supply's liability and the amount of class-wide damages. Plaintiffs will establish herein that the class-wide liability and damages can be determined on a common basis. Venture Supply's course of conduct which caused the property damages to the Plaintiffs and the subclasses impacted all subclass members in a similar way. Plaintiffs and class members suffered the same type of property damages. There will be no difficulty in managing multiple states' laws because the substantive law of the Plaintiff's home state (Virginia, Georgia, Alabama and North Carolina), will govern all claims of the subclass they represent. Plaintiffs have submitted a trial plan for the determination of liability and class-wide damages. (*See* Proposed Trial Plan, filed simultaneously herewith).

6

### F.      Superiority

Plaintiffs will show that the class action mechanism is a superior mechanism to resolve these claims compared to individual proceedings.  The applicable law and the type of recoverable damages are uniform across class members.  It would be grossly inefficient and a waste of judicial economy for different courts to resolve these identical issues on an individual basis, and it would unnecessarily create a risk of inconsistent adjudications.  In sum, if the class is certified, the Court can resolve the issues of class-wide liability and the amount of class-wide damages.  These are common and predominating issues that are thoroughly within the expertise and competence of the MDL Court, particularly after the Court has presided as the finder of fact in the *Germano* remediation and property damages trial and presided over other CDW trials.

### G.      Procedural History

The present matter commenced when Plaintiffs, on behalf of themselves and all other similarly situated owners brought the *Germano* class action against Defendants Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Venture Supply, Inc.; Harbor Walk Development, LLC; and the Porter-Blaine Corp.  Plaintiffs filed their initial complaint in the Eastern District of Virginia on May 1, 2009.  Thereafter, on May 26, 2009, Plaintiffs filed their First Amended Complaint adding Tobin Trading, Inc.  Plaintiffs' case was then transferred to the Eastern District of Louisiana on October 13, 2009 (Docket #450).  Subsequent to transfer, Plaintiffs moved to amend the First Amended Compliant to assert a national class against Taishan.  Plaintiffs' motion to amend was granted.  *Germano* FOFCOL at 5-6.

The Second Amended Class Action Complaint asserts claims against the Defendants for negligence, negligence per se, breach of express and/or implied warranties, private nuisance,

unjust enrichment, violation of the Consumer Protection Acts and for equitable injunctive and medical monitoring. On December 21, 2009, the Court allowed the intervention of seven Plaintiffs including Fred and Vannessa Michaux (Docket # 641). On November 20, 2009, the court granted a preliminary default against Taishan. (Docket #487). The court held an evidentiary hearing on February 19 and 22, and issued Findings of Fact and Conclusions of Law on April 8, 2010. (Docket #2380). The court entered a final default judgment with awards to the seven Plaintiff Intervenors on May 10, 2010. (Docket #3013). Thomas and Virginia Spencer of Georgia and Jeremy W. Dickey of Alabama are parties to the *Wiltz* complaint (Case 2:10-361 E.D.La.) which was filed in this Court on February 10, 2010.

The Hinkley's commenced an action on behalf of themselves and all other similarly situated owners through a class action against Defendants Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Venture Supply, Inc.; and the Porter-Blaine Corp (Case 2:09-cv-00025 FL). Plaintiffs filed their initial complaint in the Eastern District of North Carolina on May 15, 2009. Thereafter, on May 26, 2009, Plaintiffs filed their First Amended Complaint naming Tobin Trading Inc.. Plaintiffs' case was then transferred to the Eastern District of Louisiana on October 15, 2009 (Docket #1 on *Hinkley* docket).

### H. Factual History

From 2004 through 2006, the housing boom and rebuilding efforts necessitated by various hurricanes lead to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast states including Virginia, Georgia, Alabama, and North Carolina. After the installation of the

Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes.  Many of these homeowners also began to complain of experiencing symptoms of irritant effects such as respiratory irritation, headaches and fatigue, which would often dissipate when away from the home.  *Germano* FOFCOL at 12-13.

On November 9, 2005, Venture Supply, Inc., a company in Norfolk, Virginia, provided an original letter of credit in the amount of $429,600.00 to the order of Shandong Taihe Dongxin Co. for 120,000 sheets of drywall to meet all USA ASTM ratings and fire rating standards.  On November 14, 2005, the manager of Venture Supply, Sam Porter, was advised to remove U.S. ASTM requirements from the letter of credit and rely solely upon Chinese ratings.  Venture Supply then contracted with Taishan to purchase drywall.  Accordingly, on November 15, 2005, Venture Supply directed its bank to remove the U.S. ASTM requirement from the letter of credit to Taishan.  The Taishan drywall was never tested for compliance with the ASTM standards. Pursuant to contract, on December 25, 2005, Taishan had 2,000 pallets of drywall shipped aboard the M/V Glykofillousa from the Chinese Port of Loading, Lianyungang.  The shipment arrived in the United States in February, 2006.  *Germano* FOFCOL at 8-10.

On December 16, 2005, a second contract was signed between Venture Supply and Shandong Taihe Dongxin Co. for 100,000 sheets on 2,000 pallets to be shipped to Norfolk, Virginia.  However, the second shipment of drywall was reduced to 53,912 sheets on 586 pallets, which was shipped onboard the M/V Atlantic Fortune from the Chinese Port of Loading, Lianyungang.  This shipment was off-loaded in Camden, New Jersey.  *Id.* at 9.

All of Taishan's drywall sold to Venture Supply bore the following legend on end

binding label tape: "4'x12'x1/2" Gypsum Board Distributed by Venture Supply, Inc." and on the back of the board: "Venture Supply, Inc. MGF. Shandong Taihe Dongxin, Co., Ltd., China." *Id.* at 9.

Venture Supply CDW has been shipped to several states, including Virginia, Georgia, Alabama, and North Carolina, as is demonstrated by Venture's own distribution records, Comp. Ex. 3, and the Exporter, Importer, or Broker Defendant Profile Form Filed on Behalf of Venture Supply, Inc., Comp. Ex. 2.

It has been established by the Consumer Product Safety Commission ("CPSC") and in this proceeding that Chinese drywall, including Taishan drywall (the product distributed by Venture Supply), causes the production of reduced sulfur compounds in the home. The three main compounds that are produced include but are not limited to hydrogen sulfide ($H_2S$), carbonyl sulfide (COS), and carbon disulfide ($CS_2$). The CPSC and Plaintiffs' experts have detected reduced sulfur compounds by conducting laboratory tests on samples of Chinese drywall. These emissions are often associated with strong odors. *Germano* FOFCOL at 12-13. These reduced sulfur compounds were not present within the drywall boards at the time of manufacturing, and did not "escape, migrate, seep, discharge, or become released" from the drywall as those terms are commonly understood.

The reduced sulfur compounds are capable of causing respiratory, eye, throat and skin irritation, cause offending odors in homes, making them hard if not impossible to live in, and are corrosive to metals, particularly copper and silver. *Id.* at 13.

The corrosion of metals caused by the resulting compounds cause premature failure of electrical and mechanical devices. The proposed class representatives have reported premature

failures and corrosion of major appliances and consumer electronics in their homes during their

first three years of use of these homes.  Declaration of Ronald Wright May 10, 2011 ("Wright

Dec.") at ¶¶4-7; Comp. Ex. 4-8**.**  Laboratory analysis of these copper and silver components

from the Virginia homes identified the corrosion as the cause of HVAC coil failure and severe

deposits at the operative connections in the appliances and in consumer electronics.  Mechanical,

electrical, and electronic failures have been shown to have occurred prematurely due to the

severe industrial corrosive environments in these Chinese drywall homes.  Wright Dec. at ¶¶4-7.

Evaluation of comparable HVAC systems, appliances, and electronics in *control* homes (e.g.,

similar homes without Chinese drywall) do not show premature failures of HVAC systems,

appliances, and electronics, and the wires do not have corrosion product thicknesses that would

predict premature failures.  Further, the corrosion on metals poses a fire risk.  The level of

corrosive sulfur compounds in the Virginia subclass representatives' homes exceed the safe level

established by recognized standards, peer reviewed literature, and expert opinions; and cause a

corrosive environment in the home that has a significant impact on the exposed property.

*Germano* FOFCOL at 15-25.

The wires and HVAC coils that were removed from the Virginia subclass

representatives' homes demonstrated both pore corrosion and creep corrosion.  Based solely on

these qualitative Battelle corrosivity criteria, the homes of the Virginia subclass representatives'

are classified as severe industrial corrosive environments.  The homes of the subclass

representatives and absent class members demonstrate similar corrosive effects. Wright Dec. at

¶¶3-7; *Germano* FOFCOL at 21.

The scientific evidence has demonstrated that corrosion has damaged many components

in the home.  Consequently, in these homes all drywall needs to be removed and replaced.

Removal of all drywall in a mixed home is efficient and cost effective.  All electrical wires need

to be replaced.  The insulation jackets on electrical wires do not adequately protect them from

corrosive attack.  It is not feasible to clean the wires of corrosion product to render them free of

risk of future failure.  All copper pipes need to be replaced.  The HVAC units need to be

replaced.  Selective electrical devices and appliances need to be replaced.  Carpet must be

replaced.  Hardwood or vinyl flooring must be replaced.  Cabinets and countertops must be

replaced.  Trim, crown molding, baseboards, bathroom fixtures and insulation must be replaced.

*Id.* at 34-39, 50-52.

In sum, the evidence supports the conclusion that the appropriate remediation for homes

with Venture Supply CDW includes the removal of all drywall, all electrical wiring, the entire

HVAC system, and many other items such as appliances, carpet, cabinetry, trim work and

flooring.  The scope of this remediation is supported by both the scientific and practical evidence

presented.  This remediation is also appropriate for the Virginia, Georgia, Alabama, and North

Carolina subclass representatives and absent subclass members.  Wright Dec. at ¶8.  As part of

the remediation, homes will need to be cleaned with a HEPA vacuum, wet-wiped or power-

washed, and allowed to air-out after remediation.  After remediation, an independent, qualified

engineering company should inspect and certify that the homes are safe for occupation.  Wright

Dec. at ¶8; *Germano* FOFCOL at 27, 53.

This remediation scope of work is consistent with Chinese drywall remediation being

performed by national homebuilders.  The CPSC remediation protocol is also largely consistent

with this scope of work.  *Id.* at 54, 56.

The evidence reviewed by this court indicates that the better and more realistic approach to drywall removal dictates the removal of all drywall in those homes in which there is a substantial mixture, as opposed to selective removal of Chinese drywall on a board-by-board basis. This is necessary in order to remove and replace wires, pipes, and insulation, and to adequately clean the home. Furthermore, the evidence indicates that it is virtually impossible to detect with reasonable accuracy which is and which is not Chinese drywall. *Id.* at 27-33.

To accomplish the remediation, homeowners will be out of their home for 4-6 months during remediation. The families are entitled to alternate living expenses during the remediation process. The costs of repairing Virginia, Georgia, Alabama, and North Carolina homes that have Taishan drywall distributed by Venture Supply can be readily determined based on available data. The need for this sort of repair and remediation is fully applicable to the subclass representatives and absent subclassmembers. Wright Dec. at ¶¶7-9; *Germano* FOFCOL at 57.

The Virginia subclass representatives are Fred and Vannessa Michaux, residents of Virginia who own a home at 901 Eastfield Lane, Newport News, VA 23602. The Georgia subclass representatives are Thomas and Virginia Spencer, resident of Georgia who own a home at 2481 Lakewood manor Drive, Athens, GA 30606. The Alabama subclass representative is Jeremy W. Dickey, resident of Alabama who owns a home at 60 Pinebark Ct., Wetumpka, Alabama 36093. The North Carolina subclass representatives are Curtis and Linda Hinkley and Stephanie Hinkley-Lopez, residents of North Carolina who own a home at 156 Mulberry Lane, Hertford, NC. Each of the subclass representatives has subjected his or her home to a screening inspection which determined product identification of Taishan drywall distributed by Venture Supply and corrosion of metal surfaces in the home, characteristic of Chinese drywall. Wright

Dec. at ¶¶4-7.  In addition, each of the subclass representatives has completed the Plaintiff

Profile Form, as required by court order.  Declaration of Richard Serpe (5/10/11) ("Serpe Dec.")

at ¶4.  The presence of Taishan drywall distributed by Venture Supply in the homes of the

subclass representatives and other absent class members is documented by photographs and

delivery and installation records.  Wright Dec. at ¶¶4-6.  Available records indicate that there are

approximately 400 homes in Virginia, 150 homes in Georgia, at least 5 to 15 homes in Alabama,

and at least 15 homes in North Carolina that were built with defective Taishan drywall

distributed by Venture Supply.  Serpe Dec. at ¶10.

## II.   ARGUMENT

### A.   Standard of Review

The proponents of the class bear the burden of demonstrating that the case is appropriate

for class treatment.  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001).

Class certification is soundly within the district court's discretion, and this decision is essentially

a factual inquiry.  *Vizena v. Union Pac. R.R. Co.,* 360 F.3d 496, 502-03 (5th Cir. 2004).  The

class certification decision should not reach the merits of the Plaintiffs' claims.  *Castano v. Am.*

*Tobacco Co.,* 84 F.3d 734, 744 (5th Cir. 1996).  However, in some cases it is necessary for a

district court to go beyond the pleadings to understand the claims, defenses, substantive law, and

relevant facts in order to make a meaningful certification decision.  *Id*.  The district court must

make specific findings regarding how the case satisfies or fails to satisfy the requirements of

Rule 23 of the Federal Rules of Civil Procedure.  *Vizena,* F.3d at 503.

### B.   The Class is Appropriate for Certification Under the Rule 23(a) Factors.

#### 1.   Numerosity – Rule 23(a)(1)

To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through "some evidence or reasonable estimate of the number of purposed class members." *Pederson v. La. State Univ.,* 213 F.3d 858, 868 (5th Cir. 2000). "Although the number of members of any proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has generally set the threshold of 100 to 150 people as satisfying the numerosity requirement. *Mullen v. Treasure Chest Casino LLC,* 186 F.3d 620, 624 (5th Cir. 1999); *see also Harrell* Order, Comp. Ex. 14, at 3 (152 homeowners meet numerosity requirement in CDW class action).

Analysis of available records indicates the best estimates of the number of homeowners with Venture Supply Chinese Drywall who would qualify as subclass members are approximately 400 in Virginia, 150 in Georgia, at least 5 to 15 in Alabama, and at least 15 in North Carolina. Wright Dec. at ¶9; Serpe Dec. at ¶10. The subclass representatives and absent members of the class all seek remediation and property damages for their homes as the primary form of relief in their claims. Joinder of at least 600 class members is impracticable and would lead to a squandering of judicial economy and the resources of the parties. The evidence demonstrating the estimated number of class and subclass members meets the numerosity requirement.

### 2. Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires that there be issues of law or fact common to the class. The commonality requirement is satisfied if resolution of at least one issue will affect all or a significant number of class members. *James v. City of Dallas,* 254 F.3d 551, 570 (5th Cir. 2001); *Mullen,* 186 F.3d at 620, 625. There is a low threshold for commonality, and the fact that some class members have different claims or require individualized analysis does not defeat

commonality.  *James,* 254 F.3d at 570.

The proposed subclass representatives and the proposed class have numerous factual and legal issues in common, including but not limited to:

- whether CDW obtained through Venture Supply is defective and needs to be replaced;

- whether additional items in the home need to be repaired or replaced;

- the determination of Venture Supply's liability as the distributor or seller, of CDW;

- the determination of the fact of damages to the subclass representatives and members of the class; and

- the availability and amount of class-wide damages.

Thus, the commonality requirement is also satisfied.

### 3. Typicality – Rule 23(a)(3).

Rule 23(a)(3) requires that the claims of the subclass representatives are typical of the class's claims or defenses.  Again, the threshold for typicality is low:  class representatives must show similarity between their legal and remedial theories and the theories of the rest of the class. *Mullen,* 186 F.3d at 625.  Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics – a similar course of conduct, or the same legal theory.  *James,* 254 F.3d at 571 (*quoting* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)); *see also Harrell* Order at 4-8 (finding damage claims of CDW homeowners meets commonality and typicality requirements).

The property damage claims of the subclass representatives are the same as those of the

absent class members.  The determination of these damages depends on the same factual predicate as to the manufacturer of the defective product, product identification, the mechanism of damage occurring in the class members' homes, the need for remediation, and the square footage costs of accomplishing the remediation.  *Murphy,* 234 F.R.D. at 605 (theories of liability of property owners damaged by oil are alike, and support a finding of typicality); *see* Wright Dec. at ¶¶3-9.  Further, the establishment of damages is governed by the identical home state law, (Virginia, Georgia, Alabama, and North Carolina), for all members of each subclass.  Thus, the typicality requirement is readily met.

### 4. Adequacy of Representation – Rule 23(a)(4)

Rule 23(a)(4) demands that the named class representatives fairly and adequately represent the claims of the other class members.  There can be differences between the class representatives and other class members so long as these differences do not "create conflicts between the named Plaintiffs' interests and the class members' interests."  *Mullen,* 186 F.3d at 626.  A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members.  *Id.* (*citing Jenkins v. Raymark Indus.,* 782 F.2d 468, 472 (5th Cir. 1971)).  In addition, the district court should inquire into the zeal and competence of the class representatives' counsel and into the class representatives' willingness to take an active role in the litigation and to protect the interests of absentees.  *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir. 2001).

Under Rule Fed. R. Civ. P. 23(g), a district court must appoint class counsel at the time the class is certified, unless otherwise provided by statute.  The class counsel must fairly and

adequately represent the interests of the class, and the court must review the counsel's work in investigating claims, experience in handling class action litigation, knowledge of the applicable law, and the resources counsel will commit to representing the class.  Rule 23(g)(1)(B),(C).

The proposed subclass representatives, Fred and Vannessa Michaux, Thomas and Virginia Spencer, Jeremy W. Dickey, Curtis and Linda Hinkley and their daughter Stephanie Hinkley-Lopez, have the same interest as absent subclass members in obtaining property damage relief from Venture Supply.  They also all share the same interest in the enforcement of a class judgment and the collection of that judgment against Venture Supply.  The subclass representatives have demonstrated their commitment to the litigation by subjecting their residences to screening inspections to establish product identification and the fact of corrosion damage.  Further, the subclass representatives have timely completed the court ordered PPF and provided product identification information.  Serpe Dec. at ¶4.  Finally, each has agreed to make themselves available for deposition and cooperate with requests to assist this Court and counsel as needed.  Serpe Dec. at ¶11.

The proposed subclass counsel are experienced in class action practice, well respected, and competent lawyers.  Serpe Dec. at ¶12 (attaching Curriculum Vitae of proposed class counsel).  This Court has already had the opportunity to work extensively with several of the proposed subclass counsel and their firms in prior proceedings in this case.  Thus, the Court should find that the proposed subclass representatives, Fred and Vannessa Michaux, Thomas and Virginia Spencer, Jeremy W. Dickey, Curtis and Linda Hinkley and their daughter Stephanie Hinkley-Lopez, are adequate.  In addition, plaintiffs ask the Court find that proposed subclass counsel Arnold Levin of Levin, Fishbein, Sedran & Berman; Richard Serpe of Law Offices of

18

Richard Serpe; Jeffrey Breit and Michael Imprevento of Breit, Drescher, Imprevento, & Walker and Richard Lewis, of Hausfeld LLP for the Virginia subclass, and Russ Herman of Herman, Herman, Katz & Cotler, and Andrea S. Hirsch of Herman Gerel LLP for the Georgia subclass; K. Edward Sexton, II of Gentle Turner & Sexton and Eric D. Hoaglund of McCallum Hoaglund Cook & Irby, LLP for the Alabama subclass; and J. Michael Malone of Hendren and Malone, PLLC for the North Carolina subclass, are adequate counsel.

### a.      Ascertainability

It should be noted that various courts consider *ascertainability* to be a requirement under Rule 23.  Ascertainability pertains to the ability of the Court based on record evidence to utilize objective criteria to determine who is a subclass member (and who is not).  The Fifth Circuit has referred to ascertainability as an "implied prerequisite of Rule 23."  *John v. Nat'l Security Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *see also DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."), *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 728 (4th Cir. 1989); *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir. 1981); 5 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[1], at 23-47 (Matthew Bender 3d ed. 1997) ("It is axiomatic that in order for a class action to be certified, a class must exist.").  Here, the class is ascertainable.  Membership in each subclass is based on two key objective criteria: (1) ownership of a residence in Virginia, Georgia, Alabama, or North Carolina; and (2) the identification of CDW obtained through Venture Supply in that residence.  The determination of CDW in a residence is established through visual identification of known markings.  *See* PTO #10 (Docket #171); Wright Dec. at ¶¶5-6. The determination that Venture

19

Supply was the distributor of the CDW in question can be made based on Venture Supply

invoices and other documentation linking Venture Supply's distribution of Taishan CDW to

construction of residences in these four states.  *See* Exporter, Importer, or Broker Defendant

Profile Form Filed on Behalf of Venture Supply, Inc., Comp. Ex. 2; Taishan Manufacturer

Profile Form, Comp. Ex. 1; and Venture Supply Distribution Records, Comp. Ex. 3.  Thus, the

proposed subclasses meet the ascertainability requirement.

### 5.        Predominance – Rule 23(b)(3)

Rule 23(b)(3) requires that the class share common issues of law or fact that predominate

over the questions affecting individual class members.  In general, in order to predominate,

common issues must form a significant part of the individual cases.  *Mullen,* 186 F.3d at 626.

Specifically, a district court should consider how the cases would proceed to trial, that is,

whether any cases would require individual trials on particular issues.  *See Castano,* 84 F.3d at

744-45 (finding that certification was inappropriate where individual trials would be necessary to

determine an element of the Plaintiffs' fraud claims); *see also Harrell* Order at 10-11 (Claims of

CDW homeowners meet predominance requirement because "issues subject to generalized proof

predominate over issues requiring individual proof because the dominant common question in

each class member's case is whether the drywall installed in his or her home is defective.").

The dual demands of Rule 23(b)(3) are that common issues are significant and will

resolve substantial aspects of the case, and that the case will be manageable for trial purposes.

*Id.*  The issue of Venture Supply's liability for the distribution of defective CDW is a significant

issue that will resolve a substantial aspect of the many claims pending against Venture Supply.

Furthermore property damages can be determined either using a common methodology for each

class member or on a class-wide or subclass basis using a formulaic approach to determine damages such as the one outlined by Plaintiff's expert, Ronald Wright.  Wright Dec. at ¶¶3-10. The ultimate determination of the class-wide damages is also a significant issue that will resolve major aspects of this case and is manageable for trial purposes.  Thus, class-wide liability and damages can be established in an efficient manner and these issues predominate over any individual issues.  Moreover, there are no individual issues associated with any personal injury claims as those claims are excluded from the class.

### a.   Defendant Venture Supply's Course of Conduct is a Common Liability Issue

Here, there can be no dispute that Defendant Venture Supply's conduct in distributing and selling defective CDW to the Virginia, Georgia, Alabama, and North Carolina home construction markets has a common property damage impact on the subclass member homeowners.  Liability is commonly recognized as a predominant issue in the class setting. *Mullen,* 186 F.3d at 626 ("the common issues in this case, especially negligence and seaworthiness, are not only significant but pivotal … If the [Defendant] prevails on these two issues, they will prevail in the case."); *Murphy,* 243 F.R.D. at 606 (Plaintiffs' property damage claims "share large areas of fact in common."); *McQuilken v. A&R Development,* 576 F.Supp. 1023, 1031 (E.D. Pa. 1983) (Involving damage to homeowners' properties caused by construction activity, defendants' conduct is viewed as a common and predominant issue supporting certification).  In *Harrell*, the court found that the "common source of defective drywall," and the "fundamental liability question" to be predominating questions. *See Harrell* Order at 11.

The issue of Venture Supply's liability to the subclasses is highly amenable to class treatment because the evidence of the actual defect, Venture Supply's knowledge of it and conduct related to it, and the type of corrosion damage associated with the product will be the same for all class members.  Thus, a finding of liability for the class would allow hundreds of claimants to proceed directly to the damages phase.  The conservation of resources for the Court and the parties of resolving liability on a class-wide basis is substantial, and is available *even if* the Court later determines that some damages issues must be resolved through individualized adjudications.  *Murphy,* 234 F.R.D. at 605, 607 (individualized damage issues do not prevent a finding of predominance).

**b.    Determination of Class-Wide Damages is a Predominant Issue**

The Proposed Trial Plan suggests a Phase I liability trial to establish general liability and general causation.  Damages would be left to a Phase 2 trial.  This type of bifurcation is well accepted in the Fifth Circuit and does not raise Seventh Amendment reevaluation concerns. *Mullen,* 186 F.3d at 628-629; *Watson v. Shell Oil Co.,* 979 F.2d 1014, 1019-1020 (5th Cir. 1992); *Turner,* 234 F.R.D. at 606; *Turner v. Murphy,* Order and Reasons (March 2, 2006) at 3, 5-6 (Compendium, ("Comp.") Ex.15).  The *Harrell* court also found liability to be a predominant issue that could be bifurcated from damages at trial.  *See Harrell* Order at 12.

Plaintiffs have also put forth expert declarations identifying methodologies to establish damages utilizing common methodologies, formulaic analysis, or individual mini-trials if necessary.  *See* Wright Dec. at ¶¶3-10, Letter Opinion of Lee H. Waronker, MAI, SRA (May 27, 2010) ("Waronker Letter") (Comp. Ex. 12).  The same expert methodologies can be used to determine damages for each member of the class on an individual basis, or for some forms of

relief that can be determined on a class-wide basis.  In addition, previous trials for Virginia and Louisiana homeowners demonstrate benchmark damage awards for the cost of remediation, the alternative living costs, property diminution, loss of use and enjoyment and private property damage.  Thus class-wide liability and damages can be established in an efficient manner. Moreover, there are no individual issues associated with any personal injury claims as those claims are excluded from the class, and there are no choice of law issues, since the plaintiff's home state substantive law applies.

The plaintiffs' demonstrated ability to determine class-wide damages meets the predominance requirement at the certification stage.  *See, e.g., Monumental Life Insurance Co. v. National Life,* 365 F.3d 408, 419 (5th Cir. 2004) ("The policy variables are identifiable on a class-wide basis and, when sorted, are capable of determining damages for individual policy owners; none of these variables is unique to particular Plaintiffs.  The prevalence of variables common to the class makes damages computation 'virtually a mechanical task.'").

As the Eleventh Circuit noted in *Klay v. Humana*:

> In assessing whether to certify a class, the court's inquiry is limited to whether or not the proposed methods for computing damages are so insubstantial as to amount to no method at all . . . . Plaintiffs need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis. Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.

382 F.3d at 1259-60 (internal brackets, quotations and footnotes omitted).[4]  As such, damages

---

[4] Courts routinely have used class-wide, formula-based techniques to calculate individual damages in various types of class actions.  *See, e.g., Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977) (approving aggregate damages judgment), *aff'd*, 444 U.S. 472 (1980); *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003)

can be proven on a class-wide basis and allocation and claims processing issues will not defeat

class certification.  *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 699 (S.D. Fla. 2004)

("Assuming the jury renders an aggregate judgment, allocation will become an intra-class matter

accomplished pursuant to a court-approved plan of allocation, and such individual damages

allocation issues are insufficient to defeat class certification."); *In re NASDAQ Market-Makers

Antitrust Litigation*, 169 F.R.D. at 525 (S.D.N.Y. 1996) ("Aggregate computation of class

monetary relief is lawful and proper.").

Even if some individual damages issues may exist, it is well settled that their presence

does not defeat predominance.  *See Allapattah Servs. v. Exxon Corp*., 333 F.3d 1248, 1261 (11th

Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004) ("[N]umerous courts have

recognized that the presence of individualized damages issues does not prevent a finding that the

common issues in the case predominate."); *Murphy,* 234 F.R.D. at 605, 607 (same); *see also

Harrell* Order at 12-13 ("differences in the value of the property losses suffered by class

members …is not fatal to a class action.").  Any individualized damage issues, for example,

determining individual personal property damage, can be dealt with "pursuant to a court-

approved plan of allocation," or mini-trials.  *Terazosin,* 220 F.R.D. at 699; *see also Turner v.

Murphy,* No. 05-4206, Order and Reasons (March 3, 2006), slip op. at 3 (Comp. Ex. 15) ("Fifth

Circuit has approved of bifurcated trial plans in which common issues of liability, negligence,

and certain defenses are tried commonly, with causation actual damages, and … comparative

fault tried individually.") (Citations omitted).

---

(approving of the use of objective data extracted from the Defendant's computer system and analyzed through a
"mechanical process" in a case involving charging customers for incoming cellular telephone calls.); *see also* 3
Newberg on Class Actions § 10:8.

i.    **Formulaic Method to Determine Class-Wide Property Damages**

Alternatively, damages can be formulaic in nature and amenable to class treatment. Ronald Wright, Plaintiffs' expert, is a Civil Engineer who specializes in the assessment of repair and remediation for home construction.  Mr. Wright has inspected many CDW homes, and developed a methodology to estimate damages for the remediation of CDW homes and the replacement of damaged components including appliances, flooring, cabinetry and other items. Wright Dec. at ¶¶3-10.  He has considered national databases that estimate such costs including RS Means.  More specifically, he has reviewed the real world repair bids of local construction companies to perform the necessary remediation in several homes in different states.  *Id.*  For example, based on his work in Virginia and available Virginia data, Mr. Wright offered the expert opinion in the *Germano* proceeding that the cost of repair for a fair cross-section of Virginia homes would be on average $86 per square foot, which was accepted by the Court. *Germano* FOFCOL at 57-60.  Mr. Wright will be able to use the same methodology to estimate damages for each homeowner, or for some forms of damage he could estimate class-wide damages.  Wright Dec. at ¶¶8-10; *see also Germano* FOFCOL at 57-59, 64-69.

Additional forms of property damage, including alternative living costs, property diminution, loss of use and enjoyment, and personal property losses are also amenable to determination on an individual basis using the same methodology, or some can be amenable to determination on a class-wide basis.  For example, in the case of alternative living costs, the damage amount established in *Hernandez* was $2376.81/month.  *Hernandez* FOFCOL at 42. Real property diminution also can be determined on an individual basis using the same methodology for each home or in a formulaic manner.  *Murphy,* 234 F.R.D. at 607 and n.5

(Court notes that real estate expert "opined that the properties at issue would be properly subject to mass appraisal to determine their present value."); *Sher v. Raytheon Co.,* 261 F.R.D. 651, 2009 WL 31931 52, *19 (M.D. Fla. 2009) (in environmental pollution toxic tort case, court found at class certification that plaintiffs provided a "viable model for calculating property damages on a class-wide basis").

Loss of use and enjoyment and personal property damages could also be assessed for the class on an individual basis using the same methodology or based on a survey of representative homeowners. *In re Chevron U.S.A., Inc.,* 109 F.3d 1016, 1019-20 (5th Cir. 1997) (permitting the use of statistics to draw inferences about the claims of 3,000 plaintiffs and intervenors who claimed wrongful death, personal injury, and property contamination from defendant's storage of hazardous substances which had leaked from crude oil waste pits and migrated into the plaintiffs' drinking water supply.); *see Watson v. Shell Oil Co.,* 979 F.2d 1014, 1018 (5th Cir. 1992) (approving trial court's proposal to determine punitive damages in a mass-tort class-action suit by fully trying 20 sample claims on *compensatory* damages to the jury and then asking the jury to "establish the ratio of punitive damages to compensatory damages for each class member"); *Hilao v. Estate of Marcos,* 103 F.3d 767, 782087 (9th Cir. 1996). The Ninth Circuit Court of Appeals allowed the use of aggregation and statistical analysis to determine compensatory damages where a statistics expert relied on a random sample of claims to calculate damages for the entire class.); *see also,* Newberg on Class Actions at §10:3 (4th ed.) (citing *Long v. Trans World Airlines, Inc.,* 761 F.Supp. 1320, 1324-1326 (N.D. Ill. 1991) (approving use of a sample of class members' damages in labor dispute as a basis to determine class-wide damages.).

26

Thus, class-wide property damages can be established by using a common methodology for each individual class member or by a formulaic method.  This meets the Rule 23(b)(3) predominance requirement.  *Monumental,* 365 F.3d at 419.  *See Harrell* Order at 10-14.  In addition, the FOFCOL from *Germano* and *Hernandez,* as well as the jury verdict in *Seifart,* demonstrate benchmark damage awards for the cost of remediation, the alternative living costs, property diminution, loss of use and enjoyment and private property damage, that may be used by the court as standards of comparison to review the reasonableness of an expert opinion on these damages or an award of class-wide property damages.

> ### c.  All of the Class Claims are Governed by the Plaintiff's Home State Substantive Law

Variation of state law and choice of law are also significant concerns for manageability. *Mullen,* 186 F.3d at 627.  Here, these matters are easily managed because all the claims of the members of each subclass will be governed by their home state's law.  *See Manual for Complex Litigation,* Fourth § 22.634, p. 634; §§22.753-54, p. 652.

Federal courts sitting in diversity must apply the choice of law rules of the forum state. *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); *In re Vioxx Products Liability Litigation*, 239 F.R.D. 450, 454 (E.D. La. 2006).  This case, *Germano,* having been filed initially in Virginia, requires the application of Virginia choice of law rules.  *In re Vioxx Prods. Liab. Litig.,* 478 F. Supp. 2d 897, 903 (E.D. La. 2007)("[T]he MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice of law rules.").  The settled choice of law rule for tort claims in Virginia is *lex loci delicti*—the law of the place of the wrong. *Jones v. R.S. Jones and Assoc., Inc.,* 431 S.E.2d 33 (Va. 1993). The place of the wrong for purposes of

27

the *lex loci delicti* rule is defined as the place where the last event necessary to make an actor liable for an alleged tort takes place, even if the actor has no control over the location of that last event. *Quillen v. International Playtex, Inc.,* 789 F.2d 1041, 1044 (4th Cir.1986).

Based on the above-referenced law, it is clear that substantive Virginia law would apply to a Virginia resident's property damage claim for a residence that is located in Virginia.  For the Virginia subclass representatives and the Virginia subclass, Virginia is the state where the injuries occurred and where the damaged homes are located.  Moreover, "Virginia has a strong interest in 'providing effective means of redress for its residents'" and "plaintiffs have an obvious interest in litigating in their home state."  *First Am. First, Inc. v. Nat'l Ass'n of Bank Women,* 802 F.2d 1511, 1517-18 (4th Cir.1986) (quoting *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).  It is also clear that under Virginia choice of law rules, Georgia law would apply to the claim of a Georgia homeowner.  For the other subclasses, the subclass representatives' and absent subclass members' home states are where the damaged homes are located.

As stated above, the factual determination of class-wide liability and property damages are the predominant common issues to be resolved in this case.  These types of issue are recognized as pivotal class issues.  *Mullen,* 186 F.3d at 626; *Monumental,* 365 F.3d at 419; *Murphy,* 234 F.R.D. at 606; *McQuilken,* 576 F.Supp. at 1031.  The types of issues that are often seen as obstacles to class certification: those that require extensive individualized proof like where class members seeking personal injury damages are exposed to different products, at different times and suffer different injuries; are not present in this case.  *Mullen,* 186 F.3d at 626; *Turner v. Murphy Oil,* No. 05-4206, Order and Reasons, slip op at 13-14 (January 30, 2006)

(Comp. Ex. 17).  Similarly, complex choice of law issues are not involved here.  *Mullen,* 186

F.3d at 627.  In contrast to those cases that have not allowed certification, this case presents class

claims where each class member has suffered the same type of injury, during the same time

period, caused by the conduct of the same defendant, a paradigm for class certification:

> In the present case the plaintiffs are an extremely compact and
> discrete geographical group, readily identifiable.  There are no
> choice of law problems.  All claim to have suffered the same type
> of harm, during the same time period, caused by the same conduct
> of the defendant.   This case is thus similar to those cited above in
> which class certification has been granted.  It also differs from
> those "mass tort" cases in which certification has been denied
> because the harm to various class members took place at different
> times and under different circumstances, or because individual
> defenses or choice of law problems existed.

*McQuilken,* 576 F.Supp. at 1031; *see also Mullen,* 186 F.3d at 626-627.

In sum, the substantive property damage law in Virginia, Georgia, Alabama, and North

Carolina allow for claims for property damage.  *Germano* FOFCOL at 62-65; *Averett v. Shircliff*,

237 S.E.2d 92, 95 (Va. 1977); *Lee v. Bell*, 379 S.E.2d 464 (Va. 1989) (cost of repair is proper

measure of damages if evidence has been introduced showing repair costs); *Mayfield v. State*,

705 S.E.2d 717, 719 (Ga. Ct. App. 2011) (quoting *Allgood Road United Methodist Church v.

Realty Co.*, 421 S.E.2d 113 (Ga. 1992) ("the general rule for the measure of damages involving

real property is the diminution of the fair market value of the property and/or the cost of repair or

restoration."); *MAT Systems, Inc. v. Atchinson Properties, Inc.*, 54 So.3d 371, 378 (Ala. Civ.

App. 2010) ("In determining the proper measure of damages when personal property has been

damaged, 'Alabama adheres to the general principle that one measures damages where personal

property has been damaged by calculating the difference between the reasonable market value of

the property immediately before it was damaged and the reasonable market value immediately

after it was damaged.'"); J. Marsh & C. Gamble, *Alabama Law of Damages* § 7:3 (5th ed.2004) (recognizing that evidence of cost of repair may be a relevant consideration in establishing the difference in value of personal property before and after an injury to that property); *Lakeview Condominium Ass'n v. Village of Pinehurst*, No. COA06-1001, 647 S.E.2d 689 (Table), 2007 WL 2244549, at \*9 (N.C. Ct. App. Aug. 7, 2007) (recognizing that in claims for damages to real property, the appropriate measure of damages may be the cost of repair, the reasonable costs of replacement, or the difference between the market value of the property before and after the injury) (collecting cases).  There is no variation in the law to be applied to members of each subclass.  Subclass-wide liability and damages can be established on a common basis.  The trial of this case on these predominant issues is manageable as demonstrated by the Proposed Trial Plan (filed simultaneously herewith).  The requirements of Rule 23(b)(3) predominance are readily established.

### 6.    Superiority – Rule 23(b)(3)

Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the class action format is superior to other methods of adjudication:  (1) the class members' interest in individually controlling their separate actions, (2) the extent and nature of existing litigation by class members concerning the same claims, (3) the desirability of concentrating the litigation in the particular form, and, (4) the likely difficulties in class management.  Fed. R. Civ. P. 23; *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 304 (5th Cir. 2009).

A class proceeding is the superior method to adjudicate a major subset of claims in the MDL, the property damage claims against Venture Supply in Virginia, Georgia, Alabama, and North Carolina.  The exhaustive record of the relevant factual CDW evidence already reviewed

by and ruled on by this Court greatly enhances the manageability of this matter.  A class proceeding will facilitate an expeditious and streamlined resolution for this significant subset of affected homeowners.  This streamlined proceeding is desirable and necessary because the property damage caused by CDW obtained through Venture Supply has forced some homeowners to abandon their homes and has placed several homeowners under financial pressure including the need to pay two mortgages, loss of credit rating, and foreclosure.  Further, there are no unmanageable obstacles in the trial of these claims.  *See* Proposed Trial Plan.  For all the reasons stated above, as well as the procedural advantages of avoiding duplicate proceedings on identical issues, class adjudication is the superior method to resolve the property damage claims of Virginia and Georgia homeowners against Venture Supply.

## III.     CONCLUSION

In sum, the Plaintiffs can readily establish that the proposed class meets the Rule 23 requirements of numerosity, commonality, typicality, adequacy, predominance and superiority. Plaintiffs respectfully request that the subclasses described herein be certified.

Dated: May 12, 2011                    Respectfully submitted,

                                       **PROPOSED COUNSEL FOR THE
                                       VIRGINIA SUBCLASS**


                                       /s/ Arnold Levin
                                       Arnold Levin
                                       Fred S. Longer
                                       Matthew C. Gaughan
                                       Levin, Fishbein, Sedran & Berman
                                       510 Walnut Street, Suite 500
                                       Philadelphia, PA 19106
                                       Phone: 215-592-1500
                                       Fax: 215-592-4663
                                       Alevin@lfsblaw.com


                                       Richard J. Serpe, Esquire
                                       Law Offices of Richard J. Serpe
                                       Crown Center, Ste. 310
                                       580 East Main Street
                                       Norfolk, VA 23510-2322
                                       rserpe@serpefirm.com
                                       Phone: (757) 233-0009
                                       Fax: 757) 233-0455


                                       Jeffrey Breit
                                       Michael Imprevento
                                       Breit, Drescher, Imprevento & Walker
                                       1000 Dominioni Tower
                                       999 Waterside Drive
                                       Norfolk, VA 23510
                                       Phone: (757) 622-6000
                                       Fax: (757)-670-3895
                                       jbreit@bdbmail.com
                                       mimprevento@breitdrescher.com

Richard S. Lewis (On the Brief)
Hausfeld LLP
1700 K Street, N.W Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

**PROPOSED COUNSEL FOR THE
GEORGIA SUBCLASS**

Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com

Andrea S. Hirsch, Esquire
HERMAN GEREL LLP
230 Peachtree Street, Suite 2260
Atlanta, GA 30303
Phone: (404)-880-9500
Fax: (404)-880-9605
Ahirsch@hermangerel.com

**PROPOSED COUNSEL FOR THE ALABAMA
SUBCLASS**

K. Edward Sexton, II
GENTLE TURNER & SEXTON
501 Riverchase Parkway East, Suite 100
Hoover, Alabama 35244
Phone: (205) 716-3000
Fax: (205) 716-3010
Esexton@gtandslaw.com

33

Eric D. Hoaglund
MCCALLUM HOAGLUND COOK & IRBY, LLP
905 Montgomery Highway, Suite 201
Vestavia Hills, Alabama 35216
Phone: (205) 545-8334
Fax: (205) 824-7768
Ehoaglund@mhcilaw.com

**PROPOSED COUNSEL FOR THE NORTH
CAROLINA SUBCLASS**

J. Michael Malone
Hendrin and Malone PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Phone: (919) 420-7867
Fax: (919) 420-0475
mmalone@hendrenmalone.com

## PLAINTIFFS' STEERING COMMITTEE

Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR,
LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs Liaison Counsel*

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3400
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Matthew C. Gaughan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931

hlambert@lambertandnelson.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com


Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Patrick Montoya
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com


Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836

sweinstein@forthepeople.com


James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630

jrr@lumpkinreeves.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com


Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

### OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com