UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KENNETH ABEL, individually, and on behalf of all others similarly situated, [ADDITIONAL PLAINTIFFS, LISTED ON SCHEDULE OF PLAINTIFFS, ATTACHED HERETO AS EXHIBIT "A"], | CASE NO.: 11-080<br><br>SECTION "L"<br><br>MAGISTRATE (2) |

        Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A
SHANDONG TAIHE DONGXIN CO., LTD;
TAIAN TAISHAN PLASTERBOARD CO.,
LTD.; QINHUANGDAO TAISHAN BUILDING
MATERIALS CO., LTD. A/K/A QINHUANG
DAO TAISHAN BUILDING MATERIALS CO.,
LTD., [ADDITIONAL DEFENDANTS LISTED
ON SCHEDULE OF DEFENDANTS,
ATTACHED HERETO AS EXHIBIT "B"],

        Defendants.

## PETITION IN INTERVENTION

Preservation Alliance of New Orleans, Inc., d/b/a Preservation Resource Center of New Orleans ("PRC"), acting through its program, Rebuilding Together New Orleans ("RTNO")(hereinafter referred to collectively as "PRC" or "RTNO"), files this Petition in Intervention as plaintiff and would show the Court as follows:

1

1.

PRC is a non-profit Louisiana corporation with its principle residence at 923 Tchoupitoulas Street, New Orleans, Louisiana 70130.

2.

PRC intervenes in this proceeding as a party plaintiff against the Manufacturing Defendants and incorporates by reference all allegations against those defendants.   The Manufacturing Defendants are identified as Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., Taian Taishan Plaster Board Co., Ltd., and Qinhuang Dao Taishan Building Materials Co., Ltd. a/k/a Qinhuang Dao Taishan Building Materials Co., Ltd.

3.

PRC is a non-profit organization which promotes the preservation, restoration and revitalization of New Orleans historic architecture and neighborhoods by rehabilitating and revitalizing the homes of low income homeowners, particularly those who are elderly, disabled and single heads of households with minor children.  Following Hurricane Katrina, PRC, through RTNO, focused on total renovation and rebuilding storm damaged homes of the urban poor.

4.

Beginning in or around March 2007, RTNO received drywall from the New Orleans Area Habitat for Humanity ("NOAHH").  NOAHH is a plaintiff in this litigation.  The drywall received by RTNO from NOAHH was manufactured by one or more of the Manufacturing Defendants. RTNO tested and confirmed that some of the drywall from NOAHH was contaminated with elevated

2

levels of sulfur compounds which have or could emit gases causing damage to the homes in which they were placed.

5.

The drywall at issue is predominantly composed of gypsum, but contains sulfur compounds, which are emitted from the Manufacturing Defendants' drywall and cause rapid sulfidation and damage to personal property.  Exposure to the sulfur compounds that are emitted from the Manufacturing Defendants' drywall can also cause personal injuries.

6.

The Manufacturing Defendants' drywall is unfit for its purpose as a building component due to the damaging side effects and/or because its use is so inconvenient that RTNO would not have used the drywall had the side effects been disclosed by the Manufacturing Defendants.

7.

The Manufacturing Defendants tortiously manufactured, distributed, marketed, exported and sold the drywall at issue, which was unfit for its intended purpose and unreasonably dangerous in its normal use, causing physical damage to personal property and potentially personal injury.

8.

Manufacturing Defendants recklessly, wantonly and/or negligently manufactured, distributed, marketed, exported and sold the drywall at issue.

9.

As a direct and proximate result of the Manufacturing Defendants' acts and omissions, RTNO has suffered and continues to suffer damages, including, but not limited to, the cost of

inspections, the cost and expenses necessary to remedy, replace and/or remove the drywall at issue and other impacted property and the costs and expenses for rental property while remedying, replacing and/or removing the drywall at issue.

**10.**

**COUNT ONE**
**NEGLIGENCE**

The Manufacturing Defendants owed a duty to RTNO to exercise reasonable care in the design, testing, manufacture, exporting, distributing, marketing and/or selling of the drywall at issue, including a duty to adequately warn of their failure to do so.

11.

The Manufacturing Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

12.

The Manufacturing Defendants breached their duty to exercise reasonable care in the design, manufacture, exporting, distributing, marketing and/or selling the drywall at issue and in failing to warn RTNO about the problematic/defective nature of the drywall.

13.

The Manufacturing Defendants knew or should have known about the problematic/defective nature of the drywall at issue.

14.

The Manufacturing Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of RTNO with the drywall at issue upon learning it had been sold in an unreasonably dangerous condition.

15.

As a direct and proximate cause of the Manufacturing Defendants' acts and omissions, RTNO was harmed and has incurred damages as a result.

## COUNT TWO
## NEGLIGENCE PER SE

16.

The Manufacturing Defendants owed statutory duties to RTNO to exercise reasonable care in the design, manufacture, testing, exporting, distributing, marketing and/or selling of the drywall at issue.

17.

The Manufacturing Defendants breached their statutory duties to RTNO by failing to exercise reasonable care in the design, manufacture, testing, exporting, distributing, marketing and/or selling of the drywall at issue, including, but not limited to, those imposed under the International Building Code ("IBC") and other State and local building codes, such as ASTMC C1396/C 1396 M-069, and its predecessors.

18.

The Manufacturing Defendants, through the exercise of reasonable care, knew or should have known of the problematic/defective nature of the drywall at issue and that, as a result, it would cause damage to personal property and potentially personal injury.

19.

As a direct and proximate cause of the Manufacturing Defendants' acts and omissions, RTNO has incurred and will continue to incur damages.

20.

## COUNT THREE
## STRICT LIABILITY

The Manufacturing Defendants caused the drywall issue to be placed in the stream of commerce and knew that it would be used without inspection by consumers.  They intended that it be installed in the homes of consumers and that when installed, the drywall would be in substantially the same condition as it was when manufactured and sold by the Manufacturing Defendants.

21.

At all relevant times, the drywall at issue was used in the manner consistent with the uses intended by and known to the Manufacturing Defendants, in accordance with their directions and instructions.  At no time was the drywall misused or altered by RTNO or any third party.

22.

The drywall at issue was improperly manufactured, designed, tested, exported, distributed, marketed and sold by the Manufacturing Defendants in that the drywall at issue was designed and/or manufactured with high levels of sulfur and sulfur compounds which are emitted from the drywall.

23.

The improper design and manufacture rendered the drywall at issue unsafe and unreasonably dangerous for its intended use. The drywall at issue is also unsafe and unreasonably dangerous due to the Manufacturing Defendants' failure to adequately warn RTNO of the problematic/defective nature of the drywall at issue.

24.

RTNO was unaware of the unreasonably dangerous properties and condition of the drywall at issue and could not have discovered that the drywall was problematic/defective acting as a reasonable prudent person/entity.

25.

The drywall at issue was more dangerous and harmful than expected by RTNO and the average consumer and its benefit to RTNO and the average consumer, if any, was greatly out weighed by the risk of harm and danger.

26.

As a direct and proximate cause of the Manufacturing Defendants' acts and omissions, RTNO has incurred and will continue to incur damages.

## COUNT FOUR
## <u>BREACH OF EXPRESS AND/OR IMPLIED WARRANTY</u>

### 27.

The Manufacturing Defendants were in privity with RTNO and/or RTNO was a foreseeable third party beneficiary of all warranties expressed and/or implied with regard to the drywall at issue.

### 28.

At all relevant times, the Manufacturing Defendants knew, or it was reasonably foreseeable to them that the drywall at issue would be installed by RTNO in structures owned by RTNO or other homeowners for use as a building material and they expressly or impliedly warranted the product to be fit for that us.

### 29.

The Manufacturing Defendants placed the drywall at issue into the stream of commerce in a problematic/defective condition and it was expected to, and did, reach RTNO and other users without substantial change in the condition in which it was designed, manufactured, tested, distributed, marketed and/or sold.                    30.

The drywall at issue is unfit and not merchantable for its intended purposes due to its damaging side effects and/or because its use is so inconvenient that RTNO would not have used it had the side effects been disclosed.  As a result, the Manufacturing Defendants breached their expressed and implied warranties.

31.

The Manufacturing Defendants have and have had reasonable and adequate notice of RTNO's claims for breach of expressed and implied warranties and failed to cure same.

32.

As a direct and proximate cause of the Manufacturing Defendants' acts and omissions, RTNO has incurred and will continue to incur damages.

## COUNT FIVE
## REDHIBITION

33.

The drywall at issue was not reasonably fit for its ordinary and intended purposes as alleged herein.  Accordingly, the Manufacturing Defendants are liable to RTNO for all reasonable damages pursuant to La. Civ. Code art. 2524.

34.

In addition, or in the alternative, the drywall at issue contained redhibitory defects that rendered it so useless and/or inconvenient that it must be presumed that RTNO would not have used the drywall had it known of the defects.

35.

The Manufacturing Defendants have had numerous opportunities to repair and/or replace the drywall and related damaged property and have failed to do so despite actual, constructive or deemed knowledge of the problematic/defective nature of the drywall and the need for replacement, remediation and/or repair.

36.

As a direct and proximate cause of the Manufacturing Defendants' acts and omissions, RTNO has incurred and will continue to incur damages.

### COUNT SIX
### LOUISIANA PRODUCTS LIABILITY ACT

The Manufacturing Defendants are liable to RTNO under the Louisiana Product Liability Act ("LPLA"), La. R.S. 9:2800.51 et. seq. Specifically, they are liable to RTNO for all damages proximately caused by those characteristics rendering their drywall unreasonably dangerous when used by RTNO or by other users as intended and/or reasonably anticipated by the Manufacturing Defendants.

37.

The Manufacturing Defendants, upon information and belief, expressly or impliedly warranted that the drywall at issue would be free from defects in materials and workmanship and that they were manufactured in accordance with all applicable standards, including, but not limited to, ASTM C36, and the drywall at issue failed to conform to these warranties.

38.

The drywall at issue was and is unreasonably dangerous as a result of its construction, composition, design, manufacture and the Manufacturing Defendants' failure to warn. At all reasonable times, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of drywall without allowing unreasonable

10

levels of sulphur or sulphur compounds to be emitted from the drywall as occurs with the drywall at issue.

39.

At all relevant times, the Manufacturing Defendants knew that the drywall at issue was unreasonably dangerous and/or problematic/defective as alleged herein.  In the alternative, they should have known of the unreasonably dangerous and/or problematic/defective characteristics and conditions of the drywall at issue.

40.

The drywall at issue is unreasonably dangerous in composition, construction, design and/or manufacture in that at the time if left the Manufacturing Defendants' control, it deviated in a material way from their own specifications, designs or performance standards.

41.

In addition, and in the alternative, the drywall at issue is unreasonably dangerous in design, in that at that time it left the Manufacturing Defendants' control, there existed an alternative design for the product that was capable of preventing the damage alleged herein, and the likelihood of causing the damage and the gravity of harm outweighed the burden on the Manufacturing Defendants in adopting such alternative design and the adverse effect, if any, of the alternative design on the utility of the drywall.

42.

In addition, and in the alternative, the drywall at issue is unreasonably dangerous in that it fails to conform to the express or implied warranties about the product which induced the use of the product and caused damage.

43.

In addition, and in the alternative, the drywall at issue is unreasonably dangerous due to an inadequate warning in that, at the time it left the Manufacturing Defendants' control, the drywall at issue possessed characteristics that might cause damage, and yet, the Manufacturing Defendants failed to use reasonable care to provide an adequate warning of such characteristics and defects to users and/or handlers of the drywall.

44.

As a direct and proximate cause of the Manufacturing Defendants' acts and omissions, RTNO has incurred and will continue to incur damages

## COUNT SEVEN
## PRIVATE NUISANCE

45.

The tortious and/or wrongful acts, omissions or fault of the Manufacturing Defendants have caused sulphur or sulphur compounds to be emitted from their drywall, thereby causing damage and unreasonably interfering with the use and enjoyment of the properties in which the drywall at issue was installed.

46.

The Manufacturing Defendants' interference was intentional and unreasonable or, in the alternative, unintentional, but negligent or reckless. The interference caused by the Manufacturing Defendants is substantial and continuing.

47.

The Manufacturing Defendants' private nuisance was the direct, proximate and foreseeable cause of damage to RTNO and its homeowners and as a direct and proximate cause of their creation of a private nuisance, RTNO and its homeowners have incurred and will continue to incur damages.

**COUNT EIGHT**
**VIOLATION OF LOUISIANA UNFAIR TRADE**
**PRACTICES AND CONSUMER PROTECTION LAW.**

48.

The acts, omissions and fault of the Manufacturing Defendants as alleged in here, violate the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. R.S. 51:1401 et. seq. in the specifics alleged herein and adopted by reference.

49.

RTNO has suffered and continues to suffer actual damages as a result of the Manufacturing Defendants' violation of the LUTPA.

**COUNT NINE**
**EQUITABLE AND INJUNCTIVE RELIEF**
**AND MEDICAL MONITORING**

50.

RTNO adopts and incorporates by reference the allegations of the Named Plaintiffs' in their Omnibus Class Action Complaint contained in paragraphs 1022-1034 in this matter to the extent applicable to it.

**COUNT TEN**
**INCORPORATION BY REFERENCE**

51.

RTNO incorporates by reference all allegations and causes of action made or asserted against the Manufacturing Defendants in the Named Plaintiffs' Omnibus Class Action Complaint in this matter, and all admendments, to the extent not inconsistent with the allegations continued herein.

52.

**JURY DEMAND**

RTNO prays for a trial by jury.

53.

RTNO prays that after due proceedings, it be granted judgment against the Manufacturing Defendants for all damages, costs and expenses, including pre-judgment and post-judgment interest as allowed by law, incurred by it as a result of its receipt, installation and use of the drywall manufactured, designed, tested, distributed, marketed and/or sold by the Manufacturing Defendants and for such other relief to which it is justly entitled.

SIGNATURE BLOCK ON NEXT PAGE

14

Respectfully submitted,

\s\Robert L. Redfearn, Jr.
Robert L. Redfearn, Jr. (Bar No. 17106)
SIMON, PERAGINE, SMITH & REDFEARN, LLP
1100 Poydras Street, 30th Floor
New Orleans, Louisiana  70163-3000
Telephone: (504) 569-2030
Facsimile:  (504) 569-2999

ATTORNEYS FOR PRESERVATION ALLIANCE OF NEW ORLEANS, INC., D/B/A PRESERVATION RESOURCE CENTER OF NEW ORLEANS, ACTING THROUGH ITS PROGRAM, REBUILDING TOGETHER NEW ORLEANS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was this day filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system, with the exception of the following listed counsel of record, who will receive a copy of this filing via United States Mail, postage prepaid:

New Orleans, Louisiana, this 18TH day of March, 2011.

\s\Robert L. Redfearn, Jr.

N:\DATA\M\38240001\Pleadings\Petition in Intervention.wpd