Print Form

Plaintiff Profile Form - Residential Properties

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE MANUFACTURED DRYWALL       MDL NO. 2047

PRODUCTS LIABILITY LITIGATION                      SECTION: L

THIS DOCUMENT RELATES TO: ALL CASES        JUDGE FALLON

                                                                        MAG. JUDGE WILKINSON

| For Internal Use Only |
|---|
| File Number |
| Date Received |

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

**Section I. Property Information**

Name Property Owner: Thomas R. and Virginia M. Spencer

Address of Affected Property: 2481 Lakewood Manor Drive
Athens, Georgia 30606

Is this Property:* ☒ Residential   ☐ Commercial   ☐ Governmental

Name of Person Completing this Form: Thomas R. Spencer

Is above your primary residence? ⦿ Yes   No ○

Mailing Address (if different): same

Phone: (706 ) 357 - 7221

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Circle one: ☒ Owner-Occupant   ☐ Owner Only   ☐ Renter-Occupant

Represented By: Law Offices of Richard J. Serpe, P.C.

Address: 580 E. Main Street, Suite 310
Norfolk, Virginia 23510

Phone: (757 ) 233 - 0009

Case No. /Docket Info: 2:10-cv-00361

**Section II. Insurance Information**

Homeowner/ Renter Insurer:

Encompass Indemnity Company

Policy #: 281153863

Agent: AIC Insuring America

Address: P.O. Box 6545
Athens, Georgia 30604

Phone: (706 ) 353 - 7811

+ Attach Copy of Insurance Declaration Page *see attached

**Section III. Claimant Information**

| Name of Claimant | Dates Occupied | | Gender | Date of Birth | Are you claiming personal injuries?* | | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|---|
| | Move-in | Leave | | | Circle One | | |
| Thomas R. Spencer | 06 /16/08 | / / | ⊠ / F | 10 /27/53 | ⦿Yes | No ○ | Owner-Occupant |
| Virginia M. Spencer | 06 /16/08 | / / | M /⊠ | 05 /17/51 | ⦿Yes | No ○ | Owner-Occupant |
| | / / | / / | M / F | / / | ○Yes | No ○ | |
| | / / | / / | M / F | / / | ○Yes | No ○ | |
| | / / | / / | M / F | / / | ○Yes | No ○ | |
| | / / | / / | M / F | / / | ○Yes | No ○ | |
| | / / | / / | M / F | / / | ○Yes | No ○ | |
| | / / | / / | M / F | / / | ○Yes | No ○ | |
| | / / | / / | M / F | / / | ○Yes | No ○ | |

* Personal injuries include claims for mental anguish and medical monitoring.

SpencerT000001

Plaintiff Profile Form - Residential Properties

## Section IV. Inspection Information

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?  ⦿ Yes    No ◯

    1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?   Thomas R. Spencer

    1.2. When did the inspection take place?    04 / /10

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?  ⦿ Yes   No ◯

    2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?   Thomas R. Spencer

    2.2. When was this determination made?    04 / /10

## Section V. Drywall Information

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. | "Venture Supply, Inc. MFG Taihe China" | throughout |

## Section VI. Home Information

| | | | Yes | No |
|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 6259 | | | |
| Estimated Sq. Ft. of Drywall | Unknown | Occupied | ☒ | |
| Height of Interior Walls | 9'-12' | Year-round | ☒ | |
| Number of Bedrooms: | 5 | Summer | | |
| Number of Bathrooms: | 4.5 | Winter | | |

### Plumbing System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | ☒ | |
| Copper Piping | | | ☒ |
| Copper Fixtures | ☒ | | |
| Other Fixtures | | | ☒ |
| Were repairs made to the plumbing system? | X | | |
| Dates: | A/C coils-7/08; 9/08; 7/09; 7/10 | | |

### Electrical System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | | ☒ | |
| Switches | | | ☒ |
| Main Panel | | ☒ | |
| 2nd Panel | | ☒ | |
| Exposed Copper Wires | ☒ | | |
| Were repairs made to the electrical system? | ☒ | | |
| Dates: | switches replaced 8/09; 4/10 | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper      *see attached

## Section VII. Construction/Renovation Information

### Date Range for New Home Construction: (Month/Day/Year)

| | | | |
|---|---|---|---|
| Start Date: | 01 30 /06 | Completion Date | / /06 |
| Move in Date: | 06 16 /08 | Date Acquired Home | 06 /16 /08 |

### Date Range for Renovations: (Month/Day/Year)

| | | | |
|---|---|---|---|
| Start Date: | / / | Completion Date | / / |
| Move in Date: | / / | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | ☒ |
| First Floor: Full Wall of drywall replaced | | | ☒ |
| Second Floor: Any drywall replaced | | | ☒ |

## Section VIII. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:

    Luke and Kimberly Smith

Address:   573 Bear Creek Lane
Bogart, Georgia 30602

Phone:   (706 ) 207  - 9016

+ Attach Copy of Construction/Renovation Contract *see attached
+ Attach Copy of New Home Warranty Declaration  *N/A

## Section IX. Drywall Installer

Drywall Installer's Name:

    James C. Crump d/b/a Crump Drywall

Address:   20 Hawks Road
Nicholson, Georgia 30656

Phone:   (706 ) 757  - 2361

## Section X. Drywall Supplier

Drywall Supplier's Name:

    Venture Supply, Inc.

Address:   1140 Azalea Garden Rd.
Norfolk, Virginia 23502

Phone:   (757 ) 855  - 5433

SpencerT000002

Aug-02-10  07:43am   From-MKTG/DEALER DEVELOPMENT              17063555435          T-575  P.03/08  F-512

Plaintiff Profile Form - Residential Properties

**Section XI. Verification of Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| Claimant's Signature | August 17, 2010 Date Signed | Claimant's Signature | Date Signed |
|---|---|---|---|
| Claimant's Signature | August 17, 2010 Date Signed | Claimant's Signature | Date Signed |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |

Page 3

SpencerT000003

Aug-02-10  07:44am   From-MKTG/DEALER DEVELOPMENT          17063555435          T-575  P.07/08  F-512

**USP Elite**
**New Policy Coverage Summary**

**ENCOMPASS**
**INSURANCE**

**Policyholder:**
THOMAS SPENCER
VIRGINIA SPENCER
2481 LAKEWOOD MANOR DR
ATHENS GA 30606-7694

**Agent:**
AIC INSURING AMERICA
PO BOX 6545
ATHENS GA 30604
PHONE: 706-353-7811  380-113847-0000

**Policy Number:**
281153863

**Policy Period:**
06/16/2008 to 06/16/2009 **12:01 AM Standard Time**

**Policyholder Since:**
06/2008

**Insurance Provided By:**
Encompass Indemnity Company
2775 Sanders Rd.; Northbrook, IL 60062-6127

24 HOUR CLAIM REPORTING 800-588-7400

## IMPORTANT INFORMATION ABOUT YOUR POLICY

There is not a trampoline located on your property.

## HOME PROTECTION

(Coverage applies only if a premium or limit is shown)

**Residence   1 Description:**   2481 LAKEWOOD MANOR DR, ATHENS, GA 30606

**Residence   1 shown on the declarations page is** 1000 feet from a fire hydrant, and within 05 miles of the fire department.

| COVERAGES | LIMITS | PREMIUMS |
|---|---|---|
| PROPERTY LOCATION LIMIT | $  1,208,536 | $  1,044.00 |
| Property Deductible | $  1,000 | |
| Your location limit is 200 % of the estimated residence value of $  604,268 | | |
| The location limit is the total amount of insurance on your dwelling, contents and other structures at this location. | | |
| LOSS OF USE | Per Policy $ | Included |
| PERSONAL LIABILITY | $  500,000 $ | Included |
| MEDICAL EXPENSE | $  5,000 $ | Included |
| IDENTITY FRAUD EXPENSE COVERAGE | Per Endorsement $ | 25.00 |
| **Total Residence Premium** | | $  1,069.00 |

## MORTGAGEE/OTHER INTERESTED PARTIES INFORMATION

| **Residence   1** | **Loan Number** | **Type of Interest** |
|---|---|---|
| WELLS FARGO BANK NA 708 ITS SUCCESSORS &/OR ASSIGNS P O BOX 5708 SPRINGFIELD OH 45501-5708 | 0177297835 | Mortgagee |

281153863

Arthur H. Young        David P. Healy
President                    Secretary



Continued on Next Page

SpencerT000000641  of 03

Aug-02-10  07:44am   From-MKTG/DEALER DEVELOPMENT        17063555435           T-575  P.08/08  F-512

# USP Elite
# Renewal Policy Coverage Summary

INSURANCE

**Policyholder:**
THOMAS SPENCER
VIRGINIA SPENCER
2481 LAKEWOOD MANOR DR
ATHENS GA 30606-7694

**Agent:**
AIC INSURING AMERICA
PO BOX 6545
ATHENS GA 30604
PHONE: 706-353-7811   380-113847-0000

| **Policy Number:** | **Policy Period:** | **Policyholder Since:** |
|---|---|---|
| 281153863 | 06/16/2009 to 06/16/2010 12:01 AM Standard Time | 06/2008 |

**Insurance Provided By:**
Encompass Indemnity Company                 24 HOUR CLAIM REPORTING 800-588-7400
2775 Sanders Rd.; Northbrook, IL 60062-6127

## IMPORTANT INFORMATION ABOUT YOUR POLICY

There is not a trampoline located on your property.

## HOME PROTECTION                (Coverage applies only if a premium or limit is shown)

**Residence   1 Description:**   2481 LAKEWOOD MANOR DR, ATHENS, GA 30606

**Residence   1 shown on the declarations page is** 1000 **feet from a fire hydrant, and within** 05 **miles of the fire department.**

| COVERAGES | LIMITS | PREMIUMS |
|---|---|---|
| PROPERTY LOCATION LIMIT | $ 1,273,800 | $ 1,240.00 |
| Property Deductible | $ 1,000 | |
| Your location limit is 200 % of the estimated residence value of $ 636,900 | | |
| The location limit is the total amount of insurance on your dwelling, contents and other structures at this location. | | |
| LOSS OF USE | Per Policy $ | Included |
| PERSONAL LIABILITY | $ 500,000 | $ Included |
| MEDICAL EXPENSE | $ 5,000 | $ Included |
| IDENTITY FRAUD EXPENSE COVERAGE | Per Endorsement $ | 25.00 |
| **Total Residence Premium** | | $ 1,265.00 |

## MORTGAGEE/OTHER INTERESTED PARTIES INFORMATION

| **Residence  1** | **Loan Number** | **Type of Interest** |
|---|---|---|
| WELLS FARGO BANK NA 708 ITS SUCCESSORS &/OR ASSIGNS P O BOX 5708 SPRINGFIELD OH 45501-5708 | 0177297835 | Mortgagee |

281153863

*Cynthia H. Young*          *David P. Healy*
President                    Secretary



Continued on Next Page

SpencerT000005          Page 01 of 03

May 10 10 11:38a                                                                                        p.2

# PURCHASE AND SALE AGREEMENT

Georgia
Association
of REALTORS

Offer Date: *May 2, 2008*

2008 Printing

1. **Purchase and Sale.** The undersigned buyer ("Buyer") agrees to buy and the undersigned seller ("Seller") agrees to sell the Property with the following address: *2481 Lakewood Mann Drive*
City *Athens*, County *Oconee*
Georgia, Zip Code *30606*, together with all fixtures, landscaping, improvements, and appurtenances (except those identified in any Seller's Property Disclosure Statement attached hereto as not remaining with the Property) and as more particularly described in the Legal Description Paragraph below (all of which is hereinafter collectively referred to as "Property").

2. **Legal Description.** *[Select Section A or B below. The section not marked shall not be a part of this Agreement.]*
   ☒ A. The legal description of the Property is attached as an exhibit hereto.
   ☐ B. The full legal description of the Property is the same as is recorded in the land records of the county in which the Property is located and is incorporated herein by reference. The legal description of the Property is more specifically described below and can be found in said land records in the following deed book and/or plat book, if filled in below:
   Land Lot(s) _____ of the _____ District, _____ Section/ GMD,
   Lot _____, Block _____, Unit _____, Phase/Section _____ of
   _____ Subdivision/Development,
   _____ County, Georgia as recorded in:
   ☐ 1. Plat Book _____, Page _____, et. seq.; or
   ☐ 2. Deed Book _____, Page _____, et. seq.

3. **Purchase Price and Method of Payment.** At closing, Buyer agrees to pay Seller the purchase price of the Property in cash, cashiers check, certified check or wire transfer of immediately available funds of: $ *695,000.00*
*Six hundred ninety-five thousand and no/100* _____ U.S. Dollars.
The method of payment shall be all cash at closing.

4. **Amount and Deposit of Earnest Money.** Buyer has paid to *Caldwell Banker Upchurch* ("Holder") earnest money of $ *5,000* _____ check, OR $ _____ cash, which has been received by Holder. The earnest money shall be deposited in Holder's escrow/trust account (with Holder retaining the interest if the account is interest bearing) within 5 (five) banking days from the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not be required to return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have 3 (three) banking days after receiving such notice to deliver good funds to Holder. In the event Buyer does not timely deliver good funds, Seller shall have the right to terminate this Agreement upon notice to Buyer.

5. **Closing Costs.**
   A. **Items Paid By Buyer at Closing.** At closing, Buyer shall pay the following:
   1. Georgia property transfer tax;
   2. All costs, fees and charges to have the closing attorney search title and prepare: (a) the warranty deed; (b) owner's affidavit; (c) Buyer's powers of attorney; (d) documents necessary for Seller to convey good and marketable title to the Property; and (e) all promissory notes, deeds to secure debt and other loan documents required by any lender providing financing in the transaction;
   3. All closing costs, tax service charges, recording costs, courier fees, overnight delivery fees, document preparation fees, delivery, copying and handling charges, and all other costs, fees, charges and amounts to otherwise close this transaction.
   B. **Items Paid By Seller at Closing.** At closing, Seller shall pay the following:
   1. The sum of *5% of sale price* to be used by Buyer as a contribution for the items in the paragraph above. In addition, Buyer may use the Seller's contribution to pay for, including but not limited to, survey costs, appraisals, insurance (including flood insurance, if applicable), inspections, termite treatment and/or repair guarantee and, if Buyer is obtaining mortgage financing, escrow establishment charges, loan discount points, costs to buy down a loan, and other similar costs (unless any of the same are prohibited by Buyer's mortgage lender). Unspent sums, if any, shall remain with the Seller.
   2. Any sums to remove (or bond off as the case may be) liens, deeds to secure debt, judgments, and other encumbrances on title on the Property; and Seller's powers of attorney.
   C. **Prorated Amounts:** Seller and Buyer agree to prorate the following: (1) real estate taxes and community association assessments, if any, for the calendar year in which the sale is closed, as of the date of closing; and (2) all utility bills as of the date of closing (or the day of possession of Property by Buyer, whichever is later) that are issued after closing and include service for any period of time Property was owned/occupied by Seller or Seller's invitees. In the event real estate taxes are paid at closing based upon an estimated tax bill or tax bill under appeal, Buyer and Seller upon the issuance of the actual tax bill or the appeal being resolved shall promptly make any financial adjustments between themselves as are necessary to correctly prorate the tax bill. This subparagraph shall survive the closing.

Copyright© 2008 by Georgia Association of REALTORS®, Inc.                F20, Purchase and Sale Agreement, Page 1 of 7 01/01/08

SpencerT000006

May 10 10 11:30a                                                                                          p.3

**6   Date of Closing and Transfer of Possession.**
   **A. Date of Closing:** This transaction shall be closed on the date of *June 16, 2008* or on such other date as may be agreed to in writing by the parties.
   **B. Right to Unilaterally Extend Closing Date:** Buyer or Seller may unilaterally extend the closing date for 7 (seven) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (except for liens, judgments, and deeds to secure debt that can be satisfied through the payment of money or by bonding off the same); or (2) Buyer's mortgage lender, if any, or the closing attorney cannot fulfill their respective obligations by the date of closing due to no fault of Buyer. In such event, Buyer and Seller consent to the closing attorney and/or any such mortgage lender disclosing to the parties and their Brokers the basis for the delay. The exercise of the right to unilaterally extend the closing date by either party shall cause the right to terminate and no longer be a part of this Agreement.
   **C. Possession:** Buyer agrees to allow Seller to retain possession of Property until and through: *[Select section 1, 2 or 3 below. The sections not marked shall not be a part of this Agreement.]*
      ☒ 1. the closing; OR ☐ 2. ____ hours after the closing; OR ☐ 3. ____ days after the closing at _____ o'clock ____.m.

**7.  Closing Attorney.** This transaction shall be closed by the law firm of *Cook, Noell, Talley, Bates, Michael* _____. If Buyer is given the right to select a law firm from a mortgage lender's approved list of closing attorneys, Buyer agrees to select said law firm. If the law firm named above is not on the mortgage lender's approved list, and cannot be added in time to close this transaction, Buyer may select another law firm from lender's approved list to close this transaction. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the: ☐ Buyer OR ☐ Seller. If the closing attorney declines to represent the party selected, the party may select a different closing attorney.

**8.  Title.**
   **A. Warranty:** Seller warrants that, at the time of closing, Seller will convey good and marketable title to said Property by general warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.
   **B. Examination:** Buyer may, prior to closing, examine title and furnish Seller with a written statement of objections affecting the marketability of said title. If Seller fails to satisfy valid title objections prior to closing or any extension thereof which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   **C. Survey:** A survey of Property is ☐ OR is not ☒ attached to this Agreement as an exhibit. Notwithstanding any other provision to the contrary contained herein, Buyer shall have the right to terminate this Agreement upon notice to Seller if a new survey performed by a surveyor licensed in Georgia is obtained which is materially different from any survey attached hereto as an exhibit with respect to Property. The term "materially different" shall not apply to any improvements constructed by Seller in their agreed-upon locations subsequent to Binding Date Agreement. Matters revealed in said survey shall not relieve the warranty of title obligations of Seller referenced above.

**9.  Risk of Damage to Property.** Seller warrants that at the time of closing or upon the granting of possession, if at a time other than at closing, Property will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement) as on the Binding Agreement Date, except for normal wear and tear, and changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. Seller shall deliver Property clean and free of trash and debris at time of possession. Notwithstanding the above, if the Property is destroyed or substantially damaged prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement not later than 14 (fourteen) days from receipt of the above notice, except that any party who causes the Property to be destroyed or substantially damaged as the result of that party's criminal conduct shall forfeit the right to terminate this Agreement and shall be in default hereunder. If Buyer or Seller does not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Binding Agreement Date. The date of closing shall be extended until the earlier of 1(one) year from the original date of closing, or 7 (seven) days from the date that Property has been restored to substantially the same condition as on the Binding Agreement Date and a new certificate of occupancy (if required) is issued.

**10. Inspection.**
   **A. Right of Buyer to inspect Property:** Buyer and/or Buyer's representatives shall have the right to enter Property at Buyer's expense and at reasonable times (including immediately prior to closing) to inspect, examine, test and survey Property. Seller shall cause all utility services and any pool, hot tub and similar items to be operational so that Buyer may complete all inspections under this agreement. Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries, and damages arising out of or related to the exercise of these rights.
   **B. Duty of Buyer to inspect Neighborhood:** Buyer acknowledges that: (1) in every neighborhood there are conditions which different buyers may find objectionable and (2) Buyer has had the full opportunity to become acquainted with all existing neighborhood conditions (and proposed changes thereto) which could affect the Property including without limitation land-fills, quarries, high-voltage power lines, cemeteries, airports, prisons, stadiums, odor and/or noise producing land uses, crime, schools serving the Property, political jurisdictional maps and land use and transportation maps and plans. It shall be Buyer's sole duty to become familiar with neighborhood conditions of concern to Buyer. If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of investigation Website at www.state.ga.us/gbi/disclaim.html.

Copyright© 2008 by Georgia Association of REALTORS®, Inc.
                                                                                 F20, Purchase and Sale Agreement, Page 2 of 7 01/01/08

Spencer 000007

May 10 10 11:39a                                                                                          p.4

**11. Property Sold Subject to Due Diligence Period or "As-is".**
*[Select Section A, or B below. The sections not marked shall not be a part of this Agreement.]*

☒ **A. Property Sold Subject to Due Diligence Period.**

1. **Contract is Option Contract.** For and in consideration of the additional payment of $10.00 by the Buyer to the Seller, the receipt and sufficiency of which is hereby acknowledged, Seller does hereby grant Buyer the option of terminating this Agreement, for any reason, for a _____ 14 _____ day period from the Binding Agreement Date ("Due Diligence Period"). This Agreement shall be an option contract until the Due Diligence Period has ended without Buyer terminating the same.

2. **Purpose of Due Diligence Period.** During the Due Diligence Period, Buyer may, but shall not be required to: (a) arrange any loans Buyer needs to complete the purchase of the Property; and (b) conduct at Buyer's sole expense whatever evaluations, inspections, appraisals, examinations, surveys, and testing, if any, Buyer deems appropriate to determine whether Buyer's option to terminate this Agreement should be exercised. This shall include but not be limited to testing for lead-based paint and/or leadbased paint hazards, inspecting for active infestation of and/or damage from termites and other wood destroying organisms and determining if the Property or the improvements thereon are in a flood plain. During the Due Diligence Period, Buyer may also propose an amendment(s) to this Agreement to address any concerns of Buyer with the Property.

3. **Right to Terminate.** If Buyer decides to exercise Buyer's option to terminate this Agreement, Buyer must give notice of the same to Seller prior to the end of the Due Diligence Period. If Buyer fails to give such notice in a timely manner, the Due Diligence Period shall terminate and Buyer shall be deemed to have accepted the Property "as-is." The expiration of the Due Diligence Period shall not terminate any other contingencies to which this Agreement may be subject.

4. **Warranties of Buyer.** Buyer warrants that Buyer is ☐ OR is not ☒ currently under contract (including option contracts) to purchase other real property. Buyer warrants that during the Due Diligence Period Buyer shall ☐ have the right to enter into other such contracts OR ☒ not enter into any other such contracts. Buyer shall be in default of the Agreement if Buyer breaches Buyer's warranties in this subparagraph.

☐ **B. Property Sold "As is."** All parties agree that Property is being sold "as is," with all faults including but not limited to damage from termites and other wood destroying organisms and lead-based paint and lead-based paint hazards. Seller shall have no obligation to make any repairs or replacements to Property.

**12. Appraisal.** *[Check if the Property is subject to the Appraisal Contingency Exhibit. If the box is not checked this Agreement is not subject to the Appraisal Contingency Exhibit.]*
☐ This Agreement is subject to the Appraisal Contingency Exhibit, attached hereto.

**13. Entitlement to and Disbursement of Earnest Money.**

**A. Entitlement to Earnest Money:** Subject to the Disbursement of Earnest Money paragraph below:

1. Buyer shall be entitled to the earnest money upon the: (a) failure of the parties to enter into a binding agreement; (b) failure of any contingency or condition to which this Agreement is subject; (c) termination of this Agreement due to the default of Seller; (d) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement; or (e) closing of Property.

2. Seller shall be entitled to the earnest money if this Agreement is terminated due to the default of Buyer. In such event, Holder may pay the earnest money to Seller by check, which if accepted and deposited by Seller, shall constitute liquidated damages in full settlement of all claims of Seller. It is agreed to by the parties that such liquidated damages are not a penalty and are a reasonable pre-estimate of Seller's actual damages, which damages are difficult to ascertain. Nothing herein shall prevent the Seller from declining any tender of the earnest money by the Holder and pursuing the Buyer for any available remedy at law or in equity. In such event, Holder may disburse the earnest money to the Buyer upon a reasonable interpretation of the Agreement as set forth below.

**B. Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties 15 (fifteen) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the 15 (fifteen) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new 15 (fifteen) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made.

**C. Interpleader:** If there is a dispute over the earnest money which the parties cannot resolve after a reasonable period of time, and where Holder has a bona fide question as to who is entitled to the earnest money, Broker may interplead the earnest money into a court of competent jurisdiction. Holder shall be reimbursed for and may deduct from any funds interpleaded, its costs and expenses, including reasonable attorney's fees actually incurred. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees and court costs and the amount deducted by Holder from the non-prevailing defendant.

**D. Hold Harmless:** All parties hereby agree to indemnify and hold Holder harmless from and against all claims, causes of action, suits and damages arising out of or related to the performance by Holder of its duties hereunder. All parties further covenant and agree not to sue Holder for damages relating to any decision of Holder to disburse earnest money made in accordance with the requirements of this Agreement.

Copyright© 2008 by Georgia Association of REALTORS®, Inc.                    F20, Purchase and Sale Agreement, Page 3 of 7 revised 01/01/08

SpencerT000008

**14. Agency and Brokerage.**

**A. Agency Disclosure:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and, where the context would indicate, the broker's affiliated licensees. No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;

1. **No Agency Relationship.** Buyer and Seller acknowledge that, if they are not represented by a Broker, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.

2. **Listing Broker.** Broker working with the Seller is identified on the signature page as the "Listing Broker"; and said Broker is ☒, OR, is not ☐ representing Seller;

3. **Selling Broker.** Broker working with Buyer (including in transactions where Broker is representing Seller) is identified on the signature page as "Selling Broker;" and said Broker is ☒ OR, is not ☐ representing Buyer; and

4. **Dual Agency or Designated Agency.** If Buyer and Seller are both being represented by the same Broker, a relationship of either designated agency ☐, OR, dual agency ☐ shall exist.

   a. **Dual Agency Disclosure.** [*Applicable only if dual agency has been selected above*] Buyer and Seller are aware that Broker is acting as a dual agent in this transaction and consent to the same. Buyer and Seller have been advised that:

   (1) In serving as a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;

   (2) Broker will disclose all adverse, material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;

   (3) Buyer and Seller do not have to consent to dual agency and, the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.

   (4) Notwithstanding any provision to the contrary contained herein, Buyer and Seller each hereby direct Broker, while acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.

   b. **Designated Agency Assignment.** [*Applicable only if the designated agency has been selected above*] Broker has assigned _____ to work exclusively with Buyer as Buyer's designated agent and _____ to work exclusively with Seller as Seller's designated agent. Each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.

**B. Brokerage:** Broker(s) identified herein are to be paid a commission pursuant to a separate agreement or agreements. Unless otherwise provided for herein, Listing Broker will be paid a commission by Seller, and the Selling Broker will receive a portion of the Listing Broker's commission pursuant to a cooperative brokerage agreement. The closing attorney is directed to pay the commission of the Broker(s) at closing out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission will pay any shortfall at closing. If more than one Broker is involved in the transaction, the closing attorney is directed to pay each Broker its respective portion of said commission. In the event the sale is not closed because of the failure or refusal of Buyer or Seller to perform any of their respective obligations, the defaulting party, being familiar with the commission to be paid to the Broker(s), shall immediately pay the Broker(s) the full commission the Broker(s) would have been entitled to had the sale closed. This contractual obligation on the part of the defaulting party shall: (1) arise by virtue of this Agreement; (2) not be limited by any prior agreement of the Broker(s) and the defaulting party; (3) be in consideration of the promises herein and the valuable services performed by the Broker(s) in this Agreement; and (4) survive the termination of this Agreement. The Selling Broker and Listing Broker may jointly or independently pursue the defaulting party for their respective portion of the commission.

**C. Material Relationship Disclosure:** Brokers and/or their affiliated licensees have the following material relationship(s) with either Buyer or Seller as follows: _____none_____

**15. Disclaimer.**

Buyer and Seller acknowledge that they have not relied upon any advice, representations or statements of Brokers other than what is expressly included in this Agreement and waive and shall not assert any claims against Brokers involving the same. Buyer and Seller agree that Brokers shall not be responsible to advise Buyer and Seller on any matter including but not limited to the following: any matter which could have been revealed through a survey, title search or inspection of Property; the condition of Property, any portion thereof, or any item therein; building products and construction techniques; the necessity or cost of any repairs to Property; mold; hazardous or toxic materials or substances; termites and other wood destroying organisms; the tax or legal consequences of this Agreement and transaction; the availability and cost of utilities or community amenities; the appraised or future value of Property; any condition(s) existing off Property which may affect Property; the terms, conditions and availability of financing; and the uses and zoning of Property whether permitted or proposed. Buyer and Seller acknowledge that Brokers are not experts with respect to the above matters and that, if any of these matters or any other matters are of concern to them, they should seek independent expert advice relative thereto. Buyer and Seller acknowledge that Brokers shall not be responsible to monitor or supervise any portion of any construction or repairs to Property and that such tasks clearly fall outside the scope of real estate brokerage services.

**16. Seller's Property Disclosure.** Seller's Property Disclosure Statement is attached hereto and incorporated herein. Seller warrants that to the best of Seller's knowledge and belief, the information contained therein is accurate and complete as of the date this Agreement is last signed or initialed by Seller.

**17. Lead-Based Paint.** In consideration of the rights afforded Buyer under this Agreement, Buyer expressly waives the rights given to buyers under federal law to (a) inspect and test for lead-based paint and/or lead-based paint hazards and (b) not be obligated under this Agreement for at least 10 (ten) days from the Binding Agreement Date. [If all or any portion of the residential dwelling on the Property was built prior to 1978, Seller must attach the Lead-Based Paint Exhibit to this Agreement.]

Copyright© 2008 by Georgia Association of REALTORS®, Inc.                     F20, Purchase and Sale Agreement, Page 4 of 7 01/01/08

Form generated by: TrueForms™      www.TrueForms.com      800-499-9612

Spencer T000009

**18. Notices.**

A. **All Notices Must Be In Writing.** All notices, including but not limited to offers, counteroffers, acceptances, amendments, demands, notices of termination and other notices, required or permitted hereunder shall be in writing, signed by the party giving the notice. It is the intent of the parties that the requirements of this Notice paragraph shall apply even prior to this Agreement becoming binding.

B. **Method of Delivery of Notice.** Subject to limitations and conditions set forth herein, notices may only be delivered: (1) in person; (2) by an overnight delivery service, prepaid; (3) by facsimile transmission (FAX); (4) by registered or certified U. S. mail, prepaid, return receipt requested; or (5) by e-mail.

C. **When Notice Is Deemed Received.** Except as may be provided herein, a notice shall not be deemed to be given, delivered or received until it is actually received by the party to whom the notice was intended or that person's authorized agent. Notwithstanding the above, a notice sent by FAX shall be deemed to be received by the party to whom it was sent as of the date and time it is transmitted to either the party or the party's authorized agent provided that the sending FAX produces a written confirmation showing the correct date and the time of the transmission and the telephone number referenced herein to which the notice should have been sent.

D. **When Notice to Broker is Notice to Broker's Client.** Except in transactions where the Broker is practicing designated agency, notice to the Broker or the affiliated licensee of Broker representing a party in the transaction shall for all purposes herein be deemed to be notice to that party. Said Broker and affiliated licensee shall be authorized agents of the party for the purpose of receiving notice. In any transaction where the Broker is practicing designated agency, only notice to the affiliated licensee designated by Broker to represent the party in the transaction shall be notice to that party. Personal delivery of notice may only be delivered to the party intended to receive the same or that party's authorized agent.

E. **Notice by Fax or E-Mail to a Broker or Affiliated Licensee of a Broker.** Notices by fax or e-mail to a Broker or the affiliated licensee of a Broker may only be sent to the e-mail address or fax number, if any, of the Broker or the affiliated licensee of the Broker set forth in the Broker/Licensee Contact Information section of the signature page of this Agreement or subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures set forth herein. If no fax number or e-mail address is included in the Broker/Licensee Contact Information section of the signature page of this Agreement (or is subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures) then notice by the means of communication not provided shall not be valid for any purpose herein. Notice to a Broker or the affiliated licensee of Broker who is working with, but not representing a party, shall not be deemed to be notice to that party. Any party sending notice by FAX or email shall send an original copy of the notice if so requested by the other party. A faxed or emailed signature of a party shall constitute an original signature binding upon that party.

F. **Notice to Unrepresented Party.** A party who is not represented by a Broker in the transaction may receive notices by Fax or e-mail at the e-mail address or fax number, if any, of the party set forth below or at such other fax number or e-mail address as the party may provide following the notice procedures set forth herein. If no e-mail address or fax number is provided for below, or is subsequently provided by the party following the notice procedures set forth herein, then notice through the means of communication not provided shall not be valid for any purpose herein.

Unrepresented Buyer: _____                    Unrepresented Seller: _____

Fax No. _____                                 Fax No. _____

E-Mail Address: _____                         E-Mail Address: _____

**19. Other Provisions.**

A. **Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof, (and at Buyer's expense, if there is any cost associated with said transfer) Seller's interest in any existing manufacturer's warranties, service contracts, termite bond or treatment guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.

B. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

C. **Binding Effect, Entire Agreement, Modification, Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended, modified or waived except upon the written agreement of Buyer and Seller. This Agreement may not be assigned by Buyer except with the written agreement of Seller. Any assignee shall fulfill all the terms and conditions of this Agreement.

D. **Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; and (3) any obligation which the parties agree herein shall survive the closing and conditions of this Agreement or may be performed or fulfilled after closing.

E. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of the State of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia.

F. **Time of Essence:** Time is of the essence of this Agreement.

G. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate.

H. **Binding Agreement Date:** The Binding Agreement Date in this Agreement shall be the date when the party making the last offer, or the Broker (except in a designated agency transaction) or affiliated licensee of Broker representing that party as a client, receives notice that the offer has been accepted. This party (or the Broker or affiliated licensee representing this party as a client) shall fill in the Binding Agreement Date below and promptly give notice of this date to the other party. Filling in the Binding Agreement Date shall not be deemed to be a counteroffer.

I. **Responsibility to Cooperate:** All parties agree to take all actions and do all things reasonably necessary to fulfill the terms and conditions of this Agreement in good faith and in a timely manner. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements as are required at closing to meet the requirements of any lender(s) and of federal and state law.

Copyright© 2008 by Georgia Association of REALTORS®, Inc.                    F20, Purchase and Sale Agreement, Page 5 of 7 01/01/09

Spencer T000010

**J. GAR Forms:** This Georgia Association of REALTORS®, Inc. (GAR) form is provided as a courtesy to the parties. It may only be used in accordance with the licensing agreement of GAR or as may be approved in writing by GAR. It is not required to be used in any transaction, may not fit the needs, goals and purposes of the parties and was not written to provide specific legal protection to the parties. Parties seeking legal advice should consult an attorney. While this form may be altered or modified by the parties, at their own risk, to a specific real estate transaction, this form may not be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

**20. Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:

Exhibit A - Legal Description
Exhibit B - Subdivision Plat with Subject Property marked.
Exhibit C - Seller's Disclosure
Exhibit C' - Seller's Supplemental House explanations
Exhibit D - MLS Printout of Subject Property

**SPECIAL STIPULATIONS** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

1. Seller to transfer termite bond to the Purchaser at closing at Seller's expense.

2. Seller to replace broken window in kitchen eating area

3. Seller shall leave the following at no additional cost to Purchaser:
   1) kitchen island
   2) all window treatments and related hardware.
   3) Bar stools in kitchen and terrace level bar
   4) 120" theater and related equipment including components.

4. This sale is subject to the successful closing of purchasers property located at 50433 Eagles Nest, Northville, Michigan 48168 which is currently under contract and scheduled to close May 30, 2008.

☐ (Mark box if additional Special Stipulations are attached.)

Copyright© 2008 by Georgia Association of REALTORS®, Inc.

F20, Purchase and Sale Agreement, Page 6 of 7 01/01/08

Form generated by: TrueForms™     www.TrueForms.com     800-499-9612

SpencerT000011

May 10 10 11.43a                                                                                          p.6

---

**Time Limit:** The terms of this Agreement shall constitute an offer ("Offer") which shall be open for acceptance until __4__ o'clock __P__ .m. on the date of __May 3, 2008__

**Acceptance:** This Offer is hereby accepted, without change, at _____ o'clock _____.m. on the date of _____

---

_Thomas R. Spencer_
Buyer's Signature

_Thomas R. Spencer_
Print or Type Name

_Virginia M. Spencer_
Buyer's Signature

_Virginia M. Spencer_
Print or Type Name

_Coldwell Banker Upchurch_
Selling Broker

By: _Cathie Chasman_
Broker or Broker's Affiliated Licensee

_CATHIE CHASMAN_
Print or Type Name

__17__          __H 6935__
MLS Office Code    Brokerage Firm License Number

Multiple Listing Number __578644__

**Selling Broker/Licensee Contact Information:**

Phone# __706-540-6720__

Fax# _____

E-Mail _____

Selling Agent's Georgia Real Estate License Number


Seller's Signature

Print or Type Name

Seller's Signature

Print or Type Name

Listing Broker

By: _____
Broker or Broker's Affiliated Licensee

Print or Type Name

MLS Office Code    Brokerage Firm License Number

**Listing Broker/Licensee Contact Information:**

Phone# _____

Fax# _____

E-Mail _____

Listing Agent's Georgia Real Estate License Number

---

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of _____ and has been filled in by _____

---

Copyright© 2008 by Georgia Association of REALTORS®, Inc.                    F20, Purchase and Sale Agreement, Page 7 of 7 01/01/08

Form generated by: TrueForms™   www.TrueForms.com   800-499-9612

SpencerT000012

**AMENDMENT TO ADDRESS CONCERNS**
**WITH PROPERTY AMENDMENT #** _1_
(TO BE USED ONLY IF BUYER HAS PURCHASED PROPERTY SUBJECT TO
DUE DILIGENCE PERIOD)
Date: _May 8, 2008_


Georgia
Association
of REALTORS®

2003 Printing

Whereas, the undersigned parties have entered into a certain Agreement ("Agreement") with a Binding Agreement Date of
_May 3, 2008_ for the purchase and sale of real property located at: _2481 Lakewood Manor_
_Atkins_ , Georgia _30606_ ; and

Whereas, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars and other good and valuable consideration, the receipt and sufficiency
of which is hereby acknowledged, the parties hereto agree to modify and amend the Agreement as follows to address the following
concerns existing with the Property and for such other purposes as are set forth below: [The following language is furnished by the
parties and is particular to this transaction]

1. Replace broken window in eating area.
2. Ground fault protect receptacle left of front entry door
3. Paint trim upper level left hand window back of house.
4. Place air register on small game room wall.
5. Fix broken latch on return air grill in upper hallway
6. Tighten drain stopper in master whirlpool tub.
7. The 2 security system cameras that are not working are to be put in working order.
8. Place cover on second light in basement ceiling open light box
9. Seller to ~~demonstrate~~ to Buyer ~~that the~~ basement hot tub are in normal operating condition.

☐ Mark box if additional pages are attached.

In consideration of Seller agreeing to address certain concerns of Buyer with Property, all parties agree that if this Amendment is
signed by Buyer and Seller and delivered to both parties, Buyer's Due Diligence Period (and the right to terminate the agreement
set forth therein) ☐ shall   OR   ☒ shall not  terminate.

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force
and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said
Agreement.

_Coldwell Banker Upchurch_                        _Thomas R. Spencer_
Selling Broker                                   Buyer's Signature

By: _Cathie Chasman_                             _Virginia M. Spencer_
Broker or Broker's Affiliated Licensee           Buyer's Signature

Listing Broker                                   Seller's Signature

By: _____                    _____
Broker or Broker's Affiliated Licensee           Seller's Signature

**Acceptance Date:** The above Amendment is hereby accepted, _____ o'clock _____ .m. on the date of _____
("Acceptance Date"). This Amendment will become binding upon the parties when notice of the acceptance of this Amendment has
been received by offeror. The offeror shall promptly notify offeree when acceptance has been received.

Copyright© 2008 by Georgia Association of REALTORS®, Inc.          F107, Amendment to Address Concerns with Property, 01/01/08

Form generated by: TrueForms™    www.TrueForms.com    800-499-9612

SpencerT000013

*Exhibit H*

DOC# 000792
FILED IN OFFICE
01/25/2006   03:49 PM
BK:849   PG:13-13
ANGELA WATSON
CLERK OF SUPERIOR
COURT
OCONEE COUNTY

REAL ESTATE TRANSFER TAX
PAID: $115.00
PFH:0832006-115

RUSSELL T. QUARTERMAN, P.C.
Attorney at Law
1671 Meriweather Drive, Suite 100
Bogart, Georgia 30622
(706)543-7777
File No.: 050149

# WARRANTY DEED

STATE OF GEORGIA
COUNTY OF OCONEE

**This Indenture** made this **17th** day of **January**, in the year **Two Thousand Six**, between **Lewis & Heard Development, L.L.C., a limited liability company** organized under the laws of the State of Georgia, as party or parties of the first part, hereinafter called Grantor, and **Luke Smith and Kimberly Smith**, as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

**WITNESSETH that:** Grantor, for and in consideration of the sum of **TEN AND 00/100 ($10.00) Dollars** and other good and valuable considerations in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee,

All that tract or parcel of land, situate, lying and being in the 221st District, G.M., Oconee County, Georgia, and being known and designated as Lot 13, Lakewood Manor Subdivision, and being more particularly shown on a survey entitled "Final Plat for Lakewood Manor", dated October 6, 2005, by Woods & Chastain Surveyors, Inc., Ray N. Woods, Registered Land Surveyor, and recorded in Plat Book 36, Pages 162-166, in the Office of the Clerk of the Superior Court of Oconee County, Georgia, reference to which is hereby made for a more particular description of the property herein conveyed.

This Deed is given subject to all easements and restrictions of record, if any.

**TO HAVE AND TO HOLD** the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to its proper use, benefit and behoof of the said Grantee forever in **FEE SIMPLE.**

**AND THE SAID** Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever.

**IN WITNESS WHEREOF,** Grantor has hereunto set grantor's hand and seal this day and year first above written.

Signed, sealed and delivered in the presence of:

_____
Witness

_____
Notary Public
Date Executed:

Lewis & Heard Development, L.L.C.

BY: CLIFF LEWIS ENTERPRISES, INC.
Member

BY: _____(Seal)
CLIFTON L. LEWIS, President

BY: SHAEFER HEARD, INC. d/b/a
HEARD CONSTRUCTION, Member

BY: _____(Seal)
R. SHAEFER HEARD, III, President

ATTEST: _____(Seal)
CATHRYN C. HEARD, Secretary

SpencerT000014

05/01/2008 16:39 FAX  708 369 9997            THE LEADERS REAL ESTATE                    007









May 10 10 11:44a

p.11

05/01/2008 16:37 FAX  706 369 9987          THE LEADERS REAL ESTATE                    ☑002

# SELLER'S PROPERTY DISCLOSURE STATEMENT
## EXHIBIT " C "
### (revised 01/17/2007)

Georgia
Association
of REALTORS

2007 Printing

For property located at _2481 Lakewood Manor Drive_, Georgia, _30606_
together with all improvements thereon ("Property") _Athens Ga_

**NOTICE TO BUYER AND SELLER:** This disclosure statement is designed to assist Seller in disclosing to prospective buyers material adverse facts relating to the physical condition of Property that may not be readily observable, disclosing historical information and past problems with Property, and identifying those fixtures/items that are included with the sale of Property. All questions are to be answered with respect to the above referenced Property.

IF THE ANSWERS TO ANY OF THE QUESTIONS LISTED BELOW ARE "YES," SELLER SHALL EXPLAIN IN DETAIL IN THE "ADDITIONAL EXPLANATIONS"OR IN DISCLOSURES SECTION, PAGE 5.

|  |  | Yes | No | Don't Know |
|---|---|---|---|---|
| 1. | **OCCUPANCY:** |  |  |  |
|  | (a) Is Property vacant? |  | ✓ |  |
|  | If yes, how long has it been since Seller occupied Property? _____ |  |  |  |
|  | (b) Are there any leases, written or verbal, on Property or any part thereof? |  | ✓ |  |
| 2. | **SOIL, TREES, SHRUBS AND BOUNDARIES:** |  |  |  |
|  | (a) Are there any landfills (other than foundation backfill), graves, mine shafts, trash dumps or wells (in use or abandoned) on Property? |  | ✓ |  |
|  | (b) Is there any sliding, settling (other than normal settling), earth movement, sinkholes, upheaval, or earth stability/expansive soil problems? |  | ✓ |  |
|  | (c) Are there any diseased or dead trees on Property? |  | ✓ |  |
|  | (d) Are there any encroachments (known or recorded), leases, unrecorded easements, or boundary line disputes? |  | ✓ |  |
| 3. | **TERMITES, DRY-ROT, PESTS, AND WOOD-DESTROYING ORGANISMS:** |  |  |  |
|  | (a) Is there any past or present damage to Property caused by infiltrating pests, termites, dry-rot, or other wood-destroying organisms? |  | ✓ |  |
|  | (b) Is your Property currently under a transferable bond, warranty or other coverage for termites or other wood destroying organisms by a licensed pest control company? | ✓ |  |  |
|  | If yes, check type of coverage: ☐ re-treatment and repair; or ☐ re-treatment |  |  |  |
|  | (c) Is there a cost to transfer the bond, warranty or other coverage? |  | ✓ |  |
|  | If yes, what is the cost? $_____ |  |  |  |
|  | (d) Is there a cost to maintain the bond, warranty or other coverage? |  | ✓ |  |
|  | If yes, what is the annual cost? $_____ |  |  |  |
|  | (e) Have any termite/pest control reports or treatments for Property been done in the last five (5) years? |  | ✓ |  |
|  | (f) Does any dwelling or garage on Property have any untreated wood or exterior siding/cladding, such as rigid board insulation, foam plastic, synthetic stucco, hard coat stucco, wood or masonry siding (excluding brick), below grade or within six inches of finished grade? |  | ✓ |  |
| 4. | **STRUCTURAL ITEMS, ADDITIONS AND ALTERATIONS:** |  |  |  |
|  | (a) What year was the main residential dwelling constructed? _2006_ |  |  |  |
|  | (b) Has there been any movement, shifting, settling (other than normal settling), cracking, deterioration, or other structural problems with any dwelling or garage on Property? |  | ✓ |  |
|  | (c) Has there been any additional structural bracing, underpinning, or other structural reinforcement added to any dwelling or garage on Property? |  | ✓ |  |
|  | (d) Are there any problems with driveways, walkways, patios, or retaining walls on Property? |  | ✓ |  |
|  | (e) Have there been any additions, structural changes, or any other major alterations to the original improvements on the Property? |  | ✓ |  |
|  | (f) Has there been any work done on the Property where required permits and/or approvals (public or private) were not obtained? |  | ✓ |  |
|  | (g) Has any work been done to Property that was not in compliance with building codes or zoning regulations? |  | ✓ |  |
|  | (h) Does any part of the exterior siding or cladding of any dwelling or garage on Property consist of synthetic stucco? |  | ✓ |  |
| 5. | **LEAD-BASED PAINT:** Was any part of the residential dwelling on Property constructed prior to 1978? |  |  |  |

☐ Yes  ☐ Don't Know  ☒ No  (If no, proceed to paragraph 6.)
If you have answered "Yes" or "Don't Know" the Lead-Based Paint Exhibit F54 must be executed by the parties and the

Copyright© 2007 by Georgia Association of REALTORS®, Inc          F50, Seller's Property Disclosure Statement Exhibit, Page 1 of 5   01/01/07

SpencerT000016

May 10 10 11:45a                                                                                           p.12

06/01/2006 16:37 FAX   706 368 9997        THE LEADERS REAL ESTATE                                    ☒003

- Lead-Based Paint Pamphlet F55 must be provided to the buyer.

|  | Yes | No | Don't Know |
|---|---|---|---|

**6.  ROOF, GUTTERS AND DOWNSPOUTS:**
(a) Approximate age of roof: ____ years.
(b) Has the roof, or any part thereof, been repaired during Sellers ownership? — ✓ —
(c) Are there any roof leaks or other problems with the roof, roof flashing, gutters or downspouts? — ✓ —

**7.  DRAINAGE, FLOODING AND MOISTURE:**
(a) Has there been any water leakage, water accumulation, or dampness within the basement, crawl space or other parts of the main dwelling at or below grade? — ✓ —
(b) Have any repairs been made to control any water or dampness problems in the basement, crawl space, or other parts of the main dwelling at or below grade? — ✓ —
(c) Is the Property or any improvements thereon located in a flood zone? — ✓ —
(d) Does water regularly stand on Property for more than one (1) day after it has rained? — ✓ —
(e) Has there been any past flooding on Property? — ✓ —
(f) Are there any problems with siding or exterior cladding, swelling, chipping, delaminating or retaining moisture? — ✓ —
(g) Does mold appear on interior heated and cooled portions of any dwelling on Property other than on the walls, floors or ceilings of showers, sinks, and bathtubs? — ✓ —

**8.  PLUMBING RELATED ITEMS:**
(a) What is your drinking water source:       ☒ public   ☐ private   ☐ well on property
(b) If your drinking water is from a well, has it been tested within the past twelve (12) months?
(c) Do you have a water softener, filter or purifier? If yes, ☐ leased ☐ owned — ✓ —
(d) What is the type of sewage system:       ☐ public ☐ private   ☒ septic tank
(e) Is the main dwelling served by sewage pump or lift system? — ✓ —
(f) Do you know if any septic tank or cesspool on Property has ever been professionally serviced? — ✓ —
If yes, please give the date of last service: ____
(g) Do you know of any past or present leaks, backups, or other similar problems relating to any of the plumbing, water and/or sewage-related items? — ✓ —
(h) Is there any polybutylene plumbing, other than primary service line, on Property? — ✓ —

**9.  OTHER SYSTEMS AND COMPONENTS:**
(a) What type of heating system(s) serve the main dwelling?       ☐ gas  ☒ electric  ☐ water pump ☐ other
(b) What is the approximate age of heating system(s):  ____ years
(c) What type of air conditioning system(s) serve the main dwelling? ☐ gas   ☒ electric  ☐ other
(d) What is the approximate age of air conditioning system(s) ____ years
(e) Is any portion of the main dwelling not served by a central or zoned heating and/or air conditioning system? — ✓ —
(f) How is water heated in the main dwelling?       ☒ electric ☐ gas   ☐ solar
(g) What is the approximate age of water heater ____ years
(h) Does the main dwelling have aluminum wiring other than the primary service line? — ✓ —
(i) Is there any system or appliance which is leased or for which the buyer must pay a transfer fee to continue to use? If yes, what is the transfer fee? $____ — ✓ —
If yes, what is the current use fee to be paid by the Buyer? $____
(j) Are any fireplaces not working or in need of repair? — ✓ —
(k) When was each fireplace, wood stove or chimney/flue last cleaned?  Date(s): N/A

**10.  TOXIC SUBSTANCES:**
(a) Are there any underground tanks, toxic or hazardous substances on Property (structure or soil) such as asbestos, urea-formaldehyde, methane gas, radioactive material, radon, mold, benzene or other environmental contaminates? — ✓ —
(b) Has Property ever been tested for radon, lead, mold or any other potentially toxic substances? — ✓ —

**11.  COVENANTS, FEES AND ASSESSMENTS:**
(a) Is Property part of a condominium, community association or subject to covenants, conditions and restrictions (CC & Rs)? ✓ — —
(b) Is there a mandatory community association fee or assessment? ✓ — —
If yes, what is the amount? $ 300 . per year .
Is there an initiation fee? If yes, what amount? $____
(c) Are there any recreational facilities in the community for which the obligation to pay and the right to use are optional? — ✓ —
If yes, please describe the nature of the facilities and the optional fee or charge. ____

(d) In purchasing Property, will any initiation, transfer, or other similar fee be owed to the Association?  If yes, what is the amount? $ dues for 2007 ✓ — —

Copyright© 2007 by Georgia Association of REALTORS®, Inc                    F50, Seller's Property Disclosure Statement Exhibit, Page 2 of 4  01/01/07

SpencerT000017

May 10 10 11:46a                                                                                          p.13
05/01/2008 16:38 FAX  706 389 9997          THE LEADERS REAL ESTATE                      ☒004

(e)  Are there any special assessments approved by but yet not owing or due to a community
     Association that are not yet owed or due?

|  |  | Yes | No | Don't Know |
|---|---|---|---|---|
| 12. OTHER MATTERS: |  |  |  |  |
| (a) Have there been any inspections of Property in the past year? If yes, by whom and of what type? _Yes, C.O. inspection_ | | ✓ | | |
| (b) Does Property contain any building products which are or have been the subject of class action lawsuits, litigation or legal claims alleging that the product is defective? If yes, please identify the product or products and the general location of each on Property: _____ | | | ✓ | |
| (c) Is there or has there been in the past any litigation involving Property or any improvement therein alleging negligent or improper construction defects, termites, and/or title problems? | | | ✓ | |
| (d) Has there been any award or payment of money in lieu of repairs for such a defective building product? | | | ✓ | |
| (e) Has any release been signed that would limit a future owner from making any claims in connection with Property? | | | ✓ | |
| (f) Has there been any fire, flood or wind damage which required repairs to Property in excess of $500.00? | | | none | |
| (g) Approximately how many insurance claims have been filed on Property since you owned it? | | | none | |
| (h) Are any fixtures or appliances included in the sale in need of repair? | | | | |
| (i) Have any repairs been made to the electrical, plumbing, or heating and air condition systems, or any part thereof? | | | ✓ | |
| (j) Was any dwelling on Property or portion thereof (excluding mobile, modular and manufactured dwelling) moved to the site from another location? | | | ✓ | |

13. FIXTURES/ITEMS:  (Check (✓) only those fixtures/items below that are included in the sale of Property. Unless otherwise
indicated, if there is more than one item (such as a second refrigerator or two chandeliers or three smoke detectors), all such
fixtures/items checked are included in the sale of Property. Those fixtures/items listed below that are not checked shall not be
included in the sale of Property.

☐ Air Conditioning Window Unit
☐ Air Purifier
☒ Alarm System (Burglar)
  ☐ Leased  ☒ Owned
☒ Alarm System (Smoke/Fire)
  ☐ Leased  ☐ Owned
☐ Arbor
☐ Attic Fan (Whole House Fan)
☒ Attic Ventilator Fan
☐ Awning
☐ Basketball Post & Goal
  ☐ Built-In  ☐ Free Standing
☒ Birdhouses
☐ Boat Dock
☐ Carbon Monoxide Detector
☒ Ceiling Fan
☒ Chandelier
☒ Closet Shelving System
  ☐ Built-In  ☐ Free Standing
☐ Dehumidifier
  ☐ Built-In  ☐ Free Standing
☒ Dishwasher
  ☒ Built-In  ☐ Free Standing
☐ Dog House
☒ Door & Window Hardware
☐ Dryer
  ☐ Gas  ☐ Electric
☒ Fence (invisible) not the controller
☐ Fence Pet Collar
☒ Fireplace
  ☒ Gas Logs
  ☐ Screen/Door
  ☐ Wood Burning Insert
☐ Flag Pole

☒ outdoor Fireplace

☒ Garage Door Opener
  ☒ Remote Control
☒ Garbage Disposal
☐ Gas Grille
  ☐ Built-In  ☐ Free Standing
☐ Gazebo
☒ Hot Tub
☐ Humidifier
☒ Ice Maker
  ☐ Built-In  ☒ Free Standing
☐ Intercom
☒ Jetted Tub
☐ Landscaping Lights
☒ Light Fixtures
  (Except Chandeliers)
☒ Mailbox
☒ Microwave Oven
  ☒ Built-In  ☐ Free Standing
☒ Mirror (Attached)
☐ Outbuilding
☐ Outdoor Bench
☒ Playhouse
☐ Porch swing
☐ Propane Gas Tanks
  ☐ Above ground  ☐ Buried
  ☐ Leased  ☐ Owned
☒ Radio (Built-In)
☒ Refrigerator
☒ Satellite Dish/Receiver
☐ Sauna
☐ Septic Pump
☐ Shelving Unit & System
  ☐ Built-In  ☐ Free Standing
☒ Shower Head/Sprayer
☒ Smoke Detector
  ☐ Battery Operated  ☒ Hard Wired

☒ Speakers (Built-In)
☒ Sprinkler System
☐ Statuary
☐ Stepping Stones
☐ Storage Building
☒ Stove
  ☒ Gas  ☐ Electric
  ☐ Built-In  ☐ Free Standing
☐ Sump Pump
☒ Surface Unit Cook Top
  ☒ Gas  ☐ Electric
☐ Swimming Pool
  ☐ Above Ground
☐ Swimming Pool Equipment
  (List below)
☐ Swing Set
☒ Switch Plate Covers
☒ Telephone Jacks/Wires
☐ Television Antenna
☒ Television Cable/Jacks
☒ Thermostat (Programmable)
☐ Trash Compactor
  ☐ Built-In  ☐ Free Standing
☐ Tree House
☐ Trellis
☒ Vacuum System (Built-In)
  ☐ Vacuum Attachments
☒ Vent Hood
☐ Washing Machine
☐ Water Purification System
☐ Water Softener System
☐ Weather Vane
☐ Well Pump
☐ Window Screens
☒ Window Treatments
☒ Wine Cooler

Copyright© 2007 by Georgia Association of REALTORS®, Inc          F50, Seller's Property Disclosure Statement Exhibit, Page 3 of 4  01/01/07

SpencerT000018

May 10 10 11:47a                                                                          p.14

05/01/2008 16:38 FAX  706 369 9997        THE LEADERS REAL ESTATE                    ☑ 005

Other fixtures/items included in the sale of Property shall be: _Outdoor fire place, home theatre, Home Automation System_

Other fixtures/items not included in the sale of Property shall be: _____

The common law of fixtures shall apply to fixtures not addressed herein. Those fixtures/items that are not included in the sale of Property shall remain Property of Seller and shall be removed prior to closing or the transfer of possession of Property to Buyer, whichever is later. Seller shall lose the right to remove any such fixtures/items not timely removed. In removing all fixtures/items, Seller shall use reasonable care to prevent damage and, if necessary, to restore Property to its original condition.

14.  **AGRICULTURAL DISCLOSURE:** Is Property within, partially within, or adjacent to any property zoned or identified on an approved county land use plan as agricultural or forestry use?  ☐ Yes  ☒ No  ☐ Don't Know

It is the policy of this state and this community to conserve, protect, and encourage the development and improvement of farm and forest land for the production of food, fiber, and other products, and also for its natural and environmental value. This notice is to inform prospective property owners or other persons or entities leasing or acquiring an interest in real property that property in which they are about to acquire an interest lies within, partially within, or adjacent to an area zoned, used, or identified for farm and forest activities and that farm and forest activities occur in the area. Such farm and forest activities may include intensive operations that cause discomfort and inconveniences that involve, but are not limited to, noises, odors, fumes, dust, smoke, insects, operations of machinery during any 24 hour period, storage and disposal of manure, and the application by spraying or otherwise of chemical fertilizers, soil amendments, herbicides, and pesticides. One or more of these inconveniences may occur as the result of farm or forest activities which are in conformance with existing laws and regulations and accepted customs and standards.

15.  **ADDITIONAL EXPLANATIONS OR DISCLOSURES:**

☐  MARK BOX IF ADDITIONAL PAGES ARE ATTACHED.

**SELLER'S REPRESENTATION:**
To the best of Seller's knowledge and belief, the information contained in this Seller's Property Disclosure Statement is accurate and complete as of the date signed by Seller. It should not be a substitute for Buyer inspecting Property or obtaining any warranties with regard to Property that Buyer may wish to obtain. Seller hereby authorizes Broker to provide this Seller's Property Disclosure Statement to prospective buyers of Property and to real estate Brokers and their affiliated Licensees. Seller agrees to promptly update this Seller's Property Disclosure Statement and to provide any Buyer and Broker with a revised copy of the same if there are any material changes in the answers to the questions contained herein.

Is each individual named below a U.S. Citizen or resident alien?                    ☒ Yes  ☐ No
Has each individual named below been a Georgia resident for the past two years?      ☒ Yes  ☐ No
Has Property been Seller's primary residence for at least two of the last five years? ☐ Yes  ☒ No

Seller: _William Smith_                          Seller: _____, 20___

Seller: _Kimberly Hamilth_                       Seller: _____, 20___

**RECEIPT AND ACKNOWLEDGMENT BY BUYER:**
I acknowledge receipt of this Seller's Property Disclosure Statement. I understand that, except as stated in the Purchase and Sale Agreement, Property is being sold in its present condition, without warranties or guarantees of any kind by Seller or Brokers. No representations concerning the condition of Property are being relied upon by Buyer except as disclosed herein or stated in the Purchase and Sale Agreement.

Buyer: _Thomas R. Spencer_                       Date: _5/2_  20 _08_

Buyer: _Virginia M. Spencer_                     Date: _5/2_  20 _08_

Copyright© 2007 by Georgia Association of REALTORS®, Inc           F50, Seller's Property Disclosure Statement Exhibit, Page 4 of 4  01/01/07

Printed Using Professional Computer Forms Co. On-Line Forms Software 1/07

05/01/2008 16:38 FAX  706 369 9997     THE LEADERS REAL ESTATE              ☑006

*Exhibit C1*

Large mud room with lockers
Oversized laundry room
Wall murals in 5 rooms
Home audio system
Oversized deck
Handscraped Teak wood floors
Window and door pediments on main
3 piece crown on main and basement
Full bar in basement
120" theatre with surround sound
Huge outdoor fireplace
Hot tub with rock wall
Sodded front and back yard
Amazing master suite and master bath
Three car garage
Laundry chute
Granite tops
Huge kitchen
12" base moulding
Stack stone fireplace
Bar seating in kitchen
Jenn air 4 burner stove with grill
1000+ open room in basement
Kid secret hideout upstairs accessible from 3 bedrooms
Extremely large closets for each room
Stained flooring in garages

SpencerT000020

May 10 10 11:48a                                                                p.16

*walnut floors*            *Exhibit D*

**MLS #: R578644A (Active)   List Price: $769,000**                    2481 Lakewood Manor Drive Athens, GA 30606



**STYLE:** Traditional
**STORIES:** Two Story
**TOTAL BEDROOMS:** 4
**TOTAL BATHS:** 4
**TOTAL HALF BATHS:** 1
**MAIN ABOVE BSMT HTD SQFT RNG:** 6,000+
**APX AGE:** 1
**SHOWING:** 24 Hrs Notice to Show
**LOCKBOX:** Yes
**LOCKBOX TYPE:** AAAR
**LOCKBOX CODE:**
**LOCKBOX LOCATION:** front door

**UNIT #:**
**AREA:** 08:Watkinsville/Oconee Co.
**SUBDIVISION:** Lakewood Manor
**COUNTY:** Oconee
**ELEMENTARY SCHOOL:**
**MIDDLE SCHOOL:**
**HIGH SCHOOL:**
**AUCTIONEER'S ESTIMATE RANGE:**
**ABSOLUTE:**
**APX ACRES:** 0.71
**LOT SIZE/ACREAGE:** .6-1

**TAX ID:**           **LEGAL LOT:**
**PLAT BOOK:** 36        **PLAT BOOK PAGE:**      **LEGAL BLOCK:**       **LEGAL SECTION/PHASE:**
**TAX YEAR:**         **CITY TAXES:** 0     **COUNTY TAXES:** 0    **DEED BOOK:**       **DEED BOOK PAGE:**
**HOA:** Yes        **HOA FEE AMOUNT:** 300                        **MISC TAXES:** 0        **TOTAL TAXES $:** 0
**CAPITAL FEE AMOUNT:**           **INITIATION FEE:** No             **HOA MANDATORY:** Yes
**ASSOC FEES INCLUDE:** Common Area Maint, Common Electricity         **INITIATION FEE AMOUNT:**
**BUILDER:**                **DOCUMENTS ON FILE:** Plat Map           **RENTAL RESTRICTION:** No
**MANAGEMENT CO:**                          **MANAGEMENT PHONE:**

**TTL HTD SF:** 4430
**BSMT FN SF:** 1829        **MAIN HTD SF:** 0          **MAIN-BD:** 0       **MAIN-BTHS:** 0       **MAIN-HB:** 0
**BSMT UNF SF:** 0         **BSMT FN SF RNG:**          **BSMT-BD:** 0       **BSMT-BTHS:** 0      **BSMT-HB:** 0
                          **BSM UNF SF RNG:**                          **SQFT SRC:** Tax Records

**LISTING TYPE:** ER          **PROPERTY EVER OCCUPIED:** No
**CONSTRUCTION:** Stone                                        **OWNERSHIP:**
**FOUNDATION/BASEMENT:** Basement, Bath, Media/Rec Room,      **FLOORS:** Carpet, Tile, Wood
Poured                                                          **KITCHEN FEATURES:** Custom Cabinetry, Solid Surface
**HEAT:** Electric, Heat Pump                                   Countertop
**AIR:** Central Electric                                       **APPLIANCES:** Convection Oven, Dishwasher, Grill Range,
**WATER:** City/County                                          Microwave
**SEWER:** Septic Tank                                          **GARAGE:** Attached
**YEAR BUILT:** 2006                                            **GARAGE/CARPORT CAPACITY:** 3
                                                               **# PARKING SPACES:** 0
                                                               **FIREPLACE:** Great Room
                                                               **SECURITY SYSTEM:** No
                                                               **HOME WARRANTY:** No
                                                               **PARKING:**
**EXTERIOR FEATURES:** Dbl Pane Windows, Deck, Patio, Spa/Hot Tub, Irrigation System
**INTERIOR FEATURES:** 9 Ft+ Ceilings, Built-ins, Ceiling Fan, Central Vacuum, Fireplace, Security System, Vaulted Ceilings, Whirlpool
Bath
**EXTRAS:** Attic Storage, Cable Available, Garage Door Opener, High Speed Internet Available, Underground Utilities
**ROOMS:** Bonus Room, Breakfast Room, Dining Room, Eat-in Kitchen, Family Room, Game Room, Keeping Room, Kitchen, Laundry
Room, Media/Rec Room, Office, Owner's Suite, Owner's Suite on First, Storage
**AMENITIES:** Cable

**DIRECTIONS:** Hwy 316 to Oconee Connector toward Watkinsville, left on Daniels Bridge Rd, left into Lakewood Manor.

**PRIVATE REMARKS:** Top of the line - Too many extras to list.Everything you could ever wish for. Outdoor fireplace, home theatre,
home automation system, 1829 finished basement, a kitchen to die for and more! See tour on line. Call for list and appt.

**LEASE OPTION:** No        **LEASE PURCHASE:** No         **ASSUMABLE:** No        **OWNER FINANCING:** No

**OWNER'S NAME:**
**OWNER'S ADDRESS:**                        **OWNER'S E-MAIL:**
**OWNER'S CITY:**
**OWNER'S PHONE:**        **OWNER'S STATE:**                        **OWNER'S ZIP:**
                                          **ALT PHONE:**

**SA:** 2.5        **LB:**         **VARIABLE:** No         **VARIABLE ARRANGEMENT:**
**SELLER INCENTIVES:** Yes                        **SELLER INCENTIVES FOR AGENT:** 0
**SELLER INCENTIVES FOR BUYER:** Call agent for buyer bonus
**POSSESSION:** Closing        **REFER TO MLS#:**
**SIGN:** Yes                    **INTERNET:** Yes                   **SELLER DISCLOSURE:** Yes
**ORIGINAL LIST PRICE:** $850,000           **UNDER CONTRACT DATE:**
**CO-LIST OFFICE:**                                   **DAYS ON MARKET:** 338
                                          **CO-LIST AGENT:**
**OFFICE NAME:** The Leaders Real Estate Group, Inc. (#:38)
**MAIN:** (706) 354-1000                              **LISTING AGENT:** Lynora Sapp (#:20204)
**FAX:** (706) 369-9997                               **PREFERRED:** (706) 540-0626
                                                     **AGENT EMAIL:** lsapp@lynora.com

――――― The information has been provided by the Seller, has not been verified by the Broker, and is therefore not guaranteed. ―――――

SpencerT000021

May 10 10 11:49a                                                                                                      p.18

uses and zoning of the property whether permitted or proposed. Buyer acknowledge that Brokers are not experts with respect to the above matters and that, if any of these matters or any other matters are of concern to them, they should seek independent expert advice relative thereto. Buyer acknowledges that Broker shall not be responsible to monitor or supervise any portion of any construction or repairs to Property and that such tasks clearly fall outside the scope of real estate brokerage services;

C.  shall owe no duties to Buyer nor have any authority on behalf of Buyer other than what is set forth in this Agreement;
D.  shall make all disclosures required by law;
E.  shall not be responsible for insuring that Buyer complies with the duties and deadlines contained in any purchase agreement entered into by Buyer and that Buyer shall be solely responsible for the same; and
F.  shall, under no circumstances, have any liability greater than the amount of the real estate commission paid hereunder to Broker (excluding any commission amount paid to a cooperating real estate broker, if any).
G.  shall be held harmless from any and all claims, causes of action, or damages arising out of or relating to:
    1.  inaccurate and/or incomplete information provided by Broker to Buyer;
    2.  earnest money handled by anyone other than Broker; or
    3.  any injury to persons on the Property and/or loss of or damage to the property or anything contained therein.

7.  **Extension.** If during the term of this Brokerage Agreement, Buyer and a prospective seller enter into a real estate sales contract which is not consummated for any reason whatsoever, then the original expiration date of this Agreement shall be extended for the number of days that the property was under contract.

8.  **Disclosures.**
    A.  Broker agrees to keep confidential all information which Buyer asks to be kept confidential by express request or instruction unless the Buyer permits such disclosure by subsequent word or conduct or such disclosure is required by law. Buyer acknowledges, however, that Seller and Seller's broker may possibly not treat any offer made by Buyer (including its existence, terms and conditions) as confidential unless those parties have entered into a confidentiality agreement with Buyer.
    B.  Broker may not knowingly give customers false information.
    C.  In the event of a conflict between Broker's duty not to give customers false information and the duty to keep the confidences of Buyer, the duty not to give customers false information shall prevail.
    D.  Unless specified below, Broker has no other known agency relationships with other parties that would conflict with any interests of Buyer (except that Broker may represent other buyers, sellers, tenants and landlords in buying, selling or leasing property.)

9.  **Disclosure of Potentially Fraudulent Activities.**
    A.  To help prevent fraud in real estate transactions, Buyer does hereby give Broker permission to report any suspicious, unusual and/or potentially illegal or fraudulent activity (including but not limited to mortgage fraud) to:
        1.  Governmental officials, agencies and/or authorities and/or
        2.  Any mortgage lender, mortgage insurer, mortgage investor and/or title insurance company (and/or their agents and representatives) could potentially be harmed if the activity was in fact fraudulent or illegal.
    B.  Buyer acknowledges that Broker does not have special expertise with respect to detecting fraud in real estate transactions. Therefore, Buyer acknowledges that:
        1.  Activities which are fraudulent or illegal may be undetected by Broker; and
        2.  Activities which are lawful and/or routine may be reported by Broker as being suspicious, unusual or potentially illegal or fraudulent.

10. **Broker's Policy on Agency.** Unless Broker indicates below that Broker is not offering a specific agency relationship, the types of agency relationships offered by Broker are seller agency, buyer agency, designated agency, dual agency, landlord agency, and tenant agency.

    The agency relationship(s), if any, not offered by Broker is/are the following: ___*Sith - Agency*___

11. **Dual Agency Disclosure.** *[Applicable only if Broker's agency policy is to practice dual agency]* If Buyer and a prospective seller are both being represented by the same Broker, Buyer is aware that Broker will be acting as a dual agent in that transaction and consents to the same. Buyer has been advised that:
    A.  In serving as a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
    B.  Broker will disclose all adverse, material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from either client which is not otherwise required to be disclosed by law;
    C.  Buyer does not have to consent to dual agency and, the consent of Buyer to dual agency has been given voluntarily and Buyer has read and understands the brokerage engagement agreement.
    D.  Notwithstanding any provision to the contrary contained herein, Buyer hereby directs Broker, while acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect Buyer's negotiating position.
    E.  Broker or Broker's affiliated licensees will timely disclose to each client the nature of any material relationship with other clients other than that incidental to the transaction. A material relationship shall mean any actually known personal, familial, or business relationship between Broker and a client which would impair the ability of Broker to exercise fair and independent judgment relative to another client. The other party whom Broker may represent in the event of dual agency may or may not be identified at the time Buyer enters into this Agreement. If any party is identified after the Agreement and has a material relationship with Broker, then Broker shall timely provide to Buyer a disclosure of the nature of such relationship.

Copyright© 2008 by Georgia Association of REALTORS®, Inc.                    F4, Exclusive Buyer Brokerage Agreement, Page 2 of 4, 01/01/08

SpencerT000022

12. **Designated Agency Disclosure.** *[Applicable only if Broker's agency policy is to practice designated agency]* Buyer does hereby consent to Broker acting in a designated agency capacity in transactions in which Broker is representing Buyer and a prospective seller. With designated agency, the Broker assigns one or more of its affiliated licensees exclusively to represent a prospective seller and one or more of its other affiliated licensees exclusively to represent Buyer.

13. **Receipt of Faxes and Telephone Calls.** Buyer's current telephone number, facsimile (FAX) number and street address are set forth below. Buyer acknowledges that in buying real property there are time deadlines in which: 1) offers or counteroffers must be accepted; and 2) the various obligations set forth in the purchase and sale agreement must be fulfilled. Buyer therefore agrees: 1) to be available at the below referenced numbers and street address(es) to receive time sensitive information; and 2) to immediately update Broker in writing on changes to any of the above referenced numbers and addresses. Buyer acknowledges that the failure of Buyer to comply with the terms set forth herein could have adverse legal and financial consequences. Buyer further agrees that during the term of this Agreement, and for 18 months thereafter, Broker and companies and persons affiliated with Broker shall have the right, but not the obligation, to contact Buyer at any of the above telephone numbers, email address(es) and/or street address(es) for marketing, advertising, and other business purposes and Buyer expressly consents to the same.

14. **Notices.** Except as otherwise provided herein, all notices, including offers, counteroffers, acceptances, amendments and demands, required or permitted hereunder shall be in writing, signed by the party giving the notice and delivered either:

A. in person;

B. by an overnight delivery service, prepaid;

C. by facsimile transmission (FAX) to Broker and Buyer at their respective FAX telephone numbers identified on the signature page of this Agreement (provided that an original of the notice shall be promptly sent thereafter if so requested by the party receiving the same);

D. by the United States Postal Service, postage prepaid, registered or certified return receipt requested; or

The parties agree that a faxed signature of a party constitutes an original signature binding upon that party. Notices shall be deemed to be given as of the date and time they are actually received, except for Fax notices which shall be deemed to have been given and received as of the date and time they are transmitted provided that the sending FAX produces a written confirmation showing the correct date and time of the transmission and the telephone number referenced herein to which the notice should have been sent. All notice requirements referenced herein shall be strictly construed. Any notice sent by FAX shall be sent to such other FAX number as the receiving party may from time to time specify by notice to the party sending the FAX.

15. **Early Termination.** Broker or Buyer shall have the right to terminate this Agreement at any time by giving the other party written notice; However, such a termination shall not limit Broker's right to collect any commission earned or owing as of the date of termination or to which Broker is entitled to collect herein after the termination of this Agreement. It being expressly agreed that such rights shall survive the termination of this Agreement.

16. **Governing Law.** This Agreement may be signed in multiple counterparts and shall be governed by and interpreted pursuant to the laws of the State of Georgia.

17. **Entire Agreement.** This Agreement constitutes the sole and entire agreement between the parties. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement and the terms and conditions herein may not be amended, modified or waived except by the written agreement of Buyer. The failure of the parties to adhere strictly to the terms and conditions of this Agreement shall not constitute a waiver of the right of the parties later to insist on such strict adherence.

18. **No Imputed Knowledge.** Buyer acknowledges and agrees that with regard to any property in which Buyer develops an interests, there shall be no knowledge imputed between Broker and Broker's licensees or between the different licenses of Broker. Broker and each of Broker's licensees shall be deemed to have only actual knowledge of such properties.

19. **GAR Forms.** This Georgia Association of REALTORS®, Inc. (GAR) form is provided as a courtesy to the parties. It may only be used in accordance with the licensing agreement of GAR or as may be approved in writing by GAR. It is not required to be used in any transaction, may not fit the needs, goals and purposes of the parties and was not written to provide specific legal protection to the parties. Parties seeking legal advice should consult an attorney. While this form may be altered or modified by the parties, at their own risk, to a specific real estate transaction, this form may not be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph, shall control:

Copyright© 2008 by Georgia Association of REALTORS®, Inc.          F4. Exclusive Buyer Brokerage Agreement, Page 3 of 4, 01/01/08

**BY SIGNING THIS AGREEMENT, BUYER ACKNOWLEDGES THAT: (1) BUYER HAS READ ALL PROVISIONS AND DISCLOSURES MADE HEREIN; (2) BUYER UNDERSTANDS ALL SUCH PROVISIONS AND DISCLOSURES AND HAS ENTERED INTO THIS AGREEMENT VOLUNTARILY; AND (3) BUYER IS NOT SUBJECT TO A CURRENT BUYER BROKERAGE AGREEMENT WITH ANY OTHER BROKER.**

> RECEIPT OF A COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY BUYER.
>
> The above Agreement is hereby accepted 6:00 o'clock p m., on the date of May 2, 2008

Coldwell Banker/Buckhead _____ Thomas R. Spencer
Broker                            Buyer's Signature

17      H6935                    Thomas R. Spencer
MLS Office Code   Brokerage Firm License Number    Print or Type Name

Broker's Phone # 06-543-4000 FAX # 704-354-6082   Virginia M. Spencer
                                  Buyer's Signature

By: Cathie Chapman             Virginia M. Spencer
Broker or Broker's Affiliated Licensee            Print or Type Name

CATHIE CHAPMAN                  Phone # (612) 327-8876 FAX # _____
Print or Type Name

136012                          Address 50433 Eagles Nest
Agent's Georgia Real Estate License Number

                                Northville MT 48168

Copyright© 2008 by Georgia Association of REALTORS®, Inc.          F4, Exclusive Buyer Brokerage Agreement, Page 4 of 4, 01/01/08

File No. 8-0102  Page #11

## Building Sketch

| Borrower/Client | Thomas & Virginia Spencer | | | |
|---|---|---|---|---|
| Property Address | 2481 Lakewood Manor Dr | | | |
| City | Athens | County  Oconee | State  GA | Zip Code  30606-7694 |
| Client | Wells Fargo Bank, N.A. - CO-C52 | | | |



Comments:

| AREA CALCULATIONS SUMMARY | | |
|---|---|---|
| Code | Description | Size | Net Totals |
| GLA1 | First Floor | 2831.25 | 2831.25 |
| P/P | Porch | 78.00 | |
| | Deck | 406.00 | 484.00 |
| CAR | Garage | 928.75 | 928.75 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 8.0  x  13.5 | | 108.00 |
| 2.5  x   6.0 | | 15.00 |
| 12.5  x  48.0 | | 600.00 |
| 5.5  x  13.5 | | 74.25 |
| 38.0  x  44.0 | | 1672.00 |
| 6.0  x  20.0 | | 120.00 |
| 4.0  x  15.0 | | 60.00 |
| 13.0  x  24.8 | | 292.00 |

SpencerT000025

File No. 8-0102 Page #12

## Building Sketch

| Borrower/Client | Thomas & Virginia Spencer | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 2481 Lakewood Manor Dr | | | | | |
| City | Athens | | County Oconee | State GA | Zip Code 30606-7694 |
| Client | Wells Fargo Bank, N.A. - CO-C52 | | | | | |



Sketch by Apex IV™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Net Totals |
| GLA1 | Second Floor | 1454.00 | 1454.00 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| Second Floor | | |
| 13.0 x 51.0 | | 663.00 |
| 2.0 x 21.0 | | 42.00 |
| 18.0 x 38.0 | | 684.00 |
| 5.0 x 13.0 | | 65.00 |

SpencerT000026

File No. 8-0102 Page #13

# Building Sketch

| Borrower/Client | Thomas & Virginia Spencer | | | | |
|---|---|---|---|---|---|
| Property Address | 2481 Lakewood Manor Dr | | | | |
| City | Athens | County | Oconee | State GA | Zip Code 30606-7694 |
| Client | Wells Fargo Bank, N.A. - CO-C52 | | | | |



Sketch by Apex IV™

Comments:

## AREA CALCULATIONS SUMMARY

| Code | Description | Size | Net Totals |
|---|---|---|---|
| BSMT | Basement | 2817.85 | 2817.85 |
| P/P | Patio | 783.00 | 783.00 |

## AREA BREAKDOWN

| Breakdown | Subtotals |
|---|---|

SpencerT000027



*Engineering Systems Inc.*

12750 Commonwealth Drive
Fort Myers, FL 33913

## Certificate of Analysis

XL3t-36951

| | |
|---|---|
| Reading No | 6 |
| Mode | MINING |
| Time | 2010-11-29 13:45 |
| Duration | 50.00 |
| Sequence | Final |
| Flags | |
| SAMPLE | SPENCER 32470 T |
| LOCATION | mstr. bdr closet ground wire |
| INSPECTOR | |
| MISC | |
| NOTE | |



| | % | ± | Error |
|---|---|---|---|
| Ag | < LOD | : | 0.154 |
| Bal | < LOD | ; | 0.002 |
| Zr | 0.062 | ± | 0.016 |
| Zn | < LOD | : | 0.097 |
| Cu | 81.729 | ± | 12.940 |
| Cl | 0.421 | ± | 0.066 |
| S | 17.548 | ± | 1.956 |

Performed by:



**Engineering Systems Inc.**

12750 Commonwealth Drive
Fort Myers, FL 33913

## Certificate of Analysis

XL3t-36951

| | |
|---|---|
| Reading No | 7 |
| Mode | MINING |
| Time | 2010-11-29 13:49 |
| Duration | 50.00 |
| Sequence | Final |
| Flags | |
| SAMPLE | SPENCER 32470 T |
| LOCATION | 2nd fl bathrm next to stairs |
| INSPECTOR | |
| MISC | exposed wire 11 days |
| NOTE | |



| | % | ± | Error |
|---|---|---|---|
| Ag | 0.169 | ± | 0.037 |
| Bal | < LOD | : | 0.035 |
| Zr | 0.091 | ± | 0.018 |
| Zn | < LOD | : | 0.109 |
| Cu | 97.376 | ± | 11.413 |
| Cl | 0.154 | ± | 0.030 |
| S | 1.950 | ± | 0.182 |

Performed by: 



Engineering
Systems
Inc.

12750 Commonwealth Drive
Fort Myers, FL 33913

## Certificate of Analysis

XL3t-36951

| | |
|---|---|
| Reading No | 8 |
| Mode | MINING |
| Time | 2010-11-29 13:51 |
| Duration | 50.00 |
| Sequence | Final |
| Flags | |
| SAMPLE | SPENCER 32470 T |
| LOCATION | 1st fl mb closet |
| INSPECTOR | |
| MISC | exposed wire 11 days |
| NOTE | |

| | % | ± | Error |
|---|---|---|---|
| Ag | 0.142 | ± | 0.036 |
| Bal | < LOD | : | 11.226 |
| Zr | 0.080 | ± | 0.018 |
| Zn | < LOD | : | 0.111 |
| Cu | 92.361 | ± | 12.638 |
| Cl | < LOD | : | 0.058 |
| S | 5.644 | ± | 0.561 |

Performed by:



**Engineering Systems Inc.**

12750 Commonwealth Drive
Fort Myers, FL 33913

## Certificate of Analysis

XL3t-36951

| Reading No | 9 |
|---|---|
| Mode | MINING |
| Time | 2010-11-29 13:53 |
| Duration | 50.00 |
| Sequence | Final |
| Flags | |
| SAMPLE | SPENCER 32470 T |
| LOCATION | 1st fl mb closet |
| INSPECTOR | |
| MISC | exposed wire 11 days |
| NOTE | LARGER SAMPLE FROM BAG |



| | % | ± | Error |
|---|---|---|---|
| Ag | 0.160 | ± | 0.037 |
| Bal | < LOD | : | 0.002 |
| Zr | 0.068 | ± | 0.015 |
| Zn | < LOD | : | 0.109 |
| Cu | 92.163 | ± | 11.740 |
| Cl | 0.064 | ± | 0.028 |
| S | 7.381 | ± | 0.679 |

Performed by: 



**Engineering**
**Systems**
**Inc.**

12750 Commonwealth Drive
Fort Myers, FL 33913

# Certificate of Analysis

XL3t-36951

| | |
|---|---|
| Reading No | 10 |
| Mode | MINING |
| Time | 2010-11-29 13:59 |
| Duration | 110.00 |
| Sequence | Final |
| Flags | ModCF Set 2 |
| SAMPLE | SPENCER 32470 T |
| LOCATION | 1st fl mb closet |
| INSPECTOR | |
| MISC | DRYWALL SAMPLE |
| NOTE | LARGER SAMPLE FROM BAG |

| | % | ± | Error |
|---|---|---|---|
| Ag | < LOD | : | 0.003 |
| Bal | 48.474 | ± | 3.033 |
| Mo | < LOD | : | 0.002 |
| Nb | < LOD | : | 0.002 |
| Zr | < LOD | : | 0.002 |
| Sr | 0.358 | ± | 0.004 |
| Rb | < LOD | : | 0.002 |
| Bi | < LOD | : | 0.002 |
| As | < LOD | : | 0.002 |
| Se | < LOD | : | 0.002 |
| Au | < LOD | : | 0.005 |
| Pb | < LOD | : | 0.002 |
| W | < LOD | : | 0.013 |
| Zn | < LOD | : | 0.002 |
| Cu | < LOD | : | 0.004 |
| Ni | < LOD | : | 0.010 |
| Co | < LOD | : | 0.010 |
| Fe | 0.270 | ± | 0.017 |
| Mn | < LOD | : | 0.013 |
| Cr | < LOD | : | 0.005 |
| V | 0.003 | ± | 0.001 |
| Ti | 0.020 | ± | 0.002 |
| Al | < LOD | : | 0.542 |
| P | < LOD | : | 0.100 |
| Si | 1.033 | ± | 0.073 |
| Cl | 0.028 | ± | 0.010 |
| S | 14.731 | ± | 0.178 |
| Mg | < LOD | : | 5.997 |
| Ba | < LOD | : | 0.007 |
| Ca | 23.643 | ± | 0.209 |
| K | 0.068 | ± | 0.013 |

Performed by:



**Engineering
Systems
Inc.**

12750 Commonwealth Drive
Fort Myers, FL 33913

## Certificate of Analysis

XL3t-36951

| | |
|---|---|
| Reading No | 11 |
| Mode | MINING |
| Time | 2010-11-29 14:03 |
| Duration | 110.00 |
| Sequence | Final |
| Flags | ModCF Set 2 |
| SAMPLE | SPENCER 32470 T |
| LOCATION | 1st fl mb closet |
| INSPECTOR | |
| MISC | DRYWALL SAMPLE |
| NOTE | SMALL SAMPLE FROM SAW CUT |

| | % | ± | Error |
|---|---|---|---|
| Ag | < LOD | : | 0.003 |
| Bal | 51.176 | ± | 2.802 |
| Mo | < LOD | : | 0.002 |
| Nb | < LOD | : | 0.002 |
| Zr | < LOD | : | 0.002 |
| Sr | 0.344 | ± | 0.004 |
| Rb | < LOD | : | 0.002 |
| Bi | < LOD | : | 0.002 |
| As | < LOD | : | 0.002 |
| Se | < LOD | : | 0.002 |
| Au | < LOD | : | 0.005 |
| Pb | < LOD | : | 0.002 |
| W | < LOD | : | 0.013 |
| Zn | < LOD | : | 0.002 |
| Cu | < LOD | : | 0.005 |
| Ni | < LOD | : | 0.010 |
| Co | < LOD | : | 0.010 |
| Fe | 0.250 | ± | 0.017 |
| Mn | < LOD | : | 0.014 |
| Cr | < LOD | : | 0.004 |
| V | 0.003 | ± | 0.001 |
| Ti | 0.020 | ± | 0.002 |
| Al | < LOD | : | 0.510 |
| P | < LOD | : | 0.096 |
| Si | 1.039 | ± | 0.071 |
| Cl | 0.024 | ± | 0.009 |
| S | 13.762 | ± | 0.173 |
| Mg | < LOD | : | 5.511 |
| Ba | 0.012 | ± | 0.004 |
| Ca | 22.536 | ± | 0.202 |
| K | 0.069 | ± | 0.013 |

Performed by:



12750 Commonwealth Drive
Fort Myers, FL 33913

## Certificate of Analysis

XL3t-36951

| | |
|---|---|
| Reading No | 12 |
| Mode | MINING |
| Time | 2010-11-29 14:06 |
| Duration | 110.00 |
| Sequence | Final |
| Flags | ModCF Set 2 |
| SAMPLE | SPENCER 32470 T |
| LOCATION | 1st fl bath next to stairs |
| INSPECTOR | |
| MISC | DRYWALL SAMPLE |
| NOTE | SMALL SAMPLE 5 8ths thick |



| | % | ± | Error |
|---|---|---|---|
| Ag | 0.003 | ± | 0.001 |
| Bal | 56.421 | ± | 2.519 |
| Mo | < LOD | : | 0.002 |
| Nb | < LOD | : | 0.002 |
| Zr | < LOD | : | 0.002 |
| Sr | 0.110 | ± | 0.002 |
| Rb | < LOD | : | 0.002 |
| Bi | < LOD | : | 0.002 |
| As | < LOD | : | 0.002 |
| Se | < LOD | : | 0.002 |
| Au | < LOD | : | 0.004 |
| Pb | 0.004 | ± | 0.001 |
| W | < LOD | : | 0.011 |
| Zn | 0.005 | ± | 0.001 |
| Cu | < LOD | : | 0.004 |
| Ni | < LOD | : | 0.008 |
| Co | < LOD | : | 0.007 |
| Fe | 0.097 | ± | 0.010 |
| Mn | 0.016 | ± | 0.007 |
| Cr | < LOD | : | 0.004 |
| V | < LOD | : | 0.002 |
| Ti | 0.008 | ± | 0.001 |
| Al | < LOD | : | 0.447 |
| P | < LOD | : | 0.093 |
| Si | 0.606 | ± | 0.064 |
| Cl | 0.074 | ± | 0.009 |
| S | 14.256 | ± | 0.175 |
| Mg | < LOD | : | 4.982 |
| Ba | 0.008 | ± | 0.003 |
| Ca | 17.115 | ± | 0.148 |
| K | 0.106 | ± | 0.011 |

Performed by: