Print Form

Plaintiff Profile Form - Residential Properties

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |

**For Internal Use Only**

File Number

Date Received

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known.  You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary.  All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

---

**Section I. Property Information**

| | |
|---|---|
| Name Property Owner | Curtis R. and Sylvia L. Hinkley |
| Address of Affected Property | Stephanie L. Hinkley-Lopez |
| | 156 Mulberrry Lane |
| | Hertford, NC 27944 |

Is this Property:* [X] Residential  [ ] Commercial  [ ] Governmental

| | |
|---|---|
| Name of Person Completing this Form | Curtis Hinkley |

Is above your primary residence?  (•) Yes   No ( )

Mailing Address (if different)

Phone:  (252  ) 330  - 1329

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Circle one:  [X] Owner-Occupant   [ ] Owner Only   [ ] Renter-Occupant

| | |
|---|---|
| Represented By: | Richard J. Serpe |
| Address: | 580 E. Main Street |
| | Suite 310 |
| | Norfolk, VA 23510 |
| Phone: | (757 ) 233  - 0009 |
| Case No. /Docket Info: | 2:10-cv-00361 |

**Section II. Insurance Information**

| | |
|---|---|
| Homeowner/ Renter Insurer: | State Farm |
| Policy #: | 33-BJ-G048-2 |
| Agent: | Billie Reid |
| Address: | 913 Halstead Blvd |
| | Elizabeth Vity, NC 27909 |
| Phone: | (252  ) 335   -  4349 |

+ Attach Copy of  Insurance Declaration Page

---

**Section III. Claimant Information**

| Name of Claimant | Dates Occupied Move-in | Dates Occupied Leave | Gender | Date of Birth | Are you claiming personal injuries?* Circle One | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| Curtis R. Hinkley | / / | / / | (X) / F | / / | ( ) Yes   No (•) | Owner Only |
| Sylvia L. Hinkley | / / | / / | M / (X) | / / | ( ) Yes   No (•) | Owner Only |
| Stephanie L. Hinkley-Lopez | 3 /14/ 09 | / / | M / (X) | / / | (•) Yes   No ( ) | Owner-Occupant |
| | / / | / / | M / F | / / | ( ) Yes   No (•) | |
| | / / | / / | M / F | / / | ( ) Yes   No (•) | |
| | / / | / / | M / F | / / | ( ) Yes   No (•) | |
| | / / | / / | M / F | / / | ( ) Yes   No (•) | |
| | / / | / / | M / F | / / | ( ) Yes   No (•) | |
| | / / | / / | M / F | / / | ( ) Yes   No (•) | |

* Personal injuries include claims for mental anguish and medical monitoring.

Plaintiff Profile Form - Residential Properties

### Section IV. Inspection Information

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?   Yes ⊙   No ○

   1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?   Art Greason

      1.2. When did the inspection take place?   5  8  /09

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?   Yes ⊙   No ○

   2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?   Art Greason

      2.2. When was this determination made?   5  8  /09

### Section V. Drywall Information

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Taishan Gypsum | MFG Taihe China | All- Throughout Home |
| | Venture Supply | |
| | | |
| | | |

### Section VI. Home Information

| | | | | Yes | No |
|---|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 2500 | | | | |
| Estimated Sq. Ft. of Drywall | 5376 | Occupied | | ☒ | |
| Height of Interior Walls | 8' | Year-round | | ☒ | |
| Number of Bedrooms: | 3 | Summer | | ☒ | |
| Number of Bathrooms: | 2 | Winter | | ☒ | |

#### Plumbing System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | | ☒ |
| Copper Piping | ☒ | | |
| Copper Fixtures | ☒ | | |
| Other Fixtures | ☒ | | |
| Were repairs made to the plumbing system? | | no | |
| Dates: | | | |

#### Electrical System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | ☒ | | |
| Switches | ☒ | | |
| Main Panel | ☒ | | |
| 2nd Panel | | | ☒ |
| Exposed Copper Wires | ☒ | | |
| Were repairs made to the electrical system? | | ☒ | |
| Dates: | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

### Section VII. Construction/Renovation Information

Date Range for New Home Construction: (Month/Day/Year)

| Start Date: | 10 /10 /05 | Completion Date | 3 /23 /06 |
|---|---|---|---|
| Move In Date: | 3 /14 /09 | Date Acquired Home | 3 /6 /09 |

Date Range for Renovations: (Month/Day/Year)

| Start Date: | / / | Completion Date | / / |
|---|---|---|---|
| Move In Date: | / / | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | ☒ | |
| First Floor: Full Wall of drywall replaced | | ☒ | |
| Second Floor: Any drywall replaced | | ☒ | |

### Section VIII. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:

   CAW Developers LLC

Address:  711 Caratoke Hwy

   Moyok, NC 27950

Phone:  (252 ) 232 - 2233

+ Attach Copy of Construction/Renovation Contract

+ Attach Copy of New Home Warranty Declaration

### Section IX. Drywall Installer

Drywall Installer's Name:

   The Porter-Blaine Corp.

Address:  1140 Azalea Garden Road

   Norfolk, VA 23502

Phone:  (757 ) 857 - 0282

### Section X. Drywall Supplier

Drywall Supplier's Name:

   Venture Supply, Inc.

Address:  1140 Azalea Garden Road

   Norfolk, VA 23502

Phone:  (757 ) 855 - 5433

HinkleyC000002

Case 2:09-md-02047-EEF-JCW   Document 168   Filed 08/17/2009    Page 28 of 28

Plaintiff Profile Form - Residential Properties

**Section XI. Verification of Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
|---|---|---|---|
| | 8/31/09 | | |
| | 8/31/09 | | |
| | 8/31/09 | | |

HinkleyC000003





**State Farm Fire and Casualty Company**
A Stock Company With Home Offices in Bloomington, Illinois

1500 State Farm Blvd.
Charlottesville, VA 22909-0001
**Addl Insured-Sections I & II**

AT3

000442         F-07-1880-F220         H  F

CURTIS HINKLEY
8 BATEMAN DR
ELIZABETH CITY  NC  27909-9480

**DECLARATIONS PAGE**
**CO-INSURANCE CONTRACT**

| Policy Number | 33-BJ-G048-2 |
|---|---|
| Replaces Number | 93-BB-X993-7 |

| Policy Period | Effective Date | Expiration Date |
|---|---|---|
| 12 Months AND | FEB 20 2009 | FEB 20 2010 |

for succesive policy periods as stated.
The policy period begins and ends at 12:01 am
standard time at the residence premises.

**Named Insured**
HINKLEY-LOPEZ, STEPHANIE
156 MULBERRY LN
HERTFORD NC  27944

## HOMEOWNERS POLICY - SPECIAL FORM 3

**Automatic Renewal** - If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period, subject to our premiums, rules and forms then in effect. You must pay us prior to the end of the current policy period or else this policy will expire. If a mortgagee/lienholder is named in this policy, we will continue this insurance for the mortgagee/lienholder's interest for ten days after written notice of termination to the mortgagee/lienholder and then this policy will terminate.

Location of Residence Premises
Same as Insured's Address

**Addl Insured-Sections I & II**
SYLVIA HINKLEY
8 BATEMAN DR
ELIZABETH CITY  NC  27909-9480

Important Consent to Rate Information on next page.

| Coverages & Property | | Limits of Liability | Inflation Coverage Index: 264.1 |
|---|---|---|---|
| | SECTION I | | **Deductibles - Section I** |
| A | Dwelling | $ 174,000 | $ 1,500  Other Perils |
| | Bldg Ordinance/Law-10% up to | $ 17,400 | Hurricane  2.00% |
| B | Other Structures | $ 17,400 | |
| C | Personal Property | $ 121,800 | |
| D | Loss of Use | $ 34,800 | |
| | Loss Assessment | $ 1,000 | |
| | SECTION II | | |
| E | Personal Liability | $ 100,000 | |
| | (Each Occurrence) | | |
| F | Medical Payments to | $ 1,000 | |
| | Others (Each Person) | | |

Section II
Other Insured Locations

| Forms & Endorsements | | Total Premium | $ 1,289.00 |
|---|---|---|---|
| Special Form 3 | FP-7143.4 | Discounts Applied: | |
| Special Provisions | FE-7742.7 | Home Alert | |
| Special Computer Coverage | FE-7732.3 | Home/Auto | |
| Multi-Line Discount | FE-5319 | Utility Rating Cr | |
| Specified Additional Amt Cov A | FE-7715.4 | | |
| Personal Prop Replacement Cost | FE-7706.4 | | |
| Hurricane Percentage Ded | FE-5395.1 | | |
| Additional Insured | FE-7708.3 | | |
| Premises Alarm or Fire Protect | FE-7737.3 | | |
| Home Day Care Business | FE-5444 | | |
| Inflation Guard | FE-7727.3 | | |
| Refrigerated Property Coverage | FE-7773.1 | | |

Other limits and exclusions may apply - refer to your policy

**Your policy consists of this page, any endorsements
and the policy form. Please keep these together.**

FP-7007.3C                                   **Continued on Reverse**

1663   1 51  AI
N 1S              Prepared        APR 01 2009

**BILLIE REID**
252-335-4349

555.7003 NC 2 Rev 02-2005  (e1f039gc)
Hinkley.C000601

**CONTINUED FROM FRONT SIDE**

I understand and agree that the coverage provided by the policy referenced on the front is based on rates in excess of standard rates as may be applicable in the state of North Carolina. I further understand that I am being charged  45 percent more than the standard rates.

HinkleyC000005

o1f0396g
Rev. 09-2005

33-BJ-6048-2   ( 1664) 000442

FE-7742.7
Page 1 of 5

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS - NORTH CAROLINA

### DEFINITIONS

Definition B.3. is deleted and replaced by the following:

3. "Business" includes any full or part-time activity of any kind engaged in for economic gain, including the use of any part of any premises for such purposes.

The following definition is added to Paragraph B. in all forms:

### 12. "Fungi"

a. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

b. Under Section II, this does not include any fungi that are, are on, or are contained in any good or product intended for consumption.

### SECTION I - PROPERTY COVERAGES

### C. COVERAGE C - Personal Property

3. **Special Limits Of Liability**

Paragraphs f. and g. are deleted in all forms except HO 00 08, and deleted in Endorsements HO 32 95 and HO 32 35 when made part of Forms HO 00 04 and HO 00 06, respectively. Paragraphs f. and g. in those forms are replaced by the following:

f. 10% of the Coverage C limit, subject to a maximum of $10,000, for loss by theft* of firearms and related equipment.

g. 25% of the Coverage C limit, subject to a maximum of $10,000, for loss by theft* of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, holloware, tea sets, trays and trophies made of or including silver, gold or pewter.

\* In Form HO 00 05 and Endorsements HO 32 95 and HO 32 35, theft includes misplacing or losing.

4. **Property Not Covered**

Paragraph c.(2)(a) is deleted and replaced by the following:

(a) Used to service an "insured's" residence; or

### E. Additional Coverages

In all Forms except HO 00 06 and HO 00 08:

1. **Debris Removal** is deleted and replaced by the following:

1. **Debris Removal**

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

b. We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

(1) Your tree(s) felled by the peril of Windstorm or Hail; or Weight of Ice, Snow or Sleet; or

(2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s):

(3) Damages a covered structure; or

(4) Does not damage a covered structure, but:

(a) Blocks a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

This coverage is additional insurance.

CONTINUED

HinkleyC000006

FE-7742.7
Page 2 of 5

In Form HO 00 06:

1.  **Debris Removal** is deleted and replaced by the following:

1.  **Debris Removal**

    a.  We will pay your reasonable expense for the removal of:

        (1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

        (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

        This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

    b.  We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

        (1) Tree(s) you solely own felled by the peril of Windstorm or Hail; or Weight of Ice, Snow or Sleet; or

        (2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C**;

        provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

        This coverage is additional insurance.

In Form HO 00 08:

1.  **Debris Removal** is deleted and replaced by the following:

1.  **Debris Removal**

    a.  We will pay your reasonable expense for the removal of:

        (1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

        (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

        This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged

property, an additional 5% of that limit of liability is available for debris removal expense.

    b.  We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

        (1) Your tree(s) felled by the peril of Windstorm or Hail;

        (2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C**;

        provided the tree(s):

        (3) Damages a covered structure; or

        (4) Does not damage a covered structure, but:

            (a) Blocks a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

            (b) Blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

        The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

        This coverage is additional insurance.

10. **Landlord's Furnishings**

    k.  **Accidental Discharge Or Overflow Of Water Or Steam**

        Paragraph 2.(d) is deleted and replaced by the following in form HO 00 05:

            (d) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years; or

The following **Additional Coverage** is added to all forms except HO 00 04:

13. **"Fungi", Wet Or Dry Rot, Or Bacteria**

    a.  We will pay up to a total of $5000 for:

        (1) Direct physical loss to property covered under Section I Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property caused by, resulting from, or consisting of "fungi", wet or dry rot, or bacteria if the direct result of a Peril Insured Against; and

        (2) The necessary increase in costs which you incur to maintain your normal standard of living when the "residence pre-

CONTINUED

HinkleyC000007

33-BJ-G048-2  ( 1665) 000442

FE-7742.7
Page 3 of 5

mises" is uninhabitable due to a loss caused by, resulting from, or consisting of "fungi", wet or dry rot, or bacteria which is the direct result of a Peril Insured Against.

The coverage provided above is the only coverage under Section I Coverage A - Dwelling, Coverage B - Other Structures, Coverage C - Personal Property and Coverage D - Loss Of Use for loss caused by, resulting from, or consisting of "fungi", wet or dry rot, or bacteria caused directly or indirectly regardless of any other cause or event contributing concurrently or in any sequence.

**b.** The amount in **a.** above is the most we will pay for the cost:

   **(1)** To remove "fungi", wet or dry rot, or bacteria from covered property;

   **(2)** To tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

   **(3)** Of any testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

**c.** The coverage provided above applies only when such loss or costs are the result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and protect the property from further damage at or after the time of the occurrence of that Peril Insured Against.

**d.** If there is covered loss to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This is additional insurance and is the most we will pay for the total of all loss or costs payable under the Additional Coverage regardless of the number of locations insured or the number of claims made. No deductible applies to the coverage.

(This is Additional Coverage 12. in Form HO 00 06 and Additional Coverage 9. in Form HO 00 08.)

## SECTION I - PERILS INSURED AGAINST

In Form HO 00 03:

**A. Coverage A - Dwelling And Coverage B - Other Structures**

Paragraph 2.c.(5) is deleted and replaced by the following:

   **(5)** Constant or repeated discharge, seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years; or

Paragraph 2.c.(6)(c) is deleted and replaced by the following:

   **(c)** Smog, rust, or other corrosion;

**B. Coverage C - Personal Property**

   **12. Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph b.(4) is deleted and replaced by the following:

   **(4)** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

In Form HO 00 05:

Paragraph A.2.d. is deleted and replaced by the following:

   **d.** Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years; or

Paragraph A.2.e.(3) is deleted and replaced by the following:

   **(3)** Smog, rust or other corrosion;

In Forms HO 00 02, HO 00 04 and HO 00 06:

**12. Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph b.(5) in Forms HO 00 02 and HO 00 06 and Paragraph b.(4) in Form HO 00 04 is deleted and replaced by the following:

   **(5)** To a building caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

CONTINUED

HinkleyC000008

FE-7742.7
Page 4 of 5

## SECTION I - EXCLUSIONS

8. **Intentional Loss** is deleted and replaced by the following:

8. **Intentional Loss**.

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

This exclusion only applies to an "insured" who commits or conspires to commit an act with the intent to cause a loss.

(This is Paragraph A.8. in Forms HO 00 03 and HO 00 05.)

The following exclusion is added:

10. **"Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria means the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria other than as provided in Additional Coverage 13. "Fungi", Wet Or Dry Rot, Or Bacteria.

(This is Exclusion **A.10.** in Forms HO 00 03 and HO 00 05.)

## SECTION I - CONDITIONS

C. **Loss Settlement**

In Forms HO 00 02, HO 00 03 and HO 00 05 Sub-paragraph **2.a.** is deleted and replaced by the following:

2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building on the "residence premises" or some other premises within the State of North Carolina.

E. **Appraisal** is deleted and replaced by the following:

E. **Appraisal**

If you and we fail to agree on the value or amount of any item or loss, either may demand an appraisal of such item or loss. In this event, each party will choose a competent

and disinterested appraiser within 20 days after receiving a written request from the other. The two appraisers will choose a competent and impartial umpire. If they cannot agree upon an umpire within 15 days, you or we may request that a choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss. Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is covered under this policy. If there is an appraisal, we still retain the right to deny the claim.

G. **Suit Against Us** is deleted and replaced by the following:

G. **Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within three years after the date of loss.

I. **Loss Payment** is deleted and replaced by the following:

I. **Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. We will pay within 60 days after the amount is finally determined.

This amount may be determined by:

a. Reaching an agreement with you;

b. Entry of a final judgment; or

c. The filing of an appraisal award with us.

## SECTION II - EXCLUSIONS

A. **"Motor Vehicle Liability"**

Paragraph **2.b.** is deleted and replaced in all forms by the following:

   b. Used to service an "insured's" residence;

E. **Coverage E - Personal Liability And Coverage F - Medical Payments To Others**

Paragraph **1. Expected or Intended Injury** is deleted and replaced in all forms by the following:

CONTINUED

HinkleyC000009

33-BJ-G048-2   ( 1666) 000442

1. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" which is intended by or which may reasonably be expected to result from the intentional acts or omissions or criminal acts or omissions of one or more "insured" persons. This exclusion applies even if:

   a. The "insured" persons lack the mental capacity to govern their own conduct;

   b. The "bodily injury" or "property damage" is of a different kind, quality or degree than intended or reasonably expected; or

   c. The "bodily injury" or "property damage" is sustained by a different person or entity than intended or reasonably expected.

This exclusion applies regardless of whether or not an "insured" person is actually charged with, or convicted of, a crime.

Paragraph 2. **"Business"** is deleted and replaced by the following:

2. **"Business"**

   a. "Bodily injury" or "property damage" arising out of or in connection with a "business" engaged in by an "insured".

   This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   b. This Exclusion **E.2.** does not apply to:

   (1) The rental or holding for rental of an "insured location";

   (a) On an occasional basis if used only as a residence;

   (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

   (c) In part, as an office, school, studio or private garage; and

   (2) An insured minor involved in part-time, self-employed "business" pursuits normally undertaken by minors, unless the minor is employed by a "business". A minor means a person who has not attained his or her 19th birthday (or age 23 if a full time student);

The following exclusion is added:

9. **"Fungi", Wet Or Dry Rot, Or Bacteria**

   "Bodily injury" or "property damage" arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any "fungi", wet or dry rot, or bacteria.

## SECTIONS I AND II - CONDITIONS

The following Condition is added:

H. **Choice Of Law**

   This policy is issued in accordance with the laws of North Carolina and covers property or risks principally located in North Carolina. Any and all claims or disputes in any way related to this policy shall be governed by the laws of North Carolina.

All other provisions of this policy apply.

**HO 32 32 01 04**

FE-7742.7

Copyright, North Carolina Rate Bureau, 2004
© ISO Properties, Inc., 2004

(CONTINUED)

HinkleyC000010

FE-7732.3
Page 1 of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPECIAL COMPUTER COVERAGE – NORTH CAROLINA
### ALL FORMS EXCEPT HO 00 05, HO 00 04 WITH HO 32 95 AND HO 00 06 WITH HO 32 35

### DEFINITIONS

With respect to the coverage provided by this endorsement, "computer equipment" means:

1. Computer hardware, software, operating systems or networks; and

2. Other electronic parts, equipment or systems solely designed for use with or connected to equipment in Paragraph 1. above.

### SECTION I – PERILS INSURED AGAINST

With respect to "computer equipment" defined above, the Perils Insured Against which apply to Coverage C – Personal Property are deleted and replaced by the following:

1. We cover an "insured's" "computer equipment", as defined in this endorsement, against risk of direct physical loss.

2. We do not insure, however, for loss:

   a. Excluded under Section I – Exclusions.

   b. Caused by:

      (1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

         (a) Maintain heat in the building; or

         (b) Shut off the water supply and drain all systems and appliances of water;

      However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

      For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

      (2) Theft in or to a dwelling under construction, until the dwelling is finished and occupied;

      (3) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

      (4) Dampness of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

      (5) Refinishing, renovating or repairing property;

      (6) Collision, other than collision with a land vehicle, sinking, swamping or stranding of watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors; or

      (7) Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded or excepted in this policy is covered.

      (8) Any of the following:

         (a) Wear and tear, marring, deterioration;

         (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

         (c) Smog, rust or other corrosion;

         (d) Smoke from agricultural smudging or industrial operations;

         (e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by one or more of the Perils Insured Against that would apply under Coverage C of the policy form if this endorsement were not attached to the policy form.

         Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste

CONTINUED

HinkleyC000011

33-BJ-G048-2   ( 1667) 000442

FE-7732.3
Page 2 of 2

includes materials to be recycled, reconditioned or reclaimed;

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

(g) Birds, vermin, rodents or insects; or

(h) Animals owned or kept by an "insured".

**Exception To b.(8)**

Unless the loss is otherwise excluded, we cover loss to "computer equipment" resulting from an accidental discharge or overflow of water or steam from within a:

(i) Storm drain or water, steam or sewer pipe off the "residence premises"; or

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For the purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I Water Damage Exclusion Paragraphs **a.** and **c.** in the policy, that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **b. (8)** above.

With respect to the precluded perils in **2.b.(1)** through **(2)** and **b.(8)**, any ensuing loss not precluded by any other provision in this policy is covered.

**SPECIAL CONDITIONS**

The coverage provided by this endorsement does not:

1. Increase the Coverage C limit of liability;

2. Modify the Coverage C Special Limits of Liability; or

3. Modify any provision that applies to Coverage C Property Not Covered.

All other provisions of this policy apply.

**HO 32 37 05 03**

FE-7732.3                Copyright, North Carolina Rate Bureau, 2003
                         Copyright, ISO Properties, Inc., 2003

FE-5319

# MULTI-LINE DISCOUNT ENDORSEMENT

**SECTIONS I AND II - CONDITIONS**

The following condition is added:

**Premium.** The premium for this policy may vary based upon the purchase of other insurance from us or one of our affiliated companies.

All other policy provisions apply.

**HO 32 45 10 99**

FE-5319                Copyright, North Carolina Rate Bureau, 1999

(CONTINUED)

HinkleyC000012

FE-7715.4
Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPECIFIED ADDITIONAL AMOUNT OF INSURANCE FOR
## COVERAGE A – DWELLING – NORTH CAROLINA
### (FORMS HO 00 02, HO 00 03 and HO 00 05 ONLY)

### (APPLIES ONLY WHEN LOSS TO DWELLING BUILDING EXCEEDS THE
### COVERAGE A LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS)

#### COINSURANCE CONTRACT

SCHEDULE*

| Additional Amount Of Insurance: |
|---|
| _____25%_____ |
| |
| The Additional Amount Of Insurance is determined by multiplying the Coverage A limit of liability shown in the Declarations by the percentage amount shown above. |
| *Entries may be left blank if shown elsewhere in this policy for this coverage. |

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

A.  If you have:

1.  Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

a.  The property evaluations we make; and

b.  Any increases in inflation; and

2.  Notified us, within 30 days of completion, of any improvements, alterations or additions to the building insured under Coverage A which increase the replacement cost of the building by 5% or more;

the provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

B.  If there is a loss to the building insured under Coverage A that exceeds the Coverage A limit of liability shown in the Declarations, for the purpose of settling that loss only:

1.  We will provide an additional amount of insurance, up to the amount described in the Schedule above; and

2.  The Section I Condition C. Loss Settlement paragraph **2.** is deleted and replaced by paragraphs **2.**, **3.**, and **4.** as follows:

2.  The building insured under Coverage A at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts:

a.  The replacement cost of that part of the building damaged with material of like kind and quality and for like use;

b.  The necessary amount actually spent to repair or replace the damaged building on the "residence premises" or some other premises within the state of North Carolina; or

c.  The limit of liability under this policy that applies to the dwelling building, plus any additional amount provided by this endorsement.

3.  We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

4.  You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to the building on an actual cash value basis. You may then make claim for any additional liability on a replacement cost basis, provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

**HO 32 20 05 03**

Copyright, North Carolina Rate Bureau, 2003
Copyright, ISO Properties, Inc., 2003

(CONTINUED)

HinkleyC000013

33-BJ-G048-2   ( 1668) 000442

FE-7706.4
Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL PROPERTY REPLACEMENT COST
## LOSS SETTLEMENT

**A. Eligible Property**

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   a. Coverage C; and

   b. If covered in this policy:

      (1) Awnings, outdoor antennas and outdoor equipment; and

      (2) Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments:

      (1) Trimmed with fur; or

      (2) Consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical equipment and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      (1) Pens or pencils;

      (2) Flasks;

      (3) Smoking implements; or

      (4) Jewelry; and

   f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

   Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

   The following loss settlement condition applies to all property described in A. above:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage C, if applicable;

   d. Any applicable special limits of liability stated in this policy; or

   e. For loss to any item described in A.2.a. - f. above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in A. above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

**HO 04 90 10 00**

FE-7706.4

Copyright, Insurance Services Office, Inc., 1999

(CONTINUED)

HinkleyC000014

FE-5395.1
Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**HURRICANE PERCENTAGE DEDUCTIBLE – NORTH CAROLINA**

**SCHEDULE\***

| Hurricane Percentage Deductible Amount: |
|---|
| |

\*Entries may be left blank if shown elsewhere in this policy for this coverage.

We will pay only that part of the total of all loss payable under Section I - Property Coverages that exceeds the Hurricane Percentage Deductible. This endorsement does not provide additional coverage.

**A. Definitions**

The following definitions are added for purposes of this endorsement only:

1. "National Weather Service" means the National Weather Service including any of its offices, centers or agencies or, if the National Weather Service ceases to exist, ceases to perform the function of issuing "hurricane" warnings, such other entity as may replace it or as determined by the North Carolina Rate Bureau.

2. "Hurricane" means a storm system that has been declared a hurricane by the "National Weather Service". It includes wind, wind gust, hail, rain, snow or sleet, tornadoes or cyclones caused by or resulting from the storm system.

The duration of the "hurricane" includes the following time period:

a. Beginning at the time a "hurricane" warning is issued for any part of North Carolina;

b. Continuing for the period of time during which the "hurricane" conditions exist anywhere in the state; and

c. Ending 24 hours following the termination of the last "hurricane" warning for any part of North Carolina by the "National Weather Service".

**B. Hurricane Percentage Deductible**

The Hurricane Percentage Deductible is the deductible amount that applies to the total of the loss caused by a "hurricane". Such loss includes loss to the inside of a building or the property inside a building caused by rain, snow, sleet, hail, sand or dust if the direct force of the wind during a "hurricane" damages the building, causing an opening in the building and the rain, snow, sleet, hail, sand or dust enters through this opening. It also includes loss caused by wind driven objects during a "hurricane". The dollar amount of the hurricane percentage deductible is determined by multiplying the Coverage A limit of liability shown in the Declarations by the percentage amount shown in the Schedule above.

In no event will this deductible at the time of loss be less than the deductible that applies to the perils of Fire or Lightning.

This endorsement does not provide additional insurance.

All other provisions of this policy apply.

**HO 32 24 05 03**

FE-5395.1

Copyright, North Carolina Rate Bureau, 2003
Copyright, ISO Properties, Inc., 2003

(CONTINUED)

HinkleyC000015

33-BJ-G048-2   ( 1669) 000442

FE-7708.3
Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED

### SCHEDULE*

| Name And Address Of Person Or Organization |
|---|
| |
| Interest |
| |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

**DEFINITIONS**

Definition 5. which defines an "insured" is extended to include the person or organization named in the Schedule above, but only with respect to:

1.  Coverage A - Dwelling and Coverage B - Other Structures; and

2.  Coverage E - Personal Liability and Coverage F - Medical Payments to Others but only with respect to "bodily injury" or "property damage" arising out of the ownership, maintenance or use of the "residence premises".

**SECTION II - EXCLUSIONS**

This coverage does not apply to "bodily injury" to an "employee", "residence employee" or a temporary employee furnished to the "insured" to substitute for a permanent "residence employee" arising out of or in the course of the employee's employment by the person or organization.

**CANCELLATION AND NONRENEWAL NOTIFICATION**

If we decide to cancel or not to renew this policy, the person or organization named in the Schedule will be notified in writing.

All other provisions of this policy apply.

**HO 04 41 10 00**

FE-7708.3

Copyright, Insurance Services Office, Inc., 1999

FE-7737.3
Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PREMISES ALARM OR FIRE PROTECTION SYSTEM

We acknowledge the installation of an alarm system and/or automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system or systems, for which we have granted a credit, in working order and to let us know promptly of any change, including removal, made to the system(s).

All other provisions of this policy apply.

**HO 04 16 10 00**

FE-7737.3

Copyright, Insurance Services Office, Inc., 1999

(CONTINUED)

HinkleyC000016

FE-5444
Page 1 of 1

**THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.**

## NO SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
## LIMITED SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS – NORTH CAROLINA

A. If an "insured" regularly provides home day care services to a person or persons other than "insureds" for economic gain, that enterprise is a "business". Mutual exchange of home day care services, however, is not considered economic gain. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business".

B. Therefore, with respect to a home day care enterprise which is considered to be a "business", this policy:

    1. Does not provide:

        a. Section II coverages. This is because a "business" of an "insured" is excluded under E.2. of Section II – Exclusions;

        b. Coverage, under Section I, for other structures from which any "business" is conducted; and

    2. Limits Section I coverage, under Coverage C – Special Limits Of Liability, for "business" property:

        a. On the "residence premises" for the home day care "business" to $2,500. This is because Category h. (e. in Form HO 00 08) imposes that limit on "business" property on the "residence premises";

        b. Away from the "residence premises" for the home day care "business" to $500. This is because Category i. (f. in Form HO 00 08) imposes that limit on "business" property away from the "residence premises". Category i. does not apply to property described in Categories j. and k. (g. and h. respectively in Form HO 00 08).

**HO 32 96 05 03**

FE-5444

Copyright, North Carolina Rate Bureau, 2003
© ISO Properties, Inc., 2003

HinkleyC000017

33-BJ-G048-2   ( 1670) 000442

FE-7727.3
Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## INFLATION GUARD ENDORSEMENT - NORTH CAROLINA
### (FORMS HO 00 02, HO 00 03 and HO 00 05 ONLY)

The limits of liability for Coverages **A**, **B**, **C**, and **D** are shown in the Declarations. These limits will be adjusted at the same rate as the change in the Index shown on the Declarations or billing notice.

To find the limits on any date:

**1.** Divide the latest Index level by the Index level as of the effective date of this endorsement;

**2.** Multiply the result obtained in **1.** by each limit of liability.

The premium for this policy at the next anniversary date will be based on the Coverage **A** limit of liability determined on that date by the provisions of this endorsement.

If the Coverage **A** limit of liability shown in the Declarations is revised during the policy term, the effective date of this endorsement, for the purpose of calculating the change in the Index level, will be deemed to be the same as the effective date of the Coverage **A** revision.

The limits of liability will not be reduced during the current policy term below that for which premium was paid.

All other provisions of this policy apply.

**HO 32 18 05 03**

FE-7727.3

Copyright, North Carolina Rate Bureau, 2003
Copyright, ISO Properties, Inc., 2003

(CONTINUED)

HinkleyC000018

FE-7773.1
Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**REFRIGERATED PROPERTY COVERAGE**

**A. Definitions**

The following definition is added:

"Loss of power" means the complete or partial interruption of electric power due to conditions beyond an "insured's" control.

**B. Coverage**

1. We insure, for up to $500, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

   a. "Loss of power" to the refrigeration unit. "Loss of power" must be caused by damage to:

      (1) Generating equipment; or

      (2) Transmitting equipment; or

   b. Mechanical failure of the unit which stores the property.

2. Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.

3. This endorsement does not increase the limit of liability for Coverage **C**.

**C. Special Deductible**

The following will replace any other deductible provision in this policy with respect to loss covered under this endorsement:

We will pay only that part of the total of all loss payable that exceeds $100. No other deductible applies to this coverage.

**D. Exception To Power Failure Exclusion**

The Power Failure exclusion does not apply to this coverage.

All other provisions of this policy apply.

**HO 04 98 10 00**

FE-7773.1                           Copyright, Insurance Services Office, Inc., 1999

FP-7143.4

Printed in U.S.A.

This policy is a legal contract between you and us.

PLEASE READ YOUR POLICY CAREFULLY



FP-7143.4

# TABLE OF CONTENTS

## DECLARATIONS

Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

Begins on Page

AGREEMENT ............................................................................ 1

DEFINITIONS .......................................................................... 1

DEDUCTIBLE ........................................................................... 3

SECTION I – YOUR PROPERTY
COVERAGES ........................................................................... 3
    Coverage A – Dwelling ..................................................... 3
    Coverage B – Other Structures ........................................ 3
    Coverage C – Personal Property ....................................... 4
    Coverage D – Loss Of Use ................................................ 6
    Additional Coverages ....................................................... 6
PERILS INSURED AGAINST ................................................... 11
EXCLUSIONS ......................................................................... 15
CONDITIONS ......................................................................... 16

SECTION II – YOUR LIABILITY
COVERAGES ........................................................................... 20
    Coverage E – Personal Liability ...................................... 20
    Coverage F – Medical Payments To Others ...................... 21
EXCLUSIONS ......................................................................... 21
ADDITIONAL COVERAGES ..................................................... 25
CONDITIONS ......................................................................... 26

SECTIONS I AND II – CONDITIONS ....................................... 28

FP-7143.4

(HO 00 03 10 00)

Copyright, Insurance Services Office, Inc., 1999

Printed in U.S.A.

HinkleyC000021

# HOMEOWNERS 3
## SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in b. below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition,

      (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

      (4) Motor vehicle means a "motor vehicle" as defined in 7. below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. You and residents of your household who are:

      (1) Your relatives; or

      (2) Other persons under the age of 21 and in the care of any person named above.

   b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

      (1) 24 and your relative; or

      (2) 21 and in your care or the care of a person described in a.(1) above; or

   Under Section II:

   f. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in a. or b. above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

   g. With respect to a "motor vehicle" to which this policy applies:

      (1) Persons while engaged in your employ or that of any person or organization legally responsible for those included in a. or b. above; or

6. The "residence premises";

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence; and

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises described in a. and b. above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

   a. A self-propelled land or amphibious vehicle; or

   b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in a. above.

Hinkley000098

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

   a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured".

11. "Residence premises" means:

   a. The one family dwelling where you reside;

   b. The two, three or four family dwelling where you reside in at least one of the family units; or

   c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### C. Coverage C – Personal Property

1. Covered Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. Limit For Property At Other Residences

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   a. Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

   b. In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. Special Limits Of Liability

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.

   a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

   b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

   d. $1,500 on trailers or semitrailers not used with watercraft of all types.

   e. $1,500 for loss to or theft of jewelry, watches, furs, precious and semiprecious stones.

   f. $2,500 for loss by theft of firearms and related equipment.

   g. $2,500 for loss by theft of silverware, silverplated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

BR000023

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property away from the "residence premises" used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories j. and k. below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category j.

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category k.

4. **Property Not Covered**

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

(1) This includes:

(a) Their accessories, equipment and parts; or

(b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

(2) We do not cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market;

The exclusion of property described in c. above applies only while such property is in or upon the "motor vehicle".

(2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service an "insured's" residence; or

(b) Designed to assist the handicapped;

d. "Aircraft meaning any conveyance used or designed for flight including any parts whether or not attached to the aircraft.

We do not cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in E.10. Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises".

"Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do not cover the cost of reconstructing this data nor the cost of reconstructing the records.

3. **Civil Authority Prohibits Use**

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in 1. Additional Living Expense and 2. Fair Rental Value above for no more than two weeks.

4. **Loss Of Expense Not Covered**

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use above are not limited by expiration of this policy.

E. **Additional Coverages**

1. **Debris Removal**

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or "property" contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

D. **Coverage D – Loss Of Use**

The limit of liability for Coverage D is the total limit for the coverages in 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use below.

1. **Additional Living Expense**

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. **Fair Rental Value**

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

i. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

FP 0024

(1) Your tree(s) felled by other peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s):

(3) Damage(s) a covered structure; or

(4) Does not damage a covered structure, but:

(a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

**2. Reasonable Repairs**

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

b. If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

(1) Increase the limit of liability that applies to the covered property; or

(2) Relieve you of your duties, in case of a loss to covered property, described in B.4. under Section I – Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

a. Fire or Lightning;

b. Explosion;

c. Riot or Civil Commotion;

d. Aircraft;

e. Vehicles not owned or operated by a resident of the "residence premises";

f. Vandalism or Malicious Mischief; or

g. Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

a. We will pay up to $500 for:

(1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

(2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

(3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

(4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

b. We do not cover:

(1) Use of a credit card, electronic fund transfer card or access device:

(a) By a resident of your household;

(b) By a person who has been entrusted with either type of card or access device; or

(c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

(2) Loss arising out of "business" use or dishonesty of an "insured".

c. If the coverage in a. above applies, the following defense provisions also apply:

(1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

(2) If a suit is brought against an "insured" for liability under a.(1) or (2) above, we will provide a defense at our expense by counsel of our choice.

(3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under a.(3) above.

**7. Loss Assessment**

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage A, other than:

(1) Earthquake; or

(2) Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

b. We do not cover "assessments" charged against you or a corporation or association of property owners by any governmental body; or

c. Paragraph P. Policy Period under Section I – Conditions does not apply to this coverage.

This coverage is additional insurance.

8. **Collapse**

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building, if the collapse was caused by one or more of the following:

(1) The Perils Insured Against named under Coverage C;

(2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such

damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

9. **Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing

material has been broken, except as provided in a.(3) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in a.(2) above. A dwelling being constructed is not considered vacant.

This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured" for loss caused by a Peril Insured Against in Coverage C, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

11. **Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

12. **Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage C.

This coverage does not increase the limits of liability that apply to the damaged covered property.

9

10

# SECTION I – PERILS INSURED AGAINST

## A. Coverage A – Dwelling And Coverage B – Other Structures

We insure against risk of direct physical loss to property described in Coverages A and B.

1. We do not insure, however, for loss:

   a. Excluded under Section I – Exclusions;

   b. Involving collapse, except as provided in E.8. Collapse under Section I – Property Coverages; or

   c. Caused by:

      (1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

         (a) Maintain heat in the building; or

         (b) Shut off the water supply and drain all systems and appliances of water.

         However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

         For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment, or a roof drain, gutter, downspout or similar fixtures or equipment;

      (2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

         (a) Fence, pavement, patio or swimming pool;

         (b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

         (c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

         (d) Pier, wharf or dock;

      (3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

      (4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

      (5) Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

         (a) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or household appliance, on the "residence premises"; or

         (b) A storm drain, or water, steam or sewer pipes, off the "residence premises".

         For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

      (6) Any of the following:

         (a) Wear and tear, marring, deterioration;

         (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

         (c) Smog, rust or other corrosion, or dry rot;

         (d) Smoke from agricultural smudging or industrial operations;

         (e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.

            Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

         (f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

         (g) Birds, vermin, rodents, or insects; or

         (h) Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam within a:

(i) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and c.(6) above.

Under 2.b. and c. above, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

## B. Coverage C — Personal Property

We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I — Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

a. This peril includes attempted theft and loss of property from a known place which is likely that the property has been stolen.

b. This peril does not include loss caused by theft:

(1) Committed by an "insured";

(2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

(4) That occurs off the "residence premises" of:

(a) Trailers, semitrailers and campers;

(b) Watercraft of all types, and their furnishings, equipment, and outboard engines or motors; or

(c) Property "while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student enrolled in school away from the "residence premises" is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**12. Accidental Discharge Or Overflow Of Water Or Steam**

a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

b. This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing;

(3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

(4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

d. Section I — Exclusion A.3. Water Damage, Paragraphs a. and c., that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**14. Freezing**

a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

13

14

HinkleyC000028

# SECTION I – EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. **Ordinance Or Law**

Ordinance Or Law means any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion A.1.a. does not apply to the amount of coverage that may be provided for in E.11. Ordinance Or Law under Section I—Property Coverages;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2. **Earth Movement**

Earth Movement means:

a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide, mudslide or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting;

This Exclusion A.2. does not apply to loss by theft.

3. **Water Damage**

Water Damage means:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

caused by or resulting from human or animal forces or any act of nature.

This Exclusion A.3. does not apply to loss by theft.

4. **Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

5. **Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War**

War includes the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard**

This Exclusion A.7. pertains to Nuclear Hazard to the extent set forth in M. Nuclear Hazard Clause under Section I – Conditions.

8. **Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

9. **Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the "residence premises".

# SECTION I – CONDITIONS

A. **Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

B. **Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.8. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:
a. Make reasonable and necessary repairs to protect the property; and
b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:
a. Show the damaged property;
b. Provide us with records and documents we request and permit us to make copies; and
c. Submit to examination under oath, while not in the presence of another "insured", and sign the same.

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
a. The time and cause of loss;
b. The interests of all "insureds" and all others in the property involved and all liens on the property;
c. Other insurance which may cover the loss;
d. Changes in title or occupancy of the property during the term of the policy;
e. Specifications of damaged buildings and detailed repair estimates;

f. The inventory of damaged personal property described in 6. above;
g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and
h. Evidence or affidavit that supports a claim under E.8. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

C. Loss Settlement

In this Condition C., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law except to the extent that coverage for these increased costs is provided in E.11. Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:
a. Personal property;
b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;
c. Structures that are not buildings; and
d. Grave markers, including mausoleums;
at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:
a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

17

(1) The limit of liability under this policy that applies to the building;
(2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or
(3) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:
(1) The actual cash value of that part of the building damaged; or
(2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, which that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:
(1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;
(2) Those supports described in (1) above which are below the surface of the

ground, inside the foundation walls, if there is no basement; and
(3) Underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above.

However, if the cost to repair or replace the damage is both:
(1) Less than 5% of the amount of insurance in this policy on the building; and
(2) Less than $2,500;

we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

D. Loss To A Pair Or Set

In case of loss to a pair or set we may elect to:
1. Repair or replace any part to restore the pair or set to its value before the loss; or
2. Pay the difference between actual cash value of the property before and after the loss.

E. Appraisal

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose

18

E00000030

## F. Other Insurance And Service Agreement

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service. Warranty agreement, even if it is characterized as insurance.

## G. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

## H. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

## I. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

## J. Abandonment Of Property

We need not accept any property abandoned by an "insured".

## K. Mortgage Clause

1. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs E. Appraisal, G. Suit Against Us and I. Loss Payment under Section I – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

## L. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

## M. Nuclear Hazard Clause

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the "nuclear hazard" will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

## N. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

## O. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

## P. Policy Period

This policy applies only to loss which occurs during the policy period.

## Q. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements; relating to this insurance.

## R. Loss Payable Clause

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

# SECTION II – LIABILITY COVERAGES

## A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages

include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit which we decide is appropriate.

Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F — Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral

services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":
   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;
   b. Is caused by the activities of an "insured";
   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or
   d. Is caused by an animal owned by or in the care of an "insured".

**SECTION II – EXCLUSIONS**

**A. "Motor Vehicle Liability"**

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":
   a. Is registered for use on public roads or property;
   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or
   c. Is being:
      (1) Operated in, or practicing for, any prearranged or organized race; speed contest or other competition;
      (2) Rented to others;
      (3) Used to carry persons or cargo for a charge; or
      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:
   a. In dead storage on an "insured location";
   b. Used solely to service an "insured's" residence;
   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:
      (1) Being used to assist a handicapped person; or
      (2) Parked on an "insured location";
   d. Designed for recreational use off public roads and:
      (1) Not owned by an "insured"; or
      (2) Owned by an "insured" provided the "occurrence" takes place on an "insured

location" as defined in Definitions B.6.a., b., d., e. or h.; or

6. a. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:
   (1) A golfing facility and is parked or stored there; or being used by an "insured" to:
      (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;
      (b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or
      (c) Cross public roads at designated points to access other parts of the golfing facility; or
   (2) A private residential community including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association, and contains an "insured's" residence.

**B. "Watercraft Liability"**

1. Coverages E and F do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:
   a. "Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;
   b. Rented to others;
   c. Used to carry persons or cargo for a charge; or
   d. Used for any "business" purpose.

2. If Exclusion B.1. does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:
   a. Is stored;
   b. Is a sailing vessel, with or without auxiliary power, that is:
      (1) Less than 26 feet in overall length; or
      (2) 26 feet or more in overall length and not owned by or rented to an "insured"; or
   c. Is not a sailing vessel and is powered by:
      (1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:
         (a) 50 horsepower or less and not owned by an "insured"; or
         (b) More than 50 horsepower and not owned by or rented to an "insured";
      (2) One or more outboard engines or motors with:
         (a) 25 total horsepower or less;
         (b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";
         (c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or
         (d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period but only if:
            (i) You declare them at policy inception; or
            (ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

Hinkley B000032

The coverages in (c) and (d) above apply for the policy period.

Horsepower means the "maximum power rating assigned to the engine or motor by the manufacturer."

## C. "Aircraft Liability"

This policy does not cover "aircraft liability".

## D. "Hovercraft Liability"

This policy does not cover "hovercraft liability".

## E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others

Coverages E and F do not apply to the following:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion E.1. does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property.

2. **"Business"**

a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

b. This Exclusion E.2. does not apply to:

(1) The "rental" or holding for rental of an "insured location":

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees.

3. **Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services.

4. **"Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location".

5. **War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

6. **Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured".

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

8. **Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions A. "Motor Vehicle Liability", B. "Watercraft Liability", C. "Aircraft Liability", D. "Hovercraft Liability", and E.4. "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

## F. Coverage E – Personal Liability

Coverage E does not apply to:

1. Liability:

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in D. Loss Assessment under Section II – Additional Coverages;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in a. above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on, or away from an "insured location".

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion.

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

a. Is also an insured under a nuclear energy liability policy issued by the:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters;

23

24

(3) Nuclear Insurance Association of Canada,

or any of their successors, or

b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" under Definitions 5.a. or b.

This exclusion also applies to any claim made or suit brought against you or an "insured":

a. To repay; or

b. Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

G. Coverage F – Medical Payments To Others
Coverage F does not apply to "bodily injury":

a. To a "residence employee" if the "bodily injury":

(1) Occurs off the "insured location"; and

b. Does not arise out of or in the course of the "residence employee's" employment by an "insured".

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law.

3. From any:

a. Nuclear reaction;

b. Nuclear radiation; or

c. Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability.

A. Claim Expenses
We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

B. First Aid Expenses
We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

---

a. To the extent of any amount recoverable under Section I;

b. Caused intentionally by an "insured" who is 13 years of age or older;

c. To property owned by an "insured";

d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

e. Arising out of:

(1) A "business" engaged in by an "insured";

(2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

(3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This exclusion e.(3) does not apply to a "motor vehicle" that:

(a) Is designed for recreational use off public roads;

(b) Is not owned by an "insured"; and

(c) At the time of the "occurrence" is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

D. Loss Assessment

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

(1) Is elected by the members of a corporation or association of property owners; and

(2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II – CONDITIONS

A. Limit Of Liability
Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful

Hinkley_OCC000034

conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

c. With the conduct of suits and attend hearings and trials; and

d. To secure and give evidence and obtain the attendance of witnesses;

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", your or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

a. The identity of the policy and the "named insured" shown in the Declarations;

b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

c. Names and addresses of any claimants and witnesses.

2. Cooperate with us in the investigation, settlement or defense of any claim or suit.

3. Promptly forward to us every notice, demand, summons, or other process relating to the "occurrence".

4. At our request, help us:

a. To make settlement;

b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

**5.** With respect to C. Damage To Property Of Others under Section II – Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

1. The injured person or someone acting for the injured person will:

a. Give us written proof of claim, under oath if required, as soon as is practical; and

b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action will lie against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This insurance applies only to "bodily injury" or "property damage" which occurs during the policy period.

**SECTIONS I AND II – CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**D. Concealment Or Fraud**

1. We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

(2) If the risk has changed substantially since the policy was issued;

27

28

FP-7143.4

FP-7143.4

HinkleyCo000035

This can be done by letting you know at least 30 days before the date cancellation takes effect.

d.   When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3.   When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4.   If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

D.   **Nonrenewal.**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

E.   **Assignment.**

Assignment of this policy will not be valid unless we give our written consent.

F.   **Subrogation.**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage F or Paragraph C. Damage To Property Of Others under Section II – Additional Coverages.

G.   **Death.**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1.   We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2.   "Insured" includes:

   a.   An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   b.   With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

29

F3-7143.4

HinkleyC000036

Aug 08 10 08:15a     Curtis Hinkley                                          252-330-1329                    p.2

Filed in PERQUIMANS County,
on Mar 06 2009, at 11:43:32 AM
by DEBORAH S. REED
REGISTER OF DEEDS

## Book 357 Page 845

```
          09.017
PERQUIMANS COUNTY
LAND TRANSFER TAX
AMOUNT $      Ø .00
PAID    $      Ø .00
```

156 MILL BERRY LANE
HERTFORD, NC 27944

Prepared By:
Trawick H. Stubbs, Jr.
Stubbs & Perdue, P.A.
310 Craven Street
New Bern, NC 28560
*Without Title Examination*

Revenue Stamps: $ **EXEMPT**
Tax Parcel Identification Numbers:   4-D036-1017-CWI

NORTH CAROLINA
PERQUIMANS COUNTY                                                        DEED

    THIS DEED is made and entered into this 26th day of February_____, 2009, by and between LAW DEVELOPERS, LLC, a North Carolina Limited Liability Company, reorganized Debtor-in-Possession under Chapter 11 of the Bankruptcy Code (herein called the "Grantor"); and CURTIS R. HINKLEY and wife, SYLVIA L. HINKLEY, whose address is 8 Bateman Drive, Elizabeth City, North Carolina 27909 (herein called the "Grantees"). The designation Grantor and Grantees as used herein shall include the parties indicated and their respective heirs, successors, legal representatives and assigns, and shall include singular, plural, masculine, feminine or neuter as required by the context.

### W I T N E S S E T H :

    WHEREAS, the Grantor filed a Chapter 11 Bankruptcy Petition in the Eastern District of North Carolina on the 14th day of February, 2008; and

    WHEREAS, the Grantor obtained an order from the United States Bankruptcy Court by the Honorable J. Rich Leonard, Bankruptcy Judge for the Eastern District of North Carolina, on June 24, 2008, voiding the lien claimed by The Bank of Currituck on the property described as Lot 17, Cedarwood Village, Hertford, North Carolina, as recorded in Book 301, Page 833; and

    WHEREAS, an Order was entered authorizing the Grantor to sell the herein described property free and clear of liens of record and said liens will attach to the proceeds of sale, said Order having been entered on the 5th day of August, 2008 by the Honorable J. Rich Leonard, Bankruptcy Judge for the Eastern District of North Carolina; and

See attached Exhibits A and B

HinkleyC000037

Aug 08 10 08:15a      Curtis Hinkley                    252-330-1329                    p.3

## Book 357 Page 846

WHEREAS, the Grantor filed a Plan of Reorganization on May 14, 2008 which was amended by Consent Order of August 5, 2008 and confirmed by the United States Bankruptcy Court on August 22, 2008 by the Honorable J. Rich Leonard, Bankruptcy Judge for the Eastern District of North Carolina; and

WHEREAS, the sale to the Grantees herein is authorized by the Bankruptcy Court pursuant to the entry of the Order Confirming Plan of August 22, 2008, and pursuant to the applicable Bankruptcy Rules and the Bankruptcy Code.

NOW, THEREFORE, by virtue of the Orders of the Bankruptcy Court, applicable Bankruptcy Rules and the Bankruptcy Code, authorizing said sale and for other good and valuable consideration, the terms, amounts and conditions of which are more fully set out in the Orders, the receipt and sufficiency of which is hereby acknowledged, the Grantor does hereby give, grant, bargain, sell, set over and convey unto the Grantees said Grantees' heirs and assigns, the following real property, to wit:

New Hope Township, Perquimans County, North Carolina

Being all of Lot # 17 described and delineated on that plat entitled, in part, "Final Subdivision Plat for Cedarwood Villages", dated March 21, 2005, prepared by Paul J. Toti, Professional Land Surveyor, which plat is recorded in Plat Cabinet 2, Slide 133, Map #8, and Plat Cabinet 2, Slide 134, Map # 1-4, inclusive, Perquimans County Public Registry.

TO HAVE AND TO HOLD the same together with all privileges and appurtenances thereunto belonging to said Grantees and Grantees' heirs and assigns forever, as fully and completely as the Grantor, by virtue of the power and authority so vested in said Grantor, might sell and convey the same.

IN TESTIMONY WHEREOF, the Grantor has signed and sealed this Deed as of the day and year first above written.

GRANTOR:

LAW DEVELOPERS, LLC, a North Carolina
Limited Liability Company

By: _____ (SEAL)
Stuart A Walters
Member-Manager

County of _Chesapeake_
State of ~~North Carolina~~ _Virginia_

I, _Jerome Bryan_____, a Notary Public for _Chesapeake_ County, ~~North Carolina~~, certify that STUART A. WALTERS personally came before me this day and acknowledged that he is a Member-Manager of LAW DEVELOPERS, LLC, a North Carolina Limited Liability Company, and that he, as a Member-Manager, being authorized to do so, executed the foregoing document on behalf of the Limited Liability Company.

Witness my hand and official seal, this the _26th_ day of _February_____, 2009.

NOTARY PUBLIC
My commission expires: _09/30/2011_

HinkleyC000038

Aug 08 10 08:16a     Curtis Hinkley          252-330-1329                                    p.4

Perquimans County, North Carolina - Property Values                                Page 1 of 1

Return to Property Card or Search Results

HINKLEY, CURTIS R & SYLVIA L
& STEPHANIE L H-LOTES
6 BARTLAN DRIVE
ELIZABETH CITY, NC 27909

Disclaimer

Every Reasonable Effort has been made to assure the Accuracy of these maps and associated data. Perquimans County, North Carolina and Pearson Appraisal Assume no liability arising from use of these Values or Data contained on this website. The values and property data is provided without warranty of any kind either expressed or implied, including, but not limited to, the implied warranties of merchantability and fitness for a particular purpose

http://www.co.perquimans.nc.us/taxcards/index.php?mode=printcard&id=9510                8/6/2010

HinkleyC000039

Aug 08 10 08:16a    Curtis Hinkley                                    252-330-1329                    p.5

Filed In PERQUIMANS County,
on Apr 17 2009, at 01:58:05 PM
by DEBORAH S. REED
REGISTER OF DEEDS
**Book 359 Page 799**



09-142

PERQUIMANS COUNTY
LAND TRANSFER TAX
AMOUNT $_____ Ø .00 ___
PAID    $_____ Ø .00 ___

# NORTH CAROLINA GENERAL WARRANTY DEED

**TAX IDENTIFICATION NUMBER: 4-D036-1017-CWI**

**PREPARED BY AND RETURN TO:**
**Lennie L. Hughes, Esquire**
**Post Office Box 561**
**Elizabeth City, NC 27907**

**THIS DEED, made this 17th day of April, 2009, by and between:**

| | |
|---|---|
| **GRANTOR** | **GRANTEE** |
| **CURTIS R. HINKLEY and wife,** | **CURTIS R. HINKLEY and wife, SYLVIA L.** |
| **SYLVIA L. HINKLEY** | **HINKLEY and STEPHANIE LISA** |
| **8 Bateman Drive** | **HINKLEY-LOPEZ, as joint tenants with right** |
| **Elizabeth City, NC 27909** | **of survivorship** |
| | **8 Bateman Drive** |
| | **Elizabeth City, NC 27909** |

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

**WITNESSETH,** that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in New Hope Township, County of Perquimans, State of North Carolina and more particularly described as follows:

Being all of Lot # 17 described and delineated on that plat entitled, in part, "Final Subdivision Plat for Cedarwood Villages", dated March 21, 2005, prepared by Paul J. Toti, Professional Land Surveyor, which plat is recorded in Plat Cabinet 2, Slide 133, Map #8, and Plat Cabinet 2, Slide 134, Map # 1-4, inclusive, Perquimans County Public Registry.

THIS IS A DEED OF GIFT

HinkleyC000040