UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | * | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JOSEPH C. WILKINSON, JR. |
| | * | |

* * * * * * * * * * * * * ** * * * * * * ** * * * * * * ** *

THIS DOCUMENT RELATES TO:  *All Cases*

### DEFENDANTS TAISHAN GYPSUM CO. LTD. AND
### TAIAN TAISHAN PLASTERBOARD CO., LTD.'S
### OPPOSITION TO THE MOTIONS JOINING THE PSC'S
### AND THE HSC'S MOTIONS TO COMPEL

Defendants Taishan Gypsum Co. Ltd. ("TG") and Taian Taishan Plasterboard Co., Ltd. ("TTP") (together, "Defendants") submit this memorandum in opposition to the joinders by Southern Homes, LLC, Tallow Creek, LLC and Springhill, LLC (together, "Southern Homes"), The State of Louisiana ("Caldwell"), Interior Exterior Building Supply ("INEX"), Venture Supply and the Porter-Blaine Corporation ("Venture Supply"), certain Banner entities ("Banner"), Tobin Trading, Inc. ("Tobin"), and Atlantic Homes, Inc. ("Atlantic") (collectively, "Joining Movants") in the motions to compel discovery of the Plaintiffs' Steering Committee ("PSC") and the Homebuilders' Steering Committee ("HSC").  (Rec. Doc. Nos. 8755, 8758, 8765, 8768, 8792, 8805) (the "Motions").

**PRELIMINARY STATEMENT**

These motions relate to the jurisdictional depositions of Defendants taken in Hong Kong from April 4-8, 2011 pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  Three depositions were taken in response to 30(b)(6) notices served on TG and TTP.  The PSC and

HSC claimed that all three witnesses were inadequate and moved to produce additional or substitute 30(b)(6) witnesses for the production of additional documents and for sanctions. The Joining Movants have adopted all of the arguments of the PSC and HSC and, as Defendants have submitted papers in opposition to the PSC's and HSC's motions, they incorporate that opposition herein. Certain of the Joining Movants, however, argue that they did not have sufficient time to ask questions at the depositions and, apparently, seek additional relief—to re-open the depositions of Jia Tongchun and Peng Wenlong, two of the witnesses who already have appeared on behalf of TG and TTP pursuant to Federal Rule of Civil Procedure 30(b)(6).[1] The Joining Movants claim that they were not given sufficient time to participate in the depositions of those two witnesses.

The record demonstrates that there was more than ample time to take the depositions of the witnesses—Messrs. Jia and Peng were each examined for two days. Merely because certain of the Joining Movants did not extensively question the witnesses does not establish a basis for re-opening those depositions. In accordance with the Court's directives, TG and TTP were to provide a single jurisdictional deposition for all cases. Defendants were not required to submit to multiple depositions, regardless of the number of attorneys who noticed, cross-noticed, or attended depositions. The Joining Movants were on notice that the witnesses were to be deposed for two days each and until now never sought additional time. They also knew the topics on which each witness was designated to testify, including that Mr. Peng was designated to testify with respect to 18 of the 25 designated topics. Yet the Joining Movants never sought additional time, until now.

---

[1] The Joining Movants do not seek to re-open the deposition of Zhang Jianchun, whose deposition lasted only one day. Whether the Joining Movants seek to re-open the depositions of Mr. Jia and Mr. Peng is far from clear, but many of the Joint Movants argue that they did not have sufficient time to ask questions of Messrs. Jia and Peng, and claim relief based on that ground. (Caldwell Br. at 2; Tobin Br. at 3; Venture Supply Br. at 3; Atlantic Br. at 3.; Banner Br. at 2; Southern Homes, Br. at 2.)

2

The Joinder Defendants have not identified any material questions related to personal jurisdiction that they—or other examining attorneys with whom they had a shared interest in establishing personal jurisdiction—did not have an opportunity to ask. Two days for each witness, totaling 28 hours, was enough time for jurisdictional depositions.

Moreover, even if there were non-duplicative jurisdictional questions that were not asked, the responsibility lies with the PSC, HSC, and the Defendants' Steering Committee ("DSC") who were responsible for managing the depositions. But the Joining Movants, who include INEX and Banner, two members of the DSC, sat through five days of depositions and never complained to the Court that the PSC and HSC wasted time or that the Joining Movants had additional unasked questions related to jurisdiction.

Further, all Joining Movants were aware that the depositions of Messrs. Jia and Peng were scheduled to last two days each. And to the extent any of the Joining Movants argue that the deposition of Mr. Peng, TG and TTP's witness regarding their drywall sales to U.S. dimensions, or the deposition of Mr. Jia, the CEO of TG, should have been extended past two days, they never before raised that issue with the Court. They did not seek additional time before the depositions, even though TG and TTP informed all counsel in February that each deposition would be two days. Even while the parties and witnesses were in Hong Kong, and the PSC, HSC, and all counsel other than Tobin decided to allot two days each to Messrs. Jia and Peng and to forego taking testimony on Saturday, the Joining Movants made no attempt to ask the Court to require additional time for Mr. Peng or Mr. Jia.

In summary, the Joining Movants have completely failed to demonstrate that any further depositions are necessary for the Court to decide the personal jurisdictional issue that is before it.

\\\NY - 037476/000001 - 2321515 v2

There is simply no justification for the further delay, burden and expense of further jurisdictional discovery of TG and TTP. For these reasons, the Court should deny the Motions.

## BACKGROUND

The background of the Motions is set forth at length in the Defendants' Opposition to the Motions by the PSC and the HSC, and will not be repeated herein. Suffice it to say that the discovery here had its genesis in TG's motion to vacate the default and dismiss the complaint for lack of personal jurisdiction in the *Germano* action. At open hearings, the Court ordered that TG and its subsidiary, TTP, provide discovery not only in *Germano* but in all the federal cases in which TG and TTP had been named or served. The discovery was coordinated with the state court cases in which TG had been served.

In connection with this Court-ordered discovery, the PSC served notices to take the depositions of TG and TTP in Hong Kong.[2] (Rec. Doc. Nos. 5839, 5840, 7549, 7550, 8296, 8297.) Several of the defendants in these MDL proceedings, whose claims are derivative of the home-owners' claims and are inchoate, served their own notices and cross-notices of deposition.[3] (*See, e.g.,* Rec. Doc. Nos. 7564, 7566, 8351, 8352.) The PSC, however, took the leading role in discovery conferences and discussions with TG and TTP, and was responsible for notifying all other interested parties of discovery proceedings.

---

[2] Venture and Atlantic now both complain that the depositions should have been held in the United States. Venture itself, however, attaches as an exhibit an explanation from counsel that the depositions could not have been held in the United States on a timely basis due to potential visa problems concerning Chinese witnesses. Venture Br., Ex. A.

[3] INEX served cross-notices of deposition on TTP and TG on February 24 and March 2, 2011, respectively. The Banner Entities served cross-notices of deposition on TTP and TG on February 24, 2011.

Movants had notice of the Rule 30(b)(6) depositions of TG and TTP, and of TG's and TTP's designations and objections thereto.[4]  (Rec. Doc. Nos. 5839, 5840, 7549, 7550.)  (*See also* e-mail from Lenny Davis, dated February 17, 2011, and e-mail from Ken Hardt, dated February 17, 2011, attached hereto as **Exhibit A**.)  Prior to the depositions, the Joining Movants likewise had notice that three 30(b)(6) witnesses would be examined for two days each:  Jia Tongchun, TG's chairman of the board and general manager (April 4-5); Zhang Jianchun, the secretary of the boards of directors of TG and TTP (April 6-7); and Peng Wenlong, a former TTP employee and the current manager of TG's Foreign Trade Department (April 8-9).  (*See* Ex. A; Rec. Doc. Nos. 8296, 8297.)  Additionally, the Joining Movants were told that Mr. Peng would be available for an additional half-day, if Mr. Zhang's deposition finished early.  (*See* E-mail from E. Statman, dated March 23, 2011, attached hereto as **Exhibit B**.)  No one objected to the agreed upon discovery schedule.

The depositions began on April 4, 2011.  In addition to counsel for the PSC and the HSC, counsel for Banner, INEX, Southern Homes, State of Louisiana, Tobin, Venture and Atlantic Homes attended the depositions.[5]  (*See* Transcript of the Deposition of Tongchun Jia on April 4 & 5, 2011, relevant excerpts of which are attached here to as **Exhibit C** ("Jia Tr.") at 2:1-12:12.)  Defendants played no role in any arrangement among the PSC, the HSC and the other parties to apportion the time allotted for each deposition, but Defendants reminded the parties on each day

---

[4] Venture Supply argues that it did not have notice of the Defendants' objections to the scope of the depositions. (Venture Motion, p. 2.)  This issue, however, was litigated in open court.  (Rec. Doc. Nos. 7296.)  In fact, counsel for Venture participated in discussions about the proper scope of the depositions in February.  (*See* Ex. A.)

[5] Additionally, counsel for Creola Ace Hardware, Firemen's Fund Insurance Co., Independent Builders' Supply Association, Liaison Counsel for Installers, North River Insurance Company, R&H Masonry, Inc., Stock Building Supply, LLC, Swedberg Enterprises, Inc., State Farm, Phillips Abita Lumber Co., Inc., Landmark American Insurance Company, Devon International Trading, Inc., Charters Selected Insurance Co., Related Charters Insurers Thomas Gould, Inc., USG Corporation and L&W Supply Corporation participated in the depositions via teleconference or stream.  (Jia Tr. at 2:1-12:12; 271:1-280:12; Peng Tr. at 2:1-11:14; 224:1-232:20; Zhang Tr. at 2:1-12:7.)

5

that the depositions would be limited to seven hours per day, and that the parties should plan their time accordingly. (Jia Tr. at 244:1-5; 345:11-349:5; Transcript of Deposition of Zhang on April 6, 2011, relevant excerpts of which are attached hereto as **Exhibit D** ("Zhang Tr.") at 159:21-161:18; Transcript of Deposition of Peng on April 7 & 8, 2011, relevant excerpts of which are attached hereto as **Exhibit E** ("Peng Tr.") at 18:15-21:2; 417:7-428:23.)

During the deposition of Mr. Jia, the primary corporate witness for TG, all the examiners agreed to shorten the deposition of Mr. Zhang, the primary corporate witness for TG, from two days to one. (Zhang Tr. at 159:21-160:13.) Consequently, the depositions of the three witnesses were completed in five days instead of six. In the course of the week, various counsel for Joining Movants made statements on the record about not having sufficient time to ask questions or to having "Saturday set aside for additional questioning of Mr. Peng," but none ever raised the issue with the Court. (Jia Tr. at 479:4-15; 486:18-488:22; Peng Tr. at 433:15-440:20; Zhang Tr. at 159:21-163:4.) Over the course of five days, examining counsel explored jurisdictional issues and also asked questions on tangential matters, as illustrated below.

A.     Deposition of Mr. Jia Tongchun

Mr. Jia was deposed for two full days on April 4 and 5; the depositions began each day at 9:00 a.m. and concluded at approximately 5:30 p.m. The PSC questioned Mr. Jia for a total of about thirteen and a half hours, more than enough time to discover the relevant facts on the topics for which he was designated. (*See* Jia Tr. at 23:14-263:19; 283:18-437:8; 438:12-456:1; 482:13-486:12.)

The PSC also decided to inquire into other areas. The PSC asked Mr. Jia, who speaks no English, a number of questions about the meaning of English words or documents. (Jia Tr. at 185:17-189:13; 284:8-287:23.) Both the PSC and the HSC spent considerable time on questions

6

not relevant to personal jurisdiction. (Jia Tr. at 232:6-243:19; 342:18-373:5; 379:4-387:4; 451:4-453:15.)

Still, the Joining Movants had an opportunity to ask Mr. Jia questions, and did so. Counsel for Venture Supply asked Mr. Jia a series of questions about TG drywall sales, notwithstanding the fact that Mr. Peng, not Mr. Jia, was designated for that topic. (Jia Tr. at 459:15-467:8.) In fact, Mr. Jia had already testified that he did not have first hand knowledge of any sales transactions, and that Mr. Peng would have such knowledge. (Jia Tr. at 329:19-332:15; 454:1-455:19.) Counsel for Tobin also asked Mr. Jia questions related to the Venture Supply transaction for which he was not designated, as well as several questions concerning where Defendants got the paper used to manufacture drywall and if the employees producing the paper wore uniforms. (Jia Tr. at 482:14-486:10.)

At the end of two days of depositions, and following numerous warnings that the depositions would end at 5:00 p.m. (Jia Tr. at 345:11-349:5; 469:23-470:10; 475:16-482:9), Defendants ended the second day of Mr. Jia's deposition at 5:35 p.m. (Jia Tr. at 489:5-6.) While some now complain that they could have asked more questions, and seek to re-open the deposition, none have identified any relevant questions that remain to be asked. (Caldwell Br. at 2; Tobin Br. at 3; Venture Supply Br. at 3; Atlantic Br. at 3.; Banner Br. at 2; Southern Homes, Br. at 2.)

B.   Deposition of Mr. Peng Wenlong

Like Mr. Jia, Mr. Peng was deposed for two full days and the PSC and the HSC asked the bulk of the questions.[6] Although Mr. Peng was designated to testify concerning 18 of the 25

---

[6] Even though counsel for Caldwell and Banner and Atlantic did not ask any questions at the Peng deposition, Defendants are unaware of any reason that they did not do so. (Caldwell Br., p. 2; Banner Br., p. 2; Atlantic Br., p. 4.)

7

topics designated for each Defendant, including all of Defendants' sales of drywall to U.S. dimensions, the examining attorneys chose to inquire about other subjects.

The PSC, HSC and Venture spent over an hour questioning Mr. Peng—who testified at the outset that he was not fluent in English—about his ability to read, write and understand English. (*See, e.g.,* Peng Tr. at 21:21-43:5; 122:3-131:15; 310:19-318:19.)  Indeed, examining counsel repeatedly asked Mr. Peng to read English documents out loud and write out names in English. (Peng Tr. at 90:19-93:18; 120:22-131:15; 347:12-347:20.)  They even chided Mr. Peng about his English proficiency. (*See* Peng Tr. at 347:12-20 ("Since it's in English, I'm sure you'll be able to follow along.  Here is the document."))

The PSC and HSC asked numerous questions seemingly designed to trick Mr. Peng into adopting testimony that mischaracterized the record and the facts.  (*See, e.g.* Peng Tr. at 116:20-117:22; 279:18-281:24; 318:2-322:16; 327:10-332:3; 337:16-341:22; 342:13-347:2; 361:13-364:7.)  These objectionable questions drew appropriate objections, which slowed the process of eliciting testimony.

Counsel spent considerable time probing Mr. Peng on topics for which he was not designated and which were irrelevant to jurisdiction. (*See, e.g.* Peng Tr. at 239:16-244:6 (questioning about domestic gypsum source); 293:8-299:23 (extensive line of questioning about illuminated columns); 315:1-322:16 (a series of questions about the number of English language e-mails produced by his company between 2005 and 2007).)  The second day of Mr. Peng's deposition, which started at 9:02 a.m. was concluded at 5:43 p.m.  (Peng Tr. at 441:3-4.)  Again, while some of the Joining Movants claim that they had more questions to ask, none of the Joining Movants has identified any relevant areas that were not explored.

\\\NY - 037476/000001 - 2321515 v2

**I.    THERE WAS MORE THAN SUFFICIENT TIME FOR JURISDICTIONAL DEPOSITIONS**

"A party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order." Fed. R. Civ. P. 30(d) Advisory Committee's note (2000); *Cardenas v. The Prudential Ins. Co. of Am.*, No. 99-1421, 2003 WL 21302960, at *2 (D. Minn. May 16, 2003) (upholding Magistrate Judge's order limiting depositions across three cases to seven hours per witness and denying additional deposition time where plaintiffs failed to show good cause for further depositions). This the Joining Movants cannot do. Defendants provided examining counsel ample time to conduct the depositions. Rule 30(d)(2) clearly limits the duration of a Rule 30(b)(6) deposition to a single seven-hour day. The noticing party has the responsibility to prepare a Rule 30(b)(6) deposition notice with the seven-hour limitation in mind. *See In re Rembrandt Technologies,* No. 09-691, 2009 WL 1258761, 14 (D. Colo. May 4, 2009) ("The party who prepares the Rule 30(b)(6) notice has complete control over the subject matter chosen for the corporate deposition."). By agreeing to make each witness available for two days, Defendants more than satisfied their obligations under Rule 30(b)(6).

It also is well settled that a 30(b)(6) deposition is limited to seven hours no matter how many parties file cross-notices of deposition or decide to ask the witness questions.[7] Fed. R. Civ. P. 30(d) Advisory Committee's note (2000) ("in multi-party cases . . . duplicative questioning should be avoided and parties with similar interests should strive to designate one lawyer to question about areas of common interest"); *Canal Barge Co. v. Commonwealth Edison Co.,* No. 98-0509, 2001 WL 817853, at * 4 (N.D. Ill Jul. 19, 2001) (service of six notices under Rule

---

[7] Venture and INEX filed purportedly independent notices of deposition. These notices were duplicates of the PSC's notices. Multiple parties cannot circumvent the time limits imposed on depositions by the Federal Rules merely by photocopying an original notice.

30(b)(6) did not entitle party to six seven-hour depositions). *See also Cardenas*, 2003 WL 21302960 at *1. Moreover, all of the examining attorneys had shared interests in establishing personal jurisdiction over TG and TTP. Consequently, they needed to manage their questioning and their allocation of time accordingly. (*Id.*)

Now, after the depositions are concluded and everyone has returned from Hong Kong, some of the Joining Movants for the first time complain to the Court that they lacked sufficient time to ask questions. But they have not shown that further jurisdictional discovery is necessary, or otherwise met their burden to justify the reopening of depositions. The burden is on the Joining Movants to show that the reopening of the depositions will lead to relevant evidence that relates to the jurisdiction, and to issues that could not have been the subject of the first round of depositions. *See Lakewood v. Lasko*, No. 01-Civ-7867, 2003 WL 12200254, at *8 (N.D. Ill. Mar. 14, 2003) (movant did not provide court with sufficiently specific showing of need to justify reopening of 30(b)(6) depositions despite allegations that witness was improperly prepared and document production was inadequate). This is particularly true where, as here, the court has sanctioned only limited jurisdictional discovery. *See, e.g., Mart v. Berkshire Hathaway, Inc.*, No. 10-118, 2011 WL 924281, at *8 (N.D. Ind. Mar. 14, 2011) (limiting depositions of corporate representatives of defendant to two hours "in an effort to target discovery to the issue of jurisdiction"). But Joining Movants have not identified a single topic that warrants additional jurisdictional discovery. Between TG and TTP's Rule 30(b)(6) depositions and the over 30,000 pages of documents they produced, there is a substantial record concerning Defendants' lack of minimum contacts with U.S. states. The Court has the information it needs to decide the jurisdictional issue, and the Joining Movants do not show otherwise. Indeed, they fail to identify

\\\NY - 037476/000001 - 2321515 v2

any non-duplicative questions relevant to personal jurisdiction they did not have an opportunity to ask.

      A.      <u>The Joining Movants Never Sought Additional Time Until Now</u>

As discussed above, on April 5 the examining attorneys decided to shorten Mr. Zhang's deposition to one day, and to reserve two days for Mr. Peng's deposition. Despite the Joining Movants' claims to the contrary (Caldwell Br., p. 3; Venture Supply Br., p. 3; Banner Br., p. 2; Atlantic Br., p. 4), Defendants did not deprive any party of an opportunity to question the witnesses, rather the examining parties did not coordinate and adequately apportion the time among themselves. (Jia Tr. at 456:21-486:12; Zhang Tr. at 174:20-214:12; Peng Tr. at 364:1-383:18.) Further, counsel for Venture Supply and Tobin had the opportunity to ask Mr. Peng any questions that they wanted regarding TG's single sale of drywall to Venture Supply.[8] (Peng Tr. at 364:1-408:11.)

Moreover, although Joining Movants' counsel made various statements during the course of the week about reserving their rights to seek more time to ask questions, none bothered to contact the Court while the depositions remained convened in Hong Kong. Indeed, although Tobin's counsel expressly stated "we're not going to waive our rights" to "Saturday" apparently suggesting that the date originally scheduled for a second day of Mr. Peng's deposition should be used as a third day for his deposition, he never pursued the issue for the rest of the week. (Zhang Tr.159:21-163:4.) If Tobin or other Joining Movants thought it important that Mr. Peng be available for an extra day on that day, they should have sought to involve the Court before the parties left Hong Kong.

---

[8] Tobin continued to ask Mr. Jia specific questions about sales of drywall to Venture Supply even after Mr. Jia had already testified that he did not have any personal knowledge of that transaction, and that all such questions should be directed to Mr. Peng. (Jia Tr. at 473:4-482:3; 329:19-332:15.)

11

If these attorneys ended their questioning prematurely, they did so of their own volition or pursuant to some private agreement with each other. Thus Joining Movants cannot be heard to reopen depositions in which they did or could have participated.

B. To the Extent Joining Movants Claim Jurisdictional Questions Were Not Asked, the Fault Lies With Them and the PSC and HSC

The Court clearly charged the PSC, the DSC and the HSC with the responsibility of organizing and managing depositions as representatives of numerous parties, not merely as the attorneys for a single party. *See* Pretrial Orders 7B & 8 (Rec. Doc. Nos. 144-1; 180-1).

Specifically, Pretrial Order 7B states in relevant part that the DSC and the HSC have the following responsibilities:

Discovery

(1) Initiate, coordinate and conduct all pretrial discovery on behalf of their clients in all actions which are consolidated with the instant multi-district litigation.

\*   \*   \*

(4) Conduct all discovery in a **coordinated and consolidated** manner on behalf and for the benefit of all their clients.

(emphasis supplied) (*See also*, Pretrial Order 8, regarding discovery obligations of the PSC). The pretrial orders are clear—the representative committees, and not individual parties, were responsible for conducting the depositions to the satisfaction of their constituents.

In this case, the PSC and HSC asked the lion's share of the questions at the depositions. Of the 35 hours of depositions, the PSC and HSC examined witnesses for 30.5 hours. During that time, all relevant questions concerning personal jurisdiction could have been asked.

The PSC and HSC decided to allot time to issues such as the level of Mr. Peng's proficiency in English—for hours. (Peng Tr. at 21:21-43:5; 122:3-131:15; 310:19-318:19.) They asked numerous questions for the apparent purpose of trying to trap the witnesses into

12

agreeing with mischaracterizations of the record and the facts. (Jia Tr. at 336:8-338:16; 339:18-23; 471:8-473:2; Peng Tr. at 116:20-117:22; 279:18-281:24; 318:2-322:16; 327:10-332:3; 337:16-341:22; 342:13-347:2; 361:13-364:7.) And they asked each designee numerous questions outside of the designated topics. (Jia Tr. at 232:6-243:19; 342:18-373:5; 379:4-387:4; 452:7-453:15; Peng Tr. at 239:16-244:6; 293:8-299:23; 315:1-322:16.)

In contrast, the DSC representatives, INEX and Banner, took a more passive role in the depositions and only asked 81 questions over the course of the week. (Zhang Tr. at 174:20-214:12; Peng Tr. at 408:15-418:11.) To the extent they or other Joining Movants claim there were relevant questions concerning personal jurisdiction that were not asked by the PSC, HSC or the DSC, they should have made their concerns known to the steering committees and if necessary the Court, before the depositions concluded in Hong Kong, for the steering committees had the responsibility for managing the questioning and allocating time appropriately between them and the Joining Defendants.

C.  Costs and Fees Should Be Awarded to Defendants

Pursuant to Rule 37(a)(5)(B), the Court should award TG and TTP their reasonable expenses incurred in opposing the unjustified motions, including attorneys' fees pursuant to FRCP 37(a)(5)(B). *See, e.g., CoStar Realty Inf., Inc. v. Field,* 737 F. Supp. 2d 496, 514-16 (D. Md. 2010) (awarding attorneys' fees for where party prevailed in its opposition to motion to dismiss).

13

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully submit that the Court deny the Motions.

Respectfully submitted,

| | |
|---|---|
| Joe Cyr | /s/ Thomas P. Owen Jr. |
| Frank T. Spano | Richard C. Stanley (La. Bar No. 8487) |
| Eric Statman | Thomas P. Owen, Jr. (La. Bar No. 28181) |
| Matthew J. Galvin | STANLEY, REUTER, ROSS, THORNTON & |
| HOGAN LOVELLS US LLP | ALFORD, LLC |
| 875 Third Avenue | 909 Poydras Street, Suite 2500 |
| New York, New York 10022 | New Orleans, Louisiana 70112 |
| E-mail: Joe.cyr@hoganlovells.com | Telephone: 504-523-1580 |
| Frank.spano@hoganlovells.com | Facsimile: 504-524-0069 |
| Eric.statman@hoganlovells.com | E-mail: rcs@stanleyreuter.com |
| Matthew.galvin@hoganlovells.com | tpo@stanleyreuter.em |
| Telephone: 212-918-3000 | *Attorneys for Taishan Gypsum Co., Ltd. and* |
| Facsimile: 212-918-3100 | *Taian Taishan Plasterboard Co., Ltd.* |
| *Attorneys for Taishan Gypsum Co., Ltd. and* | |
| *Taian Taishan Plasterboard Co., Ltd.* | |

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendants Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co., Ltd.'s Opposition to the Motions Joining the PSC's and the HSC's Motions to Compel has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 18th day of May, 2011.

/s/ Thomas P. Owen Jr.

14

\\\NY - 037476/000001 - 2321515 v2