Page 1

```
 1         UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF LOUISIANA
 2

 3    _____     § MDL NO. 2047
      IN RE:                     §
 4    CHINESE-                   § SECTION: L
      MANUFACTURED               §
 5    DRYWALL PRODUCTS           § JUDGE FALLON
      LIABILITY                  §
 6    LITIGATION                 § MAGISTRATE
                                 § JUDGE WILKINSON
 7    _____

                       - - -
 8
          CROSS NOTICED IN VARIOUS OTHER ACTIONS
 9

10
                       - - -
11
                   April 6, 2011
12
                       - - -
13
          CONFIDENTIAL - SUBJECT TO FURTHER
14              CONFIDENTIALITY REVIEW
15                     - - -
16         Videotaped deposition of JIANCHUN
      ZHANG, held at 3 Pedder Street, Central,
17    Hong Kong, China, commencing at 9:12
      a.m., on the above date, before Linda L.
18    Golkow, Certified Court Reporter,
      Registered Diplomate Reporter, Certified
19    Realtime Reporter and Notary Public.
20
21                     - - -
22
              GOLKOW TECHNOLOGIES, INC.
23      ph 877.370.3377 | fax 917.591.5672
                deps@golkow.com
24
```

Confidential - Subject to Further Confidentiality Review

Page 2

```
 1   APPEARANCES:
 2
 3
     COLSON HICKS EIDSON
 4   BY:  PATRICK S. MONTOYA, ESQUIRE
     255 Alhambra Circle
 5   Penthouse
     Coral Gables, Florida 33134
 6   (305) 476-7400
     patrick@colson.com
 7   Representing Plaintiffs' Steering
     Committee in the Federal and State
 8   Coordinated Actions
 9
10
     SEEGER WEISS LLP
11   BY:  CHRISTOPHER A. SEEGER, ESQUIRE
     BY:  JEFFREY S. GRAND, ESQUIRE
12   One William Street
     New York, New York 10004
13   (212) 584-0700
     cseeger@seegerweiss.com
14   jgrand@seegerweiss.com
     Representing the Plaintiffs' Steering
15   Committee
16
17
     LAW OFFICES OF RICHARD SERPE, P.C.
18   BY:  RICHARD J. SERPE, ESQUIRE
     580 East Main Street
19   Suite 310
     Norfolk, Virginia 23510
20   (757) 233-0009
     rserpe@serpefirm.com
21   Representing the MDL Plaintiffs and
     the Germano Plaintiffs
22
23           - - -
24
```

Page 3

```
 1
     APPEARANCES (CONTINUED):
 2
 3
     HOGAN LOVELLS US LLP
 4   BY:  ERIC D. STATMAN, ESQUIRE
     BY:  RENEE GARCIA, ESQUIRE
 5   875 Third Avenue
     New York, New York 10022
 6   (212) 918-3000
     Renee.garcia@hoganlovells.com
 7   eric.statman@hoganlovells.com
     Representing Taishan Gypsum Co.
 8   Ltd. and Tai'an Taishan
     Plasterboard Company Ltd. and the
 9   Witness, Jianchun Zhang
10
11   HOGAN LOVELLS INTERNATIONAL LLP
     BY:  EUGENE CHEN, ESQUIRE
12   18th Floor, Park Place
     1601 Nanjing Road West
13   Shanghai, China 200040
     (86 21) 6122 3800
14   eugene.chen@hoganlovells.com
     Representing Taishan Gypsum Co.
15   Ltd. and Tai'an Taishan
     Plasterboard Company Ltd. and the
16   Witness, Jianchun Zhang
17
18   HOGAN LOVELLS INTERNATIONAL LLP
     BY:  STACY YUAN, ESQUIRE
19   31st Floor - Tower 3
     China Central Place
20   Beijing, China 100025
     (86 10) 6582 9488
21   stacy.yuan@hoganlovells.com
     Representing Taishan Gypsum Co.
22   Ltd. and Tai'an Taishan
     Plasterboard Company Ltd. and the
23   Witness, Jianchun Zhang
24
```

Page 4

```
 1
 2   APPEARANCES (CONTINUED):
 3
 4
     GREENBERG TRAURIG, LLP
 5   BY:  HILARIE BASS, ESQUIRE
     1221 Brickell Avenue
 6   Miami, Florida 33131
     (305) 579-0745
 7   bassh@gtlaw.com
     Representing the Home Builders
 8   Steering Committee
 9
10   GALLOWAY JOHNSON TOMPKINS BURR and
     SMITH
11   BY:  CARLINA C. EISELEN, ESQUIRE
     One Shell Square
12   701 Poydras Street, 40th Floor
     New Orleans, Louisiana 70139
13   (504) 525-6802
     ceiselen@gjtbs.com
14   Representing Interior/Exterior
     Building Supply
15
16
     PERKINS COIE LLP
17   BY:  DAVID L. BLACK, ESQUIRE
          CRAIG M.J. ALLELY, ESQUIRE
18   1899 Wynkoop Street - Suite 700
     Denver, Colorado 80202
19   (303) 291-2300
     DBlack@perkinscoie.com
20   Representing the State of Louisiana
21
22
23
24
```

Page 5

```
 1
 2   APPEARANCES (CONTINUED):
 3
 4   WEINBERG, WHEELER, HUDGINS, GUNN &
     DIAL, LLC
 5   BY:  NICHOLAS P. PANAYOTOPOULOS, ESQ.
     3344 Peachtree Road, NE
 6   Suite 2400
     Atlanta, Georgia 30326
 7   (404) 876-2700
     npanayo@wwhgd.com
 8   Representing Various Banner
     Defendants
 9
10
     BRENNE, EVANS & MILLMAN, P.C.
11   BY:  THEODORE I. BRENNER, ESQUIRE
     411 East Franklin Street
12   Suite 200
     Richmond, Virginia 23218
13   (804) 644-1300
     Representing Tobin Trading Company
14
15
     McKENRY, DANCIGERS, DAWSON &
     LAKE, P.C.
16   BY:  J. BRIAN SLAUGHTER, ESQUIRE
17   192 Ballard Court
     Suite 400
18   Virginia Beach, Virginia 23462
     (757) 461-2500
19   Jbslaughter@va-law.org
     Representing Atlantic Homes LLC and
20   Multiple Other Virginia-Based
     Defendants
21
22
23
24
```

Confidential - Subject to Further Confidentiality Review

Page 6

```
 1
 2   APPEARANCES (CONTINUED):
 3
 4   SHER GARNER CAHILL RICHTER KLEIN &
     HILBERT, L.L.C.
 5   BY:  MATTHEW C. CLARK, ESQUIRE
     909 Poydras Street
 6   Suite 2800
     New Orleans, Louisiana 70112
 7   (504) 299-2100
     mclark@shergarner.com
 8   Representing the Southern Home
     Defendants
 9
10
     SINNOTT, NUCKOLS & LOGAN, PC
11   BY:  KENNETH F. HARDT, ESQUIRE
     13811 Village Mill Drive
12   Midlothian, Virginia 23114
     (804) 378-7600
13   khardt@snllaw.com
     Representing Venture Supply, Inc. and
14   Porter-Blaine Corp.
15
16
17
18
19
20
21
22
23
24
```

Page 7

```
 1   APPEARANCES VIA TELEPHONE:
 2
 3   KUCHLER POLK SCHELL WEINER &
     RICHESON LLC
 4   BY:  FRANCIS X. deBLANC, III,
     1615 Poydras Street
 5   Suite 1300
     New Orleans, Louisiana 70112
 6   (504) 592-0691
     slauricella@kuchlerpolk.com
 7   Representing Creola Ace Hardware and
     Thomas Gould Inc. in the MDL
 8
 9
     HUNTON & WILLIAMS LLP
10   BY:  A. TODD BROWN, ESQUIRE
     Bank of America Plaza
11   101 South Tryon Street
     Suite 3500
12   Charlotte, North Carolina  28280
     (704) 378-4700
13   Representing Stock Building Supply,
     LLC
14
15
     JONES, WALKER, WAECHTER, POITEVENT,
16   CARRERE & DENEGRE LLP
     BY:  MEGAN E. DONOHUE, ESQUIRE
17   600 Jefferson Street, Suite 1600
     Lafayette, Louisiana 70501
18   (337) 262-9062
     mdonohue@joneswalker.com
19   Representing Fireman's Fund Insurance
     Company
20
21
22
23
24
```

Page 8

```
 1   APPEARANCES VIA TELEPHONE (CONTINUED):
 2
 3   DUPLASS ZWAIN BOURGEOIS PFISTER &
     WEINSTOCK
 4   BY:  PHILIP WATSON, ESQUIRE
     3838 N. Causeway Boulevard
 5   Suite 2900
     Metairie, Louisiana 70002
 6   (504) 832-3700
     pwatson@duplass.com
 7   Representing R&H Masonry, Inc., and
     Swedberg Enterprises, Inc.
 8
 9
     RUMBERGER, KIRK & CALDWELL, P.A.
10   BY:  ABIGAIL ROBERTS, ESQUIRE
     Brickell Bayview Centre
11   Suite 3000
     80 Southwest 8th Street
12   Miami, Florida 33130
     (305) 358-5577
13   aroberts@rumberger.com
     Representing Defendants' Liaison
14   Counsel for  Installers
15
16   PHELPS DUNBAR LLP
     BY:  MITCHELL P. HASENKAMPF, ESQUIRE
17   Canal Place
     365 Canal Street, Suite 2000
18   New Orleans, Louisiana 70130-6534
     (504) 584-9249
19   mitchell.hasenkampf@phelps.com
     Representing State Farm
20
21
22
23
24
```

Page 9

```
 1   APPEARANCES VIA TELEPHONE (CONTINUED):
 2
 3   FULMER LEROY ALBEE BAUMANN
     BY:  MICHAEL MCCAHILL, ESQUIRE
 4   2866 East Oakland Park Boulevard
     Ft. Lauderdale, Florida 33306
 5   (954) 707-4430
     mosscandace@fulmerleroy.com
 6   Representing Independent Builders
     Supply Association (IBSA)
 7
 8
     THOMPSON COE COUSINS & IRONS, L.L.P.
 9   BY:  SUZANNE M. PATRICK, ESQUIRE
     One Riverway, Suite 1600
10   Houston, Texas 77056
     (713) 403-8210
11   spatrick@thompsoncoe.com
     Representing The North River
12   Insurance Company
13
14
15
16
17
18
19
20
21
22
23
24
```

Golkow Technologies, Inc. - 1.877.370.DEPS

Page 10

1  APPEARANCES VIA STREAM:
2
3  BECNEL LAW FIRM, L.L.C.
   BY: ROBERT BECNEL, ESQUIRE
4  106 W. 7th Street
   Reserve, Louisiana 70084
5  (985) 536-1186
   robbecnel@aol.com
6  Representing the Plaintiffs'
   Steering Committee
7
8
   QUINN EMANUEL URQUHART & SULLIVAN,
9  LLP
   BY: CLINTON DOCKERY, ESQUIRE
10 51 Madison Avenue, 22nd Floor
   New York, New York 10010
11 (212) 849-7000
   clintondockery@quinnemanuel.com
12 Representing Chartis Select Insurance
   Company and Related Chartis Insurers
13
14
   JONES, WALKER, WAECHTER, POITEVENT,
15 CARRERE & DENEGRE LLP
   BY: MEGAN E. DONOHUE, ESQUIRE
16 600 Jefferson Street, Suite 1600
   Lafayette, Louisiana 70501
17 (337) 262-9062
   mdonohue@joneswalker.com
18 Representing Fireman's Fund Insurance
   Company
19
20
   HAYNSWORTH SINKLER BOYD, P.A.
21 BY: CHRISTOPHER B. MAJOR, ESQUIRE
   75 Beattie Place - 11th Floor
22 Greenville, South Carolina 29601
   (864) 240-3200
23 cmajor@hsblawfirm.com
   Representing USG Corporation and L&W
24 Supply Corporation

Page 11

1  APPEARANCES VIA STREAM (CONTINUED):
2
3  TAYLOR WALKER, P.C.
   BY: CHRISTOPHER J. WIEMKEN, ESQUIRE
4  555 E. Main Street
   Suite 1300
5  Norfolk, Virginia 23510
   (757) 625-7300
6  Cwiemken@taylorwalkerlaw.com
7
8
9
   DEUTSCH, KERRIGAN & STILES
10 BY: MELISSA M. SWABACKER, ESQUIRE
   755 Magazine St.
11 New Orleans, Louisiana 70130
   (504) 581-5141
12 mswabacker@dkslaw.com
   Representing Landmark American
13 Insurance Company
14
15 KUCHLER POLK SCHELL WEINER &
   RICHESON LLC
16 BY: SOPHIA L. LAURICELLA, ESQUIRE
   1615 Poydras Street
17 Suite 1300
   New Orleans, Louisiana 70112
18 (504) 592-0691
   slauricella@kuchlerpolk.com
19 Representing Creola Ace Hardware and
   Thomas Gould Inc. in the MDL
20
21
22
23
24

Page 12

1  APPEARANCES (CONTINUED):
2
3  ALSO PRESENT:
4
5  Stephanie Chin, Official Interpreter
   (Interpreter 1)
6
7  Una Wong, Check Interpreter
   (Interpreter 2)
8
9
10         - - -
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 13

1              - - -
2          I N D E X
3              - - -
4
5  Testimony of: JIANCHUN ZHANG
6  By Mr. Montoya              17
   By Mr. Panayotopoulos      174
7
8              - - -
9          E X H I B I T S
10             - - -
11
   NO.          DESCRIPTION         PAGE
12
   Jianchun-13  Handwritten Note in   56
13              Chinese
14 Jianchun-14  Handwritten note in   74
               Chinese
15
   Jianchun-15  Handwritten note in  103
16              Chinese
17 Jianchun-16  Handwritten note in  131
               Chinese
18
   Jianchun-17  Document in Chinese, 163
19              Bates stamped TG
               0020116 and TG
20             0020117, and English
               Translation,
21             Reconciliation
               Agreement, October
22             3, 2008
23
24

Page 158

1  explain to you.
2      MR. STATMAN: Okay. I'm
3  going to object as to the form
4  because it's vague and ambiguous.
5  He's obviously struggling. If you
6  can reask him the question --
7      MR. MONTOYA: I asked him
8  the name of the factory. I'm not
9  going to reask it.
10     MR. STATMAN: Assumes facts
11 not in evidence.
12     MR. MONTOYA: That they
13 don't have a factory for drywall?
14     MR. STATMAN: No. If it has
15 a name.
16     MR. GRAND: Then he can say
17 it doesn't have a name.
18     MR. STATMAN: He's
19 apparently struggling.
20     MS. BASS: You don't have
21 any idea why he's struggling.
22     MR. STATMAN: That's true.
23 That's why I said apparently.
24     THE WITNESS: The production

Page 159

1  line of TTP is under the name of
2  TTP.
3      MR. STATMAN: Are we ready
4  for another break?
5      MR. MONTOYA: I think we
6  are, yes.
7      THE VIDEOTAPE TECHNICIAN:
8  The time now is approximately 3:09
9  p.m., and we are now off the
10 record.
11          - - -
12     (Whereupon, a recess was
13 taken from 3:09 p.m. until
14 3:21 p.m.)
15          - - -
16     THE VIDEOTAPE TECHNICIAN:
17 This begins Tape 5 of today's
18 deposition. The time now is
19 approximately 3:21 p.m., and we're
20 back on the record.
21     MR. STATMAN: Before Mr.
22 Montoya recommences with his
23 questions, I just want to note
24 that originally that Mr. Zhang was

Page 160

1  scheduled to have his deposition
2  taken over a period of two days.
3  I understand that yesterday you
4  all agreed that his deposition
5  would be taken only today and that
6  you would take Mr. Peng's
7  deposition over the next two days
8  and you would not be taking any
9  depositions on Saturday. I see
10 nods on the other side of the
11 table, and I'm assuming that's all
12 correct and no one disagrees with
13 that.
14     MR. PANAYOTOPOULOS: I've
15 not agreed to that, but I suspect
16 it's okay as long as I have an
17 opportunity to ask a few questions
18 today.
19     MR. STATMAN: That's what I
20 was getting to. The time is now
21 3:20 approximately. My watch
22 never seems to be right here, but
23 it's about 3:20. I interpret a
24 day to generally mean a 9 to 5

Page 161

1  full day. We've tried to keep the
2  breaks to a minimum. I've tried
3  to keep the testimony flowing as
4  best we can. I'm certainly
5  willing to give a little leeway on
6  the 5:00 issue, but there isn't
7  that much room for leeway. And so
8  I want you among you, if you can,
9  to reach an agreement about your
10 time. I'm not going to tell you
11 how to manage your deposition.
12 But if you want some time to ask
13 questions, I think you need to
14 keep that in mind that he's not
15 going to be here indefinitely
16 merely because you decided to
17 reduce his time from two days to
18 one day.
19     MR. PANAYOTOPOULOS: You
20 just need to understand that we
21 actually have adverse interests.
22 There's no team over here working
23 together. My clients, I'm the
24 only one who represents my

Confidential - Subject to Further Confidentiality Review

Page 162

1  clients, and we have directly
2  adverse interests with the people
3  that are asking the questions.
4  So, I don't have a choice in that.
5  So, as long as our rights are
6  preserved, I'm fine with that.
7  But I'm not willing to give up my
8  rights for somebody else.
9         MR. BRENNER:  The same
10 applies to Mr. Peng.  We've all
11 come here to ask him questions.
12 And to the extent that others with
13 adverse interests monopolize the
14 time, we're not going to waive our
15 rights.  We've got a Saturday set
16 aside.  We're not going to waive
17 our rights.
18        MR. STATMAN:  I'm not going
19 to make any ruling or ask you to
20 waive any rights you may have, but
21 he's here for a full day's worth
22 of deposition today.  We're making
23 an honest effort to give you a
24 full day's worth of deposition,

Page 163

1  and how you all work it out is not
2  really my concern.  I need to tell
3  you that we should just continue
4  and try to get it done.

Page 164

Page 165

42 (Pages 162 to 165)

Golkow Technologies, Inc. - 1.877.370.DEPS

Page 174

1  obligation.
2        MS. BASS: That's fine.
3  We'll take it up with Judge
4  Fallon. Thank you.
5        MR. STATMAN: That's right.
6        MR. SERPE: There's no need
7  to translate that, I wouldn't
8  think.
9        MR. STATMAN: No, absolutely
10 not.
11       MR. PANAYOTOPOULOS: I also
12 join in the objections from Ms.
13 Bass, but I'm going to try to get
14 some of the questions that
15 possibly this witness has
16 knowledge about while we're here.
17           - - -
18        EXAMINATION
19           - - -
20 BY MR. PANAYOTOPOULOS:
21    Q.  Hello. My name is Nick
22 Panayotopoulos, and I represent certain
23 entities by the name of Banner.
24        When did TTP first hear

Page 175

1  about claims being made in America about
2  its drywall?
3        INTERPRETER 1: Counsel, the
4  word claims is not a very --
5  cannot be translated too clearly.
6  Will you help me?
7        INTERPRETER 2: The check
8  interpreter disagrees. Claims
9  should be interpreted as shuo pei.
10       INTERPRETER 1: That is one
11 way of interpreting that.
12       MR. PANAYOTOPOULOS: That's
13 fine.
14       INTERPRETER 1: I did
15 translate it similar to that, but
16 I don't want to guess.
17       MR. PANAYOTOPOULOS: You can
18 ask it that way. That's fine.
19       MR. STATMAN: Are you
20 finished with your translation?
21       INTERPRETER 1: Yes.
22       MR. STATMAN: I object to
23 the form of that question. I
24 object to the scope of that

Page 176

1  question insofar as it concerns
2  the designations, and I am
3  objecting to the scope of that
4  question insofar as it has nothing
5  to do with the jurisdiction. I'll
6  let him answer because I want to
7  move this along, but out of
8  concern for everybody's time, I'm
9  not going to let a whole series of
10 questions like this be asked.
11 He's designated, and these
12 depositions are meant to be for
13 jurisdictional purposes.
14       MR. PANAYOTOPOULOS: Thank
15 you.
16       MR. STATMAN: You can
17 translate that, please.
18       THE WITNESS: Around the
19 year 2010, TTP received legal
20 documents.
21 BY MR. PANAYOTOPOULOS:
22    Q.  I'm not asking when TTP
23 first received legal documents. I'm
24 asking when did TTP first hear about

Page 177

1  claims in America that the drywall was
2  defective?
3        MR. STATMAN: Same objection
4  as to form and on scope, but you
5  can answer the question if you
6  can.
7        MR. PANAYOTOPOULOS: Please
8  translate his objection.
9        INTERPRETER 1: I did
10 translate it. Let me try to use
11 another word for claim. I just
12 used the word from Una. Let me
13 use another word here.
14       MR. PANAYOTOPOULOS: And
15 please go ahead and translate his
16 objection again.
17       MR. STATMAN: Same objection
18 as to the previous question.
19       INTERPRETER 1: I got this
20 Chinese translation from the
21 glossary.
22       MR. CHEN: If I could just
23 make one clarification, Mr.
24 Panayotopoulos. The question is

Page 178

1    whether you're referring to
2    allegations or complaints or if
3    you're referring to demands for
4    payment. I think that's where the
5    confusion over the term "claims"
6    between all the interpreters is
7    occurring.
8        MR. PANAYOTOPOULOS: Let me
9    be clear. It doesn't matter about
10   litigation. What I'm asking about
11   is anybody making a claim, making
12   a statement that this drywall was
13   defective. So, it does not have
14   to be in the legal context. It
15   just has to be in the context of
16   I'm making this particular claim
17   that something is wrong. I'm just
18   making a statement.
19       INTERPRETER 1: I
20   understand. Counsel, I stated
21   that we tried to translate the
22   word claims in three different
23   ways, and we still don't get the
24   answer across because under

Page 179

1    different situation, the word
2    claims can be translated
3    differently. Is there a better
4    word that can help us better
5    translate?
6        MR. PANAYOTOPOULOS: How
7    about a concern.
8        MR. STATMAN: I can never
9    tell when she's done.
10       MR. PANAYOTOPOULOS: Are you
11   done?
12       MR. STATMAN: I object as to
13   form, and I object as to scope,
14   but please answer the question.
15       MR. PANAYOTOPOULOS: Go
16   ahead and translate what he just
17   said, please.
18       THE WITNESS: I did not hear
19   clearly what were you asking
20   about.
21   BY MR. PANAYOTOPOULOS:
22       Q.  I'm sorry?
23       A.  I did not hear clearly the
24   questions that you just asked.

Page 180

1        Q.  When did TTP first hear that
2    there were concerns in America about its
3    drywall being defective?
4        MR. STATMAN: Objection to
5    form, objection to scope. Please
6    answer the question.
7        INTERPRETER 2: The check
8    interpreter believes that the
9    interpreter did not put defective
10   into the interpretation.
11       INTERPRETER 1: I did. I
12   did exactly every time, I did put
13   a word defective. Huai diao, that
14   is defect. Sometimes the check
15   interpreter cannot hear because it
16   is an upside down translation.
17       MR. PANAYOTOPOULOS: I don't
18   want a justification.
19       THE WITNESS: I answered
20   earlier.
21   BY MR. PANAYOTOPOULOS:
22       Q.  Please answer it again.
23       A.  Around February of 2010.
24       Q.  That's when it received the

Page 181

1    legal papers?
2        MR. STATMAN: I just want to
3    make sure you understand. I have
4    a continuing objection to scope, I
5    don't want to have to reiterate it
6    after every question in this line,
7    so we can move the questioning
8    forward.
9        MR. PANAYOTOPOULOS: I asked
10   a question already.
11       THE WITNESS: When you're
12   talking about "it," who are you
13   referring to? I don't understand.
14       INTERPRETER 1: When "it
15   received the legal papers," who
16   are you referring to as "it?
17   BY MR. PANAYOTOPOULOS:
18       Q.  You gave me a date in 2010,
19   correct?
20       A.  Yes.
21       Q.  That was the date when your
22   company received legal papers; is that
23   correct?
24       A.  Yes.

Confidential - Subject to Further Confidentiality Review

Page 182

1   Q.  Before that date, had
2  anybody at your company heard about any
3  complaints about its drywall in America?
4      MR. STATMAN:  Objection as
5  to form.
6      THE WITNESS:  TTP has
7  already stopped production.  Only
8  two people stayed.  How can I put
9  it?
10 BY MR. PANAYOTOPOULOS:
11  Q.  Prior to the date you gave
12 me, did anybody at TTP have knowledge
13 about any concerns being raised in
14 America about the TTP drywall?
15  A.  I don't know whether there
16 is anyone who knows it or not.
17  Q.  You don't know when the date
18 is?
19  A.  Just earlier, well, I want
20 to find out what question was he asking?
21  Q.  When was the first time that
22 you found out that anyone in America was
23 complaining about TTP drywall?
24      MR. STATMAN:  Objection,

Page 183

1  vague and ambiguous.  Answer,
2  please.
3      THE WITNESS:  Mr. Attorney,
4  would you mind to clarify this
5  question?
6  BY MR. PANAYOTOPOULOS:
7   Q.  Have you ever heard that
8  there are problems, that people are
9  claiming there are problems with TTP
10 drywall in America?
11      MR. STATMAN:  Objection as
12 to form.
13      THE WITNESS:  Mr. Attorney,
14 would you mind to rephrase it
15 using another method to ask me?
16     MR. CHEN:  The witness also
17 added, the way it's being
18 interpreted, I really don't
19 understand.
20     INTERPRETER 1:  Did he say
21 that?
22     MR. CHEN:  Yes, he did.
23     INTERPRETER 1:  I did not
24 hear that.

Page 184

1      THE WITNESS:  I'm talking
2  about, I don't understand the
3  meaning, what is the meaning of
4  what the attorney -- Mr. Attorney,
5  you want to convey.
6  BY MR. PANAYOTOPOULOS:
7   Q.  Are you aware that there are
8  people in America complaining that
9  there's a problem with TTP drywall?
10     MR. STATMAN:  Objection to
11 form.
12     THE WITNESS:  I know.
13 BY MR. PANAYOTOPOULOS:
14  Q.  When did you first find out?
15  A.  I cannot tell the exact
16 time.  After the litigation.
17  Q.  The first time you heard
18 from any source that there were
19 complaints about the drywall was after
20 the litigation was started?
21     MR. STATMAN:  Objection to
22 form.
23     THE WITNESS:  Yes.
24 BY MR. PANAYOTOPOULOS:

Page 185

1   Q.  You never read anything in
2  the papers about problems with TTP
3  drywall in America before that time?
4      MR. STATMAN:  Objection to
5  form.
6      INTERPRETER 2:  The check
7  interpreter believe paper here
8  means newspaper.
9      INTERPRETER 1:  Interpreters
10 do not speculate the meaning of
11 the words.  It's up to the lawyers
12 to clarify.
13     MR. PANAYOTOPOULOS:  Please
14 use the word newspaper or press.
15     THE WITNESS:  Yes.
16 BY MR. PANAYOTOPOULOS:
17  Q.  When was that, the first
18 time that you heard that?
19     MR. STATMAN:  Objection to
20 form.
21     THE WITNESS:  I did answer.
22     INTERPRETER 2:  The check
23 interpreter believes that when the
24 question posed to the witness, you

47 (Pages 182 to 185)

Confidential - Subject to Further Confidentiality Review

Page 186

1  never read from the papers about
2  the litigation -- about the
3  complaints, and the witness'
4  answer is correct, meaning I have
5  never read from the newspaper,
6  it's not yes, I have read from the
7  paper.
8       INTERPRETER 1: The check
9  interpreter is digesting and
10 speculating the meaning of what
11 was being said. What was said was
12 not as long as what she said.
13 BY MR. PANAYOTOPOULOS:
14      Q.  Did TTP have a customer base
15 in 2006 to 2007?
16      MR. STATMAN: Objection as
17 to form.
18      THE WITNESS: I don't
19 understand. What do you mean by
20 "customer base"?
21 BY MR. PANAYOTOPOULOS:
22      Q.  Did TTP have customers in
23 2006 and 2007 for its drywall?
24      A.  TTP has customers for the

Page 187

1  drywalls.
2       Q.  In 2006/2007?
3       A.  Yes.
4       Q.  What happened to those
5  customers when TTP and TG boards decided
6  to shut down TTP's business?
7       MR. STATMAN: Finished?
8  Objection to the form.
9       THE WITNESS: I don't
10 understand the meaning of this
11 question. What do you mean?
12 BY MR. PANAYOTOPOULOS:
13      Q.  Did the customers that used
14 to get drywall from TTP begin to get
15 drywall from a different TG entity after
16 TTP shut down?
17      A.  The customers of TTP, they
18 are not fixed customers. They can buy
19 the drywall from anywhere.
20      Q.  Did TTP give its client list
21 to a different TG client -- TG entity
22 when TTP went out of business?
23      MR. STATMAN: Objection as
24 to form.

Page 188

1       THE WITNESS: I did answer
2  this question earlier. The
3  customers of TTP, they are not
4  fixed customers of TTP.
5       MR. PANAYOTOPOULOS: Would
6  you repeat my question to him,
7  please.
8       MR. STATMAN: Objection to
9  form.
10      THE WITNESS: I have never
11 seen such a customer list.
12 BY MR. PANAYOTOPOULOS:
13      Q.  Is it your testimony that
14 TTP never had a list of who its customers
15 were?
16      MR. STATMAN: Objection as
17 to form, and I'm going to object
18 as to the scope of this. And I
19 think that's part of the problem.
20      You can answer if you know.
21 And any answer he gives is within
22 the scope of his personal
23 knowledge.
24      THE WITNESS: According to

Page 189

1  my personal understanding?
2  BY MR. PANAYOTOPOULOS:
3       Q.  According to any
4  understanding you had from any source
5  whatsoever.
6       A.  What I mean is that the
7  customers of TTP keeps on changing.
8  Therefore, there's no way for them to
9  write out a list.
10      Q.  So, your testimony is that
11 TTP never had a list of who its customers
12 were, correct?
13      MR. STATMAN: Objection to
14 form.
15      THE WITNESS: That is
16 according to my own understanding,
17 I have never seen such a list.
18 BY MR. PANAYOTOPOULOS:
19      Q.  You spoke earlier about the
20 VAT tax issues, correct?
21      A.  Yes.
22      Q.  And part of the reason that
23 TTP shut down or stopped producing
24 drywall was so that TG could apply for

Confidential - Subject to Further Confidentiality Review

Page 190

1  VAT exemptions, correct?
2       MR. STATMAN: Objection to
3  form.
4       THE WITNESS: I don't
5  understand the meaning, Mr.
6  Attorney.
7  BY MR. PANAYOTOPOULOS:
8     Q.   The meaning of what?
9     A.   I don't understand what
10 you're talking about. What do you imply?
11    Q.   The boards of TTP and TG
12 decided at some point to shut down TTP's
13 production, correct?
14    A.   Yes.
15    Q.   And the reason that they
16 decided to do that was so they could
17 apply for VAT tax exemption, correct?
18      MR. STATMAN: Objection to
19 form.
20      THE WITNESS: Mr. Attorney,
21 when you are talking about the
22 word "they," who are you referring
23 to?
24 BY MR. PANAYOTOPOULOS:

Page 191

1     Q.   TTP and TG.
2     A.   TTP has already stopped the
3  production, therefore, there is no more
4  tax issue.
5     Q.   It's TG that applies for the
6  VAT exemption, correct?
7       MR. STATMAN: Objection to
8  form, time frame.
9       THE WITNESS: TG enjoy the
10 VAT tax before this.
11      MR. CHEN: Tax exemption.
12      INTERPRETER 1: He did not.
13 He did not say the word
14 "exemption." He just said "enjoy
15 VAT tax."
16      Let me ask the witness to do
17 it over again.
18      THE WITNESS: TG can enjoy
19 the exemption of the VAT tax
20 before this.
21 BY MR. PANAYOTOPOULOS:
22    Q.   The reason --
23       What was the reason that TTP
24 production was shut down?

Page 192

1       MR. STATMAN: Objection,
2  asked and answered.
3       THE WITNESS: I insist on
4  the answer I gave before.
5  BY MR. PANAYOTOPOULOS:
6     Q.   Please repeat it, if you
7  could.
8     A.   The answer I gave earlier
9  was too long. I am unable to repeat it.
10    Q.   Was part of the reason the
11 TTP production was shut down so that some
12 Taishan Gypsum entity could enjoy VAT tax
13 exemption?
14    A.   That is not the case.
15    Q.   Please repeat the reason,
16 then, that you said why TTP was shut
17 down.
18      MR. STATMAN: Objection,
19 asked and answered. And to the
20 extent you can answer that
21 question, please do.
22      THE WITNESS: I insist on
23 the answer that I gave out
24 earlier, and I did explain about

Page 193

1  this because it is a very
2  professional knowledge regarding
3  the finance. I spent a long time
4  to explain this. If I have to
5  repeat it again, it is
6  meaningless.
7       MR. PANAYOTOPOULOS: We're
8  going to be here a very long time
9  if I'm not going to get any
10 answers to my questions, and I
11 don't know what the best way to go
12 about it is, but I can't get any
13 answers out of this -- the
14 witness.
15      MR. STATMAN: Let me suggest
16 that you asked exactly the same
17 question that he had previously
18 been asked which he gave a very
19 long answer. And he's saying that
20 he can't repeat that answer. And
21 let me further suggest that you
22 may have misunderstood some of the
23 things he said. Now, if you'd
24 like to go back and read his

Page 194

1  answer while someone else takes
2  over the questioning, I have no
3  problem with that. But he can't
4  give exactly the same answer that
5  he gave before.
6      MR. PANAYOTOPOULOS: Well,
7  I'm not asking for the exact same
8  answer.
9      MR. STATMAN: You are asking
10 for an answer to exactly the same
11 question. There's no reason he
12 has to repeat it.
13     MR. PANAYOTOPOULOS: The
14 problem is, he's refusing to
15 answer the questions that came
16 before that, and so now I've got
17 to take him through the entire
18 loop. But it's fine. I'm going
19 to let somebody else, if they want
20 to go first, then I'll come back.
21     MR. HARDT: I just have a
22 statement for the record. This is
23 Ken Hardt. I represent Venture
24 Supply and Porter-Blaine

Page 195

1  Corporation. I independently
2  noticed these depositions in the
3  Germano class action and am making
4  a special appearance at these
5  depositions. Pursuant to that
6  notice in the Germano action, I
7  agree with Ms. Bass' statements.
8  The topics that I would have asked
9  have been covered by the
10 attorneys. I don't think the
11 answers are representative of a
12 corporate representative that
13 should have been prepared to
14 answer these questions. Again, no
15 disrespect to the witness, but I
16 think the wrong witness was put up
17 for -- they could have put up a
18 number of witnesses to address the
19 topics, therefore, I'm not going
20 to ask any questions at this time.
21     MR. STATMAN: Rather than
22 respond, we'll let the judge
23 decide when it comes to that.
24     MS. EISELEN: This is

Page 196

1  Carlina Eiselen. I represent
2  Interior/Exterior. I along with
3  other counsel, I cross-noticed
4  this deposition in the MDL, and I
5  share Ms. Bass and Mr. Hardt's
6  objections.
7      MR. BLACK: I'm David Black
8  representing the State of
9  Louisiana.
10     I also share the statements
11 made by Ms. Bass and Mr. Hardt and
12 Carlina. I think this witness was
13 a very, very poor representative.
14 There are many other folks who
15 have been identified in exhibits
16 and otherwise who could have been
17 put here. Instead, they put
18 somebody who didn't have anything
19 to do with the daily operations of
20 TTP during the time that it was in
21 operation for the very clear
22 purpose of avoiding a witness who
23 can answer questions about what
24 TTP did. And I thought the

Page 197

1  purpose of this deposition is to
2  find out what TTP did, how it
3  reacted to what was out there.
4  This witness did not provide that
5  basis.
6      MR. STATMAN: I'm prepared
7  to let everybody join in with what
8  Ms. Bass said before, but when the
9  attorneys' motives are impugned, I
10 have to say something about that.
11     I think that if you press
12 this further, you'll find out that
13 whatever you ascribe to the
14 attorneys is not true. I think
15 when you read the transcript, you
16 will see that the witness, in
17 fact, was capable and did answer
18 all the proper questions that were
19 posed to him and was a fine
20 30(b)(6) designee.
21     MR. BLACK: I respectfully
22 disagree.
23     MR. CLARK: This is Matthew
24 Clark representing Southern Homes.

Confidential - Subject to Further Confidentiality Review

Page 198

1  Southern Homes joins in the
2  statements of Mr. Black, Ms. Bass
3  and the others and lodges its
4  objection.
5      MR. SLAUGHTER: This is
6  Brian Slaughter. I represent
7  Atlantic Homes, and I join in the
8  objections raised by the other
9  parties previously.
10 BY MR. PANAYOTOPOULOUS:
11     Q.  Hello again.
12         Is it true that as a result
13 of TTP shutting down its operations, TG
14 could enjoy full tax exemption from VAT?
15     A.  You cannot say this.
16     Q.  Is it true that TG
17 implemented a different policy in 2006 --
18 I'm sorry. Let me start over.
19         What policy did TG implement
20 to exempt all the VAT tax?
21     MR. STATMAN: Objection to
22 form.
23     THE WITNESS: Mr. Attorney,
24 would you mind to say your

Page 199

1  question to describe it once more.
2  BY MR. PANAYOTOPOULOS:
3      Q.  Sure.
4          And I'm reading from the
5  rough transcript of his testimony from
6  earlier today. Did TTP implement some
7  tax policy to cut the exemption, the VAT
8  exemption?
9      A.  TTP? Are you talking about
10 TTP or TG?
11     Q.  TG. I'm sorry, TG.
12     A.  Mr. Attorney, would you mind
13 to describe this question to me
14 completely.
15     Q.  You talked earlier about a
16 policy that TG implemented related to
17 VAT, correct?
18     A.  Yes.
19     Q.  Tell me about that policy.
20 What is that policy?
21     MR. STATMAN: Objection to
22 form, asked and answered. If you
23 can answer the question.
24     THE WITNESS: I cannot tell

Page 200

1  accurately the name of that
2  policy. I cannot tell accurately
3  the name of this document. There
4  is a tax policy promulgated by the
5  tax bureau of the Chinese
6  government.
7  BY MR. PANAYOTOPOULOS:
8      Q.  I'm not asking for the name.
9  I'm asking for your understanding of what
10 that policy was.
11     MR. STATMAN: Okay. I think
12 this really is outside the scope.
13     But you can answer to the
14 best of your knowledge.
15     THE WITNESS: To put it
16 simple, TG.
17     MR. STATMAN: (Addressing
18 the interpreter.)
19     Would you let him finish his
20 entire answer before you start
21 interjecting.
22     Thank you.
23     INTERPRETER 1: Yeah, sure.
24 No. I just want to double check.

Page 201

1  I did not hear.
2      MR. STATMAN: You said TG
3  three times.
4      THE WITNESS: Are you asking
5  about TG or TTP?
6  BY MR. PANAYOTOPOULOS:
7      Q.  Whose policy were you
8  talking about earlier related to VAT?
9      A.  The state tax bureau.
10     Q.  I understand that the state
11 issued a new policy related to VAT,
12 correct?
13     A.  I don't know about the new
14 ones.
15     Q.  The one you were talking
16 about just now.
17     A.  Now I understand. Mr.
18 Attorney, you're referring the tax policy
19 TG implemented at that time, right?
20     Q.  Correct. Tell me what that
21 policy was, please.
22     A.  TG can enjoy the exemption
23 of VAT. Finished.
24     Q.  And did that --

Golkow Technologies, Inc. - 1.877.370.DEPS

Page 202

1  In order for TG to enjoy
2  that VAT exemption, was that in any way
3  related to the shutdown of TTP
4  production?
5     A.  No relationship.
6     Q.  Does TG submit forms to get
7  VAT exemptions today?
8        MR. STATMAN: I object as
9     outside the scope. This witness
10    is clearly designated to talk
11    about TTP. If he can answer based
12    on his own personal knowledge,
13    that's fine. But he's not a
14    designated witness of TG.
15       You can answer that.
16       THE WITNESS: I have already
17    enough regarding the contents of
18    this question.
19       MR. PANAYOTOPOULOS: I'm
20    going to insist on an answer.
21       MR. STATMAN: Can you reask
22    the question? I think he's gotten
23    lost. I don't know, but I think
24    it --

Page 203

1  BY MR. PANAYOTOPOULOS:
2     Q.  Does TG submit forms to get
3  VAT exemptions today?
4     A.  I don't know.
5     Q.  Are you aware whether TG
6  ever submitted for VAT exemptions?
7        MR. STATMAN: Again, it's
8     outside the scope of his
9     designation, but to the extent he
10    has personal knowledge, he can
11    answer.
12       INTERPRETER 1: The
13    interpreter needs to clarify with
14    the witness because the Chinese
15    words doesn't have the present
16    tense, past tense. I want to know
17    what tense he's using.
18       MR. CHEN: I would just note
19    that she's asking was it in the
20    past or the present.
21       INTERPRETER 1: No. Because
22    the Chinese word has no "ed" or
23    future tense. It's all the same.
24       MR. CHEN: I just wanted to

Page 204

1     reflect what she's asking. I'm
2     fine with that.
3        MR. PANAYOTOPOULOS: Fine,
4     thank you. Go ahead.
5        INTERPRETER 1: I'm
6     clarifying with the witness. I
7     said there's no future tense and
8     the present tense and past tense
9     in the Chinese. I want him to
10    clarify with me. He said yes,
11    yes, right. So, that's why he
12    wants you, the attorney, also to
13    clarify what the time frame are
14    you talking about today.
15       INTERPRETER 2: The check
16    interpreter believe the witness
17    said TG should have submitted some
18    material.
19       INTERPRETER 1: He did not
20    say that. It is a speculation of
21    the check interpreter. That is
22    not right.
23       MR. PANAYOTOPOULOS: Sorry.
24    Tell me again what you think he

Page 205

1     said.
2        INTERPRETER 2: TG should
3     have submitted some material.
4        INTERPRETER 1: He did not
5     say that.
6        MR. CHEN: For the record, I
7     agree with that, with the check
8     interpreter.
9        INTERPRETER 1: It is a
10    speculation, because it has no
11    tense.
12       MR. STATMAN: Please ask him
13    again.
14 BY MR. PANAYOTOPOULOS:
15    Q.  In the past, has TG ever
16 submitted for VAT tax exemption?
17       MR. STATMAN: Objection to
18    form.
19       THE WITNESS: Need to submit
20    some reports.
21 BY MR. PANAYOTOPOULOS:
22    Q.  TG would submit the reports
23 and then get money back from the
24 government, correct?

Page 206

1   MR. STATMAN: Objection to
2   the scope, objection to the form.
3   THE WITNESS: The earlier
4   question, the way you bring it up,
5   I cannot understand.
6   MR. PANAYOTOPOULOS: You
7   want to go and change the tape
8   because we're going to be here for
9   a long time.
10   MR. STATMAN: No, we're not.
11   You're asking him questions about
12   TG's VAT applications that you may
13   very well have wanted to ask of
14   somebody else, but you are not
15   going to ask them of this witness.
16   This witness is designated to
17   testify on behalf of TTP. So, I'm
18   going to give you a few more
19   minutes on this line, and then I'm
20   shutting it down.
21   MR. PANAYOTOPOULOS: I
22   understand that you may want to do
23   that. I'm going to ask my
24   questions, and then we'll take it

Page 207

1   up with The Court. You can
2   obviously instruct the witness not
3   to answer if you want, and then we
4   can deal with it at that point.
5   MR. STATMAN: I'll instruct
6   him not to answer if you continue
7   this.
8   MR. PANAYOTOPOULOS: I
9   understand.
10   MR. STATMAN: I will
11   instruct the witness not to
12   answer. If you continue, I will
13   get up and leave. This does not
14   have anything to do with TTP
15   anymore.
16   MR. PANAYOTOPOULOS: I
17   understand.
18   THE VIDEOTAPE TECHNICIAN:
19   The time now is approximately 4:37
20   p.m. and we're now off the record.
21   - - -
22   (Whereupon, a recess was
23   taken from 4:46 p.m. until
24   4:46 p.m.)

Page 208

1   - - -
2   THE VIDEOTAPE TECHNICIAN:
3   This begins Tape 6 of the
4   deposition. The time is
5   approximately 4:46 p.m., and we're
6   back on the record.
7   MR. STATMAN: Nick, it's my
8   intention to go no longer than
9   5:00. I'll give you a little
10   leeway on that, but only if you
11   are going to be asking questions
12   within the scope of his
13   designation, and I don't see the
14   connection right now on the
15   questions that you are asking and
16   anything having to do with his
17   designation.
18   MR. PANAYOTOPOULOS: I
19   understand. Rather than taking
20   the time to argue about it, I
21   figured I'll just ask some
22   questions and maybe we can get
23   through this.
24   MR. STATMAN: Great.

Page 209

1   BY MR. PANAYOTOPOULOS:
2   Q.   Do you have any knowledge
3   regarding what TTP did in regards to VAT
4   in the 2006/2007 time frame?
5   A.   They don't have particularly
6   to do anything.
7   Q.   Do you have knowledge about
8   what TTP did in relation to VAT?
9   MR. STATMAN: Asked and
10   answered. Go ahead.
11   THE WITNESS: It is the same
12   question, therefore, I would give
13   the same -- the answer that I gave
14   earlier -- that I gave earlier.
15   BY MR. PANAYOTOPOULOS:
16   Q.   I asked the question
17   earlier. I didn't get an answer to that
18   question. Are you saying that TTP didn't
19   have anything to do with VAT?
20   MR. STATMAN: Object to the
21   form and particularly the
22   statement before the question, but
23   you can answer the question.
24   THE WITNESS: I don't know

Confidential - Subject to Further Confidentiality Review

Page 210

1  who -- what relationship that
2  you're referring to, the
3  relationship about who.
4  BY MR. PANAYOTOPOULOS:
5      Q.  Did TTP pay VAT in the
6  2006/2007 time period?
7      A.  Yes, they have to pay.
8      Q.  In the 2006/2007 time
9  period, did TTP ever apply for exemptions
10 from VAT?
11     A.  I did explain about this
12 question earlier. It pays half of the
13 tax and exempt it for half of the tax.
14     Q.  TTP would apply for
15 exemptions from VAT in certain situations
16 in the 2006-2007 time period, correct?
17         INTERPRETER 1:  2006 time
18     period?
19 BY MR. PANAYOTOPOULOS:
20     Q.  '06/07.
21         MR. STATMAN:  Objection as
22     to form.
23         THE WITNESS:  The policy
24     implemented during the period '06

Page 211

1   and '07 by TTP was 50% exemption
2   for the tax.
3  BY MR. PANAYOTOPOULOS:
4       Q.  And that was -- that
5  exemption was in instances where TTP was
6  exporting its products, correct?
7           MR. STATMAN:  Objection.
8       Is she finished?
9           MR. CHEN:  Yes.
10          MR. STATMAN:  Objection to
11      form.
12          You can answer.
13          THE WITNESS:  I don't know,
14      Mr. Attorney, when you're
15      referring to export, I don't know
16      concretely what you're talking
17      about, export. How do you define
18      concretely the behavior called
19      export?
20 BY MR. PANAYOTOPOULOS:
21      Q.  You understand that TTP
22 would not have been entitled to the VAT
23 exemption unless it was reporting to the
24 Chinese government that it was exporting

Page 212

1  the material?
2      A.  Incorrect.
3      Q.  You believe TTP was entitled
4  to a VAT exemption even in instances
5  where it was selling drywall in China?
6          MR. STATMAN:  Are you asking
7      him what his understanding is?
8          MR. PANAYOTOPOULOS:  Yes.
9          MR. STATMAN:  I object to
10     the form. You can answer if you
11     can.
12         THE WITNESS:  Let me restate
13     this. The policy implemented by
14     TTP was the policy for 50% tax
15     exemption.
16         MR. PANAYOTOPOULOS:  Would
17     you please reread my question.
18         - - -
19         (Whereupon, the requested
20     portion of the transcript was read
21     by the court reporter as follows:
22         "Q.  You believe TTP was
23     entitled to a VAT exemption even
24     in instances where it was selling

Page 213

1   drywall in China?")
2       - - -
3           MR. STATMAN:  Same
4       objections.
5           THE WITNESS:  Regarding this
6       question, what I can answer is
7       only that the policies that TTP
8       implemented was the VAT 50% tax
9       exemption.
10          MR. PANAYOTOPOULOS:  I'm
11      going to note for the record this
12      witness is not answering my
13      question, and we'll move on, and
14      we'll take it up later with the
15      judge.
16 BY MR. PANAYOTOPOULOS:
17      Q.  Do you know where the
18 VAT-related documents for TTP are today?
19      A.  Documents related to VAT,
20 where they are being kept today?
21      Q.  Correct.
22      A.  What documents are you
23 referring to?
24      Q.  Documents related to VAT

Confidential - Subject to Further Confidentiality Review

Page 214

1  from the 2006/2007 time period.
2       MR. STATMAN: Objection to
3  form.
4       You can answer the question.
5       THE WITNESS: I'm not sure
6  whether this document exists or
7  not. If we still have it, that
8  should be in the office of TTP.
9       MR. PANAYOTOPOULOS: Thank
10 you. That's all I have. Subject
11 to our reservations and objections
12 from earlier, I'm done.
13      MR. STATMAN: I have no
14 direct. So, unless anybody else
15 has something, I think we're done.
16      THE VIDEOTAPE TECHNICIAN:
17 The time now is approximately 5:00
18 p.m. Today's deposition
19 consisting of six tapes is now
20 concluded.
21           - - -
22      (Whereupon, the deposition
23 concluded at 5:00 p.m.)
24           - - -

Page 215

1       CERTIFICATE
2
3       I, LINDA L. GOLKOW, a
4  Registered Diplomate Reporter, Certified
   Court Reporter and Notary Public, do
5  hereby certify that, pursuant to notice,
   the deposition of JIANCHUN ZHANG was duly
6  taken on April 6, 2011 at 9:12 a.m.
   before me.
7
8       The said JIANCHUN ZHANG was
   duly sworn by me through the interpreter
9  according to law to tell the truth, the
   whole truth and nothing but the truth and
10 thereupon did testify as set forth in the
   above transcript of testimony. The
11 testimony was taken down stenographically
   by me.
12
13      I do further certify that
   the above deposition is full, complete
14 and a true record of all the testimony
   given by the said witness.
15
16
17      Linda L. Golkow
        Registered Diplomate Reporter
18      Certified Realtime Reporter
19
20      (The foregoing certification
   of this transcript does not apply to any
21 reproduction of the same by any means,
   unless under the direct control and/or
22 supervision of the certifying reporter.)
23
24

Page 216

1       INSTRUCTIONS TO WITNESS
2
3
4       Please read your deposition
5  over carefully and make any necessary
6  corrections. You should state the reason
7  in the appropriate space on the errata
8  sheet for any corrections that are made.
9
10      After doing so, please sign
11 the errata sheet and date it. It will be
12 attached to your deposition.
13
14      It is imperative that you
15 return the original errata sheet to the
16 deposing attorney within thirty (30) days
17 of receipt of the deposition transcript
18 by you. If you fail to do so, the
19 deposition transcript may be deemed to be
20 accurate and may be used in court.
21
22
23
24

Page 217

1       - - - - - -
                ERRATA
2       - - - - - -
3  PAGE  LINE  CHANGE
4  ____  ____  _____
5       REASON: _____
6  ____  ____  _____
7       REASON: _____
8  ____  ____  _____
9       REASON: _____
10 ____  ____  _____
11      REASON: _____
12 ____  ____  _____
13      REASON: _____
14 ____  ____  _____
15      REASON: _____
16 ____  ____  _____
17      REASON: _____
18 ____  ____  _____
19      REASON: _____
20 ____  ____  _____
21      REASON: _____
22 ____  ____  _____
23      REASON: _____
24