**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | SECTION: L |
| LITIGATION | * | |
| | * | |
| | * | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | * | |
| | * | MAGISTRATE JUDGE |
| *ALL CASES* | * | WILKINSON |
| | * | |
| * * * * * * * * * * * * * * * * * * * | * | |

**MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL NEW TRIAL REGARDING STAY ISSUED IN THE
PRELIMINARY APPROVAL ORDER, OR, IN THE ALTERNATIVE, MOTION TO
ALTER OR AMEND THE ORDER**

Builder-Defendants, Southern Homes, LLC; Tallow Creek, LLC; and Springhill, LLC (collectively "Southern Homes"), request a partial new trial regarding the stay order this Court issued when it preliminarily approved the INEX Settlement Agreement. For the following reasons, this Court should hold a new trial on the limited issue of Paragraph 8 of the Preliminary Approval Order, or, in the alternative amend the Order:

- The Order is tantamount to an injunction against parallel *in personam* state court actions, a drastic and extraordinary remedy that should not be granted as a matter of course;
- The Order is effectively the same as the bar order of the INEX Settlement Agreement

over which this Court indicated could be deal breakers for the proposed settlement agreement;

- The Order is procedurally deficient:

    - The Settling Parties, including, without limitation, the Plaintiffs' Steering Committee ("PSC") and Interior/Exterior Building Supply, LP ("INEX") failed to carry their burden of proof for injunctive relief to issue; and

    - Not all the requirements of Rule 65 of the Federal Rules of Civil Procedure have been met;

- The great weight of jurisprudence under the Anti-Injunction and All Writs acts counsels strongly against the Order;

- This Court should follow *In re First Commodity Corp.*, 89 BR 283 (D. Mass 1988), because it provides jurisprudential guidance for the exact factual scenario presented by the request for preliminary approval of the INEX Settlement Agreement;

- *Retirement Systems of Al. v. JP Morgan Chase & Co.*, 386 F.3d 419 (2d Cir. 2004), shows that federalism and comity require the grant of a new trial on (or the amendment of) the Order; and

- The jurisprudence of the United States Fifth Circuit Court of Appeals does not direct this Court to issue the Order.

Southern Homes again emphasizes that it does not seek to prevent homeowner-plaintiffs in this MDL from recovering against INEX. To the contrary, Southern Homes wants homeowner-plaintiffs to be made whole. This Memorandum has, therefore, been limited to the specific issue of Paragraph 8 of the Order, which unfairly deprives Southern Homes of its vested property rights without due process.

I.  **INTRODUCTION**

   A.  **The Genesis of the Chinese-Manufactured Drywall MDL and Southern Homes' First-Party Action Against INEX, et al.**

On **June 15, 2009**, or thereabout, the Judicial Panel on Multi-District Litigation transferred all federal actions alleging damages from Chinese-manufactured drywall to this Court. On **June 25,**

**2009**, mere days later, Southern Homes filed its own first-party suit against INEX, which it shortly thereafter amended to add Graf's Drywall, its drywall installer for the period of time during which INEX is believed to have supplied Chinese-manufactured drywall in Louisiana.  *See* Southern Homes' Petition, as amended, attached as Exhibit B-1 - *Southern Homes, LLC, et al. v. Interior/Exterior Building Supply, LP, et al.*, Civil District Court, Parish of Orleans, State of Louisiana, Division M, Case No. 09-6564.

On **December 9, 2010**, Southern Homes moved for summary judgment against INEX, its only drywall supplier, on the grounds that, as a matter of Louisiana redhibition law, INEX is liable to Southern Homes for damages relating to any defective Chinese-manufactured drywall Southern Homes installed while building or remodeling homes in Louisiana.  *See* Motion for Partial Summary Judgment, attached as Exhibit B-2.  Southern Homes' motion was heard on **February 3, 2011**.  *See* Hearing Transcript, which is attached as Exhibit B-3.  On **February 8, 2011**, the motion was denied as premature so the parties could conduct additional discovery.  *See Id*; see also Order, attached as Exhibit B-5.  The parties then conducted discovery, and on **May 2, 2011**, in accordance with the state court's order, Southern Homes re-urged its motion against INEX.[1]  **The motion is set to be heard on June 16, 2011**.  *See* Rule to Show Cause and Re-Urged Motion, attached, *in globo*, as Exhibit B-4.

### B. The INEX Settlement Agreement and Related Procedural History

On April 25, 2011, INEX and the PSC entered into the INEX Settlement Agreement.  At the

---

[1] Southern Homes has not ever moved the Louisiana state court for injunctive relief to interfere with this Court's proceedings.  Southern Homes has moved only to have its vested state rights determined by a Louisiana state court.

monthly status conference on April 26, 2011, the PSC, INEX and two insurers of INEX announced that they had reached a class action settlement agreement. On the same day, those parties filed a Joint Motion and Order: (1) preliminarily approving the INEX Settlement Agreement; (2) conditionally certifying an INEX settlement class; (3) issuing class notice; and (4) scheduling a settlement fairness hearing. [Doc. 8628].

The Settlement Agreement and the Joint Motion and Order are objectionable on a fundamental level and on many issues. Front and center amongst those issues is Section 11 of the INEX Settlement Agreement, which asks this Court to:

> 11.2.2   Bar the assertion by *any* entity or person against the Settling Defendants of *any* contribution, indemnification, subrogation, or *other claims* concerning (i) the Chinese Drywall claims against INEX or (ii) the Settlement.

INEX Settlement Agreement at p. 26, Sec. 11.2.2 [Doc. 8628] (emphasis added). Equally objectionable was Paragraph 21 of the Settling Parties' Proposed Order Preliminarily Approving the INEX Settlement Agreement, which reads:

> 21.   Prosecution of the "Related Actions" (including, but not limited to, those listed in Exhibit 1.25 to the INEX Settlement) against INEX, the Insurers and other Settling Defendants shall be stayed pending the settlement proceedings and further Orders of the Court.

*See* Doc. 8628-2 at p. 6.

**Four hundred and twelve** parties formally objected to the INEX Settlement Agreement for various reasons, including the stay requests contained in the Joint Motion and Order. **Fourteen** briefs in objection were filed, several by builders. The Homebuilders' Steering Committee also filed a brief in objection on behalf of MDL builders. Amongst the objections briefed were:

- no typicality or adequacy of representation;
- the INEX Settlement Agreement unfairly releases claims against parties downstream

>   in the chain of commerce from INEX and to the detriment of homebuilders;
>
> • the INEX Settlement Agreement lacks sufficient information on the amount, allocation, and exhaustion of the primary insurance proceeds;
>
> • the homebuilder parties are unfairly left vulnerable to homeowner claims, unlike the all other parties downstream in the chain of commerce from INEX;
>
> • the proposed bar order unfairly precludes the prosecution of Chinese-manufactured drywall-related claims against INEX and parties downstream in the chain of commerce from INEX (excepting homebuilders) in any matter, even for opted-out parties;
>
> • **the propriety of the stay and/or bar order to related state court actions**; and
>
> • certain terms of the INEX Settlement Agreement are unclear.

*See* Preliminary Approval Order at p. 8 [Doc. 8818].

On May 6, 2011, this Court heard oral argument on the Joint Motion. During the hearing, this Court expressed significant concern over the bar and stay requests contained in the Joint Motion and Order, indicating that those requests could be **deal breakers** for the proposed settlement agreement.[2] On May 13, 2011, despite that expressed concern, and over the objections of hundreds of parties, including Southern Homes and the Homebuilders' Steering Committee, this Court issued the Preliminary Approval Order. *See id.* The Preliminary Approval Order contains the following provision to which Southern Homes aims the instant Motion pursuant to Rules 52 and 59:

>   8. Prosecution of the Related Actions (including, but not limited to, those identified in Exhibit 1.25 to the INEX Settlement) against INEX, the Insurers and the other Settling Defendants shall be stayed pending the settlement proceedings and further Orders of the Court.

---

[2] Southern Homes requested a copy of the hearing transcript before leaving the courtroom the day of the hearing. Southern Homes has since been informed that the transcript will not be available until after this Memorandum is filed. Accordingly, Southern Homes reserves its right to supplement this Memorandum with excepts of the hearing transcript.

*See id.* at p. 12.  Paragraph 8 is identical to the Paragraph 21 of the Proposed Order.

Southern Homes first-party suit against INEX and its drywall installer (a "Downstream Releasee" under the INEX Settlement Agreement), *Southern Homes, LLC, et al. v. Interior/Exterior Building Supply, LP, et al.*, is included in Exhibit 1.25 to the INEX Settlement Agreement.  *See* INEX Settlement Agreement at p. 17 of Ex. 1.25 [Doc. 8628].

The Preliminary Approval Order shows that this Court did not treat the stay requests of the Joint Motion and Order with the heightened level of scrutiny that requests for injunctive relief require, which the requests most certainly were.  The Preliminary Approval Order states "*[w]ithout issuing substantive findings on the [INEX Settlement] Agreement and objections thereto*, the Court finds that the nature of the objections render them appropriate for consideration at the final fairness hearing."  *Id.* at p. 9 (emphasis added).

## II.     LAW & ARGUMENT

"Ordering the parties not to proceed is tantamount to *enjoining* the proceedings." *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 805 (9th Cir. 2002) (emphasis added). Moreover, "an injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seeds Farms*, 130 S.Ct. 2743, 2761 (2010).

Rule 52 of the Federal Rules of Civil Procedure requires that "[i]n granting or refusing an interlocutory injunction, the court *must* . . . state the findings and conclusions that support its action."  FED. R. CIV. P. 52(a)(2) (emphasis added).  Rule 52 also authorizes Southern Homes to file this motion within 28 days after the entry of the Preliminary Approval Order to request that the Court "amend its findings–or make additional findings–and . . . amend the judgment accordingly."  *Id.* at 52(b).  Southern Homes' Rule 52 motion "may accompany a motion for new trial under Rule

6

59." *Id.*

Rule 59 of the Federal Rules of Civil Procedure "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612 (5th Cir. 1985). Trial courts should grant a motion for new trial when "it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999). Rule 59 provides this Court with discretion to grant a motion for new trial on the issue of addressed above, and this Court should so grant because it is clear that prejudicial error has crept into the record and substantial justice has not been done to builders, like Southern Homes, that have been targeted by this Court's stay order. *See* FED. R. CIV. P. 59 (providing that "the court may, on motion, grant a new trial on all *or some* of the issues–and to any party") (emphasis added).

### A.    The Stay Order Is Procedurally Deficient.

#### 1.    The Settling Parties Failed to Carry Their Burden of Proof for a Preliminary Injunction to Issue.

This judicial circuit requires certain elements be satisfied before injunctive relief may issue. None of those requirements have been addressed by the Settling Parties, much less met. The four elements of a preliminary injunction are: (1) substantial likelihood of success on the merits; (2) substantial threat that plaintiff will suffer irreparable injury; (3) injury outweighs any harm the injunction might cause the defendant; and (4) injunction is in the public interest. *See Women's Medical Center of Northwest Houston v. Bell*, 248 F.3d 411, 419 (5th Cir. 2001).

The Joint Motion and Memorandum in Support of the INEX Settlement Agreement address *none* of these factors. *See* Doc. 8628. Moreover, the Settling Parties did not even attempt to prove these elements at the Preliminary Approval Hearing on May 6, 2011. Hence, the Stay Order should

not have been granted, and the Preliminary Approval Order should be amended accordingly, or, in the alternative, this Court should grant a new trial on the issue.

### 2. The Stay Order Does Not Meet The Statutory Requirements of Rule 65 of the Federal Rules of Civil Procedure.

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of injunction orders. It requires that "every order granting an injunction and every restraining order must: (A) *state the reasons why it issued*; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required. FED R. CIV. P. 65(d) (emphasis added). Paragraph 8 of the Preliminary Approval Order is deficient under Rule 65(d)(1)(A) because the Court issued it without giving reasons and, instead, appears to have issued the stay order simply as a matter of course. As stated in the Preliminary Approval Order: "*[w]ithout issuing substantive findings on the [INEX Settlement] Agreement and objections thereto*, the Court finds that the nature of the objections render them appropriate for consideration at the final fairness hearing." *Id.* at p. 9 (emphasis added). For this reason also, the Preliminary Approval Order should be amended, or, in the alternative, this Court should grant a new trial on the issue.

### B. The Great Weight of Jurisprudence Under The Anti-Injunction and All Writs Acts Counsels Strongly Against the Stay Order

There is no readily apparent jurisdictional basis for this Court to stay a parallel state court Chinese-manufactured drywall proceeding, especially *in personam* actions, such as *Southern Homes, LLC v. Interior/Exterior Building Supply, LP, et al*. Moreover, the Court has not indicated the legal grounds upon which it has based Paragraph 8 of the Preliminary Approval Order. The All Writs Act does *not* create subject matter jurisdiction for courts where such jurisdiction would otherwise be lacking. *Henson v. Ciba-Geigy Corp*., 261 F.3d 1065 (11th Cir.2001). The Act provides courts with

8

only a procedural tool to enforce jurisdiction they have already derived from another source. *Brittingham v. Commissioner*, 451 F.2d 315, 317 (5th Cir.1971). The Act's restrictive counterpart, the Anti-Injunction Act is based upon considerations of federalism and speaks to a question of high public policy. It is not a minor hill to be easily overcome; "it is a fortress which may only be penetrated through the portals that Congress has made available." *Negrete v. Allianz Ins. Co.*, 523 F.3d 1091, 1100 (9th Cir. 2008).

Although the stay order is directed at Southern Homes and not the state court, "it is settled that the prohibitions of [The Anti-Injunction Act] cannot be evaded by addressing the order to the parties." *Atl. Coast Line RR Co. v. Bhd. of Locomotive Eng'rs*, 398 US 281, 287 (1970). "The question of whether to stay proceedings in a state court is *never* one to be taken lightly, as it impinges on the very delicate balance struck between the federal and state judicial systems." *Wesh v. Folsum*, 6 F.3d 1465, 1469 (11th Cir. 1993) (emphasis added). The Act is "*an absolute prohibition* against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Id.* at 286 (emphasis added). "A Court of the United States may *not* grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 USC § 2283 (Anti-Injunction Act). Thus, federal courts are presumptively barred from issuing stay orders, such as Paragraph 8 of the Preliminary Approval Order unless it fits within one of the Anti-Injunction Act's three exceptions, which are: (i) as expressly authorized by Act of Congress, (ii) where necessary in aid of the court's jurisdiction, or (iii) to protect or effectuate its judgments. *Id.* Neither this Court nor the Settling Parties have indicated which, if any, of these exceptions might allow Paragraph 8 of the Preliminary Approval Order to issue.

Regardless, "since the statutory prohibition against such injunctions in part rests in part on the fundamental constitutional independence of the States and their courts, the exceptions in the Act *must* be narrowly construed." *Atl. Coast Line RR v. Brotherhood of Locomotive Engineers*, 398 US 281, 287 (2970) (emphasis added). "Any doubts as to the propriety of a federal injunction against state court proceedings *should* be resolved in favor of permitting the state courts to proceed in a orderly fashion to finally determine the controversy." *Id.* at 297. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion." *Id.*

    **1.** ***In re First Commodity Corp.*, 89 BR 283 (D. Mass 1988), Provides On-Point Jurisprudential Guidance for This Court**.

First Commodity Corporation of Boston ("FCCB") moved pursuant to the All Writs Act and the Anti-Injunction Act for a stay of all proceedings brought against it by former customers until the federal district court decided whether to approve finally a proposed settlement of a conditionally certified class action. 89 BR at 284-286. The court conditionally certified two classes for settlement purposes in a multi-district litigation against FCCB. *Id.* Notice of the class action had been sent to class members. *Id.* A $5,300,000 escrow account had been established by FCCB to fund the proposed settlement. *Id.* The court noted that "the parties and the court have made enormous efforts in connection with the evolution of the proposed settlement and . . . in determining whether certain conditions of the proposed settlement have been met." *Id.*

FCCB moved for a stay pursuant to the All Writs and Anti-Injunction acts of all actions, including without limitation, arbitration actions and state and federal court actions involving claims of class members against it. *Id.* The stay would have enjoined all actions pending the court's final determination on whether to approve the proposed settlement. *Id.*

10

Considering the stay request, the court noted the standard applicable for such injunctive relief: "a stay or injunction is appropriate if necessary to prevent a parallel proceeding from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide the case. . . . Stays or injunctions are particularly appropriate when parallel proceedings have been determined to be *vexatious* or *harassing* efforts to undermine matters substantially resolved by the federal courts." 89 BR at 287 (emphasis added).

The court denied FCCB's request for injunctive relief because the state court proceedings were not vexatious, harassing, or an interference to the federal MDL or its settlement efforts, as the court found:

> The cases pending in the state courts do not represent a vexatious effort to interfere with the federal litigation or the proposed settlement. They are apparently largely cases which pre-dated the preliminary approval of the settlement and represent good faith efforts of customers to vindicate their perceived rights.
>
> In addition, it does not appear that the state court litigation threatens to seriously impair this court's flexibility to decide the multi-district litigation and implement its judgments. There has not been, to the court's knowledge, any effort in state court to enjoin this federal litigation or the proposed settlement.

The court then concluded:

> Recognition of the vital role of the states in our federal system and considerations of comity . . . suggest that a federal court should enjoin a parallel state proceeding only in true exceptional, threatening circumstances. As the Supreme Court has stated, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coastline RR*, 398 US at 297. . . . It is, therefore, not now appropriate to grant the request for a stay of the state court proceedings.

Likewise, parallel, state-court suits against INEX or other defendants downstream form INEX, like *Southern Homes, LLC v. Interior/Exterior Building Supply, LP., et al.*, should not be

11

stayed pending final approval of the INEX Settlement Agreement. As the Court can see from a review of Southern Homes' state court petition, which is attached, and its only motions in that proceeding, which are also attached, Southern Homes has not interfered with this Court's multi-district proceeding. Southern Homes has not moved for injunctive relief against INEX or any other Settling Defendant. Southern Homes has made only the good faith effort to have its vested rights determined by the venue of its choice, a Louisiana state court.

### 2. *Retirement Systems of Al. v. JP Morgan Chase & Co.*, 386 F.3d 419 (2d Cir. 2004), Provides Further Reason to Grant a New Trial, or, in The Alternative, to Amend The Preliminary Approval Order.

WorldCom filed for bankruptcy. 386 F.3d at 422-425. Thereafter, defendants in various state court actions removed those actions to federal court on the ground that they were related to WorldCom's bankruptcy. *Id.* The Judicial Panel on Multi-District Litigation ordered that these actions be centralized in a federal district court in New York. *Id.* The district court certified a class and shortly thereafter set a trial date for the class action. *Id.* Retirement Systems filed a related action in an Alabama state court approximately two months after the first class action was filed in the district court. *Id.* The Alabama court set a trial date that would have occurred earlier than that of the district court. *Id.* Defendants in the federal class action asked the federal court to stay the Alabama state court action pending the resolution of the federal trial. *Id.* The object of the injunction was to protect the MDL's trial date. *Id.* The district court granted that request, but the court of appeals reversed.

The court of appeals began its analysis by reciting the general jurisprudence surrounding the Anti-Injunction and All Writs Acts, noting that:

> The Supreme Court in *Kline v. Burke Construction Co.*, 260 US 226 (1922), addressing the propriety of enjoining state court actions under the All Writs Act,

12

> distinguished *in rem* from *in personam* actions. A federal court with jurisdiction over an *in rem* action may enjoin a later-filed state court action involving the same *res*. . . . A controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. . . . Where the action first brought is *in personam* and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded.  the Court concluded that a federal district court, hearing a suit in equity arising from a contract dispute, lacked authority under the All Writs Act to enjoin a parallel action in Arkansas state court for breach of contract.
>
> * * *
>
> Since *Kline*, the Supreme Court has *never* held that a district court may enjoin, as necessary in aid of jurisdiction, a parallel *in personam* state action. *See Vendo Co. v. Lektro—Vend Corp.*, 433 US 623, 642 (1977).

386 F.3d at 426 (emphasis added). The court then rejected the theory that a federal court may enjoin parallel state court proceedings simply because the federal court presides over an MDL or that MDL class actions should be regarded as a *rem*. *Id.* at 427-428. The court also cited *Venitron Corp. v. Benjamin*, 440 F.2d 105, 108 (2d Cir. 1971) because:

> There is no reason why a state court cannot or should not determine issues of fact and state law relevant thereto as they come up in the state litigation. The subsequent effect of collateral estoppel, far from requiring the federal court to stay proceedings in the state court, is a result which should be welcomed to avoid the task of reconsidering issues which have already been settled by another competent tribunal.

*Id.* at 429-430. The court then analyzed the jurisprudence of other United States circuits, including the Fifth Circuit case *Newby v. Enron Corp.*, 338 F.3d 467 (5th Cir. 2003), which upheld an injunction order against parallel state court proceedings. *Id.* The court distinguished *Newby* because it involved a state court proceeding that issued vexatious injunctions against parties to the federal MDL that interfered with the federal proceeding. *Id. The* court concluded that there was no corresponding threat in this case but "only the risk of subjecting defendants to simultaneous litigation in federal and state courts—a familiar feature of our federal system." *Id.* For the same

13

reasons, Southern Homes' parallel *in personam* action, which has existed for nearly as long as this MDL, should not be stayed.

### 3. The Jurisprudence of the United States Fifth Circuit Court of Appeals Does Not Direct This Court to Issue the Stay Order.

Southern Homes is aware of only one United States Firth Circuit Court of Appeals case that even somewhat addresses the facts at issue here, other than *Newby*, which is clearly distinguishable for the reasons given by the *Retirement Systems* court. That case is *In re Corrugated Container Antitrust Lit.*, 659 F.2d 1332 (5th Cir. 1981). *In re Corrugated Containers*, like, *Newby*, does not control here, and its holding must be limited the unique facts of that case. In short, *In re Corrugated Containers* is fundamentally different form this case because the state court proceeding in question there issued injunction orders against parties to the federal MDL from settling without the approval of the state court. 659 F.2d at 1335. Again, Southern Homes has made no such motion in its parallel, state-court proceeding.

## III. CONCLUSION

Southern Homes moves this Court to amend the Preliminary Approval Order, or, in the alternative, to grant a new trial on the issue of Paragraph 8 of that Order. Whichever action this Court takes, Southern Homes' first-party suit against INEX and its drywall installer, Graf's Drywall, should not be stayed. *Southern Homes, LLC, v. Interior/Exterior Building Supply, LP, et al.*, is a parallel, *in personam*, Louisiana state court action that has existed since just days after the creation of this MDL. Southern Homes' state-court action has presented no cause for this Court to include it within the reach of Paragraph 8 of the Preliminary Approval Order. If anything, Southern Homes' state-court action should be welcomed to avoid the task of reconsidering Louisiana state law issues

which will already have been settled by another competent tribunal.  Southern Homes state-court action should not, for all these reasons and those described more fully above, be the subject of this Court's stay order.

                                          Respectfully submitted,

                                          /s/ James M. Garner
                                          JAMES M. GARNER, T.A. (# 19589)
                                          MARTHA Y. CURTIS (# 20446)
                                          MATTHEW C. CLARK (#31102)
                                          **SHER GARNER CAHILL RICHTER**
                                          **KLEIN & HILBERT, LLC**
                                          909 Poydras Street, 28th Floor
                                          New Orleans, Louisiana  70112-1033
                                          Telephone: (504) 299-2100
                                          Facsimile:  (504) 299-2300

                                          COUNSEL FOR SOUTHERN HOMES, LLC;
                                          SPRINGHILL, LLC; TALLOW CREEK, LLC;
                                          AND ADRIAN KORNMAN

## **CERTIFICATE OF SERVICE**

       I hereby certify that the above and foregoing Motion to Alter or Amend, or, in the Alternative, for a New Trial has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of May, 2011.

                                          /s/ James M. Garner
                                          JAMES M. GARNER