UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**RESPONSE OF THE PSC, CLASS COUNSEL AND SUBCLASS COUNSEL IN OPPOSITION TO EMERGENCY MOTION FOR PARTIAL NEW TRIAL REGARDING STAY ISSUED IN THE PRELIMINARY APPROVAL ORDER, OR, IN THE ALTERNATIVE, MOTION TO ALTER OR AMEND THE ORDER**

**I.     INTRODUCTION**

On May 6, 2011, this Court held a hearing on the Joint Motion of proposed Settlement Class Counsel, the Plaintiffs' Steering Committee ("PSC"), Counsel for Interior/Exterior Building Supply, L.P. ("InEx"), and Counsel for InEx's insurers, Arch Insurance Company and Liberty Mutual Fire Insurance Company ("Insurers"), for Preliminary Approval of the InEx Settlement and Conditional Certification of an InEx Settlement Class brought pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3) and 23(e).  At the hearing the Court heard argument from all interested parties and considered numerous objections filed on the docket. Having filed an objection to the InEx settlement (Rec. Doc. No. 8699), Attorney James Garner appeared at the preliminary approval hearing on behalf of Defendants Southern Homes, LLC, Tallow Creek, LLC and Springhill, LLC (collectively, "Southern Homes"), and made all of the same arguments that he now repeats in the current motion to amend (Rec. Doc. No. 8848).

Upon consideration of the Joint Motion, the accompanying Memorandum of Law, with exhibits, extensive briefing on the objections thereto and oral argument, on May 13, 2011, the Court preliminarily approved the InEx settlement consisting of $8 million of primary insurance

proceeds and the assignment to the class of $72 million of available excess insurance proceeds and conditionally certified the InEx settlement class ("Preliminary Approval Order") (Rec. Doc. No. 8818). The Court found the settlement to be "fair, reasonable and adequate, as negotiated and entered into at arm's length, in good faith, and free of collusion and as being within the range of possible judicial approval at a prospective Fairness Hearing." *Id*. at 7. Accordingly, the Court ordered notice to be disseminated to the class and published in a variety of media and on the internet, consistent with Due Process, on or before June 20, 2011. Further, the Court scheduled a Fairness Hearing to take place on October 27, 2011. *See Id*. at 9-10, 11. The Court ruled specifically that "none of the ... objections prevent[ed] preliminary approval of the Agreement" and that "the nature of the objection[s] render them appropriate for consideration at the final fairness hearing." *Id*. at 8-9.

In compliance with the Court's deadlines for publication of class notice, the PSC and the Insurers for InEx reserved space with sufficient lead time for multiple legal advertisements of the InEx summary notice in the various publications set forth in the Preliminary Approval Order. The parties were required to enter into contracts for the expenditure of more than $180,000 to accomplish successful publication of the InEx notice, and they have incurred substantial monetary outlays.

Displeased with the Court's ruling preliminarily approving the InEx settlement and ordering the dissemination of notice to the class, the Southern Homes Defendants have moved this Court to reconsider its Preliminary Approval Order. However, they present nothing new in terms of factual material or legal argument to warrant a change in the Court's ruling. Nor do they point to any errors by the Court. Both the case law and the facts presented to the Court support preliminary approval of the InEx Settlement Agreement, conditional certification of the

2

InEx settlement class and dissemination of class notice. Moreover, since the date of the Court's order on May 13, 2011, the PSC and the InEx Insurers have expended significant sums to comply with critical advertising deadlines and comport with Due Process. Those funds cannot be retrieved for the benefit of the class. Thus, reconsideration of the Preliminary Approval Order would harm not only the PSC, InEx, and InEx's Insurers, but also the InEx class.

## II. ARGUMENT

### A. This Court Has Jurisdiction and Authority to Preliminarily Approve the INEX Settlement Agreement as Written.

As noted by the Court in its Preliminary Approval Order, the "[r]eview of a proposed class action settlement generally involves two hearings," the first of which is a "preliminary fairness evaluation." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004). Preliminary Approval Order at 4. Indeed, "it is routine to conduct a preliminary fairness evaluation prior to the issuance of notice. *See e.g. Cope v. Duggins*, 2001 WL 333102, at *1 (E.D. La. Apr. 4, 2011); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1997); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.6 (2004) ('The two-step process for evaluation of proposed settlements has been widely embraced by the trial and appellate courts.')." *Id*. The Court has recognized the purpose of this process as follows: "The preliminary hearing ... is held to evaluate the likelihood that the Court would approve the settlement during its second review stage, the full fairness hearing." *Cope v. Duggins*, 2001 WL 333102, at *1 (E.D. La. Apr. 4, 2001) (citing MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 (1995))." *Id*. at 5.

In this case the Court has preliminarily found the InEx settlement to be "fair, reasonable and adequate," and that "the nature of the objection[s] [to the settlement] render them

appropriate for consideration at the final fairness hearing." *Id*. at 8-9.  The Fairness Hearing has been scheduled for the fall.  Southern Homes Defendants, like all objectors to the settlement, will have ample opportunity to have their complaints heard at the final hearing.

The law is clear that this MDL Court has jurisdiction and authority to stay all litigation, including state court suits, against InEx pending the final Fairness Hearing.  The MDL Court's fundamental authority vis-à-vis state courts derives from the Supremacy Clause of the United States Constitution, which provides that:  "This Constitution, and the laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. Art. VI, cl. 2.  Congress has provided statutory constructs delimiting the ability of the federal district courts to protect their authority over competing state court rulings.

Pursuant to the All Writs Act, 28 U.S.C. § 1651, the MDL Court has the authority to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law."  Under the All Writs Act, the MDL Court has the power to protect its continuing jurisdiction over complex litigation and ongoing global settlement efforts from competing state court litigation that has the potential to derail the achievements of the Court and that may infringe upon the rights of class members before the Court.

The Anti-Injunction Act, 28 U.S.C. § 2283, a complement to the All Writs Act, also empowers the MDL Court to enjoin state court proceedings where "necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  Courts liberally invoke the "necessary in aid of its jurisdiction" exception "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility

and authority to decide that case." *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970); *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2nd Cir. 1985) (same); *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334 (5th Cir. 1981), *cert. denied*, 456 U.S. 936 (1982) (same); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E.&S.D.N.Y. 1990) (same); Martin H. Redish, *The Anti-Injunction Statute Reconsidered*, 44 U. Chi. L. Rev. 717, 754 (1977) ("necessary in aid of jurisdiction" exception should be construed "to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory."); *In re Diet Drugs*, 282 F.3d 220, 235 (3rd Cir. 2002) (recognizing "a category of federal cases for which state court actions present a special threat to the jurisdiction of the federal court" – namely, where "a federal court [is] entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts...."); *Galanti v. Goodyear Tire & Rubber, Co.*, Civ. Action No. 03-209, slip op. at 2 (D.N.J. Mar. 17, 2004) (attached as Exhibit "A" hereto) ("Court is authorized to issue an injunction enjoining parallel state litigation when that parallel litigation will pose a genuine threat to the jurisdiction of the federal court, and is necessary and appropriate to aid in a federal court's jurisdiction.").

An injunction against competing or parallel state court proceedings is appropriate to allow the federal court to "legitimately assert comprehensive control over complex litigation," *United States v. International Brotherhood of Teamsters*, 907 F.2d 277, 281 (2nd Cir. 1990), especially "where a federal court is on the verge of settling a complex matter, and state court proceedings undermine its ability to achieve that objective," *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2nd Cir. 1990). In this case, not only has the InEx global class settlement been granted preliminary approval but notice is being issued to the class,

5

and a final fairness hearing has been scheduled.  *See White v. National Football League*, 41 F.3d 402, 409 (8th Cir. 1994) ("the ability to facilitate ... settlement by enjoining related suits of absent class members is ancillary to jurisdiction over the class action itself"), *cert. denied*, 515 U.S.1137 (1995); *James v. Bellotti*, 733 F.2d 989, 994 (1st Cir. 1984) (provisionally approved settlement justifies injunction against competing state court cases); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 201, 204 (3rd Cir. 1993) (where "the district court approved the dissemination of notice and commenced the opt out period" in complex class action, the injunction prohibiting the prosecution of a competing state class action was affirmed, noting that foreign action "would be disruptive to the district court's ongoing settlement management[,]" "would jeopardize the settlement's fruition[,]" and would "present[] a likelihood that [class] members ... [would] be confused as to their membership status in the dueling law suits."); *Diet Drugs*, 282 F.3d at 235 (finding "the complexity of the case to be a substantial factor in justifying the injunction"); *Corrugated Container*, 659 F.2d at 1334 (upholding validity of injunction issued by district court overseeing multidistrict litigation against actions by same plaintiffs in state court, as necessary in aid of district court's jurisdiction); *Newbe v. Enron Corp.*, 338 F.3d 467, 474-75 (5th Cir. 2003) (where "injunctions sought in state court threatened to interfere with the federal court's orderly handling of the massive federal litigation," All Writs Act properly invoked); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) (to protect its discovery orders, federal court has "power under the All Writs Act" to enjoin state court litigation and "'to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction'"), *quoting United States v. New York Telephone*, 434 U.S. 159, 173 (1977); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir.), *cert. denied*, 506 U.S. 953 (1992) (approving settlement barring competing actions in state court

alleging claims similar to those in the federal action); *In re Granada Partnership Sec. Litig.*, 803 F.Supp. 1236, 1246 (S.D. Tex. 1992) (enjoining "commencement, continuance and/or prosecution of any and all proceedings in federal or state court" by class members in connection with preliminary and final approval of class settlement); *Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. at 37 ("An injunction of all proceedings is necessary to implement the terms of the settlement and to protect the court's jurisdiction over the class action."); *Galanti*, slip op. at 2 (injunction entered to prevent parallel litigation from proceeding to trial after court had already granted preliminary approval to class settlement, scheduled fairness hearing and notice was disseminated).

In *Baldwin-United*, a consolidated, multidistrict, class action involving more than 100 federal lawsuits, the Second Circuit upheld an injunction issued by the MDL court that prohibited any person with knowledge of the court's order from "commencing any action or proceeding" against any of the defendants in the MDL that might "in any way affect the right of any plaintiff or purported class member in any proceeding under" the MDL. *Baldwin-United*, 770 F.2d at 331. Competing state actions were found to "frustrate the district court's efforts to craft a settlement" in that litigation. *Id*. at 337. Thus, in recognition of the "utility of the multidistrict forum [as] ideally suited to resolving ... broad claims," and in order to protect its ability to settle complex litigation, the court held that the All-Writs Act empowers an MDL court to issue an injunction against actions in state court "even before a federal judgment is reached...." *Id*. at 335, 337 & 338. *See also In re School Asbestos Litig.*, 1991 WL 61156, *1-*2 (E.D. Pa. Apr. 16, 1991), *aff'd mem.*, 950 F.2d 723 (3rd Cir. 1991) ("[W]here the potential for resolution is gaining momentum ... this court's ability to oversee a possible settlement would be 'seriously impaired' by the continuing litigation of parallel state actions....").

Courts have recognized that the jurisdiction of a multidistrict court or a class action proceeding is "analogous to *in rem* actions given their magnitude and complexity." *Joint E. & S. Dist. Asbestos*, 134 F.R.D. at 38; *Baldwin-United*, 770 F.2d at 337 (class action proceeding was "so far advanced that it was the virtual equivalent of a res over which the district judge required full control."); *Battle v. Liberty National Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) ("makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered"); *Corrugated Container*, 659 F.2d at 1334-35 (injunction proper because "complicated antitrust action ... required a great deal of the district court's time and necessitate[d] its ability to maintain a flexible approach in resolving the various claims of the many parties."). Under these circumstances, an injunction against parallel or conflicting state court proceedings would be proper, "because the 'exercise by the state court of jurisdiction over the same *res* necessarily impairs, and may defeat, the jurisdiction of the federal court already attached,' [and] the federal court is empowered to enjoin any state court proceeding affecting that res." *Baldwin-United*, 770 F.2d at 336, *quoting Kline v. Burke Construction Co.*, 260 U.S. 226, 229 (1922).

The InEx settlement is a res over which this Court has jurisdiction. It is within the Court's power to protect that res for the benefit of the InEx settlement class. Any order that might conflict with the class proceedings before this Court may be appropriately enjoined under the law.

> **B.     This MDL Court Has a Duty to Act as Efficiently as Possible and Prohibit Efforts That Impede the Court's Oversight of the InEx Settlement**

In consideration of the fact that the districts court's power to control multidistrict litigation is derived by statute, 28 U.S.C. § 1407, courts have held that "with that power comes

8

the duty to exercise it as efficiently as possible." *Winkler*, 101 F.3d at 1202; *Marrese v. American Academy of Orthopaedic Surgeons*, 726 F.2d 1150, 1161 (7th Cir. 1984) (en banc), *rev'd in part on other grounds*, 470 U.S. 373 (1985). "Indeed, an express purpose of consolidating multidistrict litigation for discovery is to conserve judicial resources by avoiding duplicative rulings." *Winkler*, 101 F.3d at 1202; *Matter of Orthopedic Bone Screw Prod. Liab. Litig.*, 79 F.3d 46, 48 (7th Cir. 1996). Thus, "[w]here a litigant's success in a parallel state court action would make a nullity of the district court's ruling[s], and render ineffective its efforts effectively to manage the complex litigation at hand, injunctive relief is proper." *Winkler*, 101 F.3d at 1202.

It is prudent, therefore, for the Court to enjoin all proceedings that may impede the InEx class settlement before the Court.

### C. This MDL Court Has Inherent Authority to Manage its Affairs and Control its Docket Expeditiously

Even beyond the All Writs Act, "[t]he concept that district courts exercise procedural authority outside the explicit language of the rules of civil procedure is not frequently documented, but valid nevertheless." *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 651 (7th Cir. 1989). Indeed, "a district court's ability to take action in a procedural context may be grounded in 'inherent power, governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *G. Heileman*, 871 F.2d at 651, *quoting Link v. Wabash R.R.*, 370 U.S. 626 (1962). Certainly, this Court is vested with the power to manage the resolution of this litigation.

"The Supreme Court has long held that 'the inherent powers of federal courts are those

9

which 'are necessary to the exercise of all others.'" *G. Heileman*, 871 F.2d at 651 n.3, *quoting Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980). "Inherent authority remains the means by which district judges deal with circumstances not proscribed or specifically addressed by rule or statute, but which must be addressed to promote the just, speedy, and inexpensive determination of every action." *G. Heileman*, 871 F.2d at 653. In *G. Heileman*, the district court sanctioned the corporate defendant for failing to send a corporate representative to settlement conference as ordered. The Seventh Circuit held that the district court did not abuse its discretion by ordering a represented litigant to appear before it in person at the pretrial conference to discuss the posture and settlement of the case. *Id*. at 655.

      Federal Rule of Civil Procedure 83 provides:

> (b) Procedures When There is No Controlling Law. A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district....

Fed.R.Civ.P. 83(b). Thus, Rule 83 also provides authority for the Court to stay all litigation against InEx pending the final Fairness Hearing.

     "A federal court certainly has the power to issue any order necessary to preserve its ability to manage and adjudicate a case or controversy properly before it. Without such power, the federal judiciary would be crippled." *In re Novak*, 932 F.2d 1397, 1403 (11th Cir. 1991). The Eleventh Circuit in *Novak*, explained "inherent power" as "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 1406, *quoting Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962). "Such powers are 'essential to the administration of justice.'" *Novak*, 932 F.2d at 1406, *quoting Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795 (1987).

In the present case, the Court's inherent power and control over the litigation and the class settlement process will be harmed by any conflicting orders entered by other courts. As such, this Court must maintain control over the parties, their counsel, the InEx class action and absent InEx class members, which warrants the stay of all litigation against InEx.

### III.     CONCLUSION

As the Court held in *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 201, 204 (3rd Cir. 1993), "once the district court approve[s] the dissemination of notice and commence[s] the opt out period," an injunction against all potential conflicting, competing or confusing parallel litigation may be issued under the All Writs Act (emphasis added). For this and all of the other foregoing reasons, the Motion of the Southern Homes Defendants to amend or alter the Preliminary Approval Order should be denied.

Respectfully submitted,

Dated: May 20, 2011  /s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel in MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Dawn M. Barrios | BECNEL LAW FIRM, LLC |
| BARRIOS, KINGSDORF & CASTEIX, LLP | P.O. Drawer H |
| 701 Poydras Street, Suite 3650 | 106 W. Seventh Street |
| New Orleans, LA 70139 | Reserve, LA 70084 |
| Phone: (504) 524-3300 | Phone: (985) 536-1186 |
| Fax: (504) 524-3313 | Fax: (985) 536-6445 |
| Barrios@bkc-law.com | dbecnel@becnellaw.com |
| | |
| | Robert C. Josefsberg |
| Daniel E. Becnel, Jr. | PODHURST ORSECK, P.A. |

12

25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
 MATTHEWS, MARTINEZ, GONZALES,
 KALBAC & KANE
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
 ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com


Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
 & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
SEEGER WEISS, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com


Daniel K. Bryson
LEWIS & ROBERTS
3700 Glenwood Avenue, Suite 410

Raleigh, NC 27612  
Phone: (919) 981-0191  
Fax: (919) 981-0431  
dkb@lewis-roberts.com  

Richard J. Serpe, Esquire  

LAW OFFICES OF RICHARD J. SERPE  
Crown Center, Ste. 310  
580 East Main Street  
Norfolk, VA 23510-2322  
rserpe@serpefirm.com  

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis  
HAUSFELD LLP  
1700 K Street, N.W Suite 650  
Washington, DC 20006  
Phone: (202) 540-7200  
Fax: (202) 540-7201  
rlewis@hausfeldllp.com  

Jeremy W. Alters  
ALTERS LAW FIRM, P.A.  
4141 N.E. 2nd Avenue  
Suite 201  
Miami, FL 33137  
Phone: (305) 571-8550  
Fax: (305) 571-8559  
jeremy@alterslaw.com  

Andrew A. Lemmon  
LEMMON LAW FIRM, LLC  
P.O. Box 904  
15058 River Road  
Hahnville, LA 70057  
Phone: (985) 783-6789  
Fax: (985) 783-1333  
andrew@lemmonlawfirm.com  

## CLASS COUNSEL

Arnold Levin  
LEVIN, FISHBEIN, SEDRAN & BERMAN  
510 Walnut Street, Suite 500  
Philadelphia, PA 19106  
Phone: (215) 592-1500  
Fax: (215) 592-4663  
Alevin@lfsblaw.com  

Russ M. Herman, Esquire (Bar No. 6819)  
HERMAN, HERMAN, KATZ & COTLAR, LLP  
820 O'Keefe Avenue  
New Orleans, Louisiana 70113  
Phone: (504) 581-4892  
Fax: (504) 561-6024  
Rherman@hhkc.com

**SUBCLASS COUNSEL**

| | |
|---|---|
| Gerald E. Meunier<br>GAINSBURGH, BENJAMIN, DAVID, MEUNIER<br> & WARSHAUER, LLC<br>2800 Energy Centre, 1100 Poydras Street<br>New Orleans, LA 70163-2800<br>Phone: (504) 522-2304<br>Fax: (504) 528-9973<br>gmeunier@gainsben.com<br>*Proposed Louisiana Subclass Counsel* | James Robert Reeves<br>LUMPKIN & REEVES<br>160 Main Street<br>Biloxi, MS 39530<br>Phone: (228) 374-5151<br>Fax: (228) 374-6630<br>jrr@lumpkinreeves.com<br>*Proposed Non-Louisiana Subclass Counsel* |

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 20th day of May, 2011.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*Co-counsel for Plaintiffs*