### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL                    MDL No. 02047
          PRODUCTS LIABILITY LITIGATION                    SECTION L

                                          JUDGE FALLON
                                          MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:

KENNETH and BARBARA WILTZ,
*et al., Plaintiffs,*
v.
BEIJING NEW BUILDING MATERIALS
PUBLIC LTD. CO., *et al., Defendants,*
Case No. 10-361
_____/

### DEFENDANT ARANDA HOMES INC.'S CROSS CLAIM AGAINST
### TAISHAN GYPSUM CO. LTD. AND TAIAN TAISHAN PLASTERBOARD CO. LTD.[1]

COMES NOW Defendant/Cross-Plaintiff, Aranda Homes, Inc. ("**Aranda**"), by and through its undersigned counsel, and alleges for its Cross-Claim[2] against Defendants/Cross-Defendants Taishan Gypsum Co. Ltd. ("**TG**") and Taian Taishan Plasterboard Co. Ltd. ("**TTP**") (collectively, the "**Taishan Cross-Claim Defendants**"), as follows:

### CROSS-CLAIMS AGAINST THE TAISHAN CROSS-CLAIM DEFENDANTS

#### The Parties, Jurisdiction and Venue

1.      This is an action for damages within the monetary jurisdiction of this Court.

---

[1]     This Cross Claim Against the Taishan Entities is filed in conjunction with Defendant Aranda Homes, Inc.'s Cross Claim filed on December 28, 2010 [DE 6736].  The claims raised herein are in addition to, and do not waive or supercede, the claims raised in Aranda's December 20, 2010 Cross Claim.

[2]     Plaintiffs commenced this action on December 9, 2009 by filing an Omnibus Class Action Complaint in this cause, which was subsequently amended and also expanded by way of intervention (after all modifications, referred to herein as the "Complaint").  In response, Aranda moved to dismiss the Complaint.  These Cross-Claims are therefore being brought to the extent all claims against Aranda are not dismissed in their entirety with prejudice. In the event all of Plaintiffs' claims against Aranda are not dismissed with prejudice, Aranda also expressly reserves the right to raise any and all available defenses and to respond to the Complaint accordingly.

{M3053507;1}

2.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Aranda.

3.      Aranda was and is a Florida corporation doing business in Lee County, Florida, where this cause of action arose.  At all material times, Aranda was a builder of residential homes in Lee County.

4.      Aranda has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Aranda in the construction of their homes was defective and caused damages to Plaintiffs.

5.      Aranda denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.      The Taishan Cross-Claim Defendants have also been named as defendants in the above styled action.  Aranda adopts and incorporates, as if fully set forth herein, paragraphs 507-509 of the Complaint,[3] identifying the Taishan Cross-Claim Defendants and describing the nature of their business activities.

7.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Moreover, this Cross-Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and over the instant Taishan Cross-Claim Defendants.

---

[3]      These paragraph references correspond with Plaintiffs' Amended Omnibus Class Action Complaint (II), filed on March 15, 2010.

{M3053507;1}

## General Allegations

9.      As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Aranda is liable for damages to Plaintiffs.[4]

10.      Plaintiffs allege that the drywall installed in their homes (the **"Homes"**) has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances and Plaintiffs' personal property (the "**Other Property**").

11.      Plaintiffs further allege that the drywall contained in their Homes was manufactured, designed, processed, exported, imported, distributed, and/or sold by the Taishan Cross-Claim Defendants.

12.      Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.      In connection with the construction of certain homes in Lee County, Aranda purchased drywall that was installed in the Homes directly from Banner Supply Co. and/or Banner Fort Myers (together, "**Banner**").

14.      At all material times, Banner knew that the drywall purchased for the Homes was going to be used in construction of residential homes.  Banner knew that Aranda required and expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.*, safe and fit for use in the construction of residential homes.

---

[4]      The named class Plaintiffs and other members of the putative class have asserted claims against Aranda in this Action, as well as other actions in the state and federal courts.  The damages sought by Aranda in this Cross-Claim against the Taishan Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

{M3053507;1}

15.     Upon information and belief, Banner also procured drywall that was installed in the Homes from the Taishan Cross-Claim Defendants, who were manufacturing drywall to be exported to the United States. At all material times, the Taishan Cross-Claim Defendants knew that such drywall was going to be used in the construction of residential homes.

16.     Upon information and belief, in mid-to-late Fall of 2006, Banner knew that some of Banner's customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by one of its Chinese manufacturers emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

17.     Upon information and belief, Banner also conducted tests of the drywall installed in certain South Florida residential homes.

18.     Upon information and belief, Banner did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

19.     Upon information and belief, in a concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Banner entered into a confidential settlement agreement with one of its Chinese manufacturers in January of 2007 (the "**Secret Agreement**").

20.     The Secret Agreement stipulated that the Chinese manfucturer would take back all of Banner's unsold drywall, pay Banner for storing it, and replace Banner's inventory of Chinese drywall with thousands of pieces of drywall made by U.S. manufacturers.  In return, Banner promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

21.     The Secret Agreement purposefully kept consumers, such as Aranda and other builders, contractors and installers, in the dark about the problems with the drywall.

4

22.     Aranda did not know and was not made aware of the problems with the drywall. The drywall manufactured, exported, imported, distributed and/or sold by Banner for use in the construction of the Homes was not altered and/or otherwise substantively changed by Aranda.

23.     For the purpose of this Cross-Claim only, and not constituting an admission of the allegations or liability by Aranda, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

24.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, the Taishan Cross-Claim Defendants had greater knowledge, and/or stood in a better position than Aranda to know, of the drywall's applications, performance, and dangers.

25.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Taishan Cross-Claim Defendants' acts and omissions in manufacturing, exporting, importing, distributing and/or selling the defective drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages to Plaintiffs.

26.     Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent

5

from and/or unconnected with the gypsum drywall product purchased by Aranda for installation in the Homes.

27.     Moreover, Aranda did not know and was never informed by the Taishan Cross-Claim Defendants that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.

28.     Consequently, the Taishan Cross-Claim Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Aranda in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.  Additionally, the Taishan Cross-Claim Defendants' wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

29.     All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

### COUNT 1 –COMMON LAW INDEMNITY
### (Against Taishan Gypsum Co. Ltd. ("TG"))

30.     Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

31.     Plaintiffs, in the Complaint, allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

32.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

{M3053507;1}

33.     Aranda is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by TG.

34.     Aranda is entirely without fault for the injuries alleged by Plaintiffs.

35.     Any injuries suffered by Plaintiffs were due to the acts or omissions of TG.

36.     A special relationship existed between TG and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to TG.  To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG was defective, TG is wholly to blame for Plaintiffs' injuries.

37.     As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of TG to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

38.     If Aranda is found to be liable to Plaintiffs, TG is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as

7

reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Taishan Gypsum Co. Ltd. for compensatory damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

**COUNT 2 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31**
**(Against Taishan Gypsum Co. Ltd. ("TG"))**

39.     Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

40.     This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

41.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

42.     Plaintiffs, in the Complaint, allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

43.     Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, TG would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

44.     Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

45.     To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against TG for its pro rata share of the liability.

{M3053507;1}

46.     TG should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Taishan Gypsum Co. Ltd. for its pro rata share of the liability, if any, found against Aranda in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 3 – EQUITABLE SUBROGATION
### (Against Taishan Gypsum Co. Ltd. ("TG"))

47.     Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

48.     This is an action, stated in the alternative, for equitable subrogation.

49.     Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

50.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

51.     Aranda is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

9

52.     Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

53.     To the extent that Aranda is required to pay damages for any fault of TG to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from TG under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

54.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Taishan Gypsum Co. Ltd. for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 4 – NEGLIGENCE
### (Against Taishan Gypsum Co. Ltd. ("TG"))

55.     Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

56.     Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{M3053507;1}

57.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

58.     Aranda was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by TG.

59.     TG had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TG owed Aranda a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Aranda's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

60.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint,TG knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

11

{M3053507;1}

61.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG breached the duty of care owed to Aranda by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or and ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

62.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TG's duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

63.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TG knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Aranda to substantial liability and damages. If TG had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or

12

could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

64.      Without admitting any liability or damages to Plaintiffs, Aranda was damaged by TG's breaches of the duty of care owed to Aranda, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  TG's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 5 – NEGLIGENT FAILURE TO WARN
### (Against Taishan Gypsum Co. Ltd. ("TG"))

65.      Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

66.      Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

13

67.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

68.     Aranda was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

69.     TG had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TG owed Aranda a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction.

70.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

71.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG knew or should have known that unless it warned

14

Aranda of the risk of using the drywall, Aranda would suffer harm. However, TG failed to provide an adequate warning of such danger.

72.     Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, Aranda had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

73.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG breached the duty of care owed to Aranda by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Aranda about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as Aranda about any problems or dangers in using the drywall for residential construction, about which TG knew or reasonably should have known.

74.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TG's duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

75.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TG knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If TG had exercised that

15

degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, TG would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

76.     Without admitting any liability or damages to Plaintiffs, Aranda was damaged by TG's breaches of the duty of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  TG's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 6 – BREACH OF POST-SALE DUTY TO WARN
### (Against Taishan Gypsum Co. Ltd. ("TG"))

77.     Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

78.     Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{M3053507;1}

79. Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

80. Aranda was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

81. To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left TG's control and/or was sold to Aranda, TG knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

82. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TG, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction. TG breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

83. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with

{M3053507;1}

the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

84.     Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by TG and could reasonably be assumed to be unaware of the risk of harm.

85.     A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

86.     At all material times, TG stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of TG's drywall product in residential construction.

87.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in TG's position would have provided a post-sale warning.

88.     Without admitting any liability or damages to Plaintiffs, Aranda was damaged by TG's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.   TG's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

{M3053507;1}

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 7 – STRICT PRODUCTS LIABILITY
### (Against Taishan Gypsum Co. Ltd. ("TG"))

89.     Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

90.     Upon information and belief, at all material times TG was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

91.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

92.     At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG, TG intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

93.     TG expected the gypsum drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

94.     Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

95.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by TG directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  TG's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 8 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Taishan Gypsum Co. Ltd. ("TG"))

96.     Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

97.     Upon information and belief, at all material times TG was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging,

{M3053507;1}

advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

98.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

99.     At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG, TG intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

100.     TG expected the gypsum drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

101.     Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

102.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which TG was required to provide a warning. However, TG failed to provide an adequate warning of such danger.

103.     Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

{M3053507;1}

104.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because TG failed to warn Aranda of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

105.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  TG's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{M3053507;1}

**COUNT 9 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
(Against Taishan Gypsum Co. Ltd. ("TG"))

106.    Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

107.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

108.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

109.    At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

110.    At all material times, TG engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Aranda.

111.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

112.    At the time TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, TG represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

113.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

{M3053507;1}

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

114.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, TG knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

115.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from TG's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

116.    To the extent Plaintiffs are successful in proving their claims, TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 - 28 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

24

117.   TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

118.   TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its  failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

119.   To the extent Plaintiffs are successful in proving their claims, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. TG's violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against

{M3053507;1}

Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  TG's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

WHEREFORE, Aranda demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

COUNT 10 – UNJUST ENRICHMENT
(Against Taishan Gypsum Co. Ltd. ("TG"))

120.    Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

121.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

122.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

123.    TG received money from Aranda as payment for the defective drywall installed in the Home.

124.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Aranda conferred a benefit, *i.e.*, funds and profit, to TG, which had knowledge thereof.

125.    TG voluntarily accepted and retained the benefit conferred upon it by Aranda.

126.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{M3053507;1}

as more fully alleged in the Complaint, TG's acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

127.   The circumstances described herein under which TG profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for TG to retain those funds and profits.

128.   Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 11 – COMMON LAW INDEMNITY
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

129.   Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

130.   Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

131.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

27

{M3053507;1}

132.    Aranda is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by TTP.

133.    Aranda is entirely without fault for the injuries alleged by Plaintiffs.

134.    Any injuries suffered by Plaintiffs were due to the acts or omissions of TTP.

135.    A special relationship existed between TTP and Aranda such that any liability imposed upon Aranda in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to TTP.  To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP was defective, TTP is wholly to blame for Plaintiffs' injuries.

136.    As a result of the claims that have been filed against Aranda, Aranda has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of TTP to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

137.    If Aranda is found to be liable to Plaintiffs, TTP is liable to Aranda for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda, and/or the settlement of Plaintiffs' claims, as well as

reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Aranda demands judgment for indemnity in its favor against Taian Taishan Plasterboard Co. Ltd. for compensatory damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 12 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

138.    Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

139.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

140.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

141.    Plaintiffs, in the Complaint, allege various claims against Aranda for damages caused by defects in the drywall contained in the Homes.

142.    Without admitting any liability or damages to Plaintiffs, should Aranda be found liable, TTP would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

143.    Aranda has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

144.    To the extent that any common liability is found with respect to Aranda, Aranda hereby asserts its right of contribution against TTP for its pro rata share of the liability.

{M3053507;1}

145.    TTP should be required to repay Aranda for any loss, damages, costs, and expenses, including attorneys' fees, Aranda is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Aranda, in excess of its pro rata share of any common liability.

**WHEREFORE**, Aranda demands that judgment be entered against Taian Taishan Plasterboard Co. Ltd. for its pro rata share of the liability, if any, found against Aranda in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 13 – EQUITABLE SUBROGATION
**(Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))**

146.    Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

147.    This is an action, stated in the alternative, for equitable subrogation.

148.    Plaintiffs in the Complaint allege various claims against Aranda for damages caused by defective drywall contained in the Homes.

149.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

150.    Aranda is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

30

151.    Without admitting any liability or damages to Plaintiffs, Aranda is not primarily liable for any liability to the Plaintiffs.

152.    To the extent that Aranda is required to pay damages for any fault of TTP to protect its own interests, and not as a volunteer, Aranda would be entitled to reimbursement from TTP under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Aranda, including, without limitation, payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Aranda and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Aranda, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against the claims brought by Plaintiffs.

153.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Aranda demands judgment in its favor and against Taian Taishan Plasterboard Co. Ltd. for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 14 – NEGLIGENCE
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

154.    Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

155.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{M3053507;1}

156.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

157.    Aranda was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by TTP.

158.    TTP had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TTP owed Aranda a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Aranda's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

159.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

32

160.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP breached the duty of care owed to Aranda by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or and ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

161.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TTP's duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

162.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TTP knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Aranda to substantial liability and damages. If TTP had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it

{M3053507;1}

would or could have foreseen that the drywall was defective and that damages to Aranda would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

163.     Without admitting any liability or damages to Plaintiffs, Aranda was damaged by TTP's breaches of the duty of care owed to Aranda, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  TTP's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 15 – NEGLIGENT FAILURE TO WARN</u>
**(Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))**

164.     Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

165.     Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

34

{M3053507;1}

166.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

167.   Aranda was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

168.   TTP had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TTP owed Aranda a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Aranda about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as Aranda about any problems or dangers in using the drywall for residential construction.

169.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

170.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that unless it warned

{M3053507;1}

Aranda of the risk of using the drywall, Aranda would suffer harm. However, TTP failed to provide an adequate warning of such danger.

171.    Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, Aranda had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

172.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP breached the duty of care owed to Aranda by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Aranda about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as Aranda about any problems or dangers in using the drywall for residential construction, about which TTP knew or reasonably should have known.

173.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TTP's duty of care were the direct and proximate cause of Aranda's injuries, losses, and damages.

174.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TTP knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Aranda to substantial liability and damages. If TTP had

exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, TTP would or could have foreseen that damages to Aranda would ensue as a result of failing to disclose and/or warn of drywall defects.

175.    Without admitting any liability or damages to Plaintiffs, Aranda was damaged by TTP's breaches of the duty of care, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  TTP's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 16 – BREACH OF POST-SALE DUTY TO WARN
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

176.    Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

177.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

178.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

179.    Aranda was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

180.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left TTP's control and/or was sold to Aranda, TTP knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

181.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TTP, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  TTP breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

182.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with

{M3053507;1}

the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

183.    Consumers, such as Aranda, to whom a warning might have been provided, could have been identified by TTP and could reasonably be assumed to be unaware of the risk of harm.

184.    A warning could have been effectively communicated to consumers such as Aranda and acted on by them.

185.    At all material times, TTP stood in a better position than Aranda to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Aranda was unaware of potential dangers and/or risk of harm associated with the use of TTP's drywall product in residential construction.

186.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in TTP's position would have provided a post-sale warning.

187.    Without admitting any liability or damages to Plaintiffs, Aranda was damaged by TTP's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.   TTP's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

COUNT 17 – STRICT PRODUCTS LIABILITY
**(Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))**

188.    Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

189.    Upon information and belief, at all material times TTP was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

190.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

191.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP, TTP intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

192.    TTP expected the gypsum drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

193.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

{M3053507;1}

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

194.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by TTP directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  TTP's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

    **WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 18 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

195.    Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

196.    Upon information and belief, at all material times TTP was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging,

{M3053507;1}

advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

197.     Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

198.     At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP, TTP intended that the drywall reach consumers and/or ultimate users of the drywall, such as Aranda.

199.     TTP expected the gypsum drywall to reach Aranda and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Aranda and/or the Homes without substantial change affecting that condition.

200.     Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

201.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which TTP was required to provide a warning. However, TTP failed to provide an adequate warning of such danger.

202.     Aranda did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

{M3053507;1}

203.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because TTP failed to warn Aranda of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Aranda had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

204.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  TTP's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{M3053507;1}

COUNT 19- VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
(Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

205.    Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

206.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

207.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

208.    At all material times, Aranda was a person and a consumer of drywall as defined under FDUTPA.

209.    At all material times, TTP engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Aranda.

210.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

211.    At the time TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, TTP represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

212.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

{M3053507;1}

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

213.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, TTP knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

214.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from TTP's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

215.     To the extent Plaintiffs are successful in proving their claims, TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 - 28 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

45

216.    TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as Aranda acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

217.    TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its  failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Aranda.

218.    To the extent Plaintiffs are successful in proving their claims, Aranda did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. TTP's violations of FDUTPA directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against

46

Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.  TTP's wrongful conduct also caused damages to Aranda, including but not limited to Aranda's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

**COUNT 20 – UNJUST ENRICHMENT**
**(Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))**

219.    Aranda reasserts and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

220.    Plaintiffs in the Complaint allege various claims against Aranda for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

221.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

222.    TTP received money from Aranda as payment for the defective drywall installed in the Home.

223.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Aranda conferred a benefit, *i.e.*, funds and profit, to TTP, which had knowledge thereof.

224.    TTP voluntarily accepted and retained the benefit conferred upon it by Aranda.

225.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{M3053507;1}

as more fully alleged in the Complaint, TTP's acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Aranda to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Aranda to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Aranda in this action and/or any other action brought by Plaintiffs against Aranda, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Aranda in defending against these claims.

226.    The circumstances described herein under which TTP profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for TTP to retain those funds and profits.

227.    Aranda has no adequate remedy at law.

**WHEREFORE**, Aranda demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**COMES NOW** Defendant/Cross-Plaintiff, Aranda Homes, Inc., and hereby demands a trial by jury as to all issues so triable as a matter of right.

Respectfully submitted this 24th day of May 2011.

**AKERMAN SENTERFITT**

BY:  /s/     Valerie Greenberg
        Valerie Greenberg, Esq.
        Fla. Bar No. 026514
        Stacy Harrison, Esq.
        Fla. Bar No. 44109
      One Southeast Third Avenue, 25th Floor
      Miami, FL  33131-1714
      Phone:  (305) 374-5600
      Fax:  (305) 374-5095
      Email:  valerie.greenberg@akerman.com
      Email:  stacy.harrison@akerman.com

*Attorneys for Aranda Homes, Inc.*

*Co-Counsel for Aranda Homes, Inc.*

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
      Susie.morgan@phelps.com
      Skylar.rosenbloom@phelps.com

{M3053507;1}

## **CERTIFICATE OF SERVICE**

I hereby certify that *Defendant Aranda Homes Inc.'s Cross Claim Against Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd.* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA 70163 (kmiller@frilot.com), by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 24th day of May, 2011.

/s/      Valerie Greenberg

{M3053507;1}