UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL | ) | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | SECTION: L |
| | ) | |
| | ) | JUDGE FALLON |
| | ) | MAG. JUDGE WILKINSON |
| _____ | ) | |

**THIS DOCUMENT RELATES TO ALL CASES**

**PSC'S REPLY TO DEFENDANTS TAISHAN GYPSUM CO. LTD. AND TAIAN TAISHAN PLASTERBOARD CO., LTD.'S OPPOSITION TO THE PSC AND HSC'S MOTION TO COMPEL**

The PSC hereby files its Reply to Defendants Taishan Gypsum Co. Ltd. ("TG") and Taian Taishan Plasterboard Co. Ltd. ("TTP"), (collectively, "Taishan" or "Taishan Defendants") Opposition to the PSC and HSC's Motions to Compel (Rec. Doc. 8841) and states as follows:

**INTRODUCTION**

The Taishan Defendants' arguments in their Opposition to the PSC and HSC's motions to compel are not surprising. In their Opposition, the Taishan Defendants urge the Court to declare jurisdictional discovery closed so that they may: 1) benefit from their designating ill-informed and inadequately prepared witnesses for the designated 30(b)(6) topics; 2) take advantage of their deposition tactics (late production of documents, constant objections to language interpretation and disruptive deposition tactics); and 3) not produce discoverable documents. The Taishan Defendants also did not produce relevant documents in response to the PSC's prior discovery requests and that further document discovery and depositions are warranted based on witness testimony in Hong Kong. The Taishan Defendants believe that discovery should be closed, rather than provide the PSC with responsive documents and the opportunity to take the deposition of

1

other relevant witnesses identified in the Hong Kong depositions and documents, to wit: Mssrs. Cher and Yang.  The Taishan Defendants consistently, and confusingly argue that the PSC is not entitled to further document discovery because it did not ask about documents during the deposition that were not produced to it.  Taishan fails to understand that effective examination of a witness requires the document itself.  The Court should not condone the Taishan Defendants' tactics and prevent further jurisdictional discovery that would only reward the Taishan's conduct. Moreover, the Taishan Defendants, as set forth in the PSC and HSC Motion to Compel, should be sanctioned.

**1. The Taishan Defendants' designated corporate representatives were inadequate.**

The Taishan Defendants' argue they should dictate the areas and issues that the PSC questions the witnesses upon and that the PSC did not ask any questions of Mr. Peng about the MPF.  Taishan Resp. at 8. The HSC made abundantly clear in its Motion to Compel that it did ask Mr. Peng multiple questions regarding the MPF that he could not respond to, or evaded.  As the PSC pointed out in its Motion to Compel, Mr. Peng did not sign a sworn MPF.  See Mot. to Compel at 9-10.  As to TG, Mr. Jia signed the MPF for TG.  But Mr. Jia could not testify as to how much drywall TG shipped to the United States in his capacity as General Manager of TG. (Dep. of T. Jia at 329:19-330:13).  As to TTP, Mr. Song Qinghai signed the MPF. (*Id.* at 409:7-20). Mr. Qinghai was the senior official managing production at for TTP. (*Id.*). Mr. Qinghai was terminated by TTP in 2008 and hired by a TG subsidiary in 2008. He signed the MPF on October 14, 2010. (See Taishan MPF). Mr. Qinghai has been employed by a Taishan subsidiary since he was terminated 2010. (*Id.* at 412:16-23). Thus, TTP had Mr. Quinghai sign the MPF, but did not produce him for deposition.  The Taishan Defendants' tactics regarding the MPF is

abundantly clear: Mr. Jia was not designated to testify regarding sales transactions or sales to the U.S., yet he signed the MPF, which is precisely about that topic.  Mr. Peng, even though he did not sign the MPF, was designated to testify concerning the MPF.  As such, neither witness was adequate to testify regarding the MPF.

The Taishan Defendants also took issue with the PSC's position that having Mr. Peng testify through an interpreter when his degree was in English and he wrote numerous emails in English was "outrageous and offensive."  Taishan Resp. at 8, n. 8.  While Mr. Peng is entitled to testify via an interpreter, his degree <u>in English</u> and the numerous emails <u>in English</u> written by him to U.S. customers, shed considerable light on the Taishan Defendants' decision to utilize an interpreter for him and their motives for doing so.

### a. The Taishan Defendants failed to address the requested depositions of Mr. Cher and Mr. Yang in their Response.

The documents produced in this case make it abundantly clear that Mr. Cher and Mr. Yang were involved in numerous transactions with U.S. based customers.  Both Mr. Cher and Mr. Yang wrote to U.S. customers <u>in English</u>.  Mr. Peng testified that he and Mssrs. Cher and Yang were the foreign sales department.  Taishan failed to rebut the PSC's request for depositions of these two witnesses involved in sales to the U.S.  Accordingly, the PSC's request to take the depositions of Mssrs. Cher and Yang should be granted.

### 2. Further document discovery requested by the PSC is warranted.

Rather than address the PSC's requests for documents that were not produced and should have been produced before the depositions by Taishan, the Taishan Defendants attack the PSC's preparation and document review.  Taishan Resp. at 13, 15.  Taishan further seeks to have the PSC prove the impossible: why did the PSC fail to request relevant documents it thought to exist,

3

but were not produced?  See Taishan Resp. at 13.  In other words, how could the PSC ask for what it did not know existed?  The answer is simple.  The PSC believed that Taishan was complying with the Federal Rules of Civil Procedure and producing non-privileged documents in its possession, custody or control.   Given the Taishan Defendants response to the PSC's Motion to Compel, it appears the PSC was mistaken: Taishan has not complied with its obligations to produce relevant non-privileged documents.

The Taishan Defendants fail to address many of the documents requested by the PSC in its Motion, or attempt to argue that the documents should not be produced, but never denying the documents exist.

### a. Late produced documents relevant to alter-ego and agency theories for jurisdictional purposes.

Taishan glossed over its producing highly relevant documents to agency and alter ego theories of jurisdiction, in Chinese, to Plaintiffs a few minutes before the first deposition in began in Hong Kong. The documents themselves bear directly on the interrelationship between the two Taishan entities, TG and TTP.  One of Taishan's Chinese speaking attorneys did give a halting translation of the documents to the PSC and other counsel at the deposition; however, the translation was not verbatim, nor was it written, nor could the PSC reasonably swear in the Chinese speaking attorney or question his interpretation regarding the contents. In short, while an effort was made, it could not cure the tardiness of the documents.   Additionally, the existence of the agreements, which the PSC did not know about before the depositions in Hong Kong prompted the PSC to request the following documents in its Motion to Compel, which Taishan did not address in its Memorandum in Opposition, nor deny their existence:

4

> 1. any and all licensing, marketing, rental, leasing, shipping, loan, or expense-sharing agreements between the TG and TTP, and any translations thereof;
> 2. any and all notes, correspondence, email, reports, analyses, or memoranda concerning such agreements, and any translations thereof;
> 3. any and all board minutes where executive, directors, or shareholders of either TG or TTP discussed, approved, or voted, on such agreements; and
> 4. any and all documentation of any payments or exchange of monies between the two entities.

(PSC Mot. to Compel at 3-4).

The aforementioned documents should be produced by Taishan.

### b. Taishan's failure to produce documents regarding BNBM, including loan guarantees for TTP.

Taishan argues that the PSC failed to demonstrate a need for discovery regarding the Taishan Defendants relationship with its parent company, BNBM, and its subsidiaries. Taishan is wrong. The PSC laid a foundation for discovery regarding Taishan's relationship with BNBM, Taishan's parent corporation:

> Mr. Tongchun Jia is Chairman of the Board and General Manager for TG. (Dep. of T. Jia at 24:21-26:09). Mr. Jia sits on the Board of Directors of BNBM, which owns 42 percent of TG, TG has a 65% voting ratio in BNBM, and BNBM holds out TG as a main component of its plasterboard production. (*See, e.g.*, Dep. of T. Jia at 35, 47; BNBM 2010 Interim Rpt. at 5-6 (Ex. B, attached hereto with translation); BNBM 2007 Annual Rpt. at 68). Mr. Jia further testified that BNBM has guaranteed loan obligations on behalf of Taishan Gypsum. (*See* Dep. of T. Jia at 191:18-20). Ultimately, Mr. Jia admitted that TG and BNBM have a joint venture together. (Dep. of T. Jia at 203:19-204:10).

(PSC Mot. to Compel at 4).

Taishan now seeks to fight over the translation of the "joint venture" between TG and BNBM. Taishan Resp. at 16. Whether it was a "joint venture" or the companies "cooperated," it is evident that the companies are connected and BNBM is the parent corporation. The joint

5

venture and cooperation between the two companies, TG's subsidiary role, and Mr. Jia's dual roles in the companies provide a foundation and further basis of jurisdictional discovery on the relationship between the two companies.

Given the relationship between BNBM and TG, made apparent by Mr. Jia's testimony, the PSC requested further documents. Taishan does not deny the documents exist, rather they attempt to gloss over the issue calling the requests a "fishing expedition." Taishan Resp. at 18. Taishan states numerous documents were already produced. But does not state all in its possession, custody or control were produced, nor that all were produced for the relevant years. *See id.* Taishan's assertion that the "minutiae of money transfers between a parent and subsidiary cannot be relevant to personal jurisdiction" is disingenuous. *Id.* at 19. Such transfers, depending upon their facts may be relevant to veil piercing, alter ego, and agency theories for jurisdictional purposes. But Taishan's position that it gets to decide what "minutiae" is without affording the PSC full discovery into those transactions and the other documents requested is meritless.

### c. Emails sent on behalf of Mr. Jia or received and reviewed on his behalf regarding 30(b)(6) topics should be produced.

Mr. Jia testified that three of his employees read, reviewed and sent emails for him. PSC Mot. to Compel at 5. Taishan states that Mr. Jia's relevant emails were searched for and produced, yet they only produced and referenced two pages in their Response. Taishan Resp. at 15-16. Second, Taishan states that the three employees do not have relevant emails in their own files. It is unclear whether those email files were searched, or if this is simply an unsupported assertion by Taishan's counsel.

6

### d. Documents relating to TG's and governmental testing of drywall should be produced as they relate to marketing and sales efforts in the United States.

Taishan marketed its drywall as "good for health" to U.S. customers. (Dep. of T. Jia at 233:20-244:19 and Ex. 2 to Jia deposition,[1] attached hereto as Ex. A). Mr. Jia admitted that TG conducted a customer survey on the drywall and the Chinese government conducted testing in response to media complaints about the drywall. (Dep. of T. Jia at 363:24-387:4). The tests and test results are relevant to personal jurisdiction because they may concern: 1) U.S. based customers; 2) considerations by the Taishan Defendants of what may occur to U.S. based customers and marketing and sales efforts in the U.S. Accordingly, the PSC is entitled to the customer surveys and results of the testing and any marketing and sales materials generated from the survey and/or tests.

### e. The PSC requires the underlying documents for the MPF.

On one hand Taishan asserts that it produced over 3,000 pages of documents concerning the MPFs, including invoices, contracts, and related correspondence to refute the PSC's position that the underlying documents for the MPFs were not produced. Resp. at 15. On the other hand, Taishan cites to pages of documents that underlie the MPFs. Accordingly, Taishan should confirm whether the documents cited in its Response are the sole responsive documents

---

[1] Ex. 2 is a website statement by Mr. Jia, which states in relevant part:

> Taishan series plasterboard can be used as partition and ceiling material and have advantages: fire-proof, sound insulation, heat preservation, quakeproof and good for health….We have a self-supported import and export ability, our products not only sell well in our domestic market also expert to many countries, e.g. U.A.E., Indonesia, India, Russia, U.S.A., etc. …

The Taishan Defendants did not produce this document, it had to be obtained by the PSC by other means.

underlying the referenced transactions in the MPFs.

### 3. The Taishan Defendants discovery tactics should be sanctioned.

As set forth in the PSC's Motion to Compel, there were numerous instances of improper speaking objections by Taishan's counsel that served to coach the witnesses. A representative sample of the speaking objections is found at: Jia Tr. 95:5-97:20; 99:2-101:13; 151:7-152:10; 261:1-262:15; 318:9-320:9; and Zhang Tr. 35:8-41:11;146:20-147:6; and 147:15-149:2. As evidenced by the transcripts, after the speaking objections, the witnesses became non-responsive. This conduct should not be condoned by the Court.

The Taishan Defendants now seek to diminish their participation and agreement to the official interpreter and to shift the blame for the unproductive depositions to the official interpreter that they agreed to. Taishan argues that it only had a "brief telephone interview" with the official interpreter. Taishan Resp. at 20, n.19. There was nothing preventing Taishan from conducting further due diligence with the selected official interpreter.

The PSC does not take issue with the Taishan Defendants having a check interpreter at the deposition. It is not the Taishan Defendants retention of a check interpreter that was sanctionable, instead, it was the prompting, multiple times, of the check interpreter by Taishan's counsel to object to the official interpreter's interpretation that delayed and confused the depositions. See HSC Mot. to Compel at 3.

The PSC has set forth sufficient grounds for its motion to compel the further document discovery, depositions, and sanctions, as set forth herein an its Motion to Compel.

WHEREFORE, the PSC respectfully requests that this Honorable Court set a hearing on this matter for May 11, 2011, and that the Court order: 1) the Taishan Defendants to produce the documents requested in this motion; 2) to produce witnesses for deposition knowledgeable of the

MPFs; 3) to produce Mr. Cher and Yang for deposition; and 4) to sanction the Taishan Defendants for their conduct in discovery, including, but not limited to the costs of: travel, lodging, food, court reporters, videographer, and the rental of the conference room for the depositions in Hong Kong the week of April 4th; and 5) assessment of attorneys' fees and costs (including, but not limited to the costs of: travel, lodging, food, court reporters, videographer, and the rental of the conference room for the depositions in Hong Kong the week of April 4th) for the PSC's having to file this motion.

                                    Respectfully Submitted,

Dated: May 24, 2011

                                /s/ Leonard A. Davis
                                Russ M. Herman, Esquire
                                Leonard A. Davis, Esquire
                                Stephen J. Herman, Esquire
                                HERMAN, HERMAN, KATZ & COTLAR, LLP
                                820 O'Keefe Avenue
                                New Orleans, LA 70113
                                Phone: (504) 581-4892
                                Fax: (504) 561-6024
                                Ldavis@hhkc.com
                                *Plaintiffs' Liaison Counsel*
                                *MDL 2047*

                                Arnold Levin, Esq.
                                Levin, Fishbein, Sedran & Berman
                                510 Walnut Street, Suite 500
                                Philadelphia, PA 19106
                                215-592-1500 (phone)
                                215-592-4663 (fax)
                                Alevin@lfsblaw.com
                                *Plaintiffs' Lead Counsel*
                                *MDL 2047*

> Ervin A. Gonzalez (On the Brief)
> Patrick S. Montoya (On the Brief)
> Colson, Hicks, Eidson, Colson
> Matthews, Martinez, Gonzalez,
> Kalbac & Kane
> 255 Alhambra Circle, PH
> Coral Gables, FL 33134
> Phone: (305) 476-7400
> Fax: (305) 476-7444
> Ervin@colson.com
> *Member of the PSC*
> *MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
Matthews, Martinez, Gonzalez,
Kalbac & Kane
255 Alhambra Circle, PH
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone:   (757) 233-0009
Fax:   (757) 233-0455
rserpe@serpefirm.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

### OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W. Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 (mailing address)
15058 River Road
Hahnville, LA   70057
Phone:   (985) 783-6789
Fax:   (985) 783-1333
andrew@lemmonlawfirm.com

Jeremy W. Alters
Alters Law Firm, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@alterslaw.com

### **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 24th day of May, 2011.

/s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA   70113
PH:   (504) 581-4892
Fax:   (504) 561-6024
ldavis@hhkc.com