## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2:09-md-02047<br><br>SECTION: "L"<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| **THIS DOCUMENT RELATES TO:**<br><br>ROBERT C. PATE, as Trustee for the Chinese Drywall Trust,<br>v.<br>AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, FCCI COMMERCIAL INSURANCE COMPANY, FCCI INSURANCE COMPANY, et al.<br>(**2:09-cv-07791**) (E.D. La.) | |

---

### FCCI COMMERCIAL INSURANCE COMPANY AND FCCI  INSURANCE COMPANY'S BRIEF IN SUPPORT OF THEIR MOTION TO ALTER OR AMEND THE COURT'S
### ORDER DENYING FCCI'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

---

COME NOW FCCI Commercial Insurance Company and FCCI Insurance Company, (collectively, "FCCI") and file this Brief in Support of their Motion to Alter or Amend the Court's Order Denying FCCI's Motion to Dismiss for Lack of Personal Jurisdiction. FCCI requests that this Court amend its February 9, 2011 Order to hold that FCCI is not subject to general jurisdiction in Louisiana. In the alternative, FCCI requests that the Court certify the personal jurisdiction issue for interlocutory appeal.

## <u>TABLE OF CONTENTS</u>

I.     Table of Contents..................................................................................................... 2

II.    Introduction… ........................................................................................................ 3

III.   Procedural Posture ..............................................................................................3-4

IV.   Background............................................................................................................ 4

V.    Argument and Citation of Authority ...............................................................5-15

    A.   FCCI's Louisiana contacts are not substantial enough to support general jurisdiction ................................................................................... 5

    B.   FCCI's continuing contacts in 2008 and 2009 were even less substantial, and are insufficient to support general jurisdiction........................................... 8

    C.   The Court cannot take into account its status as an MDL court when ruling on jurisdictional motions ................................................................................... 9

         1.  The MDL statute does not expand the jurisdictional reach of a sovereign state..................................................................................... 10

         2.  The Court's status as an MDL court cannot create jurisdiction over FCCI because the Court is sitting as an MDL court based on the actions of third parties ................................................................................ 11

         3.  The court erred in relying on the nature of the claims asserted against FCCI to hold that FCCI is subject to general jurisdiction in Louisiana..12

         4.  The MDL statute does not create a national claims administration procedure ........................................................................................... 14

    D.   In The Alternative, This Court Should Certify The Order Under 28 U.S.C. § 1292(b), Because It Involves A Controlling Question Of Law Over Which There Is A Substantial Ground For Difference Of Opinion, And There Is A Significant Likelihood That Such An Appeal Will Terminate This Litigation As To FCCI Conserving Significant Litigant And Judicial Resources.....16-20

VI.  Conclusion............................................................................................................ 20

## INTRODUCTION

This Court held, on February 9th, that FCCI is subject to general jurisdiction in Louisiana. FCCI maintains that the Court made several errors of law, and would be reversed on appeal. First, the Court erred in holding that FCCI's Louisiana contacts are sufficient for general jurisdiction. Second, the Court erred in holding that FCCI's Louisiana contacts in 2008 and 2009 were sufficient to hold that FCCI's contacts continued until the date suit was filed. Third, the Court erred in relying on the fact that it is sitting as an MDL court in the Court's jurisdictional analysis. The third error of law is particularly significant because the Court's approach is novel and would change the impact of the MDL statute on pretrial proceedings dramatically. For that reason alone, if the Court declines to amend its February 9th Order, it should certify the issue for interlocutory appeal. The issue is too important to delay appellate review until the conclusion of this action.

## PROCEDURAL POSTURE

On January 8, 2010, FCCI was served as a defendant in *Pate v. American International Specialty Lines Insurance Co.*, No. 09-7791 (E.D. La.) ("Pate action"), *consolidated with*, No. 09-md-2047 ("MDL 2047") (R. Doc. 2156). FCCI filed a Motion to Dismiss for Lack of Personal Jurisdiction (R. Doc. 2148) on March 29, 2010. The Plaintiffs and PSC responded by filing their Opposition to Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (R. Doc. 6023) on October 20, 2010. FCCI replied (R. Doc. 6416) on October 29, 2010 (initially defective, but corrected and re-filed on November 22, 2010). On November 2, 2010, this Court held a hearing on this and other issues and denied FCCI's Motion to Dismiss for lack of personal jurisdiction from the bench. On February 9, 2011, the Court issued an Order denying FCCI's

Motion to Dismiss for lack of personal jurisdiction ("Order"). (R. Doc. 7356.) FCCI now requests that this Court alter or amend that Order.

## BACKGROUND

Construed most favorably to Plaintiffs, FCCI has a few Louisiana contacts through its sister company, National Trust Insurance Company ("National"). (*Id.*) National authorized an agent to issue workers' compensation policies in Louisiana on National's paper. (Ex. A ¶ 11, Willis Aff.) The workers compensation policies issued in Louisiana were a small percentage of National's (and FCCI's) national insurance business, which, in addition to workers' compensation insurance, includes commercial general liability insurance, inland marine insurance, commercial property insurance, and commercial auto insurance. The agent was only authorized to issue workers' compensation policies. (*Id.*) Neither the agent on FCCI's behalf, nor any FCCI entity, wrote other lines of coverage in Louisiana.

Neither FCCI nor National managed any of their business operations in Louisiana. Indeed, FCCI does not have any offices or employees in Louisiana. The Plaintiffs' concede in the Complaint that FCCI's principal place of business is in Florida. As the Court's Order recognizes, FCCI and National share a principal place of business in Sarasota, Florida. The closest thing to a physical business presence in Louisiana is FCCI's regional office in a neighboring state. That regional office takes its direction from FCCI's corporate headquarters in Florida; it does not have full and independent authority over any FCCI entities' operations.

<u>**ARGUMENT**</u>

**II.    FCCI's Louisiana contacts Are Not Substantial Enough to Support General Jurisdiction**

FCCI's Louisiana contacts are not substantial enough to subject FCCI to general jurisdiction in Louisiana. The level of contacts constitutionally required differs substantially for general and specific jurisdiction. *See, e.g., Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colorado*, 615 F.3d 364, 368 (5th Cir. 2010) ("To show the type of 'continuous and systematic' contact required for general jurisdiction, a plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed for specific jurisdiction."). Specific jurisdiction can be satisfied when a single contact with the forum gives rise to litigation. *See Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990) ("Even a single, substantial act directed toward the forum can support specific jurisdiction."). General jurisdiction, by contrast, requires contacts that are not only continuous and systematic, but also substantial. *See Cent. Freight Lines,* 322 F.3d at 381 ("Even if APA's contacts with the state of Texas have been, in some sense, 'continuous and systematic,' APA's activities, *in toto*, are clearly not substantial enough to justify subjecting APA to suit in the Western District of Texas based on a theory of general personal jurisdiction.").

The Supreme Court and Fifth Circuit both read *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 447-48 (1952) – the only case in which the Supreme Court held that a defendant was subject to a state's general jurisdiction – as limiting general jurisdiction to a defendant's principal place of business. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 n.11 (1984) (In P*erkins*, "Ohio was the corporation's principal, if temporary, place of business so that Ohio jurisdiction was proper even over a cause of action unrelated to the activities in the state." Emphasis added); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374-75 (5th Cir. 1987)

(holding that general jurisdiction is only available if the defendant's contacts "sum to the general business presence found to exist in *Perkins*."). FCCI is therefore only subject to general jurisdiction in the state in which it has its principal place of business. As the Plaintiffs allege, FCCI's principal place of business is in Florida. Under *Perkins* and *Bearry*, FCCI is not subject to general jurisdiction in Louisiana because its principal place of business is not in Louisiana.

Even if general jurisdiction is not limited strictly to the principal place of business under *Bearry*, FCCI's contacts with Louisiana must be analogous in type and scope to the *Perkins* defendant's contacts with Ohio. The Supreme Court summarized those contacts as follows:

> [T]he company's files were kept in Ohio, several directors' meetings were held there, substantial accounts were maintained in Ohio banks, and all key business decisions were made in the state. *In those circumstances, Ohio was the corporation's principal, if temporary, place of business so that Ohio jurisdiction was proper even over a cause of action unrelated to the activities in the state*."

*Keeton*, 465 U.S. at 780 n.11 (emphasis added). This summation of the contacts in *Perkins* is remarkably similar to the Supreme Court's description of a corporation's principal place of business: "the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1186 (2010). In both cases, the focus is on the place where the corporation manages and directs its business activities, rather than where it carries out those activities.

Holding that a corporation is only subject to general jurisdiction in a state in which it manages and directs its business activities does not necessarily limit general jurisdiction to one state. A corporation could manage and direct its business activities out of multiple states by, for example, maintaining large offices and high-level employees in multiple states. In the insurance industry, a corporation could manage all of its underwriting activities from an office in New

York, and its claims handling from an office in California. If general jurisdiction can exist outside of the principal place of business, such an insurance company could be subject to general jurisdiction in New York and California.

FCCI, however, does not manage or direct any of its business activities from Louisiana. No FCCI entity maintains an office, or has any employees, in Louisiana. At best, the evidence cited in the Court's Order shows that National issued some workers' compensation policies in Louisiana through an agent. (*See* Dkt. No. 7356, 31-33.) That evidence merely shows that FCCI had some contacts with Louisiana as *part* of its general operations. Plaintiffs do not allege, and there is no evidence indicating, that FCCI makes any business decisions in Louisiana. Thus, unlike the defendant in *Perkins*, FCCI and National did not manage and control their corporate operations from Louisiana. Rather, FCCI and National managed and controlled their operations from Florida.

FCCI is therefore not subject to general jurisdiction in Louisiana. While FCCI does have some limited contacts with Louisiana, those contacts would only be sufficient to support jurisdiction over FCCI if the claims against it arose out of those contacts. FCCI would then be subject to specific jurisdiction in Louisiana. In this case, however, FCCI's contacts with Louisiana are unrelated to the present action.

It is not unusual for a defendant to be subject to specific jurisdiction in a state in which the defendant is not subject to general jurisdiction. *See, e.g.*, *Keeton*, 465 U.S. 770, 780 & n.11 (holding that the defendant's contacts were enough to establish specific jurisdiction, even though they were not substantial enough to establish general jurisdiction); *Cent. Freight Lines*, 322 F.3d at 381-82 (same). If FCCI's limited contacts with Louisiana were sufficient for general jurisdiction, there would be no need for specific jurisdiction. Every defendant who has sufficient

contacts for specific jurisdiction would also have sufficient contacts for general jurisdiction. That cannot be true, because the Supreme Court and Fifth Circuit have held that there is a difference between the level of contacts required for general and specific jurisdiction. The Court should therefore amend its Order and hold that FCCI is not subject to general jurisdiction in Louisiana. In the alternative, the Court should certify the issue for interlocutory review.

## II.    FCCI's Continuing Contacts in 2008 and 2009 Are Less Substantial Than in Prior Years, and Are Not Sufficient to Support General Jurisdiction

Even if FCCI's past-Louisiana contacts were substantial, in the three years before this suit was filed, FCCI's contacts were not substantial enough to hold that FCCI's contacts were continuous up until the time suit was filed. FCCI is only subject to general jurisdiction in Louisiana if it has substantial contacts that are continuous until the filing of the complaint. *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 877 (7th Cir. 2006); *Asset Allocation & Mgmt. Co. v. Employers Ins. Co.*, 892 F.2d 566, 570 (7th Cir. 1989) (court could not exercise general jurisdiction because defendant's contacts did not "continue up to the time of suit."). "In general jurisdiction cases, 'district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances – *up to and including the date the suit was filed* – to assess whether they satisfy the 'continuous and systematic' standard.'" *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569-570 (2d Cir. 1996) (emphasis added). The contacts must also be substantial, not merely continuous. *See Wilson v. Belin*, 20 F.3d 644, 650-51 (5th Cir. 1994) (holding that the defendant's contacts were not substantial enough for general personal jurisdiction, even if they were somewhat continuous).

The Fifth Circuit has held that contacts less substantial than National's from 2007-2009 are not enough to support general personal jurisdiction. In *Choice Healthcare, Inc. v. Kaiser*

*Foundation Health Plan of Colorado*, 615 F.3d 364, 368 (5th Cir. 2010), the court held that payment of 53 claims over a three-year period is not sufficient for general jurisdiction. Additionally, in *Johnston v. Multidata Systems International Group*, 523 F.3d 602, 613-14 (5th Cir. 2008), the court held that sales revenue of .5% and 2.5% over the course of four years is not "substantial or regular" enough to support general jurisdiction.

Although FCCI had minor and tangential contacts with Louisiana after 2007, FCCI did not have substantial and/or continuous contacts with Louisiana in 2008 and 2009.[1]  Indeed, National and FCCI's contacts with Louisiana are less substantial than the defendants' in *Choice Healthcare* and *Johnston*. For 2007, 2008, and 2009, the percentage of all FCCI entities' premiums attributable to Louisiana, which is comparable to sales revenue, as a percentage of FCCI's total premiums, were 0.0487%, 0.002%, and 0%, respectively. National only had thirteen Louisiana claims in 2007, eleven Louisiana claims in 2008, and three Louisiana claims in 2009. (Ex. A)  National therefore collected a smaller percentage of its revenue from Louisiana than the defendant in *Johnston*, and had fewer Louisiana claims than the defendant in *Choice Healthcare*. Because the Fifth Circuit found that general jurisdiction was lacking in those cases, this Court must amend its Order, and hold that general jurisdiction over FCCI is lacking in this case.

## III.   The Court Cannot Take Into Account Its Status as an MDL Court When Ruling on Jurisdictional Motions.

The fact that the Court is sitting as an MDL court is irrelevant to a determination of whether Louisiana has general jurisdiction over FCCI. The MDL statute was enacted to allow similar cases to be consolidated in a single forum for resolution of pretrial proceedings. *See* 28 U.S.C. § 1407. A fundamental principle of MDL proceedings is that the Court must decide pretrial motions the same as the originating court would have. *See In re Telectronics Pacing Sys.,*

---

[1] FCCI's contacts with Louisiana were never substantial enough to support general jurisdiction. After 2007, FCCI's already few Louisiana contacts decreased substantially.

9

*Inc.*, 953 F. Supp. 909, 914 (S.D. Ohio 1997). By holding that the Court's status as an MDL court affects the *merits* of FCCI's pretrial motions, the Court's February 9th Order is not in keeping with that principle. (*See* Dkt. No. 7356, 35-36.) Nothing in the MDL statute expands the power of a sovereign state to assert jurisdiction over a person. The Court further subjected FCCI to jurisdiction in Louisiana based on the acts of third parties. Additionally, the Court relied erroneously on the specific claim asserted against FCCI in its general jurisdiction analysis. Finally, the Court's approach transformed the MDL *venue* statute into a national claims administration procedure. The Court should therefore amend its order and hold that Louisiana does not have general personal jurisdiction over FCCI, or certify the issue for interlocutory appeal.

> **A.     The MDL statute does not expand the jurisdictional reach of a sovereign state.**

Due process limits on personal jurisdiction, at their most fundamental level, concern the power of a sovereign state to assert jurisdiction over a person. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) ("The concept of minimum contacts . . . acts to ensure that the States through their courts, do not reach beyond the limits imposed on them by their status as coequal sovereigns in a federal system."). Nothing in the text, history, or purpose of the MDL statute expands the power of Louisiana – or any other state – to assert jurisdiction over an out-of-state company such as FCCI. *See In re Showa Denko L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992). Rather, the MDL statute merely "provides a procedure for transferring cases filed in different districts to a single district court for pretrial proceedings, *nowhere does it expand the jurisdiction of either the transferor or the transferee court.*" *Id.* (emphasis added). When the Court sits as an MDL court, it does not even retain jurisdiction for the duration of the case; the Court loses jurisdiction over transferred cases as

soon as pretrial proceedings are concluded. *See* 28 U.S.C. § 1407(a) ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have previously been terminated[.]"). A statute that does not vest the Court with power to try a case ought not be interpreted as expanding a state's general and unlimited jurisdiction over a defendant.

Interpreting the MDL statute to expand this Court's jurisdictional authority would not only be unconstitutional, but would also yield incongruous results. There is no question that FCCI, which has its principal place of business in Florida, cannot be sued in Louisiana if an FCCI-insured subcontractor that operates exclusively in Florida does a poor job painting a house in Florida. However, that is precisely what this Court did when it held that Louisiana has general jurisdiction over FCCI. The only basis for distinguishing this case from that hypothetical is to say that this case is different because the Court is sitting as an MDL court. If, however, the Court distinguishes the hypothetical case on that basis, it transforms the MDL statute from a pretrial venue statute into one that affects due process limits on state jurisdiction.

The Court considered five factors when deciding whether it had jurisdiction over FCCI, and held that all five supported jurisdiction over FCCI. (Dkt. No. 7356, 35-36.) In so holding, the Court expressly held that four of the five factors were present because the Court is sitting as a MDL court, and implicitly held that the other factor (factor number two) was satisfied because the Court is sitting as a MDL court. (*Id.*) The Court thus used the MDL statute to expand its jurisdiction, and – because this is a diversity case – Louisiana's jurisdiction. Such use of the MDL statute is erroneous. The Court should therefore amend its Order and hold that it does not have general jurisdiction over FCCI, or certify the case for interlocutory review.

**B.    The Court's status as an MDL court cannot create jurisdiction over FCCI because the Court is sitting as an MDL court based on the actions of third parties.**

A fundamental principle of due process is that a state's jurisdiction over a defendant cannot be based on the acts of third parties. *See, e.g.*, *World-Wide Volkswagen*, 444 U.S. at 298-99; *Hanson v. Denkla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state."). The Court's reasoning that Louisiana has general jurisdiction over FCCI because the Court is sitting as an MDL court violates that principle. FCCI is involved in Chinese-drywall litigation because it sold insurance policies to a few Florida companies that installed or sold Chinese-manufactured drywall *in Florida*. This Court became an MDL court when other companies that installed and sold Chinese-manufactured drywall in other states were sued throughout the country. The Court is therefore sitting as an MDL court because of the actions of third parties, not the actions of FCCI.

FCCI is two-levels removed from the actions that created this MDL. FCCI is one level removed from its insureds that were sued for installing and selling Chinese-manufactured drywall, and its insureds are another level removed from the other companies that performed similar operations in other states, which created the need for the MDL. Essentially, in using the MDL as a reason to confer jurisdiction over FCCI, this Court held that it has *general* jurisdiction over FCCI because companies with which FCCI has no relationship were sued on similar grounds as FCCI's insureds. Holding that FCCI is subject to general jurisdiction in Louisiana because of the random, unforeseeable actions of third-parties-twice-removed from FCCI violates any notion of fair play and substantial justice. This Court should therefore amend its Order or certify the issue as appropriate for interlocutory review.

**C.**   **The court erred in relying on the nature of the claims asserted against FCCI to hold that FCCI is subject to general jurisdiction in Louisiana.**

Holding that Louisiana has general jurisdiction over FCCI because a federal court in Louisiana is sitting as an MDL court is more problematic than holding that FCCI is subject to specific jurisdiction on such a basis. The PSC and the Court concede that FCCI is not subject to specific jurisdiction, meaning that FCCI's forum-related contacts are not related to this case. Then, a few pages later, the Court held that jurisdiction over FCCI complies with fair play and substantial justice *because* Louisiana companies are seeking insurance coverage for Chinese drywall claims under policies similar to those FCCI issued in Florida. (Dkt. No. 7356, 34-36.) That reasoning goes to the relationship between FCCI and the claims at issue. For general jurisdiction, however, the issue is whether the relationship between FCCI and the forum is sufficient to hold FCCI liable in the forum for any actions anywhere in the world. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984) (holding that specific jurisdiction depends on the relationship between the forum, the defendant, and the litigation, but that general jurisdiction depends only on the relationship between "the State and the foreign corporation.").

The Court's holding is also problematic because it can be argued to extend beyond Chinese-drywall claims. Because the Court held that FCCI is subject to general jurisdiction, other persons or entities can or may argue that FCCI can be sued in Louisiana for *any* cause of action, not just Chinese-drywall claims. For example, if an FCCI employee is involved in car accident in Hawaii with a citizen of Hawaii while on company business (such as attending a continuing education seminar), and FCCI is sued for vicarious liability, the plaintiff could argue that it may file suit in Louisiana because this Court held FCCI is subject to general jurisdiction in Louisiana. *See id.* If Louisiana would not have jurisdiction over FCCI in the Hawaii

hypothetical, then it does not have general jurisdiction over FCCI in this case. When a state's jurisdiction over a defendant is limited to a particular cause of action, the court has specific, not general, jurisdiction. *See Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380-81 (5th Cir. 2003).

If the Court believes that FCCI is mistaken and that the cause of action asserted plays a role in general jurisdiction analysis, it should certify the issue as appropriate for interlocutory review. Otherwise, the Court must amend its Order and hold that Louisiana does not have general personal jurisdiction over FCCI.

### D. The MDL statute does not create a national claims administration procedure

The American tort system's inability to handle mass tort cases is well documented. Lower courts have employed creative approaches, typically under Federal Rule of Civil Procedure 23, to try to overcome the tort system's shortfalls in such cases. The Supreme Court has, however, rejected judicial attempts to create a *de facto* national claims administration system. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 628-29 (1997) ("The argument is sensibly made that a nationwide administrative claims processing regime would provide the most secure, fair, and efficient means of compensating victims of asbestos exposure. Congress, however, has not adopted such a solution."); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

The district court in *Amchem* was charged with overseeing one of the asbestos MDLs, a proceeding more complex and convoluted than the Chinese-drywall MDL. *See Amchem*, 521 U.S. at 599. Through hard work and creativity, the district court worked closely with the parties to create a nationwide settlement. *See id.* at 599-609. The district court certified a settlement-only class under Rule 23(b)(3), and found that the settlement was fair under Rule 23(e). *Id.* The Third Circuit, however, decertified the class, and the Supreme Court affirmed. *Id.* at 611-12. The

Supreme Court held that the *Amchem* class did not satisfy the Rule 23 requirements, and that it was the role of Congress, not the courts, to enact a national claims administration regime for mass-tort cases. *Id.* at 628-29. Implicit in that holding is that the MDL statute cannot be used to create a national claims regime either, as the district court in *Amchem* was sitting as an MDL court.

The goal in many MDL proceedings is to facilitate a global settlement. Doing so is easier if the MDL court has jurisdiction over the entities that will fund the settlement. The MDL statute helps accomplish that in the sense that it allows cases where jurisdiction is properly established in other district courts to be transferred to this Court for pretrial proceedings. The MDL statute does not, however, allow the Court to assert jurisdiction over a defendant in an action filed directly in this Court, even if doing so will facilitate settlement. That is true even if a global settlement is not possible without the defendant's participation. If Congress wants to create a national claims administration process for mass torts and require that tortfeasors and their insurers pay into a fund, it may do so under the commerce clause. Doing so would eliminate the need for an individual state to gain jurisdiction over a defendant. This Court, however, has no power to create such a system under Rule 23, section 1407, or Article III. *See id.* at 628-29.

**III.    In The Alternative, This Court Should Certify The Order Under 28 U.S.C. § 1292(b), Because It Involves A Controlling Question Of Law Over Which There Is A Substantial Ground For Difference Of Opinion, And There Is A Significant Likelihood Such An Appeal Will Terminate This Litigation As To FCCI Conserving Significant Litigant And Judicial Resources.**

For the reasons discussed above, this Court should amend its Order and dismiss FCCI for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). In the alternative, FCCI requests that this Court certify its Order denying FCCI's personal jurisdiction Motion for interlocutory appeal pursuant to Federal Rule of Appellate Procedure 5(a)(3) and 28 U.S.C. § 1292(b) by adding the following statement to its Order:

> Pursuant to Federal Rule of Appellate Procedure 5(a)(3) and 28 U.S.C. § 1292(b), the Court certifies that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from this Order may materially advance the ultimate termination of the litigation.  The controlling question of law is:
>
> Whether Louisiana has general jurisdiction over an insurance company that has its principal place of business in Florida and does not have any offices or employees in Louisiana, and whether a district court's status as an MDL court can affect general jurisdiction analysis in a diversity of citizenship case.

The decision of whether the Court has personal jurisdiction over FCCI involves a threshold and potentially dispositive question of law, and is therefore appropriate for interlocutory review.  Indeed, the issue of personal jurisdiction is routinely reviewed on an interlocutory basis under Section 1292(b).  *See, e.g., Johnston*, 523 F.3d at 608-09 (noting the appeal arose under 1292(b), and reversing the district court's failure to dismiss for lack of personal jurisdiction); *Bearry*, 818 F.2d at 373 (noting the district court properly certified the personal jurisdiction question under Section 1292(b), and reversing the district court because personal jurisdiction was lacking).

In determining whether to certify a question for interlocutory appeal under 28 U.S.C. § 1292(b) three factors must be met:  (1) there must be a controlling question of law; (2) as to which there is a substantial ground for difference of opinion; and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation.  The advantages of immediate appeal "increase with the probabilities of prompt reversal, the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling.  *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d,* §3930, p. 416 (2010).

Here, all three factors are met.  First, whether Louisiana can exert general jurisdiction over FCCI is a "controlling question of law" as evidenced by the fact that this issue is routinely certified for interlocutory appeal in the Fifth Circuit.  *See, e.g., Johnston*, 523 F.3d at 608-09; *Bearry*, 818 F.2d at 373; *see also* 19 Moore's Federal Practice, § 203.31[2], p. 203-87 (Matthew Bender 3d ed. 2010) ("if resolution of the question being challenged on appeal will terminate the action in the district court, it is clearly controlling"); *see also Stafford vs. Briggs*, 444 U.S. 527, 528 (1980) ("The District Court denied the defendants' motion to dismiss the complaint for lack of personal jurisdiction, improper venue, and insufficiency of process, but certified the questions involved for immediate appeal."). Second, because the issue is probably dispositive of the claims against FCCI, an immediate appeal will materially advance the termination of the litigation and prevent a waste of judicial and litigant resources that would otherwise be unnecessarily expended if this case were to proceed through summary judgment or trial only to be reversed for lack of personal jurisdiction.  *Id.*

Finally, there is a "substantial ground for difference of opinion" regarding this controlling question of law. As the substantive arguments of this Order demonstrate, this Court's analysis differs substantially from controlling opinions in the Supreme Court and Fifth Circuit, and from persuasive precedent in other circuits.

FCCI recognizes that this Court recently refused to certify a similar question of personal jurisdiction under Section 1292(b). *See Harch Hyperbarics, Inc. v. Martinucci*, No. 09-7467, 2010 U.S. Dist. LEXIS 124095, at *6-9 (E.D. La. Nov. 9, 2010) (Fallon, J.). However, this Court's analysis of the issue in that case shows why a different result should be reached here. As this Court noted in *Martinucci*, the final factor is met where, as here, any of the following situations are present:

(1) "there is genuine doubt as to the correct legal standard to be applied";

(2) where "the circuits are in dispute on the question on the Court of Appeals of the circuit encompassing the district court has not spoken on the point";

(3) "where novel or difficult questions of first impression are presented"; or

(4) where there is "divergent application of a legal standard."

*Id.* (citations, quotations, and internal punctuation omitted).

In the event this Court denies FCCI's Motion, it will demonstrate there is genuine doubt about the correct legal standard because, as Justice Kagan recently noted, general jurisdiction cannot be found outside of the state of incorporation or principal place of business of an out-of-state corporation. (*see, supra* n. 2.) Similarly, the fact that the Supreme Court has accepted certiorari on two personal jurisdiction cases this term further demonstrates the standards are unsettled and the Circuits are in conflict. *See J. McIntyre Machinery Ltd. v. Nicastro,* U.S., No. 09-1343 (cert. granted 9/28/10 argued and submitted 1/11/2011); *Goodyear Luxembourg Tires SA v. Brown,* U.S., No. 10-76 (cert. granted 9/28/10, argued and submitted 1/11/2011).

Additionally, other district courts within the Fifth Circuit have found general personal jurisdiction lacking under similar facts, thus, this Court's denial of this Motion would demonstrate divergent application of a legal standard. Indeed, this Court's prior analysis of this issue shows the extreme divergence in the law, with the Fifth Circuit routinely rejecting the application of general personal jurisdiction and this Court (and other district courts) exercising general jurisdiction even where the high standards required by the United States Supreme Court are not met. (*See generally* Rec. Doc. No. 7356 at 16-17 (collecting nearly half a dozen Fifth Circuit cases holding general jurisdiction was not present, and comparing those to three district court cases where general jurisdiction was found).)

Finally, a decision by the Northern District of Texas from just last year involving an insurer demonstrates a direct conflict between that Court's application of these standards and this Court's prior analysis. *Compare* Rec. Doc. No. 7356 at 15-23 (holding general personal jurisdiction could be asserted over MCC merely because it was registered to do business in Louisiana and sold minimal unrelated insurance in Louisiana) *with Am. Bank, F.S.B.*, 2010 U.S. Dist. LEXIS 102341, at *11-19 (granting motion to dismiss for lack of personal jurisdiction over insurer because the claims did not arise from any specific contacts with Texas and there was no general jurisdiction even where the insurer was "licensed by the Texas Department of Insurance," issued, sold, and paid claims on insurance policies in Texas, hired and paid Texas attorneys in more than 100 cases in past 10 years, "contracted with Texas-based vendors and paid them more than $25 million over the past five years; purchased almost $400 million worth of Texas municipal bonds, upon which defendant receives over $15,000,000 annually in interest; *and paid over $80,000,000* in claims-related expenses to Texas-based insureds, claimants, adjusters, and others") (emphasis added)  These two decisions cannot be squared, which proves that there is a divide within the district courts in the Fifth Circuit that warrants interlocutory review under Section 1292(b).

## III.   <u>CONCLUSION</u>

For the foregoing reasons, FCCI requests that this Court amend its Order and dismiss FCCI for lack of personal jurisdiction, or, in the alternative, certify the issue for the Fifth Circuit Court of Appeals.

This 25th day of May, 2011.

Respectfully submitted,

GOODMAN MCGUFFEY LINDSEY & JOHNSON, LLP
Attorneys for FCCI COMMERCIAL INSURANCE
COMPANY and FCCI INSURANCE COMPANY


BY:    /s/ ROBERT M. DARROCH
       ROBERT M. DARROCH
       GA State Bar No.:  205490
       rdarroch@gmlj.com
       STEPHANIE F. GLICKAUF
       GA State Bar No.:  257540
       sglickauf@gmlj.com
       3340 Peachtree Road NE, Suite 2100
       Atlanta, GA 30326-1084
       Phone:  (404) 264-1500
       Fax:    (404) 264-1737

       AND


MOULEDOUX, BLAND, LEGRAND & BRACKETT, LLC


By:    /s/ PATRICK E. COSTELLO
       PATRICK E. COSTELLO (#26619)
       pcostello@mblb.com
       JACQUES P. DeGRUY (#29144)
       jdegruy@mblb.com
       4250 One Shell Square
       701 Poydras Street
       New Orleans, Louisiana  70139
       Telephone: 504-595-3000
       Facsimile: 504-522-2121

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing  FCCI COMMERCIAL INSURANCE COMPANY AND FCCI  INSURANCE COMPANY'S Brief in Support of their Motion to Alter or Amend the Court's Order Denying FCCI's Motion to Dismiss for Lack of Personal Jurisdiction has been served upon Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

This 25th day of May, 2011.

/s/ PATRICK E. COSTELLO
PATRICK E. COSTELLO (#26619)
pcostello@mblb.com
JACQUES P. DeGRUY (#29144)
jdegruy@mblb.com
4250 One Shell Square
701 Poydras Street
New Orleans, Louisiana  70139
Telephone: 504-595-3000
Facsimile: 504-522-2121