UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED | * | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | |
| | * | |
| THIS DOCUMENT RELATES TO: | * | JUDGE FALLON (L) |
| KENNETH ABEL, et al. | * | |
| vs. | * | |
| TAISHAN GYPSUM CO., Ltd. | * | |
| f/k/a SHANDONG TAIHE DONGXIN | * | |
| CO., Ltd., et al | * | |
| Case No. 11-080 | * | MAG. WILKINSON (4) |

## AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

MICHAEL STANLEY

who, being duly sworn, upon his oath deposed and stated as follows:

1.      He is the President for MSC of NWF, Inc. ("MSC of NWF"), and as such, has personal

knowledge of the following based on his review of records maintained by MSC of NWF in

the regular course of business.

2.      MSC of NWF is a corporation organized and existing under the laws of the State of

Florida and has its principal place of business in Gulf Breeze, Florida.

3.      MSC of NWF is a home builder that contracts with third party vendors for the



EXHIBIT

"A"

construction of single-family homes and/or sells completed single-family homes.

4.    MSC of NWF has never built a residence in the State of Louisiana nor had any

contracts or subcontracts with companies located in Louisiana.

5.    MSC of NWF has never been licensed or registered to do business in Louisiana or ever

had any offices or employees in Louisiana.

6.    MSC of NWF does not have an agent for service of process in Louisiana.

7.    MSC of NWF does not have any bank accounts in Louisiana or own any property in

Louisiana.

8.    MSC of NWF does not solicit business in Louisiana or ever transacted business in

Louisiana.

9.    MSC of NWF has never maintained a telephone line in Louisiana or kept a post office box

or otherwise received mail in Louisiana.

10.    MSC of NWF does not maintain an office, store, headquarters, shop, warehouse, or any

other facility in the State of Louisiana.

11.    MSC of NWF has never received any business from any contacts in Louisiana,

whether individual customers, or business customers.

12.    Consequently, MSC of NWF never anticipated it would be haled into court in Louisiana.

MICHAEL STANLEY

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 9th DAY OF May , 2011.

NOTARY PUBLIC

MARCIA W. CHANDLER
MY COMMISSION # EE 063954
EXPIRES: March 21, 2015
Bonded Thru Budget Notary Services

3

BUILDING CONSTRUCTION AGREEMENT

This Building Construction Agreement is made on the date last written by and between MSC of NWF, Inc., a Florida corporation, hereinafter called the "Contractor" and referred to as "it" where the context requires, and __Jerry Watson / Karen Gordon_____ of __1702 Fuller Drive, Gulf Breeze, FL 32563_____ (address), (850)939-6251 (phone), hereinafter called the "Buyer" for the uses and purposes contained herein.

The Buyer hereby accepts the agreement of the Contractor to provide improvements consisting of a building/dwelling on the following described real property in __Santa Rosa__ County, Florida, to-wit:
|  |
|---|
| 21-2S-27-1180-00000-0160 |
| Floridale Beach Lot 16 |
| 1759 Fuller Drive |
| Gulf Breeze, FL 32563 |

The Contractor and Buyer, for and in consideration hereinafter stated, agree as follows:

1. The Contractor shall furnish all tools, labor equipment, materials and services, and it shall perform all work shown on the drawings and/or described in the specifications or other contract documents, and shall do everything required by this contract except as modified herein. All work done shall be in a reasonable workmanlike manner. The drawings and/or specifications as referred to in this paragraph are as described on the exhibits attached hereto and as described on those certain plans and specifications identified by plan number __WCB0613_____, as prepared by __WCB CAD & Graphics__. Said plans shall be modified after the signing of this agreement only by consecutively numbered written change orders which shall be signed by both parties.

2. The building/dwelling shall be substantially completed and ready for the final inspection by the appropriate government authorities within __N/A__ days after the filing of the Notice of Commencement in the Public Records of the county where the property is located. Time for completion shall be tolled and suspended for acts of God, suppliers or transportation industry strikes, or unavailability of materials not caused by any fault of the Contractor, delay in obtaining specially ordered items or fixtures, and during period of Arbitration of any disputes under this Agreement.

3. The Contractor agrees to provide evidence that insurance coverage has been placed on the property during the construction period to protect the finished work and the materials on the job against loss by fire, theft, or other hazards. Contractor agrees to provide its own builder's risk insurance including liability coverage of an amount equal to or greater than the contract price herein.

4. Both parties agree that the Buyer shall be responsible to pay for any extras and for additions or modifications in the plans and specifications unless the Contractor and the Buyer shall agree and consent otherwise in writing as provided in Paragraph 1. The first three change orders will be for the cost to do the changes. After the third change order, change orders are subject to a $250 administrative fee. All change orders become due within three (3) working days of commencement of approved change orders.

5. The Buyer shall not have the right to occupy the said premises until after the said improvements have been substantially completed, final building inspections with certification approved, and the Contractor has been paid in full for all sums due it under this contract, including any extras or additions requested by the Buyer or agreed among the parties, and all requirements to the covenants have been met. Customers with Construction/Permanent financing will modify within five days of final inspection by the bank.



EXHIBIT

"B"

Page 2

6. The contract price for the above construction is  Two Hundred Two Thousand,  Three Hundred Thirty-Four & 00/100 dollars ( $202,334.00). **Price is subject to market conditions. Costs may vary and are guaranteed for 30 days from date of this contract. Any fluctuation of more than 10% will require a surcharge change order for cost plus overhead and profit of 25%.**

7.  The Buyer agrees to provide funds in either cash or a mortgage through an approved lending institution for the amount above and to make payments according to the following schedule of disbursements, which are percentages of the total sales price, or the disbursement schedule established by the lending institution utilized by the Buyer for a construction loan to build the improvements.  If buyer is paying cash, all or in part, these funds will be held in escrow through an escrow agent authorized by the seller.  The escrow account will be established upon signing of the contract and disbursements will be made as followed.

SCHEDULE OF DISBURSEMENTS:

1st Draw - 15% of contract price

Rough grade, staked, footer dug; rough plumbing, wire mesh, if any, and vapor barrier installed; slab poured/sub floor finished.

2nd Draw - 25% of contract price

Lintel poured/exterior walls installed through top plate, roof trussed, dried in; interior framed and walls furred.

3rd Draw - 25% of contract price

Electric roughed in, air conditioner ductwork installed, windows set and glazed, sliding glass installed, if any; roof finished; plaster/drywall completed; exterior walls completed and exterior doors hung.

4th Draw - 20% of contract price

Cabinets and vanities installed; interior trim completed, interior doors hung; interior and exterior paint completed; finished plumbing fixtures installed; water heater and air handler installed; sidewalks and drive completed; grade site roughed; electrical trim out completed.

5th Draw - 15% of contract price - Certificate of Occupancy will not be issued until contract is paid in full.

Kitchen appliances and light fixtures installed; air conditioner compressor set; sod/landscaping completed; building substantially completed and ready for occupancy; the necessary receipted bills and/or release of lien have been furnished to the Buyer and/or lender.

8.

**ACORDING TO FLORIDA'S CONSTRUCTION LIEN LAW (SECTIONS 713.001-713.37, FLORIDA STATUTES), THOSE WHO WORK ON YOUR PROPERTY OR PROVIDE MATERIALS AND ARE NOT PAID IN FULL HAVE A RIGHT TO ENFORCE THEIR CLAIM FOR PAYMENT AGAINST YOUR PROPERTY. THIS CLAIM IS KNOWN AS A CONSTRUCTION LIEN. IF YOUR**

Page 3

**CONTRACTOR OR A SUBCONTRACTOR FAILS TO PAY SUBCONTRACTORS, OR MATERIAL SUPPLIERS OR NEGLECTS TO MAKE OTHER LEGALLY REQUIRED PAYMENTS, THE PEOPLE WHO ARE OWED MONEY MAY LOOK TO YOUR PROPERTY FOR PAYMENT, EVEN IF YOU HAVE PAID YOUR CONTRACTOR IN FULL. IF YOU FAIL TO PAY YOUR CONTRACTOR, YOUR CONTRACTOR MAY ALSO HAVE A LIEN ON YOUR PROPERTY. THIS MEANS IF A LIEN IS FILED YOUR PROPERTY COULD BE SOLD AGAINST YOUR WILL TO PAY FOR LABOR, MATERIALS OR OTHER SERVICES THAT YOUR CONTRACTOR OR SUBCONTRACTOR MAY HAVE FAILED TO PAY. FLORIDA'S CONSTRUCTION LIEN LAW IS COMPLEX AND IT IS RECOMMENDED THAT WHENEVER A SPECIFIC PROBLEM ARISES, YOU CONSULT AN ATTORNEY.**

9. The sole remedy the Buyer and Contractor have to expedite resolution of any disputes arising under this Contract or interpretation regarding this Contract, the parties mutually agree to arbitrate all disputes, claims, and interpretations matters relating to this Contract and the construction taken hereunder. In such event, either party shall give written notice to the other party of such dispute, claim or matters to be interpreted, and shall include in such notice a reasonable summary of such dispute, claim, or matters to be interpreted, and such shall constitute a written Demand for Arbitration. If the other party does not respond in writing within ten days of the Demand for Arbitration, then the other party shall be deemed to have waived his, her or its rights to Arbitration, and the demanding party may then proceed to litigate disputes, claims and matters of interpretation as he, she, or it may deem appropriate. For purposes of this provision and all other provisions relating to Notice in this Contract, written notice shall be deemed to have been given when delivered personally from one party to the other or upon receiving receipt after having been sent by Certified or Registered Mail, Return Receipt Requested, to the last known mailing address of the party. In the event the other party shall have responded to the Demand for Arbitration, then the parties may appoint an individual who is an active member in good standing of the Northwest Florida Home Builders' Association or its successors. In the event the parties do not agree upon an individual to be chosen from this Association within seven days of response to the Demand for Arbitration of the other party, then each party may appoint an Arbitrator of its own choice and shall be responsible for the reasonable expenses for that individual. The two Arbitrators may then select a third Arbitrator, who shall serve as Umpire, and the expense of the Umpire shall be borne equally to the two parties. A written decision by the majority of the Arbitrators and Umpire shall be binding upon the parties. Reasonable cost & attorney's fees by either party to submit their matter to arbitration shall be recovered by the prevailing party. With respect to matters of arbitration, the Arbitration Code under the Florida statutes shall apply except as where specifically pre-empted by these provisions.

Page 4

10. This Building Construction Agreement, together with all addendums, written change orders, plans and specifications referred to herein, and such other writings attached to and incorporated and made a part of this Building Construction Agreement constitutes the entire agreement of the parties. No prior or present agreements or representations shall be binding upon any of the parties hereto unless incorporated into this Building Construction Agreement.

11. Time is deemed to be of the essence in this Agreement.

12. This Contract may be assigned by either party for all intents and purposes under law. Moreover, it shall become binding upon the heirs, assigns and personal representatives of the parties.

13. Contractor retains the right to terminate this contract at any time for cause or no cause and receive compensation as described in Paragraph 6 based upon the progress made at time of termination, plus reasonable overhead and profit.

This Agreement is executed on the _11th_ day of _May_ , 20 _06_ by the Contractor.

By: _Michel Stulge_
Its: _President_

This Agreement is executed on the _11th_ day of _may_ , 20 _06_ by the Buyer.

Buyer _Jerry B Walton_
_Karen L Gordon_

ADDENDUM TO BUILDING CONTRACT

Contract Dated: _May 11, 2006_____

Buyer's Name: ____Jerry Watson_____

Contractor's Name: __MSC of NWF, Inc._____

Property Location: ___1759 Fuller Drive, Gulf Breeze, FL 32563_____

**The undersigned Buyer and Contractor agree to the following:**

Custom 1 story floor plan as per customer with a total of 1638 square feet with brick exterior, 3 bedrooms and 2 bathrooms built as per plans and to MSC of NWF, Inc. custom home specifications.

**Included with the above is the following as per plan:**

Concrete allowance for foundation – 52 yds @ $100. per yd
Dirt for foundation, septic & backfill allowance 1000 yds
Door knobs & bath hardware allowance $600.00
Tile allowance – 474 s.f. @ $6.50 per s.f.
Carpet allowance – 127 sq. yds. @ $15. sq. yd.
Concrete for driveway & patio allowance 22 c.y. @ $95.00 c.y.
Cabinets for kitchen & bath allowance  $7000.00
Cambria Quartz counter top allowance $3063.00
Marble vanity tops allowance $600.00
Roofing allowance 39 squares @ $100.00 per square
Range, Range hood & Dishwasher allowance $1000.00
Spa allowance $5000.00
Plumbing fixtures as per specs.
Generator allowance $7369.00
          Includes 1 – 100 amp transfer switch
Lighting allowance $2750.00
Brick allowance 16,000 bricks
Sod allowance 20 pallets
Shrub allowance $350.00
          Includes plants, planting & pine straw
Well & sprinkler system allowance $2300.00
Shower doors allowance $500.00
Septic system allowance $3500.00

**Contract is subject to engineering of plans and Santa Rosa County Plan Review.**

Included with the Building Construction Agreement:
1. MSC of NWF, Inc. Specifications          3. Limited Warranty & Service Policy
2. Rendering of elevation & floor plan     4. $5,000 non-refundable deposit
   showing changes

ADDENDUM TO BUILDING CONTRACT (continued)

Attachments to follow and to be included as signed off on by buyer:
1. Worksheet – customer's selections        3. Final lighting selections
2. Elevation, floor plan, & electrical plan   4. Change orders

 

    This Agreement, upon its execution by both parties, is herewith made in integral part of the aforementioned Building Contract.

Jerry Watson     Karen L. Gordon

Michael Stanley, President
MSC of NWF, Inc.

The brokers named below, including listing and selling brokers, are the only brokers entitled to compensation in connection with the contract between MSC of NWF, Inc. and _____ :

_____
Selling Broker

_____
Selling Agent

Contract Amount: _____          Bonus (If any): _____
Commission: _____

**Commissions are paid when customer modifies to a permanent loan.**

**No commission shall be paid on upgrades paid for by Buyer.**

# NO REALTORS INVOLVED



P.O. Box 6467
8855 Navarre Parkway
Navarre, Florida 32566

**MSC** OF NWF, INC.

(850) 936-0060
Toll Free 1-877-351-7697
Fax (850) 936-0205

## LIMITED WARRANTY AND SERVICE POLICY

Purchaser:   Jerry Watson
                   Karen Lee Gordon
                   Charles Michael Gordon

Property:    1759 Fuller Drive, Gulf Breeze FL 32563

For good and valuable consideration, the undersigned warrantor hereby warrants to the Purchasers or Owners designated in the caption hereof, that:

The dwelling located on the property identified in the caption hereof is constructed in substantial conformity with the plans as filed with the Building Department (including any amendments or changes and variations thereof). This warranty shall apply only to such instances of substantial nonconformity to which the Purchasers or Owners shall have given written notice to the Warrantor at any time or times within one (1) year from the day of conveyance of title to such Purchasers or Owners or from the date of occupancy of the dwelling, whichever first occurs, provided, however, that this warranty shall not apply to defects or damage which are the result of contraction or expansion or the result of other normal or ordinary characteristics of building materials.

This Warranty and Service Policy shall not apply in the case of defects or damage resulting from or aggravated by any neglect or failure on the part of Purchasers or Owners to properly maintain such property in such a manner, as a reasonable prudent person would be expected to do.

This Warranty and Service Policy is not transferable, and any obligation there under shall terminate if the property is sold or shall cease to be occupied by the original Purchasers or Owners.

As is indicated in the Warranty, your home is warranted for substantial nonconformity for a period of one (1) year. This policy is designed to clearly differentiate the exclusions, defining the areas of responsibility of both the Builder and the new homeowner.

This policy is designed to insure the correction of most usual maintenance items that may arise during the periods covered by this policy as indicated below. These periods commence with acceptance or conveyance of the property whichever is earlier. To be honored, requests for service must be in writing and must follow the claim procedure as hereinafter described.

1. FOUNDATION AND CONCRETE - Builder will remedy condition of seepage occurring during periods of normal high water table, or caused by springs, and reported within one (1) year. Not covered by this policy is seepage due to unusual flooding, from rains greater than two inches (2") in twenty-four (24) hours, nor from normal settlement around foundation, nor from condensation due to excessive humidity. It is the homeowner's responsibility to maintain positive drainage away from the building at all times. If the ground around the foundation appears to settle, this must be filled speedily. It is not possible to prevent concrete from cracking because of the nature of the material. Cracking, pitting and flaking can occur and are not covered, except for those foundation cracks which emit water. These are covered for one (1) year. Cracks do not impair the structural strength of the dwelling.

2. A TIGHT ROOF - around the chimney and shingles is warranted for one (1) year. Damage, if any, caused by the elements backing up under the shingles or from seepage around and under the openings is excepted from the provisions of this Warranty. It is the responsibility of the homeowner to insure free passage in downspouts at all times. Damage, if any, caused by windblown rain through roof, gable or soffit vents or louvers into attic space and any openings (i.e.. garage door, exterior doors or windows) around the home is excepted from the provisions of this warranty.

3. THE HVAC SYSTEM - is warranted to heat the home to a temperature of 70 degrees Fahrenheit at the thermostat at 0 degrees Fahrenheit outside, for a period of one (1) year. Free adjustments will be made if the thermostat does not reach 70 degrees Fahrenheit at 0 degrees Fahrenheit outside during the one (1) year warranty period. The homeowner should clean or change filters monthly.

4. PLUMBING AND SEWAGE DISPOSAL SYSTEM - Since the contractor is unable to monitor the proper usage of the sewage disposal system as stated by the manufacturer and the State of Florida Environmental Health Department and its agents, The sewage disposal system is excepted from the provisions of this warranty. Since the contractor does not have control of the amount of water or pressure supplied to the house, the water supply is excepted from the provisions of this warranty. Dripping faucets and any loose fittings occurring within ninety (90) days will be repaired by the Builder. Owner is responsible to prepare the exterior faucets before the advent of winter. Frozen exterior pipes are never the responsibility of the Builder.

5. <u>MECHANICAL EQUIPMENT</u> - is covered by manufacturer's warranties. In some cases, parts are covered and labor is not. Be sure to check individual manufacturer's warranty. All kitchen and bathroom equipment and countertops are assumed to be accepted by buyer unless defects are brought to the builders attention in writing prior to either conveyance or occupancy, whichever is earlier. The homeowner according to manufacturer's instructions must maintain all equipment.

6. <u>ELECTRICAL ADJUSTMENTS</u> - Replacements will be made by the Builder if any are required, for a period of one (1) year. Light bulbs are not covered.

7. <u>GLASS OR SCREEN BREAKAGE</u> - is not covered by this policy unless Builder is notified in writing prior to occupancy or conveyance, whichever occurs first.

8. <u>LANDSCAPING</u> - The Builder has sodded according to specifications. All other disturbed areas will be graded. Quality sod has been used. The responsibility for successful growth of grass remains with the homeowner. Lawns must be watered carefully to receive the equivalent of one (1) inch of rainfall per week, fertilized in April and late August, and large spots reseeded. Consult a garden shop for instructions in liming and fertilizing. Keep lime away from evergreens. Private wells for irrigation or potable use, and irrigation systems are excepted from the provisions of this warranty. Frozen pipes are not the responsibility of the builder. It is the responsibility of the owner to prepare the irrigation system and pump before the advent of winter.

9. <u>SHRUBBERY</u> - is warranted to be alive and healthy when planted. No warranty exists as to the length of life. Shrubs must be protected from the seasons, watered and fertilized. For details, consult your garden shop.

10. <u>EXTERIOR DOORS</u> - are warranted for a period of one (1) year against warping over three-eighths of an inch (3/8").

11. <u>TRENCHES FOR WATER, SEWER, AND SEPTIC TANKS</u> - are warranted against cave in for one (1) year following conveyance or occupancy, whichever occurs later. For gas trenches, consult gas company.

12. <u>CERAMIC AND RESILIENT TILES</u> - occasionally contain imperfections which do not require service. Due to the characteristics of wood, the elements, and the nature of the construction, grout cracks are not covered under this warranty. The occurrence of scratches or cracked tile are not covered by the policy unless brought to the attention of the Builder prior to conveyance or occupancy. Loose tiles and flag-stones are covered by this policy for thirty (30) days. It is the homeowner's responsibility to replace loose or cracked tile, and grout to prevent penetration of moisture into floors and walls.

13. <u>LAMINATED COUNTER TOPS</u> - are covered for one (1) year against delaminating. Bubbling or scorching caused by hot objects is not covered.

14. <u>EXTERIOR PAINT, STAIN FAILURE</u> - are covered for six (6) months against blistering and peeling. Normal fading of paint or stain is not covered. Paint or stain on clapboards is warranted for a period of six months only if clapboards are factory-primed. No interior paint peeling or paper nicks, dents, scratches, or other imperfections are covered unless the Builder is notified of such defects in writing prior to either conveyance or occupancy, whichever is earlier.

15. <u>CLAPBOARDS AND SHINGLES</u> - are covered against splitting for ninety (90) days however, it is not always possible to match paint, and any variance in color subsequently applied is unavoidable. As this splitting condition is not evidence of structural failure, replacement is not always advised.

16. <u>PROTRUDING DRYWALL AND PLASTER</u> - nails or seams are covered for ninety (90) days. Hairline cracks and seams are not covered by this policy as they do not represent structural failure. Repairs of plaster or gypsum wallboard may not completely bond with surrounding materials as it is almost impossible to match exactly the color and texture of the original surface. Repairs without charge will be limited to the problem area.

17. <u>REPAIR OF HARDWOOD FLOORS</u> - which swells or buckles is covered for ninety (90) days. Shrinkage and separation of floor boards is normal and is not covered. This can be retarded by raising the relative humidity in the dwelling.

18. <u>DOORS, DRAWERS, WINDOWS AND INTERIOR FINISH</u> - are covered by this policy for warping, sticking, or looseness for ninety (90) days. These items have a tendency to swell and shrink at different times of the year. Some may warp in winter and straighten in summer. Within ninety (90) days, items that cannot be made to operate will be exchanged. Windows are not 100% leak proof, and cold air outside can set up moving air inside. If this is the case, storm windows are recommended. Shrinkage of doors inside the jamb is normal, and if doors can be made to operate, they will not be replaced. Shrinkage and joint opening of door, window and baseboard casings is not covered by this policy. During the summer months, the space between doors, jambs and sills is approximately 1/8" to 1/4". During the winter this increases to approximately 1/4" to 3/8".

19. <u>EXCLUSIONS FROM COVERAGE</u> - THE BUILDER DOES NOT ASSUME RESPONSIBILITY FOR ANY OF THE FOLLOWING, ALL OF WHICH ARE EXCLUDED FROM THE COVERAGE OF THIS LIMITED WARRANTY AND SERVICE POLICY:

    (a) Shrinkage and separation of floor boards:

    (b) Cracks and twisting of studs, joists, and beams;

(c) Grazing (hairline cracking) on interior exposed beams and exterior plywood;

(d) Normal fading of paint or stain;

(e) Shrinkage of joint opening of door and window casing and other wood materials;

(f) Normal occasional dents associated with installation of woodwork;

(g) Defects in appliances and pieces of equipment which are covered by manufacturers' warranties;

(h) Damage due to ordinary wear and tear, abusive use, or lack of proper maintenance of your home, or tenants who occupy the home in your absence;

(i) Defects in items installed by you or anyone else except Builder or (if requested by Builder) subcontractors;

(j) Any materials or fixtures not requested or not provided by the builder or work done by you or anyone else except Builder or (if requested by Builder) subcontractors;

(k) Damage caused from water backup and seepage due to wind driven rain, ice dams, gale winds and other acts of God;

(l) Shrinkage, splitting and warping of exterior decking and steps;

(m) Sewage disposal systems;

(n) Water supply from private well or public water supply;

(o) All items covered by a manufacturer's warranty.

(p) Any materials or fixtures provided by the customer, or work contracted outside the original contract between Michael Stanley Construction, Inc. and the customer is not covered under this Limited Warranty and Service Policy.

20. CLAIMS PROCEDURE - If a defect appears which is covered by this limited Warranty and Service Policy, you must contact the subcontractor from the list provided to arrange all warranty work. As your list states, arrangements need to be made by you with the subcontractor to have repairs done. Also send a letter to the office immediately after contacting subcontractors stating the defect, subcontractors response, and date and time repairs are to be made. If letter is not received in the office, any additional work resulting from repair will not be covered. The subcontractor list will be provided upon the final closing or modification.

21. <u>WARRANTY DISCLAIMERS</u> - THIS WARRANTY IS THE ONLY EXPRESS WARRANTY WE PROVIDE. EXCEPT AS OTHERWISE REQUIRED BY FLORIDA LAW, ALL IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO WARRANTIES OF HABITABILITY, ARE LIMITED TO THE WARRANTY PERIOD SET FORTH ABOVE. CONSEQUENTIAL AND INCIDENTAL DAMAGE ARE EXCLUDED TO THE FULL EXTENT PERMISSIBLE UNDER FLORIDA LAW FROM THE COVERAGE OF THIS WARRANTY.

IN WITNESS whereof the parties have signed and sealed this warranty this 20th day of October , 2006.


Michael Stanley
President
MSC of NWF, Inc



Jerry Watson



Karen Lee Gordon



Charles Michael Gordon