# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

KENNETH ABEL, individually, and on
behalf of all others similarly situated, *et al.*

CASE NO. 11-080

SECT. L MAG. 2
CLASS ACTION
COMPLAINT

      Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. f/k/a
SHANDONG TAIHE DONGXIN CO., LTD.;
TAIAN TAISHAN PLASTERBOARD CO.,
LTD.; QINHUANG DAO TAISHAN BUILDING
MATERIALS CO., LTD., *et al.*

      Defendants.

_____/

## DEFENDANT BREAKWATER CUSTOM HOMES, INC.'S CROSS CLAIM

COMES NOW Defendant/Cross-Plaintiff Breakwater Custom Homes, Inc.

("**Breakwater**"), by and through its undersigned counsel, and alleges for its Cross Claim[1]

against Defendants/Cross-Defendants South Florida Custom Trim, Inc. ("**SFCT**"), Stock

Building Supply, LLC ("**Stock**"), Stock Building Supply Holdings, LLC ("**Stock Holdings**"),

Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("**TG**") and Taian Taishan

Plasterboard Co., Ltd. ("**TTP**") as follows:

---

[1]     Plaintiffs Robert and Joanne Santimauro commenced this action against Breakwater on January 14, 2011 by filing an Omnibus Class Action Complaint (VII) (the "**Complaint**" or "**Cmplt.**") in this cause. In response, Breakwater has moved to dismiss the Complaint. DE 8641. Breakwater is therefore asserting this Cross-Claim to the extent not all claims against Breakwater are dismissed in their entirety with prejudice. In the event not all of Plaintiffs' claims against Breakwater are dismissed with prejudice, Breakwater expressly reserves the right to raise any and all available defenses and to respond to the Complaint accordingly.

## CROSS-CLAIMS

### The Parties, Jurisdiction and Venue

1.     This is an action for damages within the monetary jurisdiction of this Court.

2.     The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs, Robert Santimauro and Joanne Santimauro (Cmplt. ¶ 465), and all potential members of the putative subclass claiming against Breakwater.

3.     Breakwater was a Florida corporation doing business in Lee County, Florida, where this cause of action arose.  At all material times, Breakwater was a builder of residential homes in Lee County.

4.     Breakwater has been named as a defendant in the above-styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Breakwater in the construction of their residential home was defective and caused damages to Plaintiffs.

5.     Breakwater denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.     SFCT, Stock, Stock Holdings, TG and TTP (collectively, the "**Cross-Claim Defendants**") have also been named as defendants in the above-styled action.  Breakwater adopts and incorporates, as if fully set forth herein, Paragraphs 583-85, 636-37 and 873 of the Complaint, identifying each of the Cross-Claim Defendants and describing the alleged nature of their business activities.

7.     Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amount in controversy exceeds $75 thousand, exclusive of interest and costs.

8.     This Cross Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over

Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross Claim and over the instant Cross-Claim Defendants.

## General Allegations

9.       As set forth more fully in the Complaint, Plaintiffs allege that their residential home (the "**Home**") was built using defective drywall designed, manufactured and processed in China, and that Breakwater is liable for damages to Plaintiffs. *See* Cmplt. ¶¶ 882-93.[2]

10.       Plaintiffs allege that the drywall installed in the Home has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Home, including but not limited to wiring, plumbing, appliances and Plaintiffs' personal property (the "**Other Property**").

11.       Plaintiffs further allege that the drywall contained in the Home was manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of the Cross-Claim Defendants.

12.       Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.       On or about June 1, 2005, Breakwater entered into a Subcontractor Base Agreement (the "Base Agreement") with SFCT whereby SFCT, as the "Subcontractor," was to supply Breakwater with gypsum drywall to be used in the construction of residential homes and install the drywall.   A copy of the Base Agreement is attached hereto as "Exhibit A."

14.       Pursuant to the Base Agreement, SFCT furnished and installed the drywall used in the Home.

---

[2]       Plaintiffs and other members of the putative class have asserted claims against Breakwater in this Action and in certain Florida state courts.   The damages Breakwater is seeking in this Cross-Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class plaintiff and any other member of the putative class in any and all state and federal courts.

{M3057778;1}

15.     On information and belief, SFCT purchased or otherwise procured the allegedly defective drywall that it installed in the Home from Stock and/or Stock Holdings.

16.     At all material times, SFCT knew that the drywall purchased for the Home was going to be used in the construction of residential homess.  SFCT knew that Breakwater required and expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.*, safe and fit for use in the construction of residential homes.

17.     At all material times, Stock and Stock Holdings knew that the drywall that SFCT purchased or otherwise procured for the Home was going to be used in the construction of residential homeses.  Stock and Stock Holdings also knew that Breakwater was a foreseeable user of the drywall and that Breakwater required and expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.*, safe and fit for use in the construction of residential homes.

18.     Upon information and belief, Stock and Stock Holdings procured the drywall that was installed in the Home from TG and/or TTP, who manufactured the drywall to be exported to the United States.  At all material times, TG and TTP knew that such drywall was going to be used in the construction of residential homes.

19.     Breakwater did not know and was not made aware of the problems with the drywall.  Breakwater did not alter or otherwise substantively change the drywall manufactured, exported, imported, distributed, sold and/or installed by the Cross-Claim Defendants for use in the construction of the Home.

20.     For the purpose of this Cross Claim only, and not constituting an admission of the allegations or liability by Breakwater, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Home are adopted and incorporated as if

{M3057778;1}

4

set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by allegedly defective drywall in the Home.

21.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, the Cross-Claim Defendants had greater knowledge and/or stood in a better position than Breakwater to know of the drywall's applications, performance, and dangers.

22.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Cross-Claim Defendants' acts and omissions in manufacturing, exporting, importing, distributing and/or selling the defective drywall directly and proximately caused and/or exposed Breakwater to substantial liability and damages to Plaintiffs.

23.     Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Home, such Other Property was independent from and/or unconnected with the gypsum drywall installed in the Home.

24.     Moreover, Breakwater did not know and was never informed by any of the Cross-Claim Defendants that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.

25.     Consequently, the Cross-Claim Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Home that caused Plaintiffs' alleged injuries and damages, and further damages to Breakwater in responding to

{M3057778;1}

Plaintiffs' concerns and defending the action filed by Plaintiffs. Additionally, the Cross-Claim Defendants' wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

26.      All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

**COUNT I – BREACH OF CONTRACT**
**(Against SFCT)**

27.      Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

28.      This is an action for breach of contract against SFCT.

29.      Pursuant to the Base Agreement (Exhibit A hereto), SFCT installed, supplied, furnished and/or sold the drywall in the Home. Plaintiffs allege that the drywall is defective and has caused them injury, for which they have sought relief from Breakwater.

30.      The installing, supplying, furnishing and/or selling of defective drywall constitutes a material breach of, among other provisions, Section 1.2 of the Base Agreement.

31.      Breakwater is entitled to recover costs, interest and attorneys' fees under the Base Agreement.

32.      Breakwater has satisfied all duties to SFCT under the Base Agreement, or those duties have been waived or otherwise excused.

33.      Breakwater has been damaged by SFCT's material breach(es) of the Base Agreement.

**WHEREFORE**, Defendant Defendant Breakwater Custom Homes, Inc. demands judgment in its favor against South Florida Custom Trim, Inc. for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

{M3057778;1}

## COUNT II – CONTRACTUAL INDEMNITY
### (Against SFCT)

34.     Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

35.     This is an action for contractual indemnity against SFCT.

36.     SFCT's liability to Breakwater with respect to Plaintiffs' claims arising from the drywall install in the Home, if any, would be constructive, technical, vicarious and/or derivative.

37.     The Base Agreement provides, *inter alia*, that:

> Subcontractor agrees and does by this agreement indemnify Contractor against all loss, harm, damages, causes of action, claims or liability rising out of or related to work performed or to be performed by Subcontractors [sic], its employees, agents, representatives, Subcontractors, including but not limited to injury to persons and to property either of them and including all court costs and attorney's fees incurred by Contractor.

Base Agreement § 5.0 (Exh. A); *see also id.* § 11.6 ("Subcontractor agrees to hold harmless and unconditionally indemnify Contractor against all liability, cost, expenses, claims and damages … in any manner arising from the work performed hereunder ….").

38.     Plaintiffs have sued Breakwater based on the alleged presence of defective drywall furnished and installed in the Home by SFCT and, as a result, Breakwater has been compelled to retain counsel to defend against and address such claims.

39.     Under the Base Agreement, Breakwater is entitled to unconditional reimbursement for damages caused by the drywall installed, supplied, furnished and/or sold by SFCT, costs and attorneys' fees incurred by Breakwater in defending Plaintiffs' claims and in pursuing these Cross-Claims, and such other relief as this Court may deem appropriate.

**WHEREFORE**, Defendant Defendant Breakwater Custom Homes, Inc. demands judgment for contractual indemnity in its favor against South Florida Custom Trim, Inc. for

{M3057778;1}

damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

## COUNT III – COMMON LAW INDEMNITY
### (Against SFCT)

40.     Breakwater reasserts and realleges the allegations in paragraphs 1 through 26_ above as if fully set forth herein.

41.     This is an action for common law indemnity against SFCT.

42.     Plaintiffs in the Complaint assert claims against Breakwater for damages caused by allegedly defective drywall contained in the Home.

43.     Breakwater is not and was not in the business of installing, furnishing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall installed, supplied, furnished and/or sold by SFCT.   Breakwater justifiably relied on SFCT to supply and install drywall that was not defective – i.e., that was safe and fit for use in the construction of residential homes.

44.     Any alleged injuries suffered by Plaintiffs are due to the wrongful acts or omissions of SFCT.  As the installer, supplier and/or seller of allegedly defective drywall, SFCT is wholly at fault and responsible for all losses and injuries caused by the drywall.

45.     Breakwater is entirely without fault for the injuries alleged by Plaintiffs.

46.     A special relationship exists between Breakwater and SFCT such that any liability imposed on Breakwater in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to SFCT, and Breakwater has the right to be indemnified for all damages sustained as a result of the drywall in the Home, including all expenses incurred in connection with this lawsuit.

{M3057778;1}

47.     As a result of the claims asserted against Breakwater in this action, and as a result of SFCT's acts or omissions, Breakwater has and will continue to incur losses, damages, costs, attorneys' fees and expenses.

48.     If Breakwater is found to be liable to Plaintiffs, SFCT is liable to Breakwater for any loss, damages, costs, and expenses – including attorneys' fees – related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Breakwater, including without limitation payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Breakwater Custom Homes, Inc. demands judgment for indemnity in its favor against South Florida Custom Trim, Inc. for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT IV – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against SFCT)

49.     Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

50.     This is an action, stated in the alternative, against SFCT for contribution pursuant to Section 768.31, Florida Statutes.

51.     Plaintiffs in the Complaint assert tort claims against Breakwater for purported damages caused by alleged defects in the drywall contained in the Home.

{M3057778;1}

9

52.   Without admitting any liability or damages to Plaintiffs, should Breakwater be found liable to Plaintiffs, SFCT would share in the liability to the extent its acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

53.   Breakwater has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

54.   To the extent that any common liability is found with respect to Breakwater, Breakwater hereby asserts its right of contribution against SFCT for its pro rata share of liability.

55.   SFCT should be required to repay Breakwater for any loss, damages, costs, and expenses – including attorneys' fees – Breakwater is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Breakwater, in excess of its pro rata share of any common liability.

**WHEREFORE**, Breakwater Custom Homes, Inc. demands that judgment be entered against South Florida Custom Trim, Inc. for its pro rata share of the liability, if any, found against Breakwater in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## COUNT V– EQUITABLE SUBROGATION
### (Against SFCT)

56.   Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

57.   This is an action, stated in the alternative, against SFCT for equitable subrogation.

{M3057778;1}

58. Plaintiffs in the Complaint allege various claims against Breakwater for damages caused by allegedly defective drywall contained in the Home.

59. Breakwater is not and was not in the business of installing, supplying, furnishing and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall installed, supplied, furnished and/or sold by SFCT. Breakwater justifiably relied on SFCT to install, supply, furnish and/or sell drywall that was not defective – i.e., that was safe and fit for use in the construction of residential homes.

60. Without admitting any liability or damages to Plaintiffs, Breakwater is not primarily liable for any liability to Plaintiffs.

61. To the extent that Breakwater is required to pay damages for any fault of SFCT to protect its own interests, Breakwater would be entitled to reimbursement from SFCT under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Breakwater, including without limitation payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Breakwater and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Breakwater, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against the claims brought by Plaintiffs.

62. Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Defendant Defendant Breakwater Custom Homes, Inc. demands judgment for equitable subrogation in its favor against South Florida Custom Trim, Inc. for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

## COUNT VI – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## UNDER COMMON LAW AND/OR FLA. STAT. § 672.314
### (Against SFCT)

63.     Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

64.     This is an action against SFCT for breach of the implied warranty of merchantability under the common law and/or Section 672.314, Florida Statutes.

65.     Breakwater hired SFCT to furnish and/or install drywall in the Home.  SFCT knew that Breakwater required and expected the drywall it installed, supplied, furnished and/or sold to be fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes, and Breakwater justifiably relied on SFCT's skill and judgment to furnish and install such drywall for the construction of residential homes.

66.     Pursuant to the relationship between the parties, SFCT is deemed to have provided Breakwater with an implied warranty of merchantability as to the drywall materials installed, supplied, furnished and/or sold by SFCT.

67.     The drywall installed, supplied, furnished and/or sold by SFCT for use in the construction of the Home was not altered and/or otherwise substantively changed by Breakwater.

68.     Pursuant to Fla. Stat. § 672.314 and/or common law, SFCT warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.

69.     Plaintiffs in the Complaint allege various claims against Breakwater for damages caused by defective drywall contained in the Home.  Breakwater denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Home is defective and not merchantable and Breakwater is found liable to Plaintiffs, SFCT

{M3057778;1}

breached the implied warranty of merchantability by installing, suppling, furnishing and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential homes construction.

70.     As a result of the claims that have been filed against Breakwater, Breakwater has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of SFCT to install, supply, furnish and/or sell drywall fit for its intended purpose, *i.e.*, for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.  SFCT's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

71.     Breakwater timely notified SFCT of the alleged defective gypsum drywall, but SFCT has failed to repair or replace the defective gypsum drywall.

**WHEREFORE,** Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against South Florida Custom Trim, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT VII – BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Against SFCT)

72.     Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

73.     This is an action against SFCT for breach of the implied warranty of fitness.

74.     Breakwater hired SFCT to furnish and/or install drywall in the Home.

75.     SFCT knew that Breakwater required and expected the drywall it installed, supplied, furnished and/or sold to be safe and fit for use in the construction of residential homes.

76.      Breakwater justifiably relied on SFCT's skill and judgment to furnish and install drywall fit for the particular purpose of constructing residential homes.

77.     Pursuant to the relationship between the parties, SFCT is deemed to have provided Breakwater with an implied warranty of fitness as to the drywall materials installed, supplied, furnished and/or sold by SFCT

78.     The drywall installed, supplied, furnished and/or sold by SFCT for use in the construction of the Home was not altered and/or otherwise substantively changed by Breakwater.

79.     SFCT impliedly warranted that the drywall was safe and fit for use in the construction of residential homes.

80.     Plaintiffs, in the Complaint, allege that the defective drywall in the Home proximately caused their injuries.  Breakwater denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Home is defective and not fit for the particular purpose for which the drywall was required and Breakwater is found liable to Plaintiffs, SFCT breached the implied warranty of fitness by distributing installing, supplying, furnishing and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

81.     As a result of the claims that have been filed against Breakwater, Breakwater has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of SFCT to install, supply, furnish and/or sell drywall fit for its intended purpose, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any

{M3057778;1}

other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims. SFCT's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

82.     Breakwater timely notified SFCT of the defective gypsum drywall, but SFCT has failed to repair or replace the defective gypsum drywall installed in the Home.

**WHEREFORE,** Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against South Florida Custom Trim, Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT VIII – STRICT PRODUCTS LIABILITY
### (Against SFCT)

83.     Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

84.     At all material times, SFCT was in the business of supplying, distributing and/or selling gypsum drywall of the type contained in the Home.

85.     At all material times, the gypsum drywall contained in Plaintiffs' Home was placed into the stream of commerce, distributed, supplied and/or sold by SFCT to Breakwater.

86.     At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by SFCT, SFCT intended that the drywall reach consumers and/or ultimate users of the drywall, such as Breakwater.

87.     SFCT expected the gypsum drywall to reach Breakwater and/or the Home without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Breakwater and/or the Home without substantial change affecting that condition.

{M3057778;1}

88.     Plaintiffs in the Complaint allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

89.     To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by SFCT directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims. SFCT's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against South Florida Custom Trim, Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT IX – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against SFCT)

90.     Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

91.     At all material times, SFCT was in the business of supplying, distributing and/or selling gypsum drywall of the type contained in the Home.

92.     At all material times, the gypsum drywall contained in the Home was placed into the stream of commerce, distributed, supplied and/or sold by SFCT to Breakwater.

93.     At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by SFCT, SFCT intended that the drywall reach consumers and/or ultimate users of the drywall, such as Breakwater.

94.     SFCT expected the gypsum drywall to reach Breakwater and/or the Home without substantial change affecting its condition, and the gypsum drywall did in fact reach Breakwater and/or the Home without substantial change affecting that condition.

95.     Plaintiffs in the Complaint allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

96.     To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which SFCT was required to provide a warning.  However, SFCT failed to provide an adequate warning of such danger.

97.     Breakwater did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

98.     To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more

{M3057778;1}

fully alleged in the Complaint, it was so because SFCT failed to warn Breakwater of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home. Without a warning, Breakwater had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential homes in the ordinary manner.

99.     To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, SFCT's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.  SFCT's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against South Florida Custom Trim, Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT X – UNJUST ENRICHMENT
### (Against SFCT)

100.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

{M3057778;1}

101.   This is an action, stated in the alternative, against SFCT for unjust enrichment.

102.   Plaintiffs in the Complaint allege various claims against Breakwater for damages grounded on defective drywall in the Home posing serious risk of injury to persons or property.

103.   SFCT distributed, sold and/or supplied to Breakwater the gypsum drywall that SFCT installed in the Home.

104.   Breakwater paid SFCT for supplying the drywall for the Home and installing it.

105.   SFCT received money from Breakwater as a result of Breakwater's purchases of allegeedly defective drywall installed in the Home.

106.   In delivering such payments, monies and/or funds to SFCT, Breakwater conferred a benefit, *i.e.*, funds and profit, to SFCT, which had knowledge thereof.

107.   SFCT voluntarily accepted and retained the benefit conferred upon it by Breakwater.

108.   To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, SFCT's acts and omissions in isntalling, distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.

109.   The circumstances described herein under which SFCT profited from installing, selling and/or supplying drywall make it inequitable for SFCT to retain those funds and profits.

110.   Breakwater has no adequate remedy at law.

{M3057778;1}

.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against South Florida Custom Trim, Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT XI – COMMON LAW INDEMNITY
### (Against Stock)

111.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

112.    This is an action for common law indemnity against Stock.

113.    Plaintiffs in the Complaint assert a claim against Breakwater for damages caused by allegedly defective drywall contained in the Home.

114.    Breakwater is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied, distributed and/or sold by Stock.

115.    Any alleged injuries suffered by Plaintiffs are due to the wrongful acts or omissions of Stock.  As the supplier, distributor and/or seller of the allegedly defective drywall used in the Home, Stock is wholly at fault and responsible for all alleged losses and injuries caused by the drywall.

116.    Breakwater is entirely without fault for the injuries alleged by Plaintiffs.

117.    A special relationship exists between Breakwater and Stock such that any liability imposed on Breakwater in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Stock, and Breakwater has the right to be indemnified for all damages sustained as a result of the drywall in the Home, including all expenses incurred in connection with this lawsuit.

{M3057778;1}

118.    As a result of the claim asserted against Breakwater in this action, and as a result of Stock's acts or omissions, Breakwater has and will continue to incur losses, damages, costs, attorneys' fees and expenses.

119.    If Breakwater is found to be liable to Plaintiffs, Stock is liable to Breakwater for any loss, damages, costs, and expenses – including attorneys' fees – related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Breakwater, including without limitation payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Breakwater Custom Homes, Inc. demands judgment for indemnity in its favor against Stock Building Supply, LLC for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT XII – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Stock)

120.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

121.    This is an action, stated in the alternative, against Stock for contribution pursuant to Section 768.31, Florida Statutes.

122.    Plaintiffs in the Complaint assert tort claims against Breakwater for damages caused by alleged defects in the drywall contained in the Home.

123.     Without admitting any liability or damages to Plaintiffs, should Breakwater be found liable to Plaintiffs, Stock would share in the liability to extent its acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

124.     Breakwater has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

125.     To the extent that any common liability is found with respect to Breakwater, Breakwater hereby asserts its right of contribution against Stock for its pro rata share of liability.

126.     Stock should be required to repay Breakwater for any loss, damages, costs, and expenses – including attorneys' fees – Breakwater is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Breakwater, in excess of its pro rata share of any common liability.

**WHEREFORE**, Breakwater Custom Homes, Inc. demands that judgment be entered against Stock Building Supply, LLC for its pro rata share of the liability, if any, found against Breakwater in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## <u>COUNT XIII – EQUITABLE SUBROGATION</u>
### (Against Stock)

127.     Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

128.     This is an action, stated in the alternative, against Stock for equitable subrogation.

129.     Plaintiffs in the Complaint allege various claims against Breakwater for damages caused by allegedly defective drywall contained in the Home.

{M3057778;1}

130.    Breakwater is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Stock.

131.    Without admitting any liability or damages to Plaintiffs, Breakwater is not primarily liable for any liability to Plaintiffs.

132.    To the extent that Breakwater is required to pay damages for any fault of Stock to protect its own interests, Breakwater would be entitled to reimbursement from Stock under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Breakwater, including without limitation payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Breakwater and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Breakwater, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against the claims brought by Plaintiffs.

133.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Defendant Defendant Breakwater Custom Homes, Inc. demands judgment for equitable subrogation in its favor against Stock Building Supply, LLC for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

## COUNT XIV – STRICT PRODUCTS LIABILITY
### (Against Stock)

134.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

135.    This is an action for strict products liability against Stock.

136.     At all material times, Stock was in the business of distributing, supplying and/or selling gypsum drywall of the type contained in the Home.

137.     The drywall contained in the Home was placed into the stream of commerce, distributed, supplied and/or sold by Stock.

138.     At the time said drywall was placed into the stream of commerce, distributed supplied and/or sold by Stock, Stock intended that the drywall reach consumers and/or ultimate users of the drywall, such as Breakwater and Plaintiffs.

139.     Stock expected the drywall to reach Breakwater and/or the Home without substantial change affecting its condition, and the allegedly defective drywall did in fact reach Breakwater and/or Plaintiffs without substantial change affecting that condition.

140.     Plaintiffs in the Complaint allege various claims against Breakwater for damages grounded on the purportedly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property.

141.     To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the allegedly defective drywall distributed, placed into the stream of commerce, supplied and/or sold by Stock directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgments entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Stock Building Supply, LLC in an amount to be determined at

{M3057778;1}

trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT XV – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Stock)

142.   Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

143.   At all material times, Stock was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Home.

144.   At all material times, the gypsum drywall contained in the Home was placed into the stream of commerce, distributed, and/or sold by Stock.

145.   At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Stock, Stock intended that the drywall reach consumers and/or ultimate users of the drywall, such as Breakwater.

146.   Stock expected the gypsum drywall to reach Breakwater and/or the Home without substantial change affecting its condition, and the gypsum drywall did in fact reach Breakwater and/or the Home without substantial change affecting that condition.

147.   Plaintiffs in the Complaint allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

148.   To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction

involved a danger of which Stock was required to provide a warning. However, Stock failed to provide an adequate warning of such danger.

149.    Breakwater did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

150.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Stock failed to warn Breakwater of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home. Without a warning, Breakwater had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential homes in the ordinary manner.

151.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Stock's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims. Stock's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

{M3057778;1}

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Stock Building Supply, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT XVI – UNJUST ENRICHMENT**
**(Against Stock)**

152.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

153.    Plaintiffs in the Complaint allege various claims against Breakwater for damages grounded on defective drywall in the Home posing serious risk of injury to persons or property.

154.    This is an action, stated in the alternative, against Stock for unjust enrichment.

155.    Stock distributed, sold and/or supplied the gypsum drywall that was installed in the Home.

156.    Stock received money that came from Breakwater as a result of the installation of its defective drywall installed in the Home.

157.    In supplying such payment, monies and/or funds that were ultimately paid to Stock, Breakwater conferred a benefit, *i.e.*, funds and profit, to Stock, which had knowledge thereof.

158.    Stock voluntarily accepted and retained the benefit conferred upon it by Breakwater.

159.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Stock's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Breakwater to

substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.

160.    The circumstances described herein under which Stock profited from distributing, selling and/or supplying drywall make it inequitable for Stock to retain those funds and profits.

161.    Breakwater has no adequate remedy at law.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Stock Building Supply, LLC in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT XVII – COMMON LAW INDEMNITY**
**(Against Stock Holdings)**

162.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

163.    This is an action for common law indemnity against Stock Holdings.

164.    Plaintiffs in the Complaint assert a claim against Breakwater for damages caused by allegedly defective drywall contained in the Home.

165.    Breakwater is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied, distributed and/or sold by Stock Holdings.

166.    Any alleged injuries suffered by Plaintiffs are due to the wrongful acts or omissions of Stock Holdings.  As the supplier, distributor and/or seller of the allegedly defective

{M3057778;1}

drywall used in the Home, Stock Holdings is wholly at fault and responsible for all alleged losses and injuries caused by the drywall.

167.   Breakwater is entirely without fault for the injuries alleged by Plaintiffs.

168.   A special relationship exists between Breakwater and Stock Holdings such that any liability imposed on Breakwater in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Stock Holdings, and Breakwater has the right to be indemnified for all damages sustained as a result of the drywall in the Home, including all expenses incurred in connection with this lawsuit.

169.   As a result of the claim asserted against Breakwater in this action, and as a result of Stock Holdings's acts or omissions, Breakwater has and will continue to incur losses, damages, costs, attorneys' fees and expenses.

170.   If Breakwater is found to be liable to Plaintiffs, Stock Holdings is liable to Breakwater for any loss, damages, costs, and expenses – including attorneys' fees – related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Breakwater, including without limitation payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Breakwater Custom Homes, Inc. demands judgment for indemnity in its favor against Stock Building Supply Holdings, LLC for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

{M3057778;1}

29

## COUNT XVIII – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Stock Holdings)

171.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

172.    This is an action, stated in the alternative, against Stock Holdings for contribution pursuant to Section 768.31, Florida Statutes.

173.    Plaintiffs in the Complaint assert tort claims against Breakwater for damages caused by alleged defects in the drywall contained in the Home.

174.    Without admitting any liability or damages to Plaintiffs, should Breakwater be found liable to Plaintiffs, Stock Holdings would share in the liability to extent its acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

175.    Breakwater has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

176.    To the extent that any common liability is found with respect to Breakwater, Breakwater hereby asserts its right of contribution against Stock Holdings for its pro rata share of liability.

177.    Stock Holdings should be required to repay Breakwater for any loss, damages, costs, and expenses – including attorneys' fees – Breakwater is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Breakwater, in excess of its pro rata share of any common liability.

**WHEREFORE**, Breakwater Custom Homes, Inc. demands that judgment be entered against Stock Building Supply Holdings, LLC for its pro rata share of the liability, if any, found against Breakwater in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT XIX – EQUITABLE SUBROGATION
**(Against Stock Holdings)**

178.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

179.    This is an action, stated in the alternative, against Stock Holdings for equitable subrogation.

180.    Plaintiffs in the Complaint allege various claims against Breakwater for damages caused by allegedly defective drywall contained in the Home.

181.    Breakwater is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Stock Holdings.

182.    Without admitting any liability or damages to Plaintiffs, Breakwater is not primarily liable for any liability to Plaintiffs.

183.    To the extent that Breakwater is required to pay damages for any fault of Stock Holdings to protect its own interests, Breakwater would be entitled to reimbursement from Stock Holdings under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Breakwater, including without limitation payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Breakwater and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs

against Breakwater, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against the claims brought by Plaintiffs.

184.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Defendant Defendant Breakwater Custom Homes, Inc. demands judgment for equitable subrogation in its favor against Stock Building Supply Holdings, LLC for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

**COUNT XX – STRICT PRODUCTS LIABILITY**
**(Against Stock Holdings)**

185.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

186.    This is an action for strict products liability against Stock Holdings.

187.    At all material times, Stock Holdings was in the business of distributing, supplying and/or selling gypsum drywall of the type contained in the Home.

188.    The drywall contained in the Home was placed into the stream of commerce, distributed, supplied and/or sold by Stock Holdings.

189.    At the time said drywall was placed into the stream of commerce, distributed supplied and/or sold by Stock Holdings, Stock Holdings intended that the drywall reach consumers and/or ultimate users of the drywall, such as Breakwater.

190.    Stock Holdings expected the drywall to reach Breakwater and/or the Home without substantial change affecting its condition, and the allegedly defective drywall did in fact reach Breakwater and/or the Home without substantial change affecting that condition.

191.     Plaintiffs in the Complaint allege various claims against Breakwater for damages grounded on the purportedly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property.

192.     To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the allegedly defective drywall distributed, placed into the stream of commerce, supplied and/or sold by Stock Holdings directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgments entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Stock Building Supply Holdings, LLC in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT XXI – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Stock Holdings)

193.     Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

194.     At all material times, Stock Holdings was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Home.

195.     At all material times, the gypsum drywall contained in the Home was placed into the stream of commerce, distributed, and/or sold by Stock Holdings.

{M3057778;1}

196.   At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Stock Holdings, Stock Holdings intended that the drywall reach consumers and/or ultimate users of the drywall, such as Breakwater.

197.   Stock expected the gypsum drywall to reach Breakwater and/or the Home without substantial change affecting its condition, and the gypsum drywall did in fact reach Breakwater and/or the Home without substantial change affecting that condition.

198.   Plaintiffs in the Complaint allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

199.   To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Stock Holdings was required to provide a warning.  However, Stock Holdings failed to provide an adequate warning of such danger.

200.   Breakwater did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

201.   To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Stock Holdings failed to warn Breakwater of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.  Without a warning, Breakwater had no way of anticipating that the

drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential homes in the ordinary manner.

202.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Stock Holdings's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.   Stock Holdings's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Stock Building Supply Holdings, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT XXII – UNJUST ENRICHMENT
### (Against Stock Holdings)

203.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

204.    Plaintiffs in the Complaint allege various claims against Breakwater for damages grounded on defective drywall in the Home posing serious risk of injury to persons or property.

{M3057778;1}

205.    This is an action, stated in the alternative, against Stock Holdings for unjust enrichment.

206.    Stock Holdings distributed, sold and/or supplied the gypsum drywall that was installed in the Home.

207.    Stock Holdings received money that came from Breakwater as a result of the installation of its defective drywall installed in the Home.

208.    In supplying such payment, monies and/or funds that were ultimately paid to Stock Holdings, Breakwater conferred a benefit, *i.e.*, funds and profit, to Stock Holdings, which had knowledge thereof.

209.    Stock Holdings voluntarily accepted and retained the benefit conferred upon it by Breakwater.

210.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Stock Holdings's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.

211.    The circumstances described herein under which Stock Holdings profited from distributing, selling and/or supplying drywall make it inequitable for Stock Holdings to retain those funds and profits.

212.    Breakwater has no adequate remedy at law.

{M3057778;1}

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Stock Building Supply Holdings, LLC in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT XXIII – COMMON LAW INDEMNITY
### (Against Taishan Gypsum Co., Ltd. ("TG"))

213.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

214.    In the Complaint, Plaintiffs allege various claims against Breakwater for damages caused by defective drywall contained in the Home.

215.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

216.    Breakwater is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

217.    Breakwater is entirely without fault for the injuries alleged by Plaintiffs.

218.    Any injuries suffered by Plaintiffs were due to the acts or omissions of TG.

219.    A special relationship existed between TG and Breakwater such that any liability imposed upon Breakwater in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to TG.  To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested,

{M3057778;1}

labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG was defective, TG is wholly to blame for Plaintiffs' injuries.

220.    As a result of the claims that have been filed against Breakwater, Breakwater has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of TG to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

221.    If Breakwater is found to be liable to Plaintiffs, TG is liable to Breakwater for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Breakwater, including, without limitation, payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for indemnity in its favor against Taishan Gypsum Co., Ltd. for compensatory damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT XXIV – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Taishan Gypsum Co., Ltd. ("TG"))

222.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

223.   This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

224.   Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

225.   In the Complaint, Plaintiffs allege various claims against Breakwater for damages caused by defects in the drywall contained in the Home.

226.   Without admitting any liability or damages to Plaintiffs, should Breakwater be found liable, TG would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

227.   Breakwater has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

228.   To the extent that any common liability is found with respect to Breakwater, Breakwater hereby asserts its right of contribution against TG for its pro rata share of the liability.

229.   TG should be required to repay Breakwater for any loss, damages, costs, and expenses, including attorneys' fees, Breakwater is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Breakwater, in excess of its pro rata share of any common liability.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands that judgment be entered against Taishan Gypsum Co., Ltd. for its pro rata share of the liability, if any, found

against Breakwater in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## XXV – EQUITABLE SUBROGATION
### (Against Taishan Gypsum Co., Ltd. ("TG"))

230.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

231.    This is an action, stated in the alternative, for equitable subrogation.

232.    Plaintiffs in the Complaint allege various claims against Breakwater for damages caused by allegedly defective drywall contained in the Home.

233.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

234.    Breakwater is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

235.    Without admitting any liability or damages to Plaintiffs, Breakwater is not primarily liable for any liability to the Plaintiffs.

236.    To the extent that Breakwater is required to pay damages for any fault of TG to protect its own interests, and not as a volunteer, Breakwater would be entitled to reimbursement from TG under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Breakwater, including, without limitation, payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Breakwater

and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Breakwater, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against the claims brought by Plaintiffs.

237.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment in its favor and against Taishan Gypsum Co., Ltd. for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

**COUNT XXVI – NEGLIGENCE**
**(Against Taishan Gypsum Co., Ltd. ("TG"))**

238.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

239.    Plaintiffs in the Complaint allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

240.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

241.    Breakwater was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by TG.

242.    TG had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TG owed Breakwater a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market,

{M3057778;1}

distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Breakwater's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

243.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint,TG knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

244.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG breached the duty of care owed to Breakwater by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or and ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or

{M3057778;1}

42

assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

245.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TG's duty of care were the direct and proximate cause of Breakwater's injuries, losses, and damages.

246.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TG knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Breakwater to substantial liability and damages. If TG had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Breakwater would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

247.    Without admitting any liability or damages to Plaintiffs, Breakwater was damaged by TG's breaches of the duty of care owed to Breakwater, which directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of

{M3057778;1}

Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims. TG's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT XXVII – NEGLIGENT FAILURE TO WARN
### (Against Taishan Gypsum Co., Ltd. ("TG"))

248. Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

249. In the Complaint, Plaintiffs allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

250. Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

251. Breakwater was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

252. TG had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property. As such, TG owed Breakwater a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined,

designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Breakwater about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as Breakwater about any problems or dangers in using the drywall for residential construction.

253.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

254.   To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG knew or should have known that unless it warned Breakwater of the risk of using the drywall, Breakwater would suffer harm. However, TG failed to provide an adequate warning of such danger.

255.   Breakwater did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, Breakwater had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

256.   To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more

{M3057778;1}

45

fully alleged in the Complaint, TG breached the duty of care owed to Breakwater by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Breakwater about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as Breakwater about any problems or dangers in using the drywall for residential construction, about which TG knew or reasonably should have known.

257.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TG's duty of care were the direct and proximate cause of Breakwater's injuries, losses, and damages.

258.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TG knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Breakwater to substantial liability and damages. If TG had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, TG would or could have foreseen that damages to Breakwater would ensue as a result of failing to disclose and/or warn of drywall defects.

259.   Without admitting any liability or damages to Plaintiffs, Breakwater was damaged by TG's breaches of the duty of care, which directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.

{M3057778;1}

TG's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT XXVIII – BREACH OF POST-SALE DUTY TO WARN
### (Against Taishan Gypsum Co., Ltd. ("TG"))

260.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

261.    Plaintiffs in the Complaint allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

262.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

263.    Breakwater was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

264.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the

time such drywall left TG's control and/or was sold to Breakwater, TG knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

265.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TG, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   TG breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

266.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

267.    Consumers, such as Breakwater, to whom a warning might have been provided, could have been identified by TG and could reasonably be assumed to be unaware of the risk of harm.

268.    A warning could have been effectively communicated to consumers such as Breakwater and acted on by them.

269.    At all material times, TG stood in a better position than Breakwater to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed

that Breakwater was unaware of potential dangers and/or risk of harm associated with the use of TG's drywall product in residential construction.

270.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in TG's position would have provided a post-sale warning.

271.    Without admitting any liability or damages to Plaintiffs, Breakwater was damaged by TG's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims. TG's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT XXIX – STRICT PRODUCTS LIABILITY
### (Against Taishan Gypsum Co., Ltd. ("TG"))

272.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

273.    Upon information and belief, at all material times TG was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging,

advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Home.

274.   Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

275.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG, TG intended that the drywall reach consumers and/or ultimate users of the drywall, such as Breakwater.

276.   TG expected the gypsum drywall to reach Breakwater and/or the Home without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Breakwater and/or the Home without substantial change affecting that condition.

277.   In the Complaint, Plaintiffs allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

278.   To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by TG directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by

{M3057778;1}

Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.  TG's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT XXX – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Taishan Gypsum Co., Ltd. ("TG"))

279.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

280.    Upon information and belief, at all material times TG was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Home.

281.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

282.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG, TG intended that the drywall reach consumers and/or ultimate users of the drywall, such as Breakwater.

283.   TG expected the gypsum drywall to reach Breakwater and/or the Home without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Breakwater and/or the Home without substantial change affecting that condition.

284.   In the Complaint, Plaintiffs allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

285.   To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which TG was required to provide a warning. However, TG failed to provide an adequate warning of such danger.

286.   Breakwater did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

287.   To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because TG failed to warn Breakwater of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home. Without a warning, Breakwater had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

288.   To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.  TG's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT XXXI - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Taishan Gypsum Co., Ltd. ("TG"))

289.   Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

290.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

291.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable,

{M3057778;1}

deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat.
§ 501.202(2).

292.   At all material times, Breakwater was a person and a consumer of drywall as
defined under FDUTPA.

293.   At all material times, TG engaged in trade or commerce by selling, advertising,
soliciting, offering, and/or distributing drywall to consumers, such as Breakwater.

294.   Upon information and belief, TG manufactured, mined, designed, produced,
made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of
commerce, and/or sold the gypsum drywall that was installed in the Home.

295.   At the time TG manufactured, mined, designed, produced, made, marketed,
tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of
commerce, and/or sold the gypsum drywall, TG represented that the drywall was fit for the
ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the
construction of residential homes, and free from defects.

296.   In the Complaint, Plaintiffs allege various claims against Breakwater for damages
grounded on the unduly hazardous condition of the drywall in the Home posing serious or
unreasonable risk of harm or injury to persons and/or property, including but not limited to the
Other Property in the Home.

297.   Without admitting any liability or damages to Plaintiffs, to the extent
Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably
dangerous and/or not reasonably safe for its intended use as more fully alleged in the
Complaint, at the time TG manufactured, mined, designed, produced, made, marketed, tested,
labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce,

and/or sold the drywall that was installed in the Home, TG knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

298.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from TG's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

299.  To the extent Plaintiffs are successful in proving their claims, TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 through 26 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

300.  TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as Breakwater acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in

residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

301.    TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its  failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Breakwater.

302.    To the extent Plaintiffs are successful in proving their claims, Breakwater did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. TG's violations of FDUTPA directly and proximately caused and/or exposed Breakwater to substantial liability and actual damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.   TG's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at

{M3057778;1}

trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

## COUNT XXXII – UNJUST ENRICHMENT
### (Against Taishan Gypsum Co., Ltd. ("TG"))

303.　Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

304.　In the Complaint, Plaintiffs allege various claims against Breakwater for damages grounded on defective drywall in the Home posing serious risk of injury to persons or property.

305.　Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

306.　TG received money that came from Breakwater as payment for the defective drywall installed in the Home.

307.　In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Breakwater conferred a benefit, *i.e.*, funds and profit, to TG, which had knowledge thereof.

308.　TG voluntarily accepted and retained the benefit conferred upon it by Breakwater.

309.　To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG's acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action

{M3057778;1}

brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.

310.    The circumstances described herein under which TG profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for TG to retain those funds and profits.

311.    Breakwater has no adequate remedy at law.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT XXXIII – COMMON LAW INDEMNITY
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

312.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

313.    Plaintiffs in the Complaint allege various claims against Breakwater for damages caused by defective drywall contained in the Home.

314.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

315.    Breakwater is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

316.   Breakwater is entirely without fault for the injuries alleged by Plaintiffs.

317.   Any injuries suffered by Plaintiffs were due to the acts or omissions of TTP.

318.   A special relationship existed between TTP and Breakwater such that any liability imposed upon Breakwater in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to TTP.   To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP was defective, TTP is wholly to blame for Plaintiffs' injuries.

319.   As a result of the claims that have been filed against Breakwater, Breakwater has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of TTP to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, i.e., not unreasonably dangerous and fit for use in the construction of residential homes.

320.   If Breakwater is found to be liable to Plaintiffs, TTP is liable to Breakwater for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Breakwater, including, without limitation, payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for indemnity in its favor against Taian Taishan Plasterboard Co. Ltd. for compensatory damages

{M3057778;1}

59

plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

## COUNT XXXIV – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
## (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

321.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

322.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

323.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

324.    Plaintiffs, in the Complaint, allege various claims against Breakwater for damages caused by defects in the drywall contained in the Home.

325.    Without admitting any liability or damages to Plaintiffs, should Breakwater be found liable, TTP would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

326.    Breakwater has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

327.    To the extent that any common liability is found with respect to Breakwater, Breakwater hereby asserts its right of contribution against TTP for its pro rata share of the liability.

328.    TTP should be required to repay Breakwater for any loss, damages, costs, and expenses, including attorneys' fees, Breakwater is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Breakwater in this action and/or any other action

brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Breakwater, in excess of its pro rata share of any common liability.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands that judgment be entered against Taian Taishan Plasterboard Co. Ltd. for its pro rata share of the liability, if any, found against Breakwater in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### XXXV – EQUITABLE SUBROGATION
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

329.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

330.    This is an action, stated in the alternative, for equitable subrogation.

331.    Plaintiffs in the Complaint allege various claims against Breakwater for damages caused by defective drywall contained in the Home.

332.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

333.    Breakwater is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

334.    Without admitting any liability or damages to Plaintiffs, Breakwater is not primarily liable for any liability to the Plaintiffs.

{M3057778;1}

335.    To the extent that Breakwater is required to pay damages for any fault of TTP to protect its own interests, and not as a volunteer, Breakwater would be entitled to reimbursement from TTP under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Breakwater, including, without limitation, payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Breakwater and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Breakwater, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against the claims brought by Plaintiffs.

336.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment in its favor and against Taian Taishan Plasterboard Co. Ltd. for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### XXXVI – NEGLIGENCE
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

337.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

338.    In the Complaint, Plaintiffs allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

339.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

{M3057778;1}

340.    Breakwater was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by TTP.

341.    TTP had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TTP owed Breakwater a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Breakwater's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

342.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

343.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP breached the duty of care owed to Breakwater by among other things, (i) failing

{M3057778;1}

to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or and ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

344.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TTP's duties of care were the direct and proximate cause of Breakwater's injuries, losses, and damages.

345.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TTP knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Breakwater to substantial liability and damages.  If TTP had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Breakwater would ensue as a result of improperly manufacturing, mining, designing, producing, making,

marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

346.     Without admitting any liability or damages to Plaintiffs, Breakwater was damaged by TTP's breaches of the duty of care owed to Breakwater, which directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.   TTP's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT XXXVII – NEGLIGENT FAILURE TO WARN
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

347.     Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

348.     In the Complaint, Plaintiffs allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

{M3057778;1}

349.  Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

350.  Breakwater was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

351.  TTP had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TTP owed Breakwater a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Breakwater about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as Breakwater about any problems or dangers in using the drywall for residential construction.

352.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

353.  To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that unless it warned

Breakwater of the risk of using the drywall, Breakwater would suffer harm. However, TTP failed to provide an adequate warning of such danger.

354.    Breakwater did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property. Without a warning, Breakwater had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

355.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP breached the duty of care owed to Breakwater by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Breakwater about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as Breakwater about any problems or dangers in using the drywall for residential construction, about which TTP knew or reasonably should have known.

356.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TTP's duty of care were the direct and proximate cause of Breakwater's injuries, losses, and damages.

357.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TTP knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Breakwater to substantial liability and damages. If TTP had

{M3057778;1}

exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, TTP would or could have foreseen that damages to Breakwater would ensue as a result of failing to disclose and/or warn of drywall defects.

358.    Without admitting any liability or damages to Plaintiffs, Breakwater was damaged by TTP's breaches of its duties of care, which directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims. TTP's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT XXXVIII – BREACH OF POST-SALE DUTY TO WARN
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

359.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

360.    Plaintiffs in the Complaint allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

{M3057778;1}

361.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

362.    Breakwater was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

363.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left TTP's control and/or was sold to Breakwater, TTP knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

364.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TTP, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  TTP breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

365.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use

of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

366.   Consumers, such as Breakwater, to whom a warning might have been provided, could have been identified by TTP and could reasonably be assumed to be unaware of the risk of harm.

367.   A warning could have been effectively communicated to consumers such as Breakwater and acted on by them.

368.   At all material times, TTP stood in a better position than Breakwater to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Breakwater was unaware of potential dangers and/or risk of harm associated with the use of TTP's drywall product in residential construction.

369.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in TTP's position would have provided a post-sale warning.

370.   Without admitting any liability or damages to Plaintiffs, Breakwater was damaged by TTP's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims. TTP's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

**COUNT XXXIX – STRICT PRODUCTS LIABILITY**
**(Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))**

371.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

372.    Upon information and belief, at all material times TTP was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Home.

373.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

374.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP, TTP intended that the drywall reach consumers and/or ultimate users of the drywall, such as Breakwater.

375.    TTP expected the gypsum drywall to reach Breakwater and/or the Home without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Breakwater and/or the Home without substantial change affecting that condition.

376.    In the Complaint, Plaintiffs allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

377.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by TTP directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.   TTP's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT XL – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

378.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

379.    Upon information and belief, at all material times TTP was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging,

advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Home.

380.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

381.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP, TTP intended that the drywall reach consumers and/or ultimate users of the drywall, such as Breakwater.

382.   TTP expected the gypsum drywall to reach Breakwater and/or the Home without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Breakwater and/or the Home without substantial change affecting that condition.

383.   Plaintiffs in the Complaint allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

384.   To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which TTP was required to provide a warning. However, TTP failed to provide an adequate warning of such danger.

385.   Breakwater did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

{M3057778;1}

73

386.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because TTP failed to warn Breakwater of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home. Without a warning, Breakwater had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

387.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.  TTP's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT XLI - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
(Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))**

388.     Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

389.     This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

390.     The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

391.     At all material times, Breakwater was a person and a consumer of drywall as defined under FDUTPA.

392.     At all material times, TTP engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Breakwater.

393.     Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

394.     At the time TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, TTP represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

395.     In the Complaint, Plaintiffs allege various claims against Breakwater for damages grounded on the unduly hazardous condition of the drywall in the Home posing serious or

{M3057778;1}

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Home.

396.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Home, TTP knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

397.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from TTP's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

398.   To the extent Plaintiffs are successful in proving their claims, TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 through 26 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

{M3057778;1}

76

399.   TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as Breakwater acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

400.   TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its  failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Breakwater.

401.   To the extent Plaintiffs are successful in proving their claims, Breakwater did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. TTP's violations of FDUTPA directly and proximately caused and/or exposed Breakwater to substantial liability and actual damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action

{M3057778;1}

brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims. TTP's wrongful conduct also caused damages to Breakwater, including but not limited to Breakwater's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT XLII – UNJUST ENRICHMENT
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

402.    Breakwater reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

403.    In the Complaint, Plaintiffs allege various claims against Breakwater for damages grounded on defective drywall in the Home posing serious risk of injury to persons or property.

404.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Home.

405.    TTP received money from Breakwater as payment for the defective drywall installed in the Home.

406.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Breakwater conferred a benefit, *i.e.*, funds and profit, to TTP, which had knowledge thereof.

407.    TTP voluntarily accepted and retained the benefit conferred upon it by Breakwater.

{M3057778;1}

408.    To the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP's acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Breakwater to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Breakwater to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Breakwater in this action and/or any other action brought by Plaintiffs against Breakwater, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Breakwater in defending against these claims.

409.    The circumstances described herein, under which TTP profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall, make it inequitable for TTP to retain those funds and profits.

410.    Breakwater has no adequate remedy at law.

**WHEREFORE**, Defendant Breakwater Custom Homes, Inc. demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**COMES NOW** Defendant/Cross-Plaintiff, Breakwater Custom Homes, Inc., and hereby demands a trial by jury as to all issues so triable as a matter of right.

{M3057778;1}

79

Respectfully submitted this 27th day of May 2011.

**AKERMAN SENTERFITT**

BY: <u>/s/    Samuel S. Heywood__  __</u>
Valerie Greenberg, Esq.
Fla. Bar No. 026514
Samuel S. Heywood, Esq.
Fla. Bar No. 0016604

One Southeast Third Avenue, 25th Floor
Miami, FL  33131-1714
Phone:  (305) 374-5600
Fax:  (305) 374-5095
Email:  valerie.greenberg@akerman.com
Email:  samuel.heywood@akerman.com

*Attorneys for Breakwater Custom Homes, Inc.*

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
        Susie.morgan@phelps.com
        Skylar.rosenbloom@phelps.com

*Co-Counsel for Breakwater Custom Homes, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that *Defendant Breakwater Custom Homes Inc.'s Cross Claim* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA 70163 (kmiller@frilot.com), by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 27th day of May, 2011.

/s/      Samuel S. Heywood