# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL
   PRODUCTS LIABILITY LITIGATION

MDL No. 02047
SECTION L

JUDGE FALLON
MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
SEAN and BETH PAYTON, *et al*. v.
KNAUF GIPS KG, *et al*.,
Case No. 2:09-cv-07628-EEF-JCW (OMNI I)
_____/

## DEFENDANT HAMMER CONSTRUCTION SERVICES, LTD'S CROSS CLAIM[1] AGAINST GEBRUEDER KNAUF VERWALTUNGSGESELLSCHAFT, K.G., KNAUF INTERNATIONAL GMBH , KNAUF UK GMBH AND KNAUF GIPS KG[2]

COMES NOW Defendant/Cross-Claimant, Hammer Construction Services, LTD. ("**Hammer**"), by and through its undersigned counsel, and alleges for its Cross-Claims against Defendants/Cross-Defendants, Gebrueder Knauf Verwaltungsgesellschaft, K.G., ("**Gebrueder Knauf**"), Knauf International GmbH ("**Knauf International**"), Knauf UK GMBH ("**Knauf UK**") and Knauf Gips KG ("**Knauf Gips**") (collectively, the "**Knauf Cross-Claim Defendants**")[3], as follows:

---

[1] Plaintiffs commenced this action on December 9, 2009, by filing an Omnibus Class Action Complaint in this cause, which was subsequently amended and also expanded by way of intervention (after all modifications, referred to herein as the "Complaint"). In response, Hammer has moved to dismiss the Complaint. These Cross-Claims are therefore being brought to the extent all claims against Hammer are not dismissed in their entirety with prejudice. In the event all of Plaintiffs' claims against Hammer are not dismissed with prejudice, Hammer also expressly reserves the right to raise any and all available defenses and to respond to the Complaint accordingly.

[2] These cross claims are filed in conjunction with, and the claims should be treated in combination with, those raised in Defendant Hammer Construction Services, LTD's Cross Claim and Third Party Claim filed on December 7, 2010 [D.E. 6595]. The claims raised herein are in addition to, and do not waive or supercede, the claims raised in Hammer's December 7, 2010, Cross Claim and Third Party Claim.

[3] The Complaint was also expanded by way of intervention when intervening plaintiffs, Bonnie and John H. Adams, III, filed their Omnibus Class Action Complaint in Intervention ((I(C)) (the "Complaint in Intervention") [D.E. 6651] against the Knauf Cross-Claim Defendants.

{FT779180;1}

## CROSS-CLAIMS

### The Parties, Jurisdiction and Venue

1.      This is an action for damages within the monetary jurisdiction of this Court.

2.      The plaintiffs in this action ("Plaintiffs") are the named plaintiffs and all potential members of the putative subclass claiming against Hammer.

3.      Hammer was and is a Florida corporation doing business in Lee County Florida, where this cause of action arose.  At all material times, Hammer was a builder of residential homes in Lee County.

4.      Hammer has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Hammer in the construction of their homes was defective and caused damages to Plaintiffs.

5.      Hammer denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.      The Knauf Cross-Claim Defendants have also been named as defendants in the above styled action.  Hammer adopts and incorporates, as if fully set forth herein, paragraphs 2074 – 2076 of the Complaint and paragraphs 1 – 8 of the Complaint in Intervention[4] identifying each of the Knauf Cross-Claim Defendants and describing the nature of their business activities.

7.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs.

8.      Moreover, this Cross-Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant

---

[4]      *See* note 3 *infra*.

2

Cross-Claim and over the instant Knauf Cross-Claim Defendants.

### General Allegations

9.       As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Hammer is liable for damages to Plaintiffs.[5]

10.       Plaintiffs allege that the drywall installed in their homes (the "Homes") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, appliances and Plaintiffs' personal property (the "Other Property").

11.       Plaintiffs further allege that the drywall contained in their Homes was imported, distributed, delivered, supplied, inspected, marketed, distributed and/or sold by some or all of the Knauf Cross-Claim Defendants.

12.       Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.       In connection with the construction of certain Homes in Lee County, built by Hammer, Third-Party Defendant, Sweet Interiors, Inc. ("Sweet") furnished, supplied and/or installed gypsum drywall in the Homes.  The drywall furnished, supplied and/or installed by Sweet for use in the construction of the Homes was not altered and/or otherwise substantively changed by Hammer.  Upon information and belief, Sweet purchased and/or procured drywall that was installed in the Homes directly from Cross Claim Defendant Cape Cement and Supply, Inc. ("Cape").

---

[5]       The named class Plaintiffs and other members of the putative class have asserted claims against Hammer in this Action, as well as other actions in the state and federal courts.  The damages sought by Hammer in this Cross-Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

{FT779180;1}

14.     Upon information and belief, Cape procured drywall that was installed in the Homes from an import-export specialist, La Suprema Trading Inc. and/or La Suprema Enterprise Inc. (together, "La Suprema") and/or the Knauf Cross-Claim Defendants.

15.     Upon information and belief, at all material times, the Knauf Cross-Claim Defendants knew or should have known that such drywall was going to be used in the construction of residential homes.

16.     Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips knew that some customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by Knauf Gips' agent and/or subsidiary, Knauf Plasterboard (Tianjin) Co. Ltd. ("Knauf Tianjin"), emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

17.     Knauf Tianjin consulted with Knauf Gips about the drywall complaints.

18.     Hans-Ulrich Hummel, head of research and development for Knauf Gips in Germany, was aware of the "big problems" with Knauf boards from China and investigated complaints of noxious odors being emitted by the drywall.

19.     Upon information and belief, Knauf Tianjin and/or Knauf Gips conducted their own tests of the drywall and advised certain customers that the drywall was "smelly."

20.     Intentionally deleted.

21.     Upon information and belief, Knauf Tianjin and Knauf Gips did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

22.     Upon information and belief, Knauf Gips and Knauf Tianjin were concerned about the potential fallout if the problems with the drywall product became widely known.  In a

concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Knauf Tianjin entered into a confidential settlement agreement with at least one of its customers, Banner Supply Co. ("Banner") in January of 2007 (the "Secret Agreement").

23.     The Secret Agreement stipulated that Knauf Tianjin would take back all of Banner's unsold drywall, pay Banner for storing it, and replace Banner's inventory of Chinese drywall with drywall made by U.S. manufacturers.  In return, Banner promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

24.     While Knauf Tianjin recalled the drywall product from Banner, it did not recall or take back the product from some other customers, nor did it warn them of the defective nature of the drywall.

25.     Upon information and belief, Knauf Tianjin entered into the Secret Agreement to buy the silence of Banner and conceal defects in the drywall from consumers.  The Secret Agreement purposefully kept consumers, such as Hammer and other builders, contractors and installers, in the dark about the problems with the drywall.  The Secret Agreement acknowledged that if Banner broke its promise to remain silent, Knauf Tianjin could be irreparably harmed.

26.     Hammer did not know and was not made aware of the problems with the drywall. The drywall imported, distributed and/or sold by the Knauf Cross-Claim Defendants for use in the construction of the Homes was not altered and/or otherwise substantively changed by Hammer.

27.     For the purpose of this Cross-Claim only, and not constituting an admission of the allegations or liability by Hammer, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of

{FT779180;1}

unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

28.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, the Knauf Cross-Claim Defendants had greater knowledge, and/or stood in a better position than Hammer to know, of the drywall's applications, performance, and dangers.

29.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Knauf Cross-Claim Defendants' acts and omissions in importing, distributing, delivering, supplying, inspecting, marketing and/or selling the defective drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages to Plaintiffs.

30.     To the extent Plaintiffs are successful in proving the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the drywall product Hammer purchased for installation in the Homes.

31.     Hammer did not know and was not informed by any of the Knauf Cross-Claim Defendants that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.

32.     Consequently, the Knauf Cross-Claim Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Hammer in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

{FT779180;1}

33.     The Knauf Cross-Claim Defendants' wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

34.     All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

### COUNT 1 – COMMON LAW INDEMNITY
### (Against Gebrueder Knauf)

35.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 as if fully set forth herein.

36.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

37.     Upon information and belief, Gebrueder Knauf, among other things, imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

38.     Hammer is not and was not in the business of importing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Gebrueder Knauf.

39.     Hammer is entirely without fault for the injuries alleged by Plaintiffs.

40.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Gebrueder Knauf.

41.     A special relationship existed between Gebrueder Knauf and Hammer such that any liability imposed upon Hammer in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Gebrueder Knauf.  To the extent that Plaintiffs are successful in proving their claims as more fully alleged in the Complaint, the drywall imported,

{FT779180;1}

distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Gebrueder Knauf was defective and wholly to blame for Plaintiffs' injuries.

42. As a result of the claims that have been filed against Hammer, Hammer has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Gebrueder Knauf to import, distribute, deliver, supply, inspect, market, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

43. If Hammer is found to be liable to Plaintiffs, Gebrueder Knauf is liable to Hammer for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.  Gebrueder Knauf's wrongful conduct also caused damages to Hammer, including, but not limited to, Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for indemnity in its favor against Gebrueder Knauf Verwaltungsgesellschaft, K.G. for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 2 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Gebrueder Knauf)

44. Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above

as if fully set forth herein.

45.     This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

46.     Upon information and belief, Gebrueder Knauf, among other things, imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

47.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defects in the drywall contained in the Homes.

48.     Without admitting any liability or damages to Plaintiffs, should Hammer be found liable, Gebrueder Knauf would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

49.     Hammer has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

50.     To the extent that any common liability is found with respect to Hammer, Hammer hereby asserts its right of contribution against Gebrueder Knauf for its pro rata share of the liability.

51.     Gebrueder Knauf should be required to repay Hammer for any loss, damages, costs, and expenses, including attorneys' fees, Hammer is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Hammer, in excess of its pro rata share of any common liability.

        **WHEREFORE**, Hammer demands that judgment be entered against Gebrueder Knauf

{FT779180;1}

Verwaltungsgesellschaft, K.G. for its pro rata share of the liability, if any, found against Hammer in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## COUNT 3 – EQUITABLE SUBROGATION
### (Against Gebrueder Knauf)

52.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

53.     This is an action, stated in the alternative, for equitable subrogation.

54.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

55.     Upon information and belief, Gebrueder Knauf, among other things, imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

56.     Hammer is not and was not in the business of importing, distributing, delivering, supplying, inspecting, marketing or selling drywall and had no reason to know or to suspect that there were problems with the drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Gebrueder Knauf.

57.     Without admitting any liability or damages to Plaintiffs, Hammer is not primarily liable for any liability to the Plaintiffs.

58.     To the extent that Hammer is required to pay damages for any fault of Gebrueder Knauf to protect its own interests, and not as a volunteer, Hammer would be entitled to reimbursement from Gebrueder Knauf under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment

10

entered against Hammer and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

59.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Hammer demands judgment in its favor and against Gebrueder Knauf Verwaltungsgesellschaft, K.G. for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

<u>COUNT 4 – NEGLIGENCE</u>
**(Against Gebrueder Knauf)**

60.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

61.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

62.     Upon information and belief, Gebrueder Knauf imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

63.     Hammer was a foreseeable user of the drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce and/or sold by Gebrueder Knauf.

64.     Gebrueder Knauf had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Gebrueder Knauf owed Hammer a duty to, among other things, exercise reasonable care to (i) import, distribute, deliver, supply, inspect, market, place into the stream of commerce and/or sell drywall

11

reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Hammer's customers; (ii) import, distribute, deliver, supply, inspect, market, place into the stream of commerce and/or sell drywall materials free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

65.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

66.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf breached the duty of care owed to Hammer by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care importing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall that was reasonably safe for its intended use, or

reasonably intended uses; and, (iv) failing to exercise reasonable care in importing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall that complied with all foreseeable applicable building and industry standards.

67.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Gebrueder Knauf's duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

68.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged by the Complaint, Gebrueder Knauf knew or reasonably should have known that its acts and omissions in importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall would expose Hammer to substantial liability and damages. If Gebrueder Knauf had exercised that degree of care that a prudent or reasonably cautious importer, distributor, supplier or seller acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Hammer would ensue as a result of improperly importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling drywall.

69.     Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Gebrueder Knauf's breaches of the duty of care owed to Hammer, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against

13

these claims.  Gebrueder Knauf's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Gebrueder Knauf Verwaltungsgesellschaft, K.G. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 5 – NEGLIGENT FAILURE TO WARN
#### (Against Gebrueder Knauf)

70.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

71.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

72.     Upon information and belief, Gebrueder Knauf imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

73.     Hammer was a foreseeable user of the drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Gebrueder Knauf.

74.     Gebrueder Knauf had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Gebrueder Knauf owed Hammer a duty to exercise reasonable care to: (i) disclose any defects in the drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Gebrueder Knauf or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Hammer about any dangers inherent in the

14

drywall, and/or (iii) warn foreseeable consumers such as Hammer about any problems or dangers in using the drywall for residential construction.

75.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf knew or should have known the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

76.     To the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf knew or should have known that unless it warned Hammer of the risk of using the drywall, Hammer would suffer harm. However, Gebrueder Knauf failed to provide an adequate warning of such danger.

77.     Hammer did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs. Without a warning, Hammer had no way of anticipating the drywall could harm persons and/or property and had every reason to expect the product could be safely used in a residential home in the ordinary manner.

78.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf breached the duty of care owed to Hammer by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Hammer about any dangers inherent in the drywall or its unreasonably dangerous

15

propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as Hammer about any problems or dangers in using the drywall for residential construction, about which Gebrueder Knauf knew or reasonably should have known.

79.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Gebrueder Knauf's duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

80.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Hammer to substantial liability and damages. If Gebrueder Knauf had exercised that degree of care that a prudent or reasonably cautious importer, distributor, supplier or seller acting under the same circumstances would exert, Gebrueder Knauf would or could have foreseen that damages to Hammer would ensue as a result of failing to disclose and/or warn of drywall defects.

81.     Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Gebrueder Knauf's breaches of the duty of care, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Gebrueder Knauf's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

{FT779180;1}

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Gebrueder Knauf Verwaltungsgesellschaft, K.G. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 6 – BREACH OF POST-SALE DUTY TO WARN
### (Against Gebrueder Knauf)

82.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

83.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

84.     Upon information and belief, Gebrueder Knauf imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

85.     Hammer was a foreseeable user of the drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Gebrueder Knauf.

86.     To the extent Plaintiffs are successful in proving that drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Gebrueder Knauf was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Gebrueder Knauf's control and/or was sold to Hammer, Gebrueder Knauf knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

87.     To the extent Plaintiffs are successful in proving that drywall was defective,

{FT779180;1}

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf, as the importer, distributor, supplier or seller of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction. Gebrueder Knauf breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

88.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

89.     Consumers, such as Hammer, to whom a warning might have been provided, could have been identified by Gebrueder Knauf and could reasonably be assumed to be unaware of the risk of harm.

90.     A warning could have been effectively communicated to consumers such as Hammer and acted on by them.

91.     At all material times, Gebrueder Knauf stood in a better position than Hammer to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Hammer was unaware of potential dangers and/or risk of harm associated with the use of Gebrueder Knauf's drywall product in residential construction.

92.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

18

the Complaint, a reasonable importer, distributor, supplier or seller in Gebrueder Knauf's position would have provided a post-sale warning.

93.     Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Gebrueder Knauf's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Gebrueder Knauf's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Gebrueder Knauf Verwaltungsgesellschaft, K.G. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 7 – STRICT PRODUCTS LIABILITY
### (Against Gebrueder Knauf)

94.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 as if fully set forth herein.

95.     Upon information and belief, at all material times, Gebrueder Knauf was in the business of importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

96.     Upon information and belief, Gebrueder Knauf imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

97.     At the time said drywall was imported, distributed, delivered, supplied, inspected,

{FT779180;1}

marketed, placed into the stream of commerce, and/or sold by Gebrueder Knauf, Gebrueder Knauf intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

98.     Gebrueder Knauf expected the drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

99.     Plaintiffs, in the Complaint, allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

100.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Gebrueder Knauf directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Gebrueder Knauf's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Gebrueder Knauf Verwaltungsgesellschaft, K.G. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## <u>COUNT 8 – STRICT PRODUCTS LIABILITY FAILURE TO WARN</u>
### (Against Gebrueder Knauf)

101.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

102.    Upon information and belief, at all material times, Gebrueder Knauf was in the business of importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

103.    Gebrueder Knauf imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

104.    At the time said drywall was imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Gebrueder Knauf, Gebrueder Knauf intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

105.    Gebrueder Knauf expected the drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

106.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

107.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Gebrueder Knauf was required to provide a warning. However, Gebrueder Knauf failed to provide an adequate warning of such danger.

21

108.     Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

109.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Gebrueder Knauf failed to warn Hammer of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

110.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Gebrueder Knauf's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Gebrueder Knauf Verwaltungsgesellschaft, K.G. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

COUNT 9 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
**(Against Gebrueder Knauf)**

111.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

112.     This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

113.     The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

114.     At all material times, Hammer was a person and a consumer of drywall as defined under FDUTPA.

115.     At all material times, Gebrueder Knauf engaged in trade or commerce by importing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall to consumers, such as Hammer.

116.     Upon information and belief, Gebrueder Knauf imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

117.     At the time Gebrueder Knauf imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold the drywall, Gebrueder Knauf represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

118.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

23

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

119.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Gebrueder Knauf imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Gebrueder Knauf knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

120.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Gebrueder Knauf's deceptive and unlawful conduct in importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

121.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf's unfair and deceptive conduct in importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall, and/or its failure to disclose that the drywall, was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, constitutes unfair methods of competition unconscionable acts or practices, and/or

unfair or deceptive acts or practices within the meaning of FDUTPA.

122.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf's unfair and deceptive conduct in importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Hammer acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the importer, distributor, supplier or seller of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

123.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf's unfair and deceptive conduct in importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall and/or its to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Hammer.

124.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Hammer did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Gebrueder Knauf's violations of

FDUTPA directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Gebrueder Knauf's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Gebrueder Knauf Verwaltungsgesellschaft, K.G. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 10 – UNJUST ENRICHMENT
### (Against Gebrueder Knauf)

125.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

126.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

127.     Upon information and belief, Gebrueder Knauf imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

128.     Gebrueder Knauf received money from Hammer as payment for the defective drywall installed in the Home.

129.     In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Hammer conferred a benefit, *i.e.*, funds and profit, to Gebrueder Knauf, which had knowledge thereof.

26

{FT779180;1}

130.    Gebrueder Knauf voluntarily accepted and retained the benefit conferred upon it by Hammer.

131.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf's acts and omissions in importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.

132.    The circumstances described herein under which Gebrueder Knauf profited from importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Gebrueder Knauf to retain those funds and profits.

133.    Hammer has no adequate remedy at law.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Gebrueder Knauf in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 11 – COMMON LAW INDEMNITY
### (Against Knauf International)

134.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

135.    Plaintiffs in the Complaint allege various claims against Hammer for damages

{FT779180;1}

caused by defective drywall contained in the Homes.

136.    Upon information and belief, Knauf International, among other things, imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

137.    Hammer is not and was not in the business of importing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall imported, distributed, delivered, supplied, inspected, marketed,  placed into the stream of commerce, and/or sold by Knauf International.

138.    Hammer is entirely without fault for the injuries alleged by Plaintiffs.

139.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf International.

140.    A special relationship existed between Knauf International and Hammer such that any liability imposed upon Hammer in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf International.  To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Knauf International was defective and wholly to blame for Plaintiffs' injuries.

141.    As a result of the claims that have been filed against Hammer, Hammer has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf International to import, distribute, deliver, supply, inspect, market, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

142.    If Hammer is found to be liable to Plaintiffs, Knauf International is liable to

Hammer for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs. Knauf International's wrongful conduct also caused damages to Hammer, including, but not limited to, Hammer's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Hammer demands judgment for indemnity in its favor against Knauf International GmbH for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 12 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf International)

143.   Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

144.   This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

145.   Upon information and belief, Knauf International, among other things, imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

146.   Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defects in the drywall contained in the Homes.

147.   Without admitting any liability or damages to Plaintiffs, should Hammer be

{FT779180;1}

found liable, Knauf International would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

148.     Hammer has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

149.     To the extent that any common liability is found with respect to Hammer, Hammer hereby asserts its right of contribution against Knauf International for its pro rata share of the liability.

150.     Knauf International should be required to repay Hammer for any loss, damages, costs, and expenses, including attorneys' fees, Hammer is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Hammer, in excess of its pro rata share of any common liability.

**WHEREFORE**, Hammer demands that judgment be entered against Knauf International GmbH for its pro rata share of the liability, if any, found against Hammer in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 13 – EQUITABLE SUBROGATION
### (Against Knauf International)

151.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

152.     This is an action, stated in the alternative, for equitable subrogation.

153.     Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

154.     Upon information and belief, Knauf International, among other things, imported,

{FT779180;1}

distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

155.    Hammer is not and was not in the business of importing, distributing, delivering, supplying, inspecting, marketing or selling drywall and had no reason to know or to suspect that there were problems with the drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Knauf International.

156.    Without admitting any liability or damages to Plaintiffs, Hammer is not primarily liable for any liability to the Plaintiffs.

157.    To the extent that Hammer is required to pay damages for any fault of Knauf International to protect its own interests, and not as a volunteer, Hammer would be entitled to reimbursement from Knauf International under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

158.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Hammer demands judgment in its favor and against Knauf International GmbH for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.


### COUNT 14 – NEGLIGENCE
### (Against Knauf International)

159.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above

31

as if fully set forth herein.

160.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

161.    Upon information and belief, Knauf International imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

162.    Hammer was a foreseeable user of the drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce and/or sold by Knauf International.

163.    Knauf International had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf International owed Hammer a duty to, among other things, exercise reasonable care to (i) import, distribute, deliver, supply, inspect, market, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Hammer's customers; (ii) import, distribute, deliver, supply, inspect, market, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

164.    Without admitting any liability or damages to Plaintiffs, to the extent

{FT779180;1}

Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

165.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International breached the duty of care owed to Hammer by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in importing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in importing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall that complied with all foreseeable applicable building and industry standards.

166.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf International's duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

167.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{FT779180;1}

the Complaint, Knauf International knew or reasonably should have known that its acts and omissions in importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall would expose Hammer to substantial liability and damages. If Knauf International had exercised that degree of care that a prudent or reasonably cautious importer, distributor, supplier or seller acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Hammer would ensue as a result of improperly importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling drywall.

168.     Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf International's breaches of the duty of care owed to Hammer, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.   Knauf International's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf International GmbH in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{FT779180;1}

## COUNT 15 – NEGLIGENT FAILURE TO WARN
### (Against Knauf International)

169.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

170.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

171.     Upon information and belief, Knauf International imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

172.     Hammer was a foreseeable user of the drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Knauf International.

173.     Knauf International had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf International owed Hammer a duty to exercise reasonable care to: (i) disclose any defects in the drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Knauf International or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Hammer about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Hammer about any problems or dangers in using the drywall for residential construction.

174.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{FT779180;1}

the Complaint, Knauf International knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

175.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International knew or should have known that unless it warned Hammer of the risk of using the drywall, Hammer would suffer harm. However, Knauf International failed to provide an adequate warning of such danger.

176.    Hammer did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.   Without a warning, Hammer had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

177.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International breached the duty of care owed to Hammer by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Hammer about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Hammer about any problems or dangers in using the drywall for residential construction, about which Knauf International knew or reasonably should have known.

178.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, such breaches in Knauf International's duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

179.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Hammer to substantial liability and damages. If Knauf International had exercised that degree of care that a prudent or reasonably cautious importer, distributor, supplier or seller acting under the same circumstances would exert, Knauf International would or could have foreseen that damages to Hammer would ensue as a result of failing to disclose and/or warn of drywall defects.

180.    Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf International's breaches of the duty of care, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf International's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf International GmbH in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 16 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf International)

181.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above

{FT779180;1}

as if fully set forth herein.

182.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

183.    Upon information and belief, Knauf International imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

184.    Hammer was a foreseeable user of the drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Knauf International.

185.    To the extent Plaintiffs are successful in proving that drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Knauf International was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf International's control and/or was sold to Hammer, Knauf International knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

186.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International, as the importer, distributor, supplier or seller of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.

{FT779180;1}

Knauf International breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

187.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

188.    Consumers, such as Hammer, to whom a warning might have been provided, could have been identified by Knauf International and could reasonably be assumed to be unaware of the risk of harm.

189.    A warning could have been effectively communicated to consumers such as Hammer and acted on by them.

190.    At all material times, Knauf International stood in a better position than Hammer to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Hammer was unaware of potential dangers and/or risk of harm associated with the use of Knauf International's drywall product in residential construction.

191.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable importer, distributor, supplier or seller in Knauf International's position would have provided a post-sale warning.

192.    Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf International's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not

{FT779180;1}

limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf International's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf International GmbH in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

<u>COUNT 17 – STRICT PRODUCTS LIABILITY</u>
**(Against Knauf International)**

193.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

194.     Upon information and belief, at all material times. Knauf International was in the business of importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

195.     Upon information and belief, Knauf International imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

196.     At the time said drywall was imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce and/or sold by Knauf International, Knauf International intended that it reach consumers and/or ultimate users, such as Hammer.

197.     Knauf International expected the drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

{FT779180;1}

198.     Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

199.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Knauf International directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf International's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf International GmbH in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 18 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf International)

200.     Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

201.     Upon information and belief, at all material times. Knauf International was in the business of importing, distributing, delivering, supplying, inspecting, marketing, placing into

41

the stream of commerce and/or selling drywall of the type contained in the Homes.

202.    Knauf International imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

203.    At the time said drywall was imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold by Knauf International, Knauf International intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

204.    Knauf International expected the drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

205.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

206.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf International was required to provide a warning. However, Knauf International failed to provide an adequate warning of such danger.

207.    Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

42

208.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf International failed to warn Hammer of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

209.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf International's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf International GmbH in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 19 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf International)

210.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above

as if fully set forth herein.

211.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

212.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

213.    At all material times, Hammer was a person and a consumer of drywall as defined under FDUTPA.

214.    At all material times, Knauf International engaged in trade or commerce by importing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall to consumers, such as Hammer.

215.    Upon information and belief, Knauf International imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

216.    At the time Knauf International imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold the drywall, Knauf International represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

217.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

218.    Without admitting any liability or damages to Plaintiffs, to the extent

{FT779180;1}

Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf International imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf International knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

219.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf International's deceptive and unlawful conduct in importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

220.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International's unfair and deceptive conduct in importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall, and/or its failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

221.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{FT779180;1}

as more fully alleged in the Complaint, Knauf International's unfair and deceptive conduct in importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Hammer acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the importer, distributor, supplier or seller of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

222.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International's unfair and deceptive conduct in importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Hammer.

223.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Hammer did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf International's violations of FDUTPA directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer

to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf International's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf International GmbH in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 20 – UNJUST ENRICHMENT
### (Against Knauf International)

224.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

225.    Plaintiffs, in the Complaint, allege various claims against Hammer for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

226.    Upon information and belief, Knauf International imported, distributed, delivered, supplied, inspected, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

227.    Knauf International received money from Hammer as payment for the defective drywall installed in the Home.

228.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Hammer conferred a benefit, *i.e.*, funds and profit, to Knauf International, which had knowledge thereof.

229.    Knauf International voluntarily accepted and retained the benefit conferred upon it by Hammer.

230.    To the extent Plaintiffs are successful in proving drywall in the Homes was

defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International's acts and omissions in importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims.

231.    The circumstances described herein under which Knauf International profited from importing, distributing, delivering, supplying, inspecting, marketing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf International to retain those funds and profits.

232.    Hammer has no adequate remedy at law.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf International GmbH in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 21 – COMMON LAW INDEMNITY
### (Against Knauf UK)

233.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

234.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

235.    Upon information and belief, Knauf UK, among other things, supplied, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

236.     Hammer is not and was not in the business of supplying, marketing and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied, marketed, placed into the stream of commerce, and/or sold by Knauf UK.

237.     Hammer is entirely without fault for the injuries alleged by Plaintiffs.

238.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf UK.

239.     A special relationship existed between Knauf UK and Hammer such that any liability imposed upon Hammer in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf UK.  To the extent that Plaintiffs are successful in proving their claims, the drywall supplied, marketed, inspected, placed into the stream of commerce, and/or sold by Knauf UK was defective and wholly to blame for Plaintiffs' injuries.

240.     As a result of the claims that have been filed against Hammer, Hammer has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf UK to supply, market, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

241.     If Hammer is found to be liable to Plaintiffs, Knauf UK is liable to Hammer for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs, including, but not limited to, Hammer's loss of reputation, goodwill, and lost profits.

49

**WHEREFORE**, Hammer demands judgment for indemnity in its favor against Knauf UK GMBH for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

## COUNT 22 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf UK)

242.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

243.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

244.    Upon information and belief, Knauf UK, among other things, supplied, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

245.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defects in the drywall contained in the Homes.

246.    Without admitting any liability or damages to Plaintiffs, should Hammer be found liable, Knauf UK would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

247.    Hammer has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

248.    To the extent that any common liability is found with respect to Hammer, Hammer hereby asserts its right of contribution against Knauf UK for its pro rata share of the liability.

249.    Knauf UK should be required to repay Hammer for any loss, damages, costs, and expenses, including attorneys' fees, Hammer is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Hammer in this action and/or any other action

{FT779180;1}

brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Hammer, in excess of its pro rata share of any common liability.

**WHEREFORE**, Hammer demands that judgment be entered against Knauf UK GMBH for its pro rata share of the liability, if any, found against Hammer in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 23 – EQUITABLE SUBROGATION
#### (Against Knauf UK)

250.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

251.    This is an action, stated in the alternative, for equitable subrogation.

252.    Plaintiffs in the Complaint allege various claims against Hammer for damages caused by defective drywall contained in the Homes.

253.    Upon information and belief, Knauf UK, among other things, supplied, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

254.    Hammer is not and was not in the business of supplying, marketing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied, marketed, placed into the stream of commerce, and/or sold by Knauf UK.

255.    Without admitting any liability or damages to Plaintiffs, Hammer is not primarily liable for any liability to the Plaintiffs.

256.    To the extent that Hammer is required to pay damages for any fault of Knauf UK to protect its own interests, and not as a volunteer, Hammer would be entitled to reimbursement from Knauf UK under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Hammer, including, without limitation, payments made or to be made on behalf of

{FT779180;1}

Hammer to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Hammer and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Hammer, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against the claims brought by Plaintiffs.

257.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Hammer demands judgment in its favor and against Knauf UK GMBH for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 24 – NEGLIGENCE
### (Against Knauf UK)

258.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

259.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

260.    Upon information and belief, Knauf UK supplied, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

261.    Hammer was a foreseeable user of the drywall supplied, marketed, placed into the stream of commerce, and/or sold by Knauf UK.

262.    Knauf UK had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf UK owed Hammer a duty to, among other things, exercise reasonable care to (i) supply, market, place into the stream of commerce, and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or

damage the health and safety of Hammer's customers; (ii) supply, market, place into the stream of commerce, and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

263. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

264. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK breached the duty of care owed to Hammer by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in supplying, marketing and/or selling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in supplying, marketing and/or selling drywall that complied with all foreseeable applicable building and industry standards.

265.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf UK's duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

266.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK knew or reasonably should have known its acts and omissions in supplying, marketing, placing into the stream of commerce and/or selling defective drywall would expose Hammer to substantial liability and damages. If Knauf UK had exercised that degree of care that a prudent or reasonably cautious supplier and/or seller acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Hammer would ensue as a result of improperly supplying, marketing, placing into the stream of commerce and/or selling drywall.

267.   Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf UK's breaches of the duty of care owed to Hammer, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf UK's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf UK GMBH in an amount to be determined at trial, plus costs and interest, and for such further

54

and other relief as the Court deems just and proper.

<b><u>COUNT 25 – NEGLIGENT FAILURE TO WARN</u></b><br>
<b>(Against Knauf UK)</b>

268.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

269.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

270.    Upon information and belief, Knauf UK supplied, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

271.    Hammer was a foreseeable user of the drywall supplied, marketed, placed into the stream of commerce, and/or sold by Knauf UK.

272.    Knauf UK had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf UK owed Hammer a duty to exercise reasonable care to: (i) disclose any defects in the drywall supplied, marketed, placed into the stream of commerce, and/or sold by Knauf UK or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Hammer about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Hammer about any problems or dangers in using the drywall for residential construction.

273.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

55

274.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK knew or should have known that unless it warned Hammer of the risk of using the drywall, Hammer would suffer harm. However, Knauf UK failed to provide an adequate warning of such danger.

275.    Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Hammer had no way of anticipating the drywall could harm persons and/or property and had every reason to expect the product could be safely used in a residential home in the ordinary manner.

276.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK breached the duty of care owed to Hammer by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Hammer about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Hammer about any problems or dangers in using the drywall for residential construction, about which Knauf UK knew or reasonably should have known.

277.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf UK's duty of care were the direct and proximate cause of Hammer's injuries, losses, and damages.

278.    To the extent Plaintiffs are successful in proving that drywall was defective,

{FT779180;1}

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Hammer to substantial liability and damages. If Knauf UK had exercised that degree of care that a prudent or reasonably cautious supplier and/or seller acting under the same circumstances would exert, Knauf UK would or could have foreseen that damages to Hammer would ensue as a result of failing to disclose and/or warn of drywall defects.

279.    Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf UK's breaches of the duty of care, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf UK's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf UK GMBH in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 26 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf UK)

280.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

281.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

{FT779180;1}

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

282.    Upon information and belief, Knauf UK supplied, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

283.    Hammer was a foreseeable user of the drywall supplied, marketed, placed into the stream of commerce, and/or sold by Knauf UK.

284.    To the extent Plaintiffs are successful in proving that drywall supplied, marketed, placed into the stream of commerce, and/or sold by Knauf UK was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf UK's control and/or was sold to Hammer, Knauf UK knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

285.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK, as the supplier and/or seller of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf UK breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

286.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with

the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

287.   Consumers, such as Hammer, to whom a warning might have been provided, could have been identified by Knauf UK could reasonably be assumed to be unaware of the risk of harm.

288.   A warning could have been effectively communicated to consumers such as Hammer and acted on by them.

289.   At all material times, Knauf UK stood in a better position than Hammer to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Hammer was unaware of potential dangers and/or risk of harm associated with the use of Knauf UK's drywall product in residential construction.

290.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable supplier and/or seller in Knauf UK's position would have provided a post-sale warning.

291.   Without admitting any liability or damages to Plaintiffs, Hammer was damaged by Knauf UK's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf UK's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf UK GMBH in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

COUNT 27 – STRICT PRODUCTS LIABILITY
**(Against Knauf UK)**

292.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

293.    Upon information and belief, at all material times. Knauf UK was in the business of supplying, marketing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

294.    Upon information and belief, Knauf UK supplied, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

295.    At the time said drywall was supplied, marketed, placed into the stream of commerce, and/or sold by Knauf UK, Knauf UK intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

296.    Knauf UK expected the drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Hammer and/or the Homes without substantial change affecting that condition.

297.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

298.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall supplied, marketed, placed into

60

the stream of commerce, and/or sold by Knauf UK directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf UK's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf UK GMBH in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 28 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf UK)

299.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

300.    Upon information and belief, at all material times, Knauf UK was in the business of supplying, marketing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

301.    Knauf UK supplied, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

302.    At the time said drywall was supplied, marketed, placed into the stream of commerce, and/or sold by Knauf UK, Knauf UK intended that the drywall reach consumers and/or ultimate users of the drywall, such as Hammer.

303.    Knauf UK expected the drywall to reach Hammer and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach

Hammer and/or the Homes without substantial change affecting that condition.

304.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

305.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf UK was required to provide a warning. However, Knauf UK failed to provide an adequate warning of such danger.

306.    Hammer did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

307.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf UK failed to warn Hammer of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Hammer had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

308.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Hammer

to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims. Knauf UK's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf UK GMBH in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 29 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
**(Against Knauf UK)**

309.   Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

310.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

311.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

312.   At all material times, Hammer was a person and a consumer of drywall as defined under FDUTPA.

313.   At all material times, Knauf UK engaged in trade or commerce by supplying, marketing and/or selling drywall to consumers, such as Hammer.

314.    Upon information and belief, Knauf UK supplied, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

315.    At the time Knauf UK supplied, marketed, placed into the stream of commerce, and/or sold the drywall, Knauf UK represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

316.    Plaintiffs in the Complaint allege various claims against Hammer for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

317.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf UK supplied, marketed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf UK knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

318.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf UK's deceptive and unlawful conduct in supplying, marketing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

319.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{FT779180;1}

as more fully alleged in the Complaint, Knauf UK's unfair and deceptive conduct in supplying, marketing, placing into the stream of commerce and/or selling defective drywall, and/or its failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

320.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK's unfair and deceptive conduct in supplying, marketing, placing into the stream of commerce and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Hammer acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the supplier and/or seller of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

321.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK's unfair and deceptive conduct in supplying, marketing, placing into the stream of commerce and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Hammer.

322.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Hammer did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf UK's violations of FDUTPA directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf UK's wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf UK GMBH in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 30 – UNJUST ENRICHMENT
### (Against Knauf UK)

323.    Hammer reasserts and realleges the allegations in paragraphs 1 through 34 above as if fully set forth herein.

324.    Plaintiffs, in the Complaint, allege various claims against Hammer for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

325.    Upon information and belief, Knauf UK supplied, marketed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

326.    Knauf UK received money from Hammer as payment for the defective drywall installed in the Home.

327.    In delivering such payment, monies and/or funds to pay for the defective drywall

{FT779180;1}

that was installed in the Home, Hammer conferred a benefit, *i.e.*, funds and profit, to Knauf UK, which had knowledge thereof.

328.    Knauf UK voluntarily accepted and retained the benefit conferred upon it by Hammer.

329.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK's acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.

330.    The circumstances described herein under which Knauf UK profited from supplying, marketing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf UK to retain those funds and profits.

331.    Hammer has no adequate remedy at law.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf UK GMBH in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 31 – VICARIOUS LIABILITY
### (Against Knauf Gips)

332.    Hammer reasserts and realleges the allegations in paragraphs 1 through 232 above as if fully set forth herein.

333.    This is an action for vicarious liability against Knauf Gips for the negligence and

{FT779180;1}

other wrongful acts of its actual and/or apparent agents, Gebrueder Knauf and Knauf International.[6]

334.    Among other things, Gebrueder Knauf and Knauf International are involved in the marketing, distribution and/or sale of drywall.  Upon information and belief, they are actual agents and/or apparent agents of Knauf Gips.

335.    Upon information and belief, at all material times, Knauf Gips was a family-owned German company extensively involved in the plasterboard market in Germany, the United Kingdom, France, China, and the United States, among others.  Indeed, the Court of European Justice of the European Union in an action between Knauf Gips and the European Commission has found that Knauf Gips and other subsidiaries dealing in gypsum products owned by the Knauf family (the "Knauf Group") constitute one "economic unit" in the area of competition law, and that Knauf Gips should be responsible for all activities of the Knauf Group.

336.    Upon information and belief, at all material times, Knauf Gips had an apparent or actual partnership with, or an ownership interest in, Gebrueder Knauf and Knauf International.

337.    Upon information and belief, Knauf Gips supervised, monitored, and/or otherwise exercised control and/or had a right to exercise control over the operations of Gebrueder Knauf and Knauf International, and their agents, apparent agents, and employees, including but not limited to the distribution, marketing, and/or sale of their drywall products.

338.    Upon information and belief, at all material times, Knauf Gips was closely involved in the management of Gebrueder Knauf and Knauf International, and their agents,

---

[6] As noted in note 2, *infra*, Hammer filed its Cross Claim and Third Party Claim on December 7, 2010 [D.E. 6595], which included claims against Knauf Gips for the acts of its actual and/or apparent agents, Knauf Plasterboard (Tianjin) Co. Ltd., Knauf Plasterboard (Wuhu) Co. Ltd. and Guangdong Knauf New Building Products Co., Ltd.  The claims raised herein address intervening plaintiffs', Bonnie and John H. Adams, Complaint in Intervention [D.E. 6651], which added new claims against Knauf Gips' actual and/or apparent agents, Gebrueder Knauf and Knauf International.

{FT779180;1}

apparent agents, and employees.

339.    By way of its apparent or actual partnership and/or exercise of control over the conduct and operations of Gebrueder Knauf and Knauf International, Knauf Gips acknowledged that Gebrueder Knauf and Knauf International would act on its behalf as its actual and/or apparent agent(s).

340.    Gebrueder Knauf and Knauf International accepted the undertaking to act on Knauf Gips' behalf.

341.    As such, Knauf Gips is vicariously liable for all of the damages caused by the negligent and/or other wrongful conduct of its actual and/or apparent agents, Gebrueder Knauf and Knauf International, as further alleged herein.

342.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf's and Knauf International's wrongful conduct as alleged herein directly and proximately caused and/or exposed Hammer to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Hammer to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Hammer in this action and/or any other action brought by Plaintiffs against Hammer, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Hammer in defending against these claims.  Knauf Gips', Gebrueder Knauf's, and Knauf International's, wrongful conduct also caused damages to Hammer, including but not limited to Hammer's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Hammer demands judgment for damages in its favor and against Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and

{FT779180;1}

other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**COMES NOW** Defendant/Cross-Plaintiff, Hammer Construction Services, LTD and hereby demands a trial by jury as to all issues so triable as a matter of right.

Respectfully submitted this 1st day of June, 2011.

**AKERMAN SENTERFITT**

BY: /s/    Leslie Miller Tomczak
       Stacy Bercun Bohm, Esq. (Fla. Bar No. 22462)
       Valerie B. Greenberg, Esq. (Fla. Bar No. 26514)
       Leslie Miller Tomczak, Esq. (Fla. Bar No. 126489)
       Las Olas Centre II, Suite 1600
       350 East Las Olas Boulevard
       Fort Lauderdale, Florida 33301
       Telephone: (954) 463-2700
       Telecopier: (954) 463-2224
       Email: stacy.bohm@akerman.com
           valerie.greenberg@akerman.com
           leslie.tomczak@akerman.com

*Attorneys for Hammer Construction Services, LTD*

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
Email: Brent.barriere@phelps.com
      Susie.morgan@phelps.com
      Skylar.rosenbloom@phelps.com

*Co-Counsel for Hammer Construction Services, LTD*

{FT779180;1}

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that *Defendant Hammer Construction Services, LTD's Cross Claim Against Knauf Gips KG, Gebrueder Knauf Verwaltungsgesellschaft, K.G., Knauf International GmbH, and Knauf UK GMBH* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA 70163 (kmiller@frilot.com), by U.S. Mail and e-mail <u>or</u> by hand delivery and email <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 1st day of June, 2011.

/s/      Leslie Miller Tomczak

71