**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ============================== | x | =========================== |
| | x | |
| IN RE: CHINESE-MANUFACTURED | x | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | x | |
| LITIGATION | x | SECTION: L |
| | x | |
| THIS DOCUMENT APPLIES TO ALL | x | JUDGE FALLON |
| CASES | x | |
| | | MAG. JUDGE WILKINSON |
| ============================== | x | =========================== |

## RE-NOTICE OF ORAL AND VIDEOTAPED DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)

TO:   Guardian Building Products Distribution, Inc.
      Through its Registered Agent
      CT Corporation System
      1201 Peachtree Street, N.E.
      Atlanta, GA  30361

**PLEASE TAKE NOTICE** that pursuant to Rule 26 and 30(b)(6) of the Federal Rules of Civil Procedure, plaintiffs, by and through their undersigned attorneys, the Plaintiffs Steering Committee in the MDL, will take the deposition of **Guardian Building Products Distribution, Inc.,** on Monday, **July 18, 2011** at **10:30 o'clock a.m. (eastern)** at the offices of **Elmore & Wall, P.A., 55 Beattie Place, Suite 1050, Greenville, South Carolina  29601, PH:  (864) 255-9500,** or at another location mutually agreed upon by the parties.  Pursuant to Fed. R. Civ. P. 30(b)(6), **Guardian Building Products Distribution, Inc.** shall designate and produce a designated representative or representatives, as may be required, to testify on behalf of **Guardian**

**Building Products Distribution, Inc.** concerning the topics identified in Schedule A attached hereto.  Further, the deponent is requested to produce the documents identified in the attached Schedule "A" to which deposition questions will be asked.

<div style="margin-left: 2em;">

Primary Examiners:        A Member of the PSC, or its designee
Videotaped Deposition: Yes
Call-In Number:           **888-337-8218**
                          **Participant Code:  769758**

</div>

The deposition will be taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, excluding Sundays and court-recognized holidays, until the examination is completed.

Pursuant to directives provided at the status conference on May 27, 2010, a brief explanation of the subject matter expected at this deposition is as follows.  This brief explanation is with full reservation of all rights by the noticing party and is not intended to limit in any way the scope of the deposition noticed herein.  Counsel should be aware that all matters may be discovered in the deposition beyond the following and that the following explanation is made solely in accordance with the directives provided at the status conference:   This is an MDL "common" deposition of a Taishan importer/purchaser/supplier of drywall.

Respectfully submitted,

/s/ Leonard A. Davis_____
**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***HERMAN, HERMAN, KATZ & COTLAR, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:  (504) 581-4892
FAX:  (504) 561-6024
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Dawn M. Barrios<br>701 Poydras Street<br>Suite 3650<br>New Orleans, LA  70139<br>PH:  (504) 524-3300<br>Fax:  (504) 524-3313 | Daniel E. Becnel, Jr.<br>425 W. Airline Highway<br>Suite B<br>LaPlace, LA  70068<br>PH:  (985) 536-1186<br>Fax:  (985) 536-6445 |
| Robert Josefsberg<br>25 Flagler Street<br>8th Floor<br>Miami, FL  33130<br>PH:  (305) 358-2800<br>Fax:  (305) 358-2382 | Ervin Amanda Gonzalez<br>255 Aragon Avenue<br>Cora Gables, FL  33134<br>PH:  (305) 476-7400<br>Fax:  305) 476-7444 |
| Ben Gordon<br>316 S. Baylen Street<br>Suite 600<br>Pensacola, FL  32502<br>PH:  (850) 435-7090<br>Fax:  (850) 436-6091 | Hugh P. Lambert<br>701 Magazine Street<br>New Orleans, LA  70130<br>PH:  (504) 581-1750<br>Fax:  (504) 529-2931 |
| Arnold Levin<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA  19106<br>PH:  (215) 592-1500<br>Fax:  (215) 592-4663 | Gerald E. Meunier<br>2800 Energy Centre<br>1100 Poydras Street<br>New Orleans, LA  70163-2800<br>PH:  (504) 522-2304<br>Fax:  (504) 528-9973 |
| Jerrold Seth Parker<br>3301 Bonita Beach Road<br>Bonita Springs, FL  34134<br>PH:  (239) 390-1000<br>Fax:  (239) 390-0055 | James Robert  Reeves<br>160 Main Street<br>Biloxi, MS  39530<br>PH:  (228) 374-5151<br>Fax:  (228) 374-6630 |

| Christopher Seeger | Bruce William Steckler |
|---|---|
| One William Street | 3102 Oak Lawn Ave. |
| New York, NY  10004 | Suite 1100 |
| PH:  (212) 584-0700 | Dallas, TX  75219 |
| Fax:  (212) 584-0799 | PH:  (214) 523-6674 |
| | Fax:  (214) 520-1181 |
| Scott Weinstein | |
| 12800 University Drive | Richard J. Serpe, Esquire |
| Suite 600 | 580 East Main Street |
| Ft. Myers, FL  33907 | Suite 310 |
| PH: (239) 433-6880 | Norfolk, VA 23510-2322 |
| Fax: (239) 433-6836 | PH: (757) 233-0009 |
| | Fax: (757) 233-0455 |
| Daniel K. Bryson | |
| 3700 Glenwood Avenue | |
| Suite 410 | |
| Raleigh, NC 27612 | |
| PH: (919) 981-0191 | |
| Fax: (919) 981-0431 | |

**PLAINTIFFS' STEERING COMMITTEE**

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

| Richard S. Lewis | Andrew Lemmon |
|---|---|
| HAUSFELD LLP | Lemmon Law Firm, LLC |
| 1700 K Street, N.W Suite  650 | P.O. Box 904 (mailing address) |
| Washington, DC 20006 | 15058 River Road |
| Phone: (202) 540-7200 | Hahnville, LA  70057 |
| Fax:  (202) 540-7201 | Phone:  (985) 783-6789 |
| rlewis@hausfeldllp.com | Fax:  (985) 783-1333 |
| | andrew@lemmonlawfirm.com |
| | |
| | Jeremy W. Alters |
| | Alters Law Firm. |
| | 4141 N.E. 2nd Avenue |
| | Suite 201 |
| | Miami, FL 33137 |
| | Phone: (305) 571-8550 |
| | Fax: (305) 571-8559 |
| | jeremy@alterslaw.com |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing Re-Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6) has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 7th day of June, 2011.

       /s/ Leonard A. Davis
      Leonard A. Davis
      Herman, Herman, Katz & Cotlar, LLP
      820 O'Keefe Ave.
      New Orleans, LA  70113
      PH:  (504) 581-4892
      Fax:  (504) 561-6024
      ldavis@hhkc.com

## SCHEDULE A

## DEFINITIONS & INSTRUCTIONS

1.      Whenever used in this Request, the following terms shall have the following meanings:

(a)      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(b)      "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

(c)      "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

(d)      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.   Documents shall include all drafts, including drafts with "track changes," and shall be deemed to be separate documents within the meaning of this term.

(e)      "Electronically stored information" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments,

6

annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  ESI includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full e-mail alias's (not merely "display names), electronic calendars, I'm logs, PBX logs, document management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or file fragment. Electronically stored information includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including,  EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal.  The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(f)	"Electronic media" means any magnetic or other storage media device used to record electronically stored information.  Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched

7

cards, punched tape, computer chips, including,  EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

   (g) "CPSC" means the Federal Consumer Product Safety Commission, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

   (h) "EPA" means the Environmental Protection Agency, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

   (i) "CDC" means Centers for Disease Control and Prevention's (CDC's) Division of Environmental Hazards and Health Effects within the National Center for Environmental Health (NCEH), any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

   (j) "ATSDR" means Agency for Toxic Substances and Disease Registry, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

   (k) "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(l)      "Identify" with respect to documents, means to give, to extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(m)      "Including" or "includes" means including, without limitation.

(n)      "Defendant," "you," or "your" means each of the individual named Defendants to whom this set of discovery is directed, and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including but not limited to their attorneys and accountants.

(o)      "Chinese drywall" relates to drywall, plasterboard, or wallboard manufactured in China.

(p)      "Quality Assurance Methods" means the testing or other protocols used to ensure the ultimate quality and consistency of drywall, plasterboard, or wallboard, including, but not limited to, the stages of production at which tests were performed, if any; testing of raw materials used for production if any; specific types of testing performed, if any; and, periodic chemical composition tests on the final product, if any.

(q)      "Process Control" means the on-line or real-time measurements and corrective actions, processes and protocols used to ensure the proper operation of a manufacturing process for its drywall, including, but not limited to, the amounts, quantities and qualities of raw materials employed, the types of monitoring devices utilized, if any; the frequency with which measurement devices were calibrated, if ever;

9

and, the frequency of which production and measurement equipment was inspected for wear, corrosion, or other damage, if ever.

(r)     "Manufacturing Methods" mean the protocol or specifications for manufacturing drywall.

(s)     "Test" or "Tests" means all tests, inspections, checks, studies, evaluations, measurements, and analyses of drywall and the materials and compounds which make up the same, into or of the composition, chemical or physical properties, performance, life expectancy, and formulation thereof.

(t)     "Person" means any natural person or any business, legal, or governmental entity or association.

(u)     "Taishan" means Taian Taishan Plasterboard Co., Ltd., Taishan Gypsum Co., Ltd. and any of its parents, related entities, subsidiaries, agents and assigns.

2.     The following rules of construction apply to all discovery requests:

(a)     The terms "all" and "each" shall be construed as all and each;

(b)     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(c)     The use of the singular form of any word includes the plural and vice versa; and

(d)     Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

3.     Unless otherwise specifically stated, this Request encompasses documents, which were created, received, or generated or otherwise entered into your

10

possession, custody, or control between January 1, 2001 and the current date (the "Relevant Time Period").

4.      Any document falling within the scope of this Request that is withheld on the basis of a claim of privilege, work product, or any other ground is to be identified in a privilege log, produced in an electronic format that allows text searching and organization of data.  Defendant shall produce a privilege log within 7 days after the production of documents for which privilege is asserted to apply.  For each document for which Defendant asserts a privilege applies, it must provide in the privilege log: (a) a statement of the ground alleged for withholding such document; (b) the date of the document; (c) the location of any attachments associated with the document and whether the asserted privilege also applies to such attachments; (d) the identity of its author and signatories; (e) the type of document (*e.g.*, letter); (f) a summary of its content; (g) its present location and custodian; and (h) a listing of all persons to whom the contents of such documents have been disclosed and all persons who have or have had possession, custody, or control of the documents (or any portions thereof), pursuant to Federal Rule of Civil Procedure 45(d)(2).  Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

To assist in the prompt resolution of disputed claims of privilege, Defendant shall submit to the Court under seal, unredacted copies of all documents for which it asserts a privilege.

5.      If you are unable to comply fully with any of the specific requests, you shall comply to the extent possible and provide an explanation as to why full compliance is not possible.  In the event that any documents called for by this Request were formerly in your possession, custody or control, or have been lost or destroyed, those documents are to be identified in writing as follows:  persons who prepared or authorized the documents indicated or blind copies; dates of preparation or transmittal; subject matter; number of pages, attachments or appendices; all persons to whom distributed, shown or explained; date or dates of loss or destruction; and if destroyed, the manner of destruction, reason for destruction, persons authorizing destruction and persons destroying the documents.

6.      This Request is directed to all documents within your possession, custody or control, or within the possession of any agent of Defendant, or within the possession of any entity associated with Defendant, or within the possession, custody, or control of such entity's directors, officers, agents, servants, employees, consultants, and professionals.

7.      Documents are to be produced in full and in their unexpurgated form. Redacted documents shall not constitute compliance with this Request, unless such documents are redacted pursuant to any claim of privilege as set forth in paragraph 4 above.

8.      Documents shall be produced in their original language (e.g., Mandarin, German) and shall include any translations of such documents, whether such translations were performed prior to or subsequent to the date of these requests.

9.      This Request is intended to be consistent with the Federal Rules of Civil Procedure 26 and 34.   This Request is a continuing one and requires further and supplemental production by you as and whenever you acquire or create additional responsive documents after the time of the initial production hereunder.

10.     All hard copy documents and electronically stored information (ESI) produced in response to this Request shall be organized and labeled either to correspond with the number of the specific request to which the documents are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business.  With respect to the production of electronically stored information, all ESI that is demanded is to be produced in its native usable format, as maintained on the computer storage systems, regardless of whether such ESI exists (and/or may have been copied and/or otherwise converted) in more than one electronic format. Plaintiffs request that the parties meet and confer to discuss the timing and manner of Defendant's production in response to these requests.

11.     Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document (e.g., for ABC Defendant, Inc. "ABC001"; "ABC002").  No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable) redactions (consistent with the Stipulated Protective Order in this matter), and the Bates Number identified above.  The confidential legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.

13

## **DOCUMENTS TO BE PRODUCED**

1.      All documents generated by, prepared for, reviewed by, received by, or concerning Chinese drywall or of problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

2.      For each year in which Guardian, including any subsidiary or affiliate of Guardian, designed, developed, tested, inspected, manufactured, marketed, sold, exported, or distributed Chinese drywall, all documents concerning the departmental and corporate organizational charts for the individuals in those groups, departments, and teams with any responsibility or oversight of any aspect of the design, development, testing, inspection, manufacture, marketing, sale, export, or distribution of said Chinese drywall.

3.      All documents concerning any contracts or agreements with respect to Chinese drywall, including indemnity agreements, agreements to assume liability, agreements to assume the defense, and joint defense agreements made by Guardian, insurers for Guardian, or any other entities that may be financially affected by any of the claims asserted in this litigation, including but not limited to, Chinese drywall manufacturers, distributors, importers, exporters, brokers, retailers, builders, contractors, and installers.

4.      All documents concerning performance specifications and standards for Chinese drywall, whether such standards are set by Guardian, professional, engineering, laboratory, or manufacturing organizations, or by governmental entities.

14

5.      All documents evidencing the amount of Chinese drywall purchased, exported, imported, brokered, stored, sold, and/or distributed by Guardian during the Relevant Time Period.

6.      All documents identifying the entity or entities from whom Guardian received, imported, or purchased Chinese drywall during the Relevant Time Period, including documents identifying direct manufacturer purchases and purchases through suppliers.

7.      All documents, including invoices, bills of lading, receipts, shipping documents, and customs documents, which relate to purchases, imports, and/or receipts of Chinese drywall during the Relevant Time Period.

8.      All documents, including sales orders, invoices, bills of lading, shipping documents, and customs documents, which relate to exports, sales, transfers, and distributions of Chinese drywall during the Relevant Time Period.

9.      All documents including sales orders, invoices, purchase orders, bills of lading, contracts, shipping documents, and customs documents, that relate to any transactions involving Chinese drywall with Guardian during the Relative Time Period.

10.      Promotional and/or marketing materials from manufacturers relating to any Chinese Drywall product.

11.      All communications during the Relevant Time Period by, from or between Guardian including its employees, agents, and or third-party consultants concerning Taishan's sales, exports, imports, purchase, shipping, storage, brokering, transfer, distribution or sale of Chinese drywall.

15

12.    All notices, claims, complaints, communications or documents of any kind among and/or between Guardian's employees and/or employees of affiliate companies or consultants, and any property owners, homeowner's associations, co-op or condo boards, property managers, or tenants during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

13.    All communications between Guardian and any manufacturer, importer, exporter, purchasing agent, broker, distributor, and/or retailer of Chinese drywall during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

14.    All communications between Guardian and any other builder, purchaser, and/or contractor using Chinese drywall, or installer of Chinese drywall utilized by Defendant during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

15.    All communications between Guardian and any foreign or domestic governmental agency during the Relevant Time Period, including but not limited to the

CPSC, EPA, CDC, and APSDR, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

16.     All documents provided to and any communications between Guardian and any foreign or domestic governmental entity, body, department, division, agency, and/or representatives during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

17.     All documents relating to research, inspection, testing, analysis, or remediation done by or on behalf of Guardian relating to Chinese drywall.

18.    All documents relating to instructions, guidance, standard operating procedures, or policies relating to the inspection, testing, analyses, or remediation done by or on behalf of Guardian relating to the Chinese drywall that Defendant ordered, purchased, received, stored, sold, transferred, or distributed.

19.     All contracts and communications between Guardian and any third-party vendor or consultant relating to any research, inspection, testing, analysis, and remediation of Chinese drywall.

20.     All documents and communications between Guardian and any insurer or its representative concerning any claims relating to Chinese drywall.

21.     All notices to any property owners and/or tenants, that their property and/or other properties contain Chinese drywall.

22.     All documents relating to the settlement and release agreement entered into 2008 by and among Taian Taishan Plasters Board Co., Ltd. ("Taishan") and Guarding Building Products Distribution Products, Inc. ("Guardian").

23.     All correspondence by and between Taian Taigao Trading Corp., Ltd. and Guardian Building Products relating to gypsum wall board.

24.     All correspondence, documents or communications relating to purchase orders, standards, complaints and problems with gypsum wall board during the relevant time period.

25.     All correspondence, documents or communications with Radco regarding gypsum board.

26.     All correspondence, documents or communications with LaFarge during the relevant time period relating to Chinese drywall or gypsum board.

27.     All correspondence, documents or communications involving rebates, refunds or payments made to customers who made allegations regarding problem or defective Chinese drywall sold by you.

28.     Any documents relating to settlements or claims involving allegedly defective Chinese drywall.

## DEPOSITION TOPICS

Pursuant to Rule 30(b)(6), Defendant shall designate and produce for deposition one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the following subject matters:

**A.** **Organization and Record-keeping**

1.      The corporate organization and structure of Guardian.

2.      Any entities with which Guardian is affiliated or has a financial interest in that was or is involved in the design, development, manufacture, promotion, export, import, brokerage, distribution, shipment, storage, sale, purchase, and/or installation of Chinese drywall during the Relevant Time Period.

3.      Any filings made by or on behalf of Guardian to any state, federal, domestic, and/or foreign governmental agencies, departments, divisions, bodies, entities, or representatives during the Relevant Time Period.

4.      The nature of any and all of your transactions involving Chinese drywall during the Relevant Time Period.

5.      The identities of any entities involved in any way with your transactions involving Chinese drywall during the Relevant Time Period.

6.      The manufacturer and types of drywall product involved in your transactions in Chinese drywall during the Relevant Time Period.

7.      Any markings on the Chinese drywall product that you exported, imported, sold or brokered (e.g., lot number, batch number, serial number, color markings, labeling, UPC codes, etc.) during the Relevant Time Period.

19

8.     The methods, locations, and standards employed in the storage of any and all Chinese drywall exported, imported, sold or brokered by you during the Relevant Time Period.

9.     The nature of every transaction between you and any Chinese drywall manufacturer including but not limited to all face-to-face, telephonic, e-mail, instant message, text message, and/or any other electronically transmitted communication.

10.    All travel by you to China including but not limited to trips to drywall manufactures and distributors located in China.

11.    Every contract entered into by you for the purchase of drywall manufactured in China including but not limited to the purchase of drywall from Shandong Taihe Dongxin Company, Taishan Gypsum Inc., and any other drywall manufacturer.

12.    All communications between and among you and other importers and exporters of Chinese drywall regarding quality control, shipping, storage, and the purchase of drywall manufactured in China.

13.    Financial data relating to your transactions involving Chinese Drywall during the Relevant Time Period, including:

        a.  Sales data;
        b.  Shipping costs;
        c.  Storage costs;
        d.  Purchase costs; and
        e.  Refunds paid or received.

14.    Any product labeling, information, instructions, specifications, and/or warranties that you provided and/or received with any receipts or shipments of Chinese drywall during the Relevant Time Period.

15.     Any inspections, analyses, and/or compliance testing of Chinese drywall conducted by you or on your behalf in connection with your manufacture of Chinese drywall or transactions involving Chinese drywall during the Relevant Time Period.

16.     Any standards consulted, considered, or relied upon to determine the quality and characteristics of the drywall products subject to such inspections, analyses, and compliance testing.

17.     Any communications with trade associations, professional organizations, manufacturing organizations concerning the manufacture, storage, care, or use of Chinese Drywall.

18.     Any communications and/or reports of adverse health effects associated with exposure to Chinese drywall.

19.     Any policies of insurance, including all CGL, Product Liability, Builder's Risk, D&O and excess insurance policies relating to claims, and including the following information for each policy;

       a.     Insurer;
       b.     Dates policy in effect;
       c.     Policy Number;
       d.     Type of Policy;
       e.     Insurance Agent;
       f.     Policy Coverage Limits; and
       g.     Claims and Coverage issues.

20.     Any claims you have made on any insurance policies relating to your sale, installation, transfer, distribution or shipment of products identified herein, and including the following information for each claim:

       a.     Date;
       b.     Insurer;

        c.      Description of claim; and

        d.      Insurer's response to claim.

        e.      If in litigation:

              i.      Caption of Case; and

              ii.     Name and address of attorneys involved.

21.     The settlement and release agreement entered into 2008 by and among Taian Taishan Plasters Board Co., Ltd. ("Taishan") and Guarding Building Products Distribution Products, Inc. ("Guardian") and all related communications or dealings.

22.     Any dealings or relationship with Taian Taigao Trading Corp., Ltd. and all intermediaries.

23.     All dealings and relationship with Radco regarding gypsum board.

24.     All dealings and relationship with LaFarge during the relevant time period relating to Chinese drywall or gypsum board.

25.     All documents produced in response to the subpoena and document request attached hereto as Schedule "A".