UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION: L |
| | * | |
| This document relates to: | * | JUDGE: FALLON |
| | * | |
| *Wiltz v. Beijing New Building Materials* | * | MAG. JUDGE WILKINSON |
| *Public Limited Co.* | * | |
| No. 10-361 | * | |
| | * | |
| *Payton v. Knauf Gips, KG* | * | |
| No. 09-7628 | * | |
| | * | |
| *Silva v. Arch Insurance Co.* | * | |
| No. 09-8034 | * | |
| | * | |
| *Silva v. Interior Exterior Building Supply, LP* | * | |
| No. 09-8030 | * | |
| | * | |
| *Gross v. Knauf Gips, KG* | * | |
| No. 09-6690 | * | |
| | * | |
| *Rogers v. Knauf Gips, KG* | * | |
| No. 10-362 | * | |
| | * | |
| *Amato v. Liberty Mutual Insurance Co.* | * | |
| No. 10-932 | * | |
| | * | |
| *Abel v. Taishan Gypsum Co., Ltd.* | * | |
| No. 11-80 | * | |
| | * | |
| *Abreu v. Gebrueder Knauf* | * | |
| *Verwaltungsgesellschaft, KG* | * | |
| No. 11-252 | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**ORDER & REASONS**

Before the Court is Southern Homes, LLC, Tallow Creek, LLC, and Springhill, LLC's

(collectively "Southern") Motion for Partial New Trial Regarding Stay Issued in the Preliminary

1

Approval Order, or, in the Alternative, Motion to Alter or Amend the Order. (R. Doc. 8848). For the following reasons, Southern's Motion is DENIED.

**I.     BACKGROUND**

On June 15, 2009, this Court was designated as the transferee court for federal cases involving Chinese-manufactured drywall, creating Multi-District Litigation 2047. Since the inception of MDL 2047, numerous cases have been consolidated before this Court. Included within these cases are claims against Interior Exterior Building Supply, LP ("InEx"), as well as its primary insurers, Arch Insurance Co. ("Arch") and Liberty Mutual Fire Insurance Co. ("Liberty"). After conducting extensive discovery and depositions, and scheduling a class certification hearing and a trial, on April 25, 2011, InEx, Arch, Liberty, and the Plaintiffs' Steering Committee ("PSC") entered into the InEx Settlement Agreement, a class action settlement which requires the tendering of all of InEx's primary insurance coverage as compensation for the claims against it in the litigation.

Because of the nature of the InEx Settlement Agreement, before it can be finalized, Rule of Civil Procedure 23 requires Court approval. Accordingly, on May 6, 2011, the Court began the first step for Rule 23 approval when it presided over a preliminary approval hearing. After reviewing numerous briefs supporting and opposing preliminary approval and hearing from the parties on oral argument, the Court ruled from the bench, preliminarily approving the InEx Settlement Agreement. Thereafter, the Court issued a written Preliminary Approval Order which included a number of rulings and terms, including dates and terms for notice to be issued, a final fairness hearing on October 27, 2011, and a stay order on related proceedings during the Rule 23 approval process. *See* (R. Doc. 8818).

Southern is a homebuilder involved in the MDL litigation, but is also a plaintiff with claims

against InEx, as well as its installer Graf's Drywall, in a case filed on June 25, 2009, in the Orleans Parish Civil District Court ("CDC"), *Southern Homes, LLC v. Interior/Exterior Building Supply, LP*, Case No. 09-6564. In this case, Southern filed a motion for summary judgment against InEx, alleging that pursuant to Louisiana's law on redhibition, InEx is liable to Southern for damages relating to any defective Chinese-manufactured drywall Southern installed while building or remodeling homes in Louisiana. After conducting discovery, the motion was set for hearing by the state court on June 16, 2011.

## II.  PRESENT MOTION

### A.  Southern

Southern filed the present Motion challenging the stay provision in the Preliminary Approval Order because, according to Southern, this stay improperly impedes its own state court case pending in CDC, particularly the upcoming hearing on its motion for summary judgment. Southern argues that the stay order is procedurally deficient because the settling parties failed to carry their burden of proof for a preliminary injunction and it fails to meet the requirements of Federal Rule of Civil Procedure 65. Additionally, Southern contends that the great weight of jurisprudence under the Anti-Injunction Act and the All Writs Act counsels strongly against the stay order.

### B.  Responses in Opposition

The PSC, Class Counsel and Subclass Counsel (R. Doc. 8854), Liberty (R. Doc. 8881), and InEx (R. Doc. 8883) filed responses in opposition to Southern's Motion. These responses uniformly contend that the Court has authority to enter the stay order for the limited purpose of preliminary approval of the InEx Settlement Agreement and pursuant to the All Writs Act and Anti-Injunction Act. Additionally, these parties claim that the stay order is an appropriate exercise of the Court's

duty to act efficiently as possible, as well as its inherent authority to prohibit efforts that impede the Court's oversight of the InEx settlement. They refute that the stay order must comply with the Rule 65 requirements for injunction. Finally, these parties claim Southern has failed to overcome its burden under Rule 59 for reconsideration of the stay order.

### III.   LAW & ANALYSIS

#### A.   Standard of Review-Rule 59

Motions asking a court to reconsider an order are generally analyzed under the standards for a motion to alter or amend a judgment pursuant to Rule 59(e) or a motion for relief from a judgment or order pursuant to Rule 60(b). *See Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). Rule 59(e) governs when the motion is filed within 28 days of the challenged order. *See* Fed. R. Civ. P. 59(e). Because Southern's Motion seeks reconsideration of the Court's Preliminary Approval Order and was filed within 28 days of entry of this Order, the Court treats the Motion as one pursuant to Rule 59(e).

A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)(citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Rather, Rule 59(e) serves the narrow purpose of correcting manifest errors or law or fact, or presenting newly discovered evidence. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 1667, 174 (5th Cir. 1990); *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)(quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st

4

Cir. 2004)). In the Fifth Circuit, altering, amending, or reconsidering a judgment under Rule 59(e) "is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (citing *Clancy v. Empl'rs Health Ins. Co.*, 101 F.Supp.2d 463, 465 (E.D. La. 2000)). "A Rule 59(e) motion should not be used to re-litigate prior matters that...simply have been resolved to the movant's dissatisfaction." *Voisin v. Tetra Technologies, Inc.*, 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010). District courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). Yet at the same time, the Rule 59(e) standard "favors denial of motions to alter or amend." *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

Southern raises many of the same arguments here that it did previously in its Response in opposition to the Motion for Preliminary Approval. *See* (R. Doc. 8699). The Court considered these arguments prior to its ruling from the bench and written Preliminary Approval Order. The law is clear that a motion for reconsideration is not the proper vehicle for "rehashing" arguments, and on this ground alone denial of Southern's Motion may be warranted. Nonetheless, the Court addresses Southern's arguments below.

      **B.**      **Jurisdiction Pursuant to the All Writs Act & Anti-Injunction Act**

The parties dispute whether the Court has jurisdiction under the All Writs Act and Anti-Injunction Act to issue the stay order in the Preliminary Approval Order. The Court finds, based on the following law and analysis, that the stay issued was properly within the Court's authority under these Acts.

The All Writs Act provides, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and

5

agreeable to the usages and principles of law." 28 U.S.C. § 1651. Such "writs" include injunctions against conflicting state court proceedings. *See e.g. Newby v. Enron Corp.*, 338 F.3d 467 (5th Cir. 2003); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332 (5th Cir. 1981). However, a district court's injunctive power is not unfettered under the All Writs Act; rather it is circumscribed by the Anti-Injunction Act, 28 U.S.C. § 2283. The Anti-Injunction Act generally prohibits federal courts from enjoining state proceedings, except for following three enumerated exceptions, (1) as expressly authorized by an Act of Congress, (2) where it is necessary in aid of jurisdiction, and (3) to protect or effectuate judgments. 28 U.S.C. § 2283. The All Writs Act confers MDL transferee courts the power to enjoin conflicting state court proceedings when the injunction comports with an exception under the Anti-Indemnity Act. *See e.g. In re Diet Drugs,* 282 F.3d 220 (3d Cir. 2002); *In re Baldwin-United Corp.,* 770 F.2d 328 (2d Cir. 1985); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332 (5th Cir. 1981). The Supreme Court has held that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R. Cor. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970). The Fifth Circuit likewise recognizes, "the overarching principle that federal courts are to be cautious about infringing on the legitimate exercise of state judicial power." *Texas v. United States*, 837 F.2d 184, 186 (5th Cir. 1988).

In the present cases, the exception to the Anti-Injunction Act which would authorize this Court to enjoin related state court proceedings, including the CDC case in which Southern is involved, is the necessary in aid of jurisdiction exception; Congress has not issued an Act authorizing the injunction, nor has the Court issued a judgment which would be compromised by

the injunction. The Supreme Court has stated regarding the necessary in aid of jurisdiction exception "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R. Co.*, 389 U.S. 281, 295 (1970).

Traditionally, under the necessary in aid of jurisdiction exception, an injunction against a state court proceeding could only occur where a *res* was at stake. *See In re Diet Drugs*, 282 F.3d 220, 234 (3d Cir. 2002)(recognizing the traditional notion that the All Writs Act exceptions do not apply to *in personam* actions); *Winkler v. Eli Lilly & Co.,* 101 F.3d 1196, 1202 (7th Cir. 1996)("Ordinarily, the 'aid of jurisdiction' exception to the Anti-Injunction Act applies only to parallel state *in rem* rather than *in personam* actions"); *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985)("[T]he federal court is empowered to enjoin any state court proceeding affecting [its] *res*"); *see also* Joshua J. Wes, *Developments in the Law: Federal Jurisdiction and Forum Selection*, 37 Loy.L.A. L. Rev. 1603, 1629 (2004). Indeed, the Supreme Court has long recognized that where a federal court has jurisdiction over a *res* and a state court exercises jurisdiction over that same *res*, the federal court may enjoin the parties from proceeding in state court. *See Kline v. Burke Const. Co.*, 260 U.S. 226, 229 (1922). As to concurrent state and federal *in personam* actions, however, the Supreme Court has stated "[t]he traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to [the All Writs Act] was intended to alter this balance." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977). Nonetheless, in extraordinary cases, federal courts have enjoined *in personam* state proceedings on the necessary in aid of jurisdiction basis. *See Winkler*, 101 F.3d

7

1196 ("There are however, exceptions to this rule, most notably school desegregation cases, where conflicting orders from different courts would only serve to make ongoing federal oversight unmanageable").

In the context of consolidated multi-district litigation, the distinction drawn by the Supreme Court between a *in rem* and *in personam* proceeding for purposes of applying the necessary in aid of jurisdiction exception is not so delineated. *See* Wes, 37 Loy. L.A. L. Rev. at 1627-29. A number of Circuits have permitted a MDL court, in certain circumstances, to enjoin a concurrent state court *in personam* proceeding, *see e.g In re Diet Drugs*, 282 F.3d 220 (3d Cir. 2002); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998); *Winkler*, 101 F.2d 1196 (7th Cir. 1996); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877 (11th Cir. 1998); *In re Baldwin*, 770 F.2d 328 (2d Cir. 1985); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332 (5th Cir. 1981), while others have adhered to the traditional rule against enjoining concurrent state *in personam* proceedings. *See e.g. In re Life Investors Ins. Co.,* 589 F.3d 319 (6th Cir. 2009); *Negrete v. Allianz Life Ins. Co.,* 523 F.3d 1091 (9th Cir. 2008); *In re General Motors Corp.*, 134 F.3d 133 (3d Cir. 1998); *Standard Microsystems Corp. v. Texas Instruments, Inc*., 916 F.2d 58 (1st Cir. 1990). Notably, legal commentators have urged a broader application of the necessary in aid of jurisdiction exception for non-*in rem* cases, particularly in complex litigation. *See* Wright & Miller, 17A Fed. Prac. & Proc. Juris. § 4225 (3d ed. 2010 Supp.).

Two primary justifications have been put forth for a MDL transferee court's authority to enjoin an *in personam* state court proceeding on the in aid of jurisdiction exception basis. The first of which is that complex litigation cases are sufficiently similar to *in rem* proceedings so as to permit injunctions on cases actually *in personam* in nature. *See In re Diet Drugs*, 282 F.3d at 235 n. 12;

*Battle,* 877 F.2d at 881; *In re Baldwin*, 770 F.2d at 337. The theory behind the *in rem* analogy is that when complex litigation has reached the point of sufficient advancement, and there has been substantial investment of time and resources, in essence, a *res* is created. *See id.* The second justification, which is related to the first, is that the necessary in aid of jurisdiction exception should be applied to protect the federal complex litigation settlement process. *See* Wes, 37 Loy.L.A. L.Rev. at 1632. This justification is rooted in the concepts of both judicial efficiency and preventing interference with a federal court's resolution of a case. *See id.*; *In re Diet Drugs*, 282 F.3d at 235 n. 12; *Winkler*, 101 F.3d at 1202(quoting Martin H. Redish, The Anti-Injunction Statute Reconsidered, 44 U.Chi.L.Rev. 717, 754 (1977)).

In practice, the Circuit Courts have been most willing to uphold an injunction pursuant to the in aid of jurisdiction exception in the MDL or complex litigation context when settlement is complete or imminent in the federal court, and often after preliminary or final certification of a class. *See In re Diet Drugs*, 282 F.3d at 236-37 (holding injunction appropriate in "the final stages of this complex litigation," that is, after conditional class certification and preliminary settlement negotiated and approved by the federal court)(3d Cir. 2002); *Battle*, 877 F.2d at 880-82 (upholding injunction after federal court judgment on settlement agreement); *In re Baldwin*, 770 F.2d at 337-38 (holding injunction appropriate where 18 out of 26 class actions had settled and the remaining class were continuing settlement negotiations); *Carlough*, 10 F.3d at 203-04 ("Here the prospect of settlement was indeed imminent"); *In re Corrugated Container Antitrust Litig.*, 659 F.2d at 1333 (upholding injunction against pursuing suit in state court after class certified and two settlements approved by the court); *see also* Wes, 37 Loy.L.A. L.Rev. at 1632; Wright & Miller, 17A Fed. Prac. & Proc. Juris. § 4225. Under the justifications discussed above this makes sense; at the point when

9

settlement is imminent, the MDL court and parties presumably have expended substantial time and resources, and the final resolution of the case is at stake. Likewise, where the MDL or complex litigation is in the early stages of litigation, or before a settlement has been negotiated, the Circuits are less likely to enjoin an *in personam* concurrent state court proceeding. *See In re Life Investors Ins. Co.*, 589 F.3d at 330-32 (denying injunction on basis of in aid of jurisdiction since no class had been certified and federal plaintiff opted out of state class action); *Negrete,* 523 F.3d at 1102-03 (holding injunction not appropriate under Anti-Injunction Act since not an MDL case, discovery not complete, and no settlement progress had been made); *In re General Motors Corp.*, 134 F.3d at 145-56 (holding injunction on state court proceeding barred since the federal court's class certification was reversed and not even the prospect of settlement was imminent); *Standard Microsystems Corp*, 916 F.2d 58 (holding injunction barred by Anti-Injunction Act shortly after the state and federal actions were filed). The Supreme Court has not yet ruled on whether the use of the in aid of jurisdiction exception in MDL and complex litigation is appropriate for in personam proceedings.

In the Fifth Circuit, the in the aid of jurisdiction exception to the Anti-Injunction Act in the context of MDL or complex litigation receives similar treatment as that of the other Circuits cited above. This exception was first addressed by the Fifth Circuit in *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332 (5th Cir. 1981). In *In re Corrugated Container*, the Fifth Circuit upheld the MDL transferee court's injunction preventing MDL class plaintiffs from pursuing a similar lawsuit in South Carolina state court and any other court on the basis that these state court suits would challenge the MDL court's jurisdiction. *Id.* The Court recognized that the MDL transferee court had before it a "complicated antitrust action [which] required a great deal of the

10

district court's time and necessitates its ability to maintain a flexible approach in resolving the various claims of the many parties." *Id*. at 1334-35.  Notably, the court did not issue the injunction until after it "approved the settlements and final judgments were predictable if not assured." *Id*. at 1335.

Thereafter, in *Royal Insurance Co. v. Quinn-L Capital Corp*., 960 F.2d 1286 (5th Cir. 1992), the Fifth Circuit reached an entirely different conclusion, holding that an injunction on a state court proceeding was not proper under the in aid of jurisdiction exception because the claims in state court posed no threat to the district court's continuing jurisdiction to decide post-declaratory judgment claims.  The Court recognized the possibility of extending the "'in aid of jurisdiction' exception to include 'lengthy, complicated litigation' that is the 'equivalent of a res,'" but it distinguished the facts before it from such type of case.  *Id*. at 1299.

More recently, in *Newby v. Enron Corp*., 338 F.3d 467 (5th Cir. 2003), the Fifth Circuit upheld an MDL transferee court's injunction requiring the withdrawal of motions from state court which sought temporary injunctions to freeze defendants' assets.  The Court reasoned the injunction was proper given the "requests for temporary injunctions in the state court...are an attempt to taunt the parties and the court and to undermine the district court's ability to control the consolidated litigation."  *Id*. at 475.  The Court approved of the narrow tailoring of the injunction, which directly addressed the treatment to the district court and did not bar the state proceeding in its entirety.  *Id.* at 476.

With the foregoing case law as guidance, the Court now turns to the present matter.  Here, the Preliminary Approval Order contains the following provision:  "Prosecution of the Related Actions (including, but not limited to, those identified in Exhibit 1.25 to the InEx Settlement) against

11

InEx, the Insurers and the other Settling Defendants shall be stayed pending the settlement proceedings and further Orders of the Court." (R. Doc. 8818). Southern's case in CDC is listed in Exhibit 1.25 to the InEx Settlement Agreement, and is therefore currently stayed under the Preliminary Approval Order.

Guided by the foregoing jurisprudence the Court upholds the stay in the Preliminary Approval Order pursuant to its authority under the All Writs Act and the Anti-Injunction Act's necessary in aid of jurisdiction exception. The Court finds that a conceptional *res* has been created in this MDL litigation, as evidenced by the complexity of the proceedings and claims, the fact the litigation has been underway for almost two years, and the substantial amount of effort and expense put into the litigation by the parties and Court alike. The MDL litigation, as it more specifically pertains to the present Motion, is sufficiently progressed: the parties have engaged in extensive discovery and depositions, a motion for class certification seeking to create a class with claims against InEx was filed and set for hearing, a trial against InEx was scheduled and a case management order issued, and most importantly, the InEx Settlement Agreement is a class action settlement agreement of the InEx-related claims, the Court has preliminarily approved this Agreement, and notice is in the process of issuance. Additionally, an actual *res* has been created now by the InEx Settlement Agreement which involves the tendering of all of InEx's primary insurance coverage. Because there is a possibility that Southern's state court hearing and proceedings could affect and potentially disrupt the InEx Settlement Agreement and the *res* created thereby, these proceedings should be stayed. Notably, the stay is only temporary and contingent upon the successful final approval by the Court of the InEx Settlement Agreement; thus, in the case the Court does not give its final approval, Southern will then be free to pursue its state court case

against InEx, and if the Agreement is finally approved then presumably Southern will benefit as a class member or choose to opt-out. Indeed, stay orders on parallel state court cases are routinely included in preliminary approval orders of class settlements issued by federal district courts pursuant to their authority under the All Writs Act and Anti-Injunction Act. *See Kaufman v. Am. Exp. Travel Related Serv. Co., Inc.*, 264 F.R.D. 438, (N.D. Ill. 2009)("District courts often issue injunctions against related state proceedings when a settlement has been at least preliminarily approved."); *see also Nienaber v. Citibank (South Dakota) N.A.*, 2006 WL 2850535, at *4 (D.S.D. Sept. 26, 2006); *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, 1994 WL 114580, at *7 (N.D. Ala. Apr. 1, 1994).

The cases cited by Southern provide little in the way of support for its Motion. For example, the first case relied upon by Southern, *In re First Commodity Corp. of Boston, Customer Accounts Litigation*, 89 B.R. 283 (D. Mass. 1988), recognized "there is in this case a *res* existing as a result of a class action settlement in its advanced stages which would make it reasonable for the court to exercise its authority under the All Writs Act," and while the court declined to exercise this authority, it contemplated the possibility of an All Writs Act stay at a later date. *Id*. at 290. Additionally, the other case cited by Southern, *Retirement Systems of Ala. v. JP Morgan Chase & Co.*, 386 F.3d 419 (2d Cir. 2004), is entirely factually distinguishable from the present matter in that it did not involve a class settlement.

### C.   Injunction Requirements

Southern also contends that the stay on related actions in the Preliminary Approval Order is deficient because it fails to satisfy the requirements for a preliminary injunction under the relevant jurisprudence and Rule 65. The Court will address each set of requirements in turn.

The four traditional, jurisprudential requirements for a preliminary injunction in the Fifth Circuit are: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunctions is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). However, the weight of Circuit case law holds that an injunction pursuant to the All Writs Act need not satisfy the traditional requirements for injunctive relief. *See Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1100 (11th Cir. 2004)("The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns."); *accord Trull v. Dayco Prods., LLC*, 178 Fed. App'x 247, **3 (4th Cir. Apr. 28, 2006); *In re Baldwin-United Corp.*, 770 F.2d 328, (2d Cir. 1985). Although the Fifth Circuit has not expressly adopted this viewpoint it has implied insomuch. *See e.g. In re Macon Uplands Venture*, 624 F.2d 26, 28 (5th Cir. 1980)(affirming grant of injunction under the All Writs Act without regard to the traditional injunction factors); *Teas v. Twentieth Century-Fox Film, Corp.*, 413 F.2d 1263, 1266-67 (5th Cir. 1969)(same); *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)(omitting traditional injunction criteria from the requirements for an injunction under the All Writs Act); *compare Florida Med. Ass'n v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199, 202-03 (5th Cir. 1979)(requiring satisfaction of traditional injunction requirements when injunction is a true Rule 65 injunction as opposed to an injunction pursuant to the All Writs Act); *accord Klay*, 376 F.3d at 1102 n.13; *Baldwin-United*, 770 F.2d at 339. Without further express guidance from the Fifth Circuit, this Court looks to the other Circuits and the implied dictate from

14

the Fifth Circuit to conclude that the traditional preliminary injunction requirements do not need to be satisfied, when, as has occurred in the present case, an injunction on state court proceedings is authorized by the Court's jurisdiction under the All Writs Act.

Nonetheless, the Court finds that the statutory requirements of Rule 65 are to be satisfied for an injunction to issue under the All Writs Act, *see* Fed. R. Civ. P. 1; *Liberty Mut. Ins. Co. v. Gunderson*, 205 Fed.App'x 170, 178 (5th Cir. 2008)(requiring satisfaction of Rule 65(d) specificity dictate for an injunction pursuant to the All Writs Act); *Williams v. McKeithen*, 939 F.2d 1100, (5th Cir. 1991)(requiring satisfaction of Rule 65(a) notice for an injunction pursuant to the All Writs Act), and concludes that these requirements have been satisfied by the Preliminary Approval Order. Rule 65(d) provides, "[e]very order granting an injunction...must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail-and not by referring to the complaint or other document-the act or acts restrained or required."  Fed. R. Civ. P. 65(d). "Although the requirements of Rule 65(d) are mandatory, elaborate detail is unnecessary; [the Fifth Circuit has] explained that 'an injunction must simply be framed so that those enjoined will know what conduct the court has prohibited.'"  *Islander E. Rental Program v. Barfield*, 145 F.3d 359, *4 (5th Cir. 1998).  The Preliminary Approval Order complies with the Rule 65(d) requirements because it states the reason for the stay as in furtherance of the preliminary approval of the InEx Class Settlement, and the terms of the stay are specific and contain sufficiently reasonable detail, even a list of "Related Actions" to be stayed is included, as well as definitions of the parties involved.

**IV.   CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Southern's Motion for Partial New Trial

15

Regarding Stay Issued in the Preliminary Approval Order, or, in the Alternative, Motion to Alter or Amend the Order (R. Doc. 8848) is DENIED.

New Orleans, Louisiana, this 9th day of June, 2011.

                                                     U.S. District Judge