## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL          MDL No. 02047
        PRODUCTS LIABILITY LITIGATION          SECTION L

THIS DOCUMENT RELATES TO:          JUDGE FALLON
                                        MAG. JUDGE WILKINSON

DAVID GROSS, CHERYL GROSS and
LOUIS VELEZ, *et al*. v. KNAUF GIPS KG, *et al*.,
Case No. 2:09-cv-06690-EEF-JCW
_____/

## DEFENDANT WOODLAND ENTERPRISES, INC., CROSS CLAIM AND THIRD PARTY CLAIM[1]

COMES NOW Defendant/Cross-Claimant and Third-Party-Plaintiff, Woodland Enterprises, Inc., ("**Woodland**"), by and through its undersigned counsel, and alleges for its Cross-Claim against Defendants/Cross-Defendants Knauf Gips KG ("**Knauf Gips**"), Knauf Plasterboard (Tianjin) Co. Ltd. ("**Knauf Tianjin**"), Knauf Plasterboard (Wuhu) Co. Ltd. ("**Knauf Wuhu**"), Knauf Plasterboard (Dongguan) Co. Ltd., ("**Knauf Dongguan**"), Knauf Insulation GmbH a/k/a Knauf Insulation USA ("**Knauf USA**"), Knauf Gypsum Indonesia ("**Knauf Indonesia**"), Guangdong Knauf New Building Products Co., Ltd. ("**Knauf Guangdong**"), Knauf Amf GmbH & Co. KG ("**Knauf Amf GmbH**"), and Knauf Do Brasil Ltd. ("**Knauf Brasil**") (collectively, the "**Knauf Cross-Claim Defendants**"), Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("**Taishan Gypsum**"), Taian Taishan Plasterboard

---

[1]    Plaintiffs commenced this action by filing an Omnibus Class Action Complaint in this cause, which was subsequently amended (the "Amended Complaint") [D.E.366] and also expanded by way of intervention, when intervening plaintiffs, Mary Ann Benes, *et. al*., filed their Omnibus Class Action Complaint in intervention (III) (the "Complaint in Intervention") [D.E. 1777 & 1777-1] (after all modifications, referred to herein as the "Complaint"). In response, Woodland has moved to dismiss the Complaint. These Cross-Claims are therefore being brought to the extent all claims against Woodland are not dismissed in their entirety with prejudice. In the event all of Plaintiffs' claims against Woodland are not dismissed with prejudice, Woodland also expressly reserves the right to raise any and all available defenses and to respond to the Complaint accordingly.

Co., Ltd. ("**Taian Taishan**"), La Suprema Trading, Inc. ("**La Suprema Trading**" or "**LS Trading**"), and La Suprema Enterprise, Inc. ("**La Suprema Enterprise**" or "**LS Enterprise**"), and alleges for it Third-Party Claims against **Banner Supply Company Port St. Lucie, LLC** ("**Banner St. Lucie**") and **Triple** "**E**" **Corporation** ("**Triple E**"), as follows:

**CROSS-CLAIMS AGAINST THE KNAUF CROSS-CLAIM DEFENDANTS,
TAISHAN GYPSUM, TAIAN TAISHAN, LA SUPREMA TRADING,
<u>LA SUPREMA ENTERPRISE, BANNER CO. AND BANNER FORT MYERS</u>**

<u>**The Parties, Jurisdiction and Venue**</u>

1.  This is an action for damages within the monetary jurisdiction of this Court.

2.  The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Woodland.

3.  Woodland was and is a Florida corporation doing business in Palm Beach County, Florida, where this cause of action arose.  At all material times, Woodland was a builder of residential homes in Palm Beach County.

4.  Woodland has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Woodland in the construction of their homes was defective and caused damages to Plaintiffs.

5.  Woodland denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.  The Knauf Cross-Claim Defendants, Taishan Gypsum**,** Taian Taishan, LS Trading, LS Enterprise, Banner Co. and Banner Fort Myers (collectively, the "**Cross-Claim Defendants**") have also been named as defendants in the above styled action.  Woodland adopts and incorporates, as if fully set forth herein, paragraphs 15 – 22, 37, 48, 92 – 94 and 134 – 143 of the Amended Complaint and paragraphs 1076 – 1077, 1445, and 1449 of the Complaint in

2

Intervention[2] identifying each of the Cross-Claim Defendants and describing the nature of their business activities.

7.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367. The amounts in controversy exceed $75,000, exclusive of interest and costs.

8.      Moreover, this Cross-Claim arises from the same transactions or occurrences as Plaintiffs' action. Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and over the instant Cross-Claim Defendants.

## General Allegations

9.      As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Woodland is liable for damages to Plaintiffs.[3]

10.     Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, appliances and Plaintiffs' personal property (the "**Other Property**").

11.     Plaintiffs further allege that the drywall contained in their Homes was manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of the Cross-Claim Defendants.

---

[2]      *See* note 1, *infra*.

[3]      The named class Plaintiffs and other members of the putative class have asserted claims against Woodland in this Action, as well as other actions in the state and federal courts. The damages sought by Woodland in this Cross-Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

{M3041589;4}

12.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.     In connection with the construction of certain homes in Palm Beach County, Woodland purchased drywall that was installed in the Homes, which was purchased from and supplied by a Triple E, a drywall installer.

14.     Upon information and belief, Triple E procured drywall that was installed in the Homes from a drywall supplier, Banner Supply Company Port St. Lucie, LLC ("Banner St. Lucie").

15.     At all material times, Banner St. Lucie knew that the drywall purchased for the Homes was going to be used in construction of residential homes.  Banner St. Lucie knew that Woodland was a foreseeable user of the drywall and that Woodland required and expected the drywall to be fit for the ordinary purpose for which it was intended.

16.     Upon information and belief, Banner St. Lucie procured drywall that was installed in the Homes from an import-export specialist, LS Trading and/or LS Enterprise (together, "La Suprema").  At all material times, La Suprema knew or should have known that such drywall was going to be used in construction of residential homes.

17.     Upon information and belief, Banner St. Lucie also procured drywall that was installed in the Homes from the Knauf Cross-Claim Defendants, Taishan Gypsum and/or Taian Taishan.

18.     Upon information and belief, at all material times, the Knauf Cross-Claim Defendants, Taishan Gypsum and/or Taian Taishan knew or should have known that such drywall was going to be used in the construction of residential homes

4

19.     Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips, Knauf Tianjin, and La Suprema knew that customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by Knauf Tianjin emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

20.     Knauf Tianjin consulted with Knauf Gips about the drywall complaints.

21.     Hans-Ulrich Hummel, head of research and development for Knauf Gips in Germany was aware of the "big problems" with Knauf boards from China, and investigated complaints of noxious odors being emitted by the drywall.

22.     Upon information and belief, Knauf Tianjin and/or Knauf Gips conducted their own tests of the drywall and advised their customer that the drywall was "smelly."

23.     Upon information and belief, Knauf Tianjin and Knauf Gips did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

24.     Upon information and belief, Knauf Gips and Knauf Tianjin were concerned about the potential fallout if the problems with the drywall product became widely known. In a concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Knauf Tianjin entered into a confidential settlement agreement with one of its customers in January of 2007 (the "**Secret Agreement**").

25.     The Secret Agreement stipulated that Knauf Tianjin would take back all of this one customer's unsold drywall, pay for storing it, and replace the customer's inventory of Chinese drywall with thousands of pieces of drywall made by U.S. manufacturers.  In return, the

5

customer promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

26.     While Knauf Tianjin recalled the drywall product for this one customer, it did not recall or take back the product from its other customers, nor did it warn them of the defective nature of the drywall.

27.     Upon information and belief, Knauf Tianjin entered into the Secret Agreement to buy the silence of its customer and conceal defects in the drywall from consumers.  The Secret Agreement purposefully kept consumers, such as Woodland and other builders, contractors and installers, in the dark about the problems with the drywall.  The Secret Agreement acknowledged that if the customer broke its promise to remain silent, Knauf Tianjin could be irreparably harmed.

28.     Woodland did not know and was not made aware of the problems with the drywall alleged by Plaintiffs.  The drywall manufactured, exported, imported, distributed and/or sold by La Suprema, Taishan Gypsum, Taian Taishan, and/or the Knauf Cross-Claim Defendants for use in the construction of the Homes was not altered and/or otherwise substantively changed by Woodland.

29.     For the purpose of this Cross-Claim only, and not constituting an admission of the allegations or liability by Woodland, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

30.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, the Cross-Claim Defendants had greater knowledge, and/or stood in a better position than Woodland to know, of the drywall's applications, performance, and dangers.

31.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Cross-Claim Defendants' acts and omissions in manufacturing, exporting, importing, distributing, and/or selling the defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages to Plaintiffs.

32.     Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the drywall product purchased by Woodland through its installer for installation in the Homes.

33.     Moreover, Woodland did not know and was never informed by any of the Cross-Claim Defendants that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as alleged by Plaintiffs.

34.     Consequently, the Cross-Claim Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Woodland in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

{M3041589;4}

35.     Additionally, the Cross-Claim Defendants' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

36.     All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

### COUNT 1 – VICARIOUS LIABILITY
### (Against Knauf Gips)

37.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

38.     This is an action for vicarious liability against Knauf Gips for the negligence and other wrongful acts of its actual and/or apparent agents, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil.

39.     Among other things, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil are involved in the manufacturing and sale of drywall.  Upon information and belief, they are actual agents and/or apparent agents of Knauf Gips.

40.     Upon information and belief, at all material times, Knauf Gips was a family-owned German company extensively involved in the plasterboard market in Germany, the United Kingdom, France, China, and the United States, among others.  Indeed, the Court of European Justice of the European Union in an action between Knauf Gips and the European Commission has found that Knauf Gips and other subsidiaries dealing in gypsum products owned by the Knauf family (the "Knauf Group") constitute one "economic unit" in the area of competition law, and that Knauf Gips should be responsible for all activities of the Knauf Group.

8

41.     Upon information and belief, at all material times, Knauf Gips had an apparent or actual partnership with, or an ownership interest in, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil.

42.     Upon information and belief, Knauf Gips supervised, monitored, and/or otherwise exercised control and/or had a right to exercise control over the operations of Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil, and their agents, apparent agents, and employees, including the manufacturing, distribution, marketing, and/or sale of their drywall products. Moreover, upon information and belief, Knauf Gips is responsible for establishing, implementing, supervising and maintaining the quality control mechanisms utilized by Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil.

43.     Upon information and belief, at all material times, Knauf Gips was closely involved in the management of Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil, and their agents, apparent agents, and employees – overseeing quality control, finding raw materials and dealing with rising concerns over defective drywall.

44.     By way of its apparent or actual partnership and/or exercise of control over the conduct and operations of Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil, Knauf Gips acknowledged that Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil would act on its behalf as its actual and/or

9

apparent agent(s).

45.     Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil accepted the undertaking to act on Knauf Gips' behalf.

46.     As such, Knauf Gips is vicariously liable for all of the damages caused by the negligent and/or other wrongful conduct of its actual and/or apparent agents, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, Knauf USA, Knauf Indonesia, Knauf Guangdong, Knauf Amf GmbH, and Knauf Brasil, as further alleged herein.

47.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's, Knauf Wuhu's, Knauf Dongguan's, Knauf USA's, Knauf Indonesia's, Knauf Guangdong's, Knauf Amf GmbH's, and Knauf Brasil's wrongful conduct directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips', Knauf Tianjin's, Knauf Wuhu's, Knauf Dongguan's, Knauf USA's, Knauf Indonesia's, Knauf Guangdong's, Knauf Amf GmbH's, and Knauf Brasil's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against

Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 2 – COMMON LAW INDEMNITY</u>
**(Against Knauf Tianjin and Knauf Gips)**

48.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

49.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

50.     Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

51.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

52.     Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

53.     Woodland is entirely without fault for the injuries alleged by Plaintiffs.

54.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Tianjin and/or Knauf Gips.

55.     A special relationship existed between Knauf Tianjin and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary,

11

passive, solely vicarious, constructive, derivative or technical to Knauf Tianjin and/or Knauf Gips. To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips was defective, Knauf Tianjin and Knauf Gips are wholly to blame for Plaintiffs' injuries.

56.   As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Tianjin and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

57.   If Woodland is found to be liable to Plaintiffs, Knauf Tianjin and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

{M3041589;4}

### COUNT 3 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against Knauf Tianjin and Knauf Gips)**

58.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

59.     This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

60.     Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall  installed in the Homes.

61.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

62.     Plaintiffs, in the Complaint, allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

63.     Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Knauf Tianjin and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

64.     Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

65.     To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf Tianjin and/or Knauf Gips for its/their pro rata share of the liability.

66.     Knauf Tianjin and/or Knauf Gips should be required to repay Woodland for any

loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 4 – EQUITABLE SUBROGATION
### (Against Knauf Tianjin and Knauf Gips)

67.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

68.     This is an action, stated in the alternative, for equitable subrogation.

69.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

70.     Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

71.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

72.     Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the

14

drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

73. Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

74. To the extent that Woodland is required to pay damages for any fault of Knauf Tianjin and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf Tianjin and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

75. Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 5 – NEGLIGENCE
### (Against Knauf Tianjin and Knauf Gips)

76. Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

77. Plaintiffs in the Complaint allege various claims against Woodland for damages

grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

78.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

79.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

80.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Tianjin and/or Knauf Gips.

81.    Knauf Tianjin and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Tianjin and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in

16

residential construction before placing drywall materials into the stream of commerce.

82.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

83.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or and ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

84.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Tianjin's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's

17

injuries, losses, and damages.

85.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages.  If Knauf Tianjin and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

86.     Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Tianjin's and/or Knauf Gips' breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against

Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 6 – NEGLIGENT FAILURE TO WARN**
**(Against Knauf Tianjin and Knauf Gips)**

87.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

88.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

89.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

90.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

91.     Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

92.     Knauf Tianjin and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Tianjin and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled,

19

packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

93.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

94.     To the extent Plaintiffs are successful in proving drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Knauf Tianjin and/or Knauf Gips failed to provide an adequate warning of such danger.

95.     Woodland did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

{M3041589;4}

96.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf Tianjin and/or Knauf Gips knew or reasonably should have known.

97.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Tianjin's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

98.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Knauf Tianjin and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Tianjin and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

99.     Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Tianjin's and/or Knauf Gips' breaches of the duty of care, which directly and

21

proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Tianjin and Knauf Gips)

100.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

101.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

102.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

103.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's

{M3041589;4}

conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

104.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

105.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Tianjin's and/or Knauf Gips' control and/or was sold to Woodland, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

106.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged in the Complaint, Knauf Tianjin and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Tianjin and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

107.    To the extent Plaintiffs are successful in proving that the drywall in the

Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

108.   Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf Tianjin and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

109.   A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

110.   At all material times, Knauf Tianjin and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf Tianjin's and/or Knauf Gips' drywall product in residential construction.

111.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in Knauf Tianjin's and/or Knauf Gips' position would have provided a post-sale warning.

112.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Tianjin's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this

24

action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

WHEREFORE, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 8 – STRICT PRODUCTS LIABILITY
### (Against Knauf Tianjin and Knauf Gips)

113.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

114.    Upon information and belief, at all material times, Knauf Tianjin and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

115.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

116.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in distributing, placing into the stream of commerce and/or selling drywall.

117.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce,

{M3041589;4}

and/or sold by Knauf Tianjin and/or Knauf Gips, Knauf Tianjin and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

118.    Knauf Tianjin and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

119.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

120.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at

trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
#### (Against Knauf Tianjin and Knauf Gips)

121.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

122.    Upon information and belief, at all material times. Knauf Tianjin and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

123.    Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

124.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

125.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips, Knauf Tianjin and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

126.    Knauf Tianjin and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

127.    Plaintiffs in the Complaint allege various claims against Woodland for damages

{M3041589;4}

grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

128.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Tianjin and/or Knauf Gips was required to provide a warning. However, Knauf Tianjin and/or Knauf Gips failed to provide an adequate warning of such danger.

129.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

130.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Tianjin and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

131.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately

28

caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 10
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf Tianjin and Knauf Gips)

132.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

133.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

134.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

135.   At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

136.    At all material times, Knauf Tianjin engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

137.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

138.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

139.    At the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Tianjin and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

140.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

141.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed,

{M3041589;4}

placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

142.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Tianjin's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

143.   To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

144.   To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more

{M3041589;4}

fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction. A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

145.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

146.   To the extent Plaintiffs are successful in proving their claims, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Tianjin's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs,

payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 11 – UNJUST ENRICHMENT
### (Against Knauf Tianjin and Knauf Gips)

147.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

148.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

149.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

150.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

151.    Knauf Tianjin and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

152.    In delivering such payment, monies and/or funds to pay for the defective drywall

33

that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf Tianjin and/or Knauf Gips, which had knowledge thereof.

153.     Knauf Tianjin and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

154.     To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

155.     The circumstances described herein under which Knauf Tianjin and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Tianjin and/or Knauf Gips to retain those funds and profits.

156.     Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and

proper.

## COUNT 12 – FRAUDULENT CONCEALMENT
### (Against Knauf Tianjin and Knauf Gips)

157.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

158.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

159.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

160.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

161.    As such, Knauf Tianjin and/or Knauf Gips had a duty to reveal any such knowledge.

162.    Upon information and belief, Knauf Tianjin and/or Knauf Gips failed to disclose and actively concealed drywall defects for the purpose of inducing consumers such as Woodland to purchase and use the drywall product and/or to prevent such consumers from demanding that

{M3041589;4}

drywall already purchased and/or installed in residential homes be replaced at Knauf Tianjin's and/or Knauf Gips' expense.

163.    Knauf Tianjin and/or Knauf Gips had superior knowledge not readily available to Woodland that the drywall was defective and/or not fit for use in the construction of a residential home, which could not have been discovered by Woodland by way of ordinary observation.

164.    Knauf Tianjin and/or Knauf Gips having superior knowledge of the defective nature of the drywall knowingly, deliberately and/or intentionally failed to disclose and actively concealed the drywall's defective nature and used artifice to sell the drywall product.

165.    Knauf Tianjin employed artifice to sell the drywall product by entering into the Secret Agreement with Banner to conceal "perceived or actual smell or health risks" related to the drywall from Woodland and other customers of Banner.

166.    Woodland purchased drywall for Woodland from Banner for the construction of the Homes. By entering into the Secret Agreement with Banner, Knauf Tianjin suppressed information that caused Woodland to remain ignorant about any perceived or actual defects and to believe that it had all available information necessary to use the drywall product sold by Banner in the construction of the Homes.

167.    Woodland relied on Knauf Tianjin and/or Knauf Gips as the manufacturer of the drywall to disclose any facts indicating the drywall was not fit for the ordinary purpose for which it was intended.  The terms of the Secret Agreement foreclosed Woodland from having an equal opportunity to become reasonably informed of the fact that such defects were associated with the drywall.

168.    By failing to disclose and actively concealing that the drywall Knauf Tianjin and/or Knauf Gips manufactured, designed, distributed, and/or sold emitted foul or noxious

36

odors and/or gases, and/or was not fit for the ordinary purpose for which it was intended, Knauf Tianjin and/or Knauf Gips conveyed the misleading impression that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of a residential home.

169.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

170.   If Woodland had known about the matters concealed by Knauf Tianjin and/or Knauf Gips, Woodland would not have purchased and used the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips for installation in residential homes and/or Woodland would have demanded replacement of the drywall at Knauf Tianjin's expense.

171.   Knauf Tianjin and/or Knauf Gips engaged in the foregoing conduct with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[4]

172.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' fraudulent concealment of the defective nature of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on

---

[4]   Woodland reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for fraudulent concealment.

behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 13
### COMMON LAW AIDING AND ABETTING FRAUDULENT CONCEALMENT
### (Against Knauf Gips)

173.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 158, 160 through 170 above as if fully set forth herein.

174.    This is an action, stated in the alternative, for common law aiding and abetting fraudulent concealment against Knauf Gips.

175.    Knauf Gips was generally and specifically aware that Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects breached a duty to foreseeable consumers, such as Woodland, to reveal such knowledge.

176.    Knauf Gips was generally and specifically aware of the nature of the harm that would be incurred by consumers such as Woodland by virtue of Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects.

177.    Knauf Gips knowingly and substantially aided, abetted, advised or encouraged

38

Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects.

178.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Gips' aiding and abetting a fraudulent concealment directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Knauf Gips' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

179.    Knauf Gips engaged in the acts described above with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[5]

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 14
### CIVIL CONSPIRACY TO FRAUDULENTLY CONCEAL A DEFECTIVE PRODUCT
### (Against Knauf Gips and Knauf Tianjin)

180.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

---

[5]    Woodland reserves its right to claim exemplary and/or punitive damages against Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for common law aiding and abetting.

181.   This is an action, stated in the alternative, for civil conspiracy to fraudulently conceal a defective product.

182.   Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

183.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin.

184.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, upon information and belief, Knauf Tianjin failed to disclose and actively concealed actual and/or potential and/or perceived drywall defects for the purpose of inducing consumers such as Woodland to continue to purchase and use the drywall product and/or to prevent such consumers from demanding that drywall already purchased and/or installed in residential homes be replaced at Knauf Tianjin's expense.

185.   Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips and Knauf Tianjin knew some of Banner's customers had complained that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin emitted a very bad sulfurous odor.

186.   Upon information and belief, Knauf Tianjin and Knauf Gips engaged in and/or agreed to a scheme to conceal defects in the drywall from consumers, such as Woodland (the "Concealment Scheme").

40

187.    Upon information and belief, Knauf Gips and/or Knauf Tianjin investigated the complaints of odors and tested the drywall.

188.    After conducting tests of the drywall, Knauf Tianjin and/or Knauf Gips advised Banner the drywall was safe and met regulatory standards.

189.    In furtherance of the Concealment Scheme, Knauf Tianjin employed artifice to sell its drywall by entering into the Secret Agreement with Banner to conceal from Woodland and other customers of Banner "perceived or actual smell or health risks" related to the drywall.

190.    By entering into the Secret Agreement with Banner, Knauf Tianjin suppressed information that caused Woodland to remain ignorant about any perceived or actual defects and to believe that it had all available information necessary to purchase and/or use the drywall product in the construction of the Homes.

191.    Woodland relied on Knauf Tianjin as the manufacturer of the drywall to disclose any facts indicating the drywall was not fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.  The terms of the Secret Agreement foreclosed Woodland from having an equal opportunity to become reasonably informed of the fact that such defects were associated with the drywall.

192.    By failing to disclose and actively concealing that the drywall emitted foul or noxious odors and/or gases, and/or was defective, Knauf Tianjin conveyed the misleading impression that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

193.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or was not safe and fit for use in the construction of residential homes.

{M3041589;4}

194.   If Woodland had known about the matters concealed by Knauf Tianjin and Knauf Gips, Woodland would not have purchased and/or used the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin for installation in residential homes and/or Woodland would have demanded replacement of the drywall at Knauf Tianjin's expense.

195.   Knauf Gips and Knauf Tianjin engaged in the Concealment Scheme with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[6]

196.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Concealment Scheme directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and

---

[6]   Woodland reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for civil conspiracy to fraudulently conceal a defective product.

proper.

**COUNT 15**
**CIVIL CONSPIRACY: WILLFUL FAILURE TO WARN**
**(Against Knauf Gips and Knauf Tianjin)**

197.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

198.    This is an action, stated in the alternative, for civil conspiracy premised on a willful failure to issue a post-sale warning.

199.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

200.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, marketed, sold, distributed, and/or supplied drywall that was installed in the Homes.

201.    Woodland was a foreseeable user of the drywall being manufactured, mined, designed, produced, made, marketed, sold, distributed and/or supplied by Knauf Tianjin.

202.    Knauf Tianjin, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.

203.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, marketed, sold, supplied, and/or delivered by Knauf Tianjin was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time

{M3041589;4}

such drywall left Knauf Tianjin's control and/or was sold to Woodland, Knauf Tianjin knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

204.    Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips and Knauf Tianjin knew that some of Banner's customers had complained that the drywall manufactured by Knauf Tianjin emitted a very bad sulfurous odor.

205.    Upon information and belief, Knauf Tianjin and Knauf Gips engaged in and/or agreed to an intentional and willful scheme not to warn consumers who had already purchased Knauf Tianjin's drywall product about actual or perceived defects in the drywall product (the "Scheme Not to Warn").

206.    Upon information and belief, Knauf Tianjin and/or Knauf Gips investigated the complaints of odors and tested the drywall.

207.    Upon information and belief, and in furtherance of the Scheme Not to Warn, Knauf Tianjin and/or Knauf Gips did not properly investigate potential dangers and/or risk of harm associated with the use of Knauf Tianjin's drywall product and thereby breached the duty owed to Woodland to properly investigate the drywall's potential dangers and risks.

208.    Upon information and belief, after Knauf Tianjin and/or Knauf Gips conducted tests of the drywall, and to further the Scheme Not to Warn, Knauf Tianjin entered into the Secret Agreement with Banner to conceal "perceived or actual smell or health risks" related to the drywall from Woodland and other customers of Banner.

209.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or was not safe and fit for use in the construction of a residential home, and therefore Knauf Tianjin was in breach of the duty to

44

issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall in residential construction.

210.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

211.    Consumers, such as Woodland, to whom a warning might have been provided could have been identified by Knauf Tianjin and could reasonably be assumed to be unaware of the risk of harm.

212.    A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

213.    At all material times, Knauf Tianjin stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf Tianjin's drywall product in residential construction.

214.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, distributor, seller and/or supplier in Knauf Tianjin's position would have provided a post-sale warning.

215.    Knauf Gips' and Knauf Tianjin's individual and collective failure to warn as set forth above was wanton, grossly negligent, reckless and demonstrated a complete disregard and reckless indifference to consumers of the drywall product, such as Woodland. Knauf Gips and Knauf Tianjin engaged in the Scheme Not to Warn with oppression, fraud or malice, and acted

45

wantonly, willfully and with reckless indifference to the rights of others.[7]

216.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Scheme Not to Warn directly and proximately caused and/or exposed Woodland to substantial liability and damages to Plaintiffs, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs. Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 16 – COMMON LAW INDEMNITY
**(Against Knauf Wuhu and Knauf Gips)**

217.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

218.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

---

[7]   Woodland reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for civil conspiracy premised on a willful failure to issue a post-sale warning.

{M3041589;4}

219.    Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

220.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

221.    Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

222.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

223.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Wuhu and/or Knauf Gips.

224.    A special relationship existed between Knauf Wuhu and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Wuhu and/or Knauf Gips. To the extent that Plaintiffs are successful in proving their claims as more fully alleged in the Complaint, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

225.    As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf

{M3041589;4}

Wuhu and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

226. If Woodland is found to be liable to Plaintiffs, Knauf Wuhu and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Woodland, including, but not limited to, Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 17 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Wuhu and Knauf Gips)

227. Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

228. This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

229. Upon information and belief, Knauf Wuhu, among other things, manufactured,

mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

230.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

231.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

232.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Knauf Wuhu and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

233.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

234.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf Wuhu and/or Knauf Gips for its/their pro rata share of the liability.

235.    Knauf Wuhu and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Knauf

Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

**COUNT 18 – EQUITABLE SUBROGATION**
**(Against Knauf Wuhu and Knauf Gips)**

236.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

237.    This is an action, stated in the alternative, for equitable subrogation.

238.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

239.    Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

240.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

241.    Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

242.    Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

243.    To the extent that Woodland is required to pay damages for any fault of Knauf

50

Wuhu and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf Wuhu and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

244.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 19 – NEGLIGENCE
### (Against Knauf Wuhu and Knauf Gips)

245.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

246.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

247.     Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

51

248.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

249.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Wuhu and/or Knauf Gips.

250.    Knauf Wuhu and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Wuhu and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

251.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

252.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

253.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Wuhu's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

254.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged by the Complaint, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling

53

defective drywall would expose Woodland to substantial liability and damages. If Knauf Wuhu and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

255.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Wuhu's and/or Knauf Gips' breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 20 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Wuhu and Knauf Gips)

256.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

54

257.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

258.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

259.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

260.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

261.    Knauf Wuhu and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Wuhu and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

262.    Without admitting any liability or damages to Plaintiffs, to the extent

Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

263.    To the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Knauf Wuhu and/or Knauf Gips failed to provide an adequate warning of such danger.

264.    Woodland did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

265.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall or its

unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf Wuhu and/or Knauf Gips knew or reasonably should have known.

266.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Wuhu's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

267.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Knauf Wuhu and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Wuhu and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

268.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Wuhu's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of

Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 21 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Wuhu and Knauf Gips)

269.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

270.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

271.   Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

272.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

273.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the

stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

274.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Wuhu's and/or Knauf Gips' control and/or was sold to Woodland, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

275.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Wuhu and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

276.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

277.     Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf Wuhu and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

278.     A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

279.     At all material times, Knauf Wuhu and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf Wuhu's and/or Knauf Gips' drywall product in residential construction.

280.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Wuhu's and/or Knauf Gips' position would have provided a post-sale warning.

281.     Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Wuhu's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill

{M3041589;4}

and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

## COUNT 22 – STRICT PRODUCTS LIABILITY
### (Against Knauf Wuhu and Knauf Gips)

282.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

283.    Upon information and belief, at all material times, Knauf Wuhu and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

284.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

285.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in distributing, placing into the stream of commerce and/or selling drywall.

286.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips, Knauf Wuhu and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

287.    Knauf Wuhu and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall

{M3041589;4}

did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

288.    Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

289.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 23 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
**(Against Knauf Wuhu and Knauf Gips)**

290.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and

39 through 47 above as if fully set forth herein.

291.   Upon information and belief, at all material times, Knauf Wuhu and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

292.   Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

293.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

294.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips, Knauf Wuhu and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

295.   Knauf Wuhu and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

296.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

297.   To the extent Plaintiffs are successful in proving that the drywall in the

63

Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Wuhu and/or Knauf Gips was required to provide a warning. However, Knauf Wuhu and/or Knauf Gips failed to provide an adequate warning of such danger.

298.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

299.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Wuhu and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

300.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as

reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf   Wuhu's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 24
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf Wuhu and Knauf Gips)

301.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

302.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

303.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

304.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

305.    At all material times, Knauf Wuhu engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

306.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the

stream of commerce and/or sold drywall that was installed in the Homes.

307.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

308.     At the time Knauf Wuhu and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Wuhu and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

309.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

310.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Wuhu and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

311.    Without admitting any liability or damages to Plaintiffs, to the extent

66

Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Wuhu's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

312.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall, was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

313.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce

67

and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

314.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

315.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Wuhu's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any

judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 25 – UNJUST ENRICHMENT
### (Against Knauf Wuhu and Knauf Gips)

316.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

317.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

318.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

319.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

320.    Knauf Wuhu and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

321.    In delivering such payment, monies and/or funds to pay for the defective drywall

that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf Wuhu and/or Knauf Gips, which had knowledge thereof.

322.   Knauf Wuhu and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

323.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

324.   The circumstances described herein under which Knauf Wuhu and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Wuhu and/or Knauf Gips to retain those funds and profits.

325.   Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and

70

proper.

## COUNT 26 – COMMON LAW INDEMNITY
### (Against Knauf Dongguan and Knauf Gips)

326.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

327.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

328.    Upon information and belief, Knauf Dongguan, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

329.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

330.    Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips.

331.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

332.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Dongguan and/or Knauf Gips.

333.    A special relationship existed between Knauf Dongguan and/or Knauf Gips and

71

Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Dongguan and/or Knauf Gips. To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

334. As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Dongguan and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

335. If Woodland is found to be liable to Plaintiffs, Knauf Dongguan and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs. Knauf Dongguan's and/or Knauf Gips' wrongful conduct also caused damages to Woodland, including, but not limited to, Woodland's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Knauf

{M3041589;4}

Dongguan and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 27 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Dongguan and Knauf Gips)

336.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

337.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

338.    Upon information and belief, Knauf Dongguan, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

339.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

340.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

341.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Knauf Dongguan and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

342.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

{M3041589;4}

343.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf Dongguan and/or Knauf Gips for its/their pro rata share of the liability.

344.    Knauf Dongguan and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Knauf Dongguan and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 28 – EQUITABLE SUBROGATION
### (Against Knauf Dongguan and Knauf Gips)

345.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

346.    This is an action, stated in the alternative, for equitable subrogation.

347.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

348.    Upon information and belief, Knauf Dongguan, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

74

349.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

350.    Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips.

351.    Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

352.    To the extent that Woodland is required to pay damages for any fault of Knauf Dongguan and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf Dongguan and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

353.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf Dongguan

and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

**COUNT 29 – NEGLIGENCE**
**(Against Knauf Dongguan and Knauf Gips)**

354.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

355.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

356.     Upon information and belief, Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

357.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

358.     Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Dongguan and/or Knauf Gips.

359.     Knauf Dongguan and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Dongguan and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the

76

stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

360.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

361.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable

77

building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

362.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Dongguan's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

363.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Knauf Dongguan and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

364.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Dongguan's and/or Knauf Gips' breaches of the duty of care owed to

{M3041589;4}

Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Dongguan's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 30 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Dongguan and Knauf Gips)

365.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

366.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

367.    Upon information and belief, Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

368.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing,

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

369.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips.

370.    Knauf Dongguan and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Dongguan and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

371.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

372.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips knew or should

80

have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Knauf Dongguan and/or Knauf Gips failed to provide an adequate warning of such danger.

373.    Woodland did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

374.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf Dongguan and/or Knauf Gips knew or reasonably should have known.

375.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Dongguan's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

376.    To the extent Plaintiffs are successful in proving that drywall was defective,

81

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Knauf Dongguan and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Dongguan and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

377.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Dongguan's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Dongguan's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 31 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Dongguan and Knauf Gips)

378.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and

39 through 47 above as if fully set forth herein.

379.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

380.   Upon information and belief, Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

381.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

382.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips.

383.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Dongguan's and/or Knauf Gips' control and/or was sold to Woodland, Knauf Dongguan and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

{M3041589;4}

384.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Knauf Dongguan and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

385.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

386.   Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf Dongguan and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

387.   A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

388.   At all material times, Knauf Dongguan and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf Dongguan's and/or Knauf Gips' drywall product in

84

residential construction.

389.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Dongguan's and/or Knauf Gips' position would have provided a post-sale warning.

390.     Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Dongguan's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Knauf Gips' and Knauf Dongguan's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 32 – STRICT PRODUCTS LIABILITY
### (Against Knauf Dongguan and Knauf Gips)

391.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

392.     Upon information and belief, at all material times. Knauf Dongguan and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing,

{M3041589;4}

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

393.    Upon information and belief, Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

394.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in distributing, placing into the stream of commerce and/or selling drywall.

395.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips, Knauf Dongguan and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

396.    Knauf Dongguan and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

397.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

398.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed,

86

produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Dongguan's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 33 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Dongguan and Knauf Gips)

399.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

400.    Upon information and belief, at all material times. Knauf Dongguan and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

401.    Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

87

402.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

403.     At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Dongguan and/or Knauf Gips, Knauf Dongguan and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

404.     Knauf Dongguan and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

405.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

406.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Dongguan and/or Knauf Gips was required to provide a warning. However, Knauf Dongguan and/or Knauf Gips failed to provide an adequate warning of such danger.

88

407. Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

408. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Dongguan and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

409. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Dongguan's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against

Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 34**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Knauf Dongguan and Knauf Gips)**

410.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

411.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

412.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

413.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

414.    At all material times, Knauf Dongguan engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

415.    Upon information and belief, Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

416.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

90

417.     At the time Knauf Dongguan and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Dongguan and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

418.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

419.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Dongguan and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Dongguan and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

420.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Dongguan's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of

91

commerce and/or selling defective drywall, and/or failing to disclose the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

421.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

422.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A

reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

423.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

424.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Dongguan's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Dongguan's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

93

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 35 – UNJUST ENRICHMENT
### (Against Knauf Dongguan and Knauf Gips)

425.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

426.    Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

427.    Upon information and belief, Knauf Dongguan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

428.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Dongguan's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

429.    Knauf Dongguan and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

430.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf Dongguan and/or Knauf Gips, which had knowledge thereof.

431.    Knauf Dongguan and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

94

432.    To the extent Plaintiffs are successful in proving drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Dongguan's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims.

433.    The circumstances described herein under which Knauf Dongguan and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Dongguan and/or Knauf Gips to retain those funds and profits.

434.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Dongguan and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 36 – COMMON LAW INDEMNITY
### (Against Knauf USA and Knauf Gips)

435.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

436.    Plaintiffs in the Complaint allege various claims against Woodland for damages

95

caused by defective drywall contained in the Homes.

437.     Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

438.     Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

439.     Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

440.     Woodland is entirely without fault for the injuries alleged by Plaintiffs.

441.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf USA and/or Knauf Gips.

442.     A special relationship existed between Knauf USA and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf USA and/or Knauf Gips. To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

443.     As a result of the claims that have been filed against Woodland, Woodland has

{M3041589;4}

incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf USA and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

444.   If Woodland is found to be liable to Plaintiffs, Knauf USA and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 37 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf USA and Knauf Gips)

445.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

446.   This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

{M3041589;4}

447.    Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

448.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

449.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

450.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Knauf USA and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

451.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

452.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf USA and/or Knauf Gips for its/their pro rata share of the liability.

453.    Knauf USA and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

**COUNT 38– EQUITABLE SUBROGATION**
**(Against Knauf USA and Knauf Gips)**

454.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

455.     This is an action, stated in the alternative, for equitable subrogation.

456.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

457.     Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

458.     Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

459.     Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

460.     Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

99

461.    To the extent that Woodland is required to pay damages for any fault of Knauf USA and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf USA and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

462.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 39 – NEGLIGENCE
### (Against Knauf USA and Knauf Gips)

463.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

464.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

465.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the

stream of commerce, and/or sold drywall that was installed in the Homes.

466.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

467.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf USA and/or Knauf Gips.

468.    Knauf USA and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf USA and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

469.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that the drywall

101

was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

470.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

471.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf USA's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

472.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing,

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Knauf USA and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

473.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf USA's and/or Knauf Gips' breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 40 – NEGLIGENT FAILURE TO WARN
### (Against Knauf USA and Knauf Gips)

103

474.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

475.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

476.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

477.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

478.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

479.    Knauf USA and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf USA and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using

{M3041589;4}

the drywall for residential construction.

480.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

481.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Knauf USA and/or Knauf Gips failed to provide an adequate warning of such danger.

482.    Woodland did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating the drywall could harm persons and/or property and had every reason to expect the product could be safely used in a residential home in the ordinary manner.

483.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they

105

knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf USA and/or Knauf Gips knew or reasonably should have known.

484. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf USA's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

485. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or reasonably should have known its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Knauf USA and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf USA and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

486. Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf USA's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this

{M3041589;4}

action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 41 – BREACH OF POST-SALE DUTY TO WARN
#### (Against Knauf USA and Knauf Gips)

487.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

488.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

489.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

490.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

491.    Woodland was a foreseeable user of the drywall manufactured, mined, designed,

produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

492.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf USA's and/or Knauf Gips' control and/or was sold to Woodland, Knauf USA and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

493.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf USA and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

494.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of

{M3041589;4}

providing a warning.

495.    Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf USA and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

496.    A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

497.    At all material times, Knauf USA and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf USA's and/or Knauf Gips' drywall product in residential construction.

498.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf USA's and/or Knauf Gips' position would have provided a post-sale warning.

499.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf USA's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused

damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

## COUNT 42 – STRICT PRODUCTS LIABILITY
### (Against Knauf USA and Knauf Gips)

500.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

501.    Upon information and belief, at all material times. Knauf USA and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

502.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

503.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in distributing, placing into the stream of commerce and/or selling drywall.

504.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips, Knauf USA and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

505.    Knauf USA and/or Knauf Gips expected the drywall to reach Woodland and/or

110

the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

506.    Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

507.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 43 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
**(Against Knauf USA and Knauf Gips)**

{M3041589;4}

508.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

509.     Upon information and belief, at all material times. Knauf USA and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

510.     Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

511.     Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

512.     At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips, Knauf USA and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

513.     Knauf USA and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

514.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

112

515.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf USA and/or Knauf Gips was required to provide a warning. However, Knauf USA and/or Knauf Gips failed to provide an adequate warning of such danger.

516.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

517.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf USA and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

518.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action

113

brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 44**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Knauf USA and Knauf Gips)**

519.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

520.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

521.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

522.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

523.    At all material times, Knauf USA engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

524.    Upon information and belief, Knauf USA manufactured, mined, designed,

114

produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

525.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

526.    At the time Knauf USA and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf USA and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

527.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

528.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf USA and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf USA and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

{M3041589;4}

529.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf USA's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

530.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall, was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

531.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling,

{M3041589;4}

packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

532.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

533.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf USA's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be

made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf USA's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 45 – UNJUST ENRICHMENT
**(Against Knauf USA and Knauf Gips)**

534.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

535.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

536.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

537.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

538.    Knauf USA and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

118

539. In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf USA and/or Knauf Gips, which had knowledge thereof.

540. Knauf USA and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

541. To the extent Plaintiffs are successful in proving drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

542. The circumstances described herein under which Knauf USA and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf USA and/or Knauf Gips to retain those funds and profits.

543. Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be

119

determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 46 – COMMON LAW INDEMNITY**
**(Against Knauf Indonesia and Knauf Gips)**

544.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

545.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

546.   Upon information and belief, Knauf Indonesia, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

547.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

548.   Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips.

549.   Woodland is entirely without fault for the injuries alleged by Plaintiffs.

550.   Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Indonesia and/or Knauf Gips.

120

551.   A special relationship existed between Knauf Indonesia and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Indonesia and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

552.   As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Indonesia and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

553.   If Woodland is found to be liable to Plaintiffs, Knauf Indonesia and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs, including, but not limited to, Woodland's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Knauf

Indonesia and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 47 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Indonesia and Knauf Gips)

554.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

555.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

556.    Upon information and belief, Knauf Indonesia, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

557.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

558.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

559.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Knauf Indonesia and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

560.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

{M3041589;4}

561.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf Indonesia and/or Knauf Gips for its/their pro rata share of the liability.

562.    Knauf Indonesia and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Knauf Indonesia and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 48 – EQUITABLE SUBROGATION
#### (Against Knauf Indonesia and Knauf Gips)

563.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

564.    This is an action, stated in the alternative, for equitable subrogation.

565.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

566.    Upon information and belief, Knauf Indonesia, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

{M3041589;4}

567.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

568.    Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips.

569.    Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

570.    To the extent that Woodland is required to pay damages for any fault of Knauf Indonesia and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf Indonesia and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

571.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf Indonesia

and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

## COUNT 49 – NEGLIGENCE
### (Against Knauf Indonesia and Knauf Gips)

572.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

573.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

574.    Upon information and belief, Knauf Indonesia manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

575.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

576.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Indonesia and/or Knauf Gips.

577.    Knauf Indonesia and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Indonesia and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of

{M3041589;4}

commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

578. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

579. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure it complied with all foreseeable applicable building and

126

industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

580.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Indonesia's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

581.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips knew or reasonably should have known its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Knauf Indonesia and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

582.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Indonesia's and/or Knauf Gips' breaches of the duty of care owed to

Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Indonesia's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 50 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Indonesia and Knauf Gips)

583.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

584.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

585.    Upon information and belief, Knauf Indonesia manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

586.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing,

128

labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

587.     Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips.

588.     Knauf Indonesia and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Indonesia and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

589.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

590.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips knew or should

{M3041589;4}

have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Knauf Indonesia and/or Knauf Gips failed to provide an adequate warning of such danger.

591.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating the drywall could harm persons and/or property and had every reason to expect the product could be safely used in a residential home in the ordinary manner.

592.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf Indonesia and/or Knauf Gips knew or reasonably should have known.

593.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Indonesia's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

594.   To the extent Plaintiffs are successful in proving that drywall was defective,

130

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Knauf Indonesia and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Indonesia and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

595.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Indonesia's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Indonesia's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 51 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Indonesia and Knauf Gips)

596.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and

{M3041589;4}

39 through 47 above as if fully set forth herein.

597.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

598.   Upon information and belief, Knauf Indonesia manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

599.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

600.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips.

601.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Indonesia's and/or Knauf Gips' control and/or was sold to Woodland, Knauf Indonesia and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

132

602.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Knauf Indonesia and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

603.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

604.   Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf Indonesia and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

605.   A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

606.   At all material times, Knauf Indonesia and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf Indonesia's and/or Knauf Gips' drywall product in

residential construction.

607.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Indonesia's and/or Knauf Gips' position would have provided a post-sale warning.

608.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Indonesia's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Knauf Gips' and Knauf Indonesia's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 52 – STRICT PRODUCTS LIABILITY
### (Against Knauf Indonesia and Knauf Gips)

609.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

610.    Upon information and belief, at all material times. Knauf Indonesia and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing,

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

611.    Upon information and belief, Knauf Indonesia manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

612.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in distributing, placing into the stream of commerce and/or selling drywall.

613.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips, Knauf Indonesia and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

614.    Knauf Indonesia and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

615.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

616.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the

stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Indonesia's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 53 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Indonesia and Knauf Gips)

617.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

618.    Upon information and belief, at all material times. Knauf Indonesia and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

619.    Knauf Indonesia manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

620.    Upon information and belief, Knauf Gips is vicariously liable for Knauf

136

Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

621.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Indonesia and/or Knauf Gips, Knauf Indonesia and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

622.    Knauf Indonesia and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

623.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

624.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Indonesia and/or Knauf Gips was required to provide a warning. However, Knauf Indonesia and/or Knauf Gips failed to provide an adequate warning of such danger.

625.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable

{M3041589;4}

risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

626. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Indonesia and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

627. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Indonesia's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{M3041589;4}

## COUNT 54
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf Indonesia and Knauf Gips)

628.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

629.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

630.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

631.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

632.    At all material times, Knauf Indonesia engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

633.    Upon information and belief, Knauf Indonesia manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

634.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

635.    At the time Knauf Indonesia and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed,

placed into the stream of commerce, and/or sold the drywall, Knauf Indonesia and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

636.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

637.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Indonesia and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Indonesia and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

638.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Indonesia's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential

construction.

639.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

640.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably

{M3041589;4}

fit for the ordinary purpose for which drywall is used.

641.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Indonesia's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

642.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Indonesia's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Indonesia's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys'

fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 55 – UNJUST ENRICHMENT
**(Against Knauf Indonesia and Knauf Gips)**

643.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

644.    Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

645.    Upon information and belief, Knauf Indonesia manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

646.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Indonesia's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

647.    Knauf Indonesia and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

648.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf Indonesia and/or Knauf Gips, which had knowledge thereof.

649.    Knauf Indonesia and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

650.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{M3041589;4}

as more fully alleged in the Complaint, Knauf Indonesia's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

651.     The circumstances described herein under which Knauf Indonesia and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Indonesia and/or Knauf Gips to retain those funds and profits.

652.     Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Indonesia and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 56 – COMMON LAW INDEMNITY
### (Against Knauf Guangdong and Knauf Gips)

653.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

654.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

655.     Upon information and belief, Knauf Guangdong, among other things,

manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

656.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

657.    Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

658.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

659.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Guangdong and/or Knauf Gips.

660.    A special relationship existed between Knauf Guangdong and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Guangdong and/or Knauf Gips.   To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

661.    As a result of the claims that have been filed against Woodland, Woodland has

{M3041589;4}

incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Guangdong and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

662.    If Woodland is found to be liable to Plaintiffs, Knauf Guangdong and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Knauf Guangdong and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 57 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Guangdong and Knauf Gips)

663.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

664.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

665.    Upon information and belief, Knauf Guangdong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

{M3041589;4}

advertised, distributed,  placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

666.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

667.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

668.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Knauf Guangdong and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

669.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

670.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf Guangdong and/or Knauf Gips for its/their pro rata share of the liability.

671.    Knauf Guangdong and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Knauf Guangdong and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 58 – EQUITABLE SUBROGATION
**(Against Knauf Guangdong and Knauf Gips)**

672.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

673.     This is an action, stated in the alternative, for equitable subrogation.

674.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

675.     Upon information and belief, Knauf Guangdong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

676.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

677.     Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

148

678.    Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

679.    To the extent that Woodland is required to pay damages for any fault of Knauf Guangdong and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf Guangdong and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

680.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf Guangdong and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 59 – NEGLIGENCE
### (Against Knauf Guangdong and Knauf Gips)

681.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

682.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{M3041589;4}

683.   Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

684.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

685.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Guangdong and/or Knauf Gips.

686.   Knauf Guangdong and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Guangdong and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

150

687.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

688.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

689.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Guangdong's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

151

690.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Knauf Guangdong and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

691.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Guangdong's and/or Knauf Gips' breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against

152

Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 60 – NEGLIGENT FAILURE TO WARN</u>
**(Against Knauf Guangdong and Knauf Gips)**

692.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

693.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

694.     Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

695.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

696.     Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

697.     Knauf Guangdong and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Guangdong and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed,

153

tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

698.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

699.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Knauf Guangdong and/or Knauf Gips failed to provide an adequate warning of such danger.

700.   Woodland did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating the drywall could harm persons and/or property and had every reason to expect the product could be safely used in a residential home in the ordinary manner.

{M3041589;4}

701.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf Guangdong and/or Knauf Gips knew or reasonably should have known.

702.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Guangdong's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

703.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Knauf Guangdong and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Guangdong and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

704.    Without admitting any liability or damages to Plaintiffs, Woodland was

damaged by Knauf Guangdong's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 61 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Guangdong and Knauf Gips)

705.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

706.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

707.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

708.    Upon information and belief, Knauf Gips is vicariously liable for Knauf

Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

709.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

710.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Guangdong's and/or Knauf Gips' control and/or was sold to Woodland, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

711.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Knauf Guangdong and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

{M3041589;4}

712.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

713.     Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf Guangdong and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

714.     A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

715.     At all material times, Knauf Guangdong and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf Guangdong's and/or Knauf Gips' drywall product in residential construction.

716.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Guangdong's and/or Knauf Gips' position would have provided a post-sale warning.

717.     Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Guangdong's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on

158

behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 62 – STRICT PRODUCTS LIABILITY
### (Against Knauf Guangdong and Knauf Gips)

718.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

719.    Upon information and belief, at all material times. Knauf Guangdong and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

720.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

721.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in distributing, placing into the stream of commerce and/or selling drywall.

722.    At the time said drywall was manufactured, mined, designed, produced, made,

{M3041589;4}

marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips, Knauf Guangdong and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

723.    Knauf Guangdong and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

724.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

725.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also

{M3041589;4}

caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 63 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Guangdong and Knauf Gips)

726.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

727.    Upon information and belief, at all material times. Knauf Guangdong and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

728.    Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

729.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

730.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips, Knauf Guangdong and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as

Woodland.

731.   Knauf Guangdong and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

732.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

733.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Guangdong and/or Knauf Gips was required to provide a warning. However, Knauf Guangdong and/or Knauf Gips failed to provide an adequate warning of such danger.

734.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

735.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Guangdong and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of

162

anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

736. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 64
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
**(Against Knauf Guangdong and Knauf Gips)**

737. Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

738. This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

163

739.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

740.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

741.    At all material times, Knauf Guangdong engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

742.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

743.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

744.    At the time Knauf Guangdong and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Guangdong and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

745.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the

Other Property in the Homes.

746.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Guangdong and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

747.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Guangdong's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

748.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce

165

and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

749.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

750.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling

{M3041589;4}

defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

751.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Guangdong's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 65 – UNJUST ENRICHMENT
### (Against Knauf Guangdong and Knauf Gips)

752.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

753.    Plaintiffs, in the Complaint, allege various claims against Woodland for damages

grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

754.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

755.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

756.    Knauf Guangdong and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

757.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf Guangdong and/or Knauf Gips, which had knowledge thereof.

758.    Knauf Guangdong and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

759.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or

the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

760.    The circumstances described herein under which Knauf Guangdong and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Guangdong and/or Knauf Gips to retain those funds and profits.

761.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 66 – COMMON LAW INDEMNITY
**(Against Knauf Amf GmbH and Knauf Gips)**

762.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

763.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

764.    Upon information and belief, Knauf Amf GmbH, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

765.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling

{M3041589;4}

drywall.

766.     Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips.

767.     Woodland is entirely without fault for the injuries alleged by Plaintiffs.

768.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Amf GmbH and/or Knauf Gips.

769.     A special relationship existed between Knauf Amf GmbH and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Amf GmbH and/or Knauf Gips.   To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

770.     As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Amf GmbH and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

771.     If Woodland is found to be liable to Plaintiffs, Knauf Amf GmbH and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees,

related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs, including, but not limited to, Woodland's loss of reputation, goodwill, and lost profits.

WHEREFORE, Woodland demands judgment for indemnity in its favor against Knauf Amf GmbH and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 67 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Amf GmbH and Knauf Gips)

772.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

773.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

774.    Upon information and belief, Knauf Amf GmbH, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

775.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling

{M3041589;4}

drywall.

776.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

777.     Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Knauf Amf GmbH and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

778.     Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

779.     To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf Amf GmbH and/or Knauf Gips for its/their pro rata share of the liability.

780.     Knauf Amf GmbH and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Knauf Amf GmbH and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 68 – EQUITABLE SUBROGATION
**(Against Knauf Amf GmbH and Knauf Gips)**

781.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

782.   This is an action, stated in the alternative, for equitable subrogation.

783.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

784.   Upon information and belief, Knauf Amf GmbH, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

785.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

786.   Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips.

787.   Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

788.   To the extent that Woodland is required to pay damages for any fault of Knauf Amf GmbH and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf Amf GmbH and/or Knauf Gips under equitable

{M3041589;4}

principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

789.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf Amf GmbH and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 69 – NEGLIGENCE
### (Against Knauf Amf GmbH and Knauf Gips)

790.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

791.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

792.    Upon information and belief, Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

793.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing,

{M3041589;4}

labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

794.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Amf GmbH and/or Knauf Gips.

795.    Knauf Amf GmbH and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Amf GmbH and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

796.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

797. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

798. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Amf GmbH's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

799. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of

{M3041589;4}

commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Knauf Amf GmbH and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

800.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Amf GmbH's and/or Knauf Gips' breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Knauf Gips' and Knauf Amf GmbH's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 70 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Amf GmbH and Knauf Gips)

801.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

177

802.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

803.    Upon information and belief, Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

804.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

805.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips.

806.    Knauf Amf GmbH and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Amf GmbH and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

807.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

808.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Knauf Amf GmbH and/or Knauf Gips failed to provide an adequate warning of such danger.

809.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

810.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers

and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf Amf GmbH and/or Knauf Gips knew or reasonably should have known.

811.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Amf GmbH's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

812.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Knauf Amf GmbH and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Amf GmbH and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

813.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Amf GmbH's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or

the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Amf GmbH's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 71 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Amf GmbH and Knauf Gips)

814.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

815.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

816.    Upon information and belief, Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

817.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

818.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the

{M3041589;4}

stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips.

819.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Amf GmbH's and/or Knauf Gips' control and/or was sold to Woodland, Knauf Amf GmbH and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

820.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Amf GmbH and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

821.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

{M3041589;4}

822. Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf Amf GmbH and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

823. A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

824. At all material times, Knauf Amf GmbH and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf Amf GmbH's and/or Knauf Gips' drywall product in residential construction.

825. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Amf GmbH's and/or Knauf Gips' position would have provided a post-sale warning.

826. Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Amf GmbH's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Amf GmbH's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation,

{M3041589;4}

goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 72 – STRICT PRODUCTS LIABILITY
**(Against Knauf Amf GmbH and Knauf Gips)**

827.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

828.    Upon information and belief, at all material times. Knauf Amf GmbH and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

829.    Upon information and belief, Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

830.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in distributing, placing into the stream of commerce and/or selling drywall.

831.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips, Knauf Amf GmbH and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

832.    Knauf Amf GmbH and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective

184

drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

833.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

834.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Amf GmbH's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 73 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
**(Against Knauf Amf GmbH and Knauf Gips)**

185

835.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

836.    Upon information and belief, at all material times. Knauf Amf GmbH and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

837.    Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

838.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

839.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Amf GmbH and/or Knauf Gips, Knauf Amf GmbH and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

840.    Knauf Amf GmbH and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

841.    Plaintiffs in the Complaint allege various claims against Woodland for damages

grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

842.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Amf GmbH and/or Knauf Gips was required to provide a warning. However, Knauf Amf GmbH and/or Knauf Gips failed to provide an adequate warning of such danger.

843.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

844.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Amf GmbH and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

845.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately

caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Amf GmbH's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 74
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
**(Against Knauf Amf GmbH and Knauf Gips)**

846.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

847.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

848.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

849.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

188

850.    At all material times, Knauf Amf GmbH engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

851.    Upon information and belief, Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

852.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

853.    At the time Knauf Amf GmbH and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Amf GmbH and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

854.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

855.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Amf GmbH and/or Knauf Gips manufactured, mined,

designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Amf GmbH and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

856.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Amf GmbH's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

857.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

{M3041589;4}

858.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

859.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

860.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Amf GmbH's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Amf GmbH's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 75 – UNJUST ENRICHMENT
### (Against Knauf Amf GmbH and Knauf Gips)

861.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

862.    Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

863.    Upon information and belief, Knauf Amf GmbH manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

864.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Amf

{M3041589;4}

GmbH's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

865.   Knauf Amf GmbH and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

866.   In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf Amf GmbH and/or Knauf Gips, which had knowledge thereof.

867.   Knauf Amf GmbH and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

868.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Amf GmbH's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

869.   The circumstances described herein under which Knauf Amf GmbH and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling

defective drywall make it inequitable for Knauf Amf GmbH and/or Knauf Gips to retain those funds and profits.

870.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Amf GmbH and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 76 – COMMON LAW INDEMNITY
### (Against Knauf Brasil and Knauf Gips)

871.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

872.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

873.    Upon information and belief, Knauf Brasil, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

874.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

875.    Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips.

876.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

877.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Brasil and/or Knauf Gips.

878.    A special relationship existed between Knauf Brasil and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Brasil and/or Knauf Gips. To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

879.    As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Brasil and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

880.    If Woodland is found to be liable to Plaintiffs, Knauf Brasil and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs, including but not limited to

195

Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Knauf Brasil and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

**COUNT 77 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31**
**(Against Knauf Brasil and Knauf Gips)**

881.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

882.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

883.    Upon information and belief, Knauf Brasil, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

884.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

885.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

886.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Knauf Brasil and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

887.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

196

888.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf Brasil and/or Knauf Gips for its/their pro rata share of the liability.

889.    Knauf Brasil and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Knauf Brasil and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 78 – EQUITABLE SUBROGATION
### (Against Knauf Brasil and Knauf Gips)

890.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

891.    This is an action, stated in the alternative, for equitable subrogation.

892.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

893.    Upon information and belief, Knauf Brasil, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

894.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's

conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

895.   Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips.

896.   Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

897.   To the extent that Woodland is required to pay damages for any fault of Knauf Brasil and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf Brasil and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

898.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf Brasil and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

## COUNT 79 – NEGLIGENCE
### (Against Knauf Brasil and Knauf Gips)

899.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

900.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

901.   Upon information and belief, Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

902.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

903.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Brasil and/or Knauf Gips.

904.   Knauf Brasil and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Brasil and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market,

label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

905.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

906.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing,

{M3041589;4}

producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

907.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Brasil's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

908.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Knauf Brasil and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

909.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Brasil's and/or Knauf Gips' breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against

{M3041589;4}

Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Brasil's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 80 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Brasil and Knauf Gips)

910.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

911.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

912.   Upon information and belief, Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

913.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

914.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the

stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips.

915.   Knauf Brasil and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Brasil and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

916.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

917.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Knauf Brasil and/or Knauf Gips failed to provide an adequate warning of such danger.

918.   Woodland did not know, had no reason to believe, and was never informed

{M3041589;4}

that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

919.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf Brasil and/or Knauf Gips knew or reasonably should have known.

920.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Brasil's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

921.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Knauf Brasil and/or Knauf Gips had

exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Brasil and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

922.     Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Brasil's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Brasil's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 81 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Brasil and Knauf Gips)

923.     Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

924.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the

{M3041589;4}

Other Property in the Homes.

925.    Upon information and belief, Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

926.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

927.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips.

928.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Brasil's and/or Knauf Gips' control and/or was sold to Woodland, Knauf Brasil and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

929.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm

associated with the use of its drywall product in residential construction.  Knauf Brasil and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

930.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

931.    Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf Brasil and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

932.    A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

933.    At all material times, Knauf Brasil and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf Brasil's and/or Knauf Gips' drywall product in residential construction.

934.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Brasil's and/or Knauf Gips' position would have provided a post-sale warning.

{M3041589;4}

935.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Brasil's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Brasil's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 82 – STRICT PRODUCTS LIABILITY
### (Against Knauf Brasil and Knauf Gips)

936.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

937.    Upon information and belief, at all material times. Knauf Brasil and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

938.    Upon information and belief, Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

{M3041589;4}

939.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in distributing, placing into the stream of commerce and/or selling drywall.

940.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips, Knauf Brasil and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

941.    Knauf Brasil and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

942.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

943.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these

{M3041589;4}

claims.  Knauf Gips' and Knauf Brasil's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 83 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Brasil and Knauf Gips)

944.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

945.    Upon information and belief, at all material times. Knauf Brasil and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

946.    Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

947.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

948.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Brasil and/or Knauf Gips, Knauf Brasil and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

949.    Knauf Brasil and/or Knauf Gips expected the drywall to reach Woodland and/or

{M3041589;4}

the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

950.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

951.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Brasil and/or Knauf Gips was required to provide a warning. However, Knauf Brasil and/or Knauf Gips failed to provide an adequate warning of such danger.

952.     Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

953.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Brasil and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

954.     To the extent Plaintiffs are successful in proving that the drywall in the

211

Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Brasil's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 84**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Knauf Brasil and Knauf Gips)**

955.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

956.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

957.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

958. At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

959. At all material times, Knauf Brasil engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

960. Upon information and belief, Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

961. Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

962. At the time Knauf Brasil and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Brasil and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

963. Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

964. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{M3041589;4}

the Complaint, at the time Knauf Brasil and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Brasil and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

965. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Brasil's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

966. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 18 - 28 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

967.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

968.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

969.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{M3041589;4}

as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Brasil's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Brasil's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 85 – UNJUST ENRICHMENT
### (Against Knauf Brasil and Knauf Gips)

970.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 47 above as if fully set forth herein.

971.    Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

972.    Upon information and belief, Knauf Brasil manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

973.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Brasil's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling,

packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

974.    Knauf Brasil and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

975.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf Brasil and/or Knauf Gips, which had knowledge thereof.

976.    Knauf Brasil and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

977.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Brasil's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

978.    The circumstances described herein under which Knauf Brasil and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Brasil and/or Knauf Gips to retain those funds and profits.

217

979.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Brasil and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 86 – COMMON LAW INDEMNITY
### (Against Taishan Gypsum)

980.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

981.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

982.    Upon information and belief, Taishan Gypsum, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

983.    Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Taishan Gypsum.

984.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

985.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Taishan Gypsum.

986.    A special relationship existed between Taishan Gypsum and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Taishan Gypsum.  To the extent that Plaintiffs are

218

successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum was defective and wholly to blame for Plaintiffs' injuries.

987.    As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Taishan Gypsum to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

988.    If Woodland is found to be liable to Plaintiffs, Taishan Gypsum is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Taishan Gypsum for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 87 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against Taishan Gypsum)**

{M3041589;4}

989.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

990.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

991.    Upon information and belief, Taishan Gypsum, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

992.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

993.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Taishan Gypsum would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

994.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

995.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Taishan Gypsum for its pro rata share of the liability.

996.    Taishan Gypsum should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in

{M3041589;4}

this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Taishan Gypsum for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 88 – EQUITABLE SUBROGATION
### (Against Taishan Gypsum)

997.    Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

998.    This is an action, stated in the alternative, for equitable subrogation.

999.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

1000.  Upon information and belief, Taishan Gypsum, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1001.  Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum.

1002.  Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

1003.  To the extent that Woodland is required to pay damages for any fault of Taishan Gypsum to protect its own interests, and not as a volunteer, Woodland would be entitled to

221

reimbursement from Taishan Gypsum under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

1004.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Taishan Gypsum for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

**COUNT 89 – NEGLIGENCE**
**(Against Taishan Gypsum)**

1005.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1006.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1007.   Upon information and belief, Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1008.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Taishan Gypsum.

1009.   Taishan Gypsum had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.   As such, Taishan Gypsum owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

1010.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1011.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

223

the Complaint, Taishan Gypsum breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

1012.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Taishan Gypsum's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

1013.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum a knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Taishan Gypsum had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was

defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

1014.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Taishan Gypsum's breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Taishan Gypsum's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 90 – NEGLIGENT FAILURE TO WARN
### (Against Taishan Gypsum)

1015.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1016.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

225

1017.   Upon information and belief, Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  the drywall that was installed in the Homes.

1018.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum.

1019.   Taishan Gypsum had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Taishan Gypsum owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

1020.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1021.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum knew or should have known that

226

unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Taishan Gypsum failed to provide an adequate warning of such danger.

1022.  Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1023.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Taishan Gypsum knew or reasonably should have known.

1024.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Taishan Gypsum's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

1025.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, Taishan Gypsum knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Taishan Gypsum had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Taishan Gypsum would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

1026.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Taishan Gypsum's breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Taishan Gypsum's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 91 – BREACH OF POST-SALE DUTY TO WARN
### (Against Taishan Gypsum)

1027.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1028.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

{M3041589;4}

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1029.   Upon information and belief, Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1030.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum.

1031.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Taishan Gypsum's control and/or was sold to Woodland, Taishan Gypsum knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

1032.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Taishan Gypsum breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with

{M3041589;4}

the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

1033.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

1034.  Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Taishan Gypsum and could reasonably be assumed to be unaware of the risk of harm.

1035.  A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

1036.  At all material times, Taishan Gypsum stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Taishan Gypsum's drywall product in residential construction.

1037.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Taishan Gypsum's position would have provided a post-sale warning.

1038.  Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Taishan Gypsum's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not

230

limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Taishan Gypsum's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 92 – STRICT PRODUCTS LIABILITY
### (Against Taishan Gypsum)

1039.  Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1040.  Upon information and belief, at all material times. Taishan Gypsum was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

1041.  Upon information and belief, Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1042.  At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum, Taishan Gypsum intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

231

1043.  Taishan Gypsum expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

1044.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1045.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Taishan Gypsum's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 93 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Taishan Gypsum)

{M3041589;4}

1046.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1047.   Upon information and belief, at all material times. Taishan Gypsum was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

1048.   Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1049.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taishan Gypsum, Taishan Gypsum a intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

1050.   Taishan Gypsum expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

1051.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1052.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential

233

construction involved a danger of which Taishan Gypsum was required to provide a warning. However, Taishan Gypsum failed to provide an adequate warning of such danger.

1053.  Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

1054.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Taishan Gypsum failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1055.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Taishan Gypsum's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

234

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 94
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Taishan Gypsum)

1056.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1057.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

1058.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

1059.   At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

1060.   At all material times, Taishan Gypsum engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

1061.   Upon information and belief, Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the drywall that was installed in the Homes.

1062.   At the time Taishan Gypsum a manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Taishan Gypsum represented that the drywall was

{M3041589;4}

fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

1063.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1064.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Taishan Gypsum knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

1065.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Taishan Gypsum's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

236

1066.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

1067.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

{M3041589;4}

1068.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

1069.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Taishan Gypsum's violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Taishan Gypsum's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

{M3041589;4}

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 95 – UNJUST ENRICHMENT
### (Against Taishan Gypsum)

1070.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1071.   Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

1072.   Upon information and belief, Taishan Gypsum manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1073.   Taishan Gypsum received money from Woodland as payment for the defective drywall installed in the Home.

1074.   In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Taishan Gypsum, which had knowledge thereof.

1075.   Taishan Gypsum voluntarily accepted and retained the benefit conferred upon it by Woodland.

1076.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taishan Gypsum's acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not

limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

1077.   The circumstances described herein under which Taishan Gypsum profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Taishan Gypsum to retain those funds and profits.

1078.   Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 96 – COMMON LAW INDEMNITY
### (Against Taian Taishan)

1079.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1080.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

1081.   Upon information and belief, Taian Taishan, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1082.   Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the

{M3041589;4}

drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Taian Taishan.

1083.   Woodland is entirely without fault for the injuries alleged by Plaintiffs.

1084.   Any injuries suffered by Plaintiffs were due to the acts or omissions of Taian Taishan.

1085.   A special relationship existed between Taian Taishan and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Taian Taishan.  To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan was defective and wholly to blame for Plaintiffs' injuries.

1086.   As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Taian Taishan to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

1087.  If Woodland is found to be liable to Plaintiffs, Taian Taishan is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the

settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Taian Taishan for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

### COUNT 97 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Taian Taishan)

1088.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1089.   This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

1090.   Upon information and belief, Taian Taishan, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1091.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

1092.   Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Taian Taishan would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

1093.   Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

{M3041589;4}

1094.   To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Taian Taishan for its pro rata share of the liability.

1095.   Taian Taishan should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Taian Taishan for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 98 – EQUITABLE SUBROGATION
**(Against Taian Taishan)**

1096.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1097.   This is an action, stated in the alternative, for equitable subrogation.

1098.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

1099.   Upon information and belief, Taian Taishan, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1100.   Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the

drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan.

1101.  Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

1102.  To the extent that Woodland is required to pay damages for any fault of Taian Taishan to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Taian Taishan under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

1103.  Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Taian Taishan for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 99 – NEGLIGENCE
### (Against Taian Taishan)

1104.  Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1105.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1106. Upon information and belief, Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1107. Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Taian Taishan.

1108. Taian Taishan had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property. As such, Taian Taishan owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

1109. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

245

the Complaint, Taian Taishan knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1110. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

1111. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Taian Taishan's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

1112. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan a knew or reasonably should have known that its acts and

{M3041589;4}

omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Taian Taishan had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

1113.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Taian Taishan's breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Taian Taishan's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 100 – NEGLIGENT FAILURE TO WARN
**(Against Taian Taishan)**

1114.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1115.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1116.   Upon information and belief, Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  the drywall that was installed in the Homes.

1117.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan.

1118.   Taian Taishan had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Taian Taishan owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

1119.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{M3041589;4}

the Complaint, Taian Taishan knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1120.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Taian Taishan failed to provide an adequate warning of such danger.

1121.  Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1122.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Taian Taishan knew or reasonably should have known.

{M3041589;4}

1123.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Taian Taishan's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

1124.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Taian Taishan had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Taian Taishan would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

1125.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Taian Taishan's breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Taian Taishan's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 101 – BREACH OF POST-SALE DUTY TO WARN
### (Against Taian Taishan)

1126.  Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1127.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1128.  Upon information and belief, Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1129.  Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan.

1130.  To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Taian Taishan's control and/or was sold to Woodland, Taian Taishan knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

251

1131.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Taian Taishan breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

1132.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

1133.  Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Taian Taishan and could reasonably be assumed to be unaware of the risk of harm.

1134.  A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

1135.  At all material times, Taian Taishan stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Taian Taishan's drywall product in residential construction.

{M3041589;4}

1136.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Taian Taishan's position would have provided a post-sale warning.

1137.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Taian Taishan's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Taian Taishan's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 102 – STRICT PRODUCTS LIABILITY
### (Against Taian Taishan)

1138.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1139.   Upon information and belief, at all material times. Taian Taishan was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

1140.   Upon information and belief, Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1141.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan, Taian Taishan intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

1142.   Taian Taishan expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

1143.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1144.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as

254

reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Taian Taishan's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 103 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Taian Taishan)

1145.  Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1146.  Upon information and belief, at all material times. Taian Taishan was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

1147.  Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1148.  At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Taian Taishan, Taian Taishan a intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

1149.  Taian Taishan expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

{M3041589;4}

1150.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1151.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Taian Taishan was required to provide a warning. However, Taian Taishan failed to provide an adequate warning of such danger.

1152.  Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

1153.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Taian Taishan failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1154.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed

{M3041589;4}

Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Taian Taishan's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 104
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Taian Taishan)

1155.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1156.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

1157.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."   Fla. Stat. § 501.202(2).

1158.   At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

1159.  At all material times, Taian Taishan engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

1160.  Upon information and belief, Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the drywall that was installed in the Homes.

1161.  At the time Taian Taishan a manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Taian Taishan represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

1162.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1163.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Taian Taishan knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

1164.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Taian Taishan's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

1165. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

1166. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling

defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

1167. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

1168. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Taian Taishan's violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of

Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Taian Taishan's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 105 – UNJUST ENRICHMENT
### (Against Taian Taishan)

1169.  Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1170.  Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

1171.  Upon information and belief, Taian Taishan manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes.

1172.  Taian Taishan received money from Woodland as payment for the defective drywall installed in the Home.

1173.  In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Taian Taishan, which had knowledge thereof.

{M3041589;4}

1174.   Taian Taishan voluntarily accepted and retained the benefit conferred upon it by Woodland.

1175.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Taian Taishan's acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

1176.   The circumstances described herein under which Taian Taishan profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Taian Taishan to retain those funds and profits.

1177.   Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taian Taishan in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 106 – COMMON LAW INDEMNITY
### (Against La Suprema Trading Inc.)

1178.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1179.  Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

1180.  Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

1181.  Woodland is entirely without fault for the injuries alleged by Plaintiffs.

1182.  Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Trading.

1183.  A special relationship existed between LS Trading and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Trading. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Trading was defective and wholly to blame for Plaintiffs' injuries.

1184.  As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Trading to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

1185.  If Woodland is found to be liable to Plaintiffs, LS Trading is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf

of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Cross-Claim Defendant, La Suprema Trading Inc., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 107 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against La Suprema Trading, Inc.)

1186.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1187.   This is an action, stated in the alternative, against LS Trading for contribution pursuant to Section 768.31, Florida Statutes.

1188.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

1189.   Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, LS Trading would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

1190.   Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

1191.   To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against LS Trading for its pro rata share of the liability.

1192.   LS Trading should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs

{M3041589;4}

for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Cross-Claim Defendant, La Suprema Trading Inc., for its pro rata share of the liability, if any, found against Woodland in this action, along with interest and costs, and such other and further relief as this Court deems just and proper.

### COUNT 108 – EQUITABLE SUBROGATION
### (Against La Suprema Trading Inc.)

1193.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1194.   This is an action, stated in the alternative, against LS Trading for equitable subrogation.

1195.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

1196.   Woodland is not and was not in the business of manufacturing, distributing, or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

1197.   Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

1198.   To the extent that Woodland is required to pay damages for any fault of LS Trading to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from LS Trading under equitable principles for any damages which are

{M3041589;4}

attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

1199.  Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 109 – NEGLIGENCE
### (Against La Suprema Trading Inc.)

1200.  Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1201.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1202.  Upon information and belief, LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

1203.  Woodland was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

1204.  As such, LS Trading owed Woodland a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell

266

drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Woodland's customers;  and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

1205.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1206.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to Woodland by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

1207.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

1208.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Woodland to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

1209.  Without admitting any liability or damages to Plaintiffs, Woodland was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  LS Trading's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{M3041589;4}

## COUNT 110 – NEGLIGENT FAILURE TO WARN
### (Against La Suprema Trading Inc.)

1210.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1211.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1212.   Upon information and belief, LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

1213.   Woodland was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

1214.   As such, LS Trading owed Woodland a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

1215.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

269

1216.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that unless it warned foreseeable consumers such as Woodland of the risk of using the drywall it distributed, sold, and/or supplied, Woodland would suffer harm. However, LS Trading failed to provide an adequate warning of such danger.

1217.  Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in  a residential home in the ordinary manner.

1218.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to Woodland by: (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction, about which LS Trading knew or reasonably should have known.

1219.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

1220. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

1221. Without admitting any liability or damages to Plaintiffs, Woodland was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. LS Trading's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 111– BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Trading Inc.)

271

1222.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1223.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1224.   Upon information and belief, LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

1225.   Woodland was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

1226.   To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Trading was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Trading's control and/or was sold to Woodland, LS Trading knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

1227.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  LS Trading breached that duty by failing to properly

investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

1228.   To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

1229.   Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by LS Trading.

1230.   A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

1231.   At all material times, LS Trading stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of LS Trading's drywall product in residential construction.

1232.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable importer, distributor, seller and/or supplier in LS Trading's position would have provided a post-sale warning.

1233.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by LS Trading's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action

brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  LS Trading's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 112 – STRICT PRODUCTS LIABILITY
### (Against La Suprema Trading Inc.)

1234.  Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1235.  At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

1236.  Upon information and belief, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading.

1237.  At the time said drywall was placed into the stream of commerce, imported distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

1238.  LS Trading expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

1239.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1240.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Trading directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  LS Trading's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 113 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Trading Inc.)

1241.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1242.   At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

1243.   At all material times, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Trading.

1244.  At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

1245.  LS Trading expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

1246.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1247.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which LS Trading was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

1248.  Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

1249.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Trading failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall

could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1250.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  LS Trading's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 114
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against La Suprema Trading Inc.)

1251.  Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1252.  This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

{M3041589;4}

1253.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

1254.   At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

1255.   At all material times, LS Trading engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Woodland.

1256.   Upon information and belief, LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall that was installed in the Homes.

1257.   At the time LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Trading represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

1258.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1259.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time LS Trading imported, sold, advertised, solicited, offered, distributed

{M3041589;4}

and/or supplied the drywall that was installed in the Homes, LS Trading knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

1260.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from LS Trading's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

1261.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

1262.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective

{M3041589;4}

drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

1263.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint. LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

1264.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Trading's violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against

Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. LS Trading's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 115 – UNJUST ENRICHMENT
### (Against La Suprema Trading, Inc.)

1265.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1266.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

1267.   LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

1268.   LS Trading received money from Woodland as payment for the alleged defective drywall installed in the Homes.

1269.   In delivering such payment, monies and/or funds to pay for the drywall that was installed in the Homes, Woodland conferred a benefit, *i.e.*, funds and profit, to LS Trading, which had knowledge thereof.

1270.   LS Trading voluntarily accepted and retained the benefit conferred upon it by Woodland.

1271.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

1272.  The circumstances described herein under which LS Trading profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Trading to retain those funds and profits.

1273.  Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 116 – COMMON LAW INDEMNITY
### (Against La Suprema Enterprise Inc.)

1274.  Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1275.  Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

1276.   Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

1277.   Woodland is entirely without fault for the injuries alleged by Plaintiffs.

1278.   Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Enterprise.

1279.   A special relationship existed between LS Enterprise and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Enterprise. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Enterprise was defective and wholly to blame for Plaintiffs' injuries.

1280.   As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Enterprise to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

1281.   If Woodland is found to be liable to Plaintiffs, LS Enterprise is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the

settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Cross-Claim Defendant La Suprema Enterprise Inc. for damages plus attorneys' fees, interest and costs and for such other relief as the Court deems just and proper.

### COUNT 117 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against La Suprema Enterprise, Inc.)**

1282.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1283.   This is an action, stated in the alternative, against LS Enterprise for contribution pursuant to Section 768.31, Florida Statutes.

1284.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

1285.   Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, LS Enterprise would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

1286.   Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

1287.   To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against LS Enterprise for its pro rata share of the liability.

1288.   LS Enterprise should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs

for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Cross-Claim Defendant, La Suprema Enterprise Inc., for its pro rata share of the liability, if any, found against Woodland in this action, along with interest and costs, together with such other and further relief as this Court deems just and proper.

### COUNT 118 – EQUITABLE SUBROGATION
### (Against La Suprema Enterprise Inc.)

1289.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1290.   This is an action, stated in the alternative, against LS Enterprise for equitable subrogation.

1291.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

1292.   Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

1293.   Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

1294.   To the extent that Woodland is required to pay damages for any fault of LS Enterprise to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from LS Enterprise under equitable principles for any damages which are

attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

1295.  Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 119 – NEGLIGENCE
### (Against La Suprema Enterprise Inc.)

1296.  Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1297.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1298.  Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

1299.  Woodland was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

1300.  As such, LS Enterprise owed Woodland a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell

drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Woodland's customers;  and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

1301. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1302. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Woodland by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Woodland with drywall that complied with all applicable building and industry standards.

1303. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

1304. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Woodland to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

1305. Without admitting any liability or damages to Plaintiffs, Woodland was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. LS Enterprise's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

288

## COUNT 120 – NEGLIGENT FAILURE TO WARN
### (Against La Suprema Enterprise Inc.)

1306.  Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1307.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1308.  Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

1309.  Woodland was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

1310.  As such, LS Enterprise owed Woodland a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

1311.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

{M3041589;4}

1312.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that unless it warned foreseeable consumers such as Woodland of the risk of using the drywall it distributed, sold, and/or supplied, Woodland would suffer harm. However, LS Enterprise failed to provide an adequate warning of such danger.

1313.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1314.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Woodland by: (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction, about which LS Enterprise knew or reasonably should have known.

1315.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{M3041589;4}

the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

1316.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

1317.  Without admitting any liability or damages to Plaintiffs, Woodland was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 121 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Enterprise Inc.)

291

1318. Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1319. Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1320. Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

1321. Woodland was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

1322. To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Enterprise was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Enterprise's control and/or was sold to Woodland, LS Enterprise knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

1323. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction. LS Enterprise breached that duty by failing to

properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

1324.   To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

1325.   Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by LS Enterprise.

1326.   A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

1327.   At all material times, LS Enterprise stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of LS Enterprise's drywall product in residential construction.

1328.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable importer, distributor, seller and/or supplier in LS Enterprise's position would have provided a post-sale warning.

1329.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by LS Enterprise's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action

brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 122 – STRICT PRODUCTS LIABILITY
### (Against La Suprema Enterprise)

1330.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1331.   At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

1332.   Upon information and belief, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise.

1333.   At the time said drywall was placed into the stream of commerce, imported distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

1334.   LS Enterprise expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

1335.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1336.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Enterprise directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 123 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Enterprise)

1337.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1338.   At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

1339.   At all material times, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Enterprise.

1340.  At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

1341.  LS Enterprise expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

1342.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1343.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which LS Enterprise was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

1344.  Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

1345.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Enterprise failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the

296

drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1346.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   LS Enterprise's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 124
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against La Suprema Enterprise Inc.)

1347.   Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1348.   This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

{M3041589;4}

1349.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

1350.   At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

1351.   At all material times, LS Enterprise engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Woodland.

1352.   Upon information and belief, LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall that was installed in the Homes.

1353.   At the time LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Enterprise represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

1354.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1355.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time LS Enterprise imported, sold, advertised, solicited, offered,

{M3041589;4}

distributed and/or supplied the drywall that was installed in the Homes, LS Enterprise knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

1356. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from LS Enterprise's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

1357. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

1358. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective

{M3041589;4}

drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

1359. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint. LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

1360. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Enterprise's violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against

Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. LS Enterprise's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

WHEREFORE, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 125 – UNJUST ENRICHMENT
### (Against La Suprema Enterprise Inc.)

1361.  Woodland reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

1362.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

1363.  LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

1364.  LS Enterprise received money from Woodland as payment for drywall installed in the Homes.

1365.  In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, Woodland conferred a benefit, *i.e.*, funds and profit, to LS Enterprise, which had knowledge thereof.

1366.  LS Enterprise voluntarily accepted and retained the benefit conferred upon it by Woodland.

301

1367.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

1368.  The circumstances described herein under which LS Enterprise profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Enterprise to retain those funds and profits.

1369.  Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## THIRD-PARTY CLAIM AGAINST BANNER ST. LUCIE AND TRIPLE E

### The Parties, Jurisdiction and Venue

1.       This is an action for damages within the monetary jurisdiction of this Court.

2.       The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Woodland.

3.       Woodland was and is a Florida corporation doing business in Palm Beach County, Florida, where this cause of action arose.  At all material times, Woodland was a builder of residential homes in Palm Beach County.

{M3041589;4}

4.       Woodland has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Woodland in the construction of their homes was defective and caused damages to Plaintiffs.

5.       Woodland denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.       Third-Party Defendant, **Banner Supply Company Port St. Lucie, LLC** ("**Banner St. Lucie**"), is a Florida corporation having its principal place of business in Martin County, Florida. At all material times, Triple E supplied and installed allegedly defective drywall in the Homes in Palm Beach County, where this action arose.

7.       Third-Party Defendant, **Triple** "**E**" **Corporation** ("**Triple E**"), is a Florida corporation having its principal place of business in Martin County, Florida. At all material times, Triple E supplied and installed allegedly defective drywall in the Homes in Palm Beach County, where this action arose.

8.       Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs.

9.       Moreover, this Third-Party Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Third-Party Claim and over the instant Third-Party Defendant.

{M3041589;4}

## General Allegations

10.     As set forth in more detail in the Complaint, Plaintiffs allege that the Homes were built using defective drywall designed, manufactured and processed in China, and that Woodland is liable for damages to Plaintiffs.[8]

11.     As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Woodland is liable for damages to Plaintiffs.[9]

12.     Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, appliances and Plaintiffs' personal property (the "**Other Property**").

13.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

14.     In connection with the construction of homes in Palm Beach County, Woodland hired Triple E to furnish, supply, and/or install drywall in the Homes.

15.     At all material times, Triple E furnished, supplied and/or installed the drywall that was installed in the Homes.

---

[8]     The named class Plaintiffs and other members of the putative class have asserted claims against Woodland in this Action, as well as other actions in the state and federal courts.  The damages sought by Woodland in this Third-party Complaint against Banner St. Lucie and Triple E include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

[9]     The named class Plaintiffs and other members of the putative class have asserted claims against Woodland in this Action, as well as other actions in the state and federal courts.  The damages sought by Woodland in this  Third-Party Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

{M3041589;4}

16.     The drywall furnished, supplied, sold and/or installed by Triple E for use in the construction of the Homes was not altered and/or otherwise substantively changed by Woodland.

17.     Triple E knew that Woodland required and expected the drywall it furnished, supplied and/or installed in the Homes to be fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

18.     Upon information and belief, Triple E procured drywall that was installed in the Homes from Banner St. Lucie**.**

19.     At all material times, Banner St. Lucie knew that the drywall purchased for the Homes was going to be used in construction of residential homes.  Banner St. Lucie knew that Woodland was a foreseeable user of the drywall and that Woodland required and expected the drywall to be fit for the ordinary purpose for which it was intended.

20.     Woodland did not know and was not made aware of the problems with the drywall alleged by Plaintiffs.

21.     The drywall distributed, furnished, supplied, and/or sold by Banner St. Lucie and Triple E, and installed by Triple E, for use in the construction of the Homes was not altered and/or otherwise substantively changed by Woodland.

22.     For the purpose of this Third-Party Claim only, and not constituting an admission of the allegations or liability by Woodland, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

{M3041589;4}

23. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, Banner St. Lucie and Triple E had greater knowledge, and/or stood in a better position than Woodland to know, of the drywall's applications, performance, and dangers.

24. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie's and Triple E's acts and omissions in distributing, furnishing, supplying, selling, and/or installing the defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages to Plaintiffs.

25. Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the drywall product installed by Triple E in the Homes.

26. Moreover, Woodland did not know and was never informed by Banner St. Lucie and/or Triple E that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as alleged by Plaintiffs.

27. Consequently, Banner St. Lucie and Triple E are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Woodland in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

{M3041589;4}

28.     Additionally, Banner St. Lucie's and Triple E's wrongful conduct also caused damages to Woodland including but not limited to Woodland's loss of reputation, goodwill and lost profits.

29.     Woodland has hired the undersigned counsel and has agreed to pay a reasonable fee for its services.

30.     All conditions precedent to the filing of this Third-Party Complaint have been performed, excused, or otherwise waived.

<u>COUNT 1 – COMMON LAW INDEMNITY</u>
**(Against Triple E)**

31.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

32.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

33.     Woodland is not and was not in the business of installing, furnishing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall installed, supplied, furnished and/or sold by Triple E.

34.     Woodland is entirely without fault for the injuries alleged by Plaintiffs.

35.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Triple E, and not Woodland.

36.     A special relationship existed between Triple E and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Triple E.  Woodland hired Triple E to install drywall in the Homes. Moreover, to the extent that Plaintiffs are successful in proving their claims that the

drywall was defective, said drywall was installed, supplied, furnished and/or sold by Triple E, and thus, Triple E is wholly to blame for Plaintiffs' injuries.

37.     As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Triple E to install and/or furnish drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

38.     If Woodland is found to be liable to Plaintiffs, Triple E is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

WHEREFORE, Woodland demands judgment for indemnity in its favor against Third-Party Defendant, Triple "E" Corporation, for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 2 - CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Triple E)

39.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

40.     This is an action, stated in the alternative, against Triple E for contribution pursuant to Fla Stat. § 768.31.

{M3041589;4}

41.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

42.     Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Triple E would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

43.     Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

44.     To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Triple E for its pro rata share of the liability.

45.     Triple E should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Third-Party Defendant, Triple "E" Corporation, for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 3 – EQUITABLE SUBROGATION
### (Against Triple E)

46.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

309

47.     This is an action, stated in the alternative, against Triple E for equitable subrogation.

48.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

49.     Woodland is not and was not in the business of installing, furnishing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall installed, furnished, supplied and/or sold by Triple E.

50.     Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs, resulting from a judgment obtained by Plaintiffs.

51.     To the extent that Woodland is required to pay damages for any fault of Triple E to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Triple E under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

52.     Such subrogation will not work any injustice to the rights of others.

WHEREFORE, Woodland demands judgment against in its favor and against Third-Party Defendant, Triple "E" Corporation, for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

**COUNT 4 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
UNDER COMMON LAW AND/OR FLORIDA STATUTE, SECTION 672.314**
**(Against Triple E)**

53.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

54.     This is an action against Triple E for breach of the implied warranty of merchantability under the common law and/or Florida Statutes § 672.314.

55.     Woodland hired Triple E to furnish and/or install drywall in the Homes. Triple E knew that Woodland required and expected the drywall it furnished, supplied, sold and/or installed in the Homes to be fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes, and Woodland justifiably relied on Triple E's skill and judgment to provide, supply and install such drywall in the Homes.

56.     Triple E, as the installer and/or seller of the drywall, warranted to Woodland that the drywall was reasonably fit for its ordinary use. Pursuant to the relationship between the parties, Triple E is deemed to have provided Woodland with an implied warranty of merchantability as to the drywall materials installed, furnished, supplied and/or sold by Triple E.

57.     The drywall furnished by Triple E for use in the construction of the Homes was not altered and/or otherwise substantively changed by Woodland.

58.     Pursuant to Florida Statutes, Section 672.314 and/or common law, Triple E warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.

59.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.  Woodland denies it has any liability to

{M3041589;4}

Plaintiffs. However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Woodland is found liable to Plaintiffs for the defective drywall in the Homes, Triple E breached the implied warranty of merchantability by installing, furnishing, supplying and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

60.     As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Triple E to furnish, install, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Triple E's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

61.     Woodland timely notified Triple E of the defective drywall, but Triple E has failed to repair or replace the defective drywall.

**WHEREFORE,** Woodland demands judgment for damages against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 5 – BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Against Triple E)

62.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

{M3041589;4}

63.     This is an action against Triple E for breach of the implied warranty of fitness.

64.     Woodland hired Triple E to furnish and/or install drywall in the Homes. Triple E knew that Woodland required and expected the drywall Triple E furnished, supplied, sold and/or installed in the Homes to be safe and fit for use in the construction of residential homes.

65.     Woodland justifiably relied on Triple E's skill and judgment to furnish, supply, sell and/or install drywall fit for the particular purpose of constructing residential homes.

66.     Pursuant to the relationship between the parties, Triple E is deemed to have provided Woodland with an implied warranty of fitness as to the work performed and drywall materials furnished, supplied, sold and/or installed by Triple E.

67.     The drywall furnished, supplied and/or sold by Triple E for use in the construction of the Homes was not altered and/or otherwise substantively changed by Woodland.

68.     Triple E impliedly warranted that the drywall was safe and fit for use in the construction of residential homes.

69.     Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Woodland denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Woodland is found liable to Plaintiffs, Triple E breached the implied warranty of fitness by furnishing, supplying and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

70.     As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Triple E to distribute and/or sell drywall fit for its intended purpose, including but not limited to any

payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Triple E's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

71.    Woodland timely notified Triple E of the defective drywall, but Triple E has failed to repair or replace the defective drywall it furnished, supplied, sold and/or and installed in the Homes.

**WHEREFORE,** Woodland demands judgment for damages against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 6 – STRICT PRODUCTS LIABILITY
### (AgainstTriple E)

72.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

73.    Woodland hired Triple E to furnish and/or install drywall in the Homes.  Triple E furnished, supplied, sold and/or installed the drywall in the Homes

74.    At all material times, Triple E was in the business of furnishing, supplying, installing, and/or selling drywall of the type contained in the Homes.

75.    At all material times, the drywall contained in the Homes was placed into the stream of commerce, furnished, supplied, installed and/or sold by Triple E in the regular course of business to Woodland.

76.     At the time said drywall was placed into the stream of commerce, furnished, supplied, installed and/or sold by Triple E, Triple E intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

77.     Triple E expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

78.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

79.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall distributed, placed into the stream of commerce, supplied and/or sold by Triple E directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Triple E's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Triple E)

80.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

81.     Woodland hired Triple E to furnish and/or install drywall in the Homes.  Triple E furnished, supplied, sold and/or installed the drywall in the Homes.

82.     At all material times, Triple E was in the business of furnishing, supplying, installing, and/or selling drywall of the type contained in the Homes.

83.     At all material times, the drywall contained in the Homes was placed into the stream of commerce, furnished, supplied, installed and/or sold by Triple E in the regular course of business to Woodland.

84.     At the time said drywall was placed into the stream of commerce, furnished, supplied, installed and/or sold by Triple E, Triple E intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

85.     Triple E expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

86.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

316

87.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Triple E was required to provide a warning. However, Triple E failed to provide an adequate warning of such danger.

88.     Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

89.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Triple E failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

90.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Triple E's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable

costs and attorneys' fees incurred by Woodland in defending against these claims.  Triple E's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 8 – BREACH OF CONTRACT
### (Against Triple E)

91.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30, above as if fully set forth herein.

92.     Upon information and belief, in connection with the construction of residential homes in Palm Beach County, Woodland entered into an agreement with Triple E wherein Triple E agreed to (i) furnish labor, drywall materials, supervision and other things necessary to efficiently perform and timely complete drywall work in the Homes, (ii) perform its duties in a workmanlike manner; and, (iii) correct and/or reimburse Woodland for defective work not in compliance with the plans and specifications.

93.     In accordance with their agreement, Triple E knew that Woodland required and expected the drywall Triple E furnished, supplied and/or installed in the Homes to be safe and fit for use in the construction of residential homes.

94.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

95.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Triple E breached the material obligations of the parties' agreement by, among other things, furnishing and/or installing deficient and/or defective drywall.

96.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Triple E's acts and omissions in furnishing and/or installing defective drywall in the Homes directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims.

WHEREFORE, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9 – UNJUST ENRICHMENT
### (Against Triple E)

97.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30, above as if fully set forth herein.

98.     This is an action, stated in the alternative, against Triple E for unjust enrichment.

99.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

100.    Triple E furnished, supplied, sold and/or installed the drywall that was installed in the Homes.

101.    Woodland paid Triple E for furnishing supplying, selling, and/or installing the drywall for the Homes.

102.    Triple E received money from Woodland as a result of Woodland's purchases of defective drywall installed in the Homes.

103.    In delivering such payment, monies and/or funds to Triple E, Woodland conferred a benefit, *i.e.*, funds and profit, to Triple E, which had knowledge thereof.

104.    Triple E voluntarily accepted and retained the benefit conferred upon it by Woodland.

105.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Triple E's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

106.    The circumstances described herein under which Triple E profited from selling and/or supplying drywall make it inequitable for Triple E to retain those funds and profits.

107.    Woodland has no adequate remedy at law.

WHEREFORE, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 10 – COMMON LAW INDEMNITY
**(Against Banner St. Lucie)**

108.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

109.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

110.     Woodland is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Banner St. Lucie.

111.     Woodland is entirely without fault for the injuries alleged by Plaintiffs.

112.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner St. Lucie.

113.     A special relationship existed between Banner St. Lucie and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner St. Lucie.  Woodland purchased drywall from Banner St. Lucie that was installed in the Homes.  Moreover, to the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner St. Lucie was defective and wholly to blame for Plaintiffs' injuries.

114.     As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner

St. Lucie to distribute, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

115.    If Woodland is found to be liable to Plaintiffs, Banner St. Lucie is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Third-Party Defendant, Banner Supply Company Port St. Lucie, LLC, for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 11 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against Banner St. Lucie)**

116.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

117.    This is an action, stated in the alternative, against Banner St. Lucie for contribution pursuant to Section 768.31, Florida Statutes.

118.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

{M3041589;4}

119.     Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Banner St. Lucie would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

120.     Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

121.     To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Banner St. Lucie for its pro rata share of the liability.

122.     Banner St. Lucie should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Third-Party Defendant, Banner Supply Company Port St. Lucie, LLC, for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 12 – EQUITABLE SUBROGATION
### (Against Banner St. Lucie)

{M3041589;4}

123. Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

124. This is an action, stated in the alternative, against Banner St. Lucie for equitable subrogation.

125. Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

126. Woodland is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Banner St. Lucie.

127. Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

128. To the extent that Woodland is required to pay damages for any fault of Banner St. Lucie to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Banner St. Lucie under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

129. Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Third-Party Defendant, Banner Supply Company Port St. Lucie, LLC, for equitable subrogation, as well as

{M3041589;4}

attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

## COUNT 13 – NEGLIGENCE
**(Against Banner St. Lucie)**

130.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

131.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

132.    Banner St. Lucie distributed, supplied and/or sold to Woodland the drywall that was installed in the Homes.

133.    Woodland was a foreseeable user of the drywall distributed supplied, and/or sold by Banner St. Lucie.

134.    As such, Banner St. Lucie owed Woodland a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Woodland's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

135.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

Plaintiffs' Complaint, Banner St. Lucie knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

136.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner St. Lucie breached its duty of care to Woodland by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Banner St. Lucie sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Woodland with drywall that complied with all applicable building and industry standards.

137.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner St. Lucie's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

138.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose

Woodland to substantial liability and damages. If Banner St. Lucie had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

139.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Banner St. Lucie' breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 14 – NEGLIGENT FAILURE TO WARN
### (Against Banner St. Lucie)

140.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

141.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

142.    Banner St. Lucie distributed, supplied and/or sold to Woodland the drywall that was installed in the Homes.

143.    Woodland was a foreseeable user of the drywall distributed supplied, and/or sold by Banner St. Lucie.

144.    As such, Banner St. Lucie owed Woodland a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Woodland about any dangers inherent in the drywall, and/or (iii) warn Woodland about any problems or dangers in using the drywall for residential construction.

145.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

146.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie knew or should have known that unless it warned Woodland of the risk of using the drywall it distributed, sold, and/or supplied,

328

Woodland would suffer harm. However, Banner St. Lucie failed to provide an adequate warning of such danger.

147.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

148.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie breached its duty of care to Woodland by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn Woodland about any problems or dangers in using the drywall for residential construction, about which Banner St. Lucie knew or reasonably should have known.

149.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner St. Lucie' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

150.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie knew or reasonably should have known that its acts and

omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Banner St. Lucie had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

151.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Banner St. Lucie' breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 15 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against Banner St. Lucie)

152.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

153.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

154.    Banner St. Lucie distributed, sold and/or supplied to Woodland the drywall that was installed in the Homes.

155.    Woodland was a foreseeable user of the drywall distributed supplied, and/or sold by Banner St. Lucie.

156.    To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner St. Lucie was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner St. Lucie' control and/or was sold to Woodland, Banner St. Lucie knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

157.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Banner St. Lucie breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

{M3041589;4}

158.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

159.    Consumers, such as Woodland, to whom a warning might have been provided could have been identified by Banner St. Lucie.

160.    A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

161.    At all material times, Banner St. Lucie stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Banner St. Lucie' drywall product in residential construction.

162.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Banner St. Lucie' position would have provided a post-sale warning.

163.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland was damaged by Banner St. Lucie' breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against

{M3041589;4}

Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 16 – STRICT PRODUCTS LIABILITY</u>
**(Against Banner St. Lucie)**

164.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

165.    At all material times, Banner St. Lucie was in the business of distributing, supplying, and/or selling drywall of the type contained in the Homes.

166.    At all material times, the drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner St. Lucie to Woodland.

167.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner St. Lucie. Banner St. Lucie intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

168.    Banner St. Lucie expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

{M3041589;4}

169.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

170.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner St. Lucie directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 17 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Banner St. Lucie)

171.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

{M3041589;4}

172.    At all material times, Banner St. Lucie was in the business of distributing, supplying, and/or selling drywall of the type contained in the Homes.

173.    At all material times, the drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner St. Lucie.

174.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner St. Lucie, Banner St. Lucie intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

175.    Banner St. Lucie expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

176.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

177.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner St. Lucie was required to provide a warning. However, Banner St. Lucie failed to provide an adequate warning of such danger.

178.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

{M3041589;4}

179.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner St. Lucie failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

180.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 18 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.

336

**(Against Banner St. Lucie)**

181.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

182.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

183.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

184.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

185.    At all material times, Banner St. Lucie engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Woodland.

186.    Upon information and belief, Banner St. Lucie advertised, solicited, offered, distributed, supplied and/or sold the drywall that was installed in the Homes.

187.    At the time Banner St. Lucie advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner St. Lucie represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

188.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

{M3041589;4}

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

189.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner St. Lucie sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner St. Lucie knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous..

190.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from Banner St. Lucie' unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

191.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, constitutes unfair methods of

338

competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

192.    To the extent Plaintiffs are successful in that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Banner St. Lucie' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

193.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Banner St. Lucie' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

194.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{M3041589;4}

as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner St. Lucie' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper

### COUNT 19– UNJUST ENRICHMENT
### (Against Banner St. Lucie)

195.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

196.    This is an action, stated in the alternative, against Banner St. Lucie for unjust enrichment.

197.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

340

198.    Banner St. Lucie distributed, sold and/or supplied to Woodland the drywall that was installed in the Homes.

199.    Banner St. Lucie received money from Woodland as a result of Woodland's purchases of defective drywall installed in the Homes.

200.    In delivering such payment, monies and/or funds to Banner St. Lucie, Woodland conferred a benefit, *i.e.*, funds and profit, to Banner St. Lucie, which had knowledge thereof.

201.    Banner St. Lucie voluntarily accepted and retained the benefit conferred upon it by Woodland.

202.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie' acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

203.    The circumstances described herein under which Banner St. Lucie profited from selling and/or supplying drywall make it inequitable for Banner St. Lucie to retain those funds and profits.

204.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Banner Supply Company Port St. Lucie, LLC, in an amount to be

{M3041589;4}

determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**COMES NOW** Defendant/Cross and Third-Party Plaintiff, Woodland Enterprises, Inc. and hereby demands a trial by jury as to all issues so triable as a matter of right.

Respectfully submitted this 9th day of June, 2011.

### AKERMAN SENTERFITT

BY: <u>/s/       Stacy Bercun Bohm</u>
Stacy Bercun Bohm, Esq. (Fla. Bar No. 022462)
Valerie B. Greenberg, Esq. (Fla. Bar No. 26514)
Leslie Miller Tomczak, Esq. (Fla. Bar No. 126489)
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, Florida 33301-2229
Telephone: (954) 463-2700
Telecopier: (954) 463-2224
Email:  stacy.bohm@akerman.com
        valerie.greenberg@akerman.com
        leslie.tomczak@akerman.com

*Attorneys for Woodland Enterprises, Inc.*

*Co-Counsel for Woodland Enterprises, Inc.*

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
        Susie.morgan@phelps.com
        Skylar.rosenbloom@phelps.com

{M3041589;4}

## CERTIFICATE OF SERVICE

I hereby certify that *Defendant Woodland Enterprises, Inc.'s Cross Claim* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA  70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA 70163 (kmiller@frilot.com), by U.S. Mail and e-mail <u>or</u> by hand delivery and email <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 9th day of June, 2011.

/s/      Stacy Bercun Bohm

{M3041589;4}