```
 1                     UNITED STATES DISTRICT COURT
 2                     EASTERN DISTRICT OF LOUISIANA
 3
 4
 5   IN RE:   CHINESE MANUFACTURED        *   Docket 09-MD-2047
              DRYWALL PRODUCTS            *
 6            LIABILITY LITIGATION        *   June 9, 2011
                                          *
 7   This Document Relates to All Cases   *   10:00 a.m.
     * * * * * * * * * * * * * * * * * *
 8
 9
10                   STATUS CONFERENCE BEFORE THE
                      HONORABLE ELDON E. FALLON
11                   UNITED STATES DISTRICT JUDGE
12
13   APPEARANCES:
14
     For the Plaintiffs:         Herman Herman Katz & Cotlar
15                               BY:  LEONARD A. DAVIS, ESQ.
                                 820 O'Keefe Avenue
16                               New Orleans, Louisiana 70113
17
     For the Defendants:         Hogan Lovells US, LLP
18                               BY:  FRANK T. SPANO, ESQ.
                                 875 Third Avenue
19                               New York, New York 10022
20
     Official Court Reporter:    Toni Doyle Tusa, CCR, FCRR
21                               500 Poydras Street, Room B-406
                                 New Orleans, Louisiana 70130
22                               (504) 589-7778
23
24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer.
```

## PROCEEDINGS

## (June 9, 2011)

(WHEREUPON the following proceedings were held in chambers with all parties participating by telephone.)

**THE COURT:** Good morning. This is Judge Fallon. I have a lot of people on the phone. I ordinarily ask that you announce yourself, but because of the numbers, I think we would be here all day while people are announcing who they are. What I will ask, though, is that when you speak, if you speak, you give your name so that I will know who is speaking. I also will have this transcribed. If anybody needs a transcript, I will let you know who is transcribing it and how you can get it.

Let me start off by saying that we are meeting today regarding the jurisdiction discovery concerning Taishan Plasterboard, Ltd. and Taishan Gypsum. These companies were made parties to this MDL, which is MDL 2047. They were served under the Hague Convention. No answer was filed. After a number of public announcements which I made at the monthly status conferences, I set the matter up for default.

A preliminary default was taken. I allowed sufficient time to transpire, and then I set the matter for confirmation of the preliminary default. About a week went by during the hearing, I heard testimony presented, and then I issued my judgment.

1           The judgment proceeded.  On the last day for
2  taking an appeal, the defaulted defendants entered the case and
3  filed with the Court of Appeal an appeal asking that the Court
4  of Appeal vacate the Court's judgment on the ground that this
5  Court did not have personal jurisdiction over those defendants.
6  There was a motion, and the motion was not objected to or issue
7  was not taken with it.  At the request of the parties, the
8  Court of Appeal issued a limited remand to this Court to
9  determine whether or not it had jurisdiction over these
10 defendants.
11          The Court looked at the matter.  I felt that in
12 addition to legal issues which were briefed that there were
13 certain factual matters.  I felt the matter was really
14 enshrouded or impregnated with facts and that I needed some
15 limited factual discovery in order to focus on whether or not
16 there was personal jurisdiction present, so I directed the
17 parties to proceed along those lines.
18          They met and conferred and discussed certain
19 documents that the plaintiffs felt were necessary.  Many of the
20 documents were given; some of the documents were not.  I gave
21 the parties an opportunity to brief me on it.  I made some
22 rulings.  The 30(b)(6) depositions were set.  The parties
23 proceeded to Hong Kong to take the depositions.
24          As I mentioned at the last conference, I had an
25 opportunity to look over the transcripts of the depositions,

1  and I didn't feel that the transcripts were helpful to either
2  side.  I do think that the defendants have valid motions.  This
3  is not a frivolous motion.  It's a significant motion and they
4  make significant arguments.  Likewise, the plaintiffs urge
5  significant defenses.
6              I didn't feel that the discovery that was taken
7  was of help to me.  I got to know the interpreters a lot.  I
8  understood their conflicts and their discussions and all of the
9  complaints about dialect and things of that sort, which were
10 interesting.  I heard from the lawyers.  The colloquy of the
11 lawyers went on and on.  Every once in a while I got a sentence
12 that was helpful to me.  I put those sentences together and it
13 barely made a page of the thousand or so pages of the
14 depositions.  It was in between, and it was almost like finding
15 a pearl in a sack of oysters.  I had to root and root and root,
16 and then it was so small that I couldn't do anything with it.
17 So, unfortunately, I see no alternative but to take another
18 look at this.
19             I see the case as having two centers to it:
20 First, the documents; and, second, the depositions.  Let me say
21 that I want to set the depositions, but I want to set the
22 depositions in enough time to take them one last time.  I'm not
23 going to do this another time.  I think that the Court or the
24 Court's designee -- and it looks like it's going to be the
25 Court -- will have to go to Hong Kong or wherever the

1  depositions are taken.
2              I want to discuss the dates with you-all.  I'm
3  looking at the latter part of November or I'm looking at the
4  front part of December as potential dates.  Once we set those
5  dates, before the dates I need some document discovery from
6  you-all, both sides perhaps.  With the documents, I need to
7  know:  What has been produced; what, if anything, still is
8  being sought.  I would expect you to meet and confer and then
9  write me a letter telling me what the issues are.  I really
10 need this within 30 to 45 days.
11             When we get to the depositions, I need to know:
12 Who is going to be deposed; what areas will be covered; where
13 will the depositions take place; who will be the interpreter;
14 who will ask the questions.  We need to focus on that within 45
15 days after the 30-day period for the documents.
16             When I say "who will ask the questions," we have
17 too many people in this case.  We are not going to be able to
18 accommodate everybody.  I need everybody's understanding on
19 that.  It doesn't do you any good to go to Hong Kong or to go
20 to China and have five minutes to ask a question.  It's just
21 not good.  From the South, it takes you five minutes to say
22 "is."  That's just the way it is, so it won't work for us to do
23 it that way.  We are going to have to focus, and I'm going to
24 have to get you-all focused on that.
25             We can't have interpreters, and check

1  interpreters, and check-check interpreters.  If you can't get
2  together on the interpreter in good faith, then I will get the
3  State Department to give me an interpreter and we'll do it that
4  way.
5             I'm concerned about where the depositions are
6  taken.  It might well be that the best place to take them is in
7  the United States Embassy, or the United States Consulate, or
8  some office that the United States has in that area.
9             The defendant has to know what areas you're
10 going to cover in a 30(b)(6) deposition.  The parties who speak
11 on those areas have to know what they are talking about and do
12 some research on it so that they are able to talk about it.
13            I need your feedback on these things, but I
14 wanted to tell you the areas that I'm interested in you're
15 talking about and how we are going to go about it.  I'll hear
16 from either the plaintiffs or the defendants.
17            **MR. LEVIN:**  Your Honor, this is Arnold Levin.  Good
18 morning.
19            **THE COURT:**  Good morning.
20            **MR. LEVIN:**  Len Davis will speak for the PSC.
21            **MR. SPANO:**  Good morning, Your Honor.  It's Frank
22 Spano.  I'm happy to let the plaintiff speak first.  I just
23 wanted to point out in your recitation of the history of the
24 case, the only party with a judgment against it is
25 Taishan Gypsum, and Taishan Gypsum is the moving party to

1  vacate the default and dismiss.  TTP is participating in the
2  discovery.  I just wanted to add that clarification for the
3  record.
4         **THE COURT:**  I think Frank is right on that.  I agree
5  with that.
6         **MR. DAVIS:**  Hello, Your Honor.  We received your
7  minute entry of June 2 and had an opportunity yesterday with a
8  number of folks who I presume are on this call -- we had a
9  number of people who participated in a call that lasted a
10 little bit longer than an hour yesterday to go over the items.
11 I'll briefly report to Your Honor on some of the items that we
12 did, in fact, discuss.  Your comments, I think, today are very
13 helpful and do give the parties guidance that we will all take
14 to heart and go back and we will have further discussions to
15 get you the information that you want.
16             With respect to the dates of the depositions, we
17 heard you say November, December, and we will look at those
18 dates and from our side will certainly report back to you on
19 that.  That will give us some time to get you what you want
20 with respect to the documents up front.
21        **THE COURT:**  With November, let me say the week of
22 November 7 is doable, November 14 is doable, November 28 is
23 doable, and December 5 is double.  I think we get a little too
24 close to Christmas after that.  Those weeks seem to me to be
25 the weeks that you need to shoot for.  You have to get to me

1  soon because I've got a fairly busy trial schedule and those
2  weeks need to be set aside immediately.
3              **MR. DAVIS:**  We will do that, Your Honor.  The general
4  consensus on the call was that having Your Honor present at the
5  depositions would be very beneficial, so we will look at those
6  dates.  We were unable to talk about the length of the
7  depositions due to the issue regarding what witnesses would be
8  potentially produced, and I'll come back to that in a few
9  minutes.
10             As to the location of the deposition, we asked
11 if Hogen Lovells' office would be available.  They are going to
12 look into that now that we have dates that aren't in the
13 summer, and they will get back to us.  I presume that they will
14 do so.  If not, we certainly think that we will find an
15 alternative location in Hong Kong.  We, from the plaintiffs'
16 side, have no problem with Your Honor reaching out and finding
17 a location.  We are happy to assist with that if need be.
18             We just need to make sure that logistics-wise we
19 don't have problems because, for instance, as the Court is
20 aware, these depositions are streamed, and the court reporter
21 needs the Internet and things like that, speakerphones, and so
22 we will coordinate that.
23             With respect to an interpreter, we believe that
24 Your Honor's assistance would be much appreciated.  We don't
25 think that the interpreters that were suggested last time by

1  Taishan will work.  We think that having the State Department
2  or somebody who Your Honor might suggest would be a good thing.
3  We are happy to do whatever Your Honor asks us to do with
4  respect to securing an interpreter that works in that matter.
5              A court reporter you asked about in your order.
6  We all are in agreement that Golkow, who has done these court
7  reporting services in the past, is very competent and capable.
8  We have agreement that Golkow can do that.  Your Honor, we can
9  certainly put Linda Golkow in touch with anyone that you so
10 suggest so that we get the court reporting logistics taken care
11 of.  We don't see that as a problem.  I speak for everybody, I
12 believe, on that.
13             With respect to designation of counsel for
14 questioning on what I call the questioner's side, we are going
15 to meet further and plan on meeting to discuss that.  We will
16 have that worked out so that we have streamlined questioning
17 and designated questioners rather than have the multitude of
18 people like are on this call asking questions.  We heard
19 Your Honor earlier on this call and we heard you previously in
20 court appearances and we all understand that.
21             With respect to the scope of written discovery
22 and the witnesses, we spent a lot of time talking about that.
23 What we heard from Mr. Spano yesterday was that only one
24 witness on the Taishan side they are willing to put up.  I
25 believe after today's call and I hope after today's guidance

1  from the Court we'd have some further discussion on that
2  because, from our side, we think that there's more than
3  Mr. Peng who ought to be deposed. We will have some more
4  discussions with Mr. Spano on that based upon Your Honor's
5  comments.
6  　　　　　　　With respect to documents, we understand from
7  Mr. Spano that there is an additional document that they have
8  to produce that they have recently found. We also understand
9  better how the Hogan Lovells firm went through in securing the
10 documents. We now understand that there is a lawyer in China
11 who was integral in gathering documents and making comments and
12 suggestions to the Chinese company. We are going to have
13 further discussions with respect to documents.
14 　　　　　　　What we have been told is that we have what was
15 there as of the time Hogan Lovells went and had an opportunity
16 to get the documents. We are very concerned as to the
17 production that we got and what may or may not exist, and I
18 will leave it at that. We have a lot of concern and a lot to
19 look at.
20 　　　　　　　We did receive the letter of June 6 from the
21 Hogan Lovells firm from Matthew Galven that we have gone
22 through. We have categorized every one of the documents and
23 put them in an organized fashion as they suggested were
24 responsive to the 13 areas of inquiry, and we had talked about
25 those 13 areas of inquiry.

1               We also talked about my memo, which Your Honor
2    was copied on, as well as the Hogan Lovells letter, my memo of
3    June 6 which laid out the documents to be identified.  It's our
4    intent to have further discussions with Mr. Spano and his crew
5    with respect to those documents.  We are very concerned as to
6    what we have, but more importantly what we do not have.  We
7    will have that discussion.
8               One of the things that we do need to bring to
9    the attention of the Court is that we are concerned about what
10   I'll call the related entities, the upstream and downstream
11   folks.  As Your Honor is aware, we have filed a number of
12   omnibus complaints, and I will tell the Court that we intend on
13   filing another omnibus complaint.
14              The problem that we have is that when we look a
15   the Chinese entities, they are like a spiderweb.  It's a
16   weaved, integral number of entities, some of which we find
17   things on, some of which no longer exist, and trying to get to
18   the bottom of it to find out who is actually acting through
19   these various subsidiaries and related entities is very
20   difficult.  Getting the witness who will be able to speak to
21   that and getting the documents are integral.  I can go into
22   specifics if the Court wants me to, but I don't think that the
23   Court wants to hear the different names of the witnesses who we
24   are concerned with or interested in.
25              **THE COURT:**  No, I don't need that now, but I will

1  need that.  I want to get everything worked out so everybody
2  knows who is going to be deposed, which documents are going to
3  be used, and things of that sort, so that it's not any surprise
4  to anybody.  Let's get this worked out before we go over there
5  so that we don't have to deal with it then.
6        **MR. DAVIS:**  We will do that, Your Honor, and I will
7  tell you I believe that having regular conferences with the
8  Court like you have done in prior matters with respect to class
9  cert and the others every week or every other week is very
10 helpful.
11       **THE COURT:**  I intend to do that.  Do you have
12 anything else, Lenny?
13       **MR. DAVIS:**  No.  I think that's it.
14       **THE COURT:**  Frank, let me hear from you.
15       **MR. SPANO:**  Thank you, Your Honor.  I'm going to wax
16 them of what I believe are inaccuracies in Lenny's comments.
17 Also, I have some responses to some of the points he raised.
18 Before I do that, last night I shared with Lenny some of the
19 client's perspective from China on all of this.  With the
20 Court's permission, I would like to share it with the Court as
21 well.
22       **THE COURT:**  Sure.  Right.
23       **MR. SPANO:**  Without apportioning any blame for what
24 has transpired thus far, we have a problem on our hands.  We
25 have a frustrated client that has a very strong view that it is

1   not subject, respectfully, to this Court's jurisdiction.  They
2   have counsel in China who have been counseling them regarding
3   the minimum contact standard and what that all means.  Their
4   perception is that it's not a terribly complicated issue.
5          Based on that perception, they simply cannot
6   understand why after eight months of jurisdictional discovery,
7   25,000 documents being produced, and five days of depositions,
8   the Court is not nearing the point where it can decide the
9   question of personal jurisdiction.  I'm making that comment by
10  no means attempting to reargue the motion to compel, but I
11  wish, as I told Lenny, to make everyone aware that there is
12  this growing sentiment at the client that they ought not to
13  have to wait much longer to have the jurisdictional issue
14  decided.  As time goes on and the discovery process becomes
15  more onerous, I'm very concerned about the client's continued
16  participation.
17         **THE COURT:**  Sure.  I understand.
18         **MR. SPANO:**  I say this only so, in determining how
19  much is really necessary to complete this process which is to
20  adduce the facts necessary for deciding the motion, we take
21  that into account.  This is very consistent with the Federal
22  Rules, anyway.  Rule 26 requires not only the question of
23  whether discovery could possibly be relevant to an issue, but
24  it also requires proportionality; is it worthwhile considering
25  what discovery has been had before, considering what the issue

1  is, is there a real chance of material nonduplicative discovery
2  to come out of a further extensive process, and weighing that
3  against the expense and the burden of the further discovery.
4              I've been thinking about how to short-circuit
5  this, perhaps.  One idea that I have is not to wait until after
6  the depositions in December to start the supplemental briefing
7  on the motion to vacate but to get into that now so we finish
8  briefing the motion, bring the material issues to the
9  forefront, and then that makes it much easier for the Court and
10 everyone to decide what the additional facts are that may be
11 needed for further discovery.
12             That, I believe, would likely be quicker in the
13 long run and certainly less expensive than going off and taking
14 days of additional testimony without the issues being squarely
15 framed and winding up with much more testimony, the vast
16 majority of which very unlikely will even be before the Court
17 on the motion because it won't be material.
18             In thinking through this, what we have done, we
19 have prepared a bunch of charts that actually summarize the
20 deposition testimony on each designated topic.  I think when
21 the substance of the testimony is organized that way, there is
22 a substantial amount of evidence that was developed at the
23 depositions.  We would be glad to share that with the Court and
24 others to move this process forward or as part of the
25 supplemental briefing.

1      **THE COURT:**  Would it surprise you, Frank, if the
2 other side would look at that chart and give me a chart of
3 their own which is exactly opposite to yours?
4      **MR. SPANO:**  Well --
5      **THE COURT:**  You see, I hear this during
6 presentations.  Oftentimes, the government in a criminal case
7 will say, "There is no reason to go to trial.  You just simply
8 need to have the person taken to jail."  The person says, "But
9 I'm not guilty."  The government says, "Well, how can you say
10 that in view of all this evidence?"
11      I hear that with plaintiffs and defendants in a
12 civil matter.  It's not unusual for the plaintiff to say, "Why
13 is the defendant going to trial?  He did me wrong.  I was fine
14 until this happened and now I'm not."  The defendant says,
15 "Well, it wasn't my fault, and you look pretty good to me."  So
16 we have to try the case.
17      So what I'm saying is your version of the facts
18 may make sense to you and to your family, but it probably is
19 not going to make sense to the opposing counsel.  So I don't
20 mind if you produce charts, but you're going to get charts from
21 the plaintiffs that take the exact opposite approach, and we
22 are going to be exactly where we are here and now.
23      **MR. SPANO:**  Well, the purpose of the chart would
24 simply be to lay out what exactly the testimony was on each
25 topic.  I think it would facilitate the Court and the PSC

1  saying, "What's missing?  What do we really need?"
2      **THE COURT:**  Okay.  That may not be bad.  I wouldn't
3  inhibit that.
4      **MR. SPANO:**  That would be the purpose, Your Honor.
5      **THE COURT:**  Sure.  Okay.
6      **MR. DAVIS:**  Your Honor, I would suggest that Frank
7  ought to send us those charts, we will look at them, and we can
8  have a discussion about it in our meet-and-confer.
9      **THE COURT:**  That's fine.  How long do you-all feel
10 these depositions will take?  Is this a week endeavor?
11     **MR. DAVIS:**  Your Honor, I think it depends on how
12 many witnesses there are.  We have suggested at this point at
13 least three people.  We have been told that Taishan will only
14 put up one.  So we are going to have to have some discussion on
15 that and maybe your input.
16     **THE COURT:**  Look, this is what we need to do.  In the
17 first place, let me focus you on the documents.  I would like
18 you, from the plaintiffs' standpoint, to figure out what you
19 have.  Frank says he gave you certain things and either you
20 didn't get them or you misplaced them or something of that
21 sort.  So you have to figure out what you have.  Then you have
22 to figure out what, if anything, you still need as you see it.
23 Then you need a meet-and-confer with Frank and find out what he
24 will give you and what he won't give you, and then give me a
25 letter telling me what he won't give you and why you need it.

1  Then, Frank, respond to the letter saying why you won't give
2  them and why he doesn't need it.  Then I will make the cut.  We
3  need to do this within 45 days of this meeting.
4             **MR. SPANO:**  Your Honor, if I may just clarify where
5  we are in that process, we have provided the PSC with a letter
6  last Friday where we identified by Bates number the key
7  documents relevant to personal jurisdiction that were produced
8  before the depositions but which nevertheless were the subject
9  of the motion to compel and caused a lot of confusion at the
10 hearing.  We told Lenny yesterday, in substance, that we
11 believed that these are all the documents necessary either to
12 complete an opposition brief to the motion or to support any
13 further limited depositions that the Court may find necessary.
14            **THE COURT:**  All right.
15            **MR. SPANO:**  What we are pointing to are all of the
16 documents underlying the transactions on the MPF involving U.S.
17 sized drywall, and all of the documents reflecting any kind of
18 contacts, direct or indirect, with a U.S. company related to
19 sales or potential sales of the drywall.  As to the sales, the
20 attempted sales, the contacts with the U.S., there is nothing
21 more for Taishan Gypsum to provide.  There is nothing else.
22            I need to correct some statements Lenny made
23 about document collection that I think there was a
24 misunderstanding on the call yesterday evening.  First of all,
25 the document collection in China was conducted exclusively by

1  my firm.  Between August and March, we made four trips to China
2  interviewing witnesses and collecting documents.  We did it,
3  and "we" meaning a team from New York supplemented by Chinese
4  lawyers from our Shanghai and Beijing offices.
5               So when e-mail files were searched, my
6  colleagues -- not the client, my colleagues -- sat at the
7  computers, downloaded the documents, ran the searches, and
8  printed the e-mails.  My colleagues and I went from room to
9  room and file to file and collected the documents.  So I have a
10 lot of confidence in the completeness of the document
11 collection.  I have a real concern about vague allegations
12 without any substance that the document producing was not
13 complete.
14              As I said, I'm happy to pursue those discussions
15 with Lenny, but I wanted the Court to understand the state of
16 affairs and, again, our belief based on the client problems we
17 have and the proportionality issue I alluded to that, my
18 goodness, 25,000 documents, every piece of paper in the
19 company, electronic or otherwise, related to contacts with the
20 U.S., how much more is needed to decide a motion for personal
21 jurisdiction?  This is the crux of, Your Honor said, why we
22 seem to be two ships passing in the night, and this is the crux
23 of what our client has a major problem with.
24         **THE COURT:**  I hear you.  In this case I have met with
25 the clients at other times.  I met with Knauf's people with the

1  consent of the parties.  I don't mind meeting with your people
2  if you want me to do so.  I will try to explain whatever you
3  need me to explain to them.
4           **MR. SPANO:**  Thank you, Your Honor.
5           **THE COURT:**  The documents, I would like you-all to
6  have that finalized and I want to put that to bed by July 25.
7  So immediately you ought to start meeting and finding out,
8  Lenny, what you have, what you need.  If Frank feels he can't
9  give it to you, tell me that in a letter.  Frank, you explain
10 to me why you didn't give it to them and why he doesn't need it
11 and why he is just being obstreperous or mean or something, and
12 then I will make that cut and we'll move on.
13           With the depositions, we need to know who.  Tell
14 me who you are going to put up, Frank, and who you want, Lenny,
15 and I will make that decision.  What areas will be covered,
16 where will the depositions take place, who will be the
17 interpreter, who will ask the questions, I really think that
18 needs to be done by late August, early September.  Then you-all
19 will have September, October, November to get ready for the
20 depositions, which will take place either the latter part of
21 November or the beginning of December.  I'll set aside a couple
22 days, five days, or something like that.  If we don't need it,
23 we will just come home early.
24           The next meeting, I will meet with you-all in
25 two weeks on the telephone.  I don't need the whole world at

1  the meetings.  If you folks don't need to participate, that's
2  fine.  You're welcome if you want to participate.
3              **THE LAW CLERK:**  June 23 at 9:00 Central Time.
4              **THE COURT:**  June 23, 9:00 Central Time, I'll meet
5  with you on the phone.  I would like to know what you have done
6  since our last meeting and what, if any, problems you're
7  having.  If there are any issues, give me a letter a couple
8  days before telling me so I will be able to be current on any
9  issues that you need me to focus on and, if necessary, I will
10 rule at that time on various things.  We need to keep this
11 moving, guys.
12             **MR. DAVIS:**  Thank you, Your Honor.
13             **THE COURT:**  Anything else?  Thank you very much,
14 everybody, for participating.
15             (WHEREUPON the Court was in recess.)
16                              * * *
17                          **CERTIFICATE**
18         I, Toni Doyle Tusa, CCR, FCRR, Official Court
   Reporter for the United States District Court, Eastern District
19 of Louisiana, do hereby certify that the foregoing is a true
   and correct transcript, to the best of my ability and
20 understanding, from the record of the proceedings in the
   above-entitled and numbered matter.
21
22
23                               s/ Toni Doyle Tusa
                                  Toni Doyle Tusa, CCR, FCRR
24                                Official Court Reporter
25