UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: 2047<br>SECTION: L |
| THIS DOCUMENT RELATES TO | JUDGE FALLON<br>MAG. JUDGE WILKINSON |

Vickers et al. v. Knauf Gips KG, et al.
EDLA 09-04117
Payton, et al. v. Knauf Gips KG, et al.
EDLA 09-07628
_____/

**BANNER SUPPLY COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF LEE H. WARONKER, MAI, SRA**

Defendant, Banner Supply Company, a Florida Corporation (hereinafter "Banner"), files this Memorandum in Supports of Its Motion to Exclude the Testimony of Plaintiffs' Expert Lee H. Waronker, MAI, SRA, and in support states as follows:

### I.  Summary of the Argument

Plaintiffs filed a motion to certify a class of Florida homeowners whose homes contain defective Chinese drywall supplied by Banner. Plaintiffs in the proposed class seek class-wide property damages against Banner. In support of their motion, Plaintiffs rely on the testimony of Lee H. Waronker, a real estate appraiser. Waronker opines that the value of homes with Chinese drywall is less than homes without such drywall; that such homes, even if remediated would still suffer a loss in value; and that the loss of value is known as stigma damages. Waronker's opinions are unreliable and purely speculative and should be excluded. His opinions are not probative at the class certification stage and will not assist the trier of fact; therefore, under Federal Rule of Evidence 702 his opinions are inadmissible.

## II.     Factual Background

Plaintiffs identified Waronker as an expert in purported diminution or loss in value of homes in which Chinese drywall was installed. (Waronker Report dated 01/24/11, p. 1). Waronker is a real estate appraiser. Waronker's opinion is that he can estimate class-wide damages related to diminution in the market value of homes with Chinese drywall and the loss in value of homes after remediation, due to the uncertainty of the previous existence of Chinese drywall, or "stigma" damages. Mr. Waronker opines:

    a. The value of homes with defective Chinese manufactured drywall are less valuable than homes without defective Chinese manufactured drywall. Consumers who would purchase a home with defective Chinese manufactured drywall will expect a deep discount on the home due to the need to repair and remediate the home.

    b. The value of homes that had defective Chinese manufactured drywall that has been repaired/remediated is less than a similarly situated home that did not have defective Chinese manufactured drywall. Consumers who would purchase a home that had been repaired/remediated with defective Chinese manufactured drywall will expect a discount on the home.

    c. The loss in value of homes that have defective Chinese manufactured drywall and that were repaired/remediated with Chinese manufactured drywall is known as "stigma" damages in the real estate and appraiser industry. The consumers fear, whether reasonable or not, is recognized in the real estate and appraisal industry and the stigma damages result in a diminution in value.

(Waronker Report dated 01/24/11, p. 1).

In formulating general statements (b) and (c) concerning the diminution of value for Chinese drywall homes after repair, Waronker failed to employ any type of methodology to assess class-wide damages related to diminution value or stigma damages. Waronker's "common sense approach" did not consider any analysis of actual market data. (Deposition of Lee H. Waronker, pp. 94-95).[1] He acknowledges that he has not analyzed any actual sales prices

---

[1] The cited portions of Lee H. Waronker's deposition, taken on May 19, 2011, are attached hereto as Exhibit "B".

of remediated properties. (Waronker Depo., p. 95). Waronker failed to review a single data point or any empirical evidence of sales to formulate his conclusion. (Waronker Depo., pp. 117, 313-314, 349). He essentially cited to his report in the *Seifart*[2] state court case and relied on interviews with random individuals, communications with three (3) brokers, and various articles, which do not support his conclusory opinions. In his communications with brokers, he asked them a hypothetical: "There's two properties side by side, everything is identical; one had Chinese drywall they remediated, the other never had it; would there be a difference in value[?]" (Waronker Depo., p. 340). The sole broker Mr. Waronker could identify for this Court said there would be no change in value – i.e. no stigma value once the home was remediated. (*Id*. at 341). Despite the fact that the hypothetical question completely lacked salient facts concerning the significant improvement in the condition of the remediated home, two mystery brokers Mr. Waronker could not identify supposedly told him there would be a difference; one of the unidentifiable brokers could not quantify the change in the value. (*Id*.).

Similarly, the articles purportedly relied upon by Waronker do not deal with diminution in value or stigma damages of homes with Chinese drywall. (Waronker Report dated 01/24/11, Exh. A, Addendum C). Mr. Waronker did not review any articles regarding stigma damages analysis for Chinese drywall. (Waronker Depo., p. 101). None of the articles provided by Waronker with his report describe or support a particular methodology for quantifying the discounted value of a home with Chinese drywall. (Waronker Report dated 01/24/11, Exh. A, Addendum C). In fact, there are no peer-reviewed type articles regarding Chinese drywall or the purported diminution in value of the Chinese drywall homes even included in Waronker's materials. (*Id*.). He did not rely upon any generally-accepted method to quantify any class-wide

---

[2] *Armin G. Seifart and Lisa M. Gore Seifart v. Banner Supply Co., et al.*, Circuit Court of Miami-Dade County, Florida, Civil Action File No. 09-38887CA(42).

diminution damages. (*Id.*). Waronker did not spend any time on his new January 24, 2011 report and did not rely on anything new - outside of the dated *Seifart* materials - to prepare his January 24, 2011 report. (Waronker Depo., p. 171).

Waronker cited to the report he prepared in *Seifart* to show a diminution of value in Chinese drywall homes. (Waronker Report dated 01/24/11, Exhibit "A"). He admitted, however, in the context of that case, that the marketplace analysis relative to remediation has to be done on a case-by-case basis. (Waronker Depo, pp. 97-98). He explained the process of pairing sales and analyzing two similar homes and performing individual case studies as to loss in value. (Waronker Depo., pp. 98-99). Of course, he did not do any such comparison or case studies in connection with his above opinions related to class-wide damages. In fact, he has no idea how many sales there have been involving Chinese drywall remediated homes. (Waronker Depo., p. 113). He also failed to come to any conclusions regarding the discounted values of any class representatives' homes due to stigma. (Waronker Depo., pp. 188, 191-192).

Waronker admits that he cannot quantify the "deep discounts" expected by potential buyers of Chinese drywall homes. (Waronker Depo., pp. 294-295). He agreed that the question of quantifying the discount of a Chinese drywall home is a whole different analysis than his general opinion that "people who would purchase a home that been remediated will expect a discount." (Waronker Depo., p. 94). Waronker did not formulate any conclusions quantifying the stigma damages. (Waronker Depo., p. 200). His conclusion that "if there are two homes side by side and you have your choice, the one that had to be remediated is going to be less than the other one" is based on talking to brokers, individuals and "good old-fashioned common sense." (Waronker Depo., p. 201).

4

Importantly, Waronker concedes that anytime a home is remediated, there are positive benefits that inure to a Plaintiff homeowner. (Waronker Depo., pp. 281-283). Those benefits, just like the purported stigma damages resulting from the Chinese drywall, vary home to home. (Waronker Depo., pp. 118-119). Waronker further admits that to calculate a typical loss in value requires a home by home analysis in order to assess the stigma to value relationship. (Waronker, p. 118). Nevertheless, Mr. Waronker's unsupported conclusion that there are stigma damages does not take into account whether the remediation benefits outweigh any purported negative stigma. (Waronker Depo., pp. 312-313). His opinion simply ignores this reality and illogically jumps to the preordained conclusion that there is loss in value. (Waronker Depo., pp. 313-315).

Waronker has no special certifications or licenses with respect to stigma analysis or environmental contamination analysis. He has not given any lectures or speeches or written any articles on stigma or environmental contamination analysis. (Waronker Depo, p. 38). He has no particular expertise in stigma analysis or environmental contamination analysis other than general experience. (*Id.* at 38-39).

As discussed in more detail below, Waronker's opinions are inadmissible as a matter of law. His opinions are void of any hallmarks of reliability and they have no probative value for the issues of class certification. Therefore, this Court should exclude Waronker's opinions regarding diminution in value and stigma damages for homes containing Chinese drywall.

### III. Argument and Citation of Authority

#### A. Legal Standard

There is a split among Circuit Courts about whether a full *Daubert* review is required at the class certification stage, but the trend is to require a full review. *See* 1 *McLaughlin on Class Actions* § 3:14 (6th ed.) ("The way courts apply *Daubert* in the class certification context is

5

evolving toward wider acceptance that the requirements of *Daubert* and Rule 702 apply with full force at the class certification stage."). The Fifth Circuit has not addressed the issue, but in *Turner v. Murphy Oil USA, Inc.*, 2006 WL 91364 (E.D. La. 2006), this Court held that a limited *Daubert* review is applicable for class certification - relying primarily upon the Second Circuit's analysis in *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001). Since that time, however, the Second Circuit has disavowed the limited review approved in *In re Visa Check*. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) ("we also disavow the suggestion in *Visa Check* that an expert's testimony may establish a component of a Rule 23 requirement simply by being not fatally flawed. A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit.").

Other courts have followed suit. *See Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010) ("a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion. That is, the district court must perform a full *Daubert* analysis before certifying the class if the situation warrants."); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323 (3d Cir. 2008) ("Expert opinion with respect to class certification, like any matter relevant to a Rule 23 requirement, calls for rigorous analysis."); *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 639 (9th Cir. 2010) *cert. granted in part,* 131 S. Ct. 795 (U.S. 2010); *Woodard v. Andrus*, 2010 WL 670142 (W.D. La. Feb. 19, 2010). Accordingly, this Court should conduct a full *Daubert* analysis to determine the admissibility of Waronker's testimony.

> Federal Rule of Evidence 702 specifically provides:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon **sufficient** facts or data; (2) the testimony is the product of **reliable** principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702 (emphasis added).  Federal Rule of Evidence 702 assigns to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.  Expert opinions based on unreliable data cannot satisfy the standard developed by the Supreme Court in *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993) ("*Daubert I*") and explained further upon remand by the Ninth Circuit in *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311 (9th Cir. 1995) ("*Daubert II*").

Under *Daubert II*, the District Court must act as a gatekeeper excluding "bad science" that does not carry sufficient indicia of reliability for admission under Federal Rule of Evidence 702.  *Daubert II*, 43 F.3d at 1316. Thus, in determining whether expert opinions constitute reliable scientific testimony, a court must make "a preliminary assessment of whether the reasoning or methodology underlying an expert's testimony is scientifically valid and whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert I*, 509 U.S. at 592-93.  An expert opinion "must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." *Id*. at 590.  This Court's gatekeeping role separates expert opinion evidence based on "good grounds" from subjective speculation that masquerades as scientific knowledge. *See Glastetter v. Novartis Pharm. Corp.* 252 F.3d 986, 989 (8th Cir. 2001).[3]

---

[3] *Daubert* principles apply to all expert testimony, not just scientific testimony. *Berry v. City of Detroit*, 25 F.3d 1342, 1350-54 (6th Cir. 1994).

7

The primary concern is whether the testimony is reliable and relevant. *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007). The court must first determine if the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts of the case. *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). "In short, the expert must 'employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). In evaluating the foundation of the expert's opinion, the court may consider whether: (1) the theory or technique employed has been generally accepted; (2) the theory has been subject to peer review and publication; (3) the theory can and has been tested; (4) the known or potential rate of error is acceptable; and (5) there are standards controlling the technique's operation. *Id.* at 379.

Federal Rule of Evidence 702 and the *Daubert* standards require expert testimony to be derived from a qualified expert, who bases his testimony on sufficient facts and data using reliable methodology. Application of these standards to the present case or merely a limited *Daubert* analysis mandates that Mr. Waronker's testimony and opinions be excluded from evidence.

> B. **Mr. Waronker's opinions are unreliable and speculative and must be excluded, even if this Court utilizes a limited *Daubert* review.**

Mr. Waronker's opinions in this case must be excluded because they are not based on reliable data or methodology as required by Federal Rule of Evidence 702 and applicable federal law. The first general requirement under Rule 702 is that the witness' testimony must be based on sufficient facts and data. *Coffrey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 973 (M.D. Tenn. 2002). The party bringing the motion to bar the testimony does not have the "burden of proof." The Third Circuit in *In re Paoli*, 35 F.3d 717, 744 (3d Cir. 1994), "based on longstanding

8

Supreme Court precedent," held that the proponent of the expert testimony must demonstrate "by a preponderance of evidence that [the] opinions are reliable." *See also Daubert I*, 509 U.S. at 592 n.10.

As previously outlined above, judges must serve as "gatekeepers" to ensure that scientific testimony offered in the form of expert opinion is both relevant and reliable. *Daubert I*, 509 U.S. at 592. Thus, this Court must make a threshold determination of whether Mr. Waronker's opinions should be admitted. As the Sixth Circuit has stated, "close judicial analysis of such technical and specialized matter is necessary not only because the likelihood of juror misunderstanding, but also because expert witnesses are not necessarily always unbiased scientists. They are paid by one side for their testimony." *Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1352-53 (6th Cir. 1992). Plainly, Mr. Waronker's opinions, which lack objective support, fall into the category of opinions developed for purposes of testifying.

Waronker did not use any methodology in formulating his opinions concerning diminution in value or stigma damages for Chinese drywall homes. Waronker's "common sense approach" did not consider an analysis of actual market data. (Waronker Depo., pp. 94-95). He acknowledges that he has not analyzed any actual sales prices of remediated properties. (Waronker Depo., p. 95). He also concedes that he did not rely upon any empirical evidence of sales to formulate his conclusion. (Waronker Depo., pp. 117, 313-314, 349). Waronker did not provide any evidence of research done concerning comparable sales, pending sales, historical sales or market trends in Florida. "Nothing in . . . *Daubert* . . . requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 157. Since Waronker's conclusions regarding class-wide damages related to

diminution in the market value of homes with Chinese drywall and stigma damages are not supported by any objective analysis, this Court should exclude the opinions.

In addition to his failure to consider actual market data, Waronker did not provide any peer reviewed articles or generally accepted large-scale real estate valuation models to opine upon the diminution of value of homes containing Chinese drywall. Waronker's common sense approach did not include any type of mass appraisal techniques. He did not even review any articles regarding stigma damages analysis for Chinese drywall. (Waronker Depo., p. 101). Moreover, he did not rely upon any generally accepted method to quantify any class-wide diminution damages. (Waronker Report dated 01/24/11, Exh. A, Addendum C). (*Id.*). As Waronker's opinions are not based on reliable data or any methodology, his opinions that a home with Chinese drywall has a deep discount and even if remediated would still have a loss in value can only be characterized as pure speculation and must be excluded.

Additionally, Federal Rule of Evidence 702 provides that expert testimony is only admissible when the expert bases his testimony on **sufficient facts and data** using **reliable methodology**. Waronker has no facts or data upon which to base his opinion that remediated Chinese drywall homes have stigma damages. He even admits that stigma damages, if any, will dissipate over time in the context of Chinese drywall. (Waronker Depo., p. 260). While Waronker concedes that a remediated home offers some benefit to a Plaintiff homeowner, he did not take into account whether the remediation benefits outweigh any purported negative stigma. (Waronker Depo., pp. 281-283, 312-313). Those benefits, just like the supposed stigma damages resulting from the Chinese drywall, vary home to home and require an individual analysis to assess any loss in value. (Waronker Depo., pp. 118-119). Waronker simply ignores the benefit

of remediation and summarily concludes that there is loss in value. (Waronker Depo., pp. 313-315).

Again, these opinions are simply blanket assertions which are wholly unsupported by any admissible facts, studies, research, analysis or other data. As such, any and all opinions regarding stigma damages must be excluded at the class certification stage and from the jury. It is clear that Waronker's opinions do not pass muster under either a complete or limited *Daubert* review and should be excluded from evidence.

> C. **Mr. Waronker's opinions lack probative value on the issues of class certification and do not assist the trier of fact and should be excluded.**

In addition to reliability, Waronker's opinions must be probative on the issue of class certification and may only be admitted if they will assist the jury. *See* FED. R. EVID. 702. As explained by the Eleventh Circuit, "the Daubert analysis requires that the proposed testimony be relevant. To meet this requirement, the expert testimony must be "relevant to the task at hand,' . . . i.e., that it logically advances a material aspect" of the case. . . . The relevance requirement is not satisfied where the proffered testimony does not assist the trier of fact." *McDowell v. Brown*, 392 F.3d 1283, 1298-99 (11th Cir. 2004) (citing *Daubert I*).

The relevance concern is related to the *Daubert* requirement that the expert testimony "assist the trier of fact":

> To be admissible, expert testimony must assist the trier of fact to understand the evidence or to determine a fact in issue . . . . This condition goes primarily to relevance . . . As the Supreme Court has recognized, this consideration has been aptly described by Judge Becker as one of fit . . . Therefore, the Court must determine whether the proposed testimony "fits" in this case.

*United States v. Masferrer*, 367 F. Supp.2d 1365, 1373 (S.D. Fla. 2005) (citing *Daubert I*) (internal punctuation omitted). "The final element of admissibility, set forth in *Daubert*, is an appropriate relevance, or 'fit,' between the expert's opinion and the facts of the case." *Siharath*

11

*v. Sandoz Pharms. Corp.*, 131 F. Supp. 2d 1347, 1352 (N.D. Ga. 2001). *See also Cooper v. Toshiba Home Tech. Corp.*, 76 F. Supp. 2d 1269, 1277 (M.D. Ala. 1999) ("The critical concerns of Rule 702 are evidentiary reliability and relevancy . . . the court must consider whether the testimony assists the trier of fact in understanding the evidence or determining a fact in issue. . . . This requirement, in essence, is a relevance inquiry. . . . The expert's opinion must 'fit' the facts of the case.") (internal citations omitted).

Waronker's opinions are not relevant to the issues of class certification and will not assist the trier of fact for several reasons. First, his opinions are nothing more than what could be argued by Plaintiffs' counsel. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than factual and legal conclusions argued by experienced lawyers for the parties in closing arguments." *Masferrer*, 367 F. Supp.2d at 1373. *See also EZ Dock, Inc. v. Schafer Sys.*, 2003 U.S. Dist. LEXIS 3634, *29 (D. Minn. Mar. 8, 2003) (expert testimony improper where the same statements can "be made by counsel in closing arguments"; such testimony "does not assist the jury in making findings on the factual questions it must decide"). Waronker is opining on the diminution in value of homes containing Chinese drywall based on his prior appraisal of one Florida home, Seifart, and his "good old-fashioned" common sense. The jury, however, can use their own common sense in evaluating each individual home on a case-by-case basis to determine whether there has in fact been a diminution in value of a Chinese drywall home.

Second, Plaintiffs do not articulate in their motion for class certification how they intend to use Waronker's opinions. Assuming Plaintiffs intend to offer Waronker's opinions to support their contention of predominance of class-wide issues regarding their property damage claim, Waronker's opinions are irrelevant. Waronker did not offer any type of formula for calculating

12

class-wide diminution or stigma damages.[4]  Waronker did not quantify any class-wide discount. (Waronker Depo., p. 94).  His general assertions, as explained above, are insufficient as a matter of law.

Finally, on a more basic level, Waronker's testimony is so fundamentally unsupported that it will not assist the trier of fact as required by Rule 702.  The court must exclude an expert's opinions if they are "'so fundamentally unsupported that it can offer no assistance to the jury.'" *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 691 (8th Cir. 2009) (quoting *Neb. Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005)).  That is precisely the situation before the Court in this case.

Accordingly, because Waronker's testimony will not assist the trier of fact at trial or class certification, the Court should exclude it.

### IV.  Conclusion

The Court should exclude the testimony of Lee Waronker because it is unreliable, speculative, lacks probative value at the class certification stage, and will not assist the trier of fact.

Respectfully submitted, this 10th day of June, 2011.

**WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC**

*/s/ Shubhra R. Mashelkar*
**SHUBHRA R. MASHELKAR, ESQUIRE**
Georgia Bar Number:  475388
3344 Peachtree Road, Suite 2400
Atlanta, GA  30326
Telephone (404) 876-2700
smashelkar@wwhgd.com
***Counsel for Banner Supply Company***

---

[4] *See In re Katrina Canal Breaches Cons. Lit.*, 258 F.R.D. 128, 134 (E.D. La. 2009) ("The weight of the Fifth Circuit's case law holds that where damages cannot be calculated using a mechanical formula, but instead require individualized assessment, predominance generally does not exist.").

## CERTIFICATE OF SERVICE

       I hereby certify that the above and foregoing **Banner Supply Company's Memorandum in Support of Its Motion to Exclude Testimony of Lee H. Waronker, MAI, SRA** has been served on Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was previously electronically filed with the Clerk of Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF System, in accordance with the procedures established in MDL 2047, on this 10th day of June, 2011.

                                      **WEINBERG, WHEELER, HUDGINS,**
                                      **GUNN & DIAL, LLC**

                                        */s/ Shubhra R. Mashelkar*
                                      **SHUBHRA R. MASHELKAR, ESQUIRE**
                                      Georgia Bar Number:  475388
                                      3344 Peachtree Road, Suite 2400
                                      Atlanta, GA  30326
                                      Telephone (404) 876-2700
                                      smashelkar@wwhgd.com
                                      *Counsel for Banner Supply Company*