UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: 2047<br>SECTION: L |
| THIS DOCUMENT RELATES TO | JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**Vickers et al. v. Knauf Gips KG, et al.**
EDLA 09-04117
**Payton, et al. v. Knauf Gips KG et al.**
EDLA 09-07628
_____/

## BANNER SUPPLY CO.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF RONALD E. WRIGHT

Defendant, Banner Supply Co., a Florida Corporation (hereinafter "Banner"), files this Memorandum in Support of Its Motion to Exclude the Testimony of Plaintiffs' Expert Ronald E. Wright, and in support therefore states:

### I.     Summary of the Argument

In support of their motion for certification of a class of Florida homeowners whose homes contain defective Chinese drywall supplied by Banner, Plaintiffs rely on the testimony of Ronald E. Wright, who is prepared to testify that he can develop a method to calculate class-wide damages that does not involve individualized inquiries that would preclude class certification. Wright's opinion is inadmissible, however, because it is based upon a completely undeveloped methodology. And because it is undeveloped, no one can be sure if it will work—including Wright. As such, the Court should exclude Wright's proposed testimony on plaintiffs' alleged damages.

## II.  Factual Background

Plaintiffs identified Wright as an expert in repair and remediation of homes in which Chinese drywall was installed. (Motion, p. 12). Wright has a civil engineering degree and is licensed in various states as a professional engineer; he is not a licensed professional engineer in Florida. (Second Supplemental Declaration of Ronald E. Wright, P.E., ¶ 3). Wright's opinion is that he can develop a methodology to estimate class-wide damages related to remediation, alternative housing during remediation, diminution of property value, loss of use and enjoyment, and personal property damage. (*Id.* at ¶ 6). In his own words:

> That there is a way in which there could be a methodology in place to determine that there is the presence of Chinese drywall or corrosive drywall within a residence and the impacts it's having within that residence. And from that, another methodology can be used to determine what the cost would be for the remediation that's required for that; and from that also what other costs would be involved or needed to take care of that issue.

Exhibit A, Wright Depo. Trans., 5-16-2011, 77:1-13. Wright believes that these methodologies are "capable of being developed, and that there are a number of things that are already able to be done towards those methodologies." *Id.* at 77:16-23.

Wright's first objective is to identify the product, i.e., the manufacturer of drywall present in the home. *Id.* at 77:24 – 78:13. The proposed methodology to accomplish this goal first involves a review of shipping records, if available, and a visual inspection of each home by a contractor or other construction professional. *Id.* at 78:14-22; 80: 19-23. The second task to be undertaken involves identifying the corrosive impact the Chinese drywall has had upon individual homes. *Id.* at 90:12-18. To determine the level of corrosion, an inspection of each home is required to observe different copper materials, such as electrical wiring or the home's HVAC system. *Id.* at 91:4-12. These inspections would be conducted by a professional, like Wright, or a contractor. *Id.* at 91:13-18.

2

Wright's second objective is to estimate any required remediation and the cost of that remediation for each home. *Id.* at 62:6 – 66:4. To do so, Wright proposed to rely primarily on as-built drawings of the homes—which are compiled when construction is complete—or a physical inspection of each home. *Id.* Wright concedes that many local jurisdictions do not keep as-built drawings of residential properties. *Id.* at 156:22 – 157:4. And, in any event, as-built drawings do not reflect post-construction changes to a home, such as custom cabinets or different appliances, so a physical inspection or homeowner involvement would be required to ensure that the drawings accurately depict the current condition of the home. *Id.* at 63:16 – 64:13. Wright admits that in his 32-year career, he has never relied upon a homeowner to identify changes from original construction. *Id.* at 62:1-5. Obviously inspecting as-built drawings requires some training or experience. *See id.* at 65:2-13.

This proposed methodology would also be used to quantify the amount of materials and labor needed to remediate the homes. *Id.* at 95:1 – 96:7. The proposed methodology would require the replacement of all the drywall, cabinetry, and plumbing fixtures in each home, all of which would require individual quantity takeoffs. *Id.* at 96:8-24. Most importantly, the "methodology" has not yet been developed and has gaps: "is not fully developed . . . ." *Id.* at 96:19-23.

Wright is also developing a future methodology to estimate the costs of replacing damaged personal property. *Id.* at 123:7-12. He proposes retaining a statistician to develop a range of costs for replacement items and then relying on questionnaires from the homeowners to determine individualized damage amounts. *Id.* at 123:13 – 125:24. Wright has "not gotten to the point of having that fully developed in how you would do the different breakdown of

3

components." *Id.* at 125:20-24. In fact, he has not even consulted with any statisticians about this proposed methodology. *Id.* at 126:21-24.

Wright also contemplated a future methodology to determine the cost of alternative living arrangements for the homeowners while their homes are being remediated. *Id.* at 121:1-8. To do so, Wright would first need to investigate living costs for specific geographic areas—possibly by county—because of variations in the cost of housing. *Id.* at 121:3 - 122:23. But Wright has not even attempted to develop submarkets within Florida to use in his efforts to come up with an alternative-living cost. *Id.* at 123:2-6.

### III.     Argument and Citation of Authority

#### A.     Legal Standard

There is a split among Circuit Courts about whether a full *Daubert* review is required at the class certification stage, but the trend is to require a full review. *See* 1 *McLaughlin on Class Actions* § 3:14 (6th ed.) ("The way courts apply *Daubert* in the class certification context is evolving toward wider acceptance that the requirements of *Daubert* and Rule 702 apply with full force at the class certification stage."). The Fifth Circuit has not addressed the issue yet, but in *Turner v. Murphy Oil USA, Inc.*, 2006 WL 91364 (E.D. La. 2006), this Court held that a limited *Daubert* review is applicable for class certification—relying primarily upon the Second Circuit's analysis in *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001). Since that time, however, the Second Circuit has disavowed the limited review previously approved in *In re Visa Check*. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) ("we also disavow the suggestion in *Visa Check* that an expert's testimony may establish a component of a Rule 23 requirement simply by being not fatally flawed. A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule

4

23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit.").

Other courts have followed suit. *See Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010) ("a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion. That is, the district court must perform a full *Daubert* analysis before certifying the class if the situation warrants."); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323 (3d Cir. 2008) ("Expert opinion with respect to class certification, like any matter relevant to a Rule 23 requirement, calls for rigorous analysis."); *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 639 (9th Cir. 2010) *cert. granted in part,* 131 S. Ct. 795 (U.S. 2010); *Woodard v. Andrus*, 2010 WL 670142 (W.D. La. Feb. 19, 2010). Accordingly, this Court should conduct a full *Daubert* analysis to determine the admissibility of Wright's opinions.

Expert testimony is admissible only if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The primary concern is whether the testimony is reliable and relevant. *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007). The court must first determine if the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts of the case. *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). "In short, the expert must 'employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). In evaluating the foundation of the expert's opinion, the court may consider whether: (1) the theory or technique employed has been generally accepted;

(2) the theory has been subject to peer review and publication; (3) the theory can and has been tested; (4) the known or potential rate of error is acceptable; and (5) there are standard's controlling the technique's operation. *Id.* at 379.

Wright's opinions fail to satisfy this standard and, as such, the Court should exclude his testimony.

### B. The methodology underlying Wright's opinions is admittedly undeveloped and, therefore, unreliable.

An expert's opinions are admissible only if they are based on reliable methods that have been reliably applied to the particular facts of each case. Fed. R. Evid. 702. "In making this assessment, the trial court need not take the expert's word for it. Instead, when expert testimony is demonstrated to be speculative and lacking in scientific validity, trial courts are encouraged to exclude it." *In re Vioxx Products Liab. Litig.*, 414 F. Supp. 2d 574, 580 (E.D. La. 2006) (internal citations omitted). The expert's testimony must be "more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993).

In this case, Wright's methodology is admittedly based entirely on speculation and his subjective belief that he can develop, some time in the future, two different methodologies to establish class-wide damages. The deadline for Plaintiffs' expert reports in this case was March 31, 2011. (Doc. 8385). The time for Defendants to cross examine the Plaintiffs' experts at deposition has also now passed. Consequently, any potential methodologies that may be developed in the future are untimely and not at issue for this Court's consideration.

During his deposition, Wright repeatedly explained that these proposed methodologies were undeveloped. *See* Wright Depo. Trans., 5-16-2011, 77:1-13 ("there is a way in which there could be a methodology in place to determine" if Chinese drywall is present in a home and then, another methodology "can be used" to determine the costs of remediation); *Id.* at 77:16-23

6

(explaining that these methodologies are ""capable of being developed . . . ."); *Id.* at 96:19-23 (the method that will be used to quantify materials needed for remediation "is not fully developed . . . ."); *Id.* at 125:20-24 (concerning the cost of replacing damaged personal property, Wright has "not gotten to the point of having that fully developed in how you would do the different breakdown of components."). In other words, Wright believes he can develop a method to calculate class-wide damages; he just has not developed it yet.

Given the preliminary nature and undeveloped methodology underlying Wright's opinions, this Court cannot conduct even a limited *Daubert* analysis to determine if the opinions are admissible—let alone a full *Daubert* examination. By definition, opinions based on undeveloped methodology are inherently unreliable and, therefore, inadmissible. *See Guy v. Crown Equipment Corp.*, 394 F.3d 320 (5th Cir. 2004) (affirming exclusion of expert in alternative design of allegedly-defective product because expert's opinions were presented in generalities and conceptual suggestions rather than concrete conclusions); *Brown v. Miska*, 96 F.3d 1445 (5th Cir. 1996) ("because the proffered expert testimony was premised on specious, questionable, and unscientific methodology, the district court properly refused to admit the testimony."); *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1125 (10th Cir. 2006) (affirming exclusion of expert because his report was insufficient to allow the court to assess the reasoning and methodology underlying his opinions); *Anderson v. Dow Chemical Co.*, 2006 WL 6545465 (M.D. La. 2006) (excluding proposed expert because of "the lack of any understandable explanation of the analysis, methodology or computations he performed to reach his opinion."). The Court "need not take [Wright's] word for it." *In re Vioxx Products Liab. Litig.*, 414 F. Supp. 2d at 580.

In addition, Wright's anticipated future methodology relies on several different steps—many of which are either incomplete or purely theoretical. For example, Wright has not determined how he is going to value personal property, though he admits he needs to do so. Nor has he researched local building codes to determine if variations among them would make his class-wide cost analysis unworkable. These failings render his opinions inadmissible. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994) ("any step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible.").

Even if the Court could employ the relevant *Daubert* factors, Wright's testimony satisfies none of them. The theory or technique underlying his opinions has not been generally accepted, nor could it be because it is incomplete; his methodology cannot be tested to ensure accuracy; because of the preliminary nature of it, there are no standards controlling the methodology's operation; and the potential rate of error is unknown. *See Wells*, 601 F.3d at 379. How can anyone test a methodology that is not yet fully developed? Accordingly, the Court should exclude the testimony of Ronal Wright because the methodology underlying his opinions is undeveloped and unreliable.

Finally, that Wright derived estimated repair costs for the homes in the *Germano* case is unavailing because Wright was able to individually inspect each of the homes at issue—spending between two and four hours in each rather than use an as of yet undeveloped methodology to develop estimates for the homes at issue here. Wright Depo. Trans. 47:16-20. In addition, *Germano* involved less than ten homes rather than the estimated 3,000 at issue in this case. Perhaps most importantly, Wright has simply failed to explain how his work on individual home in *Germano* could somehow be applied to an exponentially-greater number of homes.

### C. Wright's testimony will not assist the trier of fact.

On a more basic level, Wright's undeveloped testimony will not assist the trier of fact as required by Rule 702. The court must exclude an expert's opinion if it is "'so fundamentally unsupported that it can offer no assistance to the jury.'" *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 691 (8th Cir. 2009) (quoting *Neb. Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005)). That is precisely the situation before the Court in this case. How will the case be advanced by Wright proclaiming that there is a yet-undeveloped way to determine class-wide damages? It will not.

Wright's testimony is similarly unhelpful for class certification because, although Plaintiffs rely on his opinion as support for their claim that class-wide damages can be determined on an as of yet undetermined formulaic basis (as required[1]), Wright has no such opinion other than to say that it is possible. He has not explained how he would do it other than in generalities, which leave out the requisite analysis that is subject to testing and verification. And as explained above, this is insufficient.

Accordingly, because Wright's testimony will not assist the trier of fact—at trial or class certification—the Court should exclude it.

### IV. Conclusion

The Court should exclude the testimony of Ronald Wright because it is based on an undeveloped and unreliable methodology, and it would not assist the trier of fact.

---

[1] *See In re Katrina Canal Breaches Cons. Lit.*, 258 F.R.D. 128, 134 (E.D. La. 2009) ("The weight of the Fifth Circuit's case law holds that where damages cannot be calculated using a mechanical formula, but instead require individualized assessment, predominance generally does not exist.").

Respectfully submitted, this 10th day of June, 2011.

**WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC**

*/s/ Shubhra R. Mashelkar*
**SHUBHRA R. MASHELKAR, ESQUIRE**
Georgia Bar Number:  475388
3344 Peachtree Road, Suite 2400
Atlanta, GA  30326
Telephone (404) 876-2700
smashelkar@wwhgd.com
*Counsel for Banner Supply Company*

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Banner Supply Company's Memorandum in Support of Its Motion to Exclude Testimony of Ronald E. Wright** has been served on Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was previously electronically filed with the Clerk of Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF System, in accordance with the procedures established in MDL 2047, on this 10th day of June, 2011.

**WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC**

*/s/ Shubhra R. Mashelkar*
**SHUBHRA R. MASHELKAR, ESQUIRE**