# EXHIBIT
# 2

**Waronker & Rosen, Inc.**
Real Estate Appraisers and Consultants
5730 S.W. 74th Street, Suite 200
South Miami, Florida 33143
Telephone (305) 665-8890

**Lee H. Waronker, MAI, SRA**           Fax (305) 665-5188           **Josh L. Rosen, MAI**
lee@waronkerandrosen.com        www.waronkerandrosen.com        josh@waronkerandrosen.com

January 24, 2011

Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134



Dear Mr. Montoya:

Pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, I hereby submit my written

report in these matters as follows:

(i)     A complete statement of all opinions I will express the basis and reasons for them is

set forth below.  I have rendered my opinions based on my experience, knowledge

and training as a real estate appraiser, the relevant literature and other sources as set

forth herein.  All of my opinions are based on a reasonable degree of probability as a

real estate appraiser:

a.  The value of homes with defective Chinese manufactured drywall are less

valuable than homes without defective Chinese manufactured drywall.

Consumers who would purchase a home with defective Chinese manufactured

drywall will expect a deep discount on the home due to the need to repair and remediate the home.

    b.  The value of homes that had defective Chinese manufactured drywall that has been repaired/remediated is less than a similarly situated home that did not have defective Chinese manufactured drywall.  Consumers who would purchase a home that had been repaired/remediated with defective Chinese manufactured drywall will expect a discount on the home.

    c.  The loss in value of homes that have defective Chinese manufactured drywall and that were repaired/remediated with Chinese manufactured drywall is known as "stigma" damages in the real estate and appraiser industry.  The consumers fear, whether reasonable or not, is recognized in the real estate and appraisal industry and the stigma damages result in a diminution in value.

    d.  Consumer expectations in purchasing homes does not vary significantly from state to state.  I believe that consumers in the affected states will expect discounts when purchasing homes that contain defective Chinese manufactured drywall or that have been repaired/remediated due to Chinese drywall.  Moreover, the stigma damages continuing in nature.

(ii)    The data or other information considered by me in coming to the above referenced opinions is as follows:

    a.  Numerous conversations with real estate professionals regarding homes with Chinese drywall;

    b.  My work, appraisal, the research data, articles, literature and report in the matter of Seifart v. Banner Supply Co., attached hereto as Exhibit "A";

c.  My experience, knowledge and training as set forth in my CV contained in

    Exhibit "A";

(iii)    The list of exhibits that I will use to summarize or support my opinions is contained

         in Exhibit "A";

(iv)    My qualifications are set forth in Exhibit A;

(v)     I have attached a list of my prior testimony as Exhibit "B";

(vi)    My compensation for this service will be $2,000, plus costs of travel.  Any required

         conferences, depositions or court appearances resulting from litigation will be billed

         at $275 per hour for principals, $150 per hour for staff appraisers and $50 per hour

         for researches, additional.

Very truly yours,

Lee H. Waronker, MAI, SRA
State-Certified General Appraiser
License No. RZ162

Exhibit "A"

**Waronker & Rosen, Inc.**
Real Estate Appraisers and Consultants
5730 S.W. 74th Street, Suite 200
South Miami, Florida 33143
Telephone (305) 665-8890

Lee H. Waronker, MAI, SRA          Fax (305) 665-5188          Josh L. Rosen, MAI
lee@waronkerandrosen.com     www.waronkerandrosen.com     josh@waronkerandrosen.com

May 27, 2010

Mr. Patrick S. Montoya, Esq.
Colson Hicks Eidson
255 Aragon Avenue, 2nd Floor

*Re:*   Diminution in Value Due to Chinese Drywall
        Single Family Residence
        4075 Bonita Avenue
        Miami, FL 33133
        CASE NO. 09-038887 *Seifart v. Knauf Gips KG*
        WRI File No. 6424

Dear Mr. Montoya:

We have prepared a *Summary Appraisal Report* of the above referenced property for the purpose of estimating the diminution in market value due to the existence of Chinese drywall, of the fee simple interest as of April 23, 2010. The terms market value and fee simple interest are defined in the pages of this report. This report has been prepared based on the scope of the work which is detailed on a following page. The reader of the appraisal is strongly advised to read the scope of work so as to understand the scope of this appraisal.

This report is intended for use only by the client and intended users as noted herein. Use of this report by others is not intended by the appraiser. No one else or any other entities should rely on this appraisal other than those noted herein.

The subject property is a two-story single family residence constructed in 2007, having 4 bedrooms, 3 bathrooms and 0 half bath(s). The building area is 4,342 adjusted square feet per the Miami-Dade Property Appraiser's Office. The improvements are situated on a 8,023 square foot site. The subject property is located at 4075 Bonita Avenue, Miami, FL. Zoning on this site is R-1, Single Family Residential, by the city of Miami, Florida allowing for single family residences. Additional discussion of the building improvements and the site can be found within this appraisal report.

Mr. Patrick S. Montoya, Esq.
Colson Hicks Eidson
May 27, 2010

The reader should be advised that our employment was not contingent on the appraisal providing
As a result of our investigation, it is our opinion that the diminution in the market value due to
the existence of Chinese drywall value, of the fee simple interest as of April 23, 2010, is in the
amount of

## EIGHT HUNDRED AND FIFTYSIX THOUSAND DOLLARS

### ($856,000)

This estimate includes the cost of remediation and holding costs.

Also requested was an estimate solely for the diminution of value after remediation, due to the
uncertainty of the previous existence of Chinese drywall. This estimated diminution is estimated
as of April 23, 2010 and is in the amount of

## TWO HUNDRED THOUSAND DOLLARS

### ($200,000)

**This appraisal estimates the market value of the subject property with the hypothetical
condition that the Chinese drywall does not exist and then estimates the loss in value due to
the existence of the drywall.**

It should be noted that the valuation herein does not include any furniture; however it does
include all built-ins and appliances.

On the following pages is the table of contents and scope of work followed by the certificate of
value and general assumptions and limiting conditions. It is advised that these items be reviewed
so the reader has an understanding of the limitations of this appraisal.

Very truly yours,

*Lee H. Warl*

Lee H. Waronker, MAI, SRA
State-Certified General Appraiser
License No. RZ162

# Table of Contents

Title Page
Letter of Transmittal                                                          1
Table of Contents                                                             3
Scope of Work                                                                 5
Certificate of Value                                                          7
General Assumptions and Limiting Conditions                                   9
Limiting Conditions:                                                         10

**INTRODUCTION**                                                             11

Summary of Pertinent Data                                                    12
Miami-Dade County Map                                                        13
Plat Map                                                                     14
Aerial Photograph                                                            15
Subject Photographs                                                          16
Appraiser Qualifications                                                     26

**DESCRIPTION & ANALYSES**                                                   29

Purpose of the Appraisal Report                                              30
Client, Intended User and Use of the Appraisal Report                        32
Definition of Interest Being Appraised                                       32
Definition of Market Value                                                   33
Location and Address                                                         34
Legal Description                                                            34
Owner of Record                                                              34
History of the Subject Property                                              34
Site Data                                                                    35
Zoning                                                                       35
Flood Zone                                                                   35
Real Estate Assessment and Taxes                                             36
Description of the Building Improvements                                     37
Description of the Site Improvements                                         38
Neighborhood Overview                                                        39
Neighborhood Rating                                                          39
Reasonable Exposure Time                                                     40
Typical Purchaser of the Subject                                             40
Highest and Best Use                                                         41
Appraisal Process                                                            42
Cost Approach                                                                43
Income Capitalization Approach                                               44
Sales Comparison Approach                                                    17
Improved Sales Map                                                           19

Reconciliation of Value                                                          34

**ADDENDA**

Addendum A – County Area Description
Addendum B – Flood Zone Map
Addendum C – Articles
- "An Exploratory Review of the Effects of Toxic Mold on Real Estate Values"
- Florida Realtors – White Paper: Chinese Drywall
- Chinese or Defective Drywall Addendum – Sarasota Association of Realtors
- National Association of Home Builders "Builders Rise to the Challenge of Corrosive Chinese Drywall
- Chinese Drywall, A Greenfield White paper
- Punta Gorda-Port Charlotte Realtors Weekly Update quoting Mr. Frank Desguin the Charlotte County Property Appraiser
- Interim Remediation Guidance for Homes with Corrosion from Problem Drywall
- The Florida Senate Issue Brief 2010-311 regarding imported drywall
- In the News, Chinese Drywall Liability: Who's on the Hook?
Addendum D – Remediation Cost Estimate provided by Lahoud & Hardan Enterprises, Inc,

# Scope of Work

The appraisal problem herein is to estimate the diminution in the market value of the subject property due to the existence of Chinese drywall. The following steps are taken within the appraisal to estimate the loss in value due to the existence of Chinese drywall.

1. *Estimate the market value of the residence.* Estimate the hypothetical value of the subject property as of April 23, 2010 without the existence of Chinese drywall and in a condition commensurate with a residence constructed in 2007 and in good to very good condition for its age.

2. *Deduct the cost to cure.* Deduct from the estimated market value as detailed above, the cost to cure the problem. This is the estimated cost to remove the Chinese drywall, rewire, replace air conditioners and restore the house to a condition commensurate with its age.

3. *Deduct additional associated costs.* Deduct costs that would be incurred by the owner associated with obtaining alternative housing during the time required for renovations.

4. *Deduction for associated risk.* Consider and deduct if applicable a risk factor a buyer might associate with the purchase of a house previously constructed with Chinese drywall.

5. *Conclude to an "As Is" value.* The net value indication is the "As Is" value of the subject property with consideration to the existence of Chinese drywall.

6. *Estimated diminution in value.* The difference between the hypothetical value estimate (Item 1) and the "As Is" value estimate (Item 5) is the diminution in value attributable to the existence of the Chinese drywall.

Also requested was an estimate solely for the diminution of value after remediation, due to the uncertainty of the previous existence of Chinese drywall. This value is a *hypothetical value* that considers the house as being remediated per the contract referenced herein and the loss in value.

The valuation approach used herein, the sales comparison approach, is considered sufficient to develop credible assignment results in solving the appraisal problem.

All appraisals begin by identifying the appraisal problem. Data on the subject property is derived from various sources including but not limited to the property owner, the county property appraiser's office, surveys and building plans. When possible, more than one source is utilized to confirm data. Within the appraisal the data source is acknowledged. Should plans or a building sketch be available, the measurements are confirmed for accuracy. Land size is based on surveys (when available), public records and recorded plats. Land measurements are not performed.

Description of the improvements is based on visual inspection and/or plans. The age of the building is based on public records. Appraisers are not structural engineers and therefore cannot attest to the soundness of a structure. Noticeable potential problems such as stress cracks and water damages are noted, if evident.

Comparable improved sales were inspected from the exterior. Sale prices are from public records and are typically confirmed with a party to the transaction, i.e. buyer, seller, real estate agent, or closing attorney. Public records are investigated for mortgage information and terms.

Research of comparables included, but was not limited to, using the following data sources:

First American Real Estate Solutions Services (FARES)
Board of Realtors' Multiple Listing Service (MLS)
Miami-Dade County Property Appraiser (*http://gisims2.co.miami-dade.fl.us/myhome/propmap.asp*)

The MLS is reviewed to indicate up-to-date information of sales and listings. All information is analyzed in processing the appraisal reports and as support for the estimated value.

The scope of work for this assignment has been described above and is to be typical for an assignment of the nature of the subject appraisal problem.

## Certificate of Value

The undersigned does hereby certify that, to the best of my knowledge and belief:

1.  The statements of fact contained in this appraisal report are true and correct.

2.  The reported analyses, opinions and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, impartial, and unbiased professional analyses, opinions and conclusions.

3.  I have no present or prospective interest in the property that is the subject of this report, and no personal interest with respect to the parties involved.

4.  I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5.  My engagement in this assignment was not contingent upon developing or reporting predetermined results.

6.  My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7.  My analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the following requirements.

    - The Code of Professional Ethics and the Standards of Professional Practice of the Appraisal Institute
    - Uniform Standards of Professional Appraisal Practice (USPAP)
    - The State of Florida requirements for state-certified appraisers
    - FIRREA of 1989 – Title XI and its updates
    - Office of the Comptroller of the Currency of the United States of America
    - Federal Deposit Insurance Corporation (FDIC)

8.  I have complied with the USPAP Competency Rule.

9.  This appraisal report sets forth all of the limiting conditions imposed by the terms of this assignment or by the undersigned affecting the analyses, opinions and conclusions contained in this report.

10. No one provided significant real property appraisal professional assistance to the person signing this report, unless specifically noted herein.

11. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives. Additionally, it is subject to review by the state of Florida relating to review by the real estate appraisal subcommittee of the Florida Real Estate Commission.

12. As of the date of this report Lee H. Waronker, MAI, SRA has completed the continuing education program of the Appraisal Institute.

13. I, Lee H. Waronker, MAI, SRA have made a personal inspection of the property that is the subject of this report.

14. The estimated diminution in the market value due to the existence of Chinese drywall, of the fee simple interest as of April 23, 2010, is in the amount of $856,000. The above estimate includes the cost of remediation and holding costs.

15. Also requested was an estimate solely for the diminution of value after remediation, due to the uncertainty of the previous existence of Chinese drywall. This loss in value was estimated as of April 23, 2010 in the amount of $200,000.

16. It should be noted that the valuation herein does not include any furniture; however it does include all built-ins and appliances.

17. I have not performed any valuation services, or a previous appraisal of the subject within the three years prior to this assignment.

18. **This appraisal estimates the market value of the subject property with the hypothetical condition that the Chinese drywall does not exist and then estimates the loss in value due to the existence of the drywall.**

*Lee H. Wan*

Lee H. Waronker, MAI, SRA
State-Certified General Appraiser
License No. RZ162

*Date:* May 27, 2010

# General Assumptions and Limiting Conditions

This appraisal report has been made with the following general assumptions:

1.  No responsibility is assumed for the legal description or for matters pertaining to legal or title considerations. Title to the property is assumed to be good and marketable unless otherwise stated.

2.  The property is appraised free and clear of any or all liens or encumbrances unless otherwise stated.

3.  Responsible ownership and competent property management are assumed.

4.  The information furnished by others is believed to be reliable but, no warranty is given for its accuracy.

5.  All engineering studies are assumed to be correct. Any plot plans or illustrative material in this report are included only to help the reader visualize the property.

6.  It is assumed that there are no hidden or unapparent conditions of the property, subsoil, or structures that render it more or less valuable. No responsibility is assumed for such conditions or for obtaining the engineering that may be required to discover them. The values estimated herein are subject to typical inspections such as roof, structural, and termite, if applicable.

7.  It is assumed that the property is in full compliance with all applicable federal, state and local environmental regulations and laws unless the lack of compliance is stated, described and considered in the appraisal.

8.  It is assumed that the property conforms to all applicable zoning and use regulations and restrictions unless a non-conformity has been identified, described and considered in the appraisal.

9.  It is assumed that all required licenses, certificates of occupancy, consents, and other legislative or administrative authority from any local, state or national government or private entity or organization have been or can be obtained or renewed for any use on which the opinion of value contained in this report is based.

10. It is assumed that the use of the land and improvements is confined within the boundaries or property lines of the property described and considered in the appraisal.

11. Existence of hazardous materials, specifically Chinese drywall, was observed by the appraiser. The appraiser has no knowledge of the existence of additional hazardous materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presences of substances such as asbestos, urea formaldehyde foam insulation, or other potentially hazardous materials may affect the value of the property. The value estimated is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required to discover them. The intended user is urged to retain an expert in this field, if desired.

12. The physical condition of the improvements, if any, described herein was based on visual inspection. No liability is assumed for the soundness of structural members, since no engineering tests were made of same.

13. Neither all nor any part of this appraisal report shall be disseminated to the general public using the appraiser's name or appraisal designation, without prior written consent of the appraisers signing this appraisal report.

14. Authorization is not allowed for the out-of-context quoting from, or partial reprinting of, this appraisal report.

15. By reason of the report, there is no requirement to testify with reference to the property herein appraised, unless arrangements have been previously made.

16. To the best of our ability, the analysis, opinions, and conclusions were developed in this report was prepared in accordance with the standards and reporting requirements of FIRREA of 1989-XI and its updates, the office of the Comptroller of the Currency of the United States of America (OCC), the Federal Deposit Insurance Corporation (FDIC) and the Uniform Standards of Professional Appraisal Practice (USPAP) adopted by the Appraisal Standards Board of the Appraisal Foundation.

17. The reader should be advised that our employment was not contingent on the appraisal providing a minimum valuation, a specific calculation or the approval of a loan. Additionally, we have complied with the USPAP Competency Rule.

*Limiting Conditions:*

1. The allocation of total value between land and improvements applies only under the described utilization. The separate valuations for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used.

2. The Americans with Disability Act (ADA) became effective January 26, 1992. The appraiser has not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the requirements of the ADA. It is possible that a compliance survey of the property and detailed analyses of the requirements of the ADA, could reveal that the property is not in compliance with one or more of the act. If so, this fact could have a negative impact upon the value of the property. Since the appraiser has no direct evidence relating to this issue, possible noncompliance with the requirements of ADA was not considered in estimating the value of the property.

# INTRODUCTION



# Summary of Pertinent Data

| | |
|---|---|
| Location: | North side of Bonita Avenue, east of LeJeune Road (a/k/a S.W. 42nd Avenue), Miami, Florida |
| Address: | 4075 Bonita Avenue Miami, FL, 33133 |
| Type of Use: | Two-story single family residence |
| Year Built: | 2007 |
| Building Area: | 4,342 square feet (adjusted area[1]) |
| Bedrooms/Bathrooms/Half Baths: | 4/3/0 |
| Land Area: | 8,023 square feet |
| Value by Cost Approach: | Not applicable |
| Value by Income Capitalization Approach: | Not applicable |
| Value by Sales Comparison Approach: | $1,520,000 |
| **Market Value Estimate of the Fee Simple Interest:** | **$1,520,000**[2] |
| **Diminution in Value (includes remediation):** | **$856,000** |
| **Diminution in Value:** | **$200,000**[3] |
| Date of Valuation: | April 23, 2010 |
| Date of Report: | May 27, 2010 |

---

[1]  The Miami-Dade County Property Appraiser's adjusted square footage. This size includes the gross building area at 100% and various percentages for overhangs, story height, and other areas that are not considered 100% areas.

[2]  Hypothetical value that assumes the subject property has not been affected by Chinese drywall and is in good to very good condition for its age.

[3]  Hypothetical estimate solely for the diminution of value after remediation, due to the uncertainty of the previous existence of Chinese drywall.

*Introduction*                                    *Residence at 4075 Bonita Avenue, Miami, Florida*

# Miami-Dade County Map



# Plat Map



# Aerial Photograph



# Subject Photographs



Front view of the subject property



Close-up view of the subject property



Rear view of the subject property



Close-up of rear of the subject property



Street view looking east along Bonita Avenue.



Street view looking west along Bonita Avenue.



Swimming pool

*Introduction*                    *Residence at 4075 Bonita Avenue, Miami, Florida*

## Interior Views







## *Interior Views* (continued)







## *Interior Views* (continued)







*Introduction*                                    *Residence at 4075 Bonita Avenue, Miami, Florida*

## Interior Views *(continued)*







*Introduction*                                    *Residence at 4075 Bonita Avenue, Miami, Florida*

## Interior Views *(continued)*

 

 

## *Interior Views* (continued)







*Introduction*                                    *Residence at 4075 Bonita Avenue, Miami, Florida*

## Interior Views *(continued)*







*Introduction*                                          *Residence at 4075 Bonita Avenue, Miami, Florida*

## Interior Views *(continued)*







# Appraiser Qualifications

## LEE H. WARONKER, MAI, SRA

**Education:**  Master of Science in Management, School of Business and Organizational Science, Florida International University, 1981 (Major – Real Estate)

Bachelor of Science Degree, The Florida State University, Tallahassee, Florida 1976 (Major – Real Estate)

**Affiliations:**  MAI Designation (No. 6738) awarded by the Appraisal Institute in 1983.

State-Certified General Appraiser, State of Florida, License Number RZ162, May 1990.

**Experience:**  Appraised various types of properties, including:

| | | |
|---|---|---|
| Industrial Buildings | Restaurants | Warehouses |
| Office Buildings | Hotels and Motels | Hospitals |
| Service Stations | Retail Stores | Marinas |
| Churches & Synagogues | U.S. Post Offices | Historical Buildings |

President, *Waronker & Rosen, Inc.,* (formerly Waronker & Associates, Inc.) Miami, Florida, from 1987 to present. Vice President, *Property Consultants, Inc.* from 1979 to 1986. Appraiser, The Keyes Company, 1978 to 1979. Appraiser, Miami-Dade County Department of Right-of-Way, 1977 to 1978.

**Instructor:**  Appraisal Institute. Taught Courses 1A-1, 1A-2, 8-2, 1B-A, 1B-B, 110, 120, 210, 310, 320, 410, 420, 430, 510, 550, 600, 610 and 620, et al

**Other:**  Special Master for the Dade County Valuation Adjustment Board, 1989 to 1996. Assisted in the editing of *The Appraisal of Real Estate, 11th Edition and 13th Edition*

President of the Miami Chapter of the Appraisal Institute, 1990 to 1991.

**Author:**  Seminars entitled *"Dynamics of Office Building Valuation", "Why the Capitalization Rate is Always 10"* and the *"Appraisal of Real Estate 10th vs. 11th Edition".*

*Introduction*                          *Residence at 4075 Bonita Avenue, Miami, Florida*

# Partial Client List

**LENDER**
BAC Bank
Banco Popular, N.A.
BankAtlantic
BankUnited
Bank of America
Bank of Coral Gables
Bank Leumi
BNY Mellon Bank
Branch Banking and Trust (BB&T)
Broward Bank of Commerce
CNL Bank
Cigna Investments, Inc.
Citibank and Citicorp
City National Bank of Florida
Coconut Grove Bank
Comerica Bank
Credit Suisse First Boston Mtg. Capital, LLC
Enterprise Bank of Florida
Espirito Santo Bank of Florida
Executive National Bank
Fifth Third Bank
First Bank Puerto Rico d/b/a First Bank
    Florida
First National Bank of South Miami
Florida Community Bank
Gibraltar Private Bank and Trust
Great Florida Bank
Gulf Coast National Bank
Holliday Fenoglio Fowler, LP
International Finance Bank
Israel Discount Bank of New York
JP Morgan Chase Bank
Lydian Bank
Lloyds International Bank (Lloyds of London)
Lutheran Brotherhood
Marine Bank
Mercantile CommerceBank, N.A.
Morgan Stanley Mortgage Capital
Northern Trust Bank
Ocean Bank
Orix Real Estate Capital Markets, LLC
Premier American Bank
Professional Bank
Regions Bank

R-G Crown Bank
Sabadell United Bank
Seacoast National Bank
SunTrust Bank
TD Bank
The Bank of Miami
TIB Bank
Totalbank
U.S. Century Bank
Union Credit Bank
Wells Fargo
Western Bank – Puerto Rico

**LIFE INSURANCE COMPANIES**
Allstate Insurance Company
American General Life Insurance Company
Fortis Capital Corp. and Life Insurance Co.
Franklin Life Insurance Company
General American Life Insurance Company
Independent Order of Foresters
John Alden Life Insurance Company
Kansas City Life Insurance Company
Lumberman's Life Insurance Company
Omaha Woodman Life Insurance Society
Standard Life Insurance Company
Sun Life Insurance Company of America

**CORPORATIONS**
Church of Jesus Christ of the Latter-Day Saint
Florida Power and Light Corporation (FPL)
JC Penny Corporation
Wendy's International Corporation
Chevron U.S.A. Inc.
PBS and J
Johnson and Johnson Company

**DEVELOPERS AND INVESTORS**
Berkowitz Development Group
Bristol Group, Inc.
Constructa Development
Franklin Street Properties
Flagler Development Corporation
Goldman Properties
Hampshire Real Estate Companies
Hotels AB

Lennar Corporation
Napolitano Realty and Hamap Corporation
Noble House Resorts and Hotels
Ocean Properties, Ltd
Panther Real Estate
PLC Investments, LLC
R.K. Associates, Inc.
The Scott Robins Companies
Wometco Enterprises, Inc.

**GOVERNMENT AGENCIES**
Broward County School Board
City of Coral Gables
City of Miami Beach
City of Miami General Services Administration
Federal Deposit Insurance Corp. (FDIC)
Federal Home Loan Mortgage Corp. (FHLMC)
Florida Dept. of Environmental Protection
Florida Department of Transportation
Florida Keys Aqueduct Authority
Miami-Dade Water and Sewer Authority
Miami-Dade Co. -- Aviation Authority
Miami-Dade Co. -- County Attorney's Office
Miami-Dade Co. -- General Services Administration
Miami-Dade Co. -- Housing & Urban Development
Miami-Dade Co. -- Public Works Department
Miami-Dade Co. -- School Board
Nature Conservancy, Florida Chapter
South Florida Water Management District
United States Department of Justice
United Stated General Services Administration
United States Postal Services
Village of Pinecrest

**LAW FIRMS**
Akerman, Senterfitt & Eidson
Barranco, Kircher, P.A.
Berman, Wolfe Rennart Vogel & Mandler, P.A.
Greenberg Trauvig, P.A.
Gunster Yoakley Valdes-Fauli & Stewart, P.A.
Holland & Knight
Kirkpatrick and Lockhart
Stearns, Weaver, Miller, Weissler, Alhadeff &
    Sitterson, P.A.
Steel Hector and Davis

# Notable Properties Appraised

## *Miami-Dade County*

| | | | |
|---|---|---|---|
| Miami Seaquarium | Virginia Key | Miami Free Zone – Global Trade Cntr | Miami |
| Miami International Airport | Miami | Metropolitan Hospital of Miami | Miami |
| City of Miami Correctional Facility | Miami | Spinnaker Marina | North Miami |
| Country Club of Miami Golf Course | Miami | Virginia Key & Rickenbacker Marinas | Key Biscayne |
| Mel Reese Golf Course | Miami | Waterways Yacht Basin | Miami |
| Burger King Headquarters – Waterford | Miami | Porto Vita Club and Spa | Aventura |
| Doctors Hospital | Coral Gables | Ocean Steps Entertainment Center | S. Miami Beach |
| Beacon Centre Development | Miami | Indian Creek Country Club | Indian Creek |
| FBI Headquarters | Miami | BIV Tower | Miami |
| Gables Waterway Executive Center | Coral Gables | Courthouse Tower | Miami |
| Joe's Stone Crab restaurant | Miami Beach | South Shore Hospital | Miami Beach |
| Doral Ocean Beach Resort (formerly) | Miami Beach | SouthCom Headquarters | Miami |
| Metro-Dade Bus Facility | Miami | | |

## *Fort Lauderdale/Broward County*

| | |
|---|---|
| Florida Medical Center (Hospital) | Ft. Lauderdale |
| Jackson Marine Center | Ft. Lauderdale |
| Las Olas Centre Office Building | Ft. Lauderdale |
| Martha's Restaurant | Hollywood |
| Various Luxury Single Family Homes | Fort Lauderdale |
| Seneca Industrial Park | Pembroke Park |

## *Monroe County/Florida Keys*

| | |
|---|---|
| Marriott Key Largo Bay Beach Resort | Key Largo |
| Islander Resort | Islamorada |
| Hawk's Cay Resort, Marina and DRI | Duck Key |
| Westin, formerly Hilton Resort and Sunset Key Island | Key West |
| Little Palm Island | Little Torch Key |
| Louis' Backyard Restaurant | Key West |
| Ocean Key Resort | Key West |
| Sloppy Joe's Bar | Key West |
| Truman Annex - Navy Base | Key West |

## *Other Florida Counties*

| | |
|---|---|
| Jupiter Beach Resort | Jupiter, Palm Beach County |
| La Playa Beach Resort | Naples, Collier County |
| Sheraton Four Points | Orlando, Orange County |
| Spring Hill Suites | Tampa, Hillsborough County |
| Hilton Carillon Park | St. Petersburg, Pinellas County |

## *Outside of the United States*

| | |
|---|---|
| Various Single Family Homes | Cat Cay, Bahamas |
| Single Family Home | Casa de Campo, Dominican Republic |
| Sapphire Beach Resort | St. Thomas, U.S. Virgin Islands |
| Hotel Site | Grand Turks and Caicos Islands |
| Montego Beach Resort | Montego Bay, Jamaica |
| Botany Bay Subdivision (400 acres) | St. Thomas, U.S. Virgin Islands |
| Ocean Club Resort | Grand Turks and Caicos Islands |
| Land lease under Ritz Carlton | San Juan, Puerto Rico |
| Various Land Holdings | St. Croix, U.S. Virgin Islands |
| Vacant Land | West End, Grand Bahama Island |

# DESCRIPTION & ANALYSES



# Discussion of the Appraisal Problem

Due to shortages of drywall in the period of 2004 to 2007, a large percentage of drywall was imported from China to keep up with the demand levels caused by new construction and also reconstruction due to hurricanes.

The valuation herein is an estimate of the diminution in value due to the existence of Chinese drywall. The drywall within the subject property has been identified as defective Chinese drywall which is the type that has concentrated levels of sulfur and other substances that produce corrosive gases and odor. These gases have been diagnosed as being harmful to the residents and also have corroded electrical appliances, electrical wiring and copper piping.

Recently U.S. District Judge Eldon Fallon in New Orleans issued a ruling that "Plaintiffs purchased a new home and are entitled to have it restored to a new condition (i.e. without corrosion, tarnishing, residue or other damage to wiring and other components)". The ruling was required that the defendants pay for stripping the house to its studs and to replace electrical appliances. This ruling supports the claim and concern due to the existence of Chinese drywall.

Other evidence as to the concern for the existence of Chinese drywall includes;

1.  *Florida Realtors – White Paper: Chinese Drywall* (refer to Addendum C herein). This paper addresses the concerns of the existence of Chinese drywall and also provides a summary of the history of this drywall. They estimate 36,000 homes to "contain Chinese-made drywall".
2.  *Sarasota Association of Realtors – Chinese or Defective Drywall Addendum* (refer to Addendum C herein). Addendums have been created to address the seller's obligation to disclose the presence of defective Chinese drywall. This addendum details that this defective drywall "emits a strong sulfur-like odor or fume which may cause the residents of the home to experience health problems." Further it states "The only known way to eliminate the fumes and the health problems and to stop the damage to the above-mentioned structural systems and system components is to remove and replace all of the defective drywall in the residence, which can be very costly. Finally, the presence of Chinese or defective drywall, the fumes, and the damaged systems, if not remedied, can impact the value or salability of the property."
3.  *National Association of Home Builders - Addendum* (refer to Addendum C herein). This association has gone on record as to the steps necessary to remediate the Chinese drywall problem. The article quotes the attorney for the NAHB that the methods suggested by NAHB are consistent with that of the Louisiana court.

*Description & Analyses*                          *Residence at 4075 Bonita Avenue, Miami, Florida*

Below is a chart created by Mr. Randall Bell, MAI illustrating the value of a property over time which has been subjected to a detrimental condition, such as Chinese drywall. This chart has Point A as the unimpaired value prior to discovering the detrimental condition. Point B is a loss in value due to the existence of the detrimental condition. After point B comes the assessment (Point C), repair (Point D), on-going (Point E) and market resistance/risk (Point F). This chart illustrates that the loss in value is comprised of;

1. Assessment --          Cost & Responsibility, Use & Uncertainty Factor (Risk)
2. Repair -               Cost & Responsibility, Use & Project Incentive (Risk)
3. On-going -             Cost & Responsibility Use
4. Market Resistance -    Risk



## Purpose of the Appraisal Report

The purpose of this appraisal is to estimate the diminution in the market value due to the existence of Chinese drywall, of the fee simple interest as of April 23, 2010. Also requested was an estimate solely for the diminution of value after remediation, due to the uncertainty of the previous existence of Chinese drywall.The term fee simple interest is defined below. The term market value is defined on the following page.

## Client, Intended User and Use of the Appraisal Report

The intended user of this appraisal is Patrick S. Montoya of Colson Hicks Eidson. The intended use of this appraisal is for litigation support in CASE NO. 09-038887 *Seifart v. Knauf Gips KG*.

## Definition of Interest Being Appraised

The interest appraised herein is that of the unencumbered fee simple interest, defined as follows:

> *Fee Simple Interest*: an absolute fee without limitations to any particular class of heirs, but subject to the limitations of eminent domain, escheat, police power and taxation. An inheritable estate.

# Definition of Market Value

Market Value is a major focus of most real estate assignments. Both economic and legal definitions of market value have been developed and refined. A current economic definition agreed upon by federal financial institutions in the United States of America is:

The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1    buyer and seller are typically motivated;

2    both parties are well informed or well advised and acting in what they consider their own best interest;

3    a reasonable time is allowed for exposure to the open market;

4    payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

5    the price represents a normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

The above definition is suggested by FIRREA of 1989- Title XI and its updates, the Uniform Standards of Professional Appraisal Practice (USPAP), the Appraisal Institute, the Federal Deposit Insurance Corporation and was the basis of the valuation in this appraisal.

*Source:*        Code of Federal Regulations: Title 12; - Bank and Banking
          Chapter I – Comptroller of the Currency, Department of the Treasury;
          Part 34 – Real Estate Lending and Appraisals – Subpart C – Appraisals, Section 34.42
          Definitions;
          *Revised as of January 1, 2000*

## Location and Address

The subject property is located at the north side of Bonita Avenue, east of LeJeune Road (a/k/a S.W. 42nd Avenue), Miami, Florida.

*Address*:     4075 Bonita Avenue
               Miami, FL 33133

## Legal Description

The East 5 feet of Lot 17, and of Lot 18, and the West 16 feet of Lot 19, Block 2, AMENDED PLAT OF BONITA PARK, as recorded Plat Book 8 at Page 8 of the Public Records of Miami-Dade County, Florida.

*Source:  recording instrument (ORB 26231, Page 2047)*

## Owner of Record

Armin G. Seifart and Lisa Seifart, husband and wife
4075 Bonita Avenue
Miami, Florida 333133

*Source: www.miamidade.gov/pa & recording instrument (ORB 26231, Page 2047)*

## History of the Subject Property

This property was last sold in February 2008 for $1,660,000. This sale was recorded in the Public Records in Miami-Dade County Official Records Book 26231, Page 2037. The subject property is not under contract nor listed for sale.

*Source:  www.miamidade.gov/pa & recording instrument (ORB 26231, Page 2047)*

## Site Data

The subject site is basically rectangular. There is frontage of approximately 71 feet along the north side of Bonita Avenue, a two lane asphalt paved road in average condition. Depth is approximately 113. The total area of the parcel is approximately 8,023 square feet as per the Miami-Dade County Property Appraiser's Office. The subject property is accessible from the north side of Bonita Avenue.

The site is level and at approximate street grade. Utilities available to the site are:

| | |
|---|---|
| Electric: | Florida Power and Light |
| Telephone: | AT&T |
| Water: | Miami-Dade Water and Sewer Authority |
| Sewer Disposal: | Miami-Dade Water and Sewer Authority |

## Zoning

The subject property is zoned R-1, Single Family Residential by the city of Miami, Florida. This zoning allows for the construction of single family residences. For a detailed listing of allowable uses and restrictions, refer to the the city of Miami zoning code.

*Source:*   *www.municode.com*

## Flood Zone

The subject property is located in Flood Zone X. This identification was located on Flood Insurance Rate Map, Community Panel No. 12086C0459L revised September 11, 2009. **For insurance purposes, a surveyor should be contacted to verify the exact zone by a flood elevation certificate, as well as its impact on insurance.** A copy of the flood zone map is located in the addenda to this report.

# Real Estate Assessment and Taxes

The subject property is identified by the Miami-Dade County Property Appraiser as tax folio number 01-4129-017-0140. Following is a breakdown of the assessment:

| Tax Assessment Analysis | Total Assessment | Sq.Ft. Size* | Assessment per Sq.Ft. |
|---|---|---|---|
| Assessed Land Value | $344,989 | 8,023 | $43.00 |
| Assessed Value of Improvements | $491,747 | 4,342 | $113.25 |
| Total Assessed Value | $836,736 | 4,342 | $192.71 |

*This is the size per the Miami-Dade County Property Appraiser's records.

The applicable millage rate is 22.9921. Therefore, the real estate taxes may be estimated as follows:

| Tax Calculation | Taxes |
|---|---|
| Millage Rate (Millage Rate ÷1,000) | .0229921 |
| Total Assessed Value | x $836,736 |
| Estimated Real Estate Taxes | $19,238 |

The above assessment represents the Miami-Dade County Property Appraiser's estimate of market value. Taxes are based on the assessed value. The subject property has Homestead Exemption which allows for a $25,000 reduction from the assessed value and restricts increases in the assessed value. The assessed value is $786,736.

Florida Statutes require assessments to be at 100% of market value less cost of sale. Cost of sale ranges from nothing to 15%, with the Miami-Dade Property Appraiser's office designating 15%. Based upon the existence of Chinese drywall the assessed value should be appealed as it is above what is appropriate due to this condition.

# Description of the Building Improvements

The improvements were inspected on April 23, 2010 and the public records were also examined. No plans were provided, therefore, this discussion was based upon a visual inspection. Following is a summary of the major components.

| | |
|---|---|
| Type of Building: | Two-story single family residence |
| Bedrooms/Baths/Half Baths: | 4/3/0 |
| Year Built: | 2007 |
| Size (Adjusted Area): | 4,342 square feet |
| Exterior Walls: | Concrete block with a painted stucco finish |
| Foundation: | Reinforced concrete footing |
| Roof Cover: | Barrel tile |
| Floors: | Concrete, covered by marble tile and wood |
| Interior Walls: | Painted drywall |
| Windows: | Aluminum hung, fixed pane, and French doors |
| Lighting: | Fixtures, chandeliers and recessed lighting on the interior, with sconces, dropped fixtures and spot lights on the exterior |
| Garage: | Two cars with electric door openers |
| Air Conditioning: | Multi-zone (2) central air and heating system |
| Appliances: | Side by side refrigerator (GE Monogram), oven, microwave, range, fan and hood |

*Description & Analyses*                                    *Residence at 4075 Bonita Avenue, Miami, Florida*

Others:
- Balconies with wrought iron railing
- Laundry room with wood cabinets, washer and dryer, granite tops and sink
- Built-in wood closets
- Marble tile floors and walls in some bathrooms and tile in others
- Rear patio with paddle fans and light fixtures
- Wood shutters on some windows
- Staircase has marble floors
- Master bathroom has Jacuzzi tub
- Wood kitchen cabinets with granite tops
- Walk-in shower with multiple sprayers in the master bathroom. Tiles floor and walls with pane glass windows.

## Condition of the Improvements

The subject property's improvements were constructed with Chinese drywall and at the time of inspection holes were cut into the drywall and patches of drywall had been removed. The value herein is an estimation of the diminution in value due to the existence of Chinese drywall. **This appraisal estimates the market value of the subject property with the hypothetical condition that the Chinese drywall does not exist and then estimates the loss in value due to the existence of the drywall. Also estimated was a loss in value solely for the diminution of value after remediation, due to the uncertainty of the previous existence of Chinese drywall.**

## Description of the Site Improvements

Driveway                          Brick paved driveway

Fencing/Wall:                     Wrought iron fence with concrete posts in front yard

Landscaping:                      Attractively landscaped including palm trees, round cover, hedges, shade trees and sod.

Miscellaneous:                    Swimming pool and patio (pavers)
                                  Sprinkler system
                                  Electronic entry gate

*Description & Analyses*                    *Residence at 4075 Bonita Avenue, Miami, Florida*

# Neighborhood Overview

**General Neighborhood Data**

| | |
|---|---|
| Location: | Suburban |
| Built Up: | 90% to 100% |
| Growth Rate: | Stable |
| Property Values: | Slight decrease |
| Demand/Supply: | Oversupply |
| Present Land Use: | Residential |
| Change in Present Land Use: | Not likely |
| Predominant Use: | Residential |

**Neighborhood Rating**

| | |
|---|---|
| Adequacy of Shopping: | Good |
| Employment Opportunity: | Good |
| Recreational Facilities: | Good |
| Adequacy of Utilities: | Good |
| Property Compatibility: | Good |
| Protection from Detrimental Condition: | Good |
| Police and Fire Protection: | Good |
| General Appearance of Properties: | Good |
| Appeal to Market: | Good |

**Adjacent Uses**

| | |
|---|---|
| East: | Single family residential |
| West: | Single family residential |
| South: | Single family residential |
| North: | Single family residential |

| Linkage | Distance | Access |
|---|---|---|
| Public Transportation: | Within a few blocks | Good |
| Employment Centers: | Two to three miles | Good |
| Expressway Access: | Three to five miles | Above average |
| Miami International Airport: | Five to seven miles | Above average |

# Reasonable Exposure Time

Reasonable exposure time is always presumed to precede the effective date of the appraisal. Reasonable exposure time is the estimated time the property would have been offered on the market prior to a hypothetical sale at market value on the effective date of the appraisal. The actual exposure time may differ from reasonable exposure time. Reasonable exposure time varies by type of real estate. A property may be exposed to the market for an extended period of time if it is overpriced. This analysis considers reasonable exposure time at a market related price such as the estimated market value(s) herein

In estimating a reasonable exposure time for the subject property the Multiple Listing Service was referenced for the days on market for the sales used herein and other sold residences in the area. The statistics for properties in subject zip code indicated an average of 140 days on the market for the active listings. The four sales used in the sales comparison approach ranged from four to 198 days on market with an average of 105 days. Based on these statistics the estimated reasonable exposure time is four to six months. This estimate of reasonable exposure time considers that the property would have been properly marketed and priced. It also considers the hypothetical assumption that there is no existence of Chinese drywall. If the property were not to have been priced correctly or marketed through proper channels, then it is not likely that the estimated market value and the estimated reasonable exposure time would have been achieved.

With consideration to the existence of Chinese drywall the marketing time would increase as there would be fewer buyers interested in purchasing a house with the existence of Chinese drywall. After remediation there would be more buyers that would consider a purchase, however the marketing time and price would be effected.

# Typical Purchaser of the Subject

The subject is a single family residence and the immediate area consists of similar single family residences. The typical purchaser of the subject would be an owner-user. The typical buyer of a home with the existence of Chinese drywall might be an investor or contractor that would purchase the house, make the needed restorations and then resell it after the renovations for a profit.

# Highest and Best Use

The site is valued for its highest and best use, which may be defined as follows:

> That reasonable and probable use that will support value
> as defined as of the effective date of the appraisal.

In analyzing the highest and best use, the following four questions are answered:

1.  **Legally Permissible.** What uses are legally permitted on the subject site with respect to zoning ordinances and deed restrictions?

2.  **Physically Possible.** What uses of those legally allowed are physically possible on the subject site?

3.  **Financially Feasible.** Of those uses determined to be physically possible and legally permissible, which ones will produce a positive return?

4.  **Maximally Productive.** Of those that are feasible, legally permissible, and physically possible, which will produce the highest rate of return or value?


*As Improved*

Single family residence

*As Vacant*

Single family residence