**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO:**
**ALL CASES AND**

*Payton, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:09-cv-07628 (E.D. La.)**

*Wiltz, et al. v. Beijing New Building Materials*
*Public Limited Co., et al.*
**Case No. 2:10-cv-00361 (E.D. La.)**

*Gross, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:09-cv-06690 (E.D. La.)**

*Rogers, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:10-cv-00362 (E.D. La.)**

*Amato, et al. v. Liberty Mutual Ins. Co., et al.*
**Case No. 2:10-cv-00932 (E.D. La.)**

*Hernandez, et al. v. AAA Insurance, et al.*
**Case No. 2:10-cv-03070 (E.D. La.)**

*Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a*
*Shandong Taihe Dongxin Co., Ltd., et al.*
**Case No. 2:11-cv-00080 (E.D. La.)**

*Abreu, et al. v. Gebrueder Knauf*
*Verwaltungsgesellschaft, KG, et al.*
**Case No. 2:11-cv-00252 (E.D. La.)**

*Haya, et al. v. Taishan Gypsum Co., Ltd.,*
*f/k/a Shandong Taihe Dongxin Co., Ltd., et*
*al.*
**Case No. 2:11-cv-01077 (E.D. La.)**

*Vickers, et al. v. Knauf Gips KG, et al.*
**Case No. 2:09-cv-04117 (E.D. La.)**

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR ORDERS:
(1) PRELIMINARILY APPROVING THE STIPULATION AND SETTLEMENT; (2)
CONDITIONALLY CERTIFYING THE SETTLEMENT CLASS; (3) ISSUING CLASS
NOTICE; AND (4) SCHEDULING A FAIRNESS HEARING**

This Memorandum of Law[1] is submitted jointly by proposed Class Counsel, the Court-

appointed Plaintiffs' Steering Committee ("PSC"), Counsel for Banner Supply Co., Banner

Supply Co. Pompano, LLC, Banner Supply Co. Port St. Lucie, LLC ("Banner PSL"), Banner

Supply Co. Ft. Myers, LLC, Banner Supply Co. Tampa, LLC, Banner Supply International,

LLC, and any other entity insured under the Banner Insurance Policies (collectively, "Banner"),

and Counsel for Banner's insurers, including Chartis,[2] FCCI,[3] Hanover,[4] and Maryland Casualty[5]

("Banner's Insurers"), in support of their Joint Motion for Preliminary Approval of the

Settlement and Conditional Certification of a Settlement Class brought pursuant to Federal Rules

of Civil Procedure 23(a), 23(b)(3) and 23(e).  The PSC, Banner, and Banner's Insurers shall be

referred to collectively as the "Settling Parties."

---

[1]   Capitalized terms used in this memorandum shall have the same meaning as those
defined in the Stipulation and Agreement of Settlement executed on June 10, 2011 (the
"Settlement"), attached hereto as Exhibit A and specifically incorporated herein by reference.

[2]   "Chartis" includes Chartis Specialty Insurance Company (formerly known as
"American International Specialty Lines Insurance Company"), Illinois National Insurance Co.,
National Union Fire Insurance Company of Pittsburgh, Pa., Commerce & Industry Insurance
Co., and any other sister entities or entities related to the foregoing or to American International
Group, Inc.

[3]   "FCCI" includes FCCI Insurance Company, FCCI Commercial Insurance Company,
National Trust Insurance Company, FCCI Mutual Insurance Holding Company, FCCI Group,
Inc., FCCI Insurance Group, Inc., Monroe Guaranty Insurance Company, FCCI Services, Inc.,
FCCI Advantage Insurance Company, Brierfield Insurance Company, and FCCI Agency, Inc.

[4]   "Hanover" includes Hanover American Insurance Company and Hanover Insurance
Group, Inc.

[5]   "Maryland Casualty" includes Maryland Casualty Company and all companies in the
Zurich North America group of insurance companies.

The Settling Parties have negotiated a Settlement that seeks to resolve all claims against Banner and its Insurers.  The Settling Parties seek entry of an Order[6] finding preliminarily that: (1) the Settlement is fair, reasonable and adequate; (2) the requirements for conditionally certifying the Class under Rule 23(a) and Rule 23(b)(3) have been met; and (3) Class Members shall be notified of the terms of the Settlement and of their rights in connection therewith.

In addition, the Settling Parties respectfully request that the Court:  (1) approve the form of Class Notice described in the Notice of Pendency and Proposed Settlement of Banner Class Action;[7] (2) approve the form of Summary Notice;[8] (3) schedule a Fairness Hearing to determine whether the Settlement should be given final approval; and (4) establish dates for the dissemination of Class Notice, the submission of opt out notices and objections to the Settlement, and other relevant deadlines.

## I.      INTRODUCTION

The Settlement now before the Court for preliminary approval provides that Banner's Insurers will deposit, into an Escrow Account, funds representing the gross proceeds of all of Banner's Triggered Policies, less sums paid or committed to be paid pursuant to Pending Settlements and Prior Settlements ("Settlement Funds").  The Settlement Funds total $54,475,558.30, plus any interest earned in the Escrow Account.  The Settlement Funds are for the benefit of a nationwide Class consisting of all persons or entities with claims, known and

---

[6]   The Preliminary Approval Order is attached hereto as Exhibit B.

[7]   The Class Notice is attached hereto as Exhibit C.

[8]   The Summary Notice is attached hereto as Exhibit D.

unknown, against the Settling Defendants arising from, or otherwise related to Chinese Drywall[9] purchased from, supplied, distributed, marketed, used, sold and/or delivered by Banner.

The lawsuit captioned *Vickers v. Knauf Gips, KG, et al.*, Case No. 09-04117 (E.D. La.), is a putative class action brought on behalf of homeowners in the United States whose properties contain Chinese Drywall that was allegedly supplied by Banner.  *Payton v. Knauf Gips, KG, et al.*, Case No. 09-07628 (E.D. La.), is a separate putative class action brought on behalf of homeowners in the United States whose properties contain defective drywall that was manufactured by the Knauf Group[10] or companies in the Knauf Group, and distributed, supplied, imported, exported, installed, and/or sold by the named defendants.[11]  On March 18, 2011, in *Vickers* and *Payton*, the PSC filed Plaintiffs' Substituted Motion for Certification of a Florida

---

[9]   The Settlement defines Chinese Drywall as "any and all drywall products purchased from, supplied, distributed, marketed, used, sold and/or delivered by Banner alleged to be defective and manufactured, in whole or in part, in China, or that include components manufactured, in whole or in part, in China, including, but not limited to, drywall manufactured by Knauf Gips KG; Knauf Plasterboard (Tianjin) Co., Ltd.; Knauf Plasterboard (Wuhu), Co., Ltd.; Gebrueder Knauf Verwaltungsgesellschaft, KG; Guangdong Knauf New Building Materials Products Co., Ltd.; Beijing New Building Materials Public Ltd. Co.; Taishan Gypsum Co., Ltd. f/k/a/ Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard Co., Ltd.; Pingyi Zhongxin Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co., Ltd.; Crescent City Gypsum, Inc.; and any other manufacturer of Chinese drywall."  Settlement at Section 1.6.

[10] The "Knauf Group" shall mean Knauf Gips KG; Knauf Plasterboard (Tianjin) Co., Ltd.; Knauf Plasterboard (Wuhu), Co., Ltd.; Gebrueder Knauf Verwaltungsgesellschaft, KG; and Guangdong Knauf New Building Materials Products Co., Ltd. and all of their related companies.

[11] Certain builders and others filed motions to intervene (the "Interveners") in the *Vickers* and/or *Payton* litigation.  *See* Motions to Intervene by: Taylor Morrison Services, Inc., *et al.* (Rec. Doc. No. 8128); Centerline Homes Construction, Inc., *et al.* (Rec. Doc. No. 8131); Lennar Corporation (Rec. Doc. No. 8135); D.R. Horton, Inc. (Rec. Doc. No. 8139); Meadows of Estero-Bonita Springs Limited Partnership (Rec. Doc. No. 8274); Certain Homebuilders (Rec. Doc. No. 7804); JWR Construction Services, Inc. (Rec. Doc. Nos. 8087, 8088); George, Inc. (Rec. Doc. No. 8132); Heights Properties, LLC (Rec. Doc. No. 8134); Regatta Construction, LLC (Rec. Doc. No. 8145); Lavish Holdings (Rec. Doc. No. 8172).  The Court granted the intervention motions.  *E.g.*, Rec. Doc. Nos. 8136, 8137, 8179, 8397, 8180, 8202,  8203, 8272.  The Interveners will have standing and an opportunity to participate in the allocation process.

Homeowner Class for Claims Against Banner Supply Co. (Rec. Doc. No. 8195).  On March 18, 2011, the PSC also filed Plaintiffs' Substituted Motion for Certification of a Florida Homeowner Class and a Louisiana Homeowner Class for Property Damage Claims Against Knauf in *Payton* (Rec. Doc. No. 8197).  The Settling Parties have reserved all claims against Knauf and other manufacturers of Chinese Drywall; Knauf and other manufacturers are not parties to the Settlement.

Proposed Class Counsel and the PSC believe that the Settlement before this Court is in the best interests of the Class in view of a variety of factors, including the estimated damages suffered by the Class; both the complexity of and, as set forth more fully herein, risks attendant to Plaintiffs' demonstration that those damages were causally linked to Banner's alleged acts and/or omissions; and the delays inherent in litigating thousands of individual claims against Banner.  This Settlement was negotiated at arm's length over a period of many months, with oversight by the Court.

The Settling Parties respectfully submit that the Settlement is fair, reasonable and adequate under the governing standards for evaluating class action settlements in the Fifth Circuit.  Moreover, certification of the proposed Class is appropriate pursuant to Federal Rule of Civil Procedure 23, and the proposed notice program satisfies the requirements of due process.  Indeed, the proposed individual and summary forms of notice are consistent with the forms of notice used and routinely recognized as satisfying due process in class actions.  As set forth below, all prerequisites for preliminary approval of the Settlement and conditional certification of the proposed Class have been met, and the Settling Parties respectfully submit that the Joint Motions for Preliminary Approval of the Settlement and to Stay Claims as to Banner should be granted.

## II.   BACKGROUND

### A.   Chinese Manufacturers Exported Defective Chinese Drywall Into the United States

In the aftermath of Hurricanes Katrina and Rita in 2005, this country faced a critical shortage of drywall for the reconstruction of homes and other structures damaged by the storms. Beginning in the fall of 2005, hundreds of millions of square feet of Chinese drywall were exported to the United States, sold to distributors and suppliers, resold to builders and installers, and installed in thousands of properties domestically, but primarily in Florida, Louisiana, Alabama, Mississippi, Texas and Virginia.[12]

Numerous governmental agencies studied Chinese Drywall and found it to be defective because it emits noxious substances in the homes where it was installed, allegedly causing property damage, including damage to electrical wiring, corrosion of pipes, and damage to or destruction of air-conditioners, refrigerators, HVAC systems, and other appliances.[13]  The Remediation Guidance of the Department of Housing and Urban Development ("HUD") and the U.S. Consumer Product Safety Commission ("CPSC"), have made various recommendations for the repair of properties impacted by Chinese Drywall, including the removal of problematic drywall, fire safety alarm devices, electrical distribution components (including receptacles,

---

[12]   The Gypsum Association reports that 300 million square feet of Chinese drywall were imported from 2006-2007.  *See* Fire, Casualty and Surety Bulletin (The National Underwriter Co. Mar. 1, 2010) at 3.  Knauf acknowledges in its manufacturer profile form that it exported 5,286,015 square meters (or 56,898,192 square feet) of board to the U.S. between 2005 and 2006.

[13]   *In re Chinese Manufactured Drywall Prods. Liab. Litig. (Germano)*, 706 F. Supp. 2d 655, 664-66 (E.D. La. 2010) (Findings of Fact and Conclusions of Law); *In re Chinese Manufactured Drywall Prods. Liab. Litig. (Hernandez)*, 2010 WL 1710434, *8-9 (E.D. La. Apr. 27, 2010) (Findings of Fact and Conclusions of Law).

switches and circuit breakers), gas service piping and fire suppression sprinkler systems.[14]  In these MDL proceedings, this Court also issued certain findings of fact and conclusions of law regarding the repair of property impacted by Chinese Drywall, including that all electrical wiring in property impacted by Chinese Drywall must be removed.[15]

Further, some individuals have alleged that they suffered bodily injury as a result of exposure to Chinese Drywall, including complaints of "headaches, nosebleeds, difficulty breathing and other physical afflictions believed to be caused by the Chinese Drywall."[16] However, the CPSC and the Centers for Disease Control and Prevention's National Center for Environmental Health have found no evidence that exposure to Chinese Drywall causes any ill health effects.

**B.      Chinese Drywall Multidistrict Litigation Proceedings**

On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from Chinese Drywall to the United States District Court for the Eastern District of Louisiana for coordinated and consolidated pretrial proceedings in MDL 2047 pursuant to 28 U.S.C. § 1407.[17]  The Court has held regular monthly status conferences and it has entered 24 separate Pretrial Orders.[18]  To date, more than 9,400 entries have been recorded on the docket in this case.

---

[14]      *See* CPSC's Remediation Guidance for Homes with Corrosion from Problem Drywall as of March 18, 2011, http://www.cpsc.gov/info/drywall/Remediation031811.pdf.

[15]      *See Germano,* 706 F. Supp. 2d at 671-87 (Findings of Fact); *Hernandez*, 2010 WL 1710434, at *20-35 (Findings of Fact); Minute Entry at 14, Mar. 23, 2011 (Rec. Doc. No. 8331); Transcript of Status Conference at 18:4-19:14, March 23, 2011.

[16]      Order Appointing Special Master (Rec. Doc. No. 505) at 1.

[17]      *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346, 1347 (J.P.M.L. 2009) (Rec. Doc. No. 1).

[18]      *E.g.*, Minute Entry at 4, Dec. 2, 2010 (Rec. Doc. No. 6525).

This Court has worked tirelessly to manage the nationwide litigation of Chinese Drywall claims.  The Court's efforts have included the coordination and oversight of pretrial discovery and related motion practice for thousands of individual cases, as well as the Omni Complaint class actions filed in the MDL.[19]  In the myriad of lawsuits transferred to this Court, dozens of motions have been filed by the parties addressing a variety of issues, including motions for class certification in *Germano, Payton* (Knauf), and *Payton/Vickers*, and motions for Florida and/or Louisiana Homeowners classes for damages and/or declaratory relief,[20] motions to intervene, motions for default judgment, motions to dismiss for lack of personal jurisdiction, motions for summary judgment, and a motion to establish a Plaintiffs' litigation expense fund.[21]

For purposes of coordination, consistency and global treatment of Chinese Drywall claims, the Court has advised the parties that it has consulted with numerous state court judges and other federal judges also overseeing Chinese Drywall litigation, including the Honorable Joseph Farina from the 11th Judicial Circuit Court of Florida, the Honorable J. Scott Vowell

---

[19]   *See, e.g., Payton, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.) (Omnibus I, I(A), I(B), I(C)) (involving claims against the Knauf Defendants); *Wiltz, et al. v. Beijing New Bldg. Materials Pub. Ltd. Co., et al.*, Case No. 2:10-cv-00361 (E.D. La.) (Omnibus II, II(A), II(B), II(C)) (involving claims against non-Knauf manufacturers such as Taishan and BNBM); *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06690 (E.D. La.) (original complaint, Omnibus III, III(A)) (asserting alternative liability theory against all known manufacturers for drywall that cannot be traced to a particular manufacturer); *Rogers, et al. v. Knauf Gips, KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.) (Omnibus IV, IV(A), IV(B), IV(C)) (involving claims against the Knauf Defendants); *Amato, et al. v. Liberty Mut. Ins. Co.*, Case No. 2:10-cv-00932 (E.D. La.) (Omnibus V); *Hernandez, et al. v. AAA Ins., et al.*, Case No. 2:10-cv-03070 (E.D. La.) (Omnibus VI); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 2:11-cv-00080 (E.D. La.) (Omnibus VII); *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 2:11-cv-00252 (E.D. La.) (Omnibus VIII); *Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 2:11-cv-01077 (E.D. La.) (Omnibus IX).

[20]   Rec. Doc. Nos. 3293 (*Germano*), 5567 (*Silva*), 5611 (*Vickers/Payton*), 5612 (*Payton*), 8125 (*Silva*), 8195 (*Vickers/Payton*), 8197 (*Payton*).

[21]   *See* Minute Entry at 24, Dec. 2, 2010 (Rec. Doc. No. 6525).

from the 10th Judicial Circuit Court of Alabama, the Honorable Mary Jane Hall from the 4th Judicial Circuit Court of Virginia, and the Honorable Mark Davis from the United States District Court for the Eastern District of Virginia.[22]

In order to accomplish its goals, the Court appointed the PSC and a Plaintiffs' Liaison Counsel ("PLC") to prepare and respond to pleadings and motions; engage in discovery, pretrial preparation, and trial and settlement of cases; manage the MDL docket; establish and administer a document depository; communicate with individual Plaintiffs and their counsel; liaison with Defendants; and attend court status conferences and hearings.[23]  The Court also appointed a Defendants' Liaison Counsel[24] and a Homebuilders and Installers Liaison Counsel[25] to assist in these efforts.  In November 2009, the Court appointed a Special Master "to explore opportunities for an ultimate resolution of the instant matter as to any and all interested parties," recognizing that "some or all parties [we]re interested in exploring a global resolution of the matter as it affect[ed] them at th[at] stage of the proceeding."[26]  In March 2010, the Court appointed State and Federal Coordination Committees "to assist the Court, litigants and judicial system to facilitate coordination between this MDL and the various state court cases."[27]  Finally, the Court

---

[22]   *E.g.*, Transcript of Status Conference at 2:17-3:17, Oct. 14, 2010 (comments of J. Fallon praising "the help of state court judges:" "I've counted on their wisdom, on their suggestions in trying to gather all of the cases and move them forward."); Transcript of Status Conference at 7:5-17, Mar. 23, 2011.

[23]   *See* Pretrial Order No. 3 (appointing Plaintiffs' Liaison Counsel, Russ Herman); Pretrial Order No. 8 (creating the PSC and appointing Lead Counsel for Plaintiffs, Arnold Levin).

[24]   *See* Pretrial Order No. 4 (appointing Defendants' Liaison Counsel).

[25]   *See* Pretrial Order No. 18 (appointing Homebuilders and Installers Liaison Counsel).

[26]   Order Appointing Special Master (Rec. Doc. No. 505).

[27]   *See* Pretrial Order No. 19 (appointing a Plaintiffs' State/Federal Coordination Committee and a Defendants' State/Federal Coordination Committee).

appointed an Insurer Steering Committee as well as Co-Lead Counsel for the First-Party Insurer Subcommittee.[28]

Through the vehicle of "Omni" complaints, the Court has assisted the parties in seeking recourse against the manufacturers, the parties ultimately responsible for defective Chinese Drywall that is the basis for all these claims, including the claims against Banner.  Complaints have been filed and served upon Chinese Drywall manufacturers including the Knauf Group; Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd.[29] ("Taishan"); BNBM and related entities; and China National Building Materials Co., Ltd. and related entities.[30]  Absent the Omni complaints, few individual Plaintiffs, if any, would have been able to perfect service of process under the Hague Convention on the foreign manufacturers of the Chinese Drywall installed in their properties.  According to the PSC, the costs of translation of the complaints and service on these foreign Defendants exceed $100,000 for each complaint in the litigation.

In the spring of 2010, the Court resolved ten bellwether cases in Virginia and Louisiana,[31] making numerous findings of fact regarding the appropriate scope of remediation.

The parties are presently engaged in widespread jurisdictional discovery of the foreign manufacturer Defendants that have challenged this Court's power to adjudicate claims against them resulting from the Chinese Drywall they produced, certified as safe and fit for use, and

---

[28]   *See* Pretrial Order No. 20 (appointing Insurer Steering Committee and Co-Lead Counsel for the First-Party Insurer Subcommittee).

[29]   On September 10, 2007, Shandong Taihe Dongxin Co., Ltd., which was a subsidiary company controlled by BNBM, changed its name to Taishan Gypsum Co., Ltd.

[30]   *See* fn. 21, *supra*.

[31]   *See Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 2:09-cv-06687 (E.D. Va. May 11, 2010.) (Rec. Doc. No. 3013) (seven cases); *Hernandez v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06050 (E.D. La. May 11, 2010) (Rec. Doc. No. 3012) (one case).  Two additional bellwether cases, *Campbell v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.), were settled on the eve of trial on June 18, 2010.

imported, marketed, distributed, and/or sold in this country.  The PSC and other parties have served extensive written discovery on all of the Defendants, reviewed tens of thousands of documents, and taken depositions of myriad officers representing Knauf and Taishan entities in Hong Kong, Germany, the United Kingdom and elsewhere.  The PSC has also taken discovery of other Defendants in various cities throughout the United States.  As a result of these painstaking efforts, the PSC has laid the foundation to establish liability and jurisdiction over these foreign manufacturer Defendants.  However, numerous motions to dismiss for lack of personal jurisdiction remain pending.

### C.    Banner's Involvement in Chinese Drywall Litigation

Banner purchased approximately 1.4 million sheets of Chinese Drywall, manufactured primarily by the Knauf Group.  Chinese Drywall was sold to Defendant Rothchilt International, Ltd. and shipped to Defendant La Suprema Enterprise, Inc.  Defendant La Suprema Trading, Inc. then sold the Chinese Drywall to Banner.  Banner then sold the Chinese Drywall, including the Knauf-manufactured Chinese Drywall ("Knauf Drywall") throughout the State of Florida.

### 1.    Plaintiffs' Allegations Against Banner

The PSC has alleged that many homeowners were forced to leave their residences due to the foul odors emitted from Chinese Drywall and the corrosive effects the drywall had on certain metal components in the home, including HVAC systems, electrical wiring, alarm systems, plumbing, electronics, appliances, utensils, hardware, mirrors and other home furnishings.  To date, thousands of actions have been filed against Banner in state and federal courts throughout the country, as well as in this MDL.

The PSC contends that by October 2006, Banner was aware that builders were complaining about odors emitted from the board and that Banner was advised by a homebuilder

that the "very bad smell[s]" were "20 times stronger" than all other drywall.[32]  The PSC also

claims that by November 2006, Banner received requests to remove the Chinese Drywall and

replace it with domestic board.  The PSC further contends that even after becoming aware of the

smell of Chinese Drywall, Banner sold and delivered it for installation in Plaintiffs' properties

without advising Plaintiffs of the odor or of any alleged dangers and/or defects in the Chinese

Drywall.

        In early 2007, Banner entered into a confidential settlement agreement with Knauf

whereby Knauf agreed to replace approximately 44,000 pieces of Knauf Drywall manufactured

by Knauf with domestic board.  The PSC claims that Banner did not notify any Plaintiffs or the

public of the existence of this settlement.

### 2.        Banner's Defenses to the Claims Asserted

        Banner has denied liability for all activities involving its purchase, supply, distribution,

marketing, use, sale and/or delivery of Chinese Drywall, and has asserted and continues to assert

defenses in the Litigation.  However, Banner and its Insurers recognize the risk of an adverse

judgment.  Therefore, Banner and Banner's Insurers, in good faith, attempted to and did

negotiate this global settlement for Banner within the limits of the Triggered Policies.  Banner

maintains it had no knowledge that the Chinese Drywall was defective.  Banner merely

distributed drywall manufactured in China, primarily by the Knauf Group, after receiving

certifications and warranties from Knauf that the drywall was safe and not defective in any way.

Banner contends that Banner's warehouse personnel handled the Chinese Drywall daily and

never complained about any odor.  Likewise, Banner's customers did not raise any issues about

odors emanating from the Chinese Drywall even though they handled and installed the Chinese

---

[32]  Plaintiff's Ex. 58 *Seifart v. Banner Supply Co.*, 09-38887 CA 01 (42) (Fla. Cir. Ct. June 8, 2010).

Drywall daily.  It was not until October 2006 that Banner received any notice regarding any odor being emitted from Chinese Drywall.

Banner also contends that it acted reasonably in response to complaints about the odor. Banner contacted La Suprema and the Knauf Group and advised them of concerns raised by a small number of homeowners in connection with the odor emanating from the Knauf Drywall. The Knauf Group is a global powerhouse comprised of several substantial companies, which are all owned, operated and controlled as a singular enterprise by the members of the Knauf family.[33]  The Knauf Group is known worldwide for its expertise in manufacturing building supplies, including drywall.  Knauf's reputation has earned the company billions of dollars in profits.  Banner's reaching out to the Knauf Group to inquire about the smell emitting from the Knauf Drywall was the right and reasonable thing to do.

Knauf did not ignore Banner's concerns.  Instead, Knauf sent its global head of research and development, Prof. Hans-Ulrich Hummel, to inspect and take samples of the Knauf Drywall. The Knauf Group then arranged to have what the Knauf Group claimed to be "independent testing" results sent to Banner.  These alleged "independent" test results reported to Banner and others that there was no reason for concern about complaints regarding the odor because (1) the odor was normal for drywall manufactured in China; and (2) the drywall was completely safe and would cause no harm.[34]  Knauf has recently admitted that these assertions were false when made.[35]  Knauf Group's representative, Prof. Hummel, holds a Ph.D. in Inorganic Chemistry; is a

---

[33]  Case C-407/08 P, Knauf Gips KG, formerly Gebr. Knauf Westdeutsche Gipswerke KG v. European Commission (July 1, 2010), ¶¶ 64-93.

[34]  Letter from Mark Norris, Commercial General Director of Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Insulation China to Salomon Homsany Abadi, Rothchilt Int'l Ltd. (Nov. 29, 2006) and attached report from the Center for Toxicology and Environmental Health, L.L.C.

[35]  Testimony of Knauf Gips Representative (June 8, 2011).

renowned expert in drywall chemistry; and knew, or should have known, that the impurities in Knauf Drywall would likely cause widespread property damage.[36]  Unlike the Knauf Group, Banner had no specialized knowledge whatsoever about the chemical composition of Knauf Drywall or the corrosive effects that could result from the same.

Banner stopped selling Knauf Drywall in November 2006.  In response to Banner's request to replace the Knauf Drywall with domestically produced drywall, the Knauf Group prepared a take-it-or-leave-it confidential settlement agreement wherein the Knauf Group offered to exchange American-made drywall for the Knauf Drywall if, and only if, Banner agreed: (1) to release all Knauf Group entities worldwide from any liability associated with Knauf Drywall; and (2) to never speak of the deal Knauf offered.

Banner has since learned, as a result of discovery taken from the Knauf Group recently ordered by this Court, that the Knauf Group, unbeknownst to Banner at the time, made material misrepresentations to Banner about the fitness and safety of its drywall in order to induce Banner to sign the confidential settlement agreement.  Specifically, Knauf admits that it knew its drywall was actually defective at the same time in 2006 and 2007 when the Knauf Group told Banner that Knauf Drywall was safe and fit for normal use.[37]  Knauf knew that the impurities in Knauf Drywall would cause and were causing serious and widespread property damage.  Furthermore, Knauf secretly conducted additional tests on its Chinese Drywall and discovered that the drywall was made from gypsum contaminated with sulfur-containing shale that would emit sulfurous gases upon disintegration.[38]  Knauf's claim that it had hired "independent experts" to test the

---

[36]   *See* Testimony of Knauf Gips Executive (Oct. 19, 2010).

[37]   *See* Testimony of Knauf Gips Executive 327:13-19 (Oct. 20, 2010).

[38]   Visit report of LuNeng Mine.doc by Dr. Yuan in 12/11/2006, KNAUFGIPS0000772-KNAUFGIPS0000773.

drywall was also materially false.  Rather than being "independent," these experts were retained by Knauf's lawyers, so that drafts of their "independent" reports would be shielded from view by claims of attorney-client privilege.  Despite efforts by Banner and the PSC, Knauf continues to withhold drafts of these "independent" reports under the guise of attorney-client privilege.  Finally, Knauf's representatives also commissioned testing by other agencies whose test results showed much higher concentrations of problematic substances contained within Knauf Drywall.  Knauf hid these facts from Banner and others.[39]  Had Banner known these facts, Banner would not have entered into the confidential settlement agreement with Knauf.

Instead of taking responsibility for Knauf Drywall and standing behind the smaller companies within the chain of distribution, such as Banner, Knauf has chosen to assert technical defenses to the very substantial claims against it including, but not limited to this Court's lack of jurisdiction over Knauf.  As a result, Banner has been forced to stand trial alone, left to address thousands of claims for which Knauf is ultimately responsible.  Banner has also been tried in the court of public opinion.  The media has widely reported on Banner's agreement with the Knauf Group, inaccurately implying that Banner conspired with Knauf in a concerted effort to conceal information about Knauf Drywall.[40]  None of these press reports explain how Knauf deceived Banner by falsely representing that its drywall was safe and not defective in any way, and that the smell was normal for Chinese-manufactured drywall.  Banner's business and reputation have been ruined as a result.  Significant customers have refused to do business with Banner, believing incorrectly that Banner possessed the same knowledge as Knauf, when in fact, Knauf

---

[39]  *See* Testimony of Knauf Gips Executive (Oct. 19, 2010) (discussing testing at the Fraunhofer Institute).

[40]  Aaron Kessler and Joaquin Sapien, *A Builder's Secret: Defective Chinese Drywall*, Herald Tribune, June 1, 2010, at A1.

knowingly concealed material information from Banner.  Consequently, Banner is left with little else to contribute to this Settlement other than the totality of its available insurance proceeds.

### D.    Reasons for the Settlement

The Settlement Fund of $54,475,558.30 represents all of Banner's remaining available insurance for claims relating to Chinese Drywall.  This contribution is a significant recovery for Plaintiffs in light of, among other things, the procedural posture of the litigation, the range of damage estimates for the Settlement Class, the amount of available insurance proceeds, Banner's financial ability to meet the claims at issue, the Insurers' defenses, and all the material factual information revealed during discovery and settlement negotiations.

Although proposed Class Counsel and the PSC believe in the merits of the case against Banner and in their ability to prevail, the Settling Parties recognize that Plaintiffs would face serious obstacles to establishing both liability and damages should the case proceed to trial.  For instance, Banner was prepared to, and would, strenuously argue that Plaintiffs could not establish causation for bodily injury damages, which would materially reduce the potential range of recovery.  Moreover, if the cases against Banner were to proceed to trial, Banner would seek to place blame on the Knauf Group given the recent facts uncovered concerning the misrepresentations Knauf has made to Banner and others.  Defendants would likely appeal any judgment favorable to the Class, imposing significant additional delay on the payment of any recovery to individual Class Members, as well as a drain on the limited resources available for any recovery.

Therefore, the Settling Parties respectfully request that the Joint Motion for an Order Staying Claims as to Banner and the Joint Motion for an Order: (1) Preliminarily Approving Stipulation and Agreement of Settlement; (2) Conditionally Certifying Class; (3) Issuing Class Notice; and (4) Scheduling a Fairness Hearing be granted not only because, as will be set forth

herein, public policy favors the settlement of such complex class actions, but also because the Settlement constitutes an excellent result for the Settlement Class. It is fair, reasonable and adequate, was negotiated at arm's length with oversight from the Court, and covers a Class of all persons or entities with claims against Banner.

The Settling Parties are seeking the appointment of a Special Master to assist the Court in the development of a fair and reasonable plan of allocation of the Settlement proceeds based on objective criteria. As set forth in the Notice, all Class Members will be provided an opportunity to comment on and/or object to said Plan. Interveners in these Actions will also have standing to comment on and/or object to allocation, and they will have an opportunity to participate in allocation. The Plan will allocate the Settlement Funds for the remediation of Plaintiffs' properties or for reimbursement of costs spent to remediate Plaintiffs' properties, based on the types of Chinese Drywall installed therein. It is anticipated that upon approval of the Settlement following a duly noticed Fairness Hearing, Class Members and Interveners will be sent a Proof of Claim form on which to provide proof and identity of Chinese Drywall in their properties and/or costs spent to remediate the same. In light of the foregoing, it is respectfully requested that the Court enter Orders preliminarily approving the Settlement, conditionally certifying the Settlement Class and staying claims as to Banner.

## III.     ARGUMENT

### A.     The Settlement Is in the Best Interest of the Class

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a class action. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986). In determining whether to approve the Settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of complex class action lawsuits. *See, e.g.*, *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d

1326, 1331 (5th Cir. 1977); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La.

2007) (Fallon, J.); *Braud v. Transp. Serv. Co. of Illinois*, 2010 WL 3283398, at *3 (E.D. La.

Aug. 17, 2010) (Knowles, Mag. J.).[41]  This is, in part, because of the complexity and size of class

actions:

> Particularly in class action suits, there is an overriding public interest in favor of settlement. . . . It is common knowledge that class action suits have a well deserved reputation as being most complex.  The requirement that counsel for the class be experienced attests to the complexity of the class action. . . . In these days of increasing congestion within the federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources.

*Cotton*, 559 F.2d at 1331 (citations omitted); *see also Murphy Oil*, 472 F. Supp. 2d at 843 ("The

public interest favoring settlement is especially apparent in the class action context where claims

are complex and . . . could lead to years of protracted litigation and sky-rocketing expenses.").

> In addition:

> Complex litigation - like the instant case - can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.  Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements in all types of litigation, not just class actions. . . . Although class action settlements require court approval, such approval is committed to the sound discretion of the district court.

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citations omitted).  Courts have

recognized that certification of a class for settlement purposes is beneficial in resolving major

class action disputes.  *See, e.g.*, *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173-77 (5th Cir.

1979).

The first step in determining whether to grant preliminary approval to a class settlement

is for "the Court [to] make[] a preliminary fairness evaluation of the proposed settlement."  *Cope*

---

[41]  "Federal Courts look with great favor upon the voluntary resolution of litigation through settlement. . . . This rule has particular force regarding class action lawsuits."  *Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980).

*v. Duggins*, 2001 WL 333102, at *1 (E.D. La. Apr. 4, 2001) (Fallon, J.) (citing Manual for

Complex Litigation (Third) § 30.41 (1995)).  The Court must "evaluate the likelihood that the

Court would approve the settlement during its second review stage, the full fairness hearing."  *Id.*

In so doing, "the Court will examine the submitted materials and determine whether the

proposed settlement appears fair on its face."  *Id.*; *see In re Corrugated Container Antitrust*

*Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).

     At the preliminary stage, the Court's review is less stringent.  *See, e.g.*, *In re OCA, Inc.*

*Sec. and Der. Litig.*, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008) ("As this motion is for

preliminary approval of a class action settlement, the standards are not as stringent as those

applied to a motion for final approval.") (citing *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86

(E.D.N.Y. 2007)); Manuel for Complex Litigation (Fourth), § 21.63 (2004) ("At the stage of

preliminary approval, the questions are simpler, and the court is not expected to, and probably

should not, engage in analysis as rigorous as is appropriate for final approval.").

     As set forth above, the Settling Parties arrived at an agreement in principal during arm's

length negotiations.  This agreement was subsequently memorialized in the Settlement,

submitted herewith.  All individuals and entities with claims against Banner are invited to be part

of the Class; no interests are excluded.  The Court may presume, therefore, that the proposed

Settlement is fair and reasonable, as it is the result of arm's length negotiations.  *See Camp v.*

*Progressive Corp.*, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004).  The Settlement contains

the material economic terms of the agreement, the manner and form of notice to be given to the

Class, the contingencies or conditions to the Settlement's final approval, and other terms.  The

precise allocation of the Banner Insurance Proceeds will be determined by the Court at a future

date following the Fairness Hearing based on objective criteria and an opportunity for Class

Members to present Proofs of Claim.

The PSC possessed adequate information concerning the strengths and weaknesses of the

litigation against Banner after extensive document discovery, the briefing on Defendants'

motions to dismiss and for summary judgment, the trial of claims asserted against Banner by

homeowners impacted by Chinese Drywall, and the exchange of information during negotiation

sessions, including information concerning damage calculations.  In addition, the proposed Class

Counsel, the Court-appointed PSC, its individual counsel members, and the PLC are highly

competent counsel, all with many years of experience litigating complex class action and

multidistrict cases.  Finally, as explained above, the complexity, expense, uncertainty, and likely

duration of the litigation also militate in favor of completing the settlement process.  Therefore,

proposed Class Counsel, the PSC, Banner and Banner's Insurers respectfully submit that all of

the above-cited circumstances support preliminary approval of the proposed Settlement.

### B.    The Requirements of Rule 23 Have Been Met for Conditional Certification of the Settlement Class

For purposes of conditionally certifying the Rule 23(b)(3) Class sought by the Parties, the

Manual For Complex Litigation (Fourth), § 21.632 advises:

> If the case is presented for both class certification and settlement approval, the
> certification hearing and preliminary fairness evaluation can usually be combined.
> The judge should make a preliminary determination that the proposed class satisfies
> the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).

This comports with the Supreme Court's holding in *Amchem* that "[s]ettlement is relevant to a

class certification," but the requirements of Rule 23(a) and 23(b)(3) must still be met.  521 U.S.

at 619-20.  However, when a court is "[c]onfronted with a request for settlement-only class

certification, a district court need not inquire whether the case, if tried, would present intractable

management problems."  *Id.*

In this case, all of the requirements for Rule 23(a) have been met.  Rule 23(a) requires that:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  As determined by *Amchem*, the issue of class management is not relevant for purposes of certifying the Class.

### 1.    Numerosity

Thousands of Plaintiffs have filed suit against Banner alleging damages sustained as a result of Banner's involvement in the distribution of Chinese Drywall for installation in Plaintiffs' homes.  Banner's records indicate that it purchased more than 1.4 million sheets of Chinese Drywall for distribution in this country.  Under these circumstances, the numerosity factor specified in Rule 23(a)(1) is satisfied.  *See Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978) (a class consisting of 1,000 members "clearly satisfies the numerosity requirement").  *See also* 1 William B. Rubenstein, Alba Conte, and Herbert B. Newberg, Newberg on Class Actions § 3:3 (4th ed. 2010) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

### 2.    Commonality

The commonality requirement of Rule 23(a)(2) is easily met in this case.  The Judicial

Panel on Multidistrict Litigation ordered that these actions be consolidated in this MDL based on

"the commonality of facts in the various cases."[42]  Questions surrounding Banner's role in

distributing Chinese Drywall it purchased from Defendants Knauf and Taishan are issues

common to all Plaintiffs, satisfying this element of Rule 23(a).  *See Califano v. Yamasaki*, 442

U.S. 682, 701 (1979) (finding class relief "peculiarly appropriate" when the "issues involved are

common to the class as a whole" and they "turn on questions of law applicable in the same

manner to each member of the class"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.

1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a

common core of salient facts coupled with disparate legal remedies within the class."); 1

Newberg on Class Actions § 3:1 ("Convenience, uniformity of decision, and judicial economy

are achieved through the class action device by litigating common issues only once on behalf of

all class members.").

### 3. Typicality

The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense

of the class representative, and not to the specific facts from which it arose or the relief sought."

1 Newberg On Class Actions § 3:13 (quoting *Weinberger v. Thornton*, 114 F.R.D. 599, 603

(S.D. Cal. 1986)).  In other words, courts must determine "whether other [Class] members have

the same or similar injury, whether the action is based on conduct which is not unique to the

named plaintiffs, and whether other class members have been injured by the same conduct."  *Id.*

(quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  The measure of

whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged

---

[42]   *Hernandez*, 2010 WL 1710434 at *1 (Findings of Fact).

from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members.  *See, e.g., Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156-57 (1982).  The typicality requirement has been liberally construed by the federal courts.  *See, e.g.*, *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Each of the Plaintiffs in this case is seeking money from Banner for the costs of remediation of defective Chinese Drywall that Banner purchased, supplied, distributed, marketed, used, sold and/or delivered in the United States.  "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class."  1 Newberg on Class Actions § 3:13.  The claims of the Class Representatives are typical of the absent Class Members in that all Plaintiffs are seeking to hold Banner liable for its role as a distributor of a defective product and receive appropriate damages for the costs of remediating homes.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that the named class representatives "not possess interests which are antagonistic to the interests of the class."  1 Newberg on Class Actions § 3:21.  Second, the named class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id.*; *see Amchem*, 521 U.S. at 625-26 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citations and quotation marks omitted).  At this preliminary stage of the approval process, there is nothing to suggest that this requirement has not been met.  The Class Representatives are adequate to represent the interests of both homeowners and commercial entities with claims against Banner.  The named representatives are members of the class they

seek to represent and they do not possess any interests antagonistic to that class with respect to their claims against Banner.  Moreover, proposed Class Counsel are members of the PSC, which was appointed by this Court after an application process to represent all Plaintiffs in the MDL, based on the attorneys' vast experience in class actions and multidistrict litigation.  The PSC conducted these class negotiations with Banner and its Insurers at arm's length, and will fairly and adequately represent the Class.  *See Brown v. Ticor Title Ins.*, 982 F.2d 386, 390-91 (9th Cir. 1992).

### 5.    Common Questions of Law and Fact Predominate

For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  1 Newberg on Class Actions § 4:25.  *See also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.") (citing 7A Wright, Miller, & Kane 518-19).  In this case it makes eminent good sense to resolve the claims against Banner in this forum through the class action device.  The issues of Banner's liability for the sale and distribution of Chinese Drywall predominate over any individual issues involving the Plaintiffs.  A class settlement will ensure that all available funds are allocated equitably among those with claims against the company stemming from defective Chinese Drywall.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action device be superior to other methods of adjudication.  Factors the Court may consider include:

(A)     the interest of members of the class in individually controlling the prosecution or defense of separate actions;

24

(B)      the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C)      the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)      the difficulties likely to be encountered in the management of a class action.[43]

Fed. R. Civ. P. 23(b)(3)(A)-(D).  Given the various suits already commenced against Banner in federal and state courts, and that Banner is contributing all of its available insurance proceeds, approval of the Settlement and resolution of all Chinese Drywall claims against Banner in this forum benefits all parties.

### C.      The Proposed Form and Method of Class Notice Is Adequate and Satisfies the Requirement of Rule 23

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  In addition, for classes certified under Rule 23(b)(3), courts must ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see Amchem*, 521 U.S. at 617; *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977).  Courts have held that "[t]he Due Process Clause also gives unnamed class members the right to notice of the settlement of a class action."  *See OCA,* 2008 WL 4681369, at *15 (citing *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008)).  Notice must be "reasonably calculated, under all of the circumstances, to

---

[43]      As stated earlier, any difficulties of management of this Class need not be considered. *See Amchem*, 521 U.S. at 620.

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See id.* (quoting *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005)).

In accordance with these legal parameters, the Court should approve the form and content of the proposed Notice of Pendency of and Proposed Class Action Settlement (the "Notice")[44] and the Summary Notice of Banner Class Action ("Summary Notice").[45]  Each form of notice is written in plain and straightforward language consistent with Rules 23(c)(2)(B) and 23(e)(1). The Notice objectively and neutrally apprises all Class Members of the nature of the action, the definition of the Class sought to be certified for purposes of the Settlement, the Class claims and issues, that Class Members may enter an appearance before the Court at the Fairness Hearing (in accordance with the procedures set forth in the Notice), that the Court will exclude from the Class any Class Member who elects to opt out of the Settlement (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B).  The Notice additionally discloses the date, time and location of the Fairness Hearing and the procedures and deadlines for the submission of objections to any aspect of the Settlement, including the request for attorneys' fees.[46]  These disclosures are complete and should be approved by the Court.  *See In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000).

---

[44]   Attached as Exhibit C hereto.

[45]   Attached as Exhibit D hereto.

[46]   The Settlement provides that the PSC, common benefit attorneys and private counsel for Class Members may petition the Court for an award of attorneys' fees constituting, in the aggregate, no more than 32% of the Banner Settlement fund, plus reimbursement of reasonable expenses including the costs of Notice.  The Court will determine the allocation of said fees.  In addition, the petitioning attorneys are permitted to seek a fee of 10% from those entities who recover from the Settlement fund; are not represented by the PSC; and who have private counsel who have actively pursued this litigation.

The parties have agreed to use traditional methods for notifying Class Members: notification by mail to all known Class Members and by publication.  The Agreement provides that upon entry of the Preliminary Approval Order, Class Counsel will cause the Notice to be mailed to the last known address of all Class Members who are identifiable through the Plaintiff Profile Forms and to the last known address of all Class Members with claims in all Related Actions and their counsel.  Class Counsel will also cause the Summary Notice to be published in national and Florida newspapers, in Hispanic newspapers, and as internet banner ads on 24/7 Media Network and the AOL Network.  In addition, the Settling Parties will request that the Settlement and a copy of the Notice be posted at the United States District Court, Eastern District of Louisiana, Florida courts, the 34th Judicial District Court of Louisiana, Parish of St. Bernard, and each courthouse where Related Actions are pending.  Finally, the Notice will be posted on the District Court's Chinese Drywall MDL website, and requested to be posted on the CPSC website, on the Florida Department of Health website, and in other relevant public places.

Notice by mail and publication satisfies the requirements of due process.  *See OCA*, 2008 WL 4681369, at *16 ("[D]irect mailing of notice, along with publication of Summary Notice in print and on the web, is reasonably calculated to apprise class members of the settlement."); *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, 1995 WL 20613, at *2 (E.D. La. Jan. 6, 1995) (finding that first class mail and publishing notice complied with fundamental due process rights as "notice reasonably calculated, under all circumstances, to apprise interested parties"); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *9 (N.D. Tex. Nov. 8, 2005) (same).

Upon notification of the Settlement, Class Members have three choices: (1) approve the Settlement, maintain the right to comment on and/or object to the Plan of Allocation at an appropriate juncture, and share in the Settlement proceeds by submitting a Proof of Claim; (2)

exclude themselves from the Settlement by opting out of the Class, in which case they will not participate in the Settlement recovery and will retain their individual claims against Banner; or (3) object to the Settlement, in which case they will nonetheless remain Class Members regardless of whether their objection is accepted or rejected.

To participate in the Settlement, Class Members need do nothing at this time.  Class Members who wish to opt out of the Settlement must submit timely notice of their intent to opt out.  Class Members who wish to object to the Settlement must file and serve a notice of their intention to appear and object.  Objectors may submit a memorandum of law in opposition, as well as any admissible evidence relevant to the issues to be heard, provided that such Class Member has timely provided any and all papers in opposition to the Settlement upon which the objection may be based.  Objectors may also appear before the Court at the Fairness Hearing. Banner and its Insurers have reserved rights to terminate the Settlement or withdraw from it in the event that the opt out claims could be a detriment to Banner's financial health and solvency.[47]

The proposed notice program fulfills the requirements of due process and Rule 23, and should be approved by the Court.  *See In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35-36 (D.N.H. 2006) (approving notice program that distributed notice packets to individual investors and nominees and published summary notice in national newspaper and wire services); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210-11 (S.D.N.Y. 1995) (finding that notice by first class mail is the best notice practicable, and publication in a major newspaper "will have the broadest reach to inform those members of the Class who, for some reason, may not receive the mailed Notice"); *cf. New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (granting final approval of settlement

---

[47]   *See* Settlement Sections 6.3 & 6.4.

where notice had been mailed to class members and summary notice was published in the relevant journal).

>    **D.     The Court Should Preliminarily Approve the Settlement, Conditionally Certify the Settlement Class and Stay Claims as to Banner**

Determining the fairness of the Settlement is left to the sound discretion of the Court, and an appellate court will not overturn the Court's decision absent a clear showing of abuse of that discretion. *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (citing *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977)); *In re U.S. Oil*, 694 F.2d at 493-94. The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *See Miller*, 559 F.2d at 428 (quoting *Pearson v. Ecological Sci. Corp.*, 559 F.2d 171, 176 (5th Cir. 1975)). Settlements of class actions are "particularly favored" and are not to be lightly rejected. *Maher*, 714 F.2d at 455. *See also Cotton*, 559 F.2d at 1331; *Murphy Oil*, 472 F. Supp. 2d at 843. In the case of class actions, the Fifth Circuit has held that "there is an overriding public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331; *accord Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Moreover, it is widely recognized that courts should exercise restraint in examining a proposed settlement and should not "make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330 (citation and quotation marks omitted). In other words, in weighing the benefits obtained by settlement against benefits dependent on the likelihood of recovery on the merits, courts are not expected to balance the scales. *See id.* The very object of

a compromise "is to avoid the determination of sharply contested and dubious issues." *Young v.*

*Katz*, 447 F.2d 431, 433 (5th Cir. 1971) (citation and quotation marks omitted).

In addition, a court should not engage in a trial on the merits when considering the

propriety of a settlement:

> It cannot be overemphasized that neither the trial court in approving the settlement
> nor [the appellate court] in reviewing that approval have the right or the duty to reach
> any ultimate conclusions on the issues of fact and law which underlie the merits of
> the dispute.

*Cotton*, 559 F.2d at 1330 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th

Cir. 1975); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974); *see also Murphy*

*Oil*, 472 F. Supp. 2d at 843 ("The Court may not resolve contested issues of fact or law, but

instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed

settlement as compared to the alternative of litigation.").  The trial court is not required to decide

the merits of the action or substitute a different view of the merits for that of the parties or

counsel.  *Maher*, 714 F.2d at 455 n.31 ("In other words, in determining the fairness,

reasonableness, and adequacy of a proposed settlement, neither the district court nor the

appellate court on review, should reach ultimate conclusions on the issues of fact and law

underlying the dispute.").

Where, as here, experienced counsel representing many interested parties have

extensively negotiated the Settlement at arm's length, a strong initial presumption is created that

the compromise is fair and reasonable.  *See United States v. Tex. Educ. Agency*, 679 F.2d 1104,

1108 (5th Cir. 1982).  The Fifth Circuit has recognized that courts must rely to a large degree on

the judgment of competent counsel, terming such counsel the "linchpin" of an adequate

settlement.  *See Reed v. GMC*, 703 F.2d 170, 175 (5th Cir. 1983).  Thus, if experienced counsel

determine that a settlement is in the class's best interests, "the attorney's views must be accorded

great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978); *see also OCA*, 2008 WL 4681369, at *11 (noting that if there is "no reason to doubt [the] fairness" of the settlement and it "appears to fall within the range of possible approval, the court should grant preliminary approval"); *In re Train Derailment Near Amite La., on Oct. 12, 2002*, 2006 WL 644494, at *1 (E.D. La. Jan. 27, 2006) (granting preliminary approval of class settlement negotiated at arm's length and without collusion, where the compromise bore "a probable, reasonable relationship to the claims and exposure and to the risks presented in the litigation" and was "within the possible range of judicial approval").

Moreover, the Court is not required at this point to make a determination as to whether the settlement should be finally approved. As stated in the Manual for Complex Litigation (Fourth) § 21.632: "First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation." Generally, "this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." *Id.* Although non-binding, the preliminary approval establishes "an initial presumption of fairness." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, at *2 (N.D. Cal. Oct. 15, 2009); *see also* 4 Newberg on Class Actions § 11.25.

The Settlement before the Court is the product of extensive arm's length negotiations between counsel for the Settling Parties, which culminated in a preliminary agreement. The parties negotiated the terms of the Settlement in detail, and the parties each made concessions and won positions on difficult issues. Therefore, the Settlement should be preliminarily approved and the motion to stay claims as to Banner should be granted.

At the Fairness Hearing, any Class Members who have timely filed and served a notice of intention to appear may voice any objections.  The Court can then consider the merits of the Settlement in light of any objections and determine whether to grant final approval of the Settlement.  At the Fairness Hearing, the Settling Parties will have submitted briefs and other documents in support of the Settlement.  If the Court finds the Settlement to be fair and reasonable, the Court should enter the Order and Judgment specified in Section 9 of the Settlement, dismissing this action with prejudice as to the Settling Defendants and effecting a release of all claims as provided for in the Settlement Agreement.

### E.    Proposed Schedule

The Settling Parties suggest the following schedule leading to the Fairness Hearing.  Blanks for the actual dates are provided in the proposed Preliminary Approval Order submitted herewith:

| Event | Day |
|---|---|
| Preliminary Approval Order (the "PAO") Signed | 1 |
| Mail and Publish Notice | On or before 35 days from entry of PAO |
| Opt Outs/Objections | 95 days from entry of PAO |
| Fairness Hearing | 140 days from entry of PAO |

## IV.    CONCLUSION

The Settling Parties respectfully request that this Court find preliminarily that the Settlement is fair, reasonable and adequate, and that notification to Class Members of the terms of the Settlement and their rights in connection with the Settlement is warranted.  The moving parties seek entry of Orders: (1) preliminarily approving the Settlement; (2) certifying the Settlement Class as set forth in the Preliminary Approval Order; (3) approving the form of Notice to the Settlement class; and (4) scheduling the Fairness Hearing.

Respectfully submitted,

Dated:    June 14, 2011

/s/ Russ M. Herman

Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Matthew C. Gaughan (On the Brief)
Sandra L. Duggan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
Hausfeld LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Jeremy W. Alters
Alters Law Firm, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@alterslaw.com

**PROPOSED CLASS COUNSEL**

Arnold Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

Russ M. Herman, Esquire (Bar No. 6819)
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Rherman@hhkc.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
Matthews, Martinez, Gonzales,
Kalbac & Kane
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

**BANNER**

Todd Ehrenreich
Weinberg Wheeler Hudgins Gunn & Dial, LLC
2601 South Bayshore Drive, Suite 1500
Miami, FL  33133
Phone:  (305) 455-9505
Fax: (305) 455-9501
tehrenreich@wwhgd.com
Counsel for All Banner Entities except Banner PSL

Michael Peterson
Peterson Espino, P.A.
10631 North Kendall Drive, Suite 220
Miami, FL  33176
Phone: (305) 270-3773
Fax: (305) 275-7410
Counsel for Banner PSL

**BANNER'S INSURERS**

Jane M. Byrne
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Phone: (212) 849-7000
Fax: (212) 849-7100
janebyrne@quinnemanuel.com
Counsel for Chartis

Robert M. Darroch
Goodman, McGuffey, Lindsey & Johnson
3340 Peachtree Road NE, Suite 2100
Atlanta, GA 30326
Phone: (404) 926-4117
Fax: (404) 264-1737
rdarroch@gmlj.com
Counsel for FCCI

Stephen Berry
McKenna Long & Aldridge, LLP
303 Peachtree Street, NE, Suite 5300
Atlanta, GA 30308
Phone: (404) 527-4126
Fax: (404) 527-4198
sberry@mckennalong.com
Counsel for Maryland Casualty

John Malloy
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-8337
Fax: (860) 275-8299
jmalloy@rc.com
Counsel for Hanover

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 14th day of June, 2011.

Respectfully submitted,

/s/ Leonard A. Davis

Leonard A. Davis, Esquire (Bar No. 14190)
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel MDL 2047*
*Co-counsel for Plaintiffs*