UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**RESPONSE OF THE PSC, CLASS COUNSEL AND SUBCLASS COUNSEL IN OPPOSITION TO MOTION OF SOUTHERN HOMES, LLC; TALLOW CREEK, LLC; AND SPRINGHILL, LLC TO SET EVIDENTIARY HEARING TO DETERMINE SECURITY**

**I.   INTRODUCTION**

Southern Homes, LLC; Tallow Creek, LLC; and Springhill, LLC (collectively, "Southern Homes") have moved this Court pursuant to Rule 65(c) of the Federal Rules of Civil Procedure to set an evidentiary hearing to determine security in connection with this Court's Order granting preliminary approval of the InEx class settlement (Rec. Doc. No. 9501). This is Southern Homes' third attempt to defeat or interfere with preliminary approval of the InEx class settlement, and the current motion represents another inappropriate attempt to seek reconsideration of the Court's May 13, 2011 Order.

On May 13, 2011, this Court granted preliminary approval of the InEx class settlement pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3) and 23(e), after consideration of briefing by all interested parties, including objections from Southern Homes, and a hearing held on May 6, 2011. *See* Rec. Doc. No. 8818 (the "Preliminary Approval Order"). In the Preliminary Approval Order, the Court found the InEx settlement to be "fair, reasonable and adequate, as negotiated and entered into at arm's length, in good faith, and free of collusion and as being within the range of possible judicial approval at a prospective Fairness Hearing." *Id*. at 7. Accordingly,

the Court ordered notice to be disseminated to the class on or before June 20, 2011, scheduled a Fairness Hearing to take place on October 27, 2011, and stayed all litigation against InEx in the MDL and Related Actions, including Southern Homes' suit against InEx in Louisiana state court,[1] pending the Fairness Hearing to determine final approval of the settlement. *See id.* at 9-10, 11.

Following preliminary approval, Southern Homes filed what in essence amounted to a motion for reconsideration of the Preliminary Approval Order pursuant to Rule 59(e). *See* Rec. Doc. No. 8848 (Emergency Motion for Partial New Trial Regarding Stay Issued in the Preliminary Approval Order, Or, in the Alternative, Motion to Alter or Amend the Order). In that motion Southern Homes argued that the Court's stay order was "procedurally deficient because the settling parties failed to carry their burden of proof for a preliminary injunction and [because] it fail[ed] to meet the requirements of Federal Rule of Civil Procedure 65." *See In re Chinese-Manufactured Drywall Litig.*, 2011 WL 2313866 at *1 (E.D. La. Jun. 9, 2011).

In a detailed opinion entered on June 9, 2011, the Court denied the motion for reconsideration, finding that:

> Southern raises many of the same arguments here that it did previously in its Response in opposition to the Motion for Preliminary Approval. *See* (R. Doc. 8699). The Court considered these arguments prior to its ruling from the bench and written Preliminary Approval Order. The law is clear that a motion for reconsideration is not the proper vehicle for "rehashing" arguments, and on this ground alone denial of Southern's Motion may be warranted.

*Id.* at *3. The Court further determined that "the stay issued was properly within the Court's authority under the [All Writs Act and the Anti-Injunction Act]." *Id.* The Court's decision was

---

[1] *Southern Homes, LLC v. Interior/Exterior Building Supply, LP, et al.*, Civil District Court, Parish of Orleans, State of Louisiana, Division M, Case No. 09-6564.

based, in part, on the stage of these multidistrict litigation proceedings as they relate to InEx:

> [T]he Court upholds the stay in the Preliminary Approval Order pursuant to its authority under the All Writs Act and the Anti-Injunction Act's necessary in aid of jurisdiction exception. The Court finds that a conceptional *res* has been created in this MDL litigation, as evidenced by the complexity of the proceedings and claims, the fact the litigation has been underway for almost two years, and the substantial amount of effort and expense put into the litigation by the parties and Court alike. The MDL litigation, as it more specifically pertains to the present Motion, is sufficiently progressed: the parties have engaged in extensive discovery and depositions, a motion for class certification seeking to create a class with claims against InEx was filed and set for hearing, a trial against InEx was scheduled and a case management order issued, and most importantly, the InEx Settlement Agreement is a class action settlement agreement of the InEx-related claims, the Court has preliminarily approved this Agreement, and notice is in the process of issuance. Additionally, an actual *res* has been created now by the InEx Settlement Agreement which involves the tendering of all of InEx's primary insurance coverage. Because there is a possibility that Southern's state court hearing and proceedings could affect and potentially disrupt the InEx Settlement Agreement and the *res* created thereby, these proceedings should be stayed. Notably, the stay is only temporary and contingent upon the successful final approval by the Court of the InEx Settlement Agreement; thus, in the case the Court does not give its final approval, Southern will then be free to pursue its state court case against InEx, and if the Agreement is finally approved then presumably Southern will benefit as a class member or choose to opt-out.

*Id*. at *7.

The Court's Preliminary Approval Order and the stay granted in connection therewith are based on the All Writs Act, the Anti-Injunction Act and the inherent and traditional power of the Court to protect its jurisdiction and manage these MDL proceedings. The stay order was not aimed against Southern Homes, but, rather, was intended to protect the *res* of the InEx settlement, which represents the tender of all available primary insurance for the benefit of Class Members, pending further settlement proceedings. Southern Homes is attempting, through its motion to set an

evidentiary hearing to determine security, to challenge the Preliminary Approval Order incorporating the stay. The Court has already declined to reconsider the Preliminary Approval Order; class notice has been disseminated via first-class mail to all known class members, through publication in various newspapers, magazines and on the Internet, and by posting on the Court's MDL website; and the parties are preparing for the final Fairness Hearing set for October 27, 2011. Under the law this Court is not required to set an evidentiary hearing to determine security, nor has Southern Homes demonstrated any entitlement to security. The motion of Southern Homes should therefore be denied.

## II.     ARGUMENT

### A.     This Court Properly Enjoined State Court Litigation Against InEx Pending Further Settlement Proceedings.

In the seminal case of *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985), the Second Circuit made clear that the All Writs Act provides a federal court with ancillary jurisdiction to issue writs "necessary or appropriate in aid of" its jurisdiction over litigation pending before it. *Baldwin-United*, 770 F.2d at 335. Thus, the law holds, in order to preserve a federal court's "authority over an ongoing matter," the District Court may grant an injunction "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id.*, 770 F.2d at 335-36; *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334-35 (5th Cir. 1981) (Anti-Injunction Act) (upholding an injunction, issued by a federal judge presiding over multi-district litigation, against actions by the same plaintiffs in state court), *cert. denied*, 456 U.S. 936 (1982); *James v. Bellotti*, 733 F.2d 989, 994 (1st Cir. 1984) (indicating that the existence of a provisionally-approved settlement would justify a protective injunction against state court suits

4

brought by the same parties).

In the context of an MDL:

> The existence of multiple and harassing actions ... could only serve to frustrate the district court's efforts to craft a settlement in the multidistrict litigation before it. The success of any federal settlement [i]s dependent on the parties' ability to agree to the release of any and all related civil claims the plaintiffs had against the settling defendants based on the same facts. If ... others could derivatively assert the same claims on behalf of the same class or members of it, there could be no certainty about the finality of any federal settlement. Any substantial risk of this prospect would threaten all of the settlement efforts by the district court and destroy the utility of the multidistrict forum otherwise ideally suited to resolving such broad claims.

*Baldwin-United*, 770 F.2d at 337. *See also In re Diet Drugs*, 282 F.3d 220, 235 (3rd Cir. 2002) (recognizing "a category of federal cases for which state court actions present a special threat to the jurisdiction of the federal court" – namely, where "a federal court [is] entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts...."); *White v. National Football League*, 41 F.3d 402, 409 (8th Cir. 1994) ("the ability to facilitate ... settlement by enjoining related suits of absent class members is ancillary to jurisdiction over the class action itself"), *cert. denied*, 515 U.S.1137 (1995); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 201, 204 (3rd Cir. 1993) (affirming injunction prohibiting the prosecution of a competing state class action where "the district court approved the dissemination of notice and commenced the opt out period" in complex class action); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir.), *cert. denied*, 506 U.S. 953 (1992) (approving settlement barring competing actions in state court alleging claims similar to those in the federal action); *In re Granada Partnership Sec. Litig.*, 803 F. Supp. 1236, 1246 (S.D. Tex. 1992) (enjoining "commencement, continuance and/or prosecution of any and all proceedings in federal

or state court" by class members in connection with preliminary and final approval of class settlement); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E.&S.D.N.Y. 1990) ("An injunction of all proceedings is necessary to implement the terms of the settlement and to protect the court's jurisdiction over the class action.").

In these Chinese Drywall multidistrict litigation proceedings, the Court has been faced with the tremendous challenge of consolidating discovery and coordinating the prosecution of thousands of individual cases and numerous class actions involving a core set of common facts asserted against more than 1,000 manufacturers, distributors, importers, suppliers, builders and installers of Chinese Drywall, as well as the insurers of the defendants. The sheer magnitude of these suits has required careful oversight and precise management by the Court, with the assistance of a Special Master and numerous liaison and steering committees. The discovery alone has produced tens of thousands of documents and has necessitated the taking of depositions in Hong Kong, Germany and England, as well as in many cities in the United States. After more than two years of litigation, close to 10,000 entries have been recorded on the docket.

The culmination of a class settlement of Chinese Drywall claims against InEx is another bite of the elephant that follows the implementation of the KPT Pilot Program settlement designed to remediate plaintiffs' homes plagued with the problems and damages caused by defective Chinese Drywall. *See* Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall, entered on or around October 15, 2010, and posted on the Court's Chinese Drywall MDL 2047 website.[2] At this point in the proceedings, continued litigation against InEx in any forum

---

[2] More recently, a class settlement of claims against the Banner entities was presented to the Court for preliminary approval (Rec. Doc. Nos. 9470, 9471, 9558). A hearing on the motion for preliminary approval has been scheduled for July 14, 2011. In the interim, all litigation against Banner
(continued...)

6

would threaten the *res* created by the settlement, consisting of all of InEx's available primary insurance as of April 25, 2011.

As set forth in the June 9, 2011 decision denying Southern Homes' motion for reconsideration, "the Court upholds the stay in the Preliminary Approval Order pursuant to its authority under the All Writs Act and the Anti-Injunction Act's necessary in aid of jurisdiction exception." *Chinese Drywall*, 2011 WL 2313866 at *7. Said authority cannot be seriously questioned by Southern Homes. The Supreme Court has long held that:

> It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. Where the action is in rem the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached.

*See Kline v. Burke Const. Co.*, 260 U.S. 226, 229 (1922).[3]

This Court has aptly pointed out that "the stay is only temporary and contingent upon the successful final approval by the Court of the InEx Settlement Agreement." *Chinese Drywall*, 2011 WL 2313866 at *7. In other words, if "the Court does not give its final approval, Southern will then

---

[2](...continued)
has been stayed and enjoined by the Court (Rec. Doc. No. 9489).

[3] Courts have recognized that multidistrict litigation and class action proceedings are "analogous to *in rem* actions given their magnitude and complexity." *Joint E. & S. Dist. Asbestos*, 134 F.R.D. at 38; *Baldwin-United*, 770 F.2d at 337 (class action proceeding was "so far advanced that it was the virtual equivalent of a res over which the district judge required full control."); *Battle v. Liberty National Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) ("makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered"); *Corrugated Container*, 659 F.2d at 1334-35 (injunction proper because "complicated antitrust action ... required a great deal of the district court's time and necessitate[d] its ability to maintain a flexible approach in resolving the various claims of the many parties.").

be free to pursue its state court case against InEx, and if the Agreement is finally approved then presumably Southern will benefit as a class member or choose to opt-out." *Id*.

### B. The Court's Injunction Does Not Entitle Southern Homes to Security.

The parties' joint motion for preliminary approval of the InEx settlement contained a request for a stay of all litigation against InEx pending further settlement proceedings. At the time Southern Homes objected to preliminary approval, it did not request any security or that a bond be posted, either in its written objection or in open court. Nor did Southern Homes request a bond when it sought reconsideration of the Preliminary Approval Order. Significantly, Southern Homes has not cited a single case that would even suggest that security is appropriate or warranted under the circumstances of this litigation pending settlement proceedings.[4]

The great weight of authority regarding the Court's power to grant a stay pursuant to the All Writs Act and the Anti-Injunction Act "holds that an injunction pursuant to the All Writs Act need not satisfy the traditional requirements for injunctive relief." *See Chinese Drywall*, 2011 WL 2313866 at *8; *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ("The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns."); *accord Trull v. Dayco Prods., LLC*, 178 Fed. App'x 247, **3 (4th Cir. Apr. 28, 2006); *Baldwin-United*, 770 F.2d at 338 ("Injunctions issued under the authority of the All-Writs Act stem from very different concerns than those motivating preliminary injunctions governed by

---

[4] Southern Homes cites only to *Lyric Studios, Inc. v. Big Idea Prod., Inc.*, 420 F.3d 388, 396 (5th Cir. 2005), involving the traditional application of Fed.R.Civ.P. 65, whereby a bond was posted to preclude the distribution of products subject to a distribution agreement that was alleged to have been breached. The All Writs Act was not at issue or applicable in the case, nor was the stay granted to preserve the jurisdiction of the court.

8

Fed.R.Civ.P. 65."). *See also In re Macon Uplands Venture*, 624 F.2d 26, 28 (5th Cir. 1980) (affirming grant of injunction under the All Writs Act without regard to the traditional injunction factors); *Teas v. Twentieth Century-Fox Film, Corp.*, 413 F.2d 1263, 1266-67 (5th Cir. 1969) (same); *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir.1978) (omitting traditional injunction criteria from the requirements for an injunction under the All Writs Act).

The Second Circuit explained in *Baldwin-United* that:

> Preliminary injunctions under Rule 65 are designed to preserve the status quo between the parties before the court pending a decision on the merits of the case at hand. In contrast, injunctions such as that issued here [enjoining states from bringing actions which would affect rights of any plaintiff or class member in consolidated multidistrict class actions against broker-dealers who sold securities in bankrupt corporations] are needed to prevent third parties from thwarting the court's ability to reach and resolve the merits of the federal suit before it.

*Id*. at 338-39. The importance of this distinction can be appreciated when considering that:

> [T]here is a difference between the power to enjoin an unrelated non-party pursuant to the All-Writs Act and the narrower authority delineated by Rule 65(d), which confines the application of injunctions to parties, "their officers, agents, servants, employees, and attorneys, and [to] those persons in active concert or participation with them who receive actual notice of the order." We do not believe that Rule 65 was intended to impose such a limit on the court's authority provided by the All-Writs Act to protect its ability to render a binding judgment.

*Id*. at 339.

In this case, the stay was entered to prevent a decision from another court from interfering with or threatening to dissipate the *res* that was created by the InEx settlement, *i.e.*, all of InEx's primary insurance, which will become available for distribution to the class upon final approval of the settlement by the Court. Even though the Court "conclude[d] that the traditional preliminary injunction requirements do not need to be satisfied, when ... an injunction on state court proceedings

9

is authorized by the Court's jurisdiction under the All Writs Act," the Court nonetheless found that certain relevant requirements under Rule 65 "are to be satisfied for an injunction to issue under the All Writs Act." *Chinese Drywall*, 2011 WL 2313866 at *8. Thus, the Court ruled that "[t]he Preliminary Approval Order complies with the Rule 65(d) requirements because it states the reason for the stay as in furtherance of the preliminary approval of the InEx Class Settlement, and the terms of the stay are specific and contain sufficiently reasonable detail, even a list of 'Related Actions' to be stayed is included, as well as definitions of the parties involved." *Id*. *See Baldwin-United*, 770 F.2d at 339 ("Although Rule 65 does not apply to injunctions issued under the All-Writs Act against non-parties whose actions would impair the court's jurisdiction, we do not abandon the requirements that an injunction be specific and definite enough to apprise those within its scope of the conduct that is being proscribed, and that those subject to the injunction receive appropriate notice of its terms.") (citation omitted).

### C. Southern Homes Has Presented Nothing New to Justify Reconsideration of the Court's Preliminary Approval Order

Southern Homes has not presented any new facts or legal argument to warrant a change in the Court's Preliminary Approval Order. Class notice has issued, and the parties are preparing for the final Fairness Hearing. Both the case law and the facts presented to the Court support preliminary approval of the InEx Settlement Agreement, conditional certification of the InEx settlement class, dissemination of class notice, and a stay of litigation against InEx pending further settlement proceedings. Thus, reconsideration of the Preliminary Approval Order would harm not only the PSC, InEx, and InEx's Insurers, but also the InEx class.

### III. CONCLUSION

For all of the reasons set forth herein, the Motion of Southern Homes to set an evidentiary hearing to determine security should be denied.

                                        Respectfully submitted,

Dated: June 21, 2011                  /s/ Russ M. Herman
                                        Russ M. Herman, Esquire (Bar No. 6819)
                                        Leonard A. Davis, Esquire (Bar No. 14190)
                                        Stephen J. Herman, Esquire (Bar No. 23129)
                                        HERMAN, HERMAN, KATZ & COTLAR, LLP
                                        820 O'Keefe Avenue
                                        New Orleans, Louisiana  70113
                                        Phone: (504) 581-4892
                                        Fax: (504) 561-6024
                                        LDavis@hhkc.com
                                        *Plaintiffs' Liaison Counsel in MDL 2047*

                                        Arnold Levin (On the Brief)
                                        Fred S. Longer (On the Brief)
                                        Sandra L. Duggan (On the Brief)
                                        Matthew C. Gaughan (On the Brief)
                                        LEVIN, FISHBEIN, SEDRAN & BERMAN
                                        510 Walnut Street, Suite 500
                                        Philadelphia, PA 19106
                                        Phone: (215) 592-1500
                                        Fax: (215) 592-4663
                                        Alevin@lfsblaw.com
                                        *Plaintiffs' Lead Counsel in MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
  MATTHEWS, MARTINEZ, GONZALES,
  KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
  ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
  & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
SEEGER WEISS, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
LEWIS & ROBERTS
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.WSuite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@alterslaw.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

**CLASS COUNSEL**

Arnold Levin
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

Russ M. Herman, Esquire (Bar No. 6819)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Rherman@hhkc.com

**SUBCLASS COUNSEL**

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
 & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com
*Proposed Louisiana Subclass Counsel*

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com
*Proposed Non-Louisiana Subclass Counsel*

**CERTIFICATE OF SERVICE**

   I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 21st day of June, 2011.

             /s/ Leonard A. Davis
             Leonard A. Davis, Esquire
             HERMAN, HERMAN, KATZ & COTLAR, LLP
             820 O'Keefe Avenue
             New Orleans, Louisiana 70113
             Phone: (504) 581-4892
             Fax: (504) 561-6024
             Ldavis@hhkc.com
             *Plaintiffs' Liaison Counsel in MDL 2047*
             *Co-counsel for Plaintiffs*