UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL      MDL No. 02047
PRODUCTS LIABILITY LITIGATION              SECTION L

JUDGE FALLON
MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:

ALL CASES
_____/

**INSTALLER DEFENDANTS' OBJECTIONS TO THE MOTION FOR AN ORDER PRELIMINARILY APPROVING THE BANNER ENTITIES[1]' SETTLEMENT AGREEMENT, CONDITIONALLY CERTIFYING THE BANNER ENTITIES' SETTLEMENT CLASS, ISSUING CLASS NOTICE, AND SCHEDULING A SETTLEMENT FAIRNESS HEARING**

COMES now INSTALLER DEFENDANTS[2], by and through its undersigned liaison counsel, and files its objections to the Joint Motion filed by the Plaintiffs' Steering Committee ("PSC") and the Banner entities, which requests the preliminary approval of the Banner entities' settlement agreement, conditional certification of a Banner settlement class, and other relief file this Memorandum in support thereof.

*Memorandum of Law*

A. Introduction

The parties[3] to the Joint Motion are asking this Court to ignore and overlook the plain language of Fed. R. Civ. P. 23 so that the Court may "conditionally" certify a class and

---

[1] The Banner entities include but are not limited to Banner Supply Co., Banner Supply Co., Pompano, LLC, Banner Supply Co., Port St. Lucie, LLC ("Banner PSL"), Banner Supply Co., Ft. Myers, LLC, Banner Supply Co. Tampa, LLC, Banner Supply International, LLC, and other entities under the Banner Insurance policies.

[2] For the purpose of filing these objections, Installer Defendants include all Installer Defendants subject to the Banner entities' proposed settlement agreement. Additionally, Non-Louisiana Installer Defendants do not waive any of their objections to this Honorable Court's jurisdiction over them by the filing of these objections and accompanying memorandum of law.

[3] The Joint Motion was filed by the Plaintiffs' Steering Committee ("PSC") and the Banner entities along with its insurers including Chartis Specialty Insurance Company, FCCI Insurance Company, Hanover American Insurance Company, and Maryland Casualty Insurance Company.

"preliminary" approve a settlement agreement, involving tens of millions dollars, thousands of plaintiffs and hundreds, if not thousands of defendants. Rule 23 does not provide for, and does not countenance that a Court give advisory opinions based *solely on a movant's assertions* that a class should be certified and a settlement of the class claims approved. The schedule set for consideration of this motion does not provide Installer Defendants and other interested parties with adequate time to investigate, review and evaluate the proposed settlement agreement. Installer Defendants further object to the proposed settlement agreement because it was negotiated behind close doors, without any participation from Installer Defendants, who appear to be both class members and defendants in actions filed against them by the class representatives and other class members, and who were intentionally excluded from all discussions regarding the proposed settlement agreement, contrary to the specific instructions of this Court.

Installer Defendants object to the proposed settlement agreement because it is not clear from the proposed settlement agreement whether Installer Defendants will remain subject to further claims of fellow class members related to Chinese drywall purchased from, supplied, distributed, marketed, used, sold and/or delivered by any of the Banner entities.

Further, neither the motion, the Settlement agreement or the proposed class notice adequately informs Installer Defendants or other interested parties with sufficient information as to the how the settlement proceeds will be allocated, or the compensation that may ultimately be received by the individual class members, which will thereby affect the rights and liabilities of the Installer Defendants.

Perhaps most important, the class as defined in section 1.1.3 of the settlement agreement, creates a class with irreconcilable conflicts of law and fact between the Homeowners,

Homebuilders, and Installers class members themselves, all with different rights and liability concerning the Banner entities, which the purported class representatives are not, in fact, representative of its class members. The Homeowner class representative have claims against the Banner Entities different in both factual background and legal basis than their fellow class members, Installer Defendants, and are pursuing legal recourse against fellow class member Installer Defendants for the same damages it seeks against the Banner Entities, thereby creating an irreconcilable conflict of interest vitiating any ability to represent the Installer Defendants adequately.

Finally, the proposed settlement agreement seeks to restrict discovery and use of relevant evidence, as articulated in section 17 of the settlement agreement, and is thus, objectionable.

**B.  Arguments:**

**1.    Installer Defendants Object to the Request for Advisory Opinion on the Class and Settlement as A Violation of Federal Rule of Civil Procedure Rule 23.**

Fed. R. Civ. P. 23 provides a carefully structured method for certifying class actions and resolving class action proceedings through settlement. Courts considering a class certification request "must be mindful" that Rule 23 "sets the requirements that they are ought to enforce". *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rule 23 is the result of "an extensive deliberate process involving many reviewers" and courts "are not free to amend a rule outside the process Congress ordered." *Id.*

In the 1996 amendments to Rule 23, the Advisory Committee noted that mass torts are "ordinarily not appropriate" for class treatment (Adv. Comm. Notes, 28 U.S.C. App., p. 697), but did not categorically exclude mass tort cases from class certification. *See Amchem*, 521 U.S. at 625. The Advisory Committee also noted that Rule 23(b)(3) certification was framed for situations in which "class-action treatment is not clearly called for" as it is in Rule 23(b)(1) and

(b)(2). Adv. Comm. Notes, 28 U.S.C. App., p. 697. In fact, Rule 23(b)(3) has been described as "the most adventuresome innovation" in class action procedure. *Amchem*, 521 U.S. at 614, citing *Kaplan*, a prefatory note, 10 *B.C. Ind. & Com. L. Rev.* 497, 497m (1969).

As applied to this proposed class and settlement, the proponents are using the most "adventuresome" class action procedure Rule 23 (b)(3) in the type of case for which class treatment is "ordinarily not appropriate" (mass tort). Thus, it is imperative that this Honorable Court adhere to the requirements of Rule 23. Specifically, Rule 23 does not discuss the need for a preliminary approval or a conditional certification of a class. Any such rulings would be at best advisory and respectfully beyond the jurisdiction of the Court, See *John Doe #1 v. Veneman*, 380 F.3d 807, 814 (5th Cir. 2004) (recognizing that "a federal court has neither the power to render advisory opinions…."). "Further, the rule [23] does not require or suggest that the court should preliminarily approve the fairness of a proposed settlement before sending notice to the class". See *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 236 F.R.D. 53, 55 n.2, (D. Me. 2006).

*In re New Motor Vehicles*, District Judge D. Brock Hornby had before him a group of plaintiffs and Toyota Motor Sales, U.S.A., Inc. requesting the Court to (a) give "preliminary approval to their proposed settlement; (b) defer any notice to the class until a final decision is reached on litigation classes as to other defendants; (c) certify a settlement class, and (d) continue the stay of this action as to Toyota as previously ordered". However, in that matter, the Court rejected the approach of granting preliminary approval of the settlement. *Id.* The Court stated that "even a preliminary decision in favor of the settlement may, as a practical matter, give an unwarranted presumption of correctness to a proposal that the court has not carefully considered … Instead, the Court should confer with counsel to identify any obvious flaws in the

4

proposed settlement but should not offer anything that may be conveyed to the absent class members as a preliminary view on the fairness of the settlement." *Id.*

Therefore, as applied to the facts of surrounding the Joint motion filed by the PSC and the Banner entities, this Court should decline to go outside and beyond the scope of Rule 23. Specifically, it is inconsistent with the careful requirements of the class action rule for a court to "preliminarily" approve a class settlement without full briefing and a plenary hearing. Further and more importantly, it is equally improper for a court to "conditionally certify" a class without proof that the proposed class meets the standard of Rule 23. Hence, this Honorable Court should not issue a preliminary approval order that conflicts with Rule 23 and gives an improper stamp of approval to the proposed settlement agreement.

## 2.   Installer Defendants Object to the Proposed Settlement Agreement as it was negotiated behind close doors.

In March 2011, some Installer Defendants were solicited by the PSC to intervene in the *Vickers, et al. v. Knauf Gips, KG et al. action* Case No: 09-04117 ***for the purpose of participating in any settlement discussion between the PSC and the Banner entities***. Further, since at least December 2010, the PSC had been engaged in active settlement discussions with the Banner Entities, with the apparent hope of submitting a proposed class action settlement to this Court, both the PSC and Banner has intentionally excluded participation from any other effected parties, including the Installer Defendants.[4] Installer Defendants, as a contractor/installer which obtained Chinese drywall from the Banner entities, would clearly have claims against the Banner entities that would be affected by the disbursement of the Banner entities' funds and/or impaired by such a release/settlement bar, and therefore petitioned the

---

[4] *See* PSC's Consolidated Response to Defendant Banner Supply Entities and its Insurers' Motions to Compel Global Mediation of All Claims against Banner Supply Entities [D.E. 7648], at 2.

5

Court to intervene in the *Vickers* action to participate in any negotiations and proceedings in order to protect their rights and interests. The settlement announced at the June 14, 2011 status conference, without any participation by counsel for fellow class members, Installer Defendants, is extremely unfair, does nothing to benefit the class member Installer Defendants, and the method by which the settlement was reached was contrary to the Installer Defendants' purpose of intervening in the *Vickers* matter. This Court should not countenance, much less approve, a class settlement in which members of the class are represented by liaison and lead counsel appointed by this Court, which liaison and lead counsel were not permitted to participate and adequately represent and protect the interest of their ***class member clients***.

**3.    Installer Defendants Object to Section 14 of the settlement agreement: Allocation of Payments.**

There are numerous conflicting sections of the Banner entities' settlement agreement. However, the most troubling is the opaque manner or outright omission in the Joint Motion and the proposed settlement agreement, of any information about how the legal and financial interests of class members are affected by the settlement. Section 14 purports to deal with the allocation, but it does not identify the total amount of funds that will be available for distribution. Also, while section 14 mentions a "Settlement Fund", it does not appear to be a defined term in the settlement agreement. Further, the settlement agreement and the Joint Motion do not provide a quantifiable number, or even an estimate of the amount of settlement proceeds that could be available to class members.

Moreover, Installer Defendants further object to the provisions of section 14.1 which (1) ask the Court to participate in the determination of the allocation method as well as to devise procedures by which the allocation shall proceed and (2) give the Court final decision on whether the allocation method or procedures are valid and proper. It is irreconcilable that any

entity should be both an active participant, witness, trier of fact, and judge all in the same case. Neither can a court approve as reasonable and deny appellate review the determination of rights of class members, especially given that the class members were intentionally excluded from negotiations, which seems to be the intent behind the provision in section 14 stating, "the allocation by the Special Master may be appealed solely to Judge Fallon, whose decision shall be final". The missing allocation of payments in the settlement agreement cannot be overlooked and is clearly objectionable.

**4.   Installer Defendants Object to being included in the Class as defined in section 1.1.3 of the settlement agreement.**

This settlement purports to certify a class under Rule 23 (b)(3), where the "Court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In this vein, a class may not be certified unless the representative class members "will fairly and adequately protect the interests of the class". Fed. R. Civ. P. 23 (a)(4). Rule 23 (a)'s adequacy of representation requirement "serves to uncover conflicts of interests between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625, 11 S.Ct. 2231.

Additionally, a class representative "must be part of the class, possess the same interest, and suffer the same injury as the class members." *Id.* Here, however, the class members have different interests, rights, and causes of action, and therefore it cannot be said that common questions of fact predominate over the individual questions. Likewise, it cannot be said that the class representatives will adequately represent the interests of all purported class members.

*Amchem*, cited above, involved a class certification for the purpose of reaching a global settlement on current and future asbestos related claims. *Id.* at 597. The class consisted of those

7

"who (1) had been exposed-occupationally or through the occupational exposure of a spouse or household member-to asbestos or products containing asbestos attributable to a CCR defendant, or (2) whose spouse or family member had been so exposed." *Id.* at 602. The district court conditionally certified the class. *Id.* at 605. On appeal, the Third Circuit reversed finding that the predominance requirement of Rule 23(b)(3) was not met. *Id.* at 609. It explained, "class members in this case were exposed to different asbestos-containing products, in different ways, over different periods, and for different amounts of time; some suffered no physical injury, others suffered disabling or deadly diseases. *Id.* "These factual differences . . . translate[d] into significant legal differences." *Id.* (internal quotations omitted). Thus, common questions of fact or law did not predominate over individual questions. *See Id.*

Later, the Supreme Court affirmed the Third Circuit's reversal and likewise found that the predominance requirement of Rule 23(b)(3) was not met. *Id.* at 624. Again, it based its decision on the disparate questions undermining class cohesion that were enumerated by the Third Circuit. *Id.* It explained, "[g]iven the greater number of questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions, any overarching dispute about the health consequences of asbestos exposure cannot satisfy the Rule 23(b)(3) predominance standard." *Id.*

Furthermore, the Court found the certified class did not satisfy the requirement of Rule 23(a)(4), "that the named parties 'will fairly and adequately protect the interests of the class.'" *Id.* at 625. The Court mentioned that some class members' interest did not align with other class members. *Id.* at 626. Specifically, it noted that "for the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future." *Id.* As such, the global settlement

8

achieved a compromise "with no structural assurance of fair and adequate representation for the diverse groups and individuals affected." *Id.* at 627. Therefore, the class failed to satisfy the adequacy requirement. *See Id.*

In the instant case, this Honorable Court should look to the reasoning of the *Amchem* Court to find that the purported class does not satisfy the predominance requirement of Rule 23(b)(3) or the adequacy requirement of Rule 23(a)(4). This is because the Homeowner members of the class do not have the same interests, rights, or causes of action as either the class member Homebuilders or the class member Installer Defendants, purportedly included in the class by definition in section 1.1.3. of the settlement agreement.

For instance, the Homeowners' claims against the Banner entities are for remediation costs and other damages, and are based on grounds of negligence, strict products liability, and possible personal injury. On the other hand, the claims of Installer class members against the Banner entities are for breach of contract, breach of warranties, and indemnification. Further divergent issues relate to the interests of the Homebuilder members, some of which have chosen to remediate and some, which have not. Thus, similar to *Amchem,* not all the members of the purported class have the same interests.

Most alarming, however, is that here the proposed class representatives are actually homeowners suing the Installer class members in this court and in state court actions for the same damages sought to be addressed by the proposed settlement agreement. This situation presents an irreconcilable conflict of interest for the class representatives (homeowners) and their attorneys, who must advance the interests of their clients against the Installer class members, and at the same time allege they can adequately protect and advance the opposing interests of the class members, Installer Defendants, with which they are adverse on the same legal and factual

issues. How can the class representatives and their counsel adequately represent the interests of an opposing class of members of the putative class, which objects to the settlement?? How can the class representatives and their counsel adequately be found to be representing the interest of the class members, Installer Defendants, when these same representatives and their counsel intentionally excluded liaison and lead counsel from participation in a class settlement directly affecting the rights of represented class members. ***How can plaintiffs and plaintiffs' attorneys adequately represent defendants in the same litigation?***

A case with a less glaring issue of intra-class conflict is the case of *Johnson v. American General Ins. Co.*, 296 F. Supp. 802 (D.C. Cir. 1969). In that case, Plaintiffs, minority stakeholders in Equity Annuity Life Insurance Company ("EALIC"), brought suit against American General Insurance Company of Houston ("American"), a holding company owning 60% of EALIC, and Defendant Woodson, the president and a director of both American and EALIC. *Id.* at 804. Part I of Plaintiff's complaint consisted of a derivative action on behalf of EALIC, and Part II consisted of a class action on behalf of stakeholders of EALIC for various claims including breach of fiduciary duties. *Id.* "In part two of their complaint, Plaintiffs wanted to bring an action 'for themselves and on behalf of all other stockholders of EALIC, as a class, for actions by the defendants affecting them and their rights as stockholders of EALIC.'" *Id.* at 811. Defendant motioned the district court for an order requiring Plaintiffs to amend their complaint and remove the class action claim. *Id.* Defendants argued that the class, which was defined as including all stockholders, was inappropriate because Plaintiff's complaint alleged breaches of duty to the minority stockholders by some majority stockholders, and therefore all stockholders could not be included in the same class. *Id.* at 811-12.

The District Court agreed with the Defendant and ruled, "[P]laintiff's definition of the class, therefore, [was] unacceptable." *Id.* at 812. According to the court, "[t]he Defendants the Plaintiffs sought to charge, however, were also stockholders. Patently Plaintiffs cannot seek to represent defendants even though defendants logically may have been acting in different capacities." *Id.* at 812. Moreover, the Court explained, "[i]t is apparent that the Plaintiffs **cannot represent all of the stockholders** since some of them are defendants in some of the complaints alleged." *Id.* Because of this conflict, between Plaintiffs and the class of stockholders they sought to represent, the Court granted Defendant's motion to strike the class action. *Id.* at 813.

In the instant case, this Honorable Court should rule that the class as presently defined in section in 1.1.3. of the settlement agreement does not satisfy the "adequacy requirement" contained in Fed. R. Civ. P. 23(a)(4). Just like the *Johnson* class, the instant class includes class representatives who are suing some class members. Therefore, as in the *Johnson* case, this Honorable Court should rule that there is an inherent and problematic conflict-of-interest within the class. Finally, like the Court in *Amchem*, this Honorable Court should find that (1) the class should not be certified and (2) the class representatives do not adequately represent the interests of all class members. **Plaintiffs** and **plaintiffs' lawyers** cannot adequately represent the interests of the **defendants** they have sued in the same case, a point highlighted by the intentional exclusion of class member defendant counsel from the settlement discussions for which they now seek this Court's approval.

**5.    Arguing in the alternative, if the class is deemed to be appropriate by this Honorable Court, then the proposed class should be divided into different subclasses with its own class representatives.**

"When appropriate, a class action may be divided into subclasses that are treated as a class under Rule 23. Fed. R.Civ.P. 23 (c)(5). Subclasses are appropriate "where a class is found

11

to include subclasses divergent in interest." Fed. R. Civ. P. 23 (c) (advisory committee's note). see also *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856, 119 S.Ct. 2295, 11 L.Ed. 715 (1999) (explaining that *Amchem* requires "a class divided between holders of present and future claims' to be divided into homogeneous subclasses ... with separate representation to eliminate conflicting interests of counsel.") *Id.*

In *Ortiz*, Defendant, Fibreboard Corporation, and its insurers, Continental Casualty Company and Pacific Indemnity Company, entered into a global settlement agreement with a group of leading asbestos plaintiffs' attorneys for $ 1.535 billion to be dispersed among the class members. *Id.* at 824. Following a fairness hearing, the class was certified and the settlement approved. *Id.* at 827. Nevertheless, the Supreme Court reversed, finding that the class certification and settlement were improper. *Id.* at 864-65.

The Supreme Court noted the class was comprised of those that were exposed to asbestos products both before 1959 and after. *Id.* at 857. This was significant because "[p]re-1959 claimants accordingly had more valuable claims than post-1959 claimants, the consequence being a second instance of disparate interests within the certified class." *Id.* Additionally, the court found telling "[t]he settlement decides that the claims of the immediately injured deserve no provisions more favorable than the more speculative claims of those projected to have future injuries, and that liability subject to indemnification is no different from liability with no indemnification." *Id.* As such, the Court concluded that disparate interests within the certified class necessitated structural protection provided by the creation of subclasses. *Id.* According to the Court, it was essential that "the class include all those with claims unsatisfied at the time of the settlement negotiations, with intraclass conflicts addressed by recognizing independently represented subclasses." *Id.* at 864.

When applied to the proposed Banner entities' settlement agreement, it is clear that subdividing the class into varying subclasses appears appropriate. First, the purported class members do not have the same interests as explained in the previous section. Second, and more importantly, the purported class representatives are actually suing some of the purported class members. Under what logical rationale can a class representative adequately represent a class member he is suing? Nevertheless, assuming the class is deemed appropriate, despite the members' differing and conflicting interests, this Honorable Court must at the very least create different subclasses to adequately represent and protect the interests of all class members.

**6. Installer Defendants Object to the Banner entities' settlement agreement as it attempts to conceal relevant evidence as worded in Section 17 of the settlement agreement.**

Section 17 of the settlement agreement purports to make all documents of any type relating to the settlement agreement not only inadmissible in any future judicial proceeding but also not subject to discovery, by attempting to invoke Federal Rule of Evidence 408. Rule 408 does not address the *discoverability* of evidence. Instead, it only limits the admissibility of certain information relating to settlement discussions when the evidence is "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount or for certain types of impeachment." Fed. R. Civ. P. 408 (a). Rule 408 does not require exclusion of the evidence if the evidence is offered for a purpose not prohibited by 408 (a), such as the bias or prejudice of a witness. Hence, evidence surrounding the proposed settlement agreement is potentially relevant to a number of issues in future litigation involving the Installer Defendants and must be discoverable.

### Conclusion

Installer Defendants object to the preliminary and final approval of the Banner entities' settlement agreement, conditional certification of a Banner settlement class, and other relief

requested by the PSC and the Banner entities and its insurers. First, Installer Defendants object to the request for this Honorable Court to issue an advisory opinion on the class and the Banner entities' settlement agreement as a violation of Federal Rule of Civil Procedure 23. Second, Installer Defendants object to the proposed settlement agreement because it was negotiated behind close doors without any participation from liaison and lead counsel for Installer Defendants. Third, Installer Defendants object to the proposed settlement agreement as it is unclear from the language in the settlement agreement if Installer Defendants will be released from any claims arising from or otherwise related to Chinese drywall obtained from the Banner entities. Third, Installer Defendants object to the allocation of payments as defined in the settlement agreement. Fourth, Installer Defendants object to being included in the class as defined in section 1.1.3 of the settlement agreement. Fifth, if this Honorable Court deems the class to be appropriate, this Court should then divide the purported class into subclasses in order to adequately represent each class member. Lastly, Installer Defendants object to the Banner entities' settlement agreement as an attempt to conceal relevant evidence as worded in Section 17 of the settlement agreement. Thus, for the aforementioned reasons, Installer Defendants request this Honorable Court deny the PSC's and the Banner entities' request for an order preliminary approving the Banner settlement, conditionally certifying the Banner entities' settlement class, issuing class notice, and scheduling a settlement fairness hearing and for any other relief deemed necessary.

/s/ Robert Fitzsimmons
ROBERT V. FITZSIMMONS
Florida Bar No. 355739
RUMBERGER, KIRK & CALDWELL
Brickell Bayview Centre, Suite 3000
80 S.W. 8th Street (33130-3047)
Post Office Box 01-9041
Miami, Florida  33101
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580
*Attorneys for Installer Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing objection has been served upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 5th day of July, 2011.

/s/ Robert Fitzsimmons
ROBERT V. FITZSIMMONS
Florida Bar No. 355739
RUMBERGER, KIRK & CALDWELL
Brickell Bayview Centre, Suite 3000
80 S.W. 8th Street (33130-3047)
Post Office Box 01-9041
Miami, Florida  33101
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580

*Attorneys for Installer Defendants*