UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| THIS DOCUMENT RELATES TO: SEAN AND BETH PAYTON, et al vs. KNAUF GIPS, DG., et al Case No. 2:09-CV-7628 | * * * * * | JUDGE FALLON (L)  MAGISTRATE WILKINSON (4) |

## AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

ANTHONY MARTIN

who, being duly sworn, upon his oath deposed and stated as follows:

1. He is the President for ARM Structural, Inc., ("ARM"), and as such, has personal knowledge of the following based on his review of records maintained by ARM in the regular course of business.

2. ARM is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Miami-Dade County, Florida.

3. ARM is a home builder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes.

4. ARM has never built a residence in the State of Louisiana nor had any contracts or subcontracts with companies located in Louisiana.



EXHIBIT A

5. ARM has never been licensed or registered to do business in Louisiana or ever had any offices or employees in Louisiana.

6. ARM does not have an agent for service of process in Louisiana.

7. ARM does not have any bank accounts in Louisiana or own any property in Louisiana.

8. ARM does not solicit business in Louisiana or ever transacted business in Louisiana.

9. ARM has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. ARM does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. ARM has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12. Consequently, ARM never anticipated it would be haled into court in Louisiana.

_____
ANTHONY MARTIN

SWORN TO AND SUBSCRIBED
BEFORE ME THIS ____ DAY OF _____, 2011.

_____
NOTARY PUBLIC

ALINA BUDEJEN
MY COMMISSION # EE 031719
EXPIRES: October 3, 2014
Bonded Thru Notary Public Underwriters

2

## SALES AGREEMENT

A R M STRUCTURAL INC.     A Florida Corporation,

whose address is 3616 SW 108 AVE. Miami, Florida. 33165 Tel: 305.269.7449

Hereby on February 13, 2007, acknowledges receipt of the sum of

Fifty thousand dollars (Dollar Amount $50,000.00) deposited into and escrow account with Torres and Vadillo, llp. for the purchase of the real property located at 6001 SW 28 Street

From: Jaqueline L. Sanchez

Whose Address is : 11755 SW 90 Street Suite 101 Miami Fla.

Whose Contact Numbers are:

(M):786.499.9240 (Bs):305.275.0755 (F): 305.275.1028

Legal Description: Coral Way Heights Lot 16 Block17 of PLAT BOOK 14 PG 10 of Miami-Dade County, Florida.

Property address: 6001 SW 28 Street Miami, FL 33155

The Purchaser and Seller hereby agree that the Seller shall sell and the Purchaser shall Buy the afore described RESIDENCE upon the purchase price, terms and conditions hereinafter set forth:

| | |
|---|---|
| BASE PURCHASE PRICE | $ 850,000.00 |
| PREMIUM LOT | $ N/A |
| EXTRAS AND/OR ADJUSMNETS (SEE CONTRACT) | $ 2,500.00 |
| TOTAL PURCHASE PRICE | $ 852,500.00 |
| INITIAL DEPOSIT | $ 50,000.00 |
| SECOND DEPOSIT(WITHIN 15 DAYS) | $ NA |
| THIRD DEPOSIT | $ NA |
| BALANCE DUE TO SELLER AT CLOSING | $ 802,500.00 |

Closing funds shall be paid by Wire (including seller wire fee.)

EXHIBIT B

## Schedule A

1. Seller agrees to credit a total of 2% of the sale price (maximum of $17,050.00) as a sellers contribution.

2. Seller agrees to pay a brokers fee of 3.5% of the sales price (maximum of $29,837.50) to the Buyer's Broker

3. Buyer acknowledges that the Seller is currently occupying the property and understands that the property will be occupied by the Seller until the adjacent property (6015 SW 28 Street) is ready for occupancy. The adjacent property is estimated to be ready for occupancy within 60 days from execution of this contract. Once Seller knows exact date that the adjacent property will be ready for occupancy, Seller shall notify buyer and/or Buyer's Agent of said date. Buyer shall have 15 days from the date Seller sends notice to Buyer or Buyer's Agent to close this transaction. But Never less than 45 Days from Effective Date.

4. Buyer has requested that seller perform certain extras to the subject property. Items are listed in the addendum. Extra items shall be performed only after payment for said items has been received by seller and the funds have cleared.

5. The seller will pay half of the doc stamps on the deed by the sellers side only



2

ADDENDUM

THE FOLLOWING ARE THE ITEMS THAT ARE PENDING PRIOR TO CLOSING THAT HAVE TO BE PERFORMED BY THE SELLER.

- CLEAN FLOOR AT GARAGE
- TOUCH UP PAINT AT GARAGE AND AROUND INTERIOR AND EXTERIOR OF HOUSE
- INSTALL IRREGULAR SLATE STEPPING STONES AT ENTRY TO HOME
- INSTALL LANDSCAPE AIN FRONT OF LIVING ROOM WINDOW CONSISTING OF A TRIPLE PALM AND IMPATIENS AND MULCH
- BULLNOSE ALL ENTRY TILES TO REMOVE HARD EDGE
- FILL HOLE AT FLOOR AT STONE WALL BY THE STAIRCASE
- INSTALL TRAVERTINE TO MATCH TRAVERTINE AT CELLAR NEXT TO W/H
- INSTALL 52 BTL WINE COOLER AT CELLAR AND RACK ABOVE OR BELOW TO COVER W/H
- INSTALL GUTTERS AT INT. PATIO AND POOL SLAB
- BREAKFAST WALL NEED TO BE 36" OVERALL INSTALL GRANITE TO MATCH KITCHEN
- SEAL KITCHEN BACKSPLASH WITH PROPER CAULK AT SEAMS
- KITCHEN EQUIPMENT MODELS HAVE BEEN SELECTED AND THE TOTAL AMOUNT INCLUDING DELIVERY AND INSTALLATION OF CERTAIN PIECES COMES TO $4,271.00. ITEMS ARE BRAND NAME FRIGIDAIRE AND HAVE BEEN SELECTED AT BRANDSMART UNDER TICKET NUMBER 1860033
- CHANGE CLEANOUT COVER AT KITCHEN TO HAVE A FLAT COVER
- PUSH UP ALL TRIMS FOR HI HATS SO THAT YOU SEE NO BLEED THROUGH LIGHT
- INSTALL ALL CABINET DOOR GRAB BARS HORIZONTALLY CENTER TO DOOR
- INSTALL SHUTTERS
- REPAIR TILE AROUND SWITCH AT CABANA BATH
- INSTALL COVERBASE AT MASTER BATHROOM
- CLEAN ALL HINGES OF INTERIOR DOORS FROM PAINT OR STAIN.
- CLEAN REAR ROOF TILE BY MASTER BEDROOM WINDOWS FROM MILDEW
- INSTALL MASTER CLOSET FROM CONTAINER STORE BRAND ELFA PLATINUM AND WALNUT

3

## UPGRADES OR EXTRA ITEMS TO BE PERFORMED FOR A FEE

- INSTALL NEW HI-HATS AT FAMILYROOM BAR AND COUNTER AREA
- INSTALL NEW BLACK RECEPTACLES AT KITCHEN WITH STAINLESS STEEL TRIMS
- QUOTE NEW CABINETS AND BUILT IN FOR NEW DOUBLE FRIDGE
- INSTAL 10 NEW HI HATS AT BAR FAMILY ROOM AND COUNTER
- CHANGE EXTERIOR LIGHT FIXTURE AT CABANA BATH FOR A SPOT LIGHT TO ILLUMINATE PASSAGE TO POOL
- INSTALL SPOT LIGHT BETWEEN THE TWO HOMES
- QUOTE BATH ENCLOSURES FOR ALL SHOWERS AND ONLY SHOWERS
- INSTALL SLIDE BOLTS FOR POOL DOORS AND CHANGE ALL FRENCH ENTRY DOORS WITH DOUBLE CYLINDER LOCKS
- QUOTE WOOD FENCE FOR REAR OF PROPERTY AND FOR AREA BETWEEN THE TWO HOUSES TO MAYBE SPLIT COSTS BETWEEN THE TWO
- QUOTE THE EXTENSION OF THE COOL DECK TO COME EVEN WI THE WALKWWAY AT THE SIDE OF THE HOUSE

4

1. Mortgage: Purchaser agrees to submit his application for a mortgage loan of no more than the amount of mortgage proceeds as set forth on the first page of this contract to a lender of purchaser's choice within five (5) days of the date hereof. Failure to make timely application shall be deemed a breach of purchaser's obligations hereunder and Seller has the option to cancel this AGREEMENT and, retain the deposit without any further acts by Purchaser. Purchaser understands that the application must be fully completed in order to obtain the mortgage and will make a good faith attempt to qualify for the mortgage. If purchaser has a spouse who has not signed this AGREEMENT, Purchaser agrees to have his spouse sign the mortgage note and other mortgage documents required by lender. PURCHASER AGREES TO INCUR NO INDEBTNESS SUBSEQUENT TO THE DATE HERE OF WHICH MIGHT JEOPARDIZE APPROVAL OF PURCHASER'S LOAN.

Except as herein provided, Purchaser agrees to pay all loan fees and closing costs charged by the lender in connection with the mortgage. Seller will not pay FHA or VA "Nonallowable Fees" on behalf of the buyer at closing, unless otherwise agreed to in writing by a duly executed addendum to contract. Purchaser will pay any prepaid interest due on the mortgage at the time of title closing and an amount the lender may require to be put in escrow toward payment of property taxes on the RESIDENCE. Purchaser will also pay any mortgage insurance premiums (Prepaid or otherwise), if required by such lender.

Buyer shall order and obtain an appraisal within 7 (SEVEN) days from effective date, at buyers expense. This contract is contingent upon the appraised value to be equal or greater than the sales price. If property appraised below contract price buyer has the option of paying the difference or notify the seller that they wish to cancel the contract.

This agreement is NOT contingent on Purchaser obtaining financing. All deposits paid by the Purchaser hereunder shall be non-refundable.

If Purchaser obtains a written loan commitment or approval from lender of choice which contains any special condition which is not ordinarily contained in a similar mortgage loan commitment, then said mortgage loan commitment may be deemed as denied, at the sole option and discretion of Seller. Purchaser agrees that if he is applying for a loan in an amount which in excess of 80% of the purchase price, and the residence is not being acquired as a primary residence, he will accept the loan equal to 80% of the purchase price if the lender to which he has applied will not approve a loan in excess 80% of the purchase price.

Purchaser understands that the rate if interest on the mortgage is established by the lender and not by Seller and that any predictions or representations of present

5

or future interest rates, which may have been contained in any advertising or promotion by Seller, are not binding.

If purchaser obtains a written mortgage loan commitment or approval from lender of choice and the commitment or approval is subsequently withdrawn through no fault of the Seller, this agreement shall remain in full force and effect and Purchaser shall be conclusively presumed to have agreed to purchase the RESIDENCE without mortgage financing.
In the event that Purchaser's application for Mortgage Financing is rejected by Lender, because Purchaser failed to complete or deliver all applications forms required by Lender within the time provided herein, or because Purchaser's application contained untrue or inaccurate information, this transaction, for all purposes, shall be treated as an all cash purchase and shall be closed on a date specified by Seller, and, if Purchaser fails to close this transaction on the date specified by Seller, all deposits paid hereunder by Purchaser shall be retained by Seller as liquidated and agreed upon damages in accordance with the provisions of this Contract and not as penalty.

1. **CONSTRUCTION FINANCING:** Seller may borrow construction money from Seller's own lender to construct the RESIDENCE. Purchaser agrees that any lender advancing construction funds will have a first mortgage on the RESIDENCE until closing. At that time, Seller may use all proceeds of Purchaser to release the RESIDENCE from the construction mortgage. Neither this AGREEMENT nor the deposits will give Purchaser any lien or claim against the RESIDENCE nor Purchaser's rights will be subordinate to those of any lender holding a mortgage affecting the RESIDENCE that secures the advancement of construction funds even if such mortgage is recorded after the date of this AGREEMENT.

2. **CONSTRUCTION SPECIFICATIONS:** The materials, fixtures, and equipment to be used in constructing the RESIDENCE will be substantially the same as those described in the plans and specifications and may be amended from time to time. Seller has the absolute right to make modifications to the plans and specifications. Without limiting the generality of the foregoing, Purchaser specifically agrees that minor changes in the dimensions of rooms and patios and changes in the locations of windows, doors, walls, partitions, utility lead-ins and outlets, TV, outlets, telephone outlets, air-conditioning components, lighting fixtures and electrical panel boxes may be made by Seller. Purchaser further understands and agrees that the following items which may be seen in models or shown in illustrations, are not included with the sale of the RESIDENCE: wall coverings, floor coverings, paint colors, accent light fixtures, wall ornaments, drapes, blinds, bedspreads, furniture, and furnishings, wet bars, intercoms, security systems, certain built-in fixtures, except wall to wall carpeting, vinyl

6

floor coverings and ceramic tile in bathrooms, wood trim, upgraded items and/or any other items of this nature which may be added or deleted from time to time.

This list of items (which is not all-inclusive) is provided as an illustration of the type of items built-in or placed upon models or shown in illustrations strictly for purposes of the decoration and example only. The property shall be sold unfurnished but shall include, range, dishwasher, disposal, wall-to-wall flooring, water-heater, central air conditioning and heat, ceramic tile in bathrooms and kitchen.
If circumstances arise, which in Seller's opinion, warrant changes of suppliers, manufacturers, or brand names of items, Seller reserves the right to substitute equipment, materials and fixtures and the color thereof with equipment, materials and fixtures of substantially equal or better quality. Seller will provide Purchaser, when available, a checklist of color and/ or color material choices for those items for which Purchaser will have a choice, if any (in Seller's sole discretion). If Purchaser fails to complete and return the checklist to Seller, within the time allotted in the checklist, Purchaser understands that Seller will make all choices and Purchaser will have no reason to object to those choices. Seller will select colors of all items and materials not included in that checklist.

The purchase Price of the Home includes those items shown on the document entitled Included Features. Alternate selections or "upgrades" are available at Purchaser's option at an additional expense. Purchaser agrees that all options, changes, additions, deletions or other modifications in the construction of the Home desired by Purchaser and agreed to at the sole discretion of the Seller shall be agreed upon in writing by Purchaser and Seller at the time of the execution of this contract and/or any Option Addendums. Purchaser shall be required to make an additional payment for such options, upgrades or additions at the time of the execution of the Options Addendum. All such payments shall not be a deposit or any part of a deposit for the purchase of the Home but are separate consideration paid by Purchaser to Seller to induce Seller to alter or amend Seller's plans, specifications and procedures to accommodate the preferences of Purchaser. Further, because of the personalized nature of such options and other changes, such payments shall not be refunded to Purchaser under any circumstances other than a default by Seller (which Seller fails to cure after notice and expiration of the applicable cure period) without any default by Purchaser, and Seller shall be entitled to retain such payments in the event of a default by Purchaser as liquidated damages in accordance with the provisions hereof. Notwithstanding the foregoing, the Purchaser acknowledges and agrees that the selection of any options, changes, deletions, or upgrades shall not alter, impair, diminish or affect the Purchaser's obligations relating to the Mortgage Contingency, if any.

Purchaser acknowledges and agrees that the options listed in the Option's Addendum are final and a request for change may or may not be accepted by Seller (as determined in the sole discretion of Seller). Purchaser further

7

acknowledges and agrees that Purchaser shall be responsible for all selections listed in the Options Addendum and if Purchaser is not satisfied for any reason whatsoever with any selections made, Seller and Seller's Personnel shall not have any responsibility or liability thereof.

1. ENTIRE AGREEMENT; NO REPRESENTATIONS: This Agreement sets forth the entire agreement between the parties superceding any and all prior understandings and agreements, and no oral representations or statements shall be considered a part of this AGREEMENT. This AGREEMENT may not be subsequently amended or modified except by written agreement of the parties hereto. Purchaser acknowledges that he has not relied on any representations, warranties, statements, or estimates of any nature whatsoever, whether written or oral, made by seller, the selling agent or otherwise except as herein specifically represented.

2. **COMPLETION DATE:** Seller Agrees to substantially construct the RESIDENCE in the manner specified in this AGREEMENT, by the date no longer that two (2) years from the date of this AGREEMENT, subject however, to delays caused by the unavailability of materials at a reasonable cost, strikes, other labor problems, governmental orders or other events which would support a defense based upon impossibility of performance for reasons beyond the control of the Seller. If Seller is unable to complete construction within this time, Purchaser may terminate this contract and receive a full refund of all deposits, or specifically enforce this obligation. If Purchaser elects to receive a refund, Seller shall be relieved of all obligations under this AGREEMENT when Seller refunds the deposits to Purchaser.

Purchaser further acknowledges that Purchaser will not rely upon any representations by Seller or Seller's representatives with respect to any estimates of closing dates during the construction of the Home. Seller shall not be liable or held responsible for any loss, liability or claim arising out of Purchaser's reliance on an estimated closing date including, by way of example and not limitation, additional monies owed to extend interest rate lock period, higher interest rates due to expiration of interest rate lock periods, additional or higher rental payments and/or rent penalties, moving expenses and/or storage costs.

1. INSPECTION PRIOR TO CLOSING: PURCHASER SHALL BE GIVEN AN OPPORTUNITY TO EXAMINE THIS RESIDENCE WITH SELLER'S REPRESENTATIVE PRIOR TO CLOSING OF TITLE, AND AT THAT TIME SHALL PRESENT TO SELLER AN INSPECTION STATEMENT SIGNED BY PURCHASER SETTING FORTH ANY DEFECTS IN WORKMANSHIP AND MATERIALS (KEEPING IN MIND THE CONSTRUCTION STANDARDS REVALENT FOR SIMILAR PROPERTY IN THE COUNTRY WHERE THE PROJECT IS LOCATED). SELLER SHALL BE OBLIGATED TO CORRECT SAME AT ITS COST WITHIN A REASONABLE PERIOD OF THE TIME AFTER CLOSING, BUT SELLER'S OBLIGATION TO CORRECT

8

SHALL NOT BE A GROUND FOR DEFERRING THE CLOSING OF TITLE NOR THE IMPOSITION OF ANY CONDITION UPON CLOSING. NO ESCROWS OR HOLDBACKS OF CLOSING FUNDS SHALL BE PERMITTED.

2. Purchaser acknowledges that the Sellers and its representatives will handle construction of the RESIDENCE, and Purchaser agrees not to interfere with or interrupt any workmen at the construction site. Any personal inspections shall be made at times designated by Seller and upon written permission of Seller, and shall not be allowed under any condition prior to the formal inspection described above and only with Seller's representative. Purchaser may not order any work on the Residence until after closing.

3. WARRANTY: At the closing, Seller will give the Purchaser the Seller's standard limited warranty, a copy of which has been provided to the Purchaser prior to the Purchaser's execution hereof, which execution confirms receipt thereof. If at the time of closing the Community is registered for inclusion in a Homeowner's Warranty Program, the standard applicable warranty of the insurer shall be delivered to the Purchaser as the Seller's Standard Limited Warranty. SELLER'S LIMITED WARRANTY IS THE ONLY EXPRESS WARRANTY GIVEN, AND IS GIVEN IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDED BUT NOT LIMITED TO, IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE OR MERHCHANTABILITY. EXCEPT AS SET FORTH IN THE LIMITED WARRANTY. PURCHASE RELINQUISHES AND WAIVES AND SELLER HEREBY EXPRESSELY DISCLAIMS, ANY AND ALL WARRANTIES AS TO THE HOME AND THE OTHER PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT, WHETHER ARISING FROM CUSTOM. USAGE OF TRADE, COURSE OF DEALING, CASE LAW OR OTHERWISE. SELLER GIVES NO EXPRESS WARRANTY ON THOSE ITEMS DEFINED AS "CONSUMER PRODUCTS" BY THE MAGNUSON-MOSS WARRANTY ACT. TO THE EXTENT THAT BY LAW OR OTHERWISE ANY OF SUCH WARRANTIES CANNOT BE ENTIRELY DISCLAIMED, ALL SECONDARY, INCIDENTAL AND CONSEQUENTIAL DAMAGES ARE SPECIFICALLY EXCLUDED AND DISCLAIMED AND PURCHASER RELINQUESHES AND ANY RIGHTS PURCHASER MAY HAVE TO ANY SUCH DAMAGES (CLAIMS FOR SUCH SECONDARY, INCIDENTAL AND CONSEQUENTIAL DAMAGES BEING CLEARLY UNAVAILABLE AND WAIVED BY PURCHASER IN THE CASE OF WARRANTIES WHICH ARE ENTIRELY DISCLAIMED). Purchaser acknowledges that floor slabs, driveways, patios, sidewalks and any other poured concrete items will settle and possibly crack. Any tile or other topping or surface placed over such concrete may also crack. Seller agrees only to repair any tile cracks on a one time basis prior to closing only if Seller installed such tile. In that event, Purchaser acknowledges that Purchaser will accept any minor color variations that may exist due to dye lot differences. Seller shall not

9

be responsible for the repairs of any tile or concrete if said items were not purchased through Seller. The provisions of this paragraph shall survive closing.

4. **CLOSING OF TITLE:** Closing agent shall be selected by Seller and closing of title shall be held at such place and on such day and hour, as Seller may designate to Purchaser on reasonable notice (not required to exceed ten (10) days), which may be given orally. An affidavit by a representative of Seller that notice was given on specific date shall be conclusive evidence of such notice. Failure of

Purchaser to receive notice by reason of Purchaser's failure to advise Seller of any changes of address or phone number shall not relieve Purchaser of this obligation to close on the date, place and time specified by Seller. Seller may postpone the closing on written or oral notice to Purchaser, which notice shall fix a new day for closing.

At closing of title, Seller will deliver to Purchaser a recordable, Special Warranty Deed and an Owners Affidavit, and Purchaser will (a) pay to Seller and any institutional lender all sums then required to be paid pursuant to this AGREEMENT, and (b) duly execute and deliver all instruments required by Seller or any institutional lender for the closing of title and closing of Purchaser's mortgage, if any. Purchaser agrees that until all sums have been received by Seller (and any institutional lender) and cleared, Seller shall be entitled to a vendor's lien on the RESIDENCE (which Purchaser shall grant to Seller at closing at Seller's request).

If Seller permits a scheduled closing to be delayed (which the Seller is not obligated to do) at the request of Purchaser or by reason of failure of Purchaser (if a corporation) to produce all corporate documents requested by Seller for any other reason (except for a delay desired by the Seller), the Seller may impose a late charge equal to $100.00 per day for every day that the scheduled closing is delayed. Any delay granted by Seller will not exceed ten (10) days from the date of the original closing date.

1. **POSSESSION:** Title and possession shall be delivered simultaneously with the Actual Closing Date.

2. **RECORDING OF CONTRACT:** Purchaser shall be in default by recording this Contract or any memorandum or other document referring to or describing this Contract, in the Public Records of any county in the State of Florida. Further, Purchaser shall not record any lis pendens against the Home or the Community in the Public Records of any county in the State of Florida. The provisions of this paragraph shall survive closing and any termination of this contract.

10

3. TITLE CONVEYANCE AND CLOSING Seller shall convey to Purchaser, good, marketable or insurable title, subject to the following exceptions:

Taxes on the Home for the year in which title closes and thereafter, Any laws and restrictions, covenants, conditions, limitations, agreements or easements recorded in the public records. For example, zoning restrictions, property use limitations and obligations, easements (rights of way) and agreements relating to telephone lines or water or sewer lines;

The restrictions, covenants, conditions, easements, terms and other provisions imposed by the documents contained or referred to in the project document booklet. (This paragraph is only applicable if there is Homeowners and/or Master Property Owners Association membership associate with this purchase).

The general printed exceptions contained in an ALTA Owner's title insurance policy issued in the country in which the project is located.

If Seller is unable to deliver title as provided herein, Seller shall not be obligated to cure any objections or defects, but shall be afforded a reasonable time to do so if Seller so elects. If not cured within such period, or if Seller elects not to so cure Purchaser may accept title in its then existing conditions (but without any reduction in purchaser price) or terminate his AGREEMENT and receive a refund of all deposit (and, upon being made, Seller shall be released of all liability to Purchaser and this AGREEMENT shall be thereafter null and void). Seller shall not be obligated to provide Purchaser with an abstract of title, title search or title insurance policy, but if requested by Purchaser, Seller will assist Purchaser in obtaining same at the sole cost of Purchaser.

Purchaser understands that in addition to the purchaser price of the RESIDENCE, and cost associated with the transaction as described in Paragraph 1, Purchaser must pay certain other fees and "closing costs" when Purchaser accepts ownership at the closing of title. Those extra charges include:

The cost of recording the deed, documentary stamps on the deed, interim service Fees and premium on an owner's title insurance policy.

(b) Half of the impact fees that Seller paid to Miami-Dade county and all book up fees Paid to Miami-Dade Water & Sewer, however the maximum amount Purchaser is Obligated to pay shall be ~~Four Thousand Nine Hundred~~ $2,500.00) Dollars for single family home.    TWO         FIVE

(c) The cost of any obligations Purchaser incurs not provided for in this AGREEMENT.

11

(d) Seller's closing agent's pre-closing and post closing expenses

(e) Certified governmental liens, if any, shall be assumed and paid by Seller, pending governmental liens shall be paid assumed by Purchaser.

(f) Purchasers share of final survey and elevation certificate for the house, will be Three hundred dollars $300.00

1. PRORATIONS: Real estate taxes, less any available discount, the assessments payable to the association (if any) and any other proratable items shall be prorated as of the date of delivery of possession. Nothing herein shall require Seller to deliver possession of the Home to Purchaser prior to the Actual Closing date. Any tax proration at closing based upon an estimate shall be subsequently readjusted at the request of either party to the transaction upon receipt of a tax bill. Interim service fees, which have been prorated by the municipality and paid for by Seller at issuance of the certificate of occupancy, shall be reimbursed by Purchaser at closing. The provisions of this paragraph shall survive closing.

2. DEFAULT: Should Purchaser fail to close on the title to the Home as herein provided, or fail to perform or observe any of the Purchaser's obligations hereunder, Seller may, at its option, cancel this AGREEMENT by notice to Purchaser, which cancellation will be effective upon the giving of such notice. In such event, Purchaser's deposit and all other sums paid to Seller shall be retained by Seller as liquidated and agreed upon damages for Purchaser's default, and all rights and privileges hereunder shall thereafter terminate. Seller has removed Home from the market and has incurred substantial and direct and indirect expenses relative to sales, models, advertising and similar items, and Purchaser recognizes that no method could determine the precise damage resulting from Purchaser's default. The cancellation of this AGREEMENT and the retention of all sums therefore paid as liquidation and agreed upon damages shall be Seller's sole remedy in the event of Purchaser's default and not as a penalty, and upon cancellation of the AGREEMENT, neither party shall have any further obligation to the other.

Seller's failure to exercise or delay in exercising any of its rights or remedies shall not be construed as a waiver of any such right or remedy or a waiver of any default of Purchaser nor shall it prevent or impair the later exercise of such right or remedy by Seller. The provisions of this paragraph shall survive closing.

12

10. ASSIGNMENT; BINDING EFFECT; RECORDING:
Purchaser shall not assign this AGREEMENT without the prior written consent of Seller, which consent may be arbitrarily withheld, and any purported assignment in violation hereof shall be a default hereunder and avoidable at the option of the Seller. This AGREEMENT shall be binding on the parties and their respective heirs, personal representatives, successors, and permitted assigns. This agreement shall not be recorded and any such recording shall be deemed a default.

11. ENTIRE AGREEMENT; NO REPRESENTATIONS: This AGREEMENT sets forth the entire agreement between the parties superceding any and all prior understandings and agreements, and no oral representations or statements shall be considered a part of this AGREEMENT. This AGREEMENT may not be subsequently amended or modified except by written agreement of the parties hereto.

Purchaser acknowledges that he has not relied on any representations, warranties, statements, or estimates of any nature whatsoever, whether written or oral, made by seller, the selling agent or otherwise except as herein specifically represented. Purchaser acknowledges that neither Seller nor any of its agents or representatives has made any representation of any kind as to tax or other economic benefits or advantages, if any, which may be realized from owning the home, nor any representations as to the ability or willingness of Seller or its affiliates to assist Purchaser in renting or selling the Home. In addition, Purchaser acknowledges that neither Seller nor any of its agents or representatives has made any representation of any kind upon which the Purchaser has relied as to the land use plan designation, zoning, current or future uses, or any other matters with respect to any property which is located adjacent to or in the vicinity of Community. Purchaser further acknowledges that Purchaser is responsible to make its own investigation of any such matters with the city, county, state or other governmental agencies with jurisdiction, and Seller ahs no duty or obligation to disclose such matters.

12. SELLING AGENT: ~~Seller and Purchaser warrant to each other that no broker has been involved in this transaction. That this Contract was negotiated directly between Seller and Purchaser and each party hereby indemnifies the other against any liability for any claim to real estate brokerage commission asserted by any broker except: None.~~

13. NOTICES: Except as provided in Paragraph 6 with respect to notice of the scheduled closing date, all notices to be given hereunder shall be in writing and sent by registered or certified mail, return receipt requested, to the Seller at the address inserted on the first page of this AGREEMENT, or delivered personally to the Seller's sales office. Except as otherwise expressly provided

13

herein, the date of mailing shall be deemed the date of the giving of notice, except that the date of actual receipts shall be the date of giving any notice of change of address.

14. RECEIPT OF DOCUMENT BOOK: (This paragraph is only applicable if there is a homeowners and/or master property owners association membership association with this purchaser). Purchaser acknowledges having received and read and statement of disclosure for the project, which is contained in the document booklet, which was delivered to Purchaser prior hereto or simultaneously herewith, receipt of which is hereby acknowledge. The property is subject to the terms, conditions, and obligations, covenants and provisions contained in the documents included in the document book (documents). Purchaser agrees that Seller may amend, modify, or change any or all of he documents in any manner which Seller, in its sole discretion, may deem to be the best interests of the development of the project.

15. WARRANTY: At closing of title, Seller shall deliver to Purchaser, its express Limited Warranty. Such Warranty shall be the only Warranty of Seller. To the extent lawful, all implied warranties of fitness for a particular purpose, merchantability and habitability, and all warranties imposed by Statute, are specially disclaimed.

16. SURVIVAL: The provisions and disclaimers in the AGREEMENT, which are intended to have effect subsequent to closing of title, shall survive such closing and delivery of the deed.

17. MISCELLANEOUS PROVISIONS:

    (a) This AGREEMENT shall constitute Purchaser's subscription to Membership in the homeowner's association and master property Association (if any) and his agreement to take subject to and fully perform each obligations and responsibilities imposed upon him as a member of said associations as set forth in the documents included in the document book. (This paragraph is only applicable if there is a homeowners and/or master property owners association membership associated with this Purchaser).

    (b) No lien arise as a result of this AGREEMENT on any monies deposited hereunder and this AGREEMENT shall be subject and subordinated to any mortgage now or hereafter placed upon the RESIDENCE by Seller. Seller may record all documents relating to the RESIDENCE and the entire project, which Seller deems appropriate.

    (c) As long as Seller, or any nominees of Seller, owns any RESIDENCE in the project, Seller and/or its said nominees shall have the right and privilege to maintain general sales offices in and about the project, including model residences, and to have their employees present on the

14

premises to show RESIDENCES, use the common areas and, without limitations, to do any and all other things necessary to appropriate by them to sell lease RESIDENCE all without charge or contribution: provided, however, that said activities shall be carried on in such a manners as will no unreasonably interfere with the RESIDENCE owners' enjoyment of their property.

(d) The term "Purchaser" shall be read as "Purchaser's" if two or more persons are purchasers, in which their obligations shall be deemed joint and several.

(e) The use of the masculine gender in this AGREEMENT shall be deemed to refer to the feminine or neuter gender, and the singular shall include the plural (and vise versa), whenever the context so requires.

(f) The captions of this AGREEMENT are for convenience of reference only and in no way define, limit or describe the scope of this AGREEMENT, or the intent of any provision hereof.

(g) Whenever this AGREEMENT shall require the Seller to complete an item of construction, unless provide specifically to the contrary herein, such item shall be deemed complete or substantially complete when so completed, in the sole and unfettered opinion of the Seller.

If any provision of this AGREEMENT shall be determined unenforceable, such determination shall not affect any of the other provisions hereof, all of which other provisions shall remain in full force and effect.

(h) Purchaser acknowledges that the primary inducement to purchase under this AGREEMENT is the RESIDENCE.

(i) The explanations, disclaimers and limitations set forth in the document book are hereby incorporated herein by this reference.

(j) In the event of litigation concerning provisions of this AGREEMENT, including but not limited to, the rights of rescission granted hereby, or as a result of applicable law or regulations, the prevailing party shall be entitled to reasonable attorney's fees (and appellate attorney's fee) in the event the Seller is the prevailing party.

(k) Time shall be of essence hereof.

15

(l) RADON GAS: Radon is a naturally occurring radioactive gas that, when it has accumulated in building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in building in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit. (Seller has made no geological or environmental tests or surveys of the property or to the improvements, and makes no representation or warranty concerning geological or environmental matters from any warranties given under this AGREEMENT).

(m) ADDITIONAL CHANGES: Purchaser agrees and understands that it may be necessary (at any time and from time to time) after Purchaser executes this AGREEMENT, for Seller to change the terms and provisions of the AGREEMENT and/or the homeowner or property owner association Documents to comply with and conform to the rules and regulations (as same may exist and as same may be promulgated from time to time) of the (j) Federal National Association, (ij) Government National Mortgage Association, (iii) Federal Home Loan Mortgage Corporation, and/or (iv) Federal Housing Administration/Veterans Administration. Seller is hereby authorized to make any and all Changes contemplated in Paragraph 14.

(n) WAIVER OF TRIAL BY JURY: The Purchaser and the seller hereby knowingly, voluntarily and intentionally waive any right each may have to a trial by jury in respect of any litigation based hereon, or arising out of, under or in connection with this contract or any addendum contemplated to be executed in conjunction herewith, or any course of conduct of dealing, statement (whether oral written) or action of the Purchaser and Seller, furthermore the Purchaser and the Seller agrees that each party shall be responsible for their own attorney's fees and costs in the litigation.

16

# LIMITED WARRANTY

1. We hope you will be happy in your new home. It has been constructed in accordance with accepted building practices.
2. The warranty set forth in this Limited Warranty commences on the date which title to your home is conveyed to you (the "Closing"). Any time periods specified herein will not be extended by any acts or inaction on the part of Buyer or Seller, and are not waived or extended by any repairs or requests for repairs.
3. Any request for service under this Limited Warranty must be sent, in writing, during the period of the applicable portion of this Limited Warranty, to our office at the address appearing below the signature line on this Warranty. The request for service must set forth the nature of your warranty claim and a description of the alleged problems. Any request for service should also indicate reasonable times during which you will be available at your home so we can schedule the appropriate work.
4. For a period of one (1) year after Closing, we will repair or replace, whichever we determine to be appropriate, any structural defects in workmanship or materials, in the portion of the following systems which service only your individual unit:
    (a) the plumbing system;
    (b) the air conditioning system and the heating system, if any;
    (c) the electric wiring system; and
    (d) roof leaks.
5. For a period of sixty (60) days after Closing, we agree that upon receipt of a written service request, we will review said request and/or make an inspection of your home with you, and if we deem necessary, will repair or replace, whichever we determine to be appropriate, any defects in workmanship or materials and will adjust where necessary, the following items:
    (a) doors, including hardware, except height;
    (b) windows and screens;
    (c) electric switches, receptacles and fixtures;
    (d) caulking around exterior openings;
    (e) plumbing fixtures;
    (f) cabinet work;
    (g) carpet; and
    (h) ceramic tile.
6. We hereby assign and pass through to you the manufacturer's warranty, if any, for appliances and equipment such as refrigerator, range, hot water heater, washing machine, clothes dryer, dishwasher, garbage disposal, ventilating fan, air conditioner, and like items. Such items are excluded from this Limited Warranty. It will be your responsibility to assert any warranty claim against the manufacturer.
7. This Limited Warranty expressly excludes and there will be no implied assumption of responsibility for:
    (a) damage due to ordinary wear, tear and/or abusive use;
    (b) defects which are the result of characteristics common to the materials used, such as, but not limited to:
        (i) warping and deflection of wood;
        (ii) fading, chalking and checking of paint;
        (iii) cracks due to drying, shrinking, curing and/or settlement of the structure affecting building materials such as: concrete, stucco, brick, masonry, drywall, plaster, woodwork, and/or ceramic tile; and
        (iv) drying, shrinking and cracking of caulking and weatherstripping; and
    (c) loss or injury caused in any way by the elements including, but not limited to, water damage or damage caused by high winds;
    (d) conditions resulting from condensation on, or expansion or contraction of materials;
    (e) damage to equipment or any other property not supplied by us; or
    (f) mildew.
8. THIS LIMITED WARRANTY IS THE ONLY EXPRESSED WARRANTY GIVEN. EXCEPT FOR THE WARRANTY PROVIDED IN FLORIDA'S STATUTE, SECTIOTN 718.203 AS IT EXISTS ON THE DAY OF CLOSING, THIS LIMITED WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, OR THAT THE UNIT WILL BE CONSTRUCTED IN ACCORDANCE WITH THE PLANS AND SPECIFICATIONS ON FILE WITH ANY GOVERNMENTAL AUTHORITY, WHETHER ARISING FROM CUSTOM, USAGE, COURSE OF TRADE, STATUTES, CASE LAW OR OTHERWISE, AND SHALL BE LIMITED TO THE WARRANTY PERIODS SET FORTH ABOVE. THE UNDERSIGNED EXPRESSLY DISCLAIMS ANY LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, INABILITY TO POSSESS THE UNIT, INCONVENIENCE, STORAGE COSTS, LOSS OF TIME, PERSONAL INJURY, DAMAGE TO IMPROVEMENTS MADE BY YOU, OR ANY OF YOUR PERSONAL PROPERTY. THIS WARRANTY GIVES YOU SPECIFIC RIGHTS AND YOU MAY ALSO HAVE OTHER RIGHTS UNDER STATE LAW.
9. If you seek to pursue any claim or denied request for service under this Limited Warranty, you must give us notice of your intent to make a claim and the estimated amount of the claim in writing. Thereafter we may notify you within thirty (30) days from receipt of said notice of our election to have the claim settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. In the event that we fail to so notify you within said thirty (30) day period, then you may proceed to commence an action for such claim in the courts of the State of Florida. In the event that we prevail on your claim, whether said claim be arbitrated or litigated, you shall be liable for all costs and expenses incurred by us on said claim, which sum shall include reasonable attorney's fees.
10. This warranty runs in favor only of the original purchaser of this unit and terminates when the property is resold or is no longer occupied by the condominium unit owner to whom it is originally issued.
11. This warranty shall be automatically voided in the event you add to or in any manner modify any items constructed or supplied by us or if you make any structural or other changes.
12. Warranty work under this Limited Warranty will be done only by the undersigned or by a contractor provided by the undersigned. There will be no charge for labor, materials or transportation on the warranty work covered by this Limited Warranty.

RECEIPT ACKNOWLEDGED:

Dated: _____

_____ (Buyer)

_____ (Buyer)

(Seller)

By: _____

Dated: _____

Address: _____

_____

_____