# EXHIBIT A

**Debbie Murphy**

| | |
|---|---|
| **To:** | 'bassh@gtlaw.com'; 'nsivyer@sbwlegal.com' |
| **Cc:** | Lexy_Butler@laed.uscourts.gov; 'Dorothy Wimberly'; Ehrenreich, Todd; Gonzalez, Ervin; Russ Herman; ldavis@hhkc.com; Fred Longer; 'Jane Byrne' |
| **Subject:** | Chinese Drywall Litigation |
| **Attachments:** | Fallon letter.pdf |

From Arnold Levin –

See attached letter.

Debbie Murphy
Levin, Fishbein, Sedran & Berman
Counsellors at Law and Proctors in Admiralty
510 Walnut Street - Suite 500
Philadelphia, PA 19106-3697
Tele: 215-592-1500 – Fax: 215-592-4663
www.lfsblaw.com

CONFIDENTIALITY NOTE: This e-mail message contains information belonging to the law firm of Levin, Fishbein, Sedran & Berman and may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual or entity named above. If you think that you have received this message in error, please e-mail the sender. If you are not the intended recipient, please delete the message and understand that any dissemination, distribution or copying is strictly prohibited.

# LEVIN, FISHBEIN, SEDRAN & BERMAN
*Counsellors at Law and Proctors in Admiralty*

ARNOLD LEVIN
MICHAEL D. FISHBEIN
HOWARD J. SEDRAN
LAURENCE S. BERMAN
FRED S. LONGER *
DANIEL C. LEVIN
CHARLES E. SCHAFFER
AUSTIN B. COHEN
MICHAEL M. WEINKOWITZ *
CHARLES C. SWEEDLER *
MATTHEW C. GAUGHAN * †

* also admitted in New Jersey
† also admitted in New York

510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106-3697

TELEPHONE (215) 592-1500
FACSIMILE (215) 592-4663

*VIA E-MAIL*

June 30, 2011

Hilarie Bass, Esquire
Greenburg, Traurag
333 Avenue of the Americas
Miami, FL 33131

Neal A. Sivyer, Esquire
Sivyer Barlow & Watson, P.A.
Suntrust Financial Center
401 E. Jackson Street, Suite 2225
Tampa, FL 33602

> **Re:** *In re: Chinese Drywall Litigation – MDL No. 2047*

Dear Hilarie and Neal:

Pursuant to Judge Fallon's directive, this letter serves as Proposed Class Counsel's and the Plaintiffs' Steering Committee's position with regard to Lennar and Taylor-Morrison's unique claims of entitlement to sums of money greater than that identified in the papers which were to be provided to the Court under seal pursuant to the Banner Settlement Agreement, Sections 1.13 and 1.14. You must understand that the settlement figures were provided to us by the Banner attorneys. Accordingly, they became part of the Settlement Agreement. Further, we have been informed by Banner's counsel that as to Lennar, no agreement exists as to any additional Lennar homes other than those already identified, and that while a dispute exists as to the amount due to Taylor-Morrison, there is no written agreement as to the homes at issue. As such, by copy of this letter, I am asking the Banner entities to provide their position with regard to the matters.

We have a fiduciary obligation to all class members, including home owners as well as builders. I recognize the fact that each of you has a fiduciary obligation to your individual clients. I am sure you are aware of your additional fiduciary obligations as liaison counsel/members of the

LEVIN, FISHBEIN, SEDRAN & BERMAN

Hilarie Bass, Esquire
Neal A. Sivyer, Esquire
June 30, 2011
Page two

_____

Home Builders' Steering Committee to all builders who are absent class members. These absent class members, builders as well as home owners, have distributive shares in the settlement funds may be adversely impacted by your position. Therefore, it is apparent that your current position is simply to maximize recovery for your individually retained clients. In contrast to your interest, our interests and obligations are to the entire class and we are obligated to insure that no payments to individually retained clients adversely impact on the class as a whole.

It would also be helpful to evaluate the Lennar and Taylor-Morrison claims if you would quantify the payments they seek so that they can be compared to the payments that the absent class members may receive. In this regard, it would be further helpful for you to provide the Court with the details of any other settlements from third parties dealing with the homes at issue, whether they be Knauf or other entities. With that information in hand, we can be assured that there is no unwarranted windfall to Lennar and Taylor-Morrison.

I believe that the information provided to the Court will allow Judge Fallon to assist us in resolving this matter. Hopefully, you are not negotiating on behalf of your clients by threatening opt-outs to unfairly gain an advantage over the absent class members. This would be wrong.

Thank you for your continued cooperation.

Sincerely,

ARNOLD LEVIN

dcm
cc:     The Honorable Eldon E. Fallon (via email)
        Todd Ehrenreich, Esquire (via email)
        Jane Byrne, Esquire (via email)
        Dorothy H. Wimberly, Esquire (via email)
        Russ Herman, Esquire (via email)
        Leonard A. Davis, Esquire (via email)
        Ervin Gonzalez, Esquire, (via email)
        Fred S. Longer, Esquire

 **GreenbergTraurig**

Hilarie Bass
Tel. (305) 579-0745
Fax (305) 579-0717
bassh@gtlaw.com

July 1, 2011

<u>VIA ELECTRONIC MAIL</u>

Arnold Levin, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697

  Re: **In Re: Chinese Manufactured Drywall Products Liability Litigation,
     MDL No. 2047**

Dear Arnie:

  This shall respond to your letter dated Thursday, June 30, 2011.

  The genesis of Lennar's negotiations with Banner dates back to before the summer of 2010. As part of those negotiations, Lennar provided Banner with a complete list of its then-known affected homes. On July 14, 2010, Banner confirmed delivery to 530 of those homes, and that number has since grown.

  During the ongoing discussions, Banner committed that it would pay Lennar for homes that met Banner's stated criteria. The settlement criteria was as follows:

  1. Confirmation that Banner supplied the drywall to the home;
  2. The Environ documentation provided by Lennar reflects evidence of defective
    drywall in the home; and
  3. Lennar produced repair cost data for the home.

Banner began at that time to undertake a review of literally thousands of pages of Lennar's supporting documentation to determine how many of Lennar's homes met the criteria for payment under the settlement.

  As of July 29, 2010, Banner had confirmed in writing that 129 of Lennar's affected homes met these settlement criteria. Thereafter, however, over the course of the next several months, the settlement negotiations between Banner and Lennar

Arnold Levin, Esq.
July 1, 2011
Page 2

---

continued. In late December 2010, Banner and Lennar finally reached agreement in principle on all material terms of the settlement, including the price per square foot that Banner, through Chartis, would pay within thirty days of executing the final settlement agreement on all of Lennar's affected homes meeting Banner's settlement criteria as of the date the settlement agreement was executed. Banner's insurer, Chartis, was on board with the settlement. As Banner and Lennar were moving forward to memorialize the terms of the settlement into a formal settlement document, Lennar continued to provide Banner with additional supporting documentation regarding its affected homes. In fact, as of over two months ago, the number of Lennar affected homes meeting all of Banner's settlement criteria had reached 466.

Well before the MDL settlement agreement between Banner and the PSC was finalized, when Lennar requested the final settlement document from Banner, Banner's counsel advised that Banner was trying to decide whether it should execute the deal for the full 466 homes, or whether it should unilaterally limit the settlement to the 129 homes previously confirmed approximately 10 months earlier. Completely ignoring Banner's agreement to pay on all homes meeting its criteria, Banner's counsel subsequently informed me that they would only be able to pay on the 129 homes because you told him that 466 homes were too many to be included in the settlements that were carved-out out of the Banner MDL settlement agreement. Simply put, Lennar is of the view that it had a deal with Banner for payment for the 466 homes that indisputably met the settlement criteria.

With reference to your assertion regarding my obligations to the homebuilders' group, I am fully aware of what those obligations are. I also understand my obligations to my client, Lennar, who rightfully seeks to have Banner abide by the settlement terms that were agreed to between Banner and Lennar. I can assure you that Lennar would like nothing more than for this Court to be able to approve the settlement with Banner. Unfortunately, because you purposefully excluded us from those discussions, despite Judge Fallon's directive to the contrary, there are a number of additional material problems with the agreement that could have been easily resolved had we been involved.

I also take issue with your suggestion that your refusal to make even a single change to the settlement agreement is your attempt to satisfy some fiduciary obligation to homebuilders. As you know, you are actively suing these homebuilders on behalf of thousands of clients. This again underscores the inherent conflict of interest that you have by suggesting that you, without separate counsel for a homebuilder subclass, can somehow represent the interests of homebuilder class members.

Lastly, your request for information about other settlements that Lennar may have reached is completely irrelevant to what were the terms of Lennar's deal with Banner.

Arnold Levin, Esq.
July 1, 2011
Page 3

If you have any questions, please contact me.

Sincerely,

Hilarie Bass

cc:    The Honorable Eldon E. Fallon (via email)
       Lexy Butler, Esq. (via email)
       Todd Ehrenreich, Esq. (via email)
       Jane Byrne, Esq. (via email)
       Dorothy Wimberly, Esq. (via email)
       Neal Sivyer, Esq. (via email)
       Russ Herman, Esq. (via email)
       Leonard Davis, Esq. (via email)
       Ervin Gonzalez, Esq. (via email)
       Fred Longer, Esq. (via email)

MIA 181,970,737v1 7-1-11

**Debbie Murphy**

| | |
|---|---|
| **From:** | Goenaga, Alina M. [agoenaga@wwhgd.com] |
| **Sent:** | Friday, July 01, 2011 2:56 PM |
| **To:** | 'lexy_butler@laed.uscourts.gov' |
| **Cc:** | Ehrenreich, Todd; Arnold Levin; 'Ervin@colson.com'; 'mpeterson@petersonespino.com'; 'janebyrne@quinnemanuel.com'; 'rherman@hhkc.com'; 'nsivyer@sbwlegal.com'; 'bassh@gtlaw.com' |
| **Subject:** | Banner Settlements with Taylor Morrison & Lennar |
| **Attachments:** | MI-Color-Canon334276-QuickConnect-07012011-143450.pdf |

Good afternoon,

Attached please find Todd Ehrenreich's letter dated July 1, 2011.

Thank you.

The information contained in this message may contain privileged client confidential information. If you have received this message in error, please delete it and any copies immediately.

1

# WEINBERG, WHEELER,
# HUDGINS, GUNN & DIAL, LLC

### ATTORNEYS AT LAW

2601 SOUTH BAYSHORE DRIVE
SUITE 1500
MIAMI, FLORIDA 33133
TELEPHONE (305) 455-9500
FACSIMILE (305) 455-9501
WWW.WWHGD.COM

Writer's Direct Dial:   (305) 455-9505
E-mail:   tehrenreich@wwhgd.com

July 1, 2011

**Via E-Mail: lexy_butler@laed.uscourts.gov**
Judge Eldon E. Fallon
500 Poydras Street
Room C456
New Orleans, LA 70130

Re:    **Banner Settlements with Taylor Morrison & Lennar**

Dear Judge Fallon:

In furtherance of Arnold Levin's letter to Hillarie Bass and Neal Sivyer of June 30, 2011, the following is a brief chronology of events concerning Banner and its attempts to resolve settlement of certain homes with the developers Taylor Morrison and Lennar, represented by Mr. Sivyer and Ms. Bass, respectively.

Settlement negotiations between Taylor Morrison, Knauf and Banner began in 2010 and continued into early 2011. The parties eventually agreed to a settlement figure per square foot for approximately 90 homes with Banner and its insurers paying a specific amount. The negotiation process then began for specific release language which continued for months into as late as February 2011. Because of the parties' inability to agree on a common Release, Mr. Sivyer's client, Taylor Morrison, expressed to Banner that it would settle with Knauf, but also continue to pursue its claims against Banner. Subsequently, Taylor Morrison moved aggressively in compelling Banner to respond to outstanding discovery and began setting Banner corporate representative depositions.

As the Banner class settlement entered into its final phases, Banner chose to attempt to honor the amount contemplated in the original Taylor Morrison/Knauf/Banner proposed settlement although there was no actual subsequent contract or formal agreement between Taylor Morrison and Banner. Simultaneously, Banner's counsel was asked to tally the total

---

ATLANTA                         LAS VEGAS                         MIAMI

Page 2

amount in dollars of both the pending settlements and those settlements previously paid on behalf of Banner. The final settlement numbers were to be provided to the Court, Chartis, Banner, and the Plaintiffs Steering Committee. Unfortunately, through pure scrivener's error, the final figures provided inadvertently transposed a dollar sign next to the total square footage figure for the Taylor Morrison homes instead of reflecting the prior proposed settlement amount. This inaccurate figure was unfortunately passed on to the interested parties and incorporated into the final net amount available for the class settlement. (Once the error was discovered, the undersigned immediately informed all of the parties and has made attempts to resolve the issue.)

As to the Lennar claim, Lennar has periodically increased the number of homes it believes should be considered by Banner in settlement discussions. (Based on belief and understanding, Lennar had by the end of Summer 2010 globally settled with Knauf and was seeking further settlement proceeds from Banner.) There were 129 Lennar homes confirmed as Banner supplied and based on documentation produced were in need of remediation. Although further documentation was subsequently provided for other Lennar homes, Banner and its insurers opted to honor settlement of only the 129 homes. As explained to Lennar's counsel, the inequity of carving out additional Banner insurance proceeds for other Lennar homes would create a disproportionate amount available to homeowners and other claimants. A proposed Release by Banner was sent to Lennar and Banner's insurers for the 129 homes. The undersigned is still awaiting confirmation of the proposed language.

If the Court requires any other facts or information, the undersigned will immediately comply with those requests.

Very truly yours,

WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, LLC

Todd R. Ehrenreich

TRE/amg
cc: Arnold Levin, Plaintiff's Steering Committee (via e-mail)
Ervin Gonzalez, Plaintiff's Steering Committee (via e-mail)
Michael Peterson, Personal counsel, Banner Supply (via e-mail)
Jane Byrne, Counsel for Chartis (via e-mail)
Russ Herman, Plaintiff's Steering Committee (via e-mail)

01097553

Page 3

Neal Sivyer, Counsel for Taylor Morrison (via e-mail)
Hillarie Bass, Counsel for Lennar (via e-mail)

01097553

**Debbie Murphy**

| | |
|---|---|
| **From:** | Fred Longer |
| **Sent:** | Friday, July 01, 2011 5:16 PM |
| **To:** | 'Lexy_Butler@laed.uscourts.gov' |
| **Cc:** | Hilarie Bass (bassh@gtlaw.com); Neal A. Sivyer (nsivyer@sbwlegal.com); 'Todd R. Ehrenreich (tehrenreich@wwhgd.com)'; 'Jane Byrne'; Dorothy H. Wimberly (dwimberly@stonepigman.com); Russ Herman; 'Lenny Davis'; Gonzalez, Ervin; Fred Longer; Arnold Levin |
| **Subject:** | CDW - MDL No. 2047 |
| **Attachments:** | DOC070111-001.pdf |

Dear Lexy:  Please present Judge Fallon with the attached letter.  Thank you.  Respectfully,  FSL


Fred S. Longer
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street
Suite 500
Philadelphia, PA 19106
(215) 592-1500
(215) 592-4663 - fax
www.lfsblaw.com

CONFIDENTIALITY NOTE: This e-mail message contains information belonging to the law firm of Levin, Fishbein, Sedran & Berman and may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual or entity named above. If you think that you have received this message in error, please e-mail the sender. If you are not the intended recipient, please delete the message and understand that any dissemination, distribution or copying is strictly prohibited.

# LEVIN, FISHBEIN, SEDRAN & BERMAN
### *Counsellors at Law and Proctors in Admiralty*

ARNOLD LEVIN
MICHAEL D. FISHBEIN
HOWARD J. SEDRAN
LAURENCE S. BERMAN
FRED S. LONGER •
DANIEL C. LEVIN
CHARLES E. SCHAFFER
AUSTIN B. COHEN •
MICHAEL M. WEINKOWITZ • †
CHARLES C. SWEEDLER •
MATTHEW C. GAUGHAN • †
KEITH J. VERRIER •
BRIAN F. FOX
• also admitted in New Jersey
† also admitted in New York

510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106-3697
www.lfsblaw.com

TELEPHONE (215) 592-1500
FACSIMILE (215) 592-4663

OF COUNSEL:
SANDRA L. DUGGAN

July 1, 2011

**VIA EMAIL**

The Honorable Eldon E. Fallon
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room C-456
New Orleans, LA 70130

Re:   ***In re: Chinese Drywall Litigation – MDL No. 2047***

Dear Judge Fallon:

In response to the Court's directive, I corresponded with Mr. Sivyer and Ms. Bass yesterday regarding the issues that have arisen in connection with the Banner Settlement Agreement that pertain to Lennar Homes and Taylor-Morrison. Both Ms. Bass and Mr. Sivyer have responded to my letter today. Mr. Ehrenreich has also responded to my letter by writing directly to the Court today on this matter.

From all of these responses, the PSC can make several observations. First, the PSC is not privy to nor a party to the negotiations that took place between Banner, Lennar or Taylor-Morrison on the matters at issue. Second, the facts of the matters at issue can only be determined by the parties as they have not shared with the PSC any of the documents they possess supporting their respective positions. Third, judging from the statements in Ms. Bass's letter, there does not appear to be any firm agreement between Banner and Lennar on the terms she is attempting to obtain. ("Banner was trying to decide whether it should execute the deal for the full 466 homes, or whether it should unilaterally limit the settlement to the 129 home previously confirmed approximately 10 months earlier.") Mr. Ehrenreich confirms that Banner opted to honor the settlement of only the 129 homes. There was no valid undertaking. This is beyond peradventure. As to Taylor-Morrison, as stated by the parties, it appears that Banner would have attempted to honor a past understanding that had not been reduced to an actual agreement with Taylor-Morrison, but no formal agreement was obtained. This is crystal clear. As a result of some error related to this past understanding, the PSC was provided with and incorporated into the Settlement Agreement a Prior Settlement figure that was inaccurate.

LEVIN, FISHBEIN, SEDRAN & BERMAN

July 1, 2011
Page two

_____

The PSC is only able to observe these disagreements from afar as it lacks any written support of same.  We understand, however, that Lennar has money from other sources and it is refusing to provide us with this information contending that such details are irrelevant.  Absent a complete understanding of the matters at issue, we must observe our fiduciary duty to the class as a whole and maintain that because Banner represents that there are no agreements between the parties the Settlement Agreement should stand as written.

We await the Court's advices.

Respectfully,

Arnold Levin

AL:mh
cc:  Hilarie Bass, Esquire (via email)
     Neal A. Sivyer, Esquire (via email)
     Todd Ehrenreich, Esquire (via email)
     Jane Byrne, Esquire (via email)
     Dorothy H. Wimberly, Esquire (via email)
     Russ Herman, Esquire (via email)
     Leonard A. Davis, Esquire (via email)
     Ervin Gonzalez, Esquire, (via email)
     Fred S. Longer, Esquire