# EXHIBIT C



Hilarie Bass
Tel. (305) 579-0745
Fax (305) 579-0717
bassh@gtlaw.com

July 1, 2011

**VIA ELECTRONIC MAIL**

Arnold Levin, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697

   Re: **In Re: Chinese Manufactured Drywall Products Liability Litigation,
     MDL No. 2047**

Dear Arnie:

   This shall respond to your letter dated Thursday, June 30, 2011.

   The genesis of Lennar's negotiations with Banner dates back to before the summer of 2010. As part of those negotiations, Lennar provided Banner with a complete list of its then-known affected homes. On July 14, 2010, Banner confirmed delivery to 530 of those homes, and that number has since grown.

   During the ongoing discussions, Banner committed that it would pay Lennar for homes that met Banner's stated criteria. The settlement criteria was as follows:

1. Confirmation that Banner supplied the drywall to the home;
2. The Environ documentation provided by Lennar reflects evidence of defective drywall in the home; and
3. Lennar produced repair cost data for the home.

Banner began at that time to undertake a review of literally thousands of pages of Lennar's supporting documentation to determine how many of Lennar's homes met the criteria for payment under the settlement.

   As of July 29, 2010, Banner had confirmed in writing that 129 of Lennar's affected homes met these settlement criteria. Thereafter, however, over the course of the next several months, the settlement negotiations between Banner and Lennar

Arnold Levin, Esq.
July 1, 2011
Page 2

---

continued.  In late December 2010, Banner and Lennar finally reached agreement in principle on all material terms of the settlement, including the price per square foot that Banner, through Chartis, would pay within thirty days of executing the final settlement agreement on all of Lennar's affected homes meeting Banner's settlement criteria as of the date the settlement agreement was executed.  Banner's insurer, Chartis, was on board with the settlement.  As Banner and Lennar were moving forward to memorialize the terms of the settlement into a formal settlement document, Lennar continued to provide Banner with additional supporting documentation regarding its affected homes. In fact, as of over two months ago, the number of Lennar affected homes meeting all of Banner's settlement criteria had reached 466.

Well before the MDL settlement agreement between Banner and the PSC was finalized, when Lennar requested the final settlement document from Banner, Banner's counsel advised that Banner was trying to decide whether it should execute the deal for the full 466 homes, or whether it should unilaterally limit the settlement to the 129 homes previously confirmed approximately 10 months earlier.  Completely ignoring Banner's agreement to pay on all homes meeting its criteria, Banner's counsel subsequently informed me that they would only be able to pay on the 129 homes because you told him that 466 homes were too many to be included in the settlements that were carved-out out of the Banner MDL settlement agreement.  Simply put, Lennar is of the view that it had a deal with Banner for payment for the 466 homes that indisputably met the settlement criteria.

With reference to your assertion regarding my obligations to the homebuilders' group, I am fully aware of what those obligations are.  I also understand my obligations to my client, Lennar, who rightfully seeks to have Banner abide by the settlement terms that were agreed to between Banner and Lennar.  I can assure you that Lennar would like nothing more than for this Court to be able to approve the settlement with Banner. Unfortunately, because you purposefully excluded us from those discussions, despite Judge Fallon's directive to the contrary, there are a number of additional material problems with the agreement that could have been easily resolved had we been involved.

I also take issue with your suggestion that your refusal to make even a single change to the settlement agreement is your attempt to satisfy some fiduciary obligation to homebuilders.  As you know, you are actively suing these homebuilders on behalf of thousands of clients.  This again underscores the inherent conflict of interest that you have by suggesting that you, without separate counsel for a homebuilder subclass, can somehow represent the interests of homebuilder class members.

Lastly, your request for information about other settlements that Lennar may have reached is completely irrelevant to what were the terms of Lennar's deal with Banner.

Arnold Levin, Esq.
July 1, 2011
Page 3

_____

       If you have any questions, please contact me.

                             Sincerely,

                             Hilarie Bass

cc:    The Honorable Eldon E. Fallon (via email)
       Lexy Butler, Esq. (via email)
       Todd Ehrenreich, Esq. (via email)
       Jane Byrne, Esq. (via email)
       Dorothy Wimberly, Esq. (via email)
       Neal Sivyer, Esq. (via email)
       Russ Herman, Esq. (via email)
       Leonard Davis, Esq. (via email)
       Ervin Gonzalez, Esq. (via email)
       Fred Longer, Esq. (via email)

*MIA 181,970,737v1 7-1-11*