# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br>**SECTION: L**<br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |

**THIS DOCUMENT RELATES TO:**
**ALL CASES AND**

*Payton, et al. v. Knauf Gips, KG, et al.*
Case No. 2:09-cv-07628 (E.D. La.)

*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*
Case No. 2:10-cv-00361 (E.D. La.)

*Gross, et al. v. Knauf Gips, KG, et al.*
Case No. 2:09-cv-06690 (E.D. La.)

*Rogers, et al. v. Knauf Gips, KG, et al.*
Case No. 2:10-cv-00362 (E.D. La.)

*Amato, et al. v. Liberty Mutual Ins. Co., et al.*
Case No. 2:10-cv-00932 (E.D. La.)

*Hernandez, et al. v. AAA Insurance, et al.*
Case No. 2:10-cv-03070 (E.D. La.)

*Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*
Case No. 2:11-cv-00080 (E.D. La.)

*Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
Case No. 2:11-cv-00252 (E.D. La.)

*Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*
Case No. 2:11-cv-01077 (E.D. La.)

*Vickers, et al. v. Knauf Gips KG, et al.*
Case No. 2:09-cv-04117 (E.D. La.)

**JOINT MOVANTS' OMNIBUS RESPONSE TO OBJECTIONS TO THE
JOINT MOTION FOR AN ORDER: (1) PRELIMINARILY APPROVING
THE BANNER SETTLEMENT AGREEMENT; (2) CONDITIONALLY
CERTIFYING A BANNER CLASS; (3) ISSUING CLASS NOTICE;
AND (4) SCHEDULING A FAIRNESS HEARING**

## I.   INTRODUCTION

The Plaintiffs' Steering Committee ("PSC") reached an arm's-length agreement with

Banner[1] and Banner's insurers (Chartis,[2] FCCI,[3] Hanover,[4] and Maryland Casualty[5]) (together the

"Joint Movants") to settle all claims as to Banner arising from the sale, distribution, marketing

and supply of Chinese Drywall.[6]  As part of this global resolution, all of Banner's remaining

available insurance proceeds, after deducting payments for Prior and Pending Settlements, will

---

[1] "Banner" includes all Banner entities, including, but not limited to, Banner Supply Co., Banner Supply Co. Pompano, LLC, Banner Supply Co. Port St. Lucie, LLC ("Banner PSL"), Banner Supply Co. Ft. Myers, LLC, Banner Supply Co. Tampa, LLC, and Banner Supply International, LLC, and any other entity insured under the Banner Insurance Policies and all of their past and present owners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, subsidiaries, divisions, affiliates, insurers, and all predecessors and successors, assigns, or legal representatives.

[2] "Chartis" includes Chartis Specialty Insurance Company (formerly known as "American International Specialty Lines Insurance Company"), Illinois National Insurance Co., National Union Fire Insurance Company of Pittsburgh, Pa., Commerce & Industry Insurance Co., and any other sister entities or entities related to the foregoing or to American International Group, Inc.

[3] "FCCI" includes FCCI Insurance Company, FCCI Commercial Insurance Company, National Trust Insurance Company, FCCI Mutual Insurance Holding Company, FCCI Group, Inc., FCCI Insurance Group, Inc., Monroe Guaranty Insurance Company, FCCI Services, Inc., FCCI Advantage Insurance Company, Brierfield Insurance Company, and FCCI Agency, Inc.

[4] "Hanover" includes Hanover American Insurance Company and Hanover Insurance Group, Inc.

[5] "Maryland Casualty" includes Maryland Casualty Company and all companies in the Zurich North America group of insurance companies.

[6] Capitalized terms used in this response shall have the same meaning as those defined in the Stipulation and Agreement of Settlement executed on June 10, 2011 (the "Settlement Agreement") [Rec. Doc. No. 9470-5].

be placed in a settlement fund for later distribution to participating Class Members.  Given the uncertainties and delays of litigation, Banner's financial ability to meet the claims at issue and the limited insurance available to Banner, the PSC's goal was to maximize this settlement for the benefit of all Class Members by seizing and securing a sum certain today, with the understanding that, following final approval, an allocation process based on objective criteria will take place with the assistance of a Special Master.  In furtherance of that aim, the Banner settlement provides that "[t]he Court shall entertain interventions for the purpose of determining the allocation and shall establish procedures by order setting forth the manner in which this allocation shall proceed."[7]  In other words, all interested parties will have an opportunity to comment on and/or object to the proposed plan for allocation at an appropriate juncture.

On June 10, 2011, the Joint Movants filed their motion for preliminary approval of the Settlement Agreement, requesting an order that would (1) preliminarily approve the Settlement Agreement; (2) conditionally certify the settlement class; (3) approve the proposed class notice; and (4) schedule a settlement Fairness Hearing.  The Joint Movants are seeking to disseminate notice to the class pursuant to Fed. R. Civ. P. 23(e), for purposes of allowing Class Members to decide whether they wish to accept the terms of the settlement and remain in the class, object to the settlement, or opt out altogether.

In response to this Court's Order scheduling a hearing on the Joint Motion for preliminary approval to take place on July 14, 2011, a handful of entities filed objections.  Out of hundreds of homebuilders and installers involved in the Litigation, only 14 objections, many of

---

[7] Settlement Agreement, Section 14.1.

them joinders and five of which were found deficient by the Court, were lodged with the Court.[8]

Most of the homebuilders' objections are made predominantly by the Homebuilders Steering

Committee ("HBSC"), which is a non-party entity that lacks standing to object.[9]  To our

knowledge, not a single homeowner has objected to preliminary approval.

As discussed below, the objections do not present valid grounds to halt the <u>preliminary</u>

approval process.  Significantly, no one has alleged or even hinted at any collusion or fraud on

the part of the Settling Parties and no one has challenged the assertion that this settlement was

negotiated at arm's length by adversaries.  Attorney Hilarie Bass, however, who is both Lead

Counsel for the HBSC and also counsel for Lennar, has objected to preliminary approval on the

grounds that she was improperly excluded from the settlement negotiations.  Ironically, Lennar's

objection makes clear that had Ms. Bass been "at the table," she would have insisted that

---

[8] *See* (1) Certain Homebuilders' Response in Opposition to the Joint Motion for Preliminary Approval of Stipulation and Agreement of Settlement (Aranda Homes) [Rec. Doc. No. 9709]; (2) Response and Objection of the Taylor Morrison Entities [Rec. Doc. No. 9717]; (3) Objection of Defendants JWR Construction Services, Inc. [Rec. Doc. No. 9724]; (4) Non-Party Douglas B. Francis's Joinder with the Opposition by Certain Homebuilders [Rec. Doc. Nos. 9728 and 9736] (found deficient); (5) Certain Homebuilders' Response in Opposition to the Joint Motion for Preliminary Approval (HBSC) [Rec. Doc. No. 9730]; (6) Judson Construction, LLC's Joinder with the Opposition by Certain Homebuilders [Rec. Doc. Nos. 9732 and 9739] (found deficient); (7) Timberline Builders, Inc. Joinder with the Opposition by Certain Homebuilders [Rec. Doc. Nos. 9733 and 9740] (found deficient); (8) Response and Objection of the Lennar Entities to the Joint Motion for Preliminary Approval [Rec. Doc. No. 9734]; (9) Non-Party BMD, Inc.'s Joinder in the Installer Defendants' Objections [Rec. Doc. No. 9744] (found deficient); (10) Defendant Coral Plastering and Wall Systems, Inc.'s Joinder in the Installer Defendants' Objections [Rec. Doc. No. 9745] (found deficient); (11) Installer Defendants' Objections to the Joint Motion for Preliminary Approval [Rec. Doc. No. 9748]; (12) Certain Florida Homebuilders' Response in Opposition [Rec. Doc. No. 9751]; (13) Response in Opposition filed by Defendant Excel Construction of S.W. Florida, Inc. (Joining Certain Homebuilders' Opposition) [Rec. Doc. No. 9752]; (14) Response in Opposition filed by Defendant Coastal Construction Group of South Florida, Inc. (Joining Certain Homebuilders' Opposition) [Rec. Doc. No. 9755].

[9] As only the unidentified clients of these counsel may have interests affected by the Banner Settlement Agreement, the objections filed by the HBSC are defective.  *See In re Vioxx Prods. Liab. Litig.*, 388 Fed. Appx. 391, 395 (5th Cir. 2010) ("This court has recognized that, in the context of class settlements, non-settling parties generally have no standing to challenge the settlement.").

hundreds of additional homes which Lennar had remediated qualified for inclusion in the "carve out" for Pending Settlements.  The inclusion of these additional Lennar homes in the Pending Settlement total would, of course, significantly reduce the amount of Banner's insurance available for the thousands of other Class Members awaiting redress.[10]  In stark contrast, the PSC negotiated the Banner settlement on behalf of the *entire* class, seeking to amass the maximum fund available for *all* claimants (including builders and installers).

The Installer Defendants have argued that since the language of Rule 23 of the Federal Rules of Civil Procedure "does not discuss the need for a preliminary approval or a conditional certification of a class[,] . . . [a]ny such rulings would be at best advisory and . . . beyond the jurisdiction of the Court."[11]  This claim flies in the face of a significant body of law lauding the preliminary approval process for class settlements.

The remaining substantive objections filed by homebuilders and installers address the merits of the settlement, which is a matter better left for <u>final</u> consideration at the Fairness Hearing.  These complaints can be summarized as follows:

- The total available insurance figures are incorrect due to a mathematical error made in the calculation of a Pending Settlement involving the Taylor Morrison entities.[12]

- Class Members must decide whether to opt out before knowing exactly what their

---

[10] Lennar's objection evidences a clear conflict of interest on the part of Lennar's counsel. Lennar is objecting for itself only in order to recover more under the "carve out" for Pending Settlements, while at the same time Lennar's counsel is purporting to object on behalf of other homebuilders.

[11] Installer Defendants' Objection at 4 [Rec. Doc. No. 9748].

[12] Taylor Morrison's Objection at 3 [Rec. Doc. No. 9717].

recovery may be.[13]

•    The class definition is overly broad and includes claimants with disparate and conflicting interests.[14]

•    The class representatives and their counsel are inadequate.[15]

•    The Class Member release is ambiguous and/or overly broad.[16]

•    It is unclear whether opt-outs are barred under the settlement from pursuing claims against the Settling Defendants.[17]

•    Section 3.3.5 of the Settlement Agreement allegedly releases the defendants upstream of the homebuilders, while leaving homebuilders fully exposed to claims by homeowners.[18]

•    Notice costs should be borne solely by the PSC and should not come out of the settlement fund.[19]

•    Homebuilders should have the right to submit a proof of claim form for any homeowner who does not opt out but fails, nevertheless, to submit a proof of claim under the

_____

[13] Aranda Homes' Objection at 4 [Rec. Doc. No. 9709]; JWR Construction's Objection at 4 [Rec. Doc. No. 9724]; HBSC's Objection at 6 [Rec. Doc. No. 9730]; Excel Construction's Objection at 2 [Rec. Doc. No. 9752]; Coastal Construction's Objection at 2 [Rec. Doc. No. 9755].

[14] HBSC's Objection at 7 [Rec. Doc. No. 9730]; Installer Defendants' Objection at 2-3 [Rec. Doc. No. 9748].

[15] HBSC's Objection at 5-6 [Rec. Doc. No. 9730].

[16] HBSC's Objection at 8-9, 12-13 [Rec. Doc. No. 9730].

[17] JWR Construction's Objection at 4 [Rec. Doc. No. 9724].

[18] HBSC's Objection at 5-6 [Rec. Doc. No. 9730]; *see also* Excel Construction's Objection at 3-4 [Rec. Doc. No. 9752].

[19] HBSC's Objection at 10 [Rec. Doc. No. 9730].

5

settlement.[20]

- "Banner should not be granted a full release without any contribution without showing the affected parties the reason for not contributing to the Settlement."[21]

- The settlement improperly seeks to restrict discovery of evidence related to the Settlement Agreement.[22]

The Joint Movants submit that the Settlement Agreement easily satisfies the threshold for preliminary fairness evaluation to warrant both the dissemination of notice to the class and the scheduling of a Fairness Hearing where all objections may be heard. This omnibus response addresses the preliminary approval objections.

## II.   ARGUMENT

### A.   Rule 23 Settlement Jurisprudence Provides for Preliminary Settlements and Settlement Classes.

The Installer Defendants contend that because the Federal Rules of Civil Procedure do not expressly permit conditional certification of settlement classes or preliminary approval of class settlements, the Court would lack jurisdiction to grant the Joint Motion with respect to the Banner settlement.[23] This argument is belied by the well-established practice of the federal judiciary and governing Fifth Circuit law. There is ample authority for granting both preliminary approval of a class settlement and conditional class certification. *See In re Beef Ind. Antitrust*

---

[20] Aranda Homes' Objection at 5 [Rec. Doc. No. 9709]; JWR Construction's Objection at 4 [Rec. Doc. No. 9724].

[21] Coastal Construction's Objection at 3 [Rec. Doc. No. 9755].

[22] Installer Defendants' Objection at 13 [Rec. Doc. No. 9748].

[23] Installer Defendants' Objection at 5 [Rec. Doc. No. 9748].

*Litig.*, 607 F.2d 167, 177-78 (5th Cir. 1979) (recognizing that even though "Rule 23 does not deal specifically with a tentative settlement class[,] . . . a tentative class would appear to be a form of conditional certification, sanctioned by Rule 23(c)(1)" and holding in that case that "a tentative or temporary settlement class was proper"), *cert. denied*, 452 U.S. 905 (1981); Joint Memorandum of Law at 18-19.

The procedure for granting preliminary approval to a class settlement is so well established that it is fully delineated in the Manual for Complex Litigation (Fourth), *Preliminary Fairness Review* §21.632 (2004) (the "MCL"). The MCL states:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined.

*Id.* at 320-21 (emphasis added).

This Court adopted the reasoning of the MCL in *Cope v. Duggins*, No. CIV.A. 98-3599, 2001 WL 333102 (E.D. La. Apr. 4, 2001) (Fallon, J.) and *In re Chinese-Manufactured Drywall Products Liability Litigation*, Preliminary Approval Order regarding the Interior/Exterior Settlement (May 13, 2011) [Rec. Doc. No. 8818]. The Court's reasoning is as sound now as it was in *Cope*. The case relied upon by the Installer Defendants, *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 236 F.R.D. 53, 55 (D. Me. 2006), stands only for the proposition that preliminary approval of a class settlement "has no effect on the court's ultimate determination of whether a settlement should receive final court approval." *See Schoenbaum v.*

7

*E.I. Dupont De Nemours and Co.*, No. 4:05-CV-01108, 2009 WL 4782082, at *4 (E.D. Mo. Dec. 8, 2009) (citing *New Motor Vehicles*, 236 F.R.D. at 55). Rather, "it exists only in order to allow plaintiffs to determine whether the court believes that there are glaring deficiencies in the terms of the settlement, and accordingly a more lenient standard applies at the preliminary approval stage than at the final settlement approval." *Id.*

In this case, the proposed Banner Class Notice makes clear that:

> The Court has not certified a class in the Litigation for any other purpose and has made no determination that any class could be certified if these litigations are not settled hereby. Although the Court has indicated such preliminary approval of the Settlement, this Notice is not an expression of any opinion by the Court as to the merits of the claims and defenses which have been asserted in the Litigation.

Joint Memorandum of Law, Exhibit C at 5 [Rec. Doc. No. 9470-1]. There is, thus, no logical basis for the Installer Defendants' argument.

**B.      The Proposed Settlement Properly Gives Class Members the Right to Opt Out and Fairly Apprises Class Members of Their Recovery.**

A number of objectors, including the HBSC and others, contend that the proposed settlement is vague because Class Members cannot determine their specific recovery.[24] They claim, therefore, that it will be impossible for them to decide whether to opt out without knowing the details of the plan for allocation of settlement funds. JWR has even suggested that the

---

[24] Aranda Homes' Objection at 4 [Rec. Doc. No. 9709]; JWR Construction's Objection at 3 [Rec. Doc. No. 9724]; HBSC's Objection at 6 [Rec. Doc. No. 9730]; Excel Construction's Objection at 2 [Rec. Doc. No. 9752]; Coastal Construction's Objection at 2 [Rec. Doc. No. 9755].

settlement provide the "specific dollar amount" of recovery for each Class Member.[25] Ascertaining the details of individual awards under a class settlement is not now, nor has it ever been, required in class notices. *See In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197-98 (5th Cir. 2010) ("We have previously held, in the context of non-mandatory class settlements, that a notice is not required to provide a complete source of settlement information, and that a court does not abuse its discretion by omitting estimates of unit recovery if it concludes that such estimates were too unreliable to submit.") (citations omitted). Thus, the objectors' arguments have no sound legal basis.

Moreover, the proposed notice of the Settlement Agreement affords Class Members all the information about their recovery that is reasonably necessary. For example, the notice informs Class Members that the settlement fund in the amount of $54,475,558.30, consists of all remaining insurance proceeds available to Banner, after deducting for Prior and Pending Settlements. In addition, the notice advises that the settlement fund may be reduced by payment of counsel fees up to 32% of the fund and by the cost of notice. The notice thereafter advises that a fair and equitable procedure for allocation of the settlement fund will be established with a Special Master to assist the Court in the allocation process. The notice states that Class Members will be permitted to comment on and object to that procedure.

Given all of this information, Class Members are reasonably informed of the terms of the settlement sufficient for them to decide whether to object to the settlement or opt out. The exact precision sought by the objectors is misplaced.

―――――――――――――

[25] JWR Construction's Objection at 3 n.2 [Rec. Doc. No. 9724].

### C.     The Release and Bar Order Comport With Due Process.

It appears that the non-settling Homebuilder and Installer Defendants want too much. They want to take from the settlement as Class Members, be protected from claims by homeowners and not be subject to any reduction obligations for contribution and indemnity. Accordingly, their attacks on the indemnification provision and bar order are misplaced.

In *Orthopedic Bone Screws*, the court approved a much broader bar order, not only preventing Class Members from suing the settling defendant, but also preventing non-settling defendants and third parties from bringing actions against the settling defendant for claims such as contribution or indemnity. *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 181 (E.D. Pa. 1997). In order "[t]o further protect non-settling defendants' rights of contribution and indemnity, class members . . . agreed that, in situations in which [the settling defendant] or the Released Parties would have been liable on a claim for contribution or indemnity but for the bar order, class members w[ould] reduce any judgments against non-settling defendants by the amount required under applicable law to extinguish the liability of [the settling defendant] and the Released Parties." *Id.* The court's order approving the settlement noted the utility of bar orders in multi-district litigation:

> The settlement agreement contains a release and dismissal of contribution and indemnity claims by non-settling defendants. In their joint motion the PLC and [the settling defendant] assert that without an order barring non-settling defendants' contribution claims, it would be nearly impossible for one defendant in a multi-defendant mass tort litigation to settle. In that light, bar orders play an important role in facilitating settlement and many class action settlements include bar orders.

*Id.*

10

The bar order in the Banner settlement is much narrower, enjoining only Class Members.

In order to protect the Settling Defendants, the Banner settlement provides that:

> The Settlement Class and each of the Class Members shall satisfy
> any judgment to the extent necessary (under applicable state law
> whether it be pro rata, pro tanto, and/or set off) to extinguish any
> claims for contribution, indemnity, common law or contractual,
> and/or subrogation, whether arising under tort, contract or
> otherwise, by such third party against the Settling Defendants.  The
> Settling Defendants shall have no further liability in connection
> with the Released Claims, the Litigation, the Related Actions, the
> Related Claims, and/or the Banner Insurance Policies.

Settlement Agreement, Section 3.3.4.  In *School Asbestos*, the Third Circuit approved similar

language with respect to the settlement:

> The agreement with [the defendant] LAQ specifically provides
> that, in the event any defendant obtains a judgment against LAQ
> for contribution or indemnification, any judgment obtained by the
> class against such defendant will be reduced by any "amount
> percentage or share of such judgment attributable to LAQ.":
>
> The Class shall reduce any judgment it obtains against any
> defendant by the amount, percentage or share of such judgment
> attributable to LAQ so as to bar, discharge and release under
> applicable law any claims for contribution or indemnity against
> LAQ arising from or related to the Claims.  In the event that the
> Class obtains a judgment (including pursuant to a settlement
> agreement) against one or more of those defendants, obtains a
> judgment over, in whole or in part, against one or more of those
> defendants in the Litigation and any of those defendants obtains a
> judgment over, in whole or in part, against LAQ for contribution or
> indemnity, then the Class will be required to reduce or remit any
> judgment or portion thereof obtained from those defendants by the
> amount of the judgment over against LAQ.

*In re School Asbestos Litig.*, 921 F.2d 1330, 1333 (3rd Cir. 1990).  Accordingly, there is nothing

inappropriate or unusual in the Banner Settlement Agreement regarding the provisions protecting

the Settling Defendants in this manner.

11

Contrary to the objectors' assertions, the opt-out rights for Class Members are not impinged by either the releases or the bar order.  Class Members and their counsel (including non-settling defendants) must assess (as they do in any class settlement) whether they want to forgo the benefits of settlement in order to maintain their rights to go after the Settling Defendants.[26]  The problem here is that the objectors want to take from the settlement and want protection from homeowners, but they do not want to reduce their recovery in any way to account for contribution or indemnity claims.

The indemnification and release provisions of the Banner Agreement, as well as the bar order, are appropriate and comport with due process.[27]

### D.      Lennar Is Interested Only in Maximizing Its Own Recovery and Its Presence at Settlement Negotiations Would Not Have Benefitted the Class.

It is important to note that the contention by the HBSC, Lennar and others that they were excluded from settlement negotiations has no bearing on the fairness or adequacy of the settlement itself.  *See Vioxx,* 388 Fed. Appx. at 395 ("Mere allegations of injury in fact or tactical disadvantage as a result of settlement simply do not rise to the level of plain legal prejudice.").  Provided the settlement is fair, reasonable and adequate, it ought to be approved.  Whether the objectors think they could have done better or differently does not diminish the fact that the

---

[26]  As this Court is aware from the *Vioxx* Litigation, lawyers must "make difficult decisions . . . on a daily basis." *See Stratton Faxon v. Merck & Co., Inc.*, C.A. No. 3:07-cv-1776, 2007 WL 4554190 at *2 (D. Conn. Dec. 21, 2007).

[27]  The HBSC also argues that the Settlement Agreement could be read to bar Class Members from pursuing claims against Banner's Insurers under insurance policies issued to entities other than Banner.  HBSC's Objection at 8-9 [Rec. Doc. No. 9730].  The Joint Movants agree that the Settlement Agreement does not affect Class Members' rights under insurance policies other than the Banner Insurance Policies, as that term is defined in Section 1.5 of the Settlement Agreement.

proposed settlement agreement is fair on its face.

In any event, it is now clear that the objections of Lennar to preliminary approval are but a thinly veiled attempt to grab more money from Banner at the outset by increasing its claim to a "carve out" for Pending Settlements.[28]  Lennar is seeking to incorporate hundreds of additional homes that it remediated into a Pending Settlement with Banner.  Because any increases in the Pending Settlement total would decrease the total amount of insurance available for other Class Members, the PSC cannot support these contentions.

In sharp contrast to the goals of Lennar, the PSC set out to garner the maximum amount of available Banner insurance proceeds and place them in a settlement fund for the benefit of all Class Members, including homeowners, homebuilders, installers and others.  Contrary to baseless accusations from the HBSC,[29] the Settling Parties have not at this point determined how the settlement funds will be allocated, but, rather, have left that task for the Court to decide at an appropriate juncture.

The protestations of Hilarie Bass that she was excluded from the settlement process are an attempt to deflect her true motives on behalf of Lennar.  On May 18, 2011, Lead Counsel Arnold Levin provided Ms. Bass with a copy of the Settlement Agreement (previously titled a Term Sheet) in draft form and told her that the PSC did not anticipate any substantive changes.

---

[28] *See* Correspondence between Counsel for Lennar and Lead Counsel, as well as Letter Briefs from the parties to the Court addressing the dispute over the "carve outs" for Pending Settlements under the Banner Agreement, attached hereto collectively as Exhibit "A."

[29] *E.g.*, JWR asserts that "Members of the Homebuilder Steering Committee who have been in direct contact with the negotiating parties have suggested to counsel for JWR that the proposed settlement agreement contemplates paying $0 to homebuilder Class Members that have not remediated properties."  JWR Construction's Objection at 4 [Rec. Doc. No. 9724].

Mr. Levin invited Ms. Bass to comment on the draft ("Your views are requested") and he informed her that "We are on a tight schedule."[30]  On June 2, 2011, Arnold Levin and his partner, Fred Longer, spoke to Ms. Bass about the Banner settlement.  During that call, the parties discussed that Lennar's Pending Settlement with Banner included only 129 Lennar homes that were being carved out of the class settlement.  Incredibly, Lennar now claims that 466 homes should have been included in the Pending Settlement (*see* Letter from H. Bass to A. Levin dated July 1, 2011, Exhibit "C" hereto).  Additionally, Mr. Levin conveyed to Ms. Bass during the June 2nd call, that when the Court entertained proposals for the design of the allocation process, the PSC would consider treating homebuilders that remediated homes on the same footing as homeowners, possibly on a square foot basis.  Ms. Bass asked to meet with the Settling Parties to discuss the settlement further, suggesting a date after the Court's June status conference, but the Settlement Agreement was finalized prior to that time.  Clearly, the objections of Hilarie Bass lack merit.

> ### E.    The Remaining Objections Addressing the Merits of the Settlement Fail to Raise an Impediment to Preliminary Approval.

As set forth in the Joint Motion for preliminary approval, the standard for preliminary approval is "whether the proposed settlement appears fair on its face."  *Cope*, 2001 WL 333102 at *1.  Therefore, the objections addressing:  the inability of certain parties to participate in settlement negotiations; the inadequacy of the PSC to represent builders and installers; the definition of the class and the adequacy of the class representatives; the homebuilders' right to submit proofs of claim on behalf of absent homeowners; who should pay for class notice; and the

---

[30] *See* Transmittal Letter from Arnold Levin to Hilarie Bass, attached hereto as Exhibit "B."

appropriate breadth of the releases, are inappropriate for review at the preliminary approval stage. Nevertheless, they can be readily dispatched.

- The contentions that the PSC or class representatives are inadequate to represent builders or installers or that the class definition is overbroad are misdirected. The settlement obtains all of the remaining available insurance policy proceeds from Banner's carriers.[31] There is no conflict amongst the builders, the installers or the PSC as to whether this money should be acquired for the benefit of the class. As to Banner, all parties have the same interest, *i.e.*, to recover globally as much money as possible. Any issues as to later disputes within the allocation process will be addressed by the Court and possibly a Special Master. The PSC has simply preserved the funds for the benefit of all. The objectors will have every right to make their challenges later when they participate in the allocation process.

- The argument that homebuilders should have a right to submit proofs of claims on behalf of absent homeowners at the opt-out deadline conflates the opt-out and allocation processes. The submission of proofs of claim, and the rights of parties to make those submissions on behalf of other absent class members, is an issue that the Court will decide when designing the allocation process; it is not an issue that should affect preliminary approval of the settlement. The homebuilders will have every right to make their proposals for allocation at that later time.

- The attempts to compare this settlement's releases to the InEx settlement fail in that the only parties released under the Settlement Agreement are the Settling Defendants.[32]

---

[31] Given that this is not a limited fund under Fed. R. Civ. P. 23(b)(1)(B), the objection of Coastal Construction that "Banner should not be granted a full release without any contribution without showing the affected parties the reason for not contributing to the Settlement" lacks merit. Coastal Construction's Objection at 3 [Rec. Doc. No. 9755].

[32] Section 3.1 of the Settlement Agreement provides plainly that: "the only parties released are
(continued...)

Since Section 1.19 of the Settlement Agreement defines "Settling Defendants" to mean only "Banner, Chartis, FCCI, Hanover, and Maryland Casualty," no other parties or entities are released under the settlement, notwithstanding the objectors' contrary characterization or interpretation of the release. Similarly, the suggestion that opt-outs may somehow be barred from pursuing their rights against the Settling Defendants belies not only the plain language of the Settlement Agreement but also class action jurisprudence. Section 3.3.2 of the Settlement Agreement provides that: "As of the Effective Date of the Settlement, all Class Members, and anyone claiming by, through and/or on behalf of any of them, will be forever barred and enjoined from asserting any and/or all Released Claims against the Settling Defendants." The Settling Parties have not and do not intend to impinge the rights of opt-outs, who, under the law, will not be bound by the Settlement Agreement or the judgment of the Court.

- Finally, the HBSC's contention that "the PSC should have to foot th[e] bill for the cost of notice"[33] so as not to deplete any of the Settlement Funds is outrageous given the position of Lead Counsel for the HBSC, Hilarie Bass, in this matter. Ms. Bass is seeking to deplete the Settlement Funds herself by increasing Lennar's "carve out" for its Pending Settlement with Banner.[34] In any event, the HBSC's position is not tenable. It is not uncommon for the costs of notice to be paid out of the settlement fund. *See* William B. Rubenstein, Alba Conte and Herbert B. Newberg, 3 Newberg On Class Actions § 8:20 (4th ed.); *In re Diet Drugs Prod. Liab. Litig.*, No. MDL 1203, Civ.A. 99-20593, 2004 WL 2065813, at *1 (E.D. Pa. Aug. 26, 2004). The HBSC's objection on this point lacks merit and should be overruled.

---

[32](...continued)
those persons or entities defined as Settling Defendants."

[33] HBSC's Objection at 10 [Rec. Doc. No. 9730].

[34] *See* Exhibit "A" hereto.

As is evident, the objections raised do not warrant denial of preliminary approval.  If the Court believes that these objections may have merit, it should defer consideration of them until the appropriate time, at the Fairness Hearing.

## III.   **CONCLUSION**

For the reasons set forth above, as well as in our moving papers, Joint Movants respectfully request that preliminary approval of the Settlement Agreement and conditional certification of the settlement class be granted.  Joint Movants also request that the Court order that notice be disseminated to the class and that a Fairness Hearing be scheduled.

Respectfully submitted,

Dated:  July 11, 2011

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Matthew C. Gaughan (On the Brief)
Sandra L. Duggan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

17

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
  MATTHEWS, MARTINEZ, GONZALES,
  KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
  ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
  & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
SEEGER WEISS, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
LEWIS & ROBERTS
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.WSuite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@alterslaw.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## PROPOSED CLASS COUNSEL

Arnold Levin
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

Russ M. Herman, Esquire (Bar No. 6819)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Rherman@hhkc.com
Ervin A. Gonzalez

COLSON, HICKS, EIDSON, COLSON
  MATTHEWS, MARTINEZ, GONZALES,
  KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

## BANNER

Todd Ehrenreich
Nicholas P. Panayotopoulos
Michael Sexton
WEINBERG WHEELER HUDGINS GUNN &
DIAL, LLC
2601 South Bayshore Drive, Suite 1500
Miami, FL  33133
Phone:  (305) 455-9505
Fax: (305) 455-9501
tehrenreich@wwhgd.com
*Counsel for All Banner Entities except
Banner PSL*

Michael Peterson
PETERSON ESPINO, P.A.
10631 North Kendall Drive, Suite 220
Miami, FL  33176
Phone: (305) 270-3773
Fax: (305) 275-7410
mpeterson@petersonespino.com
*Counsel for Banner PSL*

## BANNER'S INSURERS

Jane M. Byrne
QUINN EMANUEL URQUHART & SULLIVAN,
  LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Phone: (212) 849-7000
Fax: (212) 849-7100
janebyrne@quinnemanuel.com
*Counsel for Chartis*

Stephen Berry
MCKENNA LONG & ALDRIDGE, LLP
303 Peachtree Street, NE, Suite 5300
Atlanta, GA  30308
Phone: (404) 527-4126
Fax: (404) 527-4198
sberry@mckennalong.com
*Counsel for Maryland Casualty*

Robert M. Darroch
GOODMAN, MCGUFFEY, LINDSEY &
JOHNSON
3340 Peachtree Road NE, Suite 2100
Atlanta, GA  30326
Phone: (404) 926-4117
Fax: (404) 264-1737
rdarroch@gmlj.com
*Counsel for FCCI*

John Malloy
ROBINSON COLE, LLP
280 Trumbull Street
Hartford, CT  06103
Phone: (860) 275-8337
Fax: (860) 275-8299
jmalloy@rc.com
*Counsel for Hanover*

20

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Joint Movants' Omnibus Response to Objections to the Joint Motion for an Order: (1) Preliminarily Approving The Banner Settlement Agreement; (2) Conditionally Certifying a Banner Class; (3) Issuing Class Notice; And (4) Scheduling a Fairness Hearing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 11th day of July, 2011.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel MDL 2047*
*Co-counsel for Plaintiffs*