# EXHIBIT A

EXHIBIT G

INSURERS' GENERAL RELEASE TO BANNER

1. **Definitions**

    1.1. Capitalized terms used in this Release shall have the same meaning as those defined in the Stipulation and Agreement of Settlement dated June 10, 2011 (the "Settlement"), unless defined herein.

    1.2. "Consideration" shall mean the policy limits paid pursuant to the Settlement, and other good and valuable consideration.

2. **Releasor**

    2.1. Chartis, Hanover, FCCI and Maryland (collectively the "Insurers") have been advised and fully understand that the Settlement governs the resolution of any and all claims that the Insurers have, may have, or may have in the future against Banner, including claims under or related to the Triggered Policies, and/or with regard to any injury and/or damage the Insurers have ever claimed, or may at any time claim in the future concerning and/or connected in any way with the Triggered Policies and Chinese Drywall.

    2.2. The Insurers have been advised and fully understand that any and all claims that they have or may have in the future against Banner concerning or connected in any way with the Triggered Policies and Chinese Drywall will be fully and forever released once the Settlement is Final.

    2.3. The Insurers have been advised and fully understand the potential for opt-out claims and that any claimant that opts out of the Settlement will preserve its claims against Banner and, correspondingly, the Insurers. Chartis, FCCI and Maryland further acknowledge that they have the right, pursuant to Sections 6.4.1 and 6.4.2 of the Settlement, to terminate the Settlement. The Insurers have advised Banner that they believe it is in Banner's best interests to resolve all claims against it relating to, or arising out of, Chinese Drywall, in the MDL in exchange for payment of the available Insurance Proceeds.

    2.4. The Insurers acknowledge and agree that Banner has cooperated with the Insurers in their investigation of all of the Chinese Drywall-related claims against Banner and that Banner has provided each of the Insurers with proper, timely and adequate notice of each said claim. The Insurers have communicated with Banner regarding the terms and significance of the Settlement throughout the Settlement's negotiation and agree that the Settlement represents the best opportunity to settle as many Chinese Drywall-related claims against Banner as is possible, is the most

reasonable and cost effective option for resolving as many claims as possible with its Insurance Proceeds, minimizes Banner's overall liability, and is in Banner's best interests.

**3. Releases**

3.1. In consideration for each of Banner's release of all claims set forth in its Release, as well as the Insurers' agreement to pay the Insurance Proceeds as set out in Section 1.12 of the Settlement, and upon the Settlement becoming Final, and except as set forth in Section 3.1.1, each of the Insurers for themselves and each and all of their past, present, and future employees, attorneys, officers, directors, agents, shareholders, stockholders, subsidiaries, consultants, insurers, parent corporations, sister corporations, divisions, affiliated entities, related entities, predecessors, successors, and assigns shall release, remise, acquit, and discharge Banner, its past, present, and future employees, attorneys, officers, directors, agents, stockholders, subsidiaries, consultants, parent corporations, sister corporations, divisions, affiliated entities, related entities, predecessors, successors, and assigns, from any and all manner of actions, claims, demands, causes of action, or liabilities related to the Triggered Policies, the Related Claims, the Related Actions, the Litigation, or any claims in connection with Chinese Drywall, including, but not limited to, those for subrogation, payment of the Insurance Proceeds, attorneys' fees paid in the defense of Banner, costs incurred in the defense of Banner, implied or express indemnification, contribution, failure to cooperate in the investigation of any claims, the inability to seek damages from any third parties for monies paid to settle and/or resolve claims, including, but not limited to, claims for insurance coverage, indemnity, "duty to defend," bad faith and/or extra-contractual liability of any kind, which claims arise under Florida law, the law of any other state, or any other law (including common law) and any and all past, present, and/or future claims arising out of, or related to, indemnity obligations, duty to defend, claims handling, claims adjustment, breach of contract, breach of duty or duties, negligent investigation, breach of warranty, failure to warn, breach of implied warranty, breach of good faith and fair dealing, bad faith, negligent or intentional interference with contractual relationships, deceptive trade practices, unfair trade practices, unfair settlement practices, conduct in violation of any insurance code, claims under La. R.S. 22:1220, Fla. Stat.§ 501.201, *et seq.*, Fla. Stat. § 624.155, Fla. Stat. § 626.951 *et seq.*, Fla. Stat. § 672.314, Fla. Stat. § 718.203, and/or any other alleged misconduct, omissions, or wrongdoing of any kind, of whatever nature or source, known or unknown, that each of the Insurers ever had, now have, could have had, may have in the future, or that they may acquire, against Banner. Nothing contained herein shall be construed to release any claim that FCCI has with regard to any policy of Workers Compensation coverage issued by FCCI to Banner Supply Company.

      3.1.1. The Insurers' subrogation rights under the Banner Insurance Policies, any other policy, or under law or equity, are preserved and are not released or affected in any way by this Settlement. Unless one of the Insurers' insureds opts out of the Settlement, the Insurers shall be able to make subrogation claims only against the Settlement Funds like any other claimant. In the event that an Insurers' insured having claims against Banner opts out of the Settlement, then the Insurer shall have whatever legal, equitable or contractual rights to subrogation as may exist and nothing contained in this Release shall bar or limit those claims.

3.2. Each of the Insurers acknowledges that Banner may in the future learn of additional and/or different facts as they relate to Chinese Drywall, the Triggered Policies, each of the Insurer's activities as they relate to Chinese Drywall, and/or any injury that any of the Insurers has ever claimed, or may at any time in the future claim. The Insurers have been fully advised, understand and acknowledge the significance and consequences of releasing all of the claims and liabilities and hereby assumes full risk and responsibility for any and all such additional and/or different facts, and any and all claims and liabilities that the Insurers may hereinafter incur or discover. To the extent that any law, statute, ordinance, rule, regulation, case, or other legal provision or authority may at any time purport to preserve any of the Insurer's right to hereinafter assert any such unknown and/or unanticipated claims and/or liabilities, the Insurers specifically and expressly waive (to the fullest extent permitted by applicable law) each of the Insurer's rights, provided that the Settlement becomes Final.

3.3. The Insurers further acknowledge having had an opportunity to obtain advice of counsel of their choosing regarding this release and waiver, and having discussed it with such counsel to its satisfaction.

3.4. Each of the Insurers acknowledges and agrees that this Release is irrevocable and unconditional, inures to the benefit of the Insurers, and is intended to be as broad as can possibly be created.

3.5. Without limitation of the foregoing, this Release is specifically intended to operate and be applicable even if it is alleged, charged, or proven that some or all of the released claims and liabilities are caused in whole or in part by the negligence, negligence *per se*, gross negligence, breach of warranty, violation of law, defective product, malice, bad faith, and/or conduct of any type by Banner and/or any other person or entity, provided that the Settlement becomes Final.

**4. Pursuit of Certain Claims**

4.1. Except as provided by Section 3.1.1, each of the Insurers agrees that it will never (i) take any legal or other action to initiate, pursue, maintain, or

      otherwise attempt to execute upon, collect, or otherwise enforce any of the released claims and liabilities of or against Banner; (ii) institute or participate in any new legal action against Banner to any extent, or in any way, arising out of, relating to, resulting from, and/or connected with the Triggered Policies, Chinese Drywall and/or with any injury any of the Insurers has ever claimed, or may at any time hereafter claim; or (iii) attempt to execute or collect on, or otherwise enforce, any judgment that may be entered against Banner in any legal action described in clause (ii) or any pending legal action against Banner, provided that the Settlement becomes Final.

**5. Acknowledgment of Comprehension**

    5.1. Each of the Insurers is entering into this Release freely and voluntarily. Each of the Insurers understands and acknowledges the nature, value, and sufficiency of the consideration described in this Release. Each of the Insurers acknowledges that they have read this Release and the Settlement, and each of the Insurers has had an opportunity to obtain advice from, and ask questions of, counsel of its choosing regarding the terms and legal effect of these documents and its decision to enter the Release. Each of the Insurers further acknowledges that it has discussed all of these matters with the counsel of its choosing, and such counsel has answered all its questions to its satisfaction. Each of the Insurers further acknowledges that it understands this Release.

**6. No Admission of Fault**

    6.1. Each of the Insurers understands and agrees that it has entered into this Release and the Settlement solely by way of compromise and settlement. These documents are not, and shall not be construed at any time to be, an admission of liability, responsibility, or fault of or by any of the Insurers.

**7. Representations and Warranties**

    7.1. Each of the Insurers hereby represents and warrants that it has full power, authority and capacity to enter into this Release, which is enforceable in accordance with its terms. Each of the Insurers has not sold, assigned, transferred, or otherwise disposed of, or pledged or otherwise encumbered, any of the released claims and liabilities in whole or in part.

**8. Governing Law**

    8.1. This Release shall be governed by and construed in accordance with the substantive law of Florida, without regard to any choice-of-law rules that would require the application of the law of another jurisdiction.

**9. Severability**

    9.1.    Each of the Insurers agrees that if any provision of this Release is adjudicated to be invalid, illegal, or unenforceable in any jurisdiction, the relevant provision shall be deemed modified to the extent necessary to make it enforceable in such jurisdiction and, if it cannot be so modified, this Release shall be deemed amended to delete therefrom the invalid or unenforceable provision, and this Release shall be in full force and effect as so modified.  Any such modification or amendment in any event shall apply only with respect to the operation of this Release in the particular jurisdiction in which adjudication was made and shall not affect such provision in any other jurisdiction.  To the fullest extent permitted by applicable law, each of the Insurers hereby specifically and expressly waives any provision of law that renders any provision of this Release invalid, illegal, or unenforceable in any respect.

IN WITNESS WHEREOF, the Insurers have read and understood the terms and conditions of this Release, agree to be bound by all of its provisions, and have executed this Release on the date shown by their signatures below.

**HANOVER AMERICAN INSURANCE COMPANY and HANOVER INSURANCE GROUP, INC.**

By: _____
    Authorized Representative

Print Name: _____

_____    _____
Witness Signature    Witness Signature

_____    _____
Printed Name    Printed Name

_____    _____
Date    Date

**MARYLAND CASUALTY COMPANY and ALL COMPANIES IN THE ZURICH NORTH AMERICA GROUP OF INSURANCE COMPANIES**

By: _____
    Authorized Representative

Print Name: _____

_____    _____
Witness Signature    Witness Signature

_____    _____
Printed Name    Printed Name

_____    _____
Date    Date

**CHARTIS CLAIMS, INC. on behalf of CHARTIS SPECIALTY INSURANCE COMPANY f/k/a American International Specialty Lines Insurance Company, ILLINOIS NATIONAL INSURANCE CO., NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., AND COMMERCE & INDUSTRY INSURANCE CO.**

By: _____
     Authorized Representative

Print Name: _____

_____    _____
Witness Signature                                Witness Signature

_____    _____
Printed Name                                       Printed Name

_____    _____
Date                                              Date

**FCCI INSURANCE COMPANY, FCCI COMMERCIAL INSURANCE COMPANY, NATIONAL TRUST INSURANCE COMPANY, FCCI MUTUAL INSURANCE HOLDING COMPANY, FCCI GROUP, INC., FCCI INSURANCE GROUP, INC., MONROE GUARANTY INSURANCE COMPANY, FCCI SERVICES, INC., FCCI ADVANTAGE INSURANCE COMPANY, BRIERFIELD INSURANCE COMPANY, and FCCI AGENCY, INC.**

By: _____
    Authorized Representative

Print Name: _____

_____     _____
Witness Signature                                         Witness Signature

_____     _____
Printed Name                                                Printed Name

_____     _____
Date                                                               Date