<pre>
 1                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
 2

 3      ***************************************************************

 4    IN RE: CHINESE-MANUFACTURED
      DRYWALL PRODUCTS LIABILITY
 5    LITIGATION
                              CIVIL DOCKET NO. MDL 2047 "L"
 6                            NEW ORLEANS, LOUISIANA
                              THURSDAY, JULY 14, 2011, 9:00 A.M.
 7    THIS DOCUMENT RELATES TO
      ALL CASES
 8
        ***************************************************************
 9

10                TRANSCRIPT OF MOTIONS PROCEEDINGS
            HEARD BEFORE THE HONORABLE ELDON E. FALLON
11                UNITED STATES DISTRICT JUDGE

12

13    APPEARANCES:

14

15    FOR THE PLAINTIFFS:      HERMAN HERMAN KATZ & COTLAR
                               BY:  RUSS M. HERMAN, ESQUIRE
16                                  LEONARD A. DAVIS, ESQUIRE
                               820 O'KEEFE AVENUE
17                             NEW ORLEANS LA  70113

18
                               LEVIN, FISHBEIN, SEDRAN & BERMAN
19                             BY:  ARNOLD LEVIN, ESQUIRE
                                    FRED S. LONGER, ESQUIRE
20                             510 WALNUT STREET, SUITE 500
                               PHILADELPHIA PA  19106
21

22                             SEEGER WEISS
                               BY:  CHRISTOPHER A. SEEGER, ESQUIRE
23                             550 BROAD STREET, SUITE 920
                               NEWARK NJ  07102
24

25
</pre>

08:57AM

```
 1  APPEARANCES CONTINUED:

 2

 3                          GAINSBURGH BENJAMIN DAVID MEUNIER AND
                            WARSHAUER
 4                          BY:  GERALD E. MEUNIER, ESQUIRE
                            2800 ENERGY CENTRE
 5                          1100 POYDRAS STREET, SUITE 2800
                            NEW ORLEANS LA  70163
 6

 7                          LEWIS & ROBERTS
                            BY:  DANIEL K. BRYSON, ESQUIRE
 8                          3700 GLENWOOD AVENUE, SUITE 410
                            RALEIGH NC  27612
 9

10  FOR THE DEFENDANTS:     FRILOT
                            BY:  KERRY MILLER, ESQUIRE
11                          ENERGY CENTRE, 36TH FLOOR
                            1100 POYDRAS STREET
12                          NEW ORLEANS LA  70163

13

14                          SINNOT NUCKLOS & LOGAN
                            BY:  KENNETH F. HARDT, ESQUIRE
                            13811 VILLAGE MILL DRIVE
15                          MIDLOTHIAN VA  23114

16

17                          RUMBERGER KIRK & CALDWELL
                            BY:  ROBERT V. FITZSIMMONS, ESQUIRE
                            BRICKELL BAYVIEW CENTRE, SUITE 3000
18                          80 SOUTHWEST 8TH STREET
                            MIAMI FL  33130
19

20                          MINTZER SAROWITZ ZERIS
                            LEDVA & MEYERS
21                          BY:  BRIAN A. EVES, ESQUIRE
                            THE WATERFORD AT BLUE LAGOON
22                          1000 NW 57TH COURT, SUITE 300
                            MIAMI FL  33126
23

24                          QUINN EMANUEL URQUHART & SULLIVAN
                            BY:  JANE M. BYRNE, ESQUIRE
25                          51 MADISON AVENUE, 22ND FLOOR
                            NEW YORK, NY 10010
```

1  APPEARANCES CONTINUED:

2

3                          WEINBERG WHEELER HUDGINS GUNN
                           & DIAL
4                          BY: NICHOLAS PANAYOTOPOULOS, ESQUIRE
                               MICHAEL A. SEXTON, ESQUIRE
5                          3344 PEACHTREE ROAD, SUITE 2400
                           ATLANTA GA 30326
6

7                          HOGAN LOVELLS US
                           BY:  FRANK T. SPANO, ESQUIRE
8                          875 THIRD AVENUE
                           NEW YORK, NY 10022
9

10                         SIVYER BARLOW & WATSON
                           BY:  NEAL A. SIVYER, ESQUIRE
11                         401 E. JACKSON STREET, SUITE 2225
                           TAMPA FL  33602
12

13                         GREENBERG TRAURIG
                           BY:  HILARIE BASS, ESQUIRE
14                         333 AVENUE OF THE AMERICAS, SUITE 4400
                           MIAMI FL  33131
15

16                         STANLEY, REUTER, ROSS, THORNTON
                           & ALFORD
17                         BY:  THOMAS P. OWEN, JR., ESQUIRE
                           909 POYDRAS STREET, SUITE 2500
18                         NEW ORLEANS LA  70112

19                         PETERSON & ESPINO
                           BY:  MICHAEL P. PETERSON, ESQUIRE
20                         10631 NORTH KENDALL DRIVE, SUITE 220
                           MIAMI FL  33176
21

22                         KAYE SCHOLER
                           BY:  STEVEN GLICKSTEIN, ESQUIRE
23                              GREGORY J. WALLANCE, ESQUIRE
                           425 PARK AVENUE
24                         NEW YORK NY  10022

25

```
 1   APPEARANCES CONTINUED:

 2

 3                           GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
                             BY:  BENJAMIN R. GRAU, ESQUIRE
 4                           701 POYDRAS STREET, 40TH FLOOR
                             NEW ORLEANS LA  70139
 5

 6                           ADAMS & REESE
                             BY:  WILLIAM B. GAUDET, ESQUIRE
 7                           ONE SHELL SQUARE
                             701 POYDRAS STREET, SUITE 4500
 8                           NEW ORLEANS LA  70130

 9
                             ALLEN & GOOCH
10                           BY:  BRETT M. BOLLINGER, ESQUIRE
                             3900 NORTH CAUSEWAY BOULEVARD, SUITE 1450
11                           METAIRIE LA  70002

12

13   FOR THE STATE/FEDERAL
     LIAISON COMMITTEE:      BARRIOS, KINGSDORF & CASTEIX
14                           BY:  DAWN M. BARRIOS, ESQUIRE
                             701 POYDRAS STREET, SUITE 3650
15                           NEW ORLEANS LA 70139

16

17   FOR THE INSURERS'       BARRASSO USDIN KUPPERMAN
     LIAISON COMMITTEE:      FREEMAN & SARVER
18                           BY:  JUDY Y. BARRASSO, ESQUIRE
                                  H. MINOR PIPES, II, ESQUIRE
19                           LL&E TOWER, SUITE 1800
                             909 POYDRAS STREET
20                           NEW ORLEANS, LA 70112

21

22   ALSO PRESENT:           DANIEL BECNEL, ESQUIRE
                             BRUCE STECKLER, ESQUIRE
23                           ROBERT DARROCH, ESQUIRE

24

25
```

1    APPEARANCES CONTINUED:

2

3    OFFICIAL COURT REPORTER:        CATHY PEPPER, CRR, RMR, CCR
                                     500 POYDRAS STREET, ROOM B406
4                                    NEW ORLEANS LA  70130
                                     (504) 589-7779
5                                    Cathy_Pepper@laed.uscourts.gov

6    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
     PRODUCED BY COMPUTER.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **I N D E X**

2

3                                                              <u>PAGE</u>

4

5    PRELIMINARY APPROVAL, RECORD DOCUMENT 9558.............   7

6    PLAINTIFFS WILLIAM AND STACEY PEEK'S MOTION TO LIFT      18

7    THE STAY IN ORDER TO SERVE A REQUEST FOR PRODUCTION ON

8    THE DEFENDANTS DEVONSHIRE PROPERTIES, INC.,

9    RECORD DOCUMENT 9425..................................

10   PLAINTIFFS' STEERING COMMITTEE'S MOTION TO ALLOW        18

11   SERVICE OF A COMPLAINT ON LOWE'S HOME CENTER, INC.,

12   RECORD DOCUMENT 9462..................................

13   MOTION TO LIFT THE STAY FOR APPROVAL OF PROPOSED        27

14   SCHEDULING ORDER FOR PLAINTIFF'S MOTION FOR CLASS

15   CERTIFICATION CLAIMS FOR DAMAGES AGAINST

16   VENTURE SUPPLY, DOCUMENT 9549.........................

17   I'M GOING TO TAKE IT UNDER ADVISEMENT.................   36

18   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION IN   36

19   RECORD DOCUMENT 9653..................................

20   I'LL TAKE THIS UNDER ADVISEMENT.......................   42

21   PLAINTIFF WENDY LEE HOBBIE'S MOTION FOR ENTRY OF        43

22   SCHEDULING ORDER......................................

23   MOTION FOR CLARIFICATION OF INEX AND BANNER STAY ORDER.  49

24   I'M GOING TO DENY THE MOTION..........................   58

25

**P-R-O-C-E-E-D-I-N-G-S**

M O R N I N G    S E S S I O N

THURSDAY, JULY 14, 2011

(COURT CALLED TO ORDER)

THE DEPUTY CLERK:  Everyone rise.

THE COURT:  Be seated, please.  Good morning, ladies and gentlemen.

The first motion we'll take up is the preliminary approval.  Anything on that one?

THE DEPUTY CLERK:  Judge, would you give the record document number, please.

THE COURT:  The Record Document 9558.

Let me hear from the parties on that.  I met with the parties in my conference room and discussed various aspects of the case with them.

MR. LEVIN:  Your Honor, may I?

THE COURT:  Yes.

MR. LEVIN:  Pursuant to the conference that we had today with the Plaintiffs' Steering Committee, the proponents of the class action settlement, Banner, builders' counsel/objectors, we've determined that we would all submit the issues to Your Honor on the papers that have been previously filed.  There are 14 objections.  A lot of them are copycat objections.  The

09:25AM 1  principal objections are from the installer, individual

09:25AM 2  homebuilders, and homebuilders committee.  There are no

09:25AM 3  objections filed in this Court by any residential owner.

09:25AM 4  What we determined, subject to Your Honor's

09:26AM 5  approval, is that we would shortly submit to Your Honor a new

09:26AM 6  order agreed to by the plaintiffs and the objectors' counsel and

09:26AM 7  the builders' counsel, that we would certify a settlement class,

09:26AM 8  and you would, if you deemed fit, grant preliminary approval and

09:26AM 9  order a procedure by which we would establish an allocation

09:26AM 10 committee which is after the fairness hearing.

09:26AM 11 Also, there were some housekeeping -- there were

09:26AM 12 some errors in mathematics in the settlement agreement.  That

09:26AM 13 would be taken care of, and there would be revised notices that

09:26AM 14 would be submitted to Your Honor for Your Honor's approval.

09:26AM 15 I have no reason to believe that we won't agree to

09:26AM 16 something, but should we not agree to, we will submit two orders

09:26AM 17 to Your Honor, and Your Honor will make a ruling, and we'll be

09:26AM 18 guided by your ruling.  But preliminary approval will be granted,

09:27AM 19 so at least at that point, we could get the benefits of what

09:27AM 20 preliminary approval does for all the parties within this

09:27AM 21 litigation.

09:27AM 22 We are going to meet on Friday via telephone,

09:27AM 23 tomorrow, and hopefully we'll have that for you by mid-week.

09:27AM 24 THE COURT:  Mike?  Hilarie?  Do you want to say

09:27AM 25 something, Mike?

09:27AM 1      MR. SEXTON:  Yes, Your Honor, just very briefly.

09:27AM 2  Mike Sexton for Banner Supply.

09:27AM 3          Happily, I agree with just about everything that

09:27AM 4  Mr. Levin said, which is a happy occurrence.  We agree to work

09:27AM 5  together with the objectors and try and resolve those.  We think,

09:27AM 6  in light of what Banner and its insurers are bringing to the

09:27AM 7  table, that easily meets the threshold for preliminary approval.

09:27AM 8  We believe that all of these other housekeeping issues can easily

09:27AM 9  be resolved through a collaborative process and a committee to

09:28AM 10 try and figure out allocation.

09:28AM 11     THE COURT:  Hilarie, do you have something?

09:28AM 12     MS. BAAS:  Thank you, Your Honor.  Hilarie Baas on

09:28AM 13 behalf of the Homebuilders Steering Committee.

09:28AM 14          I think what has been represented is correct.

09:28AM 15 We're going to stand on our papers for today.  We understand

09:28AM 16 Your Honor will preliminarily enter an order, but we understood

09:28AM 17 you would be staying the notice pending our opportunity to get

09:28AM 18 together and try and resolve and address the issues that were

09:28AM 19 raised by the objectors.

09:28AM 20          Additionally, one other correction, my

09:28AM 21 understanding was that the concept of the allocation committee

09:28AM 22 was that it would be approved by Your Honor in advance of the

09:28AM 23 objection period and the final fairness hearing so that everybody

09:28AM 24 would have the opportunity to understand exactly what was

09:28AM 25 contemplated as far as the allocation process.

09:28AM 1        MR. LEVIN:  That is correct, Your Honor.

09:28AM 2        THE COURT:  Right.  That's my understanding.  So we'll

09:28AM 3   do it that way.  I will preliminarily approve the settlement, the

09:28AM 4   Banner settlement.

09:28AM 5        I do that because in determining whether a proposed

09:29AM 6   settlement is fair and reasonable and adequate, the Court is

09:29AM 7   required to examine whether the interests of the class are better

09:29AM 8   served by settlement than by further litigation.  In this

09:29AM 9   particular case, Banner is putting up all of their insurance, all

09:29AM 10  of it.

09:29AM 11       Banner, itself, is not an economically endowed

09:29AM 12  company, so I don't see where there is any benefit to anybody not

09:29AM 13  to have all of those funds placed into the registry of the Court.

09:29AM 14  It does away with the requirement of proving knowledge, or

09:29AM 15  scienter.  It does away with the insurers' defenses, and it does

09:29AM 16  away with subsequent trials.  It doesn't make sense that, at

09:30AM 17  least preliminarily, approval shouldn't be granted.

09:30AM 18       Now, the issue, of course, is the allocation, and

09:30AM 19  I'm going to create, as was said, an allocation committee

09:30AM 20  including all of the interested parties.  I'm going to look to

09:30AM 21  them for guidance as to who should be on the committee, but

09:30AM 22  everybody will have an opportunity to be on the committee.  I

09:30AM 23  will look to them for some suggestion as to the method of

09:30AM 24  allocating these funds.  The allocation will hopefully be in some

09:30AM 25  formulaic method that they are satisfied with and that they can

09:30AM 1    agree upon.  That seems, to me, to be the solution to this

09:30AM 2    matter.

09:30AM 3               So I'll also be meeting with the parties in the

09:30AM 4    immediate future to discuss with them the notice.  I would like

09:30AM 5    that fashioned as quickly as possible so we can get on with our

09:31AM 6    problems.

09:31AM 7          MR. FITZSIMMONS:  Judge, this is Bob Fitzsimmons.  May I

09:31AM 8    ask to be heard?

09:31AM 9          THE COURT:  Yes, Bob.

09:31AM 10         MR. FITZSIMMONS:  Judge, I would just like the record to

09:31AM 11   reflect as an installer counsel, we didn't have an opportunity to

09:31AM 12   join in any of these discussions, and on behalf of the

09:31AM 13   installers, we have a more fundamental objection to the proposed

09:31AM 14   settlement rather than allocation.  We would like to be heard at

09:31AM 15   some point on that.

09:31AM 16         THE COURT:  Well, I can hear you right now.

09:31AM 17         MR. FITZSIMMONS:  Well, Judge, we're concerned

09:31AM 18   fundamentally with the settlement in that as the installers,

09:31AM 19   unlike the InEx settlement, the installers are not released.  We

09:31AM 20   are, as I interpret it and as other installer counsels have

09:31AM 21   interpreted, members of the class.  We have homeowners that are

09:32AM 22   suing the installers.  My understanding is they will retain the

09:32AM 23   right to sue the installers, and the result of the settlement

09:32AM 24   will be for Banner to be released, and all claims by the

09:32AM 25   installers against Banner who would be released.

09:32AM 1        I believe the net effect of the settlement and the

09:32AM 2   approval of the settlement will require that all of the

09:32AM 3   installers opt out in order to protect their rights against

09:32AM 4   Banner because they are going to be subject to litigation in the

09:32AM 5   future.  They are not going to have recourse against Banner if

09:32AM 6   they stay in the class.

09:32AM 7        So we have concerns about the class representatives

09:32AM 8   being able to represent adequately the installers in the

09:32AM 9   settlement.  I apologize, Your Honor, because I didn't realize

09:32AM 10  that the discussions were beforehand, and I'm sorry I didn't make

09:33AM 11  this trip, but I want to be on the record that all of the

09:33AM 12  installers' counsel that participated in numerous phone calls

09:33AM 13  objected to the settlement, and it was not an allocation issue.

09:33AM 14       THE COURT:  Let me hear the response.

09:33AM 15       MR. LEVIN:  The issue raised by the installers,

09:33AM 16  Your Honor, is an issue that's traditionally raised, if raised at

09:33AM 17  all, at the fairness hearing in the form of an objection.  I

09:33AM 18  think what counsel is overlooking, that this is preliminary

09:33AM 19  approval that sets the stage and the forum for the installers to

09:33AM 20  make that objection.

09:33AM 21       On another note, welcome to the world of Rule 23.

09:33AM 22  There are releases and bar orders traditionally in Rule 23.  What

09:33AM 23  has to happen is an attorney advising his client has to make a

09:33AM 24  decision as to whether he wants to stay in the class and reap the

09:34AM 25  benefits of the class or exclude himself from the class -- or

09:34AM 1   exclude itself from the class and paddle their own canoe.  That's

09:34AM 2   a decision that lawyers make.

09:34AM 3            We cited in our brief a case that resolved itself

09:34AM 4   in the *Vioxx* litigation where an injunction was sought in

09:34AM 5   Connecticut after a settlement, and the district court judge in

09:34AM 6   Connecticut said lawyers always have to make *Hobson's* choices.

09:34AM 7   This is why they get paid.  Mr. Fitzsimmons is in that situation.

09:34AM 8            We feel comfortable with what we've done, and we

09:34AM 9   can argue the same at the fairness hearing, because it is a

09:34AM 10  release that was similar to the release that we negotiated in the

09:34AM 11  *Orthopedic Bone Screw* case, which was a mandatory class, or the

09:34AM 12  last mandatory class before *Ortiz*.

09:34AM 13           In the *School District Asbestos* case, which like

09:34AM 14  this, had many different parties with many different issues, in

09:35AM 15  the *LAQ* settlement, L-A-Q, a release such as the release that we

09:35AM 16  have here was approved by the Third Circuit Court of Appeals.

09:35AM 17           Now, these are issues that will be dealt with at

09:35AM 18  the fairness hearing, but at this point, all we're doing is

09:35AM 19  putting our hands around the money and leaving everything else

09:35AM 20  for another day.

09:35AM 21       THE COURT:  Go ahead, Bob.  You have an opportunity to

09:35AM 22  respond.

09:35AM 23       MR. FITZSIMMONS:  Yes.  Thank you, Your Honor.

09:35AM 24           Our concern is this is an important stage to us

09:35AM 25  because, as the installers will no doubt be required to opt out,

09:35AM 1    we will not have an opportunity to argue at the fairness hearing,

09:35AM 2    and this is our opportunity to do so and argue that:  One, the

09:35AM 3    class as it is set, which is anyone with a claim against Banner,

09:35AM 4    includes the installers, and the installers' argument -- have

09:35AM 5    direct contractual privity with Banner and are most affected by

09:36AM 6    the absence of Banner in litigation in the MDL and in state

09:36AM 7    court.

09:36AM 8            This is our opportunity to render that objection.

09:36AM 9    We have been excluded from the conversations regarding the

09:36AM 10   settlement despite -- intentions otherwise.  We solicited to

09:36AM 11   intervene on behalf of the installers to participate in the

09:36AM 12   class-type settlement.  We are interested in doing so and

09:36AM 13   pursuing that, but we have been side-lined and not had an

09:36AM 14   opportunity to represent our interests, and we don't think, as

09:36AM 15   class members, that our interests can be met by the

09:36AM 16   class-represented homeowners which are suing us and their

09:36AM 17   counsel.

09:36AM 18           As we've argued in our papers, at a minimum, we

09:36AM 19   believe that a subclass needs to be established to protect the

09:36AM 20   interests of the installers which are different from the

09:36AM 21   homeowners.

09:36AM 22           Finally, this is our opportunity.  I think the

09:36AM 23   installers will all have to opt out, will all have to start

09:36AM 24   generating their own litigation against Banner outside of the

09:37AM 25   settlement.  I don't know whether we will accomplish the purpose

09:37AM  1    that Banner seeks in the interim with settlements if you're going

09:37AM  2    to have all of these opt-outs, all of the installers opting out

09:37AM  3    to protect their contractual rights with them.

09:37AM  4         THE COURT:  I don't see that a preliminary approval

09:37AM  5    forecloses your opt-out options.  You've got that opt-out

09:37AM  6    throughout.  That's not the purpose of this.  The purpose of it,

09:37AM  7    in a case of this sort, is that if I don't take some preliminary

09:37AM  8    action, then I can't control the funds, and the funds will be

09:37AM  9    exhausted by state court actions, and nobody will get anything,

09:37AM 10    because once the cases proceed toward trial, by the time

09:37AM 11    attorneys' fees and court costs and everything else comes out of

09:37AM 12    it, there will be nothing left, and that if anything is left, it

09:38AM 13    will be exhausted by the first person in the courthouse, as

09:38AM 14    opposed to anyone else.

09:38AM 15         Also, I remind everybody that this is a part of the

09:38AM 16    puzzle.  It's not the whole puzzle.  The thinking here, at least

09:38AM 17    from my standpoint, is that getting all of these pieces in line

09:38AM 18    will hopefully allow a global resolution by at least one or more

09:38AM 19    of the manufacturers.  That's the whole approach.

09:38AM 20         I don't know what else can be gotten from Banner.

09:38AM 21    Banner is a small company.  It's even difficult for the Court to

09:38AM 22    contact the principals of Banner.  They are either sick or

09:38AM 23    getting operated on or undergoing some sort of treatment.

09:39AM 24    They're teetering on bankruptcy, and all of the funds have been

09:39AM 25    tendered.  The question of who gets what is another issue, and

09:39AM  1   everybody ought to be at the table to recommend that allocation,

09:39AM  2   to protect your interests in the allocation.

09:39AM  3            Let me hear from you, Mike.

09:39AM  4       MR. SEXTON:  Your Honor, very briefly.  Again,

09:39AM  5   Mike Sexton for Banner Supply.

09:39AM  6            Again, stating the obvious, Banner is putting all

09:39AM  7   the money out there, so in terms of whether Mr. Fitzsimmons wants

09:39AM  8   all of his clients to opt out, that's his right.  So be it.  He

09:39AM  9   may have come on the call later, but the concept of the

09:39AM 10   allocation committee gives all interested parties, and it seems

09:39AM 11   to me that an installer should be represented by the allocation

09:39AM 12   committee so they can have a say in how this plays out, and that

09:39AM 13   will, of course, be overseen by the Special Master and ultimately

09:39AM 14   by Your Honor.

09:39AM 15            So it's not as if Mr. Fitzsimmons needs to wait

09:39AM 16   until the fairness hearing to make an informed decision as to how

09:40AM 17   he advises his clients.  So I think with that point, again, it

09:40AM 18   doesn't stand in the way of preliminary approval but will

09:40AM 19   hopefully modify his concerns that he has to wait until some date

09:40AM 20   of the fairness hearing.

09:40AM 21       THE COURT:  Yes, that's the way I see it.  I also think

09:40AM 22   that you raised an issue about being represented by people

09:40AM 23   adverse to you.  That's another issue that I think we need to

09:40AM 24   focus on, and I'm willing to focus on it with the parties.  We

09:40AM 25   ought to open that door at least to some extent.

09:40AM 1          Now, you're caught betwixt and between because you

09:40AM 2   represent certain entities, and it's hard for you to represent

09:40AM 3   entities that you don't remember.  That's a potential problem for

09:40AM 4   you.  That shouldn't foreclose the possibility of subclasses or

09:40AM 5   things of that sort, which I think is discussable.

09:41AM 6          MR. SIVYER:  Very briefly, Your Honor.  Neal Sivyer,

09:41AM 7   S-I-V-Y-E-R, on the Homebuilders Steering Committee.

09:41AM 8          A couple of unrelated comments.  First, with regard

09:41AM 9   to Mr. Fitzsimmons' concerns, not only did we talk about having

09:41AM 10  someone on the allocation committee that's outside the homeowner

09:41AM 11  group, but also perhaps having a class representative that is not

09:41AM 12  a homeowner attorney.

09:41AM 13         Secondly, unrelated to that, Your Honor, it was my

09:41AM 14  understanding that my particular objection that dealt with

09:41AM 15  Taylor Morrison's mathematical error will be dealt with in that

09:41AM 16  process.

09:41AM 17         THE COURT:  Correct.  Anything further?

09:41AM 18         MR. HERMAN:  May it please the Court, Russ Herman,

09:41AM 19  liaison counsel.  Lead counsel and others of the PSC will be in

09:41AM 20  Germany taking depositions in the next week or so, but I'll be

09:41AM 21  available, and if Mr. Fitzsimmons or installer representatives

09:41AM 22  want to come in and meet with me, I'll be happy to do that, but I

09:42AM 23  have no doubt and agree that preliminary approval should be

09:42AM 24  granted.

09:42AM 25         This is as close to a limited fund situation, I

09:42AM 1   believe, as you can have.  The MDL has been functioning now for

09:42AM 2   more than two years.  This is our 23rd status conference,

09:42AM 3   Your Honor, and I think it's in everyone's paramount interest

09:42AM 4   that there be a race established in this court and that it be

09:42AM 5   established as a result of a preliminary approval.  A great deal

09:42AM 6   can happen.  I'm not going to go into all the issues and repeat

09:42AM 7   what everyone said.  Your Honor, we really beseech Your Honor to

09:42AM 8   issue a preliminary approval, and we'll get on with what we have

09:42AM 9   to do to resolve problems.

09:42AM 10          THE COURT:  Thank you very much.  All of you.

09:43AM 11              The next item on the agenda is plaintiffs William

09:43AM 12  and Stacey Peek's motion to lift the stay in order to serve a

09:43AM 13  request for production on the defendants Devonshire Properties,

09:43AM 14  Inc., Record Document 9425.

09:43AM 15              Does anyone wish to speak on that motion?

09:43AM 16          MR. LEVIN:  I'm told that it's been resolved,

09:43AM 17  Your Honor.

09:43AM 18          THE COURT:  The motion has been resolved.

09:43AM 19              The next item on the agenda is Plaintiffs' Steering

09:43AM 20  Committee's motion to allow service of a complaint on Lowe's Home

09:43AM 21  Center, Inc., Record Document 9462.

09:43AM 22          MR. LONGER:  Good morning, Your Honor.  Fred Longer on

09:43AM 23  behalf of Plaintiffs' Steering Committee.

09:43AM 24              Your Honor, we, as the Plaintiffs' Steering

09:43AM 25  Committee, have filed a number of these omnibus complaints or

09:43AM 1    complaints in intervention, and in the past, we've asked for

09:43AM 2    leave to have service provided.  This is an action where we had

09:44AM 3    an intervening event which was the settlement in Georgia in the

09:44AM 4    *Vereen* action, which had an overlay that affected the service of

09:44AM 5    these complaints, and in the intervention period, we had an

09:44AM 6    agreement with Lowe's as to how to avoid any issues with the

09:44AM 7    settlement taking place in Georgia.

09:44AM 8            We resolved those with an agreed stay order which

09:44AM 9    Your Honor signed into effect, and we have now gone through the

09:44AM 10   process where we've heard from particular plaintiffs on these

09:44AM 11   particular complaints, which is the complaint in intervention,

09:44AM 12   Number 1A, which is a *Payton* intervention complaint, and also

09:44AM 13   with an Omni complaint, Omni No. VII.

09:45AM 14           Through inadvertence, our service provider, APS,

09:45AM 15   actually served Omni VII, so this motion we had instructed them

09:45AM 16   to hold off and refrain from doing it, but somehow that

09:45AM 17   instruction got missed.  I'm not quite sure, quite honestly.

09:45AM 18           Anyway, that complaint was being served.  So this

09:45AM 19   motion, at least with respect to Omni No. VII, is being sought

09:45AM 20   *nunc pro tunc*.

09:45AM 21           At any rate, we have informed Lowe's of the various

09:45AM 22   plaintiffs on those complaints.  There is only a group of five

09:45AM 23   that they have met the criteria for Lowe's for the agreed stay

09:45AM 24   order which is that they had to have opted out and that they had

09:45AM 25   to have provided indicia.  All of the plaintiffs have, in fact,

09:45AM 1    opted out as to the indicia.  They have been provided to Lowe's

09:45AM 2    either through PPFs or through the Special Master, and there is a

09:46AM 3    couple where if there is any question as to the service of the

09:46AM 4    indicia, it's in the reply briefs, they have it now, and we just

09:46AM 5    ask that the Court grant our motion.

09:46AM 6             THE COURT:  What's the objection to that?

09:46AM 7             MR. GAUDET:  Morning, Your Honor.  May it please the

09:46AM 8    Court, Billy Gaudet, representing Lowe's.

09:46AM 9             Your Honor, this is not just about service of a

09:46AM 10   complaint, but they want to serve class action complaints on

09:46AM 11   Lowe's.

09:46AM 12            The agreement that we -- that the -- the purpose of

09:46AM 13   the agreed stay order, Your Honor, was to allow Lowe's to

09:46AM 14   continue its settlement process in *Vereen*.  To avoid having to

09:46AM 15   spend time in the MDL during that process, we entered into this

09:46AM 16   agreement with the PSC, and Your Honor agreed to sign an agreed

09:47AM 17   stay order.

09:47AM 18            The service of the complaint, the class action

09:47AM 19   complaint violates three stay orders.  It violates the *Vereen*

09:47AM 20   court stay order, it violates the agreed stay order which says

09:47AM 21   that no proceeding against Lowe's until our settlement process in

09:47AM 22   the *Vereen* court is completed, and it violates the InEx

09:47AM 23   settlement stay order entered by this court.

09:47AM 24            Because if you remember, Your Honor, when we met

09:47AM 25   with you when we had issues with the PSC almost a year ago and

09:47AM 1   Russ showed us some invoices from InEx and we told Your Honor

09:47AM 2   that we believe that the only connection to Lowe's with Chinese

09:47AM 3   drywall was through InEx.  And we're here today again, in our

09:47AM 4   *Vereen* settlement, after 35,000 proof of claims, five

09:47AM 5   individuals, only five individuals have connection with Chinese

09:47AM 6   drywall, every one of them, through InEx.

09:48AM 7            Now, one of these plaintiffs that they say meet the

09:48AM 8   indicia is an InEx claimant.  I'm a little perplexed about that

09:48AM 9   because we heard arguments about the InEx stay and how it stays

09:48AM 10  all downstream suppliers, which Lowe's is.  I'm sure that the PSC

09:48AM 11  is not making an exception in trying to carve out Lowe's as a

09:48AM 12  downstream supplier for that stay and allow a claim to proceed

09:48AM 13  against Lowe's because that would be contrary to what we believe

09:48AM 14  was argued to Your Honor, and it would certainly bar our rights

09:48AM 15  in many ways, and we would have to object to that because one of

09:48AM 16  the five plaintiffs that they've listed is definitely an InEx

09:48AM 17  plaintiff.

09:48AM 18           We have been in this litigation for two years.  It

09:48AM 19  started in August of 2009, two years ago when Dempster filed a

09:48AM 20  class action complaint.  That complaint, we met with the counsel

09:49AM 21  for the Dempsters, it's a class action complaint, told them that

09:49AM 22  we don't believe that Lowe's sold any Chinese drywall to the

09:49AM 23  Dempsters.  It was put on this Court's inspection.  Lo and

09:49AM 24  behold, not only did Lowe's not sell Chinese drywall, there was

09:49AM 25  no Chinese drywall in that home.  So it's taken us two years to

09:49AM 1  get an agreement to dismiss that complaint, even though there was

09:49AM 2  no Chinese drywall in that home.

09:49AM 3          So we're left with now, after shaking the trees and

09:49AM 4  after an opt-out campaign in our settlement, where thousands of

09:49AM 5  people opted out, we're left with now actually four people -- one

09:49AM 6  of them is InEx -- that claim should not be allowed to be served

09:49AM 7  under your court's stay order in the InEx settlement, and we're

09:49AM 8  left with four others.  We're not going to argue about whether

09:49AM 9  they defaulted for not supplying us directly.

09:49AM 10          Although we do believe that our agreement is clear,

09:49AM 11  we wouldn't make an agreement with the PSC and have to do our own

09:50AM 12  homework to gather the information.  In fact, just to get the

09:50AM 13  five plaintiff profiles that we got on these people cost us $390,

09:50AM 14  and our whole purpose is to try to avoid spending time and

09:50AM 15  wasting Your Honor's time on these issues.

09:50AM 16          We do argue that none of the indicia that they have

09:50AM 17  provided is sufficient.  The indicia has to be -- they made the

09:50AM 18  opt-out indicia.  They also have to provide indicia of Chinese

09:50AM 19  drywall in their home and sufficient indicia that Chinese drywall

09:50AM 20  was purchased from Lowe's.

09:50AM 21          Now, they have one, the InEx claimant, but the very

09:50AM 22  proof of Plaintiff Profile Forms that were submitted don't give

09:50AM 23  any indicia that it was purchased from Lowe's.  In fact, two of

09:50AM 24  those plaintiffs that -- exhibits that they presented, one the

09:51AM 25  report even lists, and I believe that's the Fraziers.  You know,

09:51AM 1    the indicia we're talking about is a profile form where the

09:51AM 2    plaintiff says, "I think I bought it from Home Depot."  This one

09:51AM 3    says, "Home Depot/Lowe's, Elysian Fields."

09:51AM 4            We're very clear that they bought it from a store.

09:51AM 5    It's not Chinese drywall.  Again, the only connections to InEx,

09:51AM 6    which I think we explained to Your Honor, was a special order

09:51AM 7    sale.  It was delivered to the property, never got to Lowe's.

09:51AM 8            Ms. Frazier did it -- the inspection report states,

09:51AM 9    "The Sheetrock covering the walls and ceilings of the residences

09:51AM 10   was branded by Knauf, was purchased through a wholesale

09:51AM 11   supplier."

09:51AM 12           The sentence last, "The insured purchased the

09:51AM 13   plasterboard through wholesale building material supplier,

09:51AM 14   Cabinets 4 Sure."  So Ms. Frazier, her own materials prove that

09:52AM 15   she didn't get her Chinese drywall from Lowe's.  This is the kind

09:52AM 16   of cases that we're dealing with that is keeping Lowe's in this

09:52AM 17   MDL.

09:52AM 18           The next plaintiff -- now we have a universe of

09:52AM 19   four plaintiffs.  The next plaintiff is Mr. Gillman, who says in

09:52AM 20   his assessment report, it's Chinese drywall in one room, but the

09:52AM 21   rest of the drywall is probably U.S. made.  Now, there is no

09:52AM 22   receipts from Lowe's.  There is no anything other than they think

09:52AM 23   their builder told them they got it from Lowe's.  But from their

09:52AM 24   materials, it's clear, if they have drywall that they got from

09:52AM 25   Lowe's, it's not Chinese drywall.  It's similar to Mr. Gillman

| | |
|---|---|
| 09:52AM 1 | that did buy drywall. |
| 09:52AM 2 | Now, Ms. Guidry, again, her -- and by the way, |
| 09:52AM 3 | Lowe's did try to check their records to see if there is any |
| 09:52AM 4 | record of these people buying drywall from Lowe's. |
| 09:53AM 5 | Interestingly, they did find records from Ms. Guidry, but it |
| 09:53AM 6 | seems to match.  Ms. Guidry's attachment diagram says there is |
| 09:53AM 7 | Chinese drywall elsewhere, but there is National Gypsum made in |
| 09:53AM 8 | USA purchased 5/29/08.  Well, it so happens, Lowe's has a record |
| 09:53AM 9 | of her purchasing National Gypsum.  Their own indicia proves that |
| 09:53AM 10 | they didn't buy Chinese drywall from Lowe's. |
| 09:53AM 11 | So the point being, Your Honor, is we've tried to |
| 09:53AM 12 | avoid wasting Your Honor's time.  We've tried to meet on these |
| 09:53AM 13 | issues.  We still want to do that, but what we would recommend, |
| 09:53AM 14 | if Your Honor prefers, given this information that we truly |
| 09:53AM 15 | believe and I think we're correct, that these people, well, they |
| 09:54AM 16 | haven't provided sufficient indicia, and we believe they haven't |
| 09:54AM 17 | bought Chinese drywall from Lowe's, and some of them, their own |
| 09:54AM 18 | materials proves that. |
| 09:54AM 19 | Again, we would be willing to meet with the PSC and |
| 09:54AM 20 | the individual attorneys and see if we can either convince them |
| 09:54AM 21 | or work out why they haven't been able to determine -- you know, |
| 09:54AM 22 | we strongly believe they don't have Chinese drywall from Lowe's, |
| 09:54AM 23 | but if Your Honor wishes, we could come back in two weeks, |
| 09:54AM 24 | whatever, after we meet with them, see if we can resolve these |
| 09:54AM 25 | issues. |

09:54AM 1      THE COURT:  You see, I understand your argument on

09:54AM 2  *Vereen*, if you take the position that it's adverse to the Court's

09:54AM 3  stay order, but the others, really, you're arguing substantive

09:54AM 4  matters as opposed to whether or not they could or should be able

09:54AM 5  to serve.

09:54AM 6      Now, it may be worth the effort to at least meet

09:54AM 7  and talk so that you're not spending time and resources on things

09:55AM 8  that are clearly not cases, but some of the substantive issues --

09:55AM 9  it's difficult for me to deal with substance before service.

09:55AM 10  You're really officially not in the case until service is there.

09:55AM 11      So I understand the *Vereen* case, you say that they

09:55AM 12  purchased it from InEx, and I stopped all of the proceedings

09:55AM 13  against or involving InEx, but the others are a little

09:55AM 14  problematic.

09:55AM 15      MR. GAUDET:  Your Honor, if I may, I understand it's

09:55AM 16  just service of the complaint, and so is *Dempster*, just service

09:55AM 17  of the complaint, and we're in this litigation on that basis, but

09:55AM 18  it's not just service of an individual complaint.  Our agreement

09:55AM 19  in the agreed stay order only allows certain individuals that

09:56AM 20  have indicia to come back in.

09:56AM 21      They want to serve an omnibus class action

09:56AM 22  complaint to circumvent our agreed stay order that they are

09:56AM 23  representing -- and, of course, we have a class of three people,

09:56AM 24  Your Honor.  They want to serve -- they are serving a class

09:56AM 25  action complaint by people who claim to represent a class against

09:56AM 1    Lowe's when there is no class against Lowe's.  If there were

09:56AM 2    individual complaints, it would be different because the

09:56AM 3    difference is you are trying to serve omnibus class action

09:56AM 4    complaints.

09:56AM 5            THE COURT:  I got it.  Let me hear your response.

09:56AM 6            MR. LONGER:  Your Honor, I don't have an illustrated

09:56AM 7    version of *Black's Law Dictionary*, but if I did, I think this

09:56AM 8    motion would be under mountain out of a molehill.

09:56AM 9            I think that what I'm hearing from Lowe's counsel

09:56AM 10   is that this is something that we can agree to and work through,

09:56AM 11   but he's putting the cart before the horse in regards to the

09:57AM 12   substantive issues, and Your Honor pointed this out.  Just the

09:57AM 13   issue of service, we need to serve the complaint, then we can

09:57AM 14   agree to stay the complaint, and the effect of the orders that

09:57AM 15   Your Honor has in place with regard to only InEx would be in

09:57AM 16   place and the matter would be stayed.

09:57AM 17           We have simply asked that the first step of the

09:57AM 18   process be engaged because these are class action complaints,

09:57AM 19   complaints in intervention that affect a far larger number of

09:57AM 20   defendants than just Lowe's.  These are matters that, you know,

09:57AM 21   Mr. Gaudet was referring to a class of only three, but the point

09:57AM 22   of the matter is, is that the complaint has a lot more defendants

09:57AM 23   than just Lowe's in it.

09:57AM 24           So all we're asking, Your Honor, is that the stay

09:57AM 25   be lifted to allow us to serve the complaint.  At that point, I

09:58AM  1    agree with Mr. Gaudet.  We can have another meet and confer.  We

09:58AM  2    can go over the substantive points that he's raised.  I think

09:58AM  3    that he's made some perhaps valid points, but I need to go over

09:58AM  4    that with other counsel who represent these clients individually,

09:58AM  5    and the PSC is more than happy to oblige that interest and act as

09:58AM  6    liaison and try to work through the differences, if we can, but

09:58AM  7    the first step of this journey is that the complaint should be

09:58AM  8    served.

09:58AM  9          THE COURT:  I agree that the complaint should be served,

09:58AM 10    but I also agree that it should be stayed.  So I'll allow the

09:58AM 11    complaint to be served, but then I'll stay the matters.  I

09:58AM 12    suggest you all get together.  I think he's got serious issues,

09:58AM 13    and I think he's right on some of his observations, but rather

09:58AM 14    than get into the discovery aspect, I'll just stay the complaint,

09:58AM 15    let it be served, and I'll stay it until you have an opportunity

09:59AM 16    to discuss matters.

09:59AM 17          MR. LONGER:  Just for clarification, Your Honor, I

09:59AM 18    appreciate your ruling, but as to Omni VII, it was already

09:59AM 19    served, so we're just seeking a *nunc pro tunc* authority.

09:59AM 20                Thank you, Your Honor.

09:59AM 21          THE COURT:  Motion to lift the stay for approval of

09:59AM 22    proposed scheduling order for plaintiff's motion for class

09:59AM 23    certification claims for damages against Venture Supply,

09:59AM 24    Document 9549.

09:59AM 25                The issue here seems to be whether the issues of

09:59AM 1    jurisdiction proceed first or the other matters proceed first.

09:59AM 2    Let me hear from the parties.

09:59AM 3            MR. LEVIN:  Your Honor, we've handled this litigation in

10:00AM 4    stages.  We've moved against the suppliers of the Knauf product,

10:00AM 5    Banner, and InEx, and L & W, and Banner and InEx on class

10:00AM 6    certification in the process.  We have preliminary approval of

10:00AM 7    two suppliers, InEx and Banner.

10:00AM 8            We've now turned our attention to Venture, which is

10:00AM 9    the supplier of the Taishan product in Virginia and three or four

10:00AM 10   claimants in, I believe, North Carolina.

10:00AM 11           We're now ready to proceed with class certification

10:00AM 12   against them.  They are defendants in multiple cases, *Germano*, as

10:00AM 13   well as several Omni complaints dealing with Taishan.

10:00AM 14           In the beginning, Venture said there was no

10:00AM 15   jurisdiction because we could never serve Taishan and they

10:01AM 16   wouldn't be here; therefore, we didn't have a hook on Venture for

10:01AM 17   federal jurisdiction, whether it be under CAFA or otherwise.

10:01AM 18           Taishan is here.  They are contesting jurisdiction,

10:01AM 19   but they are here.  Venture's counsel, who is saying that he has

10:01AM 20   to deal with jurisdiction now because of Taishan, is engaged in

10:01AM 21   discovery as against Taishan and traveling to Hong Kong to prove

10:01AM 22   that Taishan's jurisdiction is proper in the Eastern District of

10:01AM 23   Louisiana.

10:01AM 24           I might add that with regard to class certification

10:01AM 25   and agreeing to an order for class certification, he's not very

10:01AM 1   agreeable with us, but with regard to going to Hong Kong and

10:01AM 2   proving Taishan has jurisdiction, which is his defense to the

10:01AM 3   class action, he's very agreeable with us.  He's partaking in

10:02AM 4   that discovery.  He, under Rule 11, is attempting to prove

10:02AM 5   jurisdiction and believes he has a basis for jurisdiction under

10:02AM 6   Rule 11 or he wouldn't be in China taking those depositions.

10:02AM 7          Rather than get involved with all of these

10:02AM 8   collateral issues, Venture has an insurance policy, and Venture

10:02AM 9   doesn't have any money, to our knowledge.  It's time that these

10:02AM 10  poor people in Virginia and North Carolina have their day in

10:02AM 11  court.  They are proceeding against Taishan, but they should also

10:02AM 12  be allowed to proceed against Venture in order to resolve the

10:02AM 13  Venture claims one way or another and get on with their lives.

10:02AM 14  Right now, their lives are in homes with defective drywall.

10:02AM 15          THE COURT:  Let me hear from Venture.

10:02AM 16          MR. HARDT:  Good morning, Your Honor.  Ken Hardt on

10:03AM 17  behalf of Venture Supply.

10:03AM 18          Your Honor, there are two motions before the Court

10:03AM 19  today dealing with my client.  The first deals with *Germano* and

10:03AM 20  *Hinkley*, which is what I'm making an appearance in those two

10:03AM 21  class actions.  That's on the motion to lift the stay the PSC

10:03AM 22  filed to start the class certification process.

10:03AM 23          Mr. Bollinger, our local counsel will deal with our

10:03AM 24  motion to lift the stay to address the jurisdictional issues in

10:03AM 25  the *Abel, Gross*, and *Wiltz* complaints which are the direct filed

10:03AM  1    actions in Louisiana.

10:03AM  2            To give this Court kind of an overview where we are

10:03AM  3    after two and a half years, my client is a defendant in zero

10:03AM  4    actions in Louisiana, other than the direct filed actions, the

10:03AM  5    *Gross, Wiltz, Abel*, and some other direct filed actions that the

10:03AM  6    PSC has filed in this Court because we didn't distribute any

10:03AM  7    product in Louisiana.

10:03AM  8            We have one state court action in Georgia.  We have

10:03AM  9    two state court actions in Alabama.  We have, as of last week,

10:04AM 10    one state court action in North Carolina on behalf of five

10:04AM 11    homeowners.  The PSC admits in their filings, at the most, there

10:04AM 12    are 15 homeowners in North Carolina.  The bulk of the actions

10:04AM 13    filed against Venture Supply are in Virginia state courts, and we

10:04AM 14    have about 160 or 170 of those actions.

10:04AM 15            As Your Honor knows, most of those actions are

10:04AM 16    pending in the Norfolk Circuit Court with Judge Hall.  I think

10:04AM 17    Your Honor has been in contact with Judge Hall.  Those actions

10:04AM 18    were set for trial beginning in January of this year.  We were

10:04AM 19    going to try five cases every month, January, February, March.

10:04AM 20    We had those set before Judge Hall.

10:04AM 21            We got together, in agreement with the PSC, and

10:04AM 22    went to Judge Hall and continued those actions generally while we

10:04AM 23    pursued Taishan.  While we went and served them, we're in the

10:04AM 24    process of serving them with a multi-claimant class action in

10:05AM 25    Virginia, we have already served them with another separate

10:05AM 1    action in Virginia Beach Circuit Court, and we're in the process

10:05AM 2    of going out to the jurisdictional discovery.

10:05AM 3           So we agreed and presented to Judge Hall that,

10:05AM 4    let's step back, let's not set these cases for trial, let's not

10:05AM 5    go forward with discovery in those cases because they don't want

10:05AM 6    to go forward with discovering those cases while we actively

10:05AM 7    pursue Taishan, and the Taishan jurisdictional issue down in this

10:05AM 8    court.

10:05AM 9           We have done that, as Mr. Levin said.  My client

10:05AM 10   authorized me to go to Hong Kong to participate in the

10:05AM 11   jurisdictional depositions of Taishan.  We filed a motion to

10:05AM 12   compel after those jurisdictional depositions with this Court.  I

10:05AM 13   was back here arguing that issue.  We have actively participated

10:05AM 14   with the PSC and actively participated with the other counsel

10:05AM 15   that are interested in the Taishan jurisdictional issues which

10:05AM 16   are being addressed.  I think we have a status conference after

10:05AM 17   this hearing to address where we are on the Taishan jurisdiction

10:06AM 18   discovery.

10:06AM 19          So everything stayed in Virginia.  Even a separate

10:06AM 20   case, the *Proto* action filed in Virginia Beach, which wasn't

10:06AM 21   filed by the PSC, that was set for trial in December also.  But

10:06AM 22   that, counsel agreed, let's back off because as a practical

10:06AM 23   matter, given the fact that my client is out of business because

10:06AM 24   of all of this, has no assets, had to liquidate and let go all of

10:06AM 25   its employees, the fact that there are limited insurance funds,

10:06AM 1    and Your Honor knows, the coverage decisions in Virginia aren't

10:06AM 2    going that well, as a practical matter, if these homeowners in

10:06AM 3    Virginia are going to get any relief whatsoever, it's through our

10:06AM 4    actions, combined with the PSC to try to get Taishan in here to

10:06AM 5    the table.  That's why they agreed, the PSC agreed, let's put

10:06AM 6    everything off while we pursue Taishan.

10:06AM 7            I heard Mr. Longer mention just in the last

10:06AM 8    argument, putting the cart before the horse.  That's kind of what

10:06AM 9    we're doing here because in the *Germano* action, which is the

10:06AM 10   Virginia class action, which is really what this case is all

10:07AM 11   about, the 170 some-odd plaintiffs, this Court's subject matter

10:07AM 12   jurisdiction depends upon the personal jurisdiction over Taishan.

10:07AM 13   If this Court has no personal jurisdiction over Taishan -- and

10:07AM 14   that's what we raised before.  We have never said in pleadings

10:07AM 15   filed in this court, there is no personal jurisdiction over

10:07AM 16   Taishan.  We have just said there is an issue about personal

10:07AM 17   jurisdiction, and that needs to be addressed by this Article 3

10:07AM 18   court as far as subject matter jurisdiction before anything else

10:07AM 19   is done.

10:07AM 20           I raised this argument, I believe, a year and a

10:07AM 21   half ago before Your Honor when they wanted to take my client's

10:07AM 22   deposition.  I've raised this argument consistently in the

10:07AM 23   *Germano* action that, look, we need to decide the subject matter

10:07AM 24   jurisdiction issue first because if we're forced to go forward

10:07AM 25   with class certification procedures, discovery, all of those

10:07AM 1   efforts, and it turns out that there is no personal jurisdiction

10:07AM 2   over Taishan, then everything is not -- it's all for void.  We

10:07AM 3   wasted all of our time.

10:07AM 4             So as far as the motion to lift the stay on the

10:07AM 5   class certification motion, at least with respect to *Germano* and

10:08AM 6   *Hinkley*, I just ask that that be delayed until we proceed with

10:08AM 7   the jurisdictional issue with Taishan.  We are, as I said,

10:08AM 8   cooperating and going forward with that.  Once that issue is

10:08AM 9   decided, if the Court does have personal jurisdiction over

10:08AM 10  Taishan, then it would have subject matter jurisdiction under the

10:08AM 11  Class Action Fairness Act over the *Germano* action, and then we

10:08AM 12  can proceed with those issues.  Up until that time, we could all

10:08AM 13  be wasting our time, efforts, and money, and the Court's

10:08AM 14  resources dealing with class certification issues.

10:08AM 15            THE COURT:  What about liability, your personal

10:08AM 16  liability, meaning your company's personal liability if they

10:08AM 17  knew, could have known, should have known that the drywall was

10:08AM 18  defective?

10:08AM 19            MR. HARDT:  As far as a matter of Virginia state law,

10:08AM 20  Your Honor?

10:08AM 21            THE COURT:  Yes, I need the Virginia.  See, as an MDL

10:08AM 22  court, I'm really sitting with the hat of Virginia.  I'm a

10:08AM 23  Virginia judge for this purpose.

10:09AM 24            MR. HARDT:  Right, and, Your Honor, sitting in the

10:09AM 25  *Germano* action as far as that goes.

10:09AM 1        THE COURT:  Right.

10:09AM 2        MR. HARDT:  As far as the liability issue, you only get

10:09AM 3   to that once you decide that you have subject matter jurisdiction

10:09AM 4   to even address that issue, and if you don't have subject matter

10:09AM 5   jurisdiction and you address that issue beforehand, it's always

10:09AM 6   subject to attack.

10:09AM 7        So let's say in the *Germano* action, you know,

10:09AM 8   somebody decides to step to the plate and we enter into some kind

10:09AM 9   of class settlement, like they are doing in the *Banner* and *InEx*

10:09AM 10  thing.  I don't think that will happen given the fact that the

10:09AM 11  Virginia situation is unique with the limited amount of coverage

10:09AM 12  and with the coverage decisions that are coming down in Virginia.

10:09AM 13  But let's say it happens in *Germano*, if this Court lacks subject

10:09AM 14  matter jurisdiction, whatever settlement we reach, even if we get

10:09AM 15  to that stage, would always be subject to collateral attack

10:09AM 16  because subject matter jurisdiction is not something that the

10:09AM 17  parties can waive.

10:09AM 18       THE COURT:  Do you think that the Virginia court has

10:09AM 19  subject matter jurisdiction over you?

10:09AM 20       MR. HARDT:  The Virginia court has personal jurisdiction

10:09AM 21  over Venture.  The question is whether it has subject matter

10:10AM 22  jurisdiction over the class action that was filed.

10:10AM 23       THE COURT:  Assume that Venture knew that the drywall

10:10AM 24  was defective and they sold it.

10:10AM 25       MR. HARDT:  If you're talking about the Virginia state

10:10AM  1    court actions, if it's proved that the drywall was defective and

10:10AM  2    we sold it, yes, Venture would be on the hook as a supplier under

10:10AM  3    the Virginia state court law, and we would have an indemnity

10:10AM  4    action against Taishan, which is, as a practical matter, where

10:10AM  5    the only funds would come from.

10:10AM  6                 In the action that's before this Court, it's the

10:10AM  7    *Germano* class action.  The *Germano* class action is a class action

10:10AM  8    with everybody in Virginia except Taishan, and the only way they

10:10AM  9    could file suit in federal court in Virginia, which is the case

10:10AM 10    that was transferred down here in *Germano*, is with the presence

10:10AM 11    of Taishan.  That's the only way under the Class Action Fairness

10:10AM 12    Act that this Court has subject -- jurisdiction or the Virginia

10:10AM 13    federal court has subject matter jurisdiction.

10:10AM 14                 Like I said, we've consistently raised this issue

10:11AM 15    and we've said we don't know if there is personal jurisdiction

10:11AM 16    over Taishan.  We're actively pursuing that.  We're trying to get

10:11AM 17    all of the information that we can gather for the Court to make

10:11AM 18    that decision.  But if, for whatever reason, we get all of that

10:11AM 19    information and we present it to the Court and Taishan prevails,

10:11AM 20    and there is no personal jurisdiction of a federal court in

10:11AM 21    Virginia or this Court sitting as the federal court in Virginia

10:11AM 22    as the transferee court, then there is absolutely no subject

10:11AM 23    matter jurisdiction, and the *Germano* case goes away.  It's void.

10:11AM 24    Everything that's happening is void.

10:11AM 25                 THE COURT:  Let me hear a response.

10:11AM 1      MR. LEVIN:  I have a suggestion.  Why don't you become

10:11AM 2   Banner and InEx in this case.  You have a policy.

10:11AM 3         Your Honor, CAFA is a very, very broad statute.  We

10:11AM 4   feel that we have CAFA jurisdiction in *Germano*.  We have CAFA

10:12AM 5   jurisdiction in the Omni complaints with multiple defendants,

10:12AM 6   some of them doing business in Louisiana.  We have CAFA

10:12AM 7   jurisdiction because it involves Chinese drywall, and that's the

10:12AM 8   product at issue for CAFA.  If that's the case, CAFA even confers

10:12AM 9   jurisdiction on just about any defendant where a complaint --

10:12AM 10  similar complaint has been filed in one year.

10:12AM 11        I suggest, respectfully suggest that we continue to

10:12AM 12  do what Your Honor set out to do, and do it in stages.  Now is

10:12AM 13  not the time to start dealing with Venture's problems.  We're

10:12AM 14  willing to take that risk and to start having class certification

10:12AM 15  hearings.  Who knows?  Hope is eternal and Venture may become

10:12AM 16  Banner and InEx, and some day we may have preliminary approval

10:12AM 17  before this Court on that policy.

10:13AM 18       THE COURT:  I understand the issue.  I'm going to take

10:13AM 19  it under advisement and look at it again.  I'm not going to rule

10:13AM 20  from the bench on this one.

10:13AM 21        Does that deal with also personal jurisdiction, the

10:13AM 22  9653 document?

10:13AM 23       MR. BOLLINGER:  No, Your Honor.  It's a separate issue.

10:13AM 24       THE COURT:  Let me hear from you, then.  Come forward

10:13AM 25  and give your name.  There is a motion to dismiss for lack of

10:13AM 1  personal jurisdiction in Record Document 9653.

10:13AM 2        MR. BOLLINGER:  Good morning, Your Honor.

10:13AM 3  Brett Bollinger on behalf of Venture Supply.

10:13AM 4        Your Honor, this is a motion to lift the stay to

10:13AM 5  deal with the personal jurisdiction argument.  It is, as you're

10:13AM 6  your Honor has picked up on, related to the motion with regard to

10:13AM 7  the class certification.

10:13AM 8        Way back in law school, the first thing they taught

10:13AM 9  me in civil procedure class was you've got to address

10:13AM 10  jurisdiction.  If the Court doesn't have jurisdiction, it can't

10:13AM 11  do anything.  18 months ago, almost 19 months ago, Venture Supply

10:13AM 12  filed its first motion to dismiss for lack of personal

10:14AM 13  jurisdiction.  We waited for a hearing.  Plaintiffs filed omnibus

10:14AM 14  complaint after omnibus complaint, and we filed motions to

10:14AM 15  dismiss for lack of personal jurisdiction to every one they keep

10:14AM 16  naming us in.  Some, we belong in; some, we don't belong in.  We

10:14AM 17  don't think we have jurisdiction in any of them, and we continue

10:14AM 18  to wait.

10:14AM 19        Your Honor has entered a scheduling order to

10:14AM 20  control the litigation, and we understand how it's being

10:14AM 21  controlled and we continue to wait, but we've now reached the

10:14AM 22  stage where Venture can't wait any longer.  The plaintiffs are

10:14AM 23  now trying to push forward with the case on class certification.

10:14AM 24  They filed a motion to lift the stay, and I'm dealing with

10:14AM 25  Venture in these omnibus class actions.  I couldn't even file an

10:14AM 1   opposition to their motion to lift the stay without potentially

10:14AM 2   waiving a personal jurisdiction argument.

10:14AM 3            So we're asking the Court to lift the stay to

10:14AM 4   address the personal jurisdiction issues before you can do

10:14AM 5   anything with class certification.

10:14AM 6            Your Honor, I've cited in our memo case after case,

10:15AM 7   and every one of them says you have to address personal

10:15AM 8   jurisdiction first.  Your Honor, the *Read* case even says -- it's

10:15AM 9   elementary -- that if there is no jurisdiction, we have an

10:15AM 10  unqualified right to have our motion granted.

10:15AM 11           Your Honor -- and I understand that this is an MDL,

10:15AM 12  it has some peculiar issues.  Your Honor pointed out in the *Vioxx*

10:15AM 13  cases in those decisions that these direct file actions have

10:15AM 14  particular issues with regard to jurisdiction, with regard to

10:15AM 15  choice of laws, with regard to what power the Court actually has

10:15AM 16  over them.  Your Honor, we've even cited cases in the MDL

10:15AM 17  context, and they all say you have to address personal

10:15AM 18  jurisdiction first.

10:15AM 19           The *Manual for Complex Litigation* cited over and

10:15AM 20  over in this case, in other cases like this, it's almost like the

10:15AM 21  Bible in what to do in these things.  Not only does it discuss

10:15AM 22  personal jurisdiction, but it discusses personal jurisdiction in

10:15AM 23  these types of cases when you're dealing with class

10:15AM 24  certification.  What it says is you have to address personal

10:15AM 25  jurisdiction before class certification.  The quote from the

10:16AM 1   *Manual for Complex Litigation* says, "The judges should direct the

10:16AM 2   parties to raise these issues before you even file a motion to

10:16AM 3   certify class."

10:16AM 4          Your Honor, everything we've cited, everything out

10:16AM 5   there says you have to address personal jurisdiction first.

10:16AM 6   You're supposed to address this before you get anywhere in the

10:16AM 7   case.  You certainly have to address it before you get to class

10:16AM 8   certification.

10:16AM 9          There is nothing out there -- the plaintiffs

10:16AM 10  haven't cited you anything that says, no, here's some cases,

10:16AM 11  here's some law that goes the other way.  Their brief doesn't

10:16AM 12  cite anything.  The only thing they say is, "Well, Judge, we have

10:16AM 13  gone this way and gone with class certification with other

10:16AM 14  parties in this case and we've gotten settlements," and that's

10:16AM 15  when they stood up here and said, "Hey, why don't you just settle

10:16AM 16  with us instead of actually following the law."  That's what they

10:16AM 17  want you to do.  They want it just because that's what they want

10:16AM 18  to do.

10:16AM 19         Well, I didn't represent the other parties that

10:16AM 20  have settled in this case.  They may or may not have had their

10:16AM 21  own motions or own arguments they wanted to raise.  They chose to

10:17AM 22  do it how they wanted to.  Well, now they are trying to advance

10:17AM 23  this case as to Venture.

10:17AM 24         With regard to personal jurisdiction, it's our

10:17AM 25  right to raise this.  We've raised it over and over and over

10:17AM 1    again for the past 19 months.  Your Honor, the law is abundantly

10:17AM 2    clear that you absolutely have to address personal jurisdiction

10:17AM 3    first.

10:17AM 4         THE COURT:  Do you think the federal court in Virginia

10:17AM 5    has personal jurisdiction over Venture?

10:17AM 6         MR. BOLLINGER:  No, I don't believe the federal court --

10:17AM 7    and I think that depends on whether or not there is jurisdiction

10:17AM 8    over Taishan.  The way this case is set up, there are the state

10:17AM 9    court actions in Virginia.  There is certainly personal

10:17AM 10   jurisdiction in those actions.  However, when you get to the

10:17AM 11   federal court action in Virginia, the only way it gets to federal

10:17AM 12   court is if you have diversity.  The only way you have diversity

10:17AM 13   is if you have jurisdiction over Taishan.  So if there is no

10:17AM 14   jurisdiction over Taishan, then you don't have diversity, then

10:17AM 15   you don't get to federal court.

10:17AM 16        THE COURT:  What about CAFA?

10:17AM 17        MR. BOLLINGER:  Your Honor, the bigger issue in this

10:18AM 18   case is the direct file actions.  The direct file actions are the

10:18AM 19   ones that we're dealing with.  With regard to these direct files,

10:18AM 20   Your Honor has raised that they create particular issues.

10:18AM 21   Your Honor, it's an issue of -- you still have to address --

10:18AM 22   before you get to CAFA, before you get to all of these issues,

10:18AM 23   you have to address personal jurisdiction.

10:18AM 24             Your Honor, we're not arguing today the issue of

10:18AM 25   personal jurisdiction and whether we have it or don't have it.

10:18AM  1   I'm pretty confident we don't have it.  All we're asking today is

10:18AM  2   to lift the stay.

10:18AM  3              We have to look at this case and say, "All right.

10:18AM  4   What's the order that we have to follow in this case?"  They've

10:18AM  5   moved us forward and tried to push class certification.  We're

10:18AM  6   pointing out to the Court, you can't do that.  You have to

10:18AM  7   address personal jurisdiction first.  All we're asking is --

10:18AM  8   today we're not arguing the personal jurisdiction, we're just

10:18AM  9   saying, you have to follow this process, and the only way this

10:18AM 10   case can go forward from this point is address personal

10:18AM 11   jurisdiction first.  If there is personal jurisdiction, then we

10:18AM 12   can move forward with the rest of the case, Your Honor.

10:19AM 13              THE COURT:  Let me hear your response.

10:19AM 14              MR. HARDT:  Ken Hardt on behalf of Venture Supply.

10:19AM 15              Your Honor, Mr. Bollinger was addressing the direct

10:19AM 16   filed actions, the *Abel, Gross*, and *Wiltz* omnibus complaints,

10:19AM 17   which were direct filed in Louisiana.  When Your Honor asked

10:19AM 18   Mr. Bollinger does a Virginia court -- would a Virginia federal

10:19AM 19   court or Virginia state court have personal jurisdiction over

10:19AM 20   Venture, yes, we were a Virginia corporation.  The issue with

10:19AM 21   *Abel, Gross*, and *Wiltz*, as this Court recognized, as

10:19AM 22   Mr. Bollinger pointed out in the *Vioxx* litigation, has a direct

10:19AM 23   filed action in Louisiana.  The question is does a Louisiana

10:19AM 24   court have personal jurisdiction over a Virginia supplier,

10:19AM 25   Venture Supply, who never did anything?  There is no evidence

10:19AM 1   they ever did anything in Louisiana.

10:19AM 2           So that's the 12(b) motion.

10:19AM 3           MR. LEVIN:  Your Honor, you can stage procedures, you

10:20AM 4   manage your own docket, and you've tabled jurisdiction in many

10:20AM 5   areas and allowed the proceedings to proceed in a manner in which

10:20AM 6   you thought was the most expedient way of resolution or getting

10:20AM 7   from Point A to Point B.  You've done it with insurance

10:20AM 8   interests, 200 defendants; you've done it with builders, more

10:20AM 9   than 200 defendants.  We have suits in Virginia that are national

10:20AM 10  classes that are here in *Germano*.  We have the *Hinkley* case.  We

10:20AM 11  have residents of North Carolina to give national jurisdiction.

10:20AM 12  We have jurisdiction under CAFA on the Omni complaints with

10:20AM 13  multiple defendants where Venture is part of the process.  The

10:21AM 14  most expeditious way of handling this case is now to turn our

10:21AM 15  attention to class certification, and that takes about six months

10:21AM 16  and we'll resolve.

10:21AM 17          They are not paddling their own canoe here with

10:21AM 18  regard to determining what issues the Court takes up.  I

10:21AM 19  respectfully request, Your Honor, that you continue to follow the

10:21AM 20  procedure, the effective procedure that you followed so far in

10:21AM 21  allowing us to proceed with class certification before we get

10:21AM 22  involved with personal jurisdiction.

10:21AM 23          THE COURT:  I understand the issues, and I'll take this

10:21AM 24  under advisement, too.

10:21AM 25          As I see it, there are several suits against

10:21AM 1   Venture.  There are some suits which were filed in this court

10:21AM 2   directly against Venture.  That raises some questions.  There are

10:21AM 3   also suits in which Venture is involved that were not directly

10:22AM 4   filed in this case, filed in the form and fashion that doesn't

10:22AM 5   give this Court -- they are not looking to a Louisiana judge.

10:22AM 6   They are looking to a judge in North Carolina or a judge in

10:22AM 7   Virginia, a federal judge in Virginia, a federal judge in North

10:22AM 8   Carolina.

10:22AM 9            I'm not looking at a question of diversity

10:22AM 10  jurisdiction here.  It would be federal question jurisdiction.

10:22AM 11  It would be whether or not CAFA is applicable from the standpoint

10:22AM 12  of the jurisdictional aspect of the case.  As counsel says, I'm

10:22AM 13  not dealing at this point with the substantive aspect of the

10:22AM 14  motion, but I will look at it.

10:22AM 15           Whether or not I can or can't is difficult words

10:22AM 16  that the Court can't do this.  I think there is some aspects that

10:23AM 17  have to do with the docket organization, but I'll look at your

10:23AM 18  arguments to see whether or not I will do it one way or the

10:23AM 19  other.  I don't know necessarily "can't" is a word that I can

10:23AM 20  deal with, but I appreciate your observations, excerpt for some

10:23AM 21  of those words.

10:23AM 22           Let me turn to plaintiff Wendy Lee Hobbie's motion

10:23AM 23  for entry of scheduling order.

10:23AM 24           MR. BRYSON:  Your Honor, Dan Bryson appearing for

10:23AM 25  the plaintiffs in this matter.

10:23AM 1      This is our motion for entry of a scheduling order.

10:23AM 2 We appeared before Your Honor at the last scheduling conference,

10:23AM 3 and Your Honor asked for the parties to confer.  We have

10:24AM 4 conferred.  We were unable to come to an agreement on a

10:24AM 5 scheduling order, so we have submitted competing scheduling

10:24AM 6 orders to Your Honor.  Our memorandum on this is Document No.

10:24AM 7 8887-1.

10:24AM 8      As the Court is aware, this involves a multifamily

10:24AM 9 unit case.  There is 328 units, 476,348 square foot of living

10:24AM 10 space.  This multifamily unit is in Florida.  We believe, as we

10:24AM 11 indicated to the Court last time, that this case raises a number

10:24AM 12 of contractual-type issues that we think the Court addressing

10:24AM 13 now, through a scheduling order and through memorandum, will be

10:24AM 14 instructive for the many other multifamily cases that are out

10:24AM 15 there.

10:24AM 16      This product is a mix of KPT, Taishan, Domestic.

10:24AM 17 Banner was the primary distributor.  We mediated this case twice

10:24AM 18 unsuccessfully.  The builder in this matter, Coastal, claims to

10:24AM 19 have a number of contractual defenses.  They use AIA contracts,

10:24AM 20 very involved, very common in commercial, these type projects,

10:25AM 21 and that the economic loss rule may bar some of plaintiffs'

10:25AM 22 claims.

10:25AM 23      The remediation estimates for this project similar

10:25AM 24 to many of the multifamilies is a couple of years, so even if

10:25AM 25 they started the remediation tomorrow, Your Honor, we're looking

10:25AM 1  probably 2013 before it would be finished.  So that's why we feel

10:25AM 2  it's incumbent to move forward.

10:25AM 3           We submitted a draft scheduling order to

10:25AM 4  Your Honor, Document No. 9602.  In this scheduling order,

10:25AM 5  Your Honor, we identified issues that we felt were unique to the

10:25AM 6  builder and to this type of litigation, whether our tort claims

10:25AM 7  are barred by the economic loss rule against the defendants,

10:25AM 8  whether our strict liability claim should proceed, you know,

10:25AM 9  product identification.  It's a very large project, and we have

10:25AM 10  already spent two years trying to identify projects, but we would

10:25AM 11  like to send discovery and find out what the defendants say in

10:26AM 12  that regard.

10:26AM 13           Breach of warranty of fitness, breach of warranty

10:26AM 14  of fitness for a particular purpose, those type claims which

10:26AM 15  spring from the contract with the various defendants.  Claims for

10:26AM 16  violation of the Florida Building Code.  We feel the Florida

10:26AM 17  Building Code is implicated in these type situations, and there

10:26AM 18  are specific statutes in Florida which deal with that.

10:26AM 19           Then the developer, RCR Holding, would like to do

10:26AM 20  discovery as to whether or not summary judgement should be

10:26AM 21  granted with regard to the claims that they brought against the

10:26AM 22  surety.  There was a performance bond in this case, which is,

10:26AM 23  again, fairly unique involving issues with suretyship, as well as

10:26AM 24  a number of insurance policies.

10:26AM 25           We've asked that discovery continue until

10:26AM 1  November 15th of 2011.  We've set forth a briefing schedule of

10:26AM 2  November 30th.  We then put forth in our draft scheduling order

10:26AM 3  an identification of test cases as Your Honor bought up the last

10:26AM 4  time and a procedure for that.  So we think that it really is

10:26AM 5  tailored to what we thought Your Honor wanted to do.

10:27AM 6          Coastal, the builder, has submitted a proposed

10:27AM 7  order, Judge, which we think ignores that.  They want to spend,

10:27AM 8  you know, a number of months identifying who the plaintiffs are.

10:27AM 9  Well, they know who the plaintiffs are.  We represent 140 of the

10:27AM 10  328 units.  The developer represents most of the rest of the

10:27AM 11  units.

10:27AM 12          They also want to have until March of 2012 to

10:27AM 13  identify the manufacturer of the drywall.  Well, Judge, why do

10:27AM 14  they need -- the builder, why does he need nine months to

10:27AM 15  determine, you know, what they installed on the project?  I mean,

10:27AM 16  we think that that's much too long.  If the Court feels that

10:27AM 17  should be in the scheduling order, that's fine, but we think that

10:27AM 18  they should know that.

10:27AM 19          Then their third point they make is the economic

10:27AM 20  loss rule and strict liability claims.  We agree with that.

10:27AM 21  That's in our scheduling order.  But they leave off these other

10:27AM 22  things that we've just indicated to the Court which are set forth

10:28AM 23  in our order.  We believe that -- or we know, for example, the

10:28AM 24  builder saying they didn't have an obligation to supply domestic

10:28AM 25  drywall in this case, okay, and that's -- so that's something

10:28AM 1    that we need to do discovery on.

10:28AM 2         Again, these are the types of things that are

10:28AM 3    buried in these contracts that we would like to very efficiently

10:28AM 4    and expeditiously press forward on.  Like many people in this

10:28AM 5    litigation, a number of clients are using these properties as

10:28AM 6    rentals who are going into foreclosure, and every day it becomes

10:28AM 7    a worse situation.  We would ask respectfully that this Court

10:28AM 8    enter our proposed scheduling order.

10:28AM 9         Thank you.

10:28AM 10   THE COURT:  I've seen both scheduling orders.  I'm going

10:28AM 11   to come up with a scheduling order.  I like more of the dates

10:28AM 12   that the plaintiff submitted, but I think you put some issues in

10:29AM 13   yours that ought to be addressed.  I'm surprised that you don't

10:29AM 14   know who manufactured the drywall, but I take you at what you

10:29AM 15   say, so you ought to have a period of time to determine who

10:29AM 16   manufactured it.  That's a key part.  The time limit is a bit

10:29AM 17   long for that, but you ought to have that opportunity.

10:29AM 18        There are some other areas that I like in your

10:29AM 19   scheduling order, so I'm going to give you all a blended one.  We

10:29AM 20   do have to move on with the case.  I think that's best for you

10:29AM 21   and also for the plaintiffs.  We can't just not address these

10:29AM 22   issues.

10:29AM 23   MR. EVES:  Well, Your Honor, if I may -- Brian Eves on

10:29AM 24   behalf of Coastal Construction -- we're not ignoring a lot of the

10:29AM 25   things.  We're not asking for the identity of the plaintiffs.

10:29AM  1   We're asking for the identity of the residency of the plaintiffs.

10:29AM  2   There is a question as to whether this was properly brought up

10:30AM  3   under CAFA, given if there are two-thirds or one-third of the

10:30AM  4   plaintiffs are Florida residents.

10:30AM  5        As Mr. Bryson mentioned, the developer owns a

10:30AM  6   significant portion.  130 of these 328 units are owned by the

10:30AM  7   developer, a Florida corporation, and have been rented out.  So

10:30AM  8   the identity of the residency is the most crucial issue we need

10:30AM  9   to address before anything else.  Yes, we need to know the

10:30AM 10   identity and the manufacturer of the boards, the percentages,

10:30AM 11   things like that.  Those will affect how we can settle this.

10:30AM 12        THE COURT:  I agree with that.  Just the dates present

10:30AM 13   some problems.  You do need to know some of that information.

10:30AM 14   I'm surprised you don't, but if you don't, you don't.

10:30AM 15        MR. EVES:  Your Honor, we would just like to address --

10:30AM 16   and I don't know if counsel for Art Surety will also be

10:30AM 17   addressing this, but the matter between RCR and Art Surety is not

10:30AM 18   a matter -- it's not a collateral matter.  It's a separate

10:30AM 19   contractual matter between those two parties.  It's not germane

10:31AM 20   to this motion -- to this trial, to this motion.

10:31AM 21        THE COURT:  Don't you think it's helpful to get

10:31AM 22   everybody at the table, though?  Isn't that what they want?

10:31AM 23        MR. EVES:  Perhaps bring them to the table, Your Honor,

10:31AM 24   but the outcome of this case is going to be what probably

10:31AM 25   determines that case.  So until we resolve this matter, that

10:31AM 1    matter cannot really be resolved.

10:31AM 2             THE COURT:  Thank you.

10:31AM 3             Now we have the motion for clarification of InEx

10:31AM 4    and Banner stay order.  Basically, Knauf says that it's a one-way

10:31AM 5    street, and they really want a two-way street.  Let me hear --

10:31AM 6             MR. GLICKSTEIN:  Your Honor, Steve Glickstein for the

10:31AM 7    Knauf defendants.  Thank you for summarizing in much fewer words

10:31AM 8    than I could the argument.

10:31AM 9             This really is a very modest motion.  When I filed

10:32AM 10   it, frankly, I didn't think it was going to be controversial.

10:32AM 11   There are a number of state court actions where either InEx or

10:32AM 12   Banner have filed third-party claims against Knauf where they

10:32AM 13   say, "If we're liable to the plaintiff, then you, Knauf,

10:32AM 14   defendants, are liable to InEx or Banner," as the case may be.

10:32AM 15            All our motion seeks is that in those actions, if

10:32AM 16   the plaintiff can't proceed against InEx or Banner, then Banner

10:32AM 17   and InEx should not be able to proceed on the derivative claim

10:32AM 18   against the Knauf defendants.  If there is no first-party claim,

10:32AM 19   there is no third-party claim.

10:32AM 20            I think some of the controversy that initially

10:32AM 21   surrounded the motion may have been due to a misunderstanding

10:32AM 22   that it was trying to accomplish more than what I just described

10:33AM 23   to Your Honor.  I think we made it crystal clear that we are not

10:33AM 24   seeking to stay third-party claims where either InEx or Banner

10:33AM 25   has actually made a payment to the plaintiffs.  The only

10:33AM  1    two cases that I'm aware of where that has happened is *Seifart*

10:33AM  2    and *Harrell* in Florida by Banner.  We're in agreement that those

10:33AM  3    third-party claims can go forward.

10:33AM  4         I think there was some fear that the Knauf

10:33AM  5    defendants were trying to interfere with the global discovery

10:33AM  6    that was going on.  That was not our intent.  We represented in

10:33AM  7    our papers and are representing to you that InEx and Banner can

10:33AM  8    participate in the depositions of Knauf that are going forward in

10:33AM  9    Germany next week and in Hong Kong in early August.

10:33AM 10         Mr. Panayotopoulos said that there may be an issue

10:34AM 11    with one of the Hong Kong depositions.  We may have a substantive

10:34AM 12    disagreement there that needs to be teed up for Your Honor, but

10:34AM 13    the purpose of our clarification motion is not to say that the

10:34AM 14    stay would deprive Banner of standing to raise those issues

10:34AM 15    before Your Honor.  They can tee them up and Your Honor will

10:34AM 16    resolve them.

10:34AM 17         I think I read in the papers that InEx and Banner

10:34AM 18    may wish to assert some direct nonderivative claims against Knauf

10:34AM 19    without addressing the legal merits of that, where we might have

10:34AM 20    defenses to it.

10:34AM 21         Insofar as I know, in InEx's case, at the present

10:34AM 22    time, there isn't such a nonderivative claim.  All of the claims

10:35AM 23    have been third-party claims.  I read on my BlackBerry this

10:35AM 24    morning that Banner may have filed a motion for leave to file a

10:35AM 25    direct claim in this Court.  I haven't seen the motion because it

10:35AM 1    came across the wire today, but it's a motion for leave.  If and

10:35AM 2    when that claim is allowed to go forward, we can address whether

10:35AM 3    in Your Honor's discretion it should go forward or should be

10:35AM 4    stayed.

10:35AM 5          Our motion is not directed towards direct claims.

10:35AM 6    It's only directed towards third-party claims.  The parties can

10:35AM 7    reserve for another day whether if there is such a thing as a

10:35AM 8    direct nonderivative claim, it should go forward or whether it

10:35AM 9    should stay put.

10:35AM 10         So all that's involved is whether the third-party

10:35AM 11   derivative claims can go forward.  I think the practical effect

10:36AM 12   is only twofold:  One is we certainly can't go to trial on a

10:36AM 13   third-party claim before there is a first-party claim.  They can

10:36AM 14   go together simultaneously or the third-party after the

10:36AM 15   first-party, but it can't be the third-party before the

10:36AM 16   first-party.

10:36AM 17         Secondly, there is some case-specific discovery

10:36AM 18   that is in these actions where it's unfair to the Knauf

10:36AM 19   defendants to be subjected to that case-specific discovery on a

10:36AM 20   third-party claim when the first-party claim is not being

10:36AM 21   developed.

10:36AM 22         To give an example concretely, if to defend against

10:36AM 23   the plaintiffs' claim in that case, Knauf has an expert, the

10:36AM 24   plaintiff can, of course, examine that expert.  Banner is not

10:37AM 25   defending the action, they don't have an expert in response to

10:37AM 1   the plaintiffs' claim, and for Banner, in that particular case on

10:37AM 2   a case-specific expert, to be participating in the discovery

10:37AM 3   against Knauf seems to be unfair because we're entitled to have

10:37AM 4   the parameters of the Banner defense against the first-party

10:37AM 5   claim while we're defending against the third-party claim.

10:37AM 6           So it's a relatively modest motion, and we urge

10:37AM 7   that it be granted.

10:37AM 8           THE COURT:  Let me hear a response to the modest motion.

10:37AM 9           MR. PANAYOTOPOULOS:  Your Honor, Nick Panayotopoulos

10:37AM 10  again on behalf of certain Banner entities.

10:37AM 11          What Mr. Glickstein defines as a "modest motion,"

10:37AM 12  what the request is of this Court is that this federal court stop

10:37AM 13  state court actions and proceedings in the state courts.  That's

10:37AM 14  what the modest motion is about.

10:37AM 15          As it relates to the claims against Banner, this

10:37AM 16  Court now has announced this morning that it will preliminarily

10:38AM 17  approve the settlement, and we believe therefore the Court has a

10:38AM 18  race to which gives it that power under the All Writs Act and

10:38AM 19  under the Anti-Injunction Act.

10:38AM 20          As far as the claims against Knauf are concerned,

10:38AM 21  Knauf did not participate in the Banner settlement.  It opted not

10:38AM 22  to, and if it would like to change its mind and participate in

10:38AM 23  that settlement, perhaps this Court -- the day may come when this

10:38AM 24  Court has that power under the applicable law.

10:38AM 25          Today, Knauf is just trying to take advantage of

10:38AM 1    the Banner settlement and get a stay asking this federal court to

10:38AM 2    stay certain state actions.

10:38AM 3            We understand the arguments that Mr. Glickstein is

10:38AM 4    making, and at the appropriate time those can be addressed, but

10:38AM 5    the claims against Knauf should not be stayed.

10:38AM 6            The order from this Court is clear.  It was

10:39AM 7    dated -- it says it's a claims -- all claims against settling

10:39AM 8    defendants in this litigation.  That's what's covered by the

10:39AM 9    stay.  There is no need to clarify anything.  That order is

10:39AM 10   crystal clear.

10:39AM 11           What Mr. Glickstein is asking for is not very

10:39AM 12   modest, in our opinion.  It's asking for this Court to stay other

10:39AM 13   claims that don't arise out of that settlement.

10:39AM 14           We believe that any stay would violate Section 3.2

10:39AM 15   of the settlement and cause a problem for Banner as to whether

10:39AM 16   the settlement, as we understood it, is what's going on.

10:39AM 17       THE COURT:  The biggest issue, frankly, is whether it's

10:39AM 18   violative of 3.2.  That's my concern, that that's the critical

10:39AM 19   issue.  The other is probably not as significant, but that's a

10:39AM 20   significant issue.

10:39AM 21           Let me hear from counsel of the --

10:40AM 22       MR. PANAYOTOPOULOS:  Thank you, Your Honor.

10:40AM 23       MS. BYRNE:  Thank you, Your Honor.  Jane Byrne from

10:40AM 24   Quinn Emanuel for the Chartis defendants.

10:40AM 25           The Chartis parties are settling defendants under

10:40AM  1    the Banner settlement.  We've contributed the lion's share of the

10:40AM  2    assets to that settlement, Your Honor, and we negotiated very

10:40AM  3    expressly the provision allowing Banner and Chartis and the other

10:40AM  4    insurers to pursue claims against Knauf.

10:40AM  5              Although Mr. Glickstein presents his motion as a

10:40AM  6    very modest one, he's actually requesting that this Court, and

10:40AM  7    I'm quoting, "clarify the stay order to make clear that all

10:40AM  8    litigation involving InEx and Banner and their insurers are

10:40AM  9    stayed, including claims asserted against them and claims

10:40AM 10    asserted by them."

10:40AM 11              That is a very, very ambitious motion, Your Honor,

10:40AM 12    and it's predicated on nothing more than citations to *Am. Jur.*

10:40AM 13    and an unremarkable proposition that you can't pursue a

10:40AM 14    third-party claim until the first-party claim has been

10:41AM 15    determined.

10:41AM 16              That's true regardless of whether there is a stay

10:41AM 17    here.  So I think this motion is more mischievous than anything.

10:41AM 18    Because my count, Your Honor, in reviewing the pleadings, what

10:41AM 19    they are asking you to stay are claims for fraud, negligence,

10:41AM 20    strict liability, consumer protection statutes.  None of those

10:41AM 21    have anything to do with the first-party/third-party issue that

10:41AM 22    they've raised.

10:41AM 23              I won't repeat what Nick has said, but it's true,

10:41AM 24    if the material provision of our settlement agreement is

10:41AM 25    interfered with, it's going to imperil the Banner settlement, and

10:41AM  1  I urge you to deny the Knauf request to extend the stay.

10:41AM  2          MR. GRAU:  Your Honor, Benjamin Grau, G-R-A-U, for

10:41AM  3  Interior Exterior.  I'll be extremely brief.  I think our

10:41AM  4  position is consistent with Banner in some respects and slightly

10:41AM  5  different in other respects.

10:41AM  6          We've taken the position in a number of Alabama

10:41AM  7  state court actions that the entire state court actions should be

10:41AM  8  stayed where Interior Exterior has asserted derivative claims

10:41AM  9  against Knauf, and it's for some of the same reasons Knauf raises

10:42AM 10  in that we don't want discovery going forward specific to those

10:42AM 11  cases without our involvement in the case.

10:42AM 12          The purpose of the stay is to afford

10:42AM 13  Interior Exterior that protection, as well as stop that

10:42AM 14  litigation and stop the costs until the settlement is in place.

10:42AM 15  Where we disagree with Knauf, however, is where Interior Exterior

10:42AM 16  has, in fact, asserted direct action against Knauf for its own

10:42AM 17  damages.

10:42AM 18          I think we've done that in the Silva action.  There

10:42AM 19  may be some disagreement as to whether we've done that, in fact,

10:42AM 20  or not, but to the extent that we're allowed to participate in

10:42AM 21  the global discovery, then we really see it, I guess, as an

10:42AM 22  insignificant issue.

10:42AM 23          I would raise, though, that I don't think a motion

10:42AM 24  for clarification is the proper procedural device because I do

10:42AM 25  agree that the stay provision set forth in settlement documents

10:42AM 1  is crystal clear and applies only to claims against

10:42AM 2  Interior Exterior and not any claims brought by

10:43AM 3  Interior Exterior.

10:43AM 4       MR. LEVIN:  Your Honor, we just urge the Court to do

10:43AM 5  nothing, nothing that upsets the Banner settlement.

10:43AM 6       MR. HERMAN:  Your Honor, I've checked at the plaintiffs'

10:43AM 7  table and we have no modesty.

10:43AM 8       MR. GLICKSTEIN:  Well, I will say that Ms. Byrne and my

10:43AM 9  mom have something in common, which is they both think I'm more

10:43AM 10 mischievous than modest.

10:43AM 11      MS. BYRNE:  Moms are always right.

10:43AM 12      THE COURT:  Steve, I really do understand your argument,

10:43AM 13 and I urge the parties to be gingerly about their enthusiasm to

10:43AM 14 engage Knauf at this point.  I think that it may be

10:44AM 15 counterproductive, but I think for the Court to speak on this

10:44AM 16 issue and affirm your position, I would be putting the settlement

10:44AM 17 in jeopardy.

10:44AM 18           3.2 in that agreement is part of the agreement, and

10:44AM 19 I think that I would be, in effect, writing it out and therefore

10:44AM 20 jeopardizing the settlement.

10:44AM 21      MR. GLICKSTEIN:  I don't think so, Your Honor.  I've got

10:44AM 22 3.2 in front of me, at least as it's quoted in Chartis's brief.

10:44AM 23 It says that the settlement does not release any claims

10:44AM 24 whatsoever that the settlement defendants may have against third

10:44AM 25 parties, against Knauf.  We are certainly not saying that

10:44AM 1    Banner's claims against Knauf are released, nor -- then it goes

10:44AM 2    on to say that the parties -- "the parties," meaning the PSC and

10:44AM 3    Banner -- will not interfere with the Banner defendants' rights

10:44AM 4    to pursue a claim, and nothing -- there is nothing here where the

10:45AM 5    PSC is interfering with Banner's rights to pursue a third-party

10:45AM 6    claim.

10:45AM 7            Your Honor issued a stay to Banner as a matter of

10:45AM 8    discretion, and the -- and certainly, Your Honor, when it grants

10:45AM 9    a stay, has the power and the discretion to attach reasonable

10:45AM 10   conditions to the grant of the stay to protect fairness to other

10:45AM 11   parties.

10:45AM 12           So we are not saying -- I'm emphatically not saying

10:45AM 13   that Banner's claims against the Knauf defendants should be

10:45AM 14   extinguished.  This is simply a timing issue.  I guess Ms. Byrne

10:45AM 15   says that it's a self-evident proposition that the third-party

10:46AM 16   claim can't precede the first-party claim.  That's why it is

10:46AM 17   puzzling, at least, to say -- to think why it is that would have

10:46AM 18   any impact on the Banner settlement and why there's any

10:46AM 19   opposition to the motion, because it is a self-evident

10:46AM 20   proposition.

10:46AM 21           We're here only because the Banner parties in a

10:46AM 22   Florida state court case declined to state that self-evident

10:46AM 23   proposition, and because a state court judge said that they read

10:46AM 24   your order as permitting the -- it was Judge Green in the

10:46AM 25   *Synolovsky* case in Fort Lauderdale, to permit the third-party

10:46AM 1  claim to go forward divorced from the first-party claim, which

10:47AM 2  Chartis is now saying is contrary to its self-evident

10:47AM 3  proposition.  Judge Green said, "I'm reading the literal language

10:47AM 4  of your order, and it only stops the first-party claimant.  It

10:47AM 5  doesn't stay the third-party claimant."  It said, of course, if

10:47AM 6  Judge Fallon meant something different --

10:47AM 7          THE COURT:  He would have said it.

10:47AM 8          MR. GLICKSTEIN:  He can clarify it, is what he said.  So

10:47AM 9  that's why we're here.

10:47AM 10         THE COURT:  I understand.

10:47AM 11         MR. SEXTON:  Mike Sexton for Banner Supply.  I'm also

10:47AM 12  counsel for Banner in the *Synolovsky* case and just wanted to

10:47AM 13  speak briefly to that.

10:47AM 14         THE COURT:  We have been going a long time, folks.

10:47AM 15         MR. SEXTON:  I'm always brief, Your Honor.

10:47AM 16             The trial is not scheduled until January.  We just

10:47AM 17  want to engage in discovery.  If it gets to the point of January,

10:48AM 18  we're looking at a trial.  Whether Banner's claims need to be

10:48AM 19  severed for another day at that point, we can cross that bridge

10:48AM 20  when we come to it.  In the meantime, we just want discovery on

10:48AM 21  our affirmative claims.  Knauf has no claims against us.  There

10:48AM 22  is no prejudice.  If they wanted a stay, they should have given

10:48AM 23  up some money.

10:48AM 24             Thank you, Your Honor.

10:48AM 25         THE COURT:  Thank you very much.  I'm going to deny the

10:48AM  1    motion.

10:48AM  2               VOICES:  Thank you, Your Honor.

10:48AM  3               THE COURT:  Court will stand in recess.

4               (WHEREUPON, at 10:48 a.m., the proceedings were

5    concluded.)

6                              *    *    *

7

8

9                         REPORTER'S CERTIFICATE

10

11        I, Cathy Pepper, Certified Realtime Reporter, Registered

12    Merit Reporter, Certified Court Reporter of the State of

13    Louisiana, Official Court Reporter for the United States District

14    Court, Eastern District of Louisiana, do hereby certify that the

15    foregoing is a true and correct transcript, to the best of my

16    ability and understanding, from the record of the proceedings in

17    the above-entitled and numbered matter.

18

19

20                         *s/Cathy Pepper*_____

21                         Cathy Pepper, CRR, RMR, CCR
                           Certified Realtime Reporter
22                         Official Court Reporter
                           United States District Court
23                         Cathy_Pepper@laed.uscourts.gov

24

25

## $

**$390** [1] - 22:13

## 0

**07102** [1] - 1:23

## 1

**1000** [1] - 2:22
**10010** [1] - 2:25
**10022** [2] - 3:8, 3:24
**10631** [1] - 3:20
**10:48** [1] - 59:4
**11** [2] - 29:4, 29:6
**1100** [2] - 2:5, 2:11
**12(b** [1] - 42:2
**130** [1] - 48:6
**13811** [1] - 2:14
**14** [3] - 1:6, 7:3, 7:25
**140** [1] - 46:9
**1450** [1] - 4:10
**15** [1] - 30:12
**15th** [1] - 46:1
**160** [1] - 30:14
**170** [2] - 30:14, 32:11
**18** [3] - 6:6, 6:10, 37:11
**1800** [1] - 4:19
**19** [2] - 37:11, 40:1
**19106** [1] - 1:20
**1A** [1] - 19:12

## 2

**200** [2] - 42:8, 42:9
**2009** [1] - 21:19
**2011** [3] - 1:6, 7:3, 46:1
**2012** [1] - 46:12
**2013** [1] - 45:1
**2047** [1] - 1:5
**220** [1] - 3:20
**2225** [1] - 3:11
**22ND** [1] - 2:25
**23** [2] - 12:21, 12:22
**23114** [1] - 2:15
**23rd** [1] - 18:2
**2400** [1] - 3:5
**2500** [1] - 3:17
**27** [1] - 6:13
**27612** [1] - 2:8
**2800** [2] - 2:4, 2:5

## 3

**3** [1] - 32:17
**3.2** [4] - 53:14, 53:18, 56:18, 56:22
**300** [1] - 2:22
**3000** [1] - 2:17
**30326** [1] - 3:5
**30th** [1] - 46:2
**328** [3] - 44:9, 46:10, 48:6
**33126** [1] - 2:22
**33130** [1] - 2:18
**33131** [1] - 3:14
**33176** [1] - 3:21
**333** [1] - 3:14
**3344** [1] - 3:5
**33602** [1] - 3:11
**35,000** [1] - 21:4
**36** [2] - 6:17, 6:18
**3650** [1] - 4:14
**36TH** [1] - 2:11
**3700** [1] - 2:8
**3900** [1] - 4:10

## 4

**4** [1] - 23:14
**401** [1] - 3:11
**40TH** [1] - 4:4
**410** [1] - 2:8
**42** [1] - 6:20
**425** [1] - 3:24
**43** [1] - 6:21
**4400** [1] - 3:14
**4500** [1] - 4:7
**476,348** [1] - 44:9
**49** [1] - 6:23

## 5

**5/29/08** [1] - 24:8
**500** [2] - 1:19, 5:3
**504** [1] - 5:4
**51** [1] - 2:25
**510** [1] - 1:19
**550** [1] - 1:22
**57TH** [1] - 2:22
**58** [1] - 6:24
**589-7779** [1] - 5:4

## 7

**7** [1] - 6:5
**70002** [1] - 4:11
**701** [3] - 4:4, 4:7, 4:14
**70112** [2] - 3:18, 4:20

**70113** [1] - 1:16
**70130** [2] - 4:8, 5:4
**70139** [2] - 4:4, 4:15
**70163** [2] - 2:5, 2:12

## 8

**80** [1] - 2:18
**820** [1] - 1:16
**875** [1] - 3:8
**8887-1** [1] - 44:7
**8TH** [1] - 2:18

## 9

**909** [2] - 3:17, 4:19
**920** [1] - 1:22
**9425** [1] - 18:14
**9425.........................
........** [1] - 6:9
**9462** [1] - 18:21
**9462.........................
........** [1] - 6:12
**9549** [1] - 27:24
**9549.........................
........** [1] - 6:16
**9558** [1] - 7:14
**9558.............** [1] - 6:5
**9602** [1] - 45:4
**9653** [2] - 36:22, 37:1
**9653.........................
........** [1] - 6:19
**9:00** [1] - 1:6

## A

**a.m** [1] - 59:4
**A.M** [1] - 1:6
**Abel** [4] - 29:25, 30:5, 41:16, 41:21
**ability** [1] - 59:16
**able** [4] - 12:8, 24:21, 25:4, 49:17
**above-entitled** [1] - 59:17
**absence** [1] - 14:6
**absolutely** [2] - 35:22, 40:2
**abundantly** [1] - 40:1
**accomplish** [2] - 14:25, 49:22
**Act** [4] - 33:11, 35:12, 52:18, 52:19
**act** [1] - 27:10
**action** [35] - 7:22, 15:8, 19:2, 19:4, 20:10, 20:18, 21:20, 21:21, 25:21, 25:25,

26:3, 26:18, 29:3, 30:8, 30:10, 30:24, 31:1, 31:20, 32:9, 32:10, 32:23, 33:11, 33:25, 34:7, 34:22, 35:4, 35:6, 35:7, 40:11, 41:23, 51:25, 55:16, 55:18
**Action** [2] - 33:11, 35:11
**actions** [28] - 15:9, 29:21, 30:1, 30:4, 30:5, 30:9, 30:12, 30:14, 30:15, 30:17, 30:22, 32:4, 35:1, 37:25, 38:13, 40:9, 40:10, 40:18, 41:16, 49:11, 49:15, 51:18, 52:13, 53:2, 55:7
**actively** [4] - 31:6, 31:13, 31:14, 35:16
**ADAMS** [1] - 4:6
**add** [1] - 28:24
**additionally** [1] - 9:20
**address** [22] - 9:18, 29:24, 31:17, 34:4, 34:5, 37:9, 38:4, 38:7, 38:17, 38:24, 39:5, 39:6, 39:7, 40:2, 40:21, 40:23, 41:7, 41:10, 47:21, 48:9, 48:15, 51:2
**addressed** [4] - 31:16, 32:17, 47:13, 53:4
**addressing** [4] - 41:15, 44:12, 48:17, 50:19
**adequate** [1] - 10:6
**adequately** [1] - 12:8
**admits** [1] - 30:11
**advance** [2] - 9:22, 39:22
**advantage** [1] - 52:25
**adverse** [2] - 16:23, 25:2
**advisement** [2] - 36:19, 42:24
**ADVISEMENT.........
......** [1] - 6:17
**ADVISEMENT.........
...........** [1] - 6:20
**advises** [1] - 16:17
**advising** [1] - 12:23
**affect** [2] - 26:19, 48:11
**affected** [2] - 14:5, 19:4
**affirm** [1] - 56:16
**afford** [1] - 55:12
**AGAINST** [1] - 6:15

**agenda** [2] - 18:11, 18:19
**ago** [5] - 20:25, 21:19, 32:21, 37:11
**agree** [14] - 8:15, 8:16, 9:3, 9:4, 11:1, 17:23, 26:10, 26:14, 27:1, 27:9, 27:10, 46:20, 48:12, 55:25
**agreeable** [2] - 29:1, 29:3
**agreed** [13] - 8:6, 19:8, 19:23, 20:13, 20:16, 20:20, 25:19, 25:22, 31:3, 31:22, 32:5
**agreeing** [1] - 28:25
**agreement** [14] - 8:12, 19:6, 20:12, 20:16, 22:1, 22:10, 22:11, 25:18, 30:21, 44:4, 50:2, 54:24, 56:18
**ahead** [1] - 13:21
**AIA** [1] - 44:19
**Alabama** [2] - 30:9, 55:6
**ALFORD** [1] - 3:16
**ALL** [1] - 1:7
**ALLEN** [1] - 4:9
**allocating** [1] - 10:24
**allocation** [14] - 8:9, 9:10, 9:21, 9:25, 10:18, 10:19, 10:24, 11:14, 12:13, 16:1, 16:2, 16:10, 16:11, 17:10
**ALLOW** [1] - 6:10
**allow** [6] - 15:18, 18:20, 20:13, 21:12, 26:25, 27:10
**allowed** [5] - 22:6, 29:12, 42:5, 51:2, 55:20
**allowing** [2] - 42:21, 54:3
**allows** [1] - 25:19
**almost** [3] - 20:25, 37:11, 38:20
**ALSO** [1] - 4:22
**ambitious** [1] - 54:11
**AMERICAS** [1] - 3:14
**amount** [1] - 34:11
**AND** [3] - 2:3, 6:6, 6:23
**announced** [1] - 52:16
**Anti** [1] - 52:19
**Anti-Injunction** [1] - 52:19
**anyway** [1] - 19:18
**apologize** [1] - 12:9
**Appeals** [1] - 13:16

**appearance** [1] - 29:20
**APPEARANCES** [5] - 1:13, 2:1, 3:1, 4:1, 5:1
**appeared** [1] - 44:2
**appearing** [1] - 43:24
**applicable** [2] - 43:11, 52:24
**applies** [1] - 56:1
**appreciate** [2] - 27:18, 43:20
**approach** [1] - 15:19
**appropriate** [1] - 53:4
**APPROVAL** [2] - 6:5, 6:13
**approval** [18] - 7:11, 8:5, 8:8, 8:14, 8:18, 8:20, 9:7, 10:17, 12:2, 12:19, 15:4, 16:18, 17:23, 18:5, 18:8, 27:21, 28:6, 36:16
**approve** [2] - 10:3, 52:17
**approved** [2] - 9:22, 13:16
**APS** [1] - 19:14
**areas** [2] - 42:5, 47:18
**argue** [5] - 13:9, 14:1, 14:2, 22:8, 22:16
**argued** [2] - 14:18, 21:14
**arguing** [4] - 25:3, 31:13, 40:24, 41:8
**argument** [9] - 14:4, 25:1, 32:8, 32:20, 32:22, 37:5, 38:2, 49:8, 56:12
**arguments** [4] - 21:9, 39:21, 43:18, 53:3
**arise** [1] - 53:13
**ARNOLD** [1] - 1:18
**Art** [2] - 48:16, 48:17
**Article** [1] - 32:17
**Asbestos** [1] - 13:13
**aspect** [3] - 27:14, 43:12, 43:13
**aspects** [2] - 7:16, 43:16
**assert** [1] - 50:18
**asserted** [4] - 54:9, 54:10, 55:8, 55:16
**assessment** [1] - 23:20
**assets** [2] - 31:24, 54:2
**assume** [1] - 34:23
**AT** [1] - 2:21
**ATLANTA** [1] - 3:5

**attach** [1] - 57:9
**attachment** [1] - 24:6
**attack** [2] - 34:6, 34:15
**attempting** [1] - 29:4
**attention** [2] - 28:8, 42:15
**attorney** [2] - 12:23, 17:12
**attorneys** [1] - 24:20
**attorneys'** [1] - 15:11
**August** [2] - 21:19, 50:9
**authority** [1] - 27:19
**authorized** [1] - 31:10
**available** [1] - 17:21
**AVENUE** [1] - 1:16, 2:8, 2:25, 3:8, 3:14, 3:24
**avoid** [4] - 19:6, 20:14, 22:14, 24:12
**aware** [2] - 44:8, 50:1

**B**

**B406** [1] - 5:3
**BAAS** [1] - 9:12
**Baas** [1] - 9:12
**bankruptcy** [1] - 15:24
**Banner** [59] - 7:22, 9:2, 9:6, 10:4, 10:9, 10:11, 11:24, 11:25, 12:4, 12:5, 14:3, 14:5, 14:6, 14:24, 15:1, 15:20, 15:21, 15:22, 16:5, 16:6, 28:5, 28:7, 34:9, 36:2, 36:16, 44:17, 49:4, 49:12, 49:14, 49:16, 49:24, 50:2, 50:7, 50:14, 50:17, 50:24, 51:24, 52:1, 52:4, 52:10, 52:15, 52:21, 53:1, 53:15, 54:1, 54:3, 54:8, 54:25, 55:4, 56:5, 57:3, 57:7, 57:18, 57:21, 58:11, 58:12
**BANNER** [1] - 6:23
**Banner's** [4] - 57:1, 57:5, 57:13, 58:18
**bar** [3] - 12:22, 21:14, 44:21
**BARLOW** [1] - 3:10
**BARRASSO** [2] - 4:17, 4:18
**barred** [1] - 45:7
**BARRIOS** [2] - 4:13, 4:14
**basis** [2] - 25:17, 29:5

**BASS** [1] - 3:13
**BAYVIEW** [1] - 2:17
**Beach** [2] - 31:1, 31:20
**BECNEL** [1] - 4:22
**become** [2] - 36:1, 36:15
**becomes** [1] - 47:6
**BEFORE** [1] - 1:10
**beforehand** [2] - 12:10, 34:5
**beginning** [2] - 28:14, 30:18
**behalf** [10] - 9:13, 11:12, 14:11, 18:23, 29:17, 30:10, 37:3, 41:14, 47:24, 52:10
**behold** [1] - 21:24
**believes** [1] - 29:5
**belong** [2] - 37:16
**bench** [1] - 36:20
**benefit** [1] - 10:12
**benefits** [2] - 8:19, 12:25
**BENJAMIN** [2] - 2:3, 4:3
**Benjamin** [1] - 55:2
**BERMAN** [1] - 1:18
**beseech** [1] - 18:7
**best** [2] - 47:20, 59:15
**better** [1] - 10:7
**between** [3] - 17:1, 48:17, 48:19
**betwixt** [1] - 17:1
**Bible** [1] - 38:21
**bigger** [1] - 40:17
**biggest** [1] - 53:17
**Billy** [1] - 20:8
**bit** [1] - 47:16
**Black's** [1] - 26:7
**BlackBerry** [1] - 50:23
**blended** [1] - 47:19
**BLUE** [1] - 2:21
**boards** [1] - 48:10
**Bob** [3] - 11:7, 11:9, 13:21
**Bollinger** [5] - 29:23, 37:3, 41:15, 41:18, 41:22
**BOLLINGER** [5] - 4:10, 36:23, 37:2, 40:6, 40:17
**bond** [1] - 45:22
**Bone** [1] - 13:11
**bought** [4] - 23:2, 23:4, 24:17, 46:3
**BOULEVARD** [1] - 4:10
**branded** [1] - 23:10

**breach** [2] - 45:13
**BRETT** [1] - 4:10
**Brett** [1] - 37:3
**BRIAN** [1] - 2:21
**Brian** [1] - 47:23
**BRICKELL** [1] - 2:17
**bridge** [1] - 58:19
**brief** [5] - 13:3, 39:11, 55:3, 56:22, 58:15
**briefing** [1] - 46:1
**briefly** [4] - 9:1, 16:4, 17:6, 58:13
**briefs** [1] - 20:4
**bring** [1] - 48:23
**bringing** [1] - 9:6
**broad** [1] - 36:3
**BROAD** [1] - 1:22
**brought** [3] - 45:21, 48:2, 56:2
**BRUCE** [1] - 4:22
**BRYSON** [2] - 2:7, 43:24
**Bryson** [2] - 43:24, 48:5
**builder** [6] - 23:23, 44:18, 45:6, 46:6, 46:14, 46:24
**builders** [1] - 42:8
**builders'** [2] - 7:22, 8:7
**Building** [2] - 45:16, 45:17
**building** [1] - 23:13
**bulk** [1] - 30:12
**buried** [1] - 47:3
**BURR** [1] - 4:3
**business** [2] - 31:23, 36:6
**buy** [2] - 24:1, 24:10
**buying** [1] - 24:4
**BY** [24] - 1:15, 1:18, 1:22, 2:4, 2:7, 2:10, 2:14, 2:17, 2:21, 2:24, 3:4, 3:7, 3:10, 3:13, 3:17, 3:20, 3:23, 4:3, 4:6, 4:10, 4:14, 4:18, 5:6, 5:6
**BYRNE** [3] - 2:24, 53:23, 56:11
**Byrne** [3] - 53:23, 56:8, 57:14

**C**

**Cabinets** [1] - 23:14
**CAFA** [12] - 28:17, 36:3, 36:4, 36:6, 36:8, 40:16, 40:22, 42:12, 43:11, 48:3

**CALDWELL** [1] - 2:16
**CALLED** [1] - 7:4
**campaign** [1] - 22:4
**cannot** [1] - 49:1
**canoe** [2] - 13:1, 42:17
**care** [1] - 8:13
**Carolina** [7] - 28:10, 29:10, 30:10, 30:12, 42:11, 43:6, 43:8
**cart** [2] - 26:11, 32:8
**carve** [1] - 21:11
**case** [52] - 7:17, 10:9, 13:3, 13:11, 13:13, 15:7, 25:10, 25:11, 31:20, 32:10, 35:9, 35:23, 36:2, 36:8, 37:23, 38:6, 38:8, 38:20, 39:7, 39:14, 39:20, 39:23, 40:8, 40:18, 41:3, 41:4, 41:10, 41:12, 42:10, 42:14, 43:4, 43:12, 44:9, 44:11, 44:17, 45:22, 46:25, 47:20, 48:24, 48:25, 49:14, 50:21, 51:17, 51:19, 51:23, 52:1, 52:2, 55:11, 57:22, 57:25, 58:12
**case-specific** [3] - 51:17, 51:19, 52:2
**CASES** [1] - 1:7
**cases** [17] - 15:10, 23:16, 25:8, 28:12, 30:19, 31:4, 31:5, 31:6, 38:13, 38:16, 38:20, 38:23, 39:10, 44:14, 46:3, 50:1, 55:11
**CASTEIX** [1] - 4:13
**Cathy** [2] - 59:11, 59:21
**CATHY** [1] - 5:3
**Cathy_Pepper@laed.uscourts.gov** [2] - 5:5, 59:23
**caught** [1] - 17:1
**CAUSEWAY** [1] - 4:10
**CCR** [2] - 5:3, 59:21
**ceilings** [1] - 23:9
**Center** [1] - 18:21
**CENTER** [1] - 6:11
**CENTRE** [3] - 2:4, 2:11, 2:17
**certain** [4] - 17:2, 25:19, 52:10, 53:2
**certainly** [6] - 21:14, 39:7, 40:9, 51:12, 56:25, 57:8
**CERTIFICATE** [1] -

3

59:9
**certification** [20] - 27:23, 28:6, 28:11, 28:24, 28:25, 29:22, 32:25, 33:5, 33:14, 36:14, 37:7, 37:23, 38:5, 38:24, 38:25, 39:8, 39:13, 41:5, 42:15, 42:21
**CERTIFICATION** [1] - 6:15
**Certified** [3] - 59:11, 59:12, 59:21
**certify** [3] - 8:7, 39:3, 59:14
**change** [1] - 52:22
**Chartis** [4] - 53:24, 53:25, 54:3, 58:2
**Chartis's** [1] - 56:22
**check** [1] - 24:3
**checked** [1] - 56:6
**China** [1] - 29:6
**CHINESE** [1] - 1:4
**Chinese** [17] - 21:2, 21:5, 21:22, 21:24, 21:25, 22:2, 22:18, 22:19, 23:5, 23:15, 23:20, 23:25, 24:7, 24:10, 24:17, 24:22, 36:7
**CHINESE-MANUFACTURED** [1] - 1:4
**choice** [1] - 38:15
**choices** [1] - 13:6
**chose** [1] - 39:21
**CHRISTOPHER** [1] - 1:22
**Circuit** [3] - 13:16, 30:16, 31:1
**circumvent** [1] - 25:22
**citations** [1] - 54:12
**cite** [1] - 39:12
**cited** [6] - 13:3, 38:6, 38:16, 38:19, 39:4, 39:10
**civil** [1] - 37:9
**CIVIL** [1] - 1:5
**claim** [28] - 14:3, 21:12, 22:6, 25:25, 45:8, 49:17, 49:18, 49:19, 50:22, 50:25, 51:2, 51:8, 51:13, 51:20, 51:23, 52:1, 52:5, 54:14, 57:4, 57:6, 57:16, 58:1
**claimant** [5] - 21:8, 22:21, 30:24, 58:4, 58:5
**claimants** [1] - 28:10

**claims** [39] - 11:24, 21:4, 27:23, 29:13, 44:18, 44:22, 45:6, 45:14, 45:15, 45:21, 46:20, 49:12, 49:24, 50:3, 50:18, 50:22, 50:23, 51:5, 51:6, 51:11, 52:15, 52:20, 53:5, 53:7, 53:13, 54:4, 54:9, 54:19, 55:8, 56:1, 56:2, 56:23, 57:1, 57:13, 58:18, 58:21
**CLAIMS** [1] - 6:15
**clarification** [4] - 27:17, 49:3, 50:13, 55:24
**CLARIFICATION** [1] - 6:23
**clarify** [3] - 53:9, 54:7, 58:8
**class** [61] - 7:22, 8:7, 10:7, 11:21, 12:6, 12:7, 12:24, 12:25, 13:1, 13:11, 13:12, 14:3, 14:12, 14:15, 14:16, 17:11, 20:10, 20:18, 21:20, 21:21, 25:21, 25:23, 25:24, 25:25, 26:1, 26:3, 26:18, 26:21, 27:22, 28:5, 28:11, 28:24, 28:25, 29:3, 29:21, 29:22, 30:24, 32:10, 32:25, 33:5, 33:14, 34:9, 34:22, 35:7, 36:14, 37:7, 37:9, 37:23, 37:25, 38:5, 38:23, 38:25, 39:3, 39:7, 39:13, 41:5, 42:15, 42:21
**CLASS** [1] - 6:14
**Class** [2] - 33:11, 35:11
**class-represented** [1] - 14:16
**class-type** [1] - 14:12
**classes** [1] - 42:10
**clear** [9] - 22:10, 23:4, 23:24, 40:2, 49:23, 53:6, 53:10, 54:7, 56:1
**clearly** [1] - 25:8
**CLERK** [2] - 7:7, 7:12
**client** [5] - 12:23, 29:19, 30:3, 31:9, 31:23
**client's** [1] - 32:21
**clients** [4] - 16:8, 16:17, 27:4, 47:5

**close** [1] - 17:25
**Coastal** [2] - 44:18, 47:24
**coastal** [1] - 46:6
**Code** [2] - 45:16, 45:17
**collaborative** [1] - 9:9
**collateral** [3] - 29:8, 34:15, 48:18
**combined** [1] - 32:4
**comfortable** [1] - 13:8
**coming** [1] - 34:12
**comments** [1] - 17:8
**commercial** [1] - 44:20
**Committee** [5] - 7:21, 9:13, 17:7, 18:23, 18:25
**COMMITTEE** [2] - 4:13, 4:17
**committee** [10] - 8:2, 8:10, 9:9, 9:21, 10:19, 10:21, 10:22, 16:10, 16:12, 17:10
**COMMITTEE'S** [1] - 6:10
**Committee's** [1] - 18:20
**common** [2] - 44:20, 56:9
**company** [2] - 10:12, 15:21
**company's** [1] - 33:16
**compel** [1] - 31:12
**competing** [1] - 44:5
**complaint** [29] - 18:20, 19:11, 19:12, 19:13, 19:18, 20:10, 20:18, 20:19, 21:20, 21:21, 22:1, 25:16, 25:17, 25:18, 25:22, 25:25, 26:13, 26:14, 26:22, 26:25, 27:7, 27:9, 27:11, 27:14, 36:9, 36:10, 37:14
**COMPLAINT** [1] - 6:11
**complaints** [15] - 18:25, 19:1, 19:5, 19:11, 19:22, 20:10, 26:2, 26:4, 26:18, 26:19, 28:13, 29:25, 36:5, 41:16, 42:12
**completed** [1] - 20:22
**Complex** [2] - 38:19, 39:1
**COMPUTER** [1] - 5:6
**concept** [2] - 9:21, 16:9
**concern** [2] - 13:24, 53:18

**concerned** [2] - 11:17, 52:20
**concerns** [3] - 12:7, 16:19, 17:9
**concluded** [1] - 59:5
**concretely** [1] - 51:22
**conditions** [1] - 57:10
**confer** [2] - 27:1, 44:3
**CONFERENCE** [1] - 1:10
**conference** [5] - 7:16, 7:20, 18:2, 31:16, 44:2
**conferred** [1] - 44:4
**confers** [1] - 36:8
**confident** [1] - 41:1
**Connecticut** [2] - 13:5, 13:6
**connection** [2] - 21:2, 21:5
**connections** [1] - 23:5
**consistent** [1] - 55:4
**consistently** [2] - 32:22, 35:14
**Construction** [1] - 47:24
**consumer** [1] - 54:20
**contact** [2] - 15:22, 30:17
**contemplated** [1] - 9:25
**contesting** [1] - 28:18
**context** [1] - 38:17
**continue** [6] - 20:14, 36:11, 37:17, 37:21, 42:19, 45:25
**CONTINUED** [4] - 2:1, 3:1, 4:1, 5:1
**continued** [1] - 30:22
**contract** [1] - 45:15
**contracts** [2] - 44:19, 47:3
**contractual** [5] - 14:5, 15:3, 44:12, 44:19, 48:19
**contractual-type** [1] - 44:12
**contrary** [2] - 21:13, 58:2
**contributed** [1] - 54:1
**control** [2] - 15:8, 37:20
**controlled** [1] - 37:21
**controversial** [1] - 49:10
**controversy** [1] - 49:20
**conversations** [1] - 14:9
**convince** [1] - 24:20

**cooperating** [1] - 33:8
**copycat** [1] - 7:25
**corporation** [2] - 41:20, 48:7
**correct** [5] - 9:14, 10:1, 17:17, 24:15, 59:15
**correction** [1] - 9:20
**cost** [1] - 22:13
**costs** [2] - 15:11, 55:14
**COTLAR** [1] - 1:14
**counsel** [19] - 8:6, 8:7, 11:11, 12:12, 12:18, 14:17, 17:19, 21:20, 26:9, 27:4, 28:19, 29:23, 31:14, 31:22, 43:12, 48:16, 53:21, 58:12
**counsel/objectors** [1] - 7:22
**counsels** [1] - 11:20
**count** [1] - 54:18
**counterproductive** [1] - 56:15
**couple** [3] - 17:8, 20:3, 44:24
**course** [5] - 10:18, 16:13, 15:23, 51:24, 58:5
**COURT** [49] - 1:1, 2:22, 5:3, 7:4, 7:8, 7:14, 7:19, 8:24, 9:11, 10:2, 11:9, 11:16, 12:14, 13:21, 15:4, 16:21, 17:17, 18:10, 18:18, 20:6, 25:1, 26:5, 27:9, 27:21, 29:15, 33:15, 33:21, 34:1, 34:18, 34:23, 35:25, 36:18, 36:24, 40:4, 40:16, 41:13, 42:23, 47:10, 48:12, 48:21, 49:2, 52:8, 53:17, 56:12, 58:7, 58:10, 58:14, 58:25, 59:3
**court** [45] - 13:5, 14:7, 15:9, 15:11, 18:4, 20:20, 20:22, 20:23, 29:11, 30:8, 30:9, 30:10, 31:8, 32:15, 32:18, 33:2, 34:18, 34:20, 35:1, 35:3, 35:9, 35:13, 35:20, 35:21, 35:22, 40:4, 40:6, 40:9, 40:11, 40:12, 40:15, 41:18, 41:19, 41:24, 43:1, 49:11, 52:12, 52:13,

53:1, 57:7, 57:22, 57:23, 59:3
**Court** [53] - 8:3, 10:6, 10:13, 13:16, 15:21, 17:18, 20:5, 20:8, 29:18, 30:2, 30:6, 30:16, 31:1, 31:12, 32:13, 33:9, 34:13, 35:6, 35:12, 35:17, 35:19, 35:21, 36:17, 37:10, 38:3, 38:15, 41:6, 41:21, 42:18, 43:5, 43:16, 44:8, 44:11, 44:12, 46:16, 46:22, 47:7, 50:25, 52:12, 52:16, 52:17, 52:23, 52:24, 53:6, 53:12, 54:6, 56:4, 56:15, 59:12, 59:13, 59:14, 59:22, 59:22
**Court's** [4] - 21:23, 25:2, 32:11, 33:13
**court's** [1] - 22:7
**courthouse** [1] - 15:13
**courts** [2] - 30:13, 52:13
**coverage** [3] - 32:1, 34:11, 34:12
**covered** [1] - 53:8
**covering** [1] - 23:9
**create** [2] - 10:19, 40:20
**criteria** [1] - 19:23
**critical** [1] - 53:18
**cross** [1] - 58:19
**CRR** [2] - 5:3, 59:21
**crucial** [1] - 14:8
**crystal** [1] - 49:23, 53:10, 56:1

# D

**damages** [2] - 27:23, 55:17
**DAMAGES** [1] - 6:15
**Dan** [1] - 43:24
**DANIEL** [2] - 2:7, 4:22
**DARROCH** [1] - 4:23
**date** [1] - 16:19
**dated** [1] - 53:7
**dates** [2] - 47:11, 48:12
**DAVID** [1] - 2:3
**DAVIS** [1] - 1:15
**DAWN** [1] - 4:14
**deal** [8] - 18:5, 25:9, 28:20, 29:23, 36:21, 37:5, 43:20, 45:18

**dealing** [9] - 23:16, 28:13, 29:19, 33:14, 36:13, 37:24, 38:23, 40:19, 43:13
**deals** [1] - 29:19
**dealt** [3] - 13:17, 17:14, 17:15
**December** [1] - 31:21
**decide** [2] - 32:23, 34:3
**decided** [1] - 33:9
**decides** [1] - 34:8
**decision** [4] - 12:24, 13:2, 16:16, 35:18
**decisions** [3] - 32:1, 34:12, 38:13
**declined** [1] - 57:22
**deemed** [1] - 8:8
**defaulted** [1] - 22:9
**defective** [4] - 29:14, 33:18, 34:24, 35:1
**defend** [1] - 51:22
**defendant** [2] - 30:3, 36:9
**defendants** [21] - 18:13, 26:20, 26:22, 28:12, 36:5, 42:8, 42:9, 42:13, 45:7, 45:11, 45:15, 49:7, 49:14, 49:18, 50:5, 51:19, 53:8, 53:24, 53:25, 56:24, 57:13
**DEFENDANTS** [2] - 2:10, 6:8
**defendants'** [1] - 57:3
**defending** [2] - 51:25, 52:5
**defense** [2] - 29:2, 52:4
**defenses** [3] - 10:15, 44:19, 50:20
**defines** [1] - 52:11
**definitely** [1] - 21:16
**delayed** [1] - 33:6
**delivered** [1] - 23:7
**Dempster** [2] - 21:19, 25:16
**Dempsters** [2] - 21:21, 21:23
**deny** [2] - 55:1, 58:25
**DENY** [1] - 6:24
**deposition** [1] - 32:22
**depositions** [6] - 17:20, 29:6, 31:11, 31:12, 50:8, 50:11
**Depot** [1] - 23:2
**Depot/Lowe's** [1] - 23:3
**deprive** [1] - 50:14
**DEPUTY** [2] - 7:7, 7:12

**derivative** [3] - 49:17, 51:11, 55:8
**described** [1] - 49:22
**despite** [1] - 14:10
**determine** [3] - 24:21, 46:15, 47:15
**determined** [3] - 7:23, 8:4, 54:15
**determines** [1] - 48:25
**determining** [2] - 10:5, 42:18
**developed** [1] - 51:21
**developer** [4] - 45:19, 46:10, 48:5, 48:7
**device** [1] - 55:24
**DEVONSHIRE** [1] - 6:8
**Devonshire** [1] - 18:13
**diagram** [1] - 24:6
**DIAL** [1] - 3:3
**Dictionary** [1] - 26:7
**difference** [1] - 26:3
**differences** [1] - 27:6
**different** [6] - 13:14, 14:20, 26:2, 55:5, 58:6
**difficult** [3] - 15:21, 25:9, 43:15
**direct** [17] - 14:5, 29:25, 30:4, 30:5, 38:13, 39:1, 40:18, 40:19, 41:15, 41:17, 41:22, 50:18, 50:25, 51:5, 51:8, 55:16
**directed** [2] - 51:5, 51:6
**directly** [3] - 22:9, 43:2, 43:3
**disagree** [1] - 55:15
**disagreement** [2] - 50:12, 55:19
**discovering** [1] - 31:6
**discovery** [19] - 27:14, 28:21, 29:4, 31:2, 31:5, 31:18, 32:25, 45:11, 45:20, 45:25, 47:1, 50:5, 51:17, 51:19, 52:2, 55:10, 55:21, 58:17, 58:20
**discretion** [1] - 51:3, 57:8, 57:9
**discuss** [3] - 11:4, 27:16, 38:21
**discussable** [1] - 17:5
**discussed** [1] - 7:16
**discusses** [1] - 38:22
**discussions** [2] - 11:12, 12:10
**dismiss** [4] - 22:1, 36:25, 37:12, 37:15

**DISMISS** [1] - 6:18
**distribute** [1] - 30:6
**distributor** [1] - 44:17
**district** [1] - 13:5
**DISTRICT** [3] - 1:1, 1:1, 1:11
**District** [5] - 13:13, 28:22, 59:13, 59:14, 59:22
**diversity** [4] - 40:12, 40:14, 43:9
**divorced** [1] - 58:1
**DOCKET** [1] - 1:5
**docket** [2] - 42:4, 43:17
**DOCUMENT** [6] - 1:7, 6:5, 6:9, 6:12, 6:16, 6:19
**document** [2] - 7:13, 36:22
**Document** [7] - 7:14, 18:14, 18:21, 27:24, 37:1, 44:6, 45:4
**documents** [1] - 55:25
**Domestic** [1] - 44:16
**domestic** [1] - 46:24
**done** [7] - 13:8, 31:9, 32:19, 42:7, 42:8, 55:18, 55:19
**door** [1] - 16:25
**doubt** [2] - 13:25, 17:23
**down** [3] - 31:7, 34:12, 35:10
**downstream** [2] - 21:10, 21:12
**draft** [2] - 45:3, 46:2
**DRIVE** [2] - 2:14, 3:20
**drywall** [28] - 21:3, 21:6, 21:22, 21:24, 21:25, 22:2, 22:19, 23:5, 23:15, 23:20, 23:21, 23:24, 23:25, 24:1, 24:4, 24:7, 24:10, 24:17, 24:22, 29:14, 33:17, 34:23, 35:1, 36:7, 46:13, 46:25, 47:14
**DRYWALL** [1] - 1:4
**due** [1] - 49:21
**during** [1] - 20:15

# E

**early** [1] - 50:9
**easily** [2] - 9:7, 9:8
**Eastern** [2] - 28:22, 59:14
**EASTERN** [1] - 1:1

**economic** [3] - 44:21, 45:7, 46:19
**economically** [1] - 10:11
**effect** [5] - 12:1, 19:9, 26:14, 51:11, 56:19
**effective** [1] - 42:20
**efficiently** [1] - 47:3
**effort** [1] - 25:6
**efforts** [2] - 33:1, 33:13
**either** [5] - 15:22, 20:2, 24:20, 49:11, 49:24
**ELDON** [1] - 1:10
**elementary** [1] - 38:9
**elsewhere** [1] - 24:7
**Elysian** [1] - 23:3
**Emanuel** [1] - 53:24
**EMANUEL** [1] - 2:24
**emphatically** [1] - 57:12
**employees** [1] - 31:25
**endowed** [1] - 10:11
**ENERGY** [2] - 2:4, 2:11
**engage** [2] - 56:14, 58:17
**engaged** [2] - 26:18, 28:20
**enter** [3] - 9:16, 34:8, 47:8
**entered** [2] - 20:15, 20:23, 37:19
**enthusiasm** [1] - 56:13
**entire** [1] - 55:7
**entities** [3] - 17:2, 17:3, 52:10
**entitled** [2] - 52:3, 59:17
**ENTRY** [1] - 6:21
**entry** [2] - 43:23, 44:1
**error** [1] - 17:15
**errors** [1] - 8:12
**ESPINO** [1] - 3:19
**ESQUIRE** [30] - 1:15, 1:15, 1:18, 1:19, 1:22, 2:4, 2:7, 2:10, 2:14, 2:17, 2:21, 2:24, 3:4, 3:4, 3:7, 3:10, 3:13, 3:17, 3:20, 3:23, 3:23, 4:3, 4:6, 4:10, 4:14, 4:18, 4:18, 4:22, 4:22, 4:23
**establish** [1] - 8:9
**established** [3] - 14:19, 18:4, 18:5
**estimates** [1] - 44:23

eternal [1] - 36:15
event [1] - 19:3
Eves [1] - 47:23
EVES [4] - 2:21, 47:23, 48:15, 48:23
evidence [1] - 41:25
evident [4] - 57:15, 57:19, 57:22, 58:2
exactly [1] - 9:24
examine [2] - 10:7, 51:24
example [2] - 46:23, 51:22
except [1] - 35:8
exception [1] - 21:11
excerpt [1] - 43:20
exclude [2] - 12:25, 13:1
excluded [1] - 14:9
exhausted [2] - 15:9, 15:13
exhibits [1] - 22:24
expedient [1] - 42:6
expeditious [1] - 42:14
expeditiously [1] - 47:4
expert [4] - 51:23, 51:24, 51:25, 52:2
explained [1] - 23:6
expressly [1] - 54:3
extend [1] - 55:1
extent [2] - 16:25, 55:20
Exterior [6] - 55:3, 55:8, 55:13, 55:15, 56:2, 56:3
extinguished [1] - 57:14
extremely [1] - 55:3

**F**

fact [8] - 19:25, 22:12, 22:23, 31:23, 31:25, 34:10, 55:16, 55:19
fair [1] - 10:6
fairly [1] - 45:23
fairness [9] - 8:10, 9:23, 12:17, 13:9, 13:18, 14:1, 16:16, 16:20, 57:10
Fairness [2] - 33:11, 35:11
FALLON [1] - 1:10
Fallon [1] - 58:6
far [9] - 9:25, 26:19, 32:18, 33:4, 33:19, 33:25, 34:2, 42:20,

52:20
fashion [1] - 43:4
fashioned [1] - 11:5
fear [1] - 50:4
February [1] - 30:19
federal [16] - 28:17, 35:9, 35:13, 35:20, 35:21, 40:4, 40:6, 40:11, 40:15, 41:18, 43:7, 43:10, 52:12, 53:1
fees [1] - 15:11
felt [1] - 45:5
fewer [1] - 49:7
Fields [1] - 23:3
figure [1] - 11:24
file [7] - 35:9, 37:25, 38:13, 39:2, 40:18, 50:24
filed [29] - 7:24, 8:3, 18:25, 21:19, 29:22, 29:25, 30:4, 30:5, 30:6, 30:13, 31:11, 31:20, 31:21, 32:15, 34:22, 36:10, 37:12, 37:13, 37:14, 37:24, 41:16, 41:17, 41:23, 43:1, 43:4, 49:9, 49:12, 50:24
files [1] - 40:19
filings [1] - 47:18
final [1] - 9:23
finally [1] - 14:22
fine [1] - 46:17
finished [1] - 45:1
first [28] - 7:10, 15:13, 17:8, 26:17, 27:7, 28:1, 29:19, 32:24, 37:8, 37:12, 38:8, 38:18, 39:5, 40:3, 41:7, 41:11, 49:18, 51:13, 51:15, 51:16, 51:20, 52:4, 54:14, 54:21, 57:16, 58:1, 58:4
first-party [10] - 49:18, 51:13, 51:15, 51:16, 51:20, 52:4, 54:14, 57:16, 58:1, 58:4
first-party/third-party [1] - 54:21
FISHBEIN [1] - 1:18
fit [1] - 8:8
fitness [2] - 45:13, 45:14
Fitzsimmons [5] - 11:7, 13:7, 16:7, 16:15, 17:21
FITZSIMMONS [5] - 2:17, 11:7, 11:10,

11:17, 13:23
Fitzsimmons' [1] - 17:9
five [7] - 19:22, 21:4, 21:5, 21:16, 22:13, 30:10, 30:19
FL [5] - 2:18, 2:22, 3:11, 3:14, 3:21
FLOOR [3] - 2:11, 2:25, 4:4
Florida [8] - 44:10, 45:16, 45:18, 48:4, 48:7, 50:2, 57:22
focus [2] - 16:24
folks [1] - 58:14
follow [3] - 41:4, 41:9, 42:19
followed [1] - 42:20
following [1] - 39:16
foot [1] - 44:9
FOR [12] - 1:14, 2:10, 4:13, 4:17, 6:7, 6:13, 6:14, 6:15, 6:18, 6:21, 6:23
forced [1] - 32:24
foreclose [1] - 17:4
forecloses [1] - 15:5
foreclosure [1] - 47:6
foregoing [1] - 59:15
form [3] - 12:17, 23:1, 43:4
Forms [1] - 22:22
formulaic [1] - 10:25
Fort [1] - 57:25
forth [4] - 46:1, 46:2, 46:22, 55:25
forum [1] - 12:19
forward [19] - 31:5, 31:6, 32:24, 33:8, 36:24, 37:23, 41:5, 41:10, 41:12, 45:2, 47:4, 50:3, 50:8, 51:2, 51:3, 51:8, 51:11, 55:10, 58:1
four [4] - 22:5, 22:8, 23:19, 28:9
FRANK [1] - 3:7
frankly [2] - 49:10, 53:17
fraud [1] - 54:19
Frazier [2] - 23:8, 23:14
Fraziers [1] - 22:25
FRED [1] - 1:19
Fred [1] - 18:22
FREEMAN [1] - 4:17
Friday [1] - 8:22
FRILOT [1] - 2:10
front [1] - 56:22
functioning [1] - 18:1

fund [1] - 17:25
fundamental [1] - 11:13
fundamentally [1] - 11:18
funds [7] - 10:13, 10:24, 15:8, 15:24, 31:25, 35:5
future [2] - 11:4, 12:5

**G**

GA [1] - 3:5
GAINSBURGH [1] - 2:3
GALLOWAY [1] - 4:3
gather [2] - 22:12, 35:17
Gaudet [3] - 20:8, 26:21, 27:1
GAUDET [3] - 4:6, 20:7, 25:15
generally [1] - 30:22
generating [1] - 14:24
gentlemen [1] - 7:9
Georgia [3] - 19:3, 19:7, 30:8
GERALD [1] - 2:4
germane [1] - 48:19
Germano [15] - 28:12, 29:19, 32:9, 32:23, 33:5, 33:11, 33:25, 34:7, 34:13, 35:7, 35:10, 35:23, 36:4, 42:10
Germany [2] - 17:20, 50:9
Gillman [2] - 23:19, 23:25
gingerly [1] - 56:13
given [5] - 24:14, 31:23, 34:10, 48:3, 58:22
GLENWOOD [1] - 2:8
GLICKSTEIN [5] - 3:23, 49:6, 56:8, 56:21, 58:8
Glickstein [5] - 49:6, 52:11, 53:3, 53:11, 54:5
global [3] - 15:18, 50:5, 55:21
GOING [2] - 6:17, 6:24
GOOCH [1] - 4:9
grant [5] - 8:8, 20:5, 57:10
granted [6] - 8:18, 10:17, 17:24, 38:10, 45:21, 52:7

grants [1] - 57:8
GRAU [3] - 4:3, 55:2
Grau - 55:2
great [1] - 18:5
Green [2] - 57:24, 58:3
GREENBERG [1] - 3:13
GREGORY [1] - 3:23
Gross [4] - 29:25, 30:5, 41:16, 41:21
group [2] - 17:11, 19:22
guess [2] - 55:21, 57:14
guidance [1] - 10:21
guided [1] - 8:18
Guidry [2] - 24:2, 24:5
Guidry's [1] - 24:6
GUNN [1] - 3:3
Gypsum [2] - 24:7, 24:9

**H**

half [2] - 30:3, 32:21
Hall [5] - 30:16, 30:17, 30:20, 30:22, 31:3
handled [1] - 28:3
handling [1] - 42:14
hands [1] - 13:19
happily [1] - 9:3
happy [5] - 9:4, 17:22, 27:5
hard [1] - 17:2
HARDT [8] - 2:14, 29:16, 33:19, 33:24, 34:2, 34:20, 34:25, 41:14
Hardt [2] - 29:16, 41:14
Harrell [1] - 50:2
hat [1] - 33:22
hear [13] - 7:15, 11:16, 12:14, 16:3, 26:5, 28:2, 29:15, 35:25, 36:24, 41:13, 49:5, 52:8, 53:21
HEARD [1] - 1:10
heard [5] - 11:8, 11:14, 19:10, 21:9, 32:7
hearing [11] - 8:10, 9:23, 12:17, 13:9, 13:18, 14:1, 16:16, 16:20, 26:9, 31:17, 37:13
hearings [1] - 36:15
helpful [1] - 48:21
hereby [1] - 59:14

6

**HERMAN** [5] - 1:14, 1:15, 17:18, 56:6
**Herman** [1] - 17:18
**HILARIE** [3] - 3:13
**Hilarie** [3] - 8:24, 9:11, 9:12
**himself** [1] - 12:25
**Hinkley** [3] - 29:20, 33:6, 42:10
**HOBBIE'S** [1] - 6:21
**Hobbie's** [1] - 43:22
**Hobson's** [1] - 13:6
**HOGAN** [1] - 3:7
**hold** [1] - 19:16
**Holding** [1] - 45:19
**home** [3] - 21:25, 22:2, 22:19
**HOME** [1] - 6:11
**Home** [3] - 18:20, 23:2, 23:3
**homebuilders** [2] - 8:2
**Homebuilders** [2] - 9:13, 17:7
**homeowner** [2] - 17:10, 17:12
**homeowners** [6] - 11:21, 14:16, 14:21, 30:11, 30:12, 32:2
**homes** [1] - 29:14
**homework** [1] - 22:12
**honestly** [1] - 19:17
**Hong** [5] - 28:21, 29:1, 31:10, 50:9, 50:11
**Honor** [108] - 7:18, 7:24, 8:5, 8:14, 8:17, 9:1, 9:12, 9:16, 9:22, 10:1, 12:9, 12:16, 13:23, 16:4, 16:14, 17:6, 17:13, 18:3, 18:7, 18:17, 18:22, 18:24, 19:9, 20:7, 20:9, 20:13, 20:16, 20:24, 21:1, 21:14, 23:6, 24:11, 24:14, 24:23, 25:15, 25:24, 26:6, 26:12, 26:15, 26:24, 27:17, 27:20, 28:3, 29:16, 29:18, 30:15, 30:17, 32:1, 32:21, 33:20, 33:24, 36:3, 36:12, 36:23, 37:2, 37:4, 37:6, 37:19, 38:6, 38:8, 38:11, 38:12, 38:16, 39:4, 40:1, 40:17, 40:20, 40:21, 40:24, 41:12, 41:15, 41:17, 42:3, 42:19, 43:24, 44:2, 44:3, 44:6,

44:25, 45:4, 45:5, 46:3, 46:5, 47:23, 48:15, 48:23, 49:6, 49:23, 50:12, 50:15, 52:9, 53:22, 53:23, 54:2, 54:11, 54:18, 55:2, 56:4, 56:6, 56:21, 57:7, 57:8, 58:15, 58:24, 59:2
**Honor's** [5] - 8:4, 8:14, 22:15, 24:12, 51:3
**HONORABLE** [1] - 1:10
**hook** [2] - 28:16, 35:2
**hope** [1] - 36:15
**hopefully** [4] - 8:23, 10:24, 15:18, 16:19
**horse** [2] - 26:11, 32:8
**housekeeping** [2] - 8:11, 9:8
**HUDGINS** [1] - 3:3

**I**

**I'LL** [1] - 6:20
**I'M** [2] - 6:17, 6:24
**identification** [2] - 45:9, 46:3
**identified** [1] - 45:5
**identify** [2] - 45:10, 46:13
**identifying** [1] - 46:8
**identity** [4] - 47:25, 48:1, 48:8, 48:10
**ignores** [1] - 46:7
**ignoring** [1] - 47:24
**II** [1] - 4:18
**illustrated** [1] - 26:6
**immediate** [1] - 11:4
**impact** [1] - 57:18
**imperil** [1] - 54:25
**implicated** [1] - 45:17
**important** [1] - 13:24
**IN** [3] - 1:4, 6:7, 6:18
**inadvertence** [1] - 19:14
**INC** [2] - 6:8, 6:11
**Inc** [2] - 18:14, 18:21
**includes** [1] - 14:4
**including** [2] - 10:20, 54:9
**incumbent** [1] - 45:2
**indemnity** [1] - 35:3
**indicated** [2] - 44:11, 46:22
**indicia** [14] - 19:25, 20:1, 20:4, 21:8, 22:16, 22:17, 22:18, 22:19, 22:23, 23:1,

24:9, 24:16, 25:20
**individual** [4] - 8:1, 24:20, 25:18, 26:2
**individually** [1] - 27:4
**individuals** [3] - 21:5, 25:19
**INEX** [1] - 6:23
**InEx** [30] - 11:19, 20:22, 21:1, 21:3, 21:6, 21:8, 21:9, 21:16, 22:6, 22:7, 22:21, 23:5, 25:12, 25:13, 26:15, 28:5, 28:7, 34:9, 36:2, 36:16, 49:3, 49:11, 49:14, 49:16, 49:17, 49:24, 50:7, 50:17, 54:8
**InEx's** [1] - 50:21
**information** [5] - 22:12, 24:14, 35:17, 35:19, 48:13
**informed** [2] - 16:16, 19:21
**injunction** [1] - 13:4
**Injunction** [1] - 52:19
**insignificant** [1] - 55:22
**insofar** [1] - 50:21
**inspection** [2] - 21:23, 23:8
**installed** [1] - 46:15
**installer** [3] - 8:1, 11:11, 11:20, 16:11, 17:21
**installers** [16] - 11:13, 11:18, 11:19, 11:22, 11:23, 11:25, 12:3, 12:8, 12:15, 12:19, 13:25, 14:4, 14:11, 14:20, 14:23, 15:2
**installers'** [2] - 12:12, 14:4
**instead** [1] - 39:16
**instructed** [1] - 19:15
**instruction** [1] - 19:17
**instructive** [1] - 44:14
**insurance** [5] - 10:9, 29:8, 31:25, 42:7, 45:24
**insured** [1] - 23:12
**insurers** [3] - 9:6, 54:4, 54:8
**INSURERS'** [1] - 4:17
**insurers'** [1] - 10:15
**intent** [1] - 50:6
**intentions** [1] - 14:10
**interest** [2] - 18:3, 27:5
**interested** [4] - 10:20,

14:12, 16:10, 31:15
**interestingly** [1] - 24:5
**interests** [6] - 10:7, 14:14, 14:15, 14:20, 16:2, 42:8
**interfere** [2] - 50:5, 57:3
**interfered** [1] - 54:25
**interfering** [1] - 57:5
**interim** [1] - 15:1
**Interior** [6] - 55:3, 55:8, 55:13, 55:15, 56:2, 56:3
**interpret** [1] - 11:20
**interpreted** [1] - 11:21
**intervene** [1] - 14:11
**intervening** [1] - 19:3
**intervention** [5] - 19:1, 19:5, 19:11, 19:12, 26:19
**invoices** [1] - 21:1
**involved** [5] - 29:7, 42:22, 43:3, 44:20, 51:10
**involvement** [1] - 55:11
**involves** [2] - 36:7, 44:8
**involving** [3] - 25:13, 45:23, 54:8
**issue** [36] - 10:18, 12:13, 12:15, 12:16, 15:25, 16:22, 16:23, 18:8, 26:13, 27:25, 31:7, 31:13, 32:16, 32:24, 33:7, 33:8, 34:2, 34:4, 34:5, 35:14, 36:8, 36:18, 36:23, 40:17, 40:21, 40:24, 41:20, 48:8, 50:10, 53:17, 53:19, 53:20, 54:21, 55:22, 56:16, 57:14
**issued** [1] - 57:7
**issues** [34] - 7:23, 9:8, 9:18, 13:14, 13:17, 18:6, 19:6, 20:25, 22:15, 24:13, 24:25, 25:8, 26:12, 27:12, 27:25, 29:8, 29:24, 31:15, 33:12, 33:14, 38:4, 38:12, 38:14, 39:2, 40:20, 40:22, 42:18, 42:23, 44:12, 45:5, 45:23, 47:12, 47:22, 50:14
**IT** [1] - 6:17
**item** [2] - 18:11, 18:19
**itself** [3] - 10:11, 13:1, 13:3

**J**

**JACKSON** [1] - 3:11
**Jane** [1] - 53:23
**JANE** [1] - 2:24
**January** [4] - 30:18, 30:19, 58:16, 58:17
**jeopardizing** [1] - 56:20
**jeopardy** [1] - 56:17
**JOHNSON** [1] - 4:3
**join** [1] - 11:12
**journey** [1] - 27:7
**JR** [1] - 3:17
**Judge** [13] - 11:7, 11:10, 11:17, 30:16, 30:17, 30:20, 30:22, 31:3, 39:12, 46:7, 46:13, 57:24, 58:6
**judge** [10] - 7:12, 13:5, 33:23, 43:5, 43:6, 43:7, 57:23, 58:3
**JUDGE** [1] - 1:11
**judgement** [1] - 45:20
**judges** [1] - 39:1
**JUDY** [1] - 4:18
**JULY** [2] - 1:6, 7:3
**Jur** [1] - 54:12
**jurisdiction** [75] - 28:1, 28:15, 28:17, 28:18, 28:20, 28:22, 29:2, 29:5, 31:17, 32:12, 32:13, 32:15, 32:17, 32:18, 32:24, 33:1, 33:9, 33:10, 34:3, 34:5, 34:14, 34:16, 34:19, 34:20, 34:22, 35:12, 35:13, 35:15, 35:20, 35:23, 36:4, 36:5, 36:7, 36:9, 36:21, 37:1, 37:5, 37:10, 37:13, 37:15, 37:17, 38:2, 38:4, 38:8, 38:9, 38:14, 38:18, 38:22, 38:25, 39:5, 39:24, 40:2, 40:5, 40:7, 40:10, 40:13, 40:14, 40:23, 40:25, 41:7, 41:8, 41:11, 41:19, 41:24, 42:4, 42:11, 42:12, 42:22, 43:10
**JURISDICTION** [1] - 6:18
**jurisdictional** [8] - 29:24, 31:2, 31:7, 31:11, 31:12, 31:15, 33:7, 43:12

**K**

**KATZ** [1] - 1:14
**KAYE** [1] - 3:22
**keep** [1] - 37:15
**keeping** [1] - 23:16
**Ken** [2] - 29:16, 41:14
**KENDALL** [1] - 3:20
**KENNETH** [1] - 2:14
**kERRY** [1] - 2:10
**key** [1] - 47:16
**kind** [4] - 23:15, 30:2, 32:8, 34:8
**KINGSDORF** [1] - 4:13
**KIRK** [1] - 2:16
**Knauf** [28] - 23:10, 28:4, 49:4, 49:7, 49:12, 49:13, 49:18, 50:4, 50:8, 50:18, 51:18, 51:23, 52:3, 52:20, 52:21, 52:25, 53:5, 54:4, 55:1, 55:9, 55:15, 55:16, 56:14, 56:25, 57:1, 57:13, 58:21
**knowledge** [2] - 10:14, 29:9
**known** [2] - 33:17
**knows** [3] - 30:15, 32:1, 36:15
**Kong** [5] - 28:21, 29:1, 31:10, 50:9, 50:11
**KPT** [1] - 44:16
**KUPPERMAN** [1] - 4:17

**L**

**L.L.P** [1] - 4:13
**LA** [10] - 1:16, 2:5, 2:12, 3:18, 4:4, 4:8, 4:11, 4:15, 4:20, 5:4
**LACK** [1] - 6:18
**lack** [3] - 36:25, 37:12, 37:15
**lacks** [1] - 34:13
**ladies** [1] - 7:8
**LAGOON** [1] - 2:21
**language** [1] - 58:3
**LAQ** [2] - 13:15
**large** [1] - 45:9
**larger** [1] - 26:19
**last** [7] - 13:12, 23:12, 30:9, 32:7, 44:2, 44:11, 46:3
**Lauderdale** [1] - 57:25
**Law** [1] - 26:7

**law** [7] - 33:19, 35:3, 37:8, 39:11, 39:16, 40:1, 52:24
**laws** [1] - 38:15
**lawyers** [2] - 13:2, 13:6
**lead** [1] - 17:19
**least** [10] - 8:19, 10:17, 15:16, 15:18, 16:25, 19:19, 25:6, 33:5, 56:22, 57:17
**leave** [4] - 19:2, 46:21, 50:24, 51:1
**leaving** [1] - 13:19
**LEDVA** [1] - 2:20
**LEE** [1] - 6:21
**Lee** [1] - 43:22
**left** [5] - 15:12, 22:3, 22:5, 22:8
**legal** [1] - 50:19
**LEONARD** [1] - 1:15
**Levin** [2] - 9:4, 31:9
**LEVIN** [11] - 1:18, 1:18, 7:18, 7:20, 10:1, 12:15, 18:16, 28:3, 36:1, 42:3, 56:4
**LEWIS** [1] - 2:7
**liability** [7] - 33:15, 33:16, 34:2, 45:8, 46:20, 54:20
**LIABILITY** [1] - 1:4
**liable** [2] - 49:13, 49:14
**liaison** [2] - 17:19, 27:6
**LIAISON** [2] - 4:13, 4:17
**lift** [10] - 18:12, 27:21, 29:21, 29:24, 33:4, 37:4, 37:24, 38:1, 38:3, 41:2
**LIFT** [2] - 6:6, 6:13
**lifted** [1] - 26:25
**light** [1] - 9:6
**limit** [1] - 47:16
**limited** [3] - 17:25, 31:25, 34:11
**line** [1] - 15:17
**lined** [1] - 14:13
**lion's** [1] - 54:1
**liquidate** [1] - 31:24
**listed** [1] - 21:16
**lists** [1] - 22:25
**literal** [1] - 58:3
**LITIGATION** [1] - 1:5
**litigation** [16] - 8:21, 10:8, 12:4, 13:4, 14:6, 14:24, 21:18, 25:17, 28:3, 37:20,

41:22, 45:6, 47:5, 53:8, 54:8, 55:14
**Litigation** [2] - 38:19, 39:1
**lives** [2] - 29:13, 29:14
**living** [1] - 44:9
**LL&E** [1] - 4:19
**lo** [1] - 21:23
**local** [1] - 29:23
**LOGAN** [1] - 2:13
**LONGER** [1] - 1:19, 18:22, 26:6, 27:17
**look** [7] - 10:20, 10:23, 32:23, 36:19, 41:3, 43:14, 43:17
**looking** [5] - 43:5, 43:6, 43:9, 44:25, 58:18
**loss** [3] - 44:21, 45:7, 46:20
**LOUISIANA** [2] - 1:1, 1:6
**Louisiana** [12] - 28:23, 30:1, 30:4, 30:7, 36:6, 41:17, 41:23, 42:1, 43:5, 59:13, 59:14
**LOVELLS** [1] - 3:7
**Lowe's** [34] - 18:20, 19:6, 19:21, 19:23, 20:1, 20:8, 20:11, 20:13, 20:21, 21:2, 21:10, 21:11, 21:13, 21:22, 21:24, 22:20, 22:23, 23:7, 23:15, 23:16, 23:22, 23:23, 23:25, 24:3, 24:4, 24:8, 24:10, 24:17, 24:22, 26:1, 26:9, 26:20, 26:23
**LOWE'S** [1] - 6:11

**M**

**MADISON** [1] - 2:25
**manage** [1] - 42:4
**mandatory** [2] - 13:11, 13:12
**manner** [1] - 42:5
**Manual** [2] - 38:19, 39:1
**manufactured** [2] - 47:14, 47:16
**MANUFACTURED** [1] - 1:4
**manufacturer** [2] - 46:13, 48:10
**manufacturers** [1] - 15:19

**March** [2] - 30:19, 46:12
**Master** [2] - 16:13, 20:2
**match** [1] - 24:6
**material** [2] - 23:13, 54:24
**materials** [3] - 23:14, 23:24, 24:18
**mathematical** [1] - 17:15
**mathematics** [1] - 8:12
**matter** [29] - 11:2, 26:16, 26:22, 31:23, 32:2, 32:11, 32:18, 32:23, 33:10, 33:19, 34:3, 34:4, 34:14, 34:16, 34:19, 34:21, 35:4, 35:13, 35:23, 43:25, 44:18, 48:17, 48:18, 48:19, 48:25, 49:1, 57:7, 59:17
**matters** [5] - 25:4, 26:20, 27:11, 27:16, 28:1
**MDL** [8] - 1:5, 14:6, 18:1, 20:15, 23:17, 33:21, 38:11, 38:16
**mean** [1] - 46:15
**meaning** [2] - 33:16, 57:2
**meant** [1] - 58:6
**meantime** [1] - 58:20
**MECHANICAL** [1] - 5:6
**mediated** [1] - 44:17
**meet** [8] - 8:22, 17:22, 21:7, 24:12, 24:19, 24:24, 25:6, 27:1
**meeting** [1] - 11:3
**meets** [1] - 9:7
**members** [2] - 11:21, 14:15
**memo** [1] - 38:6
**memorandum** [2] - 44:6, 44:13
**mention** [1] - 32:7
**mentioned** [1] - 48:5
**Merit** [1] - 59:12
**merits** [1] - 50:19
**met** [5] - 7:15, 14:15, 19:23, 20:24, 21:20
**METAIRIE** [1] - 4:11
**method** [2] - 10:23, 10:25
**MEUNIER** [2] - 2:3, 2:4
**MEYERS** [1] - 2:20
**MIAMI** [4] - 2:18, 2:22,

3:14, 3:21
**MICHAEL** [2] - 3:4, 3:20
**mid** [1] - 8:23
**mid-week** [1] - 8:23
**MIDLOTHIAN** [1] - 2:15
**might** [2] - 28:24, 50:19
**Mike** [6] - 8:24, 8:25, 9:2, 16:3, 16:5, 58:11
**MILL** [1] - 2:14
**MILLER** [1] - 2:10
**mind** [1] - 52:22
**minimum** [1] - 14:18
**MINOR** [1] - 4:18
**MINTZER** [1] - 2:20
**mischievous** [2] - 54:17, 56:10
**missed** [1] - 19:17
**misunderstanding** [1] - 49:21
**mix** [1] - 44:16
**modest** [8] - 49:9, 52:6, 52:8, 52:11, 52:14, 53:12, 54:6, 56:10
**modesty** [1] - 56:7
**modify** [1] - 16:19
**molehill** [1] - 26:8
**mom** [1] - 56:9
**moms** [1] - 56:11
**money** [5] - 13:19, 16:7, 29:9, 33:13, 58:23
**month** [1] - 30:19
**months** [6] - 37:11, 40:1, 42:15, 46:8, 46:14
**morning** [7] - 7:8, 18:22, 20:7, 29:16, 37:2, 50:24, 52:16
**Morrison's** [1] - 17:15
**most** [7] - 14:5, 30:11, 30:15, 42:6, 42:14, 46:10, 48:8
**MOTION** [7] - 6:6, 6:10, 6:13, 6:14, 6:18, 6:21, 6:23
**motion** [49] - 7:10, 18:12, 18:15, 18:18, 18:20, 19:15, 19:19, 20:5, 26:8, 27:21, 27:22, 29:21, 29:24, 31:11, 33:4, 33:5, 36:25, 37:4, 37:6, 37:12, 37:24, 38:1, 38:10, 39:2, 42:2, 43:14, 43:22, 44:1,

48:20, 49:3, 49:9, 49:15, 49:21, 50:13, 50:24, 50:25, 51:1, 51:5, 52:6, 52:8, 52:11, 52:14, 54:5, 54:11, 54:17, 55:23, 57:19, 59:1

**MOTION**....................
...... [1] - 6:24
**motions** [3] - 29:18, 37:14, 39:21
**mountain** [1] - 26:8
**move** [3] - 41:12, 45:2, 47:20
**moved** [2] - 28:4, 41:5
**MR** [47] - 7:18, 7:20, 9:1, 10:1, 11:7, 11:10, 11:17, 12:15, 13:23, 16:4, 17:6, 17:18, 18:16, 18:22, 20:7, 25:15, 26:6, 27:17, 28:3, 29:16, 33:19, 33:24, 34:2, 34:20, 34:25, 36:1, 36:23, 37:2, 40:6, 40:17, 41:14, 42:3, 43:24, 47:23, 48:15, 48:23, 49:6, 52:9, 53:22, 55:2, 56:4, 56:6, 56:8, 56:21, 58:8, 58:11, 58:15
**MS** [3] - 9:12, 53:23, 56:11
**multi** [1] - 30:24
**multi-claimant** [1] - 30:24
**multifamilies** [1] - 44:24
**multifamily** [3] - 44:8, 44:10, 44:14
**multiple** [3] - 28:12, 36:5, 42:13

## N

**name** [1] - 36:25
**naming** [1] - 37:16
**national** [2] - 42:9, 42:11
**National** [2] - 24:7, 24:9
**NC** [1] - 2:8
**Neal** [1] - 17:6
**NEAL** [1] - 3:10
**necessarily** [1] - 43:19
**need** [13] - 16:23, 26:13, 27:3, 32:23, 33:21, 46:14, 47:1, 48:8, 48:9, 48:13,

53:9, 58:18
**needs** [4] - 14:19, 16:15, 32:17, 50:12
**negligence** [1] - 54:19
**negotiated** [2] - 13:10, 54:2
**net** [1] - 12:1
**never** [4] - 23:7, 28:15, 32:14, 41:25
**NEW** [13] - 1:6, 1:16, 2:5, 2:12, 2:25, 3:8, 3:18, 3:24, 4:4, 4:8, 4:15, 4:20, 5:4
**new** [1] - 8:5
**NEWARK** [1] - 1:23
**next** [6] - 17:20, 18:11, 18:19, 23:18, 23:19, 50:9
**NICHOLAS** [1] - 3:4
**Nick** [2] - 52:9, 54:23
**nine** [1] - 46:14
**NJ** [1] - 1:23
**NO** [1] - 1:5
**nobody** [1] - 15:9
**nonderivative** [3] - 50:18, 50:22, 51:8
**none** [2] - 22:16, 54:20
**Norfolk** [1] - 30:16
**North** [7] - 28:10, 29:10, 30:10, 30:12, 42:11, 43:6, 43:7
**NORTH** [2] - 3:20, 4:10
**note** [1] - 12:21
**nothing** [5] - 15:12, 39:9, 54:12, 56:5, 57:4
**notice** [2] - 9:17, 11:4
**notices** [1] - 8:13
**November** [2] - 46:1, 46:2
**NUCKLOS** [1] - 2:13
**number** [10] - 7:13, 18:25, 26:19, 44:11, 44:19, 45:24, 46:8, 47:5, 49:11, 55:6
**Number** [1] - 19:12
**numbered** [1] - 59:17
**numerous** [1] - 12:12
**nunc** [2] - 19:20, 27:19
**NW** [1] - 2:22
**NY** [3] - 2:25, 3:8, 3:24

## O

**O'KEEFE** [1] - 1:16
**object** [1] - 21:15

**objected** [1] - 12:13
**objection** [7] - 9:23, 11:13, 12:17, 12:20, 14:8, 17:14, 20:6
**objections** [4] - 7:25, 8:1, 8:3
**objectors** [2] - 9:5, 9:19
**objectors'** [1] - 8:6
**obligation** [1] - 46:24
**oblige** [1] - 27:5
**observations** [2] - 27:13, 43:20
**obvious** [1] - 16:6
**occurrence** [1] - 9:4
**odd** [1] - 10:17
**OF** [8] - 1:1, 1:10, 3:14, 6:11, 6:13, 6:18, 6:21, 6:23
**OFFICIAL** [1] - 5:3
**Official** [2] - 59:13, 59:22
**officially** [1] - 25:10
**Omni** [8] - 19:13, 19:15, 19:19, 27:18, 28:13, 36:5, 42:12
**omnibus** [7] - 18:25, 25:21, 26:3, 37:13, 37:14, 37:25, 41:16
**ON** [2] - 6:7, 6:11
**once** [3] - 15:10, 33:8, 34:3
**one** [26] - 7:11, 9:20, 14:2, 15:18, 21:6, 21:7, 21:15, 22:5, 22:21, 22:24, 23:2, 23:20, 29:13, 30:8, 30:10, 36:10, 36:20, 37:15, 38:7, 43:18, 47:19, 48:3, 49:4, 50:11, 51:12, 54:6
**ONE** [1] - 4:7
**one-third** [1] - 48:3
**one-way** [1] - 49:4
**ones** [1] - 40:19
**open** [1] - 16:25
**operated** [1] - 15:23
**opinion** [1] - 53:12
**opportunity** [12] - 9:17, 9:24, 10:22, 11:11, 13:21, 14:1, 14:2, 14:8, 14:14, 14:22, 27:15, 47:17
**opposed** [2] - 15:14, 25:4
**opposition** [2] - 38:1, 57:19
**opt** [9] - 12:3, 13:25, 14:23, 15:2, 15:5, 16:8, 22:4, 22:18

**opt-out** [4] - 15:5, 22:4, 22:18
**opt-outs** [1] - 15:2
**opted** [4] - 19:24, 20:1, 22:5, 52:21
**opting** [1] - 15:2
**options** [1] - 15:5
**ORDER** [4] - 6:7, 6:14, 6:23, 7:4
**order** [42] - 8:6, 8:9, 9:16, 12:3, 18:12, 19:8, 19:24, 20:13, 20:17, 20:20, 20:23, 22:7, 23:6, 25:3, 25:19, 25:22, 27:22, 28:25, 29:12, 37:19, 41:4, 43:23, 44:1, 44:5, 44:13, 45:3, 45:4, 46:2, 46:7, 46:17, 46:21, 46:23, 47:8, 47:11, 47:19, 49:4, 53:6, 53:9, 54:7, 57:24, 58:4
**ORDER**....................
................ [1] - 6:22
**orders** [6] - 8:16, 12:22, 20:19, 26:14, 44:6, 47:10
**organization** [1] - 43:17
**ORLEANS** [10] - 1:6, 1:16, 2:5, 2:12, 3:18, 4:4, 4:8, 4:15, 4:20, 5:4
**Orthopedic** [1] - 13:11
**Ortiz** [1] - 13:12
**otherwise** [2] - 14:10, 28:17
**ought** [5] - 16:1, 16:25, 47:13, 47:15, 47:17
**outcome** [1] - 48:24
**outs** [1] - 15:2
**outside** [2] - 14:24, 17:10
**overlay** [1] - 19:4
**overlooking** [1] - 12:18
**overseen** [1] - 16:13
**overview** [1] - 30:2
**OWEN** [1] - 3:17
**own** [11] - 13:1, 14:24, 22:11, 23:14, 24:9, 24:17, 39:21, 42:4, 42:17, 55:16
**owned** [1] - 48:6
**owner** [1] - 8:3
**owns** [1] - 48:5

## P

**PA** [1] - 1:20
**paddle** [1] - 13:1
**paddling** [1] - 42:17
**PAGE** [1] - 6:3
**paid** [1] - 13:7
**PANAYOTOPOULOS** [3] - 3:4, 52:9, 53:22
**Panayotopoulos** [2] - 50:10, 52:9
**papers** [5] - 7:24, 9:15, 14:18, 50:7, 50:17
**parameters** [1] - 52:4
**paramount** [1] - 18:3
**PARK** [1] - 3:24
**part** [4] - 15:15, 42:13, 47:16, 56:18
**partaking** [1] - 29:3
**participate** [6] - 14:11, 31:10, 50:8, 52:21, 52:22, 55:20
**participated** [3] - 12:12, 31:13, 31:14
**participating** [1] - 52:2
**particular** [8] - 10:9, 17:14, 19:10, 19:11, 38:14, 40:20, 45:14, 52:1
**parties** [23] - 7:15, 7:16, 8:20, 10:20, 11:3, 13:14, 16:10, 16:24, 28:2, 34:17, 39:2, 39:14, 39:19, 44:3, 48:19, 51:6, 53:25, 56:13, 56:25, 57:2, 57:11, 57:21
**party** [28] - 49:12, 49:18, 49:19, 49:24, 50:3, 50:23, 51:6, 51:10, 51:13, 51:14, 51:15, 51:16, 51:20, 52:4, 52:5, 54:14, 54:21, 57:5, 57:15, 57:16, 57:25, 58:1, 58:4, 58:5
**party/third** [1] - 54:21
**past** [2] - 19:1, 40:1
**payment** [1] - 49:25
**Payton** [1] - 19:12
**PEACHTREE** [1] - 3:5
**peculiar** [1] - 38:12
**Peek's** [1] - 18:12
**PEEK'S** [1] - 6:6
**pending** [2] - 9:17, 30:16
**people** [10] - 16:22,

22:5, 22:13, 24:4,
24:15, 25:23, 25:25,
29:10, 47:4
**Pepper** [3] - 59:11,
59:20, 59:21
**PEPPER** [1] - 5:3
**percentages** [1] -
48:10
**performance** [1] -
45:22
**perhaps** [4] - 17:11,
27:3, 48:23, 52:23
**period** [3] - 9:23, 19:5,
47:15
**permit** [1] - 57:25
**permitting** [1] - 57:24
**perplexed** [1] - 21:8
**person** [1] - 15:13
**personal** [37] - 32:12,
32:13, 32:15, 32:16,
33:1, 33:9, 33:15,
33:16, 34:20, 35:15,
35:20, 36:21, 37:1,
37:5, 37:12, 37:15,
38:2, 38:4, 38:7,
38:17, 38:22, 38:24,
39:5, 39:24, 40:2,
40:5, 40:9, 40:23,
40:25, 41:7, 41:8,
41:10, 41:11, 41:19,
41:24, 42:22
**PERSONAL** [1] - 6:18
**PETERSON** [2] - 3:19,
3:20
**PHILADELPHIA** [1] -
1:20
**phone** [1] - 12:12
**picked** [1] - 37:6
**pieces** [1] - 15:17
**PIPES** [1] - 4:18
**place** [4] - 19:7, 26:15,
26:16, 55:14
**placed** [1] - 10:13
**plaintiff** [10] - 21:17,
22:13, 23:2, 23:18,
23:19, 43:22, 47:12,
49:13, 49:16, 51:24
**Plaintiff** [1] - 22:22
**PLAINTIFF** [1] - 6:21
**plaintiff's** [1] - 27:22
**PLAINTIFF'S** [1] -
6:14
**plaintiffs** [21] - 8:6,
18:11, 19:10, 19:22,
19:25, 21:7, 21:16,
22:24, 23:19, 32:11,
37:13, 37:22, 39:9,
43:25, 46:8, 46:9,
47:21, 47:25, 48:1,
48:4, 49:25

**PLAINTIFFS** [2] -
1:14, 6:6
**Plaintiffs'** [4] - 7:21,
18:19, 18:23, 18:24
**plaintiffs'** [4] - 44:21,
51:23, 52:1, 56:6
**PLAINTIFFS'** [1] -
6:10
**plasterboard** [1] -
23:13
**plate** [1] - 34:8
**plays** [1] - 16:12
**pleadings** [2] - 32:14,
54:18
**Point** [1] - 42:7
**point** [13] - 8:19,
11:15, 13:18, 16:17,
24:11, 26:21, 26:25,
41:10, 43:13, 46:19,
56:14, 58:17, 58:19
**pointed** [1] - 26:12,
38:12, 41:22
**pointing** [1] - 41:6
**points** [2] - 27:2, 27:3
**policies** [1] - 45:24
**policy** [3] - 29:8, 36:2,
36:17
**poor** [1] - 29:10
**portion** [1] - 48:6
**position** [4] - 25:2,
55:4, 55:6, 56:16
**possibility** [1] - 17:4
**possible** [1] - 11:5
**potential** [1] - 17:3
**potentially** [1] - 38:1
**power** [4] - 38:15,
52:18, 52:24, 57:9
**POYDRAS** [8] - 2:5,
2:11, 3:17, 4:4, 4:7,
4:14, 4:19, 5:3
**PPFs** [1] - 20:2
**practical** [4] - 31:22,
32:2, 35:4, 51:11
**precede** [1] - 57:16
**predicated** [1] - 54:12
**prefers** [1] - 24:14
**prejudice** [1] - 58:22
**preliminarily** [4] -
9:16, 10:3, 10:17,
52:16
**PRELIMINARY** [1] -
6:5
**preliminary** [14] -
7:10, 8:8, 8:18, 8:20,
9:7, 12:18, 15:4,
15:7, 16:18, 17:23,
18:5, 18:8, 28:6,
36:16
**presence** [1] - 35:10
**PRESENT** [1] - 4:22

**present** [3] - 35:19,
48:12, 50:21
**presented** [2] - 22:24,
31:3
**presents** [1] - 54:5
**press** [1] - 47:4
**pretty** [1] - 41:1
**prevails** [1] - 35:19
**previously** [1] - 7:24
**primary** [1] - 44:17
**principal** [1] - 8:1
**principals** [1] - 15:22
**privity** [1] - 14:5
**pro** [2] - 19:20, 27:19
**problem** [2] - 17:3,
53:15
**problematic** [1] -
25:14
**problems** [4] - 11:6,
18:9, 36:13, 48:13
**procedural** [1] - 55:24
**procedure** [5] - 8:9,
37:9, 42:20, 46:4
**procedures** [2] -
32:25, 42:3
**proceed** [13] - 15:10,
21:12, 28:1, 28:11,
29:12, 33:6, 33:12,
42:5, 42:21, 45:8,
49:16, 49:17
**proceeding** [2] -
20:21, 29:11
**PROCEEDINGS** [3] -
1:10, 5:6, 7:1
**proceedings** [5] -
25:12, 42:5, 52:13,
59:4, 59:16
**process** [14] - 9:9,
9:25, 17:16, 19:10,
20:14, 20:15, 20:21,
26:18, 28:6, 29:22,
30:24, 31:1, 41:9,
42:13
**PRODUCED** [1] - 5:6
**product** [6] - 28:4,
28:9, 30:7, 36:8,
44:16, 45:9
**production** [1] - 18:13
**PRODUCTION** [1] -
6:7
**PRODUCTS** [1] - 1:4
**Profile** [1] - 22:22
**profile** [1] - 23:1
**profiles** [1] - 22:13
**project** [3] - 44:23,
45:9, 46:15
**projects** [2] - 44:20,
45:10
**proof** [2] - 21:4, 22:22
**proper** [2] - 28:22,

55:24
**properly** [1] - 48:2
**Properties** [1] - 18:13
**PROPERTIES** [1] - 6:8
**properties** [1] - 47:5
**property** [1] - 23:7
**proponents** [1] - 7:21
**proposed** [5] - 10:5,
11:13, 27:22, 46:6,
47:8
**PROPOSED** [1] - 6:13
**proposition** [5] -
54:13, 57:15, 57:20,
57:23, 58:3
**protect** [5] - 12:3,
14:19, 15:3, 16:2,
57:10
**protection** [2] - 54:20,
55:13
**Proto** [1] - 31:20
**prove** [3] - 23:14,
28:21, 29:4
**proved** [1] - 35:1
**proves** [2] - 24:9,
24:18
**provide** [1] - 22:18
**provided** [5] - 19:2,
19:25, 20:1, 22:17,
24:16
**provider** [1] - 19:14
**proving** [2] - 10:14,
29:2
**provision** [3] - 54:3,
54:24, 55:25
**PSC** [17] - 17:19,
20:16, 20:25, 21:10,
22:11, 24:19, 27:5,
29:21, 30:6, 30:11,
30:21, 31:14, 31:21,
32:4, 32:5, 57:2,
57:5
**purchased** [6] - 22:20,
22:23, 23:10, 23:12,
24:8, 25:12
**purchasing** [1] - 24:9
**purpose** [9] - 14:25,
15:6, 20:12, 22:14,
33:23, 45:14, 50:13,
55:12
**pursuant** [1] - 7:20
**pursue** [6] - 31:7,
32:6, 54:4, 54:13,
57:4, 57:5
**pursued** [1] - 30:23
**pursuing** [2] - 14:13,
35:16
**push** [2] - 37:23, 41:5
**put** [5] - 21:23, 32:5,
46:2, 47:12, 51:9
**putting** [6] - 10:9,

13:19, 16:6, 26:11,
32:8, 56:16
**puzzle** [2] - 15:16
**puzzling** [1] - 57:17

## Q

**questions** [1] - 43:2
**quickly** [1] - 11:5
**QUINN** [1] - 2:24
**Quinn** [1] - 53:24
**quite** [2] - 19:17
**quote** [1] - 38:25
**quoted** [1] - 56:22
**quoting** [1] - 54:7

## R

**race** [2] - 18:4, 52:18
**raise** [5] - 39:2, 39:21,
39:25, 50:14, 55:23
**raised** [13] - 9:19,
12:15, 12:16, 16:22,
27:2, 32:14, 32:20,
32:22, 35:14, 39:25,
40:20, 54:22
**raises** [3] - 43:2,
44:11, 55:9
**RALEIGH** [1] - 2:8
**rate** [1] - 19:21
**rather** [3] - 11:14,
27:13, 29:7
**RCR** [2] - 45:19, 48:17
**RE** [1] - 1:4
**reach** [1] - 34:14
**reached** [1] - 37:21
**read** [3] - 50:17,
50:23, 57:23
**Read** [1] - 38:8
**reading** [1] - 58:3
**ready** [1] - 28:11
**realize** [1] - 12:9
**really** [11] - 18:7, 25:3,
25:10, 32:10, 33:22,
46:4, 49:1, 49:5,
49:9, 55:21, 56:12
**Realtime** [2] - 59:11,
59:21
**reap** [1] - 12:24
**reason** [2] - 8:15,
35:18
**reasonable** [2] - 10:6,
57:9
**reasons** [1] - 55:9
**receipts** [1] - 23:22
**recess** [1] - 59:3
**recognized** [1] - 41:21
**recommend** [2] - 16:1,

24:13
**record** [6] - 7:12, 11:10, 12:11, 24:4, 24:8, 59:16
**RECORD** [4] - 6:5, 6:9, 6:12, 6:19
**Record** [4] - 7:14, 18:14, 18:21, 37:1
**RECORDED** [1] - 5:6
**records** [2] - 24:3, 24:5
**recourse** [1] - 12:5
**REESE** [1] - 4:6
**referring** [1] - 26:21
**reflect** [1] - 11:11
**refrain** [1] - 19:16
**regard** [13] - 17:8, 26:15, 28:24, 29:1, 37:6, 38:14, 38:15, 39:24, 40:19, 42:18, 45:12, 45:21
**regarding** [1] - 14:9
**regardless** [1] - 54:16
**regards** [1] - 26:11
**Registered** [1] - 59:11
**registry** [1] - 10:13
**related** [1] - 37:6
**RELATES** [1] - 1:7
**relates** [1] - 52:15
**relatively** [1] - 52:6
**release** [5] - 13:10, 13:15, 56:23
**released** [4] - 11:19, 11:24, 11:25, 57:1
**releases** [1] - 12:22
**relief** [1] - 32:3
**remediation** [2] - 44:23, 44:25
**remember** [2] - 17:3, 20:24
**remind** [1] - 15:15
**render** [1] - 14:8
**rentals** [1] - 47:6
**rented** [1] - 48:7
**repeat** [2] - 18:6, 54:23
**reply** [1] - 20:4
**report** [3] - 22:25, 23:8, 23:20
**REPORTER** [1] - 5:3
**Reporter** [6] - 59:11, 59:12, 59:13, 59:21, 59:22
**REPORTER'S** [1] - 59:9
**represent** [8] - 12:8, 14:14, 17:2, 25:25, 27:4, 39:19, 46:9
**representative** [1] - 17:11

**representatives** [2] - 12:7, 17:21
**represented** [5] - 9:14, 14:16, 16:11, 16:22, 50:6
**representing** [3] - 20:8, 25:23, 50:7
**represents** [1] - 46:10
**REQUEST** [1] - 6:7
**request** [4] - 18:13, 42:19, 52:12, 55:1
**requesting** [1] - 54:6
**require** [1] - 12:2
**required** [2] - 10:7, 13:25
**requirement** [1] - 10:14
**reserve** [1] - 51:7
**residences** [1] - 23:9
**residency** [2] - 48:1, 48:8
**residential** [1] - 8:3
**residents** [2] - 42:11, 48:4
**resolution** [2] - 15:18, 42:6
**resolve** [8] - 9:5, 9:18, 18:9, 24:24, 29:12, 42:16, 48:25, 50:16
**resolved** [6] - 9:9, 13:3, 18:16, 18:18, 19:8, 49:1
**resources** [2] - 25:7, 33:14
**respect** [2] - 19:19, 33:5
**respectfully** [3] - 36:11, 42:19, 47:7
**respects** [2] - 55:4, 55:5
**respond** [1] - 13:22
**response** [6] - 12:14, 26:5, 35:25, 41:13, 51:25, 52:8
**rest** [3] - 23:21, 41:12, 46:10
**result** [2] - 11:23, 18:5
**retain** [1] - 11:22
**REUTER** [1] - 3:16
**reviewing** [1] - 54:18
**revised** [1] - 8:13
**rights** [5] - 12:3, 15:3, 21:14, 57:3, 57:5
**rise** [1] - 7:7
**risk** [1] - 36:14
**RMR** [2] - 5:3, 59:21
**ROAD** [1] - 3:5
**ROBERT** [2] - 2:17, 4:23
**ROBERTS** [1] - 2:7

**room** [2] - 7:16, 23:20
**ROOM** [1] - 5:3
**ROSS** [1] - 3:16
**Rule** [4] - 12:21, 12:22, 29:4, 29:6
**rule** [1] - 36:19, 44:21, 45:7, 46:20
**ruling** [3] - 8:17, 8:18, 27:18
**RUMBERGER** [1] - 2:16
**Russ** [2] - 17:18, 21:1
**RUSS** [1] - 1:15

## S

**s/Cathy** [1] - 59:20
**sale** [1] - 23:7
**SAROWITZ** [1] - 2:20
**SARVER** [1] - 4:17
**satisfied** [1] - 10:25
**schedule** [1] - 46:1
**scheduled** [1] - 58:16
**scheduling** [17] - 27:22, 37:19, 43:23, 44:1, 44:2, 44:5, 44:13, 45:3, 45:4, 46:2, 46:17, 46:21, 47:8, 47:10, 47:11, 47:19
**SCHEDULING** [2] - 6:14, 6:22
**SCHOLER** [1] - 3:22
**School** [1] - 13:13
**school** [1] - 37:8
**scienter** [1] - 10:15
**Screw** [1] - 13:11
**seated** [1] - 7:8
**secondly** [2] - 17:13, 51:17
**Section** [1] - 53:14
**SEDRAN** [1] - 1:18
**See** [1] - 33:21
**see** [10] - 10:12, 15:4, 16:21, 24:3, 24:20, 24:24, 25:1, 42:25, 43:18, 55:21
**SEEGER** [2] - 1:21, 1:22
**seeking** [2] - 27:19, 49:24
**seeks** [2] - 15:1, 49:15
**Seifart** [1] - 50:1
**self** [4] - 57:15, 57:19, 57:22, 58:2
**self-evident** [4] - 57:15, 57:19, 57:22, 58:2
**sell** [1] - 21:24

**send** [1] - 45:11
**sense** [1] - 10:16
**sentence** [1] - 23:12
**separate** [4] - 30:25, 31:19, 36:23, 48:18
**serious** [1] - 27:12
**SERVE** [1] - 6:7
**serve** [9] - 18:12, 20:10, 25:5, 25:21, 25:24, 26:3, 26:13, 26:25, 28:15
**served** [11] - 10:8, 19:15, 19:18, 22:6, 27:8, 27:9, 27:11, 27:15, 27:19, 30:23, 30:25
**SERVICE** [1] - 6:11
**service** [13] - 18:20, 19:2, 19:4, 19:14, 20:3, 20:9, 20:18, 25:9, 25:10, 25:16, 25:18, 26:13
**serving** [2] - 25:24, 30:24
**set** [10] - 14:3, 30:18, 30:20, 31:4, 31:21, 36:12, 40:8, 46:1, 46:22, 55:25
**sets** [1] - 12:19
**settle** [2] - 39:15, 48:11
**settled** [1] - 39:20
**settlement** [49] - 7:22, 8:7, 8:12, 10:3, 10:4, 10:6, 10:8, 11:14, 11:18, 11:19, 11:23, 12:1, 12:2, 12:9, 12:13, 13:5, 13:15, 14:10, 14:12, 14:25, 19:3, 19:7, 20:14, 20:21, 20:23, 21:4, 22:4, 22:7, 34:9, 34:14, 52:17, 52:21, 52:23, 53:1, 53:13, 53:15, 53:16, 54:1, 54:2, 54:24, 54:25, 55:14, 55:25, 56:5, 56:16, 56:20, 56:23, 56:24, 57:18
**settlements** [2] - 15:1, 39:14
**settling** [2] - 53:7, 53:25
**several** [2] - 28:13, 42:25
**severed** [1] - 58:19
**Sexton** [3] - 9:2, 16:5, 58:11
**SEXTON** [5] - 3:4, 9:1, 16:4, 58:11, 58:15

**shaking** [1] - 22:3
**share** [1] - 54:1
**Sheetrock** [1] - 23:9
**SHELL** [1] - 4:7
**shortly** [1] - 8:5
**showed** [1] - 21:1
**sick** [1] - 15:22
**side** [1] - 14:13
**side-lined** [1] - 14:13
**sign** [1] - 20:16
**signed** [1] - 19:9
**significant** [3] - 48:6, 53:19, 53:20
**Silva** [1] - 55:18
**similar** [4] - 13:10, 23:25, 36:10, 44:23
**simply** [2] - 26:17, 57:14
**simultaneously** [1] - 51:14
**SINNOT** [1] - 2:13
**sitting** [3] - 33:22, 33:24, 35:21
**situation** [4] - 13:7, 17:25, 34:11, 47:7
**situations** [1] - 45:17
**Sivyer** [1] - 17:6
**SIVYER** [4] - 3:10, 3:10, 17:6, 17:7
**six** [1] - 42:15
**slightly** [1] - 55:4
**small** [1] - 15:21
**SMITH** [1] - 4:3
**sold** [3] - 21:22, 34:24, 35:2
**solicited** [1] - 14:10
**solution** [1] - 11:1
**some-odd** [1] - 32:11
**someone** [1] - 17:10
**sorry** [1] - 12:10
**sort** [3] - 15:7, 15:23, 17:5
**sought** [2] - 13:4, 19:19
**SOUTHWEST** [1] - 2:18
**space** [1] - 44:10
**SPANO** [1] - 3:7
**special** [1] - 23:6
**Special** [2] - 16:13, 20:2
**specific** [5] - 45:18, 51:17, 51:19, 52:2, 55:10
**spend** [2] - 20:15, 46:7
**spending** [2] - 22:14, 25:7
**spent** [1] - 45:10

**spring** [1] - 45:15
**square** [1] - 44:9
**SQUARE** [1] - 4:7
**Stacey** [1] - 18:12
**STACEY** [1] - 6:6
**stage** [5] - 12:19, 13:24, 34:15, 37:22, 42:3
**stages** [2] - 28:4, 36:12
**stand** [3] - 9:15, 16:18, 59:3
**standing** [1] - 50:14
**standpoint** [2] - 15:17, 43:11
**STANLEY** [1] - 3:16
**start** [4] - 14:23, 29:22, 36:13, 36:14
**started** [2] - 21:19, 44:25
**state** [20] - 14:6, 15:9, 30:8, 30:9, 30:10, 30:13, 33:19, 34:25, 35:3, 40:8, 41:19, 49:11, 52:13, 53:2, 55:7, 57:22, 57:23
**State** [1] - 59:12
**STATE/FEDERAL** [1] - 4:13
**states** [1] - 23:8
**States** [2] - 59:13, 59:22
**STATES** [2] - 1:1, 1:11
**stating** [1] - 16:6
**STATUS** [1] - 1:10
**status** [2] - 18:2, 31:16
**statute** [1] - 36:3
**statutes** [2] - 45:18, 54:20
**stay** [51] - 12:6, 12:24, 18:12, 19:8, 19:23, 20:13, 20:17, 20:19, 20:20, 20:23, 21:9, 21:12, 22:7, 25:3, 25:19, 25:22, 26:14, 26:24, 27:11, 27:14, 27:15, 27:21, 29:21, 29:24, 33:4, 37:4, 37:24, 38:1, 38:3, 41:2, 49:4, 49:24, 50:14, 51:9, 53:1, 53:2, 53:9, 53:12, 53:14, 54:7, 54:16, 54:19, 55:1, 55:12, 55:25, 57:7, 57:9, 57:10, 58:5, 58:22
**STAY** [3] - 6:7, 6:13, 6:23
**stayed** [7] - 26:16,

27:10, 31:19, 51:4, 53:5, 54:9, 55:8
**staying** [1] - 9:17
**stays** [1] - 21:9
**STECKLER** [1] - 4:22
**Steering** [5] - 7:21, 9:13, 17:7, 18:19, 18:23, 18:24
**STEERING** [1] - 6:10
**STENOGRAPHY** [1] - 5:6
**step** [4] - 26:17, 27:7, 31:4, 34:8
**Steve** [2] - 49:6, 56:12
**STEVEN** [1] - 3:23
**still** [2] - 24:13, 40:21
**stood** [1] - 39:15
**stop** [3] - 52:12, 55:13, 55:14
**stopped** [1] - 25:12
**stops** [1] - 58:4
**store** [1] - 23:4
**street** [2] - 49:5
**STREET** [12] - 1:19, 1:22, 2:5, 2:11, 2:18, 3:11, 3:17, 4:4, 4:7, 4:14, 4:19, 5:3
**strict** [3] - 45:8, 46:20, 54:20
**strongly** [1] - 24:22
**subclass** [1] - 14:19
**subclasses** [1] - 17:4
**subject** [17] - 8:4, 12:4, 32:11, 32:18, 32:23, 33:10, 34:3, 34:4, 34:6, 34:13, 34:15, 34:16, 34:19, 34:21, 35:12, 35:13, 35:22
**subjected** [1] - 51:19
**submit** [3] - 7:23, 8:5, 8:16
**submitted** [6] - 8:14, 22:22, 44:5, 45:3, 46:6, 47:12
**subsequent** [1] - 10:16
**substance** [1] - 25:9
**substantive** [6] - 25:3, 25:8, 26:12, 27:2, 43:13, 50:11
**sue** [1] - 11:23
**sufficient** [3] - 22:17, 22:19, 24:16
**suggest** [3] - 27:12, 36:11
**suggestion** [2] - 10:23, 36:1
**suing** [2] - 11:22, 14:16

**suit** [1] - 35:9
**SUITE** [15] - 1:19, 1:22, 2:5, 2:8, 2:17, 2:22, 3:5, 3:11, 3:14, 3:17, 3:20, 4:7, 4:10, 4:14, 4:19
**suits** [4] - 42:9, 42:25, 43:1, 43:3
**SULLIVAN** [1] - 2:24
**summarizing** [1] - 49:7
**summary** [1] - 45:20
**supplier** [6] - 21:12, 23:11, 23:13, 28:9, 35:2, 41:24
**suppliers** [3] - 21:10, 28:4, 28:7
**SUPPLY** [1] - 6:16
**Supply** [10] - 9:2, 16:5, 27:23, 29:17, 30:13, 37:3, 37:11, 41:14, 41:25, 58:11
**supply** [1] - 46:24
**supplying** [1] - 22:9
**supposed** [1] - 39:6
**Surety** [2] - 48:16, 48:17
**surety** [1] - 45:22
**suretyship** [1] - 45:23
**surprised** [2] - 47:13, 48:14
**surrounded** [1] - 49:21
**Synolovsky** [2] - 57:25, 58:12

## T

**table** [6] - 9:7, 16:1, 32:5, 48:22, 48:23, 56:7
**tabled** [1] - 42:4
**tailored** [1] - 46:5
**Taishan** [31] - 28:9, 28:13, 28:15, 28:18, 28:20, 28:21, 29:2, 29:11, 30:23, 31:7, 31:11, 31:15, 31:17, 32:4, 32:6, 32:12, 32:13, 32:16, 33:2, 33:7, 33:10, 35:4, 35:8, 35:11, 35:16, 35:19, 40:8, 40:13, 40:14, 44:16
**Taishan's** [1] - 28:22
**TAKE** [2] - 6:17, 6:20
**TAMPA** [1] - 3:11
**taught** [1] - 37:8
**Taylor** [1] - 17:15

**tee** [1] - 50:15
**teed** [1] - 50:12
**teetering** [1] - 15:24
**telephone** [1] - 8:22
**tendered** [1] - 15:25
**terms** [1] - 16:7
**test** [1] - 46:3
**THE** [58] - 1:10, 1:14, 2:10, 2:21, 3:14, 4:13, 4:17, 6:7, 6:8, 6:13, 6:24, 7:7, 7:8, 7:12, 7:14, 7:19, 8:24, 9:11, 10:2, 11:9, 11:16, 12:14, 13:21, 15:4, 16:21, 17:17, 18:10, 18:18, 20:6, 25:1, 26:5, 27:9, 27:21, 29:15, 33:15, 33:21, 34:1, 34:18, 34:23, 35:25, 36:18, 36:24, 40:4, 40:16, 41:13, 42:23, 47:10, 48:12, 48:21, 49:2, 52:8, 53:17, 56:12, 58:7, 58:10, 58:14, 58:25, 59:3
**therefore** [3] - 28:16, 52:17, 56:19
**they've** [3] - 21:16, 41:4, 54:22
**thinking** [1] - 15:16
**Third** [1] - 13:16
**THIRD** [1] - 3:8
**third** [20] - 46:19, 48:3, 49:12, 49:19, 49:24, 50:3, 50:23, 51:6, 51:10, 51:13, 51:14, 51:15, 51:20, 52:5, 54:14, 56:24, 57:5, 57:15, 57:25, 58:5
**third-party** [17] - 49:12, 49:19, 49:24, 50:3, 50:23, 51:6, 51:10, 51:13, 51:14, 51:15, 51:20, 52:5, 54:14, 57:5, 57:15, 57:25, 58:5
**thirds** [1] - 48:3
**THIS** [2] - 1:7, 6:20
**THOMAS** [1] - 3:17
**THORNTON** [1] - 3:16
**thousands** [1] - 22:4
**three** [4] - 20:19, 25:23, 26:21, 28:9
**threshold** [1] - 9:7
**throughout** [1] - 15:6
**THURSDAY** [2] - 1:6, 7:3
**timing** [1] - 57:14
**TO** [9] - 1:7, 6:6, 6:7,

6:10, 6:13, 6:17, 6:18, 6:24, 7:4
**today** [9] - 7:20, 9:15, 21:3, 29:19, 40:24, 41:1, 41:8, 51:1, 52:25
**together** [5] - 9:5, 9:18, 27:12, 30:21, 51:14
**tomorrow** [2] - 8:23, 44:25
**TOMPKINS** [1] - 4:3
**tort** [1] - 45:6
**toward** [1] - 15:10
**towards** [2] - 51:5, 51:6
**TOWER** [1] - 4:19
**traditionally** [2] - 12:16, 12:22
**TRANSCRIPT** [2] - 1:10, 5:6
**transcript** [1] - 59:15
**transferee** [1] - 35:22
**transferred** [1] - 35:10
**TRAURIG** [1] - 3:13
**traveling** [1] - 28:21
**treatment** [1] - 15:23
**trees** [1] - 22:3
**trial** [8] - 15:10, 30:18, 31:4, 31:21, 48:20, 51:12, 58:16, 58:18
**trials** [1] - 10:16
**tried** [3] - 24:11, 24:12, 41:5
**trip** [1] - 12:11
**true** [3] - 54:16, 54:23, 59:15
**truly** [1] - 24:14
**try** [8] - 9:5, 9:10, 9:18, 22:14, 24:3, 27:6, 30:19, 32:4
**trying** [9] - 21:11, 26:3, 35:16, 37:23, 39:22, 45:10, 49:22, 50:5, 52:25
**tunc** [2] - 19:20, 27:19
**turn** [2] - 42:14, 43:22
**turned** [1] - 28:8
**turns** [1] - 33:1
**twice** [1] - 44:17
**two** [17] - 8:16, 18:2, 21:18, 21:19, 21:25, 22:23, 24:23, 28:7, 29:18, 29:20, 30:3, 30:9, 45:10, 48:3, 48:19, 49:5, 50:11
**two-thirds** [1] - 48:3
**two-way** [1] - 49:5
**twofold** [1] - 51:12
**type** [6] - 14:12, 44:12,

44:20, 45:6, 45:14,
45:17
**types** [2] - 38:23, 47:2

## U

**U.S** [1] - 23:21
**ultimately** [1] - 16:13
**unable** [1] - 44:4
**under** [16] - 22:7, 26:8,
28:17, 29:4, 29:5,
33:10, 35:2, 35:11,
36:19, 42:12, 42:24,
48:3, 52:18, 52:19,
52:24, 53:25
**UNDER** [2] - 6:17,
6:20
**undergoing** [1] -
15:23
**understood** [2] - 9:16,
53:16
**unfair** [2] - 51:18, 52:3
**unique** [3] - 34:11,
45:5, 45:23
**unit** [2] - 44:9, 44:10
**UNITED** [2] - 1:1, 1:11
**United** [2] - 59:13,
59:22
**units** [4] - 44:9, 46:10,
46:11, 48:6
**universe** [1] - 23:18
**unlike** [1] - 11:19
**unqualified** [1] - 38:10
**unrelated** [2] - 17:8,
17:13
**unremarkable** [1] -
54:13
**unsuccessfully** [1] -
44:18
**up** [13] - 7:10, 10:9,
33:12, 37:6, 39:15,
40:8, 42:18, 46:3,
47:11, 48:2, 50:12,
50:15, 58:23
**upsets** [1] - 56:5
**urge** [4] - 52:6, 55:1,
56:4, 56:13
**URQUHART** [1] - 2:24
**US** [1] - 3:7
**USA** [1] - 24:8
**USDIN** [1] - 4:17

## V

**VA** [1] - 2:15
**valid** [1] - 27:3
**various** [3] - 7:16,
19:21, 45:15

**VENTURE** [1] - 6:16
**Venture** [28] - 27:23,
28:8, 28:14, 28:16,
29:8, 29:12, 29:13,
29:15, 29:17, 30:13,
34:21, 34:23, 35:2,
36:15, 37:3, 37:11,
37:22, 37:25, 39:23,
40:5, 41:14, 41:20,
41:25, 42:13, 43:1,
43:2, 43:3
**Venture's** [2] - 28:19,
36:13
**Vereen** [7] - 19:4,
20:14, 20:19, 20:22,
21:4, 25:2, 25:11
**version** [1] - 26:7
**via** [1] - 8:22
**VII** [4] - 19:13, 19:15,
19:19, 27:18
**VILLAGE** [1] - 2:14
**violate** [1] - 53:14
**violates** [4] - 20:19,
20:20, 20:22
**violation** [1] - 45:16
**violative** [1] - 53:18
**Vioxx** [3] - 13:4,
38:12, 41:22
**Virginia** [36] - 28:9,
29:10, 30:13, 30:25,
31:1, 31:19, 31:20,
32:1, 32:3, 32:10,
33:19, 33:21, 33:22,
33:23, 34:11, 34:12,
34:18, 34:20, 34:25,
35:3, 35:8, 35:9,
35:12, 35:21, 40:4,
40:9, 40:11, 41:18,
41:19, 41:20, 41:24,
42:9, 43:7
**VOICES** [1] - 59:2
**void** [3] - 33:2, 35:23,
35:24

## W

**wait** [5] - 16:15, 16:19,
37:18, 37:21, 37:22
**waited** [1] - 37:13
**waive** [1] - 34:17
**waiving** [1] - 38:2
**WALLANCE** [1] - 3:23
**walls** [1] - 23:9
**WALNUT** [1] - 1:19
**wants** [2] - 12:24, 16:7
**warranty** [2] - 45:13
**WARSHAUER** [1] -
2:3
**wasted** [1] - 33:3

**wasting** [3] - 22:15,
24:12, 33:13
**WATERFORD** [1] -
2:21
**WATSON** [1] - 3:10
**ways** [1] - 21:15
**week** [4] - 8:23, 17:20,
30:9, 50:9
**weeks** [1] - 24:23
**WEINBERG** [1] - 3:3
**WEISS** [1] - 1:21
**welcome** [1] - 12:21
**Wendy** [1] - 43:22
**WENDY** [1] - 6:21
**whatsoever** [2] - 32:3,
56:24
**WHEELER** [1] - 3:3
**WHEREUPON** [1] -
59:4
**whole** [3] - 15:16,
15:19, 22:14
**wholesale** [2] - 23:10,
23:13
**William** [1] - 18:11
**WILLIAM** [2] - 4:6, 6:6
**willing** [3] - 16:24,
24:19, 36:14
**Wiltz** [4] - 29:25, 30:5,
41:16, 41:21
**wire** [1] - 51:1
**wish** [2] - 18:15, 50:18
**wishes** [1] - 24:23
**word** [1] - 43:19
**words** [3] - 43:15,
43:21, 49:7
**world** [1] - 12:21
**worse** [1] - 47:7
**worth** [1] - 25:6
**writing** [1] - 56:19
**Writs** [1] - 52:18

## Y

**year** [4] - 20:25, 30:18,
32:20, 36:10
**years** [7] - 18:2, 21:18,
21:19, 21:25, 30:3,
44:24, 45:10
**YORK** [3] - 2:25, 3:8,
3:24

## Z

**ZERIS** [1] - 2:20
**zero** [1] - 30:3