## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

LAURA HAYA, DANIEL HAYA AND IRENE HAYA, individually, behalf of all others, similarly situated, et al.,

        Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD.; QINHUANGDAO TAISHAN BUILDING MATERIALS CO., LTD. A/K/A QINHUANG DAO TAISHAN BUILDING MATERIALS CO., LTD., et al.,

        Defendants.

_____/

CASE NO.: 11-1077
SECT. L MAG. 2

### MEMORANDUM OF LAW IN SUPPORT OF ARANDA HOMES, INC.'S MOTION TO DISMISS WITH PREJUDICE THE CLAIMS BROUGHT AGAINST IT IN THE HAYA OMNIBUS AMENDED CLASS ACTION COMPLAINT (OMNI IX)

Defendant Aranda Homes, Inc. ("Aranda"), hereby files its Memorandum of Law in

Support of Aranda Homes, Inc.'s Motion to Dismiss with Prejudice the Claims Brought Against

it in the Haya Omnibus Amended Class Action Complaint (Omni IX) (the "Motion").[1]

## I. ARGUMENT

**A.    The Governing Legal Standard.**

A motion to dismiss under Rule 12(b)(6) should be granted if the allegations in the

Complaint, even if proved true, would not entitle the plaintiff to relief.  *See Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 555 & 570 (2007); Fed. R. Civ. P. 12.  Plaintiffs' obligation "to provide

the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions."  *Id*. at

---

[1]    The Memorandum refers to the terms and exhibits defined in the Motion.

555. (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

**B.  Plaintiffs' Causes of Action Against Aranda Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted.**

Each of the causes of action asserted against Aranda should be dismissed pursuant to Rule 12(b)(6) because none of them states a claim for which relief can be granted. Each of Plaintiffs' ten claims against Aranda contains incurable defects.

**1.  Plaintiffs' tort claims (Counts I, II, III, XI, XII, and XIV) are barred in whole or in part by the economic loss rule.**

The economic loss rule (or "ELR") bars plaintiffs from circumventing their contractual arrangements through allegations in tort.  *See Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 & n.1 (Fla. 2004).  Florida law applies the ELR in two contexts: "(1) The contractual privity ELR where two parties are in privity of contract, and (2) The products liability ELR where a defective product causes damage, but only to itself."  MDL No. 2047 Order & Reasons (Jan. 13, 2010) at 22.[2]  This Court has explained how the contractual privity ELR applies to homebuilders like Aranda:

> The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contractor breach, and in other limited circumstances.  The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall.  Accordingly, <u>under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs</u>.

*Id.* at 30 (citation omitted) (emphasis added).  Moreover, Florida courts have similarly ruled that tort claims seeking economic recovery are barred. *See Bennett v. Centerline Homes, Inc.*, No.

---

[2]     The Court's January 13, 2010 "MDL No. 2047 Order & Reasons" (*In re Chinese Drywall Prods. Liab. Litig.*, 680 F. Supp. 2d 780, 794-95 (E.D. La. 2010)) applies by its terms to all drywall MDL cases pending before the Court, including this one.

2009 CA 014458 (Fla. 15th Jud. Cir., Nov. 5, 2010) (the "Fla. 15th Cir. Omnibus Order")[3] (dismissing, on an omnibus basis, all strict liability and private nuisance claims brought by homeowners against their builders for allegedly defective Chinese drywall because "plaintiff homeowners' tort claims against the defendant homeowners seeking economic losses are dismissed based on the privity economic loss rule."); *Henderson v. Douglas B. Francis*, Case No. 09-CA-001280 (Fla. 20th Jud. Cir., Sept. 9, 2009) (granting a defendant-subcontractor's motion to dismiss the homeowners' drywall-related negligence claim to the extent defendant sought economic losses and holding that "Plaintiffs shall not be entitled to pursue damages … including, but not limited to, portions of the HVAC system and copper wiring throughout the subject residence.").

Plaintiffs – who are indisputably in privity of contract with Aranda (Exh. A to Motion) – assert numerous tort claims in the Omnibus Complaint, including Negligence (Count I), Negligence Per Se (Count II), Strict Liability (Count III), Private Nuisance (Count XI), Unjust Enrichment (Count XII) and Medical Monitoring (Count XIV).  The ELR intercepts each of these claims because "the alleged duty breached is derived from the contractual relationship" between the parties.  *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1315 (S.D. Fla. 2002) (internal marks omitted).  The basis of Plaintiffs' tort claims is that Aranda built a home with defective drywall. *E.g.*, Cmplt. ¶¶ 16, 19.  Because that alleged wrong is derived from the parties' contractual relationship, however, it cannot give rise to a tort claim. *See, e.g., Indemnity Ins. Co.*, 891 So. 2d at 536-37.

Plaintiffs are barred from bringing tort claims against Aranda for economic losses. Florida courts have defined economic loss in contexts such as this one as "damages for

---

[3]       *Bennett* is a consolidated state court action that, like this one, pits homeowners with defective drywall claims against their homebuilders.

inadequate value, costs of repair and replacement of the defective product," and "disappointed economic expectations." *See*, *e.g.*, *Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993). Plaintiffs, much like the homeowners in *Casa Clara*, seek purely economic damages, which are "protected by contract law, rather than tort law." *See id.* In *Casa Clara*, the Florida Supreme Court affirmed the dismissal of homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties. *See id.* at 1248. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. *Id.* at 1247. Because the plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier. *Id.* at 1246-48.

The same reasoning applies here. Plaintiffs cannot sue Aranda in tort for purely economic losses. As a matter of law, the economic loss rule limits them to recovering only non-economic losses (e.g., personal injury or damages to property other than the homes themselves), which they do not seek.[4] *See id.*, at 1247-48. Plaintiffs must therefore replead their tort claims to seek only non-economic losses. *Cf.* Cmplt. ¶ 48 (seeking general "damages" on negligence count).

### 2. Plaintiffs' negligence allegations (Count I) are false and improperly pled.

Plaintiffs' negligence claims (Count I) illustrate why Aranda does not belong in this lawsuit. The Omnibus Complaint alleges that Aranda somehow owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k)

---

[4]    Plaintiffs' claims for economic losses also fail because they have <u>suffered</u> no such losses. The Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed." MDL No. 2047 Order & Reasons at 19-20.

selling" the drywall in question.  Cmplt. ¶ 42.  The Complaint further alleges that Aranda had a duty to provide Plaintiffs with certain warnings about the drywall.  *Id*. ¶ 45.  However, at least one Florida court has already concluded that builders have no "general duty to inspect or test the Chinese manufactured drywall for a latent defect, or to warn homeowners of the existence of a latent defect in the drywall" and that the drywall is not "inherently dangerous."  *See Bennett v. Centerline Homes, Inc.*, No. 2009 CA 014458 (Fla. 15th Jud. Cir., March 18, 2011) (the "Fla. 15th Cir. Second Omnibus Order") (dismissing, on an omnibus basis, all plaintiffs' negligence claims "based on a general duty to test or inspect for, or to warn of, a latent defect in Chinese manufactured drywall" where there was no "actual or implied notice of the defect").  This ruling is soundly based on Florida law as explained in detail below.

As an initial matter, Plaintiffs' claim of negligence is false because Aranda did not "design," "manufacture," or "import" any drywall.  Yet even assuming the truth of these specious allegations, they fail to state a claim.  To state a negligence claim, a plaintiff must plead and prove (among other things) that the defendant owed a duty to the plaintiff, and that the duty was breached.  *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (Florida law) ("Failure to establish any one of these elements is fatal to the plaintiff's case.").  Plaintiffs can allege neither prerequisite.

Aranda owed no duty of care with respect to Plaintiffs' drywall.  Under Florida law, even manufacturers, retailers and distributors – all of whom arguably bear a *greater* responsibility toward their products than a builder like Aranda – have a duty to inspect or warn <u>only</u> when the product is considered "inherently dangerous."  *See O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous.").

Drywall obviously does not fit into the narrow "inherently dangerous" category, and the Omnibus Complaint does not allege otherwise.[5]  *See* Fla. 15th Cir. Second Omnibus Order at 2 ("Chinese manufactured drywall, while apparently defective, cannot be categorized as inherently dangerous.").

In the same vein, Aranda cannot be held liable in negligence for latent defects absent actual or implied knowledge of those defects.  *See id.* (dismissing claims for negligence unless "plaintiffs can, in good faith, plead notice against and individual [builder]").  *See Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1991).  The alleged defects in the drywall are plainly latent (*e.g.,* Cmplt. ¶¶16-17), and the law is clear that, absent an "inherently dangerous" product or actual or implied knowledge – neither of which Plaintiffs can allege in "good faith" – Count I fails as a matter of law.  The boilerplate, and wholly unsupported assertion that Aranda "knew or should have known" that the drywall would "harm" Plaintiffs (*id.* ¶ 43) is a mere legal conclusion that cannot salvage a negligence claim, particularly one that flies in the face of basic principles of Florida law.  *See* Fla. 15th Cir. Second Omnibus Order (requiring more specific allegations).

---

[5]    "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category.  They include highly toxic materials, second hand guns and drugs….  In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself."  *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted).  By way of illustration, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co.*., 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are <u>not</u> "inherently dangerous."  Drywall would certainly not be an "inherently dangerous" product under Florida law.

### 3.    Plaintiffs have not stated a claim for negligence per se (Count II).

Aside from being barred by the economic loss rule, Plaintiffs' negligence per se claim (Count II) is also poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort.  Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se.  First, they have not identified a statute that Aranda allegedly violated, much less explained how that violation occurred.  Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes" and "furnished the drywall in violation of ASTMC C 1396/C 1396M-069." Cmplt. ¶ 52.  Plaintiffs, however, do not state how Aranda or any of the other unspecified "Defendants" have violated this code. Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that Aranda allegedly violated are "designed to protect the <u>general</u> <u>public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added).  In other words, Plaintiffs' negligence per se claim appears to be nothing more than a repackaged negligence claim.  It should be summarily dismissed for that reason as well.

### 4.    Plaintiffs cannot sue Aranda in strict liability (Count III).

Plaintiffs' strict liability claim (Count III) is premised on the patently false assertion that Aranda was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public."  Cmplt. ¶ 57.  This theory is foreclosed by the economic loss rule and by at least two additional established principles of Florida law.

First and foremost, Aranda cannot be sued in strict liability because it did not manufacturer or distribute the allegedly defective drywall.  *See* Fla. 15th Cir. Omnibus Order at 9 (dismissing all plaintiffs' claims of strict liability against builders because "the defendant homebuilders did not manufacture the drywall at issue"); *Bissoon v. Centerline Homes Construction*, *Inc*., No. 562010 CA 001463 (Fla. 19th Jud. Cir. Mar. 24, 2011) ("Fla. 19th Cir. Order) (granting builder's motion to dismiss: "[A]lthough Plaintiff[s'] strict liability claims do allege defective product distribution, permanent improvements to real property are not products for purposes of products strict liability actions").  The Complaint itself identifies Aranda as a "Builder."  Cmplt. Exh. B at ¶ 17 (page 3 of 33).  Strict products liability, however, is reserved for product manufactures and distributors; it does not apply to a homebuilder like Aranda.  *See Ugaz v. American Airlines, Inc*., 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claims "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291 (Fla. 5th DA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Furthermore, even if Plaintiffs could sue a contractor in strict liability (and they cannot), the allegedly defective drywall is not a "product" for purposes of this particular tort.  *See* Fla. 15th Cir. Omnibus Order at 8 ("The law in Florida appears well settled that strict liability does not apply to improvements to real property as improvements to real property are not considered

products."). Rather, under Florida strict liability law the drywall is considered a "structural improvement," as it was an integral part of Plaintiffs' homes.  *See Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007).  "Florida courts have expressly <u>declined</u> to extend the principle of strict liability to structural improvements to real estate."  *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc.* No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added); *see Plaza*, 971 So. 2d at 924 (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water & Waste, Inc*., 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

### 5.    Plaintiffs cannot maintain a warranty claim (Counts IV & VI).

In Counts IV (Breach of Express and/or Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiffs allege causes of action based on various express and implied warranties.[6]  Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties – let alone explain how Aranda might have breached them – these improvised warranty claims should be dismissed for several independently sufficient reasons.

   a.    *Plaintiffs' express and implied warranty claims are foreclosed by the plain language of their Building Agreement.*

Although Plaintiffs were in contractual privity with Aranda, their implied warranty claims must be dismissed with prejudice because the Building Agreement disclaims all such warranties:

---

[6]    The Omnibus Complaint also includes a claim for "redhibition" on behalf of "Louisiana Plaintiffs" (Count IX), but redhibition requires a showing that the allegedly defective product— here, drywall—failed for its intended purpose. *See Benoit v. Ryan Chevrolet*, 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). This theory is conclusively barred by this Court's prior determination that the drywall is "serving its intended structural purpose."  MDL No. 2047 Order & Reasons at 23. Moreover, Plaintiffs' claims are Florida-based.

The Contractor guarantees all workmanship and material.  **This guarantee is in exclusion of an [sic] in lieu of all other guarantees or warranties, and liability herein terminates one year from date of delivery**. . . . THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OR OF HABITABILITY, EXCEPT AS MAY BE EXPRESSLY PROVIDED IN THE BUILDER'S LIMITED WARRANTY. NOTHING HEREIN SHALL BE DEEMED TO LIMIT ANY WARRANTY REQUIRED BY STATE OF [sic] FEDERAL LAW.

. . .

OWNER ACKNOWLEDGES AND AGREES . . . THAT **THE BUILDER DOES NOT MAKE ANY GUARANTEE OR WARRANTY WHATSOEVER, NOR IS THERE ANY GUARANTEE OR WARRANTY INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE FOR ANY <u>SYSTEM</u> INSTALLED IN THE RESIDENCE** EXCEPT FOR THE WARRANTIES EXPRESSLY PROVIDED IN THIS CONTRACT, OR PROVIDED BY MATERIAL SUPPLIERS, APPLIANCE MANUFACTURERS AND SUBCONTRACTORS.

Motion Exh. A at §§ 10, 13 (bold emphasis added; all other emphasis in original).

Contractual exclusions of implied warranties like those at bar are valid and enforceable under Florida law.  *See Leasetec Corp. v. Orient Sys., Inc.*, 85 F. Supp. 2d 1310, 1315 (S.D. Fla. 1999) (recognizing enforceability of warranty disclaimers); *e.g., Belle Plaza Condo. Ass'n, Inc. v. B.C.E. Dev., Inc.*, 543 So. 2d 239, 240 (Fla. 3d DCA 1989) (condominium developer properly disclaimed any and all express and implied warranties); *Xerographic Supplies Corp. v. Hertz Commercial Leasing Corp.*, 386 So. 2d 299, 300 (Fla. 3d DCA 1980) (defendant could not be liable for breach of implied warranty because agreement disclaimed all implied warranties). Therefore, Plaintiffs' implied warranty claims are barred.

The express warranty claims should be dismissed as well.  The Building Agreement between the parties expressly limits Aranda's liability for guarantees or warranties to one year from the date a home was delivered.  *See* Motion Exh. A at 3 (guaranteeing "all workmanship and material" for "one year from date of delivery.").  Here, Plaintiffs signed the Building

Agreement with Aranda on February 23, 2005 and received a certificate of occupancy for their home on July 26, 2006.  They have not alleged that they experienced a defect within the applicable limited warranty periods. "[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects—defects that may exist before, but typically are not discovered until after, the expiration of the warranty period." *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (3d Cir. 1992) (citing numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period but did not manifest until after warranty period had expired); *see also Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 616-617 (3d Cir. 1995) ("[L]atent defects discovered after the term of the warranty are not actionable." (citation omitted)); *Brisson v. Ford Motor Co.*, 349 Fed. Appx. 433, 434 (11th Cir. 2009) (affirming dismissal of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period") (Florida law); *accord McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488-T-17EAJ, 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009) (holding that statute of limitations for warranty claim "cannot begin to run later than the expiration of the warranty as the warrantor did not expressly agree to provide warranty coverage beyond this date").

> b.  *In any event, Plaintiffs cannot maintain a claim for breach of warranty of merchantability or of fitness for a particular purpose.*

There are two more reasons to dismiss Plaintiffs' implied warranty claims.  First, as a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by Aranda.  That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant."  *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re*

*Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

Aranda is not bound by any implied warranties because it is not considered a merchant under Florida warranty law.  Aranda contracts with its clients to provide a service: home construction.  That is why the contract is called a "Building Agreement" and not a "purchase agreement."  Because the inclusion of drywall in Plaintiffs' home was incidental to the construction services that Aranda rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in these circumstances.  *See In re Sunshine-Jr.*, 240 B.R. at 794 ("[A]lthough construction contracts . . . typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, the claim for implied warranty of fitness for a particular purpose (Cmplt. ¶ 79) cannot survive because Plaintiffs cannot  allege that the drywall in their homes was unfit for a particular or unusual purpose different from that for which drywall is ordinarily used.  The Court has already determined that "[t]he Chinese drywall stands just as any other functioning drywall, serving its intended structural purpose."  MDL No. 2047 Order & Reasons at 23 (emphasis added); *id.* at 18 ("[T]he Chinese drywall in the instant matter is operating as intended[.]").  This adjudicated fact is, by itself, fatal to the claim for breach of the implied warranty of fitness for a particular purpose.[7]

---

[7]     *See Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding dismissal of particular purpose warranty claim where plaintiff did not "allege a particular or unusual use different from the purpose for which the item sold was

6.      **Plaintiffs' breach of contract claim (Count VII) must be dismissed.**

Plaintiffs have failed to allege viable claims for breach.  The Omnibus Complaint states only that Aranda "contracted with the [Plaintiffs] to construct homes that would be free of defects."  Cmplt. ¶ 102.  This assertion is insufficient on its face, because it fails to identify the source of Aranda's alleged duty to construct a home "free of defects."   If Plaintiffs hope to salvage their contract claim, they must, at the very least, "identify the relevant portion of the contract breached."  *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co.*, No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, *4 (M.D. Fla. Nov. 6, 2008); *see Insurance Concepts & Design, Inc. v. Healthplan Serv., Inc.*, 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached").

While Plaintiffs will undoubtedly try to justify their skeletal allegations by pointing to the "Omnibus" nature of the Complaint, the decision to join this litigation does not excuse Plaintiffs from satisfying basic pleading standards.  It does not cloak them with immunity from the requirements of due process.  The concern is not merely academic, either.  Contrary to the boilerplate allegation in the Omnibus Complaint, Aranda did not agree to build a home "free of defects."  Cmplt. ¶ 102.  *See Lonnie D. Adams*, 714 So. 2d at 1179  (holding that although contractor had a duty to perform contract in a "workmanlike" manner, there was no implied duty to deliver defect-free windows to the homeowner-plaintiffs).  Plaintiffs must base their breach of contract claim on an actual contract duty between the parties.  Unless and until they do that, their breach of contract claim cannot survive.

7.      **Plaintiffs cannot state a claim for private nuisance (Count XI).**

Plaintiffs' private nuisance claim (Count XI) would fail even if it was not barred by the

---

ordinarily used"); *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

economic loss rule.  *See* Fla. 15th Cir. Omnibus Order at 7 (dismissing all plaintiffs' private nuisance claims against homebuilders because "neither [Florida] case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance"); *accord In re: Chinese Drywall Litig.*, No. 10- 28090 (Fla. 17th Jud. Cir. Feb. 4, 2011) ("Fla. 17th Cir. Order) (dismissing a private nuisance claim based on defective drywall: "This Court finds Judge Kelley's ruling [in the *Bennett* case] to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case.").  An action for private nuisance requires the claimant to establish an injury to his or her own property <u>in connection with the use of the real property of someone else</u>.  *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").  However, Plaintiffs do not allege that their purported injuries resulted from real property owned by Aranda.  To the contrary, the nuisance claim is predicated entirely on the allegation that certain conditions existing on the "structures owned by Plaintiffs" are to blame.  Cmplt. ¶ 137.  That allegation simply does not state a claim for private nuisance.  *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

### 8.     Plaintiffs cannot bring a claim for unjust enrichment (Count XII).

Plaintiffs' unjust enrichment claim (Count XII) fails for multiple reasons.  For one, Plaintiffs' Building Agreement with Aranda forecloses a quasi-contractual theory.  "It is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available

where there is an adequate legal remedy." *American Honda Motor Co. v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  Where (as here) the plaintiffs admit to the existence of a contract, "claims arising out of that contractual relationship will not support a claim for unjust enrichment."  *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); *Validsa, Inc. v. PDVSA Serv., Inc*., 632 F. Supp. 2d  1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties "admitted to the existence of express contracts").[8]

In addition, Plaintiffs fail an important element of a claim for unjust enrichment—that any purported enrichment be unjust. The elements of unjust enrichment are that "(1) <u>the plaintiff has conferred a benefit on the defendant</u>; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that <u>it would be inequitable for the defendant to retain the benefit</u> without paying fair value for it." *Commerce Partnership 8098 Ltd. v. Equity Contracting Co*., 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp*., 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005). As to the fourth element, there is nothing inequitable or unjust about permitting Aranda to retain whatever benefit it received for building the home.  After all, it cannot be disputed that Aranda paid a third party (*i.e.*, a subcontractor, supplier or distributor) for the drywall in question.  As the Florida appellate court explained in *Maloney v. Therm Alum Industries, Corp.*, "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, <u>if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit</u>." 636 So. 2d 767, 770 (Fla. 4th DCA 1994), *overruled on other grounds by*,

---

[8]    Even if the existence of an express contract does not bar Plaintiffs' unjust enrichment claim against Aranda, the economic loss rule would.

*Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities).

Thus, Plaintiffs' claim for unjust enrichment is barred.

9. **The Omnibus Complaint fails to state a claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIII).**

In the overbroad style that is the hallmark of the Omnibus Complaint, Plaintiffs also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*. ("FDUTPA"). Cmplt. ¶ 148. A FDUTPA claim comprises three distinct elements: (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages." *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). "In light of this trend, <u>claims arising under the FDUTPA must be pled with particularity</u>." *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc*., No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities). At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard.  Indeed, it alleges <u>no specific facts</u> in support of Plaintiffs' FDUTPA claim.  *See* Cmplt. ¶¶ 147-151.  It does not identify a single instance in which Aranda – by its words or conduct – deceived Plaintiffs or treated them unfairly.  Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b).  *See Florida Digital Network, Inc. v. N. Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[9]

Plaintiffs' failure, however, is not merely one of pleading.  Their FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to them.  *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury).  Because Aranda provided services – namely, the construction of a house – Plaintiffs can establish "actual damages" <u>only</u> by showing a difference between the "market value" of the services that Aranda actually provided and the services that

---

[9]     Plaintiffs' FDUTPA claim would be inadequately pled even if Rule 9(b) did not apply.  A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly" and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc.*, No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

Aranda was required to provide.[10]   *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties" (citations omitted)).

As a matter of law, Plaintiffs cannot make this showing.  There is zero evidence – and Plaintiffs do not appear to suggest – that the manner in which Aranda <u>constructed</u> the homes was in any way responsible for the allegedly defective drywall.  The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." MDL No. 2047 Order & Reasons at 18-19.

So even if Plaintiffs could conceivably replead their FDUTPA claim with the particularity demanded by Rule 9(b), they have no hope of establishing the "actual damages" component of that claim.  Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fl. 1995).  Count XIII must be dismissed for this reason as well.

### 10.   Plaintiffs' claim for equitable relief and medical monitoring (Count XIV) cannot go forward against Aranda.

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XIV).  This hybrid, catchall-type claim seeks, among other things, an order that Aranda

---

[10]      The same would hold true if Aranda had delivered a "product"—*i.e.*, a completed home—rather than providing a "service."  To recover under FDUTPA, Plaintiffs would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

"buy back or rescind" its contracts and "create, fund, and support a medical monitoring program."  Cmplt. ¶ 155.  This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based.  Because Plaintiffs' substantive claims are due for dismissal, so too are their derivative claims for injunctive relief.  *See*, *e.g.*, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support for an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiffs have failed to state more than a conclusory allegation regarding the availability of an adequate legal remedy or how Plaintiffs would suffer irreparable harm.  Injunctions under both federal and Florida law require these elements.  *See*, *e.g.*, *Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted).  Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory and statutory damages" – are inadequate or why Plaintiffs should be entitled to the extraordinary remedy of an injunction.  *See*, *e.g.*, *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th

Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.");

*accord City of Meridian v. Algernon Blair, Inc*., 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," it is unclear whether Florida law permits this cause of action.  The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring.  It is hardly clear, then, that these Plaintiffs can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim.  At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999).  The injury in a medical monitoring case is defined as the cost of periodic medical examinations necessary to detect the onset of physical harm.  *Id*.

The Omnibus Complaint makes no attempt to properly allege these elements.  Instead, Count XIV sets forth a series of legal conclusions—*e.g.*, "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct"—without a shred of factual detail.  The Complaint fails to identify an actual medical condition that Plaintiffs have developed due to their drywall; nor does it identify a monitoring procedure for any supposed condition. Instead, the Complaint only states that "exposure <u>may</u> lead to serious health

problems, diseases, and medical conditions" or an "increased <u>risk</u> of contracting a serious latent disease." Cmplt. ¶¶ 160, 162 (emphasis added).  Plaintiffs would have this Court speculate about a theoretical risk of undisclosed ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring.  It states a series of legal conclusions, and those "do not suffice."  *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate).  The glaring deficiencies highlighted above make the final Count subject to dismissal on the pleadings.  *See Jacobs v. Osmose, Inc*., No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc*., 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc*., 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

Finally, Plaintiffs' claim for medical monitoring is intercepted by the economic loss rule, as the Plaintiffs were in direct privity with Aranda.  The allegedly hazardous "exposure" upon which the medical monitoring claim is based was caused, according to the Omnibus Complaint, by Aranda's "negligent and otherwise tortious conduct."  Cmplt. ¶ 159.  But the contractual

privity economic loss rule precludes Plaintiffs from circumventing their contract through allegations in tort.[11]

## II.  CONCLUSION

WHEREFORE, for the reasons stated in the Motion and the foregoing Memorandum of Law, Defendant Aranda Homes, Inc. respectfully requests that the Court enter an order dismissing the claims against it pursuant to Fed. R. Civ. Pro. 12(b)(6), and awarding Aranda its fees in defending this action pursuant to the Building Agreement and pursuant to Florida's Deceptive and Unfair Trade Practices Act.

Dated:  July 19, 2011                              **AKERMAN SENTERFITT**

                                   BY:  /s/  Valerie Greenberg
                                          Valerie Greenberg, Esq.
                                          Fla. Bar No. 026514
                                          Stacy Harrison, Esq.
                                          Fla. Bar No. 44109
                                   One Southeast Third Avenue, 25th Floor
                                   Miami, FL  33131-1714
                                   Phone:  (305) 374-5600
                                   Fax:  (305) 374-5095
                                   Email:  valerie.greenberg@akerman.com
                                   Email:  stacy.harrison@akerman.com

                                   *Attorneys for Aranda Homes, Inc.*

*Co-Counsel for Aranda Homes, Inc.*

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534

---

[11]    While Plaintiffs have mechanically alleged the basic elements of a claim for medical monitoring, Aranda disputes the availability of this unusual form of relief, particularly because the Omnibus Complaint does not name a single medical condition caused by the allegedly defective drywall, let alone identify a medical procedure that could monitor or treat such condition.  *See Petito v. A.H. Robins Co., Inc*., 750 So. 2d 103, 106 (Fla. 3d DCA 1999) (setting forth seven elements for cause of action for medical monitoring).

Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
         Susie.morgan@phelps.com
         Skylar.rosenbloom@phelps.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Memorandum of Law in Support of Aranda Homes, Inc.'s Motion to Dismiss With Prejudice the Claims Brought Against it in the Haya Class Action Complaint (Omni IX)* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA   70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA  70163 (kmiller@frilot.com), by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of July, 2011.

/s/      Valerie Greenberg