UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL CASE NO.: 2047<br><br>SECTION: L<br><br>Honorable Eldon E. Fallon<br><br>MAG: JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br>WENDY LEE HOBBIE, ET. AL. v. RCR HOLDINGS II, LLC,  ET. AL.<br><br>CASE No.   2:10-cv-1113 (E.D.LA.) | |

_____/

**ARCH INSURANCE COMPANY'S MOTION TO DISMISS
THIRD-PARTY COMPLAINT OF RCR HOLDINGS, LLC
OR ALTERNATIVELY TO TRANSFER VENUE
AND SUPORTING MEMORANDUM OF LAW**

Third-Party Defendant ARCH INSURANCE COMPANY ("ARCH"), pursuant to Rule 12, Fed.R.Civ.P., hereby files its Motion to Dismiss the Third-Party Complaint of RCR HOLDINGS, II LLC ("RCR"), and in support shows the Court as follows:

**INTRODUCTION AND SUMMARY**

RCR's attempt to add ARCH as a party runs contrary to RCR's determined effort to sue and keep on suing ARCH in Florida courts.  Having been stymied by decisions of the Florida courts, RCR wants to shop this case to this Court hoping for more favorable progress.  RCR's attempt to re-file its Florida litigation must fail due to lack of subject matter jurisdiction.  RCR as a state court plaintiff cannot remove its own action, or accomplish the equivalent of removal by filing a duplicative action.  Nor can RCR use the MDL procedures for pretrial venue to create

jurisdiction and venue in this Court over a state court action.  In addition, this Court should exercise *Colorado River* abstention over RCR's claim.  The case against ARCH is, indeed, separate and distinct from the Hobbie class action.  RCR has said this many times.  All of the *Colorado River* factors, and especially those factors concerned with preventing forum shopping and stopping the circumvention of the removal statutes, either weigh strongly in favor of abstention or are neutral.  No factor counsels this Court to retain jurisdiction.

In the alternative, and only if this Court decides that it has jurisdiction, this Court should transfer venue over RCR's claim to Florida.  All of the factors that the Fifth Circuit evaluates when considering proper venue require transfer of this case to Florida.

## PROCEDURAL HISTORY

### I. The Florida Litigation As To RCR and Coastal, and RCR's Decision Not To Remove The Case To Federal Court.

These proceedings had their origin in a class filed in the Circuit Court for Palm Beach County, Florida on September 24, 2009 (the "Hobbie matter").  Various unit owners at the Villa Lago Condominium (the "Project") sought damages against RCR, as developer, and Coastal Construction ("Coastal"), as the general contractor, for damages allegedly arising from the installation of "Chinese Drywall" in the condominium units.

RCR did not file any cross-claims against Coastal, nor did RCR seek to file any third-party action against ARCH, in the Hobbie matter.  Nor did RCR seek to invoke federal jurisdiction under the Class Action Fairness Act so as to remove the case to federal court.  RCR was content, even willing, to have the Florida Court adjudicate the claims.

The Hobbie plaintiffs filed a second amended Complaint on January 12, 2010.  The Second Amended Complaint added as defendants Banner Supply and various other suppliers of

drywall to the Project.  On February 26, 2011, Banner Supply removed the Hobbie matter to the U.S. District Court for the Southern District of Florida, pursuant to the Class Action Fairness Act and 28 U.S.C. 1332(d).  The Southern District, *sua sponte*, referred the matter to the JPML for transfer to this Court, for consolidated pretrial proceedings as a "tag along" action to the Chinese Drywall multi-district litigation.

In the state court action, RCR had filed a Motion to Stay or Abate the action.  RCR's Motion was based on a Florida Statute, Chapter 558, that requires parties to a construction dispute to engage in various investigations and submit proposals for resolving the disputes, as a condition precedent to commencing litigation.  The removal of the Hobbie matter carried RCR's Motion to Stay or Abate to this Court, where it remains pending.  Thus, RCR is simultaneously asking this Court for a complete stay or abatement as to all claims against RCR, while simultaneously seeking to file third party actions, including the Complaint against ARCH.

## II. RCR Elects Florida State Court And Repudiates The Federal Forum.

RCR had asserted no claim against Coastal or ARCH in the Hobbie matter, either before or after removal.  Instead, RCR sued ARCH separately in the Florida court on June 13, 2010, nine months after the Hobbie action commenced and three months after the removal.  RCR alleged breach of the Performance Bond that ARCH had provided on behalf of Coastal for the Project.  RCR did not join Coastal in this action.[1]

Thus, RCR was attempting to litigate the case "backwards" by suing Coastal's surety, who is only secondarily liable, without ever having asserted a claim against Coastal itself.

On October 28, 2010, ARCH filed a motion to stay the Florida action.[2]  The basis for the motion was that, as surety, ARCH's liability to Coastal was only secondary, and completely

---

[1] RCR's State Court Complaint against ARCH is filed as Exhibit "A" to this Motion.
[2] ARCH's Motion to Stay ("ARCH Stay Motion") is filed as Exhibit "B" to this Motion.

3

derivative of Coastal's liability to RCR. (ARCH Stay Motion at    ). By splitting its cause of action into two, RCR was improperly attempting to rush to judgment against ARCH, without even joining Coastal as a party. ARCH pointed out that Coastal's liability to RCR was already an essential issue to be litigated in the Hobbie matter, which had been removed. ARCH also argued that, because RCR was requesting a stay of all federal proceedings against RCR, there was no basis for any adjudication of ARCH's liability when RCR was not even going to litigate its claims against Coastal. (ARCH Stay Motion at   ). ARCH requested the Florida court to stay the action pending the determination of this threshold issue, before taking up the subject of whether ARCH might have independent defenses under its Bond to RCR's claim. (ARCH Stay Motion at    ). In sum, the stay ARCH requested was not because the Hobbie matter would adjudicate ARCH's liability, but because it would adjudicate a threshold issue to ARCH's liability – whether Coastal defaulted on the construction contract.

*RCR opposed any stay of the Florida action.* RCR argued that its case against ARCH had nothing to do with the Chinese Drywall litigation and must be independently decided in the Florida courts[3] (RCR Stay Memo. at 3-4). More important, RCR stated that it had a specific reason for litigating in the Florida court: the fact that *this Court* was not dedicating sufficient resources to the Chinese Drywall MDL. RCR specifically complained about this Court's "over congested federal docket" (RCR Stay Memo. at 1, 2, 3), and this Court's alleged inability to reach or adjudicate the Hobbie matter (RCR Stay Memo. at 6). RCR stated its position that the federal court was an inadequate forum repeatedly and strongly: "It is hard to imagine just how much more congested a federal court docket could be than Judge Fallon's docket . . . there is no

---

[3] RCR's Memorandum In Opposition to ARCH's Motion for Stay ("RCR Stay Memo.") is filed as Exhibit "C" to this Motion.

reason to think that the Chinese Drywall cases will be resolved within even the next few years." (RCR Stay Memo. at 6).

The Florida court declined RCR's request to litigate the case backwards. On December 20, 2010, the Florida court issued an Order Granting ARCH's Motion to Stay[4]. The Court noted that ARCH's liability to RCR was "contingent upon, and derivative from, Coastal's liability to RCR under the bonded contract." (Florida Stay Order p. 3). The Florida court recognized that litigating the claim against ARCH would necessarily entail litigating the claim between RCR and Coastal (Florida Stay Order p. 3) – the very claim RCR was asking this Court to stay. (Florida Stay Order p. 4). The Florida court expressly noted that one of its concerns was the prevention of forum shopping, (Florida Stay Order p. 3), and expressed its view that this Court was devoting sufficient resources to allow the threshold issues between RCR and Coastal to be litigated without undue delay. As a result, the Florida court retained jurisdiction over the action, but stayed the case so that this Court could resolve the threshold issue of whether Coastal had any liability to RCR in the Hobbie matter.

Having excluded ARCH from the Hobbie matter, having deliberately chosen the Florida forum to sue ARCH by disparaging the Federal courts, having tried to push the Florida case to trial without ever litigating (and actually seeking to stay litigation of), its claims against Coastal, and, finally, having been frustrated by the Florida court, RCR now is shopping the case to this Court.

On May 5, 2011, RCR filed its Motion for Leave to file Third Party Complaint against Arch Insurance Co., and Incorporated memorandum of Law alleging breach of Performance

---

[4] The Florida Stay Order is filed as Exhibit "D" to this Motion.

5

MDL No. 3047<br>Case No. 2:10-cv-1113

Bond relative to the Project in the MDL Hobbie Matter (the "third party federal action"). The Third Party Complaint is substantively identical to RCR's Florida action.

## ARGUMENT

### I. THE THIRD PARTY COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

#### A. No Jurisdiction Under 28 U.S.C. 1332(d).

In addition, the only basis for federal jurisdiction in this action is the Class Action Fairness Act, 28 U.S.C. 1332(d). ARCH submits that this action is subject to mandatory remand to state court because it does not meet the elements for federal jurisdiction under 28 U.S.C. 1332(d)(3) and (4). This issue must be resolved by discovery as to the citizenship of the purported class plaintiffs.

#### B. No Jurisdiction Due To RCRs' Attempted Circumvention Of The Removal Statute.

RCR, having waived federal subject matter jurisdiction, is now attempting to "remove" its prior state court action to federal court, under the guise of re-filing the identical action in this Court. This ploy for creating jurisdiction, while creative, has been rejected by the federal courts:

> In *Oregon Egg Producers v. Andrew,* 458 F.2d 382 (9th Cir.1972), we categorically stated that "[a] plaintiff who commences his action in a state court cannot effectuate removal to a federal court even if he could have originated the action in a federal court and even if a counterclaim is thereafter filed that states a claim cognizable in a federal court." *Id.* at 383. Had AIU merely attempted to remove the New York state court action to federal district court in New York, it is indisputable that this would have been improper under 28 U.S.C. § 1441 and that the federal court would have lacked jurisdiction.
>
> However, the difficulty arises in this case because AIU did not actually remove the original suit to federal court. Instead, AIU filed a second suit in federal court, based on the same facts and claims as the first suit. The second suit can be labeled a "repetitive lawsuit"-a parallel action brought by the same plaintiff in a second forum. *See* Note, *Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of Colorado River,* 44 U.Chi.L.Rev. 641,

6

666-67 (1977); *see also Ryder Truck Rental,* 554 F.Supp. at 280, n. 7. The real issue in this case becomes whether AIU should be blocked from filing this repetitive suit.

\*       \*       \*       \*

In *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941), the Supreme Court analyzed the legislative history of the removal statute then contained in 28 U.S.C. § 71 and now embodied in 28 U.S.C. § 1441. The Supreme Court quoted a House Report stating that "it is believed to be just and proper to require the plaintiff to abide his selection of a forum." H.Rep. No. 1078, 49th Cong., 1st Sess. 1 (1887), *quoted in Shamrock Oil,* 313 U.S. at 106, n. 2, 61 S.Ct. at 871 n. 2. After assessing the legislative history of the removal statute in 28 U.S.C. § 71, the Supreme Court found that Congress had intended to eliminate the automatic right of a plaintiff to remove. The only relevant difference between the removal statute the Supreme Court was construing and the current removal statute in 28 U.S.C. § 1441 is that the statute before the Supreme Court allowed the plaintiff to remove in cases where local prejudice against the plaintiff existed. The current removal statute has eliminated even this limited right of removal by a plaintiff. *See* 28 U.S.C. § 1441. In short, both these codifications of the removal statute seem to reflect a Congressional intent that a plaintiff should not be permitted to alter the forum that it selects to litigate its claim against a particular defendant. The same rationale applies to the present case, in which AIU is trying to alter the forum after two-and-a-half years of litigation in state court.

Similarly, in *Ryder Truck Rental,* the court noted that the same policy considerations reflected in the restrictions on removal should come into play in repetitive lawsuit situations. 554 F.Supp. at 280, n. 6. Noting that a plaintiff in a diversity suit can choose between a state and federal forum when it initiates the suit, the court concluded, "Having elected state court, plaintiff should be bound by its choice absent compelling reasons to seek relief in another forum." *Id.* at 280.

After considering the rationale set forth in the removal cases discussed above, we find that AIU should not be permitted to accomplish, by the *refiling* of its state court complaint, what would clearly be prohibited if AIU tried to *remove* to state court. The district court was justified in dismissing AIU's complaint for this reason as well as for abstention reasons

*American International Underwriters, (Philippines), Inc. v. The Continental Insurance Company,* 834 F.2d 1253, 1260-61 (9th Cir. 1988). *See also, Rodgers v. Enterprise Rent-A-Car,* 2002 WL 32668181 (N.D.Tex.2002)(a Plaintiff's attempt to remove its state court action to federal court "does not properly confer federal jurisdiction").

## II. THE MDL STATUTE DOES NOT ALLOW RCR TO BRING ITS FLORIDA STATE COURT ACTION INTO THE MDL PRETRIAL PROCEEDINGS.

28 U.S.C. 1407 is a venue statute, which is applicable only to consolidated pretrial proceedings and not the actual trial of the individual actions. The MDL statute does not create a basis for federal court jurisdiction. Accordingly, under 28 U.S.C. 1407, state court actions cannot be consolidated into an MDL proceeding. *See, In re Celotex Corp. "Technifoam" Products Liability Litigation,* 68 F.R.D. 502 (J.P.M.L. 1975)(" The Panel, of course, does not have the power under Section 1407 to consider the propriety of coordinated or consolidated pretrial proceedings in state court actions."); *Coy Chiropractic Health Center, Inc. v. Travelers Cas. & Surety Co.*, 2007 WL 2219102 (S.D.Ill. 2007)("the JPML cannot transfer actions that are pending in state court" citing *Celotex*).

Allowing RCR to add ARCH as a party in MDL 2407 raises the identical policy concerns that led the court in *American International, supra*., to forbid jurisdiction under the removal statute 28 U.S.C. 1441. RCR intentionally waived federal jurisdiction over its claims against ARCH. RCR chose the Florida forum for strategic reasons (more on this below regarding abstention). Now, RCR wants to pluck the case from Florida state court and send it to the MDL. Because the law would preclude RCR (or the MDL panel) from doing this directly, RCR attempts to accomplish not only a transfer but a "removal" as well, under the procedural guise of adding parties. The court in *American International* rejected a plaintiff's filing of a "repetitive action" as a strategem for creating federal jurisdiction over the Plaintiff's state court case, under 28 U.S.C. 1441. For the same reasons, this Court should reject RCR's repetitive action as a strategem for transferring RCR's state court case to federal court under the guise of 28 U.S.C. 1407. Thus, if RCR had attempted to remove the Florida action to U.S. District Court, the

8

federal court would not have had jurisdiction to entertain the case. Under *American International, supra,* the court also lacks jurisdiction over RCR's attempt to circumvent the removal statute by filing a duplicative action.

> III. **THE FEDERAL COURTS SHOULD ABSTAIN FROM HEARING RCR'S CLAIM BECAUSE RCR HAS ALREADY COMMENCED ITS CLAIM IN FLORIDA COURTS.**

The background of RCR's claim against ARCH, which is currently pending in Florida Courts at RCR's own insistence, strongly supports abstention by this Court not only under the factors originally set forth in *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976), but also under the Supreme Court's disapproval of forum shopping in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927 (1983)("[t]he reasoning of the Courts of Appeals in this case and in *Calvert* -that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River* -has considerable merit.") *Id*. at p. 17, n. 20. *See also, Allen v. Louisiana State Board of Dentistry*, 835 F.2d 100, 105 (5th Cir. 1988)(vexatious or reactive nature of the federal litigation is an additional factor for Colorado River abstention).

This Court is well familiar with *Colorado River* abstention, and has summarized the elements as follows:

> This Court may abstain from the exercise of jurisdiction to promote wise judicial administration, conservation of judicial resources, and comprehensive disposition of actions when concurrent proceedings exist. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976). However, abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly placed before it." *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188-89 (1959). As such, the use of the doctrine is the exception as opposed to the rule. *Colorado River,* 424 U.S. at 813.
>
> Abstention under the *Colorado River* doctrine requires an initial showing that the state and federal court proceedings are "parallel." *Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.,* 903 F.2d 352, 360 (5th Cir.1990). Actions

are parallel when they involve the same parties and the same issues. *See Republicbank Dallas, Nat'l Ass'n v. McIntosh,* 828 F.2d 1120, 1121 (5th Cir.1987).

*Mahbod v. New York Life Ins. Co.,* 2006 WL 2513423 (E.D.La.). There is no dispute that RCR's State and Federal actions are "parallel." The parties are identical, the issues are exactly the same, and the allegations are almost verbatim duplications of one another.

Thus, the only issue in this case is whether the *Colorado River* factors weigh in favor of abstention:

> The *Colorado River* doctrine next requires an examination of a variety of factors in order to determine if exceptional circumstances exist that justify a decline of jurisdiction. These factors include: (1) whether either court has assumed jurisdiction over a *res;* (2) the relative inconvenience of the forums; (3) whether piecemeal litigation can be avoided; (4) the order in which the state and federal courts obtained jurisdiction; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) whether the rights of the party invoking federal jurisdiction can be protected in state proceedings. *Colorado River,* 424 U.S. at 817-19; *Murphy v. Uncle Ben's, Inc.,* 168 F.3d 734, 738 (5th Cir.1999). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River,* 424 U.S. at 818-19. In assessing whether abstention is warranted, the federal court must keep in mind that "the balance [should be] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16 (1983).

*Mahbod v. New York Life Ins. Co.,* 2006 WL 2513423 (E.D.La.). In addition to these "traditional" factors, courts have added the factors of: (7) whether the federal litigation is "vexatious or reactive" to state court rulings, *Allen v. Louisiana State Board of Dentistry, supra,* and (8) whether the federal litigation is the product of plaintiff forum-shopping in violation of the policy of the removal statute that a plaintiff cannot remove its own case, *AIU, supra.*

Due to their decisive weight in favor of abstention, ARCH will address these last two factors first.

MDL No. 3047
Case No. 2:10-cv-1113

### A. Preventing Reactive Federal Litigation In The Face Of Adverse State Court Rulings.

RCR's Third-Party Complaint is an attempt to circumvent the rulings of the Florida Court, and essentially "remove" its own case to Federal Court for a more favorable forum. RCR filed its suit against ARCH in State Court on purpose. RCR's goal was to push the State litigation to trial in advance of the federal courts' decision as to whether Coastal had in fact breached the bonded contract. RCR could have chosen the federal forum but did not, because it explicitly stated that the federal forum would not act quickly enough to satisfy RCR.

The State Court, however, has done the following:

1. Refused to litigate the case "backwards" by deciding ARCH's secondary liability to RCR under the Bond in advance of litigating Coastal's primary liability to RCR;

2. Deferred, on comity grounds, to the outcome of the federal courts' decision as to the threshold issue of Coastal's liability to RCR, which was pending in federal court at the time RCR sued ARCH in Florida court; and

3. Retained its own jurisdiction to adjudicate any remaining issues as to ARCH's liability to RCR (such as defenses under the Bond or at common law) after the federal courts have decided the threshold issue of Coastal's liability (if any).

With its strategy frustrated by the Florida Court, RCR now seeks to file a completely identical action in this Court, having previously waived federal jurisdiction, to attempt its very same strategy of improperly accelerating the litigation against ARCH.

The best example of this is that RCR has apparently induced this Court to issue a "Scheduling Order" that limits discovery as to all other defendants to "threshold" jurisdictional issues, but requires ARCH to submit to and to conduct discovery related to all issues of breach of contract under ARCH's Bond. ***Because ARCH's liability is derivative from Coastal's liability, this Order essentially requires full litigation of the entire case by December 2011.*** Significantly, RCR procured this Scheduling Order when ARCH had not appeared in the action.

11

Equally significant, RCR has requested this extraordinary action while simultaneously seeking to stay all litigation against it, and by definition all litigation between it and Coastal. How is this Court to adjudicate ARCH's liability to RCR in advance of determining Coastal's liability (if any) to RCR? That is a question for which RCR offers no answer. The Florida court rejected this ploy, and so should this Court.[5]

RCR's tactics are the very definition of "reactive" federal litigation designed to avoid adverse state court rulings or adverse state court procedures. *See, e.g., AIU, supra* (filing federal action to avoid more restrictive state court rules of evidence was reactive litigation); *Villa Marina Yacht Sales v. Hatteras Yachts*, 947 F.2d 529 (1st Cir. 1991)(federal filing was "reactive" for abstention purposes when it followed state court's refusal to enter preliminary injunction); *Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989)(filing identical federal action after state court issued a stay of proceedings was reactive litigation justifying abstention). *See also Lac Real Estate Holdings v. Biloxi Marsh Lands Corp,* 320 Fed.Appx. 267, 2009 WL 937165 (5th Cir 2009)(unpublished)(filing of federal action to avoid state court's rules as to which order portion of action would be tried first was reactive litigation justifying abstention).

### B. Preventing Attempts To Circumvent The Removal Statute.

The preservation of the policies and proper functioning of the removal statute is also an important factor in *Colorado River* abstention. The court in *AIU, supra*, extensively discussed these policies as set forth in Section I, *supra.* This rule has become widespread across the federal appellate circuits. *See, Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 14 (1st Cir.1990); *Telesco v. Telesco Fuel & Masons' Materials, Inc.,* 765 F.2d 356, 363 (2d Cir.1985); *LaDuke v. Burlington N.R.R. Co.,* 879 F.2d 1556, 1561 (7th Cir.1989). See also,

---

[5] ARCH, by separate motion, will be seeking to set aside the Scheduling Order insofar as it pertains to the merits of "breach of contract" claims or defenses involving ARCH.

*Lorentzen v. Levolor Corp.,* 754 F.Supp. 987, 993 (S.D.N.Y.1990) (staying the federal proceeding in light of, *inter alia*, the plaintiff's attempt "to change his original choice of forum in violation of the federal policy against plaintiff removal and forum-shopping"); *Ryder Truck Rental v. Acton Foodservices Corp.*, 554 F.Supp. 277, 281 (C.D.Cal.1983) ("Having elected state court, plaintiff should be bound by its choice absent compelling reasons to seek relief in another forum."); *Ystueta v. Parris*, 486 F.Supp. 127, 128-29 (N.D.Ga.1980) (stating that Eleventh Circuit precedents permit a district court to stay a federal suit that is substantially duplicated by a pending state action between the same parties).

The identical concerns strongly weigh in favor of abstention in this case.

### C. Whether The Action Involves a *Res.*

Neither the State nor Federal actions involve a particular *res* or piece of property. Thus, this factor may weigh against abstention. *Mahbod, supra.*

### D. Relative Inconvenience of the Forums.

This factor strongly weighs in favor of abstention when the parallel State forum is not in geographic proximity to the Federal forum. *Mabod, supra.* In the present case, the construction project at issue is in Florida, the drywall at issue is in Florida, the tens of thousands (more likely hundreds of thousands) of documents related to the project are in Florida, the numerous (probably dozens) of witnesses with knowledge of events at the project are in Florida. These witnesses are beyond the geographic subpoena power of this Court. In fact, there is no connection at all between the witnesses and evidence and the State of Louisiana, or the boundaries of the Eastern District. To the contrary, the witnesses and evidence are in the Florida forum exercising jurisdiction, ***800 miles away***.

There is no question that this factor decisively weighs in favor of abstention.

### E. The Avoidance of Piecemeal Litigation.

The Florida court has decided to defer to the Federal courts on deciding the threshold issue of whether Coastal breached its contract with RCR. The Florida court has retained the jurisdiction to decide other defenses or issues related to ARCH's liability to RCR. Litigation of those issues in this action might lead to inconsistent results. Although duplicative litigation is not necessarily a factor in favor of abstention, the possibility of inconsistent outcomes, as the case is currently framed, is a factor that does weigh in favor of abstention. *Mahbod, supra.*

### F. The State Court Obtained Jurisdiction Prior To The Federal Court.

RCR filed the State court action against ARCH on June 11, 2010. On May 9, 2011, eleven months later, RCR filed its *Motion for Leave to File Third Party Complaint Against Arch Insurance Co.* in this federal action. By that time, the Florida court had evaluated the issues and determined how it wished to proceed in resolving the case. The Florida court had made its decision as which issues it would defer to the federal court, and which issues it would try on the merits after the federal litigation was over. In the present case, the RCR's federal complaint has only now been filed and absolutely no proceedings concerning ARCH have taken place. The more advanced status of the Florida case is a factor that weights in favor of abstention.

Furthermore, RCR has filed a *Motion to Abate* the MDL Hobbie Matter which, as recognized by the state court, "effectively put the brakes on its own affirmatiave claims against Coastal".[6] Given the priority of first filing, the State court's decision as to how it will proceed, and the fact that *RCR does not want the federal action to proceed at all*, the relative progress of the actions favors abstention.

---

[6] *See state court's Order Granting Motions for Stay*, 12/20/2010, p. 5.

14

### G.     Florida State Law Provides the Rule of Decision.

Both the state action and the federal third party action will be decided by the application of substantive Florida state law. The parallel actions involve breach of a performance bond relative to a condominium project located in the State of Florida. There are no federal questions or federal issues involved in the interpretation of a contract such as the performance bond and RCR makes no such allegation. Although, typically, the predominance of state law issues in diversity actions does not necessarily weigh in favor of abstention when the governing law is that of the state where the federal court sits, *Mahbo, supra,* the present case involves not the application of Louisiana law, with which this Court is familiar, but the application of Florida law. Thus, ARCH submits that the exclusive dominance of Florida law weighs in favor of abstention.

### H.     RCR Has Expressly Stated That *The Federal Forum Is Inadequate.*

Ordinarily, this factor can only be neutral or weigh against abstention (i.e. if the State forum is not adequate). *Mahbod, supra.* However, RCR has not only expressed a positive desire to litigate in the State court, *RCR has positively stated to the Florida court that the federal forum is inadequate to protect RCR's interests.* Under these circumstances, which are unprecedented, the "adequate forum" factor must strongly weigh *in favor* of abstention.

### I.     Principles of Comity Support Abstention.

"[I]n the interest of federal-state comity, a federal court can nevertheless stay a parallel proceeding to avoid interference and duplication of effort." *Mahbod, supra*. Although this is not a formal abstention "factor," this Court has considered it a legitimate concern. In this case especially, it is well within the case-specific flexibility to consider a number of different factors recognized by *Moses H. Cone Hospital, supra.* It should be noted that the Florida courts have

extended comity to the federal courts in this matter. The Florida court has recognized the ability of the federal court to adjudicate the threshold issue of Coastal's potential liability to RCR, due to the pending federal action. The Florida court, however, has retained to itself the power to adjudicate whether ARCH may still have defenses to liability based on the provisions of its Bond or common law suretyship defenses. Comity would suggest that this Court also respect the authority of the State court, applying Florida law, to determine that ARCH's liability to RCR cannot in advance of Coastal's potential liability to RCR.

### IV. IN THE ALTERNATIVE, AND ONLY IF THIS COURT DETERMINES THAT IS MAY EXERCISE JURISDICTION, VENUE OVER RCR'S CLAIM MUST BE TRANSFERRED TO FLORIDA.

There is no connection between this Federal Court and the cause of action raised in the Third Party Complaint. The cause of action under ARCH's Performance Bond accrued solely in the State of Florida. RCR is a Florida Corporation. Coastal is a Florida Corporation. The construction project was in Florida. All the witnesses and evidence are in Florida. All the pertinent documents are in Florida. A Florida state court has, at RCR's request, already exercised jurisdiction over the case. Governing principles of law mandate, the transfer of this case to Florida under 28 U.S.C. 1404.

RCR's claim against ARCH was not part of the proceedings transferred to this Court pursuant to MDL 2047. Because, however, this Court's authority to conduct pretrial proceedings includes the addition of parties, RCR has been able to file an "original" action against ARCH in this Court. This Court, therefore, must evaluate whether venue is proper under the 28 U.S.C. 1391, or whether venue must be transferred to the appropriate Federal District Court in Florida pursuant to 28 U.S.C. 1404.

Under 1391, venue against ARCH would be proper wherever personal jurisdiction would exist. Because ARCH is licensed to engage in the insurance business in Louisiana (and many other states), personal jurisdiction over ARCH, and venue over this action, would, technically, exist in this Court. However, as the Fifth Circuit has noted:

> Because large corporations, like Volkswagen, often have sufficient contacts to satisfy the requirement of § 1391(c) for most, if not all, federal venues, the general venue statute "has the effect of nearly eliminating venue restrictions in suits against corporations." 14D Wright, Miller & Cooper, *Federal Practice & Procedure* § 3802 (3d ed.2007). . . . Congress, however, has tempered the effects of this general venue statute by enacting the venue transfer statute, 28 U.S.C. § 1404. The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a). *See Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); *cf. Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

*In re Volkswagen of America, Inc.,* 545 F.3d 304, 313 (5th Cir. 2008). Thus, the Fifth Circuit has recognized that a Plaintiff's choice of venue is entitled to some deference but not enough to make transfer a heavy burden for defendants. *Id*. at 315.

Instead, venue must be transferred if the defendant can show the alternative forum is "clearly more convenient" than where the case was filed. *Id.* The Court adopted the following factors for evaluating proper venue:

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004) [hereinafter *In re Volkswagen I*] (*citing Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. 252). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

> Although the *Gilbert* factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive. Moreover, we have noted that "none ... can

17

be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir.2004).

*Id*. Virtually all of these factors weigh decisively for a transfer of venue to Florida.

The relative access to proof speaks for itself: the project is in Florida; the drywall at issue is in Florida; the documents related to the project are in Florida; and, the witnesses are in Florida. There is no evidence or proof at all within Louisiana. All of these factors weigh heavily in favor of transfer. *Volkswagen, supra* at 316. Similarly, the availability of compulsory process is not available for the potential Florida witness to compel their appearance either for discovery or for trial. *Id.* As to the cost of attendance for willing witnesses, the Fifth Circuit has set a "100 mile rule" under which the presence of witnesses more than 100 miles from the forum presumptively weighs in favor of transfer. *Id*. at 317. In the present case, West Palm Beach, Florida (where there is a federal courthouse that can receive this case) is approximately **800 miles** from this Court. Thus, all the private factors show Florida as a "clearly more convenient" forum for venue.

The "public interest" factors also favor transfer of venue to Florida. As for court congestion, that factor appears neutral, except that RCR has stated, in writing, that this Court is too congested to properly administer RCR's case. Thus, in this unique case, RCR must concede that the factor of docket congestion favors transfer of venue. As for local interest, that is clearly in the interest of Florida. The project is in Florida, ARCH issued a bond pursuant to the law of Florida, and the citizens of Florida have the key interest in how this construction dispute is resolved. *Volkswagen, supra* at 318 (the residents of the forum where the incident occurred have the only legitimate interest). Finally, Florida courts are undoubtedly very familiar with the law of suretyship that will apply in this action, as the State court's order clearly shows. There is no possibility that Louisiana law will apply, and this factor also supports transfer of venue.

Fifth Circuit cases are legion mandating transfer of venue in precisely these circumstances. *See, Volkswagen, supra*; *In re Nintendo Co., Ltd,* 589 F.3d 1194 (5th Cir. 2009); *In re Genentech, Inc,* 566 F.3d 1338 (5th Cir. 2009); *In re TS Tech USA Corporation*, 551 F.3d 1315 (5th Cir. 2008).

Finally, it must be noted that venue for pretrial proceedings should not be retained in this Court under 28 U.S.C. 1407. First and foremost, the JPML panel has *not* identified RCR's claim as a "tag along" action that is subject to transfer. In the Florida courts, RCR argued extensively that its claim against ARCH is not part of the Chinese Drywall litigation, and should not be transferred to the MDL. See, RCR's Memorandum In Opposition to ARCH's Motion for Stay at p. 3-6. The fact that this Court, pursuant to its power to conduct pretrial proceedings, may allow the addition of parties, does not mean that the substantive rights of the new parties regarding venue have already been decided. *RCR and ARCH both agree that RCR's claim is not and should not be part of the Chinese Drywall litigation*, and ARCH respectfully requests this Court to act accordingly and transfer venue of this action to Florida.

## **CONCLUSION**

WHEREFORE, ARCH prays for entry of an Order dismissing RCR's Third Party Complaint for lack of jurisdiction, or, in the alternative, transferring venue over this matter to the U.S. District Court for the Southern District of Florida.

MDL No. 3047
Case No. 2:10-cv-1113

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 28th day of July, 2011, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. The foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

**ETCHEVERRY HARRISON LLP**
Attorneys for Arch Insurance Company
150 South Pine Island Road
Suite 105
Fort Lauderdale, Florida 33324
Telephone: (954) 370-1681
Facsimile: (954) 370-1682

By: /s/ Edward Etcheverry
    Edward Etcheverry
    Fla. Bar No. 856517
    Guy Harrison
    Fla. Bar No. 368806