IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | * | MDL NO. 2:09-02047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to: | * | |
| SEAN AND BETH PEYTON, et al. v. | * | MAGISTRATE JUDGE WILKINSON |
| KNAUF GIPS KG, et al. | * | |
| CASE NO. 2:09-cv-07628 | * | |
| | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * | * | |

**INTERIOR/EXTERIOR'S ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFFS' CLASS ACTION COMPLAINT AND
INTERIOR/EXTERIOR'S CROSS-CLAIM AGAINST THE KNAUF DEFENDANTS**

**NOW INTO COURT**, through undersigned counsel, comes Interior/Exterior Building

Supply, L.P. and Interior/Exterior Enterprises, L.L.C. (collectively known as Interior/Exterior),

who files this Answer and Affirmative Defenses to Plaintiffs' Class Action Complaint

("Plaintiff's Complaint") and this Cross-Claims against the Knauf defendants:

**PART I – ANSWER**

For its Answer to Plaintiffs' Class Action Complaint, Interior/Exterior responds as

follows:

1.      The unnumbered paragraph of Plaintiff's Complaint requires no response from

this defendant.

2.      The allegations of Paragraph 1 are denied for lack of sufficient information to

justify a reasonable belief therein.

3.      The allegations of Paragraph 2 are denied for lack of sufficient information to

justify a reasonable belief therein.

4.      The allegations of Paragraph 3 require no response from this defendant.

5.     The allegations of Paragraph 4 are denied for lack of sufficient information to justify a reasonable belief therein.

6.     Interior/Exterior denies for lack of sufficient information to justify a reasonable belief the allegations contained Paragraphs 5-2072 which separately name each plaintiff to the complaint.

7.     The allegations of Paragraph 2073 do not require a response from Interior/Exterior.  However, should a response be required, the allegations in paragraph 2073 are denied for lack of sufficient information to justify a belief therein.

8.     The allegations contained in Paragraphs 2074-2079 do not require a response from Interior/Exterior as they relate to Knauf defendants. However, should a response be required, the allegations in paragraph 2074-2079 are denied for lack of sufficient information to justify a belief therein.

9.     The allegations contained in Paragraphs 2080-2101 do not require a response from Interior/Exterior as they relate to non-Interior/Exterior defendants.  However, should a response be required, the allegations in paragraph 2080-2101 are denied for lack of sufficient information to justify a belief therein.

10.     Interior/Exterior admits its corporate status; all other allegations contained in paragraph 2012 are denied.

11.     Interior/Exterior admits its corporate status; all other allegations contained in paragraph 2103 are denied.

12.     The allegations contained in Paragraphs 2104-2123 do not require a response from Interior/Exterior as they relate to non-Interior/Exterior defendants.  However, should a response be

required, the allegations in paragraph 2104-2123 are denied for lack of sufficient information to justify a belief therein.

13.     Interior/Exterior admits its corporate status; all other allegations contained in paragraph 2124 are denied.

14.     Interior/Exterior admits its corporate status; all other allegations contained in paragraph 2125 are denied.

15.     The allegations of Paragraph 2126-2557 do not require a response from Interior/Exterior as they relate to non-Interior/Exterior defendants.  However, should a response be required, the allegations in paragraph 2126-2557 are denied for lack of sufficient information to justify a belief therein.

16.     Interior/Exterior admits its corporate status; all other allegations contained in paragraph 2558 are denied.

17.     Interior/Exterior admits its corporate status; all other allegations contained in paragraph 2559 are denied.

18.     The allegations of Paragraph 2560-2609 do not require a response from Interior/Exterior as they relate to non-Interior/Exterior defendants.  However, should a response be required, the allegations in paragraph 2560-2609 are denied for lack of sufficient information to justify a belief therein.

19.     The allegations of Paragraph 2610 are denied for lack of sufficient information to justify a reasonable belief therein.

20.     The allegations of Paragraph 2611 are denied for lack of sufficient information to justify a reasonable belief therein.

21.     The allegations of Paragraph 2612 are denied for lack of sufficient information to justify a reasonable belief therein.

22.     The allegations of Paragraph 2613 are denied for lack of sufficient information to justify a reasonable belief therein.

23.     The allegations contained in Paragraph 2614 directed towards Interior/Exterior are denied.

24.     The allegations contained in Paragraph 2615 directed towards Interior/Exterior are denied.

25.     The allegations contained in Paragraph 2616 directed towards Interior/Exterior are denied.

26.     The allegations contained in Paragraph 2617 directed towards Interior/Exterior are denied.

27.     The allegations contained in Paragraph 2618 directed towards Interior/Exterior are denied.

28.     The allegations contained in Paragraph 2619 directed towards Interior/Exterior are denied.

29.     The allegations contained in Paragraph 2620 directed towards Interior/Exterior are denied.

30.     The allegations of Paragraph 2621 do not require a response from Interior/Exterior.

31.     The allegations of Paragraph 2622 do not require a response from Interior/Exterior.

32.     The allegations of Paragraph 2623 do not require a response from Interior/Exterior.

33.     The allegations of Paragraph 2624 do not require a response from Interior/Exterior.

34.     The allegations of Paragraph 2625 do not require a response from Interior/Exterior.

35.     The allegations of Paragraph 2626 do not require a response from Interior/Exterior.

36.     The allegations of Paragraph 2627 do not require a response from Interior/Exterior.

37.     The allegations of Paragraph 2628 do not require a response from Interior/Exterior.

38.     The allegations of Paragraph 2629 do not require a response from Interior/Exterior.

39.     The allegations of Paragraph 2630 do not require a response from Interior/Exterior.

40.     The allegations of Paragraph 2631 are denied for lack of sufficient information to justify a belief therein.

41.     The allegations of Paragraph 2632 are denied for lack of sufficient information to justify a belief therein.

42.     The allegations of Paragraph 2633 are denied for lack of sufficient information to justify a belief therein.

43.     The allegations of Paragraph 2634 are denied for lack of sufficient information to justify a belief therein.

44.     The allegations of Paragraph 2635 do not require a response from Interior/Exterior.

45.     The allegations of Paragraph 2636 are denied for lack of sufficient information to justify a belief therein.

46.     The allegations of Paragraph 2637 are denied for lack of sufficient information to justify a belief therein.

47.     The allegations of Paragraph 2638 are denied for lack of sufficient information to justify a belief therein.

48.     The allegations of Paragraph 2639 are denied for lack of sufficient information to justify a belief therein.

49.     Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2640.

50.     The allegations contained in Paragraph 2641 directed towards Interior/Exterior are denied.

51.     The allegations contained in Paragraph 2642 directed towards Interior/Exterior are denied.

52.     The allegations contained in Paragraph 2643 directed towards Interior/Exterior are denied.

53.     The allegations contained in Paragraph 2644 directed towards Interior/Exterior are denied.

54.     The allegations contained in Paragraph 2645 directed towards Interior/Exterior are denied.

55.     The allegations contained in Paragraph 2646 directed towards Interior/Exterior are denied.

56.     The allegations contained in Paragraph 2647 directed towards Interior/Exterior are denied.

57.     Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2648.

58.     The allegations contained in Paragraph 2649 directed towards Interior/Exterior are denied.

59.     The allegations contained in Paragraph 2650 directed towards Interior/Exterior are denied.

60.     The allegations contained in Paragraph 2651 directed towards Interior/Exterior are denied.

61.     The allegations contained in Paragraph 2652 directed towards Interior/Exterior are denied.

62.     The allegations contained in Paragraph 2653 directed towards Interior/Exterior are denied.

63.     The allegations contained in Paragraph 2654 directed towards Interior/Exterior are denied.

64.     Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2655.

65.    The allegations contained in Paragraph 2656 directed towards Interior/Exterior are denied.

66.    The allegations contained in Paragraph 2657 directed towards Interior/Exterior are denied.

67.    The allegations contained in Paragraph 2658 directed towards Interior/Exterior are denied.

68.    The allegations contained in Paragraph 2659 directed towards Interior/Exterior are denied.

69.    The allegations contained in Paragraph 2660 directed towards Interior/Exterior are denied.

70.    The allegations contained in Paragraph 2661 directed towards Interior/Exterior are denied.

71.    The allegations contained in Paragraph 2662 directed towards Interior/Exterior are denied.

72.    The allegations contained in Paragraph 2663 directed towards Interior/Exterior are denied.

73.    The allegations contained in Paragraph 2664 directed towards Interior/Exterior are denied.

74.    The allegations contained in Paragraph 2665 directed towards Interior/Exterior are denied.

75.    The allegations contained in Paragraph 2666 directed towards Interior/Exterior are denied.

76.     The allegations contained in Paragraph 2667 directed towards Interior/Exterior are denied.

77.     The allegations contained in Paragraph 2668 directed towards Interior/Exterior are denied.

78.     The allegations contained in Paragraph 2669 are denied for lack of sufficient information to justify a belief therein.

79.     The allegations contained in Paragraph 2670 directed towards Interior/Exterior are denied.

80.  The allegations contained in Paragraph 2671 directed towards Interior/Exterior are denied.

81.     The allegations contained in Paragraph 2672 directed towards Interior/Exterior are denied.

82.     Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2673.

83.     The allegations contained in Paragraph 2674 directed towards Interior/Exterior are denied.

84.     The allegations contained in Paragraph 2675 directed towards Interior/Exterior are denied.

85.     The allegations contained in Paragraph 2676 directed towards Interior/Exterior are denied.

86.     The allegations contained in Paragraph 2677 directed towards Interior/Exterior are denied.

87.     The allegations contained in Paragraph 2678 directed towards Interior/Exterior are denied.

88.     The allegations contained in Paragraph 2679 directed towards Interior/Exterior are denied.

89.     The allegations contained in Paragraph 2680 directed towards Interior/Exterior are denied.

90.     Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2681.

91.     The allegations contained in Paragraph 2682 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2682 are denied for lack of sufficient information to justify a belief therein.

92. The allegations contained in Paragraph 2683 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2683 are denied for lack of sufficient information to justify a belief therein.

93.     The allegations contained in Paragraph 2684 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2684 are denied for lack of sufficient information to justify a belief therein.

94.     The allegations contained in Paragraph 2685 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2685 are denied for lack of sufficient information to justify a belief therein.

95.     The allegations contained in Paragraph 2686 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2686 are denied for lack of sufficient information to justify a belief therein.

96.     The allegations contained in Paragraph 2687 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2687 are denied for lack of sufficient information to justify a belief therein.

97.     The allegations contained in Paragraph 2688 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2688 are denied for lack of sufficient information to justify a belief therein.

98.     The allegations contained in Paragraph 2689 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2689 are denied for lack of sufficient information to justify a belief therein.

99.     The allegations contained in Paragraph 2690 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2690 are denied for lack of sufficient information to justify a belief therein.

100.    The allegations contained in Paragraph 2691 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2691 are denied for lack of sufficient information to justify a belief therein.

101.    The allegations contained in Paragraph 2692 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2692 are denied for lack of sufficient information to justify a belief therein.

102.    Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2693.

103.    The allegations contained in Paragraph 2694 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2694 are denied for lack of sufficient information to justify a belief therein.

104.    The allegations contained in Paragraph 2695 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2695 are denied for lack of sufficient information to justify a belief therein.

105.    The allegations contained in Paragraph 2696 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2695 are denied for lack of sufficient information to justify a belief therein.

106.    The allegations contained in Paragraph 2697 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2697 are denied for lack of sufficient information to justify a belief therein.

107.    The allegations contained in Paragraph 2698 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2698 are denied for lack of sufficient information to justify a belief therein.

108.    The allegations contained in Paragraph 2699 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2699 are denied for lack of sufficient information to justify a belief therein.

109.    Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2700.

110.    The allegations contained in Paragraph 2701 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2701 are denied for lack of sufficient information to justify a belief therein.

111.    The allegations contained in Paragraph 2702 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2702 are denied for lack of sufficient information to justify a belief therein.

112.    The allegations contained in Paragraph 2703 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2703 are denied for lack of sufficient information to justify a belief therein.

113.    Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2704.

114.    The allegations contained in Paragraph 2707 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2707 are denied for lack of sufficient information to justify a belief therein.

115.    The allegations contained in Paragraph 2708 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2708 are denied for lack of sufficient information to justify a belief therein.

116.    The allegations contained in Paragraph 2709 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2709 are denied for lack of sufficient information to justify a belief therein.

117.    The allegations contained in Paragraph 2710 do not require a response from Interior/Exterior.  However, should a response be required, the allegations contained paragraph 2710 are denied for lack of sufficient information to justify a belief therein.

118.    Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2711.

119.    The allegations contained in Paragraph 2712 directed towards Interior/Exterior are denied.

120.    The allegations contained in Paragraph 2713 directed towards Interior/Exterior are denied.

121.    The allegations contained in Paragraph 2714 directed towards Interior/Exterior are denied.

122.    The allegations contained in Paragraph 2715 directed towards Interior/Exterior are denied.

123.    The allegations contained in Paragraph 2716 directed towards Interior/Exterior are denied.

124.    The allegations contained in Paragraph 2717 directed towards Interior/Exterior are denied.

125.    The allegations contained in Paragraph 2718 directed towards Interior/Exterior are denied.

126.    The allegations contained in Paragraph 2719 directed towards Interior/Exterior are denied.

127.    The allegations contained in Paragraph 2720 directed towards Interior/Exterior are denied.

128.    Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2721.

129.    The allegations contained in Paragraph 2722 directed towards Interior/Exterior are denied.

130.    The allegations contained in Paragraph 2723 directed towards Interior/Exterior are denied.

131.    The allegations contained in Paragraph 2724 directed towards Interior/Exterior are denied.

132.     The allegations contained in Paragraph 2725 directed towards Interior/Exterior are denied.

133.     The allegations contained in Paragraph 2726 directed towards Interior/Exterior are denied.

134.     The allegations contained in Paragraph 2727 directed towards Interior/Exterior are denied.

135.     The allegations contained in Paragraph 2728 directed towards Interior/Exterior are denied.

136.     The allegations contained in Paragraph 2729 directed towards Interior/Exterior are denied.

137.     The allegations contained in Paragraph 2730 directed towards Interior/Exterior are denied.

138.     The allegations contained in Paragraph 2731 directed towards Interior/Exterior are denied.

139.     The allegations contained in Paragraph 2732 directed towards Interior/Exterior are denied.

140.     The allegations contained in Paragraph 2733 directed towards Interior/Exterior are denied.

141.     The allegations contained in Paragraph 2734 directed towards Interior/Exterior are denied.

142.     Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2735.

143.    The allegations contained in Paragraph 2736 directed towards Interior/Exterior are denied.

144.    The allegations contained in Paragraph 2737 directed towards Interior/Exterior are denied.

145.    The allegations contained in Paragraph 2738 directed towards Interior/Exterior are denied.

146.    The allegations contained in Paragraph 2739 directed towards Interior/Exterior are denied.

147.    The allegations contained in Paragraph 2740 directed towards Interior/Exterior are denied.

148.    The allegations contained in Paragraph 2741 directed towards Interior/Exterior are denied.

149.    Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2742.

150.    The allegations contained in Paragraph 2743 directed towards Interior/Exterior are denied.

151.    The allegations contained in Paragraph 2744 directed towards Interior/Exterior are denied.

152.    The allegations contained in Paragraph 2745 directed towards Interior/Exterior are denied.

153.    The allegations contained in Paragraph 2746 directed towards Interior/Exterior are denied.

154.    The allegations contained in Paragraph 2747 directed towards Interior/Exterior are denied.

155.    The allegations contained in Paragraph 2748 directed towards Interior/Exterior are denied.

156.    Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2749.

157.    The allegations contained in Paragraph 2750 directed towards Interior/Exterior are denied.

158.    The allegations contained in Paragraph 2751 directed towards Interior/Exterior are denied.

159.    The allegations contained in Paragraph 2752 directed towards Interior/Exterior are denied.

160.    Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2753.

161.    The allegations contained in Paragraph 2754 directed towards Interior/Exterior are denied.

162.    The allegations contained in Paragraph 2755 directed towards Interior/Exterior are denied.

163.    The allegations contained in Paragraph 2756 directed towards Interior/Exterior are denied.

164.    The allegations contained in Paragraph 2757 directed towards Interior/Exterior are denied.

165.    Interior/Exterior re-states all of its responses to the proceeding paragraphs in response to the allegations contained in Paragraph 2758.

166.    The allegations contained in Paragraph 2759 directed towards Interior/Exterior are denied.

167.    The allegations contained in Paragraph 2760 directed towards Interior/Exterior are denied.

168.    The allegations contained in Paragraph 2761 directed towards Interior/Exterior are denied.

169.    The allegations contained in Paragraph 2762 directed towards Interior/Exterior are denied.

170.    The allegations contained in Paragraph 2763 directed towards Interior/Exterior are denied.

171.    The allegations contained in Paragraph 2764 directed towards Interior/Exterior are denied.

172.    The allegations contained in Paragraph 2765 directed towards Interior/Exterior are denied.

173.    The allegations contained in Paragraph 2766 directed towards Interior/Exterior are denied.

174.    The allegations contained in Paragraph 2767 directed towards Interior/Exterior are denied.

175.    The allegations contained in Paragraph 2768 directed towards Interior/Exterior are denied.

176.    The allegations contained in Paragraph 2769 directed towards Interior/Exterior are denied.

177.    The allegations contained in Paragraph 2770 directed towards Interior/Exterior are denied.

178.    The allegations contained in the paragraph beginning "WHEREFORE" directed towards Interior/Exterior are denied.

## PART II – AFFIRMATIVE DEFENSES

For its Affirmative Defenses, Jury Demand, and Prayer for Relief in response to Plaintiffs' Class Action Complaint, Interior/Exterior avers as  follows:

### FIRST DEFENSE

Plaintiffs have failed to state a claim for which relief can be granted.

### SECOND DEFENSE

Any damages alleged to have been sustained by Plaintiffs were caused in whole or in part by the acts or omissions of entities other than this defendant over whom this defendant had and has no control, or by superseding intervening causes outside the control of this defendant.  These entities include, but are not limited to, all manufacturers from whom Interior/Exterior purchased Chinese drywall.

### THIRD DEFENSE

Recovery of some or all of the damages alleged to have been sustained by Plaintiffs is barred by the economic loss doctrine.

### FOURTH DEFENSE

The terms, provisions and conditions of any and all contracts entered into between Interior/Exterior and any other parties, including but not limited to any warranty provisions, operate as a bar to all or part of Plaintiffs' claims.

### FIFTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by their absence of privity with Interior/Exterior and lack of standing.

### SIXTH DEFENSE

Plaintiffs have failed to mitigate their damages.

### SEVENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations, statute of repose, prescriptive period, or the doctrine of laches.

### EIGHTH DEFENSE

To the extent that Plaintiffs pray for punitive, exemplary, or otherwise enhanced damages, Interior/Exterior invokes its right under the due process clause of the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment of the United States Constitution.

### NINTH DEFENSE

Interior/Exterior incorporates herein by reference each and every affirmative defense pleaded by similarly-situated distributor defendants.

### TENTH DEFENSE

Interior/Exterior neither knew nor should have known of any defect in the Chinese drywall.

## ELEVENTH DEFENSE

Interior/Exterior is a good faith seller under the law of redhibition, and thus, any damages that may be assessed to Interior/Exterior are limited to those damages available against a good faith seller.

## JURY DEMAND

Interior/Exterior demands a trial by jury on Plaintiff's Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, having fully answered the Plaintiffs' Complaint, Interior/Exterior prays:

a)  that plaintiffs recover nothing from Interior/Exterior and that judgment be entered in Interior/Exterior's favor;

b)  that the costs of this action, including attorney's fees and costs that may be allowed by statute, be taxed against plaintiffs; and

c)  for all other general and equitable relief that the Court may deem just and proper.

## PART III – CROSS-CLAIM AGAINST THE KNAUF DEFENDANTS

For its Cross-Claim against Gebruder Knauf Verwaltungsgesellschaft KG; Knauf Gips KG; Knauf International GmbH; Knauf Insulation GmbH a/k/a Knauf US; Knauf Plasterboard Tianjin Co., Ltd.; and Knauf Plasterboard Wuhu Co., Ltd., Interior/Exterior avers as follows:

## PARTIES

1.  Cross-Claimant Interior/Exterior Building Supply, L.P. is a Louisiana limited partnership with its principal place of business in New Orleans, Louisiana.  Cross-Claimant Interior/Exterior Enterprises, L.L.C. is a Louisiana limited liability company with its principal

place of business in New Orleans, Louisiana.  Collectively, Interior/Exterior is defendant in this matter.

2.      Made Cross-Claim Defendants are: Gebruder Knauf Verwaltungsgesellschaft KG ("GKV"); Knauf Gips KG ("Knauf Gips"); Knauf International GmbH ("Knauf International"); Knauf Insulation GmbH a/k/a Knauf USA ("Knauf USA"); Knauf Plasterboard Tianjin Co., Ltd. ("Knauf Tianjin" or "KPT"); and Knauf Plasterboard Wuhu Co., Ltd. ("Knauf Wuhu") (collectively known as the "Knauf Group").   The Knauf Group entities are made defendants herein, who may be served through their counsel of record, having made appearances and/or having agreed to accept service of Plaintiffs' Class Action Complaint.

3.      The Knauf Group is multi-national conglomerate that generates over $1 billion in revenue and is privately owned by the Knauf family, personally headed by Baldwin Knauf.

4.      GKV is a German Corporation and, upon information and belief, is the parent company and/or alter ego of Knauf International, KPT, Knauf Wuhu, Knauf USA, Knauf Gips and/or the Knauf Group, which is doing business in the Gulf South, including Texas, Louisiana, Mississippi, and Alabama.  GKV is a holding company owned and controlled by the Knauf family members.  It is further believed that GKV directs, controls, and manages the Knauf Group.

5.      Knauf Gips is a German Corporation and, upon information and belief, is the parent company and/or alter ego of GKV, Knauf International, KPT, Knauf Wuhu, Knauf USA, and/or the Knauf Group, which is doing business in the Gulf South, including Texas, Louisiana, Mississippi, and Alabama. It is further believed that Knauf Gips supervised, operated, trained, and exercised control of the operations and employees of Knauf International, KPT, Knauf Wuhu, and Knauf USA by manufacturing, selling, marketing, and placing Knauf drywall in the stream of commerce

with the expectation that the drywall would be purchased and installed in properties located in the Gulf South, including Texas, Louisiana, Mississippi, and Alabama.

6.     Knauf International is a German Corporation and, upon information and belief, is the parent company of KPT and Knauf Wuhu.  It also believed that Knauf International is a holding company for GKV and the Knauf Group.  It is furthered believed that Knauf International is the actual and/or apparent agent and/or the alter ego of KPT, Knauf Wuhu, Knauf USA, GKV, and the Knauf Group, and is doing business in the Gulf South, including Texas, Louisiana, Mississippi, and Alabama.

7.     Knauf USA is a German corporation domiciled in the state of Indiana and, upon information and belief, is the actual and/or apparent agent of Knauf Gips, Knauf International, KPT, Knauf Wuhu, GKV, and the Knauf Group, by assisting, promoting, distributing, marketing, importing, and selling drywall manufactured, designed, distributed, promoted, marketed, imported, or sold by Knauf Gips, Knauf International, KPT, Knauf Wuhu, GKV, and/or the Knauf Group to Interior/Exterior.

8.     KPT is a Chinese company doing business in the Gulf South, including Texas, Louisiana, Mississippi, and Alabama.  Upon information and belief KPT is the actual and/or apparent agent and/or alter ego of Knauf Gips, Knauf International, Knauf Wuhu, GKV, and/or the Knauf Group, by manufacturing, designing, selling, distributing, marketing, promoting, importing, and placing into the stream of commerce its drywall with the expectation that it drywall would be purchased and installed in properties located in the Gulf South, including Texas, Louisiana, Mississippi, and Alabama.

9.     Knauf Wuhu is a Chinese company doing business in the Gulf South, including Texas, Louisiana, Mississippi, and Alabama.  Upon information and belief Knauf Wuhu is the

actual and/or apparent agent and/or alter ego of Knauf Gips, Knauf International, KPT, Knauf USA, GKV, and/or the Knauf Group, by manufacturing, designing, selling, distributing, marketing, promoting, importing, and placing into the stream of commerce its drywall with the expectation that it drywall would be purchased and installed in properties located in the Gulf South, including Texas, Louisiana, Mississippi, and Alabama.

10.     Upon information and belief, at relevant times, GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA all acted in concert and asserted themselves as the Knauf Group.  It is further believed that GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA as the Knauf Group are exclusively controlled by the Knauf family members, headed by Baldwin Knauf.  It is further believed that GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, and the Knauf Group wholly, consistently, and systematically disregard any corporate formalities and legal identities.

## FACTS

11.     From late-2005 to mid-2006, Interior/Exterior purchased drywall for resale in the Untied States that was manufactured in China by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA as the Knauf Group. The availability and suitability of that drywall was promoted and marketed by Knauf USA, and the sales of that product were initiated, arranged, managed and facilitated by Knauf USA.

12.     In the aftermath of Hurricanes Katrina and Rita in 2005, the United States Gulf Coast faced a critical shortage of drywall for the reconstruction of homes and other structures damaged by the storms.   While most notable in the states directly impacted by the hurricanes, the demand of rebuilding in those states eventually led to shortages throughout the United States.

The demand far exceeded the domestically produced-supply, and international manufactures soon took notice of the critical shortages in the United States.

13.     In late-2005, on information and belief, GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, as the Knauf Group, recognized this significant shortage of drywall in the United States.  Recognizing the opportunity to substantially increase their market share and sell a considerable amount of drywall for use in the American market by American consumers, GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, as the Knauf Group, set out on a campaign to sell their drywall products to American drywall suppliers, including Interior/Exterior.

14.     This effort was led by Baldwin Knauf, personally, on behalf of Knauf Gips, which acted in concert with GKV, Knauf International, KPT, Knauf Wuhu, and Knauf USA, as the Knauf Group, to develop a business plan to sell drywall to US customers manufactured by the Knauf Group.   Knauf Gips considered the costs and benefits of importing and selling drywall manufactured at its various plants throughout Europe and China, before selecting China as the most economically advantageous option.  Knauf Gips directed Knauf USA to begin marketing drywall manufactured by KPT and Knauf Wuhu under the auspices of GKV and Knauf International to its US customers.

15.     As part of that campaign, in late-2005 Knauf USA approached Interior/Exterior about the prospect of buying Knauf drywall.  In taking that action, Knauf USA was acting on its own behalf for its own benefit, and also as the agent and for the benefit of GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, as the Knauf Group.

16.     Knauf USA informed Interior/Exterior that it was manufacturing drywall in China, which it could make available for purchase by Interior/Exterior. Additionally, Knauf USA provided

Interior/Exterior with a rate sheet that set forth the prices for its various products including the allegedly defective Chinese drywall.  That rate sheet was transmitted from Knauf USA through Knauf USA's local sales representative to Interior/Exterior.

17.     Following Interior/Exterior's initial purchases of Knauf product, Knauf USA continued to act as an agent for and representative of the GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, as the Knauf Group, by engaging in communications with Interior/Exterior about purchasing additional drywall product manufactured at its Chinese plant.

18.     At no time during its marketing and sales efforts did Knauf USA draw any distinction between itself, GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and the Knauf Group as a whole.  It did not because, on information and belief, it was acting both for its own benefit and as the agent and for the benefit of GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and the Knauf Group. At all times material, Knauf USA presented itself as representing, speaking for, aligned with and part of Knauf Group and was the actual and/or apparent agent of the various Knauf entities, individually, and the Knauf Group, collectively.

19.     Throughout the series of events set forth above, GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and the Knauf Group, as a whole, acted to manifest Knauf USA's authority as their agent, and Interior/Exterior relied on that manifestation of authority.

20.     But for efforts of Knauf Gips and Knauf USA to market and sell Knauf drywall to Interior/Exterior, those purchases would likely not have occurred.

21.     As a result of the Knauf Group's marketing campaign, beginning in the fall of 2005 and continuing through 2008, hundreds of millions of square feet of drywall manufactured in China were exported to the United States by the Knauf Group; sold to distributors and suppliers, including Interior/Exterior; resold to builders, contractors, and installers; and installed

in thousands of properties domestically, but primarily in Florida, Louisiana, Alabama, Mississippi, Texas and Virginia.

22.     Along with each sale of Chinese-manufactured drywall by the Knauf Group, Interior/Exterior received numerous specific warranties from the Knauf Group, including a Certificate of Origin, a mill certificate, an ASTM certificate, a Beneficiary Signed Statement, a certification that the sheetrock was properly packaged, a Certificate of Warranty, and a Certificate of Quality, Quantity and Condition.

23.     Sometime after installation of the drywall designed and manufactured by the Knauf Group, amongst others, in China, homeowners began to complain of emissions of malodorous gasses and the corrosion of appliances and certain other components of their homes.

24.     Numerous federal and state agencies investigated the complaints and, upon extensive investigation and testing, found the Chinese-manufactured drywall to be defective. The evidence shows that when the Chinese-manufactured drywall is installed in certain structures and climates, it can create corrosive environments that may produce foul-smelling odors and damage electrical and other parts of the structures, appliances and home furnishings.

25.     Interior Exterior did not learn of any defects with Chinese-manufactured drywall until January 12, 2009, nearly two years after Interior/Exterior had stopped selling drywall manufactured by the Knauf Group, following a return of domestic production.  Prior to January 2009, Interior Exterior did not receive any reports from customers, consumers, installers, or its employees of any defects with the Knauf Group Chinese-manufactured drywall it had sold.

26.     As of December 2006, at the very latest, however, the Knauf Group was aware of potential defects in its Chinese-manufactured drywall product when its own expert, Professor Hans Hummel, acknowledged reports about smell issues with the drywall.  Professor Hummel's

report was based on tests he conducted of suspect Knauf Group Chinese-manufactured drywall in Florida.

27.  Instead of notifying its customers, such as Interior/Exterior, the Knauf Group concealed its knowledge of the defect and continued knowingly selling defective Chinese manufactured drywall to US consumers, including Interior/Exterior. The Knauf Group's concealment of the defective nature of its Chinese-manufactured drywall prevented Interior/Exterior from learning of the alleged defects in the drywall.

28.  According to the Remediation Guidance of the Department of Housing and Urban Development ("HUD") and the U.S. Consumer Product Safety Commission ("CPSC"), the necessary repair of properties impacted by defective Chinese-manufactured drywall requires that all possible problematic drywall, fire safety alarm devices, electrical distribution components (including receptacles, switches and circuit breakers), gas service piping and fire suppression sprinkler systems be removed and replaced, and other steps maybe taken to repair and fully remediate the property.

29.  Following the discovery of the defective Chinese-manufactured drywall, scores of individual and class action lawsuits were brought in several federal district courts and state courts in the Gulf Coast and mid-Atlantic regions of the United States by property owners whose homes and other properties were damaged by defective Chinese-manufactured drywall. Plaintiffs sued the manufacturers of the defective drywall, including the Knauf Group, as well as homebuilders, contractors, and suppliers, including Interior/Exterior, that were involved with the Chinese-manufactured drywall.

30.  Despite its status as an innocent seller, Interior/Exterior has been called upon to defend itself in these voluminous lawsuits, incurring significant costs, expenses, and attorney fees.

31.     Additionally, Interior/Exterior has been compelled to enter into numerous settlements with homeowners and other consumers for the damages occasioned by the defective Knauf Group Chinese-manufactured drywall.

32.     Interior/Exterior's business reputation and good will have been severely diminished by the sale of the defective Knauf Group Chinese-manufactured drywall, which will continue into the future.

33.     As a consequence, Interior/Exterior has lost significant business profits and business opportunities in the past and will continue to suffer such losses into the future.

## CAUSES OF ACTION

### *Count I – Negligence*

34.     The Chinese-manufactured drywall manufactured, designed, sold distributed, marketed, promoted, imported, and placed into the stream of commerce in the United States by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, was defective and presented an unreasonable risk of harm to consumers and their property.  GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, knew or should have known of these defects and dangers in their Chinese-manufactured drywall.

35.     GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, owed certain duties to Interior/Exterior including the following non-exclusive duties: to provide drywall free from defect; to exercise reasonable care to avoid foreseeable risks of harm to others or property; to take affirmative action to avoid increasing the danger from a condition created by another; to exercise reasonable care in performing services undertaken, whether gratuitously or for consideration; to warn foreseeable users of products

about dangers inherent in products that are known or should be known; and to use reasonably care in the design, manufacture, promotion, marketing, importation, and sale of the drywall product.

36.     GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, breached these duties by, among other ways, providing defective drywall to Interior/Exterior.

37.     As a result of the negligent acts and omissions of GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, Interior/Exterior sustained damages, including, but not limited to:

    a)    amounts paid to homeowners and consumers for property damage from the defective Knauf Group Chinese-manufactured drywall;

    b)    costs, expenses, and attorney fees incurred in defending lawsuits resulting from the defective Knauf Group Chinese-manufactured drywall;

    c)    past and future lost profits;

    d)    past and future lost business opportunities; and

    e)    past and future loss of business reputation and good will.

### *Count II – Negligent and/or Intentional Misrepresentation*

38.     GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, knew or should have known that the Knauf Group Chinese-manufactured drywall presented such an unreasonable risk of harm to consumers and their property.

39.     In marketing, promoting, and selling drywall to Interior/Exterior, GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, owed a duty to Interior/Exterior to disclose any defects which they knew or should

have known and to make accurate representations to Interior/Exterior regarding the quality, condition, and suitability of their products and their ability to design, manufacture, or provide a product that was safe and free from defects.

40.     GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, breached these duties by, negligently or intentionally, failing to disclose knowledge of the defect to Interior/Exterior and/or representing to Interior/Exterior that the drywall was safe and free from defect and/or that the Knauf Group could design, manufacture, or provide drywall that was safe and free from defects.

41.     GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, further breached their duties by, negligently or intentionally, representing to Interior/Exterior that the Chinese-manufactured drywall was free from defects.

42.     Interior/Exterior relied on the representations provided by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, in purchasing the Knauf Group Chinese-manufactured drywall and reselling it to consumers in Louisiana, Texas, Mississippi.

43.     As a result of these misrepresentations and omissions by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, Interior/Exterior sustained damages, including, but not limited to:

a)      amounts paid to homeowners and consumers for property damage from the defective Knauf Group Chinese-manufactured drywall;

b)      costs, expenses, and attorney fees incurred in defending lawsuits resulting from the defective Knauf Group Chinese-manufactured drywall;

c)      past and future lost profits;

d)      past and future lost business opportunities; and

e)      past and future loss of business reputation and good will.

### Count III – Breach of Contract

44.    GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, entered into a contract for the sale of non-defective Chinese-manufactured drywall.

45.    GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, breached their contract with Interior/Exterior by designing, manufacturing, promoting, marketing, and/or selling a product that was defective and dangerous.

46.    As a result of this breach of contract by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, Interior/Exterior sustained damages, including, but not limited to:

a)      amounts paid to homeowners and consumers for property damage from the defective Knauf Group Chinese-manufactured drywall;

b)      costs, expenses, and attorney fees incurred in defending lawsuits resulting from the defective Knauf Group Chinese-manufactured drywall;

c)      past and future lost profits;

d)      past and future lost business opportunities; and

e)      past and future loss of business reputation and good will.

*Count IV – Breach of Express Warranties*

47.     In selling Chinese-manufactured drywall to Interior/Exterior, GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, provided certain express warranties to Interior/Exterior concerning the quality of the Knauf Group Chinese-manufactured drywall, including, but not limited to, that the drywall was safe and free from defects and that the drywall conformed to applicable industry standards, including ASTM standards.

48.     Interior/Exterior relied on the express warranties provided by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, in purchasing the Knauf Group Chinese-manufactured drywall and reselling it to consumers in Louisiana, Texas, Mississippi, and Alabama.

49.     The Chinese-manufactured drywall sold by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, failed to comply with the expressed warranties provided to Interior/Exterior insofar as it was defective and dangerous and failed to adhere to applicable industry standards.

50.     Interior/Exterior notified GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, of the of their breach of express warranties upon notice of the defect in the Chinese-manufactured drywall by Interior/Exterior sometime after January 2009.

51.     As a result of this breach of express warranties by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, Interior/Exterior sustained damages, including, but not limited to:

a)      amounts paid to homeowners and consumers for property damage from the defective Knauf Group Chinese-manufactured drywall;

b)      costs, expenses, and attorney fees incurred in defending lawsuits resulting from the defective Knauf Group Chinese-manufactured drywall;

c)      past and future lost profits;

d)      past and future lost business opportunities; and

e)      past and future loss of business reputation and good will.

### Count V – Breach of Implied Warranties

52.      GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, sold Chinese-manufactured drywall to Interior/Exterior for resale and use in Louisiana, Texas, Mississippi, and Alabama.

53.      GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, were aware that Interior/Exterior was purchasing the Chinese-manufactured drywall for use in residential construction in these areas and that Interior/Exterior was relying on the skill and judgment of GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, to provide drywall that was fit for that purpose.

54.      Because of its defective and dangerous condition, the Chinese-manufactured drywall was unmerchantable when it left the possession and control of GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, insofar as it could not pass without objection in the trade, was not of fair average quality, was not fit for its ordinary purposes, and/or was not of even quality.

55.     The Chinese-manufactured drywall was unfit for the particular purpose of installation in residences throughout Louisiana, Texas, Mississippi, and Alabama insofar as it contained a defect which resulted in damage to properties in which it was installed.

56.     Interior/Exterior notified GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, of their breach of implied warranties upon notice of the defect in the Chinese-manufactured drywall by Interior/Exterior sometime after January 2009.

57.     As a result of this breach of implied warranties by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, Interior/Exterior sustained damages, including, but not limited to:

a)      amounts paid to homeowners and consumers for property damage from the defective Knauf Group Chinese-manufactured drywall;

b)      costs, expenses, and attorney fees incurred in defending lawsuits resulting from the defective Knauf Group Chinese-manufactured drywall;

c)      past and future lost profits;

d)      past and future lost business opportunities; and

e)      past and future loss of business reputation and good will.

### Count VI – Product Liability

58.     GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, were the manufacturers of drywall in China and, as such, are subject to liability under the Louisiana Products Liability Act, the Texas Products Liability Act, the Mississippi Products Liability Act, and the Alabama Extended Manufacturers Liability Doctrine.

59.     The Knauf Group Chinese-manufactured drywall contained certain defective characteristics that rendered it unreasonably dangerous for residential use in Louisiana, Texas, Mississippi, and Alabama.

60.     Because of the unreasonably dangerous characteristics of the drywall, property owners in Louisiana, Texas, Mississippi, and Alabama sustained damage to their property from the reasonably anticipated use of the Knauf Group Chinese-manufactured.

61.     As a result of property owners' reasonably anticipated use of the drywall manufactured by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, Interior/Exterior sustained damage to its property, including, but not limited to:

a)      loss of use of monies paid to homeowners and consumers for property damage from the defective Knauf Group Chinese-manufactured drywall;

b)      loss of use of monies expanded as costs, expenses, and attorney fees incurred in defending lawsuits resulting from the defective Knauf Group Chinese-manufactured drywall;

c)      loss of use of past and future lost profits;

d)      loss of use of money which would have been reasonably generated from past and future lost business opportunities; and

e)      loss of use of money which would have been generated from past and future lost business reputation and good will.

*Count VII – Redhibition*

62.      GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, manufactured and sold Chinese-manufactured drywall to Interior/Exterior in Louisiana for use in Louisiana, Texas, Mississippi, and Alabama.

63.      The Knauf Group Chinese-manufactured drywall contained a latent defective at the time of the sale insofar as it emitted certain sulfur gases that caused property damage.

64.      This defect in the Knauf Group Chinese-manufactured drywall rendered it absolutely useless for its intended purpose in residential construction in Louisiana, Texas, Mississippi, and Alabama.

65.      Alternatively, the defect in the Knauf Group Chinese-manufactured drywall rendered it so inconvenient or imperfect that had Interior/Exterior known of the defect, it would never have purchased the drywall.

66.      GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, knew of the redhibitory defect contained within their Chinese-manufactured drywall but sold the drywall to Interior/Exterior anyway.

67.      Alternatively, GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, should have known of the redhibitory defect contained within their Chinese-manufactured drywall but turned a blind eye to the defect.

68.      As a result of the redhibitory defect in Knauf Group Chinese-manufactured drywall sold to Interior Exterior, GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, are liable unto Interior/Exterior for the

return of the purchase price of the defective drywall as well as all reasonable consequential damages, including, but not limited to:

    a)    amounts paid to homeowners and consumers for property damage from the defective Knauf Group Chinese-manufactured drywall;

    b)    costs, expenses, and attorney fees incurred in defending lawsuits resulting from the defective Knauf Group Chinese-manufactured drywall;

    c)    past and future lost profits;

    d)    past and future lost business opportunities; and

    e)    past and future loss of business reputation and good will.

### Count VIII – Tort of Another

69.    Through no fault of its own, Interior/Exterior has been made to defend itself against claims brought by property owners, builders, contractors, installers, and suppliers for damages allegedly sustained as a result of the defect contained within the drywall designed, manufactured, promoted, marketed, and sold by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group.

70.    Because Interior/Exterior is free from fault and the voluminous litigation involving Chinese-manufactured resulted from the tort of another(s), Interior Exterior is entitled to recovery the expense of that litigation, including costs, expert and other expenses, and attorney's fees, from the culpable parties.

71.    Accordingly, Interior/Exterior is entitled to recover from GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, the expenses incurred by or on behalf of Interior Exterior in all Chinese-manufactured drywall

litigation, including all state and federal court litigation to which Interior/Exterior is a defendant or third-party-defendant.

### Count IX – Contribution and/or Indemnity

72.    Interior/Exterior has paid and will pay additional compensation to property owners for damages sustained as a result of the fault of GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group.

73.    Pursuant to the contribution and/or proportionate responsibilities laws of Louisiana, Texas, Mississippi, and/or Alabama, Interior/Exterior is entitled to contribution from GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, for their individual and joint manufacture, promotion, distribution, marketing, importation, misrepresentation, and sale of defective drywall to Interior/Exterior and their individual and joint failure to notify and/or concealment to Interior/Exterior that the drywall was defective.

74.    Pursuant to the doctrine of common law indemnity, Interior/Exterior is entitled to indemnification by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, for their individual and joint manufacture, promotion, distribution, marketing, importation, misrepresentation, and sale of  defective drywall to Interior/Exterior and their individual and joint failure to notify and/or concealment to Interior/Exterior that the drywall was defective.

### Count X – Deceptive Trade Practices

75.    Interior/Exterior purchased the Knauf Group Chinese-manufactured drywall and, as such, is a consumer of goods within the provisions of the Deceptive Trade Practices Acts of Louisiana, Texas, Mississippi, and Alabama.

76.     GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, are persons who can be sued under the provisions of the Deceptive Trade Practices Acts of Louisiana, Texas, Mississippi, and Alabama.

77.     As set forth herein above, GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, committed several false, misleading or deceptive acts or practices regarding the manufacture, promotion, marketing, importation, and sale of defective Chinese-manufactured drywall.

78.     Alternatively, as set forth herein above, GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, breached certain expressed and/or implied warranties in selling defective Chinese-manufactured drywall.

79.     Alternatively, as set forth herein above, GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, engaged in unconscionable acts to take advantage of Interior/Exterior.

80.     As a result of these deceptive acts and omissions by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, Interior/Exterior sustained actual damages, including, but not limited to:

a)      amounts paid to homeowners and consumers for property damage from the defective Knauf Group Chinese-manufactured drywall;

b)      costs, expenses, and attorney fees incurred in defending lawsuits resulting from the defective Knauf Group Chinese-manufactured drywall;

c)      past and future lost profits;

d)      past and future lost business opportunities; and

e)      past and future loss of business reputation and good will.

81.     Further, as a result of the knowing and/or intentional violation of the Deceptive Trade Practices Acts of Louisiana, Texas, Mississippi, and/or Alabama by GKV, Knauf International, Knauf Gips, KPT, Knauf Wuhu, and Knauf USA, individually and collectively as the Knauf Group, Interior/Exterior is entitled to additional damages up to three times the amount of actual damages and other relief and damages afforded by those act, including but not limited to penalties and attorneys' fees.

## JURY DEMAND

82.     Interior/Exterior Building Supply, L.P. prays for a trial by jury.

## PRAYER

WHEREFORE, Interior/Exterior Building Supply, L.P. and Interior/Exterior Enterprises, L.L.C. pray that after due proceedings are had, there be judgment in its favor against Gebruder Knauf Verwaltungsgesellschaft KG; Knauf Gips KG; Knauf International GmbH; Knauf Insulation GMBH a/k/a Knauf USA; Knauf Plasterboard Tianjin Co., Ltd.; and Knauf Plasterboard Wuhu Co., Ltd. for all damages caused by their conduct, omissions, and misrepresentations, including but not limited the following:

a)      amounts paid to homeowners and consumers for property damage from the defective Knauf Group Chinese-manufactured drywall;

b)      costs, expenses, and attorney fees incurred in defending lawsuits resulting from the defective Knauf Group Chinese-manufactured drywall;

c)      past and future lost profits;

d)      past and future lost business opportunities;

e)      past and future loss of business reputation and good will;

f)      return of sums paid;

g)        costs, expense, and attorney fees incurred in prosecuting this cross-claim;

h)        pre- and post-judgment interest; and

i)        any other relief equity and justice require.

Respectfully submitted,

*/s/ Richard G. Duplantier, Jr.*
Richard G. Duplantier, Jr. #18874
Lambert J. Hassinger, Jr. #21683
Benjamin R. Grau #26307
Carlina C. Eiselen, #28524
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, Suite 4040 One Shell Square
New Orleans, LA 70139
504 525 6802 / 504 525 2456 Fax
rduplantier@gjtbs.com / jhassinger@gjtbs.com
bgrau@gjtbs.com / ceiselen@gjtbs.com
*Counsel for Interior/Exterior Building Supply, L.P.*
*and Interior/Exterior Enterprises, L.L.C.*

## Certificate of Service

The undersigned certifies that this document has been served on Plaintiffs' liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 29th day of July, 2011.

*/s/ Richard G. Duplantier, Jr.*
RICHARD G. DUPLANTIER, JR.