IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

RCR HOLDINGS II, LLC,

    Plaintiff,

ARCH INSURANCE COMPANY,
a foreign corporation,

    Defendant.

_____/

CASE NO. 50 2010 CA015377 XXXXMB
DIVISION: AI



## ARCH INSURANCE COMPANY'S
## MOTION TO STAY

    ARCH INSURANCE COMPANY ("ARCH"), by and through its undersigned counsel and pursuant to applicable *Florida Rules of Civil Procedure*, hereby files the this *Motion to Stay*, and in support thereof states as follows:

### INTRODUCTION AND SUMMARY

    This Motion seeks a stay of this action pending the resolution of a first-filed federal court action involving similar parties and virtually identical issues. In the first action, RCR (the developer) and Coastal Construction (the general contractor) are defendants in a suit by unit owners of the Villa Lago Condominiums. The unit owners allege that Chinese drywall was used at the project, and seek damages for (among other things) replacement of the drywall. The first action was removed to U.S. District Court, and has been consolidated with the federal court mulit-district Chinese drywall litigation (the "federal action"). RCR has moved to stay the federal action case because it arose out of construction defects and the unit owners had not complied with §558, *Fla.Stat.*

    RCR later filed the present action, without naming Coastal, alleging that ARCH, as Coastal's surety, is liable to RCR for the damages sought by the plaintiffs in the federal action, because Coastal



EXHIBIT

A

breached its bonded construction contract. The prerequisites for proving this claim are: (1) whether RCR is in fact liable to the unit owners; and, (2) whether Coastal in fact breached the construction contract, *both of which will, of necessity, be litigated in the first-filed federal action.* Litigating those claims in this action, and without the primary parties even being present, would create a double burden on the courts and the risk of inconsistent results. A stay of this case in deference to the first-filed federal action is therefore not only appropriate but required.

In the alternative, because a mandatory condition precedent to RCR's liability has not occurred, it is premature for RCR to bring a claim against ARCH seeking reimbursement of damages that *might* be awarded in the Federal action. It is appropriate to stay this action pending a decision in the federal action as to whether RCR is even liable for damages in the first place.

## FACTUAL AND PROCEDURAL BACKGROUND

1.     On June 24, 2005, RCR HOLDINGS II, LLC's ("RCR"), as owner/developer, entered into a Construction Contract with COASTAL CONSTRUCTION OF SOUTH FLORIDA d/b/a COASTAL CONDOMINIUMS ("Coastal"), as general contractor, for construction of the Villa Lago Condominiums in Boynton Beach, Florida (the "Project"). *See Complaint* ¶ 4 and Exhibit "A" to *Complaint.*

2.     On August 16, 2005 ARCH issued *Performance Bond* ("*Bond*") #SU1013827 on behalf of Coastal, as Contractor, and in favor of RCR, as Owner, with regard to Coastal's performance of the *Contract. See Complaint* ¶ 4 and Exhibit "A" to *Complaint.*

3.     In 2009, various unit owners of the Condominium brought an action styled, WENDY LEE HOBBIE et al. v. RCR, COASTAL CONSTRUCTION OF SOUTH FLORIDA d/b/a COASTAL CONDOMINIUMS, et al., Case No. 50 2009CA032471 (the "Hobbie Matter"), which

arises from the alleged use of Chinese Drywall at the Project.  On January 12, 2010, Plaintiffs filed their *Second Amended Class Action Complaint* (the "*Hobbie Complaint*"), a copy of which is attached hereto as **Exhibit "A"**.  The *Hobbie Complaint* alleges that both RCR and Coastal are liable for the installation of Chinese drywall at the Project.

4.      On February 26, 2010, the Hobbie Matter was removed to U.S. District Court and assigned case number 10-CV-80320-Ryskamp/Vitunac.  The case was then *sua sponte* transferred to the pending multi-district litigation action *In re. Chinese Manufactured Drywall Products Liability Litigation, MDL No. 2:09-md-02047 (E.D.La.)*.  A copy of the Notice of Removal and the Order Transferring Case are attached as **Exhibit "B."**

5.      On March 5, 2010, RCR filed its *Motion to Abate and Compel Compliance with Chapter 558 of Florida Statute* ("*Motion to Abate*") in the Hobbie Matter, a copy of which is attached hereto as **Exhibit "C"**.  In the Federal action, RCR has renewed its Motion to Stay based on Plaintiffs' failure to comply with §558, a copy of which is attached hereto as **Exhibit "D."**

6.      RCR has yet to file any claims against Coastal in the Hobbie Matter, presumably due to its filing of a *Motion to Abate*.

7.      However, on June 11, 2010, three (3) months after the filing of its *Motion to Abate*, and three months after the removal of the Federal action, RCR filed this instant *Complaint* against ARCH, as Coastal's surety, alleging breach of the *Bond*.  *See Complaint* ¶¶ 2-5.  A copy of the Complaint is attached hereto as **Exhibit "E."**  The present action is the functional equivalent of an indemnity claim.  In fact, RCR's "notice" to ARCH, attached as Exhibit "B" to the *Complaint*, merely attaches a copy of the *Hobbie Complaint* and states that ARCH is liable to RCR for any damages that result.

CASE NO. 50-2010-CA015377-XXXX-MB

## **ARGUMENT**

I.   **A Stay Of Action Against A Surety Is Required Where An Owner And Contractor Are Litigating The Underlying Dispute In A Previously Filed Federal Court Action.**

ARCH's liability to RCR is completely derivative of, and cannot exceed, any liability that Coastal may have to RCR for not properly performing the construction contract. *See First Sealord Sur. Inc., v. Suffolk Constr. Co.*, 995 So.2d 609, 610 (Fla. 3d DCA 2008). Because of this principle, courts, in the context of arbitration, uniformly hold that, where the surety was not made a party to the underlying arbitration, any action that was later brought solely against the surety must be stayed pending the outcome of the underlying claim:

> Furthermore, Great American, the surety, is a proper party to this appeal, even though it would not be a party to the arbitration. This is because Great American's liability is contingent upon the liability of its bond principal, so Great American will be bound by the results of the arbitration between Meiring and Northbay. Thus, Great American would be entitled to a stay of the action on the lien transfer bond until the underlying issues between Meiring and Northbay were determined by arbitration.

*K.P. Meiring Construction, Inc. v. Northbay I and E, Inc.*, 761 So.2d 1221, 1222-23 (Fla. 2d DCA 2000).[1] *See also, Kidder Electric of Florida v. U.S.F. & G.*, 530 So.2d 475 (Fla. 5th DCA 1988) (Because arbitration proceeding would resolve whether or not contractor was liable, a stay of the case against the surety was required pending arbitration); *Graham Contracting v. Flagler County*, 458 So.2d 418 (Fla. 5th DCA 1984)(same). Significantly, all of these decisions reversed, on

---

[1] The surety is bound only to the extent of the material issues necessarily decided in the arbitration. *Von Engineering v. Roberts*, 457 So.2d 1080, 1082 (Fla. 5th DCA 1984). Thus, if the arbitration determines that the bonded contractor breached its contract, the surety may still litigate defenses under its Bond, including whether the claimant has complied with the Bond or prejudiced the surety's rights.

4

CASE NO. 50-2010-CA015377-XXXX-MB

interlocutory writs of certiorari, trial court decisions that refused to grant a stay to the surety.

In the suretyship context, the rationale that requires stays pending arbitration applies with even greater force to the general rule requiring stays in the event of prior pending federal court litigation:

> "Comity principles dictate that an action should be stayed, and a trial court departs from the essential requirements of law by failing to grant such a stay, when the first-filed lawsuit involves substantially similar parties and substantially similar claims." *Pilevsky*, 961 So.2d at 1035. Complete identity of the parties and claims is not required. *In re Guardianship of Morrison*, 972 So.2d 905, 910 (Fla. 2d DCA 2007); *Federov*, 24 So.3d at 1229. "It is sufficient that the two actions involve a single set of facts and that resolution of the one case will resolve many of the issues involved in the subsequently filed case." *Pilevsky*, 961 So.2d at 1035 (quoting *Fla. Crushed Stone Co. v. Travelers Indem. Co.*, 632 So.2d 217, 220 (Fla. 5th DCA 1994)).

*Sorena v. Gerald J. Tobin, P.A.*, 2010 WL 4103522 (Fla. 3d DCA Oct. 20, 2010). *See also, Florida Crushed Stone v. Travelers Indemnity Co.*, 632 So.2d 217 (Fla. 5th DCA 1994)(same holding). The policy behind this doctrine is because "it is possible that the federal court will retain jurisdiction and the result will be two duplicative proceedings with the possibility of inconsistent results." *Robeson v. Melton*, 2009 WL 3837209 (Fla. 4th DCA Nov. 18, 2009).

As to similarity of parties, there could hardly be more similarity than between a bonded contractor with a primary obligation to RCR, and that contractor's surety who is derivatively and secondarily liable for the identical obligation. *See, First Sealord, supra; K.P. Meiring, supra.; Kidder Electric, supra.* ARCH essentially stands in Coastal's shoes (except to the extent ARCH has separate defenses under its Bond). Thus, RCR, instead of presenting its claims against Coastal by way of cross-claim in the Federal action, circumvents that action by attempting to bring a claim against ARCH in this Court.

CASE NO. 50-2010-CA015377-XXXX-MB

As to similarity of issues, RCR itself has admitted that the issues in the Federal action are basically identical to the issues in its claim against ARCH.   When RCR sent its "declaration of default" to ARCH, RCR attached the Hobbie Complaint, and alleged that Coastal's default was "as described in" the Hobbie Complaint. *See*, **Exhibit "E"** hereto (*Complaint* and Ex. "B" thereto). The claim against ARCH is predicated on the theory that ARCH must, ultimately, indemnify RCR for any damages that RCR must pay in the class action, if those damages are due to defective construction by Coastal. Thus, if the present case goes forward, this Court must necessarily decide: (a) whether RCR is liable to the Federal action Plaintiffs; and, (b) whether Coastal is liable to RCR due to breach of the construction contract. The issues presented in the Federal action are not only "substantially similar" but virtually identical. The resolution of the Federal action will "resolve many of the issues" presented in this later-filed action. *Sorena, supra.*

The most vivid example of this is that, if the present case goes to trial before the Federal action is decided, *this court will not be able to award anything to RCR*! RCR is suing ARCH for the damages alleged by the Federal action plaintiffs. If RCR is not liable to the Federal action plaintiffs, then RCR has no damages to pass through to Coastal based on defective construction. Even if RCR is liable, it must still prove that Coastal did not properly perform the construction contract, which will be done via a cross-claim in the federal action. With these issues unresolved, how can this Court enter a judgment? The only way is for this Court to litigate the issues in the Federal action, and then litigate the claim between RCR and Coastal. This enormous expenditure of effort will be done without either the Federal action Plaintiffs or Coastal present. It will have to be done all over again in the Federal action, where RCR and Coastal are parties. "[T]he result will

CASE NO. 50-2010-CA015377-XXXX-MB

be two duplicative proceedings with the possibility of inconsistent results." *Robeson v. Melton, supra.* By attempting to push this case to trial, RCR is putting the cart before the horse.

This case presents the strongest possible circumstance for a stay. Principles of comity govern and applicable case law requires that the present case be stayed pending the outcome of the Federal action. This result is consistent with case law requiring stays of cases against sureties when the underlying construction dispute is being resolved in a different forum.

## II.   Equitable Principles Also Require A Stay Of The Present Case.

Even if this Court chooses to apply the traditional equitable principles that govern stays, a stay is essential in this case. ARCH has already discussed how both the parties and the claims in the Federal action are similar to the claims that RCR asserts in this case, and that resolution of the Federal action will resolve all the primary issues in the present case. These are the two core prerequisites for considering a stay. *See, Pilevsky v. Morgans Hotel Group Mgmt.*, LLC, 961 So.2d 1032 (Fla. 3d DCA 2007). Furthermore, "in determining whether to grant a stay, courts generally examine three factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *See Alps South, LLC v. The Ohio Willow Wood Co.*, 2010 WL 2465176 (M.D. Fla. 2010). All of these factors weigh very strongly in favor of a stay.

First, staying this action would not prejudice RCR in any way. RCR has filed a *Motion to Abate* in the Federal action, both in the state and in the federal court after removal. RCR's Motion stated that the Plaintiffs' compliance with §558 is a mandatory condition precedent to the suit

7

CASE NO. 50-2010-CA015377-XXXX-MB

proceeding. RCR has re-filed the a motion to abate in the Federal action seeking the same relief. RCR, therefore, has effectively put its own affirmative claims against Coastal – which would eventually be asserted as cross-claims – on hold. Since RCR has voluntarily stayed its affirmative claim against Coastal, it can have no possible prejudice from a stay of its derivative claim against ARCH.

Second, granting a stay pending resolution of the Federal action would simplify and streamline the issues for trial in this case. The Federal action, with its attendant cross-claims and third party claims, will be an extremely complex piece of construction litigation. It is not unreasonable to expect thousands of exhibits, dozens of witnesses including numerous experts, weeks of trial, and extensive discovery and trial preparation. As already noted, the Federal action will resolve the issues as between the unit owners and RCR, and as between RCR and Coastal. Since the unit owners, RCR, and Coastal are all already present as parties in the Federal action, they will be able to fully litigate all aspects of their positions through counsel of their choosing. Once the Federal action is resolved, and then only if Coastal has some liability to RCR as a result, the only issues to litigate in *this* action will be defenses specific to ARCH's Performance Bond, such as the extent of coverage and whether RCR complied with the Bond's conditions. Thus, a stay this action pending resolution of the Federal action would greatly simplify the issues to be tried.

Third, staying the present matter would lessen the burden on the Court and on the parties. If the present case goes forward, this Court must necessarily litigate and decide all the primary issues in the Federal action. This will require this Court to engage in the massive litigation effort described above, but with neither the Federal action Plaintiffs nor Coastal present in this action to litigate their

8

CASE NO. 50-2010-CA015377-XXXX-MB

positions or fully protect their interests. In addition, even if this Court purported to decide the issues, the Federal action Plaintiffs and Coastal would have the absolute right to litigate their claims and defenses in the Federal action, where they *are* parties. Not only would failing to stay this action unnecessarily duplicate the massively expensive effort of litigating the key issues between the Plaintiffs and RCR, and RCR and Coastal, it might well lead to inconsistent outcomes.

As can be seen, the equitable principles governing typical stays lead to the same conclusion as the cases mandating a stay in this matter.

### III.     A Stay Is Mandated Because RCR Has Not Complied With §558's Mandatory Conditions Precedent To Asserting Any Claim Against Coastal.

Because ARCH's liability is derivative of Coastal's, ARCH may assert in its own defense any defense available to COASTAL. *Team Land Development, Inc. v. Anzac Contractors, Inc.*, 811 So.2d 698, 700 (Fla. 3d DCA 2002)("a surety is afforded any defenses available to the contractor"). If a claimant fails to comply with a condition precedent to suit against the contractor, the surety "is also shielded by that defense." *Id.* In the present case, RCR has not provided any notice to Coastal under §558, *Fla.Stat.*, nor followed any of §558's mandatory procedures. As a result, RCR's claim against ARCH must be stayed pending RCR's compliance with §558. There is no question that RCR is governed by §558, because RCR itself alleges that it is an "owner" and so squarely within the mandates of the statute. See, §558.02(3)("'Claimant' means a property owner").

RCR and Coastal placed §558's requirements *directly into their construction contract*:

Florida law contains important requirements you must follow before you may file a lawsuit for defective construction against a Contractor . . . for an alleged construction defect in your home. Sixty days before you file your law suit, you must deliver to the Contractor . . . a written notice of any construction conditions you allege are defective provide your Contractor . . . the opportunity to inspect the alleged construction

9

CASE NO. 50-2010-CA015377-XXXX-MB

defects and make an offer to repair or pay for the alleged construction defects. There are strict deadlines and procedures under Florida law.

This language appears in two different places in the contract between RCR and Coastal, copies of which are attached hereto as **Exhibit "F."**   RCR has not provided any notice to Coastal pursuant to §558. As a result, any of RCR's claims against Coastal are barred. RCR itself has admitted, in its own Motion for Stay, that §558 is a "mandatory condition precedent" to any suit by the unit owners against RCR. See, **Exhibit "C"** hereto, at p. 2. This, in turn, is an admission by RCR that it cannot proceed against Coastal without complying with those same "mandatory conditions precedent."

## CONCLUSION

Granting a stay would be consistent with principles of law and equity, and would allow this Court to focus on the sole issue of whether ARCH is liable to RCR under the *Bond* once the federal action is resolved.

WHEREFORE, ARCH INSURANCE COMPANY requests that this Honorable Court enter an Order staying this matter pending the resolution of the federal action.

**ETCHEVERRY HARRISON LLP**
Attorneys for ARCH
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL 33324
Phone: (954) 370-1681
Fax: (954) 370-1682

By: _____
Edward Etcheverry, Fla. Bar No. 856517
Guy Harrison, Fla. Bar No. 368806

10

CASE NO. 50-2010-CA015377-XXXX-MB

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via [x]

facsimile and/or [x] regular United States Mail to: **Richard R. Chaves, Esquire**, Casey Ciklin

Lubitz Martens & O'Connell, 515 N. Flagler Drive, Suite 1900, West Palm Beach, FL 33401; this

28ᵗʰ day of October, 2010.

                                **ETCHEVERRY HARRISON LLP**
                                Attorneys for DSIC
                                150 South Pine Island Road, Suite 105
                                Ft. Lauderdale, FL 33324
                                Phone: (954) 370-1681
                                Fax: (954) 370-1682

                                By: _____
                                  Edward Etcheverry, Fla. Bar No. 856517
                                Jeffrey S. Geller, Fla. Bar No. 63721

L:\Clients\167 - Arch Insurance\1008 - Coastal Construction\Pleadings\Arch's Motion for StayREVISED.wpd