July 12, 2011
Page - 11 -

**Agency**

The forum states all recognize agency as a theory of liability, and an element of agency is the control found in the agency relationship. *See Reynolds American, Inc. v. Gero*, 56 So. 3d 117 (Fla. 3d DCA 2011) (Florida law); *Whitfield v. Whittaker Mem'l. Hosp.*, 210 Va. 176, 181, 169 S.E.2d 874 (1975) (Virginia law); *Aupied v. Joudeh*, 694 So. 2d 1012, 1016 (La.App. 5 Cir.1997) (Lousiana law).

**Undertaker**

The undertaker doctrine provides that one who undertakes to provide a service to others, *gratuitously or by contract*, assumes a duty to act carefully and to not put others at an undue risk of harm. As Justice Cardozo said, "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard*, 233 N.Y. 236, 239, 135 N.E. 275, 23 A.L.R. 1425 (1922).

> The Restatement (Second) of Torts explains the undertaker duty as follows:
>> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>> (a) his failure to exercise reasonable care increases the risk of such harm, or
>> (b) he has undertaken to perform a duty owed by the other to the third person, or
>> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts, § 324A (1965).

This provision of the Restatement and its principles are applicable under the forum states' law. See, *e.g.*, *Beasley v. MacDonald Engineering Co.*, 249 So.2d 844, 846 (Ala. 1971); *Tillman v. Travelers Indemnity Co.*, 506 F.2d 917, 920 (5th Cir. 1975) (Mississippi law); *Goldberg v. Florida Power & Light Company*, 899 So.2d 1105 (Fla. 2005).

A parent corporation's involvement in the activities of its subsidiary can also lead to undertaker liability. "[A] duty that would not otherwise have existed can arise when an individual or company nevertheless undertakes to perform some action." *See In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 887 F. Supp. 1447, 1454 (N.D. Ala. 1995) (where corporate parent's "in-house counsel reviewed and approved warnings in package inserts and other information given by [subsidiary] to physicians ... fact-finder at a trial could consider the[se] actions as undertakings by [parent]"). This duty "is measured in terms of reasonable forseeability." *Id.*; *see also In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 887 F. Supp.

July 12, 2011
Page - 12 -

1455, 1461 (N.D. Ala. 1995) ("*Breast Implants II*"). In *Breast Implants*, the District Court in Alabama held that "by both conducting tests relating to [the subsidiary's product] and making public statements regarding the safety of such [product], [the parent] can be held to have assumed a duty of reasonable care towards potential users who might rely upon such tests and statements." *Id.*; *see also Breast Implants II*.

**Alter Ego/Veil Piercing**

The 5th Circuit applying federal law upholds alter ego liability. *See Hester Int'l v. Fed. Rep. of Nigeria*, 879 F.2d 170, n.7 (5th Cir. 1989); *Bridas S.A.P.I.C. v. Government of Turkmenistan (Bridas)*, 447 F.3d 411 (5th Cir. 2006). Importantly, the forum states analyze alter ego/veil piercing liability through the lens of control. *Id.* Under the laws of the forum states the courts look to control as an element or aspect of alter ego or veil piercing liability. *See generally, Hollowell v. Orleans Regional Hospital LLC*, 217 F.3d 379, 386-387 (5th Cir. 2000) (Louisiana law); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999) (Texas law); *Johnson & Higgins of Mississippi, Inc. v. Commissioner of Insurance of Mississippi*, 321 So.2d 281, 285 (Miss.1975) (Mississippi law); *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114 (Fla. 1984) (Florida law); *Eure v. Norfolk Shipbuilding & Drydock Corp., Inc.*, 263 Va. 624, 561 S.E.2d 663 (Va. 2002) (Virginia law).

10. **Board minutes of BNBM and/or TG where either entity is, or both are, discussed including matters regarding operations and finance.**

   **Questioners' Comments and Reply:** See comments above with respect to Documents Requested relating to 1, 2, 3 and 5.

11. **Documents reflecting the relationship with any of the exporters, agents, distributors, suppliers, and/or brokers that shipped products to the United States including territories Guam, U.S. Virgin Islands, Puerto Rico, etc., including but not limited to those listed in the MPF.**

   **Questioners' Comments and Reply:** In responding to this request you represent that the Taishan Defendants have produced all agreements, correspondence, invoices, and other documentation related to the sale and shipment of drywall as listed on the MPF. However, in doing so, you have limited your response only to shipment of drywall and the exporters listed in the MPFs. The request is much broader than that, i.e, documents related to all exporters (not just the ones listed on the MPF) that shipped any products (not just drywall) to the United States. The discovery makes clear that products such as drywall screws and other items were marketed to the United States. It is clear that the Taishan entities sold building materials to the forum states, not just drywall. Please confirm that you have produced all such documents.

   Additionally, a review of the documents you list (¶¶ 10 and 12 of the June 6th Letter) that represent all agreements, correspondence, invoices, and other documentation related to the sale and

July 12, 2011
Page - 13 -

shipment of drywall as listed on the MPF reveals that your responses are still incomplete and we believe that these discovery responses need supplementation and clarification.

For instance, we were unable to locate any documents related to the following entities listed on the MPF:

| Exporters | Documents Listed in ¶¶ 10 and 12 of the June 6th Letter |
|---|---|
| Qingdao Aoni Decoration Board and Materials Co., Ltd. | No documents. |
| Nantong Economic and Technological Development Zone Corp. | No documents. |
| Qingdao Kanghong Import and Export Co. Ltd. | No documents. |
| Zhejiang Provincial Second Light Industry Enterprises Group Imp. & Exp. Co. Ltd. | No documents. |
| Jiangsu Sainty International Economic & Technical Cooperation Co., Ltd. | No documents. |
| Zibo International Economic and Technical Cooperation Corporation | No documents. |
| Shanghai Yujin Industry Co. Ltd. | No documents. |
| Hangzhou Great Import and Export Co. Ltd. | No documents. |
| Xuzhou Hanbang Global Trade Co., Ltd. | No documents. |
| Jiangsu Easthigh Group Import & Export Co. Ltd. | No documents. |

July 12, 2011
Page - 14 -

Additionally, for the following entities listed on the MPF appear to have only partial documentation:

| Exporters | Documents Listed in ¶¶ 10 and 12 of the June 6th Letter | Examples of Missing Documents |
|---|---|---|
| Shandong Oriental International Trading Corp, Ltd. | TG0023837-TG0023838 – Purchase contract; TG0019896-TG0019936, TG0020060-TG20078, TG0020054, – Invoices. | Correspondence, Requests for quotes, Custom Forms, Tax Forms, Bills of Lading, Specification Sheets if not part of the Purchase Contract, Shipping and Delivery documents.<br><br>Quantity on Purchase Contract (TG0023837-TG0023838) does not match up with the MPF. Please clarify. |
| Lianyungang Yuntai International Trade Co., Ltd. | TG0019874-TG0019875, TG00200018– Invoices; TG0024051 - TG0024056 - Email and attachments dated 6/21/07 – Contracts for drywall. | Correspondence, Requests for quotes, Custom Forms, Tax Forms, Bills of Lading, Specification Sheets if not part of the Purchase Contract, Shipping and Delivery documents.<br><br>Contract (TG0024051 - TG0024056) is incomplete and illegible. Please provide a legible copy.<br><br>Invoices for May 19, 2005 appear to be missing. |
| Shanghai Yuyuan Market Import & Export Co., Ltd. | TG0001500-0001502 - Purchase and Sale Agreement. | Correspondence, Invoices, Requests for quotes, Custom Forms, Tax Forms, Bills of Lading, Specification Sheets if not part of the Purchase |

W:\! DRYWALL\27687 MDL\Correspondence\LTR Frank Spano re TG and TTP 2011-7-12 FINAL.docx

July 12, 2011
Page - 15 -

| | | Contract, Shipping and Delivery documents. |
|---|---|---|
| Orient International Holding Shanghai Foreign Trade Co., Ltd. | TG0001503 – Domestic Purchase Contract;<br><br>TG0020005 - Domestic Purchasing Agreement (Contract #06HM121707) -- Date 4/12/06;<br>TG0020242 - Contract for Domestic Purchases (Contract #06HM121707) -- Date 4/12/06. | Correspondence, Invoices, Requests for quotes, Custom Forms, Tax Forms, Bills of Lading, Specification Sheets if not part of the Purchase Contract, Shipping and Delivery documents. |
| Beijing Building Materials Import & Export Co., Ltd. | TG001488-001499, TG0020230-TG0020231, TG001712, TG001583-TG001587 – Purchase & Sale Agreement;<br><br>TG0001509-TG001542; TG001588-TG001645 – Invoices. | Correspondence; Requests for quotes, Custom Forms, Tax Forms, Bills of Lading, Specification Sheets if not part of the Purchase Contract, Shipping and Delivery documents.<br><br>Quantity on the Invoice and Purchase Contract do not match up with the MPF. Please clarify. |
| Taian Taigao Trading Co., Ltd. | TG0020140-TG0020141 - Customs Declaration Form;<br>TG0020125-TG0020126, TG0020139 – Meeting minutes;<br>TG0020143-TG0020158 – Client complaints;<br>TG0020124 – Power of Attorney;<br>TG0020129 – Purchase and Sales Contract;<br>TG0020130 – Supplemental Agreement;<br>TG0020131 – Notice on Sales Plan;<br>TG0020142 – Memorandum;<br>TG0001683 – Letter re: Settlement & Release Agreement.<br>TG0020118-TG0020122 - | Requests for quotes, Bills of Lading, Shipping and Delivery documents. |

July 12, 2011
Page - 16 -

|  | Settlement & Release Agreement. |  |
| --- | --- | --- |
| SIIC Shanghai International Trade Group Pudong Co., Ltd. | TG0020243, TG0020245–TG0020247 - Contract for Sales and Purchases (Contract #26DNPD-44048) -- Date unknown; TG0001504-0001508 - Sales Contract; TG0019867– TG0019880, TG0020013 – Invoices. | Correspondence, Requests for quotes, Custom Forms, Tax Forms, Bills of Lading, Specification Sheets if not part of the Purchase Contract, Shipping and Delivery documents. |
| Shanghai Kaidun Development Co., Ltd. | TG0020011 - TG0020013, TG001513-1542, TG001592-TG001621, TG001632- TG001645, TG019867- TG019880, TG019896-TG0019916, TG19918-TG0019936, TG0019947-TG0019960, TG020060-TG20078 – Invoices. | Correspondence; Contract for Sales; Requests for quotes, Custom Forms, Tax Forms, Bills of Lading, Specification Sheets if not part of the Purchase Contract, Shipping and Delivery documents. |
| Shandong Yuanhua International Trading Co. Ltd. | TG0019870, TG0019871 - Invoices | Correspondence; Contract for Sales; Requests for quotes, Custom Forms, Tax Forms, Bills of Lading, Specification Sheets if not part of the Purchase Contract, Shipping and Delivery documents. |
| China Xuzhou International Economic & Technological Cooperation Co. Ltd. | TG0019872, TG001631- Invoice | Correspondence; Contract for Sales; Requests for quotes, Custom Forms, Tax Forms, Bills of Lading, Specification Sheets if not part of the Purchase Contract, Shipping and Delivery documents. |
| Qingdao Joy | TG0020244 - Contract for Sales and | Correspondence, Invoices, |

July 12, 2011
Page - 17 -

| Industrial & Development Co. Ltd. | Purchases (Contract #THBM06122201) -- Date 12/26/0 | Requests for quotes, Custom Forms, Tax Forms, Bills of Lading, Specification Sheets if not part of the Purchase Contract, Shipping and Delivery documents. |

      Please provide the missing documents listed above. If you believe that such documents have been produced, please identify the exact bates numbers for each individual entity.

12. **Any written or electronic communication, including but not limited to MSN, Instant Messenger, text messages, regarding the sale or shipment or possible sale or shipment of any product to United States including territories Guam, U.S. Virgin Islands, Puerto Rico, etc., customers.**

      **Questioners' Comments and Reply:** Your July 1, 2011 letter states that "All such documents have already been produced," and that you have "confirmed that our document searches included MSN or IM-type documents, but none existed." We cannot determine whether the searches and determination that documents do not exist were done by TG and TTP. Please have TG and TTP confirm that this is accurate, as opposed to the law firm of Hogan Lovells merely confirming that no such documents existed in what it reviewed. Additionally, we would like to know what steps TG and TTP undertook to verify that all documents in its possession have been searched and produced.

13. **Value Added Tax related documents and communications involving the export of product including representations made to the government of China and others regarding export of products.**

      **Questioners' Comments and Reply:** You represent that all of the documents fitting this description have already been provided. We believe there are additional types of documents that fit within the umbrella of this request that would be in Defendants' possession that have not been produced.

      According to the testimony of Jianchun Zhang, TG implemented a policy to exempt themselves from all Value Added Tax ("VAT"), and TTP implemented a half-exemption policy during the time period of 2006-2007. (See Zhang , Tr. 153). This assertion was confirmed by review of translated versions of the BNBM Annual Reports from 2005 through 2009. To date, Defendants have not produced any communications from government authorities or records kept by TG or TTP indicating any VAT exemptions.

July 12, 2011
Page - 18 -

What Defendants have produced are a series of invoices, many of which bear the label "VAT Invoice" as well as a caveat stating, "This copy does not serve as a voucher for reimbursement or tax deduction purposes." (See, e.g., TG0019867). Pursuant to Article 21 of the "Provisional Regulations on VAT of the People's Republic of China," if an enterprise sells VAT-free goods, it is precluded from issuing a special VAT-invoice. On multiple occasions, deponents for Defendants testified that these invoices were provided to customers "for VAT purposes." (See Jia Tr. at 481; see also Zhang Tr. at 140-143, 152-154).

Defendants have also provided a few pieces of correspondence indicating reimbursement rates were changing at one point while these transactions with exporters were taking place. However, there has not been any correspondence regarding how the invoices are to be used, a subject which also comes within the purview of the original discovery request. (See, e.g., TG 0022051-0022060). Defendants have also not produced any documentation related to VAT exemptions. If such documentation exists, it falls within the purview of the original request.

Based on the function and application of the VAT, as well as testimony provided by representatives for Defendants at deposition, Defendants must have either generated or received additional documents related to the VAT which they have not yet provided. These documents fall into several categories within the umbrella of the VAT request, which include, but are not limited to the following:

- VAT exemption application documents filed by TG and TTP;
- Examination, confirmation and/or approval documents relating to VAT exemption application issued by taxation authorities and received by TG or TTP; and
- Any correspondence from or to Chinese tax authorities, including but not limited to the Shandong State Tax Bureau, the Taian State Tax Bureau of Shandong Province, the State Tax Bureau of Taian High and New Technology Industrial Development Zone, the Ministry of Finance and the State Administration of Taxation.

14. **The fee information, guarantee contracts between BNBM and TG and related communications (see TG0020680).**

**Questioners' Comments and Reply:** In your July 1, 2011 letter, you state that "TG has produced all documents concerning the guarantee provided by BNBM to TG *that have been identified*: TG0020677-TG0020681 and TG0020795-TG0020798. *To the best of our knowledge,* BNBM did not make any payments on TG's behalf under the guarantee." You go on to say that: "Our response remains the same – these documents have already been produced and *no other responsive documents have been found.*" We are extremely concerned by the italicized portion of these comments. In particular, we do not know who "identified" the documents, nor is it clear to whom the responses "to the best of [y]our knowledge" and that "no other responsive documents have been found" are attributed. Are these statements made by TG and TTP, or are

July 12, 2011
Page - 19 -

these statements made by the Hogan Lovells law firm? We need certification from TG and TTP that all documents in their possession, custody or control have been produced, or alternatively, that no further documents exist.

Moreover, we are concerned that the two (2) documents referenced are not a complete response to the request. For instance, absolutely no communications on the requested subject have been produced. This does not make sense considering that a 2005 Annual Shareholder Meeting Resolution and 2008 General Annual Meeting Resolution were produced. We cannot understand how the shareholders considered these issues without any supporting documentation. For example, it appears that there was a proposal for Beixin Group Building Material Co., Ltd. to increase the amount of loan guarantee to Taije (see Section 7 on page TG0020680). Yet we have seen no documents identifying the loan guarantee or the "loan financing from financial institutions." It is highly unlikely that this matter was presented without any further documentation, communications or dialogue relating to the topic. The Resolution further references a "Guarantee Contract" and we have not seen that document. Further, in the 2008 Annual General Meeting Resolution, it appears that a Resolution was addressed based on covenants of the shareholders for the loan guarantee fee charged and we have not seen any documents relating to such covenants (see Section IX at page TG0020797). We do not think that Resolutions such as these are passed in a vacuum and request that the underlying documents to support fee information, guarantee contracts and communications between BNBM and TG should be fully produced. We, therefore, do not believe that the production is complete.

15.  **Records related to any ISO (International Standard Organization) certification, including, but not limited to, ISO 9001, ISO 14004, and ISO 10003.**

**Questioners' Comments and Reply:** We appreciate your response. Please note, however, that the ISO standards require that investigations be made into customer complaints. Accordingly, any documents kept about such ISO mandated investigations as relates to the United States market should be produced.

We are prepared to meet at our office Wednesday, July 13, 2011, at 3:30 p.m. to discuss these matters in advance of the status conference. Please let me know if you would like to meet.

Sincerely,

LEONARD A. DAVIS

LAD:lmf

cc: Honorable Eldon E. Fallon *(via e-mail and via hand delivery, with copies of referenced documents)*
Rick Stanley, Esq.
Taishan Team
Arnold Levin, Esq.
Russ Herman, Esq.
Chris Seeger, Esq.
Ervin Gonzalez, Esq.
Richard Serpe, Esq.
Bruce Steckler, Esq.
Patrick Montoya, Esq.
Fred Longer, Esq.
Nick Panayotopoulos, Esq.
Jane Byrne, Esq.
Julia Beskin, Esq.
Hillarie Bass, Esq.
Mark Salky, Esq.
Tim Kolaya, Esq.
Ken Hardt, Esq.
Matthew Clark, Esq.
Carlina Eiselen, Esq.