UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * MDL No. 2047 <br> * <br> * SECTION L <br> * <br> * JUDGE ELDON E. FALLON <br> * <br> * MAGISTRATE JUDGE <br> * JOSEPH C. WILKINSON, JR. <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THIS DOCUMENT RELATES TO: *Germano, et al. v. Taishan Gypsum Co., Ltd., et al., Case No. 09-6687*

PEOPLE'S REPUBLIC OF CHINA
CITY OF TAI'AN

## DECLARATION OF JIA TONGCHUN

This is a declaration being made in accordance with and pursuant to 28 U.S.C. § 1746.

I, JIA TONGCHUN, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1. I am over eighteen (18) years of age, am competent to testify to the matters contained herein, and have personal knowledge of these facts. My native language is Chinese. I do not understand, speak, read, or write English. I signed a Chinese version of this Declaration as well as the English version of this Declaration after it was translated for me by a translator with the law firm of Hogan Lovells International LLP.

2. I am Chairman of the Board and General Manager of Taishan Gypsum Co., Ltd. ("Taishan"). I joined Taishan on February 2, 1999 as the leader of the factory and subsequently became Chairman of the Board and General Manager in 2002.

1

**EXHIBIT B**

3. When I joined the company, it was called Shandong Taihe Taishan Plasterboard Main Factory (Group). In 2002, the company changed its name to Shandong Taihe Dongxin Co., Ltd. ("Taihe"), when it became a company limited by shares under Chinese law. In 2007, Taihe became Taishan.

4. Taishan is a Chinese corporation with its principal place of business in Tai'an City, Shandong Province, People's Republic of China ("China").

5. Taishan has approximately 1,600 employees, all of whom are located in China.

6. In 1992, Taishan started manufacturing paper-coated drywall ("drywall").

7. Taishan manufactures drywall exclusively in China.

8. Taishan is one of the largest drywall manufacturers in China. Taishan has won numerous awards and accolades for the quality of its operations, company management, resource management and compliance with environmental standards. Taishan has been certified as a "China Top Brand" reflecting official recognition by the national General Administration of Quality Supervision Inspection and Quarantine ("GAQSIQ") of its high quality and superior reputation. Additionally, Taishan has also received other quality and environmental protection certifications, including, for example, the International Organization for Standardization ("ISO") 9001 standard (for quality management), the ISO 14001 standard (for environmental protection) and certification to use the "China Environmental Labeling" mark.

9. Taishan sells drywall exclusively in China.

10. Taishan never has manufactured products in Virginia.

11. Taishan never has sold drywall in Virginia.

12. Taishan never has marketed drywall in Virginia.

13. Taishan never has distributed drywall in, or shipped drywall to, Virginia.

2

14. Taishan never has advertised in Virginia.

15. Taishan never has performed services in Virginia.

16. Taishan does not have offices and does not own or lease real or personal property in Virginia.

17. Taishan does not maintain any bank accounts in Virginia.

18. Taishan never has appointed an agent to accept service of process in Virginia.

19. Taishan never has paid taxes or incurred tax liability in Virginia.

20. Taishan is not registered to do business in Virginia.

21. Taishan never has been incorporated in Virginia.

22. Taishan never has maintained any corporate books or records in Virginia.

23. Taishan does not have a mailing address or telephone number in Virginia.

24. Taishan has no officers, directors, employees, or agents in Virginia. None of Taishan's officers, directors, employees, or agents maintain a residence or place of business in Virginia.

25. No officers, directors, employees, or agents of Taishan have visited Virginia for business purposes.

26. In approximately November of 2005, Phillip Perry, of Tobin Trading, Inc., contacted Taishan to inquire about Taishan's drywall. Mr. Perry said he was an agent of Venture Supply, Inc. ("Venture Supply"), a Virginia company.

27. Mr. Perry visited Taishan in China in approximately November 2005. During his first visit to Taishan, Mr. Perry, on behalf of Venture Supply, negotiated a contract providing for the sale of drywall by Taishan.

28. The first contract, dated November 17, 2005, was drafted and signed in

3

Tai'an City, China. A copy is attached as Exhibit A. The contract provided for production of the drywall according to the "relative standard of China GB/T9775-1999." Under the terms of the contract, Venture Supply purchased the drywall in China and was then responsible for transporting the drywall to its desired location. Prior to shipment, Mr. Perry, as Venture Supply's representative, was responsible for inspecting the drywall in China and ensuring that the quality, specifications and packing met Venture Supply's requirements. Taishan was responsible for complying with the contractual terms and for delivering the drywall in China in accordance with Venture Supply's arrangements. Additionally, the November 17, 2005 contract included an arbitration clause, which provided that "[a]ll disputes in connection with this contract" that cannot be amicably be negotiated will be submitted in China to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade, now know as the China International Economic Trade Arbitration Commission ("CIETAC").

29. On December 16, 2005, Mr. Perry, Venture Supply's agent, visited Taishan to inspect the drywall and agreed to transport of the drywall to the Lian Yungang port. A copy of his Inspection Certificate is attached as Exhibit B. Mr. Perry certified in the Inspection Certificate that he had inspected the goods in China and that they met Venture Supply's specifications and quality requirements.

30. On the same day, Taishan and Venture Supply entered into a second contract. A copy of this contract is attached as Exhibit C. Like the first contract, this contract was negotiated and drafted in Tai'an City, China. Mr. Perry, on behalf of Venture Supply, and Taishan both signed the second agreement while in Tai'an City, China. Also like the first contract, the second contract provided for the sale of drywall in China, and required Venture Supply to be responsible for shipping arrangements and charges. The second contract similarly required that Mr. Perry inspect

4

the goods in Taishan's factory and China loading port to make sure that the quality, specifications and packing met Venture Supply's requirements. Like the first contract, it also contained an arbitration clause, providing for arbitration of claims arising out of the contract before CIETAC in China.

31. On or about March 11, 2006, Mr. Perry again visited Taishan to inspect the drywall and to give approval to transfer it to the loading port. A copy of his Inspection Certificate is attached as Exhibit D. Mr. Perry similarly certified in this Inspection Certificate that he had inspected the drywall in China and that it met buyer's specifications and quality requirements.

32. Pursuant to both contracts, Venture Supply was responsible for transporting the drywall to the final destination, and Venture Supply was also responsible for insuring the drywall once title was transferred to it in China.

33. After delivery of the drywall to a port in China, Taishan had nothing more to do with the drywall thereafter. Taishan had no knowledge or information concerning whether any of the drywall it supplied in China pursuant to those contracts would be distributed or used in Virginia.

34. The Taian Shandong Province Special Invoices for Export for the purchases by Venture Supply are attached together as Exhibit E. These invoices were generated by Taishan for tax purposes after the Venture Supply transactions were complete. They show that Venture Supply purchased a total of 153,912 sheets of drywall from Taishan in China. The invoices also list "FOB" as the term of delivery, meaning that Venture Supply purchased the drywall in China and was responsible for arranging, and paying for, shipment to the desired destination.

35. No employee or representative of Taishan was ever present in Virginia in connection with the Venture Supply contracts or otherwise in connection with the drywall business.

36. Other than the two contracts with Venture Supply, Taishan did not enter into any

other contracts with entities based in Virginia. Nor did Taishan enter into any other contracts with companies specifically providing for the supply of drywall in Virginia.

37. Venture Supply made payments for the drywall to Taishan's bank in China.

38. Taishan's two sales to Venture Supply were made in China. They are the only sales of drywall Taishan has made to any customer based in the United States.

39. Tai'an Taishan Plasterboard Co. Ltd. ("TTP") is a wholly owned subsidiary of Taishan formed in February 2006. TTP manufactures and sells drywall exclusively in China. TTP has not entered into any contracts with any companies located in Virginia. TTP has had no contact with Virginia whatsoever.

40. In light of Taishan's lack of contacts with Virginia and for other reasons discussed below, on behalf of Taishan, I respectfully request that Taishan be excused for failure to appear in this case.

41. Taishan did not intend to offend the court or to challenge its powers. Based upon our lack of contacts with Virginia and for other reasons discussed below, we sincerely did not believe that it was necessary for Taishan to appear.

42. Taishan has never been involved in litigation of this nature in the United States or anywhere else in the world. Taishan has had no experience with, and did not understand, the litigation process in Virginia or in the United States.

43. No employee at Taishan has sufficient mastery of the English language to read and understand legal documents written in English. As a result, no legal document sent to Taishan only in English underwent meaningful review. Taishan thus did not understand the consequences of not responding to the Amended Complaint.

44. No employee at Taishan has any understanding whatsoever of the United States' judicial

process to understand the nature or consequence of the claims asserted in the litigation in the United States. This is true even if the relevant documents are translated into Chinese.

45. Taishan received only one document related to this litigation from the Chinese courts and that was the Amended Complaint. The Chinese court did not provide Taishan with any other documents. And Taishan still has not received any other documents relating to this lawsuit in Chinese.

46. When Taishan received the Amended Complaint, we could not understand how this litigation could possibly involve Taishan directly. Taishan sells drywall exclusively in China. Taishan has not sold any drywall in the United States. The sales Taishan made in China to Venture Supply were covered by arbitration clauses providing for the arbitration of contractual disputes in China. Taishan had no involvement with the drywall it sold to Venture Supply after it was delivered to Venture Supply in China. Taishan complied with its contractual obligations and had no reason to believe that its drywall had quality problems.

47. Now that Taishan is aware that a default judgment has been entered, however, it is forced to defend itself and its reputation and erase the judgment suggesting that its product is defective. It retained counsel in the United States and concluded it was necessary to appear and participate in this action. Taishan is determined to appear in this case in order to challenge the jurisdiction of the Court and otherwise defend itself as necessary.

48. Among our highest priorities is to erase the default judgment in this case. We

respectfully ask the Court to do that and to give us a chance to defend the claims made against us.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 15, 2010.

_____
Jia Tongchun

8

美国地区法院
路易斯安那州东部区

| | |
|---|---|
| 关于：中国生产的石膏板产品责任诉讼 | * 跨地区诉讼第 2047 号 |
| | * L 部分 |
| | * Eldon E. Fallon 法官 |
| | * Joseph C. Wilkinson, Jr. 司法官 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

关于：Germano 等诉泰山石膏股份有限公司等一案，案件编号第 09-6687 号

中华人民共和国泰安市

<u>贾同春的声明</u>

本声明系根据并依照《美国法典》第 28 卷第 1746 条发表。

本人贾同春，根据美利坚合众国法律项下的伪证处罚规定声明，以下陈述真实、准确：

1. 本人年龄超过十八（18）岁，有资格对本宣誓书所述事宜作证，并且本人知悉该等事实。本人的母语是中文。本人不会听、说、读、写英文。本人签署了本声明的中文文本，也签署了一份由霍金路伟国际律师事务所为我翻译的本声明的英文翻译件。

2. 本人系泰山石膏股份有限公司（"泰山"）的董事长和总经理。本人于1999年2月2日加入泰山，担任厂长职务，后于2002年起担任董事长和总经理职务。

3. 本人加入公司时，公司名称为山东泰和泰山纸面石膏板总厂（集团）。2002年，根据中国法律，公司成为一家股份有限公司，并更名为山东泰和东新股份有限公司（"泰和"）。2007年，泰和更名为泰山。

4. 泰山为一家中国公司，其主要营业地为中华人民共和国（"中国"）山东省泰安市。

5. 泰山约有1,600名员工，全部在中国境内工作。

6. 泰山自1992年起开始生产纸面石膏板（"石膏板"）。

7. 泰山只在中国境内生产石膏板。

8. 泰山是中国最大的石膏板生产商之一。泰山曾因其出色的经营、公司管理、资源管理及符合环保标准，荣获了很多奖项和赞许。泰山还被中华人民共和国国家质量监督检验检疫总局（"GAQSIQ"）评为"中国名牌"，认可了泰山优异的质量和极高的声誉。另外，泰山还获得了其他质量和环保证书，其中包括国际标准化组织（"ISO"）9001标准（质量管理）认证，ISO14001标准（环境保护）认证，和"中国环境标志"产品认证。

9. 泰山只在中国境内出售石膏板。

10. 泰山从未在弗吉尼亚州生产过任何产品。

11. 泰山从未在弗吉尼亚州出售过石膏板。

12. 泰山从未在弗吉尼亚州营销过其石膏板。

13. 泰山从未在弗吉尼亚州分销过其石膏板或是往弗吉尼亚州运输过石膏板。

14. 泰山从未在弗吉尼亚州作过广告宣传。

15. 泰山从未在弗吉尼亚州提供过任何服务。

16. 泰山在弗吉尼亚州没有办事处，没有任何动产或不动产，也没有租借过任何动产或不动产。

17. 泰山未在弗吉尼亚州开立任何银行账户。

18. 泰山从未在弗吉尼亚州委托过任何代理人接受诉讼书状送达。

2