# EXHIBIT O



July 1, 2011

HOGAN LOVELLS US LLP
875 3rd Avenue
New York, NY 10022
Telephone: 212-918-3000
Facsimile:  212-918-3100

**BY EMAIL**

Lenny Davis, Esq.
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: 504-581-4892

Re:   **IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION; MDL No. 2047**

Dear Lenny:

We write on behalf of Defendants Taishan Gypsum Co. Ltd. ("TG") and Tai'an Taishan Plasterboard Co., Ltd. ("TTP") (together, "Defendants") in response to your letter of June 24, 2011. In an attempt to further meet and confer about the outstanding discovery requests, we have attempted herein to respond to all of the document categories requested in your letter as well as the topics proposed for further depositions; however, it appears as though Plaintiffs have not fully considered our list of documents provided in our June 6, 2011 letter ("June 6th Letter"), have often ignored statements we have made during our meet and confer sessions, and have not considered at all our charts summarizing the deposition testimony, provided on June 22, 2011.[1] In addition, your letter was written without the benefit of Monday's Supreme Court opinions concerning personal jurisdiction over foreign manufacturers, and we are sure that your demands would have been moderated had you considered those opinions.

As we explain below, many of your requests are duplicative of what was already requested, even though we have advised that the documents have already been produced, that the information has already been provided, or, in some cases, that the documents/information does not exist. We also remind you of the Court's directive requiring that Plaintiffs *explain why they need the documents and information requested.* (Transcript June 9, 2011 Conference at 16). Your letter does not provide any explanation as to how the additional requested material is relevant to the issue at hand, namely whether this Court has personal jurisdiction over Defendants.

---

[1] The charts include: "Taishan Gypsum Co. Ltd.'s Summary of the Rule 30(b)(6) Testimony Responsive to Designations Set Forth in the PSC's Amended Re-Notice of Rule 30(b)(6) Deposition, dated March 22, 2011" ("TG Chart") and "Tai'an Taishan Plasterboard Co., Ltd's Summary of the Rule 30(b)(6) Testimony Responsive to Designations Set Forth in the PSC's Amended Re-Notice of Rule 30(b)(6) Deposition, dated March 22, 2011" ("TTP Chart"), both dated June 22, 2011.

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia.  Hogan Lovells refers to the international legal practice comprising Hogan Lovells US LLP, Hogan Lovells International LLP, Hogan Lovells Worldwide Group (a Swiss Verein), and their affiliated businesses with offices in:  Abu Dhabi  Alicante  Amsterdam  Baltimore  Beijing  Berlin  Boulder  Brussels  Caracas  Colorado Springs  Denver  Dubai  Dusseldorf  Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  London  Los Angeles  Madrid  Miami  Milan  Moscow  Munich  New York  Northern Virginia  Paris  Philadelphia  Prague  Rome  San Francisco  Shanghai  Silicon Valley  Singapore  Tokyo  Ulaanbaatar  Warsaw  Washington DC   Associated offices: Budapest  Jeddah  Riyadh  Zagreb

We request that you carefully review our responses below and respond with a more limited list of document requests and deposition topics before the conference on July 14, 2011. We are also available to speak on the phone about the requests prior to the conference.

**Documents Requested:**

The questioners have requested numerous documents which, if they exist at all, would be in the possession, custody, and control of BNBM. We have grouped these requests together because the response to them all is the same.

1.  Documents relating to BNBM upstream entities, including:
    a.  the relationship and communications between them;
    b.  the legal corporate structure; and
    c.  interaction between the various members of the affiliated or related entities.
3.  A corporate entity organizational chart relating to BNBM and its upstream and downstream entities, including:
    d.  the relationship and communications between them;
    e.  the legal corporate structure;
    f.  interaction between the various members of the affiliated or related entities; and
    g.  see also, allegations in the Amorin Complaint, filed June 13, 2011 in the MDL, CA1 1-1395.
5.  All annual reports, government filings, or foreign government filings created by BNBM during the relevant time period.

**Response:** Twice Plaintiffs have moved this Court for documents related to Defendants' upstream affiliates, and twice Plaintiffs have been denied. (Rec. Doc. No. 7136 at 3; Rec. Doc. No. 7511.) Nonetheless, the "questioners" again seek information related to the upstream entities *of BNBM* without any basis for such a request. Additionally, TG and TTP do not possess or control such documents and cannot produce them. Mr. Jia has even testified that TG does not have these documents. (*See* TG Chart at 2-3, citing Jia 34:11-15; 35:17-24, testifying that he did not receive BNBM's annual reports.)

Further, to the extent the "questioners" cite to unspecified allegations in the unserved *Amorin* Complaint in an attempt to support their request for further documents, their attempt is unavailing. The Complaint asserts no allegations that contradict the deposition testimony showing that TG is anything but a subsidiary of BNBM (*see* TG Chart at 2-3, 5-6), and, further, several witnesses testified that TG had no connection – and had not even heard of – BNBM USA or BNBM America. (TG Chart at 3, citing Jia 397:1-398:7; TTP Chart at 2, citing Peng 180:19-181:8.) Furthermore, please be advised that in our view a complaint that seeks relief based on allegations of supposedly improper litigation conduct, including refusing to accept service unless performed in accordance with international law, is scurrilous and improper and never should have seen the light of day. Although the complaint is objectionable in a number of other ways – including that all of the named plaintiffs are already plaintiffs in actions pending in the MDL – as another example we note your allegation that BNBM's corporate veil should be pierced because of the activities of an entity known as United

Suntech Craft, Inc. Our research, based on material available through the internet, reveals that United Suntech is a subsidiary of an entity known as CNBMI, and is in the garden tool supply business. It would be a mild understatement to suggest that these types of allegations cannot support any claim and have nothing do to with your argument that Defendants are subject to personal jurisdiction.

2. **Documents showing the relationship between TG/TTP and BNBM and its respective owners/shareholders, including:**

    a. **communications and documents relating to the formation of TTP.**

**Response:** This request is objectionable as vague, ambiguous, and overbroad to the extent it requests all documents "showing the relationship" between Defendants and BNBM. That aside, we refer to the June 6th Letter in which we explain that Defendants have already produced documents regarding guarantees provided by BNBM on behalf of TG (¶ 2); documents and communications relating to BNBM's acquisition of shares in TG (¶ 3); reports, analyses, or summaries regarding TG's operations or finances that have been provided to BNBM (¶ 4); and records concerning transactions between TG and TTP, including documents regarding the creation and initial capitalization of TTP (¶ 11). We note that there was also extensive deposition testimony provided on the relationship between Defendants and BNBM. (*See* TG Chart at 4-7; TTP Chart at 1-2.) Because you already have these documents and information in your possession, it is unclear what further documents you seek "showing the relationship" between these companies. We submit that everything responsive to this request has already been produced.

4. **TG/TTP documents reflecting marketing and sales efforts aimed toward the United States including territories Guam, US Virgin Islands, Puerto Rico, etc., including:**

    a. **drywall, and**

    b. **other products sold by TG/TTP.**

**Response:** All marketing materials responsive to this request have already been produced. (*See, e.g.,* TG 0025132.) We also draw your attention Defendants' Charts in which testimony regarding marketing is summarized. As you will see, the witnesses all testified that Defendants did not market or direct sales efforts toward the United States. (TG Chart at 7-8; TTP Chart at 7-8.)

We also direct your attention to the June 27, 2011 Supreme Court decisions in *J. McIntyre Machinery, Ltd. v. Nicastro* and *Goodyear Dunlop Tires Operations, S.A., et al. v. Brown*. As *Nicastro* in particular makes clear, a state cannot exercise personal jurisdiction based on a defendant's intent or expectation that its products will be sold throughout the United States. We ask you to reconsider your request in light of these decisions as it is our position that sales, marketing, and distribution outside the handful of states at issue in this case is not relevant.

6. **As to TTP:**

    a. **internal monthly reports of operations;**

    b. **communications between Jai [sic] and TTP, including reports;**

    c. **monthly reports sent to TG, BNBM, or other entities in the Taishan group;**

    d. **communications between Jai [sic] and Board of Directors;**

    e. **audited financial statements on a monthly basis;**

      f.      annual Reports; and

      g.      business plan for 2006 and 2007.

**Response:** We have produced all such documents located in Defendants' files. As our obligation to produce documents is a continuing one, however, we are continuing to search to see if any such documents exist.

7.    **Records or transactions of cost sharing between TG and TTP.**

**Response:** We refer you to deposition testimony of Mr. Zhang in which he testified that TG and TTP did not have any cost sharing agreements. (TG Chart at 4, citing Zhang 113:11-114:6.) Therefore, Defendants have no documents responsive to Plaintiffs' request for "cost sharing" agreements, records, or transactions.

8.    **Records of employees who dealt with sales of drywall to the United States including territories Guam, US Virgin Islands, Puerto Rico, etc., including:**

      a.      **payroll records;**

      b.      **personnel file including job descriptions and evaluations;**

      c.      **identification/business cards;**

      d.      **employment agreements; and**

      e.      **expense reports.**

**Response:** This new request is objectionable as oppressive, overbroad and unduly burdensome and irrelevant to the issue of personal jurisdiction. In response to this request, we reference the transcript of the June 9, 2011 conference before the Court in which Judge Fallon stated that you would have to explain why you needed each category of documents. (Transcript at 16.) Mr. Peng has already testified as to which employees were involved in the sales at issue in this matter. (*See* TTP Chart at 4.) As such, please explain why you need employment files, and, specifically, how these documents are relevant to the issue of whether the Court has personal jurisdiction over Defendants.

9.    **Documents regarding the decision to shut down TTP's drywall production.**

**Response:** These documents were not requested in the PSC's First Request for the Production of Documents. Further, you have not provided us with any explanation of how a decision to shut down a manufacturing operation could possibly lead to the discovery of admissible evidence based on that entity's contacts with a state (and, in fact, as the MPF shows, TTP stopped selling drywall in the dimension commonly used in the US before it ceased production).

10.    **Board minutes of BNBM and/or TG where either entity is, or both are, discussed including matters regarding operations and finance.**

**Response:** This request is objectionable because it is unintelligible. In the interest of comity, we assume that the "questioners" are requesting BNBM board minutes that discuss TG, and TG board minutes that discuss BNBM. Defendants are not in possession of any board minutes of BNBM and, as set forth above, as a subsidiary of BNBM have no ability or obligation to produce such board minutes. TG does not keep board minutes, but does keep board resolutions and is in possession of one board resolution that mentions BNBM, which it has produced. (*See* TG 0020787-0020788.)

4

11. **Documents reflecting the relationship with any of the exporters, agents, distributors, suppliers, and/or brokers that shipped products to the United States including territories Guam, US Virgin Islands, Puerto Rico, etc., including but not limited to those listed in the MPF.**

**Response:** All agreements, correspondence, invoices, and other documentation related to the sale and shipment of drywall as listed on the MPFs has already been produced by Defendants. (*See* June 6th Letter at ¶¶ 10, 12.)

We further refer you to the response to document request No. 4 and the discussion of the Supreme Court decisions therein. It is now clear that materials related to distribution outside of the states at issue is not relevant to the issue of personal jurisdiction.

12. **Any written or electronic communication, including but not limited to MSN, Instant Messenger, text messages, regarding the sale or shipment or possible sale or shipment of any product to United States including territories Guam, US Virgin Islands, Puerto Rico, etc., customers.**

**Response:** All such documents have already been produced. (*See* June 6th Letter at ¶¶ 10, 12.) We have confirmed that our document searches included MSN or IM-type documents, but none existed.

13. **Value Added Tax related documents and communications involving the export of product including representations made to the government of China and others regarding export of products.**

**Response:** As we have advised on numerous occasions, the Value Added Tax documents related to exports and provided to the government have already been produced. Indeed, these documents were specifically identified in our June 6th Letter. (*See, e.g.,* TG 0001632 – 01645, 0019858 – 19866, 0019947 – 19960.) In addition, to the extent any communications related to exports existed, they were produced.

14. **The fee information, guarantee contracts between BNBM and TG and related communications (see TG0020680).**

**Response:** You previously requested "all documents and communications relating to any guarantees provided by BNBM on behalf of TG." In our June 6th Letter, we stated that "TG has produced all documents concerning the guarantee provided by BNBM to TG that have been identified: TG 0020677–TG 0020681 and TG 0020795–TG 0020798. To the best of our knowledge, BNBM did not make any payments on TG's behalf under the guarantee." (¶ 2.) Our response remains the same – these documents have already been produced and no other responsive documents have been found.

15. **Records related to any ISO (International Standard Organization) certification, including but not limited to ISO 9001, ISO 14004, and ISO 10003.**

**Response:** As an initial matter, you have not explained why ISO certifications – which relate to the factory and its quality processes rather than its products – are relevant to the issue of whether this Court has personal jurisdiction over Defendants. It is our position that they are not. Furthermore, to the extent any ISO certifications were sent to customers, they have been produced. *See, e.g.,* TG 0025390, 0023955, 0023956, 0024010-12, 0024014, 0024087-89, 0025550-53, 0025388-91.

### Areas of inquiry for corporate depositions:

We are communicating with the Hogan Lovells office in Hong Kong in an attempt to arrange for accommodations there during the week of January 9, 2012, and we will advise you of their response as soon as is possible. It will be helpful to know how many questioners will attend as soon as you have that information available; given the Court's directives on this subject, we would anticipate no more than 4-5 questioners, but please advise us if that assumption is incorrect.

1. **The corporate organization of TG, including:**
   a. **the relationship and communications between them;**
   b. **the legal corporate structure; and**
   c. **interaction between the various members of the affiliated or related entities.**

**Response:** Although subpart (a) of this request is somewhat unintelligible, we note that Mr. Jia has already testified extensively about the corporate structure, ownership, operations, and management of TG, and TG's relationship to TTP, BNBM, and CNBM. Please see the TG Chart at 1-7, which summarizes Mr. Jia's testimony. Mr. Jia is the witness TG would designate under Federal Rule 30(b)(6) to testify on its behalf on these subject matters, and we do not believe that TG has further material testimony to offer on these subjects.

2. **The corporate organization of TTP, including**
   a. **the relationship and communications between them;**
   b. **the legal corporate structure; and**
   c. **interaction between the various members of the affiliated or related entities.**

**Response:** Although subpart (a) of this request is somewhat unintelligible, we note that Mr. Jia and Mr. Zhang have already testified extensively about the corporate structure, ownership, operations, and management of TTP, and TTP's relationship to TG and BNBM. Please see the TG Chart at 1-7 and the TTP Chart at 1-6, which summarize Mr. Jia and Mr. Zhang's testimony. Messrs. Jia and Zhang are the witnesses Defendants would designate under Federal Rule 30(b)(6) to testify on their behalf on these subject matters, and we do not believe that TG has further material testimony to offer on these subjects.

3. **A corporate organizational chart of related entities from BNBM upstream and downstream, including:**
   a. **the relationship and communications between them;**
   b. **the legal corporate structure; and**
   c. **interaction between the various members of the affiliated or related entities.**

**Response:** As explained above, documents related to BNBM's upstream entities are not within the possession, custody or control of Defendants. To the extent TG has limited information related to the organization and structure of BNBM and CNBM and their relationship to TG, this topic has already been covered in the deposition of Mr. Jia. (*See* TG Chart at 2-3 and 5-7.) We do not believe further corporate testimony is even available regarding these subjects.

4. **Marketing, sales and shipping documents related to the United States including territories Guam, US Virgin Islands, Puerto Rico, etc. market.**

**Response:** We submit that the topic of marketing has already been extensively covered in the depositions. We further refer you to the response to document request No. 4 and the discussion of the Supreme Court decisions therein. Additionally, all three of Defendants' witnesses already testified that Defendants did not market their product in the United States and certainly did not target any particular state. (*See* TG Chart at 7-8; TTP Chart at 7-8) To the extent Plaintiffs have any follow up questions regarding marketing, Mr. Peng, who headed each of the Defendants' international sales teams at the relevant times will testify as to this topic. Mr. Peng will also represent Defendants on issues of sales and shipping.

5. **Loans and expense sharing between the related and relevant entities.**

**Response:** We refer you to deposition testimony of Mr. Zhang in which he testified that TG and TTP did not have any cost sharing agreements. (TG Chart at 4, citing Zhang 113:11-114:6) Mr. Jia further testified that TG and BNBM did not share manufacturing or sales capabilities. (TG Chart at 6.)

6. **Customer survey and testing done by the Chinese government, including:**

   i. **the complaints that prompted the testing of the drywall and customer survey;**

   ii. **any and all documents and communications relating to the test building constructed by TG;**

   iii. **all documents and communications relating to the customer survey performed by TG in investigation of the allegations concerning Chinese drywall; and**

   iv. **any sales and marketing materials the Taishan Defendants created as a result of the testing and customer survey;**

   v. **who they were distributed t [sic]**

**Response:** In response to this request, we reference the transcript of the June 9, 2011 conference before the Court in which Judge Fallon stated that you would have to explain why you needed each category of documents. (Transcript at 16.) You will recall that we objected to this line of questioning in during Mr. Jia's testimony as irrelevant to the issue of personal jurisdiction (Jia 369:20-370:2) and then permitted Mr. Jia to testify to the extent of the company's knowledge on its response to reports of problems with the drywall in the U.S. There is no basis to go further. Plaintiffs have not provided us with any explanation as to how surveys of TG customers *in China* could relate to the issue of TG's contacts with a state in the US. Further, Mr. Jia has already testified that the results of the testing and customer survey were not incorporated into TG's marketing materials. (Jia 374:17-375:5.)

We have already produced the documents concerning the complaints leading to the testing of the drywall. (*See* June 6th Letter, ¶ 7.) Any questions regarding these complaints from United States customers can be addressed to Mr. Peng in connection with his testimony on sales and distribution.

7

7.  **ISO Certification**

**Response:** As stated in response to document request no. 15, you have not explained why ISO certifications are relevant to the issue of whether this Court has personal jurisdiction over Defendants. Please explain why you require testimony on this topic.

8.  **Monthly reports of TTP operations, including:**
    i.   **communications between Jia and TTP, including reports;**
    ii.  **monthly reports generated by TTP and sent to TG;**
    iii. **communications between Jia and Board of Directors; and**
    iv.  **audited financial statements received on a monthly basis.**

**Response:** As we explained in our response to document request No. 6, Defendants have not located copies of these documents in their files. However, we advise that Mr. Jia has already testified as to communications between him and TTP management and TTP's Board of Directors, and also generally about the content of TTP's reports and financial statements. (*See* TTP Chart at 3.)

9.  **Documents, communications, board minutes, and the exchange of monies between TG and TTP and/or BNBM relating to licensing agreements, leasing agreements, and equipment purchase agreements (similar to those documents produced at the first day of T. Jia deposition.)**

**Response:** Plaintiffs have already questioned the witnesses regarding any agreements between TG and TTP, and TG and BNBM. (*See* TG Chart at 4-6.) As Plaintiffs have provided no basis on which to reopen depositions on these topics, we do not believe further testimony is necessary.

10. **The 13 areas of document production set forth in the Hogan Lovells letter of June 6, 2011 and the documents requested above.**

**Response:** The categories set forth in our June 6th Letter have previously been designated as topics for depositions. As we have stated, we believe the only topics inadequately covered by the April depositions concern the sale and distribution of drywall and Defendants' contacts with the United States. You have provided no basis which to reopen the depositions on these other topics. We ask that you please re-review the TG and TTP Charts and consider what topics have already been covered and what information you further need on the issue of personal jurisdiction.

11. **The individual who has most knowledge regarding the contents of the profile form. This person should have knowledge of the information regarding sales used to complete the profile form, and based upon prior testimony, we understand that this would be the manager of sales, Ting Huan Fu.**

**Response:** As a preliminary matter, 30(b)(6) depositions do not require that the witness with the "most knowledge" testify on behalf of the corporation; rather, any person "with knowledge" can appear. *See* FRCP 30(b)(6); *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 311 (S.D.N.Y. 2003) ("[I]t is settled law that a party need not produce the organizational representative with the greatest knowledge about a subject; instead it need only produce a person with knowledge whose testimony will be binding on the party".). In any case, we have advised you many times that Mr. Peng is the

8

most knowledgeable person regarding the Defendants sales of drywall manufactured to the dimensions commonly used in the US, and Defendants' contacts, or the absence thereof, with the US. Mr. Peng testified that he personally participated in the sales on the MPFs and in the preparation of the MPFs themselves. (Peng Tr. 342:17-343:10; 346:23-347:2; 352:5-13.) For this reason, we are surprised that you would state that "based upon prior testimony" Mr. Fu Ting Huan would have the most knowledge. He does not, nor did any witness testify that he does. As we have previously advised, Mr. Peng will serve as Defendants 30(b)(6) representative for all sales listed on the MPFs.

12. **The following individuals are requested for deposition, including:**
    a. **Apollo Yang;**
    b. **Bill Cher; and**
    c. **the corporate representative(s) that is/are most knowledgeable about the above areas.**

**Response:** As we have advised on numerous occasions, including during our phone conference of June 8, 2011, Mr. Yang is no longer employed by Defendants.

Bill Cher, whose Chinese name is Che Gang, worked under Mr. Peng at TTP. Mr. Peng has reviewed all of the sales records in the possession of Defendants and can testify as to these matters. If you are concerned that Mr. Peng does not have detailed knowledge on any specific topic, please provide the topic that concerns you and we will assure that Mr. Peng discusses it with Mr. Che so that he can answer your questions as TTP's corporate representative.

Defendants have expended considerable time and energy compiling the information provided in the June 6th Letter and Charts of deposition testimony in the hopes that questioners would review this correspondence and determine what documents and information they required to brief the pending motions to vacate/dismiss; however, it seems this effort has been for naught. The requests presented in your June 23rd letter are the same recycled requests Plaintiffs have been making for the last several months.

Defendants have expended considerable time and energy compiling the information provided in the June 6th Letter and Charts of deposition testimony in the hopes that questioners would review this correspondence and determine what documents and information they required to brief the pending motions to vacate/dismiss; however, it seems this effort has been for naught. The requests presented in your June 23rd letter are the same recycled requests Plaintiffs have been making for the last several months.

The Court has mandated that Plaintiffs review what they already have and determine what they *need* in the context of personal jurisdiction. Although we have been asking since April, we have still not received any explanation as to what facts Plaintiffs still require to move forward. We submit that the only topics not fully explored during the depositions were those relating to sales and distribution of drywall and Defendants' contacts with the United States. We request that you re-review our June 6th letter and the Charts, and, if you do not come to the same conclusion, provide us with an itemization of the specific information you actually need and how you claim it is relevant to determining whether TG or TTP has minimum contacts with any of the states at issue in the MDL complaints filed against our clients.

Sincerely,

Frank T. Spano

Partner
frank.spano@hoganlovells.com
D 212 918 3522


cc:   Hon. Eldon E. Fallon
      Arnold Levin
      Russ Herman
      Chris Seeger
      Ervin Gonzalez
      Richard Serpe
      Patrick Montoya
      Fred Longer
      Nick Panayotopoulos
      Jane Byrne
      Julia Beskin
      Hillarie Bass
      Dorothy Wimberly
      Mark Salky
      Tim Kolaya
      Ken Hardt
      Jim Garner
      Matthew Clark
      Carlina Eiselen
      David Black
      Ted Brenner
      Gerald E. Meunier
      Rick Stanley
      Tom Owen