19. 泰山从未在弗吉尼亚州纳税或产生任何纳税义务。

20. 泰山并未在弗吉尼亚州注册从事业务。

21. 泰山从未在弗吉尼亚州组建过任何实体。

22. 泰山从未在弗吉尼亚州有过任何公司簿册或记录。

23. 泰山在弗吉尼亚州没有邮寄地址或电话号码。

24. 泰山在弗吉尼亚州没有高级职员、董事、员工或代理人。泰山的高级职员、董事、员工或代理人在弗吉尼亚州均无住所或营业地。

25. 泰山的高级职员、董事、员工或代理人均未以商务目的到访过弗吉尼亚州。

26. 大约2005年11月，Tobin Trading Inc. 的Phillip Perry与泰山取得联系，问询泰山的石膏板。Perry先生声称代理一家名为Venture Supply Inc. （"Venture Supply"）的弗吉尼亚公司。

27. Perry先生大约在2005年11月份到中国访问泰山，在其首次访问泰山期间，Perry先生代表Venture Supply与泰山经磋商达成了一份销售石膏板的合同。

28. 2005年11月17日签署的首份合同是在中国泰安起草并签署的，随附附件A为该合同的复印件。合同规定，石膏板应依照"中国GB/T9775-1999的相应标准" 生产。根据合同条款，Venture Supply在中国购买石膏板，并负责将石膏板运至其要求的目的地。装运前，作为Venture Supply的代表，Perry先生负责在中国检查石膏板并确保质量、规格和包装均符合Venture Supply的要求。泰山则负责遵守合同条款以及依据Venture Supply 的安排在中国交付石膏板。另外，2005年11月17日签署的合同含有仲裁条款，该条款规定，"由本合同引起的所有争议"如无法通过友好协商解决的，

3

应交由中国国际贸易促进委员会对外贸易仲裁委员会（现名为中国国际经济贸易仲裁委员会（"CIETAC"））仲裁解决。

29. 2005年12月16日，Venture Supply的代理人Perry先生来到泰山，在检验石膏板后同意将石膏板运至连云港港口。随附附件B为其验货证明书的复印件。Perry先生在验货证明书中证实其已在中国验货并且货物符合Venture Supply的规格和质量要求。

30. 同日，泰山与Venture Supply签署了第二份合同。随附附件C为该合同的复印件，与第一份合同一样，该合同亦在中国泰安市磋商并起草。Perry先生代表Venture Supply在中国泰安市与泰山签署了第二份合同。与第一份合同一样，第二份合同规定在中国出售石膏板，并要求Venture Supply负责安排运输以及相关费用。同样，第二份合同要求Perry先生在泰山工厂和中国装货港验货，以确保质量、规格和包装均符合Venture Supply的要求。与第一份合同一样，该合同亦含有仲裁条款，指定在中国由CIETAC仲裁解决任何因该合同而引起的主张。

31. 2006年3月11日前后，Perry先生再次来到泰山检验石膏板并同意将石膏板运至装货港。随附附件D为其验货证明书的复印件。同样，Perry先生在该份验货证明书中证实其已在中国检验石膏板并且石膏板符合买方的规格和质量要求。

32. 根据上述两份合同，Venture Supply负责将石膏板运送至最终目的地，另外还负责石膏板的所有权在中国转移至Venture Supply后的保险事宜。

33. 在中国港口交付石膏板之后，泰山与该等石膏板就再无关系。对于泰山在中国依据该等合同供应的石膏板是否被分销到弗吉尼亚州或在弗吉尼亚州使用，泰山毫不知情。

34. 随附附件E为Venture Supply采购石膏板的山东省泰安市出口商品专用发票汇总。该等发票系由泰山为税务目的在Venture Supply交易完成后开具的。该发票显示

4

Venture Supply 在中国从泰山总计购买了153,912张石膏板。发票也列明交付条款为"FOB",即Venture Supply在中国采购石膏板,并负责安排装运至其要求的目的地并支付费用。

35. 泰山的员工或代表从未为Venture Supply合同或石膏板业务相关的其他事项而访问过弗吉尼亚州。

36. 除与Venture Supply签署的两份合同外,泰山未与位于弗吉尼亚州的任何其他实体签订过任何其他合同。泰山也未与专向弗吉尼亚州供应石膏板的公司签订过任何其他合同。

37. Venture Supply将石膏板货款均付到了泰山在中国的银行账户内。

38. 泰山和Venture Supply的两笔交易都发生在中国。这是泰山向在美国的客户出售石膏板的唯一交易。

39. 泰安泰山纸面石膏板有限公司("TTP")是于2006年2月成立的泰山全资子公司。TTP只在中国生产和销售石膏板。TTP并未与任何位于弗吉尼亚州的公司签订过任何合同。TTP与弗吉尼亚州没有任何的联系接触。

40. 鉴于泰山与弗吉尼亚州没有联系,以及以下提及的其他原因,本人代表泰山恳请贵法院谅解泰山未在本案审判中应诉。

41. 泰山并非有意冒犯法庭或挑战其权威。鉴于泰山与弗吉尼亚州没有接触,以及以下提及的其他原因,泰山当时真的认为泰山没有必要应诉。

42. 泰山从未在美国或世界上其他国家牵涉入该种性质的诉讼。对于弗吉尼亚州或美国的诉讼程序,泰山没有任何经验和知识可言。

5

43. 泰山员工所掌握的英语程度也无法达到能够阅读并理解以英文书写的法律文书的水平。因此，发往泰山的仅以英文书写的法律文书均未经泰山仔细探究，故而泰山并不理解不对经修订的起诉书做出回应的后果。

44. 泰山员工对美国司法程序一无所知，也无法理解美国诉讼中所提出的权利主张的性质或后果。即使相关文件翻译成中文，这一问题依然存在。

45. 泰山仅从中国法院收到本案相关的一份文件，即经修订的起诉书。中国法院并未向泰山提供任何其他文件，并且泰山到目前为止尚未收到与本案相关的任何其他中文文件。

46. 在收到本案的经修订的起诉书时，泰山并不理解本案怎么会有可能直接牵涉到泰山。因为泰山仅在中国销售石膏板，从来在美国销售过任何石膏板。泰山在中国向Venture Supply销售石膏板的事宜受仲裁条款管辖，该条款规定合同争议在中国通过仲裁解决。泰山在中国将石膏板交付给Venture Supply后，便不再与其出售给Venture Supply的石膏板有任何牵连。泰山遵守了其合同义务，并且没有理由认为泰山的石膏板有任何质量问题。

47. 泰山现在意识到法院已做出缺席判决，为了公司的声誉，泰山不得不进行抗辩，并申请撤销该份判定泰山产品存在缺陷的判决。泰山在美国聘请了律师，并认定有必要应诉并参加本案诉讼。泰山下定决心在本案中应诉，从而对贵法院的司法管辖权提出异议以及在其他方面为其进行必要的辩护。

48. 泰山的当务之急是寻求撤销本案的缺席判决。泰山恳请贵法院撤销缺席判决，让泰山有机会针对提出的诉求进行抗辩。

本人根据美利坚合众国法律项下的伪证处罚规定声明，上述内容真实、准确。

签署于 2010 年 8 月 15 日。

_____

贾同春

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED * MDL No. 2047
DRYWALL PRODUCTS LIABILITY *
LITIGATION * SECTION L
 *
 * JUDGE ELDON E. FALLON
 *
 * MAGISTRATE JUDGE
 * JOSEPH C. WILKINSON, JR.
 *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* *

THIS DOCUMENT RELATES TO: *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 09-6687

PEOPLE'S REPUBLIC OF CHINA

CITY OF SHANGHAI

### DECLARATION OF YUEN HIU SUM

This is a declaration being made in accordance with and pursuant to 28 U.S.C. § 1746.

I, Yuen Hiu Sum, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1. I am over eighteen (18) years of age, am competent to testify to the matters contained herein, and have personal knowledge of these facts.

2. I am a senior translator with the law firm of Hogan Lovells International LLP, and work in the firm's office in Shanghai, China.

3. I am fluent in the languages of Chinese and English.

4.  Based upon my ability to speak, read, and write Chinese and English fluently, I have been responsible for translating various communications and documents relating to the above-captioned lawsuit.

5.  Among the documents I have translated is the Declaration of Jia Tongchun, Chairman of the Board and General Manager of Taishan Gypsum Co., Ltd., which is being filed in support of Taishan Gypsum Co. Ltd.'s Motion to Vacate the Default Judgment and Dismiss the Complaint.

6.  I hereby certify that I translated the Declaration between the English and Chinese languages. I further certify that the English version of the Declaration is a true and accurate translation of the Chinese version of the Declaration. I also certify that the English version of the Declaration and the Chinese version of the Declaration, both of which Jia Tongchun signed, are accurate translations of one another.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 2, 2010.

_____
Yuen Hiu Sum

**12**

*The Stock Exchange of Hong Kong Limited takes no responsibility for the contents of this announcement, makes no representation as to its accuracy or completeness and expressly disclaims any liability whatsoever for any loss howsoever arising from or in reliance upon the whole or any part of the contents of this announcement.*



# CNBM
# China National Building Material Company Limited *
# 中 國 建 材 股 份 有 限 公 司

*(a joint stock limited company incorporated in the People's Republic of China with limited liability)*

(Stock code: 3323)

## CONNECTED TRANSACTION
## ACQUISITION OF THE ENTIRE EQUITY INTEREST IN
## TAIAN DONGLIAN INVESTMENT TRADING COMPANY LIMITED
## CONNECTED TRANSACTION
## PROVISION OF FINANCIAL ASSISTANCE TO
## TAIAN STATE OWNED ASSETS MANAGEMENT COMPANY

**Financial Adviser**

ANGLO CHINESE
CORPORATE FINANCE, LIMITED

---

On 28 August, 2006, the board of directors of the Company announced that BNBM, a 52.4% owned subsidiary of the Company, entered into the following transactions:

**I. ACQUISITION OF THE ENTIRE EQUITY INTEREST IN DONGLIAN**

On 28 August, 2006, BNBM, Liu Huan and Jiao Wen Bo entered into the Share Transfer Agreement whereby BNBM proposes to acquire all the equity interest in Donglian, which holds 23% of the equity interest in Taihe, for a consideration of Rmb114,540,000. Liu Huan is the vendor of 80.13% of equity interest in Donglian whereas Jiao Wen Bo is the vendor of 19.87% of equity interest in Donglian.

**II. PROVISION OF FINANCIAL ASSISTANCE TO STATE OWNED COMPANY**

On 28 August, 2006, BNBM and State Owned Company entered into the Loan Agreement whereby BNBM agreed to grant a loan of Rmb 50 million to State Owned Company for a period of one year. It is a condition of the Loan Agreement that State Owned Company shall pledge the 16% of equity interest in Taihe, a subsidiary of BNBM, that it owns as collateral for the Loan. State Owned Company undertakes to BNBM that the equity interest pledged by it is free from encumbrances.

> The Acquisition and the provision of the Loan are independent transactions not conditional on each other.
>
> Each of the Acquisition and the provision of the Loan constitutes a connected transaction of the Company under Chapter 14A of the Listing Rules. As each of the percentage ratios (other than the profits ratio) is on an annual basis less than 2.5%, the provision of the Loan is only subject to the reporting requirements and is exempt from the independent shareholders' approval requirements under Rule 14A.34 of the Listing Rules. The Acquisition is subject to reporting and announcement requirements under the Listing Rules and the approval of the independent shareholders of the Company.
>
> No shareholder of the Company is required to abstain from voting if the Company were to convene a special general meeting for the purpose of approving the Acquisition because no substantial shareholders of the Company has an interest that is different from that of other shareholders in relation to the Acquisition. A written approval on the Acquisition will be obtained from China National Building Material Group Corporation, the parent company and a substantial shareholder of the Company, and the three wholly owned subsidiaries of China National Building Material Group Corporation, namely Beijing New Building Material (Group) Company Limited, China National Building Material Import and Export Company and China Building Materials Academy, which collectively hold approximately 60.34% of the issued shares in the Company as at the date of this announcement. The Company will apply for a waiver under Rule 14A.43 of the Listing Rules to The Stock Exchange of Hong Kong Limited from convening the extraordinary meeting to approve the Acquisition. A circular containing, among other things, details of the Acquisition, a letter of advice from each of the independent board committee of the Company and the independent financial adviser on the Acquisition will be despatched to the shareholders of the Company as soon as practicable.

## I. ACQUISITION OF THE ENTIRE EQUITY INTEREST IN DONGLIAN

The board of directors of the Company announces that BNBM proposes to acquire all the equity interest in Donglian on and subject to the terms of the Share Transfer Agreement.

**Date of the Share Transfer Agreement**

28 August, 2006

**Parties**

BNBM as the purchaser

Liu Huan as the vendor of 80.13% of equity interest in Donglian

Jiao Wen Bo as the vendor of 19.87% of equity interest in Donglian

**Assets to be acquired**

Subject to the fulfillment of the conditions of the Share Transfer Agreement, BNBM will acquire from Liu Huan and Jiao Wen Bo the entire equity interest in Donglian which in turn holds a 23% equity interest in Taihe. The equity interest to be acquired will be acquired free from encumbrances.

After the completion of the Share Transfer Agreement, the effective shareholding of BNBM in Taihe will increase from 42% to 65%. BNBM has gained long term control of Taihe's board of directors in connection with the acquisition of the 42% equity interest in Taihe in April 2005. Therefore, Taihe is accounted for as a subsidiary of BNBM before and after the Acquisition.

**Consideration**

The consideration payable by BNBM for the equity interest in Donglian is Rmb114,540,000, which was determined after arm's length negotiations between BNBM and the vendors. The consideration will be financed partly from the internal resources and partly from the external borrowings of CNBM Group. Details of the financing have yet to be finalised as at the date of this announcement.