UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LITIGATION** | **MDL No.: 2047**<br>**SECTION: L**<br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |
| **THIS DOCUMENT RELATES TO:**<br><br>Hobbie v. RCR Holdings II, LLC, et al.<br>No. 10-1113 | |

### RCR HOLDINGS II, LLC'S RESPONSE IN OPPOSITION TO ARCH INSURANCE COMPANY'S MOTION TO DISMISS THIRD-PARTY COMPLAINT OR ALTERNATIVELY TO TRANSFER VENUE

The Court should deny Third-Party Defendant ARCH INSURANCE COMPANY's Motion to Dismiss Third-Party Plaintiff RCR HOLDINGS II, LLC's Third-Party Complaint because the Court has jurisdiction over this action, and this case does not involve the rare and exceptional circumstances necessary for the Court to surrender that jurisdiction. Furthermore, ARCH's motion to transfer venue must be denied because ARCH, as a third-party defendant, is not entitled to seek transfer; ARCH is judicially estopped from requesting transfer based on its representations in Florida state court; and Florida will not be a more convenient forum for the action.

### LITIGATION HISTORY

In 2009, RCR and Coastal Construction of South Florida were sued by condominium unit owners who alleged their units had been built using Chinese drywall. (DE 9941-4, ¶2). This litigation was brought in Florida state court and was styled *Wendy Lee Hobbie et al. v. RCR, Coastal Construction of South Florida d/b/a Coastal Condominiums, et al.*, Case No. 50

2009CA032471. (DE 9941-4, ¶ 2). The action was removed to federal court (by a defendant other than RCR) under the Class Action Fairness Act. (DE 1-1). The district court *sua sponte* transferred the action to the instant MDL proceedings. (DE 9941-4, ¶ 3).

RCR was the developer and initial owner of the condominiums and Coastal Construction was the contractor. (DE 9941-4, ¶1). ARCH Insurance Company had issued a Performance Bond on behalf of Coastal, in favor of RCR. (DE 9941-4, ¶ 1). In an attempt to have its rights under the Performance Bond adjudicated expediently, RCR sued ARCH in Florida state court, thereby attempting to avoid the congestion created in the instant Court by the massive Chinese-Manufactured Drywall Products Liability Litigation. (*See* DE 9941-1). ARCH, however, moved to stay the action pending resolution of the instant federal action. (DE 10163-1). It argued that the issues regarding RCR's liability to the condominium unit owners and Coastal's breach of the construction contract should be adjudicated in the instant action rather than in Florida state court. (*Id*).

The Florida trial court determined that because the first-filed federal action involved substantially similar issues and parties as the state action, such that the federal action would resolve many of the issues presented in the state action, principles of comity supported entry of a stay. (DE 9941-4, p. 4-5). Thus, because ARCH wanted to have the issues regarding Coastal's liability to RCR under the performance bond, and, consequently, ARCH's derivative liability to RCR, adjudicated in federal court rather than state court, RCR filed a Third-Party Complaint against ARCH in the instant proceedings. Apparently deciding that it does not now want what it asked for, ARCH has moved to dismiss RCR's Third-Party Complaint, contending in an about-face that RCR must adjudicate these issues in the state court action.

## THE COURT HAS SUPPLEMENTAL SUBJECT MATTER JURISDICTION OVER RCR'S THIRD-PARTY ACTION

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 USC § 1367(a). In order to obtain a stay in the Florida trial court, ARCH argued that the state and federal actions involve substantially similar parties and issues. Thus, the Court need look no further than ARCH's own representations to determine that the claims in RCR's Third-Party Complaint are so related to the claims in the instant action that they are part of the same case or controversy, thereby satisfying § 1367(a).[1] And ARCH is judicially estopped from arguing otherwise. *See Zedner v. U.S.*, 547 U.S. 489, 504 (2006) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (internal quotations omitted).

## RCR HAS NOT WAIVED FEDERAL SUBJECT MATTER JURISDICTION

Unlike *American International Underwriters (Philippines), Inc. v. Continental,* 843 F.2d 1253 (9th Cir. 1988), this case does not involve a plaintiff who first extensively litigated an

---

[1] Furthermore, ARCH admits in its motion that the question of whether the Court has jurisdiction under 28 U.S.C. 1332(d) "must be resolved by discovery as to the citizenship of the purported class plaintiffs." (Motion, p. 6). RCR agrees that this issue cannot be resolved until such discovery has been conducted, and the Court has provided for this discovery in its recent Scheduling Order. (See DE 9847).

action in state court and then refiled the exact same action in federal court, in an obvious example of forum shopping. In this case, a *defendant* bogged down in federal multi-district litigation consisting of 299 pending actions,[2] sought, in state court, to obtain coverage under a Performance Bond from a *non-party* to the federal litigation, believing the issues in the two actions were not sufficiently similar enough to warrant consolidation into one action. It was only *after* the non-party to the federal litigation successfully argued in state court that it was substantially identical to one of the federal litigants, and that the issues in the federal and state actions were substantially similar enough that they should all be decided by the federal court, that the defendant in the federal action decided to refile the state action in federal court as a Third-Party Complaint. Quite plainly, ARCH has gotten what it told the Florida state court that it wanted—the issues of its liability to RCR under the performance bond litigated in federal court. It cannot be heard to complain now.

## THE FEDERAL RULES OF CIVIL PROCEDURE ALLOW RCR TO BRING A THIRD-PARTY DEFENDANT INTO THE MDL

Under Federal Rule of Civil Procedure 14(a)(1), "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." In accordance with that rule, RCR obtained leave of Court to bring ARCH into the MDL as a third-party defendant. (DE 9107). As ARCH admits, a district court

---

[2]*See* http://www.jpml.uscourts.gov/Pending_MDL_Dockets-By-District-July-2011.pdf, last visited August 22, 2011. In its motion to dismiss, ARCH attempts to cast RCR's comments regarding the congestion of this Court's docket in a negative light. Contrary to ARCH's characterization of RCR's comments as "disparaging," RCR was merely stating the obvious—federal courts are overburdened, particularly those courts that preside over massive MDL actions such as the Chinese-Manufactured Drywall Products Liability Litigation. RCR is sympathetic to

judge presiding over multidistrict litigation has the power to preside over all pretrial issues. (DE 9941, p. 8). Ruling on motions to file third-party complaints is one such pretrial issue. *See In re U.S.*, 733 F.2d 10, (2d Cir. 1984) (holding district court acted within its authority when ruling in multidistrict litigation that third-party complaints were permissible). There is no reason that the instant Court should be deprived of the same authority.

## THIS CASE DOES NOT INVOLVE THE RARE AND EXCEPTIONAL CIRCUMSTANCES NECESSARY FOR THE COURT TO SURRENDER ITS JURISDICTION

The United States Supreme Court and the Fifth Circuit Court of Appeals have held that district courts should abstain from exercising their federal jurisdiction and defer to a concurrent state court only under rare and exceptional circumstances. This is because federal courts have a "virtually unflagging obligation...to exercise the jurisdiction given them" and "as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). No rare and exceptional circumstances exist in this case that would warrant the Court departing from these fundamental principles of law by declining the exercise jurisdiction over RCR's Third-Party Complaint.

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District court to adjudicate a controversy properly presented before it. Abdication of the obligation to decide cases can be justified under this doctrine only [under] exceptional

---

the plight faced by our federal courts and their difficult duty of making scarce judicial resources provide for the ever increasing needs of litigants seeking access to the courts.

circumstances," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1982) (quoting *Colorado River*, 424 U.S. at 813). Technically, the "*Colorado River* doctrine is not a recognized form of abstention," *Coopers v. Lybrand v. Sun-Diamond Growers of California*, 912 F.2d 1135, 1137 (1990)(citations omitted), but "is a form of deference to state court jurisdiction." *Id*. (citations omitted).

> As explained in *Nationstar Mortgage v. Knox*, 351 Fed. Appx. 844 (5th Cir. 2009):
>
> The Colorado River doctrine applies only when there are pending parallel proceedings in federal and state court involving the same parties and issues. *RepublicBank Dallas, Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987). The doctrine applies only in "exceptional circumstances", *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir.2002), and rests on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation", *Colo. River*, 424 U.S. at 813, 817, 96 S.Ct. 1236 (quoting *Kerotest Mfg.*, 342 U.S. at 183, 72 S.Ct. 219) (alteration in original).
>
> There are six factors for determining whether "exceptional circumstances" exist: (1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.
>
> *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395 (5th Cir. 2006). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "*Only the clearest of justifications will warrant dismissal.*" *Id*. at 16, 103 S.Ct. 927 (emphasis in original).

351 Fed. Appx. at 851. "The decision whether to stay or dismiss a federal action on grounds of wise judicial administration does not rest on a mechanical checklist, but on a careful balancing of the important factors . . . relevant to the decision as they apply in a given case, *with the balance heavily weighted in favor of the exercise of jurisdiction*." *Moses*, 460 U.S. at 2 (emphasis

added). "Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one." *Travelers v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).

1. **ARCH is judicially estopped from moving this Court to dismiss RCR's Third-Party Complaint based on deference to the state court action, when ARCH successfully moved to stay the state court action in deference to the federal litigation.**

ARCH successfully moved to stay the state action "in deference to the first-filed federal action." (DE 10163-1, p. 2). Now it asks this Court to dismiss it from the federal action in deference to the state court action. If ARCH is successful in getting both courts to defer to the other, then it will have essentially immunized itself from litigation in this action, even though ARCH admits that it essentially stands in the shoes of Coastal, who is a defendant in the federal litigation. (*Id.*, p. 5). ARCH is judicially estopped from taking the inconsistent positions that it should be excused from litigating the state court action in deference to the federal action, and that it should be excused from litigating the federal action in deference to the state action. *See Zedner v. U.S.*, 547 U.S. 489, 504 (2006) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (internal quotations omitted). ARCH effectively picked the option of litigating this matter in federal court when it successfully stayed the state action. ARCH must now live with its decision.

2. **The Balance of the Factors Favor the Court's Exercise of Jurisdiction.**

Balancing the relevant *Colorado River* factors does not result in a shift from the heavily weighted position in favor of the Court's exercise of jurisdiction.

a. Assumption by either state or federal court over a *res*—As admitted by ARCH, this factor weighs against dismissal of RCR's Third-Party Complaint because there is no particular *res* involved in this action.

b. Relative inconvenience of the fora—Contrary to ARCH's argument, this factor favors adjudication of RCR's Third-Party complaint in the instant federal action. ARCH has admitted that its liability to RCR is derivative to Coastal's liability to RCR, which is being litigated in the instant federal action. Thus, ARCH raises a red herring when it argues that the location of the construction project underlying the *Hobbie* action, and the evidence related thereto, being in Florida makes Louisiana an inconvenient forum, because these factual and evidentiary matters are already being taken up in the federal action. There will be no additional inconvenience caused by bringing the issue of ARCH's derivative liability into the mix in the federal action. Indeed, when deciding where to venue the Chinese-Manufactured Drywall Products Liability Multidistrict Litigation, the United States Judicial Panel on Multidistrict Litigation determined that "the actions involve common questions of fact, and that centralization under Section 1407 in the Eastern District of Louisiana will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. All actions share factual questions concerning drywall manufacturer in China, imported to and distributed in the United States, and used in the construction of houses; plaintiff in all actions allege that the drywall emits smelly, corrosive gases. Centralization under Section 1407 will eliminate duplicative discovery, including any discovery on international parties; prevent inconsistent pretrial rulings, particularly those with

respect to class certification issues; and conserve the resources of the parties, their counsel and the judiciary." (July 15, 2009 Transfer Order). The Panel noted that while "[n]o district is a clear focal point of this litigation", if was persuaded that "the Eastern District of Louisiana is a preferable transferee forum for this litigation." (*Id*.). As there has already been a judicial determination that the issues in the action against ARCH (which, as ARCH claims, are the same as the issues in the federal litigation against Coastal) are more conveniently adjudicated in the multidistrict litigation venued in the Eastern District of Louisiana, the factor of the relative inconvenience of the for a must weigh in favor of the Court exercising jurisdiction over RCR's Third-Party Complaint.

c. Avoidance of piecemeal litigation—This factor weighs even more heavily in favor of the Court continuing to exercise jurisdiction in this matter. As ARCH argued in the state court action, substantially the same issues and parties are involved in the federal action. Thus, this Court will already be deciding the majority of issues necessary to resolve the state court action. It would create piecemeal litigation to do what ARCH's requests—by dismissing the Third-Party Complaint, the state court will be required to decide the few issues particular to that case that aren't already part of the federal action, namely ARCH's individual defenses, when those issues will be more easily resolved in the federal action. Furthermore, the state court stayed that action in favor of the federal action because it wanted the federal court to be the one to decide all of these issues in order to avoid duplication of effort. (DE 9941-4, p. 5). The fact that the state court has made no substantive rulings and will not do so pending the

federal action militates against dismissing RCR's Third-Party Complaint. *See Madonna*, 914 F.2d at 1369 (finding merit to argument that there would be no piecemeal litigation by allowing parallel federal action when "the state court had made no rulings whatsoever in regard to [the] dispute, [so] there [was] no certainty that duplicative effort would result." ARCH's claim that allowing the federal action to proceed could lead to inconsistent results must also fail as "whichever court were to first reach a judgment on the merits, that judgment would most likelys have conclusive effect on the other court." *Id*. (citation omitted). This likelihood is certainly supported by the trial court's decision to stay the state court action in deference to the federal action.

d. Order in which jurisdiction was obtained by the concurrent fora—Application of the *Colorado River* exceptional circumstances test also requires looking into the order in which the concurrent forums obtained and exercised jurisdiction. *Colorado River*, 424 U.S. at 818. This factor is motivated by efficiency concerns and is based on the idea that the court that obtains and exercises jurisdiction first is more likely to resolve the litigation promptly. *See Holder v. Holder*, 305 F.3d 854, 871 (9th Cir. 2002). Priority should not be measured solely by which complaint was filed first, but rather in terms of how much progress has been made in the two actions. *Moses*, 460 U.S. at 21; *Madonna*, 914 F.2d at 1370. As absolutely no progress has been made in the state court action, and, given the stay, none will be made until the conclusion of the federal action, this factor also militates in favor of this Court exercising jurisdiction over RCR's Third-Party Complaint.

e. Extent federal law provides the rules of decision on the merits—The *Colorado River* analysis also requires an examination of whether federal or state law provides the rule of decision on the merits. *Moses*, 460 U.S. at 24. The presence of state law may weigh in favor of abstention of jurisdiction only "in some rare circumstances." *Madonna*, 914 F.2d at 1370 (quoting *Moses*, 460 U.S. at 26). Routine issues of state law regarding contracts and other topics do not constitute such "rare circumstances" that justify abstention. *Id*. The reasoning for this is that district courts are fully capable of deciding such ordinary state law principles. *Id*. There are no such "rare circumstances" in this case as the Third-Party Complaint involves only rote issues of Florida law involving breach of a construction contract and the liability of a surety under a performance bond on the contract. Thus, this factor also militates in favor of the Court continuing to exercise jurisdiction.

f. Adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction—The *Colorado River* doctrine also requires an evaluation of whether the state forum can adequately protect the federal litigant's rights. *Moses*, 460 U.S. at 26. Contrary to ARCH's interpretation, the question is not whether the federal court is adequate. *See Madonna*, 914 F.2d at 1370. This factor "is more important when it weighs in favor of federal jurisdiction," *id*. (citing *Bethlehem Contracting Co. v. Lehrer/McGovern*, 800 F.2d 325, 328 (2d Cir. 1986), and certainly does nothing to support ARCH's motion to dismiss.

None of the *Colorado River* factors supports dismissal of this action in favor of the state court proceeding. Nor does the inclusion of the additional factor regarding vexatious

litigation/forum shopping change the balance in favor of the Court continuing to exercise jurisdiction. "'The Supreme Court has noted that 'the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*.''" *Conseco Finance Servicing Corp. v. Shinall*, 51 Fed. Appx. 483, 2002 WL 31319368, *7 (5th Cir. 2002) (quoting *Allen v. La. State Bd. of Dentistry*, 835 F.2d 100, 105 (5th Cir. 1988)). But " a party who could find adequate protection in state court is not thereby deprived of its right to the federal forum, and may still pursue the action there since there is no ban on parallel proceedings.'" *Id*. (quoting *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1193 (5th Cir.1988)). In *Conseco*, the defendant in a state court action moved to compel arbitration. The state court granted the plaintiff's motion to stay the action pending discovery on the enforceability of the arbitration provision. Four months later, and nine months after the initiation of the state court action, the defendant filed a federal action to compel arbitration. The Fifth Circuit Court of Appeals determined this was not improper forum shopping on behalf of the defendant, but was merely an attempt by the defendant to move the case along as quickly as possible. *See Conseco* at 6-7. It therefore determined the case did not "present the exceptional circumstances necessary to abstain from exercising jurisdiction in favor of the ongoing proceedings in state court." *Id*. at 7. This Court should reach the same result here as RCR has done nothing more than attempt to move this litigation forward after it was indefinitely stayed in state court at the request of ARCH.

A review of other cases demonstrates that this factor weighs in favor of abstention when the party opposing the motion first brings suit in state court and then subsequently initiates suit in federal court after years of litigation in the state forum because it is dissatisfied with the state

court's findings. *See Nakash v. Marciano*, 882 F.2d 1411, 1414 (9th Cir. 1989) (finding the forum shopping factor to weigh in favor of a stay because the federal plaintiffs brought the federal suit after they had been litigating in the state court for 3.5 years and became dissatisfied with the results); *American International Underwriters (Philippines), Inc. v. Continental*, 843 F.2d 1253, 1259 (9th Cir. 1988) (holding that plaintiff epitomized forum shopping since it abandoned 2.5 years of litigation in state court solely because it disliked the state court's findings based on state rules of evidence).  RCR has not engaged in this forum shopping here.  It is merely trying to get its rights under the Performance Bond issued by ARCH adjudicated as expeditiously as possible.  As in *Conseco*, this is not forum shopping behavior and does not warrant dismissal of its Third-Party Complaint.

## VENUE OF RCR'S THIRD PARTY COMPLAINT MUST REMAIN IN THE MULTIDISTRICT LITIGATION

"Forum non conveniens is an ancient doctrine with 'only a limited continuing vitality in federal courts.'"  *United Van Lines, LLC v. Marks*, 366 F.Supp.2d 468, 474 (S.D. Tex. 2005) (quoting 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3828, at p. 278).  Nevertheless, and despite the fact that it has repeatedly argued that the action against it is substantially similar to the federal action pending against Coastal, ARCH ask this Court to transfer the third-party action against it to Florida.  ARCH's motion must fail not only because a third-party defendant is not permitted to bring a motion to transfer venue as if it were a typical defendant.  *See Gundle Lining Const. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 209-10 (5th Cir. 1996) ("Statutory venue limitations have no application to Rule 14 claims even if they would require the third-party action to be heard in another district had it been brought as an

independent action.") (internal quotation omitted); *Walter Oil & Gas Corp. v. Teekay Shipping*, 270 F.Supp.2d 855, 861 (S.D. Tex. 2003) ("The Court seriously doubts that Skaugen is entitled to seek a transfer as a third-party defendant."); *Southern Milling Co. v. U.S.*, 270 F.2d 80 (5th Cir.1959) (dictum) ("In the absence of a showing of substantial inconvenience to a third-party defendant, leave to file a third-party complaint should not be denied on the ground of venue.")). It must also fail because ARCH is judicially estopped from making these arguments. By arguing that the federal multidistrict litigation was the appropriate venue for litigation of the issues in the state court action against ARCH, ARCH was essentially conceding that venue was proper in the federal court. Furthermore, ARCH specifically argued that the state case should not be able to proceed at the same time as the federal litigation because judicial efforts would be duplicated in that ARCH's liability to RCR is derivative to that of Coastal, who is a defendant in the federal action. ARCH cannot now request that two federal actions proceed at the same time—the instant federal action and then a separate federal action venued in Florida. This will be nothing but an *inconvenience* to all involved—the Florida district court; the witnesses, who will become involved in a second federal litigation; as well as the parties and their counsel. Furthermore, according to ARCH's argument in the state court, transfer of the Third-Party Complaint will do exactly what ARCH claims that it is trying to prevent—create duplicative litigation, with wasted judicial efforts and potentially inconsistent results. ARCH's motion to transfer venue to Florida must, therefore, be denied.

## CONCLUSION

RCR HOLDINGS II, LLC respectfully requests this Court deny ARCH INSURANCE COMPANY's Motion to Dismiss Third-Party Complaint or Alternatively to Transfer Venue, and for any further relief this Court deems appropriate.

Respectfully submitted,

s/GREGORY S. WEISS
GREGORY S. WEISS (Florida Bar No.: 163430)
*Attorneys for RCR Holdings II, LLC*
LEOPOLD~KUVIN, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone:  (561) 515-1400
Facsimile:   (561) 515-1401
Email:  gweiss@leopoldkuvin.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing RCR HOLDINGS II, LLC'S RESPONSE IN OPPOSITION TO ARCH INSURANCE COMPANY'S MOTION TO DISMISS THIRD-PARTY COMPLAINT OR ALTERNATIVELY TO TRANSFER VENUE has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System in accordance with the procedures established in MDL 2047, on this 30th day of August, 2011.

s/GREGORY S. WEISS
GREGORY S. WEISS
Florida Bar No.: 163430

*Leopold~Kuvin, P.A.*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*