UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| | JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| **THIS DOCUMENT RELATES TO:**<br> **ALL CASES** | |

# THE PLAINTIFFS' STEERING COMMITTEE'S
## MEMORANDUM IN OPPOSITION TO JP MORGAN CHASE & CO.'S
## MOTION TO QUASH SUBPOENA

**MAY IT PLEASE THE COURT:**

The Plaintiffs' Steering Committee ("PSC") files this opposition to the Motion to Quash filed by JP Morgan Chase & Co. ("JP Morgan Chase") [Rec. Doc. 10142] concerning a subpoena directed to JP Morgan Chase. In addition, the PSC has filed a Motion to Compel JP Morgan Chase on August 10, 2011 [Rec. Doc. 10056] and JP Morgan Chase filed an opposition on August 19, 2011 [Rec. Doc. 10142-1].

## THE PSC WILL AGREE TO SET THE DEPOSITION
## AT A MUTUALLY AGREEABLE DATE, TIME & LOCATION

The issues objected to by JP Morgan Chase arise out of the subpoena and deposition notice served on JP Morgan Chase on May 25, 2011. JP Morgan Chase, in sum, urges that the subpoena is invalid and unenforceable because it was issued from the District of Delaware, that service upon the agent in Delaware and requiring production of the documents in New York is improper, and JP Morgan Chase does not possess or control the documents responsive to the

1

subpoena because it is only a financial holding company.

By asserting that the subpoena submitted by the PSC is invalid due to procedural issues, simply shows that JP Morgan Chase is attempting to avoid the real issue. The real issue involved in this matter is whether JP Morgan Chase is in control of the documents requested. This issue was addressed with the Court at the status conference on August 24, 2011. At that time, the PSC voluntarily agreed, if requested by JP Morgan Chase, to reissue a subpoena in a jurisdiction identified as proper by JP Morgan Chase and to set the deposition at a mutually convenient location. The PSC believed that by setting the deposition in New York at a law office convenient to all and easily accessible to JP Morgan Chase would be an appreciated accommodation to all involved. The PSC is willing to set this deposition at a location, time and date convenient and agreeable to JP Morgan Chase and the PSC. Therefore, the PSC will not address in detail the jurisdictional arguments raised by JP Morgan Chase claiming that the subpoena procedurally is invalid.

Depositions of corporation executives and officers should generally be taken at the principal place of business of the corporation, especially when the corporation is the defendant. *Resolution Trust Corp. v. Worldwide Ins. Management Corp.*, 147 F.R.D. 125, 127 (N.D. Tex. 1992), aff'd, 992 F.2d 325 (5th Cir. 1993); *Salter v. Upjohn Co.*, 593 F.2d 649, 651, 27 Fed. R. Serv. 2d 822 (5th Cir. 1979). Nevertheless, this general rule is "subject to modification when justice so requires." *Baker v. Standard Industries, Inc.,* 55 F.R.D. 178, 179, 16 Fed. R. Serv. 2d 597 (D.P.R. 1972). Corporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum, for the convenience of all parties and in the general interest of judicial economy. *Sugarhill Records Ltd. v. Motown Record*

*Corp.*, 105 F.R.D. 166, 171, 1 Fed. R. Serv. 3d 717 (S.D. N.Y. 1985). Factors which support the holding of the deposition in the forum district include the fact that counsel for the parties are located in the forum district, that the corporation is a large one whose employees often engage in travel, and the costs of travel and document production are not oppressive. *Id.* JP Morgan Chase identifies its corporate headquarters at 270 Park Avenue, New York, New York and for all practical purposes is considered a New York Fortune 500 Corporation that is listed on the New York Stock Exchange. Its presence in New York City is well known, as it is a leading global financial services firm with assets of 2.1 trillion dollars and operations in more than sixty (60) countries according to its 2010 Annual Report. Information about JP Morgan Chase can be found at JPMorgan.com, about Chase at Chase.com, and information about JP Morgan Chase & Co. is available at JPMorganChase.com.

## THE FEDERAL RULES OF CIVIL PROCEDURE REQUIRE JP MORGAN CHASE TO PRODUCE DOCUMENTS IN ITS "POSSESSION, CUSTODY OR CONTROL"

JP Morgan Chase's argument that it is merely a holding company and that it does not need to produce documents within its possession, custody or control does not have merit. The inclusion of reference to Federal Rules of Civil Procedure Rule 45 within Federal Rules 26 and 34 is a clear indication that procuring documents from non-parties can constitute discovery. *Rice v. United States*, 164 F.R.D. 556, 557 (N.D. Okla. 1995). Fed.R.Civ.P. 34 establishes the procedure for response, objection and production. Rule 34 of the Federal Rules of Civil Procedure governs discovery from parties, requiring them to produce requested documents that are in their possession, custody, or control, while discovery of non-parties is to be had by subpoena pursuant to Rule 45. *See* Fed.R.Civ.P. 34(a), 34(c), 45. Fed.R.Civ.P. 45 permits the

issuance of subpoenas for the production of evidence. *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 686 (D. Kan. 1995). The qualitative scope of discovery under Rule 26 is broad. It includes "any matter, not privileged, which is *relevant to the subject matter* involved in the pending action," and "[t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1) (emphasis added). A subpoena duces tecum constitutes "discovery" within the meaning of Rules 16 and 26 of the Federal Rules of Civil Procedure. As stated in *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.,* Rule 45 subpoenas are "intended to secure the pre-trial production of documents and things" and "are encompassed within the definition of 'discovery' as enunciated in Rule 26(a)(5) and, therefore, are subject to the same time constraints that apply to all of the other methods of formal discovery." 177 F.R.D. 443, 443-44 (D. Minn. 1997). The drafters of the Federal Rules did not attempt to exclude Rule 45 subpoenas from applicability to the discovery rules in the Federal Rules of Civil Procedure. *Id.* at 444.

## "CUSTODY" AND "CONTROL" ARE INTERPETED BROADLY UNDER THE FEDERAL RULES OF CIVIL PROCEDURE

Documents need not be in a party's possession to be discoverable; they need only be in the party's custody or control (it is well settled that a party need not have actual possession of documents to be deemed in control of them). Control includes the legal right of the producing party to obtain documents from another source upon demand. A producing party may be ordered to produce documents where that party has the legal right to obtain the documents, regardless of whether the documents are beyond the jurisdiction of the court. *See, e.g. M.L.C., Inc. v. North American Philips Corp.,* 109 F.R.D. 134, 136 (S.D.N.Y. 1986). "Control" is broadly construed,

and thus a party may be obligated to produce documents requested under Rule 34 where the producing party does not actually possess the documents but has the legal right or practical ability to obtain them from another source on demand. *Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 525 (S.D.N.Y.1992) (citations omitted); *M.L.C., Inc. v. North Am. Philips Corp.,* 109 F.R.D. 134, 136 (S.D.N.Y.1986) (citations omitted). *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 90 CIV. 7811 (AGS), 1994 WL 510043 (S.D.N.Y. Sept. 16, 1994).

On August 1, 2011, Legal Specialist, Selena F. Williams, at JP Morgan Chase, provided to the PSC correspondence identifying several JP Morgan Chase entities that may have an ownership interest in China National Building Material Co., Ltd. (Exhibit "A" attached hereto). Attached to the letter was an excerpt from the Hong Kong Exchanges and Clearing Limited public website identifying several JP Morgan Chase entities that held a position in China National Building Co., Ltd. as of September 15, 2009. At present, JP Morgan Chase has not provided an independent internal analysis of documents that it may have responsive to the subpoena and record request.

In deciding whether a subsidiary has "control" over documents held by its parent corporation, courts focus on the closeness of the relationship between the entities. If the requisite degree of closeness is found, production of the documents is required even if in the possession of foreign parent or affiliates, irrespective of whether they are subject to personal jurisdiction of the Court. *See, e.g., Flavel v. Svedala Industries, Inc.*, 63 Fair Empl.Prac.Cas. (BNA) 1199, 64 Empl. Prac. Dec. P 43,027 (E.D. Wis. 1993); *Cooper Inds., Inc. v. British Aerospace, Inc.,* 102 F.R.D. 918, 919 (S.D.N.Y.1984); *Johnson v. Cloos Int'l. Inc.* 1990 WL

5

106560, at *1-2 (N.D.Ill.1990); *In re Uranium Antitrust Litigation,* 480 F.Supp. at 1145-53.  If a party "can obtain the information from sources under its control, it may not avoid answering by alleging ignorance." *See, e.g., Ferber v. Sharp Electronics Corp.,* 40 Fed.R.Serv.2d 950 (S.D.N.Y. 1984).

Furthermore, a producing party may be required to produce documents even if they belong to a third person who is not a party to the action and even though the documents and things are themselves beyond the jurisdiction of the Court.  *See, e.g., Japan Halon Co. Ltd. v. Great Lakes Chemical Corp.,* 155 F.R.D. 626, 627-28 (N.D. Ind.1993).  The issue is whether JP Morgan Chase has the requisite degree of control over the documents sought.  *See, e.g., Afros S.P.A. v. Krauss-Maffei Corp.,* 113 F.R.D. 127, 129 (D.Del.1986); *In re Uranium Antitrust Litigation,* 480 F.Supp. 1138, 1145-53 (N.D.Ill.1979).

The subpoena issued in this matter is a discovery device which, although governed in the first instance by Rule 45, is also subject to the parameters established by Rule 26. *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 177 F.R.D. 443, 445 (D. Minn. 1997); *Rice v. United States*, 164 F.R.D. 556, 557 (N.D.Okla.1995).

Under the analysis of District Judge Lewis A. Kaplan in *United States v. Stein*, documents in JP Morgan Chase's possession, custody or control within the meaning of Fed.R.Civ.P. 34, include documents that JP Morgan Chase has the unconditional right, by contract, to obtain responsive documents held by the Chinese Drywall companies.  488 F. Supp. 2d 350, 361-62 (S.D.N.Y. May 1, 2007).

*Stein* was a criminal case — specifically, the KPMG tax shelter prosecution — but, as Judge Kaplan demonstrates, the governing language ("possession, custody or control") of

6

Fed.R.Crim.P. 16(a)(1)(E), and the relevant precedents, derive from Fed.R.Civ.P. 34, which authorizes requests for documents and things which are in the "possession, custody or control" of the party upon whom the request is served. Fed.R.Civ.P. 34(a). The question for Judge Kaplan was whether to grant the defendants' motion to compel the government to produce certain KPMG documents to which the government had unfettered access pursuant to its Deferred Prosecution Agreement with KPMG. *Stein*, 488 F. Supp. 2d at 352. In ruling in the affirmative, Judge Kaplan quoted with approval § 34.14[2][b] of Moore's for the proposition that:

> Legal ownership of the requested documents or things is not determinative, nor is actual possession necessary if the party has control of the items. Control has been defined to include 'the legal right to obtain the documents requested upon demand.' The term 'control' is broadly construed.

*Stein*, 488 F. Supp. 2d at 361 (quoting 7 Moore's Federal Practice § 34.14[2][b], at 34-63 to 34-64 (3d ed. 2006). He then set forth an array of circumstances reflecting the breadth of the concept of possession, custody or control for discovery purposes:

> These principles have been applied in a wide variety of situations. Parent corporations have been compelled to produce documents in the hands of subsidiaries, subsidiaries documents in the hands of their parent entities, corporations' documents in the hands of employees, clients' documents in the hands of attorneys, corporate officers and directors' documents in the hands of their corporations, and patients' documents in the hands of health care providers. Indeed, the principles have been applied even where the legal relationship arguably was less compelling. In *In re: NTL Securities Litigation,* a corporate defendant was sanctioned for failing to produce documents that were in the hands of another company where the possessor was under a contractual obligation to provide the documents to the defendant. And in *In re: Auction Houses Antitrust Litigation*, a corporation was ordered under an analogous portion of Civil Rule 33 to answer interrogatories calling for information in the hands of its former chief executive

7

> officer where the former officer had contracted to provide the company with such information as it might request in exchange for substantial severance payments that had not all been made.

*Stein*, 488 F. Supp. 2d at 361-62 (citations omitted). JP Morgan Chase's position is also incorrect as a matter of law: abuse of the corporate form and fraudulent purpose is simply not the standard for determining whether JPMorgan has "possession, custody or control" of documents under Fed. R. Civ. P. 34(a). Federal courts construe "possession custody or control" very broadly under Rule 34; in particular, a party is not required to have legal ownership or physical possession of the requested documents, rather, control is defined as the legal right, authority or ability to obtain the documents. *See United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 98283 (E.D. La. Aug. 31, 2010) ("Rule 34 is broadly construed and documents within a party's control are subject to discovery, even if owned by a nonparty."); *see also Camden Iron and Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D.438, 441 (D.N.J. 1991); *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135 (S.D.N.Y. 1997); *Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989); *Flavel v. Svedala Indus., Inc.*, 92-C-1095, 1993 WL 580831 (E.D. Wis. Dec. 13, 1993) ("[I]n spirit with the current policy of permissive discovery, a party is generally considered to have 'control' over documents under Rule 34(a) if it can likely obtain such documents upon demand. . . . [This analysis] promotes the policies underlying Rule 34(a)."). JPMorgan Chase & Co. cannot be allowed to shield crucial documents from discovery merely by storing them in a parent company or affiliate. *See, e.g., Cooper Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918 (S.D.N.Y. 1984).

## JP MORGAN CHASE HAS A DUTY TO RESPOND ON BEHALF OF ITS WHOLLY OWNED SUBSIDIARIES

JP Morgan Chase, according to Reuters, was incorporated in 1968 and is a financial holding company. Its principal bank subsidiaries are JP Morgan Chase Bank, NA, a national bank with U.S. branches in 23 states and Chase Bank USA, a national bank that is the firm's credit card issuing bank. Its principal non-bank subsidiary is JP Morgan Securities that operates nationally, as well as through overseas branches and subsidiaries, representative offices and subsidiary foreign banks (Exhibit "B" attached hereto). Sullivan & Cromwell, LLP has acknowledged that JP Morgan Chase is a U.S. banking organization and that it is a financial holding company as defined in the Bank Holding Company Act of 1956, as amended ("BHC Act") and that it is incorporated and headquartered in the United States and provides banking, investing, asset management and financial and risk management products and services throughout the U.S. and international markets (Exhibit "C" attached hereto). In *In re: ATM Fee Antitrust Litigation*, Bank of America Corporation ("BAC") argued that it had no duty to respond on behalf of its wholly owned subsidiaries, including Bank of America, N.A. ("BANA"), to document requests and other discovery disputes. There was no dispute that BAC wholly owned BANA. 233 F.R.D. 542, 544 (N.D.C.A. 2005). The Court noted that a "'bank holding company' means any company which has *control* over any bank or over any company that is or becomes a bank holding company by virtue of the Bank Holding Company Act." *Id.* at 545 (citing 12 U.S.C.A. §1841(a)(1)) (Emphasis in original). The Court held "Therefore, if BANA or any other wholly owned subsidiary bank of BAC has possession and custody of documents responsive to plaintiff's requests, then BAC has legal control of the documents through its

9

control of the subsidiary bank and must produce any which are responsive to plaintiff's Rule 34 requests." *Id.* Similarly, in the instant matter, JP Morgan Chase is a bank holding company and just like BAC, JP Morgan Chase has control over its subsidiaries and must produce responsive documents.

Merely because the documents may not be located in the United States does not prevent JP Morgan Chase from producing the requested documents. In *Gucci America, Inc. v. Weixing, LI, et al* (Exhibit "D" attached hereto), plaintiffs sought production from non-party Bank of China, pursuant to a Rule 45 subpoena production of documents. No. 10 Civ. 4974(RJS) (S.D.N.Y. August 23, 2011). The bank produced information to the extent it was accessible from its New York branch, but failed to produce any documents located in China. *Id.* The bank argued that the Chinese bank secrecy laws prohibited the disclosure of information without the customers' consent and therefore argued that the plaintiffs had to make a request for documents through the Hague Convention. *Id.* at 5-6. The Court looked at the five-factor test set forth in the Restatement (Third) of Foreign Relations Laws of the United States § 442(1)(c) and cases cited therein. *Id.* at 6. The Court considered (i) the importance to the investigation or litigation of the documents or other information requested; (ii) the degree of specificity of the request; (iii) whether the information originated in the United States; (iv) the availability of alternative means of securing the information; and (v) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the states where the information is located. *Id.* Based upon its analysis, the Court found that the bank needed to comply with the subpoena and that the Hague Convention did not need to be utilized. *Id.* at 13. Just as in the *Gucci* case, JP Morgan Chase

10

must produce the documents in this matter. The following outlines a brief analysis of the five-factors as it applies to JP Morgan Chase:

1. The importance to the investigation or litigation of the documents or other information requested – Taishan Gypsum has made a paltry production of documents in this litigation. The PSC has been forced to undertake independent investigation and analysis of the Taishan entities, including the upstream and downstream entities. Numerous upstream CNBM/BNBM entities have either refused to participate in discovery or have had default judgments entered against them. As a practical matter, JP Morgan Chase is an investor or shareholder in Taishan and as such should have documents in its possession. The information sought from JP Morgan Chase relates to its ownership interest in the Taishan entities, as well as any documents that an owner or stockholder would have in its possession.

2. The degree of specificity of the request – the subpoena seeks production of information limited solely to documents in the possession of JP Morgan Chase and its subsidiaries. The subpoena is narrowly tailored. It is specific to Chinese entities and drywall issues. The parties have met and conferred in an attempt to further hone in on the information sought.

3. Whether the information originated in the United States – the information that plaintiffs seek is accessible in the United States or through JP Morgan Chase's subsidiaries. Some of it may have originated in China, but it is unknown by the PSC where the documents exist.

4. The availability of alternative means of securing the information – the PSC is unable to obtain this information elsewhere. There are not alternative means. Furthermore, any Hague Convention requests are unnecessarily costly, time consuming, and is fraught with uncertainty. Any requests through China could take over a year and frequently only a portion of such requests are granted. *Id.* at page 7 of *Gucci* decision (Exhibit "D"). Further, the information has not been produced from Taishan. The PSC has no other way to obtain the documents.

5. The extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the states where the information is located – JP Morgan Chase has not raised any argument that foreign national interests would be affected in any way by production of the requested documents. JP Morgan Chase is a U.S. company with foreign subsidiaries and any disclosures of documents in its possession militates against a finding that strong national interests of a foreign country are at stake. JP Morgan Chase must comply with the laws of the United States as it transacts business in this country. JP Morgan Chase cannot deliberately utilize foreign laws or secrecy

provisions to hide documents from American citizens who have been damaged by Chinese drywall.

There is no hardship for JP Morgan Chase to comply with the subpoena. The parties have met and conferred in good faith to try to resolve the issues and narrow any inconvenience that may be asserted.

### **VEIL PIERCING OR ABUSE OF THE CORPORATE FORM IS IRRELEVANT TO A FEDERAL RULE OF CIVIL PROCEDURE 34 OR 45 ANALYSIS**

In the context of determining whether a subsidiary has possession, custody or control of documents belonging to its parent, courts consider the nature of the relationship between them to determine whether the subsidiary has "access to the documents" and "ability to obtain the documents." The relationship **need not** rise to the level of agency or alter ego (although a finding of alter ego or agency will generally suffice to meet the Rule 34 requirement of control). *Addamax Corp. v. Open Software Found.,Inc*., 148 F.R.D. 462, 467 (D.Mass. 1993). District courts have explicitly rejected the notion that veil-piercing or alter ego standards applied for purposes of liability are applicable in the context of Rule 34(a). *See, e.g.*, *Flavel v. Svedala*, 1993 WL 580831 (E.D. Wis. 1993) ("a party may exercise the requisite degree of 'control' over documents held by a related entity under the discovery rules without exhibiting the degree of interrelationship necessary to project liability upon such entity pursuant to the [applicable liability statute]. **The degree of relationship between a domestic subsidiary and a foreign parent required to subject the latter to liability . . . is certainly greater than that needed to subject the latter to document production through the former.**") (emphasis added); *Camden Iron & Metal, Inc. v. Marubeni Am. Corp*., 138 F.R.D. 438, 442 (D.N.J. 1991) ("**Rule34(a) does**

**not require plaintiff to demonstrate an alter ego relationship in order to show that a litigant 'controls' documents or things that are possessed by a parent corporation** with respect to a specific transaction involving parent and subsidiary. . . . the determination of control turns upon whether the intracorporate relationship establishes some legal right, authority or ability to obtain the requested documents on demand.") (emphasis added); *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*, 176 F.R.D. 75, 78 (W.D.N.Y. 1996).

According to the 2010 Annual Report, JP Morgan Chase is "…managed on a line-of-business basis. There are 6 major reportable business segments – investment bank, retail financial services, card services, commercial banking, treasury & securities services and asset management, as well as a corporate/private equity segment." (See page 290 of Annual Report.) Pages 67-68 of the Annual Report reflect the current organization of JP Morgan Chase. According to James Dimon, Chairman and Chief Executive Officer, and Douglas L. Braunstin, Executive Vice-President and Chief Financial Officer, of JP Morgan Chase "Management of JP Morgan Chase & Co. ("JP Morgan Chase" or the "Firm") is responsible for establishing and maintaining adequate internal control over financial reporting. Internal control over financial reporting is a process designed by, or under the supervision of, the Firms' principal executive and principal financial officers, or persons performing similar functions, and effected by JP Morgan Chase's Board of Directors, management and other personnel, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with accounting principles generally accepted in the United States of America." (See page 158 of the 2010 Annual Report.) According to Note 1 of the PricewaterhouseCoopers, LLP Report of JP Morgan Chase, the Firm is:

13

> a financial holding company incorporated under Delaware law in 1968" and "is a leading global financial services firm and one of the largest banking institutions in the United States of America ("U.S."), with operations worldwide. The Firm is a leader in investment banking, financial services for consumers, small business and commercial banking, financial transaction processing, asset management and private equity.

(See page 264 of 2010 Annual Report.) JP Morgan Chase certainly holds itself out as more than just a holding company and, according to its Annual Report, it has branches worldwide, including two (2) new branches in China, adding to the three (3) that already exists, with more branch openings planned in 2011. (See page 13 of 2010 Annual Report.) For JP Morgan Chase to attempt to place on the PSC the onus of having to drill down and locate documents that may exist in one of many subsidiaries is like going to McDonald's and having to tell the cook that he needs to place two meat patties in a Big Mac burger. JP Morgan Chase is a big company. It certainly tells it stockholders that it transacts business worldwide, and the services that it performs and the money that does through it reflects the type of operation that it is engaged in. (See 2010 Annual Report located on the JPMorgan Chase website.)

## CONCLUSION

In summary, JP Morgan Chase's objection regarding procedural issues to the service of the subpoena is moot, due to the PSC's willingness to coordinate the deposition at a mutually agreeable date and time. The heart of the dispute is the applicability of "possession, custody or control" to a Rule 45 subpoena. Having shown that "possession, custody or control" applies in a Rule 45 analysis, the only issue is whether JP Morgan Chase has "possession, custody or control" of the requested documents and within the context of the cases cited herein. Accordingly, the PSC requests that the Court enter an order requiring JP Morgan Chase to

provide the PSC with the documents requested in the subpoena within its "possession, custody, or control" as required by the applicable Federal Rules of Civil Procedure.

Dated:  September 6, 2011

Respectfully submitted,

/s/ Leonard A. Davis
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
Stephen J. Herman, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

15

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.WSuite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 (mailing address)
15058 River Road
Hahnville, LA  70057
Phone:  (985) 783-6789
Fax:  (985) 783-1333
andrew@lemmonlawfirm.com

Jeremy W. Alters
Alters Law Firm
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@alterslaw.com

17

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 6th day of September, 2011.

      I hereby further certify that the above and foregoing has been served on JP Morgan Chase & Co., through its attorney, Michael D. Ferachi, McGlinchey Stafford, PLLC, via email at mferachi@mcglinchey.com, on this 6th day of September, 2011.

                                     /s/ Leonard A. Davis
                                       Leonard A. Davis
                                       Herman, Herman, Katz & Cotlar, LLP
                                       820 O'Keefe Ave.
                                       New Orleans, LA  70113
                                       PH:  (504) 581-4892
                                       Fax:  (504) 561-6024
                                       ldavis@hhkc.com