# EXHIBIT A



Mar 23 2011
11:58AM

IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARLENE BENNETT,                       CASE NO. 502009CA014458
                                       Civil Division "AA" Chinese Drywall
        Plaintiff,
vs.

CENTERLINE HOMES INC., et al.,

        Defendants.

_____/

### OMNIBUS ORDER ON PLAINTIFFS' NEGLIGENCE CLAIMS

The court has under consideration the homebuilder defendants' Omnibus Motion to Dismiss Plaintiff Homeowners' Negligence Claims. The installer and supplier defendants have each filed amicus briefs in support of the homebuilders' motion. The issue now before the court has been fully briefed, and was argued at the case management conference held on February 25, 2011. Having reviewed the submissions of the parties, and having heard the argument of counsel, the court makes the following findings.

The issue before the court is whether the plaintiffs can state a claim for negligence against any of the defendants (homebuilders, installers or suppliers). Each class of defendant argues that a claim sounding in negligence is not available to the plaintiffs as there was no duty to protect the plaintiffs from an unknown and unforeseeable harm. All parties concede that the issue of whether a duty exists in a negligence action is a question of law. *Michael & Phillip, Inc. v. Sierra,* 776 So.2d 294, 296 (Fla. 4th DCA 2000).

The court will first address whether there exists a general duty to inspect or test the Chinese manufactured drywall for a latent defect, or to warn homeowners of the existence of a latent defect in the drywall. It appears clear that such a duty does not exist here.

1

Florida law does not impose a duty to inspect a product for a latent defect, or to warn others about a latent defect, unless the product is inherently dangerous. *See Mendez v Honda Motor Co.,* 738 F.Supp. 481 (S.D. Fla. 1990); *K-Mart Corp. v. Chairs, Inc.,* 506 So.2d 7, 8 n. 3 (Fla. 5th DCA 1987) (retailers have no duty to inspect for latent defects.), *review denied,* 513 So.2d 1060 (Fla.1987); *Dayton Tire and Rubber Co. v. Davis,* 348 So.2d 575, 582 (Fla. 1st DCA 1977) (No duty to warn or inspect unless inherently dangerous.), *quashed on other grounds,* 358 So.2d 1339 (Fla.1978); *Odum v. Gulf Tire and Supply Company,* 196 F.Supp. 35 (N.D.Fla.1961).   A product is inherently dangerous if it is "burdened with a latent danger which derives from the very nature of the article itself." *Tampa Drug Co. v. Wait,* 103 So.2d 603, 608 (Fla.1958).   Chinese manufactured drywall, while apparently defective, cannot be categorized as inherently dangerous.

To the extent the plaintiffs seek to state a claim sounding in negligence based on a general duty to inspect, test or warn, such a claim is not available.  However, this does not end the inquiry. The defendants, in any class, could be held liable in negligence if they had actual or implied notice of the defect in the Chinese manufactured drywall. *Carter v. Hector Supply Co.,* 128 So.2d 390, 392 (Fla. 1961); *Ryan v. Atlantic Fertilizer & Chemical Co.,* 515 So.2d 324, 326 (Fla. 3rd DCA 1987).

Notice must be determined on an individual, case by case, basis.   The court cannot, therefore, hold that all negligence claims are barred on an omnibus basis.   To the extent the plaintiffs can, in good faith, plead notice against an individual defendant in a specific case, such a claim will survive a motion to dismiss.

The court is cognizant of the fact that as to certain defendants, the plaintiffs have not pled notice.   If not amended, these claims will be dismissed.[1]   To the extent the plaintiffs have alleged notice in individual cases, negligence claims in these cases will survive dismissal at this stage.

Based on the foregoing, it is hereby,

ORDERED AND ADJUDGED that the defendants' omnibus motion to dismiss the plaintiffs' negligence claims is granted, in part, and denied, in part.  Any claim based on a general duty to test or inspect for, or to warn of, a latent defect in Chinese manufactured drywall will be dismissed.  Claims based on actual or implied notice of the defect will not be dismissed.  This order is being entered on an omnibus basis and will be applied to individual cases as required.

DONE AND ORDERED in Chambers, at West Palm Beach, Palm Beach County, Florida this __18th__ day of March, 2011

JUDGE GLENN D. KELLEY
CIRCUIT COURT JUDGE

Copies furnished to:

Plaintiffs' Liaison Counsel, C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134; Defendants' Liaison Counsel, Todd R. Ehrenreich, Esq. and Michael A. Sexton, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, FL 33133; and for distribution to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with the Electronic Service Order entered in this case.

---

[1] In such cases, the Plaintiffs will need to determine whether there is a good faith basis to allege notice.

3

# EXHIBIT B



34292782
Nov 10 2010
3:14PM

IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARLENE BENNETT,                    CASE NO. 50 2009 CA 014458
                                    Civil Division "AA" Chinese Drywall
     Plaintiff,

vs.

CENTERLINE HOMES INC., et al.,

     Defendants.

_____/

## OMNIBUS ORDER ON PENDING MOTIONS TO DISMISS

     The Court has under consideration the following omnibus motions: 1) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Tort Claims Under the Economic Loss Rule and Claims for Private Nuisance (joined by the Albanese-Popkin defendants); 2) Banner Supply Company's Omnibus Opening Brief On Economic Loss Rule and Nuisance (joined by certain installer defendants); 3) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Strict Liability Claims. The omnibus motions now before the Court have been fully briefed, and were argued at scheduled case management conferences. Having reviewed the submissions of the parties, and having heard the argument of counsel, the Court makes the following findings.

### Economic Loss Rule

     The first issue for consideration is the application of Florida's economic loss rule to the tort claims asserted by the homeowner plaintiffs. The Supreme Court discussed at length the origins and application of the economic loss rule in *Indemnity Insurance Company of North America v. American Aviation, Inc.*, 891 So.2d 532 (Fla. 2004).

1

The economic loss rule is a limitation on tort claims where the damages suffered are economic losses.   Economic losses are defined as damages for inadequate value, costs of repair and replacement of defective products, or loss of profits.  *Id.* at 536; *see also, Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244 (Fla. 1993).  These damages are also described as the loss of the "benefit of the bargain" or "disappointed economic expectations." *Indemnity Insurance, id* at 536.

All of the parties here acknowledge that the economic loss rule would not bar a claim for personal injury caused by defective Chinese manufactured drywall.   Therefore, to the extent that the plaintiff homeowners are suing in tort for personal injury, the economic loss rule does not apply and such claims are not subject to dismissal.  The issue is whether- and to what extent - the economic loss rule bars the recovery of economic damages in the pending Chinese drywall cases.

The Supreme Court made clear in *Indemnity Insurance* that the economic loss rule applies in two distinct circumstances.  First, the rule applies to parties in contractual privity for matters arising out of the contract.  Second, the rule applies to liability for a defective product that causes damage to the product, but causes no personal injury or damage to other property.  Both applications of the rule must be examined here.

1.  Contractual Privity Economic Loss Rule

The defendant homebuilders assert that the plaintiff homeowners are barred from asserting tort claims for their economic losses based on the application of the contractual privity economic loss rule.  The Court agrees.

The Supreme Court in *Indemnity Insurance* explained the rational for application of the contractual privity economic loss rule as follows:

2

A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. *Indemnity Insurance, id* at 536-537.

The plaintiffs' tort claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Supreme Court.

There are recognized exceptions to application of the contractual privity economic loss rule.  Independent torts such as fraud in the inducement are not barred by the economic loss rule. *HTP, Ltd. v. Lineas Aereas Costarrricenses, S.A.*, 685 So.2d 1238 (Fla. 1996).  Claims for negligence in rendering professional services are not barred. *Moransais v. Heathman*, 744 So.2d 973 (Fla. 1999).  Likewise, statutory claims are not barred by the economic loss rule. *Comptech Intern, Inc. v. Milan Commerce Park, Ltd.*, 753 So.2d 1219 (Fla. 1999).

None of the recognized exceptions apply here.[1]  The damages sought by the plaintiff homeowners arise out of the contracts they entered with the defendant homebuilders.  Traditional contract damages must be applied to the economic losses suffered by the plaintiffs.

---

[1] It is clear that homeowners are not exempt from the application of the economic loss rule on public policy grounds. *Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1247 (Fla. 1993) (refusing to exempt homeowners from the economic loss rule despite their status as "an appealing, sympathetic class"). Moreover, the Court will not create an exception to the contractual privity economic loss rule based on an assertion that the drywall is an unreasonably dangerous product.

2. Products Liability Economic Loss Rule

The products liability economic loss rule applies in limited circumstances notwithstanding the absence of privity.    The rule applies when the product causes damage to itself, but causes no personal injury or damage to other property.   The issue here is whether the plaintiff homeowners' tort claims against the defendant suppliers and installers – who are not in privity with the plaintiffs - are barred by the economic loss rule.   The Court holds that such claims are not barred.

It appears clear from the Supreme Court's discussion in *Indemnity Insurance* that application of the products liability economic loss rule is limited.   That is to say, the Supreme Court made clear that the products liability economic loss rule should not be extended beyond its intended purpose, and the rule must only be applied in those limited circumstance where all elements necessary for its application have been satisfied.

The Court has considered the well-reasoned discussion of the economic loss rule in Judge Fallon's order in *In Re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780 (N.D. Louisiana 2010).   Judge Fallon traces the origins and history of the rule in Florida (and elsewhere) and discusses the application of the economic loss rule to non-privity defendants in the multi-district Chinese drywall litigation.

It is not necessary to repeat here the analysis of Judge Fallon in considering the application of the economic loss rule to non-privity defendants.   However, the Court will briefly address Judge Fallon's conclusion – a conclusion which this Court adopts.

Judge Fallon essentially concludes that the Chinese drywall at issue here presents a unique factual scenario that does implicate the products liability economic loss rule at

4

all.  The factual distinction lies in the nature of the alleged defect and its impact, or lack thereof, on the product itself.

In cases like *Casa Clara*, the defect in the product damaged the product itself. The defect in the concrete caused the concrete to fail and, presumably, to damage other components of the home.  Here, the alleged defect does not damage or affect the product (Chinese manufactured drywall) at all.

In defining the application of the products liability economic loss rule, the Supreme Court has stated that the rule is implicated where "there is a defect in a product that *causes damage to the product*, but causes no personal injury or damage to other property." *Indemnity Insurance, id.* 536  [emphasis added].   Here the alleged defect causes *no damage to the product* and causes *only* personal injury or damage to other property.  Under such unique circumstances, the Court agrees that the products liability economic loss rule does not apply.

<u>Private Nuisance</u>

The Court will next consider whether plaintiff can state a claim for private nuisance based on the allegation that the Chinese manufactured drywall is off-gassing causing a nuisance within the effected homes.   All defendants assert that the claim for private nuisance under such circumstances cannot be asserted.  The Court agrees with the defendants.

Florida law essentially defines nuisance as:

using one's property as to injure the land or some incorporeal right of one's neighbor... The law of nuisance plays between two antithetical extremes: The principle that every person is entitled to use his property for any purpose that he sees fit, and the opposing principle that everyone is bound to use his property in such a manner as not to injure the property or rights of his neighbor... The law of private nuisance is a law of degree; it

5

generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances.

*Beckman v. Marshall*, 85 So. 2d 552, 554-55 (Fla. 1956) (approving and adopting the language of *Antonik v. Chamberlain*, 78 N.E.2d 752 (Ohio Ct. App., 1947).

Plaintiffs assert that there is no exhaustive definition of what constitutes a nuisance citing *Windward Marina, L.L.C. v. City of Destin*, 743 So. 2d 635 (Fla. 1st DCA 1999). While this may be true, Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("This court recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another") (citing *Reaver v. Martin Theatres of Florida, Inc.*, 52 So. 2d 682 (Fla. 1951). It seems clear that the underlying policy of private nuisance jurisprudence does not support the plaintiffs' application of the doctrine of private nuisance in this case.

Plaintiffs rely heavily on the four-part test for proving the existence of a private nuisance purportedly established by the Court in *Beckman*. According to the plaintiffs, none of the four components makes any mention of a requirement that a private nuisance must involve two landowners. However, such a roadmap for establishing a private nuisance is neither expressed nor implied by the Court in *Beckman*.

In fact, much of the instructive language in *Beckman* seems to contradict the plaintiffs' position that nuisance actions do not necessarily involve contemporaneous and proximate private land owners. *Beckman, id* at 555 ("no one has absolute freedom in the

use of his property, because he must be restrained in his use by the existence of equal rights of his neighbor to the use of his property."). *Id.*

Further, none of the cases plaintiffs rely on directly support the contention that a nuisance may exist absent a defendant's exercise of its property rights. *See, e.g., Davey Compressor Co. v. City of Delray Beach*, 639 So. 2d 595 (Fla. 1994) (holding that a defendant who illegally disposed of a highly toxic solvent by dumping it onto the grounds at the rear of its facility created a nuisance because it contaminated plaintiff's water supply); *Kotcher v. Santaniello*, 438 So. 2d 440, 441 (Fla. 1983) (declining to reverse an injunctive order which was "principally predicated upon a determination that the appellants' conduct in keeping and training dogs for attack and security purposes constituted a nuisance in the residential neighborhood where all of the parties resided").

The only case which arguably supports plaintiffs' position, *Putnam v. Roudebush*, 352 So. 2d 908 (Fla. 2d DCA 1977), held that a noisy air conditioner was a "continuing nuisance" that constituted a "permanent defect in the realty." However, private nuisance was not even a claim in the *Putnam* case. The Court's reference to the air conditioning being a nuisance was merely a descriptive reference, and not a statement of a legal claim.

Taken together, neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case. The Court concludes that plaintiffs' claims for private nuisance must be dismissed.

### Strict Liability

The defendant homebuilders have moved to dismiss the plaintiffs' strict liability claims. The homebuilders advance two grounds for dismissal. First, the homebuilder defendants assert that only manufacturers of the product and those in the chain of

7

distribution can be held strictly liable and they are neither.   Second, the defendant homebuilders assert that strict liability does not apply to improvements to real property. The Court will begin with the homebuilders' second argument.

The law in Florida appears to be well settled that strict liability does not apply to improvements to real property as improvements to real property are not considered products.   *Plaza v. Fisher Development, Inc.,* 971 So.2d 918 (Fla. 3rd DCA 2007); *Neumann v. Davis Water & Waste, Inc.,* 433 So. 2d 559 ( Fla. 2d DCA 1983) *see Easterday v. Masiello,* 518 So.2d 260, 261 (Fla.1988) ("[I]t has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate."); *Jackson v. L.A.W. Contracting Corp.,* 481 So.2d 1290, 1291 (Fla. 5th DCA 1986).

Plaintiffs argue that an exception exists with respect to improvements to real property "where the injuries result not from the real property as improved by the alleged defective product but directly from a defective product manufactured by defendant, which product may have itself been incorporated into the improvement of the realty before the injury from the product occurred." *Jackson v. L.A.W. Contracting Corp.,* 481 So.2d 1290, 1292 (Fla. 5th DCA 1986); *Craft v. Wet 'N Wild, Inc.,* 489 So.2d 1221, 1222 (Fla. 5th DCA 1986).   Plaintiffs conceded at oral argument that this exception has never been applied in a reported Florida case.   Indeed, the exception appears to be *dicta* in the cases that mention it.

Whether the exception advanced by the plaintiffs exists or not, it does not appear that the exception would apply to the defendant homebuilders in this case.   The exception appears to apply to the manufacturer of an allegedly defective product which

8

happens to be incorporated into the real property.   The defendant homebuilders did not manufacture the drywall at issue.

The defendant homebuilders also argue that only manufacturers, and those in the distributive chain of a product, can be held strictly liable.  Defendant homebuilders assert that they are not manufacturers and they are not within the distribution chain of the drywall at issue.  While the plaintiffs argue otherwise, the Court finds that the defendant homeowners' position has merit.

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that the plaintiff homeowners' tort claims against the defendant homeowners seeking economic losses are dismissed based on the privity economic loss rule.  The request of the defendant suppliers and installers (who lack privity with the plaintiffs) to dismiss the plaintiffs' tort claims based on the products liability economic loss rule is denied.   The plaintiffs' claim for private nuisance against all defendants is dismissed.  Likewise, the plaintiffs' claims for strict liability against the homebuilder defendants are dismissed.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida this 5 day of November, 2010.

JUDGE GLENN D. KELLEY
CIRCUIT COURT JUDGE

Copies furnished to:

Plaintiffs' Liaison Counsel, C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134; Defendants' Liaison Counsel, Todd R. Ehrenreich, Esq. and Michael A. Sexton, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, FL 33133; and for distribution to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with the Electronic Service Order entered in this case.

# EXHIBIT C

IN THE CIRCUIT COURT OF THE 19TH
JUDICIAL CIRCUIT IN AND FOR
ST. LUCIE COUNTY, FLORIDA.

CASE NO. 562010CA001463

SURESH and OMA BISSOON,

       Plaintiffs,

v.

CENTERLINE HOMES CONSTRUCTION, INC.,
a Florida corporation; CENTERLINE PORT ST.
LUCIE LTD., a Florida Limited Partnership;
OCEAN COAST DRYWALL, INC., a Florida
Corporation; and BANNER SUPPLY COMPANY
PORT SAINT LUCIE, LLC, a Florida Limited
Liability Company,

       Defendants.

_____

### ORDER ON DEFENDANTS', CENTERLINE PORT ST. LUCIE, LTD., AND CENTERLINE HOMES CONSTRUCTION, INC.'s MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

THIS CAUSE, having come before the Court upon Defendants', Centerline Port St. Lucie

Ltd and Centerline Homes Construction, Inc.'s, Motion to Dismiss Plaintiffs' Second Amended

Complaint, and the Court having heard argument of counsel and being otherwise advised in

the premises, it is hereupon,

ORDERED and ADJUDGED that said motion be and the same is hereby granted in that

although Plaintiff's strict liability claims do allege defective product distribution, permanent

Br

Improvements to real property are not products for purposes of products strict liability actions. These claims are dismissed.

Likewise the motion is granted because Plaintiff's private insurance claims do not state a cause of action against these defendants. These claims are also dismissed.

The motion is otherwise denied.

These defendants are permitted twenty (20) days to answer the Complaint.

DONE AND ORDERED in Chambers at Fort Pierce, Saint Lucie County, Florida this 2⁷ᵗʰ day of March, 2011.

DWIGHT L. GEIGER, Circuit Judge

Copies furnished:
Vanessa M. Serrano, Esquire
C. David Durkee, Esquire

# EXHIBIT D

Contractor's License #
CRC018069

## CONSTRUCTION AGREEMENT

THIS AGREEMENT made this the ___ day of February 11, 2005, by and between WOODLAND ENTERPRISES, INC., (hereinafter referred to as "Contractor") whose address is 15592 Jupiter Farms Road and Freddy G. and Ann T. McNabb (hereinafter referred to as "Purchaser") whose address is _____ Home phone _____

## WITNESSETH

CONTRACTOR and Purchaser for good and valuable consideration as hereinafter set forth do mutually agree as follows:

1.    SCOPE OF WORK:  Contractor agrees to furnish all materials, labor, building permit and services necessary to construct a single family residence on the property described in Paragraph 2 below and agrees to build and construct said residence in a workman like manner in accordance with all applicable building codes and in substantial compliance with those plans and specifications.

2.    CONSTRUCTION LOCATION: The Contractor agrees to construct said residence upon the property legally described as follows:

2a.    STRUCTURE TO BE BUILT:  Buttonwood floor plan w/ changes; total sq. ft.: 3,216 and 44 x 40 Detached Garage;  total sq. ft: 1,760

3.    PAYMENT:  The total purchase price for the subject single family residence described above, including improvements, selected options, limited fill and lot prep as set forth herein shall be:

| | |
|---|---|
| Basic Price Of House and Garage | $314,537.00 |
| Selected Options and Allowances: (See Description Below) | $ 72,998.90 |
| Total Purchase Price | $387,535.90 |
| Deposit Due Upon Execution Of Contract | $ |
| Additional Deposit Due Upon Construction Mortgage Closing | $ |
| Balance Of Contract Due In Accordance With Draw Schedule Set Forth In Paragraph 6. | $ |

## SELECTED OPTIONS AND COSTS THEREOF ARE AS FOLLOWS:

*Options for House*

| | |
|---|---|
| 8'0 ceilings instead of 9'0 | N/C |
| Make living room – dining room/ dining room – living room open wall to living room  front area | N/C |
| Extend kitchen countertop out 3'0 toward sliding glass door (keep same angle) | $1,750.00 |
| Upgrade appliance package to same as Buttonwood home | $1,697.00 |
| Upgrade Buttonwood 22 c.f. refrigerator to 26 c.f. refrigerator | $340.00 |
| Allowance for summer kitchen | $9,700.00 allow |
| Allowance for larger kitchen sink | $800.00 allow. |
| Additional charge to upgrade kitchen cabinets to 42" upper raised panel maple | $2,680.00 |
| 42" upper raised panel white foil cabinets in laundry w/ utility sink | $1,825.00 |
| 4 recessed lights in family on 2 switches | $510.00 |

1

Initials _____

| | | |
|---|---|---|
| - | Additional monies toward lighting allowance (total allow. now $1,000.00) | $850.00 |
| - | Make front area porch with post – 6' out | $5,460.00 |
| - | Extend back porch to back of house (additional  11'6" x 25') | $15,825.00 |
| - | (1) 2' x 6' Fixed glass window on porch wall | $491.00 |
| - | Front bedroom, make closet with 3'0 access on side | N/C |
| - | (2) Rounded arches in back halls | N/C |
| - | Garage door opener on main house | $390.00 |
| - | Security System (2 keypads, sensors on all moveable openings and pre-wire only for 1 motion and 1 smoke detector and exterior siren) | $1,200.00 |
| - | Mullion bars on front house windows | $450.00 |
| - | Cat. 1 granite w/ standard edging and 4" backsplash in kitchen | $4,000.00 |
| - | Outdoor hot/cold shower w/ standard fixture w/ 3 x 3 pad | $320.00 |
| - | (4) spotlight outlets on 2 switches | $350.00 |
| - | Allowance for lot preparation | $2,000.00 |
| - | Tile everywhere (including bedrooms) installed on the diagonal | $10,015.90 |
| - | Enclose rear porch with 24 gauge direct mount steel shutters | $1,800.00 |
| - | Upgrade house Cat. 1 Entegra Estate Roll Roof Tile | $10,545.00 |

*HURRICANE SHUTTERS FOR ALL WINDOWS*

**Options for Detached Garage**

- 16' Beam
- Inverted hip ceiling (unfinished)
- Standard electric (4 outlets, 6 fluorescent lights, 1 exterior lighting outlet)
- 220 outlet
- Painting on interior walls over rough block
- Painting of exterior stucco and trim
- 5/12 pitch roof
- Cat. 1 Entegra Estate Roll Roof Tile
- (1) 16' wide x 12' high garage door w/ opener **and** (1) 12' wide x 14' high garage door w/ opener
- (1) 3'0 x 6'8 raised panel metal door
- 40 x 20 concrete pad
- Stucco exterior walls and soffit

**\* The above selected options supersede the standard specifications
listed on pages 12, 13 and 15 (where applicable).**

Any options or extras not mentioned above shall be at an additional cost and shall be paid in accordance with the terms set forth below.

4.    **FINANCING:** If the Purchase price or any part of it is to be financed by a third party loan, this Contract is conditioned upon Purchaser obtaining a written commitment for a construction loan and permanent financing loan within _____ days from the date hereof, for a fixed or adjustable rate loan, for the principle amount of _____ ($_____ ) at the prevailing interest rate. Purchaser agrees to make application within five (5) days of executing this agreement and use reasonable diligence to obtain said Commitment and thereafter, to satisfy the terms and conditions of the commitment and close the loan. Purchaser shall pay all loan expenses. If Purchaser fails to obtain the commitment or fails to waive his rights under this subparagraph within the time for obtaining the commitment, or after diligent effort fails to meet the terms and the conditions of the commitment, then either party by written notice to the other, may cancel this agreement

a.    Upon written notification that the Purchaser has obtained a firm Commitment for the construction loan and permanent loan, satisfactory to Contractor, providing that Purchaser has paid all deposits required under this Contract, and further provided that the Purchaser has approved the plans and specifications, Contractor will: Secure all required building permits; and construction will commence not more than 60 days after issuance of said permits.

b.    In the event the Purchaser through no fault of its own fails to obtain a firm commitment for a construction and permanent loan within the time provided,

2                                    Initials _____ / _____

Contractor shall return to Purchaser all deposits paid under the Contract, less any actual expenses incurred by the Contractor, in which event the Contract shall be null and void and both parties released of all further liability hereunder. If Purchaser intentionally or negligently fails and refuses to obtain a firm commitment for a construction loan and permanent financing, Within the time provided or fails to pay all deposits due under this Agreement the Contractor may at its discretion retain all deposits received as liquidated damages or at its sole option may pursue any other rights it may have at law or equity .

5.     **START OF CONSTRUCTION:** Having commenced construction, Contractor will complete same as expediently as conditions will permit. Delivery date shall be approximately 180 working days after the slab is poured.  Contractor will not be held in default by any delay caused by circumstances not within the Contractors control. Purchaser expressly agrees that Contractor will not be responsible for any loss, damage, expenses or inconvenience alleged to have been incurred or sustained by Purchaser directly or indirectly as a result of delayed completion of the proposed improvements and delivery to the Purchaser. Contractor unconditionally guarantees to Purchaser that the home or unit shall be completed and available for occupancy within two (2) years from the date of this agreement and time shall be of the essence as to this two year period.

6.     **DRAW SCHEDULE:**  See Exhibit "A" attached hereto. If this construction is being financed by a 3rd Party Loan, this Contract is expressly conditioned upon Contractor's approval of the Lender's Draw Schedule. If Contractor is not satisfied it may terminate this Contract, and return Purchaser's Deposit, less Contractor's out of pocket expenses up to the time of termination.

7.     **POSSESSION:**  It is acknowledged by the parties hereto that Contractor and its agents have exclusive possession of the premises during construction, in order to minimize the risk of loss to Purchaser and to maximize performance Of the Contractor's employees and subcontractors. Therefore, Purchaser shall not enter the premises during the construction period or prior to acceptance of the completed residence except with an authorized representative of the Contractor. Contractor shall deliver possession of the premises at completion of the residence in accordance with the terms of this agreement and upon payment in full of the Contract sum plus all work change orders. Final inspection by the building department or building inspector having jurisdiction and the issuance of the Certificate of Occupancy or Certificate of Completion shall be deemed substantial Completion of all improvements. Purchaser agrees not to take possession of the residence or property until all monies have been paid in full. Purchasers taking possession of the premises prior to the Contractor being paid in full shall be deemed to have taken the residence in "As Is" condition, unconditionally accepting any and all unfinished items or defective work as properly completed and waiving all warranties herein and shall remain fully liable for all unpaid balances.

8.     **HEALTH PERMITS:**  Contractor is hereby authorized to take all necessary action to make application for a permit from the County Health Department having jurisdiction of said property to install a septic system in the above described real property (if a septic system is applicable). Said application generally requires an engineering survey, a 6 ft. deep hole and an application fee, all of which costs approximately _____.  The Purchaser as described above shall pay cost of the Health Permit in the event the Contract is canceled prior to construction beginning.

9.     **WELL WATER:**  If the premises described herein shall not be served by a public water supply, Contractor shall provide Purchaser a well, including casing up to 60 feet deep, pump and all required pipe so as to flow sufficient fresh water to serve the premises, However, the Contractor makes no warranties, expressly or implied as to the quality of the water supplied which will be provided, and specifically said quality is not represented to be potable or otherwise suitable for drinking, nor is the quality of said water provided warranted, express or implied to meet the limitations or standards for drinking water as set forth by the United States

Initials _____ / _____

Public Service, the State of Florida Department of Heath & Rehabilitative Services, any County Department of Health, or those of any other agency or branch of the United States, State of Florida or County having jurisdiction over said property, or any other governmental authority claiming jurisdiction over the property described herein.

10.    **SUBSTITUTION & CHANGES:** Contractor shall have the right to substitute building materials, appliances and fixtures of other like kind, quality and to make minor structural changes in keeping with all applicable building codes and on the basis of good design standards. Except for the right of Contractor to make such substitution, there shall be no changes or variance from the referenced drawings and specifications and selection sheet except as specifically provided herein.

    A.    **CONDITIONS FOR CHANGES:**

        1.    The home will be built substantially in accordance with the plans and specifications referred to above and will incorporate all options selected and shown on this Contract and Addendum hereto. Any deviations must be acknowledged in writing by the Contractor. If any changes are made after execution of this agreement which effect if the price herein agreed to, Purchaser will be charged a minimum of $100.00 for each change made to cover processing and documentation costs for said change in addition to any charges incurred as a result of the change requested. The Purchaser must pay the cost of the change in full at the time the change work order is executed.

        2.    Contractor will clear the lot of all small growth such as Palmettos in an area consisting of not more than _____ sq. ft. If a larger area is to be cleared such will be done on a cost bid basis by contractor and will be treated as a price change request under subparagraph "A (1 )" above.

        3.    Any change request will include an extension of time, which extends the delivery date. Any change request, which does not mention a change in time, will implicitly increase the delivery date by five (5) days.

    B.    All trees will be removed that are within 5 feet of the house or in the driveway or walks, or in the direct path of water, sewer or septic tank area, electric lines or in a future drainage swale on the side of the house. Contractor and Purchaser will arrange a meeting to discuss tree removal prior to the start of the construction.

Contractor reserves the right to remove any trees within the area described above, or trees which Contractor in, at its sole discretion, judges that the roots are so damaged by construction that the tree would be expected to die. Contractor will not be required to remove trees for the Purchasers convenience or remove trees outside the area affected by construction.

    C.    The elevation of the house may necessitate the Contractor to fill around trees when establishing the final grade of the lot. It is the Purchasers responsibility to remove excess dirt around trees that have been graded higher than the original grade to establish a well so that the roots may continue to breath.

Contractor does not guarantee the life or growth of any tree.

11.    **FINAL GRADING:**    Purchaser recognizes that the County Health Department dictates the elevation at which the sewer invert leaves the foundation and also the lot drainage plan; and that the Building Department having jurisdiction of the construction dictates the elevation at which the culvert height must be set. Contractor must comply with the elevations as directed. Purchaser understands that such requirements determine the floor of the house and

Initials _____ / _____

driveway elevations. Contractor will provide limited fill and limited grading of the lot to comply with elevation and drainage plans as established by local governing authorities. See paragraph 12 for Contractor's allowance.

12.    **FILL, GRADING & CLEARING ALLOWANCE:** Contractor has allowed a total of $2,000.00 for clearing (clearing consists of brush and tree removal within five feet of house), grading, fill dirt, house pad, septic sand and culvert.

The following tree species must be eradicated from site prior to certificate of occupancy: A. Melaleuca, B. Brazilian Pepper, C. Australian Pine, D. Earleaf Acacia**. Should additional cost be incurred for removal of these species, customer shall be responsible for said cost. If additional trees must be purchased for lot to meet county codes, cost of same shall be the responsibility of customer. Lot prep is allowance only. Due to Building and Health Dept. changing elevations and standing water regulations, an exact elevation cannot be determined at this time. Any additional costs incurred for fill, customer agrees to pay out-of-pocket. Any amount above this will be paid by the Purchaser as an extra, prior to the additional clearing, grading and/or fill being provided.

13.    **SOD:** Upon completion of the construction, driveway and grade established, Contractor will provide and install 5,000 s.f. of sod. It shall be the Purchasers responsibility to water, maintain and establish the lawn growth. Contractor does not guarantee the life or growth of the sod.

14.    **LOT BOUNDARIES:** Purchaser shall at his/her expense supply a survey showing the dimension of the lot and approximate location of the house on the lot and septic locations.

15.    **OCCUPANCY:** Occupying of any part of the property by the Purchaser shall be deemed to constitute an acknowledgment of complete, unqualified, irrevocable and satisfactory performance by the Contractor of the construction according to this Contract, and concurrence that any and all balances outstanding are due and payable to the Contractor.

16.    **FINAL PAYMENT:** Final Payment shall be due when the Certificate of Occupancy or Certificate of Completion is issued by the applicable building department. Owner shall not take possession of the premises prior to full payment being made to the Contractor.

In the event any payment is delayed for any reason not attributable to the fault of the Contractor, Purchaser shall pay Contractor, in addition to all other sums called for hereunder, interest upon the unpaid balance due under the Agreement. Said interest shall be at a rate of 18% per annum or the maximum interest allowed by law, whichever is greater, and shall begin to accrue the day payment is due and unpaid.

17.    **LIMITED WARRANTY:** See attached Exhibit "C".

18.    **EXECUTION:** If the parties do not execute this agreement simultaneously, then the party who has not signed shall have 72 hours with which to sign this contract or this Contract can be declared null and void by notification in writing to the party who has not executed the Contract. Time shall be of the essence of this Contract.

19.    **ANTICIPATORY BREACH:** If Purchaser, before Contractor starts construction, without legal excuse, attempts to breach this Contract and prevent Contractor from beginning construction of said residence, the Contractor shall be reimbursed by the Purchaser for the actual expense incurred up to the time of the breach, and for all profit which would have naturally flowed from this Contract, as if it had been fully completed, in addition to any legal fees incurred in order to collect same.

20.    **GOVERNING LAW:** This Contract shall be construed in accordance with the laws of the State of Florida and venue shall be deemed proper in St. Lucie County, Florida.

Initials _M___ / _AM_

21.   **DEFAULT -LIQUIDATED DAMAGES:** All monies paid to the Contractor pursuant to this contract will be applied to the Purchase Price so long as Purchasers are not in default under the terms of this Agreement. In the event the Purchaser or its lender fails and refuses to make any payment when due as provided herein, such unpaid balance shall earn interest (at a rate of 18% per annum, or the maximum allowed by law whichever is greater) from the date of Purchasers or its lenders failure to pay. Any and all monies previously paid by Purchaser or its lender may be retained by the Contractor and applied to said interest charge, which application shall in no way prejudice the rights of Contractor to sue for additional damages incurred. In the event Purchaser defaults hereunder, Contractor shall have the option to terminate this Contract and retain all monies previously paid by the Purchaser as its liquidated damages with five (5) days written notice to the Purchaser, or Contractor at its option, may sue for its damages or pursue any other legal or equitable remedy it may have.

22.   **UNUSUAL FORMATIONS:** The Contractor reserves the right to cancel this contract and refund all monies in the event any geological or physical formations make it impractical or impossible to construct the type of house selected on the real property referred to above. Unusual formations shall include but not be limited to muck and shell rock. Contractor may at its option continue with this Contract where owners execute a work change order contemplating rectifying the unusual formation problem and agreeing to pay Contractor for the cost thereof.

23.   **RADON GAS:** Radon is a naturally occurring radioactive gas, that when accumulated in a building in sufficient quantities, may present health risk the persons who are exposed to it over time. Levels of Radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding Radon and Radon testing may be obtained from your County Public Health Unit.

24.   **ENTIRE AGREEMENT:** It is understood by and between the parties hereto that this Contract including the plans, specifications, selection sheets referred to above and any addendum to the contract which have been signed by the parties, contain all terms and conditions agreed upon between the parties, there being no oral conditions, representations, warranties or any other agreement made by the Contractor or any agent of the Contractor not contained herein. Any subsequent conditions, representations or warranties or other agreements shall not be valid and binding upon the parties hereto unless made in writing and signed by both Purchaser and Contractor. Any representations made by any Realtor or any other agent of any Realtor is in no way binding upon the Contractor.

25.   **REALTOR:** The parties agree that no real estate broker or salesmen was involved in the formation of this agreement and if any claim is made by the aforesaid individuals the Purchasers shall be fully responsible and indemnify the Contractor for any commissions claimed.

26.   **TIME:** Time is of the essence in this Contract.

27.   **PAYMENT DIRECTLY TO CONTRACTOR:** If any of the Construction funds concerning this project are supplied by a third party lender, Purchasers agree to execute any and all documents that authorize the lending institution to make all construction draw checks payable directly and solely to Contractor after each phase of completion and a favorable inspection by the lending institution, without any further written authorization by the Purchasers.

28.   **ATTORNEYS FEES:** In the event of litigation or binding arbitration, to enforce the terms of this agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs incurred.

29.   **RIGHT TO RECORD AGREEMENT:** Purchaser specifically gives the Contractor the right to file in the Public Records all documents referred to herein in this Agreement.

30.   **PUNCH LIST ITEMS:** The fact that there may be items to be corrected or completed as

Initials *ZH* / *AM*

listed on a punch list will not prevent release of the final draw if a Certificate of Occupancy or Certificate of Completion has been issued. Purchaser shall not be entitled to possession until Purchaser, or his authorized agent shall have inspected the residence in the company of an authorized representative of the Contractor for the purpose of specifying complaints concerning the physical condition of the residence. Any physical defect or alleged defects not so specified on the punch list at the time shall be deemed to have occurred after said date, while the residence was in possession of the Purchaser. Purchaser and Contractor's representative shall sign said punch list. Failure of the Purchaser to make inspection when requested shall not delay release of last draw and shall be deemed a waiver of Purchaser's right to correction of said deficiencies. Contractor shall have 90 days from execution of the punch list to correct those items, which in its sole discretion, deems legitimate defects.

31.    NOTICES:  Whenever any notice to Purchaser is required same may be either delivered or mailed by Certified Mail, addressed to Purchaser, at the address set forth in this Agreement. Whenever notice to Contractor is required the same shall be mailed by Certified Mail to Contractor addressed to Contractor at its address set forth in this Agreement. All notices shall be deemed and considered delivered when mailed as herein provided.

32.    CAPTIONS:    The titles of various paragraphs of this Agreement are for the convenience and reference only and in no way define, limited, effect or describe the scope of the paragraph.

33.    REPRESENTATIONS:  Purchaser represents that he has not relied upon any statement, verbal, or written published by or under the authority of Contractor in any advertising and promotional matter, not limited to brochures, newspaper or radio or television advertisements, but has based his decision on personal investigation, observation and the materials provided herewith. Changes or amendments to the residence, including but not limited to the plans, specifications, equipment and legal description of lot may be made from time to time which do not materially effect the rights of the Contractor, the value of the residence, without the approval of the Purchaser. Such changes or amendments, which do not materially affect the rights and liabilities of the Parties of this agreement, shall not be a cause or reason for termination or rescission by any party.

34.    DEFAULT BY CONTRACTOR:  In the even. of a default by contractor, the sole remedy of Purchaser shall be to file an action for specific performance. In no event shall Contractor be liable to Purchaser for any damages of any nature, which Purchaser may sustain.

35.    FEES AND ASSESSMENTS:  Buyer is responsible for any and all Federal, State, Municipal, city or town fees and assessments pertaining to sewer, water, gas, electric, storm drainage, impact and homeowners association related costs.

36.    SELECTIONS:  Purchaser agrees to promptly make any color or optional item selections from choices provided by Contractor. Any selection shall be final, unless the selection becomes unavailable to Contractor and Contractor requests Purchaser to make an alternate selection. If Purchaser fails to make any selection within 10 days after Contractors request to do so, then Contractor may at its option, make the selection on Purchasers behalf, without further notice and such selection shall be binding upon Purchaser. In connection with texture of furnished materials, Purchaser recognizes that the color and texture of it are not always true and therefore, Contractor shall not be responsible or liable for any variation thereof.

37.    CERTIFIED FUNDS:  In the event that there is no third party financing for the construction of this residence, all funds paid by Purchaser to Contractor will be paid by cash, certified check or cashier's check. Purchaser shall establish a checking or savings account in both the Purchaser's and Contractor's Name and deposit the contract amount therein, less any deposits paid upon the execution of this agreement.

38.    CHANGES IN CODE:  Any additional costs for labor, services and materials required by

7                                      Initials _M_ / _AM_

the building, zoning, health department and/or other governmental authority through a change in the code shall be the responsibility of the Purchaser. Purchaser further agrees to purchase a builder's risk policy on said residence naming Contractor as an additional insured. If Purchasers fail to do so, Contractor at its option, and without any responsibility to do so, may purchase it and the cost of the policy shall be borne solely by the Purchaser.

39.     THE RISK OF LOSS:  Any loss and/or damage to said residence including but not limited to fire, theft, vandalism, rain, wind or any act of nature shall be borne solely by the Purchaser.

40.     BINDING EFFECT:  The parties expressly agree that this contract shall be binding upon their respective heirs, administrators and/or assigns.

41.     NO WAIVER:  The failure of the Contractor to insist in anyone or more instances upon the strict performance of anyone or more obligations under this contract or to exercise any election shall not be construed as a waiver or relinquishment for the future performance of such one or more obligations under this contract.

42.     WAIVER OF JURY:  Purchaser hereby does waive trial by jury in any action, proceeding, claim or counter-claim brought by Purchaser on any matters arising out of or in any way connected with this Agreement.

43.     ASSIGNMENT:  The Purchaser may not assign This Agreement without the prior written consent of the Contractor.

44.     SEVERABILITY:  The provisions of this Agreement shall be deemed severable, and the invalidity or enforceability of anyone or more of the provisions of this Agreement shall not affect the validity and enforceability of the other provisions.

45.     VENUE:  Venue for all litigation shall be in Palm Beach County, Florida, unless otherwise dictated by Statute.

46.     MATERIALS:  All materials will be provided by Woodland Enterprises, Inc. or their approved suppliers.

47.     ELECTRICAL DISCONNECT CHARGE:  A charge of four hundred ($400.00) dollars will be required if electrical panel cannot be placed back-to-back with Florida Power and Light's electrical service.

48.     COSTS:  Labor and material costs for construction of this home/improvement are based on current known costs and building codes. Additional costs, in excess of 3% incurred through national emergency, acts of nature, or price increases over which Contractor has no control shall be the responsibility of Owner.

49.     WOOD/ LAMINATE FLOORING:  Woodland Enterprises, Inc. is not responsible for floor preparation needed to install wood or laminate flooring. There will be an additional charge if purchaser requests the baseboard be installed after the wood/laminate to cover painting and possible caulking of baseboard to the wood/laminate floor. Woodland Enterprises, Inc. is not responsible for damage to flooring should the purchaser take the responsibility to provide the flooring. Furthermore, wood/laminate flooring will increase the construction time of your home.

50.     PUMPS:  If Woodland Enterprises, Inc. cannot gain enough access for concrete trucks to pour concrete and a boom pump is required, the purchaser agrees to cover such costs.

51.     SEPTIC SYSTEMS:  Information concerning the proper use and maintenance of your septic system is included in purchaser warranty package. The care of the system lies solely

Initials

with the Owners. Woodland Enterprises, Inc. warrants that the soil and installation of the septic system meet code. No other warranties are expressed or implied by Woodland Enterprises, Inc.

Initials

## NOTICE TO PURCHASER:

THE BUYER OF A ONE FAMILY RESIDENTIAL DWELLING UNIT HAS THE RIGHT TO HAVE ALL DEPOSIT FUNDS (UP TO 10% OF THE PURCHASE PRICE) DEPOSITED IN AN INTEREST BEARING ESCROW ACCOUNT. THE BUYER MAY WAIVE THIS RIGHT IN WRITING.

I understand that I may request to escrow all deposits (up to 10% of the purchase price). As provided in the State Escrow Law, Section 501.1375, Florida Statutes. I further understand that if I require the funds to be held in escrow, you may charge me the cost of a premium for surety bond, or may charge me the interest that you pay to borrow money in the amount equal to the funds held in the escrow account. Such additional charges for placing the deposit escrow will be paid by me at closing.

ANY PAYMENT IN EXCESS OF 10% OF THE PURCHASE PRICE PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAYBE USED FOR CONSTRUCTION PURPOSES.

## PLEASE CHECK AN OPTION:

_____    We the undersigned Purchasers hereby waive our right to have our money held in an interest bearing escrow account as allowed by law.

_____ Initials          _A·M_____ Initials

_____    We the undersigned Purchasers request our deposit monies be held in an interest bearing escrow account, with interest to be paid to the Contractor.

_____ Initials          _____ Initials

Initials _____ / _____

NOTICE TO PURCHASER:

In accordance with Florida Statute section 489.1425 Contractor hereby gives Notice to Purchaser of the CONSTRUCTION INDUSTRY RECOVERY FUND.

PAYMENT MAY BE AVAILABLE FROM THE CONSTRUCTION INDUSTRY RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A STATE LICENCED CONTRACTOR. FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONT ACT THE FLORIDA CONSTRUCTION INDUSTRY LICENCING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS:

> CONSTRUCTION INDUSTRY LICENSING BOARD
> 7960 ARLINGTON EXPRESSWAY, SUITE 300
> JACKSONVILLE, FL 32211
>
> TELE: 904-727 5630

In witness whereof the parties hereto set their hand and seals as of the day and year indicated below:

WITNESS:

_____

_____

_____

By: _____
Contractor            *Freddy G. Mc-Nabb*   Date
*Freddy G. McNabb*  2/16/05
Purchaser  *ANA T. McNABB*  Date
*Ana T. M. Nabb*  2/16/05
Purchaser            Date

Initials *M* , *AM*

## *WOODLAND ENTERPRISES, INC.*
## *SPECIFICATIONS FOR THE MCNABB MAIN HOUSE*

### STANDARD FEATURES INCLUDE:
One year full service builders warranty
Impact fees at date of signing
Permits
25 year three-tab asphalt fiberglass roof shingles

### CONSTRUCTION FEATURES INCLUDE:
Concrete block and steel construction
Steel reinforced monolithic slab with stucco finish
Subterranean soil treatment
Renewable termite bond
Hurricane resistant engineered roof trusses
5/8" CDX plywood roofing
Wire lath and stucco soffits and lanai ceilings
Truss covered porches/entries (per plan)
Interior metal 16" O.C. studs
Steel garage door with hurricane bracing
Steel foam filled exterior doors
Plumbing: Copper water lines and PVC Drains

### DESIGN FEATURES INCLUDE:
Aladdin "Commander" soil resistant carpeting
3 ¼" Colonial fingerjoint baseboards painted white and installed before flooring
2 ¼" fingerjoint casings painted white
Hollow core masonite 6 panel colonist interior doors painted white
Hollow core masonite raised panel interior bi-fold closet doors painted white
Vinyl coated ventilated shelving: 1 shelf -clothes and 4 shelves - linen
Knockdown finish on ceilings with 5/8" drywall
Interior walls painted white with one coat orange peel and one coat latex paint
(Colorwheel: 200i interior flat)
Marble carrara window sills (white and grey)
Bronze or white single hung windows with bronze or white trim (screens included)
Tempered sliding glass doors (per plan)
Lighted walk-in closets (per plan)
Kwikset "Tylo" knobs in antique brass finish for interior/exterior hardware
Stucco banding and quoins are optional
Inside garage walls are skim coated with stucco
Interior trim painted white w/ 2 coats semi gloss latex paint (Colorwheel: 360 optima)

### KITCHEN AND BATH FEATURES INCLUDE:
Ceramic tile on kitchen and bathroom floors
Kenmore 18' cubic refrigerator with ice maker (46-37872)
Kenmore 4 cycle dishwasher (22-14071)
Kenmore disposer (42-6012)
Kenmore electric range with self-clean oven & timer (22-93402)
Kenmore Ductless range hood with 2 speed fan and light (22-53345)
*built in overhead microwave oven*

Initials ___ / AM

## *WOODLAND ENTERPRISES, INC.*
## *SPECIFICATIONS FOR THE MCNABB MAIN HOUSE (CONT'D.)*

Flat panel oak cabinets in kitchen and baths
30" uppers in kitchen, standard height vanities (31"/30" depending on cabinet line)
Double compartment stainless steel kitchen sink  (Dayton #3322)
Mica countertops in kitchen w/ 4"backsplash
Cultured marble vanity tops
5 shelf linen closets (per plan)
Built-in pantry (per plan)
Universal-Rundle elongated water saver toilets in white or bone (UR4196)
Universal-Rundle enamel steel tubs in white or bone
Recessed 'no drip' washer connection
Vented exhaust fans to exterior
Ceramic tile in wet areas of bath only to be installed approx. 7ft up from floor
Moen Chrome Chateau 7442, 4621, 2352, 2353, 6980 faucets (per plan)
Full width mirrors over vanities 40" high

### TOTAL ENERGY SAVING PACKAGE:
10 seer high efficiency central air conditioning system or per "J" Manuel
Foil R-4 insulation in exterior walls of living area
R-19 insulation in living area ceilings
40 gallon quick-recovery hot water heater
Insulated attic air conditioning duct
Energy efficient attic ventilation
Exterior exhausted vents and dryer vent

### ELECTRICAL FEATURES INCLUDE:
3 GFI weatherproof exterior outlets
Ground fault receptacles in kitchen and baths
Prewired for garage door opener
Pre-wired for 2 TV and 2 phone outlets
150 amp electrical service
All copper electrical wiring
White outlet covers / Door Chime
Ceiling fan pre-wire (per plans)
Smoke detectors
220 volt dryer outlet
Standard electrical switches in white

### EXTERIOR FEATURES INCLUDE:
5000 square feet of Floritam sod
Slab for A/C and pump (3' x 4' each) / 17 X 20 Concrete parking pad for 2
car garage
Pump/Well; 3/4 hp w/ tank, 2" well
(up to 45ft. deep), up to 60 ft. suction line (where applic)
3 exterior hose bibs
2 X 6 Facia
Exterior walls painted with Colorwheel 110 optima latex acrylic flat
Exterior doors painted with Colorwheel 350 optima exterior latex acrylic semigloss
Septic System

Initials

<u>Exhibit A</u>

)  Deposit upon signing Agreement                                $

2)  Additional deposit due at closing (10%)                      $

3)  When Slab is complete (20%)                                  $

4)  When Roof is sheathed (35%)                                  $

5)  When rough Air Conditioning, and
        Electric are installed (20%)                             $

6)  When Standing Trim is set (10%)                              $

7)  Upon Completion of Contract by the Contractor (5%)           $

**TOTAL CONTRACT SUM**                                          <u>$387,535.90</u>

14          Initials _M_ / _AM_

Exhibit B

ALLOWANCES

- CeramicTile:   $1.50 (for tile only)(to be installed: everywhere, including bedrooms (installed diagonally on floor)

- Carpet:   $9.00 per yd. (L & M)
- Light Fixtures:   $250.00

SPECIAL NOTES

Initials *M* / *AM*

**Woodland Enterprises, Inc.**
**15592 Jupiter Farms Road**
**Jupiter, FL. 33478**

Authorization of Owner (or Owners) to:

_ST LUCIE_ County Building & Zoning
_ST LUCIE_ County Health Dept.
_ST LUCIE_ County Concurrency

The Undersigned do hereby authorize Woodland Enterprises, Inc. to act on my (their) behalf and to make representations on my(their) behalf. In authorizing the agent of Woodland Enterprises, Inc. to represent (me) (us), the owner (s) attest that the application is made in good faith and that information by the owner (s) is accurate and complete.

State of Florida
County of _ST. LUCIE_

The foregoing instrument was acknowledged before me this _6 - 28 - 05_ by _FREDDY G & ANN T. MCNABB_ who is personally known to me or who has produced _p.K._ (type of identification) as identification and who did (did not) take an oath.

_Carol Anne Gache'_
Notary Public Signature

_CAROL ANNE GACHE'_
Notary Public Name Printed

_Freddy G McNabb_
Signature of Owner

_Freddy G. McNabb_
Owner's Name (Print)

(Notary Seal)

CAROL ANNE GACHE'
MY COMMISSION # DD 350381
EXPIRES: September 24, 2008
Bonded Thru Notary Public Underwriters

_anh T McNabb_
Signature of Owner

_ANH T. MCNABB_
Owner's Name (Print)

_13215 Mascotte Empire Rd_
Street Address

_Groveland Fl 34736_
City, State, Zip Code

_(352) 429-5961_
_429-8826_
Telephone

16                         Initials _M_ / _AM_

**Exhibit C**
## LIMITED WARRANTY

WOODLAND ENTERPRISES. INQ. warrants to purchasers ("Buyer") of homes sold and constructed by the COMPANY that such home is constructed in a good and workmanlike manner; is fit for the purpose for which it was intended and has been constructed in accordance with accepted building practices. It has been inspected by our trained personnel and by the building department of the area in which it is situated.

1. The warranty set forth in this Limited Warranty commences on the date that title to your home is conveyed to you (the "closing") and applies only to those items set forth in paragraphs 6.a and 6.b hereof. Any time periods specified herein will not be extended by any acts or inaction on the part of buyer or Seller, and are not waived or extended by any repairs, delays in repairs or requests for repairs unless said extension is specifically made in writing signed by the COMPANY.

2. Any request for service under this Limited Warranty must be sent in writing during the period of the applicable portion of this Limited Warranty to our office at the address appearing below on the signature line of the Limited Warranty. The request for service must set forth the nature of your warranty claim and a description of the alleged problem. Any request for service should also indicate times during normal business hours when you will be available at your home so that we can schedule an inspection and the appropriate work.

3. This Limited Warranty runs in favor only of the original Buyer of the home and is non-transferable. Any obligations under this Limited Warranty terminate if the property is resold or is no longer occupied by the homeowner to whom it is originally issued.

4. The Limited Warranty shall be automatically void in the event you or any person, firm or entity retained or authorized by you adds to or in any manner modifies any items constructed or supplied by the COMPANY, or if you make any structural or other changes.

5. Warranty work under this Limited Warranty will be performed only by the undersigned or by a contractor provided by the undersigned. There will be no charge to Buyer for labor, materials or transportation on the warranty work covered by this limited Warranty.

6. WARRANTED ITEMS:
    a. For a period of one (1) year after Closing. We will repair or replace whichever we determine to be appropriate in our sole judgment, any structural defects in workmanship or materials in the following:
        1) Plumbing
        2) Electrical System
        3) Air Conditioning system and heating system

    b. We hereby assign and pass through to you the manufacturer's warranty, if any, for appliances and equipment such as refrigerator, range, hot water heater, washing machine, clothes dryer, garbage disposal, ventilating fan, air conditioner and like items. Such items are excluded from this Limited Warranty. It will be your responsibility to timely assert any claim against the manufacturer.

7. NON-WARRANTED ITEMS: This Limited Warranty expressly excludes and there will be no implied assumption of responsibility for:
a. Exterior Walls;
b. Cracked and/or broken tile;
c. Burned out fuses, circuit breakers and light bulbs;
d. Broken glass or torn screens unless called to the COMPANY's attention prior to closing;
e. Mirror defects. unless called to the COMPANY's attention prior to closing;
f. Repainting of walls or ceilings, or refinishing of woodwork or cabinets unless any defects are called to the COMPANY'S attention in writing, at or prior to closing;
g. Spots or imperfections in carpeting included in the home, unless called to the COMPANY'S attention in writing, at or prior to closing;
h. Any items not specifically listed as a warranted item in paragraph 6.a and 6.b. of this Limited Warranty;
i. Landscaping and lawn; The COMPANY assumes no responsibility for these items; however, the COMPANY will replace any dead landscaping called to its attention in writing, at or prior to the closing;
j. Concrete coloring;
k. Ceramic tile or grout cracking;
l. Any item where the claimed defect or malfunction was caused by the buyer or any third party; the Buyer failing to provide necessary maintenance: or if caused by acts of God.
m. Any coating, paint, or stain, on garage floors.

8. THERE ARE NO WARRANTIES THAT EXTEND BEYOND THE DESCRIPTION OF THE FACE HEREOF. THIS LIMITED WARRANTY IS THE ONLY EXPRESSED WARRANTY GIVEN. THIS LIMITED WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, OR THAT THE HOME WILL BE CONSTRUCTED IN ACCORDANCE WITH THE PLANS AND SPECIFICATIONS ON FILE WITH ANY GOVERNMENTAL AUTHORITY, WHETHER ARISING FROM CUSTOM. USAGE, COURSE OF TRADE, STATUTES, CASE LAW OR OTHERWISE, AND SHALL BE LIMITED TO THE WARRANTY PERIODS SET FORTH ABOVE. THE UNDERSIGNED DISCLAIMS ANY LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, INABILITY TO POSSESS THE UNIT, INCONVENIENCE, STORAGE COSTS, LOSS OF TIME. PERSONAL INJURY, DAMAGE TO IMPROVEMENTS MADE BY YOU, OR ANY OF YOUR PERSONAL PROPERTY.

9. If you seek to pursue any claim or denied request for service under this Limited Warranty, you must give us notice of your intent to make a claim and the estimated amount of the claim in writing. Thereafter, we may notify you within thirty (30) days from receipt of said notice of our election to have the claim settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. In the event that we fail to so notify you within said thirty (30) day period, then you may proceed to commence an action for such claim in the courts of the State of Florida. In the event that we prevail on your claim, whether said claim be arbitrated or litigated, you shall be liable for all costs and expenses incurred by us on said claim, which sum shall include reasonable attorneys' fees.

AGREED AND ACCEPTED:
BUYERS (S):

_Freddy G McNeill_      Dated: 2/16/05.

_(signature)_

          17

COMPANY: Woodland Enterprises, Inc.

BY: _____ Dated: _____

Initials _M_ _IAM_

# EXHIBIT E

01Nov.15. 2010: 5:20PM7246WOODLAND ENTERPRISES   SLC INSPECTIONS       No.7006   P. 20/2012/03



# CERTIFICATE OF OCCUPANCY

This Certificate is issued pursuant to the requirements of the Florida Building Code certifying that at the time of issuance this structure was in compliance with the various ordinances of St. Lucie County regulating building construction or use. For the following:

Building Permit No. -   0508-0736

Parcel/Folio Nbr: 4210-323-0003-000/0

Lot #                          Block:

Subdivision:

Occupancy:  Residential – 1 & 2 family dwellings

Building Address:  10750 CARLTON RD

Legal Description:

Permit Job   NEW CONSTRUCTION OF A SINGLE FAMILY HOME
Description

Permit Finaled: 01/29/2007

| Contractor | ERIC TOWNSEND | WOODLAND ENTERPRISES INC | ( ) . |
| | 15663 MELLEN LANE | JUPITER, FL 33478 | |

Ray Wazny                                         Monday, January 29, 2007

Building Official                                 Date Printed

NOTE:

This Certificate of Occupancy is issued to the above named, for building at the above named location only upon the express provision that the applicant will abide by and comply with all the conditions of the Zoning Ordinance and all Ordinances or Building Codes of Saint Lucie County pertaining to the erection, construction or remodeling of buildings or structures.

This also certifies that the electrical wiring and/or equipment, and the plumbing work have been inspected and approved. The issuance of this Certificate grants permission to occupy and use the property described herein only for the use indicated. Any change in use will require a new Certificate of Occupancy.

## POST IN A CONSPICUOUS PLACE

# EXHIBIT F

Plaintiff Profile Form - Residential Properties

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |

**For Internal Use Only**

File Number

Date Received

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

**Section I. Property Information**

| | |
|---|---|
| Name Property Owner | Fred & Anh McNabb |
| Address of Affected Property | 10750 Carlton Road |
| | Port St. Lucie, FL 34987 |

Is this Property:* [X] Residential  [ ] Commercial  [ ] Governmental

Name of Person Completing this Form: Fred McNabb

Is above your primary residence? (•) Yes   No ( )

Mailing Address (if different):

Phone: (772) 971 - 2099

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Circle one: [X] Owner-Occupant  [ ] Owner Only  [ ] Renter-Occupant

| | |
|---|---|
| Represented By: | Colson Hicks Eidson |
| Address: | 255 Alhambra Circle |
| | Penthouse |
| | Coral Gables, FL 33134 |
| Phone: | (305) 476 - 7400 |
| Case No. /Docket Info: | 2:11-cv-00252 |

**Section II. Insurance Information**

Homeowner/Renter Insurer:
ASI

Policy #: FLA 269147

Agent: Ormond Agency 411338

Address: 555 W. Granada Blvd., Suite H5
Ormond Beach, FL 32174

Phone: (386) 677 - 8800

+ Attach Copy of Insurance Declaration Page

**Section III. Claimant Information**

| Name of Claimant | Dates Occupied | | Gender | Date of Birth | Are you claiming personal injuries?* | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| | Move-In | Leave | | | Circle One | |
| Fred McNabb | / / 02 | / / | [X] M / F | / / | (•)Yes  No ( ) | Owner-Occupant |
| Anh McNabb | / / 02 | / / | M / [X] F | / / | (•)Yes  No ( ) | Owner-Occupant |
| | / / | / / | M / F | / / | ( )Yes  No ( ) | |
| | / / | / / | M / F | / / | ( )Yes  No ( ) | |
| | / / | / / | M / F | / / | ( )Yes  No ( ) | |
| | / / | / / | M / F | / / | ( )Yes  No ( ) | |
| | / / | / / | M / F | / / | ( )Yes  No ( ) | |
| | / / | / / | M / F | / / | ( )Yes  No ( ) | |
| | / / | / / | M / F | / / | ( )Yes  No ( ) | |

* Personal injuries include claims for mental anguish and medical monitoring.

McNabb, F 0001

Plaintiff Profile Form - Residential Properties

## Section IV. Inspection Information

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?   ⊙ Yes   No ○

1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?   Yanes Security & Investigative Services

1.2. When did the inspection take place?   12 06 /10

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?   ⊙ Yes   No ○

2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?   Yanes Security & Investigative Services

2.2. When was this determination made?   12 06 /10

## Section V. Drywall Information

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Knauf | Knauf-Tianjin CHINA | entire home |
| | | |
| | | |

## Section VI. Home Information

| | | | Yes | No |
|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 3217 | | | |
| Estimated Sq. Ft. of Drywall | | Occupied | ☒ | ☐ |
| Height of Interior Walls | | Year-round | ☒ | ☐ |
| Number of Bedrooms: | 4 | Summer | ☐ | ☐ |
| Number of Bathrooms: | 3 | Winter | ☐ | ☐ |

### Plumbing System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | ☐ | ☐ | ☒ |
| Copper Piping | ☒ | ☐ | ☐ |
| Copper Fixtures | ☒ | ☐ | ☐ |
| Other Fixtures | ☒ | ☐ | ☐ |
| Were repairs made to the plumbing system? | | X | |
| Dates: | | | |

### Electrical System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | ☒ | ☐ | ☐ |
| Switches | ☒ | ☐ | ☐ |
| Main Panel | ☐ | ☐ | ☒ |
| 2nd Panel | ☐ | ☐ | ☒ |
| Exposed Copper Wires | ☒ | ☐ | ☐ |
| Were repairs made to the electrical system? | ☒ | ☐ | ☐ |
| Dates: | 09/17/10 AC | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

## Section VII. Construction/Renovation Information

Date Range for New Home Construction: (Month/Day/Year)

| | | | |
|---|---|---|---|
| Start Date: | /  / | Completion Date | /  / |
| Move in Date: | /  /02 | Date Acquired Home | /  /02 |

Date Range for Renovations: (Month/Day/Year)

| | | | |
|---|---|---|---|
| Start Date: | /  /06 | Completion Date | /  /07 |
| Move in Date: | /  / | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | ☐ | ☐ | ☐ |
| First Floor: Full Wall of drywall replaced | ☐ | ☐ | ☐ |
| Second Floor: Any drywall replaced | ☐ | ☐ | ☐ |

## Section VIII. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:
Woodland Enterprises, Inc.

Address:   15592 Jupiter Farms Rd
Jupiter, FL 33478

Phone:   (561 ) 575 - 7565

+ Attach Copy of Construction/Renovation Contract
+ Attach Copy of New Home Warranty Declaration

## Section IX. Drywall Installer

Drywall Installer's Name:
Woodland Enterprises, Inc.

Address:   15592 Jupiter Farms Rd
Jupiter, FL 33478

Phone:   (561 ) 575 - 7565

## Section X. Drywall Supplier

Drywall Supplier's Name:
Banner Supply Port St. Lucie, LLC
Registered Agent: Arthur Landers

Address:   7195 NW 30th Street
Miami, FL 33122

Phone:   (    ) -

McNabb, F 0002

**Section XI. Verification of Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| | | | |
|---|---|---|---|
| _Fred D. McNabb_ | _11/22/10_ | _Ann J. McNabb_ | _11/22/10_ |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| | | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| | | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |

McNabb, F 0003

Homeowners Declaration Page



Name Insured(s):   FREDDY G MCNABB And ANH T MCNABB         Policy Number:   FLA269147

## IMPORTANT NOTICE

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

**LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE.  YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM.  WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES.  PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.**

ASI HO 09 DEC 06 07

McNabb, F 0004



**ASI ASSURANCE CORP**
805 Executive Center Dr W Suite 300
St. Petersburg, FL 33702
For General Inquiries:   (727) 374-2502



Homeowners Declaration Page   *over*

| Total Policy Premium: | $2,903 |
|---|---|
| Policy Number: | FLA269147 |

Named Insured:
FREDDY G MCNABB And ANH T MCNABB
10750 CARLTON RD
FORT PIERCE, FL 34987

Agent:
Ormond Agency
555 W. Granada Blvd  Ste H5
Ormond Beach, FL 32174

Agent Code:                    411338
For Policy Service, Call:    (386) 677-8800
E-Mail Address:    ormondagency@bellsouth.net

Effective Date of This Transaction:      2/1/2010

Activity of This Transaction:      Renewal

Residence Premises:
10750 CARLTON RD
FORT PIERCE, FL 34987

Policy Period:      From:  02/01/2010  To:  02/01/2011
(At 12:01 AM Standard Time at the residence premises)

Plan Type:      HO3

| Coverage at the residence premises is provided only where a limit of liability is shown or a premium is stated. | | |
|---|---|---|

Coverages and Limits of Liability

| | | Limit | Premium |
|---|---|---|---|
| SECTION I: | A. Dwelling Cov | $451,000 | 7197.96 |
| | B. Other Structures Limit | $90,200 | 269.55 |
| | C. Personal Property Limit | $225,500 | Included |
| | D. Loss of Use | $45,100 | Included |
| SECTION II: | E. Liability Limit | $300,000 | 30.00 |
| | F. Medical Payments Limit | $5,000 | 10.00 |

OTHER COVERAGES AND ENDORSEMENTS:
(Printed on the following page)

Deductibles:

| **HURRICANE:** | $500 |
|---|---|
| ALL OTHER COVERED PERILS: | $1000 |

Mortgagee:

1st Mortgagee:                                              2nd Mortgagee:
BANK OF AMERICA ISAOA
PO BOX 1675
CORAOPOLIS, PA 15108

Loan #: 6596055027        Escrow: Yes

Page 2 of 3    Countersigned by Authorized Representative     St. Petersburg, Florida        Date: 12/03/2009      ASI HO 09 DEC 06 07

McNabb, F 0005

Name Insured(s):      FREDDY G MCNABB And ANH T MCNABB                    Policy Number:      FLA269147

| Other Coverages And Endorsements | Form Number | Limit | Premium |
|---|---|---|---|
| Amendatory Endorsement Collapse Coverage | ASI HO 09 CLP 04 03 | | |
| Policy Cover | ASI HO 09 COV 01 98 | | |
| Deductible Notification | ASI HO 09 DN 09 05 | | |
| Hurricane Deductible | ASI HO 09 HD 05 05 | | |
| Ordinance or Law Coverage Notification | ASI HO 09 OLR 06 07 | | |
| Outline of Coverage | ASI HO 09 OTL 08 00 | | |
| Special Provisions for Florida | ASI HO 09 SP 06 07 | | |
| All Risk Policy Coverage Special Form | HO 00 03 04 91 | | |
| Special Coverage - Premises Alarm | HO 04 16 04 91 | | |
| Liability Home Day Care | HO 04 96 04 91 | | |
| Windstorm Exterior Paint | HO 23 70 06 97 | | |
| Max Discount Adjustment | | | 116.33 |
| NHR Deductible | | 1000 | -174.50 |
| HUR Deductible | | 500 | Included |
| Replacement Cost on Contents | HO 04 90 04 91 | | 556.80 |
| PC / Construction Factor | | | -273.61 |
| Sinkhole Coverage | ASI HO 09 SH 06 07 | | 16.66 |
| Age of Dwelling | | | -999.42 |
| BCEG | | | -399.04 |
| Financial Responsibility | | | -290.83 |
| Windstorm Loss Reduction | | | -3135.25 |
| Fungi,Mold,Wet/Dry Rot Included | ASI HO 09 FCB 01 05 | 10000 | Included |
| Senior/Retired Discount | | | -116.33 |

| Fees and Assessments: | | |
|---|---|---|
| Citizens Property Insurance Corporation Emergency Assessment | | 39.67 |
| Florida Hurricane Catastrophe Fund Fee | | 28.33 |
| Managing General Agent Fee | | 25.00 |
| EMPA Fee | | 2.00 |

| Scheduled Items: | | | |
|---|---|---|---|
| Description: | | Value | Premium |

The Hurricane Coverage portion of your Total Premium is:              $1,400

The Non-Hurricane Coverage portion of your Total Premium is:          $1,503

Additional Insured:

| Rating Information: | |
|---|---|
| Construction Type: | Masonry |
| Type of Residence: | Single Family |
| Year Built: | 2006 |
| Total Square Feet: | 3,200 |
| ASI Territory: | 141 |

Notes:

ASI HO 09 DEC 06 07
McNabb, F 0006



FLOOR PLAN 1/4" = 1'-0"

McNab... 0007

Contractor's License #
CRC018069

## CONSTRUCTION AGREEMENT

THIS AGREEMENT made this the __ day of February 11, 2005, by and between WOODLAND ENTERPRISES, INC., (hereinafter referred to as "Contractor") whose address is 15592 Jupiter Farms Road and Freddy G. and Ann T. McNabb (hereinafter referred to as "Purchaser") whose address is _____ Home phone _____

*Flip plan*

## WITNESSETH

CONTRACTOR and Purchaser for good and valuable consideration as hereinafter set forth do mutually agree as follows:

1.   **SCOPE OF WORK:** Contractor agrees to furnish all materials, labor, building permit and services necessary to construct a single family residence on the property described in Paragraph 2 below and agrees to build and construct said residence in a workman like manner in accordance with all applicable building codes and in substantial compliance with those plans and specifications.

2.   **CONSTRUCTION LOCATION:** The Contractor agrees to construct said residence upon the property legally described as follows:

2a.   **STRUCTURE TO BE BUILT:** Buttonwood floor plan w/ changes; total sq. ft.: 3,216 and 44 x 40 Detached Garage; total sq. ft.: 1,760

3.   **PAYMENT:** The total purchase price for the subject single family residence described above, including improvements, selected options, limited fill and lot prep as set forth herein shall be:

| | |
|---|---|
| Basic Price Of House and Garage | $314,537.00 |
| Selected Options and Allowances: (See Description Below) | $ 72,998.90 |
| Total Purchase Price | $387,535.90 |
| Deposit Due Upon Execution Of Contract | $ |
| Additional Deposit Due Upon Construction Mortgage Closing | $ |
| Balance Of Contract Due In Accordance With Draw Schedule | $ |
| Set Forth In Paragraph 6. | |

## SELECTED OPTIONS AND COSTS THEREOF ARE AS FOLLOWS:

*Options for House*

| | |
|---|---|
| 8'0 ceilings instead of 9'0 | N/C |
| Make living room — dining room/ dining room — living room open wall to living room  front area | N/C |
| Extend kitchen countertop out 3'0 toward sliding glass door (keep same angle) | $1,750.00 |
| Upgrade appliance package to same as Buttonwood home | $1,697.00 |
| Upgrade Buttonwood 22 c.f. refrigerator to 25 c.f. refrigerator | $340.00 |
| Allowance for summer kitchen | $9,700.00 allow |
| Allowance for larger kitchen sink | $800.00 allow. |
| Additional charge to upgrade kitchen cabinets to 42" upper raised panel maple | $2,680.00 |
| 42" upper raised panel white foil cabinets in laundry w/ utility sink | $1,825.00 |
| 4 recessed lights in family on 2 switches | $510.00 |

1

Initials _____ / _____

McNabb, F 0008

| | |
|---|---|
| Additional monies toward lighting allowance (total allow. now $1,000.00) | $850.00 |
| Make front area porch with post – 6' out | $5,460.00 |
| Extend back porch to back of house (additional  11'6" x 25') | $15,825.00 |
| (1) 2" x 6" Fixed glass window on porch wall | $491.00 |
| Front bedroom, make closet with 3'0' access on side | N/C |
| (2) Rounded arches in back halls | N/C |
| Garage door opener on main house | $390.00 |
| Security System (2 keypads, sensors on all moveable openings and pre-wire only for 1 motion and 1 smoke detector and (exterior siren) | $1,200.00 |
| Mullion bars on front house windows | $450.00 |
| Cat. 1 granite w/ standard edging and 4" backsplash in kitchen | $4,000.00 |
| Outdoor hot/cold shower w/ standard fixture w/ 3 x 3 pad | $320.00 |
| (4) spotlight outlets on 2 switches | $350.00 |
| Allowance for lot preparation | $2,000.00 |
| Tile everywhere (including bedrooms) installed on the diagonal | $10,016.90 |
| Enclose rear porch with 24 gauge direct mount steel shutters | $1,800.00 |
| Upgrade house Cat. 1 Entegra Estate Roll Roof Tile | $10,545.00 |

*Hurricane Shutters on all windows*

**Options for Detached Garage**

- 16' Beam
- Inverted hip ceiling (unfinished)
- Standard electric (4 outlets, 6 fluorescent lights, 1 exterior lighting outlet)
- 220 outlet
- Painting on interior walls over rough block
- Painting of exterior stucco and trim
- 5/12 pitch roof
- Cat. 1 Entegra Estate Roll Roof Tile
- (1) 16' wide x 12' high garage door w/ opener **and** (1) 12' wide x 14' high garage door w/ opener
- (1) 3'0 x 6'8 raised panel metal door
- 40' x 20' concrete pad
- Stucco exterior walls and soffit

**\* The above selected options supersede the standard specifications listed on pages 12, 13 and 15 (where applicable).**

Any options or extras not mentioned above shall be at an additional cost and shall be paid in accordance with the terms set forth below.

4.    **FINANCING:** If the Purchase price or any part of it is to be financed by a third party loan, this Contract is conditioned upon Purchaser obtaining a written commitment for a construction loan and permanent financing loan within _____ days from the date hereof, for a fixed or adjustable rate loan, for the principle amount of _____ ($_____) at the prevailing interest rate. Purchaser agrees to make application within five (5) days of executing this agreement and use reasonable diligence to obtain said Commitment and thereafter, to satisfy the terms and conditions of the commitment and close the loan. Purchaser shall pay all loan expenses. If Purchaser fails to obtain the commitment or fails to waive his rights under this subparagraph within the time for obtaining the commitment, or after diligent effort fails to meet the terms and the conditions of the commitment, then either party by written notice to the other, may cancel this agreement

a.    Upon written notification that the Purchaser has obtained a firm Commitment for the construction loan and permanent loan, satisfactory to Contractor, providing that Purchaser has paid all deposits required under this Contract, and further provided that the Purchaser has approved the plans and specifications, Contractor will: Secure all required building permits; and construction will commence not more than 60 days after issuance of said permits.

b.   In the event the Purchaser through no fault of its own fails to obtain a firm commitment for a construction and permanent loan within the time provided,

2

Contractor shall return to Purchaser all deposits paid under the Contract, less any actual expenses incurred by the Contractor, in which event the Contract shall be null and void and both parties released of all further liability hereunder. If Purchaser intentionally or negligently fails and refuses to obtain a firm commitment for a construction loan and permanent financing, Within the time provided or fails to pay all deposits due under this Agreement the Contractor may at its discretion retain all deposits received as liquidated damages or at its sole option may pursue any other rights it may have at law or equity .

5.   **START OF CONSTRUCTION**: Having commenced construction, Contractor will complete same as expediently as conditions will permit. Delivery date shall be approximately 180 working days after the slab is poured.  Contractor will not be held in default by any delay caused by circumstances not within the Contractors control. Purchaser expressly agrees that Contractor will not be responsible for any loss, damage, expenses or inconvenience alleged to have been incurred or sustained by Purchaser directly or indirectly as a result of delayed completion of the proposed improvements and delivery to the Purchaser. Contractor unconditionally guarantees to Purchaser that the home or unit shall be completed and available for occupancy within two (2) years from the date of this agreement and time shall be of the essence as to this two year period.

6.   **DRAW SCHEDULE**:  See Exhibit "A" attached hereto. If this construction is being financed by a 3rd Party Loan, this Contract is expressly conditioned upon Contractor's approval of the Lender's Draw Schedule. If Contractor is not satisfied it may terminate this Contract, and return Purchaser's Deposit, less Contractor's out of pocket expenses up to the time of termination.

7.   **POSSESSION**: It is acknowledged by the parties hereto that Contractor and its agents have exclusive possession of the premises during construction, in order to minimize the risk of loss to Purchaser and to maximize performance Of the Contractor's employees and subcontractors. Therefore, Purchaser shall not enter the premises during the construction period or prior to acceptance of the completed residence except with an authorized representative of the Contractor. Contractor shall deliver possession of the premises at completion of the residence in accordance with the terms of this agreement and upon payment in full of the Contract sum plus all work change orders. Final inspection by the building department or building inspector having jurisdiction and the issuance of the Certificate of Occupancy or Certificate of Completion shall be deemed substantial Completion of all improvements. Purchaser agrees not to take possession of the residence or property until all monies have been paid in full. Purchasers taking possession of the premises prior to the Contractor being paid in full shall be deemed to have taken the residence in "As Is" condition, unconditionally accepting any and all unfinished items or defective work as properly completed and waiving all warranties herein and shall remain fully liable for all unpaid balances.

8.   **HEALTH PERMITS**: Contractor is hereby authorized to take all necessary action to make application for a permit from the County Health Department having jurisdiction of said property to install a septic system in the above described real property (if a septic system is applicable). Said application generally requires an engineering survey, a 6 ft. deep hole and an application fee, all of which costs approximately _____.   The Purchaser as described above shall pay cost of the Health Permit in the event the Contract is canceled prior to construction beginning.

9.   **WELL WATER**:  If the premises described herein shall not be served by a public water supply, Contractor shall provide Purchaser a well, including casing up to 60 feet deep, pump and all required pipe so as to flow sufficient fresh water to serve the premises, However, the Contractor makes no warranties, expressly or implied as to the quality of the water supplied which will be provided, and specifically said quality is not! represented to be potable or otherwise suitable for drinking, nor is the quality of said water provided warranted, express or implied to meet the limitations or standards for drinking water as set forth by the United States

Initials _____ / _____
McNabb, F 0010

Public Service, the State of Florida Department of Heath & Rehabilitative Services, any County Department of Health, or those of any other agency or branch of the United States, State of Florida or County having jurisdiction over said property, or any other governmental authority claiming jurisdiction over the property described herein.

10.    **SUBSTITUTION & CHANGES**: Contractor shall have the right to substitute building materials, appliances and fixtures of other like kind, quality and to make minor structural changes in keeping with all applicable building codes and on the basis of good design standards. Except for the right of Contractor to make such substitution, there shall be no changes or variance from the referenced drawings and specifications and selection sheet except as specifically provided herein.

A.    <u>CONDITIONS FOR CHANGES</u>:

1.    The home will be built substantially in accordance with the plans and specifications referred to above and will incorporate all options selected and shown on this Contract and Addendum hereto. Any deviations must be acknowledged in writing by the Contractor. If any changes are made after execution of this agreement which effect if the price herein agreed to, Purchaser will be charged a minimum of $100.00 for each change made to cover processing and documentation costs for said change in addition to any charges incurred as a result of the change requested. The Purchaser must pay the cost of the change in full at the time the change work order is executed.

2.    Contractor will clear the lot of all small growth such as Palmettos in an area consisting of not more than _____ sq. ft. If a larger area is to be cleared such will be done on a cost bid basis by contractor and will be treated as a price change request under subparagraph "A (1 )" above.

3.    Any change request will include an extension of time, which extends the delivery date. Any change request, which does not mention a change in time, will implicitly increase the delivery date by five (5) days.

B.    All trees will be removed that are within 5 feet of the house or in the driveway or walks, or in the direct path of water, sewer or septic tank area, electric lines or in a future drainage swale on the side of the house. Contractor and Purchaser will arrange a meeting to discuss tree removal prior to the start of the construction.

Contractor reserves the right to remove any trees within the area described above, or trees which Contractor in, at its sole discretion, judges that the roots are so damaged by construction that the tree would be expected to die. Contractor will not be required to remove trees for the Purchasers convenience or remove trees outside the area affected by construction.

C.    The elevation of the house may necessitate the Contractor to fill around trees when establishing the final grade of the lot. It is the Purchasers responsibility to remove excess dirt around trees that have been graded higher than the original grade to establish a well so that the roots may continue to breath.

Contractor does not guarantee the life or growth of any tree.

11.    **FINAL GRADING**:    Purchaser recognizes that the County Health Department dictates the elevation at which the sewer invert leaves the foundation and also the lot drainage plan; and that the Building Department having jurisdiction of the construction dictates the elevation at which the culvert height must be set. Contractor must comply with the elevations as directed.  Purchaser understands that such requirements determine the floor of the house and

4                          Initials _____ / _____

McNabb, F 0011

driveway elevations. Contractor will provide limited fill and limited grading of the lot to comply with elevation and drainage plans as established by local governing authorities. See paragraph 12 for Contractor's allowance.

12.   **FILL, GRADING & CLEARING ALLOWANCE**:  Contractor has allowed a total of $2,000.00 for clearing (clearing consists of brush and tree removal within five feet of house), grading, fill dirt, house pad, septic sand and culvert.

The following tree species must be eradicated from site prior to certificate of occupancy: A. Melaleuca, B.  Brazilian Pepper, C.   Australian Pine, D.  Earleaf Acacia**.  Should additional cost be incurred for removal of these species, customer shall be responsible for said cost. If additional trees must be purchased for lot to meet county codes, cost of same shall be the responsibility of customer.  Lot prep is allowance only:  Due to Building and Health Dept. changing elevations and standing water regulations, an exact elevation cannot be determined at this time. Any additional costs incurred for fill, customer agrees to pay out-of-pocket. Any amount above this will be paid by the Purchaser as an extra, prior to the additional clearing, grading and/or fill being provided.

13.   **SOD:**  Upon completion of the construction, driveway and grade established, Contractor will provide and install 5,000 s.f. of sod. It shall be the Purchasers responsibility to water, maintain and establish the lawn growth. Contractor does not guarantee the life or growth of the sod.

14.   **LOT BOUNDARIES:**  Purchaser shall at his/her expense supply a survey showing the dimension of the lot and approximate location of the house on the lot and septic locations.

15.   **OCCUPANCY:**  Occupying of any part of the property by the Purchaser shall be deemed to constitute an acknowledgment of complete, unqualified, irrevocable and satisfactory performance by the Contractor of the construction according to this Contract, and concurrence that any and all balances outstanding are due and payable to the Contractor.

16.   **FINAL PAYMENT:**  Final Payment shall be due when the Certificate of Occupancy or Certificate of Completion is issued by the applicable building department. Owner shall not take possession of the premises prior to full payment being made to the Contractor.

In the event any payment is delayed for any reason not attributable to the fault of the Contractor, Purchaser shall pay Contractor, in addition to all other sums called for hereunder, interest upon the unpaid balance due under the Agreement. Said interest shall be at a rate of 18% per annum or the maximum interest allowed by law, whichever is greater, and shall begin to accrue the day payment is due and unpaid.

17.   **LIMITED WARRANTY:**  See attached Exhibit "C".

18.   **EXECUTION:** If the parties do not execute this agreement simultaneously, then the party who has not signed shall have 72 hours with which to sign this contract or this Contract can be declared null and void by notification in writing to the party who has not executed the Contract. Time shall be of the essence of this Contract.

19.   **ANTICIPATORY BREACH:**  If Purchaser, before Contractor starts construction, without legal excuse, attempts to breach this Contract and prevent Contractor from beginning construction of said residence, the Contractor shall be reimbursed by the Purchaser for the actual expense incurred up to the time of the breach, and for all profit which would have naturally flowed from this Contract, as if it had been fully completed, in addition to any legal fees incurred in order to collect same.

20.   **GOVERNING LAW:**  This Contract shall be construed in accordance with the laws of the State of Florida and venue shall be deemed proper in St. Lucie County, Florida.

McNabb, F 0012

21.     **DEFAULT -LIQUIDATED DAMAGES:** All monies paid to the Contractor pursuant to this contract will be applied to the Purchase Price so long as Purchasers are not in default under the terms of this Agreement. In the event the Purchaser or its lender fails and refuses to make any payment when due as provided herein, such unpaid balance shall earn interest (at a rate of 18% per annum, or the maximum allowed by law whichever is greater) from the date of Purchasers or its lenders failure to pay. Any and all monies previously paid by Purchaser or its lender may be retained by the Contractor and applied to said interest charge. which application shall in no way prejudice the rights of Contractor to sue for additional damages incurred. In the event Purchaser defaults hereunder, Contractor shall have the option to terminate this Contract and retain all monies previously paid by the Purchaser as its liquidated damages with five (5) days written notice to the Purchaser, or Contractor at its option, may sue for its damages or pursue any other legal or equitable remedy it may have.

22.     **UNUSUAL FORMATIONS:** The Contractor reserves the right to cancel this contract and refund all monies in the event any geological or physical formations make it impractical or impossible to construct the type of house selected on the real property referred to above. Unusual formations shall include but not be limited to muck and shell rock. Contractor may at its option continue with this Contract where owners execute a work change order contemplating rectifying the unusual formation problem and agreeing to pay Contractor for the cost thereof.

23.  .   **RADON GAS:** Radon is a naturally occurring radioactive gas, that when accumulated in a building in sufficient quantities, may present health risk the persons who are exposed to it over. time. Levels of Radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding Radon and Radon testing may be obtained from your County Public Health Unit.

24.     **ENTIRE AGREEMENT:** It is understood by and between the parties hereto that this Contract including the plans, specifications, selection sheets referred to above and any addendum to the contract which have been signed by the parties, contain all terms and conditions agreed upon between the parties, there being no oral conditions, representations, ,warranties or any other agreement made by the Contractor or any agent of the Contractor not contained herein. Any subsequent conditions, representations or warranties or other agreements shall not be valid and binding upon the parties hereto unless made in writing and signed by both Purchaser and Contractor. Any representations made by any Realtor or any other agent of any Realtor is in no way binding upon the Contractor.

25.     **REALTOR:**    The parties agree that no real estate broker or salesmen was involved in the formation of this agreement and if any claim is made by the aforesaid individuals the Purchasers shall be fully responsible and indemnify the Contractor for any commissions claimed.

26.     **TIME:** Time is of the essence in this Contract.

27.     **PAYMENT DIRECTLY TO CONTRACTOR:** If any of the Construction funds concerning this project are supplied by a third party lender, Purchasers agree to execute any and all documents that authorize the lending institution to make all construction draw checks payable directly and solely to Contractor after each phase of completion and a favorable inspection by the lending institution, without any further written authorization by the Purchasers.

28.     **ATTORNEYS FEES:** In the event of litigation or binding arbitration, to enforce the terms of this agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs incurred.

29.     **RIGHT TO RECORD AGREEMENT:** Purchaser specifically gives the Contractor the right to file in the Public Records all documents referred to herein in this Agreement.

30.     **PUNCH LIST ITEMS:** The fact that there may be items to be corrected or completed as

McNabb, F 0013

listed on a punch list will not prevent release of the final draw if a Certificate of Occupancy or Certificate of Completion has been issued. Purchaser shall not be entitled to possession until Purchaser, or his authorized agent shall have inspected the residence in the company of an authorized representative of the Contractor for the purpose of specifying complaints concerning the physical condition of the residence. Any physical defect or alleged defects not so specified on the punch list at the time shall be deemed to have occurred after said date, while the residence was in possession of the Purchaser. Purchaser and Contractor's representative shall sign said punch list. Failure of the Purchaser to make inspection when requested shall not delay release of last draw and shall be deemed a waiver of Purchaser's right to correction of said deficiencies. Contractor shall have 90 days from execution of the punch list to correct those items, which in its sole discretion, deems legitimate defects.

31.   **NOTICES:**  Whenever any notice to Purchaser is required same may be either delivered or mailed by Certified Mail, addressed to Purchaser, at the address set forth in this Agreement. Whenever notice to Contractor is required the same shall be mailed by Certified Mail to Contractor addressed to Contractor at its address set forth in this Agreement. All notices shall be deemed and considered delivered when mailed as herein provided.

32.   **CAPTIONS:**   The titles of various paragraphs of this Agreement are for the convenience and reference only and in no way define, limited, effect or describe the scope of the paragraph.

33.   **REPRESENTATIONS:**  Purchaser represents that he has not relied upon any statement, verbal, or written published by or under the authority of Contractor in any advertising and promotional matter, not limited to brochures, newspaper or radio or television advertisements, but has based his decision on personal investigation, observation and the materials provided herewith. Changes or amendments to the residence, including but not limited to the plans, specifications, equipment and legal description of lot may be made from time to time which do not materially effect the rights of the Contractor, the value of the residence, without the approval of the Purchaser. Such changes or amendments, which do not materially affect the rights and liabilities of the Parties of this agreement, shall not be a cause or reason for termination or rescission by any party.

34.   **DEFAULT BY CONTRACTOR:**  In the even. of a default by contractor, the sole remedy of Purchaser shall be to file an action for specific performance. In no event shall Contractor be liable to Purchaser for any damages of any nature, which Purchaser may sustain.

35.   **FEES AND ASSESSMENTS:**  Buyer is responsible for any and all Federal, State, Municipal, city or town fees and assessments pertaining to sewer, water, gas, electric, storm drainage, impact and homeowners association related costs.

36.   **SELECTIONS:**  Purchaser agrees to promptly make any color or optional item selections from choices provided by Contractor. Any selection shall be final, unless the selection becomes unavailable to Contractor and Contractor requests Purchaser to make an alternate selection. If Purchaser fails to make any selection within 10 days after Contractors request to do so, then Contractor may at its option, make the selection on Purchasers behalf, without further notice and such selection shall be binding upon Purchaser. In connection with texture of furnished materials, Purchaser recognizes that the color and texture of it are not always true and therefore, Contractor shall not be responsible or liable for any variation thereof.

37.   **CERTIFIED FUNDS:**  In the event that there is no third party financing for the construction of this residence, all funds paid by Purchaser to Contractor will be paid by cash, certified check or cashier's check. Purchaser shall establish a checking or savings account in both the Purchaser's and Contractor's Name and deposit the contract amount therein, less any deposits paid upon the execution of this agreement.

38.   **CHANGES IN CODE:**  Any additional costs for labor, services and materials required by

7                          Initials McNabb, F 0014

the building, zoning, health department and/or other governmental authority through a change in the code shall be the responsibility of the Purchaser. Purchaser further agrees to purchase a builder's risk policy on said residence naming Contractor as an additional insured. If Purchasers fail to do so, Contractor at its option, and without any responsibility to do so, may purchase it and the cost of the policy shall be borne solely by the Purchaser.

39. **THE RISK OF LOSS**: Any loss and/or damage to said residence including but not limited to fire, theft, vandalism, rain, wind or any act of nature shall be borne solely by the Purchaser.

40. **BINDING EFFECT**: The parties expressly agree that this contract shall be binding upon their respective heirs, administrators and/or assigns.

41. **NO WAIVER**: The failure of the Contractor to insist in anyone or more instances upon the strict performance of anyone or more obligations under this contract or to exercise any election shall not be construed as a waiver or relinquishment for the future performance of such one or more obligations under this contract.

42. **WAIVER OF JURY**: Purchaser hereby does waive trial by jury in any action, proceeding, claim or counter-claim brought by Purchaser on any matters arising out of or in any way connected with this Agreement.

43. **ASSIGNMENT**: The Purchaser may not assign This Agreement without the prior written consent of the Contractor.

44. **SEVERABILITY**: The provisions of this Agreement shall be deemed severable, and the invalidity or enforceability of anyone or more of the provisions of this Agreement shall not affect the validity and enforceability of the other provisions.

45. **VENUE**: Venue for all litigation shall be in Palm Beach County, Florida, unless otherwise dictated by Statute.

46. **MATERIALS**: All materials will be provided by Woodland Enterprises, Inc. or their approved suppliers.

47. **ELECTRICAL DISCONNECT CHARGE**: A charge of four hundred ($400.00) dollars will be required if electrical panel cannot be placed back-to-back with Florida Power and Light's electrical service.

48. **COSTS**: Labor and material costs for construction of this home/improvement are based on current known costs and building codes. Additional costs, in excess of 3% incurred through national emergency, acts of nature, or price increases over which Contractor has no control shall be the responsibility of Owner.

49. **WOOD/ LAMINATE FLOORING**: Woodland Enterprises, Inc. is not responsible for floor preparation needed to install wood or laminate flooring. There will be an additional charge if purchaser requests the baseboard be installed after the wood/laminate to cover painting and possible caulking of baseboard to the wood/laminate floor. Woodland Enterprises, Inc. is not responsible for damage to flooring should the purchaser take the responsibility to provide the flooring. Furthermore, wood/laminate flooring will increase the construction time of your home.

50. **PUMPS**: If Woodland Enterprises, Inc. cannot gain enough access for concrete trucks to pour concrete and a boom pump is required, the purchaser agrees to cover such costs.

51. **SEPTIC SYSTEMS**: Information concerning the proper use and maintenance of your septic system is included in purchaser warranty package. The care of the system lies solely

McNabb, F 0015

with the Owners.  Woodland Enterprises, Inc. warrants that the soil and installation of the septic system meet code.  No other warranties are expressed or implied by Woodland Enterprises; Inc.

Initials _____ / _____
McNabb, F 0016

## NOTICE TO PURCHASER:

THE BUYER OF A ONE FAMILY RESIDENTIAL DWELLING UNIT HAS THE RIGHT TO HAVE ALL DEPOSIT FUNDS (UP TO 10% OF THE PURCHASE PRICE) DEPOSITED IN AN INTEREST BEARING ESCROW ACCOUNT. THE BUYER MAY WAIVE THIS RIGHT IN WRITING.

I understand that I may request to escrow all deposits (up to 10% of the purchase price). As provided in the State Escrow Law, Section 501.1375, Florida Statutes. I further understand that if I require the funds to be held in escrow, you may charge me the cost of a premium for surety bond, or may charge me the interest that you pay to borrow money in the amount equal to the funds held in the escrow account. Such additional charges for placing the deposit escrow will be paid by me at closing.

ANY PAYMENT IN EXCESS OF 10% OF THE PURCHASE PRICE PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAYBE USED FOR CONSTRUCTION PURPOSES.

### PLEASE CHECK AN OPTION:

_____        We the undersigned Purchasers hereby waive our right to have our money held in an interest bearing escrow account as allowed by law.

                _____ Initials        _____ Initials

_____        We the undersigned Purchasers request our deposit monies be held in an interest bearing escrow account, with interest to be paid to the Contractor.

                _____ Initials        _____ Initials

10

Initials _____ / _____

McNabb, F 0017

## NOTICE TO PURCHASER:

In accordance with Florida Statute section 489.1425 Contractor hereby gives Notice to Purchaser of the CONSTRUCTION INDUSTRY RECOVERY FUND.

PAYMENT MAY BE AVAILABLE FROM THE CONSTRUCTION INDUSTRY RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A STATE LICENCED CONTRACTOR. FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONT ACT THE FLORIDA CONSTRUCTION INDUSTRY LICENCING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS:

CONSTRUCTION INDUSTRY LICENSING BOARD
7960 ARLINGTON EXPRESSWAY, SUITE 300
JACKSONVILLE, FL 32211

TELE: 904-727 5630

In witness whereof the parties hereto set their hand and seals as of the day and year indicated below:

WITNESS:

_____        By: _____
                               Contractor            Date

_____        _____
                               Purchaser             Date

_____        _____
                               Purchaser             Date

11

Initials _____ / _____

McNabb, F 0018

## WOODLAND ENTERPRISES, INC.
## SPECIFICATIONS FOR THE MCNABB MAIN HOUSE

### STANDARD FEATURES INCLUDE:
One year full service builders warranty
Impact fees at date of signing
Permits
25 year three-tab asphalt fiberglass roof shingles

### CONSTRUCTION FEATURES INCLUDE:
Concrete block and steel construction
Steel reinforced monolithic slab with stucco finish
Subterranean soil treatment
Renewable termite bond
Hurricane resistant engineered roof trusses
5/8" CDX plywood roofing
Wire lath and stucco soffits and lanai ceilings
Truss covered porches/entries (per plan)
Interior metal 16" O.C. studs
Steel garage door with hurricane bracing
Steel foam filled exterior doors
Plumbing: Copper water lines and PVC Drains

### DESIGN FEATURES INCLUDE:
Aladdin "Commander" soil resistant carpeting
3 ¼" Colonial fingerjoint baseboards painted white and installed before flooring
2 ¼" fingerjoint casings painted white
Hollow core masonite 6 panel colonist interior doors painted white
Hollow core masonite raised panel interior bi-fold closet doors painted white
Vinyl coated ventilated shelving: 1 shelf -clothes and 4 shelves - linen
Knockdown finish on ceilings with 5/8" drywall
Interior walls painted white with one coat orange peel and one coat latex paint
(Colorwheel: 200I Interior flat)
Marble carrara window sills (white and grey)
Bronze or white single hung windows with bronze or white trim (screens included)
Tempered sliding glass doors (per plan)
Lighted walk-in closets (per plan)
Kwikset "Tylo" knobs in antique brass finish for interior/exterior hardware
Stucco banding and quoins are optional
Inside garage walls are skim coated with stucco
Interior trim painted white w/ 2 coats semi gloss latex paint (Colorwheel: 360 optima)

### KITCHEN AND BATH FEATURES INCLUDE:
Ceramic tile on kitchen and bathroom floors
Kenmore 18' cubic refrigerator with ice maker (46-37872)
Kenmore 4 cycle dishwasher (22-14071)
Kenmore disposer (42-6012)
Kenmore electric range with self-clean oven & timer (22-93402)
Kenmore Ductless range hood with 2 speed fan and light (22-53345)
*built in overhead microwave*

12

Initials _____ / _____

McNabb, F 0019

## *WOODLAND ENTERPRISES, INC.*
## SPECIFICATIONS FOR THE MCNABB MAIN HOUSE (CONT'D.)

Flat panel oak cabinets in kitchen and baths
30" uppers in kitchen, standard height vanities (31"/30" depending on cabinet line)
Double compartment stainless steel kitchen sink  (Dayton #3322)
Mica countertops in kitchen w/ 4"backsplash
Cultured marble vanity tops
5 shelf linen closets (per plan)
Built-in pantry (per plan)
Universal-Rundle elongated water saver toilets in white or bone (UR4196)
Universal-Rundle enamel steel tubs in white or bone
Recessed 'no drip' washer connection
Vented exhaust fans to exterior
Ceramic tile in wet areas of bath only to be installed approx. 7ft up from floor
Moen Chrome Chateau 7442, 4621, 2352, 2353, 6980 faucets (per plan)
Full width mirrors over vanities 40" high

### TOTAL ENERGY SAVING PACKAGE:
10 seer high efficiency central air conditioning system or per "J" Manuel
Foil R-4 insulation in exterior walls of living area
R-19 insulation in living area ceilings
40 gallon quick-recovery hot water heater
Insulated attic air conditioning duct
Energy efficient attic ventilation
Exterior exhausted vents and dryer vent

### ELECTRICAL FEATURES INCLUDE:
3 GFI weatherproof exterior outlets
Ground fault receptacles in kitchen and baths
Prewired for garage door opener
Pre-wired for 2 TV and 2 phone outlets
150 amp electrical service
All copper electrical wiring
White outlet covers / Door Chime
Ceiling fan pre-wire (per plans)
Smoke detectors
220 volt dryer outlet
Standard electrical switches in white

### EXTERIOR FEATURES INCLUDE:
5000 square feet of Floritam sod
Slab for A/C and pump (3' x 4' each) / 17 X 20 Concrete parking pad for 2
car garage
Pump/Well: 3/4 hp w/ tank, 2" well
(up to 45ft. deep), up to 60 ft. suction line (where applic)
3 exterior hose bibs
2 X 6 Facia
Exterior walls painted with Colorwheel 110 optima latex acrylic flat
Exterior doors painted with Colorwheel 350 optima exterior latex acrylic semigloss
Septic System

13                            Initials _____ / _____

<u>Exhibit A</u>

)  Deposit upon signing Agreement                         $

2) Additional deposit due at closing (10%)         $

3) When Slab is complete (20%)                      $

4) When Roof is sheathed (35%)                  $

5) When rough Air Conditioning, and
       Electric are installed (20%)                     $

6) When Standing Trim is set (10%)           $

7) Upon Completion of Contract by the Contractor (5%)    $

**TOTAL CONTRACT SUM**                 <u>**$387,535.90**</u>

14

Initials _____ / _____
McNabb, F 0021

## Exhibit B

## ALLOWANCES

- CeramicTile: $1.50 (for tile only)(to be installed: everywhere, including bedrooms (installed diagonally on floor)

- Carpet: $9.00 per yd. (L & M)
- Light Fixtures: $250.00

## SPECIAL NOTES

15

Initials _____ / _____

McNabb, F 0022

**Woodland Enterprises, Inc.**
**15592 Jupiter Farms Road**
**Jupiter, FL  33478**

Authorization of Owner (or Owners) to:

_____County Building & Zoning
_____County Health Dept.
_____County Concurrency

The Undersigned do hereby authorize Woodland Enterprises, Inc. to act on my (their) behalf and to make representations on my(their) behalf.  In authorizing the agent of Woodland Enterprises, Inc. to represent (me) (us), the owner (s) attest that the application is made in good faith and that any information by the owner (s) is accurate and complete.

State of Florida
County of _____

The foregoing instrument was acknowledged before me this _____ by _____ who is personally known to me or who has produced _____(type of identification) as identification and who did (did not) take an oath.

_____          _____
Notary Public Signature                          Signature of Owner

_____          _____
Notary Public Name Printed                    Owner's Name (Print)

(Notary Seal)

                                                           _____
                                                           Signature of Owner

                                                           _____
                                                           Owner's Name (Print)

                                                           _____
                                                           Street Address

                                                           _____
                                                           City, State, Zip Code

                                                           _____
                                                           Telephone

16

Initials _____
McNabb, F 0023

## *Upgraded Specifications*
## <u>*in Addition to Standard Specifications*</u>

★   Cement Tile Roof

★   Hurricane Shutters

★   Security System

★   Pre-wire 6 RG-6 TV and 6 CAT-5 Telephone

★   200 Amp Service

★   Tray Ceiling in Master Bedroom (Per plan)

★   10' - 12' 6" Volume Ceilings (Per plan)

★   52 Gallon Quick Recovery Hot Water Heater

★   Upgrades Appliance Package

- Kenmore 22 C.F. Side by Side Refrigerator    46-52212
- Kenmore Self Cleaning Smooth Top Range    22-95302
- Kenmore Microwave    20-61612

★   Cultured Marble Whirlpool Tub in Master Bathroom

★   Upgraded Brass and Chrome Plumbing Fixtures in Master Bathroom

★   Electric Garage Door Openers

★   Interior and Exterior Brass Hardware

★   12 Recessed Lights

★   2 x 8 Fascia

★   Raised Panel Maple, Oak, Hickory or Foil Cabinets
- 42" Uppers in Kitchen
- 34 ½" High Vanities in Master Bathroom

★   Category 1 Granite w/ 4" backsplash and standard edging

### <u>*Allowances*</u>

★   Fan and Light Fixtures                          $2,000.00

★   Tile (Material Only)                              $2.00 sq. ft.

★   Carpet and Pad                          $15.50 per yd. installed

★   Landscape Package (Irrigation, Sod and Plantings)    $9,500.00

10/02

McNabb, F 0024

# WOODLAND ENTERPRISES, INC.
## STANDARD SPECIFICATIONS

**STANDARD FEATURES INCLUDE:**
One year full service builder warranty
Impact fees & Permits
On-Site financing
30 year three tab fiberglass roof shingles
8' Ceilings

**CONSTRUCTION FEATURES INCLUDE:**
Concrete block and steel construction
Steel reinforced monolithic slab with stucco finish
Subterranean soil treatment
Renewable termite bond
Hurricane resistant engineered roof trusses
5/8" CDX plywood roofing
Wire lath and stucco soffits and lanai ceilings
Copper water lines
Truss covered porches/entries (per plan)
Interior metal 16" O.C. studs
Steel garage door with hurricane bracing

**DESIGN FEATURES INCLUDE:**
Spacious volume ceilings (per plan)
Decorative plant shelves (per plan)
Soil and stain resistant wall to wall carpeting
Colonial baseboards and trim
Raised panel interior doors
Raised panel interior bi-fold closet doors
Ventilated, plastic coated close shelving
Knockdown finish on ceilings with 5/8" drywall
Vinyl acrylic latex painted walls and interior trim
Marble window sills
High quality aluminum framed tinted windows
Tempered glass sliding doors
Lighted walk-in closets
Ceramic tile in entry

**KITCHEN AND BATH FEATURES INCLUDE:**
Ceramic tile flooring in kitchen and baths
Kenmore 21 cubic ft. refrigerator with ice maker
5 cycle dishwasher
Garbage disposal
Double compartment stainless steel sink
Kenmore electric range w/ self-clean oven & timer

Ductless range hood with 2 speed fan and light
Quality cabinets
5 shelf linen closets
Built-in pantry (per plan)
Cultured marble vanity tops
Elongated water saver toilets
Recessed 'no drip' washer connection
Vented exhaust fans to exterior
Ceramic tile around bathtubs and showers
Deluxe single lever faucets
Full width vanity mirrors

**TOTAL ENERGY SAVING PACKAGE:**
10 seer high efficiency central air conditioning
   system
R-19 ceiling insulation
Insulated exterior doors
40 gallon quick-recovery water heater
Insulated attic air conditioning duct
Energy efficient attic ventilation
Exterior exhausted vents and dryer vent

**ELECTRICAL FEATURES INCLUDE:**
3 GFI weatherproof exterior outlets
Ground fault receptacles in kitchen and baths
Pre-wired for garage door opener
Pre-wired for 4 TV and 4 phone outlets (Cat.5/RG6)
150 amp electrical service
All copper electrical wiring
Ceiling fan pre-wire (per plans)
Smoke detectors
220 volt dryer outlet

**EXTERIOR FEATURES INCLUDE:**
5000 square feet of Floritam sod
17'X20' Concrete parking pad
Well and septic system (where applicable)
3 exterior hose bibs
Full 2' overhang on perimeter of home
2 X 6 Facia
Vinyl acrylic latex wall and trim paint
Stucco banding is optional
Hurricane Shutters

05/04

McNabb, F 0025

Exhibit C
LIMITED WARRANTY

WOODLAND ENTERPRISES, INQ. warrants to purchasers ("Buyer") of homes sold and constructed by the COMPANY that such home is constructed in a good and workmanlike manner; is fit for the purpose for which it was intended and has been constructed in accordance with accepted building practices. It has been inspected by our trained personnel and by the building department of the area in which it is situated.

1. The warranty set forth in this Limited Warranty commences on the date that title to your home is conveyed to you (the "closing") and applies only to those items set forth in paragraphs 6.a and 6.b hereof. Any time periods specified herein will not be extended by any acts or inaction on the part of buyer or Seller, and are not waived or extended by any repairs, delays in repairs or requests for repairs unless said extension is specifically made in writing signed by the COMPANY.

2. Any request for service under this Limited Warranty must be sent in writing during the period of the applicable portion of this Limited Warranty to our office at the address appearing below on the signature line of the Limited Warranty. The request for service must set forth the nature of your warranty claim and a description of the alleged problem. Any request for service should also indicate times during normal business hours when you will be available at your home so that we can schedule an inspection and the appropriate work.

3. This Limited Warranty runs in favor only of the original Buyer of the home and is non-transferable. Any obligations under this Limited Warranty terminate if the property is resold or is no longer occupied by the homeowner to whom it is originally issued.

4. The Limited Warranty shall be automatically void  in the event you or any person, firm or entity retained or authorized by you adds to or in any manner modifies any items constructed or supplied by the COMPANY, or if you make any structural or other changes.

5. Warranty work under this Limited Warranty will be performed only by the undersigned or by a contractor provided by the undersigned. There will be no charge to Buyer for labor, materials or transportation on the warranty work covered by this Limited Warranty.

6. WARRANTED ITEMS:
   a. For a period of one (1) year after Closing. We will repair or replace whichever we determine to be appropriate in our sole judgment, any structural defects in workmanship or materials in the following:
      1) Plumbing
      2) Electrical System
      3) Air Conditioning system and heating system

   b. We hereby assign and pass through to you the manufacturer's warranty, if any, for appliances and equipment such as refrigerator, range, hot water heater, washing machine, clothes dryer, garbage disposal, ventilating fan, air conditioner and like items. Such items are excluded from this Limited Warranty. It will be your responsibility to timely assert any claim against the manufacturer.

7. NON-WARRANTED ITEMS: This Limited Warranty expressly excludes and there will be no implied assumption of responsibility for:
a.  Exterior Walls;
b.  Cracked and/or broken tile;
c.  Burned out fuses, circuit breakers and light bulbs;
d.  Broken glass or torn screens unless called to the COMPANY's attention prior to closing;
e.  Mirror defects, unless called to the COMPANY's attention prior to closing;
f.  Repainting of walls or ceilings, or refinishing of woodwork or cabinets unless any defects are called to the COMPANY'S attention in writing,
     at or prior to closing;
g  Spots or imperfections in carpeting included in the home, unless called to the COMPANY'S attention in writing, at or prior to closing;
h. Any items not specifically listed as a warranted item in paragraph 6.a. and 6.b. of this Limited Warranty;
i.  Landscaping and lawn; The COMPANY assumes no responsibility for these items; however, the COMPANY will replace any dead
     landscaping called to its attention in writing, at or prior to the closing;
j.  Concrete coloring;
k. Ceramic tile or grout cracking;
l. Any item where the claimed defect or malfunction was caused by the buyer or any third party; the Buyer failing to provide necessary
     maintenance; or if caused by acts of God.
m. Any coating, paint, or stain, on garage floors.

8.   THERE ARE NO WARRANTIES THAT EXTEND BEYOND THE DESCRIPTION OF THE FACE HEREOF. THIS LIMITED WARRANTY IS THE ONLY EXPRESSED WARRANTY GIVEN. THIS LIMITED WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, OR THAT THE HOME WILL BE CONSTRUCTED IN ACCORDANCE WITH THE PLANS AND SPECIFICATIONS ON FILE WITH ANY GOVERNMENTAL AUTHORITY, WHETHER ARISING FROM CUSTOM, USAGE, COURSE OF TRADE, STATUTES, CASE LAW OR OTHERWISE, AND SHALL BE LIMITED TO THE WARRANTY PERIODS SET FORTH ABOVE. THE UNDERSIGNED DISCLAIMS ANY LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, INABILITY TO POSSESS THE UNIT, INCONVENIENCE, STORAGE COSTS, LOSS OF TIME, PERSONAL INJURY, DAMAGE TO IMPROVEMENTS MADE BY YOU, OR ANY OF YOUR PERSONAL PROPERTY.

9.   If you seek to pursue any claim or denied request for service under this Limited Warranty, you must give us notice of your intent to make a claim and the estimated amount of the claim in writing. Thereafter, we may notify you within thirty (30) days from receipt of said notice of our election to have the claim settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. In the event that we fail to so notify you within said thirty (30) day period, then you may proceed to commence an action for such claim in the courts of the State of Florida. In the event that we prevail on your claim, whether said claim be arbitrated or litigated, you shall be liable for all costs and expenses incurred by us on said claim, which sum shall include reasonable attorneys' fees.

AGREED AND ACCEPTED:
BUYERS (S):                                              COMPANY: Woodland Enterprises, Inc.

_____ Dated: _____     BY: _____ Dated: _____

Initials _____ / _____

McNabb, F 0026

# EXHIBIT G



IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

IN RE:  CHINESE DRYWALL LITIGATION

DARIO ORLANDO; STEPHEN SINES;            CASE NO.:  10-28090 (12)
DAVID AND JOAN GLICKMAN;
THOMAS WOJCIECHOWSKI;
OCEANPARK ESTATES ASSOCIATON,
INC., and DOCKSIDE LOFTS CONDOMINIUM
ASSOCIATION, INC., individually and as
representatives of others similarly situated,
                              Plaintiffs,

vs.

BANNER SUPPLY CO., et al.,                     HON. PETER M. WEINSTEIN
                        Defendants.
_____/

## ORDER ON DEFENDANT BANNER SUPPLY COMPANY PORT ST. LUCIE, LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

THIS CAUSE came before the Court on Defendant Banner Supply Company Port St.

Lucie, LLC's Motion to Dismiss First Amended Class Action Complaint.  The Court having

considered same, having heard argument of counsel and being otherwise fully advised in

premises, finds and decides as follows:

Plaintiffs filed the instant first amended class action complaint asserting claims for

product liability; negligence; violations of the Florida Deceptive and Unfair Trade Practices Act

(hereinafter FDUTPA); Private Nuisance; and equitable and injunctive relief.  Defendant Banner

Supply Company Port St. Luce LLC (hereinafter Banner PSL) is now moving to dismiss the first

amended complaint arguing that it fails to comply with the requirements of Rule 1.220, Fla. R.

Civ. P., fails to properly allege a cause of action for private nuisance, for violations of FDUTPA

and for equitable and injunctive relief and for failure to comply with Rule 1.130, Fla. R. Civ. P.

in that plaintiffs have failed to attach documents necessary for Banner PSL to properly respond to the complaint.

Turning first to plaintiffs' claim for private nuisance, Banner PSL argues that plaintiffs cannot state a cause of action for private nuisance as a matter of law. In the motion to dismiss, Banner PSL cites to a recent Omnibus Order on Pending Motion to Dismiss in the matter styled <u>Marlene Bennett v. Centerline Homes, et. al.</u>, Case No. 50 2009 CA 014458, entered on November 5, 2010 by the Hon. Glenn Kelly of the Fifteenth Circuit Court. In that case, Judge Kelley in a well reasoned order sets forth the well established law in Florida regarding private nuisances and states that "Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Id.* at 6 citing *Jones v. Trawick*, 75 So.2d 785, 785 (Fla. 1954). "Florida law essentially define nuisance as using one's property as to injure the land or some incorporeal rights of one's neighbor. *Id.,* citing *Beckman v. Marshall*, 85 So.2d 552, 554 (Fla. 1956). Plaintiff argues that there is an inherent weakness in Judge Kelley's ruling that the nuisance must come from outside the plaintiffs' land, that is the defective drywall did come from outside of plaintiffs' land and was delivered by Banner to the home. Plaintiffs argue that Banner PSL should have used its own property, the defective drywall, in a manner not to injure the plaintiffs. This Court finds that it is plaintiffs' argument that has the inherent weakness based on this Court's interpretation of Florida law as it deals with private nuisance. This Court finds Judge Kelley's ruling to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for

2

private nuisance in this case.[1]  Therefore, Banner PSL' motion to dismiss plaintiffs' claim for private nuisance will be granted.

Banner PSL's motion to dismiss is denied in all other respects.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant Banner Supply Company Port St. Lucie, LLC's Motion to Dismiss First Amended Class Action Complaint is GRANTED in Part as to Count IV for .Private Nuisance.  Count IV for Private Nuisance is hereby Dismissed with Prejudice.

DONE AND ORDERED in Chambers, Fort Lauderdale, Florida, this 4th   day of February, 2011.

PETER M. WEINSTEIN
CIRCUIT COURT JUDGE

Michael J. Ryan, Esq., Plaintiff's Liaison Counsel & Matthew Kotzen, Esq., Defendant's Liaison Counsel for distribution electronically through Lexis Nexis File & Serve

---

[1] Plaintiffs, in support of their opposition to the motion to dismiss argue that Judge Farina of the Eleventh Circuit, in the case of Seifert v. Banner Supply, Case No. 09-3887 CA 01(42), permitted the "Nuisance" count to go to the jury after a trial of the matter.  However, plaintiffs do not indicate whether, in fact, a motion to dismiss the "Nuisance" count ever presented to, or ruled on by Judge Farina.  Therefore, plaintiff's reliance on that case is misplaced.