UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE -MANUFACTURED  *  MDL No. 2047
DRYWALL PRODUCTS LIABILITY    *
LITIGATION                    *
                              *
THIS DOCUMENT RELATES TO:     *  JUDGE FALLON (L)
KENNETH and BARBARA WILTZ, et al *
vs.                           *
BEIJING NEW BUILDING MATERIALS *
PUBLIC Ltd, et al             *
Case No. 2:10-cv-361-EEF-JCW  *  MAG. WILKINSON (A)

## AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

MICHAEL GROFF

who, being duly sworn, upon his oath deposed and stated as follows:

1. He is the President for Groff Construction, Inc., ("Groff Construction"), and as such, has personal knowledge of the following based on his review of records maintained by Groff Construction in the regular course of business.

2. Groff Construction is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Lee County, Florida.

3. Groff Construction is a home builder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes.

4. Groff Construction has never built a residence in the State of Louisiana nor had any contracts or subcontracts with companies located in Louisiana.

5. Groff Construction has never been licensed or registered to do business in Louisiana or ever had any offices or employees in Louisiana.



EXHIBIT A

6. Groff Construction does not have an agent for service of process in Louisiana.

7. Groff Construction does not have any bank accounts in Louisiana or own any property in Louisiana.

8. Groff Construction does not solicit business in Louisiana or ever transacted business in Louisiana.

9. Groff Construction has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. Groff Construction does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. Groff Construction has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12. Consequently, Groff Construction never anticipated it would be haled into court in Louisiana.

_____
MICHAEL GROFF

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 25 DAY OF July, 2011.

_____
NOTARY PUBLIC

YOLANDA SANTOS
MY COMMISSION # DD 873240
EXPIRES: July 23, 2013
Bonded Thru Notary Public Underwriters

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE -MANUFACTURED        *   MDL No. 2047
DRYWALL PRODUCTS LIABILITY          *
LITIGATION                          *
                                    *
THIS DOCUMENT RELATES TO:           *   JUDGE FALLON (L)
KENNETH and BARBARA WILTZ, et al    *
vs.                                 *
BEIJING NEW BUILDING MATERIALS      *
PUBLIC Ltd, et al                   *
Case No. 2:10-cv-361-EEF-JCW        *   MAG. WILKINSON (A)

## AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

MICHAEL GROFF

who, being duly sworn, upon his oath deposed and stated as follows:

1. He is the President for Groff Construction, Inc., ("Groff Construction"), and as such, has personal knowledge of the following based on his review of records maintained by Groff Construction in the regular course of business.

2. Groff Construction is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Lee County, Florida.

3. Groff Construction is a home builder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes.

4. Groff Construction has never built a residence in the State of Louisiana nor had any contracts or subcontracts with companies located in Louisiana.

5. Groff Construction has never been licensed or registered to do business in Louisiana or ever had any offices or employees in Louisiana.

6. Groff Construction does not have an agent for service of process in Louisiana.

7. Groff Construction does not have any bank accounts in Louisiana or own any property in Louisiana.

8. Groff Construction does not solicit business in Louisiana or ever transacted business in Louisiana.

9. Groff Construction has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. Groff Construction does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. Groff Construction has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12. Consequently, Groff Construction never anticipated it would be haled into court in Louisiana.

MICHAEL GROFF

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 25 DAY OF July, 2011.

NOTARY PUBLIC



YOLANDA SANTOS
MY COMMISSION # DD 873240
EXPIRES: July 23, 2013
Bonded Thru Notary Public Underwriters

2

# GROFF CONSTRUCTION, INC.

General Contractor, Since 1980    License# CGC040231

Page 1 of 4    2/05

## Construction Agreement

THIS CONTRACT made and entered into this ____5____ day of __May__ 2005 by and between ____Nelson Medina____ hereinafter referred to as Owner(s), whose current address is _____ Phone # _____ and GROFF CONSTRUCTION, INC., hereinafter referred to as Contractor.

NOW THEREFORE, in consideration of this premises:

The Builder shall construct upon the building site a building in accordance with the plans and specifications hereto attached. The builder shall provide all materials and perform all work of the construction provided in the plans and specifications in a good and workmanlike manner.

| Strap # | | | | Unit- | |
|---|---|---|---|---|---|
| Block | | Lots | Street | 18472 Sunflower Road | |
| City | San Carlos Park | State | FL | Zip Code | 33912 |

Owner(s) agree that progress payments shall be made to the Contractor in accordance with the schedule of payments as set forth below, or draw schedule of lending institution.

| | |
|---|---|
| Pre-Construction Draw (15%) .......................................................... $ | 29,955.00 |
| When floor slab is poured (15%) ..................................................... $ | 29,955.00 |
| When masonry walls are complete and tie beam poured (20%) ........ $ | 39,940.00 |
| When rough electric and roof dry in (20%) ...................................... $ | 39,940.00 |
| When interior walls are complete and ready for occupancy (20%) .... $ | 39,940.00 |
| When complete and ready for occupancy (10%) .............................. $ | 19,970.00 |

| | | |
|---|---|---|
| Basic Model/Price: | Regency | $ 196,900.00 |
| Homesite: | | |
| Clearing, fill and Grading | | |
| Water (well) | | |
| Sewer (septic) | | |
| Surveys | | |
| Culvert | | |

## Addendum to contract/extras:

| | |
|---|---|
| Extra Clear, Fill, & Grade | $ 2,500.00 |
| Hurricane Shutters | $ 1,300.00 |
| Re-engeneering/ Trusses | $ 2,500.00 |
| Credit- Counter-Tops and Bathroom | $ (2,000.00) |

| | |
|---|---|
| Subtotal ........................................................................................ $ | 201,200.00 |
| Upon Signing of Agreement (deposit) ............................................ $ | 1,500.00 |
| Total Contract Price ...................................................................... $ | 199,700.00 |

Additional Contract Documents to Include:  Working Drawings, Construction Agreement, Specification Sheet, Cost Breakdown Sheet

Purchaser(s):                                          Contractor:

_____                     _____
Name (signature)            Date                 GROFF CONSTRUCTION, INC.   Date

_____
Name (signature)            Date


EXHIBIT B

May. 6. 2005 12:43PM   First Capital Lending   No. 1624   P. 2/5

# GRUFF CONSTRUCTION, INC.
General Contractor, Since 1980    License# CGC040231    2 of 4

## CONSTRUCTION AGREEMENT

1. In the event of any termination of this Contract by either party prior to the commencement of construction, the owner shall be responsible to pay the Contractor all costs and expenses incurred, plus a Contractor's fee of twenty percent (20%) of the amount of all costs and expenses incurred to cover the Contractor's overhead, all of which may be deducted by the Contractor from any deposit theretofore placed by the Owner with the Contractor or, if any such deposit was placed (or if the amount of such deposit is insufficient), the Owner shall pay such amount to the Contractor within five (5) days of receiving Contractor's statement therefor.

2. The Owner hereby informs Contractor that the Owner [initial one] _____ does _____ does not intend to obtain construction financing in order to finance construction of the residence.

If the Owner requires a loan in order to finance all or any portion of construction of the Residence, the Owner shall be solely responsible for any and all arrangements, costs and expenses to acquire such loan, and in the event that such financing cannot be arranged in (30) days after execution hereof, either the Owner or Contractor shall have the right to terminate this Agreement. In the event of such a termination, the Owner shall be responsible to pay the Contractor all costs and expenses incurred plus a Contractor's fee of twenty percent (20%) of the amount of all costs and expenses incurred to cover the contractors overhead, all of which may be deducted by the Contractor from any deposit theretofore placed by the Owner with the Contractor or, if no such deposit was placed (or if the amount of such deposit is insufficient), the Owner shall pay such amount to the Contractor within five (5) days of receiving Contractor's statement therefore. In the event that the same is deducted from the deposit, any and all portions of such deposit in excess of the amount retained by the Contractor shall be paid by the Contractor to the Owner within 30 days thereafter.

In the event that the Owner will obtain construction financing in order to pay for all or any portion of the construction, all loan proceeds shall be disbursed directly to the Contractor as the sole payee, and Owner hereby agrees to execute such documents as are reasonably necessary to authorize Owner's lender to disburse such proceeds directly to Contractor. If the Owner's construction lender wishes to utilize a disbursement schedule that is different from the disbursement schedule set forth herein, the same shall be subject to Contractor's approval. To the extent that the loan proceeds to be disbursed by the Owner's lender to Contractor are insufficient to cover the entire Contract Price, the Owner shall be responsible to fund any difference so that the Contractor will receive timely disbursement schedule set forth here within, or the lender's disbursement schedule (subject to the Contractor's approval thereof.)

3. Possession of the premises shall not be delivered to the Owner until the building has been fully constructed and the full contract price has been paid to the Contractor. It is agreed that the Contractor will deliver a notice of occupancy to the Owners, and that the Owners shall, within ten (10) days after receipt of said notice, make final payment to the contractor. At the time of such settlement an affidavit of "no lien" covering all materials and labor will be presented to the owners by the contractor. It is expressly understood and agreed that owners are not to occupy or otherwise take possession of the premises being improved pursuant to the contractor prior to such final settlement unless written consent to take such occupancy, have paid the full contract price to the contractor.

4. It is expressly understood that certain compliance "punch list" items may remain at the time of settlement and that such items will be promptly and responsibly completed by the contractor. It is further understood that additional items may arise during the warranty. Notwithstanding the foregoing, closing may be completed without such lists, and such lists will be honored in accordance with the terms of the warranty set forth below. Whereas the written assurance is provided, the contractor is not required to honor requests for escrow holdbacks pending completion of "punch list" or warranty items.

5. No changes shall be made in the owner approved plans and specifications unless such changes have been mutually agreed upon by owner and contractor, and stipulated in writing, signed by the parties with full payment of change due at this time. In the event of any such change, contractor shall be allowed additional reasonable time to complete construction. Each change subsequent to owner's initial approval of plans and specifications shall increase the construction price by a minimum of $50.00 per change. Contractor is hereby authorized to make changes without owners approval where (1) any such change is the result of structural or field condition or matters imposed any regulatory agencies, or (2) materials specified not readily available when needed (provided that material substituted therewith shall be if substantially equal value and usable). In the event change orders are required for approval of the structure by the subdivision or homeowners association in which the property is located or governmental authority having jurisdiction over the construction practices, such will be made at the owner's expense.

6. Owner now represents that owner now has title of the property described herein, or will acquire same before start of construction; that same has been property owned for construction of the improvements described; that owners title is free and clear of any liens and encumbrances whatsoever, and that there is legal access from public roads to said property.

7. Contractor will furnish adequate builders risk insurance and personal liability insurance which insurance will be kept in force during entire duration of the period of construction, with certificate of insurance or copies of policies furnished to owners lender as may be required. All other types of insurance, included Federal Flood Insurance, if required will be provided by owner.

8. In the event that owner defaults in the payment under Florida law, including Chapter 713 (the mechanics lien law), Owner shall also be responsible for all of the Contractor's cost as many arise as a result of Owner's default, including overhead lost profits and other legal entitlements normally associated with breach of contract claims. In the case of default of owner, contractor is released from his obligations to the owner, and owner shall have only such remedy as he may otherwise have under this contract or under Florida Law. In the event that either party shall institute litigation under this contract, the prevailing party shall be entitled to recovery of his, her or their reasonable attorney's fees, including appellate fees.

9. In the event this contract is subject to owner's financing and such contingency is not met, Owner shall immediately pay contractor (i) cost and expense reasonably incurred by contractor, including but not limited to, preparation of plans and specifications, percolation test, surveying and all charges incurred for interior decorating specifications and selections.

10. In addition, prior to commencement, Owner shall provide Contractor with evidence of satisfactory financing; that the Owner has obtained final approval of all Plans for the Residence and landscaping by any homeowner's architectural review, if applicable. That the Notice of Commencement shall have been recorded and a certified copy thereof posted at the site; the building permit shall have been issued by the applicable building department, the Department of Environmental Protection shall have issued its final clearance and any other applicable authorizations, permits or approval shall have been given by entities having jurisdiction over the construction. All of the foregoing are preconditions to Contractor commencing construction pursuant to this Agreement Contractor shall commence construction within Twenty (20) days after the last of all such preconditions have occurred. Contractor estimates that it will take one hundred eighty working days from the date of commencement within which to substantially complete the Residence. The date of commencement is the date when the foundation footings are poured or when pile driving commences, whichever is applicable. While Contractor and Owner believe that the estimated time for completion of the residence set forth above is reasonable, owner understands and agrees that the completion date may be extended by delays due to weather, casualty, material unavailability or shortages, labor strikes, governmental acts, changes requested by the owner, and other causes beyond the Contractor's control. Owner further understands and agrees that, the foregoing notwithstanding, Contractor cannot and does not guaranty that construction will be completed on or before the specified date, and Contractor shall have no liability for any delays (regardless of the cause thereof) beyond the estimated date for substantial completion described above, provided that Contractor agrees to complete construction within one (1) year from date of this agreement.

11. Owner understands and agrees that Owner is obligated to make selections in a timely fashion. Contractor shall present Owner with choices for various selections, or direct Owner to vendors from whom Owner will make choices. Owner shall have thirty (30) days from commencement within which to make each such selection. Any delay and additional cost arising out of the Owner's failure to make selections within such thirty (30) day period, or arising out of any changes after Owner has made a selection, shall be the Owner's responsibility. Further, any such delays shall be the deemed to increase the estimated time for substantial completion of the residence set forth in paragraph ten (10) above.

12. Should it become necessary for the contractor to institute legal proceedings to enforce any of the terms and conditions of the contract documents, the owner agrees to pay any and all legal fees, expenses and Attorney's fees incurred on behalf of the contractor.

13. Should any dispute arise respecting the true value of any extra work, or work not committed, the same shall be valued by two competent persons – one employed by the owner and one employed by the contractor and in the event of their inability to agree, they shall have the power to name an arbitrator whose decisions shall be binding on all parties. No work shall be performed by the owner on the premise during the periods of the agreement without written authorization of the contractor.

14. The parties acknowledge that the stipulated construction cost does not include additional items which may arise by virtue of the location of physical conditions of the property. All such additional costs shall be paid by owner and shall include, and limited to:

   A. Expenses caused by rock excavation and removal or other adverse subsoil conditions, tree or muck removal.
   B. Expenses of electrical service run across the building necessitated by power company pole and regulations, underground electrical and/or telephone service.
   C. Any variance or zoning change required for construction.
   D. Water and sewer line hookups in excess of 50 feet.
   E. Use of cranes, pumps or other equipment required to place or deliver fill, concrete or other building materials due to any physical obstacles or limitations.

15. The Contractor has made no independent inspection of the property to determine the presence of conditions which may result in radon gas; however, the Contractor is not aware of any such condition, section 404.056(8), Fla. Stat., requires the following disclosure.

RADON GAS: RADON IS A NATURALLY OCCURRING RADIOACTIVE GAS THAT, WHEN IT HAS ACCUMULATED IN A BUILDING IN SUFFICIENT QUANTITIES, MAY PRESENT HEALTH RISKS TO PERSONS WHO ARE EXPOSED TO IT OVER TIME. LEVELS OF RADON THAT EXCEED FEDERAL AND STATE GUIDELINES HAVE BEEN FOUND IN BUILDINGS IN FLORIDA. ADDITIONAL INFORMATION REGARDING RADON AND RADON TESTING MAY BE OBTAINED FROM THE COUNTY PUBLIC HEALTH UNIT.

Initials: _____ _____ _____

16. This agreement may not be assigned or transferred by either party without prior written consent of the other party.
17. The price of the residence of the contract is guaranteed subject to start of construction occurring within forty five (45) days of contract date. If for any reason construction starts after the number of days specified in this paragraph, the entire contract price is subject to renegotiation by seller.
18. Contractor may use and install materials other than and different from those the plans and specifications, provided that such different shall be equal or greater in value and usability.
19. Owner acknowledges and agrees that Contractor will be contracting with subcontractors and suppliers. Owner agrees that all communications with subcontractors and suppliers shall be through the Contractor, and Owner further agrees that Owner shall not at any time give direction to, or interfere with, and subcontractor or supplier with respect to the residence. Any comments or communications which the Owner has regarding the residence shall be made to the Contractor only. Owner agrees to visit the jobsite only on weekends and/or after 5:00 PM during the workdays. Owner takes full responsibility during jobsite visits, and holds contractor harmless and assumes all liabilities for any injuries sustained by owner or members of owner's party during said visit to jobsite.
20. Contractor's warrants all workmanship and materials not covered by manufactures warranty, for a period of one year from occupancy. The following items are excluded from coverage of the warranty, and for which the contractor does not assume any responsibility or liability: (a) defects in wood doors, appliances, equipment and systems such as, but not limited, warping of entry doors, HVAC equipment, security systems, audio systems, lighting systems, plumbing fixtures, elevators, refrigerators, etc. which are covered under manufactures or installers warranties (and for which the Owner acknowledges and agrees that the Owner's sole recourse shall be against the manufactures thereof pursuant to the manufactures warranties.)
(b) Damage due to ordinary wear and tear, abusive use, negligence or a lack of proper maintenance; (c) defects which are the result of characteristics common to the materials used, including, but not limited to: warping and deflection of wood, fading, caulking and checking or cracking or paint or stained materials due to sunlight, cracks due to drying and curing of concrete, stucco, plaster, bricks, and masonry; tile cracks due to settlement (unless Owner elects to purchase an underlayment membrane which shall be an additional cost.) drying, shrinking and cracking or caulking and weather stripping; tarnishing of metallic hardware, plumbing fixtures, lighting fixtures and the like; mildew, and any and all other normal fantastic variation in color or texture of natural materials such as stone and marble; and conditions resulting from condensation, expansion, contractions or warping of materials, or which result from negligence, lack of maintenance or abuse by the Owner of from an act of God; (d) Damage due to animal or insect infestations of the like; (e) Defects in items installed by Owner or anyone else except the Contractor of subcontractors at the express direction of the Contractor; (f) Damage to glass surfaces, repair of dented appliances, screens, sinks, plumbing, fixtures, brass hardware, light fixtures, mirrors, cabinets, or to glass surfaces, repair of dented appliances, screens, sinks, plumbing, fixtures, brass hardware, light fixtures, mirrors, cabinets, ceramic tile, marble, any painted surfaces, cracked roof tiles, floor coverings and/or countertops from Kitchen and Bath fans, vents and doors; (h) Replacement of fluorescent light ballasts or any other light bulbs not noted on Closing punch-list; (i) Sod and Landscaping (Owner shall be responsible to water sod and landscaping upon installation; (j) Defects disclaimed in Change Orders or the Contract Sales Disclosure, and for which the Contractor shall have no responsibility or liability); (k) Contractor does not express or imply warrant habitability or appropriateness of soil or sub surface conditions of the subject property. Owner expressly assumes the risk of any and all loss or damage to the home and pool caused by soil or sub-surface conditions, whether or not any such adverse conditions could have been discovered prior to the start of construction by appropriate testing.
21. The Owner shall promptly report to the Contractor in writing the existence, or suspected existence of any leak, as well as the presence, or suspected presence, of mold, of which the Owner becomes aware so that the Contractor may take steps immediately to minimize the consequences of a leak and/or costs and expenses of remedying any such leak and damage caused by such leak, or the presence of mold, above the norm that the Contractor would have expended had prompt notification been given.
22. (a) Owner agrees that the Contractor shall have the sole and exclusive right to perform construction work on the Lot in order to construct the Residence. If the Owner desires to perform any work related to construction of the Residence or any appurtenances to the residence, during the time when Contractor is constructing the Residence, Owner shall request Contractors consent to do so, provided that no such work by the Owner (or by separate forces hired by the Owner shall be performed without the Contractor's written consent. In the event that the Contractor does consent to allow any such work, including, but not limited to, specialty items such as fences, walls, pools, spas and the like, Owner acknowledges and agrees that any and all such work performed by the Owner or by separate forces hired by the Owner shall not interfere with Contractor's construction of the Residence, and that if any such work does interfere with Contractor's construction of the Residence, any and all additional costs or expenses incurred as a result thereof shall added to the Contract Price by a Change Order. (b) If the Owner chooses to have any work performed in connection with the Residence by separate forces hired by the Owner (with the Contractor's consent as required by paragraph 19(a) above), then, as a pre-condition to any such separate forces performing any work at the Residence, each and every such person or entity that will be having all applicable state and local licenses, and appropriate insurance coverage, including, but not limited to, workers compensation in accordance with Florida statutes, and liability insurance with types of coverage, and limits of liability insurance with types of coverage, and limits of liability, no less than those maintained by the Contractor. Contractor shall have no liability for and contractors warranty shall not apply to any work performed by separate forces hired by the Owner.
23. Sighting of the Residence upon the Lot shall be coordinated between the Engineer and contractor and subject to right of architectural review by any applicable homeowners association, if applicable. Where permissible by such homeowners association and good construction practices, the Owner preference as to sighting of the residence shall be followed. If orientation of house is specified at time of signing contract, owner will be responsible for cost incurred by contractor (electrical – site preparation) for such owner specified site orientation.
24. This agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of owner and builder
25. This agreement constitutes the entire agreement between owner and contractor and no covenant or other representations are made by either party to the other that those set forth in this agreement supersedes all prior agreements between the parties whether oral or written, and may not be modified, except in writing by the parties.
26. In the event that changes in building codes, required by county, state or federal regulatory agencies, are implemented after construction contract is signed, increased cost for such changes shall be the responsibility of the owner(s).
27. Any well, over standard depth will be charged buyer and builders cost.
28. Aerobic Septic System, if required, will be charged to buyer at builders cost.

Purchaser(s):

_____
Name (signature)


_____
Name (signature)

Contractor:

_____
GROFF CONSTRUCTION, INC.

# GROFF CONSTRUCTION, INC.

GENERAL CONTRACTOR, SINCE 1980    LICENSE# CGC040231   PG 3 of 4  2/05

1. House orientation will be determined by which side of property power pole is located. The garage will be on the same side and shortage distance to power pole. If personal preference wishes otherwise, a $750.00 fee will be charged for extended service. And only if applicable by county.
2. Appointments are necessary and must be made in advance with our staff for color selections or any type of meeting. Our hours are 9:00 a.m. - 5:00 p.m. - Mon - Fri weekend appointments are limited and must be made well in advance.
3. Construction time will vary depending on availability of labor & materials. Be prepared for a 10-12 month completion time from execution of contract. We appreciate your phone calls, but they will not expedite the process or progress.
4. If your property is deemed a wetland site by the department of environmental protection, be prepared for possible further delays and expenses incurred in this determination we are not responsible for determination prior to contract.
5. Construction loan closings must be finalized within 2 months from date of executed contract, otherwise, contractor reserves the right to terminate contract at his discretion.
6. Due to liability issues, visiting your jobsite during construction is at your own risk. Contractor will not be held liable for any injury incurred by you or your party during a job site visit. It is strongly recommended women & children should never visit job site during construction. We strongly advise not to walk the site.
7. Appliances will be delivered the day of occupancy by homeowner. Vandalism and theft has created this policy.
8. No work will be preformed by customer or customers sub contractor untill house has a C/O (certificate of occupancy) and is paid in full.
9. Any communication to sub-contractors or suppliers for additional work or supplies after contract is prohibited. All additional work requested after contract will be subject to a change order charge plus the additional cost of work. This will be paid at the time of the change order, in full. No Change orders will be allowed after windows are installed.
10. At execution of contract - Contractor will initiate a wetland determination. If the property is not wetland, homeowner is free to close. If however, property is determined to be wetland, and homeowner closes, any labor or material cost increases due to wetland time delay, will be at homeowners' expense.

PURCHASER (S)                                        CONTRACTOR:

X _____  _____            _____  _____
NAME (SIGNATURE)        DATE                NAME (SIGNATURE)      DATE

_____  _____
NAME (SIGNATURE)        DATE

May. 6. 2005 12:44PM    First Capital Lending             No. 1524    P. 3/3

# Groff Construction, Inc.
General Contractor Since 1988      License #CGC040231

PG 4 of 4                    2/05

## Specification Sheet

County Impact Fees and Permits ---------------------------------------------------------- Included
Surveys and Drawings ------------------------------------------------------------------- Included
Washing Machine, Dryer, Range, Microwave, Dishwasher, Refrigerator ------------------ Included
All Site Preparation (Clearing, Filling and Grading) ------------------------------------- Included
Builders Risk Insurance during Construction ------------------------------------------- Included
Well System ---------------------------------------------------------------------------- Included
Septic System -------------------------------------------------------------------------- Included
Hurricane Engineering Fees -------------------------------------------------------------- Included
Choice of Color Selections --------------------------------------------------------------- Included

## Interior Features

16" ON CENTER WALL STUDS
VOLUME CEILING IN LIVING AREAS
PLANT SHELVES
VINYL VENTILATED SHELVING IN CLOSETS
SIX-PANEL COLONIST INTERIOR DOORS
SIX-PANEL INSULATED STEEL EXTERIOR DOORS
R30 CEILING INSULATION, EXTERIOR WALLS 4.2
CUSTOM EUROPEAN CABINETS (WOOD AVAILABLE)
WHITE ENAMEL OR STAINLESS STEEL KITCHEN SINKS
WHITE OR CHROME PLUMBING FIXTURES
RAISED PANEL STEEL GARAGE DOORS
GARAGE DOOR OPENER W/ 2 REMOTES
PRE-WIRE FANS AND LIGHTS
PRE-WIRE PHONE AND CABLE JACKS IN ALL BEDS
PRE-WIRE PHONE IN KITCHEN
PRE-WIRE CABLE IN FAMILY OR GREAT ROOM
DÉCOR LIGHT SWITCHES
CERAMIC FLOOR TILE, KITCHEN, LAUNDRY, NOOK, ENTRY, AND BATH

MARBLE WINDOW SILLS
12.0 SEER A.C.
QUICK RECOVERY 40-GALLON HEATER
200 AMP ELECTRICAL SERVICE
DEAD BOLT LOCKS ON EXTERIOR DOORS
COLONIAL TRIM MOLDINGS / 5 1/4 BASE
GARBAGE DISPOSAL
LAUNDRY TUB
CPVC OVERHEAD PLUMBING
CERAMIC TILE IN BATH WET AREAS
CERAMIC TOWEL BAR MOUNTS
CULTURED MARBLE BATHROOM SINKS
FULL MIRROR OVER VANITY
STAIN RESISTANT CARPET
SMOKE DETECTORS
SKIP TROWEL DRYWALL FINISH
WINDOW AND SLIDING DOOR TREATMENTS
PULL-DOWN STAIRCASE IN GARAGE FOR ATTIC
2 EXTERIOR WEATHERPROOF OUTLETS

## Exterior Features

CONCRETE BLOCK AND STUCCO FINISH (CBS)
SCREENED LANAI
4" CONCRETE SLAB WITH VAPOR BARRIER
TERMITE TREATED SOIL
2 COATS PAINT
ENGINEERED ROOF TRUSSES W/ HURRICANE STRAPS
5/12 ROOF PITCH
RAISED TRUSS ENTRY (MOST MODELS)
LANAI UNDER TRUSS
ALUMINUM WINDOWS TINTED

MONOLITHIC SLAB CONSTRUCTION
WATER SOFNER AND AERATOR
2 EXTERIOR HOSE BIBS
GUTTER / DOWNSPOUTS (FRONT OF HOUSE)
25 YEAR, CLASS A 3-TAB SHINGLES
GARAGE WALLS FINISHED AND PAINTED
ALUMINUM RIDGE VENT
8400 SQUARE FEET BAHIA SOD (¼ ACRES)
CULVERT UNDER DRIVEWAY
REINFORCED CONCRETE DRIVE AND WALK
(MINIMUM SETBACK)

_____          _____
PURCHASER (SIGNATURE)      DATE          CONTRACTOR (SIGNATURE)      DATE

MedinaN00015