1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  CHINESE MANUFACTURED        *    Docket 09-MD-2047-L
             DRYWALL PRODUCTS            *
6            LIABILITY LITIGATION        *
                                         *
7    This Document Relates to:           *    March 16, 2011
                                         *
8    Vickers, et al v. Knauf Gips KG,    *
       et al, 09-4117                    *
9                                        *    9:30 a.m.
     Payton, et al v. Knauf Gips KG,     *
10     et al, 09-7628                    *
                                         *
11   Silva, et al v. Knauf Gips KG,      *    New Orleans, Louisiana
       et al, 09-8034                    *
12   * * * * * * * * * * * * * * * * * *

13

14                  ORAL ARGUMENT BEFORE THE
                   HONORABLE ELDON E. FALLON
15                 UNITED STATES DISTRICT JUDGE

16

17   APPEARANCES:

18

19   For PSC:               Ervin Gonzalez, Esq
                            Arnold Levin, Esq.
20                          Fred Longer, Esq.

     For Home Builders:      Neal Sivyer, Esq.
21
     For Banner Supply:      Nick Panayotopoulos, Esq
22                          Mike Sexton Esq.

23   For InEx:              Benjamin Grau, Esq.

24   For KPT:               Paul Thibodeaux, Esq.

25   For North River:       Kevin Risley, Esq.

1    Official Court Reporter:      Toni Doyle Tusa, CCR, FCRR
                                   500 Poydras Street, Room B-406
2                                  New Orleans, Louisiana 70130
                                   (504) 589-7778
3

4

5
     Proceedings recorded by mechanical stenography, transcript
6    produced by computer.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PROCEEDINGS**

**(March 16, 2011)**

1

2

3   THE DEPUTY CLERK:  Everyone rise.

4   THE COURT:  Be seated, please.  Let's call the next

5   case.

6   THE DEPUTY CLERK:  MDL 2047, In Re: Chinese Drywall.

7   THE COURT:  Counsel make their appearance for the

8   record, please.

9   MR. LONGER:  Good morning, Your Honor.  Fred Longer

10  on behalf of the PSC.

11  MR. GRAU:  Good morning, Your Honor.  Benjamin Grau

12  on behalf of Interior Exterior.

13  MR. SEXTON:  Good morning, Your Honor.  Mike Sexton

14  for Banner Supply.

15  MR. SIVYER:  Good morning, Your Honor.  Neal Sivyer

16  representing the intervening home builders.

17  MR. THIBODEAUX:  Good morning, Your Honor.  Paul

18  Thibodeaux for KPT.

19  THE COURT:  We have a number of people on the phone.

20  This is really not a motion as much as it is just a discussion

21  on the various issues presenting itself, the question of timing

22  primarily.  The plaintiff committee wants to try the case in

23  June and the defendants want to do it sometime in August.

24  Where are we with that, Fred?

25  MR. LONGER:  Your Honor, if you would like me to

1    speak first, I'm happy to do that.  We have an InEx trial now

2    scheduled for July 18, Your Honor.  We have had these motions

3    for class certification of record basically since September of

4    last year.

5            **THE COURT:**  How do you see them interfacing?  Do you

6    need to do one before the other or does it matter?

7            **MR. LONGER:**  Well, Rule 23 suggests that -- I don't

8    think it suggests.  I think Rule 23 says that class

9    certification is to be done as early as practicable given the

10   Court's schedule.

11           Here you have a trial.  It involves class

12   representatives and these are class complaints, so it's our

13   position that the class certification determination must

14   precede the trial.  If the Court certifies the class, then we

15   are going to have a class trial, and that has to be determined

16   first and foremost.  So our position, Your Honor, is that the

17   class certification hearing has to precede the InEx trial.  The

18   parties have agreed to the trial date.  In February, the

19   parties agreed to an end of June class certification hearing.

20           We have had some substitutions of plaintiffs.  I

21   agree that the defendants have not been -- well, that we have

22   not done a perfect job apprising them of who they are, but

23   certainly they have known of these plaintiffs really since the

24   beginning of the litigation.  They have had PPFs on these

25   plaintiffs since the end of February, beginning of March.  They

1    have had answers to interrogatories and requests for production
2    of documents.  They have had all the information that they need
3    to at least understand the issues on motions that have been
4    pending now for six months.
5              So our thinking is that there's really nothing
6    new under the sun here.  There are new plaintiffs.  But a home
7    in our estimation, for purposes of this motion, is basically a
8    home.  The drywall is there.  The impact of that drywall and
9    the legal issues surrounding the impact of that drywall is
10   going to be the same home by home.  The product was uniform.
11   The effect is uniform.
12             So our position is that they have known about
13   this.  Since we have a trial date and we have had since
14   February -- and actually going back to January 12 when we all
15   submitted to Your Honor an agreed to scheduling order, we have
16   all had June in mind for a class certification hearing.  We
17   just think we ought to keep going forward, have that hearing in
18   June, and then have the trial as scheduled.
19             **THE COURT:**  Okay.  Let me hear from the other side.
20   Anybody?  What has changed since we discussed it and everybody
21   agreed on June?
22             **MR. GRAU:**  Benjamin Grau, G-R-A-U.  There have been
23   no less than eight changes to the class representatives since
24   we last discussed this.  Additionally, we have propounded
25   extensive discovery.  As late as this morning, we are just

1   receiving responses to the critical liability discovery as to

2   Interior Exterior.

3                   Addressing the issue of the trial itself, the

4   trial that's scheduled in July is a bellwether trial.  It is

5   not a class trial.  It never has been considered a class trial.

6   The plaintiffs handpicked these class representatives and

7   picked the trial plaintiffs.  That wasn't our doing.  They

8   chose to pick the same plaintiffs.  If there's an issue with

9   which goes first, they have created that issue not the

10   defendants.  We would submit, Your Honor, that there's simply

11   not enough time to complete the discovery that's necessary for

12   the class certification hearing for a June trial at this point.

13          THE COURT:  What would you do?  What do you need to

14   do from a discovery standpoint?

15          MR. GRAU:  Well, from a discovery standpoint, we are

16   just completing the inspections of the Florida homes this week.

17   Like I say, Your Honor, we just received written discovery

18   responses this morning and obviously need to evaluate those to

19   determine whether or not they are complete and satisfactory.

20                   We still have to take class representative

21   depositions.  At this point there are 9 class homes between

22   Florida and Louisiana, 15 individual representatives to be

23   deposed.  We then have to depose fact witnesses.  There's

24   obviously a dispute between that, but it will be somewhere

25   between 12 and 16 fact witnesses.  From our perspective, we

1   need to complete inspections of those fact witness homes first

2   and then depositions of those fact witnesses themselves.  The

3   plaintiffs have designated no less than 39 or 49 fact witnesses

4   they may call at trial.  We obviously are entitled to take

5   depositions of those witnesses and --

6           **THE COURT:**  Has any of this been done?

7           **MR. GRAU:**  No, Your Honor.  Literally, the only thing

8   that's been completed at this point are inspections of

9   Louisiana homes, partial inspections of Florida homes to be

10   completed at the end of this week, and exchange of written

11   discovery responses that were just received this morning to

12   some of those.

13           **THE COURT:**  I thought we had set these a while back

14   and I thought both sides were working towards this.

15           **MR. GRAU:**  We are working, Your Honor, but the class

16   representatives keep changing.  It does matter because the

17   discovery responses are just now coming in.  We can't schedule

18   class representative inspections until we know who those class

19   representatives are, which is the whole reason the Florida

20   inspections couldn't take place until this week.

21           **THE COURT:**  Why do you have so many class reps?

22           **MR. LONGER:**  If I may, Your Honor.  I understand what

23   counsel opposite is saying, but I don't necessarily agree at

24   all with what he is saying.  In the InEx trial, there are only

25   four class representative plaintiffs.  In the Banner trial,

1   there are only two class representative plaintiffs.  In the

2   Knauf class, the same four Louisiana class representative

3   plaintiffs represent the Louisiana class there, and there are

4   four class representative plaintiffs from Florida in the Banner

5   trial.

6                  Now, from InEx's perspective, they are saying

7   that there's all these fact witnesses, but the reality is that

8   most of them are listed as Knauf depositions.  Those

9   depositions have been taken.  They're in the can.  They're on

10  videotape.  By the way, Your Honor, we are talking about a

11  class certification hearing.  Our intention is to put this --

12            THE COURT:  Let me just interrupt you.  What I was

13  thinking about from a class certification hearing, I thought 90

14  if not 100 percent of this would be on paper; maybe not

15  everything, but most of it would be on paper.  I thought that

16  all of the paper had already been taken like the depositions.

17  I didn't see them putting on any additional witnesses other

18  than the witnesses that they had taken, and maybe there's some

19  other witnesses, but primarily introducing depositions that had

20  already been taken.  Am I missing that?

21            MR. LONGER:  That's where I was going, Your Honor.

22  We intended to produce all of our record basically on paper.

23  It will be done by then.  The only depositions that really need

24  to be taken are the class representative plaintiffs.  We have

25  been asking for weeks for the defendants to schedule them.

1  They have been postponing it.

2          We have answered the discovery as late as

3  February, the beginning of March.  The InEx counsel here has

4  claimed that there were deficiencies.  We provided what they

5  considered to be deficiencies, which were essentially, "Are

6  there any other documents that you have?" and we have told them

7  no.  They needed to hear that.  So that's what we provided to

8  them as recently as yesterday, and today they're apprised of

9  that.  There's nothing new here.

10          As far as the class certification hearing is

11  concerned, our intention was to put in a paper record as

12  Your Honor was alluding to.  We have two experts for class

13  certification.  If the depositions go well, they will probably

14  come in on a paper record.  If we think that it's appropriate

15  to bring them here live, we will do that.  But it's going to be

16  a paper record and oral argument.

17          **MR. GRAU:**  Your Honor, they have identified, as I

18  said, over 40 fact witnesses, which include the class

19  representatives.  Of those, it's my appreciation that there's

20  only been 14 depositions taken.  So that leaves 26 witnesses

21  that they have identified whose depositions have never been

22  taken not to mention the fact witnesses that we'll want to

23  identify as well.

24          Addressing the issue of uniformity, just looking

25  at the class representative homes that they have selected,

1    these homes are not uniform.  There's varying degrees of

2    corrosion found in the homes.  There's varying degrees of

3    reactivity in the drywall being found in the homes.  There's a

4    varying amount of imported drywall in the homes.

5              Certainly there will be even more divergence

6    when we start looking at other class member homes.  There are

7    homes out there that have one or two sheets of drywall who are

8    part of this putative class.  There are homes that have drywall

9    manufactured by Taishan as opposed to Knauf that will be part

10   of the Interior Exterior class.  So all of those issues have to

11   be looked at and all of those issues have been presented to the

12   Court for class certification.

13             As Your Honor saw in our briefing, we

14   extensively outlined the case law and sort of legal framework

15   for class certification.  As Your Honor is well aware, the

16   issue is not simply looking at the pleadings as they are

17   presented by the plaintiffs but piercing those pleadings and

18   looking at the facts and looking at how the trial will proceed,

19   what evidence will be presented to the Court not just in terms

20   of liability but in terms of damages as well, in terms of how

21   do you look at and determine property damage in these

22   homes: does it vary between homes; does it vary between homes

23   that have 95 percent imported drywall and a home that may only

24   have two sheets of drywall; does it vary between a home that

25   has never been remediated and a home that was remediated over a

 1   year ago; does the diminution of value aspect of the claims
 2   vary by neighborhood from neighborhood, by state from state.
 3                     All of those issues need to be presented to the
 4   Court, and all of those issues require discovery.  Interior
 5   Exterior and the other defendants would certainly be severely
 6   prejudiced if we are railroaded into a 20-day discovery period
 7   or a 30-day discovery period at this point to complete all of
 8   that necessary discovery which is created by the fact that the
 9   class representatives have changed numerous times since we
10   first discussed the issue and the fact that plaintiffs
11   themselves have designated over 40 fact witnesses to be called.
12             **THE COURT:**  You take the position that you need 30
13   days to do that?
14             **MR. GRAU:**  We take the position that we need more
15   than 30 days to do it.  They are giving us 30 days under their
16   proposed schedule to complete --
17             **THE COURT:**  Your suggestion is instead of doing it in
18   June, you do it in August, so that's what?  45 days.
19             **MR. GRAU:**  Correct.  50, 60 extra days to complete
20   that, yes, Your Honor, which we still think is an ambitious
21   schedule.
22                     One last thing I should raise.  I know the home
23   builder representative is here.  There is a motion to intervene
24   in the case by the home builders, which certainly we'll submit
25   briefing on that.  But to the extent that that would be

1    allowed, any schedule we discuss today would be overly

2    ambitious I would think.

3          MR. SIVYER:  Neal Sivyer, S-I-V-Y-E-R.  Your Honor,

4    we do not have any role in the InEx trial whatsoever.  We are

5    participating in the Banner intervention.  By statute, you may

6    recall that every single home that we fix we have to give

7    notice to Banner.  In addition to that, we did profile forms.

8    In addition to that, the two class representatives, Lennar and

9    Taylor, have months ago provided detailed information on every

10   single home that was repaired, square footage, price,

11   inspection reports, photos, answered questions for weeks.  Our

12   class representatives are available any time.

13          There are other home builders that have

14   intervened for the limited purpose of settlement negotiations,

15   as I understand it.  But as far as the two class reps, we

16   couldn't be farther ahead.  As a matter of fact, I think it

17   actually expedites things because we now have a relatively

18   large class of completed homes where the Court can look at the

19   price per square foot and the remediation protocol for a large

20   number and see that they are very similar.

21          THE COURT:  So you're in favor of keeping the same

22   trials?

23          MR. SIVYER:  As quickly as possible, Your Honor.  I

24   don't think we are going to slow that down.

25          MR. THIBODEAUX:  Paul Thibodeaux for KPT.  We agree

1    with InEx's presentation as far as how the scheduling order
2    needs to go and when the class certification hearing date
3    should be, which is in the August time period.  I think a
4    critical issue is what Mr. Longer referred to as this
5    uniformity issue.  That's certainly going to be what the
6    plaintiffs are going to claim as far as class certification
7    goes, and that's specifically what the defense will show as to
8    why the plaintiffs are not entitled to certification.
9             This really goes down to the putative class
10   member fact witness inspections, which the plaintiffs in their
11   scheduling order do not provide for and say we are not entitled
12   to.  Those are critical to the defendants' defense of the class
13   certification issues.
14            If you look at the scheduling order proposed by
15   plaintiffs, it establishes April 1 as the date for defendants
16   to select fact witnesses, and then discovery of fact witnesses
17   and class reps must be done by April 27.  If you back out the
18   weekends, that leaves approximately 20 depos, I believe, to do
19   in 18 days and does not even account for the inspections that
20   need to be done of those fact witnesses both in Florida and
21   Louisiana.  I think that just highlights how unreasonable the
22   scheduling order is and how it's trying to be shoehorned into a
23   time period because of their own juggling act with respect to
24   the class reps.
25            Also, Your Honor, one separate point.  We just

1    learned this morning that our co-counsel, Mr. Steve Glickstein

2    with Kaye Scholer, is out of the country from August 5 to

3    August 20, so we would like to raise that and let the Court

4    know that we would appreciate that be considered with respect

5    to class certification hearing dates.

6         MR. RISLEY:  Your Honor, Kevin Risley for North River

7    Insurance Company, one of the excess carriers for InEx.  Maybe

8    I'm missing something, but I was just told early this morning

9    that my client did not need to be involved in the bellwether

10   trial because we weren't going to get to those issues.  Now I'm

11   hearing we have to have the class certification hearing in June

12   to make that bellwether trial the class trial.  So I think

13   there's some inconsistency going on here.

14              I think we can certainly have the bellwether

15   trial in July without having the class certification hearing.

16   A bellwether trial is not supposed to be a class trial.  They

17   should be different things, and they can go on different

18   schedules.

19        MR. SEXTON:  Again, Your Honor, Mike Sexton for

20   Banner Supply.  I, of course, concur with the arguments

21   presented by InEx's and Knauf's counsel.  Just a few additional

22   points with respect to Banner.

23              First off, to the extent that the Silva trial

24   needs to go forward in July and the Court concludes that that's

25   a trial on the merits as opposed to a bellwether trial, I note

1    that that doesn't affect the class certification proceedings

2    vis-à-vis Banner.  There's no reason that Banner proceedings

3    need to be on precisely the same schedule as InEx or Knauf or

4    anybody else.  There may be certainly conveniences associated

5    with doing them three days in a row.  But if there are unique

6    procedural hurdles affecting one party, that does not

7    necessarily affect all.

8              Second, Your Honor, I would like to elaborate

9    just for a moment on why it's important that only on March 10,

10   with a substituted motion for class certification against

11   Banner, that they finally setted on who are the class

12   representatives going to be.  Why is that important?  I think

13   it relates to the fundamental misunderstanding articulated by

14   Mr. Longer which is a home is just a home.

15             Obviously, Banner believes that they are all

16   snowflakes, each being unique.  How do we prove that?  We have

17   class representatives.  We see now that the class

18   representatives that they have finally settled upon are a home

19   in Boynton Beach and a home in Cutler Bay, Florida.  We would

20   like the opportunity to say, okay, there are approximately 350

21   other named class representatives -- named class

22   representatives -- in Payton.  These are not passive.  These

23   are not putative class members.  These are named class

24   representatives.  We believe we have the right to depose and

25   fully explore at least six of them to show how each of those

1    homes is different.

2                    One of the problems preventing us from moving

3    forward in a meaningful way is that the plaintiffs' steering

4    committee has failed to provide complete responses to over

5    hundreds -- hundreds -- of plaintiff profile forms, which is a

6    way by which we could select what other class representatives

7    we want to prove our snowflake idea.

8                    Further, the plaintiffs' steering committee has

9    refused in its entirety to respond to discovery related to the

10   nonmoving class representatives.  While it is certainly

11   convenient to the PSC to cherrypick one or two or five or nine

12   moving class representatives, the fact is that there are

13   hundreds.  Under the Rules of Civil Procedure, we believe we

14   have every right to depose every one of them, but we don't want

15   to burden them.  We think six will do.

16                   Where that goes from there is after we look at

17   the class representative, we say we have a comparative fault

18   defense.  Under Florida law, Section 758.81, we get to compare

19   our fault to the others.  We believe that that individualized

20   analysis will also preclude class certification.

21                   So we would want to know who the home builder

22   is, the installer, the realtor.  These are all things that we

23   need to know and all of which are impossible until the PSC

24   gives us information relating to these other people.

25                   And then further, the home builder stood up on a

1   motion for intervention.  To the extent it was related to the
2   briefing schedule, I'm not sure how it added a lot.  To the
3   extent it's on the issue of a motion for intervention, it's
4   premature to discuss.  It was just filed in recent days.  We
5   would like an opportunity to consult with clients and brief on
6   the issue before it's heard substantively, Your Honor.

7               **MR. GRAU:**  Your Honor, I would point out on the
8   intervention that the Mitchell Company has intervened in the
9   Silva action itself, so there are claims as it relates to
10  Interior Exterior.

11              **MR. LONGER:**  Your Honor, I have been outranked.

12              **THE COURT:**  Okay.  A substitute.

13              **MR. LEVIN:**  It's not a class representative this time
14  because they are not in the pilot program.  We all know why the
15  class representatives change.

16              Judge, I'm old enough to remember *Eisen v.*
17  *Carlisle* where you did class certification on pleadings.  I
18  know we have come some way since then.  If the snowflake theory
19  works, I would be out of business.  Because not every box is a
20  box, that was the argument in *Corrugated*.  Not every home is
21  the same home, that's the argument here.  We are not dealing
22  with snowflakes.

23              They talk about every plaintiff being a class
24  representative.  Everybody knows why that was done in our
25  pleadings.  That was to instill CAFA jurisdiction on this Court

1  so this MDL could deal with the entire program.

2              They talk about taking all these depositions.

3  They agreed to take up to 10 class members' depositions,

4  including class representatives, in a stipulation before this

5  Court.

6              I have a suggestion because I have heard these

7  arguments before.  Why don't they tell us what the arguments

8  are with regard to class and their position that the class

9  should not be certified, and we'll say we can handle that one.

10 We can handle that one.  Some homes have eight rooms.  Some

11 homes have six rooms.  I can handle that.  Some rooms have KPT

12 in the bedrooms.  Some have KPT in the kitchen.  I can handle

13 that.

14             Let them give us a list rather than taking

15 depositions, InEx running to Florida to inspect Banner homes.

16 It's a feeding frenzy, Your Honor.  The only way it is going to

17 stop is to hold this hearing and hold us to the fire and let us

18 do the discovery.  They are big firms.  They have a lot of

19 lawyers.  We will man the discovery, and let's get it over

20 with.

21             **MS. GONZALEZ:**  Thank you, Your Honor.  Ervin

22 Gonzalez.  I'm going to be addressing some of the specific

23 issue about Florida and the class runner.

24             Comparative fault was discussed.  Comparative

25 fault is the doctrine that came about as a result of *Fabre v.*

1    *Marin*, which allows nonparties as well as parties to be

2    considered by the fact finder in determining percentages of

3    fault.  It's been codified under 768.81, Florida statutes, and

4    there are exceptions to it involving pollution concerns to when

5    several liability does apply notwithstanding pure comparative

6    fault.

7                All these issues are really trial issues.  It

8    has nothing to do with whether the case should be certified.

9    Class action certification deals with very simple issues,

10   common issues of fact, that's it; do the common issues of fact

11   predominate over any individual issue, and that's all we are

12   going to be looking at.

13               So the common issues of fact that we have in

14   Florida, Louisiana, and anywhere else that's affected by

15   Chinese drywall is this:

16               Did the defendants provide a product that was

17   defective?  Yes or no.  We can answer that on a common basis,

18   on a class-wide basis without much work whatsoever.

19               Did it cause harm to the homes?  The answer to

20   that is yes.  We can do that on a class-wide basis.  It either

21   did or it didn't.  Typicality is the legal process that's going

22   to be used to determine these common questions of fact.

23               Do the same causes of action apply across the

24   board for all states involved?  The answer is yes.  Numerosity

25   has been met.  We have thousands of homes that are impacted.

1  We have adequate counsel.  We have adequate representatives
2  without any conflicts of interest in these issues.
3            The core issue here that predominates is the
4  issue of the defect that's involved.  That's what the Court is
5  going to be looking at, and the Court can also decide issues of
6  preclusion.  We are going to have mini trials on damages.
7  Comparative fault issues will be handled in the trial, not
8  class certification, but the Court can enter issues of
9  preclusion under 23(d) that allows specific factual findings to
10  then be used on a res judicata or collateral estoppel basis to
11  other matters that may flow in the trial.  So we can certify
12  particular fault issues clearly on the class certification
13  issue.  We can have specific issues by issue preclusion that
14  will apply to the remaining matters.
15            Class certification in this case is relatively
16  simple.  Defendants are trying to make it sound like it would
17  be easier to land on Mars.  That's not the case.  We are simply
18  trying to certify those common questions, as allowed by the
19  rules, that will allow all the parties to move forward.
20  Delaying this further will hurt the plaintiffs, will actually
21  hurt the defendants -- contrary to what they are saying -- and
22  moving forward is in everyone's best interest.  Thank you,
23  Your Honor.
24            **THE COURT:**  Thank you.
25            **MR. SEXTON:**  Mike Sexton for Banner Supply.  First,

1    Your Honor, it was correctly pointed out by PSC counsel that

2    Rule 23 requires the Court to determine class certification as

3    soon as practicable.  Here these actions were filed in 2009.

4    The PSC waited until September 21, 2010, to file a motion.

5    That was not as soon as practicable.  Then the PSC waited six

6    months to decide who the class representatives would be.  That

7    is not as soon as practicable.

8              To convey a sense of an emergency that was

9    created by the PSC is a false sense.  Your Honor, multiple PSC

10   counsel have now said that this is a simple issue.  It's not

11   rocket science.  It's not putting a man on the moon.  This

12   initial idea was conveyed on page 6 of their brief when they

13   said it is a mere procedural motion, which is much like saying

14   that the Saints winning the Super Bowl is a mere sporting

15   event.  Class certification is the end of the analysis in this

16   case.

17             Given the three defendants and the damage

18   calculations offered in plaintiffs' motion for class

19   certification, we are talking about hundreds of millions of

20   dollars and requires the most careful, thoughtful analysis that

21   can be given to it, not a 30-day rush job offered here in the

22   hopes that something will be overlooked.

23             Further, Your Honor, with regard to *Fabre*, I

24   argued the issue against Mr. Gonzalez down in Florida, and

25   Judge Farina ruled that comparative fault principles do apply

1    notwithstanding the pollution exclusion.

2                    Further, Mr. Gonzalez suggested that damages

3    will be spun off in mini trials.  I appreciate that argument,

4    but it's inconsistent with their briefing.  On page 21 of their

5    motion for class certification, they offer a formulaic damages

6    analysis inconsistent with our snowflake analysis.

7                    The PSC wanted some sort of a preview of what

8    our argument is going to be.  I think I provided it.  We say

9    each of these homes requires individualized analysis.  They are

10   not negative value suits.  We are not hiding the ball.  There

11   is no reason to rush through this after the PSC waited a year

12   and a half to get this thing going.

13               **THE COURT:**  When is the trial before Judge Farina?

14   He and I have talked about it, but I don't remember the date.

15   I think his was in October or --

16               **MR. SEXTON:**  The trial last year, Your Honor?

17               **THE COURT:**  No, coming up.

18               **MR. SEXTON:**  The next trial, I believe, is

19   November 2, 2011.

20               **THE COURT:**  Okay.

21               **MR. SEXTON:**  I apologize, Your Honor.  My colleague

22   pointed out just in any order entered, we need some sort of a

23   time certain for the plaintiffs' steering committee to complete

24   the profile forms and complete the responses to class member

25   discovery.  Otherwise, August 15, even that becomes unworkable.

1    **THE COURT:**  I thought that was already done, the

2    profile forms.

3    **MR. LONGER:**  It has already been done, Your Honor.  I

4    don't know what they are talking about.

5    **THE COURT:**  I thought the profile forms were done a

6    long time ago.  I understand that the reason the substitution

7    came about is that some of the people, their homes were

8    remedied and so they had no claim, and they had to be

9    substituted for people who had claims.

10   **MR. SEXTON:**  Your Honor, our recent analysis of the

11   profile forms, which is set forth in the briefing that we

12   supplied on Friday, was that many -- hundreds, in fact, of the

13   profile forms are still deficient by way of not identifying the

14   manufacturer, installer, home builder, and so forth.  That

15   precludes our ability to look at other named class

16   representatives to show the differences among the class.

17   **MR. LONGER:**  Your Honor, that's a separate motion,

18   and my appreciation is they are talking about deficiencies for

19   persons that are on the newest omni complaint that still have

20   the 40-day time period to even respond and put in their PPFs.

21   They are saying that because they are not in already, they are

22   deficient.

23   There are some issues that we have asked counsel

24   opposite to tell us who the names of all the counsel are --

25   because they have just given the list of clients -- so that we

1   can actually inform the specific counsel who they are.  Counsel

2   has been reticent to provide that information.  They just

3   haven't done that.  We have been taking under our own powers to

4   figure it all out and we are getting the information.

5               My appreciation is that all of the PPFs for the

6   class representative plaintiffs they do have.  All of the

7   interrogatories for the class representatives they do have.  So

8   that's where there's a disconnect here.  A lot of what they are

9   doing is subject to a motion which will be heard next week,

10  Your Honor.  We intend to respond on Friday on this.

11          **THE COURT:**  One thing that's obvious to me is I'm

12  going to have to have probably weekly meetings with you-all.  I

13  can do it on the phone, but we are going to have to move this

14  case a little faster than we are doing.  Maybe weekly meetings

15  would be an answer.

16          **MR. SEXTON:**  Your Honor, my colleague,

17  Mr. Panayotopoulos -- I'll let him spell his last name -- will

18  address the profile forms, but Mr. Gonzalez asked me to

19  clarify.  He has come up with a new argument since we argued it

20  last fall on comparative fault that has not been addressed.

21  Whatever arguments were presented to Judge Farina last fall he

22  and then Mr. Diaz, in a separate case, lost on.

23          **MR. PANAYOTOPOULOS:**  Nick Panayotopolous also for

24  Banner Supply.  I just wanted to address the point about the

25  profile forms and the missing discovery responses from the

1    named plaintiff representatives in these cases.

2                Discovery was served in 2009 to the named

3    plaintiffs in this case.  None of that has been responded to,

4    as relates to Banner, except as to the movant class reps.  Only

5    two people related to Banner have responded to that.  I'm

6    sorry.  A total of five people have responded.  There are

7    hundreds and hundreds that have not given any substantive

8    response.

9                The PSC just filed an objection.  They refused

10   to name who the manufacturer is.  The profile forms, there's

11   hundreds of profile forms that are missing.  There are, I

12   suspect, thousands of profile forms that are deficient.  We

13   can't select the homes that we want to address before the Court

14   at the class certification hearing without having the most

15   basic of information before we can proceed.

16                I believe I heard counsel opposite that they

17   were willing to comply with that discovery.  If we just set a

18   deadline they are going to supply that discovery, that's fine

19   with us, Your Honor.  We will do our best to meet a very quick

20   schedule, which is suggested in August, as long as they comply

21   with that discovery first.

22                MR. LEVIN:  One last word, Your Honor.  There are

23   10,000 plaintiffs in this case.  There should be 10,000 profile

24   forms.  They haven't got 150.  We have said we'll help you get

25   them like we did in Vioxx, like we did in Propulsid.  Suddenly

1    they can't prepare for a class certification hearing that's
2    supposed to streamline the case without having discovery of
3    absent class members who happen to be named in omni complaints.
4    Judge, they're trying to hold us back.  Please don't let them
5    do that.
6              **THE COURT:**  Anybody else?
7              **MR. THIBODEAUX:**  Paul Thibodeaux for KPT, Your Honor.
8    All we are asking for is for a five to six-month discovery
9    schedule and certification hearing date that is consistent with
10   the scheduling order that was entered and agreed to by the
11   parties before all these class rep changes came about.
12             **THE COURT:**  Well, you're not asking for four or five
13   months.  You're asking for four or five weeks as I understand
14   it, six weeks, something of that sort.  You're looking at
15   August instead of June.
16             **MR. THIBODEAUX:**  Correct, correct, correct.
17             **THE COURT:**  Let me check my calendar on it.  I don't
18   see any relationship or linkage between the trial in July and
19   the trial in either June or August.  I don't see any linkage
20   there.  I think they are different focuses.
21                  I think the class certification is a significant
22   issue.  It's going to be a key issue in this particular case.
23   Ordinarily in this circuit, class certification is a real
24   difficult issue for the plaintiffs, but it hasn't been that way
25   with property damage.  While there's differences in personal

1    injury, the differences are not as blatant as in a property

2    damage case.  I think this is a significant one.  It's easy in

3    personal injury cases, frankly, because the circuit is very

4    down on personal injury certifications.  Property damage is a

5    different ballgame.  I do think everybody ought to recognize

6    that this is a significant issue.

7              Let me look at my calendar and I'll make the

8    decision, but I also want to start weekly meetings with

9    you-all.  I'll set up a meeting on the telephone.  I don't need

10   you coming in here.  I don't want to take up your time, but I

11   do want to know what's been done since the last conference,

12   what needs to be done, what issues are present.

13             We need to cut through some of the motion

14   practice.  Be prepared, if you have a problem, to talk to each

15   other before you talk to me.  Every week, you give me the

16   problem, whether it's a motion or whatever, and I will rule on

17   it immediately so we can get through with this.

18             If I need some information beforehand, give me

19   an e-mail or drop me a letter as to what the issue is so that I

20   can be ready for it.  I want to be able to work with you on

21   this so that we are not wasting a lot of time on motions and

22   interrogatories and back and forth.  We just don't have the

23   time to do that.

24             I'll listen to you.  I will hear everything you

25   have to say.  I will take it seriously.  If you need me to look

1    at cases, I will look at the cases.  We need to cut through

2    this and move a little faster than we are doing.  Thank you

3    very much.  Court will stand in recess.

4              **THE DEPUTY CLERK:**  Everyone rise.

5              (WHEREUPON the Court was in recess.)

6                            * * *

7                        <u>**CERTIFICATE**</u>

8              I, Toni Doyle Tusa, CCR, FCRR, Official Court

9    Reporter for the United States District Court, Eastern District

10   of Louisiana, do hereby certify that the foregoing is a true

11   and correct transcript, to the best of my ability and

12   understanding, from the record of the proceedings in the

13   above-entitled and numbered matter.

14

15

16                              <u>s/ Toni Doyle Tusa</u>
                                Toni Doyle Tusa, CCR, FCRR
17                              Official Court Reporter

18

19

20

21

22

23

24

25