## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | : | **MDL NO. 2047** |
| **IN RE: CHINESE MANUFACTURED DRYWALL** | : | |
| **PRODUCTS LIABILITY LITIGATION** | : | **SECTION:  L** |
| | : | |
| | : | **JUDGE FALLON** |
| | : | **MAG. WILKINSON** |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. : 

**THIS DOCUMENT RELATES TO ALL CASES**

### ORDER & REASONS

Before the Court are supplemental briefs from: (1) the Plaintiffs' Steering Committee ("PSC") and certain other parties known here as the "Questioners," with claims against Taishan Gypsum Co. Ltd. ("TG") and Taian Taishan Plasterboard Co., Ltd. ("TTP")(collectively "Taishan" or "the Taishan entities")(R. Doc. 10174); (2) the Taishan entities (R. Doc. 10162); and (3) Venture Supply, Inc. and The Porter-Blaine Corporation (collectively "Venture")(R. Doc. 10141).  These briefs partially relate back to an earlier motion to compel, and joinders therein, filed against the Taishan entities, seeking to compel certain personal jurisdiction discovery, among other requests.  *See* (R. Docs. 8685, 8695, 8755, 8765, 8758, 8792).  The Court issues the following rulings on the personal jurisdiction discovery matters raised by these supplemental briefs.

## I.    BACKGROUND

On June 15, 2009, this Court was designated as the transferee court for federal cases involving Chinese-manufactured drywall, creating Multi-District Litigation 2047.  Since the inception of MDL 2047, numerous cases have been consolidated before this Court.  Several of these cases involve claims against the Taishan entities for their alleged role as manufacturers of a

certain amount of this Chinese drywall.  *See e.g. Germano v. Taishan Gypsum Co., Ltd.*, No. 09-6687; *Mitchell Company, Inc. v. Knauf Gips KG*, No. 09-4115; *Steiner v. Beijing New Bldg. Material, PLC*, No. 09-6545; *Gross v. Knauf Gips KG*, No. 09-6690; *La. State v. Knauf Gips KG*, No. 10-340; *Wiltz v. Beijing New Bldg. Material Pub. Ltd. Co.*, No. 10-361; *Abel v. Taishan Gypsum Co., Ltd.*, No. 11-80.  The Taishan entities were successfully served through the Hague Convention in certain of these cases, *see* (R. Doc. 1-7)(No. 09-6687); (R. Doc. 2141)(No. 09-md-2047); (R. Doc. 2553)(No. 09-md-2047), refused service in other cases, *see* (R. Docs. 7028, 7029)(No. 09-md-2047), and in others, service has not yet been executed.  There are also numerous state court cases filed against the Taishan entities.

  In *Germano v. Taishan Gypsum Co., Ltd.*, No. 09-6687, service was executed on TG, *see* (R. Doc. 1-7)(No. 09-6687), but TG failed to timely enter an appearance.  As a result, a Preliminary Default was issued against TG on November 20, 2009.  (R. Doc. 487)(No. 09-md-2047).  The Court moved forward with the claims against TG in *Germano*, ruling on *Daubert* and limine motions and presiding over an evidentiary hearing on February 19 and 22, 2010.  *See* (R. Docs. 1223, 1258).  Thereafter, the Court issued detailed Findings of Fact & Conclusions of Law regarding the problems caused by TG's Chinese drywall, remediation protocol for properties with Chinese drywall, and a calculation of damages.  (R. Doc. 2380).  On May 11, 2010, the Court entered a Default Judgement against TG, awarding damages to the plaintiffs in the amount of $2,609,129.99.  (R. Doc. 3013).  On June 10, 2010, TG filed a Notice of Appeal of this Default Judgment.  (R. Doc. 3670).

  Thereafter, for the first time in the litigation, Notices of Appearances were filed on behalf of TG and TTP, *see* (R. Docs. 4324, 4325), as well as other responses and motions.  *See e.g.* (R.

Docs. 4307, 4325, 4666, 4667, 4800). On August 20, 2010, the attorneys for TP and TTP were appointed to the Defendants' Steering Committee. (R. Doc. 5286).

On September 10, 2010, TG filed a Motion to Vacate the Default Judgment, Dismiss the Action and to Seek Remand from the Court of Appeals. (R. Doc. 5515). This Motion is largely based upon the notion that this Court lacks personal jurisdiction, *see id.*, a factually pregnant issue which requires discovery for proper resolution thereof. On October 1, 2010, the United States Court of Appeals for the Fifth Circuit issued an Order granting an unopposed motion to stay further proceedings until this Court provides an indicative ruling on TG's Motion to Vacate. (R. Doc. 5649). This Court then issued an Order pursuant to Rule 62.1 to allow it to determine how it would deal with TG's Motion prior to resolution of the appeal by the Circuit Court. (R. Doc. 6101). In furtherance of this Order, the Court directed the parties to begin the written discovery and depositions necessary to resolve the personal jurisdiction challenges raised by TP's Motion to Vacate. Accordingly, in Fall 2010 the first notices were filed for Federal Rule of Civil Procedure 30(b)(6) depositions of TG and TTP, *see* (R. Doc. 5839, 5840), and the parties proceeded with written discovery.

The first formal discovery dispute involving TG and TTP arose on January 12, 2011, when the PSC filed a Motion Challenging the Adequacy and Completeness of the Discovery Responses of TG and TTP, and to Compel Discovery and Jurisdictional Depositions to Begin in February 2011. (R. Doc. 6964). Shortly thereafter, on January 14, 2011, TG and TTP filed a Motion for Protective Order. (R. Doc. 7003). Both motions were scheduled for hearing on January 20, 2011. *See* (R. Docs. 6981, 7043). After hearing from the parties on oral argument the Court denied both motions, issuing the following,

> IT IS ORDERED that the parties are to proceed with Rule 30(b)(6) depositions as soon as practicable.  The parties are directed to select mutually agreeable dates and inform the Court by next week.  IT IS FURTHER ORDERED that the scope of the depositions is to be broad, including questions about related, subsidiary, parent, and affiliated companies. The Court will be available by phone during the depositions to assist the parties.  (R. Doc. 7136).

On January 28, 2011, TG and TTP filed a Notice of document production in response to the PSC's first request.  (R. Doc. 7268).  In early February 2011, TG and TTP filed a Notice of their production of confidentiality and privilege logs.  *See* (R. Docs. 7306, 7333).

On February 9, 2011, the PSC renewed their Motion Challenging the Adequacy and Completeness of the Discovery Responses of TG and TTP and to Compel Discovery and Jurisdiction Depositions to Begin in February 2011.  (R. Doc. 7364).  The Court held a status conference on February 16, 2011 to discuss the renewed motion.  *See* (R. Doc. 7511).  The Court denied the PSC's renewed motion, but reaffirmed its previous ruling that the parties were to go forward with the Rule 30(b)(6) depositions in Hong Kong during April 2011, and that the depositions were to cover information regarding TG and TTP's affiliates.  *See id.*  Additionally, the Court directed the parties to work together to timely produce written discovery necessary to the deposition topics, but stated that motions arising therefrom would be entertained following depositions, and directed TG and TTP to provide the PSC with a list of its Rule 30(b)(6) witnesses.  *See id.*  Finally, the Court encouraged the parties to contact it during the depositions in the case that any disputes arise.  *See id.*

On February 17, 2011, the PSC Re-Noticed the Depositions of TG and TTP to take place beginning April 4, 2011 in Hong Kong and designated the deposition topics.  (R. Docs. 7549, 7550, 8297, 8298).  Other parties in the litigation noticed these depositions, including Venture Supply, Inc. and The Porter-Blaine Corp.  *See* (R. Docs. 8251, 8351).  On March 21, 2011, TG

4

and TTP filed a Notice of further documents production to the PSC.  *See* (R. Doc. 8290).

Twelve attorneys representing the PSC, homebuilders, suppliers, and other entities in the MDL litigation, traveled to Hong Kong to conduct the Rule 30(b)(6) depositions of TG and TPP. The depositions commenced on April 4, 2011, and ended on April 8th.  The Rule 30(b)(6) witnesses deposed were Wenglong Peng, Tongchun Jia, and Jianchun Zhang.  These depositions degenerated into "chaos and old night," to borrow a phrase from Milton's *Paradise Lost*.

On May 3, 2011, the PSC filed a Motion to Compel Production of Documents and Further Jurisdictional Depositions of the Taishan Defendants and a Motion for Sanctions.  (R. Doc. 8685).  The Homebuilders' Steering Committee filed a similar motion.  *See* (R. Doc. 8695). A number of parties joined in these motions, including Interior Exterior Building Supply, LP, Louisiana State, Venture Supply, Inc., Southern Homes, LLC, Tallow Creek, LLC, Springhill, LLC, and Tobin Trading, Inc.  *See* (R. Docs. 8755, 8758, 8768, 8792, 8805).  These motions were set for hearing on May 26, 2011.  *See* (R. Doc. 8800).  The Court issued the following rulings on these motions:

> Argument-GRANTED IN PART with regard to compelling further written discovery and depositions relevant to personal jurisdiction over the Taishan defendants, and CONTINUED IN PART with regard to the requests for sanctions.  These rulings will best further the Court's goal to resolve the pending Motion to Vacate filed by TG, which raises challenges to this Court's exercise of personal jurisdiction, a legal issue enshrouded in facts and requiring extensive depositions and written discovery.
>
> To carry out this Order, the Court directs the parties to organize their written discovery and determine which documents have not yet been produced.  Any disputes remaining after meeting-and-conferring should be brought before the Court for a decision.
>
> A number of counsel traveled to Hong Kong to carry out such depositions, but upon review of the transcripts thereof, the Court is convinced that these depositions were ineffective because of disagreement between interpreters, counsel, and witnesses, translation difficulties, speaking objections, colloquy among counsel and interpreters, and in general ensuing chaos.  Therefore, it is necessary to redo these depositions, this time

5

under the supervision of the Court.  With regard to the next round of depositions, the Court directs the parties to designate witnesses to be deposed and objections thereto, and, if necessary, the Court will make a decision.  These witnesses are to be knowledgeable about the noticed topics and prepared to adequately answer questions.  The Court also directs the parties to select a single mutually agreeable translator, and if that is not possible, the Court will consult the State Department and receive recommendations for one.  The parties are to consider expanding the typical length of depositions to accommodate the numerous parties, but at the same time questioning should be carried out by a few designated attorneys who are to confer with and consider the questions suggested by interested parties.  Further, the next round of depositions will be supervised by either a special master appointed by the Court or Judge Fallon himself, depending upon costs and availability.  This will allow for resolution of objections immediately.  Objections are to be concise and free of reasoning.

The Court will revisit the issue of sanctions at a later date so the parties can concentrate on completing discovery.

Finally, in the near future the Court will schedule a status conference to discuss these directives in further detail.  (R. Doc. 9107).

The Court has since held a number of regularly-scheduled conferences with the parties in an effort to keep the parties on track to resolve their discovery and deposition disputes.  The first of these conferences occurred on June 9, 2011.  *See* (R. Docs. 9170, 9524).  At that time, the Court determined the discovery dispute should be resolved first, then the deposition issues.  With regard to written discovery, the Court directed TG and TTP to formulate a list of documents requested which they have already produced, then the PSC was to determine which document requests are still outstanding and provide such to TG and TTP.  Thereafter, if there were are any disputes regarding production, the parties were to meet-and-confer to attempt to resolve such, but if they were unable to do so, they were to submit letters to the Court detailing their respective positions on why or why not certain documents are discoverable.  The Court has since received extensive correspondence from the parties regarding these discovery issues.

With regard to the depositions, the Court directed the parties to determine the following

by late August, early September 2011: (1) a limited number of designated counsel to ask questions at the depositions; (2) deposition topics; (3) Rule 30(b)(6) witnesses who are knowledgeable and prepared to address the noticed deposition topics; (4) a single, mutually agreeable translator with the proper training and skills to translate at the depositions, or alternatively, request the Court to contact the State Department for a translator; (5) a mutually agreeable location with the appropriate amenities for the deposition; (6) the length of the depositions; and (7) a mutually agreeable, qualified court reporter.  Additionally, the Court declared its intent to personally supervise the Hong Kong depositions.

TG and TTP suggested the parties submit charts to the Court detailing how the testimony from the previous depositions relates to the question of personal jurisdiction.  The Court permitted the parties to submit these charts and directed TG and TTP to share their already-completed chart with the PSC so that it may create its own.  The Court received these charts from the Taishan entities.  *See* (R. Doc. 9639).

The second conference was held on June 23, 2011.  *See* (R. Doc. 9639).  The Court and parties discussed the status of the discovery and deposition issues.  Additionally, it scheduled the Rule 30(b)(6) depositions in Hong Kong for the week of January 9, 2012.  It also directed the parties to convene for a status conference following the monthly status conference on July 14, 2011.  Since this conference, Taishan has filed a number of notices of document production.  *See* (R. Docs. 9649, 9944, 10007).

The parties have met-and-conferred on a number of occasions and exchanged voluminous correspondence regarding their discovery disputes.  Because of the industry, good-faith, and professionalism of the parties, they have been able to resolve many discovery issues, but

notwithstanding their efforts they have not been able to agree on a few, discrete issues.
Accordingly, the Court ordered the parties to submit supplemental briefing on the record, in lieu
of correspondence, regarding current written discovery disputes.  (R. Doc. 10092).  The parties
have since complied with this Order.  *See* (R. Docs. 10141, 10162, 10164).  The Court held a
hearing on the submitted briefs on August 30, 2011.  The Court now resolves the issues raised in
the supplemental briefs and during oral argument as follows.

## II.     PRESENT PERSONAL JURISDICTION ISSUES

### A.     PSC & Questioners

The PSC and the Questioners (collectively "Questioners") filed a Supplemental
Memorandum in Support of [their] Renewed Motion Challenging the Adequacy and
Completeness of the Discovery Responses of Defendants Taishan Gypsum Co. Ltd. and Taian
Taishan Plasterboard Co., Ltd. and to Compel Discovery & Jurisdictional Depositions to Occur
in January 2012.  (R. Doc. 10174).  As a threshold matter, the Questioners inform the Court that
the parties have resolved their disputes on a number of discovery requests.  However, a number
of discovery disputes remain, a summary of which from the Questioners' perspective follows.

First, the Questioners seek an order from the Court compelling Taishan to produce
"Upstream/Downstream" documents, that is documents pertaining to Taishan's relationship with
certain affiliated companies.  Specifically, the Questioners seek to compel Taishan to produce
documents of its alleged parent corporation, Beijing New Building Materials ("BNBM").  The
Questioners claim that these documents are crucial to the personal jurisdiction inquiry because in
certain situations a corporation's forum contacts can be imputed to an affiliated corporation for
purposes of personal jurisdiction.  According to the Questioners, Taishan improperly refuses to

produce these documents on the basis the documents are in the possession, custody or control of BNBM, when under relevant law Taishan is required to produce these documents based upon its relationship with BNBM because the documents are within Taishan's "control" for Rule 34 purposes.  The Questioners support this claim by citing the deposition of Mr. Jia who testified he is Chairman of TG and on the board of directors for BNBM, and that Taishan and BNBM are a "joint venture."  The Questioners also cite information they have obtained independent of their discovery of Taishan, including: (1) there is commonality of ownership between Taishan and BNBM, (2) Taishan and BNBM share numerous officers and directors, (3) BNBM had oversight responsibility for Taishan, (4) there is financial interrelatedness between Taishan and the BNBM upstream and downstream entities, and (5) BNBM participated in the transactions at issue in the litigation.  The Questioners refute they must demonstrate abuse of corporate form, fraudulent purpose, or alter ego merely to obtain the discovery documents requested.

Second, the Questioners criticize the adequacy of Taishan's search for electronically stored information ("ESI") discovery, particularly that Taishan only searched the computers and email of seven employees, comprising of TTP sales staff, lower-ranking employees, and the chairman and secretary of TG.  Questioners claim their discovery requests require a broader ESI search and seek an order from the Court compelling Taishan to search the ESI of personal with leadership and board positions on Taishan, and BNBM and its affiliates, as well as their administrative staff.

Third, the Questioners challenge Taishan's refusal to produce further discovery relating to its sales and marketing efforts aimed towards the United States.  They claim, contrary to Taishan's interpretation, the Supreme Court's recent decision in *J. McIntyre Machinery, Ltd. v.*

*Nicastro*, 131 S.Ct. 2780 (2011), does not warrant Taishan's refusal to produce these documents. According to the Questioners, Taishan improperly relies upon the plurality decision in *J. McIntyre* for precedent; they claim instead Justice Breyer's concurrence and existing jurisprudence are controlling, both requiring Taishan to produce further marketing and sale discovery.

Fourth, the Questioners seek to compel production of Value Added Tax (VAT) exemption documents, including exemption applications filed by Taishan, examinations and approval of such applications, and related correspondence. They claim these documents contain relevant information pertaining to Taishan's export of products to the United States.

### B.    Taishan Gypsum Co., Ltd. & Taian Taishan Plasterboard Co. Ltd.

Taishan filed a Supplemental Brief with Respect to Motions to Compel Further Jurisdictional Discovery, objecting to production of further personal jurisdiction discovery. (R. Doc. 10162). Taishan states at the outset that discovery should be limited to information potentially relevant to personal jurisdiction and must be proportionate and necessary. Taishan first argues that the requests for discovery regarding its alleged affiliated entities, particularly BNBM, are improper. According to Taishan, the Questioners have not provided any basis to overcome the presumption of corporate separateness between it and these alleged affiliates which would require it to produce this discovery. Rather, Taishan claims the evidence demonstrates it and BNBM are entirely separate corporate entities, only connected by BNBM's role as its shareholder. Taishan further claims that even if the information about its alleged affiliates is discoverable, it is not obligated to produce such discovery because the documents requested are not within its possession, custody or control. Relatedly, Taishan contends the

10

Questioner's agency and undertaker theories do not entitle them to discovery because these theories are based upon the same concept of control which is lacking between it and its affiliates.

Second, Taishan argues the Questioner's requests for VAT-related documents should be denied because any such discovery is irrelevant to personal jurisdiction and it has already produced all relevant tax and export documents.

Third, Taishan argues it has satisfied its discovery obligations by collecting all ESI related to the sales of drywall to the U.S. from each of its employees who had any involvement in the sales of drywall.  Taishan claims that further ESI discovery is burdensome and inappropriate since its employees work in provincial China and do not use email, and for those that do, instead of company computer servers and email, use personal internet email accounts, MSN Messenger and other similar services.

### C.      Venture Supply, Inc. & the Porter-Blaine Corp.[1]

Venture filed a Supplemental Memorandum in Support of Motion to Compel Additional Jurisdictional Discovery from Taishan Gypsum Co., Ltd. and Taian Taishan Plasterboard Co. (R. Doc. 10141).  Like the Questioners, Venture claims Taishan has failed to sufficiently examine ESI for relevant discovery.  Venture seeks to compel Taishan to search the following ESI: (1) emails of those persons identified by Mr. Jia as persons who would review and send emails for him, (2) the emails of Mr. Peng's direct supervisor, and (3) the new computers purchased by Taishan in 2009 for back-up information from the relevant time period.

---

[1]Venture also raises concerns regarding the next round of depositions of Taishan's Rule 30(b)(6) witnesses, an issue not presently before the Court.  The Court will address Venture's deposition concerns at the appropriate time.

11

### III.   LAW & ANALYSIS

#### A.   Motion to Compel Discovery

Federal Rule of Civil Procedure 37 provides, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  "Matters relating to discovery are committed to the discretion of the trial court." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 347 (5th Cir. 2004); *Worrell v. Houston Can! Acad.*, 2011 WL 1758761, at *4 (5th Cir. 2011).

#### B.   Discovery in General

Federal Rule of Civil Procedure 34(a) permits a party to request the production of discovery "in the responding party's possession, custody, or control."  "Discovery under the Federal Rules of Civil Procedure is broad in scope."  *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).  Rule 26(b)(1) governs the scope of such discovery, stating,

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(c).

Thus, "[t]he scope of permissible discovery is limited by the requirement of relevance, although relevance is broadly defined in the context of discovery."  *Wyatt*, 686 F.2d at 284.

"A district court 'has discretion as to the type and amount of discovery to allow.'"

*Blessey Marine Servs., Inc. v. Jeffboat, LLC*, 2011 WL 651999, at *5 (E.D. La. Feb. 10,

2011)(citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod., Co.*, 517 F.3d 235, 241 (5th

Cir. 2008)).  This discretion is authorized under Rule 26, which provides

> On motion or on its own, the court must limit the frequency or extent of discovery
> otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be
>> obtained from some other source that is more convenient, less burdensome, or
>> less expensive;
>
>> -    -    -    -    -    -    -    -
>
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit,
>> considering the needs of the case, the amount in controversy, the parties'
>> resources, the importance of the issues at stake in the action, and the importance
>> of the discovery in resolving the issues.  Fed. R. Civ. P. 26(b)(2)(C).

### C.    Personal Jurisdiction Discovery in General

Here, as noted above, the Court has limited discovery to that relevant to the exercise of

personal jurisdiction over the foreign Taishan entities.  "It is well settled that a court may allow

discovery in order to allow the parties to ascertain facts that are relevant in determining personal

jurisdiction." *Blessey Marine Servs., Inc. v. Jeffboat, LLC*, 2011 WL 651999, at *5 (E.D. La.

Feb. 10, 2011)(citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 & n.13 (1978)).  A

district court, however, "may properly deny a request for jurisdictional discovery if such

discovery would not 'add any significant facts' to the personal jurisdiction inquiry and would

thus 'serve no purpose.'" *Id.*(citing *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982)).  At the

same time, the Fifth Circuit recognizes if "a plaintiff presents factual allegations that suggest

with reasonable particularity the possible existence of the requisite contacts...the plaintiff's right

to conduct jurisdictional discovery should be sustained." *Fielding v. Hubert Burda Media, Inc.*,

415 F.3d 419, 429 (5th Cir. 2004)(quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446,

456 (3d Cir. 2003); *accord* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice &

Procedure § 1067.6 (3d ed. 2004).

When a court receives discovery materials regarding personal jurisdiction, "unless there

is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in

the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel*, 517 F.3d

at 241. While "[t]he plaintiff bears the burden of establishing a district court's jurisdiction over a

non-resident, [] it need only make a *prima facie* case if the district court rules without an

evidentiary hearing. *Johnston v. Multidata Sys. Int'l Corp*., 523 F.3d 602, 609 (5th Cir.

2008)(citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). "Proof by a preponderance of

the evidence is not required." *Id*. (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)).

This Court is extending every opportunity to Taishan to present evidence to support its

position, but if no evidence is forthcoming or if appropriate discovery is thwarted so that a fair

hearing becomes impossible, this fact-finder will be compelled to construe all disputed facts in

the plaintiff's favor. *See Walk Haydel*, 517 F.3d at 241.

### D.    Personal Jurisdiction Over a Foreign Defendant

There is no dispute that the Taishan entities are located in and operate out of China; thus,

the Court must consider the law on personal jurisdiction over foreign defendants to determine the

scope of relevant discovery.

"A federal district court sitting in diversity may exercise personal jurisdiction over a

foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over

the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process

guarantees of the United States Constitution.  *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010)(citing *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)).  This Court, as a MDL transferee court, has authority pursuant to 28 U.S.C. § 1407 to address the present personal jurisdiction issues.  *See Hamilton v. Atlas Turner, Inc*., 197 F.3d 58, 61-63 (2d Cir. 1999); *In re Agent Orange Prod. Liab. Litig*., 818 F.2d 145, 163 (2d Cir. 1987)(citing *In re FMC Corp. Patent Litig.* 422 F.Supp. 1163, 1165 (J.P.M.D.L 1976)).  "It appears to be reasonably well established, given the plethora of cases on the point, that in actions in which a federal court would be guided or governed by state law, the transferee court is bound to apply the law that the transferor court would follow....in cases involving federal questions, the transferee court follows the interpretation of federal law that has been established by its own court of appeals."  15 Charles A. Wright, *et al.*, Federal Practice and Procedure § 3866 (3d ed. 2009)*; Larson v. Actavis, Inc*., 2010 WL 610053, at *2-3 (S.D.W.Va. Feb. 18, 2010).  The basis for subject matter jurisdiction in the cases filed against the Taishan entities is 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005 (CAFA).  These cases were either filed originally in Virginia, *see e.g. Germano v. Taishan Gypsum Co., Ltd.*, No. 09-6687, or Florida, *see e.g. Mitchell Co., Inc. v. Knauf Gips KG*, No. 09-4115; *Steiner v. Beijing New Bldg. Material, PLC*, No. 09-6545; and consolidated with the MDL by the MDL Panel, or filed directly in or removed to the Eastern District of Louisiana and automatically consolidated with the MDL.  *See e.g. Gross v. Knauf Gips KG*, No. 09-6690; *La. State v. Knauf Gips KG*, No. 10-340; *Wiltz v. Beijing New Bldg. Material Pub. Ltd. Co.*, No. 10-361; *Abel v. Taishan Gypsum Co., Ltd.*, No. 11-80.  Thus, the Court would apply the long-arm statutes of Virginia, Florida, and Louisiana to determine whether the first prong of the personal jurisdiction inquiry is satisfied.

The limits of the Virginia, Florida, and Louisiana long-arm statutes are coextensive with constitutional due process limits.  *See Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002); *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010); *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010)(citing *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)).  "The canonical opinion [on due process in the personal jurisdiction context] remains *International Shoe*, 326 U.S. 310 [], in which [the United States Supreme Court] held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notices of fair play and substantial justice.'"  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853 (2011).

The United States Supreme Court has recently revisited the question of personal jurisdiction over foreign corporations.  *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S.Ct. 2780 (2011); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846 (2011).  In doing so, it noted "[o]pinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purposes jurisdiction, and specific or case-linked jurisdiction.  *Goodyear Dunlop*, 131 S.Ct. at 2851 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, nn. 8, 9 (1984)). The Supreme Court further characterize these types of personal jurisdiction as follows,

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.  Specific jurisdiction, on the other hand, depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.  In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudications of 'issues deriving from, or connected with, the very controversy that establishes

16

jurisdiction.' *Id.* (internal citations omitted).

In  *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780 (2011), the Court was unable

to reach a majority, and thus Justice Breyer's concurrence, which constitutes "the narrower

holding" controls.  *See Panetti v. Quarterman*, 551 U.S. 930, 949 (2007)(citing *Marks v. United*

*States*, 430 U.S. 188, 193 (1977)).  *J. McIntyre* was a products-liability suit filed in New Jersey

state court by a worker who seriously injured his hand in New Jersey while using a machine

manufactured by a British company who sells its products through an independent U.S.

distributor.  *Id.* at 2786. "[A]dher[ing] strictly to [previous Supreme Court precedent] and the

limited facts," *id.* at 2794 (Breyer, J., concurring), Justice Breyer agreed with the plurality that

personal jurisdiction was lacking.  *Id.* at 2791.  The concurrence held that the following contacts

were insufficient to confer personal jurisdiction: "(1) The American distributer on one occasion

sold and shipped one machine to a New Jersey customer, namely [plaintiff's] employer []; (2) the

British Manufacturer permitted, indeed wanted, its independent American Distributor to sell its

machines to anyone in America willing to buy them; and (3) representatives of the British

Manufacturer attended trade shows [in certain U.S. cities]."  *Id.* at 2791-92.  The concurrence

then reasoned "[n]one of our precedents finds that a single isolated sale, even if accompanied by

the kind of sales effort indicated here, is sufficient" for personal jurisdiction.  *Id.* at 2792.  It

further elaborated,

> Here, the relevant facts found by the New Jersey Supreme Court show no 'regular...flow'
> or 'regular course' of sales in New Jersey; and there is no 'something more,' such as
> special state-related design, advertising, advice, marketing, or anything else. [Plaintiff],
> who here bears the burden of proving jurisdiction, has shown no specific effort by the
> British Manufacturer to sell in New Jersey.  He has introduced no list of potential New
> Jersey customers who might, for example, have regularly attended trade shows.  And he
> has not otherwise shown that the British Manufacturer 'purposefully availed itself of the
> privilege of conducting activities' within New Jersey, or that it delivered its goods in the

17

stream of commerce 'with the expectation that they will be purchased' by New Jersey users. *Id*. at 2792.

Justice Breyer cautioned against both asserting personal jurisdiction solely based upon a foreign defendant's knowledge that its products distributed through a nation-wide distribution system might lead to those products being sold in the United States, constituting "no more than the occurrence of a product-based accident in the forum State," *see id.* at 2793, and at the same time against "strict rules that limit jurisdiction where a defendant does not 'intend to submit to the power of the sovereign' and cannot 'be said to have targeted the forum.'" *See id.*

The Supreme Court also addressed personal jurisdiction over a foreign manufacturer in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846 (2011), unanimously holding general personal jurisdiction was lacking in a North Carolina state court over estate claims of North Carolina residents against foreign subsidiaries who manufactured tires involved in a fatal bus accident.  The Court affirmed the state court's conclusion that specific personal jurisdiction was lacking since the bus accident occurred abroad and the tire alleged to have caused the accident was manufactured and sold abroad.  *See id.* at 2851.  With regard to general personal jurisdiction, the Court disagreed with the state court and held that such jurisdiction could not be supported simply because some of the tires manufactured abroad had reached North Carolina through the stream of commerce.  *See id.* at 2851.  The Court further supported its holding by noting the following absent and *de minimis* contacts with the forum: (1) the foreign manufacturers were not registered to do business in North Carolina, (2) they had no place of business, employees or bank accounts there, (3) they did not design, manufacture, or advertise their products there, (4) they did not solicit business there, (5) they did not sell or ship tires to North Carolina customers, (6) a small percentage of their tires were distributed to there by

18

domestic affiliates, and (7) the type of tire involved in the accident was never distributed in North Carolina. *See id.* at 2852. The Court went on to clarify that "[f]low of a manufacturer's products into the forum...may bolster an affiliation germane to *specific* jurisdiction....[b]ut ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Id.* at 2855.

These recent pronouncements from the Supreme Court provide guidance to this Court in considering the appropriate parameters of relevant personal jurisdiction discovery of the Taishan entities.

### B.     Discovery Regarding Affiliated Companies

As noted, the Questioners are seeking discovery related to Taishan's relationship with its alleged parent corporation Beijing New Building Materials, Co. Ltd. ("BNBM"), and other entities upstream and downstream to BNBM. According to the Questioners, this discovery is relevant to personal jurisdiction because in certain circumstances a corporation's minimum contacts with the United States can be imputed to a non-forum affiliated corporation. Additionally, the Questioners claim that due to Taishan's close relationship with BNBM, Taishan has sufficient control of discovery in BNBM's possession, requiring Taishan to produce this discovery. Thus, the Questioners request the following discovery,

> 1) Documents relating to BNBM upstream entities, including:
>     a. the relationship and communications between them;
>     b. the legal corporate structure;
>     c. interaction between the various members of the affiliated or related entities.
> 2) Documents showing the relationship between TG/TTP and BNBM and its respective owners/shareholders, including:
>     a. communications and documents relating to the formation of TTP.
> 3) A corporate entity organizational chart relating to BNBM and its upstream and downstream entities, including:
>     a. the relationship and communications between them;

     b. the legal corporate structure;
     c. interaction between the various members of the affiliated or related entities;
and

     d. see also, allegations in the *Amyrin* Complaint, filed June 13, 2011 in the MDL,
     CA11-1395.
    4) All annual reports, government filings, or foreign government filings created by
    BNBM during the relevant time period.
    5) Board minutes of BNBM and/or TG where either entity is, or both are, discussed
    including matters regarding operations and finance.  (R. Doc. 10174).

   The Taishan entities strongly oppose producing any such discovery on the basis it is not

relevant to personal jurisdiction and they lack control or possession over these documents which

belong to BNBM and other affiliated companies.  According to the Taishan entities, the

Questioners have failed to provide any basis to overcome the presumption of corporate

separateness which would entitle them to such discovery; rather, the Questioners have merely

demonstrated a typical relationship of large shareholder and the company which has invested in

it, insufficient for imputation of personal jurisdiction.

   The arguments raised by the parties invoke two questions, (1) whether the Questioners

are entitled to personal jurisdiction discovery regarding the Taishan entities and their affiliated

corporations, and if so, (2) whether such discovery is properly within the control or possession of

the Taishan entities, requiring production of the discovery.  The Court will address these issues

in turn.

   The Questioners seek to establish personal jurisdiction over Taishan on the basis of

Taishan's relationship with certain upstream and downstream entities.  Notably, in the recent

Supreme Court cases addressing personal jurisdiction over foreign defendants the Court either

declined to address the imputation of minimum contacts between affiliated corporate entities, *see*

*Goodyear Dunlop*, 131 S.Ct. 2846, 2857, or the issue was not before the Court.  *See J. McIntyre*,

131 S.Ct. 2780.  However, the Supreme Court in *Cannon Manufacturing. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925), recognized the possibility of imputing the minimum contacts of a subsidiary to a parent for personal jurisdiction purposes, but declined to do so where these affiliates maintained separate and distinct corporate entities.  Numerous courts have since followed *Cannon* in considering the relationship of corporate affiliates in the personal jurisdiction context to determine whether imputation of one corporation's forum contacts to another is warranted.  *See e.g. Bauman v. DaimlerChrysler Corp.,* 644 F.3d 909 (9th Cir. 2011); *Estate of Thomas v. Estate of Rakestraw*, 545 F.3d 357, 362 (6th Cir. 2008); *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008); *Stubbs v. Wyndham Nassau Resort*, 447 F.3d 1357, 1361 (11th Cir. 2006); *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1278 (10th Cir. 2005); *Fruedensprung v. Offshore Technical Servs., Inc.,* 379 F.3d 327, 346 (5th Cir. 2004).  Generally, the jurisprudence considers a number of factors to determine if the level of "control" or "importance" between the corporate entities is sufficient for the imputation of contacts.  *See e.g. id.*

The Fifth Circuit[2] has addressed this issue on a number of occasions, recently pronouncing "[w]here the parent corporation is merely the 'alter ego' of its subsidiary, a court can impute to the parent its subsidiary's contacts with the forum state for the purposes of establishing personal jurisdiction."  *DP Solutions, Inc. v. Rollins, Inc*., 34 Fed. App'x 150, *4 (5th Cir. 2002); *see also Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978)(recognizing personal jurisdiction can be

---

[2]Federal courts applying the Virginia and Florida long-arm statutes have applied similar analyses with regard to imputing the contacts of affiliated corporations for purposes of personal jurisdiction.  *See e.g. Abramson v. Walt Disney Co.*, 132 Fed. App'x 273, 275-76 (11th Cir. 20050; *LTD Mgmt. Co., LLC v. Holiday Hospitality Franchising, Inc*., 2008 WL 7281926, at *6 (E.D. Va. Mar. 11, 2008)*; Stokes v. L. Geismar, S.A.*, 815 F.Supp. 904, 906 (E.D. Va. 1993).

imputed from a forum parent corporation to its foreign subsidiary).  The Circuit has further

elaborated,

> An alter ego relationship between a parent corporation and its subsidiary is based on control, but our case law has not clearly articulated the amount of control necessary to establish such a relationship.  Generally, there must be 'proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes.'  Although the assessment should be based on the totality of the circumstances, this Court has considered the following factors to be relevant in determining whether a parent's control will allow alter ego jurisdiction: (1) whether the parent owns 100% of the subsidiary's stock; (2) whether the two corporations maintain separate headquarters; (3) whether the parent and subsidiary share common officers and directors; (4) whether corporate formalities are observed; (5) whether separate accounting systems are maintained; (6) whether the parent exercises complete authority over general policy; and (7) whether the subsidiary exercises complete authority over daily operations, including research and development, marketing, and supply.  *Id.*  at *5 (internal citations omitted).

"It should be noted that the alter ego test for attribution of contacts, i.e., personal jurisdiction, is

less stringent than that for liability."  *Stuart v. Spademan,* 772 F.2d 1185, 1198 n.12 (5th Cir.

1985)(citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d. Cir. 1981)).

Here, the discovery sought by the Questioners from the Taishan entities is consistent with

the jurisdictional factors for imputing the forum contacts of one affiliated company to another

affiliate company for personal jurisdiction purposes.  *Compare* (R. Doc. 10174); *and DP

Solutions*, 34 Fed. App'x at *5.  The Court sees no reason why the Questioners should not be

permitted to request such discovery since it would be relevant to personal jurisdiction.  *See e.g.

Estate of Monroe v. Bottle Rock Power Corp*., 2004 WL 737463, at *9 (E.D. La. Apr. 2, 2004).

Further as noted above, the PSC is only required to allege with "reasonable particularity" the

possible existence of facts supporting personal jurisdiction to obtain discovery on the issue.  The

Court finds the Questioners have satisfied this burden by alleging the following:  Mr. Jia

Tongchun is both the chairman of TG and sits on the board of directors for BNBM; BNBM and

22

the Taishan entities have a joint venture; there is commonality of ownership between BNBM; these entities share corporate officers and directors; BNBM had oversight responsibility for Taishan entities; there was financial interrelatedness between the entities; and BNBM participated in the Taishan entities' Chinese drywall transactions at issue in the litigation. *See* (R. Doc. 10174).

Though these conclusions may settle the Questioners' *entitlement* to their discovery requests, the Court still must determine whether the Questioners can actually *obtain* this discovery. Taishan argues that even if the Questioners are entitled to further discovery involving Taishan's relationship with affiliated corporate entities, such discovery is unattainable because the Taishan entities lack sufficient control over such documents. Indeed, Rule 34(a) limits a party's discovery requests to those documents "in the responding party's possession, custody, or control." Considering the Questioner's discovery requests, the Court sees no reason why the Taishan entities should not be able to produce documents relating to their relationship and communications with BNBM, their legal corporate structure, their interactions with affiliated or related companies, the formation of the Taishan entities, and their board minutes where they and/or BNBM is discussed, including matters of operations and finance. These documents seem to be in the possession, custody, or control of the Taishan entities. But if they are not, the CEO or the equivalent should file an affidavit under penalty of perjury and punitive action stating unequivocally that the documents are not in Taishan's possession or control. *See generally Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 720 n.5 (7th Cir. 2001); *1-10 Indus. Assocs., LLC v. U.S.*, 528 F.3d 859, 866-67 (C.A. Fed. 2008).

With regard to the discovery requests for information which appears to be solely in the

23

"possession, custody, or control" of BNBM, particularly annual reports, government filings, or foreign government filings created by BNBM during the relevant time period and board minutes of BNBM, the Court must consider the applicable law to determine whether Taishan has an obligation to produce this discovery.[3]  Notably, this Court has previously spoken on the issue,

> Generally a 'party is charged with knowledge of what its agents know or what is in records available to it.  Rule 34 is broadly construed and documents within a party's control are subject to discovery, even if owned by a nonparty.  The burden is on the party seeking discovery to make a showing that the other party has control over the material sought.  When determining the sufficiency of control of material for purposes of Rule 34, the nature of the relationship between the party and the non-party is key.
>
> Typically what must be shown is a relationship, either because of some affiliation, employment or statute, such that a party is able to command release of certain documents by the non-party person or entity in actual possession.  The applicable test is whether the litigant has the ability to obtain the documents on request to a related party, either as a matter of law or as a matter of practical effect.  *Estate of Monroe v. Bottle Rock Power Corp.*, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004); *accord Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc*., 2011 WL 3418396, at *2 (S.D. Tex. Aug,. 3, 2011).

Notably, under these principals, "discovery can be sought from one corporation regarding materials that are in the physical possession of another, affiliated corporation."  *Shell Global*, 2011 WL 3418396, at *2 (citing *SEC v. Credit Bancorp , Ltd.,* 194 F.R.D. 469, 472 (S.D.N.Y. 2000)).

In determining whether such discovery is appropriate, "[c]ourts focus upon the nature of the relationship between a corporate party and its affiliates to determine whether the information sought from a corporate party's affiliate is in the party's control and custody."  *Shell Global*, 2011 WL 3418396, at *2 (citing *Alcan Int'l Ltd. v. S.A. Day Mfg., Co.*, 176 F.R.D. 75, 78 (W.D.N.Y.

---

[3]At oral argument the Court inquired as to whether the Questioners could obtain this discovery directly from BNBM since it is a named party in the litigation.  The parties informed the Court that BNBM is a party, but is in default for failure to appear.

1996)).  The factors considered by courts in determining such "control and custody" include: "(a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement of the nonparty corporation in the transaction, and (e) involvement of the non-party corporation in the litigation."  *Id*. (citing *Super Film of Am., Inc. v. UCB Films, Inc*., 219 F.R.D. 649, 655 (D.Kan. 2004)).

The Questioners have put forth the following bases to support their discovery requests to Taishan for production of information possessed by BNBM: (1) Mr. Jia is the chairman or TG and sits on the Board of Directors of BNBM, (2) BNBM and the Taishan entities have a joint venture, (3) commonality of ownership between BNBM and the Taishan entities, (3) BNBM and the Taishan entities shared and continue to share numerous officers and directors, (4) BNBM appointed a majority of the Taishan entities' board members, (5) there is a financial relationship between the Taishan entities and BNBM, and (6) BNBM participated in the transactions at issue in the litigation.  The Court acknowledges Taishan's argument, relying upon *Westerngeco, LLC v. Ion Geophysical Corp*., 2010 WL 2266524 (S.D. Tex. June 2, 2010), that the Questioners must show more than its "access" to BNBM documents before it can be compelled to produce such. The Court agrees.  When considered under the applicable law, *see supra* pp. 24-25, the Court finds the Questioner's allegations go beyond mere "access" and demonstrate sufficient "control" to warrant the Taishan entities' production of the requested BNBM discovery documents. However, if Taishan diligently attempts to obtain this discovery from BNBM yet is unsuccessful in procuring some or all of the requested documents, the Court directs Taishan to submit an affidavit under penalty of perjury and punitive action, stating unequivocally that such discovery is

not within its control. *See generally Crabtree,* 261 F.3d at 720 n.5; *1-10 Indus. Assocs.,* 528 F.3d at 866-67.

### C.      Search of Electronic Sources

The next discovery dispute involves whether the Taishan entities conducted a sufficiently broad search of electronically stored information ("ESI") to satisfy the discovery requests under the Federal Rules.  The Questioners and Venture both accuse Taishan of searching only a limited amount of ESI, and seek an order requiring Taishan to: (1) search the computers and email of all members of the TG board, its directors or executives; (2) search the computers and email of the leaders of the BNBM entities and their administrative staff; (3) search the emails of those persons identified by Mr. Jia as persons who reviewed and sent emails on his behalf; (4) search the emails of Mr. Peng's direct supervisor; and (4) search the Taishan entities' new computers purchased in the spring of 2009 for any data backed-up or retained from previous computers.  The specific request of the Questioners reads: "Any written or electronic communication, including but not limited to MSN, Instant Messenger, text messages, regarding the sale or shipment or possible sale or shipment of any product to United States including territories Guam, U.S. Virgin Islands, Puerto Rico, etc., customers."  (R. Doc. 10174).

The Taishan entities object to such discovery on the following bases: (1) they are drywall manufacturers in provincial Chinese without company computer servers or company emails so no ESI has been retained in the regular course of business, (2) new computers replaced the ones used during the relevant time period of 2005-2008, (3) they have searched all available emails of employees involved in the business of selling or manufacturing drywall made to U.S. specifications, (4) little business was conducted through electronic sources, (5) the Questioners

and Venture erroneously assume because no EIS has been produced for certain employees they were not searches were conducted, and (6) further discovery of ESI sources is extremely burdensome and invasive.

Given the absence of jurisprudence on these specific discovery issues, the Court is guided by the general discovery rules in Federal Rules of Civil Procedure 26 and 34. Thereunder, the Taishan entities are required to produce discovery which is relevant to personal jurisdiction within their possession, custody or control, and which is not inappropriately burdensome or costly. The Court finds that Taishan's search of only seven employees' computers and email is insufficient to satisfy its discovery obligations. Accordingly, Taishan is directed to expand its ESI search to those employees and directors in supervisory positions. However, the Court excepts from this search the ESI of Mr. Jia's staff who Taishan represents did not use their own computers. Once again, if Taishan diligently attempts these discovery searches and is unable to produce some or all of the requested information, it is to submit an affidavit under penalty of perjury or punitive action indicating insomuch. *See generally Crabtree,* 261 F.3d at 720 n.5; *1-10 Indus. Assocs.,* 528 F.3d at 866-67.

### D.    Discovery Regarding the Taishan Entities' Marketing & Sales Efforts Aimed at the United States

The parties dispute whether the Supreme Court's recent decision in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780 (2011), requires the Taishan entities to produce discovery regarding their marketing and sales efforts directed at the United States. Looking to Judge Breyer's concurrence, *see Panetti v. Quarterman*, 551 U.S. 930, 949 (2007)(citing *Marks v. United States*, 430 U.S. 188, 193 (1977)), the Court finds the Taishan entities are indeed required to produce such discovery. Justice Breyer addresses this issue directly, stating,

27

Here, the relevant facts found by the New Jersey Supreme Court show no 'regular...flow' or 'regular course' of sales in New Jersey; and *there is no 'something more,' such as special state-related design, advertising, advice, marketing, or anything else*. [Plaintiff], who here bears the burden of proving jurisdiction, has shown *no specific effort* by the British Manufacturer *to sell* in New Jersey. He has introduced no list of potential New Jersey customers who might, for example, have regularly attended trade shows. And he has not otherwise shown that the British Manufacturer 'purposefully availed itself of the privilege of conducting activities' within New Jersey, or that it delivered its goods in the stream of commerce 'with the expectation that they will be purchased' by New Jersey users. *Id*. at 2792 (emphasis added).

**D.    Discovery of VAT Information**

The final discovery dispute involves whether the Taishan entities are required to produce Value Added Tax (VAT)-related discovery. The Questioners seek to compel a response to the their request for "Value Added Tax related documents and communications involving the export of product including representations made to the government of China and others regarding export of products." (R. Doc. 10174). According to the Questioners, this discovery is relevant to personal jurisdiction because it involves the export of Chinese drywall and the representations made regarding the drywall. The Questioners claim such discovery is warranted because the testimony of Jianchun Zhang indicated that the Taishan entities implemented policies regarding VAT exemptions during the relevant time period which would involve their export of drywall to the United States.

The Taishan entities refute any obligation to produce VAT-related discovery. They claim they have provided all tax documents accompanying every sale of drywall made to U.S. dimensions and all documents relating to exports. The further claim that VAT-related discovery is irrelevant to personal jurisdiction.

Without any specific guidance on this issue from the jurisprudence, the Court is guided by the general discovery provisions of the Federal Rules. After considering the parties' arguments

under these Rules, the Court finds that the VAT-related discovery sought is relevant to personal jurisdiction to the extent it contains information regarding Taishan's export of products to the United States.  Accordingly, Taishan is compelled to produce any VAT-related discovery containing such information; any other information is irrelevant and need not be produced.

## IV.   CONCLUSION

Based upon the foregoing law, analysis and conclusions, the supplemental briefs from: (1) the Questioners (R. Doc. 10174), (2) the Taishan entities (R. Doc. 10162), and (3) Venture (R. Doc. 10141), regarding personal jurisdiction discovery of the Taishan entities are resolved by the Court.  The Court appreciates the difficulty incident to conducting discovery abroad, but finds that the further discovery required by this Order & Reasons will enable the Court to properly evaluate and resolve for once and all the personal jurisdiction challenges raised by the Taishan entities.

New Orleans, Louisiana, this 9th day of September 2011.

_____
U.S. District Judge