# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL          MDL No. 02047
       PRODUCTS LIABILITY LITIGATION          SECTION L

THIS DOCUMENT RELATES TO:          JUDGE FALLON

LAURA HAYA, DANIEL HAYA and          MAG. JUDGE WILKINSON
IRENE HAYA, et al. v.
TAISHAN GYPSUM CO., LTD., et al.;
Case No. 11-1077 (Omni IX)
_____ _____/

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, WOODLAND ENTERPRISES, INC.'S, MOTION TO DISMISS WITH PREJUDICE THE CLAIMS ASSERTED AGAINST IT IN THE SECOND AMENDED HAYA OMNIBUS CLASS ACTION COMPLAINT (OMNI IX)

Defendant, Woodland Enterprises, Inc. ("Woodland"), hereby files its Memorandum of Law in Support of its Motion to Dismiss, with Prejudice, the claims asserted against it by plaintiff **Veronica Purcell** (the "Plaintiff") in the Second Amended Haya Omnibus Class Action Complaint ("Omni IX"), pursuant to Federal Rule of Civil Procedure 12(b)(6), for the reasons set forth below.

## I.  ARGUMENT

### A.     The Governing Legal Standard.

To survive a motion to dismiss, a complaint must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'" *ADA v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (affirming dismissal of RICO claims) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009)) (same, applying Twombly standard to all civil actions); *Zarella v. Pac. Life Ins. Co.*, No. 10-60754, 2010 U.S. Dist. LEXIS 119552, at *5-7 (S.D. Fla. Nov. 10, 2010) (applying these standards to dismiss numerous claims against insurer, including negligence and unjust enrichment claims).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s], devoid of 'further factual enhancement.'" *Id.* at 1949 (*quoting Twombly*, 550 U.S. at 557). In considering a motion to dismiss, a court should adopt a two-pronged approach: (1) "eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *ADA*, 605 F.3d at 1290 (*quoting Iqbal*, 129 S. Ct. at 1950). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (*quoting Iqbal* at 1951-52).

**B.      Plaintiff's Negligence Claim (Count I) is Without Merit**

Plaintiff's negligence claim (Count I) really illustrates why Woodland does not belong in this lawsuit. The Omnibus Complaint alleges that Woodland somehow owed Plaintiff a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question. Cmplt. ¶ 42. The Complaint further alleges that Woodland had a duty to provide Plaintiff with certain warnings about the drywall. *Id.* ¶ 45.

Besides being intercepted by the economic loss rule (*see* discussion, *infra* at Sections I.E and I.F(i)), these allegations are indisputably false. Woodland, for example, did not "design," "manufacture," or "import" any drywall. Yet even assuming the truth of Plaintiff's specious allegations, they do not state a claim for relief. Under Florida law, a negligence claim requires the plaintiff to plead and prove (among other things) that the defendant owed a duty to the plaintiff, and that the duty was breached. *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (Florida law) ("Failure to establish any one of these elements is fatal to the plaintiff's case."). Plaintiff can allege neither prerequisite.

The most fundamental problem with Plaintiff's negligence theory is that, as a matter of law, Woodland did not owe Plaintiff a duty in negligence.   The March 18, 2011 omnibus order in *Bennett v. Centerline Homes, Inc. et al.*, No. 502009-CA-014458 (Fla. 15th Jud. Cir.), attached hereto as **Exhibit A** for the Court's convenience (the "Omnibus Negligence Order"), explains why this is so.   *Bennett* is a consolidated state court action that, like this one, pits homeowners with defective drywall claims against homebuilders.   Just as the Plaintiff is attempting to do here, the homeowners in *Bennett* attempted to assert a negligence claim based on their builders' purported failure to protect them from a latent defect – namely, hazardous "Chinese manufactured" drywall. The issue of whether the builders owed a duty in negligence was, the court held, "a question of law."  Omnibus Negligence Order, pg. 1.

In what appears to be a case of first impression in Florida, the court in *Bennett* ruled that the homebuilders did not have a duty "to inspect, test or warn" the plaintiffs about the allegedly defective drywall in their homes.   The court explained that where, as here, the purported defect is "latent," the law imposes no such duties "unless the product is inherently dangerous."   *Id*. at 2; *see O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim as manufacturer had no duty to warn); *Mendez v. Honda Motor Co*., 738 F. Supp. 481, 483-84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous.").   Because even *defective* drywall does not fit into the narrow "inherently dangerous" category, the builders had no duty to inspect the drywall, to test it, or to warn the plaintiffs about it.  Omnibus Negligence Order, pg. 2.[1]   The only way for the negligence

---

[1]      "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category.  They include highly toxic materials, second hand guns and drugs…. In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself." *O'Connor v. Kawasaki Motors Corp., U.S.A*., 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted).  By way of example, Florida courts have ruled that jet skis (*id*. at 1543), motorcycles (*Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id*.) are <u>not</u> "inherently dangerous."

claims to survive, the court held, was for the homeowners to allege "in good faith" that the builders had "actual or implied notice" of the alleged drywall defects. *Id.*; *see Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez*, 738 F. Supp. at 483-84.

Because the purported drywall defects at issue in this case were indisputably latent (*see, e.g.,* Cmplt. ¶ 70), Plaintiff's negligence claim cannot survive because she cannot allege – in good faith – that Woodland had "actual or implied notice" of the defects. The boilerplate and unsupportable assertion that Woodland "knew or should have known" that the drywall would "harm" the Plaintiff (*id.* ¶ 53) is a bare legal conclusion that cannot state a claim for relief, particularly one premised on a negligence theory that files in the face of basic Florida law. *See Omnibus Negligence Order*, pg. 2 (requiring more specific allegations); *Ashcroft*, 129 S.Ct. at 1949.

**C.     Plaintiff has not Stated a Claim for Negligence Per Se (Count II).**

Besides being barred by the economic loss rule (*see* discussion, *infra* at Sections I.E and I.F(i)), Plaintiff's negligence per se claim (Count II) is poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort. Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiff has not stated a claim for negligence per se for two reasons. First, she has not identified a statute that Woodland allegedly violated, much less explained how that violation occurred. Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "statutory duties," including "those imposed under the International

Building Code ('IBC') and other State and local Building Codes." Cmplt. ¶ 52. Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that Woodland allegedly violated are "designed to protect the <u>general</u> <u>public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). In other words, Plaintiff's negligence per se claim appears to be nothing more than a repackaged negligence claim. It should be summarily dismissed for that reason as well.

**D.     Plaintiff Cannot hold Woodland Strictly Liable for her Alleged Damages (Count III).**

Plaintiff's strict liability claim (Count III) is premised on the sweeping and patently false assertion that Woodland – a builder - was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." Cmplt. ¶ 57.

Even assuming that fabricated statement is true, the strict liability theory is nonetheless foreclosed by the economic loss rule (*see* discussion, *infra* at Sections I.E and I.F(i)) and by at least two other established principles of Florida law. Each principle was addressed in the Omnibus Order on Pending Motions to Dismiss issued in the consolidated drywall proceedings in Florida's Fifteenth Judicial Circuit, styled *Bennett v. Centerline Homes Inc.*, No. 50 2009-CA-014458 (Fla. 15th Jud. Cir., Nov. 15, 2010), as an independent basis for dismissing all strict liability claims brought against homebuilders in that court. A copy of the Omnibus Order on Pending Motions to Dismiss is attached hereto as **Exhibit B** for the Court's convenience (the "Omnibus Order"). There, the same Florida circuit court that later rejected the plaintiffs' negligence theory (*see* supra at Section I.B) ruled that (1) "only manufacturers, and those in the distributive chain of a product, can be held strictly liable" for allegedly defective drywall; and (2) drywall is not subject to strict liability

because it is considered an improvement to real property, not a "product." *See id.*, Order pgs. 7-9. Each rationale applies here and each is fatal to Plaintiff's strict liability claim.

First, Woodland cannot be strictly liable to the Plaintiff because Woodland obviously did not manufacture or distribute the drywall in question. The Complaint itself identifies Woodland as a "Developer/Builder." Cmplt., Ex. A, pg. 68 (Subclass #233). It is firmly settled – and *Bennett* confirms – that strict products liability is reserved for manufacturers and others in the chain of distribution, not homebuilders. *See, e.g., Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291-92 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Second, it has long been held that strict product liability **does not apply** to "structural improvements" to real estate, such as a home, as a home is not considered a product.[2] Drywall is a "structural improvement" to real property because it is an *integral part* of Plaintiff's home. "Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc*. No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added).[3] Indeed, courts specifically hearing Chinese drywall cases have similarly found that drywall constitutes a structural improvement to real property for which a strict products liability action will not lie. *See Bissoon v. Centerline Homes*

---

[2]     *See Federal Ins. Co. v. Bonded Lighting Prot. Sys., Inc*., No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (dismissing strict liability claim based on lighting system because system was structural improvement to real estate); *see also Virgilio v. Ryland Group, Inc*., 695 F. Supp. 2d 1276, 1283 n.11 (M.D. Fla. 2010) (explaining that "a home is not a product" for purposes of strict products liability, and citing authorities); *see generally Porter v. Rosenberg*, 650 So. 2d 79 (Fla. 4th DCA 1995).

[3]     *See also Plaza v. Fisher Dev., Inc*., 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007) (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water & Waste, Inc*., 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

*Construction, Inc.*, No. 562010 CA 001463 (Fla. 19th Jud. Cir. Mar. 24, 2011) (granting builder's motion to dismiss: "[A]lthough Plaintiff[s'] strict liability claims do allege defective product distribution, permanent improvements to real property are not products for purposes of products strict liability actions") (a copy of which is attached hereto as **Exhibit C**). As such, Plaintiff's strict liability claim should be dismissed as a matter of law.

**E.    Plaintiff's tort claims (Counts I, II, III and XI) are barred by Florida's products liability economic loss rule.**

To the extent that Plaintiff seeks to sue Woodland in tort for economic losses, those claims should also be dismissed under Florida's products liability economic loss rule.   In *Casa Clara Condominium Association v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1248 (Fla. 1993), the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties.   The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages.   *Id.* at 1247.   Because the plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier.   *Id.* at 1246-48.

The same reasoning applies here.   The economic loss rule limits Plaintiff to recovering non-economic losses (e.g., for personal injury) and damages to property other than the home itself.[4]   *See Casa Clara*, 620 So. 2d at 1247-48.   Plaintiff must therefore replead her tort claims to seek only non-economic losses.   *Cf.* Cmplt. ¶ 55(seeking general "damages" on negligence count).

**F.    Plaintiff's Breach of Contract Claim (Count VII) must be Dismissed.**

Plaintiff cannot maintain a claim for breach of contract for the simple reason that she was

---

[4]    Plaintiff also cannot recover economic losses because she has underlined no such losses.  The Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed."  *In re Chinese Manufactured Drywall Products Liability Litig.,* 680 F. Supp. 2d 780, 799 (E.D. La. 2010).

not in privity of contract with Woodland.  Although Woodland built the Plaintiff's home, Plaintiff did not purchase that home directly from Woodland.  Instead, Plaintiff acquired the home from a third party, Luv It Homes & Villas, LLC ("Luv It").  A copy of the February 23, 2005 Construction Agreement between Woodland and Luv It is attached hereto as **Exhibit D**.  A copy of the June 30, 2006, Certificate of Occupancy for the home is attached hereto as **Exhibit E**.  A copy of the later-executed Warranty Deed from Luv It to Plaintiff, dated July 19, 2006, is attached as **Exhibit F**.[5]

The plain language of the Construction Agreement between Woodland and Luv It does not establish any clear or manifest intent by the parties thereto to cause the Construction Agreement to primarily and directly benefit Plaintiff (nor does Plaintiff so allege).  *See Biscayne Investment Group v. Guarantee Management Servs., Inc.,* 903 So. 2d 251, 254 (holding that "a non-party to a contract is [deemed] the specifically intended beneficiary <u>only</u> if the contract clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that party belongs … [t]o find the requisite intent, it must be established that the parties to the contract <u>actually</u> and <u>expressly</u> intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party") (emphasis added).  Because Plaintiff acquired her home from a third party (Luv It), her only contractual remedy lies

---

[5]       The fact that Plaintiff chose not to attach these documents to the Omnibus Complaint does not prevent the Court from considering them now.  The Court can and should consider these instruments because they are undeniably central to Plaintiff's claims (especially her breach of contract and breach of warranty claims) against Woodland, and because the documents are publicly available.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (holding that contract could be considered on motion to dismiss where it was attached to motion, referred to in the complaint, and central to the plaintiff's claims); *Aucoin v. Regions Fin. Corp.*, No. 09-3835, 2010 WL 334533, *2 (E.D. La. Jan. 21, 2010) (incorporating Retirement Plan mentioned in complaint and central to one or more of plaintiff's claims); *Federal Ins. Co. v. New Hampshire Ins. Co.*, No. 03-385-CM, 2010 WL 28568, *4 (M.D. La. Jan. 4, 2010) ("Since the insurance policy issued by New Hampshire is central to [plaintiff's] claims, the Court may consider it as evidence even though it was not attached to [plaintiff's] original petition or amended complaint."); Fla. Stat. §§ 90.202(5), (11) & (12) (setting forth matters that may be "judicially noticed," including "[f]acts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned"); *e.g., Cardona v. City of Tampa*, No. 96-5194, 1998 WL 34201850, at *1 n.1 (Fla. 13th Jud. Cir. Mar. 9, 1998) (granting motion to dismiss with prejudice while taking "judicial notice" of certain public records filed at city council proceeding).

with that party.  "It is elementary that a person not a party to, nor in privy with, a contract does not have the right to sue for its breach."  *Cibran Enters., Inc. v. BP Prods. N.A., Inc.*, 365 F. Supp. 2d 1241, 1251 (S.D. Fla. 2009) (internal marks and citation omitted); *Banco Ficohsa v. Aseguradora Hondurena, S.A.,* 937 So. 2d 161, 164-65 (Fla. 3d DCA 2006) (same principle). [6] As such, Count VII must be dismissed.

**G.      Plaintiff Cannot Maintain her Breach of Warranty Claims (Counts IV & VI)**.

      In Counts IV (Breach of Express / Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiff alleges causes of action based on various express and implied warranties. Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties – let alone explain how Woodland might have breached them – these improvised warranty claims should be dismissed for several independently sufficient reasons.

      (i)      *The express warranty claims asserted by Plaintiff are foreclosed by the plain language of the warranties themselves and are further barred by the contractual privity economic loss rule*.

      When Woodland sold the home at issue to its initial purchaser, Luv It, Woodland issued two express warranties: (1) a limited warranty in favor of "Luv It Homes and Villas, LLC and/or its' first purchaser, for one year after certificate of occupancy" (the "Limited Warranty"); and (2) a "Residential Home Limited Warranty" in favor of "only the original purchaser of the [home] from Luv It Homes and Villas, LLC … [f]or a period of one (1) year from the date of Closing"[7] (the "Residential Warranty").  The Limited Warranty is attached to the Construction Agreement [**Ex. D**] as "Exhibit C", and the Residential Warranty is attached to the Construction Agreement [**Ex. D**]

---

[6]      What is more, the Construction Agreement prohibited Luv It from assigning the contract without Woodland's express written prior consent.  *See* **Ex. D**, ¶ 37.  The Omnibus Complaint nowhere alleges that Luv It – the entity that conveyed Plaintiff's property to her – ever sought or obtained such consent.

[7]      "Closing" is defined in the Residential Warranty as "the date on which title to your [home] is conveyed to you".  *See* Residential Warranty, ¶1.  Thus, the Closing would occur, at the latest, on the date that the Warranty Deed was recorded on July 19, 2006.  Consistent with the foregoing analysis, according to Plaintiff's Profile Form, a copy of which is attached hereto as **Exhibit H**, she moved into the Property in "July 2006".

with no designation.  The one year warranty period for the Limited Warranty is found at ¶3 of that document; the one year warranty period for the Residential Warranty is found at ¶¶ 1&7 of that document.  The Limited Warranty and Residential Warranty are collectively referred to as "the Warranties".

Whereas Plaintiff was clearly not in privity of contract with respect to the terms and conditions of the Construction Agreement itself, even if Plaintiff were to allege (which she has not) that she is a third party beneficiary of the Warranties, her express warranty claims should nonetheless be dismissed because she has not alleged (nor can she) that she experienced a defect within the applicable limited warranty periods.  "[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects-defects that may exist before, but typically are not discovered until after, the expiration of the warranty period." *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (3d Cir. 1992) (citing numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period but did not manifest until after warranty period had expired); *see Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 616-617 (3d Cir. 1995) ("[L]atent defects discovered after the term of the warranty are not actionable." (citation omitted)); *see also Brisson v. Ford Motor Co.*, 349 Fed. Appx. 433, 434 (11th Cir. 2009) (affirming dismissal of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period") (Florida law); *accord McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488-T-17EAJ, 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009) (holding that statute of limitations for warranty claim "cannot begin to run later than the expiration of the warranty as the warrantor did not expressly agree to provide warranty coverage beyond this date"); *Ocana v. Ford Motor Co*., 992 So. 2d 319, 324 (Fla. 3d DCA 2008) ("[T]here can be no cause of action for breach of an express limited warranty unless the

consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms.").

In the instant case, the Certificate of Occupancy was issued on June 30, 2006 [**Ex. E**]. Thus, the Limited Warranty expired by its very own terms, no later than June 30, 2007 (one year later). The Warranty Deed establishing conveyance of the home to Plaintiff was recorded on July 19, 2006 [**Ex. F**]. As such, the "Closing" for purposes of the Residential Warranty occurred, at the latest, on that date and, thus, the expiration of the one year Residential Warranty occurred no later than July 19, 2007. Plaintiff cannot (and has not) alleged that she experienced the defect alleged in the Omnibus Complaint within either of the applicable warranty periods, nor can she (or has she) alleged that she notified Woodland of such alleged defects (as required by the plain language of both Warranties) within the applicable warranty periods. As such, Plaintiffs express warranty claims must be dismissed as a matter of law. [8]

Moreover, to the extent that this Court finds that Plaintiff was in privity of contract with Woodland as to the Warranties (or even the Construction Agreement), then the contractual privity economic loss rule (ELR) bars Plaintiff from circumventing her contractual arrangements through allegations in tort. *See Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536, & n.1 (Fla. 2004).

The viability of the contractual privity economic loss rule to homeowners claims against homebuilders in connection with Chinese drywall has already been recognized in this MDL litigation. *See In re Chinese Manufactured Drywall Products Liability Litig.*, 680 F. Supp. 2d 780, 794 (E.D. La. 2010). In language that is directly on point here, this Court stated:

> In their capacity as defendants, whether the Homebuilders will be susceptible to Plaintiffs' tort claims for economic losses is determined by the contractual privity

---

[8]     Moreover, Plaintiff's demand for consequential or other incidental damages under Counts V and VI of the Omnibus Complaint must be dismissed because such damages are specifically excluded by the Warranties. *See* Limited Warranty, ¶8; Residential Warranty, ¶ 12.

ELR established by the Florida Supreme Court in *Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004). The contractual privity ELR provides that parties in privity in contract are barred from bringing a tort action for economic damages, unless the economic damage is a result of a tort committed independently of the contract breach, and in other limited circumstances. *Id*. at 536-37. The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing Chinese drywall. Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs.

*Id.*

Expanding on that same reasoning, in its Omnibus Order **[Ex. B]**, the Fifteenth Judicial Circuit Court in and for Palm Beach, Florida, <u>dismissed</u> all tort claims seeking economic damages (i.e., damages for inadequate value, cost of repair and replacement of defective products, lost profits, etc.) filed by Chinese drywall plaintiffs against homebuilders with whom they are in privity. Indeed, the Fifteenth Judicial Circuit held that "the [homeowners'] claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Supreme Court" in *Indemnity Ins.,* which states as follows:

A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principals are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract."

*See Indemnity Ins.,* 891 So. 2d *at* 536-537.

In the instant case, in order to avoid dismissal of their tort claims against Woodland, the economic loss rule requires the Plaintiffs to have alleged some *additional* conduct on the part of Woodland which amounts to an independent tort, arising from a duty separate and apart from Woodland's duties under the contract. *See Id.* at 537. Plaintiffs have failed to meet this burden.

Thus, to the extent that this Court finds that Plaintiff was in contractual privity (as a third party beneficiary) with Woodland with respect to the Warranties (or even the Construction Agreement), then the tort claims asserted by Plaintiff in the Omnibus Complaint are intercepted by

{FT778562;1}

(and must be dismissed because of) the contractual privity ELR, including her claims for Negligence (Count I), Negligence Per Se (Count II), Strict Liability (Count III), Private Nuisance (Count XI), Unjust Enrichment (Count XII) and Medical Monitoring (Count XIV), because "the alleged duty breached is derived from the contractual relationship" between the parties. *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1315 (S.D. Fla. 2002) (internal marks omitted).

> (ii). *The implied warranty claims asserted by Plaintiff are foreclosed by the plain language of the warranties themselves.*

Plaintiff's implied warranty claims must be dismissed as well because the Warranties expressly disclaim all such implied warranties. Indeed, the Limited Warranty states, in bold all capitalized letters that:

> There are no warranties that extend beyond the description of the face hereof. This Limited Warranty is the only expressed warranty given. This Limited Warranty is in lieu of all other warranties, express or implied, including but not limited to, implied warranties of fitness for a particular purpose, merchantability, or that the home will be constructed in accordance with the plans and specifications on file with any governmental authority, whether arising from custom, usage, course of trade, statutes, case law or otherwise, and shall be limited to the warranty periods set forth above. The undersigned disclaims any liability for incidental or consequential damages including, but not limited to, inability to possess the unit, inconvenience, storage costs, loss of time, personal injury, damage to improvements made by you, or any of your personal property.

*See* ¶ 8 of the Limited Warranty attached as Ex. C to the Construction Agreement [**Ex. D**].

> Likewise, the Residential Warranty, similarly states in bold capitalized letters that:

> This limited warranty is the only express warranty given by the undersigned warrantor. This limited express warranty is given in lieu of any other warranties, express or implied. Except for this limited warranty, the undersigned warrantor disclaims any and all implied warranties of merchantability and fitness, whether arising from custom, usage or trade, course of dealing, case law or otherwise. The undersigned warrantor disclaims any liability for incidental or consequential damages.

*See* ¶ 12 of the Residential Warranty attached to the Construction Agreement [**Ex. D**].

Contractual exclusions of implied warranties like the ones at bar are valid and enforceable under Florida law. *See Leasetec Corp. v. Orient Sys., Inc.*, 85 F. Supp. 2d 1310, 1315 (S.D. Fla. 1999) (recognizing enforceability of warranty disclaimers); *e.g., Belle Plaza Condo. Ass'n, Inc. v. B.C.E. Dev., Inc.*, 543 So. 2d 239, 240 (Fla. 3d DCA 1989) (condominium developer properly disclaimed any and all express and implied warranties); *Xerographic Supplies Corp. v. Hertz Commercial Leasing Corp.*, 386 So. 2d 299, 300 (Fla. 3d DCA 1980) (defendant could not be liable for breach of implied warranty because agreement disclaimed all implied warranties). As such, Plaintiff's implied warranty claims are without merit.

> (iii) *In any event, Plaintiff cannot maintain a claim for breach of warranty of merchantability or of fitness for a particular purpose.*

There are two more reasons to dismiss Plaintiff's implied warranty claims. First, as a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by Woodland. That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant." *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

Woodland is not bound by any implied warranties because it is not considered a merchant under Florida warranty law. Woodland contracts with its clients to provide a service: home construction. That is why the agreement between Woodland and Luv It Homes and Villas, LLC is called a "Construction Agreement" and not a "purchase agreement." Because the inclusion of drywall in Plaintiff's home was incidental to the construction services that Woodland rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in this circumstance. *See In re Sunshine-Jr.*, 240 B.R. at 794 ("[A]lthough construction contracts …

typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, the claim for implied warranty of fitness for a particular purpose (Cmplt. ¶ 79) cannot survive because Plaintiff has not – and indeed cannot – allege that the drywall in her property was unfit for a particular or unusual purpose different from that for which drywall is ordinarily used. The Court has already determined that "[t]he Chinese drywall stands just as any other functioning drywall, <u>serving its intended structural purpose</u>." *In re Chinese Manufactured Drywall Products Liability Litig.*, 680 F. Supp. 2d at 799 ("[T]he Chinese drywall in the instant matter is operating as intended[.]"). This adjudicated fact is, by itself, fatal to the claim for breach of the implied warranty of fitness for a particular purpose.[9]

### H.   Plaintiff Cannot State a Claim for Private Nuisance (Count XI).

The private nuisance claim (Count XI) would fail even if it were not barred by the economic loss rule. *See* Omnibus Order (**Ex. B**) (dismissing all plaintiffs' private nuisance claims against homebuilders because "neither [Florida] case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance").[10]   An action for private nuisance

---

[9]     *See Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding dismissal of particular purpose warranty claim where plaintiff did not "allege a particular or unusual use different from the purpose for which the item sold was ordinarily used"); *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

[10]     At least one other Florida court has expressly adopted the reasoning in *Bennett* and dismissed a private nuisance claim based on defective drywall for the same reason. *See* "Order on Defendant Banner Supply Company Port St. Lucie, LLC's Motion to Dismiss First Amended Class Action Complaint," at 2-3, *In re: Chinese Drywall Litig.*, No. 10- 28090 (Fla. 17th Jud. Cir. Feb. 4, 2011) ("This Court finds Judge Kelley's ruling [in *Bennett*] to be persuasive in his finding that neither the case law nor the policy

requires the claimant to establish an injury to his or her own property <u>in connection with the use of the real property of someone else</u>.  *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").

The Plaintiff, however, does not allege that her purported injuries resulted from real property owned by someone else.  To the contrary, the nuisance claim is predicated entirely on the allegation that certain conditions existing on the "structures owned by Plaintiffs" are to blame.  Cmplt. ¶ 137.  That allegation simply does not state a claim for private nuisance.  *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

**I.      Plaintiff Cannot Bring a Claim for Unjust Enrichment (Count XII).**

The elements of unjust enrichment are that "(1) <u>the plaintiff has conferred a benefit on the defendant</u>; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that <u>it would be inequitable for the defendant to retain the benefit</u> without paying fair value for it."  *Commerce Partnership 8098 Ltd. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

Plaintiff's unjust enrichment claim stumbles on the first and fourth of these elements.  The first element is not satisfied because the Plaintiff cannot show that she "conferred a benefit" on Woodland because Plaintiff did not pay Woodland a single dime to build her house, as she obtained

---

underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case.") (attached as **Exhibit G**).

the home from a third party.  *See* **Ex. D**.  The Plaintiff, in other words, did not "enrich" Woodland in any sense.

As to the fourth element of unjust enrichment, there is nothing inequitable or unjust about permitting Woodland to retain whatever benefit it received for constructing the Plaintiff's home because it cannot be disputed that Woodland paid a third party (i.e., a subcontractor or distributor) for the drywall in question.  As the Florida appellate court explained in *Maloney v. Therm Alum Industries, Corp.*, "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust.  Consequently, <u>if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit</u>." 636 So. 2d 767, 770 (Fla. 4th DCA 1994), *overruled on other grounds by*, *Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities).

Thus, not only is the Plaintiff's unjust enrichment claim barred because she did not "enrich" Woodland, her unjust enrichment claim is precluded because whatever compensation Woodland received for the drywall was not retained "unjustly."

**J**.    **The Omnibus Complaint Fails to State a Claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIII).**

In the overbroad style that is the hallmark of the Omnibus Complaint, Plaintiff also alleges a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*. ("FDUTPA").  Cmplt. ¶ 148.  A FDUTPA claim comprises three distinct elements:  (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages."  *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with particularity.").  "In light of this trend, <u>claims arising under the FDUTPA must be pled with particularity</u>."  *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).  At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard.  Indeed, it alleges <u>no specific facts</u> in support of Plaintiff's FDUTPA claim.  *See* Cmplt. ¶¶ 147-151.  It does not identify a single instance in which Woodland – by its words or conduct – deceived Plaintiff or treated her unfairly.  Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b).  *See Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[11]

---

[11]   Plaintiff's FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply.  A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly' and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc.*, No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

Plaintiff's failure, however, is not merely one of pleading.  Her FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to her.  *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury).  Because Woodland provided services – namely, the construction of a single home – Plaintiff can establish "actual damages" only by showing a difference between the "market value" of the services that Woodland actually provided and the services that Woodland was required to provide.[12]  *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties" (citations omitted)).

As a matter of law, Plaintiff cannot make this showing.  There is zero evidence – and Plaintiff does not appear to suggest – that the manner in which Woodland constructed the house was in any way responsible for the allegedly defective drywall.  The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose."  *In re Chinese Drywall*, 680 F. Supp. 2d at 792.

So, even if Plaintiff could conceivably replead her FDUTPA claim with the particularity demanded by Rule 9(b), she has no hope of establishing the "actual damages" component of her

---

[12]     The same would hold true if Woodland had delivered a "product" – *i.e.*, a completed home – rather than providing a "service."  To recover under FDUTPA, Plaintiff would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

claim.  Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction."  Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fl. 1995).  Count XIII must be dismissed for this reason as well.

**K.     Plaintiff's Claim for Equitable Relief and Medical Monitoring (Count XIV) Cannot go Forward against Woodland.**

Plaintiff's final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XIV).  This hybrid, catchall-type claim seeks, among other things, an order that Woodland "buy back or rescind" its contract and "create, fund, and support a medical monitoring program." Cmplt. ¶ 154.  This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based.  Since each of Plaintiff's substantive claims are due for dismissal, so too is her derivative claim for injunctive relief.  *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiff's substantive claims could survive dismissal and lend support to an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiff has failed to allege an inadequate legal remedy or irreparable harm.  Injunctions under both federal and Florida law require these elements.  *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and

(4) that the requested injunction would not be contrary to the interest of the public generally.")
(citation and internal marks omitted).  Plaintiff does not even attempt to explain how the legal
remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory
and statutory damages" – are inadequate and entitle her to the extraordinary remedy of an
injunction.  *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is
'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v.
Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiff's request for "medical monitoring," it is unclear whether Florida law
even permits this cause of action.  The Florida Supreme Court has not ruled on the issue, and only
the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly
recognized a right to medical monitoring.  It is hardly clear, then, that Plaintiff can pursue this
peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an
actionable claim.  At the very least, and as articulated by the Third District Court of Appeal in
*Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state
a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous
> substance; (3) caused by the defendant's negligence; (4) as a proximate result of the
> exposure, plaintiff has a significantly increased risk of contracting a serious latent
> disease; (5) a monitoring procedure exists that makes the early detection of the
> disease possible; (6) the prescribed monitoring regime is different from that normally
> recommended in the absence of the exposure; and (7) the prescribed monitoring
> regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999).  The injury in a medical monitoring case is defined as
the costs of periodic medical examinations necessary to detect the onset of physical harm.  *Id*.

The Omnibus Complaint does not even attempt to properly allege these elements.  Instead,
Count XIV sets forth a series of legal conclusions – *e.g.*, "Plaintiffs' and Class Members' exposures

were caused by the Defendant's negligent or otherwise tortious conduct" – without a shred of factual detail.  Plaintiff fails to identify, for example, any medical condition (latent or otherwise) supposedly caused by her drywall; nor does she identify a monitoring procedure for that supposed condition.  <u>Plaintiff does not even claim to be ill</u>.  She would have this Court speculate about her imaginary ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring.  It states a series of legal conclusions, and those obviously "do not suffice."  *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate).  The glaring deficiencies highlighted above make the final Count subject to dismissal now, on the pleadings. *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

## II. CONCLUSION

Woodland Enterprises, Inc. respectfully requests an order dismissing the claims asserted against it with prejudice, and awarding Woodland its attorneys' fees and costs in defending this action pursuant to Florida's Deceptive and Unfair Trade Practices Act.

Dated:  September 9, 2011

Respectfully submitted,

**AKERMAN SENTERFITT**

By: ___/s/ Stacy Bercun Bohm_____
Stacy Bercun Bohm (Fla. Bar No. 022462)
Valerie B. Greenberg. (Fla. Bar No. 26514)
Leslie Miller Tomczak (Fla. Bar No. 126489)
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, Florida 33301-2229
Telephone: (954) 463-2700
Telecopier: (954) 463-2224
Email:  stacy.bohm@akerman.com
        valerie.greenberg@akerman.com
        leslie.tomczak@akerman.com
**LEAD COUNSEL FOR DEFENDANT,**
**WOODLAND ENTERPRISES, INC.**

**PHELPS DUNBAR, LLP**

By: ___/s/ Brent B. Barriere___
Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La Bar No. 31309)
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
Email: Brent.barriere@phelps.com
        Susie.morgan@phelps.com
        Skylar.rosenbloom@phelps.com
**LOCAL COUNSEL FOR DEFENDANT,**
**WOODLAND ENTERPRISES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document and exhibits have been served on Plaintiffs' Liaison Counsel, Russ Herman, at Herman, Katz & Coltar, LLP, 820 O'Keefe Avenue., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, at Frilot, L.L.C., Suite 3700, 1100 Poydras Street, New Orleans, LA 70163 (kmiller@frilot.com) by U.S. Mail and e-mail <u>or</u> by hand delivery and email, <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 9th day of September, 2011.

_____/s/ Stacy Bercun Bohm_____