# EXHIBIT A



Mar 23 2011
11:58AM

### IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT
### IN AND FOR PALM BEACH COUNTY, FLORIDA

MARLENE BENNETT,                     CASE NO. 502009CA014458
                                     Civil Division "AA" Chinese Drywall
    Plaintiff,

vs.

CENTERLINE HOMES INC., et al.,

    Defendants.

_____/

### OMNIBUS ORDER ON PLAINTIFFS' NEGLIGENCE CLAIMS

The court has under consideration the homebuilder defendants' Omnibus Motion to Dismiss Plaintiff Homeowners' Negligence Claims. The installer and supplier defendants have each filed amicus briefs in support of the homebuilders' motion. The issue now before the court has been fully briefed, and was argued at the case management conference held on February 25, 2011. Having reviewed the submissions of the parties, and having heard the argument of counsel, the court makes the following findings.

The issue before the court is whether the plaintiffs can state a claim for negligence against any of the defendants (homebuilders, installers or suppliers). Each class of defendant argues that a claim sounding in negligence is not available to the plaintiffs as there was no duty to protect the plaintiffs from an unknown and unforeseeable harm. All parties concede that the issue of whether a duty exists in a negligence action is a question of law. *Michael & Phillip, Inc. v. Sierra*, 776 So.2d 294, 296 (Fla. 4th DCA 2000).

The court will first address whether there exists a general duty to inspect or test the Chinese manufactured drywall for a latent defect, or to warn homeowners of the existence of a latent defect in the drywall. It appears clear that such a duty does not exist here.

1

Florida law does not impose a duty to inspect a product for a latent defect, or to warn others about a latent defect, unless the product is inherently dangerous. *See Mendez v Honda Motor Co.*, 738 F.Supp. 481 (S.D. Fla. 1990); *K-Mart Corp. v. Chairs, Inc.*, 506 So.2d 7, 8 n. 3 (Fla. 5th DCA 1987) (retailers have no duty to inspect for latent defects.), *review denied*, 513 So.2d 1060 (Fla.1987); *Dayton Tire and Rubber Co. v. Davis*, 348 So.2d 575, 582 (Fla. 1st DCA 1977) (No duty to warn or inspect unless inherently dangerous.), *quashed on other grounds*, 358 So.2d 1339 (Fla.1978); *Odum v. Gulf Tire and Supply Company*, 196 F.Supp. 35 (N.D.Fla.1961).   A product is inherently dangerous if it is "burdened with a latent danger which derives from the very nature of the article itself." *Tampa Drug Co. v. Wait*, 103 So.2d 603, 608 (Fla.1958).   Chinese manufactured drywall, while apparently defective, cannot be categorized as inherently dangerous.

To the extent the plaintiffs seek to state a claim sounding in negligence based on a general duty to inspect, test or warn, such a claim is not available. However, this does not end the inquiry. The defendants, in any class, could be held liable in negligence if they had actual or implied notice of the defect in the Chinese manufactured drywall. *Carter v. Hector Supply Co.*, 128 So.2d 390, 392 (Fla. 1961); *Ryan v. Atlantic Fertilizer & Chemical Co.*, 515 So.2d 324, 326 (Fla. 3rd DCA 1987).

Notice must be determined on an individual, case by case, basis.   The court cannot, therefore, hold that all negligence claims are barred on an omnibus basis.   To the extent the plaintiffs can, in good faith, plead notice against an individual defendant in a specific case, such a claim will survive a motion to dismiss.

The court is cognizant of the fact that as to certain defendants, the plaintiffs have not pled notice.   If not amended, these claims will be dismissed.[1]   To the extent the plaintiffs have alleged notice in individual cases, negligence claims in these cases will survive dismissal at this stage.

Based on the foregoing, it is hereby,

ORDERED AND ADJUDGED that the defendants' omnibus motion to dismiss the plaintiffs' negligence claims is granted, in part, and denied, in part.  Any claim based on a general duty to test or inspect for, or to warn of, a latent defect in Chinese manufactured drywall will be dismissed.  Claims based on actual or implied notice of the defect will not be dismissed.  This order is being entered on an omnibus basis and will be applied to individual cases as required.

DONE AND ORDERED in Chambers, at West Palm Beach, Palm Beach County, Florida this 18th day of March, 2011

JUDGE GLENN D. KELLEY
CIRCUIT COURT JUDGE

Copies furnished to:

Plaintiffs' Liaison Counsel, C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134; Defendants' Liaison Counsel, Todd R. Ehrenreich, Esq. and Michael A. Sexton, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, FL 33133; and for distribution to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with the Electronic Service Order entered in this case.

---

[1] In such cases, the Plaintiffs will need to determine whether there is a good faith basis to allege notice.

3

# EXHIBIT B



34292782

Nov 10 2010
3:14PM

IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARLENE BENNETT,          CASE NO. 50 2009 CA 014458
                            Civil Division "AA" Chinese Drywall

      Plaintiff,

vs.

CENTERLINE HOMES INC., et al.,

      Defendants.

_____/

## OMNIBUS ORDER ON PENDING MOTIONS TO DISMISS

The Court has under consideration the following omnibus motions: 1) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Tort Claims Under the Economic Loss Rule and Claims for Private Nuisance (joined by the Albanese-Popkin defendants); 2) Banner Supply Company's Omnibus Opening Brief On Economic Loss Rule and Nuisance (joined by certain installer defendants); 3) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Strict Liability Claims. The omnibus motions now before the Court have been fully briefed, and were argued at scheduled case management conferences. Having reviewed the submissions of the parties, and having heard the argument of counsel, the Court makes the following findings.

### Economic Loss Rule

The first issue for consideration is the application of Florida's economic loss rule to the tort claims asserted by the homeowner plaintiffs. The Supreme Court discussed at length the origins and application of the economic loss rule in *Indemnity Insurance Company of North America v. American Aviation, Inc.*, 891 So.2d 532 (Fla. 2004).

1

The economic loss rule is a limitation on tort claims where the damages suffered are economic losses. Economic losses are defined as damages for inadequate value, costs of repair and replacement of defective products, or loss of profits. *Id.* at 536; *see also, Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.,* 620 So.2d 1244 (Fla. 1993). These damages are also described as the loss of the "benefit of the bargain" or "disappointed economic expectations." *Indemnity Insurance, id* at 536.

All of the parties here acknowledge that the economic loss rule would not bar a claim for personal injury caused by defective Chinese manufactured drywall. Therefore, to the extent that the plaintiff homeowners are suing in tort for personal injury, the economic loss rule does not apply and such claims are not subject to dismissal. The issue is whether- and to what extent - the economic loss rule bars the recovery of economic damages in the pending Chinese drywall cases.

The Supreme Court made clear in *Indemnity Insurance* that the economic loss rule applies in two distinct circumstances. First, the rule applies to parties in contractual privity for matters arising out of the contract. Second, the rule applies to liability for a defective product that causes damage to the product, but causes no personal injury or damage to other property. Both applications of the rule must be examined here.

1. Contractual Privity Economic Loss Rule

The defendant homebuilders assert that the plaintiff homeowners are barred from asserting tort claims for their economic losses based on the application of the contractual privity economic loss rule. The Court agrees.

The Supreme Court in *Indemnity Insurance* explained the rational for application of the contractual privity economic loss rule as follows:

2

A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. *Indemnity Insurance, id* at 536-537.

The plaintiffs' tort claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Supreme Court.

There are recognized exceptions to application of the contractual privity economic loss rule. Independent torts such as fraud in the inducement are not barred by the economic loss rule. *HTP, Ltd. v. Lineas Aereas Costarrricenses, S.A.*, 685 So.2d 1238 (Fla. 1996). Claims for negligence in rendering professional services are not barred. *Moransais v. Heathman*, 744 So.2d 973 (Fla. 1999). Likewise, statutory claims are not barred by the economic loss rule. *Comptech Intern, Inc. v. Milan Commerce Park, Ltd.*, 753 So.2d 1219 (Fla. 1999).

None of the recognized exceptions apply here.[1] The damages sought by the plaintiff homeowners arise out of the contracts they entered with the defendant homebuilders. Traditional contract damages must be applied to the economic losses suffered by the plaintiffs.

---

[1] It is clear that homeowners are not exempt from the application of the economic loss rule on public policy grounds. *Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1247 (Fla. 1993) (refusing to exempt homeowners from the economic loss rule despite their status as "an appealing, sympathetic class"). Moreover, the Court will not create an exception to the contractual privity economic loss rule based on an assertion that the drywall is an unreasonably dangerous product.

## 2. Products Liability Economic Loss Rule

The products liability economic loss rule applies in limited circumstances notwithstanding the absence of privity.   The rule applies when the product causes damage to itself, but causes no personal injury or damage to other property.   The issue here is whether the plaintiff homeowners' tort claims against the defendant suppliers and installers – who are not in privity with the plaintiffs - are barred by the economic loss rule.   The Court holds that such claims are not barred.

It appears clear from the Supreme Court's discussion in *Indemnity Insurance* that application of the products liability economic loss rule is limited.   That is to say, the Supreme Court made clear that the products liability economic loss rule should not be extended beyond its intended purpose, and the rule must only be applied in those limited circumstance where all elements necessary for its application have been satisfied.

The Court has considered the well-reasoned discussion of the economic loss rule in Judge Fallon's order in *In Re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780 (N.D. Louisiana 2010).   Judge Fallon traces the origins and history of the rule in Florida (and elsewhere) and discusses the application of the economic loss rule to non-privity defendants in the multi-district Chinese drywall litigation.

It is not necessary to repeat here the analysis of Judge Fallon in considering the application of the economic loss rule to non-privity defendants.   However, the Court will briefly address Judge Fallon's conclusion – a conclusion which this Court adopts.

Judge Fallon essentially concludes that the Chinese drywall at issue here presents a unique factual scenario that does implicate the products liability economic loss rule at

4

all. The factual distinction lies in the nature of the alleged defect and its impact, or lack thereof, on the product itself.

In cases like *Casa Clara*, the defect in the product damaged the product itself. The defect in the concrete caused the concrete to fail and, presumably, to damage other components of the home. Here, the alleged defect does not damage or affect the product (Chinese manufactured drywall) at all.

In defining the application of the products liability economic loss rule, the Supreme Court has stated that the rule is implicated where "there is a defect in a product that *causes damage to the product*, but causes no personal injury or damage to other property." *Indemnity Insurance, id.* 536 [emphasis added]. Here the alleged defect causes *no damage to the product* and causes *only* personal injury or damage to other property. Under such unique circumstances, the Court agrees that the products liability economic loss rule does not apply.

<u>Private Nuisance</u>

The Court will next consider whether plaintiff can state a claim for private nuisance based on the allegation that the Chinese manufactured drywall is off-gassing causing a nuisance within the effected homes. All defendants assert that the claim for private nuisance under such circumstances cannot be asserted. The Court agrees with the defendants.

Florida law essentially defines nuisance as:

using one's property as to injure the land or some incorporeal right of one's neighbor... The law of nuisance plays between two antithetical extremes: The principle that every person is entitled to use his property for any purpose that he sees fit, and the opposing principle that everyone is bound to use his property in such a manner as not to injure the property or rights of his neighbor... The law of private nuisance is a law of degree; it

generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances.

*Beckman v. Marshall*, 85 So. 2d 552, 554-55 (Fla. 1956) (approving and adopting the language of *Antonik v. Chamberlain*, 78 N.E.2d 752 (Ohio Ct. App., 1947).

Plaintiffs assert that there is no exhaustive definition of what constitutes a nuisance citing *Windward Marina, L.L.C. v. City of Destin*, 743 So. 2d 635 (Fla. 1st DCA 1999). While this may be true, Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("This court recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another") (citing *Reaver v. Martin Theatres of Florida, Inc.*, 52 So. 2d 682 (Fla. 1951). It seems clear that the underlying policy of private nuisance jurisprudence does not support the plaintiffs' application of the doctrine of private nuisance in this case.

Plaintiffs rely heavily on the four-part test for proving the existence of a private nuisance purportedly established by the Court in *Beckman*. According to the plaintiffs, none of the four components makes any mention of a requirement that a private nuisance must involve two landowners. However, such a roadmap for establishing a private nuisance is neither expressed nor implied by the Court in *Beckman*.

In fact, much of the instructive language in *Beckman* seems to contradict the plaintiffs' position that nuisance actions do not necessarily involve contemporaneous and proximate private land owners. *Beckman, id* at 555 ("no one has absolute freedom in the

use of his property, because he must be restrained in his use by the existence of equal rights of his neighbor to the use of his property."). *Id.*

Further, none of the cases plaintiffs rely on directly support the contention that a nuisance may exist absent a defendant's exercise of its property rights. *See, e.g., Davey Compressor Co. v. City of Delray Beach*, 639 So. 2d 595 (Fla. 1994) (holding that a defendant who illegally disposed of a highly toxic solvent by dumping it onto the grounds at the rear of its facility created a nuisance because it contaminated plaintiff's water supply); *Kotcher v. Santaniello*, 438 So. 2d 440, 441 (Fla. 1983) (declining to reverse an injunctive order which was "principally predicated upon a determination that the appellants' conduct in keeping and training dogs for attack and security purposes constituted a nuisance in the residential neighborhood where all of the parties resided").

The only case which arguably supports plaintiffs' position, *Putnam v. Roudebush*, 352 So. 2d 908 (Fla. 2d DCA 1977), held that a noisy air conditioner was a "continuing nuisance" that constituted a "permanent defect in the realty." However, private nuisance was not even a claim in the *Putnam* case. The Court's reference to the air conditioning being a nuisance was merely a descriptive reference, and not a statement of a legal claim.

Taken together, neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case. The Court concludes that plaintiffs' claims for private nuisance must be dismissed.

## Strict Liability

The defendant homebuilders have moved to dismiss the plaintiffs' strict liability claims. The homebuilders advance two grounds for dismissal. First, the homebuilder defendants assert that only manufacturers of the product and those in the chain of

distribution can be held strictly liable and they are neither.   Second, the defendant homebuilders assert that strict liability does not apply to improvements to real property. The Court will begin with the homebuilders' second argument.

The law in Florida appears to be well settled that strict liability does not apply to improvements to real property as improvements to real property are not considered products.   *Plaza v. Fisher Development, Inc.*, 971 So.2d 918 (Fla. 3rd DCA 2007); *Neumann v. Davis Water & Waste, Inc.*, 433 So. 2d 559 ( Fla. 2d DCA 1983) *see Easterday v. Masiello*, 518 So.2d 260, 261 (Fla.1988) ("[I]t has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate."); *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1291 (Fla. 5th DCA 1986).

Plaintiffs argue that an exception exists with respect to improvements to real property "where the injuries result not from the real property as improved by the alleged defective product but directly from a defective product manufactured by defendant, which product may have itself been incorporated into the improvement of the realty before the injury from the product occurred." *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1292 (Fla. 5th DCA 1986); *Craft v. Wet 'N Wild, Inc.*, 489 So.2d 1221, 1222 (Fla. 5th DCA 1986).   Plaintiffs conceded at oral argument that this exception has never been applied in a reported Florida case.  Indeed, the exception appears to be *dicta* in the cases that mention it.

Whether the exception advanced by the plaintiffs exists or not, it does not appear that the exception would apply to the defendant homebuilders in this case.    The exception appears to apply to the manufacturer of an allegedly defective product which

happens to be incorporated into the real property.    The defendant homebuilders did not manufacture the drywall at issue.

The defendant homebuilders also argue that only manufacturers, and those in the distributive chain of a product, can be held strictly liable. Defendant homebuilders assert that they are not manufacturers and they are not within the distribution chain of the drywall at issue. While the plaintiffs argue otherwise, the Court finds that the defendant homeowners' position has merit.

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that the plaintiff homeowners' tort claims against the defendant homeowners seeking economic losses are dismissed based on the privity economic loss rule. The request of the defendant suppliers and installers (who lack privity with the plaintiffs) to dismiss the plaintiffs' tort claims based on the products liability economic loss rule is denied.   The plaintiffs' claim for private nuisance against all defendants is dismissed. Likewise, the plaintiffs' claims for strict liability against the homebuilder defendants are dismissed.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida this 5 day of November, 2010.

~Kelly

JUDGE GLENN D. KELLEY

CIRCUIT COURT JUDGE

Copies furnished to:

Plaintiffs' Liaison Counsel, C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134; Defendants' Liaison Counsel, Todd R. Ehrenreich, Esq. and Michael A. Sexton, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, FL 33133; and for distribution to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with the Electronic Service Order entered in this case.

# EXHIBIT C

IN THE CIRCUIT COURT OF THE 19TH
JUDICIAL CIRCUIT IN AND FOR
ST. LUCIE COUNTY, FLORIDA.

CASE NO. 562010CA001463

SURESH and OMA BISSOON,

    Plaintiffs,

v.

CENTERLINE HOMES CONSTRUCTION, INC.,
a Florida corporation; CENTERLINE PORT ST.
LUCIE LTD., a Florida Limited Partnership;
OCEAN COAST DRYWALL, INC., a Florida
Corporation; and BANNER SUPPLY COMPANY
PORT SAINT LUCIE, LLC, a Florida Limited
Liability Company,

    Defendants,

_____/

### ORDER ON DEFENDANTS', CENTERLINE PORT ST. LUCIE, LTD., AND CENTERLINE HOMES CONSTRUCTION, INC.'s MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

THIS CAUSE, having come before the Court upon Defendants', Centerline Port St. Lucie

Ltd and Centerline Homes Construction, Inc.'s, Motion to Dismiss Plaintiffs' Second Amended

Complaint,  and the Court having heard argument of counsel and being otherwise advised in

the premises, it is hereupon,

    ORDERED and ADJUDGED that said motion be and the same is hereby granted in that

although Plaintiff's strict liability claims do allege defective product distribution, permanent

Br

Improvements to real property are not products for purposes of products strict liability actions.

These claims are dismissed.

Likewise the motion is granted because Plaintiff's private insurance claims do not state a

cause of action against these defendants. These claims are also dismissed.

The motion is otherwise denied.

These defendants are permitted twenty (20) days to answer the Complaint.

DONE AND ORDERED in Chambers at Fort Pierce, Saint Lucie County, Florida this

24th day of March, 2011.

DWIGHT L. GEIGER, Circuit Judge

Copies furnished:
Vanessa M. Serrano, Esquire
C. David Durkee, Esquire

# EXHIBIT D

Contractor's License #
CRC018069

## CONSTRUCTION AGREEMENT

THIS AGREEMENT made this the ___ day of February 23, 2005 by and between WOODLAND ENTERPRISES, INC., (hereinafter referred to as "Contractor") whose address is 15592 Jupiter Farms Road and Luv-It Homes and Villas, LLC. (hereinafter referred to as "Purchaser") whose address is _1230 W. Indian Pl._ Phone _561 946-3191_ _Jupiter fl 33458_

### WITNESSETH

CONTRACTOR and Purchaser for good and valuable consideration as hereinafter set forth do mutually agree as follows:

1. **SCOPE OF WORK:** Contractor agrees to furnish all materials, labor, building permit and services necessary to construct a single family residence on the property described in Paragraph 2 below and agrees to build and construct said residence in a workman like manner in accordance with all applicable building codes and in substantial compliance with those plans and specifications.

2. **CONSTRUCTION LOCATION:** The Contractor agrees to construct said residence upon the property legally described as follows: Lot 243, Mitchell Street, Limestone Creek, Jupiter.

2a. **STRUCTURE TO BE BUILT:** Custom plan, total sq. ft. 1,509; dated 10/14/04.

3. **PAYMENT:** The total purchase price for the subject single family residence described above, including improvements, selected options, limited fill and lot prep as set forth herein shall be:

| | |
|---|---|
| Basic Price Of House | $102,900.00 |
| Lot Preparation Allowance | $  4,000.00 |
| Cost Of Lot (If Applicable) | $   N/A |
| Total Purchase Price | $106,900.00 |
| Deposit Due Upon Execution Of Contract | $  5,345.00 |
| Additional Deposit Due Upon Construction Mortgage Closing | $ 5 %, plus impact and permit fees |
| Balance Of Contract Due In Accordance With Draw Schedule Set Forth In Paragraph 6. | $ |

**SELECTED OPTIONS AND COSTS THEREOF ARE AS FOLLOWS:**

**\* The above selected options supersede the standard specifications listed on pages 10 and 11 (where applicable).**

Any options or extras not mentioned above shall be at an additional cost and shall be paid in accordance with the terms set forth below.

4. **FINANCING:** If the Purchase price or any part of it is to be financed by a third party loan, this Contract is conditioned upon Purchaser obtaining a written commitment for a construction

1

Initials _____ / _____

loan within _____ days from the date hereof, for a fixed or
adjustable rate loan, for the principle amount of _____
($_____) at the prevailing interest rate. Purchaser agrees to make application within five (5)
days of executing this agreement and use reasonable diligence to obtain said Commitment and
thereafter, to satisfy the terms and conditions of the commitment and close the loan. Purchaser
shall pay all loan expenses. If Purchaser fails to obtain the commitment or fails to waive his
rights under this subparagraph within the time for obtaining the commitment, or after diligent
effort fails to meet the terms and the conditions of the commitment, then either party by written
notice to the other, may cancel this agreement

    a.    Upon written notification that the Purchaser has obtained a firm Commitment for
the construction loan, satisfactory to Contractor, providing that
Purchaser has paid all deposits required under this Contract, and further provided that
the Purchaser has approved the plans and specifications, Contractor will: Secure all
required building permits; and construction will commence.

    b.    In the event the Purchaser through no fault of its own fails to obtain a firm
commitment for a construction within the time provided, Contractor shall return to
Purchaser all deposits paid under the Contract, less any actual expenses incurred by
the Contractor, in which event the Contract shall be null and void and both parties
released of all further liability hereunder. If Purchaser intentionally or negligently fails
and refuses to obtain a firm commitment for a construction loan within the time provided
or fails to pay all deposits due under this Agreement, the Contractor may at its discretion
retain all deposits received as liquidated damages.

5.    **START OF CONSTRUCTION:** Having commenced construction, Contractor will
complete same as expediently as conditions will permit. Delivery date shall be approximately
100 working days after the slab is poured. Contractor will not be held in default by any delay
caused by circumstances not within the Contractors control. Purchaser expressly agrees that
Contractor will not be responsible for any loss, damage, expenses or inconvenience alleged to
have been incurred or sustained by Purchaser directly or indirectly as a result of delayed
completion of the proposed improvements and delivery to the Purchaser.

6.    **DRAW SCHEDULE:** See Exhibit "A" attached hereto. If this construction is being
financed by a 3rd Party Loan, this Contract is expressly conditioned upon Contractor's approval
of the Lender's Draw Schedule. If Contractor is not satisfied it may terminate this Contract, and
return Purchaser's Deposit, less Contractor's out of pocket expenses up to the time of
termination.

7.    **POSSESSION:** It is acknowledged by the parties hereto that Contractor and its
agents have exclusive possession of the premises during construction, in order to minimize the
risk of loss to Purchaser and to maximize performance Of the Contractor's employees and
subcontractors. Therefore, Purchaser may enter the premises during the construction period at
their own risk. Contractor shall deliver possession of the premises at completion of the
residence in accordance with the terms of this agreement and upon payment in full of the
Contract sum plus all work change orders. Final inspection by the building department or
building inspector having jurisdiction and the issuance of the Certificate of Occupancy or
Certificate of Completion shall be deemed substantial Completion of all improvements.
Purchaser shall sign affidavit guaranteeing payment prior to purchaser's customer moving into
home.

8.    **HEALTH PERMITS:** Contractor is hereby authorized to take all necessary action
to make application for a permit from the County Health Department having jurisdiction of said
property to install a septic system in the above described real property (if a septic system is
applicable). Said application generally requires an engineering survey, a 6 ft. deep hole and an
application fee, all of which costs approximately _____. The Purchaser as described above
shall pay cost of the Health Permit in the event the Contract is canceled prior to construction

Initials _____

beginning.

9.    **WELL WATER**:  If the premises described herein shall not be served by a public water supply, Contractor shall provide Purchaser a well, including casing up to 60 feet deep, pump and all required pipe so as to flow sufficient fresh water to serve the premises, However, the Contractor makes no warranties, expressly or implied as to the quality of the water supplied which will be provided, and specifically said quality is not! represented to be potable or otherwise suitable for drinking, nor is the quality of said water provided warranted, express or implied to meet the limitations or standards for drinking water as set forth by the United States Public Service, the State of Florida Department of Heath & Rehabilitative Services, any County Department of Health, or those of any other agency or branch of the United States, State of Florida or County having jurisdiction over said property, or any other governmental authority claiming jurisdiction over the property described herein.

10.    **SUBSTITUTION & CHANGES**:  Contractor shall have the right to substitute building materials, appliances and fixtures of other like kind, quality and to make minor structural changes in keeping with all applicable building codes and on the basis of good design standards. Except for the right of Contractor to make such substitution, there shall be no changes or variance from the referenced drawings and specifications and selection sheet except as specifically provided herein.

     A.    **CONDITIONS FOR CHANGES**:

         1.    The home will be built substantially in accordance with the plans and specifications referred to above and will incorporate all options selected and  shown on this Contract and Addendum hereto. Any deviations must be acknowledged in writing by the Contractor. If any changes are made after execution of this agreement which effect if the price herein agreed to, Purchaser will be charged a minimum of $20.00 for each change made to cover processing and documentation costs for said change in addition to any charges incurred as a result of the change requested. The Purchaser must pay the cost of the change in full at the time the change work order is executed.

         2.    Contractor will clear the lot of all small growth such as Palmettos in an area consisting of not more than _____ sq. ft. If a larger area is to be cleared such will be done on a cost bid basis by  contractor and will be treated as a price change request under subparagraph "A (1 )" above.

         3.    Any change that requires extensions of time will be addressed at that change.

     B.    All trees will be removed that are within 5 feet of the house or in the driveway or walks, or in the direct path of water, sewer or septic tank area, electric lines or in a future drainage swale on the side of the house. Contractor and Purchaser will arrange a meeting to discuss tree removal prior to the start of the construction.

     Contractor will not be required to remove trees for the Purchasers convenience or remove trees outside the area affected by construction.

     C.    Contractor does not guarantee the life or growth of any tree.

11.    **FINAL GRADING**:    Purchaser recognizes that the County Health Department dictates the elevation at which the sewer invert leaves the foundation and also the lot drainage plan; and that the Building Department having jurisdiction of the construction dictates the elevation at which the culvert height must be set. Contractor must comply with the elevations as directed.  Purchaser understands that such requirements determine the floor of the house and

Initials _____ / _____

driveway elevations. Contractor will provide limited fill and limited grading of the lot to comply with elevation and drainage plans as established by local governing authorities. See paragraph 12 for Contractor's allowance.

12. **FILL, GRADING & CLEARING ALLOWANCE:** Contractor has allowed a total of $4,000.00 for clearing (clearing consists of brush and tree removal within five feet of house), grading, fill dirt, house pad, septic sand, culvert and compaction.

The following tree species must be eradicated from site prior to certificate of occupancy: A. Melaleuca, B. Brazilian Pepper, C. Australian Pine, D. Earleaf Acacia**. Should additional cost be incurred for removal of these species, customer shall be responsible for said cost. If additional trees must be purchased for lot to meet county codes, cost of same shall be the responsibility of customer. Lot prep is allowance only: Due to Building and Health Dept. changing elevations and standing water regulations, an exact elevation cannot be determined at this time. Any additional costs incurred for fill, customer agrees to pay out-of-pocket. Any amount above this will be paid by the Purchaser as an extra, prior to the additional clearing, grading and/or fill being provided.

13. **SOD:** Upon completion of the construction, driveway and grade established. Contractor will provide and install floritam sod to cover lot. It shall be the Purchasers responsibility to water, maintain and establish the lawn growth. Contractor does not guarantee the life or growth of the sod.

14. **LOT BOUNDARIES:** Purchaser shall at his/her expense supply a survey showing the dimension of the lot and approximate location of the house on the lot and septic locations.

15. **FINAL PAYMENT:** Final Payment shall be due when the Certificate of Occupancy or Certificate of Completion is issued by the applicable building department.

16. **LIMITED WARRANTY:** See attached Exhibit "C".

17. **EXECUTION:** If the parties do not execute this agreement simultaneously, then the party who has not signed shall have 72 hours with which to sign this contract or this Contract can be declared null and void by notification in writing to the party who has not executed the Contract. Time shall be of the essence of this Contract.

18. **ANTICIPATORY BREACH:** If Purchaser, before Contractor starts construction, without legal excuse, attempts to breach this Contract and prevent Contractor from beginning construction of said residence, the Contractor shall be reimbursed by the Purchaser for the actual expense incurred up to the time of the breach.

19. **GOVERNING LAW:** This Contract shall be construed in accordance with the laws of the State of Florida and venue shall be deemed proper in Palm Beach County, Florida.

20. **UNUSUAL FORMATIONS:** The Contractor reserves the right to cancel this contract and refund all monies in the event any geological or physical formations make it impractical or impossible to construct the type of house selected on the real property referred to above. Unusual formations shall include but not be limited to muck and shell rock. Contractor may at its option continue with this Contract where owners execute a work change order contemplating rectifying the unusual formation problem and agreeing to pay Contractor for the cost thereof.

21. **RADON GAS:** Radon is a naturally occurring radioactive gas, that when accumulated in a building in sufficient quantities, may present health risk the persons who are exposed to it over time. Levels of Radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding Radon and Radon testing may be obtained from your County Public Health Unit.

4

Initials _____

22.   **ENTIRE AGREEMENT**: It is understood by and between the parties hereto that this Contract including the plans, specifications, selection sheets referred to above and any addendum to the contract which have been signed by the parties, contain all terms and conditions agreed upon between the parties, there being no oral conditions, representations, warranties or any other agreement made by the Contractor or any agent of the Contractor not contained herein. Any subsequent conditions, representations or warranties or other agreements shall not be valid and binding upon the parties hereto unless made in writing and signed by both Purchaser and Contractor. Any representations made by any Realtor or any other agent of any Realtor is in no way binding upon the Contractor.

23.   **REALTOR**:   The parties agree that no real estate broker or salesmen was involved in the formation of this agreement and if any claim is made by the aforesaid individuals the Purchasers shall be fully responsible and indemnify the Contractor for any commissions claimed.

24.   **TIME**: Time is of the essence in this Contract.

25.   **PAYMENT DIRECTLY TO CONTRACTOR**: If any of the Construction funds concerning this project are supplied by a third party lender, Purchasers agree to execute any and all documents that authorize the lending institution to make all construction draw checks payable directly and solely to Contractor after each phase of completion and a favorable inspection by the lending institution and Luv-it Homes, LLC and Villas, without any further written authorization by the Purchasers.

26.   **ATTORNEYS FEES**: In the event of litigation or binding arbitration, to enforce the terms of this agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs incurred.

27.   **RIGHT TO RECORD AGREEMENT**: Purchaser specifically gives the Contractor the right to file in the Public Records all documents referred to herein in this Agreement.

28.   **PUNCH LIST ITEMS**: The fact that there may be items to be corrected or completed as listed on a punch list will prevent release of the final draw if a Certificate of Occupancy or Certificate of Completion has been issued. Purchaser shall not be entitled to possession until Purchaser, or his authorized agent shall have inspected the residence in the company of an authorized representative of the Contractor for the purpose of specifying complaints concerning the physical condition of the residence.   Upon punch list being completed and approved by purchaser, final payment shall be made within 5 days.

29.   **NOTICES**:  Whenever any notice to Purchaser is required same may be either delivered or mailed by Certified Mail, addressed to Purchaser, at the address set forth in this Agreement. Whenever notice to Contractor is required the same shall be mailed by Certified Mail to Contractor addressed to Contractor at its address set forth in this Agreement. All notices shall be deemed and considered delivered when mailed as herein provided.

30.   **CAPTIONS**:   The titles of various paragraphs of this Agreement are for the convenience and reference only and in no way define, limited, effect or describe the scope of the paragraph.

31.   **REPRESENTATIONS**: Purchaser represents that he has not relied upon any statement, verbal, or written published by or under the authority of Contractor in any advertising and promotional matter, not limited to brochures, newspaper or radio or television advertisements, but has based his decision on personal investigation, observation and the materials provided herewith. Changes or amendments to the residence, including but not limited to the plans, specifications, equipment and legal description of lot may be made from time to time which do not materially effect the rights of the Contractor, the value of the residence, without the approval of the Purchaser. Such changes or amendments, which do not materially

Initials _____ / _____

affect the rights and liabilities of the Parties of this agreement, shall not be a cause or reason for termination or rescission by any party.

32.　**FEES AND ASSESSMENTS:** Buyer is responsible for any and all Federal, State, Municipal, city or town fees and assessments pertaining to sewer, water, gas, electric, storm drainage, impact and homeowners association related costs.

33.　**SELECTIONS:** Purchaser agrees to promptly make any color or optional item selections from choices provided by Contractor. Any selection shall be final, unless the selection becomes unavailable to Contractor and Contractor requests Purchaser to make an alternate selection. If Purchaser fails to make any selection within 10 days after Contractors request to do so, then Contractor may at its option, make the selection on Purchasers behalf, without further notice and such selection shall be binding upon Purchaser. In connection with texture of furnished materials, Purchaser recognizes that the color and texture of it are not always true and therefore, Contractor shall not be responsible or liable for any variation thereof.

34.　**CHANGES IN CODE:** Any additional costs for labor, services and materials required by the building, zoning, health department and/or other governmental authority through a change in the code shall be the responsibility of the Purchaser.

35.　**THE RISK OF LOSS:** Any loss and/or damage to said residence including but not limited to fire, theft, vandalism, rain, wind or any act of nature shall be borne solely by the Purchaser, once product has been installed.

36.　**BINDING EFFECT:** The parties expressly agree that this contract shall be binding upon their respective heirs, administrators and/or assigns.

37.　**ASSIGNMENT:** The Purchaser may not assign This Agreement without the prior written consent of the Contractor.

'38.　**SEVERABILITY:** The provisions of this Agreement shall be deemed severable, and the invalidity or enforceability of anyone or more of the provisions of this Agreement shall not affect the validity and enforceability of the other provisions.

39.　**VENUE:** Venue for all litigation shall be in Palm Beach County, Florida, unless otherwise dictated by Statute.

40.　**MATERIALS:** All materials will be provided by Woodland Enterprises, Inc. or their approved suppliers.

41.　**ELECTRICAL DISCONNECT CHARGE:** A charge of four hundred ($400.00) dollars will be required if electrical panel cannot be placed back-to-back with Florida Power and Light's electrical service.

42.　**COSTS:** Labor and material costs for construction of this home/improvement are based on current known costs and building codes. Additional costs, in excess of 3% incurred through national emergency, acts of nature, or price increases over which Contractor has no control shall be the responsibility of Owner.

43.　**WOOD/ LAMINATE FLOORING:** Woodland Enterprises, Inc. is not responsible for floor preparation needed to install wood or laminate flooring. There will be an additional charge if purchaser requests the baseboard be installed after the wood/laminate to cover painting and possible caulking of baseboard to the wood/laminate floor. Woodland Enterprises, Inc. is not responsible for damage to flooring should the purchaser take the responsibility to provide the flooring. Furthermore, wood/laminate flooring will increase the construction time of your home.

Initials 

44. **PUMPS:** If Woodland Enterprises, Inc. cannot gain enough access for concrete trucks to pour concrete and a boom pump is required, the purchaser agrees to cover such costs.

45. **SEPTIC SYSTEMS:** Information concerning the proper use and maintenance of your septic system is included in purchaser warranty package. The care of the system lies solely with the Owners. Woodland Enterprises, Inc. warrants that the soil and installation of the septic system meet code. No other warranties are expressed or implied by Woodland Enterprises, Inc.

Initials

## NOTICE TO PURCHASER:

THE BUYER OF A ONE FAMILY RESIDENTIAL DWELLING UNIT HAS THE RIGHT TO HAVE ALL DEPOSIT FUNDS (UP TO 10% OF THE PURCHASE PRICE) DEPOSITED IN AN INTEREST BEARING ESCROW ACCOUNT. THE BUYER MAY WAIVE THIS RIGHT IN WRITING.

I understand that I may request to escrow all deposits (up to 10% of the purchase price). As provided in the State Escrow Law, Section 501.1375, Florida Statutes. I further understand that if I require the funds to be held in escrow, you may charge me the cost of a premium for surety bond, or may charge me the interest that you pay to borrow money in the amount equal to the funds held in the escrow account. Such additional charges for placing the deposit escrow will be paid by me at closing.

ANY PAYMENT IN EXCESS OF 10% OF THE PURCHASE PRICE PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAYBE USED FOR CONSTRUCTION PURPOSES.

## PLEASE CHECK AN OPTION:

✓        We the undersigned Purchasers hereby waive our right to have our money held in an interest bearing escrow account as allowed by law.

_____ Initials                _____ Initials

_____        We the undersigned Purchasers request our deposit monies be held in an interest bearing escrow account, with interest to be paid to the Contractor.

_____ Initials                _____ Initials

8

Initials  _____

## NOTICE TO PURCHASER:

In accordance with Florida Statute section 489.1425 Contractor hereby gives Notice to Purchaser of the CONSTRUCTION INDUSTRY RECOVERY FUND.

PAYMENT MAY BE AVAILABLE FROM THE CONSTRUCTION INDUSTRY RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A STATE LICENCED CONTRACTOR. FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONT ACT THE FLORIDA CONSTRUCTION INDUSTRY LICENCING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS:

> CONSTRUCTION INDUSTRY LICENSING BOARD
> 7960 ARLINGTON EXPRESSWAY, SUITE 300
> JACKSONVILLE, FL 32211
>
> TELE: 904-727 6630

In witness whereof the parties hereto set their hand and seals as of the day and year indicated below:

WITNESS:

_____      By: _____ _____
                                 Contractor          Date

_____      _____ _____
                                 Purchaser           Date

_____      _____ _____
                                 Purchaser           Date

## WOODLAND ENTERPRISES, INC.
### SPECIFICATIONS FOR LUV-IT HOMES, LLC. AND VILLAS

### STANDARD FEATURES INCLUDE:
One year full service builders warranty
Impact fees at date of signing
Permits
40 year dimensional asphalt fiberglass roof shingles

### CONSTRUCTION FEATURES INCLUDE:
Concrete block and steel construction
Steel reinforced monolithic slab with stucco finish
Subterranean soil treatment
Renewable termite bond
Hurricane resistant engineered roof trusses
5/8" CDX plywood roofing
Wire lath and stucco soffits and lanai ceilings
Truss covered porches/entries (per plan)
Interior metal 16" O.C. studs
Steel garage door with hurricane bracing
Steel foam filled exterior doors
Plumbing: Copper water lines and PVC Drains

### DESIGN FEATURES INCLUDE:
Aladdin "Commander" soil resistant carpeting
3 ¼" Colonial fingerjoint baseboards painted white and installed before flooring
2 ¼" fingerjoint casings painted white
Hollow core masonite 6 panel colonist interior doors painted white
Hollow core masonite raised panel interior bi-fold closet doors painted white
Vinyl coated ventilated shelving: 1 shelf -clothes and 4 shelves - linen
Knockdown finish on ceilings with 5/8" drywall
Knockdown finish on walls
Interior walls painted white with one coat orange peel and one coat latex paint (Sherwin
Williams Pro Mar 400 flat latex)
Marble carrara window sills (white and grey)
White single hung windows with white trim (screens included)
Tempered sliding glass doors (per plan)
Kwikset "Tylo" knobs in antique brass finish for interior/exterior hardware
Stucco banding and quoins are optional
Inside garage walls are skim coated with stucco
Interior trim painted white w/ 2 coats semi gloss latex paint (Colorwheel: 360 optima)

### KITCHEN AND BATH FEATURES INCLUDE:
Ceramic tile on kitchen and bathroom floors
Ceramic Tile 3' high in baths outside of wet area (selected from Firenze Series, Kiel
Series or 6 x 6 glossy white) (except, master closet to be carpeted)
Kenmore 21' cubic refrigerator with ice maker
Automatic dishwasher
Smooth top electric range with self-clean oven
1 mirrored medicine cabinet in each bathroom

10

Initials  _____

## *WOODLAND ENTERPRISES, INC.*
## *SPECIFICATIONS FOR THE LUV-IT HOMES, LLC. AND VILLAS*

Flat panel oak cabinets in kitchen and baths
30" uppers in kitchen, standard height vanities (31"/30" depending on cabinet line)
Double compartment cast iron kitchen sink in white
Mica countertops in kitchen w/ 4"backsplash
Cultured marble vanity tops
5 shelf linen closets (per plan)
Built-in pantry (per plan)
Universal-Rundle elongated water saver toilets in white or bone (UR4196)
Universal-Rundle enamel steel tubs in white or bone
Recessed 'no drip' washer connection
Vented exhaust fans to exterior
Ceramic tile in wet areas of bath only to be installed to ceiling (selected from Firenze
Series, Kiel Series or 6 x 6 glossy white)
Floor tile to be selected from Woodland standard selections
Moen Chrome Chateau 7442, 4621, 2352, 2353, 6980 faucets (per plan)
Full width mirrors over vanities 40" high

### TOTAL ENERGY SAVING PACKAGE:
10 seer high efficiency central air conditioning system or per "J" Manuel
Foil R-4 insulation in exterior walls of living area
R-19 insulation in living area ceilings
40 gallon quick-recovery hot water heater
Insulated attic air conditioning duct
Energy efficient attic ventilation
Exterior exhausted vents and dryer vent

### ELECTRICAL FEATURES INCLUDE:
3 GFI weatherproof exterior outlets
Ground fault receptacles in kitchen and baths
Prewired for garage door opener
Pre-wired for 1 TV and 1 phone outlet in all rooms except baths
150 amp electrical service
All copper electrical wiring
White outlet covers / Door Chime
Ceiling fan pre-wire in bedrooms and family room
Smoke detectors (per code)
220 volt dryer outlet
Standard electrical switches in white
3 exterior coach lights (fixtures included)
2 vanity strip lights (fixtures included)
1 foyer light (fixture included)
4 – 4' fluorescent lights (fixtures included)
1 chandelier (fixture included)

11

Initials _____

**EXTERIOR FEATURES INCLUDE:**
Floritam sod to cover lot
3 palms, 25 plants, and mulch
Slab for A/C and pump (3' x 4' each) / 9 x 50 Concrete parking pad
3 exterior hose bibs
2 X 8 Fascia
Exterior walls painted with Sherwin Williams Duracraft Acrylic flat latex
Exterior doors painted with Sherwin Williams Duracraft Acrylic Latex Semigloss
Standard water treatment system with iron filter
1 plastic mailbox and stand
Manual – 3 zone sprinkler system
10 SEER Trane A/C

RE PARA 2A. AND IN ACCORDANCE WITH LUV-IT HOMES, LLC, AND VILLAS
PLANS DATED _2/6/05_ SHEET (PLAN) PAGE NUMBERS ____1____ TO
___7___ S/L _243_ STREET _Mitchell_ LIMESTONE CREEK, JUPITER
FLORIDA AND BOUNDARY SURVEY AND SITE PLAN DRAWING NUMBER
_04-264_ DATED: _6/15/05_ 3 SETS OF EACH RECEIVED WITH
EXECUTED CONTRACT.

12                                  Initials _____

<u>Exhibit A</u>

)  Deposit upon signing Agreement (5%)                                           $

2)  Additional deposit due at closing (5%), plus impact and permit fees     $

3)  When Slab is complete (20%)                                                        $

4)  When Roof is sheathed (20%)                                                       $

5)  When rough Air Conditioning, and
        Electric are installed (25%)                                                         $

6)  When Standing Trim is set (15%)                                                    $

7)  Upon Completion of Contract by the Contractor (10%)                     $

**TOTAL CONTRACT SUM**                                                 <u>**$106,900.00**</u>

Initials

**Woodland Enterprises, Inc.**
**15592 Jupiter Farms Road**
**Jupiter, FL 33478**

Authorization of Owner (or Owners) to:

_PALM BCH._   County Building & Zoning
_PALM BCH._   County Health Dept.
_PALM BCH._   County Concurrency

The Undersigned do hereby authorize Woodland Enterprises, Inc. to act on my (their) behalf and to make representations on my(their) behalf.  In authorizing the agent of Woodland Enterprises, Inc. to represent (me) (us), the owner (s) attest that the application is made in good faith and that any information by the owner (s) is accurate and complete.

State of Florida
County of _PALM BEACH_

The foregoing instrument was acknowledged before me this ___3-2-05___ by
___FRANK ARENA___ who is
personally known to me or who has produced ___p.K.___ (type of
identification) as identification and who did (did not) take an oath.

_Carol Anne Gache_
Notary Public Signature

_CAROL ANNE GACHE_
Notary Public Name Printed

(Notary Seal)

CAROL ANNE GACHE
MY COMMISSION # DD 250881
EXPIRES: December 24, 2006
Bonded Thru Notary Public Underwriters

_____
Signature of Owner

_Lvr It Homes And Villas LLC._
Owner's Name (Print)

_____
Signature of Owner

_____
Owner's Name (Print)

_____
Street Address

_____
City, State, Zip Code

_____
Telephone

14

Initials _____

Exhibit C
## LIMITED WARRANTY

WOODLAND ENTERPRISES, INC. warrants to purchasers ("Buyer") of homes constructed by the COMPANY that such home is constructed in a good and workmanlike manner; is fit for the purpose for which it was intended and has been constructed in accordance with accepted building practices. It has been inspected by our trained personnel and by the building department of the area in which it is situated.

1. The warranty set forth in this Limited Warranty commences on the date that title to your home is conveyed to you (the "closing") and applies only to those items set forth in paragraphs 6.a and 6.b hereof. Any time periods specified herein will not be extended by any acts or inaction on the part of buyer or Seller, and are not waived or extended by any repairs, delays in repairs or requests for repairs unless said extension is specifically made in writing signed by the COMPANY.

2. Any request for service under this Limited Warranty must be sent in writing during the period of the applicable portion of this Limited Warranty to our office at the address appearing below on the signature line of the Limited Warranty. The request for service must set forth the nature of your warranty claim and a description of the alleged problem. Any request for service should also indicate times during normal business hours when you will be available at your home so that we can schedule an inspection and the appropriate work.

3. This Limited Warranty runs in favor only of Luv-It Homes, LLC and Villas and/or its' first purchaser, for one year after certificate of occupancy. The warranty is non-transferable. Any obligations under this Limited Warranty terminate if the property is resold or is no longer occupied by the homeowner to whom it is originally issued. *Owned by first Buyer*

4. The Limited Warranty shall be automatically void in the event you or any person, firm or entity retained or authorized by you adds to or in any manner modifies any items constructed or supplied by the COMPANY, or if you make any structural or other changes.

5. Warranty work under this Limited Warranty will be performed only by the undersigned or by a contractor provided by the undersigned. There will be no charge to Buyer for labor, materials or transportation on the warranty work covered by this Limited Warranty.

6. WARRANTED ITEMS:
   a. For a period of one (1) year after Closing, We will repair or replace whichever we determine to be appropriate in our sole judgment, any structural defects in workmanship or materials in the following:
   1) Plumbing
   2) Electrical System
   3) Air Conditioning system and heating system

   b. We hereby assign and pass through to you the manufacturer's warranty, if any, for appliances and equipment such as refrigerator, range, hot water heater, washing machine, clothes dryer, garbage disposal, ventilating fan, air conditioner and like items. Such items are excluded from this Limited Warranty. It will be your responsibility to timely assert any claim against the manufacturer.

7. NON-WARRANTED ITEMS: This Limited Warranty expressly excludes and there will be no implied assumption of responsibility for:
a. Cracked and/or broken tile;
b. Burned out fuses, circuit breakers and light bulbs;
c. Broken glass or torn screens unless called to the COMPANY's attention prior to closing;
d. Mirror defects, unless called to the COMPANY's attention prior to closing;
e. Repainting of walls or ceilings, or refinishing of woodwork or cabinets unless any defects are called to the COMPANY'S attention in writing, at or prior to closing;
f. Spots or imperfections in carpeting included in the home, unless called to the COMPANY'S attention in writing, at or prior to closing;
g. Any items not specifically listed as a warranted item in paragraph 6.a. and 6.b. of this Limited Warranty;
h. Landscaping and lawn; The COMPANY assumes no responsibility for these items; however, the COMPANY will replace any dead landscaping called to its attention in writing, at or prior to the closing;
i. Concrete coloring;
j. Ceramic tile or grout cracking;
k. Any item where the claimed defect or malfunction was caused by the buyer or any third party; the Buyer failing to provide necessary maintenance; or if caused by acts of God.
l. Any coating, paint, or stain, on garage floors.

8. THERE ARE NO WARRANTIES THAT EXTEND BEYOND THE DESCRIPTION OF THE FACE HEREOF. THIS LIMITED WARRANTY IS THE ONLY EXPRESSED WARRANTY GIVEN. THIS LIMITED WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, OR THAT THE HOME WILL BE CONSTRUCTED IN ACCORDANCE WITH THE PLANS AND SPECIFICATIONS ON FILE WITH ANY GOVERNMENTAL AUTHORITY, WHETHER ARISING FROM CUSTOM, USAGE, COURSE OF TRADE, STATUTES, CASE LAW OR OTHERWISE, AND SHALL BE LIMITED TO THE WARRANTY PERIODS SET FORTH ABOVE. THE UNDERSIGNED DISCLAIMS ANY LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, INABILITY TO POSSESS THE UNIT, INCONVENIENCE, STORAGE COSTS, LOSS OF TIME, PERSONAL INJURY, DAMAGE TO IMPROVEMENTS MADE BY YOU, OR ANY OF YOUR PERSONAL PROPERTY.

9. If you seek to pursue any claim or denied request for service under this Limited Warranty, you must give us notice of your intent to make a claim and the estimated amount of the claim in writing. Thereafter, we may notify you within thirty (30) days from receipt of said notice of our election to have the claim settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. In the event that we fail to so notify you within said thirty (30) day period, then you may proceed to commence an action for such claim in the courts of the State of Florida. In the event that we prevail on your claim, whether said claim be arbitrated or litigated, you shall be liable for all costs and expenses incurred by us on said claim, which sum shall include reasonable attorneys' fees.

AGREED AND ACCEPTED:
BUYERS(S):

Dated: 3/?/05

COMPANY: Woodland Enterprises, Inc.

BY: _____ Dated: 3/2/05

15

Initials _____

## WOODLAND ENTERPRISES, INC.
## RESIDENTIAL HOME LIMITED WARRANTY

1.     The warranty set forth in this Limited Warranty becomes effective on the date on which title to your Residence is conveyed to you ("Closing").

2.     For a period of one (1) year from the date of Closing, we will adjust, repair or replace, whichever we determine to be appropriate, any materials found to be defective in the following items in your Residence:

   (a)     Plumbing system (but not including plumbing fixtures)
   (b)     Structural components
   (c)     Electrical wiring system and
   (d)     Roofing covering

3.     For a period of sixty (60) days commencing on the date of Closing, we will adjust, repair or replace, whichever we determine to be appropriate, the following items in your Residence:

   (a)     Doors (including hardware)
   (b)     Windows
   (c)     Electrical switches, receptacles and fixtures
   (d)     Plumbing fixtures and
   (e)     Bathroom tile

4.     We hereby assign and pass through to you the manufacturer's warranty for appliances and equipment, where applicable such as refrigerator, range, hot water heater, dishwasher, garbage disposal, ventilating fan, air conditioner, and like items or other "consumer products" included in the purchase of your Residence ("Appliances and Equipment"). The Appliances and Equipment are excluded from this Limited Warranty because they are covered by manufacturers' warranties. Carpet and vinyl are also excluded from this Limited Warranty because they are covered by manufacturers' warranties.

5.     No responsibility is assumed for and there is excluded from this Limited Warranty, any and all items not specifically included in this Limited Warranty. We do not assume responsibility for, and there is excluded from this Limited Warranty:

   (a)   damage due to ordinary wear and tear or abusive use.

   (b)   Defects which are the result of characteristics common to the materials used such as, but not limited to:

       (i)       warping and deflection of wood

    (ii)     fading, chalking and checking of paint due to sunlight

    (iii)    cracks due to drying, curing or settlement of concrete, stucco, plaster, bricks and masonry and

    (iv)    drying, shrinking and cracking of caulking and weather stripping.

    (c)    loss or injury caused in any way by the elements.

    (d)    conditions resulting from condensation on or expansion or contraction of materials and

    (e)    damage due to failure to perform routine maintenance and

    (f)    differences in color of concrete, paver or other masonry surfaces

6.      Any request for service under this Limited Warranty must be sent in writing during the period of the applicable portion of this Limited Warrant, to our office at the address appearing on this Limited Warranty or to any agent at such address as may hereafter be designated by notice given to you.  The request for service must set forth the nature of your warranty claim.  The requests for service should also indicate when, during normal working hours Monday through Friday, you will be available at your Residence so that we can schedule the appropriate warranty work.

7.      This Limited Warranty runs in favor of only the original purchaser of the Residence from LUV-IT HOMES AND VILLAS, LLC. and is nontransferable.  Any obligation under this Limited Warranty terminates if the property is resold or shall cease to be occupied by the owner to whom it is originally issued.

8.      Warranty work under this Limited Warranty will be done only by the undersigned warrantor or by a subcontractor provided by the undersigned warrantor.  There will be no charge for labor, materials or transportation on the warranty work covered by Paragraphs 2 and 3 of this Limited Warranty.

9.      Our maximum liability under this Limited Warranty shall be the replacement cost of the defective item(s) in your Residence covered by this Limited Warranty.  In addition, at our sole option, rather than repairing or replacing the defective item, we may pay you the amount by which the value of your Residence has decreased as a result of this defect.

10.     By acceptance of title to your Residence at closing, you acknowledge and agree that WOODLAND ENTERPRISES, INC. shall be irreparably harmed if you undertake the adjustment, repair or replacement of any materials found to be defective in the items set for in Paragraph 2 or 3 hereof during the period of time set forth in Paragraphs 2 and 3, respectively.  Accordingly you agree:  (i)  to promptly, upon your knowledge of the existence of any such defective materials and/or items, provide written notice to WOODLAND ENTERPRISES, INC. specifying such defective materials and/or items, upon the receipt of which WOODLAND ENTERPRISES, INC. shall have thirty

(30) days ("Repair Period") to commence the adjustment, repair or replacement of such defective materials or items and diligently pursue the completion thereof and   (ii)  not to adjust, repair or replace such defective materials or items during the Repair Period provided, however if WOODLAND ENTERPRISES, INC. fails to adjust, repair or replace such defective materials and/or items within the Repair Period, you may repair or replace same.  If you fail to comply with the provisions of this Paragraph 10, you will be deemed to have breached your obligation to mitigate damages and your conduct shall constitute an aggravation of damages.

11.        The warrantor is WOODLAND ENTERPRISES, INC.  Notices give pursuant to this Limited Warranty must be sent to WOODLAND ENTERPRISES, INC., 15592 Jupiter Farms Road, Jupiter, FL  33478 or to any agent at such address as may hereafter be designated by notice given to you.

12.        THIS LIMITED WARRANTY IS THE ONLY EXPRESS WARRANTY GIVEN BY THE UNDERSIGNED WARRANTOR.  THIS LIMITED WARRANTY IS GIVEN IN LIEU OF ANY OTHER WARRANTIES, EXPRESSED OR IMPLIED. EXCEPT FOR THIS LIMITED WARRANTY THE UNDERSIGNED WARRANTY DISCLAIMS ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS, WHETHER ARISING FROM CUSTOM, USAGE OR TRADE, COURSE OF DEALING, CASE LAW OR OTHERWISE.  THE UNDERSIGNED WARRANTOR DISCLAIMS ANY LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.

The date of Closing is the _____ day of _____, 2005

CONTRACTOR:

WOODLAND ENTERPRISES, INC.

By: _____          Date: _____
        Authorized Representative

BUYERS:

LUV-IT HOMES AND VILLAS, LLC.

_____          Date: _____

_____          Date: _____

# EXHIBIT E

# EXHIBIT E

# CERTIFICATE OF OCCUPANCY

Palm Beach County
Planning, Zoning & Building Department
100 Australian Avenue, West Palm Beach, FL 33406
www.co.palm-beach.fl.us/pzb
(561) 233-5000

This is to certify that the    RESIDENTIAL    Structure Built Under Permit No. B05024467

Described as    SINGLE-FAMILY DWELLING/DETACHED

Owned By    LUV-IT-HOMES, INC,

Contractor WOODLAND ENTERPRISES INC

and Located at    6845   MITCHELL ST

In Subdivision PALM GARDENS 1ST ADDITION U/R             Section  34  , Township 40

Range  42  , Lot  243  , Block 000  , Units 001  , was inspected and at the time of issuance
of this certificate, was found to the best of my knowledge, to conform to the code requirements of
the county of Palm Beach and/or was certified by Florida Registered architect or engineer that it
meets the requirements of said codes, and is approved for utility services, as intended by the
permit.

REBECCA CALDWELL
_____
BUILDING OFFICIAL

JUNE 30, 2006                    J PHIL STEPHENSON
_____            _____
DATE                                    INSPECTOR        examine watermark for validity
ORIGINAL 1 OF 2

# EXHIBIT F

CFN 20060421123
OR BK 20619 PG 1670
RECORDED 07/19/2006 16:12:01
Palm Beach County, Florida
AMT 186,700.00
Doc Stamp 1,306.90
Sharon R. Bock, CLERK & COMPTROLLER
Pgs 1670 - 1671; (2pgs)

Prepared by and return to:
Scott J. Wortman, Esq.
Attorney at Law
Pinebro, Wortman & Byrd, P.A.
7108 Fairway Drive Suite 225
Palm Beach Gardens, FL 33418

File Number: 05-11-1325
Will Call No.:

_____ [Space Above This Line For Recording Data]

# Warranty Deed

This Warranty Deed made this 11th day of July, 2006 between Luv-It Homes and Villas, LLC, a Florida limited liability company whose post office address is 1935 Commerce Lane, Suite 4, Jupiter, FL 33458, grantor, and Veronica Purcell, a single woman whose post office address is 6845 Mitchell St., Jupiter, FL 33458, grantee:

(Whenever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

Witnesseth, that said grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Palm Beach County, Florida to-wit:

The East 50 feet of the West 830 feet of the North 165 feet of the South 990 feet of the southwest quarter of Section 34, Township 40 South, Range 42 East, Palm Beach County, Florida. A/K/A Lot 243 PALM GARDENS UNRECORDED.

Parcel Identification Number: 00-42-40-34-02-000-2430

Subject to restrictions, reservations, easements and limitations of record.

Together with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

To Have and to Hold, the same in fee simple forever.

And the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to December 31, 2005.

In Witness Whereof, grantor has hereunto set grantor's hand and seal the day and year first above written.

DoubleTimoe

# EXHIBIT G



IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

IN RE:  CHINESE DRYWALL LITIGATION

DARIO ORLANDO; STEPHEN SINES;
DAVID AND JOAN GLICKMAN;
THOMAS WOJCIECHOWSKI;
OCEANPARK ESTATES ASSOCIATON,
INC., and DOCKSIDE LOFTS CONDOMINIUM
ASSOCIATION, INC., individually and as
representatives of others similarly situated,
                   Plaintiffs,

CASE NO.:  10-28090 (12)

vs.

BANNER SUPPLY CO., et al.,
              Defendants.

HON. PETER M. WEINSTEIN

## ORDER ON DEFENDANT BANNER SUPPLY COMPANY PORT ST. LUCIE, LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

THIS CAUSE came before the Court on Defendant Banner Supply Company Port St.
Lucie, LLC's Motion to Dismiss First Amended Class Action Complaint.  The Court having
considered same, having heard argument of counsel and being otherwise fully advised in
premises, finds and decides as follows:

Plaintiffs filed the instant first amended class action complaint asserting claims for
product liability; negligence; violations of the Florida Deceptive and Unfair Trade Practices Act
(hereinafter FDUTPA); Private Nuisance; and equitable and injunctive relief.  Defendant Banner
Supply Company Port St. Luce LLC (hereinafter Banner PSL) is now moving to dismiss the first
amended complaint arguing that it fails to comply with the requirements of Rule 1.220, Fla. R.
Civ. P., fails to properly allege a cause of action for private nuisance, for violations of FDUTPA
and for equitable and injunctive relief and for failure to comply with Rule 1.130, Fla. Civ. P.

Case No.: 10-28090(12)

in that plaintiffs have failed to attach documents necessary for Banner PSL to properly respond to the complaint.

Turning first to plaintiffs' claim for private nuisance, Banner PSL argues that plaintiffs cannot state a cause of action for private nuisance as a matter of law. In the motion to dismiss, Banner PSL cites to a recent Omnibus Order on Pending Motion to Dismiss in the matter styled Marlene Bennett v. Centerline Homes, et. al., Case No. 50 2009 CA 014458, entered on November 5, 2010 by the Hon. Glenn Kelly of the Fifteenth Circuit Court. In that case, Judge Kelley in a well reasoned order sets forth the well established law in Florida regarding private nuisances and states that "Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Id.* at 6 citing *Jones v. Trawick*, 75 So.2d 785, 785 (Fla. 1954). "Florida law essentially define nuisance as using one's property as to injure the land or some incorporeal rights of one's neighbor. *Id.*, citing *Beckman v. Marshall*, 85 So.2d 552, 554 (Fla. 1956). Plaintiff argues that there is an inherent weakness in Judge Kelley's ruling that the nuisance must come from outside the plaintiffs' land, that is the defective drywall did come from outside of plaintiffs' land and was delivered by Banner to the home. Plaintiffs argue that Banner PSL should have used its own property, the defective drywall, in a manner not to injure the plaintiffs. This Court finds that it is plaintiffs' argument that has the inherent weakness based on this Court's interpretation of Florida law as it deals with private nuisance. This Court finds Judge Kelley's ruling to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for

Case No.: 10-28090(12)

private nuisance in this case.[1]  Therefore, Banner PSL' motion to dismiss plaintiffs' claim for

private nuisance will be granted.

Banner PSL's motion to dismiss is denied in all other respects.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant Banner Supply Company Port St. Lucie,

LLC's Motion to Dismiss First Amended Class Action Complaint is GRANTED in Part as to

Count IV for .Private Nuisance.  Count IV for Private Nuisance is hereby Dismissed with

Prejudice.

DONE AND ORDERED in Chambers, Fort Lauderdale, Florida, this 24th        day of

February, 2011.

PETER M. WEINSTEIN
CIRCUIT COURT JUDGE

Michael J. Ryan, Esq., Plaintiff's Liaison Counsel & Matthew Kotzen, Esq., Defendant's Liaison
Counsel for distribution electronically through Lexis Nexis File & Serve

---

[1] Plaintiffs, in support of their opposition to the motion to dismiss argue that Judge Farina of the Eleventh Circuit, in
the case of Seifert v. Banner Supply, Case No. 09-3887 CA 01(42), permitted the "Nuisance" count to go to the jury
after a trial of the matter.  However, plaintiffs do not indicate whether, in fact, a motion to dismiss the "Nuisance"
count ever presented to, or ruled on by Judge Farina.  Therefore, plaintiff's reliance on that case is misplaced.

3

# EXHIBIT H

Plaintiff Profile Form - Residential Properties

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL       MDL NO. 2047
PRODUCTS LIABILITY LITIGATION             SECTION: L
THIS DOCUMENT RELATES TO: ALL CASES       JUDGE FALLON
                                          MAG. JUDGE WILKINSON

| For Internal Use Only |
| File Number |
| Date Received |

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law. To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

**Section I. Property Information**

Name Property Owner   Veronica Purcell
Address of Affected Property   6845 Mitchell Street

City: Jupiter           FL        33458

Is this Property:*  Residential ☑   Commercial ☐   Governmental ☐

Name of Person Completing this Form   Veronica Purcell

Is above your primary residence?   Yes ☑ No ☐

Mailing Address (if different)   6770 Mitchell Street

City: Jupiter           FL        33458

Phone:   561-277-9371
* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Check one:   Owner-Occupant ☐   Owner Only ☑   Renter-Occupant ☐

Represented By:   Morgan & Morgan, PA

Address:   12800 University Drive, Suite 600

City: Ft. Myers   State: FL   Zip: 33907

Phone:   239-433-6880
Case No./Docket Info:   09-6690

**Section II. Insurance Information**

Homeowner/ Renter Insurer:

ASI Assurance Corporation

Policy #:   FSA88452
Agent:   Landmark Insurance of the Palm Beaches Inc.

Address:   8409 N. Military Trail

Suite 102

City: Palm Beach Gardens           FL        33410

Phone:   561-691-4900

+ Attach Copy of Insurance Declaration Page

**Section III. Claimant Information**

| Name of Claimant | Dates Occupied | | Gender | Date of Birth | Are you claiming personal injuries? Circle One | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| | Move-In | Leave | | | | |
| Veronica Purcell | 7-2008 | 7-2009 | M ☐ F ☑ | 3-17-1958 | Yes ☑ No ☐ | Owner-Occupant |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |

* Personal injuries include claims for mental anguish and medical monitoring.

Plaintiff Profile Form - Residential Properties

**Section IV. Inspection Information**

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?   Yes ☑ No ☐

   1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?   Florida Building Engineering & Inspections

      1.2. When did the inspection take place?   `12-01-2009`

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?   Yes ☑ No ☐

   2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?   Eric Sanford

      2.2. When was this determination made?   `12-01-2009`

**Section V. Drywall Information**

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Unknown | n/a | n/a |
|  |  |  |
|  |  |  |

1.0. Have you, or has anyone on your behalf, sent written notice to your homebuilder, drywall contractor, drywall supplier/ distributor, drywall manufacturer or any other person or entity of your claim that your home contains Chinese-manufactured drywall?   Yes ☑ No ☐

   1.1. If "Yes" to question 1.0 Section V. to whom has any such notice been sent?   Woodland Enterprises, Inc.

      1.2. When was notice sent?   `12-07-2009`

      + Attach copy of notice Sent

2.0. Have you, or has anyone on your behalf, made a request to anyone that your home be repaired as a result of the presence of Chinese-manufactured drywall in your home?   Yes ☐ No ☑

   2.1. If "Yes" to Question 2.0. Section V. to whom has the request been made?

      2.2. When was the request made?

      + Attach copy of written request

3.0. Has your home been repaired in any way as a result of the presence of Chinese-manufactured drywall?   Yes ☐ No ☑

   3.1. If "No" to question 3.0. Section V. Have any such repairs to your home been offered?   Yes ☐ No ☑

      3.1.a. If "Yes" to question 3.1. Section V. When was the offer made?

      3.1.b. Who made the offer?

   3.2. If "Yes" to Question 3.0. Section V. Have any such repairs to your home been initiated?   Yes ☐ No ☑

      3.2.a. Have any such repairs to your home been completed?   Yes ☐ No ☐

      3.2.b. Who paid or is paying for the repairs?

      3.2.c. What was/is the total cost?

      3.2.d. Have samples of the Chinese-manufactured drywall been kept?   Yes ☐ No ☐

      3.2.e. Who possesses the samples?

**Section VI. Questions for Florida Residents Only\***

1.0. Have you, or anyone on your behalf, sent any notices under Chapter 558 of the Florida Statutes regarding the presence of Chinese-manufactured drywall in your home?   Yes ☑ No ☐

   1.1. If "Yes" to Question 1.0., Section VI. To whom has any such notice been sent?   Woodland Enterprises, Inc.

      1.2. When was notice sent?   `12-07-2009`

      + Attach copy of notice

2.0. Have you received any responses to your notice under Chapter 558?   Yes ☑ No ☐

   2.1. If "Yes" to Question 2.0., Section VI. From whom did you receive such notice?   Valerie Greenberg, Esq.

      2.2. When was it received?   `12-21-2009`

3.0. Has anyone inspected your home in response to your notice under Chapter 558?   Yes ☐ No ☑

   3.1. If "Yes" to Question 3.0., Section VI. Who inspected your home?

4.0. Have you received a written offer to repair your home in response to your notice under Chapter 558?   Yes ☐ No ☑

   4.1. If "Yes" to Question 4.0., Section VI. From whom did you receive this written offer?

      4.2. When was it received?

5.0. Have any repairs been performed in your home in response to your notice under Chapter 558?   Yes ☐ No ☑

   5.1. If "Yes" to Question 5.0., Section VI. Who performed these repairs?

      5.2. What repairs were performed?

      5.3. When were the repairs performed?

\*By completing this section, plaintiffs neither agree with the applicability of Chapter 558 of the Florida Statutes to this action or plaintiffs'claims, nor do plaintiffs waive any rights or agree that such notice is required. Defendants contend that plaintiffs are not relieved of any obligations they may or may not have arising under Chapter 558 of the Florida Statutes, and defendants are not waiving any rights they may have under said statute.

PurcellV00002

Plaintiff Profile Form - Residential Properties

**Section VII. Home Information**

| | | | Yes | No |
|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 1218 | | | |
| Estimated Sq. Ft. of Drywall | 4800 Approx | Occupied | | ✓ |
| Height of Interior Walls | 8' | Year-round | | |
| Number of Bedrooms: | 3 | Summer | | |
| Number of Bathrooms: | 2 | n/a | Winter | | ✓ |

**Plumbing System**

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | ✓ | |
| Copper Piping | ✓ | | |
| Copper Fixtures | ✓ | | |
| Other Fixtures | | ✓ | |
| Were repairs made to the plumbing system? | | ✓ | |
| Dates: | | | |

**Electrical System**

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | | | |
| Switches | | | |
| Main Panel | | ✓ | |
| 2nd Panel | | | ✓ |
| Exposed Copper Wires | | | |
| Were repairs made to the electrical system? | | ✓ | |
| Dates: | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

**Section VIII. Construction/Renovation Information**

Date Range for New Home Construction: (Month/Day/Year)

| Start Date: | n/a | | Completion Date | n/a |
|---|---|---|---|---|
| Move In Date: | 7-2006 | | Date Acquired Home | 7-11-2006 |

Date Range for Renovations: (Month/Day/Year)

| Start Date: | n/a | | Completion Date | n/a |
|---|---|---|---|---|
| Move In Date: | n/a | | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | ✓ |
| First Floor: Full Wall of drywall replaced | | | ✓ |
| Second Floor: Any drywall replaced | | | ✓ |

**Section IX. Homebuilder/ General Contractor/ Developer Information**

Homebuilder/ General Contractor/ Developer's Name:

Woodland Enterprises, Inc.

Address:  15592 Jupiter Farms Road

City: Jupiter                          FL          33478

Phone:          n/a

+ Attach Copy of Construction/Renovation Contract
+ Attach Copy of New Home Warranty Declaration

**Section X. Drywall Installer**

Drywall Installer's Name:

unknown

| Address: | n/a |
|---|---|
| | n/a |
| City: | n/a | na | n/a |
| Phone: | n/a |

**Section XI. Drywall Supplier**

Drywall Supplier's Name:

Unknown

| Address: | n/a |
|---|---|
| | n/a |
| City: | n/a | na | n/a |
| Phone: | n/a |

**Section XII. Verification of Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
|---|---|---|---|
| | | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| | | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |

PurcellV00003

Plaintiff Profile Form - Residential Properties

| Section VII. Home Information | | | | |
|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 12,121 | | Yes | No |
| Estimated Sq. Ft. of Drywall | 6100 sq ft | Occupied | v | |
| Height of Interior Walls | 8' | Year-round | v | |
| Number of Bedrooms: | 2r Den | Summer | | |
| Number of Bathrooms: | 2 | Winter | | |

| Plumbing System | | | |
|---|---|---|---|
| | Blackening or Corrosion? | | |
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | . | |
| Copper Piping | | v | |
| Copper Fixtures | | v | |
| Other Fixtures | | v | |
| Were repairs made to the plumbing system? | | v | |
| Dates: | | | |

| Electrical System | | | |
|---|---|---|---|
| | Blackening or Corrosion? | | |
| | Yes | No | N/A |
| Receptacles | v | | |
| Switches | | v | |
| Main Panel | | v | |
| 2nd Panel | | v | |
| Exposed Copper Wires | | v | |
| Were repairs made to the electrical system? | | v | |
| Dates: | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

| Section VIII. Construction/Renovation Information | | | |
|---|---|---|---|
| Date Range for New Home Construction: (Month/Day/Year) | | | |
| Start Date: | | Completion Date | |
| Move In Date: | | Date Acquired Home | |
| Date Range for Renovations: (Month/Day/Year) | | | |
| Start Date: | | Completion Date | |
| Move In Date: | | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | |
| First Floor: Full Wall of drywall replaced | | | |
| Second Floor: Any drywall replaced | | | |

### Section IX. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:

Woodland Enterprises, Inc.

Address:   15592 Jupiter Farms Road

City:  Jupiter                    FL          33478

Phone:        n/a

+ Attach Copy of Construction/Renovation Contract
+ Attach Copy of New Home Warranty Declaration

### Section X. Drywall Installer

Drywall Installer's Name:

Address:

City:

Phone:

### Section XI. Drywall Supplier

Drywall Supplier's Name:

Address:

City:

Phone:

### Section XII. Verification of Plaintiff Profile Form

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| _Vanessa Purcell_ | _6-27-11_ | | |
|---|---|---|---|
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| | | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| | | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |

PurcellV00004



ASI ASSURANCE CORP
805 Executive Center Dr W Suite 300
St. Petersburg, FL 33702
For General Inquiries:   (727) 374-2502



**Homeowners Declaration Page**

| Total Policy Premium: | $1,056 |
|---|---|
| Policy Number: | FSA88452 |

Agent:
Landmark Insurance of the Palm Beaches Inc
8409 N. Military Trail, Suite 102
Palm Beach Gardens, FL 33410

| Agent Code: | 411425 |
|---|---|
| For Policy Service, Call: | (561) 691-4900 |

Named Insured:
Veronica Purcell
6845 MITCHELL ST
JUPITER, FL 33458

Effective Date of This Transaction:   7/10/2009

Activity of This Transaction:   Renewal
Residence Premises:
6845 MITCHELL ST # 1
JUPITER, FL 33458

Policy Period:   From:  07/10/2009  To:  07/10/2010
(At 12:01 AM Standard Time at the residence premises)

Plan Type:   HO3

Coverage at the residence premises is provided only where a limit of liability is shown or a premium is stated.

Coverages and Limits of Liability

| | | Limit | Premium |
|---|---|---|---|
| SECTION I: | A. Dwelling Cov | $140,000 | 3839.73 |
| | B. Other Structures Limit | $7,000 | 11.65 |
| | C. Personal Property Limit | $70,000 | Included |
| | D. Loss of Use | $14,000 | Included |
| SECTION II: | E. Liability Limit | $300,000 | 30.00 |
| | F. Medical Payments Limit | $5,000 | 10.00 |

OTHER COVERAGES AND ENDORSEMENTS:
(Printed on the following page)

Deductibles:

| HURRICANE: | 2% - $2800 |
|---|---|
| ALL OTHER COVERED PERILS: | $1000 |

Mortgages:

1st Mortgagee:                                    2nd Mortgagee:
SUN TRUST MORTGAGE, INC ISAOA
PO BOX 57028
IRVINE, CA 92619

Loan #: 0203161260        Escrow: No

PurcellV00005

Name Insured(s):   Veronica Purcell                          Policy Number:   FSA83452

| Other Coverages And Endorsements | Form Number | Limit | Premium |
|---|---|---|---|
| Amendatory Endorsement Collapse Coverage | ASI HO 09 CLP 04 03 | | |
| Policy Cover | ASI HO 09 COV 01 98 | | |
| Deductible Notification | ASI HO 09 DN 09 05 | | |
| Hurricane Deductible | ASI HO 09 HD 05 05 | | |
| Ordinance or Law Coverage Notification | ASI HO 09 OLR 06 07 | | |
| Outline of Coverage | ASI HO 09 OTL 08 00 | | |
| Special Provisions for Florida | ASI HO 09 SP 06 07 | | |
| All Risk Policy Coverage Special Form | HO 00 03 04 91 | | |
| Special Coverage - Premises Alarm | HO 04 16 04 91 | | |
| Windstorm Protective Devices | HO 04 21 10 94 | | |
| Liability Home Day Care | HO 04 96 04 91 | | |
| Windstorm Exterior Paint | HO 23 70 06 97 | | |
| Companion Product | | | -10.23 |
| Max Discount Adjustment | | | 31.66 |
| NHR Deductible | | 1000 | -29.16 |
| HUR Deductible | | 2800 | -94.99 |
| Ordinance or Law 25% | ASI HO 09 OL1 09 05 | 35000 | 158.31 |
| Replacement Cost on Contents | HO 04 90 04 91 | | 237.46 |
| Water Backup/Sump Overflow | ASI HO 09 WBU 06 01 | | 25.00 |
| Limited Fungi,Mold,Wet/Dry Rot | ASI HO 09 FCR 01 05 | 25,000/$50,000 | 60.00 |
| PC / Construction Factor | | | -730.05 |
| Sinkhole Coverage | ASI HO 09 SH 06 07 | | 5.41 |
| Age of Dwelling | | | -207.22 |
| BCEG | | | -219.01 |
| Financial Responsibility | | | -51.17 |
| Windstorm Loss Reduction | | | -2063.48 |

| Fees and Assessments: | | |
|---|---|---|
| Citizens Property Insurance Corporation Emergency Assessment | | 14.40 |
| Florida Hurricane Catastrophe Fund Fee | | 10.29 |
| Managing General Agent Fee | | 25.00 |
| EMPA Fee | | 2.00 |

| Scheduled Items: | | | |
|---|---|---|---|
| Description: | | Value | Premium |

The Hurricane Coverage portion of your Total Premium is:          $638

The Non-Hurricane Coverage portion of your Total Premium is:      $418

Additional Insured:

Rating Information:
| | |
|---|---|
| Construction Type: | Masonry |
| Type of Residence: | Single Family |
| Year Built: | 2006 |
| Total Square Feet: | 1024 |
| ASI Territory: | 380 |

PurcellV00006

# MORGAN & MORGAN®

### A PROFESSIONAL ASSOCIATION

*Attorneys At Law*

REPLY TO FT. MYERS

ATTORNEYS AT LAW

KELLY A. AMBIT
JAMES A. ARNOLD, JR.
RUSSELL E. ARTILLE
H. SCOTT BATES
JENNIFER M. BERUELO○
ALEXANDER BILLIAS
T. LEE BODIE
SCOTT T. BORDERS †
GREGORY J. BOSSELER
WILLIAM B. BOWLES, JR.
ADAM BRUM
DONALD W. BUCKLER
NICHOLAS A. BUONICONTI, III
KARAN S. BURNELL ****
KEVIN J. CARDEN
BRUCE H. CARRAWAY, III ****
BEVERLY A. CARSON ****
KEITH M. CARTER †
MICHAEL J. CARTER
RICHARD B. CELLER
ALEXANDER M. CLEM
RONALD C. CONNER ****
RAMEL C. COTTON
WILLIAM R. DANIEL
VINCENT M. D'ASSARO †
MICHAEL L. DAVIS
JOSEPH M. DEFRANCO
LOUIS A. BERRETAS, JR.
JOHN W. DILL †
JAMES J. DYE
WILLIAM FINN
GREGORIO A. FRANCIS
ANDREW FRISCH
TANHA G. GIVENS
STEVEN C. GODDARD
MICHAEL GOETZ
CHRISTOPHER J. CRADDOCK *
C. DOUGLAS GREEN
JENNIFER J. HALPERN †
RYAN J. HAYES
DAVID O. HENRY
CHRISTOPHER J. HINCKLEY
HERBERT H. HOFMANN II
WILLIAM R. HOWARD
KATHERINE V. HUNG ***
ANTHONY M. IANNACIO
MARK J. JAFFE
HEATHER H. JONES
VELMA L. JONES
STEPHEN R. KAUFMAN
SUMEET KAUL
JAMES W. KEETER
JAMES J. KELLEHER ^ †
HANS KENNON
STEPHEN J. KNOX †
GERALD L. KUCIA
RYAN G. KUHL
GRANT A. KUVIN
ARMANDO T. LAURITANO
CLINT M. LAVENDER
CARLOS V. LEACH
JASON H. LEONARD **
NANETTE A. LEVI †
JOSEPH A. LINNEHAN †
JAMES T. LYNCH
MICHAEL D. MARASSEE
BERNARD R. MAZAHERI ◊
BRIAN K. McCLAIN
W. CHARLES MELTMAR † ***
J. ANDREW MEYER
JASON B. MILLER
TODD K. MINER
W. CLAY MITCHELL, JR.
KEITH R. MITNIK †
BRIAN R. MOES
DAVID B. MOFFETT †
HECTOR A. MORE
O. IVAN MORGAN
JOHN B. MORGAN
T. MICHAEL MORGAN
ULTIMA D. MORGAN
DAVID M. MOSKOWITZ ****
HENRY M. MOWRY
OMAR L. NELSON ****
DANIEL J. NEWLIN △
CHRISTOPHER R. NEYLAND ****
KEENAN H.B. NIX †
DONNY A. OWENS
NICHOLAS P. PANAGAKIS
R.A. PATTERSON, III
KIRK A. PERROW
RONSON J. PETREE
FRANK W. PIAZZA
GREGORY D. PRYSOCK †
CHRISTOPHER J. PULEO
MICHAEL T. REEBIE
DAVID I. RICKEY *
DARRYL B. ROUSON
CAROLYN M. SALZMANN
RANDY E. SCHIMMELPFENNIG †
JAMES H. SCHMITT
P. CHRIS SCHROEDER
MEGAN D. SEARLS
JOSEPH H. SHAUGHNESSY
DANIEL W. SHEPPARD †
MICHAEL J. SMITH
DAVID A. SPAIN
DERON H. STEPHENS-JOHNSON ****
CRAIG R. STEVENS †
MICHAEL R. STEVENS †
MICHAEL E. SUTTON †
J. HOWARD THIGPEN
HARRAN E. UDELL
BERT E. UEBELE, IV
SCOTT J. URICCHIO
BASIL A. VALDIVIA
BRIAN G. VIGNESS †
IVAN D. VORONEC
SCOTT WM. WEINSTEIN
SCOTT M. WHITLEY †

OFFICES:

16th FLOOR
20 N. ORANGE AVENUE
POST OFFICE BOX 4979
ORLANDO, FL 32802-4979
(407) 420-1414
16th FAX (407) 425-8171
9th FAX (407) 841-0520
10th FAX (407) 425-9858
14th FAX (407) 420-5956
4th FAX (407) 423-7928

SUITE 700
ONE TAMPA CITY CENTER
TAMPA, FL 33602
(813) 223-5505
FAX: (813) 223-5402

SUITE 600
ONE UNIVERSITY PARK
12800 UNIVERSITY DRIVE
POST OFFICE BOX 9504
FT. MYERS, FL 33906-9504
(239) 433-6880
FAX: (239) 433-6836

SUITE 1100
76 SOUTH LAURA STREET
JACKSONVILLE, FL 32202-3433
(904) 398-2722
FAX: (904) 398-2334

SUITE 4200
191 PEACHTREE STREET NE
ATLANTA, GA 30303
(404) 965-8811
FAX: (404) 965-8812

6824 GRIFFIN ROAD
DAVIE, FL 33314
(954) 318-0268
FAX: (954) 333-3515

SUITE 777
ONE JACKSON PLACE
188 E. CAPITOL STREET
JACKSON, MS 39201
(601) 949-3388
FAX: (601) 949-3399

198 BROADWAY AVE.
KISSIMMEE, FL 34741
(407) 452-6990
FAX: (407) 452-6989

SUITE 150J
695 CENTRAL AVENUE
ST. PETERSBURG, FL 33701
(727) 490-2001
FAX: (727) 490-2015

14229 US 441
TAVARES, FL 32778-2093
(352) 253-2700
FAX: (352) 253-2701

SUITE 2600
ONE COMMERCE SQUARE
MEMPHIS, TN 38103
(901) 333-1827
FAX: (901) 333-1884

www.forthepeople.com

December 7, 2009

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

(192999)
Woodland Enterprises, Inc.
15592 Jupiter Farms Road
Jupiter, FL 33478

Re:   Florida Statutes 558.004 and 627.4137
      **NOTICE AND OPPORTUNITY TO REPAIR**
      **NOTICE OF REQUEST OF INSURANCE POLICIES**
      Our Client:   **Veronica Purcell**

Dear Woodland Enterprises, Inc.:

We have been retained by Veronica Purcell with respect to the defective drywall that was used in the construction of their home located at 6845 Mitchell Street, Jupiter, FL 33458. This Notice is sent to you pursuant to Florida Statute Section 558.004, a copy of which is enclosed for your reference, and informs you of our intent to file a lawsuit 60 days after the date of this Notice for construction defects against Woodland Enterprises, Inc. on Veronica Purcell's behalf.

The defective drywall in the home contains substances which render the drywall unfit for the purposes intended. The defective drywall is damaging other parts of the home, as well as rendering the home unfit to live in.

We assert that the defects are the result of the installation of materials which require all of the drywall to be removed and replaced, as well as removal and replacement of all other components of the home which have been affected by the drywall.

Please be aware that you have certain obligations under the notice provisions of Section 558.004 which include performing a reasonable inspection and advising as to how you are going to correct the situation, if at all.

Further, pursuant to Section 627.4137 of the Florida Statutes, please provide the undersigned with the following information with regard to each known policy of insurance, including excess or umbrella coverage, which may provide liability insurance coverage for this claim:

OF COUNSEL
HORACE R. BROADNAX
RICHARD I. CIERVELLI
**** MICHAEL ESPY
MICHAEL K. HOUTZ
J. MICHAEL PAPANTONIO
ROBERT J. SCANLAN
CLAY M. TOWNSEND
BOARD CERTIFIED
CIVIL TRIAL LAWYER
◊ BOARD CERTIFIED
WORKERS' COMPENSATION
LAWYER
★ ALSO LICENSED IN ARIZONA
† ALSO LICENSED IN WASHINGTON, D.C. ONLY
○ LICENSED IN GEORGIA ONLY
* LICENSED IN MISSISSIPPI ONLY
** LICENSED IN NEW YORK
• ALSO LICENSED ...

— For The People —

PurcellV00007

Woodland Enterprises, Inc.
December 7, 2009
Page 2


1.     Name of the insurer(s);
2.     Name of each insured;
3.     Certified copy of limits of liability coverage:
       a. personal injury,
       b. property damage,
       c. medical expenses,
       d. personal injury protection,
       e. uninsured motorist and any other coverage
4.     A statement of any policy or coverage defense which your company reasonably
       believes is available; and
5.     Certified copy of any and all policies.

This information should include all periods of time from the commencement of construction
to the present.

The requested information must be provided within thirty (30) days from the date of this
letter and must include a statement under oath by a corporate officer.

Very truly yours,

Scott Wm. Weinstein /ah

Scott Wm Weinstein

SWW/ah
Enclosure: copy of Florida Statute § 558.004
cc: Veronica Purcell

PurcellV00008



FLOOR PLAN

## SUPPLEMENTAL HOME LIMITED WARRANTY

1.    The warranty set forth in this Limited Warranty becomes effective on the date on which title to your Residence is conveyed to you ("Closing").

2.    For a period of one (1) year from the date of Closing, we will adjust, repair or replace, whichever we determine to be appropriate, any materials found to be defective in the following items in your Residence:

    (a)    the plumbing system (but not including plumbing fixtures);
    (b)    the structural components;
    (c)    the electrical wiring system; and
    (d)    the roofing covering.

3.    For a period of sixty (60) days commencing on the date of Closing, we will adjust, repair or replace, whichever we determine to be appropriate, the following items in your Residence:

    (a)    doors (including hardware);
    (b)    windows;
    (c)    electrical switches, receptacles and fixtures;
    (d)    plumbing fixtures; and
    (e)    bathroom tile.

4.    We hereby assign and pass through to you the manufacturer's warranty for appliances and equipment, where applicable, such as refrigerator, range, hot water heater, dishwasher, garbage disposal, ventilating fan, air conditioner, and like items or other "consumer products" included in the purchase of your Residence ("Appliances and Equipment"). The Appliances and Equipment are excluded from this Limited Warranty because they are covered by manufacturers' warranties. Carpet and vinyl are also excluded from this Limited Warranty because they are covered by manufacturers' warranties.

5.    No responsibility is assumed for, and there is excluded from this Limited Warranty, any and all items not specifically included in this Limited Warranty. We do not assume responsibility for, and there is excluded from this Limited Warranty:

(a)  damage due to ordinary wear and tear or abusive use;

(b)  defects which are the result of characteristics common to the materials used, such as, but not limited to

    (i)    warping and deflection of wood;
    (ii)   fading, chalking and checking of paint due to sunlight;
    (iii)  cracks due to drying, curing or settlement of concrete, stucco, plaster, bricks and masonry; and
    (iv)   drying, shrinking and cracking of caulking and weather stripping;

(c)  loss or injury caused in any way by the elements.

PurcellV00010

(d)   conditions resulting from condensation on or expansion or contraction of materials, and

(e)   damage due to failure to perform routine maintenance; and

(f)   differences in color of concrete, paver, or other masonary surfaces.

6.     Any request for service under this Limited Warranty must be sent in writing, during the period of the applicable portion of this Limited Warranty, to our office at the address appearing on this Limited Warranty or to any agent at such address as may hereafter be designated by notice given to you. The request for service must set forth the nature of your warranty claim. The request for service should also indicate when during normal working hours, Monday through Friday, you will be available at your Residence so that we can schedule the appropriate warranty work

7.     This Limited Warranty runs in favor of only the original purchaser of the Residence and is nontransferable. Any obligation under this Limited Warranty terminates if the property is resold or shall cease to be occupied by the owner to whom it is originally issued.

8.     Warranty work under this Limited Warranty will be done only by the undersigned warrantor or by a subcontractor provided by the undersigned warrantor. There will be no charge for labor, materials or transportation on the warranty work covered by Paragraphs 2 and 3 of this Limited Warranty.

9.     Our maximum liability under this Limited Warranty shall be the replacement cost of the defective item(s) in your Residence covered by this Limited Warranty. In addition, at our sole option, rather than repairing or replacing the defective item, we may pay you the amount by which the value of your Residence has decreased as a result of this defect.

10.    By acceptance of title to your Residence at closing, you acknowledge and agree that LUV-IT HOMES, LLC. shall be irreparably harmed if you undertake the adjustment, repair or replacement of any materials found to be defective in the items set forth in Paragraphs 2 or 3 hereof during the periods of time set forth in Paragraphs 2 and 3, respectively. Accordingly, you agree: (i) to promptly, upon your knowledge of the existence of any such defective materials and/or items, provide written notice to LUV-IT HOMES, LLC.,  specifying such defective materials and/or items, upon the receipt of which  LUV-IT HOMES, LLC. shall have thirty (30) days ("Repair Period") to commence the adjustment, repair or replacement of such defective materials or items and diligently pursue the completion thereof; and (ii) not to adjust, repair or replace such defective materials or items during the Repair Period; provided, however, that if LUV-IT HOMES, LLC. fails to adjust, repair or replace such defective materials and/or items within the Repair Period, you may repair or replace same. If you fail to comply with the provisions of this Paragraph 10, you will be deemed to have breached your obligation to mitigate damages and your conduct shall constitute an aggravation of damages.

11.    The warrantor is LUV-IT HOMES, LLC. Notices given pursuant to this Limited Warranty must be sent to LUV-IT HOMES, LLC c/o Frank R. Arena 5761 Sunpointe Circle Boynton Beach, FL. 33437, or to any agent at such address as may hereafter be designated by notice given to you.

2

PurcellV00011

12.    THIS LIMITED WARRANTY IS THE ONLY EXPRESS WARRANTY GIVEN BY THE UNDERSIGNED WARRANTOR. THIS LIMITED WARRANTY IS GIVEN IN LIEU OF ANY OTHER WARRANTIES EXPRESSED OR IMPLIED. EXCEPT FOR THIS LIMITED WARRANTY THE UNDERSIGNED WARRANTOR DISCLAIMS ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS, WHETHER ARISING FROM CUSTOM, USAGE OR TRADE, COURSE OF DEALING, CASE LAW OR OTHERWISE. THE UNDERSIGNED WARRANTOR DISCLAIMS ANY LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.

12. The date of Closing is the _____ day of _____, 2003

SELLER:

LUV-IT HOMES, LLC


By: _____
         Authorized Representative

Date of Signature _____

BUYERS:

_____

_____


Date of Signature. _____

PurcellV00012

3

CFN 20060421123
OR BK 20619 PG 1670
RECORDED 07/19/2006 16:12:01
Palm Beach County, Florida
AMT 186,700.00
Doc Stamp 1,306.90
Sharon R. Bock,CLERK & COMPTROLLER
Pgs 1670 - 1671; (2pgs)

Prepared by and return to:
Scott J. Wortman, Esq.
Attorney at Law
Pineiro, Wortman & Byrd, P.A.
7108 Fairway Drive Suite 225
Palm Beach Gardens, FL 33418

File Number: 05-13-1825
Will Call No.:

_____ [Space Above This Line For Recording Data] _____

# Warranty Deed

**This Warranty Deed** made this 11th day of July, 2006 between Luv-It Homes and Villas, LLC, a Florida limited liability company whose post office address is 1935 Commerce Lane, Suite 4, Jupiter, FL 33458, grantor, and Veronica Purcell, a single woman whose post office address is 6845 Mitchell St., Jupiter, FL 33458, grantee:

(Whenever used herein the terms "grantor and grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

**Witnesseth,** that said grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Palm Beach County, Florida to-wit:

   The East 50 feet of the West 830 feet of the North 165 feet of the South 990 feet of the southwest
   quarter of Section 34, Township 40 South, Range 42 East, Palm Beach County, Florida. A/K/A Lot
   243 PALM GARDENS UNRECORDED.

   Parcel Identification Number: 00-42-40-34-02-000-2430

   Subject to restrictions, reservations, easements and limitations of record.

**Together** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**To Have and to Hold,** the same in fee simple forever.

**And** the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to December 31, 2005.

**In Witness Whereof,** grantor has hereunto set grantor's hand and seal the day and year first above written.

DoubleTime®

PurcellV00013

Signed, sealed and delivered in our presence:

Luv-It Homes and Villas, LLC, a Florida limited liability company

By: _____

Witness Name: _Cynthia J Centrone_

Frank Arena, III

Witness Name: _MARK DALY_

(Corporate Seal)

State of Florida
County of Palm Beach

The foregoing instrument was acknowledged before me this 11th day of July, 2006 by Frank Arena, III of Luv-It Homes and Villas, LLC, a Florida limited liability company, on behalf of the corporation. He/she [_] is personally known to me or [X] has produced a driver's license as identification.

[Notary Seal]

Notary Public

Printed Name: _____

My Commission Expires: _____

CYNTHIA J. CENTRONE
Notary Public - State of Florida
My Comm. Expires May 17, 2009
Commission # DD 406192
Bonded By National Notary Assn.

*Warranty Deed - Page 2*

PurcellV00014