## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL      MDL No. 02047
       PRODUCTS LIABILITY LITIGATION      SECTION L

THIS DOCUMENT RELATES TO:      JUDGE FALLON

LAURA HAYA, DANIEL HAYA and      MAG. JUDGE WILKINSON
IRENE HAYA, et al. v.
TAISHAN GYPSUM CO., LTD., et al.;
Case No. 11-1077 (Omni IX)
_____/

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, PAUL HOMES, INC., N/K/A MANAGEMENT SERVICES OF LEE COUNTY, INC.'S, MOTION TO DISMISS, WITH PREJUDICE, THE CLAIMS BROUGHT AGAINST IT IN THE SECOND AMENDED HAYA OMNIBUS CLASS ACTION COMPLAINT (OMNI IX)

Defendant, Paul Homes, Inc., n/k/a Management Services of Lee County, Inc. ("Paul Homes"), hereby files its Memorandum of Law in Support of its Motion to Dismiss, with Prejudice, the claims asserted against it by plaintiff **Manuel DaSilva** (the "Plaintiff") in the Second Amended Haya Omnibus Class Action Complaint (Omni IX) pursuant to Federal Rule of Civil Procedure 12(b)(6), and to strike Plaintiff's demand for a jury trial, for the reasons set forth below.

## I.  ARGUMENT

**A.      The Governing Legal Standard.**

To survive a motion to dismiss, a complaint must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'" *ADA v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (affirming dismissal of RICO claims) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009)) (same, applying *Twombly* standard to all civil actions); *Zarella v. Pac. Life Ins. Co.*, No. 10-60754, 2010 U.S. Dist. LEXIS 119552, at *5-7 (S.D. Fla. Nov. 10, 2010)

(applying these standards to dismiss numerous claims against insurer, including negligence and unjust enrichment claims). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s], devoid of 'further factual enhancement.'" *Id.* at 1949 (*quoting Twombly*, 550 U.S. at 557).[1]

**B.    Plaintiff Cannot State a Claim for Negligence (Count I) under Florida law, and Plaintiff's Tort Claims (Counts I, II, III and XI) are Barred in Whole or in Part by Florida's Economic Loss Rule.**

**1.    <u>Plaintiff cannot state a claim for negligence because Paul Homes did not breach a duty recognized by Florida law.</u>**

The Omnibus Complaint alleges that Paul Homes somehow owed Plaintiff a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question. Cmplt. ¶ 42. The Complaint further alleges that Paul Homes had a duty to provide Plaintiff with certain warnings about the drywall. *Id.* ¶ 45. Even assuming the truth of these obviously specious allegations, they fail to state a claim for relief.

The most fundamental problem with Plaintiff's negligence theory is that, as a matter of law, Paul Homes did not owe Plaintiff a duty in negligence. The March 18, 2011 omnibus order in *Bennett v. Centerline Homes, Inc. et al.*, No. 502009-CA-014458 (Fla. 15th Jud. Cir.), attached hereto as **<u>Exhibit A</u>** for the Court's convenience (the "Omnibus Negligence Order"), explains why this is so. *Bennett* is a consolidated state court action that, like this one, pits homeowners with defective drywall claims against homebuilders. Just as the Plaintiff is attempting to do here, the

---

[1]    In considering a motion to dismiss, a court should adopt a two-pronged approach: (1) "eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *ADA*, 605 F.3d at 1290 (*quoting Iqbal*, 129 S. Ct. at 1950). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiffs would ask the court to infer." *Id.* (*quoting Iqbal* at 1951-52).

homeowners in *Bennett* attempted to assert a negligence claim based on their homebuilders' purported failure to protect them from a latent defect – namely, hazardous "Chinese manufactured" drywall.  The issue of whether the homebuilders owed a duty in negligence was, the court held, "a question of law."  Omnibus Negligence Order, pg. 1.

In what appears to be a case of first impression in Florida, the court in *Bennett* ruled that the homebuilders did not have a duty "to inspect, test or warn" the plaintiffs about the allegedly defective drywall in their homes.  The court explained that where, as here, the purported defect is "latent," the law imposes no such duties "unless the product is inherently dangerous."  *Id*. at 2; *see O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim as manufacturer had no duty to warn); *Mendez v. Honda Motor Co*., 738 F. Supp. 481, 483-84 (S.D. Fla. 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous.").  Because even *defective* drywall does not fit into the narrow "inherently dangerous" category, the homebuilders had no duty to inspect the drywall, to test it, or to warn the plaintiffs about it.  Omnibus Negligence Order, pg. 2.[2]  The only way for the negligence claims to survive, the court held, was for the homeowners to allege "in good faith" that the homebuilders had "actual or implied notice" of the alleged drywall defects.  *Id*.; *see Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez*, 738 F. Supp. at 483-84.

---

[2]      "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category.  They include highly toxic materials, second hand guns and drugs….  In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself."  *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted).  By way of example, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are <u>not</u> "inherently dangerous."

Because the purported drywall defects at issue in this case were indisputably latent (*see, e.g.,* Cmplt. ¶ 70), Plaintiff's negligence claim cannot survive because he cannot allege – in good faith – that Paul Homes had "actual or implied notice" of the defects.  The boilerplate and unsupportable assertion that Paul Homes "knew or should have known" that the drywall would "harm" the Plaintiffs (*id*. ¶ 53) is a bare legal conclusion that cannot state a claim for relief under the legal standards required by this Court, particularly a legal conclusion premised on a negligence theory that files in the face of basic Florida law.  *See* Omnibus Negligence Order, pg. 2 (requiring more specific allegations); *Ashcroft*, 129 S.Ct. at 1949.

**2.     Plaintiff's tort claims (Cts. I, II, III, & XI) are barred by the economic loss rule.**

Florida law applies the economic loss rule (the "ELR") in two contexts: "(1) the contractual privity ELR where two parties are in privity of contract, and (2) the products liability ELR where a defective product causes damage, but only to itself."  *See In re Chinese Manufactured Drywall Products Liability Lihis*their tort claims against Paul Homes (which he did not), the ELR precludes him from suing in tort for <u>economic</u> losses for the following reasons.

a.     <u>Contractual Privity</u>.  It is undisputed that Paul Homes and the Plaintiff are in privity of contract with regard to the construction of the property at issue.  *See* Section I.E, *infra*.  The law is well settled that where (as here) the parties to a tort claim are in contractual privity with one another, the economic loss rule prohibits a plaintiff from recovery in tort for economic damages, unless the economic damages are the result of a tort committed "independently" of the contractual breach.  *See Indemnity Ins. Co. of North America v. American Aviation*, Inc., 891 So. 2d 532, 537 (Fla. 2004).  The policy reason behind this rule is that the parties to a contract had an opportunity to allocate the risks of a breach via the terms of their contractual agreement, and the economic loss rule does not permit the plaintiff to "circumvent the

contractual agreement by . . . seeking a better bargain than originally made." *Id.* at 536. Thus, "[i]f a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law." *Casa Clara Condominium Assoc. v. Charley Toppino and Sons, Inc.*, 620 So. 2d 1244, 1247 (Fla. 1993) (citing *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870 (1986)).

The viability of the contractual privity economic loss rule to homeowners claims against homebuilders in connection with Chinese drywall has already been recognized in this MDL litigation. *See In re Chinese Manufactured Drywall*, 680 F. Supp. 2d at 799. In language that is directly on point here, this Court stated:

> In their capacity as defendants, whether the Homebuilders will be susceptible to Plaintiffs' tort claims for economic losses is determined by the contractual privity ELR established by the Florida Supreme Court in *Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004). The contractual privity ELR provides that parties in privity in contract are barred from bringing a tort action for economic damages, unless the economic damage is a result of a tort committed independently of the contract breach, and in other limited circumstances. *Id.* at 536-37. The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing Chinese drywall. Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs.

*Id.*

Expanding on that same reasoning, the Honorable Judge Glenn D. Kelley of the Fifteenth Judicial Circuit Court in and for Palm Beach, Florida, subsequently issued an omnibus order, dated November 5, 2010, <u>dismissing</u> all tort claims seeking economic damages (i.e., damages for inadequate value, cost of repair and replacement of defective products, lost profits, etc.) filed by Chinese drywall plaintiffs against homebuilders with whom they are in privity. A true and correct copy of the omnibus order (which applies to all Chinese drywall cases filed in the Fifteenth Judicial Circuit), in the case styled *Bennett v. Centerline Homes, Inc., et al.,* Case No. 50-2009-

CA-014458 (Fla. 15th Jud. Cir.), is attached hereto as **Exhibit B** for the Court's convenience (hereafter, the "November Omnibus Order").   In that Order, Judge Kelley found that "the [homeowners'] claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Supreme Court" in *Indemnity Ins.,* which states as follows:

> A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principals are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement.  Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.

*See Indemnity Ins.,* 891 So. 2d *at* 536-537.

In the Omnibus Complaint, Plaintiff attempts to set forth four (4) different tort claims seeking economic damages against Paul Homes: Negligence, Negligence Per Se, Strict Liability, and Private Nuisance.  The underlying conduct alleged by Plaintiff in support of each of these tort claims is that Paul Homes allegedly sold a home that contains defective Chinese drywall.  In the same Omnibus Complaint, Plaintiff also seeks to assert a claim against Paul Homes for Breach of Contract.  In support of his Breach of Contract claim, Plaintiff alleges that Paul Homes entered into a contractual agreement with him[3], and breached that agreement by selling him a home that allegedly contains defective Chinese drywall.  In other words, the conduct that forms the basis of the Plaintiff's contract claim and the Plaintiff's tort claims against Paul Homes are the same.  However, in order to avoid dismissal of his tort claims against Paul Homes, the economic loss rule requires Plaintiff to have alleged some *additional* conduct on the part of Paul Homes which

---

[3]     As such, Plaintiff does not dispute that he is in contractual privity with Paul Homes.

amounts to an independent tort, arising from a duty separate and apart from Paul Homes' duties under the contract. *See Id.* at 537. Plaintiff has failed to meet this burden.

When tort claims "relate directly to the subject matter of the parties' agreement, or are so interwoven with the agreement, [such that] no independent tort exists ...the economic loss rule applies." *Premix-Marbletite Mfg. v. SKW Chems., Inc.*, 145 F. Supp. 2d 1348, 1358-59 (S.D. Fla. 2001). [4]   Here, the fact that no *additional* conduct amounting to an independent tort, distinguishable from Paul Homes' alleged duties under the contractual agreement, has been alleged in the Plaintiff's tort claims mandates dismissal in this case. *See 14250 Realty Assoc., Ltd. v. Weddle Bros. Construction Co.*, No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, at *6 (M.D. Fla. Nov. 6, 2008) (internal quotation omitted) (dismissing with prejudice tort claims relating to defective work against a contractor because the plaintiff "fails to allege any negligent activity separate from the activity underlying the breach of contract claims"); *accord In re Chinese Manufactured Drywall Products Liability Litig.* 680 F. Supp. 2d at 799 (under the contractual privity economic loss rule, the terms of the contracts between the homebuilders and the homeowners will generally determine the remedies available to the homeowners). In light of the foregoing, the Plaintiff's tort claims seeking economic damages against Paul Homes must be dismissed under the contractual privity economic loss rule.[5]

---

[4]    *See also Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."); *Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 103 (Fla. 4th DCA 1969) ("[N]o cause of action in tort can arise from a breach of a duty existing by virtue of contract."); *Electronic Sec. Sys. Corp. v. Southern Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("[B]reach of contract, alone, cannot constitute a cause of action in tort . . . [and][i]t is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence.").

[5]    Plaintiffs also cannot recover economic losses because they have <u>suffered</u> no such losses. The MDL Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed." *In re Chinese Drywall*, 680 F. Supp. 2d at 792.

       b.      <u>Products Liability</u>. As for the products liability ELR, Florida courts have defined the products liability ELR as "disappointed economic expectations" where the product "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain." *See In re Chinese Manufactured Drywall*, 680 F. Supp. 2d at 790 (internal marks and citation omitted). In *Casa Clara*, 620 So. 2d at 1248, the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. *Id.* at 1247. Because the plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier. *Id.* at 1246-48.

The same reasoning applies here. Regardless of whether he is in privity with Paul Homes or not, the products liability strand of the ELR bars Plaintiff from suing Paul Homes in tort for purely economic losses and Plaintiff is limited to recovering in tort for only *non*-economic losses (e.g., for personal injury) and damages to property other than the house itself. *Id.* at 1247-48. Plaintiff must therefore, at a minimum replead his tort claims to seek only non-economic losses (if such claims are not otherwise dismissed for the other reasons set forth herein). *Cf.* Cmplt. ¶ 55 (seeking general "damages" on negligence count).

## C.    **Plaintiff has not Stated a Claim for Negligence Per Se (Count II).**

Besides being barred by the economic loss rule, Plaintiff's negligence per se claim (Count II) is poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort. Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiff has not stated a claim for negligence per se for two reasons.  First, he has not identified a statute that Paul Homes allegedly violated, much less explained how that violation occurred.  Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes."  Cmplt. ¶ 52.  Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage.  *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that Paul Homes allegedly violated are "designed to protect the <u>general</u> <u>public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se.  *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added).  In other words, Plaintiff's negligence per se claim appears to be nothing more than a repackaged negligence claim. It should be summarily dismissed for that reason as well.

**D.     Plaintiff cannot sue Paul Homes in strict liability (Count III).**

Plaintiff's strict liability claim (Count III) is premised on the sweeping and patently false assertion that Paul Homes – a builder - was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public."  Cmplt. ¶ 57.

Even assuming that fabricated statement is true, the strict liability theory is nonetheless foreclosed by the ELR (as set forth above) and by at least two other established principles of Florida law.  Indeed, each principle was cited in the November Omnibus Order (*See* **Ex. B**) as an independent basis for dismissing all strict liability claims brought against homebuilders.  There, the same Florida circuit court that later rejected the plaintiffs' negligence theory (*see* Section I.B.1 *supra*) ruled that (1) "only manufactures, and those in the distributive chain of a product, can be

held strictly liable" for allegedly defective drywall; and (2) drywall is not subject to strict liability because it is considered an improvement to real property, not a "product."  *See id.*, November Omnibus Order pgs. 7-9.  Each rationale applies here and each is fatal to Plaintiff's strict liability claim.

First, Paul Homes cannot be strictly liable to the Plaintiff because Paul Homes obviously did not manufacture or distribute the drywall in question. The Complaint itself identifies Paul Homes as a "Developer/Builder."  Cmplt., **Ex. A**, pg. 65 (Subclass #148).  It is firmly settled – and *Bennett* confirms – that strict products liability is reserved for manufacturers and others in the chain of distribution, not homebuilders.  *See, e.g., Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291-92 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Second, it has long been held that strict product liability **does not apply** to "structural improvements" to real estate, such as a home, as a home is not considered a product.[6]  Drywall is a "structural improvement" to real property because it is an *integral part* of Plaintiff's home. "Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate."  *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc*. No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added)[7].  Indeed, Florida

---

[6]     *See Federal Ins. Co. v. Bonded Lighting Prot. Sys., Inc*., No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (dismissing strict liability claim based on lighting system because system was structural improvement to real estate); *see also Virgilio v. Ryland Group, Inc*., 695 F. Supp. 2d 1276, 1283 n.11 (M.D. Fla. 2010) (explaining that "a home is not a product" for purposes of strict products liability, and citing authorities); *see generally Porter v. Rosenberg*, 650 So. 2d 79 (Fla. 4th DCA 1995).

[7]     *See also Plaza v. Fisher Dev., Inc*., 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007) (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v.

courts hearing Chinese drywall cases have similarly found that drywall constitutes a structural improvement to real property for which a strict products liability action will not lie. *See Bissoon v. Centerline Homes Construction, Inc.*, No. 562010 CA 001463 (Fla. 19th Jud. Cir. Mar. 24, 2011) (granting builder's motion to dismiss: "[A]lthough Plaintiff[s'] strict liability claims do allege defective product distribution, permanent improvements to real property are not products for purposes of products strict liability actions"), a copy of which is attached hereto as **Exhibit C**.  As such, Plaintiff's strict liability claim should be dismissed as a matter of law.

**E.      Plaintiffs' breach of contract claim (Count VII) must be dismissed.**

The Omnibus Complaint states that Paul Homes contracted with the Plaintiff to construct a home that would be "free from defects."  Cmplt. ¶ 102.  This assertion is insufficient on its face, because it fails to identify the source of Paul Homes' alleged duty to construct a home "free from defects."  If Plaintiff hopes to salvage his contract claim, he must, at the very least, "identify the relevant portion of the contract breached." *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co.*, No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, *4 (M.D. Fla. Nov. 6, 2008); *see Insurance Concepts & Design, Inc. v. Healthplan Serv., Inc.*, 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached").

While Plaintiff will undoubtedly try to justify his skeletal allegations by pointing to the "Omnibus" nature of the Complaint, the decision to join this litigation does not excuse Plaintiff from satisfying basic pleading standards and it does not cloak him with immunity from the requirements of due process.  The concern is not merely academic, either.  Contrary to the boilerplate allegation in the Omnibus Complaint, Paul Homes did not agree to build a home "free

---

*Davis Water & Waste, Inc.*, 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

from defects." Rather, the construction agreement entered into between Plaintiff[8] and Paul Homes, a true and correct copy of which is attached hereto as **Exhibit D** ("Construction Agreement"),[9] states only that Paul Homes will "provide all materials and perform all work of the construction provided for in the plans and specifications in a workmanship like manner, according to the standard building practices in the community." **Ex. D**, ¶ 2.

Whatever the meaning of this language – and there is good authority that it absolves Paul Homes from liability for the allegedly defective drywall[10] – Paul Homes did not agree to build a home "free from defects." *Cf. Lonnie D. Adams*, 714 So. 2d at 1179 (holding that although contractor had a duty to perform contract in a "workmanlike" manner, there was no implied duty to deliver defect-free windows to the homeowner-plaintiffs). To put it another way, Plaintiff must

---

[8]     Note that, although there is only one Plaintiff named in this Action with respect to this Property (Manuel DaSilva), the Construction Agreement actually identifies Plaintiff *and* Maria A. Quintanilla as co-owners of the Property (and both are parties to the Construction Agreement). *See* **Ex. D**. Pursuant to Fed. R. Civ. P. 19(a)(1), a person must be joined as a party if that person has an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may… "leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest." Plaintiff's failure to join the other owner of the Property as a party-plaintiff in this lawsuit clearly leaves Paul Homes exposed to the possibility of a subsequent lawsuit by the non-joined owner, and creates a substantial risk that Paul Homes may incur double, multiple or otherwise inconsistent verdicts and obligations. Accordingly, Paul Homes requests that this Court issue an Order that Maria A. Quintanilla be made a party-plaintiff in this Action pursuant to Fed. R. Civ. P. 19(a)(2), or, in the alternative, that the Omnibus Complaint be dismissed pursuant to Fed. R. Civ. 12(b)(7) and 19(b).

[9]     The fact that Plaintiff chose not to attach a copy of the Construction Agreement to the Omnibus Complaint does not prevent the Court from considering it now. The Court can and should consider this instrument because it is undeniably central to Plaintiff's claims (especially his breach of contract and breach of express warranty claims) against Paul Homes, and because the documents are publicly available. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (holding that contract could be considered on motion to dismiss where it was attached to motion, referred to in the complaint, and central to the plaintiff's claims); *Aucoin v. Regions Fin. Corp.*, No. 09-3835, 2010 WL 334533, *2 (E.D. La. Jan. 21, 2010) (incorporating Retirement Plan mentioned in complaint and central to one or more of plaintiff's claims); *Federal Ins. Co. v. New Hampshire Ins. Co.*, No. 03-385-CM, 2010 WL 28568, *4 (M.D. La. Jan. 4, 2010) ("Since the insurance policy issued by New Hampshire is central to [plaintiff's] claims, the Court may consider it as evidence even though it was not attached to [plaintiff's] original petition or amended complaint.")

[10]    Indeed, regardless of whether he can ever allege the elements of a breach of contract claim, Plaintiff will be hard-pressed to show that Paul Homes did not construct the home in a workmanlike manner or that it deviated from standard building practices. The Court has determined that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed." *In re Chinese Drywall*, 680 F. Supp. 2d at 792.

base his breach of contract claim (if he had one, which he does not) on an actual contract between the parties.  Unless and until he does that, Plaintiff's breach of contract claim cannot survive.

**F.     Plaintiff Cannot Maintain his Warranty Claims (Counts IV & VI)**.

In Counts IV (Breach of Express and/or Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiff alleges causes of action based on various express and implied warranties. Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties – let alone explain how Paul Homes might have breached them – these improvised warranty claims should be dismissed for several independently sufficient reasons.

**1.     The express warranty claim asserted by Plaintiff is foreclosed by the plain language of the warranty itself.**

According to the Construction Agreement, Paul Homes issued an express warranty guaranteeing workmanship and material (i.e., drywall) for a period of "one (1) year from delivery to Owner."  [*See* **Ex. D**, ¶ 10].  However, Plaintiff has failed to allege (and, in fact cannot allege) that he experienced the defect claimed in the Omnibus Complaint within the applicable one (1) year warranty period.  "[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects - defects that may exist before, but typically are not discovered until after, the expiration of the warranty period."  *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (3d Cir. 1992) (citing numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period but did not manifest until after warranty period had expired); *see Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 616-617 (3d Cir. 1995) ("[L]atent defects discovered after the term of the warranty are not actionable." (citation omitted)); *see also Brisson v. Ford Motor Co.*, 349 Fed. Appx. 433, 434 (11th Cir. 2009) (affirming dismissal of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period") (Florida law);

*accord McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488-T-17EAJ, 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009) (holding that statute of limitations for warranty claim "cannot begin to run later than the expiration of the warranty as the warrantor did not expressly agree to provide warranty coverage beyond this date"); *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 324 (Fla. 3d DCA 2008) ("[T]here can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms.").

In the instant case, the Certificate of Occupancy for this property was issued by the City of Cape Coral, Florida, on November 14, 2006, a true and correct copy of which is attached hereto as **Exhibit E**.[11] According to the Profile Form filed by Plaintiff in this action [attached hereto as **Exhibit F**], Plaintiff moved into the Property on the same date (November 14, 2006). Thus, Paul Homes' delivery of the Property to Owner occurred no later than November 14, 2006, which means that the one (1) year express warranty expired by its own terms no later than November 14, 2007. Because Plaintiff cannot (and did not) allege that he experienced the defect alleged in the Omnibus Complaint within the applicable warranty period, Plaintiff's express warranty claim must be dismissed as a matter of law.

2.    **The implied warranty claims (Counts IV and VI) asserted by Plaintiff are foreclosed by the plain language of the warranties themselves.**

Plaintiff's implied warranty claims must be dismissed as well because the Construction Agreement expressly disclaims all such implied warranties:

---

[11]    The fact that Plaintiff chose not to attach this document to the Omnibus Complaint does not prevent the Court from considering it now. The Court can and should consider this instrument because it is undeniably central to Plaintiff's claims (especially the breach of express warranty claim) against Paul Homes, and because the documents are publicly available. *See* Fla. Stat. §§ 90.202(5), (6), (11) & (12) (setting forth matters that may be "judicially noticed," including "[f]acts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned"); *e.g, Cardona v. City of Tampa*, No. 96-5194, 1998 WL 34201850, at *1 n.1 (Fla. 13th Jud. Cir. Mar. 9, 1998) (granting motion to dismiss with prejudice while taking "judicial notice" of certain public records filed at city council proceeding).

[Paul Homes] guarantees all workmanship and material for one year from delivery to Owner. Two years warranty on mechanicals. <u>This guarantee is in exclusion of and in lieu of all other guarantees and warranties</u>, and liability terminates one year from the date of delivery. All manufacturers warranties shall continue in force and effect according to their titles. Purchaser may not assign this Agreement without the prior written consent of [Paul Homes].

**Ex. D**, ¶ 10. The Construction Agreement further states that "THE CONTRACTOR OR ANY OF THEIR AGENTS HAVE NOT MADE ANY REPRESENTATIONS OR PROMISES IN ADDITION TO THOSE MADE A PART OF THIS CONTRACT." **Ex. D**, ¶ 22.

Contractual exclusions of implied warranties like the ones at bar are valid and enforceable under Florida law. *See Leasetec Corp. v. Orient Sys., Inc.*, 85 F. Supp. 2d 1310, 1315 (S.D. Fla. 1999) (recognizing enforceability of warranty disclaimers); *e.g., Belle Plaza Condo. Ass'n, Inc. v. B.C.E. Dev., Inc.*, 543 So. 2d 239, 240 (Fla. 3d DCA 1989) (condominium developer properly disclaimed any and all express and implied warranties); *Xerographic Supplies Corp. v. Hertz Commercial Leasing Corp.*, 386 So. 2d 299, 300 (Fla. 3d DCA 1980) (defendant could not be liable for breach of implied warranty because agreement disclaimed all implied warranties). As such, Plaintiffs' implied warranty claims are without merit and should be dismissed.

### 3. <u>In any event, Plaintiff cannot maintain a claim for breach of warranty of merchantability or of fitness for a particular purpose.</u>

There are two more reasons to dismiss Plaintiff's implied warranty claims in Count IV. First, as a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by Paul Homes. That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant." *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

Paul Homes is not bound by these implied warranties because it is not considered a merchant under Florida warranty law.  Paul Homes contracts with its clients to provide a service: home construction.  That is why the agreement between Paul Homes and the Plaintiff is called a "Construction Agreement" and not a "purchase agreement."  Because the inclusion of drywall in Plaintiff's home was incidental to the construction services that Paul Homes rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in this circumstance.  *See In re Sunshine-Jr.*, 240 B.R. at 794 ("[A]lthough construction contracts … typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, Plaintiff's implied warranty of fitness claim fails because he does not allege that his drywall was unfit for a <u>particular</u> purpose – that is, "a particular or unusual use different from the purpose for which the item sold is ordinarily used."  *Fred's Excavating & Crane Serv., Inc. v. Cont. Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976).  "Florida courts have determined that in order to state a cause of action for [breach of] an implied warranty of fitness for a 'particular purpose' ... a plaintiff [must] allege the 'particular' purpose for which the goods were warranted as opposed to 'ordinary use' under a warranty of merchantability."  *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (quoting *Weiss v. PPG Indus., Inc.*, 138 F.R.D. 289, 293 (M.D. Fla. 1993)) (dismissing warranty of fitness claim where plaintiff did not allege "the 'particular purpose' for which the motor home was not fit"); *see Fred's Excavating*, 340 So. 2d at 1220 (upholding dismissal of warranty of fitness claim

for same reason).  To the extent he seeks to assert same, Plaintiff's implied warranty of fitness claim must be dismissed because he cannot make this indispensable allegation.[12]

**G.      Plaintiff Cannot State a Claim for Private Nuisance (Count XII).**

The private nuisance claim (Count XII) would fail even if it were not barred by the economic loss rule.  *See* November Omnibus Order (**Ex. B**) (dismissing all plaintiffs' private nuisance claims against homebuilders because "neither [Florida] case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance").  An action for private nuisance requires the claimant to establish an injury to his or her own property <u>in connection with the use of the real property of someone else</u>.  *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another."); *In re: Chinese Drywall Litig.,* No. 10-28090 (Fla. 17th Jud. Cir. Feb. 4, 2011) (dismissing a private nuisance claim based on defective drywall: "This Court finds Judge Kelley's ruling [in the *Bennett* case] to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case"), a copy of which is attached hereto as **Exhibit G**.

The Plaintiff, however, does not allege that his purported injuries resulted from real property owned by someone else.  To the contrary, the nuisance claim is predicated entirely on the allegation that certain conditions existing on the "structures owned by Plaintiffs" are to blame. Cmplt. ¶ 137.  That allegation simply does not state a claim for private nuisance.  *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of

---

[12]      Even assuming the drywall is defective, as Plaintiff alleges, it is nonetheless serving its *intended* purpose as room divider and structural support element.  This Court has ruled that "[t]he Chinese drywall has not deteriorated the walls, making them structurally unsound; it is the exact opposite, the Chinese drywall stands just as any other functioning drywall, <u>serving its intended structural purpose.</u>" *In re Chinese Drywall*, 680 F. Supp. 2d at 792.

private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

**H.    Plaintiff Cannot Bring a Claim for Unjust Enrichment (Count XIII).**

Plaintiff's unjust enrichment claim (Count XIII) fails for multiple reasons.  For one, the Plaintiff and Paul Homes are in privity of contract and such privity forecloses a quasi-contractual theory.   "It is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy." *American Honda Motor Co. v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  Where the plaintiff alleges the existence of a contract, "claims arising out of that contractual relationship will not support a claim for unjust enrichment." *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); *Validsa, Inc. v. PDVSA Serv., Inc.*, 632 F. Supp. 2d 1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties "admitted to the existence of express contracts").[13]

Moreover, the elements of unjust enrichment are that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Commerce Partnership 8098 Ltd. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).  As to the fourth element of unjust enrichment, there is nothing inequitable or unjust about permitting Paul Homes to retain whatever benefit it received for

---

[13]    Even if the existence of an express contract did not bar the unjust enrichment claims of the Plaintiff against Paul Homes, the economic loss rule would.  *Supra.* at Section I.B.2.

constructing the Plaintiff's home.  After all, it cannot be disputed that Paul Homes paid a third party (*i.e.*, a subcontractor or distributor) for the drywall in question.  As the Florida appellate court explained in *Maloney v. Therm Alum Industries, Corp.*, 636 So. 2d 767, 770 (Fla. 4th DCA 1994), "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust.  Consequently, <u>if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit</u>."  *Id. overruled on other grounds by, Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities).  Thus, not only is the Plaintiff's unjust enrichment claim barred because he was in privity of contract with Paul Homes (and thus, has adequate legal remedies), it is precluded because whatever compensation Paul Homes received for the drywall was not retained "unjustly."

I.     **The Omnibus Complaint Fails to State a Claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIII).**

In the overbroad style that is the hallmark of the Omnibus Complaint, Plaintiff also alleges a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*. ("FDUTPA").  Cmplt. ¶ 148.  A FDUTPA claim comprises three distinct elements:  (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages."  *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  "In light of this trend, <u>claims arising under the FDUTPA must be pled with particularity</u>."  *Wrestlereunion, LLC v.*

*Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).   At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard.  Indeed, it alleges <u>no specific facts</u> in support of Plaintiff's FDUTPA claim.  *See* Cmplt. ¶¶ 147-151.  It does not identify a single instance in which Paul Homes – by its words or conduct – deceived Plaintiff or treated him unfairly.  Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b).  *See Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[14]

---

[14]    Plaintiff's FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply.  A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly" and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc.*, No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

Plaintiff's failure, however, is not merely one of pleading. His FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to him. *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury). Because Paul Homes provided services – namely, the construction of a single home – Plaintiff can establish "actual damages" only by showing a difference between the "market value" of the services that Paul Homes actually provided and the services that Paul Homes was required to provide.[15] *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties" (citations omitted)).

As a matter of law, Plaintiff cannot make this showing. There is zero evidence – and Plaintiff does not appear to suggest – that the manner in which Paul Homes constructed the house was in any way responsible for the allegedly defective drywall. The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." *In re Chinese Drywall*, 680 F. Supp. 2d at 792. Thus, even if Plaintiff could conceivably replead his FDUTPA claim with the particularity demanded by Rule 9(b), he cannot establish the "actual damages" component of his claim. Indeed, the FDUTPA statute states explicitly that it does not

---

[15]     The same would hold true if Paul Homes had delivered a "product" – *i.e.*, a completed home – rather than providing a "service." To recover under FDUTPA, Plaintiff would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction."  Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fl. 1995).  Count XIII must be dismissed for this reason as well.

**J.    Plaintiff's Claim for Equitable Relief and Medical Monitoring (Count XIV) Cannot go Forward against Paul Homes.**

Plaintiff's final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XIV).  This hybrid, catchall-type claim seeks, among other things, an order that Paul Homes "buy back or rescind" its contract and "create, fund, and support a medical monitoring program."  Cmplt. ¶ 154.  This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based.  Since each of Plaintiff's substantive claims are due for dismissal, so too is his derivative claim for injunctive relief.  *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiff's substantive claims could survive dismissal and lend support to an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiff has failed to allege an inadequate legal remedy or irreparable harm.  Injunctions under both federal and Florida law require these elements.  *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true,

would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted).  Plaintiff does not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory and statutory damages" – are inadequate and entitle them to the extraordinary remedy of an injunction.  *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiff's request for "medical monitoring," it is unclear whether Florida law even permits this cause of action.  The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring.  It is hardly clear, then, that Plaintiff can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim.  At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999).  The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm.  *Id.*

The Omnibus Complaint does not even attempt to properly allege these elements.  Instead, Count XIV sets forth a series of legal conclusions – *e.g.*, "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct" – without a shred of factual detail.  Plaintiff fails to identify, for example, any medical condition (latent or otherwise) supposedly caused by his drywall; nor does he identify a monitoring procedure for that supposed condition.  Plaintiff does not even claim to be ill.  Yet, he would have this Court speculate about his imaginary ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring.  It states a series of legal conclusions, and those obviously "do not suffice."  *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate).   The glaring deficiencies highlighted above make the final Count subject to dismissal now, on the pleadings.  *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

**K.      The Jury Trial Demand Should Be Dismissed and/or Stricken.**

In addition to dismissing the Omnibus Complaint in its entirety, the Court should dismiss, or in the alternative, strike the demand made by the Plaintiff for a jury trial because the Plaintiff specifically and knowingly waived the right to a trial by jury in the parties' Construction Agreement.  *See* **Ex. D**, ¶21.  That express waiver requires that the jury demand be dismissed and/or stricken.  *See Palomares v. Ocean Bank of Miami*, 574 So. 2d 1159, 1160 (Fla. 3d DCA 1991) (upholding contractual waiver of jury trial).

## II.  CONCLUSION

Paul Homes, Inc. n/k/a Management Services of Lee County, Inc., respectfully requests an order dismissing the claims asserted against it with prejudice, dismissing Plaintiff's demand for a jury trial, and awarding Paul Homes its attorneys' fees and costs in defending this action pursuant to paragraph numbered 21 of the Construction Agreement and pursuant to Florida's Deceptive and Unfair Trade Practices Act.

Dated:  September 9, 2011

**PHELPS DUNBAR, LLP**                                  **AKERMAN SENTERFITT**

By:____/s/ Brent B. Barriere____                       By:____/s/ Stacy Bercun Bohm_____
        Brent B. Barriere (La. Bar No. 2818)                   Stacy Bercun Bohm (Fla. Bar No. 022462)
        Susie Morgan (La. Bar No. 9715)                        Valerie B. Greenberg. (Fla. Bar No. 26514)
        D. Skylar Rosenbloom (La Bar No.                       Leslie Miller Tomczak (Fla. Bar No.
        31309)                                                 126489)
        Canal Place Suite 2000                                 Las Olas Centre II, Suite 1600
        365 Canal Street                                       350 East Las Olas Boulevard
        New Orleans, Louisiana 70130-6534                      Fort Lauderdale, Florida 33301-2229
        Telephone: (504) 566-1311                              Telephone: (954) 463-2700
        Telecopier: (504) 568-9130                             Telecopier: (954) 463-2224
        Email: Brent.barriere@phelps.com                       Email:  stacy.bohm@akerman.com
                Susie.morgan@phelps.com                                valerie.greenberg@akerman.com
                Skylar.rosenbloom@phelps.com                          leslie.tomczak@akerman.com

*LOCAL COUNSEL FOR DEFENDANT*                           *LEAD COUNSEL FOR DEFENDANT*
*PAUL HOMES, INC., N/K/A MANAGEMENT*                    *PAUL HOMES, INC., N/K/A MANAGEMENT*
*SERVICES OF LEE COUNTY, INC.*                          *SERVICES OF LEE COUNTY, INC.*

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing document and exhibits have been served on Plaintiff's Liaison Counsel, Russ Herman, at Herman, Katz & Coltar, LLP, 820 O'Keefe Avenue., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, at Frilot, L.L.C., Suite 3700, 1100 Poydras Street, New Orleans, LA 70163 (kmiller@frilot.com) by U.S. Mail and e-mail or by hand delivery and email, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 9th day of September, 2011.

_____/s/ Stacy Bercun Bohm_____