# EXHIBIT A



Mar 23 2011
11:56AM

IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARLENE BENNETT,                          CASE NO. 502009CA014458
                                          Civil Division "AA" Chinese Drywall
     Plaintiff,

vs.

CENTERLINE HOMES INC., et al.,

     Defendants.

_____/

## OMNIBUS ORDER ON PLAINTIFFS' NEGLIGENCE CLAIMS

     The court has under consideration the homebuilder defendants' Omnibus Motion to Dismiss Plaintiff Homeowners' Negligence Claims.  The installer and supplier defendants have each filed amicus briefs in support of the homebuilders' motion. The issue now before the court has been fully briefed, and was argued at the case management conference held on February 25, 2011.  Having reviewed the submissions of the parties, and having heard the argument of counsel, the court makes the following findings.

     The issue before the court is whether the plaintiffs can state a claim for negligence against any of the defendants (homebuilders, installers or suppliers).  Each class of defendant argues that a claim sounding in negligence is not available to the plaintiffs as there was no duty to protect the plaintiffs from an unknown and unforeseeable harm.   All parties concede that the issue of whether a duty exists in a negligence action is a question of law.  *Michael & Phillip, Inc. v. Sierra*, 776 So.2d 294, 296 (Fla. 4th DCA 2000).

     The court will first address whether there exists a general duty to inspect or test the Chinese manufactured drywall for a latent defect, or to warn homeowners of the existence of a latent defect in the drywall.  It appears clear that such a duty does not exist here.

1

Florida law does not impose a duty to inspect a product for a latent defect, or to warn others about a latent defect, unless the product is inherently dangerous. *See Mendez v Honda Motor Co.*, 738 F.Supp. 481 (S.D. Fla. 1990); *K-Mart Corp. v. Chairs, Inc.*, 506 So.2d 7, 8 n. 3 (Fla. 5th DCA 1987) (retailers have no duty to inspect for latent defects.), *review denied*, 513 So.2d 1060 (Fla.1987); *Dayton Tire and Rubber Co. v. Davis*, 348 So.2d 575, 582 (Fla. 1st DCA 1977) (No duty to warn or inspect unless inherently dangerous.), *quashed on other grounds*, 358 So.2d 1339 (Fla.1978); *Odum v. Gulf Tire and Supply Company*, 196 F.Supp. 35 (N.D.Fla.1961). A product is inherently dangerous if it is "burdened with a latent danger which derives from the very nature of the article itself." *Tampa Drug Co. v. Wait*, 103 So.2d 603, 608 (Fla.1958). Chinese manufactured drywall, while apparently defective, cannot be categorized as inherently dangerous.

To the extent the plaintiffs seek to state a claim sounding in negligence based on a general duty to inspect, test or warn, such a claim is not available. However, this does not end the inquiry. The defendants, in any class, could be held liable in negligence if they had actual or implied notice of the defect in the Chinese manufactured drywall. *Carter v. Hector Supply Co.*, 128 So.2d 390, 392 (Fla. 1961); *Ryan v. Atlantic Fertilizer & Chemical Co.*, 515 So.2d 324, 326 (Fla. 3rd DCA 1987).

Notice must be determined on an individual, case by case, basis. The court cannot, therefore, hold that all negligence claims are barred on an omnibus basis. To the extent the plaintiffs can, in good faith, plead notice against an individual defendant in a specific case, such a claim will survive a motion to dismiss.

The court is cognizant of the fact that as to certain defendants, the plaintiffs have not pled notice.  If not amended, these claims will be dismissed.[1]   To the extent the plaintiffs have alleged notice in individual cases, negligence claims in these cases will survive dismissal at this stage.

Based on the foregoing, it is hereby,

ORDERED AND ADJUDGED that the defendants' omnibus motion to dismiss the plaintiffs' negligence claims is granted, in part, and denied, in part.  Any claim based on a general duty to test or inspect for, or to warn of, a latent defect in Chinese manufactured drywall will be dismissed.  Claims based on actual or implied notice of the defect will not be dismissed.  This order is being entered on an omnibus basis and will be applied to individual cases as required.

DONE AND ORDERED in Chambers, at West Palm Beach, Palm Beach County, Florida this 18 day of March, 2011

JUDGE GLENN D. KELLEY
CIRCUIT COURT JUDGE

Copies furnished to:

Plaintiffs' Liaison Counsel, C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134; Defendants' Liaison Counsel, Todd R. Ehrenreich, Esq. and Michael A. Sexton, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, FL 33133; and for distribution to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with the Electronic Service Order entered in this case.

---

[1] In such cases, the Plaintiffs will need to determine whether there is a good faith basis to allege notice.

3

# EXHIBIT B



LEXISNEXIS' FILE & SERVE
34292782
E-SERVICE
Nov 10 2010
3:14PM

IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARLENE BENNETT,                    CASE NO. 50 2009 CA 014458
                                    Civil Division "AA" Chinese Drywall
        Plaintiff,

vs.

CENTERLINE HOMES INC., et al.,

        Defendants.
_____/

### OMNIBUS ORDER ON PENDING MOTIONS TO DISMISS

The Court has under consideration the following omnibus motions: 1) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Tort Claims Under the Economic Loss Rule and Claims for Private Nuisance (joined by the Albanese-Popkin defendants); 2) Banner Supply Company's Omnibus Opening Brief On Economic Loss Rule and Nuisance (joined by certain installer defendants); 3) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Strict Liability Claims. The omnibus motions now before the Court have been fully briefed, and were argued at scheduled case management conferences. Having reviewed the submissions of the parties, and having heard the argument of counsel, the Court makes the following findings.

Economic Loss Rule

The first issue for consideration is the application of Florida's economic loss rule to the tort claims asserted by the homeowner plaintiffs. The Supreme Court discussed at length the origins and application of the economic loss rule in *Indemnity Insurance Company of North America v. American Aviation, Inc.*, 891 So.2d 532 (Fla. 2004).

1

The economic loss rule is a limitation on tort claims where the damages suffered are economic losses.   Economic losses are defined as damages for inadequate value, costs of repair and replacement of defective products, or loss of profits.  *Id.* at 536; *see also, Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244 (Fla. 1993).  These damages are also described as the loss of the "benefit of the bargain" or "disappointed economic expectations." *Indemnity Insurance, id* at 536.

All of the parties here acknowledge that the economic loss rule would not bar a claim for personal injury caused by defective Chinese manufactured drywall.  Therefore, to the extent that the plaintiff homeowners are suing in tort for personal injury, the economic loss rule does not apply and such claims are not subject to dismissal.  The issue is whether- and to what extent - the economic loss rule bars the recovery of economic damages in the pending Chinese drywall cases.

The Supreme Court made clear in *Indemnity Insurance* that the economic loss rule applies in two distinct circumstances.  First, the rule applies to parties in contractual privity for matters arising out of the contract.  Second, the rule applies to liability for a defective product that causes damage to the product, but causes no personal injury or damage to other property.  Both applications of the rule must be examined here.

1.  <u>Contractual Privity Economic Loss Rule</u>

The defendant homebuilders assert that the plaintiff homeowners are barred from asserting tort claims for their economic losses based on the application of the contractual privity economic loss rule.  The Court agrees.

The Supreme Court in *Indemnity Insurance* explained the rational for application of the contractual privity economic loss rule as follows:

2

A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. *Indemnity Insurance, id* at 536-537.

The plaintiffs' tort claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Supreme Court.

There are recognized exceptions to application of the contractual privity economic loss rule. Independent torts such as fraud in the inducement are not barred by the economic loss rule. *HTP, Ltd. v. Lineas Aereas Costarrricenses, S.A.,* 685 So.2d 1238 (Fla. 1996). Claims for negligence in rendering professional services are not barred. *Moransais v. Heathman,* 744 So.2d 973 (Fla. 1999). Likewise, statutory claims are not barred by the economic loss rule. *Comptech Intern, Inc. v. Milan Commerce Park, Ltd.,* 753 So.2d 1219 (Fla. 1999).

None of the recognized exceptions apply here.[1] The damages sought by the plaintiff homeowners arise out of the contracts they entered with the defendant homebuilders. Traditional contract damages must be applied to the economic losses suffered by the plaintiffs.

---

[1] It is clear that homeowners are not exempt from the application of the economic loss rule on public policy grounds. *Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.,* 620 So.2d 1244, 1247 (Fla. 1993) (refusing to exempt homeowners from the economic loss rule despite their status as "an appealing, sympathetic class"). Moreover, the Court will not create an exception to the contractual privity economic loss rule based on an assertion that the drywall is an unreasonably dangerous product.

2. Products Liability Economic Loss Rule

The products liability economic loss rule applies in limited circumstances notwithstanding the absence of privity.   The rule applies when the product causes damage to itself, but causes no personal injury or damage to other property.   The issue here is whether the plaintiff homeowners' tort claims against the defendant suppliers and installers -- who are not in privity with the plaintiffs - are barred by the economic loss rule.   The Court holds that such claims are not barred.

It appears clear from the Supreme Court's discussion in *Indemnity Insurance* that application of the products liability economic loss rule is limited.   That is to say, the Supreme Court made clear that the products liability economic loss rule should not be extended beyond its intended purpose, and the rule must only be applied in those limited circumstance where all elements necessary for its application have been satisfied.

The Court has considered the well-reasoned discussion of the economic loss rule in Judge Fallon's order in *In Re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780 (N.D. Louisiana 2010).   Judge Fallon traces the origins and history of the rule in Florida (and elsewhere) and discusses the application of the economic loss rule to non-privity defendants in the multi-district Chinese drywall litigation.

It is not necessary to repeat here the analysis of Judge Fallon in considering the application of the economic loss rule to non-privity defendants.   However, the Court will briefly address Judge Fallon's conclusion -- a conclusion which this Court adopts.

Judge Fallon essentially concludes that the Chinese drywall at issue here presents a unique factual scenario that does implicate the products liability economic loss rule at

4

all. The factual distinction lies in the nature of the alleged defect and its impact, or lack thereof, on the product itself.

In cases like *Casa Clara*, the defect in the product damaged the product itself. The defect in the concrete caused the concrete to fail and, presumably, to damage other components of the home. Here, the alleged defect does not damage or affect the product (Chinese manufactured drywall) at all.

In defining the application of the products liability economic loss rule, the Supreme Court has stated that the rule is implicated where "there is a defect in a product that *causes damage to the product*, but causes no personal injury or damage to other property." *Indemnity Insurance, id.* 536 [emphasis added]. Here the alleged defect causes *no damage to the product* and causes *only* personal injury or damage to other property. Under such unique circumstances, the Court agrees that the products liability economic loss rule does not apply.

<u>Private Nuisance</u>

The Court will next consider whether plaintiff can state a claim for private nuisance based on the allegation that the Chinese manufactured drywall is off-gassing causing a nuisance within the effected homes. All defendants assert that the claim for private nuisance under such circumstances cannot be asserted. The Court agrees with the defendants.

Florida law essentially defines nuisance as:

using one's property as to injure the land or some incorporeal right of one's neighbor... The law of nuisance plays between two antithetical extremes: The principle that every person is entitled to use his property for any purpose that he sees fit, and the opposing principle that everyone is bound to use his property in such a manner as not to injure the property or rights of his neighbor... The law of private nuisance is a law of degree; it

5

generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances.

*Beckman v. Marshall*, 85 So. 2d 552, 554-55 (Fla. 1956) (approving and adopting the language of *Antonik v. Chamberlain*, 78 N.E.2d 752 (Ohio Ct. App., 1947).

Plaintiffs assert that there is no exhaustive definition of what constitutes a nuisance citing *Windward Marina, L.L.C. v. City of Destin*, 743 So. 2d 635 (Fla. 1st DCA 1999). While this may be true, Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("This court recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another") (citing *Reaver v. Martin Theatres of Florida, Inc.*, 52 So. 2d 682 (Fla. 1951). It seems clear that the underlying policy of private nuisance jurisprudence does not support the plaintiffs' application of the doctrine of private nuisance in this case.

Plaintiffs rely heavily on the four-part test for proving the existence of a private nuisance purportedly established by the Court in *Beckman*. According to the plaintiffs, none of the four components makes any mention of a requirement that a private nuisance must involve two landowners. However, such a roadmap for establishing a private nuisance is neither expressed nor implied by the Court in *Beckman*.

In fact, much of the instructive language in *Beckman* seems to contradict the plaintiffs' position that nuisance actions do not necessarily involve contemporaneous and proximate private land owners. *Beckman, id* at 555 ("no one has absolute freedom in the

6

use of his property, because he must be restrained in his use by the existence of equal rights of his neighbor to the use of his property."). *Id.*

Further, none of the cases plaintiffs rely on directly support the contention that a nuisance may exist absent a defendant's exercise of its property rights. *See, e.g., Davey Compressor Co. v. City of Delray Beach*, 639 So. 2d 595 (Fla. 1994) (holding that a defendant who illegally disposed of a highly toxic solvent by dumping it onto the grounds at the rear of its facility created a nuisance because it contaminated plaintiff's water supply); *Kotcher v. Santaniello*, 438 So. 2d 440, 441 (Fla. 1983) (declining to reverse an injunctive order which was "principally predicated upon a determination that the appellants' conduct in keeping and training dogs for attack and security purposes constituted a nuisance in the residential neighborhood where all of the parties resided").

The only case which arguably supports plaintiffs' position, *Putnam v. Roudebush*, 352 So. 2d 908 (Fla. 2d DCA 1977), held that a noisy air conditioner was a "continuing nuisance" that constituted a "permanent defect in the realty." However, private nuisance was not even a claim in the *Putnam* case. The Court's reference to the air conditioning being a nuisance was merely a descriptive reference, and not a statement of a legal claim.

Taken together, neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case. The Court concludes that plaintiffs' claims for private nuisance must be dismissed.

## Strict Liability

The defendant homebuilders have moved to dismiss the plaintiffs' strict liability claims. The homebuilders advance two grounds for dismissal. First, the homebuilder defendants assert that only manufacturers of the product and those in the chain of

7

distribution can be held strictly liable and they are neither.   Second, the defendant homebuilders assert that strict liability does not apply to improvements to real property. The Court will begin with the homebuilders' second argument.

The law in Florida appears to be well settled that strict liability does not apply to improvements to real property as improvements to real property are not considered products. *Plaza v. Fisher Development, Inc.*, 971 So.2d 918 (Fla. 3rd DCA 2007); *Neumann v. Davis Water & Waste, Inc.*, 433 So. 2d 559 ( Fla. 2d DCA 1983) *see Easterday v. Masiello*, 518 So.2d 260, 261 (Fla.1988) ("[I]t has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate."); *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1291 (Fla. 5th DCA 1986).

Plaintiffs argue that an exception exists with respect to improvements to real property "where the injuries result not from the real property as improved by the alleged defective product but directly from a defective product manufactured by defendant, which product may have itself been incorporated into the improvement of the realty before the injury from the product occurred." *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1292 (Fla. 5th DCA 1986); *Craft v. Wet 'N Wild, Inc.*, 489 So.2d 1221, 1222 (Fla. 5th DCA 1986).   Plaintiffs conceded at oral argument that this exception has never been applied in a reported Florida case.  Indeed, the exception appears to be *dicta* in the cases that mention it.

Whether the exception advanced by the plaintiffs exists or not, it does not appear that the exception would apply to the defendant homebuilders in this case.    The exception appears to apply to the manufacturer of an allegedly defective product which

8

happens to be incorporated into the real property. The defendant homebuilders did not manufacture the drywall at issue.

The defendant homebuilders also argue that only manufacturers, and those in the distributive chain of a product, can be held strictly liable. Defendant homebuilders assert that they are not manufacturers and they are not within the distribution chain of the drywall at issue. While the plaintiffs argue otherwise, the Court finds that the defendant homeowners' position has merit.

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that the plaintiff homeowners' tort claims against the defendant homeowners seeking economic losses are dismissed based on the privity economic loss rule. The request of the defendant suppliers and installers (who lack privity with the plaintiffs) to dismiss the plaintiffs' tort claims based on the products liability economic loss rule is denied. The plaintiffs' claim for private nuisance against all defendants is dismissed. Likewise, the plaintiffs' claims for strict liability against the homebuilder defendants are dismissed.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida this 5th day of November, 2010.

JUDGE GLENN D. KELLEY
CIRCUIT COURT JUDGE

Copies furnished to:

Plaintiffs' Liaison Counsel, C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134; Defendants' Liaison Counsel, Todd R. Ehrenreich, Esq. and Michael A. Sexton, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, FL 33133; and for distribution to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with the Electronic Service Order entered in this case.

9

# EXHIBIT C

IN THE CIRCUIT COURT OF THE 19TH
JUDICIAL CIRCUIT IN AND FOR
ST. LUCIE COUNTY, FLORIDA.

CASE NO. 562010CA001463

SURESH and OMA BISSOON,

    Plaintiffs,

v.

CENTERLINE HOMES CONSTRUCTION, INC.,
a Florida corporation; CENTERLINE PORT ST.
LUCIE LTD., a Florida Limited Partnership;
OCEAN COAST DRYWALL, INC., a Florida
Corporation; and BANNER SUPPLY COMPANY
PORT SAINT LUCIE, LLC, a Florida Limited
Liability Company,

    Defendants,

_____

### ORDER ON DEFENDANTS', CENTERLINE PORT ST. LUCIE, LTD., AND CENTERLINE HOMES CONSTRUCTION, INC.'s MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

THIS CAUSE, having come before the Court upon Defendants', Centerline Port St. Lucie

Ltd and Centerline Homes Construction, Inc.'s, Motion to Dismiss Plaintiffs' Second Amended

Complaint, and the Court having heard argument of counsel and being otherwise advised in

the premises, it is hereupon,

ORDERED and ADJUDGED that said motion be and the same is hereby granted in that

although Plaintiff's strict liability claims do allege defective product distribution, permanent

Br

Improvements to real property are not products for purposes of products strict liability actions. These claims are dismissed.

Likewise the motion is granted because Plaintiff's private insurance claims do not state a cause of action against these defendants. These claims are also dismissed.

The motion is otherwise denied.

These defendants are permitted twenty (20) days to answer the Complaint.

DONE AND ORDERED in Chambers at Fort Pierce, Saint Lucie County, Florida this 24th day of March, 2011.

DWIGHT L. GEIGER, Circuit Judge

Copies furnished:
Vanessa M. Serrano, Esquire
C. David Durkee, Esquire

# EXHIBIT D

PAUL HOMES
CONSTRUCTION AGREEMENT - 10' Tiebeam

AGREEMENT made this August 16, 2005, by and between Manuel J. DaSilva and Marla A. Quintanilla, of 390 North Road, Bedford, MA 01730, Phone: (781) 275-4760, hereinafter called "Owner" and Paul Homes, Inc., d/b/a Paul Homes, 4524 SE 16th Place #2C, Cape Coral, FL 33904, phone: (239) 542-1750; fax (239) 542-0925 hereinafter called the "Contractor."

WHEREAS, the Contractor promises and agrees to and with the Owners that he will for consideration hereinafter mentioned construct a residence on land known as LOT 17 - 18, BLOCK 4605, UNIT 69, SUBDIVISION Cape Coral, County of Lee, State of Florida.

1.  The Contractor shall construct upon the building site a building in accordance with the plans and specifications hereto attached.

2.  The Contractor shall provide all materials and perform all work of the construction provided for in the plans and specifications in a workmanlike manner, according to standard building practices in the community.

OWNER shall pay the Contractor for such construction in the amount of FOUR HUNDRED TEN THOUSAND U.S. Dollars.

| | |
|---|---|
| $ 410,000 | payable as follows: |
| $< 41,000> | Deposit (Earnest Money) due upon contract signing made payable to Paul Homes |
| $ 369,000 | As per Lender's/Contractor's draw schedule |

3.  Owner herewith grants access to the land to the Contractor, for construction of a new residence. Owner may occupy the residence upon substantial completion and issuance of Certificate of Occupancy and payment by owner of all monies due the Contractor for this Agreement. Unpaid monies from the date of completion bear 18.0% interest. It is expressly understood and agreed that the Owners are not to occupy or otherwise take possession of the premises being improved pursuant to this contract prior to such final settlement unless written consent of such occupancy is granted to the owners by the Contractor.

4.  After the plans and specifications are signed and sealed, they shall become a Contract Document. No changes will be made except by a written change order, signed by all parties. Each change by the Owners subsequent to said construction plans and specifications, shall carry a processing fee of $500.00 per change order in addition to regular charges or credits to the change requested. IT IS SPECIFICALLY UNDERSTOOD THAT NO STRUCTURAL CHANGES OR MODIFICATIONS WILL BE ACCEPTED AFTER THE PLANS ARE SUBMITTED TO THE TRUSS ENGINEER.

5.  Contractor agrees to use his best effort to deliver the building specified herein on or about 240 days (8 months) from start of construction. Start of construction is defined as the date on which concrete footings are poured. The construction period can be influenced by weather, material and labor availability.

6.  This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the Owner and Contractor.

7.  The Contractor will furnish Builder's Risk Insurance in the full amount of this contract during the construction period. Contractor will also furnish Public Liability Insurance.

8.  The Owners agree that the Contractor shall have the right to substitute materials or items of comparable quality for such material or items that may be unobtainable by reason of labor disputes or discontinuance of production for any reason. Contractor shall give Owner advance notice of substitutions when possible. No Owner-supplied material.

9.  The Contractor will pay utility company bills for electricity and water used during construction. Should electricity or water not be available to the Owner's lot during construction, the Contractor will rent equipment to provide same at the Owner's expense at prevailing local rates.

10. The Contractor guarantees all workmanship and material for one year from delivery to Owner. Two years warranty on mechanicals. This guarantee is in exclusion of and in lieu of all other guarantees and warranties, and liability terminates one year from date of delivery. All manufacturer's warranties shall continue in force and effect according to their titles. Purchaser may not assign this Agreement without the prior written consent of the Contractor.

11. The Contractor will furnish brick paver driveway and walkway of up to ___1,300___ square feet. Additional driveway and walkway will be charged to the Owner at $6.60 per square foot.

12. The Contractor will connect to public water and sewer lines to a distance of 65/60 feet. Cost of lines required over that distance and any connection fees will be borne by the Owners.

13. If there is to be a mortgage and construction loan, the Owner agrees to make application, and to execute all necessary papers for a mortgage loan on the above described property in an amount necessary to close. The Owner agrees to pay all loan costs including the cost of abstract or title insurance premium, Intangible Tax with Documentary Stamps on the mortgage, all recording fees, credit report, appraisal fees and any loan charges made by the lending institution. Flood insurance, any prepaid insurance requirement and all construction interest is to be paid by the Owner.

14. This Agreement covers construction of the above-described residence on a clear and level lot. Should the slope or elevation of the lot be such as to require extra foundation block or fill dirt under the slab, patio, drives or walks, over and above that which would be required up to Standard Three Course Foundation, the expense of same will be borne by the Owners. The expense of any fill dirt required at the time of grading the lawn area, removal of excess dirt, trees and vegetation necessary to provide proper grade, any additional expenses caused by rock or other adverse subsoil conditions, and expense of electric service runs across the building necessitated by power company pole locations and regulations, or underground electric and/or telephone service when required will be borne by Owners. Expense for retaining walls for pool, home, or patio foundations shall be by Owners.

INITIALS: PAUL HOMES:
OWNER:
OWNER:

CONSTRUCTION AGREEMENT - Page 2
Mr. Manuel DaSilva & Ms. Marie Quintanilla

15. If the Owners or a governmental agency causes a delay in starting construction beyond ninety (90) days from the date of this Agreement, the contract price may be subject to change.

16. At the final closing, an affidavit of "no liens" covering all materials and labor will be presented to the Owners by the Contractor.

17. The Contractor shall not be held responsible for the following: A) Rock formations encountered during construction (subsoil conditions); B) Removal of trees, boulders, brush or stumps; C) Non-structural cracks in concrete; and D) Perishable items such as sod, plants, or trees after installation, if neglected by Owner.

18. It is hereby understood that the Contractor is to deliver the above listed residence on owner's lot to the point of completion (C/O obtained). The Contractor is hereby authorized to execute any and all additions as outlined in above mentioned articles to make livable delivery possible, in accordance with any and all governmental regulations and laws. It is understood that the charges, if applicable, shall be paid by the Owners.

19. Owners hereby agree that the Contractor may proceed immediately to secure the necessary documents that may be required by the lending institution to approve the loan and/or by the appropriate building department or Governmental Agency to secure the necessary building permits. The documents include but are not limited to Surveys, Soil Analysis, Percolation Testing, Preliminary Drawings and Blueprints. In the event the loan is denied the Owners, or the Owners cancel or default on this Agreement prior to construction permit issued, any expense and overhead incurred by the Contractor in securing said documents including sales expenses shall be paid for by the Owners.

20. Closing and settlement of the Agreement will be within ten (10) days of notice by Contractor to Owner that the premises are substantially ready for occupancy. Owner shall not unreasonably delay closing because of minor work that does not interfere with occupancy. Said minor work will be listed on a compliance list, signed by the Owner and Contractor. This work will be scheduled and completed by the Contractor as quickly as possible after occupancy. Time is of the essence in this Agreement. Should the Owner fail to close and settle the contract within the specified ten (10) days, Owner shall be liable to Contractor for interest at the rate of 18.0% per annum on the amounts unpaid on the Contract.

21. All claims or disputes that arise out of, or are otherwise related to this agreement, shall be resolved by state court litigation, with venue to lie in Lee County, Florida. However, in the event Contractor proceeds with a lien foreclosure action because of contractor having recorded a construction lien against owner's property in another county than Lee County, Contractor shall have the right, but not the obligation, to litigate all claims or disputes in the other county, as well. The parties to this agreement specifically and knowingly waive right to trial by jury, agree to submit all claims or disputes to bench trial, only. The prevailing party shall recover, from the loosing party, all reasonable attorney fees and court costs and other suit expenses incurred, whether or not such costs or expenses are ordinarily taxable under the Uniform Guidelines for Taxing Costs.

22. THE CONTRACTOR WILL NOT BE HELD RESPONSIBLE FOR ANYTHING NOT INCLUDED AS PART OF THE CONTRACT DOCUMENTS. IT IS EXPRESSLY STATED THAT ALL TERMS AND CONDITIONS OF THIS CONTRACT ARE INCLUDED IN THIS AGREEMENT. THE CONTRACTOR OR ANY OF THEIR AGENTS HAVE NOT MADE ANY REPRESENTATIONS OR PROMISES IN ADDITION TO THOSE MADE A PART OF THIS CONTRACT. CONTRACTOR IS ONLY BOUND WHEN WRITTEN ADDENDUMS ARE SIGNED BY BOTH PARTIES AND MADE A PART OF THIS AGREEMENT. WRITTEN CHANGE ORDERS ARE SUBJECT TO WORK NOT HAVING BEEN STARTED OR ORDERED ON AFFECTED ITEMS.

23. Other Agreements made a part of this contract are:

A. Addendums 1, 2, 3, 4, 5, 6 & 7 are hereby made a part of this agreement.

ACCEPTED AND APPROVED

_____     8.18.05
OWNER                       DATE

_____     8-16-05
PAUL HOMES                  DATE
Robert D. Knight, Jr. - Vice President

_____     8/18/05
OWNER                       DATE

**PAUL HOMES**
**EXECUTIVE CONSTRUCTION FEATURES**
**ADDENDUM #1 SPECIFICATIONS**
**10' TIEBEAM**

RESIDENCE FOR: Manuel DaSilva & Maria Quintanilla  MODEL TYPE: 10' Ashford II Gold Packagew/Pool

STANDARD CONSTRUCTION FEATURES (MAY BE REVISED BY ADDENDUM #2):

### CONSTRUCTION

- All building permits
- Builders Risk Insurance. Note: Owner responsible for flood insurance if required.
- Full set of construction blue prints
- 8" X 16" steel reinforced concrete footer with 3 course stemwall
- 4" reinforced concrete slab with 6 mil. vapor barrier
- CBS construction with complete stucco exterior (skip-trowel finish)
- 8" X 16" continuous steel reinforced tiebeam
- Certified soil treatment against termites under concrete slab
- Engineered roof trusses with steel anchor hurricane straps embedded in tie beam
- ½" plywood roof sheathing
- Bronze or white framed aluminum windows with screens
- Aluminum garage service door
- Alcoa aluminum soffit and 6" fascia
- Steel garage door
- Garage floor finished with concrete stain
- 2" x 4" wood studs in interior walls framed at 16" O. C.

### INSULATION & AIR CONDITIONER

- Living areas only - R-30 ceilings, R-5 masonry walls
- RHEEM 12 SEER high efficiency AC unit
- All walk-in closets are air conditioned with separate ducts
- Air returns as required by Building Code

### INTERIOR TRIM

- ½" drywall interior with light knock down finish
- Shower wall to be dense shield and tub wall to be water resistant greenboard
- Raised panel interior doors ( 8' high colonist)
- Colonial baseboards and door casings
- Insulated metal entry doors
- KwikSet interior lever doorknobs with choice of finish
- Kwikset 600 series entry handleset with choice of finish
  (polished brass cannot be warranted against pitting)
- Ventilated shelving in all closets
- Pull down attic stairs in garage

### INTERIOR FINISH

- Standard wall tile in tub & shower area
- Recessed soap/shampoo holder and tiled seat in walk-in showers
- Corian window sills in glacier white
- Model carpet
- Free professional decorator service

### PAINTING

- Flexbon #14 paint or equivalent with 2 coats exterior
- Flexbon #14 paint or equivalent sprayed with 1 coat interior
- Flexbon #14 enamel or equivalent interior doors and trims
- Interior ceiling, trim and walls to be two colors upgraded
- Exterior stucco trim to be different from walls (one trim color)

INITIALS: PAUL HOMES:
OWNER:
OWNER: 

**PAUL HOMES**
**EXECUTIVE CONSTRUCTION FEATURES**
**ADDENDUM #1 SPECIFICATIONS - Page 2**
**10' TIEBEAM**

RESIDENCE FOR: Manuel DaSilva & Maria Quintanilla  MODEL TYPE: 10' Ashford II Gold Packagew/Pool

## ELECTRICAL

- Structured Wiring Solution to include:
  - Includes up to 6 telephone/data outlet locations
  - Includes up to 6 coax outlet locations for video with amplification
  - Includes RG-6 coax cable
  - Includes satellite TV pre-wire (2 high speed coax cables to SW corner location for satellite dish hook-up)
  - Includes high speed cable (1 CAT5 and 1 RG6 coax) from service provider location
- Hurricane Generator Ready Panel Program to include:
  - Includes 200 Amp main breaker electrical panel with mechanical interlock breaker with generator manual transfer switch
  - Includes one (1) 50 Amp 220 Volt generator interface breaker
  - Includes one (1) 50 Amp 220 Volt generator receptacle
  - Includes one (1) 50' cord with 50 Amp 220 Volt plug for generator panel, receptacle and 30 Amp 120/240 Volt plug for generator
- Back to back 200 amp overhead electrical service with circuit panel
- 'Deco' white electrical switches and outlets
- Smoke detectors to code
- 2 exterior water proof outlets
- Garage door opener
- 7 ceiling fans Model #10525 installed
- Additional ceiling fans installed at $65 per fan
- All recessed lighting (shown on blue prints) included
- Main line surge protector
- Front door bell chimes

## PLUMBING

- PEX overhead plumbing
- 50 gallon water heater
- 1/3 HP garbage disposal
- Cultured marble tops in baths
- Laundry tub with Nemac base cabinet and standard faucet in laundry room
- Icemaker line
- 3 exterior hose bibs
- Standard white Americast tub in guest bath
- Standard white 'American Standard' elongated water-saver toilets
- Soaking tub in master bath

## CABINETS

- Custom raised panel cabinets with full European fronts in kitchen
- 36" custom raised panel vanity cabinets with full European fronts and marble tops in baths
- Concealed hinges in kitchen & bathrooms
- Full length mirror above all vanities
- Mirrored medicine cabinets
- 42" high upper cabinets in kitchen
- Upper cabinets in laundry room (Thermofoil)
- Ceramic tile on outside wall of bar

## EXTERIOR FINISH

- Up to 7000 sq ft of Floratam sod
- Landscaping to meet code
- 1,300 sq ft of brick paver drives and walks *upgraded*
- Full outside rain gutters and downspouts
- Concrete stain on garage floor

INITIALS: PAUL HOMES:
OWNER:
OWNER:

**PAUL HOMES**
**ADDENDUM NO. 2 – Page 1 of 2**
Manuel DaSilva & Maria Quintanilla
10' Ashford II Gold Package with Pool
LOT 17 - 18,  BLOCK 4605, UNIT 69

1.  The Ashford II 10' design, right hand garage, 3 Bedroom/2 ½ baths with                    $410,000
    approximately 2,557 sq ft living with approximately 3,614 sq ft total.  Home to be positioned
    on the lot with 25' front setback and centered on lot.

2.  Lot Preparation                                                                             Included

    a.   All fill and grading for a two course stemwall on existing grade.
    b.   Water line hook-up to 65'
    c.   Sewer line hook-up to 60'
    d.   Dual water line installation if available
    e.   Surveys
    f.   Impact Fee Allowance of $ 3,087
    g.   Water & Sewer Impact Fee and Water Meter Allowance of $ 4,309
    h.   School Impact Fee Allowance of $2,283

3.  The following Gold Package is included:

    a.   Ten (10) year structural warranty and Two (2) years on major systems
    b.   Standard lot improvements on existing grade, and all Impact/Permit Fees for a standard
         80'x125' Cape Coral lot with water and sewer.
    c.   Storm panels as required by the Florida Building Code
    d.   Pre-treat frame stage mold
    e.   All required surveys and engineered blueprints
    f.   Color-Thru barrel tile roof in standard colors.
    g.   State-of-the-art structured wiring system.
    h.   10' Tie Beam with 8' raised panel interior doors and 5-1/4" Colonial Trim
    i.   Good Cents Package: Tinted windows, R-5 energy board on masonry walls, R 30 insulation in ceilings,
         12 SEER A/C unit, heat recovery system, 50 gallon water heater, mastic all duct joints and programmable
         thermostat
    j.   Granite (Level 3) countertops with Corian® sink in kitchen and  Corian® window sills in Glacier White
         *upgraded*
    k.   Complete flooring package including tile floors everywhere except bedrooms and closets (Deluxe Series).
    l.   GE Appliances Bisque: Cook Top 30" JB350TC, one 30" Wall Oven  JTP20WF, Spacemaker Microwave
         JVM1850WH, Dishwasher GSD5500FCC, 25 cu ft Refrigerator GSS25WGCC w/water & ice,
         Washer WCRE6270D and Dryer DWXR483EB *upgraded*
    m.   TAJ leaded glass front door inserts *upgraded*
    n.   Manabloc Plumbing System
    o.   42" Upper cabinets in laundry room (Thermofoil)
    p.   Decorator light fixtures ($2,500 allowance)
    q.   Upgraded Moen plumbing fixtures in choice of finishes as follows:
         Kitchen:      Moen 7570 Salora w/Pull-Out Spray, Sink & Strainers,
         Master Bath:  (2) Moen 4570C/P/9737 2C/P Monticello Chrome P13, (1) Moen T951Monticello Chrome
                       PB Deckmount, (1) Moen 3847C/P Personal Shower on  Glide Bar w/ a Moen T2441C/P to
                       turn on & off and Chrome Strainer
         Guest Bath:   (1) Moen Castelby 4938C/P Lav Faucet, (1) Moen TL2378C/P Tub & Shower Faucet, (1)
                       Chrome Tub Trim Kit
    r.   High quality wood cabinets in choice of finishes and design in kitchen
    s.   In Wall Pest Prevention System
    t.   Seven (7) ceiling fans - Model #10525-6 installed
    u.   Ceramic tile on outside wall of bar and rounded interior drywall corners.
    v.   Automatic garage door opener with 2 remote controls
    w.   Upgraded landscape pkg. To include automatic sprinkler system, floratam sod, 3 Queen Palm trees
         and 10 shrubs and $2,000 additional landscape allowance *upgraded*
    x.   Full perimeter security system with 2 keypads and 2 motion detectors
    y.   Garage floor finished with concrete stain
    z.   Cultured marble tops in all baths and soaking tub in master bath
    aa.  Full outside rain gutters and downspouts
    bb.  Wire lathe and stucco on lanai and entry ceilings

INITIALS: PAUL HOMES:
          OWNER:
          OWNER:

**PAUL HOMES**
**ADDENDUM NO. 2 - Page 2 of 2**
Manuel DaSilva & Maria Quintanilla
10' Ashford II Gold Package with Pool
LOT 17 - 18, BLOCK 4605, UNIT 69

4. Provide a pool package of:

    a.  14' x 28' Diamond Brite pool in standard colors with an approximate 26' x 4' x 60' paver deck & lanai
    b.  Up to three course pool retaining wall
    c.  Bronze or white mansard cage with 2 doors and super gutter
    d.  Timer, pump, filter, light, tablet chlorinator and autofill
    e.  Manual cleaning equipment
    f.  Includes a pool alarm system per Florida Statutes Chapter 515
    g.  If additional retaining wall is necessary, there will be an extra charge of $1,200 per course,
        (Includes masonry, labor, stucco and paint). Should the pool retaining wall
        exceed 30" in height, building code requires safety railings around the enclosure.
        (Cost of such to be additional)

5. Provide the following upgrades that are included:

    a.  Upgrade kitchen countertop from Corian® to Level 3 Granite with Corian® sink
    b.  Upgrade from etched entry doors to TAJ leaded glass front door inserts
    c.  Crown molding in all tray ceilings and four (4) plant shelf outlets on one switch
    d.  Two interior paint colors
    e.  Add pool bath with sink Reminiscence #0511.800 and toilet Reminiscence #2011.026
    f.  Upgrade driveway, walkway and entry from concrete to standard brick pavers
    g.  $2,000 additional landscape allowance
    h.  Summer kitchen on lanai, includes privacy wall, base cabinets with stucco finish and stainless steel doors,,
        sink, hood venting, two (2)GFI outlets, two (2) overhead can lights with switch, Vermont 30" gas grill,
        under counter stainless steel refrigerator
    i.  Pre-wire for future pool heater and pool/spa remote control system
    j.  Upgrade pool deck and lanai from spraycrete to brick pavers
    k.  French door to master bedroom
    l.  Staggered cabinet in kitchen
    m.  Undermount lights and lightrail in kitchen
    n.  One (1) trash roll-out
    o.  Chair rail in dining room, breakfast nook, family room, and bedroom #5 (like Ashford II Model)
    p.  Medallion Silverline wood cabinets in master bath and guest bath
    q.  Tile backsplash in kitchen (Deluxe Series)
    s.  Credit and delete soffit in kitchen (can lights left mounted into ceiling)
    s.  50' allowance for underground electric (additional charged at $10.75 per ft.)
    t.  Increase bedroom #2 by 110 sq. ft. (17' x 12'), to be made a home theater room with R-11 sound resistant
        insulation on frame walls of room
    u.  Convert dining room to den with two 3080 French Doors

**TOTAL INVESTMENT $410,000**

**ACCEPTED AND APPROVED**

OWNER          DATE             8.15.05
PAUL HOMES          DATE   8-15-05
Robert D. Knight, Jr. - Vice President

OWNER          DATE   8/18/05

City of Cape Coral

Permit # _____

Block # _____ Lot _____

## Residential Swimming Pool
## Spa and Hot Tub Safety Act
## Requirement

I, _____, License # _____
(Please Print Contractors, Name)
hereby affirm that one of the following methods will be used to meet the
requirements of Chapter 515, Florida Statutes.

_____ The pool will be isolated from access to the home by an
enclosure that meets the pool barrier requirements of Florida Statutes, Section
515.29;

_____ The pool will be equipped with an approved safety pool cover that
complies with ASTM F1346-91 (Standard Performance Specifications for Safety
Covers for Swimming Pools, Spas and Hot Tubs);

____X____ All door and windows providing direct access from the home to the
pool will be equipped with an exit alarm that has a minimum sound pressure
rating of 85 decibels at 10 feet;

_____ All doors providing direct access from the home to the pool will be
equipped with a self-closing, self-catching device with a release mechanism
placed no lower than 54" above the floor or deck;

***********************In Addition To:***********************

_____ If a fixed barrier is to be used in place of the screen around the
perimeter of the pool, then no property perimeter fence will be required.

_____ If Baby Barrier around perimeter of pool is not permanently affixed
to the pool deck, a property fence will be required.

All fences must be a minimum 48" high, with 54" high gate latches. All gates shall
swing to the outside and be self closing self latching.

I understand that a barrier must be placed around the perimeter of the pool and
must be separate from any fence, wall, or other enclosure surrounding the yard
unless the fence, wall, or other enclosure or portion thereof is situated on the
perimeter of the pool, is being used as part of the barrier, and meets the barrier
requirements of this section. I also understand that not having one of the above
installed at time of final inspection will constitute a violation of Chapter 515 F.S.

_____
CONTRACTOR'S SIGNATURE

_____
OWNER'S SIGNATURE

MANUEL J. DABILVA
OWNER'S NAME (PLEASE PRINT)

MARIA A. QUINTANILLA

4/19/05 DAJ

**PAUL HOMES**
**ADDENDUM #4 - DISCLOSURES TO PURCHASER**

SALES DISCLOSURE:

Upon closing of the purchase of your home, additional costs may be borne by you in the form of closing costs. A list of the known major cost items are:

1. Homeowner's Insurance.
2. Intangible Tax.
3. Documentary Stamps on Deed.
4. Recording Fees on Deed.
5. Title Insurance.
6. Proration of Real Estate Taxes, County Garbage Collection, and Homeowner's Association fees.

If you will be obtaining financing for your purchase, additional costs related to the new mortgage are:

7. Survey.
8. Service Fee (or Origination Fee) on new mortgage.
9. Documentary Stamps on new note.
10. Recording Fees on Mortgage.
11. Credit Report Fee.
12. Mortgage Company's Fees.
13. Appraisal Fee.
14. Title Insurance for Mortgagee.
15. Set-up of Escrow Account (taxes and insurance).

RADON GAS:

Radon is naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit. Pursuant to S404.056(8), Florida Statutes.

_____  8:18-05          _____  8/18/05
OWNER            DATE              OWNER            DATE

**PAUL HOMES**
**ADDENDUM #5**
**EXPRESS ASSUMPTION OF RISK AND LIABILITY RELEASE AGREEMENT**

I, the undersigned, hereby acknowledge that I am voluntarily entering upon the residential construction site commonly referred to as Block 4605, Lots 17 - 18, Unit 69, Cape Coral Subdivision. I acknowledge and appreciate that hazardous conditions exist upon the construction site which are unavoidable and ongoing, and that certain risks and dangers exist which are inherent in any construction site, including, but not limited to, loss or damage to personal property, personal injury or fatality. Such risks stem from the operation of power tools, construction vehicles, the falling of tools and/or materials, trenches and holes created during the construction process as well as innumerable risks incident to the construction of dwelling units.

I AM AWARE THAT ENTRY UPON THE CONSTRUCTION SITE IS A HAZARDOUS ACTIVITY, AND I AM VOLUNTARILY ENTERING UPON THE CONSTRUCTION SITE WITH THE KNOWLEDGE OF THE DANGER INVOLVED AND I AGREE TO ACCEPT AND ASSUME ANY AND ALL RISKS OF INJURY, DEATH AND PROPERTY DAMAGE TO MYSELF, MY HEIRS, OR VISITOR THAT ACCOMPANY ME.

_MSD_
Initial

_MAC_
Initial

I assume the risks set forth above and agree to release, indemnify and hold harmless Paul Homes, Inc., d/b/a Paul Homes  and its officers, directors, shareholders, employees and agents from any liability, resulting from the negligence or other acts of others, its agents and employees, suffered on the construction site.  In addition, I hereby release and discharge Paul Homes, Inc., d/b/a Paul Homes, its agents and employees, from all claims and actions I, my heirs, my invited visitors, or legal representatives now have or may hereafter have, for injury or damages arising out of or related to my entry upon the construction site.

I HAVE CAREFULLY READ THIS PARAGRAPH AND FULLY UNDERSTAND ITS CONTENTS. I AM AWARE THAT THIS IS A RELEASE OF LIABILITY AND LIMITS MY RIGHTS TO SUE Paul Homes, Inc., D/B/A PAUL HOMES IN THE EVENT OF INJURY, DEATH OR PROPERTY DAMAGE TO MYSELF, MY VISITORS OR ANY MEMBER OF MY FAMILY, AND I SIGN IT OF MY OWN FREE WILL.

_MSD_
Initial

_MAC_
Initial

PAUL HOMES
ADDENDUM #6 - NOTICE OF CONSUMER RIGHTS

## NOTICE OF CONSUMER RIGHTS UNDER THE
## CONSTRUCTION INDUSTRIES RECOVERY FUND

You have certain rights under Florida law if you have suffered damages caused by a state-licensed contractor or a construction company with whom you have signed a contract. State law requires that you be provided with this notice of your rights regarding the Construction Industries Recovery Fund, including how and where you can file a claim against the Fund for reimbursement of any damages you have suffered.

You may be eligible for reimbursement if you have suffered monetary loss due to certain acts (described below) by the contractor, financially responsible officer or business organization licensed under Chapter 489, Part I, Florida Statutes. The Fund is available only in cases where the contract was signed and the violation occurred on or after July 1, 1993.

### Who Is Eligible?

In order to seek compensation from the Construction Industries Recovery Fund, you must have:

1. Entered into a written contract with a licensed contractor for work on residential real property;
2. Commenced legal action against the contractor, financially responsible officer or business organization; and
3. Suffered a financial loss due to the contractor:
   a) Knowingly violating applicable city, county or state building codes or laws;
   b) Committing mismanagement or misconduct in the practice of contracting that causes financial harm to a customer;
   c) Abandoning a construction project for more than 90 days; or
   d) Signing a false statement claiming that the work is bonded, that all payments to subcontractors have been made, or claiming to have provided certain worker's compensation and insurance protection.

Florida laws provide specific definitions for determining whether a contractor's actions may constitute one of these violations. See S489.129(1)(d), (h), (k), (l), Fla. Stat. In addition, you must notify the Construction Industry Licensing Board (CILB) of your claim by certified mail at the time you commence legal action.

Filing a complaint against a contractor is not the same as filing a claim against the Fund. Even if you file a complaint against a contractor with the Department of Business and Professional Regulation (DBPR), you still have to give the CILB notice of your claim and you will

also be required to file a Construction Industries Recovery Fund Claim Form with the CILB.

To request a Construction Industries Recovery Fund Claim Form or to receive more information about the Fund, write to:

Construction Industry Licensing Board
7960 Arlington Expressway, Suite 300
Jacksonville, Florida 32211-7467
Phone (904) 359-6310

If you have questions and/or want to file a complaint with the DBPR against the contractor, the financially responsible officer and/or the business organization, please write to the Complaints Section, DBPR, 1940 North Monroe Street, Tallahassee, Florida 32399-0782.

### Conditions For Recovery

In order to recover from the Fund, you must be an individual - not a company. The Recovery Fund is a last resort. Before you can receive any money from the Fund, you must have obtained a final judgment from a Florida court or a restitution order from the CILB based on the types of violations of law already mentioned. Both the violation of law and the signing of the construction contract must have occurred on or after July 1, 1993. Before the Fund will pay you any money, you must show that you have made every effort to determine if there are any assets from which you can recover all or part of the money you are owed. If so, you must try to recover before you can collect from the Fund. You have to file a claim for recovery with the Fund within 2 years of the time the violation of law happens or within 2 years of the time you find out or should have found out about the violation of law. No claim can be made more than 4 years after the time the violation of law happened

### Payments From The Fund

The Fund does not pay post-judgment interest, punitive damages, or attorneys fees. The Fund only pays what you have not yet collected for actual or compensatory damages. The Fund pays the lesser of up to $25,000 per claim, or $25,000 per transaction, or $50,000 per contractor.

FOR MORE INFORMATION ABOUT THE FUND, SEE SS489.140 to 489.143, FLA. STAT. AND RULES 61G4-21.001 TO 61G4-21.005, FLA. ADMIN. CODE.

The undersigned acknowledges that this notice was received prior to or at the time of making your initial payment/deposit with PAUL HOMES.

_Manuel J. Dal_    8.18.05
OWNER        DATE

_____    8/18/05
OWNER        DATE

**PAUL HOMES**
ADDENDUM #7 - MODEL HOME QUALITY

Congratulations on your purchase of a Paul Home. Paul Homes prides itself on quality and we are dedicated to building your home to a level of craftsmanship equal to what has been represented in our model home.

At this point, Paul Homes would like you to take some extra time to review the model home that is most like the home you are purchasing and study the quality of construction. Your new home will be built to these same standards. In addition, you should review the quality of materials used in the construction of the house as detailed in the Description of Materials and Specifications in your Building Agreement.

Purchasers hereby acknowledge, agree, and accept the above description as the standard of quality for their new home.

_____  8.18.05          _____  8/18/05
OWNER           DATE              OWNER            DATE

**PAUL HOMES**
ADDENDUM #8 - Construction Lien Law

FLORIDA LAW CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY FILE A LAWSUIT FOR DEFECTIVE CONSTRUCTION AGAINST A CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL FOR AN ALLEGED CONSTRUCTION DEFECT IN YOU HOME.  SIXTY DAYS BEFORE YOU FILE YOUR LAWSUIT, YOU MUST DELIVER TO THE CONTRACTOR, SUBCONTRACTOR, SUPPLIER OR DESIGN PROFESSIONAL A WRITTEN NOTICE OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE YOUR CONTRACTOR AND ANY SUBCONTRACTORS, SUPPLIER OR DESIGN PROFESSIONALS THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND MAKE AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECT.  YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY THE CONTRACTOR OR ANY SUBCONTRACTOR, SUPPLIERS, OR DESIGN PROFESSIONALS.  THERE ARE STRICT DEADLINES AND PROCEDURES UNDER FLORIDA LAW.

ACCORDING TO FLORIDA'S CONSTRUCTION LIEN LAW (SECTIONS 713.001 - 713.37, FLORIDA STATUTES), THOSE WHO WORK ON YOUR PROPERTY OR PROVIDE MATERIALS AND ARE NOT PAID IN FULL HAVE A RIGHT TO ENFORCE THEIR CLAIM FOR PAYMENT AGAINST YOUR PROPERTY. THIS CLAIM IS KNOWN AS A CONSTRUCTION LIEN.  IF YOUR CONTRACTOR OR SUBCONTRACTOR FAILS TO PAY SUBCONTRACTORS, SUB-SUBCONTRACTORS, OR MATERIAL SUPPLIERS OR NEGLECTS TO MAKE OTHER LEGALLY REQUIRED PAYMENTS, THE PEOPLE WHO ARE OWED MONEY MAY LOOK TO YOUR PROPERTY FOR PAYMENT, EVEN IF YOU HAVE PAID YOUR CONTRACTOR IN FULL.  IF YOU FAIL TO PAY YOUR CONTRACTOR, YOUR CONTRACTOR MAY ALSO HAVE A LIEN ON YOUR PROPERTY.  THIS MEANS IF A LIEN IS FILED YOUR PROPERTY COULD BE SOLD AGAINST YOUR WILL TO PAY FOR LABOR, MATERIALS, OR OTHER SERVICES THAT YOUR CONTRACTOR OR A SUBCONTRACTOR MAY HAVE FAILED TO PAY.  FLORIDA'S CONSTRUCTION LIEN LAW IS COMPLEX AND IT IS RECOMMENDED THAT WHENEVER A SPECIFIC PROBLEM ARISES, YOU CONSULT AN ATTORNEY.

_Manuel J Dale_    _8.18.05_
OWNER            DATE

_____    _8/18/05_
OWNER            DATE



SKETCH OF
LOTS 17-18, BLOCK 4605, CAPE CORAL UNIT 69,
ACCORDING TO PLAT BOOK 22, PAGES 31 THRU
51 OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA.

# EXHIBIT E

11-14-'06 14:13  FROM-CITY OF CAPE CORAL    239-574-0590        T-791  P001/001 F-007

# CITY OF CAPE CORAL
------- CERTIFICATE OF OCCUPANCY -------
P E R M A N E N T

RECEIVED
NOV 1 4 2006
BY:

ISSUE DATE:        11/14/06

LOCATION: 5210 SW 24TH AV

STRAP #: 16-45-23-C4-04605-0170            PERMIT #: 05-00036420

OWNER INFORMATION:                         OCCUPANCY TYPE  :  RESIDENTIAL 1 & 2 FA
    DASILVA MANUEL J +
    390 NORTH RD                           CONST. TYPE     :  TYPE VI UNSPRK/UNPRO
    QUINTANILLA MARIA A T/C
    BEDFORD, MA 01730-1016                 ALLOWABLE OCC CONTENT:

CONTRACTOR INFORMATION:                    ALLOWABLE FLOOR LOAD :
    PAUL GARY G
    PAUL HOMES                             GAC UNIT            :  69-0
    4524 SE 16TH PL #2C
    CAPE CORAL, FL 33904-7475              PLAT BOOK PAGE# :  06
    (941)542-1750                          # OF PLATTED LOTS :
    COMPETENCY #:                          ZONING          :  R1B
    REG OR STATE LIC: CGC047296
                                           TYPE OF WORK    :  NEW CONSTRUCTION

                                           NUMBER OF STORIES    :       1.00

                                           FLOOD ELEVATION      :       9.0000

                                           FLOOD CODE           :          A8

                                           NUMBER OF BEDROOMS   :       3.00

                                           NUMBER OF BATHROOMS  :       2.00

                                           TOTAL DWELLING UNITS :       1.00

                                           TOTAL BLDG SIZE      :     3532.00

SAID PREMISES HEREBY ARE FOUND TO COMPLY WITH THE BUILDING
ORDINANCES AND ZONING OF SAID CITY.   THIS FORM IS A
"CERTIFICATE OF OCCUPANCY" WHEN VALIDATED.

DATE 11/14/06          _____
                       DEPT. OF COMMUNITY DEVELOPMENT

        VOID UNLESS SIGNED BY BUILDING OFFICIAL

# EXHIBIT F

Plaintiff Profile Form - Residential Properties

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |

**For Internal Use Only**

File Number

Date Received

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address.  In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge.  If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known.  You must supplement your responses if you learn they are incomplete or incorrect in any material respect.  You may and should consult with your attorney if you have any questions regarding completion of this form.  If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection.  By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges.  Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.  To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary.  All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

### Section I. Property Information

| | |
|---|---|
| Name Property Owner | Manuel DeSilva and Maria Quintanilla |
| Address of Affected Property | 5210 SW 24th Avenue |

City: Cape Coral   State: FL   Zip: 33914

Is this Property:* Residential [✓]   Commercial [ ]   Governmental [ ]

Name of Person Completing this Form: Manuel DeSilva

Is above your primary residence?   Yes [✓] No [ ]

Mailing Address (if different)

City:        State:        Zip:

Phone: 239-214-0622

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Check one:   Owner-Occupant [✓]   Owner Only [ ]   Renter-Occupant [ ]

| | |
|---|---|
| Represented By: | Morgan & Morgan, PA |
| Address: | 12800 University Drive, Suite 600 |

City: Ft. Myers   State: FL   Zip: 33907

Phone: 239-433-6880

Case No. /Docket Info: 11-1077

### Section II. Insurance Information

Homeowner/ Renter Insurer:

Universal Insurance Company of North America

Policy #: UICH0000072689-4

Agent: Look Insurance, Inc.

Address: 4903 Chiquita Blvd.

City: Cape Coral   State: FL   Zip: 33914

Phone: 239-542-4189

+ Attach Copy of  Insurance Declaration Page

### Section III. Claimant Information

| Name of Claimant | Dates Occupied | | Gender | Date of Birth | Are you claiming personal injuries?* | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| | Move-in | Leave | | | Circle One | |
| Manuel J. DaSilva | 11-14-2006 | n/a | M[✓] F[ ] | 10-09-1961 | Yes [✓] No[ ] | Owner-Occupant |
| Maria Quintanilla | 11-14-2006 | n/a | M[ ] F[✓] | 09-17-1958 | Yes [✓] No[ ] | Owner-Occupant |
| | | | M[ ] F[ ] | | Yes [ ] No[ ] | |
| | | | M[ ] F[ ] | | Yes [ ] No[ ] | |
| | | | M[ ] F[ ] | | Yes [ ] No[ ] | |
| | | | M[ ] F[ ] | | Yes [ ] No[ ] | |
| | | | M[ ] F[ ] | | Yes [ ] No[ ] | |
| | | | M[ ] F[ ] | | Yes [ ] No[ ] | |
| | | | M[ ] F[ ] | | Yes [ ] No[ ] | |
| | | | M[ ] F[ ] | | Yes [ ] No[ ] | |

* Personal injuries include claims for mental anguish and medical monitoring.

Plaintiff Profile Form - Residential Properties

### Section IV. Inspection Information

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?   Yes ☑ No ☐

    1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?   Allied Home Inspections

      1.2. When did the inspection take place?   01-07-2011

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?   Yes ☑ No ☐

    2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?   Allied Home Inspections

      2.2. When was this determination made?   01-07-2011

### Section V. Drywall Information

| Drywall Manufacturer | Markings on Drywall | Location in Home |
| --- | --- | --- |
| Taishan | 4feet x 12feet x 1/2inch DrYwall; 05.04.07 20.08 | Guest bedroom; den; laundry room; Family room |
| USG | 100% RECYCLED PAPER; 36 03 06 02; 00 26; KDC | Great room; Master bedroom; Attic |
| | USG SHEETROCK | |

1.0. Have you, or has anyone on your behalf, sent written notice to your homebuilder, drywall contractor, drywall supplier/ distributor, drywall manufacturer or any other person or entity of your claim that your home contains Chinese-manufactured drywall?   Yes ☑ No ☐

    1.1. If "Yes" to question 1.0 Section V. to whom has any such notice been sent?

      1.2. When was notice sent?

        + Attach copy of notice Sent

2.0. Have you, or has anyone on your behalf, made a request to anyone that your home be repaired as a result of the presence of Chinese-manufactured drywall in your home?   Yes ☐ No ☐

    2.1. If "Yes" to Question 2.0. Section V. to whom has the request been made?   Paul Homes, Inc n.k.a. Management Services of Lee County, Inc.

      2.2. When was the request made?   02-04-2011

        + Attach copy of written request

3.0. Has your home been repaired in any way as a result of the presence of Chinese-manufactured drywall?   Yes ☐ No ☑

    3.1. If "No" to question 3.0. Section V. Have any such repairs to your home been offered?   Yes ☐ No ☑

      3.1.a. If "Yes" to question 3.1. Section V. When was the offer made?

      3.1.b. Who made the offer?

    3.2. If "Yes" to Question 3.0. Section V. Have any such repairs to your home been initiated?   Yes ☐ No ☑

      3.2.a. Have any such repairs to your home been completed?   Yes ☐ No ☐

      3.2.b. Who paid or is paying for the repairs?

      3.2.c. What was/is the total cost?

      3.2.d. Have samples of the Chinese-manufactured drywall been kept?   Yes ☐ No ☐

      3.2.e. Who possesses the samples?

### Section VI. Questions for Florida Residents Only*

1.0. Have you, or anyone on your behalf, sent any notices under Chapter 558 of the Florida Statutes regarding the presence of Chinese-manufactured drywall in your home?   Yes ☑ No ☐

    1.1. If "Yes" to Question 1.0., Section VI. To whom has any such notice been sent?   Paul Homes, Inc. n.k.a. Management Services of Lee County, Inc.

      1.2. When was notice sent?   02-04-2011

        + Attach copy of notice

2.0. Have you received any responses to your notice under Chapter 558?   Yes ☐ No ☑

    2.1. If "Yes" to Question 2.0., Section VI. From whom did you receive such notice?

      2.2. When was it received?

3.0. Has anyone inspected your home in response to your notice under Chapter 558?   Yes ☐ No ☑

    3.1. If "Yes" to Question 3.0., Section VI. Who inspected your home?

4.0. Have you received a written offer to repair your home in response to your notice under Chapter 558?   Yes ☐ No ☑

    4.1. If "Yes" to Question 4.0., Section VI. From whom did you receive this written offer?

      4.2. When was it received?

5.0. Have any repairs been performed in your home in response to your notice under Chapter 558?   Yes ☐ No ☑

    5.1. If "Yes" to Question 5.0., Section VI. Who performed these repairs?

      5.2. What repairs were performed?

      5.3. When were the repairs performed?

*By completing this section, plaintiffs neither agree with the applicability of Chapter 558 of the Florida Statutes to this action or plaintiffs'claims, nor do plaintiffs waive any righs or agree that such notice is required.  Defendants contend that plaintiffs are not relieved of any obligations they may or may not have arising under Chapter 558 of the Florida Statutes, and defendants are not waiving any rights they may have under said statute.

Plaintiff Profile Form - Residential Properties

## Section VII. Home Information

| | | | Yes | No |
|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 2,500 | | | |
| Estimated Sq. Ft. of Drywall | 10,000 Appro | Occupied | ✓ | |
| Height of Interior Walls | n/a | Year-round | ✓ | |
| Number of Bedrooms: | 3 | Summer | ✓ | |
| Number of Bathrooms: | 2.5 | Winter | ✓ | |

### Plumbing System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | ✓ | |
| Copper Piping | ✓ | | |
| Copper Fixtures | | | ✓ |
| Other Fixtures | ✓ | | |
| Were repairs made to the plumbing system? | | ✓ | |
| Dates: | | | |

### Electrical System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | ✓ | | |
| Switches | ✓ | | |
| Main Panel | | ✓ | |
| 2nd Panel | | | ✓ |
| Exposed Copper Wires | ✓ | | |
| Were repairs made to the electrical system? | | ✓ | |
| Dates: | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

## Section VIII. Construction/Renovation Information

### Date Range for New Home Construction: (Month/Day/Year)

| | | | |
|---|---|---|---|
| Start Date: | 01-2006 | Completion Date | 11-2006 |
| Move In Date: | 11-14-2006 | Date Acquired Home | 11-14-2006 |

### Date Range for Renovations: (Month/Day/Year)

| | | | |
|---|---|---|---|
| Start Date: | n/a | Completion Date | n/a |
| Move In Date: | n/a | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | ✓ |
| First Floor: Full Wall of drywall replaced | | | ✓ |
| Second Floor: Any drywall replaced | | | ✓ |

## Section IX. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:

Paul Homes, Inc.

Address:  4524 SE 16th Place

Suite 2C

City: Cape Coral   State: FL   Zip: 33904

Phone:  239-542-1750

+ Attach Copy of Construction/Renovation Contract

+ Attach Copy of New Home Warranty Declaration

## Section X. Drywall Installer

Drywall Installer's Name:

Island Coast Drywall and Stucco, LLC

Address:  17431 Alico Center Road

Unit 3

City: Fort Myers   State: FL   Zip: 33967

Phone:  239-334-9255

## Section XI. Drywall Supplier

Drywall Supplier's Name:

Banner Supply Company Fort Myers, LLC

Address:  7195 NW 30th Street

City: Miami   State: FL   Zip: 33122

Phone:  n/a

## Section XII. Verification of Plaintiff Profile Form

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

_____   _____,
Claimant's Signature        Date Signed

_____   _____,
Claimant's Signature        Date Signed

_____   _____,
Claimant's Signature        Date Signed

_____   _____,
Claimant's Signature        Date Signed

_____   _____,
Claimant's Signature        Date Signed

_____   _____,
Claimant's Signature        Date Signed

Plaintiff Profile Form - Residential Properties

**Section VII. Home Information**

| Approx. Sq. Ft. of House: | 2,500 | | Yes | No |
|---|---|---|---|---|
| Estimated Sq. Ft. of Drywall | 10,000 Approx | Occupied | ✓ | |
| Height of Interior Walls | n/a | Year-round | ✓ | |
| Number of Bedrooms: | 3 | Summer | | ✓ |
| Number of Bathrooms: | 2.5 | Winter | ✓ | |

**Plumbing System**

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | ✓ | |
| Copper Piping | | ✓ | |
| Copper Fixtures | | | ✓ |
| Other Fixtures | | | ✓ |
| Were repairs made to the plumbing system? | | ✓ | |
| Dates: | | | |

**Electrical System**

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | ✓ | | |
| Switches | ✓ | | |
| Main Panel | | ✓ | |
| 2nd Panel | | | ✓ |
| Exposed Copper Wires | ✓ | | |
| Were repairs made to the electrical system? | | ✓ | |
| Dates: | | | |
| + Attach Copy of Floor Plan on 8 1/2" X 11" paper | | | |

**Section VIII. Construction/Renovation Information**

Date Range for New Home Construction: (Month/Day/Year)

| Start Date: | 01-2006 | Completion Date | 11-2006 |
|---|---|---|---|
| Move in Date: | 11-14-2006 | Date Acquired Home | 11-14-2006 |

Date Range for Renovations: (Month/Day/Year)

| Start Date: | n/a | Completion Date | n/a |
|---|---|---|---|
| Move in Date: | | n/a | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | ✓ |
| First Floor: Full Wall of drywall replaced | | | ✓ |
| Second Floor: Any drywall replaced | | | ✓ |

**Section IX. Homebuilder/ General Contractor/ Developer Information**

Homebuilder/ General Contractor/ Developer's Name:

Paul Homes, Inc.

| Address: | 4524 SE 16th Place |
|---|---|
| | Suite 2C |
| City: | Cape Coral   State:  FL   Zip:  33904 |
| Phone: | 239-542-1750 |

+ Attach Copy of Construction/Renovation Contract
+ Attach Copy of New Home Warranty Declaration

**Section X. Drywall Installer**

Drywall Installer's Name:

Island Coast Drywall and Stucco, LLC

| Address: | 17431 Alico Center Road |
|---|---|
| | Unit 3 |
| City: | Fort Myers   State:  FL   Zip:  33967 |
| Phone: | 239-334-9255 |

**Section XI. Drywall Supplier**

Drywall Supplier's Name:

Banner Supply Company Fort Myers, LLC

| Address: | 7195 NW 30th Street |
|---|---|
| City: | Miami   State:  FL   Zip:  33122 |
| Phone: | n/a |

**Section XII. Verification of Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| _Manuel Da Silva (signature)_ | 6/9/11 | | |
|---|---|---|---|
| Claimant's Signature  MANUEL DA SILVA | Date Signed | Claimant's Signature | Date Signed |
| _Maria Quintanilla (signature)_ | 6/9/11 | | |
| Claimant's Signature  MARIA QUINTANILLA | Date Signed | Claimant's Signature | Date Signed |
| | | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |

Issued: 12/22/2010

Universal Insurance Company of North America
P.O. Box 901036 Fort Worth, TX 76101-2036
Policy Service: 1-866-458-4262
Claims Service: 1-866-999-0898
www.universalnorthamerica.com

Homeowners
Amended Declarations Page
DECLARATION EFFECTIVE: 12/15/2010
DIRECT BILL

Reason: Amend Mortgagee

| Policy Number | From | Policy Period | To | Agent Code |
|---|---|---|---|---|
| UICH0000072689-4 | 11/15/10 | | 11/15/11 12:01 AM STANDARD TIME | 86563 |

| NAMED INSURED AND ADDRESS: | AGENT: (239) 542-4189 |
|---|---|
| MANUEL DASILVA<br>MARIA QUINTANILLA<br>5210 SW 24 AVE<br>CAPE CORAL FL 33914 | LOOK INSURANCE, INC.<br>4903 CHIQUITA BLVD<br>CAPE CORAL FL 33914 |

### PREMIUM SUMMARY

| Basic Coverages Premium | Attached Endorsements Premium | Scheduled Property Premium | Policy Fee and Surcharges | TOTAL Policy Premium |
|---|---|---|---|---|
| $4,575.00 | -$1,722.00 | $.00 | $123.00 | $2,976.00 |

### LOCATION

| FORM | CONST | YEAR | USE | NUM FAM | OCCUP | PROT CLASS | TERRITORY | BCEG |
|---|---|---|---|---|---|---|---|---|
| HO-3 | M | 2006 | Primary | 1 | Owner | 04 | 642 | 03 |

| COUNTY | FIRE CODE | POLICE CODE | PERSONAL PROPERTY REPLACEMENT COST | PROOF OF PRIOR INSURANCE |
|---|---|---|---|---|
| Lee | Y | | Y | N |

Coverage is provided where premium and limit of liability is shown.
Flood coverage is not provided by the Company and is not part of this policy.

| COVERAGES – SECTION I | LIMITS | PREMIUMS |
|---|---|---|
| Coverage A. Dwelling Liability | $320,000 | $4,647 |
| Coverage B. Other Structures | $6,400 | -$102 |
| Coverage C. Personal Property | $160,000 | INCL |
| Coverage D. Loss of Use | $64,000 | INCL |

Premium Charged For Hurricane Exposure: $ 1497

**SECTION I COVERAGES ARE SUBJECT TO A $1000 NON-HURRICANE DEDUCTIBLE PER LOSS, AND A 2% = $6400 HURRICANE DEDUCTIBLE.**

| COVERAGES – SECTION II | LIMITS | PREMIUMS |
|---|---|---|
| Coverage E. Personal Liability | $300,000 | $30 |
| Coverage F. Medical Payments | $5,000 | INCL |

**LOCATION(S) OF PROPERTY INSURED**
5210 SW 24TH AVE, CAPE CORAL FL 33914

Countersignature _Rosa S. Rees_

UIC AMD 07 06
Insured Copy

Continued on Next Page...

DaSilvaM00005
PAGE 1

Issued: 12/22/2010

| Policy Number | From | Policy Period | To | Agent Code |
|---|---|---|---|---|
| UICH0000072689-4 | 11/15/10 | | 11/15/11 12:01 AM STANDARD TIME | 86563 |

**ADDITIONAL INTERESTS MORTGAGEE(S)**

FIRST MORTGAGEE
BRANCH BANKING AND TRUST COMPANY
ISAOA ATIMA
PO BOX 7933
SPRINGFIELD, OH 45501-7933
LOAN NUMBER:  6930838924

**POLICY FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY**

| NUMBER | EDITION | DESCRIPTION | LIMITS | PREMIUMS |
|---|---|---|---|---|
| OIR B1 1670 | 10-06 | Checklist of Coverage | | INCL |
| HO 00 03 | 10-00 | Homeowners 3 Special | | INCL |
| HO 03 34 | 05-03 | Limited Fungi, Wet/Dry Rot Sct II Liability | | INCL |
| OIR B1 1655 | 02-10 | Hurricane Loss Mitigation Discounts | | INCL |
| UI 100 | 04-10 | Special Provision -Florida | | INCL |
| UI 101 | 04-09 | Animal Liability Exclusion | | INCL |
| UI 102 | 04-04 | Existing Damage Exclusion | | INCL |
| UI 107 | 04-04 | Home Day Care Exclusion | | INCL |
| UI 108 | 06-05 | Trampoline Liability Exclusion | | INCL |
| UI 160 | 06-10 | Additional Policy Conditions - Florida | | INCL |
| UI DO | 01-06 | Deductible Options Notice | | INCL |
| UI GLB | 05-07 | GLB Privacy Notice | | INCL |
| UI HOJ | 01-09 | Homeowners Policy Jacket | | INCL |
| UI OC | 10-05 | Outline of Coverage | | INCL |
| UICNA OL NOTICE | 10-05 | Important Notice Regarding Ordinance or Law | | INCL |
| OIR B1 1802 | 02-10 | Mitigation Affidavit | | INCL |
| UI 04 90 | 02-06 | Personal Property Replacement Cost | | $     929 |
| UI 153 | 04-10 | Sinkhole Loss Coverage | | $      15 |
| | | Deductible: AOP | | |
| UI 156 | 04-10 | Limited Screened Enclosure and Carport Coverage | $    25,000 | $     341 |
| UI COVB | 09-06 | Coverage B -Other Structures Decreased Limits | | INCL |
| | | BCEG Credit | | $    -313 |
| | | Home Age Adj. - AOP | | $    -164 |
| | | Wind Mitigation Credit | | $ -2,558 |
| | | BCEG/Wind Mitigation Cap | | $      28 |
| | | 2009 Florida Insurance Guaranty Fund Assessment | | $      27 |
| | | Policy Fees | | $      25 |
| | | Emergency Mgmt & Preparedness Assist. Trust Fund | | $       2 |
| | | FHCF Emergency Assessment Surcharge | | $      29 |
| | | Citizens 2005 HRA Deficit Emergency Assessment | | $      40 |

## ORDINANCE OR LAW COVERAGE = 25%

A rate adjustment of -9.9% has been applied to the base class portion of your wind premium
to reflect the Building Code Grade in your area.  Adjustments range from a 4% surcharge
to a 46% credit.



# MORGAN & MORGAN®

A LIMITED LIABILITY COMPANY

*Attorneys At Law*

SUITE 1100
76 SOUTH LAURA STREET
JACKSONVILLE, FL 32202-3433
(904) 398-2722
FAX: (904) 398-2334

February 4, 2011

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Paul Homes, Inc. n.k.a. Management Services of Lee County, Inc.
4524 SE 16th Place
Suite 2C
Cape Coral, FL 33904

Re:   **Florida Statutes 558.004 and 627.4137**
      **NOTICE AND OPPORTUNITY TO REPAIR**
      **NOTICE OF REQUEST OF INSURANCE POLICIES**
      **Our Clients:**   Manuel DaSilva and Maria Quintanilla
      **Our File No.:**   1293484

Dear Paul Homes, Inc. n.k.a. Management Services of Lee County, Inc.:

We have been retained by Manuel DaSilva and Maria Quintanilla with respect to the defective drywall that was used in the construction of their home located at 5210 SW 24th Avenue, Cape Coral, FL 33914. This Notice is sent to you pursuant to Florida Statute Section 558.004, a copy of which is enclosed for your reference, and informs you of our intent to file a lawsuit 60 days after the date of this Notice for construction defects against Paul Homes, Inc. n.k.a. Management Services of Lee County, Inc. on Manuel DaSilva and Maria Quintanilla's behalf.

The defective drywall in the home contains substances which render the drywall unfit for the purposes intended. The defective drywall is damaging other parts of the home, as well as rendering the home unfit to live in.

We assert that the defects are the result of the installation of materials which require all of the drywall to be removed and replaced, as well as removal and replacement of all other components of the home which have been affected by the drywall.

Please be aware that you have certain obligations under the notice provisions of Section 558.004 which include performing a reasonable inspection and advising as to how you are going to correct the situation, if at all.

www.forthepeople.com

JACKSON, MS (601) 949-3388 · DAVIE (954) 318-0268 · ST. PETERSBURG (727) 490-2001 · TAVARES (352) 253-2700 · FT. MYERS (239) 433-6880 · ORLANDO (407) 420-1414 · KISSIMMEE (407) 452-6990 · TAMPA (813) 223-5505 · ATLANTA (404) 965-8811 · JACKSONVILLE (904) 398-2722 · MEMPHIS (901) 217-7000 · WINTER HAVEN (863) 291-0428

DaSilvaM00007

Paul Homes, Inc. n.k.a. Management Services of Lee County, Inc.
February 4, 2011
Page 2

Further, pursuant to Section 627.4137 of the Florida Statutes, please provide the undersigned with the following information with regard to each known policy of insurance, including excess or umbrella coverage, which may provide liability insurance coverage for this claim.

1.  Name of the insurer(s);
2.  Name of each insured;
3.  Certified copy of limits of liability coverage:
    a.  personal injury,
    b.  property damage,
    c.  medical expenses,
    d.  personal injury protection,
    e.  uninsured motorist and any other coverage
4.  A statement of any policy or coverage defense which your company reasonably believes is available; and
5.  Certified copy of any and all policies.

This information should include all periods of time from the commencement of construction to the present.

The requested information must be provided within thirty (30) days from the date of this letter and must include a statement under oath by a corporate officer.

Very truly yours,

Scott Wm Weinstein

Scott Wm Weinstein

SWW/ah

Enclosure: copy of Florida Statute § 558.004
cc:  Manuel DaSilva and Maria Quintanilla

DaSilvaM00008



U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To  Paul Homes, Inc.
Street, Apt. No.; or PO Box No.  4521 SE 16th Place, Ste. 2C
City, State, ZIP+4  Cape Coral, FL 33904

PS Form 3800, August 2006

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Paul Homes, Inc.
4524 SE 16th Place
Ste. 2C
Cape Coral, FL 33904

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery  2-7-11

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered   ☑ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number   7010 1670 0000 4958 1801
   (Transfer from service label)

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

DaSilvaM00009



*Ashford* **II**

PAUL HOMES

| ASHFORD II | |
|---|---|
| Living Area | 2,497 |
| Garage Area | 668 |
| Lanai Area | 256 |
| Entry Area | 133 |
| TOTAL | 3,554 |

06/01/2011 17:54 FAX                                                                    002

# PAUL HOMES
## CONSTRUCTION AGREEMENT - 10' Tiebeam

AGREEMENT made this August 16, 2005, by and between Manuel J. DaSilva and Maria A. Quintanilla, of 390 North Road, Bedford, MA 01730, Phone: (781) 276-4760, hereinafter called "Owner" and Paul Homes, Inc., d/b/a Paul Homes, 4524 SE 16th Place #2C, Cape Coral, FL 33904, phone: (239) 542-1750; fax (239) 542-0925 hereinafter called the "Contractor."

WHEREAS, the Contractor promises and agrees to and with the Owners that he will for consideration hereinafter mentioned construct a residence on land known as LOT 17 - 18, BLOCK 4603, UNIT 69, SUBDIVISION Cape Coral, County of Lee, State of Florida.

1.   The Contractor shall construct upon the building site a building in accordance with the plans and specifications hereto attached.

2.   The Contractor shall provide all materials and perform all work of the construction provided for in the plans and specifications in a workmanship like manner, according to standard building practices in the community.

OWNER shall pay the Contractor for such construction the amount of FOUR HUNDRED TEN THOUSAND U.S. Dollars

$ 410,000        payable as follows:
$  41,000        Deposit (Earnest Money) due upon contract signing made payable to Paul Homes
$ 369,000        As per Lender's/Contractor's draw schedule

3.   Owner herewith grants access to the land to the Contractor, for construction of a new residence. Owner may occupy the residence upon substantial completion and issuance of Certificate of Occupancy and payment by owner of all monies due the Contractor per this Agreement. Unpaid monies from the date of completion bear 18.0% interest. It is expressly understood and agreed that the Owners are not to occupy or otherwise take possession of the premises being improved pursuant to this contract prior to such final settlement unless written consent of such occupancy is granted to the owners by the Contractor.

4.   After the plans and specifications are signed and sealed, they shall become a Contract Document. No changes will be made except by a written change order, signed by all parties. Each change by the Owner subsequent to said construction plans and specifications, shall carry a processing fee of $500.00 per change order in addition to regular charges or credits to the change requested. IT IS SPECIFICALLY UNDERSTOOD THAT NO STRUCTURAL CHANGES OR MODIFICATIONS WILL BE ACCEPTED AFTER THE PLANS ARE SUBMITTED TO THE TRUSS ENGINEER.

5.   Contractor agrees to use his best effort to deliver the building specified herein on or about 240 days (8 months) from start of construction. Start of construction is defined as the date on which concrete footings are poured. The construction period can be influenced by weather, material and labor availability.

6.   This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the Owner and Contractor.

7.   The Contractor will furnish Builder's Risk Insurance in the full amount of this contract during the construction period. Contractor will also furnish Public Liability Insurance.

8.   The Owners agree that the Contractor shall have the right to substitute materials or items of comparable quality for such material or items that may be unobtainable by reason of labor disputes or discontinuance of production for any reason. Contractor shall give Owner advance notice of substitutions when possible. No Owner-supplied material.

9.   The Contractor will pay utility company bills for electricity and water used during construction. Should electricity or water not be available to the Owner's lot during construction, the Contractor will rent equipment to provide same at the Owner's expense at prevailing local rates.

10. The Contractor guarantees all workmanship and material for one year from delivery to Owner. Two years warranty on mechanicals. This guarantee is in exclusion of and in lieu of all other guarantees and warranties, and liability terminates one year from date of delivery. All manufacturer's warranties shall continue in force and effect according to their titles. Purchaser may not assign this Agreement without the prior written consent of the Contractor.

11. The Contractor will furnish brick paver driveway and walkway of up to ___1300___ square feet. Additional driveway and walkway will be charged to the Owner at $6.60 per square foot.

12. The Contractor will connect to public water and sewer lines to a distance of 65/60 feet. Cost of lines required over that distance and any connection fees will be borne by the Owners.

13. If there is to be a mortgage and construction loan, the Owners agree to make application, when directed, with an approved bona fide lending institution and to execute all necessary papers for a mortgage loan on the above described property in an amount necessary to close. The Owner agrees to pay all loan costs including the cost of abstract or title insurance premium, Intangible Tax with Documentary Stamps on the mortgage, all recording fees, credit report, appraisal fees and any loan charges made by the lending institution. Flood insurance, any prepaid insurance requirement and all construction interest is to be paid by the Owner.

14. This Agreement covers construction of the above-described residence on a clear and level lot. Should the slope or elevation of the lot be such as to require extra foundation block or fill dirt under the slab, patio, drives or walks, over and above that which would be required up to Standard Three Course Foundation, the expense of same will be borne by the Owners. The expense of any fill dirt required at the time of grading the lawn area, removal of excess dirt, trees and vegetation necessary to provide proper grade, any additional expenses caused by rock or other adverse soil conditions, and expense of electric service runs across the building necessitated by power company pole locations and regulations, or underground electric and/or telephone service when required will be borne by Owners. Expense for retaining walls for pool, home, or patio foundations shall be by Owners.

INITIALS: PAUL HOMES: _____
                    OWNER: _____
                    OWNER: _____

DaSilvaM00011

06/01/2011 17:54 FAX                                                                 ☒003

CONSTRUCTION AGREEMENT – Page 2
Mr. Manuel DaSilva & Ms. Maria Quintanilla

15. If the Owners or a governmental agency causes a delay in starting construction beyond ninety (90) days from the date of this Agreement, the contract price may be subject to change.

16. At the final closing, an affidavit of "no liens" covering all materials and labor will be presented to the Owners by the Contractor.

17. The Contractor shall not be held responsible for the following:  A) Rock formations encountered during construction (subsoil conditions); B) Removal of trees, boulders, brush or stumps; C) Non-structural cracks in concrete; and D) Perishable items such as sod, plants, or trees after installation, if neglected by Owner.

18. It is hereby understood that the Contractor is to deliver the above listed residence on owner's lot to the point of completion (C/O obtained).  The Contractor is hereby authorized to execute any and all additions as outlined in above mentioned articles to make livable delivery possible, in accordance with any and all governmental regulations and laws. It is understood that the charges, if applicable, shall be paid by the Owners.

19. Owners hereby agree that the Contractor may proceed immediately to secure the necessary documents that may be required by the lending institution to approve the loan and/or by the appropriate building department or Governmental Agency to secure the necessary building permits.  The documents include but are not limited to Surveys, Soil Analysis, Percolation Testing, Preliminary Drawings and Blueprints. In the event the loan is denied the Owners, or the Owners cancel or default on this Agreement prior to construction permit issued, any expense and overhead incurred by the Contractor in securing said documents including sales expense shall be paid for by the Owners.

20. Closing and settlement of this Agreement will be within ten (10) days of notice by Contractor to Owner that the premises are substantially ready for occupancy.  Owner shall not unreasonably delay closing because of minor work that does not interfere with occupancy. Said minor work will be listed on a compliance list, signed by the Owner and Contractor. This work will be scheduled and completed by the Contractor as quickly as possible after occupancy.  Time is of the essence in this Agreement.  Should the Owner fail to close and settle the contract within the specified ten (10) days, Owner shall be liable to Contractor for interest at the rate of 18.0% per annum on the amounts unpaid on the Contract.

21. All claims or disputes that arise out of, or are otherwise related to this agreement, shall be resolved by state court litigation, with venue to lie in Lee County, Florida. However, in the event Contractor proceeds with a lien foreclosure action because of contractor having recorded a construction lien against owner's property in another county than Lee County, Contractor shall have the right, but not the obligation, to litigate all claims or disputes in the other county, as well.  The parties to this agreement specifically and knowingly waive right to trial by jury, agree to submit all claims or disputes to bench trial, only. The prevailing party shall recover, from the losing party, all reasonable attorney fees and court costs and other suit expenses incurred, whether or not such costs or expenses are ordinarily taxable under the Uniform Guidelines for Taxing Costs.

22. THE CONTRACTOR WILL NOT BE HELD RESPONSIBLE FOR ANYTHING NOT INCLUDED AS PART OF THE CONTRACT DOCUMENTS.  IT IS EXPRESSLY STATED THAT ALL TERMS AND CONDITIONS OF THIS CONTRACT ARE INCLUDED IN THIS AGREEMENT. THE CONTRACTOR OR ANY OF THEIR AGENTS HAVE NOT MADE ANY REPRESENTATIONS OR PROMISES IN ADDITION TO THOSE MADE A PART OF THIS CONTRACT.  CONTRACTOR IS ONLY BOUND WHEN WRITTEN ADDENDUMS ARE SIGNED BY BOTH PARTIES AND MADE A PART OF THIS AGREEMENT.  WRITTEN CHANGE ORDERS ARE SUBJECT TO WORK NOT HAVING BEEN STARTED OR ORDERED ON AFFECTED ITEMS.

23. Other Agreements made a part of this contract are:
    A.  Addendums 1, 2, 3, 4, 5, 6 & 7 are hereby made a part of this agreement.

ACCEPTED AND APPROVED

_Manuel J. Aln_                    8.18.05          _Robert D. K/Oln_               8-16-05
OWNER                              DATE             PAUL HOMES                      DATE
                                                    Robert D. Knight, Jr. - Vice President

_Maria_                            8/18/05
OWNER                              DATE

DaSilvaM00012

**PAUL HOMES**
**EXECUTIVE CONSTRUCTION FEATURES**
**ADDENDUM #1 SPECIFICATIONS**
**10' TIEBEAM**

RESIDENCE FOR: Manuel DaSilva & Maria Quintanilla   MODEL TYPE: 10' Ashford II Gold Package w/Pool

STANDARD CONSTRUCTION FEATURES (MAY BE REVISED BY ADDENDUM #2):

CONSTRUCTION

- All building permits
- Builders Risk Insurance. Note: Owner responsible for flood insurance if required.
- Full set of construction blue prints
- 8" X 16" steel reinforced concrete footer with 3 course stemwall
- 4" reinforced concrete slab with 6 mil. vapor barrier
- CBS construction with complete stucco exterior (skip-trowel finish)
- 8" X 16" continuous steel reinforced tiebeam
- Certified soil treatment against termites under concrete slab
- Engineered roof trusses with steel anchor hurricane straps embedded in tie beam
- ½" plywood roof sheathing
- Bronze or white framed aluminum windows with screens
- Aluminum garage service door
- Alcoa aluminum soffit and 6" fascia
- Steel garage door
- Garage floor finished with concrete stain
- 2" x 4" wood studs in interior walls framed at 16" O.C.

INSULATION & AIR CONDITIONER

- Living areas only - R-30 ceilings, R-5 masonry walls
- RHEEM 12 SEER high efficiency AC unit
- All walk-in closets are air conditioned with separate ducts
- Air returns as required by Building Code

INTERIOR TRIM

- ½" drywall interior with light knock down finish
- Shower wall to be dense shield and tub wall to be water resistant greenboard
- Raised panel interior doors ( 8' high colonist)
- Colonial baseboards and door casings
- Insulated metal entry doors
- Kwikset interior lever doorknobs with choice of finish
- Kwikset 600 series entry handleset with choice of finish
  (polished brass cannot be warranted against pitting)
- Ventilated shelving in all closets
- Pull down attic stairs in garage

INTERIOR FINISH

- Standard wall tile in tub & shower area
- Recessed soap/shampoo holder and tiled seat in walk-in showers
- Corian window sills in glacier white
- Model carpet
- Free professional decorator service

PAINTING

- Flexbon #14 paint or equivalent with 2 coats exterior
- Flexbon #14 paint or equivalent sprayed with 1 coat interior
- Flexbon #14 enamel or equivalent interior doors and trims
- Interior ceiling, trim and walls to be two colors upgraded
- Exterior stucco trim to be different from walls (one trim color)

INITIALS: PAUL HOMES:
OWNER:
OWNER:

DaSilvaM00013

**PAUL HOMES**
**EXECUTIVE CONSTRUCTION FEATURES**
**ADDENDUM #1 SPECIFICATIONS - Page 2**
**10' TIEBEAM**

RESIDENCE FOR: Manuel DaSilva & Maria Quintanilla  MODEL TYPE: 10' Ashford II Gold Package w/Pool

## ELECTRICAL

* Structured Wiring Solution to include:
  * Includes up to 6 telephone/data outlet locations
  * Includes up to 6 coax outlet locations for video with amplification
  * Includes RG-6 coax cable
  * Includes satellite TV pre-wire (2 high speed coax cables to SW corner location for satellite dish hook-up)
  * Includes high speed cable (1 CAT5 and 1 RG6 coax) from service provider location
* Hurricane Generator Ready Panel Program to include:
  * Includes 200 Amp main breaker electrical panel with mechanical interlock breaker with generator manual transfer switch
  * Includes one (1) 50 Amp 220 Volt generator interface breaker
  * Includes one (1) 50 Amp 220 Volt generator receptacle
  * Includes one (1) 50' cord with 50 Amp 220 Volt plug for generator panel, receptacle and 30 Amp 120/240 Volt plug for generator
* Back to back 200 amp overhead electrical service with circuit panel
* 'Deco' white electrical switches and outlets
* Smoke detectors to code
* 2 exterior water proof outlets
* Garage door opener
* 7 ceiling fans Model #10525 installed
* Additional ceiling fans installed at $65 per fan
* All recessed lighting (shown on blue prints) included
* Main line surge protector
* Front door bell chimes

## PLUMBING

* PEX overhead plumbing
* 50 gallon water heater
* 1/3 HP garbage disposal
* Cultured marble tops in bath
* Laundry tub with Nemco base cabinet and standard faucet in laundry room
* Icemaker line
* 3 exterior hose bibs
* Standard white Americast tub in guest bath
* Standard white 'American Standard' elongated water-saver toilets
* Soaking tub in master bath

## CABINETS

* Custom raised panel cabinets with full European fronts in kitchen
* 36" custom raised panel vanity cabinets with full European fronts and marble tops in baths
* Concealed hinges in kitchen & bathrooms
* Full length mirror above all vanities
* Mirrored medicine cabinets
* 42" high upper cabinets in kitchen
* Upper cabinets in laundry room (Thermofoil)
* Ceramic tile on outside wall of bar

## EXTERIOR FINISH

* Up to 7000 sq ft of Floratam sod
* Landscaping to meet code
* 1,300 sq ft of brick paver drives and walks *upgraded*
* Full outside rain gutters and downspouts
* Concrete stain on garage floor

INITIALS: PAUL HOMES:
OWNER:
OWNER:

DaSilvaM00014

06/01/2011 17:55 FAX                                                        ☒008



**PAUL HOMES**
**ADDENDUM NO. 2  - Page 1 of 2**
Manuel DaSilva & Maria Quintanilla
10' Ashford II Gold Package with Pool
LOT 17 ᵛ 18, BLOCK 4605, UNIT 69

1.  The Ashford II 10' design, right hand garage, 3 Bedroom/2 ½ baths with                $410,000
    approximately 2,557 sq ft living with approximately 3,614 sq ft total. Home to be positioned
    on the lot with 25' front setback and centered on lot.

2.  Lot Preparation                                                                        Included

    a.   All fill and grading for a two course stemwall on existing grade.
    b.   Water line hook-up to 65'
    c.   Sewer line hook-up to 60'
    d.   Dual water line installation if available
    e.   Surveys
    f.   Impact Fee Allowance of $ 3,087
    g.   Water & Sewer Impact Fee and Water Meter Allowance of $ 4,309
    h.   School Impact Fee Allowance of $2,283

3.  The following Gold Package is included:

    a.   Ten (10) year structural warranty and Two (2) years on major systems
    b.   Standard lot improvements on existing grade, and all Impact/Permit Fees for a standard
         80'x125' Cape Coral lot with water and sewer.
    c.   Storm panels as required by the Florida Building Code
    d.   Pre-treat frame stage mold
    e.   All required surveys and engineered blueprints
    f.   Color-Thru barrel tile roof in standard colors.
    g.   State-of-the-art structured wiring system.
    h.   10' Tie Beam with 8' raised panel interior doors and 5-1/4" Colonial Trim
    i.   Good Cents Package: Tinted Windows, R-5 energy board on masonry walls, R 30 insulation in ceilings,
         12 SEER A/C unit, heat recovery system, 50 gallon water heater, mastic all duct joints and programmable
         thermostat
    j.   Granite (Level 3) countertops with Corian® sink in kitchen and  Corian® window sills in Glacier White
         *upgraded*
    k.   Complete flooring package including tile floors everywhere except bedrooms and closets (Deluxe Series).
    l.   GE Appliances Bisque: Cook Top 30" JB350TC, one 30" Wall Oven JTP20WR, Spacemaker Microwave
         JVM1850WH, Dishwasher GSD5500FCC, 25 cu ft Refrigerator GSS25WGCC w/water & ice,
         Washer WCRE6270D and Dryer DWXR483BB *upgraded*
    m.   TAJ leaded glass front door inserts *upgraded*
    n.   Manabloc Plumbing System
    o.   42" Upper cabinets in laundry room (Throatofell)
    p.   Decorator light fixtures ($2,800 allowance)
    q.   Upgraded Moen plumbing fixtures in choice of finishes as follows:
         Kitchen:     Moen 7570 Salora w/Pull-Out Spray, Sink & Strainers,
         Master Bath: (2) Moen 4570C/P/97372C/P Monticello Chrome P13, (1) Moen T951Monticello Chrome
                      PB Deckmount, (1) Moen 3847C/P Personal Shower on  Glide Bar w/ a Moen T244C/P to
                      turn on & off and Chrome Strainer
         Guest Bath:  (1) Moen Castelby 4938C/P Lav Faucet, (1) Moen TL2378C/P Tub & Shower Faucet, (1)
                      Chrome Tub Trim Kit
    r.   High quality wood cabinets in choice of finishes and design in kitchen
    s.   In Wall Pest Prevention System
    t.   Seven (7) ceiling fans - Model #10525-6 installed
    u.   Ceramic tile on outside wall of bar and rounded interior drywall corners.
    v.   Automatic garage door opener with 2 remote controls
    w.   Upgraded landscape pkg. To include automatic sprinkler system, floratam pad, 3 Queen Palm trees
         and 10 shrubs and $2,000 additional landscape allowance *upgraded* .
    x.   Full perimeter security system with 2 keypads and 2 motion detectors
    y.   Garage floor finished with concrete stain
    z.   Cultured marble tops in all baths and soaking tub in master bath
    aa.  Full outside rain gutters and downspouts
    bb.  Wire lathe and stucco on lanai and entry ceilings

INITIALS: PAUL HOMES:
OWNER:
OWNER:

DaSilvaM00015

**PAUL HOMES**
**ADDENDUM NO. 2 - Page 2 of 2**
Manuel DaSilva & Maria Quintanilla
10' Ashford II Gold Package with Pool
LOT 17 - 18,  BLOCK 4605, UNIT 69

4.  Provide a pool package of:

   a.   14' x 28' Diamond Brite pool in standard colors with an approximate 26' x 4' x 60' paver deck & lanai
   b.   Up to three course pool retaining wall
   c.   Bronze or white mansard cage with 2 doors and super gutter
   d.   Timer, pump, filter, light, tablet chlorinator and autofill
   e.   Manual cleaning equipment
   f.   Includes a pool alarm system per Florida Statutes Chapter 515
   g.   If additional retaining wall is necessary, there will be an extra charge of $1,200 per course,
        (includes masonry, labor, stucco and paint). Should the pool retaining wall
        exceed 30" in height, building code requires safety railings around the enclosure.
        (Cost of such to be additional)

5.  Provide the following upgrades that are included:

   a.   Upgrade kitchen countertop from Corian® to Level 3 Granite with Corian® sink
   b.   Upgrade from etched entry doors to TAJ leaded glass front door inserts
   c.   Crown molding in all tray ceilings and four (4) plant shelf outlets on one switch
   d.   Two interior paint colors
   e.   Add pool bath with sink Reminiscence #05 $1,800 and toilet Reminiscence #2011,026
   f.   Upgrade driveway, walkway and entry from concrete to standard brick pavers
   g.   $2,000 additional landscape allowance
   h.   Summer kitchen on lanai, includes privacy wall, base cabinets with stucco finish and stainless steel doors,,
        sink, hood venting, two (2)GFI outlets, two (2) overhead can lights with switch, Vermont 30" gas grill,
        under counter stainless steel refrigerator
   i.   Pre-wire for future pool heater and pool/spa remote control system
   j.   Upgrade pool deck and lanai from spraycrete to brick pavers
   k.   French door to master bedroom
   l.   Staggered cabinet in kitchen
   m.   Undermount lights and lightrail in kitchen
   n.   One (1) trash roll-out
   o.   Chair rail in dining room, breakfast nook, family room, and bedroom #2 (like Ashford II Model)
   p.   Medallion Silverline wood cabinets in master bath and guest bath
   q.   Tile backsplash in kitchen (Deluxe Series)
   r.   Credit and delete soffit in kitchen (can lights left mounted into ceiling)
   s.   50' allowance for underground electric (additional charged at $10.75 per ft.)
   t.   Increase bedroom #2 by 110 sq. ft. (17' x 12'), to be made a home theater room with R-11 sound resistant
        insulation on frame walls of room
   u.   Convert dining room to den with two 3040 French Doors

## TOTAL INVESTMENT $410,000

### ACCEPTED AND APPROVED

_Manuel J. Da____   8.18.05            _Robert D. Knight___   8-15-05
OWNER                DATE               PAUL HOMES              DATE
                                        Robert D. Knight, Jr. - Vice President

_Marla____   8/18/05
OWNER        DATE

DaSilvaM00016



# BONDED BUILDERS WARRANTY GROUP
1500 Kings Highway, Port Charlotte, Florida 33980 • Phone: 800-749-0381 • Facsimile 941-743-0534

## WARRANTY COVERAGE APPLICATION



Application# 611841-01

THIS APPLICATION IS TO ENROLL YOUR NEW HOME IN BONDED BUILDER'S EXPRESS LIMITED WARRANTY COVERAGE; IT IS **NOT YOUR NEW HOME WARRANTY** NOR IS IT A SUBSTITUTE FOR YOUR HOMEOWNERS INSURANCE. UNLESS ALL BLANKS ARE COMPLETED, THE APPLICATION IS SIGNED, AND THE WARRANTY FEE IS PAID, YOUR HOME WILL NOT BE ENROLLED.

BUILDER NAME: Paul Homes, Inc.                                                    BUILDER NUMBER: 06556

### WARRANTY SELECTION

Warranty Plan:           10 Yr Structural Warranty + 1 Yr Workmanship & Materials/2 Yr Systems Warranty

Warranty Enrollment Fee:     $ 432.00                                                        BB-W8020

### NEW HOME TO BE ENROLLED

| | | | | |
|---|---|---|---|---|
| 1. HOMEOWNER LAST NAME: | DaSilva | | FIRST NAME: | Manuel |
| 2. CO-OWNER LAST NAME: | Quintanilla | | FIRST NAME: | Maria |
| 3. NEW HOME ADDRESS: | 5210 24th Avenue SW | Cape Coral | FL | 33914 |
| | Street Address | City | State | Zip Code |

4. LOCATION:
Building #            Unit #            Block #            Lot #

5. SUBDIVISION:                          6. COUNTY:  Lee

7. CLOSING DATE:  11/14/2006          8. Closing Contract Price*: $ 360,000.00     9. BUILDER RM#:  N/A

### ALTERNATE MAILING ADDRESS

10. HOMEOWNER(S) MAILING
ADDRESS IF DIFFERENT          390 North Road          Bedford          MA          01730
FROM ABOVE:                   Street Address          City             State        Zip Code

11. Mail To (Pick One):   X  Mail Warranty Documents to alternate address,     ___ Mail Warranty Documents to new home address.

### PROPERTY SPECIFIC INFORMATION

12. Construction Type:   Single Family Detached

13. Date of the Certificate of
Occupancy for the
Main Structure:         Not Applicable for Single Family Detached

14. Construction of the Home:  Site Built

### MORTGAGE INFORMATION

15. Cash Sale / Financed:   Financed

16. Loan Type:             Conventional

*WARRANTY COVERAGE IS LIMITED TO THE LESSER OF THE CLOSING CONTRACT PRICE OR $1,000,000, UNLESS A HIGHER AMOUNT HAS BEEN PRE-APPROVED BY BBWG. CERTAIN ITEMS AND EVENTS ARE NOT COVERED BY THIS WARRANTY. PLEASE REFER TO THE SECTION TITLED "EXCLUSIONS" IN THE WARRANTY DOCUMENT. IN FLORIDA, THE HOME WARRANTY MAY NOT PROVIDE LISTING PERIOD COVERAGE FREE OF CHARGE.

### SIGNATURES

HOMEOWNER(S): PLEASE READ AND INITIAL THE IMPORTANT HOMEOWNER'S ACKNOWLEDGEMENT ON PAGE 2 OF THIS APPLICATION BEFORE SIGNING THE APPLICATION.

Homeowner: _Manuel J DaSilva_                    Date: 11/15/06

Co-Owner: _(signature)_                          Date: 11/15/06

Builder Rep: _(signature)_                        Date: 11-15-06

### Prepared By

Name:  Ricarda Hyler          Date:  11/07/2006     Phone:  (239) 542-1750     Fax:  (239) 542-0925

BB-W2110 (06/06)                    Page 1 of 2              Printed by: Ricarda Hyler on 11/07/06

DaSilvaM00017

**BONDED BUILDERS**
**WARRANTY GROUP**

**BONDED BUILDERS WARRANTY GROUP**
1600 Kings Highway, Port Charlotte, Florida 33980 • Phone: 800-749-0381 • Facsimile 941-743-0534

**WARRANTY COVERAGE APPLICATION - Page 2**

Application# 611841-01

---

### HOMEOWNER'S ACKNOWLEDGEMENT

**Please read carefully and initial where indicated below before signing the application.**

I/We acknowledge and understand that only upon Bonded Builders Warranty Group's (BBWG) receipt and acceptance of this Application and the warranty enrollment fee, BBWG will issue and mail to me/us the Warranty Documents. Upon my/our receipt of the final Warranty Documents I/we understand I/we will have 30 days to review the warranty terms and conditions and return it for cancellation if not completely satisfied. (In the event of FHA, VA or Rural Development financing, I/we understand the warranty cannot be cancelled). Should I/we choose not to return the warranty for cancellation within the 30-day period, I/we hereby waive the right to later assert any inapplicability of the terms and conditions of the Warranty Document. I/we also acknowledge that, if my/our home is enrolled in the BBWG Warranty Program that I/we hereby accept the terms and conditions contained therein in their entirety including but not limited to the exclusive, final and binding alternative dispute resolution processes, including but not limited to arbitration, contained therein. By accepting this warranty, I/we are agreeing to waive my/our right to a trial by either judge or jury in a court of law. I/We further agree that any claims to be filed under the Warranty Document will not be filed as a class action lawsuit or be subject to any class action litigation. BBWG and I/we acknowledge that class action treatment of a claim under the Warranty Document is strictly prohibited. (Binding nature of the arbitration not applicable in Florida. If home is FHA/VA or Rural Development financed judicial remedy prior to binding arbitration is not waived).

I/We further understand that if and when the new home warranty is issued, it is an Express Limited Warranty, **NOT an insurance policy** and any and all claims, whether contractual or otherwise, are controlled by the express terms, conditions and exclusions contained in the Warranty Document.

**IN TEXAS:** I/We further acknowledge and understand that the warranty issued shall comply with the Rules and Regulations promulgated by the Texas Residential Construction Commission (TRCC) including but not limited to the Limited Statutory Warranty And Building Performance Standards effective June 1, 2005. To the extent of conflict between the warranty standards in the BBWG Home Warranty Documents and the standards promulgated by the TRCC, the TRCC's standards and warranty terms shall control the Builder's Liability. However, in all cases, the terms and conditions contained in the BBWG Warranty Document shall be the exclusive and only obligations assumed by BBWG. I/We further understand the TRCC required warranty shall be effective immediately as required by the TRCC and is the sole responsibility of the Builder. However, the warranty to be issued by BBWG from this application shall only become effective upon satisfactory completion of BBWG's risk management and enrollment requirements.

**ACKNOWLEDGED AND CONSENTED TO BY HOMEOWNER(S):**

✓ _MJD_

HOMEOWNER'S INITIALS

✓ _MAQ_

CO-OWNER'S INITIALS

---

### Submission Checklist

Please use this checklist to submit a complete application. Missing information will delay issuance of the warranty documents.

☐ Homeowner(s) Initialed Acknowledgement above.
☐ Homeowner(s) Signed Warranty Coverage Application (This Form, Page 1).
☐ Builder Signed Warranty Coverage Application (This Form, Page 1).
☐ Submitted Warranty Enrollment Fee.
☐ Provided a copy of this Application to the Homeowner.

---

DaSilvaM00018

# EXHIBIT G



35893155

Feb 11 2011
10:17AM

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

IN RE: CHINESE DRYWALL LITIGATION

DARIO ORLANDO; STEPHEN SINES;          CASE NO.:  10-28090 (12)
DAVID AND JOAN GLICKMAN;
THOMAS WOJCIECHOWSKI;
OCEANPARK ESTATES ASSOCIATON,
INC., and DOCKSIDE LOFTS CONDOMINIUM
ASSOCIATION, INC., individually and as
representatives of others similarly situated,
                                    Plaintiffs,

vs.

BANNER SUPPLY CO., et al.,                HON. PETER M. WEINSTEIN
                        Defendants.
_____/

## ORDER ON DEFENDANT BANNER SUPPLY COMPANY PORT ST. LUCIE, LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

THIS CAUSE came before the Court on Defendant Banner Supply Company Port St.
Lucie, LLC's Motion to Dismiss First Amended Class Action Complaint.  The Court having
considered same, having heard argument of counsel and being otherwise fully advised in
premises, finds and decides as follows:

Plaintiffs filed the instant first amended class action complaint asserting claims for
product liability; negligence; violations of the Florida Deceptive and Unfair Trade Practices Act
(hereinafter FDUTPA); Private Nuisance; and equitable and injunctive relief.   Defendant Banner
Supply Company Port St. Luce LLC (hereinafter Banner PSL) is now moving to dismiss the first
amended complaint arguing that it fails to comply with the requirements of Rule 1.220, Fla. R.
Civ. P., fails to properly allege a cause of action for private nuisance, for violations of FDUTPA
and for equitable and injunctive relief and for failure to comply with Rule 1.130, Fla. R. Civ. P.

in that plaintiffs have failed to attach documents necessary for Banner PSL to properly respond to the complaint.

Turning first to plaintiffs' claim for private nuisance, Banner PSL argues that plaintiffs cannot state a cause of action for private nuisance as a matter of law. In the motion to dismiss, Banner PSL cites to a recent Omnibus Order on Pending Motion to Dismiss in the matter styled <u>Marlene Bennett v. Centerline Homes, et. al.</u>, Case No. 50 2009 CA 014458, entered on November 5, 2010 by the Hon. Glenn Kelly of the Fifteenth Circuit Court. In that case, Judge Kelley in a well reasoned order sets forth the well established law in Florida regarding private nuisances and states that "Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Id.* at 6 citing *Jones v. Trawick*, 75 So.2d 785, 785 (Fla. 1954). "Florida law essentially define nuisance as using one's property as to injure the land or some incorporeal rights of one's neighbor. *Id.*, citing *Beckman v. Marshall*, 85 So.2d 552, 554 (Fla. 1956). Plaintiff argues that there is an inherent weakness in Judge Kelley's ruling that the nuisance must come from outside the plaintiffs' land, that is the defective drywall did come from outside of plaintiffs' land and was delivered by Banner to the home. Plaintiffs argue that Banner PSL should have used its own property, the defective drywall, in a manner not to injure the plaintiffs. This Court finds that it is plaintiffs' argument that has the inherent weakness based on this Court's interpretation of Florida law as it deals with private nuisance. This Court finds Judge Kelley's ruling to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for

2

Case No.: 10-28090(12)

private nuisance in this case.[1]   Therefore, Banner PSL' motion to dismiss plaintiffs' claim for private nuisance will be granted.

Banner PSL's motion to dismiss is denied in all other respects.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant Banner Supply Company Port St. Lucie, LLC's Motion to Dismiss First Amended Class Action Complaint is GRANTED in Part as to Count IV for .Private Nuisance.   Count IV for Private Nuisance is hereby Dismissed with Prejudice.

DONE AND ORDERED in Chambers, Fort Lauderdale, Florida, this 4th   day of February, 2011.

PETER M. WEINSTEIN
CIRCUIT COURT JUDGE

Michael J. Ryan, Esq., Plaintiff's Liaison Counsel & Matthew Kotzen, Esq., Defendant's Liaison Counsel for distribution electronically through Lexis Nexis File & Serve

---

[1] Plaintiffs, in support of their opposition to the motion to dismiss argue that Judge Farina of the Eleventh Circuit, in the case of Seifert v. Banner Supply, Case No. 09-3887 CA 01(42), permitted the "Nuisance" count to go to the jury after a trial of the matter.  However, plaintiffs do not indicate whether, in fact, a motion to dismiss the "Nuisance" count ever presented to, or ruled on by Judge Farina.  Therefore, plaintiff's reliance on that case is misplaced.

3