# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL     MDL No. 02047
      PRODUCTS LIABILITY LITIGATION     SECTION L

THIS DOCUMENT RELATES TO:     JUDGE FALLON

LAURA HAYA, DANIEL HAYA and     MAG. JUDGE WILKINSON
IRENE HAYA, et al. v.
TAISHAN GYPSUM CO., LTD., et al.;
Case No. 11-1077 (Omni IX)
_____/

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, PAUL HOMES, INC., N/K/A MANAGEMENT SERVICES OF LEE COUNTY, INC.'S, MOTION TO DISMISS WITH PREJUDICE THE CLAIMS ASSERTED AGAINST IT IN THE SECOND AMENDED HAYA OMNIBUS CLASS ACTION COMPLAINT (OMNI IX)

Defendant, Paul Homes, Inc., n/k/a Management Services of Lee County, Inc. ("Paul Homes"), hereby files its Memorandum of Law in Support of its Motion to Dismiss, with Prejudice, the claims asserted against it by Plaintiffs **Michael Nukho, Edward Nukho, and George Nukho** (the "Plaintiffs") in the Second Amended Haya Omnibus Class Action Complaint ("Omni IX"), pursuant to Federal Rule of Civil Procedure 12(b)(6), for the reasons set forth below.

## I.  ARGUMENT

### A.    The Governing Legal Standard.

To survive a motion to dismiss, a complaint must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'" *ADA v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (affirming dismissal of RICO claims) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009)) (same, applying <u>Twombly</u> standard to all civil actions); *Zarella v. Pac. Life*

*Ins. Co.*, No. 10-60754, 2010 U.S. Dist. LEXIS 119552, at \*5-7 (S.D. Fla. Nov. 10, 2010) (applying these standards to dismiss numerous claims against insurer, including negligence and unjust enrichment claims). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s], devoid of 'further factual enhancement.'" *Id.* at 1949 (*quoting Twombly*, 550 U.S. at 557). In considering a motion to dismiss, a court should adopt a two-pronged approach: (1) "eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *ADA*, 605 F.3d at 1290 (*quoting Iqbal*, 129 S. Ct. at 1950). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the Plaintiffs would ask the court to infer." *Id.* (*quoting Iqbal* at 1951-52).

**B.     Plaintiffs' Negligence Claim (Count I) is Without Merit**

Plaintiffs' negligence claim (Count I) really illustrates why Paul Homes does not belong in this lawsuit. The Omnibus Complaint alleges that Paul Homes somehow owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question. Cmplt. ¶ 42. The Complaint further alleges that Paul Homes had a duty to provide Plaintiffs with certain warnings about the drywall. *Id.* ¶ 45.

Besides being intercepted by the economic loss rule (*see* discussion, *infra* at Section 1.E), these allegations are indisputably false. Paul Homes, for example, did not "design," "manufacture," or "import" any drywall. Yet even assuming the truth of Plaintiffs' specious

allegations, they do not state a claim for relief.  Under Florida law, a negligence claim requires the Plaintiffs to plead and prove (among other things) that the defendant owed a duty to the Plaintiffs, and that the duty was breached.  *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (Florida law) ("Failure to establish any one of these elements is fatal to the Plaintiff's case.").  Plaintiffs can allege neither prerequisite.

The most fundamental problem with Plaintiffs' negligence theory is that, as a matter of law, Paul Homes did not owe Plaintiffs a duty in negligence.  The March 18, 2011 omnibus order in *Bennett v. Centerline Homes, Inc. et al.*, No. 502009-CA-014458 (Fla. 15th Jud. Cir.), attached hereto as **Exhibit A** for the Court's convenience (the "Omnibus Negligence Order"), explains why this is so.  *Bennett* is a consolidated state court action that, like this one, pits homeowners with defective drywall claims against homebuilders.  Just as the Plaintiffs are attempting to do here, the homeowners in *Bennett* attempted to assert a negligence claim based on builders' purported failure to protect them from a latent defect – namely, hazardous "Chinese manufactured" drywall.  The issue of whether the builders owed a duty in negligence was, the court held, "a question of law."  Omnibus Negligence Order, pg. 1.

In what appears to be a case of first impression in Florida, the court in *Bennett* ruled that the homebuilders did not have a duty "to inspect, test or warn" the Plaintiffs about the allegedly defective drywall in their homes.  The court explained that where, as here, the purported defect is "latent," the law imposes no such duties "unless the product is inherently dangerous."  *Id*. at 2; *see O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim as manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous.").  Because even *defective* drywall does not

fit into the narrow "inherently dangerous" category, the builders had no duty to inspect the drywall, to test it, or to warn the Plaintiffs about it.  Omnibus Negligence Order, pg. 2.[1]  The only way for the negligence claims to survive, the court held, was for the homeowners to allege "in good faith" that the builders had "actual or implied notice" of the alleged drywall defects.  *Id.*; *see Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez*, 738 F. Supp. at 483-84.

Because the purported drywall defects at issue in this case were indisputably latent (*see, e.g.,* Cmplt. ¶ 70), Plaintiffs' negligence claim cannot survive because they cannot allege – in good faith – that Paul Homes had "actual or implied notice" of the defects.  The boilerplate and unsupportable assertion that Paul Homes "knew or should have known" that the drywall would "harm" the Plaintiffs (*id.* ¶ 53) is a bare legal conclusion that cannot state a claim for relief, particularly one premised on a negligence theory that files in the face of basic Florida law.  *See* Omnibus Negligence Order, pg. 2 (requiring more specific allegations); *Ashcroft*, 129 S.Ct. at 1949.

## C.    Plaintiffs have not Stated a Claim for Negligence Per Se (Count II).

Besides being barred by the economic loss rule (*see* discussion, *infra* at Section I.E), Plaintiffs' negligence per se claim (Count II) is poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort.  Negligence per se results from a

---

[1]      "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category.  They include highly toxic materials, second hand guns and drugs….  In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself."  *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted).  By way of example, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are not "inherently dangerous."

violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of</u> <u>persons</u> from a <u>particular type of injury</u>." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se for two reasons. First, they have not identified a statute that Paul Homes allegedly violated, much less explained how that violation occurred. Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes." Cmplt. ¶ 52. Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that Paul Homes allegedly violated are "designed to protect the <u>general public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). In other words, Plaintiffs' negligence per se claim appears to be nothing more than a repackaged negligence claim. It should be summarily dismissed for that reason as well.

**D.      Plaintiffs Cannot hold Paul Homes Strictly Liable (Count III).**

Plaintiffs' strict liability claim (Count III) is premised on the sweeping and patently false assertion that Paul Homes – a builder - was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." Cmplt. ¶ 57.

Even assuming that fabricated statement is true, the strict liability theory is nonetheless foreclosed by the economic loss rule (*see* discussion, *infra* at Sections I.E) and by at least two other established principles of Florida law.  Each principle was addressed in the Omnibus Order on Pending Motions to Dismiss issued in the consolidated drywall proceedings in Florida's Fifteenth Judicial Circuit, styled *Bennett v. Centerline Homes Inc.*, No. 50 2009-CA-014458 (Fla. 15th Jud. Cir., Nov. 15, 2010), as an independent basis for dismissing all strict liability claims brought against homebuilders in that court.  A copy of the Omnibus Order on Pending Motions to Dismiss is attached hereto as **Exhibit B** for the Court's convenience (the "Omnibus Order").  There, the same Florida Circuit Court that later rejected the Plaintiffs' negligence theory (*see* supra at Section I.B) ruled that (1) "only manufacturers, and those in the distributive chain of a product, can be held strictly liable" for allegedly defective drywall; and (2) drywall is not subject to strict liability because it is considered an improvement to real property, not a "product."  *See id.*, Omnibus Order pgs. 7-9.  Each rationale applies here and each is fatal to Plaintiffs' strict liability claim.

First, Paul Homes cannot be strictly liable to the Plaintiffs because Paul Homes obviously did not manufacture or distribute the drywall in question.  The Complaint itself identifies Paul Homes as a "Developer/Builder."  Cmplt., Ex. A, pg. 77 (Subclass #148).  It is firmly settled – and *Bennett* confirms – that strict products liability is reserved for manufacturers and others in the chain of distribution, not homebuilders.  *See, e.g., Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291-92 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Second, it has long been held that strict product liability does not apply to "structural improvements" to real estate, such as a home, as a home is not considered a product.[2]  Drywall is a "structural improvement" to real property because it is an *integral part* of Plaintiffs' home. "Florida courts have expressly <u>declined</u> to extend the principle of strict liability to structural improvements to real estate."  *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc*. No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added).[3]  Indeed, courts specifically hearing Chinese drywall cases have similarly found that drywall constitutes a structural improvement to real property for which a strict products liability action will not lie. *See Bissoon v. Centerline Homes Construction, Inc.*, No. 562010 CA 001463 (Fla. 19th Jud. Cir. Mar. 24, 2011) (granting builder's motion to dismiss: "[A]lthough Plaintiff[s'] strict liability claims do allege defective product distribution, permanent improvements to real property are not products for purposes of products strict liability actions") (a copy of which is attached hereto as **Exhibit C**).  As such, Plaintiffs' strict liability claim should be dismissed as a matter of law.

**E.    Plaintiffs' tort claims (Counts I, II, III and XI) are barred by Florida's products liability economic loss rule.**

To the extent that Plaintiffs seek to sue Paul Homes in tort for economic losses, those claims should also be dismissed under Florida's products liability economic loss rule.  In *Casa Clara Condominium Association v. Charley Toppino & Sons, Inc*., 620 So. 2d 1244, 1248 (Fla.

---

[2]      *See Federal Ins. Co. v. Bonded Lighting Prot. Sys., Inc*., No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (dismissing strict liability claim based on lighting system because system was structural improvement to real estate); *see also Virgilio v. Ryland Group, Inc*., 695 F. Supp. 2d 1276, 1283 n.11 (M.D. Fla. 2010) (explaining that "a home is not a product" for purposes of strict products liability, and citing authorities); *see generally Porter v. Rosenberg*, 650 So. 2d 79 (Fla. 4th DCA 1995).

[3]      *See also Plaza v. Fisher Dev., Inc*., 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007) (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water & Waste, Inc*., 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

1993), the Florida Supreme Court affirmed dismissal of the Plaintiffs-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties.  The Court held that the supplier's defective concrete had not damaged anything other than the Plaintiffs' dwellings and, consequently, had not caused them any non-economic damages.  *Id*. at 1247.  Because the Plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier.  *Id*. at 1246-48.

The same reasoning applies here.  The economic loss rule limits Plaintiffs to recovering non-economic losses (e.g., for personal injury) and damages to property other than the home itself.[4]  *See Casa Clara*, 620 So. 2d at 1247-48.  Plaintiffs must therefore replead their tort claims to seek only non-economic losses.  *Cf*. Cmplt. ¶ 55 (seeking general "damages" on negligence count).

**F.    Plaintiffs' Breach of Contract Claim (Count VII) must be Dismissed.**

Plaintiffs cannot maintain a claim for breach of contract for the simple reason that they were not in privity of contract with Paul Homes.  Paul Homes built the Plaintiffs' Property; however, Plaintiffs did not purchase that Property directly from Paul Homes.  Instead, Plaintiffs acquired the Property from a third party, Viking Acquisitions, LLC ("Viking").  A copy of the October 12, 2005 Construction Agreement between Paul Homes and Viking is attached hereto as **Exhibit D**.  A copy of the September 20, 2006, Certificate of Occupancy for the Property is attached hereto as **Exhibit E**.  Copies of the 2005 Warranty Deed into Viking and the later-executed Warranty Deed from Viking to Plaintiffs, dated July 13, 2007, are attached as

---

[4]    Plaintiffs also cannot recover economic losses because they has <u>suffered</u> no such losses.  The Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed."  *In re Chinese Manufactured Drywall Products Liability Litig.*, 680 F. Supp. 2d 780, 799 (E.D. La. 2010).

composite **Exhibit F**.[5]

Although the Complaint generally alleges – without a shred of detail – that the Plaintiffs (along with every other plaintiff in this lawsuit) "were in privity" with Paul Homes or were "foreseeable third party beneficiaries of any warranties" [Cmplt. ¶ 75], these are classic unsupported legal conclusions that Florida courts have long classified as inadequate to survive a motion to dismiss. *See Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (reaffirming that Fifth Circuit does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" in resolving Rule 12(b)(6) challenges) (internal marks and citation omitted); *see also Fed. Ins. Co. v. Bonded Lightning Protection Sys., Inc.*, No. 07-80767-CIV, 2008 WL 5111260, *7 (S.D. Fla. Dec. 3, 2008) (dismissing third-party-beneficiary claim where complaint failed to allege that contracting parties intended contract to benefit third party).

In this case, the plain language of the Construction Agreement between Paul Homes and Viking shows no intent whatsoever by the parties thereto to cause the Construction Agreement to primarily or directly benefit Plaintiffs in any way. *See Biscayne Investment Group v. Guarantee*

---

[5]     The fact that Plaintiffs chose not to attach these documents to the Omnibus Complaint does not prevent the Court from considering them now. The Court can and should consider these instruments because they are undeniably central to Plaintiffs' claims (especially their breach of contract and breach of warranty claims) against Paul Homes, and because the documents are publicly available. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (holding that contract could be considered on motion to dismiss where it was attached to motion, referred to in the complaint, and central to the Plaintiff's claims); *Aucoin v. Regions Fin. Corp.*, No. 09-3835, 2010 WL 334533, *2 (E.D. La. Jan. 21, 2010) (incorporating Retirement Plan mentioned in complaint and central to one or more of Plaintiff's claims); *Federal Ins. Co. v. New Hampshire Ins. Co.*, No. 03-385-CM, 2010 WL 28568, *4 (M.D. La. Jan. 4, 2010) ("Since the insurance policy issued by New Hampshire is central to [Plaintiff's] claims, the Court may consider it as evidence even though it was not attached to [Plaintiff's] original petition or amended complaint."); Fla. Stat. §§ 90.202(5), (11) & (12) (setting forth matters that may be "judicially noticed," including "[f]acts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned"); *e.g., Cardona v. City of Tampa*, No. 96-5194, 1998 WL 34201850, at *1 n.1 (Fla. 13th Jud. Cir. Mar. 9, 1998) (granting motion to dismiss with prejudice while taking "judicial notice" of certain public records filed at city council proceeding).

*Management Servs., Inc.,* 903 So. 2d 251, 254 (holding that "a non-party to a contract is [deemed] the specifically intended beneficiary <u>only</u> if the contract clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that party belongs … [t]o find the requisite intent, it must be established that the parties to the contract <u>actually</u> and <u>expressly</u> intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party") (emphasis added). Because Plaintiffs acquired their Property from a third party (Viking), and there is no statements in the Construction Agreement that satisfy the requirements for a "third-party beneficiary" claim, Plaintiffs' only contractual remedy lies with the party to whom they *are* in privity (i.e., Viking), not Paul Homes.  "It is elementary that a person not a party to, nor in privy with, a contract does not have the right to sue for its breach."  *Cibran Enters., Inc. v. BP Prods. N.A., Inc.*, 365 F. Supp. 2d 1241, 1251 (S.D. Fla. 2009) (internal marks and citation omitted); *Banco Ficohsa v. Aseguradora Hondurena*, *S.A.,* 937 So. 2d 161, 164-65 (Fla. 3d DCA 2006) (same principle).  As such, Count VII must be dismissed.

**G.      Plaintiffs Cannot Maintain their Breach of Warranty Claims (Counts IV & VI)**.

In Counts IV (Breach of Express / Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiffs allege causes of action based on various express and implied warranties.  Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties – let alone explain how Paul Homes might have breached them – these improvised warranty claims should be dismissed for several independently sufficient reasons.

(i)     *The Plaintiffs cannot maintain warranty claims of any kind because they were not in privity of contract with Paul Homes.*

The Plaintiffs' lack of privity with Paul Homes dooms any warranty claims they might assert.  It is axiomatic that a plaintiff suing in warranty "must be in privity of contract with the defendant."  *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005); *Cruz v. Mylan, Inc.*, No. 8:09-CV-1106-T17-EAJ, 2010 WL 598688, *2 (M.D. Fla. Feb. 17, 2010) (same).  The Plaintiffs, however, never contracted with Paul Homes; they acquired their home from a third party.[6]  *See supra.* at Section I.F.; *T.W.M. v. Am. Med. Systems, Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (explaining concept of privity).  Without a showing of contractual privity with Paul Homes, the Plaintiffs' express and implied warranty claims cannot survive.  *See, e.g., Borchardt v. Mako Marine Intern., Inc.*, No. 08-61199-CIV, 2009 WL 3856678, *4 (S.D. Fla. Nov. 17 2009) (dismissing warranty claims where there was "no allegation … to establish that there [was] privity of contract").

(ii)    *Plaintiffs cannot maintain claims for breach of warranty of merchantability or of fitness for a particular purpose.*

There are two more reasons to dismiss Plaintiffs' implied warranty claims.  First, as a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by Paul Homes.  That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant."  *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re*

---

[6]     What is more, the Construction Agreement between Paul Homes and Viking prohibited Viking from assigning the agreement without Paul Homes' express written prior consent.  *See* **Ex. D**, ¶ 10.  The Omnibus Complaint nowhere alleges that Viking – the entity that conveyed the Plaintiffs' Property to them – ever sought or obtained such consent.

*Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

Paul Homes is not bound by any implied warranties because it is not considered a merchant under Florida warranty law.  Paul Homes contracts with its clients to provide a service: home construction.  That is why the agreement between Paul Homes and Viking is called a "Construction Agreement" and not a "purchase agreement."  Because the inclusion of drywall in Plaintiffs' Property was incidental to the construction services that Paul Homes rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in this circumstance.  *See In re Sunshine-Jr.*, 240 B.R. at 794 ("[A]lthough construction contracts … typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, the claim for implied warranty of fitness for a particular purpose (Cmplt. ¶ 79) cannot survive because Plaintiffs have not – and indeed cannot – allege that the drywall in their Property was unfit for a particular or unusual purpose different from that for which drywall is ordinarily used.  The Court has already determined that "[t]he Chinese drywall stands just as any other functioning drywall, <u>serving its intended structural purpose</u>."  *In re Chinese Manufactured Drywall Products Liability Litig.*, 680 F. Supp. 2d at 799 ("[T]he Chinese drywall in the instant matter is operating as intended[.]").  This adjudicated fact is, by itself, fatal to the claim for breach of the implied warranty of fitness for a particular purpose.[7]

---

[7]     *See Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding dismissal of particular purpose warranty claim where Plaintiffs did not "allege

**H.      Plaintiffs Cannot State a Claim for Private Nuisance (Count XI).**

The private nuisance claim (Count XI) would fail even if it were not barred by the economic loss rule.  An action for private nuisance requires the claimant to establish an injury to his or her own property <u>in connection with the use of the real property of someone else</u>.  *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").

The Plaintiffs, however, do not allege that their purported injuries resulted from real property owned by someone else.  To the contrary, the nuisance claim is predicated entirely on the allegation that certain conditions existing on the "structures owned by Plaintiffs" are to blame.  Cmplt. ¶ 137.  That allegation simply does not state a claim for private nuisance.  *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the Plaintiffs'] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").  As stated by the Fifteenth Judicial Circuit of Florida in its Omnibus Order (**<u>Ex. B</u>**) dismissing all Chinese drywall Plaintiffs' private nuisance claims against builders in that Circuit, "neither [Florida] case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance"); *see also In re: Chinese Drywall Litig.*, No. 10- 28090 (Fla. 17th Jud. Cir. Feb. 4, 2011) (adopting the reasoning of the Omnibus Order and holding that "[t]his Court finds

---

a particular or unusual use different from the purpose for which the item sold was ordinarily used"); *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

Judge Kelley's ruling [in *Bennett*] to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case.") (attached as **Exhibit G**).  As such, Count XI should be dismissed in its entirety.

I.      **Plaintiffs Cannot Bring a Claim for Unjust Enrichment (Count XII).**

The elements of unjust enrichment are that "(1) <u>the Plaintiffs have conferred a benefit on the defendant</u>; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that <u>it would be inequitable for the defendant to retain the benefit</u> without paying fair value for it." *Commerce Partnership 8098 Ltd. v. Equity Contracting Co*., 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp*., 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

Plaintiffs' unjust enrichment claim stumbles on the first and fourth of these elements. The first element is not satisfied because the Plaintiffs cannot show that they "conferred a benefit" on Paul Homes because Plaintiffs did not pay Paul Homes a single dime to build their Property, as they obtained the Property from a third party.  *See* **Ex. D**.  The Plaintiffs, in other words, did not "enrich" Paul Homes in any sense.

As to the fourth element of unjust enrichment, there is nothing inequitable or unjust about permitting Paul Homes to retain whatever benefit it received for constructing the Property for Viking (the initial purchaser) because it cannot be disputed that Paul Homes paid a third party (i.e., a subcontractor or distributor) for the drywall in question.  As the Florida appellate court explained in *Maloney v. Therm Alum Industries, Corp.*, "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust.  Consequently, <u>if the [defendant] has given any consideration to any person for the improvements, it would not be</u>

unjust for [the defendant] to retain the benefit." 636 So. 2d 767, 770 (Fla. 4th DCA 1994), *overruled on other grounds by*, *Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities).

Thus, not only is the Plaintiffs' unjust enrichment claim barred because they did not "enrich" Paul Homes, their unjust enrichment claim is precluded because whatever compensation Paul Homes received for the drywall was not retained "unjustly."

**J**.     **The Omnibus Complaint Fails to State a Claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIII).**

In the overbroad style that is the hallmark of the Omnibus Complaint, Plaintiffs also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA").  Cmplt. ¶ 148.  A FDUTPA claim comprises three distinct elements:  (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages."  *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  "In light of this trend, claims arising under the FDUTPA must be pled with particularity." *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).  At a minimum, Rule 9(b) requires a claimant to allege

"(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the Plaintiffs, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard.  Indeed, it alleges no specific facts in support of Plaintiffs' FDUTPA claim.  *See* Cmplt. ¶¶ 147-151.  It does not identify a single instance in which Paul Homes – by its words or conduct – deceived Plaintiffs or treated them unfairly.  Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b).  *See Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[8]

Plaintiffs' failure, however, is not merely one of pleading.  Their FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to Plaintiffs.  *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury).  Because Paul Homes provided services – namely,

---

[8]     Plaintiffs' FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply.  A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly" and for a 'deceptive and improper purpose.'"  *Infinity Global, LLC v. Resort at Singer Island, Inc.*, No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

the construction of a single home – Plaintiffs can establish "actual damages" <u>only</u> by showing a difference between the "market value" of the services that Paul Homes actually provided and the services that Paul Homes was required to provide.[9]   *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties" (citations omitted)).

As a matter of law, Plaintiffs cannot make this showing.  There is zero evidence – and Plaintiffs do not appear to suggest – that the manner in which Paul Homes <u>constructed</u> the Property was in any way responsible for the allegedly defective drywall.  The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose."  *In re Chinese Drywall*, 680 F. Supp. 2d at 792.

So, even if Plaintiffs could conceivably replead their FDUTPA claim with the particularity demanded by Rule 9(b), they have no hope of establishing the "actual damages" component of their claim.  Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction."  Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fl. 1995).  Count XIII must be dismissed for this reason as well.

---

[9]     The same would hold true if Paul Homes had delivered a "product" – *i.e.*, a completed home – rather than providing a "service."  To recover under FDUTPA, Plaintiffs would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

**K.      Plaintiffs' Claim for Equitable Relief and Medical Monitoring (Count XIV) Cannot go Forward against Paul Homes.**

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XIV).  This hybrid, catchall-type claim seeks, among other things, an order that Paul Homes "buy back or rescind" its contract and "create, fund, and support a medical monitoring program."  Cmplt. ¶ 154.  This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based.  Since each of Plaintiffs' substantive claims are due for dismissal, so too is their derivative claim for injunctive relief.  *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a Plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support to an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiffs have failed to allege an inadequate legal remedy or irreparable harm.  Injunctions under both federal and Florida law require these elements.  *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a Plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted).  Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most

notably, for "compensatory and statutory damages" – are inadequate and entitle them to the extraordinary remedy of an injunction.  *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc*., 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," it is unclear whether Florida law even permits this cause of action.  The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring.  It is hardly clear, then, that Plaintiffs can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim.  At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, Plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999).  The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm.  *Id*.

The Omnibus Complaint does not even attempt to properly allege these elements. Instead, Count XIV sets forth a series of legal conclusions – *e.g*., "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct" – without a shred of factual detail.  Plaintiffs fail to identify, for example, any medical condition

(latent or otherwise) supposedly caused by the drywall; nor do they identify a monitoring procedure for that supposed condition.  <u>Plaintiffs do not even claim to be ill</u>.  They would have this Court speculate about their imaginary ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring.  It states a series of legal conclusions, and those obviously "do not suffice."  *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate).  The glaring deficiencies highlighted above make the final Count subject to dismissal now, on the pleadings. *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the Plaintiffss must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

## L.     The Jury Trial Demand Should Be Dismissed and/or Stricken.

In addition to dismissing the Omnibus Complaint in its entirety, the Court should dismiss, or in the alternative, strike the demand made by the Plaintiffs for a jury trial because the Plaintiffs specifically and knowingly waived the right to a trial by jury in the parties'

Construction Agreement.  *See* **Ex. D**, ¶21.  That express waiver requires that the jury demand be dismissed and/or stricken.  *See Palomares v. Ocean Bank of Miami*, 574 So. 2d 1159, 1160 (Fla. 3d DCA 1991) (upholding contractual waiver of jury trial).

## II.  CONCLUSION

Paul Homes, Inc., n/k/a Management Services of Lee County, Inc., respectfully requests an order dismissing the claims asserted against it with prejudice, and awarding Paul Homes its attorneys' fees and costs in defending this action pursuant to paragraph numbered 21 of the Construction Agreement Florida's Deceptive and Unfair Trade Practices Act.

Dated:  September 9, 2011

Respectfully submitted,

**AKERMAN SENTERFITT**

By: ___/s/ Stacy Bercun Bohm_____
     Stacy Bercun Bohm (Fla. Bar No. 022462)
     Valerie B. Greenberg. (Fla. Bar No. 26514
     Leslie Miller Tomczak (Fla. Bar No. 126489)
     Las Olas Centre II, Suite 1600
     350 East Las Olas Boulevard
     Fort Lauderdale, Florida 33301-2229
     Telephone: (954) 463-2700
     Telecopier: (954) 463-2224
     Email:  stacy.bohm@akerman.com
             valerie.greenberg@akerman.com
             leslie.tomczak@akerman.com

**LEAD COUNSEL FOR DEFENDANT, PAUL HOMES, INC., N/K/A MANAGEMENT SERVICES OF LEE COUNTY, INC.**

**PHELPS DUNBAR, LLP**

By:    /s/ Brent B. Barriere
        Brent B. Barriere (La. Bar No. 2818)
        Susie Morgan (La. Bar No. 9715)
        D. Skylar Rosenbloom (La Bar No. 31309)
        Canal Place
        365 Canal Street • Suite 2000
        New Orleans, Louisiana 70130-6534
        Telephone: (504) 566-1311
        Telecopier: (504) 568-9130
        Email: Brent.barriere@phelps.com
              Susie.morgan@phelps.com

**LOCAL COUNSEL FOR DEFENDANT, PAUL HOMES, INC., N/K/A MANAGEMENT SERVICES OF LEE COUNTY, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document and exhibits have been served on Plaintiffs' Liaison Counsel, Russ Herman, at Herman, Katz & Coltar, LLP, 820 O'Keefe Avenue., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, at Frilot, L.L.C., Suite 3700, 1100 Poydras Street, New Orleans, LA 70163 (kmiller@frilot.com) by U.S. Mail and e-mail or by hand delivery and email, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 9th day of September, 2011.

                          /s/ Stacy Bercun Bohm