**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: 2047 |
| | SECTION:  L |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE FALLON MAG. JUDGE WILKINSON |

_____/

**CERTAIN HOMEBUILDERS' RESPONSE IN OPPOSITION TO JOINT MOTION FOR APPROVAL OF TERM SHEET AGREEMENT WITH THE KNAUF ENTITIES REGARDING THEIR SETTLEMENTS WITH HOMEBUILDERS**

The Homebuilders' Steering Committee, on behalf of certain homebuilders ("Homebuilders"),[1] hereby submits the Homebuilders' response in opposition to the Joint Motion for Approval of Term Sheet Agreement with the Knauf Entities Regarding their Settlements with Homebuilders ("Motion to Approve Term Sheet Agreement") [D.E. 10227-3], and in support thereof states as follows:

**Introduction**

On September 1, 2011, the Plaintiffs' Steering Committee ("PSC") and Knauf Plasterboard (Tianjin) Co. Ltd.; Knauf Plasterboard (Wuhu) Co., Ltd.; Guandong Knauf New Building Material Product Co., Ltd.; Knauf International GmbH; Knauf Insulation GmbH (referred to in MDL 2047 as Knauf Insulation USA); Knauf AMF GmbH & Co. KG; Knauf do Brasil Ltda.; Gebrueder Knauf Verwaltungsgesellschaft, KG, P.T.; Knauf

---

[1] The homebuilders joining in this response are Lennar Corporation; Lennar Homes, LLC; U.S. Home Corporation; G.L. Homes of Florida Corporation; Richmond Heights Community Development Corporation; CastleRock Communities, L.P.; LPR Builders, Inc.; CDC Builders, Inc.; KB Home; KB HOME Florida LLC; KB HOME Jacksonville LLC; KB HOME Orlando LLC; KB HOME/Shaw Louisiana LLC; KB HOME Tampa LLC; KB HOME Fort Myers LLC; KB Home Treasure Coast LLC; Briella Townhomes, LLC; Centerline Homes at Georgetown, LLC; Completed Communities II, LLC (f/k/a Centerline Homes at Tradition, LLC); Centerline Port St. Lucie, Ltd.; Ashton Tampa Residential L.L.C.; Ashton Houston Residential L.L.C.; and M/I Homes.  This response is being filed reserving all defenses, and without waiver of objections to service of process, jurisdiction or venue.

Gypsum Indonesia; Knauf Gips KG (collectively, the "Knauf Entities"), jointly filed their Motion to Approve Term Sheet Agreement, asking this Court to approve the "Term Sheet Agreement for the Knauf Entities' Settlement Agreements with Homebuilders" (the "Term Sheet Agreement").  The stated goal behind the negotiations of the Term Sheet Agreement was to create a framework for homebuilders with existing repair programs to repair homes in litigation, thus resolving all litigated claims involving unrepaired homes built by those homebuilders.

The Term Sheet Agreement that has been submitted to the Court, however, falls far short of that goal.  Because the Term Sheet Agreement requires that the homebuilders negotiate settlements with the homeowners and perform the repairs, it is only with the repairing homebuilders' active participation in and acceptance of any settlement that all of these litigated claims can be resolved.  As discussed more fully below, the Court should reject the Term Sheet Agreement as it is inconsistent with and violates the provisions contained in the existing homebuilder settlement agreements with the Knauf Entities, while at the same time reserves for the PSC the right to seek attorneys' fees to which they plainly should not be entitled.  This Court should further require the PSC and the Knauf Entities to engage in a meaningful tripartite negotiation with homebuilders in an attempt to reach a resolution of all litigated claims involving homebuilders that are willing to repair homes containing defective drywall manufactured by one or more of the Knauf Entities.

## <u>Argument</u>

As the Court is well aware, many homebuilders have dedicated millions of dollars repairing homes containing defective Chinese-manufactured drywall at issue in these

MDL proceedings ("Chinese Drywall") for hundreds, if not thousands, of homeowners. These homebuilders led the charge to repair these homes long before the PSC was appointed by this Court -- and in many cases even before this MDL was created -- with no expectation or assurances of ever recuperating any monies from those ultimately responsible for the Chinese Drywall discovered in these homes -- the manufacturers, distributors, suppliers, brokers and installers of Chinese Drywall (the "Supply Chain Parties").  Indeed, the homebuilders' efforts have been instrumental in developing the overall framework for understanding Chinese Drywall and its effects on homes, establishing the proper scope of repair work to address and eliminate the effects of Chinese Drywall, and resolving claims with many of the homeowners and Supply Chain Parties.

It is only with the repairing homebuilders' active participation in and acceptance of any settlement that all of these litigated claims can be resolved, particularly in light of the fact that the Term Sheet Agreement requires that the homebuilders negotiate settlements with the homeowners and perform the repairs.  Nevertheless, these repairing homebuilders were once again completely excluded from the settlement negotiations between the PSC and the Knauf Entities, much like what occurred with the PSC in both the Interior Exterior and Banner settlements.  Of course, those two settlements had to be substantially amended after the homebuilders pointed out multiple problems with those agreements.

Here, what resulted from the two-party negotiations between the PSC and the Knauf Entities was a shameless attempt by the PSC to obtain an attorneys' fees award on homebuilder settlements with homeowners for which the PSC had no role, while at

the same time obligating the PSC to do absolutely nothing for future home repairs – not even settle a single litigated claim.  The PSC and the Knauf Entities further purport to alter or otherwise violate the provisions contained in existing homebuilder settlement agreements with the Knauf Entities without any input or involvement from the homebuilders themselves.  This Court should demand more, reject the Term Sheet Agreement as presented, and require the PSC and Knauf Entities to engage in a meaningful tripartite negotiation with repairing homebuilders to attempt to resolve all of these litigated claims once and for all.

This Court previously expressed its disappointment and admonishment over the homebuilders' exclusion by the PSC in the settlement negotiations involving Banner at a hearing on June 14, 2011:

> MS. BASS: ... I feel compelled to put on the record that despite the admonishment of this Court to include the homebuilders in the negotiation process, and despite the fact that this Court granted intervention to some of the builders so they could participate in the settlement of this class, the homebuilders have been totally excluded from this process.
>
> The Homebuilders Steering Committee was given a term sheet ten days ago with significant material terms not included. We were assured that we would be included in the settlement discussions before anything went final. We actually had offered to go to New York to do that, we offered to come in yesterday to do that. We negotiated for a week over the time to get together to have the discussion, and we're shocked to find out when we arrived in court today that the deal had already been cut.
>
> I understand it's a complicated deal. It may be the best deal possible. But I can assure you, it is much easier to cut a deal when you're excluding one of the most important classes or subclasses of relevant interested parties, and that's what I believe has been done.
>
> We will meet with the PSC. We will go through this settlement agreement on behalf of the Homebuilders Steering Committee. But I must put on the record how offended we are with this process, that the insurance companies and Banner and the PSC have sliced and diced a deal and allocated risks and allocated the release provisions and the dollars without any input from the one set of parties at the table who spent millions of dollars to repair these homes.

So we will go through this process, Your Honor, but I have to express my sincere concern about the possibility that all this work will be for naught. Because if all the homebuilders object to the settlement, I suspect that neither Banner nor the insurance companies will be prepared to go forward.

THE COURT: Yes. I'm disappointed that this occurred because that wasn't my understanding. I understood that everybody would be at the table this time and would participate in this agreement. And as I mentioned to counsel in conference, I want them to meet following this matter and see whether or not we're just dealing with a misunderstanding as opposed to something more serious.

But I do agree that the significant people have to be plugged in and participate in these matters in order for them to be successful. So I don't want this to happen again.

Transcript of Status Conference, dated June 14, 2011, at pp. 9-10.

While calling itself an "Agreement with Homebuilders," even though homebuilders are *not* parties to it, the Term Sheet Agreement arguably seeks to alter existing homebuilder agreements with the Knauf Entities by potentially changing the reimbursement terms of existing homebuilder settlements with the Knauf Entities. For instance, the Term Sheet Agreement seeks to place existing homebuilder agreements governing "mixed homes" (*i.e.*, homes containing KPT Drywall and other Chinese Drywall) under its rubric if certain "reimbursement terms" are subsequently negotiated, without any consideration whatsoever of the terms and conditions of those existing homebuilder agreements.   (*See* Term Sheet Agreement, § II(D.)).   Some of the reimbursement terms in those existing agreements already account for the "mixed home" situation.

Moreover, the Term Sheet Agreement seeks to mandate that homeowners receive relocation benefits that were otherwise not agreed to under existing homebuilder agreements with the Knauf Entities by requiring benefits as "contemplated

5

by Paragraph III(B)(1) of the Demonstration Remediation Agreement." (*See* Term Sheet Agreement, § II(A.)). Those relocation benefits, which include a lump sum payment to the homeowner of $8.50 per square foot of livable area, are not required by most, if not all, of the existing homebuilder agreements with the Knauf Entities (although in many circumstances homebuilders pay negotiated sums to their homeowners). Each homebuilder has its own protocol for addressing the relocation of their homeowners while the repairs take place, and many such protocols take into consideration the unique circumstances of each home and homeowner.

The Term Sheet Agreement further purports to permit the Knauf Entities to violate confidentiality provisions contained in homebuilder settlement agreements with the Knauf Entities by allowing the PSC to perform audits of "all costs covered" under such agreements. (*See* Term Sheet Agreement, § VIII). The homebuilders strongly oppose any effort by the PSC to obtain their confidential and commercially sensitive information.

One of the most troubling parts of the Term Sheet Agreement is the brazen attempt by the PSC to recover attorneys' fees for the "Knauf Entities' contribution to Homebuilders' remediation of homes pursuant to *existing or pending* Homebuilder Agreements . . . and/or Future Homebuilder Agreements," without any restrictions whatsoever as to time and scope, or any similar provision for other parties, including the homebuilders. (*See* Term Sheet Agreement, § III(A.) (emphasis added)). Presumably, under this provision, the PSC could recover attorneys' fees for homes repaired by homebuilders prior to the PSC's or MDL's creation, or even for homeowners for which the PSC was never counsel. Such results are plainly illogical and unfair, considering

6

the obvious facts that the PSC contributed absolutely *no* benefit to homebuilders' settlements with homeowners on terms that either were available to homeowners *before* the creation of this MDL, or were being developed by homebuilders *before* any significant activities took place in the MDL.  Indeed, to the extent that home repairs have taken place outside of this litigation, they are clearly the results of the efforts of the homebuilders and have not benefitted in any way from the efforts of the PSC.  By implication, the PSC seeks to establish that it alone provided a common benefit relative to the repair of all homes having Chinese Drywall manufactured by Knauf.   This is simply not the case.

In short, rather than incentivize the PSC to assist the Knauf Entities and homebuilders to reach a resolution on all remaining litigation involving homes containing KPT Drywall, the Term Sheet Agreement seeks to obligate the homebuilders to undertake certain actions (even though the homebuilders are *not* parties to the Agreement) and seeks to alter existing homebuilder agreements with the Knauf Entities, *while, at the same time, obligating the PSC to do nothing and rewarding the PSC with attorneys' fees for settlements they clearly had no role in.*  The PSC's two-fold goal here is apparent:

(i) appropriate common fund[2] monies that should be set aside for the benefit of all common fund counsel (including counsel for certain homebuilders), and

---

[2] Indeed, the Term Sheet Agreement provides the PSC with a right to attorneys' fees as "common benefit counsel" to the exclusion of other common benefit counsel.  Simply put, the PSC has no right to anoint itself as common benefit counsel, while at the same time excluding other parties from seeking common fund monies.

(ii) create a war chest of attorneys' fees in the event it chooses to litigate

against homebuilders or any other parties.

Unquestionably, this is contrary to the principal goal of these MDL proceedings, which is to, as quickly as possible, insure that all homes containing Chinese Drywall are repaired.

Had the homebuilders *not* been disregarded in the negotiations between the PSC and the Knauf Entities, an issue which has become commonplace in this litigation, the homebuilders could have addressed all of these problems with the Term Sheet Agreement before it was submitted for approval by the Court.  Accordingly, this Court should, once and for all, put an end to such improper tactics and flatly reject the Term Sheet Agreement.  The Court should also require that homebuilders be permitted to participate in any further negotiations that attempt to resolve any and all claims against the Supply Chain Defendants on a global basis.

**WHEREFORE,** for all the foregoing reasons, Certain Homebuilders object to the Term Sheet Agreement, and respectfully requests that the Court enter an Order denying the Motion to Approve Term Sheet Agreement.

Dated:        September 13, 2011                              Respectfully submitted,

**STONE PIGMAN WALTHER WITTMANN**
*Local Lead Counsel for the HSC*
546 Carondelet Street
New Orleans, LA  70130
Telephone: (504) 593-0804
Facsimile: (504) 593-0804
E-mail: pwittmann@stonepigman.com

By:    /s/ Phillip A. Wittmann
       PHILLIP A. WITTMANN
       Louisiana Bar No. 13625

**GREENBERG TRAURIG, P.A.**
*Lead Counsel for the HSC*
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
Email: bassh@gtlaw.com

By:    /s/ Hilarie Bass
       HILARIE BASS
       Florida Bar No. 334323
       MARK A. SALKY
       Florida Bar No. 058221

**SIVYER BARLOW & WATSON**
*Member of the HSC*
100 S Ashley Drive, Suite 2150
Tampa, FL 33602
Telephone: (813) 221-4242
Facsimile: (813) 227-8598
Email: nsivyer@sbwlegal.com

By:    /s/ Neal Allen Sivyer
       NEAL A. SIVYER
       Florida Bar No. 373745

**KING & SPALDING LLP**
*Member of the HSC*
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: kbuster@kslaw.com

By:    /s/ J Kevin Buster
       J. KEVIN BUSTER
       Georgia Bar No. 099267

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on September 13, 2011, this document has been served on Plaintiffs' Liaison Counsel, Russ Herman, Esq., and Defendants' Liaison Counsel, Kerry Miller, Esq., Homebuilders' Liaison Counsel, Dorothy Wimberly, Esq., and Insurer Defendants' Liaison Counsel, Judy Y. Barrasso, Esq., by U.S. mail and/or email or by hand delivery and I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 6.

/s/ Hilarie Bass
Hilarie Bass