UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| THIS DOCUMENT RELATES TO: | * * | JUDGE FALLON |
| ALL CASES | * * * | MAGISTRATE WILKINSON |

### AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

CHRIS CANZANO

who, being duly sworn, upon his oath deposed and stated as follows:

1. He is the President for Villa Development, Inc., d/b/a Villa Homes of Southwest Florida ("Villa Development"), and as such, has personal knowledge of the following based on his review of records maintained by Villa Development in the regular course of business.

2. Villa Development is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Lee County, Florida.

3. Villa Development is a home builder that contracts with third party vendors for the



construction of single-family homes and/or sells completed single-family homes.

4. Villa Development has never built a residence in the State of Louisiana nor had any contracts or subcontracts with companies located in Louisiana.

5. Villa Development has never been licensed or registered to do business in Louisiana or ever had any offices or employees in Louisiana.

6. Villa Development does not have an agent for service of process in Louisiana.

7. Villa Development does not have any bank accounts in Louisiana or own any property in Louisiana.

8. Villa Development does not solicit business in Louisiana or ever transacted business in Louisiana.

9. Villa Development has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. Villa Development does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. Villa Development has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12. Consequently, Villa Development never anticipated it would be haled into court in Louisiana.

CHRIS CANZANO

2

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 17th DAY OF August, 2010.

*Linda J. Terrell*
NOTARY PUBLIC Linda J. Terrell

LINDA J. TERRELL
MY COMMISSION # DD 785529
EXPIRES: September 5, 2012
Bonded Thru Notary Public Underwriters

3



**Villa Homes of SW Florida**

4414 Del Prado Blvd.
Cape Coral, FL 33904
Phone (239) 542-4066
Fax (239) 542-4545
CGC 045205

## CONSTRUCTION AGREEMENT

THIS AGREEMENT made this day of <u>February 28, 2005</u>, by and between
NAME: <u>Stephen & Rose Karlstromer</u>
ADDRESS: <u>4911 Santa Monica Ct., Cape Coral, Florida 33904</u>
HOME PHONE: <u>(239) 549-0126</u>     CELL PHONE: <u>(703) 582-4222</u>     FAX: ____
E-MAIL: ____

Hereinafter called "Owner", and VILLA DEVELOPMENT, INC., a Florida Corporation, hereinafter called the "Builder." WHEREAS, the Owner is the Owner in fee simple of or is purchasing certain premises described as follows and hereinafter called the building site, the Owner desires Builder to construct a certain building on the premises:

NOW THEREFORE, in consideration of the premises:
1. The Builder shall construct upon the building site a building in accordance with the plans and specifications hereto attached. The Builder shall provide all materials and perform all work of the construction provided for in the plans and specifications in a good and workmanlike manner. The Builder warrants the construction of the building from defects of material or workmanship for a period of twelve months from closing. All manufacturers' warranties shall continue in force and effect according to their terms.

**Property Description:**
Unit <u>2 Pt. 2</u>   Block <u>98</u>   Lots <u>36-37</u>
Street & City <u>4976 Seville Ct., Cape Coral, FL 33904</u>

2. The Owner shall pay the Builder for such construction the amount of (TOTAL COST OF CONSTRUCTION)..........$486,284.63
Payable as follows:

| Description | Amount |
|---|---|
| New Construction Reservation (upon signing this Agreement) Rec'd 12/31/04 | $5,000.00 |
| 10% of Total Construction Cost Less Reservation (on or before permitting) | $43,628.46 |
| Balance of Funds Due To Builder (as per approved draw schedule) | $437,656.17 |

| HOUSE COSTS: | Basic Model Villa Casa Palazzo | Garage Side Right | $334,900.00 |
|---|---|---|---|
| CUSTOM FEATURES: | Per Attached Addendum, House To Include Custom Features | | $69,661.00 |

**ESTIMATED HOMESITE IMPROVEMENT COSTS:**

| Item | Amount | |
|---|---|---|
| Impact Fees For City of Cape Coral | ($7,652.00) | |
| Utility Meter Fee/Deposits For Water & Sewer | Included | |
| Sewer & Water Connection From Street To House | Included | |
| Upgrade To Well & Well Equipment | N/A | |
| Double Casing Well (where needed) | N/A | |
| Upgrade To Septic System & HRS Application | N/A | |
| Survey, Plans & Engineering | Included | |
| Culvert Under Driveway | $1,350.00 | -OR- need existing |
| Seawall Repairs (see Item # 13) | By Owner | |
| Up to 3 Courses of Stemwall | Included | |
| Estimated Additional Course(s) of Stemwall, Fill, & Engineering | $10,062.00 | See attached Stemwall Addendum for cost breakdown per course |
| **TOTAL ESTIMATED HOMESITE IMPROVEMENT COSTS:** | **$3,760.00** | |

**ESTIMATED UTILITY COSTS:**

| Item | Amount |
|---|---|
| Extended Electric | $675.00 |
| Underground Electric (standard 25' front setback) | Included |
| Temporary Power | Included |
| Sewer or Water Assessments/Betterment Fees | N/A |
| **TOTAL ESTIMATED UTILITY COSTS:** | **$675.00** |

**SEPARATE CONTRACTUAL ITEMS:**

| Item | Amount |
|---|---|
| Swimming Pool Package, Per Addendum | $71,529.00 |
| Dock, Per Addendum | By Owner |
| Home Electronics/Low Voltage, Per Addendum | $4,455.00 |
| Landscaping Package, Per Addendum | $0.00 |
| Lighting/Fan Package, Per Addendum | $1,304.63 |
| Storm Protection Package, Per Addendum | $0.00 |
| **TOTAL SEPARATE CONTRACTUAL ITEMS:** | **$77,288.63** |

| **CONTRACT TOTAL:** | **TOTAL OF NEW CONSTRUCTION CONTRACT:** | **$486,284.63** |
|---|---|---|

3. The conditions printed on the reverse side of this Construction Agreement are an integral part of this agreement.
4. If required, Owner to secure mortgage loan to complete project from reputable lending institution or agency.

SALESPERSON _(signed)_     OWNER/BUYER _(signed)_
VILLA HOMES OF SW FL REPRESENTATIVE     OWNER/BUYER _Rose Karls_
DATE RECEIVED BY VILLA HOMES REP: 2-28-05     DATE SIGNED BY OWNERS/BUYERS: 2-28-05

-SEE NEXT PAGE-     1/1/05

EXHIBIT B

Case 2:09-md-02047-EEF-MBN   Document 10338-2   Filed 09/19/11   Page 5 of 7

## VILLA HOMES OF SW FL

"The homeowner hereby warrants that the plans and/or sketches provided to Villa Homes are not copyrighted and are available for use and copying by Villa Homes in the performance of this contract. The homeowner further agrees to indemnify and hold harmless Villa Homes for any damages and legal expenses it incurs to defend a copyright infringement action resulting from the use of these plans."

1. Owner hereby grants the exclusive use and possession of the property described herein to the Builder until such time as construction has been completed and all monies due to Builder pursuant to the terms of this agreement have been paid in full. Owner agrees not to use or occupy the property under any circumstances prior to final settlement and complete payment of all monies due to Builder hereunder. In the event Owner takes possession of the property in violation of this agreement, the parties agree that Owner shall be a tenant at sufferance and that Builder shall have all of the remedies provided by law for the removal or eviction of such a tenant.

2. Owner represents that Owner now holds title to the property described herein, or will acquire same prior to start of construction; that same has been properly zoned for construction of the improvements described herein; that Owner's title is free and clear of any and all liens and encumbrances whatsoever; and that there is legal access from public road to said property.

3. No changes shall be made in the Owner-approved plans and specifications unless such changes have been mutually agreed upon by Owner and Builder, and stipulated in writing, signed by the parties, which describes any such change and costs thereof. Owner must sign-off on a Final Change Agreement prior to permitting. In the event of any such change, Builder shall be allowed an additional reasonable time to complete construction. Each such change subsequent to Owner's initial approval of plans and specifications shall increase the construction price by the amount of $250.00 in addition to the costs for each such change. All changes will be submitted to Owner on a Work Order prepared by the Builder. Payment for the cost of the change and the change fee is due by the Owner to the Builder upon receipt of the Work Order. Builder is hereby authorized to make changes without Owner's approval where (1) any such change is the result of structural or field conditions or matters imposed by regulatory agencies, or (2) materials specified are not readily available when needed (provided that material substituted therewith shall be of substantially equal value and usability).

4. The parties acknowledge that the stipulated construction cost does not include additional items, which may arise by virtue of the location of physical conditions of the property. All such additional costs shall be paid by Owner and/or be received by Owner and shall include, but not be limited to the following:

   (a) Foundation block, or fill dirt under the slab, pool deck, patio, drive or walks, in addition to that required for the normal two course foundation.

   (b) Machine grading in excess of 10,000 square feet, and fill dirt in excess of allowance.

   (c) Expenses caused by rock excavation and removal or other adverse subsoil conditions, tree or muck removal, lot clearing, or specialty designed foundations and billings or septic systems.

   (d) Expenses of electrical service run across the building necessitated by power company pole locations and regulations, or underground electrical, and/or telephone service.

   (e) Any variance, zoning, or building code change required for construction.

   (f) Water and sewer line hookups in excess of 50 feet.

   (g) Removal of fill in excess of three truck loads.

   (h) Use of cranes, pumps or other equipment required to place or deliver fill, concrete or other building materials due to any physical obstacles or limitations.

   (i) Driveway and walkways in excess of 600 square foot allowance.

   (j) Builder cannot be responsible for cracked concrete in floor slab, pool deck, driveway and walkways. Builder is not responsible for tile cracking.

   (k) Builder cannot be responsible for costs associated with new mandated hurricane building codes that may take effect after execution of this Agreement.

   (l) Builder cannot be involved in the resolution or dispute with Owner and neighbor to Owner's property where the following is concerned: neighbors overgrowth or placement of landscaping onto Owner's property, neighbors overgrowth of natural vegetation along the water, neighbors sprinkler system placed on Owner's property, neighbors fences or walls, neighbors drainage and water run-off or lack of, and any other situation that may arise concerning the neighboring lots/homes.

5. Builder shall furnish at time of completion his affidavit of no liens, as well as certificate of occupancy, the balance of all funds then due Builder shall be paid by Owner at that time. Owner agrees not to use or occupy the property under any circumstances prior to final settlement and complete payment of all monies due to Builder hereunder.

6. Builder guarantees to Owner all workmanship and materials furnished under the terms of this agreement for a period of one year from date of the earlier of Certificate of Occupancy, Temporary Certificate of Occupancy or Certificate of Completion. THIS GUARANTEE IS IN LIEU OF ANY AND ALL WARRANTIES EXPRESSED OR IMPLIED, EXCEPT for manufacturer's warranties which shall continue in force and effect according to their terms, and shall not inure to the benefit of Owner's transferee, assignee or successor.

7. Builder will secure Builder's Risk Insurance from the date construction commences until and through the date of closing and will abide by regulations set forth in this insurance policy. In the event of any claim, damage or loss, the Owner will be responsible for paying the entirety of any applicable deductible over and above $2,000 under said Builder's Risk Insurance Policy. A copy of the Builder's Risk Insurance Policy is available upon request. Builder's Risk Insurance does not cover damage from rising water. It is the Owner's responsibility to provide flood coverage if desired or required by the Lender. If said construction is located in a Florida Designated Wind Zone, the Owner is responsible for securing Florida Wind Storm coverage.

8. In the event this contract is subject to Owner's financing and such contingency is not met, Owner shall immediately pay Contractor all costs and expenses reasonably incurred by Contractor, including but not limited to, preparation of plans and specifications, percolation tests, surveying and any and all charges incurred for interior decorating specifications and selections.

9. Should any controversy arise relating to this contract or the failure or refusal to perform, in whole or part, the same shall be submitted to arbitration by two competent persons, one employed by the Owner and the other by the Contractor. In the event of their inability to agree, they shall have the power to name a third arbitrator or to go to American Arbitration. The arbitration determination shall be final and binding on all parties thereto.

10. Construction is to be completed within 225 working days of the starting date. Start of Construction is defined as the date on which the slab is poured, allowing five (5) working days per calendar week, unless delayed by strike, shortage of labor or materials, newly established requirements of governmental agencies, Acts of God, or other causes beyond control of Builder. Closing and settlement of the contract will be within five (5) days of notice by Builder to Owner that the premises are substantially ready for occupancy. Owner shall not unreasonably delay closing because of minor work that does not interfere with occupancy. Said minor work will be listed on a Compliance List signed by Owner and Builder's Superintendent. This work will be scheduled and completed by Builder as quickly as possible after occupancy. Time is of the essence in this agreement. The Builder cannot and will not be responsible for any damages or inconveniences caused the Owners for failure to complete the residence specified herein within the above number of days, regardless of the reason for such delay. Owner cannot cease construction without written consent of the Builder. The Owner may incur additional building costs if construction were to cease.

11. It is agreed and understood that if the Owner secures a mortgage loan upon the property in compliance with Paragraph Four on the reverse, Owner agrees and understands that there will be a loan closing with the financial institution or agency or its representative when the mortgage is obtained. Owner acknowledges that this loan closing is separate and apart from the closing of this contract.

12. The contract price in this Agreement is based upon a readily accessible clear, level, developed lot, now serviced by public utilities, free of bushes and trees. If a sufficiently high elevation to permit a normal three block foundation. Owner authorizes and agrees to pay charges for any clearing, fill on exterior of foundation, and special foundation, and temporary utilities, if needed, including, but not limited to any fill requirements necessitated to meet the provisions of Federal Flood Insurance Laws or any other applicable laws or regulations. It is the Owner's responsibility to notify Builder of unusual soil conditions and to provide test borings, if needed. Expense of removal of excess dirt of vegetation, to provide proper grade or any expenses caused by rock or other adverse subsoil conditions will be borne by the Owner.

13. Pricing in this Agreement is based upon present construction costs. Owner and Builder recognize that construction costs are very fluid and subject to change. In the event that Builder shall not be in the position to commence construction within thirty (30) days, from date of contract as a result of a delay in obtaining a building permit or necessary governmental agency approvals, or Owner's delay in providing all signed contracts for Builder, or unusual delay in Owner's obtaining mortgage financing or the seawall/repairs to seawall is not completed prior to the building permit being approved; then the construction price shall be subject to change. Any adjustment in price will be documented by Builder to Owner with evidence of the need for adjustment. If said adjustment results in an increase of more than 10% of the contract total, Owner has the right to cancel the contract and receive the return of his deposit, less any expenses incurred on the Owner's behalf, without further liability. Notice of this election must be given to Builder within ten (10) days of the receipt of adjustment notice by Owner.

14. Owner may schedule a Color Selection with the Builder's interior consultant upon Builder's receipt of the Reservation Deposit from the Owner. If the contract to build is cancelled, the Owner agrees to pay the Builder an administration fee of $100 per hour for time spent with the Builder's interior consultant, draftsman, artist, general contractor, etc... This administration fee will be deducted from Owner's Reservation Deposit.

15. Estimated Homesite Improvement Costs are Builder's best estimates at the time of contract signing. Actual site improvements may cost more. Prices to Owner will be submitted on a Work Order and payment is due to Builder upon Owner's receipt of such Work Order.

16. This Agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of Owner and Builder.

17. Owners will insure Separate Contractual items, if included in mortgage, are special draw items and not included in normal contractor draw schedule.

18. If the Owner is to secure a mortgage loan, this Construction Agreement is contingent upon the Owner obtaining a mortgage commitment with a payment draw schedule mutually agreeable to the lending institution and the Builder. In the event such commitment cannot be obtained by Owner, Builder shall have sufficient time to exercise its best efforts in obtaining said mortgage loan on behalf of Owner. If the efforts of the Owner and the Builder are unsuccessful this Construction Agreement shall, at the option of the Owner, become null and void, and all deposits shall be refunded to the Owner by the Builder, less out-of-pocket expenses incurred by the Builder. Any fees the Owner's mortgage company charges to wire funds, have inspections made, etc... will be at the Owner's expense. If Owner sets up a cash escrow account, all fees associated with the cash escrow account are to be paid by the Owner. The Owner and Builder must mutually agree in writing to a draw schedule for payments to be made to the Builder.

_____          Date: 2-28-05
Owner Initials

QK _____          Date: 2-28-05
Owner Initials

# Villa
## Homes of SW Florida

4414 Del Prado Blvd.
Cape Coral, FL 33904
Phone (239) 542-4066
Fax (239) 542-4545
CGC 045205

## CONSTRUCTION AGREEMENT

THIS AGREEMENT made this day of <u>February 2, 2005</u>, by and between (to hold this pricing contract must be signed & loan closed by Feb. 28, 2005 or new pricing will apply)
NAME: <u>James & Yvonne Eng</u>
ADDRESS: <u>24216 Thornhill Avenue, Flushing, NY 11362-1535</u>
HOME PHONE: <u>(718) 423-8803</u>   CELL PHONE: <u>(718) 666-7009</u>   FAX <u>(718) 229-2218</u>
E-MAIL: <u>jimcheaov@hotmail.com</u>

(718) 887-7898 - Home 8/27/05

Hereinafter called "Owner", and VILLA DEVELOPMENT, INC., a Florida Corporation, hereinafter called the "Builder." WHEREAS, the Owner is the Owner in fee simple of or is purchasing certain premises described as follows and hereinafter called the building site; the Owner desires Builder to construct a certain building on the premises:

NOW THEREFORE, in consideration of the promises:
1. The Builder shall construct upon the building site a building in accordance with the plans and specifications hereto attached. The Builder shall provide all materials and perform all work of the construction provided for in the plans and specifications in a good and workmanlike manner. The Builder warrants the construction of the building from defects of material or workmanship for a period of twelve months from closing. All manufacturers' warranties shall continue in force and effect according to their terms.

**Property Description:**
Unit <u>72</u>   Block <u>5003</u>   Lots <u>19-20</u>
Street & City <u>2520 Cape Coral Parkway, Cape Coral, FL 33914</u>

2. The Owner shall pay the Builder for such construction the amount of (TOTAL COST OF CONSTRUCTION).......... **$805,855.81**

Payable as follows:

| | |
|---|---|
| New Construction Reservation (upon signing this Agreement) Rec'd 7/30/04 | $5,000.00 |
| 10% of Total Construction Cost Less Reservation (on or before permitting) | $75,585.58 |
| Balance of Funds Due To Builder (as per approved draw schedule) | $725,270.23 |

| | | | |
|---|---|---|---|
| HOUSE COSTS: | Basic Model <u>Villa Vista - Custom</u> | Garage Side <u>Left</u> | $529,000.00 |
| CUSTOM FEATURES: | Per Attached Addendum; House To Include Custom Features | | $95,509.00 |

**ESTIMATED HOMESITE IMPROVEMENT COSTS:**

| | | |
|---|---|---|
| Impact Fees For Water & Sewer | Included | |
| Utility Meter Fee/Deposits For Water & Sewer | Included | |
| Sewer & Water Connection From Street To House | Included | |
| Upgrade To Well & Well Equipment | N/A | |
| Upgrade To Septic System & HRS Application | N/A | |
| Survey, Plans & Engineering | Included | |
| Culvert Under 3 Car Driveway | $1,350.00 | |
| Culvert Under Circular Driveway Side | $700.00 | |
| Seawall | Already In | |
| Up to 3 Courses of Stemwall | Included | |
| Estimated Additional Course(s) of Stemwall, Fill, & Engineering | $8,558.00 | See attached Stemwall Addendum for cost breakdown per course |
| **TOTAL ESTIMATED HOMESITE IMPROVEMENT COSTS:** | | **$10,608.00** |

**ESTIMATED UTILITY COSTS:**

| | |
|---|---|
| Extended Electric | $675.00 |
| Underground Electric (standard 25' front setback) | Included |
| Temporary Power | Included |
| Sewer or Water Assessments/Betterment Fees | $0.00 |
| **TOTAL ESTIMATED UTILITY COSTS:** | **$675.00** |

**SEPARATE CONTRACTUAL ITEMS:**

| | |
|---|---|
| Swimming Pool Package, Per Addendum | $76,532.00 |
| Dock, Per Addendum | N/A |
| Home Electronics/Low Voltage, Per Addendum | ($7,440.00) |
| Landscaping Package, Per Addendum | $0.00 |
| Lighting/Fan Package, Per Addendum | $871.81 |
| Storm Protection Package, Per Addendum | $0.00 |
| **TOTAL SEPARATE CONTRACTUAL ITEMS:** | **$69,963.81** |

| **CONTRACT TOTAL:** | **TOTAL OF NEW CONSTRUCTION CONTRACT:** | **$805,855.81** |
|---|---|---|

3. The conditions printed on the reverse side of this Construction Agreement are an integral part of this agreement.
4. If required, Owner to secure mortgage loan to complete project from reputable lending institution or agency.

<u>Brian Vickers</u>
SALESPERSON                                    OWNER/BUYER

VILLA HOMES OF SW FL REPRESENTATIVE            OWNER/BUYER
<u>2/7/05</u>                                     <u>2/4/05</u>
DATE RECEIVED BY VILLA HOMES REP               DATE SIGNED BY OWNERS/BUYERS

-SEE NEXT PAGE-

8/1/04

**EXHIBIT C** (tabbies)

## VILLA HOMES OF SW FL

"The homeowner hereby warrants that the plans and/or sketches provided to Villa Homes are not copyrighted and are available for use and copying by Villa Homes in the performance of this contract. The homeowner further agrees to indemnify and hold harmless Villa Homes for any damages and legal expenses it incurs to defend a copyright infringement action resulting from the use of these plans."

1. Owner hereby grants the exclusive use and possession of the property described herein to the Builder until such time as construction has been completed and all monies due to Builder pursuant to the terms of this agreement have been paid in full. Owner agrees not to use or occupy the property under any circumstances prior to final settlement and complete payment of all monies due to Builder hereunder. In the event Owner takes possession of the property in violation of this agreement, the parties agree that Owner shall be a tenant at sufferance and that Builder shall have all of the remedies provided by law for the removal or eviction of such a tenant.

2. Owner represents that Owner now holds title to the property described herein, or will acquire same prior to start of construction; that same has been properly zoned for construction of the improvements described herein; that Owner's title is free and clear of any and all liens and encumbrances whatsoever; and that there is legal access from public road to said property.

3. No changes shall be made in the Owner-approved plans and specifications unless such changes have been mutually agreed upon by Owner and Builder, and stipulated in writing, signed by the parties, which describes any such change and costs thereof. Owner must sign-off on a Final Change Agreement prior to permitting. In the event of any such change, Builder shall be allowed an additional reasonable time to complete construction. Each such change subsequent to Owner's initial approval of plans and specifications shall increase the construction price by the amount of $250.00 in addition to the costs for each such change. All changes will be submitted to Owner on a Work Order prepared by the Builder. Payment for the cost of the change and the change fee is due by the Owner to the Builder upon receipt of the Work Order. Builder is hereby authorized to make changes without Owner's approval where (1) any such change is the result of structural or field conditions or matters imposed by regulatory agencies, or (2) materials specified are not readily available when needed (provided that material substituted therewith shall be of substantially equal value and usability).

4. The parties acknowledge that the stipulated construction cost does not include additional items, which may arise by virtue of the location or physical conditions of the property. All such additional costs shall be paid by Owner and/or be resolved by Owner and shall include, but not be limited to the following:

   (a) Foundation block, or fill dirt under the slab, pool deck, patio, drives or walks, in addition to that required for the normal two course foundation.
   (b) Machine grading in excess of 10,000 square feet, and fill dirt in excess of allowance.
   (c) Expenses caused by rock excavation and removal or other adverse subsoil conditions, tree or muck removal, lot clearing, or specially designed foundations and pilings or septic systems.
   (d) Expenses of electrical service run across the building necessitated by power company pole locations and regulations, or underground electrical, and/or telephone service.
   (e) Any variance, zoning, or building code change required for construction.
   (f) Water and sewer line hookups in excess of 50 feet.
   (g) Removal of fill in excess of three truck loads.
   (h) Use of cranes, pumps or other equipment required to place or deliver fill, concrete or other building materials due to any physical obstacles or limitations.
   (i) Driveway and walkways in excess of 800 square foot allowance.
   (j) Builder cannot be responsible for cracked concrete in floor slab, pool deck, driveway and walkways. Builder is not responsible for the cracking.
   (k) Builder cannot be responsible for costs associated with new mandated hurricane building codes that may take effect after execution of this Agreement.
   (l) Builder cannot be involved in the resolution or dispute with Owner and neighbor to Owner's property where the following is concerned: neighbors overgrowth or placement of landscaping onto Owner's property, neighbors overgrowth of natural vegetation along the water, neighbors sprinkler system placed on Owner's property, neighbors fences or walls, neighbors drainage and water run-off or lack of, and any other situation that may arise concerning the neighboring lots/homes.

5. Builder shall furnish at time of completion its affidavit of no liens, as well as certificate of occupancy; the balance of all funds then due Builder shall be paid by Owner at that time. Owner agrees not to use or occupy the property under any circumstances prior to final settlement and complete payment of all monies due to Builder hereunder.

6. Builder guarantees to Owner all workmanship and materials furnished under the terms of this agreement for a period of one year from date of the earlier of Certificate of Occupancy, Temporary Certificate of Occupancy or Certificate of Completion. THIS GUARANTEE IS IN LIEU OF ANY AND ALL WARRANTIES EXPRESSED OR IMPLIED, EXCEPT for manufacturer's warranties which shall continue in force and effect according to their terms, and shall not inure to the benefit of Owner's transferee, assignee or successor.

7. Builder will secure Builder's Risk Insurance from the date construction commences until and through the date of closing and will abide by regulations set forth in this insurance policy. In the event of any claim, damage or loss, the Owner will be responsible for paying the entirety of any applicable deductible over and above $2,000 under said Builder's Risk Insurance Policy. A copy of the Builder's Risk Insurance Policy is available upon request. Builder's Risk Insurance does not cover damage from rising water. It is the Owner's responsibility to provide flood coverage if desired or required by the Lender. If said construction is located in a Florida Designated Wind Zone, the Owner is responsible for securing Florida Wind Storm coverage.

8. In the event this contract is subject to Owner's financing and such contingency is not met, Owner shall immediately pay Contractor all costs and expenses reasonably incurred by Contractor, including but not limited to, preparation of plans and specifications, percolation tests, surveying and any and all charges incurred for interior decorating specifications and selections.

9. Should any controversy arise relating to this contract or the failure or refusal to perform, in whole or part, the same shall be submitted to arbitration by two competent persons, one employed by the Owner and the other by the Contractor; in the event of their inability to agree, they shall have the power to name a third arbitrator or to go to American Arbitration. The arbitration determination shall be final and binding on all parties thereto.

10. Construction is to be completed within 225 working days of the starting date. Start of Construction is defined as the date on which the slab is poured, allowing five (5) working days per calendar week, unless delayed by strike, shortage of labor or materials, newly established requirements of governmental agencies, Acts of God, or other causes beyond control of Builder. Closing and settlement of the contract will be within five (5) days of notice by Builder to Owner that the premises are substantially ready for occupancy. Owner shall not unreasonably delay closing because of minor work that does not interfere with occupancy. Said minor work will be listed on a Compliance List, signed by Owner and Builder's Superintendent. This work will be scheduled and completed by Builder as quickly as possible after occupancy. Time is of the essence in this agreement. The Builder cannot and will not be responsible for any damages or inconveniences caused the Owners for failure to complete the residence specified herein within the above number of days, regardless of the reason for such delay. Owner cannot cease construction without written consent of the Builder. The Owner may incur additional building costs if construction were to cease.

11. It is agreed and understood that if the Owner secures a mortgage loan upon the property in compliance with Paragraph Four on the reverse, Owner agrees and understands that there will be a loan closing with the financial institution or agency or its representative when the mortgage is obtained. Owner acknowledges that this loan closing is separate and apart from the closing of this contract.

12. The contract price in this Agreement is based upon a readily accessible clear, level, developed lot, now serviced by public utilities, free of bushes and trees; of a sufficiently high elevation to permit a normal three block foundation. Owner authorizes and agrees to pay charges for any clearing, fill on exterior of foundation, and special foundation, and temporary utilities, if needed, including, but not limited to any fill requirements necessitated to meet the provisions of Federal Flood Insurance Laws or any other applicable laws or regulations. It is the Owner's responsibility to notify Builder of unusual soft conditions and to provide test borings, if needed. Expense of removal of excess dirt or vegetation, to provide proper grade or any expenses caused by rock or other adverse subsoil conditions will be borne by the Owners.

13. Pricing in this Agreement is based upon present construction costs. Owner and Builder recognize that construction costs are very fluid and subject to change. In the event that Builder shall not be in the position to commence construction within thirty (30) days from date of contract as a result of a delay in obtaining a building permit or necessary governmental agency approvals, or Owner's delay in providing all signed contracts for Builder, or unusual delay in Owner's obtaining mortgage financing, the construction price shall be subject to change. Any adjustment in price will be documented by Builder to Owner with evidence of the need for adjustment. If said adjustment results in an increase of more than 10% of the contract total, Owner has the right to cancel the contract and receive the return of his deposit, less any expenses incurred on the Owner's behalf, without further liability. Notice of this election must be given to Builder within ten (10) days of the receipt of adjustment notice by Owner.

14. Owner may schedule a Color Selection with the Builder's interior consultant upon Builder's receipt of the Reservation Deposit from the Owner. If the contract to build is cancelled, the Owner agrees to pay the Builder an administration fee of $100 per hour for time spent with the Builder's interior consultant, draftsman, artist, general contractor, etc... This administration fee will be deducted from Owner's Reservation Deposit.

15. Estimated Homesite Improvement Costs are Builder's best estimates at the time of contract signing. Actual site improvements may cost more. Prices to Owner will be submitted on a Work Order and payment is due to Builder upon Owner's receipt of such Work Order.

16. This Agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of Owner and Builder.

17. Owners will insure Separate Contractual Items, if included in mortgage, are special draw items and not included in normal contractor draw schedule.

18. If the Owner is to secure a mortgage loan, this Construction Agreement is contingent upon the Owner obtaining a mortgage commitment with a payment draw schedule mutually agreeable to the lending institution and the Builder. In the event such commitment cannot be concluded by Owner, Builder shall have sufficient time to exercise its best efforts in obtaining said mortgage loan on behalf of Owner. If the efforts of the Owner and the Builder are unsuccessful this Construction Agreement shall, at the option of the Owner, become null and void, and all deposits shall be refunded to the Owner by the Builder, less out-of-pocket expenses incurred by the Builder. Any fees the Owner's mortgage company charges to wire funds, have inspections made, etc., will be at the Owner's expense. If Owner sets up a cash escrow account, all fees associated with the cash escrow account are to be paid by the Owner. The Owner and Builder must mutually agree in writing to a draw schedule for payments to be made to the Builder.

_____   2/3/05
Owner Initials             Date

_____   2/4/05
Owner Initials             Date

CDC045163