1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF LOUISIANA

3

4

5   IN RE:  CHINESE MANUFACTURED      *    Docket 09-MD-2047
            DRYWALL PRODUCTS          *
6           LIABILITY LITIGATION      *    September 19, 2011
                                      *
7   This Document Relates to All Cases *   9:00 a.m.
    * * * * * * * * * * * * * * * * * *

8

9

10              ORAL ARGUMENT BEFORE THE
                HONORABLE ELDON E. FALLON
11            UNITED STATES DISTRICT JUDGE

12

13  APPEARANCES:

14
    For the Plaintiffs:          Herman Herman Katz & Cotlar
15                               BY:  LEONARD A. DAVIS, ESQ.
                                 820 O'Keefe Avenue
16                               New Orleans, Louisiana 70113

17  For JPMorgan Chase           McGlinchey Stafford, PLLC
      & Co.:                     BY:  MICHAEL D. FERACHI, ESQ.
18                               One American Place, 14th Floor
                                 Baton Rouge, Louisiana 70825
19
    For T. Rowe Price Group,     Gallagher Evelius & Jones, LLP
20    Inc.:                      BY:  WARD B. COE III, ESQ.
                                 218 N. Charles Street, Suite 400
21                               Baltimore, Maryland 21201

22  Also Participating:          Hilarie Bass, Esq.
                                 Kenneth F. Hardt, Esq.
23                               Arnold Levin, Esq.
                                 Michael P. McCahill, Esq.
24                               Nicholas Panayotopoulos, Esq.

25

1    Official Court Reporter:        Toni Doyle Tusa, CCR, FCRR
                                     500 Poydras Street, Room B-406
2                                    New Orleans, Louisiana 70130
                                     (504) 589-7778
3

4

5

6

7

8

9    Proceedings recorded by mechanical stenography using
     computer-aided transcription software.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              **PROCEEDINGS**

2                          **(September 19, 2011)**

3          **THE DEPUTY CLERK:**  All rise.

4          **THE COURT:**  Be seated, please.  Good afternoon,

5     ladies and gentlemen.  We have a number of people on the phone,

6     so please use the microphones when you do speak.

7                    Let's call the case, please.

8          **THE DEPUTY CLERK:**  We have MDL 2047, Chinese

9     Manufactured Drywall Products Liability Litigation.

10         **THE COURT:**  Counsel present make their appearance for

11    the record, please.

12         **MR. FERACHI:**  Your Honor, Michael Ferachi on behalf

13    of JPMorgan Chase & Co.

14         **MR. DAVIS:**  Good morning, Your Honor.  Leonard Davis

15    on behalf of the plaintiffs' steering committee.

16         **MR. LEVIN:**  Arnold Levin, sir.

17         **THE COURT:**  Anyone else on the phone for the

18    defendants?

19         **MS. BASS:**  Hilarie Bass, Your Honor, on behalf of the

20    home builders association.

21         **MR. COE:**  Your Honor, Ward Coe for T. Rowe Price

22    Group.

23         **MR. HARDT:**  Your Honor, on the phone, this is Ken

24    Hardt in the *Germano* action.

25         **MR. MCCAHILL:**  Mike McCahill for defendant IBSA.

1    McCahill is M-C-C-A-H-I-L-L.

2            **THE COURT:**  Counsel, before we are over, may want to

3    meet with the court reporter and make sure that we have the

4    names of the people that they represent.

5                    By way of background, we are dealing with

6    discovery motions here that basically involve to a great extent

7    the issues of jurisdiction.  The plaintiffs' committee has

8    filed a 30(b)(6) and also a subpoena duces tecum of officials

9    of JPMorgan and T. Rowe Price calling upon them to appear and

10   produce documents that were generated by subsidiaries or

11   companies that the plaintiffs' committee feels are subsidiaries

12   under the control of T. Rowe Price and JPMorgan.

13                   The defendants resist, indicating that they had

14   no control over these subsidiaries, they're independent

15   corporations, and they don't have the requisite control and/or

16   ownership and should not be required to produce this material.

17   The plaintiffs filed a motion to compel the material, and

18   JPMorgan and T. Rowe Price have filed a motion to quash the

19   subpoenas.

20                   There are two groups of complaints.  One is

21   procedural and the other is substantive.  As I understand, the

22   procedural arguments are recognized by the plaintiffs largely

23   and they feel that those procedural matters can be resolved,

24   but the substantive or significant issues need to be discussed

25   with the Court.  Let me hear from the moving parties.

1        **MR. DAVIS:**  Good afternoon, Your Honor.  This is

2    Leonard Davis.  Your Honor, I might just for our record clear

3    up just a few items.  Specifically with respect to what you

4    call the procedural issues, those being the alleged failure to

5    deposit a witness fee or failing to issue a subpoena in the

6    proper venue, those types of issues, I have spoken with counsel

7    for JPMorgan Chase.  In fact, we have met in person once or

8    twice, but we have spoken.  I've also spoken by phone with

9    counsel for T. Rowe Price, who's on the phone.

10        We have discussed those, as they have been

11    called, procedural issues, and Your Honor is right on target

12    and correct in that the plaintiffs' steering committee is happy

13    to clear up any of those issues with respect to procedural

14    deficiencies if, in fact, Your Honor, believes that going

15    forward on what really is the substantive issue here as we have

16    narrowed it down, that is, the care/custody/control issue goes

17    forward.  So that issue I believe is not an issue for today.

18        **MR. FERACHI:**  I'll be happy to address that more,

19    Your Honor, in my portion.

20        **THE COURT:**  Sure.  By and large, I agree with what

21    you say for the procedure.  There's no question that there's a

22    100-mile rule, and there's no question that you need to deposit

23    certain money and the Court should issue it.  The rules are

24    what they are, and I'm not going to alter them.

25        **MR. DAVIS:**  Your Honor, there are a couple motions

1  and they are really intertwined into one argument.  Just so our

2  record is clear, there was a motion to compel that was filed as

3  to JPMorgan Chase & Co.  There was also a motion to compel as

4  to T. Rowe Price.  Both of those entities also filed motions to

5  quash subpoenas, so they're all intertwined together into one

6  argument.

7              **THE COURT:**  Right.

8              **MR. DAVIS:**  In an attempt to really hone in on the

9  issue and not waste time, quite frankly, Your Honor, the

10 plaintiffs' steering committee filed various memoranda that

11 apply to both of those motions.  Specifically, Your Honor

12 ordered that briefing be filed on September 6.  Those briefs

13 that were filed in connection with the T. Rowe Price matter and

14 the JPMorgan Chase matter are where I will really hone in on

15 because it does address the issue that Your Honor asked

16 about: possession, custody, control, those types of issues.

17              I don't believe that there's any dispute that a

18 subpoena was issued to JPMorgan Chase back in May,

19 approximately May 25, and to T. Rowe Price on July 22.  Those

20 subpoenas -- and I will really sum it up -- seek to obtain

21 documents as well as the deposition of the individual entities.

22 They seek to obtain documents of drywall problems,

23 communications with Taishan, communications with BNBM,

24 communications with CNBM, communications with foreign

25 government regarding problem drywall, ownership interest in

1   Chinese manufacturers, and loans to Chinese manufacturers.

2             These items really aren't foreign in this

3   litigation and, in fact, Your Honor I know is very familiar

4   with that as a result of the briefing and the recent order and

5   reasons that were issued with respect to Taishan, which is

6   Document 10269.  In fact, some of those items are very familiar

7   to the parties.

8             The question that Your Honor asked to be briefed

9   was whether Rule 45 ties into Rule 33.  Our briefing and I

10  think the briefing of all parties really sets that out.  I

11  don't think it's disputed that a Rule 45 subpoena to a third

12  party is governed by the regular rules of discovery.  I don't

13  think anybody really disputes that.  The real issue, as I

14  begin, is are the documents in T. Rowe Price's or JPMorgan

15  Chase's possession, custody, or control.

16            JPMorgan and its subsidiaries we believe should

17  have those documents.  As we have attached and as is very

18  apparent, in the 2010 report of China National Building

19  Company, Ltd., we know that JPMorgan Chase & Co. is identified

20  as having H shares, and I'm looking at page 51 of that report.

21  JPMorgan Chase is identified as having what appears to be at

22  least 17 percent of the total shares of capital in CNBM, and

23  T. Rowe Price is at least 3.83 percent.  That's similar to the

24  documents that are also referenced in the 2009 interim report

25  where JPMorgan Chase is identified as having roughly 17,

1    18 percent ownership interest.

2                    That's really the basis for the issuance of the

3    subpoena because, as we understand it, H shares of stock, which

4    are stock issued in Hong Kong or China for investors, relates

5    to ownership.  Now, we understand that JP -- and I'll use

6    JPMorgan Chase as the example.  JPMorgan Chase believes or

7    says, "It's really not me.  I'm the holding company.  It's a

8    subsidiary."

9                    Well, Your Honor, there's no way for us to get

10   to a subsidiary and not to do that in an efficient way, and so

11   what we did was issue the subpoenas to the parent company.  Our

12   position is that the parent is the parent is the parent and it

13   controls the children and the grandchildren.  Our briefing

14   really sets this out.

15                   For instance, we know JPMorgan is a financial

16   holding company.  It's a national bank.  It's in 23 states in

17   the United States with branches.  It issues credit cards

18   through a national bank.  It operates overseas.  It's a big

19   company.  They issue a shareholder report.  When they report to

20   their shareholders, they talk about everything, including the

21   children and the grandchildren.  It's a big company.

22                   Our position is that service on JPMorgan here in

23   the United States ought to be sufficient because it is in

24   control of all of its children and grandchildren.  Otherwise,

25   as a practical matter, we would be spending hours and hours and

1    hours -- and dollars and dollars and dollars -- of the Court's

2    time, our time, and everyone else's time to go issue subpoenas

3    which maybe we couldn't even serve or get responses to.

4                   The idea of the MDL is to promote efficiency,

5    and we know that this Court has asked counsel to be efficient

6    and promote efficiency.  So service upon the parent who has

7    control according to its own 10K and according to its own

8    stockholders report or annual report -- and it gives that

9    information to all its stockholders that it does control and it

10   issues consolidated financial statements and the like -- ought

11   to be sufficient.

12                  Now, we have not had an opportunity to go depose

13   JPMorgan Chase.  We have met and conferred about that issue.  I

14   am happy to go take those depositions.  But as I've said to

15   Counsel, as a practical matter, the real issue ought to be are

16   there documents, do they exist, and then let's go address that

17   issue.  Let's not waste time is the practical approach that we

18   have looked at.

19                  We are told or are under the belief that

20   documents exist in some entity.  I don't know what entity.  We

21   have not gotten that information.  So I throw that issue out so

22   that the Court is well aware of that.  I don't think I need to

23   go into the briefing and the *Bank of America* case that I cited.

24   I know the Court is very familiar with the briefing and what

25   the law is.  I'm happy to do that if the Court wants me to with

1    respect to JPMorgan Chase.

2            **THE COURT:**  No.

3            **MR. DAVIS:**  With respect to T. Rowe Price, they admit

4    in their annual report that it operates worldwide, and it

5    admits that it has a Hong Kong branch.  It's a very similar

6    argument, Your Honor.  It's a financial holding company.  I can

7    go into more if the Court wants me to, but I really think the

8    issue is very clear to all parties.

9            **THE COURT:**  Let me hear from the defendant.  You

10   speak for --

11           **MR. FERACHI:**  JPMorgan Chase & Co., Your Honor.  My

12   name is Michael Ferachi.

13           I do want to address briefly the procedural

14   defect, Your Honor.  On page 2 of the PSC's brief, the PSC

15   asserts that JPMorgan Chase is trying to hide behind the

16   procedural defect and not get to the heart of the matter, which

17   is control.  Your Honor, if that were the case, we wouldn't be

18   here before you today.  We would have really just said when we

19   were before you two weeks ago, "Please quash the subpoena

20   because they didn't follow the rules."  But because we agree

21   with the PSC about judicial efficiency, that's why the control

22   issue is here before you.

23           There are really just kind of three points that

24   I want to hit.  One is that JPMorgan Chase & Co., who they

25   refer to as Chase & Co., is a financial holding company that

1    does not have control of the documents.  Two, just because it

2    has subsidiaries that it has 100 percent control over because

3    it owns them doesn't mean it controls their documents.  Three,

4    Your Honor, there's a practical solution that will allow this

5    Court and the PSC to issue those subpoenas without ignoring the

6    corporate formalities that Chase & Co. has established.

7              Before I get into those three points, I want to

8    talk a little about the factual background.  As I mentioned,

9    Chase & Co. is a financial holding company.  It has thousands

10   of subsidiaries.  Some of those subsidiaries at one time or

11   another have held an interest in China National Building

12   Material (CNBM) and have provided that information to the PSC.

13             What the PSC said a moment ago talked in terms

14   of grandchildren and children.  Your Honor, CNBM is not the

15   grandchild of Chase & Co.  Chase & Co. has thousands of

16   children, but those children who have held an interest in CNBM

17   did so just like they might hold an interest in Walmart stock

18   or in Sears or ExxonMobil.  It is an investment.  They don't

19   own the company.  They have invested in it.

20             Counsel also mentioned that the PSC was told

21   that somebody has documents.  That wasn't us, Your Honor.  We

22   haven't talked to the PSC about documents because, as counsel

23   for Chase & Co., I have no idea if the subsidiaries do have

24   documents that would be relevant to the inquiry.  I'm here only

25   on behalf of Chase & Co., the ultimate parent, on the control

1    issue.

2                      Now, it's important that we follow the corporate

3    formalities, and the PSC wants us to ignore that.  The PSC

4    would like to be able to serve any parent of any company and

5    require that parent to produce the documents of the

6    subsidiaries.  They are really only focused on one issue and

7    that is corporate ownership, so we will discuss that,

8    Your Honor.

9                      One thing the PSC did not say was anything about

10   the burden of proof.  The PSC has the burden of proof to

11   establish that Chase & Co. has control over the requested

12   documents.  It hasn't established that and it can't meet that

13   for a very important reason.

14                     Judge, we recognize the definition of *control* is

15   very broad, but there are limitations.  In fact, the courts

16   have really looked at the nature of the relationship between

17   the parent and the subsidiary to determine if or not there's

18   control.  The most recent case that comes from the

19   Fifth Circuit jurisdiction is the *Shell Global Solutions* case

20   which I cited for you in our brief.  It was decided just last

21   month by the Southern District of Texas.

22                     It really looked at a number of factors to

23   determine whether or not there was control.  The first one is

24   commonality of ownership.  The second one is exchange or

25   intermingling of directors, officers, employees of the parent

1    and subsidiary.  Third is the exchange of documents between the

2    corporation and the parent in the ordinary course of business.

3    Fourth, is there any benefit or involvement of the corporation

4    in the transaction which is the subject of the litigation and

5    dispute and any involvement of the parent in the litigation.

6              At least two other courts, Your Honor, have

7    applied similar factors.  That was the *In Re: Ingeteam* case

8    which was decided just last month as well as the *In Re: Huawei*

9    *Technologies* case.

10             What's important, Your Honor, I believe to

11   recognize is that the commonality of ownership is only one of

12   many factors.  The PSC has only referred to commonality of

13   ownership as the sole factor.  I think their position can be

14   summed up by a simple argument:  If the parent owns 100 percent

15   of the subsidiary, then it controls the subsidiary and must

16   produce those documents.

17             Well, if that were the case, Your Honor, we

18   really wouldn't be here before you today.  It would be open and

19   shut.  There wouldn't be any jurisprudence around the country

20   on this issue because in any situation like we have here where

21   Chase & Co. owns 100 percent of some of these subsidiaries, we

22   wouldn't be able to argue that they're still not in control.

23   So it's clear that commonality of ownership is only one of

24   those tests.

25             The PSC has not tried to deal with any of the

 1    other issues that we raised in our affidavits about the other

 2    factors.  For instance, Your Honor, we submitted an affidavit

 3    of Christine Bannerman which establishes that there is no

 4    sharing of employees between Chase & Co. and its subsidiaries.

 5    The affidavit also establishes that there is no sharing of

 6    documents in the ordinary course of business between Chase &

 7    Co. and its subsidiaries.

 8                 Well, Your Honor, if there is no sharing of

 9    documents and employees, it's hard to imagine how there is an

10    interconnectedness between the parent and the subsidiary that

11    meets the tests that have been established by the courts.  In

12    fact, both *Shell Global Solutions* and *Huawei Technologies*

13    really rely on the sharing of employees and sharing of

14    documents in the order and course.

15                 In the *BMW* case which we cited to you as well as

16    the *Pitney Bowes* case, there they were looking for a high level

17    of control or integration.  There's not that high level of

18    control or integration and the company doesn't share employees

19    or share documents in the ordinary course.

20                 Now, counsel has talked about financial

21    reporting.  That's separate from this test, Your Honor.  The

22    fact that subsidiaries provide financial reporting to the

23    holding company that then puts it in its 10K doesn't mean that

24    there's a sharing of documents and surely not the sharing of

25    documents in the ordinary course as it relates to Chinese

1    drywall.

2             It's also important to recognize, we believe

3    Your Honor, that Chase & Co. is not a party to this litigation.

4    A moment ago, counsel referred to some orders everybody was

5    familiar with as it relates to Taishan.  Well, your Honor, it

6    may be familiar to the parties in the litigation, but it's not

7    familiar to us because we are not a party to this litigation.

8    We were just invited, and we don't want to be here.  We also

9    are not going to gain anything from being here, Your Honor,

10   which is another one of those factors.

11            Counsel has also relied in his brief about the

12   Restatement (Third) of Foreign Relation Law.  Your Honor,

13   that's not applicable.  Chase has not asserted that it cannot

14   produce these documents because it would violate some court's

15   sovereignty or their laws.  That's not at issue here.

16            The third point I wanted to make to Your Honor

17   was there is a way for you to be able to provide this

18   information or at least the PSC to obtain this information.  In

19   August of 2011, PSC counsel received a letter from in-house

20   counsel at JPMorgan Chase & Co. listing the subsidiaries of

21   JPMorgan Chase & Co. that at one time held some interest in

22   CNBM.  In other words, Your Honor, Chase & Co. provided a road

23   map to the PSC about who owned what.

24            Now, counsel has said and provided to us for the

25   first time a report of CNBM in which it says Chase & Co. is the

1    shareholder.  Your Honor, the rules of the Hong Kong exchange,
2    which is where that document is from, require reporting of all
3    of the parents of anybody who owns stock in companies traded on
4    the Hong Kong business exchange.  So although that document
5    lists Chase & Co. as the shareholder, it's actually the
6    companies that we have provided to the PSC that have that
7    ownership interest in CNBM.  Of those 27 companies, 23 of those
8    companies are based in the United States or in the
9    United Kingdom.
10              Your Honor, I submit that the Court should
11   require the PSC to serve the subpoenas on those companies.
12   Those companies can be subpoenaed.  We are not talking about
13   companies that are in Taiwan or China that want to escape the
14   jurisdiction of this Court.  There are 23 of those 27 companies
15   that the PSC can serve easily, and Chase & Co. is happy to
16   provide assistance to the PSC in that regard.
17              What Chase & Co. wants is for the parties to:
18   One, follow the requirements of the laws as relates to Rule 45
19   and serve subpoenas properly; and, two, take into account the
20   corporate formalities that Chase & Co. has put into place with
21   the subpoenas and serve those companies that may have the
22   documents, not serve a parent that's then required to survey
23   thousands of companies to look for documents when we have
24   provided that information to the PSC.  So that's why,
25   Your Honor, we ask for the motion for the subpoena to be

1    quashed and for the motion to compel be denied.

2              **THE COURT:**  Okay.  Any response to that?

3              **MR. DAVIS:**  If I can clean up any confusion because I

4    don't want to be misleading in any way.  I don't know if

5    JPMorgan Chase has documents or not, but it's only logical that

6    if they're a major owner, they ought to be getting information.

7    They clearly, like any stockholder or any lender, would do due

8    diligence before it made an investment.  That's only logical.

9    But we don't know -- I concede that, Your Honor -- what

10   documents exist.

11             With respect to the factors for control, as I

12   said, Your Honor, if discovery is needed, we will do that.  But

13   as a practical matter, we ought to know whether or not we are

14   fighting over documents or not or if we can agree on documents

15   before we even get to that.

16             The PSC is looking to address the entities that

17   hold themselves out as the owner as they do in their annual

18   report and their 10K filings.  Now, I understand counsel's

19   belief that *ownership* in some other country may mean different

20   than *ownership* as we appreciate it, but an owner is an owner is

21   an owner.  The owner is who they report to, their shareholders.

22   So if, as I say, the children or the grandchildren have

23   documents, we ought to be able to look to the parent and say,

24   "Tell us what you have.  Let us know.  Get us the documents."

25   If we have to go issue subpoenas to all of these other

 1  20-some-odd or however many entities, we will be tied up

 2  forever.  That's the practical approach.

 3          Now, I understand that JPMorgan Chase believes

 4  that they haven't been part of this process in this litigation

 5  and that they're a third party, but all they need to do is look

 6  at the briefing that was filed in the prior matter that I spoke

 7  to and the order that came out of this Court.  JPMorgan Chase

 8  is prominently displayed in exhibits, and I invite JPMorgan

 9  Chase and T. Rowe Price to look at those documents.  They may

10  not be a part right now in this litigation, but they certainly

11  have been mentioned in filings with the Court.  I don't know

12  where this litigation will go.

13          Your Honor, I'm not going to go into the law,

14  but it's cited in great detail in our brief.  Again, I refer

15  back to the *BAC* case, which says that the parent corporation

16  has to respond for its children and grandchildren.

17          **THE COURT:**  Does T. Rowe Price have anything?

18          **MR. COE:**  Yes, Your Honor.  This is Ward Coe for

19  T. Rowe Price.  Thank you for allowing me to participate by

20  phone.

21          I'm not going to repeat what Mr. Ferachi has

22  said, which is equally applicable to T. Rowe Price.  I just

23  wanted to make a couple of factual statements that I think are

24  a distinction.

25          They are also a holding company.  T. Rowe Price

1   Group has no documents responsive to the subpoena.  It has no
2   employee who is knowledgeable of the items in the 30(b)(6)
3   notice except with respect to the overall structure of the
4   corporation and its insurance.
5                 T. Rowe Price Group has a subsidiary named
6   T. Rowe Price International which is an investment adviser, and
7   that subsidiary has a subsidiary named T. Rowe Price Hong Kong
8   which is also an investment adviser.  It is located in Hong
9   Kong and it has an employee, Mr. Yi, Y-I, who we have
10  identified in our papers as someone who would be knowledgeable
11  about some of the items in the 30(b)(6) notice.  We have also
12  identified T. Rowe Price Hong Kong as the entity that would
13  have documents responsive to some of the subpoena requests.
14                T. Rowe Price Group itself, we have represented,
15  has made no investments in or loans to any of the entities
16  involved in this litigation.  Some T. Rowe Price funds, each of
17  which are a separate corporate entry, have made investments on
18  behalf of clients in CNBM.  Our preliminary research indicates
19  that it's considerably less than what the plaintiffs' steering
20  committee has claimed, that it's around 1.6 percent of CNBM.
21  The investor allegations which are in paragraphs 108 to 118 of
22  the amended complaint simply could not be made with respect to
23  T. Rowe Price Group or any of its entities.
24                The fact of the matter is what is being sought
25  here are documents that are in the hands of a corporate sub-sub

1    on the other side of the world and knowledge which is in the

2    knowledge of an employee there, and it's simply improper to

3    require a holding company in Baltimore to collect all that

4    information when it isn't a party to the lawsuit and when the

5    factors that Mr. Ferachi pointed out are equally applicable to

6    T. Rowe Price with respect to the analysis of whether the

7    T. Rowe Price Group holding company controls those documents.

8                   Your Honor, for that reason we have asked for

9    the subpoena to be quashed.  T. Rowe Price Group is not

10   connected to this litigation, it's apparently burdensome to

11   require it to do this work on behalf of the plaintiffs'

12   steering committee, and for that reason we would request that

13   the motion to quash be granted and the motion to compel be

14   denied.

15                  Additionally, if there is any portion of these

16   documents which T. Rowe Price is required to produce, we

17   believe that under Rule 45(c)(2)(B), the plaintiffs' steering

18   committee would be required to compensate us for our costs in

19   doing so.  We understand that, as a practical matter, they want

20   to control their costs, but there's absolutely no reason for a

21   nonparty to have to make it up for them.  Thank you,

22   Your Honor.

23                  **THE COURT:**  Thank you very much.

24                  Go ahead.  You wanted to say something?

25                  **MR. FERACHI:**  Your Honor, just briefly, if I may.

1       **THE COURT:**  Yes.

2       **MR. FERACHI:**  Counsel referred to the ATM litigation

3   case.  What I think is important to recognize, Your Honor, is

4   that Bank of America's holding company was a party to that

5   litigation.  JPMorgan Chase & Co. is not a party to this

6   litigation.  The burden as it relates to a nonparty is higher

7   than a party.  While counsel said that JPMorgan Chase might be

8   all over a number of documents, we are not aware of that,

9   Your Honor.  We haven't been involved in this litigation.

10  Thank you, Your Honor.

11      **THE COURT:**  Let me make just a couple of comments.

12  First, counsel for plaintiff mentions that parents always

13  control their kids and grandparents control their kids.  I'm

14  not quite sure that's accurate in all instances.  I think it

15  depends on the relationship and a couple of other things.

16          Let me make some comments.  I'll write something

17  on it but just by sketching it out, you will have my views.

18  Numerous courts have unquestionably held a parent corporation

19  that has sufficient degree of ownership and control over a

20  subsidiary is, of course, deemed to have control over the

21  documents in the possession of that subsidiary.  The issue

22  really is what is the "sufficient degree" of control and

23  ownership.

24          The burden is on the person who is requesting

25  the information to establish that matter.  There's also no

1    question that for a wholly-owned subsidiary, the parent,
2    generally speaking, has been deemed to have control.  They
3    wholly own it.  They have control.
4              There are also some cases where even when it's
5    approaching the 50 percent level but not over the 50 percent
6    level, the courts have held that there's not sufficient
7    control.  43.8 percent in the *Hubbard* case comes to mind, where
8    they said that they did not have sufficient control to satisfy
9    the sufficient degree of control requirement and they refused
10   to do it.
11             In the present case, I really think we are
12   dealing with two stages here.  The first stage, the PSC, as the
13   requesting party, must show sufficient ownership, sufficient
14   control over the subsidiaries.  Unless you can agree on it
15   among yourselves or between yourselves, discovery may be
16   required to show that.
17             Things like corporate structure, interlocutory
18   boards, ownership interest, history and practice of sharing
19   documents, board membership, office space, advertisement,
20   public relations, lobbyists, things of that sort, if they are
21   one and the same or the parent supplies all of that
22   information, that could be significant.  History of sharing
23   employees, that's always looked at.
24             Business relationship involving the product in
25   question.  If there's a subsidiary who sells eggs, this might

1    not be sufficient to have to go into the discovery of that

2    particular issue.

3              Commonality of ownership.  When I looked at the

4    last issues before me in discovery, I noticed that they had

5    interlocutory boards.  Some people were on both boards.  They

6    had such a close relationship that I felt that it was one and

7    the same; or if not one and the same, technically speaking, the

8    sufficient control was there.

9              If the PSC does some 30(b)(6) discovery of

10   people who know the answers to those questions and if they

11   establish that sufficient control of all or some of the

12   subsidiaries, then I think the second stage has to be looked

13   at.  The existence of documents, the cost of producing the

14   documents, the relevance of the documents, the burdensomeness

15   of producing the documents and who pays for it, I think those

16   are issues, but they are issues that come to the second stage

17   and not the first stage.

18             I was hoping that you all could agree on some of

19   the first stage to cut out some of the cost involved, but it's

20   apparent that you don't agree to it.  I don't see that the PSC

21   has established enough to show that there is sufficient

22   control.  I'll flesh it out a little bit more so that you all

23   have my thinking in a little better structure, but for those

24   reasons I'm going to deny the motions of the PSC and grant the

25   motions of the defendant at this point.

1          I reserve the right for the PSC to take some

2  discovery to deal with the question of control.

3  Interrogatories just doesn't cut it, frankly.  You're not going

4  to be able to establish much from that.  That's one lawyer

5  talking to another lawyer and it just doesn't work.  30(b)(6)

6  is probably where you need to go, but you ought to take some

7  30(b)(6) of the people who know about the corporate structure,

8  interlocutory boards, ownership interest, history and practice

9  of sharing documents, employees, and other things.  Then if you

10  have established that point and there's enough sufficient

11  control of the subsidiaries, I think the law is going to be

12  clear and that those documents need to be produced.

13          Thank you very much.  Court will stand in

14  recess.  Thank you on the phone.

15          **THE DEPUTY CLERK:**  All rise.

16          (WHEREUPON the Court was in recess.)

17                    * * *

18                 **CERTIFICATE**

19          I, Toni Doyle Tusa, CCR, FCRR, Official Court
   Reporter for the United States District Court, Eastern District
20  of Louisiana, do hereby certify that the foregoing is a true
   and correct transcript, to the best of my ability and
21  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.
22

23

24          s/ Toni Doyle Tusa
   Toni Doyle Tusa, CCR, FCRR
   Official Court Reporter

25