UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | *  MDL No. 2047<br>*<br>*  SECTION L<br>*<br>*  JUDGE ELDON E. FALLON<br>*<br>*  MAGISTRATE JUDGE<br>*  JOSEPH C. WILKINSON, JR.<br>* |

* * * * * * * * * * * * * * * * * ** * * * * * * * * * ** * * * * * * ** * *

**THIS DOCUMENT RELATES TO:** *All Cases*

## MEMORANDUM IN SUPPORT OF DEFENDANTS TAISHAN GYPSUM CO. LTD. AND TAI'AN TAISHAN PLASTERBOARD CO., LTD.'S MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 9, 2011 ORDER & REASONS CONCERNING PERSONAL JURISDICTION DISCOVERY

Taishan Gypsum Co. Ltd. ("TG") and Tai'an Taishan Plasterboard Co., Ltd. ("TTP") (together, "Defendants"), by their attorneys Hogan Lovells US LLP ("HL") and Stanley, Reuter, Ross, Thornton & Alford, LLC, submit this memorandum in support of their motion to reconsider the Court's September 9, 2011 "Order & Reasons" concerning personal jurisdiction discovery (the "Order").

## INTRODUCTION

In the Order, the Court found, *inter alia*, the following:

> 1.  The Plaintiffs' Steering Committee ("PSC") was entitled to obtain discovery regarding TG's relationship between Beijing New Building Materials ("BNBM") [and other entities upstream and downstream to BNBM] because the PSC had alleged with "reasonable particularly" the possible existence of facts sufficient to impute BNBM's forum contacts, if any, to TG; and
>
> 2.  TG has sufficient "control" over certain documents created and possessed by BNBM and must produce them to the PSC.

The Court found that the following allegations by the PSC provided a basis for both rulings:

> "Jia is both the chairman of TG and sits on the board of directors for BNBM; BNBM and the Taishan entities have a joint venture, there is a commonality of ownership between BNBM [sic]; these entities share corporate officers and directors; BNBM had oversight responsibility for Taishan entities; there was financial relatedness between the entities; and BNBM participated in the Taishan entities' Chinese drywall transactions at issue in the litigation. *See* (K. Doc. 10174.)" Order at 22-23, 25.

The record, however, shows that the PSC did not allege the following with "reasonable particularity":

1. BNBM and the "Taishan entities" have a joint venture;

2. BNBM had oversight responsibility for the Taishan entities; and

3. BNBM participated in the Taishan entities' Chinese drywall transactions at issue in the litigation.

As these allegations have no factual support, the Court should not have considered them. The other findings indicate nothing more than that BNBM was a large shareholder of TG, and this Circuit has repeatedly held that the mere fact of a parent-subsidiary relationship, even with some commonality of officers and directors, is not by itself sufficient to impute the parent's forum contacts to the subsidiary for the purposes of personal jurisdiction. Thus, the PSC did not satisfy the standard for being allowed discovery into TG's relationship with BNBM.

## ARGUMENT

I. **THE PARTY SEEKING DISCOVERY MUST PRESENT FACTUAL ALLEGATIONS THAT SUGGEST WITH REASONABLE PARTICULARITY THE POSSIBLE EXISTENCE OF THE RELEVANT CONTACTS**

In the Order, the Court ruled that if a plaintiff presents factual allegations that suggest with reasonable particularity the existence of the requisite contacts, the plaintiffs are entitled to

jurisdictional discovery, citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2004). (Order at 13).[1] The Court further found that numerous courts have considered the relationship of corporate affiliates in the personal jurisdiction context to determine whether imputation of one corporation's forum contacts is warranted. In the Fifth Circuit, there must "be proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *DP Solutions, Inc. v. Rollins, Inc.*, 34 Fed. App'x 150, *5 (5th Cir. 2002). (Order at 22). The Fifth Circuit has also held, in a reported case not cited by this Court, that the mere normal indicia of a parent-subsidiary relationship are not sufficient to impute the contacts of the parent to the subsidiary.

> We have noted often that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations. Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes. The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship.

*Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983).

As this Court found, it must consider a number of factors to determine if the level of "control" or "importance" between the corporate entities is sufficient to impute contacts from one to the other. (Order at 21-22). As is set forth below, the PSC did not allege with reasonable particularity three of the factors considered by the Court.

### A. There is No Evidence That BNBM Participated In the Transactions at Issue Here

The PSC did not submit any credible evidence that BNBM participated in the "Taishan entities'" drywall transactions at issue here. The only evidence the PSC provided in support of

---

[1] The courts have construed the term "factual allegations" in this context to mean factual allegations supported by credible evidence. *E.g., Blessey Marine Servs., Inc. v. Jeffboat, LLC*, No. 10-1863, 2011 WL 651999 at *6 (E.D. La. Feb. 10, 2011).

this contention is its allegation that "BNBM employees were copied on Taishan communications concerning the sales of drywall at issue here. *See* . . . Exhibit N."[2] This allegation, while facially true, is misleading.

Exhibit N consists of emails concerning a sale by TTP to Wood Nation. David Wei, whose email address is bnbmusa@msn.com, is one of the persons involved in the email correspondence, as is David Hannam, whose email address is woodnation@verizon.net. The PSC took the deposition of Hannam on February 14, 2011, and Hannam unequivocally and unambiguously testified that BNBM did not participate with TTP in this transaction. Relevant portions of Hannam's deposition testimony ("Tr.") are annexed as Exhibit A. Hannam was the owner of Wood Nation. (Tr. at 33:8-9). Hannam testified that he had met Wei while Wei was in the United States working for an entity named BNBM of America, and they became friends. (Tr. at 21:15-22:2; 35:10-12). BNBM of America ceased operating in 2004, and Wei returned to China to work for a BNBM entity, although not the one involved in manufacturing and selling drywall. (Tr. at 34:21-35:4; 36:17-37:1; 39:7-14). In 2006 Wood Nation sought to purchase drywall from BNBM, but BNBM refused to sell drywall to Wood Nation. (Tr. at 42:24-43:6). Hannam met with Wei "as a friend" to inquire if any other Chinese manufacturers had ASTM certification, and Wei told him of TG and TTP. (Tr. at 43:10-13; 44:22-24). Wei then accompanied Hannam to a meeting with TTP (Tr. at 46:13-15) and helped to facilitate the transaction, **but not on behalf of BNBM**. Indeed, Hannam specifically testified that **BNBM was not involved in the transaction**.

> Q: While you began dealing with Taishan for an additional shipment to come through, what percentage of these

---

[2] The PSC also claims that BNBM shipped drywall to the United States. This claim does not support the claim that BNBM and TG participated together in any transaction, however. It only shows that both BNBM and TG sold drywall.

> communications was David handling versus were you doing some of that direct with the Taishan people as well?
>
> A: He would have done the majority.
>
> Q: Was he doing that as a favor to a friend or was it your understanding that BNBM had some interest in the transaction?
>
> **A: Favor to a friend**.
>
> Q: A friend. At the risk of stepping on the toes of a friendship, when you ultimately did find out that BNBM had a financial interest in Taishan gypsum company, was that a surprise to you, an unpleasant surprise to you?
>
> A: Oh, how do I answer that? First, it was unpleasant because I didn't want BNBM to gain a nickel out of anything because of them standing me up on that one order. But then it was pleasant because I knew they knew what they were doing.
>
> **Q: So it was your understating then that they were going to be involved behind the scenes in the transaction?**
>
> **A: No, not at all. No.**
>
> Q: So when you say it was pleasant because they knew what they were doing?
>
> **A: When I say they, BNBM would not have been involved.**

(Tr. at 48:14-49:15). (emphases supplied)

Thus, the testimony elicited by the PSC itself shows that BNBM did not participate in the transaction.[3] There is no testimony to the contrary.

### B.   There is No Evidence that BNBM and TG Are a Joint Venture

The PSC's claim that BNBM and TG are a joint venture is based solely on the testimony of a layman, Jia. While Jia did use the term "joint venture" to describe the relationship between

---

[3] The fact that Wei used a "bnbmusa" email address also shows that he was not acting on behalf of BNBM, as BNBM USA had ceased its operations two years prior.

TG and BNBM, Jia's use of the term does not make BNBM and TG a "joint venture."[4] Joint venture is a legal term; it is a species of partnership. Here, however, the facts show that BNBM is a shareholder of TG, not a partner. Under similar circumstances, the Court in *Gammino v. Cellco P'ship*, No. 04-4303, 2006 WL 1892690 (E.D. Pa. July 6, 2006) refused to credit claims made on a website that two entities were a joint venture, and instead examined the facts to determine the true nature of the relationship. A copy of the *Gammino* decision is attached as Exhibit B. Because the PSC has not alleged with reasonable particularity facts that support the allegation that TG and BNBM meet the legal definition of joint venture, it cannot rely on this assertion to obtain additional discovery.

### C. The PSC Did Not Provide Credible Evidence that BNBM Had "Oversight Responsibility for TG"

There is no evidence to support the PSC's bald claim that "BNBM had oversight responsibility for TG." The only evidence the PSC cites is that BNBM appointed a majority of TG's and TTP's board members,[5] and that CNBM stated in a public filing that by acquiring control over 65% of TG's shares, BNBM had gained control over TG's board of directors.

Obviously, beneficial ownership of a majority stake in a company may entitle the holder to appoint a majority of the board, but this does not establish that BNBM had oversight over Taishan. There is simply no support for that allegation beyond the PSC's *ipse dixit*,[6] particularly

---

[4] The PSC later questioned Jia regarding what he meant by "joint venture" and he explained that it meant "cooperation," i.e., neither controlled the other. (Jia Tr. 203:2-204:10).

[5] The PSC cites to Articles of Association for Shandong Taihe Dongxin Co. and Articles of Association for Taishan Gypsum Co. for this proposition. Those are the same entities. Shandong Taihe changed its name to Taishan Gypsum. There is no evidence that BNBM appointed any directors to TTP's board.

[6] We anticipate that the PSC will argue that an employee of BNBM and of CNBM, Cao Jinglian, is listed as a "Supervisor" of TG, thus buttressing the PSC's argument. Under Chinese law, however, the responsibilities of a "supervisor" are to ensure compliance with legal and accounting regulations; a "supervisor" has nothing to do with the operations of the business. Company Law of the People's Republic of China, Art. 54. *See also* Matthew McKee and Li Hong, *Supervisor's role in a limited liability company*, http://www.lehmanlaw.com/filedadmin/lehmanlaw_com/Publications/Briefing_Paper_Series/Supervisor_role_in_a_limited_liability_company.pdf (attached

6

as Jia testified that BNBM did not control the operations of TG. (Jia Tr. at 163:10-15).

### D. The Remaining Allegations Do Not Entitle The PSC To Discovery of TG's Relationship with BNBM

As the PSC did not carry its burden of alleging with reasonable particularity that (1) BNBM and TG are a joint venture; (2) that BNBM had oversight responsibility for TG; and (3) that BNBM participated with TG in the transaction at issue here, then the only allegations set forth with any particularity by the PSC are that there is a commonality of ownership and that TG and BNBM share some officers and directors. As the *Hargave* court held, in order to find that a parent and subsidiary are alter egos, "The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship." *Hargrave*, 710 F.2d at 1161; *accord Admins. of Tulane Ed. Fund v. Ipsen, S.A.*, No. 10-30211, 2011 WL 3822681 (5th Cir. Aug. 30, 2011); *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010). Thus, under the test employed in this Circuit, the PSC has not sufficiently alleged facts to allow for discovery into the relationship between BNBM and TG, when the purpose of that discovery is to seek to prove that BNBM and TG are alter egos and thus impute BNBM's forum contacts to TG.

## II. THE EVIDENCE DOES NOT SHOW THAT TG HAS CONTROL OVER DOCUMENTS CREATED AND MAINTAINED BY BNBM

The Court found that the applicable legal test for whether TG could obtain discovery from BNBM was whether the information sought from BNBM is in TG's control and custody. The factors the Court considered to determine such custody and control were: (a) commonality of ownership; (b) exchange or intermingling of directors, officers or employees of the two corporations; (c) exchange of documents between the corporations in the ordinary course of

---

as Exhibit C) (A supervisor is "a watchdog provision whose primary function is to detect and prevent directors' and senior managers' violations of law").

business; (d) any benefit or involvement of the non-party corporation in the transaction; and (e) involvement of the non-party corporation in the litigation." (Order at 25)

The Court found these factors satisfied by the six allegations described on page 2, above. As three of those allegations have no factual support, however, the only factors satisfied by plaintiffs are commonality of ownership and, perhaps, intermingled directors and officers. With respect to the latter, it should be noted that Jia is the only TG officer who is a director of BNBM. The BNBM employees who sit on TG's board are not TG employees and thus are outside directors. Without further evidence beyond the mere normal appurtenances of the ownership by one company of another company's shares, the Court should find that TG does not have control over BNBM's documents.

## CONCLUSION

For the foregoing reasons, this Court should re-consider its Order and Reasons and find that discovery into the relationship between TG and BNBM is not warranted and that TG does not have control over documents created and maintained by BNBM.

Respectfully submitted,

| | |
|---|---|
| Joe Cyr | /s/ Thomas P. Owen Jr. |
| Frank T. Spano | Richard C. Stanley (La. Bar No. 8487) |
| Eric Statman | Thomas P. Owen, Jr. (La. Bar No. 28181) |
| HOGAN LOVELLS US LLP | STANLEY, REUTER, ROSS, THORNTON & |
| 875 Third Avenue | ALFORD, LLC |
| New York, New York 10022 | 909 Poydras Street, Suite 2500 |
| E-mail: Joe.cyr@hoganlovells.com | New Orleans, Louisiana 70112 |
| Frank.spano@hoganlovells.com | Telephone: 504-523-1580 |
| Eric.statman@hoganlovells.com | Facsimile: 504-524-0069 |
| Telephone: 212-918-3000 | E-mail: rcs@stanleyreuter.com |
| Facsimile: 212-918-3100 | tpo@stanleyreuter.com |
| *Attorneys for Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co., Ltd.* | *Attorneys for Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co., Ltd.* |

9

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Memorandum in Support of Defendants' Motion for Reconsideration has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 7th day of October, 2011.

                                                    */s/* Thomas P. Owen Jr.