## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | : | **MDL NO. 2047** |
| **IN RE: CHINESE MANUFACTURED DRYWALL** | : |  |
| **PRODUCTS LIABILITY LITIGATION** | : | **SECTION:  L** |
|  | : |  |
|  | : | **JUDGE FALLON** |
|  | : | **MAG. WILKINSON** |

**.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :**
**THIS DOCUMENT RELATES TO ALL CASES**

### ORDER & REASONS

Before the Court are discovery motions filed by the Plaintiffs' Steering Committee ("PSC") and non-parties, JP Morgan Chase & Co. ("JP Morgan") and T. Rowe Price Group, Inc. ("T. Rowe").  These motions are: (1) the PSC's Motion to Compel JP Morgan (R. Doc. 10056); (2) JP Morgan's Motion to Quash (R. Doc. 10142); (3) the PSC's Motion to Compel T. Rowe (R. Doc. 10058); and (4) T. Rowe's Motion to Quash (R. Doc. 10145).  The PSC, JP Morgan, and T. Rowe submitted briefing and presented oral argument in support of their respective motions. The Court has now considered the arguments raised in these motions, along with the applicable law and relevant facts, and is ready to rule consistent with its comments from the bench.

## I.    BACKGROUND

On May 24, 2011, the PSC filed a Notice, seeking to schedule depositions and receive discovery regarding JP Morgan's involvement with Chinese drywall, particularly its financial interest in certain Chinese drywall companies who are named in the MDL litigation.  The deposition was scheduled for July 7, 2011, to take place in New York at the office of Seeger Weiss, LLP.  The documents requested were to be produced in New York at the same location.

On May 26, 2011, at the PSC's request, a subpoena was issued on JP Morgan's agent for

service of process in Delaware from the U.S. District Court for the District of Delaware, requiring the depositions and discovery contained in the previously filed Notice.  In response to the subpoena, JP Morgan submitted several objections, including that the documents sought were outside of its possession, custody or control, and the subpoena failed to include the required compensation.  Thereafter, counsel for the PSC and JP Morgan met-and-conferred, but were unable to work out their issues arising from the subpoena.  On August 1, 2011, JP Morgan wrote the PSC, stating it does not have an ownership interest in any of the Chinese drywall companies in the MDL litigation, but provided a list of several of its subsidiaries which may have such ownership interests.

On July 20, 2011, the PSC filed another Notice, this one seeking to require T. Rowe to appear for depositions and produce written discovery regarding T. Rowe's involvement with Chinese drywall and drywall-related companies.  The depositions were scheduled for August 29, 2011, in Baltimore, Maryland.  On July 22, 2011, the U.S. District Court, District of Maryland, at the request of the PSC, issued a subpoena on T. Rowe, directing T. Rowe's compliance with the discovery requests in the Notice.  On August 8, 2011, T. Rowe filed objections to the PSC's subpoena.  Thereafter, counsel for the PSC and T. Rowe met-and-conferred.  T. Rowe informed the PSC that it would be filing a motion to quash, to which the PSC agreed to continue the depositions until the motion was resolved.

The PSC then filed motions to compel against each JP Morgan and T. Rowe, seeking to compel the depositions and production of documents.  In response, JP Morgan and T. Rowe each filed motions to quash.  The Court set these motions for hearing after the August monthly status conference, during which the parties informed the Court that they would like additional time to

submit briefing on the "control" issue, to which the Court agreed and set a hearing with oral

argument.  This hearing took place on September 19, 2011.

## II.      BRIEFING & ORAL ARGUMENTS

### A.      PSC

As noted above, the PSC filed motions to compel against each JP Morgan and T. Rowe,

seeking to schedule depositions and production of documents concerning these entities'

involvement with Chinese drywall and their relationship to the Chinese drywall manufacturers

who are parties in the MDL litigation.  *See* (R. Docs. 10056, 10058).  The PSC also filed

responses in opposition these entities' motions to quash.  *See* (R. Docs. 10256, 10257).

As a threshold matter, the PSC agrees, if necessary, to reissue the subpoenas in the proper

districts and cure other procedural deficiencies alleged, such as tender of required fees.  It also

offers to schedule the requested depositions at a location, time, and date convenient and

agreeable to all involved.  The PSC claims these issues are easily curable and not the "real" issue

involved in the present motions.

According to the PSC, the critical issue at the center of the present motions is whether JP

Morgan and T. Rowe have sufficient "control" over their subsidiaries who are in actual

possession of the requested discovery to be required to produce this discovery.  The PSC, of

course, believes such control exists.  According to the PSC, JP Morgan and T. Rowe are large

corporations with numerous subsidiaries worldwide.  The PSC also claims these entities have

significant ownership interests in China National Building Materials Co., Ltd. ("CNBM"), a

defendant in the MDL litigation.  The PSC raises concerns with the time and expense involved in

serving subpoenas on all of these entities' subsidiaries.  The PSC also contends that veil piercing

or abuse of the corporate form is irrelevant as to whether these entities can be compelled to produce the documents of their subsidiaries.

### B.    JP Morgan

JP Morgan filed a combined response in opposition to the PSC's motion to compel and a motion to quash subpoena. (R. Doc. 10142). Therein, JP Morgan argues: (1) the subpoena is invalid and unenforceable because it contains a jurisdictional defect which is fatal to its enforceability, that is, it was issued by a court outside the district of where the discovery and depositions are to take place; (2) as a non-party, it cannot be required to produce documents in the custody of an organization located in another judicial district; (3) the PSC failed to tender required witness and mileage fees; and (4) the subpoena is issued upon the wrong entity. Alternatively, JP Morgan seeks denial of the PSC's Motion to Compel on the basis that it already responded to the subpoena by advising it has no documents responsive to the records request, and the PSC voluntarily continued the deposition and has not requested a new date.

JP Morgan also filed a supplemental memorandum on the "control" issue involved in the present motions. (R. Doc. 10258). It argues the applicable law and relevant facts demonstrate the PSC cannot meet its burden to establish it has custody and control over the documents sought by the subpoena. JP Morgan generally agrees with the PSC that in certain situations a parent non-party may be compelled to produce documents in the possession or custody of its subsidiary, but argues this is not the case here. In support of its argument, JP Morgan addresses several factors which it claims courts consider under such a "control" argument. It claims: (1) there is no integration of employees or an exchange of business documents between JP Morgan and its subsidiaries; (2) JP Morgan has no involvement in the underlying MDL litigation and will not

benefit from any involvement; (3) because JP Morgan does not share or have access to the business records of its subsidiaries there is a practical limitation on control; and (4) the PSC has the ability to serve its subsidiaries who may have the requested documents, the identity of which JP Morgan is willing to provide to the PSC.

      **C.**    **T. Rowe**

      T. Rowe also filed a motion and briefing in opposition to the PSC's subpoena requests. *See* (R. Docs. 10145, 10146, 10255). T. Rowe argues it cannot be compelled to produce the requested documents because the documents are not within its control as is required under the Federal Rules. Rather, according to T. Rowe, the requested discovery is in the possession of its third-tier subsidiary, T. Rowe Price Hong Kong Limited, which is located in Hong Kong. It claims the PSC has not overcome its burden to demonstrate sufficient control to require T. Rowe to produce these foreign-located documents, and if it did, to require such production would impose an undue burden. To support its contention, T. Rowe addresses a number of factors considered by courts in determining whether a parent must produce documents of its subsidiary. First, T. Rowe argues there is no integration of employees or exchange of business documents between T. Rowe and its subsidiaries. Second, T. Rowe claims it has no involvement in the underlying MDL litigation and will not benefit from any involvement.

      Further, T. Rowe claims that it does not have any corporate representatives to testify on the majority of the noticed deposition topics, but that the Vice President of its Hong Kong subsidiary could; however, he is located in Hong Kong, significantly further than the 100 mile limit of the Federal Rules.

      T. Rowe also argues the subpoena is facially burdensome because the subpoena requests

it, a non-party, to search through a broad range of documents produced or received over the past

ten years and is not limited to the relevant issues in the pending litigation.  T. Rowe claims the

PSC can obtain the requested discovery from other sources, such as defendants in the litigation

and its Hong Kong subsidiaries.

Alternatively, if the Court requires it to produce the requested documents and provide

representatives for deposition, T. Rowe seek compensation from the PSC for its expenses in

doing so, including travel costs and attorneys' fees.

## III.    LAW & ANALYSIS[1]

Because the issues involving the PSC, JP Morgan, and T. Rowe in the above-summarized

arguments are substantially the same, the Court will address such collectively.

### A.    Rule 45 Subpoena of Non-parties

Federal Rule of Civil Procedure 45 governs the issuance of subpoenas to non-parties for

production of documents and attendance at depositions.  *See* Fed. R. Civ. P. 45.  It also permits

the subpoenaed non-parties to raise objections to the discovery requests, the issuing party to file

a motion to compel compliance with the subpoena, and the subpoenaed non-parties to file

motions to quash the subpoena, *see id.,* the very matters before the Court.  This Court exercises

broad discretion to manage these discovery matters.  *See Freudensprung v. Offshore Technical*

---

[1]Although the subject subpoenas were issued by U.S. district courts sitting in Delaware
and Maryland, this Court possesses jurisdiction to entertain the present motions to compel and
motions to quash by virtue of its status and authority as the MDL transferee court under 28
U.S.C. § 1407, which allows the Court to sit as a district court in every district for purposes of
consolidated pretrial proceedings in the MDL.  *See United States v.Diabetes Treatment Ctrs. of
Am., Inc*., 238 F.Supp.2d 270, 273-75 (D.D.C. 2002); Charles Alan Wright, Arthur R. Miller,
Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure § 2463.1, n.6 (3d ed.
2011).

*Servs., Inc.*, 379 F.3d 327, 347 (5th Cir. 2004).

   **B.     Procedural Defects**

   Two procedural arguments are raised against the validity of the subpoenas issued by the PSC: (1) the subpoenas were issued in the improper venue, and (2) the PSC failed to tender the required fees for attendance and mileage for the requested depositions.

   Rule 45 requires that a subpoena be issued in the district where the discovery is to take place. *See* Fed. R. Civ. P. 45(a)(2)(B)-(C). Here, the subpoena served on JP Morgan was issued by the District of Delaware, directing depositions and production of documents in New York; thus, the subpoena is procedurally deficient under Rule 45. When a subpoena is facially invalid on such grounds, the Court lacks jurisdiction to enforce it. *See Guerriero v. Am. Nat. Prop. & Cas. Co.*, 2010 WL 4943096, at *1 (M.D. La. Nov. 30, 2010)("Since the subpoena is facially invalid under Rule 45(a)(2)(C), this court has no authority to enforce it."); *Ponson v. BellSouth Telecomms., Inc.*, 201 WL 1552802, *3 (E.D. La. Apr. 16, 2010). However, because the subpoena served on T. Rowe was issued by the District of Maryland and schedules the requested depositions and discovery in Baltimore, Maryland, *see* (R. Doc. 10145-3), this subpoena does not suffer from the same fatal defect.

   As to the second procedural argument, Rule 45 provides that if a subpoena requires a person's attendance at deposition, the party who issued the subpoena is required to tender the fees for one day's attendance and the mileage allowed by law. Fed. R. Civ. P. 45(b)(1). "[F]ailure to tender the appropriate sums at the time the subpoena is served invalidates the subpoena, and a non-party deponent is not required to attend the depositions set forth in that subpoena." *Kador v. City of New Roads*, 2010 WL 3418265, at *1 (M.D. La. Aug. 26, 2010).

-7-

Here, the PSC has failed to tender fees to either JP Morgan or T. Rowe for attendance and mileage at the requested depositions, thus the subpoenas are invalid.

The PSC acknowledges the procedural defects in its subpoenas and has agreed to remedy these defects. But at this time, for purposes of the present motions, the subpoenas are procedurally defective and unenforceable. Assuming the procedural issues will be resolved, the Court will now address the substantive objections to the subpoenas, paying particular attention to the "control" issue identified by the parties.

### C.   "Control" of Subpoenaed Discovery

Both JP Morgan and T. Rowe claim they are not in possession or custody of the documents requested by the PSC, but rather such documents, if they exist, may be in the possession, custody and control of their subsidiaries, many of which are located outside the United States. Under Rule 45, a subpoenaed non-party is only required to produce those documents in its "possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). Thus, the question before the Court is whether the subpoenaed entities are required to produce discovery they do not possess, but which may be in the possession and custody of their foreign subsidiaries. Resolution of this issue turns on whether JP Morgan and T. Rowe have sufficient "control" over this discovery.[2] Control in this context is defined as "the right, authority, or

---

[2]The jurisprudence on the "control" issue spans both Rule 45 for subpoena of non-parties and Rule 34 for discovery requests on parties, but the distinction is inconsequential since the scope of discovery under the two rules is coextensive. *See In re Subpoena Duces Tecum to Ingeteam, Inc.,* 2011 WL 3608407, at *1 & n.1 (E.D. Wis. Aug. 16, 2011); *Chevron Corp. v. Salazar,* —F.R.D. —, 2011 WL 3424486, at *8, n.8 (S.D.N.Y. Aug. 3, 2011); *In re Subpoena to Huawei Techs. Co., Ltd.,* 720 F.Supp.2d 969, 977 n. 10 (N.D. Ill. 2010); *Dietrich v. Bauer,* 2000 WL 1171132, at *2, n.2 (S.D.N.Y. Aug. 16, 2000); *S.E.C. v. Credit Bancorp*, *Ltd.*, 194 F.R.D. 469, 471, n.4 (S.D.N.Y. 2000).

-8-

practical ability to obtain the documents," *Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011); *accord S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000); *see also United States v. Int'l Union of Petroleum & Indus. Workers AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989)(citing *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)), and is often referred to as "legal control." *See In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544-45 (N.D. Ca. 2005). It "does not require that a party have legal ownership or actual physical possession," *Shell Global*, 2011 WL 3418396, at *2; *Credit Bancorp*, 194 F.R.D. at 471, but there must be more than mere access. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 821 (5th Cir. 2004). The party seeking the production of discovery bears the burden of proving such control. *Int'l Union,* 870 F.2d at 1452; *accord Shell Global*, 2011 WL 3418396, at *2; *Credit Bancorp,* 194 F.R.D. at 472*; Goh v. Baldor Elec.*, 1999 WL 20943, at *2 (N.D. Tex. Jan. 13, 1999).

Such control may exist between a subpoenaed parent corporation and its subsidiary when the subpoenaed documents are in the physical possession of the subsidiary. *See Shell Global*, 2011 WL 3418396, at *2; *In re ATM Fee Antitrust Litig.*, 233 F.R.D. at 544-45; *Credit Bancorp*, 194 F.R.D. at 472. "The fact that the documents are situated in a foreign country does not bar their discovery." *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919 (D.C.N.Y. 1984)*; Dietrich v. Bauer,* 2000 WL 1171132, at *2 (S.D.N.Y. Aug. 16, 2000)(citing *Marc Rich & Co., A.G. v. United States*, 7 07 F.2d 663, 667 (2d Cir. 1983)). "Numerous courts have concluded that a parent corporation has a sufficient degree of ownership and control over a wholly-owned subsidiary that it must be deemed to have control over documents located with

that subsidiary.[3]" *Dietrich,* 2000 WL 1171132, at *3; *accord Int'l Union,* 870 F.2d at 1452; *In re ATM Fee Antitrust Litig.,* 233 F.R.D. 542, 544 (N.D. Ca. 2005); *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991)(citing *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d. Cir. 1988)).

Here, there is no dispute by either JP Morgan or T. Rowe that the subpoenaed documents may be in the possession and custody of certain of their subsidiaries.  As noted above, the jurisprudence recognizes that a parent company has sufficient control over its *wholly-owned* subsidiaries to require the parent to produce subpoenaed documents in the physical possession of these subsidiaries.  *See id.*  However, any lesser amount of ownership is insufficient for such an automatic finding of control.  *See In re Uranium Trust Litigation*, 480 F.Supp. 1138, 1152 (N.D. Ill. 1979); *accord Gerling Int'l*, 839 F.2d at 140.  The PSC bears the burden of demonstrating that JP Morgan and T. Rowe are parent corporations who wholly-own the subsidiaries in possession of the requested documents, yet it has not demonstrated this level of ownership for either subpoenaed entity.

In a related argument, the PSC claims there exists legal control between JP Morgan and its subsidiaries in possession of the subpoenaed documents because, as a financial holding company with numerous subsidiaries, JP Morgan has control over any other bank holding company, such as the subsidiaries at issue, for purposes of discovery.  In support of its argument, the PSC cites *In re ATM Fee Antitrust Litigation*, 233 F.R.D. 542 (N.D. Cal. 2005).  While *ATM*

[3]The same tenant is not true for the reverse situation-a subpoena request on a subsidiary wholly-owned by a parent who is in possession or control of the requested discovery.  *See In re Subpoena to Huawei Techs. Co., Ltd.*, 720 F.Supp.2d 969, 977-78 (N.D. Ill. 2010); *see also Ehrlich v. BMW N. Am., LLC*, 2011 WL 3489105 (C.D. Cali. May 5, 2011).

*Fee* does conclude that a bank holding company such as JP Morgan has control over any bank or company that is or becomes a bank holding company by virtue of the Bank Holding Company Act ("BHCA"), 12 U.S.C. § 1841(a)(1), the PSC has failed to show that the subsidiaries with possession of the requested discovery constitute BHCA banks or companies.  Additionally, the court in *ATM Fee* recognized the control requirement of being a wholly-owned subsidiary remains even if this subsidiary is also a BHCA company or bank.  *See id.* at 545 ("Therefore, if BANA or any other wholly-owned subsidiary bank of BAC has possession and custody of documents responsive to Plaintiffs' requests, then BAC has legal control of the documents through its control of the subsidiary bank and must produce any which are responsive to Plaintiff's Rule 34 requests.").  Thus, the PSC's reliance on *ATM Fee* does not carry the day on its control argument.

When a *per se* showing of legal control between corporate entities is not possible, such as between a subpoenaed parent and its wholly-owned subsidiary, courts consider the "nature of the relationship" between the subject entities.  *See Shell Global*, 2011 WL 3418396, at *2 (citing *Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 655 (D. Kan. 2004)); *In re Subpoena Duces Tecum to Ingeteam, Inc.*, 2011 WL 3608407, at *1 (E.D. Wis. Aug. 16, 2011); *In re Subpoena to Huawei Techs. Co., Ltd.*, 720 F.Supp.2d 969, 977 (N.D. Ill. 2010); *Goh v. Baldor Elec. Co.*, 1999 WL 20943, at *2 (N.D. Tex. 1999).  In this context, courts consider the following factors in making the legal control determination: "(a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement of the nonparty corporation in the transaction, and (e) involvement of the

-11-

non-party corporation in the litigation." *Id.* The Court will consider these factors as they apply

to each JP Morgan and T. Rowe and their subsidiaries who may be in possession of the

subpoenaed documents.

Turning first to JP Morgan, the PSC bases its control argument on the following[4]: (1) the

Directors' Reports of China National Building Material Company Limited ("CNBM"), a

defendant in the MDL litigation, provide JP Morgan held a 17.26% ownership in total share

capital of CNBM in 2010, 17.4% in 2009, and 14.01% in 2008; (2) as of September 15, 2009, JP

Morgan entities held positions in CNBM; (3) JP Morgan is a large financial holding company

with banking and non-banking subsidiaries in the United States and internationally; and (4) JP

Morgan has been named in exhibits in the MDL litigation.

Even when considered all together, these factors are insufficient to establish "control" for

purposes of discovery production. *See supra* p. 11. There is some degree of ownership through

the subsidiary-parent relationship, but the PSC has not demonstrated the extent of this

ownership. The PSC also has not demonstrated that JP Morgan and its subsidiaries in possession

of the discovery share directors, officers, or employees, nor has it demonstrated the exchange of

documents between the entities. The PSC has noted a partial ownership interest in one of the

defendants in the MDL litigation, but not any "benefit or involvement" of JP Morgan itself in

Chinese drywall. Finally, while the PSC notes JP Morgan appears in certain exhibits filed in the

---

[4]The PSC uses a different test than the one applied by the Court for determining legal
control. It looks to the factors considered under the Restatement (Third) of Foreign Relations
Law of the United States § 442(1)(c) and case law discussing whether a party can be required to
produce documents in contravention of the laws of a foreign country, *see Gucci Am., Inc. v. Li*,
Case No. 10-4974 (S.D.N.Y. Aug. 23, 2011), an issue not yet before the Court. Nonetheless,
some of the factors are similar in both tests.

MDL, it has no further involvement in the litigation.  As shown by the evidence submitted by JP Morgan, (1) it does not share employees with its subsidiaries, (2) it does not share or have access to the business records of its subsidiaries, and (3) it does not have any involvement in the MDL litigation or Chinese drywall in general.  *See* (R. Doc. 10258-1).

With regard to T. Rowe, the PSC alleges under its control argument[5]: (1) T. Rowe is a world-wide financial service holding company[6] with control over its subsidiaries; (2) it maintains investment and research offices in both Baltimore and Hong Kong; (3) the subpoenaed documents may be in the possession of T. Rowe Price Hong Kong, Ltd., a third-tier subsidiary of T. Rowe; (4) in 2010 T. Rowe's total asset management was $420 billion and it employed 5,052 associates; and (5) according to the Annual Reports of CNBM, a defendant in the MDL litigation, T. Rowe held a 3.83% interest in total share capital of CNBM in 2010 and 2.44% in 2008.

Even considered *in toto*, these facts also are insufficient to demonstrate control, especially since the PSC bears the burden to do so.  While there is some level of ownership between T. Rowe and its third-tier, Hong Kong subsidiary, which may be in possession of the subpoenaed documents, the PSC has put forth no evidence of common directors, officers, or employees, nor any exchange of documents between the entities.  Further, the only connection to the litigation is T. Rowe's status as an investor in defendant CNBM during 2010 and 2008; there

_____

[5]*Id.*

[6]The PSC does not raise the same argument with T. Rowe as it does with JP Morgan on the basis of its status as a financial holding company under *ATM Fee*, 233 F.R.D. 542, but assuming it did, the same analysis the Court used with JP Morgan would apply.  *See supra* pp. 10-11.

is no benefit or involvement of T. Rowe itself with Chinese drywall or in the litigation. These conclusions are confirmed by the evidence submitted by T. Rowe which shows there is no integration of employees or exchange of business documents between T. Rowe and its subsidiaries, and T. Rowe has no involvement in the underlying MDL litigation and will not benefit from any involvement. *See* (R. Doc. 10255).

Notably, this Court recently issued an Order & Reasons addressing a similar issue. *See* (R. Doc. 10269). Therein, the Court held that the Taishan defendants in the MDL litigation were required to produce discovery in the possession of certain of their affiliates, many of whom were also parties in the litigation, albeit defaulting defendants. *See id.* In this situation there existed the following control factors: (1) the affiliated companies shared numerous officers and directors, (2) the affiliated companies were involved in a joint venture, (3) there existed commonality of ownership between the affiliated companies, (4) one affiliated company appointed a majority of another's board members, (5) there existed a financial relationship between the affiliates, (6) the affiliates were involved in the litigation as parties, and (7) the affiliates were involved with Chinese drywall as manufacturers and other entities in the supply chain. *See id.* These factors, when considered with those for JP Morgan and T. Rowe, are considerably more supportive of a finding of legal control for purposes of discovery.

### D.     Other Objections to the Subpoenas

The Court views the subpoena process as two-step: first, the PSC must demonstrate sufficient control between the subpoenaed entities, JP Morgan and T. Rowe, and their subsidiaries actually in possession of the subpoenaed discovery, and second, if the PSC is successful, then the Court will review the subpoena requests for facial defects, many of which

are alleged presently by JP Morgan and T. Rowe.  Thus, at this time, the Court will not delve into these entities' arguments that the subpoenas improperly request confidential discovery, unduly burdensome discovery, attendance at a deposition more than 100 miles away, and discovery requiring cost-shifting.  The Court will, however, note many of these objections have merit under the applicable law and recommend the PSC, in the case it is able to overcome its burden at the control stage, consider these objections in reissuing any subpoenas to JP Morgan and T. Rowe.  The Court recognizes the PSC's well-meaning intent to circumvent some of the cost and time involved in conducting discovery and investigation on the control issue, but is bound by the applicable law.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that the PSC's motions to compel are DENIED, and JP Morgan and T. Rowe's motions to quash are GRANTED.  However, the PSC is reserved the right to conduct discovery on the "control" factors, and if appropriate, refile its subpoenas and/or motions to compel.

New Orleans, Louisiana this 19th day of October 2011.

_____
U.S. District Judge

-15-