UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| THIS DOCUMENT RELATES TO: | * * | JUDGE FALLON (L) |
| ALL CASES | * * * | MAGISTRATE WILKINSON (4) |

### AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

DWAIN DANIEL OZARK

who, being duly sworn, upon his oath deposed and stated as follows:

1. He is a Director of Diversified General Contractors, Inc. and, as such, has personal knowledge of the following based on his review of records maintained by Diversified General Contractors, Inc. in the regular course of business.

2. Diversified General Contractors, Inc. is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Indian River County, Florida.

3. Diversified General Contractors, Inc. is a home builder that contracts with third party vendors for the construction of homes and/or sells completed homes.

4. Diversified General Contractors, Inc. has never built a residence in the State of Louisiana nor had any contracts or subcontracts with companies located in Louisiana.

5. Diversified General Contractors, Inc. has never been licensed or registered to do



business in Louisiana or ever had any offices or employees in Louisiana.

6. Diversified General Contractors, Inc. does not have an agent for service of process in Louisiana.

7. Diversified General Contractors, Inc. does not have any bank accounts in Louisiana or own any property in Louisiana.

8. Diversified General Contractors, Inc. does not solicit business in Louisiana nor has it ever transacted business in Louisiana.

9. Diversified General Contractors, Inc. has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. Diversified General Contractors, Inc. does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. Diversified General Contractors, Inc. has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12. Consequently, Diversified General Contractors, Inc. never anticipated it would be haled into court in Louisiana.

_____, PRESIDENT
Dwain Daniel Ozark

SWORN TO AND SUBSCRIBED
BEFORE ME THIS __8__ DAY OF __September__, 2011.

_____
NOTARY PUBLIC



DARA LEWIS
MY COMMISSION # DD960947
EXPIRES February 11, 2014
FloridaNotaryService.com

# AGREEMENT BETWEEN BUILDER AND OWNER
# FOR CONSTRUCTION

THIS AGREEMENT dated this _10_ day of _FEBRUARY_, 200_4_ by and between **Diversified General Contractors, Inc.**, a Florida corporation with offices at _5400 65TH ST., VERO BEACH, FL. 32967_ (Builder), and _ALFRED E & CAROLYN L. KING, SR_ residing at _2292 VICTORY HWY., COVENTRY, RI, 02816_ (Owner).

1. **Builder's Undertaking and Cost of Construction.**
This contract will be superior to all previous contracts, and or agreements.
The Builder will construct a new home, more fully described in the drawings, blueprints, and specifications attached to this Agreement and made a part thereof the Project (Exhibit "___"). The Project shall be constructed on a tract of land which is more specifically described on a survey attached to this Agreement and made a part thereof on which the Project location has been placed, which survey has been signed by Owner. Builder will supply all labor and materials and will complete construction of the Project in accordance with the attached drawings and specifications for the sum of _ONE HUNDRED FIFTY SEVEN THOUSAND, THREE HUNDRED_ _no/100_ dollars ($ _157,300.00_ ). The stipulated price is net to the builder. Said sum shall be paid in accordance with standard construction mortgage release or if no construction mortgage is in place, then in accordance with the draw schedule attached as Exhibit "___". The price shall include temporary heat and electricity installed by Builder, if the same is necessary. When electricity is drawn into the Project through a hookup with the lines of the local power company, Builder may have the use of such electricity, which is to be paid for by Owner

Upon acceptance of this contract the Owner will issue a deposit payment to the Builder in the amount of $ _31,460.00_ , and at loan closing, and prior to any construction commencing the Owner or it's bank will furnish an additional deposit of 10% of the entire construction contract in the sum of $ _15,730.00_ to the Builder..

The closing will be held at _PROFESSIONAL TITLE_, _SEBASTIAN_, _FL_.

2. **Owner's Warranties Regarding Tract.** Owner represents and warrants that:

a. He is the sole owner of the tract of land on which the Project is to be erected.

b. He has not executed and, until this Agreement is fully completed, will not execute any deeds, leases, or other documents that will convey to anyone else any interest in the land (other than the construction and permanent mortgages).

c. Title to the land is good and marketable.



EXHIBIT "B"

d. The premises are free and clear of all liens and encumbrances (with the exception of the construction and permanent mortgages).

e. The tract of land abuts a public street or is accessible by way of a permanent right of way as means of uninterrupted access to and from the subject tract to enable Builder to perform this Agreement.

f. Owner will remove or remedy any situation that is contrary to any of the foregoing representations and warranties.

3. **Time of Completion.** All work will be completed in a workmanlike manner according to practices that are standard in the community in which the Project is to be constructed. The work shall be completed and the Project available for occupancy on or about _November 2004_. Anything to the contrary contained in this Agreement notwithstanding, Builder shall not be liable for any delays caused by strikes, accidents, fires, or other casualties; civil insurrection; or other events outside of the Builder's control including delays caused by change orders and owner's failure to timely pay. Paint Selection color sheets must be completed by Owner within ten (10) days of the execution of this agreement. The Contract will be extended by any delay in Owners not providing the color sheets as required above.

4. **Insurance.** Owner shall at all times maintain fire and extended coverage insurance on the Project in an amount no less than the full insurable value thereof. All such insurance policies shall be payable to Owner, Builder, and mortgagees, as their respective interests should appear. Builder will carry Workers' Compensation and Contractor's Liability Insurance in an amount not less than Five Hundred Thousand dollars ($500,000.00). The parties, upon demand, shall provide each other with certificates evidencing ownership of such insurance. Additionaly, all sub-contractors working on the premisis shall maintain Workmans Compensation and Liability Insurance.

5. **Permits and Liens.** Owner is responsible for obtaining all necessary permits and for the cost thereof. By executing this Agreement, Owner designates Builder or Builder's agent as Owner's agent to obtain all necessary permits.

6. **Work to Be Done by Builder.** Builder, at its own cost and expense, shall provide all manner of materials, labor, scaffolding, implements, molds, models, and cartage of every description for the due performance of all of the work provided in the attached drawings and specifications. All plumbing shall be properly installed and all connections thoroughly tested in accordance with local ordinances. Hot and cold water connections shall be made to all necessary fixtures. All Project supply lines, waste lines, and vent pipes shall conform to local code requirements. Tap-on fees, if any, are to be paid by Owner.

7. **Material and Products.** All material is guaranteed by Builder to be as specified herein. Builder is authorized to substitute a better grade or quality of material or to substitute products of equal grade or quality instead of those specified, provided they are recognized in the construction industry as equal to or better than those specified.

Notwithstanding the foregoing, no material or products that will affect the appearance or utility value of the Project or its components will be substituted by Builder without Owner's written consent.

8. **Work by Owner.** Any work that Owner is to do shall be coordinated with the work that Builder is to do so as not to delay Builder in the performance of its work.

9. **Drawings and Specifications.** The drawings and specifications attached hereto are intended to coordinate with and explain each other. If there is any ambiguity between them, the specifications shall control over the drawings. The specifications and drawings are incorporated in this Agreement as they exist at the time of the execution of this Agreement or as they may be amended in the future by the mutual agreement of Builder and Owner. No changes in the drawings or specifications, other than those required to carry out the meaning and intent of this Agreement, shall be made unless Builder and Owner agree on the nature and extent of such changes and the price to be paid by Owner to Builder for such changes. All changes in the drawings or specifications shall be binding only if they are set forth in writing on Builder's Change Order or Extra Work Voucher and signed by Owner.

Any allowance items as shown on Exhibit "___" attached hereto are good faith estimates. All expenses incurred in excess of allowance items are due prior to work being performed.

10. **Blueprints.** All drawings shall be shown on blueprints prepared by Builder. Owner shall be given a set of preliminary blueprints without charge. Owner shall sign and accept all final blueprints, provided they incorporate all changes requested by Owner following Owner's review of the preliminary blueprints. After acceptance of the final blueprints, if any changes are requested by Owner, Owner shall pay an administration charge of $300 for each change ordered. The administration charge shall be paid in full at the time Owner signs the Builder's Change Order or Extra Work Voucher.

11. **Builder's Guaranties.** Builder guarantees that the Project will be free of defects in workmanship for a period of one year from the date the occupancy certificate to the Project is issued by Builder to Owner as hereinafter provided. All materials will be furnished under standard trade rules or manufacturer's warranty or guaranty, and Builder's liability for defects in material shall be limited to the filing of proper claims with the manufacturer. Builder shall not be liable for the presence of water or dampness in crawl spaces or in the basement of the Project, if any.

12. **Mortgage Loan.** This Agreement is conditioned on the Owner's obtaining a permanent mortgage loan in the sum of _ONE HUNDRED TWENTY FIVE THOUSAND, EIGHT HUNDRED FOURTY_ _NO/100_ dollars ($ _125,840.00_ ), and Owner will use his best efforts and cooperate with Builder to obtain such loan. Such mortgage loan shall provide that the lender will make payments to Builder as construction proceeds in accordance with a schedule

approved by the lender (Construction Payments). Owner shall obtain a commitment for the mortgage loan from a lending institution within fifteen (15) days from the date hereof and close on construction financing within fifteen (15) days thereafter.

If Owner is unable to obtain a commitment within the time herein specified, Builder, within a period of five (5) days following the last day on which Owner was to obtain the commitment, may submit at least five (5) applications for a permanent mortgage loan on behalf of Owner. If Owner is unable to secure a commitment for a permanent mortgage following the submission of these additional applications, Builder shall return to Owner all monies paid by Owner to Builder in accordance with the provisions of this Agreement, except for any fees, costs, and out-of-pocket expenses borne by Builder to process this Agreement and to prepare drawings, blueprints, and specifications. A statement of all such fees, costs, and expenses shall accompany the payment. Upon receipt of any monies due to Owner in accordance with this Paragraph 12 together with the statement of fees, costs, and expenses, this Agreement shall terminate and be without force or effect. All drawings, blueprints, and specifications prepared by Builder shall be Builder's property, and Owner shall return all copies thereof in his possession.

13. **Release of Construction Payments.** Owner shall inspect the Project prior to every release of a Construction Payment. Any failure of the Owner to inspect the Project, or to inform the Builder of any deviation from this Agreement or the drawings or specifications, shall be deemed a waiver of any right Owner may have to object to or reject such deviations on work performed by Builder during the particular stage of construction for the release of a Construction Payment and shall be deemed to be an acceptance thereof by Owner. Notwithstanding the foregoing, structural defects that reduce the fitness of the Project for occupancy shall not be deemed accepted by Owner, who shall retain all rights that he may have to demand that they be corrected.

14. **Occupancy of Project.** Owner shall not occupy the Project, either physically or by moving in personal possessions, until (a) the Project has been completed in accordance with the drawings and specifications attached hereto; (b) all the terms of this Agreement have been complied with; and (c) an occupancy permit is issued to Owner. Until final settlement of all monies owed to Builder, the Project shall remain Builder's property. Owner's occupancy of the Project shall constitute acceptance of the work performed by Builder as being in compliance with the provisions of this Agreement, the drawings and specifications that are part of this Agreement, and any Change Order or Extra Work Voucher signed by Owner. At the time Owner authorizes release of the final Construction Payment, Builder will give Owner a printed form on which Owner shall prepare his list of necessary punch work. Owner shall return such list no later than two (2) weeks after it has been provided by Builder, or Owner shall be deemed to have waived his right to any such work. Punch work is not part of this Agreement or the drawings and specifications attached to the Agreement, and Owner will not hold up final release of construction funds because of punch work.

15. **Unexpected Conditions.** The price set out in Paragraph 1 hereof is based on a natural formation of the ground on the tract and on the assumption that only soft digging will be required for the construction of a foundation, the installation of a septic system,

and any other excavation required by this Agreement. Should blasting of rock be necessary or should hard shale, rock, or water be encountered, there will be an additional charge to Owner for blasting of rock and/or removing the hard shale, rock, or water to the extent of any cost in excess of the cost of soft digging, together with any extra cinder block or concrete that is required. Any back filling or rough grading will be performed with the soil removed from the excavations. However, if additional fill is required, the cost of such fill shall be billed to Owner. Builder will not be responsible for the settlement of back fill or for broken pipes or plumbing fixtures caused by frozen pipes if such damage occurs after release of the final Construction Payment.

16. **Delay of Construction by Owner.** If Owner delays construction by indecision, by failure to authorize release of Construction Payments, or for any other reason not due to the fault of Builder, Owner shall be responsible for all additional costs incurred by Builder as a result of such delay. Such costs shall include, but are not limited to, (a) extra labor and materials and (b) the down time of workers and equipment or, in the alternative, the cost of moving equipment to other job sites. If payment is not received within ten (10) days after billing, Builder may stop all work until payment is made in full.

17. **Breach by Owner.** If Owner makes any material breach of this Agreement, Builder may terminate this Agreement upon sending notice to Owner at the address provided in this Agreement or otherwise provided by Owner, by registered or certified mail, return receipt requested. Upon sending such notice, Builder shall have no further obligations under this Agreement and may terminate construction. Builder may retain any monies it has received, and, if the percentage of construction completed at the time such notice is given has not been paid for in full, Builder shall be entitled to receive such unpaid amount from the Owner together with the agreed-on price of all unpaid extra work performed by Builder. In addition to the foregoing, Builder shall be entitled to all of the amounts paid by Owner to Builder to date (including any unpaid amounts described in this Paragraph 17) together with Builder's collection costs and attorney fees, if any, as liquidated damages and not as a penalty.

18. **Arbitration.** Any and all disputes between the parties arising under this Agreement shall be determined by arbitration by three arbitrators in the City of Vero Beach before the American Arbitration Association in accordance with its rules then obtaining, and judgment may be entered upon the award in any court having competent jurisdiction of the subject matter thereof. Notwithstanding anything to the contrary, Builder may enforce any liens arising from non-payment in the appropriate State Court having jurisdiction.

19. **Captions.** The captions in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

20. **Entire Understanding.** This Agreement contains the entire understanding between the parties and supersedes all previous agreements between them regarding the Project, whether oral or in writing. This Agreement cannot be modified or terminated except in accordance with its terms or by a writing signed by the parties.

21. **Place of Execution.** Regardless of where this Agreement is executed, it is deemed

executed in Florida on the day and year first above written. This Agreement shall be interpreted in accordance with the laws of Florida.

Attachments:
1. Specifications, drawings, blueprints;
2. Survey;
3. Paint selections;
4. Draw schedule (if required);
5. Allowance items.

**DIVERSIFIED GENERAL CONTRACTORS, INC.**, a Florida corporation

D. Danny Ozark
Its: President

OWNER _Alfred E. [signature]_ / /

OWNER _Carolyn King_ 2/15/04



# *Diversified General Contractors, Inc.*

CGC #046510

State Certified General Contractor

est.1989



## "The Cay"
## Standard Home Specifications

- Three Bedroom
- Two Bath
- Over Sized Lot
- Two Car Garage

Exceeds Florida 2002
Building Codes
772-567-1014
effective June 2002

- 2754 SQ. FT. TOTAL AREA
- 2102 SQ. FT. LIVING AREA
- 1766 SQ. FT. HOME
- 42 SQ. FT. COVERED ENTRY
- 294 SQ. FT. SCREENED PATIO
- 652 SQ. FT. GARAGE

- INCLUDES ALL FILL
- FULL CONCRETE BLOCK CONSTRUCTION WITH SPRAYED STUCCO TYPE FINISH
- 3 BEDROOM - 2 BATH HOME
- MASTER BEDROOM HAS TRAY CEILING
- MASTER BATH FEATURES CORNER WHIRLPOOL BATH
- FINISH COORDINATED FAUCETS IN BRUSHED NICKEL WITH MATCHING LIGHTING
- LARGE SEPARATE WALK-IN SHOWER WITH BRUSHED NICKEL HARDWARE
- FULL CERAMIC TILE IN SHOWER AND MASTER BATH
- MAPLE HARDWOOD VANITY WITH 1 PIECE SIMULATED MARBLE TOP AND INTEGRAL SINK WITH BRUSHED NICKEL FINISH FAUCET SET
- HIS AND HER WALK-IN CLOSETS IN MASTER BEDROOM WITH VENTILATED SHELVING
- FULL EGRESS TYPE WINDOWS IN ALL ROOMS WITH TINTED GLASS
- SECOND BATH HAS MAPLE HARDWOOD VANITY WITH SIMULATED MARBLE TOP WITH BRUSHED NICKEL FAUCET
- 5' TUB WITH TUB / SHOWER COMBO VALVE OF BRUSHED NICKEL FINISH
- TUB AND BATH FLOOR CERAMIC TILED.
- CERAMIC TILE FOYER AND TILED HALLWAY TO BEDROOMS AND BATH.
- CERAMIC TILE KITCHEN AND DINING ROOM
- MAPLE HARDWOOD CABINETS THROUGHOUT KITCHEN
- BRIGHT FINISH STAINLESS STEEL 2 BOWL SINK WITH BRUSHED NICKEL FINISH SINGLE HANDLE FAUCET WITH SPRAY HEAD
- SEPARATE LAUNDRY ROOM
- FULL LIGHTING PACKAGE INCLUDED
- CEILING FANS IN ALL ROOMS
- ALL BATHROOM ACCESSORIES INCLUDED
- FINISHED GARAGE INTERIOR
- PULL DOWN ATTIC STAIRS

- APPLIANCES IN WHITE CONSISTING OF A 22CU. FT. SIDE BY SIDE REFRIGERATOR, GLASS TOP RANGE IS SELF CLEANING, DISHWASHER, FAN / MICROWAVE OVEN WITH STOPPABLE TURNTABLE AND SECOND SHELF
- DINING ROOM ENTERS THROUGH FRENCH DOORS ONTO 170 SQ. FT. SCREENED PATIO WITH 10 FOOT CEILING.
- CHANDELIER TYPE LIGHTING IN DINING ROOM
- LIVING ROOM / GREAT ROOM FEATURES OVERSIZE ROOM WITH ARCHED ENTRY
- WINDOW AND DUAL FRENCH DOORS
- BEDROOMS AND GREAT ROOM CARPETED WITH BERBER CARPET
- CERAMIC TILED, ELEVATED FOYER OVERLOOKS LIVING ROOM AND KITCHEN - DINING AREA THAT HAS 10 CEILINGS
- CENTRAL HEAT PUMP A/C THROUGHOUT HOME BY JANITROL WITH DUCTED OUTLETS IN ALL ROOMS AND CLOSETS
- FRONT ENTRY FEATURES A SOLID OAK ENTRY DOOR WITH LEVER TYPE BRASS HARDWARE THROUGHOUT THE HOME BY KWICKSET WITH A CHANDELIER TYPE LIGHT FIXTURE OVERHEAD
- GARAGE FEATURES A 16 STEEL INSULATED DOOR WITH OPENER
- 40 GALLON HOT WATER HEATER IN GARAGE WITH EXIT DOOR TO SIDE YARD AND SEPARATE ENTRY DOOR LEADING DIRECTLY TO KITCHEN
- 6/12 PITCH ROOF FEATURES CERTAINTEED LANDMARK AR SERIES DIMENSIONAL 30 YEAR SHINGLES OVER 30# ROOFING FELT WITH RIDGE VENTS
- CONCRETE DRIVEWAY WITH CONCRETE WALKWAY TO FRONT DOOR
- 950 GALLON APPROVED SEPTIC SYSTEM
- 3/4 H.P. WATER PUMP CONNECTED TO APPROVED DEEP WELL SYSTEM
- WHITE ALUMINUM 2000 SERIES PRARIE STYLE WINDOWS THROUGHOUT
- 10,000 S.F. SODDED LAWN
- 1' ALUMINUM SOFFIT SURROUNDING HOME FULLY PAINTED THROUGHOUT
- ALL CONSTRUCTION MEETS OR EXCEEDS ALL CURRENT BUILDING CODES

Note : Specifications subject to change without notice. Diversified General Contractors, Inc. reserves the right to substitute materials and/ or specifications of equal or greater value and quality.



# DIVERSIFIED GENERAL CONTRACTORS, INC.

5400 65TH ST.                                           Vero Beach, Fl. 32967

Phone 772-559-5401
Fax 772-778-3441                                           2/10/04

## *INVOICE*

| | |
|---|---:|
| BASE PRICE OF HOME AS DESIGNED | $135,000.00 |
| POOL AND DECKING PACKAGE | 20,000.00 |
| POOL ENCLOSURE | 3,000.00 |
| CREDIT ON LOT CLEARING | <- 700.00> |
| SUBTOTAL | $157,300.00 |
| 20% DEPOSIT | 31,460.00 |
| EXTRAS TO DATE -WELL, PUMP, ADD. SURVEY | 1,475.00 |
| **TOTAL CASH DUE AT SIGNING OF CONTRACT** | **$ 32,935.00** |
| TOTAL MORTGAGE COMMITMENT FROM BANK | $125,840.00 |
| TOTAL COST TO DATE | $158,775.00 |

*[signature]*

# DIVERSIFIED GENERAL CONTRACTORS, INC.

5400 65TH ST.   Vero Beach, Fl. 32967

Phone 772-559-5401
Fax 772-778-3441

IT IS HERE IN AGREED THAT THE HOME WILL BE CONSTRUCTED ON LOT 8, BLOCK K, UNIT A, VERO LAKES ESTATES, VERO BEACH, FLORIDA.

_____
DIVERSIFIED GENERAL CONTRACTORS, INC.

*Alfred E. King Sr.*   / /
ALFRED E. KING, SR.

*Carolyn King*   2/15/04
CAROLYN I. KING

# DIVERSIFIED GENERAL CONTRACTORS, INC.

5400 65TH ST.                                              Vero Beach, Fl. 32967

Phone 772-559-5401
Fax 772-778-3441                                           / /

## CUSTOMER SELECTION SHEET

**CUSTOMER** _____  **ADDRESS** _____

ADD ON COSTS

**INTERIOR COLOR** _____

**EXTERIOR COLOR** _____

**ACCENT COLOR** _____

**SHINGLE COLOR AND TYPE** _____

**FLOOR TILE** _____

**WALL TILES** _____

**CARPET COLOR AND STYLE** _____

**COUNTER TOP KITCHEN** _____

**VANITY TOPS** _____

**BATH FIXTURE COLOR** Prefer single handle faucets where possible

**APPLIANCE COLOR** White - Refer Freezer on bottom - Whirlpool/Amana

**BATH UPGRADES** _____

**ADDITIONAL CHANGES** Front door to have oval glass design

_____

**CONTRACTOR ACCEPTANCE**                        **OWNER ACCEPTANCE**

_____                                 _____

ADDITIONAL COSTS TO OWNER  $ _____

                                        CK a.c.k

# STATE OF FLORIDA
# CONSTRUCTION INDUSTRIES RECOVERY FUND

The State of Florida created the recovery fund to assist homeowners to recover all or a portion of their losses after they had been financially harmed by an actively licensed contractor and unable to collect. From 1995 to October 1999, the State CILB has awarded nearly $4 million in claims. The recovery fund is available to the consumer on claims against only those contractors (State certified or registered) who are regulated under *Florida Statutes* 489, Part I.

There is still much confusion about the process for accessing the State of Florida Construction Industries Recovery Fund. We now have available on the Internet some Frequently Asked Questions (FAQs) about the Recovery Fund. You can access that specific web site by going to: http://www.state.fl.us/dbpr/html/prof/cilb/. I have also enclosed a copy of the FAQs.

For Both the Consumer and Contractor: The contractor is required by law to inform the homeowner/consumer on every contract that is $2,500 or more about their rights and the availability of the recovery fund. This Notice of Consumer Rights is found in *Florida Statutes* 489.1425. You can see how the statement should substantially read by going to the Internet: http://www.leg.state.fl.us/. Click on Statutes & Constitution; then click on 1999 Full Volume; click on Title XXXII Regulation of Professions and Occupations; click on Chapter 489, Part I; then click on 489.1425.

**If a homeowner contracts with someone who is not licensed, or whose license is delinquent at the time of the contract, the homeowner is not eligible to access the recovery fund.**

The recovery fund is intended as a place of last resort. Please refer to the FAQs that will show what one needs to access the recovery fund. Or review the applicable sections of *F.S.* 489. The homeowner may be able to obtain a final order by opening a complaint against the contractor. An Analyst will review and log in the complaint and assign a case number. If the complaint is against a State registered contractor – your complaint will be referred to the local jurisdiction that has discipline authority over he or she. Assigning a case number, allows the State to track the case. If disciplinary action is taken by the local jurisdiction, that local discipline order is forwarded to the State with a recommended penalty. For the homeowner to be able to use this local discipline order for accessing the recovery fund – the local jurisdiction must award restitution to the homeowner and include that action in the recommended penalty. If the State approves and adopts the recommended penalty, a final order will be drafted. This is the document that would be needed for accessing the fund. If you hired a State certified contractor, the State would investigate and, if applicable, initiate discipline at the State level.

A complaint and the recovery fund claim application is two separate actions. The filing of the complaint does not open a claim, nor does a claim open a complaint. Write for a complaint form at: Business & Professional Regulation, 1940 North Monroe Street, Tallahassee, FL 32399-0782. See the FAQs for an address to write for a recovery fund claim application.

# MOST FREQUENTLY ASKED QUESTIONS REGARDING THE RECOVERY FUND FOR THE CONSTRUCTION INDUSTRY LICENSING BOARD

1. **Q. What is the recovery fund?**
   **A.** The Construction Industries Recovery Fund is a trust fund that is available to a consumer (natural person) who has suffered monetary damages from a contractor.

2. **Q. Can I get help from the recovery fund?**
   **A.** If you have made a diligent effort to collect your damages, and 1) if you have either a civil court judgment or a final order with restitution; and 2) the damages or losses are a result of specific violations in Florida Statute 489; and 3) you have a contract after July 1, 1993; and 4) if you have conducted an asset search or obtained a "Relief of Stay" from bankruptcy that the contractor filed, then yes, you may be eligible for accessing the recovery fund.

3. **Q. How do I know if I am eligible for the fund?**
   **A.** In conjunction with the above answer, you should contact the Construction Industry Recovery Fund section by writing to: CILB Recovery Fund, 7960 Arlington Expressway, Suite 300, Jacksonville, Florida 32211 to request an application and information packet. Or call their office at (904) 727-3650. With the information they will provide, you will be able to see if the violation committed against you make you eligible. Or you may review the Florida Statutes by clicking on: http:// www.leg.state.fl.us and click on statutes.

4. **Q. Do you mean that even if I sued the contractor and have a judgment, I may not be able to reimbursed from the recovery fund?**
   **A.** Yes, that is correct. No matter what amount of money the judgment or a final order awards, the violations must match with those listed in the statute for eligibility.

5. **Q. What are the violations that would make me eligible?**
   **A.** Florida Statute 489.141 identifies the following violations:

   A 'g' violation is the commission of mismanagement or misconduct in the practice of contracting that causes financial harm to a customer. This occurs when there were valid liens filed that were not satisfied by the contractor; the contractor abandoned the job and the percentage of completion is less than percentage paid; or the job was completed and the customer pays more than what was as a result of circumstances beyond the control of the contractor.

   A 'j' violation is abandoning the job. Here the contractor has done nothing for 90 days termination was without cause or notice to the owner, or fails to perform without cause.

   A 'k' violation is for signing a statement falsely indicating that the work is bonded, or falsely stating that all subcontracted work, labor and materials has been paid for, or falsely stating that workers' compensation or public liability insurance is provided.

   Applications may qualify with a fourth category of building code violations.

6. **Q. I have a judgment awarding me $78,000 in damages. Can I get all my money back from fund?**
   No. If all or a portion of the award is a result of violations mentioned above, and all other conditions are met, you can only be awarded a maximum of $25,000 from the recovery fund.

7. Q. How long will it take for my application to be processed?
   A. This is a difficult question to answer. We have some claims going back as far as 1996 and 1997. The time element depends on how much information you have provided. Were all the required documents submitted? Is there corroborating or supporting documentation needed? Some claims have been processed in 8 months. Each claim is reviewed in order of date received. Claims cannot be presented to the Board without all the required documents, unless the case is presented for administrative closure.

8. Q. Suppose the Board hears my claim and approves it. When can I get my money?
   A. Between thirty and ninety days following the hearing the Board Counsel will prepare an Order which you and the contractor will receive. Either party can appeal the Order within the 21 days. If there are no appeals, by law, we must wait 45 days from the filing date of the Order before we can request a check. It usually takes an additional four to six weeks to get the check from the Comptroller. Final Administrative procedures are made and payment is sent by certified mail to you.

9. Q. How do I do an asset search?
   A. When you request your application packet you will be given a document that will help prepare an asset search. We provide all the necessary telephone numbers and even a sample outline of an affidavit that can be used.

10. Q. Can I come to the hearing and speak?
    A. You and the contractor will be given a letter notice approximately three weeks prior to the hearing. Although it is not mandatory, you are encouraged to be present in the event Recovery Fund Committee Members have questions that you might be able to answer.

11. Q. What happens next, if the Board does not approve my claim?
    A. If the Board did not approve or continue your claim, they either "Denied With Prejudice", which means that there was a definite cause for them to deny your request. You can, however, still appeal and request a rehearing before the full Board or appeal to a higher level. If they "Denied Without Prejudice", it means that your claim still has merit. However, it is lacking some specific information or document. You may resubmit your claim when you have the required items without having to open a new claim.

1533541 RECORDED IN THE RECORDS OF JEFFREY K BARTON, CLERK CIRCUIT COURT INDIAN
RIVER CO FL, BK: 1718  PG: 796, 04/15/2004  04:08 PM   2004050785

LOAN # 97075248255

THIS INSTRUMENT PREPARED BY: CATHY REDNER
RIVERSIDE NATIONAL BANK OF FLORIDA
2211 OKEECHOBEE ROAD
FORT PIERCE, FLORIDA 34950

P-35306

PERMIT NUMBER:                          TAX I.D. NUMBER:

# NOTICE OF COMMENCEMENT

STATE OF FLORIDA
COUNTY OF INDIAN RIVER

THE UNDERSIGNED HEREBY GIVES NOTICE THAT IMPROVEMENT WILL BE MADE TO CERTAIN REAL PROPERTY AND IN ACCORDANCE WITH CHAPTER 713, FLORIDA STATUTES, THE FOLLOWING INFORMATION IS PROVIDED IN THIS NOTICE OF COMMENCEMENT:

1. DESCRIPTION OF PROPERTY:

   LOT 8, BLOCK K, VERO LAKES ESTATES UNIT A, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLA
   BOOK 4, PAGE 70, OF THE PUBLIC RECORDS OF INDIAN RIVER COUNTY, FLORIDA.

2. GENERAL DESCRIPTION OF IMPROVEMENT: SINGLE FAMILY DWELLING AND ATTENDANT SITE IMPROVEMENTS

   STATE OF FLORIDA
   INDIAN RIVER COUNTY
   THIS IS TO CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN THIS OFFICE.

3. OWNER INFORMATION
   a. NAME AND ADDRESS:   ALFRED KING AND CAROLYN KING
                          2292 VICTORY HIGHWAY
                          COVENTRY, RI 02816

   b. OWNER'S INTEREST IN PROPERTY: FEE SIMPLE

4. CONTRACTOR INFORMATION: DIVERSIFIED GENERAL CONTRACTORS, INC.
                           5400 65TH STREET
                           VERO BEACH, FL 32967
                           (772) 567-1014
                                                    AMOUNT OF BOND:

5. SURETY (IF ANY):  NONE

6. LENDER: RIVERSIDE NATIONAL BANK OF FLORIDA
           2211 OKEECHOBEE ROAD, FORT PIERCE, FLORIDA 34950
           PHONE NO: 772-464-4400

7. NAME OF PERSON WITHIN THE STATE OF FLORIDA DESIGNATED BY OWNER UPON WHOM NOTICES OR OTHER DOCUMENTS MAY BE SERVED AS PROVIDED BY SECTION 713.13(1)(a)7, FLORIDA STATUTES (OWNER'S AGENT):

   a. NAME AND ADDRESS:   N/A

8. IN ADDITION TO OWNER, OWNER DESIGNATES THE FOLLOWING PERSON TO RECEIVE A COPY OF THE LIENOR'S NOTICE AS PROVIDED IN SECTION 713.13(1)(b), FLORIDA STATUTES:

   RIVERSIDE NATIONAL BANK OF FLORIDA
   2211 OKEECHOBEE ROAD, FORT PIERCE, FLORIDA 34950
   PHONE NO: 772-464-4400

OWNERS:
_Alfred King_  4-2-04    _Carolyn King_  4-2-04
ALFRED KING     DATE      CAROLYN KING    DATE

SWORN TO AND SUBSCRIBED BEFORE ME THIS 2nd DAY OF April

PRINTED NAME: Maria G. Shank
NOTARY PUBLIC, MY COMMISSION EXPIRES: 03-15-07

# DIVERSIFIED GENERAL CONTRACTORS, INC.

5400 65TH ST.                                                                                   Vero Beach, Fl. 32967

Phone 772-559-5401  
Fax 772-778-3441                                          9/11/06

| | |
|---|---:|
| INSTALLATION OF GUTTERS | $935.00 |
| CHANGE FROM R-19 TO R-30 INSULATION | 505.00 |
| CHANGE FROM 10 SEER A/C TO 13 SEER A/C PER CODE | |
| CHANGE AND INSTALL HUMIDISTAT | 1303.00 |
| TILE SECOND BATH TO CEILING | 145.00 |
| TILE DIAGONAL IN LIVING ROOM AND KITCHEN | 1000.00 |
| TILE LISTELOS AND INSERTS IN BATHS | 300.00 |
| 2 ROLLS OF GUTTER PIPE @ 50.00 | 100.00 |
| CHANGE CABINETS FROM MAPLE TO TOFFEE | 889.98 |
| BEVEL EDGE COUNTER TOP UPGRADE | 385.20 |
| CROWN MOULDINGS IN KITCHEN | 490.38 |
| STUCCO BAND EXTENTIONS | 500.00 |
| PAINT STUCCO BAND WHITE | 200.00 |
| ADD 2 RECEPTACLES TO PLANT SHELVES | 100.00 |
| ADD 1 SPRINKLER CIRCUIT TO ELECTRICAL | 150.00 |
| 10 LOADS OF FILL TO BACKFILL POOL AND SIDES ON 8/15 | 1872.50 |
| PLACEMENT OF FILL | N/C |
| HIGHRISE TOILETS | N/C |
| SHOWER LIGHT | 150.00 |
| CARPET UPGRADE | 418.45 |
| WATER SOFTNER | 615.25 |
| 4 PALLETS OF SOD PER CODE CHANGE (SOD TO EDGE OF ROAD) | 340.00 |
| ADDITIONAL CONCRETE | N/C |
| TOTAL OF ALL EXTRAS TO DATE | $10399.76 |

PLEASE FORWARD TO;

DIVERSIFIED GENERAL CONTRACTORS, INC  
5400 65TH ST.  
VERO BEACH, FL. 32967

# DIVERSIFIED GENERAL CONTRACTORS, INC.

5400 65TH ST.                                                                      Vero Beach, Fl. 32967

Phone 772-559-5401
Fax 772-778-3441                                         9/11/06

| | |
|---|---:|
| INSTALLATION OF GUTTERS | $935.00 |
| CHANGE FROM R-19 TO R-30 INSULATION | 505.00 |
| CHANGE FROM 10 SEER A/C TO 13 SEER A/C PER CODE AND INSTALL HUMIDISTAT | 1303.00 |
| TILE SECOND BATH TO CEILING | 145.00 |
| TILE DIAGONAL IN LIVING ROOM AND KITCHEN | 1000.00 |
| TILE LISTELOS AND INSERTS IN BATHS | 300.00 |
| 2 ROLLS OF GUTTER PIPE @ 50.00 | 100.00 |
| CHANGE CABINETS FROM MAPLE TO TOFFEE | 889.98 |
| BEVEL EDGE COUNTER TOP UPGRADE | 385.20 |
| CROWN MOULDINGS IN KITCHEN | 490.38 |
| STUCCO BAND EXTENTIONS | 500.00 |
| PAINT STUCCO BAND WHITE | 200.00 |
| ADD 2 RECEPTACLES TO PLANT SHELVES | 100.00 |
| ADD 1 SPRINKLER CIRCUIT TO ELECTRICAL | 150.00 |
| 10 LOADS OF FILL TO BACKFILL POOL AND SIDES ON 8/15 | 1872.50 |
| PLACEMENT OF FILL | N/C |
| HIGHRISE TOILETS | N/C |
| SHOWER LIGHT | 150.00 |
| CARPET UPGRADE | 418.45 |
| WATER SOFTNER | 615.25 |
| 4 PALLETS OF SOD PER CODE CHANGE (SOD TO EDGE OF ROAD) | 340.00 |
| ADDITIONAL CONCRETE | N/C |
| TOTAL OF ALL EXTRAS TO DATE | $10399.76 |
| CREDIT FOR STOVE | -469.73 |
| FRENCH DOOR BLINDS | +401.00 |
| MORTGAGE MOD FEE REEMBURSEMENT | -268.50 |
| SPRINKLER REEMBURSMENT | -270.00 |
| REVISED TOTAL | $9792.80 |

PLEASE FORWARD TO;
DIVERSIFIED GENERAL CONTRACTORS, INC
5400 65TH ST.
VERO BEACH, FL. 32967