## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 02047 SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| LAURA HAYA, DANIEL HAYA and IRENE HAYA, et al. v. TAISHAN GYPSUM CO., LTD., et al.; Case No. 11-1077 (Omni IX) | MAG. JUDGE WILKINSON |

_____/

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, SHOMA DEVELOPMENT CORP.'S, MOTION TO DISMISS WITH PREJUDICE THE CLAIMS BROUGHT AGAINST IT IN THE SECOND AMENDED HAYA OMNIBUS CLASS ACTION COMPLAINT (OMNI IX)

Defendant Shoma Development Corp. ("Shoma Development"), hereby files its Memorandum of Law in Support of its Motion to Dismiss, with Prejudice, the claims asserted against it by **Olga and Carlos Garrido** (the "Garridos"), **Daimarys Leon** ("Leon"), **Giliam Villalobos** (Villalobos") and **Sebastian Covos** ("Covos") (collectively, "Plaintiffs"), in the Second Amended Haya Omnibus Class Action Complaint (Omni IX) pursuant to Federal Rule of Civil Procedure 12(b)(6) for the reasons set forth below.

## I.  INTRODUCTION

It must be stated from the outset that, although this Court is generally required to accept Plaintiffs' allegations as true for purposes of a Motion to Dismiss, Plaintiffs' claims against this Defendant were made entirely without a shred of investigation or background research.  If Plaintiffs *had* bothered to investigate the spurious and wholly erroneous allegations they assert in the Complaint against Shoma Development, they would have realized that this particular defendant had nothing *whatsoever* to do with the development, construction, supply, design or any other aspect of their respective properties.  Simply stated, Shoma Development was not

involved in the alleged wrongs claimed by Plaintiffs and *should never have been named in this action*.   However, because Shoma Development *has* been named and now has to put forth a defense (and incur the cost of same) in this meritless action, the following sets forth the various grounds upon which Plaintiffs' baseless claims should be dismissed.

## II.   THE GOVERNING LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) should be granted if the allegations in the Complaint, even if proved true, would not entitle the plaintiff to relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007); Fed. R. Civ. P. 12.  Plaintiffs' obligation "to provide the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions."  *Id*. at 555. (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Nor does a complaint suffice if it tenders 'naked assertion[s], devoid of 'further factual enhancement.'"  *Id.* at 1949 (*quoting Twombly*, 550 U.S. at 557).  In this case, each of the causes of action asserted against Shoma Development should be dismissed pursuant to Rule 12(b)(6) because none of them states a claim for which relief can be granted.

## III.  ARGUMENT

### A.   Plaintiffs' Negligence Claim (Count I) is Without Merit.

In the Omnibus Complaint, Plaintiffs allege that Shoma Development somehow owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question.  Cmplt. ¶ 42.  The Complaint further alleges that Shoma Development had a duty to provide Plaintiffs with certain warnings about the drywall.  *Id.* ¶ 45.

Notwithstanding the fact that Shoma Development had no involvement with the Properties at issue whatsoever, even assuming the truth of Plaintiffs' specious allegations, they

{20328708;7}

2

do not state a claim for relief.[1]  Under Florida law, a negligence claim requires the Plaintiffs to plead and prove (among other things) that the defendant owed a duty to the Plaintiffs, and that the duty was breached.  *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (Florida law) ("Failure to establish any one of these elements is fatal to the Plaintiff's case."). Plaintiffs can allege neither prerequisite.

The most fundamental problem with Plaintiffs' negligence theory is that, even if Shoma Development was the builder or developer of their Properties (which it was not), as a matter of law, Shoma Development would not have owed Plaintiffs a duty in negligence.  The omnibus order in *Bennett v. Centerline Homes, Inc. et al.*, No. 502009-CA-014458 (Fla. 15th Jud. Cir., March 18, 2011), attached hereto as **Exhibit A** (the "Omnibus Negligence Order"), explains why this is so.  *Bennett* is a consolidated state court action that, like this one, pits homeowners with defective drywall claims against homebuilders.  Just as the Plaintiffs are attempting to do here, the homeowners in *Bennett* attempted to assert a negligence claim based on their builders' purported failure to protect them from a latent defect – namely, hazardous "Chinese manufactured" drywall.  The issue of whether the builders owed a duty in negligence was, the court held, "a question of law."  *Id*. at 1.

In what appears to be a case of first impression in Florida, the court in *Bennett* ruled that the homebuilders did not have a duty "to inspect, test or warn" the Plaintiffs about the allegedly defective drywall in their homes.  The court explained that where, as here, the purported defect is "latent," the law imposes no such duties "unless the product is inherently dangerous."  *Id*. at 2; *see O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim as manufacturer had no duty to warn); *Mendez v. Honda Motor*

---

[1]     Moreover, any such claims would be intercepted by the economic loss rule (see discussion, *infra* at Section III.D).

*Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous."). Because even *defective* drywall does not fit into the narrow "inherently dangerous" category, builders had no duty to inspect the drywall, to test it, or to warn the Plaintiffs about it. *Omnibus Negligence Order*, pg. 2.[2] The only way for the negligence claims to survive, the court held, was for the homeowners to allege "in good faith" that the builders had "actual or implied notice" of the alleged drywall defects. *Id.*; *see Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez*, 738 F. Supp. at 483-84.

Because the purported drywall defects at issue in this case were indisputably latent (*see, e.g.,* Cmplt. ¶¶ 16-17, 70), Plaintiffs' negligence claim cannot survive because they cannot allege – in good faith – that Shoma Development had "actual or implied notice" of the defects. The boilerplate and unsupportable assertion that Shoma Development "knew or should have known" that the drywall would "harm" the Plaintiffs (*id.* ¶ 53) is a bare legal conclusion that cannot state a claim for relief, particularly one premised on a negligence theory that files in the face of basic Florida law. *See Omnibus Negligence Order*, pg. 2 (requiring more specific allegations); *Ashcroft*, 129 S.Ct. at 1949.

---

[2]    "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category. They include highly toxic materials, second hand guns and drugs…. In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself." *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted). By way of example, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are not "inherently dangerous."

**B.      Plaintiffs Have Not Stated a Claim for Negligence Per Se (Count II).**

Plaintiffs' negligence per se claim (Count II) is also poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort.  First and foremost, Shoma Development has nothing to do with this lawsuit. It did not develop, build or sell any of the Plaintiffs' homes. Next, negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>."  *DeJesus v. Seaboard Coast Line R.R. Co*., 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se.  First, they have not identified a statute that Shoma Development allegedly violated, much less explained how that violation occurred.  Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes" and "furnished the drywall in violation of ASTMC C 1396/C 1396M-069." Cmplt. ¶ 52.  Plaintiffs, however, do not state how Shoma Development or any of the other unspecified "Defendants" have violated this code. Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage.  *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that Shoma Development allegedly violated are "designed to protect the <u>general public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se.  *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added).  In other words, Plaintiffs' negligence per se claim appears to be nothing more than a repackaged negligence claim.  It should be summarily dismissed for that reason as well.

{20328708;7}

**C.    Plaintiffs Cannot Sue Shoma Development in Strict Liability (Count III).**

Plaintiffs' strict liability claim (Count III) is premised on the sweeping and patently false assertion that Shoma Development was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." Cmplt. ¶ 57.  As set forth above, Shoma Development is not a proper party to this lawsuit since it did not develop, build, sell or take any part with respect to Plaintiffs' homes.  However, even if Plaintiffs' fabricated statements were true (which they are not), the strict liability theory is nonetheless foreclosed by the economic loss rule (*see* discussion, *infra* at Section III.D) and the following established principles of Florida law, each of which was addressed in the omnibus order issued in the consolidated drywall proceedings in Florida's Fifteenth Judicial Circuit, styled *Bennett v. Centerline Homes Inc*., No. 50 2009-CA-014458 (Fla. 15th Jud. Cir., Nov. 15, 2010), a copy of which is attached hereto as **Exhibit B** (the "November Omnibus Order"), as an independent basis for dismissing all strict liability claims brought against homebuilders in that court.  There, the same Florida Circuit Court that also rejected the Plaintiffs' negligence theory (*see supra* at Section III.A) ruled that (1) "only manufacturers, and those in the distributive chain of a product, can be held strictly liable" for allegedly defective drywall; and (2) drywall is not subject to strict liability because it is considered an improvement to real property, not a "product."  *Id*., at pgs. 7-9.  Each rationale applies here and each is fatal to Plaintiffs' strict liability claim.

First, Shoma Development cannot be strictly liable to the Plaintiffs because, even if the Complaint, which identifies Shoma Development as a "Developer/Builder" [Cmplt., Ex. A. pg. pgs. 71,73,75 & 80 (Subclass #176)], were true, builders and developers obviously did not manufacture or distribute the drywall in question.  It is firmly settled – and *Bennett* confirms – that strict products liability is reserved for manufacturers and others in the chain of distribution of that particular product, not homebuilders (who are an end user of the product).  *See, e.g., Ugaz*

*v. American Airlines, Inc*., 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291-92 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Second, it has long been held that strict product liability does not apply to "structural improvements" to real estate, such as a home, as a home is not considered a product.[3] Drywall is a "structural improvement" to real property because it is an *integral part* of Plaintiffs' home. "Florida courts have expressly <u>declined</u> to extend the principle of strict liability to structural improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc*. No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added).[4] Indeed, courts specifically hearing Chinese drywall cases have similarly found that drywall constitutes a structural improvement to real property for which a strict products liability action will not lie. *See Bissoon v. Centerline Homes Construction, Inc.*, No. 562010 CA 001463 (Fla. 19th Jud. Cir. Mar. 24, 2011) (granting builder's motion to dismiss and stating that "although Plaintiff[s'] strict liability claims do allege defective product distribution, permanent improvements to real property are not products for purposes of products strict liability actions"). A copy of the *Bissoon*

---

[3]    *See Federal Ins. Co. v. Bonded Lighting Prot. Sys., Inc*., No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (dismissing strict liability claim based on lighting system because system was structural improvement to real estate); *see also Virgilio v. Ryland Group, Inc*., 695 F. Supp. 2d 1276, 1283 n.11 (M.D. Fla. 2010) (explaining that "a home is not a product" for purposes of strict products liability, and citing authorities); *see generally Porter v. Rosenberg*, 650 So. 2d 79 (Fla. 4th DCA 1995).

[4]    *See also Plaza v. Fisher Dev., Inc*., 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007) (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water & Waste, Inc*., 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

{20328708;7}

7

decision is attached hereto as **Exhibit C**).   As such, Plaintiffs' strict liability claim should be dismissed as a matter of law.

**D.     Plaintiffs' tort claims (Counts I, II, III and XI) are barred by Florida's products liability economic loss rule.**

To the extent that Plaintiffs seek to sue Shoma Development in tort for economic losses, those claims should also be dismissed under Florida's products liability economic loss rule.   In *Casa Clara Condominium Association v. Charley Toppino & Sons, Inc*., 620 So. 2d 1244, 1248 (Fla. 1993), the Florida Supreme Court affirmed dismissal of the Plaintiffs-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties.   The Court held that the supplier's defective concrete had not damaged anything other than the Plaintiffs' dwellings and, consequently, had not caused them any non-economic damages.   *Id*. at 1247.   Because the Plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier.   *Id*. at 1246-48.

The same reasoning applies here.   The economic loss rule limits Plaintiffs to recovering non-economic losses (e.g., for personal injury) and damages to property other than the home itself.[5]   *See Casa Clara*, 620 So. 2d at 1247-48.   Plaintiffs must therefore replead their tort claims to seek only non-economic losses.   *Cf*. Cmplt. ¶ 55 (seeking general "damages" on negligence count).

**E.     Plaintiffs' Breach of Contract Claims (Count VII) Must be Dismissed.**

Plaintiffs cannot maintain their claim for breach of contract (Count VII) for the simple reason that they were never in privity of contract with Shoma Development.   Indeed, the

---

[5]      Plaintiffs also cannot recover economic losses because they has <u>suffered</u> no such losses.   The Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed."   *In re Chinese Manufactured Drywall Products Liability Litig.,* 680 F. Supp. 2d 780, 799 (E.D. La. 2010).

Garridos, Leon and Villalobos all acquired their houses from the same third party, Shoma Homes Splendido, Inc. ("Shoma Splendido") – **not** Shoma Development.  Copies of the Purchase Agreements between the Garridos, Leon and Villalobos and Shoma Splendido are all attached to this Memorandum as **Exhibits D-F**,[6] respectively.

The Garridos' house is located at 8111 West 36 Ave #4, Hialeah, Florida.  Cmplt. ¶ 695. The Profile Form that the Garridos filed with this Court sheds further light on their allegations. A copy of that form is attached hereto as **Exhibit G**.  The form states that the Garridos acquired the house on February 28, 2007.  *See id.*, pg. 3.  The Certificate of Occupancy for the home, which shows Shoma Splendido as the former owner of the house, was issued on February 28, 2007.  *See* Certificate of Occupancy (attached as **Exhibit H**). The Garridos themselves attached a copy of the Purchase Agreement between the Garridos and Shoma Splendido as an exhibit to their Profile Form.  *See id.*

Leon's house is located at 8111 West 36 Ave #6, Hialeah, Florida.  Cmplt. ¶ 717.  In the Profile Form that Leon filed with this Court, she specifically identifies Shoma Splendido  – and not Shoma Development – as the Homebuilder/General Contractor/Developer.  *See* Profile Form attached as **Exhibit I**, pg. 3.  The Special Warranty Deed from Shoma Splendido in favor of Leon is attached as **Exhibit J**.[7]  The Purchase Agreement between Leon and Shoma Splendido is

---

[6]     The fact that Plaintiffs chose not to attach these documents to the Omnibus Complaint does not prevent the Court from considering them now.  The Court can and should consider these instruments because they are undeniably central to Plaintiffs' claims against Shoma Development.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (holding that contract could be considered on motion to dismiss where it was attached to motion, referred to in the complaint, and central to the plaintiff's claims); *Aucoin v. Regions Fin. Corp.*, No. 09-3835, 2010 WL 334533, *2 (E.D. La. Jan. 21, 2010) (incorporating Retirement Plan mentioned in complaint and central to one or more of plaintiff's claims); *Federal Ins. Co. v. New Hampshire Ins. Co.*, No. 03-385-CM, 2010 WL 28568, *4 (M.D. La. Jan. 4, 2010) ("Since the insurance policy issued by New Hampshire is central to [plaintiff's] claims, the Court may consider it as evidence even though it was not attached to [plaintiff's] original petition or amended complaint.").

[7]     Although there is only one Plaintiff named in this Action with respect to this Property (Leon), the Special Warranty Deed from Shoma Splendido identifies Leon *and* Alejandro Rodriguez as co-owners of the Property (husband and wife).  *See* **Ex. J**.  Alejandro Rodriguez' interest in the Property was later transferred to Yalier

dated November 24, 2007. *See* **Exh. E**.  The Certificate of Occupancy for the home showing Shoma Splendido as the prior owner was issued on February 28, 2007.  *See* Certificate of Occupancy attached as **Exhibit L**.

Villalobos' house is located at 8129 West 36 Ave #4, Hialeah, Florida.  Cmplt. ¶770. The Purchase Agreement between Villalobos and Shoma Splendido is dated April 29, 2005. *See* **Exh. F**.  In the Profile Form that Villalobos filed, he specifically identifies Shoma Splendido – and not Shoma Development – as the Homebuilder/General Contractor/Developer.  *See* Profile Form attached as **Exhibit M**, pg. 3.  The Special Warranty Deed from Shoma Splendido in favor of Villalobos is attached as **Exhibit N.** The form states that Villalobos moved into his home on April 15, 2007.  *Id*. pg. 3, and the Certificate of Occupancy for the home identifying Shoma Splendido as the prior owner was issued on February 28, 2007.  *See* Certificate of Occupancy attached as **Exhibit O**.

Covos acquired his house from third parties, Maxima and Carolina Arceo (the "Arceos"). Covos' house is located at 8129 West 36 Ave #6, Hialeah, Florida.  Cmplt. ¶ 672.   The Arceos purchased the house from Shoma Splendido.  A copy of the Purchase Agreement dated July 18, 2005 between the Arceos and Shoma Splendido is attached as **Exhibit P**.  A copy of the Warranty Deed from the Arceos in favor of Covos is attached hereto as **Exhibit Q**. [8]   In the

---

Rodriguez via a Quit Claim Deed.  *See* **Exhibit K**.  Pursuant to Fed. R. Civ. P. 19(a)(1), a person must be joined as a party if that person has an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may… "leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest."  Leon's failure to join the other owner of the Property as a party-plaintiff in this lawsuit clearly leaves Shoma Development exposed to the possibility of a subsequent lawsuit by the non-joined owner, and creates a substantial risk that Shoma Development may incur double, multiple or otherwise inconsistent verdicts and obligations.  Accordingly, Shoma Development requests that this Court issue an Order that **Yalier Rodriguez** be made a party-plaintiff in this Action pursuant to Fed. R. Civ. P. 19(a)(2), or, in the alternative, that the Omnibus Complaint be dismissed as to Leon pursuant to Fed. R. Civ. 12(b)(7) and 19(b).

[8]      Although Covos is the only Plaintiff named in this Action with respect to this Property, the Warranty Deed reflects that Covos is a co-owner of the Property with Emilse Villanueva ("Villanueva").  *See* **Ex. Q**.  Moreover, the Profile Form filed by Covos states that Covos and Villanueva are the owners of the Property. *See* **Ex. R**.  Curiously, the Profile Form also identifies Villanueva as a "Claimant," yet she is not named as a plaintiff in this Action. *See id*.

Profile Form that Covos filed, he states that he acquired the house on August 25, 2010. *See* Profile Form attached as **Exhibit R**, pg. 3. The Certificate of Occupancy for the home identifying Shoma Splendido as the prior owner was issued over three years earlier, on February 28, 2007. *See* **Exhibit S**.

Although the Complaint generally alleges – without a shred of detail – that the Plaintiffs (along with every other plaintiff in this lawsuit) "were in privity" with Shoma Development or were "foreseeable third party beneficiaries of any warranties" [Cmplt. ¶ 75], these are classic unsupported legal conclusions that Florida courts have long classified as inadequate to survive a motion to dismiss. *See Arias-Benn v. State Farm Fire & Cas. Ins. Co*., 495 F.3d 228, 230 (5th Cir. 2007) (reaffirming that Fifth Circuit does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" in resolving Rule 12(b)(6) challenges) (internal marks and citation omitted); *see also Fed. Ins. Co. v. Bonded Lightning Protection Sys., Inc*., No. 07-80767-CIV, 2008 WL 5111260, *7 (S.D. Fla. Dec. 3, 2008) (dismissing third-party-beneficiary claim where complaint failed to allege that contracting parties intended contract to benefit third party).

In this case, the plain language of the Purchase Agreements between Shoma Splendido and the purchasers shows no intent whatsoever by the parties thereto to cause the Purchase Agreements to primarily or directly benefit Plaintiffs in any way. *See Biscayne Investment Group v. Guarantee Management Servs., Inc.,* 903 So. 2d 251, 254 (holding that "a non-party to a contract is [deemed] the specifically intended beneficiary <u>only</u> if the contract clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that party belongs … [t]o find the requisite intent, it must be established that the parties to the contract

---

Accordingly, Shoma Development requests that this Court issue an Order that **Emilse Villanueva** be made a party-plaintiff in this Action pursuant to Fed. R. Civ. P. 19(a)(2), or, in the alternative, that the Omnibus Complaint be dismissed as to Covos pursuant to Fed. R. Civ. 12(b)(7) and 19(b).

actually and expressly intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party") (emphasis added). Because Plaintiffs acquired their homes from third parties, and there are no statements in the Purchase Agreements that satisfy the requirements for "third-party beneficiary" claims, Plaintiffs' only contractual remedy lies with the party with whom they *are* in privity, not Shoma Development. "It is elementary that a person not a party to, nor in privy with, a contract does not have the right to sue for its breach." *Cibran Enters., Inc. v. BP Prods. N.A., Inc*., 365 F. Supp. 2d 1241, 1251 (S.D. Fla. 2009) (internal marks and citation omitted); *Banco Ficohsa v. Aseguradora Hondurena*, *S.A.,* 937 So. 2d 161, 164-65 (Fla. 3d DCA 2006) (same principle). As such, Count VII must be dismissed.

**F.      Plaintiffs Cannot Maintain Their Warranty Claims (Counts IV, V & VI)**.

In Counts IV (Breach of Express and/or Implied Warranties), V (Breach of Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes Section 718.203) and VI (Breach of Implied Warranty of Habitability), Plaintiffs allege causes of action based on various express and implied warranties.[9] These warranty claims should be dismissed for several independently and compelling reasons.

> a.      *Plaintiffs cannot maintain breach of implied warranty claims because they were not in privity of contract with Shoma Development.*

Plaintiffs' lack of privity with Shoma Development dooms any implied warranty claims they might assert. It is axiomatic that a plaintiff suing in warranty "must be in privity of contract with the defendant." *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005); *Cruz v.*

---

[9]      The Omnibus Complaint also includes a claim for "redhibition" on behalf of "Louisiana Plaintiffs" (Count IX), but redhibition requires a showing that the allegedly defective product—here, drywall—failed for its intended purpose. *See Benoit v. Ryan Chevrolet*, 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). This theory is conclusively barred by this Court's prior determination that the drywall is "serving its intended structural purpose." MDL No. 2047 Order & Reasons at 23. Moreover, Plaintiffs' claims are Florida-based.

*Mylan, Inc*., No. 8:09-CV-1106-T17-EAJ, 2010 WL 598688, *2 (M.D. Fla. Feb. 17, 2010) (same). Plaintiffs, however, never contracted with Shoma Development; they acquired their homes from third parties. *See supra*. at Section III.E; *T.W.M. v. Am. Med. Systems, Inc*., 886 F. Supp. 842, 844 (N.D. Fla. 1995) (explaining the concept of privity). Without a showing of contractual privity with Shoma Development, Plaintiffs' express and implied warranty claims cannot survive.[10] *See, e.g., Borchardt v. Mako Marine Intern., Inc*., No. 08-61199-CIV, 2009 WL 3856678, *4 (S.D. Fla. Nov. 17 2009) (dismissing warranty claims where there was "no allegation … to establish that there [was] privity of contract").

> b. *Plaintiffs cannot maintain their claims for breach of warranty of merchantability or of fitness for a particular purpose.*

Aside from Plaintiffs' lack of privity with Shoma Development, the claim for implied warranty of fitness for a particular purpose cannot survive because Plaintiffs cannot allege that the drywall in their homes was unfit for a particular or unusual purpose different from that for which drywall is ordinarily used. The Court has already determined that "[t]he Chinese drywall stands just as any other functioning drywall, serving its intended structural purpose." *In re Chinese Manufactured Drywall Products Liability Litig*., 680 F. Supp. 2d 780, 799 (E.D. La. 2010) (emphasis added) [11]. This adjudicated fact is, by itself, fatal to the claim for breach of the

---

[10] To be sure, the Omnibus Complaint asserts – without a shred of detail – that the Plaintiffs (along with every other plaintiff in this lawsuit) "were in privity" with Shoma Development or were "foreseeable third party beneficiaries of any warranty." Cmplt. ¶¶ 75, 95. These are classic unsupported legal conclusions that this Circuit has long classified as inadequate to survive a motion to dismiss. *See Arias-Benn v. State Farm Fire & Cas. Ins. Co*., 495 F.3d 228, 230 (5th Cir. 2007) (reaffirming that Fifth Circuit does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" in resolving Rule 12(b)(6) challenges) (internal marks and citation omitted); *see also Fed. Ins. Co. v. Bonded Lightning Protection Sys., Inc*., No. 07-80767-CIV, 2008 WL 5111260, *7 (S.D. Fla. Dec. 3, 2008) (dismissing third-party-beneficiary claim where complaint failed to allege that contracting parties intended contract to benefit third party).

[11] This case applies by its terms to all drywall MDL cases pending before the Court, including this one.

implied warranty of fitness for a particular purpose.[12]

      c.    *Plaintiffs have not stated claims for breach of the implied warranty of fitness and merchantability pursuant to Florida Statutes Section 718.203.*

Section 718.203, Florida Statutes (the "Florida Condominium Act" or the "Act") pertains to implied warranties granted by "developers" and "contractors" to purchasers of condominium properties in the State of Florida. However, whether, and to what extent, the warranties in Section 718.203 apply to each particular defendant depends entirely on whether such defendant is a "developer" under that statute, or a "contractor" under that statute.

In the Omnibus Complaint, Plaintiffs allege that, pursuant to "Section 718.203(16)"[13], Florida Statutes, the various builders <u>and</u> developers of the properties at issue should all unilaterally be deemed "developers" of the properties for purpose of the statute, regardless of their actual (or, in this case, lack of) involvement in the property. *See Cmplt.*, ¶ 85. However, Plaintiffs' attempt to lump all the various developer and builder (i.e., contractor) defendants into the same category without any factual basis whatsoever is without merit and fails to state a claim upon which relief can be granted.

Section 718.203(1) applies to "developers" and provides, in pertinent part, that a developer of a condominium shall be deemed to have granted the purchaser of each unit an implied warranty of fitness and merchantability as follows:

(b) As to the personal property that is transferred with, or appurtenant to, each unit, a warranty which is for the same period as that provided by the manufacturer of the personal property, commencing with the date of closing of the purchase or

---

[12]    *See Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding dismissal of particular purpose warranty claim where plaintiff did not "allege a particular or unusual use different from the purpose for which the item sold was ordinarily used"); *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

[13]    There is no "Section 718.203(16)". However, Section 718.103(16) states that the term "developer" means "a person who creates a condominium or offers condominium parcels for sale or lease in the ordinary course of business."

the date of possession of the unit, whichever is earlier.

(c) As to all other improvements for the use of unit owners, a 3-year warranty commencing with the date of completion of the improvements.

(d) As to all other personal property for the use of unit owners, a warranty which shall be the same as that provided by the manufacturer of the personal property.

(e) As to the roof and structural components of a building or other improvements and as to mechanical, electrical, and plumbing elements serving improvements or a building, except mechanical elements serving only one unit, a warranty for a period beginning with the completion of construction of each building or improvement and continuing for 3 years thereafter or 1 year after owners other than the developer obtain control of the association, whichever occurs last, but in no event more than 5 years.

(f) As to all other property which is conveyed with a unit, a warranty to the initial purchaser of each unit for a period of 1 year from the date of closing of the purchase or the date of possession, whichever occurs first.

Similarly, Section 718.203(2) applies to "contractors" and provides, in pertinent part, that the contractor, and all subcontractors and suppliers, grant to the developer and to the purchaser of each unit implied warranties of fitness as to the work performed or materials supplied by them as follows:

(a) For a period of 3 years from the date of completion of construction of a building or improvement, a warranty as to the roof and structural components of the building or improvement and mechanical and plumbing elements serving a building or an improvement, except mechanical elements serving only one unit.

(b) For a period of 1 year after completion of all construction, a warranty as to all other improvements and materials.

In the instant case, Shoma Development is neither a developer or a contractor of the Plaintiffs' properties.  But, even if it were, Plaintiffs must state the grounds of their entitlement to relief and provide sufficient facts so that a proper defense can be prepared.[14]  Count V, however, simply contains a laundry list of each of the warranties provided under Section 718.203

---

[14]    Shoma Development is not a "developer."  It did not develop, build or sell any of the Plaintiffs' homes and therefore did not give Plaintiffs *any* warranty.

without identifying which specific statutory warranty provision (and warranty period) allegedly applies to Plaintiffs' claim.

Plaintiffs have also failed to allege facts showing that the alleged drywall defects manifested within any of the applicable warranty period.  "[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects - defects that may exist before, but typically are not discovered until after, the expiration of the warranty period." *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (3d Cir. 1992) (citing numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period but did not manifest until after warranty period had expired); *see Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 616-617 (3d Cir. 1995) ("[L]atent defects discovered after the term of the warranty are not actionable." (citation omitted)); *see also Brisson v. Ford Motor Co.*, 349 Fed. Appx. 433, 434 (11th Cir. 2009) (affirming dismissal of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period") (Florida law); *accord McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488-T-17EAJ, 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009) (holding that statute of limitations for warranty claim "cannot begin to run later than the expiration of the warranty as the warrantor did not expressly agree to provide warranty coverage beyond this date"); *Ocana v. Ford Motor Co*., 992 So. 2d 319, 324 (Fla. 3d DCA 2008) ("[T]here can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms.").  As such, Count V should be dismissed.

G.     **Plaintiffs Cannot State a Claim for Private Nuisance (Count XI).**

The private nuisance claim (Count XI) would fail even if it were not barred by the economic loss rule.  An action for private nuisance requires the claimant to establish an injury to

his or her own property <u>in connection with the use of the real property of someone else</u>.  *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").

The Plaintiffs, however, do not allege that their purported injuries resulted from real property owned by someone else.  To the contrary, the nuisance claim is predicated entirely on the allegation that certain conditions existing on the "structures owned by Plaintiffs" are to blame.  Cmplt. ¶ 137.  That allegation simply does not state a claim for private nuisance.  *See, e.g., Morgan v. W.R. Grace & Co*., 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the Plaintiffs'] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").  As stated by the Fifteenth Judicial Circuit of Florida in its November Omnibus Order (**Ex. B**) dismissing all Chinese drywall Plaintiffs' private nuisance claims against builders in that Circuit, "neither [Florida] case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance"); *see also In re: Chinese Drywall Litig.*, No. 10- 28090 (Fla. 17th Jud. Cir. Feb. 4, 2011) (adopting the reasoning of the Omnibus Order and holding that "[t]his Court finds Judge Kelley's ruling [in *Bennett*] to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case.") (attached as **Exhibit T**).  As such, Count XI should be dismissed in its entirety.

**H.      Plaintiffs Cannot Bring a Claim for Unjust Enrichment (Count XII).**

Plaintiffs' unjust enrichment claim (Count XII) also fails.  First, the elements of unjust enrichment are that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Commerce Partnership 8098 Ltd. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

Plaintiffs' unjust enrichment claim stumbles on the first of these elements.  The first element is not satisfied because Plaintiffs cannot show that they "conferred a benefit" on Shoma Development.  Plaintiffs did not pay Shoma Development a single dime. Shoma Development never owned Plaintiffs' homes at any time and had nothing to do with their construction. Plaintiffs purchased the homes from third parties.  *See supra*. at Section III.E.   In short, Plaintiffs, in other words, did not "enrich" Shoma Development in any sense.  Thus, Plaintiffs' claim for unjust enrichment is barred.

**I.      The Omnibus Complaint Fails to State a Claim Under Florida's Deceptive and Unfair Trade Practices Act (Count XIII).**

In the overbroad style that is the hallmark of the Omnibus Complaint, Plaintiffs also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*. ("FDUTPA").   Cmplt. ¶ 148.   A FDUTPA claim comprises three distinct elements:  (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages."  *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  "In light of this trend, claims arising under the FDUTPA must be pled with particularity."  *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc*., No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).  At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  *Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard.  Indeed, it alleges no specific facts in support of Plaintiffs' FDUTPA claim.  *See* Cmplt. ¶¶ 147-151. Not only did Shoma Development have nothing to do with the development, construction or sale of Plaintiffs' homes, Plaintiffs do not identify a single instance in which Shoma Development – by its words or conduct – deceived Plaintiffs or treated them unfairly.  Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b).  *See Florida Digital Network, Inc. v. N. Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege

"specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[15] Accordingly, Count XIII must be dismissed.

**J.      Plaintiffs' Claim for Equitable Relief and Medical Monitoring (Count XIV) Cannot go Forward against Shoma Development.**

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XIV).  This hybrid, catchall-type claim seeks, among other things, an order that Shoma Development "buy back or rescind" its contracts and "create, fund, and support a medical monitoring program."  Cmplt. ¶ 154.  Like all of the other claims raised by Plaintiffs, this claim also cannot survive dismissal.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based.  Because Plaintiffs' substantive claims are due for dismissal, so too are their derivative claims for injunctive relief.  *See*, *e.g.*, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support for an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiffs have failed to state more than a conclusory allegation regarding the availability of an adequate legal remedy or how Plaintiffs would suffer irreparable harm.  Injunctions under both

---

[15]      Plaintiffs' FDUTPA claim would be inadequately pled even if Rule 9(b) did not apply.  A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly" and for a 'deceptive and improper purpose.'"  *Infinity Global, LLC v. Resort at Singer Island, Inc*., No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

federal and Florida law require these elements. *See*, *e.g.*, *Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted). Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory and statutory damages" – are inadequate or why Plaintiffs should be entitled to the extraordinary remedy of an injunction. *See*, *e.g.*, *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," at the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is defined as the cost of periodic medical examinations necessary to detect the onset of physical harm. *Id.*

The Omnibus Complaint does not even attempt to properly allege these elements. Instead, Count XIV sets forth a series of legal conclusions—*e.g.*, "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct"—

{20328708;7}

21

without a shred of factual detail.  Plaintiffs fail to identify an actual medical condition that they have developed due to their drywall; nor do they identify that supposed condition.  <u>Plaintiffs do not even claim to be ill</u>.  Yet, they would have this Court speculate about imaginary ailments and the means for monitoring them.[16]

The Complaint, in other words, does not actually state a claim for medical monitoring.  It states a series of legal conclusions, and those obviously "do not suffice."  *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate).  The glaring deficiencies highlighted above make the final Count subject to dismissal now, on the pleadings. *See Jacobs v. Osmose, Inc*., No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc*., 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc*., 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

---

[16]   The Omnibus Complaint not only does not name a single medical condition caused by the allegedly defective drywall, it fails to identify a medical procedure that could monitor or treat such condition.  *See Petito v. A.H. Robins Co., Inc*., 750 So. 2d 103, 106 (Fla. 3d DCA 1999) (setting forth seven elements for cause of action for medical monitoring).

## IV.  CONCLUSION

For the reasons stated in the Motion and this Memorandum of Law, Defendant Shoma Development Corp. respectfully requests that the Court enter an order dismissing the claims against it pursuant to Fed. R. Civ. Pro. 12(b)(6), and awarding Shoma Development Corp. its attorneys' fees and costs in defending this action pursuant to Florida's Deceptive and Unfair Trade Practices Act.

Dated:  October 31, 2011                    Respectfully submitted,


                              **AKERMAN SENTERFITT**
                              _____/s/ Stacy Bercun Bohm_____
                    BY:   Stacy Bercun Bohm (Fla. Bar No. 022462)
                              Las Olas Centre II, Suite 1600
                              350 East Las Olas Boulevard
                              Fort Lauderdale, Florida 33301-2229
                              Telephone: (954) 463-2700
                              Telecopier: (954) 463-2224
                              Email:  stacy.bohm@akerman.com
                              *Attorneys for Shoma Development Corp*

                                   *- and –*

                              **SHOMA DEVELOPMENT CORP.**
                    BY:   _____/s/ Frank Silva_____
                              Frank Silva (Fla. Bar No. 925888)
                              3470 N.W. 82nd Avenue Suite 988
                              Miami, Florida 33122
                              Telephone: (786) 437-8674
                              Telecopier: (786) 437-8606
                              Email: fsilva@shomagroup.com
                              *In-House Counsel, Shoma Development Corp*
                              .

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing *Memorandum of Law in Support of Shoma Development Corp.'s Motion to Dismiss With Prejudice the Claims Brought Against it in the Haya Class Action Complaint (Omni IX)* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA  70163 (kmiller@frilot.com), by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 31st day of October, 2011.

_____/s/ Stacy Bercun Bohm_____

{20328708;7}

24