# EXHIBIT "N"

CFN 2007R0285987
OR Bk 25464 Ps 1971 (1ps)
RECORDED 03/20/2007 13:59:57
DEED DOC TAX 1,620.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

THIS INSTRUMENT PREPARED BY AND RETURN TO:

ODALYS GARCIA
THE GREATER TITLE SERVICES, INC.
5835 BLUE LAGOON DRIVE # 101
MIAMI, FLORIDA 33126

Property Appraisers Parcel Identification (Folio) Numbers:
04-2028-001-0380/0381/0370/0390
Grantee SS #:

_____SPACE ABOVE THIS LINE FOR RECORDING DATA_____

THIS WARRANTY DEED, made the 9th day of March, A.D. 2007 by SHOMA HOMES SPLENDIDO, INC., A FLORIDA CORPORATION herein called the grantor, to GILIAM ENRIQUE VILLALOBOS, UNMARRIED

whose post office address is 8129 W 36TH AVENUE # 4 HIALEAH, FLORIDA 33018, hereinafter called the Grantee: *(Wherever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations)*

W I T N E S S E T H: That the grantor, for and in consideration of the sum of TEN AND 00/100'S ($10.00) Dollars and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the grantee all that certain land situate in MIAMI-DADE County, State of Florida, viz:

Condominium Unit No. 199, in Building 32, of SHOMA HOMES SPLENDIDO, a Condominium, according to the Declaration thereof, as recorded in Official Records Book 24177, at Page 2205, and all amendments thereto, of the Public Records of Miami-Dade County, Florida.

TOGETHER, with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

TO HAVE AND TO HOLD, the same in fee simple forever.

AND, the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land, and hereby warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to December 31, 2006.

IN WITNESS WHEREOF, the said grantor has signed and sealed these presents the day and year first above written.

Signed, sealed and delivered in the presence of:

Witness #1 Signature

Lidia Perez
Witness #1 Printed Name

Witness #2 Signature

Caridad Perez
Witness #2 Printed Name

SHOMA HOMES SPLENDIDO, INC., A FLORIDA CORPORATION

BY: _____ L.S.
MELISSA SIRES-GARCIA, CLOSING DIRECTOR
5835 BLUE LAGOON DRIVE #400, MIAMI, FL 33126

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing Instrument was acknowledged before me this 9th day of March, 2007 by MELISSA SIRES-GARCIA, CLOSING DIRECTOR of SHOMA HOMES SPLENDIDO, INC., A FLORIDA CORPORATION on behalf of the corporation. He/she is personally known to me.

SEAL

My Commission Expires:

Notary Signature

Lidia Perez
Printed Notary Signature

File No.: 06-1302

# EXHIBIT "O"

Building
# 32.

# CERTIFICATE OF OCCUPANCY
## CITY OF HIALEAH, FLORIDA
### BUILDING DIVISION

01028
$ 106.00 PAID

PERMIT # 2005-5518   ISSUED BY _____   DATE 2-28-07

Owner, agent or tenant of building _____

Lot_____ Block_____ Subdivision _____

Address ___8 29th _____ Ave ____ Hialeah _____

Approved Occupancy Use _____

Remarks: FPL 5078 _____

The Certificate of Occupancy is issued to the above-named applicant for building at above-named
location only upon the express condition that the applicant will abide by and comply with all
provision of Zoning Ordinance and all Ordinances or Building Codes of the City of Hialeah pertaini
to the erection, construction, alteration, remodeling or use of building or structures.

# EXHIBIT "P"

ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER, FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A BUYER OR LESSEE.

ANY PAYMENT IN EXCESS OF 10 PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.

## PURCHASE AGREEMENT FOR
## SHOMA HOMES SPLENDIDO, A CONDOMINIUM

This Purchase Agreement (this "Agreement") is made as of the _10_ day of _July_, 20 _01_. In this Agreement, the words, I, me, my, mine and Buyer mean the buyer or buyers listed below who have signed this Agreement. The words you, your, Seller and Developer mean Shoma Homes Splendido, Inc., a Florida corporation. The words we, us and our mean all parties to that Agreement. The term Condominium means Shoma Homes Splendido, a Condominium to be located at West 36th Avenue and West 80th Street, Hialeah, Miami-Dade County, Florida. If the first letter of a word is capitalized in this Agreement, that word will have the meaning given to it in this Agreement or, if not defined in this Agreement, the word will have the meaning given to it in the Condominium Documents (as defined in Paragraph 9 of the Agreement). Where the words "this Agreement" are used, they shall include in their meaning all modifications, riders, and addenda to it signed by you and me, all of which are incorporated into (that is, made a part of) this Agreement.

Buyer(s): _Maxima Arves_          (SS # _____

_Caroline B. Arveo_          (SS # _____

Address: _6201 NW 114 PL #246_

City: _Miami_          State: _FL  33178_

Address to which all notices are to be sent, if different:

_____

Home Phone #: _305-397-6389_          E-Mail Address: _(305) 232-1144_

Business Phone #: _(786) 266-1578_          Business Phone #: _____

Telefax #: _____          Cell Phone #: _____

This Agreement contains our respective legal rights and obligations concerning the sale by you and purchase by me of a fee simple interest in the Condominium Unit identified below. I understand that this Agreement is intended to be legally enforceable and binding upon each of us, and that I should consult a lawyer before I sign this Agreement.

1. **The Property.** You agree to sell and I agree to purchase the following:

MODEL _D_

Unit No(s) _201/32_ of Shoma Homes          PURCHASE PRICE
Splendido, a Condominium          $ _304,990_

Unit No. address _____

Location Premium          $ _2,000_

Extras which are included in the Purchase Price          $ _____

TOTAL PURCHASE PRICE          $ _306,990_

Revised contract, original contract will supersede _6/18/05_
For all terms and conditions. Original contract date _____
{M22204725}
Splendido

_adding daughter to contract_

Initials _____
Initials _____

In this Agreement, the Unit is sometimes referred to together as the "Property." The Unit (is) (is not) substantially completed and ready for occupancy.

    2.    **Payment of Purchase Price.** I agree to pay the Total Purchase Price identified in Paragraph 1 above (the "Purchase Price") in the time and manner set forth below:

| PAYMENT | DUE DATE | AMOUNT |
|---|---|---|
| Existing Deposit | Previously paid | $_____ |
| Additional Deposit | Upon execution of this Agreement | $ *15,312* — |
| Additional Deposit: | By: *8/18/05* | $ *15,312* — |
| Additional Deposit: (If Buyer is proven to be buying the Property for investment purposes and not for Buyer's residence the deposit will be automatically increased to 10% of the Purchase Price and the Mortgage Amount will be automatically decreased accordingly.) | By:_____ | $_____ |
| Mortgage Amount | | $ *276,366* — |
| Name of approved Lender: Continental Trust Mortgage Company | | |
| Balance of Purchase Price due at Closing (excluding closing costs) | | $_____ |
| Total Purchase Price | | $ *306,990* |

    I will pay the balance of the Purchase Price at closing in the form of a cashier's check. You have the right to require that the cashier's check be drawn on a bank or lending institution doing business in Miami-Dade County, Monroe County or Broward County, Florida. I understand the balance of the Purchase Price due at closing may vary because it is subject to the prorations and adjustments which will be described later in this Agreement.

    I understand and agree that all of my obligations under this Agreement, including my obligations to close my purchase of the Property on the date set forth herein and my obligation to pay all sums which I am required to pay hereunder on the dates and in the amounts set forth herein, are not contingent upon my obtaining a mortgage loan. I understand that I will not be released from any of my obligations hereunder or granted any extension of time for closing due to any delay, inability or failure on my part in obtaining a mortgage loan.

    2 A.    **Mortgage Provisions.**

    If a portion of the Purchase Price is to be paid out of the proceeds of a mortgage loan and the name of the Lender has been inserted in Paragraph 2, and I apply for a mortgage loan with the approved Lender for a loan amount equal to or less than the amount inserted in the line in Paragraph 2 entitled "Mortgage Amount" then this Agreement will be subject to and/or conditioned upon my obtaining a mortgage commitment in the amount specified in Paragraph 2 on the line adjacent to the words "Mortgage Amount". If I do not apply for a mortgage loan with an approved lender for an amount equal to or less than the amount filled in the line entitled "Mortgage Amount" then this Agreement is a cash sale and is not subject to and/or conditioned upon my obtaining a mortgage commitment in the amount specified in Paragraph 2. In any event you will not be responsible for obtaining any approvals and will not be required to supply any plans, information or documentation which may be required by an unapproved Lender and your failure or refusal to obtain or supply same shall not be a default by you, and shall not alter my obligations hereunder. If, as set forth hereinabove, this Agreement is subject to and/or,

conditioned upon my obtaining a mortgage commitment, then the following provisions shall apply:

(a) Within seven (7) days after the date of this Agreement, I shall complete, pay all fees and charges and file an application for a mortgage loan with the Lender named in Paragraph 2 hereof for the Mortgage Amount specified in Paragraph 2 (or a lesser amount) or another lender approved in writing by Seller. I shall, within five (5) days of request by Lender, promptly, completely and truthfully supply all information, complete and execute all documents which are required by the Lender in connection with our mortgage loan application. If I obtain a mortgage commitment which is contingent in any respect, I shall be responsible for satisfying all said contingencies within forty-five (45) days after the date of this Agreement or such shorter period of time as may be required by Lender.

(b) I shall notify you in writing within five (5) days of notice from Lender that our application has been accepted or rejected. If within forty-five (45) days after the Effective Date of this Agreement, I have not obtained a mortgage commitment from the approved Lender I must notify you in writing within five (5) days after the expiration of this forty-five (45) day period that I have not obtained a mortgage commitment.

If I have been rejected by the Approved Lender within this forty-five (45) day period and I give you written notice of this fact within five (5) days of my rejection or if I have not heard from my Lender within the forty-five (45) day period and I give you notice of this fact, at your option, you may: (i) invoke the provisions of Subparagraph (c) of this Paragraph immediately following; or (ii) you may request that I execute a "Cash Purchase Addendum" to this Agreement, and, if I fail to execute the Cash Purchase Addendum within ten (10) days notice of your request, you will terminate the Agreement and the provisions of Subparagraph (c) of this Paragraph immediately following shall apply to such termination.

(c) If I comply with all the above requirements but I am unable to obtain a mortgage commitment from Lender and I have given you timely notice as specified in this Agreement of this inability, you may, at your sole option, if I have not yet been rejected by Lender, give me an additional period of time to qualify for a mortgage with the same Lender which additional period of time is specified in writing by you or you may request that I reapply for a mortgage loan with another lender, selected or provided by you. In such event, the above-listed provisions will apply to our reapplication. If you do not request that I reapply with another lender, or if our reapplication after complying with all the above listed requirements, is rejected and timely notice is given to you, you may, in your sole discretion: (i) issue a commitment to provide me with a mortgage at the prevailing rates and terms applicable at closing; or (ii) terminate this Agreement and refund all deposits already paid by me, less $250.00 administration fee and less full payment for extras, options, upgrades and other special selections made by Buyer, the prices of which are agreed to be non-refundable under any circumstances.

(d) If I fail to strictly comply with any of the above referenced requirements; or If I am unable to obtain a firm mortgage commitment because of an adverse change in my personal or financial condition after the date of this contract; or if I fail to notify Lender within five (5) days after the initial forty-five (45) day period after the date of this Agreement, that I have not obtained a mortgage commitment; or if I request the Lender to reject me or withdraw any commitment; or, if the Lender withdraws my approval for any reason after approving me I will not be entitled to terminate this Agreement and you may deem me to be in default under this Agreement or, at your option, the mortgage contingency may be deemed removed and this Agreement shall proceed as a cash sale.

(e) If required by Lender (or by you, if you provide me with a mortgage loan); (i) if I am married, my spouse will join in my mortgage loan application and will execute all mortgage documents; (ii) if I am a corporation, partnership or other entity, my principals and their spouses will join in my mortgage loan application and execute a guaranty of the mortgage loan; and/or (iii) if my mortgage loan application is approved requiring a co-signer, the co-signer will execute all mortgage documents. Even though one of these persons may have executed this Agreement, I must procure compliance with provisions of this paragraph or you may deem me to be in default of this Agreement.

Initials
Initials

(f) Prior to closing, I shall satisfy any liens or judgments against me that might take priority over Lender's mortgage or that are required to be satisfied by Lender, and if I fail to do so, I will be deemed in default of this Agreement.

(g) The mortgage that I apply for will be in the amount indicated in Paragraph 2 and will provide for an interest rate, payment terms and other conditions which are prevailing on the date of closing or otherwise established or agreed to by Lender. I understand that any information as to interest rates or mortgage terms disclosed to me by you are merely informational and may change at any time; you are not bound by any such informational disclosures unless set forth in this Agreement.

3. **Additional Amounts Due at Closing.** In addition to the Purchase Price I agree to pay the following amounts at closing:

(a) Closing Costs.

All costs related to or incurred by Developer, closing agent, title company and/or title agent in connection with the following: (i) Florida Documentary Stamps required to be affixed to the deed of conveyance, (ii) my owner's title insurance policy (ALTA Form B) which will be delivered to me after closing, (iii) recording costs, indexing, abstracting and any similar fees charged on the recording of the deed of conveyance, (iv) title searches and updates, (v) tax searches, (vi) lien searches, (vii) any closing fee actually charged by the closing agent, (viii) actual costs of copies, faxes and/or couriers, (ix) your legal fees or other fees actually charged for preparing the conveyance and other closing documents and (x) other miscellaneous closing expenses to be itemized on the Closing Statement at Closing (the foregoing are collectively referred to as "Closing Costs"). Closing shall take place at a location designated by Developer. Developer shall also designate the title company; provided, however, that if this transaction is subject to the requirements of the Real Estate Settlement Procedures Act, I may elect to give you notice that I have chosen a title company to write the title insurance and that I will pay for it myself together with the remainder of the Closing Costs. I understand that you are not responsible to pay any portion of the Closing Costs, and that the payment of the Closing Costs are my sole responsibility. I understand that if I choose the title company, you still have the right to designate the location of the Closing, and to have your attorney prepare the conveyance documents and that my electing to have a different company issue this policy may result in additional costs to me.

(b) Working Capital Fund:

A sum payable to the Shoma Homes Splendido Condominium Association, Inc. (the "Association") which represents a contribution to a working capital fund equal to one (1) monthly installment of maintenance assessments for the Unit. In the event that you have already paid the contribution for my Unit to the Association, I agree to reimburse you for such amount. I understand that the purpose of the working capital fund is to enable the Association to meet unforeseen expenses or to acquire additional equipment or services deemed necessary or desirable by the Association and that this contribution is not an advance payment of regular assessments.

(c) Condominium Maintenance Assessment:

A portion of the monthly condominium maintenance Assessment due upon the Unit prorated from the date of closing to the end of the assessment period in which closing occurs, and if closing occurs within fifteen (15) days from the end of the month, the monthly maintenance Assessment for the following month.

(d) Utility Connection Fees or Deposits:

Utility connection fees, hook up fees, installation charges or deposits, if any, which you may have paid prior to closing in order to obtain utility service for the Unit. I may be required to pay a fee for the connection of the security service, if any, in the Unit.

Initials
Initials

(e) Surtax:

In the event that the County or any political subdivision thereof adopts rules or regulations requiring the payment of a documentary surtax stamp tax which would become due in connection with the recordation of my Deed (as hereinafter defined), I agree that I will pay this cost.

(f) Real Estate Taxes:

Real estate taxes assessed against the Unit (allowing for any discount that is available if taxes are paid in November) and any other expense applicable to the Unit prorated as of the date of closing. If the actual real estate tax bill is not available at the time of closing, real estate tax prorations will be based upon your estimate of what the tax bill will be and will allow for any discount that is available if the taxes are paid in November when the actual tax bills become available. If closing occurs in a year in which taxes are assessed on the Condominium Property or on a Building or Buildings within the Condominium Property rather than on a Unit by Unit basis, I will pay to you at closing your estimate of what my prorata share of taxes will be and you will pay the taxes for the year. Either of us will be entitled to have the prorations readjusted by notifying the other party in writing if the actual bill is different from your estimate. Within thirty (30) days after readjustment; whoever owes money to the other will make the required payment.

### PROPERTY TAX DISCLOSURE

BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

I understand that the prorations may increase or decrease the balance of the Purchase Price that I owe at closing.

4.    **Deposit Held In Escrow.**  The Escrow Agent for the Condominium is The Greater Title Services, Inc., a Florida corporation, which will be sometimes called the "Escrow Agent" and the address of which is 5835 Blue Lagoon Drive, Suite #101, Miami, Florida 33126. My deposit will be held by the Escrow Agent or used by you for the construction of the Condominium, subject to the terms of the Escrow Agreement for the Condominium between the Escrow Agent and you. I acknowledge that I have received a copy of the Escrow Agreement as an attachment to my Offering Circular for the Condominium. I understand and agree that you are permitted by this Purchase Agreement, the Escrow Agreement, and Chapter 718 of the Florida Statutes, to use all of my deposits in excess of ten percent (10%) of the Purchase Price for the construction of the Property for the construction of the Condominium. I also understand and agree that you will be permitted to use all of my deposits (including the first 10%) for the construction of the Condominium if you establish an irrevocable letter of credit or other assurance acceptable to the Division of Florida Land Sales, Condominiums and Mobile Homes to ensure that sufficient funds will be available to refund my deposits to me if I am ever entitled to receive such a refund. You agree that my deposits will not be used for any purpose other than the construction of the condominium. Execution of this Agreement by me constitutes my direction to and authorization of  the delivery of the Deposit by the escrow agent then holding such deposit to the Escrow Agent.

If I request it, the Escrow Agent will give me a receipt for all of my deposit. At closing, you will be entitled to receive all of my deposit that the Escrow Agent holds at that time.

5.    **Title to the Property.**  My ownership of the Property is referred to as "title." At closing, you will transfer title to the Property to me by Special Warranty Deed (the "Deed"). I will acquire title exactly as my name appears on the first page of this Agreement. You agree that prior to closing you will deliver to me a title insurance commitment issued by a title insurance

Initials
Initials

company authorized to do business in the State of Florida agreeing to issue to me a policy of title insurance insuring that title to the Property is good, marketable and/or insurable subject only to the following:

(a) the restrictions, covenants, conditions, assessments, terms and other provisions imposed by the documents contained or referred to in the Condominium Documents, as described in Paragraph 9 (and any other documents which you, in your sole discretion, believe to be necessary or appropriate), which are recorded by you now or at any time after the date of this Agreement in the public records, and all amendments to any of such documents;

(b) pending governmental liens or public improvements or matters arising from or connected with any applicable community development or special taxing district;

(c) the rights of the United States Government and the State of Florida respecting navigable waters and artificially filled-in lands;

(d) conditions, limitations, reservations, dedications, restrictions and easements of record;

(e) rights-of-way, covenants and easements heretofore or hereafter created in favor of municipalities, public and private utilities, and you for the installation of utilities, lines, mains, pipes, poles, wires, tunnels, canals, and the like, together with the right of access to service the same;

(f) applicable zoning restrictions and regulations;

(g) my mortgage, if any;

(h) the standard printed exceptions contained in the title insurance policy; and

(i) taxes and assessments for the year of closing and subsequent years.

You and I agree that none of the matters described above in this Paragraph will prohibit or prevent my use of the Property for its intended purpose described in the Offering Circular.

If you cannot provide the quality of title described above, you will have a reasonable period of time (at least ninety (90) days after I give you written notice of an objection to title) to correct any defects in title which defects would render title unmarketable, but you are not obligated to do so. If you can't or elect not to correct the title defects, I will have two options:

(i) I can accept title in the condition you offer it (with defects) and pay the full Purchase Price for the Property. I will not make any claims against you because of the defects; or

(ii) I can cancel this Agreement and receive a full refund of my deposits. You will be relieved of all obligations under this Agreement when you refund my deposits to me.

At the same time I receive my Deed, I agree to pay the balance of the Purchase Price and any additional amounts I owe under this Agreement. Until all sums have been received by you and cleared, you will be entitled to a vendor's lien on the Property. Also, if you do not receive all of the fund, I am required to pay or have paid to you at closing, or if those funds have not cleared, I will not be entitled to take possession of the Property until all funds have been received and have cleared.

6. **Completion Date.** You estimate that completion of construction of my Unit will be within two (2) years from the date of signing this Agreement. I acknowledge and agree, however, that this estimate is given to me for convenience only and is subject to change from time to time for any reason and without creating any liability to me. You do, however, agree to substantially complete construction of the Unit in the manner specified in this Agreement, by a date no later than two (2) years from the date I sign this Agreement, subject, however, to extensions equal to the period of time of delays caused by acts of God, the unavailability of

{M2220472;5}
Splendido

6

materials, strikes, other labor problems, governmental orders or other events which would support a defense based upon impossibility of performance for reasons beyond your control. If you do not complete construction of the Unit within two years from the date of this Agreement plus any extension period due to delays caused by events beyond your control, I will have the remedies provided in Paragraph 11 of this Agreement.

7.    **Closing.**  The term "closing" refers to the time when you deliver the Deed to the Property to me and ownership of it and the Property changes hands. I understand that you have the right to schedule the date, time and place for closing. Before the date of closing, however, you must obtain a temporary or shell certificate of occupancy (or its equivalent or other evidence of substantial completion) for the building in which the Unit is located from the proper governmental agency. If no such governmental certificate is issued, then a certificate of substantial completion of the shell from your architect will be required (and other references in this Agreement to certificates of occupancy shall be deemed to mean certificates of substantial completion).

I'll be given at least three (3) days' notice of the date, time and place of closing. You are authorized to postpone the closing for any reason and I will close on the new date, time and place you specify in your notice of postponement. A change of time or place of closing only will not require any additional notice period. You will have no liability to me for delaying or rescheduling the closing. I understand that I will not have the right to postpone the closing date for any reason.

Any formal notice of closing, postponement or rescheduling may be given orally, by telephone, telegraph, telex, telefax, e-mail, mail or other reasonable means of communication at your option. All of these notices to me will be sent or directed to the address, or given by use of the telephone or telefax or e-mail address specified on Page 1 of this Agreement unless you have received written notice from me of any change prior to the date your notice is given. These notices (other than a change of address) will be effective on the date given or mailed (as appropriate). An affidavit of one of your employees or agents stating that this notice was given or mailed to me will be conclusive.

If, after you notify me of the time and place for closing, I fail to close for any reason at that time and pay the balance of the Purchase Price and all other amounts that I owe under this Agreement, at your sole discretion, you will be entitled to do either of the following:

(a) you may treat my failure to close as a default, in which case you will have the rights set forth in Paragraph 11 of this Agreement; or

(b) you may agree to set another date for closing. If you elect to set another date for closing, I agree that all prorations and adjustments contemplated by this Agreement will be based upon the date originally set for closing. I also will be required to pay to you at closing the following additional sums of money:

(i)    interest at the maximum rate per annum permitted by law on the balance of the Purchase Price due at closing from the date originally set for closing until the date that closing actually occurs; and

(ii)   a late fee equal to One Thousand and 00/100 Dollars ($1,000.00) per month which will be prorated on a daily basis from the thirty-first (31st) day after the date originally set for closing until the date that closing actually occurs.

8.    **Construction of the Unit.**  If the Unit is not substantially complete, you agree that the Unit will be constructed in substantial accordance (in your opinion) with the plans and specifications for it kept in your construction office "on site." I acknowledge that you may, at any time, make any changes in your plans and specifications that you deem appropriate, as long as those changes do not, in your opinion, seriously and adversely affect the market value of the Unit or substantially alter the overall general layout of the Unit. These plans and specifications, as they may be from time to time amended by you, will be called the "Plans and Specifications."

Without limiting your general right to make changes, I agree that you will have the right, in your sole discretion, to change the dimension of rooms, patios and balconies (if any), the location of windows, doors, walls, partitions, utility (including, but not limited to, television

{M22204725}
Splendido

7

Initials
Initials

and telephone) lead-ins and outlets, air-conditioning equipment, ducts and components, lighting fixtures and electric panel boxes, provided that any such changes will not substantially alter the total interior floor area or the overall general layout of the Unit.

      I understand and agree that your ability to make the foregoing construction changes is due to the fact that it is a widely observed construction industry practice for preconstruction plans and specification for any unit or condominium to be changed and adjusted from time to time in order to accommodate ongoing "in the field" construction needs. These changes and adjustments are necessary in order that all parts of the Unit and the Condominium can be combined efficiently into a well-built and eye-pleasing residential structure. Accordingly, I acknowledge and agree that it is to the benefit of both of us to allow you this flexibility to make changes in the Unit and the Condominium; however, if you make any substantial changes in the interior dimensions of the Unit from the dimensions shown on the surveys and the site plans attached as exhibits to my Offering Circular which adversely affect the interior floor area or the overall layout of the Unit, I will have the right to cancel this Agreement.

      I further acknowledge and agree that although the Plans and Specifications on file with the applicable governmental authorities initially may be identical in detail to the Plans and Specifications, because of the day-to-day nature of the changes described in this Paragraph, such Plans and Specifications on file with applicable governmental authorities may not include some or any of these changes, there being no legal requirement to file every change with such authorities. Accordingly, I acknowledge and agree that the Unit and the Condominium may not be constructed in accordance with the plans and specifications on file with applicable governmental authorities. I further acknowledge that you disclaim and I waive any and all expressed or implied warranties that construction will be accomplished in compliance with such Plans and Specifications, except that you agree that the construction of the Unit and the Condominium will not deviate from such Plans and Specifications in any way which materially and adversely affects the safety of the Condominium or the Unit, substantially alters the total interior floor area or overall general layout of the Unit, or seriously and adversely affects the market value of the Unit. Your disclaimer will not limit the scope of Paragraph 12(b) of this Agreement. Notwithstanding the foregoing, any change to the Plans and Specifications which is required to be filed with the Florida Division of Land Sales and Condominiums (the "Division") under Chapter 718 of Florida Statutes and the rules promulgated thereunder, shall be filed with the Division.

      (a) Certain Items and Materials. I understand and agree that certain items (or, where appropriate, upgraded versions of such items) which may be seen in any models or in illustrations are not included within the sale of the Unit. These items include, but are not limited to, the following: wall coverings, paint colors, accent light fixtures, wall ornaments, drapes, blinds, furniture, nick-nacks and other decorator accessories, lamps, mirrors, graphics, pictures, plants, wall-hung shelves, sconces, kitchen accessories, linens, window shades, trellises, certain built-in fixtures, upgraded carpets or other floor coverings and colors, millwork, wood trip, other upgraded items, decorative walks and patios and their treatment (e.g., tile, brick, scored concrete or wood trim), benches, decking, planters, screening, landscaping, and any other items of this nature which may be added or deleted by you from time to time. Certain of these items may not even be available.

      This list of items (which is not all-inclusive) is provided to you as an illustration of the type of items built-in or placed upon the model or shown in illustrations solely for the purpose of decoration and example. These items will not be included in the Unit unless it is specifically so provided in a rider to this Agreement signed by both of us. If you do provide any of these or other items (even though you are not obligated to do so), I agree to accept them, although not requested by me, as long as I am not required to pay for them.

      I understand and agree that certain of the items to be included with the Unit are subject to size and color variances, grain and quality variations and may vary in accordance with price, availability, and other changes made by manufacturers from those shown in the models, in illustrations, and in the Plans and Specifications. I acknowledge and agree that circumstances may arise which, in your opinion, warrant changes as to suppliers, manufacturers, brand names or items. If these circumstances do arise, you may substitute equipment, material, appliances, etc., which, in your opinion, are of equal or greater value. I specifically acknowledge

that you have the right to substitute or change materials and/or stain colors utilized in wood decor.

I understand and agree that Seller does not assume responsibility for "defects, which are the result of characteristics common to the material used or conditions arising or resulting from condensation on, or expansion or contraction of materials, such as settlement cracks in exterior stucco." The foundation of a building is composed of reinforced concrete. Due to the natural shrinkage, which occurs in concrete as it receives its final set, it is inevitable that some cracks occur. These cracks do not affect the strength of the structure in any way. Unfortunately, settlement cracks in the foundation may result in hairline fractures of the tile surfaces when tile has been installed in a new unit. Because these cracks are a result of characteristics common to these materials, Seller cannot be responsible for such repairs. We acknowledge that Seller cannot be responsible for tile that has been discontinued. In addition, we acknowledge that Seller is not responsible for the repair of cracked tiles. We further acknowledge that tile grout will "cure" for the first sixty (60) days after installation and the grout will not initially match the samples as the color changes gradually over time. We acknowledge that Seller will not be responsible for slight color variations in grout.

If you allow me to select certain colors and/or upgrades in the Unit, I understand and agree that I must complete my color/upgrade selection within fifteen (15) days after the date of this Agreement. Selections are limited to the colors Developer has available. The Developer's representative will call me to set up the appointment. If I fail to complete my selections within the above time limit, I understand that you will make the choices at your sole discretion. I understand and agree that my selections are subject to change due to availability and all other provisions of this Agreement. Certain colors and stains may not be duplicated precisely as shown in displays or in the models. Sixty percent (60%) of the total amount of the color/upgrades chosen must be paid at the time of my color/upgrade selection. I will provide Developer with a mortgage commitment within thirty (30) days of the date of color/upgrade selection (and as otherwise required herein), which shows that I am qualified to finance the portion of extras and upgrades which Developer has allowed me (in its sole and absolute discretion) to finance (in addition to the Mortgage Amount). If I do not qualify for the financing color/upgrade selections chosen, I will pay in full, or the amount of the unpaid balance, for such selections immediately or Developer may cancel the color/upgrade selection(s). I also acknowledge that this Agreement is not contingent on me obtaining financing of color/upgrade selections I have chosen. All color/upgrade selections must be approved in writing and signed by you. The Developer may, at any time, restrict color/upgrade selections as a result of the status of construction or otherwise, in its sole and absolute discretion. Notwithstanding anything in this Agreement to the contrary, if I am purchasing a spec Unit, a Unit that has already been constructed, or a Unit that is in the process of being constructed, I will not select colors/upgrades for the Unit, and I must pay for and accept all selections already in the Unit. In all cases any unpaid charges for upgrades not paid before the closing must be paid by Buyer at closing.

(b) Energy Use and Insulation. The Unit and the Condominium will conform to the Florida Model Energy Efficiency Code for Building Construction. You have advised me, as required by the rules of the Federal Trade Commission, that you intend currently to install in the Unit the following insulation:

| Model | Location | Type | Roof Thickness | R-Value |
|-------|----------|------|----------------|---------|
| A | Building Roof | Blown Fiberglass/ Spray -on | 8¼ inches | R-19.0 |
| B | Building Roof | Blown Fiberglass/ Spray -on | 8¼ inches | R-19.0 |
| C | Building Roof | Blown Fiberglass/ Spray -on | 8¼ inches | R-19.0 |
| D | Building Roof | Blown Fiberglass/ Spray -on | 8¼ inches | R-19.0 |
| All Models | Exterior Walls/Blocks | Fi-Foil | | R-4.1 |

The R-value information is based solely on the information given to you by the appropriate manufacturers (based on the thickness listed) and I agree that you are not responsible for the manufacturers' errors. I understand that this information concerning the insulation you intend to use is subject to your general right, pursuant to the provisions of this

agreement, to make changes in the Plans and Specifications and to applicable limitations of your liability to me.

9.    **The Condominium Documents and the Association.** I acknowledge receipt from you, prior to my signing of this Agreement, of a copy of the Offering Circular for the Condominium (the "Condominium Documents"). This Section does not excuse Seller from providing Buyer with the Receipt for Condominium Documents required by Rule 61B-18.004, F.A.C. I agree to pay on time my share of the Assessments referred to in the Condominium Documents. I acknowledge and understand that the Association has been formed for the purpose of maintaining, operating and administering the Condominium. The Association has the right under the Condominium Documents to file a lien against the Property to secure the payment of my proportionate share of the maintenance Assessments described in the Condominium Documents. I understand that Common Expenses may vary from time to time depending upon costs of operation and services rendered, provided, however, that in the event the Common Expenses that the Unit Owners are assessed during the Developer's guarantee period referred to in Article 13.2 of the Declaration of Condominium increases beyond the guarantee amount (the "Guaranteed Level") for my Unit type during the Developer's guarantee period, then Developer is obligated to pay any increase in the amount of Common Expenses that the Unit Owners are assessed over the Guaranteed Level until the expiration of the Developer's guarantee period.

If this Agreement is canceled for any reason, I will return to you all of the Condominium Documents you delivered to me in the same condition I received them, reasonable wear and tear excepted. If I fail to return them, I will pay you $100.00 (to defray your costs of preparation, printing and delivery.)

10.    **Your Right to Continue Your Sales Program.** I understand that it is your intention that all of the Units in the Condominium will be sold, but that you have the right to retain (or reobtain) ownership, mortgage, sell or lease any unsold or previously sold Unit owned by you or by any affiliate or subsidiary of yours, and to do so to any person or entity, and, upon any terms which you choose. You will have the right to use any such Unit as a sales model or for the purpose of otherwise promoting or effecting sales of the Condominium Property. You will have the right, in accordance with your use of any Unit to promote sales in the Condominium, to enact and maintain and operate a construction office, signs, exhibits, displays, barriers, walks, lights, sound effects and the like, either indoors or outdoors, and anything else during the time and in the manner that you, in your opinion, deem advisable for the promotion and sale of such Units. You have the right to sell one or more of these Units to a person or persons in the business of selling, leasing or developing residential property. If you do so, you may also transfer your rights under this Paragraph to that person or persons. That transfer, however, will not diminish your rights under this Paragraph with respect to other Units which you own or acquire.

11.    **Defaults.**

(a) My Default. If I fail to complete the purchase of the Property on the scheduled closing date or if I fail to perform promptly any of my other obligations under this Agreement, I will be in default. If I am in default, you will have the right to cancel this Agreement and retain any deposits I have paid as your sole and exclusive remedy, together with any accrued interest on the entire deposit, if any, and all advance payments on options, upgrades and the like, as agreed and liquidated damages. If you cancel this Agreement and retain all or part of my deposit and accrued interest, and all advance payments on options, upgrades and the like, if any, because of my default, I agree that this is a fair and reasonable remedy because you have had to withdraw the Property from sale to the general public and you will have suffered damages which we cannot now determine with any certainty. If I default and cancel this Agreement, you will be free to sell the Property to someone else. I will have no further right, title or interest in the Property or in this Agreement. You will have no right of specific performance, nor to sue me for any other damages, and agree not to take any other action against me because of my default. If I default, I promise not to sue for the return of any part of my advance payments on options, upgrades and the like or for the return of my part of my deposit.

(b) Your Default. If you fail to close on the title to the Property pursuant to the terms and conditions of this Agreement and said failure to close is not due to either (i) my failure to comply with the terms and conditions of this Agreement, or (ii) your failure to render the title marketable, I will have all remedies allowed under applicable law

(c) If you fail to provide any item which you are required to provide by the Plans or Specifications, or otherwise, and this failure is your only default under the terms of the Purchase Agreement, I understand that the remedies described above will not be applicable and my only remedy against you will be to collect from you liquidated damages in the following amounts:

(i)   For items other than extra items as defined in subsection (ii) below, you will, at your option, provide and install the item or a substitute item of equal or greater value within a reasonable period of time, or pay me the reasonable cost of providing and installing such item or substitute item.

(ii)   If the item is an extra item (an extra item is an additional item or modification to the Property which I have separately contracted with you at a specific price to perform or install on the Property), then the amount of damages I will be able to receive will be limited to the amount I actually have paid you for the extra item.

The following two (2) sentences will supersede and take precedence over anything else in this Agreement which is in conflict with them:  This Agreement is entered into with the express assumption and intent that the sale of the Property is exempt from the Interstate Land Sales Full Disclosure Act by reason of the provisions of 15 U.S.C. § 1702(a)(2) (1961) (the "Exemption").  Accordingly, if, in order for the sale of the Property to qualify for the Exemption, there is some remedy (relative to your obligation to substantially complete construction of the Property as stated in paragraph 6) which is available to me under Florida law in the context of that obligation and which cannot be impaired in this Agreement without losing the Exemption, then everything in this Agreement which could impair or deny such remedy is hereby stricken and made null and void as if never a part of this Agreement.  For purposes of this paragraph only, the words "this Agreement" include in their meaning the Condominium Documents.

(d) Arbitration.  All disputes arising under this Agreement or pertaining to the Property shall be submitted to binding arbitration in Miami-Dade County, Florida to the American Arbitration Association as the sole and exclusive forum to resolve any dispute.  Buyer and Seller agree that no class actions shall be permitted in the event of any dispute.

12.   Covenants Subject to Change.  You have the right, subject to any applicable laws, to change the provisions of any covenant or document affecting the Property as set forth below:

(a) I acknowledge that you have the right to make changes in any of the Condominium Documents as permitted by Florida law.

(b) You will, however, notify me of these changes, and you will inform me that Florida law provides that if the changes materially alter or modify your offer to sell the Unit in a manner which is adverse to me, then I will have fifteen (15) days from the date of the notification of the changes to notify you that I have decided to cancel this Agreement.  If the change is material and I notify you of my decision to cancel this Agreement within the above time period, we will be relieved of all further obligations to each other under this Agreement and I will be entitled to a refund of my deposit.  If I fail to notify you within the 15-day time period, I understand that I will be unable to cancel this Agreement and will be deemed to have accepted the change or changes.  I understand that my only right if you make these changes will be the right to cancel this Agreement or and receive a refund of the deposit as described above, or accept these changes, and in no event will I have any other remedy against you I will not be permitted to prevent you, in your sole discretion, to make any such changes you wish.  I further understand that after closing, I will have no right or remedy against you for any change you have made in such Condominium Documents.

(c) I acknowledge and agree that if the changes do not materially alter or modify your offer to sell the Unit in a manner which is adverse to me, I will accept the changes and this Agreement, as modified by the changes, will remain a binding contractual obligation for both of us.

(d) I acknowledge that the budget of the Association which you have given to me is only a proposed budget, and that this budget is subject to change without notice to me at any time prior to close.

13.   **Warranty.**  You and I agree that all of the manufacturers' warranties which you receive for appliances and other items conveyed with the Property will be transferred to me.  I will be able to enforce such warranties against the manufacturer but only against you.

I understand and agree that all implied warranties of fitness and merchantability for the purposes or uses intended are governed by Section 718.203 of the Florida Statutes and, to the maximum extent lawful, that all other implied warranties of any kind or character are hereby specifically disclaimed by you.  As to any implied warranty which cannot be disclaimed entirely, all secondary, incidental and consequential damages are specifically excluded and disclaimed (claims for such secondary, incidental and consequential damages being clearly unavailable in the case of implied warranties which are disclaimed entirely above).

14.   **Inspection Prior to Closing.**  I will have no right to enter upon or occupy the Property prior to closing.  Possession will be given to me at closing.  I will be given an opportunity prior to closing, on the date and time scheduled by you, to inspect the Property with your representative.  You will notify me of the time and date of the inspection.  During the inspection, your representative and I will prepare a "punch list" of matters or items to be completed or corrected.  I acknowledge and agree that the "punch list" items may not be completed before closing and that the closing will not be delayed or postponed because of any "punch list" items.  You agree that your obligation to complete "punch list" items will continue after closing.  If necessary, and that you will complete all "punch list" items within a reasonable period of time after the closing date, but your obligation to correct will not be grounds for deferring the closing, nor for imposing any conditions on closing.  Also, I recognize that at the time of my closing, you may still be in the process of completing the finishing details, and decorating of the Condominium and its common areas.  I agree that this will not be grounds for deferring or imposing any conditions on closing.  No escrows or hold backs of closing funds will be permitted.  If I fail to take advantage of my right to a preclosing inspection on the date and time scheduling by you, I will be deemed to have waived that right and you will not be obligated to reschedule my inspection prior to closing.

15.   **Publication of False and Misleading Information.**  Any current or prior agreements, representations, understandings or oral statements of sales representatives or others, if not expressed in this Purchase Agreement, the Condominium Documents or in brochures for the Condominium, are void and have no effect.  Purchaser has not relied on them.

16.   **Sole Agreement.**  This Purchase Agreement is the entire agreement for sale and purchase of the Unit and once it is signed, it can only be amended by a written instrument signed by the party against whom enforcement is sought which specifically states that it is amending this Purchase Agreement.

17.   **Time is of the Essence.**  Time is of the essence for all performance under this Agreement, including provisions which are enforceable after closing.

18.   **Other Parties Bound by this Agreement.**  This Agreement is binding upon me and my heirs and legal representatives and will be binding upon your legal representatives, successors and assigns.

19.   **Assignment.**  I have no right to assign, sell or transfer my interest, rights or obligations in this Agreement, or any part of it.  You will have the option of treating my attempted assignment as a default and you will be entitled to the remedies set forth in Paragraph 11.

20.   **Risk of Loss.**  You will bear all risk of loss to the Property prior to closing.

21.   **Recordation.**  I agree that I will not record this Agreement in the Public Records.  If I do record this Agreement in the Public Records, you will have the right to treat my recordation as a default and you will be entitled to the remedies set forth in Paragraph 11.  Whether or not you exercise your right to treat my recordation of the Agreement as a default, this Agreement will not be a cloud on the title to the Property.

Initials
Initials

22. **Florida Law; Severability.** Any disputes that develop under this Agreement will be settled according to Florida Law. If any part of this Agreement violates a provision of law, the law will control but the rest of the Agreement (not in violation) will remain in force.

Without limiting the generality of the foregoing, it is our mutual desire and intention that all provisions of this Agreement be given full effect and be enforceable strictly in accordance with their terms. If, however, any part of this Agreement is not enforceable in accordance with its terms or would render other parts of this Agreement or this Agreement, in its entirety, unenforceable, the unenforceable part or parts are to be judicially modified. If at all possible, to come as close as possible to the expressed intent of such part or parts (and still be enforceable without jeopardy to other parts of this Agreement, or this Agreement in its entirety), and then are to be enforced as so modified. If the unenforceable part or parts cannot be so modified, such part or parts will be unenforceable and considered null and void in order that our mutual paramount goal (that this Agreement is to be enforced to the maximum extent possible strictly in accordance with its terms) can be achieved.

Under no circumstances shall either you or I have the right to cancel this Agreement solely by reason of the inclusion of certain language in this Agreement (other that language which is intended specifically to create such a cancellation right).

23. **Joint Obligation.** If more than one persons signs this Agreement as buyer, each will be equally liable for full performance of my duties and obligations under it and you can enforce it against us as individuals or together.

24. **Waiver; Recording.** Your waiver of any of your rights or remedies (which can only occur if you waive any right or remedy in writing) will not waive any other of your rights or remedies or prevent you from later enforcing all of your rights and remedies under other circumstances. Neither this Agreement, nor any notice or memorandum hereof (nor any Lis Pendens - a notice of a lawsuit making a claim on the Property), may be recorded in the Public Records.

25. **Survival.** The provisions and disclaimers in this Agreement which are intended to have effect after closing and only those provisions and disclaimers will continue to be effective after (survive) closing and delivery of the deed. No other provisions shall survive the delivery of the Deed. No other provisions in this Agreement shall be construed as to limit the generality of this Paragraph.

26. **Negotiation.** I acknowledge that the negotiation of this Agreement and all discussions with you and your agents regarding the sale of the Property were conducted in the English language and that if English is not my native language, I have been advised to seek competent translation assistance. I also acknowledge that I have had ample opportunity to inspect other similar residential developments in the area and the contracts and Condominium Documents for them. I acknowledge and accept all of the provisions of this Agreement and the Condominium Documents as fair, reasonable and negotiated, discussed and explained to my satisfaction. Furthermore, notwithstanding the fact that the form of this Agreement has been drafted. Initially, by you, because this Agreement is a negotiated "arm's length" contract, the principle of the contract interpretations which would result in any ambiguity being construed against you as such initial draftsman shall not, and is not intended by either of us to, apply.

27. **Your Opinion/Discretion.** I acknowledge and agree that in several instances in this Agreement your opinion, discretion or belief (or words of similar meaning) will decide the outcome of a certain matter. I will have no right to contest any act or decision made by you on any matter in which your opinion controls unless the act or decision has no reasonable basis whatsoever, in whole or in part. Without limiting the generality of the foregoing, wherever this Agreement specifically permits you to act in your sole discretion (or words or similar import), your actions or decisions with respect to such matters will control for purposes of this Agreement even if unreasonable. The provisions of this Paragraph will continue to be effective after (survive) closing.

28. **Notices.** Unless this Agreement states other methods of giving notices of specific things, whenever we are required or desire to notify each other, the notice must be in writing and it must be sent certified mail, postage prepaid, with a return receipt requested (unless sent outside of the United States, in which event written notices to me may be sent by regular air mail) or by

professional courier. You will send my written notices to the address for notices I have given you on Page 1. I will send all notices to you to Shoma Homes Splendido Inc., 5835 Blue Lagoon Drive, 4th Floor, Miami, Florida 33126.

A change of address notice is effective when it is received. All other written notices are effective on the date they are properly mailed, whether or not received (and all permitted unwritten notices to me are effective on the date given by you) unless receipt is required specifically in portions of this Agreement.

29.    **Performance.** I agree that the conveyance of title to the Unit by you to me will constitute full performance by you of all of your obligations to me under this Agreement, except for obligations which this Agreement expressly allows you or requires you to perform after closing.

30.    **Financing of the Condominium.** I understand and agree that my rights under this Agreement are subordinated to any existing or future mortgage that you may place on the Property. If any mortgage is placed on the Property, you will arrange to have my Property released from the mortgage at closing.

31.    **RIGHT TO CANCEL.** THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER, AND RECEIPT BY BUYER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM OR HER BY THE DEVELOPER UNDER SECTION 718.503, FLORIDA STATUTES. THIS AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN FIFTEEN (15) DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE ITEMS REQUIRED. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

32.    **Radon Gas.** I acknowledge that radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

33.    **Date of Agreement.** The date of this Agreement shall be the date that the last of the Buyer or Seller executes this Agreement.

34.    **Brokers.** I represent to you that I have not dealt with any real estate broker or agent other than your sales representatives and the following persons or companies. (If none, please state none):

(a)                                   _____ NONE _____
NONE _____
         Broker                             Affiliated Agent


I agree to indemnify you and hold you harmless from: (1) the claim of any real estate broker or sales agent other than the brokers listed above claiming to have dealt with me or my agents; (ii) the claim of any real estate broker or brokers in the event of my default; and (iii) all attorneys, expenses, fees and costs, including, but not limited to, paralegal fees (at the trial level and all levels of appeal) that you incur in connection with the claims of any real estate broker or sales agent other than the brokers listed above claiming to have dealt with me or my agents.

You agree to pay any commission due to the above-named real estate broker or brokers in connection with this transaction if this transaction is closed according to the terms of

Initials
Initials

this Agreement. Brokerage commissions will be earned and payable only under the terms and conditions stated in this Paragraph. The total amount of commission due for the sale of the Property will be determined by a separate Agreement between the broker(s) and you.

35.   **PERMIT BY APPLICATION DISCLOSURE.** Developer retains the right to use a privately hired architect and/or engineer to certify the building plans and perform required inspections of the structure for compliance with the building code, if provided under applicable law.

36.   **MISCELLANEOUS.**

(a) Prior to closing, Buyer shall not put any items of personalty in or on the Property, enter onto the Property without the representative of the Seller, interfere with, impede or interrupt construction or any workman or perform any work or make any changes to the Property, and Buyer shall not cause or permit anyone else to do so, including Seller's contractors and suppliers. Seller shall not be liable or responsible for any injury, loss or damage resulting from any violation of this Paragraph. Further, any such violation shall constitute a breach of or default by Buyer hereunder, whereupon Seller may terminate this Contract and pursue whatever remedy Seller may have as a result of Buyer's default, including retaining Buyer's deposits, as provided for elsewhere herein.

(b) In the event of a dispute between Buyer and Seller relating to this Agreement or the Property, either before or after closing, Buyer covenants and agrees that it will not engage in any type of public displays or announcements publicizing any alleged dispute with or claim against Seller or any affiliate of Seller. Buyer acknowledges that such activity could irreparably harm the business reputation of the Seller and Buyer agrees that in case of any violation of this covenant, Seller may, notwithstanding anything else contained in this Agreement, invoke appropriate equitable proceedings to enjoin Buyer from such prohibitive action. Notwithstanding anything else contained in this Agreement to the contrary, Seller may pursue all remedies under applicable law if Buyer violates this covenant.

(c) Seller has provided to Buyer certain information that may affect the Property concerning assessments of governmental and quasi-governmental authorities. Buyer acknowledges that it must make its own inquiries concerning the Property with the authorities having jurisdiction over the Property and that Seller shall not be liable for any information not disclosed to Buyer nor for any discrepancies between the information disclosed by Seller and the information as verified by Buyer.

(d) Buyer as purchaser of the Unit, hereby consents to and joins with Seller (but only if any such petition is filed by Seller, or deemed necessary by Seller, in Seller's sole discretion) and others, in a petition for the creation of a special lighting district and special improvement district for the purpose of maintaining the landscaping, irrigation, entry features, privacy walls, lakes, dedicated streets and roadways located within the Condominium Complex. Buyer further agrees to execute at closing any other joinder and/or consent form necessary or required by the Seller to obtain approval of the special taxing district.

(e) All owners, occupants and users of the Condominium Complex are hereby placed on notice that Seller and/or its agents, contractors, subcontractors, licensees, and other designees and others will be, from time to time, conducting blasting, excavation, construction and other activities within the proximity to the Condominium Complex, each such owner, occupant and user automatically acknowledges, stipulates, and agrees (i) that none of the aforesaid activities shall be deemed nuisances or noxious or offensive activities, hereunder or at law generally, (ii) not to enter upon, or allow their children or other persons under their control or direction to enter upon (regardless of whether such entry is a trespass or otherwise) any property within or in proximity to the Condominium Complex where such activity is being conducted (even if not being actively conducted at the time of entry, such as at night or otherwise during non-working hours), (iii) that Seller and the other aforesaid related parties shall not be liable for any and all losses or damages (whether compensatory or consequential, or whether occurring directly or indirectly from Seller's negligence, gross negligence or willful misconduct) relating from the aforementioned activities, (iv) any purchase or use of any portion of the Condominium Complex has been and will be made with full knowledge of the foregoing and (v) that this acknowledgment and agreement is a material inducement to Seller to sell, convey, and/or allow the use of the Property. This section shall survive the closing.

(f)    In no event shall the Buyer, directly or indirectly, advertise the resale of the Unit, or list with Real Estate agent until such time as all Units in the Condominium shall have been sold by the Seller or until the lapse of one year from the date that the Buyer shall have closed upon the purchase of the Unit, whichever of said events shall be the first to occur. This last provision shall survive the closing contemplated herein and the delivery of the Special Warranty Deed to the Buyer.

(g)    All owners, occupants and users of the Condominium are hereby placed on notice that Seller and/or its agents, contractors, subcontractors, licensees, and other designees and others will be, from time to time, conducting blasting, excavation, construction and other activities within the proximity to the Condominium Complex, each such owner, occupant and user automatically acknowledges, stipulates, and agrees (i) that none of the aforesaid activities shall be deemed nuisances or noxious or offensive activities, hereunder or at law generally, (ii) not to enter upon, or allow their children or other persons under their control or direction to enter upon (regardless of whether such entry is a trespass or otherwise) any property within or in proximity to the Condominium Complex where such activity is being conducted (even if not being actively conducted at the time of entry, such as at night or otherwise during non-working hours), (iii) that Seller and the other aforesaid related parties shall not be liable for any and all losses or damages (whether compensatory or consequential, or whether occurring directly or indirectly from Seller's negligence, gross negligence or willful misconduct) relating from the aforementioned activities, (iv) any purchase or use of any portion of the Condominium Complex has been and will be made with full knowledge of the foregoing and (v) that this acknowledgment and agreement is a material inducement to Seller to sell, convey, and/or allow the use of the Property. This section shall survive the closing.

(h)    Buyer acknowledges that no representations have been made to the Buyer as to the investment potential with respect to the Unit. Further, the Buyer acknowledges that Seller has made no representations or warranties to Buyer with respect to resale or rental of the Unit.

(i)    Under the laws of the State of Florida, Buyer is hereby advised that Mold is found both indoors and outdoors. The presence of mold may cause property damage or health problems. Additional information regarding mold and a mold inspection may be obtained from your county public health unit or a professional trained in that field. The foregoing notice is provided in order to comply with state law and is for informational purposes only. Seller does not conduct mold inspection with respect to the Units or the Condominium, and specifically disclaims any and all representations or warranties as to the absence of mold in connection with the Condominium.

(j)    In no event shall the Buyer, directly or indirectly, advertise the resale of the Unit, or list with Real Estate agent until such time as all Units in the Condominium shall have been sold by the Seller or until the lapse of one year from the date that the Buyer shall have closed upon the purchase of the Unit, whichever of said events shall be the first to occur. This last provision shall survive the closing contemplated herein and the delivery of the Special Warranty Deed to the Buyer.

(signatures on following page)

Initials
Initials

IN WITNESS WHEREOF, we execute this Agreement the day and year written above.

ANY PAYMENT IN EXCESS OF 10 PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.

Signed, Sealed and Delivered
In the Presence of:

_____
PRINT NAME OF WITNESS BELOW:

_____
PRINT NAME OF WITNESS BELOW:

BUYER(S):

By _____

Name: _____

By _____

Name: _____

_____
Date signed by Buyer

Signed, Sealed and Delivered
In the Presence of:

_____
PRINT NAME OF WITNESS BELOW:

_____
PRINT NAME OF WITNESS BELOW:

SELLER:

SHOMA HOMES SPLENDIDO, INC., a
Florida Corporation

By: _____
Authorized Representative
**CRISTINA DE ZAYAS**
SALES MANAGER

_____
Date signed by Seller

ADDENDUM TO PURCHASE AGREEMENT

FOR

SHOMA HOMES SPLENDIDO, A CONDOMINIUM
MIAMI-DADE COUNTY, FLORIDA

NOTICE TO BUYER PURSUANT TO CH. 2003-49; LAWS OF FLORIDA
Attached To Standard Form Sale and Purchase Agreement for Condominium Residence

FLORIDA LAW CONTAINS IMPORTANT REQUIREMENTS YOU MUST
FOLLOW BEFORE YOU MAY FILE A LAWSUIT AGAINST A CONTRACTOR,
SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL FOR AN ALLEGED
CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU FILE YOUR
LAWSUIT, YOU MUST DELIVER TO THE CONTRACTOR, SUBCONTRACTOR,
SUPPLIER, OR DESIGN PROFESSIONAL A WRITTEN NOTICE OF ANY
CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE YOUR
CONTRACTOR AND ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN
PROFESSIONALS THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION
DEFECTS AND MAKE AN OFFER TO REPAIR OR PAY FOR THE ALLEGED
CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER
MADE BY THE CONTRACTOR OR ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN
PROFESSIONALS. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER
FLORIDA LAW, AND FAILURE TO FOLLOW THEM MAY AFFECT YOUR ABILITY TO
FILE A LAWSUIT.

Receipt of this Notice is acknowledged this ___18___ day of ___July___ , 200_5_.

PURCHASER(S):

_____

_____

DBPR Form CO 6000-6
Effective: 12/23/02

### RECEIPT FOR CONDOMINIUM DOCUMENTS

The undersigned acknowledges that the documents checked below have been received or, as to plans and specifications, made available for inspection.

Name of Condominium: Shoma Homes Splendido, a Condominium
Address of Condominium: West 36th Avenue and West 80th Street, Hialeah, Florida

Place a check in the column by each document received or, for the plans and specifications, made available for inspection. If an item does not apply, place "N/A" in the column.

| DOCUMENT | RECEIVED | BY ALTERNATIVE MEDIA |
|---|---|---|
| Prospectus Text | X | |
| Declaration of Condominium | X | |
| Articles of Incorporation | X | |
| Bylaws | X | |
| Estimated Operating Budget | X | |
| Form of Agreement for Sale or Lease | X | |
| Rules or Regulation | X | |
| Covenants and Restrictions | N/A | |
| Ground Lease | N/A | |
| Management and Maintenance Contracts for More Than One Year | N/A | |
| Renewable Management Contracts | N/A | |
| Lease of Recreational and Other Facilities to be Used Exclusively by Unit Owners of Subject Condominiums (See s. 718.503(1)(b) 7, F.S. And s.718.504, F.S.) | N/A | |
| Form of Unit Lease if a Leasehold | N/A | |
| Declaration of Servitude | N/A | |
| Sales Brochures | N/A | |
| Phase Development Description (See s. 718.503(1)(b) 11, F.S. And s.718.504, F.S.) | N/A | |
| Lease of Recreational and Other Facilities to be Used by Unit Owners with Other Condominiums (See s. 718.503(1)(b) 8, F.S. And s.718.504, F.S.) | N/A | |
| Description of Management for Single Management of Multiple Condominiums (See s. 718.503(1)(b) 5, F.S. and s.718.504, F.S.) | N/A | |
| Conversion Inspection Report | N/A | |
| Conversion Termite Inspection Report | N/A | |
| Plot Plan | X | |
| Floor Plan | X | |
| Survey of Land and Graphic Description of Improvements | X | |
| Executed Escrow Agreement | X | |
| Frequently Asked Questions and Answers Sheet | X | |
| Evidence of Developer's Interest In The Land Upon Which The Condominium Is To Be Developed | X | |
| Alternative Media Disclosure Statement (See Rule 61 B-17 .011, F.A.C.) | N/A | |

| DOCUMENT | RECEIVED | OR | MADE AVAILABLE | BY ALTERNATIVE MEDIA |
|---|---|---|---|---|
| Plans and Specifications | | | X | |

**THE PURCHASE AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF EXECUTION OF THE PURCHASE AGREEMENT BY THE BUYER AND RECEIPT BY THE BUYER OF ALL OF THE DOCUMENTS REQUIRED TO BE DELIVERED TO HIM OR HER BY THE DEVELOPER. THE AGREEMENT IS ALSO VOIDABLE BY THE BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 15 DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE DOCUMENTS REQUIRED. BUYER'S RIGHT TO VOID THE PURCHASE AGREEMENT SHALL TERMINATE AT CLOSING.**

Executed this _____ day of _____, 20 __.

_____
Signature of Purchaser

_____
Signature of Purchaser



# SHOMA HOMES

Name: _Martina Arces_                    Date: _7/18/05_
_Carolina B Arces_

Project: _Splendido_                     Lot/Block: _201/32_

Congratulations on the purchase of your new Shoma Home! Here at Shoma we know how important this investment is and would like to extend to you our assistance and guidance in making a house your dream home. The "Color Studio" staff will provide their knowledge and expertise in order for your color selection experience to be fun and stress free. Our "Color Studio" is all encompassing, providing you with the opportunity to view and make all your selections in one place.

A "Color Studio" Associate will contact you to schedule your selection appointment within fifteen (15) days of your contract date. Appointment times and dates are available Monday through Saturday from 10:00 AM through 4:00 PM. Our Associates schedule their appointments based on an average timeframe. We request that you be punctual for your appointment as the Associates want to dedicate their entire scheduled time to you and provide you with all the necessary tools to make your selections. At your scheduled appointment, the Associate will provide you with a brief tour of the various selections available for your home.

We provide a wide array of pre-selected items to choose from and as such we do not deviate from the selections offered. Please confirm with your Sales Associate the selections available if you have purchased one of our pre-selected spec homes.

Before you proceed with your color selection, there are a few items that we would like for you to be aware of:

- ❖ A STANDARD feature is a specific item that is automatically included at the time of purchase. Within these standard features there are colors and styles to choose from.

- ❖ An UPGRADE refers to an item that can be added as an option to your home above and beyond the standard feature available. You may chose from a wide variety of pre-selected options, which must be paid at the time of selection.

- ❖ For your convenience, provided herein is the STANDARD and UPGRADED electrical floor plan and pricelist. Use these items in order to select your electrical options. These selections should be completed prior to your color selection and submitted to the "Color Studio" Associate at the time of your appointment.

- ❖ Structural changes beyond the selections available will not be accepted. Once your color selection is finalized and signed, no changes will be allowed. If there are any errors or discrepancies in the Color Selection Agreement, a "Color Studio" Associate will contact you to make the necessary corrections.

- ❖ It is important for you to understand that the signed, finalized selection is what you are purchasing for your home. Any verbal conversations that are not incorporated into your Color Selection Agreement will not be included in your home.

The following are a few "tips" that we suggest you follow in preparation for your selection appointment:

- ❖ If you are an out of town customer, please schedule your stay wisely so that you do not feel rushed in your decisions and you leave satisfied with your selections.

- ❖ Bring some personal décor samples such as fabric, pillows or swatches to your appointment.

- ❖ Imagine or envision furniture placement in conjunction with your selections.

Shoma Homes is fully dedicated in providing the utmost in quality and selection for its customers.
**OUR MISSION:** "Our homebuyers deserve the very best and that's what we provide. It's an endeavor we find immensely rewarding, constantly challenging and a bit magical. It's a privilege to help people realize their dreams."

## ONCE AGAIN, CONGRATULATIONS!

Sincerely,

Priscilla Chong
Color Studio Supervisor

_____                    _7/18/05_
Buyer                                        Date

_____
Buyer

# CONTROL BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

## NOTICE

This is to give you a notice that we have a business relationship with the companies listed below. It may be in our financial interest to refer business to these companies. You are not required to use the listed companies as a condition for the purchase or sale of your property. There are numerous other settlement services providers available with similar services. You are free to shop around to determine that you are receiving the best services and the best rates for these services.

- Continental Trust Mortgage Corporation
- The Greater Title Services

I / We have read and understand the above Affiliated Business Arrangement Disclosure.

_____
Signature

Date: ___7/18/05___

_____
Signature

Date: ___7/18/05___

_____
Signature

Date: _____

_____
Signature

Date: _____

**Approved Lender Disclosure**

Community: _Splendido_

Lot/Block: _201/32_

Buyer: _Maxima Aceo /_

_Carolina B Aceo_

In order to comply with the terms of my (our) purchase agreement I (we) must apply with an approved lender within 7 days. I further understand and agree that if I (we) fail to follow this procedure, my (our) purchase will be considered a cash transaction not subject to financing. The information for our approved lender is listed below:

**Continental Trust Mortgage**
**5835 Blue Lagoon Drive**
**Suite 100**
**Miami, FL 33126**
**Phone # (305) 220-8100**

For further details about mortgage provisions please refer to your sales agreement.

_[signature]_
Buyer

_[signature]_
Buyer

_7/18/05_
Date



# EXHIBIT "Q"

CFN 2010R0599165
OR Bk 27409 Pas 1005 - 1007I (3pss)
RECORDED 09/03/2010 09:24:20
DEED DOC TAX 750.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Prepared by and return to:
Richard J. Geisert, Esq.
Attorney at Law
Cosmopolitan Title Services, Inc.
9851 NW 58 Street Unit 115
Doral, FL 33178
305-513-8851
File Number: 30-0141
Will Call No.:

Parcel Identification No. 04-2028-106-2010

_____ [Space Above This Line For Recording Data] _____

# Warranty Deed
### (STATUTORY FORM - SECTION 689.02, F.S.)

**This Indenture** made this 2?? day of August, 2010 between Maxima Arceo, a single woman and Carolina B Arceo, a married woman whose post office address is 6540 NW 114 Avenue, #114, Doral, FL 33178 of the County of Miami-Dade, State of Florida, grantor*, and Sebastian Covos and Emilse Villanueva whose post office address is 5861 NW 109 Court, Doral, FL 33178 of the County of Miami-Dade, State of Florida, grantee*,

**Witnesseth** that said grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Miami-Dade County, Florida, to-wit:

Unit No. 201, Building 32, SHOMA HOMES SPLENDIDO, A CONDOMINIUM, according to the Declaration of Condominium thereof, as recorded in Official Records Book 24177, Page 2285, of the Public Records of Miami-Dade County, Florida.

and said grantor does hereby fully warrant the title to said land, and will defend the same against lawful claims of all persons whomsoever;

and Grantors do further certify that the subject property is not and never has been their homestead, and at all material times they have resided at the address noted above.

* "Grantor" and "Grantee" are used for singular or plural, as context requires.

**In Witness Whereof**, grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

Witness Name: R.J. Geisert

Witness Name: B. Hu

Maxima Arceo, a single woman, Grantor

Carolina B Arceo, a married woman, Grantor

DoubleTimes

State of Florida
County of Miami-Dade

The foregoing instrument was acknowledged before me this __ day of August, 2010 by Maxima Arceo, a single woman, and Carolina B Arceo, a married woman, who [_] are personally known or [X] have produced a driver's license as identification.

[Notary Seal]

RICHARD J. GEBERT
MY COMMISSION # DO 935145
EXPIRES: December 19, 2013
Bonded Thru Budget Notary Services

Notary Public

Printed Name: _____

My Commission Expires: _____

*Warranty Deed (Statutory Form) - Page 2*                                          DoubleTime

## APPROVAL OF SALE
## Shoma Homes Splendido Condominium Association, Inc.

To Whom It May Concern:

In accordance with the provisions of the documents of Shoma Homes Splendido Condominium located in Hialeah Gardens, Dade County, Florida, approval for:

**Name(s): Sebastian A Covos & Emilse Villanueva**
**Shoma Homes Splendido Condominium**
**Address: 8129 West 36 Avenue, Unit 6**
**Hialeah Gardens, FL 33018**

### Is granted and conditioned upon the following:

1. Purchaser will assume all obligations and responsibilities of ownership as set forth under the terms and conditions of the Declaration of Condominium, Articles of Incorporation and By-Laws as they pertain to the above unit and will received from seller a current copy of the Rules and regulations.

2. Seller will make all of Shoma Homes splendido Condominium Association, Inc. documents available to the proposed purchaser, including all Rules and Regulations as they pertain to the above unit and to the Community

3. Seller must provide the buyer at time of closing, his **coupon book** and **return envelopes**.

4. A copy of the **Warranty Deed** and **HUD Document** must be provided at the time of closing to Shoma Homes Splendido Condominium Association Inc.

5. Said **Warranty Deed** along with **HUD Document** should be mailed to:

   Shoma Homes Splendido Condominium Association Inc.
   C/o Neighborhood Property Management, Inc
   P.O Box 160310 Hialeah, Fl 33016
   Phone: (305) 819-2361 Fax: (305) 825-0608

   **To request an Estoppel letter, Please contact the management office.**

Approval for the Sale of said unit is hereby granted pursuant to Declaration of Condominium with full approval of the present Board of Directors of Shoma Homes Splendido Condominium Association Inc., on Wednesday, August 18, 2010.

By: Board of Director/Representative

PAOLA O. AMADOR R.
MY COMMISSION # EE 012082
EXPIRES: July 29, 2014
Bonded Thru Notary Public Underwriters
[SEAL]

Notary Public-Signature: _Paola C Amador R._

# EXHIBIT "R"

{22451026;1}

Plaintiff Profile Form - Residential Properties

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |

**For Internal Use Only**

File Number _____

Date Received _____

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law. To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

### Section I. Property Information

| | |
|---|---|
| Name Property Owner | Sebastian Covos and Emilse Villanueva |
| Address of Affected Property | 6129 West 36 Ave |
| | #6 |
| City: Hialeah | State: FL | Zip: 33018 |

Is this Property:* Residential ☒ Commercial ☐ Governmental ☐

Name of Person Completing this Form: Milay Duenas

Is above your primary residence? Yes ☐ No ☒

Mailing Address (if different): 6861 NW 109 Court

City: Doral   State: FL   Zip: 33178

Phone: 786-315-1486

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Check one: Owner-Occupant ☐ Owner Only ☒ Renter-Occupant ☐

Represented By: Parker Waichman Alonso LLP

Address: 3301 Bonita Beach Road

City: Bonita Springs   State: FL   Zip: 34134

Phone: 800-LAW-INFO

Case No. /Docket Info: 11-1077

### Section II. Insurance Information

| | |
|---|---|
| Homeowner/ Renter Insurer: | Citizens Property Insurance Corp. |
| Policy #: | FRJH5449150-01-0000 |
| Agent: | Cue-Farach Insurance Agency Inc. |
| Address: | 7902 NW 36th St. |
| | Suite #207 |
| City: Miami | State: FL | Zip: 33166 |
| Phone: | (305) 418-4332 |

+ Attach Copy of Insurance Declaration Page

### Section III. Claimant Information

| Name of Claimant | Dates Occupied Move-In | Dates Occupied Leave | Gender | Date of Birth | Are you claiming personal Injuries?* Circle One | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| Sebastian Covos | 08/25/2010 | N/A | M ☒ F ☐ | 11/16/1970 | Yes ☐ No ☒ | Owner Only |
| Emilse villanueva | 08/25/2010 | N/A | M ☐ F ☒ | 03/17/1977 | Yes ☐ No ☒ | Owner Only |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |
| | | | M ☐ F ☐ | | Yes ☐ No ☐ | |

* Personal Injuries include claims for mental anguish and medical monitoring.

Plaintiff Profile Form - Residential Properties

## Section IV. Inspection Information

1.0. Have you, or has anyone on your behalf, conducted an Inspection into whether Chinese-manufactured drywall is present in your home?   Yes ☑ No ☐

   1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?   Drywall Disaster of Florida

     1.2. When did the inspection take place?   12-23-2010

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?   Yes ☑ No ☐

   2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?   Brent Rissling

     2.2. When was this determination made?   12-23-2010

## Section V. Drywall Information

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Taishan Gypsum | Drywall 4feetx12feetx1/2inch | throughout |
| | | |
| | | |
| | | |

1.0. Have you, or has anyone on your behalf, sent written notice to your homebuilder, drywall contractor, drywall supplier/ distributor, drywall manufacturer or any other person or entity of your claim that your home contains Chinese-manufactured drywall?   Yes ☐ No ☑

   1.1. If "Yes" to question 1.0 Section V. to whom has any such notice been sent?

     1.2. When was notice sent?

     + Attach copy of notice Sent

2.0. Have you, or has anyone on your behalf, made a request to anyone that your home be repaired as a result of the presence of Chinese-manufactured drywall in your home?   Yes ☐ No ☑

   2.1. If "Yes" to Question 2.0. Section V. to whom has the request been made?

     2.2. When was the request made?

     + Attach copy of written request

3.0. Has your home been repaired in any way as a result of the presence of Chinese-manufactured drywall?   Yes ☐ No ☑

   3.1. If "No" to question 3.0, Section V. Have any such repairs to your home been offered?   Yes ☑ No ☑

     3.1.a. If "Yes" to question 3.1. Section V. When was the offer made?

     3.1.b. Who made the offer?

   3.2. If "Yes" to Question 3.0. Section V. Have any such repairs to your home been initiated?   Yes ☐ No ☑

     3.2.a. Have any such repairs to your home been completed?   Yes ☐ No ☑

     3.2.b. Who paid or is paying for the repairs?

     3.2.c. What was/is the total cost?

     3.2.d. Have samples of the Chinese-manufactured drywall been kept?   Yes ☑ No ☐

     3.2.e. Who possesses the samples?   Homeowner

## Section VI. Questions for Florida Residents Only*

1.0. Have you, or anyone on your behalf, sent any notices under Chapter 558 of the Florida Statutes regarding the presence of Chinese-manufactured drywall in your home?   Yes ☐ No ☐

   1.1. If "Yes" to Question 1.0., Section VI. To whom has any such notice been sent?

     1.2. When was notice sent?

     + Attach copy of notice

2.0. Have you received any responses to your notice under Chapter 558?   Yes ☐ No ☐

   2.1. If "Yes" to Question 2.0., Section VI. From whom did you receive such notice?

     2.2. When was it received?

3.0. Has anyone inspected your home in response to your notice under Chapter 558?   Yes ☐ No ☐

   3.1. If "Yes" to Question 3.0., Section VI. Who inspected your home?

4.0. Have you received a written offer to repair your home in response to your notice under Chapter 558?   Yes ☐ No ☐

   4.1. If "Yes" to Question 4.0., Section VI. From whom did you receive this written offer?

     4.2. When was it received?

5.0. Have any repairs been performed in your home in response to your notice under Chapter 558?   Yes ☐ No ☐

   5.1. If "Yes" to Question 5.0., Section VI. Who performed these repairs?

     5.2. What repairs were performed?

     5.3. When were the repairs performed?

*By completing this section, plaintiffs neither agree with the applicability of Chapter 558 of the Florida Statutes to this action or plaintiffs' claims, nor do plaintiffs waive any rights or agree that such notice is required. Defendants contend that plaintiffs are not relieved of any obligations they may or may not have arising under Chapter 558 of the Florida Statutes, and defendants are not waiving any rights they may have under said statute.

Plaintiff Profile Form - Residential Properties

## Section VII. Home Information

| Approx. Sq. Ft. of House: | 1,486 | | Yes | No |
|---|---|---|---|---|
| Estimated Sq. Ft. of Drywall | unknown | Occupied | ✓ | |
| Height of Interior Walls | unknown | Year-round | ✓ | |
| Number of Bedrooms: | 4 | Summer | | ✓ |
| Number of Bathrooms: | 3 | Winter | ✓ | |

### Plumbing System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | | ✓ |
| Copper Piping | | | |
| Copper Fixtures | | | |
| Other Fixtures | | | |
| Were repairs made to the plumbing system? | | | |
| Dates: | | | |

### Electrical System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | | | |
| Switches | | | |
| Main Panel | | | |
| 2nd Panel | | | |
| Exposed Copper Wires | | | |
| Were repairs made to the electrical system? | | | |
| Dates: | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

## Section VIII. Construction/Renovation Information

Date Range for New Home Construction: (Month/Day/Year)

| Start Date: | | Completion Date | 03/01/2007 |
|---|---|---|---|
| Move In Date: | | Date Acquired Home | 08/25/2010 |

Date Range for Renovations: (Month/Day/Year)

| Start Date: | | Completion Date | |
|---|---|---|---|
| Move In Date: | | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | |
| First Floor: Full Wall of drywall replaced | | | |
| Second Floor: Any drywall replaced | | | |

## Section IX. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:
  Shoma Development Corp.

Address:  3470 NW 82nd Avenue, Suite 988

City: Miami   State: FL   Zip: 33122

Phone:  unknown

+ Attach Copy of Construction/Renovation Contract
+ Attach Copy of New Home Warranty Declaration

## Section X. Drywall Installer

Drywall Installer's Name:

Address:

City:   State:   Zip:

Phone:

## Section XI. Drywall Supplier

Drywall Supplier's Name:
  Banner Supply Co.

Address:  7195 N. W. 30th Street

City: Miami   State: FL   Zip: 33122

Phone:  305-593-2946

## Section XII. Verification of Plaintiff Profile Form

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
|---|---|---|---|
| | 04/23/11 | | 04/27/11 |

| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
|---|---|---|---|

| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
|---|---|---|---|

CovosS000003



**Citizens Property Insurance Corporation**

HO6DEC 01 09

Citizens Service Center
6676 Corporate Center Parkway
Jacksonville, FL 32216-0973

## Homeowners HO-6 Condo Unit-Owners Form Policy - New Declarations
## Policy Number: FRJH5449150-01-0000     Policy Period: From 12/02/10 To 12/02/11

12:01 A.M. Eastern time at the location of the Residence Premises

| Named Insured and Mailing Address: | Location of Residence Premises: | Agent:        Phone (305) 418-4332 |
|---|---|---|
| Sebastian Covos | 8129 W 36TH AVE | CUE-FARACH INSURANCE AGENCY INC. |
| Emilse Villanueva | apt 6 | ANA MARIA CUE-FARACH |
| 5861 NW 109th Ct | HIALEAH GARDENS, FL 33018 | 7902 NW 36th St Ste 207 |
| Doral, FL 33178 | | Miami, FL 33166-6663 |
| | | FL License: A058913      Citizens ID: 021022 |

Coverage is only provided where a premium and a limit of liability is shown.

**ALL OTHER PERILS DEDUCTIBLE: $500**          **HURRICANE DEDUCTIBLE: $500**

| SECTION I - PROPERTY COVERAGES | LIMIT OF LIABILITY | ANNUAL PREMIUM |
|---|---|---|
| A - Dwelling | $30,000 | $309 |
| C - Personal Property | $6,000 | $140 |
| D - Loss of Use | $1,200 | INCLUDED |
| | | |
| Ordinance or Law Limit (25% of Cov. A) | (see policy) | INCLUDED |
| | | |
| SECTION II - LIABILITY COVERAGES | | |
| E - Personal Liability (Basic Limit $100,000) | $300,000 | $18 |
| F - Medical Payments | $2,000 | INCLUDED |
| | | |
| OPTIONAL COVERAGES | | |
| Unit Owner's Rental to Others | INCLUDED | $28 |

| MANDATORY ADDITIONAL CHARGES | |
|---|---|
| Emergency Management Preparedness and Assistance Trust Fund | $2 |
| 2005 Florida Hurricane Catastrophe Fund Emergency Assessment | $5 |
| 2006 Citizens Emergency Assessment | $7 |
| Tax Exempt Surcharge | $9 |

| **TOTAL POLICY PREMIUM INCLUDING ASSESSMENTS AND ALL SURCHARGES** | **$518** |
|---|---|

Insured Note: The portion of your premium for Hurricane Coverage is: $194  Non-Hurricane is: $301

Policyholder Copy      Page 1 of 3          MID: 20884 / AID: 20884 / FID: 0          Processed Date: 11/02/2010

CovosS000004

HO6DEC 01 09

**Policy Number: FRJH5449150-01-0000**       **Policy Period: From 12/02/10 To 12/02/11**
12:01 A.M. Eastern time at the location of the Residence Premises

PAGE 2

Forms and Endorsements applicable to this policy:

CIT HO-6 01 10*    CIT 19 09 95*    CIT 24 07 08*    HO 04 96 04 91*    CIT 17 33 01 10*    CIT 23 70 07 08*

**Rating Information:**

| Form Type | Year Built / Verified | Town/Row House | Construction Type | BCEGS | Territory | Wind / Hail Exclusion | Mun Code Fire / Police |
|---|---|---|---|---|---|---|---|
| HO6 | 2008/Yes | No | Masonry | 03 | 033 | No | 442 / 442 |

| County | Occupancy | Use | No. Of Families | Protection Class | Dist To Hydrant | Dist To Fire Station |
|---|---|---|---|---|---|---|
| MIAMI-DADE | Tenant | Rental | 1 | 01 | 300 feet | 2 miles |

| Protective Device Credits | | | No Dec Or Prior Insurance Surcharge | Seasonal Surcharge | Updates Surcharge | Age of Home Surcharge/Credit |
|---|---|---|---|---|---|---|
| Burglar Alarm | Fire Alarm | Sprinkler | Yes - NPI | No | N/A | N/A |
| No | No | No | | | | |

| Terrain / WBDR | Building Type | Roof Cover | Roof Deck Attachment | Roof-Wall Connection |
|---|---|---|---|---|
| C / IN | 1-4 Units | N/A | Unknown | N/A |

| Secondary Water Resistance | Roof Shape | Opening Protection | FBC Wind Speed | FBC Wind Design |
|---|---|---|---|---|
| No | Gable | Unknown | N/A | N/A |

A premium adjustment of –$54 is included to reflect the building's wind loss mitigation features or construction techniques that exists. Credits range from 0% to 93%.

A premium adjustment of –$4 is included to reflect the building code grade for your area. Adjustments range from a 5% surcharge to a 46% credit.

Authorized By: ANA MARIA CUE-FARACH

CovosS000005

# EXHIBIT "S"

02/28/2007 11:39 30588330982 CITYOFHIALEAH 20|32 PAGE 01/03

Building
# 32.

## CERTIFICATE OF OCCUPANCY
### CITY OF HIALEAH, FLORIDA
### BUILDING DIVISION

01028
$ 106.ºº PAID

PERMIT # _2005-55183_ ISSUED BY _____ DATE _2-28-07_

Owner, agent or tenant of building _____

Lot_____ Block_____ Subdivision _Hialeah_

Address____81 29th _____No. St. Hialeah, Dent____

Approved Occupancy Use_____

Remarks: _FPL Assign_____

The Certificate of Occupancy is issued to the above-named Applicant for building at above-named
location only upon the express condition that the applicant will abide by and comply with all
provision of Zoning Ordinance and all Ordinances or Building Codes of the City of Hialeah pertaini
to the erection, construction, alteration, remodeling or use of building or structures.

# EXHIBIT "T"



Feb 11 2011
10:17AM

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

IN RE: CHINESE DRYWALL LITIGATION

DARIO ORLANDO; STEPHEN SINES;        CASE NO.: 10-28090 (12)
DAVID AND JOAN GLICKMAN;
THOMAS WOJCIECHOWSKI;
OCEANPARK ESTATES ASSOCIATON,
INC., and DOCKSIDE LOFTS CONDOMINIUM
ASSOCIATION, INC., individually and as
representatives of others similarly situated,
                                    Plaintiffs,

vs.

BANNER SUPPLY CO., et al.,           HON. PETER M. WEINSTEIN
                        Defendants.
_____/

## ORDER ON DEFENDANT BANNER SUPPLY COMPANY PORT ST. LUCIE, LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

THIS CAUSE came before the Court on Defendant Banner Supply Company Port St. Lucie, LLC's Motion to Dismiss First Amended Class Action Complaint. The Court having considered same, having heard argument of counsel and being otherwise fully advised in premises, finds and decides as follows:

Plaintiffs filed the instant first amended class action complaint asserting claims for product liability; negligence; violations of the Florida Deceptive and Unfair Trade Practices Act (hereinafter FDUTPA); Private Nuisance; and equitable and injunctive relief. Defendant Banner Supply Company Port St. Luce LLC (hereinafter Banner PSL) is now moving to dismiss the first amended complaint arguing that it fails to comply with the requirements of Rule 1.220, Fla. R. Civ. P., fails to properly allege a cause of action for private nuisance, for violations of FDUTPA and for equitable and injunctive relief and for failure to comply with Rule 1.130, Fla. R. Civ. P.

in that plaintiffs have failed to attach documents necessary for Banner PSL to properly respond to the complaint.

Turning first to plaintiffs' claim for private nuisance, Banner PSL argues that plaintiffs cannot state a cause of action for private nuisance as a matter of law.  In the motion to dismiss, Banner PSL cites to a recent Omnibus Order on Pending Motion to Dismiss in the matter styled Marlene Bennett v. Centerline Homes, et. al., Case No. 50 2009 CA 014458, entered on November 5, 2010 by the Hon. Glenn Kelly of the Fifteenth Circuit Court.  In that case, Judge Kelley in a well reasoned order sets forth the well established law in Florida regarding private nuisances and states that "Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Id.* at 6 citing *Jones v. Trawick*, 75 So.2d 785, 785 (Fla. 1954). "Florida law essentially define nuisance as using one's property as to injure the land or some incorporeal rights of one's neighbor. *Id.,* citing *Beckman v. Marshall*, 85 So.2d 552, 554 (Fla. 1956).  Plaintiff argues that there is an inherent weakness in Judge Kelley's ruling that the nuisance must come from outside the plaintiffs' land, that is the defective drywall did come from outside of plaintiffs' land and was delivered by Banner to the home. Plaintiffs argue that Banner PSL should have used its own property, the defective drywall, in a manner not to injure the plaintiffs.  This Court finds that it is plaintiffs' argument that has the inherent weakness based on this Court's interpretation of Florida law as it deals with private nuisance.  This Court finds Judge Kelley's ruling to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for

Case No.: 10-28090(12)

private nuisance in this case.[1]  Therefore, Banner PSL' motion to dismiss plaintiffs' claim for private nuisance will be granted.

Banner PSL's motion to dismiss is denied in all other respects.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant Banner Supply Company Port St. Lucie, LLC's Motion to Dismiss First Amended Class Action Complaint is GRANTED in Part as to Count IV for .Private Nuisance.  Count IV for Private Nuisance is hereby Dismissed with Prejudice.

DONE AND ORDERED in Chambers, Fort Lauderdale, Florida, this $4/h$       day of February, 2011.

PETER M. WEINSTEIN

FEB 04 2011

TRUE COPY

PETER M. WEINSTEIN
CIRCUIT COURT JUDGE

Michael J. Ryan, Esq., Plaintiff's Liaison Counsel & Matthew Kotzen, Esq., Defendant's Liaison Counsel for distribution electronically through Lexis Nexis File & Serve

---

[1] Plaintiffs, in support of their opposition to the motion to dismiss argue that Judge Farina of the Eleventh Circuit, in the case of Seifert v. Banner Supply, Case No. 09-3887 CA 01(42), permitted the "Nuisance" count to go to the jury after a trial of the matter.  However, plaintiffs do not indicate whether, in fact, a motion to dismiss the "Nuisance" count ever presented to, or ruled on by Judge Farina.  Therefore, plaintiff's reliance on that case is misplaced.