**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL<br>          PRODUCTS LIABILITY LITIGATION | MDL No. 02047<br>SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| ROBERT W. BLOCK, III, individually, and on<br>behalf of all others similarly situated, v.<br>GEBRUEDER KNAUF<br>VERWALTUNGSGESELLSCHAFT, KG, et al.<br>(Case No 11-1363) (Omni X)<br>_____/ | MAG. JUDGE WILKINSON |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT,
WOODLAND ENTERPRISES, INC.'S , MOTION TO DISMISS, WITH
PREJUDICE, THE CLAIMS BROUGHT AGAINST IT IN THE
BLOCK OMNIBUS CLASS ACTION COMPLAINT (OMNI X)**

Defendant, Woodland Enterprises, Inc. ("Woodland"), hereby files its Memorandum of

Law in Support of its Motion to Dismiss, with Prejudice, the claims asserted against it by plaintiffs

**Liquddin and Rukhsana Shaikh** (the "Plaintiffs") in the Block Omnibus Class Action Complaint

(Omni X) pursuant to Federal Rule of Civil Procedure 12(b)(6), and to strike Plaintiffs' demand

for a jury trial, for the reasons set forth below.

## I.  ARGUMENT

**A.    The Governing Legal Standard.**

To survive a motion to dismiss, a complaint must contain sufficient factual matters,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *ADA v. Cigna Corp.*, 605

F.3d 1283, 1289 (11th Cir. 2010) (affirming dismissal of RICO claims) (*quoting Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct.

1937, 1949 (2009)) (same, applying *Twombly* standard to all civil actions); *Zarella v. Pac. Life

Ins. Co.*, No. 10-60754, 2010 U.S. Dist. LEXIS 119552, at *5-7 (S.D. Fla. Nov. 10, 2010)

(applying these standards to dismiss numerous claims against insurer, including negligence and

unjust enrichment claims). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s], devoid of 'further factual enhancement.'" *Id.* at 1949 (*quoting Twombly*, 550 U.S. at 557).[1]

**B.      Plaintiffs Cannot State a Claim for Negligence (Count I) under Florida law, and Plaintiffs' Tort Claims (Counts I, II, III and XI) are Barred in Whole or in Part by Florida's Economic Loss Rule.**

**1.      Plaintiffs cannot state a claim for negligence because Woodland did not breach a duty recognized by Florida law.**

The Omnibus Complaint alleges that Woodland somehow owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question. Cmplt. ¶ 51.  The Complaint further alleges that Woodland had a duty to provide Plaintiffs with certain warnings about the drywall.  *Id.* ¶ 54.  Even assuming the truth of these obviously specious allegations, they fail to state a claim for relief.

The most fundamental problem with Plaintiffs' negligence theory is that, as a matter of law, Woodland did not owe Plaintiffs a duty in negligence.  The March 18, 2011 omnibus order in *Bennett v. Centerline Homes, Inc. et al.*, No. 502009-CA-014458 (Fla. 15th Jud. Cir.), attached hereto as **Exhibit A** for the Court's convenience (the "Omnibus Negligence Order"), explains why this is so.  *Bennett* is a consolidated state court action that, like this one, pits homeowners with defective drywall claims against homebuilders.  Just as the Plaintiffs are attempting to do here, the homeowners in *Bennett* attempted to assert a negligence claim based on their homebuilders'

---

[1]      In considering a motion to dismiss, a court should adopt a two-pronged approach:  (1) "eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *ADA*, 605 F.3d at 1290 (*quoting Iqbal*, 129 S. Ct. at 1950).  Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiffs would ask the court to infer."  *Id.* (*quoting Iqbal* at 1951-52).

purported failure to protect them from a latent defect – namely, hazardous "Chinese manufactured" drywall.  The issue of whether the homebuilders owed a duty in negligence was, the court held, "a question of law."  Omnibus Negligence Order, pg. 1.

In what appears to be a case of first impression in Florida, the court in *Bennett* ruled that the homebuilders did not have a duty "to inspect, test or warn" the plaintiffs about the allegedly defective drywall in their homes.  The court explained that where, as here, the purported defect is "latent," the law imposes no such duties "unless the product is inherently dangerous."  *Id*. at 2; *see O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim as manufacturer had no duty to warn); *Mendez v. Honda Motor Co*., 738 F. Supp. 481, 483-84 (S.D. Fla. 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous.").  Because even *defective* drywall does not fit into the narrow "inherently dangerous" category, the homebuilders had no duty to inspect the drywall, to test it, or to warn the plaintiffs about it.  Omnibus Negligence Order, pg. 2.[2]  The only way for the negligence claims to survive, the court held, was for the homeowners to allege "in good faith" that the homebuilders had "actual or implied notice" of the alleged drywall defects.  *Id*.; *see Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez*, 738 F. Supp. at 483-84.

---

[2]     "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category.  They include highly toxic materials, second hand guns and drugs….  In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself."  *O'Connor v. Kawasaki Motors Corp., U.S.A*., 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted).  By way of example, Florida courts have ruled that jet skis (*id*. at 1543), motorcycles (*Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id*.) are not "inherently dangerous."

Because the purported drywall defects at issue in this case were indisputably latent (*see, e.g.,* Cmplt. ¶ 79), Plaintiffs' negligence claim cannot survive because he cannot allege – in good faith – that Woodland had "actual or implied notice" of the defects.  The boilerplate and unsupportable assertion that Woodland "knew or should have known" that the drywall would "harm" the Plaintiffs (*id.* ¶ 52) is a bare legal conclusion that cannot state a claim for relief under the legal standards required by this Court, particularly a legal conclusion premised on a negligence theory that files in the face of basic Florida law.  *See* Omnibus Negligence Order, pg. 2 (requiring more specific allegations); *Ashcroft*, 129 S.Ct. at 1949.

    **2.**    **Plaintiffs' tort claims (Cts. I, II, III, & XI) are barred by the economic loss rule.**

Florida law applies the economic loss rule (the "ELR") in two contexts: "(1) the contractual privity ELR where two parties are in privity of contract, and (2) the products liability ELR where a defective product causes damage, but only to itself."  *See In re Chinese Manufactured Drywall Products Liability Litig.*, 680 F. Supp. 2d 780, 799 (E.D. La. 2010).  Even if Plaintiffs had properly alleged their tort claims against Woodland (which they did not), the ELR precludes them from suing in tort for <u>economic</u> losses for the following reasons.

    a.    <u>Contractual Privity</u>.  It is undisputed that Woodland and the Plaintiffs are in privity of contract with regard to the construction of the property at issue.  *See* Section I.E, *infra*. The law is well settled that where (as here) the parties to a tort claim are in contractual privity with one another, the economic loss rule prohibits a plaintiff from recovery in tort for economic damages, unless the economic damages are the result of a tort committed "independently" of the contractual breach.  *See Indemnity Ins. Co. of North America v. American Aviation*, Inc., 891 So. 2d 532, 537 (Fla. 2004).  The policy reason behind this rule is that the parties to a contract had an opportunity to allocate the risks of a breach via the terms of their contractual agreement, and the

{22457809;1}

economic loss rule does not permit the plaintiff to "circumvent the contractual agreement by . . . seeking a better bargain than originally made." *Id.* at 536. Thus, "[i]f a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law." *Casa Clara Condominium Assoc. v. Charley Toppino and Sons, Inc.*, 620 So. 2d 1244, 1247 (Fla. 1993) (citing *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870 (1986)).

The viability of the contractual privity economic loss rule to homeowners claims against homebuilders in connection with Chinese drywall has already been recognized in this MDL litigation. *See In re Chinese Manufactured Drywall*, 680 F. Supp. 2d at 799. In language that is directly on point here, this Court stated:

> In their capacity as defendants, whether the Homebuilders will be susceptible to Plaintiffs' tort claims for economic losses is determined by the contractual privity ELR established by the Florida Supreme Court in *Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004). The contractual privity ELR provides that parties in privity in contract are barred from bringing a tort action for economic damages, unless the economic damage is a result of a tort committed independently of the contract breach, and in other limited circumstances. *Id.* at 536-37. The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing Chinese drywall. Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs.

*Id.*

Expanding on that same reasoning, the Honorable Judge Glenn D. Kelley of the Fifteenth Judicial Circuit Court in and for Palm Beach, Florida, subsequently issued an omnibus order, dated November 5, 2010, <u>dismissing</u> all tort claims seeking economic damages (i.e., damages for inadequate value, cost of repair and replacement of defective products, lost profits, etc.) filed by Chinese drywall plaintiffs against homebuilders with whom they are in privity. A true and correct copy of the omnibus order (which applies to all Chinese drywall cases filed in the Fifteenth Judicial Circuit), in the case styled *Bennett v. Centerline Homes, Inc., et al.,* Case No. 50-2009-

CA-014458 (Fla. 15th Jud. Cir.), is attached hereto as **Exhibit B** for the Court's convenience (hereafter, the "November Omnibus Order").   In that Order, Judge Kelley found that "the [homeowners'] claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Supreme Court" in *Indemnity Ins.,* which states as follows:

> A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principals are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement.   Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.

*See Indemnity Ins.,* 891 So. 2d *at* 536-537.

In the Omnibus Complaint, Plaintiffs attempts to set forth four (4) different tort claims seeking economic damages against Woodland: Negligence, Negligence Per Se, Strict Liability, and Private Nuisance.  The underlying conduct alleged by Plaintiffs in support of each of these tort claims is that Woodland allegedly sold a home that contains defective Chinese drywall.  In the same Omnibus Complaint, Plaintiffs also seeks to assert a claim against Woodland for Breach of Contract.  In support of their Breach of Contract claim, Plaintiffs allege that Woodland entered into a contractual agreement with them[3], and breached that agreement by selling them a home that allegedly contains defective Chinese drywall.  In other words, the conduct that forms the basis of the Plaintiffs' contract claim and the Plaintiffs' tort claims against Woodland are the same. However, in order to avoid dismissal of their tort claims against Woodland, the economic loss rule requires Plaintiffs to have alleged some *additional* conduct on the part of Woodland which

---

[3]     As such, Plaintiffs do not dispute that they are in contractual privity with Woodland.

amounts to an independent tort, arising from a duty separate and apart from Woodland's duties under the contract. *See Id.* at 537. Plaintiffs hve failed to meet this burden.

When tort claims "relate directly to the subject matter of the parties' agreement, or are so interwoven with the agreement, [such that] no independent tort exists …the economic loss rule applies." *Premix-Marbletite Mfg. v. SKW Chems., Inc.*, 145 F. Supp. 2d 1348, 1358-59 (S.D. Fla. 2001).[4]   Here, the fact that no *additional* conduct amounting to an independent tort, distinguishable from Woodland's alleged duties under the contractual agreement, has been alleged in the Plaintiffs' tort claims mandates dismissal in this case. *See 14250 Realty Assoc., Ltd. v. Weddle Bros. Construction Co.*, No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, at *6 (M.D. Fla. Nov. 6, 2008) (internal quotation omitted) (dismissing with prejudice tort claims relating to defective work against a contractor because the plaintiff "fails to allege any negligent activity separate from the activity underlying the breach of contract claims"); *accord In re Chinese Manufactured Drywall Products Liability Litig.* 680 F. Supp. 2d at 799 (under the contractual privity economic loss rule, the terms of the contracts between the homebuilders and the homeowners will generally determine the remedies available to the homeowners). In light of the foregoing, the Plaintiffs' tort claims seeking economic damages against Woodland must be dismissed under the contractual privity economic loss rule.[5]

---

[4]    *See also Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."); *Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 103 (Fla. 4th DCA 1969) ("[N]o cause of action in tort can arise from a breach of a duty existing by virtue of contract."); *Electronic Sec. Sys. Corp. v. Southern Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("[B]reach of contract, alone, cannot constitute a cause of action in tort . . .  [and][i]t is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence.").

[5]    Plaintiffs also cannot recover economic losses because they have <u>suffered</u> no such losses. The MDL Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed." *In re Chinese Drywall*, 680 F. Supp. 2d at 792.

b.        Products Liability.   As for the products liability ELR, Florida courts have defined the products liability ELR as "disappointed economic expectations" where the product "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain."  *See In re Chinese Manufactured Drywall*, 680 F. Supp. 2d at 790 (internal marks and citation omitted).  In *Casa Clara*, 620 So. 2d at 1248, the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties.  The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages.  *Id*. at 1247.  Because the plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier.  *Id*. at 1246-48.

The same reasoning applies here.  Regardless of whether they are in privity with Woodland or not, the products liability strand of the ELR bars Plaintiffs from suing Woodland in tort for purely economic losses and Plaintiffs are limited to recovering in tort for only *non*-economic losses (e.g., for personal injury) and damages to property other than the house itself.  *Id.* at 1247-48.  Plaintiffs must therefore, at a minimum replead their tort claims to seek only non-economic losses (if such claims are not otherwise dismissed for the other reasons set forth herein).  *Cf.* Cmplt. ¶ 57 (seeking general "damages" on negligence count).

**C.      Plaintiffs have not Stated a Claim for Negligence Per Se (Count II).**

Besides being barred by the economic loss rule, Plaintiffs' negligence per se claim (Count II) is poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort.  Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>."  *DeJesus v. Seaboard Coast Line R.R. Co*., 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se for two reasons.  First, they have not identified a statute that Woodland allegedly violated, much less explained how that violation occurred.  Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes."  Cmplt. ¶ 61.  Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage.  *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that Woodland allegedly violated are "designed to protect the <u>general public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added).  In other words, Plaintiffs' negligence per se claim appears to be nothing more than a repackaged negligence claim.  It should be summarily dismissed for that reason as well.

**D.      Plaintiffs cannot sue Woodland in strict liability (Count III).**

Plaintiffs' strict liability claim (Count III) is premised on the sweeping and patently false assertion that Woodland – a builder - was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public."  Cmplt. ¶ 66.

Even assuming that fabricated statement is true, the strict liability theory is nonetheless foreclosed by the ELR (as set forth above) and by at least two other established principles of Florida law.  Indeed, each principle was cited in the November Omnibus Order (*See* **Ex. B**) as an independent basis for dismissing all strict liability claims brought against homebuilders.  There, the same Florida circuit court that later rejected the plaintiffs' negligence theory (*see* Section I.B.1 *supra*) ruled that (1) "only manufactures, and those in the distributive chain of a product, can be

held strictly liable" for allegedly defective drywall; and (2) drywall is not subject to strict liability because it is considered an improvement to real property, not a "product." *See id*., November Omnibus Order pgs. 7-9. Each rationale applies here and each is fatal to Plaintiffs' strict liability claim.

First, Woodland cannot be strictly liable to the Plaintiffs because Woodland obviously did not manufacture or distribute the drywall in question. The Complaint itself identifies Woodland as a "Developer/Builder." Cmplt., **Ex. A**, pg. 31 (Subclass #278). It is firmly settled – and *Bennett* confirms – that strict products liability is reserved for manufacturers and others in the chain of distribution, not homebuilders. *See, e.g., Ugaz v. American Airlines, Inc*., 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291-92 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Second, it has long been held that strict product liability **does not apply** to "structural improvements" to real estate, such as a home, as a home is not considered a product.[6] Drywall is a "structural improvement" to real property because it is an *integral part* of Plaintiffs' home. "Florida courts have expressly <u>declined</u> to extend the principle of strict liability to structural improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc*. No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added)[7]. Indeed, Florida

---

[6]       *See Federal Ins. Co. v. Bonded Lighting Prot. Sys., Inc*., No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (dismissing strict liability claim based on lighting system because system was structural improvement to real estate); *see also Virgilio v. Ryland Group, Inc*., 695 F. Supp. 2d 1276, 1283 n.11 (M.D. Fla. 2010) (explaining that "a home is not a product" for purposes of strict products liability, and citing authorities); *see generally Porter v. Rosenberg*, 650 So. 2d 79 (Fla. 4th DCA 1995).

[7]       *See also Plaza v. Fisher Dev., Inc*., 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007) (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v.*

courts hearing Chinese drywall cases have similarly found that drywall constitutes a structural improvement to real property for which a strict products liability action will not lie. *See Bissoon v. Centerline Homes Construction, Inc.*, No. 562010 CA 001463 (Fla. 19th Jud. Cir. Mar. 24, 2011) (granting builder's motion to dismiss: "[A]lthough Plaintiff[s'] strict liability claims do allege defective product distribution, permanent improvements to real property are not products for purposes of products strict liability actions"), a copy of which is attached hereto as **Exhibit C**. As such, Plaintiffs' strict liability claim should be dismissed as a matter of law.

**E.      Plaintiffs' breach of contract claim (Count VII) must be dismissed.**

The Omnibus Complaint states that Woodland contracted with the Plaintiffs to construct a home that would be "free from defects."  Cmplt. ¶ 111.  This assertion is insufficient on its face, because it fails to identify the source of Woodland's alleged duty to construct a home "free from defects."  If Plaintiffs hope to salvage their contract claim, they must, at the very least, "identify the relevant portion of the contract breached."  *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co.*, No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, *4 (M.D. Fla. Nov. 6, 2008); *see Insurance Concepts & Design, Inc. v. Healthplan Serv., Inc*., 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached").

While Plaintiffs will undoubtedly try to justify their skeletal allegations by pointing to the "Omnibus" nature of the Complaint, the decision to join this litigation does not excuse Plaintiffs from satisfying basic pleading standards and it does not cloak them with immunity from the requirements of due process.  The concern is not merely academic, either.  Contrary to the boilerplate allegation in the Omnibus Complaint, Woodland did not agree to build a home "free

---

*Davis Water & Waste, Inc*., 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

from defects."  Rather, the construction agreement entered into between Plaintiffs and Woodland, a true and correct copy of which is attached hereto as **Exhibit D** ("Construction Agreement")[8], states only that Woodland will "furnish all materials, labor, building permit and services necessary to construct a single family residence on the property … in a workman like manner in accordance with all applicable building codes and in substantial compliance with those plans and specifications." **Ex. D**, ¶ 1.

Whatever the meaning of this language – and there is good authority that it absolves Woodland from liability for the allegedly defective drywall[9] – Woodland did not agree to build a home "free from defects."  *Cf. Lonnie D. Adams*, 714 So. 2d at 1179 (holding that although contractor had a duty to perform contract in a "workmanlike" manner, there was no implied duty to deliver defect-free windows to the homeowner-plaintiffs).  To put it another way, Plaintiffs must base their breach of contract claim (if they had one, which they do not) on an actual contract between the parties.  Unless and until they do that, Plaintiffs' breach of contract claim cannot survive.

**F.**     **Plaintiffs Cannot Maintain their Warranty Claims (Counts IV & VI).**

---

[8]     The fact that Plaintiffs chose not to attach a copy of the Construction Agreement to the Omnibus Complaint does not prevent the Court from considering it now.  The Court can and should consider this instrument because it is undeniably central to Plaintiffs' claims (especially their breach of contract and breach of express warranty claims) against Woodland.  *See In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (holding that contract could be considered on motion to dismiss where it was attached to motion, referred to in the complaint, and central to the plaintiff's claims); *Aucoin v. Regions Fin. Corp*., No. 09-3835, 2010 WL 334533, *2 (E.D. La. Jan. 21, 2010) (incorporating Retirement Plan mentioned in complaint and central to one or more of plaintiff's claims); *Federal Ins. Co. v. New Hampshire Ins. Co.*, No. 03-385-CM, 2010 WL 28568, *4 (M.D. La. Jan. 4, 2010) ("Since the insurance policy issued by New Hampshire is central to [plaintiff's] claims, the Court may consider it as evidence even though it was not attached to [plaintiff's] original petition or amended complaint.")

[9]     Indeed, regardless of whether they can ever allege the elements of a breach of contract claim, Plaintiffs will be hard-pressed to show that Woodland did not construct the home in a workmanlike manner or that it deviated from standard building practices.  The Court has determined that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed."  *In re Chinese Drywall*, 680 F. Supp. 2d at 792.

In Counts IV (Breach of Express and/or Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiffs allege causes of action based on various express and implied warranties. Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties – let alone explain how Woodland might have breached them – these improvised warranty claims should be dismissed for several independently sufficient reasons.

1.      **The express warranty claim asserted by Plaintiffs is foreclosed by the plain language of the warranty itself.**

Woodland issued an express warranty (the "Limited Warranty") with respect to the home at issue for a period of one (1) year following the date the home was completed and conveyed to the Plaintiffs (the "Closing").  [*See* **Ex. D,** Limited Warranty attached thereto as "Exhibit C", at ¶¶1 and 6].  However, even if the alleged defects in this case were covered by the terms of the Limited Warranty (which they most certainly are not), Plaintiffs' express warranty claims should nonetheless be dismissed because the Plaintiffs have not alleged (nor can they) that they experienced a defect within the applicable warranty period.  "[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects - defects that may exist before, but typically are not discovered until after, the expiration of the warranty period."  *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (3d Cir. 1992) (citing numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period but did not manifest until after warranty period had expired); *see Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 616-617 (3d Cir. 1995) ("[L]atent defects discovered after the term of the warranty are not actionable." (citation omitted)); *see also Brisson v. Ford Motor Co.*, 349 Fed. Appx. 433, 434 (11th Cir. 2009) (affirming dismissal of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period") (Florida law); *accord McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488-T-

17EAJ, 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009) (holding that statute of limitations for warranty claim "cannot begin to run later than the expiration of the warranty as the warrantor did not expressly agree to provide warranty coverage beyond this date"); *Ocana v. Ford Motor Co*., 992 So. 2d 319, 324 (Fla. 3d DCA 2008) ("[T]here can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms.").

In the instant case, the Certificate of Occupancy for this property was issued by the City of Cape Coral, Florida, on January 5, 2007, a true and correct copy of which is attached hereto as **Exhibit E**.[10]  According to the Profile Form filed by Plaintiffs in this action [attached hereto as **Exhibit F**], Plaintiffs moved into the Property in January 2007.  Thus, Woodland's delivery of the Property to Owner occurred no later than January 31, 2007, which means that the one (1) year express warranty expired by its own terms no later than January 31, 2008.  Because Plaintiffs cannot (and did not) allege that they experienced the defect alleged in the Omnibus Complaint within the applicable warranty period, Plaintiffs' express warranty claim must be dismissed as a matter of law.

2.     **The implied warranty claims (Counts IV and VI) asserted by Plaintiffs are foreclosed by the plain language of the warranties themselves.**

Plaintiffs' implied warranty claims must be dismissed as well because the Limited Warranty they agreed to expressly disclaims all such implied warranties.  Indeed, the Limited Warranty states that:

---

[10]      The fact that Plaintiffs chose not to attach this document to the Omnibus Complaint does not prevent the Court from considering it now.  The Court can and should consider this instrument because it is undeniably central to Plaintiffs' claims (especially the breach of express warranty claim) against Woodland, and because the document is publicly available.  *See* Fla. Stat. §§ 90.202(5), (6), (11) & (12) (setting forth matters that may be "judicially noticed," including "[f]acts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned"); *e.g., Cardona v. City of Tampa*, No. 96-5194, 1998 WL 34201850, at *1 n.1 (Fla. 13th Jud. Cir. Mar. 9, 1998) (granting motion to dismiss with prejudice while taking "judicial notice" of certain public records filed at city council proceeding).

**THERE ARE NO WARRANTIES THAT EXTEND BEYOND THE DESCRIPTION OF THE FACE HEREOF. THIS LIMITED WARRANTY IS THE ONLY EXPRESSED WARRANTY GIVEN. THIS LIMITED WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, OR THAT THE HOME WILL BE CONSTRUCTED IN ACCORDANCE WITH THE PLANS AND SPECIFICATIONS ON FILE WITH ANY GOVERNMENTAL AUTHORITY, WHETHER ARISING FROM CUSTOM, USAGE, COURSE OF TRADE, STATUTES, CASE LAW OR OTHERWISE, AND SHALL BE LIMITED TO THE WARRANTY PERIODS SET FORTH ABOVE. THE UNDERSIGNED DISCLAIMS ANY LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, INABILITY TO POSSESS THE UNIT, INCONVENIENCE, STORAGE COSTS, LOSS OF TIME, PERSONAL INJURY, DAMAGE TO IMPROVEMENTS MADE BY YOU, OR ANY OF YOUR PERSONAL PROPERTY**.

*See* **Ex. D,** Limited Warranty attached as "Exhibit C" thereto, at ¶ 8.

Contractual exclusions of implied warranties like the ones at bar are valid and enforceable under Florida law.  *See Leasetec Corp. v. Orient Sys., Inc.*, 85 F. Supp. 2d 1310, 1315 (S.D. Fla. 1999) (recognizing enforceability of warranty disclaimers); *e.g., Belle Plaza Condo. Ass'n, Inc. v. B.C.E. Dev., Inc*., 543 So. 2d 239, 240 (Fla. 3d DCA 1989) (condominium developer properly disclaimed any and all express and implied warranties); *Xerographic Supplies Corp. v. Hertz Commercial Leasing Corp.*, 386 So. 2d 299, 300 (Fla. 3d DCA 1980) (defendant could not be liable for breach of implied warranty because agreement disclaimed all implied warranties).  As such, Plaintiffs' implied warranty claims are without merit and should be dismissed.

### 3.  In any event, Plaintiffs cannot maintain a claim for breach of warranty of merchantability or of fitness for a particular purpose.

There are two more reasons to dismiss Plaintiffs' implied warranty claims in Count IV. First, as a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by Woodland.  That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner,

because a contractor is viewed as a provider of services, not a merchant." *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc*., 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

Woodland is not bound by these implied warranties because it is not considered a merchant under Florida warranty law. Woodland contracts with its clients to provide a service: home construction. That is why the agreement between Woodland and the Plaintiffs is called a "Construction Agreement" and not a "purchase agreement." Because the inclusion of drywall in Plaintiffs' home was incidental to the construction services that Woodland rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in this circumstance. *See In re Sunshine-Jr.*, 240 B.R. at 794 ("[A]lthough construction contracts … typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc*., 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, Plaintiffs' implied warranty of fitness claim fails because they do not allege that their drywall was unfit for a particular purpose – that is, "a particular or unusual use different from the purpose for which the item sold is ordinarily used." *Fred's Excavating & Crane Serv., Inc. v. Cont. Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976). "Florida courts have determined that in order to state a cause of action for [breach of] an implied warranty of fitness for a 'particular purpose' ... a plaintiff [must] allege the 'particular' purpose for which the goods were warranted as opposed to 'ordinary use' under a warranty of merchantability." *McGraw v. Fleetwood Enters., Inc*., No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (quoting

*Weiss v. PPG Indus., Inc.*, 138 F.R.D. 289, 293 (M.D. Fla. 1993)) (dismissing warranty of fitness claim where plaintiff did not allege "the 'particular purpose' for which the motor home was not fit"); *see Fred's Excavating*, 340 So. 2d at 1220 (upholding dismissal of warranty of fitness claim for same reason).  To the extent they seek to assert same, Plaintiffs' implied warranty of fitness claim must be dismissed because they cannot make this indispensable allegation.[11]

**G.      Plaintiffs Cannot State a Claim for Private Nuisance (Count XI).**

The private nuisance claim (Count XI) would fail even if it were not barred by the economic loss rule.  *See* November Omnibus Order (**Ex. B**) (dismissing all plaintiffs' private nuisance claims against homebuilders because "neither [Florida] case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance").  An action for private nuisance requires the claimant to establish an injury to his or her own property <u>in connection with the use of the real property of someone else</u>.  *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another."); *In re: Chinese Drywall Litig.,* No. 10-28090 (Fla. 17th Jud. Cir. Feb. 4, 2011) (dismissing a private nuisance claim based on defective drywall: "This Court finds Judge Kelley's ruling [in the *Bennett* case] to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case"), a copy of which is attached hereto as **Exhibit G**.

The Plaintiffs, however, do not allege that their purported injuries resulted from real property owned by someone else.  To the contrary, the nuisance claim is predicated entirely on the

---

[11]      Even assuming the drywall is defective, as Plaintiffs allege it is nonetheless serving its *intended* purpose as room divider and structural support element.  This Court has ruled that "[t]he Chinese drywall has not deteriorated the walls, making them structurally unsound; it is the exact opposite, the Chinese drywall stands just as any other functioning drywall, <u>serving its intended structural purpose.</u>" *In re Chinese Drywall*, 680 F. Supp. 2d at 792.

allegation that certain conditions existing on the "structures owned by Plaintiffs" are to blame. Cmplt. ¶ 146.  That allegation simply does not state a claim for private nuisance.  *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the Plaintiffs'] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

**H.      Plaintiffs Cannot Bring a Claim for Unjust Enrichment (Count XII).**

Plaintiffs' unjust enrichment claim (Count XII) fails for multiple reasons.  For one, the Plaintiffs and Woodland are in privity of contract and such privity forecloses a quasi-contractual theory.   "It is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy." *American Honda Motor Co. v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  Where the plaintiff alleges the existence of a contract, "claims arising out of that contractual relationship will not support a claim for unjust enrichment."  *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); *Validsa, Inc. v. PDVSA Serv., Inc.*, 632 F. Supp. 2d  1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties "admitted to the existence of express contracts").[12]

Moreover, the elements of unjust enrichment are that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Commerce Partnership 8098 Ltd. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997)

---

[12]      Even if the existence of an express contract did not bar the unjust enrichment claims of the Plaintiffs against Woodland, the economic loss rule would.  *Supra.* at Section I.B.2.

(emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp*., 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005). As to the fourth element of unjust enrichment, there is nothing inequitable or unjust about permitting Woodland to retain whatever benefit it received for constructing the Plaintiffs' home. After all, it cannot be disputed that Woodland paid a third party (*i.e*., a subcontractor or distributor) for the drywall in question. As the Florida appellate court explained in *Maloney v. Therm Alum Industries, Corp.,* 636 So. 2d 767, 770 (Fla. 4th DCA 1994), "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, <u>if the [defendant] has given any consideration to any person</u> <u>for the improvements, it would not be unjust for [the defendant] to retain the benefit</u>." *Id*. *overruled on other grounds by, Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities). Thus, not only is the Plaintiffs' unjust enrichment claim barred because he was in privity of contract with Woodland (and thus, has adequate legal remedies), it is precluded because whatever compensation Woodland received for the drywall was not retained "unjustly."

**I.**     **The Omnibus Complaint Fails to State a Claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIII).**

In the overbroad style that is the hallmark of the Omnibus Complaint, Plaintiffs also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*. ("FDUTPA").  Cmplt. ¶ 157.  A FDUTPA claim comprises three distinct elements:  (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages."  *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  "In light of this trend, claims arising under the FDUTPA must be pled with particularity."  *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc*., No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).  At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  *Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard.  Indeed, it alleges no specific facts in support of Plaintiffs' FDUTPA claim.  *See* Cmplt. ¶¶ 156-160.  It does not identify a single instance in which Woodland – by its words or conduct – deceived Plaintiffs or treated

them unfairly.  Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b).  *See Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[13]

Plaintiffs' failure, however, is not merely one of pleading.  Their FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to Plaintiffs.  *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co*., No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury).  Because Woodland provided services – namely, the construction of a single home – Plaintiffs can establish "actual damages" only by showing a difference between the "market value" of the services that Woodland actually provided and the services that Woodland was required to provide.[14]  *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties" (citations omitted)).

---

[13]     Plaintiffs' FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply.  A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly'" and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc*., No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

[14]     The same would hold true if Woodland had delivered a "product" – *i.e*., a completed home – rather than providing a "service."  To recover under FDUTPA, Plaintiffs would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

As a matter of law, Plaintiffs cannot make this showing.  There is zero evidence – and Plaintiffs do not appear to suggest – that the manner in which Woodland <u>constructed</u> the house was in any way responsible for the allegedly defective drywall.  The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." *In re Chinese Drywall*, 680 F. Supp. 2d at 792.  Thus, even if Plaintiffs could conceivably replead their FDUTPA claim with the particularity demanded by Rule 9(b), they cannot establish the "actual damages" component of the claim.  Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction."  Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc*., 886 F. Supp. 842, 851 (N.D. Fl. 1995).  Count XIII must be dismissed for this reason as well.

**J.      Plaintiffs' Claim for Equitable Relief and Medical Monitoring (Count XIV) Cannot go Forward against Woodland.**

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XIV).  This hybrid, catchall-type claim seeks, among other things, an order that Woodland "buy back or rescind" its contract and "create, fund, and support a medical monitoring program." Cmplt. ¶ 164.  This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based.  Since each of Plaintiffs' substantive claims are due for dismissal, so too is their derivative claim for injunctive relief.  *See, e.g., Klay v. United Healthgroup, Inc*., 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available,

a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support to an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiffs have failed to allege an inadequate legal remedy or irreparable harm.  Injunctions under both federal and Florida law require these elements. *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted).  Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory and statutory damages" – are inadequate and entitle them to the extraordinary remedy of an injunction. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc*., 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim.  At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999).  The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm.  *Id*.

The Omnibus Complaint does not even attempt to properly allege these elements.  Instead, Count XIV sets forth a series of legal conclusions – *e.g*., "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct" – without a shred of factual detail.  Plaintiffs fail to identify, for example, any medical condition (latent or otherwise) supposedly caused by their drywall; nor do they identify a monitoring procedure for that supposed condition.  <u>Plaintiffs do not even claim to be ill</u>.  Yet, they would have this Court speculate about their imaginary ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring.  It states a series of legal conclusions, and those obviously "do not suffice."  *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate).  The glaring deficiencies highlighted above make the final Count subject to dismissal now, on the pleadings. *See Jacobs v. Osmose, Inc*., No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc*., 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc*., 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized

increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

**K.    The Jury Trial Demand Should Be Dismissed and/or Stricken.**

In addition to dismissing the Omnibus Complaint in its entirety, the Court should dismiss, or in the alternative, strike the demand made by the Plaintiffs for a jury trial because the Plaintiffs specifically and knowingly waived the right to a trial by jury in the parties' Construction Agreement. *See* **Ex. D**, ¶42.  That express waiver requires that the jury demand be dismissed and/or stricken. *See Palomares v. Ocean Bank of Miami*, 574 So. 2d 1159, 1160 (Fla. 3d DCA 1991) (upholding contractual waiver of jury trial).

## II.   CONCLUSION

Woodland Enterprises, Inc., respectfully requests an order dismissing the claims asserted against it with prejudice, dismissing Plaintiffs' demand for a jury trial, and awarding Woodland its attorneys' fees and costs in defending this action pursuant to Section 28 of the Construction Agreement and pursuant to Florida's Deceptive and Unfair Trade Practices Act.

Dated: _____, ___, 2011

**PHELPS DUNBAR, LLP**

By:___/s/ Brent B. Barriere___
    Brent B. Barriere (La. Bar No. 2818)
    Susie Morgan (La. Bar No. 9715)
    D. Skylar Rosenbloom (La Bar No. 31309)
    Canal Place Suite 2000
    365 Canal Street
    New Orleans, Louisiana 70130-6534
    Telephone: (504) 566-1311
    Telecopier: (504) 568-9130
    Email: Brent.barriere@phelps.com
        Susie.morgan@phelps.com
        Skylar.rosenbloom@phelps.com
    *LOCAL COUNSEL FOR DEFENDANT*
    *WOODLAND ENTERPRISES, INC.*

**AKERMAN SENTERFITT**

By:___/s/ Stacy Bercun Bohm_____
    Stacy Bercun Bohm (Fla. Bar No. 022462)
    Valerie B. Greenberg. (Fla. Bar No. 26514
    Leslie Miller Tomczak (Fla. Bar No. 126489)
    Las Olas Centre II, Suite 1600
    350 East Las Olas Boulevard
    Fort Lauderdale, Florida 33301-2229
    Telephone: (954) 463-2700
    Telecopier: (954) 463-2224
    Email: stacy.bohm@akerman.com
        valerie.greenberg@akerman.com
        leslie.tomczak@akerman.com
    *LEAD COUNSEL FOR DEFENDANT*
    *WOODLAND ENTERPRISES, INC.*

**CERTIFICATE OF SERVICE**

  I hereby certify that the foregoing document and exhibits have been served on Plaintiffs' Liaison Counsel, Russ Herman, at Herman, Katz & Coltar, LLP, 820 O'Keefe Avenue., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, at Frilot, L.L.C., Suite 3700, 1100 Poydras Street, New Orleans, LA 70163 (kmiller@frilot.com) by U.S. Mail and e-mail <u>or</u> by hand delivery and email, <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this _____<sup>th</sup> day of _____, 2011.

          _____/s/ Stacy Bercun Bohm_____